| | |
|---|---|
| Kathleen Sullivan (SBN 242261)<br>kathleensullivan@quinnemanuel.com<br>QUINN EMANUEL URQUHART &<br>SULLIVAN LLP<br>51 Madison Avenue, 22nd Floor<br>New York, NY 10010<br>Telephone: (212) 849-7000<br>Facsimile: (212) 849-7100<br><br>Sean S. Pak (SBN 219032)<br>seanpak@quinnemanuel.com<br>John M. Neukom (SBN 275887)<br>johnneukom@quinnemanuel.com<br>Matthew D. Cannon (SBN 252666)<br>matthewcannon@quinnemanuel.com<br>QUINN EMANUEL URQUHART &<br>SULLIVAN LLP<br>50 California Street, 22nd Floor<br>San Francisco, CA 94111<br>Telephone: (415) 875-6600<br>Facsimile: (415) 875-6700<br><br>Mark Tung (SBN 245782)<br>marktung@quinnemanuel.com<br>QUINN EMANUEL URQUHART &<br>SULLIVAN LLP<br>555 Twin Dolphin Drive, 5th Floor<br>Redwood Shores, CA 94065<br>Telephone: (650) 801-5000<br>Facsimile: (650) 801-5100 | Steven Cherny *(admission pro hac vice pending)*<br>steven.cherny@kirkland.com<br>KIRKLAND & ELLIS LLP<br>601 Lexington Avenue<br>New York, New York 10022<br>Telephone: (212) 446-4800<br>Facsimile: (212) 446-4900<br><br>Adam R. Alper (SBN 196834)<br>adam.alper@kirkland.com<br>KIRKLAND & ELLIS LLP<br>555 California Street<br>San Francisco, California 94104<br>Telephone: (415) 439-1400<br>Facsimile: (415) 439-1500<br><br>Michael W. De Vries (SBN 211001)<br>michael.devries@kirkland.com<br>KIRKLAND & ELLIS LLP<br>333 South Hope Street<br>Los Angeles, California 90071<br>Telephone: (213) 680-8400<br>Facsimile: (213) 680-8500 |

*Attorneys for Plaintiff Cisco Systems, Inc.*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION**

| | |
|---|---|
| CISCO SYSTEMS, INC.,<br><br>            Plaintiff,<br><br>    vs.<br><br>ARISTA NETWORKS, INC.,<br><br>            Defendant. | CASE NO. 5:14-cv-5344-BLF<br><br>**CISCO'S OPPOSITION TO ARISTA'S MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(B)(6)**<br><br>Date:    July 2, 2015<br>Time:   9:00 A.M.<br>Dept.:   Courtroom 3<br><br>**DEMAND FOR JURY TRIAL** |

02099.00004/6659141.4

# TABLE OF CONTENTS

I.   Introduction and Summary of Argument .................................................................................. 1

II.  Factual Background................................................................................................................. 3

III. Legal Standard......................................................................................................................... 6

IV.  Argument................................................................................................................................. 7

    A.   Cisco's Amended Complaint States a Claim for Willful Infringement .................... 7

    B.   Cisco's Amended Complaint States a Claim for Post-Suit Indirect Infringement ................................................................................................................. 10

V.   Conclusion............................................................................................................................. 11

# TABLE OF AUTHORITIES

**Page**

### Cases

*Affinity Labs of Tex., LLC v. Alpine Elecs. of Am., Inc.*,
   No. 9:08-cv-171, 2009 WL 9091275 (E.D. Tex. Sept. 2, 2009) .................................................7

*Apeldyn Corp. v. Sony Corp.*,
   852 F. Supp. 2d 568 (D. Del. 2012) ..........................................................................................8

*Applied Med. Resources Corp. v. U.S. Surgical Corp.*,
   435 F.3d 1356 (Fed. Cir. 2006) .................................................................................................8

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ..................................................................................................................6

*Avocet Sports Tech., Inc. v. Garmin Int'l, Inc.*,
   No. C 11-04049 JW, 2012 WL 1030031 (N.D. Cal. Mar. 22, 2012) .........................................9

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007) ..................................................................................................................6

*In re Bill of Lading Transmission and Processing Sys. Patent Lit.*,
   681 F.3d 1323 (Fed. Cir. 2012) ...............................................................................................10

*Birchwood Labs., Inc. v. Battenfield Techs., Inc.*,
   No. 09-3555 (MJD/JJK), 2012 WL 2045757 (D. Minn. May 21, 2012) ...............................7, 8

*Clouding IP, LLC v. Amazon.com, Inc.*,
   C.A. Nos. 12-641-LPS, 12-642LPS, 12-675-LPS,
   2013 WL 2293452 (D. Del. May 24, 2013) ......................................................................7, 8, 9

*Global-Tech Appliances, Inc. v. SEB S.A.*,
   131 S. Ct. 2060 (2011) ..............................................................................................................7

*Keith v. Volpe*,
   858 F.2d 467 (9th Cir. 1988) .....................................................................................................9

*LML Holdings, Inc. v. Pac. Coast Distributing Inc.*,
   No. 11-CV-06173 YGR, 2012 WL 1965878 (N.D. Cal. May 30, 2012) .............................9, 10

*McRo, Inc. v. Namco Bandai Games Am., Inc.*,
   23 F. Supp. 3d 1113 (C.D. Cal. 2013) .......................................................................................9

*In re Seagate Tech., LLC*,
   497 F.3d 1360 (Fed. Cir. 2007) ..............................................................................................6, 7

*Sharkey v. O'Neal*,
   778 F.3d 767 (9th Cir. 2015) .....................................................................................................6

*Westwood v. Cohen*,
   838 F. Supp. 126 (S.D.N.Y. 1993) ............................................................................................9

1  *Zond, Inc. v. Fujitsu Semiconductor Ltd.*,
      990 F. Supp. 2d 50 (D. Mass. 2014) .................................................................................... 9

**Rules/Statutes**

35 U.S.C. § 271(b) ............................................................................................................................ 6

35 U.S.C. § 271(c) ............................................................................................................................ 6

Fed. R. Civ. P. 12(b)(6) ............................................................................................................... 6, 10

Fed. R. Civ. P. 15 ............................................................................................................................. 9

Fed. R. Civ. P. 15(a) ........................................................................................................................ 9

Fed. R. Civ. P. 15(d) ........................................................................................................................ 9

## I. INTRODUCTION AND SUMMARY OF ARGUMENT

Cisco Systems, Inc. ("Cisco") filed an amended complaint because, after Arista indisputably knew of Cisco's patent rights and allegations that Arista's existing products infringed those rights in light of Cisco's filing of its original complaint, Arista released a new product adding new features that willfully infringed Cisco's patents. Arista did nothing to adjust its conduct with respect to Cisco's patents and instead willfully and publicly announced its new infringing product with much fanfare. Yet, Arista now moves to dismiss these allegations by citing case law having no relevance whatsoever to the fact pattern here.

In its original complaint, which was filed on December 5, 2014, Cisco alleged that Defendant Arista Networks, Inc. ("Arista") infringed certain Cisco copyrights and patents. After Arista learned of Cisco's patents from Cisco's original complaint, Arista conducted a widely publicized launch of a ***brand new infringing product called EOS+***. Cisco therefore filed an amended complaint on March 6, 2015, adding claims for willful and indirect patent infringement based on Arista's conduct since Cisco filed its original complaint. (Dkt. 37.) As set forth in the amended complaint, Arista's deliberate decision to launch EOS+ despite knowing of Cisco's patents gives rise to a claim for willful patent infringement. Not a single case cited by Arista involves such acts of willful infringing conduct; all of Arista's cases are directed to infringers who merely continued to sell the same accused products after the filing of a complaint. Arista's highly publicized launch of a new product after it learned of Cisco's patents, on the other hand, is a ***separate act of infringement*** for which Cisco is entitled to full redress—including enhanced damages for its willful character. Cisco should not be precluded from pursuing its willfulness claims simply because it chose to bring those claims in a more judicially efficient manner by amending the existing complaint, as opposed to filing a separate complaint.

The willfulness of Arista's post-filing conduct is particularly striking. There can be no dispute that Arista misappropriated Cisco's intellectual property in its previous EOS product. In public statements following the filing of Cisco's original complaint, Arista's CEO confirmed that

Arista had wrongfully copied documentation for Cisco's CLI,[1] which is copyrighted. (*See* Exs. 1, 2.)[2] Admitting Arista's copyright infringement, Arista's CEO stated that this copying was "*unacceptable*" and a "*mistake*," and that Arista would implement corrective measures, including unspecified personnel actions with respect to the copyists. (*See id.*) In its answer to the original complaint, Arista also admitted that its EOS product includes verbatim copies of more than 500 of Cisco's IOS CLI command expressions and certain CLI command modes and prompts. Yet Arista has taken no corrective action with respect to these continuing acts of infringement. (*See* Dkt. 36 at ¶¶ 53, 54.)

Instead, after learning of Cisco's copyright and patent infringement allegations through the original complaint, Arista broadened its infringement and—with much fanfare—launched its new EOS+. Touted by Arista as containing a set of "pioneering innovations" in "cloud networking" (*see* Ex. 3), EOS+ apparently **adds new infringing functionality covered by Cisco's patents**. But although the launch of EOS+ was a well-orchestrated media event, Arista's vocal praise for its new product and its new functionality is conspicuously absent from Arista's motion to dismiss. In fact, Arista's motion does not even mention EOS+. Arista simply ignores the fact that Cisco's willful infringement allegations added by amendment are based on Arista's much-hyped release of a new product—an act Arista indisputably undertook after it knew of Cisco's patents.

With respect to indirect infringement, the parties have no real dispute. Arista does not challenge the sufficiency of Cisco's allegations that Arista has indirectly infringed Cisco's patents since Arista received Cisco's original complaint. Because Cisco's indirect infringement

---

[1] Cisco's intellectual property in this case relates to the command-line interface ("CLI") for its Internetwork Operating System ("IOS"). Cisco's IOS CLI was a major breakthrough in the technology for communicating with network routing and switching devices, and it has proven to be immensely popular—so much so that Cisco's competitor Arista has implemented a similar CLI in its Extensible Operating System ("EOS").

[2] Citations to "Ex. __" refer to exhibits to the Declaration of Matthew D. Cannon in Support of Cisco's Opposition to Arista's Motion to Dismiss, filed herewith.

1  allegations are presently limited to conduct occurring in that period,[3] there are no pre-suit indirect
2  infringement allegations to dismiss.

3  **II.      FACTUAL BACKGROUND**

4  On December 5, 2014, Cisco filed its original complaint in this case.  (Dkt. 1.)  That
5  complaint alleged, *inter alia*, that Arista directly infringes Cisco's copyrights in its IOS and
6  related documentation, as well as U.S. Patent Nos. 7,953,886 ("'886 patent") and 7,047,526 ("'526
7  patent").  (Exs. 4, 5.)  Cisco's copyright infringement allegations were based on Arista's blatant
8  copying of Cisco's IOS product documentation, CLI command expressions, and CLI command
9  modes and prompts.  With respect to the '886 patent, Cisco's infringement allegations were based
10 on Arista's use of a system for automatically translating commands originally received in a non-
11 CLI format into CLI command expressions and translating CLI output into the format in which the
12 command was originally sent.  With respect to the '526 patent, Cisco's infringement allegations
13 were based on Arista's use of systems for automatically translating generic commands into
14 specific command expressions, such as those implemented in Cisco's IOS CLI.  Cisco's original
15 complaint included no allegations of indirect or willful patent infringement.

16 Arista was aware of Cisco's complaint (including the '886 and '526 patents) at least as of
17 December 5, 2014.  (*See* Ex. 2.)  Arista was formally served with that complaint on December 9,
18 2014.  (*See* Dkt. 18.)

19 After receiving Cisco's complaint, Arista's CEO admitted publicly that Arista had in fact
20 copied some of Cisco's IOS product documentation.  (*See* Exs. 1, 2.)  She further stated that
21 Arista's conduct in doing so was "unacceptable" and a "mistake."  (*See id.*)  In an attempt to
22 remedy the situation, Arista announced that it would take steps to "fix it" and would take
23 personnel actions against the Arista employee(s) who were responsible.  (*See id.*)

---

26  [3] Information Cisco learns in discovery may show that Arista knew of Cisco's asserted patents
    in this case long before the original suit was filed against Arista's prior EOS products.  Should that
27  be the case, Cisco reserves the right to move for leave to amend its complaint to add allegations of
    pre-suit indirect infringement for those products.
28

1    Yet Arista took a markedly different tack with respect to its use of Cisco's additional
2 intellectual property asserted in the complaint.  With respect to Cisco's IOS CLI command
3 expressions, Arista eventually ***admitted*** to using Cisco's IOS CLI command expressions and
4 command modes and prompts in its own products (*see* Dkt. 36 at ¶¶ 53, 54), but has taken no steps
5 to remove Cisco's copyrighted command expressions and command modes and prompts from its
6 products.  Nor has Arista taken any steps to remove the functionality covered by Cisco's patents.
7 In fact, despite learning of Cisco's allegations that its use of Cisco's command expressions and
8 related functionality infringed Cisco's copyrights and patents, Arista launched a new product
9 dubbed "EOS+" on December 10, 2014.  (*See* Dkt. 37 at ¶ 58 (citing Ex. 6).)

10    Arista has been clear that EOS+ is a new product with different capabilities than EOS.
11 Although EOS+ retained the infringing functionality of EOS—including its use of Cisco's
12 copyrighted CLI command expressions and patented technologies for translating communications
13 from other platforms and/or using another language into CLI commands—Arista has repeatedly
14 told the public that EOS+ has new features that Arista seems intent on marketing aggressively.  In
15 the press release that announced EOS+, for example, Arista described its new product as an
16 "addition" to its product line that is "an evolution of Arista EOS" and "provides an advanced level
17 of programmability."  (*See* Ex. 6.)  EOS+ purportedly provides a "speedier and more cost-
18 effective alternative to the legacy approach" of EOS in that it requires less effort to test and certify
19 network hardware and applications.  (*See id.*)

20    Arista's press release announcing its new product with its new functionality was not an
21 isolated occurrence.  In even bolder language, Arista's CEO claimed that EOS+ was not just new,
22 but in fact included "pioneering innovations" in "cloud networking." (*See* Ex. 3.)  Various press
23 outlets picked up the story of the EOS+ product launch, often with quotes from Arista employees
24 describing how it improves on the legacy EOS offering by providing new levels of
25 programmability.  (*See* Exs. 7, 8.)

26    The new features of EOS+ appear to include new infringing functionality, expanding
27 beyond the infringing functionality of EOS.  For example, Arista's announcement of EOS+
28

explains that it includes new technology for integrating Arista's products with other hardware and software:

**The EOS+ Platform**

- EOS SDK – a development framework that allows native access to all levels of EOS for custom development and integration with forwarding and routing stacks that leverage advanced features such as MPLS.
- vEOS - a virtual machine instance of EOS that includes the same control plane and management plane as the physical switches.
- EOS Applications (/en/products/eos/eos-applications) – Pre-built integration with technology partners and DevOps systems such as Puppet and Splunk for provisioning and monitoring.
- EOS Consulting Services (/en/products/eos/eos-consulting-services) – Professional services for development of customized solutions for network automation.

(Ex. 6 at 2.)

**Customizations for Cloud Networking**

Arista also introduced the EOS SDK for customers and technology partners who are looking for a "do-it-yourself" approach to applications that are custom-fit for their network environments. The EOS SDK allows customers to develop applications that integrate directly with the switch operating system. This approach can be used for customizing IP routing, protecting against DDoS attacks through selective workflow-based filtering and analyzing data for fine-grained visibility. This setup is ideal for large enterprises and cloud providers that require a high degree of workload mobility and workflow visibility along with the proven effectiveness and reliability of today's EOS.

(*Id.*)

These new integration capabilities of EOS+ implicate the patents-in-suit. The '886 patent, for example, covers devices capable of translating commands from non-CLI formats into CLI command expressions, and translating the resulting CLI output back into the non-CLI format in which the command was sent. (*See* Ex. 4 at claim 6 (discussing XML-CLI translations).) It is highly likely that the expanded "integration" Arista touts as a benefit of its EOS+ software development kit ("SDK") is accomplished using the technology covered by the '886 patent. As just one example, the EOS+ SDK "allows customers to develop applications that integrate directly with the switch operating system" to permit "customizing IP routing" and the reporting of network

1   data for "workflow visibility." (Ex. 6 at 2.) This will likely entail translating commands from the
2   customers' applications into EOS CLI command expressions to adjust the routing in the network,
3   and translating the EOS CLI output into a format that the customers' applications can use for
4   network monitoring—as claimed in the '886 patent.
5       After witnessing Arista's deliberate launch of a new product with additional infringing
6   functionality and receiving Arista's answer—which included the admission that Arista is using
7   Cisco's IOS CLI command expressions (*see* Dkt. 36 at ¶¶ 53, 54)—Cisco filed an amended
8   complaint on March 6, 2015. (Dkt. 37.) The amendments to the complaint added allegations that
9   Arista's launch of the new EOS+ constituted willful patent infringement for which enhanced
10  damages are warranted, and that Arista has been indirectly infringing since at least the date that it
11  learned of Cisco's original complaint.[4] (*Id.* at ¶¶ 58, 69-70, 73, 76-77, 80.) It is only these new
12  allegations that Arista moved to dismiss.

13  **III.    LEGAL STANDARD**

14      Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a plaintiff is required to
15  allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v.*
16  *Twombly*, 550 U.S. 544, 570 (2007). "Determining whether a complaint states a plausible claim
17  for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial
18  experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). In conducting this
19  analysis, all factual allegations in the complaint are to be taken as true and all reasonable
20  inferences are to be drawn in the plaintiff's favor. *Sharkey v. O'Neal*, 778 F.3d 767, 768 n.1 (9th
21  Cir. 2015).

22      "[T]o establish willful infringement, a patentee must show by clear and convincing
23  evidence that the infringer acted despite an objectively high likelihood that its actions constituted
24  infringement of a valid patent" and "that this objectively-defined risk . . . was either known or so

---

[4] Cisco's amendments also included updates to the status of its copyright registrations, some of which were pending when Cisco filed its original complaint but had issued by the time Cisco filed its amended complaint, and an allegation that EOS+ infringes Cisco's copyrights. (*See* Dkt. 37 at ¶¶ 25-26, 60.) Arista has not moved to dismiss these amended allegations.

obvious that it should have been known to the accused infringer." *In re Seagate Tech., LLC*, 497 F.3d 1360, 1371 (Fed. Cir. 2007).

To prove induced patent infringement under 35 U.S.C. § 271(b) or contributory patent infringement under 35 U.S.C. § 271(c), a patentee must demonstrate that the accused infringer had knowledge that its acts would cause a direct infringer to infringe the patents-in-suit. *See Global-Tech Appliances, Inc. v. SEB S.A.*, 131 S.Ct. 2060, 2068 (2011).

## IV.   ARGUMENT

Cisco's amended complaint sufficiently sets forth allegations of both willful and indirect patent infringement by Arista. As a result, Cisco respectfully requests that Arista's motion to dismiss be denied in its entirety.

### A.   Cisco's Amended Complaint States a Claim for Willful Infringement

Based on Arista's own public statements, Arista's launch of EOS+ represents the public release of a new product. And there can be no dispute that Arista released this new product after learning of Cisco's patents. Arista's launch of a new product with new infringing functionality is an independent act of infringement from those alleged in Cisco's original complaint that was undertaken in reckless disregard of an objectively high likelihood that it would infringe Cisco's patents-in-suit. Cisco's allegations to this effect sufficiently state a claim for willful patent infringement.

Although "in ordinary circumstances, willfulness will depend on an infringer's prelitigation conduct" because "a willfulness claim asserted in the ***original*** complaint must necessarily be grounded exclusively in the accused infringer's pre-filing conduct" (*Seagate*, 497 F.3d at 1374 (emphasis added)), there is no *per se* rule that infringement must be based solely on pre-suit conduct. *Affinity Labs of Tex., LLC v. Alpine Elecs. of Am., Inc.*, No. 9:08-cv-171, 2009 WL 9091275, at *3 (E.D. Tex. Sept. 2, 2009) (denying motion to dismiss amended complaint that added willfulness allegations based solely on conduct after the filing of the original complaint).

Multiple courts have allowed plaintiffs to pursue claims for willful infringement in ***amended*** pleadings based on the defendant's conduct after the suit was originally filed. *See Clouding IP, LLC v. Amazon.com, Inc.*, C.A. Nos. 12-641-LPS, 12-642-LPS, 12-675-LPS, 2013

WL 2293452, at *4-5 (D. Del. May 24, 2013) (denying motion to dismiss challenging allegations of willful infringement "based, at least in part, on conduct predating the operative amended complaint" but after the original complaint was filed); *Birchwood Labs., Inc. v. Battenfield Techs., Inc.*, No. 09-3555 (MJD/JJK), 2012 WL 2045757, at *23 (D. Minn. May 21, 2012) (denying motion to dismiss willful infringement counterclaim in declaratory judgment action, where counterclaim alleged knowledge of the patents only after the time the suit was originally filed). This is because the filing of the original complaint adequately puts the accused infringer on notice of the asserted patents:

> For purposes of pleading willful infringement, there appears to be little practical difference between a pre-complaint notice letter informing a defendant about a patentee's allegation of infringement and a subsequently-superceded original complaint formally alleging infringement.  Such a pre-suit letter provides a basis for pleading knowledge in the context of a willful infringement claim. . . .  It follows that the circumstances presented here—in which the original complaint serves much the same purpose (among other things) as a notice letter—is likewise sufficient to plead knowledge.

*Clouding IP*, 2013 WL 2293452, at *4; *see also Birchwood*, 2012 WL 2045757, at *23.

Arista's decision to bring the allegedly "pioneering innovations" of EOS+ to market despite its knowledge of Cisco's patents supports Cisco's allegations that Arista has acted with reckless disregard for Cisco's patent rights.  It is that new act, which is independent of Arista's sale of devices that include the legacy EOS, that Cisco alleges to be willful infringement in its amended complaint.  There can be no reasonable dispute that Cisco could have filed a separate infringement suit challenging Arista's launch of EOS+, given that it is a different product with new potentially infringing functionality.  *See, e.g.*, *Applied Med. Resources Corp. v. U.S. Surgical Corp.*, 435 F.3d 1356, 1362 (Fed. Cir. 2006) ("Indeed, simply because the *same* company sold two *different* products which infringed a patent does not prevent the patentee from litigating and collecting *separate* damages for *each* infringement.") (emphasis in original).  And in such a suit, Arista could be charged with willfully infringing Cisco's patents by launching EOS+ after becoming aware of Cisco's original patent infringement allegations.  *See Apeldyn Corp. v. Sony Corp.*, 852 F. Supp. 2d 568, 575 (D. Del. 2012) (denying motion to dismiss willful infringement allegation where complaint alleged knowledge of the patents-in-suit due to previous litigation

between the parties). There is no point in Arista's apparent proposal that Cisco should pursue its claims against Arista's several infringing acts in an inefficient way: Cisco's willful infringement claim against EOS+ should not be dismissed.[5]

The fact that Arista launched a new infringing product after Cisco's complaint was filed plainly distinguishes this case from those cited by Arista. For example, in the case on which Arista principally relies, *LML Holdings, Inc. v. Pac. Coast Distributing Inc.*, No. 11-CV-06173 YGR, 2012 WL 1965878 (N.D. Cal. May 30, 2012), only one product was at issue, and that product was on sale before the original complaint was filed.[6] 2012 WL 1965878, at *3. The only

---

[5] For this same reason, Cisco's filing of the willfulness allegations in its amended complaint pursuant to Fed. R. Civ. P. 15(a)(1)(B), instead of filing a motion for leave to supplement under Fed. R. Civ. P. 15(d) as Arista contends would have been proper (Dkt. 39 at 2 n. 1), is immaterial. *See, e.g.*, *Westwood v. Cohen*, 838 F. Supp. 126, 132 (S.D.N.Y. 1993) ("Inclusion of both Rule 15(a) and Rule 15(d) in Fed. R. Civ. P. 15 appears deliberately to create an overlap to avoid precisely the kind of controversy sought to be raised here."). Allegations of post-suit conduct may be raised in an amended complaint. Courts have approved such amendments in multiple cases. *See, e.g.*, *Clouding IP*, 2013 WL 2293452, at *4-5 (denying motion to dismiss willfulness allegations in the "operative amended complaint"); *Zond, Inc. v. Fujitsu Semiconductor Ltd.*, 990 F. Supp. 2d 50, 57 (D. Mass. 2014) (noting "there is no bar to a plaintiff subsequently amending a complaint to include a claim of induced infringement where the defendant, upon obtaining knowledge through the filing of the lawsuit, of the patent and the alleged direct infringement of others, does not cease inducement"). But even if Cisco had sought leave to file its amended complaint as a supplemental complaint, such a motion would have been well-founded: "The clear weight of authority, however, in both the cases and the commentary, permits the bringing of new claims in a supplemental complaint to promote the economical and speedy disposition of the controversy." *Keith v. Volpe*, 858 F.2d 467, 473-74 (9th Cir. 1988). And Arista has identified no prejudice to it from Cisco's new allegations or any other reason why the supplementation would not be allowed. To the extent that Cisco's Amended Complaint may be deemed a supplemental complaint, Cisco respectfully requests that its opposition to Arista's motion to dismiss be treated as a motion for leave to file its new allegations pursuant to Rule 15(d).

[6] Another of Arista's cited cases similarly involved allegations that the continued sale of the accused products after the filing of the original complaint constituted willfulness. *See McRo, Inc. v. Namco Bandai Games Am., Inc.*, 23 F. Supp. 3d 1113, 1115-16 (C.D. Cal. 2013). The other case that Arista cited, *Avocet Sports Tech., Inc. v. Garmin Int'l, Inc.*, No. C 11-04049 JW, 2012 WL 1030031 (N.D. Cal. Mar. 22, 2012), is even further afield from the facts at hand. That case did not involve an amended complaint that referred to knowledge gained from the filing of an original complaint. In *Avocet*, the plaintiff failed to allege "any facts to suggest that Defendant Garmin had knowledge of the [patent-in-suit] prior to the filing of the Complaint." 2012 WL 1030031, at *4.

conduct that the plaintiff there alleged constituted willfulness was that the defendant actively litigated the case:

> Here, the circumstance that LML identifies to substantiate a willfulness claim is the litigation itself, including service of the initial complaint, amendment of the complaint, and Defendants' filing of a Rule 12(b)(6) motion to dismiss. In essence, LML alleges that Defendants' decision to defend this case on the merits demonstrates willfulness.

*Id.* at *5. The willful infringement allegation in Cisco's amended complaint is very different. Cisco's willfulness allegation is not founded on Arista's litigation behavior, but rather Arista's deliberate decision to launch a new infringing product with new infringing functionality after learning of Cisco's patents.

Arista willingly chose to launch publicly what it describes as a major new product offering after receiving notice of Cisco's patent infringement claims from the filing of Cisco's original complaint. That Cisco is pursuing its willful infringement claims against that new product in the same case as it is pursuing its prior claims against Arista's legacy products shows that Cisco is acting efficiently—it does not make Arista's infringing launch of EOS+ any less willful. Arista's motion to dismiss Cisco's willful infringement allegations therefore should be denied.

### B.     Cisco's Amended Complaint States a Claim for Post-Suit Indirect Infringement

Cisco's indirect infringement allegations are presently limited to infringement occurring after Arista received notice of Cisco's patents by virtue of the original complaint in this case. (*See* Dkt. 37 at ¶¶ 70, 77.) Arista's motion to dismiss challenges only the sufficiency of Cisco's indirect infringement allegations as to "pre-suit induced and contributory infringement claims." (Dkt. 39 at 5.) Because Cisco is not now alleging pre-suit indirect infringement by Arista, there is no such claim for the Court to dismiss.[7]

---

[7] Indirect infringement allegations may be founded on a defendant's knowledge of the patents-in-suit gained from the filing of a complaint. *See In re Bill of Lading Transmission and Processing Sys. Patent Lit.*, 681 F.3d. 1323, 1345 (Fed. Cir. 2012) (reversing dismissal of indirect infringement allegation based on awareness of patents gained from filing of original complaint).

## V. CONCLUSION

Cisco's amended complaint adequately states a claim for both willful and indirect infringement based on Arista's intentional use of Cisco's patented CLI technologies. For the foregoing reasons, Arista's motion to dismiss those allegations should be denied.

| | |
|---|---|
| DATED: April 8, 2015 | Respectfully submitted, |
| | */s/ Sean S. Pak* |
| | Kathleen Sullivan (SBN 242261) |
| | kathleensullivan@quinnemanuel.com |
| | QUINN EMANUEL URQUHART & SULLIVAN LLP |
| | 51 Madison Avenue, 22nd Floor |
| | New York, NY 10010 |
| | Telephone: (212) 849-7000 |
| | Facsimile: (212) 849-7100 |
| | |
| | Sean S. Pak (SBN 219032) |
| | seanpak@quinnemanuel.com |
| | John M. Neukom (SBN 275887) |
| | johnneukom@quinnemanuel.com. |
| | Matthew D. Cannon (SBN 252666) |
| | matthewcannon@quinnemanuel.com |
| | QUINN EMANUEL URQUHART & SULLIVAN LLP |
| | 50 California Street, 22nd Floor |
| | San Francisco, CA 94111 |
| | Telephone: (415) 875-6600 |
| | Facsimile: (415) 875-6700 |
| | |
| | Mark Tung (SBN 245782) |
| | marktung@quinnemanuel.com |
| | QUINN EMANUEL URQUHART & SULLIVAN LLP |
| | 555 Twin Dolphin Drive, 5th Floor |
| | Redwood Shores, CA 94065 |
| | Telephone: (650) 801-5000 |
| | Facsimile: (650) 801-5100 |
| | |
| | Steven Cherny *(admission pro hac vice pending)* |
| | steven.cherny@kirkland.com |
| | KIRKLAND & ELLIS LLP |
| | 601 Lexington Avenue |
| | New York, New York 10022 |
| | Telephone: (212) 446-4800 |
| | Facsimile: (212) 446-4900 |
| | |
| | Adam R. Alper (SBN 196834) |
| | adam.alper@kirkland.com |
| | KIRKLAND & ELLIS LLP |
| | 555 California Street |
| | San Francisco, California 94104 |
| | Telephone: (415) 439-1400 |
| | Facsimile: (415) 439-1500 |
| | |
| | Michael W. De Vries (SBN 211001) |
| | michael.devries@kirkland.com |
| | KIRKLAND & ELLIS LLP |
| | 333 South Hope Street |
| | Los Angeles, California 90071 |
| | Telephone: (213) 680-8400 |
| | Facsimile: (213) 680-8500 |
| | |
| | *Attorneys for Plaintiff Cisco Systems, Inc.* |