Pages  1 - 42

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BEFORE THE HONORABLE BETH LABSON FREEMAN, JUDGE


CISCO SYSTEMS, INC.,           )
                               )
            Plaintiff,         )
                               )
      v.                       )   NO. C 14-05344 BLF
                               )
ARISTA NETWORKS, INC.,         )
                               )
            Defendant.         )   San Jose, California
_____)   Thursday, May 14, 2015

**TRANSCRIPT OF OFFICIAL ELECTRONIC SOUND RECORDING
OF PROCEEDINGS**

FTR 1:44 p.m. - 2:32 p.m. =  48 minutes

**APPEARANCES**:

For Plaintiff:          Quinn Emanuel Urquhart & Sullivan, LLP
                        50 California Street, 22nd floor
                        San Francisco, California  94111
                   BY:  **SEAN SANG-CHUL PAK, ESQ.**
                        **JOHN M. NEUKOM, ESQ.**
                        **MATTHEW CANNON, ESQ.**

For Defendant:          Keker & Van Nest
                        633 Battery Street
                        San Francisco, California  94111-1809
                   BY:  **BRIAN L. FERRALL, ESQ.**
                        **DAVID J. SILBERT, ESQ.**


ALSO PRESENT:  Neal A. Rubin, VP - Litigation, Cisco Systems,
Inc.; Leah Waterland, Director of Legal and IT Litigation,
Cisco Systems, Inc.; Sean Christofferson, Corporate Counsel for
Arista Networks, Inc.

Transcribed by:         Leo T. Mankiewicz, Transcriber
                        leomank@gmail.com
                        (415) 722-7045

1    <u>Thursday, May 14, 2015</u>

2                                                              1:44 p.m.

3                        P R O C E E D I N G S

4            **THE CLERK:**  Calling case 14-5344, Cisco Systems, Inc.

5    versus Arista Networks, Inc.

6            Counsel, please state your appearances.

7            **MR. PAK:**  Good afternoon, your Honor.  Sean Pak of

8    Quinn Emmanuel.  With me is my partner Jay Neukom, and we

9    represent Cisco.

10            **THE COURT:**  All right, Mr. Pak.

11            **MR. PAK:**  And with us also is Neal Rubin, who is the

12    Vice President of Litigation for Cisco --

13            **THE COURT:**  Oh, welcome.

14            **MR. PAK:**  -- and Leah Waterland, who is the Director

15    of IT.

16            **THE COURT:**  Welcome.

17            **MR. FERRALL:**  Good afternoon, your Honor.  Brian

18    Ferrall, Keker & Van Nest, on behalf of Arista.  My partner

19    David Silbert is with us, as well as Sean Christofferson,

20    in-house counsel at Arista, and our colleagues (inaudible).

21            **THE COURT:**  Thank you.  All right, well, I think we

22    have a little bit of work to do here.

23            **MR. PAK:**  Yes, your Honor.

24            **THE COURT:**  This is probably not one of those cases

25    I'll send you off until trial.  (Laughter).  Although that

1    would be nice.

2        **MR. PAK:**  We'll try to behave.

3        **THE COURT:**  I think this is the first of many of these

4    intimate gatherings, I think.

5        Well, my first observation about this case is that I'm

6    not -- you're going to have to do a lot to persuade me to

7    bifurcate and basically split this in two, to be two trials.

8    I don't see the benefit to the court in doing that, and as was

9    raised by the defense, some concern about putting the copyright

10   case along with the patent case, and the consequences of that.

11       So let's talk about bifurcation, because I actually

12   think then, Mr. Pak, that that drives the scheduling.

13       **MR. PAK:**  Yes, your Honor.  Happy to do that.  Your

14   Honor, we believe that this case is exceptional, in two ways.

15       First of all, when it comes to copyright infringement,

16   as with a lot of technology-based cases, you have lots of

17   expert discovery that goes into analyzing source code, or in

18   the context of command interfaces like this, there may be

19   disputes about whether there's an act of infringement.

20       For the most part, as you can see from our pleadings

21   as well as the documents that we've laid out, we don't think

22   there is actually going to be any question of fact as to the

23   act of copying.

24       Arista has admitted, in both judicial pleadings as

25   well as am statements by their executives publicly, the

1    commands that we have identified.  There are 500 multi-level

2    commands that make up the interface, are in use, they're in

3    use -- they have been in use for a long time with respect to

4    the products that we have accused.  They are also in use with

5    respect to new products that have been recently released.

6            Furthermore, your Honor, what also is exceptional is

7    that there are public statements by the very senior executives

8    at the company as to why such copying occurred.

9            The CEO of Arista, who was actually an executive at

10   Cisco and founded this company after leaving Cisco, has

11   publicly stated that they have developed this interface to be

12   similar to Cisco because, in her words, "What we don't have to

13   invent, we don't want to do," and specifically, the training is

14   very easy for the Arista products, because a Cisco expert in

15   this area will be able to use the Arista products right away,

16   as we have similar command line interfaces in the (inaudible)

17   you're looking for.

18           So really, if you think about a copyright case, on the

19   core issues of what is being copied and which products that use

20   that interface or copyrighted work we think will be -- has

21   already been largely decided by the judicial admissions and

22   those public statements.  So --

23           **THE COURT:**  I don't think Arista agrees with that

24   statement, but we'll find out from Mr. Ferrall.  (Laughter).

25           **MR. PAK:**  Well, and your Honor, I'm sure they will

1    respond in kind.  This is how we're looking at the case.

2              THE COURT:  Sure.

3         MR. PAK:  And we also would point your Honor to

4    various statements of admission from their pleadings.  So these

5    are, in their Answer, specifically paragraph 53 of the Answer

6    that they filed on February 13, 2015, where Arista admits that

7    it uses the IOS command expressions included in Exhibit 1 to

8    Cisco's Complaint.

9         Your Honor, that Exhibit 1 is where we compiled a

10   table identifying the 500 or so multi-command interfaces that

11   were copied, and there's a judicial admission in paragraph 53.

12        The statements that I just made on the record about

13   what their CEO said was also admitted in paragraph 46, and so

14   on, in their Answer.  I don't think there will be a dispute

15   about these things.

16             THE COURT:  Well, that sounds like you're lighting it

17   up for what, in your view, would be a very effective summary

18   judgment motion.

19        MR. PAK:  Potentially, your Honor, except we recognize

20   there may be factual issues in the copyright case --

21             THE COURT:  All right.

22        MR. PAK:  -- that go beyond just the infringement

23   issues.

24             THE COURT:  Okay.

25        MR. PAK:  Some that I believe that they have pled and

will try to present evidence on an affirmative defense of fair use.

**THE COURT:** Sure.

**MR. PAK:** In (indecipherable). We also know, your Honor, that there is a legal issue of copyrightability, of whether these interfaces are subject to copyright protection, but again, that's a legal issue. We think the factual defense of fair use can also be presented, in abbreviated form.

And this really goes back to now why we are asking for this bifurcation, with this context.

Your Honor, the best way we see it is, there are two fundamental reasons why we think bifurcation makes sense in this exceptional case:

One, we think that it will simplify the issues for the jury, in the following manner. We have copyright claims, we also have patent claims, and they're directed to certain features of this Arista infringing product. We acknowledge that there is subject matter overlap. We acknowledge that many of witnesses and discovery in this case would cut across both the copyright and patent claims. Hence we filed everything in a single complaint.

**THE COURT:** I guess here's one of my concerns, is that certainly, the fewer issues for a jury, the easier it is for them. That's given. But if I can have one two-week trial or two two-week trials emanating from the same filing, it's not a

1    hard choice.

2          MR. PAK:  We acknowledge that --

3          THE COURT:  I mean, I don't even know why you filed --

4    why didn't you file these two patent infringement claims in the

5    other patent case?

6          MR. PAK:  Your Honor, those patent cases are now

7    subject to an ITC proceeding --

8          THE COURT:  Were all of those -- so I gathered from

9    your papers that all of those patents were in the parallel

10   proceedings, and these two are not.

11         MR. PAK:  That's right, your Honor.

12         THE COURT:  Okay.

13         MR. PAK:  And the reason why these two are not in that

14   case, as we have explained in some of the briefing at the ITC,

15   your Honor, is these are closely related.  We acknowledge that.

16   These are patents that are directed to the CLI functionality

17   and how the CLI functionality -- the copyright protects what

18   you see on the screen --

19         THE COURT:  Yes.

20         MR. PAK:  -- what the users see.  These patents go to

21   the underlying technology, in terms of the code, as to how we

22   enable that functionality to work.

23         So there is overlap here, we acknowledge that, and

24   that's the reason why brought this as a separate case.

25         However, your Honor, if I may, on the curing issue, we

1  are willing to simplify the case presentation of the copyright

2  case.  We are willing to put limits with respect to fact

3  discovery with respect to the copyright claims, and we think

4  that by having resolution of this issue in January, we will

5  have a multiple -- we'll have a set of multiple benefits.

6          One will be, we do think that it will simplify the

7  issues for the jury.

8          There's some damages issues here, your Honor.  If you

9  think about the subset of damages that overlap with the subset

10  of damages in the patent case, for example, lost profits,

11  I recently tried a case down in San Diego where we had a

12  copy -- a breach of contract claim, patent claim, lost profits

13  was an issue, and it was an exceedingly difficult process for

14  the lawyers, but most importantly, for the jury --

15          **THE COURT:**  Sure.

16      **MR. PAK:**  -- to work through a verdict form where they

17  had to allocate not only separate damages amounts, but

18  overlapping amounts, to ensure that there was no --

19          **THE COURT:**  Well, and it comes up in many fields.  It

20  can be more complicated here, but in much of -- in commercial

21  litigation --

22      **MR. PAK:**  Absolutely.

23          **THE COURT:**  -- it's very difficult.

24      **MR. PAK:**  Absolutely.  So this is one of the benefits

25  that, your Honor, that we see in trying the copyright case

1  where we have these admissions, from our perspective, that

2  allow us to put on a case, we think, in the January time frame,

3  that we could --

4      THE COURT:  I haven't -- let me just be clear.  I have

5  no trial availability until next August.

6      MR. PAK:  Ah, okay.

7      THE COURT:  It's just --

8      MR. PAK:  I see.

9      THE COURT:  See, I mean, I don't usually -- I don't

10  get cases that, at a first CMC, that are looking for trials

11  where it's so soon, but I schedule three a week, and I can't

12  schedule you as the fourth.  First, it's too expensive for your

13  client to be the last one trailing, but -- and that's just a

14  reality.

15      MR. PAK:  We appreciate that.  We appreciate that.

16      THE COURT:  So that may change things, I'm not sure.

17      MR. PAK:  Well, certainly if your Honor doesn't have

18  any availability until August, then we would be interested in

19  expediting the overall case --

20      THE COURT:  Right.

21      MR. PAK:  -- and delay that --

22      THE COURT:  I mean, I was looking at your dates, and

23  frankly, I do appreciate -- while I understand Arista's not in

24  agreement -- there you are, looking -- is not in agreement with

25  such an expedited schedule for the case, and I have to take

```
1    that into account as well, but some of the arguments that
2    Mr. Ferrall might have are moot because I'm not available, and
3    so he can certainly rest assured, and when I look at my
4    schedule, I'd be looking at late July and August for trial --
5            MR. PAK:  Yes, of 2016.
6            THE COURT:  -- of 2016.  I am not even available for
7    claims construction until February of 2016.  So that will --
8    I mean, ultimately, I think you two will have a great deal of
9    agreement on dates, because I've really resolved the problem
10   that the defendants had in their concerns about being ready for
11   trial.  I'm sorry.  You know, there's nothing I can do.
12           MR. PAK:  No, we understand.  We understand, your
13   Honor, and we understand.
14           THE COURT:  Okay.  Well, you make a good point on the
15   issues.  They actually -- I mean, I certainly recognize they
16   are distinct issues, and it does divide.
17           Let me tell you some things, though.  This is one
18   case, and I can't treat it as two cases and double everything
19   that gets done, and so if I bifurcate for trial and then you
20   want to bifurcate some work for discovery, I would imagine, to
21   the extent you wanted separate motions for summary judgment on
22   the two halves of the case, I would limit your pages to 15 for
23   each.  I mean, we're not going to blow this up.
24           So, you know, those are just the realities of what
25   you're suggesting, and I recognize that what -- I think what
```

1   you're suggesting makes some good sense, and frankly, it will

2   be easier for me, as well, to deal with these distinct issues,

3   let alone the jury, and I know it's easier for the jury.

4           **MR. PAK:**  Yes, your Honor.  Let us think about this,

5   your Honor.  We didn't consider the possibility --

6           **THE COURT:**  Right.

7           **MR. PAK:**  -- of doing something in --

8           **THE COURT:**  I know.

9           **MR. PAK:**  -- late July, on a consolidated basis, our a

10  copyright case, but your Honor, we do -- at the end of the day,

11  we have no interest whatsoever in creating any unnecessary work

12  or doing duplication of discovery --

13          **THE COURT:**  Sure.

14          **MR. PAK:**  -- or any kind of motion practice --

15          **THE COURT:**  What I'm thinking here, Mr. Pak, is that

16  if you -- you would have two juries in this case then, wouldn't

17  you?

18          **MR. PAK:**  If we did the bifurcation, but with the July

19  schedule, your Honor, it may make sense.  We'll confer with

20  Mr. Ferrall on that theme, but that might give us enough room,

21  frankly, to be able to -- if we work hard enough, and I think

22  that there are issues of common ground, and I have no interest

23  in taking unnecessary discovery.  There's actually quite a bit

24  of discovery that the parties are already engaged in, which is

25  another issue that we'll have to --

```
1         THE COURT:  All right, then, we'll have to deal with
2     that --
3         MR. PAK:  -- deal with on cross-use, but there's a
4     significant amount of discovery that that's happening right
5     now -- millions of pages have been produced, dozens of
6     witnesses are being deposed -- that would allow us, we think,
7     to move this case along quickly, and I think that if your
8     Honor's earliest availability is late July, early August,
9     I think we could work lard to try to put everything together --
10        THE COURT:  And have a single trial --
11        MR. PAK:  A single trial --
12        THE COURT:  And, you know, as I said, I'm not opposed
13    to bifurcating it for trial because, I mean, there are
14    scenarios where we would empanel a jury for the entire trial,
15    but have two separate parts.  I don't know if it will make
16    sense, ultimately.  I don't think it will --
17        MR. PAK:  I don't think so, either, your Honor.
18        THE COURT:  -- so, but I can't give you that quick
19    trial on the copyright --
20        MR. PAK:  Your Honor, let us, in light of, we didn't
21    understand your Honor's availability --
22        THE COURT:  Yeah.
23        MR. PAK:  -- when we were setting it up.  Let us
24    revise our request.
25        THE COURT:  All right.
```

1          **MR. PAK:**  Our request would be, for some of the same

2    reasons that we set forth today, and also in our papers --

3          **THE COURT:**  Yeah.

4          **MR. PAK:**  -- we do think that we don't need to wait

5    until 2017 to try this case.

6          **THE COURT:**  Okay.

7          **MR. PAK:**  We would prefer to try the case in late

8    July, early August, with your Honor's availability --

9          **THE COURT:**  Yeah.

10          **MR. PAK:**  -- and we would work hard to consolidate

11    these issues and avoid unnecessary discovery, and get the case

12    ready to try both the copyright and the patent claims.

13          **THE COURT:**  All right.  All right.  Okay, well, that

14    kind of cuts to and solves -- I wouldn't say solves, but brings

15    clarity to that part of it, and I -- you know, as I said, it

16    would be nice if I had more trial availability, but I just

17    don't.

18          So let me hear from Mr. Ferrall on this part of it.

19    We do need to talk about the discovery issue.  I was a little

20    bit concerned about that.

21          So Mr. Ferrall, this may have been good news for you.

22          **MR. FERRALL:**  Yes, thank you.  Thank you for

23    clarifying a number of those things.  But I do think, on

24    bifurcation, just a couple -- I've never had a case where,

25    before the case even gets under way, the plaintiff seeks to

1    bifurcate its own complaint.

2            THE COURT:  Yeah.

3            MR. FERRALL:  I mean, obviously, it could have brought

4    these patent claims separately if it said that they need two

5    different trials, and it could have related the two cases to

6    you.  It could have done a lot of things at the outset, and as

7    I said, our suspicion is it's because they think that the

8    Federal Circuit is more favorable to it for the copyright law

9    than the Ninth Circuit, and by adding these claims together,

10   that's what they assured themselves, that the case will go to

11   the Federal Circuit if it's appealed.

12           But regardless, be that as it may, I think it's far

13   too early to make a decision about bifurcation.

14           THE COURT:  Yeah.

15           MR. FERRALL:  Let's see what's left of this case in

16   eight, nine months or something like that, and we can present

17   it then.

18           And I also would suggest that if we're going to make

19   decisions about bifurcation, especially if parties don't agree,

20   that it be brought by motion under 42(b), as it should be, and

21   they have to make a showing about prejudice and economy and so

22   forth.

23           So as for the schedule, let's back up a little bit and

24   let me give you the Arista perspective --

25           THE COURT:  Okay.

1    **MR. FERRALL:** -- of this case for a moment, which is,

2    in large part, actually in agreement with a number of things

3    that Mr. Pak said, which is that Arista has been around for a

4    while, 10 years.

5    **THE COURT:** Yes.

6    **MR. FERRALL:** The commands, the so-called Command Line

7    Interface, which is actually just sort of the format for

8    entering commands into these switches, and then the commands

9    themselves are what's used in this format, of CLI, or Command

10   Line Interface, those have been in use for many years, so --

11   and public use.

12   This is not a surprise that just, you know, appeared

13   last fall.  It's been around for a long time, and in fact,

14   Cisco has been referring to these commands as standards, as

15   conventional and so forth, for a long time and never said

16   anything about anyone else, not just Arista but a lot of other

17   companies, using these commands.

18   So the idea that there would be a rush to judgment on

19   the copyright claim defies five, six --

20   **THE COURT:** Sure.

21   **MR. FERRALL:** -- seven years of actual practice in the

22   marketplace.  So that's the history.

23   But the case itself, obviously, has been filed for a

24   little bit, and we -- by the way, we have a motion to dismiss

25   on file before trial --

1          **THE COURT:**  I know, that's coming up, yeah.

2          **MR. FERRALL:**  -- but that's just as to a part of their

3     own complaint.

4          **THE COURT:**  Right.

5          **MR. FERRALL:**  The case is ultimately about what is

6     their copyrighted work, and here is where, as some of my

7     colleagues would say, the rabbit goes into the hat.

8          They've attached 30 copyright registrations, and

9     that's their asserted copyrighted work, and that's ultimately

10    what this case is going to come down to.  Those 30 copyright

11    registrations -- maybe there are a few exceptions, but they

12    mostly refer to the software, the source code, for their

13    operating system.

14         Now, this is -- I don't know, because I've never seen

15    it, and I don't know that anyone has seen it other than this --

16    but it's likely millions or tens of millions of lines long

17    each.  Each.  And there's 30 of them.

18         **THE COURT:**  Yeah.

19         **MR. FERRALL:**  And we need to understand -- and by the

20    way, not one of them has been produced in the case yet.  So the

21    thing that they're suing on has not been produced, and so

22    obviously, there's a lot of work to be done.

23         Is the fact that Arista has software that responds to

24    these commands, is that known?  Yeah, that's been known for a

25    long time, and that's not going to be a dispute.  It wasn't a

1    dispute even before the lawsuit was filed.

2            What's going to be a dispute is, is there

3    infringement.  And that has a lot of different legal and

4    factual issues to it, including, is the work that you're

5    asserting original, or does it, for example, come from some

6    industry standard, which coined many of the terms that they say

7    now no one else can use.

8            I mean, to look at the terms, to give you an idea

9    about -- not that you would look through all 500 terms, but

10   they're saying, among others, that they're able to prevent

11   everyone else from using "IP Address" as a command.  You know,

12   another one, "Clock Set," that's supposedly something that they

13   can prevent everyone else in the industry from using.

14           Obviously, we're going to have a lot of disputes about

15   these commands that they say are their copyrighted work, and

16   we're going to dispute.

17           So what we've proposed -- and then there's the patent,

18   right.

19           **THE COURT:**  Sure.

20           **MR. FERRALL:**  So that's the patent, and I -- you know,

21   we're not that far off on the patent schedule, but what we

22   think is important, and I think is pretty conventional, is that

23   there's sufficient time for discovery after claim construction

24   in case things have changed sufficiently that we need to.

25           **THE COURT:**  Okay.

1    **MR. FERRALL:** So basically, they've proposed two

2    months after the hearing, without regard to when the order

3    issues, and we're proposing five months after the hearing,

4    assuming the order comes out, you know --

5    **THE COURT:** Well, I'm more in line with what you're

6    suggesting, just so that I can get that claims construction

7    order in your hands.

8    **MR. FERRALL:** Right.

9    **THE COURT:** And then -- and I don't combine that with

10   summary judgment, so you'd still want to have --

11   **MR. FERRALL:** Right.

12   **THE COURT:** -- the opportunity.

13   **MR. FERRALL:** Right. So we've proposed a trial in

14   January 2017. Part of that is, we don't want a trial at the

15   end of December 2016.

16   **THE COURT:** No.

17   **MR. FERRALL:** But in any event -- or notwithstanding

18   your last order, January 4th, 2017.

19   **THE COURT:** Right. No, that was 2016.

20   **MR. FERRALL:** Right, right.

21   **THE COURT:** Because they're just two dates, yeah.

22   **MR. FERRALL:** Or any January 4th --

23   **THE COURT:** Well, January's tough. I get it, right,

24   we all have to have a little breathing room.

25   **MR. FERRALL:** So anyway, that's --

1          THE COURT:  Well, that's interesting.  What I -- in

2     cases like this, I try not to nail down too many dates, but

3     frankly, I think I'd rather give you some dates, with the

4     understanding that we'll all work together to massage those

5     dates as time goes on, but you can see my schedule's so

6     impacted that I don't want to wait until claims construction to

7     give you a trial date, because then you could be a year out,

8     and that would be unfortunate.

9          So what I'd like to do is to let you know the -- and

10    I can do that right now -- the earliest time that I can do

11    claims construction, and from that, you can then tell me when

12    each of you would, in a ballpark sense, suggest trial.

13          MR. FERRALL:  Okay.

14          THE COURT:  What I then would have you do is go back

15    and -- to your offices and meet and confer, and just submit to

16    me a new schedule for discovery, based on those two dates.

17          And when you gave me your dates, you were using the

18    Patent Local Rules for the claims construction.  I'm not going

19    to -- we're not going to take our time here to go through those

20    dates.  You'll send me a stip and order.

21          And frankly, on the other dates, what I would

22    typically give you is a trial date, a pretrial date, and a

23    summary judgment date, and then I don't have to deal with

24    anything else from that.

25          MR. FERRALL:  Sure.

1          **THE COURT:**  But I do need summary judgment filed

2     90 days before trial, and so when we start counting the time,

3     you may actually want a greater interval between claims

4     construction and trial than you thought when you came in.

5               And, you know, it's not E.D. Tex here, it's not

6     Delaware.  You know, we actually do summary judgment motions in

7     this district, that you had said you have -- (Laughter).

8               You know, I mean, you know all know more than I do.

9     I just know what I hear.  You've actually lived through it,

10    right?  Yeah, I'm sure you have the battle scars to prove it.

11              And although I like the idea of limiting you three

12    one-page *in limine* motions, I don't think I'll be doing that,

13    either.  There's a lot to be learned from what they do, but

14    I don't want their volume in order to have to put that in, but

15    you have many cases in those jurisdictions, and so you know

16    this district is different, and that's why we actually take the

17    time, so that we can consider those motions.

18              I would be available -- the earliest I'd be available

19    for your claims construction, and I do like the separate the

20    tutorial from the -- you said argument, probably not

21    witnesses -- by a week, I just find that I can better

22    understand the product or the software, and then hear your

23    arguments on the terms.

24              So the earliest I could do it would be to have your

25    claims construction potentially on the -- the tutorial on

1    January 29, and the *Markman* hearing itself on February 5, and

2    I'm glad to sort of lock those dates in right now if you want,

3    and that's 2016.  You have to look at schedules.  If you want

4    to take that home -- and obviously, you have experts you have

5    to talk to and --

6                    MR. PAK:  Your Honor, it was, for Cisco.

7                    THE COURT:  Oh, that's great.

8                    MR. FERRALL:  That should -- I think that works for --

9                    THE COURT:  Okay.

10                   MR. FERRALL:  I've got to deal -- Mr. Van Nest is out

11   of the country, and we ought to just confirm with his schedule,

12   but I don't see --

13                   THE COURT:  Well, here's, you know --

14                   MR. FERRALL:  I've got his trial schedules.

15                   THE COURT:  Good.

16                   MR. FERRALL:  I think it's okay, but if we could just

17   confirm --

18                   THE COURT:  You know, if it's not going to work, just

19   meet and confer, and suggest some other weeks.  I do them on

20   Fridays, and so -- and what I'd presume is that I give you a

21   maximum hour each for the tutorial.  Often it takes less.

22                   And then for the *Markman* hearing itself, this is two

23   patents, I have -- we don't know how many terms there will be

24   in dispute, but typically, two hours is sufficient, and if it

25   bleeds into a third hour to finish by noon, that's fine with

1    me.  So I can't imagine it taking more than that, based on my

2    experience, and I think you know how to do that, as well.

3            Looking at trial, and here's where I don't know that

4    you're ready yet, I would not be -- I'm not available to

5    schedule a two-week trial until -- well, realistically, I think

6    August 1st is really my best earliest date, and I'm actually

7    quite available after that.

8            So I'm not locking you into that.  I don't know

9    whether you want to think about that and get back with a

10   stipulation on a trial date or have me just give you that date

11   now and --

12           **MR. PAK:**  From Cisco's perspective, we would take the

13   August 1st date.

14           **THE COURT:**  Okay.  Mr. Ferrall?

15           **MR. FERRALL:**  Your Honor, I think -- well, I'd like to

16   look at the schedule.  I just think that, in light of the

17   *Markman*, I think that might be tight, August 1 trial --

18           **THE COURT:**  So you would have your summary judgment

19   motions on May 1st, and so you would have three months -- we

20   sort of split it in half -- it's six months from *Markman* to

21   trial.  It's a pretty reasonable amount of time.  I'm flexible

22   on that.

23           Why don't we -- I'm going to tentatively suggest trial

24   on August 1.  What I'd like you to do is to confirm this within

25   a week.  If, for some reason, that date is not going to work,

1    and hopefully you'll agree, if you want to move it a week or

2    two into the future beyond that and you can agree, then you can

3    just send me a stipulation, and those dates are available.

4            Let me give you pretrial and summary judgment dates

5    based on August 1, and based on that, you can move all of those

6    dates by the same intervals, and you'll understand that.

7            I would have your pretrial on July 7, and your summary

8    judgment motions I'm going to go ahead and schedule for May 5.

9    I've already -- I will reserve that date, so you don't need to

10   worry about that.  And then you can -- yes, you can go from

11   there.

12           There's a slight chance, with that schedule, that you

13   will be preparing your summary judgment motion before you have

14   my *Markman* order.  You know, I just want to be realistic.  So

15   keep that in mind as you look at the dates.

16           **MR. FERRALL:**  Yes.

17           **THE COURT:**  And it all depends on what my trial

18   schedule actually matures into at that point.

19           **MR. FERRALL:**  Your Honor, but that's what I'm

20   concerned about.  We're -- an expert -- not just summary

21   judgment, but all expert reports, which would be presumably for

22   summary judgment, may not have the benefit of your *Markman*

23   order, and I realized that, you know, things can be shifted

24   around a little bit, but at this rate, expert reports and

25   discovery would typically be, even by Cisco's schedule, you

1    know, at least a month and a half or close to two months.

2    There's just no time in there before you have to file your

3    summary judgment papers at the beginning of April.

4              THE COURT:  Well, I think it's realistic that you

5    won't have my *Markman* order until middle of March, and you'd be

6    filing your -- so it's a -- I know in a case like this, these

7    are -- these dates make a difference to you, and so I don't --

8    I'm not trying to jam it.

9              MR. PAK:  Your Honor, if I may --

10             THE COURT:  Mr. Pak.

11             MR. PAK:  -- just on that one point?

12             THE COURT:  Sure.

13             MR. PAK:  We do this all the time in patent cases --

14             THE COURT:  Yes, of course you do.

15             MR. PAK:  -- in the ITC, Eastern District of Texas.

16    We've had *Markman* -- some courts don't even issue *Markman*

17    orders until the day before trial.  We have --

18             THE COURT:  Yeah.

19             MR. PAK:  -- experts, they have very sophisticated

20    experts that they have disclosed.  We do this all the time.  We

21    do an expert report to show -- you present your opinions on the

22    one side of constructions, you have another.  We do this all

23    the time.

24             THE COURT:  Yeah.

25             MR. PAK:  I think the summary judgment motions will be

1    framed in exactly the same manner.

2              THE COURT:  Many judges combine *Markman* --

3         MR. PAK:  Absolutely, your Honor.

4              THE COURT:  -- with summary judgment, and so that's

5    what you have to do.  I mean, judges on this court, but judges

6    throughout the country.

7         MR. PAK:  Absolutely, your Honor.  I --

8         THE COURT:  Why --

9         MR. PAK:  For all the reasons we talked about --

10        THE COURT:  Okay.

11        MR. PAK:  -- we think that August would make sense --

12        THE COURT:  Okay.

13        MR. PAK:  -- to do this.

14             THE COURT:  Well, let's do that.  Frankly,

15    September -- August -- yeah, that works for me.

16             You are going to, if there is some difficulty with a

17    witness on any of these dates, you'll meet and confer.

18        MR. PAK:  Yes.

19             THE COURT:  What I would -- and then I'm going to --

20    I'd like -- and I think within two weeks is fine, if you'd send

21    me a stip and order filling in all of the Patent Local

22    Rule-related dates leading up to -- well, I think you can do

23    many of them now --

24        MR. PAK:  Yes.

25             THE COURT:  -- and just fill in as much of that as

1    possible, and I'm expecting that that will just be an

2    agreement, that there won't be any difficulty in working out

3    these dates.  Some of them are just applying the rule, and so

4    it's getting out a calendar.

5            All right.  Let's move on, then.  Another issue that

6    had come up was the issue of discovery, and that was whether

7    all of the discovery in all four cases would be deemed

8    discovery in this case, and Mr. Ferrall, I think your

9    opposition to that was based on having a mountain of discovery

10   without being able to locate the responsive documents to this

11   case.

12          **MR. FERRALL:**  Well, right, and Mr. Silbert's going to

13   address --

14          **THE COURT:**  Okay, good.

15          **MR. SILBERT:**  Well, yes, your Honor, that's part of

16   the issue.  It's -- there absolutely are a mountain of

17   documents in the ITC litigation --

18          **THE COURT:**  Yeah.

19          **MR. SILBERT:**  -- that's an understatement, and I think

20   it's 4 to 5 million pages of documents that have been produced,

21   total, in that case.

22          As Mr. Pak just explained to you a few minutes ago,

23   the cases largely do not overlap.  In other words, this case,

24   both the copyright claims and the two patents at issue are

25   directed to Command Line Interfaces.  The 12 patents in the two

1    ITC cases are not directed to Command Line Interfaces or

2    anything particularly close to them.  There are 12 different

3    patents, they're directed to various things, but none of them

4    focus on CLIs, and that's why counsel for Cisco explained to

5    you that they put these two patents in this case --

6              **THE COURT:**  Yeah, right.

7              **MR. FERRALL:**  -- not to try to settle Circuit

8    jurisdiction, but because these two patents related to

9    something different than those patents.

10             So there's a vast amount of evidence; the vast

11   majority of it is probably completely irrelevant to this case,

12   and so one point is, it's just not going to help very much in

13   terms of easing the discovery burden to try to say -- to

14   suddenly cross-apply all of that, all those issues -- all those

15   documents.

16             Now, if that were the only issue, then maybe we'd say,

17   okay, maybe it's not going to help very much, but let's go

18   ahead and do it, because obviously, to the extent there's a way

19   for Arista to reduce the discovery burden and expense, which is

20   quite significant in a case like this, you know, it would look

21   for opportunities to do that.

22             **THE COURT:**  Now, is your firm representing Arista in

23   the other cases?

24             **MR. FERRALL:**  We have appeared in those cases, in the

25   ITC cases, but we are not --

1      **THE COURT:**  You're not --

2      **MR. FERRALL:**  -- principally representing them.  It's

3  Fish & Richardson.

4      **THE COURT:**  Okay.

5      **MR. FERRALL:**  The problem is, there are very

6  significant risks to Arista of taking those documents in the

7  ITC case and making them part of the record in this case, and

8  they basically come down to the issue of confidentiality.

9  There is extremely sensitive -- extremely sensitive -- business

10  information of Arista that's all over those millions of

11  documents that are in the ITC proceeding, and that's not all.

12      **THE COURT:**  And those are better protected in the ITC

13  proceeding than they are here?

14      **MR. FERRALL:**  Absolutely, and the ITC -- and your

15  Honor's mentioned you've never had the pleasure of being in the

16  Eastern District of Texas, you'd really trust me you've never

17  had the pleasure, of being at the ITC.

18      **THE COURT:**  (Laughs.)

19      **MR. FERRALL:**  The ITC works in a particular way, and

20  with respect to discovery and ordering discovery, and I think

21  it's fair to say they're effectively a steamroller.  I mean,

22  you have to produce every last thing.  You have to turn the

23  company upside down.

24          The flip side of that is that they're extremely

25  protective of confidentiality, and so nobody can see anything,

1    the courtroom is sealed --

2                  **THE COURT:**  Um-hum.

3                  **MR. FERRALL:**  -- for trial, et cetera, and so there's

4    a lot of Arista information.  There's also a great deal of

5    third-party sensitive confidential information, that there's --

6    of record in the ITC case.

7                  And so in federal court, of course, there are

8    protective orders, there are confidentiality protections.

9    They're not nearly as strong --

10                  **THE COURT:**  Sure.

11                  **MR. FERRALL:**  -- as they are in --

12                  **THE COURT:**  Well, I mean, we certainly, in the

13    discovery process, we can develop a protective order, but the

14    courtroom is open --

15                  **MR. FERRALL:**  Right.

16                  **THE COURT:**  -- and the trial is public --

17                  **MR. FERRALL:**  Correct.

18                  **THE COURT:**  -- and it's highly unusual to close the

19    courtroom, even for limited periods of time, once we're in

20    trial.

21                  **MR. FERRALL:**  Yes, we are absolutely --

22                  **THE COURT:**  So you all know that, and that's my

23    practice, as well.

24                  **MR. FERRALL:**  Yes, we expect that, and that's for all

25    good reasons, because the courts are supposed to be open to the

1    public --

2             THE COURT:  Yes.

3             MR. FERRALL:  -- to the extent that they can be, but

4    it creates a very different world --

5             THE COURT:  Sure.

6             MR. FERRALL:  -- and a different set of risks for

7    having a bunch of highly confidential information be put into

8    the record in this case.

9             Now, a lot of Arista's confidential information is

10   going to be put into the record in this case --

11            THE COURT:  Sure.

12            MR. FERRALL:  -- because it has to be.  That's just

13   life, and we understand that, but what we don't want to do, and

14   very strenuously oppose, is to have a situation where there are

15   literally millions of pages of extremely sensitive information

16   of both Arista and of our customers, of third parties, whose

17   interests are implicated, that get put into this case for no

18   reason.

19            THE COURT:  Yeah, I think that's my -- that's where

20   I would fall on this.

21            I also feel that the confusion -- well, confusion is

22   the wrong word, but I'm really concerned with the lack of

23   clarity of the response to discovery in this case, based upon

24   the merging of all the discovery from all of the cases, is a

25   concern to me, and, you know, especially down the road, if

1    I were to ever be confronted with an *in limine* motion based

2    upon the failure of discovery, it would essentially be -- there

3    would be no way to make such a motion and to protect.

4            I also think the cost involved in unsorted production

5    of documents that much of which is clearly irrelevant to the

6    case, again, is a way of causing an inefficiency in this case.

7    So I'm not inclined to allow all that discovery.

8            Now, that's not to say that you can't designate

9    certain documents or -- that have already been produced by --

10   that you have access to, by some -- I mean, if they've been

11   identified page by page, that they can't be designated.

12   Frankly, it's usually easier just to re-produce them than go

13   through that.

14           So I know that doesn't actually happen, but I'm not

15   inclined to order that at this point.  I don't see any good

16   cause, given the different -- the whole point of this case

17   being distinct from the other cases.

18           **MR. FERRALL:**  Thank you, your Honor.

19           **THE COURT:**  All right.  Are there other issues,

20   Mr. Pak?

21           **MR. PAK:**  Your Honor, if I may just -- if I could have

22   a moment --

23           **THE COURT:**  Sure.

24           **MR. PAK:**  -- to address that last issue?

25           **THE COURT:**  Yeah.

```
 1        MR. PAK:  And I'll be very brief, but your Honor, in
 2   this Ninth Circuit, we actually have a strong preference that
 3   litigation records in collateral litigation, especially between
 4   parties, are made freely available, and this is one of many
 5   cases, but the State Farm case, 331 F.3d 1122, Ninth Circuit,
 6             "This court strongly favors access to discovery
 7             materials to meet the needs of the parties engaged in
 8             collateral litigation.  Allowing the fruits of one
 9             litigation to facilitate preparation in other cases
10             advances the interests of judicial economy by avoiding
11             the wasteful duplication of discovery.
12             "Where reasonable restrictions on collateral
13             disclosure will continue to protect an affected
14             party's legitimate interests in privacy, a collateral
15             litigant's request to the issuing court to modify an
16             otherwise proper protective order so that collateral
17             litigants are not precluded from obtaining relevant
18             materials should be generally granted."
19        Every -- virtually every case, your Honor, that has
20   ever dealt with this issue in this district have allowed for
21   cross-use, including the Oracle v. SAP case and countless
22   others, and here's the simple reason why.  Your Honor, we live
23   in an electronic world.  We don't use paper.
24        THE COURT:  No.
25        MR. PAK:  The documents that they're talking about are
```

1    documents that are sitting in a server that have now already

2    been constructed, they have reviewed all of these documents for

3    production in the ITC case for privilege, for relevance,

4    coding.  All of that is sitting in a server that Keker's

5    attorneys have access to, that the other attorneys of record in

6    the ITC case all have access to.

7         What we're talking about, your Honor, is not a

8    question of admissibility.  We have tried the most confidential

9    of cases in this district, on -- whether it's trade secret

10   cases --

11        THE COURT:  Absolutely, yeah.

12        MR. PAK:  -- patent cases, and all we're asking for

13   your Honor is not to take millions of records and dump it into

14   the public record.

15        What we're saying is, for discovery purposes, there is

16   absolutely no reason why two litigants who are already engaged

17   in cross-use -- and by the way, your Honor, there are two ITC

18   investigations that are pending, with different set of patents.

19   Both Arista and Cisco have entered into a stipulation of

20   cross-use on those two cases.

21        And not only that, your Honor.  Those two cases have

22   corresponding District Court actions here, which have been

23   stayed.

24        THE COURT:  Yes, I know that.

25        MR. PAK:  All right, that's going to be part of this

1   record in Northern California regardless, because once -- at

2   the ITC, you cannot award damages.  All you can do is issue an

3   exclusionary order.  That record is going to be a record here

4   in Northern California, for subsequent proceedings in damages

5   in this case, if there's a liability finding.

6          So this whole notion that somehow there is any harm to

7   Arista from precluding cross-use of documents and witness

8   testimony that is already being gathered and produced makes no

9   sense.  Those records will be part of the Northern California

10  district record.  We have protective orders that have been

11  blessed by all the various judges in the Federal Circuit that

12  protect us.  We're going to be disclosing source code.  Cisco

13  will be disclosing its crown jewels --

14         **THE COURT:**  Well, that's going to happen no matter

15  what.

16         **MR. PAK:**  No matter what, your Honor.  But here's the

17  most important thing about relevance, your Honor:  The number

18  one witness that we believe on the technical issues in this

19  case is a gentleman named Ken Duda, who is the CTO of Arista.

20  You've seen some of his statements.  He is identified in the

21  initial disclosures as the person with the most knowledge about

22  the Command Line Interface for Arista.

23         He's being deposed next week --

24         **THE COURT:**  Oh.

25         **MR. PAK:**  -- in the ITC cases.  Thousands of his

1    e-mails have been produced.  All of the testimony that he will

2    give is highly relevant to not only technical development of

3    the accused products, but to how they overlap with respect to

4    Cisco's products, damages, lost profits, domestic industry.

5    These are all issues that are going to be litigated in full,

6    and those cases, your Honor, are going to trial in September

7    and November of this year.

8            THE COURT:  In the ITC.

9            MR. PAK:  In the ITC.  They move very fast.

10           So what we're talking about, your Honor, is the

11   incredible amount of efficiency that we will gain by having not

12   only the litigation discovery records, but the ITC proceedings,

13   the very proceedings --

14           THE COURT:  So that would then require Arista to take

15   4 to 5 million documents to look for the, conservatively

16   speaking, million that are relevant to this case.

17           MR. PAK:  No, not at all, your Honor, because all they

18   have to do --

19           THE COURT:  And how is that?

20           MR. PAK:  Because for us, all they have to do is --

21   first of all, there is no production of documents.

22           THE COURT:  No, so it's all word search.

23           MR. PAK:  It's all word search, your Honor.

24           THE COURT:  And they can do that themselves.

25           MR. PAK:  Absolutely, or we could do it.

1          **THE COURT:**  I see.

2          **MR. PAK:**  I mean, all -- your Honor, in terms of the

3     burden of any kind of searching, we're not asking for them to

4     incur any kind of attorney cost, or any kind of document

5     production cost.

6          All we're simply saying is that I'm not of record at

7     the ITC.  I don't represent Cisco there.  I, as Cisco's

8     attorney in this case, all I need is a password to access --

9          **THE COURT:**  Um-hum, I see.

10         **MR. PAK:**  -- that electronic database.  My attorneys

11    from Quinn Emmanuel will conduct fewer searches against that,

12    to find what we think is relevant.

13         And when it comes down to protecting confidential

14    information for trial purposes, out of the millions of

15    documents, we're going to be talking about, at most, a couple

16    of hundred exhibits.  We will have admissibility hearings on

17    those exhibits.  We will talk about how the -- you know, to the

18    extent that there is a truly exceptional case, for example,

19    source code, we work this out all the time where parties will

20    only present just the amount of information that they need to

21    actually present their case.  We will keep of rest of it

22    sealed --

23         **THE COURT:**  Sure.

24         **MR. PAK:**  -- the source code.  We can deal with all

25    these issues.

1          So your Honor, I think, if you step back and think

2     about cost, there's absolutely no impact on them.  If you talk

3     about administrative burden, absolutely no impact.  If you

4     think about the strong policy preference in this district and

5     this circuit, Ninth Circuit, makes it very clear -- and this is

6     case after case after case, and we're happy to submit more

7     cases, your Honor -- that is a strong policy interest in

8     avoiding wasteful duplication of effort, and this court has

9     numerously and repeatedly ruled on this in our favor, your

10    Honor --

11         THE COURT:  Of course, it's your -- yes, well...

12         MR. PAK:  And your Honor, here's the bottom line.  For

13    example, let's take Mr. Duda.  He is going to be deposed.  The

14    testimony that he's going to give are potentially judicial

15    admissions that are highly relevant to this case.  If somehow,

16    because of a procedural issue, protective order issue, we are

17    not permitted to obtain that --

18         THE COURT:  Well, any protective order issued in the

19    other cases is going to have to be modified, which I -- I mean,

20    because I don't know that it will include use in other

21    litigation.

22         MR. PAK:  Your Honor, the parties are actually in

23    negotiation right now.  The attorneys representing Arista and

24    Cisco are -- in the ITC cases are already in negotiations about

25    cross-use --

1          **THE COURT:**  Okay.

2          **MR. PAK:**  -- with respect to modifying the protective

3     order in the ITC case.

4          **THE COURT:**  All right.

5          **MR. PAK:**  So that is not a problem for us, to modify

6     the protective order there to allow for cross-use.

7          **THE COURT:**  Well, it's not my concern.  You'll have to

8     deal with that.

9          **MR. PAK:**  Yes, we will deal with that.

10         **THE COURT:**  Yes.

11         **MR. PAK:**  All we're saying, your Honor, is there's

12    absolutely no burden to them whatsoever.  We can deal with all

13    of their concerns.

14         **THE COURT:**  All right.

15         **MR. PAK:**  The bottom line is, there's a tremendous

16    amount of efficiency to gain, and I think that every case law

17    that you're ever going to find on this issue will say there is

18    absolutely no barrier to cross-use.

19         **THE COURT:**  All right.  Mr. Silbert, let me hear,

20    just, a wrap-up on that.

21         **MR. SILBERT:**  If I could just clarify, because we seem

22    to have deviated a little bit --

23         **THE COURT:**  Yeah.

24         **MR. SILBERT:**  -- from what I thought we were talking

25    about, and I just want to be clear, where, if Mr. Pak says, for

example, that Ken Duda's testimony in the ITC case is relevant,

or as he puts it, contains critical admissions for this case,

then that testimony would be produced in this case, because it

is relevant.

THE COURT:  Yes.

MR. FERRALL:  Our proposal is that documents that are

relevant to this case will be produced in this case.  There's

no dispute about that.  And documents that would be called for

in discovery will be produced in this case.

THE COURT:  But if you are given access to the server

created, and you can do the word search that you want, then

you're not going to be -- you're going to be able to control

the information you receive.

MR. SILBERT:  I mean, no more than every litigant in

every other case --

THE COURT:  Sure.

MR. SILBERT:  -- in a typical document a -- that's the

way a typical document production works.

THE COURT:  Yeah, of course.

MR. SILBERT:  It's resolved with lots of different

means, but it's resolved with agreeing on search terms to use

and a custodian list and things like that, and there's no

reason those processes --

THE COURT:  I would expect them to be used.

MR. SILBERT:  Exactly.  So the issue isn't, are they

1    going to be deprived of relevant evidence.  They're going to

2    get all the relevant evidence.  The issue is, do we take

3    millions of documents that are not relevant, that would not

4    otherwise be produced, that are highly sensitive, and then make

5    them of record in this case, where they can be used with much

6    more lack of precision, and --

7         **THE COURT:**  Well, I don't think I'm actually buying

8    the -- I think we can protect, because until you enter the

9    courtroom, you have complete control over the lockbox that

10   these documents are in, and you can write protective orders

11   that will protect you, and they can be identical to what the

12   ITC provides.

13        As you move into trial or motions, of course, we're

14   guided by relevance, and so irrelevant documents are never

15   coming into court.  And so we can certainly develop a process

16   where you have some control before the documents -- where you

17   can file them under seal with a request before they're made

18   public, and we can go through them.  I think that we can

19   protect the confidentiality.

20        I don't actually have that concern, because once we

21   winnow it down to the documents you need for trial, it doesn't

22   matter whether it started from an universe of 5 million

23   documents or an universe of 500,000 documents, they're still

24   going to be highly confidential, and the Court is going to need

25   to determine at the time whether anything is going to be

1    sealed, and it -- I mean, sometimes the courtroom is open, the

2    document is ultimately sealed, so that it's not -- it doesn't

3    have the lingering availability, and it's just in the ether of

4    the trial.

5              MR. SILBERT:  Yeah, I mean, I will say that Mr. Pak is

6    certainly right that we try in this --

7              THE COURT:  Sure.

8              MR. SILBERT:  -- district extremely -- cases involving

9    extremely confidential information.

10             THE COURT:  Yeah.

11             MR. SILBERT:  There is collateral damage from that

12   that's very real to a lot of companies that often comes in the

13   aftermath of a trial --

14             THE COURT:  Well, if, as you describe them, as truly

15   irrelevant, then I can assure you they won't be part of this

16   record.

17             MR. SILBERT:  Well, fair enough.  Again, I understand.

18   I understand what --

19             THE COURT:  All right, here's what I'm going to

20   suggest.  I think you need to get started on the

21   cross-discovery.  If a problem arises, if you feel that it is

22   causing you to be unable to get access to the information that

23   you're entitled to in a manner that you can use it, then you

24   can come back, and I think maybe that's our best way to

25   approach it.

1          All right, you're going to check dates.  I really --

2    I do appreciate the complexities in this case, but I think

3    we've been able to work through a few things today, and I'm not

4    inclined to set another case management conference.  I think

5    you'll bring issues to my attention as you need.

6          Is that agreed?

7          MR. FERRALL:  Yes, your Honor.

8          MR. SILBERT:  That's fine, your Honor.

9          THE COURT:  Good, all right.  Thank you all.

10         MR. PAK:  Thank you, your Honor.

11         THE CLERK:  Court is adjourned.

12                                                   2:32 p.m.

13                          ---o0o---

14

15

16

17

18

19

20

21

22

23

24

25

1

2

3                    **CERTIFICATE OF TRANSCRIBER**

4

5           I, Leo Mankiewicz, certify that the foregoing is a

6  true and correct transcript, to the best of my ability, of the

7  above pages of the official electronic sound recording provided

8  to me by the U.S. District Court, Northern District of

9  California, of the proceedings taken on the date and time

10 previously stated in the above matter.

11          I further certify that I am neither counsel for,

12 related to, nor employed by any of the parties to the action in

13 which this hearing was taken; and, further, that I am not

14 financially nor otherwise interested in the outcome of the

15 action.

16

17 _____  05/18/2015

18          Signature of Transcriber        Date

19

20

21

22

23

24

25