1

2                    IN THE UNITED STATES DISTRICT COURT

3                 FOR THE NORTHERN DISTRICT OF CALIFORNIA

4                           SAN JOSE DIVISION

5

    CISCO SYSTEMS, INC.,              )  CV-14-5344-BLF
6                                     )
                     PLAINTIFF,       )  SAN JOSE, CALIFORNIA
7                                     )
              VS.                     )  JULY 2, 2015
8                                     )
    ARISTA NETWORKS, INC.,            )  PAGES 1-34
9                                     )
                     DEFENDANT.       )
10                                    )

11

12                    TRANSCRIPT OF PROCEEDINGS
               BEFORE THE HONORABLE BETH LABSON FREEMAN
13                  UNITED STATES DISTRICT JUDGE

14

15   A P P E A R A N C E S:

16   FOR THE PLAINTIFF:       KATHLEEN MARIE SULLIVAN
                              QUINN EMANUEL
17                            51 MADISON AVE, 22D FLOOR
                              NEW YORK, NY 10022
18

19   FOR THE DEFENDANT:       ELIZABETH MCCLOSKEY
                              DAVID JASON SILBERT
20                            KEKER & VAN NEST, L.L.P.
                              633 BATTERY STREET
21                            SAN FRANCISCO, CA 94111-1809

22              APPEARANCES CONTINUED ON THE NEXT PAGE

23   OFFICIAL COURT REPORTER:     SUMMER FISHER, CSR, CRR
                                  CERTIFICATE NUMBER 13185
24

25           PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY
                 TRANSCRIPT PRODUCED WITH COMPUTER

```
1      FOR THE PLAINTIFF:        MARK YEH-KAI TUNG
                                 QUINN EMANUEL URQUHART & SULLIVAN LLP
2                                555 TWIN DOLPHIN DRIVE, 5TH FLOOR
                                 REDWOOD SHORES, CA 94065
3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1    SAN JOSE, CALIFORNIA                      JULY 2, 2015

 2                    P R O C E E D I N G S

 3        (WHEREUPON, COURT CONVENED AND THE FOLLOWING PROCEEDINGS

 4    WERE HELD:)

 5            THE CLERK:  CALLING CASE 14-5344.  CISCO VERSUS

 6    ARISTA NETWORKS.

 7            COUNSEL, PLEASE COME FORWARD AND STATE YOUR APPEARANCES.

 8            MS. SULLIVAN:  GOOD MORNING, YOUR HONOR.

 9            KATHLEEN SULLIVAN FROM QUINN EMANUEL FOR PLAINTIFF CISCO,

10    TOGETHER WITH MY COLLEAGUE MARK TUNG.

11            THE COURT:  GOOD MORNING.

12            MCCLOSKEY:  GOOD MORNING.

13        ELIZABETH MCCLOSKEY ON BEHALF OF ARISTA NETWORKS, ALONG

14    WITH MY COLLEAGUE DAVID SILBERT.

15            THE COURT:  GOOD MORNING, MS. MCCLOSKEY.

16        ALL RIGHT.  PLEASE BE SEATED.

17        I DON'T KNOW WHICH OF YOU IS GOING TO ARGUE, IT HELPS ME

18    IF YOU COME UP TO THE PODIUM.  AND I WOULD LIKE TO HEAR SOME

19    ARGUMENT ON THE CASE, BUT I THINK I HAVE A FEW QUESTIONS AS

20    WELL.

21        SO MS. MCCLOSKEY, WOULD YOU LIKE TO BEGIN?

22            MCCLOSKEY:  SURE.  THANK YOU.

23        ARISTA MOVED TO DISMISS TWO CLAIMS.  ON THE FIRST,

24    INDIRECT INFRINGEMENT, CISCO ADMITS THAT THEY ARE NOT ALLEGING

25    PRE-SUIT KNOWLEDGE OF THE PATENTS IN SUIT.  IT IS CLEAR THEN
```

1    THAT ON THAT COUNT, THE MOTION TO DISMISS SHOULD BE GRANTED.

2    THE COURT:  ARE YOU LOOKING FOR A MOTION TO DISMISS

3    TO CLARIFY?

4    MCCLOSKEY:  YES, THAT'S RIGHT.

5    THE COURT:  AS THEY'VE ACKNOWLEDGED IN THE PLEADINGS.

6    MCCLOSKEY:  EXACTLY.  BECAUSE THE TIMING AS ALLEGED

7    IN THEIR AMENDED COMPLAINT IS AMBIGUOUS.

8    FOR THIS REASON, ARISTA ALSO MOVED TO DISMISS CISCO'S

9    WILLFUL INFRINGEMENT CLAIM.  THE FEDERAL CIRCUIT HAS CLEARLY

10   HELD IN SEAGATE THAT WILLFULNESS ALLEGATIONS CANNOT BE BASED

11   SOLELY ON POST-SUIT KNOWLEDGE OF PATENTS IN SUIT.

12   AND COURTS IN THIS DIRECT HAVE ALMOST UNANIMOUSLY

13   ACCEPTED THAT.  JUDGES WARE, SEEBORG, AND ROGERS HAVE ALL

14   DISMISSED THE CLAIMS AND THE EXACT SITUATION WE HAVE HERE WHERE

15   THE DEFENDANT DID NOT HAVE PRE-SUIT KNOWLEDGE OF THE PATENTS IN

16   SUIT.

17   CISCO HAS CONCEDED THAT THEY ARE NOT ALLEGING THAT ARISTA

18   HAD PRE-SUIT KNOWLEDGE OF THE PATENTS IN SUIT.  SO THE ONLY

19   DISPUTE IS WHETHER CISCO CAN DUCK THE FEDERAL CIRCUIT'S RULE BY

20   AMENDING ITS COMPLAINT AND ARGUING THAT THE ORIGINAL COMPLAINT

21   IMPARTED THE REQUIRED KNOWLEDGE.

22   THIS FLIES IN THE FACE OF SEAGATE.  I THINK IT'S

23   IMPORTANT TO BE CLEAR ABOUT WHAT CISCO IS ALLEGING.  CISCO

24   FILED ITS SUIT ON DECEMBER 5TH OF LAST YEAR AND SERVED ARISTA

25   FOUR DAYS LATER ON DECEMBER 9TH.  CISCO ALLEGES THAT ONE DAY

1   LATER, ON DECEMBER 10TH, ARISTA RELEASED QUOTING FROM

2   PARAGRAPH 8 OF THE AMENDED COMPLAINT, A NEW VERSION OF EOS,

3   DUBBED EOS PLUS.

4        THE COURT:  DOES IT MATTER WHAT THE DIFFERENCE IS

5   BETWEEN THE EOS AND THE EOS PLUS, AS TO WHETHER THIS IS WILLFUL

6   MISCONDUCT IN THE FACE OF KNOWLEDGE OF A PATENT, NOT

7   RECONSIDERING THE ISSUANCE OF A NEW PRODUCT, AS OPPOSED TO

8   CONTINUING TO MARKET AND SELL AN EXISTING PRODUCT AS OPPOSED TO

9   FOLDING UP CAMP AND, WHICH IS NOT REQUIRED, JUST BECAUSE OF THE

10  BASIS OF A LAWSUIT BEING FILED?

11        MCCLOSKEY:  I THINK UNDER SEAGATE IT DOESN'T MATTER.

12   SEAGATE CLEARLY HOLDS THAT POST-SUIT KNOWLEDGE OF THE

13  PATENT IN SUIT IS SIMPLY NOT ENOUGH.

14        THE COURT:  BUT SEAGATE DIDN'T CONSIDER A SITUATION

15  WHERE THERE WAS A DIFFERENT PRODUCT.

16   IN FACT, NONE OF THE CASES -- YOU CERTAINLY CITE THE

17  RIGHT CASES, YOU ARE GIVING ME THE CORRECT HOLDING IN THOSE

18  CASES.  BUT NONE OF THOSE CASES DEALT WITH A SITUATION WHERE

19  THERE WAS POTENTIALLY A NEW PRODUCT.

20   MS. SULLIVAN WILL TELL ME WHETHER SHE CAN REALLY PERSUADE

21  ME, AND THERE'S BEEN ENOUGH ALLEGED TO DISTINGUISH THIS

22  CIRCUMSTANCE FROM THE ORDINARY COURSE OF EVENTS WHERE IT'S

23  THE -- WHERE THE DEFENDANT CONTINUES IN STATUS QUO UNTIL FOUND

24  LIABLE OR SETTLING THE CASE WHICH IS ALLOWED UNLESS THERE'S

25  PRE-SUIT KNOWLEDGE.

1    SO THE REAL QUESTION HERE FOR ME IS WHETHER THIS IS

2    DIFFERENT.

3         MCCLOSKEY:  I THINK THE ANSWER IS CLEARLY NO.

4         I MEAN, HERE ALL THEY'RE ALLEGING CONSTITUTES WILLFUL

5    INFRINGEMENT IS THAT ONE DAY AFTER THEY WERE SERVED WITH THE

6    COMPLAINT THEY ISSUED A NEW VERSION OF A PRODUCT.

7         THEIR ALLEGATIONS IN THEIR OPPOSITION AS TO HOW THIS

8    CONSTITUTED A NEW AND DIFFERENT PRODUCT IS SIMPLY NOT WHAT

9    THEIR AMENDED COMPLAINT ALLEGES.  IT ALLEGES THAT IT RETAINS

10   THE INFRINGING FEATURES AND FUNCTIONALITY OF THE EOS.

11        THE COURT:  WELL, SO OFTEN THINGS BECOME CLEARER IN

12   THE OPPOSITION TO THE MOTION TO DISMISS THAN THEY DID WHEN THE

13   PLEADING WAS FILED.  THIS WOULDN'T BE THE FIRST TIME, WOULD IT?

14        MCCLOSKEY:  NO, IT WOULDN'T.

15    ANY OTHER QUESTIONS?

16        THE COURT:  NO, NOT RIGHT NOW.  I WILL COME BACK TO

17   YOU.  LET ME HEAR THE OPPOSITION FROM MS. SULLIVAN.

18        AND MS. SULLIVAN, YOU KNOW WHERE I'M GOING HERE.

19        MS. SULLIVAN:  I KNOW EXACTLY, YOUR HONOR.

20   YOUR HONOR, FOR CONVENIENCE MAY YOU HAND YOU AND YOUR CLERK A

21   BINDER.  IT HAS SOME SLIDES AT THE FRONT THAT I CAN REFER TO.

22        THE COURT:  GOOD.  THANK YOU.

23        MS. SULLIVAN:  SO YOUR HONOR, IF WE COULD FOCUS ON

24   THE FIRST SLIDE OF THE FRONT OF YOUR BINDER IT'S, IT'S ACTUALLY

25   PAGINATED AS TWO.

```
1              THE COURT:  YES.

2              MS. SULLIVAN:  SO THAT POPS OUT FOR YOU THE KEY

3    PARAGRAPH IN THE COMPLAINT.

4         AND THE ANSWER TO YOUR QUESTION, YOU WENT RIGHT TO THE

5    HEART OF IT IS, CISCO ABSOLUTELY ALLEGED WILLFUL INFRINGEMENT

6    THROUGH THE ISSUANCE OF A NEW PRODUCT, COULDN'T BE PLANER FROM

7    THE TEXT OF PARAGRAPH 58 OF THE AMENDED COMPLAINT.

8         WE REFER TO THE BRINGING TO MARKET OF INFRINGING PRODUCTS

9    MEANING A NEW PRODUCT IN ADDITION TO THE PRIOR PRODUCTS, THAT'S

10   IN LINE 2, UNDERLINED IN RED.

11        AND IN LINE 3 OF PARAGRAPH 58 WE SPECIFY FIGHT

12   SPECIFICALLY FOR IQBAL TWOMBLY PURPOSES WHAT THE NEW PRODUCT

13   WAS, IT WAS THE RELEASE OF EOS PLUS ON DECEMBER 10TH, FIVE DAYS

14   AFTER CISCO FILED THE COMPLAINT.

15        SO THIS COULDN'T BE MORE DIFFERENT FROM THE CASES THAT

16   ARISTA HAS CITED TO.

17        OF COURSE SEAGATE AND THE NORTHERN DISTRICT CASE THAT IS

18   FOLLOW IT HAVE HELD THAT YOU CAN'T USE YOUR AMENDED COMPLAINT

19   TO, AS A BASIS FOR NOTICE THAT THEN ALLOWS YOU TO ALLEGE

20   WILLFULNESS FOR ALL THE PRIOR CONDUCT, THE PRE-FILING CONDUCT.

21   THAT'S NOT WHAT WE ARE TRYING TO DO.

22              THE COURT:  WELL, WE MAY AS WELL HAVE ENHANCED

23   DAMAGES IN ALL CASES IF IT'S GOING TO BE THAT SIMPLE.

24              MS. SULLIVAN:  THAT'S EXACTLY RIGHT, YOUR HONOR.

25         AND WE WOULDN'T BE BEFORE YOU TODAY URGING YOU TO LET THE
```

1    COMPLAINT GO FORWARD IF THAT'S WHAT WE WERE DOING.  WE ARE NOT

2    DOING THAT AT ALL.

3         THIS IS A CASE IN WHICH ARISTA, HAVING RECEIVED OUR

4    ORIGINAL COMPLAINT FIVE DAYS LATER, RATHER THAN HITTING THE

5    PAUSE BUTTON, RATHER THAN WONDERING IF IT SHOULD RELEASE A NEW

6    PRODUCT WITH GREAT FANFARE AS A NEW PRODUCT WITH NEW

7    FUNCTIONALITY, RELEASE THE NEW PRODUCT WITH RECKLESS

8    INDIFFERENCE.

9         THE COURT:  SO DO I NEED TO BE CONCERNED AS TO WHAT A

10    NEW PRODUCT IS?

11         THIS IS A -- IT COULD BE A NEW VERSION OF AN OLD PRODUCT,

12    IT COULD HAVE SOME MINOR BUG FIXES AND IT GETS A NEW NAME TO

13    DISTINGUISH IT.

14         I WANT TO BE SURE THAT, AND PERHAPS THIS CAN BE AMENDED

15    TO ACTUALLY ALLEGE THAT IT IS A NEW PRODUCT BECAUSE YOU DO SAY

16    IT CONTINUES TO INCORPORATE THE INFRINGING CHARACTERISTICS

17    WHICH MIGHT TELL ME ACTUALLY IT'S THE SAME PRODUCT WITH A FEW

18    NEW BELLS AND WHISTLES.

19         MS. SULLIVAN:  IT'S A FAIR QUESTION, YOUR HONOR.  BUT

20    WE ARE ALLEGING IT'S A NEW PRODUCT.  AND LET ME BE ABSOLUTELY

21    CLEAR.

22         THE COURT:  DOES THAT TERM ACTUALLY HAVE MEANING OR

23    IS THAT JUST CONCLUSORY FOR YOU TO CALL IT A NEW PRODUCT?

24         MS. SULLIVAN:  I UNDERSTAND YOUR HONOR'S CONCERN THAT

25    YOU DON'T WANT TO THE ALLOW WILLFULNESS ALLEGATIONS FOR EVERY

1    NEW VERSION OF AN OLD PRODUCT.  BUT WHAT WE ALLEGED HERE IS A

2    NEW PRODUCT.  AND DON'T TAKE IT FROM ME, TAKE IT FROM ARISTA.

3         BECAUSE YOUR HONOR, IF I COULD JUST FOCUS YOU ON FOOTNOTE

4    12, OF COURSE ANYTHING THAT'S REFERENCED IN THE COMPLAINT,

5    INCLUDING BY WEBSITE REFERENCE, IS INCORPORATED BY REFERENCE WE

6    KNOW THAT TELL ABS VERSUS MAKER AND NINTH CIRCUIT LAW.

7         AND WE POPPED OUT ON SLIDE NUMBER 3 FOR YOU SOME KEY

8    QUOTES FROM THE PRESS RELEASE ISSUED BY ARISTA ON

9    DECEMBER 10TH, 2014, TOUTING THE NEW PRODUCT.

10        AND WE JUST, YOU CAN LOOK THROUGH IT FOR YOURSELF

11   YOUR HONOR, IT'S EXHIBIT 6 TO THE OPPOSITION TO THE MOTION TO

12   DISMISS, BUT YOU SEE THE LANGUAGE, WE ARE INTRODUCING EOS PLUS,

13   IT PROVIDES ADVANCED LEVEL OF PROGRAMMABILITY.  APPLICATION

14   WORK LOADS CAN NOW BE INTEGRATED WITH THE NETWORK IN A PROGRAM

15   ATTIC FASHION.

16        AND ARISTA HAS INTRODUCED, I'M SORRY, I WILL SLOW DOWN,

17   HAS INTRODUCED THE EOS SDK.  SO THE LANGUAGE ABOUT NOVELTY IS

18   ALL OVER THE PRESS RELEASE.

19        YOUR HONOR, WE ALSO, THIS REALLY, ARISTA CAN'T DENY THAT

20   IT TOUTED ITS PRODUCT WITH GREAT FANFARE AS A NEW PRODUCT.

21        THE COURT:  WELL, IT CAN PUFF ALL THEY WANT, IT

22   DOESN'T MEAN THEY'RE LIABLE FOR IT.

23        MS. SULLIVAN:  FAIR ENOUGH, YOUR HONOR.

24        BUT I WOULD SUGGEST THE TEST YOU SHOULD APPLY IS COULD WE

25   HAVE FILED A NEW COMPLAINT WITH SEPARATELY COMPENSABLE DAMAGES.

1    AND WE ARE CONFIDENT WE COULD HAVE FILED A NEW COMPLAINT WITH

2    SEPARATELY COMPENSABLE DAMAGES.

3        WE CITED TO YOUR HONOR IN THE OPPOSITION BRIEFING THE

4    APPLIED MEDICAL RESOURCES CASE FROM THE FEDERAL CIRCUIT THAT

5    NOTES THAT YOU CAN GET SEPARATELY COMPENSABLE DAMAGES FOR EACH

6    PRODUCT

7        THE COURT:  BUT HOW IS THAT ANALYSIS DIFFERENT THAN

8    THE CONTINUED INFRINGEMENT SCENARIO THAT SEAGATE AND ITS

9    PROGENY DEAL WITH SO THAT YOU FILE THE COMPLAINT IN DECEMBER,

10   THE COMPANY, THE DEFENDANT COMPANY CONTINUES TO MARKET THE

11   ALLEGED INFRINGING PRODUCT, AND THEN YOU FILE A NEW SUIT SAYING

12   THEY HAD KNOWLEDGE OF THE PATENT A MONTH AGO BEFORE THIS SUIT,

13   NEW SUIT WAS FILED AND THEY INFRINGE.

14       WHY IS THAT DIFFERENT THAN WHAT YOU HAVE HERE?

15       MS. SULLIVAN:  WE THINK YOU CAN APPLY A BRIGHT LINE

16   RULE HERE THAT SAYS THAT A NEW PRODUCT THAT IS TOUTED BY THE

17   COMPANY AS INVOLVING NEW INFRINGING FUNCTIONALITY, WELL THEY

18   WOULDN'T ALLEGE IT'S INFRINGING BUT NEW FUNCTIONALITY.

19       THE COURT:  I UNDERSTAND.

20       MS. SULLIVAN:  THAT THAT IS A BRIGHT LINE THAT

21   ENABLES YOU TO DISTINGUISH THOSE CASES.

22       THIS IS A COLORABLY DIFFERENT PRODUCT, THIS IS NOT JUST

23   ONE AND THE SAME LINE.  EVERY ONE OF THE CASES MY ADVERSARY

24   CITED FROM YOU FROM THE NORTHERN DISTRICT, THERE ISN'T A SINGLE

25   ALLEGATION OF ANY NEW INFRINGING PRODUCTS.

1        THE COURT:  I LOOKED FOR THE SAME THING, AND I AGREE

2   WITH YOU.

3        MS. SULLIVAN:  AND IT'S NOT THERE.

4        THE COURT:  SO IF YOU ARE URGING ME TO DEVELOP A

5   BRIGHT LINE RULE, WE GET RIGHT BACK TO MY INITIAL QUESTION,

6   WHAT IS A NEW PRODUCT?

7        BECAUSE THE PROBLEM I HAVE IS THAT THIS IS THE NATURE OF

8   SOFTWARE DEVELOPMENT.  EVERY TIME I OPEN MY IPAD I'VE GOT A NEW

9   VERSION, I'M THINKING, REALLY, I'VE GOT TO DO THIS AGAIN, EVERY

10  DAY EVERY PRODUCT IS UPDATED BECAUSE THE TECHNOLOGY EVOLVES SO

11  QUICKLY, SO I DON'T NEED TO TELL YOU THAT.

12       SO WHEN YOU ARE TALKING ABOUT, WHAT WOULD BE THE

13  EVOLUTION OF THIS PLEADING AND PROOF REQUIREMENT TO ALLOW -- TO

14  ABANDON THE PRE-SUIT KNOWLEDGE REQUIREMENT FOR WILLFULNESS,

15  THERE NEEDS TO BE SOME DEFINITION OF WHAT A NEW PRODUCT IS.

16       MS. SULLIVAN:  I UNDERSTAND, YOUR HONOR.

17       AND I AGREE WITH YOU COMPLETELY.  I THINK THIS IS AN EASY

18  CASE OF A NEW PRODUCT BECAUSE AS WE ALLEGED IN THE COMPLAINT

19  THROUGH THE PRESS RELEASE INCORPORATED.

20       ARISTA TOUTED IT AS A NEW PRODUCT THAT PROVIDED ADVANCES

21  OVER ITS PRIOR PRODUCT LINE.  I'VE TALKED ABOUT INTRODUCING IT.

22       WE CITE TO YOU ALSO IF YOU FLIP TO PAGE 4, SLIDE 4,

23  THERE'S CITED AN EXHIBIT 3 TO OUR OPPOSITION IS A QUOTE FROM

24  ARISTA'S OWN CEO MS. ULLAL, DESCRIBING HER PIONEERING

25  INNOVATIONS IN THE EOS PLUS.  WE THINK WE ARE MORE THAN OVER

1   THE LINE FOR PLEADING PURPOSES AT THE MOTION TO DISMISS STAGE

2   TO SAY IT'S A NEW PRODUCT.

3       WE THINK THAT LATER IF THERE'S ANY FACTUAL CONTROVERSY

4   OVER THAT IT SHOULD BE DEVELOPED AT TRIAL.  IT'S THE SAME

5   APPROACH JUDGE WILKEN TOOK IN THE PVT CASE THAT WAS CITED BY

6   JUDGE GILLIAM IN THE OPEN TV CASE.  THERE MAY BE FACTUAL ISSUES

7   ABOUT ENHANCED DAMAGES, WE WILL GET TO THOSE LATER IN THE

8   TRIAL.

9       SO YOUR HONOR, WE WOULD RESPECTFULLY SUGGEST THAT GIVEN

10  ARISTA'S OWN ADMISSIONS THIS IS A NEW PRODUCT CASE AT THE

11  PLEADING STAGE.

12      IF THEY CAN COME BACK AND SAY WE DIDN'T MEAN ANYTHING WE

13  SAID IN OUR PR STATEMENTS ABOUT HOW GREAT OUR NEW PRODUCT IS,

14  IT'S REALLY THE SAME OLD, SAME OLD, YOU CAN RESOLVE THAT LATER

15  AS A FACTUAL MATTER, BUT IT WOULDN'T BE APPROPRIATE TO CUT US

16  OFF AT THE PLEADING STAGE.

17      AND TO BE CLEAR, YOUR HONOR, WE ARE SEEKING ENHANCED

18  DAMAGES FOR THE POST FILING PERIOD, WE ARE ONLY SEEKING

19  ENHANCED DAMAGES FOR THE EOS PLUS PRODUCT, NOT THE PRE FILING

20  PRODUCT.

21      WE ARE NOT TRYING TO BOOTSTRAP OURSELVES INTO A

22  WILLFULNESS CASE FOR A PRE FILING CONDUCT.  THAT WAS WHAT

23  SEAGATE WANTED TO CUT OFF, AND WE ARE NOT TRYING TO DO THAT AT

24  ALL.

25          THE COURT:  BUT I'VE BECOME CONCERNED WITH THE

1     OVERRIDING -- I THINK THE OVERRIDING CONCERN IN THE PREVIOUS

2     CASES THAT A PARTY IS NOT, UNDER SEAGATE, REQUIRED TO STOP

3     MARKETING THE PRODUCT UPON BEING SUED IN ORDER TO AVOID

4     ENHANCED DAMAGES.

5          AND IT REALLY GOES BACK TO A FUNDAMENTAL DUE PROCESS

6     RIGHT TO DEPEND YOURSELF AGAINST THE ALLEGATIONS.

7          AND SO HERE, AND YOU DIDN'T FILE A REQUEST FOR

8     PRELIMINARY INJUNCTION, WHICH OF COURSE SEAGATE INVITES AND

9     MAYBE REQUIRES YOU TO DO.  THIS MAY HAVE WHAT WOULD BE A

10    SIGNIFICANT CHILLING AFFECT ON DEFENSIVE ACTIONS.

11         AND I THINK THAT IS REALLY WHAT'S WRAPPED UP IN THE

12    THEORY BEHIND SEAGATE AND ALL OF THE OTHER CASES, IN LML, I

13    THINK TALKS ABOUT IT MOST CLEARLY IS THAT A DEFENDANT HAS THE

14    RIGHT TO HAVE A VIGOROUS DEFENSE WITHOUT TAKING ON THE ADDED

15    BURDEN OF ENHANCED DAMAGES BY MERELY EXERCISING ITS RIGHT.

16         MS. SULLIVAN:  WE AGREE WITH THAT ENTIRELY,

17    YOUR HONOR.

18         AND WE DON'T SUGGEST THAT YOU CHANGE THAT LAW AT ALL.

19    WE, SO I WOULD SUGGEST A SECOND BRIGHT LINE RULE.

20         FIRST, BRIGHT LINE RULE IS WE CAN GET, WE CAN AMEND OUR

21    COMPLAINT TO ALLEGE ENHANCED DAMAGES FOR WILLFULNESS IF THERE

22    IS A NEW PRODUCT ISSUED AFTER THE FILING OF THE ORIGINAL

23    COMPLAINT.

24         AND SECOND, WE THINK THERE MUST BE SOME CONDUCT OTHER

25    THAN DEFENSIVE CONDUCT IN THE LITIGATION.

1          IN OTHER WORDS, THERE HAS TO BE CONDUCT IN THE WORLD.

2     HERE THERE WAS CONDUCT IN THE WORLD.

3          THERE WAS THE BLATANT, FLAGRANT ANNOUNCEMENT OF A NEW

4     PRODUCT LINE THAT INFRINGED WITHOUT SO MUCH AS SLOWING DOWN TO

5     TAKE INTO ACCOUNT THAT WE JUST SERVED OUR ORIGINAL COMPLAINT

6     PUTTING THEM ON NOTICE.

7          SO CONDUCT IN THE WORLD, AND IT HAS TO BE NEW PRODUCT

8     CONDUCT IN THE WORLD AS DISTINCT FROM THE CONTINUED

9     MANUFACTURE.

10          WE THINK WITH THOSE TWO DISTINCTIONS, YOU WOULD AVOID

11     GOING IN THE OTHER DIRECTION.  AND IF WE ARE NOT ALLOWED TO

12     ALLEGE WILLFULNESS WHEN THERE'S SUCH FRAGRANT ANNOUNCEMENT OF A

13     NEW PRODUCT, THEN WE ARE DEPRIVED AN OPPORTUNITY TO USE THE

14     WILLFULNESS STANDARD AND ENHANCED DAMAGES TO STOP REALLY

15     FRAGRANT DISREGARD FOR THE FILING OF A COMPLAINT.

16          SO YOU DON'T WANT TO OVER CORRECT.  SO WE THINK, WE AGREE

17     WITH YOU COMPLETELY, IF ALL THE CONDUCT THAT WAS INVOLVED WAS

18     AS IN SOME OF THE OTHER CASES, THE FILING OF A MOTION TO

19     DISMISS FOR INVALIDITY OR SOME OTHER DEFENSIVE CONDUCT, THAT

20     WOULD NOT BE ENOUGH.

21          LITIGATION CONDUCT WOULD NOT BE ENOUGH.  IT HAS TO BE IN

22     THE WORLD CONDUCT AND IT HAS TO BE IN THE WORLD CONDUCT THAT IS

23     NOT A CONTINUATION OF THE OLD IN THE WORLD CONDUCT, IT HAS TO

24     BE NEW PRODUCT CONDUCT.  AND WE THINK WE MORE THAN ADEQUATELY

25     PLEADED THAT AT THIS STAGE.

1      SO YOUR HONOR, WE DON'T THINK THAT THERE IS ANY BRIGHT

2  LINE RULE IN SEAGATE OR ANY OF THE NORTHERN DISTRICT CASES

3  CITED BY ARISTA THAT PREVENTS YOU FROM ALLOWING THIS.

4      TO THE CONTRARY, THIS IS PERHAPS THE TEXTBOOK CASE OF

5  POST FILING RECKLESS INDIFFERENCE TO THE HIGH PROBABILITY OF

6  INFRINGEMENT.  AND WE THINK WE ARE ENTITLED TO AT LEAST POST

7  FILING WILLFULNESS DAMAGES.

8      YOUR HONOR CAN ASSESS LATER, ONCE WE'VE SERVED SEVERAL

9  ROUNDS OF DISCOVERY, WE ARE TRYING TO FIND OUT INFORMATION

10  ABOUT THE TIMING OF THE RELEASE.  WE ARE TRYING TO FIND OUT

11  MORE ABOUT THE INFRINGING FUNCTIONALITY.

12      WE HAVE SERVED INFRINGEMENT CONTENTIONS ON ARISTA THAT

13  MAKE VERY CLEAR THE WAYS IN WHICH WE HAVE A NEW INFRINGEMENT

14  READ ON EOS PLUS, THAT EOS PLUS PRACTICES CERTAIN CLAIM

15  LIMITATIONS THAT EOS ALONE DOESN'T OPERATE IN THE SAME WAY.

16      SO WE ARE TRYING IN DISCOVERY TO SHOW THAT IT'S

17  INFRINGING IN A NEW WAY, EOS PLUS IS A NEW PRODUCT THAT

18  INFRINGES IN A NEW WAY, AND WE ARE TRYING TO FIND OUT ABOUT THE

19  TIMING TO SUPPORT RECKLESSNESS.  YOU CAN DECIDE LATER AS A

20  MATTER OF FACT WHETHER WE'VE MET OUR BURDEN ON MENS REA.

21      BUT CERTAINLY AT THE PLEADING STAGE, YOUR HONOR, WE THINK

22  THIS IS A TEXTBOOK CASE OF A POST FILING CONDUCT THAT INVOLVES

23  POST FILING OUT IN THE WORLD CONDUCT THAT INVOLVES A NEW

24  PRODUCT AND WE SHOULD BE ALLOWED TO AMEND THE COMPLAINT FOR

25  THAT PURPOSE.

1        AND YOUR HONOR, JUST ONE LAST PART OF THE TEST, IT'S GOT

2    TO BE IN THE WORLD CONDUCT, NOT JUST DEFENSIVE CONDUCT.  NEW

3    PRODUCT, NOT JUST CONTINUING ISSUANCE OF OLD VERSIONS OF SAME

4    OLD PRODUCT.

5        AND I THINK THE THIRD TEST IS COULD WE HAVE FILED A

6    SEPARATE COMPLAINT.  AND I THINK WHAT REALLY WHAT IT COMES DOWN

7    TO IS JUDICIAL ECONOMY.

8        AND CISCO IS VERY GRATEFUL TO YOUR HONOR WITH HANDLING

9    THE CASE WITH THE EXPEDITION THAT WE SOUGHT AND GETTING US ON

10   AN EARLY TRIAL CALENDAR.  WE ARE VERY GRATEFUL FOR THAT

11   EXPEDITION.  BUT THIS IS A CASE IN WHICH IT WOULD SERVE NO

12   PURPOSE FOR US TO GO FILE A SEPARATE, NEW COMPLAINT AND THEN

13   HAVE TO HAVE MOTION PRACTICE ON CONSOLIDATION.

14       THE MOST EFFECTIVE AND EFFICIENT WAY TO HANDLE THIS IS

15   ALLOW US TO AMEND OUR COMPLAINT.  WE THINK THAT THE LANGUAGE IN

16   PARAGRAPH 58 IS MORE THAN ADEQUATE UNDER IQBAL TWOMBLY TO PUT

17   THEM ON NOTICE.

18       WE SERVED THEM WITH DISCOVERY AND INFRINGEMENT

19   CONTENTIONS.  ARISTA WAS VERY WELL AWARE WHAT OUR CONTENTIONS

20   ARE.  THERE COULD BE NO PREJUDICE TO THEM FOR ALLOWING THE

21   AMENDMENT OF THE COMPLAINT AND, WE THINK THAT'S THE MOST

22   ECONOMICAL WAY FOR YOU TO PROCEED.

23           THE COURT:  WELL, YOU HAVE LAID OUT A VERY LOGICAL

24   TEST THAT IS A DEPARTURE FROM THE DECISIONAL LAW THAT IT'S

25   BASED ON.

1    AND SO I DON'T KNOW WHETHER IT'S TOO MUCH OF A DEPARTURE

2    TO ALLOW IN THIS CASE ON A PRODUCT THAT MAY OR MAY NOT BE A NEW

3    PRODUCT, AS YOU DESCRIBE.

4         MS. SULLIVAN:  WELL YOUR HONOR, I DON'T THINK, WITH

5    RESPECT, IT IS A DEPARTURE.  I JUST DON'T THINK WE'VE HAD THIS

6    FACT SITUATION IN ANY OF THE PRIOR CASES.

7         IF ANYTHING, OUR FACT SITUATION IS STRONGER THAN THE TWO

8    PRIOR NORTHERN DISTRICT CASES WE CITED THAT ALLOWED AMENDED

9    COMPLAINTS FOR POST FILING CONDUCT.

10        IN FACT, I POPPED OUT FOR YOU IF YOU WANT TO FLIP TO

11   SLIDE SEVEN, I ACTUALLY, YOU WILL RECALL THAT IN OPEN TV,

12   JUDGE GILLIAM FOLLOWING THE LEAD OF JUDGE WILKIN IN THE PVT

13   CASE, ALLOWS AN AMENDED COMPLAINT FOR POST FILING CONDUCT.

14        AND IN PARAGRAPH 77, THE RELEVANT PARAGRAPH IN THE OPEN

15   TV CASE WAS PARAGRAPH 77.  AND YOU WILL SEE ALL OF THIS SAID IS

16   THAT APPLE HAS HAD KNOWLEDGE OF THE '287 SINCE THE FILING AND

17   SERVICE OF THE ORIGINAL FIRST AMENDED SECOND AMENDED THIRD

18   AMENDED COMPLAINTS AND DESPITE THAT KNOWLEDGE CONTINUES TO

19   INFRINGE.

20        THE COURT:  WHY DOESN'T THAT, THAT'S COMPLETELY AT

21   ODDS WITH THE OTHER CASE LAW.

22        MS. SULLIVAN:  I THINK THERE'S A DIVISION IN OUR

23   DISTRICT.

24        THE COURT:  THAT'S FINE, AND I RESPECT THAT.

25        MS. SULLIVAN:  AND YOUR HONOR, THERE'S NOW A DIVISION

1    IN THE DISTRICT OF DELAWARE AS YOU KNOW FROM QUALWAVE, THERE'S

2    A DIVISION IN THE DISTRICT OF DELAWARE TOO.

3         BUT YOUR HONOR, YOU DON'T HAVE TO RESOLVE THAT DIVISION

4    TO RULE FOR US.  AND THE REASON IS THIS IS A NEW FACT

5    SITUATION.  THIS IS A FACT SILTATION -- WE ARE MUCH STRONGER

6    THAN OPEN TV.  EVEN IF OPEN TV WENT THE WAY OF THE OTHER CASES,

7    WHAT WE HAVE ALLEGED IS A NEW INFRINGING PRODUCTS, PLURAL.

8         SO YOU ARE NOT MAKING NEW LAW ON OLD FACTS YOU ARE SIMPLY

9    MAKING WHAT WE THINK IS THE APPROPRIATE LAW ON A NOVEL FACT

10   SITUATION.

11        AND YOUR HONOR, TO RULE AGAINST US WOULD REALLY BE TO

12   ENCOURAGE THE KIND OF, ANY KIND OF SAFE HARBOR FOR FRAGRANT

13   INTRODUCTION OF NEW INFRINGING PRODUCTS WITHOUT ENHANCED

14   DAMAGES.

15        THE COURT:  BUT IN THIS CASE, FLAGRANT IS A LITTLE

16   BIT HARD FOR ME TO WRAP MY HEAD AROUND BECAUSE THE TIMING OF IT

17   BEING WITHIN A FEW DAYS, IT'S ALMOST AS THOUGH YOU'RE RUNNING

18   TOWARD THE WALL TO CATCH THE BALL BEFORE IT GOES OUT OF THE

19   PARK, AND YOU HIT THE WALL BECAUSE YOU CAN'T STOP IN TIME.  AND

20   COULD ARISTA HAVE STOPPED IN TIME WITH THESE FEW DAYS.

21        CLEARLY THIS LAUNCH WAS TEED UP AND READY TO GO BEFORE

22   YOUR COMPLAINT WAS FILED BECAUSE YOU CAN'T DESIGN AND

23   MANUFACTURE A PRODUCT IN FIVE DAYS.

24        SO FLAGRANT WOULD SAY SIX MONTHS AFTER THE COMPLAINT IS

25   FILED YOU INTRODUCE THE PRODUCT WITH ALL THAT TIME TO ACTUALLY

1    EVALUATE.

2            AND NOT THAT I'M INCLINED TO RULE THAT FIVE DAYS ISN'T

3    ENOUGH, BUT IT DOES KIND OF RAISE THAT QUESTION, BEG THAT

4    QUESTION ABOUT WHAT DOES A COMPANY DO WHEN, UNBEKNOWNST TO IT,

5    ITS COMPETITOR IS ABOUT TO SUE THEM AND THEY'RE ABOUT TO LAUNCH

6    A NEW PRODUCT.

7            AGAIN THE LOOKING OVER YOUR SHOULDER READING, BEFORE

8    EVERY LAUNCH DO YOU HAVE TO LOOK AT ALL THE CASES THAT ARE

9    FILED AGAINST YOU?  I MEAN, OBVIOUSLY THEY KNOW ABOUT THEM.

10            MS. SULLIVAN:  YOUR HONOR, IT'S A VERY FAIR QUESTION.

11            BUT I THINK THAT ANY QUESTION OF WHETHER IT WAS FLAGRANT

12    OR RECKLESS IS REALLY A FACT QUESTION TO BE RESOLVED LATER WHEN

13    WE TRY TO PROVE UP ENHANCED DAMAGES AND YOUR HONOR CONSIDERS

14    WHETHER TO GRANT THEM AND IF SO UNDER WHAT MULTIPLE.

15            SO I THINK THOSE QUESTIONS DO GO TO STATE OF MIND AND I

16    THINK THEY CAN BE HANDLED LATER AS A FACTUAL QUESTION.

17            BUT I DO THINK FOR PLEADING PURPOSES THE FIVE DAYS CUTS

18    IN OUR DIRECTION, THAT EVEN NO MATTER HOW MUCH YOU'VE DONE TO

19    TEE UP A PRODUCT, THERE MIGHT BE A FAIR INFERENCE THAT RUSHING

20    TO MARKET IN DISREGARD OF A COMPLAINT THAT'S PUT YOU ON NOTICE

21    IS SOMETHING THAT LAWYERS MIGHT HAVE COUNSELED YOU TO DO A

22    LITTLE BIT MORE SLOWLY.

23            THE COURT:  I THINK THAT'S A FAIR POINT AND I'M NOT

24    INCLINED TO SAY FIVE DAYS ISN'T ENOUGH AND THREE MONTHS WOULD

25    BE.

1        MS. SULLIVAN:  AND YOUR HONOR, AS TO THE NEWNESS OF

2   EOS PLUS THIS IS SOMETHING WE THINK WE'VE PUT THEM ON NOTICE

3   THROUGH THEIR INFRINGEMENT CONTENTIONS WE EXCERPTED THOSE FOR

4   YOU IN THE SLIDES FOR YOU TO REVIEW.  WE HAVE A FULLER SET IF

5   YOUR HONOR WANTS TO SEE IT.

6        AND AS FOR THE INDIRECT INFRINGEMENT CHARGES, TO BE CLEAR

7   WE ABSOLUTELY ARE SEEKING ONLY INDIRECT INFRINGEMENT DAMAGES

8   FOR POST FILING CONDUCT WHICH IS ALLOWED, SO THERE'S NO

9   QUESTION OF THAT.

10        THE COURT:  YOU KNOW, AND I HAD FORGOTTEN ALL ABOUT

11   THAT AGAIN BECAUSE YOU HAD ACKNOWLEDGED IT.  IT PROBABLY I'M

12   PROBABLY GOING TO REQUIRE YOU TO AMEND THE PLEADING TO CLARIFY

13   THAT POINT.

14        MS. SULLIVAN:  IN THE PRAYER FOR RELIEF.

15        THE COURT:  EITHER IN THE PRAYER FOR RELIEF OR IN THE

16   CLAIM ITSELF, I WILL LET YOU CHOOSE.

17        BUT I DO THINK IT'S VAGUE IN THE PLEADING, IT WOULD BE

18   BECAUSE OF YOUR ACKNOWLEDGEMENT OF IT, I THINK IT'S JUST A

19   MATTER OF CLARIFYING IT FOR THE FUTURE SO THERE'S NO CONCERN.

20        I'M GOING TO HEAR FROM MS. MCCLOSKEY AGAIN JUST FOR HER

21   TO FINISH UP, BUT THAT'S ONE THAT I DO WANT.

22        MS. SULLIVAN:  YOUR HONOR, WE ARE HAPPY TO DO THAT.

23        JUST TO CLARIFY, SHOULD I TREAT THIS AS ORAL GRANT OF

24   LEAVE OR SHOULD WE FILE A MOTION FOR LEAVE AND A SECOND AMENDED

25   COMPLAINT?

```
1              THE COURT:  I WILL PROBABLY, ON THE INDIRECT,

2     PROBABLY GRANT WITH LEAVE TO AMEND TO CLARIFY.

3              MS. SULLIVAN:  OKAY.

4              THE COURT:  CONSISTENT WITH YOUR OPPOSITION BRIEF.

5              MS. SULLIVAN:  YOUR HONOR, WE THINK PARAGRAPH 58

6     SHOULD NOT BE DISMISSED.  IT STANDS BY ITSELF, IF YOU WANT US

7     TO CLARIFY ANYTHING ELSE IN THAT PARAGRAPH, WE WOULD BE HAPPY

8     TO DO SO.  WE THINK IT'S CLEARLY NEW PRODUCT.

9          IF THERE'S ANY CONFUSION IN THE NOMENCLATURE AND IF YOU

10    WANT US TO CLARIFY THAT, WE WOULD BE VERY HAPPY TO DO THAT.

11    THE KEY THING IS WE THINK WE PLEADED NEW PRODUCT, POST FILING

12    DISTINGUISHES ALL THE OTHER CASES AND YOU WILL NOT BE DEPARTING

13    FROM SEAGATE BY DENYING THE MOTION TO DISMISS.

14             THE COURT:  AND I DON'T BELIEVE THERE'S AN ENHANCED

15    PLEADING REQUIREMENT ISSUE HERE.

16             MS. SULLIVAN:  NO, THERE'S NOT.  THANK YOU,

17    YOUR HONOR.  THANK YOU VERY MUCH.

18             THE COURT:  MS. MCCLOSKEY, I DO THINK THAT IT IS

19    IMPORTANT TO EVALUATE THIS CASE SEPARATELY FROM THE, ALL OF THE

20    PAST CASES THAT YOU CITED BECAUSE IT'S ALLEGED THAT THIS IS A

21    NEW PRODUCT AND FOR PURPOSES OF PLEADING THAT'S PROBABLY

22    SUFFICIENT.

23         I FIND MS. SULLIVAN'S ARGUMENT TO BE PERSUASIVE IN GOING

24    FORWARD, AT LEAST IN SUMMARY JUDGEMENT STAGE WHERE A LOT OF

25    THESE ISSUES COULD BE CONSIDERED MORE APPROPRIATELY.
```

1        SO I WANT TO GIVE YOU AN OPPORTUNITY TO RESPOND TO THAT.

2        MCCLOSKEY:  WELL, I THINK OPPOSING COUNSEL'S BRIGHT

3   LINE TEST IS AN INTERESTING PROSPECT.

4        THE PROBLEM WITH IT IS THAT THE QUESTION OF WHAT IS A NEW

5   PRODUCT IS AN ENTIRELY SUBJECTIVE QUESTION.

6        AND AS YOUR HONOR SAID, THEY CAN PUFF ALL THEY WANT, BUT

7   EOS PLUS IS FOR THE MOST PART A MARKETING TERM.

8        SO I THINK IT WOULD LEAD TO VERY STRANGE RESULTS IF WE

9   ALLOWED THE TEST TO BE WHETHER A PARTY HAD RELEASED A NEW

10  PRODUCT AFTER FILING OF THE SUIT.

11       AND WHILE WE HAVE THIS VERY HELPFUL EXHIBIT HERE THAT

12  PROVIDES THE PARAGRAPH OF THE COMPLAINT THAT'S AT ISSUE, THEY

13  DON'T HIGHLIGHT THE SENTENCE THAT ACTUALLY MATTERS FOR THE

14  PURPOSE OF THIS MOTION.

15       EOS/EOS PLUS RETAINS THEY INFRINGING FEATURE.  THERE'S NO

16  ALLEGATION THAT THERE'S A NEW INFRINGING FEATURE THAT WOULD

17  SERVE AS A NEW PRODUCT.

18       IN THE SOFTWARE WORLD, AS YOU WELL KNOW, AS YOUR HONOR

19  WELL KNOWS, THERE ARE CONSTANTLY NEW VERSIONS.

20       SO FOR THE PURPOSES OF THE SOFTWARE WORLD, TO CHANGE THE

21  RULE, TO DEPART FROM SITE GATE WOULD COMPLETELY SWALLOW THE

22  RULE THAT THERE COULD NOT BE WILLFULNESS ALLEGATIONS BASED

23  SOLELY ON POST FILING KNOWLEDGE.

24       AND THE SLIDES INCLUDING THE INFRINGEMENT CONTENTIONS MAY

25  BE HELPFUL BUT THEY ARE SIMPLY NOT PROPER ON A MOTION TO

```
1      DISMISS.  WE HAVE LOOK AT WHAT'S IN THE RECORD AND WHAT'S IN

2      THE AMENDED COMPLAINT.

3            AND WHILE WE WILL DISPUTE ABOUT THESE ISSUES LATER, THEY

4      ARE JUST NOT WHAT'S AT ISSUE RIGHT NOW.

5              THE COURT:  I AGREE WITH THAT.  I HAVE NO CONCERN

6      ABOUT THE INFRINGEMENT CONTENTIONS THEMSELVES.

7            UNDER 8(A) I DON'T NEED, I'M UNLIKELY TO ASK THAT THE

8      COMPLAINT BE AMENDED TO ADD MORE FACTS UNLESS THIS IS

9      COMPLETELY IMPLAUSIBLE.

10           BUT I GUESS MY BIGGEST CONCERN IS THAT THIS DIVISION

11     BETWEEN A NEW PRODUCT AND A NEW VERSION AND SWALLOWING UP THE

12     RULE AS YOU SAY, I CERTAINLY QUESTION MS. SULLIVAN ABOUT THAT

13     AS WELL.  THE ISSUE MAY BE IF THAT IS A MATTER TO BE RESOLVED

14     AT A DIFFERENT PHASE OF THE LITIGATION.

15           BECAUSE WHAT YOU'RE SUGGESTING IS THAT WHEN SOMETHING

16     THAT WE CAN ALL AGREE IS A NEW PRODUCT BY THE SAME COMPANY

17     REALLY IS A NEW SPHERE THAT THAT IS TOO SHOULD NOT GO FORWARD.

18           HERE, WE MAY BE ON THE LINE BETWEEN WHAT'S A NEW PRODUCT

19     AND WHAT'S A NEW VERSION AND THERE MAY BE A DIFFERENT OUTCOME.

20           BUT I'M NOT SURE THIS IS THE TIME TO RESOLVE IT WHEN I

21     HAVE NO FACTUAL BASES ON WHICH TO MAKE THE DISTINCTION.

22              MCCLOSKEY:  I MEAN, I THINK THE ONLY FACTUAL BASES

23     THAT MATTERS FOR THE PURPOSE OF THIS MOTION IS THEIR AMENDED

24     COMPLAINT AND I DON'T THINK -- AND THEIR AMENDED COMPLAINT

25     DOESN'T ALLEGE IT'S A NEW PRODUCT.  IT USES THE WORLD PRODUCT
```

1    BUT NOT DIRECTLY ON POINT WITH WHAT EOS PLUS IS.  EOS PLUS, AS

2    THEY ALLEGE, RETAINS THE INFRINGING FEATURES.

3              THE COURT:  OKAY.

4              MCCLOSKEY:  SO I JUST DON'T THINK IT WOULD MAKE TO

5    DEVELOP A NEW RULE FOR SOMETHING THAT RETAINS THE SAME

6    INFRINGING FEATURES AS WELL AS ALREADY ALLEGED.

7              THE COURT:  WELL, YOU KNOW, WHAT I NEED TO DETERMINE

8    IS WHETHER ANY GOOD COMES FROM HAVING CISCO AMEND THE PLEADING

9    OR WHETHER THERE IS SUFFICIENT NOTICE HERE OF THE ISSUE.

10        SO I WILL, BECAUSE I DO HAVE CONCERNS WITH CONTINUED TO

11   BRING TO MARKET INFRINGING PRODUCTS, BECAUSE THAT WOULD BE A

12   CATEGORY THAT WOULD INCLUDE THE PRE-SUIT PRODUCTS AS WELL AS

13   THE POST-SUIT EOS PLUS.

14        AND, BUT THAT I THINK WE ARE TALKING ABOUT AN AMENDMENT

15   THAT COULD EASILY BE MADE TO BRING THE PLEADING IN LINE WITH

16   THE TEST THAT CISCO IS SUGGESTING.

17             MCCLOSKEY:  IT DOES SEEM TO ME THAT THEY'RE FOLLOWING

18   A SENTENCE THAT DIRECTLY CONTRADICTS THAT.

19        IF IT'S A NEW PRODUCT THAT RETAINS THE SAME EXACT

20   INFRINGING FEATURES THEN FOR THE PURPOSE OF AN INFRINGEMENT, AN

21   INFRINGEMENT ANALYSIS, IT'S THE SAME INFRINGEMENT, IT'S NOT IN

22   A DIFFERENT ACT OF INFRINGEMENT.

23             THE COURT:  WELL EACH PRODUCT IS AN ACT OF

24   INFRINGEMENT, ISN'T IT?

25             MCCLOSKEY:  BUT IF IT RETAINS THE SAME INFRINGING

1    FEATURES, IT ISN'T REALLY A NEW PRODUCT IT'S JUST A NEW

2    VERSION.

3              THE COURT:  SO YOU DRAW THE DISTINCTION BETWEEN A NEW

4    PRODUCT AND A NEW VERSION OF AN OLD PRODUCT, WHICH I THINK IS A

5    FAIR, THAT'S MY CONCERN.

6         BECAUSE I THINK ULTIMATELY WHEN I THINK OF A NEW VERSION,

7    WHEN YOU THINK ABOUT THE MINOR VERSIONS WE JUST HAD A GLITCH IN

8    THE PRODUCT WE FIXED SOME BUGS, IT'S REALLY THE SAME PRODUCT,

9    BUT WE HAVE TO CALL IT VERSION 6.1 RATHER THAN 6.0, WE REALLY

10   FALL INTO WHAT YOU SUGGEST OF SWALLOWING UP THE RULES.

11             MCCLOSKEY:  I THINK THAT IS PARTICULARLY TRUE FOR

12   SOFTWARE COMPANIES.

13             THE COURT:  BECAUSE OTHERWISE ONCE A SUIT IS FILED WE

14   WOULD BE, THIS RULE WOULD PREVENT A COMPANY FROM ADVANCING ITS

15   CURRENT PRODUCTS.

16             MCCLOSKEY:  I THINK THAT IS COMPLETELY CORRECT.  THEY

17   WOULDN'T BE ABLE TO FIX BUGS THEY WOULDN'T BE ABLE TO RESPOND

18   TO ISSUES THAT HAD ARISEN WITH THEIR PRODUCTS AND FOR

19   TECHNOLOGY COMPANIES WHO ARE CONSTANTLY RELEASING NEW VERSIONS

20   AS WE ALL WELL KNOW, THERE WOULD ESSENTIALLY BE NO SEAGATE RULE

21   FOR THOSE COMPANIES.

22             THE COURT:  OKAY.  ALL RIGHT.  I THINK THAT TAKES

23   CARE OF IT.

24        MS. SULLIVAN, I THINK YOU ARE GOING TO BE GIVEN THE

25   OPPORTUNITY TO AMEND ON THIS.  I JUST -- I HAVE GREAT CONCERN

```
 1      ABOUT THE EFFECT THAT SUCH A RULE WOULD HAVE ON A COMPANY BEING

 2      ABLE TO CONTINUE TO MARKET ITS EXISTING PRODUCTS.

 3                 MS. SULLIVAN:  YOUR HONOR, I UNDERSTAND.

 4            COULD I RESPOND IN LESS THAN 30 SECONDS?

 5                 THE COURT:  SURE, OF COURSE YOU MAY.

 6                 MS. SULLIVAN:  I WOULD JUST LIKE TO EMPHASIZE THAT MY

 7      ADVERSARY HAS FOCUSED ON WORDS IN PARAGRAPH 58 SHE ABSOLUTELY

 8      IGNORED FOOTNOTE 12.

 9            AND FOOTNOTE 12 IS THE KEY TO WHY THIS COURT SHOULD DENY

10      THE MOTION TO DISMISS AND WHY WE HAVE ADEQUATELY PLEADED NEW

11      PRODUCT.

12            IN YOUR BINDER, YOUR HONOR, IF YOU TURN TO THE COMPLETE

13      VERSION OF WHAT'S CITED IN FOOTNOTE 12, IT APPEARS IN THE

14      EXHIBIT 6 TO THE OPPOSITION, SO IT'S TOWARD THE BACK OF YOUR

15      BINDER AND IT'S A THREE-PAGE PRESS RELEASE.

16            AND REMEMBER YOUR HONOR I JUST WANT TO CITE FOR THE

17      RECORD THAT YOU MAY CONSIDER ANYTHING THAT'S CITED IN THE

18      COMPLAINT.

19                 THE COURT:  YES, CERTAINLY I CAN.

20                 MS. SULLIVAN:  IT'S TELLABS V. MAKOR, 551 U.S. 308 AT

21      322.

22            AND ALSO THINGS YOU CAN TAKE JUDICIAL NOTICE OF, AND

23      YOUR HONOR, IF YOU TURN TO EXHIBIT 6 TO THE SECOND PAGE OF THE

24      PRESS RELEASE YOU WILL SEE BULLETS CALLED THE EOS PLUS

25      PLATFORM.  YOU WILL SEE FOUR BULLETS.
```

1          THE COURT:  YES.

2          MS. SULLIVAN:  THAT'S NEW PRODUCT.

3       THE ABILITY TO MAKE YOUR OWN KIT.  THE ABILITY TO USE A

4   VIRTUAL MACHINE OR A SIMULATOR.  THAT'S A NEW PRODUCT AND THE

5   APPLICATIONS ARE NEW.

6       SO IT'S THE ANNOUNCEMENT BY ARISTA THAT WE INCORPORATED

7   BY REFERENCE IN OUR COMPLAINT THAT SHOULD GIVE YOU COMFORT THAT

8   THIS IS A NEW PRODUCT PLEADING.  AND NOT A NEW VERSION

9   PLEADING.

10      AND WILL ENABLE YOU TO DRAW THE BRIGHT LINE RULE THAT

11  WILL KEEP US FROM SWALLOWING, BEING THE EXCEPTION THAT SWALLOWS

12  THE RULE OF.

13      AND YOUR HONOR, IF I COULD JUST PUSH MY LUCK FOR A FEW

14  MORE SECONDS.

15      IF YOU LOOK TO EXHIBIT 3 TO OUR OPPOSITION YOU WILL SEE

16  THE STATEMENT BY MS. ULLAL THAT I REFERENCED EARLIER, CALLING

17  EOS PLUS A PIONEERING INVASION.  AND YOU CAN TAKE JUDICIAL

18  NOTICE OF THAT STATEMENT AND THAT'S ALSO FAIR GAME UNDER

19  TELLABS.

20      SO WE THINK THAT NEW PRODUCT IS CLARIFIED BY EVERYTHING

21  REFERENCED IN FOOTNOTE 12 --

22          THE COURT:  I DON'T WANT COMPANIES TO HAVE TO SAY,

23  THIS IS NO BIG DEAL, BUT WE WANT YOU TO BUY IT ANY WAY AS A WAY

24  OF GETTING OUT OF LAWSUITS.

25          MS. SULLIVAN:  I DON'T THINK WE ARE GOING TO BRING

1    PUFFERY INTO THE VALLEY, BUT I DO THINK WE PLEADED THIS IS A

2    NEW CASE WHERE THIS WAS A NEW PRODUCT FOR WHICH WE CAN HAVE

3    SEPARATELY COMPENSABLE DAMAGES.

4              THE COURT:  WELL, I DON'T KNOW OF ANY AREA OF LAW

5    WHERE A COMPANY IS BOUND BY THIS KIND OF PUFFERY.

6         YOU KNOW, YES, THIS IS HOW THEY ARE MARKETING IT, THESE

7    ARE THEIR PRESS RELEASES, PUTTING ITS BEST FOOT FORWARD ON THIS

8    NEW PRODUCT WANTING PEOPLE TO GIVE UP EOS AND BUY EOS PLUS,

9    SURE.

10        BUT I THINK I'M GOING TO NEED YOU TO TAKE ANOTHER STAB AT

11   THE PLEADING, AND I THINK I'M GOING TO WANT YOU TO CROSS OVER

12   THAT BRIGHT LINE BETWEEN NEW VERSION AND NEW PRODUCT, TO THE

13   EXTENT WE REQUEST IN THE ALLEGATIONS.

14        I'M, YOU KNOW, AT THIS STAGE OF THE LITIGATION YOU DON'T

15   HAVE ACCESS TO THEIR CODE, YOU HAVE NO WAY OF SAYING THAT IT IS

16   A NEW PRODUCT BY DISTINGUISHING IT ON ITS ACTUAL

17   CHARACTERISTICS, WHAT YOU COULD SEEK IF YOU BOUGHT BOTH

18   PRODUCTS.

19             MS. SULLIVAN:  YOUR HONOR, WITH RESPECT, WE ARE

20   ABSOLUTELY HAPPY TO ASSIST YOUR HONOR IN JUST MAKING SURE WE

21   CAN PROCEED EXPEDITIOUSLY WITH THE CASE, WE WANT TO KEEP THE

22   DEADLINES.

23             THE COURT:  I DON'T HAVE MY CALENDAR HERE, WHEN DID

24   WE SET TRIAL?

25             MS. SULLIVAN:  WE SET TRIAL FOR AUGUST 1ST OF 2016.

```
 1        SO WE DON'T WANT TO DO ANYTHING THAT WILL DISTURB THE CALENDAR.

 2              THE COURT:  THAT'S ACTUALLY NOT VERY MUCH TIME.

 3              MS. SULLIVAN:  RIGHT.

 4              THE COURT:  ALL RIGHT.  AND YES, THEN ANOTHER ROUND

 5        OF MOTIONS WILL --

 6              MS. SULLIVAN:  EXACTLY, YOUR HONOR.

 7           SO WITH RESPECT, WE THINK PERHAPS THE BEST COURSE WOULD

 8        BE FOR US TO AMEND WITH RESPECT TO THE INDIRECT INFRINGEMENT AS

 9        YOUR HONOR REQUESTED.

10           IF YOUR HONOR WANTS CLARIFICATION IN PARAGRAPH 58 WE CAN

11        ADD IT.

12              THE COURT:  ONE WAY TO ACTUALLY MOVE THIS ALONG

13        QUICKLY IS FOR ME TO MAKE AN ORAL RULING NOW THEN YOU CAN GET

14        STARTED, YOU DON'T NEED TO WAIT.

15           AND YOU KNOW, I'M NOT PREPARED TO ADOPT A BRIGHT LINE

16        TEST

17              MS. SULLIVAN:  WOULD YOU LIKE ME TO SIT, YOUR HONOR?

18              THE COURT:  NO, NO, WHICHEVER YOU PREFER.

19           I'M NOT PREPARED TO ADOPT A BRIGHT LINE TEST.

20           I DO THINK THAT YOU SHOULD BE GIVEN THE OPPORTUNITY BY

21        AMENDMENT TO DISTINGUISH THESE FACTS FROM WHERE THE

22        CIRCUMSTANCES IN SEAGATE AND ITS PROGENY, I'M NOT INCLINED TO

23        DEPART FROM THE, WHAT I WOULD CONSIDER THE MAJORITY OF THE

24        NORTHERN DISTRICT DECISIONS ON THIS ISSUE.

25           I DON'T WANT TO BE ONE WHO INVITES EVERY CASE OF
```

1    CONTINUED INFRINGEMENT TO BRING ALONG WITH IT AN AMENDMENT FOR

2    WILLFUL INFRINGEMENT.

3        BUT WHAT I'M LOOKING AT IS AN AMENDMENT THAT FURTHER

4    ALLEGES, FACTUALLY ALLEGES NEW PRODUCT RATHER THAN SIMPLY

5    CHARACTERIZES EOS PLUS AS A NEW PRODUCT.

6        MS. SULLIVAN:  THANK YOU, YOUR HONOR.

7        SO IF I UNDERSTAND YOU, YOU ARE GIVING US ORAL LEAVE TO

8    FILE A MOTION FOR AN AMENDED COMPLAINT.

9        THE COURT:  NO NO, SO WHAT I'M GOING TO DO IS GRANT

10   THE MOTION WITH LEAVE TO AMEND SO YOU CAN DO THAT AND OF COURSE

11   YOU WILL ALLEGE THE INDIRECT INFRINGEMENT TO LIMIT AS YOU'VE

12   INDICATED.

13       I THINK THAT I NEED SOME MORE SPECIFICITY IN THE PLEADING

14   ON THIS ISSUE OF NEW PRODUCT.

15       MS. SULLIVAN:  UNDERSTOOD, YOUR HONOR.

16       WE UNDERSTAND YOUR HONOR'S REQUEST.  WE ARE HAPPY TO

17   COMPLY.  WE WILL DO IT EXPEDITIOUSLY AND WE REGARD IT AS

18   ADMINISTERIAL, MORE AS A MATTER OF CLARIFICATION THAN A MATTER

19   OF ALTERATION OF THE COMPLAINT, BECAUSE WE DO THINK WE

20   ADEQUATELY PLEADED WILLFULNESS ALLEGATIONS IN THE EXISTING

21   COMPLAINT BUT WE ARE HAPPY TO ASSIST YOUR HONOR IN DRAWING THIS

22   IMPORTANT LINE BY CLARIFYING OUR PLEADING.

23       THE COURT:  WHAT I WILL EXPECT IS THERE WILL PROBABLY

24   BE FURTHER MOTIONS ON THIS.

25       MR. SILBERT:  MAY I ADD AS JUST ONE CLARIFICATION

1   QUESTION AND HOPEFULLY AVOIDING FURTHER MOTION PRACTICE.

2       IF I UNDERSTAND YOUR HONOR'S RULING, WHAT CISCO WOULD BE

3   DOING IS TRYING TO ALLEGE NEW FEATURES THAT ARE IN EOS PLUS

4   THAT WERE NOT IN EOS AND THAT THOSE NEW FEATURES WHICH WOULD

5   CONSTITUTE AS THEY PUT IT NEW INFRINGING PRODUCT, THAT

6   YOUR HONOR IS SAYING AT LEAST AT THE PLEADING STAGE COULD BE

7   THE BASIS FOR A POST COMPLAINT WILLFULNESS ALLEGATION.

8       THE COURT:  WELL, I THINK YOU MAY BE DRAWING THE LINE

9   A LITTLE TOO NARROWLY BECAUSE I THINK WHERE YOU ARE GOING IS TO

10  SAY THE ENHANCED DAMAGES COULD ONLY EOS PLUS AND I'M NOT SAYING

11  THAT, THAT'S WHAT I HEAR YOU SAYING AND I DO NOT WANT THAT TO

12  BE THE TAKE AWAY HERE.

13      I WOULD LIKE FURTHER PLEADING TO DEMONSTRATE FACTUALLY

14  THAT THIS IS A NEW PRODUCT RATHER THAN JUST DESIGNATING IT IT

15  AS SUCH.

16      BUT I AM NOT SUGGESTING THAT DAMAGES IF ANY WERE TO BE

17  ASSESSED, WOULD BE LIMITED TO DAMAGES ON THE NEW FEATURES THAT

18  MAY ULTIMATELY BE AN OUTCOME.  BUT THAT ISSUE IS NOT BEFORE ME

19  TODAY AND I DO NOT WANT ANYONE TO TAKE AWAY SUCH A RULING.

20      BUT BECAUSE THIS IS A DEPARTURE FROM THE MAJORITY OF THE

21  CASES THAT HAVE FOLLOWED SEAGATE, I THINK IT'S IMPORTANT THAT

22  THE PLEADING PROVIDE GREATER NOTICE ON THE ELEMENTS THAT

23  SUPPORT THE DEPARTURE.

24      AND IN FACT TO MORE CLEARLY SET FORTH THE CONDUCT IN THE

25  REAL WORLD AS YOU SUGGEST, BUT I ACTUALLY DO THINK THAT A NEW

1    SUIT COULD BE FILED.  THAT IS WHAT I THOUGHT WHEN I FIRST READ

2    THIS THAT A NEW SUIT COULD BE FILED BECAUSE IT IS A DIFFERENT

3    PRODUCT THAT IS BEING ACCUSED.

4         AND SO YOU KNOW, IT SEEMED THAT THAT COULD BE THE BASIS

5    OF A SEPARATE SUIT, WHICH IN FACT WOULD BRING THE MOTION TO

6    RELATE, MOTION TO CONSOLIDATE, ALL OF WHICH WOULD BE REASONABLE

7    TO CONSIDER.

8         IN THE INTEREST -- WHAT I WOULD EXPECT IS THAT THERE WILL

9    BE AN AMENDMENT IN JUST A FEW DAYS.

10        I HEAR FROM MS. SULLIVAN THAT THEY WANT TO MOVE ALONG.

11   YOU WILL HAVE ONLY THE STATUTORY TIME TO FILE A FURTHER MOTION

12   AND I WOULD PROBABLY NOT ENGAGE IN FURTHER ARGUMENT ON IT.

13        SO THAT THE MATTER COULD BE, YOU WILL SET IT FOR HEARING

14   JUST IN CASE BUT I WOULD HOPE TO SORT OF SNATCH IT AS SOON AS

15   ITS BRIEFED AND TO MAKE A DETERMINATION AS TO WHETHER THE CASE

16   WILL GO FORWARD OR NOT.

17        AGAIN, THAT SAVES ABOUT THREE MONTHS TIME.  AND YOU

18   SHOULD ANTICIPATE THIS CASE WILL LIVE ANOTHER DAY, BECAUSE THIS

19   WILL GO ON, I FIND THE ARGUMENT AT THIS STAGE TO BE COMPELLING

20   THAT THE CASE SHOULD GO FORWARD.

21        I WOULD LIKE IT TO BE ON A FIRMER FOUNDATION BECAUSE IT

22   IS A DEVELOPMENT IN THE LAW.  I THINK THIS CIRCUMSTANCE HAS NOT

23   EXISTED IN ANY OF THE DECISIONAL LAW THAT I'VE REVIEWED.

24        ALL RIGHT.  GOOD.  THANK YOU VERY MUCH.

25            MS. SULLIVAN:  THANK YOU, YOUR HONOR.

1          MR. SILBERT:  THANK YOU, YOUR HONOR.

2     (WHEREUPON, THE PROCEEDINGS IN THIS MATTER WERE CONCLUDED.)

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1

2

3

4                    **CERTIFICATE OF REPORTER**

5

6

7

8            I, THE UNDERSIGNED OFFICIAL COURT

9    REPORTER OF THE UNITED STATES DISTRICT COURT FOR

10   THE NORTHERN DISTRICT OF CALIFORNIA, 280 SOUTH

11   FIRST STREET, SAN JOSE, CALIFORNIA, DO HEREBY

12   CERTIFY:

13           THAT THE FOREGOING TRANSCRIPT,

14   CERTIFICATE INCLUSIVE, CONSTITUTES A TRUE, FULL AND

15   CORRECT TRANSCRIPT OF MY SHORTHAND NOTES TAKEN AS

16   SUCH OFFICIAL COURT REPORTER OF THE PROCEEDINGS

17   HEREINBEFORE ENTITLED AND REDUCED BY COMPUTER-AIDED

18   TRANSCRIPTION TO THE BEST OF MY ABILITY.

19

20

21

22

23

24   _____

25   SUMMER A. FISHER, CSR, CRR
     CERTIFICATE NUMBER 13185          DATED: 7/3/15