KEKER & VAN NEST LLP
ROBERT A. VAN NEST - # 84065
rvannest@kvn.com
BRIAN L. FERRALL - # 160847
bferrall@kvn.com
DAVID J. SILBERT - # 173128
dsilbert@kvn.com
MICHAEL S. KWUN - # 198945
mkwun@kvn.com
633 Battery Street
San Francisco, CA 94111-1809
Telephone:     415 391 5400
Facsimile:     415 397 7188

Attorneys for Defendant ARISTA NETWORKS, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| CISCO SYSTEMS, INC., <br><br> Plaintiff, <br><br> v. <br><br> ARISTA NETWORKS, INC., <br><br> Defendant. | Case No. 3-14-CV-05344-BLF <br><br> **NOTICE OF MOTION AND MOTION TO COMPEL INTERROGATORY RESPONSES** <br><br> Date:     October 27, 2015 <br> Time:     10:00 a.m. <br> Judge:    Honorable Paul Grewal <br> Dept.:    Courtroom 5 <br><br> Date Filed: December 5, 2014 |

NOTICE OF MOTION AND MOTION TO COMPEL INTERROGATORY RESPONSES
Case No. 3-14-CV-05344-BLF

985679.2

# TABLE OF CONTENTS

NOTICE OF MOTION ..................................................................................................................1

MEMORANDUM OF POINTS AND AUTHORITIES ...............................................................2

I.   INTRODUCTION ............................................................................................................2

II.  FACTUAL BACKGROUND ...........................................................................................3

    A.   The Parties. ...........................................................................................................3

    B.   Nature of the case and procedural history. ............................................................4

    C.   The discovery in question and the parties' meet and confer efforts. ....................6

III. ARGUMENT ....................................................................................................................8

    A.   Legal Standard. .....................................................................................................8

    B.   Arista's Interrogatories 5 and 16 seek basic, relevant information about the purported protectable expression in the asserted copyrighted works. ....................9

    C.   Cisco's invocation of Rule 33(d) is improper. .....................................................11

    D.   Cisco has failed to explain a basis for its burden claim, and any articulable burden is of Cisco's own making. ........................................................................12

IV.  CONCLUSION ...............................................................................................................15

i

NOTICE OF MOTION AND MOTION TO COMPEL INTERROGATORY RESPONSES
Case No. 3-14-CV-05344-BLF

985679.2

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Apple Computer, Inc. v. Microsoft Corp.*,
  35 F.3d 1435 (9th Cir. 1994) ..................................................................................................10, 11

*Blankenship v. Hearst Corp.*,
  519 F.2d 418 (9th Cir. 1975) ...........................................................................................................9

*Cambridge Electronics Corp. v. MGA Electronics, Inc.*,
  227 F.R.D. 313 (C.D. Cal. 2004) ..................................................................................................12

*Campbell v. Acuff-Rose Music, Inc.*,
  510 U.S. 569 (1994).......................................................................................................................11

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*,
  499 U.S. 340 (1991).......................................................................................................................10

*Hallett v. Morgan*,
  296 F.3d 732 (9th Cir. 2002) ..........................................................................................................8

*Louisiana Pac. Corp. v. Money Mkt. 1 Institutional Inv. Dealer*,
  2012 U.S. Dist. LEXIS 162971 (N.D. Cal. Nov. 14, 2012)...........................................................9

*O'Connor v. Boeing North American, Inc.*,
  185 F.R.D. 272 (C.D. Cal.1999) ..................................................................................................12

*Psenner v. Victoria's Secret Stores, LLC*,
  2014 U.S. Dist. LEXIS 154783 (E.D. Cal. Oct. 29, 2014) .........................................................12

*Rainbow Pioneer v. Hawaii Nevada Investment Corp.*,
  711 F.2d. 902 (9th Cir. 1983) ......................................................................................................11

*Sid & Marty Krofft Television Prods. Inc. v. McDonald's Corp.*,
  562 F.2d 1157 (9th Cir.1977) ......................................................................................................10

*Struthers Scientific & Int'l Corp. v. General Foods Corp.*,
  51 F.R.D. 149 (D. Del. 1970) .........................................................................................................9

*Thomas v. Cate*,
  715 F. Supp. 2d 1012 (E.D. Cal. 2010).......................................................................................13

**Statutes**

17 U.S.C. § 107................................................................................................................................11

**Other Authorities**

*Ashby Jones, More Law Firms Charge Fixed Fees for Routine Jobs*, The Wall Street Journal, May 2, 2007 ............................................................................................... 14

Cisco Blog, Cisco General Counsel on State of Technology in the Law, *available at* http://blogs.cisco.com/news/cisco_general_counsel_on_state_of_technology_in_the_law ............................................................................................................................. 14

Fed. R. Civ. P. 26(b)(1) ................................................................................................... 8, 9

Fed. R. Civ. P. 33(d). ........................................................................................... 6, 7, 11, 12

Fed. R. Civ. P. 37(a)(4), (a)(3)(B)(iii) .................................................................................. 9

# NOTICE OF MOTION

**PLEASE TAKE NOTICE** that on October 27, 2015 at 10:00 a.m., or on such other date to be set by the Court, at 280 South 1st Street, San Jose, California, in Courtroom 5, before the Honorable Paul Grewal, Defendant Arista Networks, Inc. ("Arista") will, and hereby does, move this Court to compel Plaintiff Cisco Systems, Inc.'s ("Cisco") to provide complete responses to Arista's Interrogatories 5 and 16.

**PLEASE ALSO TAKE NOTICE** that Arista will be filing a motion to shorten time for hearing on this motion, requesting a hearing on September 29 or October 6, 2015 at 10:00 a.m., with a corresponding briefing schedule.

Dated: September 17, 2015

Respectfully submitted,
KEKER & VAN NEST LLP

By: /s/ *Brian L. Ferrall*
BRIAN L. FERRALL

Attorneys for Defendant ARISTA NETWORKS, INC.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.       INTRODUCTION**

Ten months ago, Cisco launched this and other litigation against Arista with much fanfare. Cisco's General Counsel touted the lawsuit in detail on his Cisco blog page, and Cisco fed news of this filing to the press.[1] One would have expected that Cisco was prepared for discovery into its claims but, as set forth below, Cisco appears to believe it has no obligation to gather basic information underlying its allegations.

Cisco alleges in this suit that Arista has infringed 26 Cisco copyrighted works. Cisco has never alleged, however, that Arista's source code is similar to Cisco's source code. This is *not* a case in which there is any allegation that code was stolen or misappropriated in any way. Rather, Cisco claims that Arista's Ethernet switches respond to some common command line interface ("CLI") commands that Cisco switches also use. Cisco identified slightly over 500 CLI commands (each only several words long) that it claims are protectable by the copyright law, together with the "hierarchy" of those commands, command modes and prompts.

Arista brings this motion because, to this day, Cisco will not provide any detailed information about the creation or origins of any of those asserted CLI commands, hierarchies, modes or prompts. Five months into discovery, Cisco still has not answered two simple interrogatories: to explain the derivation for each of the asserted CLI commands, and to provide basic bibliographic information about those CLI commands, hierarchies, modes and prompts such as who is the author, when it was created, when and where it was first published, and the Cisco product in which it was first used or implemented. One would expect any copyright plaintiff to provide this information *voluntarily* in its initial disclosures or at least in its first discovery responses. Instead, despite its repeated promises to "supplement," and despite four separate responses to this discovery, Cisco continues to dodge providing this basic information.

This information is critical to Arista's defense because, among other things, one of the touchstones of copyright protection—originality—is in serious dispute. For example, Cisco

---

[1] Declaration of Katherine Lloyd-Lovett in Support of Arista's Motion to Compel Responses to Interrogatories 5 and 16 ("Lloyd-Lovett Decl."), Exh. A.

claims in this case that terms such as "ip address," "clock set" and "boot system" are its exclusive creative expression. That is a claim that may come as a surprise to many who labored in the technology sector long before Cisco existed. At a minimum, Arista should be able to test Cisco's contentions in this regard. Many other asserted CLI commands simply use acronyms and terms embodied in industry standard protocols (such as "ip," but also many others less familiar to those outside the networking field). Assertion of those CLI commands raises critically important questions as to whether Cisco created the command terms or borrowed them from standards protocols, and whether Cisco should be able to prevent others from using asserted commands based on standards protocols.

The fact that ten months into this litigation Cisco still has not provided basic information about its own allegations is all the more inexcusable because Cisco requested—and received—an early trial date by representing to the Court that discovery for the copyright claim could proceed very quickly. Fact discovery closes February 26, 2016 for an August 1, 2016 trial. Cisco has now successfully stonewalled for half of the discovery period, but Arista can no longer allow these tactics to continue.

Arista therefore asks the Court to compel Cisco to provide, within one week, a response to its Interrogatory 5 (as modified during the meet and confer to limit it to the CLI commands that Cisco contends Arista has unlawfully copied), and a complete response to Interrogatory 16, seeking basic bibliographic and implementation information about each asserted CLI command, command hierarchy, command mode and prompt.

## II.   FACTUAL BACKGROUND

### A.   The Parties.

Plaintiff Cisco was founded in 1984 based upon work then being done at Stanford University, and soon came to dominate the internet routing market. Through acquisitions, it has expanded from its core internet routing business to many other businesses, including video-conferencing, voice, storage, security, and wireless networking. It claims market leadership in many of these fields and, relevant to this case, currently boasts a 67% market share in the Ethernet switching market.

Defendant Arista Networks was founded in 2004 by three pioneers in networking: Andy Bechtolsheim, David Cheriton and Ken Duda. Mr. Bechtolsheim founded Sun Microsystems and was Chief System Architect there. He then founded Granite Systems before it was purchased by Cisco in 1996. Mr. Duda worked at Granite Systems before leading software development for a line of Cisco switches. Messrs. Bechtolsheim and Duda founded Arista to pioneer a *different* approach to switching: software-driven cloud networking with significantly better performance and reliability than existing network solutions such as Cisco's. Arista's founders believed that the entrenched Ethernet switching technology had fundamental design limitations, and improvements in switching performance could only be achieved by a complete rethinking of the architecture of switching software. Towards that goal, Mr. Duda and a team of software engineers went to work writing a completely new operating system based on a modular architecture, which Arista calls the Extensible Operating System ("EOS"). Arista's success has been primarily with customers for whom performance is a premium, such as massive data centers and high frequency trading financial institutions. Arista introduced its first switch in 2008, and after years of growth as a private company, went public in April 2014. Approximately eight months later, Cisco launched this and other legal attacks on Arista, which had grown to become Cisco's biggest threat to its dominance in a decade or more.

**B.      Nature of the case and procedural history.**

Cisco's complaint alleges, *inter alia*, copyright infringement of 26 copyrighted works by way of Arista's alleged copying of some 500 CLI commands. Dkt. No. 64 (Cisco's Second. Am. Compl. for Copyright and Patent Infringement), Exh. 1.[2] To be clear, the Cisco copyrighted works are *not* the CLI commands; rather they are primarily compilations of huge volumes of confidential computer code, of which there is no allegation of copying. *See id.* at Exhs. 3–28. For most of the works, the listed authors on the copyright registration are third-party companies who purportedly wrote code as a work for hire, and/or several individuals. *See, e.g., id.* at Exh. 5. Cisco has yet to reveal which copyrighted work(s) contains which of the asserted CLI commands.

---

[2] For the Court's ease of reference, Exhibit 1 to Cisco's Second Amended Complaint is also attached as Exhibit B to the Lloyd-Lovett Declaration.

A review of the asserted CLI commands reveals that most are two or three-words—none more than six words—of technical jargon or acronyms. Others are as mundane as "clock set," "ip address" or "show hosts." *Id.* at Exh. 1. Nonetheless, Cisco alleges that its "CLI includes an elaborate taxonomy of unique textual command expressions, *authored by Cisco's employees*, which a user learns in order to 'talk' to the product." *Id.* ¶ 27 (emphasis added). Moreover, according to Cisco, these "unique command expressions, and unique command mode structure, prompts, and hierarchies[] are original, expressive works that have been developed over many years of creative endeavor by Cisco." *Id.* ¶ 28. Arista disputes these assertions, and not just for the mundane commands.

In truth, many of the commands Cisco claims as exclusively its own derive from fundamental industry standard documents. The IETF (Internet Engineering Task Force) is an open standards organization that develops and promotes standards for the internet protocol. It has published numerous Requests For Comments (RFCs)—often with input from Cisco representatives—establishing protocols for various networking features. For example, IETF published RFC 2338 in 1998 relating to the "Virtual Router Redundancy Protocol" or "vrrp." Lloyd-Lovett Decl., Exh. C. This RFC defines, among other parameters, fields for vrrp "authentication types." *Id.* at 5.3.6. Notwithstanding this open industry standard, Cisco alleges in this case that Cisco has copyright protection in the CLI command "vrrp authentication" (and nine other commands in the "vrrp" family). And Cisco alleges that these industry standard CLI commands are original and creative and part of Cisco's "elaborate taxonomy." Again, Arista disputes Cisco's claim in the exclusive right to use these terms. For Arista to challenge Cisco's claim to this unprecedented copyright protection, it is imperative that Arista be able to discover the derivation, creation, or authorship of this and all other asserted commands.

Thanks to the schedule requested by Cisco, fact discovery on liability issues closes February 26, 2016. Dkt. No. 51. Specifically, at the Case Management Conference, Cisco urged the Court to set a trial in the copyright case in January 2016, and represented that "Cisco believes that the parties can complete discovery relating to Cisco's copyright claim in short order and prepare that claim for trial." Lloyd-Lovett Decl., Exh. D. Judge Freeman would not fully

accommodate Cisco's request, but nevertheless granted Cisco a trial date of August 1, 2016, six months earlier than Arista's proposed date.  Dkt. No. 51.

        **C.**       **The discovery in question and the parties' meet and confer efforts.**

On April 10, 2015, Arista served its first set of interrogatories, including Interrogatory 5 seeking the "derivation of each CLI Command used by Cisco, including without limitation all CLI Commands that You [Cisco] contend Arista has unlawfully copied."  Lloyd-Lovett Decl., Exh. E  Cisco's initial response included a half-page of boilerplate objections and a response that it is "not presently aware of any responsive information"—an odd answer given the nature of the CLI commands and the allegations of Cisco's complaint, as described above.

During a July 13 telephonic meet and confer, Cisco's counsel explained that its answer reflected Cisco's belief that none of the CLI commands were derived from some other source.[3]  Lloyd-Lovett Decl., ¶ 9.  Arista's counsel clarified that "derivation" was not limited to information about a prior source for CLI commands, but rather sought the basic facts about the origin and creation of the command.  *Id*.  Arista's counsel also explained that producing documents pursuant to Federal Rule of Civil Procedure 33(d) would not suffice since it would seem very unlikely that a description of the creation and origin of each command would be found in a document.  *Id*.  Lastly, Arista's counsel clarified that it would accept, at least for the time being, a response limited to the CLI Commands asserted in Exhibit 1 to Cisco's complaint.  *Id.*

One week later, counsel for Cisco wrote that "Arista demanded a written explanation of how each CLI command was created.  Cisco will provide a supplemental response to this interrogatory."  *Id.* at Exh. G.  Cisco eventually provided this supplemental response on August 7, but contrary to the meet and confer conversation and Cisco's own confirming letter, Cisco's supplemental response provided no written explanation of how each CLI was created.  Instead it provided several vague, self-serving sentences stating that Cisco developed its CLI commands over many years and by many engineers, and cited a range of documents pursuant to Rule 33(d).  *Id.* at Exh. F.

---

[3] In light of subsequent discussions and responses, it is clear that Cisco never actually investigated the origins of the CLI commands, and therefore had no basis for knowing whether or not some or all of the asserted commands in fact came from some other source.

Meanwhile, on July 24, Arista had propounded Interrogatory 16 to ensure that Cisco would provide basic bibliographic information about each asserted CLI command, including its author, date of creation, document(s) in which it was first fixed and first published, and the first Cisco product to use the command. Lloyd-Lovett Decl., Exh. H.

In August, Arista again raised Cisco's inadequate response to Interrogatory 5. *See id.* ¶ 11. Cisco again conceded it needed to supplement its response and promised to do so. *Id.* Cisco committed at least to identify key individuals in their development. *Id.* Although Arista did not consider this commitment sufficient, because Cisco's response to Interrogatory 16 was also due by the end of August, Arista withheld moving to compel until it could evaluate both responses.

Cisco dodged its discovery responsibility once again, however. Its response to Interrogatory 16, served on August 27, does not even purport to answer the question posed. It does not even mention any of the specific asserted CLI commands, much less provide the requested information regarding each such command. Rather, the response consists solely of pages of citations to document productions. Lloyd-Lovett Decl., Exh. I. By a rough estimate, these citations encompass over 350,000 pages of documents, from which Arista is supposed to divine the basic information about Cisco's own purported "creative expressions." *Id.* ¶ 15. If a document exists among these 350,000 pages that specifies the requested information on a command-by-command basis, Arista has not been able to find it, and Cisco never identified it in meet and confer. *Id.* ¶¶ 15–16. In fact, Cisco counsel could not even name a single CLI author who appears in the 350,000 pages Cisco cited per Rule 33(d). *Id.* ¶ 16.

Cisco then served its supplemental response to Interrogatory 5 on September 1. Lloyd-Lovett Decl., ¶ 12. The only "supplement" to Cisco's prior inadequate response was the mention of *one* individual, a Mr. Kirk Lougheed. Lloyd-Lovett Decl., Exh. F. To be clear, Cisco has not identified Mr. Lougheed as an author of any of the CLI Commands, but rather that he is "knowledgeable regarding the CLI command expressions and the process" by which the CLI commands were created. *Id.* Ironically, a word search on the 350,000+ pages of documents cited in response to Interrogatory 16 turned up no hits for Mr. "Lougheed," and Mr. Lougheed is not listed as an author for any of the 26 asserted copyrighted works attached to the Second Amended

7
NOTICE OF MOTION AND MOTION TO COMPEL INTERROGATORY RESPONSES
Case No. 3-14-CV-05344-BLF

985679.2

Complaint.  *See id.* ¶ 15.

Arista promptly sought to meet and confer about both of these discovery responses.  In that call on September 15, Cisco conceded that Mr. Lougheed was not the author of all of the CLI commands, Cisco could not say what, if any, commands he did author, and Cisco could not provide any specifics about what, if anything, Cisco had done to collect the bibliographic information and derivation narrative for each of the asserted commands.  *Id.* ¶ 17.

The discovery sought in these two interrogatories is not only relevant, but it is foundational to further discovery efforts.  This discovery will identify persons whom Arista will likely need to depose to learn how each asserted CLI command came about, when it was "created" at Cisco and when and how it was used.  Because this discovery is a gateway to substantial additional discovery, Arista made it clear on September 3 that it could wait no longer for complete responses.  Lloyd-Lovett Decl., ¶ 17.  On September 15, Cisco said it was still gathering further information, thus conceding that none of its *four* prior interrogatory responses was adequate.  *See id.*  But Cisco would not commit to provide all of the information requested by the interrogatories, or to provide any supplement—no matter the scope—before October 5.  *See id.*  Because of the aggressive schedule in this case, and Cisco's pattern of promising supplementation only to deliver still inadequate responses, Arista informed Cisco that it would need to move to compel a complete response, and would request expedited briefing.  *See id.*  Cisco refused to agree to an expedited briefing schedule.  *Id.*

### III.    ARGUMENT

#### A.    Legal Standard.

The Federal Rules of Civil Procedure allow for broad discovery, authorizing parties to obtain discovery regarding "any nonprivileged matter that is relevant to any party's claim or defense . . . ."  Fed. R. Civ. P. 26(b)(1).  Relevant information for discovery purposes includes any information "reasonably calculated to lead to the discovery of admissible evidence," and need not be admissible at trial to be discoverable.  *Id.*  District courts have broad discretion to determine relevancy for discovery purposes.  *See Hallett v. Morgan*, 296 F.3d 732, 751 (9th Cir. 2002).  "For good cause, the court may order discovery of any matter relevant to the subject

8
NOTICE OF MOTION AND MOTION TO COMPEL INTERROGATORY RESPONSES
Case No. 3-14-CV-05344-BLF

985679.2

matter involved in the action." Fed. R. Civ. P. 26(b)(1).

"Under the liberal discovery principles of the Federal Rules [a party resisting discovery is] required to carry a heavy burden of showing why discovery was denied." *Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975). It must show "that the discovery should not be allowed, and [it] also has the burden of clarifying, explaining or supporting its objections with competent evidence." *Louisiana Pac. Corp. v. Money Mkt. 1 Institutional Inv. Dealer*, 2012 U.S. Dist. LEXIS 162971, at *4 (N.D. Cal. Nov. 14, 2012) (citing *DIRECTV, Inc. v. Trone*, 209 F.R.D. 455, 458 (C.D. Cal. 2002)). An "evasive or incomplete" answer to an interrogatory is "treated as a failure to . . . answer" that warrants a motion to compel. Fed. R. Civ. P. 37(a)(4), (a)(3)(B)(iii). A motion to compel should be granted when the plaintiff's interrogatory responses leave the basis of its claims "to pure speculation and conjecture." *Struthers Scientific & Int'l Corp. v. Gen. Foods Corp.*, 51 F.R.D. 149, 153 (D. Del. 1970) (granting trade secret defendant's motion to compel specific identification of trade secrets at issue).

### B. Arista's Interrogatories 5 and 16 seek basic, relevant information about the purported protectable expression in the asserted copyrighted works.

Cisco has failed to provide any substantive explanation for its failure to respond to Interrogatories 5 and 16. While Cisco never objected to Interrogatories 5 or 16 as irrelevant in the parties' last meet and confer on this dispute, its written responses include a host of boilerplate objections including relevance.[4] The information Cisco refuses to produce goes to the heart of Arista's defenses: how and when a work was created, who created it, and when it was fixed in a tangible medium of expression are all facts directly relevant to whether material that was purportedly copied is protected by the copyright laws. For example, "The *sine qua non* of copyright is originality." *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 345 (1991)

---

[4] *See* Lloyd-Lovett Decl., Exh. F (Cisco's Objections to Interrogatory No. 5) ("Cisco further objects to this interrogatory as irrelevant and not calculated to lead to the discovery of admissible evidence to the extent it (1) calls for evidence pertaining to specific similarities between Cisco's copyrighted works and individual CLI commands copied by Arista, (2) seeks information not relevant to the copyrightability of Cisco's works-in-suit, and (3) seeks information regarding acts not at issue in this suit."); Exh. I (Cisco's Objections to Interrogatory No. 16) ("Cisco further objects to this interrogatory as irrelevant and not calculated to lead to the discovery of admissible evidence to the extent it seeks information not relevant to the copyrightability of Cisco's works-in-suit and seeks information regarding acts not at issue in this suit.").

(emphasis in original); *see also id.* at 347 ("The originality requirement . . . remains the touchstone of copyright protection today."). To obtain copyright protection, a work must be "independently created by the author (as opposed to copied from other works) . . . ." *Id.* (citations omitted); *see also Apple Computer, Inc. v. Microsoft Corp.*, 35 F.3d 1435 (9th Cir. 1994) (holding that copyright protection extends only to those components of a work that are original to the author). Arista believes that serious questions exist as to the originality of the asserted CLI Commands, given their close relationship to industry standards and their short, mundane nature.[5]

Interrogatories 5 and 16 seek the most basic information about the origin and creation of each of the 500-plus disputed CLI commands, hierarchies, etc., which will enable Arista to evaluate and test the originality of those commands. Without this information, which only Cisco, as the purported copyright holder, possesses, Arista cannot investigate even the most basic questions about Cisco's copyright assertions, such as: Did a Cisco engineer really coin the term "ip address", or did that engineer merely use "ip address" because it was already used by others? Without the information sought by Interrogatory 16, Arista would have no way of deposing the purported author of "ip address," nor could it conduct meaningful follow-on discovery about the originality of any of the commands.

Another substantial question raised by the nature of the CLI commands and Cisco's allegations is whether the merger and *scenes a faire* copyright defenses apply to some or all of the commands. Under the merger doctrine, when an idea and its expression are indistinguishable, or "merged," the expression will only be protected against nearly identical copying. *Sid & Marty Krofft Television Prods. Inc. v. McDonald's Corp.*, 562 F.2d 1157, 1164, 1167–68 (9th Cir.1977). The doctrine of *scenes a faire* is related: "When similar features…are as 'a practical matter indispensable, or at least standard, in the treatment of a given [idea],' they are treated like ideas and are therefore not protected by copyright." *Apple Computer, Inc.*, 35 F.3d at 1444 (quoting *Frybarger v. Int'l Bus. Machs. Corp.*, 812 F.2d 525 (9th Cir.1987)). Here, many CLI commands

---

[5] The originality of *other* aspects of the registered "copyrighted works"—which include millions of lines of source code—has no bearing on this case since there is no allegation that Arista copied such code. If what is alleged to have been copied—CLI Commands—are not original, there can be no infringement even if other parts of the "work" are original.

simply implement protocols specified in industry standards.  For example, Arista is entitled to know what role the IETF "vrrp" standard played in Cisco's "creation" of its vrrp commands.  If Cisco claims it is an uncanny coincidence that it created commands with the same names as are found in the IETF standards, at least Arista is entitled to test that assertion.

An additional question in this case is whether any alleged use Arista made of Cisco's CLI commands falls under the "fair use" doctrine.  The fair use exception excludes from liability certain uses of otherwise protectable material.  17 U.S.C. § 107; *see also Campbell v. Acuff-Rose Music, Inc*., 510 U.S. 569, 575 (1994) ("From the infancy of copyright protection, some opportunity for fair use of copyrighted materials has been thought necessary to fulfill copyright's very purpose . . . ."). To determine whether a use constitutes fair use, courts consider the nature of the copyrighted work, whether the use is "transformative," the amount of the portion used in relation to the copyrighted work as a whole, and the effect on the potential market.  *See Campbell,* 510 U.S. at 575–79.  Putting each CLI command in its context—in relation to the industry, to the registered work as a whole, and the market for the work—is essential to this defense.  The information sought by these interrogatories is only the first step towards developing these facts.

  C.   Cisco's invocation of Rule 33(d) is improper.

Neither Interrogatory 5 nor 16 is amenable to a response under Rule 33(d).  To invoke Rule 33(d), the records must be specified "in sufficient detail to enable the interrogating party to locate and identify them as readily as the responding party could."  Fed. R. Civ. P. 33(d); *see also Rainbow Pioneer v. Hawaii Nevada Inv. Corp*., 711 F.2d. 902, 906 (9th Cir. 1983).  "[U]nder Rule 33(d), the responding party chooses to produce business records in answer to the interrogatories—not to avoid answering them. To answer an interrogatory, a responding party has the duty to specify, by category and location, the records from which answers to interrogatories can be derived." *O'Connor v. Boeing North Am., Inc*., 185 F.R.D. 272, 277 (C.D. Cal.1999) (internal quotation marks omitted). "The responding party may not avoid answers by imposing on the interrogating party a mass of business records from which the answers cannot be ascertained by a person unfamiliar with them." *Psenner v. Victoria's Secret Stores, LLC*, 2014 U.S. Dist.

LEXIS 154783, *4 (E.D. Cal. Oct. 29, 2014) (citing 7 Moore's Federal Practice, § 33.105[3] (3d ed.2001)); *see also Cambridge Elecs. Corp. v. MGA Elecs., Inc.*, 227 F.R.D. 313, 323 (C.D. Cal. 2004) (A party "must identify in their answers to the interrogatories specifically which documents contain the answer. Otherwise they must completely answer the interrogatories without referring to the documents." (citations and quotations omitted)).

These interrogatories are not the sort that can be answered by reference to documents. Interrogatory 5 seeks a narrative description of how each asserted CLI command was derived, *i.e.*, its origin or creation. Interrogatory 16 seeks basic, but specific, bibliographic information about each asserted CLI command, each command hierarchy and each command mode and prompt. It would not be expected that any document or documents could possibly provide the command-by-command listing of requested information, and Cisco has never indicated that such a document exists. Rather, these interrogatories call for Cisco to research the authors, interview them, and determine the answers.

Moreover, even if there were some hypothetically proper answer to these interrogatories under Rule 33(d), Cisco's responses certainly do not comply. First, Cisco has never explained how the information could be found in the cited documents. Second, Cisco does not reference documents by each CLI command; rather Arista is left to guess what information from what document pertains to what CLI command, hierarchy, and mode. Third, the cited documents are so voluminous that it is not possible for Arista to divine the requested information. In sum, it cannot possibly be the case that it is as easy for Arista to sort through hundreds of thousands of pages of documents to try to find basic information about Cisco's purported creative expression as it would be for Cisco to investigate these facts with its own witnesses and provide a simple, direct response.

### D.   Cisco has failed to explain a basis for its burden claim, and any articulable burden is of Cisco's own making.

Cisco has lodged objections based upon burden, and has made veiled references to the burden of responding during meet and confer conferences, but if Cisco is going to claim copyright protection in 500+ commands it must shoulder the responsibility of producing evidence about those commands.

12
NOTICE OF MOTION AND MOTION TO COMPEL INTERROGATORY RESPONSES
Case No. 3-14-CV-05344-BLF

985679.2

District courts have broad discretion in deciding whether particular interrogatories are unduly burdensome. Wright, Miller & Marcus, Fed. Prac. & Pro.: Civ. § 2176 at 77 (3rd ed. 2010). A court should allow discovery "unless the hardship is unreasonable in the light of the benefits to be secured from the discovery." *Thomas v. Cate*, 715 F. Supp. 2d 1012, 1032 (E.D. Cal. 2010) (citations omitted). "As a threshold matter, . . . an objecting party must specifically establish the nature of any alleged burden, usually by affidavit or other reliable evidence." *Id.* The fact that it would take an objecting party many hours to conduct the review necessary to respond to an interrogatory does not establish undue burden. *Id.* at 1033–34 (citations omitted).

Cisco brought this case asserting 26 copyrighted works, alleging that every one of its 500+ commands are original and creative, and that Cisco it was protecting an "elaborate taxonomy . . . authored by Cisco employees." Dkt. No. 64. Its General Counsel declared to the world that its copyright assertion did not contradict industry standards, despite the evidence to the contrary.[6] These facts suggest that Cisco was obligated to investigate the authorship and derivation of each asserted CLI command, hierarchy, and prompt even before it filed suit. But in any event, Cisco cannot now claim that it is overly burdensome for it to provide the facts on which it based its (very public) allegations against Arista. Cisco's refusal to provide Arista with any specific authorship or derivation information for any of the disputed CLI commands is utterly at odds with its assertions in this case. If 500 commands are too burdensome for Cisco to investigate, then it should narrow or drop this case.

While Cisco has also asserted boilerplate burdensomeness objections, it has failed to show that the burden of providing complete responses to Interrogatories 5 and 16 will cause it any unreasonable hardship. This is particularly true when Cisco has sole possession of the information requested by these interrogatories. In fact, over the course of six meet and confer calls spanning more than three months,[7] Cisco has never articulated its burden, or why it is so disproportionate

---

[6] *See* Lloyd-Lovett Decl., Exh. A.
[7] *See* Lloyd-Lovett Decl., ¶ 18.

13
NOTICE OF MOTION AND MOTION TO COMPEL INTERROGATORY RESPONSES
Case No. 3-14-CV-05344-BLF

985679.2

to the case.[8]

Indeed, Cisco's overblown rhetoric in its complaint[9] and its claim that its CLI is "a very important, unique aspect of Cisco's products that contributes tremendously to the success and widespread acceptance of Cisco's products" (Dkt. No. 64 at ¶ 24) suggests Cisco investigated these facts pre-filing. Moreover, Cisco's demand for an injunction against Arista "sell[ing] . . . or accept[ing] customers for Arista's networking products" shows that Cisco seeks to debilitate Arista in this lawsuit. *Id.* at 28–29. It is insulting for Cisco to make these allegations and ask the Court to grant such an injunction against Arista, while at the same time complaining of the burden of interviewing and collecting basic information about the material that Cisco claims is so valuable and creative.

Ten months after filing suit, six months since serving initial disclosures, five months since receiving Interrogatory 5 and two months since receiving Interrogatory 16, Cisco has still failed to collect and produce basic information about a single one of its 500+ asserted CLI commands, hierarchies, command modes or prompts. Cisco should have had this information before it sued, but in any event should have been collecting it from the time it brought the suit. And if it had not done its pre-filing investigation as it should have, it never should have represented to the Court that this case should receive an expedited trial schedule. Arista is entitled to prompt and complete responses to Interrogatories 5 and 16.

///

///

///

---

[8] Most recently, Cisco claimed that it could not promptly gather this information because key individuals are unavailable due to a hearing in the International Trade Commission between Arista and Cisco. Lloyd-Lovett Decl., ¶ 17. When pressed to identify a witness both critical to collecting responsive information and unavailable because of that hearing, Cisco's counsel could not provide an answer. *Id.* Moreover, given the size of Cisco's legal department and legal budget (estimated at $125 million) (*see* Ashby Jones, *More Law Firms Charge Fixed Fees for Routine Jobs*, The Wall Street Journal, May 2, 2007; *see also* Cisco Blog, Cisco General Counsel on State of Technology in the Law, *available at* http://blogs.cisco.com/news/cisco_general_counsel_on_state_of_technology_in_the_law), Cisco has the means to staff the cases that it *chooses to bring*, and thus surely can timely respond to relevant discovery.

[9] Cisco alleged "blatant[] and extensive[] copying" (¶ 3); "widespread and flagrant" copying (¶ 6); and that "CLI copying is just the tip of the iceberg" (¶ 7). *See* Dkt. No. 64.

14
NOTICE OF MOTION AND MOTION TO COMPEL INTERROGATORY RESPONSES
Case No. 3-14-CV-05344-BLF

985679.2

## IV.    CONCLUSION

For the foregoing reasons, Arista respectfully respects the Court to order Cisco to provide, within one week, responses to its Interrogatory 5 (limited to the CLI commands that Cisco contends Arista has unlawfully copied), and a complete response to Interrogatory 16.

Respectfully submitted,

Dated:  September 17, 2015            KEKER & VAN NEST LLP


By:   /s/ *Brian L. Ferrall*
      BRIAN L. FERRALL

      Attorneys for Defendant ARISTA
      NETWORKS, INC.