Kathleen Sullivan (SBN 242261)
kathleensullivan@quinnemanuel.com
QUINN EMANUEL URQUHART &
SULLIVAN LLP
51 Madison Avenue, 22nd Floor
New York, NY 10010
Telephone: (212) 849-7000
Facsimile: (212) 849-7100

Sean S. Pak (SBN 219032)
seanpak@quinnemanuel.com
John M. Neukom (SBN 275887)
johnneukom@quinnemanuel.com.
QUINN EMANUEL URQUHART &
SULLIVAN LLP
50 California Street, 22nd Floor
San Francisco, CA 94111
Telephone: (415) 875-6600
Facsimile: (415) 875-6700

Mark Tung (SBN 245782)
marktung@quinnemanuel.com
QUINN EMANUEL URQUHART &
SULLIVAN LLP
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, CA 94065
Telephone: (650) 801-5000
Facsimile: (650) 801-5100

Steven Cherny *(admitted pro hac vice)*
steven.cherny@kirkland.com
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900

Adam R. Alper (SBN 196834)
adam.alper@kirkland.com
KIRKLAND & ELLIS LLP
555 California Street
San Francisco, California 94104
Telephone: (415) 439-1400
Facsimile: (415) 439-1500

Michael W. De Vries (SBN 211001)
michael.devries@kirkland.com
KIRKLAND & ELLIS LLP
333 South Hope Street
Los Angeles, California 90071
Telephone: (213) 680-8400
Facsimile: (213) 680-8500

*Attorneys for Plaintiff Cisco Systems, Inc.*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

| | |
|---|---|
| CISCO SYSTEMS, INC.,<br><br>Plaintiff,<br><br>vs.<br><br>ARISTA NETWORKS, INC.,<br><br>Defendant. | CASE NO. 5:14-cv-5344-BLF<br><br>**CISCO'S OPPOSITION TO ARISTA'S MOTION TO COMPEL INTERROGATORY RESPONSES**<br><br>**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**<br><br>Date: September 29, 2015<br>Time: 1:30 P.M.<br>Dept.: Courtroom 5<br><br>**DEMAND FOR JURY TRIAL** |

# **TABLE OF CONTENTS**

I.      Introduction and Summary of Argument ............................................................... 1

II.     Factual Background ........................................................................................ 2

        A.      Cisco's Development of Its Copyrighted Works ................................... 2

        B.      Arista's Decision to Copy Cisco's CLI ............................................... 3

        C.      Cisco Files Suit to Protect Its Intellectual Property ............................ 4

        D.      Arista's One-Sided Approach to Discovery in this Case ...................... 5

        E.      Arista's Failure to Meet and Confer .................................................. 7

        F.      Cisco's Supplemental Response to Interrogatory No. 16 ..................... 10

III.    Legal Standard ............................................................................................. 10

IV.     Argument ..................................................................................................... 11

        A.      Cisco Has Already Produced Extensive Information About Its Copyrighted
                CLI ............................................................................................. 11

        B.      The Remaining Incremental Information Arista Seeks Is Not Relevant ................ 14

        C.      The Burden of Obtaining this Incremental Information Would Be
                Disproportionate to Its Relevance ..................................................... 17

        D.      Arista's Motion to Compel Is Procedurally Improper ........................... 19

V.      Conclusion .................................................................................................. 20

## TABLE OF AUTHORITIES

Page

### Cases

*16 Casa Duse, LLC v. Merkin*,
791 F.3d 247 (2d Cir. 2015) ................................................................ 13

*Amer. Dental Assoc. v. Delta Dental Plans Assoc.*,
126 F.3d 977 (7th Cir. 1997) .............................................................. 13

*Brocade Communications Sys., Inc. v. A10 Networks, Inc.*,
2013 WL 831528 (N.D. Cal. Jan. 10, 2013) ...................................... 16

*Feist Publications, Inc. v. Rural Telephone Service Co.*,
499 U.S. 340 (1991) ............................................................................ 15

*In re First Franklin Financial Corp. Lit.*,
2010 WL 961649 (N.D. Cal. Mar. 16, 2010) ............................... 11, 20

*Louisana Pac. Corp. v. Money Mkt. 1 Institutional Inv. Dealer*,
2012 WL 5519199 (Nov. 14, 2012) .................................................... 10

*Secureinfo Corp. v. Telos Corp.*,
387 F. Supp. 2d 593 (E.D. Va. Sep. 9, 2005) ................................... 16

### Statutes

17 U.S.C. § 201(b) ...................................................................................... 13

17 U.S.C. § 410(c) ...................................................................................... 15

Civil L.R. 37-1(a) ................................................................................. 11, 19

Fed. R. Civ. P. 26(b) .................................................................................. 10

Fed. R. Civ. P. 26(b)(2)(B) ........................................................................ 11

Fed. R. Civ. P. 26(b)(2)(C)(iii) .................................................................. 11

Fed. R. Civ. P. 33(d) ......................................................................... 8, 9, 12

Fed. R. Civ. P. 37(a)(1) ...................................................................... 11, 19

# I.  INTRODUCTION AND SUMMARY OF ARGUMENT

Plaintiff Cisco Systems, Inc. ("Cisco") opposes the Motion to Compel Interrogatory Responses ("Motion") (Dkt. 66) filed on September 17, 2015 by Defendant Arista Networks, Inc. ("Arista").  Arista's motion seeks an order compelling Cisco to produce thousands of individual data points across hundreds of individual elements (each taken out of context) from Cisco's copyrighted works-in-suit that Arista has intentionally copied into its accused products.  Arista's motion should be denied for many reasons, the most prominent being that Cisco has in fact ***provided*** responsive data.  *See* Ex. 1.[1]  Instead of reviewing the information Cisco had already produced, or negotiating with Cisco concerning a reasonable scope for a supplemental production, Arista raced to the courthouse to file an improper motion to compel voluminous additional data points that are irrelevant to the real issues in this case.

This case is about Arista's intentional infringement of Cisco's copyrighted operating systems.  To avoid having to expend the resources necessary to create an original command-line interface, Arista deliberately chose to copy—wholesale—the command-line interface ("CLI") from Cisco's copyrighted works-in-suit, as well as other related material.  The material Arista copied includes hundreds of original multi-word command expressions, the creative way in which Cisco arranged those expressions, Cisco's command modes and prompts, Cisco's chosen expressions for command outputs, and the documentation Cisco authored to explain its copyrighted works.  Arista copied so much it even copied typographical errors Cisco had regrettably made.  Arista should not be permitted to evade liability for its intentional infringement of Cisco's copyrighted works by shifting the focus from its intentional and wide-ranging infringement to minutiae about the development of the individual elements of Cisco works that Arista copied.

That Arista's motion to compel is more tactical gambit than genuine desire for relevant information is evident from the manner in which Arista pursued the issue.  Arista moved to

---

[1]  Citations to "Ex. __" refer to exhibits to the Declaration of Matthew D. Cannon, filed herewith.

compel without (1) completing the meet-and-confer process; (2) engaging in even a discussion of the heavy burden (and meager relevance) of its interrogatory requests; (3) addressing Cisco's numerosity objection—that a single interrogatory purporting to request thousands of data points across five categories of information for hundreds of "command" entries is improper on its face; or (4) permitting Cisco an opportunity to supplement to address Arista's concerns first articulated in what was purportedly a "meet and confer" session. Cisco has promptly supplemented, as it promised it would when the parties spoke, rendering Arista's motion largely moot. Arista's Motion to Compel therefore should be denied.

## II.  FACTUAL BACKGROUND

### A.  Cisco's Development of Its Copyrighted Works

Nearly thirty years ago, Cisco created a new way for users to interact with Cisco's network routing and switching products. Instead of remotely uploading standard configuration files, Cisco engineers conceived of a unique CLI that permitted users to log onto a router or switch and configure it directly. This new concept for interaction between network engineers and the devices on which they worked afforded Cisco an opportunity for great creativity. Embarking on that opportunity to create new works made for hire, Cisco's engineers created an elaborate arrangement of original command expressions, including the multi-word command expressions at issue here, that could be entered into the CLI. In addition, Cisco created new command modes and prompts, command outputs, and supporting documents. These aspects of Cisco's copyrighted operating systems proved extremely popular with Cisco's customers.

Over the thirty years that Cisco's products have run its original operating system, including the CLI that Cisco developed, Cisco's engineers have continued to generate new elements, including command expressions. Cisco has released dozens of versions of its operating systems incorporating these elements. *See, e.g.*, Dkt. 64 ¶ 25 (identifying copyrighted operating systems). Throughout this development process, Cisco's engineers made creative choices about how command expressions would be arranged and the syntax those command expressions would employ. Cisco's unique and copyrighted CLI—including the original set of command expressions created by Cisco—became extremely popular with Cisco's customers. That is why Arista, by its

own admission earlier this month, "emulates Cisco's command line interface"—to take advantage of the popularity of the CLI that Cisco created. *See* Ex. 2 at 54:25-55:2.

**B.** <u>Arista's Decision to Copy Cisco's CLI</u>

Arista was formed by a handful of former Cisco executives wishing to compete with Cisco. Because there are many successful companies that have been started by former Cisco people, and because Cisco strongly supports employee mobility, the fact that Arista competed with Cisco was hardly controversial. However, shortly before this suit began, Arista's most senior executive began making a series of troubling public statements suggesting that Arista had deliberately copied Cisco's innovations to compete unfairly. This prompted an investigation by Cisco that revealed widespread intellectual property infringement and caused Cisco to initiate litigation against Arista. Cisco rarely does this; before this lawsuit, Cisco had not sued a competitor for intellectual property theft for approximately ten years.

This case and motion relate to Arista's decision to deliberately copy Cisco's user interface and place it on Arista's networking switches because, according to Arista's own CTO, former Cisco employee Ken Duda, customers apparently do not like the Linux user interface Arista now supplies. Customers instead prefer Cisco's CLI that Arista copied into Arista's switches. By taking these shortcuts, Arista competes against Cisco without investing in engineers and innovation the way Cisco has since it was first formed. As Arista CEO Jayshree Ullal explained in 2013:

> The training [on how to use Arista's EOS operating system] is very easy and a Cisco CCIE expert would be able to use Arista right away, ***because we have similar command-line interfaces and operational look and feel***. Where we don't have to invent, we don't.

Ex. 3 at CSI-ANI-00381281 (emphasis added).

While Arista's public statements thus indicated its desire to duplicate Cisco's original CLI, the documents Arista eventually produced in discovery now reveal that copying Cisco's CLI is a core part of Arista's internal strategy. A 2006 email to Arista's internal engineering email list reported that

OPPOSITION TO MOTION TO DISMISS
Case No.3:14-cv-05344-BLF

For example, in a 2009 email chain, an Arista employee reported that customers insist that Arista

Certain customers had reported to Arista that

In response, Arista CEO Jayshree Ullal confirmed what she would only much later state publicly: that it is and Arista should instead

Eventually, Arista did get around to developing its own Linux-based user interface (against which Cisco has brought no copyright claims in this case). But by Arista's own admission, it is the Cisco CLI that Arista copied—not Arista's Linux-based CLI—that Arista's customers prefer. At least 80% of Arista's customers have indicated to Arista that "they appreciate the way they can leverage their deep [Cisco] IOS experience, as they can easily upgrade an aging [Cisco] Catalyst infrastructure to Arista." Ex. 7. Arista's explicit strategy was to migrate the vast majority of Arista's customers from Cisco by intentionally copying Cisco's CLI.

**C.**     **Cisco Files Suit to Protect Its Intellectual Property**

As explained above, Cisco took notice when Arista's senior executives began publicly boasting about their copying of Cisco's CLI. For years, Cisco had competed—successfully— against other networking companies, such as Juniper, who developed their own operating systems and their own user interfaces. Arista's public acknowledgements that it was intentionally using

4

Cisco's CLI to compete against Cisco were unique. It also indicated willful copyright and patent infringement.

Cisco therefore filed this suit, alleging that Arista has infringed 26 copyrighted works and 2 patents, on December 5, 2014. *See* Dkt. 1. Cisco's complaint identified many aspects of its copyrighted works that Arista had misappropriated, including more than 500 multi-word command expressions, the hierarchical arrangement of those commands, command modes and prompts, command outputs, and the supporting documentation—which Arista had copied right down to the typos. *See id.* ¶¶ 9, 50-57.

Prior to and throughout this litigation, Arista has repeatedly admitted its copying. For example, Arista admitted that it used the Cisco CLI command expressions identified in Cisco's complaint. *See* Dkt. 36 ¶ 53 ("Arista admits that it uses the IOS command expressions included in Exhibit 1 to Cisco's complaint."). It also admitted that Arista "uses the command modes and prompts identified under the subheading 'Arista EOS Command Modes.'" *See id.* ¶ 54. In a public statement the weekend after Cisco's complaint was filed, Arista's CEO admitted that the company had copied at least portions of Cisco's product documentation. *See* Ex. 8 at CSI-CLI-00357849. And, in an ITC case that went to trial just a few weeks ago, Arista's lawyers proclaimed in open court that Arista "emulates Cisco's command-line interface." *See* Ex. 2 at 54:25-55:2.

**D.  <u>Arista's One-Sided Approach to Discovery in this Case</u>**

Given Arista's public admissions regarding its use of Cisco's CLI, this case should be relatively straightforward. But Arista's tune has since changed, in that Arista now wishes to deny using any of the Cisco command expressions that it previously admitted using, while at the same time still admitting that it uses many of the same commands as Cisco. *See, e.g.*, Ex. 9 at 23-24 (stating that "[s]ome of the commands [in Arista's EOS] are also used by Cisco," yet claiming that "none of the [Arista] CLI commands accused by Cisco of copyright infringement in this lawsuit is identical to a command in Cisco IOS CLI"). Arista has further sought to complicate the case by serving onerous and irrelevant discovery requests on Cisco while largely refusing to respond substantively to Cisco's requests.

OPPOSITION TO MOTION TO DISMISS
Case No.3:14-cv-05344-BLF

One example of Arista's lopsided tactics can be seen in the parties' respective answers to interrogatories regarding copyright infringement and non-infringement. Arista served its Interrogatory No. 2 on April 10, 2015. That interrogatory seeks an identification of the elements from Cisco's copyrighted works that Arista has infringed. Cisco has responded by producing extensive documentation of Arista's copying, including eight pages of narrative explanation and citations to supporting documents, as well as 354 pages of supporting charts containing more specific details. *See* Cannon Decl. ¶ 11. By contrast, Arista's first "substantive" response to Cisco's non-infringement interrogatory—Interrogatory No. 10—includes no specifics. *See* Ex. 9 at 29-31. Arista's interrogatory response merely suggests that certain elements of Cisco's copyrighted works are not original, such that Arista's copying of those elements does not evidence Arista's copyright infringement—similar to the suggestions in Arista's Motion to Compel. But Arista's interrogatory response—like its Motion to Compel—does not identify a single pre-existing work that contains any aspect of Cisco's copyrighted CLI, or otherwise provide any factual support for its assertion that Cisco's CLI is not original to Cisco. *See id.* In part, Arista's non-response to Cisco's interrogatory is based on Arista's objection that, with more than 500 copied elements at issue, Arista needs additional time (beyond the nine months this case has been pending) to study each such copied element. *See id.* at, *e.g.*, 29 ("If Cisco insists on accusing over 500 different CLI commands in this litigation, it must provide a reasonable amount of time for Arista to investigate and provide responses to discovery relating to those hundreds of commands."). Cisco cannot help but observe that Arista's demand for additional time to respond to Cisco's interrogatories—because locating and verifying data across hundreds of individual commands takes time—makes Arista's instant motion to compel (on shortened time, after Cisco agreed to supplement) hypocritical.

The interrogatories related to each party's respective product development—including the interrogatories on which Arista has moved to compel—have been handled similarly asymmetrically. Cisco served interrogatories asking Arista about the development of its accused products on March 26, 2015. *See* Cannon Decl. ¶ 12. Arista objected on burden and relevance grounds and provided no substantive response to those interrogatories until a week ago

OPPOSITION TO MOTION TO DISMISS
Case No.3:14-cv-05344-BLF

(September 18, 2015), and even that supplemental response, served six months after receiving

Cisco's interrogatory, included a mere three paragraphs that identified no documents and only a

dozen individuals. *See* Ex. 9 at 24-26. Cisco is continuing to work with Arista to obtain

responsive information without involving the Court, although seeking judicial intervention may

soon be necessary if Arista does not begin substantively participating in discovery. (Unlike

Arista, Cisco does not intend to file a motion to compel unless and until the meet-and-confer

process has been given a reasonable opportunity to succeed.)

### E. Arista's Failure to Meet and Confer

Arista did not properly meet and confer before filing this motion. Arista engaged in

meaningful discussion of only one of the two disputed interrogatories (No. 5). On the other (No.

16)—which is the only interrogatory that actually calls for the information Arista appears to be

seeking by its motion—Arista never attempted to confer in good faith.

Arista's Interrogatory No. 5, served on April 10, 2015, sought information regarding the

"derivation" of every Cisco IOS CLI command expression. *See* Dkt. 67 at Exhibit E. Cisco

responded that it was not aware of any responsive information because all of the command

expressions in Cisco's copyrighted works were developed by Cisco. *See* 67 at Exhibit F, p. 14.

Cisco had not derived its CLI from others. In the meet-and-confer process, Arista later tried to

correct its request by explaining that it instead sought information not about "derivation" of

commands, but actually about their ***creation***. Cisco maintained its burden objections,[2] but

nevertheless (to avoid a discovery dispute) provided a narrative response that described in detail

the process by which CLI commands have been created at Cisco, and identified documents that

further explained Cisco's internal creative process. *See id.* at pp. 14-15. For example, Cisco

identified various versions of a document known as the "Parser Police Manifesto," which

explained guidelines Cisco sought to apply to creation of CLI command expressions to ensure

---

[2] Cisco objected that this interrogatory was overly broad, in that it sought information regarding portions of Cisco's copyrighted works not at issue. *See* Dkt. 67 at Exhibit F, pp. 13-14. Cisco also objected that this interrogatory was unduly burdensome to the extent that it purported to require fine-grained analysis of every individual command expression in Cisco's IOS. *See id.*

those command expressions fit within Cisco's original command hierarchies.  *See* Cannon Decl. ¶ 13.

In response to further demands from Arista, Cisco supplemented again to identify a person most knowledgeable about the development of Cisco's CLI—Kirk Lougheed, a distinguished Cisco Engineering Fellow who was principally responsible for creating Cisco's first CLI, including many command expressions and the arrangement thereof.  *See id.* at p. 15.

Between the dates of Cisco's two supplemental responses to Arista's Interrogatory No. 5, Arista served Interrogatory No. 16.  *See* Dkt. 67 at Exhibit H.  That interrogatory seeks five categories of information regarding each of the individual elements of Cisco's copyrighted works that Cisco has alleged Arista copied, including more than 500 multi-word command expressions. *See id.* at p. 4.  This requested information includes the "author or originator" of each individual command expression, the date on which the individual command expression was created, the document in which it was first "fixed," the document in which the individual command expression was first published, and the first product(s) that responded to each command expression.  *See id.*

In its response to Arista's request for thousands of individual pieces of information, Cisco timely objected (on August 27, 2015) that Interrogatory No. 16 is compound and unduly burdensome.  *See* Dkt. 67 at Exhibit I, p. 6.  Cisco also objected that it sought information that is not relevant to the copyrightability of Cisco's asserted works.  *See id.*  Reserving its objections, Cisco responded substantively.  Cisco specifically incorporated its recent supplemental responses to Interrogatory No. 5, which (as described above) included: identifying documents that contained responsive information (such as the first product to include many of the copied command expressions);[3] a narrative explanation of the development of Cisco's copyrighted works; and identifying an individual most knowledgeable about the process by which many of Cisco's

---

[3]  Cisco's product manuals, which are among the documents that Cisco cited pursuant to Rule 33(d), often include a "command history" field, which identifies the first version of Cisco's copyrighted operating system to include a given command expression.  *See, e.g.*, Ex. 10 at CSI-CLI-00293157 ("default-information originate (OSPFv3)"), CSI-CLI-00293515-17 ("ipv6 nd prefix"), CSI-CLI-00293558-59 ("ipv6 neighbor").  Many of these fields often include additional information regarding subsequent use of a command.  *See, e.g.*, *id.*

command expressions, command hierarchies, command modes and prompts, and command outputs were created—including information about the teams of Cisco engineers involved in creating them.[4] *See* Dkt. 67 at Exhibit F, pp. 13-15. In addition, Cisco identified further documents that included the date on which each copyrighted work-in-suit was completed and the legal author of each such work (Cisco). *See id.*[5]

A week after Cisco served its initial response to Interrogatory No. 16, Arista sent correspondence regarding that response. *See* Ex. 11. Rather than proposing that the parties discuss how to balance the burdens presented by that interrogatory with Arista's purported need for additional information, Arista proposed that the parties discuss a motion to compel on a shortened briefing schedule. *See id.* at 2. When the parties conferred by phone on September 15, Arista maintained its inflexible posture. Arista's counsel indicated that Arista was not interested in discussing the burdens of these requests or ways to try to mitigate those burdens, or about any supplementation short of providing every bit of information requested within days. *See* Cannon Decl. at ¶ 16; *see also* Ex. 12. Arista would not clarify why its need for the many fine-grained categories of information called for by its interrogatory was so urgent either. *See id.* Cisco's counsel explained that Arista was acting precipitously and tried to have a conversation about the disproportionate burden of the request. *See id.* Cisco stated nonetheless that it would work to further supplement its earlier responses by October 2 (if not sooner) with much of the requested information that it had been in the process of gathering, and that it would clarify the details of such a supplementation by the end of the week following additional investigation. *See id.* In response, Arista confirmed its intent to file its motion to compel regardless what the parties discussed, by filing its motion on Thursday of that week, before Cisco could confirm the details of its proposed supplementation.

---

[4] Mr. Lougheed was responsible for developing the earliest version of Cisco's CLI. He also created or directed the teams who created of many of Cisco's command expressions and their organization and is knowledgeable about the process by which many others were created.

[5] This information is contained in Cisco's copyright registration applications and certificates, which Cisco identified pursuant to Rule 33(d) in its response to Interrogatory No. 16.

After Arista filed its motion to compel and motion to shorten time, Cisco explained its proposed supplementation and its objections to providing additional, incremental information in correspondence dated September 21, 2015, in an effort to try to resolve the dispute. *See* Ex. 12. Cisco explained that it would provide the information now contained in its supplemental response to Interrogatory No. 16, including the work in which each command expression first appeared, the date on which that work was completed and/or distributed, and the products that supported those works. *See id.* In a response the next day, Arista confirmed that it remained unwilling to negotiate, and would maintain its motion in the absence of a commitment by Cisco to provide everything Arista was seeking, without evidencing any interest in hearing Cisco's positions on burden and the marginal relevance of the information that remained at issue. *See* Ex. 13.

### F. Cisco's Supplemental Response to Interrogatory No. 16

Concurrently with the filing of this brief, Cisco is serving Arista with a supplemental response to Interrogatory No. 16. *See* Ex. 1. This information contains the information that Cisco promised in its September 21 letter, and then some. Specifically, Cisco has identified the work in which each command expression first appeared, the date on which that work was completed and/or distributed, and the Cisco products that supported those works. Cisco has also identified specific commands about which Cisco Fellow Kirk Lougheed can provide further information, and another senior Cisco engineer who can testify about Cisco's creative process. Cisco's supplemental response to Arista's interrogatory spans nineteen pages.

## III. LEGAL STANDARD

The party seeking discovery bears the burden of proving that the information sought is relevant. *See Louisana Pac. Corp. v. Money Mkt. 1 Institutional Inv. Dealer*, No. 3:09-cv-03529-JSW-LB, 2012 WL 5519199, at *3 (N.D. Cal. Nov. 14, 2012). For purposes of discovery, relevance is construed broadly, encompassing information that is reasonably calculated to lead to the discovery of admissible evidence. *See* Fed. R. Civ. P. 26(b). A reasonableness requirement is thus built into the discovery rules.

In the modern era of electronically stored information, "reasonableness" includes ensuring that the burden imposed by discovery requests is proportional to the expected benefit of such

OPPOSITION TO MOTION TO DISMISS
Case No.3:14-cv-05344-BLF

requests. *See, e.g.*, Fed. R. Civ. P. 26(b)(2)(B). Where information is only marginally likely to be relevant, but significantly burdensome to obtain, it is not discoverable. *See, e.g.*, Fed. R. Civ. P. 26(b)(2)(C)(iii) (stating that a court "must limit the frequency or extent of discovery" where "the burden or expense of proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues").

In the event of a discovery dispute, parties are required to meet and confer "in good faith" to resolve their discovery dispute without action by the Court. Fed. R. Civ. P. 37(a)(1); *see also* Civil L.R. 37-1(a). Failure to meet and confer as required risks needlessly squandering scarce judicial resources, and is therefore a sufficient basis for denying a motion to compel. *See, e.g.*, *In re First Franklin Financial Corp. Lit.*, No. C08-01515JW (HRL), 2010 WL 961649, at *1 (N.D. Cal. Mar. 16, 2010) (finding failure to meet and confer "sufficient grounds to deny [a] motion to compel").

## IV. <u>ARGUMENT</u>

The live issues on Arista's motion to compel are far narrower than Arista claims. There is no dispute regarding "basic" information, or information that is merely "bibliographic." Cisco has already provided, or has agreed to search for and produce, the "basic" information regarding its copyrighted works and their constituent elements. *See* Section IV.A, *infra*. The remaining incremental information about individual elements of Cisco's copyrighted works that Cisco has not yet provided is, at best, marginally relevant and incredibly burdensome to obtain. Arista's motion to compel therefore fails substantively, although it should also be denied on procedural grounds due to Arista's failure to meet and confer in good faith before filing it.

### A. <u>Cisco Has Already Produced Extensive Information About Its Copyrighted CLI</u>

Reading Arista's brief, it would be easy to get the mistaken impression that Cisco has not provided much information regarding the development of its copyrighted works. Not so. In fact, Cisco has provided virtually all the information that Arista purports to seek.

OPPOSITION TO MOTION TO DISMISS
Case No.3:14-cv-05344-BLF

Arista's Interrogatory No. 5, to which Arista hopes to bootstrap all of the information sought in its Motion to Compel, was specifically worded to seek information regarding the "derivation" of Cisco's CLI command expressions (*i.e.*, the development of those command expressions from another source). The obvious implication from that phrasing was that Cisco somehow took its CLI command expressions from others' works. Cisco responded that its command expressions—like the rest of Cisco's CLI—were Cisco creations, and that it was not aware of any responsive information. *See* Dkt. 67 at Exhibit F, p. 14. Nevertheless, once Arista mutated its request for information about "derivation" into a request for information about the original creation of Cisco's copyrighted works, Cisco provided a narrative response that identified documents about Cisco's creative process. *See id.* at pp. 14-15. Cisco then further supplemented to identify a person most knowledgeable about that process—someone that had been personally responsible for the development of dozens of Cisco's command expressions, as well as the arrangement thereof and other aspects of Cisco's copyrighted works-in-suit. *See id.* at p. 15.

Arista's Interrogatory No. 16 calls for five significantly more burdensome categories of information than its Interrogatory No. 5—categories for which it seeks information regarding each of the hundreds of individual elements that Arista unlawfully copied.[6] Notwithstanding Cisco's objections to the burdensome nature of this interrogatory, Cisco has provided the information about the origin of its copyrighted works and their constituent elements, which is most of the information that is reasonably available to Cisco, and which represents the vast majority of the information sought by Arista.[7]

**Author:** In its initial response to Interrogatory No. 16, Cisco identified documents showing that Cisco is the owner of the copyrighted works-in-suit, including their constituent elements. *See* Dkt. 67 at Exhibit I, pp. 6-11 (identifying pursuant to Fed. R. Civ. P. 33(d), *inter*

---

[6] Arista has not identified any incremental information sought by its Interrogatory No. 5, so this discussion will focus on Interrogatory No. 16.

[7] Cisco is investigating whether additional documents that corroborate this information are available. To the extent such documents exist and can be located through reasonable efforts, Cisco will produce such documents and amend its response to Interrogatory Nos. 5 and 16 to identify them for Arista.

OPPOSITION TO MOTION TO DISMISS
Case No.3:14-cv-05344-BLF

*alia*, Cisco's copyright registration certificates).  Cisco is also a legal author of the works-in-suit, given that the creative endeavors of Cisco employees constitute Cisco's "works made for hire."[8] *See* 17 U.S.C. § 201(b) ("In the case of a work made for hire, the employer or other person for whom the work was prepared is considered the author for purposes of this title. . .").  Contrary to Arista's implications, no individual member of Cisco's engineering teams who created the works-in-suit is a legal "author" of those works.  *See 16 Casa Duse, LLC v. Merkin*, 791 F.3d 247, 257 (2d Cir. 2015) (holding that "non-freestanding contributions to works of authorship are not ordinarily themselves works of authorship"); *Amer. Dental Assoc. v. Delta Dental Plans Assoc.*, 126 F.3d 977, 978-79 (7th Cir. 1997) (reversing the district court finding that "as the work of a committee, the Code could not be thought original. Creation by committee is an oxymoron" and holding instead that "most commercial software these days is written by committee . . . these items are routinely copyrighted, and challenges to the validity of these copyrights are routinely rejected").  In addition, Cisco has identified persons knowledgeable about the process by which the command expressions and other elements of its copyrighted works were created, including the individual responsible for the early development of Cisco's CLI, senior engineer and Cisco Fellow Kirk Lougheed.  *See* Dkt. 67 at Exhibit F, p. 15.  And in its supplemental response to Interrogatory No. 16, Cisco has identified an additional senior engineer who is knowledgeable regarding specific command expressions from its copyrighted works and the process by which those elements were created.  *See* Ex. 1 at 12.  Cisco is investigating whether it can identify additional individuals knowledgeable about these command expressions and will further supplement its response if such individuals are discovered.

**<u>Date of Completion:</u>**  Cisco provided information regarding the date its copyrighted works-in-suit were completed along with its complaint.  That information is stated on the face of

---

[8]  For this reason, the names of individual contributors to Cisco's copyrighted works would not be the sort of "bibliographic" information that would be included in a copyright application—contrary to implications by Arista. *See, e.g.*, Ex. 13 at 2 (commenting on "the fact that Cisco apparently has not identified in its copyright registration the 'teams of Cisco employees' who purportedly created the protectable expression).

Cisco's copyright registration certificates. *See, e.g.*, Dkt. 64 at Exhibits 3-28. In its supplemental response to Interrogatory No. 16, Cisco also identified the dates on which each command expression was first introduced in any of Cisco's works. *See* Ex. 1 at 12-25.

**First Publication:** In its original response to Interrogatory No. 16, Cisco identified documents from which Arista could identify the first version of Cisco's copyrighted operating systems in which most of the copied command expressions were initially used. *See, e.g.*, Dkt. 67 at Exhibit I, p. 8 (citing, *inter alia*, the Cisco IOS IPv6 Command Reference, which contains the "Command History" for the multi-word command expressions "ipv6 neighbor," "default-metric (OSPFv3)," "ipv6 nd prefix," "default-information originate (OSPFv3)," "log-adjacency-changes (OSPFv3)," "maximum-paths (OSPFv3)," "passive-interface (OSPFv3)," and "router-id (OSPFv3)"). In its supplemental response, Cisco has consulted those documents, as well as some additional documents being produced imminently, and gathered the requested information in tabular form. *See* Ex. 1 at 12-25. That supplemental response includes data on the first version of Cisco's operating system to contain each of the more than 500 command expressions copied by Arista. *See id.*

**First Product:** Cisco's supplemental response to Interrogatory No. 16 also identifies hardware products that supported the various operating systems in which the command expressions copied by Arista were first introduced by Cisco. *See id.* Cisco is also preparing corroborating documents for production.

The parties' remaining discovery dispute, to the extent one remains, concerns only a small fraction of the information that Arista described in its motion—not the full scope of its Interrogatory No. 16. The only live issue presented by Arista's motion, then, is whether Cisco should be compelled to produce the rest of what Arista is seeking.

**B.      The Remaining Incremental Information Arista Seeks Is Not Relevant**

Cisco has already provided Arista with far more than "basic" information regarding its copyrighted works and the elements thereof. The only information Arista seeks that Cisco has not provided or agreed to provide are the details of the work done by every single person Cisco hired to create the command expressions that Arista copied. Arista must prove that the relevance of this

OPPOSITION TO MOTION TO DISMISS
Case No.3:14-cv-05344-BLF

information outweighs the undue burden of collecting it to succeed on its motion to compel. But Arista's scant discussion of relevance in its Motion to Compel spans less than two pages. (Mot. at 9-10.) The bulk of that argument is devoted to a high-level recitation of principles of copyright law, rather than an explanation of why the fine-grained details about the constituent elements of Cisco's copyrighted works—elements that Arista consciously chose to copy from Cisco—would be relevant. Arista simply asserts that these details are relevant to the originality of Cisco's works, the merger or *scenes a faire* doctrines, or Arista's fair use defense. But because the fine-grained details that remain are not material to those issues, Arista's motion should be denied.

Arista's explanation for why these details are relevant to originality makes little sense. Cisco's burden to prove originality is easily carried. *See, e.g.*, *Feist Publications, Inc. v. Rural Telephone Service Co.*, 499 U.S. 340, 345 (1991) ("To be sure, the requisite level of creativity is extremely low; even a slight amount will suffice."). The originality of the works-in-suit will in fact be presumed on the basis of Cisco's copyright registration certificates. *See* 17 U.S.C. § 410(c). Yet Arista claims that it needs the identity of each individual who worked on implementing the copied elements from Cisco's copyrighted works so that it can test the originality of those elements by deposing every such person. (*See* Mot. at 10.) But Arista does not identify what information it would hope to gain from multiple depositions of former and current Cisco employees who created Cisco's CLI as works made for hire for Cisco over the past 30 years that would be legally relevant and that it could not gain from Cisco's discovery responses and/or information that is publicly available. In fact, Arista admits that its challenges to the originality of certain elements of Cisco's copyrighted works, which it has not yet identified in discovery, are based instead on publicly-available documents concerning standards. (*See* Mot. at 5 ("In truth, many of the commands Cisco claims as exclusively its own derive from fundamental industry standard *documents*.") (emphasis added).) Because Arista has not identified any incremental information relevant to originality that it hopes to gain from such depositions, it has failed to justify the relevance of this request in light of the heavy burden it imposes.

Further, Arista's assertions that one or more of the command expressions from Cisco's copyrighted works are not original are also insufficient to defeat Cisco's claims of copyright

OPPOSITION TO MOTION TO DISMISS
Case No.3:14-cv-05344-BLF

infringement in any event, making this burdensome exercise more unnecessary.  It is black-letter law that the selection and arrangement of even ***unoriginal*** elements is protectable.  *See, e.g.*, *Brocade Communications Sys., Inc. v. A10 Networks, Inc.*, No. C 10-3428 PSG, 2013 WL 831528, at *5 (N.D. Cal. Jan. 10, 2013) ("Copyright can and does protect creative expression even of features that are themselves unprotectable."); *Secureinfo Corp. v. Telos Corp.*, 387 F. Supp. 2d 593, 611 (E.D. Va. Sep. 9, 2005) ("Nonliteral elements of a computer program may receive copyright protection even if they are individually unprotectable, if they are compiled in a unique or creative way.").  Each of these command expressions will remain at issue in the case, regardless of whatever details about them Arista's burdensome interrogatory could elicit.

Arista also fails to explain how the identity of every person who worked on each of Cisco's command expressions would lead to relevant information regarding the merger or *scenes a faire* doctrines, or to Arista's fair use defense.  (*See* Mot. at 10-11.)  Arista's contention that those doctrines limit Arista's liability in this case are baseless.  Cisco's documents and witnesses, including Mr. Lougheed, will confirm that Cisco had choices about the expressions it created and the manner in which they were arranged.  *See, e.g.*, Dkt. 67 at Exhibit F, p. 15 (identifying evidence regarding Cisco's creative process).  So, too, will Arista's documents, which implicitly reflect the existence of alternatives to Cisco's command expressions in Arista's internal debates about how ███████ it should copy Cisco's creative works.  *See* Ex. 5.  With respect to Arista's ill-conceived fair use defense, the nature of Cisco's copyrighted works and the importance of the copyrighted elements to them similarly will be evident from the works themselves.  Arista does not explain what relevant, incremental information it hopes to gain from burdensome depositions of every engineer who worked on every element of Cisco's copyrighted works that Arista deliberately copied, as is its burden in moving to compel.

Arista has not explained why the remaining incremental data that Cisco has not produced (or agreed to search for) in response to Interrogatory No. 16 are relevant to the real issue in this case:  Arista's intentional, wholesale copying of Cisco's copyrighted CLI.  Relative to the extensive information that Cisco has already provided about its copyrighted works, the details about every single person who worked on creating a given command expression is at most

16

OPPOSITION TO MOTION TO DISMISS
Case No.3:14-cv-05344-BLF

marginally relevant to non-dispositive issues. Production of such tangential details should not be compelled, given the burden of identifying them.

### C. The Burden of Obtaining this Incremental Information Would Be Disproportionate to Its Relevance

When evaluating the proportionality of Arista's request, it is important to evaluate not the request as a whole—because Cisco has produced or has agreed to produce the bulk of the information sought. *See* Section A, *supra*. Instead, the question is whether the burden in obtaining the additional details Cisco has thus far been unable to provide outweighs the relevance of those specific details. The burden of obtaining the specific details Arista is seeking is significantly disproportionate to their minimal relevance.

The burden of obtaining additional details beyond the information that Cisco has already provided would be extreme. The information that Arista is seeking—the identity of every individual who worked on each command expression copied by Arista —is not information Cisco keeps in the ordinary course of business or details that are required by the Copyright Office. The command expressions at issue in this case were developed over decades—some date back to the mid-1980s. In that time, Cisco's copyrighted operating systems have grown to encompass millions of lines of code. To unearth details of work done thirty years ago would require extraordinary efforts.

The Declaration of Phillip Remaker ("Remaker Decl.") explains the difficulty in attempting to identify the additional details about Cisco's command expressions sought by Arista. To search for detailed information regarding the individual employees who created a particular command expression requires searching through multiple discrete document management systems. *See* Remaker Decl. at ¶ 3. The search tools available for use with these systems are not well-adapted to looking for details regarding individual command expressions. *See id.* at ¶¶ 4-6, 8. Even if a document mentioning a given command expression can be located, it may not be possible to determine if that document is the earliest document in which that command expression appeared. *See id.* at ¶ 7. A search across Cisco's various source code repositories is likely to be similarly difficult. *See id.* at ¶¶ 9-11. Mr. Remaker's experience in attempting to locate

OPPOSITION TO MOTION TO DISMISS
Case No.3:14-cv-05344-BLF

1    individuals who worked on several exemplary command expressions confirms the difficulties

2    attendant to this process. *See id.*at ¶¶ 18-21.

3        Arista cannot reasonably dispute the burden that providing this level of detail would

4    require. Despite being both smaller than Cisco and having a much shorter history, Arista has

5    objected to providing the development history of its accused products on the ground that doing so

6    would be unduly burdensome. *See, e.g.*, Ex. 9 at 24-26. Arista has similarly objected that

7    providing its contentions regarding any specific elements from Cisco's copyrighted works will

8    require additional time—beyond the six months that Cisco's interrogatories have been pending—

9    because of the volume of such information. *See id.* at, *e.g.*, 29 ("If Cisco insists on accusing over

10   500 different CLI commands in this litigation, it must provide a reasonable amount of time for

11   Arista to investigate and provide responses to discovery relating to those hundreds of

12   commands."). Arista should not be permitted to impose burdens on Cisco that it is unwilling to

13   undertake itself.

14       No modern technology company who hoped to defend its copyrights in computer products

15   could reasonably do so under the discovery standards that Arista proposes. By insisting that it is

16   entitled to information about—and a deposition of—not just the legal author of Cisco's

17   copyrighted works, but also every individual who could be described as an "originator" of any

18   element from those works that Arista chooses to copy, Arista sets an unreasonably burdensome

19   standard. In any copyright infringement case involving software, the plaintiff would be required

20   to identify and produce for deposition nearly every single employee responsible for developing the

21   literal or non-literal aspects of its works that are alleged to be copied—every programmer,

22   engineer, program manager, or other employee involved with the development of that application.

23   Such an unreasonable undertaking cannot be the standard for discovery in copyright cases. Nor

24   can Arista reasonably contend otherwise, in light of its refusal to provide such detailed

25   information regarding the development of its own accused products. *See id.* at 24-26.

26       Given the marginal relevance of the incremental details Arista is seeking, the burden

27   required to provide that information far outweighs its potential value. This disproportionality

28   justifies denying Arista's Motion to Compel.

**D.** <u>**Arista's Motion to Compel Is Procedurally Improper**</u>

Both Fed. R. Civ. P. 37(a)(1) and Civil Local Rule 37-1(a) require counsel to confer to engage in a good-faith effort to resolve discovery disputes without judicial intervention. The reason for this is clear: It preserves scarce judicial resources for disputes that really matter. Arista's Motion to Compel does not raise such a dispute—in significant part because Arista failed to meet and confer regarding Interrogatory No. 16.

Although Arista purports to base its motion on both Interrogatory No. 5 and Interrogatory No. 16, as described above, Interrogatory No. 5 does not call for much of the information that Arista is seeking to compel. The fact that Arista even served Interrogatory No. 16 instead of simply moving to compel on Interrogatory No. 5 confirms this to be true. The parties' real dispute, to the extent there is any real dispute remaining after Cisco's supplementation, concerns Interrogatory No. 16.

Arista never conferred regarding Cisco's response to Interrogatory No. 16 in good faith. Cisco served its response to Interrogatory No. 16 on August 27, 2015. Arista sent a letter complaining about that response one week later on September 3, 2015. *See* Ex. 11. In that letter—before the parties had even scheduled a time to talk about Interrogatory No. 16—Arista already demanded that Cisco agree to a shortened briefing schedule on a motion to compel. *See id.* at 2. When the parties did actually confer on September 15, Arista's counsel indicated that it was "not interested" in hearing about the burdens the requests imposed on Cisco and exploring ways to reduce those burdens. *See* Cannon Decl. at ¶ 16. Nor was Arista interested in hearing about what information Cisco could provide by way of supplementation, or when it could provide that information. *See id.* Instead, unless Cisco agreed to provide every scrap of information Arista was seeking within days of the parties' telephonic conference, Arista stated that it was going to move to compel on an expedited schedule. *See id.* Cisco's counsel stated that it would provide an explanation of what it could provide by way of supplementation—notwithstanding its objections—by the end of that week. *See id.* But Arista filed its motion to compel on Thursday in

a transparent attempt to avoid considering any information from Cisco responsive to the purported "meet and confer."[9] Arista then moved to shorten time the next day.

Had Arista met and conferred with Cisco in good faith, this dispute could have been avoided—or at least significantly narrowed. As described above, Cisco had already provided Arista with most of the information it was requesting, and based on the discussion with Arista was diligently collecting additional information to include in a supplemental response. Cisco provided that information, which Arista had pre-judged as insufficient, but actually provides most of the remaining information Arista is seeking that is arguably relevant, today. *See* Ex. 1. To the extent any dispute remains, Arista's haste prevented the parties from discussing reasonable compromises, such as an agreement by Cisco to prioritize gathering information about elements from Cisco's copyrighted works regarding which Arista could identify a tenable challenge to originality or protectability.

Arista's failure to meet and confer would suffice to justify denying Arista's motion to compel in any case. *See, e.g.*, *In re First Franklin Financial Corp. Lit.*, 2010 WL 961649, at *1. Such a result is even more appropriate here, where Arista's refusal to negotiate in good faith has forced the Court and the parties to expend significant resources on this motion unnecessarily.

## V. <u>CONCLUSION</u>

Accordingly, Cisco respectfully requests that the Court deny Arista's Motion to Compel in its entirety or, at a minimum, grant Cisco a reasonable time to respond to Arista's Interrogatories.

---

[9] Cisco ultimately sent its responsive correspondence on Monday, September 21, 2015, so that it could take Arista's motions into account. *See* Ex. 12. Arista's response the next day confirmed Arista's unwillingness to even consider compromise. *See* Ex. 13.

DATED: September 28, 2015                    Respectfully submitted,


                                             /s/ John M. Neukom

                                             Kathleen Sullivan (SBN 242261)
                                             kathleensullivan@quinnemanuel.com
                                             QUINN EMANUEL URQUHART &
                                             SULLIVAN LLP
                                             51 Madison Avenue, 22nd Floor
                                             New York, NY 10010
                                             Telephone: (212) 849-7000
                                             Facsimile: (212) 849-7100

                                             Sean S. Pak (SBN 219032)
                                             seanpak@quinnemanuel.com
                                             John M. Neukom (SBN 275887)
                                             johnneukom@quinnemanuel.com.
                                             Matthew D. Cannon (SBN 252666)
                                             matthewcannon@quinnemanuel.com
                                             QUINN EMANUEL URQUHART &
                                             SULLIVAN LLP
                                             50 California Street, 22nd Floor
                                             San Francisco, CA 94111
                                             Telephone: (415) 875-6600
                                             Facsimile: (415) 875-6700

                                             Mark Tung (SBN 245782)
                                             marktung@quinnemanuel.com
                                             QUINN EMANUEL URQUHART &
                                             SULLIVAN LLP
                                             555 Twin Dolphin Drive, 5th Floor
                                             Redwood Shores, CA 94065
                                             Telephone: (650) 801-5000
                                             Facsimile: (650) 801-5100

                                             Steven Cherny (admission pro hac vice
                                             pending)
                                             steven.cherny@kirkland.com
                                             KIRKLAND & ELLIS LLP
                                             601 Lexington Avenue
                                             New York, New York 10022
                                             Telephone: (212) 446-4800
                                             Facsimile: (212) 446-4900

                                             Adam R. Alper (SBN 196834)
                                             adam.alper@kirkland.com
                                             KIRKLAND & ELLIS LLP
                                             555 California Street
                                             San Francisco, California  94104
                                             Telephone: (415) 439-1400
                                             Facsimile: (415) 439-1500

Michael W. De Vries (SBN 211001)
michael.devries@kirkland.com
KIRKLAND & ELLIS LLP
333 South Hope Street
Los Angeles, California 90071
Telephone: (213) 680-8400
Facsimile: (213) 680-8500

*Attorneys for Plaintiff Cisco Systems, Inc.*

OPPOSITION TO MOTION TO DISMISS
Case No.3:14-cv-05344-BLF