UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA     *ORIGINAL*

SAN JOSE DIVISION

Before The Honorable Beth Labson Freeman, Judge

| | | |
|---|---|---|
| Cisco Systems, Inc., | ) | **Case Management Conference** |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| VS. | ) | NO. C 14-05344 BLF |
| | ) | |
| Arista Networks, Inc., | ) | Pages 1 - 38 |
| | ) | |
| Defendant. | ) | San Jose, California |
| _____ | ) | Thursday, November 5, 2015 |


**REPORTER'S TRANSCRIPT OF PROCEEDINGS**

APPEARANCES:

For Plaintiff:              Quinn Emanuel Urquhart & Sullivan LLP
                           50 California Street, 22nd Floor
                           San Francisco, California  94111
                      BY:  MATTHEW D. CANNON,
                           JOHN (JAY) NEUKOM, ATTORNEYS AT LAW
(Telephonically)           SEAN SANG-CHUL PAK, ATTORNEY AT LAW


For Defendant:             Keker & Van Nest
                           633 Battery Street
                           San Francisco, California  94111-1809
                      BY:  BRIAN L. FERRALL,
                           AJAY KRISHNAN,
                           ROBERT A. VAN NEST, ATTORNEYS AT LAW


Also present:  Leah Waterland, Cisco Systems, Inc.


Reported By:       Raynee H. Mercado, CSR No. 8258


    Proceedings reported by electronic/mechanical stenography;
transcript produced by computer-aided transcription.

*RAYNEE H. MERCADO, CSR, RMR, CRR, FCRR (510) 451-7530*

```
 1   Thursday, November 5, 2015                        2:03 p.m.

 2                     P R O C E E D I N G S

 3          THE CLERK:  Calling case 14-5344, Cisco Systems,

 4   Incorporated versus Arista Networks, Incorporated.

 5      Counsel, please state your appearances.

 6          MR. PAK:  Good afternoon.  This is Sean Pak with

 7   Quinn Emanuel on behalf of Cisco.

 8          THE COURT:  Hello, Mr. Pak.

 9          MR. NEUKOM:  Good afternoon, your Honor.  On behalf

10   of Cisco, John Neukom.  Also with me today is my colleague

11   Matthew Dannon.  And also with us today is Leah Waterland, who

12   is the director of IP at Cisco.

13          THE COURT:  Oh, welcome.  Thank you.

14          MR. VAN NEST:  Good afternoon, your Honor.  Bob Van

15   Nest of Keker Van Nest for Arista.  I'm here with Brian

16   Ferrall and Ajay Krishnan.

17          THE COURT:  Nice to see all of you.  All right.

18      Well, I asked a simple question and you blew it up into a

19   full case management conference, so I guess I shouldn't stick

20   my head in the sand and not know what's going on with all of

21   you, so I appreciate you coming today.

22      I have a little housekeeping I want to start with 'cause

23   that's why I asked to have this conference.  There seems to be

24   confusion about how the claims construction hearings are going

25   to go and some confusion about the date that is referenced in
```

```
1    your papers.
2         My order and my calendar show your claims construction
3    hearing on February 5.  And it's referenced in these papers
4    that it's February 26.  So I don't know -- I don't think I'm
5    wrong, but I could be.  But I looked at the case management
6    order just now.  So I want to make sure -- Is that what
7    everyone's thinking?  Because in the joint statement, it's
8    referenced in the chart as February 26.
9              MR. NEUKOM:  That is consistent with Cisco's
10   understanding, your Honor, February 5th.
11             THE COURT:  Excellent.
12        Okay.  Then what I was concerned about is you -- the --
13   the last statement that I got from you indicated that if there
14   was going to be a separate hearing -- and I didn't actually
15   even know what you were talking about there.  So let's --
16             MR. VAN NEST:  I think --
17             THE COURT:  -- clean that up.
18             MR. VAN NEST:  I think we all made a mistake.  I
19   think everyone's contemplating a separate hearing on *Markman*,
20   and February 5th is the date.
21             THE COURT:  Good.
22             MR. VAN NEST:  I thought we had set aside the day
23   before for tutorial.
24             THE COURT:  It's the week before.
25             MR. VAN NEST:  The week before.  But the tutorial is
```

```
 1   separate --
 2          THE COURT:  Yes.
 3          MR. VAN NEST:  -- and then the Markman.  But I think
 4   we all were in error.  It was a joint submission, but I think
 5   that's the source of the confusion.
 6          THE COURT:  Okay.  So this submission had the wrong
 7   date, and that's not a problem.  I just wanted to make sure
 8   you all, if you were planning on a different date, could get
 9   your witnesses in line, so that's good.
10       But this other part, yes, I hold a separate tutorial.
11          MR. VAN NEST:  Right.
12          THE COURT:  And that is a week prior.  I find it
13   really helps me to think about your technology for a few days
14   and then come back and work and have the Markman hearing.  And
15   you're asking for four hours total; is that correct?
16          MR. VAN NEST:  I think that's right, your Honor.
17          THE COURT:  Okay.
18          MR. NEUKOM:  Yes, your Honor.
19          THE COURT:  Mr. Neukom?
20       All right.  That is all fine.  And I may be in a criminal
21   trial that week, but one never knows.  And so I probably -- I
22   may move your tutorial to the afternoon of the prior week.
23   But the hearing, I may just have -- be dark in the criminal
24   case to give you the full day, 'cause four hours is going to
25   really eat into the afternoon, and that works for me.  I'll
```

 1    work on that.

 2        Let's now get to the issues that seem to be pending and --

 3    are causing me some concern.  Mr. Van Nest, at your client's

 4    request, this was put on a pretty short schedule, actually

 5    driven by the copyright claims more than the patent claims.

 6        And given the filing of the IPR petition, I'm a little

 7    concerned that this may be overly ambitious, although I'm not

 8    deciding a stay issue right now.  I am just very concerned

 9    about how the case seems to have blown up since we set this

10    trial date in -- next summer.

11        **MR. VAN NEST:**  That -- That's right, your Honor.  And

12    we share that concern.  Remember, that the case was set on

13    a -- on a -- on an expedited schedule at Cisco's request, not

14    at our request.

15        **THE COURT:**  Oh, not at your request.  You're right,

16    you're right.

17        **MR. VAN NEST:**  And what's happened, then, just

18    briefly outline it, we've had lot of trouble getting discovery

19    on track.  We sent a very simple interrogatory back in April

20    asking for the origins of these commands.  Got nothing over

21    the summer.  Fought all summer long.  Finally went to Judge

22    Grewal.  He granted our motion in full.

23        Just about two weeks ago, we got a response from Cisco

24    finally listing 137 authors.  And that's not all.  There's

25    another 160 commands for which they can't find an author.

1        **THE COURT:**  Hmm.

2        **MR. VAN NEST:**  And so what we've done is two things.

3   We've -- We've ask your Honor to hear a motion to continue the

4   trial --

5        **THE COURT:**  Yeah.

6        **MR. VAN NEST:**  -- some five months.  And the only

7   request I have in that regard today, your Honor, is that the

8   earliest date we could get for a hearing on that motion was in

9   late February.

10       **THE COURT:**  Well, that's okay, because the earliest

11  date you could get for trial would be the fall of 2017.

12       **MR. VAN NEST:**  There you go.

13       **THE COURT:**  So that's not a problem.

14       **MR. VAN NEST:**  Okay.  Fair enough.

15       **THE COURT:**  And Cisco has a problem -- a concern with

16  that, and I don't know whether Mr. Pak wants to respond or

17  Mr. Neukom.  I am -- I know that -- that this sort of shifting

18  sands as to who wants to sever, I have a general philosophy

19  that cases are not better by making two cases out of one.

20      But I'm a little concerned here that -- though we may need

21  to be on parallel tracks, and I don't understand the nature

22  and overlap between the patent claims that -- that Cisco is

23  making and the copyright claims to know whether severing would

24  be beneficial actually at this point to both sides or not.

25       **MR. VAN NEST:**  Well, our view --

1        **MR. PAK:**  Your Honor, may --

2        **THE COURT:**  Sure.  Go ahead.

3        **MR. PAK:**  Sean Pak, your Honor, yes.

4    Why don't I begin briefly, and then I'm going to turn it

5    over to Mr. Neukom, who's there in person --

6        **THE COURT:**  Okay.

7        **MR. PAK:**  -- and can address all the concerns.

8    Your Honor, we were here at the first CMC, and if you

9    recall we had actually asked for bifurcation of the copyright

10   claims --

11       **THE COURT:**  Right.

12       **MR. PAK:**  -- from the patent claims.  And there was

13   back and forth about that.  And what we had ultimately decided

14   was given the availability in the summer and given the

15   arguments that were presented by Mr. Van Nest's colleagues

16   that there was substantial overlap between the patent and the

17   copyright case and all the judicial efficiency that comes from

18   having one trial rather than two, we had agreed to do trial in

19   a consolidated fashion in the summer of next year, and that

20   was the first availability that was available on your

21   calendar.

22       **THE COURT:**  Yes.

23       **MR. PAK:**  We also realized, then, doing in so that

24   from Cisco's perspective, every single day that we have these

25   products that are using admittedly copied technology from us

1    is a day that -- that causes us concern and has huge impact in

2    the marketplace.

3            **THE COURT:**  Yeah.

4        **MR. PAK:**  So we're very interested in getting to

5    trial on an expeditious basis.  We've worked very hard to make

6    that happen.

7        With respect to the -- the question now before you, your

8    Honor, in terms of whether bifurcation makes sense, we don't

9    think so because now that we have moved forward on

10   discovery -- as your Honor saw, we just filed our *Markman*

11   brief.

12           **THE COURT:**  Yes.

13       **MR. PAK:**  There's been lots of discovery that's been

14   produced pursuant to your Honor's order on the consolidation

15   or cross-use of discovery from the ITC cases.

16           **THE COURT:**  Yes.

17       **MR. PAK:**  There was an ITC trial that took place.

18   There's one coming up now, all of that, we've been working

19   very diligently to go through those documents, understand

20   where we need to take additional depositions, where we don't.

21   That's been incredibly helpful to us.

22       Lot of the reason why you haven't seen depositions being

23   taken at this point or, you know, frankly from Cisco's

24   perspective why we haven't pushed for additional documents is

25   there are hundreds of thousands of documents that have already

1    been produced by both -- both sides and now part of the record

2    in this case.  And a lot of that is very, very helpful to the

3    questions at issue in this case with respect to the

4    development of CLI, the decisions that were made by Arista to

5    copy the technology and all of that has really, from our

6    perspective, moved the ball forward.

7        And with respect to the patent case, as, your Honor, we

8    talked about before, there's substantial overlap between the

9    copyright claims which cover the command interfaces or the

10   expression that the user sees versus the patents which go to

11   the underlying technology as to those commands are then

12   translated into specific code instructions to enable the

13   technology to work together.

14       So at this point, from our -- from our perspective, your

15   Honor, we -- we think that fall of 2017 would be a incredibly

16   prejudicial delay for us.  We think that -- we'd like to move

17   forward in August of 2016.  The concerns that Mr. Van Nest

18   raised I think were -- are not significant concerns in terms

19   of the amount of discovery that we still have left in this

20   case.

21       And I'm going to let Mr. Neukom address some of those

22   concerns specifically --

23            THE COURT:  Okay.

24            MR. PAK:  -- 'Cause I think we've addressed in our

25   papers, but there's a lot of background here that I think

 1    could be beneficial to your Honor's consideration.

 2          **THE COURT:**  All right.  Go ahead.

 3          **MR. NEUKOM:**  Well, your Honor, I have a number of

 4    points I'd like to cover briefly, although I want to make sure

 5    I'm being responsive to your Honor's particular question,

 6    which I think was the interplay between copyright and patent.

 7          **THE COURT:**  Yes.

 8          **MR. NEUKOM:**  Which I think Mr. Pak addressed.

 9          **THE COURT:**  And I know we went through this at the

10    initial case management conference.  I know these issues were

11    before us, but cases mature so --

12          **MR. NEUKOM:**  So dovetailing I hope what Mr. Pak just

13    expressed to the court, there are a few points that Cisco

14    would like to make to this court.

15          The first is we are talking about direct competitors here.

16    This situation invites some gallows humor about how direct of

17    competitors they are that Cisco is alleging that Arista is in

18    the market founded by former Cisco employees selling products

19    using Cisco's copyrighted and patented technology.

20          I note at the outset that these companies are direct

21    competitors for two reasons.  The first is to underscore the

22    importance to Cisco of this case and the timeliness of the

23    adjudication of its claims.

24          The second is we've noticed in some of your Honor's

25    writings that whether the parties are direct competitors is

1    relevant to the question of --

2              **THE COURT:**  I take that from the established law.

3              **MR. NEUKOM:**  -- of the court's willingness to stay a

4    case.

5        Let me just cover, if I may, a few points that are made by

6    the parties in -- in the joint case submission.

7        First is the suggestion that the scope of this case and

8    the copyright case has changed.  In any respect or even in

9    particular with respect to Judge Grewal's discovery ruling,

10   the scope of the case has not changed.  Looking back ten

11   months to Cisco's initial complaint, Cisco identified 26

12   copyrighted works.  Cisco identified 500 command line

13   expressions.  And Cisco has not expanded the scope of that

14   case.

15       Even at that time, certainly Arista, being founded by a

16   fraternity if you will of former Cisco employees, would know

17   that these were works for hire, that they were works for hire

18   that were contributed to by a number of engineers.

19       And I can't resist noting here that these engineers are

20   not authors under the law for copyright protection.  Cisco is

21   the author of every single one of these works and the command

22   line expressions.

23       The question that was brought to Judge Grewal was in an

24   interrogatory asking for a detailed explanation of every

25   engineer who contributed to the reduction of source code going

1    back from the late '80's for a 20-plus year history, which

2    engineers, for example, checked in which source code

3    containing which command line expression.

4        We thought your Honor may not be surprised to know that I

5    still think that that interrogatory was improper and overly

6    burdensome.  Judge Grewal disagreed, and his opinion matters a

7    lot more than me, so Cisco complied.

8        We complied with, pardon the expression, an outlandish

9    interrogatory response.  The interrogatory response is

10   something like over 200 pages.  It is supported by a table

11   with detailed data of over 1,000 pages of information.

12       Now, what Arista has learned from that shouldn't have been

13   a surprise.  And it is that over 26 copyrighted Cisco works

14   which tell the story of the history of routeing and switching

15   and a command line user experience for the engineers running

16   those networks.  Lots of Cisco engineers contributed to the

17   development of those products.

18       Now, given that the scope of this case hasn't changed from

19   day one, I think what's really before this court are two

20   questions, and they've been presented to this court as though

21   they are one-to-one related.

22       The two questions are No. 1, whether the deposition

23   allowance should be moved from 10 to 60, and the second is

24   whether the case schedule should be changed substantially.

25       On the issue of whether the depositions should be moved

1    from 10 to 60, I have two objections to that.  One is

2    procedural and the other is substantive.

3        Procedurally, this is -- this is an odd request by my

4    lights (sic).  This is a request for a blank check.  You have

5    a party that has not taken a single deposition yet of the ten

6    afforded to it and is asking for an additional 50 on top of

7    that.

8        If -- If Arista would like more than ten depositions --

9    perhaps over the next three and a half months, each side will

10   need a few more than ten depositions.  But if they do, I

11   believe that the lawyer's answer to that is to take the ten

12   you need and if you need a few more, identify what you need

13   and why.

14       And I bet Cisco will be pretty darned reasonable about

15   that at the appropriate point in time.  But to ask the court

16   as an initial matter, having taken no depositions, to explode

17   to 60 depositions, 420 hours per side, 840 hours of deposition

18   time total?  Procedurally makes no sense.

19       Substantively, I continue to have a hard time

20   understanding how that number of depositions would be

21   appropriate.

22       Just by way of comparison, I -- I think in the last 20

23   years, the biggest copyright case in this district was a case

24   by Oracle asserting copyright protection over Java.  And I

25   believe Mr. Van Nest and his colleagues were counsel in that

1    case.  And I could be wrong about this.  I've pieced this

2    together from looking at the docket.  From what I can tell, it

3    looks to me like there was something like 16 depositions per

4    side in that case.

5        I say that was the biggest case in the last 20 years.

6    Before that, the biggest copyright case in this district, I

7    believe, was *Apple v. Microsoft*.  And I just conferred with

8    lead counsel for Microsoft in that case, a lawyer named David

9    McDonald up in Seattle, and asked him what the depositions

10   were like in that case.  And he said that Judge Walker gave

11   each side 60 days only to perform any and all depositions they

12   could.

13       Now, we're talking about copyright cases covering Java,

14   covering Windows, covering Apple's operating system.  Trial

15   counsel and the parties in those cases were able to get

16   through discovery meaningfully with a small fraction of what

17   Arista is asking for in this case.  And I believe that if

18   counsel can work together, we can do the same thing here.

19            **THE COURT:**  All right.

20            **MR. NEUKOM:**  And I've been talking a bit.  I have

21   more comments, but let me -- let me pump the brakes for a

22   moment to give Mr. Van Nest or your Honor an opportunity.

23            **THE COURT:**  And Mr. Van Nest, absent a discovery

24   plan, I would be reluctant if not intransigent on not granting

25   the requests for additional depositions.

1      **MR. VAN NEST:**  Well, here's the thing, your Honor.

2    The first deposition date they offered of a CLI author was

3    December 10th, so when Counsel says Arista hasn't not taken

4    any depositions, we've been begging to get dates and haven't

5    gotten any.  The earliest date is December 10th.

6      **THE COURT:**  Well, and that's a concern to me about

7    your claims construction, and I know you suggest that you need

8    some depositions in order to brief --

9      **MR. VAN NEST:**  We do.

10     **THE COURT:**  -- claims construction.  That -- It's a

11   little different issue than what Mr. Neukom was addressing.

12   And -- And perhaps you would agree that the expanded number of

13   depositions is a matter to decide on another day when -- when

14   you can present a plan that would allow me to consider it.

15     **MR. VAN NEST:**  We can certainly present a plan, your

16   Honor, but here's my concern.  I'll take the issues

17   separately.

18     **THE COURT:**  Okay.

19     **MR. VAN NEST:**  First the timing.

20     **THE COURT:**  Sure.

21     **MR. VAN NEST:**  Then the numbers.

22     **THE COURT:**  Okay.

23     **MR. VAN NEST:**  The timing is not urgent.  This

24   product has been on the market since 2008.  They waited to

25   file their lawsuit six years after the product was out, so the

1    idea that there's some urgency here is absolute nonsense.

2        The reason we're seeking additional time is two-fold.

3    One, we filed an IPR on one of the two patents.  We intend to

4    file an IPR on the second patent next week.  It doesn't make

5    sense to go forward with all the *Markman* work and all the

6    patent work until we know whether or not the IPR's will be

7    initiated.  That decision will be in May.

8        So one of the reasons to move everything back -- and I'm

9    not asking for things to be severed at this point -- to move

10   everything back is to give us a breather on the patent side

11   and avoid unnecessary work that we're going to be doing,

12   particularly if the IPR's are allowed, they're initiated and

13   patent claims change.  That's just very simple.

14       With respect to the copyright, though, we started in

15   April.  Counsel talks about cooperation.  It took Judge Grewal

16   to get the information we need to even consider what the

17   discovery plan will be, and we just got it two weeks ago, and

18   it was 137 authors.  And that's not all of them.  There's

19   going to be more.

20       In this case, whether these commands are original or

21   creative is a big issue.  IP address, set clock, show host.

22   These are some of the commands they claim are original to them

23   and copyright without.  And we know that many of these

24   commands come directly from standards bodies.  They come

25   directly from commands that were in use with Linux.  They come

1    directly from other prior sorts of command structures.  And so

2    it is --

3          **THE COURT:**  But that's determined extrinsic to what

4    the authors are going to say.  I don't know.  I'll need to see

5    a thorough plan on these depositions if you're suggesting the

6    authors have anything to add.

7          **MR. VAN NEST:**  I think -- I think the authors have a

8    lot to add, your Honor, because we don't know -- with 500 of

9    these commands, we have no idea which of the commands they're

10   going to feature in the trial, what authors are going to show

11   up.  They gave us one author over the summer, and they've now

12   told us we can depose him on December 10th, so the reason we

13   don't know how much each author's going to add is we haven't

14   been able to depose any of them.

15       So I'm not saying that 60 is a magic number.  Of course

16   not.  But it does seem to me that to be productive in this

17   case, if we have any chance of -- of a trial any time next

18   year, we'd need to have a number like 20 or 25 to get started

19   so when we come back, we can say this is either tapped out and

20   no longer necessary, or we need more depositions than this.

21       Or -- because, remember, that 10 is for everything,

22   inventors, CLI, and the whole 9 yards.  So -- So with respect

23   to the numbers, if you gave us 20 or 25 today as a starting

24   point, we could put a plan together, get some dates in place.

25   Next time we're here, we'd have a little more information.

```
 1          With respect to the overall schedule, your Honor, again,

 2    we'd be happy to have you stay the whole thing.  But the

 3    reason we didn't ask for that is obviously Cisco wants to get

 4    their copyright case to trial.  So what we're saying is

 5    putting the patent case aside and understanding that we have

 6    an IPR there, what makes sense when you hear the motion to

 7    continue is to put this thing back five months or so, give us

 8    the time we need to conduct discovery to defend these 500

 9    commands and the hierarchies and the like.

10          And so all I'm asking today, your Honor, is to get a

11    date -- and it can be on the normal briefing calendar -- I'm

12    not asking for expedited or anything like that -- a date to

13    hear that motion sometime next month in December.

14               THE COURT:  My calendars are booked until February.

15               MR. VAN NEST:  That's --

16               THE COURT:  That's a problem.

17               MR. VAN NEST:  So we'd be perfectly willing to have

18    you decide that motion on the papers.

19               THE COURT:  Um-hmm --

20               MR. VAN NEST:  -- on a regular briefing calendar

21    where the briefing would be done in the next 30 days.

22          But I think in order to keep the case moving in light

23    of -- of these vast numbers of people that they've just now

24    disclosed two weeks ago, giving us some additional room so

25    that we can set some depositions, get started on that plan,
```

1    and come back to you with some more concrete information would

2    be good.

3        Remember, we started this in April.  We just now got

4    answers two weeks ago, thanks to Judge Grewal.  And so we're

5    confronting a situation where we may need to take up to 60

6    depositions.

7            **THE COURT:**  Well, I'm not avers to allowing you to

8    have more than the ten, and in a case like this, I think it

9    can be reasonable.  But you're, in a sense, asking me for a

10   blank check at this point.  I don't know who you'll depose

11   first.  You can come back after the 25 with the truly

12   essential people that you waited to depose till the end.

13       So I need a plan, and that's something that -- you know,

14   if I hadn't set this case management conference, I don't think

15   you were knocking on my door to have one set for the issue, so

16   I'm -- I'm willing to consider an expansion of the discovery,

17   but I need a plan.

18           **MR. VAN NEST:**  We'll submit a plan, your Honor.

19           **THE COURT:**  And I need to hear what Cisco's view of

20   it is before I make a determination.  You had indicated that

21   there were some depositions you had been trying to obtain

22   before you responded --

23           **MR. VAN NEST:**  That's right.

24           **THE COURT:**  -- to the plaintiff's construction.

25   That, of course, is of utmost concern to me.  And, again, if

1  you lose your slot for claims construction, I don't know

2  when -- I'd have to look at the calendar to see when I can get

3  that back in.

4          **MR. VAN NEST:**  Mr. Krishnan has been directly

5  involved in talking to -- let me --

6          **THE COURT:**  Okay.

7          **MR. VAN NEST:**  'Cause that is a more pressing issue

8  and one that if the *Markman* is not going to move that we need

9  to resolve soon.

10         **THE COURT:**  Well, yes.

11         **MR. KRISHNAN:**  Thank you, your Honor.

12         **THE COURT:**  Good afternoon.

13         **MR. KRISHNAN:**  So with regard to the inventor

14  depositions and claim contribution, the real issue here is

15  that Arista timely requested these -- inventor depositions

16  well before the cutoff.

17         **THE COURT:**  And how many are we talking about that

18  you need for claims construction?

19         **MR. PAK:**  Two.

20         **THE COURT:**  Two.

21         **MR. KRISHNAN:**  One of them has been already scheduled

22  for November 12th.  That's next Thursday.

23         **THE COURT:**  Good.

24         **MR. PAK:**  Which is only two business days before our

25  opposition brief would be due.  The other one we don't have a

```
 1    date.  That's Mr. TTjong, T-j-o-n-g, for the '886 patent.
 2            MR. NEUKOM:  And is he located --
 3            MR. PAK:  I believe he's in the Bay Area.
 4            THE COURT:  Oh, he's in the Bay Area.
 5            MR. KRISHNAN:  But -- But we don't have a date, and
 6    what we would be willing to do is to submit our opposition
 7    claim construction brief five business days after the last of
 8    these two depositions, whenever that is.
 9        We'd ask that we get Mr. John's deposition in the next two
10    weeks, and then five business days after which ever one is
11    second.
12            THE COURT:  Well, my -- my concern is that the claims
13    construction be fully briefed by probably around January 10th,
14    so that does give more time than your current schedule to do
15    the briefing.
16        At least I believe it does, Mr. Neukom.  I don't know when
17    your reply would have been due.
18            MR. NEUKOM:  I think it's one week later.
19            THE COURT:  I don't need it fully briefed before a
20    month before the tutorial, so I think there's a little play
21    here.  And, Mr. Neukom, can this second deposition be set in
22    November?
23            MR. NEUKOM:  Yes, your Honor.
24            MR. PAK:  Actually, yes --
25                    (Simultaneous colloquy.)
```

1    **MR. PAK:**  So, your Honor, yes.  I think that we've

2    been in contact with Mr. Tjong, and we can definitely make his

3    deposition available in November.

4        **THE COURT:**  Okay.

5    **MR. PAK:**  I think the January 10th offering, your

6    Honor, is very kind of you.  We can definitely make that work

7    on our end.  And we are interested in wrapping up the claim

8    construction briefing.  We will work with Mr. Krishnan on

9    that.  And I've been in discussion in trying to resolve those

10   issues.

11       **THE COURT:**  Okay.

12   **MR. PAK:**  This is largely a -- just an accommodation

13   of schedule and briefing schedule.

14       **THE COURT:**  It is.  And sometimes we take advantage

15   of that.  And of course I mentioned January 10, which happens

16   to be a Sunday, so I have to move that and make that January

17   8.

18       **MR. PAK:**  Right.

19       **THE COURT:**  But that's not a significant change.

20       **MR. NEUKOM:**  If I may, your Honor, and I hope Mr. Pak

21   will forgive me for this.

22       **THE COURT:**  He probably won't.  You'll find out when

23   you get back to the office.

24                    (Laughter.)

25       **MR. PAK:**  Won't be the first time, your Honor.

```
 1              THE COURT:  That's right.
 2              MR. NEUKOM:  I'll find out if I'm allowed back in the
 3    office.
 4         Mr. Tjong, we don't -- we offered Mr. Tjong for earlier
 5    this week.
 6              THE COURT:  Okay.
 7              MR. NEUKOM:  That didn't work.  To be fair, that
 8    was -- it was on a quick turnaround, although it was pretty
 9    quickly after we learned they wanted Mr. Tjong instead of
10    Mr. Bettadapur.  Our understanding is Mr. Tjong may be headed
11    to India for a multi-week stretch, so I'm -- I want to be
12    careful what I'm promising to the court.  I'm not sure that we
13    can put Mr. Tjong up in November.
14         What I would propose would be as follows:  We will produce
15    Mr. Tjong for a deposition on the first available date, and we
16    will -- shy of disrupting a trip to India, we will move
17    mountains to make sure that gets done.
18              THE COURT:  Here's all I need to do, and then I like
19    to put this back in your hands while you work out the
20    calendar.  If the final brief -- reply brief is filed no later
21    than January 8th, I will allow you to set the rest of the
22    briefing schedule that presumes that these two depositions
23    will take place in sufficient time for Arista to consider them
24    and utilize them if anything is productive.
25              MR. NEUKOM:  We'll do that, your Honor.
```

1      **THE COURT:**  All right.  Then that is fine.  I'm

2  not -- I'm not prepared to rule on your motion to stay based

3  on the IPR filing.  It's not -- I don't think anyone expected

4  that.

5      **MR. VAN NEST:**  That's right.

6      **THE COURT:**  And it is obviously more difficult in

7  advance of IPR being granted, although I have done that.  But

8  often, that's when those are the only issues in the case.  And

9  here, this is a -- obviously a hybrid with the copyright

10  claims being made.

11     That means, though, that -- I mean, this train is just

12  moving down the tracks, Mr. Van Nest.  I don't know that the

13  *Markman* gets taken off track based on your motion to stay.  I

14  just don't -- you'll -- you have to file that motion.  I think

15  it is appropriate for that to be submitted without argument.

16  There's not much more to say.  There are factors to consider.

17     **MR. VAN NEST:**  You'll have -- I mean, it's really in

18  your hands.  You know when the *Markman* is.

19     **THE COURT:**  Yeah.

20     **MR. VAN NEST:**  The brief has been filed.  We filed it

21  yesterday.

22     **THE COURT:**  Oh, all right.

23     **MR. VAN NEST:**  We've got it.  They'll respond under

24  the rules, and you'll have -- and we'll reply.

25     **THE COURT:**  Okay.

1    **MR. VAN NEST:**  And you'll have it -- by early

2    December, you'll have all the briefing.  If you find an open

3    date and want to hear from us, we're happy to come down.  If

4    you can decide it on the papers, decide it on the papers.

5    It's really a question of convenience and effort.

6        The -- That motion addresses both issues.  It addresses

7    the patent case and seeks a stay of the patent case --

8        **THE COURT:**  Okay.

9        **MR. VAN NEST:**  -- pending the IPR.  And it seeks a

10   short five-month delay of the copyright case for reasons I've

11   had outlined this morning.  They're all in that one motion.

12       So --

13       **THE COURT:**  Just -- while you're here -- and I'm -- I

14   think it's highly unlikely that a -- so five months would move

15   you in -- just after the first of the year.

16       **MR. VAN NEST:**  It would, right.  Although the date we

17   proposed for trial was in the middle of January.

18       **THE COURT:**  Well, they talk about the disappearing

19   jury trial.  I'm not seeing it.

20                        (Laughter.)

21       **MR. VAN NEST:**  Me neither, your Honor.

22       **THE COURT:**  We have four trials going on right now in

23   this courthouse.  If you count the number of judges, you get a

24   sense of how busy we are.

25       **MR. VAN NEST:**  We're all happy to see that, your

```
 1    Honor.
 2              THE COURT:  As I am as well.  I certainly agree.
 3        And that is -- Unfortunately, my calendar is most impacted
 4    in that time period.  And I would not even -- And you would
 5    never be the only case set for trial ever.  That just doesn't
 6    happen.
 7              MR. VAN NEST:  We're used to that.
 8              THE COURT:  Of course you are.  And I'm trying to
 9    keep it to two so that there's a higher chance that you'll get
10    out on the date you're set.  I actually realistically wouldn't
11    be able to set it until June of 2017, and if I were just --
12    and more comfortably in September when my -- or August -- I'd
13    delay it a year, so that's -- that is -- when you write --
14    when you provide the opposition and -- and the reply, I want
15    you to keep in mind my review of the calendar is it's not
16    really a five-month delay, so that's a -- that becomes a
17    problem.
18              MR. VAN NEST:  Are there windows earlier than that
19    that are open?
20              THE COURT:  I'm not seeing any windows earlier.  I
21    think June is a window, but September --
22              MR. VAN NEST:  June of 2017?
23              THE COURT:  Of '17.
24              MR. VAN NEST:  And then --
25              THE COURT:  And I mean, I didn't look later in '16
```

```
1    because --

2                    (Pause in the proceedings.)

3         THE COURT:  Well, I'm not -- I mean, I have only one

4    other case set on November 28.  How long a trial would this

5    be?

6         MR. VAN NEST:  I would say --

7         THE COURT:  I mean, I'll reduce --

8         MR. PAK:  Two-week trial, your honor.  That's what we

9    contemplate.

10        THE COURT:  Oh, two weeks.

11        MR. VAN NEST:  If it's everything.

12        THE COURT:  Everything.

13        MR. VAN NEST:  Two to three weeks.  Two weeks, three

14   weeks, somewhere in that.

15        THE COURT:  Well, I have a three-week trial set for

16   November 28, but it's the only one I have set then.  And it's

17   not -- I don't know which one would have priority.  That's not

18   something I can decide.  And I don't know if the other one

19   will still be pending.  And so that is a window that I could

20   consider.

21        MR. VAN NEST:  We'll -- We'd take that.  We'd take

22   that.

23        THE COURT:  And then -- remind me of it in your

24   briefs.  I won't --

25        MR. VAN NEST:  November 28th.
```

1          **THE COURT:**  November 28, I'll make a note of it.

2          **MR. VAN NEST:**  We will, your Honor.  And please hold

3   it.

4          **MR. NEUKOM:**  If I may, your Honor, from Cisco --

5          **THE COURT:**  Yeah.  Yeah, I'll make a notation.  But

6   I'm not -- right now, I haven't heard anything that would

7   cause me to grant that continuance, and I'm not ruling on it

8   now.  I just wanted you to have some dates in mind, because

9   especially for -- I think it's especially important for Cisco

10  in considering the factors of prejudice, it's one thing to

11  argue a five-month prejudice.  It's another to be arguing a

12  one year.  And if it's realistically a year, then -- then

13  that's a concern.

14      If it's -- I mean, if it's only three months because of

15  the November date and you've got to go back to your experts

16  and -- to see if they're even available, I think the motion is

17  best briefed if you have some dates.

18          **MR. VAN NEST:**  Well, we'll -- we'll keep that in mind

19  in the briefing, your Honor, and mention it again in the

20  reply.  But that date would work for us.

21          **MR. PAK:**  And -- And, your Honor, this is Sean Pak.

22      But, you know, again, we certainly appreciate your

23  calendar, your Honor.  And I think that -- you know, the big

24  concern would be setting anything that's contingent upon

25  another case settling.

```
1          THE COURT:  Well, you won't --

2          MR. PAK:  Somehow that other case --

3          THE COURT:  You know, Mr. Pak, whatever date you have

4    and your August date, I don't know whether they're -- let me

5    look at your August date and tell you what your competition is

6    then.  I mean, it's -- it's unfortunate --

7          MR. PAK:  It is.

8          THE COURT:  I have only -- Well, you overlap with two

9    different cases.  You overlap with one other patent case --

10   Well, that would be grim, to go from one to the next.  And

11   then -- And you only -- you're only in competition with a case

12   that's either currently being tried or the one set on your

13   first day, and so you would be competing in your August date

14   with another patent case, which is set to run through the week

15   of August 1st.

16      Oh, actually August 1st and August 8th, so it's a -- it's

17   an overlap with yours.  And I don't know what's going to

18   happen with theirs, so, you know, I -- if I set one case at a

19   time, you'd be looking at a seven- or eight-year trial

20   schedule, so, of course, we don't have --

21         MR. PAK:  Right.  No, we appreciate that, and --

22         THE COURT:  Yeah.

23         MR. PAK:  And, again, your Honor, you know,

24   everything I've heard today, we are -- we are committed on

25   Cisco's part to give the discovery that's necessary, but --
```

```
 1              THE COURT:  Good.

 2              MR. PAK:  Again, you know, this is -- the date is

 3     important to us.  We were here before your Honor talking about

 4     ways to try to bifurcate the claims to try to get resolution

 5     on the copyright claims.  They opposed that.  We ultimately

 6     decided on this date as a compromise to get us the best of

 7     both worlds, where we can get an early trial date, yet have

 8     the cases tried together in front of a jury.

 9              THE COURT:  Sure.

10              MR. PAK:  And we've worked really hard to make that

11     happen.  And I think that, you know, it's important for us to

12     have a date.  We will respond in kind to anything that

13     Mr. Van Nest proposes.

14              THE COURT:  Okay.

15              MR. PAK:  Again, you know, from Cisco's perspective,

16     it's very important to have a date.

17              MR. VAN NEST:  I would just say this, your Honor.  I

18     can't resist.

19         If that date were important, why in the world has taken me

20     six months to get this basic date information?  It took me six

21     months after we serve a rog in April.  And counsel for Cisco

22     know we fought them all summer long to get this information.

23     And only reluctantly, did we go to Judge Grewal who granted

24     the motion in its entirety and said this stuff should have

25     been provided months ago.
```

*RAYNEE H. MERCADO, CSR, RMR, CRR, FCRR (510) 451-7530*

1    **THE COURT:**  Well, and that's something that I need to

2 take into consideration as -- in looking, I will certainly

3 look back at the discovery orders.

4  Mr. Pak, that commitment needs to really be borne out so

5 that Arista gets the discovery it needs, because I mean, it

6 would really be a shame to then go through claims construction

7 only to have a continuance at that point.

8  This is where Arista's feeling had it could benefit from

9 additional time and to deprive them of it now only to

10 inevitably get to that continuance would not make much sense.

11    **MR. PAK:**  Absolutely, your Honor.  And, you know,

12 just so you understand, your Honor, on the -- on the patent

13 side of the case, both sides actually, even without your

14 Honor's intervention, have agreed to a narrowing of both

15 claims --

16    **THE COURT:**  Okay.

17    **MR. PAK:**  -- asserted claims, as well as prior art.

18  We just sent them a proposal or a agreement -- I think it

19 was just earlier this week where we dropped our claims down to

20 a much more reasonable number.  They have agreed to -- to

21 respond in kind --

22      (Simultaneous colloquy.)

23    **MR. PAK:**  -- number of prior art.

24  That's all under way.  We have no problems accommodating

25 them on the inventor depositions.

1    On this issue, you know, frankly, Mr. Van Nest has -- he

2   and I have tried cases together.  I know him very well.  He

3   hasn't been involved in these discovery issues.  I been

4   involved.  I've spoken with his colleagues.  We have told him

5   their -- their team from day one, the most important people

6   including Mr. Lougheed, whose deposition will be taken shortly

7   here -- his name was mentioned many, many months ago as the

8   principal person who knows the entire story with respect to

9   how the CLI development process began.  He was one of the

10  original architects of that.  He can describe in detail the

11  creative process, the way in which commands expressions are

12  authored and vetted within Cisco.

13      The bar for copyright-ability, as Mr. Neukom said, it's

14  very, very low and that it's federal circuit law that it is --

15  that Ninth Circuit law and that's something that we have to

16  keep in mind that just because you can take 200 depositions

17  doesn't mean that you need 200 depositions to try the case.

18          **THE COURT:**  All right.

19      Well, and I have one last request.  I believe that in

20  filing your joint claims construction statement, that you each

21  have filed your own separate chart for me.  And I'm going to

22  ask -- a document that's very helpful to me is a single

23  document on the terms that I'm going to construe, that states

24  the term and provides each of your proposed constructions on a

25  page in a chart form.

```
1        And I don't want the evidence recited.  I want the
2   citation to the evidence.  So if it's column and line number
3   or a or -- some people have misunderstood me and recited the
4   evidence.  I don't want that.  So this is -- it should be one
5   page per claim.  That is my index to working with it.
6        And I am -- Maybe it would never have occurred to you to
7   do it otherwise, but whatever order the claims are discussed
8   in the opening brief must remain the order.  And the numbering
9   must be consistent, so if it's A through G, you have had to
10  repeated A through G.  I don't want numbers and letters.
11            MR. VAN NEST:  No.
12            THE COURT:  Because it seems like a small thing, but
13  it makes a big difference when we're really trying to compare
14  your argument.  So if -- and I -- I just would like that --
15  that joint document -- I don't need it till January actually.
16  I'm not going to turn to this till then.  So lots of time, and
17  you may -- I mean, sometimes through the briefing process, the
18  proposed construction changes.  So it's really --
19            MR. PAK:  Right.
20            THE COURT:  -- nice for you to wait and even though
21  you -- I know it makes the other side crazy when that happens,
22  but I'd like -- well, it seems to happen in most cases.  I'd
23  like the proposed -- the final proposed construction that I'm
24  going to be dealing with -- and if you feel compelled to put
25  the disclosed construction and then the amended, I don't mind
```

1   that at all.  Just make it clear, but that document will help

2   me enormously so I do appreciate --

3         MR. VAN NEST:  We'll do it.

4               (Simultaneous colloquy.)

5         MR. KRISHNAN:  Your Honor, there is one last issue --

6         MR. PAK:  We'll make that happen, your Honor.

7         THE COURT:  Thank you.

8         MR. KRISHNAN:  -- about claim construction, which

9   is -- it was the third item mentioned in the CMC statement,

10  which is the declaration of Mr. Almeroth, the Cisco expert --

11        THE COURT:  Right.

12        MR. KRISHNAN:  -- which was submitted on Monday.

13  That was undisclosed opinion.  It also includes undisclosed

14  extrinsic evidence in there.  And we think the declaration

15  should be stricken.  It was simply in violation of the rules.

16  They didn't disclose it at the proper time.

17        THE COURT:  I think I'm going to have to have you

18  pose those objections in the context of the briefing.

19        MR. KRISHNAN:  Okay.

20        THE COURT:  I'm not prepared to review that at this

21  point.  And I think they'll take their chances on whether it's

22  in or out, just like with any other objection.

23        MR. VAN NEST:  Fair enough.

24        THE COURT:  Okay?

25        MR. VAN NEST:  Your Honor, we'll submit a discovery

1    plan within a week.

2            THE COURT:  Okay.

3            MR. VAN NEST:  And so by close of business next

4    Thursday, you'll have that plan.  And it will be a supplement

5    to our motion.  We'll just -- We'll file it as a pleading, but

6    it will be supplemental to the motion we file.

7            THE COURT:  I think -- Is that acceptable?

8            MR. NEUKOM:  That is.  Although that relates to one

9    bit of guidance I was going to ask the court for from both

10    sides.

11            THE COURT:  Okay.

12            MR. NEUKOM:  To say that Cisco is -- is insistent

13    upon the first available trial date, including in August,

14    would be an understatement.  And I think your Honor has heard

15    that from us.

16            THE COURT:  I have.

17            MR. NEUKOM:  While there is -- and we will file an

18    opposition to the motion to, in effect, ice the case for a

19    year or two in due course.

20        But what I'm hopeful of the guidance that the parties can

21    get from the court today is I want to make sure that while

22    that motion is pending, the parties are instructed to conduct

23    themselves as though the close of fact discovery is February

24    26th.  We are open for business.  There have been some

25    unfortunate or inadvertent representations about what Cisco

1   has or hasn't produced in this case.  We will correct those

2   misimpressions with our briefing.

3       In the meantime, we have Keker Van Nest and Quinn Emanuel

4   on either side to the caption and we have three months of fact

5   discovery remaining.  I am confident that if both sides want

6   to hit that fact discovery deadline, it can be done.

7           **THE COURT:**  I have no doubt.

8       You know, and -- I would consider it no other way.  I --

9   And, in fact, it's -- generally, I would be -- would look

10  negatively about granting a motion to stay.  I haven't read

11  the motion.  I haven't seen the -- the reasons for it.  I'm

12  not ruling on it now, but -- and if either side bets on the

13  outcome of the motion to stay and comes up short, it won't be

14  grounds for a continuance of the discovery deadlines, so -- I

15  think you all know that.

16      All right.

17          **MR. VAN NEST:**  Thank you, your Honor.

18          **THE COURT:**  And I know you have the resources to make

19  this happen.

20          **MR. VAN NEST:**  Thank you, your Honor.

21          **THE COURT:**  Thank you so much.

22          **MR. PAK:**  Thank you, your Honor.

23          **MR. KRISHNAN:**  Can I -- Can I interject one other

24  question about guidance?

25          **THE COURT:**  Sure.

1          **MR. KRISHNAN:**   The tutorial, can -- can your Honor

2     give us some guidance about how she would prefer the tutorial

3     in terms of experts on the record.

4          **THE COURT:**   You know, I'm getting to the point where

5     I actually don't want it on the record.   I actually don't want

6     either of you to be bringing a record back and -- and making

7     that part of it.   You're doing this for me.   And my experience

8     up till now, although it's far less than your experience, is

9     that the attorneys are able to make the science more

10    understandable to me than the experts.   And the experts come

11    in, teaching me a Ph.D. course in an hour, and they realize I

12    haven't studied this since high school.   So we had a little

13    bit of a gap.   And so if they dumb it down to college, I'm

14    still struggling.

15         I find as attorneys, I think you have a much better

16    understanding of what it's going to take to give me the

17    information I need.   And I don't need to be down in the weeds

18    on some of the science.   I need to be able to construe the

19    terms.

20         So I have had better luck with attorneys, but if you have

21    an expert who is really going to guide me through it, that

22    will be up to you to decide.   Thank you for asking that.

23         And I found that an hour per side is generally enough.

24    It's not a -- I don't have the clock running, but that's

25    typically been fine.   And I don't think -- it's just two

1    patents, isn't it?

2              **MR. VAN NEST:**  Yes.

3              **MR. PAK:**  That's right.

4              **THE COURT:**  We're not dealing with a broader array of

5    science than I get in some cases, so that can be your guide.

6    And if I'm in trial, I'll bump you to the afternoon, but that

7    would be the worse thing that would happen on that.

8              **MR. VAN NEST:**  Thank you, your Honor.

9              **THE COURT:**  Thank you so much.

10             **MR. PAK:**  Thank you.

11             (Proceedings were concluded at 2:45 P.M.)

12                             --o0o--

13

14                  **CERTIFICATE OF REPORTER**

15             I certify that the foregoing is a correct transcript

16    from the record of proceedings in the above-entitled matter.

17    I further certify that I am neither counsel for, related to,

18    nor employed by any of the parties to the action in which this

19    hearing was taken, and further that I am not financially nor

20    otherwise interested in the outcome of the action.

21

22    _____

23    Raynee H. Mercado, CSR, RMR, CRR, FCRR, CCRR

24             Monday, November 9, 2015

25