# EXHIBIT B

```
 1              IN THE UNITED STATES DISTRICT COURT

 2            FOR THE NORTHERN DISTRICT OF CALIFORNIA

 3                      SAN JOSE DIVISION

 4

 5

    CISCO SYSTEMS, INC.,              )  CV-14-5344-BLF
 6                                    )
                    PLAINTIFF,        )  SAN JOSE, CALIFORNIA
 7                                    )
              VS.                     )  SEPTEMBER 30, 2015
 8                                    )
    ARISTA NETWORKS, INC.,            )  PAGES 1-38
 9                                    )
                    DEFENDANT.        )
10                                    )

11

12              TRANSCRIPT OF PROCEEDINGS
          BEFORE THE HONORABLE PAUL S. GREWAL
13             UNITED STATES MAGISTRATE JUDGE

14

15      A P P E A R A N C E S:

16      FOR THE PLAINTIFF:  QUINN EMANUEL
                            BY:  JOHN NEUKOM
17                               MATTHEW CANNON
                            50 CALIFORNIA STREET, FLOOR 22
18                          SAN FRANCISCO, CA 94111

19      FOR THE DEFENDANT:  KEKER & VAN NEST, LLP
                            BY:  BRIAN FERRALL
20                               KATHERINE LLOYD-LOVETT
                            633 BATTERY STREET
21                          SAN FRANCISCO, CA 94111

22          APPEARANCES CONTINUED ON THE NEXT PAGE

23      OFFICIAL COURT REPORTER:  SUMMER FISHER, CSR, CRR
                                  CERTIFICATE NUMBER 13185
24

25        PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY
           TRANSCRIPT PRODUCED WITH COMPUTER
```

```
 1        SAN JOSE, CALIFORNIA                    SEPTEMBER 30, 2015

 2                    P R O C E E D I N G S

 3        (WHEREUPON, COURT CONVENED AND THE FOLLOWING PROCEEDINGS

 4   WERE HELD:)

 5             THE CLERK:  CALLING CISCO SYSTEMS, INC. VERSUS ARISTA

 6   NETWORKS, INC. CASE NUMBER CV-14-5344-BLF.

 7        MATTER ON FOR DEFENDANT'S MOTION TO COMPEL.  PLEASE STATE

 8   YOUR APPEARANCES.

 9             MR. NEUKOM:  GOOD AFTERNOON, YOUR HONOR.

10        JOHN NEUKOM FOR PLAINTIFF CISCO SYSTEMS.  AND IF I MAY,

11   WITH ME TODAY IS MY COLLEAGUE, MATTHEW CANNON.

12        ALSO WITH US TODAY ARE NEAL RUBIN, ERIC LAMISON AND LEAH

13   WATERLAND FROM CISCO.

14             THE COURT:  GOOD AFTERNOON TO EACH OF YOU.  WELCOME.

15   WELCOME BACK, AS THE CASE MAY BE.

16             MR. FERRALL:  GOOD AFTERNOON, YOUR HONOR.

17        BRIAN FERRALL OF KEKER & VAN NEST FOR DEFENDANT ARISTA

18   NETWORKS.  I HAVE MY COLLEAGUES DAVID SILBERT AND KATIE

19   LLOYD-LOVETT LOYAL WITH ME TODAY.

20             THE COURT:  WELCOME TO EACH OF YOU.

21        ALL RIGHT.  WELL, FROM A VERY CONCEPTUAL ISSUE REGARDING

22   SUBJECT MATTER JURISDICTION, QUI TAM ACTIONS, LET'S TURN TO

23   INTERROGATORY RESPONSES AND COMMAND LINE INTERFACES.

24        I HAVE IN FRONT OF ME THIS AFTERNOON A MOTION TO COMPEL.

25   AND AS I UNDERSTAND IT, IT IS A MOTION BROUGHT ON TWO
```

```
 1        INTERROGATORIES.  SO I WOULD LIKE TO EXPLORE EACH OF THOSE

 2    INTERROGATORIES IN SOME DETAIL.

 3        THIS IS ARISTA'S MOTION, SO I WILL BEGIN WITH YOU,

 4    MR. FERRALL, GO AHEAD.

 5            MR. FERRALL:  YES.  THANK YOU, YOUR HONOR.

 6        AND GIVEN THAT CISCO FILED THEIR OPPOSITION YESTERDAY AND

 7    WE HAVEN'T HAD A CHANCE TO RESPOND, THERE ARE SOME THINGS I

 8    WOULD LIKE TO RESPOND TO, IN THAT SENSE.

 9            THE COURT:  SURE.  GO AHEAD.

10            MR. FERRALL:  FIRST, SOME GENERAL COMMENTS.

11        THE MOTION IS BROUGHT ON HERE BECAUSE WE ARE NOW SIX MONTHS

12    INTO DISCOVERY AND CISCO HAS STILL NOT PROVIDED BASIC

13    INFORMATION ESSENTIAL TO ITS OWN ALLEGATIONS.  AND THAT'S A KEY

14    PART OF THIS MOTION.

15        WE ARE FOCUSED ON CISCO'S OWN ALLEGATIONS AND WHETHER THEY

16    HAVE PROVIDED THE SUBSTANTIATION FOR THOSE ALLEGATIONS.

17            THE COURT:  BEFORE YOU TURN TO THE MERITS OF YOUR

18    MOTION, I VERY MUCH APPRECIATE, AND OF COURSE I WILL INVITE ANY

19    CORRECTION FROM CISCO THAT IT BELIEVES IS APPROPRIATE, I WOULD

20    VERY MUCH APPRECIATE JUST AN OVERVIEW OF THE VARIOUS FRONTS IN

21    THIS FIGHT.  I THINK I HAVE IT IN MY HEAD, BUT I WOULD VERY

22    MUCH LIKE TO CONFIRM THAT I AM UNDERSTANDING THESE CORRECT.

23            MR. FERRALL:  WELL, THERE ARE MULTIPLE CASES GOING

24    ON.

25            THE COURT:  ONE ITC ACTION OR TWO?
```

1          MR. FERRALL:  THERE ARE TWO ITC ACTIONS.

2       CISCO BROUGHT THE COMPANY COMPLAINT FOR THOSE PATENTS IN

3    THIS COURT ASSERTING ALL 12 PATENTS IN THAT CASE, BUT THOSE 12

4    PATENTS WERE THEN SPLIT AMONG TWO ITC INVESTIGATIONS.

5          THE COURT:  AH, THAT'S THE PIECE I HAD MISSED.  OKAY.

6          MR. FERRALL:  SO EACH ITC INVESTIGATION HAD SIX

7    PATENTS IN THEM.

8       ONE OF THOSE WENT TO A HEARING THAT FINISHED UP A WEEK OR

9    TWO AGO.  THE OTHER ONE HAS ITS HEARING COMING UP IN NOVEMBER.

10          THE COURT:  OKAY.  AND THE 12 PATENTS THAT ARE AT

11    ISSUE BETWEEN THOSE TWO ITC ACTIONS, ARE ALL AT ISSUE HERE IN

12    THE NORTHERN DISTRICT IN EACH OF OUR TWO ACTIONS, CORRECT?

13          MR. FERRALL:  RIGHT, IN THE OTHER ACTION, NOT IN THIS

14    ACTION.

15          THE COURT:  SO THEY ARE ENTIRELY IN THE CASE BEFORE

16    JUDGE WHYTE.

17          MR. FERRALL:  CORRECT.

18          THE COURT:  OKAY.  AND I BELIEVE JUDGE WHYTE HAS

19    ISSUED THE ITC-RELATED STAY.

20          MR. FERRALL:  THAT'S THE MANDATORY STAY, RIGHT.

21          THE COURT:  OKAY.  SO THAT BRINGS US TO THE CASE YOU

22    ARE ACTUALLY HERE TO TALK ABOUT WHICH IS OUR CASE.

23       AND AGAIN, BEFORE WE TURN TO THE MERITS OF YOUR MOTION, IN

24    THIS ACTION ARE WE SIMPLY TALKING COPYRIGHT, OR ARE THERE ALSO

25    COPYRIGHT CLAIMS AS WELL?

1          MR. FERRALL:  THIS CASE I REFER TO AS THE CLI CASE

2     BECAUSE IT'S NOT JUST COPYRIGHT, THERE ARE PATENTS ALSO.

3          THE COURT:  TWO OF THEM, RIGHT?

4          MR. FERRALL:  THERE ARE TWO PATENTS, AND THEY ARE

5     ASSERTED AGAINST ASPECTS OF THE COMMAND LINE INTERFACES.

6          THE COURT:  I SEE.  AGAIN, THIS MAY NOT ULTIMATELY

7     RELATE TO MUCH AT ISSUE TODAY, BUT IT'S HELPFUL TO ME.  THE

8     PATENTS' COPYRIGHTS, THEY FOCUS ON VARIOUS EXPRESSION AND/OR

9     FUNCTIONALITY ALLEGEDLY IN THE COMMAND LINE INTERFACE.

10          MR. FERRALL:  I THINK THAT'S FAIR.

11          THE COURT:  OKAY.  NOW LET'S TALK ABOUT WHAT YOU CAME

12     HERE TO TALK ABOUT.

13          MR. FERRALL:  OKAY.  SO THIS MOTION, THOUGH, IS

14     REALLY JUST FOCUSED ON THE COPYRIGHT ASSERTIONS.  AND THOSE

15     ASSERTIONS CONSIST PRIMARILY IN TERMS OF OCCUPYING THE MAJORITY

16     OF THE COMPLAINT OF THIS ALLEGATION THAT ARISTA HAS COPIED,

17     COMMANDS.

18        THOSE COMMANDS ARE ATTACHED AS EXHIBIT 1 TO THE COMPLAINT

19     OR ALTERNATIVELY EXHIBIT B TO THE LLOYD-LOVETT DECLARATION

20     WHICH WE SUBMITTED IN SUPPORT OF THIS MOTION.

21        THAT DOCUMENT IS WORTH CONSIDERING, ACTUALLY, AS WE TRY TO

22     UNDERSTAND THE PARAMETERS OF THIS CASE.

23        EXHIBIT 1 TO THE COMPLAINT IS A LIST OF COMMANDS.  THAT'S

24     NOT A LIST THAT IS A COPYRIGHTED WORK, LET'S BE CLEAR, THAT'S A

25     LIST CREATED BY THE LAWYERS FOR THIS CASE.

1       THOSE COMMANDS -- THAT LIST DOES NOT APPEAR, TO MY

2   KNOWLEDGE, IN ANY COPYRIGHTED WORK THAT THEY HAVE ASSERTED.

3   THE COPYRIGHTED WORKS THAT THEY HAVE ASSERTED, WHICH OF COURSE

4   HAS TO FORM THE BASIS FOR A COPYRIGHT CLAIM, ARE 20-SOME

5   COMPILATIONS OF SOURCE CODE AND DOCUMENTATION FOR A SET OF OR A

6   COLLECTION OF OPERATING SYSTEM RELEASES BY CISCO

7           THE COURT:  OKAY.  AND AM I RIGHT IN UNDERSTANDING

8   THAT THERE IS A REGISTRATION FOR EACH OF THOSE 20 COMPILATIONS?

9           MR. FERRALL:  THERE IS A REGISTRATION FOR EACH OF THE

10  ONES THAT THEY ARE ASSERTING.  I ACTUALLY THINK IT'S 26

11  REGISTRATIONS THEY HAVE ATTACHED TO THE COMPLAINT.

12          THE COURT:  ALL RIGHT.  SO NO UNREGISTERED WORKS

13  HERE, AT LEAST FOR NOW.

14          MR. FERRALL:  TO OUR KNOWLEDGE, RIGHT.

15      EACH ONE OF THOSE REGISTRATIONS, I THINK IT'S UNDISPUTED,

16  IN FACT I THINK CISCO SAID IT AGAIN IN ITS PAPERS, ENCOMPASSES

17  MILLIONS OF LINES OF SOURCE CODE, RIGHT.  1 MILLION, 2 MILLION,

18  5 MILLION, 10 MILLION, I DO NOT KNOW.

19          THE COURT:  IT'S A LOT.

20          MR. FERRALL:  BUT MILLIONS OF LINES OF SOURCE CODE.

21  AND PROBABLY HUNDREDS OR THOUSANDS OF PAGES OF DOCUMENTATION

22  THAT GO WITH THAT RELEASE.

23      AND WHAT IS ASSERTED AS COPIED IS SOME DOCUMENTATION,

24  THAT'S NOT THE SUBJECT OF THIS MOTION, THERE'S ASSERTIONS ABOUT

25  COPYING DOCUMENTATION.  AND FRANKLY, ARISTA HAS REMEDIED THAT

1    ALREADY.  BUT IN ANY EVENT, THAT'S NOT THE SUBJECT OF THIS

2    MOTION.

3        THEN THIS LIST OF COMMANDS WHICH IS A FRACTION OF ALL OF

4    THE COMMANDS THAT ARE USED BY EITHER COMPANY, AND A FRACTION

5    THAT IS SELECTED BY CISCO'S LAWYERS AND ASSERTED IN THIS CASE.

6    AND THAT'S FINE, THEY CAN MAKE THEIR CASE AS THEY SEE FIT.

7        BUT IT'S IMPORTANT TO KNOW THAT THE REGISTERED WORK TO

8    WHICH, BY THE WAY, CISCO SAYS ATTACHES A PRESUMPTION OF

9    VALIDITY, IS NOT THE LIST OF THESE COMMANDS.  THOSE ARE TWO

10   DIFFERENT THINGS.

11       SO THE FOCUS IN THIS CASE OR AT LEAST A FOCUS IN THIS CASE,

12   SURELY WILL BE IS IT THE CASE, AS CISCO SAYS, THAT THESE TWO,

13   THREE, FOUR-WORD COMMANDS THAT THEY'VE PULLED OUT OF THE

14   COPYRIGHTED WORK --

15           THE COURT:  CLOCK, SET, TIF, ADDRESS, THINGS LIKE

16   THAT.

17           MR. FERRALL:  RIGHT.  ARE THOSE PROTECTABLE

18   EXPRESSION.

19       NO ONE IS CHALLENGING IN THIS CASE WHETHER THE MILLION

20   LINES OF SOURCE CODE IS PROTECTABLE EXPRESSION, CISCO CAN CLAIM

21   THAT, THAT'S FINE, THAT'S NOT IN DISPUTE.  WE ARE NOT ALLEGED

22   TO HAVE COPIED MILLIONS OF LINES OF SOURCE CODE.

23       THE QUESTION IS WHETHER A FOUR-WORD COMMAND OR A DOZEN OR

24   100 OR 500 OF THEM ARE PROTECTABLE EXPRESSIONS.

25           THE COURT:  WELL, JUST TO BE FAIR, AND PERHAPS MORE

1    PRECISE, THE COMMANDS, WHETHER THEY ARE TWO, THREE, FOUR WORDS

2    OR MORE ARE PART OF THE SOURCE CODE, RIGHT?

3            MR. FERRALL:  WELL, I ACTUALLY DON'T KNOW THAT TO BE

4    THE CASE, FRANKLY.  THEY MAY.  MY UNDERSTANDING IS THEY APPEAR

5    IN DOCUMENTATION, WHETHER THEY ACTUALLY APPEAR IN THE SOURCE

6    CODE IS, MAYBE CISCO CAN ANSWER THAT.  I'M NOT SURE THEY APPEAR

7    IN THE SOURCE CODE.

8            THE COURT:  I CERTAINLY DON'T HOLD MYSELF OUT AS AN

9    EXPERT.

10       IT'S DIFFICULT FOR ME TO IMAGINE HOW THESE CLI COMMANDS CAN

11   EVEN BE OF ANY VALUE IF THEY WEREN'T INCLUDED OR PART OF THE

12   SOURCE CODE FOR THE UNDERLYING INTERFACE, BUT WHAT DO I KNOW.

13           MR. FERRALL:  THE QUESTION IS HOW THEY'RE EXPRESSED

14   IN THE CODE.

15       I DON'T THINK THERE'S DISPUTE, AT LEAST AT THIS STAGE OF

16   THE INVESTIGATION, THAT CISCO'S CODE RUNNING ON A SWITCH

17   RESPONDS TO THESE COMMANDS.

18           THE COURT:  YOUR POINT IS IT'S -- FOR EXAMPLE, CLOCK

19   SET, THE EXPRESSION THAT'S AMONG THOSE TERMS THAT ARE AT ISSUE

20   HERE.

21           MR. FERRALL:  RIGHT, RIGHT.

22           THE COURT:  I TAKE IT.  OKAY.

23           MR. FERRALL:  SO I THINK THAT BACKGROUND IS IMPORTANT

24   TO UNDERSTAND SOME OF THE ARGUMENTS THAT CISCO MADE ABOUT

25   PRESUMPTIONS OF VALIDITY AND SO FORTH.

1    BACK TO THEIR ALLEGATIONS THOUGH, WHICH IS REALLY WHAT

2    DRIVES THIS MOTION.  AS I SAID, THERE ARE ALLEGATIONS ABOUT

3    THESE COMMANDS, AND THEIR ALLEGATIONS ARE, VERY EXPLICITLY,

4    THAT THESE COMMANDS WERE PART OF A CREATIVE PROCESS BY CISCO

5    ENGINEERS OVER THE COURSE OF TWO-PLUS DECADES.

6    THEY CREATE A PROCESS, THOSE ARE CISCO'S WORDS FROM THE

7    COMPLAINT.  I QUOTED PARAGRAPH 27 AND 28 OF THE COMPLAINT, BUT

8    IF YOU LOOK AT CISCO'S OPPOSITION THAT THEY FILED YESTERDAY,

9    THIS SAME POINT IS REPEATED.

10   IN FACT, IF YOU LOOK AT PAGE 2 OF THEIR OPPOSITION, YOU SEE

11   THE FACTUAL BACKGROUND, THE CISCO HISTORY OF DEVELOPMENT OF ITS

12   COPYRIGHTED WORKS, RIGHT.  AND THIS IS TO BE EXPECTED, IT'S A

13   LITTLE BACKGROUND OF THE CASE AND THAT'S GREAT.  IT IS

14   ESSENTIALLY A LITTLE PREVIEW OF THEIR OPENING STATEMENT AT

15   TRIAL.  YOU CAN SEE IT, RIGHT.

16   "CISCO'S ENGINEERS," I'M QUOTING FROM LINE 16.

17   "CISCO'S ENGINEERS CREATED AN ELABORATE ARRANGEMENT OF

18   ORIGINAL COMMAND EXPRESSIONS, INCLUDING THE MULTIWORD COMMAND

19   EXPRESSIONS AT ISSUE HERE THAT COULD BE ENTERED INTO THE CLI."

20   DOWN TO LINE 25, "CISCO'S ENGINEERS MADE CREATIVE CHOICES

21   ABOUT HOW COMMAND EXPRESSIONS WOULD BE ARRANGED AND THE SYNTAX

22   THOSE COMMAND EXPRESSIONS WOULD EMPLOY."

23   THAT'S GOING TO BE ITS OPENING STATEMENT.  SURELY, SURELY

24   WE ARE ENTITLED TO UNDERSTAND WHAT THOSE CREATIVE CHOICES WERE.

25   AND THAT'S ALL THIS MOTION IS ABOUT.  IF CISCO KNOWS THAT

```
1    THESE COMMANDS ARE THE RESULT OF CREATIVE CHOICES BY CISCO

2    ENGINEERS, TELL US WHO THE ENGINEERS ARE.

3              THE COURT:  YOU WANT TO KNOW THE WHO, WHAT, WHEN,

4    WHERE, AND WHY.

5              MR. FERRALL:  TELL US WHAT THE CREATIVE CHOICES WERE

6    AND WHEN THEY HAPPENED AND WHAT DOCUMENTS THEY ARE IN SO WE CAN

7    DETERMINE WHETHER THOSE ALLEGATIONS ARE CORRECT OR NOT.

8         AND THAT JUST SEEMS FUNDAMENTAL.  THAT'S WHY WE BROUGHT THE

9    MOTION.

10        NOW CISCO SERVED AN AMENDED RESPONSE YESTERDAY TO ONE OF

11   THE TWO INTERROGATORIES.  THAT AMENDED RESPONSE HAS SOME OF THE

12   INFORMATION WE'VE SOUGHT, BUT NOT EVERYTHING.  AND HERE'S WHAT

13   IT'S MISSING.

14             THE COURT:  AND MAY I ASK, IS IT A RESPONSE TO

15   INTERROGATORY 5 OR 16?

16             MR. FERRALL:  16.

17             THE COURT:  OKAY.

18             MR. FERRALL:  SO THE AMENDED RESPONSE STILL PROVIDES

19   NO INFORMATION ABOUT WHO CREATED SOME 470 OR -80 OF THE 500

20   PLUS COMMANDS.

21        THEY IDENTIFY ONE PERSON, KIRK LOUGHEED, AS KNOWLEDGEABLE

22   ABOUT 31 COMMANDS.  THE REMAINDER, THEY HAVE NOT PROVIDED ANY

23   INFORMATION ABOUT.

24        AGAIN, IF CISCO IS GOING TO COMPLAIN AND ALLEGE THAT THESE

25   COMMANDS ARE AUTHORED BY CISCO ENGINEERS IN A CREATIVE PROCESS
```

1    AND SO FORTH, WE NEED TO KNOW WHO THAT WAS.

2        TWO, AS TO INTERROGATORY NUMBER 5, CISCO HAS ANSWERED THAT

3    INTERROGATORY THREE TIMES NOW.  THEY HAVE NOT EVER PROVIDED A

4    COMMAND-BY-COMMAND RESPONSE TO THAT INTERROGATORY OR EVEN

5    GROUPED THEM TOGETHER.

6        I UNDERSTAND THESE THINGS WERE PROBABLY GENERATED IN GROUPS

7    AT DIFFERENT TIMES, THAT'S FINE.  BUT THERE'S NO SPECIFIC

8    EXPLANATION FOR THE DERIVATION OF THESE COMMANDS.

9        NOW WE PLAYED A LITTLE WORD GAME ABOUT WHAT DERIVATION

10   MEANS.  AND THEIR FIRST ANSWER WAS WELL, WE DIDN'T USE ANYTHING

11   TO CREATE THESE DEMANDS OR THESE COMMANDS.

12          THE COURT:  IT IS A TERM OF ART IN THE COPYRIGHT ACT,

13   RIGHT?

14          MR. FERRALL:  WELL, DERIVATIVE WORK, SURE.  BUT ANY

15   WAY, WE CLARIFY.

16       REGARDLESS, I COULD GIVE YOU A DEFINITION OF DERIVATION IF

17   YOU WANT, BUT WE CLARIFIED IN THE FIRST MEET AND CONFER THAT

18   DERIVATION JUST MEANS ANY ORIGIN, AND THAT'S A COMMON MEANING

19   FOR THAT TERM.  AND THEY ACCEPTED THAT.

20       AND WE GOT TWO MORE RESPONSES AND WE STILL NEVER GOT AN

21   EXPLANATION ABOUT THE PROCESS OF CREATING THESE COMMANDS.

22   THAT'S THE SECOND PROBLEM.

23       THIRD PROBLEM WITH THE RESPONSE IS THAT WHAT WE GOT

24   YESTERDAY, IT STILL DOES NOT PROVIDE DATES OF CREATION OF THE

25   COMMANDS OR DOCUMENTS IDENTIFYING THE DATES OF CREATION.

 1          WHAT IT PROVIDES INSTEAD IS SOMETHING THAT WE ASK FOR AND

 2    IT'S HELPFUL; THAT IS, DATES IN WHICH THE COMMANDS WERE FIRST

 3    RELEASED TO THE PUBLIC IN THE FORM OF THE RELEASE OF SOFTWARE

 4    DOCUMENTATION.

 5          THE COURT:  I'M GOING TO GUESS YOUR POSITION IS LOGIC

 6    WOULD ONLY DICTATE THAT THE ORIGINATION DATE PRECEDES THAT

 7    RELEASE DATE BY AT LEAST ONE, UNLESS THEY ARE REALLY GOOD

 8    ENGINEERS.

 9          MR. FERRALL:  PROBABLY BY AT LEAST ONE.

10          AND YOU KNOW, AGAIN, THEY PRESUMABLY HAVE SOME KNOWLEDGE

11    ABOUT THE CREATION.  THEY HAVE TAKEN IT UPON THEMSELVES TO TELL

12    THIS STORY.  THEY NEED TO DO THE INVESTIGATION.

13          IF AT THE END OF THE DAY FOLLOWING A GOOD FAITH

14    INVESTIGATION THEY SAY, WE CAN'T TELL WHEN THIS THING WAS

15    CREATED, WE CAN'T TELL, OKAY, THAT'S FINE.  WE CAN LIVE WITH

16    THAT.  WHAT WE DON'T WANT, OBVIOUSLY, AND YOU KNOW THE

17    PARALLELS TO PATENT CASE, RIGHT?

18          THE COURT:  YOU DON'T WANT THE WITNESS SUDDENLY

19    BRINGING ON A LOT OF DETAILS THAT YOU HAVEN'T HEARD BEFORE.

20          MR. FERRALL:  OR ON THE EVE OF CLOSE OF DISCOVERY,

21    SUDDENLY CISCO FINDS THAT ACTUALLY IS CREATED TWO YEARS

22    EARLIER, AND YOU KNOW, ALL OF THIS OTHER INVESTIGATION THAT

23    WE'VE DONE IS NOW IRRELEVANT.

24          SO THAT'S WHY I SAY WITH RESPECT TO THE DATES AND WITH

25    RESPECT TO THE AUTHORS FOR THAT MATTER, THEY'VE GOT TO DO THE

1    INVESTIGATION.

2        I KNOW THEY CAN COME UP WITH MORE THAN ONE AUTHOR FOR THESE

3    COMMANDS.  I KNOW THEY COULD COME UP WITH MORE THAN ONE DATE.

4        DO THE GOOD FAITH INVESTIGATION, COME UP WITH A

5    COMPREHENSIVE ANSWER TO THESE TO SUPPORT YOUR ALLEGATIONS, THEN

6    WE WILL SEE WHERE WE ARE.

7        AND IF WE BELIEVE IT, YOU CAN BE SURE THAT IF WE THINK THEY

8    CAN'T SUBSTANTIATE THE CREATIVE PROCESS FOR SOME OF THESE

9    COMMANDS, THEN WE ARE GOING TO SEEK TO HAVE THEM TOSSED OUT OF

10   THIS CASE.

11       OR THEY CAN PUT FORTH WHATEVER THEIR EVIDENCE IS, BUT WE

12   ARE ENTITLED TO LEARN THAT NOW BECAUSE THIS IS JUST THE

13   BEGINNING OF FOLLOW-UP DISCOVERY ABOUT HOW THIS CREATIVE

14   PROCESS WORKS.

15       AND THAT'S WHY WE'RE RATHER URGENT, AND I APPRECIATE THE

16   COURT HEARING US ON SHORTENED TIME, BUT IT IS A MATTER OF

17   URGENCY BECAUSE WE'VE GOT AN ACCELERATED SCHEDULE IN THIS CASE,

18   AT CISCO'S REQUEST, AND WE'VE GOT, AFTER WE GET THE FULL

19   RESPONSE THAT WE WANT, YOU KNOW, A SUBSTANTIAL AMOUNT OF

20   DISCOVERY TO FOLLOW.

21       SO THAT'S THE OVERVIEW, YOUR HONOR.

22       I THINK A COUPLE OF SPECIFICS ABOUT RELEVANCE THAT I WANT

23   TO RESPOND TO CONCERNING THE CASE LAW HERE.

24       WE'VE EXPLAINED IN OUR OPENING BRIEF THAT THESE, THIS

25   INFORMATION IS RELEVANT TO PRIMARILY FOUR DEFENSES.  BUT I WILL

1     JUST FOCUS ON ORIGINALITY, MERGER AND SCENES A FAIRE.

2         ORIGINALITY IS OBVIOUS.  IF THE CREATOR OF THIS WORK IN

3     FACT WAS INSPIRED OR COPIED SOMETHING ELSE, THEN THAT'S NOT

4     ORIGINAL AND WE ARE ENTITLED TO LEARN THAT.

5         IN ADDITION, WHAT'S IMPORTANT ABOUT MERGER AND SCENES A

6     FAIRE, THOSE TWO ALSO FOCUS ON THE PERSPECTIVE OF THE AUTHOR AT

7     THE TIME OF CREATION.

8         THE COURT:  OKAY.  I WANTED TO ASK YOU ABOUT SCENES A

9     FAIRE IN PARTICULAR.

10     SO IT'S REALLY THE PERSPECTIVE OF THE CREATOR OR PUTATIVE

11     CREATOR THAT TRIGGERS THE NEED TO UNDERSTAND WHO CAME UP WITH

12     WHAT COMMAND AND TO BE ABLE TO ASK QUESTIONS ABOUT THAT DURING

13     DEPOSITION OR SOMETHING LIKE THAT.

14         MR. FERRALL:  CORRECT.

15     AND I WILL JUST, I CAN REFER YOU TO SOME QUOTES IN THE

16     FAMOUS ORACLE V. GOOGLE CASE, WHICH I KNOW CISCO IS FOND OF.

17     BUT THERE, FOR EXAMPLE, THE FEDERAL CIRCUIT EXPLAINED FOR

18     THE MERGER, AND I'M QUOTING HERE FROM ORACLE V. GOOGLE, 750

19     F.3D 1339 AT 1361.

20     IT READS, "FOR THE MERGER DOCTRINE, THE COURT MUST FOCUS

21     ITS ANALYSIS ON THE OPTIONS AVAILABLE TO THE ORIGINAL AUTHOR."

22     AGAIN, FOR SCENES A FAIRE --

23         THE COURT:  TO STOP YOU THERE, BECAUSE I HAVE LESS

24     EXPERIENCE WITH THIS DOCUMENTS THAN THE PATENT DOCUMENTS YOU

25     REFERRED TO.  IS THAT PERSPECTIVE AN OBJECTIVE OR SUBJECTIVE

1    PERSPECTIVE?

2         IN OTHER WORDS, CONSIDERING OPTIONS, DOES ONE LOOK AT WHAT

3    ONE OF ORDINARY SKILL IN THIS FIELD WOULD HAVE HAD AVAILABLE TO

4    HER OR DO YOU LOOK AT THIS PARTICULAR AUTHOR AND ASK WHAT ELSE

5    WAS AVAILABLE?

6         MR. FERRALL:  SO THAT'S A GOOD QUESTION.  FROM MY

7    UNDERSTANDING --

8         THE COURT:  WHAT'S A GOOD ANSWER.

9         MR. FERRALL:  FOR ORIGINALITY, IT'S CERTAINLY THE

10   SUBJECTIVE PERSPECTIVE IS RELEVANT.

11        FOR MERGER AND SCENES A FAIRE, I THINK IT MAY BE SOME OF

12   BOTH.  I THINK THE OBJECTIVE PERSPECTIVE COULD BE SUFFICIENT

13   THE SUBJECTIVE PERSPECTIVE COULD BE SUFFICIENT.

14        THE COURT:  EVEN IF WE WERE TALKING ABOUT A PURELY

15   OBJECTIVE PERSPECTIVE, THOUGH, I TAKE IT FOR DISCOVERY PURPOSES

16   WHAT THIS PARTICULAR AUTHOR THOUGHT AND KNEW WOULD BE RELEVANT.

17        MR. FERRALL:  RIGHT.  WHAT HE OR SHE WAS MOTIVATED

18   BY.

19        WE GAVE AN EXAMPLE IN THE BRIEF OF JUST ONE FEATURE, THIS

20   VRRP FEATURE.  OKAY.  WHICH IS AN IETF STANDARD THAT'S BEEN

21   IMPLEMENTED, ADOPTED ACROSS THE BOARD.  AND THEY HAVE A SERIES,

22   I FORGET HOW MANY, MAYBE TEN OR SO COMMANDS, THAT ARE THE SO

23   CALLED VRRP FAMILY.

24        NOW, THEY'RE CLAIMING THAT THAT FAMILY GROUPING COMMANDS

25   TOGETHER UNDER THIS VRRP FIRST WORD IS A PROTECTED EXPRESSION.

1    SURELY WE'RE ENTITLED TO ASK THAT WHOEVER AUTHORED THOSE, WHAT

2    HE OR SHE KNEW ABOUT THE STANDARD, PRESUMABLY THEY KNEW THE

3    STANDARD, WHAT WAS HIS INSPIRATION.  I THINK ALL OF THAT IS

4    RELEVANT BOTH AS YOU SAY BY BOTH A SUBJECTIVE AND OBJECTIVE

5    ANALYSIS OF THESE DOCTRINES.

6        ANY WAY, SENDS AT FAIR, ALSO FROM THE GOOGLE CASE SAYS "AS

7    FOR SCENES A FAIRE, LIKE MERGER THE FOCUS OF THE SCENES A FAIRE

8    DOCTRINE IS ON THE CIRCUMSTANCES PRESENTED TO THE CREATOR, NOT

9    THE COPIER."  THAT'S AT 1364.

10       AND AN IMPORTANT -- ANOTHER IMPORTANT LEGAL POINT TO

11   RESPOND TO SOME OF THEIR ARGUMENTS IS THAT THE PRESUMPTION OF

12   VALIDITY THAT ATTACHES TO A REGISTRATION THAT'S BEEN IN

13   EXISTENCE FOR SOME PERIOD OF TIME, FIRST OF ALL, DOESN'T APPLY

14   TO MERGER OR SCENES A FAIRE AT ALL.  THAT'S THE SMITH V.

15   JACKSON CASE, 84 F.3D 1213, 1219.

16       AND SECONDLY, AS I EXPLAINED IN THE BEGINNING, THE

17   PRESUMPTION OF VALIDITY OF A REGISTRATION OF MILLIONS OF LINES

18   OF CODE AND SEVERAL HUNDREDS OF THOUSAND PAGES OF

19   DOCUMENTATION, DOES NOT, I SUBMIT, TURN INTO A PRESUMPTION THAT

20   FOUR WORDS TAKEN FROM THAT ARE PROTECTABLE EXPRESSION.  THAT'S

21   NOT WHAT THE PRESUMPTION OF VALIDITY IS ABOUT.

22           THE COURT:  IF ANYTHING, THAT'S AN ISSUE FOR ANOTHER

23   DAY.

24           MR. FERRALL:  THAT'S AN ISSUE DOWN THE ROAD, RIGHT.

25       SO YOUR HONOR, I THINK I COVERED MY MAIN POINTS HERE.

1    AGAIN, THE MOTION AND THE SCOPE -- I HAVEN'T TOUCHED UPON

2    BURDEN, SO LET ME CLOSE WITH THAT.

3        THE MOTION, AGAIN DRIVEN BY CISCO'S ALLEGATIONS, THE BURDEN

4    SHOULD BE ANALYZED IN VIEW OF THOSE ALLEGATIONS.  FRANKLY, FROM

5    THE DESCRIPTION THAT WE GOT FROM THE DECLARANT, MR. REMAKER,

6    IT'S NOT CLEAR WHAT THE BURDEN TRULY IS.

7        HE DESCRIBES HAVING TRACKED DOWN A FEW WITH RESPECT TO A

8    FEW COMMANDS HAVING TRACKED DOWN PERSONS THAT SEEM TO BE

9    ASSOCIATED WITH THOSE COMMANDS.  HE DOESN'T TELL US WHO THEY

10   ARE.  BUT SURELY THAT PROCESS COULD BE PURSUED VIA OTHER

11   COMMANDS, I DO NOT KNOW HOW LONG IT WOULD TAKE.

12       BUT MORE PLAINLY, MR. LOUGHEED CLAIMS TO HAVE A MORE

13   COMPREHENSIVE KNOWLEDGE OF THE PROCESS, EVEN THOUGH HE DOESN'T

14   KNOW ABOUT SPECIFIC COMMANDS.

15       AND IF HE KNOWS ABOUT THE PROCESS GENERALLY AND PRESUMABLY

16   IS GOING TO BE ONE OF THEIR TRIAL WITNESSES TO TALK ABOUT THIS

17   CREATIVE PROCESS, SURELY HE CAN IDENTIFY SOME PEOPLE WHO WERE

18   INVOLVED AND YOU START INTERVIEWING THEM AND YOU GO DOWN THE

19   ROAD AND YOU GO TALK TO ONE PERSON AND FIND OUT WHO THEY CAN

20   DIRECT YOU TO.

21       I JUST DON'T THINK THAT PROCESS HAS HAPPENED.  AND THAT

22   BURDEN IS ONE OF CISCO'S OWN MAKING BY THE NATURE OF ITS

23   ALLEGATIONS.  AND FRANKLY, DOESN'T SEEM THAT HARD, GIVEN WHAT

24   THEY ARE ALLEGING IN THIS CASE.  THIS CASE IS CISCO FRANKLY

25   WANTS TO PREVENT US FROM DISTRIBUTING OUR OPERATING SYSTEM,

1    FULL STOP.

2          NOW, FOR THEM TO SAY THAT IT'S TOO BURDENSOME TO

3    INVESTIGATE THEIR OWN ALLEGATIONS WHEN THEY MEANT TO TRY TO

4    STOP ARISTA FROM DISTRIBUTING ITS OPERATING SYSTEM, THAT

5    DOESN'T SEEM EXACTLY THE RIGHT BALANCE.

6          THE COURT:  CAN I ASK, I ASSUME 26(A) DISCLOSURES

7    HAVE BEEN EXCHANGED AT THIS POINT.

8          MR. FERRALL:  THEY HAVE, YES.

9          THE COURT:  IN CISCO'S 26(A) DISCLOSURE, DID THAT

10   IDENTIFY ONE OR MORE WITNESSES TO TALK ABOUT SOME OF THESE

11   OTHERS ORIGINATION, FOR EXAMPLE?

12         MR. FERRALL:  MR. LOUGHEED WAS, I BELIEVE, ON THEIR

13   26(A) DISCLOSURE.  AND I DON'T KNOW IF -- THERE WEREN'T THAT

14   MANY OTHERS.  IF THERE WERE OTHERS, IT WAS ONE OR TWO OTHERS.

15         THE COURT:  OKAY.  ONE LAST ISSUE BEFORE I GIVE

16   MR. NEUKOM A CHANCE.

17         IN THE PAPERS THERE WAS AN A POINT MADE ABOUT THE LACK OF

18   MEET AND CONFER.  DO YOU WANT TO RESPOND TO THOSE CHARGES?

19         MR. FERRALL:  SURE.  I THINK WE MADE THE RECORD IN

20   OUR OPENING PAPERS, BUT LET ME RESPOND TO A COUPLE OF THINGS I

21   THINK WERE INCORRECT IN THE OPPOSITION.

22         ONE, IN THE LAST MEET AND CONFER WHICH OCCURRED TWO WEEKS

23   AGO TODAY, I THINK IT WAS, WE MADE IT VERY CLEAR THAT WE WERE

24   OPEN TO A PROPOSAL.

25         IN FACT, WHAT WE HAD SAID DAYS BEFORE THAT MEET AND CONFER

1    WAS WE HAVE NOW GOTTEN FOUR RESPONSES OVER THE COURSE OF MONTHS

2    TO THESE INTERROGATORIES, AND NONE OF THEM ARE SUFFICIENT.  WE

3    WANT YOUR FINAL POSITION ON WHAT YOU'RE GOING TO DO FOR US

4    HERE.  BRING THAT TO, OR BE AVAILABLE TO TALK ABOUT THAT ON THE

5    LAST MEET AND CONFER.

6        WE GOT ON THAT CALL.  COUNSEL SAID, WE'RE GOING TO

7    SUPPLEMENT.  I SAID, WHAT ARE YOU GOING TO SUPPLEMENT?  WELL,

8    WE CAN'T TELL YOU EXACTLY WHAT THAT IS.

9        AND YEAH, DID I TELL THEM I WAS GOING TO FILE A MOTION?

10   ABSOLUTELY.  BUT I ALSO SAID IF YOU CAN GIVE ME A DEFINITIVE

11   PROPOSAL ABOUT WHAT YOU'RE GOING TO DO, OBVIOUSLY WE WILL

12   EVALUATE IT.  IF YOU'RE WILLING TO PROVIDE WHAT WE WANT THEN WE

13   AREN'T GOING TO BRING A MOTION.  BUT AT LEAST GIVE ME A

14   DEFINITIVE PROPOSAL.

15       THEY COULDN'T PROVIDE A DEFINITIVE PROPOSAL THEN.  AND I

16   SAID VERY CLEARLY ON THAT CALL, WE ARE GOING TO FILE ON

17   THURSDAY NIGHT OR FRIDAY IF WE CAN'T GET THIS RESOLVED.  BUT

18   GIVE ME A DEFINITIVE PROPOSAL.

19       THEY NEVER SENT ME ANYTHING.  IN FACT, WE DIDN'T GET

20   ANYTHING UNTIL THE FOLLOWING MONDAY AFTER WE FILED THE MOTION,

21   AND OF COURSE THE RESPONSE THAT THEY ARE OFFERING AND THAT THEY

22   PROVIDED STILL WASN'T SUFFICIENT.  BUT THAT'S WHAT HAPPENED IN

23   THE LAST MEET AND CONFER.

24       THE OTHER THING I WILL SAY IS THAT, AND I WASN'T ON THIS

25   CALL, BUT MS. LLOYD-LOVETT WAS, IN AUGUST OF -- AUGUST 18TH,

1    THEY HAD A CONVERSATION WITH MR. PAK, MS. LLOYD-LOVETT, MY

2    OTHER PARTNER MR. KRISHNAN, AND THEY TALKED ABOUT THE RESPONSE

3    TO INTERROGATORY 5, THE FACT THAT CISCO HADN'T PROVIDED

4    ANYTHING, THE FACT THAT WE NEEDED TO KNOW THIS DERIVATION

5    STORY, WE EXPLAINED THE MEANING OF DERIVATION, ACTUALLY THAT'S

6    THE SECOND TIME WE DID THAT.

7         AND MR. PAK AT THAT POINT SAID, WELL, WE ARE NOT GOING TO

8    PROVIDE ALL OF THE AUTHORS, BUT WE WILL PROVIDE KEY AUTHORS.

9         SO IT WAS CLEAR BACK IN AUGUST 18TH THAT THE DISPUTE WAS

10   ALREADY PRETTY CLEAR.  WE SAID AT THAT TIME, THAT'S NOT GOOD

11   ENOUGH, BUT WE'RE NOT GOING TO MOVE TO COMPEL JUST BECAUSE YOU

12   ARE NOT AGREEING NOW TO PROVIDE EVERYTHING THAT YOU SAY YOU ARE

13   GOING TO PROVIDE,  KEY AUTHORS, FINE, WE WILL WAIT AND SEE WHAT

14   THAT RESPONSE IS.  WE DIDN'T COME TO COURT YET.

15        BUT THEN THE RESPONSE WAS NOT KEY AUTHORS, IT WAS ONE NAME.

16   ONE NAME FOLLOWED BY A RESPONSE TO INTERROGATORY 16 THAT

17   IDENTIFIED 300,000 PLUS PAGES OF DOCUMENTS.  BY THE WAY, THAT

18   ONE NAME, MR. LOUGHEED DIDN'T EVEN APPEAR IN THE 300,000 PAGES

19   THEY CITED IN RESPONSE TO INTERROGATORY 16.

20        THAT COMBINATION LEAD US TO CONCLUDE WE'RE AT THE END.

21   UNLESS WE GET A CLEAR PROPOSAL TO GET THIS INFORMATION, WE'VE

22   SPENT THREE MONTHS TRYING TO GET THIS, AND ENOUGH IS ENOUGH.

23            THE COURT:  ALL RIGHT.  I WILL GIVE YOU A CHANCE FOR

24   REBUTTAL IF YOU NEED IT.  THANK YOU.

25        MR. NEUKOM, GO AHEAD, SIR.

1          MR. NEUKOM:  THANK YOU, YOUR HONOR.

2      I THINK WHAT WE HAVE HERE IS A PRACTICAL PROBLEM.  AND I

3  WILL ADDRESS THAT IN A MINUTE, AND I HOPE IN AN ALMOST

4  COLLABORATIVE PRODUCTIVE WAY.

5      BUT BEFORE I DO, I HOPE THE COURT WILL INDULGE ME.  THERE'S

6  BEEN A THE LITTLE BIT OF RHETORIC FROM BOTH SIDES IN IN THE

7  BRIEFINGS IN SOME REPRESENTATIONS TO THE COURT ABOUT WHAT THIS

8  CASE IS ABOUT.

9      I THINK IT'S A FAIR READING OF ARISTA'S BRIEF AND SOME

10  COMMENTS FROM MY COLLEAGUE ON THE BAR TODAY, THAT THIS CASE IS

11  ABOUT CISCO STOMPING IT'S FEET FOR UNITED STATES FEDERAL

12  COPYRIGHT PROTECTION FOR EACH ONE OF THESE MULTI-WORD COMMAND

13  EXPRESSIONS TAKEN ALONE.

14      AND I WANT TO BE PERFECTLY CLEAR WITH THE COURT, AND THIS

15  WORKS AGAINST ME ON THE INSTANT MOTION, THAT CISCO DOES BELIEVE

16  IT'S ENTITLED TO COPYRIGHT PROTECTION ON EACH OF THESE

17  MULTI-WORD COMMANDS.

18      HOWEVER, IF YOU READ THE AMENDED COMPLAINT IN THIS CASE,

19  THE THRUST OF CISCO'S ALLEGATIONS ARE NOT THAT ARISTA SHOULD BE

20  STOPPED OR HELD LIABLE BECAUSE IT USES THE PHRASE IP ADDRESS AS

21  A COMMAND EXPRESSION, BUT RATHER WE HAVE A WHOLESALE USE, I

22  WOULD SAY THEFT, MR. FERRALL MAY SAY FAIR USE OF MULTIPLE

23  HUNDREDS OF HUNDREDS OF COMMAND EXPRESSIONS.

24      THIS ISSUE IS PRETTY IMPORTANT FOR US TODAY, WHETHER WE ARE

25  TALKING ABOUT WHETHER PARTIES ARE GOING TO LITIGATE THIS CASE

1    BY PARSING EACH COMMAND EXPRESSION ONE BY ONE OR WHETHER WE ARE

2    GOING TO TALK ABOUT, PARDON THE EXPRESSION, THE TAXONOMY OF

3    THOSE EXPRESSIONS.

4         THE COURT:  HOW DO YOU LITIGATE THE TAXONOMY WITHOUT

5    ADDRESSING THE INDIVIDUAL COMPONENTS OR LEVELS OF THE --

6         MR. NEUKOM:  I THINK IT'S FAIR TO ADDRESS THE

7    INDIVIDUALS, ESPECIALLY GIVEN THAT, AS I HAVE SAID, CISCO HAS

8    BEEN CLEAR AND WE'VE BEEN CLEAR IN OTHER INTERROGATORY ANSWERS

9    NOT BEFORE THE COURT THAT WE DO CONSIDER EACH OF THESE

10   EXPRESSIONS TO BE COPYRIGHT PROTECTED.

11        BUT THAT, TO MY MIND,  I DON'T WANT TO RUIN THE ENDING FOR

12   THE COURT, BUT TO MY MIND I THINK THIS IS REALLY A QUESTION

13   ABOUT --

14        THE COURT:  IT'S OKAY, I'VE SEEN THIS MOVIE MANY

15   TIMES.  GO AHEAD.

16        MR. NEUKOM:  THIS IS REALLY A PRACTICAL QUESTION

17   ABOUT HOW WE SKIN THIS PROVERBIAL CAT.

18        BEFORE I GET TO THAT, IN TERMS OF THE RHETORIC BETWEEN THE

19   PARTIES, I BELIEVE COUNSEL JUST TOOK A PASS AT WHAT OUR OPENING

20   STATEMENT WOULD BE, AND WITH RESPECT, HE GOT IT A LITTLE BIT

21   WRONG.

22        IT'S GOING TO BE TALKING ABOUT THE DOCUMENTATION IN THIS

23   CASE THAT ARISTA, IN INTERNAL E-MAILS, INCLUDING WITH ITS CEO

24   ON THE LINE, WAS TALKING ABOUT HOW SLAVISHLY THEY COPIED THE

25   CLI FROM CISCO; THAT THEY WERE GETTING DIRECTIONS TO COPY ALL

1    OR NONE; THAT THEY WERE WELL AWARE -- WHEN I SAY ALL OR NONE, I

2    MEAN ALL OR NONE OF THE CISCO CLI.

3        THE GOOD DAY THEY HAD WHEN FOUND THE "SHOW PARSE OR DUMP"

4    FEATURE FROM CISCO'S CLI WHICH ALLOWED THEM TO BASICALLY

5    DOWNLOAD A LIBRARY OF CISCO'S.

6        SO THAT'S SOME RHETORIC THAT YOUR HONOR HAS SEEN FROM CISCO

7    IN THE MOVING PAPERS.  LIKEWISE, ARISTA IS TEASING CISCO A BIT

8    FOR ITS COPYRIGHT CLAIMS FOR SOME COMMANDS EXPRESSIONS AS

9    SEEMINGLY SIMPLE AS CLOCK SET AND IP ADDRESS.

10       I CAN'T HELP BUT NOTE I SPENT SOME TIME THIS MORNING, I

11   THINK I AM MUCH LESS WELL VERSED THAN THE COURT IN SOME OF THIS

12   SUBJECT MATTER, BUT I DID SPEND SOME TIME THIS MORNING WITH

13   JUNIPER OS FOR DUMMIES, I WANTED TO SEE JUST HOW ROTE OR

14   UNEXCITING THESE PARTICULAR COMMAND EXPRESSIONS WERE.

15       I MAY HAVE MISREAD THAT SUBJECT MATTER, YOUR HONOR, BUT I

16   DON'T THINK JUNIPER DOES USE CLOCK SET.  AS FAR AS I CAN TELL,

17   THEY USE A DIFFERENT COMMAND EXPRESSION WHICH IS SET DATE.

18       I ALSO DIDN'T SEE JUNIPER USING THE IP ABBREVIATION IN ANY

19   FORM OF ITS COMMAND EXPRESSIONS.

20           THE COURT:  YOU JUST MADE ME FEEL MUCH BETTER ABOUT

21   MY MORNING.  THANK YOU FOR THAT.

22       (LAUGHTER.)

23           MR. NEUKOM:  SO ON TO THE PRACTICAL PROBLEM BEFORE

24   US.

25           IN CISCO'S SUPPLEMENTED INTERROGATORY 16 ANSWERS, IF THE

1    COURT HASN'T LOOKED AT THOSE SUPPLEMENTAL INTERROGATORY

2    ANSWERS, CISCO WOULD BEG THE COURT TO DO SO.

3         THEY ARE DETAILED, THEY ARE VOLUMINOUS, AND THERE IS AN

4    AWFUL LOT OF ATTORNEY AND CISCO WORK THAT WENT INTO THEM.

5         WE HAVE IDENTIFIED TWO PERSONS MOST KNOWLEDGEABLE ABOUT THE

6    HISTORY OF THE CISCO CLI.  WE HAVE IDENTIFIED ON A PER-COMMAND

7    EXPRESSION, THE OPERATING SYSTEM RELEASE DATE AND THE

8    CORRESPONDING OPERATING SYSTEM VERSION.

9         THAT IS -- YOUR HONOR, MAY I LEAVE THE PODIUM?  I'M JUST

10   GOING TO SHOW YOU A PAGE FROM FAR.

11              THE COURT:  YES, GO AHEAD.

12              MR. NEUKOM:  I'M LOOKING AT EXHIBIT 1 TO THE MATTHEW

13   CANNON DECLARATION.  CISCO'S SUPPLEMENTED INTERROGATORY ANSWER

14   INCLUDES THIS ENORMOUS TABLE.  AND TO BE CLEAR, YOUR HONOR, I

15   WISH THAT WE WERE ABLE TO RUN THIS DATA.  WE WERE NOT.  THIS

16   DATA WAS GENERATED BY ATTORNEY HAND, BY CONSULTING THE

17   DOCUMENTS.

18        IN PARTICULAR, BY CONSULTING THE DOCUMENTS, PRIMARILY BY

19   CONSULTING THE DOCUMENTS PREVIOUSLY IDENTIFIED BY CISCO IN A

20   RULE 33(D) ANSWER TO -- IN A PREVIOUS ITERATION OF THIS

21   DISPUTE.

22        NOT ONLY THAT, WE HAVE IDENTIFIED WHERE POSSIBLE, WHERE

23   MR. LOUGHEED HAS A MEMORY OF BEING PERSONALLY RESPONSIBLE OR

24   PARTICIPATING IN THE CREATION OR YOU MAY CALL IT THE RECORDING

25   OF THIS WORK FOR HIRE ON THE COMMAND EXPRESSION BASIS.

1     AND IN ADDITION TO THAT, WE'VE IDENTIFIED THE PLATFORM

2  PER-OPERATING SYSTEM SUPPORT OVER THE HISTORY OF THE COMPANY AS

3  IT RELATES TO THE COPYRIGHT ALLEGATIONS.

4     ALL TOLD, I THINK WE ARE TALKING ABOUT SO FAR, SOMETHING

5  LIKE NORTH OF 1,000 INDIVIDUAL DATA POINTS WHICH HAVE BEEN

6  INDEPENDENTLY COLLECTED AND VERIFIED BY CISCO AND ITS COUNSEL.

7     SO IF THERE'S GOING TO BE A DEBATE ABOUT WHETHER CISCO HAS

8  WORKED AWFULLY HARD, I DON'T THINK THAT GOES THE RIGHT WAY FOR

9  ARISTA.

10     BUT GETTING TO THE PRACTICAL SOLUTION, WHAT'S LEFT?  AND I

11  THINK WHAT I HEARD FROM COUNSEL TODAY, AND I THINK WHAT IS

12  FAIRLY READ FROM THEIR BRIEFING, IS THAT ARISTA WOULD LIKE A

13  PER-COMMAND, PER-ENGINEER HISTORICAL RECITATION FOR EACH OF THE

14  500-PLUS COMMAND EXPRESSIONS.

15     AND HERE'S WHERE I GET TO THE COLLABORATIVE SPIRIT.  THE

16  BURDEN OF DOING SO WOULD BE ENORMOUS.  THE REMAKER DECLARATION

17  EXPLAINS TO THE COURT, WE HOPE, WHAT WOULD GO INTO RECREATING

18  THIS HISTORY.

19     I HAVE A WEAKNESS FOR ANALOGIES, YOUR HONOR.  I KEPT

20  THINKING OF THIS BECAUSE I'M A SEATTLE KID, OF WHAT HAPPENED IF

21  YOU ASKED MICROSOFT TO EXPLAIN WHICH LINES OF SOURCE CODE WERE

22  PUT INTO DIFFERENT VERSIONS OF WINDOWS IN THE 1980'S, AND WHAT

23  KIND OF A HISTORICAL RE-CREATION PROCESS WOULD GO INTO

24  IDENTIFYING WHICH ENGINEER WAS RESPONSIBLE FOR THAT LINE OF

25  CODE.

26

1      THE COURT:  YOU KNOW, THAT'S REMARKABLE, MR. NUKEUM,

2   I CAN'T PROVE THIS TO BE TRUE, BUT I'M ALMOST CERTAIN THAT IN

3   1998, IN THIS VERY SAME COURTROOM, SUN MICROSYSTEMS MADE THAT

4   ASK OF THIS COURT.

5      SO I DON'T KNOW WHERE THAT GOES, BUT HISTORY HAS A WAY OF

6   REPEATING ITSELF.

7      MR. NEUKOM:  IF IT HELPS, YOUR HONOR, IN HIGH SCHOOL

8   I HAD A PART-TIME JOB OF REFILLING THE SUPPLY ROOMS ON THE

9   REDMOND CAMPUS OF MICROSOFT, AND I'M NOT SURE WHICH ENGINEERS

10  KNEW WHICH ONE OF THEM WAS CHECKING WHICH LINES OF CODE.

11     THE COURT:  CAN I ASK YOU MORE SERIOUSLY, MR. NEUKOM,

12  AS PART OF THE REGISTRATION OF THESE COPYRIGHTS, WAS THERE ANY

13  OBLIGATION OR OPPORTUNITY FOR CISCO TO IDENTIFY SOME OF THESE

14  CREATION DATES OR ORIGINATION DATES OR ORIGINAL AUTHORS?

15     DOES THAT DOCUMENTATION GIVE YOU ANY HELP, OR MIGHT THAT

16  MORE IMPORTANTLY GIVE ARISTA SOME HELP IN GETTING TO THE

17  ANSWERS THEY ARE LOOKING FOR?

18     MR. NEUKOM:  SO THAT'S -- I'M GOING TO SAY THAT'S A

19  GOOD POINT, WITHOUT HAVING A VERY ON-POINT ANSWER.

20     WE ALSO, IN THE INTERROGATORY 16 SUPPLEMENTATION, BROKE

21  DOWN EACH OF THE COPYRIGHT REGISTRATIONS UPON WHICH WE ARE

22  RELYING.  I DO NOT KNOW IF THAT INFORMATION, AND I'M SORRY

23  YOUR HONOR, I HAVEN'T LOOKED, IS IN THE REGISTRATIONS.  MY

24  UNDERSTANDING IS IT IS NOT, MY UNDERSTANDING IS IT IS NOT THE

25  CUSTOM TO DO SO IN THOSE REGISTRATION STATEMENTS.

1          SO THE BURDEN TO GO GET A PER-ENGINEER, PER-COMMAND

2     EXPRESSION HISTORY OVER THE LAST 30 YEARS, I THINK I'VE

3     ADDRESSED THAT, NOW LET ME TRY TO BALANCE IT WITH THE RELEVANCE

4     HERE.

5          NUMBER ONE, THE COMPLAINT ALLEGATIONS ABOUT THE USE OF A

6     TAXONOMY OR HIERARCHY OF 500 PLUS MULTI-WORD COMMANDS AS

7     OPPOSED TO JUST OUT OF CONTEXT SAYING THAT EACH ONE IS NOT

8     SUBJECT TO COPYRIGHT PROTECTION, IS NOT FATEFUL TO THIS CASE AS

9     IT'S BEEN FRAMED BEFORE THIS COURT.

10          TO PUT ANOTHER WAY, EVEN IF, I BELIEVE UNDER THE COPYRIGHT

11     LAW, EVEN IF ARISTA WAS ABLE TO SHOW, AND WE DON'T THINK THEY

12     WILL BE ABLE TO, BUT EVEN IF THEY COULD SHOW THAT EACH ONE OF

13     THESE MULTI-WORD COMMAND EXPRESSIONS WAS NOT IN ITS -- TAKEN

14     ALONE OUT OF CONTEXT, SUBJECT TO COPYRIGHT PROTECTION, CISCO

15     STILL HAS A CLAIM FOR THE COMBINATION AND ORGANIZATION OF ALL

16     OF THOSE TERMS.

17          SECONDLY, MR. CANNON AND I WERE CONSULTING DURING THE

18     COURT'S COLLOQUY WITH OPPOSING COUNSEL ABOUT THE ORACLE V.

19     GOOGLE CASE LAW, MY UNDERSTANDING IS THAT FOR BOTH MERGER AND

20     SCENES A FAIRE, IT IS A QUESTION OF THE OBJECTIVE MIND SET IN

21     TERMS OF WHETHER THESE DOCUMENTS WILL APPLY.

22          I THINK MR. CANNON AND I COMBINED, ARE ABOUT 80 PERCENT

23     CONFIDENCE ABOUT THAT POINT, SO IF WE'RE WRONG, IT'S AN HONEST

24     MISTAKE, YOUR HONOR.

25          BUT EVEN IF I GRANT FOR THE SAKE OF ARGUMENT, THAT THERE IS

1    SOME RELEVANCY HOOK TO CISCO'S ABILITY TO UNDERSTAND WHICH

2    ENGINEER CHECKED IN WHICH LINE OF CODE ON A PER-COMMAND

3    EXPRESSION BASIS OVER THE LAST 30 YEARS, I THINK THE QUESTION

4    FOR BOTH PARTIES AND THE COURT IS HOW ARE WE GOING TO LITIGATE

5    THIS CASE AND GET THIS DONE?

6        THIS VERY MUCH SO A TWO-WAY STREET.  WE HAVE

7    INTERROGATORIES 9 AND 10, FOR EXAMPLE, WHICH HAVE ALREADY BEEN

8    ANSWERED BY ARISTA ASKING THEM, I THINK IT'S INTERROGATORY

9    NUMBER 10 AS AN EXHIBIT BEFORE THIS COURT, ASKING THEM TO

10    IDENTIFY WHICH PRODUCT INCORPORATED WHICH COPIED COMMAND

11    EXPRESSION.

12        I'M USING THE WORD COPIED NOT TO BE INFLAMMATORY, BUT AS

13    SHORTHAND HERE AND TO GIVE US THAT BACKGROUND.

14        AND THEIR ANSWER IS A LIST OF BULLET POINTS THAT SAYS, WE

15    DIDN'T COPY IT BECAUSE IT'S NOT COPYRIGHTABLE, IN ESSENCE.  AND

16    MAYBE FIVE TO EIGHT MORE RECITATIONS OF COPYRIGHT LAW.

17        BUT PRECEDING THAT ANSWER IS A STATEMENT THAT SAYS, MY

18    GOODNESS, YOU'VE ASKED US TO GO RECREATE A HISTORY OF 500 PLUS

19    COMMAND EXPRESSIONS.  THAT TAKES A LOT OF WORK, YOU HAVEN'T

20    GIVEN US SUFFICIENT TIME.

21        NOW LET'S IMAGINE THAT CISCO WERE FORCED TO SUPPLEMENT

22    FURTHER ITS INTERROGATORY 16 ANSWER, IN ADDITION TO WHAT'S

23    ALREADY BEEN DONE AND IS EXHIBIT 1 TO THE CANNON DECLARATION,

24    AND WE WERE TO, WITH MR. REMAKER AND A TEAM OF ATTORNEYS, GO

25    RECREATE THE LAST 30 YEARS OF CISCO'S CONTRIBUTIONS TO THE

1    ROUTING AND SWITCHES INDUSTRY THAT LEADS TO THE CLI, WHAT

2    SERVICE IS IT GOING TO DO WITH IT THEN?

3         EACH SIDE GETS TEN DEPOSITIONS IN THIS CASE.  THE COURT HAS

4    MADE CLEAR THAT THE PARTIES ARE RESPONSIBLE TO MANAGE THIS CASE

5    EFFICIENTLY AND IN A TIMELY FASHION.

6         SO EVEN IF I COMPLETE THAT FOOL'S ERRAND, PARDON THE

7    EXPRESSION, I DON'T THINK IT'S GOING TO HAVE ANY PRACTICAL

8    EFFECT ON HOW THIS CASE IS LITIGATED.

9         SO IN TERMS OF HOW WE MOVE FORWARD WITH THE COURT, I WOULD

10   SUBMIT FIRST, YOUR HONOR, THAT IN LIGHT OF EXHIBIT 1 TO THE

11   CANNON DECLARATION, CISCO HAS MOOTED THE INSTANT MOTION TO

12   COMPEL BY VIRTUE OF THE INFORMATION WE HAVE PROVIDED THEM.

13        NUMBER TWO, TO THE EXTENT THAT ARISTA REALLY, IF THEY

14   REALLY WANT TO FORCE CISCO TO DO A PER-COMMAND EXPRESSION

15   HISTORICAL RECREATION ON 500 PLUS COMMAND LINES, THE LITIGATOR

16   IN ME CAN'T RESIST ASKING THE COURT TO DENY THAT AS AN

17   UNREASONABLE REQUEST.

18        BUT AT LEAST AS A FALLBACK POSITION, I WOULD ASK THE COURT

19   TO DENY THE MOTION AS PREMATURE AND FORCE COUNSEL TO MEET AND

20   CONFER AGAIN ABOUT WHAT A REASONABLE SCOPE IS GOING TO BE.

21        BECAUSE THIS, THIS ROAD THAT ARISTA HAS PUT US DOWN, PUT

22   ASIDE ON BOTH SIDES THE RHETORIC, COMMENTS FROM COUNSEL ABOUT

23   CISCO CAN'T BRING THIS CASE WITHOUT HAVING THIS INFORMATION

24   READY, I CAN'T IMAGINE THAT ANY TECHNOLOGY COMPANY DOES.

25        THAT DOESN'T MEAN THEY DON'T GET COPYRIGHT PROTECTION.

 1          PUTTING ASIDE ALL OF THAT, COUNSEL NEEDS TO WORK TOGETHER

 2    TO LITIGATE THIS CASE IN AN EFFICIENT WAY, RATHER THAN RUN TO

 3    THE COURT WITH WHAT WE CONSIDER TO BE A PREMATURE MOTION TO

 4    COMPEL.

 5          THE COURT:  ALL RIGHT.  I THINK I HAVE IT,

 6    MR. NEUKOM.  THANK YOU.

 7        MR. FERRALL.

 8          MR. FERRALL:  THANK YOU.

 9        IF I MAY, YOUR HONOR, SINCE THE ISSUE OF REGISTRATION WAS

10    BROUGHT UP.  THIS IS AN ATTACHMENT TO THE COMPLAINT, BUT I'VE

11    GOT AN EXTRA COPY WHICH I WILL GIVE TO COUNSEL.  IF I MIGHT

12    HAND ONE TO THE CLERKS.

13          THE COURT:  YOU MAY.

14        SO THIS IS EXHIBIT 3 AND THE REGISTRATIONS GO FROM

15    EXHIBIT 3 TO EXHIBIT, I THINK 27 OR SOMETHING LIKE THAT,

16    THERE'S A COUPLE OF INTERESTING THINGS.  AND THAT I THINK MAKE

17    THIS MOTION ALL THE MORE IMPORTANT.

18        AND FIRST OF ALL, ON -- YOU SEE THE NAME OF THE AUTHOR

19    UNDER, ON THE SECOND PAGE OF THE EXHIBIT, 2A, IT'S CISCO

20    SYSTEMS, AND CISCO EXPLAINED THIS.  FOR PURPOSES OF THE WORK

21    FOR HIRE, CISCO SYSTEMS IS THE LEGAL AUTHOR.

22        THERE ARE A NUMBER OF THEN ADDITIONAL AUTHORS THAT ARE

23    LISTED IN THE BACK ON BACK PAGE.

24          THE COURT:  THESE ARE THE INDIVIDUALS REFERENCED AT

25    SECTION 2(B).

1          MR. FERRALL:  RIGHT.

2          THE COURT:  OKAY.

3          MR. FERRALL:  AND WE'VE LOOKED AT ALL OF THE

4    REGISTRATIONS AND COMPILED THE LISTED AUTHORS IN THE

5    REGISTRATION.  AND ITS, I DON'T HAVE AN EXACT NUMBER, BUT I'VE

6    GOT THE SPREADSHEET, IT'S HUNDREDS, HUNDREDS OF DIFFERENT

7    COMPANIES ENTITIES DOING CONSULTING FOR CISCO, ET CETERA.

8       SO THIS DOESN'T PROVIDE ANYTHING TO WORK WITH.

9    MR. LOUGHEED, FOR EXAMPLE, IS NOT LISTED HERE.

10          THE COURT:  EVEN IF HE WERE, IT DOESN'T IDENTIFY, FOR

11    EXAMPLE, WHETHER MR. LOUGHEED WAS THE AUTHOR OF COMMAND 29 OR

12    COMMAND 264.

13          MR. FERRALL:  OR SOME SECTION OF SOURCE CODE THAT

14    DOESN'T EVEN DEAL WITH THE CLI, RIGHT.

15       BUT HERE'S THE RATHER INTERESTING THING.  LOOK AT 6(A), IF

16    YOU MAY.

17          THE COURT:  I'M THERE, YEP.

18          MR. FERRALL:  DERIVATIVE WORK OR COMPILATION.

19       IDENTIFY ANY PRE-EXISTING WORK OR WORKS THAT THIS WORK IS

20    BASED ON OR INCORPORATES.

21       CISCO'S ANSWER HERE:  PRIOR WORKS BY CLAIMANTS, AND

22    PRE-EXISTING THIRD PARTY COMPUTER CODE.

23       NOW, I DIDN'T CHECK ALL 26 REGISTRATIONS BUT I CHECKED A

24    BUNCH OF THEM.  AND IT SEEMS MANY OF THEM, IF NOT ALL OF THEM,

25    HAVE THIS LANGUAGE IN HERE.

1    IN OTHER WORDS, EVEN WITHIN THE COPYRIGHTED WORK, MILLIONS

2    OF LINES OF CODE AND DOCUMENTATION, CISCO ADMITS THAT SOME OF

3    IT IS FROM THIRD PARTIES THAT IT REALLY CAN'T CLAIM A COPYRIGHT

4    OVER.

5    OF COURSE WE DON'T KNOW WHAT THAT IS, AND MAYBE IT'S

6    RELEVANT, MAYBE IT'S NOT.  BUT THE POINT IS EVEN CISCO ADMITS

7    THAT THAT WHICH IT REGISTERED, IT DOES NOT HAVE EXCLUSIVE

8    RIGHTS OVER.  OKAY.

9    NOW, TO RESPOND TO THE MAIN POINTS THOUGH BY MR. NUKEUM, I

10   THINK IT WAS CLEAR, HE SAID SEVERAL TIMES CISCO IS STILL

11   ASSERTING COPYRIGHT PROTECTION IN EACH COMMAND.

12   THEY'RE ASSERTING OTHER THEORIES.  THEY ARE ASSERTING

13   WHOLESALE USE.  THEY ARE ASSERTING TAXONOMIES.  THEY ARE

14   ASSERTING COMBINATIONS AND ORGANIZATIONS.  AND THAT'S FINE,

15   THEY ARE ENTITLED TO AND WE ARE GOING TO CHALLENGE WHAT'S

16   PROTECTABLE IN THOSE, AND WE ARE GOING TO SEEK WHO CREATED THAT

17   ORIGINAL ORGANIZATION OF THE COMMANDS.

18   BUT YOUR HONOR, IF A DOZEN COMMANDS ON THEIR OWN ARE NOT

19   PROTECTABLE, WE'RE ENTITLED TO USE THEM.  IN FACT, EVERYONE IN

20   THE INDUSTRY IS ENTITLED TO USE THEM.  EVERYONE IN THE INDUSTRY

21   IS ENTITLED TO COPY THEM BECAUSE THEY HAVE NO COPYRIGHT

22   PROTECTION.

23   AND IF A HUNDRED DON'T HAVE ANY COPYRIGHT PROTECTION, THE

24   INDUSTRY IS ENTITLED TO USE THOSE TOO.  AND SO WE NEED TO KNOW

25   -- AND THAT THEN IN TURN HAS AN EFFECT ON WELL, WHAT'S THE

1    ORGANIZATION, WHAT'S THE TAXONOMY THAT IS EXCLUSIVELY CISCO'S?

2        IT MAY BE HEARD, IT MAY TAKE SOME TIME, BUT I JUST DON'T

3    SEE A WAY AROUND CISCO AT LEAST PUTTING IN THE EFFORT OF TRYING

4    TO GET THIS.

5        IF THEY WANT TO COME TO THIS COURT AND SAY THAT THESE

6    COMMANDS WERE CREATIVE OR GENERATED CREATIVELY, THEY'VE GOT TO

7    PUT IN THE TIME AND TRY TO FIND OUT HOW THAT WAS DONE.  I JUST

8    DON'T SEE A WAY AROUND IT.  AND IF THEY SAY THEY CAN'T DO IT,

9    THEN THAT'S GOING TO HAVE IMPLICATIONS ABOUT THE WAY THE CASE

10    IS TRIED.

11            THE COURT:  I JUST WANT TO MAKE SURE WE RUN TO GROUND

12    THAT LAST POINT YOU MAKE.

13        LET'S SAY CISCO UNDERTAKES AN EXTRAORDINARY EFFORT AND

14    INVESTS MASSIVE RESOURCES TO ANSWER EACH OF THESE QUESTIONS TO

15    THE BEST OF ITS ABILITY AND HOPEFULLY TO ARISTA'S SATISFACTION.

16    THE ANSWER COMES BACK AFTER ALL THAT WORK, WE JUST DON'T KNOW

17    AS TO THIS SUBSET OF COMMANDS, AT LEAST.

18        I TAKE IT THAT'S A RESPONSE YOU ARE PERFECTLY HAPPY TO

19    HAVE, YOU JUST WANT TO BE ABLE TO HOLD THEM TO IT DOWN THE

20    ROAD.  AND OF COURSE THEY HAVE A RIGHT TO SUPPLEMENT UNDER

21    26(E) AND DO OTHER THINGS TO CHANGE THAT IF THE COURT ALLOWS

22    THEM TO.  BUT THAT'S THE REAL OBJECTIVE HERE.

23            MR. FERRALL:  THAT'S TRUE.  TO SAY I'M PERFECTLY

24    HAPPY WITH IT, WOULD BE AN EXAGGERATION.

25            THE COURT:  I MAY BE OVERSTATING THE CASE.

1          MR. FERRALL:  BUT YOU CAN'T MAKE EVIDENCE THAT

2     DOESN'T EXIST, RIGHT.

3          AND I'M NOT SAYING THEY, YOU KNOW, THEY HAVE TO PUT THE

4     ENTIRE QUINN EMANUEL FIRM ON THIS TASK, BUT THEY HAVE TO DO A

5     REASONABLE INVESTIGATION AND THEY HAVE TO BE HELD TO THE

6     CONSEQUENCES OF NOT BEING ABLE TO FIND SOMETHING OR FINDING

7     WHAT THEY CAN.

8          AS FOR THE, THE LAST THING I WANT TO SAY AS FOR

9     MR. NEUKOM'S COMMENT ABOUT WHERE DOES THIS LEAD, WE DON'T KNOW

10    EXACTLY WHERE IT WILL LEAD.  I DO NOT KNOW HOW MANY AUTHORS

11    THEY ARE GOING TO IDENTIFY.  I DOUBT THEY ARE GOING TO IDENTIFY

12    500, I HIGHLY DOUBT THAT.  IS IT GOING TO BE A DOZEN?  MAYBE.

13    IS IT GOING TO BE 30?  MAYBE.  I DON'T KNOW, MAYBE IT'S 8, WHO

14    KNOWS.  AND WE HAVE TO DECIDE AND FIGURE OUT WHAT WE ARE GOING

15    TO DO AFTER WE GET THE AUTHORS.

16         AGAIN, IF IT'S 50 AUTHORS, DO WE HAVE TO DEPOSE ALL 50?

17    PROBABLY NOT.  I DOUBT IT.  BUT IF IT'S 8, WILL WE WANT TO

18    DEPOSE ALL 8?  AND WE HAVE TO ASK FOR MORE THAN TEN

19    DEPOSITIONS, YEAH, THAT'S POSSIBLE.

20         BUT WE ARE NOT THERE YET.  WE'RE JUST AT THE FIRST STAGE

21    WHICH IS WHY WE ASK THIS COURT TO DECIDE THIS SOON.

22          THE COURT:  AND MR. FERRALL, YOU WOULD AGREE THAT THE

23    IMPLICATIONS FOR ADDITIONAL DISCOVERY ARE NOT LIMITED TO

24    DISCOVERY FROM CISCO ALONE, THAT THIS MAY SET SOME METES AND

25    BOUNDS OR STAKES IN THE GROUND FOR DISCOVERY OF ARISTA GOING

1    FORWARD.

2            MR. FERRALL:  OF COURSE IT'S GOING TO.

3        I WILL SAY THIS, FIRST OF ALL, OF COURSE THE DISCOVERY THAT

4    MR. NEUKOM ADDRESSED IS NOT RIPE.  BUT WE HAVE RESPONDED TO,

5    ALREADY, TO SOME VERY BURDENSOME ITEM-BY-ITEM FOR ALL ACCUSED

6    PRODUCTS TYPE DISCOVERY.

7        ALL ACCUSED PRODUCTS INCLUDES EVERY VERSION, EVERY VERSION

8    OF ARISTA SOFTWARE RELEASED, EVERY VERSION OF SWITCHWARE

9    RELEASED.  I THINK IT'S FAIR TO SAY IT'S ALMOST ARISTA'S ENTIRE

10    BUSINESS ACCUSED IN THIS CASE.  AND THAT'S MANY, MANY PRODUCTS,

11    MANY RELEASES OF SOFTWARE.

12        WE'VE PROVIDED RESPONSES ON THAT BASIS ALREADY.  NO DOUBT

13    WE ARE GOING TO HAVE MORE OF THAT.

14        BUT I JUST DON'T SEE, UNLESS CISCO WANTS TO AMEND THEIR

15    CLAIM AND SAY NO, NOW WE ARE ONLY GOING TO TALK ABOUT THE

16    TAXONOMY AND EACH INDIVIDUAL COMMAND IS NOT ASSERTED, WELL THEN

17    FINE, WE'VE GOT A MUCH SMALLER CASE TO DEAL WITH.

18        BUT THAT'S NOT THE CASE WE HAVE RIGHT NOW.

19            THE COURT:  I HAVE ONE OTHER QUESTION, PERHAPS I

20    SHOULD HAVE ASKED EARLIER.

21        AT THE VERY BEGINNING OF OUR CONVERSATION TODAY YOU

22    EXPLAINED TO ME THE DIFFERENT CASES AND THEIR SUBJECT MATTER.

23    AM I RIGHT THEN IN UNDERSTANDING THAT THE TWO, WHAT I WILL

24    CALL, NOT YOU, BUT WHAT I WILL CALL THE CLI RELATED PATENTS AT

25    ISSUE IN THIS CASE ARE PRESENTLY THE SUBJECT OF LITIGATION IN

1    THE ITC?

2            MR. FERRALL:  NO, THOSE ARE NOT.

3            THE COURT:  OKAY.

4        SO THE REASON I ASK IS, MIGHT THERE BE AN OPPORTUNITY TO

5    LEVERAGE SOME OF THE OPPORTUNITY FROM CISCO THERE, HERE?

6            MR. FERRALL:  SURE, SURE.  WE ALREADY HAVE.

7        THE SOURCE CODE THAT IS ACCUSED IN THAT PATENT CASE, THOSE

8    PATENT ASSERTIONS IS THE SAME THAT RESPONDS TO SOME OF THESE

9    COMMANDS.  LIKEWISE, ON THE CISCO SIDE --

10           THE COURT:  BUT BECAUSE THAT IS NOT A COPYRIGHT CASE,

11   THAT IS NOT PART OF THE ITC'S RESPONSIBILITY, AS FAR AS I KNOW.

12       THEY HAVE NOT YET ADDRESSED ANY OF THESE ISSUES IN THEIR

13   ITC RELATED DISCOVERY, TO YOUR KNOWLEDGE?

14           MR. FERRALL:  SORRY, WITH RESPECT TO ITC DISCOVERY,

15   YEAH.

16       THE PARTIES HAVE ALREADY EXCHANGED ALL OF THE DOCUMENT

17   PRODUCTION IN THE ITC.  SO WE'VE LEVERAGED THAT DOCUMENT

18   PRODUCTION ALREADY.  THERE'S RELEVANT MATERIAL IN THERE FOR

19   SURE, BUT THE PARTIES DIDN'T FOCUS ON COPYRIGHT ISSUES OR

20   COMMANDS.

21           THE COURT:  BECAUSE THEY ARE NOT SPECIFICALLY AT

22   ISSUE.

23           MR. FERRALL:  THEY ARE NOT AT ISSUE IN THE ITC CASES.

24           THE COURT:  ALL RIGHT.  I THINK I HAVE IT.  THANK YOU

25   VERY MUCH.

1            MR. NEUKOM, ANY LAST WORDS?  I THINK I HAVE YOUR POSITION.

2    ANYTHING ELSE YOU WOULD LIKE TO TELL ME?

3            MR. NEUKOM:  NO.  THANK YOU, YOUR HONOR.

4            THE COURT:  ALL RIGHT.  THANK YOU BOTH.

5        I WILL TAKE THIS MATTER UNDER SUBMISSION.  I WANT TO JUST

6    WRITE A VERY BRIEF, HOPEFULLY BRIEF, ORDER GETTING THIS RIGHT.

7    IT'S AN IMPORTANT ISSUE, PARTICULARLY AT THIS EARLY STAGE IN

8    THE CASE, AND I WANT TO MAKE SURE I GIVE FULL CONSIDERATION TO

9    YOUR ARGUMENTS.

10        THANK YOU BOTH.

11        (WHEREUPON, THE PROCEEDINGS IN THIS MATTER WERE CONCLUDED.)

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1

2

3

4                    **<u>CERTIFICATE OF REPORTER</u>**

5

6

7

8              I, THE UNDERSIGNED OFFICIAL COURT

9    REPORTER OF THE UNITED STATES DISTRICT COURT FOR

10   THE NORTHERN DISTRICT OF CALIFORNIA, 280 SOUTH

11   FIRST STREET, SAN JOSE, CALIFORNIA, DO HEREBY

12   CERTIFY:

13              THAT THE FOREGOING TRANSCRIPT,

14   CERTIFICATE INCLUSIVE, CONSTITUTES A TRUE, FULL AND

15   CORRECT TRANSCRIPT OF MY SHORTHAND NOTES TAKEN AS

16   SUCH OFFICIAL COURT REPORTER OF THE PROCEEDINGS

17   HEREINBEFORE ENTITLED AND REDUCED BY COMPUTER-AIDED

18   TRANSCRIPTION TO THE BEST OF MY ABILITY.

19

20

21

22

23

24   _____

25   SUMMER A. FISHER, CSR, CRR
     CERTIFICATE NUMBER 13185          DATED: 9/30/15