**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

Kathleen Sullivan (SBN 242261)
kathleensullivan@quinnemanuel.com
QUINN EMANUEL URQUHART &
SULLIVAN LLP
51 Madison Avenue, 22nd Floor
New York, NY 10010
Telephone: (212) 849-7000
Facsimile: (212) 849-7100

Sean S. Pak (SBN 219032)
seanpak@quinnemanuel.com
John M. Neukom (SBN 275887)
johnneukom@quinnemanuel.com.
QUINN EMANUEL URQUHART &
SULLIVAN LLP
50 California Street, 22nd Floor
San Francisco, CA 94111
Telephone: (415) 875-6600
Facsimile: (415) 875-6700

Mark Tung (SBN 245782)
marktung@quinnemanuel.com
QUINN EMANUEL URQUHART &
SULLIVAN LLP
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, CA 94065
Telephone: (650) 801-5000
Facsimile: (650) 801-5100

Steven Cherny *(admitted pro hac vice)*
steven.cherny@kirkland.com
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900

Adam R. Alper (SBN 196834)
adam.alper@kirkland.com
KIRKLAND & ELLIS LLP
555 California Street
San Francisco, California 94104
Telephone: (415) 439-1400
Facsimile: (415) 439-1500

Michael W. De Vries (SBN 211001)
michael.devries@kirkland.com
KIRKLAND & ELLIS LLP
333 South Hope Street
Los Angeles, California 90071
Telephone: (213) 680-8400
Facsimile: (213) 680-8500

*Attorneys for Plaintiff Cisco Systems, Inc.*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION**

| CISCO SYSTEMS, INC., | CASE NO. 5:14-cv-5344-BLF |
|---|---|
| Plaintiff, | **CISCO'S OPPOSITION TO ARISTA'S MOTION TO AMEND SCHEDULING ORDER OR, ALTERNATIVELY, TO STAY PATENT CLAIMS PENDING *INTER PARTES* REVIEW** |
| vs. | |
| ARISTA NETWORKS, INC., | **REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED** |
| Defendant. | |
| | Date:     February 18, 2016 |
| | Time:     9:00 A.M. |
| | Dept.:    Courtroom 3 |
| | **DEMAND FOR JURY TRIAL** |

# **TABLE OF CONTENTS**

Table of Authorities ................................................................................................. iii

I.    Introduction and Summary of Argument ........................................................ 1

II.   Factual Background ........................................................................................ 4

      A.    Cisco's Development of Its Copyrighted and Patented CLI ................. 4

      B.    Arista's Decision to Copy Cisco's CLI ............................................... 5

      C.    Cisco's Service of a Detailed Complaint ............................................. 6

      D.    Arista's Discovery Delays .................................................................. 8

      E.    Arista's Vague Discovery Plan ......................................................... 10

III.  Legal Standard ............................................................................................ 11

IV.   Argument .................................................................................................... 12

      A.    There Is No "Good Cause" for Delaying Cisco's Copyright Claims. .................... 12

      B.    Arista Has Not Justified Its Requests for Additional Discovery ........................... 17

      C.    Arista's Belated Requests for IPRs Does Not Justify a Stay ................................ 21

V.    Conclusion .................................................................................................. 24

OPPOSITION TO MOTION TO AMEND SCHEDULING ORDER
Case No.3:14-cv-05344-BLF

# <u>TABLE OF AUTHORITIES</u>

<u>Page</u>

## <u>Cases</u>

*16 Casa Duse, LLC v. Merkin*,
  791 F.3d 247 (2d Cir. 2015) ............................................................................7

*Acumed LLC v. Stryker Corp.*,
  551 F.3d 1323 (Fed.Cir.2008) ........................................................................16

*Amer. Dental Assoc. v. Delta Dental Plans Assoc.*,
  126 F.3d 977 (7th Cir. 1997) ..........................................................................20

*Authentec, Inc. v. Atrua Techs., Inc.*,
  No. C 08-1423 PJH, 2008 WL 5120767 (N.D. Cal. Dec. 4, 2008) .................18

*Avago Techs. Fiber IP (Singapore) Pte. Ltd. v. IPtronics Inc.*,
  No. 10-CV-02863-EJD, 2011 WL 3267768 (N.D. Cal. July 28, 2011) ...................16

*Brocade Communications Sys., Inc. v. A10 Networks, Inc.*,
  No. C 10-3428 PSG, 2013 WL 831528 (N.D. Cal. Jan. 10, 2013) ...........................19

*Caso v. Hartford Cas. Ins. Co.*,
  No. S-07-101 FCD/DAD, 2008 WL 449676 (E.D. Cal. Feb. 15, 2008) .................15

*Coleman v. Quaker Oats Co.*,
  232 F.3d 1271 (9th Cir. 2000) ........................................................................11

*Ducey v. Meyers*,
  144 F. App'x 619 (9th Cir. 2005) ....................................................................11

*Escandon v. Los Angeles Cty.*,
  584 F. App'x 517, 519-20 (9th Cir. 2014)
  *cert. denied sub nom. Escandon v. Los Angeles Cty., Cal.*,
  135 S. Ct. 1506, 191 L. Ed. 2d 432 (2015) ..............................................12, 15

*Feist Publications, Inc. v. Rural Telephone Service Co.*,
  499 U.S. 340 (1991) ........................................................................................19

*Herring v. Veterans Admin.*,
  76 F.3d 386 (9th Cir. 1996) ............................................................................11

*Hewlett-Packard Co. v. ServiceNow, Inc.*,
  No. 14-cv-0057-BLF, 2015 U.S. Dist. LEXIS 47754 (N.D. Cal. Apr. 9, 2015) .................23

*Hofstetter v. Chase Home Fin., LLC*,
  No. C 10-01313, 2011 WL 2462235 (N.D. Cal. June 21, 2011) ...........................12

*Johnson v. Mammoth Recreations, Inc.*,
  975 F.2d 604 (9th Cir. 1992) ....................................................................11, 15

*Newport v. Burger King Corp.*,
  No. C-10-04511-WHA DMR, 2011 WL 3607973 (N.D. Cal. Aug. 16, 2011) .................20

*Oracle America, Inc. v. Google, Inc.*,
  No. 10-03561 (N.D. Cal. Nov. 18, 2010) .................................................................19

*Parapluie, Inc. v. Mills*,
  555 F. App'x 679, 682-83 (9th Cir. 2014) .............................................................11

*Pete v. City of Oakland*,
  No. C09-06097 WHA 2010 WL 4279455 (N.D. Cal. Oct. 22, 2010) ...............................13, 14

*Sage Electrochromics, Inc. v. View, Inc.*,
  No. 12-cv-06441-JST, 2015 U.S. Dist. LEXIS 1056 (N.D. Cal. Jan. 5, 2015)..................12, 22

*Secureinfo Corp. v. Telos Corp.*,
  387 F. Supp. 2d 593 (E.D. Va. Sep. 9, 2005) .......................................................19

*Software Rights Archive, LLC v. Facebook, Inc.*,
  No. C-12-3970 RMW, 2013 WL 5225522 (N.D. Cal. Sep. 17, 2013) ...............................17

*In re W. States Wholesale Natural Gas Antitrust Litig.*,
  715 F.3d 716 (9th Cir. 2013) *aff'd sub nom.*
  *Oneok, Inc. v. Learjet, Inc.*, 135 S. Ct. 1591, 191 L. Ed. 2d 511 (2015) .....................11

## **Statutes**

17 U.S.C. § 201(b) ...........................................................................................7

Fed. R. Civ. P. 16(b)(4) .....................................................................................11

Fed. R. Civ. P. 26(b) ........................................................................................12

Fed. R. Civ. P. 30 ..........................................................................................1, 18

Fed. R. Civ. P. 30(a)(2) ................................................................................12, 18

Fed. R. Civ. P. 30(b)(6) .......................................................................3, 8, 10, 15, 18

Fed. R. Civ. P. 33 ...........................................................................................21

Fed. R. Civ. P. 33(a)(1) .....................................................................................12

REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

## I.     <u>INTRODUCTION AND SUMMARY OF ARGUMENT</u>

The Motion to Amend Scheduling Order or, Alternatively, to Stay Patent Claims Pending *Inter Partes* Review ("Motion") filed by Defendant Arista Networks, Inc. ("Arista") is without good cause and if allowed would cause severe prejudice to Plaintiff Cisco Systems, Inc. ("Cisco"). Cisco has not only been stunned by the scope of Arista's copying, Cisco was also stunned to recently discover that a former Cisco engineer and now founder and CTO for Arista bragged in a podcast of how he and Adam Sweeney (another former Cisco engineer) had "slavishly" copied Cisco's CLI specifically to take Cisco customers. *See* Show 45 – Arista – EOS Network Software Architecture – Webinar at 54:40-55:45 ("Packet Pushers Podcast"), available at http://packetpushers.net/podcast/podcasts/show-45-arista-eos-software-architecture/. It should be apparent that Arista's proposed delays are improper attempts to avoid being held to account for this improper activity. Indeed, what was scheduled to be a routine claim construction hearing preparation call a few weeks ago, as the *Markman* hearing is fast approaching in a case now 11 months old, was instead morphed by Arista into a request to massively delay the copyright case, purportedly justified by a request to massively increase depositions by six-fold times the limit agreed upon by the parties and supported by the Federal Rules, as well as a request to stay the patent case.

Arista offers two justifications for these requests, and neither is persuasive. First, Arista claims that it needs additional time so that each side can take at least sixty depositions—more than six times the number permitted by Rule 30 and accepted by Arista just six months ago. Second, Arista argues—ostensibly in the alternative—that the Court should delay at least the proceedings on Cisco's patent infringement claims until the Patent Trial and Appeal Board ("PTAB") can rule on one request for *inter partes* review ("IPR") of a Cisco asserted patent that Arista has just recently filed and one request it has not yet filed. Arista's request to extend the schedule threatens to postpone the currently scheduled trial date of August 1, 2016 by a year or more. Neither of Arista's purported bases for its Motion justify putting off the trial. Arista's Motion should therefore be denied.

1    Nothing has changed in this case since the Court adopted its Scheduling Order on June 1,

2  2015 that would warrant delay. Dkt. 51. Cisco detailed the scope of its allegations regarding

3  Arista's patent and copyright infringement in Cisco's December 5, 2014 Complaint, and the scope

4  of its claims has not changed since. Cisco's Complaint identified 26 copyrighted works and two

5  patents that it alleges Arista has infringed. Cisco is still asserting the same 26 copyrighted works

6  and two patents today.

7    With respect to Cisco's copyright claims, Cisco's Complaint identified explicitly the

8  elements of its works that Cisco alleges Arista has copied. These include more than five hundred

9  multi-word command expressions and their hierarchical arrangement, Cisco's command modes

10  and associated prompts, and screen displays generated by Cisco's command expressions. Cisco

11  also alleged that Arista copied its product documentation, including typographical errors. The

12  scope of Cisco's copyright infringement allegations has not changed since Cisco filed its

13  Complaint and the Court entered its scheduling order.

14    Cisco's Complaint also detailed its allegations as to why these elements of its CLI

15  represent protectable expression. Cisco explained that its works were created by large teams of

16  Cisco engineers working over three decades. Cisco's detailed allegations put Arista on notice of

17  the scope of creative endeavor that the asserted works represent. Further, these details and the

18  process behind Cisco's creation of its CLI are not unknown to Arista so as to now warrant sixty

19  depositions. A number of Cisco's engineers who developed Cisco's CLI are now very senior

20  executives or engineers with Arista, which in turn deliberately copied Cisco's protectable

21  expressions wholesale. Arista was well aware of the creative process behind Cisco's CLI when the

22  prior deposition limits were agreed upon. In sum, given that there has been no change to the scope

23  of this case, there is no basis for Arista's claim that delay is warranted because it was somehow

24  surprised about Cisco's allegations regarding the extent of its copying or the creative endeavor that

25  went into developing its CLI. There is no reason to revisit the scheduling order or discovery

26  limitations accepted by the parties.

27    Arista's argument is driven largely by its baseless argument that the discovery limits in the

28  rules and agreed upon for this case should be cast aside so that the parties can take 120

2
OPPOSITION TO MOTION TO AMEND SCHEDULING ORDER
Case No.3:14-cv-05344-BLF

depositions. There is no basis for these exaggerated demands. Forty of the sixty depositions Arista seeks leave to take allegedly pertain to the "originality" of each of the over five hundred command expressions Cisco alleges that Arista copied. But under copyright law originality is a modest requirement, satisfied by the information Cisco has already produced, and to which subjective employee testimony is largely irrelevant. Certainly Arista can obtain adequate information through interrogatories, 30(b)(6) corporate depositions, and depositions of the most significant personnel involved with CLI at Cisco. And, as noted, this is all really form over substance because many of Arista's own senior executives and engineers came from Cisco and were directly involved in or oversaw the development of Cisco's CLI at Cisco. They know what CLI development entails. Moreover, here Arista copied not just individual expressions but in fact their entire hierarchical arrangement, their associated command modes and prompts, and associated screen displays. Determining the originality of copied material here in light of Arista's massive "slavish" copying is not a command line-by-command line analysis. The marginal importance of these depositions Arista requests in light of the actual case presented here by Arista's wholesale copying does not justify the unprecedented cost, delay, or management difficulties that permitting such excessive depositions would impose, especially in light of Arista's failure to seek such depositions sooner or even suggest they were needed at the original scheduling conference.

Arista's request that the patent case be stayed pending resolution of its petitions for IPR of Cisco's asserted patents is similarly unfounded. Most importantly, that request is late given the stage of this litigation, and premature given the stage of the purported IPRs. Arista has only recently filed one request for IPR, and has not yet filed the second one. But a decision by the PTAB as to whether even to institute an IPR is not expected until at least May 2016 and no hearing would occur before 2017. As a practical matter, in addition to prejudice to Cisco, staying Cisco's patent claims until then would generate additional case management problems given that all discovery has thus far proceeded on all claims in the case. To invite such difficulties this deep into the case based on speculation as to whether the PTAB will institute an IPR and whether, if instituted, an IPR would alter the scope of one or more asserted of the asserted patents is both inefficient and prejudicial. Further, Cisco originally suggested proceeding on the copyright claims

OPPOSITION TO MOTION TO AMEND SCHEDULING ORDER
Case No.3:14-cv-05344-BLF

first and the patent claims subsequently, and Arista refused that proposal and as a result the parties have taken discovery on all issues. Now, not liking where it stands on the merits, Arista proposes to postpone or stay the patent case where one IPR has not even been filed and where none is instituted.[1]  Arista's tactics are transparent.

This case has been pending for more than eleven months already. There is no basis for delay. Not one thing has changed about the scope of Cisco's case against Arista. Arista's proposal would severely prejudice Cisco.    Arista admitted to "slavishly" copying Cisco's CLI for the precise purpose of taking Cisco's customers.    Arista has had ample notice of the allegations against it and ample opportunities for discovery.

## II.    FACTUAL BACKGROUND

### A.    Cisco's Development of Its Copyrighted and Patented CLI

Cisco's original complaint filed last December provided detailed allegations regarding how Arista has copied 26 different registered works developed at Cisco over the past three decades. *See* Dkt. 1 (Complaint) at ¶¶ 1, 3, 7, 9, 20-30. 40-57. Starting in the mid-1980s, Cisco developed a series of operating systems for network devices, along with an elaborate set of supporting documentation. *See id.* at ¶¶ 1, 20-22, 29. One creative aspect of Cisco's copyrighted operating systems that contributed to their popularity is the CLI. *See id.* at ¶¶ 20-30. Users of Cisco's CLI connect to a network device and input command expressions at a prompt. *See id.* at ¶¶ 6, 27. The system then parses those expressions to determine what actions to take (*e.g.*, displaying information about the network device, or changing the configuration of the device). *See id.* at ¶¶ 6, 27. Cisco's hierarchically-arranged, text-based CLI is an important part of Cisco's products. *See id.* at ¶¶ 28, 30.

The particular command expressions and the manner in which those expressions are arranged within Cisco's CLI were the creative choices of Cisco. *See id.* at ¶¶ 28, 30. Teams of

---

[1]  In the different actions pending over different patents in the ITC, Arista's IPR strategy proved completely ineffectual as the PTAB denied institution for 5 out of 7 IPRs thus far. There is no reason to presume Arista's unfiled IPR and recently filed IPR will be instituted or succeed.

early Cisco employees such as Kirk Lougheed chose particular keywords to employ in command expressions, as well as how to arrange them. *See, e.g.*, Tung Decl.[2] Ex. 2 (October 14, 2015 Response to Interrogatory No. 5). Cisco's CLI was the product of this creative process and is encompassed in Cisco's copyright registrations on its operating systems.  *See* Dkt. 1 (Complaint) at ¶¶ 20-30.

Cisco also patented inventive ways to implement its CLI. The two patents in this case both relate to technology in Cisco's CLI. U.S. Patent No. 7,047,526 relates to the manner in which "generic" command expressions are processed by the system to trigger specific actions. *See* Tung Decl. Ex. 3 (U.S. Patent No. 7,047,526).   U.S. Patent No. 7,953,886 relates to a system by which CLI command expressions and screen displays can be encoded using extensible markup languages, so that network devices can be administered without having to physically connect a terminal to them. *See* Tung Decl. Ex. 4 (U.S. Patent No. 7,953,886).

## B.    Arista's Decision to Copy Cisco's CLI

When Arista began developing products, Arista deliberately chose to copy Cisco's CLI and its supporting documentation so that Arista could avoid the cost of developing an alternative approach. As Arista's CEO Jayshree Ullal put it, "Where we don't have to invent, we don't." *See* Tung Decl. Ex. 5 (Network World article).   *See also* Dkt. 1 (Complaint) at ¶¶ 7, 46. ████████

███████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████  *See* Tung Decl. Ex. 6 (Jayshree Ullal July 21, 2009 email). Instead of "compet[ing] with Cisco directly in the enterprise in a conventional way," Cisco alleges that Arista copied Cisco to avoid a development process that Ms. Ullal stated would take "15 years and 15,000 engineers." *See* Tung Decl. Ex. 7 (Fortune article).   *See also* Dkt. 1 (Complaint) at ¶¶ 4, 45.

---

[2]    "Tung Decl." refers to Declaration of Mark Tung in Support of Cisco's Opposition to Arista's Motion to Amend Scheduling Order.

1    Recently, Cisco was surprised to discover that a former Cisco engineer and now Arista's

2  CTO Ken Duda, publicly bragged about how Arista copied Cisco's CLI "slavishly." *See* Packet

3  Pushers Podcast. Mr. Duda, accompanied by his colleague Adam Sweeney, another former Cisco

4  engineer, went on to explain that Arista even copied parts of Cisco's CLI that Arista's engineers

5  supposedly did not like specifically because they wanted to try to take Cisco's customers and

6  convert them to Arista's customers. *See id*. ████████████████

7  ████████████████████████████████████████████████

8  ████.[3]  *See* Tung Decl. Ex. 8 (James Lingard April 14, 2006 email).   *See also* Packet Pushers

9  Podcast.

10    As is evident from public statements by Arista's senior management, Arista markets its

11  products by touting the similarities between its CLI and Cisco's CLI specifically so they can

12  convert Cisco customers using Cisco's IP.   *See* Tung Decl. Ex.5 (Network World article)

13  (proclaiming that "a Cisco CCIE expert would be able to use Arista right away, because we have a

14  similar command-line interfaces and operational look and feel"); Tung Decl. Ex. 9 (Duda article)

15  (explaining that "80% [of Arista customers] tell us they appreciate the way they can leverage their

16  deep [Cisco] IOS experience, as they can easily upgrade an aging [Cisco] Catalyst infrastructure to

17  Arista."). Given Arista's wholesale, "slavish" copying, it is no surprise that Arista's counsel has

18  observed that "it's almost Arista's entire business accused in this case." *See* Tung Decl. Ex. 10

19  (September 30, 2015 Hearing Tr.) at 35:9-10.

20    **C.    Cisco's Service of a Detailed Complaint**

21    Faced with Arista's recently surfaced public admissions that it was using Cisco's

22  proprietary CLI technology, Cisco filed this lawsuit accusing Arista of copyright and patent

23  infringement on December 5, 2014. *See* Dkt. 1. In its original complaint filed last year, Cisco

24  identified twenty-six copyrighted works (including over five hundred command expressions and

25  their associated hierarchies, command modes and prompts, screen displays, and manuals) and two

26  _____

27    [3]   Mr. Duda also invited people to create a duplicate of the CLI in Juniper's JunOS operating
    system for use with Arista devices. *See* Packet Pushers Podcast.

28

6

OPPOSITION TO MOTION TO AMEND SCHEDULING ORDER
Case No.3:14-cv-05344-BLF

1    patents infringed by Arista. *See* Dkt. 1 at Exs. 3-30.    Cisco attached to its Complaint the

2    registration certificates for each registered work, which identify the author of the work as Cisco[4]

3    and the date on which the work was completed. *See id.* at Exs. 3-28. And Cisco explained in its

4    allegations that these works were created by large teams of Cisco engineers working over three

5    decades. *See id.* at ¶¶ 21, 27-30.

6          Cisco also identified specific elements of its copyrighted works that it alleged Arista has

7    chosen to infringe in its rival operating system to IOS, called EOS. Cisco's allegations identified

8    lists of protectable command expressions allegedly copied by Arista in the body of its complaint

9    (*see id.* at ¶ 51), attached as an exhibit an identification of more than five hundred specific such

10   command expressions (*see id.* at Ex. 1)—the same command expressions at issue today—and

11   included numerous pages of allegations showing how those command expressions are arranged in

12   command hierarchies (*see id.* at ¶ 52), command modes and prompts (*see id.*at ¶ 54), and product

13   documentation, that Arista had deliberately copied (*see id.*at ¶¶ 55-56, Ex. 2).

14         In its original Answer, Arista professed no uncertainty about the scope of Cisco's

15   copyright infringement allegations. Instead, Arista ***admitted*** "that it uses the IOS command

16   expressions included in Exhibit 1 to Cisco's Complaint."[5]  Dkt. 36 at ¶ 53. Arista further admitted

17   using the command modes and prompts that Cisco accused of infringement. *See id.* at ¶ 54. And

18   although Arista denied in court pleadings that it had copied Cisco's product documentation (s*ee id.*

19   at ¶¶ 55-57), its CEO publicly admitted the opposite stating that Arista had engaged in such

20   copying—for which she admitted Arista's culpability (*see* Tung Decl. Ex. 11 (Barclay's Conf. Tr.)

21   at CSI-CLI-00357849). Now, Arista—which has been found to have bragged how it "slavishly"

22

23   _____

24   ⁴    *See* 17 U.S.C. § 201(b) ("In the case of a work made for hire, the employer or other person

25   for whom the work was prepared is considered the author for purposes of this title. . ."). Individual
     developers of command expressions are not "authors" in any relevant copyright sense. *See 16*

26   *Casa Duse, LLC v. Merkin*, 791 F.3d 247, 257 (2d Cir. 2015) ("non-freestanding contributions to
     works of authorship are not ordinarily themselves works of authorship").

27   ⁵    Arista now denies this allegation but has offered no explanation for its reversal. *See* Dkt. 65
     at ¶ 53.

28

1    copied Cisco's CLI—refuses to stop doing so and continues to deliberately and willfully use

2    Cisco's IP to compete unfairly with Cisco.

**D.    Arista's Discovery Delays**

4        Although Arista has repeatedly suggested that Cisco has resisted providing relevant

5    discovery, Arista has repeatedly delayed pursuing information Cisco has provided and avoided use

6    of discovery tools available to it. Yet, while Arista has been slow to make discovery requests,

7    Arista has been quick to demand "ASAP" compliance from Cisco once a request has been made.

8    Arista's repeated attempts to mischaracterize Cisco as being uncooperative in discovery is belied

9    by the incredible efforts Cisco has made to respond to ever-expanding and ever-changing

10   discovery requests from Arista as Arista continues to try to create procedural reasons to slow

11   down this case.[6]

12       As a prime example, Arista repeatedly has delayed pursuing information regarding the

13   creation of Cisco's CLI command expressions. Cisco identified Kirk Lougheed as knowledgeable

14   about the creation of Cisco's CLI in its initial disclosures served on March 31, 2015, but Arista

15   waited for over 6 months until October 15, 2015 to even request his deposition. *See* Tung Decl.

16   Ex. 12 (Elizabeth McCloskey October 15, 2015 Letter). Similarly, Cisco identified Phillip

17   Remaker on September 28, 2015 as a CLI command expression developer having knowledge of

18   many of the same subjects as Mr. Lougheed, but Arista has not requested Mr. Remaker's

19   deposition. Arista similarly has never served a corporate 30(b)(6) deposition notice on Cisco with

20   CLI-related topics, yet that type of deposition would plainly be a useful tool for obtaining

21   information about a company's copyrighted works for hire.    *See* Tung Decl. at ¶ 24.    Arista

22   similarly has failed to inspect ***any*** of the source code records or change logs that Cisco identified

23   as containing information about the creation of its CLI command expressions. *See* Tung Decl. at ¶

24   24.

25

26       [6]    For example, to date Cisco has produced 1,329,754 pages of documents (not including

27   documents produced in native format or documents produced from the parallel ITC investigations
     of Arista). *See* Tung Decl. at ¶ 26. Cisco has produced such documents after not objecting to a

28   nineteen-page list of search terms provided by Arista.

1    Arista also delayed pursuing patent-related discovery. The inventors of Cisco's patents

2  have been known to Arista at least since Cisco filed its original Complaint on December 5, 2014.

3  *See* Dkt. 1. Yet Arista waited more than nine months, until September 14, 2015, to request any of

4  their depositions—only to initially demand that all inventors be produced for deposition (subject

5  to Arista's deposition prerequisites described above) within one month.[7]  *See* Tung Decl. Ex. 13

6  (David J. Rosen September 14, 2015 email). Arista did not initially request documents for '886

7  Patent inventor Tjong until October 16—which documents Arista insisted Cisco must produce

8  before the deposition could proceed. *See* Tung Decl. Ex. 14 (Elizabeth McCloskey November 16,

9  2015 email). And Arista did not finalize its list of search terms until October 21, 2015. *See* Tung

10  Decl. Ex. 15 (David J. Rosen October 21, 2015 email). Notwithstanding these obstacles, Cisco

11  completed Mr. Tjong's document production and Arista deposed him on November 11.[8]  Tung

12  Decl. at ¶ 25.    In addition, Cisco has worked with Arista to schedule inventor depositions and has

13  satisfied all outstanding requests for inventor depositions.    *See* Tung Decl. ¶ 25. This includes the

14  deposition of Mr. Tjong, a topic that was raised at the Court's recent hearing, which originally had

15  been scheduled to relate to the claim construction hearing but which Arista turned into a request to

16  delay the copyright case, stay the patent case, and to massively expand deposition discovery.

17    Arista similarly has delayed pursuing discovery on the other issues raised in its Discovery

18  Plan. With respect to lost profits and copyright misuse, Arista has had access to the documents it

19  claims are relevant since at least July 21, 2015. *See, e.g.*, Dkt. 108 at Exs. D-H; Tung Decl. at Ex.

20  16 (July 21, 2015 document production letter). But despite knowing about these documents for

21  more than four months, Arista has not noticed a single one of the depositions that it claims it will

22

----

23    [7]    Arista has deposed one inventor on each of Cisco's asserted patents. While Arista recently
24  indicated in its Discovery Plan that it intends to depose at least two additional inventors (*see* Dkt.
     108), it has not yet identified those inventors or requested dates for their depositions.

25    [8]    During that time, Cisco also complied with Arista's demands that Cisco provide a
     privilege log for invention-related documents and a supplemental response to interrogatories
26  regarding conception and reduction to practice, as well as differences between the patent and prior
     art. *See* Tung Decl. Ex. 17 (Peter Klivans October 30, 2015 letter). Despite insisting on them,
27  Arista did not use either the privilege log or the supplemental responses at the inventor depositions
     it has taken.

28

1    need to investigate the issues to which these documents allegedly pertain. Indeed, Arista has not

2    even identified any individuals it would propose to depose on these subjects.

3          In sum, Arista has repeatedly made baseless allegations in Court that Cisco is dragging its

4    feet in discovery; however, the factual record makes clear that Cisco is complying with discovery

5    demands as they are made, and in no event is there any basis for massively expanding depositions

6    discovery to allow sixty depositions, let alone to allow that unnecessary increase in turn to be a

7    reason to substantially delay trial in this case which is now eleven months old.

8          **E.      Arista's Vague Discovery Plan**

9          Vagueness permeates the Discovery Plan Arista filed with this Court on November 12.

10   Addressing the one issue that Arista discussed in any detail in its Motion—the originality of

11   Cisco's CLI command expressions—the Court stated at the Case Management Conference that it

12   would "need to see a thorough plan on these depositions if you're suggesting the authors have

13   anything to add." *See* Tung Decl. Ex. 18 (November 5, 2015 Hearing Tr.) at 17:4-6. But Arista did

14   not provide the "thorough plan" the Court requested.

15         Arista's November 12 Discovery Plan identifies twenty-five individuals that Arista intends

16   to depose out of the sixty depositions it is asking the Court to authorize each side to take. *See* Dkt.

17   108. All twenty-five names allegedly relate to the originality of Cisco's CLI. In sentence

18   fragments, Arista alleges that ten of these individuals are relevant to the originality of certain CLI

19   command expressions or to Cisco's CLI more generally. *See id.* at 3-4. For the other fifteen

20   individuals identified by name, Arista provides no specifics about the information they possess.

21   *See id.* at 3, fn. 2. Arista makes no attempt to explain why these individuals have unique

22   information that cannot be discerned from Cisco's interrogatory responses, Cisco's document

23   production, 30(b)(6) testimony on relevant topics, or public documents concerning Internet

24   standards that Arista cites in its defense. Nor does Arista explain how these twenty-five

25   individuals possess non-overlapping information. And Arista does not identify the other fifteen

26   witnesses related to the creation of Cisco's command expressions whose depositions it is

27   apparently seeking.

28

1    Arista's "plan" with respect to the other issues it raises—lost sales, patent invention, fair

2    use, equitable defenses, prior art, and corporate testimony—is sparser. Arista does not identify a

3    single specific individual it would depose on any of these issues or how those unspecified

4    individuals' testimony might resolve an issue in this case. *See* Dkt. 108 at 4-6.

5    In addition to numerous depositions, Arista's proposed Discovery Plan includes a new and

6    equally vague request for five additional interrogatories. *See* Dkt. 108 at 6. But Arista does not

7    explain why its currently remaining six interrogatories are insufficient, or what information it

8    would pursue with five additional interrogatories. *See id.*

9    Arista's Discovery Plan also lacks a proposed schedule. Arista does not explain why it

10    would not be possible to complete additional depositions it purportedly needs within the current

11    discovery schedule.   Arista's plan seems to be that it would like a blank check to pursue a

12    massive increase in depositions.

### III.   LEGAL STANDARD

14    A scheduling order may only be amended by the Court on a showing of "good cause." Fed.

15    R. Civ. P. 16(b)(4). "Good cause" means the deadlines in the scheduling order "cannot reasonably

16    be met despite the diligence of the party seeking the extension." *Parapluie, Inc. v. Mills*, 555 F.

17    App'x 679, 682-83 (9th Cir. 2014) (quoting *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604,

18    609 (9th Cir. 1992)). Thus, if the moving party "was not diligent, the inquiry should end." *In re W.*

19    *States Wholesale Natural Gas Antitrust Litig.*, 715 F.3d 716, 737 (9th Cir. 2013) *aff'd sub nom.*

20    *Oneok, Inc. v. Learjet, Inc.*, 135 S. Ct. 1591, 191 L. Ed. 2d 511 (2015) (quoting *Johnson*, 975 F.2d

21    at 609). The potential prejudice to the non-moving party that would be caused by delay supplies an

22    additional reason for denying a motion to amend a scheduling order. *Ducey v. Meyers*, 144 F.

23    App'x 619, 621 (9th Cir. 2005) (citing *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1295 (9th

24    Cir. 2000)); *see also Herring v. Veterans Admin.,* 76 F.3d 386 (9th Cir. 1996) (affirming order that

25    denied amendment of schedule because of prejudice to non-moving party and "undue delay in the

26    resolution of this case").

27    A similar set of considerations applies to requests to stay a patent case pending

28    administrative review of the patent. Specifically, courts must consider the progress of the case, the

1    likelihood that the Patent Office proceedings will simplify the proceedings, and any prejudice to

2    the nonmoving party. *See, e.g.*, *Sage Electrochromics, Inc. v. View, Inc.*, No. 12-cv-06441-JST,

3    2015 U.S. Dist. LEXIS 1056, at *5-*6 (N.D. Cal. Jan. 5, 2015).

4          The Federal Rules of Civil Procedure provide presumptive limits on the number of

5    depositions (10) and interrogatories (25) per party. *See* Fed. R. Civ. P. 30(a)(2); Fed. R. Civ. P.

6    33(a)(1). Whether to grant parties leave to exceed these limits must be determined in light of the

7    proportionality requirements of Fed. R. Civ. P. 26(b). *See id.*

8    **IV.    ARGUMENT**

9          **A.    There Is No "Good Cause" for Delaying Cisco's Copyright Claims.**

10          Rather than attempting to work within the confines of the Court's scheduling order, Arista

11    has created a vague Discovery Plan that does not even purport to fit within the allotted discovery

12    period—after waiting months to begin seeking the depositions and other discovery it now claims

13    to need. This is not "good cause" for delaying the trial of Cisco's claims against Arista's

14    admittedly "slavish" copying of Cisco's CLI. *See Escandon v. Los Angeles Cty.*, 584 F. App'x

15    517, 519-20 (9th Cir. 2014) *cert. denied sub nom. Escandon v. Los Angeles Cty., Cal.*, 135 S. Ct.

16    1506, 191 L. Ed. 2d 432 (2015) (schedule modification was inappropriate in light of "multiple

17    month delay in propounding any discovery."); *Hofstetter v. Chase Home Fin., LLC*, No. C 10-

18    01313, 2011 WL 2462235, at *1 (N.D. Cal. June 21, 2011) ("Good cause requires diligence by the

19    moving party.").

20                **1.    The Scope of Cisco's Case Has Not Expanded**

21          Arista asserts that Cisco's copyright claims should be delayed because its discovery needs

22    in this case have "expanded" in ways that it could not have foreseen at the time of the Initial Case

23    Management Conference, when the parties and the Court worked out a scheduling framework to

24    govern this case. Mot. at 2. But neither the scope of Cisco's claims nor Arista's defenses have

25    expanded one bit since this case was filed. Indeed, given Arista's choice to "slavishly" copy

26    Cisco's CLI, it knew the extent of Cisco's copying allegations before the case began. *See* Packet

27    Pushers Podcast.

28

OPPOSITION TO MOTION TO AMEND SCHEDULING ORDER
Case No.3:14-cv-05344-BLF

Cisco's original complaint served last December amply detailed the scope of its copyright infringement allegations in its complaint, and those allegations remain unchanged. The 26 copyrighted works in dispute today are the same 26 copyrighted works that Cisco asserted when it filed this case in December 2014. *See* Sections I and II.A, *supra*. The approximately 500 multi-word command expressions and their hierarchies, command modes and prompts, screen displays, and product documentation copied by Arista from those works and identified in Cisco's Complaint are the same command expressions and hierarchies that remain disputed today. *See id.* Nearly a year after Cisco filed its detailed complaint, Arista cannot tenably claim surprise at the scope of Cisco's infringement allegations.

Nor can Arista believably assert that it did not know that Cisco's copyrighted works were created by many engineers over many years. Not only did the original allegations make that clear, virtually Arista's entire executive team—along with many members of its technical and sales staffs—are former Cisco employees. Those individuals must have been aware of the considerable work that went into creating Cisco's copyrighted operating systems, including the CLI. Arista's own CEO confirmed as much when she stated that it would take "15 years and 15,000 engineers" to develop its own technology to compete with Cisco. *See* Tung Decl. Ex. 7 (Fortune article). As a more pointed example, Arista's Vice President of Engineering, Adam Sweeney, participated in Cisco's "Parser Police" mailing list when he worked for Cisco—which was a sounding board for the creators of Cisco CLI command expressions. *See* Tung Decl. Ex. 19 (Adam Sweeney July 12, 2010 email). In fact, Mr. Sweeney recounted his experience on the Parser Police list in an internal Arista discussion about just how "slavishly" Arista should copy Cisco's work. *See id.* Given that Arista's own founders and engineers were aware of and involved in CLI creation at Cisco, they do not need sixty depositions to explore its originality. And in any event nothing has changed since the original case was filed and the schedule was previously set to justify now making these massive changes to the case schedule and scope of discovery. *Pete v. City of Oakland*, No. C 09-06097 WHA, 2010 WL 4279455, at *2 (N.D. Cal. Oct. 22, 2010) (amending a scheduling order is not justified when the facts justifying the amendment were known at outset of the case).

1    Cisco also expressly described the creative effort that went into developing its CLI in its

2    December 2014 Complaint, as Arista's counsel has acknowledged. *See* Tung Decl. Ex. 10

3    (September 30, 2015 Hearing Tr.) at 9:2-5. To the extent that Arista claims it needs to undertake a

4    microscopic examination of the process by which every individual command expression from

5    Cisco's CLI that Arista chose to copy was created, about which Cisco strongly disagrees, it could

6    have raised that issue with the Court at the Initial Case Management Conference. Instead, Arista

7    stated (jointly with Cisco) that it did not believe this case would require any expansion of the

8    default limits on discovery from the Federal Rules of Civil Procedure. *See* Dkt. 43 at 6. Moreover,

9    this is a baseless fishing expedition not tied to the facts of this case and is purely an effort by

10    Arista to impart delay. Arista here copied "slavishly" the hierarchical arrangement of the CLI

11    commands, the command modes and prompts, and their screen displays (plus manuals down to

12    typographical errors). This case is not about copying one command expression at a time. And

13    given the massive copying by Arista of Cisco's CLI, the creation of which was known to Arista,

14    Arista surely should have been prepared to defend its behavior, which plainly it is not.

15    The scope of Cisco's patent claims also has not expanded since Cisco filed its Complaint.

16    The same two patents that Cisco asserted in December 2014 remain at issue today. *See* Dkt. 1. If

17    anything, Cisco's patent case has ***narrowed*** in light of Cisco's agreement to voluntarily drop some

18    asserted claims. *See* Ex. 20 (Cisco's Preliminary Election of Asserted Claims). Surely this cannot

19    provide any justification for extending the schedule. *See Pete*, 2010 WL 4279455, at *2

20    The scope of Arista's defenses also was known to Arista from the beginning of this case.

21    Arista alleged lack of originality, fair use, copyright misuse, and other equitable defenses to

22    Cisco's copyright claims in its original answer filed on February 13, 2015. *See* Dkt. 36. Arista

23    similarly asserted that Cisco's patent claims are invalid. *See id.* To the extent that Arista claims it

24    needs to take wide-ranging discovery to support those defenses, it knew that when it agreed to the

25    default limits on discovery in this case. *See* Dkt. 43 at 6. There is nothing new about Cisco's

26    claims, or Arista's defenses, that would warrant the Court revisiting its scheduling order to permit

27    additional discovery. *See Pete*, 2010 WL 4279455, at *2

28    **2.    <u>Arista Is Responsible for Its Delays in Seeking Discovery</u>**

1   Given that Arista knew the scope of Cisco's claims and Arista's purported defenses long

2   ago, Arista should promptly have sought the discovery it claims to need. Even Arista

3   acknowledges that a party seeking to amend a scheduling order must demonstrate that it acted

4   diligently in order to justify its proposed amendment. Mot. at 7 (citing *Johnson v. Mammoth*

5   *Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992)). But Arista can make no such showing of

6   diligence here, which is fatal to its request for a delay.

7   As demonstrated above, Arista was on notice of the scope of Cisco's claims and Arista's

8   defenses at least from the outset of this case. Yet Arista consistently delayed serving requests for

9   discovery that it now claims is vital. For example, Arista waited nearly four months from the day

10   discovery opened to serve its Interrogatory No. 16, which sought fine-grained details about the

11   creation of each of Cisco's copyrighted command expressions. *See* Tung Decl. Ex. 22 at 4.

12   Similarly, Arista waited more than six months after Cisco identified Kirk Lougheed as

13   knowledgeable about the creation of Cisco's CLI before even requesting his deposition. *See*

14   Section II.D, *supra.* And Arista still has not so much as served a single 30(b)(6) corporate

15   deposition notice relevant to CLI and copyrights. *See id*. Arista waited nine months after Cisco

16   filed its Complaint before requesting the depositions of any of the named inventors on Cisco's

17   patents. *See id.* And Arista's delays persist: Arista still has not requested dates for the depositions

18   of any witnesses related to Cisco's lost sales, any patent inventors other than the two who have

19   already been deposed, any witnesses relevant to Arista's fair use defense, any witnesses related to

20   copyright misuse or other equitable defenses, any "prior art" witnesses, or any 30(b)(6) witnesses.[9]

21   Arista's assertion that it needs at least another five months to conduct discovery rings hollow in

22   light of the fact that it waited at least that long before even requesting such discovery. Arista has

23   not been diligent. *See Caso v. Hartford Cas. Ins. Co.,* No. S-07-101 FCD/DAD, 2008 WL 449676,

24   at *2 (E.D. Cal. Feb. 15, 2008) (schedule modification is inappropriate where "plaintiffs' counsel

25

26   ————————————

27   [9]   Cisco is willing to meet and confer with Arista regarding limiting the scope of deposition testimony pursuant to Rule 30(b)(6), at which time the parties can discuss Arista's proposed 28-hour limitation. *See* Dkt. 108 at 6.

28

1  simply failed to review, with the requisite degree of detail, [defendant's] initial document

2  production."); *see also Escandon v. Los Angeles Cty.*, 584 F. App'x 517, 519-20 (9th Cir. 2014)

3  *cert. denied sub nom. Escandon v. Los Angeles Cty., Cal.*, 135 S. Ct. 1506, 191 L. Ed. 2d 432

4  (2015) (schedule modification was inappropriate in light of "multiple month delay in propounding

5  any discovery.").

### 3. <u>Cisco Would Be Severely Prejudiced by Any Delay</u>

7       While Arista's lack of diligence is a sufficient basis to deny its request to amend the

8  schedule, the prejudice to Cisco that such a delay would impose provides an additional basis for

9  denying Arista's motion. Arista should not be permitted to continue using Cisco's patented and

10  copyrighted technology against Cisco while Arista attempts to create a defense for its deliberate

11  "slavish" copying.

12       As an initial matter, the Court indicated during the November 5 Case Management

13  Conference that any delay of the trial in this case would likely be at least a year.[10]  *See* Tung Decl.

14  Ex. 18 (November 5, 2015 Hearing Tr.) at 6:10-11, 26:8-17. Arista's assertion that it is seeking

15  only a five-month delay is therefore moot and not even genuine given that the Court originally

16  told the parties about the busy trial schedule when initially setting the trial calendar for this matter.

17  Tung Decl. Ex. 21 (May 14, 2015 Hearing Tr.) at 9:4-10:13.

18       Arista ignores the harm that would befall Cisco during any period of delay. Arista and

19  Cisco are direct competitors. *See Avago Techs. Fiber IP (Singapore) Pte. Ltd. v. IPtronics Inc.*,

20  No. 10-CV-02863-EJD, 2011 WL 3267768, at *5 (N.D. Cal. July 28, 2011) (citing *Acumed LLC v.*

21  *Stryker Corp.,* 551 F.3d 1323, 1327–28 (Fed.Cir.2008)). Arista brags that it has "slavishly" copied

22  Cisco's CLI to convert Cisco's customers. *See* Packet Pushers Podcast; *see also* Tung Decl. Ex. 5

23  (Network World article) (proclaiming that "a Cisco CCIE expert would be able to use Arista right

24  away, because we have similar command-line interfaces and operational look and feel"); Tung

25  

26       [10]  Although the Court also indicated that there may be a window for trial in November 2016,
which would constitute a three-month delay, it was not clear that was actually a viable proposal.

27  *See* Tung Decl. Ex. 18 (November 5, 2015 Hearing Tr.) at 27:15-20. In any case, Arista cannot
explain why the Court should be forced to re-jigger its schedule despite Arista's lack of diligence.

28

Decl. Ex. 9 (Duda article) (explaining that "80% [of Arista customers] tell us they appreciate the way they can leverage their deep [Cisco] IOS experience, as they can easily upgrade an aging [Cisco] Catalyst infrastructure to Arista."). Indeed, Arista reports its market share gains by contrasting its gains with Cisco's market share losses. *See, e.g.*, Tung Decl. Ex. 1 (Arista Q3 2015 Earnings Highlights) at 6. And this direct competition with Cisco is the foundation of Arista's operations; Arista is specifically targeting Cisco's existing and potential customers by advertising its copying of Cisco's CLI. *See* Section II.B, *supra*.

By Arista's own admission, "it's almost Arista's entire business accused in this case." *See* Tung Decl. Ex. 10 (September 30, 2015 Hearing Tr.) at 35:9-10. And the effects of Arista's infringing sales go beyond short-term fiscal returns. As Arista acknowledges, the sales cycle for data center customers lasts for two years or more; an initial sale can lead to a years-long relationship with a customer. Tung Decl. Ex. 1 at 20. The harm to Cisco from delaying this case— and permitting Arista's alleged infringement to continue—will be enormous, and will persist for years to come.

Arista attempts to brush aside the harm to Cisco that a delay would cause by claiming that Cisco waited to assert its rights. But Cisco filed suit soon after it learned of copying following comments from Arista's CEO indicating Arista's infringement. And Arista's attempt to minimize the harm Arista's infringement inflicts on Cisco fails for a legal reason as well: The only case Arista cites to support its claim that the Court may ignore the harm that would result to Cisco during a delay was expressly based on the fact that the parties there were "not competitors" and the plaintiff did "not risk irreparable harm by defendants' continued use of the accused technology." *See Software Rights Archive, LLC v. Facebook, Inc.*, No. C-12-3970 RMW, 2013 WL 5225522, at *6 (N.D. Cal. Sep. 17, 2013). That is not the case here, where Arista is marketing its accused products every day with the goal of taking long-term customer relationships from Cisco. This prejudice to Cisco provides an additional reason to deny Arista's Motion.

### B.  <u>Arista Has Not Justified Its Requests for Additional Discovery</u>

Arista tries to justify its requests by seeking a massive departure from the amount of discovery provided for in this case and allowed in federal cases. The parties agreed in their initial

Joint Case Management Statement that none of the discovery limits imposed by the Federal Rules of Civil Procedure needed to be changed for this case. *See* Dkt. 43 at 6. Given the broad discovery that has taken place in two pending ITC actions already, it's sensible that the parties did not request departures from the discovery provided by the Federal Rules.    Despite the fact that Cisco has asserted no new copyright or patent claims and Arista has asserted no new defenses since the Joint Case Management Statement was filed, Arista now claims it needs *fifty* additional depositions and *five* additional interrogatories beyond the limits of the discovery rules. There is no basis for these outlandish requests and the wasteful costs they would impose. They are being presented to prop up a reason to try to postpone a trial in this case, plain and simple.

> 1.    **Arista's Request for Dozens of Depositions Is Baseless and Impractical**

Rule 30 limits each side to ten depositions. Fed. R. Civ. P. 30(a)(2). "A party seeking to exceed the presumptive number of depositions must make a particularized showing of the need for the additional discovery." *Authentec, Inc. v. Atrua Techs., Inc.*, No. C 08-1423 PJH, 2008 WL 5120767, at *1 (N.D. Cal. Dec. 4, 2008). The additional depositions "must be justified under the 'benefits vs. burdens' approach of Rule 26(b)(2)." *Id.* (citing Advisory Comm. Notes to Rule 30(a)(2)).

Arista's request for *six times* the number of depositions permitted by Rule 30 is unwarranted. "Having taken not a single deposition [of a command expression author] to date, [Arista] cannot possibly know what information it needs but cannot obtain from its 10 permitted depositions." *Id.*, at *2. Arista has not yet deposed either of the two engineers that Cisco identified as most knowledgeable about its creative process for its copyrighted works. Nor has Arista served a 30(b)(6) deposition notice which is a well-known discovery tool for asking a company to provide responsive information about facts known to the company such as facts relating to copyrighted works made for hire belonging to a company. While Cisco is willing to meet and confer with Arista regarding the need for additional depositions at an appropriate time, there is no basis for Arista's precipitous request for a "blank check" to explode the ten-deposition limit of Rule 30.

1    Although courts will on rare occasion grant additional depositions before a party has

2  exceeded the ten depositions permitted by Rule 30, that is the exception, and it does not apply

3  here. Even *Oracle v. Google*[11] did not allow the volume of discovery Arista seeks here, permitting

4  no more than 16 depositions per side.

5    Arista's request for sixty depositions, including at least forty to test the originality of

6  individual CLI command expressions, also is not tied to the actual issues in the case. This case is

7  not about Arista's copying of command expressions alone. Cisco's infringement allegations detail

8  the breadth of Arista's use of Cisco's CLI, including not just the command expressions, but also

9  their hierarchies, command modes, command prompts, and command outputs, along with Cisco's

10  supporting product documentation. *See* Dkt. 1. Importantly, Cisco alleges that Arista also copied

11  Cisco's creative organization of its command expressions—which provides an independent basis

12  for Cisco's infringement case even if individual command expressions were somehow found not

13  to be original. *See, e.g.*, *Brocade Communications Sys., Inc. v. A10 Networks, Inc.*, No. C 10-3428

14  PSG, 2013 WL 831528, at *5 (N.D. Cal. Jan. 10, 2013) ("Copyright can and does protect creative

15  expression even of features that are themselves unprotectable."); *Secureinfo Corp. v. Telos Corp.*,

16  387 F. Supp. 2d 593, 611 (E.D. Va. Sep. 9, 2005) ("Nonliteral elements of a computer program

17  may receive copyright protection even if they are individually unprotectable, if they are compiled

18  in a unique or creative way."). Devoting forty depositions to the originality of individual

19  command expressions is out-of-line with the significance of such individual expressions to this

20  case. It should be apparent that Arista is just looking to use this unnecessary, inefficient and

21  wasteful discovery expansion to excuse its request to delay.

22    In any event, Arista has not explained why the parties should be forced to expend such a

23  massive amount of resources on discovery addressed to that singular issue, or why the Court

24  should be forced to adjust its schedule to accommodate this exaggerated discovery demand.

25

26

27    [11]  *Oracle America, Inc. v. Google, Inc.*, No. 10-03561 (N.D. Cal. Nov. 18, 2010), Dkt. 56; *Id*. (July 21, 2011), Dkt. 229; *Id*. (Nov. 14, 2011), Dkt. 617 (permitting no more than 16 depositions per side).

28

1    Originality is a low bar. *See, e.g.*, *Feist Publications, Inc. v. Rural Telephone Service Co.*, 499

2    U.S. 340, 345 (1991) ("To be sure, the requisite level of creativity is extremely low; even a slight

3    amount will suffice."). And as the Court noted during the November 5 case management

4    conference, the originality of Cisco's CLI command expressions is "determined extrinsic to what

5    the authors are going to say." *See* Tung Decl. Ex. 18 (November 5, 2015 Hearing Tr.) at 17:3-4. It

6    is unclear what relevant information the individual developers of command expressions could

7    offer based on their subjective experiences.

8         Further, Cisco has provided ample evidence regarding the creative process by which its

9    original command expressions were developed, of which dozens of depositions would be

10   needlessly cumulative. Courts are generally reluctant to order numerous depositions where, as

11   here, the potential deponents have information that overlaps with written discovery or the

12   testimony of other deponents. *See, e.g.*, *Newport v. Burger King Corp.*, No. C-10-04511-WHA

13   DMR, 2011 WL 3607973, at *2 (N.D. Cal. Aug. 16, 2011) (permitting defendant to depose only

14   20 of 72 plaintiffs because their claims were similar and the plaintiffs had responded to written

15   discovery). Cisco has served thousands of documents regarding the creation of its command

16   expressions. *See* Section II.D, *supra*. It also has identified the key individuals most knowledgeable

17   about the process by which those command expressions were created. *See id.* This information is

18   plainly sufficient to explain the creative process employed by the large teams of engineers who

19   developed Cisco's CLI. *See Amer. Dental Assoc. v. Delta Dental Plans Assoc.*, 126 F.3d 977, 978-

20   79 (7th Cir. 1997) (reversing the district court finding that "as the work of a committee, the Code

21   could not be thought original" because "[c]reation by committee is an oxymoron" and holding

22   instead that "most commercial software these days is written by committee . . . these items are

23   routinely copyrighted, and challenges to the validity of these copyrights are routinely rejected").

24        With respect to issues other than originality, Arista has not identified—at all—any of the

25   other witnesses it would depose as part of its sixty depositions. Arista therefore has failed to

26   justify its request for a "blank check" to take dozens of depositions.

27             **2.**      **<u>Arista Has Not Justified Its New Request for Additional Interrogatories</u>**

28

1      In its November 12, 2015 Discovery Plan, Arista makes a previously unmentioned request

2  to increase the number of interrogatories permitted in this case from the default limit of twenty-

3  five to 30. Dkt. 108 at 6. Arista does not justify this request. Assuming none of its previous

4  interrogatories are compound, Arista has six unused interrogatories remaining. Arista does not

5  indicate what additional interrogatories it would serve beyond those six, to what issues additional

6  interrogatories would pertain, or why those interrogatories would be necessary. Arista's request

7  for additional interrogatories should therefore be denied.

8      Instead of explaining why it needs more interrogatories, Arista casts aspersions on Cisco's

9  responses to the already-served interrogatories. As described above, however, Cisco has provided

10  more than 1,500 pages of interrogatory responses and supporting exhibits. And Arista has moved

11  to compel responses to only two interrogatories, which Cisco already has gone to great effort to

12  supplement. In any event, Arista does not explain how its (unfounded) complaints about Cisco's

13  current interrogatory responses would justify issuing new interrogatories—especially in light of

14  Arista's previous agreement that the presumptive discovery limits of the Federal Rules of Civil

15  Procedure, including the 25-interrogatory limit of Rule 33, should apply in this case. *See* Dkt. 43

16  at 6.

17          **C.    Arista's Belated Requests for IPRs Does Not Justify a Stay**

18      Arista's request to stay the case pending IPRs is both tardy given the current case schedule

19  and premature given the lack of progress on the IPRs. One petition for IPR that is the basis for its

20  request has not even been filed, and the other was just filed. There is no decision from the PTAB

21  to institute any IPR let alone a relevant PTAB trial date. Further, Arista's request is inconsistent

22  with the fact that in connection with the original CMC, Cisco suggested a bifurcation with

23  copyright proceeding first, and Arista objected. *See* Tung Decl. Ex. 21 (May 14, 2015 Hearing Tr.)

24  at 3:5-9:3; 13:18-18:4. If Arista intended to seek IPRs so as to stay proceedings, the original CMC

25  would have been the time to schedule the case accordingly and the IPRs should have been

26  promptly filed.    Instead, the parties are now very far along in discovery with our *Markman*

27  hearing imminent, and there is no reason to veer off course now.

28

21

OPPOSITION TO MOTION TO AMEND SCHEDULING ORDER
Case No.3:14-cv-05344-BLF

1    The futility of Arista's proposal becomes clear when reviewing the factors courts consider

2 when determining whether to grant such a stay. These factors, including the progress of the case,

3 the likelihood of simplifying the issues and the prejudice to Cisco, all weigh against Arista's

4 alternative request for a stay. *See, e.g.*, *Sage Electrochromics*, 2015 U.S. Dist. LEXIS 1056, at *5-

5 *6.

### 1.    This Case Is Too Advanced to Be Stayed

7    This case is almost a year old and is far more advanced than Arista represents in its

8 Motion. *See* Mot. at 9. Our *Markman* hearing is imminent and discovery is well underway. The

9 parties have exchanged millions of pages of documents.[12]  *See* Section II.D, *supra*. Cisco and

10 Arista have exchanged initial infringement and invalidity contentions, as well as a round of

11 supplemental contentions. *See* Tung Decl. at ¶ 27. The parties have submitted their claim

12 constructions and claim construction briefing is nearly closed. Trial is set for August 2016.

13 Cisco's patent case is too far advanced to justify a delay now.

### 2.    A Stay Is Unlikely to Simplify the Issues

15    Given the advanced state of the case, granting a stay would do little to simplify the issues

16 or ease the burden on the parties. Arista has merely filed one request for an IPR targeting the '526

17 Patent. It has advertised, but not yet filed, its second petition against the '886 Patent. The PTAB is

18 not likely to decide even whether to institute one or both IPRs until at least May of 2016. Any

19 decision affecting the scope of Cisco's asserted claims would likely occur, if at all, at least a year

20 after that, in early 2017. The prospect that the PTAB will narrow the issues is purely speculative

21 and given the substantial delay by Arista in even seeking IPRs any PTAB decision would be far

22 after trial would be completed in this case. And, given that the only reference on which Arista's

23 only pending IPR request is based fails to include at least the "executing a plurality of

24 management programs" claim limitation that is found in every independent claim of the '526

25

26 ───────────────────

27    [12]    Arista's contrary assertion, that "few documents have been produced (other than pre-existing ITC productions" is inaccurate as it concerns Cisco. Cisco has produced more than a million pages of documents in this case alone. *See* Section II.D, *supra*.

28

OPPOSITION TO MOTION TO AMEND SCHEDULING ORDER
Case No.3:14-cv-05344-BLF

1   Patent, the possibility issues will eventually be narrowed by the PTAB is especially remote. This

2   Court has previously expressed "reluctan[ce] to derail an infringement action by a patentee against

3   a direct competitor when, as here, the Court can only speculate as to whether the PTAB will

4   institute IPR." *Hewlett-Packard Co. v. ServiceNow, Inc.*, No. 14-cv-0057-BLF, 2015 U.S. Dist.

5   LEXIS 47754, at *10 (N.D. Cal. Apr. 9, 2015).[13]

6          Granting Arista's stay also will not simplify the issues facing the parties or the Court while

7   they await the PTAB's decision(s). As Arista has acknowledged, both Cisco's copyright

8   infringement claims and its patent infringement claims are addressed to CLI technology. *See* Tung

9   Decl. Ex. 21 (May 14, 2015 Hearing Tr.) at 26:23-25. Cisco's copyright claims pertain to the

10  original expressions of Cisco's CLI; its patent claims relate to the technical implementation of its

11  products that relate to CLI. As such, discovery on Cisco's copyright claims will include discovery

12  into Cisco's CLI and Arista's infringing CLI regardless of whether the patent claims are stayed. If

13  anything, permitting both claims to proceed simultaneously will continue to generate discovery

14  efficiencies. As the Court noted during the recent case management conference, when stays are

15  granted based only on the fact that an IPR has been requested, "often, that's when those [patents]

16  are the only issues in the case." *See* Tung Decl. Ex. 18 (November 5, 2015 Hearing Tr.) at 24:6-

17  10.

### 3.      Cisco Would Be Prejudiced by a Stay

18

19         That Arista's proposed stay would result in prejudice to Cisco confirms that it should be

20  denied. Arista is using its accused products to take long-term customer relationships from Cisco

21  unfairly, threatening not just quantifiable short-term financial losses, but incalculable longer-term

22  market harm. *See* Section IV.A.3, *supra*. Given that Arista waited more than eleven months before

23

24

25

26  _____

27         [13]  In Cisco's ITC cases against Arista, Arista eventually filed IPRs but those were largely
    unsuccessful with the PTAB denying outright 5 of 7 IPR petitions from Arista.
28

1    even requesting its IPRs, the Court should not grant a stay that would reward Arista's delay and

2    prejudice Cisco.[14]

3    **V.    <u>CONCLUSION</u>**

4         For the foregoing reasons, Cisco respectfully requests that Arista's Motion be denied in its

5    entirety, so that this case can proceed to trial on the currently scheduled date.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

─────────────────

25    [14] Demonstrating Arista's fast-and-loose approach to the facts, Arista claims that its delay of

26    more than eleven months in petitioning for IPR "surpasses [the statutory one-year period allowed for filing IPRs] considerably." Mot. at 10. But slipping in its IPR one month before the deadline is

27    hardly "considerable," further demonstrating that the IPR(s) are a mere tactical ploy to obtain Arista's real goal—a delay of the case during which it can continue selling infringing products.

28

1

2   DATED: November 18, 2015                    Respectfully submitted,

3
                                                */s/ John M. Neukom*
4                                               _____

5                                               Kathleen Sullivan (SBN 242261)
                                                kathleensullivan@quinnemanuel.com
6                                               QUINN EMANUEL URQUHART &
                                                SULLIVAN LLP
7                                               51 Madison Avenue, 22nd Floor
                                                New York, NY 10010
8                                               Telephone: (212) 849-7000
                                                Facsimile: (212) 849-7100

9                                               Sean S. Pak (SBN 219032)
                                                seanpak@quinnemanuel.com
10                                              John M. Neukom (SBN 275887)
                                                johnneukom@quinnemanuel.com.
11                                              Matthew D. Cannon (SBN 252666)
                                                matthewcannon@quinnemanuel.com
12                                              QUINN EMANUEL URQUHART &
                                                SULLIVAN LLP
13                                              50 California Street, 22nd Floor
                                                San Francisco, CA 94111
14                                              Telephone: (415) 875-6600
                                                Facsimile: (415) 875-6700

15
                                                Mark Tung (SBN 245782)
16                                              marktung@quinnemanuel.com
                                                QUINN EMANUEL URQUHART &
17                                              SULLIVAN LLP
                                                555 Twin Dolphin Drive, 5th Floor
18                                              Redwood Shores, CA 94065
                                                Telephone: (650) 801-5000
19                                              Facsimile: (650) 801-5100

20                                              Steven Cherny *(admission pro hac vice
                                                pending)*
21                                              steven.cherny@kirkland.com
                                                KIRKLAND & ELLIS LLP
22                                              601 Lexington Avenue
                                                New York, New York 10022
23                                              Telephone: (212) 446-4800
                                                Facsimile: (212) 446-4900

24
                                                Adam R. Alper (SBN 196834)
25                                              adam.alper@kirkland.com
                                                KIRKLAND & ELLIS LLP
26                                              555 California Street
                                                San Francisco, California 94104
27                                              Telephone: (415) 439-1400
                                                Facsimile: (415) 439-1500

28

25
OPPOSITION TO MOTION TO AMEND SCHEDULING ORDER
Case No.3:14-cv-05344-BLF

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Michael W. De Vries (SBN 211001)
michael.devries@kirkland.com
KIRKLAND & ELLIS LLP
333 South Hope Street
Los Angeles, California 90071
Telephone: (213) 680-8400
Facsimile: (213) 680-8500

*Attorneys for Plaintiff Cisco Systems, Inc.*

OPPOSITION TO MOTION TO AMEND SCHEDULING ORDER
Case No.3:14-cv-05344-BLF