# EXHIBIT 21

Pages  1 - 42

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BEFORE THE HONORABLE BETH LABSON FREEMAN, JUDGE


CISCO SYSTEMS, INC.,            )
                                )
                Plaintiff,      )
                                )
        v.                      )   NO. C 14-05344 BLF
                                )
ARISTA NETWORKS, INC.,          )
                                )
                Defendant.      )   San Jose, California
_____)   Thursday, May 14, 2015

**TRANSCRIPT OF OFFICIAL ELECTRONIC SOUND RECORDING
OF PROCEEDINGS**

FTR 1:44 p.m. - 2:32 p.m. =  48 minutes

**APPEARANCES**:

For Plaintiff:          Quinn Emanuel Urquhart & Sullivan, LLP
                        50 California Street, 22nd floor
                        San Francisco, California  94111
                    BY: **SEAN SANG-CHUL PAK, ESQ.**
                        **JOHN M. NEUKOM, ESQ.**
                        **MATTHEW CANNON, ESQ.**

For Defendant:          Keker & Van Nest
                        633 Battery Street
                        San Francisco, California  94111-1809
                    BY: **BRIAN L. FERRALL, ESQ.**
                        **DAVID J. SILBERT, ESQ.**


ALSO PRESENT:  Neal A. Rubin, VP - Litigation, Cisco Systems,
Inc.; Leah Waterland, Director of Legal and IT Litigation,
Cisco Systems, Inc.; Sean Christofferson, Corporate Counsel for
Arista Networks, Inc.

Transcribed by:         Leo T. Mankiewicz, Transcriber
                        leomank@gmail.com
                        (415) 722-7045

1   Thursday, May 14, 2015

2                                                            1:44 p.m.

3                    P R O C E E D I N G S

4          THE CLERK:  Calling case 14-5344, Cisco Systems, Inc.

5   versus Arista Networks, Inc.

6          Counsel, please state your appearances.

7          MR. PAK:  Good afternoon, your Honor.  Sean Pak of

8   Quinn Emmanuel.  With me is my partner Jay Neukom, and we

9   represent Cisco.

10         THE COURT:  All right, Mr. Pak.

11         MR. PAK:  And with us also is Neal Rubin, who is the

12  Vice President of Litigation for Cisco --

13         THE COURT:  Oh, welcome.

14         MR. PAK:  -- and Leah Waterland, who is the Director

15  of IT.

16         THE COURT:  Welcome.

17         MR. FERRALL:  Good afternoon, your Honor.  Brian

18  Ferrall, Keker & Van Nest, on behalf of Arista.  My partner

19  David Silbert is with us, as well as Sean Christofferson,

20  in-house counsel at Arista, and our colleagues (inaudible).

21         THE COURT:  Thank you.  All right, well, I think we

22  have a little bit of work to do here.

23         MR. PAK:  Yes, your Honor.

24         THE COURT:  This is probably not one of those cases

25  I'll send you off until trial.  (Laughter).  Although that

1    would be nice.

2            **MR. PAK:**  We'll try to behave.

3            **THE COURT:**  I think this is the first of many of these

4    intimate gatherings, I think.

5            Well, my first observation about this case is that I'm

6    not -- you're going to have to do a lot to persuade me to

7    bifurcate and basically split this in two, to be two trials.

8    I don't see the benefit to the court in doing that, and as was

9    raised by the defense, some concern about putting the copyright

10   case along with the patent case, and the consequences of that.

11           So let's talk about bifurcation, because I actually

12   think then, Mr. Pak, that that drives the scheduling.

13           **MR. PAK:**  Yes, your Honor.  Happy to do that.  Your

14   Honor, we believe that this case is exceptional, in two ways.

15           First of all, when it comes to copyright infringement,

16   as with a lot of technology-based cases, you have lots of

17   expert discovery that goes into analyzing source code, or in

18   the context of command interfaces like this, there may be

19   disputes about whether there's an act of infringement.

20           For the most part, as you can see from our pleadings

21   as well as the documents that we've laid out, we don't think

22   there is actually going to be any question of fact as to the

23   act of copying.

24           Arista has admitted, in both judicial pleadings as

25   well as am statements by their executives publicly, the

1    commands that we have identified.  There are 500 multi-level

2    commands that make up the interface, are in use, they're in

3    use -- they have been in use for a long time with respect to

4    the products that we have accused.  They are also in use with

5    respect to new products that have been recently released.

6           Furthermore, your Honor, what also is exceptional is

7    that there are public statements by the very senior executives

8    at the company as to why such copying occurred.

9           The CEO of Arista, who was actually an executive at

10   Cisco and founded this company after leaving Cisco, has

11   publicly stated that they have developed this interface to be

12   similar to Cisco because, in her words, "What we don't have to

13   invent, we don't want to do," and specifically, the training is

14   very easy for the Arista products, because a Cisco expert in

15   this area will be able to use the Arista products right away,

16   as we have similar command line interfaces in the (inaudible)

17   you're looking for.

18          So really, if you think about a copyright case, on the

19   core issues of what is being copied and which products that use

20   that interface or copyrighted work we think will be -- has

21   already been largely decided by the judicial admissions and

22   those public statements.  So --

23          THE COURT:  I don't think Arista agrees with that

24   statement, but we'll find out from Mr. Ferrall.  (Laughter).

25          MR. PAK:  Well, and your Honor, I'm sure they will

1    respond in kind.  This is how we're looking at the case.

2         THE COURT:  Sure.

3         MR. PAK:  And we also would point your Honor to

4    various statements of admission from their pleadings.  So these

5    are, in their Answer, specifically paragraph 53 of the Answer

6    that they filed on February 13, 2015, where Arista admits that

7    it uses the IOS command expressions included in Exhibit 1 to

8    Cisco's Complaint.

9         Your Honor, that Exhibit 1 is where we compiled a

10    table identifying the 500 or so multi-command interfaces that

11    were copied, and there's a judicial admission in paragraph 53.

12         The statements that I just made on the record about

13    what their CEO said was also admitted in paragraph 46, and so

14    on, in their Answer.  I don't think there will be a dispute

15    about these things.

16         THE COURT:  Well, that sounds like you're lighting it

17    up for what, in your view, would be a very effective summary

18    judgment motion.

19         MR. PAK:  Potentially, your Honor, except we recognize

20    there may be factual issues in the copyright case --

21         THE COURT:  All right.

22         MR. PAK:  -- that go beyond just the infringement

23    issues.

24         THE COURT:  Okay.

25         MR. PAK:  Some that I believe that they have pled and

1  will try to present evidence on an affirmative defense of fair

2  use.

3         **THE COURT:**  Sure.

4         **MR. PAK:**  In (indecipherable).  We also know, your

5  Honor, that there is a legal issue of copyrightability, of

6  whether these interfaces are subject to copyright protection,

7  but again, that's a legal issue.  We think the factual defense

8  of fair use can also be presented, in abbreviated form.

9         And this really goes back to now why we are asking for

10  this bifurcation, with this context.

11         Your Honor, the best way we see it is, there are two

12  fundamental reasons why we think bifurcation makes sense in

13  this exceptional case:

14         One, we think that it will simplify the issues for the

15  jury, in the following manner.  We have copyright claims, we

16  also have patent claims, and they're directed to certain

17  features of this Arista infringing product.  We acknowledge

18  that there is subject matter overlap.  We acknowledge that many

19  of witnesses and discovery in this case would cut across both

20  the copyright and patent claims.  Hence we filed everything in

21  a single complaint.

22         **THE COURT:**  I guess here's one of my concerns, is that

23  certainly, the fewer issues for a jury, the easier it is for

24  them.  That's given.  But if I can have one two-week trial or

25  two two-week trials emanating from the same filing, it's not a

7

1    hard choice.

2            MR. PAK:  We acknowledge that --

3            THE COURT:  I mean, I don't even know why you filed --

4    why didn't you file these two patent infringement claims in the

5    other patent case?

6            MR. PAK:  Your Honor, those patent cases are now

7    subject to an ITC proceeding --

8            THE COURT:  Were all of those -- so I gathered from

9    your papers that all of those patents were in the parallel

10   proceedings, and these two are not.

11           MR. PAK:  That's right, your Honor.

12           THE COURT:  Okay.

13           MR. PAK:  And the reason why these two are not in that

14   case, as we have explained in some of the briefing at the ITC,

15   your Honor, is these are closely related.  We acknowledge that.

16   These are patents that are directed to the CLI functionality

17   and how the CLI functionality -- the copyright protects what

18   you see on the screen --

19           THE COURT:  Yes.

20           MR. PAK:  -- what the users see.  These patents go to

21   the underlying technology, in terms of the code, as to how we

22   enable that functionality to work.

23           So there is overlap here, we acknowledge that, and

24   that's the reason why brought this as a separate case.

25           However, your Honor, if I may, on the curing issue, we

1   are willing to simplify the case presentation of the copyright

2   case.  We are willing to put limits with respect to fact

3   discovery with respect to the copyright claims, and we think

4   that by having resolution of this issue in January, we will

5   have a multiple -- we'll have a set of multiple benefits.

6          One will be, we do think that it will simplify the

7   issues for the jury.

8          There's some damages issues here, your Honor.  If you

9   think about the subset of damages that overlap with the subset

10  of damages in the patent case, for example, lost profits,

11  I recently tried a case down in San Diego where we had a

12  copy -- a breach of contract claim, patent claim, lost profits

13  was an issue, and it was an exceedingly difficult process for

14  the lawyers, but most importantly, for the jury --

15          **THE COURT:**  Sure.

16          **MR. PAK:**  -- to work through a verdict form where they

17  had to allocate not only separate damages amounts, but

18  overlapping amounts, to ensure that there was no --

19          **THE COURT:**  Well, and it comes up in many fields.  It

20  can be more complicated here, but in much of -- in commercial

21  litigation --

22          **MR. PAK:**  Absolutely.

23          **THE COURT:**  -- it's very difficult.

24          **MR. PAK:**  Absolutely.  So this is one of the benefits

25  that, your Honor, that we see in trying the copyright case

1    where we have these admissions, from our perspective, that

2    allow us to put on a case, we think, in the January time frame,

3    that we could --

4            THE COURT:  I haven't -- let me just be clear.  I have

5    no trial availability until next August.

6            MR. PAK:  Ah, okay.

7            THE COURT:  It's just --

8            MR. PAK:  I see.

9            THE COURT:  See, I mean, I don't usually -- I don't

10   get cases that, at a first CMC, that are looking for trials

11   where it's so soon, but I schedule three a week, and I can't

12   schedule you as the fourth.  First, it's too expensive for your

13   client to be the last one trailing, but -- and that's just a

14   reality.

15           MR. PAK:  We appreciate that.  We appreciate that.

16           THE COURT:  So that may change things, I'm not sure.

17           MR. PAK:  Well, certainly if your Honor doesn't have

18   any availability until August, then we would be interested in

19   expediting the overall case --

20           THE COURT:  Right.

21           MR. PAK:  -- and delay that --

22           THE COURT:  I mean, I was looking at your dates, and

23   frankly, I do appreciate -- while I understand Arista's not in

24   agreement -- there you are, looking -- is not in agreement with

25   such an expedited schedule for the case, and I have to take

1  that into account as well, but some of the arguments that

2  Mr. Ferrall might have are moot because I'm not available, and

3  so he can certainly rest assured, and when I look at my

4  schedule, I'd be looking at late July and August for trial --

5            **MR. PAK:**  Yes, of 2016.

6            **THE COURT:**  -- of 2016.  I am not even available for

7  claims construction until February of 2016.  So that will --

8  I mean, ultimately, I think you two will have a great deal of

9  agreement on dates, because I've really resolved the problem

10  that the defendants had in their concerns about being ready for

11  trial.  I'm sorry.  You know, there's nothing I can do.

12            **MR. PAK:**  No, we understand.  We understand, your

13  Honor, and we understand.

14            **THE COURT:**  Okay.  Well, you make a good point on the

15  issues.  They actually -- I mean, I certainly recognize they

16  are distinct issues, and it does divide.

17            Let me tell you some things, though.  This is one

18  case, and I can't treat it as two cases and double everything

19  that gets done, and so if I bifurcate for trial and then you

20  want to bifurcate some work for discovery, I would imagine, to

21  the extent you wanted separate motions for summary judgment on

22  the two halves of the case, I would limit your pages to 15 for

23  each.  I mean, we're not going to blow this up.

24            So, you know, those are just the realities of what

25  you're suggesting, and I recognize that what -- I think what

1    you're suggesting makes some good sense, and frankly, it will

2    be easier for me, as well, to deal with these distinct issues,

3    let alone the jury, and I know it's easier for the jury.

4            MR. PAK:  Yes, your Honor.  Let us think about this,

5    your Honor.  We didn't consider the possibility --

6            THE COURT:  Right.

7            MR. PAK:  -- of doing something in --

8            THE COURT:  I know.

9            MR. PAK:  -- late July, on a consolidated basis, our a

10   copyright case, but your Honor, we do -- at the end of the day,

11   we have no interest whatsoever in creating any unnecessary work

12   or doing duplication of discovery --

13           THE COURT:  Sure.

14           MR. PAK:  -- or any kind of motion practice --

15           THE COURT:  What I'm thinking here, Mr. Pak, is that

16   if you -- you would have two juries in this case then, wouldn't

17   you?

18           MR. PAK:  If we did the bifurcation, but with the July

19   schedule, your Honor, it may make sense.  We'll confer with

20   Mr. Ferrall on that theme, but that might give us enough room,

21   frankly, to be able to -- if we work hard enough, and I think

22   that there are issues of common ground, and I have no interest

23   in taking unnecessary discovery.  There's actually quite a bit

24   of discovery that the parties are already engaged in, which is

25   another issue that we'll have to --

1        **THE COURT:**  All right, then, we'll have to deal with

2   that --

3        **MR. PAK:**  -- deal with on cross-use, but there's a

4   significant amount of discovery that that's happening right

5   now -- millions of pages have been produced, dozens of

6   witnesses are being deposed -- that would allow us, we think,

7   to move this case along quickly, and I think that if your

8   Honor's earliest availability is late July, early August,

9   I think we could work lard to try to put everything together --

10        **THE COURT:**  And have a single trial --

11        **MR. PAK:**  A single trial --

12        **THE COURT:**  And, you know, as I said, I'm not opposed

13   to bifurcating it for trial because, I mean, there are

14   scenarios where we would empanel a jury for the entire trial,

15   but have two separate parts.  I don't know if it will make

16   sense, ultimately.  I don't think it will --

17        **MR. PAK:**  I don't think so, either, your Honor.

18        **THE COURT:**  -- so, but I can't give you that quick

19   trial on the copyright --

20        **MR. PAK:**  Your Honor, let us, in light of, we didn't

21   understand your Honor's availability --

22        **THE COURT:**  Yeah.

23        **MR. PAK:**  -- when we were setting it up.  Let us

24   revise our request.

25        **THE COURT:**  All right.

1      **MR. PAK:**  Our request would be, for some of the same

2  reasons that we set forth today, and also in our papers --

3      **THE COURT:**  Yeah.

4      **MR. PAK:**  -- we do think that we don't need to wait

5  until 2017 to try this case.

6      **THE COURT:**  Okay.

7      **MR. PAK:**  We would prefer to try the case in late

8  July, early August, with your Honor's availability --

9      **THE COURT:**  Yeah.

10      **MR. PAK:**  -- and we would work hard to consolidate

11  these issues and avoid unnecessary discovery, and get the case

12  ready to try both the copyright and the patent claims.

13      **THE COURT:**  All right.  All right.  Okay, well, that

14  kind of cuts to and solves -- I wouldn't say solves, but brings

15  clarity to that part of it, and I -- you know, as I said, it

16  would be nice if I had more trial availability, but I just

17  don't.

18      So let me hear from Mr. Ferrall on this part of it.

19  We do need to talk about the discovery issue.  I was a little

20  bit concerned about that.

21      So Mr. Ferrall, this may have been good news for you.

22      **MR. FERRALL:**  Yes, thank you.  Thank you for

23  clarifying a number of those things.  But I do think, on

24  bifurcation, just a couple -- I've never had a case where,

25  before the case even gets under way, the plaintiff seeks to

1    bifurcate its own complaint.

2         **THE COURT:**  Yeah.

3         **MR. FERRALL:**  I mean, obviously, it could have brought

4    these patent claims separately if it said that they need two

5    different trials, and it could have related the two cases to

6    you.  It could have done a lot of things at the outset, and as

7    I said, our suspicion is it's because they think that the

8    Federal Circuit is more favorable to it for the copyright law

9    than the Ninth Circuit, and by adding these claims together,

10   that's what they assured themselves, that the case will go to

11   the Federal Circuit if it's appealed.

12        But regardless, be that as it may, I think it's far

13   too early to make a decision about bifurcation.

14        **THE COURT:**  Yeah.

15        **MR. FERRALL:**  Let's see what's left of this case in

16   eight, nine months or something like that, and we can present

17   it then.

18        And I also would suggest that if we're going to make

19   decisions about bifurcation, especially if parties don't agree,

20   that it be brought by motion under 42(b), as it should be, and

21   they have to make a showing about prejudice and economy and so

22   forth.

23        So as for the schedule, let's back up a little bit and

24   let me give you the Arista perspective --

25        **THE COURT:**  Okay.

1    **MR. FERRALL:**  -- of this case for a moment, which is,

2    in large part, actually in agreement with a number of things

3    that Mr. Pak said, which is that Arista has been around for a

4    while, 10 years.

5         **THE COURT:**  Yes.

6         **MR. FERRALL:**  The commands, the so-called Command Line

7    Interface, which is actually just sort of the format for

8    entering commands into these switches, and then the commands

9    themselves are what's used in this format, of CLI, or Command

10   Line Interface, those have been in use for many years, so --

11   and public use.

12        This is not a surprise that just, you know, appeared

13   last fall.  It's been around for a long time, and in fact,

14   Cisco has been referring to these commands as standards, as

15   conventional and so forth, for a long time and never said

16   anything about anyone else, not just Arista but a lot of other

17   companies, using these commands.

18        So the idea that there would be a rush to judgment on

19   the copyright claim defies five, six --

20        **THE COURT:**  Sure.

21        **MR. FERRALL:**  -- seven years of actual practice in the

22   marketplace.  So that's the history.

23        But the case itself, obviously, has been filed for a

24   little bit, and we -- by the way, we have a motion to dismiss

25   on file before trial --

1              **THE COURT:**  I know, that's coming up, yeah.

2          **MR. FERRALL:**  -- but that's just as to a part of their

3      own complaint.

4              **THE COURT:**  Right.

5          **MR. FERRALL:**  The case is ultimately about what is

6      their copyrighted work, and here is where, as some of my

7      colleagues would say, the rabbit goes into the hat.

8              They've attached 30 copyright registrations, and

9      that's their asserted copyrighted work, and that's ultimately

10     what this case is going to come down to.  Those 30 copyright

11     registrations -- maybe there are a few exceptions, but they

12     mostly refer to the software, the source code, for their

13     operating system.

14             Now, this is -- I don't know, because I've never seen

15     it, and I don't know that anyone has seen it other than this --

16     but it's likely millions or tens of millions of lines long

17     each.  Each.  And there's 30 of them.

18             **THE COURT:**  Yeah.

19         **MR. FERRALL:**  And we need to understand -- and by the

20     way, not one of them has been produced in the case yet.  So the

21     thing that they're suing on has not been produced, and so

22     obviously, there's a lot of work to be done.

23             Is the fact that Arista has software that responds to

24     these commands, is that known?  Yeah, that's been known for a

25     long time, and that's not going to be a dispute.  It wasn't a

1    dispute even before the lawsuit was filed.

2         What's going to be a dispute is, is there

3    infringement.  And that has a lot of different legal and

4    factual issues to it, including, is the work that you're

5    asserting original, or does it, for example, come from some

6    industry standard, which coined many of the terms that they say

7    now no one else can use.

8         I mean, to look at the terms, to give you an idea

9    about -- not that you would look through all 500 terms, but

10   they're saying, among others, that they're able to prevent

11   everyone else from using "IP Address" as a command.  You know,

12   another one, "Clock Set," that's supposedly something that they

13   can prevent everyone else in the industry from using.

14        Obviously, we're going to have a lot of disputes about

15   these commands that they say are their copyrighted work, and

16   we're going to dispute.

17        So what we've proposed -- and then there's the patent,

18   right.

19             THE COURT:  Sure.

20        MR. FERRALL:  So that's the patent, and I -- you know,

21   we're not that far off on the patent schedule, but what we

22   think is important, and I think is pretty conventional, is that

23   there's sufficient time for discovery after claim construction

24   in case things have changed sufficiently that we need to.

25             THE COURT:  Okay.

1      **MR. FERRALL:**  So basically, they've proposed two

2   months after the hearing, without regard to when the order

3   issues, and we're proposing five months after the hearing,

4   assuming the order comes out, you know --

5      **THE COURT:**  Well, I'm more in line with what you're

6   suggesting, just so that I can get that claims construction

7   order in your hands.

8      **MR. FERRALL:**  Right.

9      **THE COURT:**  And then -- and I don't combine that with

10   summary judgment, so you'd still want to have --

11      **MR. FERRALL:**  Right.

12      **THE COURT:**  -- the opportunity.

13      **MR. FERRALL:**  Right.  So we've proposed a trial in

14   January 2017.  Part of that is, we don't want a trial at the

15   end of December 2016.

16      **THE COURT:**  No.

17      **MR. FERRALL:**  But in any event -- or notwithstanding

18   your last order, January 4th, 2017.

19      **THE COURT:**  Right.  No, that was 2016.

20      **MR. FERRALL:**  Right, right.

21      **THE COURT:**  Because they're just two dates, yeah.

22      **MR. FERRALL:**  Or any January 4th --

23      **THE COURT:**  Well, January's tough.  I get it, right,

24   we all have to have a little breathing room.

25      **MR. FERRALL:**  So anyway, that's --

```
 1   framed in exactly the same manner.

 2            THE COURT:  Many judges combine *Markman* --

 3            MR. PAK:  Absolutely, your Honor.

 4            THE COURT:  -- with summary judgment, and so that's

 5   what you have to do.  I mean, judges on this court, but judges

 6   throughout the country.

 7            MR. PAK:  Absolutely, your Honor.  I --

 8       THE COURT:  Why --

 9            MR. PAK:  For all the reasons we talked about --

10       THE COURT:  Okay.

11            MR. PAK:  -- we think that August would make sense --

12       THE COURT:  Okay.

13       MR. PAK:  -- to do this.

14            THE COURT:  Well, let's do that.  Frankly,

15   September -- August -- yeah, that works for me.

16            You are going to, if there is some difficulty with a

17   witness on any of these dates, you'll meet and confer.

18            MR. PAK:  Yes.

19            THE COURT:  What I would -- and then I'm going to --

20   I'd like -- and I think within two weeks is fine, if you'd send

21   me a stip and order filling in all of the Patent Local

22   Rule-related dates leading up to -- well, I think you can do

23   many of them now --

24            MR. PAK:  Yes.

25            THE COURT:  -- and just fill in as much of that as
```

```
1    possible, and I'm expecting that that will just be an

2    agreement, that there won't be any difficulty in working out

3    these dates.  Some of them are just applying the rule, and so

4    it's getting out a calendar.

5           All right.  Let's move on, then.  Another issue that

6    had come up was the issue of discovery, and that was whether

7    all of the discovery in all four cases would be deemed

8    discovery in this case, and Mr. Ferrall, I think your

9    opposition to that was based on having a mountain of discovery

10   without being able to locate the responsive documents to this

11   case.

12          MR. FERRALL:  Well, right, and Mr. Silbert's going to

13   address --

14          THE COURT:  Okay, good.

15          MR. SILBERT:  Well, yes, your Honor, that's part of

16   the issue.  It's -- there absolutely are a mountain of

17   documents in the ITC litigation --

18          THE COURT:  Yeah.

19          MR. SILBERT:  -- that's an understatement, and I think

20   it's 4 to 5 million pages of documents that have been produced,

21   total, in that case.

22          As Mr. Pak just explained to you a few minutes ago,

23   the cases largely do not overlap.  In other words, this case,

24   both the copyright claims and the two patents at issue are

25   directed to Command Line Interfaces.  The 12 patents in the two
```