**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

Kathleen Sullivan (SBN 242261)
kathleensullivan@quinnemanuel.com
QUINN EMANUEL URQUHART &
SULLIVAN LLP
51 Madison Avenue, 22nd Floor
New York, NY 10010
Telephone: (212) 849-7000
Facsimile: (212) 849-7100

Sean S. Pak (SBN 219032)
seanpak@quinnemanuel.com
John M. Neukom (SBN 275887)
johnneukom@quinnemanuel.com.
QUINN EMANUEL URQUHART &
SULLIVAN LLP
50 California Street, 22nd Floor
San Francisco, CA 94111
Telephone: (415) 875-6600
Facsimile: (415) 875-6700

Mark Tung (SBN 245782)
marktung@quinnemanuel.com
QUINN EMANUEL URQUHART &
SULLIVAN LLP
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, CA 94065
Telephone: (650) 801-5000
Facsimile: (650) 801-5100

Steven Cherny (*admitted pro hac vice*)
steven.cherny@kirkland.com
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900

Adam R. Alper (SBN 196834)
adam.alper@kirkland.com
KIRKLAND & ELLIS LLP
555 California Street
San Francisco, California 94104
Telephone: (415) 439-1400
Facsimile: (415) 439-1500

Michael W. De Vries (SBN 211001)
michael.devries@kirkland.com
KIRKLAND & ELLIS LLP
333 South Hope Street
Los Angeles, California 90071
Telephone: (213) 680-8400
Facsimile: (213) 680-8500

*Attorneys for Plaintiff Cisco Systems, Inc.*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION**

| | |
|---|---|
| CISCO SYSTEMS, INC., | CASE NO. 5:14-cv-5344-BLF |
| Plaintiff, | **CISCO'S AMENDED OPPOSITION TO ARISTA'S MOTION TO AMEND SCHEDULING ORDER OR, ALTERNATIVELY, TO STAY PATENT CLAIMS PENDING *INTER PARTES* REVIEW** |
| vs. | |
| ARISTA NETWORKS, INC., | **REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED** |
| Defendant. | Date:     February 18, 2016 |
| | Time:     9:00 A.M. |
| | Dept.:    Courtroom 3 |
| | **DEMAND FOR JURY TRIAL** |

# TABLE OF CONTENTS

Table of Authorities ................................................................................................. iii

I.      Introduction and Summary of Argument ........................................................ 1

II.     Factual Background......................................................................................... 2

        A.      Cisco's Development of Its Copyrighted CLI......................................... 2

        B.      Arista's Decision to Copy Cisco's CLI ................................................... 2

        C.      Cisco's Service of a Detailed Complaint ................................................ 3

        D.      Arista's Discovery Delays....................................................................... 4

III.    Legal Standard................................................................................................ 5

IV.     Argument......................................................................................................... 6

        A.      There Is No "Good Cause" for Delaying Cisco's Copyright Claims....................... 6

        B.      Arista's Belated Requests for IPRs Do Not Justify a Stay........................ 9

V.      Response to Arista's Proposed Discovery Plan ................................................ 10

        A.      Arista's Vague Discovery Plan ............................................................... 10

        B.      Arista Has Not Justified Its Requests for Additional Discovery.............................. 12

        C.      Arista Has Not Been Diligent In Pursuing Discovery On Other Topics
                Raised in Its Discovery Plan ................................................................... 14

VI.     Conclusion....................................................................................................... 15

# TABLE OF AUTHORITIES

**Page**

## Cases

*Authentec, Inc. v. Atrua Techs., Inc.*,
    No. C 08-1423 PJH, 2008 WL 5120767 (N.D. Cal. Dec. 4, 2008)...........................................12

*Avago Techs. Fiber IP (Singapore) Pte. Ltd. v. IPtronics Inc.*,
    No. 10-CV-02863-EJD, 2011 WL 3267768 (N.D. Cal. July 28, 2011).....................................8

*Coleman v. Quaker Oats Co.*,
    232 F.3d 1271 (9th Cir. 2000)...........................................................................................5

*Ducey v. Meyers*,
    144 F. App'x 619 (9th Cir. 2005)......................................................................................5

*Escandon v. Los Angeles Cty.*,
    584 F. App'x 517, 519-20 (9th Cir. 2014)
    *cert. denied sub nom. Escandon v. Los Angeles Cty., Cal.*,
    135 S. Ct. 1506, 191 L. Ed. 2d 432 (2015) ..................................................................8, 12

*Feist Publications, Inc. v. Rural Telephone Service Co.*,
    499 U.S. 340 (1991) .......................................................................................................13

*Herring v. Veterans Admin.*,
    76 F.3d 386 (9th Cir. 1996)..............................................................................................5

*Hewlett-Packard Co. v. ServiceNow, Inc.*,
    No. 14-cv-0057-BLF, 2015 U.S. Dist. LEXIS 47754 (N.D. Cal. Apr. 9, 2015).......................10

*Johnson v. Mammoth Recreations, Inc.*,
    975 F.2d 604 (9th Cir. 1992)........................................................................................5, 7

*Newport v. Burger King Corp.*,
    No. C-10-04511-WHA DMR, 2011 WL 3607973 (N.D. Cal. Aug. 16, 2011)..........................13

*Oracle America, Inc. v. Google, Inc.*,
    No. 10-03561 (N.D. Cal. Nov. 18, 2010).............................................................................13

*Parapluie, Inc. v. Mills*,
    555 F. App'x 679, 682-83 (9th Cir. 2014) .........................................................................5

*Pete v. City of Oakland*,
    No. C09-06097 WHA 2010 WL 4279455 (N.D. Cal. Oct. 22, 2010) ...................................6, 7

*Sage Electrochromics, Inc. v. View, Inc.*,
    No. 12-cv-06441-JST, 2015 U.S. Dist. LEXIS 1056 (N.D. Cal. Jan. 5, 2015)......................6, 9

*Software Rights Archive, LLC v. Facebook, Inc.*,
    No. C-12-3970 RMW, 2013 WL 5225522 (N.D. Cal. Sep. 17, 2013) ......................................8

*In re W. States Wholesale Natural Gas Antitrust Litig.*,
    715 F.3d 716 (9th Cir. 2013) *aff'd sub nom.*
    *Oneok, Inc. v. Learjet, Inc.*, 135 S. Ct. 1591, 191 L. Ed. 2d 511 (2015) ....................................5

### <u>Statutes</u>

Fed. R. Civ. P. 16(b)(4) ............................................................................................................5

Fed. R. Civ. P. 26(b) ...........................................................................................................6, 12

Fed. R. Civ. P. 30 ...........................................................................................................1, 12, 13

Fed. R. Civ. P. 30(a)(2) ........................................................................................................6, 12

Fed. R. Civ. P. 30(b)(6) ....................................................................................................5, 8, 11

Fed. R. Civ. P. 33 ....................................................................................................................14

Fed. R. Civ. P. 33(a)(1) ..............................................................................................................6

REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

## I.    INTRODUCTION AND SUMMARY OF ARGUMENT

The Motion to Amend Scheduling Order or, Alternatively, to Stay Patent Claims Pending *Inter Partes* Review ("Motion") filed by Defendant Arista Networks, Inc. ("Arista") is without good cause and if allowed would cause severe prejudice to Plaintiff Cisco Systems, Inc. ("Cisco").

Arista offers two unpersuasive justifications for its request. First, Arista claims it needs additional time so each side can take at least sixty depositions—more than six times the number permitted by Rule 30 and accepted by Arista six months ago. Second, Arista argues—ostensibly in the alternative—that the Court should delay the proceedings on Cisco's patent infringement claims until the Patent Trial and Appeal Board ("PTAB") rules on one request for *inter partes* review ("IPR") of a Cisco asserted patent that Arista has recently filed and one request it has not yet filed. Arista's request for delay threatens to postpone the trial currently scheduled for August 1, 2016 by a year or more. Neither of Arista's purported bases for its Motion justify putting off the trial.

Nothing has changed in this case since the Court adopted its Scheduling Order on June 1, 2015 that would warrant delay. Dkt. 51. Cisco detailed the scope of its allegations regarding Arista's patent and copyright infringement in the original Complaint, which has not changed since. Cisco's Complaint identified 26 copyrighted works and two patents that it alleges Arista has infringed. Cisco is still asserting the same 26 copyrighted works and two patents today.

With respect to Cisco's copyright claims, Cisco's Complaint identified explicitly the elements of its works that Cisco alleges Arista has copied. These include more than five hundred multi-word command expressions and their hierarchical arrangement, Cisco's command modes and associated prompts, screen displays generated by Cisco's command expressions, as well as product documentation (including typographical errors). Cisco's Complaint also detailed its allegations as to why these elements of its CLI represent protectable expression and explained that its works were created by large teams of Cisco engineers working over three decades. Given that there has been no change to the scope of this case, there is no basis for Arista's claim that delay is warranted because it was somehow surprised about Cisco's allegations regarding the extent of its copying or the creative endeavor that went into developing its CLI.

Arista's request that the patent case be stayed pending resolution of its petitions for IPR of

1  Cisco's asserted patents is similarly unfounded. That request is late given the stage of this

2  litigation, and premature given the stage of the purported IPRs. Arista has only recently filed one

3  request for IPR, and has not yet filed the second one. A decision by the PTAB as to whether to

4  even institute an IPR is not expected until at least May 2016 and no hearing would occur before

5  2017. Further, Cisco originally suggested proceeding on the copyright claims before its patent

6  claims, and Arista refused that proposal. The parties therefore have taken discovery on all issues.

7  Now, not liking its case on the merits, Arista proposes to postpone or stay the patent case where

8  one petition for IPR has not even been filed and where none is instituted.[1]  Arista's tactics are

9  transparent.

10  **II.**    **FACTUAL BACKGROUND**

11      **A.**    **Cisco's Development of Its Copyrighted CLI**

12          Starting in the mid-1980s, Cisco developed a series of operating systems for network

13  devices, along with an elaborate set of supporting documentation. *See* Dkt. 1 (Complaint) at ¶¶ 1,

14  20-22, 29. One creative aspect of Cisco's copyrighted operating systems that contributed to their

15  popularity is the set of commands users input at a prompt, known as the CLI. *See id.* at ¶¶ 20-30.

16          The particular command expressions and the manner in which those expressions are

17  arranged within Cisco's CLI were the creative choices of Cisco. *See id.* at ¶¶ 28, 30. Teams of

18  early Cisco employees such as Kirk Lougheed chose particular keywords to employ in command

19  expressions, as well as how to arrange them. *See, e.g.*, Tung Decl.[2]  Ex. 2 (October 14, 2015

20  Response to Interrogatory No. 5). Cisco's CLI was the product of this creative process and is

21  encompassed in Cisco's copyright registrations. *See* Dkt. 1 (Complaint) at ¶¶ 20-30.

22      **B.**    **Arista's Decision to Copy Cisco's CLI**

23          When Arista began developing products, Arista deliberately chose to copy Cisco's CLI and

24

---

25      [1]  In the different actions pending over different patents in the ITC, Arista's IPR strategy

26  proved completely ineffectual as the PTAB denied institution for 5 out of 7 IPRs thus far. There is
no reason to presume Arista's unfiled IPR and recently filed IPR will be instituted or succeed.

27      [2]    "Tung Decl." refers to Declaration of Mark Tung in Support of Cisco's Opposition to
Arista's Motion to Amend Scheduling Order (Dkt. 114-1).

28

1  its supporting documentation so that Arista could avoid the cost of developing an alternative

2  approach. As Arista's CEO Jayshree Ullal put it, "Where we don't have to invent, we don't." *See*

3  Tung Decl. Ex. 5 (Network World article). *See also* Dkt. 1 (Complaint) at ¶¶ 7, 46. ███████

4  ████████████████████████████████████████████████████████████████████████████████

5  ████████████████████████████████████████████████████████████████████████████

6  ████████████████████████ *See* Tung Decl. Ex. 6 (Jayshree Ullal July 21, 2009 email). Instead

7  of "compet[ing] with Cisco directly in the enterprise in a conventional way," Cisco alleges that

8  Arista copied Cisco to avoid a development process that Ms. Ullal stated would take "15 years and

9  15,000 engineers." *See* Tung Decl. Ex. 7 (Fortune article). *See also* Dkt. 1 (Complaint) at ¶¶ 4, 45.

10       Recently, Cisco was surprised to discover that a former Cisco engineer and now Arista's

11  CTO Ken Duda, publicly bragged about how Arista copied Cisco's CLI "slavishly." *See* Show 45

12  – Arista – EOS Network Software Architecture – Webinar at 54:50-55:45 ("Packet Pushers

13  Podcast"), available at http://packetpushers.net/podcast/podcasts/show-45-arista-eos-software-

14  architecture/. Mr. Duda, accompanied by his colleague Adam Sweeney, another former Cisco

15  engineer, went on to explain that Arista even copied parts of Cisco's CLI that Arista's engineers

16  supposedly did not like specifically because they wanted to try to take Cisco's customers and

17  convert them to Arista's customers. *See id*. █████████████████████████████████████████

18  ████████████████████████████████████████████████████████████████████████████

19  ████████. *See* Tung Decl. Ex. 8 (James Lingard April 14, 2006 email).

20       As noted by Arista's senior management, Arista markets its products by touting the

21  similarities between its CLI and Cisco's CLI specifically so they can convert Cisco customers

22  using Cisco's IP. *See* Tung Decl. Ex.5 (Network World article) (proclaiming that "a Cisco CCIE

23  expert would be able to use Arista right away, because we have similar command-line interfaces

24  and operational look and feel"); Tung Decl. Ex. 9 (Duda article) (explaining that "80% [of Arista

25  customers] tell us they appreciate the way they can leverage their deep [Cisco] IOS experience, as

26  they can easily upgrade an aging [Cisco] Catalyst infrastructure to Arista.").

27       **C.    Cisco's Service of a Detailed Complaint**

28       Faced with Arista's recently surfaced public admissions that it was using Cisco's

OPPOSITION TO MOTION TO AMEND SCHEDULING ORDER
Case No.5:14-cv-05344-BLF

proprietary CLI technology, Cisco filed this lawsuit accusing Arista of copyright and patent infringement on December 5, 2014. *See* Dkt. 1. In its original complaint filed last year, Cisco identified twenty-six copyrighted works and two patents infringed by Arista. *See* Dkt. 1 at Exs. 3-30. Cisco attached to its Complaint the registration certificates for each registered work, which identify the author of the work as Cisco and the date on which the work was completed. *See id.* at Exs. 3-28. And Cisco explained in its allegations that these works were created by large teams of Cisco engineers working over three decades. *See id.* at ¶¶ 21, 27-30.

Cisco also identified specific elements of its copyrighted works that it alleged Arista has chosen to infringe in its rival operating system to IOS, called EOS. Cisco's allegations identified lists of protectable command expressions allegedly copied by Arista in the body of its complaint (*see id.* at ¶ 51), attached as an exhibit an identification of more than five hundred specific such command expressions (*see id.* at Ex. 1)—the same command expressions at issue today—and included numerous pages of allegations showing how those command expressions are arranged in command hierarchies (*see id.* at ¶ 52), command modes and prompts (*see id.* at ¶ 54), and product documentation, that Arista had deliberately copied (*see id.* at ¶¶ 55-56, Ex. 2).

In its original Answer, Arista professed no uncertainty about the scope of Cisco's copyright infringement allegations. Instead, Arista ***admitted*** "that it uses the IOS command expressions included in Exhibit 1 to Cisco's Complaint."[3] Dkt. 36 at ¶ 53. Arista further admitted using the command modes and prompts that Cisco accused of infringement. *See id.* at ¶ 54. And Arista's CEO publicly admitted that Arista had engaged in copying of Cisco's product documentation. *See* Tung Decl. Ex. 11 (Barclay's Conf. Tr.) at CSI-CLI-00357849.

**D.    Arista's Discovery Delays**

Although Arista has repeatedly suggested that Cisco has resisted providing relevant discovery, Arista has repeatedly delayed pursuing information Cisco has provided and avoided use of discovery tools available to it. As a prime example, Arista repeatedly has delayed pursuing information regarding the creation of Cisco's CLI command expressions. Cisco identified Kirk

---

[3]    Arista now denies this allegation but has not explained its reversal. *See* Dkt. 65 at ¶ 53.

1   Lougheed as knowledgeable about the creation of Cisco's CLI in its initial disclosures served on

2   March 31, 2015, but Arista waited for over 6 months until October 15, 2015 to even request his

3   deposition. *See* Tung Decl. Ex. 12 (Elizabeth McCloskey October 15, 2015 Letter). Arista

4   similarly has never served a corporate 30(b)(6) deposition notice on Cisco with CLI-related topics,

5   yet that type of deposition would plainly be a useful tool for obtaining information about a

6   company's copyrighted works for hire. *See* Tung Decl. at ¶ 24.

7         Arista also delayed pursuing patent-related discovery. The inventors of Cisco's patents

8   have been known to Arista at least since Cisco filed its original Complaint on December 5, 2014.

9   *See* Dkt. 1. Yet Arista waited more than nine months, until September 14, 2015, to request any of

10  their depositions. *See* Tung Decl. Ex. 13 (David J. Rosen September 14, 2015 email). Arista did

11  not initially request documents for '886 Patent inventor J. Tjong until October 16—which

12  documents Arista insisted Cisco must produce before the deposition could proceed. *See* Tung

13  Decl. Ex. 14 (Elizabeth McCloskey November 16, 2015 email). And Arista did not finalize its list

14  of search terms until October 21, 2015. *See* Tung Decl. Ex. 15 (David J. Rosen October 21, 2015

15  email). Notwithstanding these obstacles, Cisco completed Mr. Tjong's document production and

16  Arista deposed him on November 11. Tung Decl. at ¶ 25.

17  **III.    LEGAL STANDARD**

18        A scheduling order may only be amended by the Court on a showing of "good cause." Fed.

19  R. Civ. P. 16(b)(4). "Good cause" means the deadlines in the scheduling order "cannot reasonably

20  be met despite the diligence of the party seeking the extension." *Parapluie, Inc. v. Mills*, 555 F.

21  App'x 679, 682-83 (9th Cir. 2014) (quoting *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604,

22  609 (9th Cir. 1992)). Thus, if the moving party "was not diligent, the inquiry should end." *In re W.*

23  *States Wholesale Natural Gas Antitrust Litig.*, 715 F.3d 716, 737 (9th Cir. 2013) *aff'd sub nom.*

24  *Oneok, Inc. v. Learjet, Inc.*, 135 S. Ct. 1591, 191 L. Ed. 2d 511 (2015) (quoting *Johnson*, 975 F.2d

25  at 609). The potential prejudice to the non-moving party that would be caused by delay supplies an

26  additional reason for denying a motion to amend a scheduling order. *Ducey v. Meyers*, 144 F.

27  App'x 619, 621 (9th Cir. 2005) (citing *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1295 (9th

28  Cir. 2000)); *see also Herring v. Veterans Admin.*, 76 F.3d 386 (9th Cir. 1996) (affirming order that

1    denied amendment of schedule because of prejudice to non-moving party and "undue delay in the

2    resolution of this case").

3        In deciding whether the stay a patent case, courts must consider the progress of the case,

4    the likelihood that the Patent Office proceedings will simplify the proceedings, and any prejudice

5    to the nonmoving party. *See, e.g.*, *Sage Electrochromics, Inc. v. View, Inc.*, No. 12-cv-06441-JST,

6    2015 U.S. Dist. LEXIS 1056, at *5-*6 (N.D. Cal. Jan. 5, 2015).

7        The Federal Rules of Civil Procedure provide presumptive limits on the number of

8    depositions (10) and interrogatories (25) per party. *See* Fed. R. Civ. P. 30(a)(2); Fed. R. Civ. P.

9    33(a)(1). Whether to grant parties leave to exceed these limits must be determined in light of the

10    proportionality requirements of Fed. R. Civ. P. 26(b). *See id.*

11    **IV.    ARGUMENT**

12        **A.    There Is No "Good Cause" for Delaying Cisco's Copyright Claims.**

13            **1.    The Scope of Cisco's Case Has Not Expanded**

14        Arista asserts that Cisco's copyright claims should be delayed because its discovery needs

15    in this case have "expanded" in ways that it could not have foreseen at the time of the Initial Case

16    Management Conference, when the parties and the Court worked out a scheduling framework to

17    govern this case. Mot. at 2. But neither the scope of Cisco's claims nor Arista's defenses have

18    expanded one bit since this case was filed. *Pete v. City of Oakland*, No. C 09-06097 WHA, 2010

19    WL 4279455, at *2 (N.D. Cal. Oct. 22, 2010) (amending a scheduling order is not justified when

20    the facts justifying the amendment were known at outset of the case).

21        Cisco's original complaint served last December amply detailed the scope of its copyright

22    infringement allegations in its complaint, and those allegations remain unchanged. The 26

23    copyrighted works in dispute today are the same ones that Cisco asserted when it filed this case in

24    December 2014. *See* Sections I and II.A, *supra*. The approximately 500 multi-word command

25    expressions and their hierarchies, command modes and prompts, screen displays, and product

26    documentation identified in Cisco's Complaint are the same ones that remain disputed today. *See*

27    *id.* Arista cannot tenably claim surprise at the scope of Cisco's infringement allegations.

28        Nor can Arista believably assert that it did not know that Cisco's copyrighted works were

6

1  created by many engineers over many years. Not only did the original allegations make that clear,

2  virtually Arista's entire executive team—along with many other staff members—are former Cisco

3  employees. Arista's own founders and engineers were aware of and involved in CLI creation at

4  Cisco. Arista does not need sixty depositions to explore its originality.

5      Cisco also expressly described the creative effort that went into developing its CLI in its

6  December 2014 Complaint, as Arista's counsel has acknowledged. *See* Tung Decl. Ex. 10

7  (September 30, 2015 Hearing Tr.) at 9:2-5. To the extent that Arista claims it needs to undertake a

8  microscopic examination of the process by which every individual command expression from

9  Cisco's CLI that Arista chose to copy was created, it could have raised that issue with the Court at

10  the Initial Case Management Conference. Instead, Arista stated (jointly with Cisco) that it did not

11  believe this case would require any expansion of the default limits on discovery from the Federal

12  Rules of Civil Procedure. *See* Dkt. 43 at 6.

13      The scope of Cisco's patent claims also has not expanded since Cisco filed its Complaint.

14  The same two patents that Cisco asserted in December 2014 remain at issue today. *See* Dkt. 1. If

15  anything, Cisco's patent case has **narrowed** in light of Cisco's agreement to voluntarily drop some

16  asserted claims. *See* Ex. 20 (Cisco's Preliminary Election of Asserted Claims). Surely this cannot

17  provide any justification for extending the schedule. *See Pete*, 2010 WL 4279455, at *2.

18          **2.    Arista Is Responsible for Its Delays in Seeking Discovery**

19      Given that Arista knew the scope of Cisco's claims and Arista's purported defenses long

20  ago, Arista should promptly have sought the discovery it claims to need. Even Arista

21  acknowledges that a party seeking to amend a scheduling order must demonstrate that it acted

22  diligently in order to justify its proposed amendment. Mot. at 7 (citing *Johnson*, 975 F.2d at 609).

23  But Arista can make no such showing of diligence here, which is fatal to its request for a delay.

24      Arista has consistently delayed serving requests for discovery that it now claims is vital.

25  Arista waited more than six months after Cisco identified Kirk Lougheed as knowledgeable about

26  the creation of Cisco's CLI before even requesting his deposition. *See* Section II.D*, supra.*

27  Similarly, Arista waited nine months after Cisco filed its Complaint before requesting the

28  depositions of any of the named inventors on Cisco's patents. *See id.* And Arista's delays persist:

1    Arista still has not requested dates for the depositions of any witnesses related to Cisco's lost sales

2    or Arista's copyright defenses, any "prior art" witnesses, or any 30(b)(6) witnesses. Arista's

3    assertion that it needs at least another five months to conduct discovery rings hollow in light of the

4    fact that it waited at least that long before even requesting such discovery. Arista has not been

5    diligent. *See Escandon v. Los Angeles Cty.*, 584 F. App'x 517, 519-20 (9th Cir. 2014), *cert. denied*

6    *sub nom. Escandon v. Los Angeles Cty., Cal.*, 135 S. Ct. 1506, 191 L. Ed. 2d 432 (2015).

7            **3.    Cisco Would Be Severely Prejudiced by Any Delay**

8            The Court indicated during the November 5 Case Management Conference that any delay

9    of the trial in this case would likely be at least a year. *See* Tung Decl. Ex. 18 (November 5, 2015

10   Hearing Tr.) at 6:10-11, 26:8-17. Arista's assertion that it is seeking only a five-month delay is

11   therefore moot and not even genuine given that the Court originally told the parties about the busy

12   trial schedule when initially setting the trial calendar for this matter. Tung Decl. Ex. 21 (May 14,

13   2015 Hearing Tr.) at 9:4-10:13.

14           While Arista's lack of diligence is a sufficient basis to deny its request to amend the

15   schedule, the prejudice that would befall Cisco during any period of delay provides an additional

16   reason. Arista and Cisco are direct competitors. *See Avago Techs. Fiber IP (Singapore) Pte. Ltd. v.*

17   *IPtronics Inc.*, No. 10-CV-02863-EJD, 2011 WL 3267768, at *5 (N.D. Cal. July 28, 2011).

18   Indeed, Arista reports its market share gains by contrasting its gains with Cisco's market share

19   losses. *See, e.g.*, Tung Decl. Ex. 1 (Arista Q3 2015 Earnings Highlights) at 6. And this direct

20   competition with Cisco is the foundation of Arista's operations; Arista is specifically targeting

21   Cisco's existing and potential customers by advertising its copying of Cisco's CLI. *See* Section

22   II.B, *supra. See also* Tung Decl. Ex. 5 (Network World article); Tung Decl. Ex. 9 (Duda article).

23           The effects of Arista's infringing sales go beyond short-term fiscal returns. As Arista

24   acknowledges, the sales cycle for data center customers lasts for two years or more; an initial sale

25   can lead to a years-long relationship with a customer. Tung Decl. Ex. 1 at 20. The harm to Cisco

26   from delaying this case will be enormous, and will persist for years to come.

27           Arista's attempt to minimize the harm Arista's infringement inflicts on Cisco fails for a

28   legal reason as well: The only case Arista cites to support its claim that the Court may ignore the

8

OPPOSITION TO MOTION TO AMEND SCHEDULING ORDER
Case No.5:14-cv-05344-BLF

1   harm that would result to Cisco during a delay was expressly based on the fact that the parties

2   there were "not competitors." *See Software Rights Archive, LLC v. Facebook, Inc.*, No. C-12-3970

3   RMW, 2013 WL 5225522, at *6 (N.D. Cal. Sep. 17, 2013). Not so here, where Arista markets its

4   accused products every day with the goal of taking long-term customer relationships from Cisco.

5         **B.**    **Arista's Belated Requests for IPRs Do Not Justify a Stay**

6         Arista's request to stay the case pending IPRs is both tardy given the current case schedule

7   and premature given the lack of progress on the IPRs. All factors that courts consider when

8   deciding a stay motion—the progress of the case, the likelihood of simplifying the issues and the

9   prejudice to Cisco—all weigh against Arista's alternative request. *See, e.g., Sage Electrochromics*,

10  2015 U.S. Dist. LEXIS 1056, at *5-*6.

11          **1.**    **This Case Is Too Advanced to Be Stayed**

12        This case is almost a year old and is far more advanced than Arista represents in its

13  Motion. *See* Mot. at 9. The *Markman* hearing is imminent and discovery is well underway. The

14  parties have exchanged millions of pages of documents.[4]  *See* Section II.D, *supra*. Cisco and

15  Arista have exchanged initial infringement and invalidity contentions, as well as a round of

16  supplemental contentions. *See* Tung Decl. at ¶ 27. The parties have submitted their claim

17  constructions and claim construction briefing is nearly closed. If Arista intended to seek IPRs so

18  as to stay proceedings, the original CMC would have been the time to do so. Cisco's patent case is

19  too far advanced to justify a delay now.

20          **2.**    **A Stay Is Unlikely to Simplify the Issues**

21        Given the advanced state of the case, granting a stay would do little to simplify the issues

22  or ease the burden on the parties. Because Arista has just filed one request for an IPR targeting the

23  '526 Patent, and not yet filed a second petition against the '886 Patent, the PTAB is not likely to

24  decide even whether to institute either IPR until at least May 2016. Going further down the path of

25  

---

26  

27     [4]  Arista's contrary assertion, that "few documents have been produced (other than pre-existing ITC productions" is inaccurate as it concerns Cisco. Cisco has produced more than a million pages of documents in this case alone. *See* Section II.D, *supra*.

28

1   speculation, any decision affecting the scope of Cisco's asserted claims would likely occur, if at

2   all, at least a year after that, in early 2017, far after trial would be completed in this case. This

3   Court has previously expressed "reluctan[ce] to derail an infringement action by a patentee against

4   a direct competitor when, as here, the Court can only speculate as to whether the PTAB will

5   institute IPR." *Hewlett-Packard Co. v. ServiceNow, Inc.*, No. 14-cv-0057-BLF, 2015 U.S. Dist.

6   LEXIS 47754, at *10 (N.D. Cal. Apr. 9, 2015).

7        Granting Arista's stay also will not simplify the issues facing the parties or the Court while

8   they await the PTAB's decision(s). As Arista has acknowledged, both Cisco's copyright

9   infringement claims and its patent infringement claims are addressed to CLI technology. *See* Tung

10  Decl. Ex. 21 (May 14, 2015 Hearing Tr.) at 26:23-25. As such, discovery into Cisco's CLI and

11  Arista's infringing CLI will continue regardless of whether the patent claims are stayed. As the

12  Court noted during the recent case management conference, when stays are granted based only on

13  the fact that an IPR has been requested, "often, that's when those [patents] are the only issues in

14  the case." *See* Tung Decl. Ex. 18 (November 5, 2015 Hearing Tr.) at 24:6-10.

### 3.    Cisco Would Be Prejudiced by a Stay

16       That Arista's proposed stay would result in prejudice to Cisco confirms that it should be

17  denied. Arista is using its accused products to take long-term customer relationships from Cisco

18  unfairly, threatening not just quantifiable short-term financial losses, but incalculable longer-term

19  market harm. *See* Section IV.A.3, *supra*. The Court should not grant a stay that would reward

20  Arista's delay and prejudice Cisco.

### V.    RESPONSE TO ARISTA'S PROPOSED DISCOVERY PLAN

####    A.    Arista's Vague Discovery Plan

23       Vagueness permeates the Discovery Plan Arista filed with this Court on November 12.

24  Addressing the one issue that Arista discussed in any detail in its Motion—the originality of

25  Cisco's CLI command expressions—the Court stated at the Case Management Conference that it

26  would "need to see a thorough plan on these depositions if you're suggesting the authors have

27  anything to add." *See* Tung Decl. Ex. 18 (November 5, 2015 Hearing Tr.) at 17:4-6. But Arista did

28  not provide the "thorough plan" the Court requested.

1      Arista's November 12 Discovery Plan identifies only twenty-five individuals that Arista

2  intends to depose out of the sixty depositions it is asking the Court to authorize each side to take.

3  *See* Dkt. 108. All twenty-five names allegedly relate to the originality of Cisco's CLI. In sentence

4  fragments, Arista alleges that ten of these individuals are relevant to the originality of certain CLI

5  command expressions or to Cisco's CLI more generally. *See id.* at 3-4. For the other fifteen

6  individuals identified by name, Arista provides no specifics about the information they possess.

7  *See id.* at 3, fn. 2. Arista also does not explain how these twenty-five individuals possess non-

8  overlapping information.

9      Arista's "plan" with respect to the other issues it raises—lost sales, patent invention, fair

10  use, equitable defenses, prior art, and corporate testimony—is sparser. Arista does not identify a

11  single specific individual it would depose on any of these issues or how those unspecified

12  individuals' testimony might resolve an issue in this case. *See* Dkt. 108 at 4-6. Similarly, Arista

13  does not explain what it would pursue in four days of 30(b)(6) deposition testimony.[5]

14      In addition to numerous depositions, Arista's proposed Discovery Plan includes a new and

15  equally vague request for five additional interrogatories. *See* Dkt. 108 at 6. But Arista does not

16  explain why its currently remaining six interrogatories are insufficient, or what information it

17  would pursue with five additional interrogatories. *See id.*

18      Arista's Discovery Plan also lacks a proposed schedule. Arista does not explain why it

19  would not be possible to complete additional depositions it purportedly needs within the current

20  discovery schedule.    Arista's plan seems to be that it would like a blank check to pursue a

21  massive increase in depositions.

22      Rather than attempting to work within the confines of the Court's scheduling order, Arista

23  has created a vague Discovery Plan that does not even purport to fit within the allotted discovery

24  period—after waiting months to begin seeking the depositions and other discovery it now claims

25

26      [5]  Cisco is willing to meet and confer with Arista regarding limiting the scope of deposition
27  testimony pursuant to Rule 30(b)(6), at which time the parties can discuss Arista's proposed 28-
    hour limitation. *See* Dkt. 108 at 6.
28

to need. This is not "good cause" for delaying the trial of Cisco's claims against Arista. *See Escandon*, 584 F. App'x at 519-20 (schedule modification was inappropriate in light of "multiple month delay in propounding any discovery.").

## B.    Arista Has Not Justified Its Requests for Additional Discovery

Arista tries to justify its requests by seeking a massive departure from the amount of discovery provided for in this case and allowed in federal cases. The parties agreed in their initial Joint Case Management Statement that none of the discovery limits imposed by the Federal Rules of Civil Procedure needed to be changed for this case. *See* Dkt. 43 at 6. Given the broad discovery that has taken place in two pending ITC actions already, it's sensible that the parties did not request departures from the discovery provided by the Federal Rules. Despite the fact that Cisco has asserted no new copyright or patent claims and Arista has asserted no new defenses since the Joint Case Management Statement was filed, Arista now claims it needs *fifty* additional depositions and *five* additional interrogatories beyond the limits of the discovery rules. There is no basis for these outlandish requests and the wasteful costs they would impose. They are being presented to prop up a reason to try to postpone a trial in this case, plain and simple.

### 1.    Arista's Request for Dozens of Depositions Is Baseless and Impractical

Rule 30 limits each side to ten depositions. Fed. R. Civ. P. 30(a)(2). "A party seeking to exceed the presumptive number of depositions must make a particularized showing of the need for the additional discovery." *Authentec, Inc. v. Atrua Techs., Inc.*, No. C 08-1423 PJH, 2008 WL 5120767, at *1 (N.D. Cal. Dec. 4, 2008). Additional depositions "must be justified under the 'benefits vs. burdens' approach of Rule 26(b)(2)." *Id.* (citing Advisory Comm. Notes to Rule 30(a)(2)).

Arista's request for *six times* the number of depositions permitted by Rule 30 is premature. "Having taken not a single deposition [of a command expression author] to date, [Arista] cannot possibly know what information it needs but cannot obtain from its 10 permitted depositions." *Id.*, at *2. Arista has not yet deposed either of the two engineers that Cisco identified as most knowledgeable about its creative process for its copyrighted works. There is no basis for Arista's

OPPOSITION TO MOTION TO AMEND SCHEDULING ORDER
Case No.5:14-cv-05344-BLF

1  precipitous request for a "blank check" to explode the ten-deposition limit of Rule 30. Although

2  courts will on rare occasion grant additional depositions before a party has exceeded the ten

3  depositions permitted by Rule 30, that is the exception, and it does not apply here. Even *Oracle v.*

4  *Google*[6] did not allow the volume of discovery Arista seeks here, permitting no more than 16

5  depositions per side.

6      In any event, Arista has not explained why the parties should be forced to expend such a

7  massive amount of resources on discovery addressed to that singular issue, or why the Court

8  should be forced to adjust its schedule to accommodate this exaggerated discovery demand.

9  Originality is a low bar. *See, e.g.*, *Feist Publications, Inc. v. Rural Telephone Service Co.*, 499

10  U.S. 340, 345 (1991) ("To be sure, the requisite level of creativity is extremely low; even a slight

11  amount will suffice."). And as the Court noted during the November 5 case management

12  conference, the originality of Cisco's CLI command expressions is "determined extrinsic to what

13  the authors are going to say." *See* Tung Decl. Ex. 18 (November 5, 2015 Hearing Tr.) at 17:3-4.

14      Further, Cisco has provided ample evidence regarding the creative process by which its

15  original command expressions were developed, of which dozens of depositions would be

16  needlessly cumulative. Courts are generally reluctant to order numerous depositions where, as

17  here, the potential deponents have information that overlaps with written discovery or the

18  testimony of other deponents. *See, e.g.*, *Newport v. Burger King Corp.*, No. C-10-04511-WHA

19  DMR, 2011 WL 3607973, at *2 (N.D. Cal. Aug. 16, 2011) (permitting defendant to depose only

20  20 of 72 plaintiffs because their claims were similar and the plaintiffs had responded to written

21  discovery). Cisco has served thousands of documents regarding the creation of its command

22  expressions. *See* Section II.D, *supra*.

23      Moreover, this case is not about Arista's copying of command expressions alone. Cisco's

24  infringement allegations detail the breadth of Arista's use of Cisco's CLI, including not just the

25

26      ────────────────

27      [6]    *Oracle America, Inc. v. Google, Inc.,* No. 10-03561 (N.D. Cal. Nov. 18, 2010), Dkt. 56;
*Id*. (July 21, 2011), Dkt. 229; *Id*. (Nov. 14, 2011), Dkt. 617 (permitting no more than 16
depositions per side).

28

command expressions, but also their hierarchies, command modes, command prompts, and command outputs, along with Cisco's supporting product documentation. *See* Dkt. 1. Devoting forty depositions to the originality of individual command expressions is out-of-line with the significance of such individual expressions to this case. It should be apparent that Arista is just looking to use this unnecessary, inefficient and wasteful discovery expansion to excuse its request to delay.

With respect to issues other than originality, Arista has not identified—at all—any of the other witnesses it would depose as part of its sixty depositions. Arista therefore has failed to justify its request for a "blank check" to take dozens of depositions.

### 2. Arista Has Not Justified Its New Request for Additional Interrogatories

In its November 12, 2015 Discovery Plan, Arista makes a previously unmentioned request to increase the number of interrogatories permitted in this case from the default limit of twenty-five to thirty. Dkt. 108 at 6. Arista does not justify this request. Assuming none of its previous interrogatories are compound, Arista has six unused interrogatories remaining. Arista does not indicate what additional interrogatories it would serve beyond those six, to what issues additional interrogatories would pertain, or why those interrogatories would be necessary. Arista's request for additional interrogatories should therefore be denied.

Instead of explaining why it needs more interrogatories, Arista casts aspersions on Cisco's responses to the already-served interrogatories. Arista does not explain how its (unfounded) complaints about Cisco's current interrogatory responses would justify issuing new interrogatories—especially in light of Arista's previous agreement that the presumptive discovery limits of the Federal Rules of Civil Procedure, including the 25-interrogatory limit of Rule 33, should apply in this case. *See* Dkt. 43 at 6.

### C. Arista Has Not Been Diligent In Pursuing Discovery On Other Topics Raised in Its Discovery Plan

Arista has delayed pursuing discovery on the other issues raised in its Discovery Plan. With respect to lost profits and copyright misuse, Arista has had access to the documents it claims are relevant since at least July 21, 2015. *See, e.g.,* Dkt. 108 at Exs. D-H; Tung Decl. at Ex. 16

(July 21, 2015 document production letter). But despite knowing about these documents for more than four months, Arista has not noticed a single one of the depositions that it claims it will need to investigate the issues to which these documents allegedly pertain. Indeed, Arista has not even identified any individuals it would propose to depose on these subjects.

## VI.    <u>CONCLUSION</u>

For the foregoing reasons, Cisco respectfully requests that Arista's Motion be denied in its entirety, so that this case can proceed to trial on the currently scheduled date.

OPPOSITION TO MOTION TO AMEND SCHEDULING ORDER
Case No.5:14-cv-05344-BLF

1

2  DATED: November 19, 2015                Respectfully submitted,

3
                                          _/s/ John M. Neukom_
4
                                          Kathleen Sullivan (SBN 242261)
5                                         kathleensullivan@quinnemanuel.com
                                          QUINN EMANUEL URQUHART &
6                                         SULLIVAN LLP
                                          51 Madison Avenue, 22nd Floor
7                                         New York, NY 10010
                                          Telephone: (212) 849-7000
8                                         Facsimile: (212) 849-7100

9                                         Sean S. Pak (SBN 219032)
                                          seanpak@quinnemanuel.com
10                                        John M. Neukom (SBN 275887)
                                          johnneukom@quinnemanuel.com.
11                                        Matthew D. Cannon (SBN 252666)
                                          matthewcannon@quinnemanuel.com
12                                        QUINN EMANUEL URQUHART &
                                          SULLIVAN LLP
13                                        50 California Street, 22nd Floor
                                          San Francisco, CA 94111
14                                        Telephone: (415) 875-6600
                                          Facsimile: (415) 875-6700
15
                                          Mark Tung (SBN 245782)
16                                        marktung@quinnemanuel.com
                                          QUINN EMANUEL URQUHART &
17                                        SULLIVAN LLP
                                          555 Twin Dolphin Drive, 5th Floor
18                                        Redwood Shores, CA 94065
                                          Telephone: (650) 801-5000
19                                        Facsimile: (650) 801-5100

20                                        Steven Cherny (admission pro hac vice
                                          pending)
21                                        steven.cherny@kirkland.com
                                          KIRKLAND & ELLIS LLP
22                                        601 Lexington Avenue
                                          New York, New York 10022
23                                        Telephone: (212) 446-4800
                                          Facsimile: (212) 446-4900
24
                                          Adam R. Alper (SBN 196834)
25                                        adam.alper@kirkland.com
                                          KIRKLAND & ELLIS LLP
26                                        555 California Street
                                          San Francisco, California 94104
27                                        Telephone: (415) 439-1400
                                          Facsimile: (415) 439-1500
28

16
OPPOSITION TO MOTION TO AMEND SCHEDULING ORDER
Case No.5:14-cv-05344-BLF

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Michael W. De Vries (SBN 211001)
michael.devries@kirkland.com
KIRKLAND & ELLIS LLP
333 South Hope Street
Los Angeles, California 90071
Telephone: (213) 680-8400
Facsimile: (213) 680-8500

*Attorneys for Plaintiff Cisco Systems, Inc.*