# EXHIBIT A

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

```
 1            UNITED STATES DISTRICT COURT
 2          NORTHERN DISTRICT OF CALIFORNIA
 3                 SAN JOSE DIVISION
 4
 5   CISCO SYSTEMS, INC.,        )
                                 )
 6              Plaintiff,       )
                                 ) Case No.
 7        vs.                    ) 5:14-cv-05344-BLF (PSG)
                                 )
 8   ARISTA NETWORKS, INC.,      )
                                 )
 9              Defendant.       )
     _____)
10
11
12      HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY
13
14
15      VIDEOTAPED DEPOSITION OF KIRK LOUGHEED
16              Palo Alto, California
17            Friday, November 20, 2015
18                   Volume I
19
20
21
22   Reported by:
     CARLA SOARES
23   CSR No. 5908
24   Job No. 2187110
25   Pages 1 - 189
```

Page 1

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

```
          UNITED STATES DISTRICT COURT
         NORTHERN DISTRICT OF CALIFORNIA
              SAN JOSE DIVISION


CISCO SYSTEMS, INC.,        )
                            )
            Plaintiff,      )
                            ) Case No.
       vs.                  ) 5:14-cv-05344-BLF (PSG)
                            )
ARISTA NETWORKS, INC.,      )
                            )
            Defendant.      )
_____)
```

          VIDEOTAPED DEPOSITION OF KIRK LOUGHEED,
Volume I, taken on behalf of Defendant, at
650 Page Mill Road, Palo Alto, California, beginning
at 9:19 a.m., and ending at 6:15 p.m., on Friday,
November 20, 2015, before CARLA SOARES, Certified
Shorthand Reporter No. 5908.

Page 2

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

```
 1   APPEARANCES:
 2
 3   For the Plaintiff and the Witness:
 4          QUINN EMANUEL URQUHART & SULLIVAN, LLP
 5          BY:  JOHN (JAY) NEUKOM, Attorney at Law
 6          50 California Street, 22nd Floor
 7          San Francisco, California 94111
 8          415.875.6341
 9          johnneukom@quinnemanuel.com
10                 and
11          KIRKLAND & ELLIS LLP
12          BY:  JOSHUA L. SIMMONS, Attorney at Law
13          601 Lexington Avenue
14          New York, New York 10022
15          212-446-4989
16          joshua.simmons@kirkland.com
17
18
19
20
21
22
23
24
25
```

Page 3

866 299-5127

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

```
 1   APPEARANCES (Continued):
 2
 3   For the Defendant:
 4          KEKER & VAN NEST LLP
 5          BY:  BRIAN L. FERRALL, Attorney at Law
 6          BY:  RYAN WONG, Attorney at Law
 7          633 Battery Street
 8          San Francisco, California 94111
 9          415.391.5400
10          bferrall@kvn.com
11          rwong@kvn.com
12
13   ALSO PRESENT:  Sean Grant, Video Operator
14                      --oOo--
15
16
17
18
19
20
21
22
23
24
25
                                              Page 4
```

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

```
 1        A    Yes.                                        10:58:00
 2        Q    Did those -- did the DECSYSTEM-20 work
 3   with a boot disk?
 4        A    Yes.
 5        Q    What do you understand a boot disk to       10:58:24
 6   mean?  What does that mean to you?
 7        A    It's a generic term describing a disk that
 8   has an operating system installed on it.
 9        Q    Do you know, was the -- strike that.
10             You mentioned that the DECSYSTEM-20 sort    10:59:15
11   of reached an end-of-the-product road in the 1980s.
12             Was the TOPS-20 software ever used on any
13   other computers, to your knowledge?
14             MR. NEUKOM:  Objection.  Compound and
15   vague.                                                10:59:43
16             THE WITNESS:  I'm not aware of it being
17   used on any other computers.
18   BY MR. FERRALL:
19        Q    Are you familiar with something called
20   EXEC, E-X-E-C, in TOPS-20?                            11:00:25
21        A    Yes.
22        Q    What is that?
23        A    It's a program.
24        Q    What does it do?
25        A    It's the interface -- the human interface   11:00:47
```

Page 50

| | | |
|---|---|---|
| 1 | for the TOPS-20 operating system. | 11:00:48 |
| 2 | Q    How did humans interface with the TOPS-20 | |
| 3 | operating system? | |
| 4 | A    Typically through a character -- character | |
| 5 | mode terminal. | 11:01:16 |
| 6 | Q    Can you explain what a character mode | |
| 7 | terminal is? | |
| 8 | A    A CRT, cathode ray tube, that has an | |
| 9 | attached keyboard that can send characters to the | |
| 10 | computer and receive characters back, and displays | 11:01:42 |
| 11 | them on a screen. | |
| 12 | Q    Did you use such a terminal in your role | |
| 13 | as a systems programmer at Stanford? | |
| 14 | A    Yes. | |
| 15 | Q    And was the terminal that you're talking | 11:02:09 |
| 16 | about here, was that itself a DECSYSTEM-20 terminal? | |
| 17 | A    Not necessarily. | |
| 18 | Q    Was it for the ones that you used? | |
| 19 | A    Some terminals were of DEC manufacture and | |
| 20 | some were of other manufactures. | 11:02:40 |
| 21 | Q    Was the EXEC program part of TOPS-20? | |
| 22 | A    Yes. | |
| 23 | Q    How would you get to the EXEC program on | |
| 24 | one of these terminals? | |
| 25 | MR. NEUKOM:  Objection.  Form. | 11:04:10 |

Page 51

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

|   |   |   |
|---|---|---|
| 1 |    THE WITNESS:  You would typically -- on a | 11:04:20 |
| 2 | terminal that was idle, you would press a "return" |   |
| 3 | key. |   |
| 4 | BY MR. FERRALL: |   |
| 5 |   Q And how would you know that you were then | 11:04:35 |
| 6 | in the EXEC program? |   |
| 7 |   A It would print a short message and an "at" |   |
| 8 | sign. |   |
| 9 |   Q And then you could enter your character |   |
| 10 | string after the "at" sign; is that right? | 11:04:59 |
| 11 |   A You could do that. |   |
| 12 |   Q Was that -- how would you operate on |   |
| 13 | the -- in the EXEC program as a systems programmer |   |
| 14 | at Stanford? |   |
| 15 |   A If it was very generic information, there | 11:05:32 |
| 16 | were a few commands available.  Otherwise, I would |   |
| 17 | have to log in. |   |
| 18 |   Q And what would logging in allow you to do |   |
| 19 | that you couldn't otherwise do? |   |
| 20 |   A Gain access to more -- to more commands. | 11:05:55 |
| 21 |   Q If you were logged in, was the screen |   |
| 22 | different in terms of what was presented to you for |   |
| 23 | entering characters? |   |
| 24 |   A No. |   |
| 25 |   Q So you'd still have the "at" sign? | 11:06:21 |

Page 52

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

```
1    that software.                                          11:11:38
2        Q    So you saw the EXEC source sometime during
3    your time at Stanford?
4        A    Yes.
5        Q    Why did you look at the EXEC source code?      11:12:02
6        A    To apply patches, fix bugs.
7        Q    How often would you have to fix bugs in
8    the TOPS-20 code, do you recall?
9        A    I do not recall -- recall the frequency.
10       Q    Do you understand whether there was a          11:13:26
11   privileged mode in TOPS-20?
12       A    Yes.  There is -- there is a privileged
13   mode.
14       Q    And what distinguishes a privileged mode
15   from any other mode?                                    11:13:50
16       A    The -- assuming that you had access to the
17   privileged mode or the privileged -- to additional
18   privileges, it would change the -- change the prompt
19   character.
20       Q    Do you know what the prompt character was      11:14:29
21   in the privileged mode?
22       A    Yes.
23       Q    What was it?
24       A    Stanford used an exclamation mark.  DEC
25   had a character -- a different character that I         11:14:49
```

Page 55

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

|    |   |                                                                 |          |
|----|---|-----------------------------------------------------------------|----------|
| 1  |   | reveal -- basically mostly status commands and ones             | 14:27:53 |
| 2  |   | for handling connections over the network to other              |          |
| 3  |   | hosts, sort of a subset of the -- of the terminal               |          |
| 4  |   | server commands.                                                |          |
| 5  | Q | And you said you chose the term "EXEC,"                         | 14:28:26 |
| 6  |   | that's E-X-E-C; is that right?                                  |          |
| 7  | A | Yes.                                                            |          |
| 8  | Q | You chose that term, yes?                                       |          |
| 9  | A | Yes.                                                            |          |
| 10 | Q | How did you come up with that term?                             | 14:28:39 |
| 11 | A | Well, I had a number of possible ways of                        |          |
| 12 |   | describing it. I could have used "shell" after                  |          |
| 13 |   | the -- modeling it along the UNIX way of -- UNIX                |          |
| 14 |   | equivalent.                                                     |          |
| 15 |   | From -- I decided EXEC in sort of -- you                        | 14:29:15 |
| 16 |   | know, inspired by the TOPS-20 command processor.                |          |
| 17 |   | You know, calling it the command processor would                |          |
| 18 |   | have been another possibility.                                  |          |
| 19 |   | There was a number of possibilities that I                      |          |
| 20 |   | could have called it, what I could have called that             | 14:29:38 |
| 21 |   | particular part of the software, and I ended up                 |          |
| 22 |   | choosing EXEC.                                                  |          |
| 23 | Q | Now, were you responsible for determining                       |          |
| 24 |   | the prompt symbol on the interface?                             |          |
| 25 |   | I'm sorry. Let me be clear.                                     | 14:30:26 |

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

| | | |
|---|---|---|
| 1 | A    When Cisco announced the -- actually, it | 18:06:22 |
| 2 | was in the Mercury News in the morning, and then | |
| 3 | later through internal email at Cisco. | |
| 4 | Q    When the suit was filed? | |
| 5 | A    When the suit was filed. | 18:06:38 |
| 6 | Q    Okay. Not before? | |
| 7 | A    Not before. | |
| 8 | Q    Did you have any involvement in the | |
| 9 | litigation between Cisco and Huawei? | |
| 10 | MR. NEUKOM:  That's a "yes" or "no" due to | 18:06:49 |
| 11 | privilege concerns. | |
| 12 | THE WITNESS:  No, I was not involved with | |
| 13 | Huawei. | |
| 14 | BY MR. FERRALL: | |
| 15 | Q    Are you able to -- sorry. Strike that. | 18:07:26 |
| 16 | Were you involved at all in composing any | |
| 17 | of the commands that begin with "AAA"? | |
| 18 | A    No. | |
| 19 | Q    Can you tell me how the "clock set" | |
| 20 | command was composed? | 18:08:07 |
| 21 | A    No, I cannot. I wasn't involved. | |
| 22 | Q    Can you tell me how any of the IPv6 | |
| 23 | commands were composed? | |
| 24 | A    Yes. | |
| 25 | Q    Which ones? | 18:08:30 |

Page 183

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

1    I, the undersigned, a Certified Shorthand
2 Reporter of the State of California, do hereby
3 certify:
4    That the foregoing proceedings were taken
5 before me at the time and place herein set forth;
6 that any witnesses in the foregoing proceedings,
7 prior to testifying, were administered an oath; that
8 a record of the proceedings was made by me using
9 machine shorthand which was thereafter transcribed
10 under my direction; that the foregoing transcript is
11 a true record of the testimony given.
12    Further, that if the foregoing pertains to
13 the original transcript of a deposition in a Federal
14 Case, before completion of the proceedings, review
15 of the transcript [X] was [ ] was not requested.
16    I further certify I am neither financially
17 interested in the action nor a relative or employee
18 of any attorney or any party to this action.
19    IN WITNESS WHEREOF, I have this date
20 subscribed my name.
21
22 Dated: 11/25/2015
23
24                              *Carla Soares*
25                              CARLA SOARES
                                CSR No. 5908

Page 189