1          UNITED STATES DISTRICT COURT

2          NORTHERN DISTRICT OF CALIFORNIA

3   Before The Honorable Beth Labson Freeman, Judge

4

5   CISCO SYSTEMS, INC.,              )
                                      )
6          Plaintiff,                 )
                                      )
7   vs.                               )   No. C 14-05344-BLF
                                      )
8   ARISTA NETWORKS, INC.,            )
                                      )
9          Defendant.                 )
    _____    )

10

                                          San Francisco, California
11                                        Thursday, December 3, 2015

12   TRANSCRIPT OF PROCEEDINGS OF THE OFFICIAL ELECTRONIC SOUND
                RECORDING 2:01 - 3:16 = 75 MINUTES
13

14   APPEARANCES:

15   For Plaintiff:

                             Quinn, Emanuel, Urquhart
16                             & Sullivan, LLP
                             50 California, Floor 22
17                           San Francisco, California
                               94111
18                     BY:   SEAN SANG-CHUL PAK, ESQ.
                             JOHN M. NEUKOM, ESQ.
19                           MATTHEW CANNON, ESQ.

20   For Defendant:

                             Keker & Van Nest, LLP
21                           633 Battery Street
                             San Francisco, California
22                             94111
                       BY:   ROBERT ADDY VAN NEST, ESQ.
23                           BRIAN L. FERRALL, ESQ.

24

25

*Echo Reporting, Inc.*

2

1 Transcribed by:                 Echo Reporting, Inc.
                                  Contracted Court Reporter/
2                                 Transcriber
                                  echoreporting@yahoo.com
3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

3

Thursday, December 3, 2015                          2:01 p.m.

                    P-R-O-C-E-E-D-I-N-G-S

                          --oOo--

          THE COURT:  Please be seated.  Good afternoon
everyone.

          ALL:  Good afternoon, your Honor.

          THE COURT:  I hope you didn't get caught in the
rain yet.  I'll probably send you back on the road just as
it starts pouring.

    We have actually what I think may be a little bit of a
big job today.  In reading your papers, I was struck by the
seeming unmanageability of this case as it heads to trial,
and so, although Arista is seeking to expand its opportunity
for discovery, it really raises the issues for me as to how
the case can be structured in a way that it can reasonably
be tried.

    Now, you all have extraordinary experience in taking
these big cases and making the manageable for trial.  So I
know we can do that, but it seems that it may be that at
this point we need to start developing some of those
strategies so that we can all be on the same page as we get
close to trial, and since -- well, trial right now is around
the corner, and one of the requests is that we postpone that
trial, I wanted to start and direct your comments to the
trial continuance to a realistic schedule, and I've really

4

1   worked with my calendar and would -- if I were to extend the
2   day for trial, I would set the case for trial on November
3   21st.  That is, as you obviously know, the week before
4   Thanksgiving.  My goal that week would be simply to pick a
5   jury, send them home for the holiday, and then come back on
6   that Monday, the 28th, and be in trial in earnest.  But one
7   of my concerns was that based on Mr. Van Nest's description
8   of the discovery, I didn't know if I was in for a six-month
9   trial here.  And so I'm not scheduling this for six months,
10  and -- and you're not the only case scheduled on that day.
11  But, of course, you never are in any court in the country.
12  So you certainly understand that part of it, but I've tried
13  to pick a day where you had a reasonable chance of being the
14  one that goes out.  And so, with that date in mind and my
15  concerns about the manageability of the case, I then wanted
16  to get to the issues that were presented in the request.
17          MR. VAN NEST:  Your Honor, the first thing I want
18  to say is thanks for finding time for us today.  I know that
19  your schedule is overwhelming.  So those dates are fine with
20  Arista, picking a jury on the 21st and starting on the 28th,
21  and I think, if the Court please, I'll address the timing
22  and discovery issues first briefly and then talk about trial
23  management unless you want me to flip it around.
24          THE COURT:  That's fine.  Yes.
25          MR. VAN NEST:  I've got some ideas on that as

5

1  well.  So the reason for the -- the reason for the requests
2  we're making really come from the nature of the case and the
3  continuing difficulties the parties have had in discovery
4  and delays that have continued since we were here before.
5  That's why we're asking for a fairly short continuance.
6      Right now Cisco's claiming an individual protectable
7  interest in all 500 commands.  They have 26 copyright works.
8  They have 500 commands.  You can think of that a little bit
9  like a patent case where we have not 26 patents, but because
10 many of the copyrights , but if they're claiming an
11 individual interest in 500 commands, that's like 500 patent
12 claims in a patent case which would be extraordinary.
13     So in copyright, unlike patent, the perspective of the
14 author matters.  That's what Judge Grewal recognized from
15 the Feist case, and whether or not the -- the author was
16 original or whether the author borrowed, that's a big issue,
17 and that's what we're trying to explore, and we've taken one
18 critical deposition of the person at Cisco that they
19 designated as the most knowledgeable person on the copyright
20 issues.  His name is Kurt Lougheed.
21     The first thing I'll tell you is he was only able to
22 talk about 38 of the 500, number one.  Number two, he hasn't
23 been involved in the command structure at Cisco in more than
24 10 years, maybe 15.  And what he conceded on the ones that
25 he was aware of was, one, a number of them were borrowed

6

1  from other prior systems that he was aware of.  Two, a

2  number of them were taken direction from Stanford where he

3  worked before he worked for Cisco.  And, three, a number of

4  the terms in these commands came directly from standard

5  setting bodies where Cisco didn't have an exclusive right.

6  So the very first witness has confirmed what we long

7  suspected, which is that many, if not most, of these

8  commands did not originate with Cisco.

9       Now, the -- the plot thickens a little bit because

10 after we took Mr. Lougheed, after the deposition was done,

11 they redesignated him on a bunch more commands and what they

12 call hierarchies and what they call modes.  So they've now

13 designated him on other subjects that we'll have to take his

14 deposition on.

15      We went beyond that, and we asked for just nine more

16 authors, I think 10, and nine of them no longer work at

17 Cisco.  So we made the perfectly reasonable request of Cisco

18 "Will you guys make those people available or do we have to

19 go chase them and subpoena them," and we are still waiting

20 to hear.  That request was made soon after we were before

21 your Honor last time, and we're still waiting to hear "Will

22 you represent them," because I don't want to -- I didn't

23 want to interact with those people if they're going to

24 represent them, and all they've told me so far is that

25 they're not.

7

1        Now, since we were last here, they still are lacking
2   authors on 26 percent of the commands.  A hundred and
3   thirty-three commands have no author.  They have reached
4   rejiggered authors on 85 of the ones that they have
5   identified before.  So on 85 of the 300 and some, they've
6   changed who they say the author is.  On a number of authors
7   they've withdrawn them entirely.  One person in particular,
8   Mr. Tong (phonetic), was designated on I think 23 commands.
9   He's now designated on one.
10       So -- so our problem is this is foundational.  It would
11  be one thing if we had 10 commands to deal with or 20, but
12  we don't.  We have 500.  And so the primary -- the primary
13  thing we need is just a little more time, which is why we
14  made the motion and why November I think is doable with the
15  schedule that we've proposed, moving the fact discovery out
16  a little bit.
17       The other thing that it will do if we move the trial
18  back just that far, we'll be able to take advantage of the
19  petitions on the patent side.  We've now filed them both.
20  They were both filed in November.  We'll hear from the PTF
21  in May, and in May, we'll know whether there's initiation or
22  not, and your Honor could decide I'm going to go forward
23  with the Markman in June notwithstanding or I'm going to
24  stay them.  My preference, of course, would be stay the
25  patents and try the copyrights.  This is a very complicated

8

1  case to begin with, and trying just the copyrights would be

2  a challenge.

3      So our request is simply move it back the four months,

4  extend the limits on the depos a little bit.  We

5  (indiscernible) for 25 in light of your Honor's comments

6  last time.  I may be dense, but I'm not stupid -- and give

7  us a few more (indiscernible) to ask them, and we'll go from

8  there.

9      So let me talk about trial management.  First of all, I

10 think it's going to be extremely challenging to try this as

11 a copyright and a patent case, and that's why I think

12 extending the schedule to let us see what happens in the

13 PTAB is important and will be very productive.  Let's assume

14 we're only looking at a copyright case for a minute.

15          THE COURT:  Okay.

16          MR. VAN NEST:  Under their theory, you would be

17 here for months trying 500.  And I'm not saying that you'd

18 have a witness on every single one.  Some of them are

19 families.  Some can be grouped.  As we indicated in our

20 discovery plan, some of the authors, according to them,

21 authored more than one -- more than one thing.  But

22 analogizing this a little bit to a patent case, if there

23 were 500 claims, what you'd be saying is, as we have agreed

24 on the patent side, let's have a protocol to cut those down.

25 Let's have some dates by which -- by which Cisco's going to

9

1  elect which ones to proceed on and which ones to abandon for
2  now, and that will do two things.  That will also tell us
3  you don't need all the authors.  If they're going to select
4  let's say at the end of the day 20 commands or even 30
5  commands -- and I'm not going to treat this like --
6  completely like a patent case.  Let's say they're going to
7  -- then we know we've got a limited number of authors that
8  we need to depose, because if they're not pursuing, you
9  know, the other 470 commands, we don't need to do that.  And
10 here's -- here's another point.
11     There's lots of different ways to do it.  Many of these
12 commands are not original to them.  They concede that some
13 of their copyright registrations say these include third
14 party things.  Those are easy to weed out.  Several hundred
15 of them are being used by other folks anyway, Juniper, HP,
16 by other folks that have similar systems.  So there's
17 several hundred as to which they've got a huge estoppel
18 problem anyway.  They've been out there being used for many
19 years by the rest of the industry today.
20     So cutting Arista out doesn't help them.  They've got
21 other folks using them anyway.  There are all sorts of ways
22 to slice it, and what I'd like to see is some protocol with
23 some dates by which you need to say, "Okay, guys.  You need
24 to -- this is what I think.  This is what I, Judge Freeman,
25 think is reasonable as a final number to try," and we can

1  meet and confer on that, and by X date you need to let

2  Arista know which ones, and as to those, you need to tell

3  them the authors, and then we can focus not only on the

4  discovery but ultimately the trial.  If they're going to

5  abandon let's say a couple hundred commands because they're

6  being used by everybody in the industry, great.  That cuts

7  our authors down somewhat.  It's still a big number.  But at

8  the end of the day we can't come in here and try 500

9  commands.  And, on the other hand, it's not fair to Arista

10 to let them come in, and I think you're going to hear from

11 counsel in a minute, "Oh, we don't have to go individually.

12 All we have to say is we had a bunch of guys working, and

13 here's a representative guy, and he wrote a bunch of these,

14 and that's our -- that's our standard practice and our

15 custom and practice.  That's how we do it, and that's good

16 enough."

17      But, obviously, we have the right to say for any

18 command they're seeking damages and injunction, we have the

19 right to say we don't believe that's original to you, and we

20 have the right to cross examine not only their

21 "representative" but whoever the author is.  Had they told

22 us now who the authors were that they were going to present

23 and the commands they're going to rely on, it's not such a

24 big problem, but right now we don't know.  We're shooting in

25 the dark.  We have the 500, and they've been steadfast here

11

1  and in front of Judge Grewal that they want to maintain

2  that.  So I think the way to manage the copyright case is to

3  analogize it a little bit to a patent case.

4      Now, let me say something about the copyright

5  registrations.  There's 26 of them.  I'm not here claiming

6  that that's like 26 patents.  It's not.  They tend to be

7  cumulative.  There's an early one where they say early, 2002

8  where they say a lot of this is third party material, but

9  we're registering it, and then there are subsequent

10 derivative registrations which add incrementally commands on

11 top of the commands that were registered earlier.  So it's

12 not really quite like a patent case, and I'm less concerned

13 about the number of copyrighted works than I am the number

14 of individual commands that they're asserting because those

15 really are more like a patent claim where authorship,

16 creativity, originality are an issue that -- that has to be

17 tried.

18     So I think the way to do this that will make it

19 manageable is provide the short continuance, give us the

20 November dates, extend out the fact discovery a little bit.

21 We proposed this -- a possible plan, but I'm not wedded to

22 that, set the Markman in June so that we know by May what

23 the PTAB's going to do, and then give us a protocol or tell

24 us to come up with a protocol that allows some narrowing of

25 this to realistically a number of commands that can be tried

12

1  in a one-week or two-week trial or whatever your Honor had

2  in mind.  I think the parties have said a couple of weeks,

3  but that -- that depends, of course, on -- on some way of

4  getting it done.

5          THE COURT:  Uh-huh.

6          MR. VAN NEST:  So that's what I would suggest,

7  your Honor, as both a way of continuing the current dates

8  and providing some --

9          THE COURT:  All right.

10         MR. VAN NEST:  -- value dates.

11         THE COURT:  Let me just ask a couple of questions,

12 and then I'll clarify what Mr. Pak presented.

13     In your view, the patent aspects of the case are

14 completely separate from the copyright, so that they could

15 be tried separately?

16         MR. VAN NEST:  Oh, sure.  Yeah.  I mean, the

17 patents have different inventors than the authors on the

18 CLI.  The patents relate to command line type stuff, but in

19 a general way.  The witnesses would be different.  The

20 experts would be different.  We have taken two of the

21 inventors, one on each of the two patents.  So I -- I don't

22 see any reason why they couldn't be severed.  I think they

23 should be severed.  Otherwise, the amount of material for a

24 jury to grapple with would be a lot, but yes.

25         THE COURT:  Okay.  And then on the claims

13

1  construction, I'm not inclined to stay the patent case just

2  with an IPR pending.

3           MR. VAN NEST:  Right.

4           THE COURT:  But if I were to continue the claims

5  construction hearing, that would respond to your concerns?

6           MR. VAN NEST:  It would.

7           THE COURT:  All right.

8           MR. VAN NEST:  And then we could reserve

9  -- see what happens in -- in May.  That would be fine.

10          THE COURT:  Absolutely, and you could -- because

11 -- I guess I -- just to be clear, I am reluctant to grant a

12 stay pending IPR decision by PTAB because, frankly, I think

13 it encourages defendants to file IPR's that may not be

14 meritorious.  I can't judge yours.  I'm never going to look

15 at yours, but just in general I think it really causes a

16 problem if courts jump in and stay cases, and I think it

17 hurts plaintiffs overall.  So I'm less inclined to do it.

18 But by continuing this to June with a November trial date, I

19 think the timing potentially is sufficient, and then you're

20 right, we could revisit the stay issue if you're successful,

21 because if IPR is granted, then I -- I think that changes

22 things, and I would be willing to reconsider a stay.  It's

23 not automatic certainly, but --

24          MR. VAN NEST:  Sure.

25          THE COURT:   -- but that's helpful.  The other

14

1 thing that I was wondering and I think you have -- in terms

2 of your discovery plan itself, the request was for 60

3 depositions.  The modification was let us get started now on

4 a smaller number and then come back.

5          MR. VAN NEST:  That's right.

6          THE COURT:  And I'm -- I'm just afraid that even

7 at 60 you're still going to say, "Well, they've actually

8 disclosed 100 authors, and we need to depose each of them."

9 So I guess my ultimate decision on the scope of discovery is

10 going to have to be evaluated in terms of the -- of the

11 development of a protocol that narrows the claims, which I

12 certainly agree with.

13          MR. VAN NEST:  I agree with that too.

14          THE COURT:  Okay.

15          MR. VAN NEST:  And I think that's fine.

16          THE COURT:  All right.

17          MR. VAN NEST:  That was my point in the

18 management.

19          THE COURT:  Sure.

20          MR. VAN NEST:  We don't need to take authors that

21 are no longer relevant.  I don't want to be limited

22 necessarily to the authors they're going to present, but if

23 they're abandoning commands --

24          THE COURT:  Sure.

25          MR. VAN NEST:  -- I don't need to take discovery

15

1  on that.  So that's exactly right, and a -- and with respect

2  to the patent case, your Honor is exactly correct.  If you

3  simply move the Markman back, the briefing's already under

4  way.  The Plaintiffs have filed, and we'll be filing

5  shortly.  If you just move the hearing back, that's all we

6  really need to do now.

7           THE COURT:  Okay.

8           MR. VAN NEST:  And let's wait and see if the PTAB

9  initiates these.  They're great IPR's, by the way.  But

10 you've probably heard that before.

11          THE COURT:  I would expect you to say nothing

12 less.  Thank you.

13          MR. VAN NEST:  Thank you.

14          THE COURT:  Mr. Pak?

15          MR. PAK:  Thank you, your Honor.

16          THE COURT:  I'm glad you could be here today.  You

17 were out of -- I don't know where in the world you were last

18 night.

19          MR. PAK:  I was in Hong Kong.

20          THE COURT:  That's right.  Yeah.

21          MR. PAK:  Believe it or not.

22          THE COURT:  Yeah.  So it was the middle of the

23 night.

24          MR. PAK:  And I did get rained upon this morning

25 as well.

16

1          THE COURT:  Yeah.

2          MR. PAK:  Double jeopardy there.

3          THE COURT:  That's right.

4          MR. PAK:  Your Honor, let me begin by saying the

5    obvious.  When it comes to the copyright claims, it is not a

6    patent case.  Mr. Van Nest and I have tried lots of patent

7    cases.  We have also tried copyright cases.  The laws are

8    fundamentally different.

9          THE COURT:  Yeah.

10          MR. PAK:  Number one, for example, if I have a

11    book with 1,000 pages and a competitor comes in and rips off

12    my entire book and says "I'm going to copy every single word

13    from page one to page 1,000," I'm entitled to seek copyright

14    protection on the whole book.  I'm entitled to seek

15    copyright protection on certain phrases, characters, scenes,

16    titles.  The standard of originality of a copyright case is

17    -- is exceedingly low.  The Ninth Circuit law is black

18    letter law, your Honor.  I think we've cited a number of

19    cases.  I'm going to hand up a case.  This is a <u>CDN v.</u>

20    <u>Capes</u>, 197 F.3d 1256.

21      What this case says, your Honor, is this.  It's a case

22    involving collectible coins, and the issue was you had a

23    company that would estimate the value of collectible coins,

24    and unlike a car or a smartphone, there's no agreed upon

25    price for any of these collectible coins.  So they would

1  have hundreds of employees who would go out and look at

2  published facts on transactions that may occur, supply and

3  demand projections, and on a given day they would publish

4  what they were -- they considered to be their best estimates

5  on the value of each coin, thousands of coins, involving

6  hundreds of employees.  Their process was when you look at

7  the underlying data, a lot of the estimates clearly were

8  derived or inspired by factual things, but at the end of the

9  day it was the professional judgment of the employees of

10  this company who would set these prices.

11      A competitor came in and would take exactly that, all

12  of the published prices from this company, and reformat it

13  and publish it.  And like this case, there was no question

14  about copying, and as you saw from the papers, your Honor,

15  this is not a case of incidental copying.  We have the CEO

16  of Arista saying "We don't want to innovate here.  Let's

17  take what they have."  It's not a question.  They took the

18  whole book, just like in this case.

19      What the Ninth Circuit found was that it didn't matter

20  that the originality standard here or the facts around the

21  originality were -- involved a modicum of creativity.  The

22  fact that this was a situation in which people were looking

23  at underlying data from lots of different sources, as long

24  as professional judgment was involved, as long as employees

25  of this company were making decisions that were not punitive

18

1 factually, that is sufficient to satisfy the copyright

2 standard.  And what this Court -- what the Ninth Circuit

3 found also was that you didn't need to go in and

4 individually depose every single person on every single day

5 of every single coin to determine whether any single price

6 was protectable as a copyrightable work.

7      That is what Mr. Van Nest is suggesting here today.  In

8 any case involving thousands of lines of code, hundreds of

9 employees, just like in the Oracle v. Google case with 7,000

10 lines of source code, hundreds of engineers involved from

11 both sides.  They took 16 depositions, your Honor.  That was

12 what Judge Alsup allowed.  At trial all you need are three

13 or four employees who would talk about the process of how

14 these CLI commands would have been created, just like how

15 JAVA API's were created or the process by which coin prices

16 were set.

17      This is not a patent case, and I think these analogies

18 that Mr. Van Nest is making in terms of as streamlined

19 claims we're talking about 500 patent claims.  No.  It is

20 completely in apposite to the facts of this case.  We have

21 the following facts.  If I were to try this case, your

22 Honor, Exhibit Number 1 would be the E-mail from the CEO of

23 Arista saying "Let's copy the whole thing."  That's it.  So

24 that establishes, number one, that this is a competitor on

25 competitor case.  They did it for commercial use, not fair

1  use.  They wanted to copy the whole thing, not just the

2  things that they thought were public domain.  That was the

3  intent.  That was the instruction that was given by the CEO.

4  The employees at Arista carried out those instructions from

5  day one, and then they released subsequent products year

6  after year that adopted more and more of our claims.

7      And what happened, and why did they do this?  They did

8  this because they wanted to lure Cisco customers who

9  understood these CLI interfaces, who were familiar with

10 these interfaces, be able to use the same interface commands

11 on Arista --

12      THE COURT:  But that doesn't answer the question

13 of whether the command itself is protectable, and that's

14 what Mr. Van Nest is suggesting, that you -- your evidence

15 to prove your case may be fairly straightforward, but that

16 doesn't abrogate his right to challenge each of them.

17      MR. PAK:  But, your Honor, that's true in every

18 copyright.

19      THE COURT:  True.

20      MR. PAK:  That is true in every single copyright

21 case, whether you're talking about the pricing of coins,

22 whether you're talking about the Oracle Java API's that

23 involved 7,000 lines of code, or the Microsoft cases where

24 they were talking about two million lines of source code.

25      So the idea here is what kind of discovery and what

1 kind of facts need to be presented at trial to establish

2 either copyrightability or the lack thereof.  It is not the

3 testimony of individuals making individual decisions.  It is

4 the process by which those individual decisions were made,

5 and any expert opinion -- any expert, credible expert in the

6 computer science field can take all of these (indiscernible)

7 commands, and they can analyze.  For example, they gave you

8 some examples of show IP address, set clock.  Every one of

9 the experts that both sides would hire are perfectly capable

10 of analyzing those from a technical standpoint and saying,

11 now, if the function is I want to display the clock

12 information from the router, what are four or five different

13 ways of doing it?  What are the four or five different ways

14 of doing it?  What did other companies do?  They used these

15 particular CLI commands.  What did Cisco do?  Well, Cisco

16 selected this particular command.

17    Was it necessary for Arista to use the CLI expression

18 that CLI selected to do that?  No.  That is all that is

19 required.  Whether there is individual -- the specific facts

20 around every single choice that was made, just like in the

21 context of the price say for coins or in any of these

22 software copyright cases, the individual facts of who did

23 what when --

24          THE COURT:  It seems to me that the individual

25 setting a price for coins is a process applicable to each

1  coin as opposed to what Mr. Van Nest suggests is the

2  originality of each of the individual commands.

3          MR. PAK:  It's very similar, your Honor, and

4  that's what Mr. Lougheed has testified, and here's -- here's

5  what you won't hear from Mr. Van Nest is this.  Every single

6  one of these commands that we're talking about, there's no

7  doubt that there are four or five, a dozen different ways to

8  express the same functionality.  That alone, your Honor,

9  establishes copyrightable.  That alone establishes

10 copyrightable because the choice by a Cisco employee,

11 whether it was Mr. Lougheed or some other engineer, whether

12 it happened on a particular date or not is irrelevant to the

13 question of are we protecting the underlying function or

14 idea, which is (indiscernible) on the copyright law, or are

15 we protecting a particular expression or choice of how the

16 idea can be expressed.  And so, from that perspective, it is

17 absolutely the same thing.  There is no suggestion here at

18 all, and I don't think Mr. Van Nest could credibly argue

19 that there is only one way to express a CLI command for any

20 one of these functions.  That alone would establish

21 copyright --

22          THE COURT:  So you're suggesting that once Cisco

23 chooses one of the five alternative obvious choices, that no

24 one else can use it.  Then there are four left.  And then

25 somebody else chooses the next one, and then there are

22

1 three, and you go --

2           MR. PAK:  Your Honor, the copyrightability -- and

3 just to cite circuit law, some creative spark, no matter how

4 crude, how humble, or how obvious, as long as it is

5 expressed in copyrightable form, is subject to copyright

6 protection.

7           THE COURT:  So you're saying that -- and thank you

8 for helping me with this, but the mere selection of one from

9 a group is -- is enough for originality?

10           MR. PAK:  It's professional -- it's the -- the

11 choices that we're talking about are choices that reflect

12 professional judgment and is not dictated by function.  And

13 so when you're looking at Feist Publications, which is a

14 Supreme Court case, or you're looking at the CDN case, which

15 is Ninth Circuit law case, the threshold for

16 copyrightability is exceedingly low, and that is why this is

17 not a patent case.  Patent case is completely separate.  In

18 a patent case, Mr. Van Nest is completely entitled to argue

19 that's an obvious derivation.  That is not novel.  Somebody

20 else did it.

21       It doesn't matter, your Honor.  In this case, in a

22 copyrightable case, we're not looking for originality in the

23 sense of invention.  We're not looking for originality in

24 the form of non-obviousness.  What we are asking is is this

25 reduced down to the functional level where you're precluding

23

1  the idea rather than the expression.  The answer is no.  And

2  just like I can take a book, any book out of the library,

3  take any of these sentences that appear in the book and say

4  are there four or five different ways of writing the same

5  item.  Of course there are.  That's sufficient.  You don't

6  do an analysis that says, "Okay.  Is there somebody else in

7  the world that have used this particular four or five

8  sentences together in a different book?  That's not the

9  same.  What we're looking at is as a whole and as individual

10  pieces of that whole, is this subject to copyrightability.

11  But in the end, in terms of trial management, your Honor, I

12  think this is where it ultimately comes out to, the impact

13  on the case schedule.

14      We do not need to present evidence either on the

15  Plaintiff's side or the Defendant's side on every single one

16  of these CLI commands.  That is not something that is

17  contemplated by what we're offering, and I think even under

18  Mr. Van Ness's suggestion of doing a two-week trial, no,

19  that's not going to happen.  What we are going to do is

20  present a case in which we say here is the copyrightable

21  work because it constitutes CLI commands.  It constitutes

22  what the user sees on the screen, what the user sees when he

23  types the commands.  Here are the documents that will run

24  along with this particular CLI interface.  All of this was

25  developed by Cisco employees over many periods -- many years

24

1 of development.

2     For each of these instances we're not offering expert

3 testimony, but we'll say there are at least four or five,

4 maybe even dozens of different ways of expressing the same

5 concept.  Therefore, it's not the idea that Cisco is trying

6 to protect.  It's the expression of those ideas, your Honor.

7 The same expert will say that when Arista looked at these

8 particular CLI commands, they had a choice, and what's

9 revealing that you will see in some of the discovery that we

10 presented to you, your Honor, is the instruction is from the

11 top, the CEO, was copy everything.

12     What happened over time is that some of the engineers

13 at Arista would tweak some of the CLI commands because they

14 found that what Cisco had done was not in their professional

15 judgment ideal.  So, again, that shows that all of this is

16 about choice.  The decision to copy the whole thing was a

17 choice.  The decision to deviate in certain instances was a

18 choice, and the fact that the choices were being made by

19 Cisco engineers alone establishes the copyrightability.

20          THE COURT:  So we get back to Judge Grewal's order

21 on discovery.

22          MR. PAK:  Yes.

23          THE COURT:  And he emphatically determined that

24 you had to disclose the authors.

25          MR. PAK:  Yes.

1          THE COURT:  And, of course, the standard for
2 discovery is different than the standard for admissible
3 evidence, but I'm looking at extending the trial time to
4 allow for appropriate discovery.  And so it seems to me that
5 even if I accept everything you've said about how the case
6 would be presented at trial, that Arista has the right to
7 have sufficient time to take this discovery and determine
8 what is -- leads to admissible evidence at trial.
9          MR. PAK:  And we don't question that, your Honor.
10          THE COURT:  All right.
11          MR. PAK:  And here's -- here's where we are today
12 on that.  So I -- I've addressed the trial management and
13 the trial --
14          THE COURT:  Yes.
15          MR. PAK:  -- schedule issue.  I want to talk about
16 discovery because in my mind --
17          THE COURT:  All right.
18          MR. PAK:  -- they are two separate issues.
19 February 26 is the fact discovery cutoff.  Today is December
20 3rd.  We have three months of fact discovery that remains in
21 this case, number one.
22     Number two, there's been millions of documents and
23 dozens of depositions that have already taken place at the
24 ITC in two separate ITC investigations.  Many of those
25 documents and witnesses and -- and some of these documents

1  we produced to you, your Honor, under seal, were produced in

2  those ITC investigations.  We were here arguing before

3  prosecutors when I first appeared before your Honor.  It's

4  because one of the reasons why don't need to have full blow

5  repeated discovery is we have this great volume of trial

6  testimony, deposition testimony, millions of documents.

7  CEO's and CTO's of companies have been deposed and have

8  presented.  We can take advantage of that.  So we have two

9  capable firms here.  They've also added Wilson Sonsini,

10 which is a great firm.  We have Kirkland and Ellis on our

11 side as well.  We have four law firms.  We have three months

12 of time.  We're not opposed to exceeding the 10 deposition

13 limit.  We understand that there's got to be some

14 accommodation being made.  Whether it's 15 or 20, your

15 Honor, we're fine with that, and let's -- let's go ahead and

16 conduct that discovery.  This is too early in the process

17 for us to conjecture about what may or may not be necessary

18 for this case.  We have three months of discovery left.

19 They've already deposed multiple witnesses on the patent

20 side on the copyright side.  We've given them dates.  We're

21 asking for dates.  Let's go ahead, and if your Honor's

22 willing to increase the deposition limit to 20 or 15, let's

23 go ahead and do it.  You know, we're open for business, as

24 we said before.  Let's take those depositions.  I know we

25 can squeeze in at least 10 depositions in December.  Let's

1  get some more done in January.  Let's get some more done in

2  February.  And also, your Honor, many of the deposition

3  requests that they made would lead to damages.  And, as your

4  Honor knows, we have an extended period of time to conduct

5  additional damages related discovery.  So we can prioritize

6  our discovery here.  We can focus on liability issues.

7  Let's get that done.  Then we're going to have time to do

8  additional fact related deposition testimony on damages

9  related issues whether it's lost profits or market

10  competition.  We can do that in the springtime.

11      So all of that can be done.  And in terms of patents,

12  your Honor, we've already taken steps to reduce claims.

13  We've already reduced asserted claims.  We've offered to

14  follow the local model rules in terms of reducing the number

15  of claims, reducing the number of prior art references.

16  Your Honor, the Markman briefing is -- is virtually done.

17  We just need to do the final round of briefing.  I would

18  prefer to keep that Markman briefing on your calendar, your

19  Honor.  There's no reason -- in May all we're going to get,

20  your Honor, is an institution decision that says PTAB --

21  PTAB is going to institute this case or not.

22          THE COURT:  Right.

23          MR. PAK:  It's 12 months before we get a final

24  written decision.  So from the perspective of trying this

25  case in November, whether an IPR is instituted or not on any

1  of these claims is not going to help us streamline the

2  issue.  We're going to have to go to trial.  Let's get it

3  done.  I think -- our proposal would be let's keep the trial

4  date in August.  I think we have November as a possibility

5  if we need to go there.  Right now I'm not hearing anything,

6  your Honor, that tells me that we can't get the discovery

7  done by February on the liability side.  Let's get the

8  discovery done on the liability side.  Let's do the damages

9  discovery.  We have a date in August.  This is a competitor-

10 on-competitor case, as your Honor knows.  We're losing

11 market share every day.  This is an important case.  We

12 brought this case.  I'm sure Mr. Van Nest is going to say

13 "Well, you knew about our product in 2008."  The reality is

14 they're going to be releasing new products every year.

15 They're going to be gaining market share at our expense.

16 Their executive has gone publically and said very recently

17 that "We copied your discuss because we don't have any

18 respect for intellectual property."

19         We can't tolerate that anymore.  We want our day

20 in court.  We have an August date.  I think we can work

21 together and make this happen.  Twenty-five -- even if your

22 Honor were inclined to give them all they're looking for in

23 terms of 25 depositions, there's no reason why we can't fit

24 all that into 10 months.

25         THE COURT:  Well, one of the alternatives Mr. Van

29

1  Nest suggested is that I give him the 25 and have you come

2  back in January and see what happened and where it's leading

3  and what is reasonable.

4          MR. PAK:  I think 25 -- could we do 20, your

5  Honor?  I -- because I really don't -- I haven't -- if you

6  look at their discovery plan very carefully, there are lots

7  of places where it's unspecified as to who they want to

8  depose and --

9          THE COURT:  Yes, that's true.

10         MR. PAK:  -- I think the -- we still have the

11  damages period left.  I am perfectly fine with let's do a 20

12  deposition limit now.  Let's give both sides the opportunity

13  to get discovery done in January and December.  We'll appear

14  before your Honor in, you know, late January, report back to

15  you as to the number of depositions that have taken place,

16  what's remaining.  And if your Honor at that point feels

17  that we need to look at a November date rather than an

18  August date, fine.  But right now there is nothing I've

19  heard that says that we should take an important trial date

20  that we've set all along, that's already on your calendar,

21  and, by the way, even if we got a November date, your Honor,

22  who knows what could happen.  You know, as your Honor knows,

23  there may be other trials that get pushed out.  There may

24  be --

25         THE COURT:  I don't know about your August date

30

1  either.  There are no guarantees.  And --

2            MR. PAK:  Understand.

3            THE COURT:  You know, I mean, unfortunately,

4  there's no court in the country where you can get a trial

5  date that just you have.  As it is now, you are set with one

6  other trial.

7            MR. PAK:  And just one last thing on that, your

8  Honor.  We were here at the very beginning of the case where

9  we asked for expedition of the copyright claims.

10            THE COURT:  Yes.

11            MR. PAK:  And it's because for all the reasons we

12  talked about, the competition, the fact that we believe this

13  copying occurred, the instructions from the very top, that

14  we thought it's a very manageable case to try.  They

15  resisted that, and they -- they resisted that by saying that

16  we need to have a consolidated litigation, consolidated

17  trial on the copyright and patent claims.

18            Ultimately we conceded because we saw overlap.  We

19  saw efficiency in doing it together.  We've conducted both

20  cases.  Every time we've deposed people, we've asked about

21  copyright as well as patent issues.  They've done the same

22  thing.  We have lots of overlap, particularly with respect

23  to the ITC case where there are lots of deposition testimony

24  that's going to cover both copyright and --

25            THE COURT:  Is that completely concluded, the ITC

1 case?

2         MR. PAK:  Yes, your Honor.  I believe that there

3 is one more date of hearing left in the second trial.

4         MR. VAN NEST:  That's right.

5         MR. PAK:  But I think -- I think the hearing has

6 gone --

7         THE COURT:  When do you anticipate a decision?

8         MR. PAK:  Yeah, these --

9         MR. VAN NEST:  I believe the first ID, your Honor,

10 is in January, from the first -- there are two ITC cases.

11 The first initial determination I think is due in January.

12         THE COURT:  But then that's a process.  That's an

13 initial determination.  That's not the final --

14         MR. PAK:  That's not --

15         MR. VAN NEST:  And there's a --

16         THE COURT:  Yeah.

17         MR. PAK:  There are several months that follow

18 that.

19         THE COURT:  That -- and so will any of the

20 findings there affect --

21         MR. PAK:  The findings won't affect what's --

22 what's going to be tried in our case, your Honor.  What --

23 what is very very helpful and we've -- and both sides have

24 now agreed to produce all of the trial records from those

25 hearings -- is that there was testimony that was given about

1 many aspects, for example, the CLI parser that's used, which

2 affects both the copyright claims as well as the patent

3 claims.  Mr. Duda's testimony, who's the CTO of Arista, is

4 very helpful to, you know, potentially both sides in this

5 case.  I think there -- there's lots of discovery and trial

6 testimony from those ITC investigations that will be very

7 helpful as we know in this case.

8      So all I mean to say by that is we were here.  We had

9 the opportunity to bifurcate.  We didn't do that, and your

10 Honor said "I understand that this is a competitor-on-

11 competitor case, and we find the first -- earliest trial

12 date."  That was August.  We said fine, your Honor.  If

13 that's the best that we can get, let's try them together.

14 We're going to work really hard to make this happen.  We

15 still stand by that, your Honor, and if it's increasing from

16 10 to 25, there's no reason in the world why we can't get

17 that done in three months, no reason.  And so let's -- you

18 know, I would suggest to you, your Honor, that let's go to a

19 limit like 20 depositions, see what -- where we stand at the

20 end of January.  If your Honor is inclined at that point to

21 give them an extra month or two to get some additional

22 depositions done, then we can look at November.  But for now

23 I say stick with the August date.  We're willing to work

24 with them on increasing the deposition limits, but nothing

25 I've heard indicates that we should somehow go off the rails

33

 1  here in terms of everything that we do on this case.  We've

 2  worked really hard to make it happen.

 3           THE COURT:  Well, I certainly appreciate that, and

 4  I certainly am satisfied both sides have the resources

 5  necessary to do just about anything that has to be done and

 6  firms that are used to doing that.  So I certainly

 7  understand that.

 8       So your -- in terms of trial management, I generally am

 9  opposed to bifurcating cases.

10           MR. PAK:  Yes.

11           THE COURT:  Because when I can have one trial

12  versus two, it's an easy call for me.

13           MR. PAK:  Right.

14           THE COURT:  And so I'm inclined to keep them

15  together.  It is a hard job for a jury, and they -- you

16  know, the quantum of evidence and proof necessary on a

17  patent claim is distinctly different.  So two patents, I

18  don't know how many claims will actually be asserted at

19  trial, but on top of this, I mean, if you had -- if you had

20  five claims asserted at trial, that would add a week to the

21  trial is my guess.

22           UNIDENTIFIED SPEAKER:  So we're expecting, your

23  Honor -- we've done the numbers in writing.  We think a two-

24  week trial.

25           THE COURT:  Okay.  Total?

34

1          UNIDENTIFIED SPEAKER:  Total.  And I tried a case
2  down in San Diego where we had very complicated contract
3  claims as well as four patent claims.  The evidence
4  overlapped, but there was distinct evidence that had to be
5  presented, and just like many judges are doing, they put us
6  on the clock, and --
7          THE COURT:  Sure.  And you will be.
8          UNIDENTIFIED SPEAKER:  -- we got it in.
9          THE COURT:  Yeah.
10          UNIDENTIFIED SPEAKER:  And -- and the jury
11  deliberated, and they did a great job.  So I think that,
12  again, more time doesn't necessarily --
13          THE COURT:  That must mean you won.
14          UNIDENTIFIED SPEAKER:  More time necessarily
15  doesn't mean that it's going to translate into quality of
16  presentation.
17          THE COURT:  All right.  All right.  Thank you.
18          UNIDENTIFIED SPEAKER:  Two-week trial.
19          THE COURT:  All right.  I appreciate that.
20          MR. Van Nest, I -- you know, it's always hard to
21  get a change in trial date, and I do appreciate that Mr. Pak
22  is willing to accede to your desire to expand the number of
23  depositions and to come back so that we can revisit this.
24  What he's not willing to do is to agree to move the claims
25  construction.  So that keeps you working on two fronts

1 pretty feverishly, which, of course, is how we planned it.

2 I would be -- I'm finding his argument persuasive in that --

3 and because it dovetails with your own argument as a plan B

4 if you will, and that is to give you an increased number of

5 depositions, have you come back at the end of January right

6 before claims construction.  I think at that point we're

7 pretty well settled that you'll have claims construction the

8 next week because we just scheduled for that in I think the

9 first week in February.  So pushing that off is something

10 that won't happen is what's -- what we're seeing here, but

11 to give you the expanded number of depositions in a smaller

12 number than you're asking, and I think -- I mean, I've got

13 an agreement to the 20, and what I don't want is for you to

14 -- really that's only an agreement for about 12 because you

15 have to reserve all the damages experts.  So I would -- I

16 would allow up to 20, and I would -- how many did you ask

17 for for non?

18           MR. VAN NEST:  Your Honor, can I address for the

19 -- the plan.  What we -- we asked for 25 total depositions.

20           THE COURT:  Right.

21           MR. VAN NEST:  The ceiling would be 25.

22           THE COURT:  Yeah.

23           MR. VAN NEST:  And then -- and then some 30(b)(6)

24 depositions on top of that.  The parties are still meeting

25 and conferring on the 30(b)(6) topics.  So I don't think we

36

1 need to address that.

2          THE COURT:  Twenty-five plus the 30(b)(6)?

3          MR. VAN NEST:  That's right.  That's right.  But,

4 if I could, I do want to address the bigger picture.

5          THE COURT:  Yes.

6          MR. VAN NEST:  But that's -- the request was for

7 25 on all subjects.

8          THE COURT:  Okay.

9          MR. VAN NEST:  Including patents, the copyrights,

10 the damages, secondary considerations and the like, plus --

11 plus 30(b)(6) which the parties are negotiating now.

12          THE COURT:  So it could be 28, 29 total?

13          MR. VAN NEST:  That's right.

14          THE COURT:  Okay.

15          MR. VAN NEST:  So here's why I think this is

16 unrealistic.  First of all, counsel is wrong on a

17 fundamental point of law that your Honor I think has picked

18 up on.  They're not backing off on the idea that each one of

19 these 500 commands is a separate protectable interest.  And,

20 as Judge Grewal found, originality is the sing qua non of

21 copyright.  That's a quote from Feist.

22          THE COURT:  Yeah.

23          MR. VAN NEST:  To qualify, a work must be original

24 to the author.  This idea that if you have choice, that's

25 good enough is bologna.  You would have to show originality

1 with the author.  Now, Mr. Lougheed, the -- the 30(b)(6)

2 person that they put -- that they designated, he's already

3 given up that a number of the command that they're relying

4 on are not original.  He's conceded that they come from

5 prior art or from standard setting or from Stanford.

6          THE COURT:  Well, but --

7          MR. VAN NEST:  So I --

8          THE COURT:  -- Mr. Pak makes a different argument.

9 He says that, "Yes, they're in the prior art, but we chose

10 one over another, and that's enough for originality."

11          MR. VAN NEST:  No, that's not right.  That's not

12 -- you have to show that it's original with the author.  The

13 fact that the author chose it from something he already knew

14 about, that's not originality, and that's what <u>Feist</u> says.

15 It's up -- it's up -- so unless they're willing to -- and I

16 also didn't hear anything about cutting the 500 down.

17          THE COURT:  No.

18          MR. VAN NEST:  I mean, it's --

19          THE COURT:  No.

20          MR. VAN NEST:  Here's the problem, your Honor,

21 with leaving this the way it is.  Why do we want to do this

22 piecemeal?  Let's get a date that we all commit to, and the

23 big advantage of the November date is it allows us to take

24 advantage of what the PTAB's going to do, right?  If the

25 PTAB initiates, we don't have to bifurcate anything today.

1 We're not even asking for that.  I'm saying bump the Markman

2 hearing back to June so you don't have to conduct it.  Let

3 us do the briefing, and if the PTAB initiates, maybe we have

4 a different situation.  Maybe we don't, but it gives us the

5 flexibility of saving what could be a completely unnecessary

6 Markman hearing if your Honor were to decide since the PTAB

7 initiates we go forward.

8     Here's the other thing.  How many authors do I have to

9 take?  He's still sitting on 500.  There are 133 commands

10 they haven't even given me an author for.  There are 85

11 commands that they just switched in the last 30 days,

12 switched from one author to another.  I have no idea.  Mr.

13 Lougheed, who's been designated as the 30(b)(6), they

14 changed his designation after the deposition.  So, while I

15 respect the fact that some things change as you go along, we

16 shouldn't be penalized for the fact that we don't have this

17 foundational discovery.  So my view would be let's set a

18 date that we think is firm.  Let's stick with that.  Let's

19 -- let's -- give us the 25 or 28, whatever your Honor is

20 inclined to do, invite us back in January, and if I think we

21 need more, I'll ask for it, and if by then Mr. Pak has said

22 "You're right, Bob, it's 250 of these that I'm not going to

23 present because they're not original Cisco or I can't find

24 the author or the author is not under my control," then we

25 have a different situation.

1        THE COURT:  Well, Mr. Pak's telling me he's not

2   even going to present the authors.  He doesn't -- he -- it's

3   not essential to his presentation of his case to have the

4   author.

5        MR. VAN NEST:  But why should I have to stick with

6   that?  I have a right to examine the author to see -- here's

7   the point.

8        THE COURT:  But Judge Grewal already made that

9   ruling.  Judge Grewal already agreed with you on that.

10        MR. PAK:  That's right.

11        THE COURT:  What I'm saying is I didn't see Mr.

12   Pak abandoning claims where he can't find the author because

13   that's not how he's going to present his case.  So the issue

14   is you've already succeeded in obtaining the discovery order

15   that you asked for to give you access to all of the names of

16   the authors.  And whether there's compliance or not is

17   something you'll deal with.  You say there isn't.  It's

18   being rolled out.

19        So you do have the right to the discovery, and now it's

20   a matter of me making sure that you have a reasonable

21   opportunity to complete that discovery before trial.  That's

22   really the issue for me.

23        MR. PAK:  That's right.

24        THE COURT:  So you won -- I mean, the big victory

25   really was with Judge Grewal I think and that I'm standing

40

1  on the shoulders of that ruling, frankly.

2          MR. VAN NEST:  It will be meaningless, though,

3  your Honor, if they're not required to designate which of

4  the 500 commands they're going to go -- because I can't take

5  200 authors or I can't take 300 authors, no matter how much

6  time you give me, right.  And it's not realistic.  And if

7  they're going to be seeking an injunction and damages based

8  on however many commands are in play -- because if -- if a

9  command is not original, Arista has the right to use it.

10 That's the point.

11         THE COURT:  But then you're going to file either a

12 motion in limine or summary judgment to exclude all of those

13 commands where you didn't get the information.

14         MR. VAN NEST:  But --

15         THE COURT:  And so what -- I -- I -- because even

16 you aren't suggesting 200 depositions, thank goodness.

17         MR. VAN NEST:  That's right.

18         THE COURT:  And you know you're not going to find

19 200 people.  You know it's not humanly possible to locate

20 all of those people.

21         MR. VAN NEST:  Well, I -- I think it is, but

22 taking them in a reasonable time, that's another thing, and

23 I'm not asking for that.  But I am saying, though, that --

24 that why should we wait until pretrial?  Shouldn't there be

25 some protocol since -- since if a command isn't original we

1 have a right to use it, there should be some protocol soon

2 where they have to start honing it down.  I understand that

3 they -- they may come in and say it's the work as a whole

4 and it's all these hierarchies.  Fine.  We -- we can take

5 discovery on that too, but to the extent they are continuing

6 to say, which they are, that we have an individual

7 protectable separate right on each of the 500, they need to

8 -- they should be making some elections so this case can be

9 tried in a reasonable period of time, right.  Which ones are

10 they going to stand on, and, therefore, which authors do I

11 need to take?  Why should I have to go out and guess which

12 of 200 authors I should depose when they know now or may

13 know or should know which commands they actually want to

14 rely on in a trial?

15         THE COURT:  Well, Mr. Pak's telling me today he

16 wants to rely on all of them, and I can't tell him to cut

17 them down.  It's -- he has a way of presenting the case with

18 a broad brush, and that only allows for you to come in at

19 the -- the level of the author and establish that his expert

20 is -- has not laid the proper foundation for originality.

21 So whether he's right or not and whether or not that's the

22 right way for him to present his case, he does bear the

23 burden of proof, and you'll win, but I can't tell the --

24 Cisco how to try its case, and if you don't get the

25 discovery, then I think the proper remedy there is for a

42

1  motion to exclude any testimony on particular commands

2  because you didn't get discovery pursuant to a court order.

3             MR. VAN NEST:  But --

4             THE COURT:  Now --

5             MR. VAN NEST:  Excuse me.

6             THE COURT:  -- going on with that, I'm not

7  inclined to keep you guessing on your trial date because I

8  don't think that is a good expenditure of your resources.

9  Doesn't matter to me, but you all will work at fever pitch,

10 only to get a little repose as opposed to having a more

11 thoughtful way of rolling out this discovery.  So I'm not

12 inclined to keep you on tender hooks about the trial date

13 until the end of January.  I don't think that makes sense

14 for anybody.

15     Mr. Pak, I actually think that because I'm able to put

16 this trial off just a few months and it's really almost in

17 the matter of counting the weeks and not the kind of year

18 and a half that I'm sometimes faced with, I think that there

19 is very little prejudice to Cisco in delaying the trial from

20 the beginning of August until the -- until mid November or

21 the end of November, especially when I do see that the --

22 Arista has been using, to your knowledge, these commands for

23 some time, and whether you finally got fed up and filed is

24 fine, but it's not -- it -- it's something that's been going

25 on.  And so I'm inclined to continue the trial date now and

43

1  give you that firm date, keep the patent case along with it

2  and not bifurcate because I think that makes sense, and then

3  to continue the claims construction to early June for the

4  convenience of the Court, frankly, in not having duplicate

5  work on its hands, and then to reset summary judgment on all

6  of this to be in an appropriate time fairly soon after

7  claims construction, unfortunately, but that's just the way

8  it will have to be because we're realistically going to have

9  to argue that summary judgment during your August slot that

10  we had originally identified.  So, you know, that will be a

11  little tight for everyone.

12      That's -- and, you know, the -- with the depositions, I

13  -- I think that 25 plus the 30(b)(6)'s is pushing the limits

14  a little bit, and I think that's an extraordinary number of

15  depositions to be taken.  I would -- I don't know whether

16  you're asking for the full seven hours for each of these

17  authors.  I don't know what's involved in those depositions.

18          MR. PAK:  I don't think they would be for the

19  authors.

20          THE COURT:  I mean, that's certainly --

21          MR. PAK:  No.

22          THE COURT:  No, I wouldn't think so either, but I

23  would be inclined to allow the 20 depositions that -- that

24  Cisco has acknowledged it wouldn't put up too much of a

25  fight on.  You've indicated there's some 30(b)(6).  I would

44

1  certainly allow those to be in addition to the 20, but that

2  includes damages and everything.  So you have to reserve

3  those.

4      And it's without prejudice to you, Mr. Van Nest, to you

5  coming back at the end of January when you've received all

6  of the discovery you're entitled to and you've taken some of

7  these depositions to inform me about what it is you're

8  learning, what benefit these are, and whether there should

9  be any more.  I'll be -- I'll be hesitant to grant any more.

10 So choose wisely among the ones you're picking, but -- and

11 I'm also -- I'm not opposed to setting up a protocol to

12 narrow the claims, but, I mean, I'm not sure Cisco's going

13 to, and it might just continue to assert the 500.

14     You suggest that if they're not original they'll have

15 to abandon them, but that's your perspective, and I think

16 that needs to be a motion and let me decide that because I

17 don't think your friend over here is going to go along with

18 you on that.

19         MR. VAN NEST:  That's fine, your Honor, but the

20 only thing I would say to that is that I'd reserve my trial

21 estimate in terms of trial time.  In other words, the -- the

22 dates are fine, but -- but I don't think -- if they're going

23 to be seeking injunctive relief on let's say 200, 300, 400

24 commands, to expect me to try that in a week or a week and a

25 half with the patents is just not realistic.

45

1          THE COURT:  Well, I'm going to tell you one thing
2  that's really wonderful about the holidays.  It's really
3  clear how much trial time you have.  So if you start -- if
4  you make your opening statement on the 28th of November, you
5  know that jury's going home for Christmas, and they're not
6  coming back in January to be deliberating on this case.  And
7  so if you start on the 28th, I'm not prepared -- you -- I've
8  got -- I think we have a realistic three-week period of time
9  before the jury is going home and decorating their houses
10  for the holidays.  And so -- that includes their
11  deliberation time, however, because I wouldn't have a jury
12  here in the -- well, I suppose a jury could be here
13  deliberating the week of the 19th of December but only for a
14  couple of days, because by the 21st --

15          MR. PAK:  Right.

16          MR. VAN NEST:  Your Honor, we should be -- we
17  should be in a better position to evaluate that down the
18  road.  I just --

19          THE COURT:  But this is in -- this would be a firm
20  trial date.  Everyone understands that.

21          MR. VAN NEST:  I got it.  My point is that -- that
22  with in limines and pretrial, we'll be able to evaluate who
23  gets to do what during the trial obviously.

24          MR. PAK:  Your Honor, if I -- if I could offer
25  another possibility.

46

1          THE COURT:  Okay.

2          MR. PAK:  This case, especially on the copyright

3 side of the case, is very very important to Cisco because

4 every month there are customers that are being taken away

5 from Cisco to Arista, and we're talking about billions of

6 dollars of revenue each year that's at stake.  So a three-

7 month delay is a significant delay to us in terms of getting

8 relief, whether ultimately it's injunctive relief, and

9 damages in this case.

10     We have always stood by the idea that if necessary, we

11 would try the copyright case first.  And if the -- if the

12 complications here relate to whether it's let's -- let's

13 push off the Markman hearing until June, there may be too

14 many witnesses when you combine the patent case with the

15 copyright case to fit everything in, fine.  Then let's do

16 the copyright case in August.  We will prioritize all the

17 discovery that Mr. Van Nest needs on the copyright liability

18 case now.  He's got 25 depositions.  Let's take them.  Give

19 us names of people you want on the CLI authors.  Give us

20 names of people that you want us to try to track down who

21 are third party witnesses.  Let's get that discovery done.

22 We'll do a week or two-week trial on the copyright issues in

23 August, and then if you -- if Mr. Van Nest wants to wait

24 until June to do the Markman hearing on the patent side,

25 fine.  Let's do the patent case on a shifted schedule to

47

1  allow for your Honor to take --

2          THE COURT:  I'm probably not willing to give you

3  August.  I don't have any compelling reason to give you any

4  -- I'm sorry -- November for the patent case.

5          MR. PAK:  That's fine.  And I think we would look

6  at something beyond November for the patent case.  All I'm

7  suggesting, your Honor, is that three-month delay is that

8  important to us that we -- frankly, as a trial litigator,

9  your Honor, there's a lot of synergy in trying the patent

10 copyright claims together.

11         THE COURT:  I'd rather do it all at once.  It's

12 much more efficient for me.

13         MR. PAK:  But what I have been told by my client,

14 your Honor, is that the three-month delay is very very

15 significant and that what they have told me from the very --

16 very beginning is that it's so significant that we are

17 willing to forego the trial advantages of trying the

18 copyright and patent claims together.

19     And, as Mr. Van Nest said, if he's going to be arguing

20 that even if we started November 28th, it's going to be a

21 challenge to stick in both the copyright and the patent

22 claims together and then give the jury maybe a week of

23 deliberation --

24         THE COURT:  Well, you know, I guess I look at it

25 differently.  It's not a challenge at all when I give you

48

1  the number of hours you have.  It's not a challenge at all.

2  So I -- you know, I don't -- that doesn't phase me in the

3  least.  I mean, I won't be as draconian as what you've seen

4  in text.

5            MR. PAK:  Right.

6            THE COURT:  So, you know, it's always generous

7  when you come here.

8            MR. VAN NEST:  You're not lifting my afternoon

9  much.

10            MR. PAK:  Your Honor, I would very respectfully

11  suggest to you, your Honor, we have a date in August.  We've

12  -- we've already suggested to your Honor from day one that

13  the copyright claims are so important to us that we would

14  like to try this as early as possible.

15            THE COURT:  So I hear your impassioned plea.

16            MR. PAK:  Yes.

17            THE COURT:  I believe that your clients feel

18  strongly about it, but realistically, when Arista's been

19  using these commands for so long, it seems to me that the

20  marginal effect of a few months is pretty small when I look

21  at actual prejudice as opposed to desire.

22            MR. PAK:  Well, your Honor --

23            THE COURT:  Because what it really sounds like is

24  that you smell that you have some tactical advantage and

25  you'd like to continue to use that.

1          MR. PAK:  Not at all, your Honor.  Not at all.

2   And here's the reason why.  I am willing to, as I've

3   indicated, work with Mr. Van Nest to prioritize all the

4   deponents that he wants to take within the limits that your

5   Honor will authorize on the CLI case.  What I am suggesting

6   to your Honor is that three months, especially when we're

7   looking at August to November and we're looking at very

8   important sales activities that are going to take place, new

9   releases of products.  As your Honor knows, we have ULS and

10  ULS Plus.  We anticipate new offerings that are going to

11  come out in the -- in that time period that are important to

12  us, important to Arista.  Those dates matter to us, and I'm

13  not here at all seeking any kind of tactical advantage

14  because if it were up to me, your Honor, there's no reason

15  why in the world that I would want to give up the

16  opportunity to try these two cases together.  However, given

17  my client's business considerations of the competition, when

18  they have a CEO of the other side which said we want to take

19  everything they have and let's take customers away from

20  them, and we have new products that are being released, with

21  the expansive versions, new features being brought in, there

22  are copycats of what we have done, we're willing to make the

23  sacrifice, your Honor.  And what I would suggest is that

24  eliminates a lot of issues.  We would look at a very focused

25  trial.  If your Honor remembers, the very first time I got

1 up here in front of your Honor, we said "Look, there are

2 some very very helpful things to a jury in terms of

3 simplifying the case."  We're going to focus on the

4 copyright claims.  It's going to be from our side we're

5 going to present a case that's going to say here is the

6 instruction from the CEO to copy everything.  Here is what

7 they did.  They copied the manuals.  They copied everything.

8 Mr. Van Nest can come back and say "I have some

9 representative authors who's going to testify and try to

10 demonstrate to you that these were not original."  We'll say

11 it really doesn't matter because the -- the bar is so low.

12 They copied everything.  They copied everything with the

13 purpose of stealing customers away from us.  Here is the

14 damages case.  The experts will opine.  We can get that case

15 done a week, week and a half.  And so what I would suggest

16 is, your Honor, if -- there are lots of moving pieces here.

17 Your Honor has looked at the schedule and said maybe it

18 makes sense to move the Markman hearing back.  There's the

19 IPR's.  We get that.  And there may be some complications

20 with trying the patent case and the copyright case in terms

21 of the simplification of issues for the jury.  In that case,

22 let's try the copyright case now.  Let's put the patent case

23 on a slower schedule to allow for additional depositions to

24 be taken on -- on the patent side.  We can do the Markman in

25 June, but let's prioritize the CLI authors that they are so

1  hot and bothered by.  Let's go get them, whether they're

2  employees of Cisco or somewhere else.  Let's take those

3  depositions.  We come back, report to you as to how that's

4  gone, and I'm sure that we're going to get these depositions

5  done, your Honor, and we can meet that August date, and I

6  think that would guarantee that we would have adequate time

7  for both sides to present a meaningful defense at trial,

8  because while we all agree that timeliness can work

9  practically, it is a challenge, and it is a challenge, and I

10 think that if we were focused on a copyright trial in

11 August, both sides can prioritize all the discovery they

12 need on that now, get those experts' opinions in.  Let's do

13 the summary judgment motions.  If Mr. Van Nest thinks he has

14 a great motion to preclude or summary judgment motion,

15 great.  I mean, we think we have one on the copying.  Let's

16 get those on file, and that will further streamline the

17 issues regardless of how it turns out.  Let's go to trial in

18 August on the copyright claims.  If your Honor is inclined

19 to then wait to set a trial date for the patent case until

20 June, after we've done the Markman hearing, we're open to

21 that suggestion, but that I think would address your trial

22 management issues.  I think that would address all the

23 concerns about prioritizing discovery, and -- and that would

24 allow our client to go to -- to trial on a claim that it

25 feels very strongly about.

52

1        THE COURT:  So let me ask you a couple of followup

2   questions on that.

3        MR. PAK:  Sure.

4        THE COURT:  Mr. Van Nest suggests that you've been

5   slow to comply with Judge Grewal's order and that the --

6   Arista does not have the list of authors for all of the

7   commands that are at issue.  So now you are indicating

8   you'll double your efforts and make everyone available --

9        MR. PAK:  Well --

10       THE COURT:  -- that you can --

11       MR. PAK:  -- they -- here's the reality, your

12   Honor.  We provided over 1,100 interrogatory responses that

13   -- and this process, again, we're looking at a 20-year

14   development history.  So what we're -- any many of these

15   employees don't work at Cisco anymore.

16       THE COURT:  Sure.

17       MR. PAK:  So what we're having to do is, at great cost

18   to us, which we understand based on Judge Grewal's order was that

19   we make a reasonable effort, just like in all discovery --

20       THE COURT:  Sure.

21       MR. PAK:  -- to do this.  We've gone out.  We've looked

22   at source code.  We've pulled source code out of the archives to

23   looked at check-in dates to see who checked in the files. We've

24   pulled product documentation.  We've interviewed custodians.

25   We're continuing that process today, and the reality is we may

53

1  never get all the names because this is in the process of many

2  years of development, just like in any of these cases, whether

3  you're talking about the <u>Oracle</u> case or you're talking about the

4  price of coins, you're never going to find every single person who

5  touched the --

6          THE COURT:  No, you won't.

7          MR. PAK:  -- work.  So the question is from a

8  reasonable standpoint, has Cisco done what it can.  Of course we

9  have.  We have a continuing duty under the Federal Rules to

10 supplement our evidence.  We're going to do that.  We'll continue

11 to supplement the evidence.  And if Mr. Van Nest feels that at

12 some point he needs to take some further deposition based on names

13 that we've disclosed at a later point, he's got the 25 minutes.

14 We can talk about that.  But to me, this idea that somehow we have

15 been dilatory makes no sense given the volume of information that

16 we have collected and we've provided, and I'm more than happy to

17 sit in front of Magistrate Grewal and explain to him the

18 undertaking that we've done and defend the work that we have done,

19 because I know it was an incredible amount of work that Cisco

20 engineers and my law firm has been involved in to make that

21 happen, and we put it on a silver platter for Mr. Van Nest.  We

22 have given charts of dates, of names, of when -- when the source

23 code files were checked in and --

24         THE COURT:  I think you thought yourself it was a

25 little tarnished when you gave it to him.

54

1          MR. PAK:  So -- so, again --

2          MR. VAN NEST:  Tupperware.

3          MR. PAK:  Again, you know, the question is Mr. -- Mr.

4  Van Nest's question again is, you know, we need to depose every

5  one of these inventors, and we haven't got the names.  You don't

6  need the names to know whether these were original expressions or

7  not because -- and this is the law that I asked your Honor to take

8  a look at in the CDN case -- it's about whether there is a choice,

9  there's professional judgment that was used, and in every single

10 one of these 500 multi-word commands, there's no question that

11 another company could have implemented the same functionality in a

12 different way and that professional judgment was used by Cisco

13 engineers.

14          THE COURT:  Well, you know, I'm not here today to

15 decide how or what you need to do to prove your case, and I don't

16 want to do anything that would suggest that I'm limiting your

17 discovery based on my view about how the case should be tried.  I

18 -- I think it's important to allow Judge Grewal's order to be

19 effectuated.

20      And, Mr. Van Nest, one of your -- I believe in your papers

21 you did suggest that if the patent case was spun off, that that

22 might lead the way to retaining the August date.

23          MR. VAN NEST:  I don't think we ever said that.  What I

24 was going to say was your plan is the most simple and the most

25 concrete and the most workable, and it's a three to four-month

55

1  delay.  That's what we should do.

2      I would say on this whole prejudice issue, we asked them

3  right up front who are the customers that we took from you.  We

4  don't have an answer to that question yet.  I haven't been

5  complaining much, but that's another one we're going to go to

6  Judge Grewal on.  He says it's billions of dollars and all these

7  customers.  They haven't listed one person that -- that is going

8  to say that.

9      So your plan is simple.  It's concrete.  It gives us a fixed

10 date, and we can live with it, and we don't have to keep adjusting

11 it, and it's not the patent case.  Excuse me, Counsel.

12             MR. PAK:  Yes, sure.

13             MR. VAN NEST:  It's not the patent case that's causing

14 the delay.  It's the copyright case.  The patent case benefits

15 from a delay because you don't have to do a Markman that you might

16 otherwise not have to do.  It, frankly, doesn't save me much work.

17 We're going to do the Markman briefing anyway.  All I'm saying is

18 because the copyright case is in the state it's in, because we had

19 to wait five months to get names of any authors while we were

20 banging on the door, not one, because we had to go to Judge Grewal

21 and he gave us the discovery, let's implement that with a very

22 short delay, which is all we need to do, and get these things

23 fixed in stone and do it, and that makes the most sense to me.  I

24 do not want to -- I do not think it's fair of Arista or realistic

25 for your Honor or Grewal or anybody else given what I've seen so

56

1  far in this case to try this in August.  It's completely

2  unrealistic.

3           THE COURT:  Well, thank you both.

4      You know, I will say that there are many rational,

5  reasonable ways to plan and decide how to present a trial.  You've

6  given me several.  So it's not a matter of my choosing the one

7  that's clearly superior to the other.  There are certainly merits

8  on both sides.

9      I'm not persuaded that the three-month delay is prejudicial

10 under the circumstances of this case where Arista has been using

11 these commands for such a long period of time.  And so, with that

12 in mind and the fact that I am able to give you a trial date, it

13 is really only a few months later, and you retain a single trial

14 for the entire case, which is really for judicial efficiency so

15 very important not to have two trials and two juries and two post-

16 trial periods of time and briefing and -- and so for -- for those

17 reasons and -- but really primarily on the basis of my

18 determination of the -- of an insufficient showing of prejudice, I

19 am going to grant the request to continue the trial date.  It will

20 be set for November 21st.  That would be jury selection only.  I'm

21 not ruining all of your Thanksgiving, but I'm really not ruining a

22 jury's Thanksgiving.  I'm not going to decide how much time you

23 have.  You understand that the wall we face is the holidays for a

24 jury --

25           MR. PAK:  Sure.

57

1          THE COURT:  -- and juries are not coming back after

2   Christmas in a case like this.  You don't need that much time.

3          MR. PAK:  Right.

4          THE COURT:  But I don't have to get to that at this point.

5   I am going to move the Markman date.  I'd like to move that right away so

6   that you don't have to continue spending your time on that briefing, and

7   I think we were talking about June.

8          MR. VAN NEST:  We were.  The last date for PTAB action on

9   the IPR's is May 24.

10          THE COURT:  Okay.  I actually can't -- early June is not

11   available.  I have other claims construction.  I'd like to -- I'm

12   actually going to move that -- it gets a little tight with summary

13   judgment --

14          MR. PAK:  Yes.

15          THE COURT:  -- after that.

16          MR. PAK:  Your Honor, may I suggest really on the Markman

17   hearing because, again, if we are committing to November to try both

18   claims --

19          THE COURT:  Yes.

20          MR. PAK:  -- the copyright and patent claims, I would

21   respectfully suggest to you, your Honor, that we keep the Markman date

22   because it's going to allow -- we have expert depositions that will take

23   place after the Markman hearing, and any rulings that your Honor provides

24   is going to be helpful in that regard.  Plus, it also gives us an

25   opportunity to educate you on some of the technology early on that I

58

1  think will help you in dealing with some of the other issues,

2  particularly on damages.

3      So I -- I would say let's go -- if we're going to keep November --

4  and what I'm hearing your Honor saying, okay, that's the date.  We're

5  going to try the case, both patent and copyright.  We're not moving that

6  date -- then let's go ahead and keep -- keep the -- keep the Markman

7  date, and I think that we can get the briefing.  There's I think one more

8  round of briefing done -- that needs to be done.  They've taken the

9  inventors that they want to take.  We're ready to go.  Let's get that

10  done.  The more we defer work I think the more we're going to get into

11  trouble with respect to all the discovery that needs to take place here.

12  So I would say we keep the Markman.  We try the thing in November.

13          MR. VAN NEST:  That makes -- that makes no sense, your

14  Honor.  We're available any time in June.  All I'm pointing out is that

15  May -- by May 24th we will -- with respect to both of the IPR's -- the

16  first one comes out May 4th, and the second one comes -- no later than,

17  and the other one comes out no later than May 24th.

18          MR. PAK:  And the IPR --

19          MR. VAN NEST:  Any time in June we're available.

20          MR. PAK:  The IPR petitions, your Honor, is not going to

21  have any impact on the Markman ruling.  It's going to just say whether

22  the trial has been instituted, and it's going to set a trial date, which

23  is going to be a year from that point on.

24          THE COURT:  Mr. Van Nest, I'm just actually looking at being

25  able to give a claims construction ruling in advance of your summary

59

1  judgment briefing, which I think is very beneficial.

2            MR. VAN NEST:  Sure.

3            THE COURT:  And so if I go to the end of June with a trial

4  in November, I don't have enough time.  So I don't -- I'm glad to move

5  the claims construction if you want a little -- if you don't want

6  February 5th.  I don't mind moving it.  I'm just looking at what my

7  availability is, probably March, sometime in March, just really a few

8  weeks if -- if that's helpful just because of the deposition schedule.  I

9  could -- I could set it for two Fridays in March, and I don't mind doing

10 that, but I just -- I just think it's -- I'm not a judge who does claims

11 construction and summary judgment together  I actually don't even

12 comprehend that.

13           UNIDENTIFIED SPEAKER:  Your Honor, I have a trial March 8th

14 in Delaware, but I'll be back by the end of March.  So if it's at the end

15 of March, then I'm available.

16           THE COURT:  Well, that runs me into other claims

17 construction.  So, no, that was the time I had.

18           UNIDENTIFIED SPEAKER:  So what is the --

19           THE COURT:  So I would be --

20           UNIDENTIFIED SPEAKER:  Do you have some dates in mind?

21           THE COURT:  Well, I was thinking that we would do the

22 tutorial on the 16th of March and the -- actually, the 11th of March

23 would be -- would be the better day for the tutorial and the 16th -- I'm

24 sorry -- 18th for the claims construction, but that's right in the middle

25 of your trial.

60

1          UNIDENTIFIED SPEAKER:  But I don't -- I'm not sure that I'm

2 critical for the Markman.

3          THE COURT:  But maybe others.

4          UNIDENTIFIED SPEAKER:  Are those dates okay?

5          UNIDENTIFIED SPEAKER:  Those dates are fine, your Honor,

6 March 11 and March 18.

7          THE COURT:  All right.

8          UNIDENTIFIED SPEAKER:  Are okay.

9          THE COURT:  All right.  Tutorial on the 11th and the claims

10 construction on March 18.

11     Mr. Pak, those dates are available?

12          UNIDENTIFIED SPEAKER:  Yes, they're fine.

13          THE COURT:  I appreciate that.  All right.  Then what I --

14 the only other thing that I need to do just because my calendar gets so

15 impacted is set your summary judgment date, and that's going to -- I'm

16 going to take that time in August that we were going to have trial, and

17 I'd like to set your summary judgment on August 4th.

18          MR. VAN NEST:  That's fine, your Honor.

19          THE COURT:  Thank you.

20          MR. PAK:  Thank you.

21          THE COURT:  And then I guess the last thing I need is your

22 pretrial November 3rd.  And those are at 1:30.

23          MR. PAK:  Just to be clear, your Honor, on the deposition

24 limit, the expanded limit, are we looking at 20 now?

25          THE COURT:  Twenty.

1            MR. VAN NEST:  Twenty plus the 30(b)(6)?

2            THE COURT:  Twenty plus the 30(b)(6).

3            MR. PAK:  Thank you, your Honor.

4            MR. VAN NEST:  And, your Honor, I'm not sure there's much

5    objection, but we did also ask that the interrogatory limit be raised

6    from 25 to 30.  I'm not sure there was really an objection to that,

7    but --

8            THE COURT:  It seems so modest I'm fine with that.

9            MR. PAK:  We're fine with that, your Honor.

10           THE COURT:  Thank you.

11       Now, I'm not changing discovery cutoff dates.  I leave that to

12   you.  That's just -- you just don't need me in the weeds on that.

13           MR. VAN NEST:  What we do need probably is a date in January

14   to come back.

15           THE COURT:  Yes.  Yes, we do.  Let's -- either the 21st or

16   the 28th.  I don't know what's available.  Do you have a preference?

17           MR. PAK:  28th, that would work for me, your Honor.

18           MR. VAN NEST:  Need a moment, your Honor.

19           THE COURT:  Sure.

20           MR. VAN NEST:  January 28th, that's fine.

21           THE COURT:  January 28, good.  All I need in your case

22   management statement is the update on the discovery at that point.  I

23   don't think I need you to tell me anything else.  I just -- I just want

24   you to give me your information on the issues that we'll have to deal

25   with on that day.

62

1          MR. PAK:  Yes, your Honor.  We'll save the arguments for

2    another day.

3          THE COURT:  All right.  So there -- so, just to be clear,

4    I'm not -- I'm not issuing a stay on the patent case.  I'm just

5    continuing the date for the Markman hearing to be -- to the new date, and

6    so the discovery will continue on that, and if there's word from PTAB,

7    then I'll -- you know, then you can file a motion to stay at that point,

8    and I think that that works.

9       Well, thank you all.  I know this is a very important case to both

10   companies, and I certainly appreciate the importance to Cisco in

11   adjudicating these issues so that it knows where it stands with its

12   copyrighted materials, but I think the delay is modest and does protect

13   the rights of Arista.

14       Okay.  Thank you all.

15          ALL:  Thank you, your Honor.

16       (Proceedings adjourned at 3:16 p.m.)

17

18

19

20

21

22

23

24

25

63

1      _____CERTIFICATE OF TRANSCRIBER_____

2

3          I certify that the foregoing is a true and correct transcript, to

4   the best of my ability, of the above pages of the official electronic

5   sound recording provided to me by the U.S. District Court, Northern

6   District of California, of the proceedings taken on the date and time

7   previously stated in the above matter.

8          I further certify that I am neither counsel for, related to, nor

9   employed by any of the parties to the action in which this hearing was

10  taken; and, further, that I am not financially nor otherwise interested

11  in the outcome of the action.

12

13

14

15          Echo Reporting, Inc., Transcriber

16              Tuesday, December 8, 2015

17

18

19

20

21

22

23

24

25