Kathleen Sullivan (SBN 242261)
kathleensullivan@quinnemanuel.com
QUINN EMANUEL URQUHART &
SULLIVAN LLP
51 Madison Avenue, 22nd Floor
New York, NY 10010
Telephone: (212) 849-7000
Facsimile: (212) 849-7100

Sean S. Pak (SBN 219032)
seanpak@quinnemanuel.com
John M. Neukom (SBN 275887)
johnneukom@quinnemanuel.com
QUINN EMANUEL URQUHART &
SULLIVAN LLP
50 California Street, 22nd Floor
San Francisco, CA 94111
Telephone: (415) 875-6600
Facsimile: (415) 875-6700

Steven Cherny *(admitted pro hac vice)*
steven.cherny@kirkland.com
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900

[Additional counsel listed on signature page]

ATTORNEYS FOR PLAINTIFF CISCO
SYSTEMS, INC.

KEKER & VAN NEST LLP
ROBERT A. VAN NEST - # 84065
rvannest@kvn.com
BRIAN L. FERRALL - # 160847
bferrall@kvn.com
DAVID SILBERT - # 173128
dsilbert@kvn.com
MICHAEL S. KWUN - # 198945
mkwun@kvn.com
633 Battery Street
San Francisco, CA 94111-1809
Telephone:    415 391 5400
Facsimile:    415 397 7188

ATTORNEYS FOR DEFENDANT ARISTA
NETWORKS, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| CISCO SYSTEMS, INC.,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>ARISTA NETWORKS, INC.,<br><br>　　　　　Defendant. | Case No. 5:14-cv-05344-BLF (PSG)<br><br>**JOINT CASE MANAGEMENT STATEMENT**<br><br>Judge:　　Hon. Beth Labson Freeman<br>CMC Date: January 28, 2016<br>Date Filed: December 5, 2014<br>Trial Date: November 21, 2016 |

1
JOINT CASE MANAGEMENT STATEMENT
Case No. 5:14-cv-05344-BLF (PSG)

02099-00004/7612746.1

1021695

Pursuant to Rule 26(f) of the Federal Rules of Civil Procedure, Civil Local Rule 16-9, the Standing Order for All Judges of the Northern District of California, the San Jose Judges' Standing Order, and the General Civil Standing Order for Judge Beth Labson Freeman, Plaintiff Cisco Systems, Inc. ("Plaintiff" or "Cisco") and Defendant Arista Networks, Inc. ("Defendant" or "Arista") jointly submit this Case Management Statement.

### 1. Case Schedule

As set forth in the parties' Joint Stipulation Amending the Scheduling Order, submitted to the Court on January 19, 2016, Cisco and Arista have met and conferred and agreed on a schedule for the remainder of this case, which the Court recently adopted. Fact discovery (except damages) now closes on April 29, and fact discovery (damages) closes on June 10. This schedule allows the parties to focus on discovery efforts, including depositions, for nearly three additional months for liability issues, and over four more months for damages.

### 2. Discovery Limits

On December 3, 2015, the Court raised the deposition limit to 20 per side (not including Rule 30(b)(6) depositions). Dkt. No. 132. At that time, the Court stated that Arista could seek "additional discovery upon a showing of good cause." *Id.* Arista now seeks 20 additional depositions per side (moving the deposition limit from 20 to 40 per side). Cisco disagrees and argues that Arista has failed to show good cause for any additional depositions.

### *Arista's Position*

Since the last CMC, Arista's discovery efforts have been productive but frustrated by the shifting sands of Cisco's authorship contentions.[1] At the time of the last CMC, Arista had identified ten of the top CLI authors for deposition. The top ten CLI authors (by number of commands) as of the last CMC were Kirk Lougheed; Abhay Roy; Ole Troan; Pedro Marques; Devades Patil; Anthony Li; Christian Benvenuti; Graham Critchfield; Ramanthan Kavasseri; and

---

[1] Also since the last CMC, Arista has produced to Cisco over 800,000 documents, including ITC documents, and has substantially completed its custodial production of electronically stored information. Arista has also provided Cisco with dates for each of the seven witnesses whose deposition Cisco has requested.

2

JOINT CASE MANAGEMENT STATEMENT
Case No. 5:14-cv-05344-BLF (PSG)

02099-00004/7612746.1

1021695

Nataraj Bacthu. Arista has either deposed, set for deposition, or requested that Cisco provide dates for, six of those ten. But today, after two subsequent amendments, and several "corrected" responses, the list of persons responsible for the most commands looks nothing like it did two months ago. For example, Mr. Lougheed has been assigned five additional commands since Cisco's October response. Mr. Dave Hampton had only been responsible for one command and is now responsible for twenty-one. Mr. Li had two commands but now has fourteen. As of November 23, Cisco claimed that Ole Troan had authored sixteen CLI commands but by December 17, he had only authored nine commands, and the remaining seven had been re-assigned to other "authors." And Mr. Benvenuti's command count has dropped from ten to one.[2]

Because, in all events Arista will not be able to depose all of the CLI authors, it must make careful selections about who, among the 168 authors, merits a deposition. These constantly changing contentions have made it difficult for Arista to make that selection and obtain testimony from the most important author witnesses.

Moreover, Cisco has not provided Arista with complete information as to who remains a Cisco employee (or for whom Cisco retains custodial documents). As a result, in many cases, as Arista identifies candidates for possible deposition, Cisco takes a few days to indicate whether the witness is a current employee, and then—in some cases of former employees—weeks to indicate whether Cisco's counsel will represent them in deposition. As a result, many witnesses whose deposition Arista asked for in December have not yet been deposed.

Nonetheless, by January 28, Arista will have deposed seven fact witnesses, and have served subpoenas for an additional twelve fact witnesses, including corporate entities with relevant knowledge, expending nineteen of the allotted twenty fact depositions. Among the deponents are CLI "authors" Tong Liu, Kirk Lougheed, Abhay Roy, Terry Slattery and Tony Li

---

[2] Attached as Exhibit A to the Santacana Declaration in support of this Joint Case Management Statement is a chart summarizing the thirty individuals Cisco has most recently named as authors of the most commands and the commands they have authored. Attached as Exhibit B to the Santacana Declaration is Cisco's latest interrogatory response listing individuals as CLI command authors, served January 12, 2016.

(to be deposed after submission of this statement). Among the facts discovered in these depositions are:

- Mr. Roy did not actually create all of the commands for which Cisco identified him as the author. Santacana Decl., Ex. C (Roy Depo. Tr.) at 23:16–25:14.
- Mr. Lougheed used terms and phrases coined by others, and/or widely used in the industry, for various terms he claims to have authored. *See, e.g.,* Santacana Decl., Ex. D (Lougheed Depo. Tr.) at 80:9–81:12; 130:24–135:23; 144:3–10; 170:11–20; 175:5–10; 181:15–23.
- Mr. Lougheed's claimed authorship of some early Cisco commands occurred as he walked out the door from Stanford University with the source code that became the foundational Cisco router code, even though it belonged to his employer. *See, e.g., id.* at 95:9–99:6; 141:12-17.
- Ms. Liu admitted that the words she used in the commands she authored came from—and are actually defined terms in—an IEEE standard, which she had read before creating the commands. *See, e.g.,* Santacana Decl., Ex. E (Liu Depo. Tr. (Rough)) at 90:8–21, 99:5–100:4, 128:11–131:23, 139:19–140:17, 146:4–147:3.

Arista is in the process of scheduling the CLI author depositions of Ramathan Kavasseri, Liming Wei, Greg Satz, and Devadas Patil, all of whom were requested in December.[3]

In addition, Arista has served document and deposition subpoenas to seven third party companies. Arista is in the process of scheduling depositions of those entities' corporate representatives. Each of the third parties has highly relevant information concerning, among other points, the extent to which commands that Cisco now claim are proprietary are used throughout the Ethernet switch industry by many vendors. Arista has also issued a document and

---

[3] Cisco's citation to Mr. Dale's deposition only shows how its case is unraveling. Cisco now hopes to prove the originality of 514 individual commands through a witness who didn't select any of them, and who actually testified that the overriding principle in selecting CLI command expressions is to use expressions that the industry already uses and knows. *See, e.g.*, Santacana Decl., Ex. F (Dale Tr.) at 143:5-10.

deposition subpoena to Stanford University, which has information relating to the origins of many commands that pre-date the founding of Cisco. Finally, several of these third parties have information relating to prior art in the patent case.

Notwithstanding all of the depositions completed or underway, these will only touch upon a small fraction of the 168 unique CLI authors identified by Cisco. The sampling of depositions Arista has been able to complete indicates that that each command phrase has a set of facts associated with its adoption that is typically intertwined with implementing standardized routing features that are not proprietary to Cisco. If Cisco claims that each phrase is independently protected expression, Arista deserves to understand the facts behind the adoption of those phrases to prepare its defense.

While Arista concedes that it is not practical to depose all of the authors, if Arista were limited to only twenty fact witness depositions, Cisco would have the drastically unfair advantage of being able to claim proprietary rights in literally hundreds of two-, three- and four-word phrases without any opportunity for Arista to have challenged the originality or creativity that went into those phrases. As noted previously, in copyright, the defense of lack of originality depends on whether the alleged protected expression is "original to the author." *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 345 (1991). Thus, the author's testimony is relevant to the question of whether the author independently created the expression or derived it from another work. "[I]nformation as to the authorship of the disputed works . . . is reasonably calculated to lead to the discovery of witnesses for deposition and testimony as to whether, for example, a CLI 'was independently created by the author (as opposed to copied from other works)." Dkt. No. 83 at 3–4 (quoting *Feist*, 499 U.S. at 345).).

Moreover, Cisco has always asserted that *each* two-, three-, or four-word phrase is independently protectable, even though they appear scattered among dozens of thousand-page manuals, spanning decades. Motion to Compel Tr., Dkt. No. 82 at 21:14–17 (Cisco has been "perfectly clear with the Court . . . that Cisco does believe it's entitled to copyright protection on each of these multi-word commands."); *see also id.* at 22:6–10 ("I think it's fair to address the

5

JOINT CASE MANAGEMENT STATEMENT
Case No. 5:14-cv-05344-BLF (PSG)

individuals, especially given that . . . we do consider each of these expressions to be copyright protected."). As a corollary, Arista must be entitled to challenge *on an individual basis* Cisco's attempt to prevent Arista from using each such phrase: Cisco has no right to prevent Arista from using particular phrases (or command "hierarchies," or command "prompts") that are not original to it or that are subject to another defense just because Cisco's source code or entire user guide was the subject of a copyright registration. Only by discovering the factors that went into each command derivation can Arista properly defend its (and the public's) right to use that command.[4]

The deposition limit should be extended to a total of forty for the additional reason that Arista also must take depositions relating to damages, Cisco's patent claims, and Arista's defenses, including copyright misuse, fair use, and other equitable defenses. For example, Cisco's initial disclosures (in which Cisco did not include *any* CLI authors), include four patent inventors and two other business persons who have not yet been deposed. Of course, Arista should not be limited to take discovery only from the persons whom Cisco selected for disclosure, and so particularly for its affirmative defenses, Arista anticipates needing the depositions of select individuals with relevant knowledge. A twenty-deposition limit simply does not allow Arista to defend itself fairly against Cisco's sprawling and multi-faceted copyright claims, its two patent claims, and its damages claims.[5] Arista, therefore, requests that the Court set a final fact

---

[4] Cisco's response repeats the argument that both Judge Grewal and this Court already rejected; that is, that Arista should not even be able to challenge originality because the Court should simply assume that Cisco can pass that hurdle. Plainly real questions of originality arise when copyright is claimed over phrases like "ip address" that long predated Cisco's purported coining of them, and the same applies to many more—albeit more obscure—terms that track industry standard documents written by others. Similarly, Cisco's reliance on *CDN Inc. v. Kapes*, 197 F.3d 1256 (9th Cir. 1999) is misplaced because there it was not disputed that the claimed protected material, estimated prices of coins, was arrived at by the exercise of judgment and expertise. Here, the question is whether, for each claimed command phrase, Cisco simply borrowed the terms from others. Under no circumstance can *CDN* be interpreted as holding that a defendant does not even have the right to explore this defense.

[5] In its most recent count, Cisco has identified thirty-one individuals who purportedly authored five or more commands. The current discovery limits would not allow Arista to take even half of this subset of the most prolific authors, assuming Arista also took the pending third party corporate depositions, the patent inventors, and several Cisco witnesses related to remedies.

deposition limit of forty, excluding corporate depositions of either party.[6]

### *Cisco's Position*

On May 7, 2015, the parties filed a joint CMC statement in which they agreed that ten depositions per side would be sufficient for this case. Docket No. 43. On November 4, 2015, Arista asked the Court to increase the quantity of depositions permitted per side from ten to 60. Docket No. 95. Cisco opposed Arista's requests for increased deposition limits. *See* Dkt. 114.

Arista's request that the Court increase the deposition limit by an additional 20 depositions (to a total of 40 depositions) should be denied because Arista has failed to show good cause for even a single deposition over the current 20 deposition limit. Arista's request does not identify any individual witnesses it needs to depose over the current limit or why it needs to depose them. Moreover, nothing that Arista points to as justification for increasing the deposition limit has changed from the last time this issue was addressed by the Court, other than Arista's complaints about Cisco's identification of CLI authors, but if anything those issues speak to the need to depose *different* witnesses, not *more* witnesses. Arista's extraordinary request to permit *four times* the amount of deposition testimony contemplated by the Federal Rules of Civil Procedure, *see* Fed. R. Civ. P. 30(a)(2)(A)(i) – a combined 560 hours of fact witness deposition testimony – is simply not justified by the facts.

Arista argues that it needs 20 additional depositions based on Cisco's recent supplementations of its interrogatory response concerning those individuals who participated in the development of the individual, multi-word command expressions that Arista copied from Cisco's CLI. Arista has mischaracterized those supplementations and their consequences for discovery decisions facing the parties. With ongoing and Herculean efforts, a team of lawyers and Cisco engineers has prepared and supplemented a detailed interrogatory response, including a

---

[6] Arista notes that it previously estimated in its discovery plan that it would require approximately sixty depositions in total. *See* Arista's Proposed Discovery Plan (Dkt. No. 108) at 1. Arista has endeavored to minimize the number of depositions it will need, and now believes, based on the deposition testimony it has already elicited, that forty depositions will be sufficient to effectively defend itself in this case.

7

45-page exhibit, to identify which individual Cisco engineers participated in the creation of certain command expressions—in some instances, as far back as the 1980s. *See, e.g.*, Amended Exhibit F to Cisco's Sixth Supplemental Response to Interrogatory No. 16 and Response to Interrogatory No. 19, January 12, 2016 at 4-9. Through ongoing diligence and supplementation, that process has in some instances resulted in updated and changed identifications on a per-individual and per-command expression basis. That process has also resulted in the identification of the developers responsible for developing all but eight of Cisco's 526 asserted multi-word command expressions. With those additional identifications, ranked by the number of command expressions authored, the "top ten" authors has changed. Five of the original "top ten" have fallen out of the "top ten," but Arista has not deposed them. The CLI authors that Arista has deposed that were in the original "top ten" remain in the "top ten." *See id*.

Arista claims that it needs additional depositions because some of the "top ten" CLI developers have changed. But, at most, any change in the "top ten" indicates that Arista needs to depose *different* CLI developers, not *more* CLI developers. Arista has not deposed any of the CLI developers who "fell out" of the "top ten" and, thus, has not been prejudiced by that change in Cisco's supplementation. The depositions that Arista has taken, for example of Kirk Lougheed and Abhay Roy, remain just as sensible (according to Arista's "top ten" ranking approach) today as they were months ago.[7]

Arista renews its argument that it needs additional depositions because there are a lot of CLI engineers, but again, that fact has not changed. Also unchanged is Arista's misleading assertion that Cisco contends Arista is not entitled to challenge, explore or take discovery regarding originality. In fact, to facilitate Arista's challenge to the originality of Cisco's multi-word command expressions, Cisco has provided detailed interrogatory responses, thousands of documents, and source code that reflect the creative process by which its engineers chose the

---

[7] Arista complains that Kirk Lougheed "has been assigned five additional commands" after his deposition; however, Arista neglects to mention that Cisco has already agreed to make Mr. Lougheed available for a second day of deposition on February 11.

command expressions that Arista copied—a process further explained by the Cisco engineers who have testified to date. No more is required. As the Supreme Court has explained, proving originality for purposes of copyright is not difficult. "To be sure, the requisite level of creativity is extremely low; even a slight amount will suffice." *Feist Publications, Inc. v. Rural Telephone Service Co.*, 499 U.S. 340, 345 (1991). That is why the Ninth Circuit held that a price list for collectible coins was original based on evidence of the "creative *process* which ultimately gives rise to the Plaintiff's 'best guess' as to what the current 'bid' and 'ask' prices should be." *CDN Inc. v. Kapes*, 197 F.3d 1256, 1260 (9th Cir. 1999) (emphasis added). Contrary to Arista's assertion, it has no need to delve further into minutiae regarding how that process played out in the case of *each* individual command expression.[8]

The issue here is one of responsible case management and resource allocation—not whether Arista is entitled to challenge the originality of Cisco's multi-word command expressions. In the same way that Cisco cannot depose the author of every Arista email indicative of copying, Arista cannot depose every Cisco engineer who participated in the development of Cisco's protected multi-word command expressions. There must be limits and Arista has not shown good cause why the limits in this case should be raised by another 20 depositions.

In addition, Arista grossly mischaracterizes the substance of a handful of depositions that have already occurred in this case, apparently in an effort to justify additional depositions. None of that testimony has any relevance to whether Arista has or can show good cause for an additional 20 fact witness depositions, and none of that testimony shows that any of Cisco's multi-word command expressions are not original. To set the record straight:

---

[8] Arista argues that "the question is whether, for each claimed command phrase, Cisco simply borrowed the *terms* from others" (emphasis added), but that is mistaken. As Arista elsewhere recognizes, Cisco has asserted not that individual terms used in its CLI constitute protected expression, but rather that *multi-word* command expressions are protectable elements that Arista chose to copy. Thus, whether the individual terms contained in each such multi-word expression were known in the industry is irrelevant. The only relevant question is whether the *multi-word* command expression is original.

- Arista claims that Mr. Roy testified that he "did not actually create all of the commands for which Cisco identified him as the author," but Mr. Roy said nothing of the sort. Instead, Mr. Roy modestly testified that he wrote "bfd all-interfaces code" as a member of "a team of engineers" who created the commands in question "collectively" as part "of a more collaborative effort" many years before his deposition. *See* Santacana Decl., Ex. C (Roy Depo. Tr.) at 24:3 – 25:10.
- Arista claims that Mr. Lougheed "used terms and phrases coined by others, and/or widely used in the industry, for various terms he claims to have authored," but this is both inaccurate and irrelevant. At most, Mr. Lougheed testified that some individual words or acronyms incorporated in some of the multi-word command expressions he authored were known in the industry. *See, e.g.*, Santacana Decl., Ex. D (Lougheed Depo. Tr.) at 80:9–81:12 (acknowledging the existence of a routing protocol known as "ARP"); 170:11-17 (testifying that he "was aware of people using the word 'host' in the computer field"). That would be true, however, of any work that used an existing language, and a novel is not unoriginal because it is comprised of words that can be found in the dictionary.
- Arista also claims that Mr. Lougheed authored some commands as he was leaving Stanford to go work for Cisco, but the testimony Arista cites does not support that proposition. To the contrary, Mr. Lougheed testified that he left Stanford during a dispute between Stanford and Cisco as to who owned the software that he had developed, but that this dispute was resolved when Cisco obtained a license to the software (a step that Arista refused to take before embarking on its slavish copying of Cisco's CLI). *See* Santacana Decl., Ex. D (Lougheed Depo. Tr.) at 95:9–98:3.
- As for Ms. Liu, Arista claims that—like Mr. Lougheed—she used words that were present in an internet protocol that pre-dated her work on Cisco's CLI. But again, this would be true of any work that used a common language, and it says nothing about whether the ***multi-word*** command expressions she authored were original.

10
JOINT CASE MANAGEMENT STATEMENT
Case No. 5:14-cv-05344-BLF (PSG)

02099-00004/7612746.1

1021695

> Moreover, Ms. Liu testified that the multi-word command expressions she developed were selected separately from the IEEE PTP industry standard (*see* Santacana Decl., Ex. E (Liu Depo. Tr. (Rough)) at 140:7-141:23), were not required by an industry standard (*id.* at 176:23-178:7, 182:15-183:1), and reflect her choice after considering many different options (*id.* at 179:21-181:25).

Notably, Arista fails to mention the testimony of its own witness Lincoln Dale, Distinguished Engineer at Arista, who was previously a Distinguished Engineer at Cisco, who testified that the choice of CLI expression for a given functionality is highly subjective. He testified that customers, other engineers at Arista and other engineers at Cisco could all possibly have different opinions regarding which CLI command expressions were logical or preferable. *See* Santacana Decl., Ex. F (Dale Depo. Tr.) at 127:8-130:13, 163:8-164:25. Further, he testified that he was not aware of any mandatory requirements from actual industry standards ratified by standard setting organizations requiring the use of any CLI commands from Cisco. *Id.* at 237:19-241:18. In fact, he testified that there are alternative user interfaces to a CLI, such as a graphical user interface or a Linux interface, which could be used to configure and monitor various networking features found in actual industry standards. *Id.* at 122:9-21, 283:17-285:4.

Arista also claims that it needs additional depositions because it needs to take depositions regarding damages, the patents and its defenses, but that has always been the case and Arista points to nothing new to justify its request. Again, Arista fails to specify which witnesses it wants to depose on these topics and why it cannot do so within the current 20 deposition limit.

Twenty fact-witness depositions per side is already twice the default allowance. It provides each side plenty of room to make strategic and efficient decisions about which witnesses are worth pursuing or not. For its part, Cisco and its counsel have been undertaking those strategic decisions and are prepared to be held accountable for them—for example, given the large volume of Arista documents that discuss "copying" Cisco's CLI, and the number of Arista employees involved in those efforts and related communications, there is no way that Cisco could depose all copyists employed by Arista with 20 (or even 40) depositions. But Cisco does not seek

11
JOINT CASE MANAGEMENT STATEMENT
Case No. 5:14-cv-05344-BLF (PSG)

to depose every single Arista employee who ever wrote an email gloating about Arista's copying of Cisco materials. Cisco plans to prioritize certain witnesses over others. Arista and its counsel should do the same. Arista has not shown good cause for expanding the deposition limits that were doubled from 10 to 20 just last month.

DATED: January 22, 2016                           Respectfully submitted,

                                                                                                           */s/   Sean S. Pak*

                                         Kathleen Sullivan (SBN 242261)
kathleensullivan@quinnemanuel.com
QUINN EMANUEL URQUHART &
SULLIVAN LLP
51 Madison Avenue, 22nd Floor
New York, NY 10010
Telephone: (212) 849-7000
Facsimile: (212) 849-7100

Sean S. Pak (SBN 219032)
seanpak@quinnemanuel.com
John M. Neukom (SBN 275887)
johnneukom@quinnemanuel.com.
Matthew D. Cannon (SBN 252666)
matthewcannon@quinnemanuel.com
QUINN EMANUEL URQUHART &
SULLIVAN LLP
50 California Street, 22nd Floor
San Francisco, CA 94111
Telephone: (415) 875-6600
Facsimile: (415) 875-6700

Mark Tung (SBN 245782)
marktung@quinnemanuel.com
QUINN EMANUEL URQUHART &
SULLIVAN LLP
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, CA 94065
Telephone: (650) 801-5000
Facsimile: (650) 801-5100

Steven Cherny *(admission pro hac vice pending)*
steven.cherny@kirkland.com
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York 10022

|   |   |
|---|---|
| 1 | Telephone: (212) 446-4800 |
| 2 | Facsimile: (212) 446-4900 |
| 3 | Adam R. Alper (SBN 196834) |
|   | adam.alper@kirkland.com |
|   | KIRKLAND & ELLIS LLP |
| 4 | 555 California Street |
|   | San Francisco, California  94104 |
| 5 | Telephone: (415) 439-1400 |
|   | Facsimile: (415) 439-1500 |

Adam R. Alper (SBN 196834)
adam.alper@kirkland.com
KIRKLAND & ELLIS LLP
555 California Street
San Francisco, California  94104
Telephone: (415) 439-1400
Facsimile: (415) 439-1500

Michael W. De Vries (SBN 211001)
michael.devries@kirkland.com
KIRKLAND & ELLIS LLP
333 South Hope Street
Los Angeles, California 90071
Telephone: (213) 680-8400
Facsimile: (213) 680-8500

*Attorneys for Plaintiff Cisco Systems, Inc.*

DATED:  January 22, 2016              Respectfully submitted,


*/s/   Brian L. Ferrall*

KEKER & VAN NEST LLP
ROBERT A. VAN NEST - # 84065
rvannest@kvn.com
BRIAN L. FERRALL - # 160847
bferrall@kvn.com
DAVID J. SILBERT - # 173128
dsilbert@kvn.com
MICHAEL S. KWUN - # 198945
mkwun@kvn.com
633 Battery Street
San Francisco, CA 94111-1809
Telephone:     415 391 5400
Facsimile:      415 397 7188

*Attorneys for Defendant Arista Networks, Inc.*

---

13
JOINT CASE MANAGEMENT STATEMENT
Case No. 5:14-cv-05344-BLF (PSG)

02099-00004/7612746.1

1021695

**ATTORNEY ATTESTATION**

I hereby attest, pursuant to Local Rule 5-1(i)(3), that the concurrence in the filing of this document has been obtained from the signatory indicated by the "conformed" signature (/s/) of Sean S. Pak within this e-filed document.

*/s/   Brian L. Ferrall*