```
                                                    Pages 1 - 19

                  UNITED STATES DISTRICT COURT

                 NORTHERN DISTRICT OF CALIFORNIA

    Before The Honorable Beth Labson Freeman, Judge

    CISCO SYSTEMS, INC.,           Case No. 5:14-CV-05344-BLF

          Plaintiff,

        v.

    ARISTA NETWORKS, INC.

          Defendant.
    _____/
                                      San Jose, California
                                      Thursday, January 28, 2016

             TRANSCRIPT OF PROCEEDINGS OF THE OFFICIAL
             ELECTRONIC SOUND RECORDING - FTR 11:01-11:20


    APPEARANCES:

        For Plaintiff:

                        SEAN SANG-CHUL PAK, ESQ.
                        AMY H. CANDIDO, ESQ.
                        Quinn Emanuel Urquhart & Sullivan, LLP
                        50 California, Floor 22
                        San Francisco, CA 94111

        For Defendant:

                        ROBERT ADDY VAN NEST, ESQ,
                        DAVID JASON SILBERT, ESQ.
                        Keker & Van Nest, L.L.P.
                        633 Battery Street
                        San Francisco, CA 94111-1809


    Transcribed by Kelly Polvi, Contract Transcriber, utilizing
    court reporting and transcription hardware and software.
```

| | |
|---|---|
| 1 | **THURSDAY, JANUARY 28, 2016**                               **11:01 A.M.** |
| 2 | **P R O C E E D I N G S** |
| 3 | ---oOo--- |
| 4 | **THE CLERK:** Case 14-cv-5344, Cisco Systems, Inc. versus |
| 5 | Arista Networks, Inc., on for further case management |
| 6 | conference. |
| 7 | Counsel, please state your appearances for the record. |
| 8 | This is being electronically recorded, so please speak |
| 9 | into the microphone and identify yourself each time you speak. |
| 10 | **MR. PAK:** Good morning, Your Honor, Sean Pak from Quinn |
| 11 | Emmanuel representing plaintiff Cisco. And with me is my |
| 12 | partner, Amy Candido. |
| 13 | **THE COURT:** Good morning. |
| 14 | Good morning. |
| 15 | **MR. PAK:** We also have corporate representatives Neal |
| 16 | Rubin, (inaudible.) |
| 17 | **THE COURT:** Good morning. Thank you for coming. |
| 18 | **MR. VAN NEST:** Good morning Your Honor. Bob Van Nest |
| 19 | from Keker & Van Nest for Arista. I'm here with David Silbert, |
| 20 | also of KVN, and we have Sean Christofferson here from Arista. |
| 21 | **THE COURT:** Good morning. |
| 22 | Good morning. Thank you for coming. |
| 23 | All right. We had scheduled this further case management |
| 24 | when you were last here so that I could consider the continuing |
| 25 | need for additional depositions. That's really what we're |

1  dealing with here.  And I have reviewed the papers and it looks
2  like this is more complicated than I had maybe understood in
3  identifying the authors and the number of commands that fall
4  under their bailiwick.
5     Mr. Van Nest, here's what I think is missing from your
6  request for further limit on depositions:  I need a specific
7  discovery plan that identifies the individuals you'd like to
8  depose.
9     **MR. VAN NEST**:  We could provide that, Your Honor.  Or we
10 could provide it promptly.
11    You recall that we provided a discovery plan in December.
12 I have a good idea now -- much better idea of who they would
13 be.  I have the categories here; I can give them to you now or
14 I can simply provide the names very shortly.
15    But it would be in the order of seven or eight additional
16 authors, which would still put me way below the total number,
17 of course, of authors, even that have authored five or more.
18    We probably would do five or so additional third parties,
19 two inventors on the patents, and then another -- I say eight
20 Cisco employees in the areas of competition, analysis, sales,
21 and in Cisco's use of competitor commands.
22    There are a couple of systems at Cisco in which Cisco
23 itself uses the commands of other companies as part of its
24 products.  There are two such systems that we're aware of now
25 and we'd like to take a deposition on each one of those.

1      **THE COURT:** All right.

2      **MR. VAN NEST:** I can certainly attach names, very
3  shortly.

4      As you observed, the names of the relevant authors have
5  been shifting, but assuming that Mr. Pak can tell us that that
6  list is kind of settled to where it is, then we should be in a
7  position to pick the additional eight or so authors we'd like
8  to take.

9      **THE COURT:** Well, what was persuasive to me in Mr. Pak's
10 filing was that although he acknowledged that there had been
11 some shifting -- and whether it's significant or not, there had
12 clearly been shifting -- you had not actually wasted any of
13 your depositions on individuals who fell below what might be
14 your top ten.

15     And so the production was timely. And that was
16 persuasive.

17     And what I'm actually going to need is to be sure that
18 the 20 I give you are the most valuable and these are in
19 addition. Not that you've taken -- used the first 20 as the
20 benchers and then come in with your first string to say that
21 you need them.

22     That's -- so it needs to be comparative. Not just in
23 isolation why an additional person above the 20 is important,
24 but why that person, the other 20, were as important or more
25 and needed to be on the list.

1    **MR. VAN NEST:**  We could do that, Your Honor.
2    **THE COURT:**  Okay.
3    **MR. VAN NEST:**  And I don't believe that we've wasted
4    any -- I agree with that.
5    **THE COURT:**  Good.  I'm glad.
6    **MR. VAN NEST:**  The authors -- as I indicated in the case
7    management statement, the authors that we've taken so far have
8    all authored a significant number of commands --
9    **THE COURT:**  Good.
10   **MR. VAN NEST:**  -- and have all given highly relevant
11   testimony probative to the issues that we talked about last
12   time.
13   **THE COURT:**  Good.
14   **MR. VAN NEST:**  What I'm struggling with is that there are
15   currently 31 people on the list of authors that I'll call
16   "significant" in the sense that they authored five or more
17   commands.
18       I'm not asking to depose all 31 because obviously I have
19   third parties, inventors, and others that we need to cover, but
20   I do think that there are another eight to ten that are very
21   important in that they are either long-time Cisco people or
22   have now left Cisco and are in the industry but they
23   authored -- according to Cisco -- a significant number of
24   commands.
25   **THE COURT:**  All right.

| | |
|---|---|
| 1 | **MR. VAN NEST:** And we can pare that list down -- |
| 2 | **THE COURT:** So what I'm really looking for, I guess, is a |
| 3 | chart that identifies the first 20 as well. |
| 4 | Because I do have -- you know, I think I mentioned to you |
| 5 | before, don't -- I just -- I need to make sure you've chosen |
| 6 | wisely for your first 20 and haven't stacked the deck. |
| 7 | And I trust that you haven't, but I want -- I'd just like |
| 8 | that evidence. |
| 9 | **MR. VAN NEST:** We have -- all of the authors in our first |
| 10 | 20 are people that they either now identify or earlier |
| 11 | identified as having authored a significant number of |
| 12 | commands -- |
| 13 | **THE COURT:** Okay. |
| 14 | **MR. VAN NEST:** -- or being heavily involved in that |
| 15 | process. |
| 16 | The third parties that we have identified are all large |
| 17 | Silicon Valley companies that are using a very significant |
| 18 | number of the same commands that we're accused of using, and |
| 19 | have been doing so far years. |
| 20 | The inventors, I've -- we've taken two inventors -- |
| 21 | **THE COURT:** Well, I don't imagine they'll come willingly |
| 22 | to a deposition, will they. |
| 23 | **MR. VAN NEST:** Not really. That's why we need the |
| 24 | depositions. None of them are excited about participating, |
| 25 | but -- |

1	**THE COURT:** I can only imagine.
2	**MR. VAN NEST:** But they are important. And the ones
3	we've identified are all people that are using a very
4	substantial number of the same commands that we're accused of
5	using, and have been doing so for years.
6	And in some cases, they have prior art that's relevant to
7	the patents.
8	So we've identified six of those.
9	One of our third parties is Stanford. A lot of the
10	commands at issue were actually created at Stanford, and there
11	was a big debate about where they -- where they came from.
12	They certainly didn't come from Cisco employees because
13	they were created while people were at Stanford.
14	So we've also subpoenaed Stanford, and the inventors, and
15	at this point I think if we can have this -- a few days here to
16	do it, we can give you a detailed list of the first 19 -- we've
17	noticed and taken 19 -- and the next 21 that we think we need.
18	**THE COURT:** And that list of the 20 is comprehensive; it
19	gave you room for your damages, witnesses, and others.
20	**MR. VAN NEST:** Yes.
21	**THE COURT:** And of course none of this would presume what
22	happens if I grant your motion for leave to amend the
23	counter -- and file a counterclaim.
24	**MR. VAN NEST:** That's right. That's right. This is
25	based on the existing copyright case.

1     **THE COURT**: Sure. I want to, on a case-management level,
2 address that issue in a moment.
3     But let's just deal with the extra depositions.
4     And of course whatever I would allow for Arista, I guess
5 I would just give a blank approval to Cisco in number but not
6 in showing of good cause.
7     **MR. VAN NEST**: How soon would you like us to file our
8 list, Your Honor? And I understand that --
9     **THE COURT**: Me? I'm not in any hurry.
10     **MR. VAN NEST**: Okay, I get it. But we'll do it promptly.
11     **THE COURT**: Okay.
12     **MR. VAN NEST**: We'll do it promptly.
13     **THE COURT**: Okay. Thank you.
14     Mr. Pak?
15     **MR. PAK**: Your Honor, this is about responsible case
16 management, and as we know, that Rule 26 that was recently
17 amended as far as proportionality.
18     I think Your Honor is absolutely spot-on when asking for
19 individualized justification for all of this.
20     I got to tell you, we just got 2 million pages of
21 documents from the other side. I just deposed our first
22 witness who gave all kinds of very helpful testimony, from my
23 perspective. There's a long list of employees on the other
24 side involving copy, who say that Cisco IOS is something that
25 they copied intentionally for the purpose of going after

1   customers.  They've even joked publicly that industry standard
2   means the same as Cisco IOS.
3       What I mean by all of this is I am exercising judgment on
4   my part.  I don't need to prosecute a case where that involves
5   taking 40 depositions.  I could if I had to, but I don't need
6   to do that.  I think we have very experienced trial lawyers on
7   the other side, we know exactly what it takes on both sides to
8   try this case.
9       I would just remind Your Honor as you consider these
10  individualized requests -- especially on the CLI authorship
11  side -- is that there's no contest here in terms of the legal
12  requirements.  Under *CDN*, *Feist Publications*, the standard for
13  originality is very, very low.
14      And the focus of all this discovery should be on the
15  process by which these commands were created.  Were they
16  subjective in the sense that these were individual choices?
17      We now have testimony from a distinguished engineer who
18  was at Cisco and now at Arista who was publicly involved in
19  marketing the CLI aspects of this case.  And he's confirmed
20  that even at Cisco they viewed it as a subjective process, they
21  had lots of choices, they had lots of debates about which of
22  these command expressions were the proper ones, and he went on
23  to Arista and they had very similar debates.
24      So I'm not going to tell Mr. Van Nest how to try his
25  case, but all I can suggest is that we don't need to sit here

1  and take 30, 40 depositions of CLI authors to prove up what we
2  think is a subjective process, just like I don't need to take
3  30, 40 copyists to prove that there was copying.
4      **THE COURT:** Yeah.
5      **MR. PAK:** The second thing I'll note is just factually,
6  Your Honor, by my record they've taken six depositions,
7  they've -- we've scheduled two more that they've asked for, and
8  I believe there's three more that they have requested.
9      But I'm not aware, sitting here today, that's there's a
10 request for 20 depositions. I'm not aware that Arista has even
11 told us specifically which of the first 20 that they're going
12 to use and in what fashion.
13     So I very much appreciate Mr. Van Nest's guidance in
14 terms of the additional depositions he would like --
15     **THE COURT:** That's what I'm asking for too.
16     **MR. PAK:** -- but I would like to see that chart --
17     **THE COURT:** Yeah.
18     **MR. PAK:** -- including the first 20, and I would like the
19 opportunity, Your Honor, to respond to whatever request he
20 makes to -- from our perspective, to show why either we think
21 the deposition is cumulative, --
22     **THE COURT:** Yeah.
23     **MR. PAK:** -- why we don't think it's necessary to go
24 beyond 20.
25     And we don't want to be unreasonable here, Your Honor,

but at the same time we have a very complex case, and I think that we have worked very hard to come up with a joint schedule. We have the months, now, to take these depositions. Let's proceed. Let's start with the first 20 and see where we end up.

**THE COURT:** Yeah.

**MR. PAK:** I don't think having a blank check for 20 more depositions makes sense.

**THE COURT:** Well, and Mr. Van Nest, that's exactly the point. I will let Mr. Pak argue that those in your top 20 don't belong there.

**MR. VAN NEST:** Sure.

**THE COURT:** And -- but you can make them your top 20; nobody cares who your 20 are. That's your choice.

But that's what I'm going to be doing with --

So what I do want -- and I think the best thing for me is literally for you to give me a chart of the witness and what you -- the reason for the request.

**MR. VAN NEST:** Sure.

**THE COURT:** And Mr. Pak, I would actually want something similar. It's -- I really want to keep this down in pages; I don't want 40 pages of this. I really need something concise.

Unfortunately for me, I am going to have to make decisions on small amount of information.

So, you know, put what I need to know, but, you know, I

1    know it's going to be difficult to extract the --
2         **MR. VAN NEST:**  I don't think it will be, Your Honor.
3         **THE COURT:**  Okay.
4         **MR. VAN NEST:**  I think it will be simple.
5         **THE COURT:**  All right.
6         **MR. VAN NEST:**  We'll indicate the reason, and --
7         **THE COURT:**  Good.
8         **MR. VAN NEST:**  We had 19 so far --
9         **THE COURT:**  Okay.
10        **MR. VAN NEST:**  -- that we've even taken or noticed,
11   including the third parties.
12        So we'll give you that list --
13        **THE COURT:**  Okay.
14        **MR. VAN NEST:**  -- and explain who they are.
15        **THE COURT:**  Good.
16        **MR. VAN NEST:**  Some of them have already been deposed, so
17   they're water under the bridge.
18        **THE COURT:**  They are.  That's right.
19        **MR. VAN NEST:**  But the others are noticed but haven't
20   been taken yet.  We'll get you the list asap with a brief chart
21   with a little explanation --
22        **THE COURT:**  Good.  Perfect.
23        **MR. VAN NEST:**  -- and we won't belabor it.
24        And we appreciate it very much.
25        **THE COURT:**  What I'm going to let you two do is to work

1    out a schedule for that submission.
2         **MR. PAK:** Of course.
3         **THE COURT:** As I say, it doesn't matter to me. You're
4    the ones with the clock ticking on your discovery cutoff.
5         **MR. VAN NEST:** Right.
6         **THE COURT:** So I'll just leave that to you.
7         **MR. VAN NEST:** We'll work that out.
8         **THE COURT:** And then when I get the response by Cisco,
9    then I will consider it.
10        **MR. VAN NEST:** Thank you.
11        **THE COURT:** All right.
12        Let me -- that was the only thing I think that was before
13   us today, but I -- just from the case management perspective, I
14   did -- I want to just let you know that I certainly have
15   reviewed, on a very high level, the motion for leave to file an
16   amended answer and counter claim, adding antitrust claims.
17        Mr. Pak, you have not had the opportunity to respond, so
18   nothing to say about the merits of it, only that if it were to
19   be allowed it adds an extremely high level of complexity to the
20   case, and I'm not inclined to have two trials in this case and
21   you will not have your trial date because I have not reserved
22   that kind of time.
23        So I want to give you that notice early so that you can
24   make a decision before Mr. Pak has to file all his papers.
25        I will grant it. Because it may be -- it may be

1 meritorious.  And I haven't made that decision yet at all.  At
2 all.  I'm just looking at case management aspect and the amount
3 of time that it would add to the trial and the reasonable
4 amount of discovery that would be anticipated by the parties to
5 prosecute and defend those claims if they were valid.
6     And of course I can't -- I'm not judging that at all.
7     But I just think you need to know the consequences.
8     I am now setting trials in February of 2018, and I would
9 have no ability to set this any earlier.  So I just want you to
10 understand that.  I actually recall that I squeezed in this
11 trial, against my better judgment, but I just don't have that
12 ability now, to expand by two weeks, the trial that you've
13 asked for and the dates coming up in -- on November 12th.  And
14 as I --
15     I think that's the date.
16     **MR. VAN NEST:**  It is.  Jury selection.
17     **THE COURT:**  Jury selection.
18     As I recall, we estimated that it was reasonable that the
19 case could be decided by a jury before Christmas.
20     **MR. VAN NEST:**  We did.
21     **THE COURT:**  And -- I mean, not that jurors can't go home
22 for two weeks and come back, but I have a full calendar of
23 trials that come after that.
24     So again, more for you to talk about, more for you to
25 think about.  And it may make no difference to you.  But I do

1   want you to understand that I will -- we'll need another case
2   management conference after I've decided that.
3       I might not let them amend, Mr. Pak.  You may --
4       **MR. PAK:**  Yes.
5       **THE COURT:**  -- persuade me.
6       So I just like to put things out there as I see them
7   coming so that you know that.
8       If that's just a case management aspect, then I don't
9   know whether this comes along or not.
10      **MR. PAK:**  Your Honor, I'll just say one thing.  I noted
11  that in their papers Arista made it very clear they're amenable
12  to filing this in a separate case.
13      **THE COURT:**  Mm-hm.  Yes.
14      **MR. PAK:**  That's what should happen here.  There's very
15  significant issues relating to their case on the papers that
16  we'd like to challenge in due course.
17      We have our people looking at it.  We've had a lot of
18  time to think through these issues.  I just got it on Monday
19  for the first time.
20      **THE COURT:**  Sure.
21      **MR. PAK:**  I think what needs to happen is they should
22  file it as a separate case; if they want to relate it back to
23  this case --
24      **THE COURT:**  And I don't know whether we'll relate that --
25      **MR. PAK:**  I don't know if that makes sense or not.

|   |   |
|---|---|
| 1 | **THE COURT:** -- we'll relate the case or not. |
| 2 | **MR. PAK:** There may be -- |
| 3 | **THE COURT:** You know, again, that's not an issue. I know |
| 4 | that that was mentioned in Mr. Van Nest's papers, and I haven't |
| 5 | considered that. I look generally at the -- you know, I always |
| 6 | look, again, at the rules on related cases, and it's -- |
| 7 | I don't know. |
| 8 | **MR. PAK:** Right. |
| 9 | **THE COURT:** I just don't know, so. |
| 10 | **MR. VAN NEST:** Well, we will -- I will certainly take up |
| 11 | Your Honor's invitation to talk with Mr. Pak, and we'll do that |
| 12 | promptly. |
| 13 | I do have one case management question. |
| 14 | **THE COURT:** Yes. |
| 15 | **MR. VAN NEST:** And that is that our motion for leave to |
| 16 | amend, the earliest date we could get was late May. |
| 17 | **THE COURT:** Oh, yeah, we need to move that way up. |
| 18 | **MR. VAN NEST:** And so I'm just hoping that Your Honor |
| 19 | could find a date -- |
| 20 | **THE COURT:** Yes. |
| 21 | **MR. VAN NEST:** -- much earlier to hear that. |
| 22 | **THE COURT:** I absolutely need to. And so I -- |
| 23 | unfortunately, I've had a whole slew of cases that need earlier |
| 24 | dates and I'm getting a little bit pressed on when. |
| 25 | But -- you know, I can't give you a new date now because |

1	**THE COURT:**  -- we'll relate the case or not.
2	**MR. PAK:**  There may be --
3	**THE COURT:**  You know, again, that's not an issue.  I know
4	that that was mentioned in Mr. Van Nest's papers, and I haven't
5	considered that.  I look generally at the -- you know, I always
6	look, again, at the rules on related cases, and it's --
7	        I don't know.
8	**MR. PAK:**  Right.
9	**THE COURT:**  I just don't know, so.
10	**MR. VAN NEST:**  Well, we will -- I will certainly take up
11	Your Honor's invitation to talk with Mr. Pak, and we'll do that
12	promptly.
13	        I do have one case management question.
14	**THE COURT:**  Yes.
15	**MR. VAN NEST:**  And that is that our motion for leave to
16	amend, the earliest date we could get was late May.
17	**THE COURT:**  Oh, yeah, we need to move that way up.
18	**MR. VAN NEST:**  And so I'm just hoping that Your Honor
19	could find a date --
20	**THE COURT:**  Yes.
21	**MR. VAN NEST:**  -- much earlier to hear that.
22	**THE COURT:**  I absolutely need to.  And so I --
23	unfortunately, I've had a whole slew of cases that need earlier
24	dates and I'm getting a little bit pressed on when.
25	        But -- you know, I can't give you a new date now because

1   I have to look at what else you have, and I don't even know
2   that we need argument on it.  I mean, is that something that
3   you really feel we do?
4        **MR. VAN NEST**:  It would depend on the nature of the --
5        **THE COURT**:  It depends on whether --
6        **MR. VAN NEST**:  Well, if they're going to combine it --
7   what I mean by that is if they're going to combine it with,
8   effectively, a 12(b)(6) motion --
9        **MR. PAK**:  No.
10       **MR. VAN NEST**:  -- to dismiss --
11       **MR. PAK**:  We're not going to do that, Your Honor.
12       **MR. VAN NEST**:  -- then we'd need argument.
13       **THE COURT**:  It's different.
14       **MR. PAK**:  Yeah.
15       **MR. VAN NEST**:  But if it's simply are we allowed leave to
16  amend or do we need to file somewhere else, that, we could
17  submit on the papers.
18       **MR. PAK**:  Your Honor, what we're going to point out is
19  all the things you mentioned, we're going to point out the lack
20  of justification for raising this claim now when the documents
21  go back to July of 2015 in terms of production, plus it's
22  highly prejudicial -- the only way we can fit this is in
23  basically hijacking our entire case that exists.
24       **THE COURT**:  Well, I did want you to know that before you
25  replied, --

1    **MR. PAK**:  Absolutely.
2    **THE COURT**:  -- further responded to the papers of what --
3    what effect it would have on --
4    **MR. PAK**:  Absolutely.
5    **THE COURT**:  -- the trial.
6    And that's not -- yeah, I mean, that's -- I am -- I see
7    no reason to have two trials in one case.
8    **MR. PAK**:  Absolutely.
9    **THE COURT**:  So.
10   **MR. VAN NEST**:  So we'll await either a date earlier than
11   May for argument --
12   **THE COURT**:  Yes.
13   **MR. VAN NEST**:  -- or, once the papers are in, an order.
14   **THE COURT**:  It's my hope that the motion could be heard
15   in late February/early March.  That's what I'm focusing on.
16   And so we just need to take a look at the calendar and try to
17   find a way for you to come in for that, okay?
18   **MR. VAN NEST**:  That's fine.
19   **THE COURT**:  But the May date was off the charts.
20   **MR. VAN NEST**:  The only point I would make on that is
21   that I leave on February 28th for a trial in Delaware that
22   starts March 7th.  So -- but I'm here throughout February, so.
23   If late February means before the end of the month, I'm
24   here.
25   **THE COURT**:  That's good to know.

1      **MR. VAN NEST:**  On Sunday the 28th I leave for Delaware
2 for two and a half weeks with Judge Andrews.
3      **THE COURT:**  You got a long time for that trial, huh?
4      **MR. VAN NEST:**  Well, we prepare for a week and then we
5 try it for a week and a half --
6      **THE COURT:**  A week and a half, okay.
7      **MR. VAN NEST:**  (Indiscernible) get a verdict and then we
8 come home.
9      **THE COURT:**  There you go.  Okay.  All right, then.
10      And I believe your brief must be due in another ten days
11 or so?
12      **MR. PAK:**  I believe so, Your Honor, on this issue.
13      **THE COURT:**  Good.  Well, we'll look at when the briefing
14 will be completed.  Tend not to be complex issues at this
15 stage, so.
16      All right.  That's fine.  And you'll work out that
17 schedule and submit those to me.
18      **MR. VAN NEST:**  We'll do it.
19      **THE COURT:**  Thank you.
20      **MR. VAN NEST:**  Thank you.
21      **MR. PAK:**  Perhaps we can convince Mr. Van Nest to just
22 fall on your case.  That's my order.
23      Thank you, Your Honor.
24      (Proceedings adjourned 11:20 A.M.)
25

**CERTIFICATE OF CONTRACT TRANSCRIBER**

I, Kelly Polvi, CSR, RMR, FCRR, certify that the foregoing is a true and correct transcript, to the best of my ability, of the above pages of the official electronic sound recording provided to me by the U.S. District Court, Northern District of California, of the proceedings taken on the date and time previously stated in the above matter.

I further certify that I am neither counsel for, related to, nor employed by any of the parties to the action in which this hearing was taken, and further, that I am not financially nor otherwise interested in the outcome of the action.

Dated January 30, 2016.

_____
Kelly Polvi, CSR #6389, RMR, FCRR
Contract Transcriber

*Kelly Polvi, CSR, RMR, FCRR*
*P.O. Box 1427*
*Alameda, CA 94501*
*(503) 779-7406; kpolvi@comcast.net*