**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

1  Kathleen Sullivan (SBN 242261)
   kathleensullivan@quinnemanuel.com
2  QUINN EMANUEL URQUHART &
   SULLIVAN LLP
3  51 Madison Avenue, 22nd Floor
   New York, NY 10010
4  Telephone: (212) 849-7000
   Facsimile: (212) 849-7100

5
   Sean S. Pak (SBN 219032)
6  seanpak@quinnemanuel.com
   John M. Neukom (SBN 275887)
7  johnneukom@quinnemanuel.com.
   QUINN EMANUEL URQUHART &
8  SULLIVAN LLP
   50 California Street, 22nd Floor
9  San Francisco, CA 94111
   Telephone: (415) 875-6600
10 Facsimile: (415) 875-6700

11 Mark Tung (SBN 245782)
   marktung@quinnemanuel.com
12 QUINN EMANUEL URQUHART &
   SULLIVAN LLP
13 555 Twin Dolphin Drive, 5th Floor
   Redwood Shores, CA 94065
14 Telephone: (650) 801-5000
   Facsimile: (650) 801-5100

15

16 *Attorneys for Plaintiff Cisco Systems, Inc.*

Steven Cherny *(admitted pro hac vice)*
steven.cherny@kirkland.com
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900

Adam R. Alper (SBN 196834)
adam.alper@kirkland.com
KIRKLAND & ELLIS LLP
555 California Street
San Francisco, California  94104
Telephone: (415) 439-1400
Facsimile: (415) 439-1500

Michael W. De Vries (SBN 211001)
michael.devries@kirkland.com
KIRKLAND & ELLIS LLP
333 South Hope Street
Los Angeles, California 90071
Telephone: (213) 680-8400
Facsimile: (213) 680-8500

17

18  **UNITED STATES DISTRICT COURT**

19  **NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION**

20

21  CISCO SYSTEMS, INC.,

22          Plaintiff,

23          vs.

24  ARISTA NETWORKS, INC.,

25          Defendant.

26

27

28

CASE NO. 5:14-cv-5344-BLF

**CISCO'S OPPOSITION TO ARISTA'S MOTION FOR LEAVE TO AMEND RESPONSE TO ADD COUNTERCLAIMS**

**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

Date:      February 25, 2016
Time:      9:30 A.M.
Dept.:     Courtroom 3

# **TABLE OF CONTENTS**

I.    INTRODUCTION AND SUMMARY OF ARGUMENT...................................................... 1

II.   FACTUAL BACKGROUND ........................................................................................ 3

III.  LEGAL STANDARD .................................................................................................. 4

IV.   ARGUMENT .............................................................................................................. 6

      A.    Arista Was Not Diligent ................................................................................. 6

      B.    Amending the Case Schedule Now Would Prejudice Cisco.................................... 9

V.    CONCLUSION .......................................................................................................... 11

1

## **TABLE OF AUTHORITIES**

2

**Page**

3

4                                              CASES

5   *Eckert Cold Storage, Inc. v. Behl*,
6       943 F. Supp. 1230 (E.D. Cal. 1996) ........................................................ 5

7   *Harris v. Vector Mktg. Corp.*,
        2009 WL 3710696 (N.D. Cal. Nov. 4, 2009) .................................. 6, 10

8   *In re San Juan Dupont Plaza Hotel Fire Litig.*,
9       111 F.3d 220 (1st Cir. 1997) ................................................................ 5

    *Integrated Storage Consulting Servs., Inc. v. NetApp, Inc.*,
10      2014 WL 6816907 (N.D. Cal. Dec. 3, 2014) ...................................... 9

11  *Jackson v. Laureate, Inc.*,
12      186 F.R.D. 605 (E.D. Cal. 1999) ..................................................... 5, 9

    *Johnson v. Mammoth Recreations, Inc.*,
13      975 F.2d 604 (9th Cir. 1992) ....................................................... 5, 8, 9

14  *Kuschner v. Nationwide Credit, Inc.*,
15      256 F.R.D. 684 (E.D. Cal. 2009) ........................................................ 5

    *Lockheed Martin Corp. v. Network Solutions, Inc.*,
16      194 F.3d 980 (9th Cir. 1999) .............................................................. 6

17  *Pierce v. Sprouts Café, Inc.*,
18      2010 WL 3069312 (E.D. Cal. Aug. 3, 2010) ..................................... 4

    *Rodarte v. Alameda Cty.*,
19      2015 WL 5440788 (N.D. Cal. Sept. 15, 2015) ................................... 8

20  *Sosa v. DIRECTV, Inc.*,
21      437 F.3d 923 (9th Cir. 2006) .............................................................. 7

    *Wells Fargo Bank, N.A. v. Renz*,
22      2010 WL 2867615 (N.D. Cal. July 20, 2010) ............................... 6, 11

23  *Zamora v. City of San Francisco*,
24      2013 WL 4529553 (N.D. Cal. Aug. 26, 2013) ................................... 4

    *Zivkovic v. S. Cal. Edison Co.*,
25      302 F.3d 1080 (9th Cir. 2002) ............................................................ 5

26

27                                          STATUTES

28  Fed. R. Civ. P. 15 ........................................................................... 5, 6

Fed. R. Civ. P. 16 ................................................................................................................... passim

## OTHER AUTHORITIES

Fed. R. Civ. P. advisory committee's notes (1983 amendments) ...................................................... 5

REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

## I.     INTRODUCTION AND SUMMARY OF ARGUMENT

On January 25, 2016, over a year after this litigation first began, four months after the amendment deadline, and just days after submitting a jointly-negotiated Amended Scheduling Order to the Court for approval, Defendant Arista Networks, Inc. ("Arista") filed a motion for leave to add antitrust counterclaims against Plaintiff Cisco Systems, Inc. ("Cisco") (Dkt. 163).  As Arista admits, the motion is governed by Federal Rule of Civil Procedure 16 because it comes long after the Courts' deadline to amend any pleadings.  Rule 16(b)(4) states that "[a] schedule may be modified only for good cause and with the judge's consent."  "Good cause" primarily comes down to the movant's diligence in complying with the schedule, although prejudice to the non-movant is an independently sufficient basis to deny motion.  Arista was not diligent here, and its request would severely prejudice Cisco.

Arista's counterclaims assert two basic liability theories against Cisco:  that it committed an allegedly anticompetitive "about face" with respect to the intellectual property covering its command-line interface ("CLI") for Ethernet switching products, and that it supposedly "bundled" its SMARTnet service with Cisco products in an anticompetitive way.[1]  Although Arista half-heartedly claims that it was only able to recently comprehend these counterclaims, that is demonstrably untrue.  The alleged "about face" about which Arista complains began, at the latest, when Cisco filed this lawsuit in December 2014.  And Cisco's SMARTnet service and pricing plans have long been used in the market; even longer than this lawsuit.

Because the parties are long past the amendment deadline, Arista's motion is governed by Federal Rule of Civil Procedure 16, which requires that the movant establish "good cause" for their late request.  As noted above, "good cause" in the Rule 16 context focuses on the movant's diligence in pursuing the basis for their amendment.  Arista cannot make such a showing here.  It

---

[1] Arista also alleges that Cisco committed unspecific "intimidation tactics" against consumers in the marketplace, but does not provide details about those "tactics" and, in any event, notes they were intimately related to the above alleged schemes.  If and when necessary, Cisco will respond to the substance of these claims, but notes for now that they are spurious, unsubstantiated, and immaterial to the current motion.

OPPOSITION TO MOTION FOR LEAVE TO AMEND
Case No. 5:14-cv-05344-BLF

1    not only sat on the facts underlying its proposed counterclaims for years, but the majority of the

2    few documents it cites in the proposed counterclaims were produced well before the amendment

3    deadline.  More troubling, Arista also actively participated in negotiating and submitting the

4    currently-operative Amended Scheduling Order with apparent full knowledge that it intended to

5    seek this relief only days after the Court entered the new schedule the parties jointly proposed.

6    Under applicable law, this lack of diligence is the end of the inquiry.

7        But even if Arista's failure to diligently pursue the amendment were not dispositive, the

8    prejudice Cisco would suffer if the Court grants the motion is severe.  Since the beginning of this

9    case, Cisco has consistently emphasized its need to move expeditiously due to the severe and

10   ongoing harm caused by Arista's copyright and patent infringement.  As the Court has noted, any

11   claims brought in this case will be tried together, and the current trial dates beginning in

12   November 2016 are insufficient to handle both Cisco's intellectual property claims and Arista's

13   proposed antitrust counterclaims.  The next trial dates the Court has available begin in ***February

14   2018***, a year and a half later.  Given that this case is already more than a year old and involves

15   allegations that Arista has and continues to slavishly copy Cisco's intellectual property (and

16   thereby gain ill-gotten sales in the market), such an additional delay is clearly prejudicial because

17   it threatens—and seems explicitly designed—to derail or unreasonably slow down the resolution

18   of Cisco's pending copyright and patent infringement claims.  This is particularly problematic

19   given Arista's failure to abide by its diligence obligations.

20       For these reasons, Cisco respectfully requests that the Court deny Arista's motion and

21   require it to file its antitrust claims, if at all, in a separate action.  Arista has effectively conceded

22   that is the proper course, as it noted in its motion that it is perfectly willing to conduct a separate

23   trial on its antitrust claims (if they proceed that far), governed by separate discovery deadlines and

24   a separate schedule.  Cisco agrees, so long as those claims proceed separately (although it is

25   willing, for efficiency purposes, to use overlapping discovery from this case wherever

26   appropriate).

27

28

1    **II.    <u>FACTUAL BACKGROUND</u>**

2       On December 5, 2014, Cisco filed this lawsuit against Arista due to the latter's blatant and

3    extensive copying of Cisco's copyrighted and patented CLI.  The complaint explicitly noted the

4    various pieces of intellectual property Cisco believes it owns and that Arista infringed.  (*See*

5    *generally* Dkt. 1 at ¶¶ 6, 24-39, 51-57.)  In the fourteen months since, the parties have briefed a

6    motion to dismiss, coordinated on an initial Joint Case Management Statement (which included a

7    preliminary discovery plan), produced millions of pages of documents, conducted numerous

8    depositions, and appeared before the Court multiple times.  More recently, they negotiated an

9    extension to the discovery schedule after the Court pushed back the trial date by several months at

10   Arista's urging, and submitted Amended Scheduling Orders to the Court on January 14 and 19,

11   2016.  (Dkts. 156 & 159.)  Throughout that entire negotiation process, Arista never indicated (until

12   it filed the present motion) that it intended to add any antitrust counterclaims to this case.

13      When the parties negotiated the initial case schedule, the Court required them to amend

14   their pleadings and claims, if at all, by September 7, 2015.  (Dkt. 51.)  Arista never objected to this

15   deadline, nor did it ever seek to move the deadline in any way.  Even when the parties negotiated

16   the more recent Amended Scheduling Order—including after the attorneys who now apparently

17   will run the antitrust claims filed appearances in this case in November 2015, (*see* Dkts. 104 &

18   105)—Arista never indicated that it wished to move back or otherwise alter the date for amending

19   pleadings.  Meanwhile, the parties continued to conduct discovery according to the originally-

20   contemplated scope of the claims and defenses.

21      At the recent January 28, 2016 Case Management Conference, the Court indicated that it

22   would not conduct two separate trials in a single case.  (Dkt. 179 (Jan. 28, 2016 Hr'g Tr.) at 13:18-

23   20.)  Practically speaking, that means the Court would need to move back the November 21, 2016

24   trial date on Cisco's copyright and patent infringement claims until *at least* February 2018 (a year

25   and a half later), all in order to accommodate counterclaims Arista never mentioned until the last

26   instant.  (*Id.* at 14:8-9.)

27      This delay is particularly problematic because, regardless of the liability theory alleged,

28   Arista does not indicate how it was at all diligent in seeking to comply with the Court's

1    amendment deadline.  The proposed counterclaims are based on old facts long known to Arista,

2    and Arista identifies no reason why it was unable to bring these claims earlier in the case.  (*See*

3    *generally* Mot.)

4          For example, Arista accuses Cisco of committing a supposed "about face" regarding

5    intellectual property that Cisco allegedly committed to the public domain.  (Dkt. 162-6 ¶ 33.)  That

6    "about face" included Cisco's assertion that it owned and could exclude its competitors from using

7    its CLI.  (*Id.* ¶ 30-32.)  According to Arista's explicit allegations in the counterclaims, Cisco's

8    anticompetitive scheme included copyright and patent assertions over its CLI; *i.e.*, this lawsuit.

9    (*See*, *e.g.*, Dkt. 162-6 ¶ 91 ("One of the ways Cisco carried out its policy reversal was to announce

10   to the industry that it claimed copyright infringement from Arista's use of 514 CLI

11   commands…and in contrast to its years of representations, Cisco even sought injunctive relief

12   against the use of those commands.").  Moreover, the first time Arista made such an allegation

13   was in its February 13, 2015 Answer to Cisco's original Complaint in this lawsuit.  (*See* Dkt. 36,

14   at 1 ("Until December 2014, Cisco never suggested that it claimed copyright protection in the set

15   of functional commands that most of the industry uses.").

16         Similarly, Arista accuses Cisco of antitrust violations relating to its SMARTnet service

17   pricing, but neither alleges that it was unaware of SMARTnet pricing until only recently, or that

18   the SMARTnet service just recently came into being.  (*See* Dkt. 162-6 ¶¶ 97-109.)  In truth,

19   SMARTnet has been around for the better part of a decade ███████████████████████

20   ███████████████████████████████████████████████  *See*, *e.g.*, Declaration of Matthew

21   D. Cannon dated February 8, 2016, Ex. A ████████████████████████████████████

22   ████████████████████████████████████████

23   **III.**   **LEGAL STANDARD**

24         As Arista concedes (because it must), Federal Rule of Civil Procedure 16 governs this

25   motion, because it comes long after the Court's deadline for amendments to the pleadings.  *See*

26   Mot. at 3; *see also Zamora v. City of San Francisco*, 2013 WL 4529553, at *2 (N.D. Cal. Aug. 26,

27   2013) (finding that Rule 16's more stringent rules govern attempts to amend "after the deadline set

28   forth in a court's scheduling order"); *Pierce v. Sprouts Café, Inc.*, 2010 WL 3069312, at *1 (E.D.

Cal. Aug. 3, 2010) ("Once the Court has entered a pretrial scheduling order, the standards of Rule 16 rather than Rule 15 govern amendment of the pleadings."). Arista's vague citations to Rule 15 (Mot. at 3-4) thus have no application here. *See Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 610 (9th Cir. 1992) ("Disregard of the [scheduling] order would undermine the court's ability to control its docket, disrupt the agreed-upon course of the litigation, and reward the indolent and the cavalier. Rule 16 was drafted to prevent this situation and its standards may not be short-circuited by an appeal to those of Rule 15.").

Rule 16 requires that a movant establish "good cause" for their requested amendment to the scheduling order. *See* Fed. R. Civ. P. 16(b)(4) ("A schedule may be modified only for good cause and with the judge's consent."). Unlike Rule 15(a)'s liberal policy toward amendment, "which focuses on the bad faith of the party seeking to interpose an amendment and the prejudice to the opposing party," *Johnson*, 975 F.2d at 609, Rule 16's "good cause" standard "primarily considers the diligence of the party seeking amendment." *Id.*; *see also* Fed. R. Civ. P. advisory committee's notes (1983 amendments). "***If the moving party was not diligent, the inquiry should end.***" *Kuschner v. Nationwide Credit, Inc.*, 256 F.R.D. 684, 687 (E.D. Cal. 2009) (emphasis added) (citing *Zivkovic v. S. Cal. Edison Co.*, 302 F.3d 1080, 1087 (9th Cir. 2002)). A party can show good cause by establishing:

> (1) that [it] was diligent in assisting the court in creating a workable Rule 16 order; (2) that [its] noncompliance with a Rule 16 deadline occurred or will not occur, notwithstanding [its] diligent efforts to comply, because of the development of matters which could not have been reasonably foreseen or anticipated at the time of the Rule 16 scheduling conference; and (3) that [it] was diligent in seeking amendment of the Rule 16 order, once it became apparent that [it] could not comply with the order.

*Jackson v. Laureate, Inc.*, 186 F.R.D. 605, 608 (E.D. Cal. 1999) (citing *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992); *In re San Juan Dupont Plaza Hotel Fire Litig.*, 111 F.3d 220, 228 (1st Cir. 1997); and *Eckert Cold Storage, Inc. v. Behl*, 943 F. Supp. 1230, 1233 (E.D. Cal. 1996)) (internal citations omitted). "[C]arelessness is not compatible with a finding of diligence and offers no reason for a grant of relief." *Johnson*, 975 F.2d at 609 (collecting citations).

1    If the movant is able to establish diligence, prejudice to the non-movant is an additional,

2 independently sufficient—although not necessary—reason to deny the Rule 16 motion.  *See id.*

3 (noting that the degree and existence of prejudice to the non-movant may provide additional

4 reasons to deny the motion, but that prejudice is secondary to the diligence inquiry).  Prejudice is a

5 case-specific question, but it includes (among other things) delay to the trial, *see, e.g.*, *Wells Fargo*

6 *Bank, N.A. v. Renz*, 2010 WL 2867615, at *3 (N.D. Cal. July 20, 2010) (denying motion to amend

7 under Rule 15's more lenient standard because it would delay the trial and thus prejudice the

8 parties); *Harris v. Vector Mktg. Corp.*, 2009 WL 3710696, at *2 (N.D. Cal. Nov. 4, 2009) (same,

9 where proposed amendment would "derail the Court's scheduling order"), and delay caused by

10 additional discovery.  *See Lockheed Martin Corp. v. Network Solutions, Inc.*, 194 F.3d 980, 986

11 (9th Cir. 1999); *Harris*, 2009 WL 3710696, at *2.

12    For the reasons discussed below, Arista satisfies neither of these stringent requirements. [2]

13 **IV.    ARGUMENT**

14    Arista utterly fails to establish its diligence in bringing the current motion, which alone

15 necessitates denial.  However, given the motion's timing, and in light of the Court's trial schedule,

16 the motion also severely prejudices Cisco in this now year-old intellectual property theft dispute.

17    **A.    Arista Was Not Diligent**

18    As noted above, the primary basis on which Arista asserts its counterclaims are two fact

19 patterns that were not only reasonably foreseeable, but were actually ***known and apparent*** to

20 Arista for years.  The first is the supposed "about face" Cisco made with respect to its CLI

21 intellectual property.  (Dkt. 162-6 ¶ 33.)  According to Arista, Cisco for years effectively

22 committed its intellectual property to the public domain and then only made an about face with

23 respect to that intellectual property once it was faced with competition from Arista.  (*See, e.g.*,

24 Dkt. 162-6 ¶¶ 25-31.)  Putting aside for the moment that this is a fabrication and refuted in

25

26    [2] Although Arista's antitrust claims are also futile, that is a question under Rule 15 and thus

27 not at issue here.  When and if appropriate, Cisco will address the futility—*i.e.*, implausibility and

28 meritless nature—of Arista's claims in a proper motion to dismiss.

1   multiple, diverse ways by Arista's own witnesses and documents in this case, the factual predicate

2   underlying Arista's claim is that, ***by asserting intellectual property rights over its CLI***, Cisco

3   somehow committed an antitrust violation.  (*See, e.g.*, Dkt. 162-6 ¶¶ 111-112, 150.)[3]

4          Even assuming that could somehow be true, there is a clear point in time at which the basis

5   for such a claim should have been readily apparent:  December 5, 2014.  That is the date Cisco

6   filed this copyright and patent infringement lawsuit against Arista, and is the date on which Cisco

7   made abundantly clear that it would not permit Arista to infringe its CLI intellectual property.

8   (*See, e.g.*, Dkt. 1 ¶ 42-44, 50-54, Prayer for Relief ¶ 4.)  Arista does not claim that it was unaware

9   of these facts, nor could it because Cisco's assertion of copyright ownership and its pursuit of

10  injunctive relief related to Arista's copyright infringement is one of the core bases for the

11  counterclaims.  (*See* Dkt. 162-6 ¶ 91 ("One of the ways Cisco carried out its policy reversal was to

12  announce to the industry that it claimed copyright infringement from Arista's use of 514 CLI

13  commands…and in contrast to its years of representations, Cisco even sought injunctive relief

14  against the use of those commands.").  Moreover, although Arista uses documents obtained during

15  discovery in this case to bolster its allegations, (Dkt. 162-6 at Exs. A-H), the vast majority of those

16  were produced to Arista long before its motion and most before the deadline for amendments to

17  the pleadings.  (*See, e.g.*, Dkt. 162-6 at Exs. A, C, D, F (produced in related proceedings between

18  Cisco and Arista before the ITC, and in this matter on July 21, 2015); and at Exs, E and H

19  (produced in related ITC proceedings, and in this matter on September 25, 2015).  And, in any

20  event, Arista first alleged the supposed "about face" in ***February 2015***, when it answered Cisco's

21  initial Complaint in this action.  (*See* Dkt. 36, at 1 ("Until December 2014, Cisco never suggested

22

---

23  [3] In response to this point, Arista may cite certain of its proposed counterclaim allegations
24  aimed at circumventing the inevitable problems that arise when a plaintiff alleges antitrust
    violations from an intellectual property holder asserting that property in the market.  (Dkt. 162-6
25  ¶¶ 130-31); *cf. Sosa v. DIRECTV, Inc.,* 437 F.3d 923, 929-30 (9th Cir. 2006) (noting that
    invocations of intellectual property rights are typically immunized from the antitrust laws under
26  the *Noerr-Pennington* doctrine, and that these protections extend to pre-litigation assertions of
    intellectual property ownership and infringement).  Cisco will address these allegations at the
27  proper point, but they cannot avoid the simple conclusion that this very lawsuit is a core example
    of the allegedly "improper" intellectual property assertions of which Arista complains.

28

OPPOSITION TO MOTION FOR LEAVE TO AMEND
Case No. 5:14-cv-05344-BLF

1    that it claimed copyright protection in the set of functional commands that most of the industry

2    uses.").

3           Thus, even if Arista had been somehow unaware during multiple litigations with Cisco that

4    the latter was asserting intellectual property rights over its CLI, it had more than ample

5    opportunity to seek to add the "about face" counterclaim before the Court's scheduled deadline.

6           Moving to the other primary liability theory—Cisco's alleged "bundling" of SMARTnet

7    with Cisco switches—Arista never claims that it was unaware of the allegedly anticompetitive

8    bundling activity before the amendment deadline.  The bundling allegations simply identify a

9    service that Cisco provides to its customers and claim that Cisco's pricing methodology for that

10   service somehow forecloses competition.  (Dkt. 162-6 ¶¶ 33-39.)  Arista does not claim that this is

11   a new practice or that it is premised on "new" facts Arista just learned, nor does it identify any

12   efforts to diligently pursue this liability theory before the Rule 16 deadline.  (*Id.*)  Moreover,

13   Arista cites no documents from discovery in this case for its bundling theory, further failing to

14   explain why it just now brings the claim.  ████████████████████████████████

15   ██████████████████████████  *See* Cannon  Decl., Ex. A.

16          For these reasons, Arista completely fails to establish that it was diligent in pursuing the

17   newly-proposed claims.  This is unsurprising given that, ***over one year before*** it brought its

18   motion, Arista was aware of the core facts underlying at least its CLI-related antitrust claims.

19   Such unexplained delay is the antithesis of diligence and is alone a reason to deny the motion.  *See*

20   *Johnson*, 975 F.2d at 609 ("If [moving] party was not diligent, the inquiry should end."); *Rodarte*

21   *v. Alameda Cty.*, 2015 WL 5440788, at *3 (N.D. Cal. Sept. 15, 2015) (finding plaintiff was not

22   diligent in pursuing amendment where, even accepting argument that the need to amend became

23   clear at only summary judgment, Plaintiff delayed in seeking amendment for an unexplained

24   additional two months).

25          This, however, is not where Arista's lack of diligence ends.  Arista must also show that it

26   was diligent in "assisting the court in creating a workable Rule 16 order," and that

27   "notwithstanding its diligent efforts to comply, because of the development of matters which

28   could not have been reasonably foreseen or anticipated at the time of the Rule 16 scheduling

8

OPPOSITION TO MOTION FOR LEAVE TO AMEND
Case No. 5:14-cv-05344-BLF

1    conference." *Jackson*, 186 F.R.D. at 608.  The parties recently spent weeks negotiating an

2    Amended Scheduling Order in this case.  They then presented that Amended Scheduling Order to

3    the Court for approval, which, after some follow up regarding the *Daubert* hearing and related

4    dates, the Court granted.  (Dkt. 160.)

5         Not once during the discussions over the Amended Scheduling Order did Arista's lawyers

6    ever mention that they might want to bring antitrust counterclaims.  (Dkts. 156 (Joint Stipulation

7    Amending Scheduling Order, dated January 14, 2016) & 159 (Joint Stipulation Amending

8    Scheduling Order, dated January 19, 2016).)  Yet, only six days following the Court's entry of that

9    Order, Arista suddenly sought leave to file a 153-paragraph, 55-page antitrust complaint that those

10   same lawyers admit will greatly expand the scope of discovery.  (Mot. at 1, dated January 25,

11   2016.)  Arista cannot seriously claim that it was unable to put Cisco and the Court on notice

12   earlier that it might bring these claims, particularly because its antitrust lawyers appeared in the

13   case two months earlier, in November of last year.  (*See* Dkts. 104 & 105; *see also* Mot. at 5

14   (noting that Arista retained antitrust counsel in November 2015).)[4]  Nor is there any good

15   explanation for why Arista remained silent on the amendment issue while negotiating—at

16   length—an Amended Scheduling Order for the broader case.  This, again, is the opposite of

17   diligence.  *See Integrated Storage Consulting Servs., Inc. v. NetApp, Inc.*, 2014 WL 6816907, at

18   *2 (N.D. Cal. Dec. 3, 2014) ("[N]ot only must parties participate from the outset in creating a

19   workable Rule 16 scheduling order but they must also diligently attempt to adhere to that schedule

20   throughout the subsequent course of the litigation.").

21        **B.    <u>Amending the Case Schedule Now Would Prejudice Cisco</u>**

22        Rule 16 places so much emphasis on diligence because unjustifiably late requests to amend

23   a case schedule create massive inefficiencies and disruption.  *See Johnson*, 975 F.2d at 610.  But,

24

25

---

26    [4]  Notably, Arista claims that it located the documents cited in its counterclaims in November.
27   (Mot. at 5.)  It does ***not*** similarly claim that it first learned the facts set forth in the counterclaims
     in November.  (*Id.*)  Nor could it, for the reasons discussed above.

28

**OPPOSITION TO MOTION FOR LEAVE TO AMEND**
Case No. 5:14-cv-05344-BLF

1    as previously noted, prejudice in the face of diligence still acts as an additional, independent basis

2    to deny a Rule 16 motion.  *Id.* at 609.

3         Here, the parties are scheduled to begin trial on Cisco's affirmative claims on November

4    21, 2016, less than ten months from now.  The parties have scheduled two weeks to address

5    Cisco's claims and expect that they will need to use all of that time to adequately present their

6    respective cases.  (Dkt. 106 (11/5/2015 Hr'g Tr.) at 27:3-14.)  They are currently in the midst of

7    heavy discovery, only some of which Arista believes overlaps with its new counterclaims.  (*See*

8    Mot. at 1 ("Discovery into Arista's antitrust claims will overlap to some extent with discovery into

9    Cisco's copyright infringement claims, but the antitrust claims will also involve independent

10   discovery…").

11        Notably, the current trial date is the second such date the Court set in this case, having

12   continued the first at Arista's request due to its assertion that it needed to conduct further

13   discovery.  (Dkt. 132.)  At the time the Court did so, it provided the date in consultation with both

14   parties and then asked them to work out the details for the extended discovery schedule.  (*See* Dkt.

15   145 (Dec. 3, 2015 Hr'g Tr.) at 56-62.)  But the Court also did so by noting that moving the date by

16   only a few weeks would likely yield very little prejudice, whereas a year and a half delay would be

17   something altogether different.  (*Id.* at 42:15:21.)  Arista neither indicated to the Court nor Cisco

18   at that time (or before filing this motion) that it would need to conduct antitrust-related discovery

19   on the new schedule, despite that it had already retained antitrust counsel in November (*see* Mot.

20   at 5).  Nor did it indicate that it would need to try antitrust counterclaims alongside Cisco's

21   affirmative intellectual property infringement claims.  (*See* Dkts. 93, 108, 127.)

22        Shortly after Arista filed this motion, the parties held a Case Management Conference

23   before the Court on January 28, 2016.  At that time, the Court noted that it would not be inclined

24   to separately try Cisco's affirmative claims and Arista's requested counterclaims, and that the

25   counterclaims would drastically increase the complexity of the overall dispute.  (Jan. 28, 2016

26   Hr'g Tr. at 13:11-22.)  Because of this, the current trial schedule would be insufficient, because

27   the Court has not reserved an adequate amount of time to resolve a dispute of that breadth.  (*Id.*)

28   Furthermore, the Court is unable to schedule a new trial date long enough to accommodate both

OPPOSITION TO MOTION FOR LEAVE TO AMEND
Case No. 5:14-cv-05344-BLF

1   sets of claims until at least February 2018, (*id.* at 14:8-15), which would delay Cisco's day in

2   court by ***at least a year and a half***, and this in a case where the trial date has already been pushed

3   back due to Arista's efforts.

4          Given the clarity the Court provided on how the amendment would affect the case

5   schedule, one of the primary bases on which Arista bases its motion—the supposed lack of delay

6   caused by the requested amendment, (*see* Mot. at 1-2 ("Consequently, Arista's motion will not

7   prejudice Cisco, ***nor delay the trial of this action***.") (emphasis added))—is fundamentally

8   incorrect.  As such, even on Arista's own logic, Cisco would be severely prejudiced if the Court

9   granted the motion.  *See Renz*, 2010 WL 2867615, at *3 (delay of trial constituted prejudice

10  sufficient to deny motion to amend); *Harris*, 2009 WL 3710696, at *2 (same, where proposed

11  amendment would "derail the Court's scheduling order"); *cf. also* Dkt. 145 at 42:15-21 (noting

12  that, unlike a year and a half delay, a delay of a matter of weeks would cause little prejudice).

13  Even had Arista been at all diligent with seeking amendment, this provides an independent and

14  equally compelling reason to deny the motion.

15  **V.    CONCLUSION**

16         For all of the above reasons, Cisco respectfully requests that the Court deny Arista's

17  motion for leave and require it to file its antitrust claims, if at all, in a separate lawsuit.

18  DATED:  February 8, 2015                    Respectfully submitted,

19

20                                              */s/ Sean S. Pak*

21                                              Kathleen Sullivan (SBN 242261)
                                                kathleensullivan@quinnemanuel.com
22                                              QUINN EMANUEL URQUHART &
                                                SULLIVAN LLP
23                                              51 Madison Avenue, 22nd Floor
                                                New York, NY 10010
24                                              Telephone: (212) 849-7000
                                                Facsimile: (212) 849-7100

25                                              Sean S. Pak (SBN 219032)
                                                seanpak@quinnemanuel.com
26                                              John M. Neukom (SBN 275887)
                                                johnneukom@quinnemanuel.com.
27                                              Matthew D. Cannon (SBN 252666)
                                                matthewcannon@quinnemanuel.com
28                                              QUINN EMANUEL URQUHART &

SULLIVAN LLP
50 California Street, 22nd Floor
San Francisco, CA 94111
Telephone: (415) 875-6600
Facsimile: (415) 875-6700

Mark Tung (SBN 245782)
marktung@quinnemanuel.com
QUINN EMANUEL URQUHART &
SULLIVAN LLP
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, CA 94065
Telephone: (650) 801-5000
Facsimile: (650) 801-5100

Steven Cherny *(admission pro hac vice
pending)*
steven.cherny@kirkland.com
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900

Adam R. Alper (SBN 196834)
adam.alper@kirkland.com
KIRKLAND & ELLIS LLP
555 California Street
San Francisco, California  94104
Telephone: (415) 439-1400
Facsimile: (415) 439-1500

Michael W. De Vries (SBN 211001)
michael.devries@kirkland.com
KIRKLAND & ELLIS LLP
333 South Hope Street
Los Angeles, California 90071
Telephone: (213) 680-8400
Facsimile: (213) 680-8500

*Attorneys for Plaintiff Cisco Systems, Inc.*

OPPOSITION TO MOTION FOR LEAVE TO AMEND
Case No. 5:14-cv-05344-BLF