**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

1 | Kathleen Sullivan (SBN 242261)
kathleensullivan@quinnemanuel.com
2 | QUINN EMANUEL URQUHART &
SULLIVAN LLP
3 | 51 Madison Avenue, 22nd Floor
New York, NY 10010
4 | Telephone: (212) 849-7000
Facsimile: (212) 849-7100
5 |
Sean S. Pak (SBN 219032)
6 | seanpak@quinnemanuel.com
John M. Neukom (SBN 275887)
7 | johnneukom@quinnemanuel.com.
QUINN EMANUEL URQUHART &
8 | SULLIVAN LLP
50 California Street, 22nd Floor
9 | San Francisco, CA 94111
Telephone: (415) 875-6600
10 | Facsimile: (415) 875-6700
11 | Mark Tung (SBN 245782)
marktung@quinnemanuel.com
12 | QUINN EMANUEL URQUHART &
SULLIVAN LLP
13 | 555 Twin Dolphin Drive, 5th Floor
Redwood Shores, CA 94065
14 | Telephone: (650) 801-5000
Facsimile: (650) 801-5100

Steven Cherny (admitted pro hac vice)
steven.cherny@kirkland.com
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900

Adam R. Alper (SBN 196834)
adam.alper@kirkland.com
KIRKLAND & ELLIS LLP
555 California Street
San Francisco, California 94104
Telephone: (415) 439-1400
Facsimile: (415) 439-1500

Michael W. De Vries (SBN 211001)
michael.devries@kirkland.com
KIRKLAND & ELLIS LLP
333 South Hope Street
Los Angeles, California 90071
Telephone: (213) 680-8400
Facsimile: (213) 680-8500

*Attorneys for Plaintiff Cisco Systems, Inc.*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION**

CISCO SYSTEMS, INC.,

        Plaintiff,

       vs.

ARISTA NETWORKS, INC.,

        Defendant.

CASE NO. 5:14-cv-5344-BLF

**CISCO'S CORRECTED OPPOSITION TO ARISTA'S MOTION FOR LEAVE TO AMEND RESPONSE TO ADD COUNTERCLAIMS**

**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

Date:    February 25, 2016
Time:    9:30 A.M.
Dept.:   Courtroom 3

**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

<u>**TABLE OF CONTENTS**</u>

I.      INTRODUCTION AND SUMMARY OF ARGUMENT .................................................... 1

II.     FACTUAL BACKGROUND ......................................................................................... 2

III.    LEGAL STANDARD ................................................................................................... 4

IV.     ARGUMENT ............................................................................................................... 6

        A.      Arista Was Not Diligent ................................................................................. 6

        B.      Amending the Case Schedule Now Would Prejudice Cisco ................................. 9

V.      CONCLUSION ........................................................................................................... 10

1

## TABLE OF AUTHORITIES

2

<u>Page</u>

3

4

<u>CASES</u>

5    *Eckert Cold Storage, Inc. v. Behl*,
         943 F. Supp. 1230 (E.D. Cal. 1996)...................................................................5
6

*Harris v. Vector Mktg. Corp.*,
7         2009 WL 3710696 (N.D. Cal. Nov. 4, 2009)...............................................5, 6, 10

8    *In re San Juan Dupont Plaza Hotel Fire Litig.*,
         111 F.3d 220 (1st Cir. 1997) ..............................................................................5
9

*Integrated Storage Consulting Servs., Inc. v. NetApp, Inc.*,
10        2014 WL 6816907 (N.D. Cal. Dec. 3, 2014) .....................................................9

11   *Jackson v. Laureate, Inc.*,
         186 F.R.D. 605 (E.D. Cal. 1999)......................................................................5, 8
12

*Johnson v. Mammoth Recreations, Inc.*,
13        975 F.2d 604 (9th Cir. 1992)...................................................................4, 5, 8, 9

14   *Kuschner v. Nationwide Credit, Inc.*,
         256 F.R.D. 684 (E.D. Cal. 2009).......................................................................5
15

*Lockheed Martin Corp. v. Network Solutions, Inc.*,
16        194 F.3d 980 (9th Cir. 1999) ..............................................................................6

17   *Pierce v. Sprouts Café, Inc.*,
         2010 WL 3069312 (E.D. Cal. Aug. 3, 2010) ....................................................4
18

*Rodarte v. Alameda Cty.*,
19        2015 WL 5440788 (N.D. Cal. Sept. 15, 2015).................................................8

20   *Sosa v. DIRECTV, Inc.*,
         437 F.3d 923 (9th Cir. 2006)..............................................................................6
21

*Wells Fargo Bank, N.A. v. Renz*,
22        2010 WL 2867615 (N.D. Cal. July 20, 2010) ...............................................5, 10

23   *Zamora v. City of San Francisco*,
         2013 WL 4529553 (N.D. Cal. Aug. 26, 2013)..................................................4
24

*Zivkovic v. S. Cal. Edison Co.*,
25        302 F.3d 1080 (9th Cir. 2002) ............................................................................5

26

27

<u>STATUTES</u>

28   Fed. R. Civ. P. 15 .......................................................................................................4, 5, 6

1

Fed. R. Civ. P. 16 ................................................................................................. passim

2

3

OTHER AUTHORITIES

4

Fed. R. Civ. P. advisory committee's notes (1983 amendments) ..................................................... 5

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## I.     <u>INTRODUCTION AND SUMMARY OF ARGUMENT</u>

On January 25, 2016, over a year after this litigation first began, four months after the amendment deadline, and just days after submitting a jointly-negotiated Amended Scheduling Order to the Court for approval, Defendant Arista Networks, Inc. ("Arista") filed a motion for leave to add antitrust counterclaims against Plaintiff Cisco Systems, Inc. ("Cisco") (Dkt. 163). As Arista admits, the motion is governed by Federal Rule of Civil Procedure 16 because it comes long after the Courts' deadline to amend any pleadings. Rule 16(b)(4) states that "[a] schedule may be modified only for good cause and with the judge's consent." "Good cause" primarily comes down to the movant's diligence in complying with the schedule, although prejudice to the non-movant is an independently sufficient basis to deny motion. Arista was not diligent here, and its request would severely prejudice Cisco.

Arista's counterclaims assert two basic liability theories against Cisco: that it committed an allegedly anticompetitive "about face" with respect to the intellectual property covering its command-line interface ("CLI") for Ethernet switching products, and that it supposedly "bundled" its SMARTnet service with Cisco products in an anticompetitive way.[1] Although Arista half-heartedly claims that it was only able to recently comprehend these counterclaims, that is demonstrably untrue. The alleged "about face" about which Arista complains began, at the latest, when Cisco filed this lawsuit in December 2014. And Cisco's SMARTnet service and pricing plans have long been used in the market; even longer than this lawsuit.

Because the parties are long past the amendment deadline, Arista's motion is governed by Federal Rule of Civil Procedure 16, which requires that the movant establish "good cause" for their late request. As noted above, "good cause" in the Rule 16 context focuses on the movant's diligence in pursuing the basis for their amendment. Arista cannot make such a showing here. It not only sat on the facts underlying its proposed counterclaims for years, but the majority of the

---

[1] Arista also alleges that Cisco committed unspecific "intimidation tactics" against consumers in the marketplace, but does not provide details about those "tactics." If and when necessary, Cisco will respond to the substance of these claims, but notes for now that they are spurious, unsubstantiated, and immaterial to the current motion.

few documents it cites in the proposed counterclaims were produced well before the amendment deadline. More troubling, Arista also actively participated in negotiating and submitting the currently-operative Amended Scheduling Order with apparent full knowledge that it intended to seek this relief only days after the Court entered the new schedule the parties jointly proposed. Under applicable law, this lack of diligence is the end of the inquiry.

But even if Arista's failure to diligently pursue the amendment were not dispositive, the prejudice Cisco would suffer if the Court grants the motion is severe. Since the beginning of this case, Cisco has consistently emphasized its need to move expeditiously due to the severe and ongoing harm caused by Arista's copyright and patent infringement. As the Court has noted, any claims brought in this case will be tried together, and the current trial dates beginning in November 2016 are insufficient to handle both Cisco's intellectual property claims and Arista's proposed antitrust counterclaims. The next trial dates the Court has available begin in ***February 2018***, a year and a half later. Given that this case is already more than a year old and involves allegations that Arista has and continues to slavishly copy Cisco's intellectual property (and thereby gain ill-gotten sales in the market), such an additional delay is clearly prejudicial because it threatens—and seems explicitly designed—to derail or unreasonably slow down the resolution of Cisco's pending copyright and patent infringement claims. This is particularly problematic given Arista's failure to abide by its diligence obligations.

For these reasons, Cisco respectfully requests that the Court deny Arista's motion and require it to file its antitrust claims, if at all, in a separate action. Arista has effectively conceded that is the proper course, as it noted in its motion that it is perfectly willing to conduct a separate trial on its antitrust claims (if they proceed that far), governed by separate discovery deadlines and a separate schedule. Cisco agrees, so long as those claims proceed separately (although it is willing to use overlapping discovery from this case wherever appropriate).

## II.    <u>FACTUAL BACKGROUND</u>

On December 5, 2014, Cisco filed this lawsuit against Arista due to the latter's blatant and extensive copying of Cisco's copyrighted and patented CLI. The complaint explicitly noted the various pieces of intellectual property Cisco believes it owns and that Arista infringed. (*See*

2
<u>OPPOSITION TO MOTION FOR LEAVE TO AMEND</u>
Case No. 5:14-cv-05344-BLF

*generally* Dkt. 1 at ¶¶ 6, 24-39, 51-57.)  In the fourteen months since, the parties have briefed a motion to dismiss, coordinated on an initial Joint Case Management Statement (which included a preliminary discovery plan), produced millions of pages of documents, conducted numerous depositions, and appeared before the Court multiple times.  More recently, they negotiated an extension to the discovery schedule after the Court pushed back the trial date by several months at Arista's urging, and submitted Amended Scheduling Orders to the Court on January 14 and 19, 2016.  (Dkts. 156 & 159.)  Throughout that entire negotiation process, Arista never indicated (until it filed the present motion) that it intended to add any antitrust counterclaims to this case.

When the parties negotiated the initial case schedule, the Court required them to amend their pleadings and claims, if at all, by September 7, 2015.  (Dkt. 51.)  Arista never objected to this deadline, nor did it ever seek to move the deadline in any way.  Even when the parties negotiated the more recent Amended Scheduling Order—including after the attorneys who now apparently will run the antitrust claims filed appearances in this case in November 2015, (*see* Dkts. 104 & 105)—Arista never indicated that it wished to move back or otherwise alter the date for amending pleadings.  Meanwhile, the parties continued to conduct discovery according to the originally-contemplated scope of the claims and defenses.

At the recent January 28, 2016 Case Management Conference, the Court indicated that it would not conduct two separate trials in a single case.  (Dkt. 179 (Jan. 28, 2016 Hr'g Tr.) at 13:18-20.)  Practically speaking, that means the Court would need to move back the November 21, 2016 trial date on Cisco's copyright and patent infringement claims until *at least* February 2018 (a year and a half later), all in order to accommodate counterclaims Arista never mentioned until the last instant.  (*Id.* at 14:8-9.)

This delay is particularly problematic because, regardless of the liability theory alleged, Arista does not indicate how it was at all diligent in seeking to comply with the schedule.  The proposed counterclaims are based on old facts long known to Arista, and Arista identifies no reason why it was unable to bring these claims earlier in the case.  (*See generally* Mot.)

For example, Arista accuses Cisco of committing a supposed "about face" regarding intellectual property that Cisco allegedly committed to the public domain.  (Dkt. 162-6 ¶ 33.)  That

OPPOSITION TO MOTION FOR LEAVE TO AMEND
Case No. 5:14-cv-05344-BLF

1    "about face" included Cisco's assertion that it owned and could exclude its competitors from using

2    its CLI.  (*Id.* ¶ 30-32.)  According to Arista's explicit allegations in the counterclaims, Cisco's

3    anticompetitive scheme included copyright and patent assertions over its CLI; *i.e.*, this lawsuit.

4    (*See*, *e.g.*, Dkt. 162-6 ¶ 91 ("One of the ways Cisco carried out its policy reversal was to announce

5    to the industry that it claimed copyright infringement from Arista's use of 514 CLI

6    commands…and in contrast to its years of representations, Cisco even sought injunctive relief

7    against the use of those commands.").  Moreover, the first time Arista made such an allegation

8    was in its February 13, 2015 Answer to Cisco's original Complaint in this lawsuit.  (*See* Dkt. 36,

9    at 1 ("Until December 2014, Cisco never suggested that it claimed copyright protection in the set

10   of functional commands that most of the industry uses.").

11       Similarly, Arista accuses Cisco of antitrust violations relating to its SMARTnet service

12   pricing, but neither alleges that it was unaware of SMARTnet pricing until only recently, or that

13   the SMARTnet service just recently came into being.  (*See* Dkt. 162-6 ¶¶ 97-109.)  In truth,

14   SMARTnet has been around for the better part of a decade ███████████████████████

15   ██████████████████████████████████████ *See*, *e.g.*, Declaration of Matthew

16   D. Cannon dated February 8, 2016, Ex. A ██████████████████████████████

17   ████████████████████████████████

18   **III.    LEGAL STANDARD**

19       As Arista concedes (because it must), Federal Rule of Civil Procedure 16 governs this

20   motion, because it comes long after the Court's deadline for amendments to the pleadings.  *See*

21   Mot. at 3; *see also Zamora v. City of San Francisco*, 2013 WL 4529553, at *2 (N.D. Cal. Aug. 26,

22   2013) (finding that Rule 16's more stringent rules govern attempts to amend "after the deadline set

23   forth in a court's scheduling order"); *Pierce v. Sprouts Café, Inc.*, 2010 WL 3069312, at *1 (E.D.

24   Cal. Aug. 3, 2010) ("Once the Court has entered a pretrial scheduling order, the standards of Rule

25   16 rather than Rule 15 govern amendment of the pleadings."). Arista's vague citations to Rule 15

26   (Mot. at 3-4) thus have no application here.  *See Johnson v. Mammoth Recreations, Inc.*, 975 F.2d

27   604, 610 (9th Cir. 1992) ("Disregard of the [scheduling] order would undermine the court's ability

28   to control its docket, disrupt the agreed-upon course of the litigation, and reward the indolent and

4

1    the cavalier.  Rule 16 was drafted to prevent this situation and its standards may not be short-

2    circuited by an appeal to those of Rule 15.").

3    　　　　Rule 16 requires that a movant establish "good cause" for their requested amendment to

4    the scheduling order.  *See* Fed. R. Civ. P. 16(b)(4).  Unlike Rule 15(a)'s liberal policy toward

5    amendment, "which focuses on the bad faith of the party seeking to interpose an amendment and

6    the prejudice to the opposing party," *Johnson*, 975 F.2d at 609, Rule 16's "good cause" standard

7    "primarily considers the diligence of the party seeking amendment."  *Id.*; *see also* Fed. R. Civ. P.

8    advisory committee's notes (1983 amendments).  "***If the moving party was not diligent, the***

9    ***inquiry should end.***"  *Kuschner v. Nationwide Credit, Inc.*, 256 F.R.D. 684, 687 (E.D. Cal. 2009)

10   (emphasis added) (citing *Zivkovic v. S. Cal. Edison Co.*, 302 F.3d 1080, 1087 (9th Cir. 2002)).  A

11   party can show good cause by establishing:

12   　　　　(1) that [it] was diligent in assisting the court in creating a workable Rule 16
　　　　order; (2) that [its] noncompliance with a Rule 16 deadline occurred or will not
13   　　　　occur, notwithstanding [its] diligent efforts to comply, because of the
　　　　development of matters which could not have been reasonably foreseen or
14   　　　　anticipated at the time of the Rule 16 scheduling conference; and (3) that [it] was
　　　　diligent in seeking amendment of the Rule 16 order, once it became apparent that
15   　　　　[it] could not comply with the order.

16   *Jackson v. Laureate, Inc.*, 186 F.R.D. 605, 608 (E.D. Cal. 1999) (citing *Johnson v. Mammoth*

17   *Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992); *In re San Juan Dupont Plaza Hotel Fire*

18   *Litig.*, 111 F.3d 220, 228 (1st Cir. 1997); and *Eckert Cold Storage, Inc. v. Behl*, 943 F. Supp.

19   1230, 1233 (E.D. Cal. 1996)) (internal citations omitted).  "[C]arelessness is not compatible with a

20   finding of diligence and offers no reason for a grant of relief."  *Johnson*, 975 F.2d at 609.

21   　　　　If the movant is able to establish diligence, prejudice to the non-movant is an additional,

22   independently sufficient—although not necessary—reason to deny the Rule 16 motion.  *See id.*

23   (noting that the degree and existence of prejudice to the non-movant may provide additional

24   reasons to deny the motion, but that prejudice is secondary to the diligence inquiry).  Prejudice is a

25   case-specific question, but it includes (among other things) delay to the trial, *see, e.g.*, *Wells Fargo*

26   *Bank, N.A. v. Renz*, 2010 WL 2867615, at *3 (N.D. Cal. July 20, 2010) (denying motion to amend

27   under Rule 15's more lenient standard because it would delay the trial and thus prejudice the

28   parties); *Harris v. Vector Mktg. Corp.*, 2009 WL 3710696, at *2 (N.D. Cal. Nov. 4, 2009) (same,

1   where proposed amendment would "derail the Court's scheduling order"), and delay caused by

2   additional discovery.  *See Lockheed Martin Corp. v. Network Solutions, Inc.*, 194 F.3d 980, 986

3   (9th Cir. 1999); *Harris*, 2009 WL 3710696, at *2.

4       For the reasons discussed below, Arista satisfies neither of these stringent requirements. [2]

5   **IV.    ARGUMENT**

6       Arista utterly fails to establish its diligence in bringing the current motion, which alone

7   necessitates denial.  However, given the motion's timing, and in light of the Court's trial schedule,

8   the motion also severely prejudices Cisco in this now year-old intellectual property theft dispute.

9       **A.    Arista Was Not Diligent**

10      As noted above, the primary basis on which Arista asserts its counterclaims are two fact

11  patterns that were not only reasonably foreseeable, but were actually ***known and apparent*** to

12  Arista for years.  The first is the supposed "about face" Cisco made with respect to its CLI

13  intellectual property.  (Dkt. 162-6 ¶ 33.)  According to Arista, Cisco for years effectively

14  committed its intellectual property to the public domain and then only made an about face with

15  respect to that intellectual property once it was faced with competition from Arista.  (*See, e.g.*,

16  Dkt. 162-6 ¶¶ 25-31.)  Putting aside for the moment that this is a fabrication and refuted in

17  multiple, diverse ways by Arista's own witnesses and documents in this case, the factual predicate

18  underlying Arista's claim is that, ***by asserting intellectual property rights over its CLI***, Cisco

19  somehow committed an antitrust violation.  (*See, e.g.*, Dkt. 162-6 ¶¶ 111-112, 150.)[3]

20

---

21      [2] Although Arista's antitrust claims are also futile, that is a question under Rule 15 and thus
22  not at issue here.  When and if appropriate, Cisco will address the futility—*i.e.*, implausibility and
    meritless nature—of Arista's claims in a proper motion to dismiss.

23      [3] In response to this point, Arista may cite certain of its proposed counterclaim allegations
24  aimed at circumventing the inevitable problems that arise when a plaintiff alleges antitrust
    violations from an intellectual property holder asserting that property in the market.  (Dkt. 162-6
25  ¶¶ 130-31); *cf. Sosa v. DIRECTV, Inc.,* 437 F.3d 923, 929-30 (9th Cir. 2006) (noting that
    invocations of intellectual property rights are typically immunized from the antitrust laws under
26  the *Noerr-Pennington* doctrine, and that these protections extend to pre-litigation assertions of
    intellectual property ownership and infringement).  Cisco will address these allegations at the
27  proper point, but they cannot avoid the simple conclusion that this very lawsuit is a core example
    of the allegedly "improper" intellectual property assertions of which Arista complains.

28

1    Even assuming that could somehow be true, there is a clear point in time at which the basis

2    for such a claim should have been readily apparent:  December 5, 2014.  That is the date Cisco

3    filed this lawsuit against Arista, and is the date on which Cisco made abundantly clear that it

4    would not permit Arista to infringe its CLI intellectual property.  (*See*, *e.g.*, Dkt. 1 ¶ 42-44, 50-54,

5    Prayer for Relief ¶ 4.)  Arista does not claim that it was unaware of these facts, nor could it

6    because Cisco's assertion of copyright ownership and its pursuit of injunctive relief related to

7    Arista's copyright infringement is one of the core bases for the counterclaims.  (*See* Dkt. 162-6 ¶

8    91 ("One of the ways Cisco carried out its policy reversal was to announce to the industry that it

9    claimed copyright infringement from Arista's use of 514 CLI commands…and in contrast to its

10   years of representations, Cisco even sought injunctive relief against the use of those commands.").

11   Moreover, although Arista uses documents obtained during discovery in this case to bolster its

12   allegations, (Dkt. 162-6 at Exs. A-H), the vast majority of those were produced to Arista long

13   before its motion and most before the deadline for amendments to the pleadings.  (*See*, *e.g.*, Dkt.

14   162-6 at Exs. A, C, D, F (produced in related proceedings between Cisco and Arista before the

15   ITC, and in this matter on July 21, 2015); and at Exs. E and H (produced in related ITC

16   proceedings, and in this matter on September 25, 2015).  And, in any event, Arista first alleged the

17   supposed "about face" in ***February 2015***, when it answered Cisco's initial Complaint in this

18   action.  (*See* Dkt. 36, at 1 ("Until December 2014, Cisco never suggested that it claimed copyright

19   protection in the set of functional commands that most of the industry uses.").

20       Thus, even if Arista had been somehow unaware during multiple litigations with Cisco that

21   the latter was asserting intellectual property rights over its CLI, it had more than ample

22   opportunity to seek to add the "about face" counterclaim before the Court's scheduled deadline.

23       Moving to the other primary liability theory—Cisco's alleged "bundling" of SMARTnet

24   with Cisco switches—Arista never claims that it was unaware of the allegedly anticompetitive

25   bundling activity before the amendment deadline.  The bundling allegations simply identify a

26   service that Cisco provides to its customers and claim that Cisco's pricing methodology for that

27   service somehow forecloses competition.  (Dkt. 162-6 ¶¶ 33-39.)  Arista does not claim that this is

28   a new practice or that it is premised on "new" facts Arista just learned, nor does it identify any

1   efforts to diligently pursue this liability theory before the Rule 16 deadline.  (*Id.*)  Moreover,

2   Arista cites no documents from discovery in this case for its bundling theory, further failing to

3   explain why it just now brings the claim.  ███████████████████████████████████████

4   ████████████████████████████  *See* Cannon  Decl., Ex. A.

5          For these reasons, Arista completely fails to establish that it was diligent in pursuing the

6   newly-proposed claims.  This is unsurprising given that, ***over one year before*** it brought its

7   motion, Arista was aware of the core facts underlying at least its CLI-related antitrust claims.

8   Such unexplained delay is the antithesis of diligence and is alone a reason to deny the motion.  *See*

9   *Johnson*, 975 F.2d at 609 ("If [moving] party was not diligent, the inquiry should end."); *Rodarte*

10  *v. Alameda Cty.*, 2015 WL 5440788, at *3 (N.D. Cal. Sept. 15, 2015) (finding plaintiff was not

11  diligent in pursuing amendment where, even accepting that the need to amend only became clear

12  at summary judgment, Plaintiff did not seek amendment for an unexplained two more months).

13         This, however, is not where Arista's lack of diligence ends.  Arista must also show that it

14  was diligent in "assisting the court in creating a workable Rule 16 order," and that

15  "notwithstanding its diligent efforts to comply, because of the development of matters which

16  could not have been reasonably foreseen or anticipated at the time of the Rule 16 scheduling

17  conference."  *Jackson*, 186 F.R.D. at 608.  The parties recently spent weeks negotiating an

18  Amended Scheduling Order in this case.  They then presented that Order to the Court for approval,

19  which, after some follow up regarding *Daubert*-related dates, the Court granted.  (Dkt. 160.)

20         Not once during the discussions over the Amended Scheduling Order did Arista's lawyers

21  ever mention that they might want to bring antitrust counterclaims.  (Dkts. 156 (Joint Stipulation

22  Amending Scheduling Order, dated January 14, 2016) & 159 (Joint Stipulation Amending

23  Scheduling Order, dated January 19, 2016).)  Yet, only six days following the Court's entry of that

24  Order, Arista suddenly sought leave to file a 153-paragraph, 55-page antitrust complaint that those

25  same lawyers admit will greatly expand the scope of discovery.  (Mot. at 1, dated January 25,

26  2016.)  Arista cannot seriously claim that it was unable to put Cisco and the Court on notice

27  earlier that it might bring these claims, particularly because its antitrust lawyers appeared in the

28  case two months earlier, in November of last year.  (*See* Dkts. 104 & 105; *see also* Mot. at 5

8

OPPOSITION TO MOTION FOR LEAVE TO AMEND
Case No. 5:14-cv-05344-BLF

1  (noting that Arista retained antitrust counsel in November 2015).)[4]  Nor is there any good

2  explanation for why Arista remained silent on the amendment issue while negotiating—at

3  length—an Amended Scheduling Order for the broader case.  This, again, is the opposite of

4  diligence.  *See Integrated Storage Consulting Servs., Inc. v. NetApp, Inc.*, 2014 WL 6816907, at

5  *2 (N.D. Cal. Dec. 3, 2014) ("[N]ot only must parties participate from the outset in creating a

6  workable Rule 16 scheduling order but they must also diligently attempt to adhere to that schedule

7  throughout the subsequent course of the litigation.").

8              **B.        Amending the Case Schedule Now Would Prejudice Cisco**

9              Rule 16 places so much emphasis on diligence because unjustifiably late requests to amend

10  a case schedule create massive inefficiencies and disruption.  *See Johnson*, 975 F.2d at 610.  But,

11  as previously noted, prejudice in the face of diligence still acts as an additional, independent basis

12  to deny a Rule 16 motion.  *Id.* at 609.

13              Here, the parties are scheduled to begin trial on Cisco's affirmative claims in November

14  2016, less than ten months from now.  The parties have scheduled two weeks to address Cisco's

15  claims and expect that they will need to use all of that time to adequately present their respective

16  cases.  (Dkt. 106 (11/5/2015 Hr'g Tr.) at 27:3-14.)  They are currently in the midst of heavy

17  discovery, only some of which Arista believes overlaps with its new counterclaims.  (*See* Mot. at 1

18  ("Discovery into Arista's antitrust claims will overlap to some extent with discovery into Cisco's

19  copyright infringement claims…").

20              Notably, the current trial date is the second such date the Court set in this case, having

21  continued the first at Arista's request due to its assertion that it needed to conduct further

22  discovery.  (Dkt. 132.)  At the time the Court did so, it provided the date in consultation with both

23  parties and then asked them to work out the details for the extended discovery schedule.  (*See* Dkt.

24  145 (Dec. 3, 2015 Hr'g Tr.) at 56-62.)  But the Court also did so by noting that moving the date by

25  only a few weeks would likely yield very little prejudice, whereas a year and a half delay would be

---

27      [4]  Notably, Arista claims that it located the documents cited in its counterclaims in November.
28  (Mot. at 5.)  It does ***not*** similarly claim that it first learned the alleged facts in November.  (*Id.*)

OPPOSITION TO MOTION FOR LEAVE TO AMEND
Case No. 5:14-cv-05344-BLF

1  something altogether different. (*Id.* at 42:15:21.) Arista neither indicated to the Court nor Cisco

2  at that time (or before filing this motion) that it would need to conduct antitrust-related discovery

3  on the new schedule, despite that it had already retained antitrust counsel in November (*see* Mot.

4  at 5). Nor did it indicate that it would need to try antitrust counterclaims alongside Cisco's

5  affirmative intellectual property infringement claims. (*See* Dkts. 93, 108, 127.)

6        Shortly after Arista filed this motion, the parties held a Case Management Conference

7  before the Court on January 28, 2016. At that time, the Court noted it would not be inclined to

8  separately try the parties' respective claims, and that the counterclaims would drastically increase

9  the complexity of the overall dispute. (Jan. 28, 2016 Hr'g Tr. at 13:11-22.) Because of this, the

10  current trial schedule would be insufficient, because the Court has not reserved an adequate

11  amount of time to resolve a dispute of that breadth. (*Id.*) Furthermore, the Court is unable to

12  schedule a new trial date long enough to accommodate both sets of claims until at least February

13  2018, (*id.* at 14:8-15), which would delay Cisco's day in court by *at least a year and a half*, and

14  this in a case where the trial date has already been pushed back due to Arista's efforts.

15        Given the clarity the Court provided on how the amendment would affect the case

16  schedule, one of the primary bases on which Arista bases its motion—the supposed lack of delay

17  caused by the requested amendment, (*see* Mot. at 1-2 ("Consequently, Arista's motion will not

18  prejudice Cisco, *nor delay the trial of this action*.") (emphasis added))—is fundamentally

19  incorrect. As such, even on Arista's own logic, Cisco would be severely prejudiced if the Court

20  granted the motion. *See Renz*, 2010 WL 2867615, at *3 (delay of trial constituted prejudice

21  sufficient to deny motion to amend); *Harris*, 2009 WL 3710696, at *2 (same, where proposed

22  amendment would "derail the Court's scheduling order"); *cf. also* Dkt. 145 at 42:15-21 (noting

23  that, unlike a year and a half delay, a delay of a matter of weeks would cause little prejudice).

24  Even had Arista been at all diligent with seeking amendment, this provides an independent and

25  equally compelling reason to deny the motion.

26  **V.    CONCLUSION**

27        For all of the above reasons, Cisco respectfully requests that the Court deny Arista's

28  motion for leave and require it to file its antitrust claims, if at all, in a separate lawsuit.

1    DATED:  February 8, 2015              Respectfully submitted,

2

3                                         */s/ Sean S. Pak*

4                                         Kathleen Sullivan (SBN 242261)
                                          kathleensullivan@quinnemanuel.com
                                          QUINN EMANUEL URQUHART &
5                                         SULLIVAN LLP
                                          51 Madison Avenue, 22nd Floor
6                                         New York, NY 10010
                                          Telephone: (212) 849-7000
7                                         Facsimile: (212) 849-7100

8                                         Sean S. Pak (SBN 219032)
                                          seanpak@quinnemanuel.com
9                                         John M. Neukom (SBN 275887)
                                          johnneukom@quinnemanuel.com.
10                                        Matthew D. Cannon (SBN 252666)
                                          matthewcannon@quinnemanuel.com
11                                        QUINN EMANUEL URQUHART &
                                          SULLIVAN LLP
12                                        50 California Street, 22nd Floor
                                          San Francisco, CA 94111
13                                        Telephone: (415) 875-6600
                                          Facsimile: (415) 875-6700
14
                                          Mark Tung (SBN 245782)
15                                        marktung@quinnemanuel.com
                                          QUINN EMANUEL URQUHART &
16                                        SULLIVAN LLP
                                          555 Twin Dolphin Drive, 5th Floor
17                                        Redwood Shores, CA 94065
                                          Telephone: (650) 801-5000
18                                        Facsimile: (650) 801-5100

19                                        Steven Cherny *(admission pro hac vice
                                          pending)*
20                                        steven.cherny@kirkland.com
                                          KIRKLAND & ELLIS LLP
21                                        601 Lexington Avenue
                                          New York, New York 10022
22                                        Telephone: (212) 446-4800
                                          Facsimile: (212) 446-4900
23
                                          Adam R. Alper (SBN 196834)
24                                        adam.alper@kirkland.com
                                          KIRKLAND & ELLIS LLP
25                                        555 California Street
                                          San Francisco, California  94104
26                                        Telephone: (415) 439-1400
                                          Facsimile: (415) 439-1500
27
                                          Michael W. De Vries (SBN 211001)
28                                        michael.devries@kirkland.com

                                          11
                       OPPOSITION TO MOTION FOR LEAVE TO AMEND
                              Case No. 5:14-cv-05344-BLF

1

KIRKLAND & ELLIS LLP
333 South Hope Street
Los Angeles, California 90071
Telephone: (213) 680-8400
Facsimile: (213) 680-8500

*Attorneys for Plaintiff Cisco Systems, Inc.*

OPPOSITION TO MOTION FOR LEAVE TO AMEND
Case No. 5:14-cv-05344-BLF