**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

| | |
|---|---|
| Kathleen Sullivan (SBN 242261) | Steven Cherny *(admitted pro hac vice)* |
| kathleensullivan@quinnemanuel.com | steven.cherny@kirkland.com |
| QUINN EMANUEL URQUHART & SULLIVAN LLP | KIRKLAND & ELLIS LLP |
| 51 Madison Avenue, 22nd Floor | 601 Lexington Avenue |
| New York, NY 10010 | New York, New York 10022 |
| Telephone: (212) 849-7000 | Telephone: (212) 446-4800 |
| Facsimile: (212) 849-7100 | Facsimile: (212) 446-4900 |
| | |
| Sean S. Pak (SBN 219032) | Adam R. Alper (SBN 196834) |
| seanpak@quinnemanuel.com | adam.alper@kirkland.com |
| John M. Neukom (SBN 275887) | KIRKLAND & ELLIS LLP |
| johnneukom@quinnemanuel.com. | 555 California Street |
| QUINN EMANUEL URQUHART & SULLIVAN LLP | San Francisco, California 94104 |
| 50 California Street, 22nd Floor | Telephone: (415) 439-1400 |
| San Francisco, CA 94111 | Facsimile: (415) 439-1500 |
| Telephone: (415) 875-6600 | |
| Facsimile: (415) 875-6700 | Michael W. De Vries (SBN 211001) |
| | michael.devries@kirkland.com |
| Mark Tung (SBN 245782) | KIRKLAND & ELLIS LLP |
| marktung@quinnemanuel.com | 333 South Hope Street |
| QUINN EMANUEL URQUHART & SULLIVAN LLP | Los Angeles, California 90071 |
| 555 Twin Dolphin Drive, 5th Floor | Telephone: (213) 680-8400 |
| Redwood Shores, CA 94065 | Facsimile: (213) 680-8500 |
| Telephone: (650) 801-5000 | |
| Facsimile: (650) 801-5100 | |

*Attorneys for Plaintiff Cisco Systems, Inc.*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION**

| | |
|---|---|
| CISCO SYSTEMS, INC., | CASE NO. 5:14-cv-5344-BLF |
| Plaintiff, | **CISCO'S RESPONSE TO ARISTA'S SUPPLEMENTAL PROPOSED DISCOVERY PLAN** |
| vs. | |
| ARISTA NETWORKS, INC., | **REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED** |
| Defendant. | Dept.: Courtroom 3 |

## I. INTRODUCTION

The Supplemental Proposed Discovery Plan ("Plan") submitted by Defendant Arista Networks, Inc. ("Arista") fails to explain why it would be necessary to double—for the second time—the number of permissible depositions in this case. *See* Dkt. 180, 181. Although Arista asserts that the forty depositions it seeks leave to take are "relevant," Arista does not explain why those depositions are necessary. Both parties could take dozens of arguably "relevant" depositions. But increasing the number of depositions to four times the default limit of Fed. R. Civ. P. 30 is neither substantively necessary nor practical as a matter of case management. Plaintiff Cisco Systems, Inc. ("Cisco") therefore respectfully requests that Arista's Plan be rejected.

Discovery is not justified just because it may be "relevant"—especially not discovery in excess of the default limits provided in the Federal Rules of Civil Procedure. Rather, discovery is permissible only where it ***both*** seeks relevant information and is "proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). The recent amendments to Rule 26 of the Federal Rules of Civil Procedure reinforce the importance of the proportionality requirement. *See, e.g.*, Fed. R. Civ. P. 26 Advisory Committee's note (2015) ("The present amendment restores the proportionality factors to their original place in defining the scope of discovery.").

In its Plan, however, Arista offers little more than tenuous arguments about the relevance of the depositions it proposes taking. Arista does not explain the need for its proposed increase in permissible depositions and completely ignores the redundant and cumulative nature of the discovery it seeks. Arista's Plan—replete with unnecessary, duplicative depositions aimed at testimony that, even if obtained, would be largely irrelevant and inadmissible in the case in any event—should be rejected.

## II. ARISTA HAS NOT SHOWN GOOD CAUSE FOR AN ADDITIONAL TWENTY DEPOSITIONS.

### A. Arista Has Not Shown Good Cause To Depose 19 CLI Creators.

Nearly half of the deponents in Arista's Plan are individuals who created Cisco CLI command expressions. This includes five depositions that have already occurred (Messrs. Li,

1  Lougheed, Roy, and Slattery, and Ms. Liu), four depositions that Arista has noticed (Messrs.
2  Kavasseri, Marques, Patil, and Satz), and ten depositions Arista intends to notice (nine unspecified
3  CLI "authors" from a list of eighteen and Mr. Remaker).  Arista does not have good cause to take
4  cumulative depositions of nineteen witnesses on the same subjects, especially where the
5  depositions taken so far show that the testimony Arista seeks is cumulative and of marginal
6  relevance at best.

7       Contrary to Arista's representations, the depositions taken to date universally confirm that
8  Cisco's copyrighted command-line interface ("CLI") is the product of a creative process at Cisco
9  spanning three decades.  For example, Kirk Lougheed—a Cisco founder and creator of the earliest
10 version of Cisco's CLI—testified about his creation of the configuration command "ip address."
11 Although Arista has implied that this command expression is not a creative, protectable element of
12 Cisco's copyrighted works, Mr. Lougheed testified that he chose to use the expression "ip
13 address" instead of a variety of alternatives, including expressions employing different terms
14 and/or terms that were arranged differently.  *See* Ex. 1 (Lougheed Dep. Tr.) at 129:10-130:20,
15 131:23-132:9.  Other CLI creators—whether employed by Cisco or third parties—have repeatedly
16 testified that CLI command expressions are creative choices.  *See, e.g.*, Ex. 2 (Li Dep. Tr.) at
17 172:1-173:15; Ex. 3 (Roy Dep. Tr.) at 33:18-40:8; Ex. 4 (Liu Dep. Tr.) at 181:14-184:18.
18 
19      *See* Ex. 5 (Dale Dep. Tr.) at 150:21-154:10, 188:2-25; Ex. 6 (Sweeney Dep. Tr.) at
20 115:15-23, 175:15-177:24, 223:17-224:12.  In fact, one of Arista's lead software engineers stated
21 in an email he sent while working on certain of Cisco's copyrighted CLI command expressions
22 before moving to Arista, that the choice of terms in a command expression is "very subjective,"
23 requiring Cisco engineers to exercise their best judgment regarding command syntax.  *See* Ex. 8
24 (Sweeney Dep. Ex. 123).  "These expressive choices push [Cisco's CLI] into the realm of
25 copyrightability."  *See Enterprise Mgmt. Ltd. v. Warrick*, 717 F.3d 1112, 1119 (10th Cir. 2013)
26 (reversing summary judgment in favor of copyright infringement defendant, applying *Feist*
27 *Publications, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340 (1991)).  In any event, Arista now has
28 ample information about how Cisco's CLI command expressions were created.

1   Arista's request for nineteen depositions regarding fine-grained details about how Cisco's
2 creative process played out with respect to every single element of Cisco's copyrighted works is
3 not proportionate to the issues in the case.  Originality is a low bar.  *See Feist Pub'ns, Inc. v. Rural*
4 *Telephone Service Co.*, 499 U.S. 340, 345 (1991) ("To be sure, the requisite level of creativity is
5 extremely low; even a slight amount will suffice.").  Evidence explaining the process by which a
6 copyrighted work is created, even if not focused on the details of each element in a work, is
7 sufficient to prove originality.  *See CDN Inc. v. Kapes*, 197 F.3d 1256, 1260-61 (9th Cir. 1999)
8 (holding that the process by which publisher of guide to value of collectible coins arrived at values
9 was sufficiently creative for the guide, and the values it contained, to be protectable).  Arista does
10 not need—and cannot show good cause—for cumulative depositions of fourteen more witnesses,
11 over and above the five that have already been deposed on this comparatively unimportant subject.

12   Arista contends that these witnesses are necessary because they have testified or will
13 testify that the "words" or "terms" that comprise Cisco's copyrighted CLI command expressions
14 are similar to words or commands used in third-party systems and/or industry standards
15 documents.  *See* Plan at 2-3 (discussing Li, Liu, Lougheed, and Roy), *id.* at 4 (discussing
16 Kavasseri, Marques, Patil, and Satz); *see also id.* at 5 (asserting that "commands stem from
17 industry standards, common usage, or software systems that pre-date Cisco's founding").  But that
18 is both unnecessary and irrelevant.  First, there is no reason why Arista needs a live witness to
19 confirm that the same or similar words appear in some of Cisco's CLI command expressions and
20 in other documents.  If true, that will be evident from the face of the documents themselves.

21   Second, as a matter of law, the fact that some of the words or terms contained in Cisco's
22 CLI command expressions have been used in other documents has nothing whatsoever to do with
23 the originality of Cisco's works.  "Originality does not signify novelty; a work may be original
24 even though it closely resembles other works so long as the similarity is fortuitous, not the result
25 of copying." *Feist*, 499 U.S. at 345.  As the Tenth Circuit has noted:

26   [Defendant's] view misses the forest for the trees.  Any copyrightable work can be
   sliced into elements unworthy of copyright protection.  Books could be reduced to
27   a collection of non-copyrightable words.  Music could be distilled into a series of
   non-copyrightable rhythmic tones.  A painting could be viewed as a composition of
28   unprotectable colors.

4
RESPONSE TO SUPPLEMENTAL DISCOVERY PLAN
Case No. 5:14-cv-05344-BLF

1  *Enterprise Mgmt.*, 717 F.3d at 1119 (citation omitted).  In that case, the Tenth Circuit reversed the
2  trial court's grant of summary judgment to Warrick, the defendant, who had argued that a single
3  presentation slide containing an arrangement of common words (reproduced below) was
4  sufficiently creative to be copyrightable.  *Id.* at 1119.  Cisco's arrangement of terms into CLI
5  command expressions, as well as the hierarchical arrangement of those command expressions,
6  comprises a similarly creative work worthy of copyright protection, regardless of whether those
7  terms were known before the creation of Cisco's CLI.



While Arista is free to devote as many of its twenty depositions to individual CLI creators as it wishes, Arista's decision to devote more than five of its twenty depositions to cumulative and largely irrelevant testimony on a minor issue at the expense of depositions on far more significant issues should not be rewarded with additional depositions.

1   **B.     Arista Has Not Shown Good Cause To Depose Nine "Competitors."**

2   The second largest category of deponents identified in Arista's Plan comprises third-party
3   network device companies (Avaya, Brocade, Dell, Juniper Networks, Hewlett-Packard, Lenovo,
4   D-Link, Edge-Core, and Extreme). Arista asserts that each of these companies uses a CLI that
5   includes many of the same commands asserted in this case and argues that it needs to depose each
6   of these companies to confirm that they "used the same commands openly because they, and the
7   industry, understood that the commands were not proprietary." Plan at 4, 6. Arista adds that some
8   of the companies described their CLI as "industry standard." *Id.* However, even if Arista were
9   correct (and it is not), any such testimony would be irrelevant and inadmissible in this case.
10  Moreover, it is entirely cumulative of documents and other testimony.

11  As an initial matter, to the extent that Arista is misleadingly suggesting that it somehow
12  needs to depose these competitors to establish that Cisco's CLI is an "industry standard," that is
13  incorrect. It is simply untrue that the use of Cisco's CLI is required by *any* industry standard.
14  "Standards" documents in the networking industry focus on the operation of networks and the
15  devices of which they are comprised. They do not specify command expressions that must be
16  used for implementing those "standards."
17
18  *See* Ex. 2 (Li Dep. Tr.) at 202:23-204:1; Ex. 9 (Foss Dep. Tr.) at 112:11-13; Ex. 5
19  (Dale Dep. Tr.) at 263:20-273:6; Ex. 6 (Sweeney Dep. Tr.) at 165:1-6; Ex. 7 (Duda Dep. Tr.) at
20  57:10-59:24, 62:17-63:12, 272:1-4; *see also* Ex. 4 (Liu Dep. Tr.) at 188:9-206:10 (testifying with
21  respect to specific protocols). As Arista's CTO testified,
22
23  Ex. 7 (Duda Dep. Tr.) at 75:5-17.
24
25
26  *See* Ex. 5 (Dale Dep. Tr.) at 222:4-224:3.
27
28

1  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

2  ▮▮▮▮▮▮▮▮▮▮  *See* Ex. 10 (Shafer Dep. (Rough) Tr.) at 96:11-100:4.

3  Arista also cannot show good cause to depose nine competitors simply to establish that
4  those competitors' CLIs include some of the same command expressions.  Manuals and other
5  technical documentation, produced pursuant to subpoena from these competitors should suffice to
6  demonstrate what commands those competitors used and/or how they described those commands.
7  In any event, that some of these competitors may use some CLI command expressions similar to
8  some command expressions contained in Cisco's copyrighted works is irrelevant.  The behavior of
9  these third parties has no relevance to any claim or defense in this matter and Arista has not
10 articulated any.  *Cf. Oracle Am., Inc. v. Google Inc.*, 750 F.3d 1339, 1372 (Fed. Cir. 2014) ("In
11 fact, the Ninth Circuit has rejected the argument that a work that later becomes the industry
12 standard is uncopyrightable.").  Whether or not these competitors used Cisco's command
13 expressions and whether or not any such use rose to the level of copyright infringement has
14 nothing to do with Arista's wholesale copying of Cisco's CLI.  Indeed, one of Arista's purported
15 bases for seeking this discovery—laches—is not even a cognizable defense to copyright
16 infringement.  *See Petrella v. Metro-Goldwyn-Mayer, Inc.*, 134 S. Ct. 1962, 1973-74 (2014).
17 Moreover, even if any use by these competitors was actionable, that is irrelevant to Cisco's claims
18 against Arista.  *See id.* at 1976 ("It is hardly incumbent on copyright owners, however, to
19 challenge each and every actionable infringement."). ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
20 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
21 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮  *See* Ex. 5 (Dale Dep. Tr.) at 222:4-224:30; Ex. 11 (Dale
22 Dep. Ex. 106) at 38; Ex. 12 (Dale Dep. Ex. 109); Ex. 13 (Sweeney Dep. Ex. 121); Ex. 14
23 (Sweeney Dep. Ex. 122); Ex. 15 (Sweeney Dep. Ex. 124) at 2 ("Follow the Industry Standard");
24 Ex. 7 (Duda Dep. Tr.) at 45:2-47:23, 154:22-155:5; Ex. 17 (Duda Dep. Ex. 269).
25 Finally, Arista does not have good cause to depose nine competitors only to elicit
26 testimony regarding their purported subjective belief that "the commands were not proprietary."
27 Even if that were true (and it is not), such testimony would be inadmissible.  *See* Fed. R. Evid.
28 701(c).  The protectability of Cisco's CLI is a question for the Court.  *See, e.g.*, *Media.net*

1  *Advertising FZ-LLC v. NetSeer, Inc.*, --- F. Supp. 3d ----, 2016 WL 141707, at *5 n.3 (N.D. Cal. Jan. 12, 2016).  The subjective assessments of third-party corporations would be improper opinion testimony.  *See* Fed. R. Evid. 701(c).  Moreover, any such "understanding" would be woefully uninformed.  Any user of Cisco's operating system is greeted by a copyright notice when they start the CLI.  And in 2003, Cisco publicly sued Huawei, a competitor, for infringing its copyrights by, *inter alia*, slavishly copying Cisco's CLI.[1]

Arista seeks to depose three of these nine competitors (Avaya, HP, and Juniper Networks) for the additional reason that they have information relevant to prior art to the asserted patents.  While Arista has not explained how such depositions would provide any information beyond that contained in the technical documentation describing the prior art, assuming Arista deposes these three competitors on both the prior art and CLI-related subjects, there would plainly be no need for Arista to depose an additional six competitors above and beyond those three.  Additional competitor depositions are unwarranted and would be unduly cumulative and a waste of resources.

**C.      Arista Has Not Shown Good Cause For Many Other Depositions In Its Plan.**

Arista's Plan fails to show good cause for many of the additional depositions requested and often inexplicably seeks multiple witnesses when one would suffice.

*Fred Baker.*  It is unclear what Arista means when it says that Mr. Baker "has written several industry standard-setting documents that are directly relevant to the asserted commands."  Plan at 5.  The appropriate question is whether Mr. Baker's deposition testimony would be relevant and necessary to an issue in the case.  Arista has identified no such issue.  As described above, the use of Cisco's CLI is not required by any industry standard and the use of the same or similar words or terms in both the asserted commands and any industry standard document is irrelevant to any issue in dispute.

---

[1] Notably, these facts also show that Arista's proposed antitrust counterclaims based on an alleged "about-face" by Cisco are untenable.  Cisco has never taken the position that its competitors are free to use the proprietary CLI that Cisco spent three decades developing.

8
RESPONSE TO SUPPLEMENTAL DISCOVERY PLAN
Case No. 5:14-cv-05344-BLF

1         *Prakash Bettadapur.*  Arista says of Mr. Bettadapur only that he "is one of the named
2  inventors of the '886 patent." *Id.* at 6.  But Arista has already deposed Mr. Tjong, the other '886
3  patent inventor, and received documents and interrogatory responses regarding the conception and
4  reduction to practice of the '886 patent. *Id.* at 3.  Arista does not identify any non-duplicative
5  testimony that it seeks from Mr. Bettadapur.  In any event, if Arista wishes to depose Mr.
6  Bettadapur, it should prioritize his deposition among the other depositions in the matter.
7         *Competitive Personnel.*  Arista says vaguely that it plans to select "2-3 competitive
8  personnel" to depose.  *Id.* at 6.  But Arista does not explain why it needs more than one individual
9  deposition on that subject, over and above already duplicative 30(b)(6) testimony on the same
10 subjects.  *See* Ex. 16 (Arista's 30(b)(6) Notice) at Topic Nos. 112, 114.  Arista's antitrust claims
11 are not part of this matter; thus, Arista has no need for multiple redundant competition depositions
12 at this time.
13        *Sales & Marketing Personnel.*  Arista claims that it will need to depose "1-2 sales and
14 marketing personnel."  Plan at 6.  As with competitive personnel, Arista does not explain why it
15 needs more than one such deposition in addition to already duplicative Rule 30(b)(6) testimony
16 regarding sales and marketing topics.  *See* Ex. 16 (Arista's 30(b)(6) Notice) at Topic Nos. 106-
17 107, 114-116.  Arista's antitrust claims are not part of this matter; thus, Arista has no need for
18 multiple redundant marketing depositions at this time.
19        *Tail-f & Network Compliance Manager Personnel.*  Arista claims that it needs to depose
20 two witnesses to explain the operation of Tail-f and Network Compliance Manager, two Cisco
21 products that are capable of interacting with third-party network devices.  Plan at 6-7.  As an
22 initial matter, Arista mischaracterizes the operation of these products, claiming that they allow
23 "customers to use Cisco CLI commands to configure other vendors' switches by translating Cisco
24 CLI commands to competitors' CLI commands." *Id.* at 6.  They do not.  But, even if Arista's
25 mischaracterizations were correct, Arista cannot articulate any admissible legal theory that would
26 connect Cisco's sale of network management products to Arista's admittedly "slavish" copying of
27 Cisco's copyrighted CLI so that Arista could sell its network devices to Cisco's customers.
28

III. **ARISTA'S PLAN REVEALS THAT IT CAN TAKE THE DISCOVERY IT NEEDS WITHIN THE CURRENT TWENTY DEPOSITION LIMIT.**

As described above, Arista's Plan consists of numerous unnecessary and cumulative depositions. While Arista has attempted to explain why these depositions seek relevant information (albeit with varying degrees of clarity and success), it has failed to explain why these depositions are necessary or important—as ordered by the Court (Jan. 28, 2016 CMC Tr. at 4:17-25) and required by Fed. R. Civ. P. 26.

In fact, Arista's Plan reveals that Arista could easily complete the discovery it needs within the current twenty deposition limit, by pursuing a plan such as the one outlined below:

- *CLI Creators (7).* Five depositions already taken plus an additional CLI creator and Mr. Remaker.

- *Patent Inventors (3).* Two depositions already taken plus Mr. Mustoe (to whom Arista alleges the previously-deposed co-inventor Mr. Wheeler deferred on some issues). *See* Plan at 3.

- *Third Parties (4).* Three depositions of third parties who are also alleged prior artists (Avaya, Hewlett-Packard, and Juniper) plus Stanford University.

- *Others (6).* Arista could choose how to allocate these depositions, pursuing the remaining subjects contained in its Plan and/or re-treading the subjects above. Notably, within these six, Arista could cover competitive personnel, sales and marketing personnel, and Cisco personnel knowledgeable regarding Tail-f and Network Compliance Manager, incorporating every category in Arista's Plan.

The Court already has *doubled* the normal deposition limit to permit Arista to take additional discovery. That expanded number of depositions is more than adequate for the topics identified by Arista. There is no need to provide four times the normal number of depositions.

IV. **CONCLUSION**

For the foregoing reasons, Cisco respectfully requests that the Court deny Arista's request to raise the deposition limit to forty depositions per side in this case.[2]

---

[2] Alternatively, if the Court grants Arista additional depositions, Cisco respectfully requests that it be awarded a corresponding increase, as the Court has previously indicated it would order. *See* Jan. 28, 2016 CMC Tr. at 8:4-6.

| | | |
|---|---|---|
| 1 | DATED: February 16, 2016 | Respectfully submitted, |
| 2 | | |
| 3 | | /s/ Sean S. Pak |
| 4 | | Kathleen Sullivan (SBN 242261) |
| | | kathleensullivan@quinnemanuel.com |
| | | QUINN EMANUEL URQUHART & SULLIVAN LLP |
| | | 51 Madison Avenue, 22nd Floor |
| | | New York, NY 10010 |
| | | Telephone: (212) 849-7000 |
| | | Facsimile: (212) 849-7100 |

DATED: February 16, 2016

Respectfully submitted,

/s/ Sean S. Pak

Kathleen Sullivan (SBN 242261)
kathleensullivan@quinnemanuel.com
QUINN EMANUEL URQUHART & SULLIVAN LLP
51 Madison Avenue, 22nd Floor
New York, NY 10010
Telephone: (212) 849-7000
Facsimile: (212) 849-7100

Sean S. Pak (SBN 219032)
seanpak@quinnemanuel.com
John M. Neukom (SBN 275887)
johnneukom@quinnemanuel.com.
Matthew D. Cannon (SBN 252666)
matthewcannon@quinnemanuel.com
QUINN EMANUEL URQUHART & SULLIVAN LLP
50 California Street, 22nd Floor
San Francisco, CA 94111
Telephone: (415) 875-6600
Facsimile: (415) 875-6700

Mark Tung (SBN 245782)
marktung@quinnemanuel.com
QUINN EMANUEL URQUHART & SULLIVAN LLP
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, CA 94065
Telephone: (650) 801-5000
Facsimile: (650) 801-5100

Steven Cherny *(admission pro hac vice pending)*
steven.cherny@kirkland.com
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900

Adam R. Alper (SBN 196834)
adam.alper@kirkland.com
KIRKLAND & ELLIS LLP
555 California Street
San Francisco, California 94104
Telephone: (415) 439-1400
Facsimile: (415) 439-1500

Michael W. De Vries (SBN 211001)

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

michael.devries@kirkland.com
KIRKLAND & ELLIS LLP
333 South Hope Street
Los Angeles, California 90071
Telephone: (213) 680-8400
Facsimile: (213) 680-8500

*Attorneys for Plaintiff Cisco Systems, Inc.*