```
1              IN THE UNITED STATES DISTRICT COURT

2            FOR THE NORTHERN DISTRICT OF CALIFORNIA

3                      SAN JOSE DIVISION

4

5

   CISCO SYSTEMS, INC.,              )  CV-14-5344-BLF
6                                    )
                  PLAINTIFF,         )  SAN JOSE, CALIFORNIA
7                                    )
            VS.                      )  APRIL 8, 2016
8                                    )
   ARISTA NETWORKS, INC.,            )  PAGES 1-155
9                                    )
                  DEFENDANT.         )
10                                   )

11                 TRANSCRIPT OF PROCEEDINGS
         BEFORE THE HONORABLE BETH LABSON FREEMAN
12               UNITED STATES DISTRICT JUDGE

13

14     A P P E A R A N C E S:

15     FOR THE PLAINTIFF:  QUINN EMANUEL
                           BY:  SEAN SANG-CHUL PAK
16                         QUINN EMANUEL URQUHART & SULLIVAN, LLP
                           50 CALIFORNIA, FLOOR 22
17                         SAN FRANCISCO, CA 94111

18

19     FOR THE PLAINTIFF:  MARK YEH-KAI TUNG
                           QUINN EMANUEL URQUHART & SULLIVAN LLP
20                         555 TWIN DOLPHIN DRIVE, 5TH FLOOR
                           REDWOOD SHORES, CA 94065

21

22            APPEARANCES CONTINUED ON THE NEXT PAGE

23     OFFICIAL COURT REPORTER:  SUMMER FISHER, CSR, CRR
                                 CERTIFICATE NUMBER 13185

24

25        PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY
             TRANSCRIPT PRODUCED WITH COMPUTER
```

```
1            FOR THE DEFENDANT:  AJAY KRISHNAN
                                DAVID ROSEN
2                                DAVID SILBERT
                                KEKER & VAN NEST LLP
3                                633 BATTERY STREET
                                SAN FRANCISCO, CA 94111-1809
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

```
1        SAN JOSE, CALIFORNIA                 APRIL 8, 2016
2                    P R O C E E D I N G S
3        (WHEREUPON, COURT CONVENED AND THE FOLLOWING PROCEEDINGS
4   WERE HELD:)
5             THE COURT:  ALL RIGHT.  THANK YOU FOR COMING SO EARLY
6   THIS MORNING.  WHY DON'T WE CALL THE CASE AND GET EVERYONE'S
7   NAME ON THE RECORD.
8             THE CLERK:  CALLING CASE CV-14-5344-BLF.  CISCO
9   SYSTEMS, INC. V. ARISTA NETWORKS, INC.
10       COUNSEL, PLEASE STATE YOUR APPEARANCES.
11            MR. PAK:  GOOD MORNING, YOUR HONOR.
12       SEAN PAK FROM QUINN EMANUEL ON BEHALF OF CISCO.  AND WITH
13  ME HERE IS MARK TUNG.
14            THE COURT:  GOOD MORNING.
15            MR. SILBERT:  GOOD MORNING, YOUR HONOR.
16       DAVID SILBERT, KEKER & VAN NEST, ON BEHALF OF ARISTA.  AND
17  ALSO ON BEHALF OF ARISTA, AJAY KRISHNAN AND DAVID ROSEN FROM
18  KEKER & VAN NEST.
19            THE COURT:  GOOD MORNING.  PLEASE BE SEATED.
20       WELL, WE HAVE A LOT TO COVER TODAY.  YOU HAVE ASKED FOR
21  FOUR HOURS BETWEEN YOU, AND I HAVE A HARD STOP AT 12:30.  WE
22  WILL TAKE ONE 10-MINUTE BREAK, SO I'M GOING TO GIVE YOU AN HOUR
23  AND 55 MINUTES, I THINK THAT'S REASONABLE.
24       AND I WILL TRY NOT TO TALK TOO FAST AND NEITHER SHOULD YOU.
25  BUT WE DO HAVE SOME GROUND TO COVER TODAY.  I NEED TO START,
```

1    THOUGH, WITH SOME OF THE MOTIONS THAT WERE FILED REGARDING THE

2    EVIDENCE.  AND I'M HOPING TO GET THROUGH THIS RELATIVELY

3    QUICKLY.

4        THERE IS THE ISSUE THAT ARISTA HAS BROUGHT UP ON A MOTION

5    TO STRIKE THE EXPERT, DR. ALMEROTH'S DECLARATION.  AND I'VE

6    READ YOUR BRIEFS, AND QUITE FRANKLY, FOLLOWING JUDGE WARE'S

7    DECISION IN REFLEX PACKAGING, WHICH IS A CONSIDERATION OF WHAT

8    IT MEANT WHEN THE PATENT RULES WERE CHANGED TO REDUCE THE

9    REQUIREMENT OF DISCLOSURE.

10       I FEEL LIKE WHAT'S GOING ON HERE, ALTHOUGH MAYBE DIFFICULT

11   FOR THE PARTIES, IS RIGHT IN THE SWEET SPOT OF WHAT JUDGE WARE

12   WAS DEALING WITH AND A REASONABLE INTERPRETATION OF THE RULES.

13       SO IF MR. SILBERT, IF YOU HAVE ANYTHING ELSE TO ADD?

14       ALL RIGHT.  THAT IS MY RULING AND I WILL DENY THAT MOTION.

15       THEN WE HAVE A MORE VEXING ISSUE OF A RECORD THAT CONTINUES

16   TO GROW, AND THAT IS THE IPR FILINGS THAT ARISTA HAD

17   SUPPLEMENTED AND CISCO OBJECTS TO THAT.  BUT IF I ALLOW

18   ARISTA'S FILINGS, THEN I AM ASKED TO ALSO ALLOW CISCO'S.

19       LET ME JUST COMMENT THAT MY FIRST CONCERN IS THAT THIS IS

20   FURTHER EVIDENCE THAT THIS CLAIMS CONSTRUCTION IS PREMATURE IN

21   THIS CASE.  I HAVE GREAT CONCERN ABOUT PUSHING THIS SO QUICKLY

22   WHILE THE GROUND HAS NOT STOPPED MOVING IN TERMS OF THESE

23   PATENTS.  AND I'M STILL PLANNING TO GO FORWARD THIS MORNING, I

24   DIDN'T BRING YOU ALL HERE JUST TO TELL YOU TO GO HOME AT 8:32

25   IN THE MORNING, BUT I WANT YOU TO UNDERSTAND MY CONCERN.

1          I'M ALSO -- I'M ACTUALLY NOT INCLINED TO CONSIDER THIS

2     INFORMATION AT ALL BECAUSE I FEEL IT IS BEING SUBMITTED TO PTAB

3     UNDER A DIFFERENT STANDARD, AND I'M NOT PERSUADED, ALTHOUGH

4     THERE IS SOME CASE AUTHORITY THAT'S BEEN PROVIDED THAT, IT

5     BECOMES PART OF THE PROSECUTION HISTORY.  I'M NOT ACTUALLY SURE

6     THAT WITH THAT DIFFERENT STANDARD THAT PTAB REVIEWS THAT I

7     CAN -- THAT THOSE STATEMENTS WOULD BE PROPERLY PRESENTED HERE

8     WITH THE STANDARD I HAVE TO REVIEW.

9          SO I'M INCLINED TO DISALLOW ANY OF IT.  AND AGAIN, IF YOU

10    HAVE ANY FURTHER COMMENTS.

11               MR. SILBERT:  JUST VERY BRIEFLY, YOUR HONOR.

12         FIRST OF ALL, WE SHARE YOUR CONCERN ABOUT TRYING TO

13    CONSTRUE THE CLAIMS WHILE THERE'S A MOVING TARGET IN TERMS OF

14    WHAT'S GOING ON IN THE PTAB.

15         I THINK THE CONCERN WE HAVE IS SIMPLY THAT YOU CAN'T BE

16    WHIP SAWED IN A SITUATION WHERE IN THE PTAB, FOR PURPOSES OF

17    INVALIDITY, CISCO SAYS AND ULTIMATELY IS ALLOWED TO SAY, THIS

18    PRIOR ART DOES NOT INVALIDATE THIS PATENT BECAUSE THE CLAIMS

19    REQUIRE THIS SPECIFIC THING.  AND THEN IN COURT, FOR PURPOSES

20    OF INFRINGEMENT, TO SAY OH, NO, NO, NO, THE CLAIMS DON'T

21    REQUIRE THAT, SO THEREFORE YOU INFRINGE.

22         AND THAT'S WHAT WE DON'T WANT TO GET CAUGHT IN THE MIDDLE

23    OF AND 80 FRANKLY THE REASON WE SUBMITTED THOSE FILINGS, I

24    THINK THE POINT YOUR HONOR RAISES ABOUT DIFFERENT STANDARDS OF

25    CLAIM CONSTRUCTION IS ABSOLUTELY CORRECT AND SOMETHING THAT

```
 1    NEEDS TO BE KEPT IN MIND.

 2         BUT THERE IS A LITTLE NUANCE THERE BECAUSE WHAT THE

 3    STANDARDS REQUIRE IS THAT IN THE PTAB IT'S THE BROADEST

 4    REASONABLE INTERPRETATION.  SO IT OUGHT TO BE SOMETHING

 5    BROADER, AT LEAST THEORETICALLY THAN WHAT THE COURT APPLIES

 6    UNDER THE PHILLIPS STANDARD.

 7         SO IT'S NOT THAT THEY'RE IDENTICAL, BUT OUR POINT WOULD BE

 8    IF CISCO IS SAYING UNDER THE BROADEST POSSIBLE INTERPRETATION,

 9    THIS IS OUT, THEN THIS -- WHATEVER THIS IS OUGHT TO BE OUT

10    UNDER A NARROWER INTERPRETATION IN COURT.

11         BUT I MEAN, I THINK YOUR HONOR RAISES PRACTICAL ISSUES.  WE

12    SIMPLY AT THE END OF THE DAY, TO GET A TRULY FAIR RESULT, WE

13    WANT TO BE SURE THAT THE SAME, THE PATENT IS BEING JUDGED THE

14    SAME WAY FOR PURPOSES OF INVALIDITY AS FOR INFRINGEMENT.

15              THE COURT:  YEAH, WELL, THOSE ARE ISSUES THAT ARE

16    IMPORTANT.  AND IT'S CERTAINLY MY INTENTION TO WAIT, BECAUSE WE

17    ARE WEEKS AWAY FROM WHEN PTAB SHOULD LET YOU KNOW WHETHER THEY

18    WILL GRANT IPR, AREN'T WE?

19              MR. SILBERT:  CORRECT, IT'S IN MAY.

20              THE COURT:  EVEN IF THAT WERE PENDING, I COULDN'T GET

21    THE CLAIMS CONSTRUCTION ORDER OUT IN THE NEXT TWO OR

22    THREE WEEKS ANYWAY.

23         SO IT IS MY INTENTION TO WAIT, BECAUSE THE LAST THING I

24    WANT IS TO ISSUE CLAIMS CONSTRUCTION ONLY TO HAVE THE CASE GO

25    OFF TO PTAB.  AND ALTHOUGH WAITING A YEAR TO THEN ISSUE CLAIMS
```

```
 1    CONSTRUCTION WOULD BE DIFFICULT FOR ME, AND YOU MIGHT HAVE TO
 2    COME BACK IN AND DO A LITTLE BIT OF BRUSH UP FOR ME --
 3              MR. SILBERT:  WELL, AND THE RECORD WILL HAVE CHANGED
 4    BY THEN.  I MEAN, THERE WILL BE A DIFFERENT --
 5              THE COURT:  AND SO THIS IS, YOU KNOW, WE SCHEDULED
 6    THIS, I HAVE TO KEEP -- I PROMISED YOU A SCHEDULE FOR TRIAL,
 7    UNLESS -- AND I PRESUME THAT IF THE IPR IS GRANTED ON A
 8    SIGNIFICANT NUMBER OF THESE CLAIMS YOU WILL BE IMMEDIATELY
 9    FILING A MOTION TO STAY?
10              MR. SILBERT:  CORRECT.
11              THE COURT:  ALL RIGHT.  AND I WOULD EXPECT THAT
12    BECAUSE, AGAIN, AND THE COPYRIGHT PORTION OF THE CASE WOULD NOT
13    BE IMPERILED.
14              MR. SILBERT:  THEY ARE SEPARATE.
15              THE COURT:  I DON'T THINK ANYONE IS ASKING FOR THAT.
16    SO OUR SCHEDULE IS IMPORTANT, BUT I WOULD WANT YOU TO, I
17    IMAGINE YOU WILL HAVE THAT BRIEF PRETTY MUCH READY TO GO.  AND
18    I WOULD ASK YOU TO, BECAUSE IT'S NOT ROCKET SCIENCE ON THE
19    MOTION TO STAY, SO THAT I CAN HAVE AN EXPEDITED HEARING ON
20    THAT.
21         AND I'M NOT GOING TO ASK THAT CISCO FILE ANY OPPOSITION TO
22    THE STAY UNLESS WITHIN THE STATUTORY TIME, BUT AS SOON AS THOSE
23    BRIEFS ARE FILED, I WILL PROBABLY ISSUE A DECISION ON IT SO
24    THAT YOU KNOW RIGHT AWAY, AND I DON'T THINK WE NEED A HEARING
25    ON MOTIONS TO STAY.  I THINK WE HAVE ALL BEEN DOWN THAT ROAD IN
```

```
1    OTHER CASES.

2              MR. SILBERT:  AGREED.  THANK YOU, YOUR HONOR.

3              THE COURT:  ALL RIGHT.  WELL, I JUST WANTED TO GET

4    ALL OF THAT CLEAR.

5         ALL RIGHT, WELL, THAT'S -- I'M NOT -- I DON'T FEEL THAT I'M

6    COMPELLED UNDER THE LAW TO CONSIDER THESE SUPPLEMENTAL FILINGS

7    AND I AM GOING TO DECLINE TO DO THAT.

8         ALL RIGHT.  AND I DON'T KNOW THAT THAT ACTUALLY AFFECTS

9    WHAT YOU WERE PLANNING TO PRESENT TODAY.

10        THEN IF WE ARE READY TO PROCEED -- NOW, TYPICALLY -- I'M

11   SORRY, MR. PAK?

12             MR. PAK:  NO, GO AHEAD, YOUR HONOR.

13             THE COURT:  WHEN I HAVE LOTS OF TIME, I LIKE TO GO

14   BACK AND FORTH SO THAT I CAN REALLY QUESTION.  AND I AM

15   UNFORTUNATELY -- UNFORTUNATELY, I END UP TAKING A LOT OF THE

16   ATTORNEY'S TIMES WITH QUESTION.  BUT THEN YOU WON'T HAVE YOUR

17   TWO HOURS, IF YOU PLAN TO TALK FOR TWO HOURS.  WELL, THAT'S A

18   BLESSING, ALTHOUGH I SAID YOU COULD.

19        SO WHAT IS OUR BEST WAY THEN TO PROCEED?  WE HAVE THE TWO

20   PATENTS, OF COURSE, MR. PAK, WHAT'S YOUR SUGGESTION?

21             MR. PAK:  YOUR HONOR, WE THOUGHT THAT WE WOULD

22   GENERALLY FOLLOW THE ORDER OF THE TERMS THAT WERE BRIEFED, IN

23   TERMS OF --

24             THE COURT:  MY BRAIN IS ONLY GOING TO WORK IN THAT

25   ORDER BECAUSE I HAVE READ THESE OVER AND OVER IN THAT ORDER.
```

```
 1     SO I WOULD APPRECIATE THAT.

 2          MR. PAK:  THE ONLY EXCEPTION I MAY SUGGEST FOR

 3     YOUR HONOR'S CONSIDERATION, IS ON THE '526 PATENT, THERE ARE

 4     TWO TERMS, MANAGEMENT PROGRAMS AND GENERIC COMMAND.  THEY ARE

 5     RELATED.  ARISTA HAS PROPOSED A CONSTRUCTION THAT SUBSUMES THE

 6     GENERIC COMMAND DEFINITION.  AND THEY ARE ALSO RAISING AN

 7     INDEFINITE ARGUMENT ON BOTH TERMS.  I WOULD SUGGEST WE GO

 8     THROUGH THE GENERIC COMMAND AND THEN GO THROUGH THE RELEVANT

 9     TERMS.

10          THE COURT:  TYPICALLY I HAVE DEFERRED INDEFINITENESS

11     TO SUMMARY JUDGEMENT, THEN I GET IT AT SUMMARY JUDGEMENT AND

12     WHEN I HAVEN'T TAKEN CARE OF IT EARLIER.

13       SO I GUESS IT SOUNDED GOOD AT THE TIME WHEN I PUT IT OFF,

14     LIKE SO MANY THINGS DO, SO I HAVEN'T DECIDED YET WHETHER IT'S

15     APPROPRIATE, I WOULD LIKE YOU TO ADDRESS THAT ISSUE AS WELL.

16     IT'S CERTAINLY BRIEFED.  AND I DON'T KNOW WHETHER IT GETS

17     BETTER WITH TIME OR WHAT.  BECAUSE MY JOB HERE REALLY IS TO

18     CONSTRUE THE TERMS.

19       ALL RIGHT.  WHAT I HAVE DONE, AND FRANKLY --

20          MR. KRISHNAN:  YOUR HONOR, THERE'S ACTUALLY ONE OTHER

21     ISSUE IN TERMS OF ORDER THAT I WANTED TO RAISE.

22       IN THE '526 PATENT, AGAIN, THERE IS THE TERM, COMMAND PARSE

23     TREE, AND THEN THERE'S A SEPARATE TERM, COMMAND PARSE TREE

24     HAVING ELEMENTS EACH BLAH, BLAH, BLAH.  THEY ARE OVERLAPPING,

25     THEY OVERLAP VERY SIGNIFICANTLY IN TERMS OF CONTENT.  THERE'S A
```

```
1    SEPARATE TERM IN BETWEEN THE TWO OF THEM.  SO I THINK IT MIGHT
2    MAKE SENSE TO JUST TO ADDRESS THE TWO OF THOSE TOGETHER.
3              THE COURT:  I THINK I CAN HANDLE THAT.  I APPRECIATE
4    THAT.
5        YOU KNOW, WHEN I READ THESE THINGS THE FIRST TIME THROUGH,
6    IT'S KIND OF GRIEF TO ME, BUT I THINK I'M KIND OF GETTING A
7    SENSE OF IT.
8        SO I THINK WE ARE READY TO BEGIN.  AND THEN THE LAST THING
9    I WILL ASK IS, DID YOU WANT TO DEAL WITH A PRESENTATION ON ALL
10   THE TERMS OF ONE PATENT AND THEN SWITCH OVER OR JUST DO YOUR
11   WHOLE PRESENTATION OR TERM BY TERM?
12             MR. SILBERT:  WE DISCUSSED IN ADVANCE, CORRECT ME IF
13   THIS IS WRONG, I THINK WE AGREED, WE PREFER TERM BY TERM.  THEY
14   GO AND THEN WE GO ON THE TERM.
15             MR. PAK:  WHATEVER IS HELPFUL TO YOUR HONOR.
16             THE COURT:  YOU KNOW, THAT'S THE MOST HELPFUL TO ME,
17   AND UNFORTUNATELY I HAVE TO LEAVE TODAY EARLY.  SO I HAVE UNTIL
18   12:30, BUT I DON'T HAVE BEYOND THAT.
19       AND SO YOU KNOW, IF IT GOT TO BE REALLY CRUCIAL, YOU COULD
20   COME BACK AND, YOU KNOW, BECAUSE REALLY ULTIMATELY YOU ARE
21   DOING A GREAT SERVICE TO ME TO HELP ME UNDERSTAND.  YOU ARE NOT
22   HERE JUST TO HEAR YOURSELVES TALK.  I NEED TO KNOW WHAT YOU HAD
23   TO SAY.
24       AND THE BRIEFING GOT A LITTLE BIT ABBREVIATED BECAUSE OF
25   THE MANNER IN WHICH IT WAS SUBMITTED.  AND I RECOGNIZE THAT AS
```

1    WELL.

2         SO YOU DO HAVE SLIDES, AND THOSE OF COURSE ARE ALWAYS VERY

3    HELPFUL TO ME.  AND WE WILL SEESAW THEN ON THE TERMS.

4              MR. PAK:  YES, YES.

5              THE COURT:  THAT'S GREAT.  OKAY.

6              MR. PAK:  MAY I PROCEED, YOUR HONOR?

7              THE COURT:  YES, PLEASE.

8              MR. PAK:  OKAY.

9         SO YOUR HONOR, WE HAVE A LOT TO COVER TODAY.  I WANT INVITE

10   YOUR HONOR TO ASK QUESTIONS AT ANY TIME.  REALLY, AS YOUR HONOR

11   SAID, WE ARE REALLY HERE FOR YOUR HONOR'S BENEFIT.

12        AND I DO THINK THAT OUR PRESENTATION TODAY IS REALLY

13   INTENDED TO CUT THROUGH THE DIFFERENT BRIEFING, TRY TO IDENTIFY

14   FOR YOU WHAT ARE REALLY THE DISPUTED ISSUES AND WHERE WE THINK

15   THE CASE LAW AND THE FACTS COME OUT ON THESE PARTICULAR DISPUTE

16   THAT IS WE HAVE.

17        JUST TO REMIND YOUR HONOR ON THE '526, WE ARE GOING TO BE

18   TALKING ABOUT THE GENERIC COMMAND CONCEPTS RELATING TO HAVING

19   MULTIPLE EXECUTABLE ROUTINES.

20        AND I THINK WE COVERED A LOT OF GROUND LAST TIME IN THE

21   TECHNOLOGY TUTORIAL IN TERMS OF THE BACKGROUND TECHNOLOGY, BUT

22   THERE MAY BE PLACES, AGAIN, THAT WE MAY WANT TO TAKE YOU BACK

23   TO SOME OF THOSE PARTICULAR TECHNOLOGY DESCRIPTIONS TO MAKE

24   SURE THAT WE HAVE THE ISSUES TEED UP PROPERLY.

25        BUT AGAIN, THE GOAL IS TO MOVE FORWARD, FOCUS ON THE

1    SPECIFIC LEGAL ISSUES.  AND THEN ON THE '886, THE PRIMARY

2    DISPUTE WILL REVOLVE AROUND XML AND WHAT WHETHER IT NEEDS TO BE

3    A CLI PARSER --

4            THE COURT:  KLEENEX OR TISSUE, RIGHT?

5            MR. PAK:  EXACTLY.

6        SO LET'S BEGIN ON THE '526 PATENT WE HAVE SIX TERMS.  ON

7    THE INDEPENDENT METHOD CLAIM, WE HAVE THE BULK OF THE DISPUTE.

8    SO WE ARE TALKING ABOUT GENERIC COMMANDS, MANAGEMENT PROGRAMS

9    THAT ARE EFFECTIVELY BEING MANAGED THROUGH THIS GENERIC COMMAND

10   ARCHITECTURE.

11       WHAT DOES IT MEAN TO HAVE A COMMAND PARSE TREE?  THEN

12   THERE'S THIS LANGUAGE ABOUT HAVING EACH ELEMENT SPECIFY AT

13   LEAST ONE CORRESPONDING GENERIC COMMAND AND THEN THE VALIDATING

14   STEP.

15       AND I THINK IT'S A SLIGHTLY MORE ESOTERIC DISPUTE ABOUT

16   WHAT IT MEANS TO HAVE A MEANS PLUS FUNCTION CLAIM AND CLAIM 23

17   AND WHAT STRUCTURE.

18           THE COURT:  WELL, I'VE NEVER SEEN A STRUCTURE IN THE

19   MEANS PLUS FUNCTION, SO THAT ONE WAS A NEW ONE FOR ME, AND WE

20   WILL HAVE TO TALK ABOUT THAT.

21           MR. PAK:  WE WILL TALK ABOUT THAT ONE AS WELL.

22       ON THE '886 WE HAVE FOUR CLAIM TERMS:  XML, CLI PARSER AND

23   THEN THE TWO STEPS PARSING AND THEN THE WHEREIN CLAUSE.

24       SO JUMPING INTO THE '526 PATENT, THIS IS ON SLIDE 16, AS I

25   UNDERSTAND THE BRIEFING IN THE MEET AND CONFER PROCESS, THE

```
1        PRIMARY DISPUTE IS AROUND THE DEFINITENESS OF THIS CLAIM.

2             AND AS YOUR HONOR MENTIONED, I THINK YOUR HONOR AS WELL AS

3        MANY OTHER JUDGES IN THIS DISTRICT HAVE CONSIDERED THIS TO BE A

4        SUMMARY JUDGEMENT ISSUE, AND WE WOULD BE HAPPY TO BRIEF THIS

5        FURTHER AND HAVE ADDITIONAL EVIDENCE THAT EMERGES.

6             THERE'S BEEN LOTS OF DEPOSITION TESTIMONY IN THIS CASE

7        INVOLVING THE AUTHORS AS WELL AS THE PEOPLE THAT HAVE BEEN

8        INVOLVED IN DEVELOPING THE ACCUSED PRODUCTS.  SOME OF THAT

9        RECORD MIGHT BE HELPFUL IN YOUR HONOR'S DETERMINATION OF THIS

10       ISSUE.

11            THE COURT:  IF I NEED MORE, I WOULD DEFER BECAUSE

12       WE'VE GOT THE BRIEFING TAKEN CARE OF HERE.

13            MR. PAK:  EXACTLY, YOUR HONOR.

14            SO WHAT I WILL TRY TO DO FIRST IS TRY TO STICK TO THE

15       INTRINSIC RECORD, THE CASE LAW, BUT THERE'S OBVIOUSLY LOTS OF

16       EXTRINSIC EVIDENCE THAT'S BEEN DEVELOPED IN THE COURSE OF

17       DISCOVERY THAT MIGHT PERTAIN TO ISSUE NUMBER ONE.

18            ISSUE NUMBER TWO, WE HAVE TAKEN AS YOUR HONOR KNOWS, THE

19       DEFINITION STRAIGHT OUT OF THE PATENT.  AND SO TO THE EXTENT

20       THAT YOUR HONOR FINDS THAT THIS IS NOT INDEFINITE, WE THINK THE

21       CONSTRUCTION IS GIVEN IN THE PATENT SPECIFICATION IS A VERY

22       GOOD ONE TO USE.

23            ARISTA HAS PROPOSED MODIFICATIONS TO THAT VERBATIM

24       DEFINITION THAT WE DON'T THINK IS WARRANTED, SO WE WANT TO HIT

25       THAT AS WELL IN ISSUE NUMBER TWO.
```

1        SO THESE ARE THE TWO ISSUES FOR YOUR HONOR.

2        THE LAW IS CLEAR, WE HAVE THE NAUTILUS DECISION THAT DID

3    CHANGE THE STANDARD FOR INDEFINITENESS.  BEFORE IT WAS A VERY,

4    VERY HIGH STANDARD, NAUTILUS SOMEWHAT LOWERED THAT STANDARD,

5    BUT IT STILL, AS YOUR HONOR CAN SEE FROM ALL THE NORTHERN

6    DISTRICT OF CALIFORNIA CASES AS WELL AS OTHER CASES CONSTRUING

7    NAUTILUS, IT'S STILL A VERY DIFFICULT STANDARD FOR A DEFENDANT

8    TO MEET BECAUSE THE GOAL HERE IS NOT TO ACCESS WHETHER A

9    LAYPERSON LIKE THE FOLKS IN THIS ROOM UNDERSTAND THE DEFINITION

10   OR WOULD BE ABLE TO APPLY THE CLAIM TERM, BUT RATHER ONE

11   SKILLED IN THE ART.

12       SOMEBODY WHO IS, IN THIS CASE A COMPUTER ENGINEER, SOMEBODY

13   WHO IS A NETWORKING ENGINEER, TAKING INTO ACCOUNT EVERYTHING

14   THAT'S IN THE INTRINSIC RECORD AS WELL AS THE BACKGROUND OF

15   THAT PERSON AS WELL AS EXTRINSIC EVIDENCE WOULD BE ABLE TO HAVE

16   REASONABLE CERTAINTY IN APPLYING THE TERMS.

17       AND THE FEDERAL CIRCUIT AS WELL AS THE SUPREME COURT AND

18   ALL THE DISTRICT COURT JUDGES HAVE BEEN VERY CLEAR.  WE ARE NOT

19   LOOKING FOR A PRECISE DEFINITION, IT'S SOMETIMES VERY DIFFICULT

20   TO PUT INTO ENGLISH WORDS SCIENTIFIC AND ENGINEERING CONCEPTS.

21       SO THE GOAL ISN'T TO TRY TO COME UP WITH A PRECISE TERM OR

22   CONSTRUCTION IN ENGLISH FORM THAT CORRESPONDS TO TECHNICAL

23   CONCEPTS, THE QUESTION IS CONSIST AN ENGINEER KNOWING WHAT HE

24   KNOWS, LOOK AT THE EXAMPLES THAT ARE GIVEN IN THE PATENT AND

25   THEN REASONABLY APPLY IT TO THE TERM OF WHETHER SOMETHING

```
1    INFRINGES.

2              THE COURT:  SO SHOULD I IGNORE THE TESTIMONY OF THE

3    INVENTOR?

4              MR. PAK:  I THINK THE INVENTOR TESTIMONY, I'VE ARGUED

5    THIS, YOUR HONOR, AT THE FEDERAL CIRCUIT.

6        I HAD A CASE IN WHICH THE INVENTOR HIMSELF TESTIFIED THAT

7    HE HAD NO IDEA WHAT WAS SAID ON A PARTICULAR ISSUE BECAUSE AS

8    YOUR HONOR KNOWS, THE INVENTOR IS FOCUSSED ON THE INVENTION,

9    NOT THE CLAIM LANGUAGE, THE PATENT PROSECUTOR IS NOT INVOLVED.

10   THE FEDERAL CIRCUIT REMINDED ME THAT THE INVENTOR TESTIMONY IS

11   HIGHLY IRRELEVANT TO ISSUES OF CLAIM CONSTRUCTION.

12             THE COURT:  WELL, AT LEAST YOU GET TO USE THIS TO

13   YOUR ADVANTAGE.

14             MR. PAK:  SO I HAVE BEEN INSTRUCTED BY THE FEDERAL

15   CIRCUIT THAT THE WE SHOULD TAKE A VERY CAREFUL APPROACH IN

16   LOOKING AT INVENTOR TESTIMONY.  BECAUSE THE ISSUE OF

17   INDEFINITENESS IS WHETHER SOMEBODY WHO PICKS UP A PATENT CAN

18   UNDERSTAND WHETHER SOMETHING INFRINGES OR WHETHER SOMETHING IS

19   PRIOR ART.  MANY, MANY TIMES YOU DON'T EVEN HAVE THE BENEFIT OF

20   INVENTOR TESTIMONY.

21       YOU ARE MAKING THAT DECISION.  WE DON'T WANT TO CREATE

22   PRECEDENT WHERE YOU HAVE TO LOOK AT INVENTOR TESTIMONY TO

23   UNDERSTAND WHAT CLAIMS MEAN.

24       I WANTED TO POINT OUT THE NOBELBIZ CASE, IT'S ONE OF THE

25   MANY CASES IN NORTHERN CALIFORNIA AS WELL AS THE CASES
```

1    YOUR HONOR HAS DEALT WITH WHERE THE INDEFINITENESS CHALLENGE

2    HAS BEEN DENIED BECAUSE OF CLEAR EVIDENCE THAT THESE TERMS ARE

3    WELL UNDERSTOOD BY THOSE SKILLED IN THE ART.

4         IN THAT CASE I THINK THERE WERE GEOGRAPHIC REGIONS BEING

5    DEBATED AND THERE WERE LOTS OF EXTRINSIC, INTRINSIC ARGUMENTS.

6    ULTIMATELY THE COURT FOUND EVEN UNDER NAUTILUS, THAT WOULD BE

7    WELL UNDERSTOOD BY THOSE SKILLED IN THE ART.

8         THE COURT:  AND YET THIS IS A TERM THAT TO A

9    LAYPERSON LOOKS VERY ACCESSIBLE, JUST LIKE GEOGRAPHIC LOCATION

10   WOULD AS WELL.

11        MR. PAK:  AND ESPECIALLY EVEN IF WE DON'T GET INTO

12   THE TECHNICAL ASPECTS OF WHAT THE SCIENCE IS OR THE ENGINEERING

13   BEHIND PARSER TECHNOLOGY AND YOU READ THE CONSTRUCTION GIVEN IN

14   THE PATENT SPECIFICATION, YOU THINK ABOUT THIS IDEA OF HAVING A

15   UNIVERSAL LANGUAGE THAT CAN WORK WITH DIFFERENT TYPES OF

16   PROGRAMS, I THINK THAT'S A RARELY ACCESSIBLE CONCEPT, CERTAINLY

17   ONE THAT PROFESSOR ALMEROTH AND OTHERS WOULD BE ABLE TO APPLY

18   IN THIS CASE.

19        AS YOUR HONOR HAS RULED, EXTRINSIC EVIDENCE IS NOW PART OF

20   THE MARKMAN PROCEEDINGS.  WE HAVE DR. KEVIN ALMEROTH WHO IS A

21   WELL-ACCOMPLISHED COMPUTER SCIENTIST.  HE'S TALKED ABOUT THE

22   STATE OF THE FIELD BACK IN 2000 WHEN THIS PATENT WAS INVENTED.

23        WE ARE TALKING ABOUT, AS WE TALKED ABOUT IN THE TECHNOLOGY

24   TUTORIAL, THERE WAS A LOT OF PEOPLE AND COMPANIES LOOKING AT

25   UNIVERSAL MESSAGING, HOW DO WE WORK WITH DIFFERENT TYPES OF

1    TOOLS, NETWORKING TECHNOLOGIES.  HE'S IDENTIFIED AS A LEVEL OF

2    SKILL OF SOMEONE WHO HAS A BACHELOR'S OF SCIENCE DEGREE IN

3    ELECTRICAL ENGINEERING/COMPUTER SCIENCE OR RELATED FIELD, AND

4    WHO HAS TWO ORE FOUR YEARS OF RESEARCH OR INDUSTRY EXPERIENCE

5    OF.

6        SO THIS IS A FAIRLY HIGH LEVEL OF SKILL OF SOMEBODY WHO IS

7    WORKING IN THIS FIELD.  WE DON'T REALLY HAVE A DISPUTE, I

8    BELIEVE, WITH ARISTA ON THIS ISSUE BECAUSE THEY DIDN'T OFFER

9    ANY TYPE OF ALTERNATIVE DEFINITION OF ORDINARY SKILL IN THE

10   ART.

11       SO AGAIN, WE TALK ABOUT ALL THESE CLAIM CONSTRUCTION ISSUES

12   TODAY.  AND WE SHOULD KEEP IN MIND THAT WE ARE TALKING ABOUT AN

13   ENGINEER WITH AT LEAST 2 TO 4 YEARS OF ACTUAL WORK EXPERIENCE.

14       ON THE ISSUE OF VERBATIM DEFINITIONS, WE CITED A FEW CASES

15   AS YOU KNOW, PHILLIPS, THERE'S THE KANEKA CASE.  LOTS OF CASES

16   THAT SAY THE STARTING POINT IN ANY AN ANALYSIS IS THE INTRINSIC

17   RECORD.

18       SO THE INTRINSIC RECORD, WHETHER IT'S A LEXICOGRAPHER

19   SITUATION OR NOT, THE SPECIFICATION IS GIVING YOU SPECIFIC

20   GUIDANCE ON WHAT THE A TERM SHOULD MEAN, THAT'S HIGH RELEVANT

21   EVIDENCE.  AND WE THINK THAT WE CAN TALK ABOUT WHETHER GENERIC

22   COMMAND WAS SPECIFICALLY DEFINED IN THE CONTEXT OF LEXICOGRAPHY

23   OR NOT, BUT SETTING THAT ISSUE ASIDE, WE THINK UNDER PHILLIPS

24   THE RIGHT STARTING POINT IS THE INTRINSIC DEFINITION THAT WAS

25   GIVEN.

1          AND THIS WAS THE DEFINITION THAT WAS GIVEN IN THE PATENT.

2     THIS IS ON PAGE 20, COLUMN 3, LINE 31 THROUGH 35.

3          THERE ARE TWO THINGS ABOUT THIS DEFINITION, YOUR HONOR.

4     ONE IS IT PROVIDES IN ENGLISH FORM, THE CONCEPT OF A GENERIC

5     INSTRUCTION SET OR A GENERIC COMMAND THAT PROVIDES AN

6     ABSTRACTION OF THE TOOL SPECIFIC COMMAND FORMATS AND SYNTAX.

7          SO IT'S CONTRASTING GENERIC INSTRUCTION SET WITH TOOL

8     SPECIFIC COMMAND FORMATS AND SYNTAX AND SAYS THERE'S AN

9     ABSTRACTION OF THAT, ENABLES A USER TO ISSUE COMMANDS THAT ARE

10    BASED ON RELATIVE FUNCTIONS AS OPPOSED TO THE SPECIFIC SYNTAX

11    FOR A CORRESPONDING TOOL.

12         WE THINK, AGAIN, THIS IS AN EASY TO UNDERSTAND CONCEPT THAT

13    YOU HAVE A HIGHER LEVEL OF ABSTRACTION THAN WHAT THE MANAGEMENT

14    PROGRAM SYNTAX WOULD REQUIRE.  AND USING GENERIC COMMANDS, AS

15    WE TALKED ABOUT DURING THE TUTORIAL, AN ENGINEER CAN USE THE

16    SAME COMMANDS TO WORK WITH LOTS OF DIFFERENT TOOLS.

17              THE COURT:  SO WHEN I LOOKED AT THIS PART OF THE

18    PATENT, MY FIRST QUESTION WAS, DOES THIS TELL ME WHAT THE

19    GENERIC INSTRUCTION SET DOES OR WHAT IT IS?

20              MR. PAK:  I BELIEVE IT DOES BOTH.

21         SO I BELIEVE THAT THE ABSTRACTION IS THE CONCEPT HERE, SO

22    THAT FIRST OF ALL, THE GENERIC COMMAND WE KNOW IT HAS TO BE A

23    TYPE OF A COMMAND, SOME TYPE OF COMMAND.  SO THE WORD COMMAND

24    ITSELF GIVES MEANING TO GENERIC COMMAND.

25         BUT I THINK IN TERMS OF WHAT IT IS, IT IS AN ABSTRACTION,

1    IT PROVIDES AN ABSTRACTION OF THE TOOLS SPECIFIC COMMAND FORMAT

2    WITH SYNTAX.

3         SO YOU HAVE A COMMAND SET THAT IS IN ITSELF AN ABSTRACTION.

4    AND THEN IT GOES ON TO PROVIDE IN TERMS OF FUNCTIONALITY WHAT

5    IT DOES, WHICH IS THAT IT ENABLES A USER TO ISSUE COMMANDS

6    BASED ON RELATIVE FUNCTIONS, IT MEANS WHAT THE FUNCTION OF THAT

7    PARTICULAR COMMAND IS, RATHER THAN LOOKING AT THE SPECIFIC

8    SYNTAX.

9         SO I THINK THIS DEFINITION GIVES YOU BOTH THINGS.  SO

10   INHERENT IN THE IDEA OF GENERIC COMMAND, WE KNOW IT'S A

11   COMMAND, BUT WHAT DOES IT MEAN TO BE GENERIC AND WHAT'S AN

12   ABSTRACTION?  WHAT DOES IT DO?

13        ONE OF THE THINGS THAT IT DOES IS IT ENABLES A USER TO

14   ISSUE COMMANDS BASED ON RELATIVE FUNCTIONS AS OPPOSED TO

15   SYNTAX.

16             THE COURT:  AND SO YOU WOULD SAY THAT GENERIC

17   INSTRUCTION SET IS THE SAME AS GENERIC COMMAND.

18             MR. PAK:  CORRECT.

19             THE COURT:  OKAY.

20             MR. PAK:  I DON'T THINK THERE'S SIGNIFICANT

21   DISAGREEMENT ON THAT SINCE ARISTA HAS ALSO CITED THIS

22   PARTICULAR PORTION OF THE SPECIFICATION, IN THE EVENT THAT

23   YOUR HONOR FINDS THE TERM TO BE NOT INDEFINITE AS A STARTING

24   POINT FOR THEIR CONSTRUCTION.

25        BUT THE OTHER PIECE HERE, YOUR HONOR, IS VERY IMPORTANT

1    BECAUSE IT ALSO SAYS AS ILLUSTRATED IN PART A OF THE ATTACHED

2    APPENDIX.  AND THAT GOES TO THE INDEFINITENESS ARGUMENT.

3        SO IN THE VERY PLACE WHERE THE PATENT SPECIFICATION IS

4    GIVING YOU GUIDANCE IN TERMS OF THE DEFINITION, IT SAYS GO LOOK

5    AT THE EXAMPLES AS WELL.

6        THIS IS A TEACHING AGAIN, NOT TO A LAYPERSON, BUT TO A

7    COMPUTER SCIENTIST OR SOMEONE WHO IS WORKING IN THE SOFTWARE

8    FIELD.

9        SO ON PAGE 21, WE START WITH PART A, AND WE HAVE THE

10    COMMAND SYNTAX MAPPING, THAT'S ON THE LEFT-HAND SIDE.  THERE

11    ARE THREE COLUMNS.  YOU HAVE A FUNCTIONAL ITEM, THAT AGAIN IS

12    THE RELATIVE FUNCTION THAT WAS MENTIONED IN THE CONSTRUCTION

13    THAT WE JUST LOOKED AT.

14        SO WHAT DOES IT ACTUALLY DO?  REGARDLESS OF WHAT THE

15    COMMAND IS, WHAT IS THE STATED FUNCTION OF THAT PARTICULAR

16    COMMAND?

17        THE NEW SYNTAX CORRESPONDS TO THE GENERIC COMMAND SYNTAX.

18    SO WE ARE NOW PROVIDING A NEW SYNTAX, A COMMAND SYNTAX.

19            THE COURT:  SO THAT IS THE GENERIC COMMAND IN THE

20    MIDDLE?

21            MR. PAK:  CORRECT.

22            THE COURT:  OKAY.

23            MR. PAK:  AND WE KNOW THAT IN THE LATER PARTS I WILL

24    SHOW YOU AS WELL, PART B, WE HAVE NEW SYNTAX THAT'S A GENERIC

25    COMMAND.  THEN YOU CAN SEE THE OLD COMMAND LINE SYNTAX.  THESE

1   WILL BE THE OLDER MANAGEMENT PROGRAM TOOLS THAT PROVIDE A

2   SIMILAR FUNCTION USING DIFFERENT SYNTAX.

3        FOR EXAMPLE, IF WE WERE TO TAKE THE WATCH ACB THREADS OR

4   WATCH ACB GLOBALS, WE CAN SEE THAT THERE ARE DIFFERENT TYPES OF

5   OLDER TYPES OF COMMAND SYNTAX, BASEVIEW, APPVIEW, WE TALKED

6   ABOUT THIS IN THE TUTORIAL, THAT WOULD BE ABSTRACTED AWAY.  AND

7   NOW WE HAVE THE A GENERIC COMMAND WATCH, RATHER THAN THE

8   SPECIFIC COMMANDS SUCH AS BASEVIEW OR APPVIEW.

9        BUT THE DESCRIPTION GOES ON IN THE PATENT, ON PAGE 22 WE

10  HAVE APPENDIX PART B OF THE '526 PATENT.  AND THERE YOU CAN SEE

11  GENERIC COMMAND EXAMPLES IS THE TITLE OF THAT APPENDIX PART B.

12  AND YOU CAN SEE THE GENERIC COMMAND EXAMPLES IS SPECIFICALLY

13  THE WATCH HERE THAT WE JUST TALKED ABOUT.  AND IT TALKS ABOUT

14  THE RELATIVE FUNCTION AGAIN, IT TALKS ABOUT THE DIFFERENT

15  OBJECTS.

16       AND HERE THE DIFFERENT OBJECTS WOULD CORRESPOND GENERALLY

17  TO THE MANAGEMENT PROGRAM SO WE CAN CONTROL THINGS LIKE ACB,

18  PROGRAM TOOL, H323 MANAGEMENT TOOL AND SO ON.

19       AND THEN THERE ARE MANY, MANY EXAMPLES GIVEN OF THESE TYPES

20  OF GENERIC COMMANDS, WATCH, GET.  AND THEN IF WE GO TO SLIDE

21  23, SET, AS PART OF THAT PART B, STOP, AND SO ON.

22       SO WHAT WE HAVE IS NOT JUST THE LITERARY GUIDANCE IN TERMS

23  OF AN ENGLISH LANGUAGE DEFINITION, BUT WE HAVE SPECIFIC

24  EXAMPLES IN ENGINEERING TERMINOLOGY THAT A COMPUTER SCIENTIST

25  WOULD BE ABLE TO REVIEW AND UNDERSTAND THAT THIS IS WHAT A

1    GENERIC COMMAND IS, AND WHAT IT IS NOT.

2         AND SO AGAIN, WE THINK ALL OF THIS IS VERY, VERY HELPFUL TO

3    YOUR HONOR'S UNDERSTANDING OF HOW TO DEAL WITH THIS ISSUE.

4         AND DR.ALMEROTH WAS DEPOSED ON THESE TOPICS FOR A NUMBER OF

5    HOURS.  HE WAS ASKED SPECIFIC QUESTIONS ABOUT HOW DO YOU

6    DETERMINE AS A COMPUTER SCIENTIST WHAT IS A GENERIC COMMAND,

7    WHAT IS NOT.  HE GAVE ANSWERS THAT WERE VERY RESPONSIVE.

8         AND AGAIN, WE DON'T REALLY HAVE ANY OTHER EVIDENCE HERE ON

9    THE RECORD THAT SUGGESTS THAT SOMEONE OF ORDINARY SKILL IN THE

10   ART WOULD NOT UNDERSTAND THIS TERM OR WOULD HAVE INABILITY TO

11   APPLY THE PARTICULAR COMMAND CONTEXT WE ARE TALKING ABOUT HERE.

12        I WILL SKIP THE ARGUMENTS ABOUT IPR.

13        SO PAGE 30, YOUR HONOR, WE HAVE TESTIMONY THEY CITE TO FROM

14   MR. ALMEROTH WHERE HE WAS ASKED, DON'T LOOK AT THE PATENT

15   SPECIFICATION, WHAT IS A GENERIC COMMAND.  AND AGAIN, THAT'S

16   NOT THE RIGHT TYPE OF ANALYSIS UNDER PHILLIPS, UNDER NAUTILUS,

17   UNDER ALL OF THESE INDEFINITENESS CASES WE ARE LOOKING AT ONCE

18   THE PERSON OF ORDINARY SKILL IN THE ART HAS HAD A CHANCE TO

19   REVIEW THE SPECIFICATION IN TOTALITY AND LOOK AT THE EXAMPLES

20   THAT ARE GIVEN, CAN THAT PERSON APPLY THE TERM, AND I THINK

21   IT'S CLEAR THAT THEY CAN.

22        AND WE HAVE THOSE CASES, THE ETHICON ENDO-SURGERY CASE

23   ACTUALLY I THINK IS HIGHLY INFORMATIVE.  I THINK THAT'S THE

24   FEDERAL CIRCUIT CASE THAT CAME AFTER NAUTILUS WHERE THE FEDERAL

25   CIRCUIT APPLIED NAUTILUS AND YET FOUND THE CLAIM TO BE

```
1    INDEFINITE BASED ON THE INTRINSIC AS WELL AS THE EXTRINSIC

2    EVIDENCE THAT WAS GIVEN.

3         SO UNLESS YOUR HONOR HAS ANY FURTHER QUESTIONS ON THE

4    INDEFINITENESS ARGUMENT --

5              THE COURT:  NO.

6              MR. PAK:  SO GOING ON TO PAGE 32.  WE HAVE ARISTA'S

7    ALTERNATIVE CONSTRUCTION.  AND THEY SAY THAT WE SHOULD LOOK AT

8    THE SAME SECTION WHICH IS COLUMN 3, LINE 30 TO 35.

9         SO I THINK THAT'S AN IMPLICIT CONCESSION BY ARISTA THAT

10   THIS IS HIGHLY RELEVANT IN TERMS OF THE RECORD.  AND WHAT'S

11   HAPPENING IS ARISTA MODIFIES THAT SENTENCE TO TAKE OUT THE

12   ACTUAL LANGUAGE WHICH WE DON'T THINK MAKES SENSE HERE BECAUSE

13   WE HAVE THE NEW SYNTAX PROVIDES A GENERIC INSTRUCTION SET THAT

14   PROVIDES AN ABSTRACTION OF THE TOOL SPECIFIC COMMAND FORMATS

15   AND SYNTAX.

16        AND WHAT THEY DO THEN IS THEY HAVE THIS REQUIREMENT THAT

17   THE COMMAND FORMATS AND SYNTAXES OF MORE THAN ONE MANAGEMENT

18   PROGRAM IS A REQUIREMENT.

19        AND IF YOU STEP BACK AND THINK ABOUT THIS, YOU COULD HAVE

20   SYSTEMS FOR EXAMPLE, IN THE EXAMPLES THAT ARE GIVEN, WATCH.

21   WATCH IS A GENERIC COMMAND BECAUSE IT'S NOT DEPENDENT ON THE

22   COMMAND SYNTAX OF ANY PARTICULAR TOOL.

23        AT THE SAME TIME, THERE'S NO REQUIREMENT THAT IN ORDER TO

24   VICTIM A GENERIC COMMAND YOU MUST HAVE MORE THAN ONE TOOL.  AND

25   THAT'S WHAT ARISTA'S CONSTRUCTION APPEARS TO REQUIRE.
```

1    YOU COULD HAVE A SYSTEM IN WHICH MANY OF THE TOOLS WOULD

2    HAVE CORRESPONDING COMMANDS THAT CORRESPOND TO A GENERIC

3    COMMAND SYNTAX.  BUT THERE COULD BE A SITUATION WHERE YOU HAVE

4    ONLY ONE TOOL THAT HAPPENS TO HAVE A RELATIVE FUNCTION THAT

5    CORRESPONDS TO ONE OF THE GENERIC COMMANDS.

6    THERE'S NOTHING IN THE CLAIM LANGUAGE, THERE'S NOTHING IN

7    THE INTRINSIC RECORD THAT REQUIRES YOU TO HAVE MORE THAN ONE

8    TOOL IN THE SYSTEM IN ORDER FOR SOMETHING TO QUALIFY AS A

9    GENERIC COMMAND SET.

10    AND JUST THINKING PRACTICALLY, WE CAN START WITH A GENERIC

11    COMMAND SYNTAX, AND LET'S SAY WE START WITH THREE TOOLS, THOSE

12    THREE TOOLS MAP ON TO THOSE PARTICULAR GENERIC COMMANDS.

13    UNDER ARISTA'S CONSTRUCTION, IS IF FOR SOME REASON THE USER

14    DECIDED TO DE INSTALL OR UNINSTALL TWO OF THOSE COMMANDS, ALL

15    THE SUDDEN THAT GENERIC COMMAND IS NO LONGER A GENERIC COMMAND.

16    THAT DOESN'T MAKE SENSE.

17    SO I THINK THE QUESTION HERE ISN'T ABOUT HOW MANY TOOLS DO

18    YOU HAVE LOADED ON TO THE SYSTEM OR NOT.  THE QUESTION IS, IS

19    THE GENERIC COMMAND PROVIDING AN ABSTRACTION THAT ALLOWS THE

20    SYSTEM TO WORK WITH DIFFERENT TYPES OF TOOLS, DIFFERENT TYPES

21    OF MANAGEMENT PROGRAMS.

22    AND WE THINK THE VERBATIM DEFINITION FROM THE PATENT

23    SPECIFICATION MAKE THAT IS ABSOLUTELY CLEAR.  AND THE -- SO

24    JUST TO CLOSE OUT ON THE GENERIC COMMAND, THE SET DEFINITION

25    THAT'S GIVEN IN THE PATENT IS VERY CLEAR, SET IS A WELL KNOWN

1    CONCEPT IN ENGINEERING, IT MEANS ONE OR MORE RELATED THINGS.

2    THERE'S NO REASON WHY WE NEED TO DEVIATE FROM THE PATENT

3    SPECIFICATION DEFINITION ON THAT.  WE DON'T THINK THE WORD SET

4    IS A BASIS TO DEVIATE FROM THE REST OF THE DEFINITION THAT'S

5    GIVEN IN THE INTRINSIC RECORD AND SOMEHOW REQUIRE MULTIPLE

6    PROGRAMS TO BE LOADED ON TO A SYSTEM BEFORE YOU HAVE A GENERIC

7    COMMAND.

8         DOES YOUR HONOR HAVE ANY QUESTIONS ON THIS?

9              THE COURT:  NO FURTHER QUESTIONS.

10             MR. PAK:  OKAY.

11             THE COURT:  MR. SILBERT.

12             MR. SILBERT:  MAY I PROCEED?

13             THE COURT:  YES, PLEASE.

14             MR. SILBERT:  SO MR. PAK SAYS, FIRST HE SAYS IGNORE

15   WHAT THE INVENTOR SAID, IGNORE THE INVENTOR'S TESTIMONY, AND

16   THEN HE SAYS THERE'S NOTHING IN THE RECORD THAT SAYS THAT A

17   PERSON OF SKILL IN THE ART WOULDN'T, WHO IS AN ENGINEER,

18   WOULDN'T UNDERSTAND THIS COMMAND, IN TERM GENERIC COMMAND.

19        WELL, FIRST OF ALL, THAT'S NOT EVEN TRUE EVEN IF YOU IGNORE

20   THE INVENTOR'S TESTIMONY.  BUT THERE IS NO RULE, I MEAN,

21   MR. PAK, WHATEVER HAPPENED IN ORAL ARGUMENT THAT HE WAS IN

22   LEAVING ASIDE, THERE IS NO RULE THAT SAYS THE COURT IS NEVER

23   SUPPOSED TO CONSIDER THE TESTIMONY OF THE INVENTOR OF THE

24   PATENT.

25        AND AT A MINIMUM, THE INVENTOR IS A PERSON AT LEAST OF

1    ORDINARY SKILL IN THE ART WITH RESPECT TO HIS OWN PATENT,

2    PROBABLY EXTRAORDINARY SKILL IN THE ART WITH RESPECT TO HIS OWN

3    PATENT.  AND CERTAINLY WHERE MR. -- AND MR. PAK AGREES, I MEAN,

4    THE QUESTION IS DOES A PERSON OF SKILL IN THE ART WHO IS AN

5    ENGINEER LOOKING AT THIS TERM KNOW WITH REASONABLE CERTAINTY

6    WHAT'S IN AND WHAT'S OUT, WHAT DOES IT INCLUDE.

7        LET'S LOOK AT HIS TESTIMONY.  AGAIN, WHEELER, THIS IS THE

8    TESTIMONY OF MR. WHEELER.  AND HE'S ASKED, OKAY, DID THE IOS

9    CLI HAVE A -- DID IT USE GENERIC COMMANDS TO ADMINISTER THESE

10   OAM TOOLS?

11       HE ANSWERS, WHAT DO YOU MEAN BY GENERIC COMMANDS?

12       AND THEN HE'S ASKED, YOU'RE FAMILIAR WITH THE TERM GENERIC

13   COMMANDS IN YOUR PATENT, THE '526 PATENT?

14       HE SAYS, YEAH, THAT -- THAT IS LANGUAGE THAT IS NOTHING I

15   USE AS AN ENGINEER.

16       SO AS THE INVENTOR, AND CERTAINLY AS A PERSON OF ORDINARY

17   OR EXTRAORDINARY SKILL IN THE ART, HE'S SAYING THAT'S NOT A

18   TERM THAT I USE AS AN ENGINEER, SO I DON'T REALLY UNDERSTAND

19   WHAT YOU MEAN.

20       AGAIN, HE'S READING ON, OKAY, YOU'RE FAMILIAR WITH THE TERM

21   GENERIC COMMANDS FROM YOUR '526 PATENT?

22       HE ANSWERS, I'VE READ THAT PHRASE IN THERE.  I DON'T KNOW

23   WHAT IT -- PARTICULAR REFERRING TO.

24       AGAIN, HE'S ASKED LATER, NOW HE'S BEING SHOWN THE PATENT,

25   THE SAME TABLE THAT HAS THE NEW SYNTAX IN THE PATENT.

1       WOULD YOU SAY THAT THE NEW SYNTAX LISTED IN THE SECOND

2    COLUMN OF APPENDIX A ARE GENERIC COMMANDS?

3           "ANSWER:  I -- THAT LANGUAGE TO ME -- GENERIC COMMAND

4    VERSUS COMMAND WOULD MEAN THE SAME THING.  I DON'T SEE THE

5    DIFFERENTIATION BETWEEN THE TWO.

6           "QUESTION:  CAN YOU EXPLAIN WHY YOU SEE THE -- "

7        BASICALLY IT'S THE SAME THING OVER AND OVER

8           "ANSWER:  I DON'T SEE THE DIFFERENCE BETWEEN A

9    GENERIC COMMAND AND A SPECIFIC COMMAND.  THEY'RE STILL BOTH

10   COMMANDS."

11       SO I THINK IT WOULD BE A MISTAKE CERTAINLY FOR YOUR HONOR

12   SIMPLY TO IGNORE THIS TESTIMONY.  IT'S TESTIMONY IN THE RECORD

13   OF THE INVENTOR OF THE PATENT, CERTAINLY A PERSON OF SKILL IN

14   THE ART, AND HE SAYS AS AN ENGINEER, THIS IS NOT A TERM THAT I

15   USE AND I DON'T KNOW WHAT IT MEANS.

16           THE COURT:  WHAT'S THE CONSEQUENCE IF I WERE TO FIND

17   THIS TERM INDEFINITE?

18           MR. SILBERT:  THE ENTIRE PATENT WOULD BE INVALID.

19   IT'S IN EVERY SINGLE CLAIM.

20       AND WE CAN TALK ABOUT, SHOULD YOUR HONOR DECIDE THIS NOW OR

21   LATER QUESTION, CERTAINLY.  BUT I WILL SAY I THINK THERE'S

22   GOING TO BE A LOT GOING ON COME SUMMARY JUDGEMENT ALREADY, AND

23   IF THIS -- THIS IS CERTAINLY A TERM WHERE IF YOUR HONOR, IT'S

24   FULLY BRIEFED, IT'S GOING TO BE FULLY ARGUED.

25       IF YOUR HONOR DECIDES THIS IS TRUE, I DON'T NEED TO DECIDE

```
 1        ANYTHING ELSE ABOUT THE '526 PATENT.  IF YOU DECIDE THIS TERM
 2        IS INDEFINITE, THE RESULT IS THAT EVERY CLAIM IN THIS PATENT IS
 3        INVALID.
 4            SO I STARTED BY SAYING EVEN IF YOUR HONOR WERE TO IGNORE
 5        THIS TESTIMONY, THERE STILL WOULD BE EVIDENCE IN THE RECORD
 6        THAT A PERSON OF ORDINARY SKILL IN THE ART DOESN'T REASONABLY
 7        UNDERSTAND WHAT THIS TERM ENCOMPASSES.  AND THAT TESTIMONY
 8        COMES FROM DR. ALMEROTH IN HIS DEPOSITION.
 9            SO AGAIN, JUST TO STEP THROUGH THIS, IN THE CONSTRUCTION
10        THAT CISCO PROPOSES AND THE EXPLANATION IN THE SPECIFICATION
11        THAT THEY CITE TO THERE'S THIS TERM ABSTRACTION.  AND WHEN YOU
12        ASKED MR. PAK PRESUMABLY REFERRING TO THE HALLIBURTON GEL CASE
13        YOU ASKED, DOES THIS EXPLAIN WHAT THIS TERM DOES OR WHAT IT IS?
14            HE SAID, WELL, IT'S BOTH.  IT IS AN ABSTRACTION, AND WHAT
15        IT DOES IS IT ALLOWS SOMEBODY TO ISSUE COMMANDS BASED ON THE
16        RELATIVE FUNCTIONS AS OPPOSED TO THE SPECIFIC SYNTAX.
17            OKAY.  WELL, SO LET'S LOOK AT THIS WORD ABSTRACTION.  WHAT
18        DOES THAT MEAN?
19                THE COURT:  WELL, IT OCCURRED TO ME IN READING YOUR
20        BRIEFING THAT DOES THAT TERM NEED TO BE CONSTRUED?
21            I THOUGHT ACTUALLY IT PROBABLY HAS A PRETTY CLEAR MEANING
22        IN THE ART.  BUT WE CAN'T GET TO TRIAL AND HAVE THE EXPERT'S
23        GIVING DIFFERENT MEANINGS.  U2 MICRO TELLS US WE CAN'T DO THAT.
24        BUT YOU DIDN'T ASK ME TO CONSTRUE IT.  SO IT'S A CONCERN.
25                MR. SILBERT:  IT IS A CONCERN.  AND IT'S A BIGGER
```

1    CONCERN, I THINK IF YOUR HONOR LOOKS AT WHAT IS IN THE RECORD,

2    IT MAY HAVE A CLEAR MEANING IN THE ART.

3        AND IN FACT, DR. ALMEROTH IN HIS DECLARATION HE SAYS, THIS

4    TERM ABSTRACTION HAS A MEANING TO PEOPLE OF SKILL IN THE ART IN

5    COMPUTER SCIENCE.  HE SAYS, AN ABSTRACTION IS A CONCEPT THAT

6    ALLOWS SUPPRESSING THE SPECIFIC DETAILS OF HOW SOMETHING IS

7    IMPLEMENTED, E.G., LIKE A BLACK BOX, SO THE USER NEED ONLY KNOW

8    ABOUT THE INPUT AND OUTPUT OF THE BLACK BOX.

9        THAT'S WHAT HE SAYS IS THE MEANING IN COMPUTER SCIENCE.

10   OKAY.  BUT THEN IN HIS DEPOSITION HE'S ASKED:

11           "QUESTION:  SO FOR A COMMAND TO BE AN ABSTRACTION OF

12   A TOOL'S SPECIFIC COMMAND, DOES IT NEED TO SUPPRESS SPECIFIC

13   DETAILS ABOUT HOW THE TOOL'S SPECIFIC COMMAND IS IMPLEMENTED?"

14        IN OTHER WORDS, THAT THING YOU SAID IN YOUR DECLARATION

15   IS THAT THE TEST TO APPLY WHETHER WE KNOW THIS IS OR IS NOT AN

16   ABSTRACTION?  HIS ANSWER IS

17           "ANSWER:  WELL, THAT WOULD BE ONE EXAMPLE OF HOW YOU

18   CAN PROVIDE AN ABSTRACTION."

19        SO ESSENTIALLY HE'S SAYING IT DOESN'T HAVE TO DO THAT, IT

20   COULD, BUT IT DOESN'T HAVE TO DO THAT.

21        SO I THINK NOW WE'RE BACK TO BEING IN A VERY MURKY WORLD

22   ABOUT WHAT AN ABSTRACTION EVEN MEANS, AND IT'S ABOUT --

23           THE COURT:  EXCEPT YOU USE THE WORD AS WELL IN YOUR

24   CONSTRUCTION.

25           MR. SILBERT:  WE DO.

1      AND OUR ALTERNATIVE CONSTRUCTION, WE SAY IT'S INDEFINITE

2  BUT IF IT'S NOT INDEFINITE YOU SHOULD CONSTRUE IT THIS WAY.

3  OUR ALTERNATIVE CONSTRUCTION IS QUITE SIMILAR TO CISCO'S, AND I

4  WILL TALK ABOUT THE COUPLE OF DIFFERENCES.  BUT WHAT WE ARE

5  ESSENTIALLY SAYING IS WE DON'T THINK THIS TERM IS DEFINITE.  WE

6  DON'T KNOW WHAT IT MEANS.  IF YOU ARE GOING TO CONSTRUE IT,

7  THIS IS ABOUT THE ONLY CONSTRUCTION YOU COULD GIVE IT BECAUSE

8  THIS IS ABOUT THE ONE AND ONLY THING THE PATENT SAYS ABOUT IT.

9  BUT WE DON'T THINK IT PASSES MUSTER UNDER NAUTILUS AND OTHER

10  CASES.

11      BUT JUST ON THIS IDEA OF AN ABSTRACTION, SO FIRST

12  DR. ALMEROTH SAYS, ABSTRACTION HAS A MEANING IN COMPUTER

13  SCIENCE, IT MEANS SUPPRESSING THE DETAILS.  THEN HE'S ASKED,

14  OKAY, SO DOES THAT MEAN FOR A GENERIC COMMAND TO BE AN

15  ABSTRACTION, IT MUST SUPPRESS IT IS DETAILS OF HOW IT'S

16  PERFORMED?  HE SAYS NO, IT DOESN'T.  THAT'S ONE WAY YOU COULD

17  DO IT, YOU COULD DO IT OTHER WAYS.

18      IT'S ABOUT TO GET MUCH WORSE BECAUSE THEN HE'S ASKED, WHAT

19  OTHER WAYS COULD YOU PROVIDE AN ABSTRACTION.  HIS ANSWER IS:

20          "ANSWER:  YOU CAN PROVIDE AN ABSTRACTION THAT MAKES A

21  COMMAND MORE UNDERSTANDABLE AND IS MORE UNDERSTANDABLE AS

22  COMPARED TO THE COMMANDS THAT ARE USED WITH A SPECIFIC

23  MANAGEMENT PROGRAM."

24      SO HE'S ESSENTIALLY SAYING IF IT'S MORE UNDERSTANDABLE TO

25  SOMEONE, THEN IT'S AN ABSTRACTION WHICH PRESUMABLY CISCO WOULD

1    SAY MAKES IT A GENERIC COMMAND.  THE PROBLEM, AND LET'S GO BACK

2    TO WHAT NAUTILUS SAYS, WHAT THE CASE LAW SAYS, WHAT MR. PAK

3    SAID WHEN HE WAS STANDING HERE TALKING A FEW MINUTES AGO.  THE

4    TEST HERE IS CAN AN ENGINEER, A PERSON OF SKILL IN THE ART, AN

5    ENGINEER APPLYING ENGINEERING PRINCIPLES, UNDERSTAND WITH

6    REASONABLE CERTAINTY, WHAT'S IN AND WHAT'S OUT.

7         AND SO WHEN YOU HAVE A TEST LIKE IS IT MORE UNDERSTANDABLE,

8    WHICH IS SIMPLY A SUBJECTIVE TEST, THAT UNDER WELL ESTABLISHED

9    PRECEDENT, IS INDEFINITE.

10        AND I WILL SHOW YOUR HONOR SOME EXAMPLES THAT ARE IN OUR

11   BRIEFING.  THE INTERVAL LICENSING CASE FROM 2014 FEDERAL

12   CIRCUIT, CLAIM REQUIRING THAT A DISPLAY PROVIDE A SET OF

13   INSTRUCTIONS "IN AN UNOBTRUSIVE MANNER" IS INDEFINITE.  WHY IS

14   IT INDEFINITE?  BECAUSE THAT'S SUBJECTIVE IN AN UNOBTRUSIVE

15   MANNER.

16        YOU COULD HAVE A CLAIM THAT SAYS, DOESN'T PROTRUDE MORE

17   THAN THREE INCHES, THAT'S SOMETHING AN ENGINEER CAN APPLY.  BUT

18   WHEN YOU START SAYING IN AN UNOBTRUSIVE MANNER, THAT'S A

19   SUBJECTIVE TEST AND THAT KIND OF TEST IS INDEFINITE.

20        SIMILARLY THE DATAMIZE CASE, A CLAIM REQUIRING AN ON SCREEN

21   ELEMENT WITH A "AESTHETICALLY PLEASING LOOK AND FEEL."

22             THE COURT:  HOW IS GENERIC LIKE THAT?

23             MR. SILBERT:  WELL, IT'S LIKE THAT BASED ON THE

24   TESTIMONY OF DR. ALMEROTH BECAUSE WHEN HE'S -- BECAUSE CISCO

25   PROPOSES IN ITS CONSTRUCTION THAT THE COMMAND HAS TO BE AN

```
 1    ABSTRACTION.  WE THEN SAY TO HIM, OKAY, BUT HOW ARE YOU

 2    SUPPOSED TO KNOW WHETHER IT'S AN ABSTRACTION OR NOT?  AND HE

 3    SAYS OH, THERE'S A LOT OF DIFFERENT WAYS, OR AT LEAST THERE'S

 4    MULTIPLE DIFFERENT WAYS.  AND ONE WAY YOU COULD DO IT IS SIMPLY

 5    IF IT'S MORE UNDERSTANDABLE.  IF THE COMMAND IS "MORE

 6    UNDERSTANDABLE", DR. ALMEROTH SAYS THAT WOULD COUNT AS AN

 7    ABSTRACTION.  BUT WHAT WE ARE SAYING IS IF THAT'S THE TEST YOU

 8    ARE SUPPOSED TO APPLY THAT WOULD NOT PASS MUSTER.

 9            THE COURT:  WELL, YOU ARE NOW SAYING THE CONSTRUCTION

10    CREATES THE INDEFINITENESS AND I'M HAVING TROUBLE SAYING THAT

11    THE WORD ABSTRACTION USED IN A PATENT OR USED IN A CONSTRUCTION

12    OF A TERM IN A PATENT MAKES IT INDEFINITE.

13        I THINK -- I'M HAVING TROUBLE WITH THAT.  BECAUSE

14    ABSTRACTION, IT'S NOT JUST SOME WORD THAT GOT IMPORTED INTO

15    THIS PATENT WHEREAS GENERIC COMMAND IS SOMETHING THAT WE DO

16    NEED TO CONSTRUE.

17        BUT I THINK YOU'VE, I MEAN, I THINK YOU'VE KIND OF GONE

18    AROUND THE BEND ON THE ABSTRACTION PART AS WHAT MAKES THIS

19    INDEFINITE.  AND I DON'T SEE IN GENERIC COMMAND ANYTHING LIKE

20    INTERVAL LICENSING OR DATA MYSELF.  I'M JUST NOT SEEING THAT.

21            MR. SILBERT:  OKAY.  WELL, UNDERSTOOD.

22        AND THE ABSTRACTION PART IS THE ONE PIECE OF THE ARGUMENT,

23    BUT IT'S NOT, IT'S BY NO MEANS THE ONLY ARGUMENT.  I WILL SHOW

24    YOU ONE MORE IN A SECOND.  YOU STILL HAVE MR. WHEELER.  HE'S

25    NOT LOOKING AT THE ABSTRACTION LANGUAGE.
```

```
 1              THE COURT:  RIGHT.

 2              MR. SILBERT:  HE'S LOOKING AND SAYING AS AN ENGINEER,

 3      I DON'T KNOW WHAT THAT MEANS.

 4          IT'S A PRACTICAL PROBLEM.  AT THE END OF THE DAY WE NEED TO

 5      HAVE A TEST THAT AN ENGINEER CAN APPLY THAT SAYS IS THIS IN OR

 6      OUT.  IS THIS COMMAND, IF I LOOK AT IT, IS IT A GENERIC COMMAND

 7      OR IS IT NOT.

 8          NOW, AND AGAIN, WE DON'T HAVE THAT.  MR. WHEELER SAYS I

 9      DON'T REALLY KNOW, IT'S NOT A TERM I USE --

10              THE COURT:  MAYBE I'M WRONG IN OVER SIMPLIFYING THIS,

11      SO PLEASE CORRECT ME, BUT THE GENERIC COMMANDS ARE WHAT THE

12      USER IS INTERFACING WITH DIRECTLY.  AND THE WHOLE POINT IS

13      TO -- OF THIS PATENT IS TO RELIEVE THE HUMAN FROM HAVING TO

14      LEARN THE DIFFERENT LANGUAGES; ISN'T THAT CORRECT?

15              MR. SILBERT:  I WOULD SAY THAT'S A FAIR STATEMENT.

16              THE COURT:  OKAY.  SO THE GENERIC COMMAND IS WHAT THE

17      USER INTERFACES WITH.

18          AND SO I'M JUST -- I GUESS IT JUST LOOKS A LOT SIMPLER TO

19      ME THAN WHAT YOU'RE MAKING IT OUT TO BE.  BUT MAYBE BECAUSE THE

20      TERM ITSELF IS ONE THAT A LAYPERSON FEELS COMFORTABLE WITH AND

21      THAT'S THE MOST DANGEROUS PLACE TO BE PROBABLY.

22              MR. SILBERT:  RIGHT.  THESE TERMS, AN UNOBTRUSIVE

23      MANNER, I WOULD BE MUCH MORE COMFORTABLE WITH THAT.

24              THE COURT:  BUT THAT'S COMPLETELY SUBJECTIVE.  AND

25      AESTHETICALLY PLEASING, WE ALWAYS SAY BEAUTY IS IN THE EYE OF
```

1     THE BEHOLDER, SO THAT HAS NO MEANING AT ALL.

2              MR. SILBERT:  RIGHT.  WELL, I THINK IT'S HELPFUL TO

3     LOOK AT AN ACTUAL EXAMPLE FROM THE PATENT.

4              THE COURT:  OKAY.

5              MR. SILBERT:  SO AGAIN, THE NEW SYNTAX IS SUPPOSED TO

6     BE GENERIC COMMANDS.  THE OLD COMMAND LINE SYNTAX IS SUPPOSED

7     TO BE NOT GENERIC COMMANDS.  YOU HAVE WATCH, 323 ENTRIES AND

8     YOU HAVE H323 VIEW AGAIN, THESE ARE THE EXAMPLES IN THE PATENT.

9     SO THEY OUGHT TO BE HOPEFULLY PRETTY CLEAR AND HELPFUL.

10             THE COURT:  SURE.

11             MR. SILBERT:  DR. ALMEROTH IS ASKED, WOULD YOU PLEASE

12    LOOK AT COLUMNS 5 AND 6, THIS IS APPENDIX A OF THE PATENT.  DO

13    YOU UNDERSTAND THAT THE NEW SYNTAX COLUMN IN THIS TABLE IS

14    SUPPOSED TO REPRESENT GENERIC COMMANDS?

15          HE DOESN'T KNOW.  HE CAN'T TELL BY LOOKING AT IT.

16          I'M TRYING TO SEE WHERE IT TALKS ABOUT APPENDIX A, THE

17    SHORT ANSWER IS I DON'T RECALL, CAN YOU SHOW ME SOMEWHERE TO

18    LOOK AT.

19          THE QUESTIONER SAYS, OKAY, WELL THAT'S OKAY.  IF YOU CAN

20    LOOK AT THE APPENDIX, TAKE FOR EXAMPLE ABOUT A QUARTER OF THE

21    WAY DOWN AND HE'S POINTED TO THE SPECIFIC EXAMPLE, WATCH H323

22    ENTRIES.  DO YOU SEE THAT?

23          YES.

24          AND LOOK AT THE OTHER ONE ON THE RIGHT, H323 VIEW, DO YOU

25    SEE THAT?

1        I DO.

2        WHICH ONE OF THOSE, IN YOUR MIND, IS A GENERIC COMMAND?

3        I HAVE TO SEE WHAT THE SPECIFICATION IS DESCRIBING AS TO

4   WHAT THE TABLE IS.

5        THEN HE'S ASKED, CAN YOU TELL THE ANSWER WITHOUT READING

6   THE SPECIFICATION?  I MEAN, IF YOU JUST LOOK AT THOSE TWO

7   COMMANDS, ARE YOU ABLE TO TELL WHICH ONE IS THE GENERIC

8   COMMAND?

9        AND HIS ANSWER IS, WITHOUT CONTEXT, JUST LOOKING AT THE

10  COMMANDS BY THEMSELVES DOESN'T NECESSARILY TELL YOU WHAT'S

11  GENERIC VERSUS NOT.

12          THE COURT:  BUT I DON'T THINK THE TEST HERE IS I KNOW

13  IT WHEN I SEE IT.  I'M SORRY, I'M HAVING A HARD TIME WITH THAT.

14  GENERIC COMMAND DOESN'T MEAN THIS IS REALLY EASY.

15       A USER IS A HIGHLY TRAINED PERSON, EVEN, I MEAN, WE ARE NOT

16  TALKING -- THIS IS NOT SOMEONE AT HOME TRYING TO OPEN UP THEIR

17  PC OR THEIR LAPTOP AND USE THESE COMMANDS.

18       SO I THINK YOU EXPLOIT THE COMMON MEANING OF THE WORD

19  GENERIC AND THEN PUT THE EXPERT IN THE POSITION OF SAYING OKAY,

20  QUICK, CAN YOU TELL WHICH ONE THIS IS.

21       I'M NOT SEEING THAT AT THE TEST HERE.

22          MR. SILBERT:  WELL, HERE'S WHY I DON'T AGREE WITH

23  THAT.

24          THE COURT:  OKAY.

25          MR. SILBERT:  BECAUSE DR. ALMEROTH WHO IS CISCO'S

1    EXPERT IS ALSO A HIGHLY TRAINED PERSON.  AT THE END OF THE DAY,

2    AND THE CONCERN NAUTILUS --

3            THE COURT:  BUT THAT'S MY POINT.  I DON'T SEE

4    ANYTHING IN THIS PATENT THAT SAYS A GENERIC COMMAND IS

5    INSTANTLY RECOGNIZABLE AS JUST THAT.

6        IT IS A FORM OF COMMUNICATING OF A USER UTILIZING THE

7    SYSTEM IN A WAY THAT PROVIDES A SINGLE LANGUAGE SYNTAX, I DON'T

8    KNOW WHAT WORD YOU WANT TO GIVE IT, GROUP OF COMMANDS THAT ARE

9    CONSIDERED GENERIC THAT IN FACT SORRY ABSTRACTIONS OF ALL OF

10   THESE DIFFERENT COMPLICATED COMPUTER LANGUAGES AND THEY DON'T

11   HAVE TO LEARN ANYTHING ELSE.

12       I DON'T THINK IT'S INTENDED TO MEAN IT'S INSTANTLY

13   RECOGNIZABLE BASED ON PLAIN LANGUAGE OR BASED ON A FIFTH GRADE

14   READING LEVEL.  AND THAT'S WHAT I FEEL LIKE YOU ARE TELLING ME.

15           MR. SILBERT:  IF I AM, THEN I'M NOT TELLING YOU

16   CLEARLY AND THAT'S NOT WHAT I'M TRYING TO TELL YOU.  I'M NOT

17   SAYING THERE'S AN INSTANTLY RECOGNIZABLE TEST.  BUT WHAT I AM

18   SAYING IS WHAT THE TEST IS IS THAT AN ENGINEER, IN THIS CASE A

19   PERSON OF SKILL IN THE ART, NEEDS TO KNOW WITH REASONABLE

20   CERTAINTY IS SOMETHING IN OR OUT.

21       AND I THINK A SIGNIFICANT QUESTION IN THINKING ABOUT THIS

22   IS HOW IS THIS DIFFERENT THAN IF THE PATENT HAD JUST SAID

23   COMMAND?  THE PATENT COULD HAVE JUST SAID COMMAND.  I MEAN,

24   THAT WOULD HAVE BEEN A DIFFERENT PATENT.  THAT'S NOT WHAT THEY

25   SAID.  THEY SAID GENERIC COMMAND.  AND THIS IS A FAIRNESS

1    ISSUE, IT GOES TO THE PRICE THAT NEEDS TO BE PAID --

2           THE COURT:  I UNDERSTOOD THAT GENERIC COMMANDS PLIED

3    ACROSS ALL OF THE DIFFERENT, AND I'M JUST TRYING TO STAY IN THE

4    LANGUAGE, ALL OF THE DIFFERENT SPECIFIC SYNTAXES OF THE

5    DIFFERENT TOOLS.

6        AND SO IT TOO IS ITS OWN MADE UP LANGUAGE.  BUT IT'S THE

7    WAY IN WHICH IT OPERATES WHEN WE GET INTO THE COMMAND PARSER

8    TREE AND HOW IT'S USED.

9        SO I GUESS I'M JUST KIND OF STUCK ON THAT.  AND AGAIN, I

10   APPRECIATE, SO I LIKE TO PUT IT OUT THERE THE WAY I'M

11   UNDERSTANDING IT SO YOU CAN TALK ME OUT OF IT.  I DON'T WANT

12   YOU TO FEEL LIKE YOU ARE ARGUING WITH ME, BUT I NEED YOU TO

13   TEST WHAT I'M SAYING.

14          MR. SILBERT:  YES.  I APPRECIATE IT, AND PLEASE

15   ALWAYS DO THAT.

16       BUT THE -- MR. PAK JUST TOLD YOU THAT YOU COULD HAVE A

17   GENERIC COMMAND WITH ONLY ONE TOOL.

18          THE COURT:  UH-HUH.

19          MR. SILBERT:  AND I THINK THE WAY YOUR HONOR IS

20   EXPLAINING IT'S A FUNCTIONAL UNDERSTANDING, AND I THINK A

21   CORRECT FUNCTIONAL UNDERSTANDING OF THE PATENT, BUT IT'S NOT --

22   AS FAR AS IT GOES.  BUT IT DOESN'T GET AT THE IDEA OF A GENERIC

23   COMMAND VERSUS JUST A COMMAND.

24          THE COURT:  SO ANOTHER THING THAT MR. PAK ARGUES IN

25   HIS PAPERS IS THAT IT SHOULDN'T HAVE TO APPLY TO MORE THAN ONE

```
 1    TOOL BECAUSE YOU MIGHT BUILD YOUR SYSTEM OVER TIME.  AND YOU

 2    SHOULDN'T BE, THE PATENT SHOULDN'T HAVE TO WORK ONLY AFTER YOU

 3    HAVE THE SECOND AND FURTHER.  IT DOESN'T SAY PLURALITY OF TOOLS

 4    HERE.

 5              MR. SILBERT:  IT DOES, ACTUALLY.

 6              THE COURT:  DOES IT?

 7              MR. SILBERT:  IT DOES.

 8              THE COURT:  WELL, I DIDN'T RECALL THAT EITHER.

 9              MR. SILBERT:  YEAH.

10         HERE'S MY POINT, AN ENGINEER HAS -- THE POINT IS YOU NEED

11    TO KNOW WITH REASONABLE CERTAINTY AS AN ENGINEER READING A

12    PATENT, IF I DON'T DO THIS, I'M OKAY.  IF IT I READ THIS AND I

13    WANT TO NOT PRACTICE WHAT IT DESCRIBES, I UNDERSTAND --

14              THE COURT:  SURE, YEAH.

15              MR. SILBERT:  THAT I CAN CHANGE THIS AND I'M GOING TO

16    BE FINE.

17         SO WHEN YOU HAVE A TERM LIKE GENERIC COMMAND, YOU NEED TO

18    KNOW WHAT'S A GENERIC COMMAND VERSUS SIMPLY WHAT'S JUST A

19    COMMAND.

20         IF I HAVE JUST A COMMAND THAT'S NOT A GENERIC COMMAND IN

21    THE SYSTEM, THEN I'M OKAY.  THE PROBLEM IS YOU ARE NOT ABLE TO

22    TELL THAT MR. WHEELER, THE INVENTOR, HE'S NOT ABLE TO TELL,

23    DR. ALMEROTH, IT'S NOT AN INSTANTLY KNOW IT WHEN YOU SEE IT

24    TEST, BUT IF HE SAYS, WELL, IF I LOOK AT THESE TWO COMMANDS, I

25    CAN'T TELL WHICH IS GENERIC AND WHICH IS NOT.  HOW IS SOMEBODY,
```

1    AN ENGINEER WHO WANTS TO DESIGN A SYSTEM, HOW IS THAT ENGINEER

2    WITH ANY REASONABLE CERTAINTY SUPPOSED TO LOOK AT TWO COMMANDS

3    AND SAY I KNOW I CAN USE THIS ONE BUT I CAN'T USE THAT ONE.

4              THE COURT:  OKAY.

5              MR. SILBERT:  I THINK YOUR HONOR UNDERSTANDS OUR

6    POSITION.

7              THE COURT:  I DO, I DO.

8              MR. SILBERT:  JUST TO ADDRESS THE LAST POINT MR. PAK

9    RAISED ABOUT THE VARIATION IN LANGUAGE, WE THINK THAT THE

10   VARIATION IS HELPFUL AND CLEAR.

11        AND THE REASON THAT WE MADE IT, IT'S RELATIVELY MINOR, BUT

12   WAS EXACTLY THE ISSUE THAT YOUR HONOR RAISED WHICH WAS THAT

13   THAT STATEMENT IN THE SPECIFICATION IS TALKING, IS DESCRIBING A

14   GENERIC COMMAND SET THAT PROVIDES CERTAIN THINGS.

15        WE'VE TRIED TO ADAPT THAT IN THE A PRETTY SIMPLE WAY TO SAY

16   WHAT WOULD THEN BE THE GENERIC DEFINITION OF A COMMAND.

17             THE COURT:  YOU LOST ME ON THAT OR I JUST DISAGREE

18   WITH YOU.

19             MR. SILBERT:  THERE ARE MINOR WORD CHANGES --

20             THE COURT:  SURE.

21             MR. SILBERT:  -- IN OUR ALTERNATE CONSTRUCTION VERSUS

22   CISCO'S, CISCO TOOK ITS CONSTRUCTION DIRECTLY FROM THE

23   SPECIFICATION.

24             THE COURT:  AND I'M LOOKING RIGHT AT IT.

25             MR. SILBERT:  YEAH.  BUT THE THING THAT IT TOOK THE

```
 1     SPECIFICATION, IT'S DESCRIBING SOMETHING CALLED A GENERIC
 2     INSTRUCTION SET.  AND SO WHAT --
 3             THE COURT:  WHICH IS MADE UP OF A SERIES OF GENERIC
 4     COMMANDS.
 5             MR. SILBERT:  IT WOULD BE A COLLECTION OF COMMANDS.
 6        SO THE SET PROVIDES THINGS, ET CETERA.  WE ARE SAYING IF
 7     YOU ARE TO DEFINE AN INDIVIDUAL COMMAND, THERE WOULD BE SLIGHT
 8     CHANGES, BUT THAT'S IT.
 9             THE COURT:  OKAY.  WELL, THE ISSUE OF INDEFINITENESS
10     OBVIOUSLY HAS BEEN, BECAUSE IT CAN INVALIDATE THE PATENT, IT
11     PROBABLY IS WISE FOR ME TO ADDRESS THAT NOW RATHER THAN SUMMARY
12     JUDGEMENT BECAUSE I WOULD BE SO OVERWHELMED WITH SUMMARY
13     JUDGEMENT ISSUES.
14        ALL RIGHT.  MR. PAK, ARE WE GOING TO GO BACK NOW TO
15     MANAGEMENT?
16             MR. PAK:  YES.  SO YOUR HONOR, IF I COULD JUST
17     BRIEFLY RESPOND TO THE ONE POINT ABOUT THE INVENTOR TESTIMONY.
18             THE COURT:  YEAH.
19             MR. PAK:  MR. WHEELER TESTIFIED AS A FACT WITNESS IN
20     THIS CASE, HE'S A FORMER EMPLOYEE OF CISCO.  HE WAS NOT
21     REQUIRED TO ANALYZE THE PATENT, HE WAS NOT REQUIRED TO EVALUATE
22     ALL OF THE EXAMPLES THAT ARE GIVEN TO CONDUCT A CLAIM
23     CONSTRUCTION EXERCISE.  WE HAVE AN EXPERT FOR DOING THAT.  THEY
24     ARE GOING TO HAVE AN EXPERT FOR DOING THAT.
25        THE ISSUE HERE, I THINK YOUR HONOR HIT IT EXACTLY RIGHT,
```

1    IT'S NOT AN INSTANTLY RECOGNIZABLE TEST, LOOKING AT TWO

2    COMMANDS SAYING IS THIS ONE A GENERIC COMMAND.  IT'S ABOUT

3    LOOKING AT SYSTEMS.  WE ARE LOOKING AT, IS THERE A PARSER, HOW

4    IS THAT PARSER CONFIGURED, DOES THE PARSER RECOGNIZE A

5    PARTICULAR INSTRUCTION SET FROM A TOOL VERSUS ANOTHER TOOL,

6    DOES IT CREATE AN ABSTRACTION IN TERMS OF SOFTWARE CONCEPTS.

7        ALL OF THAT IS ENTIRELY CONSISTENT WITH THE TESTIMONY THAT

8    DR. ALMEROTH GAVE.  IT'S ALSO CONSISTENT WITH THE TESTIMONY

9    MR. WHEELER GAVE.

10       IF YOUR HONOR REMEMBERS IN THE TECHNOLOGY SECTION, WE WENT

11   OVER HIS FOUNDATIONAL TESTIMONY THAT HE CAME UP WITH THE

12   INVENTION.  THAT HE HAD UNIFIED MESSAGES.  HE DIDN'T USE

13   GENERIC COMMAND BECAUSE THAT'S A COINED TERM THAT THE PATENT

14   ATTORNEY USED.

15           THE COURT:  WELL, IT SEEMS TO ME THAT A GENERIC

16   COMMAND IS THAT WHICH THE PARSER RECOGNIZES AS SUCH.

17           MR. PAK:  ABSOLUTELY, YOUR HONOR.

18           THE COURT:  AND WHAT THE USER IS INSTRUCTED TO LEARN

19   AND USE.

20           MR. PAK:  THAT'S RIGHT, YOUR HONOR.  THE ISSUE OF

21   WHETHER IT'S A USER OR NOT, SETTING ASIDE THE SUBJECTIVE

22   ASPECTS.

23           THE COURT:  SOME CAN BE ODD MATED.

24           MR. PAK:  THAT'S CORRECT.  AND WHAT WE ARE REALLY

25   LOOKING AT IS THESE ARE SOFTWARE CONSTRUCTS.  WE CAN LOOK AT

1    THE ALGORITHMS, WE CAN PEEK INSIDE A PARSER.  WE CAN SEE IN THE

2    PARSER, DO YOU HAVE SOME KIND OF MAPPING, DO YOU HAVE A TABLE,

3    DO YOU HAVE A LOOK UP TREE, DO YOU HAVE SOME KIND OF

4    ASSOCIATION THAT SAYS IF I RECOGNIZE THESE PARTICULAR COMMANDS

5    COMING IN, DO I THEN ASSOCIATE THAT PARTICULAR COMMAND WITH

6    OTHER TOOLS.  THAT'S THE TEST.

7         SO THAT'S WHY DR. ALMEROTH IS RIGHTFULLY HAVING DIFFICULTY

8    WHEN HE'S TOLD, DON'T LOOK AT THE SPECIFICATION, TELL ME JUST

9    LOOKING AT THESE COMMANDS WHICH ONE IS THE GENERIC COMMAND AND

10   WHICH ONE ISN'T.

11        YOU CAN'T DO THAT.  AND THAT'S ALSO WHAT MR. WHEELER WAS

12   STRUGGLING WITH AS WELL.

13        WITH THAT, I WILL TURN TO THE MANAGEMENT PROGRAMS,

14   YOUR HONOR.

15             THE COURT:  OKAY.

16             MR. PAK:  SO THERE ARE THREE ISSUES, WE SEE IT, AS

17   THE BRIEFING HAS EVOLVED.

18        THE FIRST ISSUE IS WHETHER THE MANAGEMENT PROGRAMS COMMAND

19   FORMATS MUST BE ENTIRELY DIFFERENT FROM THE GENERIC COMMAND

20   FORMATS.

21        SO IF YOU READ ARISTA'S BRIEFING, AND I THINK WE WILL HEAR

22   THIS AGAIN, THEY SEEM TO BE ARGUING THAT THE MANAGEMENT PROGRAM

23   COMMAND FORMATS MUST BE SO DIFFERENT THAT THERE COULD BE NO

24   OVERLAP IN ANY OF THE COMMANDS OR ANY OF THE COMMAND COMPONENTS

25   BETWEEN THE MANAGEMENT PROGRAM AND WHAT IS SELECTED AS THE

1    GENERIC COMMAND SET IN THE SYSTEM.

2         AND WE WILL EXPLAIN WHY WE THINK THAT'S NONSENSICAL TO HAVE

3    SUCH A RIGOROUS REQUIREMENT THAT YOU CAN NEVER HAVE ANY

4    OVERLAP.

5         NUMBER TWO IS, THEY ARE NOW INTRODUCING THIS NOW WORD,

6    USER-ENTERED COMMANDS.  THEY SEEM TO BE IMPLYING THE ONLY WAY

7    YOU GET A MANAGEMENT PROGRAM IS TO HAVE PROGRAMS THAT ACTUALLY

8    ONLY ACCEPT USER-ENTERED COMMANDS AS OPPOSED TO OTHER WAYS OF

9    SUPERVISING COMMANDS.

10        AND WE WILL TALK ABOUT WHY THAT'S PROBLEMATIC IN A NUMBER

11   OF DIFFERENT WAYS.

12        AND THEN FINALLY --

13             THE COURT:  IT HAS TO DO WITH THE AUTOMATION ISSUE.

14             MR. PAK:  ABSOLUTELY, YOUR HONOR.

15        AND NOT ONLY THE AUTOMATION, BUT WE WILL TALK ABOUT THE

16   SPECIFIC EMBODIMENTS WHERE IF YOU ADOPT THEIR CONSTRUCTION OF

17   MANAGEMENT PROGRAMS, IT WOULD READ OUT ALL OF THE PREFERRED

18   EMBODIMENTS IN THE PATENT ITSELF.

19        SO THIS ISN'T SIMPLY ABOUT FLEXIBILITY, IT'S ABOUT

20   EMBODIMENTS IN THE PATENTS.

21        AND FINALLY, THIS IS AN IMPORTANT POINT, YOUR HONOR, THE

22   WHOLE POINT OF THIS INVENTION IS NOT TO TAKE AN EXISTING

23   COMMAND SET AND TRY TO PARSE IT INTO DIFFERENT PIECES AND SAY

24   THIS IS A GENERIC COMMAND OR THIS IS NOT A GENERIC COMMAND.

25   THIS IS GOING TO TRY TO ENABLE THE SYSTEM TO WORK WITH SEPARATE

```
 1    OR EXTERNAL COMMANDS THAT ARE BEING PROVIDED BY SEPARATE TOOLS.

 2    THAT'S THE WHOLE POINT.  AND THAT'S WHY WE HAVE THESE

 3    ABSTRACTION LAYERS.

 4        SO WE ARE NOT TALKING ABOUT AN INVENTION IF WE ARE ONLY

 5    TALKING ABOUT A SINGLE SYSTEM THAT HAS THE SAME COMMAND SYNTAX

 6    AND WE ARE JUST TRYING TO DIVIDE UP WHAT IS A GENERIC COMMAND,

 7    WHAT'S AN INSTRUCTION SET.

 8        WE NEED SEPARATE SET OF TOOLS AND MANAGEMENT PROGRAMS YOU

 9    ARE TRYING TO WORK WITH IN THE SYSTEM AND THEN YOU NEED THE

10    GENERIC COMMANDS THAT CORRESPOND TO THAT --

11        SORRY, YOUR HONOR.

12            THE COURT:  I THOUGHT I WAS HEARING THINGS.

13            MR. SILBERT:  I THINK HIS TIME IS UP.

14            MR. PAK:  THAT MIGHT BE THE CASE.

15            THE COURT:  WE ARE MUCH FRIENDLIER HERE.

16            MR. PAK:  YES, I APOLOGIZE.

17        SO GOING BACK TO BASIC PRINCIPLES, PHILLIPS AND ALL THE

18    GREAT IMPORTANT CASES, TELL US THAT WHEN WE ARE LOOKING AT

19    CLAIM CONSTRUCTION, WE ARE NOT TRYING TO LIMIT ANYTHING TO

20    SPECIFIC EMBODIMENTS, BUT IT'S ALSO IMPORTANT THAT WE DON'T

21    EXCLUDE EMBODIMENTS.  IT'S VERY RARE TO HAVE A CONSTRUCTION

22    WHERE YOU ARE EXCLUDING THE PREFERRED EMBODIMENTS, AND THAT'S

23    ALSO ANOTHER POINT IN BLACK LETTER PATENT LAW.

24        AND SO HERE WE HAVE TWO IMPORTANT RULINGS FROM THE PHILLIPS

25    CASE, ALTHOUGH THE SPECIFICATION OFTEN DESCRIBES VERY SPECIFIC
```

1    EMBODIMENTS OF THE INVENTION, WE HAVE REPEATEDLY WARNED AGAINST

2    THE CLAIMS BEING LIMITED TO THOSE SPECIFIC EMBODIMENTS.

3         AND THE FACT THAT A PATENT ASSERTS THAT INVENTION ACHIEVES

4    SEVERAL OBJECTIVES DOES NOT REQUIRE THAT EACH OF THE CLAIMS

5    CONSTRUED IS LIMITED TO THOSE SPECIFIC OBJECTIVES.

6         THAT'S THE FIRST GOVERNING PRINCIPLE.

7         SO LET'S LOOK AT THE USER-ENTERED COMMANDS ISSUE WHICH IS

8    ONE OF THE ISSUES IN THE CASE.  THIS IS ON PAGE 39.

9         WHAT ARISTA HAS DONE REPEATEDLY THROUGHOUT THE CLAIM

10   CONSTRUCTION EXERCISES IS THEY HAVE GONE IN, FOUND AN EXAMPLE

11   THEY LIKE FROM THE PATENT AND THEY ARE SAYING BECAUSE THAT ONE

12   EXAMPLE EMBODIMENT WORKS IN THIS WAY, WE NEED TO LIMIT THE

13   CLAIM SCOPE TO BE JUST LIKE WHAT THE EMBODIMENT TEACHES.

14        AND WE KNOW THAT IS NOT THE LAW.  AND SPECIFICALLY THE

15   PATENT ITSELF SAYS, UNLIKE SOME OF THE CASES THAT REQUIRE

16   RESTRICTING THE CLAIM SCOPE TO STATEMENTS ABOUT THE INVENTION,

17   HERE IT'S CLEAR THAT THE PATENTEE SAID, LOOK, I'M GIVING YOU

18   EXAMPLES, I'VE GIVEN YOU GENERIC COMMAND EXAMPLES, I'VE GIVEN

19   YOU EXAMPLES ABOUT HOW TO DO THE PARSE TREE, BUT IT IS TO BE

20   UNDERSTOOD THE INVENTION IS NOT LIMITED TO THOSE SPECIFIC

21   EMBODIMENTS, SO EVEN THE PATENTEE MADE THAT POINT VERY CLEAR.

22        NOW THE OTHER FLIP SIDE OF THAT IS A CLAIM INTERPRETATION

23   THAT INCLUDES A PREFERRED EMBODIMENT FROM THE SCOPE OF THE

24   CLAIM IS RARELY, IF EVER, CORRECT.  THAT'S THE OTHER LINE OF

25   CASES.  AND WE HAVE THAT FROM THE ON-LINE TECHS CASE AND THAT'S

```
 1      ALSO REPEATED IN THE PHILLIPS LINE OF CASES AS WELL.

 2           SO LET ME GO TO THE ISSUE ABOUT THE USER-ENTERED COMMANDS.

 3      AGAIN, WHEN WE FIGURE OUT WHAT IS A GENERIC COMMAND, WHAT IS A

 4      MANAGEMENT PROGRAM COMMAND, WE HAVE TO LOOK AT THE PARSER,

 5      THAT'S THE STARTING POINT ANALYSIS.

 6           SO FIGURE 1 OF THE PATENT SHOWS YOU ON SLIDE 41, THIS IS

 7      THE PREFERRED EMBODIMENT OF THE INVENTION.  AND HERE WE HAVE A

 8      PARSER 14, THAT ACCEPTS THE GENERIC COMMAND INSTRUCTIONS COMING

 9      IN.

10           AND IF YOUR HONOR RECALLS, THERE'S A SET OF TRANSLATORS.

11      THOSE TRANSLATORS, YOUR HONOR, ARE SOFTWARE PROGRAMS, THEY ARE

12      NOT HUMAN BEINGS.

13                THE COURT:  RIGHT.

14                MR. PAK:  SO IN THIS ARCHITECTURE, YOU HAVE A PARSER

15      THAT TRANSLATES, THAT PARSES THE GENERIC COMMANDS.  AND ONE OF

16      THE THINGS IT DOES IS IT TRANSLATES THAT INTO INPUTS INTO

17      TRANSLATORS.

18                THE COURT:  12 IS THE GENERIC COMMAND.

19                MR. PAK:  THAT'S RIGHT, YOUR HONOR.

20           SO 12 WOULD BE THE GENERIC COMMAND INPUT GOING INTO THE

21      PARSER 14.  THEN YOU HAVE A SET OF TRANSMITTERS WHICH ARE

22      PROGRAMS, AND DO YOU SEE THOSE ARROWS GOING, YOUR HONOR, TO 18

23      A, 18B, 18C, 18D?

24                THE COURT:  YES.

25                MR. PAK:  THOSE ARE THE MANAGEMENT PROGRAMS.
```

1    SO IN THE EMBODIMENT OF THE PATENT, THE THINGS THAT ISSUE

2    THE MANAGEMENT PROGRAM COMMANDS ARE SOFTWARE PROGRAMS.  WHAT

3    DOES THAT MEAN?  THAT MEANS THAT UNDER THEIR CONSTRUCTION,

4    THINGS THAT WERE MANAGEMENT PROGRAMS WOULD NO LONGER BE

5    MANAGEMENT PROGRAMS.  WHY?  BECAUSE YOU ARE USING THE INVENTION

6    IN WHICH THE TRANSLATORS ARE NOW ISSUING THE COMMANDS.  AND

7    THAT MAKES PERFECT SENSE, YOUR HONOR, BECAUSE AS YOUR HONOR

8    SAID, IT'S A BLACK BOX, THE USER SHOULDN'T HAVE TO CARE ABOUT

9    THE SPECIFIC PROGRAMS AND THE SPECIFIC COMMAND SYNTAX OF A

10   PROGRAM.

11       SO IF YOU ACTUALLY USE THE INVENTION THE MANAGEMENT

12   PROGRAMS WILL BE CONTROLLED AUTOMATICALLY BY THE TRANSLATORS

13   WHICH ARE SOFTWARE PROGRAMS.

14           THE COURT:  WHICH ARE ACTIVATED BY THE PARSER.

15           MR. PAK:  THAT'S RIGHT, YOUR HONOR.

16       SO THIS NOTION OF READING IN USER ENTERED LIMITATION INTO

17   COMMANDS AND AS PART OF THE MANAGEMENT PROGRAM DEFINITION WOULD

18   MEAN FIGURE 1 IS OUT.  UNDER ARISTA'S DEFINITION, 18A, 18B, 18C

19   AND 18DWOULD NO LONGER BE MANAGEMENT PROGRAMS.  WHY?  BECAUSE

20   THE COMMANDS THAT ARE BEING INPUTTED INTO EACH OF THOSE

21   MANAGEMENT PROGRAMS ARE GENERATED BY A SOFTWARE TOOL, NAMELY

22   THE TRANSLATORS, RATHER THAN THE USER.

23       THAT MAKES NO SENSE.  MOREOVER, YOUR HONOR, LET ME JUST

24   PAUSE YOU THERE AND SEE IF YOU HAVE ANY FURTHER QUESTIONS ON

25   THAT PARTICULAR ARGUMENT.

```
1                THE COURT:  NO.

2                MR. PAK:  AND THEN ON SLIDE 42, YOUR HONOR, COLUMN 21

3      TO 27 OF THE '526 PATENT SPECIFICALLY CALLS OUT SCRIPTS, AND

4      SAYS THAT ACCORDING TO THE DISCLOSED EMBODIMENT, THE PARSER AND

5      THE TRANSLATORS PROVIDE A UNIFIED ADMINISTRATION AND DIAGNOSTIC

6      TOOL WHICH INCORPORATES THE FUNCTIONALITY OF ALL EXTERNAL

7      ADMINISTRATIVE EXECUTABLE BINARY FILES, RTM PROGRAMS, AGENT

8      MANIPULATION SCRIPTS, AND VARIOUS REQUESTED SNAPSHOT QUERIES.

9                SO THE OTHER THING THAT THIS PATENT MAKES CLEAR IS THAT YOU

10     COULD HAVE SCRIPTS, AND BE COMPATIBLE WITH THE INVENTION.

11               AS YOUR HONOR REMEMBERS FROM THE TECHNOLOGY TUTORIAL,

12     SCRIPTS ARE THINGS THAT WOULD NORMALLY BE ENTERED BY THE USER,

13     BUT YOU ARE NOW AUTOMATING THAT PROCESS.  SO INSTEAD OF THE

14     USER TYPING IN THE COMMANDS, YOU HAVE SCRIPTS THAT CAPTURE

15     THOSE COMMANDS IN A PROGRAM FORMAT, THEN IT'S A SOFTWARE

16     PROGRAM THAT ISSUES THE SCRIPTS.

17               SO BOTH IN LOOKING AT THE DISCLOSED EMBODIMENTS AS WELL AS

18     ALTERNATIVE EMBODIMENTS OF THE PATENT, THERE'S NO BASIS HERE TO

19     LIMIT MANAGEMENT PROGRAM TO JUST ACCEPTING USER ENTERED

20     COMMANDS.  TO DO OTHERWISE, WE BELIEVE WOULD BE CONTRARY TO ALL

21     THE PRINCIPLES OF CLAIM CONSTRUCTION.

22               AND WE JUST ILLUSTRATE THAT, YOUR HONOR, IN SLIDE 43.

23               FOR EXAMPLE, ONE OF THE MANAGEMENT PROGRAMS WAS APP VIEW

24     THAT WE TALKED ABOUT IN THE TECHNOLOGY TUTORIAL.  IT'S CLEAR

25     THAT REGARDLESS OF HOW THE USER ENTERS THE APP VIEW COMMAND OR
```

1    WHETHER ON THE DONE THROUGH A LAPTOP THAT HOLDS THE SCRIPT.

2    APP VIEW IS STILL A MANAGEMENT PROGRAM.  IT DOESN'T MATTER THAT

3    APP VIEW COMMAND WAS ENTERED BY A USER OR WAS AUTOMATED BY AN

4    ENTRY BY A SOFTWARE ENGINEER.

5        THE SECOND ISSUE, YOUR HONOR, IS THIS ISSUE ABOUT OVERLAP.

6    SO ARISTA'S POSITION, YOUR HONOR, IS THAT THERE CAN BE NO

7    OVERLAP BETWEEN WHAT'S IDENTIFIED AS A MANAGEMENT PROGRAM

8    COMMAND SYNTAX AND WHAT'S IDENTIFIED AS A GENERIC COMMAND

9    SYNTAX.

10       BUT AGAIN, THAT MAKES NO SENSE.  WHY?  BECAUSE IF

11   YOUR HONOR REMEMBERS THE WHOLE PURPOSE OF THE INVENTION IS TO

12   MAKE THE JOB EASIER FOR THE USER.

13       SO WE ARE GOING TO TRY TO START.  IF YOU WERE TO ACTUALLY

14   PRACTICALLY IMPLEMENT THE INVENTION, ONE OF THE WAYS YOU COULD

15   DO THAT IS BY STARTING WITH THE COMMANDS THAT THE USER IS

16   FAMILIAR WITH.

17       WHY WOULD THE USER BE FAMILIAR WITH THOSE COMMANDS?  IT'S

18   BECAUSE THEY ARE PROBABLY EMBODYING SOME MANAGEMENT PROGRAM

19   THAT THE USER USES.

20       SO FOR EXAMPLE, THE SHOW COMMAND COULD BE A COMMAND IN

21   WHICH AN EXISTING MANAGEMENT PROGRAM USES THAT COMMAND.  SO A

22   USER WOULD BE FAMILIAR WITH THE SHOW COMMAND.

23       SO IF YOU WERE TO IMPLEMENT THE PARSER OF THE CLAIMED

24   INVENTION, YOU MAY CHOOSE I'M GOING TO USE THE SHOW COMMAND AS

25   ONE OF MY COMMANDS IN THE GENERIC COMMAND INSTRUCTION SET.  AND

1    I'M GOING TO PROGRAM THE PARSER SO THAT EVERY TIME THAT COMES

2    IN, IT WILL BE RECOGNIZED AS A GENERIC COMMAND.

3        I SEND IT THROUGH A SET OF TRANSLATORS.  ONE TRANSLATOR MAY

4    BE SIMPLY TAKE THAT SHOW COMMAND AND ISSUE IT AS A SHOW COMMAND

5    TO A TOOL THAT RECOGNIZES SHOW COMMAND, MAYBE THAT'S THE

6    ORIGINAL TOOL THAT'S IN THE SYSTEM.

7        THERE'S A NEW TOOL THAT COMES IN.  THAT SECOND TOOL USES

8    THE WORD WATCH.  WELL, NOW INSTEAD OF FORCING THE USER TO LEARN

9    WATCH, I'M GOING TO TAKE THE SHOW COMMAND AND ISSUE IT.

10        THERE'S ALSO A FURTHER PRACTICAL PROBLEM ON SLIDE 45 WHICH

11    IS NOW WHAT HAPPENS IF I HAVE A SHOW COMMAND, SO I HAVE NO

12    OVERLAP, I HAVE SHOW COMMAND, NONE OF MY EXISTING MANAGEMENT

13    PROGRAMS USE SHOW.

14        BUT ALL THE SUDDEN I BUY A THIRD TOOL.  GUESS WHAT, THAT

15    THIRD TOOL HAS A SHOW COMMAND IN IT.  ACCORDING TO THE ARISTA

16    CONSTRUCTION, THAT WILL HAVE TO CHANGE THE GENERIC COMMAND

17    CONSTRUCTION.

18        AND WHAT IS IT DOING NOW?  IT'S CAUSING THE USER TO USE A

19    NEW COMMAND SIMPLY BECAUSE AN EXISTING MANAGEMENT TOOL OR NEW

20    TOOL.  IT MAKES NO SENSE.

21            THE COURT:  THAT IS A GOOD POINT.

22            MR. PAK:  AGAIN, WHAT WE ARE TRYING TO DO WITH CLAIM

23    CONSTRUCTION IS NOT TO IMPOSE NEW RESTRICTIONS THAT ARE NOT

24    THERE.  WE ARE TRYING TO STAY FAIR TO THE INTRINSIC LANGUAGE

25    AND THE CLAIM LANGUAGE HERE WE THINK NONE OF THESE RESTRICTIONS

1     ARE NECESSARY.

2          THEY ARE GOING TO POINT YOUR HONOR WHEN THEY GET UP HERE TO

3     TALK ABOUT INDEPENDENT.  THERE'S TALK THAT THE GENERIC COMMAND

4     SET IS INDEPENDENT FROM THE MANAGEMENT PROGRAMS.  AND WE THINK

5     IN THE CONTEXT OF THESE PARTICULAR DESCRIPTIONS IT'S CLEAR WHAT

6     THAT MEANS.  THAT MEANS IT DOESN'T HAVE TO DEPEND FROM THE

7     MANAGEMENT PROGRAMS.

8          IT MEANS IT HAS THE FLEXIBILITY.  YOU CAN BE INDEPENDENT.

9     YOU CAN MAKE INDEPENDENT DECISIONS.  BUT THAT DOESN'T MEAN THAT

10    YOU CAN HAVE NO OVERLAP BETWEEN THE GENERIC COMMANDS AND THE

11    MANAGEMENT PROGRAM SYNTAX.

12         IN FACT, APPENDIX A WHICH WE LOOKED AT WHICH IS IN

13    EMBODIMENT, THE RELOAD COMMAND THAT'S USED FOR THE NEW TOOL,

14    THE NEW GENERIC COMMAND VERSUS THE OLD, HAS OVERLAP, RELOAD.

15    SO EVEN IN THE EXAMPLES GIVEN IN THE PATENT, THERE'S NO

16    REQUIREMENT THAT YOU CAN NEVER HAVE ANY OVERLAP.

17         AND THEN FINALLY, WE THINK THIS IS A PRETTY STRAIGHTFORWARD

18    ISSUE.  IF YOU READ THE ENTIRE PATENT, IT'S CLEAR THAT WHEN WE

19    TALK ABOUT MANAGEMENT PROGRAMS, WE ARE NOT TALKING ABOUT SOME

20    MONOLITHIC SYSTEM WITH JUST ONE PROGRAM, WE ARE TALKING ABOUT

21    THINGS THAT ARE BEING ADDED, YOU KNOW, THEY COULD BE EXTERNAL

22    AGENTS, IT COULD BE SEPARATE MANAGEMENT PROGRAMS.

23         THE WHOLE POINT OF THE INVENTION IS I HAVE A NEW TOOL AND

24    I'M GOING TO INTEGRATE THAT NEW TOOL INTO THE SYSTEM, WHAT AM I

25    GOING TO USE, A GENERIC COMMAND SET TO CONTROL THE TOOLS.

```
1          SO I THINK THIS NOTION OF SEPARATENESS AND EXTERNALNESS IS

2     VERY IMPORTANT TO THE INVENTION, AND WE THINK THAT IT'S

3     EMBODIED IN THE CONCEPT OF A MANAGEMENT PROGRAM.  IT DOESN'T

4     SAY MANAGEMENT COMPONENT, IT DOESN'T SAY MANAGEMENT

5     SUBCOMPONENT, IT SAYS MANAGEMENT PROGRAM.

6          FURTHERMORE, IF YOU LOOK AT ARISTA'S OWN CONSTRUCTION ON

7     SLIDE 48, BOTH PARTIES RECOGNIZE THAT THE MANAGEMENT PROGRAMS

8     HAVE THEIR OWN RESPECTIVE COMMAND FORMATS.  THIS IS AN

9     ACKNOWLEDGEMENT BY THEM THAT WE ARE NOT TALKING ABOUT HAVING

10    SUBPARTS OF THE SAME SYSTEM THAT HAS THE SAME COMMAND FORMAT.

11         WE ARE TALKING ABOUT TOOL THAT IS HAVE DIFFERENT COMMAND

12    FORMATS.  THEY ARE SEPARATE, THEY ARE EXTERNAL, THAT'S THE

13    REASON WHY WE HAVE INCLUDED THAT, YOUR HONOR.

14         SO UNLESS YOUR HONOR HAS ANY OTHER QUESTIONS, I WILL MOVE

15    ON.

16              THE COURT:  NO.

17              MR. PAK:  THANK YOU.

18              MR. SILBERT:  I'M HAPPY TO SAY THAT WE HAVE THE SAME

19    THREE ISSUES THAT --

20              MR. PAK:  OH, GOOD.

21              MR. SILBERT:  WE HAVE THEM IN DIFFERENT ORDER, SO I'M

22    GOING TO TRY TO DO THEM IN THE ORDER THAT --

23              THE COURT:  NO, THAT'S FINE.  DO THEM IN THE ORDER

24    THAT YOU'VE GOT THEM TEED UP.

25              MR. SILBERT:  OKAY.  SURE.
```

1       THAT MIGHT BE THE REVERSE ORDER.  SURE.  THAT WORKS BECAUSE

2    THE FIRST ISSUE IS THE LAST ONE THAT MR. PAK ADDRESSED.  MUST

3    MANAGEMENT PROGRAMS BE SEPARATE TOOLS OR EXTERNAL AGENTS?

4       NOW AGAIN, HE STARTED BY SAYING THE CARDINAL SIN OF CLAIM

5    CONSTRUCTION IS YOU ARE NOT SUPPOSED TO TAKE SOMETHING THAT'S

6    DISCLOSED AS AN EMBODIMENT AND THEN MAKE THAT A LIMITATION OF

7    THE CLAIM.  AND THEN THAT'S WHAT HE TRIED TO DO EXACTLY HERE.

8       AND IT'S EVEN A LITTLE BIT MORE THAN THAT BECAUSE THE

9    EMBODIMENT, SO THEIR LIMITATION THAT THEY WANT THE COURT TO

10   POUR INTO THE CLAIM LANGUAGE IS SEPARATE TOOL OR EXTERNAL

11   AGENT, IT MUST BE ONE OF THOSE THINGS TO BE A MANAGEMENT

12   PROGRAM.

13      WITH RESPECT TO THIS TERM EXTERNAL AGENT, WHAT THE

14   SPECIFICATION ACTUALLY SAYS, AS SHOWN IN FIGURE 1 THE

15   MANAGEMENT PROGRAMS 18 IMPLEMENTED FOR EXAMPLE BY DIFFERENT OAM

16   TOOLS SUCH AS RTM PROGRAMS MAY BE EXECUTED WITHIN THE PROCESSOR

17   BASED SYSTEM OR EXTERNALLY AS ETERNAL AGENTS.

18      THIS IS COLUMN THREE, LINES 1 THROUGH 15.

19      SO WITH RESPECT TO EXTERNAL AGENTS, THE PATENT DOES USE

20   THAT TERM, IT SPECIFICALLY SAYS THEY DON'T NEED TO BE EXTERNAL

21   AGENTS, THEY COULD BE BUT THEY DON'T NEED TO BE.  SO THERE'S NO

22   WAY THAT I THINK YOU COULD MAKE REASONABLE TO MAKE THAT A CLAIM

23   LIMITATION.

24      SO THEN THEY IMPORT THIS TERM, SEPARATENESS.  THE ISSUE

25   WITH THAT IS THAT WORD SEPARATE NEVER APPEARS IN THE PATENT,

1    NEVER APPEARS ONCE IN THE SPECIFICATION OR THE CLAIMS, AND IT'S

2    NOT CLEAR WHAT IT MEANS OR WHAT EXACTLY THEY ARE TRYING TO

3    SUGGEST THAT IT MEANS.

4        WE ASKED DR. ALMEROTH, YOU ARE SAYING THAT THE SEPARATE IN

5    THAT DEFINITION MEANS THAT THE TOOLS ARE SEPARATE FROM EACH

6    OTHER?

7        AND HE SAYS, I THINK THAT'S ONE EXAMPLE OF WHAT -- OF

8    WHERE THE SEPARATION COULD COME FROM.

9        CISCO SEEMS TO HAVE A DIFFERENT INTERPRETATION OF SEPARATE

10   IN ITS BRIEF.  A MANAGEMENT PROGRAM ISN'T JUST A DIFFERENT PART

11   OF THE SAME MODULE OR ROUTINE THAT IS EXECUTED, IT MUST BE

12   SEPARATE.

13       SO OUR POINT ABOUT THE SEPARATE LIMITATION IS IT DOESN'T

14   COME FROM ANYWHERE IN THE SPECIFICATION, AND IT'S NOT CLEAR

15   WHAT IT MEANS BECAUSE IT JUST BEGS THE QUESTION SEPARATE FROM

16   WHAT?

17       THE COURT:  SO ON THIS PART, YOURS IS MORE NARROW

18   THAN CISCO'S?

19       MR. SILBERT:  WELL, LET ME THINK ABOUT THAT.

20       THE COURT:  WELL, BECAUSE TOOLS THAT ARE CONFIGURED

21   CAN INCLUDE SEPARATE OR NOT SEPARATE, CAN'T IT?

22       MR. SILBERT:  YES, THAT'S RIGHT, BUT THAT I THINK

23   WOULD MAKE OURS BROADER.

24       THE COURT:  THAT'S WHAT I SAID, YOURS ON BROADER,

25   CISCO IS MORE NARROW THAN YOURS.

```
 1              MR. SILBERT:  I THINK THAT'S RIGHT.

 2              THE COURT:  THAT'S UNUSUAL.

 3              MR. SILBERT:  BECAUSE THEY ARE HAVING A LIMITATION

 4      THAT --

 5              THE COURT:  WELL, SAYING IT THE OTHER WAY AROUND, THE

 6      PATENT HOLDER WANTS THE BIGGER UMBRELLA OR THE BIGGER NET.

 7              MR. SILBERT:  WE ARE JUST AFTER THE TRUTH,

 8      YOUR HONOR.

 9              THE COURT:  THERE YOU GO.  I'M SURE THAT'S THE CASE.

10              MR. SILBERT:  OKAY.  HERE'S ISSUE TWO, OUR ISSUE TWO

11      WHICH WAS MR. PAK'S ISSUE ONE.

12          I THINK THERE'S SOME CONFUSION ABOUT THIS.  THERE MAY NOT

13      END UP BEING ANY DISPUTE.  AND I THINK THE WAY THAT THIS, WE

14      PHRASED THE ISSUE HERE I HOPE CLARIFIES THINGS.

15          ARE MANAGEMENT PROGRAMS ABLE TO RECEIVE USER-ENTERED

16      COMMANDS?

17           AND WHAT'S IN OUR CONSTRUCTION, WE SAID AND I'M DOING IT

18      FROM MEMORY, BUT SOMETHING TO THE EFFECT OF MANAGEMENT PROGRAMS

19      ARE CONFIGURED TO RECEIVE USER-ENTERED.

20              THE COURT:  IT SAYS TO EXECUTE USER-ENTERED COMMANDS.

21              MR. SILBERT:  TOOLS THAT ARE CONFIGURED TO EXECUTE

22      USER-ENTERED COMMANDS.

23          THE INTENTION OF THAT LANGUAGE, I HOPE WE MADE THIS CLEAR,

24      IS THAT THEY ARE CAPABLE OF EXECUTING USER-ENTERED COMMANDS.

25      IT DOESN'T MEAN THAT THEY ARE CAPABLE OF EXECUTING ONLY HUMAN
```

1    USER-ENTERED COMMANDS AND NOT COMMANDS AND NOT COMMANDS THAT

2    THEY HAVE RECEIVED --

3              THE COURT:  MAYBE WE DON'T HAVE A PROBLEM HERE.

4              MR. SILBERT:  I'M HOPING THAT WE DON'T.

5      WE ARE CERTAINLY NOT READING OUT FIGURE 1.  WE ARE NOT

6    READING OUT AN EMBODIMENT WHERE A MACHINE, A PARSER TRANSLATES

7    SOME GENERIC COMMAND, WHATEVER THAT IS, TO A PRESCRIBED COMMAND

8    AND THEN SENDS IT ALONG TO THE TOOL.  THAT'S CLEARLY WHAT THE

9    PATENT TALKS ABOUT.

10             THE COURT:  GOOD.  OKAY.

11             MR. SILBERT:  OUR POINT IS THAT THE PURPOSE OF THE

12   PATENT IS IT SAYS IT'S REALLY A PROBLEM THAT WHEN YOU HAVE ALL

13   THESE TOOLS, YOU GOT TO REMEMBER ALL OF THESE DIFFERENT

14   SYNTAXES.  WE GOT TO HAVE KIND OF ONE THING SITTING ON TOP THAT

15   YOU CAN JUST ENTER ONE LANGUAGE IN AND IT DOES THE

16   TRANSLATING -- YOU KNOW, YOU SPEAK ENGLISH AND THAT PERSON

17   TRANSLATED IT TO THIS GUY WHO SPEAKS FRENCH, THIS GUY SPEAKS

18   ITALIAN AND ET CETERA, SO FOR THAT TO MAKE ANY SENSE AT ALL,

19   WHAT IT'S TRANSLATING TO IS SOMETHING THAT OTHERWISE WOULD

20   ACCEPT A USER ENTERED COMMAND.

21      IT'S LIKE IF I SAID I DON'T LIKE THAT I'VE GOT TO REMEMBER

22   ALL THESE DIFFERENT PASSWORDS THAT I HAVE TO ENTER IN ALL OF

23   THESE DIFFERENT DEVICES AND THINGS, I WANT JUST ONE PASSWORD

24   AND THEN THAT THING IS GOING TO PUT WHATEVER THE RIGHT PASSWORD

25   IS FOR EACH THING.

```
 1              THE COURT:  CAN I BUY THAT?

 2              MR. SILBERT:  YES.  CAN I PATENT IT?  NO.

 3         BUT THAT'S WHAT I'M SAYING IS MY GREAT INVENTION, THE

 4    THINGS THAT IT'S GIVING THE PASSWORDS TO OUGHT TO BE THINGS

 5    THAT A HUMAN, ME, WOULD OTHERWISE GIVE MY PASSWORD TO.

 6         SO WHAT WE ARE SAYING, AND AGAIN, MAYBE THERE'S NO DISPUTE

 7    ON THAT --

 8              THE COURT:  I THINK THERE'S NO DISPUTE HERE.  GOOD.

 9         IT'S OKAY TO AGREE WITH HIM, MR. PAK.  THIS CASE CAN'T GO

10    THE WAY OF ALL THINGS BEING DISAGREED.

11              MR. SILBERT:  CAN MANAGEMENT PROGRAMS USE THE GENERIC

12    COMMAND FORMAT?

13         I DON'T THINK THERE'S MUCH INTRODUCE HERE EITHER.  ARISTA

14    IS SAYING THERE CAN BE NO OVERLAP AND THAT IF YOU HAD A SHOW

15    COMMAND AND THEN YOU LATER HAD A TOOL WITH THE SHOW COMMAND,

16    YOU WOULD HAVE TO GO BACK AND CHANGE IT.

17         THIS IS NOT WHAT WE ARE SAYING.  WHAT WE ARE SAYING IS

18    THERE'S GOT TO BE -- THERE'S SOME DIFFERENCE, I WOULDN'T SAY NO

19    OVERLAP, YOU CAN'T HAVE A SINGLE WORD OR MAYBE EVEN ONE COMMAND

20    OR SOMETHING THAT'S THE SAME.  BUT THAT THE GENERIC COMMAND

21    LANGUAGE IS DIFFERENT THAN THE TOOL SPECIFIC LANGUAGE.  YOU

22    DON'T JUST HAVE THE IDENTICAL COMMAND SET, OTHERWISE THAT'S NOT

23    WHAT'S THE INVENTION.

24              THE COURT:  WELL, OKAY.  BUT WE GET TO THE, TWO BROAD

25    STATEMENTS, WE'VE GOT TO COME SOMEWHERE WHEN YOU DRAW THE LINE.
```

```
 1        AND IT SOUNDS LIKE YOU ACTUALLY AREN'T DISAGREEING.

 2            BECAUSE I THINK MR. PAK'S EXAMPLE IS REALLY RIGHT ON.  IF

 3    YOU BRING IN ANOTHER MANAGEMENT PROGRAM THAT USES SOMETHING

 4    THAT HAS ALREADY BEEN IN YOUR GENERIC COMMAND, THEN THIS PATENT

 5    WOULD BE USELESS BECAUSE YOU WOULD HAVE TO REWRITE EVERY TIME

 6    YOU BRING SOMETHING IN.

 7            SO THE OVERLAP IS, I THINK MAYBE THERE'S NO ISSUE HERE.

 8            MR. SILBERT:  MAYBE NOT.  I MEAN, IF I COULD JUST

 9    COMMENT BRIEFLY ON THAT.

10        FIRST OF ALL, COMMANDS USUALLY ARE SPECIFIC TO TOOL.  WHEN

11    YOU SAY PRINT YOU ARE SENDING IT TO YOUR PRINTER.

12            THE COURT:  SURE.

13            MR. SILBERT:  SO IF YOU HAD A -- AND I THINK THIS

14    DOES RELATE TO THE GENERIC COMMAND TOPIC WE WERE TALKING ABOUT

15    THIS MORNING, BUT IF THE WAY YOU IMPLEMENTED THIS INVENTION WAS

16    YOU HAD ALL THE SAME COMMANDS THAT YOU ALREADY HAD FOR EVERY

17    TOOL, YOU KNOW, ALL MY PRINT COMMANDS GO TO MY PRINTER EXACTLY

18    THE SAME BUT I'M CALLING THAT A GENERIC LANGUAGE AND THEN ALL

19    MY SAVE TYPE COMMANDS GO TO THE SYSTEM, THE FILE SYSTEM THAT

20    SAVES THINGS, AND THEY ARE EXACTLY THE SAME AS I ALREADY WOULD

21    OTHERWISE ENTER.

22        AND AT SOME POINT IF YOU ARE USING THE TOOL, JUST USING THE

23    TOOL SPECIFIC COMMANDS THAT'S IT IS POINT -- YOU ARE TYPING ALL

24    THE SAME THINGS THAT YOU WOULD TYPE.  YOU HAVE TO MEMORIZE ALL

25    THOSE SYNTAXES ANYWAY.
```

```
1              THE COURT:  I DON'T ACTUALLY THINK THAT'S TRUE.  IT
2     WOULD ONLY BE TRUE IF YOU ONLY HAD ONE MANAGEMENT PROGRAM.  AND
3     IF THEY WERE IDENTICAL THEN YOU ARE RIGHT, THIS IS USELESS.
4              BUT THE PURPOSE OF THIS INVENTION IS NOT TO FACILITATE THE
5     USE OF ONE MANAGEMENT PROGRAM, IT'S TO FACILITATE THE ULTIMATE
6     USE OF MANY.  AND SO IT HAS TO START WITH ONE, MAYBE A USER
7     STARTS WITH MULTIPLES, WE DON'T KNOW, THE INVENTION DOESN'T
8     REQUIRE IT TO ONLY BE IMPLEMENTED ON MULTIPLE MANAGEMENT
9     PROGRAMS.
10             BUT IF YOU HAVE MORE THAN ONE MANAGEMENT PROGRAM, BY
11    DEFINITION, YOUR GENERIC COMMANDS ARE NOT GOING TO COMPLETELY
12    OVERLAP BOTH OF THEM.
13             MR. SILBERT:  THAT'S OUR POINT.  AND I DO JUST WANT
14    TO NOTE, THE CLAIMS DO SAY PLURALITY OF MANAGEMENT PROGRAMS, IF
15    I -- I THINK IT'S IN THE PREAMBLE.
16             THE COURT:  OKAY.  IF YOU WANT TO SHOW THAT TO ME,
17    YOU KNOW, IT'S FUNNY BECAUSE I KNOW IT WAS BRIEFED, BUT I DON'T
18    REMEMBER --
19             MR. SILBERT:  HANG ON.
20             THE COURT:  WELL, IT'S A SHORT PATENT, SOMEONE ELSE
21    WHO IS NOT TRYING TO MOVE THIS ALONG CAN --
22             MR. SILBERT:  HERE'S CLAIM 1.
23          A METHOD IN A PROCESSOR-BASED SYSTEM CONFIGURED FOR
24    EXECUTING A PLURALITY OF MANAGEMENT PROGRAMS.
25             THE COURT:  YOU ARE AT CLAIM ONE?
```

```
1              MR. SILBERT:  YEAH.  I DON'T KNOW THAT IT'S CRITICAL,
2      I JUST WANTED TO POINT IT OUT BECAUSE YOUR HONOR WAS SAYING IT
3      DOESN'T SAY PLURALITY, BUT IT IS IN THE PREAMBLE.
4              THE COURT:  WELL, THAT'S INTERESTING.  I WILL LET
5      MR. PAK COMMENT ON THAT WHEN YOU ARE DONE.
6              MR. SILBERT:  AND THEN THE LAST ELEMENT DOES REFER
7      TO, THEY SELECTED ONE OF THE MANAGEMENT PROGRAMS, IN PLURAL.
8      AGAIN, I THINK THE ULTIMATE POINT, WE CERTAINLY COULD RESOLVE
9      THIS PIECE, BUT I THINK THE ULTIMATE POINT IS WE AREN'T SAYING
10     THERE CAN BE NO OVERLAP AT ALL BETWEEN ANY MANAGEMENT PROGRAM
11     COMMAND AND WHATEVER IS CALLED THE GENERIC COMMAND SET, WE ARE
12     SAYING THAT THEY HAVE TO BE DIFFERENT, AT SOME LEVEL THEY HAVE
13     TO BE DIFFERENT OTHERWISE THE PATENT IS SENSELESS.
14         AND THAT'S WHAT -- I KIND OF LOST WHERE I WAS IN THE SLIDE.
15     BUT THAT'S EVEN WHAT CISCO'S CONSTRUCTION IS --
16             THE COURT:  THAT'S NOT HELPING ME TO CONSTRUE THIS.
17         I APPRECIATE WHAT YOU'RE SAYING, AND I DON'T ACTUALLY
18     DISAGREE THAT THEY HAVE TO BE DIFFERENT TO SOME EXTENT.  AND
19     ESPECIALLY IF CLAIM 1 REQUIRES A PLURALITY, I DON'T THINK WE
20     HAVE A DISPUTE HERE.
21         I'M NOT SURE THIS IS WORTHY OF A LOT OF TIME ONCE YOU
22     ACKNOWLEDGE THAT IT IS NOT AN ABSOLUTE ABSENCE OF OVERLAP.  AND
23     I'M NOT SURE HOW WE MASSAGE THAT TO PRESERVE THIS.  BUT WE ARE
24     NOT DEFINING HOW MUCH OVERLAP IS OKAY AND HOW MUCH ISN'T.
25             MR. SILBERT:  I AGREE.  AND WE'VE GOT BIGGER FISH TO
```

1    FRY.

2              THE COURT:  ALL RIGHT.  SO I'M VERY CONCERNED ABOUT

3    THE TIME.  WE ARE ON OUR SECOND TERM, AND I TOLD YOU I WOULD

4    SLOW YOU DOWN AND I DID.

5        MR. PAK, WHAT ABOUT THIS PLURALITY?

6              MR. PAK:  YEAH, YOUR HONOR, LET ME JUST QUICKLY HIT

7    THE POINTS.

8        FIRST OF ALL, WHEN I SAY PREAMBLE, THE PREAMBLES ARE NOT

9    LIMITING UNLESS THERE'S A REASON TO LIMIT.

10       BUT IF YOU THINK ABOUT THE INVENTION OVERALL, THERE'S

11   ABSOLUTELY NO REQUIREMENT THAT SOMETHING THAT -- IT MAKES NO

12   SENSE.  WE'RE TALKING ABOUT A DEFINITION OF A MANAGEMENT

13   PROGRAM.

14       SO THE DEFINITION OF A MANAGEMENT PROGRAM CAN TURN ON

15   WHETHER YOU HAVE MULTIPLE TOOLS OR MULTIPLE MANAGEMENT PROGRAMS

16   OR NOT, THIS IS ABOUT LOOKING AT THE MANAGEMENT PROGRAM, HOW IT

17   WORKS IN THE CONTEXT OF THE INVENTION.

18       THERE'S NO ARGUMENT FROM THE EITHER SIDE THAT THE PREAMBLE

19   LANGUAGE THAT MR. SILBERT POINTED TO YOU WAS A LIMITATION OF

20   THE METHOD CLAIM.

21       OFTEN TIMES IN PREAMBLE LANGUAGE WE TALK ABOUT SOME OF THE

22   OBJECTIVES OF THE INVENTION.  BUT UNLESS THERE'S A REASON TO

23   LIMIT IT, IT'S NOT LIMITING.  I DON'T THINK WE SHOULD BE

24   BOTHERED BY THAT.  I THINK THE COMMONSENSICAL ARGUMENTS WE

25   TALKED ABOUT OF TRYING NOT TO CREATE INCONSISTENCIES IN THE

1    DEFINITIONS, AS WE THINK ABOUT HOW A PRACTICAL SYSTEM WOULD

2    EVOLVE ALL APPLY HERE.

3            THE COURT:  ALL RIGHT.  IT SEEMS TO ME THAT ONCE WE

4    ARE OVER THE HURDLE OF THE ABSOLUTE PROHIBITION OF ANY OVERLAP,

5    WE HAVE REALLY SOLVED THIS PROBLEM.

6            MR. PAK:  RIGHT.

7        AND YOUR HONOR, LET ME HIT THAT APE CAPABILITY POINT.  THAT

8    IS NOT WHAT ARISTA'S CONSTRUCTION SAYS.  ARISTA'S CONSTRUCTION

9    SAYS CONFIGURE TO ACCEPT USER-ENTERED COMMANDS.

10            THE COURT:  RIGHT.  AS A LIMITATION.

11            MR. PAK:  AND HERE ARE THE MULTIPLE REASONS FOR THAT.

12        YOUR HONOR, I DON'T KNOW WHY WE EVEN NEED THIS CONCEPT OF

13    USER ENTERED DEMANDS IN THE DEFINITION OF MANAGEMENT PROGRAMS

14    FOR TWO REASONS.

15        ONE, IF YOU REMEMBER IN FIGURE 1 OF THE EMBODIMENT, THERE

16    IS NO USER INPUT ENTRY PATH ANYMORE TO THESE MANAGEMENT

17    PROGRAMS ONCE IT'S INCORPORATED INTO THE INVENTION.

18        SO IF WE ARE TALKING ABOUT EVEN CAPABILITY, BY THE TIME YOU

19    ACTUALLY IMPLEMENT THE SYSTEM, THERE MAY NOT BE A USER PATH TO

20    ANY OF THESE MANAGEMENT PROGRAMS, WHICH MAKES SENSE BECAUSE WHY

21    WOULD YOU CREATE A SEPARATE USER INPUT TO TOOLS YOU ARE TRYING

22    TO ABSTRACT AWAY FROM THE USER.

23        SO I THINK HAVING THIS NOTION OF CAPABILITY IF WE ARE GOING

24    TO REWRITE ARISTA'S CONSTRUCTION IS GOING TO ADD MORE AMBIGUITY

25    AND MAY POTENTIALLY READ OUT THE EMBODIMENTS.

```
 1            AND THEN AS YOUR HONOR SAW IN COLUMN 23 OF THE '526 PATENT,
 2     IT TALKS ABOUT SCRIPTS AND AGENTS.  THOSE ARE ALL AUTOMATED
 3     CONCEPTS.  AGAIN, IF THE PATENT WANTED TO LIMIT THIS TO
 4     USER-ENTERED MANAGEMENT PROGRAMS -- BUT I THINK YOUR HONOR GETS
 5     THE POINT.
 6            THE COURT:  YEAH.
 7            MR. SILBERT:  CAN I JUST SPEAK TO THAT?
 8            THE COURT:  QUICKLY.  WHEN I SAY 12:30, I'M DONE,
 9     WHETHER YOU ARE DONE TALKING OR NOT.
10            MR. SILBERT:  I THINK THAT WHAT CISCO IS TRYING TO DO
11     IS A PRETTY RADICAL EXPANSION OF THE IDEA OF THE PATENT.  THERE
12     ARE ALL KINDS OF WAYS THAT A COMPUTER TALKS TO OTHER PARTS OF A
13     COMPUTER, THE SYSTEM BUS, THE CENTRAL PROCESSOR, ET CETERA.
14     THESE ARE THINGS THAT USERS, A HUMAN USER DOESN'T DIRECTLY
15     INTERACT WITH.  I'M NOT TYPING COMMANDS TO IT, ET CETERA.
16         SO IF WHAT CISCO IS GOING TO DO IS TRY TO SAY, WELL,
17     SOMEONE ENTERS A COMMAND AND ULTIMATELY THAT CAUSES AN
18     INSTRUCTION TO GET ISSUED TO A COMPUTER TO ANOTHER PART OF THE
19     COMPUTER THAT WAS NEVER A PART OF THE COMPUTER THAT THE USER
20     INTERACTED WITH, THAT'S PART OF OUR INVENTION, THAT'S NOT AT
21     ALL WHAT THE PATENT IS TALKING ABOUT.  THE PATENT VERY CLEARLY
22     SAYS IT'S REALLY A PAIN WHEN YOU USE A BUNCH OF TOOLS THAT
23     YOU'VE GOT TO MEMORIZE ALL THE DIFFERENT COMMANDS.
24         SO YOU CAN HAVE THIS GENERIC COMMAND FORMAT.
25            THE COURT:  SO RATHER THAN USER-ENTERED COMMANDS,
```

```
 1      WHICH WOULD BE THE USER ACTUALLY COMMUNICATING THE GENERIC
 2      COMMAND, THIS COULD BE EXECUTING USER DIRECTED COMMANDS,
 3      BECAUSE THAT WOULD SEEM TO NARROW IT DIRECTING THE --
 4      SPECIFICALLY DIRECTING THE AUTOMATION AS OPPOSED TO THIS
 5      BROADER CONCEPT OF --
 6              MR. SILBERT:  I THINK THAT'S RIGHT, AS LONG AS IT
 7      DOESN'T ENCOMPASS THINGS THAT ARE KIND OF UNDER THE HOOD,
 8      INVISIBLE TO A USER.
 9              THE COURT:  THAT'S MY POINT.  SO IT HAS TO BE
10      USER-DIRECTED.
11              MR. SILBERT:  IF I SAY SAVE, I'M CAUSING THE COMPUTER
12      TO DO THINGS ON THE DISK AND WHATEVER, BUT THOSE ARE A LOT OF,
13      THAT'S JUST INVISIBLE.
14              THE COURT:  SO IT'S INTENTIONALITY HERE IS WHAT YOU
15      ARE GETTING AT.
16              MR. SILBERT:  IT'S SOMETHING A USER WOULD OTHERWISE
17      INTERACT WITH DIRECTLY AND THAT'S THE BENEFIT THE PATENTS
18      PROVIDE.
19              THE COURT:  SO I THINK THAT IS MAYBE SOMETHING
20      MR. PAK IS THINKING ABOUT.
21              MR. PAK:  YOUR HONOR, AGAIN, WE ARE TALKING ABOUT
22      MANAGEMENT PROGRAMS.  BOTH PARTY'S CONSTRUCTION HAS THE CONCEPT
23      OF COMMAND SYNTAX, COMMAND FORMATS.  WHY WE NEED TO ADD ALL
24      THIS COMPLEXITY ABOUT AT THE TIME OF THE INVENTION WHETHER
25      WE'RE TRYING TO ASSESS SOMETHING AS USER-DIRECTED,
```

1    USER-EXECUTED COMMAND, THAT'S COMPLETELY NOT PART OF THE

2    CONCEPT OF A MANAGEMENT PROGRAM.

3        WHAT WE ARE TALKING ABOUT IS DOES IT HAVE ITS OWN COMMAND

4    SYNTAX?  IS THERE A PLURALITY OF TRANSLATORS THAT ARE USED TO

5    TRANSLATE THE GENERIC COMMAND SYNTAX INTO THESE COMMAND SYNTAX

6    FORMATS.  THAT'S IT.

7        SO I THINK THIS IS GOING TO ADD A LOT OF COMPLEXITY.  WE

8    ARE GOING TO CREATE MORE PROBLEMS.

9            THE COURT:  OKAY.  WELL, I WILL THINK ABOUT THAT.

10           MR. PAK:  YES.

11       SO LET ME MOVE ON QUICKLY BECAUSE WE DO HAVE A LOT OF

12   GROUND TO COVER.  BUT I DO THINK THIS WAS THE HEART OF THE

13   DISPUTE ON THIS PATENT.

14           THE COURT:  OH, GOOD.  I FIGURED THAT'S WHY YOU WERE

15   SPENDING MORE TIME HERE.  ALL RIGHT.

16           MR. PAK:  SO I THINK WE GOT THROUGH A LOT OF THE

17   FOUNDATIONAL DISPUTES.

18           THE COURT:  GOOD.  ARE WE GOING TO MOVE ON TO COMMAND

19   PARSE TREE?

20           MR. PAK:  YES, YOUR HONOR.

21       IF YOU TURN TO SLIDE 52, A TREE, I THINK THERE'S ACTUALLY

22   FEW DISPUTES HERE, BUT IT REALLY BOILS DOWN TO ONE ISSUE.

23       AGAIN, I THINK MR. SILBERT PUT IT BEST, IT'S A CARDINAL SIN

24   TO TRY TO LIMIT CLAIM SCOPE TO JUST ONE EMBODIMENT AND THAT'S

25   THE KEY ISSUE THAT WE HAVE WITH LOTS OF THESE DISPUTED TERMS

1    RELATING TO COMMAND PARSE TREE.

2         WE ACKNOWLEDGE THAT THE PATENT HAS A VERY NICE EXPOSURE OF

3    A PARTICULAR IMPLEMENTATION OF A PARSE TREE.  IT'S GREAT.  IT'S

4    GOT LOTS OF GREAT ELEMENTS TO IT, THERE ARE NODES, THERE'S

5    DIFFERENT ASPECTS TO IT.  BUT THE POINT OF DISCLOSING THE

6    EMBODIMENT TO THE WORLD IS NOT, THIS IS MY INVENTION, THIS IS

7    HOW YOU CAN PRACTICE MY INVENTION, THIS IS ONE EXAMPLE IN WHICH

8    I CAN PRACTICE THE INVENTION.

9         SO IT'S CLEAR BY LOOKING AT THE EVIDENCE FROM DR. ALMEROTH

10   AND LOOKING AT ALL THE EXTRINSIC EVIDENCE WE CITED TO

11   YOUR HONOR, THE CONCEPT OF COMMAND, THE CONCEPT OF PARSING AND

12   TREE ARE VERY WELL KNOWN CONCEPTS IN THE FIELD.  AND A PERSON

13   OF ORDINARY SKILL IN THE ART WHO HAS A BACHELOR'S DEGREE OF

14   COMPUTER SCIENCE, TWO FULL YEARS OF RESEARCH OR WORK EXPERIENCE

15   IN THIS AREA, THEY KNOW WHAT THAT MEANS.  THEY KNOW YOU CAN

16   IMPLEMENT TREES IN LOTS OF DIFFERENT WAYS.

17        I REMEMBER AS AN UNDERGRADUATE STUDENT I HAD TO CREATE

18   TREES FOR LOTS OF DIFFERENT THINGS AND YOU COULD CREATE TREES

19   IN VERY, VERY DIFFERENT WAYS.

20        THE WHOLE POINT OF THIS EXERCISE HERE TODAY IS NOT TO TRY

21   TO SAY LET'S PICK THIS EMBODIMENT AND LIMIT THE INVENTION, IT'S

22   ARE THESE WELL KNOWN TERMS.  IF THEY ARE, DOES IT REQUIRE

23   CONSTRUCTION.

24        COMMAND PARSE TREE, WE BOTH AGREE REQUIRE CONSTRUCTION.

25   LET'S TRY TO LOOK AT THE EXTRINSIC EVIDENCE AND THE INTRINSIC

```
1     EVIDENCE FAIRLY.  AND THIS IS THE LANGUAGE WE HAVE COME UP WITH

2     WHICH IS, FIRST OF ALL, YOU HAVE A DATA REPRESENTATION.

3            THE COURT:  WELL, THERE'S ONE OF YOUR DISPUTES

4     WHETHER IT'S DATA REPRESENTATION OR DATA STRUCTURE.

5            MR. PAK:  YEAH.  I THINK THAT PROBABLY ISN'T ONE OF

6     OUR BIGGEST DISPUTES.

7            THE COURT:  IS THAT WHAT'S COVERED IN THE MANUAL THAT

8     YOU ARE WILLING TO ACCEPT?

9            MR. PAK:  YES, YOUR HONOR.

10        SO ON SLIDE 54 WE INCLUDED, THE REASON WHY WE USED THE WORD

11    STRUCTURE, IT COMES FROM ONE OF THE WELL KNOWN DEFINITIONS.

12           THE COURT:  YOU USE REPRESENTATION.

13           MR. PAK:  RIGHT.  WE THINK FROM A REPRESENTATION

14    STRUCTURE PERSPECTIVE, WE DON'T SEE A HUGE DIFFERENCE.  THE KEY

15    PART IS HIERARCHICAL.  THE CONCEPT HERE IS WHETHER IT'S A

16    STRUCTURE OR REPUTATION OR SOME OTHER WORD WE WANT TO USE.  BUT

17    "TREE" DOESN'T LITERALLY MEAN A TREE SHAPE.  WE DRAW THOSE

18    THINGS DIAGRAMMATICALLY, BUT IF YOU LOOK AT THE COMPUTER

19    PROGRAM, YOU ARE NOT GOING TO SEE A VISUALIZATION THAT SHOWS A

20    TREE.  WHAT IT MEANS IS IT'S A TREE IN THE SENSE OF HIERARCHY,

21    YOU HAVE MULTIPLE LAYERS.

22           THE COURT:  FIGURE 2, ISN'T THAT FIGURE 2?

23           MR. PAK:  FIGURE 2 IS JUST A VISUALIZATION OF WHAT

24    THE USER CAN VISUALIZE.  THAT CONCEPT OF A TREE LIKE STRUCTURE

25    DOESN'T REALLY EXIST.
```

```
 1            THE COURT:  IT SHOWS THE HIERARCHY.

 2            MR. PAK:  IT SHOWS THE HIERARCHY, YOUR HONOR.

 3        AND WE CAN SEE THAT --

 4            THE COURT:  BUT ISN'T THAT -- YOUR CONCEPT OF

 5    HIERARCHY IS EXACTLY WHAT IS MEANT BY THE ROOT AND THE NODES,

 6    THAT'S ALL ABOUT HIERARCHY, ISN'T IT?

 7            MR. PAK:  THERE'S SOME NOTIONS OF THAT, BUT THERE ARE

 8    LOTS OF WAYS OF BUILDING HIERARCHY THAT DOESN'T USE LEAF LIKE

 9    BRANCHES, LEAF NODES.

10            THE COURT:  SO I WAS A LITTLE CONCERNED, EVEN PUTTING

11    ASIDE THE DIFFERENCES HERE, AND MR. SILBERT, I WILL BE ASKING

12    YOU THIS, THAT YOUR CONSTRUCTION MAY BE PERFECTLY

13    UNDERSTANDABLE TO OUR PERSONS SKILLED IN THE ART, BUT THIS IS

14    SO CONFUSING FOR A JURY TO HAVE TO BE WORRIED ABOUT ROOTS AND

15    NODES AND BRANCHES AND LEAVES.

16        IT JUST GOES OFF INTO -- BECAUSE -- AND THE WORST THING

17    ABOUT IT IS THAT BECAUSE THESE ARE WORDS THAT WE ACTUALLY USE

18    IN NORMAL LIFE, THIS IS DISTRACTING TO ME TO EVEN UNDERSTAND

19    THIS.

20        WHEREAS HIERARCHY, IF IT'S ACCURATE, AND IT'S TRUE TO THE

21    PATENT, IS MUCH SIMPLER AND CLEANER THAN ALL OF THIS DETAIL

22    HERE THAT I STILL GET LOST IN.

23        BECAUSE YOU FORCE ME TO DRAW A PICTURE WITH YOUR

24    CONSTRUCTION AND THEN I'M ACTUALLY, BECAUSE THE WORD TREE IS

25    THERE, I'M DRAWING A TREE AND I'M NOT SUPPOSED TO.
```

```
 1          THIS IS SUPPOSED TO HELP THE JURY.  AND I THINK THAT IF

 2    WE'VE WORKED OUT THE STRUCTURE VERSUS REPRESENTATION ISSUE, I

 3    WAS CERTAINLY MORE COMFORTABLE WITH THE WAY THAT CISCO

 4    APPROACHED THIS.  I DON'T THINK ARISTA IS NECESSARILY WRONG

 5    FROM A COMPUTER SCIENTIST STANDPOINT.  AND AS WE GET INTO MORE

 6    OF THESE TERMS, THEY KIND OF WENT OFF THE DEEP END A LITTLE BIT

 7    IN THE COMPLEXITY.

 8          MR. PAK:  YOUR HONOR, WE ARE FINE WITH HIERARCHICAL

 9    DATA STRUCTURE, IF THAT WOULD HELP.

10          THE COURT:  OKAY.

11          MR. PAK:  AND THEN THE REST OF THE LANGUAGE IS PRETTY

12    STRAIGHTFORWARD.  WE ARE TALKING ABOUT A HIERARCHICAL DATA

13    STRUCTURE THAT HAS ELEMENTS.

14          THE COURT:  AND ELEMENTS AND NODES, IT APPEARS THE

15    PARTIES DON'T DISPUTE THAT THEY MEAN THE SAME THING.

16          MR. PAK:  WE HAVE NO PROBLEM IF THEY WANT TO USE THE

17    WORD NODES.  WE THINK ELEMENT IS PROBABLY A BIT MORE

18    UNDERSTANDABLE TO A LAW AUDIENCE, BUT WE DON'T HAVE A BIG ISSUE

19    WITH NODES.

20          THE COURT:  OKAY.

21          MR. PAK:  BUT THE IDEA IS YOU HAVE THESE ELEMENTS OR

22    NODES IN THIS HIERARCHICAL DATA STRUCTURE.  AND WHAT YOU ARE

23    TRYING TO DO IS YOU ARE TRYING TO SPECIFY AT LEAST ONE COMMAND

24    COMPONENT THAT'S GENERIC TO AT LEAST ONE COMPONENT THAT IS A

25    COMMAND ACTION ON.
```

1          THE COURT:  RIGHT, OTHERWISE IT'S NOT VERIFIED.

2          MR. PAK:  THAT'S RIGHT.

3      AND AT LEAST ONE LANGUAGE IS NOT SOMETHING THAT WE MADE UP,

4  IT'S ACTUALLY IN THE PATENT CLAIMS.  THE CLAIMS SAY AT LEAST

5  ONE GENERIC COMMAND COMPONENT TO AT LEAST ONE COMMAND ACTION

6  VALUE.

7      SO WE THINK THAT THIS -- AND I DON'T THINK THERE'S A LOT OF

8  DISAGREEMENT ON THIS, THEY ALSO TALK ABOUT ONE OR MORE COMMAND

9  COMPONENTS AND MULTIPLE COMMANDS IN THEIR PROPOSED

10  CONSTRUCTION.

11      BUT THAT, TO US, WAS THE ISSUE IN THE COMMAND PARSE TREE.

12  AND THEN SINCE WE ARE GOING TO TALK ABOUT THE LARGER PHRASE

13  TOGETHER, LET ME HIT THAT AS WELL, YOUR HONOR, AND THEN WE CAN

14  LET MR. SILBERT DISCUSS IT.

15          THE COURT:  AND THAT'S GOING ON TO --

16          MR. PAK:  THIS IS THE BROADER PHRASE, THE COMMAND

17  PARSE TREE HAVING ELEMENTS EACH SPECIFYING AT LEAST ONE

18  CORRESPONDING COMMAND COMPONENT.  THIS IS ON SLIDE 59.

19      NOW, ONCE YOU DEFINE WHAT A COMMAND PARSE TREE IS, WE THINK

20  THE REST OF THE CLAIM LANGUAGE DOESN'T REQUIRE FURTHER

21  CONSTRUCTION.

22      IT'S CLEAR YOU SPECIFY AT LEAST ONE CORRESPONDING GENERIC

23  COMMAND COMPONENT.  WE HAVE A DEFINITION OF GENERIC COMMAND

24  THAT WE ARE ALREADY DISPUTING, AND IT'S SPECIFYING AT LEAST ONE

25  COMMAND ACTION VALUE.

```
 1          AND IF YOU LOOK AT OUR CONSTRUCTION VERSUS THEIR

 2    CONSTRUCTION, THE PRIMARY DISPUTE IS THEY ADD THE WORD UNIQUE.

 3          THE COURT:  YEAH.

 4          MR. PAK:  AND I THINK THIS MIGHT BE ANOTHER WAY FOR

 5    THEM TO ARGUE THAT OVERLAP POINT THAT WE WERE JUST ARGUING

 6    ABOUT, BUT THE WORD UNIQUE IS A VERY, VERY STRONG WORD.  IT

 7    MEANS YOU CAN HAVE NO OVERLAP BETWEEN THE MANAGEMENT PROGRAMS

 8    AMONG THEMSELVES OR WITH THE GENERIC COMMAND SET.

 9          AND AS MR. SILBERT ACKNOWLEDGED, I DON'T THINK THAT'S WHAT

10    THEY'RE ARGUING FOR NOW.  IT DOESN'T MAKE ANY SENSE TO ADD THE

11    WORD UNIQUE, IT DOESN'T APPEAR ANYWHERE IN THE CLAIM LANGUAGE.

12    IT'S GOING TO CREATE THAT INCONSISTENT SCENARIO THAT WE TALKED

13    ABOUT WHERE ALL THE SUDDEN YOU ADD A NEW MANAGEMENT TOOL INTO

14    THE SYSTEM, AND WHAT YOU HAD IDENTIFIED AS A GENERIC COMMAND NO

15    LONGER IS GENERIC.

16          SO WE HAVE A SERIOUS PROBLEM WITH THE WORD UNIQUE.

17          THE COURT:  SURE.

18          MR. PAK:  THEY ALSO SEEM TO BE ARGUING THAT YOU HAVE

19    TO HAVE ONLY ONE, YOU COUNT UP THE NUMBER OF COMMAND ACTION

20    VALUES AND THAT HAS TO BE A 1 TO 1 CORRESPONDENCE BETWEEN THE

21    NUMBER OF COMMAND ACTION VALUES TO THE NUMBER OF COMMANDS YOU

22    HAVE IN THE GENERIC COMMAND SET.

23          THERE'S ABSOLUTELY NO RESTRICTION TO THAT EFFECT IN THE

24    CLAIM LANGUAGE.  THE CLAIM LANGUAGE SAYS, AT LEAST ONE GENERIC

25    COMMAND COMPONENT TO AT LEAST ONE COMMAND ACTION VALUE.  THIS
```

```
 1        IS AN N TO N IN ENGINEERING WHERE N CAN GO FROM 1 TO INFINITY.

 2           THERE'S A LOT OF FLEXIBILITY BUILT INTO THE CLAIM LANGUAGE

 3        BECAUSE, FOR EXAMPLE YOU MAY USE THE WORD WATCH, BUT YOU MAY

 4        MAP IT ON TO DISPLAY, BUT I'M ALSO SEEING SOMETHING ELSE IN

 5        YOUR PROGRAM SYNTAX AS SIMILAR TO SHOW.  THAT MIGHT BE

 6        VISUALIZE.

 7           AND I MIGHT DECIDE TO MAP ONE GENERIC COMMAND TO MULTIPLE

 8        COMMAND FEATURES OF A GIVEN PROGRAM.  OR I MAY HAVE A SITUATION

 9        WHERE I HAVE MULTIPLE COMMANDS FROM THE GENERIC COMMAND

10        PERSPECTIVE THAT MAP ON TO THE SAME COMMANDS IN A PARTICULAR

11        MANAGEMENT PROGRAM.

12           BUT AGAIN, THOSE ARE IMPLEMENTATION CHOICES.  I THINK THE

13        CLAIM LANGUAGE IS CLEAR WE ARE TALKING ABOUT 1 TO 1.  WHAT THEY

14        ARE REALLY ASKING FOR IS YOUR HONOR'S PERMISSION TO REWRITE THE

15        CLAIM LANGUAGE TO TAKE OUT "AT LEAST" AND BASICALLY REPLACE

16        "ONE UNIQUE."

17             THE COURT:  WELL, WHEN I FIRST READ THIS I WAS

18        THINKING ACTUALLY WE NEEDED CONSTRUCTION, BUT I'M FEELING MORE

19        COMFORTABLE THAT PLAIN AND ORDINARY MIGHT BE ACCEPTABLE.

20             MR. PAK:  I THINK SO, YOUR HONOR.

21           AND AGAIN, WE ALREADY HAVE, TO THE EXTENT YOUR HONOR DENIES

22        THE MOTION ON THE INDEFINITENESS, WE HAVE A DEFINITION ON

23        GENERIC COMMAND.  WE ARE GOING TO HAVE A DEFINITION ON COMMAND

24        PARSE TREE.  SO I THINK THAT THE JURY, WITH THOSE INSTRUCTIONS,

25        ARE GOING TO BE ABLE TO UNDERSTAND THIS CLAIM LANGUAGE
```

```
 1    PERFECTLY WELL.
 2              THE COURT:  SURE.
 3              MR. PAK:  AND OBVIOUSLY, AS YOUR HONOR KNOWS, THERE'S
 4    LOTS OF CASE LAW THAT SAYS YOU DON'T HAVE TO CONSTRUE EVERY
 5    WORD --
 6              THE COURT:  I DON'T WANT TO CONSTRUE EVERY WORD, BUT
 7    I JUST DON'T WANT TO END UP ON THE EVE OF TRIAL WITH THE
 8    EXPERTS OFFERING TWO DIFFERENT CONSTRUCTIONS OF SOMETHING WITH
 9    ORDINARY MEANING.  SO THAT'S THE INTENTION EVERY JUDGE HAS.
10              MR. PAK:  AT THAT LEVEL, ALL WE ARE SAYING IS AT
11    LEAST ONE IS NOT UNIQUE.  SO THAT'S REALLY THE DISPUTE.
12         AND FROM THAT PERSPECTIVE, I DON'T THINK YOU NEED TO
13    CONSTRUE AT LEAST ONE.
14              THE COURT:  OKAY.
15              MR. PAK:  THANK YOU.
16              THE COURT:  ALL RIGHT.  LET'S SEE.  WE NEED TO TAKE A
17    BREAK, IT'S BEEN A LONG TIME, AND SHOULD WE TAKE IT NOW BEFORE
18    I HEAR FROM --
19              MR. KRISHNAN:  THAT WOULD BE FINE.
20              THE COURT:  IS THAT ALL RIGHT?  ALL RIGHT.  LET'S
21    TAKE A TEN-MINUTE BREAK.
22              MR. PAK:  THANK YOU, YOUR HONOR.
23         (WHEREUPON A RECESS WAS TAKEN.)
24              THE COURT:  ALL RIGHT.  MR. SILBERT, I AM READY FOR
25    YOUR RESPONSE ON COMMAND PARSE TREE.
```

1          MR. SILBERT:  THANK YOU, YOUR HONOR.  IT WILL BE

2     MR. KRISHNAN.

3          THE COURT:  OH.  GOOD.

4          MR. KRISHNAN:  GOOD MORNING, YOUR HONOR.

5          THE COURT:  GOOD MORNING.

6          MR. KRISHNAN:  SO LET ME FIRST ADDRESS WHAT WAS

7     TALKED ABOUT ON COMMAND PARSE TREE, BECAUSE I THINK WE CAN CUT

8     THROUGH SOME OF THE ISSUES.

9          SO ON COMMAND PARSE TREE, I THINK THE FIRST ISSUE WAS ABOUT

10    WHETHER IT'S A STRUCTURE OR A REPRESENTATION, AND IT SOUNDED

11    LIKE ON THAT ONE CISCO CAME OVER TO OUR VIEW THAT A DATA

12    STRUCTURE WOULD BE FINE.

13         THE COURT:  YES, THAT'S WHAT I HEARD.

14         MR. KRISHNAN:  ON THE ISSUE OF HIERARCHY OR A

15    HIERARCHICAL VERSUS THE DESCRIPTION THAT WE PROVIDED ABOUT HOW

16    EXACTLY THAT HIERARCHY PLAYS OUT, I THINK YOUR HONOR'S PROPOSAL

17    WOULD BE FINE, THAT WE COULD GO WITH HIERARCHICAL THERE.  I

18    THINK THEY ARE SAYING ESSENTIALLY THE SAME THING WE ARE SAYING.

19         THE COURT:  SO I WOULD BE ADOPTING CISCO'S LANGUAGE

20    HERE.

21         MR. KRISHNAN:  RIGHT.  SO LET ME JUST --

22         THE COURT:  SO IT WOULD BE A HIERARCHICAL DATA

23    STRUCTURE HAVING, AND THEN IT SEEMS LIKE ELEMENTS AND NODES IS

24    NOT IN DISPUTE EITHER.

25         CAN YOU LIVE WITH ELEMENTS VERSUS NODES?  BECAUSE I THINK

1    CISCO COULD LIVE WITH NODES, BUT THEN I DON'T THINK THE JURY

2    KNOWS WHAT A NODE IS.

3              MR. KRISHNAN:  THAT WOULD BE FINE.

4              THE COURT:  OKAY.

5              MR. KRISHNAN:  SO IT WOULD BE -- ACTUALLY, COULD WE

6    GO TO SLIDE 34?

7              THE COURT:  OH, OKAY.  GOOD.

8              MR. KRISHNAN:  RIGHT.  SO I THINK THAT IT WOULD BE A

9    HIERARCHICAL DATA STRUCTURE.

10             THE COURT:  YES.

11             MR. KRISHNAN:  AND NOW HERE'S THE ISSUE, THE REST OF

12   WHAT IS IN CISCO'S CONSTRUCTION IS ACTUALLY THE OTHER CLAIM

13   TERM.  SO JUST TO BE CLEAR, EVERYTHING AFTER THE WORD

14   REPRESENTATION, WHICH WOULD NO LONGER BE IN THEIR CONSTRUCTION.

15             THE COURT:  WHEN YOU SAY OTHER CLAIM TERM?

16             MR. KRISHNAN:  I'M TALKING ABOUT THE LONGER CLAIM

17   TERM, AND THAT IS, A COMMAND PARSE TREE HAVING ELEMENTS EACH

18   SPECIFYING AT LEAST ONE CORRESPONDING GENERIC COMMAND COMPONENT

19   AND A CORRESPONDING AT LEAST ONE COMMAND ACTION VALUE.

20             THE COURT:  OH.  I SEE WHAT YOU ARE SAYING.

21             MR. KRISHNAN:  SO THEIR PROPOSAL ACTUALLY

22   INCORPORATES THE WHOLE OTHER TERM THAT WE WOULD BE TALKING

23   ABOUT.  AND THAT ONE I DO THINK WE HAVE SOMETHING THAT WE NEED

24   TO SAY.

25             THE COURT:  WELL, THEN MAYBE, SO YOU ARE REALLY

```
 1        SAYING THAT A COMMAND PARSE TREE SHOULD BE A HIERARCHICAL DATA

 2        STRUCTURE.

 3                  MR. KRISHNAN:  THAT'S RIGHT.

 4                  THE COURT:  PERIOD.

 5                  MR. PAK:  WE ARE FINE WITH THAT, YOUR HONOR.

 6                  THE COURT:  OKAY.

 7                  MR. KRISHNAN:  AND NOW I THINK IF WE JUMP TO 68, AND

 8        BY THE WAY, SO LET ME JUST TALK ABOUT THIS SLIDE BRIEFLY.

 9                  THE COURT:  SO THEN WE ARE MOVING ON TO THE LONGER

10        TERM, WHICH WAS I BELIEVE MY FIFTH ONE, BUT THAT IS E IN THE

11        JOINT CHART.

12                  MR. KRISHNAN:  RIGHT.

13                  THE COURT:  OKAY.

14                  MR. KRISHNAN:  LET ME JUST START BY SAYING ONE THING

15        TO SIMPLIFY EVERYONE'S LIFE.  THE WORD "UNIQUE" WE CAN TAKE OUT

16        OF OUR CONSTRUCTION.  SO I DON'T THINK THAT IT REALLY CHANGES

17        WHAT WE'RE TRYING TO SAY.  SO --

18                  THE COURT:  WELL, YOU SURE GOT A RISE OUT OF MR. PAK

19        ON THAT.

20                  MR. PAK:  TAKING ALL THE FUN OUT OF IT.

21                  MR. KRISHNAN:  SO THAT SAID, I THINK THIS, WE REALLY

22        ARE DOWN THEN TO THE DISPUTE ON THIS TERM.  AND IT SOUNDS LIKE

23        THE QUESTION IS WHETHER CONSTRUCTION IS REQUIRED AT ALL FOR

24        THIS TERM OR NOT.

25            AND I THINK THAT THIS IS A SITUATION WHERE CONSTRUCTION IS
```

1    REQUIRED BECAUSE THE LANGUAGE OF THE CLAIM IS NOT PARTICULARLY

2    CLEAR.  AND THE WAY THIS WILL PLAY OUT, THERE WILL BE

3    RAMIFICATIONS FOR HOW THIS PLAYS OUT IF IT GOES UN CONSTRUED.

4              THE COURT:  SO YOU WOULD THEN ASK FOR CONSTRUCTION OF

5    COMMAND ACTION VALUE WHICH IS THE ONLY TERM HERE NOT CONSTRUED.

6              MR. KRISHNAN:  PUTTING ASIDE COMMAND ACTION VALUE,

7    IT'S WHAT THE LANGUAGE HAVING ELEMENTS, EACH SPECIFYING AT

8    LEAST ONE CORRESPONDING GENERIC COMMAND COMPONENT AND A

9    CORRESPONDING AT LEAST ONE COMMAND ACTION VALUE.  WHAT THAT

10   LANGUAGE MEANS.

11             THE COURT:  OKAY.

12             MR. KRISHNAN:  SO HERE'S THE ISSUE, OUR VIEW, AND

13   THIS IS THE VIEW THAT WE THINK IS SUPPORTED BY THE

14   SPECIFICATION, IS THAT EACH ELEMENT OF THE TREE HAS TO HAVE IN

15   IT A CORRESPONDING COMMAND COMPONENT AND A COMMAND ACTION VALUE

16   THAT CORRESPONDS TO EACH ONE OF THOSE COMMAND COMPONENTS.

17        SO THE IDEA IS THIS, WHEN YOU READ THE LANGUAGE, IT SAYS

18   HAVING ELEMENTS EACH SPECIFYING AT LEAST ONE CORRESPONDING

19   GENERIC COMMAND COMPONENT.

20        SO THAT SAYS THAT THE ELEMENTS CAN HAVE ONE OR MORE

21   CORRESPONDING GENERIC COMMAND COMPONENTS.  AND THEN IT SAYS,

22   AND A CORRESPONDING AT LEAST ONE COMMAND ACTION VALUE.  MEANING

23   THAT THE COMMAND ACTION VALUES HAVE TO CORRESPOND TO THE

24   GENERIC COMMAND COMPONENTS.

25        THAT'S REALLY THE ISSUE.  AND WE THINK IT'S A PRETTY

1     IMPORTANT ONE FOR REASONS THAT I WILL GET TO IN A SECOND.

2            THE COURT:  SO THE ELEMENTS OR NODE HAS TO HAVE EACH

3     OF THESE.  BUT YOU ARE SAYING IT'S DIFFERENT.  YOU ARE PUTTING

4     A HIERARCHY INTO THIS CONSTRUCTION THAT I DON'T SEE.  YOU ARE

5     CONSTRUING THE WORD "AND" DIFFERENTLY.  WHAT DOES "AND" RELATE

6     TO?  I DON'T THINK "AND" RELATES TO "COMMAND COMPONENT."  IT

7     DOESN'T HAVING ONE CORRESPONDING COMMAND COMPONENT, AND THAT

8     COMPONENT HAS, IS WHAT YOU ARE READING IT TO BE.  AND I DON'T

9     SEE THAT.

10           MR. KRISHNAN:  THAT MIGHT BE ONE WAY OF PUTTING IT.

11           THE COURT:  BUT I THINK YOU ARE WRONG BECAUSE YOU ARE

12    REWRITING THE CLAIM.

13           MR. KRISHNAN:  SO I WILL TELL YOU WHY I'M NOT WRONG,

14    WHICH IS THAT THE LANGUAGE, "AND A CORRESPONDING AT LEAST ONE,"

15    THAT LANGUAGE REFLECTS WHAT'S HAPPENING WITH THE GENERIC

16    COMMAND COMPONENTS.

17        SO I THINK BEFORE WE GET TO THE "AND," WE ARE ALL ON THE

18    SAME PAGE, RIGHT.

19           THE COURT:  IT SEEMS THAT WAY.

20           MR. KRISHNAN:  THE ELEMENTS CAN HAVE ONE OR MORE

21    GENERIC COMMAND COMPONENTS.

22           THE COURT:  OKAY.

23           MR. KRISHNAN:  AND NOW WE ARE SAYING WHEN YOU GET TO

24    THE "AND," IT'S A CORRESPONDING OF AT LEAST ONE COMMAND ACTION

25    VALUE, MEANING IF YOU HAD FOUR OF GENERIC COMMAND COMPONENTS,

1    YOU HAVE A CORRESPONDING FOUR COMMAND ACTION VALUES.

2        SO THE COMMAND ACTION VALUES ARE CONNECTED TO THE GENERIC

3    COMMAND COMPONENTS.  THAT'S OUR POSITION, AND I WILL EXPLAIN

4    WHY IT'S RIGHT.

5             THE COURT:  OKAY.  SO YOU ARE SAYING EACH GENERIC

6    COMMAND COMPONENT HAS TO HAVE ITS OWN AT LEAST ONE

7    CORRESPONDING COMMAND ACTION VALUE.

8        DID I -- I'M JUST TRYING TO UNDERSTAND THIS.  SO WE HAVE

9    ELEMENTS, EACH SPECIFYING AT LEAST ONE CORRESPONDING GENERIC

10   COMMAND COMPONENT.  DO WE NEED TO LOOK AT FIGURE 2 TO REALLY --

11            MR. KRISHNAN:  THE NEXT SLIDE IS FIGURE 2.

12            THE COURT:  OKAY.  AND I'M SORRY.  I'M TRYING TO

13   UNDERSTAND THIS AS WE GO ALONG.

14            MR. KRISHNAN:  THIS IS EXACTLY WHERE I WAS GOING TO

15   GO.

16            THE COURT:  OKAY.  THANK YOU.

17            MR. KRISHNAN:  SO HERE WE HAVE ON FIGURE 2 ON THE

18   RIGHT, YOU HAVE THE ELEMENTS, THOSE ARE THE THINGS THAT ARE

19   MARKED IN ORANGE.  AND BY THE WAY, ALL I'VE ADDED HERE IS THE

20   COLORING.  THE TERM ELEMENTS, AND TOKEN COMMAND KEY PAIRS, ARE

21   THE LANGUAGE OF THE SPECIFICATION.

22       AND SO THE BOXES IN ORANGE, THOSE ARE THE ELEMENTS OR WHAT

23   WE ARE CALLING NODES, BUT THOSE ARE THE ELEMENTS.  AND EACH

24   ELEMENT HAS IN IT A, THAT'S ONE OR MORE, GENERIC COMMAND

25   COMPONENTS.  AND THOSE EFFECTIVELY EQUATE TO THE TOKEN, THE

```
1     T'S.

2               THE COURT:  BUT NOT THE COMMAND KEY.  WE ARE NOT AT

3     THAT YET.

4               MR. KRISHNAN:  NOT AT THAT YET, RIGHT.

5          SO EACH ELEMENT HAS ONE OR MORE GENERIC COMMAND COMPONENTS

6     IN IT.  THE FIRST TOP ELEMENT, THIS ONE UP HERE HAS THREE.

7     THIS ONE DOWN HERE HAS TWO.  AND THE REST OF THEM ALL HAVE ONE.

8               THE COURT:  RIGHT.

9               MR. KRISHNAN:  AND THIS IS BEFORE WE'VE GOTTEN TO THE

10    "AND."

11              THE COURT:  OKAY.  SO EACH ELEMENT HAS AT LEAST ONE

12    GENERIC COMMAND COMPONENT, AND THAT'S THE TOKEN.  OKAY.  I SEE

13    THAT.

14              MR. KRISHNAN:  THAT'S RIGHT.

15         AND A CORRESPONDING AT LEAST ONE COMMAND ACTION VALUE MEANS

16    A COMMAND ACTION VALUE THAT IS TIED TO EACH ONE OF THOSE

17    GENERIC COMMAND COMPONENTS.

18              THE COURT:  AND THOSE ARE THE NUMBERS BELOW THE T.

19              MR. KRISHNAN:  THOSE ARE THE NUMBERS BELOW THE CK

20    NOW.

21         SO THE WAY TO THINK ABOUT IT AND THE WAY TO EQUATE THE

22    LANGUAGE OF THE SPECIFICATION WITH THE LANGUAGE OF THE CLAIMS,

23    TOKENS EQUATE TO GENERIC COMMAND COMPONENTS.  COMMAND KEYS

24    RELATE TO COMMAND ACTION VALUES.

25              THE COURT:  SO FOR EACH ONE THERE HAS TO BE A TOKEN
```

1    AND COMMAND KEY.  THAT'S REALLY ALL YOU ARE SAYING, FOR EACH

2    ELEMENT THERE HAS TO BE A TOKEN.

3              MR. KRISHNAN:  AND FOR THAT TOKEN, THERE HAS TO BE A

4    COMMAND KEY.

5              THE COURT:  BECAUSE YOU HAVE TO TAKE THE GENERIC AND

6    PUT IT INTO --

7              MR. KRISHNAN:  AND THAT'S THE WHOLE IDEA OF THE TOKEN

8    COMMAND KEY PAIRS.  THEY ARE COUPLED TOGETHER INSIDE THE

9    ELEMENTS.

10              THE COURT:  IT'S CERTAINLY WHAT'S SHOWN IN THIS

11    EMBODIMENT.

12              MR. KRISHNAN:  AND GOING ON TO THE NEXT SLIDE, THIS

13    IS FROM THE TUTORIAL, AND I JUST WANT TO WALK THROUGH THIS ONE

14    MORE TIME TO SHOW WHY IT'S SUCH AN IMPORTANT LIMITATION TO THIS

15    PATENT.

16        SO THIS WAS THE EXAMPLE IN THE SPECIFICATION OF THE

17    PARTIALLY VALID COMMAND.  SO WHEN WE GET TO THE WORD UDP,

18    THAT'S WHERE EVERYTHING IS GOING TO BLOW UP BECAUSE UDP IS NOT

19    A VALID WORD TO FOLLOW.

20              THE COURT:  GOT IT.

21              MR. KRISHNAN:  SO THE WAY THIS WORKS IS YOU START

22    WITH "GET."  IT GOES TO THE TRANSLATION TABLE, IT FINDS THE

23    TOKEN THAT'S ASSOCIATED WITH THAT, THAT'S THE COMMAND COMPONENT

24    AND THE LANGUAGE OF THE CLAIMS.

25        AND IN THAT FIRST ELEMENT IT GOES AND FINDS THAT COMMAND

1    COMPONENT.

2          AND SO IT'S FOUND TOKEN THREE.  AND WE ARE JUST AT THE WORD

3    "GET" NOW.  AND NOW THAT IT'S FOUND IT, WHAT THE PARSER SAYS IS

4    IF THERE'S GOING TO BE ANOTHER WORD, I'M GOING TO HAVE TO LOOK

5    FOR IT IN THIS BOX DOWN HERE, 24E, BECAUSE THAT'S THE BRANCH

6    THAT RELATES TO THIS PARTICULAR COMMAND COMPONENT.

7          SO IT GOES TO THE NEXT WORD, UDP, IT FINDS TOKEN NUMBER 7

8    ASSOCIATED WITH UDP, AND IT LOOKS IN THE BOX 24E, CAN I FIND

9    THIS COMMAND COMPONENT IN THIS ELEMENT, AND IT'S NOT THERE.

10          THE COURT:  OKAY.  IT HAS TO BE ASSOCIATED WITH THE

11    TOKEN VALUE.

12          MR. KRISHNAN:  YEAH.  RIGHT.

13          SO UDP, IS NOT IN THE ELEMENT 24E, THERE'S ONLY ONE COMMAND

14    COMPONENT THAT GOES IN 24E, AND THAT IS TOKEN 6 FOR TCP.  SO

15    TCP WOULD BE THE ONLY VALID WORD THAT CAN FOLLOW "GET," SINCE

16    TCP IS NOT UDP.

17          THE COURT:  THEN WE ARE DONE.

18          MR. KRISHNAN:  WELL, THERE'S ONE MORE STEP HERE

19    BECAUSE IT RECOGNIZES OKAY, WE NOW HAVE A PROBLEM.  AND SO IT

20    GOES BACK TO "GET."

21          AND NOW COMMAND KEY 6, SO THAT'S THE CRITICAL PART.

22    COMMAND KEY 6 HAD TO BE COUPLED WITH TOKEN 3 FOR GET, BECAUSE

23    IF THEY WEREN'T COUPLED TOGETHER, ONCE YOU GET TO THE SECOND

24    WORD AND IT'S INVALID, YOU HAVE NOTHING TO DEFAULT BACK TO.

25          SO IF COMMAND KEY 6 WERE NOT ASSOCIATED WITH TOKEN 3 IN THE

1    FIRST ELEMENT, RIGHT, IF TOKEN 3 WAS JUST STANDING THERE BY

2    ITSELF AND IT DIDN'T HAVE A COMMAND ACTION VALUE ASSOCIATED

3    WITH IT, ONCE THE NEXT WORD IS FOUND TO BE INVALID, THE PARSER

4    COMES BACK TO THAT COMMAND COMPONENT AND IT SAYS OKAY, WELL,

5    WHAT'S THE COMMAND ACTION VALUE ASSOCIATED?

6             THE COURT:  YOU CAN'T DO ANYTHING WITH IT.

7             MR. KRISHNAN:  YEAH.

8        SO THE WAY THE INVENTION WORKS IS WELL, THERE IS SOMETHING

9    ASSOCIATED WITH TOKEN 3, WITH GET, AND THAT'S ALWAYS GOING TO

10   BE COMMAND KEY 6.

11       AND SO THIS INVENTION WILL ONLY WORK BECAUSE THERE IS A

12   PAIRING OF A COMMAND ACTION VALUE OR A COMMAND KEY, FOR EVERY

13   SINGLE GENERIC COMMAND COMPONENT IN THIS TREE.  THAT IS THE

14   CRITICAL POINT HERE.

15       AND IT'S WHY THIS TREE CAN TAKE IN PARTIALLY INVALID

16   COMMANDS AND DEAL WITH THEM PROPERLY.  BECAUSE NO MATTER, ONCE

17   YOU GET PAST THE FIRST WORD, IT WILL ALWAYS BE ABLE TO DO

18   SOMETHING IN RESPONSE BECAUSE THERE IS A CORRESPONDING COMMAND

19   ACTION VALUE FOR EACH GENERIC COMMAND COMPONENT IN EACH

20   ELEMENT.

21       SO AT THIS POINT I JUST WANT TO TAKE A PAUSE AND ASK IF THE

22   COURT IS FOLLOWING ME SO FAR.

23             THE COURT:  WELL, I FOLLOW YOU, AND I WAS JUST

24   LOOKING BACK TO SEE WHAT WE DISCUSSED -- WELL, I SUPPOSE THAT'S

25   THE PROBLEM WITH THE PLAIN AND ORDINARY IS YOU END UP WITH

1    THESE DISPARATE VIEWS OF IT.

2        I WILL HEAR FROM MR. PAK WHEN YOU ARE DONE AS TO WHETHER HE

3    DISAGREES.

4        AND YOU WANT TO GO ON?

5            MR. KRISHNAN:  I DO WANT TO GO ON, AND I WANT TO GO

6    ON TO SOMETHING WHICH THE COURT HAS PERHAPS ALREADY RULED ON

7    AND WHICH WAS THE QUESTION OF THE IPR PROCEEDING.

8        AND I MAY JUST BE WASTING MY TIME AND THE COURT MAY NOT

9    CONSIDER THIS, BUT THIS IS ONE WE FEEL IS VERY IMPORTANT TO

10   CONVEY, THAT THIS PRECISE DISTINCTION THAT I JUST DESCRIBED IS

11   WHAT CISCO USED IN THE IPR PROCEEDING TO DISTINGUISH A PIECE OF

12   PRIOR ART.

13       SO THIS IS PRECISELY A SITUATION WHERE THEY ARE TAKING

14   DIFFERENT VIEWS AND DIFFERENT POSITIONS.

15           THE COURT:  WELL, SO I'M NOT GOING TO CONSIDER THAT

16   BUT WE WILL SEE IF MR. PAK, WE WILL SEE WHAT HIS POSITION IS IN

17   THIS PROCEEDING FOR CLAIMS CONSTRUCTION.  HE KNOWS HIS OWN

18   COMPANY'S POSITION ON THESE THINGS.  SO I WANT TO --

19           MR. KRISHNAN:  YOUR HONOR, I JUST WANT TO SHOW YOU

20   ONE SLIDE IT'S FROM THE IPR.

21           THE COURT:  NO, NO, THAT'S TOTALLY FINE.

22           MR. KRISHNAN:  BY THE WAY, THIS IS FROM CISCO'S IPR

23   PETITION.

24       JUST TO MAKE CLEAR, FIRST OF ALL, THEY HAVE READ THE PARSE

25   TREE THE SAME WAY THAT WE HAVE.  THEY HAVE SAID IT IS GENERIC

1    COMMAND COMPONENT, ALL THE RED IS THEIR WRITING.  THE GENERIC

2    COMMAND COMPONENT ASSOCIATES WITH THE T'S, THE TOKENS, THE

3    COMMAND ACTION VALUE IS OVER HERE, ARE WITH THE COMMAND KEYS.

4         THE TREE ELEMENTS, EVERYONE IS TALKING ABOUT THE TREE IN

5    THE EXACT SAME WAY.  THIS IS LANGUAGE WHERE THEY DESCRIBE IT

6    VERBALLY BUT THIS IS THE KEY SECTION FROM THEIR IPR RESPONSE.

7         THEY SAID MARTINEZ-GUERRA IS THE NAME OF THE PRIOR ART

8    REFERENCE THAT ARISTA HAD SUBMITTED.  AND IT SAYS, WHILE OTHER

9    PARSING AND TRANSLATING SYSTEMS SUCH AS THE ONES DISCLOSED BY

10   MARTINEZ-GUERRA AIMED TO SOLVE A SIMILAR PROBLEM, SUCH SYSTEMS

11   ADDRESSED THE PROBLEM USING A DIFFERENT TECHNIQUE, A TECHNIQUE

12   THAT DIDN'T USE A COMMAND PARSE TREE HAVING ELEMENTS WHERE EACH

13   ELEMENT SPECIFIED A GENERIC COMMAND COMPONENT AND AT LEAST ONE

14   CORRESPONDING COMMAND ACTION VALUE.

15        AS A RESULT, SYSTEMS SUCH AS MARTINEZ-GUERRA COULD NOT

16   EXECUTE A GENERIC COMMAND FOR A PARTIALLY VALID INPUT, A NOVEL

17   ASPECT ACCOMPLISHED BY THE '526 PATENT BECAUSE OF THE UNIQUE

18   COMMAND PARSE TREE AND ITS STRUCTURE.

19        SO THEY WENT TO THIS EXACT READING OF HOW THE PARSE TREE

20   WORKS WITH THE ELEMENTS, THE COMMAND ACTION VALUES AND THE

21   COMMAND COMPONENTS, AND THEY SAID THAT EACH ONE HAS TO BE

22   COUPLED TOGETHER, AND IF NOT, IT WON'T WORK, AND THAT'S EXACTLY

23   WHEN THEY WENT ON TO, ON THIS SLIDE YOU CAN SEE THEY'VE GONE ON

24   TO MAKE THAT POINT MORE SPECIFICALLY.

25             THE COURT:  SO WOULDN'T I FIND ALL OF THIS IN YOUR

1    REFERENCES TO FILE HISTORY?  I HAVE NOT LOOKED AT THAT DEPTH

2    YET.

3              MR. KRISHNAN:  I MEAN, SO IT IS THE QUESTION WHETHER

4    THE IPR --

5              THE COURT:  THIS STATEMENT IN THE IPR PROCEEDING,

6    WHICH I'M NOT GOING TO CONSIDER, I'M JUST LOOKING BACK AT YOUR

7    RECITATION OF THE EVIDENCE YOU'VE RELIED UPON.

8         AND IT SEEMS TO ME IF YOU ARE SUGGESTING HERE THAT CISCO

9    DISTINGUISHED THIS CLAIM FROM THE PRIOR ART IN ORDER TO OVER

10   COME THAT PRIOR ART, THEN IT WOULD BE, IT SHOULD BE WHAT YOU'VE

11   CITED TO ME HERE IN THE FILE HISTORY AND RESPONSE TO OFFICE

12   ACTION.

13             MR. KRISHNAN:  THEY ARE DOING THIS AS WE SPEAK IN THE

14   IPR.  THEY DIDN'T DO IT --

15             THE COURT:  THEY DIDN'T DISTINGUISH IT PREVIOUSLY.

16             MR. KRISHNAN:  RIGHT.

17             THE COURT:  THANK YOU.

18             MR. KRISHNAN:  AND THIS IS THE REAL ISSUE.

19             THE COURT:  I HEAR YOU ON IT, I UNDERSTAND.

20             MR. KRISHNAN:  THE WAY WE GET PREJUDICED BY THIS IS

21   IF THEY SUCCEED ON THIS ARGUMENT RIGHT NOW IN THE IPR AND THE

22   IPR GETS DENIED, THEY COULD HAVE SUCCEEDED ON THIS ARGUMENT AND

23   TAKEN INCONSISTENT POSITIONS THERE AND HERE, AND WE ARE THE

24   ONES THEN THAT GET PREJUDICED BY THAT.

25             THE COURT:  OKAY.

1          MR. KRISHNAN:  SO THAT'S THE ISSUE.

2      AND THEN THIS IS THE FOLLOW-UP LANGUAGE THAT CISCO USED

3  ABOUT MARTINEZ-GUERRA TO MAKE IT CRYSTAL CLEAR OF WHAT THEY

4  WERE SAYING.

5      THIS TERM TRANSLATION FUNCTION, JUST SO YOU UNDERSTAND,

6  THAT'S THE EQUIVALENT OF A COMMAND ACTION VALUE IN

7  MARTINEZ-GUERRA.

8      THEY ARE SAYING ACCORDING TO MARTINEZ-GUERRA, A TRANSLATION

9  FUNCTION ONLY APPLIES TO COMPLETE VALID SEQUENCES OF TOKENS.

10      SO THAT'S LIKE, THAT'S LIKE SAYING THAT IN MARTINEZ-GUERRA,

11  THE COMMAND ACTION VALUES ARE ONLY IN THE CHILD ELEMENTS OF THE

12  TREE, THE BOTTOM OF THE TREE.  YOU HAVE TO GO ALL THE WAY

13  THROUGH AND FIND A TOTALLY COMPLETE VALID SEQUENCE OF TOKENS.

14          THE COURT:  I SEE.

15          MR. KRISHNAN:  AND NOT IN THE BRANCHES, NOT IN THE

16  ROOT, THOSE DO NOT HAVE COMMAND ACTION VALUES ASSOCIATED WITH

17  THEM.

18      SO THEN THEY SAY, THUS, IN CONTRAST TO THE '526 PATENT,

19  EACH TOKEN INGESTED BY MARTINEZ-GUERRA'S PARSER DOES NOT HAVE A

20  CORRESPONDING TRANSLATION FUNCTION.

21      SO AS THE WORDS ARE COMING IN, THAT'S NOT NECESSARILY A

22  COMMAND ACTION VALUE ASSOCIATED WITH THEM EMPLOY.  THAT WAS THE

23  DISTINCTION THEY WERE MAKING.

24      SO THAT'S REALLY THE BIG ISSUE THAT WE HAVE ON THESE

25  COMMAND PARSE TREE TERMS AND WE THINK THAT GIVEN BOTH THE WAY

1    THAT THE SPECIFICATION ACTUALLY WORKS AND CISCO'S IPR

2    PETITION --

3              THE COURT:  SO LET ME BACK UP A LITTLE BIT.  IF CISCO

4    IS SUGGESTING THAT NO CONSTRUCTION IS NECESSARY, THEY AREN'T

5    ACTUALLY REJECTING YOUR CONSTRUCTION, THEY FEEL -- THEY CAN'T

6    OFFER A SEPARATE CONSTRUCTION AND SAY ITS PLAIN AND ORDINARY

7    MEANING.  SO IT'S BACK TO THE QUESTION, DO I NEED TO CONSTRUE

8    THIS?

9              MR. KRISHNAN:  THE PROBLEM THERE WILL BE IF IT

10   DOESN'T GET CONSTRUED, THE JURY THEN ACCEPTS A VERSION OF THE

11   PLAIN AND ORDINARY MEANING.

12             THE COURT:  THEY ONLY GET ONE MEANING, THEY DON'T GET

13   TWO VERSIONS OTHERWISE IT NEEDS TO BE CONSTRUED.

14             MR. KRISHNAN:  THAT'S THE PROBLEM IS THE PLAIN AND

15   ORDINARY MEANING IS OPEN TO PUT MULTIPLE INTERPRETATIONS AND WE

16   ARE SAYING THE CORRECT INTERPRETATION IS THE ONE CISCO USED IN

17   THE IPR AND THAT WE THINK IS SUPPORTED BY THE PATENT

18   SPECIFICATION AS WELL.

19             THE COURT:  OKAY.

20       MR. PAK, WHAT'S YOUR -- I MEAN --

21             MR. PAK:  LET ME SEE IF I CAN CUT TO THE CHASE ON A

22   LOT OF THIS, YOUR HONOR.

23       BASICALLY, WHAT MR. KRISHNAN HAS SAID TO YOU IS THIS IS HOW

24   ONE EMBODIMENT WORKS.  WE SHOULD DO OUR VERY BEST TO TAKE THE

25   CLAIM LANGUAGE AND REWRITE IT SO THAT IT WORKS ACCORDING TO

```
1        THAT EMBODIMENT.

2            THAT'S NOT THE LAW.  THAT'S NOT THE EXERCISE.  WHAT WE ARE

3    TRYING TO DO IS GIVE MEANING TO WORDS WHEN NECESSARY, WHEN

4    WORDS SPEAK FOR THEMSELVES, WE DON'T NEED TO FURTHER CONSTRUE

5    THE TERMS.

6            THE IMPORTANT THING, YOUR HONOR, IS IF YOU GO BACK TO,

7    LET'S SEE, THE CLAIM LANGUAGE, THE STEP BEFORE THIS.  IT'S ON

8    SLIDE 59, YOUR HONOR.

9            IT SAYS, THE COMMAND PARSE TREE HAVING ELEMENTS EACH

10   SPECIFYING AT LEAST ONE CORRESPONDING GENERIC COMMAND COMPONENT

11   AND A CORRESPONDING AT LEAST ONE COMMAND ACTION VALUE.

12           IT'S PLAIN WHAT THAT MEANS.  WHEN IT SAYS EACH SPECIFYING,

13   IT'S TALKING ABOUT THE ELEMENT.  SO EVERY ELEMENT HAS TO HAVE

14   AT LEAST ONE GENERIC CORRESPONDING COMPONENT.

15               THE COURT:  SO IT'S THE ELEMENT THAT HAS TO HAVE THE

16   CORRESPONDING --

17               MR. PAK:  EXACTLY.  YOU CAN SAY THE SAME

18   CORRESPONDING LANGUAGE IN THE GENERIC COMMAND COMPONENT AS

19   WELL.

20               THE COURT:  AND THE DIFFERENCE, I DON'T KNOW WHICH

21   WAY I'M GOING TO COME OUT, THE DIFFERENCE IS THAT ARISTA IS

22   ARGUING THAT EACH GENERIC COMMAND COMPONENT WHICH IS A TOKEN,

23   HAS TO HAVE A CORRESPONDING AT LEAST ONE COMMAND ACTION VALUE.

24   AND YOU ARE SAYING IT'S THE ELEMENT THAT HAS TO HAVE ONE OF

25   EACH.
```

```
1              MR. PAK:  I THINK THE LANGUAGE IS VERY CLEAR, EACH

2    SPECIFYING AT LEAST ONE CORRESPONDING GENERIC COMMAND

3    COMPONENT.

4              THE COURT:  WELL, FRANKLY, THIS DIAGRAM CAN BE

5    INTERPRETED EXACTLY WITH WHAT YOU ARE SAYING IN EACH, JUST BY

6    LOOKING AT IT, YOU CAN'T ALWAYS JUST LOOK, BUT HERE, EACH

7    ELEMENT WHICH WAS THE BOX THAT I SAW IN ORANGE, BUT I'M LOOKING

8    AT THIS ONE, HAS AT LEAST ONE TOKEN AND AT LEAST ONE COMMAND

9    KEY.

10             MR. PAK:  ABSOLUTELY.

11             THE COURT:  AND I'M NOT SURE THERE'S -- WELL, I MEAN,

12   IF THAT CONSTRUCTION OPENS THIS UP TO AN INVALIDITY ARGUMENT

13   DOWN THE ROAD, I DON'T KNOW --

14             MR. PAK:  THEY ARE GOING TO HAVE THEIR SHOT AT IT.

15   THE POINT OF CLAIM CONSTRUCTION ISN'T TO TRY TO FIGURE OUT WHO

16   IS GOING TO WIN OR LOSE.  I THINK THE POINT HERE IS TO FIGURE

17   OUT, LOOK, DOES THE CLAIM LANGUAGE CREATE AMBIGUITY OR DOES THE

18   WORD HAVE SOME SPECIALIZED TECHNICAL MEANING THAT WOULD BENEFIT

19   THE JURY BY US DEFINING IT.

20     HERE WE ARE REALLY TALKING ABOUT SETTING ASIDE COMMAND

21   PARSE TREE AND WHAT IS A GENERIC COMMAND.  WE ARE TALKING ABOUT

22   PLAIN ENGLISH.  THE ENGLISH IS CLEAR.  ELEMENTS, EACH

23   SPECIFYING AT LEAST ONE CORRESPONDING GENERIC COMMAND COMPONENT

24   AND A CORRESPONDING AT LEAST ONE COMMAND ACTION VALUE.

25             THE COURT:  SO THE QUESTION REALLY IS, DOES THE
```

```
1    COMMAND ACTION VALUE OR THE COMMAND KEY CORRESPOND TO THE

2    ELEMENT OR DOES IT CORRESPOND TO THE TOKEN?

3            MR. PAK:  AND I THINK IF YOU LOOK AT THE CLAIM

4    LANGUAGE IT CORRESPONDS TO THE ELEMENT.  THERE'S NOTHING IN THE

5    FIGURES, THE FIGURES ALSO SUPPORT THAT MEANING OF IT AS WELL.

6        I THINK WHAT THEY WANT TO DO IS LOOK INSIDE OF EACH OF

7    THOSE NUMBER VALUES THAT WERE SELECTED FOR EXEMPLARY PURPOSES

8    YOUR HONOR, AND SAY, AH, BECAUSE THE PATENTEE FOR THAT

9    PARTICULAR EXAMPLE USED NUMBERS THAT WERE UNIQUE IN SOME WAY OR

10   HAD THIS PARTICULAR ARRANGEMENT, THAT WE SHOULD READ THIS TO

11   MEAN INSTEAD OF SAYING CORRESPONDING TO GENERIC COMMAND

12   COMPONENT AND A CORRESPONDING OF AT LEAST ONE COMMAND ACTION

13   VALUE, REWRITE IT SOMEHOW TO CREATE THIS HIERARCHICAL

14   RELATIONSHIP BETWEEN THE GENERIC COMMAND COMPONENT AND THE

15   COMMAND ACTION VALUE.  BUT THE CLAIM LANGUAGE DOESN'T SAY THAT.

16   THERE'S NOTHING IN THE CLAIM LANGUAGE THAT REQUIRES THAT.

17       LET ME TURN TO THE IPR.  YOUR HONOR, THEY SELECTED ONE

18   EXCERPT OUT OF A VERY, VERY LENGTHY IPR PETITION THAT HAS

19   EXPERT REPORTS FROM BOTH SIDES.

20       ONE OF THE REASONS WHY I'M GOING TO ARGUE TO YOU,

21   YOUR HONOR, WHEN WE GET BACK IN HERE TO TALK ABOUT THE STAY

22   MOTION, IS THAT THERE ARE DIFFERENT STANDARDS, THERE'S

23   DIFFERENT SETS OF EXPERTS, THERE'S DIFFERENT PRIOR ART IN THAT

24   CASE THAT WILL BE AT ISSUE IN THIS CASE.

25       THERE ARE LOTS OF THINGS GOING ON IN THAT IPR PROCEEDING,
```

```
1    AND THAT'S WHY JUDGES, CLEARLY NOW, HAVE BEEN, ESPECIALLY AS WE

2    HAVE GONE THROUGH THE CLAIM CONSTRUCTION PROCESS, YOUR HONOR

3    MAY END UP WITH DIFFERENT VIEWS ON SOME OF THESE ISSUES FROM A

4    CLAIM CONSTRUCTION PERSPECTIVE THAN THE PTAB.  AND THAT'S OKAY.

5              THE COURT:  SURE.

6              MR. PAK:  BECAUSE THE PTAB HAS A DIFFERENT STANDARD.

7    THE FEDERAL CIRCUIT JUST CONFIRMED THAT.

8         THE FEDERAL CIRCUIT SAID WHEN PTAB IS LOOKING AT ITS OWN

9    DECISIONS AND ASKING ITSELF, DID I MAKE THE RIGHT DECISION AS A

10   PTO, THEY USE A REASONABLY BROADER STANDARD.

11        WHEN THE COURT IS LOOKING AT THE CLAIM CONSTRUCTION ISSUES,

12   YOUR HONOR IS LOOKING AT THE PHILLIPS LAW AND THE INTRINSIC

13   RECORD.

14             THE COURT:  AND WE WILL WAIT FOR THE SUPREME COURT TO

15   SORT THIS OUT.  THE PROBLEM IS THAT BY GOING THE DIRECTION OF

16   HAVING THE CASES GO TO IPR THIS WAY, THE PURPOSE WAS NOT TO

17   MAKE LITIGATION BALLOON INTO MORE PROCEEDINGS, IT WAS SUPPOSED

18   TO STREAMLINE.

19        SO I BRISTLE A LITTLE BIT AT THE CONCEPT THAT ALL OF THESE

20   PROCEEDINGS GO ON PARALLEL.

21             MR. PAK:  UNDERSTOOD, YOUR HONOR.

22        AND IT'S REALLY ABOUT TIMING.  I THINK THAT WHEN YOU LOOK

23   AT WHERE WE ARE, WE HAVE INVESTED AND, ON BOTH SIDES, LOTS OF

24   RESOURCES INTO DOING EXPERT DISCOVERY.

25        IF YOUR HONOR RECALLS AT THE VERY BEGINNING OF THIS CASE, I
```

```
 1        SAID IT'S BIFURCATED IF YOU DO THE COPYRIGHT CLAIMS.

 2             THE COURT:  YES, YOU DO.

 3             MR. PAK:  THEY SAID LET'S NOT BIFURCATE, LET'S GO TO

 4        TRIAL, AND THEY WANTED THE EARLIEST TRIAL DATE THEY WERE

 5        ALLOWED TO.  AND WE WORKED REALLY HARD TO FIT IN DISCOVERY ON

 6        BOTH SIDES.

 7             THE COURT:  YES.

 8             MR. PAK:  THERE WAS INFRINGEMENT, FROM OUR

 9        PERSPECTIVE, THAT'S GOING ON.  WE WANT THAT RESOLVED.

10          I THINK THIS IDEA THAT SOMEHOW AFTER MADE ALL THIS

11        INVESTMENT AND SITTING HERE TODAY FOR FOUR HOURS WITH

12        YOUR HONOR'S TIME GOING THROUGH THIS EXERCISE TO SAY, LOOK,

13        JUST BECAUSE THERE MAY BE A DECISION UNDER A DIFFERENT STANDARD

14        WITH DIFFERENT EXPERTS ARGUING ABOUT DIFFERENT THINGS, THAT WE

15        ARE GOING TO DELAY THAT WHOLE PART OF THE CASE.

16             THE COURT:  OKAY.  WELL, WE ARE NOT DOING THE STAY

17        MOTION TODAY, AND THE TIME IS AFFECTED BY IT.

18             MR. PAK:  THAT'S ANOTHER REASON NOT TO CONSIDER THESE

19        ARGUMENTS.

20             THE COURT:  OKAY.  ALL RIGHT THEN.  I UNDERSTAND THE

21        NATURE OF THIS DISPUTE.  ARE WE READY TO MOVE --

22             MR. KRISHNAN:  YOUR HONOR, THERE'S JUST ONE POINT I

23        WANT TO MAKE THAT I THINK WOULD BE HELPFUL TO THE COURT.

24          THE SORT OF LEAD IN TO IT IS THAT I THINK THERE IS

25        AMBIGUITY IN THE CLAIM LANGUAGE AS TO WHETHER THE COMMAND
```

```
1    ACTION VALUE HAS TO CORRESPOND TO THE ELEMENT OR TO THE COMMAND

2    COMPONENT.  SO I THINK THAT MUCH IS CLEAR.  AND THE POINT THAT

3    I WANT TO MAKE THAT THE TEXT OF THE CLAIM --

4              THE COURT:  THAT MEANS I SHOULD CONSTRUE.

5              MR. KRISHNAN:  THAT'S CORRECT.

6         AND THE TEXT OF THE CLAIM ACTUALLY SUPPORTS OUR POSITION.

7    BECAUSE IT SAYS, AND A CORRESPONDING AT LEAST ONE COMMAND

8    ACTION VALUE, IT DOES NOT SAY, AND AT LEAST ONE CORRESPONDING

9    COMMAND ACTION VALUE.

10             THE CORRESPONDING COMES BEFORE.

11             THE COURT:  OH, CORRESPONDING IS ONLY FOR THE SECOND

12   PART.

13             MR. KRISHNAN:  SO WHEN THEY ARE TALKING ABOUT THE

14   GENERIC COMMAND COMPONENT, THE CORRESPONDING COMES AFTER AT

15   LEAST ONE.

16        SO IT SAYS, AT LEAST ONE CORRESPONDING GENERIC COMMAND

17   COMPONENT.  BUT WHEN IT'S TALKING ABOUT THE COMMAND ACTION

18   VALUES, IT SAYS CORRESPONDING AT LEAST ONE COMMAND ACTION

19   VALUE.

20             THE COURT: OKAY.  I SEE THAT.

21             MR. PAK:  I DON'T SEE A MEANINGFUL DIFFERENCE THERE.

22   BUT LET'S MOVE ON, YOUR HONOR.

23             THE COURT:  OKAY.  WE WILL MOVE ON.  LET'S SEE, WE

24   HAVE TO GO BACK MAYBE.

25             MR. PAK:  YES, YOUR HONOR, TO MY PRESENTATION.
```

```
1              THE COURT:  AND IS NEXT THE VALIDATING STEP?

2              MR. PAK:  YES.

3         AGAIN, I THINK THEY HAVE AN INDEFINITENESS POSITION BUT

4    IT'S BASED UPON THE GENERIC COMMAND ARGUMENT FOR THIS ONE.

5         SO ALL THE ARGUMENTS THAT WE WENT OVER ON THE DEFINITE

6    NATURE OF THE GENERIC COMMAND WOULD APPLY.

7         AND I THINK REALLY THE ISSUE IN MY MIND IS TWOFOLD FOR THIS

8    ONE.  IF YOU LOOK AT THE LANGUAGE OF ARISTA'S PROPOSED

9    CONSTRUCTION, YOUR HONOR SEES THE WORD EXACTLY MATCHES.

10             THE COURT:  RIGHT.

11             MR. PAK:  AND IT ALSO SAYS IN THE ABSENCE OF AN EXACT

12   MATCH.

13        THE CLAIM LANGUAGE DOESN'T SAY THAT, IT SAYS BEST MATCH.

14   THERE'S A FAR -- IT'S A FAR AND FEW BETWEEN DIFFERENCE BETWEEN

15   HAVING SOMETHING THAT'S A BEST MATCH VERSUS AN EXACT MATCH.

16        AND IN TERMS OF COMPUTER LANGUAGE PROGRAMMING AS WELL,

17   YOUR HONOR, WHEN YOU ARE LOOKING FOR BEST MATCH, OFTEN TIMES

18   YOU ARE LOOKING FOR PARTIAL MATCHES OF TOKENS, YOU ARE LOOKING

19   FOR SYNONYM MATCHES.  THERE ARE LOTS OF DIFFERENT SEARCHING

20   ALGORITHMS THAT WOULD BE AN EXACT MATCH THAT WOULD NOT BE AN

21   EXACT MATCH.

22        SO AGAIN, WE THINK THIS IS AN INAPPROPRIATE ATTEMPT BY

23   ARISTA TO REWRITE THE CLAIM LANGUAGE FIRST OF ALL, TO REPLACE

24   BEST WITH EXACT.  AND ULTIMATELY, WE GO BACK TO THE SAME

25   DISPUTE THAT WE WERE HAVING BEFORE ABOUT WHETHER CLAIM LANGUAGE
```

1    SHOULD BE WRITTEN TO COVER ONLY THE DISCLOSING EMBODIMENTS.

2    BECAUSE THERE'S NO DISPUTE, EVEN UNDER THE BEST MATCH SCENARIO

3    OF THE CLAIM LANGUAGE.

4           THE COURT:  SO CAN I JUST TAKE OUT THE WORD "EXACT"

5    FROM THE -- BECAUSE YOU SAY PLAIN AND ORDINARY.  BUT IF I'M

6    LOOKING AT THE -- AT ARISTA'S CONSTRUCTION, IF I JUST SAY

7    IDENTIFYING THE ELEMENT IN THE PARSE TREE THAT MATCHES, OR I

8    GUESS I WOULD SAY THAT IS THE BEST MATCH, AND THE GENERIC

9    COMMAND, THAT MATCHES THE GENERIC COMMAND, AND IN THE ABSENCE,

10   WE WILL GET TO THE LAST VALIDATED.

11          MR. PAK:  YEAH, I THINK THAT LAST PIECE IS COMPLETELY

12   UNNECESSARY.  WE ARE GOING TO HAVE MEANS PLUS FUNCTION --

13          THE COURT:  IT MAY BE UNNECESSARY, BUT IT'S RIGHT

14   FROM THE TEXT OF THE PATENT, THE LAST MATCH, IN COLUMN 3.

15          MR. PAK:  IT IS, YOUR HONOR.

16      BUT WE HAVE, AS WE WILL GET TO IN THE NEXT CLAIM, WE

17   ACTUALLY HAVE MEANS PLUS FUNCTION CLAIMS.

18          THE COURT:  YES.

19          MR. PAK:  SO AS YOUR HONOR KNOWS, THERE'S A HUGE

20   DIFFERENCE BETWEEN CLAIMING SOMETHING THAT'S A MEANS PLUS

21   FUNCTION VERSUS A METHOD CLAIM LIKE THIS ONE.

22      MEANS PLUS MEANS, AS A PATENTEE I ACTUALLY WANT TO COVER

23   WHAT'S DISCLOSED IN THE PATENT AND EQUIVALENCE THEREOF.  THIS

24   PIECE HERE, TO THE EXTENT IT RELATES TO THE DISCLOSED

25   EMBODIMENT WOULD BE CAPTURED IN THE MEANS PLUS FUNCTION CLAIMS,

1    BUT THIS LANGUAGE THAT WE ARE TALKING ABOUT IN THE VALIDATING

2    STEP COVERS THE INDEPENDENT CLAIM THAT DOESN'T USE THE MEANS

3    PLUS FUNCTION LANGUAGE.

4         AND THE FEDERAL CIRCUIT HAS MADE IT VERY CLEAR THAT WHEN

5    YOU DON'T HAVE MEANS PLUS FUNCTION LANGUAGE, THE GENERAL

6    PRINCIPLE IS IT'S NOT LIMITED TO DISCLOSED EMBODIMENTS.

7         ALL WE ARE ARGUING ABOUT ARE THE FOLLOWING WORDS, THE

8    VALIDATING STEP INCLUDES IDENTIFYING ONE OF THE ELEMENTS AS A

9    BEST MATCH RELATIVE TO THE GENERIC COMMAND.

10        I CAN'T WRITE THAT ANY MORE CLEARER.  WE KNOW IT SAYS USE

11   THE WORD "BEST."  WE DON'T NEED TO REPLACE IT WITH "EXACT."

12   THE ONLY THING THAT'S REQUIRED AS PART OF THE VALIDATING STEP

13   IS IDENTIFYING ONE OF THE ELEMENTS.

14        THE COURT:  SO I THINK I UNDERSTAND WHAT YOU ARE

15   SAYING.

16        I DON'T THINK WHAT ARISTA IS SAYING IS WRONG ABOUT THE LAST

17   VALIDATED COMPONENT BECAUSE THAT'S ACTUALLY WHAT HAPPENS.

18        MR. PAK:  THAT'S WHAT HAPPENS IN THE SPECIFICATION

19   FACTUALLY.  I AGREE WITH THAT.

20        THE COURT:  YOU ARE JUST SAYING IT'S NOT NECESSARY

21   FOR THE CONSTRUCTION.

22        MR. PAK:  OF THIS CLAIM ELEMENT.  WE WILL GET TO THAT

23   IN THE MEANS PLUS FUNCTION.  THAT'S PART OF THE STRUCTURE OF

24   THE DISCLOSED EMBODIMENT POTENTIALLY.  BUT HERE THE ONLY THING

25   WE ARE ARGUING ABOUT IS WHAT DOES IT MEAN TO IDENTIFY ONE OF

1    THE BEST ELEMENTS.  THAT'S IDENTIFIED.  WE DON'T NEED TO GO

2    INTO THIS FURTHER STEP OF FIGURING OUT, IN CASE THERE IS NO

3    IDENTIFICATION OR MATCH, WHAT HAPPENS NEXT, THAT'S NOT PART OF

4    THIS CLAIM LANGUAGE.

5            THE COURT:  SO THE ONLY THING I HAD A CONCERN ABOUT

6    IS THAT THE VALIDATION PROCESS, THERE'S A WHOLE STRING THAT THE

7    GENERIC COMMAND IS MORE THAN ONE PIECE.  SO IT GETS BROKEN DOWN

8    INTO, I DON'T WANT TO USE THE WORD ELEMENT, CHUNKS OR WHATEVER.

9    SO THE FIRST THING THAT THE PARSER DOES IS IT TAKES THE FIRST

10   PIECE.  AND THEN IT GOES TO THE SECOND ONE AND THEN THE THIRD.

11       AND IF EITHER THE SECOND OR THIRD IS INVALID, THEN IT DOES

12   DEFAULT TO THE LAST VALIDATED --

13           MR. PAK:  ONLY IN THAT EMBODIMENT.  BUT YOU CAN

14   DESIGN PARSERS IN LOTS OF DIFFERENT WAYS.

15       SO THAT'S THE WHOLE ISSUE HERE WHICH IS TO A COMPUTER

16   SCIENTIST LIKE DR. ALMEROTH, TO IMPLEMENT CLAIM 1 WHICH IS A

17   BROADER CLAIM THAN THE MEANS PLUS FUNCTION CLAIMS, WHAT CHOICES

18   CAN YOU MAKE FROM AN IMPLEMENTATION STANDPOINT THAT WOULD STILL

19   MEET THE CLAIM LANGUAGE OF VALIDATING AND IDENTIFYING IN

20   CREATING A BEST MATCH AND YET YOU MAY MAKE DIFFERENT

21   IMPLEMENTATION CHOICES ABOUT WHAT HAPPENS WHEN YOU DON'T HAVE

22   AN EXACT OR BEST MATCH.

23       THAT'S NOT COVERED IN THIS PARTICULAR CLAIM LANGUAGE.  AND

24   IT'S CERTAINLY NOT COVERED IN THE CLAIM LANGUAGE THAT WE ARE

25   CONSTRUING WHICH IS VALIDATING STEP INCLUDING.

```
 1          IF YOU JUMP TO SLIDE 75, IT'S VERY CLEAR YOUR HONOR THAT

 2     EVERYTHING THAT ARISTA RELIES ON FOR SUPPORT COMES FROM THESE

 3     SECTIONS OF THE '526 PATENT WHERE IT SAYS FOR EXAMPLE.

 4               THE COURT:  FOR EXAMPLE, YEAH.

 5               MR. PAK:  FOR EXAMPLE.

 6          SO WE ARE NOT DISPUTING WHETHER THE EXAMPLE WORKS IN THE

 7     WAY THAT MR. KRISHNAN WOULD SUGGEST, IT MAY, BUT THAT'S

 8     IRRELEVANT.  WE ARE TRYING TO ARGUE ABOUT THE PLAIN MEANING OF

 9     THE WORD VALIDATING STEP INCLUDING BEST MATCH.

10               THE COURT:  OKAY.

11               MR. PAK:  AND I THINK THERE'S NO NEED TO FURTHER

12     CONSTRUE THAT.

13               THE COURT:  SO BEST MATCH, IS THAT ONE OF THOSE WORDS

14     THAT'S SUBJECTIVE?  I DON'T KNOW -- NO ONE RAISED THAT ISSUE.

15               MR. PAK:  I DON'T THINK SO.  I THINK BEST MATCHING

16     ALGORITHMS ARE WELL KNOWN IN THE ART IN COMPUTER SCIENCE.

17          SO AS I MENTIONED, THINGS LIKE SYNONYM MATCHING, PARTIAL

18     MATCHING, YOU KNOW, THOSE ARE ALL WELL KNOWN CONCEPTS.

19               THE COURT:  IT SEEMS TO ME THAT BEST MATCH IS GOING

20     TO BE THE CONCLUSION OF HOW MANY OF THE INDIVIDUAL STEPS WERE

21     THE EXACT MATCH.

22               MR. PAK:  THAT'S RIGHT, YOUR HONOR.

23               THE COURT:  SO THIS IS AN EXACTNESS.

24          YOU KNOW, WHEN I LOOK BACK AT FIGURE 2, JUST BECAUSE A

25     VISUAL IS HELPFUL TO ME, I'VE GOT THIS AT THE FIRST LEVEL I'VE
```

1    GOT THESE WORDS THAT ARE, 26 IN THE FIGURE, AND IF I HAVE UDP,

2    THAT'S A TOKEN SEVEN.  BUT IF I HAVE UDX, IT'S NOT AN EXACT

3    MATCH AND IT'S NOT VALID.

4            MR. PAK:  IN THAT PARTICULAR EXAMPLE, YOUR HONOR.

5            THE COURT:  IN MY EXAMPLE.

6            MR. PAK:  IN YOUR EXAMPLE.  IN A DIFFERENT EXAMPLE, I

7    MAY ACTUALLY LOOK AT, SO FOR EXAMPLE IN A DIFFERENT PARSER

8    IMPLEMENTATION.

9            THE COURT:  SO UD COULD BE ENOUGH.

10           MR. PAK:  ABSOLUTELY.

11           THE COURT:  OKAY.  THANK YOU.

12           MR. PAK:  AND YOU COULD SAY LOOK, I THINK UD VERSUS

13   UDP, THAT'S CLOSE ENOUGH OR I MAY EVEN LOOK AT MULTIPLE TOKENS

14   FOR THE MATCHING.

15           THE COURT:  I SEE.

16           MR. PAK:  THIS IS ONLY ONE IMPLEMENTATION I'M LOOKING

17   AT ONE TOKEN AT A TIME.  I CAN LOOK AT MULTIPLE TOKENS AND SAY

18   THE MIDDLE ONE IS SLIGHTLY DIFFERENT BUT THE OTHER TWO MATCH

19   BECAUSE I HAVE OFTEN TIMES MULTIPLE COMMAND --

20           THE COURT:  OKAY.  GOT IT.

21           MR. PAK:  SO I THINK THAT IS THE -- AND AGAIN I WILL

22   JUST REMIND THE COURT YOUR HONOR ON PAGE 76, THE PATENTEE MADE

23   IT CLEAR THAT HIS INVENTION IS NOT LIMITED TO THESE

24   EMBODIMENTS.

25       AND THIS IS VERY DIFFERENT THAN THE KIND OF CASES WHERE YOU

1    SAY, THE POINT OF THE INVENTION IS X, Y, Z, AND WE ARE TALKING

2    ABOUT STATEMENTS OF THE INVENTION AND THAT'S NOT THE CASE HERE.

3            THE COURT:  OKAY.

4            MR. KRISHNAN:  SO YOUR HONOR, I THINK THERE ARE TWO

5    ISSUES HERE AND THEY ARE PROBABLY TEED UP BY MR. PAK.

6        THE FIRST ISSUE IS WHETHER BEST MATCH IS LIMITED TO A

7    SITUATION WHERE THERE'S ONLY AN EXACT MATCH CAPABILITY, RIGHT.

8        SO TO FLUSH THAT OUT A LITTLE BIT, IMAGINE THAT A PARSER

9    COULD ONLY DEAL WITH EXACT MATCHES, IT COULD NOT DEAL WITH THE

10   SORT OF INVALID COMMANDS.

11       THAT WOULD NOT BE A BEST MATCH ALGORITHM, THAT WOULD BE A

12   MATCHING ALGORITHM, BECAUSE WHEN THERE IS ONLY ONE POSSIBLE

13   MATCH, THAT'S NOT DOING A BEST MATCH ALGORITHM.

14       AND I THINK THAT'S ONE OF THE KEY ISSUES HERE.  THE CLAIM

15   LANGUAGE WOULDN'T BE BEST MATCH IF ALL IT HAD TO DO IS TO FIND

16   A MATCH.

17           THE COURT:  WELL, YOUR CONSTRUCTION SEEMS TO GO

18   DIRECTLY AT ODDS WITH THAT BECAUSE YOU ARE SAYING THAT BEST

19   MATCH MEANS EXACT MATCH.

20           MR. KRISHNAN:  AND -- AND THAT'S THE POINT.

21       IN OUR CONSTRUCTION, AND THE REASON WHY ITS CONSTRUCTION IS

22   SO LONG WAS BECAUSE IT'S VERY DIFFICULT TO FIND A WAY TO SAY

23   THIS, RIGHT.

24           THE COURT:  I UNDERSTAND THAT.

25           MR. KRISHNAN:  BUT IT'S THAT IT HAS TO BE ABLE TO DO

1    BOTH.  IF IT CAN ONLY DO THE FIRST THING, IF IT CAN ONLY DEAL

2    WITH AN EXACT MATCH SITUATION, THEN IT'S NOT PERFORMING A BEST

3    MATCH ANALYSIS.  IT HAS TO BE ABLE TO IN THE ABSENCE OF AN

4    EXACT MATCH.

5         THE COURT:  BUT SEE, YOU'RE SAYING, THE WAY YOU

6    CONSTRUCT THIS IS THAT, AND AGAIN, I TAKE A GENERIC COMMAND

7    WITH THREE PIECES TO IT.  AND YOU ARE BASICALLY SAYING A BEST

8    MATCH IS THAT WHEN THERE IS AT LEAST ONE PIECE, IT IS AN EXACT

9    MATCH.

10    AND YOU ARE READING "BEST" TO INCLUDE A CONGLOMERATION OF

11    EXACT MATCHES.  AND MR. PAK IS SAYING NO, THAT LIMITATION ISN'T

12    THERE.  CERTAINLY, IT COULD WORK THAT WAY, AND THAT MAY BE THIS

13    EMBODIMENT.  BUT THAT'S WHY, I MEAN, I SEE WHAT YOU'RE SAYING

14    HERE, CAPABLE OF -- IT'S CERTAINLY BEST MATCH DOESN'T EXCLUDE

15    EXACT MATCH.

16         MR. KRISHNAN:  THAT'S WHY WE HAD TO INCLUDE THE FIRST

17    PART BECAUSE THAT HAS TO BE THERE.  BUT WHEN THAT FIRST PART

18    ISN'T SATISFIED, WHEN SOMEONE HAS ENTERED A COMMAND THAT DOES

19    NOT HAVE AN EXACT MATCH IN THE PARSE TREE, THIS PARSE TREE HAS

20    TO BE ABLE TO DEAL WITH THAT.

21         THE COURT:  SO FIGURE 2 HAS TO BE ABLE TO DEAL WITH

22    IT, BUT WHERE IN THE SPECIFICATIONS DO I HAVE THAT LIMITATION?

23    WHY CAN'T THE BEST MATCH BE CONFIGURED TO DEAL WITH A PORTION

24    OF ONE OF THOSE UNITS?

25         MR. KRISHNAN:  I GUESS IF YOU'RE ASKING AS LONG AS

1    THERE'S ONE EXACT MATCH, HASN'T THE BEST MATCH CLAIM

2    LIMITATION --

3            THE COURT:  THAT'S WHAT YOU ARE SAYING.  THAT'S WHAT

4    YOU'RE SAYING AS LONG AS THERE'S ONE EXACT MATCH, THEN WE'VE

5    GOT A BEST MATCH.  IT DOESN'T REQUIRE ALL THREE TO EXACTLY

6    MATCH.

7            MR. KRISHNAN:  NO, NO, NO.  JUST TO CLARIFY, I'M NOT

8    TALKING AT ALL ABOUT MATCHING INDIVIDUAL WORDS, I'M TALKING

9    ABOUT THE WHOLE COMMAND, RIGHT.

10            THE COURT:  YES.

11            MR. KRISHNAN:  AND SO THIS PARSER AND THIS VALIDATING

12    STEP HAS TO BE ABLE TO DEAL WITH A WHOLE COMMAND THAT COMES IN

13    AND IS VALID.

14            THE COURT:  YES.

15            MR. KRISHNAN:  AND IT ALSO HAS TO BE ABLE TO DEAL

16    WITH A WHOLE COMMAND THAT COMES IN THAT IS NOT VALID.  AND IT'S

17    ONLY IN THAT LATTER CASE THAT IT'S PERFORMING A BEST MATCH.

18            THE COURT:  SURE.  WELL, I DON'T THINK THAT'S

19    REMARKABLE.

20            MR. KRISHNAN:  AND IT MAY BE THAT WE DON'T HAVE ANY

21    DISPUTE THERE.  BUT UNLESS YOU CONSTRUE THE TERM THIS WAY --

22            THE COURT:  THEN THE DISPUTE IS ABOUT WHAT IT MEANS

23    TO BE A VALIDATED COMPONENT.  THEN THAT'S WHAT WE DON'T KNOW.

24        IF YOU ARE SAYING A VALIDATED COMPONENT IS, AND I GUESS

25    THAT'S THE WORD WE SHOULD USE IS COMPONENT, THEN THE VALIDATED

1    COMPONENT IS A COMPONENT FOR WHICH THERE WAS AN EXACT MATCH.

2        THAT'S WHAT I THINK YOU ARE SAYING HERE OR WHAT -- BUT

3    THAT'S NOT, I DON'T SEE THAT, THAT'S NOT -- MR. PAK IS SAYING

4    THAT'S NOT -- THAT LIMITATION MAY BE EXEMPLIFIED BUT IT'S NOT

5    AN OVERARCHING LIMITATION OF THE PATENT.

6        MR. KRISHNAN:  SO IF WE ARE NOW IN THE SECOND HALF OF

7    THIS, IF WE ALL AGREE THAT THE BEST MATCH VALIDATING STEP HAS

8    TO BE ABLE TO DEAL WITH BOTH VALID AND INVALID COMMANDS, THAT'S

9    THE FIRST ISSUE I NEED TO ADDRESS.

10        I THINK AS LONG AS WE ARE ON THE SAME PAGE THERE, THERE'S A

11    QUESTION OF HOW SPECIFIC WE HAVE TO GET WHEN YOU ARE DESCRIBING

12    THE BEST MATCH.  SO ONCE WE ARE TO THAT ISSUE, I THINK IT'S A

13    SEPARATE ISSUE.  AND HERE'S OUR POSITION ON THAT.

14        THIS PATENT ONLY DISCLOSES ONE POSSIBLE BEST MATCH

15    ALGORITHM.  I UNDERSTAND THAT THEY HAVE CLAIMED, BROADLY, BEST

16    MATCH, BUT THEY HAVE ONLY DISCLOSED ONE ALGORITHM.

17        AND SO THE PROBLEM WITH THAT IS THAT TO CONSTRUE THE CLAIM

18    BROADLY TO COVER EVERY POSSIBLE BEST MATCH ALGORITHM WOULD

19    CONTRADICT THE LAW THAT SAYS THAT THE CLAIMS HAVE TO BE

20    CONSTRUED TO THE MATCH THE SCOPE OF THE INVENTION.

21        AND I GUESS THE EXAMPLE THAT I WOULD GIVE ON THIS WOULD BE,

22    IMAGINE I CAME UP WITH AN ALGORITHM TO IDENTIFY THE BEST LAWYER

23    AND I SAID MY ALGORITHM IS THIS, I TAKE THE LAWYER WITH THE

24    LOWEST BAR MEMBER.  WHOEVER HAS BEEN PRACTICING THE LONGEST IS

25    MY BEST LAWYER.  THAT'S MY BEST ALGORITHM.  AND I WANT A PATENT

```
 1    ON ALL POSSIBLE ALGORITHMS FOR FINDING THE BEST LAWYER.

 2              THE COURT:  RIGHT.

 3              MR. KRISHNAN:  THERE COULD BE ALL SORTS OF WAYS FOR

 4    FINDING THE BEST LAWYER.  I'VE DISCLOSED ONE METHOD, BUT I WANT

 5    TO CLAIM ALL OF THEM.

 6         THAT'S THE ISSUE WE HAVE.  SO THAT'S WHY WHEN WE TALK

 7    ABOUT, KIND OF WHAT I'M SEEING AS ISSUE NUMBER TWO, WHEN WE ARE

 8    TALKING ABOUT HOW YOU DEFINE THAT BEST MATCH CAPABILITY, WE

 9    THINK THAT IT HAS TO BE LIMITED TO THE ALGORITHM --

10              THE COURT:  SO YOU ARE SAYING THIS ALGORITHM IS --

11    TAKES THE COMPONENTS OF THE GENERIC COMMAND AND STARTS AT THE

12    BEGINNING AND IT MAKES, BUT FOR EACH COMPONENT THERE HAS TO BE

13    AN EXACT MATCH IN ORDER TO VALIDATE.  ARE YOU NOT SAYING THAT

14    BECAUSE I DON'T KNOW WHAT YOU MEANT BY EXACT MATCH.  EXACT IS

15    FOR THE ENTIRE GENERIC COMMAND.

16              MR. KRISHNAN:  THAT'S RIGHT.

17              THE COURT:  OKAY.

18              MR. KRISHNAN:  AND BEST MATCH IS ALSO FOR THE ENTIRE

19    COMMAND.

20              THE COURT:  TRUE.

21         BUT -- SO WHAT MR. PAK SUGGESTS IS THAT YOU HAVE BROUGHT

22    INTO THIS CONSTRUCTION, SOMETHING THAT BELONGS IN THE

23    DISCUSSION ELSEWHERE MAYBE THE MEANS PLUS FUNCTION.  WHAT'S

24    YOUR RESPONSE TO THAT?

25              MR. KRISHNAN:  RIGHT.
```

1    SO IT'S THE CASE LAW THAT -- THIS CASE LAW.  THERE ARE TWO

2    CASES WE BOTH CITED IN OUR BRIEF AND THERE ARE OTHERS IN THIS

3    VEIN THAT CLAIM CONSTRUCTION SHOULD NOT ENLARGE WHAT IS

4    PATENTED BEYOND WITH WHAT THE INVENTOR HAS DESCRIBED AS THE

5    INVENTION.

6        THAT'S WHAT IS GOING ON HERE.  THEY'VE IDENTIFIED ONE

7    POSSIBLE ALGORITHM FOR IDENTIFYING A BEST MATCH AND THEY ARE

8    TRYING TO CLAIM ALL POSSIBLE BEST MATCH ALGORITHMS.  AND THERE

9    COULD BE NUMEROUS DIFFERENT TYPES.

10       SO THE DEMAND MACHINE CORP CASE ALSO SAYS THAT CLAIMS

11   CANNOT BE OF BROADER SCOPE THAN THE INVENTION THAT IS SET FORTH

12   IN THE SPECIFICATION.

13       SO WHILE THAT IS A STRICT RULE WHEN YOU GET TO MEANS PLUS

14   FUNCTION CLAIMS, IT IS ALSO A GENERAL PRINCIPLE OF CONSTRUCTION

15   FOR NON-MEANS PLUS FUNCTION CLAIMS AS WELL THAT YOU CAN'T JUST

16   CLAIM MORE BROADLY THAN THE THING THAT YOU'VE ACTUALLY

17   INVENTED.

18            THE COURT:  SURE.  WELL, THEN YOU ARE CLAIMING AN

19   IDEA.

20            MR. KRISHNAN:  RIGHT.  AND THAT'S REALLY WHAT IT IS,

21   THE BEST MATCH IDEA.

22       AND FRANKLY, THE POINT THAT YOU BROUGHT UP ABOUT

23   SUBJECTIVITY IS AN ISSUE HERE BECAUSE IMAGINE NOW THAT YOU ARE

24   NOT JUST TALKING ABOUT MATCHING THE LAST VALIDATED ELEMENT OF

25   THAT ALGORITHM, YOU ARE JUST SAYING ANY POSSIBLE ALGORITHM

1    WHERE THERE'S BEEN A BEST MATCH, HOW ARE YOU GOING TO KNOW

2    WHICH IS THE BEST MATCH?  I MEAN, THERE'S NO STANDARDS TO APPLY

3    OUTSIDE OF THE STRUCTURE OF THIS PARTICULAR ALGORITHM AS TO

4    WHICH IS THE BEST MATCH.

5         THE COURT:  WELL, MR. PAK, YOU KNOW, I DON'T THINK

6    THIS CONSTRUCTION IS INCORRECT IN READING THIS PATENT, BECAUSE

7    THIS LAST VALIDATED COMPONENT SEEMS TO BE AT THE HEART OF HOW

8    THIS WORKS.

9         MR. PAK:  LET ME RESPOND YOUR HONOR IN TWO WAYS.

10    ONE IS ALL THESE CASES THAT MR. KRISHNAN SHOWED YOU ARE

11    ABOUT STATEMENTS OF THE INVENTION.

12    EVERY ONE OF THOSE CASES IS TALKING ABOUT SITUATIONS WHERE

13    THE PATENTEE SAYS, MY INVENTION IS X, Y, Z.  WE'VE SHOWN YOU

14    THAT EVEN IN THE EMBODIMENTS, I'M NOT DISAGREEING WITH

15    YOUR HONOR THAT FACTUALLY SPEAKING, IS WHAT MR. KRISHNAN

16    DESCRIBING A FACTUALLY ACCURATE DESCRIPTION OF AN EMBODIMENT?

17    THAT MIGHT BE TRUE.  BUT THAT HAS NO BEARING ON THE CLAIM

18    CONSTRUCTION OF A LARGER PHRASE WHERE YOU DON'T SEE THE

19    PATENTEE SAYING THAT IS MY INVENTION.  MY INVENTION IS THIS

20    EMBODIMENT.  THE PATENTEE NEVER SAID THAT.

21    IN FACT, THE LAW SAYS, THIS IS THE AKAMAI CASE WE CITED

22    YOUR HONOR, AKAMAI V. LIMELIGHT, FEDERAL CIRCUIT 2015, EVEN

23    WHERE A PATENT DESCRIBES ONLY A SINGLE EMBODIMENT, CLAIMS WILL

24    NOT BE READ RESTRICTIVELY UNLESS THE PATENTEE HAS DEMONSTRATED

25    A CLEAR INTENTION TO LIMIT THE CLAIM SCOPE USING WORDS OR

1    EXPRESSIONS OF MANIFEST EXCLUSION OR RESTRICTION.

2           THE COURT:  WELL, SOMETIMES CLAIMS CONSTRUCTION TAKES

3    YOU OUT OF THE FRYING PAN AND INTO THE FIRE.  SO THAT COULD

4    HAPPEN.

5           MR. PAK:  SO WHAT I'M GETTING AT, YOUR HONOR, IS WE

6    ARE DEALING WITH VERY SIMPLE WORDS HERE.  WE ARE TALKING ABOUT

7    TWO CONCEPTS, VALIDATION AND BEST MATCH.

8        YOUR HONOR, THE BEST MATCH CONCEPT IS NOT SOMETHING THAT WE

9    AS LAY PEOPLE NEED TO CONSTRUE, WHAT WE -- AS WE'VE TALKED

10   ABOUT BEFORE, ALL OF THESE WORDS HAVE VERY SPECIFIC MEANING TO

11   THOSE SKILLED IN THE ART.

12       THEIR EXPERT IS GOING TO TALK ABOUT ALL OF THE DIFFERENT

13   WAYS IN WHICH BEST ALGORITHMS HAVE BEEN KNOWN IN SOFTWARE

14   PROGRAMMING.  SO WILL OUR EXPERT.

15       THERE ARE LOTS OF WAYS IN WHICH YOU CAN DO BEST MATCHING.

16   WE'VE IDENTIFIED SOME ON THE RECORD FOR YOU.  BUT THE POINT OF

17   THAT IS IRRELEVANT.  WHAT WE ARE DEALING WITH IS DO WE NEED TO

18   TAKE THIS FURTHER STEP IN THIS CLAIM LANGUAGE AND SAY, I'M ONLY

19   NOT GOING TO REPLACE THE WORD "BEST" WITH "EXACT" BUT NOW I'M

20   GOING TO TALK ABOUT WHAT HAPPENS WHEN YOU DON'T VALIDATE.

21       BUT THAT'S NOT WHAT THIS CLAIM ELEMENT IS ABOUT.  THIS

22   CLAIM ELEMENT IS SIMPLY ABOUT VALIDATING BY IDENTIFYING AT

23   LEAST ONE BEST MATCH OF THE COMPONENT.  THAT'S IT.

24       SO ALL OF THIS DISCUSSION OF THE ALGORITHM GOING INTO WHAT

25   HAPPENS WHEN YOU DON'T HAVE AN EXACT MATCH, WHAT HAPPENS TO

1       VALIDATE BEYOND THAT IS NOT COVERED IN THE CLAIM LANGUAGE.

2                  THE COURT:  SO THEN YOU ARE TELLING ME BEST MATCH

3       DOESN'T HAVE TO HAVE ANY BOUNDARIES.

4                  MR. PAK:  NO, YOUR HONOR, IT HAS SPECIFIC BOUNDARIES

5       IN THE CONTEXT OF COMPUTER SCIENCE.  WE ARE TALKING ABOUT --

6                  THE COURT:  OKAY.  ALL RIGHT.

7                  MR. PAK:  AND THAT'S WHY IT'S A TECHNICAL --

8                  THE COURT:  I SEE.

9                  MR. PAK:  SO THIS ISN'T ABOUT, AGAIN, BY GENERIC WE

10      ARE NOT TALKING ABOUT WHAT IS A BEST MATCH TO MR. KRISHNAN OR

11      MR. PAK, WE ARE TALKING ABOUT WHAT IS A BEST MATCH TO COMPUTER

12      SCIENTISTS WITH TWO YEARS OF PROGRAMMING EXPERIENCE.  THEY WILL

13      KNOW BEST MATCH MEANS YOU COULD RUN THESE, WHETHER IT'S SYNONYM

14      MATCHING, AUTO COMPLETION, ALL KINDS OF ALGORITHMS.

15          THAT RECORD ISN'T HERE, WE DON'T NEED IT TO BE HERE.  WE

16      ARE GOING TO GET TO IT AT THE SUMMARY JUDGEMENT STAGE AND

17      VALIDITY.

18                  MR. KRISHNAN:  YOUR HONOR, THAT'S THE ONLY POINT I

19      EXPRESSED.  THE ISSUE OF OUR PRESENTATIONS BY MR. PAK THAT BEST

20      MATCH IS SOME WELL-UNDERSTOOD --

21                  THE COURT:  BUT I DON'T HAVE THAT EVIDENCE, YOU'RE

22      RIGHT.

23                  MR. KRISHNAN:  YEAH, SO THAT WAS THE MAIN POINT.

24                  MR. PAK:  ALL RIGHT.

25          SO YOUR HONOR, WITH THAT I WOULD TURN TO OUR LAST CLAIM

1    ELEMENT FOR THIS PATENT.  AND I THINK THIS IS PRETTY

2    STRAIGHTFORWARD.

3            THE COURT:  I LIKE TO HEAR YOU SAY THAT, BUT THE

4    OPPOSITION WAS ANYTHING BUT STRAIGHTFORWARD.

5            MR. PAK:  AND THE REASON WHY I SAY THAT, YOUR HONOR,

6    IS TWO FOLD.

7        ONE IS WE DO HAVE THIS COMPLICATED CLAIM LANGUAGE IN TERMS

8    OF THE MEANS FOR.  AND AS YOU CAN SEE, IN THE MEANS FOR

9    LANGUAGE, WE HAVE MEANS FOR VALIDATING A GENERIC COMMAND

10   RECEIVED FROM A USER.  AND THEN YOU TALK ABOUT THE VALIDATING

11   MEANS CONFIGURE FOR SPECIFYING VARIOUS THINGS.

12       WE LOOK AT THE LAW AND MAYBE THERE'S AN HONEST LEGAL

13   DISPUTE HERE, I HAVEN'T SEEN ANY CASES THAT ARE DIRECTLY ON

14   POINT.  WE HAVE CASES THAT WE'VE SEEN, THAT'S THE WHEREBY

15   CLAUSES THAT WE CITED FOR YOUR HONOR WHERE IT SAYS IF YOU HAVE

16   A FUNCTION AND THEN YOU SAY WHEREBY, BY PERFORMING THAT

17   FUNCTION, YOU GET THE FOLLOWING THINGS.  THAT THAT FUNCTION,

18   THOSE WHEREBY ELEMENTS ARE NOT PART OF THE OVERALL FUNCTION.

19       THAT'S OUR VIEW.  NOW OBVIOUSLY ARISTA HAS A DIFFERENT

20   VIEW, THEY WANT TO COMPARTMENTALIZE EACH OF THESE FUNCTIONS.

21       AT THE END OF THE DAY, I THINK IT COMES DOWN TO WHETHER YOU

22   LOOK AT IT FROM A FUNCTION PERSPECTIVE, FROM OUR PERSPECTIVE,

23   SAYING THIS IS A ONE LARGE FUNCTION AND THEN THIS IS A WHEREBY

24   RESULT, OR THEIR PERSPECTIVE OF HAVING DIFFERENT FUNCTIONS.

25       I DON'T THINK FUNDAMENTALLY CHANGES THINGS, YOUR HONOR,

1    BECAUSE THIS IS ABOUT A MEANS PLUS FUNCTIONS CLAIM ELEMENT.

2         SO AT THE END OF THE DAY, WE ARE STILL GOING BACK TO THE

3    SPECIFICATION, UNLIKE THE METHOD CLAIM, AND TRYING TO FIGURE

4    OUT WHAT IS THE DISCLOSED STRUCTURE.  BECAUSE BY USING THE

5    MEANS PLUS FUNCTION LANGUAGE, THE PATENTEE IS TELLING THE WORLD

6    UNLIKE OTHER TYPES OF LANGUAGE, I DO THIS TIME WANT TO RESTRICT

7    MY CLAIM SCOPE TO WHAT IT IS ACTUALLY IN THE PATENT IN TERMS OF

8    DIFFERENT EMBODIMENTS.

9         SO I THINK IT'S A REALLY INTERESTING LEGAL ISSUE, I'M NOT

10   SURE IT'S GOING TO HAVE A LOT OF IMPACT IN OUR CASE, BECAUSE AT

11   THE END OF THE DAY, REGARDLESS OF HOW YOU DEFINE IT WHETHER

12   IT'S ONE OR MULTIPLE FUNCTIONS, WE ARE GOING TO GO BACK TO, IS

13   WHAT WE HAVE ACCUSED SIMILAR TO THE STRUCTURE THAT'S IDENTIFIED

14   OR NOT.

15        AND SO ON THAT ISSUE, ON SLIDE 79, YOUR HONOR, WE HAVE

16   PARSER, OUR STRUCTURE TIES THE MEANS FOR LANGUAGE TO FIGURE 2

17   WHICH IS THE PARSER 14.  HAS THE COMMAND WORD TRANSLATION

18   TABLE, THESE ARE ALL THE DIFFERENT STRUCTURES.  THE COMMAND

19   PARSE TREE 22.

20        AND WE ALSO DESCRIBE IN OUR CITATION COLUMN 3, LINES 36 TO

21   61.  AND THAT'S IMPORTANT, YOUR HONOR, BECAUSE IF YOU LOOK

22   AT THEIR -- THEY ONLY TALK ABOUT FIGURE 3, BUT THEY DON'T

23   REALLY CITE ANY SPECIFICATION SECTION.

24        SO IT'S REALLY HARD TO UNDERSTAND, ARE THEY LIMITING

25   THEMSELVES WITH THIS NARRATIVE DESCRIPTION TO THE ACTUAL

1    DISCLOSURE IN THE PATENT, OR IS IT SOMETHING DIFFERENT.

2        I DON'T KNOW WHY THEY ARE EXCLUDING FIGURE 2.  THEY SEEM TO

3    BE EXCLUDING FIGURE 2 FROM THEIR PROPOSED STRUCTURE.  FIGURE 2

4    IS THE ACTUAL STRUCTURE.

5        SO THIS IS THE VERY THING THAT MR. KRISHNAN WAS POINTING TO

6    BEFORE ABOUT THE BEST MATCH ALGORITHM.  SO HERE PARSER 14 IS

7    THE ACTUAL STRUCTURE THAT'S BEING CONFIGURED.  IT DOES THESE

8    THINGS.  AND HERE IT SAYS, IN PARTICULAR, THE PARSER 14

9    RECURSIVELY TRAVERSES THE COMMAND PARSE TREE FOR EACH COMMAND

10   WORD TO IDENTIFY THE BEST MATCH FOR THE GENERIC COMMAND.  AND

11   IF ONLY A PORTION OF THE GENERIC COMMAND IS IDENTIFIED AS

12   VALID, THE PARSER SELECTS THE COMMAND KEY.

13       WE THINK THAT BELONGS HERE AS PART OF THIS MEANS PLUS

14   FUNCTION LANGUAGE.  WE HAVE IDENTIFIED FIGURE 2.  TO THE EXTENT

15   FIGURE 3 PROVIDES FURTHER ELABORATION OR A DIFFERENT

16   EMBODIMENT, THEN WE ARE NOT OPPOSED TO INCLUDING FIGURE 3 AS AN

17   ALTERNATIVE EMBODIMENT, BUT WE THINK FIGURE 2 HAS THE DATA

18   STRUCTURE.

19           THE COURT:  YOU ARE SAYING FIGURE 3 IS AN ALTERNATIVE

20   STRUCTURE.  THAT'S NOT WHAT YOU SAID IN YOUR PAPERS, YOU SAID

21   IT DIDN'T EVEN BELONG IN IT.

22           MR. PAK:  ALL I'M SAYING IS IF YOUR HONOR IS

23   ULTIMATELY CONVINCED BY WHAT MR. KRISHNAN SAYS ON THE RELEVANCE

24   OF IT, WE ARE NOT OPPOSED TO INCLUDING IT AS AN ALTERNATIVE

25   DISCLOSURE BUT WE THINK FIGURE 2 GIVES YOU THE COMPLETE

1    STRUCTURE THAT IS NECESSARY FOR THIS CLAIM.

2          MR. KRISHNAN:  SO YOUR HONOR, I THINK THAT THERE ARE

3    TWO ISSUES HERE, THERE'S THE FUNCTIONS AND THE STRUCTURE AND ON

4    THE FUNCTIONS I ACTUALLY AGREE WITH MR. PAK THAT AT THE END OF

5    THE DAY IT'S NOT GOING TO MATTER VERY MUCH.

6          OUR POSITION IS, OF COURSE, THAT IF THERE ARE FUNCTIONS OR

7    SUB FUNCTIONS, THEY NEED TO BE CONCLUDED AS PART OF THE

8    SECTION 112 PARAGRAPH 6 ANALYSIS.  THERE'S NO EXCEPTION IN THE

9    CASE LAW FOR SUB FUNCTIONS.  AND HERE THE CLAIM LAYS OUT THE

10   FUNCTION AND LAYS OUT MORE PRECISELY WHAT THAT FUNCTION IS

11   DOING.  SO WE THINK THAT ALL FOUR OF THOSE THINGS HAVE TO BE

12   FUNCTIONS.

13         BUT AGAIN, IT'S NOT GOING TO MATTER ALL THAT MUCH, WHAT'S

14   REALLY GOING TO MATTER AND WHEN WE GET TO THE STRUCTURE.  AND

15   THAT'S WHERE THE HEART OF THE DISPUTE IS GOING TO LIE.  WE HAVE

16   NO INTENTION TO EXCLUDE FIGURE 2 FROM OUR PROPOSAL.  WE GAVE

17   WHAT WE THOUGHT WAS A VERBAL DESCRIPTION OF FIGURE 2.  BUT I

18   THINK THAT FIGURE 2, THE PARSER IN FIGURE 2 IN COLUMN 3, LINES

19   36 TO 61 AS REFLECTED IN CISCO'S CONSTRUCTION, SHOULD BE PART

20   OF THE STRUCTURE.  BUT THAT'S ONLY PART OF THE STRUCTURE.  THE

21   REAL ISSUE IS WHETHER FIGURE 3, AND THAT'S COLUMN 3, LINE 62 TO

22   COLUMN 4, LINE 54 SHOULD ALSO BE INCLUDED.

23         THE COURT:  MR. PAK SAYS HE DOESN'T OBJECT TO THAT.

24         MR. KRISHNAN:  AND IF HE DOESN'T OBJECT TO THE

25   ALGORITHM --

1              THE COURT:  AND FIGURE 3 AS AN ALTERNATIVE.

2              MR. KRISHNAN:  -- THEN I THINK WE ARE ON THE SAME

3       PAGE.

4              THE COURT:  SO YOU ARE SUGGESTING THAT IT NEEDS TO

5       BE -- YOU ARE STILL ASKING FOR THE LENGTHY STRUCTURE, THE

6       LENGTHY CONSTRUCTION THAT DEALS WITH THE SUB FUNCTIONS.  BUT

7       YOU WOULD NOT OBJECT TO FIGURE 2 BEING EXPRESSLY INCLUDED.  AND

8       MR. PAK DOESN'T DISAGREE WITH FIGURE 3.

9              MR. KRISHNAN:  YES.  SO I THINK WE COULD SHORTEN ALL

10      OF THIS.

11             THE COURT:  CAN YOU SUBMIT TO ME THE REWRITE ON THIS

12      ONE?

13             MR. KRISHNAN:  JUST SO THAT I CAN MAKE MY POSITION

14      CLEAR, IT WOULD BE THE PARSER OF FIGURE 2, ALONG WITH THE

15      ALGORITHM OF FIGURE 3, AND THE CORRESPONDING TEXT.

16             MR. PAK:  WE DO NEED TO TALK ABOUT IT, YOUR HONOR.

17          BECAUSE THE WAY I SEE, AS WE LAID IT OUT, FIGURE 3 PROVIDES

18      AN ALTERNATIVE OF FURTHER EMBODIMENT.  FIGURE 2 ALREADY HAS IN

19      IT, AS WE HAVE SHOWN YOU, AN ALGORITHM FOR BEST MATCH.  THAT'S

20      WHAT MR. KRISHNAN WAS TRYING TO ARGUE BEFORE.

21          WE ARE FINE WITH INCLUDING FIGURE 3, IT SHOULD BE FIGURE 2

22      ACCOMPANYING THE DESCRIPTION IN THE SPECIFICATION, AS AN

23      ALTERNATIVE EMBODIMENT, FIGURE 3 WITH CORRESPONDING

24      DESCRIPTION.

25             THE COURT:  DOES THAT WORK, IN CONCEPT?

1            MR. KRISHNAN:  IT SOUNDS LIKE HE'S SAYING "OR" AND

2    THAT'S NOT -- THOSE ARE THE SAME EMBODIMENT.

3            FIGURE 2 IS JUST THE PICTURE OF WHAT THE DATA STRUCTURES,

4    THE TREES LOOK LIKE.  BUT THE WAY YOU OPERATE THAT TREE IS BY

5    USING THE ALGORITHM OF FIGURE 3.  IT'S ALL ONE EMBODIMENT.  AND

6    THAT MUCH IS CLEAR.  FIGURE 2.

7            THE COURT:  APPARENTLY NOT.

8            MR. PAK:  WE WILL AGREE.

9            MR. KRISHNAN:  AND I WILL TELL YOU WHY.  IT'S BECAUSE

10   FIGURE 2, STANDING BY ITSELF, IS JUST A PARSE TREE THAT HOLDS

11   DATA.  WALKING THROUGH FIGURE 2, LET ME -- LET'S GO TO SLIDE

12   47.

13           SO THIS FIGURE, FOR INSTANCE, STANDING BY ITSELF IS JUST A

14   PARSE TREE.  BUT HOW DO YOU WORK THROUGH IT, HOW DO YOU KNOW TO

15   GO TO THE SUBSEQUENT ELEMENT THAT CORRESPONDS TO A PARTICULAR

16   TOKEN COMMAND KEY PAIR?

17           ALL OF THAT INFORMATION ABOUT HOW YOU ACTUALLY DEAL WITH

18   THIS PARSE TREE IS GIVEN IN FIGURE 3.

19           SO THERE ARE JUST DIFFERENT SIDES OF THE SAME EXPLANATION,

20   TWO DIFFERENT WAYS TO EXPLAIN THE SAME CONCEPT.  BUT IT'S ALL

21   JUST ONE EMBODIMENT.

22           MR. PAK:  YOUR HONOR, OBVIOUSLY WE DISAGREE.

23           OUR POSITION IS NOT THAT FIGURE 2 IS THE ONLY THING.  IT'S

24   THAT COLUMN 3, LINE 36 ON, AND IN THAT PARTICULAR SECTION

25   TALKING ABOUT FIGURE 2, IT SAYS, TO IDENTIFY THE BEST MATCH YOU

1    DO THE FOLLOWING STEPS.

2         THAT'S THE ALGORITHM.  SO FROM OUR PERSPECTIVE, AN

3    ALGORITHM DOESN'T HAVE TO APPEAR IN A NICE FLOW CHART, IT CAN

4    BE DESCRIBED IN WORDS.  THAT'S THE ALGORITHM THAT'S DISPLAYED

5    IN FIGURE 2 DESCRIBED IN CONNECTION WITH FIGURE 2, AND THIS IS

6    COLUMN 3, LINE 36 THROUGH 61.

7         THAT IS THE ALGORITHM.  IT TEACHES YOU HOW TO WALK THROUGH

8    THE PICTURE IN FIGURE 2 TO DEAL WITH BEST MATCHES.  IN THIS

9    PARTICULAR EMBODIMENT --

10             THE COURT:  AND THAT'S AT COLUMN 3, LINE 36 --

11             MR. PAK:  TO 61, YOUR HONOR.

12             THE COURT:  TO 61.

13             MR. PAK:  SO WE THINK YOU CAN HAVE FIGURE 3 IF YOU

14   WANT, BUT THAT'S AN ALTERNATIVE FURTHER EMBODIMENT.

15             THE COURT:  THAT'S A DIFFERENT ALGORITHM.

16             MR. PAK:  THAT'S A DIFFERENT ALGORITHM.

17             THE COURT:  OKAY.  I UNDERSTAND YOUR DISPUTE.

18             MR. KRISHNAN:  OUR POINT IS JUST THAT COLUMN 3, LINES

19   36 TO 61 STANDING ALONE, DON'T DESCRIBE HOW THE ALGORITHM WORK.

20        IT WOULDN'T WORK IF YOU ONLY HAD THAT INFORMATION, YOU NEED

21   ADDITIONAL INFORMATION A PERSON OF ORDINARY SKILL IN THE ART

22   WOULD NEED ADDITIONAL FOR THIS THING TO EVEN WORK.

23             THE COURT:  OKAY.  ALL RIGHT.

24             MR. PAK:  OKAY.  WE ARE ON TO XML.

25             THE COURT:  OKAY.  WE CAN LEAVE THE LAST TERM BEHIND

1    AND MOVE ON.  ALL RIGHT.  SO NOW WE ARE GOING TO TALK ABOUT THE

2    '886.

3            MR. PAK:  ABOUT THE '886 PATENT.

4        SO WE HAVE A NUMBER OF TERMS, BUT I THINK MOST OF THE

5    DEBATE IS GOING TO BE ABOUT THIS XML, THE EXTENSIBLE MARKUP

6    LANGUAGE TERM THAT WE HAVE.

7        A FEW THINGS, YOUR HONOR, THE TERM AS IT APPEARS IN THE

8    PATENT CLAIM, IS AN EXTENSIBLE MARKUP LANGUAGE, AND IT HAS THE

9    PARENTHESES XML SO I THINK THAT'S IMPORTANT FOR US TO

10   UNDERSTAND IMMEDIATELY THAT THE TERM WE ARE CONSTRUING IS AN

11   EXTENSIBLE MARKUP LANGUAGE PARENTHESES XML.

12           THE COURT:  AND I GUESS REALLY THIS COMES DOWN TO

13   WHAT DOES THE PARENTHESES XML MEAN.

14           MR. PAK:  ABSOLUTELY.

15       IF YOU LOOK AT THE OTHER COMPONENTS, THE EXTENSIBLE MARKUP

16   LANGUAGE, IT'S CLEAR IN THE RECORD NOW THAT EACH OF THOSE TERMS

17   HAVE SPECIFIC MEANING IN THE CONTEXT COMPUTER SCIENCE WHERE

18   DR. ALMEROTH PROVIDED A DEFINITION AND GAVE EXAMPLES OF THAT.

19   SO THAT'S CLEAR.

20       THE REAL IS DID THE PATENTEE, BY INCLUDING THE PARENTHESES

21   XML, AFTER SAYING AN XML MARK UP LANGUAGE, SOMEHOW TRY TO

22   RESTRICT THAT MEANING TO A PARTICULAR VERSION OR VERSIONS

23   THAT'S BEEN RATIFIED OR PUBLISHED BY THIS ONE PARTICULAR

24   STANDARD SETTING ORGANIZATION, W3C.

25           THAT'S THE ISSUE, YOUR HONOR.

1    THE COURT:  THERE'S NOTHING IN THE PATENT THAT

2  ANSWERS THIS QUESTION FOR ME.

3    MR. PAK:  EXCEPT THE CLAIM LANGUAGE.

4    THE COURT:  WELL, THE CLAIM LANGUAGE.  BUT THERE'S

5  NOTHING ELSE IN THE LEXICOGRAPHY OF THE PATENT THAT HELPS ME

6  HERE.

7    MR. PAK:  SO LET'S START WITH THE CLAIM LANGUAGE,

8  YOUR HONOR.  THIS IS CLAIM ONE OF THE '886 PATENT.

9    SO THERE'S A LOT, ACTUALLY, ON THE WORD "AN," IT'S THE

10  MODIFIER.  IT TALKS ABOUT AN EXTENSIBLE MARKUP LANGUAGE.  IT

11  DOESN'T SAY "THE" OR ELIMINATE THAT PREFIX.  THE ARTICLE "AN"

12  IS QUITE IMPORTANT HERE BECAUSE THE OTHER CLAIM TERM,

13  YOUR HONOR, THAT APPEARS IMMEDIATELY BEFORE THIS IS A COMMAND

14  LINE PARSER.  THIS IS ON SLIDE 86 THAT WE HAVE ON THE SCREEN.

15    THE COURT:  UH-HUH.

16    MR. PAK:  SO IN THE SAME CLAIM THAT WE ARE ARGUING

17  ABOUT FOR EXTENSIBLE MARKUP LANGUAGE, WE HAD THE PATENTEE USING

18  A VERY SIMILAR SYNTAX SAYING A COMMAND LINE INTERFACE AND THEN

19  HE PUTS CLI IN PARENTHESES.

20    SO WHAT'S CRITICAL HERE, THERE'S NO DOUBT THE PATENTEE DID

21  NOT WANT TO LIMIT THE CLI TO THE SPECIFIC CISCO CLI COMMANDS

22  THAT WERE INCLUDED AS EXAMPLES IN THE PATENT.  BECAUSE THERE

23  WOULD BE ONLY INFRINGEMENT BY THAT PARTICULAR VERSION OF

24  CISCO --

25    THE COURT:  SO I'M GOING TO SHORT STOP THIS A LITTLE

1    BIT BECAUSE I WANT TO DRAW YOUR ATTENTION TO COLUMN 3, LINE 26

2    THROUGH 30 WHICH THREW ME OFF HERE, OR TOWARD THE DEFENSE.

3            MR. PAK:  YOUR HONOR, LET ME GRAB THAT PATENT.

4            THE COURT:  AND THEN I'M GOING TO REFER YOU FURTHER

5    DOWN THE PAGE AS WELL OR FURTHER DOWN THE COLUMN.

6            MR. PAK:  OKAY.  AND WHICH PARAGRAPH?

7            THE COURT:  I'M LOOKING AT COLUMN 3, AND I'M LOOKING

8    AT LINE 26 THROUGH 29.

9            MR. PAK:  YES.

10            THE COURT:  AND THEN I WILL REFER YOU TO LINE 50

11    THROUGH 53 AS WELL.

12            MR. PAK:  YES.

13            THE COURT:  SO I HAVE TO DEAL WITH THAT BECAUSE THAT

14    TALKS ABOUT OTHER THAN XML, NOT OTHER THAN AN XML OR THE

15    SELECTED XML, BUT JUST XML AS A KNOWN QUANTITY.

16            MR. PAK:  WE ACTUALLY -- WE THINK THIS PROVES OUR

17    POINT, THAT WHEN IT SAYS ANOTHER EMBODIMENT, THESE COMMAND

18    STATEMENTS CAN BE FORMATTED IN ACCORDANCE WITH ANOTHER SET OF

19    RULES AND BEHAVIORS OR PRESENTED IN A LANGUAGE OTHER THAN

20    CAPITAL XML AND CAPITAL CLI.

21            THE COURT:  I SEE.

22            MR. PAK:  SO WHAT THIS IS SAYING IS WHILE WE MAY HAVE

23    USED THE ABBREVIATION XML, IN THE PATENT SPECIFICATION WE TALK

24    ABOUT A PARTICULAR XML VERSION, OUR INVENTION IS NOT LIMITED TO

25    THAT PARTICULAR XML OR THAT PARTICULAR CLI THAT CISCO HAPPENED

1    TO USE AT THE TIME.

2        THAT'S WHY IF YOU GO TO THE CLAIM LANGUAGE, THE CLAIM

3    LANGUAGE DOESN'T JUST PICK UP XML AND CLI, IT SAYS A COMMAND

4    LINE INTERFACE, PARENTHESES CLI, AN EXTENSIBLE MARKUP LANGUAGE,

5    SO WE AGREE THIS IS HIGHLY RELEVANT, WE THINK THIS PROVES OUR

6    POINT THAT THE INVENTION ISN'T LIMITED TO THIS.

7        AND THEN IF YOU GO BACK TO THE POWERPOINT SLIDES QUICKLY,

8    WE HAVE VERY GOOD EVIDENCE FROM DR. ALMEROTH TALKING ABOUT

9    EXTENSIBLE MARKUP LANGUAGE AS BEING A TERM THAT IS KNOWN IN THE

10   FIELD.  HE TALKED ABOUT HTML ITSELF BEING EXTENSIBLE.

11       SO IF YOU THINK ABOUT THE FAMILY OF THINGS THAT MIGHT BE

12   EXTENSIBLE MARKUP LANGUAGE, THERE'S NO DISPUTE THAT YOU CAN

13   HAVE LOTS OF DIFFERENT MARKUP LANGUAGES THAT ARE EXTENSIBLE.

14       AND IN FACT, I THOUGHT THIS WAS MOST HELPFUL, IT'S A

15   COMPLICATED, SLIDE 91, BUT THE THING I WANTED TO POINT OUT TO

16   YOUR HONOR, THIS IS A HISTORICAL DOCUMENT, THIS IS NOT

17   SOMETHING DR. ALMEROTH CREATED, IT WAS COPYRIGHTED IN 2002, IT

18   WAS PART OF THE FIELD.

19       THIS REFLECTS HOW ENGINEERS AT THE TIME, AND AGAIN WE ARE

20   NOT TALKING ABOUT WHAT YOU OR I WOULD CONSIDER XML TO BE, BUT

21   WHAT WOULD A PROGRAMMER AT THAT TIME WOULD CONSIDER TO BE

22   EXTENSIBLE MARKUP LANGUAGE.  AND YOU CAN SEE, IT TALKS ABOUT

23   XML FAMILY OF SPECIFICATIONS.

24       SO IN 2002, WHAT A SOFTWARE ENGINEER WOULD HAVE UNDERSTOOD

25   WHEN YOU USE THE PHRASE XML WOULD HAVE BEEN THERE'S A WHOLE

1    FAMILY OF DIFFERENT SPECIFICATIONS THAT PEOPLE WOULD CONSIDER

2    TO BE PART OF THIS EXTENSIBLE MARKUP LANGUAGE FAMILY.

3        AND EVEN THIS I THOUGHT WAS ALSO VERY INTERESTING.  EVEN

4    THINGS THAT ACTUALLY USE THE CAPITAL XML THAT ARGUABLY WOULD BE

5    SOMETHING THAT THEY WOULD AGREE IS XML, IF YOU NOTICE ON THE

6    RIGHT, THIS IS IN BLACK IN THE MIDDLE.  AND IF YOU LOOK AT THE

7    LEGEND ON THE RIGHT, IT'S NOT A W3C SPECIFICATION.

8        SO WHAT THAT MEANS IS DIFFERENT STANDARDS AND ORGANIZATIONS

9    WERE CONSIDERING DIFFERENT TYPES OF EXTENSIBLE MARKUP

10   LANGUAGES, EVEN THOSE WHO USE XML.

11       AND THE LAST POINT I WILL MAKE ON THIS, YOUR HONOR, IS THE

12   SAME POINT I MADE ABOUT MANAGEMENT PROGRAMS.  IF YOU TIE THE

13   DEFINITION OF XML TO ONLY THOSE VERSIONS THAT ARE RATIFIED BY A

14   PARTICULAR INDUSTRY STANDARD, IT RAISES ALL KINDS OF QUESTIONS.

15       WHAT HAPPENS IF THE INDUSTRY ORGANIZATION TOMORROW CHANGES

16   THE STANDARD, SO SOMETHING THAT INFRINGES TODAY DOESN'T

17   INFRINGE TOMORROW BECAUSE THE STANDARD ORGANIZATION CHANGED ITS

18   MIND?

19       SO WHICH VERSIONS ARE WE TALKING ABOUT?  WHICH TIME FRAMES?

20   THESE ARE ALL THINGS THAT ARE UNNECESSARY.

21       THE CLAIM LANGUAGE DOES NOT USE THE STANDARDIZED XML, IT

22   DOESN'T REFERENCE W3C IN PARTICULAR.  EXTENSIBLE MARKUP

23   LANGUAGE, JUST LIKE COMMAND LINE INTERFACE, HAS A COMMON

24   UNDERSTOOD TERM.  THOSE SKILLED IN THE ART WOULD UNDERSTOOD

25   THAT WHEN YOU USE XML IN PARENTHESES, IT WAS SIMPLY PROVIDING

1    AN ACRONYM FOR THAT CONCEPT.

2        AND I THINK YOUR HONOR IDENTIFIED IN THE PATENT

3    SPECIFICATION AND IT'S QUITE INSTRUCTIVE ON THIS.

4            THE COURT:  OKAY.  THAT'S VERY HELPFUL.

5            MR. PAK:  THANK YOU.

6            THE COURT:  WHO AM I GOING TO HEAR FROM, MR. ROSEN?

7    MR. SILBERT.

8            MR. SILBERT:  GOOD AFTERNOON, YOUR HONOR.

9        SO THE QUESTION IS DOES XML MEAN THE XML LANGUAGE?  AND

10   YOUR HONOR MADE A COMMENT EARLIER THIS MORNING WHERE YOU SAID

11   IS IT KLEENEX OR TISSUE.  I UNDERSTAND WHY YOU WOULD MAKE THAT

12   ANALOGY, BUT I WANT TO QUIBBLE WITH THAT ANALOGY.

13           THE COURT:  OKAY.

14           MR. SILBERT:  AND THE REASON IS THAT PEOPLE USE THE

15   WORD KLEENEX, GENERICALLY OVER TIME PEOPLE USED THAT WORD UNTIL

16   IT STARTS TO MEAN TISSUE MADE BY SOME OTHER MANUFACTURER.

17       AND SO IT BECOMES AMBIGUOUS BECAUSE THE USAGE OF THAT TERM

18   BECOMES GENERICIZED TO THE POINT WHERE IF SOMEONE SAYS KLEENEX,

19   IT'S NOT NECESSARILY CLEAR, HAND ME A KLEENEX, THAT THEY MEAN

20   THE BRAND NAME OR JUST A TISSUE.

21       THAT CIRCUMSTANCE, WE DEFINITIVELY DO NOT HAVE IN THIS

22   CASE.  AND THERE IS NOT A SHRED OF EVIDENCE, AND THIS IS THE

23   KEY POINT, THIS IS THE KEY POINT, THERE IS NOT A SHRED OF

24   EVIDENCE THAT PEOPLE OF SKILL IN THE ART USE THE TERM XML TO

25   REFER TO THE XML LANGUAGE.  AND IF PEOPLE DID USE THAT AT THE

1    TIME OF THE ALLEGED INVENTION, CISCO WOULD HAVE PRESENTED IT TO

2    YOU WHERE PEOPLE ARE SAYING XML AND THEY ARE USING THE ACRONYM

3    XML, AND THEY DON'T MEAN THE ACTUAL XML LANGUAGE, THEY MEAN

4    SOME GENERIC TERM.

5         BUT IT IS NOT IN THE RECORD, IT IS NOT ANYWHERE BECAUSE IT

6    WASN'T USED.

7         AND SO WE WILL LOOK AT THE LAW, BUT THE LAW IS THE TERM HAS

8    AN ORDINARY MEANING TO PEOPLE OF SKILL IN THE ART, IT'S PRETTY

9    SIMPLE.

10        THE COURT GIVES THE TERM THAT ORDINARY MEANING UNLESS THE

11   PATENTEE SOMEHOW GOES OUT OF THEIR WAY TO SAY I'M NOT, I DON'T

12   MEAN IT THIS WAY, I MEAN SOMETHING DIFFERENT.  AND THEY DIDN'T

13   DO THAT HERE.

14        SO YOUR HONOR POINTED OUT THE SPECIFICATION'S USAGE OF THE

15   TERM.  FIRST OF ALL, THIS IS FROM COLUMN 1, IT'S THE FIRST TIME

16   THAT THE TERM APPEARS IN THE PATENT.  THEY JUST SAY XML.  THEY

17   JUST SAY RECEIVING XML STATEMENTS IN AN IOS, CLI PARSER,

18   ET CETERA.

19        YOUR HONOR IS ABSOLUTELY RIGHT, THEY DON'T EXPLAIN THE

20   SPECIFICATION DOESN'T EXPLAIN WHEN WE SAY XML, HERE'S WHAT WE

21   MEAN BY XML, WE MEAN SOME WHATEVER.

22        THE REASON THEY DON'T EXPLAIN THAT IS BECAUSE THEY DON'T

23   NEED TO.  THE TERM HAS MEANING TO PERSONS OF SKILL IN THE ART,

24   THEY UNDERSTAND WHAT XML MEANS.

25             THE COURT:  WHAT ABOUT MR. PAK'S ARGUMENT THAT THE

1    XML IS IN PARENTHESES AFTER THE PHRASE, AN EXTENSIBLE MARKUP

2    LANGUAGE?

3              MR. SILBERT:  FIRST OF ALL, THAT'S LOOK AT THAT.

4        XML, WHICH IS HOW THE LANGUAGE IS USUALLY DESCRIBED, IS

5    SHORT FOR EXTENSIBLE MARKUP LANGUAGE, THAT IS THE NAME OF

6    THE -- THE LITERAL NAME OF THE LANGUAGE.

7              THE COURT:  I UNDERSTAND.  RIGHT.

8              MR. SILBERT:  THE CLAIM, THAT'S WHAT THEY ARE USING.

9    MR. PAK SAYS OH, IT'S VERY SIGNIFICANT THAT IT USES THE

10   INDEFINITE ARTICLE "AN."  IT DOESN'T SAY "THE" XML FORMAT.  BUT

11   THAT'S A COMPLETE RED HERRING.  IF I COULD FIND THE CLAIM, I

12   WILL SHOW YOU WHY.

13       THE WORD THAT FOLLOWS THIS WHOLE PHRASE THAT'S HIGHLIGHTED

14   IS "FORMAT."  CONFIGURED IN AN EXTENSIBLE MARKUP LANGUAGE, AN

15   XML FORMAT HAVING A CLI SYNTAX.  NO ONE IS SAYING OR WOULD SAY

16   THAT THERE'S ONLY ONE POSSIBLE XML FORMAT HAVING A CLI SYNTAX.

17   THERE'S MULTIPLE WAYS THAT YOU COULD ENGINEER THAT.

18       SO IT WOULD NOT MAKE SENSE AT ALL TO SAY THE XML FORMAT

19   HAVING A CLI SYNTAX.  IT'S CERTAINLY THIS PHRASE REQUIRES THE

20   INDEFINITE ARTICLE, BUT IT'S NOT BECAUSE XML COULD MEAN ALL

21   KINDS OF DIFFERENT THINGS.  XML IS XML.  BUT FORMAT, THERE

22   COULD BE MULTIPLE POSSIBLE WAYS OF HAVING AN XML FORMAT HAVING

23   A CLI SYNTAX.

24       SO THAT WORD "AN" TELLS US NOTHING ABOUT WHETHER XML DOES

25   OR DOES NOT MEAN XML.

```
1          I WANT TO ALSO GO TO THE, EXACTLY THE PASSAGE THAT

2    YOUR HONOR HIGHLIGHTED IN THE SPECIFICATION, OKAY.  THIS IS

3    EXACTLY THE LANGUAGE THAT YOUR HONOR POINTED TO.  IN ANOTHER

4    EMBODIMENT, THESE COMMAND STATEMENTS CAN BE FORMATTED IN

5    ACCORDANCE WITH ANOTHER SET OF RULES AND BEHAVIORS OR PRESENTED

6    IN A LANGUAGE OTHER THAN XML OR CLI.

7          NOW CLEARLY, AS YOUR HONOR SAID, MR. PAK DIDN'T AGREE WITH

8    YOU, CLEARLY THEY ARE TALKING ABOUT XML IS THE XML LANGUAGE.

9          AND SO WHAT MR. PAK SAID WAS WELL, NO, THAT ACTUALLY PROVES

10   OUR POINT BECAUSE ALTHOUGH THEY ARE USING HERE IN THE

11   SPECIFICATION THEY ARE USING XML TO MEAN THE XML LANGUAGE, BUT

12   THEY ARE SAYING THAT THERE ARE OTHER EMBODIMENTS THAT COULD BE

13   BROADER THAN THAT.

14         SURE.  THERE ARE OTHER EMBODIMENTS THAT COULD BE BROADER

15   THAN THAT.  THEY ARE NOT CLAIMED.  THE CLAIMS ARE SPECIFIC TO

16   XML AND CLI.

17         IT'S QUITE COMMON FOR PATENTS TO TALK ABOUT EMBODIMENTS

18   THAT ARE NOT CLAIMED.  AND THAT'S THE SITUATION HERE.  IT SAYS

19   THERE COULD BE EMBODIMENTS AND LANGUAGES OTHER THAN XML OR CLI.

20         BUT WHEN YOU LOOK AT THE CLAIMS, THESE ONES ARE DIRECTED TO

21   XML AND CLI.  THEY COULD HAVE A CONTINUATION PATENT WHERE THEY

22   TRY TO CLAIM OTHER EMBODIMENTS.  I MEAN, BUT THAT'S A CASE

23   THAT'S NOT IN FRONT OF US.  THESE CLAIMS ARE XML AND CLI.

24         AND I ALSO, I WANT TO HIGHLIGHT AN EXTREMELY IMPORTANT

25   THING THAT MR. PAK SAID IN THE CONTEXT OF THIS DISCUSSION, JUST
```

1    SO THAT IT DOESN'T GET LOST, WHAT HE SAID WAS, WELL, HERE, YOU

2    KNOW, YEAH, HERE THEY ARE TALKING IN THE SPECK THEY ARE TALKING

3    ABOUT XML AS THE XML LANGUAGE.

4        BUT THEY ARE SAYING IT COULD BE BROADER THAN THAT.  SO IN

5    THE CLAIMS, IT MUST BE BROADER THAN THAT.

6        SO WHAT HE'S SAYING IS THE TERM XML MEANS ONE THING IN THE

7    SPECIFICATION, THE XML LANGUAGE, AND I DON'T KNOW HOW ANYONE

8    COULD SAY ANYTHING DIFFERENT BECAUSE IT JUST SAYS XML.  BUT

9    THEN IN THE CLAIMS, THE TERMS XML HAS A DIFFERENT MEANING THAN

10   THE TERM HAS IN THE SPECIFICATION.

11       THAT IS COMPLETELY WRONG AND THE WRONG WAY TO GO ABOUT

12   CLAIM CONSTRUCTION.  CASE AFTER CASE FROM THE FEDERAL CIRCUIT

13   SAYS THAT.  IT MEANS THE SAME THING.

14       AND I THINK THE KEY LAW TO APPLY HERE WHICH IS A VERY BASIC

15   PRINCIPLE OF CLAIM CONSTRUCTION IS SIMPLY THIS, YOU DON'T

16   OVER-COMPLICATE IT.  IF A CLAIM TERM -- A CLAIM TERM SHOULD BE

17   GIVEN ITS ORDINARY MEANING IN THE PERTINENT CONTEXT UNLESS THE

18   PATENTEE HAS MADE CLEAR ITS ADOPTION OF A DIFFERENT DEFINITION

19   OR OTHERWISE DISCLAIMED THAT MEANING.

20       NOW LET ME JUST LOOK AT, WE HAVE A NUMBER OF DEFINITIONS OF

21   XML, I DON'T THINK ANYONE IS DISPUTING XML IS THE XML LANGUAGE

22   MOST OF THE TIME.

23       OKAY.  THIS FIGURE THAT MR. PAK PRESENTED, IT'S EXTREMELY

24   ILLUMINATING, HE SAID.

25       NUMBER ONE, JUST BY WAY OF BACKGROUND, I UNDERSTAND

1    YOUR HONOR OVERRULED OUR OBJECTION TO THE LATE FILED

2    DECLARATION, I UNDERSTAND, I'M NOT CONTESTING THAT.  THIS

3    PARTICULAR PIECE OF EVIDENCE WHICH WAS INCLUDED IN THE LATE

4    FILED DECLARATION WAS LATE FILED, IT'S A FIGURE BY ITSELF, THEY

5    NEVER PRODUCED THE BOOK THAT IT CAME FROM, WE DON'T -- SO IT'S

6    VERY HARD TO SAY WHAT THIS IS SUPPOSED TO MEAN, IT'S QUITE

7    CONFUSING AND JUMBLED.  IT USES THE TERM THE XML FAMILY OF

8    SPECIFICATIONS.

9        OKAY.  WHATEVER IN THE CONTEXT OF THIS BOOK THAT THAT'S

10   SUPPOSED TO BE TALKING ABOUT, IT SEEMS PRETTY CLEAR TO ME THAT

11   IT'S USING XML TO REFER TO XML.  AND IT'S SAYING THERE'S OTHER

12   SPECIFICATIONS OUT THERE THAT THE SOMEHOW RELATE TO XML.

13       AND HE'S CONSIDERING THEM ALL TO BE IN A FAMILY SOMEHOW.

14   THEY ARE NOT ALL EXTENSIBLE MARKUP LANGUAGES BY ANY STRETCH OF

15   THE IMAGINATION.  HE'S INCLUDING JPEG, GIF.  I DON'T KNOW WHAT

16   HE MEANS, BUT THOSE ARE IMAGE FORMATS, AS IS PNG, THAT'S THE

17   WAY YOU HAVE A PICTURE.

18       I MEAN, SO IT'S ALMOST IMPOSSIBLE TO TELL WHAT THIS PERSON

19   IT TALKING ABOUT.  HE'S NOT SAYING XML, THE XML PORTION OF THIS

20   PHRASE DOES NOT MEAN XML.

21       AND ONE WAY YOU KNOW THAT IS HE TALKS ABOUT, IF YOU CAN SEE

22   SOAP HERE, SOAP IS ITS OWN LANGUAGE IT'S CALLED SOAP.  IT'S NOT

23   CALLED XML, IT HAS ITS OWN NAME.  PARTS OF IT ARE DERIVED FROM

24   XML.

25       AND THIS IS, WHAT'S NEW ON THIS SLIDE, IT'S FROM

1    DR. ALMEROTH'S DECLARATION, IT'S PART OF THE SOAP PROTOCOL

2    WHICH IS FROM W3C, THE SAME ORGANIZATION THAT SPECIFIES XML.

3    IT SAYS, SOAP IS A LIGHTWEIGHT PROTOCOL FOR EXCHANGE OF

4    INFORMATION IN A DECENTRALIZED DISTRIBUTED ENVIRONMENT.  IT IS

5    AN XML-BASED PROTOCOL THAT CONSISTS OF THREE PARTS.

6        THE W3C, AND I ASKED MR. ALMEROTH THIS IN HIS DEPOSITION BY

7    THE WAY, WHERE THE W3C IS USING THE WORD XML WHEN TALKING ABOUT

8    SOAP, YOU UNDERSTAND THAT THEY ARE TALKING ABOUT THEIR OWN

9    SPECIFICATION OF XML.  THE XML LANGUAGE WHICH IS WHAT WE ARE

10   ALL TALKING ABOUT, HE SAYS YES, IN THIS CONTEXT, I UNDERSTAND

11   THAT.

12       SO THE LONG AND SHORT OF IT IS, THERE IS NO REASON TO MAKE

13   THIS COMPLICATED.  XML HAS A MEANING, IT'S A VERY COMMONLY

14   UNDERSTOOD MEANING, THE SPECIFICATION DOES NOT SAY THAT IT HAS

15   A DIFFERENT MEANING, IT SHOULD BE GIVEN THAT MEANING.  AND

16   THAT'S REALLY THE LONG AND SHORT OF IT.

17           THE COURT:  OKAY.

18           MR. PAK:  WE ARE NOT DEFINING XML, YOUR HONOR, WE ARE

19   DEFINING AN EXTENSIBLE MARKUP LANGUAGE.  JUST LIKE THE CLAIM

20   LANGUAGE SAYS, A CLI PARSER.

21       IT MAKES NO SENSE IN THE WORLD THAT CISCO WOULD HAVE

22   LIMITED ITS INVENTION TO ONLY THE COMMANDS THAT IT USED FOR ITS

23   CLI THAT'S DESCRIBING THE EMBODIMENT OF THE PATENT.  THAT'S WHY

24   THEY HAVE THAT STATEMENT SAYING WE ARE NOT LIMITING OURSELVES

25   TO A PARTICULAR VERSION OF CLI, WE ARE NOT LIMITING OURSELVES

```
 1      TO A PARTICULAR VERSION OF AN EXTENSIBLE MARKUP LANGUAGE.

 2           EVEN IF YOU WERE TO TAKE EVERYTHING THAT MR. SILBERT TOLD

 3      YOU AT FACE VALUE, WHICH WE DISAGREE WITH AND WE'VE GIVEN YOU

 4      EXPERT TESTIMONY, THAT'S NOT THE PHRASE WE ARE DEFINING.  WE

 5      ARE NOT DEFINING THE PHRASE XML.  THE CLAIMS DON'T SAY THE XML

 6      FORMAT, THE CLAIMS SAY AN EXTENSIBLE MARKUP LANGUAGE IN

 7      PARENTHESES XML, JUST LIKE COMMAND LINE INTERFACE PARENTHESES

 8      CLI.

 9           ONCE WE MAKE THAT CRYSTAL CLEAR IN OUR MINDS, THEN I THINK

10      ALL THIS DISPUTE GOES AWAY.

11               THE COURT:  OKAY.  THANK YOU.

12               MR. PAK:  NOW, YOUR HONOR, GOING TO THE NEXT TERM.

13               THE COURT:  AND THIS IS COMMAND LINE INTERFACE

14      PARSER?

15               MR. PAK:  YES, YOUR HONOR.  THIS IS SLIDE 95.

16           THIS WE THINK IS A RELATIVELY STRAIGHTFORWARD DISPUTE.  WE

17      ARE REALLY ARGUING AT THIS POINT ABOUT WHAT DOES IT MEAN TO

18      PARSE SOMETHING.

19           WE THINK PARSING MEANS ANALYZING, AND THERE'S LOTS OF GREAT

20      EXTRINSIC SUPPORT FOR THAT, INTRINSIC SUPPORT FOR THAT.  AS

21      YOUR HONOR HEARD IN THE TECHNOLOGY TUTORIAL, ONE OF THE THINGS

22      OUR PARSER COULD DO IS AUTO COMPLETION, VALIDATION WE HAVE BEEN

23      TALKING ABOUT.  VALIDATION DOESN'T HAVE TO INCLUDE BREAKING

24      THINGS DOWN TO EVERY CONSTITUENT LEVEL.  WE COULD BE VALIDATING

25      AT A HIGHER LEVEL THAN THAT.
```

```
 1            WE ARE NOT DISPUTING, YOUR HONOR, THAT YOU CAN, AS PART OF

 2     THE ANALYSIS IF YOU WANTED TO, GO ALL THE WAY DOWN THE PROCESS

 3     OF BREAKING THINGS DOWN INTO ITS CONSTITUENT PARTS.  ALL WE ARE

 4     SAYING IS THAT COULD BE PART OF THE ANALYSIS.

 5            BUT ANALYSIS IS A BROADER CONCEPT, IT CAN INCLUDE OTHER

 6     THINGS SUCH AS VALIDATION, INCLUDE OTHER THINGS SUCH AS AUTO

 7     COMPLETION, THEY ARE ALL DISCLOSED IN THE PATENTED INVENTIONS.

 8            AND SO THAT'S THE REAL DISPUTE THAT WE ARE HAVING HERE ON

 9     THIS ISSUE.

10            THE COURT:  OKAY.

11            MR. PAK:  SO THE OTHER MINOR ISSUE, YOUR HONOR, ON

12     SLIDE 98, IS WE'VE TAKEN A SUBSYSTEM OUT OF THE ROUTING SYSTEM

13     LANGUAGE OUT OF THE PATENT SPECIFICATION WHEN IT TALKS ABOUT

14     THE CLI PARSER BEING A SUBSYSTEM.

15            FOR WHATEVER REASON, THEY WANT TO CONFINE THIS TO A

16     SOFTWARE SOLUTION, WE ARE NOT SAYING THAT YOU CAN'T USE

17     SOFTWARE BUT CERTAINLY --

18            THE COURT:  WELL, THE LANGUAGE OF THE SPECIFICATION

19     CALLS IT A COMPONENT.  THIS IS THE ISSUE OF COMPONENT VERSUS

20     PROGRAM, RIGHT?

21            MR. PAK:  EXACTLY, YOUR HONOR.

22            SO WE WANT TO STICK WITH THE LANGUAGE OF THE CLAIMS, WE

23     WANT TO STICK WITH THE PATENT SPECIFICATION.  IT COULD HAVE --

24     THERE COULD BE EMBODIMENTS IN WHICH YOU COULD HAVE A

25     COMBINATION OF HARDWARE AND SOFTWARE TO PERFORM THE PARSING.
```

1    AND IN FACT, IN LOTS OF THESE HIGH SPEED ROUTERS YOU HAVE ASICS

2    WHICH ARE APPLICATION SPECIFIC HARDWARE CIRCUITS BECAUSE OF THE

3    SPEED NECESSARY TO IDENTIFY PACKETS THAT ACTUALLY IDENTIFY THE

4    CONTENT OF THE PACKETS AS THEY COME IN ON A HARDWARE BASIS

5    RATHER THAN SOFTWARE BASIS.

6       WE DON'T SEE A REASON WHY WE WANT TO LIMIT THIS TO A

7    PARTICULAR SOFTWARE SOLUTION.

8            THE COURT:  OKAY.

9            MR. PAK:  OKAY.  SO I THINK -- I DON'T REALLY, UNLESS

10   ON THIS ONE, I DON'T KNOW IF YOU HAVE ANY FURTHER QUESTIONS,

11   BUT I THINK THAT'S IT.  WE WANT TO USE ANALYZING.

12           THE COURT:  I DIDN'T SEE A NEED TO CONSTRUE THE WORD

13   RECEIVING.  FRANKLY, I DIDN'T UNDERSTAND WHAT THE CONSTRUCTION

14   MEANT, I THOUGHT RECEIVING WAS PRETTY OBVIOUS, BUT MAYBE I WILL

15   LEARN IN JUST A MINUTE.

16           MR. ROSEN:  GOOD MORNING, YOUR HONOR.  MY NAME IS

17   DAVID ROSEN.

18           THE COURT:  GOOD MORNING.

19           MR. ROSEN:  FIRST, YOUR HONOR, WE AGREE THE PARTIES

20   DO NOT APPEAR TO HAVE A DISPUTE OVER RECEIVING.  AS CISCO HAS

21   EXPLAINED THE TERM IN THEIR BRIEFING AND AS THEY TALKED ABOUT

22   IT TODAY, WE THINK THE ORDINARY MEANING OF THE TERM IS FINE.

23       AS MR. PAK SAID, THE CENTRAL DISPUTE HERE IS OVER WHAT CLI

24   PARSING MEANS.  DOES IT MEAN JUST TO ANALYZE CLI COMMANDS OR

25   DOES IT MEAN TO BREAK DOWN THE SUBPARTS OF CLI COMMANDS.

1    WE HAVE CITED EXTRINSIC EVIDENCE THAT SHOWS PARSING, AS

2    UNDERSTOOD AT THE TIME IN THE ART, MEANT BREAKING DOWN.  HERE'S

3    AN EXAMPLE OF ONE DEFINITION OF PARSER, AN APPLICATION OR

4    DEVICE THAT BREAKS DATA INTO SMALLER CHUNKS SO THAT THE

5    APPLICATION CAN ACT ON THE INFORMATION.

6    HERE'S ANOTHER ONE, A PROGRAM THAT BREAKS LARGE UNITS OF

7    DATA INTO SMALLER, MORE EASILY INTERPRETED PIECES.

8    HERE'S A DEFINITION THAT CISCO SENT IN AS PART OF ITS

9    INITIAL JOINT CLAIM CONSTRUCTION CHART AND IDENTIFIED THIS AS A

10    DEFINITION.

11    PARSE:  TO EXAMINE CLOSELY AND BREAK DOWN INTO COMPONENTS,

12    OR IN COMPUTER, TO ANALYZE AND SEPARATE INTO COMPONENTS WHICH

13    ARE MORE EASILY PROCESSED, CONVERTED OR THE LIKE.

14    THE COURT:  AND WE HAVE THE WORD ANALYZE.

15    MR. ROSEN:  WE DO HAVE ANALYZE IN THERE, AND WE AGREE

16    WITH MR. PAK TO A POINT.

17    YOU COULD SAY THAT PARSING IS ANALYZING.  YOU COULD SAY

18    LOTS OF GENERAL GENERIC VERBS CAPTURE PARSING.  YOU COULD SAY

19    THAT PROCESSING CLI COMMANDS ARE PARSING.  BUT DOES IT -- DOES

20    THAT ACCURATELY AND FAIRLY CAPTURE WHAT THE CLAIM TERM MEANS TO

21    SOMEONE OF SKILL IN THE ART AND WHAT THE INVENTION ACTUALLY

22    DISCLOSES?

23    AND HERE WE HAVE, AND THIS IS REALLY THE ONLY EMBODIMENT IN

24    THE PATENT THAT TALKS AT ALL OR GIVES US AN IDEA OF WHAT THE

25    PARSING MIGHT ACTUALLY MEAN.  AND YOUR HONOR SAW THIS BEFORE AS

1    PART OF OUR TUTORIAL.  WE HAVE HERE TABLE 1 IS THE INPUT

2    COMMAND, IT'S THE CLI COMMAND FORMATTED IN XML.  AND TABLE 2 IS

3    THE PARSED CLI COMMAND THAT RESULTS FROM THE PARSING OF

4    TABLE 1.

5        WELL, WHAT DOES THE PARSER DO?  IT TRAVERSES THE INDIVIDUAL

6    SUBPARTS, IT BREAKS THEM OUT INTO KEY WORDS, IT BREAKS THEM OUT

7    INTO PARAMETERS AND THEN IT ASSEMBLES THEM INTO A COMMAND OR

8    ARRANGES THEM AS THE PATENT CLAIMS INTO A COMMAND.

9        NOW COULD YOU SAY THAT THE PARSER IS ANALYZING THAT XML

10   INPUT?  YOU COULD.  AND YOU COULD SAY IT'S READING IT OR IT'S

11   PROCESSING IT.  BUT BREAKING DOWN THE INPUT INTO SUBPARTS MORE

12   ACCURATELY DESCRIBES WHAT'S ACTUALLY GOING ON HERE.

13       MR. PAK A MOMENT AGO MENTIONED THAT OUR CLI HAS MANY

14   FEATURES, LIKE AUTO COMPLETE, AND THAT WELL, MAYBE ANALYZING

15   WOULD MORE ACCURATELY CAPTURE AUTO COMPLETE.

16       WELL, AUTO COMPLETE FUNCTIONALITY ISN'T PARSING, THAT'S A

17   FEATURE.  THAT'S THE RESULT OF WHAT HAPPENS FROM PARSING.  AND

18   THAT PARSING INVOLVES BREAKING DOWN INTO SMALLER PARTS.

19       THANK YOU.

20           THE COURT:  MR. PAK, DID YOU WANT TO RESPOND?

21           MR. PAK:  YES, JUST QUICKLY, YOUR HONOR.  SLIDE 100

22   PLEASE.

23       THIS IS WHY WE DON'T USE DICTIONARY DEFINITIONS VERY MUCH

24   ANYMORE AFTER TEXAS DIGITAL BECAUSE YOU COULD PICK ANY

25   DICTIONARY DEFINITION YOU WANT.

1          AND HERE IS SOME OF THE DICTIONARY DEFINITIONS THAT TALK

2     ABOUT ANALYSIS.

3          BUT THE BOTTOM POINT IS THIS, YOUR HONOR, WE ARE TALKING

4     ABOUT A PARSER.  WE ARE NOT TALKING ABOUT JUST THE PHRASE

5     PARSING HERE.  ONE OF THE THINGS A PARSER DOES IS VERY

6     IMPORTANT.  AUTO COMPLETION IS ONE OF THEM.  WE TALKED ABOUT

7     VALIDATION, THAT'S CLEARLY DONE BY THE PARSER.

8          IN THE EXAMPLES THAT ARE GIVEN IN THE PATENT SPECIFICATION

9     THAT WE HAVE BEEN ARGUING ABOUT, YOU DON'T WAIT UNTIL ALL OF

10    THE COMMAND COMPONENTS HAVE BEEN IDENTIFIED AND BROKEN DOWN

11    INTO PIECES BEFORE YOU VALIDATE.

12         WHAT YOU ARE DOING IS, AS THE COMMAND COMES IN, YOU ANALYZE

13    IT AS IT COMES IN TO SEE WHETHER IT MATCHES THE RULES OF THE

14    GRAMMAR.  IF YOU DETERMINE IN THE EXAMPLE THAT MR. KRISHNAN

15    WALKED YOU THROUGH, DO YOU RECALL THAT YOU COULD HAVE A

16    MISMATCH ON JUST THE FIRST WORD COMPONENT, THEN YOU COULD HAVE

17    A FAILURE TO VALIDATE THAT PARTICULAR COMMAND.

18         AND SO WHAT THAT MEANS IS YOU ARE WAITING FOR THE ENTIRE

19    COMMAND TO COME IN AND BREAK IT DOWN INTO PARTS, YOU ARE

20    ANALYZING IT AGAINST THE GRAMMAR, IF THERE'S DEVIATION OR IF

21    THE GRAMMAR HELPS YOU SUGGEST OTHER IDEAS, THAT'S ALL PART OF

22    IT.

23         I DON'T THINK ANYTHING THAT MR. ROSEN SAID IS INCONSISTENT

24    WITH WHAT WE ARE TALKING ABOUT.  WE CLEARLY EMBRACE THE IDEA

25    THAT ONE OF THE THINGS YOU COULD DO AS PART OF THE ANALYSIS IS

1    BREAKING THINGS DOWN INTO CONSTITUENT PARTS BUT WE DON'T THINK

2    YOU NEED TO LIMIT IT TO THAT JUST PARTICULAR FUNCTIONALITY.

3         SO WITH THAT, LET'S GO QUICKLY TO THE NEXT TERM.  THIS IS

4    VERY RELATED, YOUR HONOR, SO WE ARE DOWN TO THE THIRD OF FOUR

5    TERMS FOR THIS PATENT.

6         IT'S THE SAME ISSUE ON THE ANALYZING VERSUS BREAKING DOWN.

7    THIS IS ON SLIDE 102.  THE ONE ADDITIONAL LIMITATION IS WHETHER

8    A TOKEN HAS TO BE A KEY WORD OR A PARAMETER AS SUGGESTED BY

9    ARISTA.

10        AND YOUR HONOR, WE HAVE PUT TOGETHER A NUMBER OF INTRINSIC

11   AND EXTRINSIC EVIDENCE THAT SAYS A KEY WORD OR PARAMETER COULD

12   BE ONE OF THOSE THINGS YOU COULD USE AS A TOKEN.  BUT REALLY

13   WHAT WE ARE LOOKING FOR IS A DISTINGUISHABLE UNIT OF CLI

14   CHARACTERS.  IT COULD BE ONE WORD, IT COULD BE MULTIPLE WORDS.

15        ON SLIDE 103, WE HAVE GIVEN YOUR HONOR A DEFINITION FROM

16   THE MCGRAW-HILL DICTIONARY, A DISTINGUISHABLE UNIT IN A

17   SEQUENCE OF CHARACTERS.

18        THAT'S THE TOKEN DEFINITION.  THAT'S THE DEFINITION THAT

19   DR. ALMEROTH HAS APPLIED.  AS YOUR HONOR KNOWS, ARISTA REALLY

20   HASN'T CONTESTED THE VALIDITY OF THESE DEFINITIONS OR WHAT

21   DR. ALMEROTH IS SAYING ABOUT THE WORD TOKEN.

22        THIS CONSTITUENT CHARACTER STRING WE ARE SEEING NOW, WE

23   REALLY DON'T KNOW WHERE THAT'S COMING FROM, THERE'S NO

24   INTRINSIC OR EXTRINSIC SUPPORT THAT'S BEEN IDENTIFIED AND IT

25   WASN'T REALLY BRIEFED IN ARISTA'S PAPERS, SO I WILL RESPOND

1    ONCE WE SORT OF HEAR WHAT THEY HAVE TO SAY ABOUT THIS ONE.

2        BUT THE BEST THING I CAN POINT TO YOUR HONOR IN THE PATENT

3    SPECIFICATION IS ON SLIDE 107.  THIS IS COLUMN 6, LINE 30

4    THROUGH 40 WHICH TALKS ABOUT ONE OF THE EMBODIMENTS IN THE

5    PATENT.  IT TALKS ABOUT EACH CLI TOKEN HAS THE FOLLOWING RULE

6    APPLIED TO IT.

7        AND IF YOUR HONOR READS ON, ONE OF THE THINGS THAT YOU CAN

8    DO IN THE EMBODIMENT OF THE INVENTION IS YOU CAN CREATE

9    SOMETHING CALLED A HAS MORE TAG, DO YOU SEE THAT YOUR HONOR, AT

10   THE END?  IT MEANS THAT A KEY WORD FOR THIS PARTICULAR TOKEN,

11   YOU ARE ACTUALLY ASSOCIATING WITH MULTIPLE KEY WORDS.  YOU ARE

12   SAYING I HAVE MORE THAN ONE KEY WORD.

13       SO IF YOU SEE THAT TAG INSTEAD OF SHOWING EACH KEY WORD AS

14   A SEPARATE TOKEN, I'M GOING TO TREAT EACH PAIR OR MULTIPLE KEY

15   WORDS AS A TOKEN.

16       SO RIGHT HERE IN THE PATENT SPECIFICATION MAKES IT CLEAR

17   THAT YOU ARE NOT LIMITED TO KEY WORDS OR DISTINCT UNITS.  YOU

18   COULD MERGE MORE THAN ONE KEY WORD IF YOU WANTED TO OR IF YOU

19   WANTED TO LOOK AT ONLY A PIECE OF A KEY WORD AS A TOKEN, YOU

20   COULD DO THAT AS WELL.

21       BUT THE KEY THING IS WE ARE LOOKING FOR WHETHER A UNIT OF

22   CHARACTER STRINGS CAN BE DISTINGUISHED FROM ONE ANOTHER.

23   THAT'S ALL THAT WE THINK IS REQUIRED OF TOKEN, AND THAT'S

24   CONSISTENT WITH THE INTRINSIC RECORD.

25           THE COURT:  OH, OKAY.  THANK YOU.

```
 1          MR. ROSEN:  JUST TO PICK UP WHERE MR. PAK LEFT OFF.
 2   IF WE COULD GO TO SLIDE 42.
 3          SO YOUR HONOR, THIS RIGHT HERE SHOWS, WE HAVE 420, THE
 4   HIGHLIGHTED YELLOW BOX THAT SAYS TRAVERSE DATA PARSE CLI INTO
 5   TOKENS.
 6          THIS IS THE PART OF THE SPECIFICATION OF THE EMBODIMENT
 7   THAT'S DESCRIBING THE PARSING IN THE CLI TOKENS.
 8          NOW IF WE GO HERE, THIS IS THE SAME PASSAGE MR. PAK HAD UP.
 9   WE HAVE DIFFERENT THINGS HIGHLIGHTED BECAUSE WE WERE GOING TO
10   MAYBE TALK ABOUT SOMETHING DIFFERENT.  BUT WE ARE NOW AT
11   STEP 440.
12          SO WE ARE NOW AT A DIFFERENT PART OF THE PATENT OF THE
13   EMBODIMENT.  WE ARE NO LONGER PARSING CLI TOKENS, WE ARE
14   TRAVERSING CLI PARSE DRAFT, AND WE ARE WORKING WITH THOSE
15   TOKENS, BUT THE CLI TOKENS HAVE ALREADY BEEN ISOLATED.
16          AND HERE AT THE VERY END WHEN YOU HAVE WHAT MR. PAK JUST
17   POINTED TO, A SITUATION WHERE THE KEY WORD COULD BE MERGED WITH
18   THE NEXT KEY BOARD.
19          WELL, HOW DOES THE PARSER KNOW THAT THERE'S ONE KEY WORD
20   AND THEN ANOTHER KEY WORD TO BE MERGED?  THE ONLY WAY IT WOULD
21   KNOW THAT IS IF THE KEY WORDS WERE ISOLATED AND BROKEN DOWN.
22   IT'S CENTRAL TO HOW THE INVENTION WORKS, IT'S CENTRAL TO WHAT
23   CLI TOKEN MEANS IN THIS CONTEXT.
24          LET'S GO TO SLIDE 29.  AND SO THE REAL ISSUE HERE WE THINK
25   IS DOES IDENTIFYING REQUIRE DETERMINING THE IDENTITY?  OR DOES
```

```
 1     IT JUST MEAN EXTRACTING AT LEAST ONE UNIT OF CLI CHARACTERS IN

 2     A SEQUENCE.

 3         AND THE CONCERN IS THAT IS A VERY, VERY BROAD IDEA, THE

 4     IDEA THAT YOU CAN JUST EXTRACT AT LEAST ONE UNIT OF CHARACTERS,

 5     ONE UNIT OF ARBITRARY CHARACTERS.

 6         AND WHEN YOU READ THE PATENT, WHEN YOU UNDERSTAND THE

 7     INVENTION, THAT DOESN'T SEEM TO BE WHAT IT'S DESCRIBING OR WHAT

 8     THE CLAIMS ARE RECITING.  THE INVENTION OR THE PATENT IS

 9     RECITING SOMETHING FAR MORE SPECIFIC THAN THAT AND IT'S USING

10     CLI TOKEN IN A PARTICULAR WAY.

11         IDENTIFYING ENTAILS RECOGNIZING AS DETERMINING THE IDENTITY

12     OF.  AS I SAID EXTRACTING MAY INCLUDE EXTRACTING TEXT WITH NO

13     KNOWLEDGE OF ITS CONTENTS.

14         AND THE PATENT GIVES US JUST ONE INDICATION OF WHAT THIS

15     MIGHT MEAN, WHAT CLI TOKEN MIGHT MEAN IN THIS CONTEXT.  AND

16     THAT IS IDENTIFYING PARAMETERS AND IDENTIFYING KEY WORDS.

17         THIS IS TABLE 3, I DON'T THINK IT'S WORTH TRYING TO

18     UNDERSTAND EVERY SINGLE LINE IN TABLE 3.

19             THE COURT:  I CAN SEE THAT.

20             MR. ROSEN:  THE ONLY THING IDENTIFIED OR BROKEN OUT,

21     PARAMETERS, KEY WORD, KEY WORDS.  IN THE UNIVERSE OF THE

22     PATENT, THAT'S ALL WE KNOW FOR CLI TOKEN.

23         WE SAW A DEFINITION OF TOKEN EARLIER.  WELL, THE CLAIM

24     LANGUAGE DOESN'T JUST SAY TOKEN, WHICH CAN BE MAY BE JUST AN

25     IDENTIFIABLE SEQUENCE, IT'S SAYS CLI TOKEN, IT HAS TO HAVE A
```

1    MEANING.

2         AND IN THE CONTEXT OF THE CLAIMS AND IN THE CONTEXT OF THE

3    SPECIFICATION, THAT MEANING IS THE CLI TOKEN CORRELATES WITH

4    THE PARAMETER OR IT CORRELATES WITH THE KEY WORD.  THERE'S

5    NOTHING ELSE.

6         IF THERE'S SOMETHING ELSE IN THE UNIVERSE OF POSSIBLE KEY

7    WORDS, WE WELCOME CISCO TO TELL US WHAT THAT IS.  BUT AS FAR AS

8    WE CAN TELL READING THIS PATENT, A FAIR READING OF IT, CLI

9    TOKENS CORRESPOND EITHER TO KEY WORDS OR TO PARAMETERS.

10        AND JUST AS A FINAL POINT, MR. PAK NOTED EARLIER THAT THERE

11   ARE A LOT OF DIFFERENT DICTIONARY DEFINITIONS, AND BOTH SIDES

12   HERE HAVE EXTRINSIC EVIDENCE, VERY, VERY REPUTABLE DICTIONARIES

13   THAT SUPPORT THEIR CONSTRUCTION.

14        SO WHAT DO YOU DO, BECAUSE IT'S VERY COMMON WHEN YOU HAVE

15   COMPETING DICTIONARY DEFINITIONS, YOU LOOK TO THE SPECIFICATION

16   AS PHILLIPS TELLS US.  THE INVENTION IS BEST UNDERSTOOD IN

17   LIGHT OF THE SPECIFICATION AND TRYING TO UNDERSTAND WHAT IT

18   MEANS.

19        SO WHEN WE HAVE DIFFERENT EXTRINSIC EVIDENCE, DIFFERENT

20   DEFINITIONS, WE LOOK TO THE ONE THAT MOST ALIGNS TO WHAT'S

21   ACTUALLY DISCLOSED.  AND HERE THAT IS OUR DEFINITION OF PARSER

22   WHICH INVOLVES BREAKING DOWN A STRING INTO SUBCOMPONENTS.

23        THANK YOU.

24            THE COURT:  THANK YOU.  ANY LAST WORD ON THIS ONE?

25            MR. PAK:  JUST TO NOTE, YOUR HONOR, IF YOU READ THE

1    CLAIM LANGUAGE CAREFULLY, IT TALKS ABOUT USING THE PARSER TO

2    BOTH TRANSLATE COMING INTO THE PARSER AND THEN TRANSLATING

3    BACK.

4        IF YOU REMEMBER IN THE INVENTION DESCRIPTION FROM THE

5    TUTORIAL, ONE OF THE THINGS YOU WANT TO DO IS YOU WANT TO

6    TRANSLATE THINGS FROM CLI INTO AN EXTENSIBLE MARKUP LANGUAGE

7    FORMAT, BUT THEN ONCE YOU GET THE OUTPUT.  YOU ARE DOING THE

8    REVERSE PROCESS.

9        SO AGAIN, THAT'S ANOTHER REASON WHY WE DON'T WANT TO

10   RESTRICT TOKEN BY LOOKING AT THE INPUT SIDE OF THINGS.  TOKEN

11   IS A VERY WELL UNDERSTOOD MEANING, IT'S ABOUT DISTINGUISHABLE

12   UNIT OF CHARACTERS.  YOU KNOW, CAN I DISTINGUISH THIS PIECE

13   FROM ANOTHER PIECE.

14       AND SO THIS, ALL THIS DISCUSSION OF HAVING MULTIPLE KEY

15   WORD, ALL OF THAT APPLIES BOTH IN FORWARD DIRECTION AND

16   BACKWARD DIRECTION, THERE'S NO NEED TO LIMIT THIS TO THE

17   SPECIFIC EMBODIMENTS THAT ARE IDENTIFIED BY ARISTA ON THE

18   FORWARD SIDE.  SO THAT'S THE KEY MESSAGE THERE.

19           MR. ROSEN:  YOUR HONOR, IF I MAY SAY ONE THING ABOUT

20   THAT.

21       THE EMBODIMENTS WE WERE TALKING ABOUT, TABLE 3, THE PASSAGE

22   FROM THE SPECIFICATION THAT MR. PAK PUT UP, THOSE WERE ON THE

23   OUTPUT SIDE.

24       SO IT IS TRUE THAT ON THE INPUT SIDE AS WELL, THE ONLY

25   INDIVIDUAL CLI COMPONENTS WE SEE ARE KEY WORDS AND PARAMETERS.

1    BUT THAT'S ALSO TRUE ON THE OUTPUT SIDE.

2        SO WE WERE NOT SHOWING YOU ANYTHING FROM THE INPUT SIDE OF

3    THE INVENTION.

4            THE COURT:  OKAY.  THANK YOU.

5            MR. PAK:  YOUR HONOR, GOING TO THE WHEREIN, I THINK

6    THIS IS THE LAST CLAIM TERM.

7            THE COURT:  IMAGINE IF I LET YOU DO 17.

8            MR. PAK:  SO ON SLIDE 108, YOUR HONOR, I THINK WE

9    HAVE TALKED ABOUT MOST OF THE DISPUTES HERE.  WE HAVE TALKED

10   ABOUT WHAT IT MEANS TO BE AN EXTENSIBLE MARKUP LANGUAGE, WE

11   HAVE TALKED ABOUT THE CLI SYNTAX AS PART OF THE CLI PARSER.

12       AS FAR AS WE CAN TELL, WHAT ARISTA IS PROPOSING BEYOND THE

13   TERMS WE HAVE ALREADY DISPUTED IS THEY WANT TO REWRITE THE

14   WHEREIN CLAUSE.

15       AND THIS IS ON SLIDE 108, FROM WHAT'S IN THE CLAIM LANGUAGE

16   TO SOMETHING THAT'S MUCH MORE SPECIFIC AND WE BELIEVE NARROWER

17   THAN THE CLAIM LANGUAGE.  THEY WANT TO SAY, WHEREIN THE INPUT

18   COMMAND IS WRITTEN IN AN EXTENSIBLE MARKUP LANGUAGE FORMAT SUCH

19   THAT ONE OR MORE KEY, CLI KEY WORDS ON THE ONE HAND AND CLI

20   PARAMETERS ON THE OTHER HAND ARE CONTAINED WITHIN THE

21   RESPECTIVE XML TAGS.  AND THE SEQUENCE OF THE TAGS COMPLIES

22   WITH THE SEQUENCING RULES OF THE KEY WORDS AND SYNTAX

23   PARAMETERS.

24           THE COURT:  SO I WILL TELL YOU THAT MY NOTE HERE SAYS

25   THAT THIS VERSION MEANS NOTHING TO ME.

1          MR. PAK:  I BELIEVE I SHOULD JUST SIT DOWN.

2          THE COURT:  I DON'T EVEN KNOW WHAT I'M LOOKING AT

3    HERE.  IT DOESN'T MEAN THAT NO CONSTRUCTION IS NECESSARY, BUT

4    THIS IS -- I MEAN, I GUESS I WAS, IT'S THE TENTH, WE ARE TIRED

5    BY THE TIME WE GET HERE, I NEVER OPENED THIS TO START HERE

6    FIRST.

7          MR. PAK:  I WOULD SUGGEST, YOUR HONOR, I DO THINK

8    THAT CONSTRUCTION OF WORDS LIKE AN EXTENSIBLE MARKUP LANGUAGE,

9    XML THAT WE HAVE ARGUED ABOUT MAKES SENSE.  BEYOND THAT, IF YOU

10   TAKE THAT OUT, THEY ARE NOT DEFINING THE WORD "KEY WORD," THEY

11   ARE USING THE WORD KEY WORD IN THEIR CONSTRUCTION.  THEY HAVE

12   USED A NEW WORD "PARAMETER" THAT'S NOT ANYWHERE IN THE CLAIM

13   LANGUAGE.

14     SO THEIR CONSTRUCTION REALLY ISN'T DOING MUCH MORE TO

15   ADVANCE THE BALL FORWARD IN TERMS OF HELPING THE JURY

16   UNDERSTAND WHAT IS A KEY WORD OR SOMETHING ELSE.  I DON'T THINK

17   IT'S NECESSARY, I THINK THAT WE ARE GOING TO HAVE EXPERTS BE

18   ABLE TO EXPLAIN THAT TO THE JURY.

19         THE COURT:  WELL, YOU KNOW, ALL OF THE CASE LAW TALKS

20   ABOUT THE PURPOSE OF CLAIMS CONSTRUCTION IS TO AID THE JURY IN

21   UNDERSTANDING WHAT THESE TERMS MEAN.  THIS IS THE ONE WHERE I

22   JUST, I HAVE TO SAY, IT'S NOT THAT WE PUT IT INTO LANGUAGE FOR

23   LAY PEOPLE, IT HAS TO BE IN LANGUAGE THAT WOULD BE UNDERSTOOD

24   BY ONE SKILLED IN THE ART.

25         BUT I JUST GOT LOST HERE.

```
1              MR. PAK:  YEAH.  I MAKE THAT TOO.

2              THE COURT:  WELL, I'M SURE YOU DIDN'T GET LOST, BUT I

3    DO.

4         MR. SILBERT, HELP ME OUT HERE BECAUSE YOU MAY HAVE SOME

5    GEMS IN HERE.

6              MR. SILBERT:  I'M NOT GOING TO DEFEND THE CLARITY OF

7    THAT.  AND I AGREE, AND WE WERE LAUGHING BECAUSE WE HAD A VERY

8    SIMILAR CONVERSATION AS WE WERE PREPARING FOR TODAY'S HEARING

9    WITH THIS TERM UP IN SLIDES.

10        I THINK, AND I DON'T KNOW IF YOUR HONOR WOULD BE INTERESTED

11   IN THIS, I THINK WE COULD PROPOSE A SIMPLER VERSION, BUT I DID

12   WANT TO JUST TAKE A RUN AT EXPLAINING THE ISSUE.

13             THE COURT:  OKAY.  THAT'S HELPFUL.

14             MR. SILBERT:  AND THIS CONSTRUCTION ISN'T NECESSARILY

15   AS CRUCIAL AS THE ISSUE.

16        THE ISSUE IS WHAT IS AN XML FORMAT HAVING A CLI SYNTAX?

17   THAT'S THE CLAIM.  AND THE I KNOW THIS LOOKS CONFUSING AS WELL.

18   THESE ARE TABLES 2 AND 3 -- NO, TABLES 1 AND 2 FROM THE PATENT.

19   BUT LET ME, IF I CAN JUST REMIND YOUR HONOR A LITTLE BIT, IF WE

20   GO BACK TO THE TUTORIAL ABOUT THE WAY XML WORKS.

21        XML ALLOWS YOU TO HAVE TAGS AROUND DATA, AROUND CONTENT IN

22   A DOCUMENT.  AND THE TAGS HAVE THESE THINGS, WHAT ARE CALLED

23   ANGLE BRACKETS WHICH ARE JUST GREATER THAN AND LESS THAN SIGNS.

24   AND THEY'RE LIKE META ELEMENTS THAT CAN DESCRIBE THE DATA.  SO

25   I THINK THE EXAMPLE WE USED WAS, YOU KNOW, A TAG THAT SAYS
```

1    JUDGE NAME.  AND THEN IT SAYS HONORABLE EDWARD DAVILA.  AND

2    THEN YOU HAVE THE SLASH DOWN HERE, YOU ARE CLOSING THE TAG.

3         SO YOU WOULD SAY A TAG WITH JUDGE NAME, AND THEN YOU WOULD

4    HAVE WHATEVER CONTENT YOU HAVE, AND THEN YOU WOULD HAVE SLASH

5    JUDGE NAME AND YOU WOULD CLOSE THAT TAG.

6         THEN YOU WOULD HAVE ANOTHER TAG.

7         XML ALLOWS YOU TO HAVE WHATEVER TAGS YOU WANT.  YOU CAN

8    HAVE A TAG FOR A COURTHOUSE ADDRESS, A COURTROOM DEPUTY, LAW

9    CLERK NAME, WHATEVER.

10         SO WHAT THIS IS SHOWING IN THE PATENT IS THE TOP WHICH IS

11    TABLE 2 OF THE PATENT, IS A CLI COMMAND.  WHAT'S ON THE BOTTOM

12    WHICH IS TABLE 1 OF THE PATENT, IS AN XML FORMAT OF THE CLI OR

13    HAVING A CLI SYNTAX, AND WHAT THEY HAVE DONE IS THEY START WITH

14    THIS AD TAG.

15         AND YOU SEE AT THE VERY BOTTOM THEY CLOSE THE AD TAG, YOU

16    CAN KIND OF IGNORE THAT.  THEY HAVE TAKEN THE WORDS IN THE

17    COMMAND MPLS LABEL.  THEY HAVE A TAG HERE STARTS WITH AK,

18    PRESUMABLY FOR KEY WORD.  THEY HAVE A KEY WORD FOR MPLS LABEL

19    AND A KEY WORD FOR RANGE WHICH IS THE NEXT TERM IN THE COMMAND.

20         THEN THEY HAVE A RANGE MINIMUM TAG OF 10, AND THEY CLOSE

21    THE RANGE MINIMUM TAG.  A RANGE MAXIMUM TAG OF 300, AND THEY

22    CLOSE THE RANGE MAXIMUM TAG, WHICH IS A WAY OF SAYING THE RANGE

23    IS BETWEEN 10 AND 300.  AND THEN A HAVE A KEY WORD TAG FOR

24    STATIC.

25         THEY HAVE TAKEN THE CLI COMMAND AND THEY HAVE BROKEN IT

1    DOWN INTO A BUNCH OF XML TAGS, AND THERE'S THE LANGUAGE BACK IN

2    THE CLAIM ABOUT THE -- CLI KEY WORDS SEQUENCED ACCORDING TO

3    CONFIGURATION RULES FOR CLI COMMANDS.  AND THE KEY WORDS FOLLOW

4    THE SEQUENCE IN THE CLI COMMAND.

5        SO THAT'S WHAT WE'VE DONE.  OUR POINT IS THAT THIS TYPE OF

6    IDEA, THERE'S DIFFERENT WAYS YOU COULD DO IT, BUT THIS TYPE OF

7    IDEA OF BREAKING THE PIECES OF THE COMMAND INTO TAGS, INTO XML

8    TAGS IS WHAT THE PATENT IS GETTING AT WHEN IT'S TALKING ABOUT

9    AN XML FORMAT OF A CLI SYNTAX.

10        AND JUST TO PUT A VERY FINE POINT ON IT, HERE'S WHAT WE

11   THINK CISCO IS GOING TO WANT TO ACCUSE THAT WE THINK IS NOT

12   WHAT THE PATENT IS TALKING ABOUT.  IT'S THIS.

13        AT THE TOP HERE WE ARE LOOKING AT THE SAME CLI COMMAND FROM

14   THE PATENT.  HERE THIS IS NOT IN THE PATENT, WE CREATED THIS.

15   YOU HAVE A TAG THAT SAYS CLI COMMAND.  THEN YOU TAKE WHATEVER

16   YOU WANT AND YOU PUT IT IN THERE AND THEN YOU CLOSE THE TAG

17   THAT SAYS CLI COMMAND.

18        OUR POINT IS THAT IS NOT AN XML FORMAT OF A CLI SYNTAX.

19   THIS IS AN XML FORMAT OF CLI SYNTAX.

20            THE COURT:  SO THAT'S AN EXAMPLE IN THE PATENT, NOT A

21   LIMITATION.

22            MR. SILBERT:  IT IS.  IT IS.  YES, BUT IT DOESN'T

23   HAVE TO BE SPECIFICALLY THIS, BUT THE IDEA OF AN XML FORMAT OF

24   A CLI SEQUENCE GETS AT --

25            THE COURT:  THIS STILL GOES BACK TO HOW I DEFINE XML,

1    EXTENSIBLE MARKUP LANGUAGE PAREN XML.  THAT'S REALLY ALL YOU

2    ARE TALKING TO ME ABOUT HERE THEN, IT SEEMS.

3              MR. SILBERT:  NO, IT'S ONE LAYER DEEPER THAN THAT.

4         IT'S -- BECAUSE WHAT WE ARE SAYING IS WHEN THEY ARE TALKING

5    ABOUT AN XML FORMAT OF A CLI SYNTAX, THEY ARE TALKING ABOUT A

6    SYSTEM OF TAGS, IT'S A LONG CONSTRUCTION AND IT'S CONFUSING AND

7    WE CAN DO BETTER, BUT WHAT IT'S TRYING TO GET AT IS YOU'RE

8    TAKING THE WORDS IN THE COMMAND AND PUTTING THEM INTO SOME TAG

9    STRUCTURE.  YOU ARE NOT JUST TAKING THE ENTIRE COMMAND WHICH

10   COULD BE ANYTHING, A NOVEL, IT COULD BE ANYTHING, AND JUST

11   WRAPPING IT IN BETWEEN TWO TAGS THAT SAY, YOU KNOW, WHATEVER.

12        THAT'S NOT AN XML FORMAT OF A CLI SYNTAX.  IT DOESN'T

13   MATTER, YOU HAVE NO IDEA WHAT THE SYNTAX IS WHEN YOU CREATE A

14   SYSTEM LIKE THAT.  YOU DON'T NEED TO KNOW THE SYNTAX, YOU DON'T

15   NEED TO KNOW ANYTHING.  YOU JUST SAY, I'M GOING TO SEND SOME

16   COMMANDS NOW.

17        BUT THIS TYPE OF THING HERE YOU NEED TO KNOW THE CLI SYNTAX

18   AND YOU CREATE AN XML FORMAT OF THAT SYNTAX.

19        SO WE COULD TRY TO SUBMIT A CLEARER, MORE COMPREHENSIBLE

20   CONSTRUCTION OF THAT OR --

21              THE COURT:  SO, YOU KNOW, OF COURSE I CAN CONSTRUE IT

22   ANY WAY I THINK IS CORRECT, BUT THIS ONE WOULD BE PARTICULARLY

23   CHALLENGING FOR ME TO JUST BE ON MY OWN.

24        THE PROBLEM I HAVE IS ALTHOUGH THERE IS SOME TIME BECAUSE I

25   DO WANT TO SEE WHAT HAPPENS AT PTAB, IF YOU SUBMIT AN

1    ALTERNATIVE CONSTRUCTION, THEN I'M GOING TO HAVE TO TAKE SOME

2    BRIEFING FROM CISCO ON WHY THAT TOO WOULD BE INCORRECT.

3         SO I'M JUST NOT SURE HOW MUCH I'M PREPARED TO OPEN THE DOOR

4    ON THIS.

5              MR. SILBERT:  OKAY.  WELL, OBVIOUSLY WHATEVER WOULD

6    BE MOST HELPFUL TO THE COURT.

7         WE ARE AGREEING THE WAY IT'S PHRASED, WE TRIED TO BE

8    ACCURATE, BUT IT'S NOT SO CLEAR.

9              THE COURT:  SURE, SURE.

10             MR. SILBERT:  AND NOT SO HELPFUL TO THE JURY.  SO

11   WHATEVER WOULD BE THE MOST HELPFUL.

12             THE COURT:  WELL, IF I DECIDE THAT I WANT SOME HELP

13   ON THAT, I WILL PUT OUT AN ORDER IS THAT GIVES CISCO AN

14   OPPORTUNITY TO RESPOND TO IT, CERTAINLY.  AND AS I SAY, WE HAVE

15   SOME TIME ON THIS ANYWAY.

16             MR. SILBERT:  YES.  OKAY.  I THINK THAT'S EVERYTHING.

17             THE COURT:  ALL RIGHT.

18        MR. PAK, DO YOU HAVE ANYTHING ELSE YOU WANT TO SAY NOW?

19             MR. PAK:  I WILL JUST HAVE TWO QUICK COMMENTS,

20   YOUR HONOR, AND THEN WE CAN CLOSE UP FOR TODAY.

21             THE COURT:  OKAY.  THAT'S GREAT.

22             MR. PAK:  SO DO THEY NOT ONLY WANT TO LIMIT

23   EXTENSIBLE MARKUP LANGUAGE TO XML AND NOW THEY WANT TO LIMIT

24   XML TO THE PARTICULAR XML VERSION AND FORMAT THAT WAS USED?

25        I'M NOT GOING TO DISPUTE THE ACCURACY OF WHAT HE SAYS ABOUT

148

1    DESCRIBING THE EMBODIMENTS, IT'S NOT REALLY MY EXERCISE HERE

2    TODAY.

3        THE POINT IS EVEN IF HE'S RIGHT ABOUT HOW THAT PARTICULAR

4    EMBODIMENT WORKS, AND THAT'S TRUE FOR ACROSS THE BOARD, UNLESS

5    WE FIND A STATEMENT THAT SAYS THE PATENTEE SAYING, HEY, MY

6    INVENTION IS THIS EMBODIMENT OR USES MEANS PLUS FUNCTION

7    LANGUAGE TO INVOKE THE LAW THAT SAYS YOU ARE LIMITED TO THE

8    EMBODIMENTS, WE SHOULDN'T BE EXERCISING CLAIM CONSTRUCTION IN A

9    WAY THAT LOOKS AT A SPECIFIC EMBODIMENTS AND LIMITS OR REWRITES

10    THE CLAIM LANGUAGE TO DO THAT.

11            THE COURT:  SURE.

12        SO HERE'S MY PROBLEM WITH THIS ONE.  THIS IS PARTICULARLY

13    COMPLICATED IN ITS FORM.  AND SO I MENTIONED THIS BEFORE, I

14    MIGHT BE PERSUADED THAT PLAIN AND ORDINARY MEANING WILL WORK ON

15    YOUR OTHER TWO, BUT I FEEL LIKE I'M KIND OF LEFT ON MY OWN

16    HERE, WHICH I'M NOT COMFORTABLE WITH.

17        I'M NOT SURE THIS, IF IT WENT TO THE JURY, WOULDN'T

18    ACTUALLY CAUSE US A BIG PROBLEM AT TRIAL ON WHAT IT MEANS AND

19    WHAT THE EXPERTS SAY IT MEANS.  AND YOU DIDN'T GIVE ME ANYTHING

20    TO WORK WITH.

21            MR. PAK:  SO YOUR HONOR, IF YOUR HONOR IS OPEN TO

22    FURTHER PROPOSALS ON THIS, I THINK THAT WE COULD DEAL WITH

23    THAT.  I WOULD ASK YOUR HONOR GOING BACK TO THE CLAIM LANGUAGE

24    AGAIN, IT'S REALLY ABOUT THE CLAIM LANGUAGE.

25            THE COURT:  YEAH.

1          MR. PAK:  AND A LOT OF THIS COMPLEXITY REALLY COMES

2    BACK BECAUSE WE ARE TRYING TO PARSE THIS ALTERNATIVE

3    CONSTRUCTIONS FROM ARISTA.

4          BUT IF YOU READ THE CLAIM LANGUAGE, IT'S CLEAR, YOU HAVE AN

5    INPUT COMMAND THAT HAS CONFIGURED IN IT AN EXTENSIBLE MARKUP

6    LANGUAGE FORMAT HAVING A CLI SYNTAX.  SO YOU HAVE AN EXTENSIBLE

7    MARKUP LANGUAGE FORMAT THAT HAS A CLI SYNTAX WITH CLI KEY WORDS

8    THAT ARE SEQUENCED ACCORDING TO CONFIGURATION RULES FOR THE CLI

9    COMMANDS.

10         THAT, TO AN ENGINEER, IS A RECIPE.  THAT TELLS YOU, TO FIND

11   INFRINGEMENT, I NEED TO LOOK FOR THESE THINGS.  DO I HAVE A

12   COMMAND THAT IS CONFIGURED IN SOME TYPE OF EXTENSIBLE MARKUP

13   LANGUAGE.  DOES THAT HAVE CLI SYNTAX BUILT INTO IT WITH KEY

14   WORDS THAT ARE SEQUENCED ACCORDING TO THE CONFIGURATIONS OF THE

15   RULES OF THE CLI COMMAND.

16         IF THEY WANT TO MAKE A NONINFRINGEMENT ARGUMENT LATER AND

17   AFTER THEY SEE OUR LITERAL INFRINGEMENT AND DOCTRINE OF

18   EQUIVALENCE ARGUMENT ON A PARTICULAR IMPLEMENTATION AND SAY,

19   YOUR HONOR, OUR EXPERT BELIEVES THIS ISN'T A WAY WHICH AN

20   ENGINEER WOULD HAVE DONE THIS AND HERE'S THE REASON WHY YOU

21   CAN'T CONSIDER THAT DOCTRINE OF EQUIVALENCE ARGUMENT, THAT'S

22   SUMMARY JUDGEMENT AND WE ARE GOING TO HAVE TIME AND THE

23   APPROPRIATE OPPORTUNITY TO DO THAT.

24         BUT SITTING HERE TRYING TO REVERSE ENGINEER THIS, AND I

25   THINK IT'S GOING TO JUST OPEN UP LOTS OF ADDITIONAL BRIEFING,

1    WE MAY HAVE TO GET IN FRONT OF YOUR HONOR AGAIN AND TALK ABOUT

2    THIS, I THINK THAT --

3            THE COURT:  DO YOU STILL STAND BY PLAIN AND ORDINARY?

4            MR. PAK:  I DO, YOUR HONOR.

5            THE COURT:  DOES DR. ALMEROTH DISCUSS THIS TERM?

6            MR. PAK:  YES, I DON'T KNOW IF HE DISCUSSED THIS

7    PARTICULAR LONGER PHRASE, BUT HE DID TALK ABOUT THE EXTENSIBLE

8    MARKUP LANGUAGE.

9            THE COURT:  YES, I UNDERSTAND THAT.

10           MR. PAK:  AND I THINK ONCE YOUR HONOR RESOLVES THAT,

11   THEN I THINK THIS IS SUBSUMED BY THAT.

12       IF WE ARE TALKING ABOUT ANY TYPE OF EXTENSIBLE MARKUP

13   LANGUAGE, WHICH IS OUR POSITION AND LOOKING AT THE VARIETY OF

14   DIFFERENT THINGS IN THE HISTORICAL RECORD, THEN IT MAKES NO

15   SENSE TO TRY TO REVERSE ENGINEER A CLAIM CONSTRUCTION THAT'S

16   TIED TO A SPECIFIC EMBODIMENT.

17       SO I THINK ONCE YOUR HONOR MAKES THAT RULING, ONE WAY OR

18   THE OTHER, I THINK WE WILL HAVE GUIDANCE ON THAT.

19           THE COURT:  ALL RIGHT.  I WILL TAKE A LOOK AT THAT.

20   I'M NOT ASKING FOR ANYTHING RIGHT NOW.  I APPRECIATE THAT.

21       HAVE REACHED THE END.

22           MR. SILBERT:  I THINK WE HAVE, CERTAINLY, YOUR HONOR.

23           THE COURT:  I COMMEND YOU.

24       YOU CERTAINLY KNOW HOW TO WATCH A CLOCK, AND I GUESS ED

25   TEXAS HAS TRAINED YOU WELL.  SO I BET THIS IS TWICE AS MUCH

```
1     TIME AS YOU WOULD HAVE BEEN GIVEN.  WELL, THANK YOU.

2               MR. SILBERT:  WE GET THIS MUCH TIME FOR THE TRIAL.

3               THE COURT:  YOU GET MAYBE AN EXTRA HOUR.

4        BUT THE ONLY QUESTION I ASK BEFORE I LET YOU GO, I DON'T

5     KNOW WHAT OUR NEXT STEP IS OTHER THAN SUMMARY JUDGEMENT.  ARE

6     YOU COMING BACK BEFORE THEN?

7               MR. PAK:  I DON'T THINK SO, YOUR HONOR.

8               MR. SILBERT:  I DON'T KNOW.  BUT AS YOUR HONOR -- I'M

9     NOT POSITIVE, BUT AS YOUR HONOR MENTIONS, IT MIGHT MAKE SENSE

10    TO HAVE SOME KIND OF CASE MANAGEMENT.

11              THE COURT:  YEAH, IT MIGHT.  I ONLY PLANT THIS, I

12    DON'T NEED YOUR RESPONSE.  I SHOEHORNED THIS TRIAL IN IN A WAY

13    THAT YOU HAVE PRETTY LIMITED TIME TO TRY THE CASE BEFORE A JURY

14    GOES HOME FOR THE HOLIDAYS.  AND IT WAS NOT MY INTENTION TO

15    GIVE YOU TIME AFTER NEW YEAR'S TO COME BACK AND FINISH UP.

16         SO YOU KNOW THE CALENDAR.  I THINK WE ARE PICKING THE JURY

17    THE DAY OR TWO BEFORE THANKSGIVING AND THEN WE COME BACK ON

18    WHATEVER, DECEMBER 1ST OR WHATEVER THAT DAY IS, AND YOU ARE OFF

19    TO THE RACES.  THAT'S THE TIME YOU HAVE.

20         AND SO THAT'S SORT OF THE BIG THING I WANT TO PLANT.

21    FRANKLY, ONCE WE GET BEYOND ABOUT TWO AND A HALF WEEKS WITH THE

22    JURY, OF EVIDENCE, THEY ARE GONE, YOU HAVE OVERSTAYED YOUR

23    WELCOME.

24         SO I THINK YOU KNOW THAT.  BUT I DO WANT TO MAKE SURE THAT

25    WE ARE ON THE SAME PAGE ON TRIAL TIME.
```

```
 1              MR. SILBERT:  I THINK, YES, WE UNDERSTAND THAT AND

 2     THAT'S A FEATURE OF THE CALENDAR.

 3         I WOULD JUST SAY THAT, TO ME, THAT JUST HIGHLIGHTS THE

 4     IMPORTANCE OF MAKING SURE THAT WHATEVER CASE MANAGEMENT WE CAN

 5     DO IN ADVANCE REALLY IS DONE IN ADVANCE.

 6         SO WE HAVEN'T TALKED ABOUT THIS BEFORE, I NEED TO CHECK

 7     MR. VAN NEST'S SCHEDULE, BUT I DO THINK IT MIGHT MAKE SENSE TO

 8     HAVE SOME CASE MANAGEMENT, TO HAVE A CONFERENCE SET BEFORE THE

 9     SUMMARY JUDGEMENT.

10              THE COURT:  I SET THE DAUBERT HEARING SEPARATE FROM

11     ANYTHING ELSE BECAUSE I FIND THAT MIGHT BE COMPLEX AND I DIDN'T

12     WANT IT TO COME WITH SUMMARY JUDGEMENT AND EVERYTHING.  SO

13     THAT'S ALL SET.

14         I WOULD -- YOU KNOW, I DON'T LIKE TO MAKE YOU COME IN WHEN

15     THERE'S NOTHING ON THE AGENDA, BUT I WOULD ASK YOU TO DISCUSS

16     WHETHER THERE IS AN AGENDA TO PUT TOGETHER FOR A PRODUCTIVE

17     CASE MANAGEMENT CONFERENCE, FOR YOU TO JUST CHECK IN WITH ME BY

18     TELEPHONE, I'M GLAD TO DO THAT IF IT'S THAT SIMPLE.

19         BUT WHY DON'T YOU TALK ABOUT IT.  AND IF YOU WANT CASE

20     MANAGEMENT, WHY DON'T YOU TALK TO MS. SALINAS-HARWELL AND PICK

21     A DATE THAT WILL WORK.

22         AND WE WILL GET IT ON THE CALENDAR.  BUT I'M GOING TO LEAVE

23     IT IN YOUR HANDS, ACTUALLY, TO LET ME KNOW WHAT THE ISSUES

24     WOULD BE.

25              MR. PAK:  THANK YOU, YOUR HONOR.
```

1          THE COURT:  ALL RIGHT.

2      WELL, THANK YOU ALL, THIS WAS REALLY AN EXCELLENT

3  PRESENTATION AND I APPRECIATE ALL THE GOOD WORK THAT WENT INTO

4  IT.

5          MR. PAK:  THANK YOU, YOUR HONOR.

6          MR. SILBERT:  THANK YOU, YOUR HONOR.  THANK YOU.

7      (WHEREUPON, THE PROCEEDINGS IN THIS MATTER WERE CONCLUDED.)

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1

2

3

4                          **CERTIFICATE OF REPORTER**

5

6

7

8           I, THE UNDERSIGNED OFFICIAL COURT

9    REPORTER OF THE UNITED STATES DISTRICT COURT FOR

10   THE NORTHERN DISTRICT OF CALIFORNIA, 280 SOUTH

11   FIRST STREET, SAN JOSE, CALIFORNIA, DO HEREBY

12   CERTIFY:

13           THAT THE FOREGOING TRANSCRIPT,

14   CERTIFICATE INCLUSIVE, CONSTITUTES A TRUE, FULL AND

15   CORRECT TRANSCRIPT OF MY SHORTHAND NOTES TAKEN AS

16   SUCH OFFICIAL COURT REPORTER OF THE PROCEEDINGS

17   HEREINBEFORE ENTITLED AND REDUCED BY COMPUTER-AIDED

18   TRANSCRIPTION TO THE BEST OF MY ABILITY.

19

20

21

22

23

24   _____
     SUMMER A. FISHER, CSR, CRR
25   CERTIFICATE NUMBER 13185          DATED: 4/8/16