Kathleen Sullivan (SBN 242261)
kathleensullivan@quinnemanuel.com
QUINN EMANUEL URQUHART &
SULLIVAN LLP
51 Madison Avenue, 22nd Floor
New York, NY 10010
Telephone: (212) 849-7000
Facsimile: (212) 849-7100

Sean S. Pak (SBN 219032)
seanpak@quinnemanuel.com
Amy H. Candido (SBN 237829)
amycandido@quinnemanuel.com
John M. Neukom (SBN 275887)
johnneukom@quinnemanuel.com.
QUINN EMANUEL URQUHART &
SULLIVAN LLP
50 California Street, 22nd Floor
San Francisco, CA 94111
Telephone: (415) 875-6600
Facsimile: (415) 875-6700

Mark Tung (SBN 245782)
marktung@quinnemanuel.com
QUINN EMANUEL URQUHART &
SULLIVAN LLP
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, CA 94065
Telephone: (650) 801-5000
Facsimile: (650) 801-5100

Steven Cherny *(admitted pro hac vice)*
steven.cherny@kirkland.com
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900

Adam R. Alper (SBN 196834)
adam.alper@kirkland.com
KIRKLAND & ELLIS LLP
555 California Street
San Francisco, California 94104
Telephone: (415) 439-1400
Facsimile: (415) 439-1500

Michael W. De Vries (SBN 211001)
michael.devries@kirkland.com
KIRKLAND & ELLIS LLP
333 South Hope Street
Los Angeles, California 90071
Telephone: (213) 680-8400
Facsimile: (213) 680-8500

*Attorneys for Plaintiff Cisco Systems, Inc.*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

| | |
|---|---|
| CISCO SYSTEMS, INC.,<br><br>Plaintiff,<br><br>vs.<br><br>ARISTA NETWORKS, INC.,<br><br>Defendant. | CASE NO. 5:14-cv-5344-BLF (PSG)<br><br>**CISCO SYSTEMS, INC.'S NOTICE OF MOTION AND MOTION FOR PROTECTIVE ORDER**<br><br>**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**<br><br>Date: June 28, 2016<br>Time: 10:00 a.m.<br>Place: Courtroom 5, 4th Floor<br>Judge: Hon. Paul S. Grewal |

**NOTICE OF MOTION**

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on June 28, 2016 at 10:00 a.m., or as soon as the matter may be heard by the Honorable Paul S. Grewal in Courtroom 5, United States District Court for the Northern District of California, Robert F. Peckham Federal Building, 280 South 1st Street, San Jose, CA 95113, Plaintiff Cisco Systems, Inc.'s ("Cisco") will, and hereby does move this Court to issue a protective order pursuant to Federal Rule of Civil Procedure 26 to prevent Defendant Arista Networks, Inc. ("Arista") from taking the deposition of Cisco's Executive Chairman of the Board, John Chambers. This motion is based on this notice of motion and supporting memorandum of points and authorities; the supporting declarations of John Chambers and Sara Jenkins; and such other written or oral argument as may be presented at or before the time this motion is taken under submission by the Court.

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Under well-established law, before Arista may take the deposition of Cisco's Executive Chairman of the Board, John Chambers, Arista must satisfy two conditions. ***First***, Arista must show that Mr. Chambers has unique, personal knowledge that is relevant to this case. ***Second***, Arista must show that it has exhausted less burdensome means of discovery. Arista can meet neither requirement here. Most importantly, Arista has not identified any relevant facts or information that is uniquely held by Mr. Chambers. Despite repeated requests from Cisco's counsel, Arista has not identified any such knowledge uniquely possessed by Mr. Chambers that is relevant to the claims or defenses at issue in this case and not repetitive of the knowledge of other non-apex witnesses. Moreover, Arista has not even come close to exhausting the many less burdensome avenues available to it for obtaining the discovery it claims to need. Because Arista cannot meet the conditional requirements for the deposition of an apex witness, a protective order should issue.

## II. STATEMENT OF FACTS

### General Overview of Cisco

Since 1984, Cisco has designed and sold broad lines of products and services, and delivered integrated solutions to develop and connect networks around the world, building the Internet. Jenkins Decl. Ex. 1. Cisco has over 70,000 employees in over 400 offices worldwide. *Id.*. In 2015, Cisco invested more than six billion dollars in research and development focused on creating the future of networking technologies. *Id*.

### Mr. Chambers' Career at Cisco

Mr. Chambers joined Cisco as Senior Vice President in January 1991 and began serving as a member of the Board in November 1993. Chambers Decl. at ¶ 3. He was promoted to Executive Vice President in June 1994. *Id*. He then assumed the roles of President and Chief Executive Officer in January 1995. *Id.* He served as President until November 2006, at which time he was appointed Chairman of the Board in addition to his CEO role. *Id.* Mr. Chambers

1  served as Chairman and CEO until July 2015, when he was appointed Executive Chairman of the
2  Board.  *Id.*
3      In his current role as Executive Chairman of the Board, Mr. Chambers' responsibilities
4  include building relationships with government and business leaders, shareholders, and Board
5  members.  *Id.* at ¶ 2.  He is an advisor to Cisco's CEO, Chuck Robbins, on various issues,
6  including the company's strategy, digital transformation, security, relationships and strategic
7  partnerships.  *Id.*
8      Mr. Chambers is not one of the inventors of the asserted patents in this case, nor did he
9  create any aspect of the asserted copyrighted works.  *Id*. at ¶ 4.  Other than attorney-client
10 privileged and work product communications with counsel for Cisco, Mr. Chambers' involvement
11 in any events or communications relevant to the claims and defenses at issue in lawsuit is limited
12 to communications regarding competition between Cisco and Arista – communications in which
13 other non-apex Cisco executives were involved.  *Id*. at ¶¶ 5-7.
14      <u>Arista's Requests to Depose Mr. Chambers</u>
15      On February 5, 2016, Arista filed its Supplemental Proposed Discovery Plan, requesting an
16 additional twenty depositions and "detailing Arista's plans for the 40 depositions that Arista has
17 requested."  Dkt. 181 at 1.  In that Supplemental Proposed Discovery Plan, Arista requested to
18 depose "2-3 competitive personnel" from Cisco and stated that "Arista intends to select two to
19 three witnesses from the following group:  Andrew Pletcher, Brian Osoro, Cesar Obediente,
20 Cynthia Broderick, Deepak Malik, Drago Sijan, John Chambers, Lilian Quan, Soni Jiandani, and
21 Wayne Ogazaly."  *Id.* at 6.
22      On February 17, 2016, the Court ordered that Arista may take an additional 5 depositions.
23 Dkt. 203 at 6.  With respect to the competitive personnel category in which Arista listed John
24 Chambers, the Court found that "Arista has shown a particularized need why it needs to depose
25 *one* individual from Cisco's team devoted to Arista," but "Arista has not shown why it needs more
26 than one deposition or how additional depositions would not be duplicative or redundant."  *Id.* at 5
27 (emphasis added).
28

4

1    On April 7, 2016, counsel for Arista wrote to counsel for Cisco, requesting among other
2 depositions, the deposition of John Chambers.  Jenkins Decl. Ex. 2.  On April 12, 2016, counsel
3 for Cisco responded to counsel for Arista regarding their recent deposition requests, including for
4 the deposition of John Chambers.  Jenkins Decl. Ex. 3.  In that letter, Cisco's counsel explained its
5 position that Arista was limited by Court order to taking the deposition of only *one* witness from
6 Cisco's internal teams devoted to competing with Arista, and that Arista had already notified
7 Cisco that it intended to take the deposition of Senior Vice President Soni Jiandani as its witness
8 in that category.  *Id.*

9    Counsel for Arista responded that same day, stating that Arista did not believe that the
10 Court's order limited Arista's choice of any deponent that it wanted to fill its twenty-five
11 deposition slots.  Jenkins Decl. Ex. 4.  Counsel for Cisco and Arista were unable to come to an
12 agreement on that issue and Arista filed a Motion for Clarification of the Court's prior orders to
13 clarify whether Arista was limited to using its depositions as Arista had set out in its Supplemental
14 Discovery Plan.  Dkt. 245.

15    At the Court's invitation, Dkt. 246, Cisco filed an opposition to Arista's Motion for
16 Clarification, making it clear that Cisco objected to the deposition of Mr. Chambers because
17 Arista was attempting to circumvent the limits the Court placed on discovery in this case and
18 because Mr. Chambers is an apex witness.  Dkt. 247 at 4.  In its Order, issued on April 15, 2016,
19 the Court disagreed with Cisco's understanding of the Court's discovery limits and stated that the
20 parties "are free to choose any deponents they wish to fill the initial 20 [deposition] slots."  Dkt.
21 249 at 1.  The Court did not address the apex issue regarding Mr. Chambers' deposition in its
22 Order.  *Id.*

23    On April 18, 2016, Arista notified Cisco that it was continuing to request the deposition of
24 Mr. Chambers.  Jenkins Decl. Ex. 5.  On April 19, 2016, Cisco's counsel objected to the request,
25 informing counsel for Arista that "Mr. Chambers does not have unique, first-hand, non-repetitive
26 and relevant knowledge of the facts at issue in this case" and requesting that Arista explain how it
27 claims to meet the test for the deposition of an apex witness.  Jenkins Decl. Ex. 6.
28

1  On May 4, 2016, Arista's counsel responded, citing five documents and deposition
2 testimony from Cisco Senior Vice President Soni Jiandani that it claimed established that Mr.
3 Chambers had unique and relevant knowledge.  Jenkins Decl. Ex. 7.  Each of the materials cited
4 by Arista addressed the subject of competition between Cisco and Arista.  *Id*.

5  On May 11, 2016, Arista's counsel sent counsel for Cisco a deposition notice for Mr.
6 Chambers, setting the deposition for May 27, 2016.  Jenkins Decl. Ex. 8.  On May 17, 2016,
7 Cisco's counsel informed Arista's counsel that Cisco had been investigating the documents that
8 Arista had cited in its May 4, 2016 email and requested a meet and confer call.  Jenkins Decl. Ex.
9 9.  Counsel for the parties spoke on May 17, 2016, but did not reach resolution.  Later that day,
10 Arista's counsel sent an email to Counsel for Cisco stating that if Cisco would not produce Mr.
11 Chambers for deposition, Arista expected Cisco would "file, pursuant to FRCP 26(c)(1), a motion
12 for a protective order." Jenkins Decl. Ex. 10.  Counsel for the parties spoke on May 20, 2016,
13 during which call counsel for Arista indicated that Arista would not be interested in pursuing an
14 expedited schedule for Cisco's Motion for Protective Order.  Jenkins Decl. ¶ 22.  On May 22,
15 2016, counsel for Arista sent counsel for Cisco an email regarding the briefing schedule for this
16 motion, in which Arista's counsel asserted that, in his May 20, 2016 deposition, Doug Gourlay, a
17 former employee of both Arista and Cisco, provided testimony regarding "Chambers' personal
18 involvement in Cisco's competitive efforts against Arista."  Jenkins Decl. Ex. 17.

19  To date, Arista has already noticed, or taken, the depositions of Andrew Pletcher, Deepak
20 Malik, Drago Sijan, and Soni Jiandani, all of whom were listed as "competitive personnel" in
21 Arista's Supplemental Discovery Plan.  Jenkins Decl. at ¶ 18; Dkt. 203 at 5.  In addition, Arista
22 has taken the deposition of John Hartingh, a member of Cisco's team focused on competition with
23 Arista.  *Id*.  Moreover, in the ITC Investigations between Cisco and Arista, the deposition and trial
24 transcripts of which are subject to a cross-use agreement in this case, Arista deposed so-called
25 "competitive personnel" Soni Jiandani, Cesar Obediente, Andrew Pletcher, and Wayne Ogozaly,
26 and Soni Jiandani testified at the ITC hearings.  *Id*.  Although Arista claimed that it only desired to
27 take two to three depositions of "competitive personnel," and although the Court found that
28 "Arista has not shown why it needs more than one deposition or how additional [competitive

1  personnel] depositions would not be duplicative or redundant," Arista now demands the deposition
2  of Mr. Chambers, who would be Arista's *sixth* deponent in the "competitive personnel" category.

3  **III.    LEGAL STANDARD**

4  High-ranking executives are protected from harassing and unnecessary depositions.  Under
5  Rule 26(c) of the Federal Rules of Civil Procedure, "[t]he court may, for good cause, issue an
6  order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or
7  expense," including forbidding a deposition or limiting its scope.  The concern regarding
8  "annoyance, embarrassment, oppression, [and] undue burden" is amplified when a party seeks to
9  depose high-ranking executives at the top of a corporation's hierarchy.  Indeed, "[v]irtually every
10 court that has addressed deposition notices directed at an official at the highest level or 'apex' of
11 corporate management has observed that such discovery creates a tremendous potential for abuse
12 or harassment."  *Celerity, Inc. v. Ultra Clean Holding, Inc.*, 2007 WL 205067, at *3 (N.D. Cal.
13 Jan. 25, 2007).  Accordingly, courts impose two requirements before ordering the depositions of
14 high-ranking executives.  First, the executive must have "unique first-hand, non-repetitive
15 knowledge of facts at issue in the case."  *WebSideStory, Inc. v. NetRatings, Inc.*, 2007 WL
16 1120567, at *2 (S.D. Cal. April 6, 2007).  Second, the party seeking the deposition must "exhaust
17 other less intrusive discovery methods, such as interrogatories and depositions of lower level
18 employees."  *Id*.

19 When "high-level decision maker[s are] 'removed from the daily subjects of the litigation'
20 [and have] no unique personal knowledge of the facts at issue," depositions of those executives are
21 improper.  *Celerity*, 2007 WL 205067, at *3 (quoting *Baine v. General Motors Corp.*, 141 F.R.D.
22 332, 334 (M.D. Ala. 1991)); *see also First United Methodist Church of San Jose v. Atl. Mutual
23 Ins. Co.*, 1995 WL 566026 (N.D. Cal 1995) (noting that "[b]ecause of the potential for abuse by
24 plaintiffs," courts preclude depositions of high-level corporate officers "when the officer has no
25 first-hand knowledge of the facts of the case *or* where the officer's testimony would be
26 repetitive").

27 Even if an executive has unique first-hand knowledge, a party must first exhaust the
28 depositions of lower level employees and establish a need to depose the high-ranking executive.

1  *Affinity Labs of Tex. v. Apple, Inc.*, 2011 WL 1753982, at *6-7 (N.D. Cal. May 9, 2011) (granting
2  Apple's motion for a protective order and noting that "[c]ourts regularly require interrogatories,
3  requests for admission, and depositions of lower level employees before allowing the deposition
4  of an apex witness"); *Mehmet v. Paypal, Inc.*, 2009 WL 921637, at *2 (N.D. Cal. Apr. 3, 2009)
5  (granting protective order and noting that "[c]ourts generally refuse to allow the immediate
6  deposition of high-level executives, the so-called 'apex deponents,' before the depositions of
7  lower level employees with more intimate knowledge of the case").

## IV.    ARGUMENT

### A.    MR. CHAMBERS' DEPOSITION IS NOT WARRANTED BECAUSE HE DOES NOT HAVE UNIQUE, NON-REPETITIVE, RELEVANT KNOWLEDGE.

As the Executive Chairman of the Board, and former CEO, Mr. Chambers' responsibilities at Cisco have been significant. However, Mr. Chambers does not have unique, non-repetitive knowledge of issues relevant to this case. Arista contends that Mr. Chambers has knowledge of competition and competitive strategy between Arista and Cisco. But, Mr. Chambers' knowledge of those issues is primarily second-hand information reported to him by other Cisco personnel. *See* Chambers Decl. ¶ 5. While he may have participated in a phone call or meeting with a customer, his knowledge of those engagements is not unique as members of the sales account team also would have participated. *See id.* Moreover, Mr. Chambers is not an inventor of the asserted patents, nor did he create any of the asserted copyrighted works. *Id.* at ¶ 4. Mr. Chambers' knowledge of the issues in the lawsuit itself is limited to attorney-client privileged communications that he has had with Cisco's counsel. *Id.* at ¶ 7. Cisco did not list Mr. Chambers on its original or supplemental initial disclosures and will not call Mr. Chambers at trial if he is not deposed. Jenkins Decl. at ¶ 19.

Mr. Chambers' limited second-hand knowledge and potential attendance at meetings with other Cisco executives is a stark contrast to the situation this Court addressed in *In re Google Litig.* 2011 WL 4985279 (N.D. Cal. Oct. 19, 2011). In that case, Larry Page was a named inventor on seven patents at issue, he was involved in relevant licensing negotiations, Google's discovery responses specifically referenced Larry Page and Sergey Brin's unique knowledge of

1  facts that were material to the case, and Google had listed both Messrs. Page and Brin on its initial
2  disclosures. *Id*. at *2. Even so, this Court ruled that Mr. Page could only be subjected to a
3  deposition for three hours and that Mr. Brin could not be deposed until such time as the plaintiff
4  could demonstrate that he possessed unique knowledge. *Id*. Here, where Mr. Chambers has no
5  similar connections to the facts at issue in this case, a deposition of Mr. Chambers is not
6  warranted.

7  Arista argues that it is entitled to depose Mr. Chambers because he "was directly involved
8  with Cisco's efforts to compete against Arista," citing five documents and one deposition excerpt
9  related solely to competition between the two companies. Jenkins Decl. Ex. 7. The documents
10 and testimony cited by Arista demonstrates that any knowledge that Mr. Chambers may have of
11 competition between Cisco and Arista is *not* unique. Notably, while four of the five documents
12 cited by Arista are emails, and there are over thirty-five authors and recipients of those emails, Mr.
13 Chambers is not an author, recipient or copyee of a single one. *See*. Jenkins Decl. Exs. 11 to 15.
14 Not surprisingly, Mr. Chambers does not recall having seen any of the documents before.
15 Chambers Decl. at ¶ 6.

16 Arista's argument for Mr. Chambers' deposition is premised on a series of misconceptions
17 and misinterpretations of various documents:

18 ███████████████████████████████████████
19 ███████████████████████████████████████
20 ███████████████████████████████████████
21 ███████████████████████████████████████
22 ███████████████████████████████████████
23 ███████████████████████████████████████
24 █████████████████████████████████
25 ███████████████████████████████████████
26 ████████████████████████████████████
27 ██████████████████████████████████
28 ████████████

1   CSI-ANI-00417560-61:  As another example, Arista argues that Mr. Chambers was
2   "directly involved with Cisco's efforts to complete against Arista and to conduct competitive
3   analysis of Arista's products," citing a February 27, 2014 Bryan Osoro email.  Jenkins Decl. Ex.
4   12. ███████████████████████████████████████████████
5   ███████████████████████████████████████████████████
6   ███████████████████████████████████████████████████
7   ███████████████████████████████████████████████████
8   ████████████████████████████████████████████████
9   ██████████████████████████████████████████████
10  explained, Cisco's competitive approach to Arista was no different than its approach to any other
11  ███████████████████████████████████████████████████
12  ███████████████████████████████████████████████████
13  █████████████████████████████████████████████████
14  ███████████████████████████████████████████████████
15  ████████████████████████████████████████████████
16  ███████████████████████████████████████████████████
17  ███████████████████████████████████████████████████
18  against all competitors, not just Arista."  Chambers Decl. ¶ 6.d.
19       ████████████████████████████████████████████
20  ███████████████████████████████████████████████████
21  ███████████████████████████████████████████████████
22  ¶ 6.d.  Moreover, he "did not get involved in approving discounts for any individual deals, and
23  ███████████████████████████████████████████████████
24  ███████████████████████████████████████████████████
25  ███████████████████████████████████████████████████
26  ██████████████████████████████████████████████
27  ███████████████████████████████████████████████████
28  ███████████████████████████████████████████████████

1 ▮▮▮
2 ▮

3      Alleged Customer Meetings (CSI-ANI-00056457; CSI-CLI-03270753-57 & CSI-CLI-
4 03225919-22): Arista cites three documents to argue that Mr. Chambers has unique, non-
5 ▮
6 ▮
7 however, do not demonstrate any unique, non-repetitive knowledge. Most importantly, even
8 assuming these meetings took place (which is not clear), Mr. Chambers did not attend such
9 customer meetings alone. *See* Chambers Decl. ¶¶ 6.b., 6.c. Rather, an executive or members of
10 Cisco's sales team responsible for the customer at issue would participate in the meeting with Mr.
11 Chambers. *Id.* Thus, Mr. Chambers by definition would not have ***unique*** knowledge regarding
12 any of these meetings, if they took place, which is reason alone to defeat Arista's request.

13      However, other than the "Project Leapfrog" presentation with one cryptic bullet point
14 referencing an undated meeting with an unnamed customer (which Mr. Chambers cannot recall,
15 *see* Chambers Decl. ¶ 6.b.), the other documents that Arista cites reference one ***prospective***
16 meeting and one ***proposed*** call or meeting, not customer meetings or calls that actually took place.
17 In reality, neither the planned meeting nor the proposed call or meeting ever took place. *See*
18 Chambers Decl. ¶¶ 6.c. & 6.e. Just because someone in a multi-national corporation suggests that
19 the CEO do something is not tantamount to the CEO actually doing it; nor does it demonstrate
20 unique, non-repetitive knowledge on the part of the CEO sufficient to justify a deposition of the
21 CEO. If that were the standard for an apex deposition, the deposition of every CEO in every case
22 would be a virtual certainty.

23      Deposition Testimony: The deposition testimony cited by Arista further demonstrates that
24 Mr. Chambers does not have any unique, non-repetitive knowledge regarding competition
25 between Cisco and Arista. Soni Jiandani, a Senior Vice President at Cisco, testified that Cisco
26 conducted monthly meetings where Mr. Chambers received a "competitive update." Jenkins Decl.
27 Ex. 16 at 239:17-25. By definition, if Mr. Chambers is the one receiving a monthly update, his
28 knowledge about the issue is not first-hand, but second-hand. *Cf. Doble v. Mega Life and Health*

1  *Ins. Co.*, 2010 WL 1998904, at *2 (N.D. Cal. May 18, 2010) (sending emails encouraging
2  employees to settle or stop negotiations with a specific insurance claimant "is not the level of
3  personal involvement which would justify deposition of the CEO").  Doug Gourlay, a former
4  employee of both Cisco and Arista, testified that he had been told second or third-hand about a call
5  and an in-person meeting between Mr. Chambers and a potential customer's CEO, but Mr.
6  Gourlay admitted that he didn't know whether other people had attended the call or meeting, or
7  even whether the call or meeting had actually happened at all.  Jenkins Decl. Ex. 18 at 150:21-
8  151:20.  Mr. Gourlay's testimony is pure conjecture, and does not establish that Mr. Chambers has
9  any unique, non-repetitive knowledge regarding competition between Cisco and Arista.
10 Therefore, Mr. Chambers should not be subject to a deposition until such time, if ever, that Arista
11 can establish that he has unique, non-repetitive, personal, first-hand knowledge of issues relevant
12 to the litigation.  *See In re Google Litig*., 2011 WL 4985279 (N.D. Cal. Oct. 19, 2011).

13  **B.  <u>MR. CHAMBERS' DEPOSITION IS NOT WARRANTED BECAUSE ARISTA HAS NOT EXHAUSTED LESS BURDENSOME DISCOVERY.</u>**

14  Instead of forcing one of Cisco's highest ranking executives to sit for a deposition to
15 question him about his limited, second-hand knowledge of competition with Arista -- an issue on
16 which there are numerous witnesses with direct, first-hand knowledge -- Arista should first be
17 required to depose the lower-ranking employees who actually prepared the reports and wrote the
18 emails that Arista has identified.  Cisco has, and is, providing Arista with more than sufficient
19 information from the persons most knowledgeable about the facts and circumstances related to this
20 case.  In addition to the twenty-five individual deponents that Arista has identified (Cisco is only
21 objecting to the deposition of Mr. Chambers), Arista also served a notice under FRCP 30(b)(6)
22 covering 133 topics.  Jenkins Decl. at ¶ 20.  Cisco has designated deponents for a large number of
23 these topics and is finalizing its designees for the remaining topics, subject to its objections.  *Id*.
24 Pursuant to Arista's Rule 30(b)(6) Notice, Cisco will be providing testimony on numerous topics
25 related to competition between Cisco and Arista.  *Id*.
26  Additionally, of the more than thirty-five people who either wrote or received the "key"
27 emails that Arista cited to try to show that Mr. Chambers has personal knowledge of competition
28

between the companies, Arista has only notified Cisco of its intent to depose three of them. Jenkins Decl. at ¶ 21. Of those, two depositions have already been taken, and the other one has been scheduled. *Id*. If, after completing all other depositions and Arista's Rule 30(b)(6) depositions, Arista is able to demonstrate that Mr. Chambers has unique, personal knowledge that is relevant to this case that Arista could not have obtained during the depositions of lower level employees, Arista could renew its request. *See Celerity*, 2007 WL 205067, at *3 (noting that granting a motion for a protective order "merely postpone[s]" apex depositions until a party can "demonstrate that other less intrusive discovery methods . . . are inadequate.").

## V. CONCLUSION

For the foregoing reasons, Cisco respectfully requests this Court grant its motion and adopt and enter its Proposed Protective Order.

Dated:  May 24, 2016                           Respectfully submitted,

*/s/ Amy H. Candido*

Kathleen Sullivan (SBN 242261)
kathleensullivan@quinnemanuel.com
QUINN EMANUEL URQUHART & SULLIVAN LLP
51 Madison Avenue, 22nd Floor
New York, NY 10010
Telephone: (212) 849-7000
Facsimile: (212) 849-7100

Sean S. Pak (SBN 219032)
seanpak@quinnemanuel.com
Amy H. Candido (SBN 237829)
amycandido@quinnemanuel.com
John M. Neukom (SBN 275887)
johnneukom@quinnemanuel.com.
QUINN EMANUEL URQUHART & SULLIVAN LLP
50 California Street, 22nd Floor
San Francisco, CA 94111
Telephone: (415) 875-6600
Facsimile: (415) 875-6700

Mark Tung (SBN 245782)
marktung@quinnemanuel.com
QUINN EMANUEL URQUHART & SULLIVAN LLP

555 Twin Dolphin Drive, 5th Floor
Redwood Shores, CA 94065
Telephone: (650) 801-5000
Facsimile: (650) 801-5100

Steven Cherny *admitted pro hac vice)*
steven.cherny@kirkland.com
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900

Adam R. Alper (SBN 196834)
adam.alper@kirkland.com
KIRKLAND & ELLIS LLP
555 California Street
San Francisco, California 94104
Telephone: (415) 439-1400
Facsimile: (415) 439-1500

Michael W. De Vries (SBN 211001)
michael.devries@kirkland.com
KIRKLAND & ELLIS LLP
333 South Hope Street
Los Angeles, California 90071
Telephone: (213) 680-8400
Facsimile: (213) 680-8500

*Attorneys for Plaintiff Cisco Systems, Inc.*