# EXHIBIT B

Trials@uspto.gov                                        Paper 10
571-272-7822                                    Entered: May 25, 2016

UNITED STATES PATENT AND TRADEMARK OFFICE
_____

BEFORE THE PATENT TRIAL AND APPEAL BOARD
_____

ARISTA NETWORKS, INC.,
Petitioner,

v.

CISCO SYSTEMS, INC.,
Patent Owner.
_____

Case IPR2016-00244
Patent 7,953,886 B2
_____

Before BRYAN F. MOORE, MIRIAM L. QUINN, and
MATTHEW R. CLEMENTS, *Administrative Patent Judges*.

MOORE, *Administrative Patent Judge*.

DECISION
Institution of *Inter Partes* Review
*37 C.F.R. § 42.108*

IPR2016-00244
Patent 7,953,886 B2

# I.    INTRODUCTION

Petitioner, Arista Networks, Inc., filed a Corrected Petition for *inter partes* review of claims 1–26 of U.S. Patent No. 7,953,886 B2 (Ex. 1001, "the '886 patent").  Paper 1 ("Pet.").  Patent Owner, Cisco Systems, Inc., filed a Preliminary Response.  Paper 9 ("Prelim. Resp.").  Institution of an *inter partes* review is authorized by statute when "the information presented in the petition . . . and any response . . . shows that there is a reasonable likelihood that the petitioner would prevail with respect to at least 1 of the claims challenged in the petition."  35 U.S.C. § 314(a); *see* 37 C.F.R. § 42.108.  Upon consideration of the Petition and the Preliminary Response, we conclude the information presented shows there is a reasonable likelihood that Petitioner would prevail in establishing the unpatentability of claims 1–10 of the '886 patent.

## A.  Related Matters

The parties state that the '886 patent is the subject of *Cisco Systems, Inc. v. Arista Networks, Inc.*, No. 5:14-cv-05344 (N.D. Cal.).  Pet. 3; Paper 8 (Patent Owner's Mandatory Notice).  Petitioner has also filed a number of other petitions requesting *inter partes* review of other patents owned by Patent Owner.

## B.    The '886 Patent

The '886 patent is directed to providing a comprehensive extensible markup language (XML) interface for monitoring and configuring a router, while still maintaining the command line interface (CLI).  Specifically, in

IPR2016-00244
Patent 7,953,886 B2

the disclosed embodiment, the '886 patent solution translates XML-based input to CLI input and translates CLI output to XML-based output.  XML is a markup language that defines a set of rules for describing data by adding identifiers to indicate logical components or layout of the data.  The XML-based input and XML-based output may be formatted according to an XML schema.

A known method for configuring and monitoring a router was through the use of a CLI.  A CLI allows users to "send[] commands and instructions to and receive information from the router itself."  Ex. 1001, 1:12–15.

At the time of the invention many users had developed "complicated scripts to handle various configuration and access needs."  *Id.* at 1:21–22. The CLI interfaces were not originally developed with an eye towards automation.  *Id.* at 1:30–34.  For example, the format of CLI output was not uniform, and thus was difficult to process automatically.  *Id.*  Accordingly, this meant that the commands in CLIs were "a very difficult and cumbersome task to automate."  *Id.* at 1:32–33.

The '886 patent addresses these problems by providing the same CLI commands that users were accustomed to while also "allow[ing] for an easy, more structured approach to accessing and configuring a router."  *Id.* at 1:34–38.  Specifically, in one embodiment, the system of the '886 patent provides an "IOS/CLI Parser 110" that can handle commands formatted both in accordance with normal "CLI rules and behaviors" and "in accordance with an XML schema of CLI rules and behaviors."  *Id.* at 3:22–29.  The CLI parser in this embodiment also is capable of outputting CLI responses "into

3

IPR2016-00244
Patent 7,953,886 B2

an XML response in accordance with an XML schema of the CLI rules and behaviors." *Id.* at 3:46–50.

### C. Illustrative Claim

Of the challenged claims, claims 1 and 6 are the independent claims. Claim 1, reproduced below, is illustrative.

1. A method comprising:

receiving, with a command line interface (CLI) parser, an input command configured to request an operation be performed by a routing system, wherein the input command is configured in an extensible markup language (XML) format having a CLI syntax with CLI keywords sequenced according to configuration rules for CLI commands;

translating, with the CLI parser, the input command from the XML format having the CLI syntax into a CLI command that, when executed, is configured to prompt the routing system to perform the operation, wherein the translating of the input command into the CLI command includes identifying at least one XML tag that includes an XML parameter to indicate the XML tag includes one or more CLI keywords, extracting the one or more CLI keywords from the input command, and arranging the one or more CLI keywords into the CLI command according to the CLI syntax of the input command, wherein the routing system is configured to perform the operation responsive to the execution of the CLI command;

translating an output message, generated in response to performance of the operation, from a CLI format into an XML format having the CLI syntax, wherein the translating includes parsing the output message to identify at least one CLI token, translating each CLI token of the output message into a corresponding XML value according to a stored mapping of

4

IPR2016-00244
Patent 7,953,886 B2

> CLI tokens-to-XML values, and generating the output message
> in the XML format with the XML values; and
>
> transmitting the output message in the XML format having the
> CLI syntax to a remote device external from the routing system.

Ex. 1001, 7:37–8:3.

### D. Prior Art Relied Upon

Petitioner relies upon the following prior art reference:

| | | |
|---|---|---|
| Courtney | US 7,200,548 B2 Apr. 3, 2007 | (Ex. 1002) |
| Gorthy | US 8,296,400 B2 Oct. 23, 2012 | (Ex. 1003) |
| Froyd | US 7,155,496 B2 Dec. 26, 2006 | (Ex. 1004) |
| JUNOScript API Guide Release 5.1 (2d ed.), Nov. 6, 2001 ("the JUNOScript Guide") | | (Ex. 1005) |

### E. Asserted Ground of Unpatentability

Petitioner asserts the following ground of unpatentability:

| Challenged Claims | Basis | Reference |
|---|---|---|
| 1–10 | § 103 | Gorthy, Courtney, Froyd, and the JUNOScript Guide |

## II.    ANALYSIS

### 1. Claim Construction

In an *inter partes* review, claim terms in an unexpired patent are given their broadest reasonable construction in light of the specification of the patent in which they appear.  37 C.F.R. § 42.100(b); *see also In re Cuozzo*

5

IPR2016-00244
Patent 7,953,886 B2

*Speed Techs., LLC*, 793 F.3d 1268, 1278–79 (Fed. Cir. 2015) ("Congress implicitly adopted the broadest reasonable interpretation standard in enacting the AIA," and "the standard was properly adopted by PTO regulation."), *cert. granted sub nom. Cuozzo Speed Techs., LLC v. Lee*, 136 S. Ct. 890 (2016) (mem.).  Under the broadest reasonable interpretation standard, claim terms are given their ordinary and customary meaning as would be understood by one of ordinary skill in the art in the context of the entire disclosure.  *In re Translogic Tech., Inc.*, 504 F.3d 1249, 1257 (Fed. Cir. 2007).

We have considered Petitioner's proposed construction of certain claim terms; however, we find that no term needs to be explicitly construed for the purpose of this Decision.  *See Vivid Techs., Inc. v. Am. Sci. & Eng'g, Inc.*, 200 F.3d 795, 803 (Fed. Cir. 1999) (only those terms which are in controversy need to be construed and only to the extent necessary to resolve the controversy).

### 2. *Principles of Law*

A patent claim is unpatentable under 35 U.S.C. § 103(a) if the differences between the claimed subject matter and the prior art are such that the subject matter, as a whole, would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains.  *KSR Int'l Co. v. Teleflex Inc*., 550 U.S. 398, 406 (2007).  The question of obviousness is resolved on the basis of four underlying factual determinations:  (1) the scope and content of the prior art; (2) any differences between the claimed subject matter and the prior art;

6

IPR2016-00244
Patent 7,953,886 B2

(3) the level of ordinary skill in the art; and (4) objective evidence of nonobviousness. *Graham v. John Deere Co.*, 383 U.S. 1, 17–18 (1966).

In that regard, an obviousness analysis "need not seek out precise teachings directed to the specific subject matter of the challenged claim, for a court can take account of the inferences and creative steps that a person of ordinary skill in the art would employ." *KSR*, 550 U.S. at 418; *see also Translogic*, 504 F.3d at 1259. A prima facie case of obviousness is established when the prior art itself would appear to have suggested the claimed subject matter to a person of ordinary skill in the art. *In re Rinehart*, 531 F.2d 1048, 1051 (CCPA 1976).

The level of ordinary skill in the art may be reflected by the prior art of record. *See Okajima v. Bourdeau*, 261 F.3d 1350, 1355 (Fed. Cir. 2001); *In re GPAC Inc.*, 57 F.3d 1573, 1579 (Fed. Cir. 1995); *In re Oelrich*, 579 F.2d 86, 91 (CCPA 1978). We analyzed the asserted grounds of patentability with these principles in mind.

### 3. Obviousness of Claims over Courtney, Gorthy, Froyd, and the JUNOScript Guide

Petitioner asserts that claims 1–10 are unpatentable under 35 U.S.C. § 103(a) as obvious over the combination of Courtney in light of Gorthy, Froyd, and the JUNOScript Guide. Pet. 25. To support its contentions, Petitioner provides detailed explanations as to how the prior art meets each claim limitation. *Id.* at 25–60. Petitioner also relies upon a Declaration of Dr. Douglas W. Clark, who has been retained as a declarant by Petitioner for the instant proceeding. Ex. 1018.

IPR2016-00244
Patent 7,953,886 B2

Courtney discloses a "system and method for modeling the configuration of a network device" that may include "a CLI-to-XML converter" such as described in Gorthy. Ex. 1002, 2:32–37, 3:7–11. Courtney allows "model[ling] a network device's configuration" by "converting it into a standard-format configuration such as an XML document or a DOM." *Id.* at 2:40–45. Courtney states "instead of being forced to manipulate a difficult CLI-based configuration format, or other format[,] system administrators can use the standard-format configuration to interact with the target network device." *Id.* at 2:48–51. In order to perform the translation to XML, the system could "generate[] an XML representation of each native-format command in the network device's configuration by associating each command with the schema, or its hash representation." *Id.* at 3:23–27; *see also id.* at 6:50–53 ("[T]he XML converter 235, using the appropriate schema, generates an XML document containing an XML representation of the network device's configuration."). The Courtney system uses schema information to take the native-format configuration and "assemble the XML-based command and write it to the corresponding XML document." *Id.* at 7:31–36. That process is repeated for each command in the device's native-format configuration until "all native-format commands have been converted." *Id.* at 7:37–48.

Gorthy discloses a configuration schema that is generated by collecting the commands used with a Cisco router. Ex. 1003 at 2:30–59. That configuration schema can then "be used to generate commands." *Id.* at 2:63–65; *see also id.* at 3:9–11 ("[T]he schema can be used to generate CLI commands from, for example, XML-based commands."). Thus, "[w]hen

8

IPR2016-00244
Patent 7,953,886 B2

given a command in XML format, the command information in the configuration schema can be used to reformat the XML-based command into a proper CLI format." *Id.* at 3:13–16. After reformatting, the command can be sent to the router. *See id.* at 3:16–19. The invention of Gorthy allows an "XML-based command [to] be passed to the converter 235 which converts the XML-based command to a CLI-based command using the XML schema." *Id.* at 6:9–11. Thereafter, the "CLI-based command, not the XML command, can then be passed to the configuration storage module 145 where it is integrated into the configuration of the router." *Id.* at 6:11–14.

Froyd is generally directed to a system for "storing and restoring system configuration using generalized markup language." Ex. 1004, 1:13–15. Froyd discloses that "[p]lacing the statistic information into the XML format also allows the statistic information to be used by other devices capable of processing data in the XML format." *Id.* at 15:60–63. "In one embodiment, the configuration file is saved in XML format. When a restore function is invoked, the configuration file 818 is processed into CLI command lines. The CLI command lines are fed back to the CLI 805." *Id.* at 12:44–48. Froyd also discloses that "XML can be used to create a new set of commands that describe[s] commands associated with a Lucent router such that the new set of commands is consistent with commands associated with routers from Cisco." *Id.* at 11:20–24.

The JUNOScript Guide describes the use of the JUNOScript application programming interface (API) to configure or request information

9

IPR2016-00244
Patent 7,953,886 B2

from software running on Juniper Networks routers. Ex. 1005, 9.[1]  The JUNOScript API uses XML tags that describe router components to perform these operations.  *Id*.  The JUNOScript Guide states "[c]onfiguration requests correspond to the JUNOS CLI configuration statements described in each of the JUNOS Internet software configuration guides.  The JUNOScript API defines a tag for every container and leaf statement in the JUNOS configuration hierarchy."  *Id.* at 32.  The JUNOScript Guide describes XML tags, noting that the tags "make it straightforward for client applications that request information from a router to parse the output and find specific information."  *Id.* at 17.  The JUNOScript Guide states "[t]o display the output from a JUNOS CLI command as JUNOScript tags rather than the default formatted ASCII, pipe the command to the display xml command."  *Id.* at 37.

### a)    *Petitioner's Contentions*

The present record supports the contention that the combination of Courtney, Gorthy, and Froyd[2] describes receiving, with a command line interface (CLI) parser, as recited in claim 1.  Pet. 25–29; Ex. 1003 (multiple paragraphs cited in petition).  The present record also supports the contention that the combination of Courtney, Gorthy, and Froyd describes translating the input command as recited in claim 1, for example.  Pet. 29–

---

[1] Citations are to the page numbers added by Petitioner.

[2] Because we are persuaded, on this record, that the limitations of the challenged claims are taught by the combination of Gorthy, Courtney, and Froyd, we need not determine whether we are persuaded by Petitioner's reliance upon the JUNOScript Guide.

10

IPR2016-00244
Patent 7,953,886 B2

36; Ex. 1003 (multiple paragraphs cited in petition). The present record also supports the contention that the combination of Courtney, Gorthy, and Froyd describes translating an output message as recited in claim 1. Pet. 36–41; Ex. 1003 (multiple paragraphs cited in petition). The present record also supports the contention that the combination of Courtney, Gorthy, and Froyd describes transmitting the output message in the XML format having the CLI syntax to a remote device external from the routing system as recited in claim 1. Pet. 41–42; Ex. 1003 (multiple paragraphs cited in petition). Finally, Petitioner provides a persuasive reason to combine Courtney, Gorthy, and Froyd. Pet. 22–25.

b) *"Generated in response to performance of the operation"*

Patent Owner focuses on the claimed "operation" to be performed. Claim 1 recites:

> receiving, with a command line interface (CLI) parser, an input command configured to request **an operation** be performed by a routing system . . . the input command from the XML format having the CLI syntax into a CLI command that, when executed, is configured to prompt the routing system to perform **the operation** . . .

> wherein the routing system is configured to perform **the operation** responsive to the execution of the CLI command;

> translating an output message, generated in response to performance of **the operation** …

(emphasis added). Patent Owner argues that Courtney does not teach that the alleged output message being translated was "generated in response to

11

IPR2016-00244
Patent 7,953,886 B2

performance of the operation" that was requested in the alleged XML-formatted input message, as required by claim 1. Prelim. Resp. 19. Specifically, Patent Owner argues that "Courtney's router configuration is not retrieved in response to executing any command, let alone an XML-formatted input command message [and] Courtney explicitly states that the router configuration is retrieved directly 'from the configuration storage module' in its 'native format' not in response to a CLI command." *Id.* at 21 (citing Ex. 1002, 2:40–45.). Patent Owner's argument is not persuasive.

Petitioner's asserted ground of unpatentability for claim 1 is based on obviousness, not anticipation. Pet. 24–32. Therefore, Petitioner does not have to show that the limitations of claim 1 are disclosed expressly or inherently in Courtney alone. *See Trintec Indus., Inc. v. Top-U.S.A. Corp.*, 295 F.3d 1292, 1297 (Fed. Cir. 2002). Petitioner must show only that this limitation of claim 1 is taught by the combination of references. As explained below, Petitioner relies on a combination of references to show that router configuration can be retrieved in response to a CLI command.

Petitioner relies on Gorthy, not Courtney, to teach a command whose output message is translated. Specifically, Petitioner cites Gorthy's "command extraction mode" that can "retrieve[] the primary commands, subcommands and bounds" of a system. Pet. 37 (citing Ex. 1003, 4:50–51; Ex. 1002, 4:48–49 ("available commands are returned through the CLI")). Petitioner then states that, "[m]essages output in response to *such commands requesting configuration information regarding a system* can thereafter be converted into XML format." *Id.* (emphasis added). We understand Petitioner to be relying upon output messages generated in response to

12

IPR2016-00244
Patent 7,953,886 B2

execution of the primary commands, subcommands, and bounds—not upon output messages generated in response to execution of the "command extraction mode" command.  *Id.*

Patent Owner argues further that "a person of ordinary skill in the art would not use Gorthy's "command extraction" mode to retrieve the router configuration as described in Courtney" because (1) "the universe of commands a router can accept is plainly not the same as the configuration of the router;" and (2) an exemplary one of Gorthy's "service" commands is "merely a command that an administrator can enter into the CLI [that] when executed, may trigger a change to the configuration of the router, but merely the fact that a router can receive this command is not the configuration of a router."  Prelim. Resp. 23.  Again, Petitioner relies upon output messages generated in response to execution of one of Gorthy's primary commands, subcommands, and bounds—not upon output messages generated in response to execution of Gorthy's "command extraction mode" command (i.e., what Patent Owner calls "the universe of commands a router can accept").  This is consistent with Petitioner's analysis for the "receiving step," where Petitioner relies on Gorthy to show the claimed input CLI command that requests an operation.  Pet. 26.  Petitioner states "[t]he exemplary schema of Appendix B, which is used to generate certain of the exemplary CLI commands in Appendix A, for example, defines certain 'service' configuration commands that would request an operation be performed by a routing system."  *Id.*

As to whether the output of Gorthy's commands could be translated into XML, Petitioner relies on the knowledge of one of ordinary skill in the

13

IPR2016-00244
Patent 7,953,886 B2

art to show that "one sort of output message that can be translated is an output message providing the current configuration of the system." Pet. 36 (citing Ex. 1018 (Clark Decl.) ¶76.). For the purpose of this Decision, we credit the testimony of Petitioner's declarant. Ex. 1018 ¶76. Petitioner provides an example of an XML-formatted input command to request an operation, e.g., one of Gorthy's service commands. *Id.* Petitioner relies upon Courtney only to teach that the output message generated in response to that command can be output in XML format. On this record, we are persuaded that a person of ordinary skill in the art would have found it obvious to use the CLI-to-XML translator described in Courtney to translate the output message generated by Gorthy's command into an XML-based format. *See Randall Mfg. v. Rea*, 733 F.3d 1355, 1362–63 (Fed. Cir. 2013); *Ariosa Diagnostics v. Verinata Health, Inc.*, 805 F.3d 1359, 1365 (Fed. Cir. 2015). Thus, on the current record, we are not persuaded by Patent Owner's arguments.

### c) The JUNOScript Guide

Because we are persuaded, on this record, that the limitations of the challenged claims are taught by the combination of Gorthy, Courtney, and Froyd, we need not determine whether we are persuaded by Petitioner's reliance upon the JUNOScript Guide. Nevertheless, because the JUNOScript Guide is still a part of the asserted ground and because its teachings may reinforce teachings of the other references and indicate the background knowledge of one of ordinary skill in the art, we address the parties' contentions regarding the JUNOScript Guide below.

IPR2016-00244
Patent 7,953,886 B2

Petitioner argues, in the alternative, that JUNOScript's XML API translates CLI output into XML output.  Pet. 38–39 (citing Ex. 1005, 17). As Patent Owner argues (Prelim. Resp. 24), however, the cited portion of the JUNOScript Guide does not describe translating a CLI command or parsing CLI input.  The cited text merely contrasts the two different output formats—ASCII and XML—to describe the "advantages" XML provides to those using the JUNOScript API.  Ex. 1005, 17.

Petitioner also argues, in the alternative, that JUNOScript's "pipe" function combined with the "display xml" command performs the claimed output translation.  Pet. 39–41.  Patent Owner argues that Petitioner does not explain how JUNOScript's "pipe" functions and "display xml" command translates an output message generated in response to an operation requested in an XML-formatted input command.  Prelim. Resp. 24, 26–29.  Petitioner, however, relies upon the output of Gorthy's commands, not upon JUNOScript's "pipe" function or "display xml" commands, to teach the recited "output message, generated in response to performance of the operation [requested by the XML-formatted input command]."  Pet. 39–41. Patent Owner also argues that Petitioner has not shown that it is inherent that JUNOScript's "pipe" function and "display xml" command translate CLI to XML "according to a stored mapping of CLI tokens-to-XML values," as required by claim 1, because the router's native output is XML-formatted. Prelim. Resp. 24, 30–32 (citing Ex. 2002; Ex. 2003).  On this record, we are persuaded that a CLI to XML translation is not inherent.  Petitioner argues not only inherency, however, but also obviousness.  Pet 40–41 ("it is both inherent *and obvious* that the JUNOScript API translates the output message

15

IPR2016-00244
Patent 7,953,886 B2

'according to a stored mapping of CLI tokens-to-XML values,' as there would be no other way for the software to produce the XML output from a pipe ('I') function, which uses the default CLI command output as the input for the 'display xml' function") (citing Clark Decl. ¶ 82). On this record, we credit the testimony of Petitioner's declarant that such a conversion would have been obvious.

### d)     Reason to Combine

Patent Owner argues that Petitioner does not explain how the references would be selected and combined to achieve the claimed invention as a whole rather than claim limitation by claim limitation. Prelim Resp. 32-33. Patent Owner also asserts that

> even assuming that Froyd, Gorthy and Courtney [] each describe "translations to and from XML," Petitioner still has not met its burden of explaining why a person of ordinary skill in the art would apply the teachings of Froyd to Gorthy and Courtney. Simply describing the same system is not enough—Petitioner needs to show why a person of skill in the art would choose the particular teachings Petitioner is relying on from Froyd to combine with Gorthy and Courtney.

*Id.* at 34. We are not persuaded by this argument. Petitioner provided citations to Courtney that suggest that the conversion of CLI to XML is the object of the Courtney invention. Pet. 23. These are the aspects of Gorthy and Froyd which the Petitioner seeks to combine with Courtney. These are also the aspects of the prior art to which the claim limitations are directed. Thus, we are not persuaded by this argument.

Petitioner also contends that a person of ordinary skill in the art would combine the JUNOScript Guide with the other references because each of

16

IPR2016-00244
Patent 7,953,886 B2

the references "relate[] to using XML-tagged commands to configure and request information from routers," and that the "inventions complement each other."  Pet. 35.  Petitioner cites to a portion of the JUNOScript Guide that at least discusses the conversion of ASCII formatted commands to XML formatted tags.  *Id.* at 39–41.

Patent Owner suggests that the JUNOScript Guide teaches away from converting from CLI.  Prelim. Resp. 35.  "In general, a reference will teach away if it suggests that the line of development flowing from the reference's disclosure is unlikely to be productive of the result sought by the applicant." *In re Gurley*, 27 F.3d 551, 553 (Fed. Cir. 1994).  "What a reference teaches and whether it teaches toward or away from the claimed invention are questions of fact."  *Winner Int'l Royalty Corp. v. Wang*, 202 F.3d 1340, 1349 (Fed. Cir. 2000) (internal quotations omitted).  "[O]bviousness must be determined in light of all the facts, and there is no rule that a single reference that teaches away will mandate a finding of nonobviousness."  *Medichem, S.A. v. Rolabo*, S.L., 437 F.3d 1157, 1165 (Fed. Cir. 2006).  "Where the prior art contains 'apparently conflicting' teachings (i.e., where some references teach the combination and others teach away from it) each reference must be considered for its power to suggest solutions to an artisan of ordinary skill . . . consider[ing] the degree to which one reference might accurately discredit another."  *Id.* (internal quotations omitted).  Here, for the purpose of this decision, Petitioner has shown sufficient rationale that there is a reasonable likelihood that a person of ordinary skill would have been motivated to combine the JUNOScript Guide with Courtney, Gorthy, and Froyd.  The JUNOScript Guide does point out problems with CLI

17

IPR2016-00244
Patent 7,953,886 B2

conversion (or conversion from ASCII formatting) (Ex. 1005, 17). This is not conclusive on the issue, however. *Winner Int'l Royalty Corp.*, 202 F.3d at 1349 n.8 ("The fact that the motivating benefit comes at the expense of another benefit, however, should not nullify its use as a basis to modify the disclosure of one reference with the teachings of another. Instead, the benefits, both lost and gained, should be weighed against one another."). Nevertheless, Courtney, Gorthy, and Froyd would have provided insight to that discussion for one of ordinary skill in the art, and Courtney, Gorthy, and Froyd promote CLI conversion. On this record, we are not persuaded that the JUNOScript Guide teaches away from combination of its CLI to XML translation with the other asserted references.

e)      *Claims 2–10*

Claim 1 is similar in scope to independent claim 6. The parties argue these claims collectively, choosing claim 1 as representative. *See, e.g.*, Pet. 52–56; Prelim. Resp. 8. Accordingly, the previous discussion with respect to claim 1 equally applies to claim 6. For claims 2–5 and 7–10, each of which depends directly or indirectly from either independent claim 1 or independent claim 6, on this record, we agree with Petitioner's showing, which we adopt as our own, that the combination of Courtney, Gorthy, and Froyd teach the additional limitations of claims 2–5 and 7–10. Patent Owner does not argue these claims separately. PO Resp. 8.

f)      *Whether the JUNOScript Guide is a Printed Publication*

Lastly, we have considered Patent Owner's argument that the JUNOScript Guide has not been shown to be publicly available as of what

18

IPR2016-00244
Patent 7,953,886 B2

Patent Owner asserts is the critical date in this case, July 8, 2005.  Prelim.

Resp. 36–38.  Specifically, Patent Owner argues

> Petitioner believes JUNOScript was published on November 6,
> 2001 because the JUNOScript document states that it was revised
> on '6 November 2001' and has a copyright date of '2001.'
> (JUNOScript, p. 2.)   But it is well settled that the mere
> appearance of dates in document, such as copyright dates or
> revision dates, do not establish that the document was available
> to and/or disseminated to the public.

*Id*. at 37 (citation omitted).

We note, however, that when determining the threshold issue of
whether a reference is a printed publication for purposes of a decision on
institution, a copyright notice has been accepted as prima facie evidence of
publication.  *See Ford Motor Co. v. Cruise Control Techs. LLC*, Case
IPR2014-00291, slip op. at 7–8 (PTAB June 29, 2015) (Paper 44) (citing
*FLIR Sys., Inc. v. Leak Surveys, Inc.*, Case IPR2014-00411, slip op. at 18-19
(PTAB Sept. 5, 2014) (Paper 9)).  We are not bound by those determinations
or the determinations cited by Patent Owner.  Nevertheless, we also note that
the JUNOScript Guide is a guide for a commercial product and is dated
many years before the critical date.  Thus, on this record and for purposes of
this decision, we are persuaded that the presence of a copyright notice, given
the circumstances of this case, is sufficient evidence of public accessibility
as of the critical date to meet the "reasonable likelihood" threshold for
institution.

We note explicitly that we have *not* determined whether the present
record contains sufficient evidence of public accessibility to satisfy the
"preponderance of the evidence" standard that will be applied at the time of

19

IPR2016-00244
Patent 7,953,886 B2

our Final Written Decision, if any. Thus, the parties may want to further develop this issue during the trial. *See Palo Alto Networks, Inc., v. Juniper Networks, Inc.*, Case IPR2013-00369, slip op. at 3 (PTAB Feb. 5, 2014) (Paper 37) (granting a motion to submit supplemental information because, *inter alia*, "the supplemental information Petitioner seeks to submit does not change the grounds of unpatentability authorized in this proceeding, nor does it change the evidence initially presented in the Petition to support those grounds of unpatentability"). Petitioner will have an opportunity to respond to a Patent Owner Response in a Reply. Such a Reply, however, may respond only to arguments raised in the Patent Owner Response. 37 C.F.R. § 42.23(b). The Reply may cite new evidence, such as declarations, references, and other documents, as long as that evidence responds to Patent Owner's arguments and is relevant to the grounds as instituted.

### 2.    Summary

We have reviewed the proposed ground of obviousness over the JUNOScript Guide, Courtney, Gorthy, and Froyd against claims 1–10, and we are persuaded, at this juncture of the proceeding, that Petitioner has established a reasonable likelihood that Petitioner would prevail in its challenge to claims 1–10 on this ground.

### III.    CONCLUSION

For the foregoing reasons, we determine that the information presented in the Petition establishes that there is a reasonable likelihood that Petitioner would prevail in challenging claims 1–10 of the '886 patent. At this juncture, we have not made a final determination with respect to the

IPR2016-00244
Patent 7,953,886 B2

patentability of the challenged claims, nor with respect to claim
construction.

## IV. ORDER

For the foregoing reasons, it is

ORDERED that pursuant to 35 U.S.C. § 314(a), an *inter partes*
review is hereby instituted for the following grounds of unpatentability:

| Claims | Basis | References |
|--------|-------|------------|
| 1–10 | § 103 | Gorthy, Courtney, Froyd, and the JUNOScript Guide |

FURTHER ORDERED that no other ground of unpatentability
asserted in the Petition is authorized for this *inter partes* review; and

FURTHER ORDERED that pursuant to 35 U.S.C. § 314(c) and
37 C.F.R. § 42.4, notice is hereby given of the institution of a trial; the trial
will commence on the entry date of this decision.

IPR2016-00244
Patent 7,953,886 B2

PETITIONER:

Leo Lam
llam@kvn.com

Eugene M. Paige
EPaige@kvn.com


PATENT OWNER:

Lori A. Gordon
Robert Greene Sterne
Jon E. Wright
Daniel S. Block
lgordon-PTAB@skgf.com
rsterne-PTAB@skgf.com
jwright-PTAB@skgf.com
dblock-PTAB@skgf.com