# REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

KEKER & VAN NEST LLP
ROBERT A. VAN NEST - # 84065
BRIAN L. FERRALL - # 160847
DAVID SILBERT - # 173128
MICHAEL S. KWUN - #198945
ASHOK RAMANI - # 200020
633 Battery Street
San Francisco, CA 94111-1809
Telephone:   (415) 391-5400
Email:  rvannest@kvn.com;
bferrall@kvn.com; dsilbert@kvn.com;
mkwun@kvn.com, aramani@kvn.com

SUSAN CREIGHTON, SBN 135528
SCOTT A. SHER, SBN 190053
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
1700 K Street NW, Fifth Floor
Washington, D.C., 20006-3817
Telephone:  (202) 973-8800
Email:  screighton@wsgr.com;
ssher@wsgr.com

JONATHAN M. JACOBSON, NY SBN 1350495
CHUL PAK (*pro hac vice*)
DAVID H. REICHENBERG (*pro hac vice*)
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
1301 Avenue Of The Americas, 40th Floor
New York, NY 10019-6022
Telephone:  (212) 999-5800
Email:  jjacobson@wsgr.com; cpak@wsgr.com;
dreichenberg@wsgr.com

Attorneys for Defendant ARISTA NETWORKS, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| CISCO SYSTEMS, INC.,<br><br>            Plaintiff,<br><br>      v.<br><br>ARISTA NETWORKS, INC.,<br><br>            Defendant. | Case No. 5:14-cv-05344-BLF<br><br>**DEFENDANT ARISTA NETWORKS, INC.'S OPPOSITION TO PLAINTIFF CISCO SYSTEMS, INC.'S MOTION FOR PROTECTIVE ORDER**<br><br>Date:        June 28, 2016<br>Time:       10:00 a.m.<br>Dept.:       Courtroom 7, 4th Floor<br>Judge:      Hon. Nathanael Cousins<br><br>Date Filed: December 5, 2014<br><br>Trial Date: November 21, 2016 |

DEFENDANT ARISTA NETWORKS, INC.'S OPPOSITION TO
PLAINTIFF CISCO SYSTEMS, INC.'S MOTION FOR PROTECTIVE ORDER
Case No. 5:14-cv-05344-BLF

1066377.01

# TABLE OF CONTENTS

**Page**

MEMORANDUM OF POINTS AND AUTHORITIES ..................................................................1

I.   INTRODUCTION .................................................................................................................1

II.  FACTUAL BACKGROUND................................................................................................2

    A.   Mr. Chambers has unique knowledge of customers' reasons for purchasing Arista switches. ...........................................................................................3

    B.   Mr. Chambers directed Cisco's competitive efforts against Arista. ........................4

    C.   No witness has been able to testify about Mr. Chambers' conversations with customers or role in Cisco's competitive efforts against Arista. .....................5

III. LEGAL STANDARD............................................................................................................6

IV.  ARGUMENT.........................................................................................................................8

    D.   Mr. Chambers is the only witness who can testify to his conversations with Cisco customers and critical aspects of Cisco's competitive focus on Arista. .........................................................................................................................8

    E.   Cisco has failed to assert any harm or prejudice that will result from Mr. Chambers' deposition. ..........................................................................................10

V.   CONCLUSION....................................................................................................................11

i

DEFENDANT ARISTA NETWORKS, INC.'S OPPOSITION TO
PLAINTIFF CISCO SYSTEMS, INC.'S MOTION FOR PROTECTIVE ORDER
Case No. 5:14-cv-05344-BLF

1066377.01

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Apple Inc. v. Samsung Elecs. Co., Ltd*
    282 F.R.D. 259 (N.D. Cal. 2012) .............................................................................. 6, 7, 9, 10

*CBS, Inc. v. Ahern*
    102 F.R.D. 820 (S.D.N.Y. 1984) ........................................................................................ 11

*Celerity, Inc. v. Ultra Clean Holding, Inc.*
    No. C 05-4374MMC, 2007 WL 205067 (N.D. Cal. Jan. 25, 2007) ..................................... 6

*Danjaq LLC v. Sony Corp.*
    263 F.3d 942 (9th Cir. 2001) ............................................................................................... 8

*First Nat. Mortgage Co. v. Fed. Realty Inv. Trust*
    No. C03-02013 RMW, 2007 WL 4170548 (N.D. Cal. Nov. 19, 2007) .............................. 7, 9

*First United Methodist Church of San Jose v. Atl. Mut. Ins. Co.*
    No. C-95-2243 DLJ, 1995 WL 566026 (N.D. Cal. Sept. 19, 1995) ..................................... 7, 8

*Ray v. BlueHippo Funding, LLC*
    No. C-06-1807 JSW, 2008 WL 4830747 (N.D. Cal. Nov. 6, 2008) ..................................... 10

*United States v. Ruby Co.*
    588 F.2d 697 (9th Cir. 1978) ................................................................................................ 8

*WebSideStory, Inc. v. NetRatings, Inc.*
    No. 06CV408 WQH, 2007 WL 1120567 (S.D. Cal. Apr. 6, 2007) ............................. 7, 10, 11

**Federal Statutes**

17 U.S.C.S. § 107 ........................................................................................................................... 8

ii
DEFENDANT ARISTA NETWORKS, INC.'S OPPOSITION TO
PLAINTIFF CISCO SYSTEMS, INC.'S MOTION FOR PROTECTIVE ORDER
Case No. 5:14-cv-05344-BLF

1066377.01

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.  INTRODUCTION

John Chambers, Cisco's CEO for most of the relevant period of competition between Cisco and Arista, was intimately aware of Arista and intently focused on competing against Arista. Since 2008, when Arista's now-CEO left Cisco (where she reported directly to Mr. Chambers) to join Arista, Cisco has been obsessed with the threat that Arista posed to Cisco's dominance in the Ethernet switching market. At first, Mr. Chambers instructed his team leaders to compete through typical methods: acquire and analyze an Arista device and develop talking points to try to spread FUD (fear, uncertainty and doubt) about this Ethernet switching startup. When that failed, and Arista began winning prestigious customers and recognition for its product achievements, Mr. Chambers instructed his competitive teams to establish a "no lose" policy regarding Arista. Mr. Chambers repeatedly met with high-level executives of Cisco customers to persuade them not to purchase Arista equipment – and often to threaten to withhold unrelated business with those customers should they chose Arista. Mr. Chambers then implemented the largest investment of all, the "spin-in" known as Insieme to attempt to develop an "Arista killer" product (at a cost of nearly $1 billion).

After six years of competing with Arista's products, Cisco filed this lawsuit, doubtless with Mr. Chambers' authorization. To answer the implicit question percolating through the networking world: why, in December 2014, would Cisco first claim that use of command-line-interface commands constitutes copyright infringement? Mr. Chambers publicly declared "We're a company that trusts . . . . I'm a leader that trusts. [Arista] made statements [regarding its CLI] that caused our team to look, that surprised us. It was a difficult decision but one you had to do." *See* Declaration of Elizabeth McCloskey in Support of Opposition ("McCloskey Decl."), Ex. 1.

Mr. Chambers' deposition is necessary in this case for at least four reasons:

(1) Mr. Chambers has unique knowledge of conversations with customers about their reasons for buying Arista switches over Cisco switches—a subject that is hotly contested;

(2) Mr. Chambers directed the Cisco competition strategy against Arista;

1

DEFENDANT ARISTA NETWORKS, INC.'S OPPOSITION TO
PLAINTIFF CISCO SYSTEMS, INC.'S MOTION FOR PROTECTIVE ORDER
Case No. 5:14-cv-05344-BLF

1066377.01

1    (3) Mr. Chambers publicly denied Cisco's knowledge of Arista's use of industry standard
2    CLI commands, and Arista is entitled to prove to the jury that Mr. Chambers' denial was a
3    façade.

4    (4) Although Arista has already deposed over 20 Cisco witnesses, none has been able to
5    elaborate on these facts, nor is it plausible for anyone but Mr. Chambers himself to testify about
6    his conversations and statements.

7    Cisco's motion itself is, perhaps, the fifth reason for allowing this deposition to proceed.
8    To attempt to dismiss documents indicating Mr. Chambers' direct role in competing against
9    Arista, Cisco submits a declaration from Mr. Chambers himself that purports to directly
10   contradict Cisco's own documents.  Cisco's contradiction of its own documents emphasizes why
11   a deposition is necessary—Mr. Chambers should be called to explain these contradictions and
12   allow Arista to get to the truth by way of cross-examination.  To conclude that by simply
13   submitting a declaration denying the content of Cisco's own documents Mr. Chambers can avoid
14   a deposition contradicts the function of pre-trial discovery.

15   Arista seeks only a four-hour deposition of Mr. Chambers.[1]  This testimony is critical to
16   the development of Arista's defenses and damages case.  Mr. Chambers is the only witness at
17   Cisco who can testify to his own strategic decisions concerning Arista, and his conversations with
18   customers about why they should buy Cisco, not Arista.  Furthermore, Cisco has not asserted any
19   harm or prejudice that will result from the taking of Mr. Chambers' deposition.  Thus, Cisco has
20   failed to meet its heavy burden of demonstrating why this deposition should be denied.

21   **II.    FACTUAL BACKGROUND**

22   More than ten years ago, Arista Networks began to develop an alternative to the Cisco
23   Systems Ethernet switches that have dominated the market for years.  Arista's products entered
24   the market in 2008, and that same year Cisco obtained its first Arista switch to begin conducting
25   competitive analyses.  *See* McCloskey Decl., Ex. 2 at 19-21.  At least by 2011, Mr. Chambers

---

[1] Arista's CEO Jayshree Ullal was deposed for the maximum seven hours, and Arista's Chairman of the Board Andy Bechtolsheim was deposed for over four hours.  Arista's senior executives have sat for full-day, or almost full-day depositions.

2
DEFENDANT ARISTA NETWORKS, INC.'S OPPOSITION TO
PLAINTIFF CISCO SYSTEMS, INC.'S MOTION FOR PROTECTIVE ORDER
Case No. 5:14-cv-05344-BLF

1066377.01

was actively and personally involved in Cisco's competitive efforts against Arista. *Id.*, Ex. 3; Ex. 4 at 3.  These efforts manifested themselves both externally, through contact with customers, and internally, through Mr. Chambers' early request for a formal competitive program against Arista. Mr. Chambers even made public statements concerning his own knowledge of Arista's "next moves." *See id.*, Ex. 33.  However, it was not until December of 2014 that Cisco suggested that Arista's use of CLI commands widely used by the entire industry constituted copyright infringement, after which Mr. Chambers claimed surprise to have learned about the CLI commands at issue in this case. *See id.*, Ex. 1.

### A. Mr. Chambers has unique knowledge of customers' reasons for purchasing Arista switches.

The evidence shows that Mr. Chambers regularly met with important customers to advocate for Cisco's products over Arista's and to understand why certain of Cisco's customers had decided to purchase Arista products. *See id.*, Ex. 5 [redacted]

[redacted]. Mr. Chambers—and only Mr. Chambers—repeatedly spoke with customers to attempt to differentiate Cisco from Arista. [redacted]

3

DEFENDANT ARISTA NETWORKS, INC.'S OPPOSITION TO
PLAINTIFF CISCO SYSTEMS, INC.'S MOTION FOR PROTECTIVE ORDER
Case No. 5:14-cv-05344-BLF

1066377.01

1  ▮
2  ▮
3  ▮
4  ▮
5  ▮
6  ▮
7  ▮ Through these conversations, there is no question that Mr. Chambers
developed unique knowledge concerning the product features that swayed customer purchasing decisions.

Contrary to Cisco's assertion that the evidence suggests only "prospective" or "proposed" meetings (*see* Pl.'s Mot. Prot. Order at 11), Cisco's documents discuss the *outcome* of Mr. Chambers' individual discussions with customers. ▮

▮ The documents also highlight Mr. Chambers' continuing discussions with specific customers concerning Arista. ▮

### B.   Mr. Chambers directed Cisco's competitive efforts against Arista.

The evidence also shows that Mr. Chambers personally drove Cisco's competition with Arista. ▮

4
DEFENDANT ARISTA NETWORKS, INC.'S OPPOSITION TO
PLAINTIFF CISCO SYSTEMS, INC.'S MOTION FOR PROTECTIVE ORDER
Case No. 5:14-cv-05344-BLF

1066377.01



Correspondence from high-level Cisco executives refer to specific competitive requests by Mr. Chambers,

### C. No witness has been able to testify about Mr. Chambers' conversations with customers or role in Cisco's competitive efforts against Arista.

During this case, former and current Cisco employees have confirmed Mr. Chambers' unique knowledge of Cisco's competitive efforts against Arista. But as set forth above, no deponent has been able to shed light on Mr. Chambers' specific role in Cisco's competitive efforts against Arista, nor on the content of Mr. Chambers' numerous communications with customers, including what Mr. Chambers learned about customers' reasons for buying Arista switches over Cisco switches.

Cisco Senior Vice President Soni Jiandani testified that



5

DEFENDANT ARISTA NETWORKS, INC.'S OPPOSITION TO
PLAINTIFF CISCO SYSTEMS, INC.'S MOTION FOR PROTECTIVE ORDER
Case No. 5:14-cv-05344-BLF

1066377.01

1 ████████████████████████████████████████
2 ████████████████████████████████████████
3 ████████████████████████████████████████
4 ████████████████████████████████████████
5 ██████████████████████
6 ██ Cisco systems engineer Andrew Pletcher testified that ████
7 ████████████████████████████████████████
8 ████████████████████████████████████████
9 ████████████████████████████████████████
10 ████████████████████████████████████████
11 ████████████████████████████████████████
12 ████████████████████████████████████████
13 ████████████████████████████████████████
14 ████████████████████████████████████████
15 ███████████████
16 ██ Finally, former Cisco and Arista employee Doug Gourlay confirmed that ██
17 ████████████████████████████████████████
18 ████████████████████████████████████████
19 ████████████████████████████████████████
20 ████████████████████████████████████████
21 ████████████████████████████████████████
22 ██████████ But again, just like Cisco's current employees, Mr. Gourlay could not testify
23 as to the content of Mr. Chambers' calls and meetings with the Morgan Stanley executives.

### III. LEGAL STANDARD

The party seeking a protective order carries "a heavy burden to show why discovery should be denied." *Apple Inc. v. Samsung Elecs. Co., Ltd*, 282 F.R.D. 259, 263-65 (N.D. Cal. 2012) (quoting *Celerity, Inc. v. Ultra Clean Holding, Inc.*, No. C 05-4374MMC, 2007 WL

6

DEFENDANT ARISTA NETWORKS, INC.'S OPPOSITION TO
PLAINTIFF CISCO SYSTEMS, INC.'S MOTION FOR PROTECTIVE ORDER
Case No. 5:14-cv-05344-BLF

1066377.01

1  205067, at *3 (N.D. Cal. Jan. 25, 2007)). Cisco must show "good cause for the order by
2  demonstrating harm or prejudice that will result from the discovery." *Id.* (internal quotations and
3  citations omitted). It is "very unusual" for a court to bar the taking of a deposition "absent
4  extraordinary circumstances." *WebSideStory, Inc. v. NetRatings, Inc.*, No. 06CV408 WQH, 2007
5  WL 1120567, at *2-4 (S.D. Cal. Apr. 6, 2007) (denying Plaintiff's motion for protective order
6  against deposition of director and former CEO).

7  Where a party seeks an apex deposition of a high-level corporate officer, "courts are
8  sometimes willing" to preclude the deposition if the officer "has no first hand knowledge of the
9  facts of the case" or if the "testimony would be repetitive." *First United Methodist Church of San
10  Jose v. Atl. Mut. Ins. Co.*, No. C-95-2243 DLJ, 1995 WL 566026, at *2-3 (N.D. Cal. Sept. 19,
11  1995) (granting motion to compel deposition, noting that defendant "should not be permitted to
12  shield himself from a deposition behind the veil of his presidency."). The availability of other
13  witnesses who may be able to testify to the same set of events "does not mean that a high-level
14  corporate officer's testimony would be 'repetitive,'" as witnesses often have "differing
15  recollections" of a situation. *First Nat. Mortgage Co. v. Fed. Realty Inv. Trust*, No. C03-02013
16  RMW, 2007 WL 4170548, at *2 (N.D. Cal. Nov. 19, 2007) (denying motion for protective order
17  for apex deponent).

18  Courts may prohibit apex depositions "before the testimony of lower level employees" has
19  been secured. *Id*. However, where depositions of these employees suggest that the apex deponent
20  "may have at least *some* relevant personal knowledge," the moving party has not established a
21  basis for precluding the deposition. *Id.* Where a witness "has personal knowledge of facts relevant
22  to the lawsuit, even a corporate president or CEO is subject to deposition." *WebSideStory, Inc.*,
23  2007 WL 1120567, at *2. Further, "[a] claimed lack of knowledge does not provide sufficient
24  grounds for a protective order." *Id.,* at *4.
25  //
26  //
27  //
28

7

DEFENDANT ARISTA NETWORKS, INC.'S OPPOSITION TO
PLAINTIFF CISCO SYSTEMS, INC.'S MOTION FOR PROTECTIVE ORDER
Case No. 5:14-cv-05344-BLF

1066377.01

## IV. ARGUMENT

### D. Mr. Chambers is the only witness who can testify to his conversations with Cisco customers and critical aspects of Cisco's competitive focus on Arista.

Arista is entitled to prove—for at least its laches[2], fair use[3], estoppel[4] defenses—that Cisco, at its highest levels, has been intimately familiar with Arista for many years through its competitive intelligence efforts, and that it long ago acquiesced to Arista's use of certain industry standard CLI commands. While countless Cisco documents reference the company's detailed knowledge of Arista's products, including the CLI that Arista supports, and show that Cisco has been conducting competitive tests on Arista's products since 2008, Mr. Chambers claimed in December 2014 that Cisco had *just learned* of Arista's use of the CLI commands at issue in this case. See McCloskey Decl., Ex. 1. He stated, "We're a company that trusts . . . . I'm a leader that trusts. [Arista] made statements that caused our team to look, that surprised us. It was a difficult decision [to sue] but one you had to do." *Id.* Arista should be allowed to explore this seeming contradiction in the evidence, and understand what it was that surprised Mr. Chambers, in light of all of his prior involvement and directives to compete with Arista.

Additionally, the volume and consistency of Mr. Chambers' meetings and calls with customers demonstrate his direct involvement with Cisco's competition against Arista. Unlike a situation where the executive officer has no first-hand knowledge, ███████████████████ ███████████████████████████████████████████████████████████████████ ██████. See *First United Methodist Church*, 1995 WL 566026, at *2-3.

---

[2] "The first element of laches is delay. Generally speaking, the relevant delay is the period from when the plaintiff knew (or should have known) of the allegedly infringing conduct, until the initiation of the lawsuit in which the defendant seeks to counterpose the laches defense." *Danjaq LLC v. Sony Corp.*, 263 F.3d 942, 952 (9th Cir. 2001).

[3] Four factors are considered in determining whether the use made of a work is a fair use: "(1) the purpose and character of the use . . . (2) the nature of the copyrighted work; (3) the amount and substantiality of the portion used . . . and (4) *the effect of the use upon the potential market for or value of the copyrighted work.*" 17 U.S.C.S. § 107 (emphasis added).

[4] "[T]he ordinary elements of estoppel [are]: (1) *The party to be estopped must know the facts*; (2) He must intend that his conduct shall be acted on or must so act that the party asserting the estoppel has a right to believe it is so intended; (3) *The latter must be ignorant of the true facts*; and (4) He must rely on the former's conduct to his injury." *United States v. Ruby Co.*, 588 F.2d 697, 703 (9th Cir. 1978) (emphasis added).

8

DEFENDANT ARISTA NETWORKS, INC.'S OPPOSITION TO
PLAINTIFF CISCO SYSTEMS, INC.'S MOTION FOR PROTECTIVE ORDER
Case No. 5:14-cv-05344-BLF

1066377.01

1  The content of these meetings and calls between Mr. Chambers and Cisco's customers is
2  critical to Cisco's damages arguments in this case. Arista expects Cisco will attempt to recover
3  lost profits or disgorgement for sales to many of Arista's customers, and will claim that Cisco
4  would have made some or all of those sales but for Arista's alleged infringement. *See* McCloskey
5  Decl., Ex. 35 at 9, Ex. A
6  ███████████████████████████  Mr. Chambers has substantial unique knowledge about his
7  high-level discussions with decision-makers at customer companies to understand how customer
8  decisions were made. Arista is entitled to learn about these conversations and whether, for
9  example, Mr. Chambers ever discussed the importance of the CLI with a Cisco customer.
10 ████████████████████████████████████████████████████████████████████████████
11 ████████████████████████████████████████████████████████████████████████████
12 Through these conversations, Mr. Chambers took "the type of hands-on action which
13 demonstrates the unique personal knowledge" that supports compelling the deposition of a CEO.
14 *See Apple*, 282 F.R.D. at 265 (internal quotations and citations omitted).
15 Further, the evidence developed thus far in this case—including Cisco documents and
16 depositions of Cisco employees and former Cisco employees—show that Mr. Chambers'
17 knowledge far surpasses the standard that he may have at least some relevant personal
18 knowledge. *See First Nat. Mortgage*, 2007 WL 4170548, at *2.
19 ████████████████████████████████████████████████████████████████████████████
20 ████████████████████████████  Cisco's assertion that Mr. Chambers' knowledge of
21 customer meetings and phone calls is not unique because other Cisco employees also would have
22 participated is belied by the company's own documents. While Mr. Chambers may have
23 participated in certain meetings along with members of Cisco's sales team, the evidence shows
24 that Mr. Chambers frequently met or spoke with these high-level customers on a one-on-one
25 basis. Mr. Chambers' testimony cannot be repetitive if he was the only person in a meeting or on
26 a phone call relevant to the case. *See First Nat. Mortgage*, 2007 WL 4170548, at *2.
27 Because Chambers was the only person present in these meetings, Arista cannot obtain
28 this information from lower-level employees. Where both the documents and testimony of lower-

9
DEFENDANT ARISTA NETWORKS, INC.'S OPPOSITION TO
PLAINTIFF CISCO SYSTEMS, INC.'S MOTION FOR PROTECTIVE ORDER
Case No. 5:14-cv-05344-BLF

1066377.01

level employees demonstrate that Mr. Chambers has relevant personal knowledge, he should not be shielded from sitting for a deposition. *See WebSideStory, Inc.*, 2007 WL 1120567, at *2. Further, the lower-level employees who have been deposed, even those who had long been involved with Cisco's competitive analysis of Arista, could not testify as to what Mr. Chambers learned through his individual customer meetings—nor even if they had taken place. *See*, *e.g.*, McCloskey Decl., Ex. 26 at 217:16-218:10.

Finally, Cisco's submission of a declaration from Mr. Chambers which attempts to disclaim all participation in the company's competitive efforts against Arista fails to provide any legitimate basis for refusing to allow Arista to depose Mr. Chambers.  In fact, Mr. Chambers' declaration demonstrates the importance of allowing Arista to question Mr. Chambers.  If Mr. Chambers indeed intends to deny his role in meeting with Cisco customers to persuade them not to purchase Arista equipment, in the face of mountain of evidence that suggests otherwise, Arista should be allowed to explore that contradiction in Cisco's own evidence by way of cross-examination.  Arista should not be forced to simply accept at face value a lawyer-prepared written declaration signed by Mr. Chambers.

This case does not present the "extraordinary circumstances" that might warrant the preclusion of discovery. Arista is seeking to depose a Cisco employee who has unique, first-hand knowledge of facts relevant to the case and, in many cases, was the only employee present at key meetings.  Cisco has failed to meet its "heavy" burden of proof for denying Arista's request to depose Mr. Chambers. *See Apple*, 282 F.R.D. at 263.

### E. Cisco has failed to assert any harm or prejudice that will result from Mr. Chambers' deposition.

The purpose of the apex doctrine is to "prevent harassment of a high-level corporate official where he or she has little or no knowledge" of facts relevant to an action. *Ray v. BlueHippo Funding, LLC*, No. C-06-1807 JSW, 2008 WL 4830747, at *2 (N.D. Cal. Nov. 6, 2008). This reasoning does not apply to Mr. Chambers. Cisco must establish "good cause" for its protective order by showing "harm or prejudice" that will result from Mr, Chambers' deposition. *See Apple* 282 F.R.D. at 263.  Cisco has failed to establish, or even assert, any form of hardship

10

DEFENDANT ARISTA NETWORKS, INC.'S OPPOSITION TO
PLAINTIFF CISCO SYSTEMS, INC.'S MOTION FOR PROTECTIVE ORDER
Case No. 5:14-cv-05344-BLF

1066377.01

that will result from Arista taking Mr. Chambers' deposition in the lawsuit brought by his company.  Indeed, as of July 2015, Mr. Chambers no longer has an active role managing the company, and there is no evidence that this deposition will impinge upon Mr. Chambers' business duties. *See* Chambers Decl. ¶ 3 (ECF No. 262-2).

An apex witness's "'busy schedule is simply not a basis for foreclosing otherwise proper discovery.'" *WebSideStory, Inc.*, 2007 WL 1120567, at *2 (quoting *CBS, Inc. v. Ahern*, 102 F.R.D. 820, 822 (S.D.N.Y. 1984)).  But Cisco has not even established Mr. Chambers' "busy schedule," particularly in view of his retirement from active management duties. *See* Pl.'s Mot. Prot. Order; Chambers Decl. ¶¶ 2, 3.

## V.   CONCLUSION

For the foregoing reasons, Arista respectfully requests this Court deny Cisco's motion for a protective order and allow Arista's requested four-hour deposition of Mr. Chambers to proceed.

Dated:  June 7, 2016

KEKER & VAN NEST LLP

WILSON SONSINI GOODRICH & ROSATI

By:  */s/ Robert A. Van Nest*
     ROBERT A. VAN NEST

Attorneys for Defendant
ARISTA NETWORKS, INC.

---

11

DEFENDANT ARISTA NETWORKS, INC.'S OPPOSITION TO
PLAINTIFF CISCO SYSTEMS, INC.'S MOTION FOR PROTECTIVE ORDER
Case No. 5:14-cv-05344-BLF

1066377.01