# REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

| | |
|---|---|
| KEKER & VAN NEST LLP<br>ROBERT A. VAN NEST - # 84065<br>BRIAN L. FERRALL - # 160847<br>DAVID SILBERT - # 173128<br>AJAY KRISHNAN - #222476<br>DAVID J. ROSEN - # 296139<br>633 Battery Street<br>San Francisco, CA 94111-1809<br>Telephone:    (415) 391-5400<br>Email:  rvannest@kvn.com;<br>bferrall@kvn.com; dsilbert@kvn.com;<br>akrishnan@kvn.com, drosen@kvn.com | SUSAN CREIGHTON, SBN 135528<br>SCOTT A. SHER, SBN 190053<br>WILSON SONSINI GOODRICH & ROSATI<br>Professional Corporation<br>1700 K Street NW, Fifth Floor<br>Washington, D.C., 20006-3817<br>Telephone:  (202) 973-8800<br>Email:  screighton@wsgr.com;<br>ssher@wsgr.com |

JONATHAN M. JACOBSON, NY SBN 1350495
CHUL PAK (*pro hac vice*)
DAVID H. REICHENBERG (*pro hac vice*)
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
1301 Avenue Of The Americas, 40th Floor
New York, NY 10019-6022
Telephone:  (212) 999-5800
Email:  jjacobson@wsgr.com; cpak@wsgr.com;
dreichenberg@wsgr.com

Attorneys for Defendant ARISTA NETWORKS, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| CISCO SYSTEMS, INC.,<br><br>            Plaintiff,<br><br>    v.<br><br>ARISTA NETWORKS, INC.,<br><br>            Defendant. | Case No. 5:14-cv-05344-BLF (NC)<br><br>**DEFENDANT ARISTA NETWORKS, INC.'S MOTION TO STRIKE LATE CONTENTIONS OR ALTERNATIVELY TO CONTINUE CASE SCHEDULE**<br><br>Date:         October 27, 2016<br>Time:        9:00 a.m.<br>Judge:      Hon. Beth Labson Freeman<br>Dept:        Courtroom 3, 5th Floor<br><br>Date Filed: December 5, 2014<br><br>Trial Date: November 21, 2016 |

---

DEFENDANT ARISTA NETWORKS, INC.'S MOTION TO STRIKE OR CONTINUE CASE SCHEDULE
Case No. 5:14-cv-05344-BLF (NC)

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ..................................................................................................................1

II. STATEMENT OF FACTS .....................................................................................................2

    A. Cisco's New "helpdesc" CLI Command Description Contentions .........................2

        1. Cisco delayed in disclosing its "helpdesc" command description contentions until the last day of liability fact discovery. .............................2

        2. Cisco could have disclosed its new contentions much earlier. ....................3

    B. Cisco refused to identify specific customers to whom it had lost sales for over a year, then, in the last three days of discovery, disclosed specific customer accounts it had known about before the lawsuit. ....................................4

III. LEGAL STANDARDS ..........................................................................................................5

IV. ARGUMENT..........................................................................................................................6

    A. The Court should strike as untimely Cisco's inexcusably late copyright infringement contentions. ........................................................................................6

        1. Cisco's supplemental copyright infringement contentions violate Rule 26(e) because they were not disclosed "in a timely manner."..............6

        2. Cisco's belated disclosure of its new copyright infringement contentions was inexcusable and prejudicial. ...............................................7

    B. The Court should strike as untimely Cisco's inexcusably late claim for specific lost sales.......................................................................................................9

        1. Cisco's supplemental lost profits claim violates Rule 26(e) because it was not disclosed "in a timely manner." .................................................9

        2. Cisco's belated disclosure of its lost sales theories was inexcusable and prejudicial........................................................................................................9

V. CONCLUSION.....................................................................................................................10

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Apple, Inc. v. Samsung Elecs. Co.*
   No. 11-CV-01846-LHK, 2012 WL 3155574 (N.D. Cal. Aug. 2, 2012) .......................... 6, 8, 10

*Calvert v. Ellis*
   No. 2:13-CV-00464-APG, 2015 WL 631284 (D. Nev. Feb. 12, 2015) .................................... 9

*Deutsche Bank Nat'l Trust Co. v. Seven Hills Master Cmty. Ass'n*
   No. 15cv-1373, 2016 WL 1639885 (D. Nev. Apr. 25, 2016) ............................................... 6, 7

*Finjan, Inc. Proofpoint, Inc.*
    No. 3:13-cv-05808-HSG (HRL), 2015 WL 9900617 (N.D. Cal. Oct. 26, 2015) ..................... 6

*Jones v. Travelers Cas. Ins. Co. of Am.*
   304 F.R.D. 677 (N.D. Cal. 2015) ........................................................................................ 6, 8, 10

*Reed v. Iowa Marine & Repair Corp.*
   16 F.3d 82 (5th Cir. 1994) ............................................................................................................ 6

*Ritchie Risk-Linked Strategies Trading (Ireland), Ltd. v. Coventry First LLC*
   280 F.R.D. 147 (S.D.N.Y. 2012) ............................................................................................ 9, 10

*Specht v. Google Inc.*
   758 F. Supp. 2d 570 (N.D. Ill. 2010) ........................................................................................... 7

*Vieste, LLC v. Hill Redwood Dev.*
   No. 09-cv-04024-JSW (DMR), 2011 WL 2181200 (N.D. Cal. June 3, 2011) ............... 7, 8, 10

*Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*
   259 F.3d 1101 (9th Cir. 2001) ............................................................................................. 6, 7, 9

**Federal Rules**

Fed. R. Civ. P. 26 ............................................................................................................... 5, 6, 7, 9

Fed. R. Civ. P. 30 ............................................................................................................................ 8

Fed. R. Civ. P. 37 ................................................................................................................. 5, 6, 10

1  Notice is hereby given to Plaintiff Cisco Systems, Inc. ("Cisco") that Defendant Arista
2  Networks, Inc. ("Arista") moves the Court to strike late-disclosed copyright infringement
3  contentions and lost profits allegations, each first revealed in the last days of discovery, or
4  alternatively to continue the case schedule by 120 days to reopen discovery and allow Arista to
5  investigate Cisco's new contentions. This matter will be heard on October 27, 2016, at 9:00 a.m.,
6  in Courtroom 3, 5th Floor, 280 South 1st Street, San Jose, California. Arista files this matter
7  before the Hon. Beth L. Freeman because Arista moves for an evidentiary ruling, and because the
8  alternative relief sought by Arista affects the Court's Scheduling Order. Given the time-sensitive
9  nature of this dispute, Arista agrees to waive oral argument to expedite its resolution.

## I.   INTRODUCTION

In this copyright infringement case concerning alleged infringement arising from similarities in the "command-line interface" between Cisco's operating system and Arista's EOS operating system, Cisco waited until 10:44 pm on the close of liability fact discovery to disclose for the first time over 400 "similarities" of allegedly protected text that it claims supports its copyright claim. Then, three days before the close of damages fact discovery, Cisco for the first time disclosed 73 accounts that it contends it would have sold product to but for the alleged infringement. Since mid-2015, Cisco has been obligated—by discovery and disclosure rules—to disclose that information. And since *before this case was filed*, Cisco had that information in its possession. The newly alleged "similarities" are plainly visible ▌▌▌▌▌▌▌▌▌▌▌▌ ▌▌▌▌▌▌▌▌▌▌ or from other sources of Arista's products that Cisco plainly used to prepare for litigation. And the newly identified sales accounts all come from Cisco's own ▌▌▌▌ ▌▌▌▌. Cisco has no excuse for sitting on this information through the entire discovery period, only to disclose it at the close of discovery.

Cisco's delay deprived Arista of a meaningful opportunity to plan and take discovery about these new theories. In connection with Cisco's earlier infringement allegations, Arista took extensive discovery and deposition testimony to investigate Cisco's claims of originality. Arista cannot now take comparable discovery relating to Cisco's new contentions. And even if discovery were reopened for these new contentions, Arista could not possibly conduct it

adequately since rebuttal expert reports are due in four days and summary judgment motions are due in little over two weeks.  Nor can Arista investigate the dozens of newly asserted accounts alleged by Cisco to support its lost sales claim.  Arista's expert damages reports are due in just over three weeks.  By waiting until discovery closed, Cisco prevented Arista from taking any fact discovery regarding these new contentions.

Arista seeks an order: (1) striking Cisco's supplemental copyright infringement contentions relating to "helpdesc," including but not limited to its May 27, 2016 supplemental response to Interrogatory 2, Exhibits G and H thereto, and any reference thereto in Cisco's expert reports (including but not limited to pages 41 and 116 of Cisco's Expert Report of Kevin Almeroth and Exhibit 6 thereto); and (2) striking Cisco's June 7 and 10, 2016 supplemental responses to Arista's Interrogatory 15, and any reference or reliance on those lost sales contentions in any damages-related expert reports or witness testimony.  Alternatively, should the Court not strike these late-disclosed contentions, Arista seeks leave to conduct fact discovery over the next 120 days, with a corresponding continuance of expert discovery, summary judgment, and all other case deadlines, including trial.

## II.     STATEMENT OF FACTS

### A.     Cisco's New "helpdesc" CLI Command Description Contentions

#### 1.     Cisco delayed in disclosing its "helpdesc" command description contentions until the last day of liability fact discovery.

Cisco filed its copyright claim in December 2014, asserting that Arista infringed several versions of its network operating systems by using over five hundred multi-word command-line interface (CLI) commands, as well as hierarchies, modes, prompts, responses, and software documentation.  Compl., ECF No. 1 ¶¶ 50–52, 54–56 & Exs. 1–2.  Arista propounded Interrogatory 2 in April 2015, which asks Cisco to

> [i]dentify with specificity every similarity that Cisco contends is a basis for its claim of copyright infringement, including the source material in Cisco's copyrighted work(s) that Cisco contends is the source of the similarity; the material in the allegedly infringing work(s) that Cisco contends reflects the similarity, and why Cisco contends that the source material is protected by copyright.

Santacana Decl., Ex. 1 at 4.  Cisco responded in May and supplemented its response three times,

2
DEFENDANT ARISTA NETWORKS, INC.'S MOTION TO STRIKE OR CONTINUE CASE SCHEDULE
Case No. 5:14-cv-05344-BLF (NC)

1065754

1 in August, September, and October 2015. *See id.*, Exs. 2–5. Cisco amended again on January 5, 2016, this time disclosing a new category of material that it claimed Arista unlawfully copied: "interactive 'help' screens." *Id.*, Ex. 6 at 18:2. Cisco identified one paragraph of "help" text that it contended Arista copied. *Id.* at 18:5–10. Cisco's response also pointed out that "In both Cisco's CLI and Arista's CLI, users can type '?' to generate context-sensitive help, including a list of available commands and descriptions thereof." *Id.* at 18:1–13. Cisco alleged that Arista "copied numerous examples of Cisco's original command expression descriptions (*e.g.*, explaining that the 'enable' command will 'Turn on privileged commands')." *Id.* at 18:13–15. Apart from this example, however, Cisco did not identify the "numerous examples" of help descriptions it had in mind.

Cisco never disclosed any further contentions regarding help screens until May 27, 2016, at 10:44 p.m., the last day of liability fact discovery, when it served another supplemental response to Interrogatory 2. Santacana Decl., Ex. 7 at 15–22.[1] That response claimed that "█████████████████████████████████████████████████████████████████████████████████████████████████████████" *Id.* at 16:4–5. An exhibit to that response accuses 443 helpdesc CLI command descriptions. *Id.*, Ex. 8. The descriptions are printed on the screen when a user queries a particular CLI command. Among the accused phrases are mundane and generic command descriptions such as "Copy from one file to another" and "Delete a file." *Id.* at 2, 3. Another two-hundred page exhibit lists Cisco and Arista source code files that allegedly contain the text of the command descriptions. *Id.*, Ex. 9. A week later, on the deadline for serving opening expert reports, Cisco served the Expert Report of Kevin Almeroth Regarding Copying, which repeated Cisco's close-of-discovery contentions and attached the exhibits served with its supplemental response. *Id.*, Ex. 10 ¶¶ 100, 221; Ex.11.

### 2.   Cisco could have disclosed its new contentions much earlier.

Anyone with access to an Arista switch can enter the "?" command to produce the helpdesc text that Cisco accused on the last day of discovery. Pech Decl. ¶ 3(i). ███

---

[1] Cisco's May 27 response is mis-numbered. The first Interrogatory in the response, which is listed as number 1, is actually Arista's Interrogatory 2. The interrogatory response acquires the right numbering on page 7. The new content of the May 27 response is on pages 15–22.

1  ████████████████████████████████████████████████████████████
2  ████████████████████  Santacana Decl., Ex. 12 at 5–7.  ████████
3  ████████████████████████████████████████████████████████  *Id.*

4  And any of those switches could have generated the helpdesk output that Cisco now accuses of
5  copyright infringement. Pech Decl. ¶¶ 3(i).

6        For Cisco, using Arista switches to conduct its pre-filing investigation was not merely a
7  possibility, it was a reality. Cisco's complaint in the International Trade Commission filed in
8  December 2014, at the same time this case was filed, cites to numerous screenshots of Arista CLI
9  "output," which could only have been generated by using an Arista switch, *see, e.g.*, Santacana
10 Decl., Exs. 13 at 2–3, 13, 23–24; 14 at 2–9, 11–14, 17–18, 21–26, 28–31, 34–35; Pech Decl ¶ 4,
11 or by using Arista's publicly available vEOS, a virtual version of its operating system that can be
12 run on any computer. Pech Decl. ¶ 3(ii). Cisco's ITC infringement charts also reproduce
13 numerous excerpts from Arista source code files, which are only available to persons who access
14 Arista's software, either through EOS or vEOS. Santacana Decl., Ex. 13 at 4, 7, 10, 14, 17, 20,
15 30–31; Pech Decl. ¶¶ 3(ii)–(iii), 4. Indeed, Cisco produced over six hundred Arista source code
16 files in the ITC litigation that were in its possession before it filed this case; those files include the
17 helpdesk text strings that Cisco now claims were unlawfully copied. Santacana Decl. ¶ 10.

18       Finally, Arista made its source code available to Cisco pursuant to the Stipulated
19 Protective Order in August 2015. Santacana Decl. ¶ 3. As of the January supplemental response,
20 Cisco's experts had already spent over eighty-eight hours reviewing Arista's source code. *Id.*

21     **B.**    **Cisco refused to identify specific customers to whom it had lost sales for over
       a year, then, in the last three days of discovery, disclosed specific customer
22     accounts it had known about before the lawsuit.**

23 Arista served Interrogatory 15 in April 2015, asking Cisco to detail its lost profits:

24     If You seek to recover lost profits by way of any claim in this matter, identify with
       specificity all bases on which You seek such recovery, including but not limited to
25     identifying any and all facts, witnesses, evidence, communications and documents
       that You believe support Your claim for such recovery.
26
Santacana Decl., Ex. 1. Cisco responded by, *inter alia*, incorporating its response to Interrogatory
27
1, which claims that "substantially all of Arista's sales" were lost sales. *Id.*, Ex. 2 at 7:27. Cisco
28
served a supplemental response in July 2015 claiming that Cisco was waiting for Arista to

produce more documents in order for it to identify specific lost sales. *Id.*, Ex. 22 at 8.

On multiple occasions Arista warned Cisco that if it were to contend that Cisco lost any specific lost sales, it must provide supporting facts in response to this interrogatory. Santacana Decl. ¶¶ 4–6 & Ex. 15 at 3 (12/11/15 letter reminding Cisco that Interrogatory 15 required Cisco to disclose "whether Cisco intends to rely on specific lost sales to prove its damages case, and if so, which ones."). Each time, Cisco refused to comply with Arista's requests, arguing instead that it would prove damages through the use of an expert. *Id.* ¶¶ 4–6.

Then, on June 7, 2016, three days before the close of damages fact discovery, Cisco supplemented its response to Interrogatory 15. *Id.*, Ex. 16 at 9. That response disclosed for the first time that Cisco intended to claim it lost sales in 73 specific accounts to Arista.[2] *Id.*, Ex. 17.

Cisco's corporate witness on damages-related topics, deposed on June 7, testified that Cisco's list of 73 accounts was prepared from Cisco's internal files, including its Salesforce.com database. *Id.*, Ex. 18 at 9:1–13:3. Cisco's Salesforce.com database is kept in the ordinary course of business at Cisco, and pre-existed even the filing of this lawsuit. In other words, Cisco's lost sales contentions were available to it the day it filed suit over eighteen months ago.

## III. LEGAL STANDARDS

Federal Rule of Civil Procedure 26(e) requires parties to supplement or correct discovery responses "in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." Fed. R. Civ. P. 26(e)(1)(A). If a party fails to comply with Rule 26(e), such as by failing to disclose information or identify a witness in a timely manner, "the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial." Fed. R. Civ. P. 37(c)(1). In order to "provide[] a strong inducement for disclosure," Rule 37's exclusionary sanction is "self-executing," or "automatic." Fed. R. Civ. P. 37, Adv. Cttee. Notes (1993); *see*

---

[2] Cisco supplemented Interrogatory 15 again three days later, on the last day of damages fact discovery. This time, Cisco narrowed its list to 50 accounts. *Id.*, Exs. 19, 20. According to Cisco's counsel, the final list it served was generated using information from both Cisco's files and documents produced by Arista in this case. *Id.* ¶ 6.

1  *also Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001).  The

2  sanction applies regardless of whether the violating party acted wilfully or in bad faith.  *Id.*

3  The "harshness" of Rule 37(c) is mitigated by two exceptions—the sanction does not

4  apply if the party's failure was either "substantially justified" or "harmless."  Once the moving

5  party establishes a discovery violation, the burden shifts to the violating party to prove that one of

6  the two exceptions applies.  *See Yeti*, 259 F.3d at 1107; *Jones v. Travelers Cas. Ins. Co. of Am.*,

7  304 F.R.D. 677, 678–79 (N.D. Cal. 2015).

**IV.   ARGUMENT**

    **A.   The Court should strike as untimely Cisco's inexcusably late copyright infringement contentions.**

        **1.   Cisco's supplemental copyright infringement contentions violate Rule 26(e) because they were not disclosed "in a timely manner."**

12  The "basic purpose" of the discovery rules' supplementation requirement is to "prevent[]

13  prejudice and surprise."  *Reed v. Iowa Marine & Repair Corp.*, 16 F.3d 82, 85 (5th Cir. 1994).

14  Rule 26(e) requires that parties supplement discovery responses "in a timely manner."  Fed. R.

15  Civ. P. 26(e)(1)(A); *see, e.g.*, *Apple, Inc. v. Samsung Elecs. Co.*, No. 11-CV-01846-LHK, 2012

16  WL 3155574, at *4 (N.D. Cal. Aug. 2, 2012) (holding supplementation of contention

17  interrogatory responses disclosing new invalidity, infringement, and lack of distinctiveness

18  theories shortly after discovery closed violated Rule 26(e)).  Timeliness should be "gauged in

19  relation to the availability of the supplemental information, and not merely based on whether the

20  information was provided after the discovery deadline."  *Deutsche Bank Nat'l Trust Co. v. Seven

21  Hills Master Cmty. Ass'n*, No. 15cv-1373, 2016 WL 1639885, at *2–3 (D. Nev. Apr. 25, 2016)

22  (finding Rule 26(e) violation where defendant produced documents on last day of discovery)

23  (internal quotation marks omitted).  For that reason, courts routinely hold last-minute disclosures

24  just like Cisco's violate Rule 26(e), even when made before the discovery period closes.

25  For example, in *Finjan, Inc. Proofpoint, Inc.*, No. 3:13-cv-05808-HSG (HRL), 2015 WL

26  9900617, at *1 (N.D. Cal. Oct. 26, 2015), the defendants supplemented their initial disclosures

27  three days before the close of discovery to add two new witnesses with knowledge of prior art.

28  The fact that the disclosures were "served before the fact discovery cutoff—but only just," was no

6

DEFENDANT ARISTA NETWORKS, INC.'S MOTION TO STRIKE OR CONTINUE CASE SCHEDULE
Case No. 5:14-cv-05344-BLF (NC)

1065754

help to the defendants because they knew about one witness for over a year and the other for several months prior to the close of discovery. *Id.* at *2; *see also Vieste, LLC v. Hill Redwood Dev.*, No. 09-cv-04024-JSW (DMR), 2011 WL 2181200, at *2 (N.D. Cal. June 3, 2011) (finding Rule 26(e) violation where defendants supplemented initial disclosures two weeks before close of fact discovery to identify six new witnesses); *Specht v. Google Inc.*, 758 F. Supp. 2d 570, 578 (N.D. Ill. 2010), *aff'd*, 747 F.3d 929 (7th Cir. 2014) (plaintiffs violated Rule 26(e) by supplementing interrogatory response on last day of discovery to disclose two instances of use of asserted trademark in public, which was relevant to abandonment).

Cisco's disclosure of new copyright infringement contentions on the last day of discovery doesn't come close to "timely." Just as it investigated Arista's CLI commands, modes, prompts, and responses before filing this case, Cisco could have investigated Arista's helpdesc command descriptions, whether by using ███████████████████████████████████ *see* Santacana Decl., Ex. 12, by using the Arista source code it had, or by using Arista's publicly available virtual installation of EOS, *see* Pech Decl. ¶ 3(ii).

    **2.    Cisco's belated disclosure of its new copyright infringement contentions was inexcusable and prejudicial.**

Because Cisco has clearly violated Rule 26(e), the burden shifts to Cisco to demonstrate that its violation was either substantially justified or harmless. *See Yeti*, 259 F.3d at 1107. It cannot. Cisco admitted during the meet and confer process that it "had not conducted an in-depth analysis until [it] got access to Arista switches" from Arista through this litigation in mid-May. Santacana Decl. ¶ 9. But plainly it was possible for Cisco to investigate its claims long before Arista produced samples of Arista switches. Cisco could have accessed it by way of the publicly available vEOS software or by using ████████████████████████—the same ones it analyzed to prepare its December 2014 ITC complaint against Arista. *See* Santacana Decl., Exs. 13 at 2–3, 13, 23–24; 14 at 2–9, 11–14, 17–18, 21–26, 28–31, 34–35; *id.*, Ex. 13 at 4, 7, 10, 14, 17, 20, 30–31 (screenshots of Arista EOS source code files). At the latest, Cisco should have disclosed its complete helpdesc contentions in its January 2016 supplemental response. That response demonstrated that Cisco had in fact analyzed Arista's helpdesc command descriptions. And by January 2016, and indeed earlier, Cisco already had access to *all* of the source code files

that Cisco now cites as support for its contentions. Santacana Decl. ¶¶ 3–6; Exs. 8, 9.

Cisco's last-day disclosure deprived Arista of any "meaningful opportunity to take discovery regarding" the new contentions, the ability to "plan its discovery, including depositions, based on the disclosures," and to "make educated choices about how best to use [its] discovery resources." *Vieste*, 2011 WL 2181200, at *3 (finding prejudice from disclosure of new witnesses on last day of fact discovery). As to all of the infringement allegations that Cisco disclosed earlier in the case, Judge Grewal ordered Cisco to identify the author or originator of claimed protected expression, as well as other bibliographic information. *See* ECF No. 83. This is an essential first step for testing the originality of the expression, as well as exploring questions surrounding equitable estoppel, fair use, and copyright misuse.[3] By holding onto these new contentions until the close of discovery, Cisco deprived Arista of the ability to take any discovery whatsoever regarding the new claimed similarities, including the discovery the Court compelled for the other alleged similarities.

Cisco has claimed that Arista can defend itself against these new allegations through expert discovery. Santacana Decl. ¶ 9. Courts have rejected that argument, too. In *Jones v. Travelers Cas. Ins. Co. of Am.*, 304 F.R.D. 677, 681 (N.D. Cal. 2015), for example, the defendants produced relevant spreadsheets three weeks after fact discovery closed and fifteen days before opening expert reports were due. The late disclosure "prevented Plaintiffs from conducting further fact discovery regarding Defendant's newly-advanced justification," and so, in turn, "deprived Plaintiffs of the chance to incorporate whatever additional facts Plaintiffs may have learned about the data in [the spreadsheets] in Plaintiffs' opening expert reports, which were served [fifteen days later] . . . or rebuttal expert reports and dispositive motions." *Id.* at 681–82; *see also Apple, Inc. v. Samsung Elecs. Co.*, 2012 WL 3155574, at *5 (same). Expert discovery is no cure to the prejudice caused by Cisco's late disclosure.[4]

---

[3] For example, Cisco identified over 160 "authors" of CLI commands asserted by Cisco. Arista took the deposition of a number of those CLI "authors," as well as hours of Rule 30(b)(6) testimony on the origin and use of CLI commands, modes, prompts, and hierarchies, and the third-party depositions of CLI vendors Dell, Juniper, and HP. Santacana Decl. ¶ 7

[4] Arista also propounded an interrogatory asking Cisco to match each asserted CLI command, mode, prompt, hierarchy, and response to its copyright registrations—a prerequisite to suit for copyright infringement. Santacana Decl., Ex. 21. Arista's document requests likewise have

**B.     The Court should strike as untimely Cisco's inexcusably late claim for specific lost sales.**

**1.     Cisco's supplemental lost profits claim violates Rule 26(e) because it was not disclosed "in a timely manner."**

Cisco's last-minute disclosure of accounts for which it now claims it would have made sales but for the alleged infringement is also untimely. Over a year ago, Arista asked Cisco to explain its bases for any damages claim.[5] Santacana Decl., Ex. 1 (Interrogatory 15). Cisco refused to identify any specific lost sales, nor did it provide the documents on which it now bases its account-specific lost sales, claiming instead that it would stand on expert evidence alone to prove damages. Santacana Decl. ¶¶ 4–6.

Cisco's June 7 about-face is completely inexcusable. Cisco could have provided the same list of 73 accounts when it made its first initial disclosure, since the information was gleaned solely by looking at Cisco's files, including its Salesforce.com database. Santacana Decl., Ex. 18 at 9:1–13:3. Waiting until the last three days of discovery to disclose the factual basis for a particular category of damages when that information was available to the plaintiff from the beginning of the case is exactly what Rule 26(e) seeks to avoid. *See, e.g.*, *Calvert v. Ellis*, No. 2:13-CV-00464-APG, 2015 WL 631284, at *2 (D. Nev. Feb. 12, 2015) (plaintiff violated Rule 26(e) by disclosing intention to seek future medical expenses as damages three months before close of discovery); *Ritchie Risk-Linked Strategies Trading (Ireland), Ltd. v. Coventry First LLC*, 280 F.R.D. 147 (S.D.N.Y. 2012) (plaintiffs violated Rule 26(e) by disclosing bankruptcy-related fees and costs as claimed damages after close of discovery).

**2.     Cisco's belated disclosure of its lost sales theories was inexcusable and prejudicial.**

Cisco cannot carry its burden to prove that its Rule 26(e) violation was either substantially justified or harmless. *See Yeti*, 259 F.3d at 1107. During the meet and confer process, Cisco offered only one explanation for its delay: that Arista did not produce its financial data until near

---

asked for documents related to the asserted elements; indeed, Arista designed the search terms that Cisco used to search its own custodial files with Cisco's then-disclosed infringement contentions in mind. *Id.* ¶ 8. But because Cisco belatedly disclosed its helpdesc allegations, Arista has not been able to seek comparable discovery into those contentions.

[5] Moreover, Cisco was required by Rule 26(a)(1)(A)(iii) to disclose a computation of damages and documents "on which each computation is based."

9
DEFENDANT ARISTA NETWORKS, INC.'S MOTION TO STRIKE OR CONTINUE CASE SCHEDULE
Case No. 5:14-cv-05344-BLF (NC)

1065754

the end of damages discovery.  Santacana Decl. ¶ 9.  Cisco's position misses the point.  Cisco's June 7 discovery response confirms that Cisco can (and did) develop its lost sales damages theory based upon *Cisco's own data*.  Cisco did not rely on confidential Arista sales information to compile its list of accounts.  Santacana Decl., Ex. 18 at 9:1–13:3.  The fact that Cisco may narrow or refine its damages theory in response to Arista's own records does not absolve Cisco for withholding (or failing to investigate) its own lost sales theories for the entire discovery period.

Cisco's failure to disclose its intention to prove damages through specific lost accounts rather than aggregated sales data and expert testimony is highly prejudicial. As with its late disclosure of copyright infringement contentions, Cisco's lost profits disclosure deprived Arista of a "meaningful opportunity to . . . make educated choices about how best to use [its] discovery resources."  *Vieste*, 2011 WL 2181200, at *3.  Arista "undoubtedly would have pressed for additional documents and asked additional deposition questions of fact witnesses, had this disclosure been made prior to the depositions."  *Ritchie*, 280 F.R.D. at 160; *see also Jones*, 304 F.R.D. at 681; *Apple, Inc. v. Samsung Elecs. Co.*, 2012 WL 3155574, at *5 (same).

Had Cisco disclosed this information at the beginning of the case, when it was obligated to do so, Arista could have formulated a plan to exploring the details of specific reasons each customer bought, or did not, buy Cisco, including additional third-party discovery.  Instead, Arista was left to guess whether any particular customer relationship or transaction would be relevant to Cisco's damages theories.  Moreover, even after the list was provided, Cisco's own 30(b)(6) witness admitted to having no specific information about the reasoning behind any lost sale to any particular customer, thus demonstrating that, to challenge Cisco's damages theory, Arista would have needed additional more targeted discovery.  Santacana Decl., Ex. 18 at 14–20.  To allow Cisco to spring new damages contentions at the close of discovery is to sanction the worst of discovery gamesmanship, to the severe prejudice of Arista.

V.     **CONCLUSION**

For the foregoing reasons, Arista requests that the Court strike the supplemental copyright infringement contentions and the supplemental lost profits claims pursuant to the "self-executing" exclusionary sanction of Rule 37(c)(1).

| | | |
|---|---|---|
| Dated: June 13, 2016 | | KEKER & VAN NEST LLP |
| | By: | */s/ Brian L. Ferrall* <br> BRIAN L. FERRALL |
| | | Attorney for Defendant <br> ARISTA NETWORKS, INC. |