1                 UNITED STATES DISTRICT COURT

2                NORTHERN DISTRICT OF CALIFORNIA

3   Before The Honorable Beth Labson Freeman, Judge

4

5   CISCO SYSTEMS, INC.,              )
                                      )
6            Plaintiff,               )
                                      )
7   vs.                               )   No. C 14-05344-BLF
                                      )
8   ARISTA NETWORKS, INC.,            )
                                      )
9            Defendant.               )
    _____)

10

11                                    San Jose, California
                                      Thursday, June 16, 2016

12   TRANSCRIPT OF PROCEEDINGS OF THE OFFICIAL ELECTRONIC SOUND
            RECORDING 11:25 - 12:15 = 50 MINUTES

13

14  APPEARANCES:

15  For Plaintiff:
                              Quinn, Emanuel, Urquhart
16                              & Sullivan, LLP
                              51 Madison Ave
17                            22d Floor
                              New York, New York 10022
18                  BY:  KATHLEEN MARIE SULLIVAN, ESQ.

19                            Quinn, Emanuel, Urquhart
                                & Sullivan, LLP
20                            50 California Street
                              22nd Floor
21                            San Francisco, California
                                94111
22                  BY:  AMY H. CANDIDO, ESQ.

23

24            (APPEARANCES CONTINUED ON NEXT PAGE)

25

2

1   APPEARANCES:   (Cont'd.)

2   For Defendant:
                              Keker & Van Nest, LLP
3                             633 Battery Street
                              San Francisco, California
4                               94111
                         BY:  ROBERT ADDY VAN NEST, ESQ.
5                             BRIAN L. FERRALL, ESQ.
                              DAVID JASON SILBERT, ESQ.
6

7   Transcribed by:           Echo Reporting, Inc.
                              Contracted Court Reporter/
8                             Transcriber
                              echoreporting@yahoo.com
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

3

1  <u>Thursday, June 16, 2016</u>                    <u>11:25 a.m.</u>

2                    P-R-O-C-E-E-D-I-N-G-S

3                         --oOo--

4        THE CLERK:  Calling case 14-05344, Cisco Systems

5  versus Arista Networks.

6     Counsel, please come forward and state your appearance.

7        MS. SULLIVAN:  Good morning, your Honor.  Kathleen

8  Sullivan for plaintiff Cisco.

9        THE COURT:  Good morning.

10       MR. VAN NEST:  Good morning, your Honor.  Bob Van

11 Nest for defendant Arista.  And I'm here with Brian Ferrall

12 and Jason Silver.

13       THE COURT:  Good morning.

14       MS. SULLIVAN:  And, your Honor, I'm here with Amy

15 Candido.

16       THE COURT:  Good morning.

17    Well, this is one of those cases that ages the whole

18 group of us, right, Mr. Van Nest?

19       MR. VAN NEST:  Yes, it does.  Yes, it does.

20       THE COURT:  Okay.  Well, there are a lot of issues

21 that are pending today.  I think I want to start off by

22 saying that the trial date is firm, and so that may clarify

23 some of the issues that are pending.

24    Ms. Sullivan, I know that's of great concern to your

25 client.

1          MS. SULLIVAN:  Yes, it is, your Honor.

2          THE COURT:  And way back when this case started, I

3   did somersaults to provide what is on my calendar an

4   expedited hearing -- trial date, and I have cleared out

5   everything else so you're not waiting in line on that trial

6   date.

7          And you don't have an 84-year-old defendant that's

8   going to bump you out of your trial.  And those dates are

9   hard to come by.  This case would have to be postponed until

10  early 2019.  And I know all the arguments on the reasons

11  this case needs to go forward, because we've been through

12  them before.

13         And so with that comment, Mr. Van Nest, perhaps some of

14  these issues we can deal with in a more expedited way.

15         I know you'll be filing summary judgment motions in the

16  next couple of weeks; is that right?

17         MR. VAN NEST:  That's right.

18         THE COURT:  All right.  And that's of course an

19  important juncture in this case, and that will be important.

20         You're asking -- there are a few things that you're

21  asking for, making some minor modifications to the pretrial

22  submission dates.

23         MR. VAN NEST:  I think we expect to have an

24  agreement on that, your Honor.  I think the worst it will be

25  is the dates in your standing order.  There won't be any

5

1 worse than that.  But the parties are discussing those

2 pretrial filing dates, and I expect to come to an agreement

3 and we'll submit a stipulation on that.  And we'll make sure

4 that you get the time that you --

5          THE COURT:  I'm not approving one that doesn't

6 give me the time I ordinarily get.

7          MS. SULLIVAN:  That's correct.

8          MR. VAN NEST:  Hopefully it will be better than

9 that.

10          THE COURT:  And that's fine, and I do appreciate

11 that.

12          MS. SULLIVAN:  That's correct, your Honor.  We are

13 happy to come to an agreement and submit a revised schedule

14 to your Honor.

15          THE COURT:  I appreciate that.

16          MS. SULLIVAN:  The dates that we are discussing

17 would be October 12th and October 19th.  October 12th is the

18 last day to meet and confer and October 19th for the

19 submission of the joint pretrial statement and order to you.

20 That would come in one day better than you're standing order

21 in both cases.

22          THE COURT:  Okay.  Sure.  That's great.

23      Okay.  So now we've kind of cleared away the easy

24 stuff.  There is a motion to strike late contentions or to

25 reopen discovery.  That -- I'm saving the best for last of

6

1  course here.

2      But with the trial date being firm, that motion is now

3  pending I suppose before me, and I'm wondering if it

4  shouldn't actually go to Judge Cousins.

5          MR. VAN NEST:  It could, your Honor.  That would

6  be fine with us.  It was filed here because -- not that

7  we're asking for additional time.  We're really asking to

8  have these late-filed contentions stricken, and so I think

9  Judge Cousins would be a perfect place for that, in light of

10  your Honor's comments on the trial date.

11          THE COURT:  Okay.  Any objection to that?

12          MS. SULLIVAN:  May I confer, your Honor?

13          THE COURT:  Yes, please.

14      (Pause.)

15          MS. SULLIVAN:  Your Honor, Cisco is amenable to

16  that.  As you pointed out, Cisco's goal is to keep the trial

17  date.

18          THE COURT:  Yes.

19          MS. SULLIVAN:  I would just like to also say that

20  Cisco would be amenable to an earlier hearing date if the

21  Court wanted to keep the motion in front of the Court.

22          THE COURT:  I'm hopefully actually Judge Cousins

23  can get to it.  I believe you have some matters pending

24  before him right now.

25          MR. VAN NEST:  We do, your Honor.  He's been very

7

1 prompt.

2          THE COURT:  And so I think that's going to be a

3 quicker resolution, and I will talk to him about that.

4     It's my understanding that the patent local rules on

5 disclosure of contentions do not apply in copyright cases.

6 Is that an issue -- I didn't read the papers on this, but is

7 that an issue in dispute here?

8          MR. VAN NEST:  Not really, your Honor.

9          THE COURT:  Okay.

10          MR. VAN NEST:  This is not a patent disclosure

11 issue.

12          THE COURT:  No, it's not.  It's about the

13 copyright side of the case.

14          MR. VAN NEST:  That's right.

15          THE COURT:  Okay.

16          MR. VAN NEST:  I think Judge Cousins is going to

17 resolve it.  And I think you're right, he'll resolve it

18 perhaps more quickly than your Honor's schedule will allow.

19          THE COURT:  All right.  So I will make that

20 referral.

21          MR. VAN NEST:  And we'll re-file there as well.

22          THE COURT:  I don't know that he allows the full

23 briefing that you might have presented to me.  I don't know.

24          MR. VAN NEST:  He typically doesn't but we'll see

25 what he'd like.

1          THE COURT:  So I don't need to refer it to him; it

2 will be re-filed?

3          MR. VAN NEST:  Either way, your Honor.  I think it

4 would be good for your Honor to let him know --

5          THE COURT:  I most definitely will.

6          MR. VAN NEST:  -- that it was filed here and that

7 we'll be in touch.

8          THE COURT:  That's great.  Okay.

9          MR. VAN NEST:  That would be good.  That would be

10 helpful.

11          THE COURT:  That makes sense.  All right.

12     Now, then we have the issue that actually was new to

13 me, whether we're going to engage in an exercise of, I guess

14 we'll call it the filtering process.

15          MR. VAN NEST:  That's right, your Honor.

16          THE COURT:  So let me hear from you, Mr. Van Nest.

17          MR. VAN NEST:  Yeah, what we're -- you're quite

18 right that we're filing our summary judgment motions in a

19 couple weeks and we're hopeful that those will narrow the

20 case, and we think they will.  Those will address some

21 copyright issues and some patent issues --

22          THE COURT:  Okay.

23          MR. VAN NEST:  -- on whatever remaining patent

24 that we have in the case.

25     But the Ninth Circuit also requires that even where

9

1 some item is copyrightable, there be a pretrial

2 determination of whether or not there are aspects that

3 should be filtered out as unprotectable.

4     And what the Ninth Circuit has said is that the judge

5 needs to decide ahead of time really two things.  First, the

6 plaintiff will presumably be telling us what are the items

7 of similarity that the jury is to compare.

8         THE COURT:  Yes.

9         MR. VAN NEST:  Then secondly the Court looks at

10 those similarities and determines whether some of them are

11 simply unprotectable.  And in the Apple case Judge Walker

12 determined a number of the elements weren't protectable, and

13 the Harper House case the same thing wasn't done and the

14 Ninth Circuit reversed it.  And the reason for that is to

15 make sure that the jury is actually making an infringement

16 determination based on copyrighted materials that are

17 protectable.

18     And the third thing -- or the second the Court needs to

19 decide is if there are protectable elements left after the

20 filtering process, what level of protection do they deserve.

21 If the protection is broad, then the standard is a little

22 bit more relaxed, right?  Substantially similar.

23     If the protection is thin -- and we think that will be

24 the case here -- then the standard is higher.  And the

25 reason that -- trials go a lot better when the jurors

1  understand from the beginning what it is they're expected to
2  do.  And, as you know in our district, we spend a lot of
3  time on jury instructions ahead of time and what the jury is
4  going to be told from the get-go about what they're to do.
5      And so in this instance, all we're really asking for is
6  a short additional brief of 10 to 15 pages -- and we've
7  proposed a briefing schedule that's in parallel with summary
8  judgment -- and a hearing following that briefing, which
9  could also occur in conjunction with summary judgment where
10 this filtration process occurs.
11          THE COURT:  So let me just ask you about it.
12 Putting aside whether you're entitled to that and whether it
13 makes sense in terms of trial management.  It's very
14 enticing that you're offering to submit a very concise brief
15 of 10 to 15 pages, but does this come along with 6,000 pages
16 of exhibits?
17          MR. VAN NEST:  No.  No, what it would come along
18 with is a short declaration from our expert.  He's prepared
19 a short appendix that kind of lays out the source of these
20 so-called protectable elements in the CLI.  And it's -- we
21 have -- we can't avoid the fact that they're still pressing
22 forward on 500 individual commands.
23          THE COURT:  I understand that.
24          MR. VAN NEST:  And I've been saying from day one,
25 there's got to be a way to manage this.  It's currently not

11

1 manageable already for a trial of two to three weeks'

2 duration, which is what we have.

3     But what our expert would be addressing is a number of

4 the elements.  And a lot of them overlap because the same

5 terms are used over and over and you see a lot.  So it's not

6 as though there's 500 individual decisions to make.  That's

7 not the case.

8     But it will be a short declaration and a submission

9 probably of one of the appendixes of his report.  And then

10 there would be a response, I'm sure, from Cisco.

11     And if your Honor felt as though hearing from the

12 experts was important or necessary, you could either do that

13 or refer that to Judge Cousins, I suppose, or simply hear it

14 at oral argument either on the date of our summary judgment

15 or some other date convenient to the Court.

16     We have an August 4 date, I believe, for summary

17 judgment.

18         THE COURT:  Yes.

19         MR. VAN NEST:  The idea is, we believe even if --

20 even if the CLI are copyrightable -- which of course we

21 don't believe they are.  But even if they are, there are

22 many elements in them that were either taken from industry

23 standards or copied from prior sources or are in common use

24 in the industry not only by Cisco and Arista but by

25 everybody else.  And that's what our expert has analyzed and

1  has presented.

2      And I think, if we're right, even if your Honor were to

3  find that the CLI overall are copyrightable, this would

4  dramatically reduce what the jury would need to decide.

5  They would be told:  Hey, here are the elements that are

6  actually protectable and in suit, and the standard you're to

7  apply in comparing them to Arista's accused work is

8  virtually identical, or substantially similar, depending on

9  what your Honor were to determine.

10     So it seems to us that there's really -- the suggestion

11  Cisco makes that we sort of roll into the trial and do this

12  later makes no sense.

13          THE COURT:  Well, so you are our expert on this in

14  the Oracle/Google case.  That's exactly what Judge Alsup

15  seemed to have done.  At least I was referred to an order

16  from the first trial.

17          MR. VAN NEST:  Right.

18          THE COURT:  I don't actually know what you've just

19  done, but I would say he kind of gave you the bum's rush on

20  this request during the first trial with a two-sentence

21  order.  So it left me wondering, how did that actually work

22  out.

23          MR. VAN NEST:  Very poorly.  The case was reversed

24  and we tried it twice.  I mean the whole point --

25          THE COURT:  But what happened the second time?

1          MR. VAN NEST:  The --

2          THE COURT:  Did the federal circuit's opinion take

3 care of this issue?

4          MR. VAN NEST:  The federal circuit's opinion took

5 care of this issue.

6          THE COURT:  Okay.

7          MR. VAN NEST:  And all we tried the second time

8 was fair use.

9          THE COURT:  Okay.

10          MR. VAN NEST:  So there wasn't -- in other words,

11 the second time, the trial we just completed.  The only

12 issue was fair use --

13          THE COURT:  Yes.

14          MR. VAN NEST:  -- and damages for phase two,

15 but -- because the federal circuit was all the other issues.

16          THE COURT:  I see.

17          MR. VAN NEST:  Now, had -- I hate to say it, but

18 it's certainly true that had Judge Alsup reached his

19 decision as we're asking your Honor to do ahead of time,

20 then we wouldn't have had a first trial.  We would have just

21 had the second trial on fair use.

22     He decided they weren't copyrightable, right?  So

23 there's no reason to have a trial if that's the situation.

24 But yet we had a first trial, and then that went up and that

25 was reversed.

14

1      So I'd say also there's a big difference between the

2 APIs that were at issue in the Oracle/Google case and the

3 CLI that are --

4            THE COURT:  That I can't judge, sure.  Okay.

5            MR. VAN NEST:  -- human commands here.

6      You'll get into that when we file our motions and

7 stuff.  There are significant differences.  But the order

8 they cite was later reversed, which meant that we spent all

9 that time in the first trial to no avail, and the second

10 trial which we just completed was the one that resolved the

11 issue for the parties.

12     So what we're saying is:  Here, it's more complicated.

13 They have 500 individual commands.  They're pressing

14 forward, as far as know, on all 500.  We don't think any of

15 them are copyrightable.  But even if they are, it's going to

16 be important to get this case focused on what the jury

17 should actually be deciding.  Are there protectable elements

18 and have they been infringed by Arista in its product.

19           THE COURT:  All right.  So there are -- I mean

20 there's the threshold issue of whether you're even entitled

21 to that early determination and that filtering.

22     And then there's the second question which is how do I

23 actually do that, because if you only submit to me a

24 declaration of an expert that makes it clear that I will

25 have an opposite opinion of an expert on the other side and

15

1  then I would be determining -- then do I need an actual

2  hearing so I can judge credibility of the experts in order

3  to make this determination?

4      So then it raises the question of what factual issues

5  are there in developing this.  I mean you talk about whether

6  something was copied from somewhere else.  So that's a

7  factual determination.

8      If it's an industry standard, it might not be factual.

9  I'm not sure because I don't know what kind of evidence

10 there would be.

11     And it appears from the cases that I've read -- and I

12 want to hear from Ms. Sullivan on this -- that it is a

13 judicial function and not a jury function to make this

14 decision.  But I'm not positive of that because whenever

15 there are factual issues to determine, I become concerned

16 that -- I don't want to go into an area that's not mine

17 alone.

18         MR. VAN NEST:  Well, I think two things are true,

19 your Honor.  We contemplated filing and having an opposition

20 of course and a reply, and your Honor could decide I think

21 based on that whether you need a hearing or not or whether

22 you want to refer this to the magistrate.

23         THE COURT:  Well, I wouldn't refer it.  No, no.

24 Although I know I could.  This is not the kind of thing I

25 would refer because anything that is actually at the trial,

16

1  I need it to be my own rulings.

2              MR. VAN NEST:  Fair enough.

3              THE COURT:  I'd like to be reversed myself and not

4  on somebody else.

5              MR. VAN NEST:  Fair enough.  Then I think your

6  Honor could make that determination.  And I think that there

7  would be many areas where the parties will agree that

8  something is an industry standard or is taken from an

9  industry standard based on the depositions we've taken so

10  far.

11              THE COURT:  Okay.  I see.

12              MR. VAN NEST:  There will be areas, I'm sure, of

13  disagreement, but that's why it's not summary judgment.

14  It's a judicial function that requires, in some cases,

15  resolution of disputed facts.

16      For example, a lot of words in the commands pre-existed

17  anything Cisco did, and the engineers at Cisco were aware of

18  them because of prior work in the industry.  And there's no

19  dispute that those words or combinations of them appeared in

20  what I'll call prior art, but it's really pre-existing

21  materials.  And so they're not truly original.

22      And what they're arguing is, well, the way we put it

23  together, and so on and so forth.  And the other words we

24  added.

25              THE COURT:  That would have support in the case

1 law, don't you think?

2          MR. VAN NEST:  Well, I think they do with

3 respect -- there may be some multi-word commands that

4 survive the filtering process.  I'm not conceding that, but

5 that's possible.  But I am indicating that there are many,

6 many, many commands and words within the commands that will

7 not.

8          THE COURT:  So you're suggesting that these 500

9 commands are a unit like the GUI was in the Apple case.  But

10 it's so different because that was the artistic expression

11 of it.

12     Here, I've got 500 separate CLIs, don't I?

13          MR. VAN NEST:  They are separate.  Many of them

14 are very similar.

15          THE COURT:  And so I -- I appreciate that.  But

16 when you talk about the elements, you're suggesting -- and

17 if I have to do this, I'll do it -- that I'm going to look

18 at each one individually and make a determination on whether

19 it's copyrightable or not.

20     When you say the elements, I'm not going to say -- are

21 you suggesting that certain words might be eligible for

22 protection in one, I'll call it phrase?  In one command?

23          MR. VAN NEST:  It's kind of the flip side of that,

24 your Honor.

25          THE COURT:  Okay.

1          MR. VAN NEST:  I don't think you'd be looking at

2   500 separate commands --

3          THE COURT:  Okay.

4          MR. VAN NEST:  -- because of these are in groups.

5          THE COURT:  Sure.

6          MR. VAN NEST:  For example, the word "show"

7   appears over and over and over in many, many commands.  And

8   that was out and being used and common long before anything

9   Cisco did.

10          THE COURT:  Okay.

11          MR. VAN NEST:  But I say the "flip side."  I say

12   there are many words from industry standards or from

13   pre-existing systems that don't qualify for protection,

14   right?

15          THE COURT:  Well, it's just an interesting thing

16   to pluck out a word and then you're really -- well, I don't

17   want to get into the merits of it, but I'm just trying to

18   understand what I'd be buying into if I agreed with you.

19          MR. VAN NEST:  What you'll be buying into is

20   reviewing, as I said, a short brief and a declaration from

21   our expert and determining whether or not from that, and of

22   course the opposing materials -- determining which of the

23   words and which of the commands deserve protection and which

24   don't.  Because if we don't do it ahead of time, as in the

25   Harbor House case, the court didn't do it and the case came

19

1  back because there, the Court of Appeal in the Ninth Circuit

2  said it's not clear what the jury was actually comparing.

3  And if they were basing their infringement finding on

4  unprotectable elements, that verdict can't stand.  And it's

5  not clear because the trial judge didn't make clear what the

6  jury was to do and basically threw it all in the hopper and

7  let the jury decide it, when clearly in that case, there

8  were unprotectable elements mixed in with protectable

9  elements.

10            THE COURT:  So then it raises the issue of whether

11  I shouldn't just hear this trial once, send the jury home,

12  make the determination in the final jury instructions.

13  Because what it appears to me is the jury is going to render

14  500 separate verdicts, potentially, on each of the commands

15  that are at issue.  Yes, they may be grouped.  I appreciate

16  that, and you may ultimately collapse it into certain

17  groupings that are going to be in or out that you agree to.

18      But is that the -- I mean I'm just concerned that it's

19  going to be two trials.

20            MR. VAN NEST:  I don't think so.  I think the

21  first hearing that we, you know, propose be done on a

22  parallel track, would give your Honor an opportunity to look

23  and see if there are some -- some of the words which I think

24  you will determine clearly can't be protected and give Cisco

25  some direction as to what they need to do.

1     In other words, they want to proceed on at least two

2 fronts.  They want to talk about the overall structure of

3 the CLI, sort of a hierarchy and the modes and so on.  And

4 they also want to press forward on 500 individual commands.

5     So if they're going to do the latter, we certainly have

6 the right to challenge things like the originality and the

7 genesis of those commands, where they came from, whether or

8 not they're original with the author, and that sort of

9 thing.

10     I have been assuming that as this case went along,

11 through some process or another they would narrow that down

12 so we actually have something we could try in a couple of

13 weeks, but it hasn't happened.  And we know darn well that

14 there are some of the words in these commands that everybody

15 in the industry is using because they come from some

16 industry standard.

17     We know there are other words that everyone's been

18 using, including lots of folks that started before Cisco

19 did, people at Stanford and people developing Unix and other

20 systems.

21     So unless we do that in some fashion, we're going to

22 have a totally mixed-up trial.  We're going to have a really

23 mixed-up trial, in my mind.

24     For example -- give you the example of Oracle.  We

25 spent a couple of months working on the fair use jury

21

1  instruction until we got it into the shape that Judge Alsup

2  felt it should be with -- we had multiple hearings.  I'm not

3  proposing that.

4      But we had multiple versions of it, and because clearly

5  that was going to be the focal point for the jury's work.

6  And by the time the trial started Judge Alsup had in mind,

7  and we all did -- we had a set that was final and that we

8  were going to work with, no matter what.  Whatever

9  objections had been made were resolved.  And the jury got a

10  very clear roadmap to what their job was.

11      And that's the same sort of thing that we're asking for

12  here.  And in this case, it's required by the Ninth Circuit

13  in Apple/Microsoft and Harper House.  And we have a number

14  of other cases we'll cite when we file, if your Honor gives

15  us leave to do that.

16      And they all make clear that it's a judicial task and

17  needs to be done before the trial, especially in a case

18  where there's this much material that they're wanting to

19  pursue, these 500 individual commands.  They can be grouped,

20  but there's still 500 of them at the end of the day.

21          THE COURT:  Okay.  Thank you.

22      Ms. Sullivan, let me hear from you.

23          MS. SULLIVAN:  Thank you, your Honor.  You're

24  right that Judge Alsup gave the bum's rush to this idea and

25  you should too.

22

1      What Mr. Van Nest, my friend, is proposing is something

2 that has actually never happened in the Ninth Circuit and

3 certainly is not required by the Ninth Circuit, and that is

4 this mini trial before the trial.

5      And let me just start with how my friend has mis-cited

6 to you the Apple versus Microsoft precedent as well as the

7 Harper House precedent.

8      Apple versus Microsoft arose on a series of summary

9 judgment and summary adjudication motions. It's perhaps the

10 most extended summary judgment proceeding ever in this

11 circuit.  Between them, Judge Schwarzer and Judge Walker

12 issued six different opinions.  But the way that came about,

13 your Honor, was through summary judgment and through summary

14 adjudication motions by Apple.

15      And Arista is free here, complying with the Court's

16 schedule, to file whatever summary judgment or partial

17 summary judgment or summary adjudication motions it wishes

18 on the issues of copyrightability and on the issues of

19 protectability, on the issue of whether as a matter of law,

20 based on the expert evidence so far, certain elements are

21 unprotectable.

22      That's what was done in Apple versus Microsoft through

23 the summary judgment procedure, not through some separate

24 mini trial.  It just didn't happen there and it shouldn't

25 happen here.

1      They're free on June 30th, if they wish, to try to
2  narrow Cisco's case through a proper summary judgment motion
3  that puts before this Court whatever evidentiary support is
4  needed to make their assertion that as a matter of law
5  anything that we have said is copyrightable is not
6  copyrightable or as a matter of law anything that we say is
7  protectable is not protectable for purposes of the
8  filtration analysis.
9      The second place that my friend misstates what the
10 Ninth Circuit has required is the reference to Harper House.
11     Harper House went up on jury instructions.  It was an
12 instructional error appeal.  And ironically it was Judge
13 Rymer's instructions that get reversed in Harper House.  And
14 then of course Judge Rymer, when she's on the Circuit,
15 writes Apple versus Microsoft, setting forth the definitive
16 law of filtration.
17     So one can say that Judge Rymer certainly internalized
18 the message of Harper House.
19          THE COURT:  Yes.
20          MS. SULLIVAN:  But where Judge Rymer was reversed
21 was on jury instructions, as failing to adequately
22 distinguish for the jury what elements were protectable from
23 what elements were unprotectable.
24          THE COURT:  And so there's no dispute that before
25 the case goes to the jury, the instructions will have to

24

1  advise the jury what is protectable and what is not.

2          MS. SULLIVAN:  Absolutely correct, your Honor.

3          THE COURT:  All right.  And so just jumping ahead

4  a little bit, because I do have to consider the practicality

5  of making all of this happen and being ready on that trial

6  date, do you propose that this is accomplished at the end of

7  the presentation of the evidence, that the jury is literally

8  sent home while we develop this and I make my rulings?

9          MS. SULLIVAN:  Well, your Honor, I think there are

10 really three points at which we can address these issues.

11         THE COURT:  Okay.

12         MS. SULLIVAN:  One is the summary judgment motions

13 that will come before you through the ordinary course

14 starting on June 30th.

15         THE COURT:  Yes.

16         MS. SULLIVAN:  Okay.  And summary judgment or

17 partial summary judgment or summary adjudication is an

18 appropriate vehicle for Arista to try to argue protectable

19 elements versus unprotectable elements along the lines that

20 Mr. Van Nest suggests.

21         THE COURT:  But at a high level of undisputed

22 facts and there is a factual element here.  So that's a

23 limitation --

24         MS. SULLIVAN:  Yes, your Honor.

25         THE COURT:  -- on the effectiveness.

*Echo Reporting, Inc.*

25

1          MS. SULLIVAN:  Correct, your Honor.

2      But then the second place is in our preliminary

3  submission of jury instructions, which will take place

4  according to your Honor's standing order on October 21st.

5  So the parties can debate how the jury should be instructed

6  on protectability in submitting the jury instructions to the

7  Court.

8      And then, yes, at the close of evidence, when your

9  Honor is deciding what to do about the jury instructions

10  when you finally deliver them, you will have had the benefit

11  of hearing the evidence in the case, which will inform the

12  discussion of protectability.

13      Remember what Judge Alsup said in rejecting the

14  proposal of the same procedure in Oracle versus Google.

15  Judge Alsup said that the Court is convinced that the best

16  way to proceed is to rule on the copyrightable issues at the

17  end of the copyright portion of the trial.  Neither side has

18  any right to an advanced determination of these issues

19  before trial.  And it is sufficient that the jury will be

20  properly instructed before commencing deliberations.

21      Your Honor, if I could just suggest, there's a fourth

22  place.

23          THE COURT:  Okay.

24          MS. SULLIVAN:  The 50(a) motions at trial at the

25  close of plaintiff's case or at the close of evidence are

26

1 also an opportunity for protectability to be raised.

2      What I would say, your Honor, is yes, the Ninth Circuit

3 has made protectability an issue for the Court.  But where

4 the Court usually makes legal decisions is, A, in summary

5 judgment; B, in jury instructions; C, in 50(a)'s; and D, in

6 50(b)'s.  So you'll have ample opportunity to make --

7            THE COURT:  Yeah.

8            MS. SULLIVAN:  -- any legal determination here

9 without coming up with this new jerry-rigged mini trial idea

10 that's never been blessed by the Ninth Circuit.

11      And just to be clear, Apple versus Microsoft did not

12 require a pretrial determination.

13            THE COURT:  Yeah.

14            MS. SULLIVAN:  Apple versus Microsoft simply

15 reviewed summary judgment that was decided in the lower

16 courts according to the ordinary motion practice of summary

17 judgment.  There was no mini trial in Apple versus

18 Microsoft.

19      And, again, Harper House was just on instruction.

20      So your Honor, if I could just make one last point.  I

21 think that -- I'd like to make sure that the Court is clear

22 that this is not a case in which Cisco is asserting

23 copyright protection for 500 individual CLI commands.

24      To the contrary, the copyrighted work that we're

25 asserting was copyrighted is our operating system, our

1 source code, our user interface, our commands, our modes,

2 our hierarchies, our manuals, our help screens, and the

3 combination of those things.

4        And your Honor is exactly right, that filtration can

5 never be reductio ad absurdum where you say:  Well, there's

6 one note, Bb, that is in the common domain.  Therefore,

7 since that's unprotectable, the whole song is unprotectable.

8        Same thing with a word like "show" in a command line.

9 So filtration should never be an exercise in which you

10 disaggregate something down to such granular parts that you

11 forget what copyrighted work is before you.

12        So, with respect, I don't think we should get into the

13 merits of protectability here.  All we'd really like you to

14 do is deny this request for a highly unusual and

15 unprecedented mini trial procedure, which as your Honor

16 correctly observes, has the real potential to escalate into

17 an evidentiary contest that in some sense usurps and

18 displaces the very role of the jury in this case, guided by

19 the Court's instructions.

20        The places that we should have this out is in summary

21 judgment, jury instructions and the 50(a)'s and 50(b)'s.

22              THE COURT:  All right.

23              MR. VAN NEST:  May I respond very briefly, your

24 Honor?

25              THE COURT:  Yes, please.

28

1          MR. VAN NEST:  This is a proposed train wreck.
2  And the reason I say that is none of the stuff that counsel
3  recited like source code is there any claim of conflict,
4  right?  This is all about the CLI.

5          And the reason I say it's a train wreck is that, like
6  many plaintiffs, they would like to roll as far into the
7  trial as possible and invite some kind of a hearing at the
8  end of the evidence where the jury's waiting for jury
9  instructions, which is just not practical.

10         In Apple, the summary judgment happened because Apple
11  stipulated to summary judgment after Judge Walker made all
12  the determinations of fact.

13         THE COURT:  Sure.

14         MR. VAN NEST:  And you know darn well when she
15  stands here and says it's all about summary judgment, their
16  first point is going to be:  You can't resolve this on
17  summary judgment, your Honor, because there's questions of
18  fact.

19         And I'm here to say I don't want you to be
20  disappointed, because there are and may be fact
21  determinations you have to make outside of the framework of
22  summary judgment in order to get this case ready for trial.

23         So I'm not promising.  If I thought we could resolve it
24  on summary judgment, I'd be asking for more pages for my
25  summary judgment motion.

1          THE COURT:  Yeah, yeah.

2          MR. VAN NEST:  But I'm trying to be honest with

3   your Honor, I don't think it's practical.  And unless

4   they're waiving their objection to this, which they're

5   surely not, their first point is going to be it's a question

6   of fact and you can't resolve it on summary judgment.  And

7   I'm saying, hey, I don't care what procedure we use, and I'm

8   not advocating that we must have an evidentiary hearing.

9      I'm saying give me some pages to put this before your

10  Honor.  You can always then say, "You know, I don't think

11  it's necessary" or "I'm not required to do it" or "I don't

12  think it will advance the trial agenda."

13      I'm not asking to change the schedule.  I'm doing this,

14  suggesting it be in parallel with summary judgment.  If you

15  look at it and say "It's too complicated, Counsel, to do

16  this, I'd rather do it during the trial," okay, we'll have

17  our objection but --

18          THE COURT:  I appreciate that.

19      So, Ms. Sullivan, I have not really had the opportunity

20  to understand the full scope of the copyright part of this

21  case.  I just issued the claims construction.  That's a

22  little part of this case.

23          MR. VAN NEST:  Thank you.

24          THE COURT:  You're welcome.  It had to get out.

25      So if I agree with you that I don't need to order this

30

1  briefing schedule that Mr. Van Nest suggests, I do want to

2  be sure that I am able to understand the issue and deal with

3  the evidence and render a decision in an orderly way while

4  we have a jury waiting.

5      So that always concerns me.  We are literally against

6  the clock on this jury trial so this jury can go home for

7  Christmas, although if they have to come back in January,

8  they do.

9      So this gets to be a very practical concern of mine.

10         MS. SULLIVAN:  Yes, your Honor.

11         THE COURT:  And I agree with Mr. Van Nest.  This

12  actually doesn't sound like a summary judgment issue, that

13  he's not likely to be successful if I have dueling experts,

14  which I'm likely to have.  And the summary judgment standard

15  doesn't bend.

16      So then I move into a -- there will be factual

17  determinations that I will have to make, which I'm more than

18  glad to do.  It's what we do all the time.  And if it --

19  what you're suggesting is these factual determinations would

20  simply be the predicate to a jury instruction as opposed to

21  a reasoned order, which of course you don't get in a trial.

22  We know that doesn't happen.

23      So I'm just concerned about -- I will need to make

24  factual determinations in order to apply the law on what is

25  protectable and what is copyrightable in order to write a

31

1  jury instruction and, more importantly probably, a verdict

2  form that the jury can actually determine.

3       So I just want to be sure that even if I deny what Mr.

4  Van Nest is suggesting, that we have a process in place that

5  gives you the fair opportunity to present these issues to me

6  for determination.

7            MS. SULLIVAN:  Well, yes, your Honor.  And we

8  think that the ordinary course should be summary judgment.

9       And with respect, I do think if there were actually an

10 undisputed fact giving rise to an inference of

11 unprotectability, then the case would be narrowed on summary

12 judgment.  We don't think that will arise.

13           THE COURT:  Sure.

14           MS. SULLIVAN:  But it's the proper place.  It's

15 where Apple versus Microsoft -- that's where the rubber hit

16 the road in Apple versus Microsoft was summary judgment.

17      Second, your Honor, we'll put a great deal of work into

18 our proposed jury instructions and our proposed verdict form

19 in order to make protectability issues as clear as possible

20 for you to explain to the jury.  And that will be pretrial.

21 So it won't be some train wreck that arises when the jury is

22 sitting idly by.

23           THE COURT:  Yeah, yeah.

24           MS. SULLIVAN:  So we'll put that work in in

25 advance.  But there's literally nothing in any Ninth Circuit

1  precedent that suggests that the filtration analysis or the

2  analytic dissection of the elements of similarity that takes

3  place under the extrinsic first prong of the Ninth Circuit's

4  test -- there's nothing that suggests that that should be

5  done as a matter of law through some extraordinary pretrial

6  procedure.

7       That's simply --

8            THE COURT:  Well, I don't think it's done as a

9  matter of law, do you?  I think there are factual --

10            MS. SULLIVAN:  Mixed question.

11            THE COURT:  It's a mixed question.

12            MS. SULLIVAN:  Correct, your Honor.

13            THE COURT:  But it's a mixed question that comes

14  to me.

15            MS. SULLIVAN:  That's right, your Honor.

16            THE COURT:  Yeah, yeah.  And that's fine.  And

17  that's -- well --

18            MR. VAN NEST:  Your Honor, if we're going to do

19  this, why not start early?  I mean this is the thing that so

20  often trials get off the rails, in my experience, because we

21  don't start early enough.  If your Honor would entertain the

22  briefs, you don't have to decide anything on August 4th if

23  you think that we can wait or we can push it off.

24       But if we wait until October 19th --

25            THE COURT:  Yeah.

33

1        MR. VAN NEST:  -- with the context of jury

2  instruction, we're going to be in this mess at the pretrial

3  conference where we should be talking about the fine-tuning

4  of how this trial's going to happen, not the broad scope of

5  what's the jury actually going to do.

6        And all I'm asking is that we have a chance to brief it

7  in some fashion.  And I'm not promising summary judgment,

8  because again --

9        THE COURT:  No.

10       MR. VAN NEST:  -- she's conceded that it isn't

11  summary judgment.

12       MS. SULLIVAN:  I didn't.

13       THE COURT:  You know what, frankly I appreciate

14  that you wouldn't waste everyone's time on summary judgment

15  when you know it's not proper.  I appreciate that.

16       You know, I am going to want this briefing.  Your

17  motions in limine are not really the proper place for this.

18  They're short.  They're not intended to be summary judgment

19  issues.

20       This is separate.  I do need briefing on this issue.  I

21  do want to see the contours of the factual issues here so

22  that I can understand it.  And I don't want to get that a

23  week before trial, because I think it's more than I can

24  absorb.

25       So I do want the briefing.  But I guess the one bit of

34

1  clarity I can bring to you now is I'm not going to allow a

2  hearing on this on August 4th, and I'm not going to make a

3  determination in advance of trial as you suggested in the

4  statement.

5      But that being said, Mr. Van Nest, what you're

6  suggesting now, that I ask you to brief this issue and

7  develop this issue for me so that I'm fully ready to deal

8  with it at the right time, is very attractive to me.  And I

9  don't know that there's any opposition to that.

10     I'm not even suggesting that you provide to me the

11  expert reports.  I am really -- but maybe that is even

12  appropriate.  In a certain sense, I'm putting it on the

13  shelf until I'm ready to deal with it, but I'm not presented

14  with it with the deluge of pretrial submissions.

15     I don't think it's enough just as a jury instruction

16  because there's so much that is in advance to developing the

17  jury instruction.

18     So do you object to some procedure there?

19         MS. SULLIVAN:  Well, your Honor, it depends on

20  what the procedure is.

21         THE COURT:  Yes, it does.

22         MS. SULLIVAN:  We want to assist the Court,

23  obviously.  We want to assist the Court with this very

24  important issue under Ninth Circuit law, and we think that

25  the proper place to start is to see how the summary judgment

1  motions arise.  And I did not concede that summary judgment

2  is not appropriate.

3      To the contrary, I argued to you that Apple versus

4  Microsoft arose from summary judgment motions.

5          THE COURT:  Yeah.

6          MS. SULLIVAN:  And if Arista wants to move for

7  summary judgment on issues of protectability, they should so

8  move.

9      I think it's premature to try to assist the Court with

10 this determination now in the abstract based on only the

11 expert reports.  I think what Judge Alsup said in

12 Google/Oracle -- Oracle/Google was that "After the judge and

13 jury hear the evidence" -- I'm reading now from the prior

14 order.  This is docket 584 in Oracle/Google.

15         THE COURT:  Yeah.

16         MS. SULLIVAN:  "After the judge and jury hear the

17 evidence, the judge will then give proper law instructions

18 and will rule on questions the Court of Appeals has

19 designated as solely for the judge.  These issues are best

20 left until after the judge has heard the evidence at trial."

21     And, your Honor, with respect to issues like those Mr.

22 Van Nest refers to, like where did the commands come from,

23 who authored them, that will depend on fact witness

24 testimony at trial.

25     So with respect, we're not sure how we can brief these

36

1  things in a useful way in the abstract over the summer.

2      If the Court would like a protectability brief in

3  addition to other pretrial materials, might I suggest a

4  possible alternative of asking for protectability briefs,

5  just simple straightforward briefs at the same time as we

6  submit our pretrial materials, but as a separate matter so

7  we can frame the issue for you then.

8      I'm just fearful that this is piling on to an already

9  very crowded summer schedule where we're still completing

10 damages discovery and damages expert reports.

11          THE COURT:  I understand.

12          MR. VAN NEST:  She's fearful.

13          MS. SULLIVAN:  Excuse me, Mr. Van Nest.

14      And where we have summary judgment motions to attend to

15 and where we have a number of things to get ready for for

16 pretrial, that to superimpose this extra briefing at this

17 point is premature.

18      So if your Honor would like a protectability briefing,

19 could we respectfully suggest that it be submitted closer to

20 the time of trial?

21          THE COURT:  Well, to me, it's -- we're already

22 pretty close to trial.  I appreciate that there's a lot

23 going on in this case.  But when I look at my trial schedule

24 leading up to it, I have to see where I actually have the

25 time as well.  So that's of concern to me.

1    And there's one of me, and although I haven't counted

2 the number of lawyers, I've signed all of those pro hac vice

3 forms and there must be 50 of you.  So I'm sure that there

4 could be 51 if needed, and that wouldn't be a hardship.

5         MR. VAN NEST:  I wish that were true, your Honor.

6         THE COURT:  Ultimately I'll need a protectability

7 brief, but just a brief on the law is not -- I mean I'll

8 welcome it but I don't think that's really the issue.

9    The issue is really going to be for me to understand

10 better what Cisco is presenting as protectable and to define

11 that for me, because I don't know that the complaint is

12 really the best place for me to understand that.  That's

13 more what you would do in a trial brief close to trial.

14    I have to have a good handle on what that is.  I have

15 to be able to visualize it, understand it and then to take

16 that description and look at the law on protectability,

17 because I don't know whether I'm looking at the minutiae of

18 command lines or if I'm looking at this bigger structure of

19 the operating system or something in between.  That's what I

20 really need to understand, and I don't have that yet.

21    So, no, I don't think you need to brief it as you're

22 briefing your summary judgment.  That's coming right up.

23 But -- or at least not in June.  But to wait until your

24 briefing is done gets you to middle of July.  And, yes, I

25 think I would like to see -- I think the issue needs to be

38

1  teed up for me in the very earliest parts of the fall, not

2  for decision but for me to understand it and then for me to

3  be able to manage the trial in a way that gives us

4  sufficient time for me to develop the final jury instruction

5  and the orders that will be necessary in order to get there.

6          MR. VAN NEST:  Your Honor, we --

7          THE COURT:  So, yes, I would like that.

8          MR. VAN NEST:  We were willing to file June 3rd --

9          THE COURT:  Yes.

10          MR. VAN NEST:  -- so if your Honor had us file in

11  the middle of July, that's fine.

12          THE COURT:  All right.

13          MR. VAN NEST:  And they can take what time they

14  need to respond.  But I do think -- we'll be ready soon.

15          THE COURT:  Yeah.

16          MR. VAN NEST:  So you don't need to wait on our

17  account.

18          THE COURT:  Okay.  But to Ms. Sullivan's point,

19  not for decision pretrial.

20          MS. SULLIVAN:  Correct, your Honor.

21          THE COURT:  So that I do agree with you on.

22          MS. SULLIVAN:  Good.  Thank you, your Honor.

23      If I could just respectfully suggest that we get

24  through summary judgment, you have the hearing on August

25  4th --

1          THE COURT:  Yes.

2          MS. SULLIVAN:  -- and you set the date for the

3   protectability brief thereafter at that time, because it may

4   be the protectability issues have been explicated to you

5   through the summary judgment process.

6          THE COURT:  Sure.

7          MS. SULLIVAN:  And that may affect what it is you

8   want from us in further briefing.

9          THE COURT:  I think that makes sense.  Just to

10  give you a broad sense, if our hearing is on August 4th and

11  I would want briefing completed on the protectability issue

12  by Labor Day, and that should be ample time to have that

13  month and especially knowing three months in advance that

14  that's what I'd be looking for.

15         MR. VAN NEST:  So --

16         THE COURT:  Yeah.

17         MR. VAN NEST:  -- you want all the briefs in by

18  Labor Day?

19         THE COURT:  That's right.  That's what I'm

20  thinking.

21         MR. VAN NEST:  Okay.  So we can work the schedule

22  out basically.

23         THE COURT:  You can, but then you won't be

24  briefing it now.  I mean I certainly welcome appropriate

25  summary judgment motion that includes some of these issues.

40

1    But I have to leave that in your hands, Mr. Van Nest,

2 if it's worth your effort at this point to devote some of

3 your summary judgment pages to this issue.  And I appreciate

4 that you may choose not to.

5         MR. VAN NEST:  I think with only 25 pages --

6         THE COURT:  Yeah.

7         MR. VAN NEST:  -- and right now kind of a

8 sprawling mess of a case with the patent and the copyrights

9 and 500 of them and issues with protectability and so on and

10 so forth, I think it would be difficult in our 25-page limit

11 to do that.

12         THE COURT:  I understand.  I understand.

13         MR. VAN NEST:  If we think there's something we

14 can do, we will of course.  But I think that given the

15 constraints of your Honor's schedule and page limits and so

16 on, I don't think that will be practical.

17    Right now we're dealing with a number of issues where

18 we think we have clean summary judgment shots that will

19 reduce the case, may eliminate it if your Honor were to find

20 that the CLI were not copyrightable, as we think you should.

21 But apart from that, we will be attacking the rest of the

22 case on summary judgment.

23    But, again, I don't think this thing we're talking

24 about today -- at least as I envision it, I don't think that

25 all of it is amenable to summary judgment.  Maybe some of

41

1  it.  And so I'll talk to the team about that.

2           THE COURT:  Okay.

3           MR. VAN NEST:  And I understand your Honor doesn't

4  want to lift the page limits on summary judgment.  So I'll

5  live with what I have.

6           THE COURT:  You know, I rarely find it is helpful.

7  I don't -- I guess on this issue I just think that I'm going

8  to have to make factual determinations based on what you're

9  describing as your reasoning for some of these -- for the

10 filtering that you're suggesting, it's going to be a mixed

11 question of law and fact.

12     And if Cisco didn't contest the facts, then you don't

13 actually have to file a motion, because they would agree to

14 narrow the scope of their case.

15          MR. VAN NEST:  That's right.  And, your Honor, I

16 hope -- I understand what you're saying about not pretrial,

17 but I hope when you see our brief and the briefing is all

18 in, you'll realize that there are issues that can and should

19 be dealt with pretrial.

20     They continue to cite to Judge Alsup's order.  He

21 bought himself two trials.  I mean the whole point of that

22 was --

23          MS. SULLIVAN:  Well --

24          THE COURT:  Well, my -- but I don't think the

25 federal circuit reversed him because he waited until jury

42

1  instructions --

2          MS. SULLIVAN:  That's correct, your Honor.

3          MR. VAN NEST:  They did.  The determination that

4  he made on copyrightability is what was reversed.

5          THE COURT:  I understand, but do you actually

6  think he would have made a different decision if he had made

7  it earlier?

8          MR. VAN NEST:  No, no.  I think he would have made

9  the same decision, but we wouldn't have had the first trial.

10 That's my point.

11         THE COURT:  Okay.

12         MR. VAN NEST:  In other words, if it --

13         THE COURT:  So it was a train wreck for you --

14         MR. VAN NEST:  Huh?

15         THE COURT:  -- but not for the judge.

16         I'm only worried about my own train wrecks.

17         MR. VAN NEST:  That's right.  But, no, he went

18 through it twice too.  I mean from Judge Alsup's

19 standpoint --

20         THE COURT:  No, I understand.

21         MR. VAN NEST:  -- the fact that he did it that way

22 caused him to have two trials.

23         THE COURT:  But the point that I'm making is that

24 he wasn't criticized by the federal circuit for making the

25 determination on protectability and copyrightability after

43

1 the close of the evidence.

2      The federal circuit ruled that he was incorrect on the

3 determination he made.

4           MR. VAN NEST:  That's true.

5           THE COURT:  But he would have been incorrect if he

6 had made it earlier as well.

7           MR. VAN NEST:  That's true, that's true.

8           THE COURT:  Okay.  So that's really the issue.

9      So I am going to -- when I get that briefing -- and I

10 welcome you discussing and describing the scope of the issue

11 and to make it factually based for me so that I understand

12 it.  And I don't mean submitting all of your evidence, but I

13 do need you to describe what the evidence will look like.

14      I really want it more like an opening statement.  I

15 don't want all the evidence submitted with this briefing.  I

16 want to be clear on that.  But you know the contours of your

17 evidence.  You will certainly by then.

18      I just -- but really, I'm not looking for a mountain of

19 paper.

20           MR. VAN NEST:  You'll get a summary.  You want a

21 summary.

22           THE COURT:  I need a summary, yes.

23           MR. VAN NEST:  That's right.  And we'll do that.

24 And we can do that in a precise fashion.

25           THE COURT:  Because then I can decide to have

44

 1  further case management where we can discuss whether in fact

 2  something has to be done pretrial.

 3      So this is -- it's really an early trial brief is what

 4  I see it as.

 5          MS. SULLIVAN:  That's right, your Honor.

 6      Could I just respectfully suggest from Cisco's

 7  perspective a few limitations on this supplemental briefing

 8  along the lines your Honor discusses.

 9          THE COURT:  Yes.

10          MS. SULLIVAN:  That it should be brief only, no

11  declarations --

12          THE COURT:  Yes.

13          MS. SULLIVAN:  -- no submission of evidence, point

14  one.

15      Point two, that it should be simultaneous briefs of

16  similar length, if your Honor thinks 15 pages is suitable.

17          THE COURT:  Well, Mr. Van Nest has suggested 15

18  pages and I think that's probably suitable.  I agree.  I

19  don't actually want evidence.  You can tell me that your

20  expert will testify.  That's fine.  You can lay that out,

21  but you don't have to establish it.  And these briefs aren't

22  going to be used against the other side if you fail to prove

23  something in it.

24      This is a bench brief for me.  This is to help me.  So

25  I want to make that clear.  But, yes, I agree.  15 pages.

1          MS. SULLIVAN:  Simultaneous.

2          THE COURT:  I think simultaneous is fine.  I'd

3 even give each of you the chance to do a five-page response

4 to the other if you'd like.

5          MR. VAN NEST:  That's fine.  We'd like that, your

6 Honor.

7          THE COURT:  Yeah.  I think that's helpful.

8          MS. SULLIVAN:  Simultaneous in both instances.

9          THE COURT:  Exactly, exactly.

10          MS. SULLIVAN:  So nobody gets the last word.

11          THE COURT:  That's right, that's right.

12          MS. SULLIVAN:  Okay.  All right, your Honor.  Of

13 course we're very happy to assist the Court, and the bench

14 brief after the Court has had the opportunity to decide the

15 summary judgment issues --

16          THE COURT:  Yes.  And we'll know the scope of

17 those, which we don't today.

18          MS. SULLIVAN:  -- is appropriate.

19      And if I could just specify a third thing about this

20 brief.

21          THE COURT:  Sure.

22          MS. SULLIVAN:  This briefing will not result in

23 any decision by the Court.

24          THE COURT:  And there would be no decision by the

25 Court.

46

1          MS. SULLIVAN:  This is simply to aid the Court.

2          THE COURT:  The biggest decision would be to have

3 further case management, no substantive decision.

4          MS. SULLIVAN:  Okay.

5          THE COURT:  All right.

6          MS. SULLIVAN:  May I confer for just one moment?

7          THE COURT:  Yes, please.

8     (Pause.)

9          MS. SULLIVAN:  Your Honor, Cisco is agreeable to

10 that.  Thank you.

11         THE COURT:  Thank you very much.

12    Is that acceptable?

13         MR. VAN NEST:  I'm sorry, I was conferring.  I

14 didn't hear what Ms. Sullivan said.

15         MS. SULLIVAN:  I said we were glad that you

16 conceded the case.

17    Mr. Van Nest, we simply said that 15 pages,

18 simultaneous briefs, plus five pages simultaneous reply

19 briefs, and it will not result in any decision by the Court.

20         MR. VAN NEST:  The only thing I would state, your

21 Honor, is why decide today what you're going to decide in

22 the future.  In other words, you don't have to commit to

23 anything but --

24         THE COURT:  Because of the way I've structured

25 this briefing, I'd be unable to decide because there will be

47

1  no evidence submitted.  This is just an early trial brief on

2  one issue.  I want to make that clear.

3       And then I will understand the scope of the issue

4  better.

5       All right.  I think I've covered all of the issues in

6  your --

7            MR. VAN NEST:  I think you have, your Honor.

8            THE COURT:  Well, I greatly appreciate this.  And

9  this case needs this kind of care, and I want to make sure

10 that I have the opportunity to be fully informed of these

11 issues so I can make good rulings for you.  We all end up

12 with trial do-overs, and we hope that it's not based on

13 something that we could have avoided.

14      Just being wrong is just the way it goes for judges, so

15 that's not the issue.  But not being prepared is something

16 we can avoid.

17      All right.  Thank you all.

18           MR. VAN NEST:  Thank you, your Honor.

19           MS. SULLIVAN:  Thank you, your Honor.

20      (Proceedings adjourned at 12:15 p.m.)

21

22

23

24

25

48

CERTIFICATE OF TRANSCRIBER

1

2

3      I certify that the foregoing is a true and correct

4  transcript, to the best of my ability, of the above pages of

5  the official electronic sound recording provided to me by

6  the U.S. District Court, Northern District of California, of

7  the proceedings taken on the date and time previously stated

8  in the above matter.

9      I further certify that I am neither counsel for,

10  related to, nor employed by any of the parties to the action

11  in which this hearing was taken; and, further, that I am not

12  financially nor otherwise interested in the outcome of the

13  action.

14

15

16      Echo Reporting, Inc., Transcriber

17          Wednesday, June 22, 2016

18

19

20

21

22

23

24

25