| | |
|---|---|
| Kathleen Sullivan (SBN 242261) | Steven Cherny *(admitted pro hac vice)* |
| kathleensullivan@quinnemanuel.com | steven.cherny@kirkland.com |
| QUINN EMANUEL URQUHART & SULLIVAN LLP | KIRKLAND & ELLIS LLP |
| 51 Madison Avenue, 22nd Floor | 601 Lexington Avenue |
| New York, NY 10010 | New York, New York 10022 |
| Telephone: (212) 849-7000 | Telephone: (212) 446-4800 |
| Facsimile: (212) 849-7100 | Facsimile: (212) 446-4900 |
| | |
| Sean S. Pak (SBN 219032) | Adam R. Alper (SBN 196834) |
| seanpak@quinnemanuel.com | adam.alper@kirkland.com |
| Amy H. Candido (SBN 237829) | KIRKLAND & ELLIS LLP |
| amycandido@quinnemanuel.com | 555 California Street |
| John M. Neukom (SBN 275887) | San Francisco, California 94104 |
| johnneukom@quinnemanuel.com. | Telephone: (415) 439-1400 |
| QUINN EMANUEL URQUHART & SULLIVAN LLP | Facsimile: (415) 439-1500 |
| 50 California Street, 22nd Floor | |
| San Francisco, CA 94111 | Michael W. De Vries (SBN 211001) |
| Telephone: (415) 875-6600 | michael.devries@kirkland.com |
| Facsimile: (415) 875-6700 | KIRKLAND & ELLIS LLP |
| | 333 South Hope Street |
| Mark Tung (SBN 245782) | Los Angeles, California 90071 |
| marktung@quinnemanuel.com | Telephone: (213) 680-8400 |
| QUINN EMANUEL URQUHART & SULLIVAN LLP | Facsimile: (213) 680-8500 |
| 555 Twin Dolphin Drive, 5th Floor | |
| Redwood Shores, CA 94065 | |
| Telephone: (650) 801-5000 | |
| Facsimile: (650) 801-5100 | |

*Attorneys for Plaintiff Cisco Systems, Inc.*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

| | |
|---|---|
| CISCO SYSTEMS, INC., | CASE NO. 5:14-cv-5344-BLF (PSG) |
| Plaintiff, | **CISCO SYSTEMS, INC.'S OPPOSITION TO MOTION TO STRIKE** |
| vs. | |
| ARISTA NETWORKS, INC., | ▆▆▆▆▆▆▆▆**VERSION OF DOCUMENT SOUGHT TO BE SEALED** |
| Defendant. | Date:    July 27, 2016<br>Time:    2:00 p.m.<br>Dept.:   Courtroom 7<br>Judge:   Nathanael Cousins |

**TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ................................................................................................................1

II.    FACTUAL BACKGROUND ..............................................................................................1

        A.    Cisco's Claim for "HelpDesc" Copyright Infringement ..............................................1

        B.    Cisco's Claim for "Lost Profits" Damages .................................................................4

        C.    Arista's Discovery Supplementations .........................................................................5

III.    LEGAL STANDARD ..........................................................................................................6

IV.    ARGUMENT ......................................................................................................................6

        A.    Cisco's Supplemental Response on "HelpDesc" Was Timely...................................8

        B.    Cisco's Supplemental Response on "Lost Profits" Was Timely................................8

V.    CONCLUSION .................................................................................................................10

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Apple, Inc. v. Samsung Elecs. Co.*,
    No. 11-CV-01846-LHK, 2012 WL 3155574 (N.D. Cal. Aug. 2, 2012) ......................................7

*Deutsche Bank Nat'l Trust Co. v. Seven Hills Master Cmty. Ass'n*,
    No. 15cv-1373, 2016 WL 1639885 (D. Nev. Apr. 25, 2016) ......................................................7

*Finjan, Inc. v. Proofpoint, Inc.*,
    No. 3:13-cv-05808-HSG (HRL), 2015 WL 9900617 (N.D. Cal. Oct. 26, 2015).........................7

*Jackson v. United Artists Theatre Circuit, Inc.*,
    278 F.R.D. 586 (D. Nev. 2011) ...................................................................................................6

*Jones v. Travelers Cas. Ins. Co. of Am.*,
    304 F.R.D. 677 (N.D. Cal. 2015) ................................................................................................7

*Lanard Toys, Ltd. v. Novelty, Inc.*,
    375 Fed. Appx. 705 (9th Cir. 2010) ........................................................................................6, 7

*Nei Contr. & Eng'g v. Hanson Aggregates, Inc.*,
    2016 U.S. Dist. LEXIS 60624 (S.D. Cal. May 5, 2016) .............................................................7

*Ritchie Risk-Linked Strategies Trading (Ireland), Ltd. v. Coventry First LLC*,
    280 F.R.D. 147 (S.D.N.Y. 2012).................................................................................................7

*Specht v. Google Inc.*,
    758 F. Supp. 2d 570 (N.D. Ill. 2010), *aff'd*, 747 F.3d 929 (7th Cir. 2014) .................................7

*Vieste, LLC v. Hill Redwood Dev.*,
    No. 09-cv-04024-JSW (DMR), 2011 WL 2181200 (N.D. Cal. June 3, 2011) ............................8

*Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*,
    259 F.3d 1101 (9th Cir. 2001).....................................................................................................6

**Statutes**

17 U.S.C. § 504 ..................................................................................................................................9

Federal Rule of Civil Procedure 26(e) ..............................................................................................1

Fed. R. Civ. P. 26(e)(1)(A)................................................................................................................6

Fed. R. Civ. P. 37(c)(1) .....................................................................................................................6

**Other Authorities**

6-26 Moore's Federal Practice - Civil § 26.131................................................................................6

## I. INTRODUCTION

Plaintiff Cisco Systems, Inc. ("Cisco") respectfully urges this Court to deny the Motion to Strike (Dkt. 305) filed by Defendant Arista Networks, Inc. ("Arista"). Federal Rule of Civil Procedure 26(e) requires that a party supplement its discovery responses if the party learns that a response is "incomplete or incorrect." Contrary to Arista's arguments, each of Cisco's supplemental responses in question was timely and proper under that rule, and provided information that could not have been provided sooner in light of Arista's own discovery delays.

*First*, Cisco's May 27, 2016 supplemental response to Interrogatory 2 concerning its "HelpDesc" allegations was timely and proper. That response, providing precise source code citations to the "HelpDesc" command descriptions that Arista unlawfully copied, was not possible before completion of a laborious review of Arista's source code as well as a review of Arista switches that Arista made available to Cisco for the first time only on May 18, 2016. *Second*, Cisco's supplemental response to Interrogatory 15 regarding its claim for lost profits was similarly timely and proper. That response, providing the names of particular customers as to whom Arista caused Cisco lost sales, depended upon Cisco's access to Arista financial information that Arista produced only less than two weeks prior. Arista's motion should be denied.

## II. FACTUAL BACKGROUND

### A. Cisco's Claim for "HelpDesc" Copyright Infringement

Cisco has given Arista detailed notice of Arista's extensive and blatant copyright infringement since the beginning of this case. Starting in December 2014, Cisco put Arista on notice of its copyright allegations through a very detailed complaint. *See* Dkt. 1 at ¶¶ 9, 24-30, 40-65 (alleging copyright infringement by citing hundreds of instances of Arista copying of Cisco user manuals and guides—including typographical errors made by Cisco in its original works and reproduced in Arista's copy-cat works—command expressions, command modes and more); *see also id.* at Exhibits 1 and 2 (providing comparative charts showing Arista's copying of Cisco materials). Cisco was also clear from the start that the scope of its copyright claims covered not just the multi-word command

expressions, but many other instances of verbatim copying by Arista software and associated documentation. *See, e.g.*, *id.* at ¶ 59.

Arista's copying is well-documented in the record. Cisco learned during this case that Arista's CTO was touting the fact that Arista had copied the user interface for Cisco's switches "slavishly," explaining that such copying is designed to make an Arista switch operate just like a Cisco switch from the perspective of a user. *See* Packetpushers, "Show 45 – Arista – EOS Network Software Architecture – WebinarEx" audio file, available at https://packetpushers.net/podcast/podcasts/show-45-arista-eos-software-architecture/ at 55:44-55:45. Arista has tried to "[p]rovide familiar interfaces to ease adoption" including a "standard CLI that … retains familiar management commands" such that "80% [of Arista customers] tell [Arista] they appreciate the way they can leverage their deep [Cisco] IOS experience, as they can easily upgrade an aging [Cisco] Catalyst infrastructure to Arista." *See* Ex A to Holmes Decl.

During discovery, Arista demanded that Cisco explain Arista's own copying conduct in detail, and Cisco has done so. In April 2015, Arista asked Cisco to identify "every similarity that Cisco contends is a basis for its claim of copyright infringement." *See* Dkt. 306-1 at 4 (interrogatory No. 2). Cisco responded in May 2015 with extensive details. *See* Dkt. 306-2 at pp. 8-10 and Exhibit A thereto (a 221-page table showing overlap between Cisco versus Arista materials). And, as fact discovery proceeded and Cisco has been able to get information from Arista regarding the materials that Arista copied, Cisco has supplemented that interrogatory response numerous times—as provided under the Federal Rules of Civil Procedure.[1]

---

[1] *See* Holmes Decl., Ex. B (Exhibit B to Cisco's supplemented response to Arista's Interrogatory 2, a 102-page chart showing overlap between Cisco's versus Arista's command expressions and identifying the Cisco copyrighted work and the Arista infringing work in which the command expression appears); Holmes Decl., Ex. C (Exhibit C to Cisco's supplemented response to Arista's Interrogatory 2, a chart showing the same for copied command modes); Holmes Decl., Ex. D (Exhibit D to Cisco's supplemented response to Arista's Interrogatory 2, showing an exemplary instance of Arista copying Cisco's command hierarchies); Holmes Decl., Ex. E (Exhibit E to Cisco's supplemented response to Arista's interrogatory No. 2, a 27-page chart showing Arista's copying of Cisco's command responses).

1       In January 2016, Cisco disclosed to Arista that it had learned during fact discovery that
2  Arista's verbatim copying included "the interactive 'help' screens from Cisco's copyrighted works."
3  Dkt. 306-6 at pp. 17-18. Cisco provided an example of a specific instance of that copying by Arista,
4  and provided a screen shot. *Id.* Cisco likewise explained that it had learned that:

> Arista's copying of the help screen displays extends to the description of various command expressions. In both Cisco's CLI and Arista's CLI, users can type "?" to generate context sensitive help, including a list of available commands and descriptions thereof. Arista has copied numerous examples of Cisco's original command expression descriptions (e.g., explaining that the "enable" command will "Turn on privileged commands").

*Id.* at p. 18. When Cisco made this supplemental disclosure, it noted that "Cisco's discovery regarding these screen displays is ongoing, and Cisco reserves the right to supplement its response in light of information learned subsequently from **Arista's source code** and/or **operable Arista devices**, **which Cisco has requested but Arista has not yet produced**." *Id.* (emphasis added).

Cisco thereafter continued to review Arista's source code to provide citation to the infringing material. But Arista did not produce operable versions of its accused switches for Cisco's counsel and experts to test until May 18, 2016, just 9 days before the close of fact discovery on liability issues for this case. Holmes Dec. at ¶3. The process of searching for, identifying, and then confirming (via Arista's source code and Arista's late-produced operable devices) instances of "HelpDesc" content was a labor-intensive task that was not finished until May 27, 2016. *Id.* at ¶4. Once that process was complete, before the close of discovery on liability issues, Cisco promptly served the further supplemental response to Arista's Interrogatory 2 at issue here. That response included [REDACTED]

*See* Dkt. 306-7 at p. 16; *see also* Dkt. 306-8 (Exhibit G to that supplemental response, [REDACTED]); Dkt. 306-9 (Exhibit H to that supplemented response, [REDACTED]). Cisco thus supplemented Arista within nine days of Arista making operable versions of its products available to

1  Cisco, seven days before opening expert reports were due for copyright infringement issues, and three
2  weeks before rebuttal expert reports were due. (Dkt. 253).

B.  **Cisco's Claim for "Lost Profits" Damages**

Cisco first disclosed that it would seek lost-profits damages at the start of this lawsuit in December 2014, well before fact discovery even began. *See* Dkt. 1 at pp. 22-24 (praying for "all damages suffered by Cisco" including "lost profits suffered by Cisco as a result of Arista's [patent] infringement"). On March 26, 2015, Cisco served Arista with requests for documents and an interrogatory requesting documents and information regarding sales made by Arista of the accused products. *See* Holmes Decl., Exhs. F and G.

In response, Arista stonewalled. On April 30, 2015, Arista served objections to Cisco's requests for documents sufficient to show sales data for the accused products; did not produce any such documents; and did not even agree to produce such documents (or even a sub-set of the requested documents) in the future. Instead, Arista offered to "meet and confer" regarding Cisco's requests. *See* Holmes Decl., Ex. H. at pp. 20-22 (for Cisco RFP Nos. 26-29). Likewise, Arista refused to substantively respond to the interrogatory, stating that Arista does not keep such information in the ordinary course of business, and offering to supplement the response at some unspecified point in the future with the production of unspecified documents. *See* Holmes Decl., Ex. I at pp. 7-8.

Notwithstanding Arista's refusals to provide Cisco with any responsive information about the sales of Arista's accused products, Arista asked Cisco to explain its lost-profits damages theories. *See* Dkt. 306-1 at Rog 1 and Rog 15 ("If You seek to recover lost profits by way of any claim in this matter, identify with specificity all bases . . . "). Cisco responded timely to that interrogatory in May 2015 and provided what information it could, in light of Arista's lack of disclosure of any information regarding its customers or sales of the accused products. *See* 306-2 at p. 6 (identifying supporting evidence for the position that "Arista uses its infringing products to take sales (and profits) from Cisco"); *id.* at 7 (same for the position that "Cisco is entitled to actual damages (in the form of, among other things, Cisco's lost profits and any additional profits made by Arista)"); *id.* (noting that "Arista has not yet produced detailed sales records"); *id.* at 8 ("Cisco is entitled to its actual damages (e.g.,

lost profits) . . . Arista has not yet produced detailed sales records"); *id.* at 27 (for the interrogatory specific to lost profits, responding that "Cisco further objects to this interrogatory to the extent that it calls for information that is in Arista's control, but which Arista has not yet produced.").

In July 2015, Cisco again supplemented its lost profits interrogatory response, even though Arista still had failed to produce any documents or information quantifying its sales to particular customers. Cisco explained its bases for seeking lost profits in further detail, cited to Bates-numbered documents and publicly-available sources of evidence, cited to statements from Arista executives, and identified categories of relevant witnesses. Holmes Decl., Ex. I at pp. 6-9. Cisco noted that "Arista [still] has not produced sufficient information regarding its sales or customers for Cisco to identify specific sales lost to Arista, or to quantify Cisco's resulting lost profits more precisely." *Id.* at p. 8.

On May 25, 2016, just 16 days before the close of fact discovery for damages-related issues, Arista finally provided Cisco with confidential information regarding its customers and its sales of accused products. On June 7, 2016—just 13 days after obtaining Arista's confidential materials—Cisco promptly supplemented its response to Arista's Interrogatory No. 15, identifying specific customers to whom Arista had made sales that might support lost-profits damages. *See* Dkt. 306-7 at pp. 9-10; *see also* Holmes Decl., Exhs J, K. This supplementation thus was completed before the close of fact discovery on damages-related issues; three weeks before the deadline for opening expert reports on damages; and over a month before the deadline for rebuttal expert reports on damages. *See* Docket No. 277 at 1-2.

C. **Arista's Discovery Supplementations**

Arista itself served numerous supplemental interrogatory responses at the very close of discovery. At 9:51 pm on May 27, 2016, it served supplemental responses to nine of Cisco's interrogatories (i) asserting that 25 other companies use Cisco's command expressions, (ii) claiming that Cisco's copyright registrations for more than 200 commands were made more than five years after the first publication of the work, (iii) identifying more than 1,500 documents that it claims support its defenses. Holmes Decl. at Ex. L. In the last two days of liability fact discovery, Arista produced more than 229,000 pages from more than 22,000 documents, and between the close of fact

discovery for liability and fact discovery for damages, Arista produced an additional 7,500 pages from nearly 500 different documents—with all these last-minute documents including important financial data. Holmes Decl. ¶5. Since damages fact discovery closed on June 10, 2016, Arista has produced more than 23,000 pages from 900 documents, including Arista internal documents that relate to Arista's command expressions. *Id.*

### III. LEGAL STANDARD

Under the Federal Rules of Civil Procedure, a party has an obligation to supplement its discovery responses "in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." Fed. R. Civ. P. 26(e)(1)(A). "Supplementation should be made 'in a timely manner, or as ordered by the court, during the discovery period with special promptness as the trial date approaches." 6-26 Moore's Federal Practice - Civil § 26.131. Courts are most likely to exclude evidence when a party first discloses the material at issue "shortly before trial or substantially after discovery has closed." *Jackson v. United Artists Theatre Circuit, Inc.*, 278 F.R.D. 586, 594 (D. Nev. 2011).

If the Court determines that a party's supplementation of discovery responses was not timely, "the party is not allowed to use that information" unless the party can show that the delayed response was failure was either "harmless" or "substantially justified." Fed. R. Civ. P. 37(c)(1); *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001). Among the factors that a Court may consider in determining whether untimely supplementation is justified or harmless are: (1) prejudice or surprise to the party against whom the evidence is offered; (2) the ability of that party to cure the prejudice; (3) the likelihood of disruption of the trial; and (4) bad faith or willfulness involved in not timely disclosing the evidence." *Lanard Toys, Ltd. v. Novelty, Inc.*, 375 Fed. Appx. 705, 713 (9th Cir. 2010).

### IV. ARGUMENT

Cisco's supplemental responses to Arista's interrogatories were made within the fact discovery period and were timely. Supplementation of discovery is often found to be appropriate even when

1  made after the relevant discovery cut-off deadline.  *See Lanard Toys, Ltd. v. Novelty, Inc.*, 375 Fed. Appx. 705, 713 (9th Cir. Cal. 2010) (expert report served six weeks after the court ordered deadline for such reports was not excluded because there was no prejudice to the opposing party); *Nei Contr. & Eng'g v. Hanson Aggregates, Inc.*, 2016 U.S. Dist. LEXIS 60624 (S.D. Cal. May 5, 2016) (documents produced after discovery deadline were not excluded because "locating this evidence was burdensome and time consuming," among other factors).  The cases that Arista cites to on this point are inapposite.  For many of the cases that Arista relies on, the excluded discovery was not produced until after the court-ordered deadline for discovery, which is not the case here.  *See Jones v. Travelers Cas. Ins. Co. of Am.*, 304 F.R.D. 677, 678–79 (N.D. Cal. 2015 (relevant documents produced three weeks after the close of discovery); *Ritchie Risk-Linked Strategies Trading (Ireland), Ltd. v. Coventry First LLC*, 280 F.R.D. 147 (S.D.N.Y. 2012) (claimed damages were not disclosed until after the close of discovery); *Apple, Inc. v. Samsung Elecs. Co.*, No. 11-CV-01846-LHK, 2012 WL 3155574, at *4 (N.D. Cal. Aug. 2, 2012)  (supplemental interrogatory responses served after the close of discovery); *Specht v. Google Inc.*, 758 F. Supp. 2d 570, 578 (N.D. Ill. 2010), *aff'd,* 747 F.3d 929 (7th Cir. 2014) (plaintiff served supplemental interrogatory responses four months after the close of written discovery, disregarded the procedure by which the court ordered it to  present the disputed discovery, and the plaintiff provided "no legitimate reason why they could not have disclosed" the information earlier).

    The other cases on which Arista relies are easily distinguished from the case at bar.  In *Deutsche Bank Nat'l Trust Co. v. Seven Hills Master Cmty. Ass'n,* the defendant produced news articles on the last day of discovery that had been available to it throughout the entire discovery period.  No. 15cv-1373, 2016 WL 1639885, at *2–3 (D. Nev. Apr. 25, 2016).  That is not the case here, where Cisco relied on Arista's delayed productions of its own documents and switches in order to supplement its interrogatories.  Likewise, in *Finjan, Inc. v. Proofpoint, Inc.,* the Court struck the disclosure of two witnesses made three days before the close of discovery, noting that the defendants had known about one witness for a year and one for at least "several months" and that plaintiffs did not have time to depose the witnesses before the close of discovery.  No. 3:13-cv-05808-HSG (HRL), 2015 WL 9900617, at *1 (N.D. Cal. Oct. 26, 2015); *Vieste, LLC v. Hill Redwood Dev.*, No. 09-cv-

04024-JSW (DMR), 2011 WL 2181200, at *2 (N.D. Cal. June 3, 2011) (similar).  The case here is a far cry from any of those Arista cites.

### A. Cisco's Supplemental Response on "HelpDesc" Was Timely

As reviewed above, Cisco disclosed to Arista its findings that Arista had infringed its copyrighted "HelpDesc" materials, and exemplary instances of that copying, at least as early as January 2016—five months before the close of fact discovery.  Cisco further supplemented its response to Interrogatory 2 with materials showing further instances of "HelpDesc" copying as soon as Cisco's experts concluded their review and analysis of Arista source code and shortly after Arista made operable versions of its devices available to Cisco.  That supplementation was also timely under the Court-ordered schedule for this case.  Moreover, Cisco's supplementation was consistent with Arista's practices of supplementing as fact discovery was winding down.

### B. Cisco's Supplemental Response on "Lost Profits" Was Timely

On June 7, 2016, Cisco in a supplemental response to Interrogatory 15 identified specific customers to whom Arista had made sales and for which Cisco reserved the right to demand lost-profits damages.  *See* Holmes Decl. Ex. K.  Arista concedes, as it must, that that response was served before the deadline for fact discovery on damages-related issues in the case.  *See* Dkt. 277.  More importantly, Cisco served that customer-specific response just 13 days after Arista disclosed on May 25, 2016—for the first time—its sales data, including sales on a per-customer basis.  Cisco's disclosures thus were in direct response to (and could not have been formulated without) confidential Arista information that Cisco starting requesting in March 2015 but that Arista waited 14 months to produce in May 2016.

Arista nonetheless argues (Mot. 9-10) that Cisco could and should have identified lost sales to specific customers earlier in the case based exclusively on Cisco's internal documents, without having information about Arista's sales of accused products to particular customers.  That argument is meritless.  In order to show that it is entitled to recover lost profits as a measure of "the actual damages suffered by him or her as a result of the infringement" under 17 U.S.C. § 504, Cisco is required to show that Arista *actually* made the sale in question to a particular customer.  In this case,

neither Cisco nor its counsel knew what sales Arista had actually made (to what customers, in what amounts, of what products) until Arista produced that information to Cisco's counsel. Where Arista delayed more than a year before producing its financial documents, and Cisco supplemented its responses less than two weeks later and still within the discovery period set out by the Court, Cisco's supplemental response cannot be found untimely.[2]

### C. Arista Suffered No Prejudice From Cisco's Supplemental Interrogatory Answers

Even if Cisco's supplemented interrogatory answers on lost profits and "HelpDesc" copying were somehow untimely (they were not) the motion to strike Cisco's supplemental interrogatory answers should still be denied. *First*, Arista was not and could not have been surprised by Cisco's "HelpDesc" allegations or lost-profits damages theory. Cisco disclosed "HelpDesc" copying by Arista in January 2016, providing an example of that copying at that time. Cisco disclosed its lost profits theories and supporting evidence starting with the complaint filed in December 2014 and supplemented with supporting evidence throughout fact discovery in 2015 and 2016. And, of course, Arista had knowledge of its customer list and which of its customers were former "Cisco shops" throughout the case.

*Second*, the supplemental interrogatory responses caused no prejudice to Arista. Cisco disclosed its theory and supporting evidence for the "HelpDesc" allegations in comprehensive detail before opening expert reports on copyright infringement were due, before rebuttal expert reports on copyright infringement were due, and before expert discovery had even started. Arista can claim no prejudice from the fact that Cisco later, through laborious source-code review and testing of Arista's late-produced devices, supplemented by adding further specific instances of Arista's HelpDesc

---

[2] Arista argues (Mot. 9-10) that Cisco somehow could have disclosed a per-customer theory of lost profits earlier in the case—based exclusively on Cisco's internal documentation—because a Cisco employee who was designated as a corporate representative to cover financial and damages topics testified that he assisted in the preparation of Cisco's supplemental interrogatory response by consulting only Cisco documents. But it should be no surprise that a Cisco employee—not counsel of record in this case, and not permitted to view Arista's confidential sales documents under the Protective Order for this case—did not consult any Arista materials when he assisted Cisco counsel in preparing a supplemental interrogatory answer. The only thing that shows is that Cisco's counsel abided the Protective Order and did not show Arista's confidential documents to a Cisco employee.

copying to the responses served in fact discovery before expert discovery began. Similarly, Cisco disclosed its lost-profits "customer list" before Arista deposed Cisco's corporate representative on the topic, before either side's opening expert reports on damages were due, before rebuttal expert reports on damages were due, and before expert discovery had even started. *See* Dkt. 253. Thus Arista has had ample opportunity to respond to the specification of its own potentially alleged customer "wins" against Cisco.

Third, Arista was not prejudiced by the supplemental response to the lost-profits interrogatory because both parties produced voluminous communications and documents regarding competition between the parties and sales Cisco may have lost to Arista, which are fundamental to all of Cisco's claims to relief—lost profits, infringer's profits, and injunction to remedy irreparable harm. Arista took extensive discovery from Cisco and third-party witnesses on Cisco's lost sales.[3]

## V.     CONCLUSION

Arista's Motion to Strike should be denied in its entirety.

Dated: June 27, 2016

Respectfully submitted,

/s/ Amy H. Candido
_____

Kathleen Sullivan (SBN 242261)
kathleensullivan@quinnemanuel.com
QUINN EMANUEL URQUHART &
SULLIVAN LLP
51 Madison Avenue, 22nd Floor
New York, NY 10010
Telephone: (212) 849-7000
Facsimile: (212) 849-7100

Sean S. Pak (SBN 219032)

---

[3] *See*, e.g., Holmes Dec., Ex. M, Jiandani Dep. at 61:18-65:24 (                    ), 196:10-197:4 (regarding                                                          ), 215:23-219:24 (regarding                    ), 242:20-243:16 (regarding        ), 262:11-265:1 (regarding         s); Holmes Dec., Ex. N, Chambers Dep. at 110:2-112:18 (regarding                    ), 113:22-114:20 (regarding          ); Holmes Dec. Ex. P, Malik Dep. at 19:17-23 (regarding                                                                      ), 174:1-15 (regarding                                                          ), 190:6-22 (regarding                    ); Holmes Dec., Ex. O, Birnbaum Dep. at 14:8-15:18, 38:25-41:2 (regarding                    ).

|   |   |
|---|---|
| 1 | seanpak@quinnemanuel.com |
|   | Amy H. Candido (SBN 237829) |
| 2 | amycandido@quinnemanuel.com |
|   | John M. Neukom (SBN 275887) |
| 3 | johnneukom@quinnemanuel.com. |
|   | QUINN EMANUEL URQUHART & |
| 4 | SULLIVAN LLP |
|   | 50 California Street, 22nd Floor |
| 5 | San Francisco, CA 94111 |
|   | Telephone: (415) 875-6600 |
| 6 | Facsimile: (415) 875-6700 |

Mark Tung (SBN 245782)
marktung@quinnemanuel.com
QUINN EMANUEL URQUHART &
SULLIVAN LLP
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, CA 94065
Telephone: (650) 801-5000
Facsimile: (650) 801-5100

Steven Cherny *admitted pro hac vice)*
steven.cherny@kirkland.com
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900

Adam R. Alper (SBN 196834)
adam.alper@kirkland.com
KIRKLAND & ELLIS LLP
555 California Street
San Francisco, California 94104
Telephone: (415) 439-1400
Facsimile: (415) 439-1500

Michael W. De Vries (SBN 211001)
michael.devries@kirkland.com
KIRKLAND & ELLIS LLP
333 South Hope Street
Los Angeles, California 90071
Telephone: (213) 680-8400
Facsimile: (213) 680-8500

*Attorneys for Plaintiff Cisco Systems, Inc.*