KEKER & VAN NEST LLP
ROBERT A. VAN NEST - # 84065
BRIAN L. FERRALL - # 160847
DAVID SILBERT - # 173128
MICHAEL S. KWUN - #198945
ASHOK RAMANI - # 200020
633 Battery Street
San Francisco, CA 94111-1809
Telephone:    (415) 391-5400
Email:  rvannest@kvn.com;
bferrall@kvn.com; dsilbert@kvn.com;
mkwun@kvn.com, aramani@kvn.com

SUSAN CREIGHTON, SBN 135528
SCOTT A. SHER, SBN 190053
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
1700 K Street NW, Fifth Floor
Washington, D.C., 20006-3817
Telephone:  (202) 973-8800
Email:  screighton@wsgr.com;
ssher@wsgr.com

JONATHAN M. JACOBSON, NY SBN 1350495
CHUL PAK (*pro hac vice*)
DAVID H. REICHENBERG (*pro hac vice*)
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
1301 Avenue Of The Americas, 40th Floor
New York, NY 10019-6022
Telephone:  (212) 999-5800
Email:  jjacobson@wsgr.com; cpak@wsgr.com;
dreichenberg@wsgr.com

Attorneys for Defendant ARISTA NETWORKS, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| CISCO SYSTEMS, INC.,<br><br>Plaintiff,<br><br>v.<br><br>ARISTA NETWORKS, INC.,<br><br>Defendant. | Case No. 5:14-cv-05344-BLF (NC)<br><br>**DEFENDANT ARISTA NETWORKS, INC.'S NOTICE OF MOTION AND MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>Date:      August 4, 2016<br>Time:     9:00 a.m.<br>Dept:     Courtroom 3 - 5th Floor<br>Judge:    Hon. Beth Labson Freeman<br><br>Date Filed: December 5, 2014<br><br>Trial Date: November 21, 2016 |

1070872

## NOTICE OF MOTION AND STATEMENT OF RELIEF SOUGHT

PLEASE TAKE NOTICE, that on August 4, 2016, at 9:00 a.m., or at such other time as the Court may direct, before the Honorable Beth Labson Freeman, United States District Court, 280 South First Street, San Jose, California 95113, Defendant Arista Networks, Inc. ("Arista") will, and hereby does, move the Court for entry of summary judgment on Count II and partial summary judgment on Count I of the Second Amended Complaint filed by Plaintiff Cisco Systems, Inc. ("Cisco").

This Motion is based on this Notice of Motion and Motion, the Memorandum of Points and Authorities below, the Declaration of Eduardo Santacana ("Santacana Decl.") being filed herewith, and such other and further papers, evidence and argument as may be submitted to the Court in connection with the hearing on this motion.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION

Summary adjudication should be granted to Arista on the bulk of Cisco's claims in this case because: (1) Cisco asserts copying of approximately two hundred command line interface ("CLI") commands for which Cisco is not entitled to a presumption of originality, and cannot meet its burden of proving originality; (2) Cisco asserts copying of command "hierarchies," modes, and prompts that are not copyrightable; and (3) Arista does not infringe the '526 patent, the sole remaining patent in this case, as a matter of law.

Approximately two hundred of the asserted commands are not entitled to a presumption of originality due to Cisco's late copyright registrations, and with discovery now closed, Cisco has *no* evidence to carry its burden of proving their originality.  In addition, both the asserted CLI command hierarchies, and the asserted modes and prompts, are uncopyrightable systems or methods of operation under 17 U.S.C. § 102(b).[1]  They cannot support a copyright claim as a

---

[1] The CLI components at issue in this motion are the CLI commands listed in Exhibit 15, and all of the command hierarchies, modes, and prompts that Cisco asserts.  This motion does not address Cisco's allegations directed to the remaining CLI commands, to command responses, or to portions of documentation that *explain* the CLI (although it does encompass portions of documentation that simply recite or show the CLI components at issue).  All citations to "Exhibit __" or "Ex. __" refer to the exhibits to the Declaration of Eduardo E. Santacana filed herewith.

matter of Ninth Circuit law.  Finally, under the Court's June 15 Claim Construction Order, Arista does not infringe the '526 patent as a matter of law because—as Cisco's own expert admits—Arista's accused parser does not include a command parse tree where each element specifies at least one "command action value" for each "generic command component."

## II.    BACKGROUND

Both Cisco and Arista make and sell high-speed Ethernet switches, which connect multiple devices within a local area network (LAN) and can direct ("switch") data traffic on the network.[2] Ex. 1 (Chevalier Rebuttal Rpt.) ¶¶ 21, 23, 27, 31.  Cisco is the dominant vendor of network switches, as well as network routers, and sells products and services across multiple networking and communications markets to a wide range of businesses and public-sector entities. *Id.* ¶¶ 19, 31.  Arista, founded in 2004, sells high-speed Ethernet switches designed for cloud data centers, and primarily serves customers operating public or private cloud networks, including large-scale Internet companies, financial services organizations, and private enterprises.  *Id.* ¶¶ 20–21.  Cisco brought this action asserting copyright and patent infringement.

### A.    Cisco claims that Arista has infringed its copyrights by creating a CLI that accepts commands and uses "hierarchies," modes, and prompts similar to ones in Cisco's CLI.

As part of the operating systems that power their switches, both Cisco and Arista provide a "command line interface" or "CLI" as one method customers can use to change or check device settings, and otherwise configure and operate their networking equipment.  Ex. 2 (Almeroth Rpt.) ¶¶ 69, 72.  A CLI is a basic textual interface in which users (network administrators) can type in commands at a prompt.  *Id.* ¶ 50.  Other operating systems employed CLIs long before Cisco IOS and Arista EOS did.  *Id.* ¶¶ 232, 236.

In its interrogatory responses, Cisco asserts that Arista copied approximately 500 multi-word commands accepted by various of Cisco's operating systems, as well as command "hierarchies," and command "modes and prompts." Ex. 3 (Cisco's Response to Interrogatory No.

---

[2] All cited statements by Cisco's proposed expert witnesses are "undisputed" solely for purposes of this motion, and are offered solely to show the absence—by Cisco's own account—of any material disputes as to the facts material to this motion.  *See* Fed. R. Civ. P. 56.  Arista does not waive, and expressly reserves, its rights to challenge the qualifications, opinions, and testimony of all Cisco expert witnesses for all other purposes.

2).  Cisco does not allege that Arista copied any of Cisco's source code related to these CLI elements.  In fact, Cisco has refused to identify where any of its asserted CLI elements are found in Cisco source code.  *See* June 16, 2016 Cisco Opp. to Mtn. to Compel (ECF No. 312), at 2; Ex. 2 (Almeroth Rpt.) ¶ 134 (listing types of copying covered; not listing source code).  Rather than claiming that the CLI components asserted here appear literally in Cisco's or Arista's source code, Cisco claims that they are protectable as "non-literal" elements of Cisco's registered works.  *See, e.g.,* Cisco's Opp. to Arista's Mot. to Compel, ECF No. 312, at 2.

The CLI commands at issue allow network administrators to configure and operate their network devices by adjusting settings or checking the status of a device.  Ex. 2 (Almeroth Rpt.) ¶ 50; Ex. 1 (Chevalier Rebuttal Rpt.) ¶ 65.  Each of the asserted CLI commands consists of a short series of words that users (or a computer script) can enter to change and check various settings on network devices.  Ex. 2 (Almeroth Rpt.) ¶ 50; Ex. 4 (Ex. F to Rog Resp. 16).  For example, two of the asserted CLI commands are "clear counters" and "show interfaces."  Ex. 4 (Ex. F to Rog Resp. 16) at 4, 26; SAC (ECF No. 64), Ex. 1.  Single word commands like "show" and "clear" are not asserted here, and even Cisco concedes they "may not be" copyrightable.  SAC (ECF No. 64) ¶ 7; Ex. 6 (Depo. Ex. 1012 (Chandler blog post)) at 2; Ex. 7 (Almeroth Rebuttal Rpt.) ¶ 114.  Cisco also admits that several command words it asserts as part of multi-word commands are not original to Cisco, including at least the terms "show," "clear," "help," "ip," "no," "arp," and "bgp."  Ex. 2 (Almeroth Rpt.) ¶ 261 (these command terms "existed before Cisco").

Cisco asserts that its organization of CLI commands into "hierarchies" is independently copyrightable.  Cisco's claimed command "hierarchies" consist of sets of multi-word commands grouped by their shared command words.  *Id.* ¶¶ 55–56; Ex. 8 (Cisco Response to Arista Interrogatory No. 16, Ex. D26).  Specifically, all commands in a "hierarchy," as Cisco defines it, share the same first word; all commands in a sub-hierarchy share the same first two words; and so on.  Ex. 2 (Almeroth Rpt.) ¶¶ 55–56.  Cisco has not identified any source code associated with its command hierarchies, asserting only that the hierarchies are "contained" in the code.  *See* Ex. 3 (Cisco Response to Rog. No. 2), at 13.  Likewise, Cisco has identified no defining features of or expression in the asserted hierarchies, other than the idea of organizing commands by shared

1    words.  *See* Ex. 2 (Almeroth Rpt.) ¶¶ 186–93 (describing asserted similarities of hierarchies); Ex.

2    3 (Cisco Response to Interrogatory No. 2), at 12.

3          In addition, Cisco also contends that it is entitled to copyright protection for its CLI

4    command modes and prompts.  Like many CLIs, both Cisco's and Arista's CLIs make different

5    sets of commands available to users in different command "modes."  Ex. 2 (Almeroth Rpt.) ¶¶

6    58–60.  Each "mode" has an associated textual "prompt" that appears on the command line when

7    that mode is enabled.  *Id.* ¶ 58.  Different command prompts indicate that different sets of

8    commands are available to a user.  Ex. 2 (Almeroth Rpt.) ¶¶ 58–60, 62.  Each asserted "prompt"

9    here consists of one to three words, with parentheses containing anything exceeding one word,

10    and a final symbol, either ">" or "#".  *Id.* ¶ 62; Ex. 9 (Almeroth Rpt. Ex. 4).  For example,

11    Cisco's prompt for the mode it calls "User EXEC" is "router>", while Arista calls its similar

12    functional mode "EXEC" and uses the prompt "switch>".  *Id.*; *see also* Ex. 10 (Lougheed (4-4-

13    2016) Depo. Tr.) at 380:3–382:5.  In actual operation, the user-assigned name of the router or

14    switch to which the user is logged in replaces the words "router" and "switch" in the prompt.  *See*

15    Ex. 10 (Lougheed (4-4-2016) Depo. Tr.) at 369:18–20, 386:21–387:7.  Other CLIs predating

16    Cisco's also used ">" and "#" to denote different command prompts.  Ex. 11 (Lougheed (11-20-

17    15) Depo. Tr.) at 121:7–15 (">" used by MS-DOS); Ex. 10 (Lougheed (4-4-16) Depo. Tr.) at

18    369:2–20 ("#" used by Stanford), 386:21–387:7 (">" used by Stanford).  Cisco has refused in

19    discovery to identify any expression of the asserted modes or prompts in source code.

20        **B.**    **The '526 patent claims a command parse tree whose elements specify at least**
              **one "command action value" for each "generic command component."**

21

22          The '526 patent is directed to providing a set of "generic commands" that a user can use to

23    control network administration and diagnostic tools.  Ex. 14 ('526 patent) at Abstract.  Cisco

24    accuses Arista of infringing claims 1, 6, 10, 11, 13–16, 19, and 23.  All of these claims require "a

25    command parse tree having elements where *each* element *specifie[s] a generic command*

26    *component and at least one corresponding command action value.*"  Ex. 12 (Cisco IPR Resp.) at

27    8–9 (emphasis in original), 23–24.  The Court has construed the "command parse tree" limitation

28    that appears in every asserted claim to require a tree in which "each element specifies at least one

    command action value for each generic command component."  Cl. Constr. Order (ECF No. 310)

1   at 15:10–21.

2       A "generic command component" is a word in an input string—for example, the word

3   "show" in the command "show openflow flows." Ex. 13 (Jeffay Depo. Tr.) at 90:5–18.  A

4   "command action value" is "a value that identifies a prescribed command."  Cl. Constr. Order

5   (ECF No. 310) at 15:8–9.  According to Cisco, the distinguishing feature of the '526 patent from

6   the prior art is its "unique" command parse tree in which each element of the parse tree specifies

7   at least one "command action value" for each "generic command component."   Ex. 12 (Cisco

8   IPR Resp.) at 8–9.  As Cisco has explained, by specifying a "command action value" for every

9   word in the generic command—instead of only for complete, valid commands—the claimed

10  invention gains the ability to execute commands when only some, but not all, words in the

11  command are valid ("e.g., only the first three command words are valid from a total of 4

12  command words received").  *Id.*; *see also* Ex. 14 ('526 patent) at 4:37–54.  Systems that *don't* use

13  the patented method, in contrast, execute a command only when the "system determines that it

14  has received the entirety of a complete valid sequence of tokens." Ex. 12 (Cisco IPR Resp.) at 8–

15  9.  Systems that do not practice the '526 patent "could not execute a generic command for a

16  partially valid input—a novel aspect accomplished by the '526 patent, because of the unique

17  command parse tree and its structure."  *Id.*  Arista's EOS is just such a system; therefore it does

18  not infringe any asserted claim of the '526 patent.

## III.    CISCO CANNOT MEET ITS BURDEN OF PROVING ORIGINALITY FOR APPROXIMATELY TWO HUNDRED ASSERTED CLI COMMANDS

20      In order to sue for copyright infringement, a copyright holder must first register the

21  asserted work with the Copyright Office.  17 U.S.C. § 411(a).  If a copyright holder properly

22  registers a work within five years of first publication, the registration constitutes "prima facie

23  evidence of the validity of a copyright and of the facts stated in the certificate."  17 U.S.C. §

24  410(c); *see also Entm't Research Group, Inc. v. Genesis Creative Group, Inc.,* 122 F.3d 1211,

25  1217 (9th Cir. 1997).

26

27

28

1070872

Cisco asserts that Arista has infringed twenty-six registered works.[3]  SAC (ECF No. 64), ¶¶ 25, 66–73 & Exs. 3–28.  All twenty-six are derivative works that incorporate unidentified preexisting works.  *Id.*  According to Cisco's discovery responses, Cisco published approximately two hundred of the asserted CLI commands more than five years before registering works containing those commands.  Those commands are therefore not entitled to a presumption of originality.  Cisco, however, has produced no evidence to carry its burden of proving their originality—on the contrary, it has successfully prevented any discovery into that subject.  Accordingly, Cisco cannot withstand partial summary judgment as to the CLI commands for which it enjoys no presumption.

> **A.    The presumption of validity does not extend to CLI commands for which Cisco filed registrations more than five years after they were first published.**

A copyright registration made more than five years after first publication of the work is not entitled to a presumption of validity.  17 U.S.C. § 410(c).  Instead, the evidentiary weight, if any, of an untimely copyright registration lies within the discretion of the court.  *Id.*  Further, registering a derivative work (as Cisco did in all twenty-six registrations here) does not create a presumption of validity for any preexisting works it incorporates.  *See Cooling Sys. & Flexibles, Inc. v. Stuart Radiator, Inc.*, 777 F.2d 485, 490 (9th Cir. 1985), *overruled on other grounds as stated in Jackson v. Axton*, 25 F.3d 884 (9th Cir. 1994) ("We also reject the argument that registration of the derivative work creates a presumption of validity of the copyright of the underlying work.") (citing H.R.Rep. No. 1476, 94th Cong., 2d Sess. 57, *reprinted in* 1976 U.S. Code Cong. & Ad. News 5659, 5670); 17 U.S.C. § 103(b) ("The copyright in a compilation or derivative work extends only to the material contributed by the author of such work, *as distinguished from the preexisting material employed in the work*.") (emphasis added).

According to Cisco, approximately two hundred asserted CLI commands were first published more than five years before Cisco registered a work containing those commands with the Copyright Office.  *See* Ex. 15 (chart summarizing first publication and registration dates

---

[3] The twenty-six registered works are the "computer code" and certain "accompanying documentation" for Cisco's IOS 11.0, 11.1, 11.2, 11.3, 12.0, 12.1, 12.2, 12.3, 12.4, 15.0, 15.1, 15.2, 15.4, Cisco IOS XR 3.0, 3.2, 3.3, 3.4, 3.5, 4.3, 5.2, Cisco IOS XE 2.1, 3.5, Cisco NX-OS 4.0, 5.0, 5.2, and 6.2.

1  provided by Cisco in discovery ("Presumption Chart")).[4]  For example, Cisco asserts that "ip

2  address" was first published in 1989, in IOS Release 7.0/7.1.  Ex. 4 (Ex. F to Rog Resp. 16) at 8.

3  But the first time Cisco registered a work including that command was when it registered IOS

4  11.0, in 2002, thirteen years later.  *See* SAC (ECF No. 64), Ex. 3.  Similarly, Cisco asserts that

5  "show snmp host" first appeared in Cisco IOS 12.4(12)T, in 2007.  Ex. 4 (Ex. F to Rog Resp. 16)

6  at 36. But the next registered version of IOS is version 15.0, which was registered in 2014, seven

7  years later.  *See* SAC (ECF No. 64), Ex. 12.

8  Here, Cisco is entitled to no presumption of validity for approximately two hundred

9  commands, but instead bears the burden of establishing their validity.  Even under normal

10  circumstances, the presumption is "slight," 5 Patry on Copyright § 17:109, and "fairly easy to

11  rebut" due to the Copyright Office's "cursory" review of registration applications. *Universal*

12  *Furniture Int'l, Inc. v. Collezione Europa USA, Inc.*, 618 F.3d 417, 430 (4th Cir. 2010), *as*

13  *amended* (Aug. 24, 2010).  The presumption is particularly easy to rebut for derivative works

14  because the Copyright Office did not have an opportunity to examine the preexisting works.  3

15  Patry on Copyright § 9:13.  But here, these CLI commands are not entitled to the presumption of

16  validity at all because they were not timely registered.  In light of Cisco's refusal to permit

17  discovery into most of its asserted CLI commands' origins, the strong evidence proving the lack

18  of originality in those commands, discussed below, and the untimely registrations, the Court, in

19  its discretion, should not accord Cisco's late registrations any evidentiary weight.  *See, e.g.*,

20  *Lamps Plus, Inc. v. Seattle Lighting Fixture Co.*, 345 F.3d 1140, 1144 (9th Cir. 2003); *Walker &*

21  *Zanger, Inc. v. Paragon Indus., Inc.*, 549 F. Supp. 2d 1168, 1183 (N.D. Cal. 2007).

22

23  ───────────────────
[4] Although Cisco's discovery responses demonstrate that many of the asserted CLI elements were
24  first published more than five years before the next registered version of Cisco's software, it is
not necessarily true that they appeared in the next registered version at all: they may not have
25  appeared until an even later version.  Arista propounded Interrogatory 25, in part, to determine
with certainty where commands appear in the registered works.  Arista needs that information to
26  know the full set of CLI commands that are not entitled to the presumption of validity.  Cisco has
refused to respond, and the dispute is currently pending before Judge Cousins.  *See* Arista's Mot.
27  to Compel, ECF No. 278.  In Arista's Exhibit 15, Arista has assumed that a command appeared in
the first registered version of Cisco's software following the command's first publication.
28  Depending on Cisco's responses to Interrogatory 25, the list of commands that were not timely
registered may grow even longer.

1070872

**B.    The Court should grant partial summary judgment for Arista as to the late-registered CLI commands because Cisco cannot carry its burden to demonstrate their originality.**

"Originality is the '*sine qua non* of copyright.'"  Order Granting Arista's Motion to Compel, (ECF No. 83) at 3 (quoting *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 345 (1991)).  Arista requested and the Court ordered Cisco to disclose the names of the alleged authors of the asserted CLI commands, as the names were "relevant to the inquiry of originality, because information as to the authorship of the disputed works . . . is reasonably calculated to lead to the discovery of witnesses for deposition and testimony as to whether, for example, a CLI 'was independently created by the author (as opposed to copied from other works).'"  *Id.* at 3–4 (citation omitted).  Yet, as the Court is aware, Cisco refused to allow further discovery into the authorship of hundreds of CLI commands when it opposed Arista's request to depose the purported "authors" of the commands to explore whether the commands were, in fact, independently created by and original to Cisco.  In all, Arista was able to depose eight authors, representing a total of 105 CLI commands.  Santacana Decl., ¶ 3.  And Cisco's Rule 30(b)(6) designee for CLI-command design refused to testify about the origins of any commands except those few he personally authored.  Ex. 16 (Remaker (3-31-16) Depo. Tr.) at 130:8–151:2.

Accordingly, the *only* evidence of creation that Cisco could offer for hundreds of commands whose authors it refused to produce as witnesses are a smattering of documents, usually one for each command, cited in its Court-ordered interrogatory response as the first document in which the command was fixed in a tangible medium of expression at Cisco.  Ex. 4 (Ex. F to Rog Resp. 16).  Those documents are evidence only that Cisco at some point implemented the command, and nothing more.  *See, e.g.*, *id.* at 1 (document citation for "aaa accounting" is "source code"); *id.* at 5 & Ex. 17 (document citation for "control-plane" leads to internal message where engineer expresses intent to add command to implement industry standard functionality).  None are evidence of independent creation because they show only that Cisco at some point implemented the command; they do not make it more or less likely that a Cisco employee formulated the command through his or her own "ingenuity rather than appropriation of another's material."  2 Patry on Copyright § 3:28.

1070872

Cisco's refusal to produce evidence of originality for the approximately two hundred late-registered commands is fatal to its claim of infringement of those commands.  In order to put its claim to a jury, Cisco must be able to show that each allegedly protectable element of the command was "independently created by the author (as opposed to copied from other works), and that it possesses at least some minimal degree of creativity."  *Feist*, 499 U.S. at 345.  The "key" question in determining originality "is whether original matter in which protection is claimed is the result of plaintiff's ingenuity rather than appropriation of another's material."  2 Patry on Copyright § 3:28.  The originality requirement thus "tests the putative author's state of mind: Did he have an earlier work in mind when he created his own?"  *Meshwerks, Inc. v. Toyota Motor Sales U.S.A., Inc.*, 528 F.3d 1258, 1268–69 (10th Cir. 2008) (internal quotation marks omitted).  Cisco has offered no evidence to establish the state of mind of its purported CLI "authors," and it prevented discovery into whether the allegedly original elements of the asserted CLI commands were copied or derived from works in the public domain, such as industry standards.  Cisco must bear the burden of its tactical choice to prove its case at too high a level of generality while resisting critical authorship discovery.

Cisco's evidentiary failure is all the more problematic given the undisputed facts that *disprove* the originality of many of the asserted CLI commands.  The eight purported CLI "authors" who testified conceded that terms in the commands they implemented came from preexisting non-Cisco works, including legacy systems that pre-date Cisco and industry standards whose functionality Cisco employees were attempting to add to Cisco's networking software.  Ex. 18 (Black Rpt.) ¶¶ 543–642; *see also* Ex. 19 (combined excerpts of CLI authors' depositions); Ex. 18 (Black Rpt.) ¶ 571 (CLI commands "show users" and "terminal length" were supported by legacy DEC products before Cisco existed); Ex. 7 (Almeroth Rebuttal Rpt.) ¶ 115 (failing to provide any evidence explaining preexisting use of "show users" and "terminal length" commands in DEC).  Indeed, for asserted commands such as "ip address," "boot system," "show interfaces," "clear counters," and hundreds more, the commands consist entirely of terms used in pre-existing public sources related to each command's functionality, or everyday industry parlance, before Cisco claims to have coined them.  *See* Ex. 18 (Black Rpt.) ¶ 544 & Ex. 20

ARISTA'S NOTICE OF MOTION AND MOTION FOR PARTIAL SUMMARY JUDGMENT
Case No. 5:14-cv-05344-BLF (NC)

1070872

(Black Rpt. Appendix K); Ex. 7 (Almeroth Rebuttal Rpt.) ¶¶ 113–14 (conceding, in reference to Black Report discussion of preexisting industry standard command terms, that "what [Arista has] shown is that some of the individual words may have existed previously"); Ex. 2 (Almeroth Rpt.) ¶ 261 (conceding "[t]he fact that certain single word commands or protocols—e.g., 'show,' 'clear,' 'help,' 'ip,' 'no,' 'arp,' 'bgp'—existed before Cisco").  The point here is not to ask the Court to weigh the evidence of unoriginality or resolve any evidentiary disputes.  It is that the Court cannot and should not *presume* originality for commands that are not entitled to any presumption due to Cisco's late registrations—and in the absence of such a presumption, Cisco cannot prove its claim as to those commands after having refused to allow discovery into their origin.

Cisco chose to allege in this case that each one of the over 500 asserted CLI commands is an independently protectable creative expression, with full knowledge of the evidentiary and case-management implications of that decision.  *See* Ex. 21 (9/29/15 Hearing Tr.) at 21:14–17 ("And I want to be perfectly clear with the Court, and this works against me on the instant motion, that Cisco does believe it's entitled to copyright protection on each of these multi-word commands.").  It resisted discovery on the ground that it could rely exclusively on the statutory presumption of validity to carry its burden of proof.  ECF No. 77 at 15 (opposing motion to compel names of CLI authors).  But as is now clear, that presumption does not apply to approximately two hundred of the asserted commands.  And with no other evidence of originality available by Cisco's own design, Cisco is incapable of carrying its burden as to those commands.  Accordingly the Court should grant partial summary judgment to Arista as to the 198 commands that were registered late and whose authors were not deposed, narrowing any remaining issues for trial to the commands for which Cisco either filed a timely copyright registration or produced the command's "author" for deposition.[5]

---

[5] Subject to further discovery from Cisco, as explained in footnote 4 above, Arista's Exhibit 15 lists the 198 commands that were *not* timely registered and for which the "author" of the command was *not* deposed in this case, i.e., the commands for which Cisco is incapable of carrying its burden of proof.

ARISTA'S NOTICE OF MOTION AND MOTION FOR PARTIAL SUMMARY JUDGMENT
Case No. 5:14-cv-05344-BLF (NC)

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## IV. CISCO'S COMMAND HIERARCHIES, MODES, AND PROMPTS ARE NOT COPYRIGHTABLE

A copyright infringement plaintiff can prevail only by proving both (1) ownership of a copyrighted work, and (2) that the defendant copied *protected* elements of that work. *Jada Toys, Inc. v. Mattel, Inc.*, 518 F.3d 628, 636 (9th Cir. 2008).  A fundamental rule of copyright is that ideas—including systems and methods—cannot be protected by copyright, and only the creative *expression* of ideas is copyrightable. *Baker v. Selden*, 101 U.S. 99 (1879); 17 U.S.C. § 102(b) ("Section 102(b)").  "In no case does copyright protection for an original work of authorship extend to any idea, procedure, process, system, [or] method of operation, . . . regardless of the form in which it is described, explained, illustrated, or embodied in such work." *Id.* § 102(b). Here, Cisco's asserted command "hierarchies," as well as the modes and prompts it asserts, are systems and methods of operation that cannot be copyrighted under Section 102(b).

As long ago as 1879, the Supreme Court applied this rule to prohibit copyright protection for a method of accounting—and for the specific account headings and records that it employed. *Baker*, 101 U.S at 101–02.  The Court held that although the plaintiff's books explaining his system could be protected, the system itself could not, and remained available for anyone to use. *Id.*  So did the functional elements of that system: as the Court explained, the system remained "free to the use of the public," and "of course, in using the art, the ruled lines and headings of accounts must necessarily be used as incident to it." *Id.* at 104.  Thus, Selden's specific arrangement of lines, columns, and headings used to implement his system were not protectable, *id.* at 104, any more than mathematical "methods" explained in a "work on mathematical science." *Id.* at 103.  Because "[t]he use of the art is a totally different thing from a publication of the book explaining it," the Court held that "[t]he copyright of a book on book-keeping cannot secure the exclusive right to make, sell, and use account-books prepared upon the plan set forth in [the] book." *Id.* at 104.  The CLI components at issue here are similarly unprotectable because they are purely functional components of a system for invoking or controlling features of Ethernet switches.  *See* Ex. 2 (Almeroth Rpt.) ¶ 50.  Arista is not accused of copying (and did not copy) the expression of that system, that is, the source code that implements the command hierarchies and the CLI's modes and prompts.

11

1070872

The availability of copyright protection for "non-literal components of a program"—as for other works—"depends on whether, on the particular facts of each case, the component in question qualifies as an expression of an idea, or an idea itself." *Johnson Controls, Inc. v. Phoenix Control Systems, Inc.*, 886 F.2d 1173, 1175–76 (9th Cir. 1989), *overruled on other grounds as stated in Perfect 10, Inc. v. Google Inc.*, 653 F.3d 976 (2011). In evaluating such questions, "courts have long held that when expression is essential to conveying the idea, expression will also be unprotected." *CDN Inc. v. Kapes*, 197 F.3d 1256, 1261 (9th Cir. 1999); *see also Apple Computer, Inc. v. Microsoft Corp.,* 35 F.3d 1435, 1443 (9th Cir. 1994) ("[S]imilarities derived from the use of common ideas cannot be protected."); *Durham Indus., Inc. v. Tomy Corp.*, 630 F.2d 905, 913 (2d Cir. 1980) ("Just as copyright protection extends to expression but not ideas, copyright protection extends only to the artistic aspects, but not the mechanical or utilitarian features, of a protected work.").

The Ninth Circuit has rigorously enforced the idea/expression dichotomy set forth in *Baker v. Selden* and Section 102(b), and Ninth Circuit law bars Cisco's claims here. Just last year, the Ninth Circuit held that a sequence of yoga poses was not copyrightable under Section 102(b). *Bikram's Yoga College of India v. Evolation Yoga*, 803 F.3d 1032, 1040–42 (9th Cir. 2015) (affirming summary judgment). The court did so even though the poses could have been arranged or selected differently and reflected some aesthetic choices, holding that the sequence "remain[ed] unprotectable as a process the design of which *primarily reflects function*, not expression." *Id.* at 1040 (emphasis added). The court explained that "the possibility of attaining a particular end through multiple different methods does not render the uncopyrightable a proper subject of copyright." *Id.* at 1042. This application of Section 102(b) drew from a long line of cases enforcing the idea/expression dichotomy to "preserv[e] the balance between competition and protection reflected in the patent and copyright laws," *id.* at 1040, by allowing all to "build freely upon the ideas and information conveyed" in the works of others,[6] *id.* at 1037 (quoting

---

[6] *Bikram* also endorsed a 1938 decision that rejected copyright protection for a system of rules for conducting roller skate races—even though the rules were creative, and a manual explaining them was copyrightable—because "[a] system, as such, can never be copyrighted." *Id.* at 1038 (quoting *Seltzer v. Sunbrock*, 22 F. Supp. 621, 630 (S.D. Cal. 1938)).

1    *Feist Publ'ns, v. Rural Tel. Serv. Co.,* 499 U.S. 340, 349–50 (1991), *Herbert Rosenthal Jewelry*

2    *Corp. v. Kalpakian*, 446 F.2d 738, 742 (9th Cir. 1971)).

3        The same rules apply in the computer context: ideas, systems, and methods of operation

4    used in computer programs cannot be copyrighted.  This rule bars copyright protection for "many

5    aspects" of computer programs, because of their "essentially utilitarian nature."  *Sega Enters. Ltd.*

6    *v. Accolade, Inc.*, 977 F.2d 1510, 1525 (9th Cir. 1992).  As the Ninth Circuit explained in *Sega*,

7    computer programs "contain many logical, structural, and visual display elements that are

8    dictated by the function to be performed, by considerations of efficiency, or by external factors

9    such as compatibility requirements and industry demands."  *Id.* at 1524.  Thus, in some cases

10   "even the exact set of commands used . . . is deemed functional rather than creative for purposes

11   of copyright."  *Id.*  Such functional aspects of a computer program can be protected only under

12   the patent laws (if at all)—not by copyright.  *Id.* at 1526.  *See also Bikram,* 803 F.3d at 1039–40

13   (citing *Sega*); *Sony Computer Entm't, Inc. v. Connectix Corp.*, 203 F.3d 596, 599 (9th Cir. 2000)

14   ("Copyrighted software ordinarily contains both copyrighted and unprotected or functional

15   elements.") (citing *Sega*).

16       The Ninth Circuit and others have regularly denied copyright protection for sets of

17   computer commands and menu functions (as distinct from specific, expressive source or object

18   code implementing those functional elements).  Thus, for example, in *Ashton-Tate Corp. v. Ross*,

19   728 F. Supp. 597, 601–02 (N.D. Cal. 1989), the Northern District of California ruled that a mere

20   list of menu commands to be used in a computer program—similar to the modes, prompts, and

21   sets of commands that Cisco asserts here—was nothing more than an idea, and contained no

22   copyrightable expression.  The *Ashton-Tate* list of menu commands simply described "what tasks

23   . . . the interface should allow the user to perform," and did not include source code or any other

24   implementation of the proposed commands.  *Id.*  The Ninth Circuit endorsed the district court's

25   reasoning, ruling that the list of commands—as an abstract idea, separate from any source code—

26   "simply d[id] not qualify for copyright protection."  *Ashton-Tate Corp. v. Ross*, 916 F.2d 516,

27   521–22 (9th Cir. 1990).  Similarly, in *Dream Games of Arizona, Inc. v. PC Onsite*, 561 F.3d 983

28   (9th Cir. 2009), the Ninth Circuit upheld jury instructions that identified unprotectable elements

13

of a copyrighted video bingo game as including basic functions listed in the game's menu options, such as "Add user", "Games Menu" and "Done." *Id.* at 989 (rejecting claim that jury instructions were improper because they did not identify protected elements); *see also Allen v. Academic Games League of America, Inc.*, 89 F.3d 614, 617–18 (9th Cir. 1996) (affirming grant of summary judgment for defendant accused of infringing rules for academic games, because the "abstract rules and play ideas" of the games—however original—could not be copyrighted).

Other circuits have also found nothing protectable in systems of functional commands like the CLI elements at issue here. For example, in *MiTek Holdings, Inc. v. Arce Engineering Co., Inc.*, 89 F.3d 1548 (11th Cir. 1996), the Eleventh Circuit held that a computer program's "menu and sub-menu command tree structure" was a "process that is not entitled to copyright protection" under Section 102(b). *Id.* at 1556 n.19. The menu system, which was part of a program for designing roof trusses, simply implemented the functional steps that a draftsperson would follow in designing a roof truss plan by hand, and was not protectable under Section 102(b). *Id.* at 1557. Likewise, in *Mitel, Inc. v. Iqtel, Inc.*, 124 F.3d 1366 (10th Cir. 1997), the Tenth Circuit found no copyrightable expression in a system of "command codes" that—like the hierarchies of CLI commands here—could be entered by technicians to invoke various functions of call controllers used in telephone systems. *Id.* at 1373 (affirming district court's denial of preliminary injunction for lack of originality and non-function-driven expression); *see also Southco, Inc. v. Kanebridge Corp.*, 390 F.3d 276 (3d Cir. 2004) (part numbers used by screw fastener maker held unprotectable, as analogous to short phrases or titles).[7]

The same rule that barred copyright protection in *Baker, Ashton-Tate* and *MiTek* (among

---

[7] The Federal Circuit's decision in *Oracle America, Inc. v. Google, Inc.*, 750 F.3d 1339 (Fed. Cir. 2014), which refused to apply Section 102(b) to bar copyright protection for Java API specifications, does not control here. *Oracle* involved the admitted verbatim copying of 7000 lines of declaring code, which were expressly found to contain significant creative expression. *Id.* at 1350–51, 1353. Here, in contrast, Cisco does not allege copying of any code. The CLI components at issue in this motion are abstractions that neither appear literally in Cisco's or Arista's source code, nor are even alleged to have been copied from the code. As *Oracle* itself acknowledged, copyrightability depends on the facts of the individual case, and neither CLI command modes and prompts, nor purely conceptual command hierarchies, were at issue in the *Oracle* opinion. *See id.* at 1365. Finally, to the extent that *Oracle* suggests any approach to Section 102(b) inconsistent with the Ninth Circuit authority discussed above, the Ninth Circuit's own interpretation of its law—including its most recent, post-*Oracle* precedent—remains controlling. *Id.* at 1353 (Federal Circuit applies regional circuit law on copyright issues).

others) bars copyright protection for the CLI elements at issue here. Cisco's command

hierarchies and command modes and prompts are simply ideas or methods for using and

organizing sets of CLI command words (Cisco's "multi-word command expressions") to operate

various functions of a switch or router.[8] It is uncontested that Cisco cannot copyright the

functionality—that is what patents are for. But the Ninth Circuit also prevents Cisco from

obtaining copyright over its systems and methods of accessing that functionality, namely Cisco's

organization of the CLI commands into "hierarchies," and Cisco's modes and prompts.[9]

### 1.    Cisco's command "hierarchies" are unprotectable ideas.

Cisco cannot claim copyright in the idea of using a tree structure to group and organize

commands by their common first word, and thereby attempt to preclude the rest of the networking

industry from using an obvious command organizational system. *See Baker*, 101 U.S. at 104;

*Bikram*, 803 F.3d at 1040–42. Yet that is the essence of Cisco's "hierarchy" claims.[10] Ex. 3

(Cisco Response to Interrogatory No. 2) at 12. The "copyrighted command hierarchies" Cisco

asserts here amount to nothing more than applying the idea of a tree structure to a set of

commands, and grouping functional commands by starting with a more general keyword (*e.g.*,

"show" or "ip") and proceeding to more specific features within that general keyword category.

*See* Ex. 2 (Almeroth Rpt.) ¶¶ 55–56; Ex. 16 (Remaker (3-31-16) Depo. Tr.) at 53:9–55:8; Ex. 11

(Lougheed (11-20-15) Depo. Tr.) at 157:8–159:17 (command hierarchy is an "abstract concept").

Cisco has not identified—and cannot identify—any expression in its "hierarchies" separable from

---

[8] In fact, the commands themselves also have no protectable expression, as Arista will demonstrate in the analytic dissection inquiry.

[9] Cisco also cannot obtain copyright protection for its functional systems of command hierarchies and modes by pointing to the amount of "creative *work*" that allegedly went into selecting them. The Supreme Court has rejected the "sweat of the brow" doctrine that allowed mere effort to substitute for satisfying the copyright laws. *Feist*, 499 U.S. at 349. The question is whether the *allegedly copied material* is itself creative, not whether the *effort to create* that material could be termed "creative." Scientists think creatively every day, but that does not mean Einstein could have obtained copyright protection for the formula $E=mc^2$. *See also Bikram*, 803 F.3d at 1040 (regardless of claimed elegance / aesthetic merit, "beauty is not a basis for copyright protection"); Ex. 2 (Almeroth Rpt.) ¶ 107 (describing creation efforts for Cisco CLI).

[10] In addition to being unprotectable, the idea at issue is not original to Cisco. Cisco cannot plausibly claim to have invented the obvious concept of grouping commands by a common first word (or for sub-hierarchies, by a common second word, etc.). *See* Ex. 2 (Almeroth Rpt.) ¶¶ 55–56.

1    the abstract idea of organizing commands by their shared words.  Cisco is not entitled to

2    copyright protection for the idea of a tree-structure type hierarchy.  17 U.S.C. § 102(b); *Apple*, 35

3    F.3d at 1443.

4        If Cisco's "hierarchy" idea were independently protectable by copyright, then even if

5    Cisco could not prove any protectable original expression in the underlying commands (as in fact

6    it cannot), Cisco could prevent others from using command syntax with the logical grouping and

7    sequence dictated by the idea of applying a "tree structure" to a set of related commands, and

8    grouping them by shared first words, second words, etc.  Such a notion of copyright protection is

9    antithetical to the protections that Section 102(b) and *Baker v. Selden* give to the public domain.

10        **2.**    **Cisco's command modes and prompts are not copyrightable.**

11        Also, and independently—though for much the same reasons—Cisco's command modes

12    and prompts are equally unprotectable under Section 102(b).  The "modes" are simply another

13    way of organizing commands.  They represent a system of controlling which commands will be

14    available to different types of users or in different contexts.  *See* Ex. 2 (Almeroth Rpt.) ¶¶ 58–60.

15    And to be clear, Cisco does not claim creative expression in any particular selection of commands

16    for each mode.  The only things Cisco has identified as purported expression related to the modes

17    are their names, and the textual "prompts" associated with the various modes.  Specifically, Cisco

18    attempts to claim copyright in the following one- and two-word mode names: "EXEC";

19    "Privileged EXEC"; "Global Configuration"; and "Interface Configuration."  Ex. 9 (Almeroth

20    Rpt. Ex. 4).  Likewise, each asserted prompt consists of no more than a few words, plus a prompt

21    symbol (">" or "#").  *See id.*  For example, Cisco claims copyright in the command prompt

22    "router>", associated with its EXEC mode.  *Id.*

23        Cisco's mode names and prompts are just labels for each mode's abstract groupings of

24    commands and functions, and they are not copyrightable for several independent reasons.  First,

25    the modes and prompts are purely functional descriptors, which are essential to use of a

26    differentiated prompt system.  *See* Ex. 22 (Almeroth Depo. Tr.) at 269:5–270:3 (identifying

27    copied aspects of prompts as "that concept of the prompts and the use of the prompts to

28    distinguish between the other modes").  As such, they are uncopyrightable parts of a functional

1070872

system or method.  *Baker*, 101 U.S. at 104; Section 102(b).  In addition, all of the asserted mode names and prompts are uncopyrightable because they are simply names or titles for conceptual groupings of commands (*see* Ex. 2 (Almeroth Rpt.) ¶¶ 58, 62), and no copyright protection is available for titles and names.  The Ninth Circuit enforces a clear rule that "titles, in and of themselves, cannot claim statutory copyright"—although copying of titles can be considered as a factor in evaluating "whether the substance of plaintiff's work (*not the title*) has been copied." *Shaw v. Lindheim*, 919 F.2d 1353, 1362 (9th Cir. 1990) (emphasis added); 37 C.F.R. § 201.2(a) ("Words and short phrases such as names, titles and slogans" are not copyrightable.); *Narell v. Freeman*, 872 F.2d 907 (1989) (denying protection to short phrases). Cisco's mode names and prompts also are not copyrightable because they are not original to Cisco.  Ex. 11 (Lougheed (11-20-15) Depo. Tr.) at 55:2–56:18, 109:5–22, 112:14–17; Ex. 10 (Lougheed (4-4-2016) Depo. Tr.) at 362:16–371:16 (Privileged), 381:17–20 (EXEC); Ex. 23 (Li Depo. Tr.) at 27:7–29:22 ( "privileged" commands in Unix and VAX/VMS since at least 1975); Ex. 24 (Satz Depo. Tr.) at 28:4–16 (privileged mode in TOPS-20); Ex. 18 (Black Rpt.) ¶¶ 550–51, 553, 559, 578.

Finally, Cisco's use of the symbols "#" and ">" in its command prompts would also be unprotectable even if it were original—which it is not.  *Torah Soft Ltd. v. Drosnin*, 136 F. Supp. 2d 276, 287–88 (S.D.N.Y. 2001) (no copyright in use of * or # symbols in database of biblical verses: symbols themselves were unprotectable, and choices of symbols were "obvious, garden-variety, or routine selections") (citation omitted); *Matthew Bender & Co. v. W. Pub. Co.*, 158 F.3d 674, 681 (2d Cir. 1998); Ex. 11 (Lougheed (11-20-15) Depo. Tr.) at 121:7–15 (">" used by MS-DOS); Ex. 10 (Lougheed (4-4-2016) Depo. Tr.) at 369:2–20 ("#" used by Stanford), at 386:21–387:7 (">" used by Stanford); Ex. 18 (Black Rpt.) ¶¶ 554, 573, 580–81.

## V.    ARISTA DOES NOT INFRINGE THE '526 PATENT AS A MATTER OF LAW BECAUSE ARISTA DOES NOT USE A COMMAND PARSE TREE HAVING ELEMENTS WHERE EACH ELEMENT SPECIFIES AT LEAST ONE COMMAND ACTION VALUE FOR EACH GENERIC COMMAND COMPONENT

The Court held in its Claim Construction Order that the '526 patent's "command parse tree"—which appears in all asserted claims—requires a hierarchical data structure "having elements, such that *each element* specifies at least one command action value for *each generic*

17

*command component*." Cl. Constr. Order (ECF No. 310) at 10:12, 13:22–26 (emphasis added). Likewise, Cisco distinguished the '526 patent from the prior art by emphasizing the patent's "unique command parse tree" that specifies at least one "command action value" for every "generic command component." Ex. 12 (Cisco IPR Resp.) at 8–9. Arista's accused parser, however, lacks a parse tree where each element specifies at least one command action value for each generic command component—as Cisco's own expert admits.

Cisco has nevertheless pressed ahead with an infringement theory based on the premise that the '526 patent does not require tree elements to specify a "command action value" for each "generic command component." Rather, as Cisco reads the patent, each element need only specify a "command action value" for *at least one* "generic command component"—for example, for only the last word in a command—while all other "generic command components" may have no "command action value" specified. Cisco's reading of the claim language contradicts the Court's Claim Construction Order. Thus, Arista does not infringe the patent as a matter of law.

To appreciate Cisco's fatally flawed theory of infringement, it's important to understand how Arista's parser processes commands. Arista's parser comprises a series of rules and subrules, two kinds of which are relevant here. "TokenRules" are rules that are compared to individual words in the input string. Ex. 25 (Chase Rebuttal Rpt.) ¶ 77. For example, the TokenRule for "show" would match the word "show" when a user enters it, but would not match "clear," or other command words that a user might enter.

"ConcatRules" are rules that concatenate—i.e., link together—TokenRules. A ConcatRule matches an input string if all of its subrules match the tokens in the string in a specific sequence. *See id.* For example, a ConcatRule that concatenates the TokenRules for "show," "openflow," and "flows," in that order, would match the input string "show openflow flows" when a user enters it. In this way, ConcatRules define complete, valid commands. *See id.* ¶ 80.

Rules may have "value functions," which define functions that are called when the rule is met. *See id.* ¶ 88. These functions may, for example, result in changing or checking a setting in the switch. Cisco accuses *some* of these value functions of being "command action values." Ex.

1  13 (Jeffay Depo. Tr.) at 91:14–24.  It does not accuse all of them of being "command action

2  values," however, because, as Cisco's expert admits, many TokenRules' value functions are "set

3  to 'None', and thus would not be invoked during parsing."  Ex. 26 (Jeffay Rpt.) ¶ 116.  Cisco's

4  expert admits—as he must—that a value function that is set to "None" is not a "command action

5  value" as claimed in the '526 patent.  Ex. 13 (Jeffay Depo. Tr.) at 98:9–22; *see also* Cl. Constr.

6  Order (ECF No. 310) at 15:8–9 (construing "command action value" as "a value that identifies a

7  prescribed command").

8         This explanation highlights the fundamental problem with Cisco's infringement claim.

9  Cisco admits that many TokenRules—the rules that match individual words in the input string—

10  have value functions that are set to "None," and *therefore do not specify any command action

11  value*.  Thus, for example, Arista's parser specifies no "command action value" for the command

12  word "show."  Ex. 13 (Jeffay Depo. Tr.) at 104:13–19.  Yet Cisco contends that the word "show"

13  is a "generic command component" when input in a string such as "show openflow flows," which

14  Cisco accuses of being an infringing "generic command."  *Id.* at 101:19–102:4.  As a result,

15  Arista's parser violates the requirement—present in every asserted claim—that the command

16  parse tree must "specif[y] at least one command action value for each generic command

17  component."  Cl. Constr. Order (ECF No. 310) at 15:20–21.  Arista does *not* specify a "command

18  action value" for "show" or many other alleged "generic command components."

19         This key fact—which by itself defeats infringement for the entire '526 patent—is

20  undisputed.   Again taking the exemplary command "show openflow flows," Cisco's expert

21  contends that this command includes three "generic command components"—"show,"

22  "openflow," and "flows."  Ex. 13 (Jeffay Depo. Tr.) at 101:19–102:4.  But he admits that he has

23  not identified any "command action value" associated with "show":

24             Q.  So you're not opining that the command action value associated
            with the show openflow flows element is specifically associated
25             with the show token?

26             A.  If I understand your question, I think the answer is yes.

27  *Id.* at 104:13–19 (objection omitted).  Instead, he contends that a "command action value" is

28  associated with the *complete* command "show openflow flows," and "with at least one generic

command component, which, in this case, I would say is best described by flows"—i.e., the *last* word in the command.  *Id.* at 103:20–104:11.

This fundamental difference—between, on the one hand, specifying a "command action value" only for complete, valid commands, and on the other hand, specifying at least one "command action value" for *every word* in a command—is precisely what Cisco relied on to distinguish prior art in the IPR.  In that proceeding, Cisco successfully distinguished U.S. patent No. 6,523,172 to Martinez-Guerra, which is directed to providing "a high-level user language" in complex computer environments with many software tools, so that the "user can focus on the semantics of the desired operations, and need not be concerned with the proper syntax of a language for a particular system."  Ex. 27 (Martinez-Guerra Patent) at Abstract.  Martinez-Guerra explained that, when a user enters a command in the "high-level user language," the system's parser invokes a "translation function," which "translat[es] the . . . user language statements to the form and syntax desired by a specific software tool."  *Id.* at Abstract and 13:29–33.

Despite Martinez-Guerra's obvious similarity to the '526 patent, Cisco argued, and the PTO agreed, that it did not render the '526 patent obvious because it specified a "translation function" (Martinez-Guerra's term for "command action value") only for complete, valid commands—not for each word in a command.  As Cisco explained,

> [a]ccording to Martinez-Guerra, a translation function only applies to a *complete* valid sequence of tokens.  Thus, in contrast to the '526 patent, each token ingested by Martinez-Guerra's parser does not have a corresponding translation function.  Instead, Martinez-Guerra's translation functions are only applied once Martinez-Guerra's system determines that it has received the entirety of a complete valid sequence of tokens.

Ex. 12 (Cisco IPR Resp.) at 28 (emphasis in original; citations omitted); *see also* Ex. 28 (PTAB Ruling) at 16 (quoting this statement by Cisco, beginning with "in contrast to the '526 patent," and concluding, "We agree.")

But as Cisco's own expert admits, Arista's accused parser works in exactly the same way.  It invokes a value function only if it determines that it has received a complete, valid sequence of command words.  Ex. 26 (Jeffay Rpt.) ¶ 111 (stating that a ConcatRule "invokes its value function" *if* "its list of remaining subrules is empty (meaning that it has matched all its tokens)").

Arista's parser doesn't invoke a value function if it receives some valid words and some invalid ones—nor could it, because, unlike the '526 patent, it doesn't specify a value function for each word in a command, only for complete, valid commands.

Thus, as Cisco's expert also admits, if a user enters only some valid command words and other invalid ones into an Arista switch, the switch will return an error message. Ex. 13 (Jeffay Depo. Tr.) at 104:21–105:20. According to Cisco, this very same behavior by Martinez-Guerra demonstrated that it did not render the '526 patent obvious, because it did not practice the "command parse tree" limitation:

> While other parsing and translating systems, such as the one disclosed by Martinez-Guerra aimed to solve a similar problem, such systems addressed the problem using a different technique—a technique that did not use a command parse tree having elements where *each* element *specified a generic command component and at least one corresponding command action value*. As a result, systems such as Martinez-Guerra could not execute a generic command for a partially valid input—a novel aspect accomplished by the '526 patent, because of the unique command parse tree and its structure.

Ex. 12 (Cisco IPR Resp.) at 8–9 (emphasis in original). The same is true for Arista.

In sum, undisputed facts demonstrate that Arista does not practice the limitation of "the command parse tree having elements each specifying at least one generic command component and a corresponding at least one command action value." Accordingly, Arista does not infringe the '526 patent as a matter of law.

## VI.    CONCLUSION

For the foregoing reasons, the Court should grant partial summary judgment to Arista on (1) all portions of Count I (Copyright Infringement) that assert infringement based on alleged copying of the CLI commands for which Cisco is not entitled to the statutory presumption of originality, and for which Cisco did not produce any of the alleged "authors" of the command for deposition (including the commands listed in Exhibit 15), (2) all portions of Count I based on alleged copying of CLI command hierarchies, which are not copyrightable under Section 102(b), and (3) all portions of Count I based on alleged copying of command modes or prompts, which also are not copyrightable under Section 102(b). In addition, the Court should grant summary judgment to Arista on the entirety of Count II (Infringement of the '526 Patent).

21

1070872

1

2                                            Respectfully submitted,

3    Dated:  June 30, 2016                    KEKER & VAN NEST LLP

4

5                                     By:    */s/ Brian L. Ferrall*
                                            BRIAN L. FERRALL
6

7                                            Attorneys for Defendant
8                                            ARISTA NETWORKS, INC.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ARISTA'S NOTICE OF MOTION AND MOTION FOR PARTIAL SUMMARY JUDGMENT
Case No. 5:14-cv-05344-BLF (NC)

1070872