Kathleen Sullivan (SBN 242261)
kathleensullivan@quinnemanuel.com
QUINN EMANUEL URQUHART &
SULLIVAN LLP
51 Madison Avenue, 22nd Floor
New York, NY 10010
Telephone: (212) 849-7000
Facsimile: (212) 849-7100

Sean S. Pak (SBN 219032)
seanpak@quinnemanuel.com
Amy H. Candido (SBN 237829)
amycandido@quinnemanuel.com
John M. Neukom (SBN 275887)
johnneukom@quinnemanuel.com.
QUINN EMANUEL URQUHART &
SULLIVAN LLP
50 California Street, 22nd Floor
San Francisco, CA 94111
Telephone: (415) 875-6600
Facsimile: (415) 875-6700

Mark Tung (SBN 245782)
marktung@quinnemanuel.com
QUINN EMANUEL URQUHART &
SULLIVAN LLP
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, CA 94065
Telephone: (650) 801-5000
Facsimile: (650) 801-5100

Steven Cherny (admitted pro hac vice)
steven.cherny@kirkland.com
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900

Adam R. Alper (SBN 196834)
adam.alper@kirkland.com
KIRKLAND & ELLIS LLP
555 California Street
San Francisco, California  94104
Telephone: (415) 439-1400
Facsimile: (415) 439-1500

Michael W. De Vries (SBN 211001)
michael.devries@kirkland.com
KIRKLAND & ELLIS LLP
333 South Hope Street
Los Angeles, California 90071
Telephone: (213) 680-8400
Facsimile: (213) 680-8500

Attorneys for Plaintiff Cisco Systems, Inc.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

| | |
|---|---|
| CISCO SYSTEMS, INC.,<br><br>Plaintiff,<br><br>vs.<br><br>ARISTA NETWORKS, INC.,<br><br>Defendant. | CASE NO. 5:14-cv-5344-BLF (PSG)<br><br>**CISCO'S NOTICE OF MOTION AND MOTION   FOR PARTIAL SUMMARY JUDGMENT**<br><br>Date:      August 4, 2016<br>Time:<br>Judge:    Hon. Beth Labson Freeman |

# TABLE OF CONTENTS

MEMORANDUM OF POINTS AND AUTHORITIES ................................................................. 1

I.      INTRODUCTION................................................................................................................. 1

II.     BACKGROUND.................................................................................................................. 2

        A.      Cisco and its Copyrighted Works.......................................................................... 2

        B.      Arista and its Infringing Works............................................................................. 2

        C.      Arista's Public Admissions of Copying ................................................................ 2

        D.      Cisco's Copyright Claim ....................................................................................... 3

III.    ARGUMENT ....................................................................................................................... 4

        A.      Cisco Is Entitled To Summary Judgment On Copyrightability .............................. 4

                1.      Cisco Is Entitled To A Presumption of Validity and Ownership................. 5

                2.      There Can Be No Material Dispute On Ownership ..................................... 6

                3.      There Can Be No Material Dispute On Originality ..................................... 6

        B.      Cisco Is Entitled To Summary Judgment On Copying ........................................... 9

                1.      Direct Evidence Indisputably Shows Arista's Copying............................... 9

                2.      Circumstantial Evidence Indisputably Shows Arista's Copying ............... 12

        C.      Cisco Is Entitled To Summary Judgment Of No Fair Use ..................................... 14

                1.      Arista's Purpose Is Commercial And Non-Transformative ....................... 14

                2.      Cisco's CLI Is Creative And Expressive In Nature .................................. 17

                3.      Arista Copied Substantial Amounts Of Cisco's CLI ................................ 22

                4.      Arista's Copying Harms The Value Of Cisco's CLI ................................ 24

IV.     CONCLUSION ................................................................................................................. 25

## <u>TABLE OF AUTHORITIES</u>

<u>Page</u>

### <u>Cases</u>

*Benay v. Warner Bros. Entm't, Inc.*,
  607 F.3d 620 (9th Cir. 2010)..................................................................12, 13

*Brighton Collectibles, Inc. v. RK Texas Leather Mfg.*,
  No. 10 Civ. 419, 2012 WL 6553403 (S.D. Cal. Dec. 13, 2012) ...............................6

*CJ Products LLC v. Snuggly Plushez LLC*,
  809 F. Supp. 2d 127 (E.D.N.Y. 2011).....................................................................6

*Campbell v. Acuff-Rose Music, Inc.*,
  510 U.S. 569 (1994) ................................................................................14

*Cosmetic Ideas, Inc. v. IAC/Interactivecorp*,
  606 F.3d 612 (9th Cir. 2010)....................................................................5

*Elvis Presley Enters., Inc. v. Passport Video*,
  349 F.3d 622 (9th Cir. 2003)...................................................................15

*Harper& Row Publishers, Inc. v. Nation Enters.*,
  471 U.S. 539 (1985)..........................................................................14, 17

*Johnson Controls, Inc. v. Phoenix Control Sys., Inc.*,
  886 F.2d 1173 (9th Cir. 1989)...................................................................5

*Oracle Am., Inc. v. Google, Inc.*,
  750 F.3d 1339 (Fed. Cir. 2014)...................................4, 5, 9, 14, 15, 16, 17, 18

*Oracle America, Inc. v. Google Inc.*,
  No. 3:10-cv-03561-WHA (N.D. Cal.)........................................................16

*Practice Mgmt. Info. Corp. v. Am. Med. Ass'n*,
  133 F.3d 1140 (9th Cir. 1998)..................................................................21

*Sega Enterprises v., Accolade, Inc.* ,
  977 F.2d 1510 (9th Cir. 1992)..................................................................18

*Seltzer v. Green Day, Inc.*,
  725 F.3d 1170 (9th Cir. 2013)..................................................................16

*Tetris Holding, LLC v. Xio Interactive, Inc.*,
  863 F. Supp. 2d 394 (D.N.J. 2012) ...........................................................18

*Three Boys Music Corp. v. Bolton*,
  212 F.3d 477 (9th Cir. 2000)....................................................................12

### <u>Statutes</u>

17 U.S.C. § 101 ..........................................................................................4

CISCO'S MOTION FOR SUMMARY JUDGMENT

Case No. 5:14-cv-05344-BLF

17 U.S.C. § 102(a) ............................................................................................................4

17 U.S.C. § 107 ..............................................................................................................14

17 U.S.C. § 107— ..........................................................................................................15

17 U.S.C. §§ 201(a) ..........................................................................................................5

17 U.S.C. § 410(c) ............................................................................................................5

17 U.S.C. § 410(c) ............................................................................................................5

Fed. R. Civ. P. 56 .............................................................................................................1

PLEASE TAKE NOTICE, that on August 4, 2016, at 9:00 a.m., or at such other time as the Court may direct, before the Honorable Beth Labson Freeman in the United States District Court for the Northern District of California, Plaintiff Cisco Systems, Inc. ("Cisco"), will, and hereby does, move the Court under Fed. R. Civ. P. 56 for entry of partial summary judgment on Count I (Copyright Infringement) of its Second Amended Complaint ("Complaint").  Dkt. 64. This Motion is based on this Notice of Motion and Motion, the Memorandum of Points and Authorities below, the Declarations of Kevin Almeroth, Judith A. Chevalier and Amy H. Candido filed herewith, and such other papers, evidence and argument as may be submitted to the Court in connection with the hearing on this motion.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.     INTRODUCTION**

This case is about the blatant and comprehensive copying by defendant Arista Networks, Inc. ("Arista") of Cisco's copyrighted works.  Cisco holds valid copyrights to a set of original expressions related to its unique command-line interface, including original multi-word command-line expressions; original hierarchies, modes, prompts, command responses, screen displays, and help screens in its user interface; and original technical documentation like user guides and manuals available to those who use its command-line interface (referred to collectively herein as "Cisco CLI").[1]  Cisco's engineers created Cisco's unique CLI from innumerable creative possibilities, as Arista's own witnesses have admitted.  And as Arista's own witnesses have also admitted, Arista blatantly copied Cisco CLI.  In the words of Arista's own Chief Technology Officer and Senior Vice President of Software Engineering, Ken Duda:

[1]  For convenience, Cisco refers to all the asserted aspects of the copyrighted works as "Cisco CLI" even though some copyrighted Cisco CLI elements (like hierarchies, modes, prompts, command responses, screen displays and help screens) are not themselves command-line expressions and some copyrighted CLI-related elements (like user guides and manuals) are not contained in Cisco's command-line interface.

1  ████████████████████████████████████████████████████████

2  ████████████████████████████  foreclosing any possible affirmative defense of fair use.

3      Cisco thus respectfully submits that the Court may simplify the case for trial by holding

4  now, on summary judgment, that: (1) Cisco owns a valid copyright in Cisco CLI, which is

5  copyrightable as original to Cisco, (2) Arista infringed Cisco's copyrights by copying Cisco CLI,

6  and (3) Arista cannot establish a fair use defense to its blatant copying of Cisco CLI.

7  **II.**    **BACKGROUND**

8      **A.**    **Cisco and its Copyrighted Works**

9      Founded in 1984, Cisco pioneered the networking technologies that enabled the growth of

10  the Internet. Cisco's unique "Internetwork Operating System" and "Nexus Operating System

11  ("NX-OS") (collectively, Cisco's "IOS") allow engineers to configure and manage Cisco servers,

12  routers and switches. Dkt. 64, ¶¶ 20-30. Cisco registered its IOS, which includes all aspects of

13  Cisco CLI, with the Copyright Office. *See* Dkt. 64, Exs. 3-28.

14      Cisco CLI employs a distinctive "look and feel" that is central to its customers' user

15  experience—a network engineer recognizes, interacts with, and "talks" to Cisco's network devices

16  (*e.g.*, routers and switches) by way of Cisco's copyrighted CLI. Cisco CLI differs from other

17  possible user interfaces, such as (a) a graphical user interface ("GUI") whereby a user issues

18  commands by clicking on or touching graphic icons or (b) a menu-driven interface, both of which

19  provide very different user experiences and a very different "look and feel."

20      **B.**    **Arista and its Infringing Works**

21      Arista was founded in 2004—20 years after Cisco—by former Cisco executives who,

22  before departing from Cisco, had enjoyed full access to and knowledge of Cisco's IOS. Arista

23  sells networking equipment using an operating system Arista denominates "Extensible Operating

24  System" ("EOS"). Arista's EOS is designed to compete directly with Cisco's IOS. Arista

25  released no product until 2008, and by 2013, reported only $361 million in revenues (0.74% of

26  Cisco's $48.6 billion in revenues in fiscal year ending July 27, 2013). Ex. 38 at 35; Ex. 39 at 5.

27      **C.**    **Arista's Public Admissions of Copying**

28

2

CISCO'S MOTION FOR SUMMARY JUDGMENT

Case No. 5:14-cv-05344-BLF

Arista executives publicly stated that Arista had deliberately copied Cisco's CLI in order to allow anyone trained on Cisco's CLI to use Arista's EOS "right away."  Ex. 28.  Arista's Chief Executive Officer Jayshree Ullal, who had stated in 2013, "Where we don't have to invent, we don't," *id.*, further explained in 2014 why Arista copied Cisco CLI:  "I would never compete with Cisco directly in the enterprise in a conventional way.  It makes no sense.  It would take me 15 years and 15,000 engineers, and that's not a recipe for success."  Ex. 27.

### D.    Cisco's Copyright Claim

Once Cisco learned of Arista's massive copying through Arista's own public statements in 2014, Cisco investigated Arista's EOS, found Arista's massive copying of Cisco CLI, and promptly filed this action on December 5, 2014.  Dkt. 1.  Arista touted its slavish copying of the overall "look and feel" of Cisco's CLI as a key competitive advantage of EOS.  *See, e.g.*, Ex. 28 (Arista's CEO: "[A] Cisco CCIE expert would be able to use Arista right away, because we have a *similar command-line interface and operational look and feel.*").

Cisco CLI, as asserted here, includes Cisco's original:

*Multi-word command-line expressions:*  Cisco CLI incorporates numerous multi-word command-line expressions originally created by Cisco's engineers.  *See* Almeroth Decl. Ex. 1 at ¶¶ 53-57.  Arista copied more than 500 multi-word command-line expressions verbatim from Cisco IOS into Arista EOS.  Almeroth Decl. Ex. 1 at Exhibit Copying-2.

*Command hierarchies:*  Cisco's IOS expresses its multi-word command-line expressions according to hierarchies designed by Cisco engineers.  An initial keyword at the start of a multi-word command-line expression leads to successive sets of additional keywords.  Such hierarchical arrangement conveys to a user an aesthetically pleasing set of choices that is easy to understand, easy to remember, and easy to teach.  As Cisco engineer Kirk Lougheed, a central author of the Cisco CLI, testified, there is value in "the aesthetic of having a … symmetric hierarchy" that is "elegant."  Ex. 44 (Lougheed Tr. at 128:10-129:19).  Arista copied the hierarchies in Cisco's IOS. *See* Almeroth Decl. Ex. 1 at Exhibit Copying-5.

***Command modes and prompts:***  Cisco CLI offers a series of "modes" associated with visual "prompts."  The "mode" the user selects determines the command-line expressions from which a user can select.  *See* Almeroth Decl. Ex. 1 at ¶¶ 58-63.  Arista's EOS copies the modes and prompts available in Cisco CLI.  *See* Almeroth Decl. Ex. 1 at Exhibit-Copying-4.

***Command responses and screen displays***:  Inputting a given command-line expression presents a Cisco CLI user with varying responses and screen displays.  *See* Almeroth Decl. Ex. 1 at ¶¶ 64-65.  Arista's EOS copies Cisco's command responses and screen displays.  *See id.* at Exhibit-Copying-3.

***"HelpDesc" command responses:***  Cisco's screen displays in response to command-line expressions include "HelpDesc" screens that show available command-line expressions and narrative descriptions thereof.

***User Guides and Manuals***:  With every version of Cisco's IOS, Cisco released technical documentation, such as user guides and manuals related to Cisco CLI.  *See, e.g.,* Ex. 56.  Arista copied those user guides and manuals so slavishly that it even included Cisco's typographical errors.  *See* Almeroth Decl. Ex. 1 at Exhibit Copying-1.  Arista also copied Cisco's user guides and manuals into its help screens.  *See* Almeroth Decl. Ex. 2 at ¶ 148(b); Almeroth Decl. Ex. 1 at ¶¶ 202-203; Almeroth Decl. Ex. 1 at Exhibit Copying-3.

## III.    ARGUMENT

### A.    Cisco Is Entitled To Summary Judgment On Copyrightability

The Copyright Act provides protection to "original works of authorship fixed in any tangible medium of expression," including "literary works."  17 U.S.C. § 102(a).  Software, or "computer programs," qualify for copyright protection as "literary works."  *See* 17 U.S.C. § 101; *Oracle Am., Inc. v. Google, Inc.*, 750 F.3d 1339, 1354 (Fed. Cir. 2014) ("It is undisputed that computer programs… can be subject to copyright protection as 'literary works.'") (quoting *Atari Games Corp. v. Nintendo of Am., Inc*., 975 F.2d 832, 838 (Fed. Cir. 1992)).  As the Federal Circuit

02099-00004/8117426.1

CISCO'S MOTION FOR SUMMARY JUDGMENT

Case No. 5:14-cv-05344-BLF

1   noted in *Oracle v. Google*:  "[T]he legislative history explains that 'literary works' includes

2   'computer programs to the extent that they incorporate authorship in the programmer's expression

3   of original ideas, as distinguished from the ideas themselves.'" (quoting H.R. Rep. No. 1476, 94th

4   Cong., 2d Sess. 54, *reprinted in* 1976 U.S.C.C.A.N. 5659, 5667).

5       It is also "well established that copyright protection can extend to both literal and non-

6   literal elements of a computer program."  *Oracle*, 750 F.3d at 1355 (citing *Computer Assocs. Int'l*

7   *v. Altai*, 982 F.2d 693, 702 (2d Cir. 1992)).  The literal elements of a computer program include

8   (*inter alia*) its source code.  *Id.*  The non-literal components of a computer program, also

9   copyrightable so long as they qualify as original expression of an idea, include "the program's

10  sequence, structure, and organization, ***as well as the program's user interface***."  *Oracle*, 750 F.3d

11  at 1355-56 (emphasis added) (citing *Johnson Controls, Inc. v. Phoenix Control Sys., Inc.*, 886 F.2d

12  1173, 1175 (9th Cir. 1989)).

13              1.    **Cisco Is Entitled To A Presumption of Validity and Ownership**

14      Cisco's ownership of valid copyright interests in Cisco CLI its engineers created is beyond

15  dispute.  *See* 17 U.S.C. §§ 201(a) ("title vests initially in the author… of the work"); 201(b) ("[i]n

16  the case of a work made for hire, the employer… is considered the author").  Cisco is entitled to a

17  presumption of validity and ownership by virtue of its timely registration filings.  *See* 17 U.S.C.

18  § 410(c); *see also Cosmetic Ideas, Inc. v. IAC/Interactivecorp,* 606 F.3d 612, 619 (9th Cir. 2010)

19  ("[I]f a copyright holder secures a registration certificate within five years after first publication,

20  such certificate will constitute prima facie evidence of both the validity of the copyright and the

21  facts stated in the certificate.").  Of the 26 copyright registrations at issue in this case, 20

22  registrations were filed within five years of the works' initial publication, giving rise to a

23  presumption of validity and ownership.  *See* Ex. 56.  Those 20 registrations cover the vast majority

24  of Cisco CLI at issue in this case.  *See* Ex. 55 at pp. 5-22; Ex. 56.

25      Whether the remaining 6 registrations are entitled to the statutory presumption of validity

26  is left to this Court's discretion.  17 U.S.C. § 410(c).  Where there is a majority of similar

27  registrations entitled to the presumption of validity, courts apply the presumption to those

28

registered outside the five-year period.  *See, e.g., CJ Products LLC v. Snuggly Plushez LLC*, 809

F. Supp. 2d 127, 143 (E.D.N.Y. 2011) (treating the certificates of registration for the "stale"

registration products as *prima facie* evidence of their validity, despite the fact that they were

registered outside the five-year period, where the products were made and marketed as part of the

identical product line); *see also Brighton Collectibles, Inc. v. RK Texas Leather Mfg.,* 2012 WL

6553403, at *2 (S.D. Cal. Dec. 13, 2012) ("Most courts conclude that untimely certificates

constitute prima facie evidence.").  Because all of the registrations at issue here relate to different

versions of Cisco's IOS, Dkt. 64, Exs. 3-28, all 26 registrations should be afforded the

presumption of validity.

### 2.    There Can Be No Material Dispute On Ownership

In addition to the presumption of validity, the undisputed evidence supports Cisco's

ownership here.  For every multi-word command-line expression it asserts, Cisco has identified

voluminous historical evidence of the individual Cisco employee(s) associated with the creation of

each command, the date each such command was affixed or published, the operating systems in

which such commands were first released, and corroborating documentary evidence such as

historical source code and internal Cisco emails relating to the origination of each such command

within Cisco.  *See* Ex. 57 at Interrogatory No. 16; Ex. 54; Ex. 49 (documenting command modes

and prompts created by Kirk Lougheed).

The same is true for Cisco's original creation of the hierarchies, modes, prompts, and

command responses protected as part of Cisco CLI.  *See* Ex. 57 at Interrogatory No. 19; Ex. 54;

Ex. 49 (documenting command responses).  While Arista may dispute the originality of isolated

words or a miniscule number of command-line expressions,                                                            there is no credible evidence to suggest

that Cisco itself did not independently author the asserted elements and independently compile

those elements together.

### 3.    There Can Be No Material Dispute On Originality

CISCO'S MOTION FOR SUMMARY JUDGMENT

Case No. 5:14-cv-05344-BLF

The testimony of past and present Cisco engineers in the record establishes Cisco's original authorship of its copyrighted Cisco CLI beyond any possible dispute. Cisco engineer Kirk Lougheed, who played a central role in authoring Cisco CLI, testified that his selection of multi-word command-line expressions involved aesthetic and creative choices. *See, e.g.*, Ex. 44 at 338:24-339:9 (testifying to the creative process of writing software); *id.* at 130:11-17 (testifying to the history of Cisco's "IP address" commands: "And that gave a very—what I thought was a very elegant, symmetric, elegant way of referring to different protocols within a multi-protocol router."); *id.* at 331:6-23, 337:17-20 & 145:3-25 (testifying to choice to express the multi-word commands like "show ip route," "show spanning-tree" and "IP routing"); *id.* at 168:21-169:16 (identifying various alternatives for "hosts" not selected when choosing the command expression "show hosts," including "computers," "names," "systems," "network systems" and "end systems"); *id.* at 174:5-175:4 (testifying that the command expression "clear hierarchy" "seemed aesthetically pleasing to me"); *id.* at 185:13-186:5 ("timers basic RIP"). *See also* Almeroth Decl. Ex. 1 at ¶¶ 99-121; Ex. 73 at 24:12-25, 26:2-9 45:6-20 & 47:8-18 (Cisco engineer Abhay Roy testifying to his selection of particular Cisco multi-word command-line expressions); Ex. 71 at 161:19-162:1, 186:7-11 & 187:1-9 (former Cisco engineer Devadas Patil testifying to the subjective factors he considered when formulating Cisco's command-line expressions, noting that "intuitiveness, extensibility, usability, aesthetics are all factors that we considered").

Arista's own witnesses, many of them former Cisco employees whose work at Cisco had given them deep exposure to Cisco CLI, repeatedly confirmed the subjectivity (and thus originality) involved in Cisco's selection of particular command-line expressions. *See* Ex. 31 at CSI-CLI-00608716 (Arista's Adam Sweeney admitting in an April 7, 2014 e-mail chain that "I agree with CLI naming is very subjective");

02099-00004/8117426.1

CISCO'S MOTION FOR SUMMARY JUDGMENT

Case No. 5:14-cv-05344-BLF

█████████████████████████████████████████████████████████████

██████████████████████████████████████████████████ Thus, by Arista's own

admission, Cisco CLI is original because it involves creative, expressive choices that could have

been made in any of numerous other ways.

Like the command-line expressions comprising the Cisco CLI, the Cisco CLI modes,

prompts and hierarchies were the product of original aesthetic and creative choices, as Mr.

Lougheed testified.  *See, e.g.*, Ex. 44 at 108:12-109:22 (identifying various alternatives to his

selection of "EXEC" mode); *id.* at 109:23-111:15 (testifying to his selection of the "most aesthetic

choice" that provided a "nice visual" as a command prompt); *id.* at 129:10-130:19 & 148:1-23

(testifying to his selection of the Cisco CLI hierarchies to achieve a particular "aesthetic" that was

"elegant," "symmetric and organized").

In the face of this overwhelming evidence of originality, Arista has failed to adduce any

countervailing evidence.  There is no evidence that any Cisco engineer derived any of its

copyrighted multi-word command-line expressions from any prior work.  *See* Ex. 48 at

Interrogatory No. 10.  Nor is there any evidence that any Cisco engineer derived any of the modes,

prompts or hierarchies contained in copyrighted Cisco CLI from any prior work.  Candido Decl.

Ex 54.  As to the user guides, manuals and "HelpDesc" content that help comprise the copyrighted

Cisco CLI, Arista has waived any argument as to lack of originality.

Arista may assert that Cisco's multi-word command-line expressions are not original

█████████████████████████████████████████████████████████████

████████████████████████████████████████ contains any of Cisco's

asserted ***multi-word*** command-line expressions.  Even if Arista could cherry-pick isolated pre-

CISCO'S MOTION FOR SUMMARY JUDGMENT

Case No. 5:14-cv-05344-BLF

1  existing words, it is well-established that "an original *combination* of elements can be

2  copyrightable" even if some element of that combination is unoriginal.  *Oracle*, 750 F.3d at 1363

3  (citing *Softel, Inc. v. Dragon Med. & Scientific Commmc'ns*, 118 F.3d 955, 964 (2d Cir. 1997)).

4  **B.    Cisco Is Entitled To Summary Judgment On Copying**

5  This case is rare among copyright cases in that the record establishes Arista's blatant

6  copying of Cisco's copyrighted CLI through overwhelming ***direct*** evidence.  The undisputed

7  circumstantial evidence likewise indisputably establishes Arista's copying as a matter of law.

8  **1.    Direct Evidence Indisputably Shows Arista's Copying**

9  The record shows a deeply ingrained culture of copying at Arista, in which Arista's leaders

10 have repeatedly touted, in both public and internal statements, that Arista copies copyrighted

11 Cisco CLI—including not only its original multi-word command-line expressions, but also its

12 original hierarchies, modes, prompts, command responses, screen displays, user guides and

13 manuals.  *See, e.g.,*

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2                                                                Ex. 42 (Arista presentation at the

3   QuestNET Conference in 2013: "Arista CLI commands are the same as cisco IOS");

4

5

6

7

8

9

10          The same is true for other aspects of Cisco's copyrighted CLI.  Arista's Answer admits

11  using the same command modes and prompts used in Cisco's CLI.  *See* Dkt. 65 at ¶ 54 ("Arista

12  admits that it uses the command modes and prompts identified under the subheading 'Arista EOS

13  Command Modes' in paragraph 54 [of Cisco's Second Amended Complaint].").  Arista also has

14  admitted copying help screens.  *See*

15                                                                As to Cisco's user guides

16  and manuals Arista's CEO has admitted Arista's verbatim copying right down to the typographical

17  errors, stating:  "I own up to that. That's a mistake."  Ex. 29 at CSI-CLI-00357849;  *see also*

18

19

20

21

22          These repeated admissions of copying by Arista's key employees are themselves more

23  than enough to warrant summary judgment on copying.  But they are further reinforced by

24  repeated Arista admissions about *why* Arista copied Cisco's CLI:  so that Arista could get Cisco's

25  customers familiar with Cisco CLI to buy Arista products containing "a practical drop-in

26  replacement for the Cisco given the 99.999% similarity in the CLI."

27

28

                                              CISCO'S MOTION FOR SUMMARY JUDGMENT

                                              Case No. 5:14-cv-05344-BLF



Ex. 28 ("a Cisco CCIE expert would be able to use Arista right away, because we have a similar command-line interface and operational look and feel. Where we don't have to invent, we don't"); Ex. 30 (Arista's CTO Duda reporting that "80% [of Arista customers] tell [Arista] they appreciate the way they can leverage their deep [Cisco] IOS experience, as they can easily upgrade an aging [Cisco] Catalyst infrastructure to Arista");

Third-party reviewers confirmed that the virtual identity between Arista's interface and Cisco's copyrighted CLI enabled Cisco customers to switch seamlessly to Arista products. *See, e.g.,*

11

CISCO'S MOTION FOR SUMMARY JUDGMENT

Case No. 5:14-cv-05344-BLF

1

2

3      Arista also acknowledged that its rampant copying of Cisco's CLI provides ancillary

4   benefits—like freeing it from having to create its own user guides because Arista's customers

5   could simply use **Cisco's** user guides. *See*

6

7

8

9

10

11          2.      **Circumstantial Evidence Indisputably Shows Arista's Copying**

12      Even if the undisputed direct evidence did not overwhelmingly establish that Arista copied

13   Cisco's CLI (it does), the undisputed circumstantial evidence is independently sufficient to

14   warrant summary judgment on copying.  Under Ninth Circuit law, copying may be shown by

15   (i) access and (ii) substantial similarity to the copyrighted works.  *See, e.g.*, *Three Boys Music*

16   *Corp. v. Bolton*, 212 F.3d 477, 485-86 (9th Cir. 2000).  The stronger the proof of access, the less

17   similarity must be shown.  *See Benay v. Warner Bros. Entm't, Inc.*, 607 F.3d 620, 625 (9th Cir.

18   2010) ("Under the 'inverse ratio' rule, if a defendant had access to a copyrighted work, the

19   plaintiff may show infringement based on a lesser degree of similarity between the copyrighted

20   work and the allegedly infringing work.").

21      In this case, there is no dispute that Arista—founded by former Cisco executives—has had

22   access (indeed, possession) of Cisco's copyrighted works from Arista's founding in 2004 onward.

23   *See, e.g.,*

24

25

26

27

28

1

2

3

4

5

6

7

8       Given such indisputable evidence of Arista's access to Cisco's copyrighted works, only a

9   modest showing of "similarity" would be required to show copying.  *Benay*, 607 F.3d at 625 (9th

10  Cir. 2010).  And yet the evidence in this case shows ***overwhelming similarity*** between Cisco's and

11  Arista's works as to every aspect of Cisco's copyrighted CLI:

12      • For Arista's copying of Cisco CLI ***multi-word command-line expressions***:  *See*
         Almeroth Decl. Ex. 1 at ¶¶ 168-185 & Exhibit-Copying-2 (providing a list of
13        over 500 of Cisco's multi-word command-line expressions present in Arista's
         EOS); Almeroth Decl. Ex. 1 at ¶ 174 & Exhibit-Copying-7 (declaring that
14        Cisco's expert tested these command-line expressions on a working device
         running Arista's EOS, provided by Arista's counsel on this lawsuit, to ensure
15        they were supported by EOS, and providing a "log" of that activity).

16      • For Arista's use of the same ***"modes" and "prompts"*** used by Cisco CLI: *See*
         Almeroth Decl. Ex. 1 at ¶¶ 177-185 & Exhibit-Copying-4 (confirming Arista's
17        use of command modes and prompts present in Cisco CLI).

18      • For Arista's use of Cisco's ***command hierarchies***: *See* Almeroth Decl. Ex. 1 at
         ¶¶ 186-193 & Exhibit-Copying-5 (observing the same "hierarchies" between
19        Cisco versus Arista works, providing graphical representations of the same, and
20        providing a 101-page table showing overlapping hierarchies).

21      • For Arista's use of Cisco's ***command responses***: *See* Almeroth Decl. Ex. 1 at
         ¶¶ 194-220 (observing numerous instances in which Arista's EOS presents the
22        same screen content to a user as Cisco's IOS in response to the input of the
         same multi-word command-line expressions).

23      • For Arista's use of Cisco's ***HelpDesc*** content—

24

25

26

27

                                              CISCO'S MOTION FOR SUMMARY JUDGMENT

                                              Case No. 5:14-cv-05344-BLF

- For Arista's use of Cisco's **user guides and manuals**:  *See* Almeroth Decl. Ex. 1 at ¶ 160 (observing verbatim copying between Cisco versus Arista technical documentation, including grammatical errors by comparing Cisco IOS Configuration Fundamentals Command Reference at CF-522 (Apr. 2010) with Arista 4.13.6F Manual at 380 (Apr. 2014)); Almeroth Decl. Ex. 1 at ¶¶ 155-167 & Exhibit-Copying-1 (providing a 363-page chart showing similarities between Cisco versus Arista technical documentation).

## C.    Cisco Is Entitled To Summary Judgment Of No Fair Use

"Fair use" is an affirmative defense under the Copyright Act that requires the Court to consider and weigh four nonexclusive factors:  (i) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes; (ii) the nature of the copyrighted work; (iii) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and (iv) the effect of the use upon the potential market for or value of the copyrighted work.  17 U.S.C. § 107.  "Fair use is a mixed question of law and fact." *Harper & Row Publishers, Inc. v. Nation Enters.*, 471 U.S. 539, 560 (1985).  While Arista bears the burden on fair use, *see Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 590 (1994), Cisco respectfully submits that the undisputed evidence as to each and every fair-use factor warrants summary judgment that Arista cannot establish any defense of fair use.

### 1.    Arista's Purpose Is Commercial And Non-Transformative

The first fair-use factor involves two "sub-issues":  (i) "whether and to what extent the new work is transformative," and (ii) whether the infringer's use serves a commercial purpose.  *Oracle*, 750 F.3d  at 1374 (quoting *Campbell*, 510 U.S. at 579).  The undisputed evidence shows that Arista cannot satisfy either sub-factor.

#### (a)    Arista's Use Of Cisco's CLI Is Not "Transformative"

An infringing work is transformative if it "adds something new, with a further purpose or different character, altering the first with new expression, meaning or message." *Id.* (quoting *Campbell*, 510 U.S. at 579).  Infringing works may be transformative when "the works use copyrighted material for purposes distinct from the purpose of the original material." *Elvis Presley Enters., Inc. v. Passport Video*, 349 F.3d 622, 629 (9th Cir. 2003).  For example, the use of

1   copyrighted materials for purposes of "criticism, comment, news reporting, teaching…,

2   scholarship, or research"—the examples listed in the preamble to 17 U.S.C. § 107—may be

3   transformative.  *See Oracle*, 750 F.3d at 1372, 1374 (quoting *Campbell*, 510 U.S. at 578-79).

4        Arista's use of Cisco's copyrighted CLI is not transformative under these tests.  ***First***,

5   Arista cannot show that its EOS uses Cisco's copyrighted CLI for "purposes distinct from" the

6   purpose of Cisco's registered IOS.  *Elvis Presley*, 349 F.3d at 629.  Obviously, Arista is not

7   engaged in any paradigmatic transformative use like criticism, commentary or scholarship.

8   Rather, the sole purpose of Arista's use of Cisco CLI in its EOS is to directly compete with Cisco

9   in the sale of networking equipment (such as Ethernet switches and routers).  Moreover, Arista

10  uses copyrighted Cisco CLI for precisely the same purpose as Cisco, seeking to substitute Cisco

11  CLI wholesale into its products rather than transforming it in any way.  *See, e.g.,* ███████████

12  ██████████████████████████████████████████████████████████████████████████████

13  ████████████████████████████████████████████████████  Moreover, Arista copied

14  Cisco CLI with the express purpose that Arista's networking equipment would have the identical

15  "look and feel" for a user as Cisco's networking equipment, and then exploited that feature in its

16  marketing to Cisco's customers.  ████████████████████████████████████████████

17  ████████████████████████████████████████████████████████████████████████████████

18  ████████████████████████████████████████████████████████████████████████████████

19  ██████████████████  Ex. 30 at CSI-CLI-00540079 (Arista CTO Duda posting that Arista "wrote a

20  standard CLI that . . . retains familiar management commands" such that "80% [of Arista

21  customers] tell [Arista] they appreciate the way they can leverage their deep [Cisco] IOS

22  experience, as they can easily upgrade an aging [Cisco] Catalyst infrastructure to Arista"); Ex. 28

23  (Jayshree Ullal noting in an interview that "[A] Cisco CCIE expert would be able to use Arista

24  right away, because we have a similar command-line interface and operational look and feel.").

25       Arista thus cannot rely on the recent fair-use finding in *Oracle America, Inc. v. Google*

26  *Inc.*, No. 3:10-cv-03561-WHA (N.D. Cal.) on remand.  There, Judge Alsup found that a jury could

27  reasonably find Google's use of Oracle's copyrighted declaring code and application

28                               15

                                        CISCO'S MOTION FOR SUMMARY JUDGMENT

                                        Case No. 5:14-cv-05344-BLF

programming interface ("API") a transformative fair use because "[t]he copyrighted works were designed and used for desktop and laptop computers" whereas Google's accused use was "for the mobile smartphone platform." *Id.*, Dkt. 1988, at 14 (Jun. 8, 2016) ("Oracle JMOL Order"). Here, in sharp contrast, Cisco uses its copyrighted CLI to configure and manage the Ethernet switches it sells, and Arista's infringing works do the exact same thing for Ethernet switches offered for sale by Arista.

**Second**, Arista cannot show that its EOS has altered Cisco's copyrighted works "with new expression, meaning or message." *See Oracle*, 750 F.3d at 1374 ("A work is not transformative where the user 'makes no alteration to the *expressive content or message* of the original work.'") (quoting *Seltzer v. Green Day, Inc.*, 725 F.3d 1170, 1177 (9th Cir. 2013)). Arista's executives have repeatedly boasted of just the opposite; ███████████████████████████████████████████████████████████████ *see id.* Ex. 43 at CSI-CLI-01715090 (Arista PowerPoint: "Arista CLI commands are the same as cisco IOS"); ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████; Ex. 28 (Jayshree Ullal said in an interview that was published in NetworkWorld on February 22, 2013 that "a Cisco CCIE expert would be able to use Arista right away, because we have a similar command-line interface and operational look and feel."); ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

(b)    <u>Arista's Infringing Use Serves A Commercial Purpose</u>

A defendant's commercial purpose "tends to weigh against a finding of fair use." *Harper & Row*, 471 U.S. at 562. "The crux of the profit/nonprofit distinction is not whether the sole motive of the use is monetary gain but whether the user stands to profit from exploitation of the

1  copyrighted material without paying the customary price." *Id.*

2      Arista cannot dispute that its accused works serve a commercial purpose, namely profit-

3  seeking for Arista by using Cisco CLI to compete with Cisco for sales of networking products by

4  providing an identical user-interface experience. *See, e.g.*, Candido Decl. Exs. 32-36. Thus, the

5  purpose and character of Arista's infringing activity is purely profit-driven—aimed at undercutting

6  Cisco by exploiting Cisco's own original copyrighted material.

7      Again, Arista cannot rely upon *Oracle v. Google.* Judge Alsup there acknowledged that

8  Google's use of Oracle's API was ***not*** entirely commercial because Google was disseminating the

9  infringing works (Android source code) for free. Oracle JMOL Order at 12 ("[O]ur jury could

10 reasonably have found that Google's decision to make Android available open source and free for

11 all to use had non-commercial purposes as well (such as the general interest in sharing software

12 innovation)."). But Arista can point to no such facts here; Arista uses Cisco's CLI purely for its

13 own profit, selling its networking products to compete directly with Cisco.

14          2.    **Cisco's CLI Is Creative And Expressive In Nature**

15     The second factor in a fair-use inquiry, the nature of the copyrighted work, "turns on

16 whether the work is informational or creative." *Oracle*, 750 F.3d at 1375 (quoting *Worldwide*

17 *Church of God v. Phila. Church of God, Inc.*, 227 F.3d 1110, 1118 (9th Cir. 2000)). In the context

18 of copyrighted software, expressive elements enjoy greater protection than purely "functional

19 components" of the software. *Id.* (citing *Sega Enterprises v., Accolade, Inc.* , 977 F.2d 1510, 1526

20 (9th Cir. 1992). "Thus, where the nature of the [software] work is such that purely functional

21 elements exist in the work and it is necessary to copy the expressive elements in order to perform

22 those functions, consideration of this second factor arguably supports a finding that the use is

23 fair." *Id.*

24              (a)    Cisco's Copyrighted CLI Is Expressive, Not Functional

25     It is well-settled that "one's original expression is protected by copyright" and is not

26 functional "unless it is so inseparable from the underlying idea that there are no or very few other

27 ways of expressing it." *Tetris Holding, LLC v. Xio Interactive, Inc.*, 863 F. Supp. 2d 394, 408

28

1   (D.N.J. 2012).  The undisputed evidence shows that Cisco's engineers made creative choices in

2   selecting the multi-word command-line expressions, modes, prompts, hierarchies, command

3   responses, screen displays and "HelpDesc" command responses, and that the same functionality

4   could have been achieved by any of innumerable other creative choices.  *See, e.g.,* Ex. 44

5   (Lougheed Tr. at 168:21-169:16) (explaining that the exact same functionality that he invoked

6   when he created the "show hosts" command could have been accomplished with difference

7   expressive choices, such as "computers," "names," "systems," "network systems" and "end

8   systems"); Ex. 71 (Patil Tr. at 161:19-162:1, 186:7-11 & 187:1-9) ("intuitiveness, extensibility,

9   usability, aesthetics are all factors that we considered"); *see also* Section III.A.3, *ante* (collecting

10  evidence of the originality and subjectivity of Cisco's IOS materials).  Accordingly, Cisco's CLI

11  is creative, not functional.

12          Arista cannot dispute this point because its own executives and engineers have conceded

13  that the choice of unique multi-word command-line expressions in Cisco's CLI is subjective, not

14  functional, and that the exact same functionality within an operating system could be triggered by

15  using different words and different multi-word command-line expressions.  *See, e.g.*, Ex. 31 at

16  CSI-CLI00608716  (from Adam Sweeney: "I agree with CLI naming is [sic] very subjective");

17

18

19

20

21

22

23

24

25

26

27

28

CISCO'S MOTION FOR SUMMARY JUDGMENT

Case No. 5:14-cv-05344-BLF



. Indeed, other companies have created and implemented their own unique user interfaces without resorting to slavish copying of Cisco's CLI. *See e.g.*

        (b)    <u>Cisco's CLI Is Not An "Industry Standard"</u>

Arista's suggestions that Cisco CLI is supposedly an "industry standard," *see* Ex. 58 at Interrogatory No. 21 & Ex. 55 at Interrogatory No. 9, are legally irrelevant, s*ee Practice Mgmt.*

19

CISCO'S MOTION FOR SUMMARY JUDGMENT

Case No. 5:14-cv-05344-BLF

1  *Info. Corp. v. Am. Med. Ass'n,* 133 F.3d 1140, n.8 (9th Cir. 1998), but in any case factually

2  unsupportable.  **First**, as Arista's fact witnesses have repeatedly conceded, Cisco's CLI has never

3  been proposed or adopted by a standards-setting body like the IETF or the IEEE.  *See, e.g.*, Ex. 58

4  at Interrogatory No. 21; Ex. 55 at Interrogatory No. 9;

23                                                                    .  To the contrary, Arista has

24  repeatedly admitted that "industry standard" is just a "code word" for Cisco CLI.  *See, e.g.*, Ex. 66

1    ███████████████████████████████████████████████ Ex.

2    43 at CSI-CLI-01715090; Ex.  11 (Arista employee Benoit Sigoure wrote "Juniper's JunOS is

3    different enough from 'industry standard' (meaning: whatever Cisco did)…"); ████████████

4    ████████

5         **Second**, Cisco's CLI is not required for purposes of physical network interoperability.  To

6    the contrary, Arista witnesses have repeatedly conceded that the wording of a company's CLI has

7    no effect on the interoperability of networks.  *See, e.g.*, Ex. 58 at Interrogatory 21 at pp. 13-14; ██

8    ████████████████████████████████████████████████████████

9    ████████████████████████████████████████████████████████

10   ████████████████████████████████████████████████████████

11   ████████████████████████████████████████████████████████

12   ████████████████████████████████████████████████████████

13        **Third**, any suggestion that Cisco's CLI is somehow a "de facto" industry standard is

14   disproven by the undisputed evidence that Cisco's competitors use interfaces other than a

15   command-line interface.  *See, e.g.*, Ex. 59 (3Com, another competitor, has offered a menu-drive

16   interface, also different then a CLI); Ex. 60 (regarding Avaya's GUI).  Some of Cisco's

17   competitors that use command-line interfaces use command-line expressions and structures

18   wholly different from Cisco's CLI.  *See, e.g.*, ████████████████████████████

19   ████████████████████████████████████████████████████████

20   ████████████████████████████████████████████████████████

21   ████████████████████████████████████████████████████████

22   ████████████████████████████████████████████████████████

23   ████████████████████████████████████████████████████████

24   ████████████████████████████████████████████████████████

25   ████████████████████████████████████████████████████████

26   ████████████████████████████████████████████████████████

27   ████████████████████████████████████████████████████████

28

1  ████████████████████    Indeed, *Arista itself* uses a Linux-based operating system that does

2  not use any CLI, and 20% of its customers prefer that to Arista's infringing EOS using Cisco's

3  CLI.    *See, e.g.*, Ex. 30 at CSI-CLI-00540079.

4      Evidence of Cisco's historical documents (such as marketing brochures) in which Cisco

5  referred to its CLI as "industry standard" are not to the contrary, because the undisputed evidence

6  shows that "industry standard in that context is a marketing term intended to convey popularity

7  and/or high quality—like the term "gold standard."  Arista's witnesses have conceded that point.

8  *See, e.g.*, ████████████████████

9              3.        **Arista Copied Substantial Amounts Of Cisco's CLI**

10     To evaluate the third factor of a fair use inquiry, the "amount and substantiality of the

11 portion used" "is viewed in the context of the copyrighted work, not the infringing work."  *Oracle*,

12 750 F.3d at 1375.  Arista has admitted that what it copied from Cisco was *the heart of* Cisco's

13 copyrighted CLI.  *See, e.g.*, Ex. 28 (Arista's CEO: "a Cisco CCIE expert would be able to use

14 Arista right away, because we have a *similar command-line interface and operational look and

15 feel*"); ██████████████████████████████

16 ██████████████████████████████

17 ██████████████████████████████

18 ██████████████████████████████

19 ██████████████████████████    Indeed, in

20 2009, Arista went out of its way and *commissioned a study* to make sure that it was copying the

21 most important aspects of Cisco's CLI for purposes of the users.  ████████████████

22 ██████████████████████████████

23 ████████.[2]

24

25  _____

26  [2]  The firm that Arista commissioned to undertake that study was not the only third party that
   observed the substantiality of Arista's copying.  From an industry commentator: "Arista provides

27  a CISCO like CLI, when I say 'CISCO like' *I mean it's 95% the same commands…" Available at*
   (footnote continued)

28  02099-00004/8117426.1                                    22

Further confirming the substantiality of Arista's copying in this case is the large percentage of command-line expressions that Arista copied into its switches from Cisco. *See Oracle*, 750 F.3d at 1375 ("[T]he fact that a substantial portion of the infringing work was copied verbatim is evidence of the qualitative value of the copied material, both to the originator and to the plagiarist who seeks to profit from marketing someone else's copyrighted expression.") (quoting *Harper & Row*, 471 U.S. at 565).  When Arista first released EOS, that software supported only 189 command-line expressions.  101 of those expressions—***more than 53%*** of all command-line expressions supported by Arista—were copied from Cisco. *See* Almeroth Decl. Ex. 2 at ¶ 153. Since that time—including today—Arista's copying of multi-word command-line expressions from Cisco has comprised between 33% and 67% of all command-line expressions listed in Arista EOS technical documentation. *See id.*

Given the record in this case, Arista cannot deny that it copied vast quantities of Cisco's copyrighted materials.  For example:

- Arista copied over 500 multi-word command-line expressions from Cisco.

- Arista also copied 9 out of 9 modes in 15 different versions of EOS and 9 out of 9 prompts in 15 different versions of EOS.  Arista also copied 11 command expression hierarchies across 15 different versions of EOS.

- Arista copied over 600 command help screens across IOS and IOS-XR.  With respect to output displays, Cisco's expert provided 38 different examples of copied outputs copied into 11 different Arista user manuals and from 18 unique Cisco documents over time. *See* Almeroth Decl. Ex. 1 at Exhibit Copying-2. In total, there are 324 instances of Arista copying these 38 outputs into its documents █████████████████████████

- With respect to the copying of Cisco's technical documents (excluding the outputs discussed previously), Cisco has identified roughly 531 copying examples from 107 unique Cisco documents.  In total, this amounts to 2522 instances of Arista copying Cisco's technical documents.

See Almeroth Decl. Ex. 2 at ¶ 148; Almeroth Decl. Ex. 1 at Exhibit Copying-1, Exhibit Copying-2, Exhibit Copying-3, Exhibit Copying-4 (showing 9 modes and prompts), & Exhibit Copying-6.

---

https://cybermashup.com/2014/01/20/first-steps-with-arista-networks/ (viewed 5/27/2016) (emphasis added).  Candido Decl. Ex. 61 at p. 2.

CISCO'S MOTION FOR SUMMARY JUDGMENT

Case No. 5:14-cv-05344-BLF

1    Again, this case stands in sharp contrast to *Google v. Oracle*.  As to the third fair-use factor

2    in that case, Judge Alsup found that "our jury could reasonably have found that Google duplicated

3    the bare minimum of the 37 API packages, just enough to preserve inter-system consistency in

4    usage."  Oracle JMOL Order at 17.  Here, Arista executives and engineers have admitted that

5    Arista slavishly copied the entire user experience offered by Cisco CLI.  *See, e.g.,*

6

7

8

9        4.    **Arista's Copying Harms The Value Of Cisco's CLI**

10    The fourth factor in the fair-use inquiry focuses on "the effect of the [infringing] use upon

11    the potential market for or value of the copyrighted work."  *Harper & Row*, 471 U.S. at 566. "The

12    Supreme Court has said that this factor is "undoubtedly the single most important element of fair

13    use.'"  *Oracle*, 750 F.3d at 1376 (quoting *Harper & Row*, 471 U.S. at 566). This factor requires

14    courts to "consider not only the extent of market harm caused by the particular actions of the

15    alleged infringer, but also whether unrestricted and widespread conduct of the sort engaged in by

16    the defendant [] would result in a substantially adverse impact on the potential market for the

17    original."  *Campbell*, 510 U.S. at 590 (citation and quotation marks omitted).

18    Arista cannot dispute this factor.  While the parties will likely dispute at trial the amount of

19    ***damages*** and other remedies Cisco is entitled to receive from Arista to compensate for and deter

20    its blatant copying, there can be no material dispute that Arista is offering the copied EOS

21    software in order to sell Ethernet switches and routers in direct competition with Cisco's Ethernet

22    switches and routers.  Arista admits Cisco is a key competitor.  *See* Chevalier Decl. Ex. 1 at pp.

23    33-34.

24

25

26

27

28    02099-00004/8117426.1

24

1

2

3

4           Indeed, Arista

5  publicly acknowledges that it measures its own success in terms of market share taken from Cisco.

6  *E.g.*, Ex. 36 p. 5.  The same presentation shows that Arista's infringing conduct led to $838

7  million in revenue for fiscal year 2015 alone, producing a compound annual growth rate of 63.5%

8  for the company.  *Id.* at 26.

9          As to the fourth fair-use factor as with all the others, *Google v. Oracle* provides no support

10 to Arista.  In finding it reasonable to conclude that Google's infringement did not impair the

11 market value of Oracle's works, Judge Alsup noted that Oracle aimed its copyrighted works at the

12 desktop computer market while Google aimed its accused Android products at the totally separate

13 mobile smartphone market.  *See* Oracle JMOL Order at 8 ("[O]ur jury could reasonably have

14 found that use of [Oracle's code] in Android caused no harm to the market for the copyrighted

15 works, which were for desktop and laptop computers.").  Here, in sharp contrast, Cisco and Arista

16 compete directly as to the products that use Cisco's CLI; Arista uses Cisco CLI to compete head-

17 to-head with Cisco over the sale and servicing of Ethernet switches and routers.

18         Thus, taken together or separately, the four fair-use factors present an insurmountable

19 hurdle for Arista based on the undisputed facts already in the record.  This Court should decide the

20 issue now and enter summary judgment of no fair use.

21 **IV.    CONCLUSION**

22         For all these reasons, the Court should enter partial summary judgment for Cisco on

23 Count I, holding that, as a matter of law, Cisco has established copyrightability and copying, and

24 Arista cannot establish the affirmative defense of fair use.

25

26

27

28

Dated:  June 30, 2016

Respectfully submitted,

*/s/ Amy H. Candido*

Kathleen Sullivan (SBN 242261)
kathleensullivan@quinnemanuel.com
QUINN EMANUEL URQUHART &
SULLIVAN LLP
51 Madison Avenue, 22nd Floor
New York, NY 10010
Telephone: (212) 849-7000
Facsimile: (212) 849-7100

Sean S. Pak (SBN 219032)
seanpak@quinnemanuel.com
Amy H. Candido (SBN 237829)
amycandido@quinnemanuel.com
John M. Neukom (SBN 275887)
johnneukom@quinnemanuel.com.
QUINN EMANUEL URQUHART &
SULLIVAN LLP
50 California Street, 22nd Floor
San Francisco, CA 94111
Telephone: (415) 875-6600
Facsimile: (415) 875-6700

Mark Tung (SBN 245782)
marktung@quinnemanuel.com
QUINN EMANUEL URQUHART &
SULLIVAN LLP
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, CA 94065
Telephone: (650) 801-5000
Facsimile: (650) 801-5100

Steven Cherny *admitted pro hac vice)*
steven.cherny@kirkland.com
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900

Adam R. Alper (SBN 196834)
adam.alper@kirkland.com
KIRKLAND & ELLIS LLP
555 California Street
San Francisco, California  94104
Telephone: (415) 439-1400
Facsimile: (415) 439-1500

Michael W. De Vries (SBN 211001)
michael.devries@kirkland.com
KIRKLAND & ELLIS LLP

333 South Hope Street
Los Angeles, California 90071
Telephone: (213) 680-8400
Facsimile: (213) 680-8500

*Attorneys for Plaintiff Cisco Systems, Inc.*