Kathleen Sullivan (SBN 242261)
kathleensullivan@quinnemanuel.com
QUINN EMANUEL URQUHART & SULLIVAN LLP
51 Madison Avenue, 22nd Floor
New York, NY 10010
Telephone: (212) 849-7000
Facsimile: (212) 849-7100

Sean S. Pak (SBN 219032)
seanpak@quinnemanuel.com
Amy H. Candido (SBN 237829)
amycandido@quinnemanuel.com
John M. Neukom (SBN 275887)
johnneukom@quinnemanuel.com.
QUINN EMANUEL URQUHART & SULLIVAN LLP
50 California Street, 22nd Floor
San Francisco, CA 94111
Telephone: (415) 875-6600
Facsimile: (415) 875-6700

Steven Cherny *(admitted pro hac vice)*
steven.cherny@kirkland.com
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900

Adam R. Alper (SBN 196834)
adam.alper@kirkland.com
KIRKLAND & ELLIS LLP
555 California Street
San Francisco, California 94104
Telephone: (415) 439-1400
Facsimile: (415) 439-1500

Michael W. De Vries (SBN 211001)
michael.devries@kirkland.com
KIRKLAND & ELLIS LLP
333 South Hope Street
Los Angeles, California 90071
Telephone: (213) 680-8400
Facsimile: (213) 680-8500

*Attorneys for Plaintiff Cisco Systems, Inc.*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION**

CISCO SYSTEMS, INC.,

Plaintiff,

vs.

ARISTA NETWORKS, INC.,

Defendant.

CASE NO. 5:14-cv-5344-BLF (PSG)

**CISCO SYSTEMS, INC.'S OPPOSITION TO DEFENDANT ARISTA NETWORKS, INC.'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

Date: August 4, 2016
Time: 9:00 a.m.
Dep't: Courtroom 3, 5th Floor
Judge: Hon. Beth Labson Freeman

Date Filed: December 5, 2014

Trial Date: November 21, 2016

# TABLE OF CONTENTS

Page

I. Introduction ....... 1

II. Arista Is Not Entitled To Partial Summary Judgment ....... 3

A. Arista is Not Entitled to Summary Judgment on Originality ....... 3

1. Cisco's Multi-Word Command Expressions Are Presumed Original ....... 4

2. Cisco Has Adduced Ample Evidence That All Of Its Multi-Word Command Expressions Are Original And Creative ....... 5

(a) Documentary Evidence Showing Originality ....... 8

(b) Engineering Testimony Showing Originality ....... 11

B. Arista Is Not Entitled To Summary Judgment On Cisco's Hierarchies ....... 14

C. Arista Is Not Entitled To Summary Judgment On Cisco's Modes And Prompts ....... 18

D. Arista Is Not Entitled To Summary Judgment On Infringement Of The '526 Patent ....... 21

III. Conclusion ....... 25

# TABLE OF AUTHORITIES

**Page**

## Cases

*American Dental Association v. Delta Dental Plans Association*, 126 F.3d 977 (7th Cir. 1997) .......... 15

*Ashton-Tate Corp. v. Ross*, 728 F. Supp. 597 (N.D. Cal. 1989) .......... 17, 18

*Ashton-Tate Corp. v. Ross*, 916 F.2d 516 (9th Cir. 1990) .......... 18

*Atari Games Corp. v. Nintendo of America Inc.*, 975 F.2d 832 (Fed. Cir. 1992) .......... 15

*Baker v. Selden*, 101 U.S. 99 (1879) .......... 16

*Bikram's Yoga College of India v. Evolation Yoga*, 803 F.3d 1032 (9th Cir. 2015) .......... 16, 18

*Brighton Collectibles, Inc. v. RK Texas Leather Manufacturing*, 2012 WL 6553403 (S.D. Cal. Dec. 13, 2012) .......... 4

*CDN Inc. v. Kapes*, 197 F.3d 1256 (9th Cir. 1999) .......... 13, 19

*CJ Products LLC v. Snuggly Plushez LLC*, 809 F. Supp. 2d 127 (E.D.N.Y. 2011) .......... 4

*Cooling Systems and Flexibles v. Stuart Radiator*, 777 F.2d 485 (9th Cir. 1985) .......... 5

*Dream Games of Arizona, Inc. v. PC Onsite*, 561 F.3d 983 (9th Cir. 2009) .......... 17

*Feist Publ'ns, Inc. v. Rural Telegraph Serv. Co.*, 499 U.S. 340 (1991) .......... 5, 8

*Hutchins v. Zoll Medical Corp.*, 492 F.3d 1377 (Fed. Cir. 2007) .......... 19

*Johnson Controls, Inc. v. Phoenix Control Systems, Inc.*, 886 F.2d 1173 (9th Cir. 1989) .......... 1, 14

*Lamps Plus v. Seattle Lighting Fixture Co.*, 345 F.3d 1140 (9th Cir. 2003) .......... 3

*MeadWestVaco Corp. v. Rexam Beauty & Closures, Inc.*, 731 F.3d 1258 (Fed. Cir. 2013) .......... 25

*Mitel, Inc. v. Iqtel, Inc.*,
124 F.3d 1366 (10th Cir. 1997) .......... 17

*Narell v. Freeman*,
872 F.2d 907 (9th Cir. 1989) .......... 19

*Oracle America, Inc. v. Google, Inc.*
750 F.3d 1339 (Fed. Cir. 2014) .......... 1, 13, 17, 18, 19

*Religious Tech. Ctr. v. Netcom On-Line Commc'n Services, Inc.*,
923 F. Supp. 1231 (N.D. Cal. 1995) .......... 5

*Sega Enterprises, Ltd. v. Accolade, Inc.*,
977 F.2d 1510 (9th Cir. 1999) .......... 17

*Seltzer v. Sunbrock*,
22 F. Supp. 621 (S.D. Cal. 1938) .......... 16, 17

*Silicon Laboratories, Inc., v. Cresta Technology Corp.*,
2016 WL 836679 (N.D. Cal. Mar. 3. 2016) .......... 25

*Softel, Inc. v. Dragon Medical & Scientific Commmc'ns*,
118 F.3d 955 (2d Cir. 1997) .......... 13

*Sony Computer Entertainment, Inc. v. Connectix Corp.*,
203 F.3d 596 (9th Cir. 2000) .......... 17

*Torah Soft Ltd. v. Drosnin*,
136 F. Supp. 2d 276 (S.D.N.Y. 2001) .......... 20

**Statutes**

37 C.F.R. § 202.1(a) .......... 19

**Other Authorities**

5 *Patry on Copyright* (March 2016) § 17:109 .......... 5

Plaintiff Cisco Systems, Inc. ("Cisco") hereby respectfully opposes Defendant Arista's ("Arista") Motion for Partial Summary Judgment (Dkt. 329, "Mot.") based on the Memorandum of Points and Authorities below; the Declarations of Kevin Almeroth, Kevin Jeffay and John Neukom that are being filed herewith; and such other and further papers, evidence and argument as may be submitted to the Court in connection with the hearing on this Motion.

## I.    Introduction

Arista's Motion mischaracterizes Cisco's copyright case as thousands of individual copyright claims based on thousands of discrete, individual commands—or even discrete individual phrases (such as "show policy-map interface control-plane"), individual words (such as "show"), and individual characters or keyboard strokes (such as the ">" and "#" signs). *See* Mot. 3, 4. In fact, Cisco claims that Arista engaged in massive, intentional and comprehensive copying of Cisco's ***copyrighted command-line interface and associated ancillary materials*** (referred to collectively here for simplicity as "CLI")—comprised of multi-word command-line expressions, hierarchies, modes, prompts, and user helpscreens and other documentation that give Cisco's user experience its distinctive look and feel. That CLI is expressed in literal and non-literal form in Cisco's computer programs (such as the "IOS" operating system) and related documentation.

There is no doubt that such a "user interface" enjoys copyright protection. *Johnson Controls, Inc. v. Phoenix Control Systems, Inc.*, 886 F. 2d 1173, 1175 (9th Cir. 1989) (holding that copyright protection extends to computer programs, including their literal and non-literal components, and identifying a computer program's "user interface" as an example of a copyright-protectable aspect of the work); *see also Oracle America, Inc. v. Google, Inc.*, 750 F.3d 1339, 1355-56 (Fed. Cir. 2014). And there is no doubt that Arista deliberately copied that interface, as Arista executives and engineers have admitted. *See* Dkt. 64 ("SAC") at ¶¶ 7-8 (quoting public statements by Arista executives, including that "a Cisco CCIE expert would be able to use Arista right away, because we have a similar command-line interface and operational look and feel," and "our [Arista's] switches provide a familiar management interface so [Arista customers'] existing

tools and processes… continue to work just as they did before"); *see also* Exh. 1[1] at 236:4-17 Exh. 2 at ARISTANDCA10113782 Exh. 3 at ARISTANDCA12228927 Exh. 4 at ANI-ITC-944_945-3927205 Dkt. 346-2 (filed under seal) at 346:5-350:4 Were any additional proof of copying needed (it is not), the substantial similarities between Arista's and Cisco's works are overwhelming, as Cisco showed in its Motion for Partial Summary Judgment (Dkt. 348 at 9-14, "Cisco Mot."), and as Arista does not contest here.

Arista's "slavish" copying includes (i) over 500 multi-word command expressions that Arista copied verbatim from Cisco's CLI (SAC at ¶ 51); (ii) dozens of command hierarchies, sub-hierarchies and sub-sub-hierarchies arranged in Cisco's CLI in a particular way and comprised of hundreds of multi-word command expressions, all copied by Arista (SAC at ¶ 52 and Cisco Mot. 3); (iii) command modes and prompts copied by Arista (SAC at ¶ 54 and Cisco Mot. 4); (iv) command responses and screen displays that are identical between the companies' user interfaces (Cisco Mot. 4); (v) over 400 "HelpDesc" command responses copied from Cisco's source code into Arista's source code (Cisco Mot. 4); and (vi) hundreds of instances of copied language from user guides and manuals (SAC at ¶¶ 55-56 and Cisco Mot. 4).

---

[1] All citations to "Exhibit _" or "Exh. _" refer to the exhibits attached to the Declaration of John Neukom (filed herewith).

Lacking any answer to this evidence of its ***copying***, Arista moves for partial summary judgment on Cisco's copyright claim only on the ***protectability*** of a portion of the individual elements of Cisco's copyrighted works taken in isolation—198 of Cisco's 500+ multi-word command expressions, Cisco's CLI-related hierarchies and Cisco's CLI-related modes and prompts—arguing that each is either unoriginal or unprotectable. This piecemeal approach to copyrightability is not only inconsistent with Cisco's allegations in this case, it is also contrary to copyright law. Even the authorities cited by Arista establish that it is Arista's burden to present evidence showing a lack of originality or protectability for the copyrighted work that is infringed (here, Cisco's CLI user interface), not Cisco's burden to prove originality or protectability for every individual component (or phrase or word) within the work. *See Lamps Plus v. Seattle Lighting Fixture Co.*, 345 F.3d 1140, 1145-46 (9th Cir. 2003). But even if the Court entertains Arista's "per element" approach to copyrightability, and even if the Court flipped the burden onto Cisco to prove the protectability of such elements, the Motion still should be denied, as Cisco has adduced more than ample evidence of protectability as to each element.

The Court should also deny Arista's Motion insofar as it seeks partial summary judgment of non-infringement of the '526 patent. Arista so moves by challenging Cisco's proof that Arista's products practice a single limitation of the asserted patent claims. And yet Arista's Motion fails to address Cisco's evidence for the challenged limitation as presented by Cisco's expert, Kevin Jeffay, based on his review of (*inter alia*) Arista's source code.

## II. Arista Is Not Entitled To Partial Summary Judgment

### A. Arista is Not Entitled to Summary Judgment on Originality

Arista argues that 198 (of more than 500) of Cisco's protected multi-word command expressions should be excluded from this case because they were first included in Cisco computer programs that were released publicly five years or more before Cisco filed corresponding registrations with the Copyright Office. *See* Mot. 5-10. But Arista is incorrect to suggest that "late" copyright registrations may not receive a presumption of validity. To the contrary, as Cisco demonstrated in its own motion (Cisco Mot. 5-6), the presumption of validity applies to a

collection of copyright registrations covering the same or related products, even if some particular registrations were filed more than five years after the release of individual product versions.

**1. Cisco's Multi-Word Command Expressions Are Presumed Original**

Arista is incorrect to argue (Mot. 6-7) that Cisco may not receive the statutory presumption of validity (including originality) for any asserted elements of its copyrighted works unless Cisco is able to show that such elements were first included in Cisco computer programs that were registered with the Copyright Office within five years of the programs' public release. To the contrary, copyrighted works are routinely afforded the benefit of the statutory presumption of validity even if registered outside the five-year period, so long as they comprise part of the same product line as works registered within that period. *See, e.g.*, *CJ Products LLC v. Snuggly Plushez LLC*, 809 F. Supp. 2d 127, 143 (E.D.N.Y. 2011) (finding that two copyright registrations—both filed outside of the five-year period—constituted *prima facie* evidence of validity given that eight other registrations for works in the same product line were filed within the five-year period); *see also Brighton Collectibles, Inc. v. RK Texas Leather Mfg.*, 2012 WL 6553403, at *2 (S.D. Cal. Dec. 13, 2012) ("Most courts conclude that untimely certificates constitute *prima facie* evidence.").

In this case, Cisco's claim for copyright infringement is rooted in 26 copyright registrations, each corresponding to successive versions of Cisco's operating systems over time: Cisco IOS 11.0 through 15.4, Cisco IOS XR 3.0 through 5.2, Cisco IOS XE 2.1 through 3.5, and Cisco NX-OS 4.0 through 6.2. *See* SAC at ¶ 25; *id.* at Exhs. 3-28 (assigned Docket Nos.64-3 through 64-28) (attaching those copyright registrations). Twenty of the 26 registrations were indisputably filed within five years of the public release dates for Cisco's registered computer programs. Exh. 5. In light of those undisputed facts, and the closely related nature of Cisco's registered computer programs over time, Cisco is entitled to a presumption of validity for all 26 copyright registrations, and thus is entitled to a presumption of originality for all 500+ multi-word command expressions contained within those registrations.

The case law authorities cited by Arista are not to the contrary. In fact, those decisions make clear that it is Arista's burden to come forward with evidence suggesting that Cisco's certificates for the six "late" registrations are somehow invalid and thus should not be entitled to the presumption. 5 *Patry on Copyright* (March 2016) § 17:109 (providing that the presumption of validity applies to later-filed certificates unless the infringer establishes some basis for doubting validity); *see also Religious Tech. Ctr. v. Netcom On-Line Commc'n Servs., Inc.*, 923 F. Supp. 1231, 1242 (N.D. Cal. 1995) (finding that later-filed registrations constituted "strong evidence of the validity" of claimed copyrights where the defendant failed to make a "persuasive challenge to the validity of the copyrights"). As Arista has failed to meet this burden, all of Cisco's copyright registrations are entitled to a presumption of validity, which, as discussed below, Arista has failed to rebut.

Similarly, Arista's reference to *Cooling Systems and Flexibles v. Stuart Radiator*, 777 F.2d 485 (9th Cir. 1985) does not support its argument. In that case, the copyright holder failed to include a ***copyright notice*** in the original publication of its catalog, resulting in the original catalog falling into the public domain (a "notice" requirement subsequently removed by Congress in the Berne Convention Implementation Act of 1988). *Id.* at 490. Later, the copyright holder attempted to claim protection on elements from the original work based on a later version of the catalog that was published with a copyright notice. *Id.* Here, by contrast, Arista has not argued that any of Cisco's copyrighted works are in the public domain, or that Cisco's copyright certificates are somehow defective. Thus, Cisco's works registered after five years also should be entitled to the presumption of validity and originality.

### 2. Cisco Has Adduced Ample Evidence That All Of Its Multi-Word Command Expressions Are Original And Creative

Even apart from the presumption of validity, and thus originality and creativity, that applies for the 198 multi-word command expressions now challenged by Arista, Arista's Motion should be denied because Cisco has adduced more than sufficient evidence to defeat summary judgment on the originality and creativity of those expressions. In fact, the evidence establishes that Cisco's Motion for Partial Summary Judgment (Dkt. 348) should be granted on these issues.

Arista does not dispute that the standard for showing originality is low. *See Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 345 (1991) (holding that "originality" means simply that the work was not actually copied, and shows a "minimal degree of creativity" that is described as being "extremely low," and "quite easily" established "no matter how crude, humble, or obvious it might be").

Cisco's multi-word command expressions more than satisfy that standard. They are original and reflect the creativity of Cisco engineers, because they show a "distinctive and elegant syntax and structure for the commands that are used by the [Cisco] IOS CLI." Almeroth Exh. 1 at ¶ 53; *see also id.* at ¶¶ 53-57 (describing the syntax for Cisco's multi-word command expressions); SAC at Exh. 1 (listing the 500+ commands copied by Arista). The composition of the commands—including the selection and arrangement of words by Cisco engineers—shows creativity through the exercise of subjective and professional judgment. *See, e.g.*, Almeroth Exh. 1 at ¶ 101 ("[D]esigning a command syntax for a particular function is a subjective exercise that requires independent judgment of the author and numerous creative and expressive choices…. The author must determine what order to place the words in and the relationship, if any, that the words should have with one another. All of those decisions are left to the subjective judgement and creativity of the command author…. Choosing the words and the arrangement and the organization of those words is where the creativity lies."); *id.* at ¶ 110 ("[W]hen the architects of Cisco's IOS CLI decided to include a particular set of commands in the platform and to give the commands particular names and associated modes, they chose from a wide range of expressive options…. [they] did not have to include for technical reasons the specific words that are contained in the 500+ asserted command expressions. They were creative choices.").

This holds true even for multi-word command expressions that start with individual "keywords" that Arista has attacked as part of its strategy to try to pick apart Cisco's copyrighted works into thousands of sub-parts. *See, e.g.*, Exh. 38 (11/15/15 deposition transcript of Cisco's founding engineer, Kirk Lougheed) at 166:24-168:19 ("Q. And tell me about the process whereby you selected the word 'show.' A…. I had a number of possibilities. There was 'show,' there was

'display,' there was 'print,' there was 'list,' there was 'dump.' All sorts of reasonable possibilities. And the one that appealed to me was 'show.'… It appealed to me aesthetically. I had to pick something, and that one—that one appealed to me at that time."); *see also* Almeroth Exh. 1 at ¶ 111 ("There are many different ways to implement that idea and many different ways to even express that idea. For example, the word 'display,' 'print,' 'watch,' 'view,' or 'info' are equally sufficient ways to express this idea. Other words such as 'steve' or 'book' or 'phone' would be used just as well—a computer can recognize any combination of letters and numbers.").

Furthermore, numerous Arista executives and engineers have admitted the subjectivity, originality and expressiveness of Cisco's multi-word commands. *See, e.g.*, Exh. 51 at 175:15-23 [REDACTED] *id.* at 217:12-20 [REDACTED] Exh. 52 at 148:19-149:11, 150:4-25 [REDACTED]

Indeed, because formulating any one of Cisco's multi-word command expressions involved subjective and professional judgment, Cisco developed an internal working group called the "Parser Police" so that Cisco engineers could debate which particular expressions to select. If Cisco was simply copying from a third party, or if creating its multi-word command expressions did not require creative decisions, the existence of Parser Police and the debates it sparked would make no sense. As recalled by [REDACTED]

Exh. 1 at 135:18-136:12, 137:11-138:1
*see also* Exh. 51 at 184:5-185:18

**(a) Documentary Evidence Showing Originality**

In addition to the fact evidence (from Arista executives) and expert evidence addressed above, Cisco can also prove the originality of its multi-word command expressions through historical documentation. Cisco has identified origination information on a per-command and per-engineer basis, and furthermore provided "pin cites" to business records reflecting the origination of each multi-word command expression. Ex. 6. In its Motion, Arista barely mentions this evidence, even though it pertains to each of the 500+ multi-word command expressions at issue in this case, including the 198 commands Arista now challenges.

These documents show Cisco engineers over the past 25 years proposing, explaining, inviting comments on, and even debating, what particular multi-word expressions to employ within Cisco's CLI. *See post* (citing to Exhs. 7-35). Even for the historical documents that are less expository—for example, relatively simple entries indicating that engineers were implementing the multi-word command expressions in Cisco's source code but without internal debates about the wording of the command expression—that itself is evidence of creation. And ***not one*** of these documents includes even a suggestion that any Cisco engineer ever chose a particular multi-word command expression based on its prior use or previous invention by another. *See Feist*, 499 U.S. at 345 ("Original, as the term is used in copyright, means only that the work was independently

created by the author (as opposed to copied from other works)…")

For example, Cisco alleges that its claim of copyright infringement is supported by Arista's verbatim copying of (*inter alia*) the multi-word command expressions "show dot1x statistics" and "dot1x timeout reauth-period." SAC at Exh. 1. As documentation of its creation of those particular commands, Cisco identified a May 24, 2001, email from its historical records. Exh. 6 at 6, 25 (citing CSI-CLI-00608684). That email does ***not*** indicate that Cisco's engineers copied these commands. Instead, it shows an internal proposal and invitation to debate the specific wording of the commands, without any mention of third-party CLI materials. *See* Exh. 7 (from Cisco engineer Ramesh Ponnapalli: "Hi Parse Police [the internal Cisco discussion group for the debate and selection of wording for CLI commands], [h]ere is the list of updated dot1x CLI commands. Pls go through and make ur comments…"). To be clear, both of these commands are included in Arista's list of 198 commands for which Cisco (supposedly) has no evidence of origination. *See* Docket No. 329-15.

Other examples of documentary evidence to defeat Arista's originality challenges to 198 of Cisco's multi-word command expressions include:

1. To establish the originality of the command expression "switchport backup interface," one of the 198 commands challenged by Arista's Motion, Cisco identified historical documentation for the creation of that command. Exh. 6 at 41 (citing CSI-CLI-00608716). That April 2004 email shows a Cisco engineer (Adam Sweeney, who is now Arista's Vice President of Engineering) debating and helping to select the expression of the command based on his subjective opinion about what expression was best. Exh. 8 ("I disagree about how it should be named in the CLI… ***In my opinion***, the very natural syntax for this command in IOS is: switchpoint backup interface… I agree that CLI naming is ***very subjective***…") (emphasis added).

2. To establish the originality of the command expression "enable secret," one of the 198 commands challenged by Arista's Motion, Cisco identified historical documentation for the creation of that command. Exh. 6 at 7 (citing CSI-CLI-00608741). That document shows a thoughtful explanation of the engineer's subjective choice for the wording "enable secret." Exh. 9 (discussing the "Compatibility Issues" for the new command expression, including a desire to be "backwards compatible" with other Cisco CLI commands, and addressing the "Look and Feel" of the new, proposed command expression).

3. To establish the originality of the command expression "ipv6 nd router-preference," one of the 198 commands challenged by Arista's Motion, Cisco identified historical

documentation for the creation of that command. Exh. 6 at 16 (citing CSI-CLI-00608720). That document shows a Cisco engineer proposing the "ipv6 nd router-reference" expression following a group debate about the preferred arrangement of words for the expression. Exh. 10 ("This command was previously submitted for review with the proposed syntax 'ipv6 nd ra-preference.' Following suggestions from this list, that proposed syntax has been dropped.").

4. To establish the originality of the command expression "logging host," one of the 198 commands challenged by Arista's Motion, Cisco identified historical documentation for the creation of that command. Exh. 6 at 19 (citing CSI-CLI-00608661). That documentation shows a Cisco engineer proposing and explaining his subjective rationale for the command. Exh. 11 ("I suggest 'logging host…' … Even when it's a 'server,' it's still a 'host' in internet parlance. It's also shorter to type, and it meshes nicely with the typical CNAME for a syslog host on a network… This is obvious to me, but it ***might not be so obvious to other users***.") (emphasis added).

To repeat this same exercise for all 198 multi-word command expressions that Arista has challenged would take more than 25 pages. Cisco refers the Court to additional examples of Cisco business records, which show Cisco engineers proposing, explaining, debating and/or implementing Cisco's multi-word command expressions without any mention of copying such expressions from others: Exh. 12 (June 2002 email proposal for the "area default-cost (OSPFv3)" command); Exh. 13 (April 1996 email proposal for the "area nssa" and "area nssa default-information-originate" commands); Exh. 14 (February 2007 email proposal for the "bgp listen limit" command); Exh. 15 (April 1996 email proposal for the "clear ip nat translation," "show ip nat translations," "ip nat pool," "ip nat translation tcp-timeout" and "ip nat translation udp-timeout" commands); Exh. 16 (April 2002 proposal for the "clear spanning-tree counters," "show spanning-tree mst configuration" and "show spanning-tree mst interface" commands); Exh. 17 at 5 (September 2006 proposal for the "ip ospf shutdown" command); Exh. 18 (proposal for the "ipv6 nd ra interval" and "ipv6 nd ra lifetime" commands); Exh. 19 (October 2005 email proposal for the "lacp rate" command); Exh. 20 (September 2001 email proposal for the "mac acces-group" command); Exh. 21 (March 1999 proposal for the "neighbor remote-as" command); Exh. 22 (proposal for "neighbor route-map" and "route-map" commands); Exh. 23 (July 2004 email proposal for the "port-channel min-links" command); Exh. 24 (June 1996 proposal for the "radius-server deadtime" command); Exh. 25 (May 1995 proposal for the "radius-server host," "radius-server key," "radius-server retransmit" and "radius-server timeout" commands); Exh. 26 (proposal

for the “show interfaces switchport backup” command); Exh. 27 (February 2003 email proposal for the “show ip igmp snooping querier” command); Exh. 28 (May 2001 proposal for the “show lacp counters” and “show lacp neighbor” commands); Exh. 29 (proposal for the “show mac access-lists” command); Exh. 30 (September 1998 email proposal for the “show route-map” command); Exh. 31 (proposal for the “show spanning-tree interface” command); Exh. 32 (February 1996 email proposal for the “show tacacs” command); Exh. 33 (November 2001 email proposal for the “show vlan summary” command); Exh. 34 (August 2004 email proposal for the “show vrf,” “vrf definition,” and “vrf forwarding” commands); Exh. 35 (February 2005 email proposal for the “spanning-tree transmit hold-count” command).

Not only do these historical documents evidence the creative work of Cisco engineers, originating Cisco’s multi-word command expressions over decades, they also stand in stark contrast to Arista’s internal documents regarding its selection of the exact same multi-word command expressions. Those Arista documents boil down to: copy Cisco. *See, e.g.*, Exh. 36 [REDACTED] Exh. 37 [REDACTED] *see also* Cisco Mot. 3-6 (evidence of copying). In sum, Cisco engineers originated and Arista engineers later copied the multi-word command expressions at issue in this case.

**(b) Engineering Testimony Showing Originality**

Providing further evidence of originality, numerous Cisco engineers (past and present) have answered Arista’s deposition questions challenging their creation of Cisco’s asserted multi-word command expressions. That testimony shows not only that Cisco’s engineers in fact created these commands, but furthermore did so without copying multi-word command expressions from others. Such testimony includes: Exh. 38 (11/15/15 deposition transcript of Cisco’s founding engineer, Kirk Lougheed) at 154:11-155:21 (“Q. [W]hat’s aesthetically pleasing about this command expression ‘interface Ethernet’? A…. I could very well have made the choice to write

that as, on one line, for example, 'interface Ethernet zero address"… Going outside into Cisco, you could have 'interface Ethernet zero.'… I could have 'interface Ethernet zero DECnet' and have a bunch of DECnet keywords underneath that…. I made the aesthetic choice of saying—of turning the word 'interface'—which I could have chosen something like 'IF' or 'net-in' or something like that, but I chose 'interface'—I like writing words out…"); *id.* at 141:7-142:16 (for "ip access list"—"It was my choice to use that description… I do not believe I had heard the term before"); *id.* at 142:18-143:6 (for "ip access group": "Q. Who coined that term, to your knowledge, do you know? A. I did."); *id.* at 145:3-25 (following the instruction from Arista's counsel: "Tell me what, if anything, was creative about your decision to use the term 'IP routing' as a CLI command."); *id.* at 129:5-131:7 (testifying that he chose the expression for the command "ip address": "that gave a very—what I thought was a very elegant, symmetric, elegant way of referring to different protocols within a multi-protocol router."); *id.* at 131:9-135:13 (for "ip host": "That was the aesthetic choice I made."); *id.* at 168:21-169:16 ("Q. What about the term 'show hosts'? Can you tell me the creative process that went into choosing that command? A. So I wanted to see the names of the computers that were on the network…. I could have said something like 'computers.' I could have said something like 'names,' 'systems,' 'network systems.' Some people thought 'end systems' was a good thing to call—to distinguish between computers and routers. 'Host' was what I ended up choosing."); *id.* at 166:24-168:19 (for commands and the command hierarchy with the root word "show": "I had a number of possibilities. There was 'show,' there was 'display,' there was 'print,' there was 'list,' there was 'dump'… And the one that appealed to me was 'show.'… It appealed to me aesthetically. I had to pick something, and that one—that one appealed to me at that time."); *id.* at 179:22-181:1 (testifying to his creation of the command expression "distance bgp" and answering the question "How did you come up with that term?"); *id.* at 183:22-184:17 ("Q. Did you come up with that command, 'IPb6 address'? A. Yes."); *id.* at 185:2-186:5 ("Q. Did you compose the command 'timers basic RIP'? A. I believe I did."). This list could go on and on, refuting Arista's attempt to challenge originality for these

multi-word command expressions that were created by Cisco over the past 30 years.[2]

None of these engineers questioned by Arista's counsel testified that he copied any multi-word command expressions from third parties. And the fact that some of the multi-word command expressions included ***individual words*** already known in the industry cannot render the original and creative ***multi-word*** command expressions unprotected under copyright law. *Oracle*, 750 F.3d at 1363 (holding that "an original combination of elements can be copyrightable" even if some element of that combination is unoriginal) (citing *Softel, Inc. v. Dragon Med. & Scientific Commmc'ns*, 118 F.3d 955, 964 (2d Cir. 1997)).

As confirmed by both documentary and testimonial evidence, Cisco's multi-word commands expressions were chosen and weighed with creativity and professional judgment by Cisco engineers through a subjective (and sometimes contentious) selection process, even when some of those expressions used individual words or abbreviations known in the industry. *See, e.g., CDN Inc. v. Kapes,* 197 F.3d 1256, 1259-60 (9th Cir. 1999) ("[t]his [creative] spark glows in CDN's prices, which are compilations of data chosen and weighed with creativity and judgment").

---

[2] *See, e.g.*, *id.* at 166:2-168:19 (testifying to Cisco's creation of "show users"); *id.* at 181:15-23 (same for "boot system"); *id.* at 165:11-21 (same for "terminal length"); Exh. 39 (4/4/16 Lougheed deposition transcript) at 335:22-339:9 (same for "show spanning-tree" commands); *id.* at 340:7-342:25 (same for "timers bgp"); Ex. 40 (deposition transcript of Cisco engineer Abhay Roy) at 23:16-26:14 (testifying to his and others' roles in the creation of the command "bfd all-interfaces," including the discussions that typically occurred within Cisco and the "Parser Police" email alias, an internal discussion group for debating and selecting how to express particular multi-word commands); *id.* at 72:8-75:4 (same for "ip ospf authentication"); *id.* at 96:10-97:17 (same for "ip ospf bfd"); *id.* at 103:5-104:9 (same for "ipv6 ospf area"); *id.* at 108:24-109:23 (same for the "ipv6 ospf" command set); *id.* at 128:11-129:4 (same for "log-adjacency-changes"); *id.* at 145:9-14 (same for "maximum-paths (OSPFv3)"); *id.* at 147:6-12 (same for "passive-interface (OSPFv3)"); *id.* at 149:7-10 (same for "router-id (OSPFv3)"); *id.* at 152:5-154:3 (same for "show ipv6 ospf"); Exh. 41 (deposition transcript of former Cisco engineer Devadas Patil) at 187:13-189-20 (testifying to Cisco's creation of the command expression "clear lldp" commands); *id.* at 193:7-14 (same for "lldp holdtime"); *id.* at 164:7-165:4 (same for "lldp receive"); *id.* at 194:8-199:9 (same for all multi-word command expressions associated with Mr. Patil); Exh. 42 (deposition transcript of former Cisco engineer Greg Satz) at 98:23-101:3 (testifying to Cisco's creation of the "terminal monitor" command); Exh. 43 (3/31/16 deposition transcript of Cisco engineer Phil Remaker) at 101:19-103:16 (testifying to Cisco's creation of the command "show inventory"); *see also* Almeroth Exh. 1 at ¶¶ 102-107 (collecting testimony from past and present Cisco engineers regarding their creation of multi-word command expressions).

**B. Arista Is Not Entitled To Summary Judgment On Cisco's Hierarchies**

Arista's request (Mot. 11-16) for summary judgment that Cisco's "hierarchies" are not copyrightable mischaracterizes Cisco's hierarchy allegations as seeking to protect the "idea of using a tree structure to group and organize commands by their common first word." Mot. 15. Cisco does not claim copyright on the idea of hierarchical commands. Rather, Cisco seeks copyright protection for the particular expression and hierarchical organization of its particular multi-word commands as contained in Cisco's copyrighted works, which Arista admittedly copied verbatim into its infringing works. SAC at ¶ 52. As explained in "exemplary" fashion in Cisco's Complaint, Arista copied not just the top-level directory of Cisco's commands (*e.g.*, "show") but also second-level directories (*e.g.*, "ip" and "ipv6" located within the "show" directory) and lower-level directories (*e.g.*, "bgp" and "ospf" located within the "ip" sub-directory, located in turn within the "show" directory). *Id.*; *see also* Exh. 46 at 7 ("Because Cisco's command expressions are organized hierarchically, the copying of Cisco's command expressions, described in Exhibit B, itself reflects Arista's copying of Cisco's command hierarchies."); Exh. 47 (showing over 500 multi-word command expressions copied verbatim by Arista, hundreds of which show hierarchical and sub-hierarchical groupings by sharing root words and root-word combinations); Exh. 48 (showing an exemplary "tree structure" for the same hierarchy and multiple sub-hierarchies created by Cisco and copied by Arista); Exh. 49 (showing pictorial representations of the hierarchies created by Cisco's CLI commands, copied by Arista); Almeroth Exh. 1 at ¶¶ 54-57 (explaining and providing pictorial representations of Cisco's hierarchies as created by particular multi-word command expressions). Thus, Arista did not just randomly pluck some of Cisco's commands or create just any hierarchy; instead, Arista verbatim copied both the multi-word command expressions themselves and Cisco's original organization of them into particular hierarchies.

There is no question that a computer program's structure, sequence, and organization may be protected by copyright. *See Johnson Controls, Inc. v. Phoenix Control Systems, Inc.*, 886 F.2d 1173, 1175–76 (9th Cir. 1989). To claim copyright protection in its hierarchy, Cisco need show

only that its organization and sequencing of its commands represent creative choices. For instance, in *Atari Games Corp. v. Nintendo of America Inc.*, the Federal Circuit, applying Ninth Circuit law, held that "Nintendo incorporated within the 10NES program creative organization and sequencing," which Nintendo could "protect . . . under copyright." 975 F.2d 832, 840 (Fed. Cir. 1992). In doing so, the Federal Circuit relied on the fact that Nintendo "chose arbitrary programming instructions and arranged them in a ***unique sequence*** to create a purely arbitrary data stream." *Id.* (emphasis added); *cf. American Dental Ass'n v. Delta Dental Plans Ass'n*, 126 F.3d 977 (7th Cir. 1997) (holding a taxonomy of dental procedures protectable by copyright as there are "a dozen different ways" to arrange the same information).

Under this settled standard, Cisco has adduced ample evidence to show that its particular hierarchical organization of its commands involved creativity. The evidence already before this Court shows that Cisco could have organized its multi-word command expressions in any number of ways, making its particular way of arranging those expressions protectable. *See, e.g.*, Almeroth Exh. 1 at ¶ 113 (opining that the "decision to organize Cisco's IOS CLI commands into the designers' chosen hierarchy reflects the original choices of the designers" and providing a hierarchy example for "show," sub-hierarchies such as for "aaa" and "ip" and "storm-control" and sub-sub-hierarchies below that such as for "method-list" and "access-list"); *id.* at ¶ 114 ("The hierarchy conveys to a user an aesthetic sense of the set of choices, *i.e.*, what is possible and what is not. In some cases (*e.g.*, the use of 'access-list' as an option under multiple higher level tokens), the hierarchy helps to organize choices into parallel possibilities."); *id.* at ¶ 115 ("By branching initially on the dimension of 'show' and then building out the hierarchy from there, the designers created an organizational structural that is aesthetically pleasing, easy to understand, and easier to remember (based on the subjective belief and professional judgment of Cisco's designers)."); *see also* Exh. 38 at 128:10-129:19 (Cisco's founding engineer, testifying about his creation of early command hierarchies for Cisco and his desire to achieve an "elegant" and "symmetric hierarchy").

Arista's reference to the "idea/expression dichotomy" (Mot. 11-14) does not change the analysis, primarily because Arista mischaracterizes Cisco's hierarchy allegations and fails to

appreciate how this case is distinguishable from the cases cited by Arista. For example, in *Bikram's Yoga College of India v. Evolation Yoga*, the plaintiff published a copyrighted book in 1979 describing a series of physical poses and movements (the "Sequence"). 803 F.3d 1032, 1035 (9th Cir. 2015). The parties did not contest that the expressions contained in that 1979 book were copyrightable. The question was whether the plaintiff could use his copyrighted 1979 book to stop others from teaching and actually performing the Sequence—the physical poses and movements described in his book. The court found that the physical poses and movements of the Sequence (unlike the description of the Sequence in Bikram's 1979 book) were not copyrightable, and thus allowed a competing yoga studio to teach and perform those physical poses and movements. *Id.* at 1034 (9th Cir. 2015).[3] That case law has no application here. Cisco is alleging that Arista is distributing and selling infringing works (computer programs, including their user interface) that copy verbatim Cisco's copyrighted works (computer programs, including their user interface). To put this case into the framework of *Bikram's*: That case would be relevant to this case if the Ninth Circuit had held that it was permissible for competing yoga instructors to copy and then sell unauthorized copies of Bikram's 1979 book. That of course was not the Ninth Circuit's holding.

The same distinction applies to each of the other cases cited by Arista. For example, in *Baker v. Selden*, 101 U.S. 99 (1879), the Supreme Court held that (i) a book that explained a system of book-keeping was entitled to copyright protection, but (ii) the system or "practise" of bookkeeping itself was not protectable under copyright law. *Id.* at 104. In this case, Arista has copied the "book" (i.e., computer programs, including their user interface), and its conduct is thus wrongful even under *Baker*. *Id.* ("whilst ***no one has a right to print or publish his book, or any material part thereof***… any person may practise and use the art itself which he has described and

---

[3] Arista's Motion quotes various parts of the *Bikram's* decision out of context. Mot. 12. As *Bikram's* involved choreography and compilations not at issue here, the decision is distinguishable on that basis. Indeed, Arista encouraged the Ninth Circuit to reconsider the case to reach a broader holding, but the court denied Arista's request. Mot. Leave File Brief (Dkt. 41), *Bikram's Yoga College of India, L.P. v. Evolation Yoga, LLC*, No. 13-55763 (9th Cir. Dec. 17, 2015). For the Ninth Circuit's denial of Arista's request: Order (Dkt. 46), No. 13-55763 (9th Cir. Jan. 5, 2016); Order (Dkt. 48), No. 13-55763 (9th Cir. Jan. 25, 2016).

illustrated therein") (emphasis added). Likewise, in *Seltzer v. Sunbrock*, the court found that even though game rules were not protectable, "a manual explaining them was copyrightable." 22 F. Supp. 621, 630 (S.D. Cal. 1938). In this case, Arista has copied, and is selling and distributing, products having a user interface and supporting documentation akin to the manual.[4]

Likewise, Arista's arguments on functionality are misplaced. Arista suggests that any work that performs a function cannot be copyright-protected. Mot. 13. But that argument was rejected by the Federal Circuit in *Oracle*, which explained that such an approach would conflict with the fact that "computer programs are by definition functional" and would result in "no computer program [being] protectable." 750 F.3d at 1367. "That result contradicts Congress's express intent to provide copyright protection to computer programs, as well as binding Ninth Circuit case law finding computer programs copyrightable, despite their utilitarian or functional purpose."[5] *Id.* Moreover, Arista's reliance on *Sega Enterprises, Ltd. v. Accolade, Inc.*, 977 F.2d 1510 (9th Cir. 1999), and *Sony Computer Entertainment, Inc. v. Connectix Corp.*, 203 F.3d 596 (9th Cir. 2000), (Mot. 13), is misplaced. Those decisions "are fair use cases in which copyrightability was addressed only tangentially" and, thus, not relevant to the copyrightability analysis. *Oracle*, 750 F.3d at 1370.

Arista's other cases are distinguishable as well. For example, the "command codes" in *Mitel, Inc. v. Iqtel, Inc.* were "three or four numbers" (*e.g.*, "006"), not multi-word command expressions, and the court found they lacked creativity, not that they were uncopyrightable based on functionality. 124 F.3d 1366, 1374 (10th Cir. 1997). The court in *Ashton-Tate Corp. v. Ross*

---

[4] It is unclear what the "game function buttons" at issue in *Dream Games of Arizona, Inc. v. PC Onsite* were, but, in any case, the Ninth Circuit held that even if any individual element were unprotectable "a claim of copyright infringement can be based on infringement of a combination of unprotected elements." 561 F.3d 983, 988 (9th Cir. 2009).

[5] Arista attempts to distinguish *Oracle* on the basis that it involved "copying of 7000 lines of declaring code" and "Cisco does not allege copying of any code." Mot. 14 n.7. As an initial matter, Cisco does allege copying of literal elements of its source code. Almeroth Exh. 3 (providing a table showing a comparison of "HelpDesc" content copied from Cisco to Arista source code). In any case, the portion of the *Oracle* opinion rejecting the argument advanced by Arista involved organization, not code. *Compare* 750 F.3d at 1359 (addressing declaring code), *with id.* at 1364 (addressing organization and functionality).

considered the question of joint authorship, which is not at issue here. 728 F. Supp. 597 (N.D. Cal. 1989). Moreover, it predates the Supreme Court's *Feist* decision, and provides no indication of how detailed the disputed commands were. Based on the court's description, it appears that the one-page "handwritten list" merely provided what the plaintiff "thought should be included in the program," which is dissimilar to Cisco's robust user interface. *Id.* at 602; *Ashton-Tate Corp. v. Ross*, 916 F.2d 516, 521-22 (9th Cir. 1990) (adopting district court's holding without analysis). *Bikram's* mentions functionality only in passing and not as the basis for its copyrightability decision. 803 F.3d at 1044.

For these reasons, Arista's Motion for summary judgment as to the protectability of Cisco's hierarchies should be denied.

**C.    Arista Is Not Entitled To Summary Judgment On Cisco's Modes And Prompts**

Arista's Motion on the non-copyrightability of Cisco's modes and prompts (Mot. 16-17) should likewise be rejected. Contrary to Arista's suggestions, Cisco claims protection not in individual modes and prompts in isolation, but rather its ***entire command-line interface,*** including the particular arrangement of modes and prompts in relation to multi-word command expressions. *See, e.g.*, Almeroth Exh. 1 at ¶¶ 58-63 (explaining Cisco's modes and prompts, including that which arrangement of commands is available to a user depends upon which mode has been selected); Exh. 46 at 14 (disclosing that the creative and protectable aspects of Cisco's modes and prompts include not just the word choices associated with each mode and prompt, but also the changing arrangement of commands that are available to the user depending on the mode selected: "Arista's location of individual command expressions ***within the same modes*** as those commands are located in Cisco's operating systems…"). As discussed above, these aspects of Cisco's computer programs are indisputably protectable under copyright law. *Oracle*, 750 F.3d at 1355–56 ("structure, sequence, and organization").

Arista's argument (Mot. 16) that "the modes and prompts are purely functional" likewise fails. As explained by Dr. Almeroth, the specific word choices and arrangements of Cisco's modes and prompts are expressive, not purely functional. *See, e.g.*, Almeroth Exh. 1 at ¶ 116:

> The decisions to organize Cisco's commands into modes with specific prompts reflects yet another conscious choice of expression. The command modes that I understand Cisco to be asserting in this case include "EXEC," "Privileged EXEC," "Global configuration," and "Interface configuration" (collectively, the "asserted command modes"). Rather than placing commands into different modes with unique prompts, the designers could have created a unified command structure without different modes and chosen a single prompt. Alternatively, Cisco's designers could have used different names for the asserted modes; for example, they could have chosen "ADMIN" instead of "EXEC" or "Secure ADMIN" instead of "Privileged EXEC." Similarly, "Universal setup" could have been chosen instead of "Global configuration" or "Edge setup" instead of "Interface configuration." Almost any other word choice could have been selected.

*See also* Almeroth Exh. 2 at ¶¶ 102-109. Moreover, under settled Ninth Circuit law, even purely functional and non-protectable elements may be combined into a copyrightable compilation through their particular expression and subjective arrangement. *See, e.g.*, *Oracle*, 750 F.3d at 1363 (holding that "an original combination of elements can be copyrightable" even if some element of that combination is unoriginal); *CDN,* 197 F.3d at 1259 ("compilations of facts are copyrightable even where the underlying facts are not").

Nor, contrary to Arista's suggestion (Mot. 17), has Cisco alleged that its modes and prompts are "titles" that would be governed by the Copyright Office's "short phrases" regulation. That regulation denies copyright registration only for works that consist of nothing but small amounts of text divorced from their compilation and arrangement. 37 C.F.R. § 202.1(a). In other words, "[c]opyright protection does not protect individual words and 'fragmentary' phrases ***when removed*** from their form of presentation and compilation," but short phrases are still "subject to copyright in the form in which [they are] presented." *Hutchins v. Zoll Med. Corp.*, 492 F.3d 1377, 1385 (Fed. Cir. 2007) (emphasis added). Moreover, even short phrases in isolation are protectable if they are sufficiently creative to meet the low standard for originality. *Oracle*, 750 F.3d at 1362. Here, Cisco's modes and prompts are part of a larger work and creative in their own right, not "ordinary phrases" or factual statements.

Arista's citation to *Narell v. Freeman*, 872 F.2d 907 (9th Cir. 1989), serves it no better. Far from "denying protection to short phrases" (Mot. 17), *Narrell* was clear that a "unique line" may be entitled to copyright protection, and held in favor of the defendant only because the alleged copying in that case was confined to "a few ordinary phrases" and "factual statements." 872 F.2d

at 912. In this case, Cisco's command modes and prompts, as arranged together with all the other elements of Cisco's protected CLI, are neither "ordinary phrases" nor factual statements.

Finally, Arista argues that "Cisco's use of the symbols '#' and '>' in its command prompts would also be unprotectable even if it were original—which it is not." Mot. 17. But Cisco is not alleging that Arista is liable for copyright infringement simply because Arista—like Cisco—uses "#" or ">" characters at various places in its user interface. Cisco alleges instead that Arista copied Cisco's command modes and prompts as part of the overall combination and arrangement of words and symbols, correlating to over 500 multi-word command expressions and associated screen displays that comprise Cisco's distinctive user interface for its networking products. Stated differently, Arista intentionally copied the user experience (including the look-and-feel) of Cisco's user interface; that intentional copying can be proven in part by identifying thousands of similarities between the companies' programs; and those similarities include a set of "modes" and "prompts" that show the same or similar arrangements of words and characters used in the same settings, in the same arrangements, and to enable the same sets of multi-word command expressions.

Arista's reliance on *Torah Soft Ltd. v. Drosnin*, 136 F. Supp. 2d 276, 287–88 (S.D.N.Y. 2001), for its "#" and ">" argument is misplaced. In *Torah Soft*, the plaintiff took preexisting software, applied it to a known text (the Hebrew bible), using known parsing rules, and then in certain places added asterisks or pound signs to the known text. The court found that adding a single character to preexisting works in that context would not result in copyright protection. But that is far removed from the instant case. Cisco's claims are not about adding a single character or symbol to a non-infringing work. Rather, Cisco engineers created a collection of specific modes and prompts using combinations of non-functional language and symbols as part of an overall user interface, and Arista decided to clone that user interface, including its distinctive modes and prompts, in order to compete unfairly against Cisco. Almeroth Exh. 4.

In cursory fashion, Arista also argues that Cisco's command modes and prompts are "not original to Cisco." Mot. 17. But Arista's evidentiary citations do not support its argument:

1. Arista cites to pages 55-56 of Kirk Lougheed's deposition. But, there, Mr. Lougheed testified that the phrasing and arrangement for a "privileged" mode and related prompt in older Stanford and DEC products were ***different*** than what he created for Cisco. For example, he explained that Stanford used an exclamation point as a prompt character and that DEC used an "enable" prompt. *See* Exh. 38 at 55:24-56:18; *see also* Almeroth Exh. 4 (showing that Cisco's asserted modes and prompts lack such elements).

2. Arista cites to page 109 of the Lougheed deposition. But, there, the witness did not admit to a lack of originality for Cisco's command modes and prompts. Instead, he described how he chose "EXEC" from various possibilities. *See* Exh. 38 at 108:12-109:22 ("Q. You chose that term, yes? A. Yes. Q. How did you come up with that term? A. Well, I had a number of possible ways of describing it. I could have used 'shell' … You know, calling it the command processor would have been another possibility. There was [sic] a number of possibilities that I could have called it, what I could have called that particular part of the software, and I ended up choosing EXEC.").

3. Arista cites to page 112 of the Lougheed deposition, pages 27-29 of the Li deposition, and page 28 of the Satz deposition. But in those instances, the witnesses admitted they did not invent the word "privileged." Mot. at Santacana Exhs. 11, 23 and 24. But that word is not by itself a Cisco mode or prompt. *See* Almeroth Exh. 4.

4. Arista cites to pages 362-371 of the continued Lougheed deposition. There, Mr. Lougheed admitted that a "Cisco" fork of source code that was historically based on source code from Stanford included the "#" symbol. Mot. at Santacana Exh. 11. But that "keystroke" testimony is not evidence that Cisco's modes and prompts were not original to Mr. Lougheed and Cisco, given that Cisco's modes and prompts are not comprised simply of "#" symbols. *See* Almeroth Exh. 4.

5. Arista cites to page 381 of the continued Lougheed deposition. But, there, Mr. Lougheed testified without equivocation that he created the look and feel of Cisco's copyrighted command modes, which only supports originality. *See* Exh. 39 at 381:10-15 ("Q. Did you create the 'user exec' command mode in Cisco IOS?... A. I was the person responsible for the look and feel of the 'exec' command mode.").

Accordingly, summary judgment on the unprotectability of Cisco's modes and prompts should be denied.

### D. Arista Is Not Entitled To Summary Judgment On Infringement Of The '526 Patent

Arista argues that it cannot infringe the '526 patent because its products do not satisfy one limitation that is present in every asserted claim, namely, the limitation of having a "command parse tree…." Mot. 17-21. In its Motion, Arista does not challenge any other aspect of Cisco's infringement case (nor the patent's validity).

This Court construed the "command parse tree" limitation to mean a hierarchical data

structure having "elements, such that each element specifies at least one command action value for each generic command component." Docket No. 310 at 13-15. Cisco has presented expert testimony and supporting evidence that the accused products satisfy this limitation.

Dr. Jeffay has provided a narrative explanation of Arista's parser, how it works, and how [redacted]

As Dr. Jeffay explained the design and operation of Arista's parser—by relying on (*inter alia*) his review of Arista's source code—it includes [redacted] Against that backdrop, Dr. Jeffay then addressed the specific limitation that Arista now challenges, namely "the command parse tree having elements each specifying at least one corresponding generic command component and a corresponding at least one command action value." *See id.* at ¶¶ 150-158. As explained by Dr. Jeffay, Arista's parser includes [redacted]

---

[6] *See id.* at ¶ 88 [redacted]

[redacted]

Dr. Jeffay further explained in his expert report how the accused Arista products satisfy the disputed claim limitation: "***each element*** in the command parse tree includes a corresponding at least one ***command action value***." *Id.* at ¶ 153 (emphasis added). As described above, [redacted]

Based on his technical analysis, Dr. Jeffay has clearly opined that his infringement analysis satisfies the requirement of each generic command component having at least one command action value at each element of the accused parse tree:

> My infringement opinion also remains the same under Arista's proposed interpretation of the term "the command parse tree having elements each specifying at least one corresponding generic command component and a corresponding at least one command action value." I understand that during the *Markman* hearing, Arista explained that they interpret the phrase to require that each generic command component must have a corresponding at least one command action value. Even under this interpretation, the Accused Products still infringe. As explained [redacted]

[redacted]

*Id.* at ¶ 158. Dr. Jeffay has also expressly confirmed that his infringement analysis holds under the Court's construction (which issued between his opening expert report and his rebuttal expert report). Jeffay Exh. 2 at ¶¶ 41-42.

Critically, the Court rejected Arista's proposed claim construction that would have required a one-to-one correspondence between each generic command component and a command action value at each element of the parse tree. Dkt. 310 at 15. As explained above, Dr. Jeffay identified a [redacted] variable for each element of the accused parse tree, which contains at least one value function (which is not set to none) for each generic command component. Jeffay Exh. 1 at ¶¶ 72-120, 140-149, 150-163; Jeffay Exh. 2 at 41-42. These facts are not disputed by Arista, and are fatal to Arista's Motion.

At the deposition of Dr. Jeffay, Arista's counsel asked a series of questions assuming a varied notion of what comprises a "command action value." When asked in that context whether he would opine that a particular command action value associated with the larger phrase "show openflow flows" was not specifically associated with the individual "show" token, Dr. Jeffay explained that—as he thought he understood that particular hypothetical—the answer was yes. But Arista's counsel neglected to ask any questions about Dr. Jeffay's infringement analysis and opinions based on the [redacted] variable (discussed in his expert report) with respect to the disputed claim limitation. In fact, the opposite was the case: Dr. Jeffay confirmed at his deposition that every element contained a different [redacted] variable. Exh. 53 at 113:13-21 ("Q. There's a different [redacted] variable for each of the elements? A Yes."). Thus, none of the deposition testimony cited by Arista in its Motion affects Dr. Jeffay's analysis of the [redacted] variable, nor his ultimate opinion of infringement under the Court's claim construction.

Finally, Dr. Jeffay's infringement opinion is entirely consistent with Cisco's submission to the Patent Trial and Appeal Board regarding the Martinez-Guerra prior art reference. There, Arista was alleging that Martinez-Guerra's "translation" function was a command action value that was part of a command parse tree. Exh. 44 at 26. In response, Cisco explained that (i) the translation

function was ***not*** part of the structure that Arista was equating with the command parse tree, and (ii) the translation function was only applied once to a complete sequence of tokens as validated by the ***separate*** error reporting functionality. Exh. 45 at 27-28. None of that is inconsistent with the infringement analysis and opinions set forth by Dr. Jeffay, which identified specific command action values (for example, as part of the [REDACTED] variable) associated with each generic command component ***at each element of the accused parse tree***.

Dr. Jeffay based his analysis on a careful review of Arista's source code (including three days of personal source code review) and supporting materials. Jeffay Exh. 1 at ¶¶ 5-6, 70-261; Jeffay Exh. 2 at ¶¶ 26-46; Exh. 53 at 17:3-6. He has declared precisely how the accused products have a command parse tree having elements, such that each element specifies at least one command action value for each generic command component. Jeffay Exh. 1 at ¶¶ 72-120, 140-149, 150-163; Jeffay Exh. 2 at 41-42. At a minimum, his opinion and supporting evidence create a triable issue of fact that precludes summary judgment that the accused products do not in fact satisfy this claim limitation as it has been construed by the Court. *See Silicon Laboratories, Inc., v. Cresta Technology Corp.*, No. 14-cv-03227, 2016 WL 836679 (N.D. Cal. Mar. 3. 2016) ("This is a classic 'battle of the experts' on a material issue of fact. It is the jury's province to resolve such issues, not the court's.") (citing *MeadWestVaco Corp. v. Rexam Beauty & Closures, Inc.*, 731 F.3d 1258, 1268-69 (Fed. Cir. 2013)).

## III. Conclusion

For all the foregoing reasons as supported by the Declarations filed herewith, Arista's Motion For Partial Summary Judgment should be DENIED.

Dated: July 14, 2016

Respectfully submitted,

*/s/* John M. Neukom ________

Kathleen Sullivan (SBN 242261)
kathleensullivan@quinnemanuel.com
QUINN EMANUEL URQUHART & SULLIVAN LLP
51 Madison Avenue, 22nd Floor
New York, NY 10010
Telephone: (212) 849-7000
Facsimile: (212) 849-7100

Sean S. Pak (SBN 219032)
seanpak@quinnemanuel.com
Amy H. Candido (SBN 237829)
amycandido@quinnemanuel.com
John M. Neukom (SBN 275887)
johnneukom@quinnemanuel.com.
QUINN EMANUEL URQUHART & SULLIVAN LLP
50 California Street, 22nd Floor
San Francisco, CA 94111
Telephone: (415) 875-6600
Facsimile: (415) 875-6700

Steven Cherny *admitted pro hac vice)*
steven.cherny@kirkland.com
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900

Adam R. Alper (SBN 196834)
adam.alper@kirkland.com
KIRKLAND & ELLIS LLP
555 California Street
San Francisco, California 94104
Telephone: (415) 439-1400
Facsimile: (415) 439-1500

Michael W. De Vries (SBN 211001)
michael.devries@kirkland.com
KIRKLAND & ELLIS LLP
333 South Hope Street
Los Angeles, California 90071
Telephone: (213) 680-8400
Facsimile: (213) 680-8500

*Attorneys for Plaintiff Cisco Systems, Inc.*