# Exhibit 2

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION

| | |
|---|---|
| CISCO SYSTEMS, INC.,<br><br>   Plaintiff,<br><br>  v.<br><br>ARISTA NETWORKS, INC.,<br>   Defendant. | Case No. 5:14-cv-05344-BLF (NC) |

**REBUTTAL EXPERT REPORT OF KEVIN JEFFAY, PH.D.
REGARDING VALIDITY OF U.S. PATENT NO. 7,047,526**

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ..................................................................................................1

II. EXPERIENCE AND QUALIFICATIONS .........................................................1

III. UNDERSTANDING OF THE LAW ...................................................................2

    A. Presumption Of Validity ...........................................................................2

    B. Anticipation Under 35 U.S.C. § 102 .........................................................2

    C. Obviousness Under 35 U.S.C. § 103 ........................................................3

    D. Enablement of Prior Art ............................................................................4

IV. COMPENSATION ...............................................................................................5

V. MATERIALS REVIEWED .................................................................................5

VI. LEVEL OF ORDINARY SKILL IN THE ART ................................................5

VII. CLAIM CONSTRUCTION .................................................................................6

    A. "Management Programs" .......................................................................10

    B. "Generic Command" ..............................................................................11

    C. "Command Parse Tree" .........................................................................11

    D. "The Validating Step Including Identifying One of the Elements as a Best Match Relative to the Generic Command" ............................................13

    E. "The Command Parse Tree Having Elements Each Specifying at Least One Corresponding Generic Command Component and a Corresponding at Least One Command Action Value" ..................................................13

    F. "means for validating a generic command received from a user . . ." ...15

VIII. TECHNOLOGY OVERVIEW ..........................................................................17

IX. REBUTTAL TO DR. CLARK'S "TECHNICAL BACKGROUND" .............18

X. SUMMARY OF THE PROSECUTION HISTORY OF THE '526 PATENT .................19

XI. VALIDITY OF THE '526 PATENT .................................................................28

XII.  THE REFERENCES CITED BY DR. CLARK DO NOT ANTICIPATE OR RENDER OBVIOUS ANY ASSERTED CLAIM OF THE '526 PATENT ....................29

  A.  Cisco's IOS 12 ("IOS 12") .......................................................................29

      1.  IOS 12 Lacks "Management Programs"......................................................30

      2.  IOS 12 Lacks "Generic Commands" ............................................................31

      3.  IOS 12 Lacks Limitation 1D of Claim 1 and the Corresponding Limitation of Claim 14................................................................32

      4.  IOS 12 Lacks Limitation 1E of Claim 1 and the Corresponding Limitation of Claim 14................................................................34

      5.  IOS 12 Lacks a "Command Word Translation Table" as Required by Claim 6........................................................................................34

      6.  IOS 12 Lack a "Translators" a "Prescribed Translator" or a "Plurality of Translators"................................................................35

      7.  IOS 12 Lacks The "Means-Plus-Function" Term in Claim 23...................35

  B.  Lucent Avaya Definity Audix System Release 4.0 ("Audix System") .................36

      1.  The Audix System Lacks "Management Programs" .................................37

      2.  Audix System Lacks "Generic Commands"..............................................38

      3.  The Audix System Lacks a "Command Parse Tree"................................38

      4.  Audix System Lacks Limitation 1D of Claim 1 and the Corresponding Limitation of Claim 14........................................................39

      5.  Audix System Lacks Limitation 1E of Claim 1 and Corresponding Limitation of Claim 14........................................................41

  C.  Juniper Networks' JUNOS 4.0 ("JUNOS 4.0").........................................41

      1.  JUNOS 4.0 Lacks "Management Programs"..............................................41

      2.  JUNOS 4.0 Lacks "Generic Commands" ...................................................42

      3.  JUNOS 4.0 Lacks a "Command Parse Tree"............................................43

      4.  JUNOS 4.0 Lacks Limitation 1D of Claim 1 and Corresponding Limitation of Claim 14........................................................44

        5.     JUNOS 4.0 Lacks Limitation 1E of Claim 1 and Corresponding Limitation of Claim 14 .................................................................. 45

    D.     U.S. Patent No. 6,523,172 to Martinez-Guerra et al. ("Martinez-Guerra") ........... 46

        1.     Martinez-Guerra Lacks "Management Programs" ..................................... 47

        2.     Martinez-Guerra Lacks "Generic Commands" ........................................... 47

        3.     Martinez-Guerra Lacks Limitation 1D of Claim 1 and Corresponding Limitation of Claim 14 ....................................................... 50

        4.     Martinez-Guerra Lacks Limitation 1E of Claim 1 and Corresponding Limitation of Claim 14 ....................................................... 54

        5.     Martinez-Guerra Lacks The "Means-Plus-Function" Term in Claim 23 ...................................................................................................... 54

XIII.   RESERVATION OF RIGHTS ..................................................................................... 55

I.     **INTRODUCTION**

1. I have been asked by Cisco Systems, Inc., ("Cisco") to provide opinions and conclusions as an expert on technical subjects relating to U.S. Patent Nos. 7,047,526 (the "'526 patent"). In this rebuttal report, I respond to the opinions provided in the Opening Expert Report of Douglas W. Clark ("Clark Opening Report"), including as to the validity of the asserted claims of the '526 patent.

2. This report sets forth my opinions based on the information identified and the analyses I have performed through the date of this report.

3. This report, and my opinions contained herein, is subject to change or modification if additional relevant information becomes available that bears on my analysis. I may be asked to express opinions in response to opinions or analysis of Dr. Clark and to express opinions at trial regarding matters that are raised at trial. Accordingly, I reserve the right to supplement or amend my opinions or this report if additional information that affects my opinions becomes available.

4. In particular, Dr. Clark did not analyze the validity of the asserted claims under the Court's claim constructions, but rather under each party's proposed claim constructions. To the extent Dr. Clark is given an opportunity or otherwise revises his invalidity opinions in view of the Court's claim construction order, I reserve my right to respond to those new opinions at the appropriate time. For purposes of this report, I rebut Dr. Clark's invalidity opinions while applying the Court's claim construction order.

II.    **EXPERIENCE AND QUALIFICATIONS**

5. My background, qualifications, and experience relevant to the issues in this litigation as they concern the '526 patents are set forth in the Opening Expert Report of Kevin Jeffay, Ph.D. Regarding Infringement of U.S. Patent Nos. 7,047,526, dated June 3, 2016

("Opening Report"), which is incorporated herein by reference in its entirety. More details on my qualifications, including my education and work experience and my publications, are contained in my C.V., which was attached as Exhibit 1 to my opening report.

### III. UNDERSTANDING OF THE LAW

6. For the purposes of performing my analyses and forming my opinions, I have applied certain legal principles with respect to the validity of the '526 patent.

#### A. Presumption Of Validity

7. Each claim of an issued patent is presumed to be valid. A party challenging the validity of a patent claim must present clear-and-convincing evidence to overcome the presumption that an issued claim is valid.

#### B. Anticipation Under 35 U.S.C. § 102

8. A prior art reference anticipates a patent claim if the prior art reference discloses or includes every element of the patent claim, arranged as described in the claim. If even a single element is missing, the prior art reference does not anticipate the patent claim.

9. An element is inherently disclosed in a prior art reference only if the missing matter is necessarily present in the thing described in the reference and would be so recognized by persons of ordinary skill. The mere fact that a certain thing may result from a given set of circumstances is not sufficient.

10. Prior art may include items that were publicly known or that have been used or offered for sale, publications, or patents that disclose the claimed invention or elements of the claimed invention. To be prior art, the item or reference must have been known, used, published, or patented either before the invention was made or more than one year before the filing date of the patent application.

2

23.     Relevant factors in determining the level of ordinary skill in the art include the educational level of the inventor and those who work in the field.  Other considerations include various prior art approaches employed in the art, types of problems encountered in the art, the rapidity with which innovations are made, and the sophistication of the technology involved.  Not all considerations may be present in every case, and the education level of inventors is not itself conclusive.

24.     For the '526 patent, I believe that a person of ordinary skill in the art would have had a Bachelor's of science degree in electrical engineering, computer science or engineering, or a related field, and two to four years of work or research experience in the field of computer networking, or a Master's degree and one to two years of experience.

25.     I understand that Dr. Clark has opined as follows regarding the level of ordinary skill for the '526 patent: "In my opinion, a person of ordinary skill in the art pertaining to the patent at issue at the time of its filing would have at least a bachelor's degree in computer science and 3-5 years of experience in systems development." Clark Opening Report, para. 17.  While I maintain my opinion as to the proper level of ordinary skill in the art as described above, my opinions expressed in this and my opening report remain the same under either my or Dr. Clark's formulation of the level of ordinary skill in the art.

## VII.  CLAIM CONSTRUCTION

26.     On June 15, 2016, the Court issued its claim construction order.  Dkt. 310.  The Court issued the following constructions:

| Claim Term | Cisco Proposed Construction | Arista Proposed Construction | Court's Claim Construction |
|---|---|---|---|
| "management programs" | "separate tools or external agents having their own respective command formats that | "tools that are configured to execute user-entered commands having | "~~separate~~ tools or ~~external~~ agents configured to execute user-directed |

|  | provide management functions" | their own respective command formats rather than the generic command format" | commands having their own respective command formats that provide management functions" |
|---|---|---|---|
| "generic command" | "command that provides an abstraction of the tool-specific command formats and syntax, enabling a user to issue the command based on the relative functions, as opposed to the specific syntax for a corresponding tool" | Indefinite.<br><br>Or<br><br>"command having a format and syntax that is an abstraction of the command formats and syntaxes of more than one management program, as opposed to the specific syntax for any such management program" | "command that provides an abstraction of the tool-specific command formats and syntax, enabling a user to issue the command based on the relative functions, as opposed to the specific syntax for a corresponding tool" |
| "command parse tree" | "a hierarchical data representation having elements each specifying at least one corresponding generic command component and a corresponding at least one command action value" | "tree": "data structure consisting of linked nodes, with a root node (a node with no parent nodes), and where the remaining nodes are either a branch node (a node with a parent node and one or more children nodes), or a leaf node (a node with a parent node and no children nodes)"<br><br>"command parse tree": "tree for interpreting commands where each node, or element, corresponds to one or more command components" | "a hierarchical data structure"[1] |

---

[1] According to the Court, the parties agreed to this construction at the claim construction hearing. Dkt. 310 at 11.

| | | | |
|---|---|---|---|
| "the validating step including identifying one of the elements as a best match relative to the generic command" | Plain and ordinary meaning (except that specific terms appearing within the phrase should be construed as proposed above) | Indefinite.<br><br>Or<br><br>"the validating step having the capability of both identifying the element in the parse tree that exactly matches the generic command, and, in the absence of an exact match, identifying the element that contains the last validated component of the generic command" | Plain and ordinary meaning (except for terms appearing within the phrase already construed by the Court) |
| "the command parse tree having elements each specifying at least one corresponding generic command component and a corresponding at least one command action value" | Plain and ordinary meaning (except that specific terms appearing within the phrase should be construed as proposed above) | "elements": "nodes"<br><br>"command action value": "piece of data that uniquely represents the prescribed command."<br><br>the entire phrase: "the command parse tree having nodes, such that each node specifies a unique command action value for each generic command component." | "command action value": "a value that identifies a prescribed command"<br><br>the entire phrase: "the command parse tree having elements, such that each element specifies at least one command action value for each generic command component" |
| "means for validating a generic command received from a user, the validating means configured for specifying valid generic commands relative to a prescribed generic command format and having elements each | Function: validating a generic command received from a user<br><br>Structure: Parser 14 in Figure 2, which includes the command word translation table 20 and the command parse tree 22, as described in 3:36-61, | Functions:<br>(1) validating a generic command received from a user<br>(2) specifying valid generic commands relative to a prescribed generic command format,<br>(3) having elements each specifying at | Functions:<br>(1) validating a generic command received from a user<br>(2) specifying valid generic commands relative to a prescribed generic command format,<br>(3) having elements each specifying at |

8

| | | | |
|---|---|---|---|
| specifying at least one corresponding generic command component and a corresponding at least one command action value, the validating means identifying one of the elements as a best match relative to the generic command" | and equivalents | least one corresponding generic command component and a corresponding at least one command action value, and (4) identifying one of the elements as a best match relative to the generic command.<br><br>Disclosed Structure: processor executing a parser, and a corresponding memory storing a command parse tree, wherein the parser executes the algorithm of Figure 3, and wherein (1) each node of the command parse tree specifies one token and a corresponding command key; (2) the top-level nodes of the command parse tree represent all possible valid first words in the input command, second-level nodes represent all possible valid second words for each valid first word in the input command, and so on; | least one corresponding generic command component and a corresponding at least one command action value, and (4) identifying one of the elements as a best match relative to the generic command.[2]<br><br>Structure: Parser 14 in Figure 2, which includes the command word translation table 20 and the command parse tree 22, as described in 3:36-61, and equivalents. Figure 3 is an alternative embodiment. |

27. To put the Court's claim construction order in context, I've color-coded the Court's constructions. Green indicates that the Court adopted language from Cisco's proposal, red indicates that the Court adopted language from Arista's proposal and purple indicates

---

[2] I understand the parties agreed on the recited function. Dkt. 310 at 11.

9

language not expressly proposed by either party. I applied the Court's constructions in my validity analysis and in forming my opinions.

28. In addition, the Court's constructions confirm my understanding of the '526 claims and my opinions expressed in my opening report. I address each of the Court's claim constructions in order.

### A. "Management Programs"

| Claim Term | Cisco Proposed Construction | Arista Proposed Construction | Court's Claim Construction |
|---|---|---|---|
| "management programs" | "separate tools or external agents having their own respective command formats that provide management functions" | "tools that are configured to execute user-entered commands having their own respective command formats rather than the generic command format" | "~~separate~~ tools or ~~external~~ agents configured to execute user-directed commands having their own respective command formats that provide management functions" |

29. For "management programs," the Court largely adopted Cisco's proposed claim construction, though not the "separate" or "external" aspect Cisco proposed. In my opening report, I offered opinions under both parties' proposed constructions. Thus, for example, I opined that there are "management programs" in the accused products under Cisco's proposed construction, including opining that the "management programs" were external or separate. While my infringement opinions included the "separate" aspect when I analyzed them under Cisco's proposed construction, my opinions expressed in my opening report also apply under the Court's construction of "management programs" that omits that "separate" aspect.

30. The only other difference is the Court's inclusion of "user-directed." Since I already analyzed this term under Arista's proposed construction, which included "user-entered commands" and is more narrow than "user-directed," my opinion again remains the same.

10

31.    Thus, my opinions expressed in my opening report equally apply and remain the same for "management programs."

**B.    "Generic Command"**

| Claim Term | Cisco Proposed Construction | Arista Proposed Construction | Court's Claim Construction |
|---|---|---|---|
| "generic command" | "command that provides an abstraction of the tool-specific command formats and syntax, enabling a user to issue the command based on the relative functions, as opposed to the specific syntax for a corresponding tool" | Indefinite.<br><br>Or<br><br>"command having a format and syntax that is an abstraction of the command formats and syntaxes of more than one management program, as opposed to the specific syntax for any such management program" | "command that provides an abstraction of the tool-specific command formats and syntax, enabling a user to issue the command based on the relative functions, as opposed to the specific syntax for a corresponding tool" |

32.    For "generic command," the Court adopted Cisco's proposed construction. As discussed above, I provided in my opinions in my Opening Report under both party's proposed constructions, including Cisco's proposed construction. Thus, my opinions expressed in my opening report equally apply and remain the same for "generic commands."

**C.    "Command Parse Tree"**

| Claim Term | Cisco Proposed Construction | Arista Proposed Construction | Court's Claim Construction |
|---|---|---|---|
| "command parse tree" | "a hierarchical data representation having elements each specifying at least one corresponding generic command component and a corresponding | "tree": "data structure consisting of linked nodes, with a root node (a node with no parent nodes), and where the remaining nodes are either a | "a hierarchical data structure"[3] |

---

[3]    According to the Court, the parties agreed to this construction at the claim construction hearing. Dkt. 310 at 11.

| | at least one command action value" | branch node (a node with a parent node and one or more children nodes), or a leaf node (a node with a parent node and no children nodes)" | |
| --- | --- | --- | --- |
| | | "command parse tree": "tree for interpreting commands where each node, or element, corresponds to one or more command components" | |

33. For "command parse tree," the Court adopted an agreed construction, including material proposed by both parties. As an initial matter, I understand that the "having elements each specifying at least one corresponding generic command component and a corresponding at least one command action value" portion of Cisco's proposed construction is addressed in the Court's consideration of the larger phrase, discussed below.

34. On "command parse tree" in particular, the parties agreed that the term is a "data structure" and not a "data representation." Dkt. 310 at 11. My description under Cisco's proposed construction for a hierarchical data representation also applies to my analysis under the hierarchical data structure, indeed I already referred to "data structure" in the body of my analysis in my report. Jeffay Opening Report, para. 143. In addition, I provided opinions under Arista's proposed construction, which included the requirement of a "data structure."

35. Thus, my opinions expressed in my opening report equally apply and remain the same for "command parse tree."

D.  **"The Validating Step Including Identifying One of the Elements as a Best Match Relative to the Generic Command"**

| Claim Term | Cisco Proposed Construction | Arista Proposed Construction | Court's Claim Construction |
|---|---|---|---|
| "the validating step including identifying one of the elements as a best match relative to the generic command" | Plain and ordinary meaning (except that specific terms appearing within the phrase should be construed as proposed above) | Indefinite.<br><br>Or<br><br>"the validating step having the capability of both identifying the element in the parse tree that exactly matches the generic command, and, in the absence of an exact match, identifying the element that contains the last validated component of the generic command" | Plain and ordinary meaning (except for terms appearing within the phrase already construed by the Court) |

36.     For "the validating step . . . ," the Court adopted Cisco's proposed construction. As discussed, I provided in my opinions in my report under both party's proposed constructions, including Cisco's proposed construction. Thus, my opinions expressed in my opening report equally apply and remain the same for "the validating step . . ."

E.  **"The Command Parse Tree Having Elements Each Specifying at Least One Corresponding Generic Command Component and a Corresponding at Least One Command Action Value"**

| Claim Term | Cisco Proposed Construction | Arista Proposed Construction | Court's Claim Construction |
|---|---|---|---|
| "the command parse tree having elements each specifying at least one corresponding generic command component and a corresponding at least one command | Plain and ordinary meaning (except that specific terms appearing within the phrase should be construed as proposed above) | "elements": "nodes"<br><br>"command action value": "piece of data that uniquely represents the prescribed command." | "command action value": "a value that identifies a prescribed command"<br><br>the entire phrase: "the command parse tree having elements, such |

13

| action value" | | the entire phrase: "the command parse tree having nodes, such that each node specifies a unique command action value for each generic command component." | that each element specifies at least one command action value for each generic command component" |
|---|---|---|---|

37. I addressed my opinions for "command parse tree" above. For the remainder of the phrase, the Court provided two constructions, one for "the entire phrase" and one for "command action value."

38. The Court construed "command action value" as "a value that identifies a prescribed command." Though some aspects are derived from Arista's proposed construction, it did not adopt Arista's proposal wholesale. In particular, the Court rejected Arista's attempt to add a "unique" qualifier. Dkt. 310 at 14-15. Instead, the Court looked at the specification and construed the term in light of the specification, while not limiting the invention to any particular embodiment. *Id.* In doing so, the Court cited to the '526 Patent at Col. 4:31-37, which describes one embodiment as follows:

> The parser **14** identifies in step **54** the prescribed command for a selected one of the translators **16** based on the value of the command key **32** within the matching token-command key pair **30** (e.g., "CK=3") of the last valid command word, which maps to a translation table that specifies a specific command for a specific translator **16**.

'526 Patent, Col. 4:31-37.

39. This is a partial description of one embodiment for Figure 3, which discusses using "command keys" and a translation table that specifies a specific command. I understand, as the Court found, that the invention of the '526 patent is not limited to one disclosed embodiment. Dkt. 310 at 15 (citing 4:63-64). Thus, I understand that the Court's citation to this

embodiment does not limit the claims, and that the claims (as construed by the Court) embrace more than just the cited embodiment. Consistent with the Court's construction and the '526 patent specification, a value that identifies a command can be an intermediate value that can be used with other information (*e.g.*, a translation table) to identify a prescribed command, as described in this cited portion of the specification.

40. I provided my opinions in my Opening Report consistent with this construction of "command action value" including identifying "command action values" that are "a value that identifies a prescribed command." *See* Jeffay Opening Report, paras. 151-158.

41. Finally, the Court construed the "entire phrase" as "the command parse tree having elements, such that each element specifies at least one command action value for each generic command component." In doing so, the Court rejected Arista proposed one-to-one correspondence in the command parse tree between generic command components and command action values. Dkt. 310 at 14-15. Instead, the Court adopted the substance of Cisco's proposed plain and ordinary meaning construction for the phrase, but provided slightly differently wording "to clarify that each generic component can have more than one command action value." Dkt. 310 at 15.

42. Thus, my opinions expressed in my opening report equally apply and remain the same for "the command parse tree having elements . . . "

F. **"means for validating a generic command received from a user . . ."**

| Claim Term | Cisco Proposed Construction | Arista Proposed Construction | Court's Claim Construction |
|---|---|---|---|
| "means for validating a generic command received from a user, the validating means configured for specifying valid | Function: validating a generic command received from a user<br><br>Structure: Parser 14 in Figure 2, which | Functions:<br>(1) validating a generic command received from a user<br>(2) specifying valid generic commands | Functions:<br>(1) validating a generic command received from a user<br>(2) specifying valid generic commands |

15

| generic commands relative to a prescribed generic command format and having elements each specifying at least one corresponding generic command component and a corresponding at least one command action value, the validating means identifying one of the elements as a best match relative to the generic command" | includes the command word translation table 20 and the command parse tree 22, as described in 3:36-61, and equivalents | relative to a prescribed generic command format, (3) having elements each specifying at least one corresponding generic component and a corresponding at least one command action value, and (4) identifying one of the elements as a best match relative to the generic command.<br><br>Disclosed Structure: processor executing a parser, and a corresponding memory storing a command parse tree, wherein the parser executes the algorithm of Figure 3, and wherein (1) each node of the command parse tree specifies one token and a corresponding command key; (2) the top-level nodes of the command parse tree represent all possible valid first words in the input command, second-level nodes represent all possible valid second words for each valid first word in the input command, and so on; | relative to a prescribed generic command format, (3) having elements each specifying at least one corresponding generic component and a corresponding at least one command action value, and (4) identifying one of the elements as a best match relative to the generic command.[4]<br><br>Structure: Parser 14 in Figure 2, which includes the command word translation table 20 and the command parse tree 22, as described in 3:36-61, and equivalents. Figure 3 is an alternative embodiment. |

---

[4] I understand the parties agreed on the recited function. Dkt. 310 at 11.

16

43. For this "means-plus-function" term, the Court explained the legal context:

> Paragraph 6 of 35 USC § 112 provides for means-plus-function claiming: 'An element in a claim for a combination may be expressed as a means . . . for performing a specified function . . . and such claim shall be construed to cover the corresponding structure, material, or acts described in the specification and equivalents thereof.' . . . . If a court concludes that a claim limitation is a means-plus-function limitation, "two steps of claim construction remain: 1) the court must first identify the function of the limitation; and 2) the court must then look to the specification and identify the corresponding structure for that function." *Id.* The claim limitation will then be construed to cover that corresponding structure and equivalents thereof. 35 USC § 112 ¶ 6.

Dkt. 310 at 4.

44. With that context, I understand that the parties agreed that the differences between the defined functions were immaterial for purposes of claim construction. Dkt. 310 at 17. The Court then adopted Arista's proposed "function" for this term. As I did my analysis under both party's proposed constructions, this included Arista's proposed function. Therefore, my analysis from my opening report applies equally for the recited function.

45. For the corresponding structure, the Court adopted Cisco's proposed construction, while adding Figure 3 as an "alternative embodiment" which I understand means that it is not required, but is an alternative structure. Because I performed my analysis, in part, using Cisco's proposed corresponding structure for this term, my opinions remain the same when considering the Court's corresponding structure.

46. Thus, my opinions expressed in my opening report equally apply and remain the same for the "means for validating a generic command received from a user . . ." limitation.

## VIII. TECHNOLOGY OVERVIEW

47. I described a technology background in my opening report, which I hereby incorporate by reference.

I certify under penalty of perjury that the foregoing is true and correct.

Date: June 17, 2015.                                              Kevin Jeffay, Ph.D.