# REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

KEKER & VAN NEST LLP
ROBERT A. VAN NEST - # 84065
BRIAN L. FERRALL - # 160847
DAVID SILBERT - # 173128
MICHAEL S. KWUN - #198945
633 Battery Street
San Francisco, CA 94111-1809
Telephone:   (415) 391-5400
Email:  rvannest@kvn.com;
bferrall@kvn.com; dsilbert@kvn.com;
mkwun@kvn.com, aramani@kvn.com

SUSAN CREIGHTON, SBN 135528
SCOTT A. SHER, SBN 190053
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
1700 K Street NW, Fifth Floor
Washington, D.C., 20006-3817
Telephone:  (202) 973-8800
Email:  screighton@wsgr.com;
ssher@wsgr.com

JONATHAN M. JACOBSON, NY SBN 1350495
CHUL PAK (*pro hac vice*)
DAVID H. REICHENBERG (*pro hac vice*)
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
1301 Avenue Of The Americas, 40th Floor
New York, NY 10019-6022
Telephone:  (212) 999-5800
Email:  jjacobson@wsgr.com; cpak@wsgr.com;
dreichenberg@wsgr.com

Attorneys for Defendant ARISTA NETWORKS, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| CISCO SYSTEMS, INC., <br><br> Plaintiff, <br><br> v. <br><br> ARISTA NETWORKS, INC., <br><br> Defendant. | Case No. 5:14-cv-05344-BLF (NC) <br><br> **ARISTA'S REPLY IN SUPPORT OF PARTIAL SUMMARY JUDGMENT** <br><br> Date:        August 4, 2016 <br> Time:       9:00 a.m. <br> Dept:        Courtroom 3 - 5th Floor <br> Judge:      Hon. Beth Labson Freeman <br><br> Date Filed: December 5, 2014 <br><br> Trial Date: November 21, 2016 |

**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ..................................................................................................................1

II. ARGUMENT........................................................................................................................1

    A. Cisco's Opposition confirms that it lacks any competent evidence to prove the originality of 198 CLI commands. ......................................................................1

        1. The presumption of validity does not apply to the late-registered CLI commands. ...........................................................................................1

        2. No reasonable jury could conclude that the 198 late-registered CLI commands were creative and independently created by Cisco....................4

    B. Cisco has not raised any competent evidence supporting the copyrightability of command hierarchies or modes and prompts............................8

        1. Cisco fails to identify any copyrightable expression in the asserted command "hierarchies."..........................................................................8

        2. The asserted modes and prompts are uncopyrightable and unoriginal based on the undisputed facts. ...................................................10

    C. Summary judgment of non-infringement should be granted as to the '526 patent. ........................................................................................................................13

III. CONCLUSION..................................................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Apple Computer, Inc. v. Microsoft Corp.*
   35 F.3d 1435 (9th Cir. 1994) ................................................................................................. 10

*Ashton-Tate Corp. v. Ross*
   916 F.2d 516 (9th Cir. 1990) ..................................................................................................... 9

*Atari Games Corp. v. Nintendo of Am. Inc.*
   975 F.2d 832 (Fed. Cir. 1992) .................................................................................................... 9

*Bikram's Yoga Coll. of India, L.P. v. Evolation Yoga, LLC*
   803 F.3d 1032 (9th Cir. 2015) ................................................................................................. 10

*Bortell v. Eli Lilly & Co.*
   406 F. Supp. 2d 1 (D.D.C. 2005) .............................................................................................. 6

*Brighton Collectibles, Inc. v. RK Texas Leather Mfg.*
   No. 10-CV-419-GPC (WVG), 2012 WL 6553403 (S.D. Cal. Dec. 13, 2012) ......................... 3

*Brown Bag Software v. Symantec Corp.*
   960 F.2d 1465 (9th Cir. 1992) ........................................................................................... 10, 12

*CDN Inc. v. Kapes*
   197 F.3d 1256 (9th Cir. 1999) ................................................................................................... 7

*CJ Products LLC v. Snuggly Plushez LLC*
   809 F. Supp. 2d 127 (E.D.N.Y. 2011) ................................................................................... 3, 4

*Cooling Systems & Flexibles, Inc. v. Stuart Radiator, Inc.*
   777 F.2d 485 (9th Cir. 1985) ..................................................................................................... 2

*Fraser v. Goodale*
   342 F.3d 1032 (9th Cir. 2003) ................................................................................................... 6

*Hutchins v. Zoll Medical Corp.*
   492 F.3d 1377 (Fed. Cir. 2007) ......................................................................................... 11, 12

*Jackson v. Axton*
   25 F.3d 884 (9th Cir. 1994) ....................................................................................................... 2

*Johnson Controls, Inc. v. Phoenix Control Sys., Inc.*
   886 F.2d 1173 (9th Cir. 1989) ................................................................................................. 10

*Lamps Plus, Inc. v. Seattle Lighting Fixture Co.*
   345 F.3d 1140 (9th Cir. 2003) ................................................................................................... 2

*Major League Baseball Properties, Inc. v. Salvino, Inc.*
   542 F.3d 290 (2d Cir. 2008) ...................................................................................................... 7

*Meshwerks, Inc. v. Toyota Motor Sales U.S.A., Inc.*
   528 F.3d 1258 (10th Cir. 2008) ................................................................................................. 5

*Metro. Enter. Corp. v. United Techs. Int'l Corp.*
   No. 03-CV-1685-JBA, 2005 WL 2300382 (D. Conn. Sept. 21, 2005) .................................... 6

*Murphy v. Cty. of Yavapai*
   No. 04-CV-1861-PCT (DGC), 2006 WL 2460916 (D. Ariz. Aug. 23, 2006) .......................... 6

*Narell v. Freeman*
   872 F.2d 907 (9th Cir. 1989) ........................................................................................ 11, 12

*Oracle Am., Inc. v. Google Inc.*
   750 F.3d 1339 (Fed. Cir. 2014) ............................................................................................ 10

*Orr v. Bank of Am., NT & SA*
   285 F.3d 764 (9th Cir. 2002) ................................................................................................. 7

*Religious Tech. Ctr. v. Netcom On-Line Commc'n Servs., Inc.*
   923 F. Supp. 1231 (N.D. Cal. 1995) ..................................................................................... 3

*Satava v. Lowry*
   323 F.3d 805 (9th Cir. 2003) ................................................................................................. 9

*Shaw v. Lindheim*
   919 F.2d 1353 (9th Cir. 1990) ............................................................................................. 11

*Sitrick v. Dreamworks, LLC*
   516 F.3d 993 (Fed. Cir. 2008) ............................................................................................... 7

*Southco, Inc. v. Kanebridge Corp.*
   390 F.3d 276 (3d Cir. 2004) ................................................................................................ 11

*United States v. Various Slot Machines on Guam*
   658 F.2d 697 (9th Cir. 1981) ................................................................................................. 7

**Federal Statutes**

17 U.S.C. § 102 ............................................................................................................................ 10

17 U.S.C. § 103 .............................................................................................................................. 2

17 U.S.C. § 401 .............................................................................................................................. 1

17 U.S.C. § 410 ......................................................................................................................... 2, 7

**Federal Rules**

Fed. R. Evid. 702 ........................................................................................................................... 8

Fed. R. Evid. 801 ........................................................................................................................... 6

Fed. R. Evid. 901 ........................................................................................................................... 8

**Federal Regulations**

37 C.F.R. § 202.1 ......................................................................................................................... 11

## I. INTRODUCTION

Cisco's Opposition makes clear that Cisco hopes to try its case to the jury through high-level generalizations, with platitudes about its interface's "look and feel," but precious few details about any *protectable* expression and scarcely a gesture toward proving that any such expression was *original* to Cisco. Cisco's hand-waving at the question of actual copyrightable expression only intensifies the need for the Court to identify what protectable expression (if any) exists to prevent improper comparisons of content that the Copyright Act commits to the public. As explained in Arista's opening brief and below, Cisco cannot carry its burden of proving originality as to hundreds of the asserted CLI commands for which it enjoys no presumption of originality, and several of the other vaguely defined features it accuses Arista of copying—"hierarchies," modes, and prompts—are unprotectable ideas or systems that themselves were not original. The Court should therefore grant partial summary judgment for Arista on these aspects of Cisco's claims, and on Cisco's sole remaining patent claim as well, thereby narrowing and defining the issues for trial.

## II. ARGUMENT

### A. Cisco's Opposition confirms that it lacks any competent evidence to prove the originality of 198 CLI commands.

Cisco has not carried its burden to present admissible evidence that 198 of the asserted CLI commands were creative and independently created. Cisco is not entitled to a presumption of validity for those commands, yet it has presented *no* evidence to prove originality for 153 of them, and incompetent evidence for the rest. Accordingly, the Court should grant partial summary judgment for Arista as to these commands.

#### 1. The presumption of validity does not apply to the late-registered CLI commands.

Cisco's Opposition misconstrues the purpose and operation of the statutory presumption of validity. The presumption is a burden-shifting mechanism. In cases where the copyright holder timely registered the asserted work, the Copyright Act temporarily relieves the holder of its burden to prove originality, and instead requires the accused infringer first to come forward with "some evidence" that the work is not original. *See* 17 U.S.C. § 401(c); 5 Patry on Copyright

§ 17:109; *Lamps Plus, Inc. v. Seattle Lighting Fixture Co.*, 345 F.3d 1140, 1145 (9th Cir. 2003).

To enjoy that benefit, the copyright holder must pay the statutory price of timely registering its work. But Cisco insists on receiving the benefit without fulfilling its end of the bargain. Cisco does not dispute that it failed to timely register the 198 commands identified in Arista's motion. It argues instead that its registration of derivative works years after the fact retroactively entitles it to the presumption for any underlying content they contain. The Court need not be detained by this argument long because the Ninth Circuit squarely overruled it in *Cooling Systems & Flexibles, Inc. v. Stuart Radiator, Inc.*, holding that "[w]e . . . reject the argument that registration of the derivative work creates a presumption of validity of the copyright of the underlying work." 777 F.2d 485, 490 (9th Cir. 1985) (citing H.R.Rep. No. 1476, 94th Cong., 2d Sess. 57, *reprinted in* 1976 U.S. Code Cong. & Ad. News 5659, 5670), *overruled on other grounds as stated in Jackson v. Axton*, 25 F.3d 884 (9th Cir. 1994). And for good reason: Cisco's reinterpretation defies Section 103(b) of the Copyright Act, which holds that copyright protection for a derivative work "extends only to the material contributed by the author of such work, as distinguished from the preexisting material employed in the work." 17 U.S.C. § 103(b). Indeed, each of Cisco's copyright registrations discloses that the derivative works contain "preexisting" and "third party" computer code. *See* Dkt. No. 64, Exs. 3–28. Moreover, Cisco's interpretation would eviscerate Section 410(c)'s statutory bargain. Any copyright holder could make a minor modification to an antiquated work and then promptly register the derivative work, thereby "bootstrap[ing]" for the old work the presumption it would not otherwise deserve. *See Cooling Sys.*, 777 F.2d at 490. *Cooling Systems* forecloses Cisco's argument.

Cisco attempts to distinguish *Cooling Systems* by arguing that there the preexisting work had fallen into the public domain. Cisco's Opp. to Arista's M.P.S.J (Dkt. No. 372) ("Opp.") at 5:12–21. But that was not the basis of the holding. And in any event, Cisco, too, incorporated extensive public-domain material into the interface that it formerly proclaimed as "industry standard" and now contends is proprietary. The relevant question is *who* bears the burden of proving which elements of it were public-domain and which were original. Under *Cooling Systems* and a plain reading of Sections 103(b) and 410(c), for the 198 late-registered commands,

2

the answer is Cisco—yet it lacks any evidence to do so.

Nor should the Court extend the presumption to the late-registered commands in its discretion. Waiving the statutory deadline is appropriate when "there appear[s] to be little reason to call the validity of the facts in the certificate into question." 5 Patry on Copyright § 17:109; *see also Religious Tech. Ctr. v. Netcom On-Line Commc'n Servs., Inc.*, 923 F. Supp. 1231, 1242 (N.D. Cal. 1995) (extending presumption due to *both* affirmative "evidence of validity" *and* "the lack of a persuasive challenge to the validity of the copyrights"). Just the opposite is true here. As Dr. John Black explained in painstaking detail in his thoroughly researched expert report, the evidence shows that Cisco lifted its command syntax and terminology almost entirely from pre-existing public-domain sources. *See* Santacana Decl. ISO Arista M.P.S.J. ("Santacana") (Ex. 18 (Dkt. No. 328-13) ¶¶ 543–642; *see also id.*, Ex. 19 (Dkt. Nos. 328-14–328-16). Again, the Court need not weigh the credibility of this evidence or decide any factual questions to resolve this motion. But in the face of overwhelming evidence *disproving* originality, the Court should not excuse Cisco's delay and grant it a presumption that Congress did not see fit to bestow.

Relying on two district court cases (one of which is out-of-circuit), Cisco also claims that courts "routinely" waive the five-year deadline for a "collection of copyright registrations covering the same or related products." Opp. at 4:1 & 4:8. No law supports Cisco's "related-product-line" exception, including Cisco's own cases. In *Brighton Collectibles, Inc. v. RK Texas Leather Mfg.*, No. 10-CV-419-GPC (WVG), 2012 WL 6553403, at *2 (S.D. Cal. Dec. 13, 2012), the court made no mention of a "related-product-line" theory. Instead, the court extended the presumption because the "Defendants [did] not come forward with any evidence" undermining originality; "they simply rel[ied] on the passage of time to question whether [the plaintiff was] entitled to rely on the presumption." *Id.* Moreover, the *Brighton* court observed that when "designs merely repeat common, generic elements from the public domain . . . . courts have shifted the burden to the plaintiff." *Id.* Thus, *Brighton* hurts Cisco's cause, not helps it.

Likewise, in *CJ Products LLC v. Snuggly Plushez LLC*, 809 F. Supp. 2d 127, 144 (E.D.N.Y. 2011), the court extended the presumption to two late-registered designs because the "defendants . . . submitted no evidence undermining the validity of any of the copyrights at issue"

3
ARISTA'S REPLY IN SUPPORT OF PARTIAL SUMMARY JUDGMENT
Case No. 5:14-cv-05344-BLF (NC)

apart from pointing to similarities to preexisting products that turned out to be the plaintiff's own products. Only after explaining the defendants' failure to produce evidence disproving originality did the court note that the two late-registered designs were in the same product line as timely-registered ones. That fact was relevant there because, unlike here, the prior sources that the defendants pointed to as evidence of unoriginality were actually the plaintiffs' own works, which it had timely registered. Nothing in *CJ Products* suggests that courts apply a general "related-product-line" exception to the statutory five-year deadline—and if it did, *Cooling Systems* would overrule it in this Circuit.

### 2. No reasonable jury could conclude that the 198 late-registered CLI commands were creative and independently created by Cisco.

Without the statutory presumption, Cisco cannot carry its burden of proof. Cisco does not dispute that it has no percipient witness who could testify to the origins of the 198 late-registered commands that Arista identified in its motion. Thus, with discovery now closed, Cisco is left with a complete failure of proof on originality, a required element of its claim. Although it cannot identify the written embodiment of the CLI, Cisco likens its CLI to a book; but if so, for these 198 commands it is a book of dubious provenance and unknown authorship.

The "documentary evidence" that Cisco cites in its Opposition does not change this conclusion. First, of the 198 commands at issue, Cisco submits evidence of any sort as to only 45. *See* Opp. at 9:2–11:19 (citing Neukom Decl. ISO Cisco Opp. M.P.S.J. ("Neukom"), Exs. 7–35). Thus, for the remaining 153, there is *no* admissible evidence—documentary or otherwise—with which Cisco could carry its burden of proof. As to these 153 commands, the record is barren on a required element of Cisco's claim, and the Court should grant partial summary judgment in favor of Arista.[1] *See* Santacana Decl. ISO Arista Reply, Ex. A (listing 153 commands).

Second, Arista is also entitled to summary judgment on the 45 commands that Cisco

---

[1] As Arista explained in its opening brief, even if the Court looked beyond the record on this motion (which it need not do) and considered every document that Cisco cited in discovery as relevant to the origin of these commands, Cisco still could not withstand summary judgment. Those documents comprise 124 source code files, 14 bug tracking reports, 14 Cisco manuals or software versions, and 1 internal functional specification, all of which, at best, show only that Cisco at some point implemented the command—not that the command's "author" originated it himself or herself, as opposed to taking it from another source. *See* Santacana Decl. ¶ 3. This, presumably, is why Cisco did not bother submitting them to the Court.

attempts to support because the evidence Cisco relies on is inadequate to create a factual dispute concerning originality. The "key" question in determining originality "is whether original matter in which protection is claimed is the result of plaintiff's ingenuity rather than appropriation of another's material." 2 Patry on Copyright § 3:28; *see also Meshwerks, Inc. v. Toyota Motor Sales U.S.A., Inc.*, 528 F.3d 1258, 1268–69 (10th Cir. 2008). Even assuming the cited documents were admissible evidence, they do not speak to that question. Although Cisco purports to submit evidence of "debate" over "the specific wording of . . . commands" (*see* Opp. at 9:7–8), only two exhibits are evidence of an actual conversation between two or more people. Neither indicates the originality of the commands or the creative process. The first, referring to the "switchport backup interface" command, is an e-mail thread explaining that the command was worded that way because of the need to use "standard accepted terms" rather than "marketing" terminology. Neukom Ex. 8. The second, referring to the "spanning-tree transmit hold-count" command, cites to an IEEE standard as the origin of the commands. Neukom Ex. 38. Neither tends to prove that these command words were independently created as opposed to copied from other materials.

As for the remaining 43 commands, Cisco admits that none of the cited documents "evidence any internal debates about the wording." Opp. at 8:22–23; *see also* Neukom Exs. 7, 9–34. Nor do they otherwise suggest that the commands were independently created by Cisco. On the contrary, many show the opposite.[2] And none of them show anything more than that Cisco at some point implemented commands.

For example, Cisco relies on its Exhibit 7 to assert that "show dot1x statistics" and "dot1x

---

[2] The documents that Cisco cites for at least 15 of the remaining 43 commands expressly acknowledge that the commands were based on industry-standard terms. *See* Neukom Ex. 10 (stating "ipv6 nd router-preference" command is meant to "implement the 'default router preference' functionality as specified in the Internet Draft draft-ietf-ipv6-router-selection-xx.txt," an IETF industry standard document); Ex. 16 (stating author intended to implement IEEE standard in creating "clear spanning-tree counters," "show spanning-tree mst configuration," and "show spanning-tree mst interface" commands); Ex. 19 (stating "lacp rate" was created by copying preexisting "pagp rate" command and using "lacp" instead for use with LACP industry standard protocol); Ex. 21 (discussing BGP industry standard protocol); Ex. 24 (discussing IETF standards requirements, including use of "RADIUS" term for "radius-server deadtime" command); Ex. 25 (same, for "radius-server host," "radius-server key," "radius-server retransmit," and "radius-server timeout" commands); Ex. 28 (recognizing use of LACP standard protocol in "show lacp counters" and "show lacp neighbor" commands); Ex. 31 (same for STP industry standard and "show spanning-tree interface" command).

5
ARISTA'S REPLY IN SUPPORT OF PARTIAL SUMMARY JUDGMENT
Case No. 5:14-cv-05344-BLF (NC)

timeout reauth-period" were original. *See* Opp. at 9:2–13. But it shows nothing of the sort. Cisco concedes that the command syntax "show _____" pre-dated Cisco. *See* Santacana Ex. 7 (Almeroth Rpt.) (Dkt. No. 328-6) ¶ 115; *see also id.*, Ex. 18 (Black Rpt.) (Dkt. No. 328-13) ¶ 571. "Dot1x" is an IEEE-defined industry standard protocol and term. *See* Black Decl. ISO Arista Opp. to Cisco M.P.S.J., Ex. 3 (ECF No.381) at 2–5; Santacana Reply Ex. B (IEEE Std 802.1X2001), at 72–74 (Sept. 2001)). "Statistics" is another industry-standard term that is used and defined in the same published standard. Black Ex. 3 at 4; Santacana Reply Ex. B (IEEE 802.1x2001), at 62, 64, 68. And "timeout" is a computer industry term Cisco did not invent: it is also used in the IEEE standard, right alongside "reauth-period." *Id.* at 25 ("The time period for such timeouts is reAuthPeriod seconds."); Black Ex. 3 at 4. Cisco offers no evidence explaining what creative process could have gone into using these standard terms. Exhibit 7 shows only that the commands were added to the software—it is irrelevant to the question of whether the Cisco engineer responsible for these commands created them independently or copied them from pre-existing industry terminology.

Moreover, the emails and "discussion" documents on which Cisco relies are hearsay and thus incompetent to prove the matter for which Cisco offers them, even if their contents supported Cisco's claim. Fed. R. Evid. 801(c). Hearsay may be used at summary judgment if its proponent demonstrates that it will be able to offer *admissible* evidence to prove the disputed fact at trial. *See Fraser v. Goodale*, 342 F.3d 1032, 1036 (9th Cir. 2003). But the opposite is true here; Cisco does not dispute that the authors themselves are unavailable to testify at trial, and they did not testify by deposition either. Thus, even if the emails and "discussion" documents spoke to the question of originality (which they don't), there is no non-hearsay evidence that Cisco could present. *See Murphy v. Cty. of Yavapai*, No. 04-CV-1861-PCT (DGC), 2006 WL 2460916, at *5 (D. Ariz. Aug. 23, 2006) (expert reports and affidavit were inadmissible hearsay because it was "undisputed that [expert] will not be available to testify at trial"); *Bortell v. Eli Lilly & Co.*, 406 F. Supp. 2d 1, 9 (D.D.C. 2005) (At summary judgment, [w]ithout [affiants'] availability to testify and undergo cross-examination either at trial or in a pre-trial deposition, the Court cannot credit the affidavits as anything more than hearsay.); *Metro. Enter. Corp. v. United Techs. Int'l Corp.*,

1   No. 03-CV-1685-JBA, 2005 WL 2300382, at *7 (D. Conn. Sept. 21, 2005) (letter was
2   inadmissible hearsay at summary judgment because "parties agree[d] that [author] [was]
3   unavailable to testify"). In addition, none of the e-mails and other documents have been
4   authenticated by a competent declarant (such as the documents' authors), so the Court cannot
5   consider them at summary judgment. *See Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 777 (9th
6   Cir. 2002) (authentication by author of internal correspondence required at summary judgment).

7   Cisco's repeated reliance on the Almeroth Report's conclusory assertions that the CLI
8   commands are creative is also inadmissible. Where an issue calls for percipient testimony—as
9   with the case of originality—a party cannot create a dispute of fact by relying on the expert to
10  "fill in" where the party's factual record falls short. *United States v. Various Slot Machines on
11  Guam*, 658 F.2d 697, 700 (9th Cir. 1981) (at summary judgment, "an expert must back up his
12  opinion with specific facts"); *see also Sitrick v. Dreamworks, LLC*, 516 F.3d 993, 1001 (Fed. Cir.
13  2008); *Major League Baseball Properties, Inc. v. Salvino, Inc.*, 542 F.3d 290, 311 (2d Cir. 2008).

14  Finally, in an effort to avoid the element-by-element analysis that the Ninth Circuit
15  requires, Cisco falls back on its "process" of selecting industry-standard terms for use in its CLI,
16  citing *CDN Inc. v. Kapes*, 197 F.3d 1256, 1260 (9th Cir. 1999). In *CDN*, a case involving a price
17  guide for coin collectors—the defendant *agreed* that "CDN [did] not republish data from another
18  source or apply a set formula or rule to generate prices." *Id.* Instead, CDN's creativity stemmed
19  from its *departure* from the "bid and ask prices posted by dealers," the retail prices listed by other
20  "major coin publications," and the many other facts from which CDN "extrapolate[d]" and
21  "estimate[d]" the value of coins. *Id.* Here, in contrast, departure from industry-standard
22  terminology was *discouraged* (*see* Arista Opp. at 9–10; Santacana Ex. 4 at 126–28; Ex. 17 at 69–
23  70; Ex. 24 at 194; Ex. 26 at CSI-SLI-00754394; Ex. 27 at CSI-CLI-00836646–47; Ex. 31 at 5),
24  and Arista does *not* acknowledge that the commands at issue are original (because they aren't).
25  Cisco's "process" argument is, at bottom, a renewal of its plea for a presumption of originality
26  that Sections 103(b) and 410(c) do not entitle it to, and should be rejected for all the same
27  reasons. Cisco must prove its claim to prevail, and for these 198 commands, it is incapable of
28  doing so.

**B.  Cisco has not raised any competent evidence supporting the copyrightability of command hierarchies or modes and prompts.**

Cisco responds to Arista's targeted motion for summary judgment of non-copyrightability as to Cisco's command "hierarchies" and modes and prompts with sweeping generalizations about the "Cisco CLI" and distortions of the record and the law.  But these generalizations and nebulous claims of "look and feel" cannot bestow copyright protection on unprotectable ideas.

**1.  Cisco fails to identify any copyrightable expression in the asserted command "hierarchies."**

Despite conceding that it cannot "claim copyright on the idea of hierarchical commands" (Opp. at 14:5), Cisco urges a mistaken view of the law and the facts that would enable it to do exactly that.  Cisco makes no real effort to define its claimed "hierarchy" in a way that distinguishes it from the unprotectable idea of grouping commands by initial words.  Cisco provides a number of vague references to "hierarchical organization" or "original organization of them into particular hierarchies" (*see* Opp. at 14), but it does not cite a single excerpt from any of the copyrighted works showing what the claimed "organization" is.  Instead, Cisco points to command "trees" created by its lawyers or experts for this litigation, with no explanation of where or how these "trees" are expressed in the works.[3]  Opp. at 14–15.

Even accepting Cisco's lawyer-created evidence, Cisco's "hierarchies" are defined simply by the initial words of the commands themselves.  As Cisco's opposition puts it, "[b]ecause Cisco's command expressions are organized hierarchically, the copying of Cisco's command expressions . . . itself reflects Arista's copying of Cisco's command hierarchies."  Opp. at 14:12–14.  In other words, the "hierarchies" do not exist independent of the command words, and if someone uses the commands, she necessarily also uses the "hierarchies," simply because groups of commands "shar[e] root words and root-word combinations."  Opp. at 14:14–16.  For example, the "show interfaces" command is necessarily part of the "show" hierarchy, as Cisco defines it, because of the common first word.  Cisco's "hierarchies" are nothing but an organizational idea— grouping commands into categories—that is inherent in the command words themselves.

---

[3] Cisco's "hierarchy" and command charts thus lack foundation and should be disregarded for several reasons.  *See* Fed. R. Evid. 901 (authentication), 702 (expert opinion must be "based on sufficient facts or data"), 801 (hearsay).

8

1077520

Identifying a grouping of commands based solely on the commonality of initial command words—as Cisco has done in this litigation—offers no protectable expression; it is merely the embodiment of an idea.

Cisco has identified no legal basis for finding its command "hierarchies" protectable by copyright. Cisco fails to address *MiTek*, which found a comparable set of menu "tree structure[s]" to be an uncopyrightable functional process. *See* Arista Mot. at 14. Likewise, Cisco dismisses *Ashton-Tate* because it addressed joint authorship—but the court's analysis depended fundamentally on whether the alleged joint author contributed any copyrightable material; copyrightability was at the heart of the decision, and the Ninth Circuit expressly approved the district court's analysis.[4] *See id.* at 13–14; *Ashton-Tate Corp. v. Ross*, 916 F.2d 516, 521–22 (9th Cir. 1990).

Cisco's own authorities also fail to support its claim that its "hierarchies" are copyrightable. *See* Opp. at 14–15. Unlike *Atari Games Corp. v. Nintendo of Am. Inc.*, which involved a "unique sequenc[ing]" of instructions creating a "purely arbitrary data stream," or the other cases Cisco cites, Cisco's "hierarchies" exist only as an abstraction that is a necessary byproduct of the commands themselves. 975 F.2d 832, 840 (Fed. Cir. 1992). Also, although Cisco claims that it can assert copyright in the overall CLI (despite never doing so in discovery) based on an arrangement or assembly even of unprotectable elements, such an arrangement would also need to pass creative muster itself, and Cisco's cannot. *See Satava v. Lowry*, 323 F.3d 805, 811 (9th Cir. 2003) ("[A] combination of unprotectable elements is eligible for copyright protection only if those elements are numerous enough and their selection and arrangement original enough that their combination constitutes an original work of authorship."); Arista Opp. to Cisco Mot. for Partial S.J. (Dkt. No. 380), at 9.

That leaves Cisco with its fallback argument that all aspects of its CLI are copyrightable because the CLI is a "user interface." *See* Opp. at 1, 14. But that is not the law. As with any other component of a computer program, protection for components of a "user interface"

---

[4] Cisco's comparison of the "list of commands" at issue in *Ashton-Tate* to its own purported "robust user interface" is also beside the point because only Cisco's "list of commands"—the abstract hierarchies—are at issue here.

"depends on whether, on the particular facts of each case, the component in question qualifies as an expression of an idea, or an idea itself."[5] *Johnson Controls, Inc. v. Phoenix Control Sys., Inc.*, 886 F.2d 1173, 1175 (9th Cir. 1989); *see also Oracle Am., Inc. v. Google Inc.*, 750 F.3d 1339, 1356 (Fed. Cir. 2014). The Ninth Circuit requires unprotectable aspects of a user interface to be identified and eliminated from the scope of the asserted copyright. *Apple Computer, Inc. v. Microsoft Corp.*, 35 F.3d 1435, 1443 (9th Cir. 1994) (dissecting graphical interface); *Brown Bag Software v. Symantec Corp.*, 960 F.2d 1465, 1475–76 (9th Cir. 1992) (dissecting to define scope of copyright); *see also Oracle*, 750 F.3d at 1355 ("[T]hose elements of a computer program that are necessarily incidental to its function are . . . unprotectable.").

Finally, although Cisco cannot dispute that Section 102(b) bars copyright protection for ideas and systems, it insists that the rule has no bearing here. Essentially, Cisco claims that regardless of whether certain CLI elements such as "hierarchies" are abstract ideas, or systems or methods, the CLI as a whole should be considered as equivalent to a "book." Opp. at 16–17 (seeking to distinguish *Baker v. Selden*, *Bikram's Yoga College*, and *Seltzer v. Sunbrock* on that basis). Cisco's interpretation misses the point of those cases, which is that a system or method— even if *also* explained in a book—is not itself protectable under copyright law. *See* Arista Mot. at 11–14. The widely varied facts of those cases simply confirm that the idea-expression dichotomy codified in Section 102(b) is a fundamental limit on copyright that applies whenever someone attempts to use copyright to prevent others from using ideas or methods. *Id.*; 17 U.S.C. § 102(b).[6]

### 2. The asserted modes and prompts are uncopyrightable and unoriginal based on the undisputed facts.

Cisco's struggle to identify any protectable "expression" in its command modes and

---

[5] Moreover, *Johnson Controls* was an appeal from the grant of a preliminary injunction, based on the district court's factual finding that the interface in question involved original creative expression, rather than purely functional elements—and the Ninth Circuit reviewed only for clear error, making its guidance of limited value here. *Johnson*, 886 F.2d at 1175–76.

[6] Cisco also dismisses *Sega Enterprises v. Accolade* and *Sony* as irrelevant here, because they discuss these principles in the context of fair use. *See* Opp. at 17. However, the Ninth Circuit does not draw such an artificially narrow distinction: in *Bikram*, the Ninth Circuit cited *Sega* in its copyrightability analysis. *Bikram's Yoga Coll. of India, L.P. v. Evolation Yoga, LLC*, 803 F.3d 1032, 1039–40 (9th Cir. 2015). Although the *Oracle* court reached a contrary conclusion in 2014, without the benefit of the Ninth Circuit's 2015 decision in *Bikram*, that view is not controlling here.

1  prompts confirms that summary judgment is also appropriate for these aspects of its CLI.  Other
2  than repeating its failed arguments claiming protection for its entire interface, Cisco appears to
3  inject a new theory that its modes are creative expression because of "the particular arrangement
4  of modes and prompts in relation to multi-word" commands.  Opp. at 18.  But Cisco has never
5  explained what this "particular arrangement" is: not in discovery, nor in opposition to this motion.
6  Likewise, Dr. Almeroth's chart on modes and prompts says nothing about the assignment of
7  commands to different modes being either protectable expression or copied by Arista.  Dkt. No.
8  373-4 (Almeroth Ex. 4).

9  Instead, the only evidence about the modes and prompts that Cisco disclosed in discovery
10  is that they consist of the mode names and prompt displays—which are unprotectable.  First,
11  Cisco cannot copyright the idea of "plac[ing] commands into different modes with unique
12  prompts"—as opposed to "a unified command structure without different modes" or prompts.
13  Dkt. No. 373-1 (Almeroth Decl., Ex. 1) ¶ 116; Opp. at 19:3–4.  Indeed, Dr. Almeroth confirmed
14  that this is nothing more than an idea, calling it "the ***concept*** of the prompts and the ***use*** of the
15  prompts to distinguish between the other modes."  Santacana Ex. 22 (Dkt. No. 328-17) (Almeroth
16  Dep. Tr.) at 269:5–270:3.

17  Second, Cisco argues its modes are creative because it "could have used different names
18  for the asserted modes."  Opp. at 19:4–5; Dkt. No. 373-1 (Almeroth Decl., Ex. 1) ¶ 116.  This
19  argument fails too, because (1) these functional names and prompts are too fragmentary and
20  factual to be copyrightable, and (2) Cisco cannot materially dispute that it copied the modes and
21  prompts from other systems.

22  One or two-word mode names are unprotectable on their face, even if an alternative short
23  name may have been feasible.  *See* Arista Mot. at 17; 37 C.F.R. § 202.1; *Narell v. Freeman*, 872
24  F.2d 907, 911 (9th Cir. 1989); *Shaw v. Lindheim*, 919 F.2d 1353, 1362 (9th Cir. 1990); *Southco,*
25  *Inc. v. Kanebridge Corp.*, 390 F.3d 276, 285 (3d Cir. 2004) (endorsing 37 C.F.R. § 202.1).  Cisco
26  bases its claim to copyrightability in these short phrases on a misleading quotation of *Hutchins v.*
27  *Zoll Medical Corp.*, 492 F.3d 1377 (Fed. Cir. 2007).  Far from saying that "short phrases are still
28  'subject to copyright in the form in which [they are] presented'" as Cisco claims (Opp. at 18–19),

*Hutchins* stated only that a "compilation of public information *may be* subject to copyright [etc.]" (*id.* at 1385, emphasis added). In fact, *Hutchins* affirmed a defense summary judgment because it found nothing copyrightable in various "entirely functional" phrases in a set of instructions for performing CPR (such as "call for help" and "give two breaths")—arguably more expressive than the functional mode names and prompts here. *Id.* at 1384–85. *Hutchins* also held it "axiomatic" that there is no protection for "fragmentary words and phrases" and "forms of expression dictated solely [by] functional considerations." *Id.* at 1384. This is the same rule expressed in *Narell*, which rejected protection for routine factual descriptions (with far more words than the modes and prompts here, which are also indisputably ordinary and functional), though it suggested in *dicta* that copying two lines of *poetry*, or a stanza, might constitute infringement. 872 F.2d at 912; *cf.* Opp. at 19:25–26. Whatever the command modes and prompts may be, they are not poetry.

Cisco also cannot plausibly dispute that it copied its modes and prompts from pre-existing systems. See Arista Mot. at 17. Cisco's founding engineer Kirk Lougheed testified ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ See *Brown Bag*, 960 F.2d at 1475 (no protection for features "inspired" by prior program).

---

[7] And indeed, Cisco ignores ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ *Id.* at 109:12-14. Other witnesses confirmed that use of a "privileged" mode was common in the industry well before Cisco. Santacana Ex. 23 (Dkt. No. 328-18) (Li Dep. Tr.) at 29:4–22; *id.*, Ex. 24 (Dkt. No. 328-19) (Satz Dep. Tr.) at 28:4–16; Arista Mot. at 17. Cisco mischaracterizes both of these witnesses as simply testifying that they "did not invent the word privileged," Opp. at 21:11–12; but in fact, both testified to the prior use and existence of "privileged" command modes in pre-Cisco operating systems. Cisco also mischaracterizes other testimony in a meritless attempt to manufacture factual disputes. *See* Opp. at 21:2–3 (mischaracterizing Lougheed testimony re DEC); *id.* at 21:1–3; Santacana Ex. 10 (Dkt. No. 328-9) (Lougheed Dep. Tr.) at 369:9–20 (admitting that Stanford code used # as the prompt character for its privileged mode).

Finally, Cisco does not challenge Arista's indisputable evidence that use of ">" and "#" as prompt symbols is not original to Cisco. See Opp. at 21:13–16; Arista Mot. at 17:15–22, 4:6–19. Cisco's only argument on this point (and attempt to avoid the *Torah Soft* rule that a choice among common symbols is not sufficiently creative to be protectable) is that its modes and prompts "are not comprised simply of [the unoriginal] symbols." Opp. at 21:15–16. This is true, in that Cisco copied names *as well as* the prompt symbols—but that does not change the fact that the prompt symbols and mode names are not original to Cisco and thus cannot be claimed as its copyright.

### C. Summary judgment of non-infringement should be granted as to the '526 patent.

As explained in Arista's opening brief, the Court's claim construction requires that the claimed "command parse tree" must "hav[e] elements, such that each element specifies at least one command action value for *each* generic command component." Cl. Const. Order (Dkt. No. 310) at 10:10–20, 13:22–26 (emphasis added). Every asserted claim contains this requirement, and Cisco relied on this "unique" structure to distinguish prior art at the PTO. But Cisco's expert has admitted that, in Arista's products, there are generic command components for which there are *no* corresponding command action values, because—like the prior art that Cisco distinguished—in Arista's products "command action values" are associated only with complete, valid commands. Arista Mot. at 19–20. Accordingly, Arista does not infringe the '526 patent.

Cisco's Opposition does nothing to change that conclusion. Instead, Cisco ignores the Court's claim construction and reinterprets the claim language to require that a tree element need only specify a command action value for *at least one* generic command component (instead of for "each" generic command component). Cisco does not, however, raise any disputed fact about how the accused products work—only about what the claims require, which is a legal issue for the Court (and one that the Court has already decided). Accordingly, this issue is ripe for summary judgment in favor of Arista.

Cisco points to the so-called "context.state variable"—which it contends is a "command action value"—and asserts that its expert, Dr. Jeffay, has identified one "for each generic command component." Opp. at 24:8–11. Cisco cites to *seventy-three* paragraphs in Dr. Jeffay's report to support this assertion. *Id.* (citing ¶¶ 72–120, 140–49, 150–63). It cites to everywhere

13

1   because the promised evidence is nowhere.  Dr. Jeffay opines only that there is a context.state
2   variable containing at least one "command action value" associated with *each element* of the
3   tree—not with *each generic command component*.  Jeffay Decl. (Dkt. No. 374), Ex. 1 ¶ 154
4   ("the context.state variable…is both contained in each element of the tree and contains command
5   action values"); *see also* Neukom Ex. 53 (Jeffay Depo. Tr.) at 113:13–21 ("Q. There's a different
6   context.state variable for each of the elements? A. Yes.").  That is unsurprising, since the
7   context.state variable merely tracks the "context" of the parsing operation (e.g., which
8   TokenRules have been matched and which remain to be matched).  *See* Jeffay Decl., Ex. 1 (Dkt.
9   No. 371-18) ¶¶ 102, 106, 145.  It does not assign a "command action value"—i.e., "a value that
10  identifies a prescribed command"—to *each* command word, nor does Dr. Jeffay assert that it
11  does.
12         On the contrary, Dr. Jeffay explains that a TokenRule's context.state variable is updated
13  when the rule is matched, and that this update "invokes [the TokenRule's] value function (*if*
14  *defined*)." *Id.* ¶ 106 (emphasis added).  If a TokenRule's value function is *not* defined, on the
15  other hand—i.e., if it is set to "None"—then there is no "command action value" to invoke for
16  that TokenRule (or its corresponding command word), as Dr. Jeffay admits.  *See* Arista Mot. at
17  18:26–19:7.  Thus, even accepting Dr. Jeffay's assertions as true, the context.state variable fails to
18  specify "at least one command action value for *each* generic command component."  Cl. Const.
19  Order at 10:12, 13:22–26 (emphasis added).  It therefore fails to raise a triable issue under the
20  Court's claim construction.
21         Cisco's other arguments are equally unavailing.  It block-quotes an entire paragraph from
22  Dr. Jeffay's report, the bottom-line of which is: "[E]ach node/element in the tree has both a
23  generic command component and a corresponding command action value."  Opp. at 23–24 (citing
24  ¶ 158).  But that is not enough to prove infringement.  All that Dr. Jeffay purports to show is that
25  each element in the tree has *at least one* generic command component with a corresponding
26  command action value—not that *each* generic command component in the element has a
27  corresponding action value.
28         Cisco also rehashes its now-abandoned theory that every "value function" in Arista's

1  products constitutes a command action value.  As Arista explained in its opening brief, Dr. Jeffay
2  conceded in deposition (as he had to do) that value functions that are set to "None" are not
3  "command action values." Arista Mot. at 18:26–19:7.  Thus, while Cisco emphasizes his
4  observation that every CLI rule has an associated value function, Opp. at 23:13–19, that fact is
5  irrelevant because Dr. Jeffay has admitted that many of those value functions (the ones set to
6  "None") are not "command action values" as claimed in the '526 patent.

7  Cisco cannot change the fundamental truth of how Arista's products work.  It is
8  undisputed that Arista's parser invokes a value function leading to some action *only* if the parser
9  determines that it has received a complete, valid command.  Arista Mot. at 20:25–21:3.  Unlike
10 the system claimed in the '526 patent, if a user enters only some valid command words and other
11 invalid ones into an Arista switch, the switch will return an error message.  *Id.* at 21:4–14.
12 According to Cisco, this inability to "execute a generic command for a partially valid input" was
13 a hallmark that distinguished the prior art from the patent.  *Id.*  It is therefore unsurprising that
14 Cisco's infringement claim falls short:  Arista's parser simply does not contain the purportedly
15 novel parse tree that the '526 patent claims.

16 Because Cisco cannot show that the accused "command parse tree" in Arista's products
17 "ha[s] elements, such that each element specifies at least one command action value for each
18 generic command component"—which is a requirement of every asserted claim—the Court
19 should grant summary judgment of non-infringement.

20 **III.  CONCLUSION**
21 For the foregoing reasons, the Court should grant Arista's Motion for Partial Summary
22 Judgment.

23                                                      Respectfully submitted,

24 Dated:  July 21, 2016                                KEKER & VAN NEST LLP

26                                          By:  */s/ Brian L. Ferrall*
                                                  BRIAN L. FERRALL

27                                                Attorneys for Defendant
28                                                ARISTA NETWORKS, INC.

15
ARISTA'S REPLY IN SUPPORT OF PARTIAL SUMMARY JUDGMENT
Case No. 5:14-cv-05344-BLF (NC)

1077520