Sean S. Pak (SBN 219032)
seanpak@quinnemanuel.com
John M. Neukom (SBN 275887)
johnneukom@quinnemanuel.com.
QUINN EMANUEL URQUHART &
SULLIVAN LLP
50 California Street, 22nd Floor
San Francisco, CA 94111
Telephone: (415) 875-6600
Facsimile: (415) 875-6700

ATTORNEYS FOR PLAINTIFF CISCO
SYSTEMS, INC.

KEKER & VAN NEST LLP
ROBERT A. VAN NEST - # 84065
rvannest@kvn.com
BRIAN L. FERRALL - # 160847
bferrall@kvn.com
DAVID SILBERT - # 173128
dsilbert@kvn.com
MICHAEL S. KWUN - # 198945
mkwun@kvn.com
633 Battery Street
San Francisco, CA 94111-1809
Telephone:    415 391 5400
Facsimile:    415 397 7188

ATTORNEYS FOR DEFENDANT ARISTA
NETWORKS, INC.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| CISCO SYSTEMS, INC.,<br><br>      Plaintiff,<br><br>  v.<br><br>ARISTA NETWORKS, INC.,<br><br>      Defendant. | Case No. 5:14-cv-05344-BLF (NC)<br><br>**JOINT DISCOVERY LETTER: DEFENDANT ARISTA NETWORKS, INC.'S MOTION REGARDING PLAINTIFF CISCO SYSTEMS, INC.'S PRIVILEGE CLAIMS AND CISCO'S RESPONSE**<br><br>Judge:     Hon. Nathanael Cousins<br>Hearing:   July 27, 2016, 2:00 p.m.<br>Date Filed: December 5, 2014<br>Trial Date: November 21, 2016 |

Page 1

## I.    Arista's Motion

Arista moves to compel two categories of documents that Cisco has withheld based on assertions of privilege: **First**, Cisco refuses to produce communications with former Cisco employee and current Arista board member Charles Giancarlo relating to a 2003 lawsuit that Cisco brought against Huawei. But at the same time, Cisco contends that it always believed and acted as though the CLI was copyright-protectable, and that Arista knew or should have known based on Mr. Giancarlo's knowledge of the *Huawei* suit. Under well-established law, Cisco can't have it both ways; if it wants to portray the *Huawei* lawsuit (and Mr. Giancarlo's role in it) as proof of its commitment to protect the CLI as exclusively Cisco's, it must allow discovery into what it *actually* knew about Cisco's views on the copyrightability of its CLI. **Second**, Cisco has withheld or redacted 28 emails sent to a Cisco mailing list called "Clueless," an open discussion forum for Cisco employees with uncontrolled access and hundreds of subscribers. Cisco undoubtedly has reasons it wants to withhold these emails, but they are not privileged.

### A.    Background

Arista Networks, founded in 2004, invented a new paradigm of Ethernet-switch technology to break the lethargy that had stifled innovation in the switch market. *See generally* ECF No. 65 at 1. Although Arista launched its first switch in 2008, it was not until December 2014 that Cisco accused it of infringing Cisco's copyright by using widely-employed command-line-interface ("CLI") commands. Arista's defenses of fair use and equitable estoppel assert, *inter alia*, that Cisco *encouraged* the industry to use the very CLI commands that it now claims are proprietary, holding them out as "industry standard" while companies like Dell, HP, Brocade, Juniper, and IBM openly used hundreds or more of them as they likewise promoted their adherence to the "industry standard CLI."

Cisco asserts that, despite the wide emulation of that CLI across the industry, Cisco's Huawei litigation "confirm[ed] that Cisco has always believed that its copyrighted works and IOS CLI are proprietary to Cisco." *See* Ex. A ¶ 64. And Cisco alleges that Arista knew or should have known that Cisco believed its CLI was proprietary. ECF No. 64 ¶ 43. For both, it relies in part on the fact that current Arista board member Charles Giancarlo (formerly a Cisco executive), signed a declaration (which Cisco filed under seal) in a 2003 lawsuit against Huawei Technologies stating that "Huawei's unlawful copying of Cisco's copyrighted materials, including the IOS code, the CLI, and the user manuals, will cause Cisco substantial irreparable injury if it is not enjoined by the Court." Ex. B (Giancarlo Decl.) ¶ 12.

In March 2016, Cisco waived the confidentiality it had asserted over that declaration and produced it in this litigation so that it could ask Mr. Giancarlo about it in deposition. During the deposition, Cisco questioned him extensively about his knowledge of Cisco's positions in the *Huawei* case, but instructed him not to reveal privileged communications. Mr. Giancarlo testified that, when he signed the declaration, he believed that Cisco's CLI was an open industry standard and was not copyrightable, but explained that "the basis of that is based on privileged Cisco information." Ex. C (Giancarlo Dep. Tr.) at 114:11–116:10. Cisco refused to let him testify about the preparation of the declaration or his understanding of the reasons for including the CLI in the *Huawei* lawsuit, which primarily concerned allegations of stolen Cisco source code. *Id.* at 158:16–162:20. In keeping with those privilege assertions, Cisco has included approximately 21 documents on its privilege log that appear to be communications with Mr. Giancarlo about the *Huawei* case. *See* Ex. D (relevant excerpts from Cisco's privilege log).

Cisco has also listed on its privilege log 104 emails sent to a mailing list at Cisco called "Clueless." The purpose of the "Clueless" mailing list is to "ask broad sweeping difficult

Page 2

questions that you're Clueless of where else you might ask them." Ex. E (Remaker 3/3/16 Dep. Tr.) at 60:10–11. "Anybody can join and monitor the Clueless mailing list." *Id.* at 60:21–22. From Cisco's internal documents, it appears that the mailing list has had hundreds of members at a time. Of the 104 emails sent to the "Clueless" list on Cisco's log, 28—the ones whose production Arista moves to compel—were *not* copied to any attorney, and their descriptions in the log do *not* state that they contain communications from attorneys or that they were prepared under the direction of counsel in anticipation of litigation. *See* Ex. F.

Arista's request for relief is ripe and timely. Under the parties' ESI stipulation, all privilege logs were due May 27, 2016. Cisco belatedly served its privilege logs on June 2 and 6. Under the ESI stipulation, Arista then had thirty days to lodge objections with Cisco, even if "the log(s) are produced after all productions are complete . . . regardless of the date of the close of fact discovery." ECF No. 48 at 16:16–18. Arista timely served objections on June 28; Cisco responded over two weeks later, on July 15. The parties met and conferred by phone multiple times (including on July 7, 15, and 20), but Cisco continually refused to concede the parties were at an impasse. On July 20, Arista provided Cisco the portion of this letter related to Mr. Giancarlo, and on July 22, the portion related to the Clueless email list. Moreover, in its June 20 Order, this Court acknowledged that "fact discovery has already passed," but nonetheless expressly anticipated resolving any "[f]uture discovery disputes" on July 27. ECF No. 319.

### B.  Argument

By withholding communications with Mr. Giancarlo relating to the *Huawei* litigation, Cisco impermissibly seeks to use the attorney-client privilege as both "a sword and a shield." *Chevron Corp. v. Pennzoil Co.*, 974 F. 2d 1156, 1162 (9th Cir. 1992). Cisco may not argue that its suing *Huawei* evidences its commitment to claim copyright in the CLI, and claim Mr. Giancarlo (and therefore Arista) knew that Cisco believed its CLI was proprietary—while using the privilege to thwart disclosure of his actual knowledge of Cisco's beliefs on that subject, because "fairness requires a waiver when the privilege holder raises a claim or defense that puts privileged communications at issue." *Apple Inc. v. Samsung Elecs. Co.*, 306 F.R.D. 234, 241 (N.D. Cal. 2015).

Courts use a three-part test to determine whether a party waived attorney-client privilege by bringing a particular claim or defense. The court considers (1) "whether the party is asserting the privilege as the result of some affirmative act, such as filing suit"; (2) whether "through this affirmative act, the asserting party puts the privileged information at issue"; and (3) whether "allowing the privilege would deny the opposing party access to information vital to its defense." *United States v. Amlani*, 169 F. 3d 1189, 1195 (1999) (quoting *Home Indem. Co. v. Lane Powell Moss & Miller*, 43 F. 3d 1322, 1326 (9th Cir. 1995)).

Cisco's assertion of privilege is the result of two affirmative acts: first, Cisco sued Arista, and second, Cisco placed its communications with Mr. Giancarlo about the *Huawei* litigation at issue by asserting that the *Huawei* litigation shows its belief in and commitment to the proprietary nature of the CLI, and that Mr. Giancarlo knew as much when he joined Arista's board. *See Id.* In so doing, Cisco has put at issue its legal rationale for including the CLI claim in its suit against Huawei, and its communications with Mr. Giancarlo regarding that claim, even if they might otherwise be privileged. Finally, allowing Cisco to shield these communications unfairly prejudices Arista. Mr. Giancarlo has already testified that his understanding of the copyrightability of Cisco's CLI is at odds with the argument Cisco intends to make in this case. If Cisco is going to suggest that Mr. Giancarlo's declaration affirms Cisco's commitment to enforcing its CLI, Mr. Giancarlo must be allowed to present the whole truth.

Page 3

Cisco should also be compelled to produce the 28 plainly unprivileged emails to the "Clueless" email list. *See* Ex. F (listing e-mails); Ex. H, Appx. A. The attorney-client privilege protects "confidential disclosures made by a client to an attorney in order to obtain legal advice" and the "advice in response." *In re Grand Jury Investigation*, 974 F.2d 1068, 1070 (9th Cir. 1992). As the party asserting the privilege, Cisco bears the burden of establishing the elements of privilege for each purportedly privileged document. *Id.* at 1071 n.2. To carry that burden, Cisco was required in its privilege log to "provide sufficient detail to demonstrate fulfillment of all the legal requirements for application of the privilege." *Bank Brussels Lambert v. Credit Lyonnais (Suisse), S.A.*, 210 F.R.D. 506, 509 (S.D.N.Y. 2002) (citing FRCP 26(b)(5)(A)(ii)).

One could argue that, given the general-purpose nature of the "Clueless" mailing list and its unrestricted access to any employee who wants to subscribe, all 104 logged emails sent to that list are unprivileged because they are inconsistent with maintaining confidentiality. *See United States ex rel. Barko v. Halliburton Co.*, 74 F. Supp. 3d 183, 191 (D.D.C. 2014) (holding widely disseminated litigation hold notices defeated privilege claim). But Arista's argument is narrower. In deference to the importance of the attorney-client privilege, Arista only seeks to compel production of widely disseminated, apparently relevant Clueless emails that do not contain an attorney and bear no indicia of privilege. For these 28 emails—for which Cisco asserts vague and spurious privilege grounds such as that they "reflect[] communication prepared in order to receive" legal advice, even though they include no lawyers—Cisco has not carried its burden, and Cisco should be compelled to produce them.

## II.    Cisco's Response

With this letter, Arista now initiates two different motions to compel. ***First***, both of these motions should be denied because they are time-barred. *See* II.A. (below). ***Second***, Arista's (untimely) argument that Cisco waived any privilege relating to Mr. Giancarlo's time as an executive of Cisco is demonstrably wrong, and a review of Mr. Giancarlo's deposition shows that. Cisco's questions to Mr. Giancarlo were not directed to legal advice he was privy to in the past (when he was a Cisco executive), but instead directed to contradictory statements he made in two non-privileged documents. *See* II.B. (below). ***Third***, Arista's (untimely) argument that it should receive copies of about 25 internal Cisco emails is based on a legally unfounded (indeed, rejected) theory that documents may not be privileged unless expressly sent to or from attorneys. *See* II.C. (below).

### A.    Arista's Disputes Are Time-Barred

Fact discovery for non-damages issues closed in this case on May 27, 2016. Dkt. 253. The parties thus had until June 3, 2016, to initiate motions to compel. *See* Civil LR 37-3. Arista's instant motions to compel are untimely by almost two months and should be denied on that basis.

Arista has recently suggested that its motions (almost two months late) should nevertheless be considered timely based on this Court's (Hon. Nathanael Cousins) Order of June 20, 2016. But that Order specified only that "all remaining discovery disputes" would be "heard on or before July 27." Dkt. 319. That Order did not modify Judge Freeman's scheduling order (Dkt. 253), nor Civil LR 37-3's timing requirement for motions to compel. Arista cannot use this Court's specification of a hearing date for "all remaining discovery disputes" as an opportunity to circumvent the case schedule and to launch new, untimely discovery disputes.

Even more recently, on Friday, Arista suggested that its (almost two months late) motions to compel should be considered timely given a May 2015 stipulation of the parties. But that stipulation provided only that the parties had 30 days after receipt to challenge privilege logs.

Page 4

Dkt. 48 at p. 16. That stipulation did not change Judge Freeman's scheduling order nor Civil LR 37-3. More importantly: Even if that May 2015 stipulation (Dkt. 48) provided the parties 30 days after receiving privilege logs to move to compel on withheld documents, Arista missed that deadline as well and by multiple weeks. Arista's Exhibits D and F (filed herewith) include excerpts of the challenged privilege logs. They both indicate (accurately) that the privilege log entries that Arista now challenges were served on Arista on June 2, 2016. Even supposing that Arista was permitted to move to compel on those privilege log entries within "30 days" of receiving them (Dkt. 48), Arista missed that deadline by almost ***three weeks***.

Arista's complaints are late, and by multiple weeks. Arista has waived its challenges to Cisco's privilege logs, and the Court should not tolerate motions to compel that are so tardy.

### B.    Cisco Has Not Waived Privilege for Mr. Giancarlo

Shortly after Cisco filed this case, Mr. Giancarlo (a former executive of Cisco and a current board member of Arista) publicly issued a "blog" statement denigrating the factual bases for Cisco's claims. *See* Ex. G. That December 2014 public statement by Mr. Giancarlo (for Arista) is contradicted by a non-privileged fact declaration that he signed in 2003, while he was an executive with Cisco, laying out numerous factual statements about Cisco's copyrighted Command Line Interface and its importance to Cisco. Cisco thus took Mr. Giancarlo's deposition to explore his ***personal knowledge*** and ***fact bases*** for making such contradictory statements ***in non-privileged*** settings.

At Mr. Giancarlo's deposition, counsel for Cisco was exceedingly (and repeatedly) careful to confine all questions to ***factual*** matters for which Mr. Giancarlo had ***personal knowledge*** that was ***not*** based on prior privileged communications. Likewise, Cisco did not ask the witness about legal strategy or positions, but instead his personal knowledge and bases for making factual statements in his 2014 blog posting (for Arista) versus his 2003 fact declaration. *See* Ex. C at 51:17-52:12 & 52:24-53:17(asking the witness at the outset to refrain from disclosing anything based on prior communications with Cisco counsel); 53:18-19 ("[w]ithout disclosing attorney-client communications…"); 54:22-55:21 (Mr. Giancarlo explaining that the basis for his testimony was testing done by a Cisco business group with no involvement from Cisco legal); 57:17-21 ("being mindful not to disclose attorney-client communication that you had as an executive at Cisco…"); 66:21-67:3 ("I intend to be asking only for information which you know that is not attorney-client privileged or doesn't disclose attorney work product…"); 102:10-103:18 ("Without disclosing the substance of any attorney-client communications, what was the point of this declaration…" followed by the witness's answer in which he explained his goals as a "business leader" at Cisco); 125:5-21 (exchange in which the witness mentioned "legal strategy," Cisco counsel interrupted "I'm not asking about legal strategy," witness responded "I'm very clear. I'm not going down that road…"); 156:11-157:15 (start of Arista's direct examination, in which counsel for Arista recognized the lack of waiver for preceding questions and asked his own witness to provide Cisco counsel an opportunity to issue privilege instructions); 158:16-159:6 (Cisco objection on privilege); 162:14-20 (Cisco objection on privilege); *see also* Ex. H (July 15, 2016, correspondence from Cisco counsel) at 2-4 (citing to and quoting from portions of that transcript).

The reason that Mr. Giancarlo is relevant to this lawsuit is not because of his privileged communications with Cisco counsel while he was a Cisco executive (or his more recent communications with Arista counsel). Mr. Giancarlo is relevant because he submitted a fact declaration in 2003 regarding Cisco's CLI, and he made a contradictory public statement about

Page 5

Cisco's CLI for Arista in 2014. Cisco has every right to ask the witness about his personal knowledge and factual bases for those non-privileged statements, and that is all that has occurred. Indeed, reviewing the deposition transcript makes clear that Cisco carefully confined its questions to non-privileged subject matter to avoid the very argument that Arista now makes.

### C.    The "Clueless" Emails Are Privileged

Arista moves to compel production of "Clueless" emails in part by suggesting that Cisco made an improper and blanket withholding of emails that were sent to a general-purpose discussion group. That suggestion is wrong. ***In this case, Cisco has <u>produced</u> to Arista over 3,700 emails sent to the Clueless discussion group.*** Ex. I. Those emails did not implicate privilege concerns and Cisco therefore produced them.

But Cisco did withhold—for privilege—about 100 such emails. Arista now moves to compel production of approximately 20 of those because they do not have an attorney copied on them. To put this into context: Cisco performed a per-document privilege review of the Clueless emails, before producing them. Pursuant to that process, Cisco produced 97-98% of all such documents, and properly withheld for privilege (and then logged) only 2-3% of those documents. Arista now selectively (and untimely) challenges Cisco's withholding of those 20 documents.

Arista explains that it is focused on these 20 particular documents because Cisco's privilege log does not name any individual attorney associated with each of those particular documents. *See* above. But it is not disputed that Clueless has always been an entirely Cisco-internal discussion group, thus Cisco employees soliciting, receiving, forwarding and discussing legal advice from Cisco legal in that Cisco-internal forum comprises privileged communications. *See Zurich Am. Ins. Co. v. Superior Court*, 155 Cal. App. 4th 1485, 1495 (2007) ("The fundamental issue in this case is whether corporate communications not directly involving an attorney, but which discuss legal advice, come within this privilege."); *id.* at 1502 ("If legal advice is discussed or contained in the communication between Zurich employees, then to that extent, it is presumptively privileged."); *see also United States v. ChevronTexaco Corp.*, 241 F. Supp. 2d 1065, 1077 (N.D. Cal. 2002) ("Materials, transmitted between nonlawyers, that reflect matters about which the client intends to seek legal advice are comparable to notes a client would make to prepare for a meeting with her lawyer… internal communications that reflect matters about which the client intends to seek legal advice are protected"). Arista itself knows that is the law, given that Arista's own privilege log in this case includes hundreds of privilege-withheld documents that do not show any attorneys as senders or recipients. Ex. H at 5-9 (listing ***hundreds*** of privilege-log entries from Arista that do not show any attorneys as senders or recipients).[1]

The 20 Clueless emails that Arista now challenges are, indeed, Cisco-internal discussions of legal issues that include requests for legal advice and discussions of the same. Cisco has already made that perfectly clear to Arista on a per-document basis, although Arista has chosen to ignore that showing in its (untimely) motion to compel. *See* Exh. H at Appendix A (right-hand column, providing additional detail about the basis for withholding each such document, such as by identifying the nature of the legal issues discussed therein).

---

[1]    Along these lines: If the Court were to grant Arista's motion, it should also order Arista to produce all documents that it withheld but without identifying associated attorneys. Ex. H at 5-9 (listing all such documents); Ex. J (Arista's privilege log); Ex. K (Arista's redaction log).

Page 6

DATED:  July 25, 2016                           Respectfully submitted,


                                                /s/      John M. Neukom
                                                _____

                                                Kathleen Sullivan (SBN 242261)
                                                kathleensullivan@quinnemanuel.com
                                                QUINN EMANUEL URQUHART &
                                                SULLIVAN LLP
                                                51 Madison Avenue, 22nd Floor
                                                New York, NY 10010
                                                Telephone: (212) 849-7000
                                                Facsimile: (212) 849-7100

                                                Sean S. Pak (SBN 219032)
                                                seanpak@quinnemanuel.com
                                                John M. Neukom (SBN 275887)
                                                johnneukom@quinnemanuel.com.
                                                Matthew D. Cannon (SBN 252666)
                                                matthewcannon@quinnemanuel.com
                                                QUINN EMANUEL URQUHART &
                                                SULLIVAN LLP
                                                50 California Street, 22nd Floor
                                                San Francisco, CA 94111
                                                Telephone: (415) 875-6600
                                                Facsimile: (415) 875-6700

                                                Mark Tung (SBN 245782)
                                                marktung@quinnemanuel.com
                                                QUINN EMANUEL URQUHART &
                                                SULLIVAN LLP
                                                555 Twin Dolphin Drive, 5th Floor
                                                Redwood Shores, CA 94065
                                                Telephone: (650) 801-5000
                                                Facsimile: (650) 801-5100

                                                Steven Cherny (admission pro hac vice
                                                pending)
                                                steven.cherny@kirkland.com
                                                KIRKLAND & ELLIS LLP
                                                601 Lexington Avenue
                                                New York, New York 10022
                                                Telephone: (212) 446-4800
                                                Facsimile: (212) 446-4900

                                                Adam R. Alper (SBN 196834)

adam.alper@kirkland.com
KIRKLAND & ELLIS LLP
555 California Street
San Francisco, California  94104
Telephone: (415) 439-1400
Facsimile: (415) 439-1500

Michael W. De Vries (SBN 211001)
michael.devries@kirkland.com
KIRKLAND & ELLIS LLP
333 South Hope Street
Los Angeles, California 90071
Telephone: (213) 680-8400
Facsimile: (213) 680-8500

*Attorneys for Plaintiff Cisco Systems, Inc.*

DATED:  July 25, 2016                    Respectfully submitted,


*/s/    Brian L. Ferrall*

KEKER & VAN NEST LLP
ROBERT A. VAN NEST - # 84065
rvannest@kvn.com
BRIAN L. FERRALL - # 160847
bferrall@kvn.com
DAVID J. SILBERT - # 173128
dsilbert@kvn.com
MICHAEL S. KWUN - # 198945
mkwun@kvn.com
633 Battery Street
San Francisco, CA 94111-1809
Telephone:     415 391 5400
Facsimile:     415 397 7188

JONATHAN M. JACOBSON, NY SBN
1350495
CHUL PAK, *Pro Hac Vice*
DAVID H. REICHENBERG, *Pro Hac Vice*
WILSON SONSINI GOODRICH &
ROSATI
Professional Corporation
1301 Avenue Of The Americas, 40th Floor
New York, NY 10019-6022
Telephone:  (212) 999-5800
Facsimile:  (212) 999-5899
Email: jjacobson@wsgr.com;
cpak@wsgr.com;
dreichenberg@wsgr.com

Page 8

> SUSAN CREIGHTON, SBN 135528
> SCOTT A. SHER, SBN 190053
> WILSON SONSINI GOODRICH & ROSATI
> Professional Corporation
> 1700 K Street NW, Fifth Floor
> Washington, D.C., 20006-3817
> Telephone:  (202) 973-8800
> Facsimile:   (202) 973-8899
> Email: screighton@wsgr.com;
> ssher@wsgr.com
>
> *Attorneys for Defendant Arista Networks, Inc.*

## ATTORNEY ATTESTATION

I hereby attest, pursuant to Local Rule 5-1(i)(3), that the concurrence in the filing of this document has been obtained from the signatory indicated by the "conformed" signature (/s/) of John M. Neukom within this e-filed document.

/s/    *Brian L. Ferrall*