# EXHIBIT A

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION

| | |
|---|---|
| CISCO SYSTEMS, INC., <br><br> Plaintiff, <br><br> v. <br><br> ARISTA NETWORKS, INC., <br>          Defendant. | Case No. 5:14-cv-05344-BLF (PSG) |

**REBUTTAL EXPERT REPORT OF KEVIN ALMEROTH**

**SUBMITTED ON BEHALF OF CISCO SYSTEMS, INC.**

**CONTAINS HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY INFORMATION**

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ................................................................................................................2

II.  BACKGROUND & QUALIFICATIONS ...........................................................................3

    A.   Qualifications.........................................................................................................3

    B.   Materials Considered ...........................................................................................11

III. ARISTA'S EXPERT OPINIONS CONFIRM MY OWN OPINIONS..............................12

IV.  THERE IS NO INDUSTRY STANDARD CLI.................................................................16

    A.   Background Regarding Existing Technical Standard...........................................17

    B.   There is no dispute that no standards body has adopted an industry standard for CLIs. ..................................................................................................19

    C.   Arista's experts' claim of a "de facto" industry standard is wrong. .....................19

        1.   Seifert.......................................................................................................20

        2.   Elsten........................................................................................................26

        3.   Black ........................................................................................................31

    D.   The data that Arista's experts rely on disproves their theory that a "de facto" industry standard exists.................................................................................32

V.   CREATIVITY AND ORIGINALITY ................................................................................40

    A.   Creativity...............................................................................................................41

    B.   Originality.............................................................................................................48

VI.  *SCENES A FAIRE,* MERGER & SHORT PHRASES ......................................................51

VII. FAIR USE..........................................................................................................................56

    A.   "The purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes."..............................58

    B.   "The nature of the copyrighted work" ..................................................................64

|   |    |                                                                                                                   |    |
|---|----|-------------------------------------------------------------------------------------------------------------------|----|
|   | C. | "The amount and substantiality of the portion used in relation to the copyrighted work as a whole"................ | 65 |
|   | D. | "The effect of the use upon the potential market for or value of the copyrighted work" ........................... | 76 |
| VIII. | NETWORK ORCHESTRATION PRODUCTS & TAIL-F............................................ | 79 |
| IX. | ADDITIONAL REBUTTALS........................................................................................ | 85 |
| X.  | CONCLUSION............................................................................................................ | 86 |

technology as an industry-leading, gold standard not as a "de facto" industry standard.[30] Moreover, Cisco should not be penalized for creating a product that is popular and a market-leader; if anything, the incentive for creating such products (like IOS and its CLI) should flow the other way.

63. The facts relating to the products in the industry confirm that CLIs are not used as part of any "de facto" industry standard to support interoperability between different networking devices or to provide a common way of operating or configuring routers and switches across multiple vendors. This is confirmed by the fact that Cisco has never committed its CLI to an industry standard; Cisco's IOS CLI has never been adopted by an SSO; and there are many vendors offering different user interfaces (*e.g.*, Juniper) in the networking industry, including even Arista, who offers a Linux interface as an alternative to the CLI it copied from Cisco. Furthermore, many elements that Arista copied are not even alleged to be part of any standard. For example, the technical documents Arista has admitted to copying are not alleged to be part of a standard. Neither are the outputs or command help descriptions.

64. Finally, Mr. Seifert claims that "Cisco was not only calling its CLI an "industry standard" to sell products; it actually believed it."[31] This is not correct, to the extent that Mr. Seifert is suggesting that Cisco was dedicating its CLI to the public as part of an industry standard. Cisco has sued to enforce its copyrights over its CLI in the past, confirming that Cisco

---

[30] Seifert Para. 75-77; Roy Deposition Tr. at 184:17-21 ("Q. Okay. Have you ever heard people within Cisco refer to the Cisco CLI as a de facto industry standard? A. I have heard people say Cisco has industry-leading CLI, but not exactly the standard phrase which you are citing."); Jiandani Deposition Tr. at 154:12-17 ("Q. Do you consider Cisco's CLI to be a competitive advantage to Cisco? A. I view it to be a gold standard. So it's one where we are popular products. We have – we have these -- many people use these products. So they've become a gold standard in the industry."); Pletcher Deposition Tr. at 211; *see also* http://www.cisco.com/c/dam/en_us/solutions/industries/docs/gov/ cisco_csr_in_aws_whitepaper.pdf ("industry-leading Cisco IOS®").

[31] Seifert Para. 78.

has always believed that its copyrighted works and IOS CLI are proprietary to Cisco. In fact, when Cisco learned that Huawei copied Cisco's IOS CLI, Cisco sued Huawei for copyright infringement, and Huawei was forced to change its CLI as a result of that litigation.[32] The same is true here. When Cisco learned of Arista's widespread infringement, it sued to enforce its property rights.[33] And the intellectual property rights at issue here are not just commands, as Mr. Seifert seems to suggest—Cisco has alleged (and I have found) widespread copying of technical documents, command outputs, hierarchies, modes, prompts, and help screens—which shows that Arista has copied the entire look and feel of Cisco's IOS CLI.

65.  I also have reviewed Mr. Seifert's conclusions regarding his understanding of the "history" of Cisco's CLI.[34] To the extent that Mr. Seifert is attempting to suggest that Cisco's copyrighted works and IOS CLI are not original or were not created by Cisco, I disagree. As I stated in my opening report, it is my opinion, and all of the available evidence indicates, that the Cisco copyrighted work including Cisco's IOS CLI are original works. As I explained in my opening report, Cisco has provided an incredible amount of detailed evidence showing that even down to the asserted multi-word command expressions, Cisco created them as well as the documentations, hierarchies, modes, prompts, screen outputs, and help descriptions associated with Cisco's IOS CLI.

---

[32] I disagree with Mr. Seifert's statement that "the message to the industry surrounding the Huawei litigation was that Cisco would enforce its IP rights in its source code, but if all one did was use CLI commands, Cisco had no dispute with such conduct." Seifert Para. 84. If Mr. Seifert had read the Huawei complaint or related documents, he would know this is not true. Cisco certainly alleged that Huawei stole Cisco's source code, but that was just one element of the case. Cisco also claimed infringement of its commands and Huawei in fact changed its commands as a result of the litigation. Mr. Seifert's statement is therefore just factually wrong, and his conclusions stemming from his misunderstanding are wrong as well.

[33] Seifert Para. 84.

[34] Seifert Para. 70.