Kathleen Sullivan (SBN 242261)
kathleensullivan@quinnemanuel.com
QUINN EMANUEL URQUHART &
SULLIVAN LLP
51 Madison Avenue, 22nd Floor
New York, NY 10010
Telephone: (212) 849-7000
Facsimile: (212) 849-7100

Sean S. Pak (SBN 219032)
seanpak@quinnemanuel.com
Amy H. Candido (SBN 237829)
amycandido@quinnemanuel.com
John M. Neukom (SBN 275887)
johnneukom@quinnemanuel.com.
QUINN EMANUEL URQUHART &
SULLIVAN LLP
50 California Street, 22nd Floor
San Francisco, CA 94111
Telephone: (415) 875-6600
Facsimile: (415) 875-6700

Steven Cherny *(admitted pro hac vice)*
steven.cherny@kirkland.com
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900

Adam R. Alper (SBN 196834)
adam.alper@kirkland.com
KIRKLAND & ELLIS LLP
555 California Street
San Francisco, California 94104
Telephone: (415) 439-1400
Facsimile: (415) 439-1500

Michael W. De Vries (SBN 211001)
michael.devries@kirkland.com
KIRKLAND & ELLIS LLP
333 South Hope Street
Los Angeles, California 90071
Telephone: (213) 680-8400
Facsimile: (213) 680-8500

*Attorneys for Plaintiff Cisco Systems, Inc.*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

| | |
|---|---|
| CISCO SYSTEMS, INC.,<br><br>    Plaintiff,<br><br>vs.<br><br>ARISTA NETWORKS, INC.,<br><br>    Defendant. | CASE NO. 5:14-cv-5344-BLF<br><br>**CISCO SYSTEMS, INC.'S MOTION AND NOTICE OF MOTION TO EXCLUDE EXPERT OPINION TESTIMONY FROM DEFENDANT ARISTA NETWORKS, INC.'S EXPERT CATE M. ELSTEN**<br><br>**REDACTED VERSION**<br><br>Date:  September 9, 2016<br>Time:  9:00 a.m.<br>Dep't:  Courtroom 3, 5th Floor<br>Judge:  Hon. Beth Labson Freeman<br><br>Date Filed:  December 5, 2014<br><br>Trial Date:  November 21, 2016 |

# TABLE OF CONTENTS

Page

I. INTRODUCTION ........................................................................................................1

II. LEGAL STANDARD .................................................................................................1

III. ARGUMENT ...............................................................................................................2

    A. Ms. Elsten's Disgorgement of Profits Opinions Should Be Excluded Because They Are Inconsistent With The Controlling Legal Standards...................2

    B. Ms. Elsten's Apportionment Opinions Based On A Cisco Presentation Should Be Excluded Under Rule 702 Because They Are Arbitrary and Unreliable ...........................................................................................................4

    C. Ms. Elsten's Alternative Apportionment Data Points Should Be Excluded Under Rule 702 Because They Are Arbitrary And Unreliable .................................6

        1. Ms. Elsten's Opinions Based On Counting Source Code or CLI Commands Are Unreliable And Should Be Excluded. .................................6

        2. Ms. Elsten's Opinions Based On Cherry-Picked Arista Documents Are Unreliable And Should Be Excluded. .......................................................7

    D. Ms. Elsten's Opinions Regarding Non-Infringing Alternatives In Connection With Disgorgement of Profits Should Be Excluded. ..............................7

    E. Ms. Elsten's Opinions Regarding a "*De Facto* Industry Standard" and "Industry Standard CLIs" Should Be Excluded. .......................................................8

    F. Ms. Elsten's Opinions Regarding Corporate Intent And The Subjective Beliefs of Others Should Be Excluded. ..............................................................10

IV. CONCLUSION ..........................................................................................................10

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Apple, Inc. v. Samsung Electrics Co.*,
  2012 WL 2571332 (N.D. Cal. June 30, 2012) .................................................................3, 4

*BorgWarner, Inc. v. Honeywell International, Inc.*,
  750 F. Supp. 2d 596 (W.D.N.C. 2010) ................................................................................10

*Brocade Committees System, Inc. v. A10 Networks, Inc.*,
  2013 WL 831528 (N.D. Cal. Jan. 10, 2013) .........................................................................4

*Daubert v. Merrell Dow Pharms., Inc.*,
  509 U.S. 579 (1993) ...............................................................................................1, 2, 9, 10

*Diviero v. Uniroyal Goodrich Tire Co.*,
  114 F.3d 851 (9th Cir. 1997) ...............................................................................................10

*Feduniak v. Old Republic National Title Co.*,
  2015 WL 1969369 (N.D. Cal. May 1, 2015) ........................................................................2

*Finjan, Inc. v. Blue Coat System, Inc.*,
  2015 WL 4272870 (N.D. Cal. July 14, 2015) ..........................................................5, 7, 8, 10

*Frank Music Corp. v. Metropolitan-Goldwyn-Mayer Inc.*,
  886 F.2d 1545 (9th Cir. 1989) ...............................................................................................5

*Good Tech. Corp. v. Mobileiron, Inc.*,
  2015 WL 4090431 (N.D. Cal. July 5, 2015) .....................................................................4, 7

*Island Intellectual Prop. LLC v. Deutsche Bank AG*,
  2012 WL 526722 (S.D.N.Y. Feb. 14, 2012) .......................................................................10

*Lucent Techs., Inc. v. Gateway, Inc.*,
  580 F.3d 1301 (Fed. Cir. 2009) .............................................................................................7

*Mackie v. Rieser*,
  296 F.3d 909 (9th Cir. 2002) .................................................................................................3

*Mullins v. Premier Nutrition Corp.*,
  2016 WL 1534784 (N.D. Cal. Apr. 15, 2016) ......................................................................9

*Oracle Am, Inc. v. Google, Inc.*,
  2016 WL 1643154 (N.D. Cal. May 2, 2016) ........................................................................8

*Oracle America, Inc. v. Google, Inc.*,
  2016 WL 2342365 (N.D. Cal. May 3, 2016) ........................................................................2

*Polar Bear Products v. Timex Corp.*,
  384 F.3d 700 (9th Cir. 2004) .................................................................................................2

*Stragent, LLC v. Intel Corp.*,
  2014 WL 4262440 (E.D. Tex. Mar. 6, 2014) ................................................................. 4, 5, 7

*U.S. v. Finley*,
  301 F.3d 1000 (9th Cir. 2002) .............................................................................................. 6

*Uniloc USA, Inc. v. Microsoft Corp.*,
  632 F.3d 1292 (Fed. Cir. 2011) ............................................................................................ 6

**Statutes**

17 U.S.C. § 504(b) ....................................................................................................................... 2, 3

Fed. R. Evid. 401 ........................................................................................................................ 1, 10

Fed. R. Evid. 403 .................................................................................................................... 1, 2, 3, 10

Fed. R. Evid. 702 ........................................................................................................................ 1, 2, 9

Fed. R. Evid. 702(a) ....................................................................................................................... 6, 10

PLEASE TAKE NOTICE, that on September 9, 2016, at 9:00 a.m., before the Honorable Beth Labson Freeman in the United States District Court for the Northern District of California, Plaintiff Cisco Systems, Inc. ("Cisco"), will, and hereby does, move the Court under Federal Rules of Evidence 401, 403, 702, and *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993), to exclude certain opinions of Defendant Arista Networks, Inc.'s expert Cate M. Elsten.  This Motion is based on this Notice of Motion and Motion, the Memorandum of Points and Authorities below, the Declaration of Andrew M. Holmes filed herewith, and such other papers, evidence and argument as may be submitted to the Court.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

Cisco respectfully moves to exclude in part the expert opinion testimony of Arista's damages expert, Cate M. Elsten,[1] because (1) her opinions regarding disgorgement of profits damages are inconsistent with the applicable legal standards, (2) her apportionment opinions based on a Cisco presentation are arbitrary, unreliable and contrary to the factual record, (3) her alternative apportionment data points are arbitrary and unreliable, (4) her opinions regarding non-infringing alternatives in connection with disgorgement of profits are contrary to the purposes of disgorgement, (5) she lacks any relevant expertise to opine on a *de facto* "industry standard" CLI and in any event her conclusions theron are unreliable and irrelevant to any claim, and (6) her speculation about corporate intent and the beliefs of third parties is improper.

### II.   LEGAL STANDARD

Under Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharm., Inc*., 509 U.S. 579 (1993), this Court serves as a "gatekeeper" for expert opinion testimony.  Under Rule 702, a proposed expert may present opinion testimony to the jury only if:

---

[1]  Cate Elsten submitted two expert reports on behalf of Arista in this case—an opening report on June 3, 2016 ("Elsten Opening," Ex. 7) and a rebuttal report on July 13, 2016 ("Elsten Rebuttal," Ex. 8).  Unless otherwise noted, references to "Ex." refer to exhibits to the Declaration of Andrew M. Holmes filed herewith.

    (a)  the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
    (b)  the testimony is based on sufficient facts or data;
    (c)  the testimony is the product of reliable principles and methods; and
    (d)  the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702; *see also Feduniak v. Old Republic Nat'l Title Co.*, 2015 WL 1969369, at *1-2 (N.D. Cal. May 1, 2015) (discussing the legal standards for *Daubert* motions). The proponent of the expert testimony must prove that Rule 702 has been satisfied. *Daubert*, 509 U.S. at 592.

## III.    ARGUMENT

### A.    Ms. Elsten's Disgorgement of Profits Opinions Should Be Excluded Because They Are Inconsistent With The Controlling Legal Standards

Ms. Elsten's disgorgement of profits opinions should be excluded under Rules 702 and 403 because they are inconsistent with the controlling legal standards concerning the disgorgement of the infringer's profits in copyright cases. *First*, Ms. Elsten asserts that, to recover any profits, "[REDACTED]" Ex. 8, Elsten Rebuttal p. 74. That is incorrect. To determine infringer's profits from *direct* sales of an infringing product, 17 U.S.C. § 504(b) provides simply for a two-step burden-shifting process: "In establishing the infringer's profits, the copyright owner is required to present proof only of the infringer's gross revenue, and the infringer is required to prove his or her deductible expenses and the elements of profit attributable to factors other than the copyrighted work." *See, e.g., Oracle Am., Inc. v. Google, Inc.*, 2016 WL 2342365, at *3-4 (N.D. Cal. May 3, 2016). Only where (unlike here), a plaintiff seeks to recover *indirect* profits—profits with a more attenuated nexus to the infringement—is a plaintiff required to first show a causal nexus between the infringement and the gross revenue. *See, e.g.*, *Polar Bear Prods. v. Timex Corp.*, 384 F.3d 700, 710 (9th Cir. 2004) ("because the amount of profits attributable to the infringement in an indirect profits case is not always clear, 'we have held that a copyright holder must establish the existence of a causal link before indirect profits damages can be recovered'"); *Mackie v. Rieser*, 296 F.3d 909, 915 (9th Cir. 2002).

Here, the gross revenues at issue are from Arista's direct sales of infringing switches, not indirect sales, and thus no causal nexus must be separately shown. Ms. Elsten complains that

1   Cisco's expert Dr. Judith Chevalier's "▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
2   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
3   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮" Ex. 8, Elsten Rebuttal p. 75.
4   But that is exactly Arista's burden. Pursuant to 17 U.S.C. § 504(b), because Cisco's expert, Dr.
5   Chevalier, has calculated Arista's gross revenues from sales of infringing switches, the burden
6   shifts to Arista to apportion profits between infringing and non-infringing elements. Ms. Elsten's
7   opinions criticizing Dr. Chevalier for purportedly failing to show a causal nexus by a
8   "preponderance of the evidence" are thus inconsistent with 17 U.S.C. § 504(b), and will mislead
9   and confuse the jury to Cisco's detriment because her opinions . Accordingly, Ms. Elsten's
10  opinions should be excluded as unreliable under Rule 702 and *Daubert* and unduly prejudicial
11  under Rule 403. *See Apple, Inc. v. Samsung Elecs. Co.*, 2012 WL 2571332, at *6 (N.D. Cal. June
12  30, 2012) ("Because Mr. Wagner's apportionment of damages with respect to Apple's design
13  patent infringement claims is contrary to law, it is unreliable under FRE 702 and *Daubert* and
14  unduly prejudicial under FRE 403.").
15      *Second*, even if causal nexus were required, Ms. Elsten applies an incorrect, overly
16  stringent causal nexus standard requirement to both Dr. Chevalier's and her own apportionment
17  analysis. Ms. Elsten opines that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
18  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
19  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮" Ex. 8,
20  Elsten Rebuttal p. 75. In other words, Ms. Elsten opines that infringer's profits may be disgorged
21  under Section 504(b) only if the copyrighted features drove customer demand for Arista's
22  products. Ms. Elsten finds it dispositive that "▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
23  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
24  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮" But that "overstates the standard." *See Brocade Commc'ns. Sys.,*
25  *Inc. v. A10 Networks, Inc.*, 2013 WL 831528, at *6 (N.D. Cal. Jan. 10, 2013) (finding that Section
26  504(b) does not require a showing that the infringing code "drove consumer demand"). Because
27
28

Ms. Elsten has applied the incorrect legal standards in her apportionment analysis to Cisco's detriment, her opinions should be excluded. *See Apple*, 2012 WL 2571332, at *6.

### B. Ms. Elsten's Apportionment Opinions Based On A Cisco Presentation Should Be Excluded Under Rule 702 Because They Are Arbitrary and Unreliable

For the majority of Arista customers, Ms. Elsten opines that ███████████████ ███████████████████████████████████████████████████████ Ex. 8, Elsten Rebuttal pp. 89, 93. Ms. Elsten arrives at this percentage by purporting to identify the portion of Arista's EOS software related to the CLI by examining the proportion of CLI-related features identified in selected documents. In particular, Ms. Elsten derives ███████████████████████████ ████████████████████████████████████ *Id.* at p. 83. According to Ms. Elsten, in that presentation, ███████ ████████████████████████████████████ *Id.* From there, Ms. Elsten assigned an equal value to each product feature and used the resulting percentage—████████ ██████—to apportion Arista's profits to the infringing CLI. *Id.* pp. 83, 89, 93. Ms. Elsten testified that ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████ Ex. 9, Elsten 7/28/2016 Deposition Transcript ("Elsten Tr") at 213:1-214:2. That is insufficient as a matter of law.

As a Federal Circuit judge sitting my designation recently held, equally valuing features without an adequate basis is a methodology that lacks "the requisite indicia of expert reliability." *Stragent, LLC v. Intel Corp.*, 2014 WL 4262440, at *4 (E.D. Tex. Mar. 6, 2014) (Dyk, J., sitting by designation). Citing *Stragent*, Judge Grewal reached the same conclusion in *Good Tech. Corp. v. Mobileiron, Inc.*, 2015 WL 4090431, at *7 (N.D. Cal. July 5, 2015), excluding a patent damages expert's apportionment of incremental profits as "insufficient" where the expert assigned equal value to each criterion listed in a Gartner research report but did "no investigation into whether any of the criteria is more important than others, or how strongly each criterion is tied to the patents." *Id.*; *see also Finjan, Inc. v. Blue Coat Sys., Inc.*, 2015 WL 4272870, at *9 (N.D. Cal. July 14, 2015) ("Absent foundational facts to support the assumption that the functions are of equal value, this method of apportionment may be unreliable."); *Frank Music Corp. v. Metro-*

1  *Goldwyn-Mayer Inc.*, 886 F.2d 1545, 1548 (9th Cir. 1989) (noting that reliance "exclusively on a
2  quantitative comparison" of the various component parts for apportionment of profits would be
3  error).  Ms. Elsten's analysis was similarly deficient here.
4  　　　　Even assuming that it were appropriate to rely on one cherry-picked document to derive an
5  apportionment percentage (and it is not), Ms. Elsten's analysis of that document ignores key facts.
6  Ms. Elsten concludes that the Cisco presentation ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
7  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
8  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮  Ex. 10, Elsten 7/28/2016 Deposition Exhibit 1593
9  ("Elsten Depo Ex. 1593") at CSI-CLI-01610900.  The eighth feature that Ms. Elsten lists in her
10 report—"▮▮▮▮▮▮▮▮▮▮"—is lifted from a different part of the presentation, which actually
11 states: "▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮"  *Id*. at CSI-CLI-01610901.
12 Ms. Elsten omits the parenthetical from her report and gives this factor equal weight, even though
13 the Cisco presentation on its face qualifies the importance of that feature to customers.  *See id.*;
14 Elsten Rebuttal p. 83.[2]  The Cisco presentation similarly qualifies the importance of another one
15 of the eight features that Ms. Elsten gives equal weight, noting: "▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
16 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮"  Ex 10 at CSI-CLI-01610902.
17 Ms. Elsten's arbitrary decision to pull eight factors from the Cisco presentation, not seven or even
18 six, and then to weight those factors equally without any factual basis is unreliable and prejudicial
19 and her related opinions should be excluded.[3]  *See, e.g., Uniloc USA, Inc. v. Microsoft Corp.*, 632
20 F.3d 1292, 1318 (Fed. Cir. 2011) (rejecting rule-of-thumb patent damages estimates that are
21 arbitrary, general, and "unrelated to the facts of th[e] case").

---

[2] Ms. Elsten testified that this parenthetical was not a limiting factor in her analysis because the Cisco presentation was dated "late in 2015" and thus "encompasses most of the damages period."  Ex. 9, Elsten Tr. at 59.  However, the Cisco presentation was actually created in March 2012, as demonstrated by the March 26, 2012 document date in the document's metadata, as well as its attachment to an email dated March 29, 2012.  Elsten Depo. Ex. 1593; *see also* Ex. 11 [metadata report for CSI-CLI-01610895-934].

[3] As one example, Ms. Elsten agrees that the resulting apportionment percentage would have been higher if ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮  Ex. 9, Elsten Tr. at 63:6-64:3.

### C. Ms. Elsten's Alternative Apportionment Data Points Should Be Excluded Under Rule 702 Because They Are Arbitrary And Unreliable

In her discussion of the portion of Arista's EOS software related to the CLI, Ms. Elsten identifies several alternative apportionment data points to the ▉▉▉▉▉▉▉▉▉▉▉ that she ultimately relies on (discussed above), but Ms. Elsten's opinions regarding those data points should be excluded because they are equally arbitrary and unreliable. Each of these opinions is no more than an arithmetic exercise regarding lists of product features, lines of code or numbers of CLI commands and should be excluded because they do not require an "expert's scientific, technical, or other specialized knowledge" to assist the factfinder. Fed. R. Evid. 702(a); *see also United States v. Finley*, 301 F.3d 1000, 1007 (9th Cir. 2002). Simple arithmetic exercises—like counting, adding, and dividing—are within the common knowledge of the average layperson. Moreover, Ms. Elsten does not have scientific, technical or other specialized knowledge that would justify her decision to weight the different items equally or that provides any context to help the factfinder interpret or understand the data.

#### 1. Ms. Elsten's Opinions Based On Counting Source Code or CLI Commands Are Unreliable And Should Be Excluded.

In her report, Ms. Elsten relies on various source code counts from Arista's technical expert, Dr. Black, and a consultant hired by Arista, Andrew Schulman, to calculate the percentage of the total source code devoted to the CLI in both Arista's EOS and Cisco's IOS and NX-OS. Ex. 8, Elsten Rebuttal at pp. 88-89, Table 12. Ms. Elsten also cites various CLI command counts to calculate the percentage of total commands accused of infringement by Cisco. *See id.* pp. 90-92, Figure 14. Ms. Elsten's opinions based on counting source code or CLI commands should be excluded because she does not have any scientific, technical or other specialized knowledge that would assist the factfinder in this simple arithmetic or that would support any opinion or implication that the percentage of code used to implement the CLI has any relationship whatsoever to the value of the CLI. Notably, in her report, Ms. Elsten simply observes what percentage of the code base the CLI represents, not that the percentage has any probative value. Moreover, Ms. Elsten could not identify the relevance of the source code calculations to a factfinder, testifying:

"▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉

███████████████████." Ex. 9, Elsten Tr. at 80:10-15; *see also id.* at 79:9-22.  Absent any relevant expertise and the fact that the value of an infringing feature "cannot be reduced to a mere counting of lines of code," Ms. Elsten's testimony on this topic should be excluded.  *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1332-33 (Fed. Cir. 2009); *see Finjan*, 2015 WL 4272870, at * 5.

### 2. Ms. Elsten's Opinions Based On Cherry-Picked Arista Documents Are Unreliable And Should Be Excluded.

Ms. Elsten's alternative apportionment data points from ███████ based on various cherry-picked Arista documents (*see* Ex. 8, Elsten Rebuttal pp. 83-89) should likewise be excluded because they lack "the requisite indicia of expert reliability."  *Stragent,* 2014 WL 4262440, at *4.  Ms. Elsten cites two Arista EOS software block diagrams, one 2008 Arista EOS software component list, one 2013 EOS feature list, and thirteen Arista RFPs, but for each of these documents, she simply ██████████████████████████████████████████ ████ and performs simple arithmetic.  Ex 8, Elsten Rebuttal p. 89, Table 13; *see also id.* pp. 83-89.  By her own admission, Ms. Elsten made no attempt to determine whether any of the features should be given more or less weight than any of the other features, but simply gave each feature equal weight in her calculations.  Ex. 9, Elsten Tr. at 213:1-214:9.  Thus, because Ms. Elsten has admitted that there is no basis for her assumption that the features have equal value, her apportionment opinions are unreliable and should be excluded.  *See See Good Tech.*, 2015 WL 4090431, at *7 (excluding expert's apportionment opinion as "insufficient" because the expert did "no investigation into whether any of the criteria is more important than others, or how strongly each criterion is tied to the patents"); *Finjan,* 2015 WL 4272870, at *9 ("Absent foundational facts to support the assumption that the functions are of equal value, this method of apportionment may be unreliable.").

### D. Ms. Elsten's Opinions Regarding Non-Infringing Alternatives In Connection With Disgorgement of Profits Should Be Excluded.

Ms. Elsten should be precluded from testifying regarding purported non-infringing alternatives or the availability of alleged "Cisco-like" CLIs from other vendors in connection with

either the causal nexus or apportionment aspects of disgorgement.  Ms. Elsten asserts that her analyses and conclusions regarding other vendors are relevant and incorporates them by reference in her disgorgement discussion.  *See* Ex. 8, Elsten Rebuttal p. 74; *id.* at 75 ("████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████").)  But non-infringing alternatives are both irrelevant and highly prejudicial in the context of disgorgement damages.  As Judge Alsup explained in *Oracle Am, Inc. v. Google, Inc.*:  "The idea behind Section 504(b) is to hand over to the copyright owner the actual profits made by the infringer using his copyrighted work.  If a copyright infringer could avoid disgorgement by claiming he could have substituted some non-infringing alternative, the infringer would rarely be discouraged from infringing and the purpose of the disgorgement remedy would be eviscerated."  2016 WL 1743154, at *4 (N.D. Cal. May 2, 2016).  Non-infringing alternatives are similarly at odds with the purpose of disgorgement if proffered to rebut causal nexus, for they ignore whether the accused elements *in fact* had any causal link to the revenues at issue.  *Id.* (excluding expert's analysis that would "make it nearly impossible to *ever* establish a causal nexus, inasmuch as one could almost always conceive of myriad non-infringing alternatives that, if substituted for the infringing elements of a work, could have caused similar revenues").

### E. Ms. Elsten's Opinions Regarding a "*De Facto* Industry Standard" and "Industry Standard CLIs" Should Be Excluded.

Ms. Elsten seeks to opine that Cisco's CLI uses a "*de facto* industry standard CLI" that Arista is free to copy, relying in part for this conclusion on the opinions of Arista experts of Mr. William Seifert and Dr. John Black.  Ex. 7, Elsten Opening pp. 16, 20-21, 29-37; Ex. 8, Elsten Rebuttal pp. 11, 34-38, 59-61.[4]  According to Ms. Elsten, ██████████████████████

---

[4] Cisco is filing concurrently herewith motions to exclude the testimony of Mr. Seifert and Dr. Black as to Cisco's supposed "*de facto* industry standard" CLI.  *See* Cisco's Motions to Exclude Opinion Testimony of John R. Black ("Black Motion") and William M. Seifert  ("Seifert Motion"), filed herewith.

1   █████████████████████████████████████████████ Ex. 7, Elsten Opening p. 34.

2   Citing industry analysts, she states: ███████████████████████████████████████

3   ████████████████████████████████████████████████████████████████████████████

4   ██████████████████████████████ *Id.* p. 35.  Ms. Elsten's opinion appears to be that

5   copying of the purported "industry standard CLI" is by definition permissible.  *Id.* p. 37-38.

6         Ms. Elsten's opinions about a *de facto* industry standard CLI should be excluded.  *First*,

7   Federal Rule of Evidence 702 (a) requires that a witness offering "expert" testimony must be

8   "qualified as an expert by knowledge, skill, experience, training, or education" in order to offer

9   expert opinions, and Ms. Elsten is not a technical expert, an expert in industry standards or an

10  expert in *de facto* industry standards relating to CLIs.  She has no prior experience with Ethernet

11  switches.  Ex. 9, Elsten Tr. at 24:16-17.  Ms. Elsten is a Certified Management Accountant

12  employed as a Managing Director for Ocean Tomo, an intellectual property consulting firm.  Ex.

13  7, Elsten Opening Appx. B.  "[E]ven the most qualified expert may not offer any opinion on any

14  subject; the expert's opinion must be grounded in his or her personal 'knowledge, skill,

15  experience, training, or education.'"  *Mullins v. Premier Nutrition Corp.*, 2016 WL 1534784, at

16  *22 (N.D. Cal. Apr. 15, 2016).  These opinions are not grounded in Ms. Elsten's expertise.

17        *Second*, Ms. Elsten's opinions that there is a *de facto* industry standard CLI fail all four

18  factors of the reliability prong set forth in *Daubert*.  509 U.S. at 593–94.  Like Dr. Black's and Mr.

19  Seifert's opinions, Ms. Elsten's opinions are untestable, unreliable, not peer reviewed, and have

20  never been accepted by any scientific community.  *See* Black Motion, Seifert Motion.   Because

21  Ms. Elsten's opinions do not "rest[] on a reliable foundation," *Daubert*, 509 U.S. at 591, they

22  should be rejected.

23        *Third*, as with Dr. Black and Mr. Seifert (*see* Black Motion, Seifert Motion), Ms. Elsten's

24  *de facto* industry standard CLI opinions should be excluded under Rules 401, 402, 403 and 702

25  because they are not "relevant to the task at hand."  *Daubert*, 509 U.S. at 591.  Under Rule 403,

26  even relevant evidence can be excluded "'if its probative value is substantially outweighed by a

27  danger of … unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting

28

time, or needlessly presenting cumulative evidence.'" *Id.* Here, because Ms. Elsten's opinions regarding a purported *de facto* industry standard CLI are not relevant to any issue, there is no doubt they should be excluded to avoid confusing the jury and prejudicing Cisco.

### F. Ms. Elsten's Opinions Regarding Corporate Intent And The Subjective Beliefs of Others Should Be Excluded.

Corporate intent and the subjective beliefs of others are not proper topics for expert testimony, let alone for the testimony of a damages expert with no specialized education, training, or experience in psychology, business, or the law. *See* Fed. R. Evid. 702(a); *Daubert*, 509 U.S. at 592. Here, Ms. Elsten has provided improper opinions and speculation about corporate intent and beliefs of third parties, such as: (i) ▆▆▆▆ Ex. 7, Elsten Opening p. 30; (ii) ▆▆▆▆ *id.* p. 37; and (iii) the ▆▆▆▆ *id.* Such opinions—which consist of unexplained conclusions about third party beliefs untethered from any scientific method—are not based on any expertise possessed by Ms. Elsten. Nor does either Dr. Black or Mr. Seifert have the requisite expertise for Ms. Elsten to rely on their opinions. *See* Black Motion, Seifert Motion. Because it is beyond the purview of experts like Ms. Elsten, Dr. Black and Mr. Seifert to opine about what others "thought" or what their "subjective beliefs" might be, Ms. Elsten's opinions on corporate intent and subjective beliefs of others should be excluded. *Finjan*, 2015 WL 4272870, at *3; *see also, e.g.*, *Diviero v. Uniroyal Goodrich Tire Co.*, 114 F.3d 851, 853 (9th Cir. 1997); *Island Intellectual Prop. LLC v. Deutsche Bank AG*, 2012 WL 526722, at *8 (S.D.N.Y. Feb. 14, 2012); *BorgWarner, Inc. v. Honeywell Int'l, Inc.*, 750 F. Supp. 2d 596, 611 (W.D.N.C. 2010).

## IV. <u>CONCLUSION</u>

For all the foregoing reasons, Cisco's Motion to Exclude In Part the Opinion Testimony of Cate M. Elsten should be GRANTED.

| | | |
|---|---|---|
| 1 | Dated: August 5, 2016 | Respectfully submitted, |
| 2 | | */s/* Amy H. Candido |
| 3 | | Kathleen Sullivan (SBN 242261)<br>kathleensullivan@quinnemanuel.com |
| 4 | | QUINN EMANUEL URQUHART &<br>SULLIVAN LLP |
| 5 | | 51 Madison Avenue, 22nd Floor<br>New York, NY 10010 |
| 6 | | Telephone: (212) 849-7000<br>Facsimile: (212) 849-7100 |
| 7 | | Sean S. Pak (SBN 219032) |
| 8 | | seanpak@quinnemanuel.com<br>Amy H. Candido (SBN 237829) |
| 9 | | amycandido@quinnemanuel.com<br>John M. Neukom (SBN 275887) |
| 10 | | johnneukom@quinnemanuel.com.<br>QUINN EMANUEL URQUHART & |
| 11 | | SULLIVAN LLP<br>50 California Street, 22nd Floor |
| 12 | | San Francisco, CA 94111<br>Telephone: (415) 875-6600 |
| 13 | | Facsimile: (415) 875-6700 |
| 14 | | Steven Cherny *admitted pro hac vice*)<br>steven.cherny@kirkland.com |
| 15 | | KIRKLAND & ELLIS LLP<br>601 Lexington Avenue |
| 16 | | New York, New York 10022<br>Telephone: (212) 446-4800 |
| 17 | | Facsimile: (212) 446-4900 |
| 18 | | Adam R. Alper (SBN 196834)<br>adam.alper@kirkland.com |
| 19 | | KIRKLAND & ELLIS LLP<br>555 California Street |
| 20 | | San Francisco, California 94104<br>Telephone: (415) 439-1400 |
| 21 | | Facsimile: (415) 439-1500 |
| 22 | | Michael W. De Vries (SBN 211001)<br>michael.devries@kirkland.com |
| 23 | | KIRKLAND & ELLIS LLP<br>333 South Hope Street |
| 24 | | Los Angeles, California 90071<br>Telephone: (213) 680-8400 |
| 25 | | Facsimile: (213) 680-8500 |
| 26 | | *Attorneys for Plaintiff Cisco Systems, Inc.* |
| 27 | | |
| 28 | | |