# EXHIBIT 14

```
 1               UNITED STATES DISTRICT COURT
 2             NORTHER DISTRICT OF CALIFORNIA
 3                     SAN JOSE DIVISION
 4
    CISCO SYSTEMS, INC.,
 5
                Plaintiff,
 6
                vs.                  Civil Action No.
 7                                   5:14-cv-5344-BLF
 8  ARISTA NETWORKS, INC.,
 9              Defendants.
    _____ /
10
11
12
13
14       VIDEO RECORDED DEPOSITION OF EXPERT
15              DOUGLAS W. CLARK, Ph.D.
16                   JULY 6, 2016
17                     9:07 A.M.
18
19       50 California Street, 21st Floor
20            San Francisco, California
21
22
23  REPORTED BY:
24  Mark W. Banta
25  CSR No. 6034, CRR
```

| | | |
|---|---|---|
| 09:12:38 | 1 | A. I do not know exactly. I would guess -- report, |
| | 2 | deposition, trial -- six-ish, plus or minus. If I had my |
| | 3 | list I could figure out, but... |
| | 4 | Q. How many times have you opined that a patent was |
| 09:13:02 | 5 | valid? |
| | 6 | A. I want to say less than six, but not much. |
| | 7 | Again, just guessing. |
| | 8 | Q. So would that number be the same for questions |
| | 9 | of infringement and non-infringement, or would the answer |
| 09:13:33 | 10 | be different? |
| | 11 | A. So I have done work where I only argued |
| | 12 | non-infringement and not invalidity. I'd have to look at |
| | 13 | my list. |
| | 14 | Q. Have you ever opined that a patent was infringed |
| 09:14:09 | 15 | and valid? |
| | 16 | A. Infringed and valid? Yes. |
| | 17 | Q. When was the last time you did that? |
| | 18 | A. At least 2007, and there might be one or more |
| | 19 | after that, but the one that sticks in the mind is 2007. |
| 09:15:05 | 20 | Q. You've submitted two expert reports in this |
| | 21 | case, correct? |
| | 22 | A. Yes. |
| | 23 | Q. Are you currently preparing any supplemental |
| | 24 | reports? |
| 09:15:15 | 25 | A. I beg your pardon. I am not. |

| | | |
|---|---|---|
| 09:15:18 | 1 | Q.   Do your reports express your full and correct |
| | 2 | expert opinions that you expect to express at trial? |
| | 3 | A.   The first one, the big one, suffers from having |
| | 4 | been submitted before the Court's claim construction |
| 09:15:37 | 5 | order, so I would expect to modify some opinions based on |
| | 6 | that order. |
| | 7 | Q.   What do you mean, you would expect to modify? |
| | 8 | A.   Well, I would -- I would expect to testify at |
| | 9 | trial using the Court's claim constructions and not some |
| 09:15:58 | 10 | other claim constructions. |
| | 11 | Q.   But you haven't put forth any report that |
| | 12 | applies the Court's claim constructions for purposes of |
| | 13 | your invalidity analysis; true? |
| | 14 |         MR. ROSEN:  Objection.  Vague. |
| 09:16:12 | 15 |         THE WITNESS:  The -- the little report was after |
| | 16 | the claim construction order, so that did respond to |
| | 17 | the... |
| | 18 | BY MR. JAFFE: |
| | 19 | ==Q.   Right.  And so my question was a little more== |
| 09:16:24 | 20 | ==specific, which is:  You haven't put forth any report== |
| | 21 | ==that applies the Court's claim construction for purposes== |
| | 22 | ==of your invalidity analysis?== |
| | 23 | ==A.   That's correct.== |
| | 24 |         MR. ROSEN:  Objection.  Vague. |
| | 25 | // |

```
09:16:38    1    BY MR. JAFFE:
            2        Q.   Putting aside the claim construction issue which
            3    we'll come back to in one second, apart from that issue,
            4    do your reports express your full and correct opinions
09:16:51    5    that you expect -- expect to address at trial?
            6        A.   Yes.
            7        Q.   Are there any errors that you're aware of in
            8    your reports, sitting here today, that you want to
            9    correct?
09:17:07   10        A.   I'm aware of a handful of insignificant typos,
           11    but nothing substantial.
           12        Q.   There's a binder sitting in front of you that
           13    has "Dr. Clark" in a nice label on it.  What is that?
           14        A.   That's a binder that Arista's attorneys prepared
09:17:44   15    for me containing my report and some other things.
           16        Q.   Does that have your CV and list of cases in it?
           17        A.   It has my CV, but I think it does not have my
           18    list of cases.  Let me see.
           19             It does not have the list of cases.
09:18:36   20        Q.   Okay.  So you have your invalidity report
           21    sitting in front of you, right?
           22        A.   I do.
           23             MR. JAFFE:  Okay.  Why don't we go ahead and
           24    mark that as an exhibit.
09:19:21   25             And I think this will be Exhibit -- do you know
```

```
09:19:28   1  what exhibit?
           2          THE REPORTER:  No.
           3          MR. JAFFE:  No?  I was hoping for a shortcut.
           4  So we'll make this 3001.  I'm pretty sure it was marked
09:19:37   5  before.
           6          (Exhibit 3001 marked.)
           7  BY MR. JAFFE:
           8     Q.   Dr. Clark, can you please take a look at what
           9  I've now marked as Exhibit 3001 and let me know if you
09:20:09  10  recognize it.
          11     A.   That appears to be my expert report on
          12  invalidity with Exhibits A, B, C, D and E.
          13     Q.   Now that we have your expert -- opening expert
          14  report on invalidity in front of us, this expert report
09:21:01  15  contains all your opinions on invalidity that you're
          16  prepared to discuss today, correct?
          17     A.   No --
          18          MR. ROSEN:  Objection.  Vague.
          19          THE WITNESS:  No, because I'm prepared to
09:21:14  20  discuss the -- I'm prepared to offer opinions that are
          21  informed by the Court's claim construction.
          22  BY MR. JAFFE:
          23     Q.   What report are those opinions expressed in?
          24     A.   They are not expressed in any report.
09:21:36  25     Q.   So am I correct in understanding that you have
```

```
09:21:40    1   some opinions on invalidity applying the Court's claim

            2   construction that are not expressed in any report, but

            3   you want to talk about them today and intend to express

            4   them at some later date?

09:21:53    5          MR. ROSEN:  Objection.  Misstates testimony.

            6   Vague.

            7          THE WITNESS:  My understanding is that that's --

            8   that is my obligation at trial to provide opinions that

            9   don't use some other claim construction than the Court's,

09:22:08   10   and I was -- because of the schedule, I was -- I

           11   submitted this before the Court's claim construction

           12   order, so I don't know what else to do.

           13   BY MR. JAFFE:

           14      Q.  You submitted a rebuttal report -- report that

09:22:28   15   applied the Court's claim construction, right?

           16      A.  Yes.

           17      Q.  And in that report did you address your

           18   invalidity analysis?

           19          MR. ROSEN:  Objection.  Vague.

09:22:39   20          THE WITNESS:  No.

           21   BY MR. JAFFE:

           22      Q.  Why not?

           23      A.  I was not asked to.

           24      Q.  When do you expect to put forth a report that

09:22:49   25   expresses your opinions applying the Court's claim
```

```
09:22:53   1    construction --
           2              MR. ROSEN:  Objection.  Vague.
           3              MR. JAFFE:  Sorry.  I'm not done with my
           4    question.
09:22:59   5         Q.   On validity.
           6         A.   I will prepare any report I'm asked to prepare,
           7    but I have not been asked and I am not working on one
           8    now.
           9         Q.   If I wanted to understand the scope of your
09:23:11  10    opinions, before I sat down to today's deposition, on
          11    invalidity, applying the Court's claim construction, how
          12    would I have done that?
          13              MR. ROSEN:  Objection.  Vague.  Misstates law.
          14              THE WITNESS:  Would you ask again?
09:23:32  15    BY MR. JAFFE:
          16         Q.   Sure.  My question is:  If I wanted to
          17    understand what your opinions were on invalidity applying
          18    the Court's claim construction before I sat down to
          19    today's deposition, how would I be able to do that?
09:23:46  20              MR. ROSEN:  Same objections.
          21              THE WITNESS:  You would not be.
          22    BY MR. JAFFE:
          23         Q.   I would not be able to do that?
          24         A.   You would not be able to do that.
09:23:56  25         Q.   Okay.  Let's talk about the opinions that you
```

```
09:24:02    1   have put forth in the report.  Now, for purposes of my
            2   next few questions, I want to talk about the opinions as
            3   expressed in your report.  Do you understand me?
            4       A.   I do.
09:24:16    5       Q.   Okay.  Under the opinions expressed in your only
            6   expert report that relates to validity, you have no
            7   opinion that any prior art reference invalidates any
            8   asserted claim of the '526 patent under the Court's
            9   constructions, correct?
09:24:35   10            MR. ROSEN:  Objection.  Compound.  Vague.
           11            THE WITNESS:  I think that is right.
           12   BY MR. JAFFE:
           13       Q.   Now let's take a look at your report.  How much
           14   time did you spend preparing your report?  And I'm
09:25:32   15   referring to Exhibit 3001.
           16       A.   Do you mean -- let's see, what do you mean
           17   exactly, "prepare"?
           18       Q.   I mean prepare the report, from Arista's counsel
           19   engaging you until that document was produced in this
09:25:50   20   litigation.
           21            MR. ROSEN:  Objection.  Vague.
           22            THE WITNESS:  I would estimate 150 hours.
           23   BY MR. JAFFE:
           24       Q.   How many hours did you spend preparing your
09:26:13   25   rebuttal report?
```

| | | |
|---|---|---|
| 09:26:23 | 1 | A. I would guess 10. |
| | 2 | Q. How many hours did you spend preparing for |
| | 3 | today's deposition? |
| | 4 | A. I spent all of yesterday, half of July 4th with |
| 09:26:42 | 5 | the attorneys, and prepared by myself for the previous |
| | 6 | couple of weeks. I -- probably 20-ish hours. |
| | 7 | Q. We've talked about the amount of time that you |
| | 8 | spent preparing your opening report, your rebuttal |
| | 9 | report, and preparing for today's deposition which, based |
| 09:27:16 | 10 | on my elementary school arithmetic, totals up to about |
| | 11 | 180 hours. Is that the correct amount of time that you |
| | 12 | have spent working on this matter, approximately? |
| | 13 | A. Yes. |
| | 14 | Q. Looking at your opening report, in terms of the |
| 09:27:45 | 15 | drafting process, who put fingers to keyboard in creating |
| | 16 | it? Was it something that you wrote or was it something |
| | 17 | that there was a draft that was exchanged? And I don't |
| | 18 | want the content of any drafts, I'm just wondering about |
| | 19 | the general process. |
| 09:27:59 | 20 | MR. ROSEN: Objection; compound. Objection; |
| | 21 | vague. And I'm also going to object and instruct the |
| | 22 | witness not to divulge any conversations with counsel. |
| | 23 | THE WITNESS: It was an exchange of drafts, I |
| | 24 | would say a vigorous exchange of drafts with many -- |
| 09:28:26 | 25 | with -- ask your question again, please. |

```
13:42:38   1    more certain situation, namely, that I assume it and it's
           2    actually true, I'm right, there's no contest, if that's
           3    really true, then these do not invalidate or -- the
           4    patent.
13:43:04   5    BY MR. JAFFE:
           6         Q.   So is that a yes?
           7              MR. ROSEN:  Same objections.
           8              THE WITNESS:  It's what I said.
           9              MR. JAFFE:  Can you read my last question back,
13:43:23  10    please?
          11              (Question read as follows:
          12              "Q.  If you assume that the asserted claims
          13         of the '526 patent require every single element
          14         of the tree to have a corresponding at least one
          15         command action value, none of the references
          16         that you've identified in your report anticipate
          17         or render obvious the asserted claims; true?")
          18              MR. ROSEN:  Same objections.
          19              THE WITNESS:  Am I asked that again?
13:44:03  20    BY MR. JAFFE:
          21         Q.   Yes.
          22         A.   So yes, but I'd want the assumption strengthened
          23    to exclude competing interpretations that might win out.
          24    BY MR. JAFFE:
13:44:14  25         Q.   So maybe we're getting hung up on --
```

```
13:44:16    1       A.    I think so.
            2       Q.    -- what assuming means.
            3       A.    Yeah.  Maybe.
            4       Q.    What is your understanding of when you assume
13:44:21    5   something?
            6       A.    So if -- if...
            7             MR. ROSEN:  And I object to the question as
            8   vague.
            9             THE WITNESS:  Yes, I've given you too hard a
13:45:10   10   time.  I think you -- you're -- assume is -- assume that
           11   it's really true, it's really -- assume X.  Then what is
           12   a consequence of X?  That -- I don't -- I don't need any
           13   contingencies.
           14   BY MR. JAFFE:
13:45:24   15       Q.    Okay.  Let me try this again.  If you assume
           16   that the asserted claims of the '526 patent require every
           17   single element of the tree to have a corresponding at
           18   least one command action value, none of the references
           19   that you've identified in your report anticipate or
13:45:49   20   render obvious the asserted claims; true?
           21             MR. ROSEN:  Objection.  Asked and answered.
           22   Vague.  Compound.
           23             THE WITNESS:  Under that assumption, that is
           24   true.
           25   //
```

```
13:46:00    1  BY MR. JAFFE:
            2       Q.   Okay.  Have you reviewed Dr. Chase's
            3  non-infringement expert report?
            4       A.   Lightly, I would say.
13:46:21    5       Q.   When did you review it?
            6       A.   Shortly after it was produced.  Oh, wait.  Yes,
            7  I think that's fair.
            8       Q.   You didn't review any drafts?
            9       A.   No.
13:46:36   10       Q.   Have you spoken with Dr. Chase?
           11       A.   I -- we may have interviewed him for a job when
           12  I was at Princeton.  The name is familiar and a lot of
           13  smart youngsters come through and maybe I've spoken to
           14  him in that context, but not about this case.
13:46:55   15       Q.   You haven't spoken to Dr. Chase in the context
           16  of this case?
           17       A.   Not at all.
           18       Q.   Have you spoken to anyone else in forming your
           19  opinions, other than lawyers?
13:47:30   20       A.   No.
           21       Q.   Did you agree with Dr. Chase's report?
           22       A.   I did not read it --
           23            MR. ROSEN:  Objection.  Vague.  Compound.
           24            THE WITNESS:  I did not read it closely enough
13:47:42   25  to come to an opinion.
```

14:43:15   1    Q.   In your understanding, that's the translation
           2    table that's referred to in column 4?
           3    A.   Yes.
           4    Q.   What -- in terms of what is in the table, what
14:43:29   5    information is contained in the translation table
           6    referred to in column 4, lines 30 through 36, of the '526
           7    patent?
           8            MR. ROSEN:  Objection.  Vague.
           9            THE WITNESS:  So the -- the end of that
14:44:22  10    paragraph in column 4 says:  The command key is mapped to
          11    one of the translators in an attempt to provide a command
          12    to the corresponding resource.
          13            So I'm thinking of what goes in and what comes
          14    out.  What goes in is a command key which might just be
14:44:41  15    an index in the table.  And what comes out is a
          16    translator or perhaps a translation of the -- of the
          17    generic command that -- possibly partial generic command
          18    that... that you just looked at the last valid word of.
          19    BY MR. JAFFE:
14:45:08  20    Q.   What's the purpose of this translation table in
          21    column 4?
          22            MR. ROSEN:  Objection.  Calls for speculation.
          23            THE WITNESS:  This is not very well explained, I
          24    would say, but somehow the command key has to -- has to
14:45:45  25    provoke the actual command to the corresponding resource.

```
14:45:54    1   It could be that there's a translator for every command
            2   key.  Maybe that's likely, even.  And I guess -- well, I
            3   wouldn't want to speculate.  So it's just -- it's -- the
            4   language here is not that clear about what this thing
14:46:27    5   does.
            6   BY MR. JAFFE:
            7       Q.   The Court's claim construction order issued on
            8   June 15th, right?
            9       A.   I believe you.
14:47:12   10       Q.   What date did you provide your rebuttal report?
           11       A.   I forget.
           12       Q.   Is that included in the binder sitting in front
           13   of you?
           14       A.   Yes.
14:47:26   15       Q.   Okay.  Do you want to look and see what date you
           16   provided your rebuttal report?
           17       A.   Yes, I do.  Signed on the 17th.
           18       Q.   Did you apply the Court's claim constructions in
           19   your rebuttal report?
14:47:59   20       A.   Yes.
           21       Q.   So you had sufficient time to consider the
           22   Court's claim construction opinions to opine under the
           23   Court's constructions in your rebuttal report, right?
           24       A.   Yes.
14:48:14   25       Q.   You didn't discuss your validity opinions,
```

```
14:48:16   1    though, in your rebuttal report, right?
           2         A.   Right.
           3         Q.   Okay.  Based on the discussion that we had
           4    today, is it fair to say that you don't actually have any
14:48:31   5    invalidity opinions under the Court's constructions,
           6    sitting here today?
           7              MR. ROSEN:  Objection.  Misstates testimony.
           8              THE WITNESS:  Could we use -- do the assume
           9    thing again?  Not taking all the time as before, but can
14:49:05  10    I assume that my interpretation of the Court's claim
          11    construction is correct?
          12    BY MR. JAFFE:
          13         Q.   If you assume -- well, actually, I'm asking a
          14    little bit of a different question.
14:49:27  15              In your expert report you expressed alternative
          16    opinions under Cisco's proposed construction and Arista's
          17    proposed constructions, right?
          18         A.   Yes.
          19         Q.   You didn't opine under the Court's constructions
14:49:40  20    because those didn't exist yet.  Right?
          21         A.   Except where they -- they might have matched one
          22    of the other constructions or were extremely close.
          23         Q.   Otherwise, yes?
          24         A.   Otherwise, yes.
14:49:55  25         Q.   Now that we have the Court's claim construction
```

```
14:49:57    1    order, you don't have any invalidity opinions sitting

            2    here today under the Court's claim construction order,

            3    right?

            4            MR. ROSEN:  Objection.  Vague.  Misstates prior

14:50:08    5    testimony.

            6            THE WITNESS:  I want to say if I'm right in my

            7    interpretation of the Court's claim constructions, then I

            8    don't.

            9    BY MR. JAFFE:

14:50:26   10        Q.   And when you're talking about your

           11    interpretation of the Court's claim construction, you're

           12    referring to the caveat in your expert report in

           13    paragraph 77?  Is that right?

           14        A.   I lost the front of the question.

14:50:55   15        Q.   When you're talking about your interpretation of

           16    the Court's claim construction, you're referring to the

           17    caveat that you expressed in paragraph 77 of your opening

           18    expert report; is that right?

           19        A.   Yes.

14:51:19   20        Q.   So to recap, if you assume that the Court's

           21    claim construction requires every single element of the

           22    tree to have a corresponding at least one command action

           23    value, under the Court's claim construction, you don't

           24    have any invalidity opinions, right?

14:51:37   25            MR. ROSEN:  Objection.  Vague.  Misstates prior
```

```
14:51:38    1   testimony.  Compound.

            2          THE WITNESS:  That is right.

            3   BY MR. JAFFE:

            4       Q.   Okay.  If you can turn back to the '526 patent,
14:51:52    5   what are the management programs identified in the '526

            6   patent for the preferred embodiment?

            7       A.   I read in column 3 management programs

            8   implemented, for example, by a different OAM, which is

            9   what, operation -- operating administration and
14:52:38   10   monitoring tools, such as realtime monitoring, yes.

           11   Programs may be executed within the processor or

           12   externally as external agents using a prescribed

           13   application programming interface.  So things like that.

           14   Things like operation -- operating administration and
14:52:58   15   monitoring and realtime monitoring.

           16       Q.   So why don't you turn to Part A of the appendix

           17   of the '526 patent.

           18       A.   Okay.

           19       Q.   Do you see the third row of the table under New
14:53:18   20   Syntax, it says "watch acb globals"?

           21       A.   I see two of those, actually.

           22       Q.   For the first one that's in the third row, I

           23   was --

           24       A.   There's one there and there's one -- I'm
14:53:39   25   indicating two different watch acb globals.
```