KEKER & VAN NEST LLP
ROBERT A. VAN NEST - # 84065
BRIAN L. FERRALL - # 160847
DAVID SILBERT - # 173128
MICHAEL S. KWUN - #198945
633 Battery Street
San Francisco, CA 94111-1809
Telephone:    (415) 391-5400
Email:  rvannest@kvn.com;
bferrall@kvn.com; dsilbert@kvn.com;
mkwun@kvn.com

SUSAN CREIGHTON, SBN 135528
SCOTT A. SHER, SBN 190053
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
1700 K Street NW, Fifth Floor
Washington, D.C., 20006-3817
Telephone:  (202) 973-8800
Email:  screighton@wsgr.com;
ssher@wsgr.com

JONATHAN M. JACOBSON, NY SBN 1350495
CHUL PAK (*pro hac vice*)
DAVID H. REICHENBERG (*pro hac vice*)
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
1301 Avenue Of The Americas, 40th Floor
New York, NY 10019-6022
Telephone:  (212) 999-5800
Email:  jjacobson@wsgr.com; cpak@wsgr.com;
dreichenberg@wsgr.com

Attorneys for Defendant ARISTA NETWORKS, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| CISCO SYSTEMS, INC., <br><br> Plaintiff, <br><br> v. <br><br> ARISTA NETWORKS, INC., <br><br> Defendant. | Case No. 5:14-cv-05344-BLF (NC) <br><br> **ARISTA'S BRIEF RE ANALYTIC DISSECTION OF ASSERTED WORKS** <br><br> Dept.:      Courtroom 3 - 5th Floor <br> Judge:     Hon. Beth Labson Freeman <br><br> Date Filed: December 5, 2014 <br><br> Trial Date: November 21, 2016 |

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ....................................................................................................................1

II. ARGUMENT..........................................................................................................................2

    A. The Ninth Circuit requires the Court to conduct an "analytic dissection" of Cisco's copyrighted works to identify all unprotectable elements (which Arista and others were free to copy). .......................................................................2

        1. The Ninth Circuit's analytic dissection requirements................................2

        2. The Court should resolve analytic dissection now to avoid confusion, wasted time, and prejudice to Arista at trial..............................5

    B. Many elements of the Cisco CLI that Cisco asserts here are not protectable by copyright. ....................................................................................................7

        1. Unprotectable elements already briefed on summary judgment..................9

        2. Unprotectable elements driven by industry standard protocols and terminology ................................................................................................9

        3. Unprotectable elements taken from pre-Cisco systems ...........................12

        4. Unprotectable elements that fail basic copyrightability standards ............13

        5. Cisco's asserted CLI elements should receive only "thin" protection. ................................................................................................14

III. CONCLUSION.....................................................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Apple Computer, Inc. v. Microsoft Corp.*
   35 F.3d 1435 (9th Cir. 1994) ................................................................................... 2, 3, 4, 14

*Benay v. Warner Bros. Entm't, Inc.*
   607 F.3d 620 (9th Cir. 2010) ................................................................................................ 4

*Brown Bag Software v. Symantec Corp.*
   960 F.2d 1465 (9th Cir. 1992) ........................................................................................ 2, 4

*CDN Inc. v. Kapes*
   197 F.3d 1256 (9th Cir. 1999) .......................................................................................... 12

*Crawford–El v. Britton*
   523 U.S. 574 (1998).............................................................................................................. 6

*Data East USA, Inc. v. Epyx, Inc.*
   862 F.2d 204 (9th Cir. 1988) ......................................................................................... 2, 14

*Diamond Foods, Inc. v. Hottrix, LLC*
   No. 14-cv-03162-BLF, 2016 WL 3880797 (N.D. Cal. July 18, 2016) .................................. 14

*Ets-Hokin v. Skyy Spirits, Inc.*
   323 F.3d 763 (9th Cir. 2003) ................................................................................................ 4

*Harper & Row Publishers, Inc. v. Nation Enters.*
   471 U.S. 539 (1985).............................................................................................................. 7

*Harper House, Inc. v. Thomas Nelson, Inc.*
   889 F.2d 197 (9th Cir. 1989) ................................................................................... 2, 4, 5, 7

*In re Airport Car Rental Antitrust Litig.*
   474 F. Supp. 1072 (N.D. Cal. 1979) ..................................................................................... 6

*L.A. Printex Indus., Inc. v. Aeropostale, Inc.*
   696 F.3d 841 (9th Cir. 2012) .............................................................................................. 14

*Landsberg v. Scrabble Crossword Game Players, Inc.*
   736 F.2d 485 (9th Cir. 1984) ................................................................................................ 3

*Mattel, Inc. v. MGA Entm't, Inc.*
   616 F.3d 904 (9th Cir. 2010) ..................................................................................... 3, 4, 14

*Matthew Bender & Co. v. West Pub. Co.*
   158 F.3d 674 (2d Cir. 1998)........................................................................................... 11, 12

*Merch. Transaction Sys., Inc. v. Nelcela, Inc.*
   No. CV 02-1954-PHX-MHM, 2009 WL 723001 (D. Ariz. March 18, 2009) .................. 4, 6

*Meridian Project Sys., Inc. v. Hardin Const. Co., LLC*
   426 F. Supp. 2d 1101 (E.D. Cal. 2006)................................................................................. 3

*Narell v. Freeman*
    872 F.2d 907 (9th Cir. 1989) ............................................................................................... 13

*O.P. Sols., Inc. v. Intellectual Prop. Network, Ltd.*
    No. 96 CIV. 7952 (LAP), 1999 WL 47191 (S.D.N.Y. Feb. 2, 1999) ........................................ 6

*Oracle Am., Inc. v. Google Inc.*
    750 F.3d 1339 (Fed. Cir. 2014) ....................................................................................... 3, 4

*Satava v. Lowry*
    323 F.3d 805 (9th Cir. 2003) ............................................................................................. 11

**Federal Rules**

Fed. R. Civ. P. 16 .................................................................................................................... 6

**Federal Regulations**

37 C.F.R. § 202.1 .................................................................................................................. 13

**I.     INTRODUCTION**

As directed at the June 16 CMC, Arista submits this early trial brief outlining the legal requirements of analytic dissection and proposing a process to identify elements of Cisco's asserted works that copyright does not protect. The Court can and should receive evidence and argument on analytic dissection now, before trial (with an evidentiary hearing if the Court chooses), and resolve issues of protectability in advance of trial. Because many aspects of Cisco's asserted works are not protectable (because they were borrowed from pre-existing works or dictated by device features and standard industry parlance), analytic dissection will have a substantial effect on the nature of the trial. Moreover, the Court need not perform a command-by-command analysis to decide this question; several overarching facts about asserted CLI elements resolve questions of protectability for large swaths of Cisco's assertions.

There is no dispute that analytic dissection is the province of the Court. In cases such as this, which involve well over a thousand discrete elements in which Cisco is asserting copyright, analytic dissection in advance of trial is particularly important. Cisco has demonstrated its wish to try this case by sound-bite regarding "copying." Without a determination of what is or is not protectable the trial could devolve into allegations of copying unprotectable elements, which would be highly confusing to the jury and prejudicial to Arista. Leaving the entire analytic dissection process until the end of trial and addressing it only in the closing jury instructions (as Cisco suggested at the June 16 CMC) would risk a tainted trial, an unnecessary burden on the jurors, and an unnecessary burden on the Court as it is forced to resolve these issues near the end of trial with a jury waiting.

Arista's approach, on the other hand, will simplify the trial and save the Court and the jury time and effort by clarifying before the trial commences the bases on which Cisco can and cannot seek an infringement verdict. The Court can then conduct the trial accordingly, and the parties can direct their evidence and arguments to the issues the jury will be asked to decide.

## II.  ARGUMENT

### A.  The Ninth Circuit requires the Court to conduct an "analytic dissection" of Cisco's copyrighted works to identify all unprotectable elements (which Arista and others were free to copy).

Cisco does not dispute that it is the province of the Court to resolve the mixed legal/factual issue of identifying and filtering out unprotected elements of Cisco's copyrighted work before the jury can evaluate the alleged infringement in this case. *See Harper House, Inc. v. Thomas Nelson, Inc.*, 889 F.2d 197, 201 (9th Cir. 1989); *Apple Computer, Inc. v. Microsoft Corp.*, 35 F.3d 1435, 1443 (9th Cir. 1994) (dissecting graphical interface); *Brown Bag Software v. Symantec Corp.*, 960 F.2d 1465, 1475–76 (9th Cir. 1992) (citing *Data East USA, Inc. v. Epyx, Inc.*, 862 F.2d 204, 209 (9th Cir. 1988)). Cisco accepted these core principles at the June 16 case management conference, and again at the August 4 summary judgment hearing. Dkt. 321 (6/16/16 CMC Tr.) at 32:8–15; Dkt. 437 (8/4/16 MSJ Tr.) at 14:14–16 ("Once you [the Court] have done that analytic dissection that the Ninth Circuit has required then you will be able to tell the jury [what constitutes actionable copying]").

### 1.  The Ninth Circuit's analytic dissection requirements

In the Ninth Circuit's analytic dissection process, the plaintiff must first identify what it claims was copied, *i.e.*, the sources of alleged similarity and any infringement.[1] Next, before the ultimate infringement comparison can be made (between the disputed works *as a whole*), "the court must determine whether any of the allegedly similar features are protected by copyright," "[u]sing analytic dissection, and, if necessary, expert testimony." *Apple*, 35 F.3d at 1443. At this stage, "unprotectable ideas must be separated from potentially protectable expression; [and] to that expression, the court must then apply the relevant limiting doctrines in the context of the particular medium involved." *Id.* Then, after "dissect[ing] the alleged similarities and consider[ing] the range of possible expression," the court "*must* define the scope of the plaintiff's

---

[1] The Court recognized at the June CMC that it was still unclear "what Cisco is presenting as protectable." Dkt. 321 (6/16/16 CMC Tr.) at 37:9–10. And Cisco's recent submission identifying CLI elements it claims were copied verbatim still purports to reserve the right to identify additional copied material. Dkt. 452 (Cisco Amended Proposed MSJ Order). The Court should require Cisco to identify definitively any additional allegedly protectable expression it contends Arista copied.

copyright—that is, decide whether the work is entitled to 'broad' or 'thin' protection." *Id.* (emphasis added). Finally, "[d]epending on the degree of protection, the court must set the appropriate standard for a subjective comparison of the works to determine whether, as a whole, they are sufficiently similar to support a finding of illicit copying." *Id.* Where the range of possible expression is narrow, copyright protection is "thin" and infringement requires "virtual identity" between the disputed works, rather than the "substantial similarity" required for infringement of a work that receives broad protection. *Apple*, 35 F.3d at 1442–43; *see also Mattel, Inc. v. MGA Entm't, Inc.*, 616 F.3d 904, 915 (9th Cir. 2010); 4-13 Nimmer on Copyright § 13.03.

Some courts have used "verbatim reproduction" as an equivalent to the "virtual identity" standard, but under either formulation, the infringement comparison must be of the works as a whole—not a comparison of plaintiff's cherry-picked selection of parts of a work it claims were copied. *See Landsberg v. Scrabble Crossword Game Players, Inc.*, 736 F.2d 485, 488 (9th Cir. 1984) (for factual works, "similarity of expression may have to amount to verbatim reproduction" to support infringement); *Apple*, 35 F.3d at 1444; *Mattel*, 616 F.3d at 915 (works as a whole); *Meridian Project Sys., Inc. v. Hardin Const. Co., LLC*, 426 F. Supp. 2d 1101, 1113 (E.D. Cal. 2006) (applying *Landsberg* and *Apple Computer*; considering verbatim copying and comparing works as a whole for virtual identity). Whether the copying is "verbatim" or word-for-word (sometimes called "literal" copying) is also separate from whether the alleged copying is of "literal" or "non-literal" elements of a work (for example, the "literal" source code programming of a program or only "non-literal" features of the program's abstract structure). *See Oracle Am., Inc. v. Google Inc.*, 750 F.3d 1339, 1356 (Fed. Cir. 2014) (distinguishing literal elements and "literal" copying).

As part of the analytic dissection process, the Court must apply the Ninth Circuit's law on originality and the idea/expression dichotomy (Section 102(b)), as well as other limiting doctrines such as merger and *scenes a faire* that help define the scope of a viable infringement claim. *See Mattel*, 616 F.3d at 913 (in "extrinsic" infringement inquiry, "ideas, scenes a faire (standard features) and unoriginal components aren't protectable"). Although the Ninth Circuit does not

3

treat the doctrines of merger and *scenes a faire* as defects that can defeat the overall validity of a copyright, it does incorporate and consider them in the analytic dissection that the Court must perform as part of its "extrinsic" infringement analysis.[2]  *Id.*; *see also Merch. Transaction Sys., Inc. v. Nelcela, Inc.*, No. CV 02-1954-PHX-MHM, 2009 WL 723001 (D. Ariz. March 18, 2009) (pre-trial order performing analytic dissection of a computer program, including application of merger and *scenes a faire* doctrine); *Benay v. Warner Bros. Entm't, Inc.*, 607 F.3d 620, 628 (9th Cir. 2010) (applying *scenes a faire* as part of "extrinsic" portion of infringement analysis: "These [elements] are all scenes-a-faire that flow naturally from the works' shared unprotected premise and are therefore disregarded for purposes of the extrinsic test."); *Ets-Hokin v. Skyy Spirits, Inc.*, 323 F.3d 763, 766 (9th Cir. 2003) (applying *Apple Computer* and affirming summary judgment; "When we apply the limiting doctrines, subtracting the unoriginal elements, Ets–Hokin is left with only a "thin" copyright, which protects against only virtually identical copying."); *Brown Bag Software*, 960 F.2d at 1477 ("extrinsic test for literary works requires analytic dissection").

The Court must decide these questions before presenting this case to the jury, and proper analytic dissection is essential to a fair infringement trial.  *Apple*, 35 F.3d at 1446.  This is "[b]ecause only those elements of a work that are protectable . . . can be compared when it comes to the ultimate question of illicit copying[.]"  *Id.* at 1443.  Thus, "the unprotectable elements have to be identified, or filtered, before the works can be considered as a whole."  *Id.* at 1446.  "[T]he party claiming infringement may place *no* reliance upon any similarity of expression resulting from unprotectable elements."  *Id.* (emphasis in original; citation and internal quotation marks omitted).  This is true even if factual copying is undisputed, because "copying" of unprotectable elements is legally irrelevant to infringement: "others may freely copy a work's ideas (and other unprotectable elements)."  *Mattel*, 616 F.3d at 913–14.  Thus, in *Harper House*, the Ninth Circuit reversed a jury verdict because even though the jury instructions addressed protectability, they

---

[2] *Oracle v. Google* rejected the merger and *scenes a faire* doctrines as proposed alternative bases for affirming the district court's denial of copyrightability, and commented that the Ninth Circuit treats these doctrines as defenses to infringement.  *Oracle*, 750 F.3d at 1358.  The *Oracle* district court ruling had been based on Section 102(b)'s bar on copyrighting systems and methods, however, without any analytic dissection or "filtration" analysis.  As explained above, it is proper to apply both doctrines here: the Ninth Circuit does indeed treat these defensive doctrines as part of its "extrinsic" infringement analysis—in other words the analytic dissection process.

failed to distinguish adequately between protectable and unprotectable material, making it possible for the jury to find copying based on unprotectable material.  889 F.2d at 207-08.

### 2. The Court should resolve analytic dissection now to avoid confusion, wasted time, and prejudice to Arista at trial.

Analytic dissection is especially crucial here because of the ongoing uncertainty of precisely what Cisco contends constitutes infringement.  With trial now only months away, Cisco's case theory remains fluid and malleable.  Cisco has given contradictory explanations to the Court about what is at issue in the case.  *Compare* Dkt. 82 (9/29/15 MTC Tr.) at 21:14–17 ("And I want to be perfectly clear with the Court . . . that Cisco does believe it's entitled to copyright protection on each of these multi-word commands") *with* Dkt. 437 (8/4/16 MSJ Tr.) at 22:10–13 (arguing it is not necessary to specify which individual pieces of Cisco's CLI and "building blocks" were copied) *and id.* at 14:19–23 (arguing for infringement based on similar "look and feel").  And although Cisco moved for summary judgment as to copyrightability and infringement of the "Cisco CLI" (Dkt. 348 (Cisco MSJ)), Cisco's interrogatory response identifying all alleged actionable similarities between Cisco's and Arista's works never compared "the Cisco CLI" to the Arista CLI.  Instead it compared discrete, non-literal elements of its software to non-literal aspects of Arista's software, while omitting numerous other words and attributes.[3]  *See* Dkt. 329 Exs. 3 & 4.  With the exception of user manuals (which is a minor aspect of the case), those comparisons are not of Cisco's registered works but of lawyer-created exhibits.  Careful guidance is essential for such claims because assessing similarities of computer programs is "often exceedingly difficult" for juries, especially "when the allegations of infringement go beyond mere literal copying of the program code." *See* 4 Nimmer on Copyright § 13.03.

Analytic dissection is also essential here because numerous courts have recognized that individual components that make up a user interface are typically ***not*** independently protectable.

---

[3] As Dr. John Black explained in his expert report, of the 508 "CLI commands" that Cisco asserts were copied, at least 397 would not actually be accepted by a Cisco switch if entered by a user. *See* Dkt. 380 (Arista Opp. MSJ) at 12.  The rest require additional parameters or keywords that Cisco selectively omitted from its lawyer-created listing of "commands."

To the extent protection exists for interfaces, it will often attach only to a creative selection and arrangement of unprotectable elements as a whole. *See, e.g., Merchant Transaction Systems*, 2009 WL 723001, at *7 (pre-trial order performing analytic dissection of a computer program); *O.P. Sols., Inc. v. Intellectual Prop. Network, Ltd.*, No. 96 CIV. 7952 (LAP), 1999 WL 47191, at *11 (S.D.N.Y. Feb. 2, 1999) ("In most cases the constituent elements of the user interface or screen display are not independently protectable"; defining unprotectable elements of computer program; collecting cases); *see also* Dkt. 329 (Arista MSJ) at 13-14 (cases rejecting protection for command menus, etc.).

The Court has broad discretion to craft pretrial procedures that will help the Court and jury grapple with complex legal issues, avoid wasted time, and minimize the very real risks of confusion. *See* Fed. R. Civ. P. 16(c); *Crawford–El v. Britton*, 523 U.S. 574, 599 (1998). Exercising that authority here to perform analytic dissection before the trial commences will facilitate and streamline the Court's and the parties' pre-trial preparation and the presentation of evidence. *See In re Airport Car Rental Antitrust Litig.*, 474 F. Supp. 1072, 1108–09 (N.D. Cal. 1979) (granting pretrial order re burden in antitrust case).

Arista proposes that the Court address analytic dissection with the following procedure: (1) require Cisco to identify all specific similarities on which it bases its claims of infringement; (2) set a schedule for both parties to submit their detailed evidence and briefing on analytic dissection and the extent to which aspects of Cisco's asserted CLI elements must be filtered out of the infringement analysis; (3) schedule argument and, if the Court chooses, an evidentiary hearing; and (4) issue an order before trial setting forth the Court's analytic dissection of the relevant portions of Cisco's asserted elements of its works to identify those aspects that are unprotectable and to determine the scope of protection (broad or thin) for protectable aspects of the works.

By conducting this process in advance of trial, the Court will avoid the high risk of juror confusion from hearing arguments and evidence that are legally irrelevant, save juror and Court time during trial, and allow for more informed rulings on *in limines* and other evidentiary and trial management issues. Although unprotected elements can be presented to the jury as part of a

complete work, failure to identify unprotectable elements adequately and ensure that the jury does not base an infringement verdict upon them would prejudice Arista and taint the trial. *See Harper House*, 889 F.2d at 207 (holding that "[t]hough the instructions cautioned that the jury limit its review to protectable material, this caution was of little value because these instructions did not adequately explain to the jury which material was, in fact, protectable. In a case such as this, given the negative connotations to 'copying,' there was an obvious risk of an improper verdict for plaintiffs, and a need for further instructions to protect legitimate activity and avoid the suffocation of competition.")

By determining what is protectable in advance of trial the Court will allow the parties to structure their presentations and evidence to rely only on protectable elements, and can be vigilant that jurors are not misled into believing that Cisco has exclusive rights over material in the public domain. In some cases, the analytic dissection process should completely eliminate whole categories of Cisco's asserted CLI elements. But even where dissection does not dispose of categories of Cisco's asserted CLI elements, it will focus the jury's attention on the relevant comparison. And it will provide the jury the essential framework for evaluating fair use factors such as the nature of the copyrighted work and the extent of use of the work. *See Harper & Row Publishers, Inc. v. Nation Enters.*, 471 U.S. 539, 588 (1985) (fair use factors). Moreover, if the Court holds (as it should) that only "thin" protection is available for some or all elements of Cisco's asserted works, and "virtual identity" is required to support an infringement finding, Arista may also be entitled to judgment as a matter of law as to those elements, with no trial necessary at all.

**B.      Many elements of the Cisco CLI that Cisco asserts here are not protectable by copyright.**

There can be no dispute that many aspects of the asserted CLI elements were taken directly from or inspired by pre-Cisco systems, or dictated by functional constraints and industry demands, including the need to implement industry-standard features and protocols, and to use common industry parlance.

Cisco likens its CLI to *A Tale of Two Cities* and an epistolary novel, but it is nothing of

the kind.  Configuring and querying an Ethernet switch is a functional exercise dictated by the switch's parameters and features, which in turn are dictated by industry standards and protocols that are free—indeed, necessary—for all switch vendors to use.  The vocabulary of a CLI is as close to *Tale of Two Cities* as a brochure describing a train schedule.  Just as a brochure informing travelers that the train to Schenectady leaves at 1:15 p.m. from Platform 3 will likely use the terms "Schenectady," "1:15," and "Platform 3," an instruction to set a particular switch parameter will likely name the parameter in a conventional way and specify the value it should be set to.  This is not to say that commands can be phrased in only one way—just as the train schedule might say "leave" instead of "depart" or "quarter past one" instead of "1:15," and arrange the words in various sequences.  But there are a limited number of well-known acronyms and industry jargon to convey the underlying functionality, and deviating from them would only force confusion upon the user.

Although the Court may not be familiar with the vocabulary of network protocols and functionality, the evidence relevant to analytic dissection—explaining the origins of this vocabulary—is straightforward.  The Court will soon come to understand how much of Cisco's asserted CLI features is actually mundane and conventional industry jargon that Cisco took so that its users would understand the meaning of the CLI.  Network engineers talk about "dot1x" and "OSPF area neighbors" the way mechanics talk about carburetors and pastry chefs talk about flour.  And the evidence will show that Cisco's choice of CLI commands was constrained by that familiar, self-explanatory industry terminology.  *See* Dkt. 380 (Arista Opp. MSJ) at 10-11; Dkt. 380-1 Ex. 24 (Kathail Depo. Tr.) at 194:8–11 & 195:16–21.

Analytic dissection will not require a line-by-line or word-by-word analysis of the asserted commands and other CLI features because many of the unprotectable aspects that Cisco asserts here can be grouped into common categories.  If the Court adopts Arista's analytic dissection procedure, Arista will submit clear and persuasive evidence that numerous categories and types of commands and other CLI features must be filtered out through the analytic dissection

process because Arista and other competitors had a legal right to use them.[4]  Although Cisco claims that some elements are protectable as part of Cisco's overall selection and arrangement of CLI elements or its CLI as a whole, the unprotectable elements within that arrangement must still be identified so that the jury can properly focus on the "expression," if any, in the arrangement.

The categories of unprotectable elements at issue fall into several basic conceptual groups, as follows: categories of CLI elements already presented on summary judgment (to the extent the Court denies any part of Arista's summary judgment motions); categories of CLI elements driven by the networking industry's standard protocols and terminology; categories of CLI elements copied from pre-Cisco systems; and basic ideas and functional concepts that are fundamentally unprotectable as a matter of law.  Each group of categories is described in more detail below.

### 1. Unprotectable elements already briefed on summary judgment

To the extent the Court concludes that disputed issues of fact may preclude it from granting summary judgment as to Cisco's claimed hierarchies, modes and prompts, and the 198 CLI commands for which Cisco has presented no evidence of originality, the Court should declare those categories unprotectable in its analytic dissection order.  Sample Order ¶¶ 1, 3 & 4.  The rationale for finding those elements unprotected by copyright has already been briefed, and Arista would only need to summarize the law and evidence for these.  *See* Dkt. 329 (Arista MSJ) at 5–17.

### 2. Unprotectable elements driven by industry standard protocols and terminology

It will be essential for the Court to identify those elements of asserted similarities that are based upon unprotectable industry protocols and standard industry terminology, which are not original to Cisco and which flow naturally from implementing the functions and protocols used in the industry.  Sample Order ¶¶ 2, 5, 7 & 8.  As Arista's expert evidence will show (and the Court has already seen in part in Arista's opposition to summary judgment), almost all of Cisco's command terms come directly from pre-existing industry terminology, and use that terminology

---

[4] Attached hereto as Exhibit A is a Sample [Proposed] Order for Analytic Dissection ("Sample Order").  Should the Court decide to proceed with pre-trial analytic dissection as Arista suggests, Arista will submit a complete proposed order consistent with the evidence and the Court's pre-trial management plan.

1   in conventional ways. *See* Dkt. 380 (Arista Opp. MSJ) at 9–11.  Because the use of those
2   standardized industry terms to refer to standard industry functions is not a creative choice, Cisco's
3   use of those terms is not protectable by copyright.  Accordingly, the Court should identify as
4   unprotectable all asserted aspects of the Cisco CLI that are taken from industry protocols and
5   standards or industry jargon.  This includes acronyms, the names of protocols, terms explaining
6   protocol functionality, and protocol parameters that originate from formal or informal industry
7   standards or are widely adopted conventions in the industry.  Sample Order ¶¶ 2 & 5.  (This
8   applies to the use of these terms in the asserted commands as well as in asserted command
9   responses or screen displays and help descriptions.)

10  If the Court adopts Arista's proposed procedure, Arista will present compelling evidence
11  that "the vast majority of terms used in the accused CLI commands come directly from industry
12  standards, and well-known descriptive industry parlance." *See* Dkt. 380 (Arista Opp. MSJ) at 10
13  (citing Dkt. 381 (Black Decl.) Exs. 1, 2, 3, 32, 38 & 61).  For example, the asserted command
14  fragment "ptp priority 1" is an unoriginal combination of "ptp," an industry-standard acronym for
15  an industry standard-protocol (the "precision time protocol"), and "priority 1," an industry
16  standard parameter defined in the "ptp" protocol.  *See* Dkt. 380 (Arista Opp. MSJ) at 10 (citing
17  Dkt. 381 (Black Decl.) Ex. 1 ¶ 589 and Dkt. 380-1 (Wong Decl) Ex. 20).  Although Cisco would
18  like to argue that there is no mandate from above that networking companies use these words, the
19  more appropriate question is why should Cisco have exclusive rights to use pre-existing
20  terminology taken from a public-domain standard?  Likewise, the command "show snmp user"
21  simply combines the unoriginal "show" command (which Cisco took from the old Tops-20
22  operating system) with "snmp user"—a term defined by the SNMP ("simple network
23  management protocol") protocol that Cisco did not originate and the entire industry uses.  *See*
24  Dkt. 380 (Arista Opp. MSJ) at 10 (citing Dkt. 381 (Black Decl.) Ex. 1 and Dkt. 380-1 (Wong
25  Decl.) Exs. 21 & 22).  Hundreds of other commands are similarly made up entirely of industry-
26  standard terms, and constrained by the need to describe the functional features the CLI invokes, in
27  conformance with industry expectations and practice. *See* Dkt. 380 (Arista Opp. MSJ) at 10–11
28  (citing Dkt. 381 (Black Decl.) Exs. 1, 2, 3, 32, 38 & 61).  Cisco can offer no plausible rebuttal to

any of these facts.

Under Arista's proposed procedure, the analytic dissection briefing will also address the proper application of the originality requirement to these asserted elements of the Cisco CLI. Even if Arista does not challenge the notion that Cisco's ***overall*** assembly of its CLI elements meets the minimum originality threshold, the Court must nonetheless apply the originality standard to any CLI component that Cisco claims is independently protectable. Although the bar for originality is low, it is not nonexistent, and an arrangement of unprotectable elements is protectable only if the arrangement itself reflects some minimal creative spark. *See Satava v. Lowry*, 323 F.3d 805, 810 (9th Cir. 2003). The necessary "creative spark" is missing, however, where "industry conventions or other external factors" dictate the chosen selection of elements, or the selections made are purely "obvious, garden-variety, or routine." *Matthew Bender & Co. v. West Pub. Co.*, 158 F.3d 674, 682 (2d Cir. 1998). That is the case here. For example, there is no originality or creativity in Cisco's choice of commands based on a networking industry standard protocol (for example, the "ptp" protocol) with a standard accepted acronym ("ptp") and standard parameters (such as "priority 1").

Cisco's choice to implement standard networking parameters and functions, using their standard industry names and terminology, is no more creative than a legal publisher's choice to include standard elements such as "names of the parties, the deciding court, and the dates of argument and decision" or attorney information in reporting a legal decision. *See Matthew Bender*, 158 F.3d at 683–84. Where there are a limited number of "realistic options" for selecting or arranging factual or functional elements in a work, it would stifle competition to find a protected "creative" decision in the choice of arrangement. *Id.* at 684. Protecting such an arrangement would eliminate all but a very few options for competitors to avoid infringement. *Id.* at 687–88. As Arista's evidence will show, the selection of CLI command elements here is just as obvious and functionally constrained from the perspective of the network engineers devising

the CLI as the selections rejected in *Matthew Bender* were in the context of legal practice.[5]

### 3. Unprotectable elements taken from pre-Cisco systems

The evidence will show that whole categories of Cisco CLI elements, as well as some of the most common vocabulary and syntax, came from pre-Cisco systems, which must also be filtered out as unprotectable. In addition to the modes and prompts Cisco took from pre-Cisco systems (see Section 1 above re elements presented on summary judgment), Cisco also lifted other basic CLI elements from those systems. For example, the command syntax in the form "[verb] [object or entity] [additional parameters]" is not original to Cisco, but was used in prior operating systems that Cisco borrowed from. Sample Order ¶ 7. This includes, for example, commands in the form "show [protocol feature {or} system status]." Likewise, it is not original to Cisco to begin a command with any of the following keywords, which operating systems used as initial command words before Cisco used them: "banner", "boot", "clock", "clear", "enable", "erase", "load", "set", "show" and "terminal". Sample Order ¶ 8. (These command terms also fall within the preceding category, because they are standard programming terms whose use flows naturally from the idea of creating a CLI with the associated functions.) To the extent Cisco could possibly claim protected expression in any command beginning with these terms, it must find original protected expression in the terms that follow these unoriginal root keywords.

There is no real dispute that Cisco took common command keywords and a familiar command syntax from pre-Cisco systems. Cisco *concedes* that many (if not all) single-word commands like "Copy" and "Delete" are not copyrightable, even though alternative words could conceivably serve the same functions. Dkt. 64 ¶ 7; Dkt. 380-1 (Wong Decl.) Ex. 23 at 2; *id.* Ex. 37 (Almeroth Rpt.) ¶ 261 (terms "show," "clear," "help," "ip," "no," "arp," and "bgp" all existed before Cisco). Arista has already submitted extensive evidence on these issues in opposing Cisco's summary judgment motion, and will submit a more streamlined presentation of that and other evidence as part of the analytic dissection process. *See* Dkt. 381 Ex. 38 (Black Rebuttal

---

[5] Given their industry contexts, both West's selections and Cisco's are far more akin to a coin dealer simply "discover[ing] and report[ing] the prices paid by dealers" (which the Ninth Circuit has explained would *not* be creative enough to be copyrightable) than to the complex evaluation of coin values that the Ninth Circuit found creative enough to be protectable in *CDN Inc. v. Kapes*, 197 F.3d 1256, 1260 (9th Cir. 1999).

Rpt.) ¶¶ 65–69 (pre-Cisco use of hierarchical and structured multi-word commands); *see also id.* Ex. 1 (Black Rpt) ¶¶ 105–07, 498–516, 559–67, 545, 547–82, 632–35; Dkt. 380-1 (Wong Decl.) Ex. 1 at 123–24 (adopting TOPS conventions), 151:7–23 (multi-word commands in UNIX and TOPS-20 systems Lougheed used before developing Cisco CLI); *id.* Ex. 2 at 32:3–8 ("every operating system" had used 'show' commands); *id.* Ex. 4 at 145–146 (Cisco "copied some of the functionality" for its CLI from TOPS-20), 153–54 (look and feel of Cisco CLI based on TOPS-20 as a model); *id.* Ex. 21).

### 4. Unprotectable elements that fail basic copyrightability standards

The Court should also filter out and identify for the jury asserted CLI features that are mere ideas or concepts (and thus unprotectable under Section 102(b)) that were not the subject of the summary judgment motion. Sample Order ¶¶ 5, 6, 9 & 10. For example, Cisco's expert suggests that the mere use of a text-based command-line interface itself was original to Cisco. Dkt. 348 (Cisco MSJ) at 2. But controlling an operating system through command words and arguments typed in at command prompt is a mere idea—and not original to Cisco—and thus not protectable under Cisco's copyright. *See* Sample Order ¶ 10. The same is true for the idea of using multi-word commands. *Id*. Cisco cannot claim copyright protection for the functions themselves, which are unprotectable under Section 102(b). Sample Order ¶ 9. (For example, Cisco cannot exclude others from creating a command to invoke the function "show snmp user" or "show aaa sessions," or command responses that show the requested parameters.) Finally, to the extent that Cisco asserts that phrases of one or two words are independently protectable by copyright, Ninth Circuit law is clear that such short phrases do not qualify as protectable expression.[6] 37 C.F.R. § 202.1(a); *Narell v. Freeman*, 872 F.2d 907, 911 (9th Cir. 1989). Ideas and the choice of an isolated word or two cannot be a basis for copyright protection, and must be filtered out and distinguished from Cisco's claims in the overall selection and arrangement of its hundreds of CLI elements. *See* Sample Order ¶ 6.

---

[6] Even in their full length, the asserted CLI commands (and many help descriptions) are no more than a few words long. Once the Court filters out the public domain vocabulary that any equipment vendor must be free to use, there typically are no more than one or two words remaining, if any. *See* Dkt. 381 (Black Decl.) Exs. 32, 61.

13
ARISTA'S BRIEF RE ANALYTIC DISSECTION OF ASSERTED WORKS
Case No. 5:14-cv-05344-BLF (NC)

1097697.01

### 5. Cisco's asserted CLI elements should receive only "thin" protection.

For all of the categories of unprotected features described above, Arista's evidence about the functional industry constraints driving Cisco's supposedly "creative" choice of commands and other CLI features will show that Cisco is entitled to, at most, "thin" protection for any remaining protectable expression. This would require a finding of "virtual identity" between the works in order to prove infringement. *Apple*, 35 F.3d at 1442–43. In contrast to the facts at issue in the Court's recent decision in *Diamond Foods, Inc. v. Hottrix, LLC*, No. 14-cv-03162-BLF, 2016 WL 3880797 (N.D. Cal. July 18, 2016), Arista will show that given functional and industry constraints there is ***not*** a wide range of expression possible for most aspects of a CLI intended to control a networking switch. *Cf. id.* at *8–9 (finding wide range of expression possible in visual design of a popcorn-popping app); *L.A. Printex Indus., Inc. v. Aeropostale, Inc.*, 696 F.3d 841 (9th Cir. 2012) (finding wide range of expression possible for flowered textile design). Applying a "virtual identity" standard can be dispositive. Indeed, in the key analytic dissection case of *Apple v. Microsoft*, judgment was entered after Apple was unable to present evidence of virtual identity after unprotectable elements were filtered. *Apple*, 35 F.3d at 1438 ("Apple declined to oppose motions for summary judgment of noninfringement for lack of virtual identity").

In this case, as in the Ninth Circuit's *Mattel v. MGA Entertainment* decision, only a narrow range of expression is possible for the selection of asserted CLI features because the industry demands that interfaces for switches include certain features, follow expected patterns, and not launch into free-wheeling "creative" whimsy. *See* Dkt. 380 (Arista Opp. MSJ) at 10–11; Dkt. 380-1 (Wong Decl.) Exs. 17, 25, 26 (Cisco documents). In *Mattel*, only "thin" protection was available for a fashion doll sculpt featuring a stylized female figure with exaggerated features because in practice, the industry demands certain types of features as part of the basic idea for fashion dolls (narrow waists and large eyes), and discourages others (potbellies and large noses). *Mattel,* 616 F.3d at 914–15. Similarly here, in practice the Cisco CLI had to use recognizable industry terms and parameters to invoke standard industry protocols and functions —not randomly selected "creative" words. *See id.*; *Data East USA*, 862 F.2d at 209 (protection only against "identical copying" for computer karate game highly constrained by limitations "inherent

in the sport of karate itself").

## III. CONCLUSION

For the foregoing reasons, the Court should (1) set a pre-trial schedule for the parties promptly to submit their evidence and argument concerning analytic dissection, as described above; and (2) issue an order defining the categories of CLI elements that the Court has ruled unprotectable (as reflected in the preliminary proposed order attached as Appendix A).

Respectfully submitted,

Dated: August 15, 2016                KEKER & VAN NEST LLP

By:   */s/ Brian L. Ferrall*
      BRIAN L. FERRALL

      Attorneys for Defendant
      ARISTA NETWORKS, INC.