Kathleen Sullivan (SBN 242261)
kathleensullivan@quinnemanuel.com
QUINN EMANUEL URQUHART &
SULLIVAN LLP
51 Madison Avenue, 22nd Floor
New York, NY 10010
Telephone: (212) 849-7000
Facsimile: (212) 849-7100

Sean S. Pak (SBN 219032)
seanpak@quinnemanuel.com
Amy H. Candido (SBN 237829)
amycandido@quinnemanuel.com
John M. Neukom (SBN 275887)
johnneukom@quinnemanuel.com.
QUINN EMANUEL URQUHART &
SULLIVAN LLP
50 California Street, 22nd Floor
San Francisco, CA 94111
Telephone: (415) 875-6600
Facsimile: (415) 875-6700

Mark Tung (SBN 245782)
marktung@quinnemanuel.com
QUINN EMANUEL URQUHART &
SULLIVAN LLP
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, CA 94065
Telephone: (650) 801-5000
Facsimile: (650) 801-5100

Steven Cherny (admitted pro hac vice)
steven.cherny@kirkland.com
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900

Adam R. Alper (SBN 196834)
adam.alper@kirkland.com
KIRKLAND & ELLIS LLP
555 California Street
San Francisco, California  94104
Telephone: (415) 439-1400
Facsimile: (415) 439-1500

Michael W. De Vries (SBN 211001)
michael.devries@kirkland.com
KIRKLAND & ELLIS LLP
333 South Hope Street
Los Angeles, California 90071
Telephone: (213) 680-8400
Facsimile: (213) 680-8500

Attorneys for Plaintiff Cisco Systems, Inc.

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

| | |
|---|---|
| CISCO SYSTEMS, INC.,<br><br>Plaintiff,<br><br>vs.<br><br>ARISTA NETWORKS, INC.,<br><br>Defendant. | CASE NO. 5:14-cv-5344-BLF<br><br>**CISCO'S OPENING BENCH BRIEF RE: COPYRIGHT PROTECTABILITY**<br><br>Judge:    Hon. Beth Labson Freeman |

## <u>TABLE OF CONTENTS</u>

I.     CISCO ASSERTS COPYRIGHT PROTECTION IN ITS CLI AND RELATED
       MATERIALS ................................................................................................................. 1

II.    CISCO CLI IS PROTECTABLE AS A MATTER OF LAW ............................................. 3

       A.     The Elements Of Copyright Infringement .................................................. 4

       B.     The Ninth Circuit's "Analytic Dissection" Test:  General Principles ...................... 6

       C.     The Ninth Circuit's "Analytic Dissection" Test:  Computer Programs ................... 8

              1.     The first step: "abstraction" ................................................................. 9

              2.     The second step: "filtration" ........................................................ 9

              3.     The third step: comparison ........................................................ 10

       D.     Ninth Circuit Affirmative Defenses: Merger and Scenes A Faire .......................... 11

              1.     Merger ........................................................................................ 11

              2.     Scenes a faire ........................................................................... 13

III.   PROCEDURE FOR DETERMINING COPYRIGHT PROTECTABILITY AND
       FILTRATION ................................................................................................................ 14

IV.    CONCLUSION ............................................................................................................. 15

02099-00004/8257056.3

1

## TABLE OF AUTHORITIES

2

**Page**

3

CASES

4

*Altera Corp. v. Clear Logic, Inc.*,
    424 F.3d 1079 (9th Cir. 2005) ............................................................................................. 8

5

6

*American Geophysical Union v. Texaco Inc.*,
    802 F. Supp. 1 (S.D.N.Y. 1992), *aff'd*, 60 F.3d 913 (2d Cir. 1994) ...................................... 3

7

*Apple Computer, Inc. v. Microsoft Corp.*,
    35 F.3d 1435 (9th Cir. 1994) .................................................................................... passim

8

9

*Atari Games Corp. v. Nintendo of Am., Inc.*,
    975 F.2d 832 (Fed. Cir. 1992) ........................................................................ 3, 8, 11, 12

10

*Baker v. Selden*,
    101 U.S. 99 (1879) .............................................................................................................. 6

11

12

*Bikram's Yoga College of India, L.P. v. Evolation Yoga, LLC*,
    803 F.3d 1032 (2015) ..................................................................................................... 5, 6

13

*Brown Bag Software v. Symantec Corp.*,
    960 F.2d 1465 (9th Cir. 1992) .............................................................................. 5, 10, 15

14

15

*Computer Assocs. Int'l v. Altai*,
    982 F.2d 693 (2d Cir. 1992) .......................................................................................... 4, 8, 9

16

*CDN, Inc. v. Kapes*,
    197 F.3d 1256 (9th Cir. 1999) ........................................................................................... 7

17

18

*Diamond Foods, Inc. v. Hottrix, LLC*,
    No. 14-cv-03162-BLF, 2016 WL (N.D. Cal. Jul. 18, 2016) ............................................... 5

19

*Feist Publications v. Rural Telephone Service Co.*,
    499 U.S. 340 (1991) ....................................................................................................... 3, 4

20

21

*Harper House, Inc. v. Thomas Nelson, Inc.*,
    889 F.2d 197 (9th Cir. 1989) ............................................................................... 6, 7, 14, 15

22

*Johnson Controls, Inc. v. Phoenix Control Sys., Inc.*,
    886 F.2d 1173 (9th Cir. 1989) ........................................................................................... 4

23

24

*Mitel, Inc. v. Iqtel, Inc.*,
    124 F.3d 1366 (10th Cir. 1997) ......................................................................................... 9

25

*Oracle Am., Inc. v. Google, Inc.*,
    750 F.3d 1339 (Fed. Cir. 2014) .................................................................................. passim

26

27

*Palmer v. Braun*,
    287 F.3d 1325 (11th Cir. 2002) ......................................................................................... 6

28

*Practice Mgmt. Info. Corp. v. Am. Med. Ass'n,*
    121 F.3d 516 (9th Cir. 1997) ........................................................................ 14

*Satava v. Lowry,*
    323 F.3d 805 (2003) ........................................................................... 6, 11

*Seven Arts Filmed Entm't Ltd. v. Content Media Corp.,*
    733 F.3d 1251 (9th Cir. 2013) ........................................................................ 4

*Sid & Marty Krofft Television Prods., Inc. v. McDonald's Corp.,*
    562 F.2d 1157 (9th Cir.1977) ........................................................................ 5

*Swirsky v. Carey***,**
    376 F.3d 841 (2004) ................................................................... 5, 6, 7, 13

*Three Boys Music Corp. v. Bolton,*
    212 F.3d 477 (9th Cir. 2000) ...................................................................... 4, 5


STATUTES

17 U.S.C. § 101 .......................................................................................... 3

17 U.S.C. § 102(a) ....................................................................................... 3

17 U.S.C. § 102(b) ....................................................................................... 3


OTHER AUTHORITIES

4 NIMMER ON COPYRIGHT § 13.01[B] (2016) ............................................... passim

H.R. Rep. No. 1476, 94th Cong., 2d Sess. 54, reprinted in 1976 U.S.C.C.A.N. 5659, 5667 ........... 3

Ninth Circuit Manual of Model Civil Jury Instructions 17.18 .................................. 15

Ninth Circuit Manual of Model Civil Jury Instructions Sect. 17.16-17 ........................... 4

PATRY ON FAIR USE § 5:4 (2012) ........................................................................ 3

02099-00004/8257056.3

1   Plaintiff Cisco Systems, Inc. ("Cisco") respectfully submits this bench brief pursuant to the

2   Court's request at the June 16, 2016 case management conference.  6/16/16 Tr. at 33:16-47:17.

3   Pursuant to the Court's guidance, this bench brief is to assist the Court, but will not result in any

4   evidentiary ruling (*id.* at 37:9-20; 43:8-47:19).  Cisco presents an overview of its allegations and

5   evidence in addition to the relevant legal standards, but does not submit any supporting

6   declarations or evidence.

7   ## I.   CISCO ASSERTS COPYRIGHT PROTECTION IN ITS CLI AND RELATED

8   MATERIALS

9   Cisco alleges that defendant Arista Networks, Inc. ("Arista") copied Cisco's copyrighted

10  command-line user interface ("CLI") and associated materials.  Cisco has focused its copyright

11  claims on the *protectable elements* of Cisco's CLI and associated materials.  Cisco's CLI is a user

12  interface that includes a set of textual expressions by which a human operator uses text-based

13  expressions to interact with, manage and configure networking equipment such as routers and

14  switches, as well as the textual responses the user receives in those interactions.

15  In fashioning its copyright claims, Cisco has already filtered out unprotectable elements of

16  its user interface and technical documentation that Arista has copied.  Notably, Cisco has not

17  asserted *actionable* copying based on Arista's use of Cisco's single-word CLI commands.

18  Instead, Cisco asserts that Arista unlawfully copied identified protectable elements of its CLI

19  (such as multi-word command expressions) and protectable portions of its technical

20  documentation.  In particular, Cisco contends that the following six categories of protectable

21  elements from its CLI and related documentation should be included in a comparison between

22  Cisco's copyrighted CLI materials and Arista's infringing CLI materials.  As set forth in prior

23  briefing and submissions to the Court, each of these protected elements is the product of a creative

24  process undertaken by numerous Cisco engineers and the subjective choices made by those

25  engineers over decades of development within Cisco.

26  (1) *Multiword command expressions*.  System operators type in Cisco-created multi-word

27  textual command expressions that are displayed on a computer screen connected to a

28  networking device.  Cisco engineers could have chosen a graphical user interface (as many

other vendors have chosen), or selected any number of different word combinations for each of the multi-word command expressions (as Juniper and other vendors have done for their CLI interfaces).

(2) **_HelpDesc descriptions_**.  The device operator may ask for help in using the multi-word command expressions by typing a command followed by "?" into the Cisco-created user interface, in which case a textual help description will be displayed on the screen.  Each of these help descriptions could have been written with different combinations of words, sequence and syntax.

(3) **_Command responses/screen outputs._**  Once a multi-word command expression is inputted by the operator, the switch or router analyzes the command and responds by displaying textual screen outputs on the computer screen.  Each of the copied text portions from these screen outputs could have been written and sequenced in a different way.

(4) **_Technical documents/User guides and manuals_**.  Cisco provides technical documentation that gives users detailed descriptions of the operation of Cisco CLI.  These descriptions were original creations authored by Cisco personnel.

(5) **_Command modes and prompts_**.  Cisco CLI provides a selection of modes that permit greater or fewer command expressions based on operator status.  Different modes are indicated by different textual titles and different textual prompts that appear on the screen.  Cisco engineers could have chosen different combinations of modes and prompts.

(6) **_Command-line hierarchies_**.  Each multi-word command expression reflects Cisco's creation of specific multi-level textual hierarchies from which the multi-word commands are constructed.  Cisco engineers made their own subjective decisions on arranging their multi-word commands in a distinct hierarchical fashion.

In addition to the evidence in the record that these elements are protectable, Cisco has adduced ample evidence to show that Arista **_directly copied_** these protectable elements of Cisco's CLI user interface and technical documentation.  This is not a case where Arista can deny that their engineers examined Cisco products and documents and copied relevant sections of Cisco CLI and materials into Arista products and documents.  For example, the evidence will demonstrate

1  that Arista copied from Cisco: (1) 508 of Cisco's multi-word command expressions; (2) 452 of

2  Cisco's help descriptions; (3) 42 instances of Cisco's textual command responses; (4) 531 textual

3  excerpts from Cisco technical documents; (5) 9 Cisco modes and 9 Cisco prompts; and (6) 11

4  Cisco multi-word command hierarchies.

5      Although Cisco CLI is embodied in Cisco's computer programs for its operating systems

6  known as IOS, IOS XR, IOS XE and NX-OS, Cisco asserts only the subsections of those

7  computer programs relevant to Cisco CLI, as well as the protectable ***textual expressions*** that

8  appear in Cisco's user interface comprising multi-word command expressions, command

9  responses, help descriptions, modes and prompts, hierarchies and technical documentation.  It is

10  beyond dispute that Cisco may assert a portion of a registration as the work-in-suit.  *See, e.g.*,

11  PATRY ON FAIR USE § 5:4 (2012) (work is not determined by registration); *American Geophysical*

12  *Union v. Texaco Inc.*, 802 F. Supp. 1, 17 (S.D.N.Y. 1992) (Leval, J.) (considering infringement of

13  individual articles that were registered as part of an overall magazine, holding that it "does not

14  follow from the manner of registration with the Copyright Office that the 'copyrighted work' for

15  the purposes of fair use analysis consists of the entire issue rather than the separate creations of the

16  separate authors"); *aff'd*, 60 F.3d 913, 925–26 (2d Cir. 1994); *Napoli v. Sears, Roebuck and Co.*,

17  874 F.Supp. 206, 211 (N.D. Ill. 1995) ("Thus, according to *Cams* a single registration of a

18  computer program accomplishes ***two interrelated yet distinct registrations***: one of the program

19  itself, and one of the screen displays or user interface of that program, to the extent that each

20  contains copyrightable subject matter. Therefore, a computer program and its screen displays are,

21  for copyright purposes, fundamentally distinct.") (citing *Manufacturers Technologies, Inc. v.*

22  *Cams, Inc.*, 706 F.Supp. 984, 992-93 (D. Conn. 1989)).

23  **II.    CISCO CLI IS PROTECTABLE AS A MATTER OF LAW**

24      The Copyright Act provides protection to "original works of authorship fixed in any

25  tangible medium of expression," including "literary works."  17 U.S.C. § 102(a).  While copyright

26  protection does not extend to "any idea, procedure, process, system, method of operation, concept,

27  principle, or discovery," *id.* § 102(b), copyright protection does extend to any compilation of

28  materials that, even if some elements are unprotected on their own, are selected or arranged "in

such a way that the resulting work as a whole constitutes an original work of authorship."  17 U.S.C. § 101; *see also Apple Computer, Inc. v. Microsoft Corp.,* 35 F.3d 1435, 1446 (9th Cir. 1994).

"It is undisputed that computer programs… can be subject to copyright protection as 'literary works.'"  *Oracle Am., Inc. v. Google, Inc.*, 750 F.3d 1339, 1354 (Fed. Cir. 2014) (quoting *Atari Games Corp. v. Nintendo of Am., Inc.*, 975 F.2d 832, 838 (Fed. Cir. 1992)).  As the Federal Circuit noted in *Oracle v. Google*: "[T]he legislative history explains that 'literary works' includes 'computer programs to the extent that they incorporate authorship in the programmer's expression of original ideas, as distinguished from the ideas themselves.'"  750 F.3d at 1354 (quoting H.R. Rep. No. 1476, 94th Cong., 2d Sess. 54, reprinted in 1976 U.S.C.C.A.N. 5659, 5667).  It is also "well established that copyright protection can extend to both literal and nonliteral elements of a computer program." *Oracle*, 750 F.3d at 1355 (citing *Computer Assocs. Int'l v. Altai*, 982 F.2d 693, 702 (2d Cir. 1992)).  The literal elements of a computer program include (*inter alia*) its source code.  *Id.*  The non-literal components of a computer program, also copyrightable so long as they qualify as original expression of an idea, include "the program's sequence, structure, and organization, as well as the program's user interface."  *Oracle*, 750 F.3d at 1355-56 (citing *Johnson Controls, Inc. v. Phoenix Control Sys., Inc.*, 886 F.2d 1173, 1175 (9th Cir. 1989)).

## A.    The Elements Of Copyright Infringement

"A copyright plaintiff must prove (1) ownership of the copyright; and (2) infringement— that the defendant copied protected elements of the plaintiff's work."  *Three Boys Music Corp. v. Bolton*, 212 F.3d 477, 481 (9th Cir. 2000); *see also Feist Publications v. Rural Telephone Service Co.*, 499 U.S. 340, 361 (1991); *Seven Arts Filmed Entm't Ltd. v. Content Media Corp.*, 733 F.3d 1251, 1254 (9th Cir. 2013).  Cisco has already submitted evidence to satisfy the first element (ownership) in its motion for partial summary judgment, demonstrating its original creation of the asserted Cisco CLI (*see* Dkt. 348, 396-3), which it incorporates here by reference.

The second infringement element in turn involves two sub-elements:  (i) factual copying and (ii) whether that copying is actionable because it involves substantial similarity between the protected elements of the asserted work and the accused work.  *Compare* Ninth Circuit Manual of

Model Civil Jury Instructions Sects. 17.16-17 (providing model jury instructions for the factual question of copying), *with id.* at Sect. 17.18 (addressing this second component of the copying element, addressing "substantial similarity" and the "extrinsic test; intrinsic text"); *see also* 4 NIMMER ON COPYRIGHT ("Nimmer") § 13.01[B] (2016) ("The second element that plaintiff must demonstrate is copying. Two separate components actually underlie proof of copying, although few courts or commentators have historically differentiated among the different meanings of the term. First, there is the factual question whether the defendant, in creating its work, used the plaintiff's material as a model, template, or even inspiration. If the answer is 'yes,' then one can conclude, as a factual proposition, that copying may have occurred. But the question remains whether such copying is actionable. In other words, that first answer does not vouchsafe resolution of the legal question whether such copying as took place gives rise to liability for infringement."); *see also Apple Computer, Inc. v. Microsoft Corp.*, 35 F.3d at 1445 (9th Cir. 1994) (explaining that the court must determine "whether sufficient copying to constitute infringement has taken place").

Cisco will provide ample evidence at trial that more than shows that Arista "used [Cisco's] material as a model, template, or even inspiration." Dkt. 348, 396-3. What is discussed herein is the second aspect of infringement—whether there has been not only copying but actionable copying, meaning substantial similarity between the accused and the ***protected expression*** in the copyrighted works. The Ninth Circuit has "traditionally determined whether copying sufficient to constitute infringement has taken place under a two-part test having 'extrinsic' and 'intrinsic' components." *Apple*, 35 F.3d at 1443 (citing *Krofft* 562 F.2d at 1142). The extrinsic test considers "analytical dissection of a work and expert testimony," *Three Boys,* 212 F.3d at 485; the "intrinsic" test looks to overall similarity from the subjective perspective of reasonable ordinary person and is a matter for the trier of fact. *See Apple*, 35 F. 3d at 1443; *Krofft*, 562 F.2d at 1164-65. The Ninth Circuit has explained that, because "only those elements of a work that are protectable…can be compared when it comes to the ultimate question of illicit copying, we use analytic dissection to determine the scope of copyright protection before works are considered 'as a whole.'" *Apple*, 35 F.3d at 1443; *see Swirsky*, 376 F.3d at 845 (2004); *Brown Bag Software,* 960

1  F.2d at 1475-76; *Diamond Foods, Inc. v. Hottrix, LLC*, No. 14-cv-03162-BLF, Dkt. 62 ("Order

2  Denying Plaintiff's Motion to Dismiss") (N.D. Cal. Jul. 18, 2016).

3      **B.      The Ninth Circuit's "Analytic Dissection" Test:  General Principles**

4          Because this case involves both traditional textual materials and computer programs, Cisco

5  respectfully submits that the Court should follow the Ninth Circuit's standard extrinsic-intrinsic

6  test for substantial similarity and the special considerations that have arisen in considering

7  computer programs and user interfaces.  "Analytic dissection" under the Ninth Circuit's extrinsic

8  test helps enforce the "idea/expression dichotomy"—one of the basic distinctions in copyright law

9  that keeps copyright law true to both the Copyright Clause and the First Amendment.  *Bikram's*

10 *Yoga College of India, L.P. v. Evolation Yoga, LLC*, 803 F.3d 1032, 1037 (2015).  The Ninth

11 Circuit has identified on a case-by-case basis various expressions that fall on the unprotected-idea

12 rather than the protected-expression side of the line.  For example:

13     - Copyright protection does not extend to "common property" in the public domain such
14       as "calendars and area code/time zone map[s]."  *Harper House, Inc. v. Thomas Nelson,*
15       *Inc.*, 889 F.2d 197, 204 (1989).

16     - Copyright protection does not extend to "ideas, first expressed by nature," even though
17       it may extend to particular original artistic depictions of natural phenomena.  *Satava v.*
18       *Lowry*, 323 F.3d 805, 813 (2003); *id.* at 810-13 (holding that a glass jellyfish sculpture
19       was unprotectable insofar as it merely depicted jellyfish "with tendril-like tentacles or
20       rounded bells" and "swimming vertically" as all jellyfish do in nature).

21     - Copyright protection does not extend to a "process" or "system," even though it may
22       extend to particular expressions of a process or system.  *Bikram's*, 803 F.3d at 1038
23       (citing *Baker v. Selden,* 101 U.S. 99, 105 (1879) (holding that a book's particular
24       expression of a book-keeping system was protected, but the system of book-keeping
25       itself was not)); *id.* at 1038-41 (same for a "sequence" of yoga poses); *Palmer v.*
26       *Braun,* 287 F.3d 1325 (11th Cir. 2002) (same for a process of meditation exercises).

27     These unprotectable elements are not at issue in this case, because Cisco is not asserting

28 copyright protection in ideas, processes or systems, or in single words. Rather, Cisco seeks

copyright protection in its specific multi-word expressions identified as the six protectable components of the Cisco CLI and related documentation.  Indeed, the Ninth Circuit has repeatedly reaffirmed that expressions may be found protectable under copyright law if they combine elements in an original way, even if some of those elements would be individually unprotected standing alone.  For example:

- Copyright protection can extend to a musical "arrangement of a limited number of notes" even though "it is true that a single musical note would be too small a unit to attract copyright protection (one would not want to give the first author a monopoly over the note of B-flat for example)."  *Swirsky v. Carey*, 376 F.3d 841, 851 (2004); *id.* at 846-49 (holding extrinsic test of substantial similarity satisfied as applied to particular musical compositions).

- Copyright protection can extend to the particular compilation embodied in a file organizer even though it includes (*inter alia*) unprotected blank forms and calendars. *Harper House*, 889 F.2d at 204.

- Copyright protection can extend to compilations of facts and data, such as prices formulated through a process of creative weighting of supporting data.  *CDN, Inc. v. Kapes*, 197 F.3d 1256, 1259-61 (9th Cir. 1999).

Under this well-established precedent, Cisco CLI and related materials fall easily on the protected-expression side of the line.  Cisco CLI and related materials consist of specific ***textual*** multi-word commands, arranged in specific hierarchies and modes, entered in response to specific prompts, causing specific command responses, and employing specific help descriptions and technical user documentation.  Nothing in Cisco's asserted CLI is a mere "idea," "system," "process," or a natural phenomenon or the common property of all humankind.  To the contrary, Cisco engineers could have chosen any of countless different words and phrases to express the particular commands, modes, prompts, command responses, and help descriptions that comprise Cisco CLI—as Cisco engineers have testified and Arista's own witnesses have admitted.  Like a novelist, Cisco engineers likewise could have arranged Cisco CLI according to any other structure, sequence and organization, and could have written technical user guides using different words

1  than the ones Arista has admitted it was a "mistake" to copy.  Thus, under a conventional analytic

2  dissection, the Court need not filter out any aspect of Cisco CLI as unprotectable, because Cisco

3  has already filtered out unprotectable elements (such as single-word commands) in fashioning its

4  copyright claims.

5       Moreover, even if the Court were to determine that some isolated elements of Cisco CLI

6  (like the use of a "#" symbol in a prompt) are unprotected standing alone (like the note "B-flat" in

7  a musical composition), Cisco CLI would still be entitled to "broad" rather than "thin" copyright

8  protection.  The Ninth Circuit has held that copyrighted materials are entitled to only "thin"

9  protection where they are original but contain a high percentage of unprotected elements—for

10  example, elements that are in the public domain, *see Satava*, 323 F.3d at 811, or elements that

11  have been licensed, *Apple*, 35 F.3d at 1446-47.  None of the ***multi-word*** commands and other

12  protected elements identified by Cisco are in the public domain (since the relevant unit of analysis

13  is the multi-word expression and not individual words or symbols), nor has Arista licensed any

14  aspect of Cisco CLI.

15  **C.**     **The Ninth Circuit's "Analytic Dissection" Test:  Computer Programs**

16       The Ninth Circuit has in some cases adopted a particular approach to analytic dissection in

17  the context of computer programs, adopting a three-step approach first developed by the Second

18  Circuit entailing: (i) abstraction of the plaintiff's program, (ii) filtration out of unprotectable

19  elements from the program, and (iii) a comparison between the remaining aspects of the works.

20  *See Computer Associates International, Inc. v. Altai, Inc.*, 982 F.d 693, 706-12 (1992); *Oracle*,

21  750 F.3d at 1357 (noting Ninth Circuit's adoption of Second Circuit approach); *see also Altera*

22  *Corp. v. Clear Logic, Inc.*, 424 F.3d 1079, 1085 (9th Cir. 2005); *Atari Games Corp. v. Nintendo of*

23  *Am. Inc.*, 975 F.2d 832, 839 (Fed. Cir. 1992); Nimmer §13.03[F].

24       As the Federal Circuit has noted, this full abstraction-filtration-comparison analysis "only

25  applies where a copyright owner alleges infringement of the non-literal aspects of its work" and

26  not where "'literal copying of a discrete, easily-conceptualized portion of a work' is at issue," in

27  which case standard copyright principles apply.  *Oracle*, 750 F.3d at 1357 n.4 (quoting *Mitel, Inc.*

28  *v. Iqtel, Inc.*, 124 F.3d 1366, 1372-73 (10th Cir. 1997)).  Because Arista has engaged in "literal

1  copying" (*i.e.*, textual copying from Cisco source materials) of Cisco CLI and because the asserted

2  Cisco CLI elements are all "discrete, easily conceptualized portion[s]" of its copyrighted works,

3  this specialized analysis need not be reached here.  But even if it is reached, each aspect of Cisco

4  CLI is protectable under this test.

### 1. **The first step: "abstraction"**

6      The first, "abstraction" step, filters out elements of the computer program (or user

7  interface) that are abstract ideas (and thus not entitled to copyright protection), as opposed to

8  expressions of ideas (and thus entitled to copyright protection). *See Oracle*, 750 F.3d at 1357;

9  Nimmer §13.03[F].

10      For reasons similar to those discussed in connection with conventional analytic dissection

11  above, this "abstraction" step does not narrow the scope of Cisco's copyright claims.  Cisco will

12  easily show that any abstraction of its user interface to remove abstract ideas will leave standing

13  all the asserted elements of Cisco CLI.  Elements (1)-(5) of Cisco CLI as described above in part I

14  each involve ***particular textual expressions***, not the abstract "idea" of using a command-line user

15  interface.  And element (6) does not involve the abstract "idea" of organizing such commands in

16  hierarchical format but rather a particular choice of words organized into a particular ***structure,***

17  ***sequence and organization***.  Cisco asserts that Arista has copied ***particular*** expressive content,

18  including 508 specific multi-word command-line expressions, 452 specific help descriptions, 42

19  specific screen outputs; 531 specific technical document passages; 9 specific modes and prompts,

20  and a ***particular*** set of 11 specific hierarchies.  For each of those asserted elements, the evidence

21  will show that the asserted specific aspects of Cisco's CLI go far beyond ideas and comprise

22  particular expressions chosen by Cisco engineers from among many expressive possibilities.

### 2. **The second step: "filtration"**

24      Under the second step of the Second Circuit/Ninth Circuit test for computer program

25  protectability, the unprotectable elements of a computer program (or user interface) are excluded.

26  Traditionally, the Ninth Circuit considered the defenses of "merger" and "scenes a faire" at this

27  filtration stage.  *See, e.g.*, *Altai*, 982 F.2d at 707-09 (treating merger doctrine as part of filtration

28  step); *Apple*, 35 F.3d at  1444 (treating merger and scenes a faire as part of the "analytic

1   dissection").  But in interpreting Ninth Circuit law, the Federal Circuit recently noted that, "[i]n

2   the Ninth Circuit, while questions regarding originality are considered questions of

3   copyrightability, concepts of merger and scenes a faire are affirmative defenses to claims of

4   infringement."  *Oracle*, 750 F.3d at 1358 (citations omitted).  Accordingly, those two doctrines are

5   discussed as affirmative defenses below.  Leaving merger and scenes a faire for that later

6   discussion, there are no other unprotectable elements to filter out from Cisco CLI at this stage.

7               3.      **The third step: comparison**

8         Once the first (abstraction) and second (filtration) steps are complete, the remaining

9   aspects of the plaintiff's copyrighted works may be compared to the defendant's accused works.

10  *See* Nimmer §13.03[F][5] ("After applying the doctrines set forth above, a core of protectible

11  material may remain.  If so, this material must be compared with material from the defendant's

12  program to ascertain if there is a sufficient degree of similarity to justify a finding of

13  infringement."); *see also Brown Bag Software v. Symantec Corp.*, 960 F.2d 1465, 1476 n.4 (9th

14  Cir. 1992).

15        This final step of comparison "should not proceed mechanically simply by isolating

16  physical elements out of the copyrightable work."  Nimmer §13.03[F][5].  As Professor Nimmer

17  explained, one would not filter out all the squares and triangles from an "abstract painting

18  composed entirely of geometric forms arranged in an original pattern," *id.*, nor would one

19  "mechanically go through Hamlet's soliloquy, determining that each individual word ('to,' 'be,'

20  'or,' 'not,' etc.) is uncopyrightable, and thereupon draw the erroneous conclusion that Shakespeare

21  lacked originality in the copyright sense."  *Id.* at n.345.1; *see also Oracle*, 750 F.3d at 1363 ("By

22  analogy, the opening of Charles Dickens' A Tale of Two Cities is nothing but a string of short

23  phrases.  Yet no one could contend that this portion of Dickens' work is unworthy of copyright

24  protection because it can be broken into those shorter constituent components.  The question is not

25  whether a short phrase or series of short phrases can be extracted from the work, but whether the

26  manner in which they are used or strung together exhibits creativity."); *Apple Computer, Inc. v.*

27  *Microsoft Corp.*, 779 F. Supp. 133, 136 (N.D. Cal. 1991), *aff'd in relevant part*, 35 F.3d 1435,

28  1444 (9th Cir. 1994).

1    In this case, Cisco will show a massive quantity of copied materials, all of them protectable

2    and remaining after the filtration process is complete.  This includes hundreds of multi-word

3    command expressions, dozens of command hierarchies, hundreds of responses (including

4    "HelpDesc" entries) and hundreds of pages of expressions copied from Cisco's user manuals and

5    guides.  *See ante* at I.

6    **D.    Ninth Circuit Affirmative Defenses: Merger and Scenes A Faire**

7    The copyright merger doctrine holds that copyright expression does not extend to

8    expression of an idea that can be expressed in only one or a very limited number of ways.  The

9    copyright scenes-a-faire doctrine holds that certain stock or standard expressions are akin to ideas

10   and thus unprotectable.  Whether merger and scenes a faire are understood as factors in the

11   filtration analysis above or instead are understood as affirmative defenses as to which the burden

12   of proof lies with the defendant, neither doctrine will avail Arista in this case.  *See Oracle*, 750

13   F.3d at 1358 ("In the Ninth Circuit…concepts of merger and scenes a faire are affirmative

14   defenses to claims of infringement.") (citations omitted); *Satava*, 323 F.3d at 810 n.3 (same).

15   **1.    Merger**

16   "The merger doctrine functions as an exception to the idea/expression dichotomy.  It

17   provides that, when there are a limited number of ways to express an idea, the idea is said to

18   'merge' with its expression, and the expression becomes unprotected."  *Oracle*, 750 F.3d at 1361.

19   Thus, under the merger doctrine, "when an idea can be expressed in only one fashion, that

20   expression is not protected by copyright, as the result would be to provide a monopoly over the

21   idea itself."  Nimmer §13.03[F][2].  Arista has pleaded merger as an affirmative defense, and may

22   be expected to argue as to Cisco CLI that, "[a]lthough, theoretically, many ways may exist to

23   implement a particular idea, efficiency concerns can make one or two choices so compelling as to

24   virtually eliminate any other form of expression," *id*.

25   Any such argument should be rejected for the same reasons as the Federal Circuit recently

26   gave in *Oracle*, applying Ninth Circuit law:  "[W]e conclude that merger does not apply on the

27   record before us. ….We have recognized, … applying Ninth Circuit law, that the "unique

28   arrangement of computer program expression . . . does not merge with the process so long as

alternate expressions are available." *Oracle*, 750 F.3d at 1761 (citing *Atari Games Corp. v. Nintendo of Am., Inc.*, 975 F.2d 832, 840 (Fed. Cir. 1992)).  The record is overwhelming that alternate expressions are available here, as Cisco engineers and Cisco's technical expert will testify and as Arista's own witnesses have admitted.  Moreover, the evidence will show that Juniper and other Cisco competitors have developed their own CLI without slavishly copying Cisco CLI as Arista has done—further evidence that there is not only one or limited ways to express text-based commands to configure and manage network switches.  As the court noted in *Oracle*, Nintendo had produced expert testimony in *Atari* "'showing a **multitude of different ways** to generate a data stream'" to operate upon a gaming console, leading the court to conclude "that Nintendo's specific choice of code **did not merge** with the process." *Id.* (emphasis added) (quoting *Atari,* 975 F.2d at 840) (further noting that Nintendo "chose arbitrary programming instructions and arranged them in a unique sequence").  Cisco will adduce similar evidence here.

Notably, the question for the jury on any affirmative defense of merger will not be whether the asserted elements of Cisco's CLI were subject to a merger argument by the time that Arista started offering its operating system to the market in 2008.  Instead, the relevant question will be whether Cisco's engineers had only one possible choice for their chosen multi-word command expressions, modes/prompts, screen responses, help descriptions and command hierarchies when they first formulated those components of Cisco CLI starting in the mid-1980s.  As the Federal Circuit held in *Oracle*, "[w]e further find that the district court erred in focusing its merger analysis on the options available to Google at the time of copying." *Oracle*, 750 F.3d at 1361. Noting that "[i]t is well-established that copyrightability and the scope of protectable activity are to be evaluated at the time of creation, not at the time of infringement," the court explained that the focus of the merger inquiry is similarly on "the options that were available to Sun/Oracle at the time it created the API packages." *Id.*  As the court made clear, it does not matter if a defendant finds it efficient at the time of infringement to use the expression the plaintiff chose: "Of course, once Sun/Oracle created 'java.lang.Math.max,' programmers who want to use that particular package have to call it by that name.  But, as the court acknowledged, nothing prevented Google from writing its own declaring code, along with its own implementing code, to achieve the same

result.  In such circumstances, the chosen expression simply does not merge with the idea being expressed."  *Id.*

In this case, Cisco will overcome any merger defense by Arista with ample evidence.  That evidence—from Cisco's engineers, Arista's engineers and executives, and from Cisco's technical expert—will show that the asserted elements of Cisco's CLI were creative and arbitrary, reflecting the subjective choices of Cisco engineers.  They could have been written and arranged differently (including with innumerable other word choices) at the time of creation, and nothing prevented Arista from writing its own CLI or used another interface.  The fact that Juniper and other competitors have done just that, creating their own CLI from the 1990s onward, provides further evidence of viable alternatives to slavishly copying Cisco CLI.

## 2. **Scenes a faire**

The scenes a faire doctrine "provides that 'expressive elements of a work of authorship are not entitled to protection against infringement if they are standard, stock, or common to a topic, or if they necessarily follow from a common theme or setting.'  Under this doctrine, 'when certain commonplace expressions are indispensable and naturally associated with the treatment of a given idea, those expressions are treated like ideas and therefore [are] not protected by copyright.'  *Swirsky*, 376 F.3d at 850. In the computer context, 'the scenes a faire doctrine denies protection to program elements that are dictated by external factors such as 'the mechanical specifications of the computer on which a particular program is intended to run' or 'widely accepted programming practices within the computer industry.'" *Oracle*, 750 F.3d at 1363 (citations omitted).

Just like merger, the question put to the jury in this case will be whether Arista can prove that Cisco's engineers back at the time of creation—not Arista's engineers more recently—had expressive choices not dictated by external factors when designing and expressing Cisco CLI.  *Id.* ("Like merger, the focus of the scenes a faire doctrine is on the circumstances presented to the creator, not the copier.").  This means that Arista will not be permitted to argue that its copying conduct was somehow permissible simply because Arista sought to compete with Cisco in the market or to attract customers accustomed to Cisco CLI.  Indeed, *Oracle* rejected a scenes-a-faire defense even where Google claimed a need for *physical* interoperability between different devices.

*Id.* at 1371-72 ("Whether a defendant later seeks to make its program interoperable with the plaintiff's program has no bearing on whether the software the plaintiff created had any design limitations dictated by external factors.").  Here, Arista does not and cannot assert any such interoperability argument, where Cisco CLI was designed to allow human-to-machine interaction.  There is no standard way for a human being to talk with a machine as evidenced by the existence of a wide variety of graphical user interfaces and other command-line interfaces that do not copy Cisco CLI.

Along the same lines, Arista will be unable to show that its "industry standard" argument supports an affirmative defense of scenes a faire.

> Finally, to the extent Google suggests that it was entitled to copy the Java API packages because they had become the effective industry standard, we are unpersuaded. Google cites no authority for its suggestion that copyrighted works lose protection when they become popular, and we have found none. In fact, the Ninth Circuit has rejected the argument that a work that later becomes the industry standard is uncopyrightable.  *See Practice Mgmt. Info. Corp. v. Am. Med. Ass'n*, 121 F.3d 516, 520 n.8 (9th Cir. 1997) (noting that the district court found plaintiff's medical coding system entitled to copyright protection, and that, although the system had become the industry standard, plaintiff's copyright did not prevent competitors "from developing comparative or better coding systems and lobbying the federal government and private actors to adopt them.  It simply prevents wholesale copying of an existing system.").  Google was free to develop its own API packages and to "lobby" programmers to adopt them. Instead, it chose to copy Oracle's declaring code and the SSO to capitalize on the preexisting community of programmers who were accustomed to using the Java API packages.  That desire has nothing to do with copyrightability. For these reasons, we find that Google's industry standard argument has no bearing on the copyrightability of Oracle's work.

*Id.* at 1372.

## III.    PROCEDURE FOR DETERMINING COPYRIGHT PROTECTABILITY AND FILTRATION

Cisco proposes that the Court address copyright protectability and filtration through the instructions that will be provided to the jury.  *See, e.g., Harper House*, 889 F.2d at 205-08*; Oracle America, Inc. v. Google Inc.*, No. 3:10-cv-03561-WHA, Dkt. 1017 ("Notice Of Final Charge To The Jury (Phase One)") (N.D. Cal. Apr. 30, 2010).  In light of the guidance from this briefing (including the filtration already performed by Cisco in asserting only the protectable elements of

1   its Cisco CLI) and the briefing that will be provided with proposed jury instructions, the Court will

2   be in a position to issue legally proper instructions to permit the jury to make an infringement

3   finding, including with an "analytic dissection" or "filtration" under Ninth Circuit law.

4            Under the Ninth Circuit's substantial similarity test for copyright infringement, there is

5   both an extrinsic and intrinsic step.  The extrinsic step looks to objective similarity between the

6   ideas and expression in the asserted and accused works; the intrinsic step next looks to the

7   subjective similarity of the works as a whole.  With proper instructions to the jury on protectability

8   and filtration, evidence of copyright infringement under both prongs of this test should be

9   presented to the jury.  *See Harper House*, 889 F.2d at 205-08 (reviewing jury instructions as given

10  and proposed, and concluding that the instructions given did not adequately distinguish between

11  protectable and unprotectable material in the copyrighted work).   The Ninth Circuit Manual of

12  Model Civil Jury Instructions declines to give a one-size-fits-all model instruction on this issue,

13  but instead "recommends that the court and counsel specifically craft instructions on substantial

14  similarity based on the particular work(s) at issue, the copyright in question, and the evidence

15  developed at trial."  Ninth Circuit Manual of Model Civil Jury Instructions 17.18, at 385-86

16  ("Substantial Similarity—Extrinsic Test; Intrinsic Test") (2016, noting that this chapter is under

17  review).  By way of guidance, Model Instruction 17.18 lists cases pertinent to various subject

18  matter areas, including "Computer Programs and Similar Technologies."  *Id.* at 385.

19  **IV.    <u>CONCLUSION</u>**

20           For the reasons discussed herein, Cisco's assertions in this case are based on protectable

21  elements of its CLI and related documentation under copyright law.  Based on the record

22  evidence, Arista will not be able to establish affirmative defenses of either merger or scenes a

23  faire.  With proper jury instructions,  Cisco should be permitted to prove at trial that Arista's

24  "slavish" and widespread copying is actionable under Ninth Circuit precedent.

25

26

27

28

02099-00004/8257056.3

| | |
|---|---|
| 1 | Dated:  August 15, 2016 |

Respectfully submitted,

*/s/ John M. Neukom*

Kathleen Sullivan (SBN 242261)
kathleensullivan@quinnemanuel.com
QUINN EMANUEL URQUHART &
SULLIVAN LLP
51 Madison Avenue, 22nd Floor
New York, NY 10010
Telephone: (212) 849-7000
Facsimile: (212) 849-7100

Sean S. Pak (SBN 219032)
seanpak@quinnemanuel.com
Amy H. Candido (SBN 237829)
amycandido@quinnemanuel.com
John M. Neukom (SBN 275887)
johnneukom@quinnemanuel.com.
QUINN EMANUEL URQUHART &
SULLIVAN LLP
50 California Street, 22nd Floor
San Francisco, CA 94111
Telephone: (415) 875-6600
Facsimile: (415) 875-6700

Mark Tung (SBN 245782)
marktung@quinnemanuel.com
QUINN EMANUEL URQUHART &
SULLIVAN LLP
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, CA 94065
Telephone: (650) 801-5000
Facsimile: (650) 801-5100

Steven Cherny *admitted pro hac vice)*
steven.cherny@kirkland.com
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900

Adam R. Alper (SBN 196834)
adam.alper@kirkland.com
KIRKLAND & ELLIS LLP
555 California Street
San Francisco, California  94104
Telephone: (415) 439-1400
Facsimile: (415) 439-1500

Michael W. De Vries (SBN 211001)
michael.devries@kirkland.com
KIRKLAND & ELLIS LLP
333 South Hope Street

1

Los Angeles, California 90071
Telephone: (213) 680-8400
Facsimile: (213) 680-8500

2

3

*Attorneys for Plaintiff Cisco Systems, Inc.*

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

02099-00004/8257056.3