1  Kathleen Sullivan (SBN 242261)
   kathleensullivan@quinnemanuel.com
2  QUINN EMANUEL URQUHART &
   SULLIVAN LLP
3  51 Madison Avenue, 22nd Floor
   New York, NY 10010
4  Telephone: (212) 849-7000
   Facsimile: (212) 849-7100
5
   Sean S. Pak (SBN 219032)
6  seanpak@quinnemanuel.com
   Amy H. Candido (SBN 237829)
7  amycandido@quinnemanuel.com
   John M. Neukom (SBN 275887)
8  johnneukom@quinnemanuel.com.
   QUINN EMANUEL URQUHART &
9  SULLIVAN LLP
   50 California Street, 22nd Floor
10 San Francisco, CA 94111
   Telephone: (415) 875-6600
11 Facsimile: (415) 875-6700

12 Mark Tung (SBN 245782)
   marktung@quinnemanuel.com
13 QUINN EMANUEL URQUHART &
   SULLIVAN LLP
14 555 Twin Dolphin Drive, 5th Floor
   Redwood Shores, CA 94065
15 Telephone: (650) 801-5000
   Facsimile: (650) 801-5100
16
   *Attorneys for Plaintiff Cisco Systems, Inc.*

Steven Cherny *(admitted pro hac vice)*
steven.cherny@kirkland.com
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900

Adam R. Alper (SBN 196834)
adam.alper@kirkland.com
KIRKLAND & ELLIS LLP
555 California Street
San Francisco, California 94104
Telephone: (415) 439-1400
Facsimile: (415) 439-1500

Michael W. De Vries (SBN 211001)
michael.devries@kirkland.com
KIRKLAND & ELLIS LLP
333 South Hope Street
Los Angeles, California 90071
Telephone: (213) 680-8400
Facsimile: (213) 680-8500

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

| | |
|---|---|
| CISCO SYSTEMS, INC., <br><br> Plaintiff, <br><br> vs. <br><br> ARISTA NETWORKS, INC., <br><br> Defendant. | CASE NO. 5:14-cv-5344-BLF (NC) <br><br> **CISCO'S OPPOSITION TO ARISTA'S MOTION FOR RELIEF FROM PRETRIAL ORDER OF MAGISTRATE JUDGE (ECF NO. 408)** <br><br> Judge: Hon. Beth Labson Freeman <br><br> Date Filed: December 5, 2014 <br><br> Trial Date: November 21, 2016 |

**I.      INTRODUCTION**

Starting in September 2015, Cisco requested that Arista produce operable versions of its accused switches for purposes of fact discovery in this case. Arista refused to comply with that request for eight months, until May 18, 2016. Once Arista finally produced the requested switches corresponding to the source code it had already produced in this case, Cisco's counsel and expert took just *nine days* to prepare and serve a supplemented interrogatory response relying on that information. That supplemented interrogatory response included a detailed identification of Arista's copying of Cisco's "HelpDesc" content.[1] The response was based on a comparison of (i) the contents of Arista's source code *and* (ii) the actual operation and testing of operable versions of Arista's switches running that source code. This comparison *was not possible* until Arista had produced both the accused source code and operational switches running that code. Once the requested discovery was provided, Cisco supplemented its interrogatory response in timely fashion and before the deadline for the close of fact discovery.

Arista nonetheless moved to strike Cisco's interrogatory response by arguing that it was untimely. This Court referred Arista's motion to the Magistrate Judge under 28 U.S.C. § 636(b)(1)(A). 6/16/16 Tr. at pp. 6-7. The Magistrate Judge considered the parties' briefing, heard oral argument, and then denied Arista's motion. The Magistrate Judge did so by applying the correct legal standard and by making factual findings, including the dispositive finding that Cisco's "HelpDesc" interrogatory responses were *timely* in light of Arista's delayed production of its own switches in this case. That decision was neither clearly erroneous, nor contrary to law.

**II.     STANDARD OF REVIEW**

This Court may not set aside the Magistrate Judge's ruling unless it is "clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a); 28 U.S.C. § 636(b)(1)(A). This "standard is *highly deferential*—the district judge may not simply substitute his or her judgment for that of the magistrate judge." *Campbell v. City of Milipitas*, No. 13-cv-03817-BLF, 2014 WL 5077135, at *1

---

[1] "HelpDesc" refers to "help" descriptions provided to a user of networking equipment on the computer screen display, for example, explaining what is accomplished by using a particular, multi-word command expression. "HelpDesc" is also referred to as "help screen displays."

(N.D. Cal. Oct. 9, 2014) (emphasis added). This Court may not conduct a *de novo* review. *Grimes v. City and Cnty. of San Francisco*, 951 F.2d 236, 241 (9th Cir. 1991) ("Pretrial orders of a magistrate under 636(b)(1)(A)…*are not subject to* **de novo** *determination*.") (emphasis added).

### III.   BACKGROUND FACTS

Cisco filed this case in December 2014, asserting (*inter alia*) a claim for copyright infringement based on Arista's admittedly "slavish" copying of Cisco's proprietary user interface and associated materials. Dkt. 1 at ¶¶ 9, 24-30, 40-65; *id.* at Exhs. 1-2. In April 2015, at the start of fact discovery, Arista asked Cisco to identify "*every* similarity that Cisco contends is a basis for its claim of copyright infringement." Dkt. 306-1 at 4 (emphasis added). Cisco responded in May 2015 with additional details on its copying allegations based on information then available to Cisco. Dkt. 306-2 at pp. 8-10; *id.* at Exh. A (a 221-page table showing overlap between Cisco versus Arista user interface materials). As fact discovery proceeded, Cisco continued to supplement that interrogatory response based on new discovery produced by Arista in this case.

By January 2016, Cisco timely disclosed its allegation that Arista's copying of its user interface extended to copying of "the interactive 'help' screens from Cisco's copyrighted works." Dkt. 306-6 at pp. 17-18. In making that supplementation, Cisco (i) specifically accused the help screen displays (*i.e.,* "HelpDesc" content) as part of its copying allegations, (ii) identified an example of a copied help screen display, and (iii) explained that "***Cisco reserves the right to supplement its responses in light of information learned subsequently from Arista's source code and/or operable Arista devices, which Cisco has requested but Arista has not yet produced***." *Id.* (emphasis added). Thus, Arista was put on notice of Cisco's "HelpDesc" copying allegations no later than January 2016, and was also put on notice that Cisco needed Arista's source code ***and operable versions of Arista's switches*** to further supplement its interrogatory response to explain the full extent of Arista's copying. Dkt. 324-1 at ¶ 3 ("Cisco requested access to Arista's products and software through requests for production on September 18, 2015").

Arista eventually produced operable versions of its accused switches corresponding to the

source code produced in this case, but not until May 18, 2016.[2] Nine days after Cisco's counsel and expert were provided access to Arista's operable switches, Cisco served a supplemental response to Arista's Interrogatory No. 2. That supplementation provided detailed descriptions of Arista's copying of Cisco's "HelpDesc" content, with critical evidence obtained from Arista's operable switches and supporting pin citations to Arista's source code running on those switches.[3] By that time, Cisco was finally able to connect the dots based on Arista's delayed production and explain the full extent of Arista's copying as requested by Interrogatory No. 2, which included copying of Cisco's copyrighted expressions into both *source code* and *screen outputs of operable Arista switches running that source code*.[4] When Cisco served those supplemented responses to Arista's Interrogatory No. 2, it was not only within nine days of Arista's production of operable switches, it was also within the deadline for the completion of fact discovery. Within the same hour, Arista served massive and substantive supplementations of its own discovery responses, including new allegations and evidence for its affirmative defenses. Dkt. 323-2 at pp. 5-6; Dkt. 324-1 at ¶ 5; Dkt. 323-6. It was also a week before opening expert reports were due for liability issues, and three weeks before rebuttal expert reports were due for liability issues. Dkt. 277.

Thereafter, Arista moved to strike Cisco's supplemental responses pertaining to "HelpDesc" copying, arguing that Cisco's supplementations were untimely. Dkt. 305 (Arista's motion); Dkt. 323-2 (Cisco's opposition); Dkt. 362-3 (Arista's reply). The Magistrate Judge heard oral argument on July 27, 2016, and thereafter explained his rationale for denying Arista's

---

[2] *Id.* ("Arista did not make available for inspection operable versions of its accused switches…until May 2016. Cisco's expert thereafter inspected those accused switches starting on May 18, 2016 at the office of Arista's counsel.").

[3] Dkt. 306-7 at p. 16; Dkt. 306-8 ("Exhibit G" to Cisco's supplemented response to Arista's interrogatory No. 2, a 19-page chart showing Arista's "HelpDesc" copying); Dkt. 306-9 ("Exhibit H" to Cisco's supplemented response to the same interrogatory, a 206-page listing of "HelpDesc" copying).

[4] The Magistrate Judge rightly rejected Arista's suggestion that Cisco could or should have attempted to formulate similar interrogatory responses, earlier in the case, by using *non-produced* versions of Arista switches. Even if Cisco had attempted that exercise, it would have been on Arista devices that do not necessarily correspond to the source code files that Arista produced in this case, thus the analysis would not have been reliable.

motion to strike. *See generally* 7/27/16 Tr.; *see also* Dkt. 408 ("Motion to strike…DENIED").

## IV. THE MAGISTRATE JUDGE APPLIED THE CORRECT LEGAL STANDARD AND MADE FACTUAL FINDINGS SUPPORTED BY THE RECORD EVIDENCE

Arista argues that the Magistrate Judge "applied the wrong legal standard" because "[h]ere, the correct legal standard under Rule 26(e) was whether Cisco supplemented its response…'in a timely manner.'" Mot. at 3. Arista also argues that whether Cisco's "HelpDesc" interrogatory responses were timely "is *context sensitive*; it depends on the nature of the discovery and the *respondent's access to relevant information*." *Id.* (emphasis added).

But that is precisely the legal standard that was applied by the Magistrate Judge. In particular, the Magistrate Judge considered the parties' factual submissions and legal briefs, as well as oral argument, and found as a factual matter that Cisco provided its "HelpDesc" interrogatory responses in timely fashion in light of the context of Arista's late production of its operable switches. 7/27/16 Tr. at 18:17-22 ("I am persuaded on the papers [] by Cisco's arguments, that it's late disclosures, although coming at the very eleventh hour, were *primarily relying upon information that it received from Arista and that that's the justification for its late timing*.") (emphasis added); *id.* at 49:1-52:2 ("The standard, of course, I'm applying is under Rule 26 and Rule 37… I'm, in conclusion, persuaded by Cisco's explanation for why it disclosed the things it did and when it disclosed them, that *it was not based on a bad faith waiting, but it was based on it learning information and then in a timely way responding and updating its contention interrogatories*.") (emphasis added); *id.* at 18:22-19:5 ("[T]here's been in both directions disclosures of information that ran very much up to the end of the discovery period. And so sitting equitably, it looks to me like both parties have engaged in that conduct, and, so my inclination would be not to punish one of the parties for conduct that both parties seem to have engaged in."); *see also* Dkt. 323-2 at pp. 5-6, Dkt. 324-1 at ¶ 5 & Dkt. 323-6 (detailing Arista's last-minute discovery responses and productions). This application of the legal standard by the Magistrate Judge comports with the Federal Rules and Ninth Circuit precedent. Fed. Rs. Civ. P. 26(e) & 37(c)(1); *Lanard Toys, Ltd. v. Novelty, Inc.*, 375 Fed. Appx. 705, 713 (9th Cir. 2010).

Likewise, the Magistrate Judge did not commit any clear error in finding, as a factual

matter, that Cisco timely supplemented its response to Arista's Interrogatory No. 2 after receiving access (on May 18, 2016) to operable versions of Arista's switches running the same source code produced by Arista.  Cisco made this clear to the Magistrate Judge in the form of a declaration and its opposition brief.  Dkt. 323-2; 324-1 at ¶¶ 3-4. Cisco also answered the Magistrate Judge's questions on this topic during the hearing, and explained the specific comparison that was required to supplement its response for "HelpDesc" content.  *See* 7/27/16 Tr. at 23:18-28:1 (The Court: "Could this information have been provided earlier or…"; Cisco counsel: "No, absolutely not, Your Honor… We needed to do two things. One is we needed source code that's been verified and produced by Arista in this case as being production code. So this is what's actually running on their accused products. And, second, we needed the switches that are actually running that code… so our expert can look at the operation and look at these words… then go back to the source code and find specific instances in which that text is stored in source code."); *id.* at 39:23-40:23 ("That analysis we cannot do without having an Arista-verified switch that's been produced to us that corresponds to specific versions of the source code that's been produced by Arista in this case…we could not have done the analysis that we did back in January of 2016 because we were missing production of Arista switches that were running the code that's been produced in this case…What we needed was to match up the operational lead switch to the code…").

Because the Magistrate Judge made a (correct) fact finding that Cisco's supplemented interrogatory response was ***timely***, that is the end of the inquiry.  But even if the Magistrate Judge had found Cisco's supplementation to be untimely, it still would be justified (thus Arista's motion was properly denied) because of the lack of prejudice to Arista.  *Lanard Toys*, 375 Fed. Appx. at 713. Here, the Magistrate Judge made an explicit fact finding that Arista was not prejudiced. 7/27/16 Tr. at 9:6-13 (The Court: "***I don't see that there's been unfair prejudice caused by the timing of the disclosures*** in this case.") (emphasis added).[5]

For the foregoing reasons, Cisco respectfully requests that the Court deny Arista's motion.

---

[5] *See also id.* at 18:1-13 (The Court, summarizing Cisco's arguments re: no prejudice); Dkt. 323-2 at 9-10 (explaining the lack of prejudice to Arista).

Dated:  August 17, 2016                           Respectfully submitted,

/s/ John M. Neukom

Kathleen Sullivan (SBN 242261)
kathleensullivan@quinnemanuel.com
QUINN EMANUEL URQUHART &
SULLIVAN LLP
51 Madison Avenue, 22nd Floor
New York, NY 10010
Telephone: (212) 849-7000
Facsimile: (212) 849-7100

Sean S. Pak (SBN 219032)
seanpak@quinnemanuel.com
Amy H. Candido (SBN 237829)
amycandido@quinnemanuel.com
John M. Neukom (SBN 275887)
johnneukom@quinnemanuel.com.
QUINN EMANUEL URQUHART &
SULLIVAN LLP
50 California Street, 22nd Floor
San Francisco, CA 94111
Telephone: (415) 875-6600
Facsimile: (415) 875-6700

Mark Tung (SBN 245782)
marktung@quinnemanuel.com
QUINN EMANUEL URQUHART &
SULLIVAN LLP
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, CA 94065
Telephone: (650) 801-5000
Facsimile: (650) 801-5100

Steven Cherny *admitted pro hac vice)*
steven.cherny@kirkland.com
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900

Adam R. Alper (SBN 196834)
adam.alper@kirkland.com
KIRKLAND & ELLIS LLP
555 California Street
San Francisco, California  94104
Telephone: (415) 439-1400
Facsimile: (415) 439-1500

Michael W. De Vries (SBN 211001)
michael.devries@kirkland.com
KIRKLAND & ELLIS LLP

1  333 South Hope Street
   Los Angeles, California 90071
2  Telephone: (213) 680-8400
   Facsimile: (213) 680-8500
3
   *Attorneys for Plaintiff Cisco Systems, Inc.*
4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28