KEKER & VAN NEST LLP
ROBERT A. VAN NEST - #84065
BRIAN L. FERRALL - #160847
DAVID SILBERT - #173128
MICHAEL S. KWUN - #198945
633 Battery Street
San Francisco, CA 94111-1809
Telephone:    (415) 391-5400
Email:  rvannest@kvn.com;
bferrall@kvn.com; dsilbert@kvn.com;
mkwun@kvn.com

SUSAN CREIGHTON, SBN 135528
SCOTT A. SHER, SBN 190053
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
1700 K Street NW, Fifth Floor
Washington, D.C., 20006-3817
Telephone:  (202) 973-8800
Email:  screighton@wsgr.com;
ssher@wsgr.com

JONATHAN M. JACOBSON, NY SBN 1350495
CHUL PAK (*pro hac vice*)
DAVID H. REICHENBERG (*pro hac vice*)
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
1301 Avenue Of The Americas, 40th Floor
New York, NY 10019-6022
Telephone:  (212) 999-5800
Email:  jjacobson@wsgr.com; cpak@wsgr.com;
dreichenberg@wsgr.com

Attorneys for Defendant ARISTA NETWORKS, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| CISCO SYSTEMS, INC.,<br><br>       Plaintiff,<br><br>   v.<br><br>ARISTA NETWORKS, INC.,<br><br>       Defendant. | Case No. 5:14-cv-05344-BLF (NC)<br><br>**ARISTA NETWORKS, INC.'S OPPOSITION TO CISCO'S MOTION TO EXCLUDE EXPERT OPINION TESTIMONY OF DR. JOHN BLACK**<br><br>Date:     September 9, 2016<br>Time:    9:00 a.m.<br>Dept.:    Courtroom 3, 5th Floor<br>Judge:   Hon. Beth Labson Freeman<br><br>Date Filed: December 5, 2014<br><br>Trial Date: November 21, 2016 |

REDACTED VERSION

ARISTA NETWORKS, INC.'S OPPOSITION TO CISCO'S MOTION TO EXCLUDE
EXPERT OPINION TESTIMONY OF DR. JOHN BLACK
Case No. 5:14-cv-05344-BLF (NC)

1083604

# **TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ...................................................................................................................1

II. DR. BLACK'S CHALLENGED EXPERT OPINIONS ........................................................1

III. ARGUMENT ..........................................................................................................................3

    A. Dr. Black is more than qualified to testify about the widespread usage of accused CLI features across the networking industry, and whether those widely supported CLI features comprise a *de facto* industry standard. ....................3

    B. Dr. Black followed a reliable methodology, and applied that methodology reliably to the facts, to arrive at his *de facto* industry standard CLI opinion. ..........5

    C. Dr. Blacks' *de facto* industry standard opinion is relevant to many contested issues, including fair use, estoppel, damages, and injunctive relief. ...........................................................................................................................9

    D. Dr. Black will not opine on corporate intent, but will offer proper industry custom and practice testimony relating to the *de facto* industry standard CLI. ..........................................................................................................................10

IV. CONCLUSION ....................................................................................................................10

i

ARISTA NETWORKS, INC.'S OPPOSITION TO CISCO'S MOTION TO EXCLUDE
EXPERT OPINION TESTIMONY OF DR. JOHN BLACK
Case No. 5:14-cv-05344-BLF (NC)

1083604

## I. INTRODUCTION

In moving to exclude Dr. John R. Black, Jr.'s expert opinion on the *de facto* industry standard command-line interface (CLI), Cisco seeks to rewrite history by silencing testimony that the majority of CLI elements disputed in this lawsuit have been openly used by the networking industry for over a decade. The Court should not allow Cisco to keep this evidence from the jury, which while inconvenient to Cisco's trial themes, is important for the jury's consideration of the fair use defense and evaluation of damages, among other issues.

Cisco provides no basis to exclude Dr. Black's opinion. *First*, Dr. Black has used networking CLIs for 25 years, teaches standardized protocols (both formal and *de facto*), and has used and created industry standards as part of his professional career. His knowledge, expertise, and experience more than qualify him to testify about industry custom and practice relating to CLIs, and the *de facto* industry standard CLI. *Second*, unlike Cisco's technical expert who opines about ████████████████████████ without citing any objective evidence to support it, Dr. Black meticulously analyzed the CLIs used by over twenty networking vendors and provided evidence citations in his reports *for every common CLI feature he found*. That in-depth analysis, set forth in hundreds of pages of Dr. Black's reports, provides a reliable and objective foundation for his *de facto* industry standard CLI opinion. *Finally*, there can be no reasonable dispute that Dr. Black's opinion—and the use of disputed CLI features by other Cisco competitors—is highly relevant to at least fair use, estoppel, damages, and equitable relief.

Cisco's criticisms of Dr. Black can be explored in cross-examination; they are not grounds to exclude this important testimony from the jury.

## II. DR. BLACK'S CHALLENGED EXPERT OPINIONS

Cisco's motion targets only "Dr. Black's opinion that there is a *de facto* 'industry standard'" for CLIs in the networking industry, and opinions where he supposedly "speculates about corporate intent" in four paragraphs (171, 699, 702, and 703) of his Opening Report. *See* Mot. at 1. Cisco does *not* challenge Dr. Black's opinions that the asserted CLI features are not protectable, or that Arista's use of similar words is fair. *Id.*; *see also* ECF 431-1 ("Opening Rpt.") ¶¶ 1, 6–11, 56–168, 484–704. Nor does Cisco challenge Dr. Black's methodical analysis of

1

ARISTA NETWORKS, INC.'S OPPOSITION TO CISCO'S MOTION TO EXCLUDE
EXPERT OPINION TESTIMONY OF DR. JOHN BLACK
Case No. 5:14-cv-05344-BLF (NC)

1083604

***hundreds of common CLI features***, including modes, prompts, individual commands, and "hierarchies," openly supported by other vendors in the networking industry. See Opening Rpt. ¶¶ 169–440, Appendices C to J.[1] That analysis, for which Dr. Black performed a feature-by-feature review of hundreds of technical documents spanning over twenty networking vendors, revealed that ***all*** of the disputed command modes and prompts, ***over 450*** of the disputed CLI commands, and ***all*** eleven accused command "hierarchies" are used by other vendors such as Brocade, Foundry, Dell, Force10, and HP (and in some cases, over fifteen other vendors). See Wong Decl. Ex. 3 ("Black Tr.") at 212:25–220:25. Dr. Black's analysis also confirmed that many of Cisco's competitors were openly using hundreds of CLI commands that overlapped with Cisco IOS over a decade ago, that Dell products support over 1,600 CLI commands that are identical to Cisco CLI commands, and that several other vendors use at least 200 or more of the CLI commands Cisco selected for this lawsuit. *Id.* Dr. Black provided evidence citations for every common CLI feature in his analysis.

Cisco does not dispute the accuracy of Dr. Black's analysis. To the contrary, Cisco's own technical expert testified ███████████████████████████ See Wong Decl. Ex. 4 ("Almeroth Tr.") at 101:2–21; *see also id.* at 97:4–23; 99:6–10; 120:18–121:8; Wong Decl. Ex. 5 ("Almeroth Rebuttal") ¶¶ 79, 80. Cisco instead criticizes Dr. Black's ultimate conclusion drawn from the data—namely, that the widespread use of common CLI features shows that there is a *de facto* industry standard for CLIs in the industry, and there is a custom and practice to support it. Unlike formal industry standards promulgated by standard-setting bodies, a *de facto* industry standard emerges by the weight of its presence, adoption, and acceptance by vendors and customers in an industry. See Opening Rpt. ¶¶ 82–90 (discussing formal and *de facto* standards). The *de facto* industry standard CLI "refers to the common, well-known, and widely adopted features and functionality of CLIs supported across multiple vendors' networking devices (*e.g.*, switches and routers)[.]" *Id.* at ¶ 171. Cisco's motion seeks to prevent Dr. Black from drawing any

---

[1] Cisco did not attach Dr. Black's Opening or Rebuttal Report Appendices to its motion. Arista has therefore submitted them with its Opposition. See Declaration of Ryan Wong in Support of Arista's Opposition to Cisco's Motion to Exclude Expert Testimony of Dr. Black ("Wong Decl.") at Ex. 1 (Opening Rpt. Appendices); Ex. 2 (Rebuttal Rpt. Appendices).

2
ARISTA NETWORKS, INC.'S OPPOSITION TO CISCO'S MOTION TO EXCLUDE
EXPERT OPINION TESTIMONY OF DR. JOHN BLACK
Case No. 5:14-cv-05344-BLF (NC)

1083604

1  conclusions from the overwhelming evidence of his multi-vendor analysis ▮▮▮▮
2  ▮▮▮▮ which confirm that many vendors support a common set of CLI features as part of a
3  *de facto* industry standard CLI. *Id.* at ¶¶ 123–440.

### III.  ARGUMENT

**A.  Dr. Black is more than qualified to testify about the widespread usage of accused CLI features across the networking industry, and whether those widely supported CLI features comprise a *de facto* industry standard.**

Dr. Black is a Ph.D in Computer Science who has worked with CLIs and industry standards for decades. Opening Rpt. ¶¶ 12, 16, 19, 24. His qualifications to testify about CLI functionality supported across multiple in networking products (*i.e.*, *de facto* industry standard CLI features) far exceed Rule 702(a)'s requirements.

While experts must be qualified by "knowledge, skill, experience, training, or education," *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 592 (1993), Rule 702 contemplates "a broad conception of expert qualifications." *Thomas v. Newton Int'l Enters.*, 42 F.3d 1266, 1269 (9th Cir. 1994); *see also Hangarter v. Provident Life & Accident Ins. Co.*, 373 F.3d 998, 1015 (9th Cir. 2004) ("Rule 702 is … intended to embrace more than a narrow definition of qualified expert."). "The threshold for qualification is low; a minimal foundation of knowledge, skill, and experience suffices." *Mformation Techs. v. Research in Motion, Ltd.*, No. C 08–04990 JW, 2012 WL 1142537, at *1 (N.D. Cal. March 29, 2012) (citing *Thomas* and *Hangarter*).

Dr. Black's knowledge of, and hands-on experience with, networking CLIs and formal and *de facto* industry standards are extensive. *First*, Dr. Black has been using CLIs for forty years, has written CLIs and parsers from scratch, and has worked with many of the CLIs discussed in his expert reports, including Cisco's CLI, DEC (Digital Equipment Corporation) CLIs, and UNIX CLIs since the 1980s. Opening Rpt. ¶¶ 16–21. Dr. Black has also taught several courses using Cisco routers and CLI commands, designed a networking data center, and used various vendors' networking equipment—including Juniper and Dell equipment—as part of his research work. *Id.* at ¶¶ 24–27; Black Tr. 183:13–185:1. Dr. Black's extensive hands-on experience using the Cisco CLI and other vendors' CLIs more than qualifies him to testify knowledgably and reliably about widely used CLI features across multiple vendors' products.

3

ARISTA NETWORKS, INC.'S OPPOSITION TO CISCO'S MOTION TO EXCLUDE
EXPERT OPINION TESTIMONY OF DR. JOHN BLACK
Case No. 5:14-cv-05344-BLF (NC)

1083604

*See* Black Tr. 109:7–20 (discussing his prior experience with the Cisco CLI); 183:13–185:1 (discussing his prior experience with other vendors' CLIs); *see also Hangarter*, 373 F.3d at 1015 ("In certain fields, experience is the predominant, if not sole, basis for a great deal of reliable expert testimony.").

*Second*, Dr. Black's extensive knowledge of industry standards in the networking industry more than qualifies him to testify on *de facto* industry standards. Dr. Black has taught several courses covering formal and *de facto* industry standard protocols, including "Ethernet, interior gateway protocols, exterior gateway protocols, ARP, DHCP/BOOTP, IP, UDP, TCP, HTTP, SMTP," DNS, BGP, SSL, and RIP. *See* Opening Rpt. ¶¶ 24–25; *see also id.* at Appendices A and B (discussing many of these standards). RIP is a prime example of a networking protocol that emerged as a *de facto* industry standard. *See id.* at ¶¶ 88–90 (discussing RIP's emergence as a *de facto* industry standard, and quoting IETF documents describing RIP as being "in wide use for routing, but which ha[s] never been formally documented."). Dr. Black's expertise with RIP and other *de facto* industry standards, including standards that apply to user interfaces (*e.g.*, the AT modem command set and BSD Rlogin), qualifies him to opine on *de facto* industry standards and their customary use in the networking field. *See id.* at ¶¶ 85–87.

None of Cisco's criticisms render Dr. Black unqualified to opine on the *de facto* industry standard CLI. While Cisco criticizes Dr. Black for not being an active member of the IEEE or IETF, *see* Mot. at 3, those organizations promulgate *formal* standards—not *de facto* standards. Moreover, even if it were relevant to his qualifications, Dr. Black has participated in formal industry standard setting via the National Institute of Standards and Technology ("NIST"). *See* Opening Rpt. at Ex. 1 (CV) (listing proposals to NIST under "Workshop Publications");[2] *see also* Black Tr. 121:18–123:7 (discussing his NIST activities). Some of his proposals are now NIST industry standards, and several IETF RFCs mention Dr. Black's contributions by name.[3]

---

[2] Cisco's assertion that Dr. Black failed to disclose his contributions to NIST in Opening Report, and has never written anything on industry standards, are both incorrect, as Dr. Black's CV lists each of these contributions, all of which are public. *See* Mot. at 3–4; *see also* Wong Decl. Ex. 6 (attaching Dr. Black's CV, which was attached as Exhibit 1 to Dr. Black's Opening Report).

[3] *See, e.g.*, IETF RFC 4493, *available at* https://tools.ietf.org/html/rfc4493) (citing Dr. Black's contributions); IETF RFC 4494, *available at* https://tools.ietf.org/html/rfc4494) (same).

4
ARISTA NETWORKS, INC.'S OPPOSITION TO CISCO'S MOTION TO EXCLUDE
EXPERT OPINION TESTIMONY OF DR. JOHN BLACK
Case No. 5:14-cv-05344-BLF (NC)

1083604

Cisco also misleadingly argues that Dr. Black has never "held himself out to be an expert in the creation of industry standards or *de facto* industry standards." Mot. at 3. But repeat testimony as an expert is not a prerequisite to qualifying as one. *A.A. v. Raymond*, No. 2:13-CV-01167-KJM, 2013 WL 3816565, at *5 (E.D. Cal. July 22, 2013) (citing *United States v. Smith*, 520 F.3d 1097, 1105 (9th Cir.2008), *aff'd en banc*, 561 F.3d 934 (9th Cir. 2009)). And as Dr. Black explained: "I don't think there is such a thing as an expert in the creation of industry standards. I've participated in creating technology that has been standardized or attempted to be standardized in various fashions, but I don't think there can be something that you described as an 'expert' in the creation of industry standards." Black Tr. 67:14–20. Therefore, the fact that this is Dr. Black's first time providing expert testimony on a *de facto* industry standard is not a valid reason to strike his testimony.

Dr. Black's credentials far surpass what is required under Rule 702. Cisco's criticisms of his expertise go to the weight, and not the admissibility, of his industry standard CLI opinion.[4]

### B. Dr. Black followed a reliable methodology, and applied that methodology reliably to the facts, to arrive at his *de facto* industry standard CLI opinion.

Dr. Black's methodology also satisfies Rule 702, given his meticulous efforts in "showing his work" and providing evidence citations to support every common CLI feature underpinning his *de facto* industry CLI opinion. That Dr. Almeroth . Almeroth Tr. at 101:2–21 ); Almeroth Rebuttal ¶ 79 ).

Courts have "considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999). Courts may consider: (1) whether the expert's methodology can be tested; (2) whether it has been subjected to peer review; (3) its error rate; and (3) whether it has been

---

[4] The *Mullins* case cited by Cisco is inapposite. Mot. at 4. In *Mullins*, the expert admitted that he did not understand several scientific articles on the subject matter of his testimony, leading to his exclusion. *See Mullins v. Premier Nutrition Corp.*, No. 13-CV-01271-RS, 2016 WL 1534784, at *22 (N.D. Cal. Apr. 15, 2016). Dr. Black made no equivalent admissions here.

accepted in the relevant professional community. *Daubert*, 509 U.S. at 593–94. This "list of specific factors neither necessarily nor exclusively applies to all experts or in all cases," *Kuhmo Tire*, 526 U.S. at 141, and should not be "mechanically appl[ied.]" *United States v. McCaleb*, 552 F.3d 1053, 1060 (9th Cir. 2009). Each factor's relevance depends "on the nature of the issue, the expert's particular expertise, and the subject of his testimony." *Kumho Tire*, 526 U.S. at 150.

Dr. Black's conclusion that certain disputed CLI features are part of a *de facto* industry standard CLI is based on a reliable and fully disclosed methodology that flows directly from its conventional meaning. *See* Opening Rpt. ¶ 82 (describing a *de facto* industry standard as "created simply by the weight of [it's] presence, adoption, and acceptance by vendors and customers in an industry"); *id.* at ¶ 83 ("A *de facto* standard is … a standard because it has become widely used over time[.]"). Neither Cisco nor its expert disputes Dr. Black's definition of a "*de facto* industry standard," nor could they, as it is consistent with the IEEE's definition. *See* IEEE Standards Glossary (defining "*de facto* industry standards" as "[s]tandards that have come into use by general acceptance, custom or convention but have no formal recognition.").[5]

Applying this definition of "*de facto* industry standard" to CLIs used by vendors in the networking industry, Dr. Black reviewed technical documentation from all of the "major players" in the industry (*e.g.*, Dell, Juniper, HP, Brocade, and others), as well as additional vendors specifically discussed by fact witnesses (*e.g.*, Procket Networks and NextHop), to look for common CLI features that were supported by and present in each of the vendors' products. Opening Rpt. ¶¶ 169–440; Black Tr. 196:14–206:19 (explaining his selection of vendors). For each vendor he analyzed, Dr. Black provided citations to evidence, and included text excerpts from produced technical documents, for each relevant CLI feature he recognized, including the disputed modes, prompts, commands, and hierarchies in this lawsuit. Opening Rpt. ¶¶ 169–440, and Appendices C to J; Rebuttal Rpt. Appendices C to J, and L. Based on his objective tally of common CLI features supported by multiple vendors, Dr. Black applied the definition of "*de facto* industry standard*" to the data and concluded that there is a *de facto* industry standard CLI.

---

[5] *See* https://www.ieee.org/education_careers/education/standards/standards_glossary.html; *see also* Opening Report ¶¶ 82–88 (citing trade articles that similarly define "de facto standards").

6
ARISTA NETWORKS, INC.'S OPPOSITION TO CISCO'S MOTION TO EXCLUDE
EXPERT OPINION TESTIMONY OF DR. JOHN BLACK
Case No. 5:14-cv-05344-BLF (NC)

1083604

*Id.* Dr. Black's methodology—which is the opposite of a "black box"—satisfies Rule 702.

None of Cisco's criticisms justifies keeping Dr. Black's *de facto* industry standard CLI opinion (or the objective data on which it rests) from the jury. *First*, Cisco argues that Dr. Black's opinions "cannot be tested," *see* Mot. at 5–6, but Cisco is wrong. Since each common CLI feature is supported by citations to evidence produced during discovery, the accuracy of Dr. Black's analysis can be easily "tested" by Cisco and its expert. But Cisco's own expert declined to test—and instead ███████████████████████████████—Dr. Black's objective survey of common CLI features. *See* Almeroth Tr. at 94:11–103:6; Almeroth Rebuttal ¶¶ 79, 80.

*Second*, Cisco criticizes Dr. Black for focusing his *de facto* industry standard CLI analysis on CLI features that are actually disputed, rather than on features that are not. *See* Mot. at 5–6. Yet these asserted features are the very same ones Cisco will tout to the jury as critical to its CLI, and Rule 702 ***requires*** an expert's methodology to be reliably applied and "sufficiently tied to the facts of the case." *See* Fed. R. Evid. 702(d); *see also Summit 6, LLC v. Samsung Elecs. Co.*, 802 F.3d 1283, 1296 (Fed. Cir. 2015). Moreover, Dr. Black also analyzed several non-accused CLI features as part of his analysis, noting that features like "tab" completion, context-sensitive help, the use of "no" commands, and the support of partial CLI commands were also widely supported across the networking industry.[6] *See, e.g.*, Opening Rpt. ¶¶ 207, 216, 223, 236, 252, 253, 271, 308, 318, 330, 341, 351, 373, 387, 394, 403, 411, 421; *see also* Black Tr. at 188:10–190:13. To the extent Cisco seeks to criticize Dr. Black for not discussing certain CLI features beyond the hundreds he analyzed, that goes to the weight—not the admissibility—of his opinion.

*Third*, Cisco argues that Dr. Black's opinion is somehow inherently unreliable because it was "developed for th[e] litigation." Mot. at 5. But Cisco ignores the fact that all expert opinions on industry custom and practice express opinions tailored to the litigation in which they are offered. *See Hangarter*, 373 F.3d at 1018. In *Hangarter*, the trial court properly permitted expert testimony on whether the defendants' practices were consistent with insurance industry standards.

---

[6] Dr. Black also looked beyond the accused CLI commands and found that Dell products supported over 1,600 CLI commands that were identical to Cisco IOS commands—an objective fact that also supports Dr. Black's opinion that there is a *de facto* industry standard CLI. *See* Opening Rpt. ¶¶ 275–295 (describing the methodology for this additional analysis).

7

ARISTA NETWORKS, INC.'S OPPOSITION TO CISCO'S MOTION TO EXCLUDE
EXPERT OPINION TESTIMONY OF DR. JOHN BLACK
Case No. 5:14-cv-05344-BLF (NC)

1083604

The Ninth Circuit held that the testimony was reliable, explaining: "Given that, unlike scientific or technical testimony, the reliability of [his] testimony was not contingent upon a particular methodology or technical framework, the district court did not abuse its discretion in finding [his] testimony reliable based on his knowledge and experience." *Id.* Here, Dr. Black's opinion testimony is based on data showing hundreds of common CLI features across many different networking vendors. The fact that Dr. Black tailored his opinion to address the unique circumstances of this litigation does not disqualify it. *Id.*

*Fourth,* Cisco argues that Dr. Black's methodology is "subjective" and unreliable because there is no "bright-line threshold" for when a particular CLI feature becomes widely adopted. *See* Mot. at 6. But "[s]ubjective beliefs and opinions are proper expert testimony" when based upon scientific knowledge. *See GSI Tech., Inc. v. Cypress Semiconductor Corp.*, No. 5:11-CV-03613-EJD, 2015 WL 364796, at *2 (N.D. Cal. Jan. 27, 2015) (citations omitted). All experts "operat[e] within a vocational framework that may have numerous objective components, but the expert's ultimate opining is likely to depend in some measure on experiential factors that transcend precise measurement and quantification." *United States v. Llera Plaza*, 188 F. Supp. 2d 549, 570–71 (E.D. Pa. 2002) (citing *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134 (9th Cir.1997)). As Cisco's own expert put it: "[REDACTED]" Almeroth Tr. at 131:16–21; *see also id.* at 132:9–134:25. Just because Cisco's expert may draw different conclusions from widespread usage of CLI features does not render Dr. Black's opinions unreliable.

*Fifth,* Cisco complains that Dr. Black excluded two vendors, Huawei and Juniper, from his industry-standard analysis, and ignored approximately fifty disputed CLI commands. *See* Mot. at 7. Both assertions are wrong. Both Huawei's and Juniper's JUNOS CLI are discussed in Dr. Black's expert reports, and Dr. Black acknowledges that they differ from the *de facto* industry standard. *See, e.g.*, Opening Rpt. ¶¶ 353–355 [REDACTED]); 459–462 (discussing JUNOS-style CLIs); *see also* Black Tr. 210:14–24. Dr. Black also explained that he did in fact analyze all of the disputed CLI commands as part of his analysis, and did not ignore any of them. Black Tr. 253:22–254:25.

8
ARISTA NETWORKS, INC.'S OPPOSITION TO CISCO'S MOTION TO EXCLUDE
EXPERT OPINION TESTIMONY OF DR. JOHN BLACK
Case No. 5:14-cv-05344-BLF (NC)

1083604

Finally, Cisco complains that Dr. Black's methodology has not been subjected to "peer review" and has "not been generally accepted." Mot. at 7–8. But whether a *de facto* industry standard CLI exists is not necessarily a question that invites peer-reviewed scholarship outside of litigation. In these circumstances, "peer review, publication, potential error rate, etc. … simply are not applicable to this kind of testimony, whose reliability depends heavily on the knowledge and experience of the expert, rather than the methodology or theory behind it." *United States v. Hankey*, 203 F.3d 1160, 1169 (9th Cir. 2000); *see also Summit 6*, 802 F.3d at 1298 ("[T]he fact-based nature of [the expert's] testimony made it impractical, if not impossible, to subject the methods to peer review and publication.") (citations omitted).

Here, while the fact-based nature of Dr. Black's methodology is not subject to peer review or publication, ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ competitors *independently confirm* that there is a widely adopted *de facto* industry standard CLI in the networking industry. *See, e.g.*, Opening Rpt. ¶¶ 125 (▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬), 209 (quoting ADTRAN materials describing its CLI as supporting the "widely adopted, industry *de facto* standard"); 370 (quoting Juniper materials describing the JUNOSe CLI as using a "familiar" "industry *de facto* standard" CLI); 439 ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬). To the extent Cisco disagrees with Dr. Black's conclusions (notwithstanding ▬▬▬▬▬▬▬▬▬), that is for the jury to resolve.

### C. Dr. Blacks' *de facto* industry standard opinion is relevant to many contested issues, including fair use, estoppel, damages, and injunctive relief.

Dr. Black's opinion regarding the widespread and customary use of the accused CLI features is surely relevant. *First*, whether any of the accused CLI features are part of, and were implemented by Arista to comply with, a *de facto* industry standard CLI is clearly relevant to several fair use factors, including market harm.[7] *See Oracle America, Inc. v. Google, Inc.*, 750 F.3d 1339, 1354 (Fed. Cir. 2014). Achieving interoperability with a standard is relevant to several fair use factors. *Id.*; *see also id.* at 1376–77. Moreover, "fair use is appropriate where a 'reasonable copyright owner' would have consented to the use, *i.e.*, where the 'custom … ' at the

---

[7] Arista does *not* contend that "works lose protection when they become popular." *See* Mot. at 9.

9

ARISTA NETWORKS, INC.'S OPPOSITION TO CISCO'S MOTION TO EXCLUDE
EXPERT OPINION TESTIMONY OF DR. JOHN BLACK
Case No. 5:14-cv-05344-BLF (NC)

1083604

time would have defined the use as reasonable." *Wall Data Inc. v. Los Angeles County Sheriff's Dept.*, 447 F.3d 769, 778 (9th Cir. 2006). Dr. Black's opinion is clearly relevant to this additional fair use factor as well. *Second*, Dr. Black's *de facto* industry standard opinion is relevant to other copyright defenses Arista asserts, including estoppel. For example, [REDACTED]

Opening Rpt. ¶ 700. That [REDACTED] is an essential element of the estoppel defense. *See McIntosh v. N. Cal. Universal Enters. Co.*, 670 F. Supp. 2d 1069, 1101 (E.D. Cal. 2009). *Finally*, Dr. Black's *de facto* industry standard opinion is relevant to damages and injunctive belief, as Cisco cannot plausibly claim substantial or irreparable harm where the most of the accused CLI features are already used by competitors.

### D. Dr. Black will not opine on corporate intent, but will offer proper industry custom and practice testimony relating to the *de facto* industry standard CLI.

The four paragraphs of Dr. Black's Opening Report targeted by Cisco's motion (171, 699, 702, and 703) do not improperly opine on corporate intent. Mot. at 10. For example, Dr. Black's opinion that certain CLI features are "well known" to users in the industry is no different from a custom and usage expert opining on whether a term has a "well known" industry meaning. *See* Opening Rpt. ¶ 171; *SR Intern. Business Ins. Co., Ltd. v. World Trade Center Properties, LLC*, 467 F.3d 107, 136 (2nd Cir. 2006) (allowing such expert testimony). Similarly, Dr. Black's opinions about the industry's use of CLI commands over time, and what the industry customarily viewed as a reasonable use of CLI commands (*see* Opening Rpt. ¶¶ 699, 702, 703), is proper custom and usage testimony based on his decades of experience using and teaching networking CLIs, as well as his analysis of CLIs used by over twenty different vendors, both past and present. *See, e.g., Jenkins v. All Nation Ins. Co.*, 852 F.2d 571 (Table), 1988 WL 72864, at *4 (9th Cir. June 29, 1988) (allowing an opinion on industry standards and practices to show whether a party acted reasonably or in bad faith). Since Dr. Black avoids speculating about any particular entity's corporate intent in those four paragraphs, his custom and practice opinions are admissible.

## IV. CONCLUSION

For the above reasons, Cisco's Motion to exclude Dr. Black's opinions should be denied.

10
ARISTA NETWORKS, INC.'S OPPOSITION TO CISCO'S MOTION TO EXCLUDE
EXPERT OPINION TESTIMONY OF DR. JOHN BLACK
Case No. 5:14-cv-05344-BLF (NC)

1083604

| | | |
|---|---|---|
| Dated:  August 19, 2016 | | KEKER & VAN NEST LLP |
| | | WILSON SONSINI GOODRICH & ROSATI |
| | By: | */s/ Brian L. Ferrall* <br> BRIAN L. FERRALL |
| | | Attorneys for Defendant <br> ARISTA NETWORKS, INC. |

11
ARISTA NETWORKS, INC.'S OPPOSITION TO CISCO'S MOTION TO EXCLUDE
EXPERT OPINION TESTIMONY OF DR. JOHN BLACK
Case No. 5:14-cv-05344-BLF (NC)

1083604