# EXHIBIT 1

```
 1              UNITED STATES DISTRICT COURT

 2             NORTHER DISTRICT OF CALIFORNIA

 3                  SAN JOSE DIVISION

 4

    CISCO SYSTEMS, INC.,

 5

                    Plaintiff,

 6

                vs.                  Civil Action No.

 7                                   5:14-cv-5344-BLF

 8  ARISTA NETWORKS, INC.,

 9                  Defendants.
    _____ /

10

11

12

13

14        VIDEO RECORDED DEPOSITION OF EXPERT

15            DOUGLAS W. CLARK, Ph.D.

16               JULY 6, 2016

17                9:07 A.M.

18

19        50 California Street, 21st Floor

20            San Francisco, California

21

22

23  REPORTED BY:

24  Mark W. Banta

25  CSR No. 6034, CRR
```

Page 2

1              UNITED STATES DISTRICT COURT
2            NORTHERN DISTRICT OF CALIFORNIA
3                  SAN JOSE DIVISION
4
   CISCO SYSTEMS, INC.,
5
                  Plaintiff,
6
          vs.              Civil Action No.
7                          5:14-cv-5344-BLF
8  ARISTA NETWORKS, INC.,
9              Defendants.
   _____ /
10
11
12
13
14
15        Videotaped Deposition of DOUGLAS W. CLARK,
16  Ph.D., taken on behalf of the Plaintiff, at
17  Quinn, Emanuel, Urquhart, & Sullivan, 50 California
18  Street, 21st Floor, San Francisco, California, beginning
19  at 9:07 A.M. and ending at 4:01 P.M., on Wednesday, the
20  6th day of July, 2016, before Mark W. Banta, RPR, CRR,
21  California Certified Shorthand Reporter, CSR No. 6034.
22
23
24
25

Page 3

1           A P P E A R A N C E S
2  For the Plaintiff:
      QUINN EMANUEL URQUHART & SULLIVAN, LLP
3     BY JORDAN JAFFE
      50 California Street, 22nd Floor
4     San Francisco, California  94111
      415.875.6600
5     jordanjaffe@quinnemanuel.com
6
7
8  For the Defendant ARISTA NETWORKS, INC.:
      KEKER & VAN NEST, L.L.P.
9     BY DAVID ROSEN
      BY AJAY KRISHNAN
10    633 Battery Street
      San Francisco, California  94111-1809
11    415.676.2261
      drosen@kvn.com
12    akrishnan@kvn.com
13
14
15  ALSO PRESENT:  KYLE DEETKEN, Videographer
16         SI SHEN, Quinn Emanuel summer associate
17
18
19
20
21
22
23
24
25

Page 4

1              INDEX TO EXAMINATION
2
3      WITNESS:  DOUGLAS W. CLARK, Ph.D.
4  EXAMINATION BY:                          PAGE
5  BY MR. JAFFE                              7
   BY MR. ROSEN                              150
6  BY MR. JAFFE                              156
7
8
9            INSTRUCTIONS TO WITNESS
10        PAGE     LINE
11        17        20
12
13
14
15
16
17
18
19
20
21
22
23
24
25

Page 5

1              INDEX  TO  EXHIBITS
2                   EXPERT
3           DOUGLAS W. CLARK, Ph.D.
4   Cisco Systems, Inc. v. Arista Networks, Inc.
5              July 6, 2016
6        Mark W. Banta, CSR No. 6034, CRR
7
8  MARKED          DESCRIPTION              PAGE
9
10 Exhibit 3001  Opening Expert Report of Douglas W.   13
                 Clark Regarding Invalidity of U.S.
11               Patent No. 7,047,526
12 Exhibit 3002  Blank page                            52
13 Exhibit 1371  U.S. Patent 7,047,526                 53
14 Exhibit 3003  Order Constructing Claims in U.S.     60
                 Patent No. 7,047,526
15
   Exhibit 3004  Diagram of portion of modified        69
16               command parse tree
17
18
19
20
21
22
23
24
25

Page 6

```
 1            SAN FRANCISCO, CALIFORNIA
 2        WEDNESDAY, JULY 6, 2016, 9:07 A.M.
 3              PROCEEDINGS
 4        THE VIDEOGRAPHER:  All right.  Good morning.  We
 5  are on the record.  This is the recorded video deposition
 6  of Doug Clark in the matter of Cisco verse Arista in the
 7  United States District Court, Northern District of
 8  California, San Jose Division, case number
 9  5:14-CV-5344-BLF, taken on behalf of the plaintiff.
10        This deposition is taking place at 50 California
11  Street, 22nd Floor, San Francisco, California on
12  July 6th, 2016, at 9:08 a.m.
13        My name is Kyle Deetken.  I am the videographer
14  with U.S. Legal Support, located at 44 Montgomery Street,
15  Suite 550, San Francisco, California.
16        Video and audio recording will be taking place
17  unless all counsel have agreed to go off the record.
18        Would all present please introduce themselves,
19  beginning with the witness.
20        THE WITNESS:  I'm Douglas Clark.
21        MR. ROSEN:  David Rosen of Keker & Van Nest for
22  defendant Arista and for the witness.
23        MR. KRISHNAN:  Ajay Krishnan, Keker & Van Nest,
24  for Arista.
25        MR. JAFFE:  Jordan Jaffe of Quinn Emanuel on
```

Page 7

```
 1  behalf of the plaintiff Cisco, and with me today is one
 2  of our summer associates, Si Shen.
 3        THE VIDEOGRAPHER:  The certified court reporter
 4  is Mark Banta.  Would you please swear in the witness.
 5            DOUGLAS W. CLARK, Ph.D.,
 6        Having stated that he would testify the truth,
 7  the whole truth, and nothing but the truth, testified as
 8  follows:
 9                 EXAMINATION
10  BY MR. JAFFE:
11     Q.   Good morning, Dr. Clark.
12     A.   Good morning.
13     Q.   Before we get started, your counsel had raised
14  that you're on some medication relating to diabetes, and
15  I wanted to give you an opportunity to address that on
16  the record.
17     A.   I've had Type 1 diabetes since the second
18  Eisenhower administration.  I take insulin.  It makes the
19  blood sugar go up, makes the blood sugar go down,
20  sometimes it goes up.  There's a tiny, tiny chance that
21  when it goes down too much I will want a break somewhat
22  urgently.  That has never happened but -- in the
23  deposition, but it's not a zero probability, so I wanted
24  to alert you about that.  So that's a very unlikely
25  event.
```

Page 8

```
 1        Here's very unlikely event.  Through about four
 2  miracles of technology I can see my blood sugar on my
 3  iWatch, so I will occasionally -- no, not occasionally, I
 4  will more frequently than you might think normal for a
 5  watch looking at it, so the video will capture me
 6  doing that, and that's what I'm doing.  I'm not checking
 7  my tweets, I don't know how to tweet, but I'm just
 8  checking my blood sugar.
 9     Q.   Does your diabetes diagnosis affect your ability
10  to truthfully testify today?
11     A.   No.
12     Q.   Is there anything else that we should be aware
13  of that would affect your ability to testify fully and
14  accurately today?
15     A.   No.
16     Q.   And to be clear, you're diabetes diagnosis will
17  not affect your ability to testify fully and accurately,
18  correct?
19     A.   Except for that extremely rare problem of low
20  blood sugar where there -- there are cognitive things
21  that happen, but that is essentially a zero probability.
22     Q.   Okay.  Do you understand that you're under oath,
23  sir?
24     A.   Yes.
25     Q.   Do you understand that, even though we are not
```

Page 9

```
 1  sitting in a courtroom today, you should testify with the
 2  same seriousness as if we were?
 3     A.   Yes.
 4     Q.   How many depositions have you been involved in?
 5     A.   Twelve.
 6     Q.   Were those all in an expert capacity?
 7     A.   I think so, but I'm -- I'm not quite sure what
 8  you mean.
 9     Q.   Sure.  So were there any of the depositions that
10  you were involved in where you weren't testifying on
11  behalf of one party or another but rather as a fact
12  witness or a party or something like that?
13     A.   I believe not.
14     Q.   Okay.  So you've had 12 depositions.  So I'm not
15  going to go over the back and forth, as you're a bit of a
16  veteran at this, but I will just reiterate if you can
17  please let me finish my question and I'll do the best to
18  let you finish your answer so that the court reporter can
19  have a clean record of what we say.  Is that all right?
20     A.   I understand.
21     Q.   Okay.  In your prior work, how many times have
22  you opined as an expert that a patent is invalid?
23     A.   Do you mean in deposition?
24     Q.   I mean anywhere in recorded form, whether it be
25  a report, a deposition, a trial.
```

Page 10

1   A.   I do not know exactly.  I would guess -- report,
2 deposition, trial -- six-ish, plus or minus.  If I had my
3 list I could figure out, but...
4   Q.   How many times have you opined that a patent was
5 valid?
6   A.   I want to say less than six, but not much.
7 Again, just guessing.
8   Q.   So would that number be the same for questions
9 of infringement and non-infringement, or would the answer
10 be different?
11   A.   So I have done work where I only argued
12 non-infringement and not invalidity.  I'd have to look at
13 my list.
14   Q.   Have you ever opined that a patent was infringed
15 and valid?
16   A.   Infringed and valid?  Yes.
17   Q.   When was the last time you did that?
18   A.   At least 2007, and there might be one or more
19 after that, but the one that sticks in the mind is 2007.
20   Q.   You've submitted two expert reports in this
21 case, correct?
22   A.   Yes.
23   Q.   Are you currently preparing any supplemental
24 reports?
25   A.   I beg your pardon.  I am not.

Page 11

1   Q.   Do your reports express your full and correct
2 expert opinions that you expect to express at trial?
3   A.   The first one, the big one, suffers from having
4 been submitted before the Court's claim construction
5 order, so I would expect to modify some opinions based on
6 that order.
7   Q.   What do you mean, you would expect to modify?
8   A.   Well, I would -- I would expect to testify at
9 trial using the Court's claim constructions and not some
10 other claim constructions.
11   Q.   But you haven't put forth any report that
12 applies the Court's claim constructions for purposes of
13 your invalidity analysis; true?
14        MR. ROSEN:  Objection.  Vague.
15        THE WITNESS:  The -- the little report was after
16 the claim construction order, so that did respond to
17 the...
18 BY MR. JAFFE:
19   Q.   Right.  And so my question was a little more
20 specific, which is:  You haven't put forth any report
21 that applies the Court's claim construction for purposes
22 of your invalidity analysis?
23   A.   That's correct.
24        MR. ROSEN:  Objection.  Vague.
25 //

Page 12

1 BY MR. JAFFE:
2   Q.   Putting aside the claim construction issue which
3 we'll come back to in one second, apart from that issue,
4 do your reports express your full and correct opinions
5 that you expect -- expect to address at trial?
6   A.   Yes.
7   Q.   Are there any errors that you're aware of in
8 your reports, sitting here today, that you want to
9 correct?
10   A.   I'm aware of a handful of insignificant typos,
11 but nothing substantial.
12   Q.   There's a binder sitting in front of you that
13 has "Dr. Clark" in a nice label on it.  What is that?
14   A.   That's a binder that Arista's attorneys prepared
15 for me containing my report and some other things.
16   Q.   Does that have your CV and list of cases in it?
17   A.   It has my CV, but I think it does not have my
18 list of cases.  Let me see.
19        It does not have the list of cases.
20   Q.   Okay.  So you have your invalidity report
21 sitting in front of you, right?
22   A.   I do.
23        MR. JAFFE:  Okay.  Why don't we go ahead and
24 mark that as an exhibit.
25        And I think this will be Exhibit -- do you know

Page 13

1 what exhibit?
2        THE REPORTER:  No.
3        MR. JAFFE:  No?  I was hoping for a shortcut.
4 So we'll make this 3001.  I'm pretty sure it was marked
5 before.
6        (Exhibit 3001 marked.)
7 BY MR. JAFFE:
8   Q.   Dr. Clark, can you please take a look at what
9 I've now marked as Exhibit 3001 and let me know if you
10 recognize it.
11   A.   That appears to be my expert report on
12 invalidity with Exhibits A, B, C, D and E.
13   Q.   Now that we have your expert -- opening expert
14 report on invalidity in front of us, this expert report
15 contains all your opinions on invalidity that you're
16 prepared to discuss today, correct?
17   A.   No --
18        MR. ROSEN:  Objection.  Vague.
19        THE WITNESS:  No, because I'm prepared to
20 discuss the -- I'm prepared to offer opinions that are
21 informed by the Court's claim construction.
22 BY MR. JAFFE:
23   Q.   What report are those opinions expressed in?
24   A.   They are not expressed in any report.
25   Q.   So am I correct in understanding that you have

Page 14

1 some opinions on invalidity applying the Court's claim
2 construction that are not expressed in any report, but
3 you want to talk about them today and intend to express
4 them at some later date?
5        MR. ROSEN:  Objection.  Misstates testimony.
6 Vague.
7        THE WITNESS:  My understanding is that that's --
8 that is my obligation at trial to provide opinions that
9 don't use some other claim construction than the Court's,
10 and I was -- because of the schedule, I was -- I
11 submitted this before the Court's claim construction
12 order, so I don't know what else to do.
13 BY MR. JAFFE:
14     Q.   You submitted a rebuttal report -- report that
15 applied the Court's claim construction, right?
16     A.   Yes.
17     Q.   And in that report did you address your
18 invalidity analysis?
19        MR. ROSEN:  Objection.  Vague.
20        THE WITNESS:  No.
21 BY MR. JAFFE:
22     Q.   Why not?
23     A.   I was not asked to.
24     Q.   When do you expect to put forth a report that
25 expresses your opinions applying the Court's claim

Page 15

1 construction --
2        MR. ROSEN:  Objection.  Vague.
3        MR. JAFFE:  Sorry.  I'm not done with my
4 question.
5     Q.   On validity.
6     A.   I will prepare any report I'm asked to prepare,
7 but I have not been asked and I am not working on one
8 now.
9     Q.   If I wanted to understand the scope of your
10 opinions, before I sat down to today's deposition, on
11 invalidity, applying the Court's claim construction, how
12 would I have done that?
13        MR. ROSEN:  Objection.  Vague.  Misstates law.
14        THE WITNESS:  Would you ask again?
15 BY MR. JAFFE:
16     Q.   Sure.  My question is:  If I wanted to
17 understand what your opinions were on invalidity applying
18 the Court's claim construction before I sat down to
19 today's deposition, how would I be able to do that?
20        MR. ROSEN:  Same objections.
21        THE WITNESS:  You would not be.
22 BY MR. JAFFE:
23     Q.   I would not be able to do that?
24     A.   You would not be able to do that.
25     Q.   Okay.  Let's talk about the opinions that you

Page 16

1 have put forth in the report.  Now, for purposes of my
2 next few questions, I want to talk about the opinions as
3 expressed in your report.  Do you understand me?
4     A.   I do.
5     Q.   Okay.  Under the opinions expressed in your only
6 expert report that relates to validity, you have no
7 opinion that any prior art reference invalidates any
8 asserted claim of the '526 patent under the Court's
9 constructions, correct?
10        MR. ROSEN:  Objection.  Compound.  Vague.
11        THE WITNESS:  I think that is right.
12 BY MR. JAFFE:
13     Q.   Now let's take a look at your report.  How much
14 time did you spend preparing your report?  And I'm
15 referring to Exhibit 3001.
16     A.   Do you mean -- let's see, what do you mean
17 exactly, "prepare"?
18     Q.   I mean prepare the report, from Arista's counsel
19 engaging you until that document was produced in this
20 litigation.
21        MR. ROSEN:  Objection.  Vague.
22        THE WITNESS:  I would estimate 150 hours.
23 BY MR. JAFFE:
24     Q.   How many hours did you spend preparing your
25 rebuttal report?

Page 17

1     A.   I would guess 10.
2     Q.   How many hours did you spend preparing for
3 today's deposition?
4     A.   I spent all of yesterday, half of July 4th with
5 the attorneys, and prepared by myself for the previous
6 couple of weeks.  I -- probably 20-ish hours.
7     Q.   We've talked about the amount of time that you
8 spent preparing your opening report, your rebuttal
9 report, and preparing for today's deposition which, based
10 on my elementary school arithmetic, totals up to about
11 180 hours.  Is that the correct amount of time that you
12 have spent working on this matter, approximately?
13     A.   Yes.
14     Q.   Looking at your opening report, in terms of the
15 drafting process, who put fingers to keyboard in creating
16 it?  Was it something that you wrote or was it something
17 that there was a draft that was exchanged?  And I don't
18 want the content of any drafts, I'm just wondering about
19 the general process.
20        MR. ROSEN:  Objection; compound.  Objection;
21 vague.  And I'm also going to object and instruct the
22 witness not to divulge any conversations with counsel.
23        THE WITNESS:  It was an exchange of drafts, I
24 would say a vigorous exchange of drafts with many --
25 with -- ask your question again, please.

Page 62

1    MR. ROSEN: Objection. Vague. Asked and
2  answered. Calls for a narrative.
3    THE WITNESS: So the -- meaning -- we're just
4  talking about this limitation about elements here. The
5  middle of the validating element?
6    MR. JAFFE: Yes.
7    THE WITNESS: So my understanding comes from
8  reading the claim, reading the specification, examining
9  the figure, figuring out how the algorithm works, and my
10  understanding comports with this restriction that an
11  element has at least one pair of command -- command
12  component and action -- command action value.
13  BY MR. JAFFE:
14    Q.  What is that understanding?
15    MR. ROSEN: Objection. Vague. Asked and
16  answered.
17    THE WITNESS: I feel like I'm going to say the
18  same thing again. To be an element, you have to have at
19  least one command component and a matching -- a
20  corresponding command action value, and you can have more
21  of those if you like.
22  BY MR. JAFFE:
23    Q.  So if I'm understanding you correctly, other
24  than reading the claim language or the Court's
25  construction to me, you don't have any other

Page 63

1  understanding of the having elements limitation of claim
2  1 that you can provide to me today. Is that fair?
3    MR. ROSEN: Objection. Vague. Misstates prior
4  testimony. Asked and answered.
5    THE WITNESS: I -- I'm somewhat baffled by the
6  question for what other understanding -- where would some
7  other understanding come from other than the patent and
8  the -- and the constructions?
9  BY MR. JAFFE:
10    Q.  Well, let me ask it this way: You've said you
11  have an understanding of what this limitation means from
12  the specification. Is that right?
13    A.  From the claim language and the -- and the
14  specification.
15    Q.  Okay.
16    A.  In view of the construction.
17    Q.  What in the specification are you using to
18  conform your understanding about claim 1?
19    MR. ROSEN: Objection. Vague.
20    THE WITNESS: I would say generally from column
21  3, line 36 to column 4, line 53. And there may be other
22  places, but I think that's the main one. And then, of
23  course, the figure itself.
24  BY MR. JAFFE:
25    Q.  If I look at claim 1 of the '526 patent as

Page 64

1  construed by the Court, is your understanding that there
2  needs to be at least one command action value for each
3  generic command component?
4    A.  Yes. That is the Court's construction.
5    Q.  And your understanding is if you add a second
6  generic command and that generic command has an
7  associated command action value that is the same as
8  another generic command component, does that still meet
9  the limitations of claim 1?
10    MR. ROSEN: Objection. Incomplete hypothetical.
11  Compound. Vague.
12    THE WITNESS: I think you didn't say quite what
13  you meant.
14    You said add a command that's the same as a
15  component?
16  BY MR. JAFFE:
17    Q.  Sure. Why don't we do this in the context of
18  Figure 2. Dr. Clark, looking at Figure 2, if I were to
19  remove one of the listed command keys from element 24b
20  such that token 6 and token 7 were both associated with
21  command key 4, would that element still meet the
22  limitations of claim 1 under the Court's construction?
23    MR. ROSEN: Same objections.
24    THE WITNESS: So let -- let me change your
25  hypothetical a little.

Page 65

1    So if you just took the -- in 20 -- looking at
2  24b, you're saying what if the two command components had
3  the same command action value. Is that where you're...
4  where you want to be?
5  BY MR. JAFFE:
6    Q.  They were both associated with one command key,
7  yes.
8    A.  So a way to do that would be to change the 2 in
9  box 30d into a 4, and then the component 6 which is tcp
10  would have the same command action value as component 7
11  which is udp.
12    Q.  Okay. But what about the question that I asked
13  you, which is if I removed one of the command keys and
14  there were two generic command components associated with
15  one command action value, would that meet the limitations
16  of claim 1 under the Court's claim construction?
17    MR. ROSEN: Objection. Vague. Incomplete
18  hypothetical. Compound. Asked and answered.
19    THE WITNESS: Well, so I think -- I'm not sure
20  what you're getting at. But if you -- if you removed
21  wholesale the one command key and its -- the box -- if
22  you remove the command key and the -- and the token in
23  30e, so you had one box with a generic command component
24  and a corresponding command action value and one box only
25  with a generic command component and no command action

Page 66

1  value, that would not meet the limitation.
2  BY MR. JAFFE:
3      Q.  Even though the generic command components are
4  both associated with one command action value?
5      A.  I don't --
6      MR. ROSEN:  Objection.  Vague.  Assumes facts.
7  Argumentative.
8      THE WITNESS:  I don't --
9      MR. ROSEN:  Asked and answered.
10      THE WITNESS:  If you removed the command action
11  value, I don't know how you would accomplish the
12  association.  I proposed a way, just change the number to
13  be the same number, but...
14  BY MR. JAFFE:
15      Q.  I see what you're saying.  The only way, in your
16  opinion, to have an associated command action value is to
17  have these pairs that are discussed here, right?
18      MR. ROSEN:  Objection.  Misstates prior
19  testimony.  Vague.  Incomplete hypothetical.
20      THE WITNESS:  No.  This is -- this is a picture
21  of an association.  How that's accomplished is a matter
22  of implementation.
23  BY MR. JAFFE:
24      Q.  How else could I implement having two generic
25  command components and one command action value that

Page 67

1  would be different from what's shown in Figure 2 then?
2      MR. ROSEN:  Objection.  Incomplete hypothetical.
3  Vague.  Calls for a narrative.
4      THE WITNESS:  So if you wished for the same
5  command action value to be attached to two different
6  generic command components in the same element, you'd
7  just, in this picture, just write the same number in the
8  box under CK.  As I said before, the same -- if you
9  wanted both -- both to do command action value 2, you'd
10  write the 2 over the 4 which is labeled 32.
11  BY MR. JAFFE:
12      Q.  Is there any other way to do that?
13      MR. ROSEN:  Objection.  Asked and answered.
14  Vague.  Incomplete hypothetical.
15      THE WITNESS:  Sure.
16  BY MR. JAFFE:
17      Q.  What's an example of another way that I could
18  have two generic command components and one associated
19  command action value in one element of a command parse
20  tree?
21      A.  One --
22      MR. ROSEN:  Excuse me.  Same objections.
23      THE WITNESS:  One action value associated with
24  each.
25  //

Page 68

1  BY MR. JAFFE:
2      Q.  With both?
3      A.  With both.
4      Q.  Yes.
5      A.  You could -- you could draw a picture that had a
6  little arrow inside the element, a pointer from the
7  generic command component to the command action value.
8  That would be the equivalent of having two copies.
9      Q.  What if I had an arrow from the generic command
10  component that went to the next generic command component
11  and then went to the command action value?
12      MR. ROSEN:  Objection.  Vague.  Incomplete
13  hypothetical.
14      THE WITNESS:  What would that mean?
15  BY MR. JAFFE:
16      Q.  Sure.  Why don't -- seeing as every other
17  deponent has drawn something, why don't I draw something
18  and we'll talk about it.
19      A.  All right.
20      MR. JAFFE:  Let's make this Exhibit 3000 -- I
21  think we're on 3?
22      THE REPORTER:  Four.
23      MR. JAFFE:  Four.  Let me hand this -- I'm going
24  to hand this to opposing counsel before I hand it to you
25  guys -- to the witness, so you'll have an opportunity to

Page 69

1  look at it.  And if you don't mind, Dr. Clark, handing
2  that to the court reporter so that he can mark it as an
3  exhibit.
4      (Exhibit 3004 marked.)
5  BY MR. JAFFE:
6      Q.  Dr. Clark, I have handed you something that I
7  just drew, and I apologize for my handwriting in advance
8  and my drawing skills.
9      What I'd like you to consider is this modified
10  version of part of the command parse tree in Figure 2.
11  Do you understand what this is depicting with that
12  explanation, or no?
13      MR. ROSEN:  I'll object that the diagram
14  represents an incomplete hypothetical and is vague.
15      THE WITNESS:  I beg your pardon.  I don't
16  completely understand how this -- what this represents.
17  BY MR. JAFFE:
18      Q.  So what this is intended to represent is one
19  element of a command parse tree modified from what's in
20  Figure 2.  And in particular, do you see that udp
21  course -- is listed as corresponding to token 6 in Figure
22  2?
23      MR. ROSEN:  Objection.  Vague.
24      THE WITNESS:  I think that's 7, but...
25  //

Page 70

1  BY MR. JAFFE:
2    Q.   Oh, excuse me.  tcp.
3    A.   tcp is 6.
4    Q.   And then udp is 7?
5    A.   Yes.
6    Q.   And then do you see in element 24b that we've
7  been discussing, there's similarly 6 and 7?
8    A.   Yes.
9    Q.   So what I've attempted to depict is those
10  strings included within an element within Figure 2.
11   A.   Yes.
12   Q.   So with that further explanation, do you
13  understand what is being depicted in this drawing that
14  I've created?
15   A.   No.
16   Q.   Okay.  What is still -- do you have any
17  questions about that maybe I can help with?
18   A.   Is the -- is the dot labeled with "reference,"
19  "return" or -- what is that (indicating)?
20   Q.   Sure.  So do you remember -- I see.  Do you
21  remember when we were discussing earlier an
22  object-oriented implementation of what's in Figure 2?
23   A.   Yes.
24   Q.   And you said that there could be a reference
25  within the object to a function and that would correspond

Page 71

1  to a command action value?
2    A.   Yes.
3    Q.   Okay.  Now, that's what I was attempting to
4  depict.
5    A.   All right.
6    Q.   So with that understanding, do you understand
7  that the reference and function line there in the drawing
8  as 3004?
9    A.   So I'm inferring that you meant this to be
10  directional, going from left to right.  The reference
11  points to the function?
12   Q.   Yes.
13   A.   Not the other way.
14   Q.   Yes.  And you can an -- feel free to annotate it
15  if you'd like.
16   A.   Then it would be another figure, another --
17  another exhibit.
18        So you intend the reference to be a pointer to
19  the command action -- the prescribed command, the actual
20  command.  The reference is the command action value.  You
21  haven't shown any connection to the two command
22  components (indicating).
23   Q.   So that's exactly what I was going to ask.  So
24  looking at Exhibit 3004, without more information, can
25  you tell me whether this satisfies the elements of claim

Page 72

1  1 under the Court's claim construction?
2    A.   No.
3        MR. ROSEN:  Objection.  Incomplete hypothetical.
4  Vague.
5  BY MR. JAFFE:
6    Q.   What information would you need to determine
7  whether I've depicted -- what I've depicted in
8  Exhibit 3004 satisfies the claim 1 under the Court's
9  claim construction?
10       MR. ROSEN:  Objection.  Vague.  Incomplete
11  hypothetical.
12       THE WITNESS:  So the Court says:  Each element
13  specifies at least one command action value for each
14  generic command component.
15       So if you mean for this one to be shared by the
16  two of them (indicating), you would need some indication
17  in the picture that's what you meant.
18  BY MR. JAFFE:
19   Q.   And when you say "shared by the two of them,"
20  and I realize you're talking about my diagram?
21   A.   Informally, just -- that -- if you meant that
22  command action value to be the corresponding -- to be the
23  command action value for each of these (indicating), you
24  need some further depiction of that relationship.
25   Q.   Okay.  Now in an object-oriented system, if the

Page 73

1  object is holding all of these components within it,
2  including the generic command components and the
3  reference to the command action value or a reference to
4  the prescribed command, is that association enough to
5  satisfy what's in claim 1?
6        MR. ROSEN:  Objection.  Vague.  Compound.
7  Incomplete hypothetical.
8        THE WITNESS:  So, again thinking of Java, to
9  make this satisfy that limitation, you would need some
10  method, let's say, for connecting each of your two let's
11  call them string objects for the two command components,
12  you'd need some way to say "I'm on this one and I would
13  like its command action value," and that should get you
14  to the thing you've labeled "reference," and if you were
15  on the other one, udp, the thing you pulled out -- the
16  thing you next parsed out of the command was udp, you
17  would need another way, another way to -- a method,
18  probably the same method, just have different --
19  different arguments -- a way to get to the thing you've
20  labeled "reference."
21   Q.   Understood.  So in your understanding of what's
22  required by claim 1, at some level there has to be a
23  one-to-one correspondence between these individual
24  generic command components and their separate command
25  action values.  Is that fair?

Page 74

```
 1         MR. ROSEN:  Objection.  Misstates testimony.
 2 Vague.  Incomplete hypothetical.
 3         THE WITNESS:  I -- I think that's actually too
 4 strict.  One-to-one I don't think is required.  You could
 5 have -- this is obviously two-to-one (indicating).  And
 6 this would satisfy if -- once -- once you linked up the
 7 things as I -- as I mentioned in some way, this would
 8 satisfy the claim element.
 9 BY MR. JAFFE:
10    Q.   Fair.  So what you're saying is it doesn't have
11 to be one-to-one, but there has to at least be a
12 one-to-one correspondence and it could be one-to-two or
13 one-to-three or two-to-one or two-to-three?  Is that
14 fair?
15         MR. ROSEN:  Same objections.
16         THE WITNESS:  No.  If you said one-to-three,
17 that suggests to me one generic command would indicate
18 three -- have three corresponding command action values,
19 and I'm not sure that would even make sense.
20         But if you had -- you could share one command
21 action value between two command -- generic command
22 components.
23 BY MR. JAFFE:
24    Q.   But you are requiring at least a one-to-one
25 correspondence in terms of generic command components and
```

Page 75

```
 1 command action values, but there can be overlap in the
 2 command action values used?
 3    A.   I --
 4 BY MR. JAFFE:
 5    Q.   Is that right?
 6         MR. ROSEN:  Same objections and asked and
 7 answered.
 8         THE WITNESS:  I think I'm getting too mathy with
 9 the one-to-one.  There just must be some way to connect a
10 generic command component with its command action value,
11 and if it was the same as the command action value
12 from -- of one of its brother or sister generic command
13 components, I think that would still satisfy the claim
14 element.
15 BY MR. JAFFE:
16    Q.   Your understanding, though, is this pair
17 relationship has to be enforced.  Do you agree with that?
18         MR. ROSEN:  Same objections.
19         THE WITNESS:  Just -- it seems the plain
20 language of the claim and the construction, each element
21 specifies at least one command action value for each
22 generic command component.
23 BY MR. JAFFE:
24    Q.   So your understanding is there has to be --
25 under the Court's claim construction there has to be a
```

Page 76

```
 1 distinct pair relationship for each generic command
 2 component.  Is that fair?
 3         MR. ROSEN:  Same objections.
 4         THE WITNESS:  I think that's about right.
 5 BY MR. JAFFE:
 6    Q.   Now, looking at Figure 2, is the element Root
 7 part of the command parse tree in Figure 2?
 8    A.   Root is not an element, so no.
 9    Q.   Why is Root not an element of the command parse
10 tree?
11         MR. ROSEN:  Objection.  Vague.
12         THE WITNESS:  The box with the word "Root" in it
13 is a signpost that indicates which element of the command
14 parse tree is the root.
15 BY MR. JAFFE:
16    Q.   So the box labeled Root is not the root element
17 itself?
18    A.   It identifies the root element.
19         MR. ROSEN:  Same objection.
20         THE WITNESS:  And that --
21         It identifies the root element as being 24a.
22 BY MR. JAFFE:
23    Q.   Can you have a generic command component that
24 includes more than one word?
25         MR. ROSEN:  Objection.  Vague.  Incomplete
```

Page 77

```
 1 hypothetical.
 2         THE WITNESS:  I would need to look and see in
 3 the specification what there is about a component.
 4 BY MR. JAFFE:
 5    Q.   Would you go ahead and do that.
 6    A.   I'm ready for your question again.
 7    Q.   Now that you've had the opportunity to review
 8 the patent specification in its entirety, can you tell me
 9 whether you can have a generic command component that
10 includes more than one word?
11         MR. ROSEN:  Objection.  Vague.  Incomplete
12 hypothetical.
13         THE WITNESS:  I would say no.  I think the
14 command component language in the -- so I discovered -- I
15 didn't review the entire specification, although it may
16 have seemed like it.  The specification uses the word
17 "word" for one space delimited component of a command.  I
18 think it -- in my -- in my reading, I did not see command
19 component, I saw "command word" over and over, and yet in
20 the claim it's a command component.  And since they're
21 talking about the same thing, I believe that command
22 component in the claims is a synonym for command word in
23 the specification.
24    Q.   Okay.  We've been going I think around another
25 hour.  Dr. Clark, do you want to pause now or proceed a
```

Page 78

1  little bit longer and then have lunch?  Up to you.
2      A.  Define longer.
3      Q.  Twenty minutes?
4      A.  I can do 20.
5      Q.  Okay.  I want to go back to your expert report.
6  A little while ago we started with paragraph 74 on page
7  27 of your expert report.  You seem to be looking at the
8  claim construction order.
9      A.  Do I?  It doesn't have enough pages, that's one
10  thing.  Do you want me to go to a page?
11      Q.  Page 27, paragraph 74, please.  Remember, we
12  were discussing the sentence that says "To the extent
13  Cisco reads" in paragraph 77?
14      A.  Yes.
15      Q.  The sentence reads:  "To the extent Cisco
16  reads this limitation as not requiring every
17  single element of the tree to have a
18  corresponding at least one command action value,
19  it is my opinion that IOS 12 practiced this
20  limitation for the reasons that follow."
21          Do you see that?
22      A.  Yes.
23      Q.  So in that sentence, your opinion is that to
24  satisfy claim 1 you need to have at least one
25  corresponding command action value.  Is that right?

Page 79

1          MR. ROSEN:  Objection.  Misstates the document.
2          THE WITNESS:  So my reading of the Court's
3  construction requires a command action value for each
4  generic command component, but I understand that Cisco
5  has an interpretation that does not require every single
6  element to have a corresponding command action value, and
7  if that were -- if that prevailed, then -- then this
8  system would practice that claim element.
9  BY MR. JAFFE:
10      Q.  Under your understanding of the Court's claim
11  construction order, do any prior art references
12  anticipate the asserted claims?
13      A.  I assume you mean any of my four.
14      Q.  That you're aware of.
15          MR. ROSEN:  Objection.  Asked and answered.
16          THE WITNESS:  My reading of the claim
17  construction order says that there should be a command
18  action value in each element of the command parse tree
19  going along with a command component, every one of those
20  that's in an element of the command parse tree.  But on
21  the other hand, if -- if the Cisco interpretation
22  prevails -- so, sorry, if the Cisco interpretation
23  prevails, then all of these -- all of the references read
24  on the -- I'm using legal lingo probably incorrectly.
25  All of the references practice the -- the claim element.

Page 80

1  BY MR. JAFFE:
2      Q.  My question was a little bit different.  Let me
3  try one more time.
4      Under the Court's -- under your understanding of
5  the Court's claim construction properly read, do any of
6  the references that you discussed in your report
7  anticipate the asserted claims?
8          MR. ROSEN:  Objection.  Asked and answered.
9          THE WITNESS:  So my opinion involves the
10  competing readings of the claim construction.  So the
11  first part of my opinion is that since the command action
12  value in my opinion is -- interpretation of the claim
13  construction is required in every -- with every
14  command -- command component, that is -- that is not seen
15  in any of these references except that part two of my
16  opinion is that under the Cisco interpretation it's seen
17  in all of these references.
18  BY MR. JAFFE:
19      Q.  Do you agree with Cisco's interpretation?
20      A.  So --
21          MR. ROSEN:  Objection.  Vague.
22          THE WITNESS:  I do not.
23  BY MR. JAFFE:
24      Q.  Okay.  So I want to ask you about the opinions
25  that you agree with based on your understanding of the

Page 81

1  claim construction order.  Are you with me?
2      A.  Yes.
3      Q.  Okay.  Under that understanding, do you have any
4  opinions, sitting here today, that any prior art
5  reference discussed in your reports anticipates the
6  asserted claims of the '526 patent?
7          MR. ROSEN:  Objection.  Asked and answered.
8          THE WITNESS:  Same answer.  And it feels like
9  you're asking for one half of my opinion on this, and I'd
10  like to give both halves when I give my opinion.
11  BY MR. JAFFE:
12      Q.  So the disconnect is I'm asking for your opinion
13  as the prior -- claims are construed applied properly.
14  Do you have an opinion under that interpretation of the
15  claims?
16          MR. ROSEN:  Objection.  Asked and answered.
17  Vague.
18          THE WITNESS:  I have said that under my
19  interpretation of the -- of the claim construction and
20  the claim, these references lack a command action value
21  in each and every element, but if that's not really
22  required then they do practice that element of the
23  patent.
24  BY MR. JAFFE:
25      Q.  Have you ever reviewed Junos 4.0 source code?

Page 86

```
 1   answered.
 2        THE WITNESS:  Assuming I could have back the
 3   dec -- the constructions I used in that declaration, yes.
 4   BY MR. JAFFE:
 5        Q.   That declaration was true and accurate
 6   description of your opinions at the time you signed it,
 7   right?
 8        A.   Yes.
 9        Q.   Now, if you could turn to page 79 of --
10        MR. ROSEN:  Same objections to the previous
11   question.
12   BY MR. JAFFE:
13        Q.   -- your report.
14        A.   Okay.
15        Q.   Do you see there's a diagram at the top of page
16   79 of your opening expert report?
17        A.   Yes.
18        Q.   What does that diagram depict?
19        A.   It is a piece of the parse tree for
20   Martinez-Guerra and for just one command.
21        Q.   What command is that?
22        A.   Delete a file.
23        Q.   Does the parse tree, the partial parse tree that
24   you've depicted here on page 79, does that meet the
25   Court's claim construction for claim 1?
```

Page 87

```
 1        MR. ROSEN:  Objection.  Vague.  Incomplete
 2   hypothetical.  Compound.
 3        THE WITNESS:  No.
 4   BY MR. JAFFE:
 5        Q.   Why not?
 6        A.   Because the Court wanted the command action
 7   value -- value to -- what did they say?  Command action
 8   value identifies a prescribed command, and "error" does
 9   not do that.
10        Q.   But your opinion as expressed in your report is
11   that "error" does qualify as a command action value in
12   Martinez-Guerra, isn't it?
13        MR. ROSEN:  Objection.  Vague as to "report."
14        THE WITNESS:  Of course, I didn't have the
15   Court's claim construction when this was done.
16        I lost your question.
17   BY MR. JAFFE:
18        Q.   Your opinion, as expressed in your opening
19   invalidity report, is that the error functionality is a
20   command action value in Martinez-Guerra; true?
21        A.   Yes, in light of the constructions that were --
22   that I was considering at the time.
23        Q.   What construction were you considering for
24   command action value at the time?
25        A.   A command that would be executed when the -- the
```

Page 88

```
 1   matching command component was the last valid thing seen.
 2        Q.   So why wouldn't -- actually, what's the Court's
 3   claim construction for command action value?
 4        A.   A value that identifies a prescribed command.
 5        Q.   And how is that different from the command
 6   action value interpretation that you used when you
 7   prepared your opinions for your opening expert report?
 8        A.   I didn't regard that as requiring the command
 9   action value to be a prescribed -- to identify a
10   prescribed command.  I thought that throwing an error
11   would be a perfectly good command action value.
12        Q.   In your opinion, an error does not identify a
13   prescribed command?  Is that right?
14        MR. ROSEN:  Objection.  Vague.  Misstates
15   testimony.  Incomplete hypothetical.
16        THE WITNESS:  I don't want to say that an error
17   couldn't ever be a prescribed command, but in this case I
18   don't think it is.
19   BY MR. JAFFE:
20        Q.   And you've never expressed the opinion that the
21   error reporting functionality identifies a prescribed
22   command?  Is that right?
23        MR. ROSEN:  Objection.  Misstates testimony.
24        THE WITNESS:  I believe so, but would need to
25   check.
```

Page 89

```
 1   BY MR. JAFFE:
 2        Q.   So it's possible you could have expressed that
 3   opinion and you just don't recall?
 4        A.   Yes.
 5        Q.   Let's turn to paragraph 225 of your report,
 6   please.
 7        MR. ROSEN:  It's been an hour and 20 minutes.
 8   Would you like to break?
 9        MR. JAFFE:  So we can -- as soon as we finish up
10   with this series of questions.
11        THE WITNESS:  You're getting to a breaking
12   point?  I'm sorry, a break point?
13        MR. JAFFE:  Yes, as soon as I finish up with
14   this series of questions.
15        THE WITNESS:  That would be fine.
16   BY MR. JAFFE:
17        Q.   So you're looking at paragraph 225?
18        A.   Yes.
19        Q.   Do you see about midway through the page it
20   says:
21        "The instruction to return an error that
22        results from inputting an invalid word or an
23        incomplete sequence (e.g., inputting 'delete'
24        without a target path name), or the translation
25        function that results from inputting a complete
```

Page 90

1    and valid sequence of tokens (e.g.,
2    'delete/usr/extract/testing') is what the "52
3    patent refers to as a command action value."
4         Do you see that?
5    A.    Yes.
6    Q.    Did I read that accurately into the record?
7    A.    Yes.
8    Q.    Do you stand by that opinion?
9         MR. ROSEN:  Objection.  Vague.  Assumes facts.
10        THE WITNESS:  I do not in view of the Court's
11   construction of command action value.
12   BY MR. JAFFE:
13   Q.    What part of the Court's claim construction for
14   command action value changes whether error reporting
15   qualifies as a command action value?
16        MR. ROSEN:  Objection.  Asked and answered.
17        THE WITNESS:  The part about identifying --
18   identifying a prescribed command.
19   BY MR. JAFFE:
20   Q.    Did you analyze the Martinez-Guerra reference
21   under Arista's proposed constructions?
22   A.    I hope I did.  Not well enough.
23   Q.    What do you mean by that?
24   A.    I read that Arista construction for elements
25   included the command action value is a piece of data that

Page 91

1    uniquely represents the prescribed command.
2    Q.    And you opine that the limitation 1C was met
3    under Arista's proposed construction in your report,
4    right?
5    A.    All right, let me...
6         I did.
7    Q.    So under Arista's proposed construction of
8    command action value as a piece of data that uniquely
9    represents the prescribed command, the error reporting
10   functionality in Martinez-Guerra constitutes a command
11   action value in the opinion you expressed in your opening
12   expert report, correct?
13   A.    Yes.
14   Q.    Okay.  So and then just a couple more questions
15   and then we can take our lunch break here.
16        Looking back at the figure on page 79 of your
17   report, does what's described in this figure on page 79
18   meet the Court's claim construction for claim 1 for the
19   command parse tree limitation?
20        MR. ROSEN:  Objection.  Asked and answered.
21        THE WITNESS:  So it -- it does not, but under
22   the Cisco reading of that limitation, it does.
23   BY MR. JAFFE:
24   Q.    Why does it not meet the limitation of claim 1?
25   A.    The Court wanted command action value to

Page 92

1    identify a prescribed command.
2    Q.    So I guess I'm confused here because you have
3    two elements that are drawn here on page 79, right?
4    A.    Yes.
5    Q.    And taking the first element, it has one generic
6    command component, right?
7    A.    Yes.
8    Q.    And one command action value.  Correct?
9    A.    Yes.
10   Q.    The other element on this page has one generic
11   command component, right?
12   A.    Yes.
13   Q.    And one command action value.  Right?
14   A.    Yes.
15   Q.    So wouldn't you agree that what you've drawn
16   here on page 79 of your report is a command parse tree
17   having elements such that each element specifies at least
18   one command action value for each generic command
19   component?
20   A.    Yes.
21        MR. JAFFE:  Okay.  Why don't we take our lunch
22   break.
23        THE VIDEOGRAPHER:  All right.  This marks the
24   end of disc 2, volume I.  The time is 12:03 p.m. and we
25   are off the record.

Page 93

1         (Lunch recess from 12:03 to 1:05 p.m.)
2         THE VIDEOGRAPHER:  All right.  This is the start
3    of disc 3, volume I.  The time is 1:05 p.m. and we are
4    back on the record.
5    BY MR. JAFFE:
6    Q.    Welcome back.
7    A.    Thanks for lunch.
8    Q.    Before we went to lunch, one of the things we
9    spoke about this morning was paragraph 74 of your opening
10   expert report and, in particular, the second to last
11   sentence in that paragraph which starts by saying, quote:
12   "To the extent Cisco reads this limitation as not
13   requiring every single element of the tree to have a
14   corresponding at least one command action value," and
15   then it continues.  Do you see?
16   A.    Yes.
17   Q.    Am I correct that the flip side of that sentence
18   is essentially if the limitation requires every single
19   element of the tree to have a corresponding at least one
20   command action value?
21        MR. ROSEN:  Objection.  Vague.
22        THE WITNESS:  Not sure what flip side is.
23   BY MR. JAFFE:
24   Q.    So the opposite of what you're saying, to the --
25   that is, the thing that you are talking about is looking

Page 94

1  whether every single element of the tree has a
2  corresponding at least one command action value. Right?
3        MR. ROSEN:  Same objection.
4        THE WITNESS:  Yes.
5  BY MR. JAFFE:
6     Q.  Okay.  In your opinion, if the claim requires
7  that every single element of the tree to have a
8  corresponding at least one command action value, IOS 12
9  does not anticipate or render obvious the asserted claims
10 of the '526 patent; true?
11       MR. ROSEN:  Objection.  Compound.
12       THE WITNESS:  So again I'll say that my opinion
13 on this has two parts, and the first part is that under
14 the Court's construction I do not think IOS 12 practices
15 this particular limitation, but part two is that, well,
16 that's my interpretation of the claim construction but
17 there's this other interpretation of the claim
18 construction, and under that IOS 12 does practice it.
19 BY MR. JAFFE:
20    Q.  So my question is in the context of the opinions
21 that you expressed in your invalidity report that was
22 issued before the Court's claim construction --
23    A.  Okay.
24    Q.  -- order.  In the opinions that you expressed in
25 your report, would you agree that because IOS 12 does not

Page 95

1  satisfy the requirement that every single element of the
2  tree has a corresponding at least one command action
3  value, it doesn't anticipate or render obvious the
4  asserted claims of the '526 patent?
5        MR. ROSEN:  Objection.  Vague.  Compound.  Asked
6  and answered.
7        THE WITNESS:  So that -- my interpretation of
8  this limitation requires this presence of the command
9  action value in every element, but that may not -- that's
10 my interpretation, and there is this other interpretation
11 under which it does.
12 BY MR. JAFFE:
13    Q.  So I want to talk about under your
14 interpretation.  Your interpretation --
15    A.  I have to -- okay.  Go ahead.
16    Q.  Under your interpretation, as the claims are
17 properly read in your view, IOS 12 does not anticipate or
18 render obvious the asserted claims of the '526 patent;
19 true?
20       MR. ROSEN:  Same objections.
21       THE WITNESS:  I cannot separate my view of that
22 from this contingency that there is a competing
23 interpretation under which it would.  It's -- I can't.
24 BY MR. JAFFE:
25    Q.  Let's turn to -- and you say competing

Page 96

1  interpretation of what?
2        MR. ROSEN:  Objection.  Vague.
3        THE WITNESS:  The limitation of 1C as not -- as
4  requiring every single element to have a corresponding at
5  least one command action value.
6  BY MR. JAFFE:
7     Q.  Okay.  Now for my next question I want you to
8  assume that limitation 1D requires every single element
9  of the tree to have a corresponding at least one command
10 action value.
11    A.  1D, did you say?
12    Q.  Yes.
13    A.  Okay.
14    Q.  If you assume that limitation 1D requires every
15 single element of the tree to have a corresponding at
16 least one command action value, you have no opinion that
17 IOS 12 anticipates or renders obvious claim 1 of the '526
18 patent; true?
19       MR. ROSEN:  Objection.  Misstates prior
20 testimony.  Asked and answered.  Vague.
21       THE WITNESS:  I guess it's hype -- you're
22 proposing a hypothetical situation in which there was no
23 other interpretation?  No.  Let me back up.
24       You're proposing that the limitation is hard and
25 fast and not interpreted in any other way.  So if there

Page 97

1  were no -- if for some reason in some world there was
2  only one interpretation of this limitation and that
3  limitation -- that interpretation -- that would be the
4  limitation I favor that every element have a command
5  action -- whatever the language is, a corresponding at
6  least one command action value, then IOS doesn't -- IOS
7  12 doesn't have that, but that world is not the world
8  we're in.
9        MR. JAFFE:  Can you repeat my question, please?
10       (Question read as follows:
11       "Q.  If you assume that limitation 1D
12       requires every single element of the tree to
13       have a corresponding at least one command action
14       value, you have no opinion that IOS 12
15       anticipates or renders obvious claim 1 of the
16       '526 patent; true?")
17       THE WITNESS:  I just --
18       MR. ROSEN:  Same objections.
19       THE WITNESS:  I would answer the same way.  I
20 can't divorce my... my opinion about from the
21 possibility that -- that the Cisco interpretation
22 prevails, and under that...
23 BY MR. JAFFE:
24    Q.  So even where you assume the caveat that you're
25 including, you still won't admit the scope of your

Page 98

```
 1  opinions?  I'm having trouble understanding --
 2     A.  Wait.  Assume the caveat --
 3     MR. ROSEN:  Objection.  Asked and answered.
 4     THE WITNESS:  Assume the caveat?
 5  BY MR. JAFFE:
 6     Q.  So your report says to the extent that --
 7  something.  Do you see that?
 8     A.  Yes.
 9     What I'm asking you is assume that to that
10  extent does not apply.
11     A.  Could I --
12     MR. ROSEN:  Objection.
13     MR. JAFFE:  So -- go ahead.
14     MR. ROSEN:  Objection.  Argumentative.  Asked
15  and answered.
16     THE WITNESS:  So how about this:  What if I
17  changed that sentence to be:  Cisco does not read this
18  limitation as not requiring every single --
19  BY MR. JAFFE:
20     Q.  I'm not asking you to opine on what Cisco --
21  Cisco's views.  I'm asking about your opinions as an
22  expert.  Do you understand that?
23     A.  Yes.
24     Q.  Okay.  Now, your report -- which you wrote,
25  right?
```

Page 99

```
 1     A.  Yes.
 2     Q.  It says to the extent that Cisco does X.  Do you
 3  see that?
 4     A.  Um-hmm.
 5     Q.  In paragraph 77.
 6     A.  Yes, I see that.
 7     Q.  I'm asking you to assume that the limitation
 8  does require every single element of the tree to have a
 9  corresponding at least one command action value.  Do you
10  understand that?
11     A.  Yes.
12     Q.  Okay.  With that assumption, you have no
13  validity opinions regarding IOS 12, right?
14     A.  If you --
15     MR. ROSEN:  Objection.  Asked and answered.
16     THE WITNESS:  If you exclude the -- if you
17  exclude the caveat, and I would say, you know, negate the
18  caveat, say Cisco does not read this limitation as not
19  requiring every -- then I wouldn't have a view on
20  anticipation.
21  BY MR. JAFFE:
22     Q.  So if limitation 1D requires every single
23  element of the tree to have a corresponding at least one
24  command action value, you have no validity opinions
25  regarding IOS 12, right?
```

Page 100

```
 1     MR. ROSEN:  Objection.  Misstates prior
 2  testimony.  Asked and answered.
 3     THE WITNESS:  I might add that the limitation
 4  requires that and everybody agrees that it does.
 5  BY MR. JAFFE:
 6     Q.  Is that a yes or a no?  I'm not --
 7     MR. ROSEN:  Objection.  Asked and answered.
 8     THE WITNESS:  It's not a complete yes.  Or -- I
 9  forget whether we -- which -- whether we're negating
10  something, but --
11  BY MR. JAFFE:
12     Q.  Sir, why does your opinion regarding the scope
13  of the claim depend on Cisco's views?
14     A.  My interpretation of the scope of the claim
15  is -- is the one I favor, but I -- but I know that
16  there's another interpretation abroad, and I want to
17  address that in particular since, under my
18  interpretation, this system does not practice this
19  limitation but under the Cisco imp -- limitation it does.
20     Q.  And you're not willing to assume that your
21  interpretation applies and answer questions on that
22  basis?
23     MR. ROSEN:  Objection.  Vague.  Misstates
24  testimony.  Asked and answered.
25     THE WITNESS:  So if I assume that my
```

Page 101

```
 1  interpretation rules in every matter in this case, then
 2  that's where I'd be.
 3  BY MR. JAFFE:
 4     Q.  Under your view of the claims, none of the prior
 5  art references that you've identified invalidate the
 6  asserted claims, right?
 7     MR. ROSEN:  Objection.  Argumentative.  Asked
 8  and answered.
 9     THE WITNESS:  If I assume that my interpretation
10  prevails, then that's correct.  That is, I'm assuming
11  that there is no need for a caveat because that never
12  occurs because everybody agrees.  You've got to have a
13  command action value.
14  BY MR. JAFFE:
15     Q.  So under your -- your view of the claim language
16  is that every single element of the tree has to have a
17  corresponding at least one command action value.  Right?
18     MR. ROSEN:  Objection.  Asked and answered.
19  Vague.
20     THE WITNESS:  That is my -- that is my view, but
21  my opinion includes the caveat.
22  BY MR. JAFFE:
23     Q.  What do you mean by "the caveat"?
24     A.  The "to the extent" caveat.
25     Q.  Okay.  I don't think that makes any sense, but
```

Page 102

1  I'm going to move on.

2          Let's go to limitation 1E.

3      A.   Yes.

4      Q.   What is the best match functionality in IOS 12?

5          MR. ROSEN:  Objection.  Vague.

6          THE WITNESS:  The best match functionality in

7  IOS 12 is the matching of all of the command -- generic

8  command components to successful completion.

9  BY MR. JAFFE:

10     Q.   Would it be fair to call that exact matching?

11          MR. ROSEN:  Objection.  Vague.

12          THE WITNESS:  Yes.

13  BY MR. JAFFE:

14     Q.   Other than an exact match, you don't identify

15  any other matching done in IOS 12 that satisfies this

16  best match limitation, right?

17     A.   Right.

18     Q.   So if you just have exact matching, in your

19  opinion, that's sufficient to practice the best match

20  limitation, right?

21          MR. ROSEN:  Objection.  Misstates testimony.

22          THE WITNESS:  I'm saying that this -- so ask

23  again?

24  BY MR. JAFFE:

25     Q.   If you just have exact matching like you do here

Page 103

1  in IOS 12, in your opinion, that's sufficient to show and

2  practice the best match limitation in claim 1 of the '526

3  patent, right?

4          MR. ROSEN:  Same objection.

5          THE WITNESS:  Yes.

6  BY MR. JAFFE:

7      Q.   What happens if I type in an invalid command

8  into IOS 12?

9      A.   I do not know, but I assume that -- that it

10  wouldn't work.

11     Q.   Does that matter for your opinions?

12     A.   No.

13     Q.   Why not?

14          MR. ROSEN:  Objection.  Vague as to the previous

15  question.

16          THE WITNESS:  I don't -- so the claim

17  construction order went into this.  May I talk about

18  that?

19  BY MR. JAFFE:

20     Q.   You can talk about whatever you want in response

21  to my question.  So my question is:  If IOS 12 did not

22  respond to invalid commands, does that affect your

23  invalidity opinions?

24     A.   So if I look at --

25          MR. ROSEN:  Objection.  Vague.

Page 104

1          THE WITNESS:  So the Court addressed this and

2  proposed plain and ordinary meaning for best -- the best

3  match functionality, and the Court went on to say that...

4  that on page 12, starting around line 20:  "First, the

5  plain and ordinary meaning of the term accurately conveys

6  that the validating step is not limited to valid commands

7  but also includes situations involving invalid commands."

8          So I interpret this to mean that -- that the

9  plain meaning, the plain and ordinary meaning of best

10  match means matching as many words as you can of the

11  command even if you can't match all of the command -- all

12  of them, and that behavior I have not shown in IOS 12.

13  BY MR. JAFFE:

14     Q.   So in your opinion, IOS 12 doesn't meet the best

15  match limitation under the Court's claim construction?

16          MR. ROSEN:  Objection.  Misstates testimony.

17          THE WITNESS:  That is true.

18  BY MR. JAFFE:

19     Q.   Okay.  Let's talk about your opinions on the

20  Audix system, the Definity Audix system I think you refer

21  to as.

22          When was the first time you heard of this

23  Definity Audix system?

24     A.   In the fall sometime of last year.

25     Q.   And that was in context of this litigation?

Page 105

1      A.   I believe the context was -- it might have

2  been -- yes.  Either this litigation or the IPR.

3      Q.   Before you started work as an expert witness on

4  this case, had you ever heard of the Lucent Avaya

5  Definity Audix?

6      A.   No.

7      Q.   And I take it you've never used the Lucent Audix

8  Definity Audix system, right?

9      A.   I've never used it as an administrator.  I might

10  have used it as a customer.  I don't know.

11     Q.   Who picked the invalidity references that are

12  found in your opening report?

13     A.   I helped choose them from a larger number that

14  were offered.

15     Q.   Now, for the Definity Audix system, what is your

16  basis to opine that this was released before the '526

17  patent was filed?

18     A.   The existence of the manuals and the date of

19  existence of the manuals.

20     Q.   Do you identify any other basis in your report

21  to show that the Definity Audix system was released

22  before the '526 patent was invented?

23          MR. ROSEN:  Objection.  Vague.

24          THE WITNESS:  Just the dates on the manuals.

25  //

Page 106

```
 1  BY MR. JAFFE:
 2      Q.   How do you know that what is described in these
 3  manuals describes how the actual Definity Audix system
 4  worked in 1999?
 5      A.   I just believe them, I guess.  I don't know why
 6  they would print -- they would make manuals for their
 7  system that didn't tell the truth.  That would be pretty
 8  unusual.
 9      Q.   You are relying on the Audix system as the prior
10  art, not the manuals.  Right?
11      A.   Yes.
12      Q.   Okay.  What evidence do you have that -- about
13  that system other than the manuals?
14      A.   None.
15      Q.   Okay.  When did the Definity Audix system go on
16  sale?
17      A.   I do not know.
18      Q.   When was it released to the public?
19      A.   I do not know, although the dates on the manuals
20  suggest around then.
21      Q.   With regard to the Definity Audix system, did
22  you review any source code?
23      A.   No.
24      Q.   You've never seen the source code for the
25  Definity Audix system, right?
```

Page 107

```
 1      A.   I didn't review it, so I didn't see it.
 2      Q.   Okay.  Let's turn to page 56 of your report,
 3  paragraph 155.  Are all the commands in the Definity
 4  Audix system generic commands?
 5           MR. ROSEN:  Objection.  Vague.
 6           THE WITNESS:  So confining ourselves --
 7           MR. ROSEN:  And compound.  Excuse me.
 8           THE WITNESS:  Confining ourselves to what the --
 9  the -- so I'm trying not to answer for customers who
10  might use commands to get their messages.  We're not
11  talking about that.  We're talking about administrators
12  using the system to manage the phone messaging.
13           So those people -- for those people, I think all
14  of these commands are generic commands.  The commands in
15  Table 1, Table 2.1 -- 2-1.
16  BY MR. JAFFE:
17      Q.   Are you aware of commands for the Audix system
18  other than the generic commands?  I'm referring to CLI
19  commands.
20           MR. ROSEN:  Objection.  Vague.
21           THE WITNESS:  I am not.
22  BY MR. JAFFE:
23      Q.   For the generic commands that you identify for
24  limitation 1B, what are the management programs in the
25  Audix system?
```

Page 108

```
 1      A.   So one example is the ping command.  That would
 2  be a management program.
 3           Did you say for 1D?
 4      Q.   B as in boy.  Maybe I misspoke.
 5      A.   No, I misheard.  So ping is one.
 6      Q.   Other than the ping command, you don't identify
 7  any other management programs for the Audix system,
 8  right?
 9      A.   I don't identify a print management program, but
10  I -- I suggest it at the end of... of paragraph 152.
11  There's an example -- pardon my cough.
12           There's an example of a generic command to
13  print, and that would invoke a management program that
14  knew something about the printers, though I didn't
15  identify it by name.
16      Q.   You didn't identify the management program that
17  works with the print display system parameters feature
18  command?
19      A.   I didn't.
20      Q.   Right?
21      A.   I didn't.
22      Q.   Okay.  In your opinion, the Unix ping command
23  satisfies Cisco's proposed construction of management
24  program, right?
25      A.   Yes.
```

Page 109

```
 1      Q.   So in your opinion, the ping command is a
 2  separate tool or external agent that has its own
 3  respective command format that provides management
 4  functions.
 5      A.   Yes.
 6      Q.   How does the command test lan dest address you
 7  talk about in paragraph 152 identify a prescribed
 8  command?
 9      A.   Prescribed command...  Well, one of the manuals
10  says you type the command test lan dest address, and it
11  performs the Unix ping command which attempts to send a
12  packet, et cetera.  So the manual is telling us that you
13  type this and you get that.
14      Q.   Is that enough, in your opinion, to show that
15  the test lan command is an abstraction of the command
16  format for the ping command?
17           MR. ROSEN:  Objection.  Vague.
18           THE WITNESS:  It is an abstraction of the
19  ping -- the ping and other commands because the command
20  test can be used for other purposes.
21  BY MR. JAFFE:
22      Q.   Going back to our earlier conversation, in your
23  opinion under the proper interpretation of the claims as
24  construed by the Court, the Audix system does not
25  anticipate or render obvious any of the asserted claims;
```

Page 110

1  true?
2      A.   So that is my view of the... of the correct
3  reading of the claim constructions, but, again, there's
4  another view of that, and if the Cisco view is --
5  prevails, then this does practice the... the -- Audix
6  does anticipate the... the two claims.
7      Q.   Where do you say that in your report?
8      A.   In 158.
9      Q.   So the caveat that you're referring to is to the
10 extent that every single element of the tree has to have
11 a corresponding at least one command action value?
12     A.   You're paraphrasing?  You're not quoting?
13     Q.   Yeah.
14     A.   So paraphrase again?
15     Q.   Well, let me ask a different question.  And so
16 this is attempting to parallel the conversation that we
17 had earlier, but if you assume that limitation 1C of
18 claim 1 of the '526 patent requires every single element
19 of the tree to have a corresponding at least one command
20 action value, the Audix system does not anticipate and
21 render obvious any asserted claim of the '526 patent,
22 right?
23         MR. ROSEN:  Objection.  Asked and answered.
24         THE WITNESS:  If I assume that and -- and there
25 is no competition for that interpretation, then what you

Page 111

1  said is right.
2  BY MR. JAFFE:
3      Q.   And is that generally true with all the prior
4  art references that you analyzed in your expert report?
5          MR. ROSEN:  Objection.  Asked and answered.
6  Vague.  Compound.
7          THE WITNESS:  So let me put the -- let me say it
8  right.  If I'm right, if my view of the interpretation of
9  this claim language and the claim construction prevails,
10 as in, no one contests it in all venues, if I assume all
11 that, then none of the -- none of my four pieces of art
12 are practiced by -- sorry, practice the patent.
13 BY MR. JAFFE:
14     Q.   If you assume that the asserted claims of the
15 '526 patent require every single element of the tree to
16 have a corresponding at least one command action value,
17 none of the references that you've identified in your
18 report anticipate or render obvious the asserted claims;
19 true?
20         MR. ROSEN:  Objection.  Asked and answered.
21 Vague.
22         THE WITNESS:  So in my last answer --
23         MR. ROSEN:  Compound.
24         THE WITNESS:  In my last answer, I just wanted
25 to qualify the assumption to extend to some -- a somewhat

Page 112

1  more certain situation, namely, that I assume it and it's
2  actually true, I'm right, there's no contest, if that's
3  really true, then these do not invalidate or -- the
4  patent.
5  BY MR. JAFFE:
6      Q.   So is that a yes?
7          MR. ROSEN:  Same objections.
8          THE WITNESS:  It's what I said.
9          MR. JAFFE:  Can you read my last question back,
10 please?
11         (Question read as follows:
12         "Q.   If you assume that the asserted claims
13         of the '526 patent require every single element
14         of the tree to have a corresponding at least one
15         command action value, none of the references
16         that you've identified in your report anticipate
17         or render obvious the asserted claims; true?")
18         MR. ROSEN:  Same objections.
19         THE WITNESS:  Am I asked that again?
20 BY MR. JAFFE:
21     Q.   Yes.
22     A.   So yes, but I'd want the assumption strengthened
23 to exclude competing interpretations that might win out.
24 BY MR. JAFFE:
25     Q.   So maybe we're getting hung up on --

Page 113

1      A.   I think so.
2      Q.   -- what assuming means.
3      A.   Yeah.  Maybe.
4      Q.   What is your understanding of when you assume
5  something?
6      A.   So if -- if...
7          MR. ROSEN:  And I object to the question as
8  vague.
9          THE WITNESS:  Yes, I've given you too hard a
10 time.  I think you -- you're -- assume is -- assume that
11 it's really true, it's really -- assume X.  Then what is
12 a consequence of X?  That -- I don't -- I don't need any
13 contingencies.
14 BY MR. JAFFE:
15     Q.   Okay.  Let me try this again.  If you assume
16 that the asserted claims of the '526 patent require every
17 single element of the tree to have a corresponding at
18 least one command action value, none of the references
19 that you've identified in your report anticipate or
20 render obvious the asserted claims; true?
21         MR. ROSEN:  Objection.  Asked and answered.
22 Vague.  Compound.
23         THE WITNESS:  Under that assumption, that is
24 true.
25 //

Page 130

1   It could be that there's a translator for every command
2   key.  Maybe that's likely, even.  And I guess -- well, I
3   wouldn't want to speculate.  So it's just -- it's -- the
4   language here is not that clear about what this thing
5   does.
6   BY MR. JAFFE:
7       Q.   The Court's claim construction order issued on
8   June 15th, right?
9       A.   I believe you.
10      Q.   What date did you provide your rebuttal report?
11      A.   I forget.
12      Q.   Is that included in the binder sitting in front
13  of you?
14      A.   Yes.
15      Q.   Okay.  Do you want to look and see what date you
16  provided your rebuttal report?
17      A.   Yes, I do.  Signed on the 17th.
18      Q.   Did you apply the Court's claim constructions in
19  your rebuttal report?
20      A.   Yes.
21      Q.   So you had sufficient time to consider the
22  Court's claim construction opinions to opine under the
23  Court's constructions in your rebuttal report, right?
24      A.   Yes.
25      Q.   You didn't discuss your validity opinions,

Page 131

1   though, in your rebuttal report, right?
2       A.   Right.
3       Q.   Okay.  Based on the discussion that we had
4   today, is it fair to say that you don't actually have any
5   invalidity opinions under the Court's constructions,
6   sitting here today?
7           MR. ROSEN:  Objection.  Misstates testimony.
8           THE WITNESS:  Could we use -- do the assume
9   thing again?  Not taking all the time as before, but can
10  I assume that my interpretation of the Court's claim
11  construction is correct?
12  BY MR. JAFFE:
13      Q.   If you assume -- well, actually, I'm asking a
14  little bit of a different question.
15          In your expert report you expressed alternative
16  opinions under Cisco's proposed construction and Arista's
17  proposed constructions, right?
18      A.   Yes.
19      Q.   You didn't opine under the Court's constructions
20  because those didn't exist yet.  Right?
21      A.   Except where they -- they might have matched one
22  of the other constructions or were extremely close.
23      Q.   Otherwise, yes?
24      A.   Otherwise, yes.
25      Q.   Now that we have the Court's claim construction

Page 132

1   order, you don't have any invalidity opinions sitting
2   here today under the Court's claim construction order,
3   right?
4           MR. ROSEN:  Objection.  Vague.  Misstates prior
5   testimony.
6           THE WITNESS:  I want to say if I'm right in my
7   interpretation of the Court's claim constructions, then I
8   don't.
9   BY MR. JAFFE:
10      Q.   And when you're talking about your
11  interpretation of the Court's claim construction, you're
12  referring to the caveat in your expert report in
13  paragraph 77?  Is that right?
14      A.   I lost the front of the question.
15      Q.   When you're talking about your interpretation of
16  the Court's claim construction, you're referring to the
17  caveat that you expressed in paragraph 77 of your opening
18  expert report; is that right?
19      A.   Yes.
20      Q.   So to recap, if you assume that the Court's
21  claim construction requires every single element of the
22  tree to have a corresponding at least one command action
23  value, under the Court's claim construction, you don't
24  have any invalidity opinions, right?
25          MR. ROSEN:  Objection.  Vague.  Misstates prior

Page 133

1   testimony.  Compound.
2           THE WITNESS:  That is right.
3   BY MR. JAFFE:
4       Q.   Okay.  If you can turn back to the '526 patent,
5   what are the management programs identified in the '526
6   patent for the preferred embodiment?
7       A.   I read in column 3 management programs
8   implemented, for example, by a different OAM, which is
9   what, operation -- operating administration and
10  monitoring tools, such as realtime monitoring, yes.
11  Programs may be executed within the processor or
12  externally as external agents using a prescribed
13  application programming interface.  So things like that.
14  Things like operation -- operating administration and
15  monitoring and realtime monitoring.
16      Q.   So why don't you turn to Part A of the appendix
17  of the '526 patent.
18      A.   Okay.
19      Q.   Do you see the third row of the table under New
20  Syntax, it says "watch acb globals"?
21      A.   I see two of those, actually.
22      Q.   For the first one that's in the third row, I
23  was --
24      A.   There's one there and there's one -- I'm
25  indicating two different watch acb globals.

Page 150

1  bottom of page 13?
2      A.  Yes.
3      Q.  Do you see the Court construed the entire phrase
4  there?
5      A.  Yes.
6      Q.  Is that construction consistent with your
7  understanding of the claim language?
8      A.  Yes.
9          MR. JAFFE:  I pass the witness.
10              EXAMINATION
11 BY MR. ROSEN:
12     Q.  Dr. Clark, I'd like to turn back to
13 Exhibit 3003, the Court's claim construction order.
14     A.  Yes.
15     Q.  You did not have the claim construction order
16 when you submitted your opening report on invalidity,
17 correct?
18         MR. JAFFE:  Objection.  Leading.
19         THE WITNESS:  I did not.
20 BY MR. ROSEN:
21     Q.  Have you read the Court's claim construction
22 order?
23     A.  Yes.
24     Q.  Now that you have the order, would it change any
25 of your opinions in your report?

Page 151

1      A.  I would say it would not change the opinions
2  significantly, although I might adjust the language of
3  the report to accommodate the... the text of the -- of
4  the new constructions.
5          MR. JAFFE:  I'll object to the last question as
6  beyond the scope of the direct.
7  BY MR. ROSEN:
8      Q.  With regard to IOS 12, you testified earlier
9  that the only type of best match functionality in that
10 system is an exact match functionality.  Is that right?
11     A.  I did testify that way.
12     Q.  Is there any other type of best match
13 functionality in IOS 12?
14     A.  So I was looking for a paragraph.  When I was
15 responding to that question I was looking for a paragraph
16 I remembered reviewing recently and somehow didn't find
17 it.  Let me see if I can find it again, which talks
18 about -- that paragraph talks about either abbreviated
19 commands or command completion.
20     Q.  I'll withdraw the question, Dr. Clark.
21     A.  I'm still -- I remember seeing this paragraph
22 about abbreviated commands, but I cannot find it somehow.
23 But right, you --
24     Q.  I'll ask a different question.
25         We've talked many times today about the caveat

Page 152

1  in paragraph 77 of your report regarding the properties
2  of the claimed command parse tree.  Let's turn to that
3  paragraph.
4      A.  I have it.
5      Q.  What did you mean by this sentence starting with
6  "To the extent"?
7          MR. JAFFE:  Objection.  Leading.
8          THE WITNESS:  So I'm -- I was inspired --
9  inspired.
10         I learned that in its infringement contentions,
11 Cisco appeared to read the limitation 1D as not requiring
12 that the parse tree have elements each specifying at
13 least one corresponding generic command component and a
14 corresponding at least one command action value.
15 BY MR. ROSEN:
16     Q.  What was your basis for including this caveat in
17 your report?
18         MR. JAFFE:  Objection.  Leading.
19         THE WITNESS:  I think I -- I just said it was --
20 it was the... the apparent use of an alternate
21 interpretation of that limitation in the infringement
22 contingents.
23 BY MR. ROSEN:
24     Q.  Sitting here today, do you still have that
25 concern?

Page 153

1          MR. JAFFE:  Objection.  Leading.
2          THE WITNESS:  I -- I do.  And it was -- that
3  concern was cemented by my review of Dr. Jeffay's
4  deposition transcript in which he adopted that reading,
5  that not every element need specify at least one
6  corresponding generic command component and a
7  corresponding at least one command action value.
8          MR. JAFFE:  Object as beyond the scope of the
9  direct.
10 BY MR. ROSEN:
11     Q.  Dr. Clark, let's turn to paragraph 54 of your
12 report.
13     A.  Yes.
14     Q.  Why did you include this paragraph in your
15 report?
16         MR. JAFFE:  Objection.  Leading.
17         THE WITNESS:  So here I'm addressing Cisco's
18 reading of the best match limitation to be satisfied by
19 what I call character-level matching and in command
20 completion, so that one types a partial command and
21 either gets -- gets -- well, different systems do it
22 different ways, but if you have an unambiguous start to
23 the command, that command gets executed without you
24 having to type the rest, or sometimes you get a choice of
25 possibilities or sometimes you type a question mark and

Page 158

```
1    document.  Vague.  Misstates prior testimony.
2            THE WITNESS:  So in that --
3            MR. ROSEN:  And asked and answered.
4            THE WITNESS:  In that region in the 80s
5    paragraph, there -- I -- I neglected to include the
6    command completion material.
7            MR. JAFFE:  No further questions.  Is that a
8    wrap?
9            MR. ROSEN:  That's it.
10           THE VIDEOGRAPHER:  All right.  This concludes
11   the recorded video deposition of Doug Clark in the matter
12   of Cisco verse Arista, taken on July 6th, 2016.  The time
13   is 4:01 p.m. and we are off the record.
14           THE REPORTER:  A copy, Counsel?
15           MR. KRISHNAN:  Yes, please.
16           MR. JAFFE:  Standard order, whatever ours is.
17
18           (The deposition concluded at 4:01 p.m.)
19
20
21
22
23
24
25
```

Page 159

```
1              DECLARATION UNDER PENALTY OF PERJURY
2
3         I, DOUGLAS W. CLARK, PH.D., do hereby certify
4    under penalty of perjury that I have read the foregoing
5    transcript of my deposition taken on July 6, 2016; that I
6    have made such corrections as appear noted on the
7    Deposition Errata Page, attached hereto, signed by me;
8    that my testimony as contained herein, as corrected, is
9    true and correct.
10
11   Dated on the _____ day of
12   _____, 2016, at
13   _____, California.
14
15
16                   _____
17                   DOUGLAS W. CLARK, Ph.D.
18
19
20
21
22
23
24
25
```

Page 160

```
1              DEPOSITION ERRATA SHEET
2    Page No. _____   Line No. _____
3    Change: _____
4    _____
5    Reason for Change: _____
6    _____
7    Page No. _____   Line No. _____
8    Change: _____
9    _____
10   Reason for Change: _____
11   _____
12   Page No. _____   Line No. _____
13   Change: _____
14   _____
15   Reason for Change: _____
16   _____
17   Page No. _____   Line No. _____
18   Change: _____
19   _____
20   Reason for Change: _____
21   _____
22
23
24   _____         _____
25      DOUGLAS W. CLARK, Ph.D.            DATED
```

Page 161

```
1    STATE OF CALIFORNIA
2    COUNTY OF SAN FRANCISCO
3
4         I, MARK W. BANTA, a Certified Shorthand
5    Reporter, do hereby certify:
6         That prior to being examined, the witness in
7    the foregoing proceedings was by me duly affirmed to
8    testify to the truth, the whole truth, and nothing but
9    the truth;
10        That said proceedings were taken before me at
11   the time and place therein set forth and were taken down
12   by me in shorthand and thereafter transcribed into
13   typewriting under my direction and supervision;
14        I further certify that I am neither counsel
15   for, nor related to, any party to said proceedings, nor
16   in any way interested in the outcome thereof.
17        In witness whereof, I have hereunto subscribed
18   my name.
19   Dated:  July 7, 2016
20
21
22
23   _____
24   MARK W. BANTA
25   CSR 6034, CRR
```

Page 162

U.S. Legal Support, Inc.
44 Montgomery, Suite 550
San Francisco, CA 94104          Date letter sent:
415-362-4346
     DOUGLAS W. CLARK, Ph.D.
c/o  DAVID ROSEN
     KEKER & VAN NEST, L.L.P.
     633 Battery Street
     San Francisco, California  94111-1809
Re: Cisco Systems, Inc. v. Arista Networks, Inc.
Date of Deposition: July 6, 2016
Dear Dr.  Clark:
Please be advised that the original transcript of your
deposition in the above-titled matter is now available
for reading and signing. The transcript will be held in
our office for 30 days and made available for your
review. Please contact us at 415.362.4346 to arrange an
appointment.
You may elect to waive signature of the original and
review a copy of the transcript. If it is more convenient
to review a copy, please contact your attorney to make
arrangements. After completion of your review, notify our
office via certified or registered mail of any changes
made to your transcript.
Please be advised that we are unable to release the
original transcript for review.
In the event you do not sign your deposition transcript
within the 30-day period, it may be used with the full
force and effect as though it had been read, corrected
and signed.
Thank you,
U.S. Legal Support
Production Department
cc: All counsel

# ERRATA SHEET

*Cisco Systems, Inc. v. Arista Networks, Inc.*
**United States District Court for the Northern District of California
San Jose Division
Civil Action No. 4:14-cv-05344-BLF (PSG)**

**Witness Name:  DOUGLAS W. CLARK**

**Deposition Date:  July 6, 2016**

| Page | Line | Correction | Reason |
|------|------|------------|--------|
| 7 | 22 | "the" should be "a" | Error |
| 8 | 1 | "very unlikely" should be "a very likely" | Transcription Error |
| 27 | 8 | "in" should be "and" | Transcription Error |
| 35 | 7 | There should be opening quotation marks before "When" | Transcription Error |
| 35 | 11 | There should be closing quotation marks after "command." | Transcription Error |
| 63 | 18 | "conform" should be "confirm" | Transcription Error |
| 123 | 10 | There should be opening quotation marks before "the command" | Transcription Error |
| 123 | 12 | There should be closing quotation marks after "resource" | Transcription Error |
| 123 | 16 | There should be opening quotation marks before "the issuing" | Transcription Error |
| 123 | 18 | There should be closing quotation marks after "key" | Transcription Error |
| 129 | 25 | "provoke" should be "provide" | Transcription Error |
| 133 | 11 | There should be opening quotation marks before "Programs" | Transcription Error |
| 133 | 13 | There should be closing quotation marks after "interface." | Transcription Error |

- 1 -

| Page | Line | Correction | Reason |
|------|------|-----------|--------|
| 142 | 5 | "inventor's" should be "inventors'" | Transcription Error |
| 145 | 5 | "The command" should be "This command"; and there should be opening quotation marks before "This command" | Transcription Error |
| 145 | 7 | There should be closing quotation marks after "system." | Transcription Error |
| 152 | 22 | "contingents" should be "contentions" | Transcription Error |
| 158 | 5 | "paragraph" should be "paragraphs" | Transcription Error |

**Date:**    July 29, 2016                **Signature**