# REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

| | |
|---|---|
| KEKER & VAN NEST LLP<br>ROBERT A. VAN NEST - # 84065<br>BRIAN L. FERRALL - # 160847<br>DAVID SILBERT - # 173128<br>MICHAEL S. KWUN - #198945<br>633 Battery Street<br>San Francisco, CA 94111-1809<br>Telephone:   (415) 391-5400<br>Email:  rvannest@kvn.com;<br>bferrall@kvn.com; dsilbert@kvn.com;<br>mkwun@kvn.com | SUSAN CREIGHTON, SBN 135528<br>SCOTT A. SHER, SBN 190053<br>WILSON SONSINI GOODRICH & ROSATI<br>Professional Corporation<br>1700 K Street NW, Fifth Floor<br>Washington, D.C., 20006-3817<br>Telephone:  (202) 973-8800<br>Email: screighton@wsgr.com;<br>ssher@wsgr.com |

JONATHAN M. JACOBSON, NY SBN 1350495
CHUL PAK (*pro hac vice*)
DAVID H. REICHENBERG (*pro hac vice*)
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
1301 Avenue Of The Americas, 40th Floor
New York, NY 10019-6022
Telephone:  (212) 999-5800
Email:  jjacobson@wsgr.com; cpak@wsgr.com;
dreichenberg@wsgr.com

Attorneys for Defendant ARISTA NETWORKS, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| CISCO SYSTEMS, INC.,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>ARISTA NETWORKS, INC.,<br><br>　　　　　Defendant. | Case No. 5:14-cv-05344-BLF (NC)<br><br>**ARISTA NETWORKS, INC.'S OPPOSITION TO CISCO SYSTEMS, INC.'S MOTION TO EXCLUDE EXPERT OPINION TESTIMONY FROM ARISTA'S EXPERT CATE M. ELSTEN**<br><br>Date:　　　September 9, 2016<br>Time:　　　9:00 a.m.<br>Dept.:　　　Courtroom 3, 5th Floor<br>Judge:　　　Hon. Beth Labson Freeman<br><br>Date Filed: December 5, 2014<br><br>Trial Date: November 21, 2016 |

ARISTA'S OPPOSITION TO CISCO'S MOTION TO EXCLUDE EXPERT OPINION TESTIMONY
FROM ARISTA'S EXPERT CATE M. ELSTEN
Case No. 5:14-cv-05344-BLF (NC)

1090777

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ...................................................................................................................1

II. MS. ELSTEN FOLLOWS THE LAW WHEN OPININING ON THE LACK OF CAUSAL NEXUS BETWEEN ARISTA'S REVENUES AND THE ALLEGED INFRINGEMENT........................................................................................................1

III. MS. ELSTEN USED A RELIABLE METHODOLOGY AND RELIABLE DATA TO DETERMINE THE VALUE OF THE CLI RELATIVE TO OTHER FEATURES FOR HER APPORTIONMENT OPINION. ...................................................3

    A. Ms. Elsten's apportionment opinion falls squarely within established precedent for estimating relative values of small features of larger products. ........3

    B. Ms. Elsten's challenged apportionment opinion is based on a comprehensive review of qualitative and quantitative evidence. ............................6

IV. CISCO'S REMAINING *DAUBERT* ATTACKS MISUNDERSTAND MS. ELSTEN'S OPINIONS. .........................................................................................................9

i

ARISTA'S OPPOSITION TO CISCO'S MOTION TO EXCLUDE EXPERT OPINION TESTIMONY
FROM ARISTA'S EXPERT CATE M. ELSTEN
Case No. 5:14-cv-05344-BLF (NC)

1090777

## I. INTRODUCTION

Cisco's motion to exclude certain opinions of Arista's expert Cate Elsten misstates the law and mischaracterizes Ms. Elsten's reports. It should be denied in its entirety.

Cate Elsten has been a financial consultant for over 35 years, and Cisco does not challenge her qualifications. Exhibit 8 to Holmes Declaration in Support of Cisco's Motion to Exclude Expert Opinion Testimony from Arista's Experts, ECF 431-8, ("Elsten Rebuttal Rpt."), Appx. B. Cisco's motion first misstates its statutory burden to link Arista's gross revenues to the alleged infringement. Next, and comprising the bulk of Cisco's motion, Cisco attacks Ms. Elsten's opinions concerning the disgorgement of profits in connection with Cisco's copyright claims. *Id.* at 74–94. Ms. Elsten's disgorgement opinion (1) identified Arista's gross revenues from U.S. sales of its accused switches, (2) deducted expenses from those revenues, and (3) apportioned Arista's accused profits to the accused elements of Arista's products based on a thorough analysis of evidence. *Id.* Ms. Elsten considered the opinions of other experts in the case (including technical experts), and reviewed thousands of documents and deposition testimony from both parties. Her opinions are based on the totality of the evidence she reviewed, not a blinkered attachment to one or two data points, as Cisco's motion would suggest. At most, Cisco's motion attacks the weight of Ms. Elsten's opinions, not their reliability, and as such should be saved for the trier of fact.

## II. MS. ELSTEN FOLLOWS THE LAW WHEN OPINING ON THE LACK OF CAUSAL NEXUS BETWEEN ARISTA'S REVENUES AND THE ALLEGED INFRINGEMENT.

Cisco moves to exclude some or all of Ms. Elsten's disgorgement opinions (it does not specify exactly which portions) on the grounds that the causal nexus requirement does not apply to "direct profits" cases. *See* Cisco's Motion to Exclude Expert Opinion Testimony from Arista's Expert Cate M. Elsten, ECF 429 ("Mot.") at 2–3; Proposed Order, ECF 429-1.

A copyright owner is entitled to recover "any profits of the infringer that are attributable to the infringement." 17 U.S.C. § 504(b). "[A] causal link between the infringement and the monetary remedy sought is a predicate to recovery of . . . profits." *Polar Bear Prods., Inc. v. Timex Corp.*, 384 F.3d 700, 708 (9th Cir. 2004). That "causal nexus" requirement is "akin to tort

1
ARISTA'S OPPOSITION TO CISCO'S MOTION TO EXCLUDE EXPERT OPINION TESTIMONY
FROM ARISTA'S EXPERT CATE M. ELSTEN
Case No. 5:14-cv-05344-BLF (NC)

1090777

principles of causation and damages." *Id.* The Copyright Act places the burden on the copyright owner to establish the causal nexus. 17 U.S.C. § 504(b). Accordingly, the Ninth Circuit requires copyright plaintiffs to "do more initially than toss up an undifferentiated gross revenue number"; instead, the plaintiff must establish that "the revenue stream [] bear[s] a legally significant relationship to the infringement" before the burden shifts to the defendant to apportion the profits that were not the result of infringement. *Polar Bear Prods.*, 384 F.3d at 711; *see also Dash v. Mayweather*, 731 F.3d 303, 327 (4th Cir. 2013); *On Davis v. The Gap, Inc.*, 246 F.3d 152, 159–60 (2d Cir. 2001).

Although Ms. Elsten recited the correct legal standard for causal nexus (Elsten Rebuttal Rpt. at 74), her disgorgement opinion **does not depend** on a finding that Cisco failed to establish a causal nexus. To the contrary, Ms. Elsten *accepts* Cisco's gross revenue figure as the baseline for deducting costs and apportioning Arista's profits. *See* Elsten Rebuttal Rpt. at 75. She does so even though she observes that ████████████████████████████████████████ ████████████████████████████████████████ *Id.* at 75–77; *see also id.* at 90 ("In order to be conservative, I have not removed these customers entirely from the base of Arista sales to be considered."). Instead, she accounts for these facts—including an explicit statement from a large customer that it ████████████████████ a familiar CLI—in her allocation opinion, without deducting any revenues from the base. *Id.* at 27 & Appx. C at Ex. 2.18. Cisco is punching at a strawman, since its complaints concerning the causal nexus standard make no difference to Ms. Elsten's disgorgement conclusions.

Regardless, the legal standard Ms. Elsten recites is correct. *Polar Bear* did not *create* a new causal nexus requirement: that requirement comes from (1) the Copyright Act itself, which permits consideration only of gross revenues "attributable to the infringement," and (2) longstanding Circuit precedent. 17 U.S.C. § 504(b); *see Polar Bear*, 384 F.3d at 711 (discussing Copyright Act and *Mackie v. Rieser*, 296 F.3d 909, 911 (9th Cir. 2002)). Cisco fails to mention footnote 7 in *Polar Bear*, expressly disavowing Cisco's interpretation of that case:

> We do not suggest that a showing of causation is required only for claims of indirect profits, but that causation in indirect profit claims is often more attenuated than claims for actual damages or direct profits. It is therefore particularly
2
ARISTA'S OPPOSITION TO CISCO'S MOTION TO EXCLUDE EXPERT OPINION TESTIMONY
FROM ARISTA'S EXPERT CATE M. ELSTEN
Case No. 5:14-cv-05344-BLF (NC)

1090777

> important for the plaintiff in indirect profit action to demonstrate the alleged causal link between the infringement and profits sought.

*Polar Bear*, 384 F.3d at 711. Indeed, several circuits have held that "[t]he nexus requirement exists in both direct and indirect profits cases." *Andreas v. Volkswagen of Am., Inc.*, 336 F.3d 789, 796 (8th Cir. 2003). Although in an "indirect profits case the profits 'attributable' to the infringement are more difficult to quantify . . . . that difficulty does not change the burden of proof established by the statute." *Id.* District courts in the Ninth Circuit regularly apply the causal nexus requirement in direct profits cases. *See, e.g.*, *Fahmy v. Jay-Z*, 835 F. Supp. 2d 783, 793 (C.D. Cal. 2011); *Garcia v. Coleman*, No. C-07-2279 EMC, 2009 WL 799393, at *2–3 (N.D. Cal. Mar. 24, 2009) ("there must be a causal nexus regardless of which kind of profits is being sought"). In fact, the decision Cisco cites was, itself, a direct profits case applying the causal nexus requirement in a case alleging copyright infringement of 145 lines of source code. *See Brocade Commc'ns Sys., Inc. v. A10 Networks, Inc.*, No. C 10-cv-3428-PSG, 2013 WL 831528, at *6 (N.D. Cal. Jan. 10, 2013). *Brocade* does not apply a different "causal nexus" requirement than the one recited by Ms. Elsten. To the contrary, there, Judge Grewal held that the patent damages test of whether a feature "drove consumer demand" was not the right one; the plaintiffs' burden was instead "***to provide non-speculative evidence that but for*** the 145 lines of infringing code [defendant] would not have received the profits." *Id.* (emphasis added). Ms. Elsten applied the same standard. She concluded that Cisco cited no evidence that but for the accused elements of Arista's software any particular customer would not have bought Arista's products. Elsten Rebuttal Rpt. at 74–76.

### III. MS. ELSTEN USED A RELIABLE METHODOLOGY AND RELIABLE DATA TO DETERMINE THE VALUE OF THE CLI RELATIVE TO OTHER FEATURES FOR HER APPORTIONMENT OPINION.

#### A. Ms. Elsten's apportionment opinion falls squarely within established precedent for estimating relative values of small features of larger products.

Cisco attacks Ms. Elsten's apportionment opinion on grounds that it relies too much on a Cisco-commissioned market assessment and other select "data points" as arbitrary and unreliable. Cisco claims that Ms. Elsten relies heavily on factors like the percentage of code accused of infringement, but she does not. In fact she considers all these data points in her overall analysis

3

ARISTA'S OPPOSITION TO CISCO'S MOTION TO EXCLUDE EXPERT OPINION TESTIMONY
FROM ARISTA'S EXPERT CATE M. ELSTEN
Case No. 5:14-cv-05344-BLF (NC)

1090777

placing no undue weight on any one source.  That said, these criticisms of an expert's opinion are precisely the sort that should be the subject of cross-examination, not exclusion.  Ms. Elsten's opinions far exceed inadmissible "subjective belief or unsupported speculation." *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 590 (1993).

This Court has "considerable leeway in deciding . . . how to go about determining whether particular expert testimony is reliable." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999).  Expert testimony based on specialized knowledge should be "useful and reliable, but it need not be conclusive" where the subject matter is "often uncertain." *Primiano v. Cook*, 598 F.3d 558, 565 (9th Cir. 2010), *as amended* (Apr. 27, 2010) (internal quotation marks omitted).  Experts may form their opinions by reasonably relying on facts or data of which they are made aware or personally observe, and on which other experts in the field would also rely.  Fed. R. Evid. 703; *Turner v. Burlington N. Santa Fe R. Co.*, 338 F.3d 1058, 1061 (9th Cir. 2003).  The methodology of an expert with specialized knowledge is likewise reliable if it is the "product of reliable principles and methods."  Fed. R. Evid. 702(c).  The threshold for finding that a methodology is reliable is low: if there are "good grounds" for the method, as opposed to "subjective belief or unsupported speculation," then the method is reliable.  *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 590 (1993); *see also Hangarter v. Provident Life & Acc. Ins. Co.*, 373 F.3d 998, 1018 (9th Cir. 2004).

In copyright cases in particular, the Supreme Court has recognized that precision in apportionment of profits is difficult if not impossible to attain when infringing and non-infringing aspects are commingled.  Because the duty to apportion lies with the Court,[1] even if the accused infringer fails to apportion profits the Court must identify the profits attributable to the infringing feature when ordering disgorgement so that the plaintiff does not receive a windfall.  *See Cream Records, Inc. v. Jos. Schlitz Brewing Co.*, 754 F.2d 826, 828–29 (9th Cir. 1985).  "[W]hat is required is not mathematical exactness." *Sheldon v. Metro-Goldwyn Pictures Corp.*, 309 U.S. 390, 408 (1940).  Instead, the "sole requirement" is that the Court arrive at a "reasonable

---

[1] Disgorgement of profits is an equitable remedy.  *Petrella v. Metro-Goldwyn-Mayer, Inc.*, 134 S. Ct. 1962, 1978 (2014).

4
ARISTA'S OPPOSITION TO CISCO'S MOTION TO EXCLUDE EXPERT OPINION TESTIMONY
FROM ARISTA'S EXPERT CATE M. ELSTEN
Case No. 5:14-cv-05344-BLF (NC)

1090777

approximation." *Polar Bear Prods.,* 384 F.3d at 712 (quoting *Sheldon,* 309 U.S. at 408); *see also Abend v. MCA, Inc.*, 863 F.2d 1465, 1480 (9th Cir. 1988), *aff'd sub nom. Stewart v. Abend*, 495 U.S. 207, 110 S. Ct. 1750 (1990); *Universal Pictures Co. v. Harold Lloyd Corp.*, 162 F.2d 354, 377 (9th Cir. 1947) (Because it is "not possible to apportion the profits to a strict certainty, . . . the court could make a just apportionment"). Given this difficult task, "the testimony of those who are informed by observation and experience may be not only helpful but . . . indispensable." *Sheldon*, 309 U.S. at 408.

Cisco's motion amounts to little more than an attack on the *weight* of the evidence on which Ms. Elsten relies, not the reliability of the evidence or her methodology. Its motion thus presents questions for the trier of fact. *See Finjan, Inc. v. Blue Coat Sys., Inc.*, No. 13-CV-03999-BLF, 2015 WL 4272870, at *6 (N.D. Cal. July 14, 2015). In fact, in most of the cases Cisco relies upon the expert opinions were accepted and presented to the jury. For example, in *Finjan*, this Court held that an expert's reliance on an internal presentation listing twenty-four features to extrapolate from the proportion of those features contained in the infringing product "reasonably ties the value that Defendant places on product features to the accused products in this case." *Id.* at *9. Far from excluding the testimony, the Court merely warned that it was possible "foundational facts to support the assumption that the functions are of equal value" would be necessary at trial. *Id.* (citing *Stragent, LLC v. Intel Corp.,* No. 6:11–CV–421, 2014 WL 1389304, at *4 (E.D.Tex. Mar. 6, 2014); *Good Tech. Corp. v. MobileIron, Inc.,* No. 5:12–CV–05826–PSG, 2015 WL 4090431, at *7 (N.D.Cal. July 5, 2015)). Similarly, this Court held that apportioning profits by reference to the proportion of source code representing the accused features "is neither inherently unreliable nor absolutely barred by Federal Circuit precedent." 2015 WL 4272870, at *5; *see also Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1333 (Fed. Cir. 2009) ("the glaring imbalance between infringing and non-infringing features must impact the [apportionment] analysis."). Cisco also misreads *Frank Music Corp. v. Metro-Goldwyn-Mayer Inc.*, 886 F.2d 1545, 1548–49 (9th Cir. 1989). That court *affirmed* the district court's decision to give infringing and non-infringing parts of the accused show equal value. *Id.* The criticism, in dictum, to "exclusively . . . quantitative comparisons" that "failed to consider . . . relative quality"

5
ARISTA'S OPPOSITION TO CISCO'S MOTION TO EXCLUDE EXPERT OPINION TESTIMONY
FROM ARISTA'S EXPERT CATE M. ELSTEN
Case No. 5:14-cv-05344-BLF (NC)

1090777

has no application here because, as explained below, Ms. Elsten exhaustively considered many factors, both qualitative and quantitative. *Id.* at 1548.

*Stragent* and *MobileIron*, both patent cases, do not set a higher bar. They stand for the unremarkable proposition that an expert opinion on the relative value of accused features that *lacks* foundational facts does not pass muster. In *Stragent*, the expert had **no** foundational facts upon which to conclude that assigning a feature equal value to every other feature in the product was reasonable. 2014 WL 1389304, at *4. In *MobileIron*, the expert applied an impermissible 50/50 "rule of thumb" that was untethered to the facts of that case. 2015 WL 4090431, at *7. That expert also relied on a document that listed product criteria, but provided "no analysis of what weight to assign to what feature." *Id.* Ms. Elsten's opinion does not suffer from any of the defects found in the opinions in these cases.

### B. Ms. Elsten's challenged apportionment opinion is based on a comprehensive review of qualitative and quantitative evidence.

In the last step of Ms. Elsten's apportionment opinion, she digests a large body of evidence related to the different product features that contribute to Arista's revenue. These include a conservative estimate of the CLI contributing 12.5% to a segment of Arista revenue, the relative frequency of CLI requirements in requests for proposals ("RFPs"), the amount of source code associated with the CLI as percentage of all source code, and the frequency of the CLI as a feature promoted in Arista marketing documents. Cisco's motion seeks to exclude all of these data points as unreliable. Mot. at 4–7.

Ms. Elsten evaluated voluminous deposition testimony, the opinions of Arista's other experts in this case, and thousands of relevant documents, including Arista internal marketing and technical sources, customer documents, and Cisco internal competitive and marketing documents. After accepting Cisco's gross revenue figure and deducting expenses (neither of which are challenged by Cisco's motion), Ms. Elsten apportioned profits by first distinguishing Arista's customers into two groups: the highly automated customers who rarely, if ever, use the CLI, and other customers. Elsten Rebuttal Rpt. at 89–91 & Table 14. For the former, she concluded that the CLI played almost no role in purchasing decisions, but conservatively assigned a 0.6%

6
ARISTA'S OPPOSITION TO CISCO'S MOTION TO EXCLUDE EXPERT OPINION TESTIMONY
FROM ARISTA'S EXPERT CATE M. ELSTEN
Case No. 5:14-cv-05344-BLF (NC)

1090777

allocation to the CLI. *Id.* Cisco does not contest this apportionment in its motion. For the latter group, she first distinguished between the value of the hardware and the software in Arista's products. *Id.* at 80–82 (incorporating and discussing Part IV.A.4.b at pages 44–47). She then determined the relative value of the CLI to other Arista software features which are not accused. *Id.* at 82–90.[2]

Contrary to Cisco's suggestion, Ms. Elsten does not solely rely on one favorable document or a handful of data points. Her review of the evidence actually noted substantial support for a *lower* apportionment opinion, but recognizing that no one piece of evidence was definitive, she found a range of possible percentages associated with the value of the Cisco CLI, and then selected the most conservative (favorable to Cisco) end of that range for her ultimate opinion. *Id.* at 82–93. The following is a sampling of the many sources of information she considered:

- Marketing and technical documents discussing Arista competitive differentiators "typically [mentioned the CLI] as one of many aspects of EOS" and IOS. *Id.* at 83. A 2008 Arista marketing document identified the CLI as one of thirty EOS components, and a 2013 one listed it as one of seventy-two. *Id.* at 84.

- Block diagrams showcasing exemplary features ▮▮▮▮. *Id.* at 85.

- A Cisco-commissioned competitive report ▮▮▮▮. *Id.* at 83; *see also* Exhibit 10 to Holmes Declaration in Support of Cisco's Motion to Exclude Expert Opinion Testimony from Arista's Experts, ECF 431-10, ("Mot., Ex. 10.") at 900-906.

- Customers' requests for proposal (RFPs) can indicate ▮▮▮▮. Elsten Rebuttal Rpt. at 88 (incorporating and discussing Part IV.A.4.b at pages 44–47). Searching over 9,000 Arista RFPs and performing a detailed analysis of a subset of them ▮▮▮▮. *Id.* at 45–46, 89 (Table 13), Appx. D at Ex. 2.18.

- ▮▮▮▮ *Id.*

---

[2] Ms. Elsten also noted that further apportionment may be necessary due to the fact that Cisco only accuses a small portion of the overall CLI, depending on future rulings by the Court. Her opinion does not currently apportion on that basis, however. *Id.* at 90–92.

7

ARISTA'S OPPOSITION TO CISCO'S MOTION TO EXCLUDE EXPERT OPINION TESTIMONY
FROM ARISTA'S EXPERT CATE M. ELSTEN
Case No. 5:14-cv-05344-BLF (NC)

1090777

- ██████████████████████████████████████ *Id.* at 46
- Cisco's deponents' testimony ████████████████████████████████████ *Id.* at 46–47.

From these sources, Ms. Elsten observed a range of data points about the relative importance of the CLI among less-automated customers, from a floor of 1.4% to 12.5%. *Id.* at 89. As a cross-check, Ms. Elsten also estimated the value of the CLI by comparing the amount of code required to program the CLI to the overall size of Arista's software, ████████ ████████. *Id.* at 88–89 & Table 12.

Ms. Elsten's apportionment opinion is thus multi-factored, based on mutually reinforcing documents and calculations—all of which are reliable evidence from different perspectives—that together paint a picture of the CLI as limited in importance when compared to Arista's other, recognized advantages. Drawing on her experience, Ms. Elsten opined that "[w]hile none of these sources taken alone is definitive, collectively they are reasonably and reliably informative and indicate a relatively concise range of Arista switch profits [that] may be attributed to the CLI as opposed to other software features." *Id.* at 89. In recognition that the documents came from different perspectives and that no single piece of evidence could be considered the "best" approximation of the value of industry standard CLI, and in the interest of being conservative, Ms. Elsten reasonably approximated her final disgorgement opinion based on the highest number in the range—12.5%. *Id.* & Table 13.

Plainly Ms. Elsten's opinion neither lacks a factual foundation, nor does it rely on any one document alone. It instead analyzes different sources to arrive at a "reasonable approximation" of the importance that customers place on an industry standard CLI, giving Cisco the benefit of the doubt in recognition that no single document can produce the "best" approximation of the CLI's

8

ARISTA'S OPPOSITION TO CISCO'S MOTION TO EXCLUDE EXPERT OPINION TESTIMONY
FROM ARISTA'S EXPERT CATE M. ELSTEN
Case No. 5:14-cv-05344-BLF (NC)

1090777

value with "mathematical exactness."[3]  *Sheldon,* 309 U.S. at 408.  Each of the presentations and documents that Cisco challenges purports to identify relevant product feature advantages, which is precisely the sort of evidence Ms. Elsten—and the fact finder—are entitled to consider and weigh.  *See* Mot. Ex. 10 at 900–906 (listing "Arista Feature Advantages").

Finally, Cisco's claim that the sources for Ms. Elsten's RFP and marketing-document analyses were "cherry-picked" is meritless and unsupported.  Cisco does not identify any additional documents that were excluded from consideration by Ms. Elsten, and, in fact, Ms. Elsten relies on a significant amount of relevant evidence not considered by Cisco's own expert report.  But, in any case, that objection should be addressed to the trier of fact.

## IV. CISCO'S REMAINING *DAUBERT* ATTACKS MISUNDERSTAND MS. ELSTEN'S OPINIONS.

Cisco makes three more attacks that fail to appreciate the nature of Ms. Elsten's expert opinions.  First, Cisco argues that Ms. Elsten should be barred from testifying about non-infringing alternatives in connection with her disgorgement opinion because it would prejudice Cisco.  But Ms. Elsten never relied on an "analysis of counterfactual scenarios involving non-infringing alternatives."  *Oracle Am., Inc. v. Google Inc.*, No. C 10-cv-03561-WHA, 2016 WL 1743154, at *3 (N.D. Cal. May 2, 2016).  Ms. Elsten properly discusses other vendors' use of industry standard CLIs in connection with her *lost profits* opinion, which is not challenged here.  She also acknowledges in the opening of her disgorgement opinion that just because some customers may value an "industry standard CLI" does not necessarily mean that they require CLI features that are *accused and protected* by Cisco's copyright.  Elsten Rebuttal Rpt. at 75.  That is the sentence Cisco attacks (Mot. at 8:3–6), but it merely recognizes that the Court must allocate value to elements of the CLI found to be infringing, not to an industry-standard CLI comprising non-infringing elements.  Moreover, Cisco ignores the next sentence in the report, where Ms.

---

[3] Cisco's own damages expert presented a similar methodology on damages to the jury in *Apple, Inc. v. Samsung Elecs. Co.*, No. 12-CV-00630-LHK, 2014 WL 794328, at *4 (N.D. Cal. Feb. 25, 2014) ("Dr. Chevalier allocates Samsung's average operating profits of the accused smartphones and tablets to various identified smartphone and tablet features using the number of times those features have been mentioned in professional and consumer reviews."); *see also* Ex. A to Santacana Declaration in Support of Arista's Opposition (Chevalier Depo. Tr.) at 28:11–23, 32:22–33:7.

9

ARISTA'S OPPOSITION TO CISCO'S MOTION TO EXCLUDE EXPERT OPINION TESTIMONY
FROM ARISTA'S EXPERT CATE M. ELSTEN
Case No. 5:14-cv-05344-BLF (NC)

1090777

1  Elsten explains that she has "assumed that the trier of fact will find a basis for considering at least
2  some sales and related profits as appropriate bases for disgorgement."  Elsten Rebuttal Rpt. at 75
3  Cisco thus moves to exclude an opinion Ms. Elsten never rendered.

4  Similarly, Cisco claims that Ms. Elsten impermissibly purports to render a technical
5  opinion about the existence of a *de facto* industry standard CLI.  Mot. at 8–9.  She does not.[4]  Ms.
6  Elsten instead reasonably relies on the expert opinions of Arista's experts Dr. Black and Mr.
7  Seifert (as well as the large volume of documents in this case discussing a *de facto* industry
8  standard CLI) that, in fact, a *de facto* industry standard CLI does exist and is used by many
9  vendors, which has important implications for her fair use and lost profits opinions.  In particular,
10 the existence of a *de facto* industry standard shared by many vendors undermines Cisco's expert's
11 opinion that, but for the accused aspects of Arista's switches, Arista's sales would necessarily
12 have gone to Cisco, as opposed to another vendor providing a similar standard CLI.  Ms. Elsten
13 does not form that opinion based on any technical expertise, nor does she need to.  *See* Fed. R.
14 Evid. 703 ("An expert may base an opinion on facts or data in the case that the expert has been
15 made aware of or personally observed."); *Scott v. Ross,* 140 F.3d 1275, 1286 (9th Cir. 1998)
16 (reliance on observable facts in documentary record and other experts was reasonable).
17 Excluding Ms. Elsten's reliance on a *de facto* industry standard would prejudice Arista's ability to
18 rebut Cisco's lost profits case.

19 Finally, Cisco's attack on Ms. Elsten's supposedly impermissible opinions regarding
20 corporate intent and the subject beliefs of others is meritless.  Mot. at 10.  Ms. Elsten does not
21 purport to opine on the undisclosed beliefs of others.  Rather, the three challenged sentences
22 simply reflect the documentary evidence, as expressed by Cisco or the public statements of others
23 and the industry custom and practice observed by Arista experts Dr. Black and Mr. Seifert.
24 Cisco's mere desire to deny these facts is no basis to prevent Ms. Elsten from discussing them.
25 //
26 //

---

[4] Ms. Elsten never opines that "copying of the purported 'industry standard CLI' is by definition permissible." *Id.* at 9:4–5.  This is a Cisco fabrication.

10
ARISTA'S OPPOSITION TO CISCO'S MOTION TO EXCLUDE EXPERT OPINION TESTIMONY
FROM ARISTA'S EXPERT CATE M. ELSTEN
Case No. 5:14-cv-05344-BLF (NC)

1090777

| | | |
|---|---|---|
| Dated: August 19, 2016 | | KEKER & VAN NEST LLP |
| | By: | */s/ Brian L. Ferrall* <br> BRIAN L. FERRALL |
| | | Attorney for Defendant <br> ARISTA NETWORKS, INC. |

11

ARISTA'S OPPOSITION TO CISCO'S MOTION TO EXCLUDE EXPERT OPINION TESTIMONY
FROM ARISTA'S EXPERT CATE M. ELSTEN
Case No. 5:14-cv-05344-BLF (NC)

1090777