| | | |
|---|---|---|
| 1 | KEKER & VAN NEST LLP | SUSAN CREIGHTON, SBN 135528 |
| 2 | ROBERT A. VAN NEST - # 84065<br>BRIAN L. FERRALL - # 160847 | SCOTT A. SHER, SBN 190053<br>WILSON SONSINI GOODRICH & ROSATI |
| 3 | DAVID SILBERT - # 173128<br>MICHAEL S. KWUN - #198945 | Professional Corporation<br>1700 K Street NW, Fifth Floor |
| 4 | 633 Battery Street<br>San Francisco, CA 94111-1809 | Washington, D.C., 20006-3817<br>Telephone: (202) 973-8800 |
| 5 | Telephone: (415) 391-5400<br>Email: rvannest@kvn.com; | Email: screighton@wsgr.com;<br>ssher@wsgr.com |
| 6 | bferrall@kvn.com; dsilbert@kvn.com;<br>mkwun@kvn.com | |

JONATHAN M. JACOBSON, NY SBN 1350495
CHUL PAK (*pro hac vice*)
DAVID H. REICHENBERG (*pro hac vice*)
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
1301 Avenue Of The Americas, 40th Floor
New York, NY 10019-6022
Telephone: (212) 999-5800
Email: jjacobson@wsgr.com; cpak@wsgr.com;
dreichenberg@wsgr.com

Attorneys for Defendant ARISTA NETWORKS, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| CISCO SYSTEMS, INC.,<br><br>            Plaintiff,<br><br>     v.<br><br>ARISTA NETWORKS, INC.,<br><br>            Defendant. | Case No. 5:14-cv-05344-BLF (NC)<br><br>**ARISTA NETWORKS, INC.'S OPPOSITION TO CISCO SYSTEMS, INC.'S MOTION TO EXCLUDE OPINION TESTIMONY OF WILLIAM M. SEIFERT**<br><br>Date:       September 9, 2016<br>Time:      9:00 a.m.<br>Dept.:      Courtroom 3, 5th Floor<br>Judge:     Hon. Beth Labson Freeman<br><br>Date Filed: December 5, 2014<br><br>Trial Date: November 21, 2016 |

REDACTED VERSION

---

ARISTA NETWORKS, INC.'S OPPOSITION TO CISCO SYSTEMS, INC.'S MOTION TO EXCLUDE
OPINION TESTIMONY OF WILLIAM M. SEIFERT
Case No. 5:14-cv-05344-BLF (NC)

1084919

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ..............................................................................................................1

II. ARGUMENT ......................................................................................................................1

    A. Mr. Seifert's extensive experience qualifies him to provide an opinion on how *de facto* industry standards arise and their effect.............................................1

    B. Mr. Seifert's *de facto* industry standard opinions more than satisfy the "reliability" test of Rule 702(b). ..............................................................................3

    C. Mr. Seifert's *de facto* industry standard opinions rest on his extensive knowledge and experience under Rule 702(c)...........................................................4

    D. Mr. Seifert's *de facto* industry standard opinions are the product of a reliable application of his analysis to the facts under Rule 702(d). .........................7

    E. Mr. Seifert's *de facto* industry standard opinions directly bear on contested issues and will aid the trier of fact ...........................................................................8

    F. Mr. Seifert's market effect opinions rest on specialized knowledge, reasonable assumptions, and reliable data under Rules 702(a), (b), and (c)............9

III. CONCLUSION..................................................................................................................10

i

ARISTA NETWORKS, INC.'S OPPOSITION TO CISCO SYSTEMS, INC.'S MOTION TO EXCLUDE
OPINION TESTIMONY OF WILLIAM M. SEIFERT
Case No. 5:14-cv-05344-BLF (NC)

1084919

I.   **INTRODUCTION**

Cisco's motion to exclude Mr. William M. Seifert's expert opinion on *de facto* industry standards and market effects attempts to block the well-reasoned and relevant testimony of a seasoned businessman and engineer with over thirty years of experience in the networking field.

Cisco first claims Mr. Seifert lacks certain qualifications which—despite being unrelated to the subject of his testimony—he actually possesses. Cisco next argues his opinions are irrelevant to copyrightability even though they pertain directly to other important defenses such as fair use, and to damages issues. Cisco conflates his opinions on industry custom and practice with scientific testimony, as if no expert could ever opine about industry custom unless that opinion could be objectively tested and subjected to a known risk of error. Perhaps most significantly, it accuses Mr. Seifert of "inventing" his opinion that there exists a *de facto* industry standard CLI, even while most of the industry, including Cisco itself, has referred to its CLI as an "industry standard" for years. As to Mr. Seifert's opinion about the market effect of Arista's alleged infringement, Cisco ignores that he properly applies his expertise to explain why Arista's use of CLI elements that are widely used by many other competitors would not have any appreciable effect on Cisco. For all these reasons Cisco's motion should be denied and Mr. Seifert should be permitted to testify fully as to his disclosed opinions.

II.  **ARGUMENT**

   **A.   Mr. Seifert's extensive experience qualifies him to provide an opinion on how *de facto* industry standards arise and their effect.**

With over thirty years of experience in the networking industry, Mr. Seifert is exceedingly qualified to provide an expert opinion both as to whether Cisco's CLI constitutes a *de facto* industry standard and whether Arista's use of the CLI has affected Cisco's market share. Having worked in the local-area-networking industry "since its inception," Mr. Seifert started his career as the first engineer at the "Ethernet pioneer" Interlan, Inc. in 1981 (years before Cisco was founded), co-founded a former top competitor of Cisco—Wellfleet Communications—in 1986, and more recently held the title of Chief Technology Officer at the networking and communications company Avaya, Inc. *See* ECF 431, Ex. 5 ("Seifert Rep.") ¶¶ 15, 24.

1

ARISTA NETWORKS, INC.'S OPPOSITION TO CISCO SYSTEMS, INC.'S MOTION TO EXCLUDE
OPINION TESTIMONY OF WILLIAM M. SEIFERT
Case No. 5:14-cv-05344-BLF (NC)

1084919

While experts must be qualified by "knowledge, skill, experience, training, or education,"[1] Federal Rule of Evidence 702 "contemplates a broad conception of expert qualifications." *Thomas v. Newton Int'l Enters.*, 42 F.3d 1266, 1269 (9th Cir. 1994). "The threshold for [expert] qualification is low; a minimal foundation of knowledge, skill, and experience suffices." *Mformation Techs. v. Research in Motion, Ltd.*, 2012 WL 1142537, at * 1 (N.D. Cal. March 29, 2012) (citing *Thomas*, 42 F.3d at 1269 and *Hangarter v. Provident Life & Accident Ins. Co.*, 373 F.3d 998, 1015–16 (9th Cir. 2004)). As the Advisory Committee Notes to Rule 702 indicate, "[i]n certain fields, experience is the predominant, if not sole, basis for a great deal of reliable expert testimony."

Mr. Seifert possesses specialized knowledge in industry standards and market effects as a result of his experience and training, which evolved along with the networking industry.

*First*, as a businessman, Mr. Seifert is intimately familiar with "assessing customer demands and preferences and analyzing markets and market trends in the networking industry." Seifert Rep. ¶ 15. He specializes in "understanding and translating customer needs into new product requirements," which is particularly reflected in his experience at Interlan, WellFleet, and Avaya. *See id.* ¶¶ 18, 21, 24. While Cisco argues that Mr. Seifert lacks necessary experience in standard-setting organizations ("SSOs") to opine on *de facto* industry standards, ECF 430 at 2, his testimony is not focused on the formal or ratified standards created by SSOs. ███████████████████████████████████████████████████████████████████████████████████. *See* Seifert Rep. ¶¶ 21, 26, Ex. A; Seifert Dep. Tr. 54:6-12.[2] ███████████████████████████████████████████████████. *See* Seifert Dep. Tr. 17:21-18:1-2; Seifert Rep. ¶¶ 62-65. Mr. Seifert holds both a bachelor's and master's degree of science in electrical engineering. *See* Seifert Rep., Ex. A. He even led the effort to develop an alternative interface while at Wellfleet. Seifert Rep. ¶¶ 68(ii)-(iii).

---

[1] *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 592 (1993).

[2] Declaration of Andrea Nill Sanchez in Support of Arista's Opposition to Cisco's Motion to Exclude Opinion Testimony of William Seifert ("Nill Sanchez Decl.") Ex. 1 (Excerpts from the Deposition of William M. Seifert) ("Seifert Dep. Tr.").

2
ARISTA NETWORKS, INC.'S OPPOSITION TO CISCO SYSTEMS, INC.'S MOTION TO EXCLUDE
OPINION TESTIMONY OF WILLIAM M. SEIFERT
Case No. 5:14-cv-05344-BLF (NC)

1084919

Cisco's objection to his qualifications is ironic given that Cisco objected to the disclosure of materials designated Cisco-highly confidential to Mr. Seifert, stating "[d]isclosure of Cisco's highly proprietary and commercially sensitive information and source code to an individual who has been engaged in competition with Cisco and seems likely to engage in competition with Cisco in the future is exactly the type of disclosure that the Stipulated Protective Order was put in place to prevent." See Nill Sanchez Decl. Ex. 2. Cisco's claim that Mr. Seifert lacks "any relevant expertise or knowledge about Cisco's copyrighted CLI" under Rule 702(a) is not only inconsistent with its prior position; it is also plainly wrong. See ECF 430 at 1.

### B. Mr. Seifert's *de facto* industry standard opinions more than satisfy the "reliability" test of Rule 702(b).

Mr. Seifert reached his industry standard opinions following a careful analysis of the facts. His three decades of experience in the industry, applied to the overwhelming evidence, led him to conclude that Cisco's CLI constitutes a *de facto* industry standard—an opinion that is widely held throughout the networking community.

The reliability inquiry is a flexible one, and "whether *Daubert's* specific factors are, or are not, reasonable measures of reliability in a particular case is a matter that the law grants the trial judge broad latitude to determine." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 153 (1999). Courts have "considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable." *Id.* at 152.

Cisco attacks three peripheral factual bases for Mr. Seifert's report: (1) Mr. Seifert's "spot-check" of the charts showing third-party usage of Cisco's CLI; (2) his knowledge of the exact origin date of Cisco's CLI; and (3) the fact that he has not used Cisco's CLI over the past three years. ECF 430 at 3. As to the first issue, the charts Cisco is referring to were prepared by Dr. John Black, another expert in this case. See Seifert Rep., Exs. C-D. "[E]xperts can rely upon the opinions of other experts." *MediaTek inc. v. Freescale Semiconductor, Inc.*, No. 11-CV-5341 YGR, 2014 WL 971765, at *1 (N.D. Cal. Mar. 5, 2014) (citations omitted); *see also Fujifilm Corp. v. Motorola Mobility LLC*, No. 12-CV-03587-WHO, 2015 WL 1737951, at *4 (N.D. Cal. Apr. 8, 2015).

3

ARISTA NETWORKS, INC.'S OPPOSITION TO CISCO SYSTEMS, INC.'S MOTION TO EXCLUDE
OPINION TESTIMONY OF WILLIAM M. SEIFERT
Case No. 5:14-cv-05344-BLF (NC)

1084919

1 [REDACTED]. See Seifert
2 Dep. Tr. 140:23-141:1; 141:16-17; 142:19-22.

3    With respect to Cisco's claim that Mr. Seifert did not accurately state when Cisco's first
4 products implemented a true CLI until the 1990s, Mr. Seifert reasonably based his observation on
5 an article written by a person widely-acknowledged to have been important in the development of
6 Cisco's IOS CLI, third-party consultant Terry Slattery. See Seifert Rep. ¶ 68 n.38. In Mr.
7 Slattery's article he notes that the "original Cisco router didn't even have a CLI" and that it was
8 not until "sometime before late 1990" that the CLI "was changed to cause lines to be executed as
9 soon as they were entered instead of after the CTRL-Z was input." See id. (citing
10 ARISTANDCA00265185); see also Nill Sanchez Decl., Ex. 3. At that time, "[t]here was still no
11 command history, interactive help, or command editing capability." Id. Cisco is free to argue
12 that its CLI predates Mr. Slattery's work, but this factual quibble—irrelevant to Mr. Seifert's
13 opinion and the issues in the case—is no grounds for excluding Mr. Seifert's conclusion that it
14 constitutes a *de facto* industry standard today.

15    Similarly, the fact that Mr. Seifert has not used Cisco's CLI in the past three years, has no
16 bearing on his opinions. Cisco has identified nothing about Mr. Seifert's opinion that would
17 require his recent first-hand experience with a Cisco switch. In any event, [REDACTED]
18 [REDACTED]
19 [REDACTED]. Seifert Dep. Tr. 17:21-18:2, 20:9-17. And an expert "is permitted
20 wide latitude to offer opinions, including those that are not based on firsthand knowledge."
21 *Daubert*, 509 U.S. at 592.

22    **C.    Mr. Seifert's *de facto* industry standard opinions rest on his extensive knowledge and experience under Rule 702(c).**

23

24    Cisco's attempt to challenge the principles and methods underlying Mr. Seifert's opinions
25 is also misguided. Although a court may consider factors relevant to reliability such as whether
26 an expert's methodology has been tested, subjected to peer review, or known to have an error
27 rate, this "list of specific factors neither necessarily nor exclusively applies to all experts or in all
28 cases." See *Kumho* 526 U.S. at 141. Courts should not "mechanically apply" them. *United States*

4

ARISTA NETWORKS, INC.'S OPPOSITION TO CISCO SYSTEMS, INC.'S MOTION TO EXCLUDE
OPINION TESTIMONY OF WILLIAM M. SEIFERT
Case No. 5:14-cv-05344-BLF (NC)

1084919

*v. McCaleb*, 552 F.3d 1053, 1060 (9th Cir. 2009). Instead, whether and to what extent these reliability factors apply depends "on the nature of the issue, the expert's particular expertise, and the subject of his testimony." *Kumho Tire Co.*, 526 U.S. at 150 (internal quotation marks omitted).

Mr. Seifert defines a *de facto* industry standard as "one that is neither *proprietary* nor *de jure*, but one that typically emerges over time owing to its widespread adoption by users." Seifert Rep. ¶ 37. Cisco offers no evidence that Mr. Seifert's definition is inaccurate or that an alternative one is embraced by other experts in the field.[3] He reliably determined that Cisco's CLI constitutes a *de facto* industry standard after examining four primary factors: (1) market size, *see id.* ¶¶ 71, 73, 77; *see also id.* ¶¶ 108-109; (2) number of market participants, *id.* ¶¶ 34, 71; *see also id.* ¶¶ 88-92; (3) the scarce human resources available to deploy the relevant equipment, *id.* ¶¶ 71-73; and (4) the complexity of the system involved. *Id.* ¶¶ 67-68, 71. Mr. Seifert drew from his business experience in concluding that, as a result of these factors, customers began demanding common command and control features—the absence of which can lead to network failures caused by human error. *Id.* ¶¶ 9, 71. Thus, he determined that Cisco's CLI became a *de facto* industry standard when network vendors coalesced around Cisco's CLI as a result of its market dominance and the costly training investments customers had made. *Id.* ¶¶ 11, 71-80.

Nevertheless, Cisco argues that Mr. Seifert's opinion is wholly inadmissible because he could not readily identify whether anyone else has used or accepted the *de facto* industry standard definition he applied.[4] *See* ECF 430 at 3-4. Cisco also attacks it for being "subjective" and thus "incapable of objective testing." *Id.* at 4. Cisco misconstrues the nature of Mr. Seifert's testimony and the applicable test for reliability.

In *Hangarter*, 373 F.3d at 1018, the Ninth Circuit upheld the admissibility of an expert's

---

[3] In fact, the IEEE similarly defines *de facto* industry standards as "[s]tandards that have come into use by general acceptance, custom or convention but have no formal recognition." *See* Standards Glossary, https://www.ieee.org/education_careers/education/standards/standards_glossary.htm (last visited August 16, 2016).

[4] Notably, in his deposition, Mr. Seifert specifically stated that ▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊ Seifert Dep. Tr. 27:12-17.

5

ARISTA NETWORKS, INC.'S OPPOSITION TO CISCO SYSTEMS, INC.'S MOTION TO EXCLUDE
OPINION TESTIMONY OF WILLIAM M. SEIFERT
Case No. 5:14-cv-05344-BLF (NC)

1084919

testimony that the defendants' practices were consistent with insurance industry standards.  In reaching its decision, the Ninth Circuit commented, when it comes to an expert's "non-scientific testimony," "*Daubert* factors (peer review, publication, potential error rate, etc.) simply are not applicable to this kind of testimony, whose reliability depends heavily on the *knowledge and experience* of the expert, rather than the methodology or theory behind it." *Id*. at 1017 (quoting *United States v. Hankey*, 203 F.3d 1160, 1169 (9th Cir. 2000)) (emphasis in original, internal quotation marks omitted).  Although this case deals with technical issues, Mr. Seifert's testimony on *de facto* industry standards is concerned with the networking industry's customs and practices.  Like the industry expert in *Hangarter*, his opinions are "unlike scientific or technical testimony" offered by a physician, and are not "contingent upon a particular methodology or technical framework." *Id*. at 1018.  Rather his over thirty years of relevant "experience, training, and education provide[] a sufficient foundation of reliability for his testimony." *Id.*

To the extent Mr. Seifert's testimony reflects subjective beliefs and opinions, such testimony is admissible so long as it is "based on an expert's experience in the industry[.]" *GSI Tech., Inc. v. Cypress Semiconductor Corp*., No. 5:11-CV-03613-EJD, 2015 WL 364796, at *2 (N.D. Cal. Jan. 27, 2015) (citations omitted).  As one court has pointed out, "an expert's manifestly subjective opinion" is still admissible where "the expert is operating within a vocational framework that may have numerous objective components, but the expert's ultimate opining is likely to depend in some measure on experiential factors that transcend precise measurement and quantification." *United States v. Llera Plaza*, 188 F. Supp. 2d 549, 570-571 (E.D. Pa. 2002) (listing cases).  Cisco offers no legal basis for excluding testimony merely because it is based upon a "subjective" evaluation.  And Cisco has further failed to demonstrate that Mr. Seifert's analysis is somehow inconsistent with that employed by other experts in the field. *See Speaks v. Mazda Motor Corp.*, 118 F. Supp. 3d 1212, 1219 (D. Mont. 2015) ("[A]bsent any evidence that [the expert's] methodology is inconsistent with that employed by other expert's [sic] in the field, or is otherwise based on invalid science, Mazda merely attacks the weight of the proffered testimony.").

6
ARISTA NETWORKS, INC.'S OPPOSITION TO CISCO SYSTEMS, INC.'S MOTION TO EXCLUDE
OPINION TESTIMONY OF WILLIAM M. SEIFERT
Case No. 5:14-cv-05344-BLF (NC)

1084919

### D. Mr. Seifert's *de facto* industry standard opinions are the product of a reliable application of his analysis to the facts under Rule 702(d).

Cisco's arguments to the effect that Mr. Seifert failed to reliably apply his principles and methods to the facts of the case are both inaccurate and unavailing.

*First*, Cisco incorrectly states that Mr. Seifert's *de facto* industry standard opinions should be excluded because he did not identify when Cisco's CLI became a *de facto* industry standard. ECF 430 at 5. Yet, the section in Mr. Seifert's report on Cisco's development and promotion of a *de facto* standard begins by explaining that, by the 1990s, Cisco dominated the router market and customers began demanding that its competitors adopt some of the same command and control features. Seifert Rep. ¶ 71. ███████████████████████████████████
████████████████████████████████████████████████████ Seifert Dep. Tr. 61:7-11. The relevant fact is that Cisco's CLI is currently a *de facto* industry standard and has been for quite some time; and there is no principled reason why Mr. Seifert needs to give a precise starting date for his opinion to be admissible.

*Second*, Cisco's criticism of Mr. Seifert's testimony for failing to identify which aspects of its CLI he was assessing also misses the mark. ████████████████████████████
██████████████████████████████████████████████████████████.
*See* Seifert Dep. Tr. 66:12-16 ("████████████████████████████████████
██████████████████████████████████████████████████████████
██████████████████████████████████████████████"); 67:3-7 ███████
██████████████████████████████████████████████████████████
████████████████████████████████████████████████████"). ████
██████████████████████████████████████████████████████████
██████████████████████████████████████. *See id.* 68:7-12; 71:13-16.

Mr. Seifert's use of terms such as "Cisco CLI" or "industry standard CLI" comports with the generic references to Cisco's CLI found in industry news and publications, including marketing literature produced by other competitors. *See e.g.* Seifert Rep. ¶ 72 n.42 (citing *Network World* article stating "Cisco's CLI has become a standard in the industry"); ¶ 80 (citing

7

ARISTA NETWORKS, INC.'S OPPOSITION TO CISCO SYSTEMS, INC.'S MOTION TO EXCLUDE
OPINION TESTIMONY OF WILLIAM M. SEIFERT
Case No. 5:14-cv-05344-BLF (NC)

1084919

marketing materials produced by Hewlett Packard, Dell, Brocade, and others referring to "industry standard CLI"). Cisco itself has used similar terminology to emphasize its CLI's familiarity and interoperability. *See id*. ¶ 76. Mr. Seifert's understanding is also consistent with Dr. Black's definition, which refers to the "common, well-known, and widely adopted features and functionality of CLIs supported across multiple vendors' networking devices . . . with which end users . . . have become and are familiar." ECF 431, Ex. 1, (Black Rep.) ¶ 171.

> E. **Mr. Seifert's *de facto* industry standard opinions directly bear on contested issues and will aid the trier of fact**

Mr. Seifert's industry standard opinions are highly relevant to many contested issues, including fair use, estoppel, damages, and injunctive relief.

Cisco cites *Oracle v. Google* for the proposition that there is no "industry standard" defense to copyrightability, but that aphorism is irrelevant because Arista does not claim that "industry standard" status defeats the protectability of any copyrighted work. But Cisco overlooks the law that achieving interoperability with a standard *is* relevant to several fair use factors. *See Oracle America, Inc. v. Google*, *Inc.*, 750 F.3d. 1339, 1376–77 (Fed. Cir. 2014). Moreover, "fair use is appropriate where a 'reasonable copyright owner' would have consented to the use, i.e., where the 'custom … ' at the time would have defined the use as reasonable." *Wall Data Inc. v. Los Angeles County Sheriff's Dept.*, 447 F.3d 769, 778 (9th Cir. 2006). Mr. Seifert's opinion concerning the rise of Cisco's CLI as a *de facto* industry standard is clearly relevant to the fair use analysis.

Mr. Seifert's opinion is also relevant to Arista's estoppel defense. For example, Mr. Seifert's opinion includes the observation that Cisco knew, encouraged, and benefitted from the industry's use of its CLI. *See* Seifert Rep. ¶¶ 3, 76-78. That knowledge by Cisco of Arista's support of an "industry standard" CLI is an essential element of the estoppel defense. *See McIntosh v. N. Cal. Universal Enters. Co.*, 670 F. Supp. 2d 1069, 1101 (E.D. Cal. 2009). Mr. Seifert's *de facto* industry standard opinion is also relevant to damages and injunctive relief, as Cisco cannot plausibly claim substantial monetary or irreparable harm where aspects of its CLI are, and have been, widely used by the majority of vendors across the industry. *Id*. ¶¶ 77, 80.

8
ARISTA NETWORKS, INC.'S OPPOSITION TO CISCO SYSTEMS, INC.'S MOTION TO EXCLUDE
OPINION TESTIMONY OF WILLIAM M. SEIFERT
Case No. 5:14-cv-05344-BLF (NC)

1084919

     **F.    Mr. Seifert's market effect opinions rest on specialized knowledge, reasonable assumptions, and reliable data under Rules 702(a), (b), and (c).**

Mr. Seifert's conclusion that Arista's use of accused CLI elements has not likely affected Cisco's market share rests on objective data and his seasoned expertise.

Mr. Seifert properly opines that, based on his experience in the industry, "all of the evidence" indicates that Arista's market share growth has not been due to its use of common CLI features, but rather feature and performance superiority. Seifert Rep. ¶¶ 111-112. That evidence, which Mr. Seifert carefully reviewed, consists not only of stated customer preferences—it also includes the published results of "grueling" performance tests conducted by a trusted technology publication, *Network World*, and Arista product information and marketing messaging. *Id.* ¶¶ 93-95, 96, 98-99, 100-101, 104. To further evaluate whether the use of Cisco's CLI caused Cisco market harm, Mr. Seifert considered the relative chassis/modular data center Ethernet switch port market shares of Cisco, Arista, and three competitors in the data center. *Id.* ¶¶ 106-111. He observed that the similarity of a vendor's CLI to Cisco's CLI does not correlate with changes to that vendor's market share, which suggests that Cisco suffered no market harm as a result of Arista's use of common CLI elements. *Id.*

Cisco offers no explanation as to why Mr. Seifert's extensive experience is not a sufficient qualification for his opinion on the topic under Rule 702(a). His experience setting corporate strategy and his track record as a successful entrepreneur qualify him to assess customer demands and corresponding market share fluctuations in the networking industry. Seifert Rep. ¶ 15, Ex. A.

Cisco's criticism that Mr. Seifert improperly weighs third-party preferences without analysis lacks merit. *See* ECF 430 at 7-8. Mr. Seifert does not testify on the intent, motive, or state of mind of third parties. Instead, he properly considers the opinions expressed by third parties as among the relevant evidence for his analysis. It is "permissible for experts to quote from fact testimony or emails, memos, letters or other documents which are part of the *res gestae* of the case and then to explicitly assume that they accurately reflect the relevant circumstances and then, based thereon, apply their specialized expertise to render opinions beyond the ken of our lay jury." *Oracle America v. Google, Inc.*, 10–CV–03561–WHA, at ECF 1803.

9
ARISTA NETWORKS, INC.'S OPPOSITION TO CISCO SYSTEMS, INC.'S MOTION TO EXCLUDE OPINION TESTIMONY OF WILLIAM M. SEIFERT
Case No. 5:14-cv-05344-BLF (NC)

1084919

[REDACTED]. *See e.g.* Nill Sanchez Decl. Ex. 4 (Expert Rep. of Judith A. Chevalier, June 24, 2016 ¶¶ 41, 43); Nill Sanchez Decl. Ex. 5 (Rebuttal Expert Rep. on Fair Use of Judith A. Chevalier, June 17, 2016 ¶¶ 90-95) ([REDACTED]).

Cisco's arguments concerning the fact that Mr. Seifert did not personally inspect or use Arista's or Cisco's products for the purposes of preparing his report are also a red herring. Once again, an expert's opinions need not be based on firsthand knowledge. *See Daubert*, 509 U.S. at 592. Moreover, Mr. Seifert's opinions are not grounded in an independent assessment of Arista's and Cisco's *actual* product performance but rather the market's reception and reaction to the companies' respective products.

### III.  CONCLUSION

For the above reasons, Cisco's Motion to exclude Mr. Seifert's opinions should be denied.

Dated: August 19, 2016

KEKER & VAN NEST LLP

WILSON SONSINI GOODRICH & ROSATI

By: */s/ Robert A. Van Nest*
ROBERT A. VAN NEST

Attorneys for Defendant
ARISTA NETWORKS, INC.