1  Kathleen Sullivan (SBN 242261)
   kathleensullivan@quinnemanuel.com
2  QUINN EMANUEL URQUHART &
   SULLIVAN LLP
3  51 Madison Avenue, 22nd Floor
   New York, NY 10010
4  Telephone: (212) 849-7000
   Facsimile: (212) 849-7100
5
   Sean S. Pak (SBN 219032)
6  seanpak@quinnemanuel.com
   Amy H. Candido (SBN 237829)
7  amycandido@quinnemanuel.com
   John M. Neukom (SBN 275887)
8  johnneukom@quinnemanuel.com.
   QUINN EMANUEL URQUHART &
9  SULLIVAN LLP
   50 California Street, 22nd Floor
10 San Francisco, CA 94111
   Telephone: (415) 875-6600
11 Facsimile: (415) 875-6700

   Steven Cherny *(admitted pro hac vice)*
   steven.cherny@kirkland.com
   KIRKLAND & ELLIS LLP
   601 Lexington Avenue
   New York, New York 10022
   Telephone: (212) 446-4800
   Facsimile: (212) 446-4900

   Adam R. Alper (SBN 196834)
   adam.alper@kirkland.com
   KIRKLAND & ELLIS LLP
   555 California Street
   San Francisco, California 94104
   Telephone: (415) 439-1400
   Facsimile: (415) 439-1500

   Michael W. De Vries (SBN 211001)
   michael.devries@kirkland.com
   KIRKLAND & ELLIS LLP
   333 South Hope Street
   Los Angeles, California 90071
   Telephone: (213) 680-8400
   Facsimile: (213) 680-8500

12

13 *Attorneys for Plaintiff Cisco Systems, Inc.*

14

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

| | |
|---|---|
| CISCO SYSTEMS, INC.,<br><br>    Plaintiff,<br><br>    vs.<br><br>ARISTA NETWORKS, INC.,<br><br>    Defendant. | CASE NO. 5:14-cv-5344-BLF<br><br>**CISCO SYSTEMS, INC.'S OPPOSITION TO ARISTA NETWORKS, INC.'S MOTION TO STRIKE EXPERT OPINIONS AND TESTIMONY OF DR. JUDITH A. CHEVALIER**<br><br>**REDACTED VERSION**<br><br>Date:  September 9, 2016<br>Time:  9:00 a.m.<br>Dep't:  Courtroom 3, 5th Floor<br>Judge:  Hon. Beth Labson Freeman<br><br>Date Filed:  December 5, 2014<br><br>Trial Date:  November 21, 2016 |

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ..................................................................................................................1

II. ARGUMENT .........................................................................................................................2

    A. Dr. Chevalier's Opinion That Arista Has Failed to Meet Its Burden To Apportion Profits Is Proper And Should Be Admitted. ............................................2

    B. Dr. Chevalier's "Scenario 3" Is Proper Expert Opinion and Should Not Be Excluded. ....................................................................................................................5

        1. Dr. Chevalier's analysis for "Scenario 3" relies on her specialized knowledge and expertise. ................................................................................5

        2. Dr. Chevalier's "Scenario 3" opinions are based on accepted and reliable methodologies. ..................................................................................6

        3. Arista's challenge to Dr. Chevalier's "Scenario 3" opinion goes to the weight of the opinion, not to its admissibility. ..........................................8

        4. Dr. Chevalier's "Scenario 3" opinion is supported by the record. .................9

III. CONCLUSION ...................................................................................................................10

# TABLE OF AUTHORITIES

**Page**

### Cases

*Abend v. MCA, Inc.*,
  863 F.2d 1465 (9th Cir. Cal 1988) ..........................................................................................4

*Alaska Rent-A-Car, Inc. v. Avis Budget Group, Inc.*,
  738 F.3d 960 (9th Cir. 2013) ..........................................................................................8, 10, 11

*Cream Records, Inc. v. Jos. Schlitz Brewing Co.*,
  754 F.2d 826 (9th Cir. 1985) ..................................................................................................4

*Frank Music Corp. v. Metro-Goldwyn-Mayer Inc.*,
  886 F.2d 1545 (9th Cir. 1989) ................................................................................................4

*Fresenius Med. Care Holdings, Inc. v. Baxter Int'l, Inc.*,
  No. C 03-1431 SBA, 2006 WL 1390416 (N.D. Cal. May 18, 2006) .........................................9

*Guthy-Renker Corp. v. Bernstein*,
  39 Fed. Appx. 584 (9th Cir. 2002) ...........................................................................................4

*Highland Capital Mgmt., L.P. v. Schneider*,
  379 F. Supp. 2d 461 (S.D.N.Y. 2005) .....................................................................................7

*Jarvis v. K2 Inc.*,
  486 F.3d 526 (9th Cir. 2007) ............................................................................................. 7-8

*Moses v. Payne*,
  555 F.3d 742 (9th Cir. 2009) ...................................................................................................5

*Oracle Am., Inc. v. Google, Inc.*,
  No. c 10-03561 WHA, 2016 WL 2342365 (N.D. Cal. May 3, 2016) ...............................2, 3, 4

*Plantronics, Inc. v. Aliph, Inc.*,
  No. C 09-01714 WHA 2014 U.S. Dist. LEXIS 22405 (N.D. Cal. Feb. 21, 2014) .....................7

*Polar Bear Prods., Inc. v. Timex Corp,*,
  384 F.3d 700 (9th Cir. 2004) ...................................................................................................5

*Primiano v. Cook*,
  598 F.3d 558 (9th Cir. 2010) ..............................................................................................9, 10

*In re Rezulin Prods. Liab. Litig.*,
  309 F. Supp. 2d 531 (S.D.N.Y. 2004) .....................................................................................7

*Sheldon v. Metro-Goldwyn Pictures Corp.*,
  106 F.2d 45 (2d Cir. 1939) ...................................................................................................4, 5

*Sheldon v. Metro-Goldwyn Pictures Corp.*,
  309 U.S. 390 (1940) ............................................................................................................4, 5, 7

*State Indus, Inc.. v. Mor-Flo Indus., In*,
 883 F.2d 1573 (Fed. Cir. 1989) .................................................................................................. 7

*Three Boys Music Corp. v. Bolton*,
 212 F.3d 477 (9th Cir. 2000) ..................................................................................................... 4

*United States v. Morales*,
 108 F.3d 1031 (9th Cir. 1997) ................................................................................................... 5

*United States v. Winters*,
 729 F.2d 602 (9th Cir. 1984) ..................................................................................................... 5

**Rules/Statutes**

17 U.S.C. § 504(b) ........................................................................................................................ 1, 5

Fed. R. Evid., Rule 702 ................................................................................................................. 5, 9

Fed. R. Evid., Rule 702(a) ................................................................................................................ 5

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Arista's Motion to Strike ("Motion") two of Dr. Chevalier's expert opinions should be denied. *First*, Arista claims that Dr. Chevalier should not be permitted to provide her opinion with regard to the disgorgement of Arista's profits for copyright infringement. Contrary to Arista's claims, Dr. Chevalier does not have a "no apportionment" opinion with respect to the disgorgement of Arista's profits. Instead, Dr. Chevalier correctly points out that it is Arista's burden to prove any such apportionment. Dr. Chevalier then provides a critique of Arista's expert's apportionment analysis and concludes that it does not result in any reasonable approximation of a proper apportionment. This opinion is proper under 17 U.S.C. § 504(b) and the controlling case law.

*Second*, Arista claims that Dr. Chevalier should be precluded from presenting the jury with part of her lost-profits analysis, ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬. As an initial matter, Arista's allegations go to the weight of the evidence and not to the admissibility of Dr. Chevalier's opinion. Prevailing case law makes it clear that in this situation Arista's remedy is to cross-examine Dr. Chevalier at trial and to attempt to present its own contrary evidence, not to exclude the opinion. Furthermore, the deposition testimony relied on by Dr. Chevalier cannot be properly described as ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬. And, as described below, Dr. Chevalier's lost-profits opinion is based on far more than just witness testimony. The bases for her opinion include a market share analysis, an analysis of demand, a capacity analysis, a determination of Cisco's incremental profit rate, and a magnitude of additional evidence showing that ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬. Therefore, Arista's motion to preclude Dr. Chevalier's opinions should be denied.

## II.   ARGUMENT

### A.   Dr. Chevalier's Opinion That Arista Has Failed to Meet Its Burden To Apportion Profits Is Proper And Should Be Admitted.

Arista's Motion to strike Dr. Chevalier's so-called "no apportionment" opinion should be rejected because it is based on the false premise that Dr. Chevalier has an affirmative opinion apportioning 100% of Arista's profits to the infringing CLI, and it improperly seeks to preclude Dr. Chevalier from testifying that Arista failed to meet its burden to apportion profits.  "In establishing the infringer's profits, the copyright owner is required to present proof only of the infringer's gross revenue, and the infringer is required to prove his or her deductible expenses and the elements of profit attributable to factors other than the copyrighted work."  17 U.S.C. § 504(b).  Having calculated Arista's gross revenues in her Damages Expert Report and recognizing that it is Arista's burden to prove its expenses and apportion profits, Dr. Chevalier concludes:  "[I]t is my opinion that Ms. Elsten has not presented a sufficiently reliable analysis to provide a reasonable approximation of the portion of Arista's profits attributable to its use of Cisco's copyrighted works."  *See* Surrebuttal Report (Decl. of Elizabeth K. McCloskey, Dkt. 424, ("McCloskey Decl.") Ex. E at ¶ 5.  Therefore, Dr. Chevalier calculates Arista's profits from its infringement without applying Ms. Elsten's apportionment factors.  *See id.* at ¶ 57.

Contrary to Arista's assertions (Motion at 4), this is precisely the framework that Judge Alsup endorsed in *Oracle Am., Inc. v. Google, Inc.*, No. c 10-03561 WHA, 2016 WL 2342365 (N.D. Cal. May 3, 2016).  There, Judge Alsup permitted Oracle's expert, Malackowski, to present an opinion that is consistent with Dr. Chevalier's opinion here, ruling that Oracle need not offer an apportionment opinion at all and could rest on its expert's opinion regarding Google's revenues "in hopes that Google fails to carry its burden of demonstrating that further apportionment or expense deduction is appropriate."  *Id.* at *7.  Then, after Google offered its apportionment analysis, Oracle's expert, Malackowski, would be permitted to present "specific critiques of Google's own apportionment methodology and expense deductions (as well as his own further expense deductions)."  *Id.*  Judge Alsup acknowledged that this would require Oracle's expert to appear twice—*first*, to testify on Google's revenues, and *second*, to critique Google's

apportionment methodology and expense deductions. *Id*. Dr. Chevalier's apportionment opinion is structured to follow precisely this framework. First, she sets out Arista's revenues for the relevant time periods. Then, assuming *arguendo* that any of Arista's apportionment opinion survives Cisco's *Daubert* motion, Ms. Elsten will present that opinion. Afterwards, Dr. Chevalier will present her critique of Arista's apportionment opinion.

Contrary to Arista's implications, and in stark contrast to the portion of Malackowski's opinion that was excluded by Judge Alsup, Dr. Chevalier does not offer her own apportionment methodology or opine that it is appropriate to apportion 100% of Arista's profits to the CLI. *Cf. id.*, at *6 (noting Malackowski undertook his own affirmative apportionment analysis, "apportioned 100% of the profits attributable to the platform to the declaring code and SSO of 37 APIs, and opined that Oracle could disgorge the full $8.8 billion"). In fact, she readily acknowledges that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Unlike Oracle's expert, Dr. Chevalier has not engaged in the exercise of apportionment, except to the extent she has provided alternative calculations using Ms. Elsten's general approach to apportionment with several corrections for some of the many flaws Dr. Chevalier identifies in Ms. Elsten's approach.[1] Thus, Arista's citation to *Oracle v. Google* for the uncontroversial proposition that ***"to the extent [plaintiff] engages in the exercise of apportionment***, he must offer a methodology tied to the purpose of making a reasonable approximation of the profits attributable to the allegedly infringing elements," is unavailing. *Oracle,* 2016 WL 2342365, at *7 (emphasis added).

---

[1] Dr. Chevalier states: "[I]n the event that Ms. Elsten's general apportionment methodology and/or her deducting of expenses are deemed sufficiently reliable for purposes of calculating Arista's unjust enrichment, I have provided alternative calculations of Arista's profits from its infringement using Ms. Elsten's general approach, but correcting for certain flaws in her analysis discussed above." Surrebuttal Report (McCloskey Decl. Ex. E) at ¶ 59.

1   Although case law does not require apportionment to be calculated with certainty, it does
2   require that the apportionment be based on some rational, or reasonable, approximation. All of the
3   cases cited by Arista are in accord. *See Cream Records, Inc. v. Jos. Schlitz Brewing Co.,* 754 F.2d
4   826, 828-29 (9th Cir. 1985) (the court must conduct some apportionment of profits if the
5   "evidence suggests some division which may rationally be used as a springboard"); *Guthy-Renker*
6   *Corp. v. Bernstein*, 39 Fed. Appx. 584, 587 (9th Cir. 2002) (citing *Cream Records* to support
7   apportionment of a damages award that linked the apportioned profits with the amount of time and
8   space a photograph appeared on the screen in an infringing advertisement); *Abend v. MCA, Inc.*,
9   863 F.2d 1465, 1480 (9th Cir. Cal 1988) (any apportionment must be "reasonable and just");
10  *Sheldon v. Metro-Goldwyn Pictures Corp.,* 106 F.2d 45, 51 (2d Cir. 1939) (same).
11  Here, Dr. Chevalier's opinion is that Arista's apportionment analysis is not "sufficiently
12  reliable" to provide a "reasonable approximation of the portion of Arista's profits that are
13  attributable to its use of Cisco's copyrighted works." Surrebuttal Report (McCloskey Decl. Ex. E)
14  at ¶ 57. Precluding Dr. Chevalier from presenting this opinion would be prejudicial to Cisco, as
15  the jury could be provided with Arista's inadequate apportionment opinion, but Dr. Chevalier
16  would not be allowed to critique that opinion and explain to the jury why it is unreasonable and
17  unreliable. Cisco must be allowed to present this opinion because the Ninth Circuit has made it
18  clear that the jury does not have to accept the defendant's expert's apportionment opinion:
19  "[A]pportioning less than 100% of the profits but more than the percentage estimates of [the
20  defendant's] experts does not represent clear error," so long as the jury is adequately instructed on
21  the statutory burden of proof. *Three Boys Music Corp. v. Bolton*, 212 F.3d 477, 487 (9th Cir.
22  2000). Any uncertainty in determining the amount of the award should favor the plaintiff. *Frank*
23  *Music Corp. v. Metro-Goldwyn-Mayer Inc.,* 886 F.2d 1545, 1549 (9th Cir. 1989) ("In performing
24  the apportionment, the benefit of the doubt must always be given to the plaintiff, not the
25  defendant."); *see Sheldon v. Metro-Goldwyn Pictures Corp.,* 106 F.2d 45, 51 (2nd Cir. 1939);
26  *aff'd* at 309 U.S. 390, 406 (1940) ("We will not accept the experts' testimony at its face value; we
27  must make an award which by no possibility shall be too small. It is not our best guess that must
28  prevail, but ***a figure which will favor the plaintiffs in every reasonable chance of error***.")

(emphasis added). Thus, under the standard set by the Supreme Court and applied by the Ninth Circuit, if the jury finds that Arista has not met its burden "to prove [its] deductible expenses and the elements of profit attributable to factors other than the copyrighted work," § 504(b), the jury can award Arista's gross revenues "reasonably associated with the infringement" to Cisco. *Polar Bear Prods., Inc. v. Timex Corp,,* 384 F.3d 700, 715 (9th Cir. 2004).

### B. Dr. Chevalier's "Scenario 3" Is Proper Expert Opinion and Should Not Be Excluded.

"An expert witness's 'testimony is admissible under Rule 702 if (1) the subject matter at issue is beyond the common knowledge of the average layman, (2) the witness has sufficient expertise, and (3) the state of the pertinent art or scientific knowledge permits the assertion of a reasonable opinion.'" *United States v. Winters*, 729 F.2d 602, 605 (9th Cir. 1984) (*citing United States v. Morales*, 108 F.3d 1031, 1038 (9th Cir. 1997). In her report, Dr. Chevalier presents three scenarios under which Cisco could recover its lost profits for Arista's copyright infringement, all three of which satisfy these criteria. Arista moves to strike only the third scenario. Dr. Chevalier has the requisite expertise to present this opinion, the opinion involves a subject matter that is beyond the common knowledge of the average layman, and the opinion is based on analysis that is reasonable and reliable. For these reasons, Dr. Chevalier should not be precluded from presenting lost profits "Scenario 3."

#### 1. Dr. Chevalier's analysis for "Scenario 3" relies on her specialized knowledge and expertise.

Consistent with Rule 702(a), Dr. Chevalier's "Scenario 3" lost profits opinion should be admitted because it is based on "scientific, technical, or other specialized knowledge" and will help the trier of fact to understand "matters beyond the common knowledge of the average layperson." *See also Moses v. Payne*, 555 F.3d 742, 756 (9th Cir. 2009). To formulate her "Scenario 3" lost profits opinions, Dr. Chevalier drew upon her extensive experience and expertise in economics, finance and market dynamics to analyze and interpret an extensive factual record in this case, to perform analyses of market demand, market share, market capacity, and to calculate

incremental profits and lost sales. Dr. Chevalier's expertise cannot reasonably be disputed,[2] and the fact that Arista's motion ignores Dr. Chevalier's market analyses and quantitative analyses does not mean they are not critical aspects of her opinion that will assist the jury.

### 2. Dr. Chevalier's "Scenario 3" opinions are based on accepted and reliable methodologies.

Contrary to Arista's claim that Dr. Chevalier's Scenario 3 opinion is not "expert testimony," Dr. Chevalier's analysis is comprised of several steps, each of which required her expertise and judgment and which are beyond the common knowledge of the average layperson. As discussed in the Chevalier Damages Report (McCloskey Decl. Ex. A at pp. 22-44), they include:

- An assessment of whether there is market demand for the accused copyrighted works (Chevalier Damages Report (McCloskey Decl. Ex. A) at pp. 23-25);
- A qualitative assessment of the evidence regarding the proportion of sales that Arista would not have made but for its copyright infringement (*id.* at pp. 16-21; 23-28; 41-42);
- A market share analysis to estimate Cisco's lost revenues during the period of December 2011 through March 2016 that takes into account the portion of Arista's sales that Cisco would have made but for Arista's infringement (*id.* at pp. 23-25, 39-40);
- An analysis of Cisco's marketing and manufacturing capacity to make any incremental sales but for the infringement (*id.* at pp. 28-29);
- Analysis of Cisco's incremental profit rate on the lost sales (*id.* at p. 40); and
- Calculation of Cisco's estimated lost profits (*id.* at pp. 40-42).

Each of these steps is the province of economic expertise and analysis, not "simple inferences drawn from uncomplicated facts." *Cf. In re Rezulin Prods. Liab. Litig.*, 309 F. Supp. 2d 531, 551 (S.D.N.Y. 2004) (precluding an expert from presenting a history of the company where "the glosses that [the expert] interpolates into his narrative are simple inferences drawn from uncomplicated facts that serve only to buttress plaintiffs' theory of the case"). While Dr. Chevalier must rely on the factual record in performing her "Scenario 3" analysis, unlike the cases

---

[2] Dr. Chevalier is the William S. Beinecke Professor of Economics and Finance at the Yale University School of Management with a joint courtesy appointment at the Yale Department of Economics. She has an undergraduate degree in Economics from Yale University, a Ph.D. in Economics from the Massachusetts Institute of Technology and more than twenty years of experience in economics, finance and market dynamics as described in Exhibit 1 to her report. She is an Elected Fellow of the Econometric Society, among many other honors recognizing her achievements. *See* Exhibit 1 to Chevalier Damages Report (McCloskey Decl. Ex. A).

cited by Arista, Dr. Chevalier's "Scenario 3" opinion is based on economic expertise and analysis, not a mere "factual narrative based on record evidence." *Cf. Highland Capital Mgmt., L.P. v. Schneider*, 379 F. Supp. 2d 461, 469 (S.D.N.Y. 2005) (acknowledging that an expert may rely on the facts or data of others, but precluding the expert from presenting testimony to the jury "solely for the purpose of constructing a factual narrative based upon record evidence").

Although Arista attempts to discredit Dr. Chevalier's "Scenario 3" for not naming specific customers (Motion at 5-7), Arista fails to cite a single case finding that a lost profits analysis must name customers in order to be reliable. To the contrary, lost profits opinions are regularly based on a market share approach, as Dr. Chevalier has done here, and market share approaches typically rely on the plaintiff's but-for market share percentage, rather than identifying specific customers who would have bought from the plaintiff in a but-for world. *See, e.g.*, *State Indus, Inc.. v. Mor-Flo Indus., In*, 883 F.2d 1573, 1578 (Fed. Cir. 1989) (where there are multiple competitors, a market share analysis established the amount of lost sales with a "reasonable probability"); *Plantronics, Inc. v. Aliph, Inc.*, No. C 09-01714 WHA 2014 U.S. Dist. LEXIS 22405, 10-12 (N.D. Cal. Feb. 21, 2014) (plaintiff's expert permitted to present a lost-profits opinion based on market share). Although these cases relate to market share within the context of patent damages, copyright cases often mirror patent cases regarding damages, and there is no reason that a market share analysis would be any less reliable for the purpose of calculating lost profits for copyright than it would be for patent. *See Sheldon v. Metro-Goldwyn Pictures Corp.*, 309 U.S. 390, 400-403 (1940) (adopting apportionment from patent law for copyright cases); *Jarvis v. K2 Inc.*, 486 F.3d 526, 533 (9th Cir. 2007) (actual damages calculated as what a willing buyer would have paid a willing seller to use the copyrighted work, as a reasonable royalty would be calculated for patent cases).

In her "Scenario 3" opinion, Dr. Chevalier draws on her economic expertise to employ regularly accepted economic methods by relying on facts and data, such as Arista's and Cisco's sales numbers, third-party research regarding market share and evidence in the form of documents and sworn testimony, in order to prepare and support her analysis. Using these facts and data to prepare separate analyses of demand, market share and capacity, as well as an assessment

1  regarding the sales that Cisco would have made but-for Arista's copyright infringement and
2  calculations of those lost sales, as well as Cisco's incremental profit margins, are tasks that go
3  well beyond the abilities or knowledge of the average layperson. Therefore, Dr. Chevalier's
4  "Scenario 3" opinion, including the underlying facts and data points that were used in the
5  preparation of her opinion, should not be excluded.

### 3. Arista's challenge to Dr. Chevalier's "Scenario 3" opinion goes to the weight of the opinion, not to its admissibility.

Arista claims that Dr. Chevalier's "Scenario 3" opinion ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████. Arista is improperly invoking *Daubert* to resolve factual disputes about the interpretation and weight of hotly contested factual testimony, but such questions are for the jury and are not relevant to the admissibility of Dr. Chevalier's testimony. *See, e.g., Alaska Rent-A-Car, Inc. v. Avis Budget Group, Inc.*, 738 F.3d 960, 969-970 (9th Cir. 2013) ("Basically, the judge is supposed to screen the jury from unreliable nonsense opinions, but not exclude opinions merely because they are impeachable. The district court is not tasked with deciding whether the expert is right or wrong, just whether his testimony has substance such that it would be helpful to a jury.").

The Ninth Circuit holds that the "test of reliability" for a testifying expert "is 'flexible.'… When an expert meets the threshold established by Rule 702 as explained in *Daubert*, the expert may testify and the jury decides how much weight to give that testimony." *Primiano v. Cook*, 598 F.3d 558, 564 (9th Cir. 2010). "Shaky but admissible evidence is to be attacked by cross examination, contrary evidence, and attention to the burden of proof, not exclusion." *Id.* at 564. "Only if the expert's opinion is so fundamentally unsupported that it can offer no assistance to the

---

3 ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

jury must such testimony be excluded." *Fresenius Med. Care Holdings, Inc. v. Baxter Int'l, Inc.*, No. C 03-1431 SBA, 2006 WL 1390416, at *3 (N.D. Cal. May 18, 2006).  Here, Arista's criticisms of Dr. Chevalier's reliance on specific evidence should be addressed by cross-examination, not exclusion.

### 4. Dr. Chevalier's "Scenario 3" opinion is supported by the record.

▇▇▇▇ However, to the extent that Arista continues to argue that Dr. Chevalier's opinion is based on ▇▇▇▇, Arista's remedy is to cross-examine Dr. Chevalier at trial, to attempt to present its own contrary evidence, and to call its own witnesses

1  at trial, but not to exclude Dr. Chevalier's testimony.  *See Primiano*, 598 F.3d at 564; *Alaska Rent-*
2  *A-Car*, 738 F.3d at 969-970.
3        Arista also contends that Dr. Chevalier's "Scenario 3" opinion should be excluded because



6  Motion at
7  6-7.

24  If Arista disagrees with Dr. Chevalier's approach and conclusions, it can seek to
25  impeach her at trial.  *See Alaska Rent-A-Car*, 738 F.3d at 969-970.

### III. CONCLUSION

27        For foregoing reasons, Arista's Motion should be DENIED.

| | |
|---|---|
| Dated: August 19, 2016 | Respectfully submitted, |
| | */s/ John M. Neukom*<br>Kathleen Sullivan (SBN 242261)<br>kathleensullivan@quinnemanuel.com<br>QUINN EMANUEL URQUHART & SULLIVAN LLP<br>51 Madison Avenue, 22nd Floor<br>New York, NY 10010<br>Telephone: (212) 849-7000<br>Facsimile: (212) 849-7100 |

Sean S. Pak (SBN 219032)
seanpak@quinnemanuel.com
Amy H. Candido (SBN 237829)
amycandido@quinnemanuel.com
John M. Neukom (SBN 275887)
johnneukom@quinnemanuel.com.
QUINN EMANUEL URQUHART & SULLIVAN LLP
50 California Street, 22nd Floor
San Francisco, CA 94111
Telephone: (415) 875-6600
Facsimile: (415) 875-6700

Steven Cherny *admitted pro hac vice)*
steven.cherny@kirkland.com
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900

Adam R. Alper (SBN 196834)
adam.alper@kirkland.com
KIRKLAND & ELLIS LLP
555 California Street
San Francisco, California 94104
Telephone: (415) 439-1400
Facsimile: (415) 439-1500

(continued next page)

Michael W. De Vries (SBN 211001)
michael.devries@kirkland.com
KIRKLAND & ELLIS LLP
333 South Hope Street
Los Angeles, California 90071
Telephone: (213) 680-8400
Facsimile: (213) 680-8500

*Attorneys for Plaintiff Cisco Systems, Inc.*