ROBERT A. VAN NEST - # 84065
BRIAN L. FERRALL - # 160847
DAVID SILBERT - # 173128
MICHAEL S. KWUN - # 198945
KEKER & VAN NEST LLP
633 Battery Street
San Francisco, CA 94111-1809
Telephone: (415) 391-5400
Email: rvannest@kvn.com;
bferrall@kvn.com; dsilbert@kvn.com;
mkwun@kvn.com; aramani@kvn.com

SUSAN CREIGHTON, SBN 135528
SCOTT A. SHER, SBN 190053
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
1700 K Street NW, Fifth Floor
Washington, D.C., 20006-3817
Telephone: (202) 973-8800
Email: screighton@wsgr.com;
ssher@wsgr.com

JONATHAN M. JACOBSON, NY SBN 1350495
CHUL PAK (*pro hac vice*)
DAVID H. REICHENBERG (*pro hac vice*)
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
1301 Avenue Of The Americas, 40th Floor
New York, NY 10019-6022
Telephone: (212) 999-5800
Email: jjacobson@wsgr.com; cpak@wsgr.com;
dreichenberg@wsgr.com

Attorneys for Defendant ARISTA NETWORKS, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| CISCO SYSTEMS, INC.,<br><br>  Plaintiff,<br><br>  v.<br><br> ARISTA NETWORKS, INC.,<br><br>  Defendant. | Case No. 5:14-cv-05344-BLF (NC)<br><br>**ARISTA'S REPLY IN SUPPORT OF MOTION TO STRIKE EXPERT OPINIONS AND TESTIMONY OF DR. JUDITH A. CHEVALIER**<br><br>Date: September 9, 2016<br>Time: 9:00 a.m.<br>Dept: Courtroom 3 - 5th Floor<br>Judge: Hon. Hon. Beth Labson Freeman<br><br>Date Filed: December 5, 2014<br><br>Trial Date: November 21, 2016 |

**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

ARISTA'S REPLY IN SUPPORT OF MOTION TO STRIKE
EXPERT OPINIONS AND TESTIMONY OF DR. JUDITH A. CHEVALIER
Case No. 5:14-cv-05344-BLF (NC)

1101092

## I.   INTRODUCTION

Cisco has failed to carry its burden to show that Dr. Chevalier's "No Apportionment" disgorgement opinion and her lost-profits Scenario 3 are admissible. Accordingly, the Court should exclude them.

## II.   ARGUMENT

### A.   The Court should exclude Dr. Chevalier's "No Apportionment" disgorgement claim because it seeks a remedy that is prohibited

As Arista explained in its opening brief, when a copyright plaintiff seeks disgorgement of the defendant's profits, but those profits "are not entirely due to the infringement, and the evidence suggests some division which may rationally be used as a springboard *it is the duty of the court to make some apportionment*." *Cream Records, Inc. v. Jos. Schlitz Brewing Co*, 754 F.2d 826, 828-29 (9th Cir. 1985) (emphasis added). Neither Cisco nor Dr. Chevalier disputes this critical requirement. *See* ECF 476-3 (Opp.) at 3:11-12 ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Nor does Cisco or Dr. Chevalier dispute the self-evident truth that an Ethernet switch's value derives from many features other than the accused CLI elements. ECF 422-5 (Chevalier Rpt.) at ¶ 120, fn. 219; ECF 422-6 (McCloskey Decl. Ex. B) at 217:9-219:13.

Nevertheless, Dr. Chevalier proposes to present to the trier of fact a so-called "No Apportionment" disgorgement opinion, by which she asserts that Cisco ought to receive 100% of Arista's profits. Using this approach, she seeks up to ▓▓▓▓▓▓▓▓ of disgorgement for Cisco, representing her calculation of *all* of Arista's profits from accused sales. *See* ECF 422-9 (McCloskey Decl., Ex. E) at Ex. 3; *see also id.* at 3–8, 14–18. (By contrast, using her "Adjusted Apportionment" approach, in which she attributes more value to the CLI than Arista's expert did, she seeks up to ▓▓▓▓▓▓▓▓—a difference of nearly ▓▓▓▓▓▓▓▓.)

Cisco defends Dr. Chevalier's "No Apportionment" opinion by proposing a novel rule that, if accepted, would abrogate *Cream Records* and many more cases that follow it. Cisco argues that Dr. Chevalier should be allowed to present her "No Apportionment" opinion to the trier of fact not because 100% of Arista's profits derive from infringing features, but because she

1

ARISTA'S REPLY IN SUPPORT OF MOTION TO STRIKE
EXPERT OPINIONS AND TESTIMONY OF DR. JUDITH A. CHEVALIER
Case No. 5:14-cv-05344-BLF (NC)

1101092

believes that Arista failed to carry its burden on apportionment.  *See* Opp. at 2:10-17.

*Cream Records* forecloses this argument.  There, the copyright plaintiff (Cream) argued that, because "the burden was placed on [the defendants] to prove any portion of the profits not attributable to the infringement, and since ***the defendants put on no evidence***, Cream was entitled to recover the part of [the defendants'] profits it sought."  754 F.2d at 828 (emphasis added).  The Ninth Circuit rejected this argument.  *Id.*  It explained that, "[a]lthough the statute imposes upon the infringer the burden of showing the elements of profit attributable to factors other than the copyrighted work, nonetheless, where it is clear, as it is in this case, that not all of the profits are attributable to the infringing material, the copyright owner is not entitled to recover all of those profits merely because the infringer fails to establish with certainty the portion attributable to the non-infringing elements."  *Id.* (internal quotation marks and citation omitted).  Thus, in *Cream Records*, the Ninth Circuit ruled that the court was required to apportion profits even though the defendants had put on ***no evidence*** of what the apportionment should be.  *Id.* at 828-29; *see also Abend v. MCA, Inc.*, 863 F.2d 1465, 1480 (discussing *Cream Records* and other authorities and holding that, on remand, the district court "must apportion damages" if it finds infringement).

Under *Cream Records*, therefore, a copyright plaintiff may try to disgorge all of the defendant's profits in only two circumstances, neither of which is even alleged to exist here: (1) where 100% of the product's value derives from infringing material; or (2) where the evidence suggests ***no*** division that could "rationally be used as a springboard" for any allocation.  754 F.2d at 828-29. To satisfy this second criterion, the apportionment need not be perfect; "'what is required is . . . only a reasonable approximation[.]'" *Id.* (quoting *Sheldon v. Metro-Goldwyn Pictures Corp.*, 309 U.S. 390, 408 (1940)).  And where neither of these conditions exists—as in this case—the plaintiff may not try to disgorge 100% of the defendant's profits, even if the defendant failed to carry its burden of proof on apportionment (or for that matter, failed to present any evidence on apportionment whatsoever).

The authorities that Cisco cites do not suggest otherwise.  In *Three Boys Music Corp. v. Bolton*, 212 F.3d 477 (9th Cir. 2000), the Ninth Circuit stated that "a jury verdict ***apportioning less than 100% of the profits*** but more than the percentage estimates of [the defendant's] experts

2

ARISTA'S REPLY IN SUPPORT OF MOTION TO STRIKE
EXPERT OPINIONS AND TESTIMONY OF DR. JUDITH A. CHEVALIER
Case No. 5:14-cv-05344-BLF (NC)

1101092

does not represent clear error." *Id.* at 487 (emphasis added.)  But Dr. Chevalier's "No Apportionment" opinion seeks 100% of Arista's profits—a claim that *would* invite clear error if the Court permitted it.

Likewise, as Arista explained in its opening brief, in *Oracle v. Google*, Judge Alsup precluded Oracle's expert from seeking 100% of Google's profits as disgorgement.  *Oracle Am., Inc. v. Google Inc.*, 2016 U.S. Dist. LEXIS 58819, *23 (N.D. Cal. May 3, 2016).  And while he referred to the possibility that Oracle might "rest on" its expert's calculation of profits "in hopes that Google fails to carry its burden of demonstrating that further apportionment or expense deduction is appropriate," *id.*, that is not what Cisco seeks to do here.  Cisco seeks to have Dr. Chevalier tell the trier of fact how much Arista should disgorge applying *no* apportionment because she disagrees with Arista's apportionment.  As *Cream Records* makes abundantly clear, the question of whether apportionment is appropriate is different from the question of whether the defendant has apportioned correctly.  Here, Cisco has not argued—nor could it reasonably argue—that no apportionment is appropriate under *Cream Records*.  It merely quibbles with how Arista's expert performed the apportionment.  To allow Dr. Chevalier to present her "No Apportionment" opinion to the trier of fact in these circumstances would violate Ninth Circuit law and, if presented to a jury, would severely prejudice Arista.

Because Cisco has failed to meet its burden of proving that Dr. Chevalier's "No Apportionment" opinion is admissible, the Court should strike and preclude testimony on this opinion.  *Lust v. Merrell Dow Pharms., Inc.*, 89 F.3d 594, 598 (9th Cir. 1996).[1]

**B.    The Court should strike Dr. Chevalier's lost-profits "Scenario 3" because it is not based on specialized knowledge and it is misleading.**

The Court should also preclude Dr. Chevalier from testifying about her lost-profits Scenario 3 because that testimony is not expert-opinion evidence at all—merely an attempt to disguise a few snippets of testimony in a veneer of false authority.

---

[1] While the Court need not address this issue now, it would also violate basic standards of equity to allow Cisco to disgorge profits from Arista, considering that Cisco has known since at least 2008 what CLI Arista used, and Cisco also encouraged the industry to emulate its CLI, and has long known that many vendors did so.

3

ARISTA'S REPLY IN SUPPORT OF MOTION TO STRIKE
EXPERT OPINIONS AND TESTIMONY OF DR. JUDITH A. CHEVALIER
Case No. 5:14-cv-05344-BLF (NC)

1101092

As Arista explained in its opening brief, to create her Scenario 3 "based on substantially all of Arista's switch sales," Dr. Chevalier seized on a handful of out-of-context statements by Arista witnesses ███████████████████████████████████████████████. Chevalier Rpt. at ¶ 78. Applying no special knowledge or methodology that laypeople couldn't apply equally well, she purported to accept these statements at face value and applied them across the entire industry and relevant time period, adopting them as her "expert" opinion on the "but-for" world.

Such testimony is inadmissible because, "in requiring that expert testimony be directed to 'scientific, technical or specialized knowledge,' Rule 702 ensures that expert witnesses will not testify about 'lay matters which a jury is capable of understanding and deciding without the expert's help.'" *In re Rezulin Prods. Liability Litig.*, 309 F. Supp. 2d 531, 541 (S.D.N.Y. 2004) (internal quotation marks omitted). Dressing up simple statements within laypeople's understanding as an "expert" opinion does not assist jurors; it usurps their role and misleads them by imbuing a false halo of authority around one party's spin on the evidence. For this reason, courts consistently hold that "an expert who . . . lacks personal knowledge may only testify about the underlying facts if he [is] actually bringing to bear his scientific expertise." *Id.* at 554 (internal quotation marks omitted); *see also United States v. Pacific Gas & Elec. Co.*, 2016 WL 1640462, *2, Case No. 14-cr-00175 (N.D. Cal., 4/26/2016) ("It is certainly true that expert testimony that simply rehash[es] otherwise admissible evidence about which [the expert] has no personal knowledge...is inadmissible.") (internal quotation marks omitted).

Dr. Chevalier's Scenario 3 stands in stark contrast to her Scenarios 1 and 2. To create Scenarios 1 and 2, she reviewed sales and marketing communications between Arista and its customers, purported to apply her expertise in economics and finance, and concluded that certain customers would not have bought Arista switches without an infringing CLI. *See* ECF 423 at 2. But for her Scenario 3, she did nothing of the kind. She did not analyze data about the Ethernet-switch market through the lens of some purported expertise to conclude that the entire market (or at least everyone who bought from Arista) required an infringing CLI. On the contrary, she effectively admitted that she could not draw any such conclusion reliably, conceding that

4
ARISTA'S REPLY IN SUPPORT OF MOTION TO STRIKE
EXPERT OPINIONS AND TESTIMONY OF DR. JUDITH A. CHEVALIER
Case No. 5:14-cv-05344-BLF (NC)

1101092

"customer purchase decisions for network switches are inherently subjective," "customers consider and weight features differently in the decision-making process," and "[a]s I do not have full visibility into the economic factors that led to each customer's purchase decision, it would be difficult to determine to what extent Arista's use of Cisco's copyrighted works influenced the decision to purchase Arista products for every Arista customer." Chevalier Rpt. at ¶ 66. The entire basis for her Scenario 3, therefore, is that—according to her—Arista's witnesses said so.

The prejudice of allowing such "expert" testimony here is compounded by the fact that Dr. Chevalier's spin on the statements she cites is fallacious. She chooses to ignore, for example, that the statement that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ But the point here is not just that Dr. Chevalier's opinion rests on a flimsy foundation that the evidence contradicts—that is true of her Scenarios 1 and 2 as well. The point is that her Scenario 3 is not expert-opinion evidence at all. Its only purpose is to feed the jury, in the guise of "expert" testimony, a slanted interpretation of evidence that the jury needs no expert help to understand. And that is inadmissible under Rules 702 and 403.

Nor does it matter that Dr. Chevalier applies Cisco's market-share percentage and profit margin to calculate her damages number under Scenario 3—calculations that she also performs under Scenarios 1 and 2. *See* Opp. at 5-10. Those calculations are merely ancillary to the major premise of her Scenario 3, which is that Arista would have been unable to make "substantially all" of its sales in the relevant period without an infringing CLI. *See* Chevalier Rpt. at ¶ 78. That premise is not expert testimony and all, and is inadmissible for the reasons discussed above. Thus, the calculations she performs based on that premise are irrelevant and do not affect the *Daubert* analysis.

Accordingly, the Court should strike and preclude testimony on Dr. Chevalier's lost-profits Scenario 3.

### III.   CONCLUSION

For the foregoing reasons, the Court should strike and exclude Dr. Chevalier's "no apportionment" disgorgement approach, and "Scenario 3" of Dr. Chevalier's lost-profits opinion.

5

ARISTA'S REPLY IN SUPPORT OF MOTION TO STRIKE
EXPERT OPINIONS AND TESTIMONY OF DR. JUDITH A. CHEVALIER
Case No. 5:14-cv-05344-BLF (NC)

1101092

Dated: August 26, 2016

Respectfully submitted,

KEKER & VAN NEST LLP

By: */s/ Robert A. Van Nest*
ROBERT A. VAN NEST

Attorneys for Defendant
ARISTA NETWORKS, INC.