KEKER & VAN NEST LLP
ROBERT A. VAN NEST - # 84065
BRIAN L. FERRALL - # 160847
DAVID SILBERT - # 173128
MICHAEL S. KWUN - #198945
633 Battery Street
San Francisco, CA 94111-1809
Telephone:     (415) 391-5400
Email:  rvannest@kvn.com;
bferrall@kvn.com; dsilbert@kvn.com;
mkwun@kvn.com

SUSAN CREIGHTON, SBN 135528
SCOTT A. SHER, SBN 190053
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
1700 K Street NW, Fifth Floor
Washington, D.C., 20006-3817
Telephone:  (202) 973-8800
Email:  screighton@wsgr.com;
ssher@wsgr.com

JONATHAN M. JACOBSON, NY SBN 1350495
CHUL PAK (*pro hac vice*)
DAVID H. REICHENBERG (*pro hac vice*)
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
1301 Avenue Of The Americas, 40th Floor
New York, NY 10019-6022
Telephone:  (212) 999-5800
Email:  jjacobson@wsgr.com; cpak@wsgr.com;
dreichenberg@wsgr.com

Attorneys for Defendant ARISTA NETWORKS, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| CISCO SYSTEMS, INC., <br><br> Plaintiff, <br><br> v. <br><br> ARISTA NETWORKS, INC., <br><br> Defendant. | Case No. 5:14-cv-05344-BLF (NC) <br><br> **ARISTA'S REPLY BRIEF RE ANALYTIC DISSECTION** <br><br> Dept.:     Courtroom 3 - 5th Floor <br> Judge:    Hon. Beth Labson Freeman <br><br> Date Filed: December 5, 2014 <br><br> Trial Date: November 21, 2016 |

The Court's recent experience with Cisco's summary judgment arguments confirms the risk of error—and the certainty of jury confusion—in following Cisco's advice to do no analytic dissection before trial begins. There, the Court was left to search for the nature of Cisco's claims and the origin of the "Cisco CLI," and concluded that Cisco had failed to demonstrate that "Cisco CLI" was a "compilation its author(s) put together rather than a creature of [Cisco's] litigation strategy." *See* MSJ Order (ECF 482) at 3:20 -4:22. Now Cisco would have the Court simply take Cisco's word for it when it says it asserts only protectable elements of the "Cisco CLI." Cisco seeks free rein to suggest to the jury that the entire amorphous "Cisco CLI" is Cisco's exclusive property, leaving it to jury instructions three weeks later to try to set jurors straight as to what is or is not protected. This is a recipe for juror confusion, and an invitation for shifting theories mid-trial and improper evidence that no amount of corrective instructions can cure.

Analytic dissection defines what the jury must decide: whether Arista illegally copied *protectable* expression. Without any guidance in advance as to what is or is not protectable, the trial will dwell on accusations about "copying" that are irrelevant and prejudicial because the "copying" was perfectly lawful. Even after 20 months of litigation Cisco still resists articulating precisely what aspect of its "works" it will assert and asks the Court to delay conducting the crucial protectability analysis until trial is almost complete. Managing the close of evidence and fashioning the final jury instructions, many of which are not even modeled by the Ninth Circuit (*see* Cisco Brief (ECF 456) at 15:11-18), will be challenging enough; it is both unfair and unwise to ask the Court to determine the protectability of over 1000 asserted elements, and any number of as yet undefined compilations, while the jury is waiting. Rather than follow Cisco's free-for-all approach, the Court should adopt Arista's approach to analytic dissection and set a schedule to resolve protectability before trial as Arista set forth in its opening brief and sample proposed order. *See* Arista Brief (ECF 455) at 6:16-24; Sample Order (ECF 455-1). The Court can address a schedule for this process at the *Daubert* hearing set for September 9.

**A.     Cisco's gerrymandered selection of CLI elements (created for this litigation) is no substitute for the analytic dissection that Cisco admits is required.**

Cisco agrees that the Ninth Circuit requires analytic dissection (Cisco Br. at 6:4-10), but it urges the Court to forgo the process here because Cisco "already filtered out unprotectable

1

ARISTA'S REPLY BRIEF RE ANALYTIC DISSECTION
Case No. 5:14-cv-05344-BLF (NC)

elements" itself. *Id.* at 1:15. Where disputes about protectability exist—as is certainly the case here—there is no precedent for the Court simply taking the plaintiff's word that it has already done the Court's work. Cisco has not even definitively identified the literal or non-literal elements that it contends deserve protection and were copied. Cisco cannot decide whether it asserts that the "Cisco CLI" is protectable as a whole as a novel may be (*see* Cisco Br. (ECF 456) at 7:27, 10:16-26), or as a compilation of unprotectable elements such as the Supreme Court considered in *Feist* (*see id.* at 3:25-4:3). Instead it has offered gerrymandered and incomplete quotations, unsurprisingly selected because they overlap in part with words Arista uses. Cisco hopes to try its case by sound bite, glossing over differences between Cisco's and Arista's CLI elements and even differences between Cisco's CLI elements as they appear in its works as compared to the lawyers' depiction of those elements. But even if it had definitely identified the asserted elements in its registered works, Cisco would only have satisfied the first step of dissection, *i.e.*, the plaintiff's identifying the similarities supporting the alleged infringement. *See* Arista Br. (ECF 455) at 2; *Apple Computer, Inc. v. Microsoft Corp.*, 35 F.3d 1435, 1443 (9th Cir. 1994). Under Ninth Circuit law, Cisco's allegations are the starting point for analytic dissection, not the end point.

No matter how Cisco eventually defines its asserted protectable elements, much work needs to be done to assure that those assertions comport with the law of copyrightability. Some aspects of analytic dissection can be addressed before trial with only minimal effort. For one, regardless of whether Cisco claims copyright in each string of terms comprising its 508 asserted CLI commands or only collectively in a large set of commands and other features, the Court will need to determine the extent to which the doctrines of merger or *scenes a faire*, or the originality requirement, prohibit Cisco from claiming copyright infringement based upon the common usage of acronyms or names of protocols that are industry-standard terms.[1] As just one example, Cisco

---

[1] Cisco admits that the Ninth Circuit has "[t]raditionally" considered merger and *scenes a faire* as part of filtration. Cisco Br. (ECF 456) at 9:26-27. And while the Federal Circuit characterized those doctrines as defenses to infringement rather than to copyrightability, *id*. at 10:3-5, that does not alter their role in analytic dissection. The Federal Circuit did not and could not change the Ninth Circuit's consistent rule of applying the principles of merger and *scenes a faire* as part of analytic dissection. *See* Arista Br. (ECF 455) at 3:26-4:12 & n.2 (discussing examples).

seeks a finding of infringement from use of the text string "ptp priority 1", even though "ptp" was a standardized protocol acronym, and "priority 1" was a parameter specified in the ptp standard, before Cisco allegedly "authored" this phrase. *See* Arista MSJ Opp. (ECF 380) at 10. Similar facts apply to hundreds of asserted commands. Similarly, over 100 asserted commands take the form "show [industry standard term or parameter]." Cisco admits that this syntax was not original, and Cisco did not coin most if not all of the industry parameters it paired with the unoriginal instruction "show." *Id.* Analytic dissection requires the identification of these and other unprotectable elements. Arista has provided the Court with a sample proposed order outlining the categories of unprotectable elements that should be filtered out before trial. ECF 455-1.

Cisco's attempt to analogize its asserted CLI elements to a Dickens novel or a musical work (*see* Cisco Br. (ECF 456) at 7:27, 10:16-26) is strained at best. But in any event the analogy does not absolve the Court of its obligation to identify unprotectable elements when a plaintiff asserts minor, discrete phrases or organizational features. At the granular, command-by-command level at which Cisco appears to be claiming copyright exclusivity, the better analogy would be as follows: imagine that the phrase "worst of times" was a well-known political slogan, unoriginal to Dickens, that referred to a specific economic condition; that Dickens used that slogan in his opening line of his book; and that he then tried to claim copyright infringement when another author wrote "it was the worst of times" in a different work. Ninth Circuit law would require that no protection be given to Dickens for his use of a phrase in the public domain, and serious questions would exist whether *scenes a faire*, merger or originality barred protection for his addition of "it was" to this public-domain phrase. There is no question that Cisco would rather not have the jury or the Court understand how much of its CLI was lifted from standard industry jargon and the public domain, but Ninth Circuit law requires otherwise.

### B. Pre-trial analytic dissection is crucial to avoid more shifting sands from Cisco at trial and to ensure that the parties are trying the same case.

Cisco's brief also highlights the need for pre-trial analytic dissection to prevent Cisco from confusing the jury with a shifting sands strategy at trial—based on the same shifting, unclear claims the Court found perplexing on summary judgment—that will raise the likelihood of error.

*See* MSJ Order (ECF 482) at 4:4-6; *id.* at 7.  Cisco does not have a copyright registration for the "Cisco CLI" it has asserted here.  *Id.* at 5:7-9.  Cisco's analytic dissection brief doubles down on its efforts to divorce its case theory from the reality of the copyrights Cisco registered, wrongly insisting that Cisco can "assert a portion of a registration as the work-in-suit."  Cisco Br. (ECF 456) at 3.  Because this question will inform questions of protectability, the scope of protection (broad or thin) and the relevant comparison for ultimately determining infringement, it is crucial that, as part of analytic dissection, the Court pin Cisco down as to what work (or works) it is asserting and correct any improper attempts to redefine its works for its litigation ends.

The Ninth Circuit has held that for a work to be separately asserted in litigation, it must be one that is truly independent, that "'can live [its] own copyright life' and that 'has an independent economic value and is, in itself, viable.'" *Monge v. Maya Magazines, Inc.*, 688 F.3d 1164, 1180 (9th Cir. 2012) (considering photographs as works; quoting *Columbia Pictures TV, Inc. v. Krypton Broad. of Birmingham, Inc.*, 259 F.3d 1186, 1193 (9th Cir. 2001) (considering TV show episodes as works).  Instead of acknowledging this rule, Cisco vaguely asserts "only the subsections of those computer programs relevant to Cisco CLI" without ever identifying what those "subsections" are, let alone explaining how they might satisfy the Ninth Circuit's standard.  Cisco Br. (ECF 456) at 3:6-7.  No authority permits a gerrymandered snippet from a unitary registered work to be considered the "work as a whole" in an infringement analysis, as Cisco seeks to do here.  *See NXIVM Corp. v. Ross Inst.*, 364 F.3d 471, 480-81 (2d Cir. 2004) (rejecting effort to treat "modules" within a manual as separate works); *see also Sony Computer Entm't Am., Inc. v Bleem, LLC*, 214 F.3d 1022, 1028 (9th Cir. 2000) (video game screen shots dismissed as "an insignificant portion of the complex copyrighted work as a whole").  If Cisco contends that the relevant work is a "command line interface," Cisco should explain now, before trial, what is encompassed by that interface and how that interface has economic value in itself without an underlying operating system to "command."  Even less plausible would be an argument that Cisco's lawyer-created list of 508 commands, out of over 10,000 (or many more) commands,

could possibly qualify as an independent work.[2]

### C. Cisco's brief highlights several other ways the Court risks error if it postpones the "analytic dissection" process.

Cisco is wrong to claim that full analytic dissection is unnecessary because Cisco accuses Arista of "'literal copying'" from Cisco works, rather than infringement of "non-literal aspects" of its works. *See* Cisco Br. at 8:24-9:3. Cisco has conceded that a user interface is a non-literal aspect of the registered works, which are themselves registered as "literary works." Cisco MSJ (ECF 348) at 5:1-10; MSJ Tr. (ECF 418) at 10:24-11:3; *Johnson Controls, Inc. v. Phoenix Control Sys., Inc.*, 886 F.2d 1173, 1175 (9th Cir. 1989). Cisco may assert "literal copying" (verbatim copying of words), but that is different from copying of "non-literal elements" (screen displays, series of command words, or command hierarchies and modes) none of which appear *literally* in the computer code that Cisco registered. *See* Arista Br. (ECF 455) at 3:18-23.

Also, the only copyrightability analysis that the Court needs to apply is the standard Ninth Circuit analytic dissection test. The Second Circuit's "abstraction-filtration-comparison" test does not displace the Ninth Circuit's analytic dissection process in the context of computer programs (*contra* Cisco Br. (ECF 456) at 8:16-19). Rather, the Ninth Circuit recognizes that "[o]ther courts perform the same analysis, although articulated differently." *Apple*, 35 F.3d at 1445 (referencing Second Circuit *Altai* test).

Finally, Cisco claims that it is entitled to broad protection because thin protection only attaches if materials "contain a high percentage of unprotected elements" Cisco Br. at 8:8-9. Apart from the fact that the test is not so limited (Arista Br. at 2:21-3:7 (general test), 14 (detailed analysis)), even under this standard it is undisputed that a vast majority of the asserted CLI phrases are comprised of public domain terms. *See* Black Decl. Ex. 61 (ECF 381-61). Indeed, the asserted CLI elements are a textbook example of materials that could not possibly qualify for broad protection given their factual and functional nature. *See* Arista Br. at 3:26-4:12; *id.* at 14.

---

[2] Cisco's cases do not support its cause. One is an out-of-circuit case involving separately registered—and clearly independent—magazine articles. *Am. Geophysical Union*, Cisco Br. (ECF 456) at 3:11-16. Nothing about Cisco's claim resembles a compilation of magazine articles. The other is a vacated out-of-circuit district court opinion addressing an overall user interface, not cherry-picked features or phrases. *Napoli*, Cisco Br. (ECF 456) at 3:16-17.

|    |                                        |                                               |
|----|----------------------------------------|-----------------------------------------------|
| 1  |                                        | Respectfully submitted,                       |
| 2  | Dated:  September 2, 2016              | KEKER & VAN NEST LLP                          |
| 4  |                                   By:  | */s/ Brian L. Ferrall*                        |
|    |                                        | BRIAN L. FERRALL                              |
|    |                                        | Attorneys for Defendant                       |
|    |                                        | ARISTA NETWORKS, INC.                         |