# ATTACHMENT 9

1              UNITED STATES DISTRICT COURT

2             NORTHERN DISTRICT OF CALIFORNIA

3                  SAN JOSE DIVISION

4

   CISCO SYSTEMS, INC.      Case No.: 5:14-cv-05344-BLF(PSG)

5

                  Plaintiff,

6

       v.

7

   ARISTA NETWORKS, INC.

8

                  Defendants.

9  _____

10

11

12

13     * HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY *

14

15     VIDEOTAPED DEPOSITION OF PHILLIP REMAKER

16         30(b)(6) FOR CISCO SYSTEMS, INC.

17             Palo Alto, California

18           Thursday, March 31, 2016

19                  Volume 1

20

21  Reported by:

22  LESLIE JOHNSON

23  RPR, CSR No. 11451

24  Job No.: 2281749

25  PAGES 1 - 216

                                        Page 1

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

```
 1        UNITED STATES DISTRICT COURT
 2    FOR THE NORTHERN DISTRICT OF CALIFORNIA
 3          SAN JOSE DIVISION
 4
     CISCO SYSTEMS, INC.    Case No.: 5:14-cv-05344-BLF(PSG)
 5
          Plaintiff,
 6
       v.
 7
     ARISTA NETWORKS, INC.
 8
          Defendants.
 9    _____
10
11
12
13
14    * HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY *
15
16
17    VIDEOTAPED DEPOSITION OF PHILLIP REMAKER, Volume 1,
18  taken on behalf of Defendant, at 601 California Avenue,
19  Palo Alto, California, beginning at 9:30 a.m. and ending
20  at 4:14 p.m., on Thursday, March 31, 2016, before
21  LESLIE JOHNSON, Certified Shorthand Reporter No. 11451.
22
23
24
25
                                              Page 2
```

```
 1                   I N D E X
 2
 3  WITNESS                    EXAMINATION
 4  PHILLIP REMAKER
    30(b)(6) for CISCO SYSTEMS
 5  Volume 1
 6       BY MR. WONG               8
 7       BY MR. NEUKOM            212
 8
 9          EXHIBITS
10     PHILLIP REMAKER, 30(b)(6)
11  NUMBER       DESCRIPTION        PAGE
12  Exhibit 429  Defendant Arista Network, Inc.'s    9
             Notice of 30(b)(6) Deposition of
13           Plaintiff Cisco Systems, Inc.;
             33 pages
14
     Exhibit 430  Amended Exhibit F Document Index;   11
15           40 pages
16  Exhibit 431  Amended Exhibit F; 44 pages          14
17  Exhibit 432  Binder labeled "Bates Does Cited     15
             in Cisco Rog Exhibit F," Volume 1
18           of 2
19  Exhibit 433  Binder labeled "Bates Does Cited     15
             in Cisco Rog Exhibit F," Volume 2
20           of 2
21  Exhibit 434  Binder labeled "Source Code Cited    15
             in Cisco Rog Exhibit F," Volume 1
22           of 2
23  Exhibit 435  Binder labeled "Source Code Cited    15
             in Cisco Rog Exhibit F," Volume 2
24           of 2
25
                                              Page 4
```

```
 1  APPEARANCES:
 2
 3  FOR PLAINTIFF CISCO SYSTEMS, INC.:
 4    QUINN EMANUEL URQUHART & SULLIVAN LLP
 5    BY: JOHN (JAY) NEUKOM, ESQ.
 6    50 California Street, 22nd Floor
 7    San Francisco, California  94111
 8    (415)875-6600
 9    johnneukom@quinnemanuel.com
10  FOR DEFENDANT ARISTA NETWORKS, INC.:
11    KEKER & VAN NEST LLP
12    BY: RYAN WONG, ESQ.
13    633 Battery Street
14    San Francisco, California  94111
15    (415)391-5400
16    rwong@kvn.com
17  ALSO PRESENT:
18    SEAN GRANT, Videographer
19
20
21
22
23
24
25
                                              Page 3
```

```
 1          EXHIBITS (Cont.)
 2      PHILLIP REMAKER, 30(b)(6)
 3  NUMBER       DESCRIPTION        PAGE
 4  Exhibit 436  E-mail dated 1/12/99 from Phillip    40
             Remaker to Carl Schaefer, et al.;
 5           Bates stamped CSI-CLI-00794351 to 95
 6  Exhibit 437  E-mail dated 6/7/2003 from Shaubin   80
             Xie; Bates stamped CSI-CLI-00783473
 7           to 81
 8  Exhibit 438  Parser-Police Manifesto, version 6;  82
             10 pages
 9
     Exhibit 439  CLI Design and Review Guide; Bates   85
10           stamped CSI-CLI-02824651 to 719
11  Exhibit 440  E-mail thread, top e-mail dated      87
             7/8/2005, from Jain Dhanendra; Bates
12           stamped CSI-CLI-00807444 to 68
13  Exhibit 441  Interrogatory No. 2 First Supplemental  98
             Response - Exhibit C; 3 pages
14
     Exhibit 442  Document entitled "Show Inventory    104
15           Command"; Bates stamped CSI-CLI-610102
             to 610105
16
     Exhibit 443  E-mail dated 12/6/2002 from Eric     114
17           Osborne; Bates stamped CSI-CLI-777457
             to 459
18
     Exhibit 444  Interrogatory No. 2 First Supplemental  122
19           Response - Exhibit B; 102 pages
20  Exhibit 445  E-mail dated 25 June 2002 from Ilse   151
             Van Hoeck; Bates stamped
21           CSI-CLI-00608702 to 703
22  Exhibit 446  E-mail dated 17 May 1999 from Liming  159
             Wei; Bates stamped CSI-CLI-60866
23
24
25
                                              Page 5
```

2 (Pages 2 - 5)

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

```
 1            EXHIBITS (Cont.)
 2       PHILLIP REMAKER, 30(b)(6)
 3 NUMBER        DESCRIPTION              PAGE
 4 Exhibit 447  Plaintiff Cisco Systems, Inc.'s Seventh  164
                Supplemental Objections and Responses
 5              to Defendant Arista Network, Inc.'s
                Second Set of Interrogatories
 6              (No. 16); 50 pages
 7 Exhibit 448  Plaintiff Cisco System, Inc.'s Fourth   167
                Supplemental Objections and Responses
 8              to Defendant Arista Network, Inc's
                First Set of Interrogatories (2 and 5);
 9              44 pages
10 Exhibit 449  Cisco's Response to Arista's          182
                Interrogatory No. 16 Amended Exhibit
11              D1 (IOS Release 11.0); 28 pages
12 Exhibit 450  Exhibit E Exemplary Copying of Command  201
                Responses; 27 pages
13
   Exhibit 451  Writing Command Line Interfaces (CLI)   204
14              and CLI Output; Bates stamped
                CSI-CLI-02607986 to 8010
15
                       * * *
16
17
18
19
20
21
22
23
24
25
```
Page 6

```
 1    Palo Alto, California, Thursday, March 31, 2016
 2            9:30 a.m.
 3
 4       THE VIDEOGRAPHER:  Good morning.  We're on
 5 the record.  The time is 9:30 a.m. and the date is
 6 March 31st, 2016.  This begins the videotaped
 7 deposition of Cisco Systems, Inc. pursuant to Rule
 8 30(b)(6).  My name is Sean Grant, here with our
 9 court reporter, Leslie Johnson.  We're here from
10 Veritext Legal Solutions at the request of counsel
11 for Defendant.  This deposition is being held at
12 Wilson Sonsini in Palo Alto, California.
13       The caption of this case is Cisco Systems
14 Inc. versus Arista Networks, Inc., Case No.
15 5:14-cv-05344-BLF.
16       Please note that audio and video recording
17 will take place unless all parties have agreed to go
18 off the record.  Microphones are sensitive and may
19 pick up whispers, private conversations or cellular
20 interference.
21       At this time, will counsel please identify
22 themselves and state whom they represent.
23       MR. WONG:  Ryan Wong from Keker & Van Nest
24 for Defendant Arista Networks.
25       MR. NEUKOM:  John Neukom for the
```
Page 7

```
 1 plaintiff.
 2       THE VIDEOGRAPHER:  Thank you.  Will the
 3 certified court reporter please swear in the
 4 witness.
 5
 6          PHILLIP REMAKER,
 7    having been first duly sworn, was examined
 8    and testified as follows:
 9
10             EXAMINATION
11 BY MR. WONG:
12    Q.  Good morning, Mr. Remaker.
13    A.  Good morning.
14    Q.  Do you understand that you are testifying
15 under oath?
16    A.  I understand.
17    Q.  Okay.  And I know we took your personal
18 deposition yesterday.  Do you understand that the
19 general rules for conducting a deposition are also
20 applicable today?
21    A.  Yes.
22    Q.  Do you understand that you have been
23 designated by Plaintiff Cisco to provide corporate
24 testimony under Rule 30(b)(6) today?
25    A.  Yes.
```
Page 8

```
 1       (Exhibit 429 marked for identification.)
 2       MR. WONG:  Let's mark this as the first
 3 deposition exhibit.  I believe we are on 429.
 4       THE REPORTER:  Correct.
 5 BY MR. WONG:
 6    Q.  The court reporter has marked Exhibit 429,
 7 a document that on its face says "Defendant Arista
 8 Network, Inc.'s Notice of Rule 30(b)(6) Deposition
 9 of Plaintiff Cisco Systems, Inc."
10       Mr. Remaker, do you recognize the document
11 marked as Exhibit 429?
12       MR. NEUKOM:  It might help you to turn to
13 page 23.
14       MR. WONG:  Thank you, Counsel.
15       MR. NEUKOM:  Start with paragraph 78.
16       THE WITNESS:  Yes, I recognize this
17 document.
18 BY MR. WONG:
19    Q.  Do you understand that you have been
20 designated by Cisco to provide corporate testimony
21 for topic No. 78 that appears on page 23 of
22 Exhibit 429?
23    A.  Yes.
24    Q.  Do you understand that you've been
25 designated by Cisco to provide corporate testimony
```
Page 9

3 (Pages 6 - 9)

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

1 BY MR. WONG:
2    Q.   The first bullet point under "Submission"
3 on the first page of 436, Exhibit 436?
4    A.   Uh-huh.
5    Q.   It says, "The submitter should send the
6 proposed syntax before writing any code to prevent
7 rewrites for syntax changes."
8         Do you see that?
9    A.   Yes.
10   Q.   Did I read that correctly?
11   A.   Yes.
12   Q.   Why is it important for a submitter of the
13 Parser Police to send a proposed command syntax
14 before writing any code?
15   A.   If the Parser Police suggests changes, it
16 would require additional work for the developer, if
17 they had already written code to implement the
18 command that the Parser Police lodged an objection
19 to.
20   Q.   So you don't need to write any source code
21 to come up with a proposed syntax for a new CLI
22 command, correct?
23   A.   You do not need to write any source code
24 to propose a command.
25   Q.   And in fact, the Parser-Police Manifesto

Page 50

1 marked as Exhibit 436 suggests that any proposed
2 syntax for a new CLI command be sent to the Parser
3 Police before any code is written for that command,
4 correct?
5    A.   Correct.
6    Q.   Is there a -- strike that.
7         Are there any rules at Cisco that require
8 command -- new command syntaxes to be proposed to
9 the Parser Police before source code is written?
10        MR. NEUKOM: Objection. Vague. Compound.
11        THE WITNESS: I don't know if there are
12 any --
13        MR. NEUKOM: And off topic.
14        THE WITNESS: I don't know if there are
15 any rules like that.
16 BY MR. WONG:
17   Q.   Could you turn to page, Mr. Remaker, to
18 the page where at the bottom the control number ends
19 in 392. The second page of the document.
20        On the second page of Exhibit 436, at the
21 bottom it says "Syntax design guidelines."
22        Do you see that?
23   A.   Yes.
24   Q.   And there is a No. 1 right below that.
25        Do you see that?

Page 51

1    A.   Yes.
2    Q.   Okay. Can you read the -- I guess it's
3 two sentences, after that No. 1.
4    A.   "Think extensible. If you add a command,
5 try to envision if more similar commands that may be
6 added and structure the parse tree not to have dead
7 ends."
8    Q.   What do you mean -- strike that.
9         What does Exhibit 436 mean when it says
10 "think extensible"?
11        MR. NEUKOM: Objection. The document
12 speaks for itself.
13        And also, Mr. Remaker, before you answer
14 the question.
15        Given the particular document now being
16 discussed at this time, on behalf of Cisco, I'd like
17 to mark this transcript and the video of the
18 deposition as "Highly Confidential - Attorneys' Eyes
19 Only." And I ask Madam Court Reporter and the
20 videographer to please mark all copies of the
21 deposition accordingly.
22 BY MR. WONG:
23   Q.   Let me ask the first question again.
24        On page 2 of the Parser-Police Manifesto
25 marked as Exhibit 436, what does the Parser-Police

Page 52

1 Manifesto mean when it says "think extensible"?
2        MR. NEUKOM: Objection. The document
3 speaks for itself.
4        THE WITNESS: It means, when adding a
5 command, envision a future where similar commands
6 might happen, might be added, and design
7 accordingly.
8 BY MR. WONG:
9    Q.   Why is extensibility important to creating
10 a new CLI command in the Cisco IOS?
11        MR. NEUKOM: Objection. The document
12 speaks for itself.
13        THE WITNESS: The question was why?
14 BY MR. WONG:
15   Q.   The question is why is extensibility
16 important to creating a new CLI command in Cisco
17 IOS?
18        MR. NEUKOM: Same objection.
19        THE WITNESS: We believe that the
20 hierarchy improves the consistency, usability and
21 friendliness of the CLI.
22 BY MR. WONG:
23   Q.   What does -- strike that.
24        What do you mean by "the hierarchy" in
25 your response?

Page 53

14 (Pages 50 - 53)

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

1    A.  The hierarchy is the aesthetic of
2 collecting similar commands together.
3    Q.  Is that the end of your response?
4    A.  Yes.
5    Q.  Have you ever used the word "aesthetic" to
6 describe the hierarchy before this litigation?
7    A.  I don't know.
8    Q.  What do you mean by the aesthetic of
9 collecting similar commands together?
10    A.  It involves the judgment exercised in
11 placing similar commands together in a compact
12 hierarchy that would be found valuable by customers.
13    Q.  What does a hierarchy have to do with
14 extensibility of the CLI?
15    MR. NEUKOM:  Objection.  Off topic.
16    THE WITNESS:  The hierarchy keeps similar
17 and related commands together with each other.
18 BY MR. WONG:
19    Q.  How does the hierarchy keep similar and
20 related commands together with each other?
21    MR. NEUKOM:  Objection.  Vague.  Compound.
22 Hypothetical.  And off topic.
23    THE WITNESS:  For example, in a hierarchy,
24 the command line help function will direct customers
25 to the related commands to the tasks they're trying

Page 54

1 to accomplish instead of having to wade through
2 unrelated commands.
3 BY MR. WONG:
4    Q.  What other function does the hierarchy
5 perform?
6    A.  The hierarchy can organize commands in a
7 configuration in a way that is easy to read and
8 understand.
9    Q.  Can you have an extensible CLI without
10 using a hierarchy?
11    MR. NEUKOM:  Objection.  Vague.  Calls for
12 opinion testimony.  Off topic.
13    THE WITNESS:  I don't know.
14 BY MR. WONG:
15    Q.  What does it mean to structure the parse
16 tree not to have dead ends, as stated on page 2 of
17 Exhibit 436?
18    MR. NEUKOM:  Objection.  The document
19 speaks for itself.
20    THE WITNESS:  It means that when
21 exercising judgment in the choice of words in a
22 command, don't make it illogical to add additional
23 words to the command.
24 BY MR. WONG:
25    Q.  Is that the end of your response?

Page 55

1    A.  Yes.
2    Q.  What is it -- what does the document mean
3 by "dead end"?  And it says "dead end" in quotes
4 here, so I'm trying to understand what the
5 Exhibit 436 means at the bottom of page 2 when it
6 refers to, quote-unquote, "dead ends."
7    A.  If you look at the example immediately
8 following it, the "dnsix-dmdp" command could not
9 logically add any additional "dnsix" commands after
10 it.  By making "dnsix" a node in a hierarchy instead
11 of making it a final word with the dash, "dnsix"
12 allows extensibility and additional "dnsix"-related
13 commands, instead of precluding them by using
14 "dnsix" as part of a hyphenated word.
15    Q.  Okay.  So the example provided underneath
16 the "think extensible" section of Exhibit 436
17 illustrates what the document means by "dead end"?
18    A.  Yes.
19    Q.  On the third page of Exhibit 436,
20 Mr. Remaker, at the top of the page, do you see a
21 number 2?
22    A.  Can you tell me the Bates document number,
23 please?
24    Q.  Sure.  It's the page ending in 393.
25    A.  Yes.

Page 56

1    Q.  Can you read the last sentence in the
2 paragraph that starts with the number 2?
3    A.  "All multi-hyphen commands should be
4 analyzed to see if they can be split into a more
5 extensible parse chain."
6    Q.  What does that mean?
7    MR. NEUKOM:  Objection.  Misstates
8 document.  Dash.
9    THE WITNESS:  Immediately following that
10 sentence, in the same document, is an example where
11 the "debug isdn" command is illustrated, where two
12 different commands, "isdn-q931" and "isdn-q921," are
13 represented as two individual hyphenated commands,
14 and the analysis of the commands should indicate to
15 somebody familiar with the parser that they can
16 break it out into two individual elements at the end
17 of a hierarchy.
18 BY MR. WONG:
19    Q.  What impact does that have to a user of
20 the command-line interface?
21    A.  In this particular instance, it makes it
22 easier to use the help function to find relevant
23 "isdn" debugging commands without having to wade
24 through other irrelevant commands not related to the
25 "isdn" hierarchy.

Page 57

15 (Pages 54 - 57)

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

1 prepared and given information basically falling
2 within the topics. And so today you're designated
3 as Cisco's 30(b)(6) witness, subject to objections,
4 for topics 78 through 83.
5         So my question to you is, of course, in
6 your capacity as a corporate witness.
7         So I'll ask the question again.
8         As Cisco's corporate witness today, can
9 you tell me anything about the thought process that
10 Mr. Carrel followed when coming up with any of the
11 commands associated with him listed in Exhibit 431?
12         MR. NEUKOM: Objection. Vague and
13 compound. And to be clear, Mr. Remaker, when
14 Mr. Wong very graciously noted that you're being put
15 up not just for topics, but you're being put up for
16 certain topics subject to Cisco's objections, one or
17 more of those objections go to the reasonableness or
18 lack thereof of canvassing or investing in one
19 witness individual thought processes for 500 or so
20 historically created command lines. But you should
21 absolutely answer the question to the best of your
22 ability.
23         THE WITNESS: I don't know what David
24 Carrel's thought process was.
25 ////

Page 130

1 BY MR. WONG:
2         Q. Do you know what Mr. Vowles' thought
3 process was behind the creation of any of his
4 commands that are listed in Exhibit 431?
5         A. I do not.
6         Q. Do you know what thought process that Dino
7 Farinacci followed when he came up with any of the
8 commands associated with him in Exhibit 431?
9         MR. NEUKOM: Objection. Vague and
10 compound. And Mr. Remaker, when you're being asked
11 about a question which covers, for example, all
12 commands associated with an individual's name, I
13 know that Mr. Wong would want you to feel free to
14 look through whatever portions of this exhibit he
15 has before you to make sure that you understand the
16 scope of questions that he's putting to you.
17         MR. WONG: While Mr. Remaker is looking at
18 Exhibit 431, Court Reporter, the spelling of
19 Mr. Farinacci's name is D-I-N-O, space,
20 F-A-R-I-N-A-C-C-I.
21         THE WITNESS: I do not see any commands by
22 Dino Farinacci where I can comment on his thought
23 process.
24 BY MR. WONG:
25         Q. Did you speak at all with Mr. Farinacci

Page 131

1 regarding the sources he may have considered when
2 coming up with any of the commands associated with
3 him in Exhibit 431?
4         A. It is possible that I had discussions with
5 Dino about his choice of command words in some of
6 his choices.
7         Q. But you have -- you did not see any
8 commands by Mr. Farinacci in Exhibit 431 where you
9 can comment today on his thought process behind his
10 creation of those commands, correct?
11         A. Not from memory, no.
12         Q. From any other source besides memory, are
13 you able to do that?
14         A. None that I'm aware of.
15         Q. Do you know one way or the other whether
16 Mr. Farinacci copied any aspect of the commands
17 associated with him in Exhibit 431 when he added
18 those commands to the Cisco CLI?
19         A. A lot of these commands are over 20 years
20 old. I don't have any memory of that.
21         Q. Do you know the thought process that Pedro
22 Marques -- that's P-E-D-R-O, M-A-R-Q-U-E-S --
23 followed when he came up with any of the commands
24 associated with him in Exhibit F?
25         A. Do you have any specific commands in mind?

Page 132

1         Q. Sure. The first command that appears for
2 Mr. Marques is "clear ipv6 neighbors," which appears
3 on page 5 of Exhibit 431.
4         A. I do not know his thought process in
5 coming up with that.
6         Q. Can you take a moment, please, and find
7 the other commands associated with Mr. Marques in
8 Exhibit 431, and let me know if you know the thought
9 process that Mr. Marques followed when he came up
10 with any of those commands?
11         MR. NEUKOM: Objection. Vague and
12 compound. Off topic. And I will think it's clear,
13 but in case it's not, take a standing objection to
14 any and all questions on the thought processes of
15 individual originators or engineers at Cisco. It is
16 unreasonable. It is unduly burdensome. And it is
17 not within the scope of a reasonable preparation of
18 a witness. And I respectfully think that counsel
19 knows that and is asking questions intended to put
20 the witness on a fool's errand.
21         That said, Mr. Remaker, to the extent you
22 can answer the question as posed to you, however
23 compound it is, you should please, please do that.
24         THE WITNESS: I don't recognize any
25 commands where I can speak to Pedro Marques's

Page 133

34 (Pages 130 - 133)

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

1  thought process.
2  BY MR. WONG:
3      Q.  Do you know one way or the other whether
4  Mr. Marques copied any aspect of the CLI command
5  associated with him in Exhibit 431, when he added
6  those commands to the Cisco CLI?
7      A.  I do not know.
8      Q.  And maybe this would be a way to
9  short-circuit this, Mr. Remaker.  Can you look
10 through Exhibit 431 and tell me if there are any
11 commands listed in Exhibit 431 where you know the
12 creative thought process that the originator went
13 through when coming up with the command syntax for
14 the command associated with him or her.
15     MR. NEUKOM:  Objection.  Vague.  Calls for
16 a legal conclusion.  And compound to the tune of
17 500-plus questions embedded within, ostensibly, one
18 question.  And I incorporate by reference my
19 standing objection to counsel's improper line of
20 questioning about individual thought processes of
21 third persons over the last 30 years.
22     MR. WONG:  Let me rephrase my question
23 just to address one of counsel's objections.
24 BY MR. WONG:
25     Q.  Can you -- Mr. Remaker, can you please

Page 134

1  look through Exhibit 431 and tell me if there are
2  any commands listed in that exhibit where you know
3  the thought process that the originator went through
4  when coming up with the command associated with him
5  or her?
6      MR. NEUKOM:  Same objections.
7      THE WITNESS:  I don't think I can speak to
8  a third party's thought process.
9  BY MR. WONG:
10     Q.  You would have to speak to the third
11 party, correct?
12     MR. NEUKOM:  Objection.  Calls for
13 speculation.
14     THE WITNESS:  You could certainly ask the
15 author -- I'm sorry.  You can certainly ask the
16 originator of the command their thought process.
17 BY MR. WONG:
18     Q.  Did you do that for any of the commands
19 listed in Exhibit 431, setting aside the command
20 that you are associated with, Mr. Remaker?
21     A.  I did not.
22     Q.  Setting aside your command, the "show
23 inventory" command, Mr. Remaker, do you know one way
24 or the other whether the authors of any of the other
25 commands listed in Exhibit 431 copied from some

Page 135

1  other place any of the words that are found in their
2  command?
3      A.  I do not know that.
4      MR. NEUKOM:  I should also -- pardon me,
5  Ryan, just to make sure I'm being complete, I'm
6  going to lodge a standing objection to any and all
7  questions on the topic of copying and third party
8  mindsets as being beyond the scope of the noticed
9  topics and/or beyond the scope of any reasonable
10 preparation in response to those topics.
11     MR. WONG:  I disagree on the --
12     MR. NEUKOM:  I don't expect you to agree.
13 I'm just making an objection for the record.
14     MR. WONG:  That's fine.  We can address
15 that.
16     MR. NEUKOM:  Although this is going to be
17 an interesting two-way street, because I think we
18 have a pretty similar topic, and we will see if
19 Arista actually considered putting an individual
20 corporate rep up to talk about individual thought
21 processes for the 500-plus copied expressions.  So
22 if you all want to set the standard down in a
23 deposition, we'll see -- we'll see what the traffic
24 looks like going the other direction on that same
25 road.

Page 136

1      MR. WONG:  That's days ahead of us, so we
2  can address that later without wasting the witness's
3  time here.
4      MR. NEUKOM:  Well, we are wasting the
5  witness's time here.
6      MR. WONG:  I disagree.  But setting that
7  aside.
8  BY MR. WONG:
9      Q.  Mr. Remaker, the commands listed in
10 Exhibit 431, do they all appear in the same Cisco
11 operating system?
12     MR. NEUKOM:  Objection.  Vague.  Compound.
13 And the document speaks for itself.
14     THE WITNESS:  The document indicates which
15 operating system each command appears in.
16 BY MR. WONG:
17     Q.  I'm sorry.  And you're talking about
18 Exhibit 431, correct?
19     A.  It indicates at least one operating system
20 that includes the command.
21     Q.  Okay.  So for example, looking at the
22 first two commands listed in Exhibit 431, the first
23 operating system that the "aaa accounting dot1x"
24 command appears in is Cisco IOS 12.4 (11)T, correct?
25     A.  Did you say "aaa accounting"?  That would

Page 137

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

1 be Cisco IOS 10.3, actually.
2    Q.   I'm sorry, I said "aaa accounting dot1x."
3    A.   I'm sorry, dot1x, yes.  Cisco IOS 12.4
4 11 -- 12.4 (11)T.
5    Q.   And the "aaa accounting" command, without
6 the dot1x first appeared in Cisco IOS 10.3, correct?
7    A.   Correct.
8    Q.   So assuming this information is correct,
9 the Cisco IOS 10.3 operating system did not support
10 the "aaa accounting dot1x" command, correct?
11    A.   That's what I conclude from this document.
12    Q.   And do you have any reason to doubt that?
13    A.   I do not have any reason to doubt that.
14    Q.   Does it surprise you -- would it surprise
15 you if the commands listed in Exhibit 431 are
16 supported by different operating systems?
17       MR. NEUKOM:  Objection.  Calls for
18 speculation.  And well beyond the scope of any
19 noticed topic for this witness.
20       THE WITNESS:  I don't have any opinion on
21 that topic.
22 BY MR. WONG:
23    Q.   Are the command sets for Cisco IOS and
24 Cisco IOS XR the same?
25       MR. NEUKOM:  Objection.  Vague.  Compound.

Page 138

1 And goes beyond the scope of any topic for which
2 this witness has been presented today.
3       THE WITNESS:  There are differences
4 between IOS and IOS XR.
5 BY MR. WONG:
6    Q.   Are there also differences between IOS and
7 NX-OS?
8       MR. NEUKOM:  Same objection.  Vague.
9 Compound.  And not related to any topic for which
10 this witness has been presented today.
11 BY MR. WONG:
12    Q.   I'm talking specifically with respect to
13 the CLI command set.  Are there differences between
14 the commands supported by Cisco IOS and Cisco IOS
15 XR?
16       MR. NEUKOM:  Same objections.
17       THE WITNESS:  There may be differences
18 between the IOS and NX-OS commands.
19       MR. WONG:  You can set that document
20 aside.
21 BY MR. WONG:
22    Q.   Can you find Exhibit 438, please.
23    A.   I have Exhibit 438 in front of me.
24    Q.   Okay.  And this is the current version of
25 the Parser-Police Manifesto, correct?

Page 139

1    A.   This is the current version of the
2 Parser-Police Manifesto.
3    Q.   Okay.  At the bottom of the first page of
4 Exhibit 438, there is a heading called "Submission."
5       Do you see that?
6    A.   Yes.
7    Q.   And the last bullet point that appears on
8 the first page of Exhibit 438 starts with the text
9 "Use the following language when describing syntax."
10       Do you see that?
11    A.   Yes.
12    Q.   Okay.  And below that it says "Text and
13 keyword literals."
14       Do you see that?
15    A.   Yes.
16    Q.   What does it mean -- strike that.
17       What are keyword literals in a CLI
18 command?
19       MR. NEUKOM:  Which page are we on?
20       MR. WONG:  We are on the very bottom of
21 the first page of Exhibit 438.
22       MR. NEUKOM:  Okay.
23       THE WITNESS:  Yes, so page 1, that is
24 actually, that line at the bottom of page 1 is the
25 header to a table which continues onto page 2.  This

Page 140

1 is actually a table saying how to use a
2 representative language to represent literal
3 information being entered into the parser.
4 BY MR. WONG:
5    Q.   I see.  So the text and keyword literals
6 are headings of the table?
7    A.   That's correct.  Those are supposed to
8 serve as headings for the following table.
9    Q.   And the following table below that, can
10 you explain to me, please, what that -- what
11 information is being conveyed there?  And this is on
12 page now 2 of Exhibit 438.
13    A.   Right.  So this is the submission section
14 of the Parser-Police Manifesto, which is giving
15 guidelines of how to submit your proposed commands
16 to the Parser Police alias.
17       What they are saying is, when you are
18 writing the command, you should use the elemental
19 style in the left-hand column to represent the
20 literal values expounded in the right column.
21    Q.   Okay.  So for example, for the
22 "aaa accounting" command, which is the first command
23 listed on Exhibit 431, how would the two words "aaa"
24 and "accounting" be represented in this syntax?
25       MR. NEUKOM:  Objection.  Beyond the scope

Page 141

36 (Pages 138 - 141)

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

1  of any topic for which this witness has been
2  designated today.
3          THE WITNESS:  It is my understanding that
4  these would be arguments included in the parser
5  command, not the actual parser command itself.
6  BY MR. WONG:
7      Q.  And when you say "these," what are you
8  referring to as these?
9      A.  These -- the text elements in the
10 left-hand column.
11     Q.  Okay.  So just for clarity, the text that
12 appears in this table that starts at the very bottom
13 of page 1 of Exhibit 438 and continues onto the top
14 of page 2 are for the arguments of the CLI command;
15 is that correct?
16     A.  That is correct.
17     Q.  What does Cisco call the portion of the
18 command that is not the argument?
19         MR. NEUKOM:  Objection.  Beyond the scope
20 of the designated topics.
21         THE WITNESS:  I don't know that there is a
22 formal universal name for the text of the command
23 expression other than "command expression."
24 BY MR. WONG:
25     Q.  Is it your understanding that the commands

Page 142

---

1  listed in Exhibit 431 are not or do not contain
2  arguments?
3      A.  Exhibit 421, I'm sorry.
4      Q.  431.
5      A.  431.  Sorry.
6      Q.  So my question is:  Is it your
7  understanding that the commands listed in
8  Exhibit 431 do not contain arguments?
9      A.  It is possible that the command
10 expressions in Exhibit 431 contain arguments.
11     Q.  So, for example -- so regardless of how
12 the syntax of these commands is denoted using the
13 syntax shown in Exhibit 438, the command expressions
14 listed in Exhibit 431 could contain arguments; is
15 that correct?
16         MR. NEUKOM:  Objection.  Vague.  Compound.
17 Hypothetical.  And beyond the scope of any of the
18 topics for which this witness is here to talk about
19 today.
20         THE WITNESS:  It is possible that the
21 command expresses in Exhibit 431 contain
22 arguments.
23 BY MR. WONG:
24     Q.  And I'm just trying to understand why
25 something like "aaa authorization config-commands"

Page 143

---

1  is listed as a separate command than "aaa
2  authorization console" on the first page of
3  Exhibit 431.
4      Are those two commands I just recited two
5  different commands?
6      A.  Those are two different commands.
7      Q.  So if a command has a set of different
8  optional parameters, each combination of those
9  parameters with, I guess, the base command words
10 would be a different command?
11         MR. NEUKOM:  Objection.  Vague.  Compound.
12 Asks for opinion testimony.  And unrelated to any
13 topic for which this witness is here today.
14         THE WITNESS:  Can you repeat the question?
15 BY MR. WONG:
16     Q.  Sure.  Are there Cisco CLI commands where
17 you can specify or select from two or more optional
18 arguments?
19         MR. NEUKOM:  Objection.  Vague.  Compound.
20 And unrelated to any topic for which this witness is
21 here to testify today as a corporate representative.
22         THE WITNESS:  I'm sorry.  The question
23 doesn't make sense to me.
24 BY MR. WONG:
25     Q.  So if you look to page 2 of Exhibit 438.

Page 144

---

1      A.  Yes.
2      Q.  There is one section that has curly
3  brackets.
4          Do you see that at the top?
5      A.  Yes.
6      Q.  And within the curly brackets, there is a
7  "text1" and then a dividing line and then a "text2."
8          Do you see that?
9      A.  Yes.
10     Q.  So if that -- if that syntax follows a
11 command, does that mean that you can say -- you can
12 say the command and then "text1" and hit enter and
13 that will be accepted as a valid CLI command?
14     A.  The literal information that takes the
15 place of the variable "text1," is that what you
16 mean?
17     Q.  Yes.
18     A.  So can you repeat the question, knowing
19 that.
20     Q.  Sure.  Well, maybe I'll do it this way.
21         Can you explain to me how that mandatory
22 choice syntax actually works in practice when you
23 enter in commands to a CLI?
24     A.  When a command --
25         MR. NEUKOM:  Objection.  Pardon me.

Page 145

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

1  Compound.  And beyond the scope of any topic for
2  which this witness is here to testify about.
3        THE WITNESS:  When a command has a
4  mandatory choice or mandatory argument, the command
5  cannot be executed unless the mandatory argument is
6  provided along with the command.
7  BY MR. WONG:
8     Q.   And in this case here, for the example
9  shown on page 2 of Exhibit 438, you would have to
10 type in either "text1" or "text2," correct?
11    A.   That is correct.  The vertical bar is a
12 logical or --
13    Q.   Looking back at Exhibit 431, Mr. Remaker,
14 do any of the commands shown on the first page
15 support a "no" command prefix?
16       MR. NEUKOM:  Objection.  Compound.  Also
17 goes beyond the scope of any topic for which this
18 witness is here to testify today.
19       THE WITNESS:  I can say, for example, that
20 from my personal experience I know that
21 "aaa accounting" will accept the "no" command to
22 turn off "aaa accounting".
23 BY MR. WONG:
24    Q.   Okay.  And the "no" command is used to
25 disable the functionality that's associated with the

Page 146

1  knowledge of competitors of Cisco using Cisco-like
2  CLIs?
3        MR. NEUKOM:  Objection.  Misstates the
4  question or mischaracterizes the questions asked of
5  the witness yesterday.
6        THE WITNESS:  There may have been a
7  question asked to me about Cisco CLI.
8  BY MR. WONG:
9     Q.   Do you know either way whether any of the
10 authors listed in Exhibit 431 looked at non-Cisco
11 CLIs when coming up with the command syntax
12 associated with them in Exhibit 31?
13       MR. NEUKOM:  Objection.  Vague and
14 compound.
15       THE WITNESS:  Can you repeat the question?
16 BY MR. WONG:
17    Q.   Sure.  Do you know if any of the
18 originators identified in Exhibit 431 looked at
19 third party CLIs when coming up with the commands
20 that are associated with them in Exhibit 431?
21       MR. NEUKOM:  Same objections.
22       THE WITNESS:  I don't know.
23 BY MR. WONG:
24    Q.   Do you know whether any of the originators
25 listed in Exhibit 431 copied words from industry

Page 148

1  non-"no" version of the command?
2     A.   Yes.
3     Q.   So the "no" command version of a command
4  is a different command, correct?
5        MR. NEUKOM:  Objection.  Compound.  Calls
6  for opinion testimony.  And it's also, again, beyond
7  the scope of any topic for which this witness is
8  here today to testify.
9        THE WITNESS:  It would depend on what your
10 definition of the command is.
11 BY MR. WONG:
12    Q.   Do you know what definition of command was
13 used to create the list of commands shown in
14 Exhibit 431?
15    A.   No.
16    Q.   Mr. Remaker, you testified at your
17 personal deposition that you were aware of some
18 competitors of Cisco that used Cisco-like CLIs.
19       Do you remember that testimony?
20       MR. NEUKOM:  Objection.  Misstates the
21 witness's testimony from yesterday.
22       THE WITNESS:  Can you repeat the question?
23 BY MR. WONG:
24    Q.   Mr. Remaker, do you remember a question
25 during your personal deposition regarding your

Page 147

1  standard documents when they came up with the
2  commands associated with them in Exhibit 431?
3        MR. NEUKOM:  Objection.  Vague in numerous
4  respects.  Compound.  And I'll refer back to my
5  standing objection about the reasonableness or lack
6  thereof of this line or brand of questions to this
7  witness.
8        THE WITNESS:  I don't know.
9        MR. NEUKOM:  I take it your prior question
10 was intended to exclude the "show inventory" command
11 for which Mr. Remaker is -- I think in prior
12 versions of Mr. Wong's questions he was excepting
13 you from that.
14    Q.   Do you want to clarify your response,
15 Mr. Remaker, to my question?
16    A.   Which?
17    Q.   My last question that I asked.
18    A.   Can you repeat that question?
19    Q.   Sure.  Do you know one way or the other
20 whether any of the originators identified in
21 Exhibit 431 copied words from industry standards
22 when they came up with the commands associated with
23 them in Exhibit 431?
24    A.   I can't speak for third parties, but for
25 my own command, I did not incorporate or copy any

Page 149

38 (Pages 146 - 149)

**Page 150**

1 words from third party standards.

2    Q.  Do you know one way or the other whether

3 any of the originators listed in Exhibit 431 simply

4 copied existing command syntax that was present in

5 the Cisco CLI, when they came up with the commands

6 associated with them in Exhibit 431?

7    MR. NEUKOM: Objection. Vague. Compound.

8 An unreasonable question on its face.

9    THE WITNESS: You're asking whether Cisco

10 copied from Cisco?

11 BY MR. WONG:

12    Q.  That's right.

13    A.  Cisco strives to have a consistent user

14 interface among its systems with CLIs.

15    Q.  So does that mean that Cisco encourages

16 its engineers to copy existing command syntaxes that

17 are already present in the Cisco CLI?

18    MR. NEUKOM: Objection. Vague and

19 compound.

20    THE WITNESS: "Copy" is not the word I

21 would use to characterize it.

22 BY MR. WONG:

23    Q.  What word would you use to characterize

24 the reusing of existing Cisco CLI syntax in new

25 Cisco CLI commands?

*Page 150*

**Page 151**

1    A.  I would describe that as product

2 consistency.

3    (Exhibit 445 marked for identification.)

4 BY MR. WONG:

5    Q.  The court reporter has marked as

6 Exhibit 445 a document bearing control numbers

7 CSI-CLI 00608702 to 703.

8    Now, Mr. Remaker, I'll represent to you

9 that this document was one of those that was ID'd

10 within Cisco's discovery responses for some of

11 the -- some of the commands listed in Exhibit 431.

12 Please take a moment to look at the document.

13    And I guess my first question is: Do you

14 have any reason to doubt the authenticity of this

15 document that was produced by Cisco?

16    A.  I have no reason to doubt the authenticity

17 of this document.

18    Q.  Do you know who the sender of the e-mail

19 is? Looks like it's Ilse Van Hoec.

20    A.  I do not know the sender of this document.

21    Q.  In the first paragraph of this e-mail

22 marked as Exhibit 445, the last sentence starts with

23 "Most of these commands."

24    Do you see that?

25    A.  Yes.

*Page 151*

**Page 152**

1    Q.  Can you please read that into the record,

2 that sentence.

3    A.  "Most of these commands are copies of the

4 corresponding ospfv2 commands."

5    Q.  Do you have any understanding of what that

6 sentence means?

7    A.  I presume that it means that the commands

8 for ospv3 are consistent with the commands in

9 ospfv2.

10    Q.  And you -- I mean, is that a best practice

11 followed by Cisco engineers, to reuse existing CLI

12 syntax in this fashion?

13    A.  Each individual engineer would have to

14 exercise their own judgment as to what would be

15 appropriate for a given situation.

16    Q.  Do you agree that commands for ospfv3

17 should be consistent with the corresponding ospfv2

18 commands?

19    MR. NEUKOM: Objection. The question on

20 its face is asking the witness for his personal

21 opinion. Also, again, we're far afield of a noticed

22 topic for which this witness has returned for a

23 second day of testimony.

24    MR. WONG: This document is ID'd as -- one

25 of these documents is actually in the folders that

*Page 152*

**Page 153**

1 the witness brought today.

2    MR. NEUKOM: That's right. And what you

3 just asked him was whether he, sitting here in 2016,

4 would like to give his personal view on whether

5 Mr. Remaker agrees with your interpretation of a

6 sentence that an engineer named Ilse Van Hoec wrote

7 apparently 14 years ago.

8    MR. WONG: Let me rephrase --

9    MR. NEUKOM: That is far, far afield of

10 the noticed topics for this witness. It's also a

11 patently unfair and downright strange question.

12 BY MR. WONG:

13    Q.  Let me rephrase the question, Mr. Remaker.

14    Is it Cisco's best practice for commands

15 for ospfv3 to be consistent with existing CLI

16 commands for ospfv2?

17    MR. NEUKOM: Objection. Vague and

18 compound.

19    THE WITNESS: Cisco trusts the judgment of

20 the individual engineers doing the design.

21 BY MR. WONG:

22    Q.  So Cisco has no view one way or the other

23 whether ospfv3 commands should be consistent with

24 ospfv2 commands?

25    MR. NEUKOM: Objection. Asked and

*Page 153*

39 (Pages 150 - 153)

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

1 estimate for us the number of documents -- the
2 number of historical Cisco documents you reviewed to
3 prepare yourself to testify today as a corporate
4 representative?
5    A.   Easily 60 to 100 documents.
6    Q.   And can you describe by category what
7 sorts of documents you reviewed to prepare yourself
8 to come testify today about the historical
9 origination of Cisco command line expressions?
10    A.   Individual command specifications written
11 by engineers, source code, some e-mails, some
12 internal web pages, and the deposition of Kirk
13 Lougheed.
14    Q.   Do you believe there is anybody within
15 Cisco who knows more about the historical creation
16 of the 500-plus command line expressions identified
17 in Exhibit 431, other than you?
18    A.   No.
19       MR. NEUKOM:  Thanks very much.
20       MR. WONG:  Thank you.
21       THE VIDEOGRAPHER:  This concludes today's
22 videotaped deposition of Cisco Systems, Inc.
23 pursuant to Rule 30(b)(6).
24       We're off the record at 4:14 p.m.
25       (TIME NOTED:  4:14 p.m.)

Page 214

REPORTER'S CERTIFICATION

2

3    I, Leslie Johnson, a Certified Shorthand
4 Reporter of the State of California, do hereby certify:
5       That the foregoing proceedings were taken
6 before me at the time and place herein set forth; that
7 any witnesses in the foregoing proceedings, prior to
8 testifying, were administered an oath; that a record of
9 the proceedings was made by me using machine shorthand
10 which was thereafter transcribed under my direction;
11 that the foregoing transcript is a true record of the
12 testimony given.
13       Further, that if the foregoing pertains to
14 the original transcript of a deposition in a Federal
15 Case, before completion of the proceedings, review
16 of the transcript [ ] was [ ] was not requested.
17 I further certify I am neither financially interested in
18 the action nor a relative or employee of any attorney or
19 any party to this action.
20       IN WITNESS WHEREOF, I have this date
21       subscribed my name.
22 Dated: April 15, 2016
23
24       *Leslie Johnson*
25       LESLIE JOHNSON
       CSR No. 11451, RPR, CCRR

Page 216

DECLARATION UNDER PENALTY OF PERJURY

2

3    I, PHILLIP REMAKER, the witness herein,
4 declare under penalty of perjury that I have read the
5 foregoing in its entirety; and that the testimony
6 contained therein, as corrected by me, is a true and
7 accurate transcription of my testimony elicited at said
8 time and place.
9
10    Executed this _____ day of _____ 2016, at
11 _____, _____.
12    (City)          (State)
13
14
15
16
17       _____
18       PHILLIP REMAKER
19
20
21
22
23
24
25

Page 215

55 (Pages 214 - 216)