# ATTACHMENT 52

HIGHLY CONFIDENTIAL - OUTSIDE ATTORNEYS' EYES ONLY

1              UNITED STATES DISTRICT COURT

2             NORTHERN DISTRICT OF CALIFORNIA

3                  SAN JOSE DIVISION

4

5    CISCO SYSTEMS, INC.,        )
                                 )
6              Plaintiff,        )
                                 ) Case No.
7         vs.                    ) 5:14-cv-05344-BLF (PSG)
                                 )
8    ARISTA NETWORKS, INC.,      )
                                 )
9              Defendant.        )
                                 )
10   _____)

11

12

13

14

15

16      VIDEOTAPED DEPOSITION OF KEVIN C. ALMEROTH

17            San Francisco, California

18             Tuesday, June 28, 2016

19                   Volume I

20   HIGHLY CONFIDENTIAL - OUTSIDE ATTORNEYS' EYES ONLY

21

22   Reported by:
     CARLA SOARES
23   CSR No. 5908

24   Job No.  2337647

25   Pages 1 - 296

                                        Page 1

HIGHLY CONFIDENTIAL - OUTSIDE ATTORNEYS' EYES ONLY

```
 1        UNITED STATES DISTRICT COURT
 2      NORTHERN DISTRICT OF CALIFORNIA
 3           SAN JOSE DIVISION
 4
 5  CISCO SYSTEMS, INC.,    )
                            )
 6        Plaintiff,  )
                            ) Case No.
 7     vs.         ) 5:14-cv-05344-BLF (PSG)
                            )
 8  ARISTA NETWORKS, INC.,   )
                            )
 9        Defendant.   )
                            )
10  _____)
11
12
13
14
15
16      VIDEOTAPED DEPOSITION OF KEVIN C.
17  ALMEROTH, Volume I, taken on behalf of Defendant, at
18  633 Battery Street, San Francisco, California
19  beginning at 8:34 a.m., and ending at 5:43 p.m., on
20  Tuesday, June 28, 2016, before CARLA SOARES,
21  Certified Shorthand Reporter No. 5908.
22
23
24
25
                                           Page 2
```

```
 1                   INDEX
 2  WITNESS
 3  KEVIN C. ALMEROTH              EXAMINATION
    Volume I
 4
 5      BY MR. SILBERT              7
 6
 7           EXHIBITS
 8  NUMBER        DESCRIPTION        PAGE
 9  Exhibit 1538  Opening Expert Report of Kevin   20
10        Almeroth Regarding Copying
11
12  Exhibit 1539  Rebuttal Expert Report of Kevin   75
13        Almeroth
14
15  Exhibit 1540  Expert Report of John R. Black,   95
16        Jr.
17
18  Exhibit 1541  Handwritten document       204
19
20        --o0o--
21
22
23
24
25
                                           Page 4
```

```
 1  APPEARANCES:
 2
 3  For the Plaintiff:
 4      QUINN EMANUEL URQUHART & SULLIVAN, LLP
 5      BY:  ANDREW M. HOLMES, Attorney at Law
 6      50 California Street, 22nd Floor
 7      San Francisco, California 94111
 8      415.875.6322
 9      drewholmes@quinnemanuel.com
10
11
12  For the Defendant:
13      KEKER & VAN NEST LLP
14      BY:  DAVID J. SILBERT, Attorney at Law
15         RYAN WONG, Attorney at Law
16      633 Battery Street
17      San Francisco, California 94111
18      415.391.5400
19      dsilbert@kvn.com
20      rwong@kvn.com
21
22  ALSO PRESENT:  John Black
23         Sean Grant, Video Operator
24
25        --o0o--
                                           Page 3
```

```
 1          REFERENCED EXHIBITS
 2          (Not attached)
 3       Exhibit   Page
 4        1503   160
 5         639   174
 6        1504   175
 7        1505   183
 8        1506   184
 9        1523   187
10        1500   194
11
12        --o0o--
13
14
15
16
17
18
19
20
21
22
23
24
25
                                           Page 5
```

HIGHLY CONFIDENTIAL - OUTSIDE ATTORNEYS' EYES ONLY

1    San Francisco, California
2    Tuesday, June 28, 2016
3        8:34 a.m.
4
5    P R O C E E D I N G S
6    THE VIDEO OPERATOR:  Good morning.  We're
7    on the record.  The time is 8:34 a.m., and the date
8    is June 28th, 2016.  This begins the videotaped
9    deposition of Dr. Kevin Almeroth.
10    My name is Sean Grant, here with our court    08:34:13
11    reporter, Carla Soares.  We're here from Veritext
12    Legal Solutions at the request of counsel for
13    defendant.
14    This deposition is being held at Keker &
15    Van Nest LLP in San Francisco, California.  The    08:34:24
16    caption of this case is Cisco Systems, Inc., versus
17    Arista Networks, Inc., Case No. 5:14-cv-05344-BLF.
18    Please note that audio- and
19    video-recording will take place unless all parties
20    have agreed to go off the record.  Microphones are    08:34:45
21    sensitive and may pick up whispers, private
22    conversations, or cellular interference.
23    At this time, will counsel please identify
24    themselves and state whom they represent.
25    MR. HOLMES:  Drew Holmes on behalf of    08:34:58

Page 6

1    Cisco, as well as the witness, from Quinn Emanuel.    08:35:00
2    MR. SILBERT:  David Silbert, Keker &
3    Van Nest, on behalf of defendant Arista.
4    MR. WONG:  Ryan Wong of Keker & Van Nest
5    on behalf of Arista.    08:35:11
6    THE VIDEO OPERATOR:  And also present?
7    MR. BLACK:  I'm John Black.  I'm an expert
8    witness for Arista.
9    THE VIDEO OPERATOR:  Will the certified
10    court reporter please swear in the witness.    08:35:29
11    KEVIN C. ALMEROTH,
12    having been administered an oath, was examined and
13    testified as follows:
14    EXAMINATION
15    BY MR. SILBERT:    08:35:31
16    Q  Good morning, Dr. Almeroth.
17    A  Good morning.
18    Q  A minute ago counsel for Cisco introduced
19    himself as representing Cisco and also representing
20    you in your capacity as a witness.    08:35:41
21    Is it your understanding that you're being
22    represented in your capacity as a witness today by
23    the Quinn Emanuel law firm?
24    A  I don't have an understanding that the    08:35:59
25    representation is any different than any of the

Page 7

1    other times I've testified under deposition.  I    08:36:01
2    don't know that there's a distinction in what
3    Mr. Holmes said.
4    Q  Okay.  Are you asking the court to
5    recognize you as an expert in this matter?    08:36:14
6    A  I don't know that I'd be asking the court
7    to do that, but certainly, I think my qualifications
8    justify that the court see me as an expert.
9    Q  On what subjects relevant to the opinions
10    expressed in your reports do you claim to be an    08:36:37
11    expert?
12    A  I'm not sure I understand the question.  I
13    don't know that I can sit here and come up with the
14    definitive list of subjects.
15    I think on any of the subjects that I    08:36:58
16    testify about and offer opinions about, I believe
17    I'm qualified as an expert.
18    Q  Are you an expert in computer science?
19    A  I believe I am.
20    Q  Are you an expert in networking    08:37:09
21    technology?
22    A  I believe I am.
23    Q  Are you an expert in network device
24    operating systems?
25    A  I believe I am.    08:37:19

Page 8

1    Q  From -- for how many different network    08:37:24
2    device vendors have you reviewed any source code for
3    their network device operating systems?
4    MR. HOLMES:  Objection.  Vague.
5    THE WITNESS:  Generally speaking, or just    08:37:39
6    in the conjunction -- just in conjunction with this
7    case?
8    BY MR. SILBERT:
9    Q  Well, why don't we take them one by one.
10    First, in conjunction with this case, for    08:37:47
11    how many network device vendors have you reviewed
12    any source code for their network device operating
13    systems?
14    A  Sitting here right now, I specifically
15    recall two:  Cisco and Arista.  There might have    08:38:04
16    been others.  I just don't remember them.
17    Q  And generally speaking, for how many
18    different network device vendors have you reviewed
19    any source code for their network device operating
20    systems?    08:38:22
21    A  Maybe ten.
22    Q  Can you name them?
23    A  In addition to Cisco and Arista, I believe
24    I've reviewed source code for A10, maybe F5, 3Com.
25    Quagga is an open source so I've looked at source    08:38:49

Page 9

3 (Pages 6 - 9)

1 different operating systems that Cisco has          16:55:06
2 copyrighted.
3       So it's -- for example, both NX-OS and the
4 different versions of IOS, XE, XR, and regular IOS,
5 both have a "Global Configuration" mode. It's the     16:55:25
6 same mode across NX-OS and the different versions of
7 IOS. So I'm not sure that you would count that as
8 one of nine modes given the overlap between the
9 different versions of IOS.
10      But to the extent they are separate          16:55:52
11 copyrights, then yes.
12    Q  Is the interface configuration mode the
13 same across NX-OS and IOS?
14    A  Conceptually, the mode is itself. But as
15 I've discussed in the report, there's potentially    16:56:08
16 different commands that are available within that
17 mode.
18      So what the mode is is similar across the
19 two versions of the operating system.
20    Q  And you said that that's also true for the   16:56:22
21 global configuration mode?
22    A  Yes.
23    Q  Is that true for the "User EXEC" mode
24 across NX-OS and IOS?
25    A  That's what we started discussing this      16:56:36
Page 266

1 exhibit about, that there are differences that       16:56:39
2 evolved within NX-OS that led to differences, at
3 least conceptually, in the later versions.
4       I think I go into those details more in
5 the reports, and certainly it's described in the     16:56:52
6 documentation that I've referenced.
7     Q  In your expert reports, do you identify
8 which commands Arista makes available in each of
9 these modes?
10    A  I don't recall specifically. I think the    16:57:10
11 reports speak for themselves.
12      I believe in the section in the reports
13 that talk about parsing, it's -- I describe the
14 philosophy about how different commands are parsed
15 and executed in the different modes.              16:57:27
16    Q  What -- when you say that Arista copied a
17 mode from Cisco, are you saying that it copied the
18 name of the mode?
19    A  I don't think it's just the name, but I've
20 gone through a detailed analysis in my report. I'd   16:57:49
21 really defer to the analysis and the opinions that I
22 have in the report.
23    Q  Okay. Feel free to refer to it if you'd
24 like to, and I can point you, at least, to pages 18
25 to 20 in your opening report.               16:58:03
Page 267

1       But can you please tell me -- you could     16:58:05
2 also look at page 95.
3       But could you please tell me, what is it
4 that Arista copied, in your opinion, about -- from
5 Cisco's modes?                          16:58:21
6     A  I think to give you a detailed and precise
7 answer, I would look it up in the report. I think
8 it's described in the report, so I can certainly try
9 and find it.
10    Q  Part of what you say Arista copied is the   16:58:42
11 name of the mode.
12    A  Do you want to point me to where that --
13    Q  I'm trying to understand what your
14 allegations are. So I'm not telling you, I'm asking
15 you.                               16:58:55
16    A  Okay. Then is there a particular
17 paragraph that you have a question about with
18 respect to what the description is?
19      I mean, there's a description, as you
20 pointed, on pages 18 through 20, modes and prompts   16:59:09
21 within IOS, and I think you mentioned page 95.
22    Q  Right.
23    A  I would have to go through the report and
24 look.
25      There's certainly a section starting on    16:59:27
Page 268

1 page 92, "Cisco's CLI Command Modes and Prompts     16:59:29
2 Compared to Arista's Command Modes and Prompts," and
3 it lays out my analysis over the next several pages,
4 and then references the interrogatory, and I believe
5 it references the exhibit that we were talking about  16:59:47
6 earlier and continues on to page 95.
7       So I mean, if there's some part of that
8 that you have a question about, I can answer.
9     Q  Yeah. My question is, what is it that you
10 say they copied?                       17:00:00
11      I mean, what you -- and I'm not
12 criticizing. I'm just trying to understand what
13 your allegation is here.
14      The way that I read it -- again, I'm not
15 trying to be pejorative in any way. But you list     17:00:11
16 the Cisco modes, and then you say, "I agree that
17 Arista copied these modes," and you have a list of
18 the modes. You say, "Here's the Cisco mode and the
19 prompt and the identical or similar Arista mode and
20 prompt."                            17:00:28
21      You say in paragraph 183, "With respect to
22 the modes, six out of eight modes are word-for-word
23 identical."
24      What is it about the mode that Arista
25 copied?                             17:00:41
Page 269

1    A  I think that's described in this, in the    17:00:43
2  previous section of the report.  I mean, I can start
3  reading from the paragraphs.
4    Q  If you need to read from the paragraphs,
5  go ahead.                                17:00:53
6       But I just want to understand, what are
7  the features of the mode that, in your opinion,
8  Arista copied from Cisco?
9    A  Sure.  And I think that that's described
10  in the report.                          17:01:02
11       So starting at paragraph 177, as an
12  example of one of the places in the report where
13  there's relevant opinion on the subject, it says,
14  "Exhibit C to Cisco's second supplemental response
15  to Interrogatory No. 2 identifies certain command    17:01:19
16  modes and associated prompts that were created by
17  Cisco and that Cisco alleges were copied by Arista."
18       And then, "Cisco alleges that Arista's use
19  of these command modes and prompts extends to
20  interface, feature, protocol, and other more    17:01:36
21  specific command modes and sub-modes, with
22  associated prompts."
23       So that's one place.
24       And then -- I mean, I can --
25    Q  I'm sorry to interrupt you, but all it    17:01:47
                                          Page 270

1  says is that some Cisco interrogatory response    17:01:50
2  identifies modes and prompts that Cisco says it
3  created and that Cisco alleges that it -- that it --
4  that Arista copied.
5    A  And it includes examples from the    17:02:05
6  documents on page 94 of what comes from Arista.  And
7  then earlier in the report, it had similar documents
8  that describe what came from Cisco.
9    Q  I just -- I don't want to argue.  I'm
10  trying to understand, what are the elements of the    17:02:22
11  modes that you allege that Arista copied from Cisco?
12       I understand you're saying the names of
13  the modes are at least one of those elements.  I'm
14  not limiting you to that, but at least one of those
15  elements.                                17:02:38
16       What are the other features of the modes
17  that you say that Arista copied from Cisco?
18    A  I'm not sure I understand the question
19  beyond pointing to the paragraphs in the report that
20  describe what those are.                  17:02:50
21       I mean, I think starting in
22  paragraph 177 -- we can get out the interrogatory
23  and look at what it says.  It's describing in at
24  least paragraph 177, if not in other places earlier
25  in the report, on page 18 where it talks about what    17:03:07
                                          Page 271

1  the modes actually are, so the concept of what the    17:03:10
2  modes are as embodied within the copyrighted
3  material for Cisco.
4       So by the time you get to paragraph 177,
5  it's a summary of what the command modes are and    17:03:25
6  what those associated prompts are.
7    Q  Is it the concept of what the mode is,
8  what the mode allows you to do when you're in a
9  particular mode?  Is that what Arista copied?
10    MR. HOLMES:  Objection.  Vague.    17:03:39
11  BY MR. SILBERT:
12    Q  Or one of the things that you say Arista
13  copied?
14    MR. HOLMES:  Objection.  Vague, calls for
15  a legal conclusion.                      17:03:46
16    THE WITNESS:  I'm not sure how to state it
17  other than what's in the report.  I'm not sure what
18  about the report is unclear or how to restate it in
19  a different way.
20       I mean, I think it's right there, for    17:03:58
21  example, in the words in paragraph 177.
22  BY MR. SILBERT:
23    Q  In paragraph 177, this is going to tell me
24  what features of the modes Arista allegedly copied?
25    A  I think that's one paragraph as part of    17:04:13
                                          Page 272

1  the section.  It's the one that we can start with.    17:04:15
2       We can go through the other sections that
3  are relevant to the -- to this issue and go through
4  what they describe.
5    Q  Feel free to refer to your report as much    17:04:44
6  as you'd like.  But is one of the things that you
7  contend that Arista copied about Cisco's command
8  modes the name of the mode?
9    A  I think it's that first sentence in
10  paragraph 177, "Exhibit C to Cisco's second    17:05:01
11  supplemental response to Interrogatory No. 2
12  identifies certain command modes and associated
13  prompts that were created by Cisco and that Cisco
14  alleges were copied by Arista."
15       I mean, I think that that describes, at    17:05:16
16  least in one sentence that I'm looking at now, what
17  was copied.
18    Q  Is that a yes, that one thing that was
19  copied was the name of the mode?
20       I can't understand, reading that sentence,    17:05:31
21  whether -- it says "the mode" -- it says "identifies
22  modes that it asserts were copied."
23       I don't understand what was copied about
24  the mode.  I'm just trying to understand.  Is it --    17:05:43
25  trying to take it piece by piece.
                                          Page 273

HIGHLY CONFIDENTIAL - OUTSIDE ATTORNEYS' EYES ONLY

1 transcript as highly confidential, outside counsel    17:43:10
2 only.
3           (TIME NOTED:  5:43 p m.)
4           --o0o--
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

Page 294

1        I, the undersigned, a Certified Shorthand
2 Reporter of the State of California, do hereby
3 certify:
4        That the foregoing proceedings were taken
5 before me at the time and place herein set forth;
6 that any witnesses in the foregoing proceedings,
7 prior to testifying, were administered an oath; that
8 a record of the proceedings was made by me using
9 machine shorthand which was thereafter transcribed
10 under my direction; that the foregoing transcript is
11 a true record of the testimony given.
12        Further, that if the foregoing pertains to
13 the original transcript of a deposition in a Federal
14 Case, before completion of the proceedings, review
15 of the transcript [X] was [ ] was not requested.
16        I further certify I am neither financially
17 interested in the action nor a relative or employee
18 of any attorney or any party to this action.
19        IN WITNESS WHEREOF, I have this date
20 subscribed my name.
21
22 Dated: 6/30/2016
23
24              <%signature%>
25              CARLA SOARES
              CSR No. 5908

Page 296

1
2
3
4
5
6
7
8        I, KEVIN C. ALMEROTH, do hereby declare
9 under penalty of perjury that I have read the
10 foregoing transcript; that I have made any
11 corrections as appear noted, in ink, initialed by
12 me, or attached hereto; that my testimony as
13 contained herein, as corrected, is true and correct.
14        EXECUTED this _____ day of _____,
15 2016, at _____, _____.
16        (City)         (State)
17
18
19        _____
20           KEVIN C. ALMEROTH
21
22
23
24
25

Page 295

75 (Pages 294 - 296)

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

1              UNITED STATES DISTRICT COURT

2            NORTHERN DISTRICT OF CALIFORNIA

3                 SAN JOSE DIVISION

4

5    CISCO SYSTEMS, INC.,        )
                                 )
6                  Plaintiff,    )
                                 ) Case No.
7          vs.                   ) 5:14-cv-05344-BLF (PSG)
                                 )
8    ARISTA NETWORKS, INC.,      )
                                 )
9                  Defendant.    )
     _____)

10

11

12       HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

13

14

15       VIDEOTAPED DEPOSITION OF KIRK LOUGHEED

16              Palo Alto, California

17           Friday, November 20, 2015

18                  Volume I

19

20

21

22   Reported by:
     CARLA SOARES
23   CSR No. 5908
24   Job No. 2187110
25   Pages 1 - 189

                                        Page 1

```
 1          UNITED STATES DISTRICT COURT
 2          NORTHERN DISTRICT OF CALIFORNIA
 3               SAN JOSE DIVISION
 4
 5   CISCO SYSTEMS, INC.,     )
 6            Plaintiff,  )
                          ) Case No.
 7       vs.              ) 5:14-cv-05344-BLF (PSG)
                          )
 8   ARISTA NETWORKS, INC.,  )
                          )
 9            Defendant.  )
     _____)
10
11
12
13
14
15
16       VIDEOTAPED DEPOSITION OF KIRK LOUGHEED,
17   Volume I, taken on behalf of Defendant, at
18   650 Page Mill Road, Palo Alto, California, beginning
19   at 9:19 a.m., and ending at 6:15 p.m., on Friday,
20   November 20, 2015, before CARLA SOARES, Certified
21   Shorthand Reporter No. 5908.
22
23
24
25
                                          Page  2
```

```
 1   APPEARANCES:
 2
 3   For the Plaintiff and the Witness:
 4       QUINN EMANUEL URQUHART & SULLIVAN, LLP
 5       BY:  JOHN (JAY) NEUKOM, Attorney at Law
 6       50 California Street, 22nd Floor
 7       San Francisco, California 94111
 8       415.875.6341
 9       johnneukom@quinnemanuel.com
10            and
11       KIRKLAND & ELLIS LLP
12       BY:  JOSHUA L. SIMMONS, Attorney at Law
13       601 Lexington Avenue
14       New York, New York 10022
15       212-446-4989
16       joshua.simmons@kirkland.com
17
18
19
20
21
22
23
24
25
                                          Page  3
```

```
 1   APPEARANCES (Continued):
 2
 3   For the Defendant:
 4       KEKER & VAN NEST LLP
 5       BY:  BRIAN L. FERRALL, Attorney at Law
 6       BY:  RYAN WONG, Attorney at Law
 7       633 Battery Street
 8       San Francisco, California 94111
 9       415.391.5400
10       bferrall@kvn.com
11       rwong@kvn.com
12
13   ALSO PRESENT:  Sean Grant, Video Operator
14                  --o0o--
15
16
17
18
19
20
21
22
23
24
25
                                          Page  4
```

```
 1                   INDEX
 2   WITNESS
 3   KIRK LOUGHEED                      EXAMINATION
     Volume I
 4
 5       BY MR. FERRALL              10
 6
 7            EXHIBITS
 8   NUMBER        DESCRIPTION        PAGE
 9   Exhibit 29  Document headed "Internet      73
10       Protocol,"
11       Bates ARISTANDCA0031553 - 1601
12
13   Exhibit 30  Document headed "DoD Internet  73
14       Host Table Specification"
15
16   Exhibit 31  Document headed "An Ethernet   73
17       Address Resolution Protocol or
18       Converting Network Protocol
19       Addresses to 48.bit Ethernet
20       Address for Transmission on
21       Ethernet Hardware,"
22       Bates ARISTANDCA0003130 - 1639
23
24
25
                                          Page  5
```

EXHIBITS

| NUMBER | DESCRIPTION | PAGE |
|---|---|---|
| Exhibit 32 | Document headed "Address Resolution Protocol (ARP) module for the Yeager gateway" | 85 |
| Exhibit 33 | Email string, top email to Kirk Lougheed and Paula Labloner from Mike Sanchez, dated 11-17-14, Bates CSI-CLI-01326834 - 6837 | 89 |
| Exhibit 34 | Email string, top email to Phillip Remaker from Kirk Lougheed, dated 3-30-10, Bates CSI-CLI-01317865 - 7866 | 93 |
| Exhibit 35 | Email string, top email to Joe Hielscher from Kirk Lougheed, dated 7-23-08, Bates CSI-CLI-01134849 - 4850 | 100 |
| Exhibit 36 | Document entitled "Stanford Ethertip/Gateway User and Configuration Guide," Bates CSI-CLI-01315523 - 5568 | 101 |

Page 6

EXHIBITS

| NUMBER | DESCRIPTION | PAGE |
|---|---|---|
| Exhibit 43 | Document entitled "DECbrouter 90 Products," Bates CSI-ANI-00081683 - 1683.000344 | 181 |

--o0o--

Page 8

EXHIBITS

| NUMBER | DESCRIPTION | PAGE |
|---|---|---|
| Exhibit 37 | Document entitled "cisco Systems AGS User Manual," Bates CSI-CLI-00358166 - 8223 | 106 |
| Exhibit 38 | Email string, top email to Phillip Remaker from Kirk Lougheed, dated 12-11-08, Bates CSI-ANI-00043306 - 3306.000001 | 122 |
| Exhibit 39 | Document entitled "Cisco's Response to Arista's Interrogatory No. 16 Amended Exhibit D1 (IOS Release 11.0)" | 152 |
| Exhibit 40 | Email to Craig Fox from Kirk Lougheed, dated 3-6-96, Bates CSI-CLI-00746398 | 160 |
| Exhibit 41 | Document described as source code file | 162 |
| Exhibit 42 | Document described as code | 177 |

Page 7

```
 1              Palo Alto, California         08:37:04
 2          Friday, November 20, 2015
 3              9:19 a.m.
 4
 5       P R O C E E D I N G S            08:37:10
 6          THE VIDEO OPERATOR:  Good morning.  We're
 7   on the record.  The time is 9:19 a.m., and the date
 8   is November 20th, 2015.  This begins the videotaped
 9   deposition of Kirk Lougheed.
10          My name is Sean Grant, here with our court    09:19:25
11   reporter, Carla Soares.  We're here from Veritext
12   Legal Solutions at the request of counsel for
13   defendant.
14          This deposition is being held at Wilson
15   Sonsini in Palo Alto, California.  The caption of    09:19:34
16   this case is Cisco Systems, Inc., versus Arista
17   Networks, Inc., Case No. 5:14-CV-05344-BLF.
18          Please note that audio- and
19   video-recording will take place unless all parties
20   have agreed to go off the record.  Microphones are   09:19:54
21   sensitive and may pick up whispers, private
22   conversations, or cellular interference.
23          At this time, will counsel please identify
24   themselves and state whom they represent.
25          MR. FERRALL:  Brian Ferrall of Keker &        09:20:06
```

Page 9



**Page 54**

1    A  Could you explain to me what you mean by    11:09:26
2  "parser"?
3    **Q  Do you know what a parser is?**
4    A  I know in a generic sense what a parser
5  is.                                  11:09:45
6    **Q  What's a parser in your -- based on your**
7  **understanding?**
8    A  A parser is something that takes a string
9  of text and divides it up into a sequence of tokens,
10 and then takes some action based on those sequence    11:10:09
11 of tokens.
12   **Q  Based upon that understanding, do you know**
13 **whether EXEC had a parser?**
14   A  Yes.
15   **Q  It did?**                          **11:10:25**
16   A  It did.
17   **Q  How do you know that it had a parser?**
18   A  Because it had the behavior that I
19 described.
20   **Q  Had you ever seen the EXEC source code?**    **11:11:03**
21   A  Yes.
22   **Q  And had you seen the parser code of EXEC?**
23   A  I had seen parts of it.
24   **Q  How did you come to see that code?**
25   A  It was -- Stanford had a source license to    11:11:33

**Page 55**

1  that software                          11:11:38

**Page 56**

19   **Q  Are you familiar with the syntax of**
20 **TOPS-20 commands?**                    **11:17:00**
21   A  In a -- yes.
22   **Q  Can you explain what it is?**
23   A  There are many commands.  I do not
24 remember all of them.
25   **Q  Was there a general format for TOPS-20**    **11:17:37**

**Page 57**

1  commands, to your recollection?          **11:17:42**
2    A  Yes.
3    **Q  What was that format?**
4    A  Again, there are many commands, and I
5  don't remember all the details of those commands.    11:18:10
6    **Q  Okay.  Do you -- I was trying to get**
7  **beyond that by asking you a general question about**
8  **the format that might be applicable to a range of**
9  **commands.**
10   **Is there such a thing, to your knowledge?**    **11:18:27**
11   MR. NEUKOM:  Objection to form.  Vague.
12   THE WITNESS:  The -- the EXEC -- the
13 number of such commands was large and varied.  And
14 DEC appeared to have a standard way of doing things,
15 but I don't remember all the details.    11:18:55
16 BY MR. FERRALL:
17   **Q  Okay.  Can you tell me anything you**
18 **remember about the way TOPS-20 commands were**
19 **formatted as a general matter?**
20   MR. NEUKOM:  Objection to form.          11:19:20
21   THE WITNESS:  There would be a leading
22 keyword, perhaps one or two leading keywords.  There
23 was -- to help people along, you could hit an
24 "escape" key.  You would complete -- it might print
25 out something called a guide word.        11:20:05

Pages 54 to 57

1  exhibit.                                14:20:06
2       (Exhibit 37 was marked for identification
3       and is attached hereto.)
4  BY MR. FERRALL:
5       Q  We've marked as Exhibit 37 a document    14:20:18
6  entitled "cisco Systems AGS User Manual System
7  Version 6.0."  It bears control numbers
8  CSI-CLI-00358166 to 222.
9       Do you recognize Exhibit 37?
10      A  I do.                             14:20:38
11      Q  Did you help prepare it?
12      A  I did.
13      Q  And this is -- this is the manual that
14  accompanied Version 6 of Cisco's software release;
15  is that correct?                        14:20:58
16      A  Correct.
17      Q  Do you recall who else would have helped
18  you prepare Exhibit 37?
19      A  I believe I was the sole author.
20      Q  Who -- strike that.               14:22:42
21      IOS has different modes, correct?
22      MR. NEUKOM:  Objection.  Vague, compound.
23      THE WITNESS:  Yes.
24  BY MR. FERRALL:
25      Q  In the current version of IOS, how many   14:23:18

1  different modes are there?              14:23:20
2       A  A lot.
3       Q  Do you know how many?
4       A  No, not at present.
5       Q  More than five?                   14:23:44
6       A  Yes.
7       Q  More than ten?
8       A  Probably.
9       Q  Were there different modes in the
10      original -- actually, strike that.       14:24:04
11      Let me ask terminology.
12      What did you call the original Cisco
13  software before it became known as IOS?
14      A  The gateway software.  The router
15  software.  The terminal server software.  The AGS    14:24:25
16  software.  There was no branding.
17      Q  This Exhibit 37 refers to "AGS User
18  Manual."
19      What does AGS stand for?
20      A  Advanced gateway server.          14:24:45
21      Q  Okay.  At the time of Version 6 of the
22  Cisco software, how many different modes were there,
23  do you know?
24      A  So I don't understand how you're using the
25  word "mode."                            14:25:21

1       Q  Did Cisco use the word "mode" in       14:25:27
2  describing its functionality of its software?
3       A  We had -- there would be -- the phrase
4  "configuration mode" was certainly being used at
5  this time.                              14:25:46
6       Q  Okay.  And how did -- how did
7  "configuration mode" differ from any other mode of
8  operation?
9       A  It allowed you to type in command
10  expressions that affected the configuration of the    14:26:04
11  system.
12      Q  And if you weren't in configuration mode,
13  how would you describe whatever mode you were in?
14      A  You were -- at this time you would have
15  said you are at the EXEC.               14:26:32
16      Q  What does "EXEC" mean?
17      A  It was the term that I chose to refer to
18  the -- all the stuff that wasn't the configuration
19  mode.
20      Q  Give me an example of what that stuff is    14:27:08
21  or was.
22      A  The commands for connecting to other
23  computers on the network, the class of command
24  expressions that we call the "show" commands.
25      Basically the set of commands that did not    14:27:48

1  reveal -- basically mostly status commands and ones    14:27:53
2  for handling connections over the network to other
3  hosts, sort of a subset of the -- of the terminal
4  server commands.
5       Q  And you said you chose the term "EXEC,"    14:28:26
6  that's E-X-E-C; is that right?
7       A  Yes.
8       Q  You chose that term, yes?
9       A  Yes.
10      Q  How did you come up with that term?      14:28:39
11      A  Well, I had a number of possible ways of
12  describing it.  I could have used "shell" after
13  the -- modeling it along the UNIX way of -- UNIX
14  equivalent.
15      From -- I decided EXEC in sort of -- you    14:29:15
16  know, inspired by the TOPS-20 command processor.
17  You know, calling it the command processor would
18  have been another possibility.
19      There was a number of possibilities that I
20  could have called it, what I could have called that    14:29:38
21  particular part of the software, and I ended up
22  choosing EXEC.
23      Q  Now, were you responsible for determining
24  the prompt symbol on the interface?
25      I'm sorry.  Let me be clear.       14:30:26

Veritext Legal Solutions
866 299-5127

1    I'm talking about on the interface line,    14:30:28
2    there are symbols that precede the input point, such
3    as a hash sign, for example, right?
4        A   So for -- I was responsible for choosing
5    the prompts for the command line interface, for the    14:30:45
6    CLI.
7        Q   Okay.  And tell me what those prompts are,
8    the various prompts that the Cisco CLI uses.
9        A   There are many right now.  But at the time
10   there was the -- unprivileged EXEC commands, and    14:31:09
11   that was the host name of the -- of the router or --
12   of the router, followed by a close angle bracket.
13       There was a privileged mode, and it
14   changed that prompt to a hash mark.
15       And in the initial implementation of    14:31:55
16   configuration mode, there was no prompt.
17       Q   Okay.  How did you choose the hash prompt
18   for the privileged mode?
19       A   It was visually large and different than
20   the -- different -- just different than the    14:32:25
21   unprivileged EXEC prompt.
22       Q   Okay.  How did you use the unprivileged
23   close angle bracket prompt?
24       A   I don't understand your question.
25       Q   Did you choose to use the close angle    14:32:59

Page 110

1    bracket prompt?    14:33:02
2        A   Router name, close angle bracket.
3        Q   Right.
4        A   Yes, I chose that.
5        Q   Okay.  How did you come to choose that?    14:33:09
6        A   Well, there were -- when you have multiple
7    devices on a network, one of the first things you
8    want to know if you're typing at something is to
9    what you are typing at.  So that -- sort of the most
10   aesthetic choice was the -- was the name of the    14:33:51
11   device.
12       And the angle bracket was a nice visual
13   way of terminating -- you know, here's where your
14   type-in begins.  Here's where the prompt ends,
15   here's where the type-in begins.    14:34:19
16       Q   Had you ever seen the angle bracket used
17   as a prompt in any other system?
18       A   I wasn't aware of any generally available
19   host -- general purpose timesharing that actually
20   that was the default, that was the prompt.    14:34:56
21       Q   I'm not sure what you mean by that.
22       But had you ever seen any system that used
23   a close angle bracket as a prompt?
24       A   No.  TOPS-20 used an "at" sign and UNIX
25   used a percent sign.    14:35:19

Page 111

1        Q   And you're not aware of any use of a hash    14:35:22
2    sign as a prompt?
3        A   Not to my recollection.
4        Q   You were familiar with UNIX in the mid
5    1980s, right?    14:36:18
6        A   As a user of UNIX.
7        Q   And -- by the way, are you familiar with
8    Linux?
9        A   Only as a user.
10       Q   When did you first become familiar with    14:36:38
11   Linux?
12       A   With Linux?  I think I first heard mention
13   of it in the late '90s.
14       Q   Did Cisco come up with the nomenclature of
15   calling a mode "privileged," to your knowledge?    14:38:02
16       A   I don't believe -- I don't believe Cisco
17   came up with that terminology.
18       Q   Let me turn to the current set of IOS CLI
19   commands.
20       I don't expect an exact number, but do you    14:38:54
21   know approximately how many IOS CLI commands there
22   are today?
23       A   I would have to guess.  It is a -- it's a
24   very large number.
25       Q   Can you just give me a ballpark?    14:39:15

Page 112

1        A   I believe it's in the low thousands.    14:39:20
2        Q   Do you know if it's more or less than
3    5,000?
4        A   No, I don't.  I've not counted it.  I've
5    not -- I've not counted it, nor have I heard of    14:39:43
6    somebody who has counted how many there are and how
7    many variations there are in total.
8        Q   What is IOS XR?
9        MR. NEUKOM:  Objection.  Asked and
10   answered.    14:40:16
11       THE WITNESS:  IOS XR is a Cisco-developed
12   variant of IOS for the -- for the service provider
13   marketplace.
14   BY MR. FERRALL:
15       Q   Does IOS XR have a different set of CLI    14:40:43
16   commands?
17       A   It has --
18       Q   From IOS, that is.
19       A   It is substantially the same.  There is
20   functionality that exists only for a service    14:41:02
21   provider that has commands that are not contained in
22   the other variants of IOS.
23       Q   What is IOS XE?
24       A   That is a variant of IOS.
25       Q   What's the purpose of that variant?    14:41:27

Page 113

Pages 110 to 113

Q  How did you choose the term -- the words  18:13:39
"timers basic" for this function?
A  I don't remember where "basic" came from.
But using the keyword "timers" was my -- was my
introduction, was my creation.  18:14:00
MR. NEUKOM:  Counsel, I believe we're now
beyond seven hours.
MR. FERRALL:  Okay.  Well, I -- given
Mr. Lougheed's tenure at Cisco, I thank him for his
time, but I will say I think we deserve some more  18:14:22
time with him.
But I understand seven hours is up and
you're going to say enough is enough for today I
take it; is that right?
MR. NEUKOM:  Certainly for today for the  18:14:31
sake of the witness.  And we will respectfully
disagree with the idea that counsel needs more than
seven hours --
MR. FERRALL:  Okay.
MR. NEUKOM:  -- needs more than today.  18:14:41
But we can discuss that for another day.
In the meantime, I should note for the
record the witness reserves the right to review the
transcript and make corrections.
Brian, I'm not sure I did that for  18:14:51

Page 186

Mr. Tjong.  If you're okay with it, I'd like to just  18:14:53
do a stipulation across the case that both sides
have the 30-day review and errata right for all
transcripts regardless whether counsel puts it on
the record at the depo as a two-way street.  18:15:04
MR. FERRALL:  That's fine.  I thought it
existed as a matter of procedure anyway.  So that's
fine.
MR. NEUKOM:  I hope you're right, but glad
to have the stipulation, even if it's unnecessary.  18:15:17
MR. FERRALL:  Okay.
MR. NEUKOM:  Thanks very much.
THE VIDEO OPERATOR:  This concludes
today's videotaped deposition of Mr. Kirk Lougheed.
We're off the record at 6:15 p.m.  Thank you.  18:15:25
(TIME NOTED:  6:15 p.m.)
--o0o--

Page 187

I, KIRK LOUGHEED, do hereby declare under
penalty of perjury that I have read the foregoing
transcript; that I have made any corrections as
appear noted, in ink, initialed by me, or attached
hereto; that my testimony as contained herein, as
corrected, is true and correct.
EXECUTED this _____ day of _____,
2015, at _____, _____
(City)          (State)


_____
KIRK LOUGHEED

Page 188

I, the undersigned, a Certified Shorthand
Reporter of the State of California, do hereby
certify:
That the foregoing proceedings were taken
before me at the time and place herein set forth;
that any witnesses in the foregoing proceedings,
prior to testifying, were administered an oath; that
a record of the proceedings was made by me using
machine shorthand which was thereafter transcribed
under my direction; that the foregoing transcript is
a true record of the testimony given.
Further, that if the foregoing pertains to
the original transcript of a deposition in a Federal
Case, before completion of the proceedings, review
of the transcript [X] was [ ] was not requested.
I further certify I am neither financially
interested in the action nor a relative or employee
of any attorney or any party to this action.
IN WITNESS WHEREOF, I have this date
subscribed my name.

Dated: 11/25/2015

<%signature%>
CARLA SOARES

Page 189

Pages 186 to 189

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

1              UNITED STATES DISTRICT COURT

2              NORTHERN DISTRICT OF CALIFORNIA

3                   SAN JOSE DIVISION

4

    CISCO SYSTEMS, INC.      Case No.: 5:14-cv-05344-BLF(PSG)

5

6              Plaintiff,

7         v.

8    ARISTA NETWORKS, INC.

9              Defendants.
    _____

10

11

12

13      * HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY *

14         VIDEOTAPED DEPOSITION OF KIRK LOUGHEED

15              Palo Alto, California

16              Monday, April 4, 2016

17                   Volume 2

18

19

20

21   Reported by:

22   LESLIE JOHNSON

23   RPR, CSR No. 11451

24   Job No.: 2285024

25   PAGES 190 - 399

                                    Page 190

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

```
 1        UNITED STATES DISTRICT COURT
 2    FOR THE NORTHERN DISTRICT OF CALIFORNIA
 3         SAN JOSE DIVISION
 4
   CISCO SYSTEMS, INC    Case No : 5:14-cv-05344-BLF(PSG)
 5
       Plaintiff,
 6
    v
 7
   ARISTA NETWORKS, INC
 8
       Defendants
 9  _____
10
11
12
13
14   * HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY *
15
16
17    VIDEOTAPED DEPOSITION OF KIRK LOUGHEED, Volume 2,
18  taken on behalf of Defendant, at 601 California Avenue,
19  Palo Alto, California, beginning at 9:25 a m  and ending
20  at 4:37 p m , on Monday, April 4, 2016, before
21  LESLIE JOHNSON, Certified Shorthand Reporter No  11451
22
23
24
25
                                            Page 191
```

```
 1                   I N D E X
 2
 3  WITNESS                    EXAMINATION
 4  KIRK LOUGHEED
    Volume 2
 5
 6    BY MR. WONG                    197
 7
 8        EXHIBITS
 9      KIRK LOUGHEED
10  NUMBER      DESCRIPTION          PAGE
11  Exhibit 452  Copy of name badge; 1 page    198
12  Exhibit 453  Black and white copy of photograph;  198
             1 page
13
     Exhibit 454  Patent Agreement; Bates stamped  208
14      KL-00000872 to 891
15  Exhibit 455  A Multiple Protocol Kernel for    228
        Local Area Network Software
16      Development Reference Manual; Bates
        stamped KL-00000001 to 93
17
     Exhibit 456  Document entitled "Chaosnet"; Bates  238
18      stamped KL-00000186 to 250
19  Exhibit 457  Document entitled "Debugging   241
        Information"; Bates stamped
20      KL-00000564-654
21  Exhibit 458  DECnet Digital Network Architecture  244
        (Phase V); Bates stamped
22      KL-00000251 to 380
23  Exhibit 459  E-mail from Stanford Low Overhead  252
        Timesharing; Bates stamped
24      KL-00001699 to 763
25
                                            Page 193
```

```
 1  APPEARANCES:
 2
 3  FOR PLAINTIFF CISCO SYSTEMS, INC.:
 4    QUINN EMANUEL URQUHART & SULLIVAN LLP
 5    BY: JOHN (JAY) NEUKOM, ESQ.
 6    50 California Street, 22nd Floor
 7    San Francisco, California  94111
 8    (415)875-6600
 9    johnneukom@quinnemanuel.com
10  FOR DEFENDANT ARISTA NETWORKS, INC.:
11    KEKER & VAN NEST LLP
12    BY: RYAN WONG, ESQ.
13    633 Battery Street
14    San Francisco, California  94111
15    (415)391-5400
16    rwong@kvn.com
17  ALSO PRESENT:
18    SEAN GRANT, Videographer
19
20
21
22
23
24
25
                                            Page 192
```

```
 1        EXHIBITS (Cont )
 2      KIRK LOUGHEED
 3  NUMBER      DESCRIPTION          PAGE
 4  Exhibit 460  E-mail dated 10-Jan-83 from Barb   260
        at ISL to Computer Committee; Bates
 5      stamped KL-00000868 to 871
 6  Exhibit 461  Stanford Ethertip/Gateway User and   263
        Configuration Guide; Bates stamped
 7      CSI-CLI-01315367 to 97
 8  Exhibit 462  Letter dated August 21, 1986 from   281
        Robert L  Street to Len Bosack;
 9      Bates stamped CSI-CLI-01839502
        to 504
10
     Exhibit 463  E-mail dated 4/3/2006 from Kirk   298
11      Lougheed to Vivian Neou; Bates
        stamped CSI-CLI-01124245
12
     Exhibit 464  Cisco's Amended Exhibit F; 44 pages  302
13
     Exhibit 465  Software Unit External Functional   310
14      Specification; Bates stamped
        CSI-CLI-00608751 to 752
15
     Exhibit 466  ipsupport c -- miscellaneous IP    328
16      support code; 20 pages
17  Exhibit 467  Document entitled "Part 3: Media   332
        Access Control (MAC) Bridges";
18      Bates stamped ARISTADCA00032440
        to 812
19
     Exhibit 468  Contents of "tip" directory; 1 page  348
20
     Exhibit 469  Command1 c -- ASM/AGS commands;   355
21      Bates stamped KL-SC-00000001 to 9
22  Exhibit 470  Config c -- parse and act upon    358
        configuration commands; Bates
23      stamped KL-SC-00000010 to 20
24  Exhibit 471  Exec c -- ASM/AGS command level;   365
        Bates stamped KL-SC-00000021 to 32
25
                                            Page 194
```

2 (Pages 191 - 194)

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

                    EXHIBITS (Cont.)

                    KIRK LOUGHEED

NUMBER        DESCRIPTION              PAGE

Exhibit 472  "cisco.c" source code; 1 page    371

Exhibit 473  "stanford.c" source code; 1 page  371

Exhibit 474  Source code; Bates stamped       375
             KL-SC-00000033 to 41


  Exhibit 475  Source code; Bates stamped      375
             KL-SC-00000042 to 52

Exhibit 476  Cisco Systems ASM/AGS User Manual  383
             and Configuration Guide; Bates
             stamped CSI-CLI-00358622 to 54

                    * * *

Page 195

---

1      THE VIDEOGRAPHER:  Thank you.  Will the
2  certified court reporter please swear in the
3  witness.
4
5          KIRK LOUGHEED,
6  having been administered an oath, was examined and
7          testified as follows:
8
9        EXAMINATION (RESUMED)
10 BY MR. WONG:
11     Q.   Good morning, Mr. Lougheed.
12     A.   Good morning.
13     Q.   Mr. Lougheed, do you understand that this
14 is a continuation of your personal deposition that
15 was taken back on November 20th, 2015?
16     A.   I do.
17     Q.   And do you understand that you are still
18 testifying under oath as if you were testifying at
19 trial?
20     A.   I do.
21     Q.   And is there any reason why you cannot
22 give full and truthful testimony today?
23     A.   There is no reason.
24     Q.   And are you generally still familiar with
25 the ground rules for a deposition?

Page 197

---

1      Palo Alto, California, Monday, April 4, 2016
2              9:25 a.m.
3
4      THE VIDEOGRAPHER:  Good morning.  We're on
5  the record.  The time is 9:25 a.m., and the date is
6  April 4th, 2016.  This begins Volume 2 of the
7  videotaped deposition of Mr. Kirk Lougheed.  My name
8  is Sean Grant, here with our court reporter, Leslie
9  Johnson.  We're here from Veritext Legal Solutions
10 at the request of counsel for Defendant.  This
11 deposition is being held at Wilson Sonsini in Palo
12 Alto, California.  The caption of this case is
13 "Cisco Systems Inc. versus Arista Networks Inc.,"
14 Case No. 5:14-cv-05344-BLF.
15     Please note that audio and video recording
16 will take place unless all parties have agreed to go
17 off the record.  Microphones are sensitive and may
18 pick up whispers, private conversations or cellular
19 interference.
20     At this time, will counsel please identify
21 themselves and state whom they represent.
22     MR. WONG:  Ryan Wong from Keker & Van Nest
23 for Defendant Arista Networks.
24     MR. NEUKOM:  John Neukom for the plaintiff
25 and also today for the witness.

Page 196

---

1      A.   Yes.
2      Q.   Okay.  Well, I'll just repeat some of the
3  more important rules.  If you need to take a break
4  at any time, just let me know.  And all I'd ask is
5  that if there is a question pending, that you answer
6  it before we go on the break.  Okay?
7      A.   (Witness nods head.)
8      MR. WONG:  Why don't we mark this as the
9  first exhibit for today.
10     (Exhibit 452 marked for identification.)
11     MR. WONG:  And we will mark this one as
12 the next exhibit.
13     (Exhibit 453 marked for identification.)
14     MR. NEUKOM:  Ryan, I have two separate
15 pieces of paper.  Are you treating these as two
16 separate exhibits?
17     MR. WONG:  Yes.  I'm going to give them
18 two exhibit numbers and read them into the record in
19 just a second.
20     The court reporter has marked as
21 Exhibit 452 a photocopy -- photo bearing Bates Nos.
22 KL-00002202.  The court reporter has also marked as
23 Exhibit 453, a black and white photo with Bates Nos.
24 KL-00002201.
25 ////

Page 198

---

3 (Pages 195 - 198)

1    A.  Let me take a quick scan through this.
2    Q.  Sure.
3    A.  Yes.  I recognize this file.



Page 359

Veritext Legal Solutions
866 299-5127



Page 363

Veritext Legal Solutions
866 299-5127

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY



Page 367

Veritext Legal Solutions
866 299-5127

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY



Page 371

Veritext Legal Solutions
866 299-5127

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY



Page 379

Veritext Legal Solutions
866 299-5127



1    MR. WONG:  I think it's our understanding
2 that all witnesses can have 30 days or something.
3    MR. NEUKOM:  By stipulation.
4    MR. WONG:  Great.
5    THE VIDEOGRAPHER:  This concludes today's
6 videotaped deposition of Mr. Kirk Lougheed.  We're
7 off the record at 4:37 p.m.
8    (TIME NOTED:  4:37 P.M.)
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

Page 395                                                Page 397

1    DECLARATION UNDER PENALTY OF PERJURY
2
3    I, KIRK LOUGHEED, the witness herein,
4 declare under penalty of perjury that I have read the
5 foregoing in its entirety; and that the testimony
6 contained therein, as corrected by me, is a true and
7 accurate transcription of my testimony elicited at said
8 time and place.
9
10    Executed this _____ day of _____ 2016, at
11 _____, _____.
12    (City)          (State)
13
14
15
16
17    _____
18         KIRK LOUGHEED
19
20
21
22
23
24
25
                                                    Page 398

1       REPORTER'S CERTIFICATION
2       I, Leslie Johnson, a Certified Shorthand
3   Reporter of the State of California, do hereby certify:
4       That the foregoing proceedings were taken
5   before me at the time and place herein set forth; that
6   any witnesses in the foregoing proceedings, prior to
7   testifying, were administered an oath; that a record of
8   the proceedings was made by me using machine shorthand
9   which was thereafter transcribed under my direction;
10  that the foregoing transcript is a true record of the
11  testimony given.
12      Further, that if the foregoing pertains to
13  the original transcript of a deposition in a Federal
14  Case, before completion of the proceedings, review
15  of the transcript [ ] was [ ] was not requested.
16  I further certify I am neither financially interested in
17  the action nor a relative or employee of any attorney or
18  any party to this action.
19      IN WITNESS WHEREOF, I have this date
20  subscribed my name.
21  Dated: April 19, 2016
22
23      *Leslie Johnson*
24      LESLIE JOHNSON
25      CSR No. 11451, RPR, CCRR
                                    Page 399

Veritext Legal Solutions
866 299-5127

CONFIDENTIAL INFORMATION UNDER THE PROTECTIVE ORDER

1                    UNITED STATES DISTRICT COURT

2                  NORTHERN DISTRICT OF CALIFORNIA

3                       SAN JOSE DIVISION

4

5     CISCO SYSTEMS,        )

6     INC.,                 )

7          Plaintiff,       )

8              vs.          ) No. 5:14-cv-05344-BlF (PSG)

9     ARISTA NETWORKS,      )

10    INC.,                 )

11         Defendant.       )

12    _____

13     CONFIDENTIAL INFORMATION UNDER THE PROTECTIVE ORDER

14

15         VIDEOTAPED DEPOSITION OF ANTHONY J. LI

16                     Palo Alto, CA

17               Monday, February 1, 2016

18                       Volume I

19

20

21    Reported by: SUSAN F. MAGEE, RPR, CCRR, CLR

22    CSR No. 11661

23    JOB No. 2224600

24

25    PAGES 1-258

                                              Page 1

CONFIDENTIAL INFORMATION UNDER THE PROTECTIVE ORDER

```
1      UNITED STATES DISTRICT COURT
2      NORTHERN DISTRICT OF CALIFORNIA
3         SAN JOSE DIVISION
4
5  CISCO SYSTEMS,   )
6  INC ,            )
7    Plaintiff,    )
8       vs       ) No  5:14-cv-05344-BlF (PSG)
9  ARISTA NETWORKS,   )
10 INC ,             )
11    Defendant   )
12  _____
13
14
15     CONFIDENTIAL INFORMATION UNDER THE
16 PROTECTIVE ORDER VIDEO DEPOSITION OF ANTHONY J  LI
17 taken on behalf of Defendant at WILSON, SONSINI,
18 GOODRICH & ROSATI, 601 South California Avenue,
19 Palo Alto, CA 94304, beginning at 9:13 a m  and
20 ending at 4:17 p m  on Monday, February 1, 2016,
21 before Susan F  Magee, RPR, CCRR, CLR, Certified
22 Shorthand Reporter No  11661
23
24
25
                                        Page 2
```

```
1        I N D E X
2
3  CONFIDENTIAL INFORMATION UNDER THE PROTECTIVE ORDER
4  VIDEO DEPOSITION OF ANTHONY J  LI
5  Volume I
6  EXAMINATION BY               PAGE
7  BY MR  WONG                    9
8  BY MR PAK                     191
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
                                        Page 4
```

```
1  APPEARANCES:
2
3     For the Plaintiff:
4        QUINN, EMANUEL, URQUHART & SULLIVAN
5        BY: SEAN PAK, ESQ.
6        50 California Street
7        22nd Floor
8        San Francisco, CA 94111
9        (415) 875-6600
10       seanpak@quinnemanuel.com
11
12    For the Defendant:
13       KEKER & VAN NEST LLP
14       BY: RYAN WONG, ESQ.
15         BRIAN L. FERRALL, ESQ.
16       633 Battery Street
17       San Francisco, CA 94111-1809
18       (415) 773-6682
19       rwong@kvn.com
20       bferrall@kvn.com
21
22    The Videographer:
23       JEFREE ANDERSON
24
25
                                        Page 3
```

```
1          E X H I B I T S
2  NUMBER         DESCRIPTION          PAGE
3
4  Exhibit 136  LinkedIn Profile (8 pages)     12
5  Exhibit 137  RFC Table (3 pages)         90
6  Exhibit 138  March 1995 RFC 1771, A Border   100
7            Gateway Protocol 4 (BGP-4) (57
8            pages)
9  Exhibit 139  December 1995 RFC 1887, An    105
10           Architecture for IPv6 Unicast
11           Address Allocation,
12           ARISTANDCA00025747-ARISTANDCA
13           00025772
14  Exhibit 140  June 1996 RFC 1966, BGP Route   111
15           Reflection, An Alternative to
16           Full Mesh IBGP,
17           ARISTANDCA00025927-ARISTANDCA
18           00025933
19  Exhibit 141  October 2008 RFC 2966,        116
20           Domain-Wide Prefix Distribution
21           with Two-Level IS-IS (16 pages)
22  Exhibit 142  August 1996 RFC 1997, BGP     119
23           Communities Attribute,
24           ARISTANDCA00026094-ARISTANDCA
25           00026098
                                        Page 5
```

2 (Pages 2 - 5)

CONFIDENTIAL INFORMATION UNDER THE PROTECTIVE ORDER

1      E X H I B I T S (continued)
2  NUMBER        DESCRIPTION                PAGE
3
4  Exhibit 143   March 1998 RFC 2281, Cisco Hot   124
5         Standby Router Protocol (HSRP),
6         ARISTANDCA00026832-ARISTANDCA
7         00026848
8  Exhibit 144   E-mail String Containing    143
9         9/22/92 E-mail from/to Toni Li,
10        TS-00000066
11  Exhibit 145  Procket Networks PRO/8000    163
12        Series Software Introduction
13        (144 pages)
14  Exhibit 146  Procket Networks PRO/8000    164
15        Series IPv6 Routing Protocols
16        (180 pages)
17  Exhibit 147  Procket Networks PRO/8000    164
18        Series System Management and
19        Operations (604 pages)
20  Exhibit 148  Cisco's 6th Supplemental     167
21        Response to Interrogatory NO.
22        16 and Response to
23        Interrogatory No. 19 Amended
24        Exhibit F (45 pages)
25  Exhibit 149  List of Commands (1 page)    169
Page 6

1      Palo Alto, CA, Monday February 1, 2016
2          9:13 a.m.
3
4          THE VIDEOGRAPHER:  Good morning.  We're on
5  the record at 9:13 a.m. on February 1st, 2016.  This   09:13:47
6  is the video recorded deposition of -- so sorry.  Of
7  Anthony Li here with our court reporter Susan Magee.
8          My name is Jefree Anderson.  We are here
9  from Veritext Legal Solutions at the request of
10 counsel for the -- defendant or the plaintiff?    09:14:16
11         MR. WONG:  Defendants.
12         THE VIDEOGRAPHER:  For the defendant.  This
13 deposition is being held at Wilson Sonsini at
14 601 California Avenue, Palo Alto, California.  The
15 caption of this case is Cisco Systems, Incorporated   09:14:31
16 vs. Arista Networks, Incorporated.  The case number
17 is 5:14-cv-05344.
18         Please note that audio and video recording
19 will take place unless all parties agree to go off
20 the record, and microphones are sensitive and may   09:14:53
21 pick up whispers, private conversations and cellular
22 interference; so please be aware of that.
23         Beginning with our noticing attorney,
24 please state your name and the firm you represent.
25         MR. WONG:  Ryan Wong from Keker & Van Nest   09:15:05
Page 8

1      E X H I B I T S (continued)
2  NUMBER        DESCRIPTION                PAGE
3
4  Exhibit 150   1/20/96 E-mail from Toni Li to   183
5         Bill W., CSI-CLI-00746246
6  Exhibit 151   CSCdi14533, CSI-CLI-01339850   185
7  Exhibit 152   Group of E-mails Containing   239
8         2/23/1996 E-mail from Tony Li
9         to widmer@cisco.com,
10        CSI-CLI-00746331 -
11        CSI-CLI-00746347
12
13
14
15
16
17
18
19
20
21
22
23
24
25
Page 7

1  for defendant Arista Networks.
2          MR. FERRALL:  Brian Ferrall, Keker & Van
3  Nest, also for Arista.
4          MR. PAK:  Sean Pak of Quinn for Cisco.
5          THE VIDEOGRAPHER:  Thank you.     09:15:16
6          Will the court reporter please swear in the
7  witness.
8
9              ANTHONY J. LI,
10 having been administered an oath, was examined and   09:15:19
11 testified as follows:
12
13           EXAMINATION BY MR. WONG
14
15 Q.  Good morning, Mr. Li.         09:15:29
16 A.  Good morning.
17 Q.  Please state your full name.
18 A.  Anthony Joseph Li.
19 Q.  Do you live in the Bay Area, Mr. Li?
20 A.  I do.                   09:15:36
21 ██  ████████████████████████████████
22 ██  ████████████████████████████████████████
23 ██████████
24 Q.  Mr. Li, do you understand that are you
25 testifying here in response to a subpoena in this   09:15:46
Page 9

3 (Pages 6 - 9)

1  A. That varies. I was a programmer at
2  Digital Research working on CPM, so I was a
3  developer in that role. Most of the others I was a
4  user.
5  Q. When were you a programmer at        09:39:12
6  Digital Research?
7  A. So I had two summer internships, the
8  summers of 1982 and 1981.
9  Q. What was the command -- strike that.
10   Actually, what was the command syntax used   09:39:34
11 for CPM?
12  A. Again, it was very similar to use -- what
13 was used in TOPS-20 and VMS. Again, verb, noun and
14 qualifiers.
15  Q. What were some of the verbs that were used   09:39:52
16 in the command set for CPM?
17  A. I'm sorry. I've forgotten.
18  Q. Do you recall any of the verbs that were
19 used in the command sets for TOPS-20?
20  A. Info, show, DIR. I've forgotten most of   09:40:07
21 the others.
22  Q. You mentioned MS-DOS as one of the command
23 line interfaces that you had worked with; correct?
24  A. Mm-hmm.
25  Q. In what context did you work with MS-DOS?   09:40:30
Page 26

1  accessible to the system administrator.
2  Q. When you say "privileged," what do you mean
3  by that?
4  A. The system administration and management
5  commands are -- cannot be executed by a normal user.   09:42:46
6  Q. Were there similar separations of command
7  sets in any of the other operating systems that we
8  discussed this morning?
9  A. Almost all have that kind of separation.
10  Q. What -- describe for me the separation in   09:43:08
11 command sets that existed in TOPS-20.
12  A. As a user of TOPS-20, I don't recall the
13 details of the administration commands, so I never
14 used them.
15  Q. Were the administration commands in TOPS-20   09:43:25
16 accessible to you as a user?
17  A. No.
18  Q. How were command sets separated in VAX/VMS?
19  A. Again, there were privileged commands that
20 one could use if you were a system administrator.   09:43:46
21  Q. Was the term "privileged" a term that you
22 came up with, Mr. Li?
23  A. No. I'm sure that several of -- I've
24 picked that up somewhere, but that is commonly used.
25  Q. That is commonly used to describe what?   09:44:14
Page 28

1  A. Just as a user.
2  Q. And that was in the early 1980s?
3  A. At some point, yes.
4  Q. You also mentioned UNIX as a system that
5  you have experience with; correct?   09:40:54
6  A. That's correct.
7  Q. In what context did you work with the UNIX
8  operating system?
9  A. I had access to a UNIX system as a user
10 starting in 1975.   09:41:03
11  Q. Do you know how long UNIX has been in
12 existence as an operating system?
13  A. No, I don't.
14  Q. And how many years did you work with the
15 UNIX operating system?   09:41:22
16  A. I've been working with it on and off since
17 1975.
18  Q. Can you describe for me how the UNIX CLI
19 worked?
20  A. UNIX CLI is, again, a command and   09:42:06
21 parameters structure with a verb and then nouns and
22 qualifiers behind it.
23  Q. Were all commands available to a UNIX user?
24  A. There are commands that are not available
25 that they are -- they're privileged and only   09:42:33
Page 27

1  A. Throughout the industry to indicate that
2  people -- certain administrators have abilities that
3  are past normal users.
4  Q. Was the term "privileged" commonly used at
5  the time that you were working on VAX/VMS?   09:44:30
6   MR. PAK: Objection. Calls for expert
7  testimony.
8   BY MR. WONG: Q. Just to your
9  recollection, Mr. Li.
10  A. Yes.   09:44:40
11  Q. And what facts are you basing that answer
12 on?
13  A. I was a system administrator for a VMS
14 system.
15  Q. Did you use the term "privileged" to   09:44:50
16 describe commands that were accessible only to
17 system administrators at the time you were working
18 on VAX/VMS?
19  A. Probably.
20  Q. Was it likely that you were using that   09:45:03
21 term?
22  A. Very likely.
23  Q. You mentioned VMCMS. What experience did
24 you have working with VMCMS?
25  A. So USC maintained, in addition to numerous   09:45:27
Page 29

8 (Pages 26 - 29)

1 standards organization like IETF?

2    A.  I have never seen anyone do that.  I have

3 never seen Cisco have any UI patents; so I don't

4 understand.

5    Q.  Mr. Li, is there any other views or    04:15:36

6 opinions that you have with respect to this case

7 that you have not shared with us on the record that

8 you would like to share with us now?

9       MR. WONG:  Objection.  Vague.

10       THE WITNESS:  I don't understand your    04:15:55

11 question.

12       BY MR. PAK:  Q.  We talked about a lot of

13 different topics.  I'm giving you the opportunity to

14 provide any further testimony that you would like on

15 any of these topics if you'd like it.    04:16:05

16    A.  So I don't understand what intellectual

17 property people think there is in some CLI syntax.

18 The intellectual property is -- that's of

19 significance gets covered in patents.  If we thought

20 it was worth protecting, we would copyright it.  We    04:16:22

21 would patent it.

22       MR. WONG:  Object to the form of the

23 question.

24       BY MR. PAK:  Q.  Do you believe that

25 copyright is a form of intellectual property?    04:16:34

Page 254

1       MR. WONG:  Objection.  Calls for opinion

2 testimony.

3       THE WITNESS:  It calls for legal testimony.

4 I don't understand.

5       BY MR. PAK:  Q.  What is your understanding    04:16:44

6 of copyright law?

7       MR. WONG:  Same objection.

8       THE WITNESS:  Vague as best.

9       BY MR. PAK:  Q.  I take it, sir, that you

10 haven't analyzed any copyright laws relating to    04:16:56

11 interface, APIs, user interfaces?

12    A.  I know that I'm supposed to put a copyright

13 notice in the top of every source code file.  That's

14 about all I know.

15    Q.  Okay.    04:17:08

16    A.  I can't even tell you for certain what I'm

17 supposed to put in the top of the file because

18 nobody can tell me exactly how I should deal with

19 multiple years.

20       MR. PAK:  Thank you.  Sir, I think those    04:17:18

21 are the questions I have for you today.

22       MR. WONG:  I have no further questions.

23 ////

24

25

Page 255

1       THE VIDEOGRAPHER:  Okay.  This marks the

2 end of DVD No. 4 in the deposition of Anthony Li.

3       Going off the record.  The time is 4:17.    04:17:29

4       (TIME NOTED:  4:17 p.m.)

5            --o0o--

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 256

1       I, ANTHONY J. LI, do hereby declare under

2 penalty of perjury that I have read the foregoing

3 transcript; that I have made any corrections as appear

4 noted, in ink, initialed by me, or attached hereto; that

5 my testimony as contained herein, as corrected, is true

6 and correct.

7       Executed this _____ day of _____,

8 2016, at _____, _____.

9          (city)        (state)

10

11

12

13

14       _____

15       ANTHONY J. LI

16       Volume I

17

18

19

20

21

22

23

24

25

Page 257

65 (Pages 254 - 257)

1      I, the undersigned, a Certified Shorthand
2  Reporter of the State of California, do hereby
3  certify:
4      That the foregoing proceedings were taken
5  before me at the time and place herein set forth;
6  that any witnesses in the foregoing proceedings,
7  prior to testifying, were administered an oath; that
8  a record of the proceedings was made by me using
9  machine shorthand which was thereafter transcribed
10 under my direction; that the foregoing transcript is
11 a true record of the testimony given.
12     Further, that if the foregoing pertains to
13 the original transcript of a deposition in a Federal
14 Case, before completion of the proceedings, review
15 of the transcript [X] was [ ] was not requested.
16     I further certify I am neither financially
17 interested in the action nor a relative or employee
18 of any attorney or any party to this action.
19     IN WITNESS WHEREOF, I have this date
20 subscribed my name.
21     Dated: February 3, 2016
22
23
24     Susan F. Magee
25     CSR No. 11661, RPR, CCRR, CLR

Page 258

Veritext Legal Solutions
866 299-5127

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

1                    UNITED STATES DISTRICT COURT

2                   NORTHERN DISTRICT OF CALIFORNIA

3                        SAN JOSE DIVISION

4

- - - - - - - - - - - - - - - - - - - x   Case No.

5                                      :   5:14-cv-05344-BLF (PSG)

                                       :

6   CISCO SYSTEMS, INC.,               :

                                       :

7                    Plaintiff,        :

                                       :

8            vs.                       :

                                       :

9   ARISTA NETWORKS, INC.,             :

                                       :

10                   Defendant.        :

                                       :

11  - - - - - - - - - - - - - - - - - - - x

12

13            VIDEOTAPED DEPOSITION OF GREG SATZ

14                     March 23, 2016

15        HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

16                       VOLUME 1

17

18

19

20

21   Reported by

22   Brooke R. Bohr

23   CSR No. 753

24   Job No 2272380

25   Pages 1 - 168

                                              Page 1

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

| | |
|---|---|
| 1       VIDEOTAPED DEPOSITION OF GREG SATZ,<br>2   taken at the instance of the Defendant, at the<br>3   offices of TUCKER & ASSOCIATES, 605 W. Fort<br>4   Street, in the City of Boise, State of Idaho,<br>5   commencing at 10:10 a.m., on March 23, 2016,<br>6   before Brooke R. Bohr, CSR, RPR, a Notary Public<br>7   in and for the State of Idaho, pursuant to notice,<br>8   and in accordance with the applicable Rules of<br>9   Civil Procedure.<br>10<br>11       A P P E A R A N C E S<br>12   FOR PLAINTIFF<br>    John M. Neukom, Esq.<br>13     QUINN EMAMUEL URQUHART & SULLIVAN LLP<br>    50 California Street, 22nd Floor<br>14     San Francisco, CA 94111<br>    (415) 875-6320<br>15     johnneukom@quinnemanuel.com<br>16   FOR DEFENDANT<br>    Brian L. Ferrall, Esq.<br>17     KEKER & VAN NEST LLP<br>    633 Battery Street<br>18     San Francisco, CA 94111<br>    (415) 391-5400<br>19     bferrall@kvn.com<br>20<br>21<br>22<br>23<br>24<br>25<br>                        Page 2 | 1            BOISE, IDAHO<br>2     March 23, 2016, 10:10 a.m.<br>3<br>4     THE VIDEOGRAPHER: We are now on the record.<br>5       Please note that the microphones are<br>6   sensitive and may pick up whispering and private<br>7   conversations. Please turn off all cell phones or<br>8   place them away from the microphones as they can<br>9   interfere with the deposition audio. Recording<br>10   will continue until all parties agree to go off<br>11   record.<br>12     My name is David Cromwell, representing<br>13   Veritext. The date today is March 23, 2016, and<br>14   the time is approximately 10:10 a.m. This<br>15   deposition is being held at Tucker & Associates<br>16   located at 605 West Fort Street, Boise, Idaho<br>17   83702, and is being taken by counsel for the<br>18   defendant.<br>19     The caption of this case is Cisco<br>20   Systems, Inc. v. Arista Networks, Inc. This case<br>21   is filed in the United States District Court,<br>22   Northern District of California, San Jose<br>23   Division, Case No. 5:14-CV-05344-BLF PSG. The<br>24   name of the witness is Greg Satz.<br>25     At this time, the attorneys present in<br>                        Page 4 |
| 1       W I T N E S S<br>2   GREG SATZ                Page:<br>3     Examination by Mr. Ferrall     5<br>4     Examination by Mr. Neukom   151<br>5     Further Examination by Mr. Ferrall   158<br>6<br>          * * * * *<br>7<br>8       E X H I B I T S<br>9<br>          Page:<br>10<br>11   Exhibit 400   Greg Satz LinkedIn     13<br>12   Exhibit 401   "TOPS-20 DECnet-20 Programmers    22<br>           Guide and Operations Manual"<br>13<br>    Exhibit 402   One-page Document with     36<br>14       Bates No. KL-883<br>15   Exhibit 403   Document Beginning Bates No.    69<br>       ARISTANDCA00022465<br>16<br>    Exhibit 404   Document Beginning Bates No.    84<br>17       CSI-CLI-00359132<br>18   Exhibit 405   One-page Document Bates No.   106<br>       CSI-CLI-00746924<br>19<br>    Exhibit 406   Document Bates No. CSI-CLI-01828732 112<br>20       Through Bates No. CSI-CLI-01828783<br>21   Exhibit 407   Document Beginning Bates No.   141<br>       CSI-CLI-01295215<br>22<br>23   Exhibit 408   Document Beginning Bates No.   143<br>       CSI-CLI-01295181<br>24<br>25         * * * * *<br>                        Page 3 | 1   the room will identify themselves and the parties<br>2   they represent.<br>3     MR. FERRALL: Brian Ferrall of Keker &<br>4   Van Nest on behalf of Arista Networks.<br>5     MR. NEUKOM: John Neukom for the plaintiff.<br>6     THE COURT: Our court reporter, Brooke Bohr,<br>7   representing Veritext, will swear in the witness,<br>8   and we can proceed.<br>9<br>10        GREG SATZ,<br>11   produced as a witness at the instance of the<br>12   Defendant, having been first duly sworn, was<br>13   examined and testified as follows:<br>14<br>15        EXAMINATION<br>16   BY MR. FERRALL:<br>17     Q. Good morning, Mr. Satz. Can you please<br>18   state your full name.<br>19     A. Greg Leonard Satz.<br>20     Q. Mr. Satz, you are not represented by<br>21   counsel today; is that right?<br>22     A. Correct.<br>23     Q. Have you ever been deposed before?<br>24     A. I have.<br>25     Q. All right. So you know the basic<br>                        Page 5 |

2 (Pages 2 - 5)

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

1  "Stanford Ethertip/Gateway User and Configuration
2  Guide."
3      A.  Yeah.
4      Q.  Had you ever seen this before?
5      A.  I'm sure I have.  I don't have a
6  recollection of it, and I don't remember this date
7  at all.  This is a pretty late date.
8      Q.  Do you know Glenn Truitt?
9      A.  I do.
10      Q.  What did he work on at Stanford?
11      A.  I no longer remember.  I do know that
12  he had his hands in this software, but a lot of
13  people did.  Jeffrey Mobile, Benji Levy.  This
14  was -- this code was a lot of research work.  And
15  so if one of the graduate students felt there was
16  an application they wanted to experiment with,
17  this really was the beginning of what then became
18  the multi-protocol router and Cisco's router.
19  So -- oh, yeah, there's some really old -- really
20  old stuff here.
21      Q.  Did you become familiar with some of
22  the commands from this device?
23      A.  Yes.
24      Q.  Yeah?  How did you become familiar with
25  it?

1      Q.  This was a -- begins a section called
2  "privileged commands."  Do you see that?
3      A.  Um-hum.  I do.
4      Q.  And were you aware of a privileged mode
5  in this -- in the TIP Gateway?
6      A.  Sure.
7      Q.  Explain what was the purpose of the
8  privilege mode there.
9      A.  It mimicked the TOPS-20 style of
10  parsing, and it -- there were commands that people
11  would use to just have the device do what it does
12  day-to-day, and there were commands that
13  administrators or users who needed to maintain the
14  device in the network would use.  And so privilege
15  commands were the latter set, and TOPS-20 had a
16  very similar model.
17      Q.  And this document says in the -- I
18  guess in the second sentence, it's -- or I'll read
19  the first sentence also:  There's a second set of
20  commands available to the Ethertip user.  The two
21  command levels are disjoint.  That is, the
22  privileged mode is not a superset of the normal
23  mode.
24          Do you see that?
25      A.  Um-hum.

1      A.  Well, we were users of these devices
2  when I -- the state of the art back then, before
3  there were all of these computers and laptops, is
4  you used a basic terminal with RS232 into some
5  device that converted the commands into network
6  protocols and used that across the network to talk
7  to mainframes.  That was state of the art.
8          So on my desk at Stanford and at SRI
9  was these computers that were just terminals.
10  They -- all they did was take a capture of
11  keypress and generate a character.  And that
12  character was shipped across the network
13  somewhere.  And the computer would get that
14  character, do something with it, and ship you back
15  the output.
16          So that's what a TIP was, terminal
17  interface processor.  It allowed you to take an
18  RS232 terminal and sit on the network without
19  talking to the computer directly.  And I think
20  Kirk was responsible for gluing the TIP and the
21  Gateway software together, because they were two
22  different software bases.
23      Q.  So if I could ask you to turn to Page 6
24  of that Exhibit 36.
25      A.  Okay.

1      Q.  So what did you understand to be the
2  purpose of the normal mode, then, as opposed to
3  the privileged mode?
4      A.  Day-to-day users don't need privileged
5  mode.  They go in, they make their connections,
6  they do what they do to get their work done, and
7  that's the extent of their relationship to the
8  software.
9          The people who administer the device
10  and who might need to add a new feature or upgrade
11  the software would have to use privileged mode.
12  And it is a complete separate set of functions.
13          And in particular for the programmers,
14  they -- you know, they made a mistake, and they've
15  got to go figure out why something is not working,
16  especially for research work.
17      Q.  I want to ask about some of the
18  commands that follow here on Page 6.
19  "Access.lists," I see under 3.1.
20      A.  Um-hum.
21      Q.  Was that a command you were familiar
22  with?
23      A.  That's a very common and important
24  command.
25      Q.  What is an access.list command?

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

1      Exhibit 405 is a one-page document
2  marked CSI-CLI-00746924.
3      Exhibit 406 begins CSI-CLI-01828732,
4  and for this document I'll read the last number
5  because I think we're all unclear whether it is
6  one versus multiple documents.  This ends with
7  Bates stamp CSI-CLI-01828783.
8      Exhibit 407 begins Bates stamp
9  CSI-CLI-01295215.
10     And Exhibit 408 begins
11  CSI-CLI-01295181.
12     MR. NEUKOM:  Thanks all.
13     MR. FERRALL:  Agreed.  Thank you.
14     (The deposition concluded at 3:31 p.m.)
15              -oo0oo-
16
17
18
19
20
21
22
23
24
25
                                    Page 166

REPORTER'S CERTIFICATE
1
2
3
4      I, BROOKE R. BOHR, a Notary Public in
5  and for the State of Idaho, do hereby certify:
6      That prior to being examined, the
7  witness named in the foregoing deposition was by
8  me duly sworn to testify the truth, the whole
9  truth, and nothing but the truth;
10     That said deposition was taken down by
11  me in shorthand at the time and place therein
12  named and thereafter reduced into typewriting
13  under my direction, and that the foregoing
14  transcript contains a full, true, and verbatim
15  record of the said deposition.
16     I further certify that I have no
17  interest in the event of the action.
18     WITNESS my hand and seal March 30, 2016.
19
20
21
22
23     <%signature%>
24     Brooke R. Bohr
25     CSR No. 753
                                    Page 168

1      VERIFICATION
2      I declare under penalty of perjury
3  under the laws that the foregoing is
4  true and correct.
5
6      Executed on _____ , 20___,
7  at _____, _____.
8
9
10
11
12     _____
13     WITNESS SIGNATURE
14
15
16
17
18
19
20
21
22
23
24
25
                                    Page 167

43 (Pages 166 - 168)