08:57AM

```
 1              IN THE UNITED STATES DISTRICT COURT

 2            FOR THE NORTHERN DISTRICT OF CALIFORNIA

 3                      SAN JOSE DIVISION

 4

 5

    CISCO SYSTEMS, INC.,          )  CV-14-5344-BLF
 6                                )
                   PLAINTIFF,     )  SAN JOSE, CALIFORNIA
 7                                )
            VS.                   )  SEPTEMBER 9, 2016
 8                                )
                                  )  PAGES 1-107
 9  ARISTA NETWORKS, INC.,        )
                                  )
10                 DEFENDANT.     )
                                  )
11                                )

12                  TRANSCRIPT OF PROCEEDINGS
         BEFORE THE HONORABLE BETH LABSON FREEMAN
13               UNITED STATES DISTRICT JUDGE

14

15     A P P E A R A N C E S:

16       FOR THE PLAINTIFF:  SEAN SANG-CHUL PAK
                             JOHN NEUKOM
17                           QUINN EMANUEL URQUHART & SULLIVAN, LLP
                             50 CALIFORNIA, FLOOR 22
18                           SAN FRANCISCO, CA 94111

19

         FOR THE PLAINTIFF:  DAVID A. NELSON
20                           QUINN EMANUEL URQUHART & SULLIVAN, LLP
                             500 WEST MADISON STREET, SUITE 2450
21                           CHICAGO, IL 60661

22              APPEARANCES CONTINUED ON THE NEXT PAGE

23       OFFICIAL COURT REPORTER:  SUMMER FISHER, CSR, CRR
                                   CERTIFICATE NUMBER 13185
24

25          PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY
                TRANSCRIPT PRODUCED WITH COMPUTER
```

```
 1              FOR THE PLAINTIFF:  JORDAN ROSS JAFFE
                                   QUINN EMANUEL URQUHART & SULLIVAN, LLP
 2                                 555 TWIN DOLPHIN DR, 5TH FL
                                   REDWOOD SHORES, CA 94065
 3

 4              FOR THE DEFENDANT:  ROBERT ADDY VAN NEST
                                   RYAN WONG
 5                                 DAVID SILBERT
                                   BRIAN FERRALL
 6                                 KEKER & VAN NEST LLP
                                   633 BATTERY STREET
 7                                 SAN FRANCISCO, CA 94111-1809

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

| | |
|---|---|
| 1 | SAN JOSE, CALIFORNIA                    SEPTEMBER 9, 2016 |
| 2 | P R O C E E D I N G S |
| 3 | (WHEREUPON, COURT CONVENED AND THE FOLLOWING PROCEEDINGS |
| 4 | WERE HELD:) |

09:02AM  5    THE COURT:  ALL RIGHT.  HELLO.

09:02AM  6    AND I GUESS WE HAVE A LITTLE BIT OF A BIG TASK AHEAD OF US

09:02AM  7    TODAY.  AND I'VE DONE A LOT OF READING AND YOU ALL DID A LOT OF

09:02AM  8    WRITING, SO I REALLY APPRECIATE THAT.

09:02AM  9    I SENT OUT AN ORDER LIMITING YOUR TIME, AND I KNOW I

09:02AM  10   LIMITED IT TREMENDOUSLY, SO IF WE GO OVER A LITTLE BIT, I'M NOT

09:03AM  11   GOING TO BE CUTTING YOU OFF LIKE I DO AT TRIAL.  I JUST FELT

09:03AM  12   THAT AT THE LAST HEARING I DIDN'T SET ANY PARAMETERS AND IT

09:03AM  13   JUST GOT -- I DIDN'T CONTROL IT AND I SHOULD HAVE.

09:03AM  14   SO THANK YOU FOR -- I KNOW YOU'VE GEARED YOUR PRESENTATIONS

09:03AM  15   TO COMPLY WITH THAT TIME.  AND AS I SAY, IF MY QUESTIONS SLOW

09:03AM  16   US DOWN A LITTLE BIT THEN THAT WILL BE FINE AS WELL, I JUST

09:03AM  17   WOULD LIKE TO WRAP THIS UP THIS MORNING AND THEN HAVE OUR

09:03AM  18   CONFERENCE, WHICH IS ACTUALLY MORE IMPORTANT TO ME TODAY, I

09:03AM  19   THINK, EVEN THAN THIS, BECAUSE YOUR BRIEFING HAS BEEN SO GOOD.

09:03AM  20   BEFORE WE GET STARTED, I WANTED TO MAKE A FEW COMMENTS ON

09:03AM  21   THE EXPERTS AND THE OPINIONS THAT I WAS MOST FOCUSED ON.  AND I

09:03AM  22   FOCUS ON THEM IF I MIGHT EXCLUDE, IF I'M GOING TO ALLOW IT IN,

09:03AM  23   I ACTUALLY DON'T NEED TO MAKE COMMENTS.

09:03AM  24   SO I HAVE MADE NO DECISIONS ON THIS FROM YOUR PAPERS, BUT

09:03AM  25   IT MAY HELP YOU BECAUSE YOUR TIME IS LIMITED.

4

09:03AM  1       WITH THE EXPERTS, I THINK IT'S DR. BLACK, AND MR. SEIFERT

09:04AM  2    ON THE DE FACTO INDUSTRY STANDARD ISSUE, I HAVE REAL CONCERN

09:04AM  3    ABOUT HOW FUZZY THE STANDARD IS AND WHETHER THERE'S SOME LINE

09:04AM  4    THAT IS REASONABLE TO MARKET FROM BEING FULLY PROTECTED AND

09:04AM  5    ORIGINAL AND PROPRIETARY WITH THE COMPANY, AND IT'S ALWAYS

09:04AM  6    PROPRIETARY UNDER THE COPYRIGHT, BUT BECOMING A DE FACTO

09:04AM  7    STANDARD, I'M VERY CONCERNED ABOUT THAT SUBJECTIVE STANDARD.

09:04AM  8       WITH MR. SEIFERT, HIS MARKET EFFECT OPINION DOES NOT SEEM

09:04AM  9    TO BE BOUND IN ANY KIND OF MARKET SURVEY, AND I'M CONCERNED

09:04AM  10   ABOUT THE LIMITATION ON WHAT HE'S DONE TO LAY A FOUNDATION.

09:04AM  11      ON DR. ALMEROTH, ON HIS SOURCE CODE COPYING OPINIONS, I

09:04AM  12   TRIED TO READ HIS COPYING EXHIBITS, THEY WERE A LITTLE BIT

09:05AM  13   BEYOND ME, SO YOU MIGHT BE FOCUSSING ME ON THAT ANYWAY, BUT IT

09:05AM  14   DOESN'T APPEAR -- WELL, LET ME BACK UP, THE WAY THAT ARISTA

09:05AM  15   COUCHED THE MOTION WAS ABOUT SOURCE CODE COPYING AND THE

09:05AM  16   OPPOSITION TALKS ABOUT OPINIONS REGARDING SIMILARITIES.

09:05AM  17      SO I DON'T KNOW WHETHER YOU ARE TALKING PAST EACH OTHER OR

09:05AM  18   ACTUALLY HIS OPINIONS ARE ONLY ABOUT SIMILARITIES.  AND IF

09:05AM  19   THAT'S THE CASE, I'M NOT SURE HOW OR WHY THEY WOULD COME IN.

09:05AM  20      AND THEN WITH THE ELSTEN, CHEVALIER DAMAGES OPINIONS, WE DO

09:05AM  21   NEED TO TALK ABOUT THE PROPER LEGAL TEST ON CAUSAL NEXUS.  BUT

09:05AM  22   I THINK MY BOTTOM LINE QUESTION THERE, THE ISSUE IS

09:05AM  23   DISGORGEMENT OF PROFITS, AND IT'S IN THE PAPERS, AND MY

09:05AM  24   EXPERIENCE IS THAT'S ONLY AN EQUITABLE CONSIDERATION FOR THE

09:05AM  25   COURT AND NOT THE JURY.

09:05AM 1          AND IF THAT'S IN FACT THE CASE, I'M NOT ACTUALLY SURE HOW

09:06AM 2    MUCH OF THIS I NEED TO FOCUS ON AT THIS POINT, AND IT MAY BE

09:06AM 3    THAT WHOLE DISCUSSION CAN BE DEFERRED UNTIL A POST-VERDICT

09:06AM 4    FINDING THAT WOULD BRING THIS DAMAGES ISSUE TO THE COURT.

09:06AM 5          IF IT ACTUALLY HAS A JURY ASPECT, PLEASE CORRECT ME, BUT IT

09:06AM 6    DIDN'T APPEAR THAT IT WOULD BASED ON THE WAY IT'S SET UP.  BUT

09:06AM 7    THOSE ARE, AS I SAY, THOSE ARE ONLY A FEW THINGS.  YOU HAVE

09:06AM 8    RAISED DOZENS MORE ISSUES AND THOSE WERE THE KEY THINGS THAT I

09:06AM 9    WAS CONSIDERING POTENTIAL EXCLUSION ON OR HAD REALLY NEEDED

09:06AM 10   MORE CLARITY.

09:06AM 11         SO WITH THAT I'M GOING TO STOP WITH MY COMMENTS SO THAT WE

09:06AM 12   CAN ACTUALLY GET TO YOUR PRESENTATIONS.  AND I DON'T KNOW HOW

09:06AM 13   YOU HAVE EACH PLANNED TO MAKE YOUR PRESENTATION.  IF YOU WANT

09:06AM 14   TO PRESENT ON YOUR OWN MOTIONS AND THEN WAIT AND RESERVE SOME

09:06AM 15   TIME TO OPPOSE THE ONES AGAINST YOUR OWN EXPERTS --

09:06AM 16         MR. PAK:  YOUR HONOR, WE MET AND CONFERRED.  WE

09:07AM 17   THOUGHT WE WOULD PING PONG BACK AND FORTH, SO WE WOULD PICK ONE

09:07AM 18   AND THEY WOULD REBUT, AND THEY WOULD PICK ONE.

09:07AM 19         THE COURT:  OH, THAT WOULD BE MUCH MORE HELPFUL TO

09:07AM 20   ME.  OKAY.  THAT WORKS REALLY WELL.  AND I BELIEVE CISCO HAD

09:07AM 21   THE BULK OF THE MOTIONS, SO WERE YOU GOING TO START, MR. PAK?

09:07AM 22         MR. PAK:  YES.  SO I'M GOING TO ACTUALLY INTRODUCE MY

09:07AM 23   PARTNER DAVID NELSON FOR THE PARTIES.

09:07AM 24         THE COURT:  OKAY.  I HAVE ALL KINDS OF NOTES AND

09:07AM 25   PAPERS HERE.  AND YOU HAVE GIVEN ME SOME SLIDES WHICH I ALWAYS

09:07AM  1    APPRECIATE.  THANK YOU.  IT WILL REALLY HELP FOCUS ME ON THE

09:07AM  2    EVIDENCE YOU FIND MOST IMPORTANT.

09:07AM  3            MR. NELSON:  THANK YOU, YOUR HONOR.

09:07AM  4        DAVE NELSON, TO INTRODUCE MYSELF ON BEHALF OF CISCO HERE,

09:07AM  5    IT'S A PLEASURE TO MEET YOU.

09:07AM  6            THE COURT:  THANK YOU.  GOOD TO SEE YOU.

09:07AM  7            MR. NELSON:  THANK YOU.  I DON'T HEAR THAT ALL THE

09:07AM  8    TIME, SO THANK YOU.

09:07AM  9        SO LET'S TALK ABOUT DR. BLACK, AND I WANT TO FOCUS IN ON

09:08AM  10   EXACTLY WHAT YOUR HONOR JUST SUGGESTED.  SO WE HAVE THIS

09:08AM  11   TESTIMONY ABOUT DE FACTO INDUSTRY STANDARDS OR QUASI INDUSTRY

09:08AM  12   STANDARDS, THEY ARE STATED DIFFERENT WAYS.

09:08AM  13       SO JUST TO BE CLEAR, INITIALLY WE ARE -- CERTAINLY NO ONE

09:08AM  14   IS TALKING ABOUT TRUE INDUSTRY STANDARDS HERE WHICH IS THE KIND

09:08AM  15   OF THING WE HEAR ALL THE TIME WHERE THERE'S STANDARDS BODIES

09:08AM  16   THAT GET TOGETHER AND THEY FORMULATE BASICALLY TECHNICAL

09:08AM  17   SPECIFICATIONS SO DEVICES CAN WORK TOGETHER.

09:08AM  18       WE HEAR THAT IN THE CELL PHONE MARKET AND WITH BASE

09:08AM  19   STATIONS AND THINGS LIKE THAT ALL THE TIME.  SO THAT'S NOT WHAT

09:08AM  20   WE ARE TALKING ABOUT HERE, AND THAT'S PART OF THE PROBLEM.

09:08AM  21       BECAUSE THE TEST THAT'S BEEN FORMULATED REALLY IS NO TEST

09:08AM  22   AT ALL, AND WHEN WE SEE HOW DR. BLACK APPLIED THAT TO HIS OWN

09:08AM  23   ANALYSIS, I THINK THAT'S REALLY ILLUSTRATED.

09:08AM  24       SO BEST I CAN SEE, AND IT COMES ACROSS A FEW PLACES IN HIS

09:08AM  25   REPORT, THE WAY DR. BLACK DEFINES INDUSTRY STANDARD IS, AND I

09:09AM  1    THINK HE, IT'S IN PARAGRAPH ONE 71 OF HIS REPORT FOR ONE PLACE,

09:09AM  2    BUT IT SAYS INDUSTRY STANDARD CLI, REFERS TO THE COMMON WELL

09:09AM  3    KNOWN AND WIDELY ADOPTED FEATURES AND FUNCTIONALITY OF CLI

09:09AM  4    SUPPORTED ACROSS MULTIPLE VENDORS'S NETWORKING DEVICES WITH

09:09AM  5    WHICH END USERS HAVE BECOME AND ARE FAMILIAR.

09:09AM  6         OKAY.  WELL, RIGHT THERE WE ARE TALKING ABOUT SOMETHING

09:09AM  7    PRETTY FUZZY, RIGHT.  IT'S VERY SUBJECTIVE, THERE'S NO REAL

09:09AM  8    OBJECTIVE CRITERIA.  AND IF WE LOOK AT WHAT DR. BLACK DID, AND

09:09AM  9    WITHOUT GOING THROUGH ALL OF THESE SLIDES, THERE'S A COUPLE

09:09AM  10   THINGS THAT I REALLY WANT TO FOCUS ON.

09:09AM  11        HERE, YOUR HONOR, THIS WHOLE DEPOSITION, SOME OF THIS IS

09:09AM  12   DEPOSITION TESTIMONY HAS BEEN MARKED ATTORNEY'S EYES ONLY.  SO

09:10AM  13   I DON'T KNOW -- I GUESS MAYBE TAKE IT OFF THE SCREENS AND MAKE

09:10AM  14   SURE IT'S ON YOUR SCREEN, AND I WILL TRY NOT TO --

09:10AM  15            THE COURT:  YES.  AND CERTAINLY IN A HEARING LIKE

09:10AM  16   THIS, I'M GLAD TO CLOSE OR EXCUSE PEOPLE FROM THE COURTROOM.  I

09:10AM  17   ASSUME THESE ARE CORPORATE REPRESENTATIVES WHO ARE HERE.  AND

09:10AM  18   IT'S UP TO YOU, MR. NELSON WHO STAYS AND WHO GOES.

09:10AM  19            MR. NELSON:  YEAH.  AND I THINK I WOULD DEFER, YOU

09:10AM  20   CAN SEE FROM THE SLIDES WHAT THAT TESTIMONY IS, RELATIVELY HIGH

09:10AM  21   LEVEL STUFF, AND IT'S FROM THEIR WITNESS.

09:10AM  22            THE COURT:  THE SCREENS ARE OFF THAT THE AUDIENCE

09:10AM  23   COULD SEE.  MY SCREEN IS ON AND I HAVE THE SLIDE DECK.  IS

09:10AM  24   THERE ANY OBJECTION TO THE INDIVIDUALS IN THE COURTROOM

09:10AM  25   REMAINING?

09:10AM  1          MR. FERRALL:  NO, YOUR HONOR.

09:10AM  2          THE COURT:  OKAY.  THEN LET'S PROCEED.

09:10AM  3          MR. NELSON:  ALL RIGHT.  THANK YOU, YOUR HONOR.

09:10AM  4      SO WITH THAT DEFINITION THAT I JUST READ, WHAT DR. BLACK

09:11AM  5  DOES INITIALLY IS LOOK AT SOME OF THE ASPECTS OF THE WORK, THE

09:11AM  6  CISCO CLI THAT CISCO, AND I'M SURE THAT THAT WILL COME UP LATER

09:11AM  7  AND WE CAN TALK ABOUT THAT IN MORE DETAIL, YOUR HONOR, BUT SOME

09:11AM  8  OF THE SPECIFIC ASPECTS.  AND I WILL JUST TALK ABOUT THE

09:11AM  9  COMMANDS FIRST, THE MULTI-WORD COMMANDS.

09:11AM  10     SO THE FIRST THING IS THAT WHEN DR. BLACK GOES THROUGH

09:11AM  11 THIS, WHEN HE'S SUPPOSEDLY LOOKING FOR WIDESPREAD COMMON USAGE

09:11AM  12 OF THESE THINGS WITH WHICH USERS HAVE BECOME FAMILIAR, HE

09:11AM  13 EXCLUDES SOME OF WHAT HE ACKNOWLEDGES ARE MAJOR PLAYERS IN THE

09:11AM  14 INDUSTRY.

09:11AM  15     FOR EXAMPLE, THE JUNIPER OS.  HE LOOKS AT JUNIPER BUT HE

09:11AM  16 LOOKS AT A VERSION OF THEIR OPERATING SYSTEM THAT IS NO LONGER

09:11AM  17 BEING SOLD, RIGHT.  HE DOESN'T LOOK AT THE WIDESPREAD -- THE

09:11AM  18 ONE THAT'S BEING USED NOW.

09:11AM  19     SO THAT'S A BIG -- WHAT HE WOULD DEFINE TO BE A MAJOR

09:12AM  20 PLAYER IN THE INDUSTRY.  NEXT HE EXCLUDES HUAWEI, ANOTHER ONE

09:12AM  21 HE SAYS IS A MAJOR PLAYER.  HE ALSO EXCLUDES PEOPLE WHO USE

09:12AM  22 DIFFERENT KINDS OF USER INTERFACES.  SO A CLI, STANDS FOR A

09:12AM  23 COMMAND LINE INTERFACE, ONE TYPE OF USER INTERFACE, KIND OF

09:12AM  24 LIKE THE OLD DOS PROGRAMS WHERE YOU TYPE IN CERTAIN COMMANDS

09:12AM  25 AND GET CERTAIN RESPONSES.

09:12AM 1          THE COURT:  SO YOU HAVE TO GET ME OVER THE LINE OF

09:12AM 2    THIS JUST BEING PROPER CROSS-EXAMINATION.

09:12AM 3          MR. NELSON:  ABSOLUTELY.

09:12AM 4        THE PROBLEM HERE IS, IS THERE SOMETHING THAT'S HELPFUL FOR

09:12AM 5    THE JURY, RIGHT.  WE HAVE A TEST THAT HE HAS STATED, WE CAN'T

09:12AM 6    FIND IT IN THE LITERATURE, RIGHT, SO THERE'S NO PUBLICATIONS

09:12AM 7    AND NO MARKETING ANALYSIS.  AND IN FACT, EVEN THAT LAST PIECE

09:12AM 8    WHICH I THINK IS THE CRUX OF HIS ISSUE, IS TO TRY TO SHOW THAT

09:12AM 9    CUSTOMERS HAVE SOMEHOW RELIED ON THAT.  NOW I WILL SET ASIDE

09:13AM 10   WHETHER THAT'S EVEN RELEVANT TO ANY ISSUES FOR NOW, BUT LET'S

09:13AM 11   TAKE THAT AS A GIVEN, YOUR HONOR.  THERE'S NO MARKET SURVEY

09:13AM 12   HERE THAT WAS DONE, THERE WAS NOTHING THAT SAYS, OH, OKAY, YOU

09:13AM 13   CUSTOMERS, YOU KNOW, YOU ALL THINK THIS IS THE COMMON WAY TO DO

09:13AM 14   IT.

09:13AM 15       AND YOU KNOW IF YOU EXCLUDE MAJOR PLAYERS WHO HE SAID

09:13AM 16   HIMSELF DON'T DO IT THAT WAY, RIGHT, IN FACT HE SAID THE REASON

09:13AM 17   WHY HE DIDN'T EXCLUDE THOSE IS THERE WOULDN'T HAVE BEEN ANY

09:13AM 18   OVERLAP IN THE COMMANDS.

09:13AM 19       SO WE KNOW THERE ARE OTHER WAYS THAT ARE OUT THERE THAT

09:13AM 20   SWITCHES ARE SELLING.  SO IF YOU ARE GOING TO USE THAT AS A

09:13AM 21   TEST, THAT CUSTOMERS EXPECT THIS, AND THAT'S PART OF HIS TEST

09:13AM 22   THAT I JUST READ, RIGHT, USE CUSTOMERS WHO PURCHASE AND USE

09:13AM 23   SUCH DEVICES HAVE BECOME AND ARE FAMILIAR.

09:13AM 24       WELL, THAT TEST PRESUMES, EVEN HIS OWN TEST, BEING AS

09:13AM 25   SUBJECTIVE AS IT IS, PRESUMES THERE WOULD BE SOME TYPE OF

09:13AM 1    ANALYSIS LIKE THAT.

09:14AM 2         AND THERE ISN'T.  THERE'S MERELY A SURVEY TO GO THROUGH AND

09:14AM 3    COUNT, I'M STICKING WITH THE MULTI-WORD COMMANDS, HOW MANY

09:14AM 4    TIMES HE SEES THESE IN CERTAIN DEVICES.

09:14AM 5         NOW IN THE CHARTS THAT ARE INCLUDED, AND THAT'S LARGELY IN

09:14AM 6    EXHIBIT G IN THE MATERIALS AND TO HIS REPORT, IT'S ABOUT 20

09:14AM 7    THAT HE LOOKS AT.  AND CERTAINLY THERE ARE SOME OF THESE

09:14AM 8    COMMANDS --

09:14AM 9              THE COURT:  20 VENDORS.

09:14AM 10             MR. NELSON:  YEAH, SOMEWHERE RIGHT AROUND THERE, I

09:14AM 11   DON'T REMEMBER THE EXACT NUMBER.

09:14AM 12             THE COURT:  NOT 20 COMMAND LINES, I JUST WANT TO BE

09:14AM 13   CLEAR ON THE RECORD.

09:14AM 14             MR. NELSON:  CORRECT.  IN TERMS OF COMMANDS, HE

09:14AM 15   LOOKED AT 400 SOMETHING THAT WERE LISTED IN THERE.  THERE WERE

09:14AM 16   50 SOME OF THE CURRENT SET OF 508 THAT I THINK YOUR HONOR HAS

09:14AM 17   HEARD THAT NUMBER A FEW TIMES, THAT HE DIDN'T LOOK AT THAT AT

09:14AM 18   ALL AND THAT'S BECAUSE NOBODY USED THEM, AND IT IS, WELL, THAT

09:14AM 19   NUMBER WOULD HAVE BEEN ZERO.

09:14AM 20        BUT IF YOU LOOK AT THAT AND IF WE CAN GO TO THE LAST SLIDE,

09:15AM 21   YOUR HONOR, AND I DON'T KNOW IF MY EYES ARE THAT GOOD ANYMORE,

09:15AM 22   BUT YOU WILL SEE HERE, THIS IS JUST AN EXAMPLE, WE HAVE MANY,

09:15AM 23   MANY COMMANDS LISTED HERE WHERE THE NUMBERS ARE 3 AND 2 AND 1,

09:15AM 24   AND THEN WE KNOW THAT THERE'S MANY THAT ARE ZERO AS WELL.

09:15AM 25             SO -- BUT THERE'S NO STATEMENT AS TO WHETHER THESE

09:15AM   1    EXAMPLES, THESE ASPECTS OF THE WORK ARE THINGS THAT UNDER

09:15AM   2    DR. BLACK'S TEST, HE WOULD CONTEND TO BE "DE FACTO INDUSTRY

09:15AM   3    STANDARD" VERSUS NOT DE FACTO INDUSTRY STANDARD.

09:15AM   4        SO I UNDERSTAND, YOUR HONOR, THAT OFTEN TIMES, AND THIS

09:15AM   5    HAPPENS WITH EXPERT TESTIMONY, YOU MAY NOT HAVE A TRUE BRIGHT

09:15AM   6    LINE LIKE WHEN YOU HAVE 22 OF 27 THAT MEETS MY TEST, RIGHT, I

09:16AM   7    UNDERSTAND THAT YOU DON'T HAVE THAT, BUT WE AT LEAST HAVE SOME

09:16AM   8    KIND OF BALLPARK, SOME KIND OF PARAMETERS ON THERE THAT IT

09:16AM   9    WOULD BE ABOUT A THIRD, THOSE KINDS OF THINGS.

09:16AM  10        AND WHAT WE HAVE HERE IS REALLY NOTHING.  THERE'S NO

09:16AM  11    COMMITMENT IN TERMS OF THE TESTIMONY FROM THE WITNESS AS TO

09:16AM  12    WHEN CERTAIN ASPECTS, RIGHT, WOULD BE THIS DE FACTO STANDARD --

09:16AM  13             THE COURT:  SO -- AND MAYBE THIS IS A QUESTION FOR

09:16AM  14    ARISTA, BUT THE WAY YOU BREAK IT DOWN, THEN I WOULD ACTUALLY BE

09:16AM  15    LOOKING -- I MIGHT FIND THAT ONE COMMAND LINE IS UNIVERSALLY

09:16AM  16    USED, BUT DO I HAVE TO LOOK AT EACH ONE?

09:16AM  17        BECAUSE THROUGHOUT THIS CASE, I'M BEING GIVEN WHAT YOU

09:16AM  18    MIGHT CALL A COMPILATION OR WHAT MIGHT BE, OR SOMETHING, BUT IS

09:16AM  19    IT -- BUT IF DR. BLACK IS TELLING ME THAT CISCO CLI IS THE DE

09:16AM  20    FACTO STANDARD BUT YOU ARE SAYING THAT HIS OWN EVIDENCE SHOWS

09:17AM  21    THAT CERTAIN ELEMENTS ARE CISCO CLI ARE RARELY CARRIED OVER TO

09:17AM  22    OTHER VENDORS OF THESE SWITCHES, I'M LEFT WITH NOT KNOWING WHAT

09:17AM  23    UNIVERSE I'M LOOKING AT, IF I'M DECIDING DE FACTO STANDARD

09:17AM  24    ELEMENT-BY-ELEMENT OR AS A WHOLE IF 20 PERCENT OF THE INDUSTRY

09:17AM  25    USES OR ADOPTED 80 PERCENT OF CISCO'S CLI -- AND I'VE MADE

09:17AM  1    THOSE NUMBERS UP --

09:17AM  2            MR. NELSON:  AND THAT'S A VERY GOOD QUESTION,

09:17AM  3    YOUR HONOR, AND THAT'S PART OF THE PROBLEM IS THAT HE DOESN'T

09:17AM  4    TELL US, RIGHT.

09:17AM  5        SO THE WORK, AS I THINK THERE WAS SOME RECENT BRIEFING THAT

09:17AM  6    WE TALKED ABOUT, THE WORK THAT WE ARE TALKING ABOUT HERE IS THE

09:17AM  7    CLI, WHICH IS A USER INTERFACE, IT'S THE WAY TO DO IT, THAT'S

09:17AM  8    THE WAY THE USER INTERACTS WITH THE PROGRAM.

09:17AM  9        NOW WE, CISCO, HAVE IDENTIFIED CERTAIN ASPECTS, THAT USER

09:18AM  10   INTERFACE, RIGHT, THAT WE BELIEVE ARE NOT ONLY PROTECTABLE BUT

09:18AM  11   ARE ASPECTS OF THINGS THAT ARISTA HAS COPIED, RIGHT, USED,

09:18AM  12   SUBSTANTIALLY SIMILAR, THOSE TYPES OF THINGS.

09:18AM  13       SO IT WOULD BE SIMILAR IF YOU HAD A BOOK, RIGHT, IF WE HAVE

09:18AM  14   A BOOK -- AND I KEEP GOING BACK TO THAT BECAUSE THIS IS ONE OF

09:18AM  15   THE THINGS I KNOW ARE COPYRIGHTED OR CAN BE, YOU COULD GO

09:18AM  16   THROUGH WORD-BY-WORD OR LINE-BY-LINE OR SENTENCE-BY-SENTENCE TO

09:18AM  17   SAY THIS SENTENCE IS COPIED, THIS SENTENCE ISN'T AND TABULATE

09:18AM  18   THOSE THINGS.

09:18AM  19       THERE ARE CERTAIN ASPECTS LIKE HOW THE CHARACTERS ARE

09:18AM  20   DEVELOPED AND THOSE KINDS OF THINGS, THEN THERE'S A QUESTION OF

09:18AM  21   WHETHER THERE'S SUBSTANTIAL SIMILARITY AND A DETERMINATION

09:18AM  22   MADE, WHICH IS A FACTUAL DETERMINATION.

09:18AM  23       SO THERE ARE SOME STATEMENTS IN DR. BLACK'S REPORT WHERE HE

09:18AM  24   INDICATES THAT HE MAY BE TALKING ABOUT THE CISCO CLI AS A

09:19AM  25   WHOLE, RIGHT.  BUT THEN THE TEST BECOMES EVEN WORSE BECAUSE WE

09:19AM 1    KNOW HE DIDN'T LOOK AT SOME OF THE ASPECTS, RIGHT, LIKE THE

09:19AM 2    HELP DESCRIPTIONS, FOR EXAMPLE, OF THE ASSERTED ELEMENTS.

09:19AM 3        AND WE ALSO KNOW BY HIS OWN STATEMENTS IN THE DEPOSITION

09:19AM 4    WHERE HE SAYS IF HE WERE DOING THE ANALYSIS, IN OTHER WORDS, IF

09:19AM 5    I WERE TRYING TO LOOK TO SEE WHETHER THE CLI WAS AS A WHOLE WAS

09:19AM 6    INDUSTRY STANDARD, I WOULD LOOK AT DIFFERENT THINGS, RIGHT.

09:19AM 7    BUT WE DON'T KNOW WHAT THOSE DIFFERENT THINGS ARE.

09:19AM 8        SO WHAT HE'S FOCUSED IN, AND I UNDERSTAND ARISTA'S

09:19AM 9    CONTENTION IS I FOCUSED ON THOSE THINGS BECAUSE THOSE ARE THE

09:19AM 10   ASPECTS THAT CISCO IS ALLEGING, YOU KNOW, IN TERMS OF THOSE ARE

09:19AM 11   WHERE THE SUBSTANTIAL SIMILARITIES ARE IN THE WORK, THAT'S

09:19AM 12   FINE, EXCEPT FOR THE FACT THAT WE NOW HAVE A GENTLEMAN THAT'S

09:19AM 13   OFFERING TESTIMONY ON THIS DE FACTO INDUSTRY STANDARD WHERE WE

09:20AM 14   DON'T KNOW, ONE, EVEN WHERE THE BALLPARK IS, WHEN DOES

09:20AM 15   SOMETHING HAVE ENOUGH SIMILARITY WITH OTHER THINGS OUT THERE IN

09:20AM 16   THE MARKETPLACE SUCH THAT IT BECOMES A DE FACTO STANDARD, AND

09:20AM 17   WHEN IT DOES NOT.  WE DON'T KNOW THIS GENTLEMAN'S OPINION AS TO

09:20AM 18   WHAT THOSE THINGS ARE THAT SHOULD BE COMPARED, BECAUSE WE KNOW

09:20AM 19   FROM HIS DEPOSITION TESTIMONY, HE SAYS AS AN EXPERT IN THIS

09:20AM 20   AREA, IN OTHER WORDS, I WILL JUST USE THE TERM SCIENTIFIC AND

09:20AM 21   ENGINEER, HE WOULD LOOK AT DIFFERENT THINGS, RIGHT.

09:20AM 22       SO WE HAVE SOMEBODY THAT'S -- HE'S OFFERING AN AMORPHOUS

09:20AM 23   OPINION OF CERTAIN ELEMENTS THAT IS CISCO IS CLAIMING.  AND

09:20AM 24   SAYS, I FIND THOSE TO BE COMMON BUT WE DON'T KNOW WHERE THE

09:20AM 25   LINE IS OR EVEN THE BALLPARK IS TO WHEN THOSE ELEMENTS

09:20AM 1    THEMSELVES BECOME COMMON ENOUGH IN HIS MIND THAT CUSTOMERS ARE

09:20AM 2    FAMILIAR AND WANT THOSE, AS OPPOSED -- AND THEN FURTHER, WE

09:21AM 3    DON'T KNOW IF HE'S TALKING ABOUT THE CONGLOMERATION OF THESE

09:21AM 4    THINGS THAT CISCO POINTS TO, AND HOW THOSE COMPARE TO WHEN

09:21AM 5    SOMETHING WOULD BECOME WHAT HE SAYS IS AN INDUSTRY STANDARD

09:21AM 6    USER INTERFACE AS A WHOLE VERSUS NOT.

09:21AM 7        WHAT WE KNOW IS -- WHAT HE'S OFFERING IS TO SAY, OKAY,

09:21AM 8    CISCO IS POPULAR, CISCO IS, YOU KNOW, HAS SPENT TIME DEVELOPING

09:21AM 9    A PLACE IN THE MARKET AND MANY CUSTOMERS ARE FAMILIAR WITH WHAT

09:21AM 10   CISCO IS DOING, AND SOME OF THOSE THINGS REPEAT.  BUT THAT'S

09:21AM 11   NOT HELPFUL TESTIMONY TO A JURY, RIGHT.

09:21AM 12       THE COURT:  SO HERE'S -- I THINK THAT A COUPLE THINGS

09:21AM 13   CAME OUT IN THE OPPOSITION, AND IT WAS REALLY IN RESPONSE TO

09:21AM 14   YOUR ARGUMENT THAT THE OPINION IS NOT RELEVANT.

09:21AM 15       AND WHAT ARISTA ARGUES IS THEY IDENTIFY THE SPECIFIC

09:21AM 16   ASPECTS OF THE CASE THAT DR. BLACK'S TESTIMONY WOULD BE

09:22AM 17   RELEVANT TO.  AND CERTAINLY IT WAS ACKNOWLEDGED BY ARISTA THAT

09:22AM 18   A DE FACTO STANDARD DOESN'T MEAN IT'S FREE TO THE REST OF THE

09:22AM 19   INDUSTRY.  SO THAT'S NOT WHAT WE ARE TALKING ABOUT HERE.

09:22AM 20       BUT GIVEN THAT ARISTA HAS ACKNOWLEDGED RELEVANCE TO FAIR

09:22AM 21   USE, ESTOPPEL AND DAMAGES, AND I WOULD CERTAINLY, IF I ALLOW

09:22AM 22   THE TESTIMONY, WOULD ALLOW YOU TO PREPARE A LIMITING

09:22AM 23   INSTRUCTION SO THAT THE JURY UNDERSTANDS THAT, AND OF COURSE

09:22AM 24   ESTOPPEL IS NOT GOING TO THE JURY, DAMAGES MIGHT, FAIR USE

09:22AM 25   WILL, PRESUMABLY, IT'S A JURY ISSUE.

09:22AM 1    THAT, IN A SENSE, CUSHIONS THE BLOW ON THE TESTIMONY OR

09:22AM 2    GIVES, IN MY VIEW, THE COURT, A LITTLE MORE LATITUDE TO ALLOW

09:22AM 3    IT IN BECAUSE IT'S SO DIRECTED TO A PARTICULAR PART OF THE

09:22AM 4    CASE.

09:22AM 5    AND SO I WANTED YOUR COMMENT ON THAT.

09:22AM 6    MR. NELSON:  AND I UNDERSTAND AT LEAST CONCEPTUALLY

09:23AM 7    HOW THOSE THINGS MAY BE ARGUED.  BUT WHAT WOULD BE ARGUED TO BE

09:23AM 8    THE FAIR USE DEFENSE WOULD BE THE FACTS OUT THERE.

09:23AM 9    FOR EXAMPLE, IF YOU HAD SOMETHING WHERE CUSTOMERS HAVE

09:23AM 10   BECOME FAMILIAR AND CUSTOMERS EXPECT THESE THINGS AND THE ARE

09:23AM 11   USING THESE THINGS AND THERE MAY BE EVIDENCE THAT, AS THEY HAVE

09:23AM 12   ALLEGED OR THEY WANT TO OFFER, THAT CISCO WOULD ENCOURAGE THAT

09:23AM 13   KIND OF THING, PERHAPS YES, ON THOSE FACTS YOU COULD ARGUE FAIR

09:23AM 14   USE.

09:23AM 15   BUT THAT'S NOT WHAT WE ARE DOING HERE.  WHAT THEY ARE

09:23AM 16   TRYING TO SAY IS HAVE A GENTLEMAN GET UP THERE UNDER THE GUISE

09:23AM 17   OF BEING A PHD, WE WILL CALL HIM DOCTOR, WHICH RIGHT THERE

09:23AM 18   GENERALLY LENDS ITSELF SOME CREDENCE WITH THE JURY, TO SAY THIS

09:23AM 19   HAS BECOME AN INDUSTRY STANDARD, RIGHT, DE FACTO INDUSTRY

09:23AM 20   STANDARD.

09:23AM 21   WE KNOW THERE ARE INDUSTRY STANDARDS IN A TOTALLY DIFFERENT

09:23AM 22   CONTEXT --

09:24AM 23   THE COURT:  SO IEEE DEFINES DE FACTO INDUSTRY

09:24AM 24   STANDARD, CORRECT.

09:24AM 25   MR. NELSON:  IEEE SAYS, I DON'T THINK THAT I WOULD,

09:24AM 1    THAT THEY NECESSARY HAVE A DEFINITION ABOUT WHAT SOMETHING IS.

09:24AM 2    BUT IN THE CONTEXT THEY ARE TALKING ABOUT IS AGAIN, AS AN

09:24AM 3    INTEROPERABILITY ISSUE, RIGHT.

09:24AM 4        SO THEY USE AN EXAMPLE, DR. BLACK, I KNOW IN HIS EXPERT

09:24AM 5    REPORT, USES AN EXAMPLE OF THIS INTERNET PROTOCOL, TCP IP.  AND

09:24AM 6    FRANKLY, THERE WAS A FORUM THAT GOT TOGETHER AND DECIDED WHAT

09:24AM 7    THE PROTOCOLS WERE GOING TO BE, BUT EVEN IF WE DIDN'T HAVE THAT

09:24AM 8    IN ORDER TO TALK TO EACH OTHER THESE SYSTEMS WOULD NEED TO USE

09:24AM 9    THAT PROTOCOL OTHERWISE THEY CAN'T TALK TO EACH OTHER.

09:24AM 10    YOU MAY NOT HAVE THE INDUSTRY PLAYERS GETTING TOGETHER AND

09:24AM 11    FORMALLY SAYING THIS IS WHAT THE STANDARD IS AND DEFINING IT,

09:24AM 12    BUT BY USAGE YOU COULD HAVE THAT.

09:24AM 13    WE DON'T HAVE THAT AT ALL HERE, RIGHT.  THERE'S NO

09:24AM 14    ALLEGATION, IN FACT THERE'S ADMISSION THAT YOU DON'T NEED TO

09:25AM 15    USE THIS USER INTERFACE IN ORDER TO HAVE YOUR SWITCHES OPERATE

09:25AM 16    TOGETHER.  SO IT'S NOT AN INTEROPERABILITY ISSUE, RIGHT.

09:25AM 17    WHAT THE ALLEGATION IS RATHER, IS USERS ARE FAMILIAR,

09:25AM 18    RIGHT, SO IN OTHER WORDS IT'S KIND OF LIKE A LANGUAGE, IF YOU

09:25AM 19    GET USED TO SPEAKING A CERTAIN LANGUAGE, YOU LIKE TO SPEAK THAT

09:25AM 20    LANGUAGE AND MAYBE YOU DON'T WANT TO LEARN A NEW LANGUAGE OR

09:25AM 21    YOU DON'T WANT TO LEARN SOME NEW VOCABULARY, SO WE WILL USE

09:25AM 22    THAT ANY WAY.

09:25AM 23    BUT WE KNOW THAT ISN'T A REQUIREMENT IN THIS INDUSTRY

09:25AM 24    BECAUSE WE HAVE MAJOR INDUSTRY PLAYERS LIKE THE JUNIPER OS AND

09:25AM 25    HUAWEI AND SOME OF THE OTHERS THAT DON'T USE THAT AND THEY ARE

09:25AM 1    VERY PROMINENT PLAYERS IN THE EITHER NET SWITCH MARKET.

09:25AM 2        SO THAT, I THINK IS A VERY DIFFERENT, AND FRANKLY A

09:25AM 3    MISLEADING USE OF THE IEEE DEFINITION.  AND WHEN WE HAVE

09:25AM 4    SOMEBODY WITH THE TITLE OF DOCTOR AND EXPERT AND QUALIFIED BY

09:26AM 5    THE COURT, ALL THOSE THINGS WOULD HAPPEN --

09:26AM 6        THE COURT:  SO MR. SEIFERT WOULD BE BETTER, IN YOUR

09:26AM 7    MIND, TO GO FORWARD ON THIS BECAUSE HE DOESN'T HAVE THE

09:26AM 8    DOCTORATE.

09:26AM 9        MR. NELSON:  THAT'S A FAIR POINT, BUT NO.

09:26AM 10    SO WITHOUT ANY REAL PARAMETERS ON THIS -- SO I DON'T

09:26AM 11    NECESSARILY HAVE A PROBLEM WITH THE GENTLEMAN OFFERING THE

09:26AM 12    FACTS, I LOOKED AT THESE THINGS AND THIS IS HOW MANY TIMES I

09:26AM 13    SEE THESE COMMANDS, RIGHT.  I DON'T NECESSARILY HAVE A PROBLEM

09:26AM 14    WITH THAT.  I'M NOT SURE WHERE THAT FALLS, BUT I GUESS, YOU

09:26AM 15    KNOW, IT'S ANALYSIS THAT WAS DONE FOR PURPOSES OF THE CASE AND

09:26AM 16    COULD BE EXPERT TESTIMONY.  BUT TO DRAW THE CONCLUSION THAT

09:26AM 17    THIS IS SOMEHOW A DE FACTO INDUSTRY STANDARD --

09:26AM 18        THE COURT:  SO IF DR. BLACK HAD TO COUCH HIS OPINION

09:26AM 19    BASED ON THESE, THE FACTS AS HE OBSERVED THEM TO SHOW THAT THE

09:27AM 20    USAGE IS COMMON OR FREQUENT, THAT'S --

09:27AM 21        MR. NELSON:  I THINK THAT'S A VERY DIFFERENT

09:27AM 22    SITUATION.

09:27AM 23        THE COURT:  OKAY.

09:27AM 24    AND I WILL ASK, I WON'T ASK YOU THIS, I JUST DON'T KNOW

09:27AM 25    THAT THIS CONCEPT OF DE FACTO INDUSTRY STANDARD HAS EVER BEEN

09:27AM  1    USED AS A DEFENSE IN A COPYRIGHT CASE LIKE THIS.  SO I HAVE --

09:27AM  2    I WILL ASK ARISTA THAT, THAT'S NOT YOUR --

09:27AM  3            MR. NELSON:  I'M NOT AWARE OF ONE, YOUR HONOR.

09:27AM  4            THE COURT:  I DON'T THINK YOU WOULD BE.

09:27AM  5            MR. NELSON:  NO.

09:27AM  6        SO -- AND IN A CRUX, THAT REALLY IS THE ISSUE WITH THAT

09:27AM  7            THE COURT:  IT'S A BIG HEAVY TITLE TO CALL IT A DE

09:27AM  8    FACTO INDUSTRY STANDARD.

09:27AM  9        SO I CERTAINLY APPRECIATE PUTTING ASIDE THE PERSUASIVENESS

09:27AM  10   OF A QUALIFIED EXPERT GETTING ON THE WITNESS STAND, THAT I DO

09:27AM  11   AGREE WITH YOU THAT EXPERTS HAVE A LOT OF SWAY WITH JURORS,

09:27AM  12   THAT'S WHY YOU BRING THEM IN.  BUT THIS TITLE IS PRETTY HEAVY

09:27AM  13   DUTY.

09:27AM  14       AND EVEN THOUGH THE PARTIES, ARISTA AGREES THAT THEY ARE

09:28AM  15   NOT SUGGESTING THAT BY BECOMING DE FACTO IT'S BECOME FREE, THE

09:28AM  16   JURY MAY NOT EVER PICK UP THAT NUANCE.

09:28AM  17       AND SO I APPRECIATE THIS UNSTATED PREJUDICE THAT COULD BE

09:28AM  18   OUT THERE THAT ARISTA WOULD NEVER ARGUE IT'S FREE, I'M SURE

09:28AM  19   THEY WOULDN'T, IT'S NOT THE LAW, BUT I SHARE YOUR CONCERN THAT

09:28AM  20   A JURY MIGHT NOT PICK UP ON THAT.

09:28AM  21           MR. NELSON:  PARTICULARLY WHEN THE MOST LIKELY

09:28AM  22   THING WHEN A JURY WOULD HEAR THE TERM "INDUSTRY STANDARD," IS

09:28AM  23   THE KIND OF THING THAT WE HEAR BACK AND FORTH WHERE PEOPLE CAN

09:28AM  24   USE, IN FACT, IT'S EXPECTED THAT THEY ALL USE THOSE INTERFACES.

09:28AM  25   SETTING ASIDE ANY COMPENSATION, I'M NOT TALKING ABOUT FRAND,

09:28AM  1    YOUR HONOR.

09:28AM  2         THE COURT:  NO, NO, I UNDERSTAND THAT.

09:28AM  3         MR. NELSON:  SO WITH THAT I WILL MOVE ON.

09:28AM  4         THE COURT:  GOOD.  AND I SLOWED DOWN, TOO, SO WE

09:28AM  5    REALLY HAVE TO KEEP MOVING.

09:28AM  6      WHO IS GOING TO, FOR ARISTA, GOING TO TAKE THIS?

09:28AM  7         MR. FERRALL:  YOUR HONOR, I'M GOING TO START, BUT I

09:28AM  8    WOULD ACTUALLY, BECAUSE IT COVERS BOTH EXPERTS AND I'M TALKING

09:29AM  9    ABOUT MR. SEIFERT, AND MR. WONG IS TALKING ABOUT DR. BLACK, WE

09:29AM  10   ARE GOING TO SPLIT THIS A LITTLE BIT, BUT I WANT TO START IF I

09:29AM  11   CAN.

09:29AM  12        THE COURT:  SURE.  LET ME JUST TELL YOU THAT MY VERY

09:29AM  13   FIRST QUESTION IS HAS AN OPINION REGARDING DE FACTO INDUSTRY

09:29AM  14   STANDARD EVER, TO YOUR KNOWLEDGE, BEEN PUT FORTH AT A TRIAL TO

09:29AM  15   ADDRESS THE ISSUES OF FAIR USE?

09:29AM  16     AND I'M NOT AS CONCERNED ABOUT ESTOPPEL BECAUSE THAT WILL

09:29AM  17   COME TO ME AND I COULD AGREE OR DISAGREE WITH THE OPINION, I'M

09:29AM  18   NOT GOING TO WORRY ABOUT THAT, DAMAGES OR FAIR USE?

09:29AM  19        MR. FERRALL:  NOT THAT I KNOW OF, YOUR HONOR.  I'M

09:29AM  20   NOT AWARE.

09:29AM  21     AND TO BE FAIR, DE FACTO STANDARDS DON'T ARISE THAT OFTEN.

09:29AM  22   WE HAVE EXAMPLES, MR. SEIFERT HAS LAID OUT IN HIS REPORT SOME

09:29AM  23   HISTORICAL EXAMPLES OF HOW TECHNOLOGIES HAVE BECOME DE FACTO

09:29AM  24   STANDARDS.

09:29AM  25        THE COURT:  BECAUSE TO ME THIS IS HIGHLY RELEVANT TO

09:29AM  1    THE ISSUE OF ESTOPPEL.  BUT I'M PUTTING THAT COMPLETELY ASIDE

09:30AM  2    NOW BECAUSE THAT'S NOT A JURY ISSUE.

09:30AM  3              MR. FERRALL:  RIGHT.

09:30AM  4              THE COURT:  SO I'M JUST VERY CONCERNED, THIS IS A

09:30AM  5    POWERFUL OPINION THAT COULD MEAN SOMETHING VERY DIFFERENT TO A

09:30AM  6    LAY JURY.  AND I DON'T KNOW WHEN IT BECOMES -- AS I SAID, THIS

09:30AM  7    IS JUST SO FUZZY TO ME.

09:30AM  8        SO I KNOW IT WHEN I SEE IT, IS REALLY WHAT I GLEAN FROM

09:30AM  9    DR. BLACK, AND MR. SEIFERT IS THAT I LOOKED AT IT ALL AND I

09:30AM  10   THINK CISCO USES THIS BLACK BOX ANALOGY, THEY COMMENT ON IT,

09:30AM  11   AND, YOU KNOW, I LOOKED AT IT ALL, I SHOOK IT AROUND AND YEAH,

09:30AM  12   TO ME IT LOOKS LIKE IT'S BECOME DE FACTO, WITHOUT ANY

09:30AM  13   PERCENTAGES PUT ON IT.

09:30AM  14       AND I KNOW IT'S NOT A BRIGHT LINE, I DON'T MEAN TO SUGGEST

09:30AM  15   THAT, BUT IN SO MANY AREAS OF THE LAW, WE START LOOKING AT

09:30AM  16   SOMETHING APPROACHING 20 PERCENT, 30 PERCENT, SOME NUMBER THAT

09:30AM  17   BEGINS TO TELL US THAT IT'S WIDELY USED.

09:30AM  18       I DON'T HAVE ANY QUANTIFICATION THAT I CAN EVEN LOOK AT OR

09:30AM  19   THAT A JURY COULD REACT TO.

09:31AM  20             MR. FERRALL:  LET ME CLARIFY A COUPLE OF THINGS, AND

09:31AM  21   MR. WONG WILL ELABORATE ON THIS.

09:31AM  22       BUT THE NOTION OF THE CISCO CLI, WHICH OF COURSE IS

09:31AM  23   SOMETHING WE HAVE TALKED ABOUT BEFORE AND I'M SURE WE WILL TALK

09:31AM  24   ABOUT AGAIN, AS A DE FACTO INDUSTRY STANDARD, THOSE ARE WORDS

09:31AM  25   THAT COME FROM CISCO, TO BE CLEAR.  THERE ARE PLENTY OF CISCO

09:31AM  1    DOCUMENTS, AND WE WILL SHOW YOU EXAMPLES OF CISCO CALLING THEIR

09:31AM  2    CLI A DE FACTO INDUSTRY STANDARD.

09:31AM  3        THERE ARE EXAMPLES OF OTHER INDUSTRY VENDORS CALLING THE

09:31AM  4    CISCO CLI A DE FACTO INDUSTRY STANDARD.

09:31AM  5        SO WHEN IT COMES TO THE POWER OF THAT PHRASE, THAT'S A

09:31AM  6    PHRASE THAT'S COMING INTO THE CASE NO MATTER WHAT BECAUSE CISCO

09:31AM  7    HAS USED IT AND OTHERS HAVE USED IT.

09:31AM  8            THE COURT:  SO THEN WE ARE TALKING ABOUT THE

09:31AM  9    COMPILATION THAT CISCO HAS DEFINED AS CISCO CLI AS A WHOLE.

09:32AM 10            MR. FERRALL:  IT'S A GENERAL COMMENT, RIGHT.

09:32AM 11            THE COURT:  BUT CISCO CLI IS A THING, IT'S A

09:32AM 12    COMPILATION, IT HAS BOUNDARIES.  AND IF IT DOESN'T HAVE

09:32AM 13    BOUNDARIES, THEN I THINK THIS CASE IS GOING IN A WHOLE

09:32AM 14    DIFFERENT DIRECTION.

09:32AM 15        SO I AM PERSUADED THAT CISCO HAS PRESENTED THE BOUNDARIES

09:32AM 16    OF CISCO CLI, AND YOU CAN BE OR ARE INTIMATELY AWARE OF WHAT

09:32AM 17    EACH OF THE FEATURES AND ELEMENTS OF CISCO CLI IS, WHETHER IT'S

09:32AM 18    A LAWYER CONSTRUCT OR NOT IS NOT MY CONCERN NOW.

09:32AM 19        SO I READ DR. BLACK'S OPINIONS TO BE TALKING ABOUT CISCO

09:32AM 20    CLI AS A WHOLE AND LOOKING AT INDIVIDUAL, I DON'T THINK HE USES

09:32AM 21    THE WORD SPOT CHECKING, SO I DON'T WANT TO PUT THAT ON HIM, BUT

09:32AM 22    EVALUATING THE INDIVIDUAL FEATURES AND ELEMENTS OF WHAT IS

09:32AM 23    CISCO CLI TO SEE IF IT'S USED BY THE OTHER VENDORS.

09:32AM 24        BUT AT THE END OF THE DAY, HIS OPINION IS THAT BECAUSE OF

09:32AM 25    THE EVIDENCE HE FOUND ABOUT ELEMENTS AND FEATURES, HE CAN THEN

09:33AM 1    SAY WITH CONFIDENCE THAT THE ENTIRE CISCO CLI IS THE INDUSTRY

09:33AM 2    STANDARD.  IS THAT FAIR?

09:33AM 3              MR. FERRALL:  I DON'T THINK THAT'S RIGHT.

09:33AM 4              THE COURT:  OKAY.  SO HELP ME OUT.

09:33AM 5              MR. FERRALL:  WHETHER CISCO CLI HAS BOUNDARIES FOR

09:33AM 6    PURPOSES OF DEFINING INFRINGEMENT, I THINK REMAINS TO BE SEEN.

09:33AM 7    I THINK THAT MERITS FURTHER DISCUSSION.  BUT DOESN'T HAVE TO BE

09:33AM 8    IN THE CONTEXT OF THIS MOTION.

09:33AM 9              THE COURT:  WELL, I DON'T KNOW THAT CISCO CLI IS A

09:33AM 10   THING.  BUT THAT'S MY CONCERN THAT -- OR I GUESS MAYBE I SHOULD

09:33AM 11   SAY THAT I'M AFRAID THAT WHEN THE AUTHOR IS REVEALED, IT'S

09:33AM 12   GOING TO BE SOMEONE WITH A JD AFTER HIS NAME AND NOT A PHD.

09:33AM 13             MR. FERRALL:  RIGHT.

09:33AM 14     BUT WHAT DR. BLACK DID, AND WHAT THEN MR. SEIFERT ALSO

09:33AM 15   RELIED UPON WAS FOCUSED ON THE ELEMENTS THAT ARE ASSERTED IN

09:33AM 16   THE CASE

09:33AM 17             THE COURT:  SO THAT'S WHERE I'M CONCERNED THAT THEN

09:33AM 18   ALL HIS OPINION IS, IS THAT A PARTICULAR ELEMENT HAS BECOME A

09:34AM 19   DE FACTO STANDARD.  AND FOR HIM THEN TO TAKE A NUMBER OF

09:34AM 20   ELEMENTS, I WON'T CATEGORIZE THEM AS FEW OR MANY, BUT A NUMBER

09:34AM 21   OF ELEMENTS THAT ARE LESS THAN THE WHOLE AND EXTRAPOLATE THAT

09:34AM 22   ON TO THE WHOLE IS A CONCERN OF MINE.  THAT'S A METHODOLOGY

09:34AM 23   CONCERN THAT I HAVE.

09:34AM 24             MR. FERRALL:  WELL, I GUESS THE RELEVANT ISSUE FOR

09:34AM 25   THE CASE, AND I WILL TALK ABOUT RELEVANCE, BUT THE RELEVANT

09:34AM  1    ISSUE FOR THE CASE IS WHETHER THE ASSERTED ELEMENTS OF THE

09:34AM  2    CISCO CLI HAVE, IN EFFECT, BECOME A DE FACTO STANDARD.

09:34AM  3        NOW WHEN CISCO TALKS ABOUT THEIR CLI BECOMING A DE FACTO

09:34AM  4    STANDARD, OF COURSE THEY ARE NOT ITEMIZING 500 COMMANDS AND 11

09:34AM  5    PROMPTS AND BLAH, BLAH, RIGHT.  THEY ARE JUST SAYING IT.  AND

09:34AM  6    THAT'S THE WAY DELL SAYS IT AND THAT'S THE WAY HP SAYS IT AND

09:34AM  7    SO FORTH.  THEY ARE NOT ITEMIZING.

09:34AM  8        BUT HE'S DONE THE HOMEWORK, DR. BLACK THAT IS, AND LOOKED

09:34AM  9    AT IT ON A DETAILED BASIS, BECAUSE WHAT'S AT ISSUE IN THIS CASE

09:35AM 10    IS WHETHER THE ASSERTED ELEMENTS ARE STANDARDIZED, IN EFFECT,

09:35AM 11    DE FACTO STANDARDIZED, AND HE PRESENTS HIS EVIDENCE.

09:35AM 12        AND SURE, CISCO CAN CROSS-EXAMINE HIM AND SAY, LOOK, THESE

09:35AM 13    COMMANDS, THERE ARE ONLY THREE VENDORS THAT USE THEM, AND HE

09:35AM 14    WILL EXPLAIN WHY MAYBE FEWER VENDORS USE CERTAIN COMMANDS

09:35AM 15    BECAUSE THOSE FEATURES AREN'T IN PLAY, WHATEVER, THAT'S ALL FOR

09:35AM 16    CROSS-EXAMINATION.

09:35AM 17            THE COURT:  SURE.

09:35AM 18            MR. FERRALL:  BUT HE DID THE HARD WORK SPANNING

09:35AM 19    HUNDREDS OF PAGES OF EXHIBITS, AND GOD KNOWS HOW MANY HOURS OF

09:35AM 20    TIME LOOKING AT THOUSANDS AND THOUSANDS OF PAGES OF MANUALS AND

09:35AM 21    EXTRACTING THE COMMANDS AND TRYING TO SEE THIS USAGE, ALL TO

09:35AM 22    EXPLAIN WHAT IS IMPORTANT EVIDENCE IN THE CASE.  AND THAT IS

09:35AM 23    THAT CISCO AND MULTIPLE OTHER VENDORS REFER TO THIS AS A DE

09:35AM 24    FACTO STANDARD.

09:35AM 25        SO THE JURY, I THINK IT'S IMPORTANT THAT THE JURY

09:35AM  1    UNDERSTAND --

09:36AM  2              THE COURT:  SO HOW DO I SEPARATE AN EXPERT'S OPINION

09:36AM  3    FROM A COMPANY'S PUFFING ABOUT ITS PRODUCT?

09:36AM  4        YOU KNOW -- AND IT'S NOT THAT I WOULD EXCLUDE THE EVIDENCE

09:36AM  5    OF WHAT CISCO SAYS ABOUT ITS OWN PRODUCT, I'M NOT SAYING THAT,

09:36AM  6    BUT IT REALLY KIND OF BEGS THE QUESTION, AND YOU KNOW,

09:36AM  7    GENERALLY, I'M JUST UNCOMFORTABLE WITH THOSE STATEMENTS BEING

09:36AM  8    USED, PERHAPS AS A VERY TANGENTIAL BOLSTERING OF THE ULTIMATE

09:36AM  9    OPINIONS THAT GLEANED FROM THE HARD WORK THAT YOU POINT OUT.

09:36AM  10             MR. FERRALL:  WELL, HERE'S THE THING, ACTUALLY, IF WE

09:36AM  11   COULD JUST, WHILE WE ARE TALKING ABOUT THIS, PULL UP THE

09:36AM  12   SEIFERT SLIDE 22.

09:36AM  13             THE COURT:  YOU WANT ME TO LOOK AT SEIFERT OR BLACK.

09:37AM  14             MR. FERRALL:  SEIFERT.

09:37AM  15             MR. VAN NEST:  IT'S ON THE SCREEN TOO, YOUR HONOR.

09:37AM  16             THE COURT:  IT'S EASIER IF I CAN LOOK AT THE PAPER

09:37AM  17   AND LOOK AT YOU.

09:37AM  18             MR. FERRALL:  SO YOU MENTIONED IEEE DEFINITION.  WE

09:37AM  19   INCLUDED THE DE FACTO STANDARD MR. SEIFERT USED IN HIS REPORT

09:37AM  20   AS COMPARED TO THE IEEE DEFINITION.  IT IS A DEFINITION, IT'S

09:37AM  21   IN THE IEEE GLOSSARY, AND IT DOESN'T HAVE TO DO WITH

09:37AM  22   INTEROPERABILITY AT ALL, THAT'S NOT THE POINT OF THIS.  THE

09:37AM  23   POINT IS IT IS A LITTLE CLOUDY AROUND THE EDGES.  NOBODY CAN

09:37AM  24   SAY THAT SOMETHING THAT COMES INTO COMMON USAGE AND IS USED HAS

09:37AM  25   A BRIGHT LINE.

09:37AM 1      THE COURT:  SO RELEVANCE IS ONE OF THE ISSUES RAISED.

09:37AM 2      SO OKAY, IT WAS HELPFUL TO ME WHEN I BECAME AWARE THROUGH

09:37AM 3  YOUR PAPERS THAT I IEEE GIVES US A DEFINITION, SO YOU DIDN'T

09:37AM 4  MAKE IT UP, SO THIS IS WELL RESPECTED, THIS IS THE ENTITY ONE

09:38AM 5  WOULD LOOK TO.

09:38AM 6      BUT THEN I GET BACK TO THE QUESTION OF HOW IS THIS

09:38AM 7  DEFINITION USED, WHAT DOES THIS MEAN?

09:38AM 8      YOU WANT TO SUGGEST TO THE JURY THAT IT'S OKAY FOR ARISTA

09:38AM 9  TO USE THESE FEATURES AND ELEMENTS BECAUSE THEY HAVE BECOME A

09:38AM 10  DE FACTO STANDARD.  THAT AGAIN BEGS THE QUESTION OF, IS IT

09:38AM 11  FREE?

09:38AM 12      AND SO I'M VERY CONCERNED ABOUT THAT UNDERLYING IMPLICATION

09:38AM 13  OF WHAT A STANDARD IS.  AND OF COURSE THE JURY CAN BE EXPRESSLY

09:38AM 14  INSTRUCTED THAT STANDARDS ARE NOT THEN AVAILABLE TO COMPETITORS

09:38AM 15  FOR NO PAYMENT.  I CAN CERTAINLY INSTRUCT THEM ON THAT, BUT I

09:38AM 16  STILL HAVE SOME CONCERNS ABOUT THE IMPLICATIONS.

09:38AM 17      MR. FERRALL:  WELL, YOUR HONOR, FAIR USE CONSIDERS

09:38AM 18  WHETHER THE COPYRIGHT HOLDER WOULD HAVE CONSIDERED THE USE FAIR

09:38AM 19  AT THE TIME IN LIGHT OF WHAT WAS GOING ON IN THE -- THE WALL

09:39AM 20  DATA CASE, WE CITE THAT, AND I THINK THE QUOTE FROM THAT, IF I

09:39AM 21  HAVE IT RIGHT, IS THAT THE CUSTOM AT THE TIME WOULD HAVE

09:39AM 22  DEFINED THE USE AS REASONABLE.

09:39AM 23      AND THE PURPOSE OF THIS TESTIMONY AND ALL OF THE EVIDENCE

09:39AM 24  THAT DR. BLACK GIVES, THE BACKGROUND EXPLANATION OF HOW

09:39AM 25  TECHNOLOGIES BECOME DE FACTO STANDARDS THAT MR. SEIFERT GIVES,

09:39AM 1    IS TO EXPLAIN TO THE JURY HOW IN THIS FIELD, AT THIS TIME IN

09:39AM 2    THE LATE 2000'S, WHEN ARISTA STARTED DEVELOPING ITS CLI, HOW IT

09:39AM 3    WAS FAIR, EVEN IN CISCO'S MIND, FOR OTHER VENDORS TO USE THESE

09:39AM 4    WORDS, THESE SHORT PHRASES, ET CETERA.

09:39AM 5         AND THAT'S WHAT IT GOES TO, YOUR HONOR.  IT'S A FUNDAMENTAL

09:39AM 6    DEFENSE.  IT'S NOT AT ALL THE CASE, AS YOU'VE SAID, AND WE HAVE

09:39AM 7    SAID IN OUR PAPERS, IT'S NOT AT ALL THE CASE THAT WE ARE GOING

09:39AM 8    TO SAY IT'S A DE FACTO STANDARD, THEREFORE IT'S NOT

09:40AM 9    COPYRIGHTABLE.  THAT'S NOT THE DEFENSE.

09:40AM 10        BUT IT'S VERY CLEAR THAT THE JURY IS ENTITLED TO AND NEEDS

09:40AM 11   TO UNDERSTAND WHAT THE STATE OF THE MARKET OF THESE VENDORS

09:40AM 12   WERE AT THE TIME AND WHAT WAS EXPECTED TO BE, WHAT WAS EXPECTED

09:40AM 13   TO BE FAIR USE AND NOT.

09:40AM 14          THE COURT:  WELL, YOU KNOW, I CERTAINLY THINK IT'S

09:40AM 15   RELEVANT TO FAIR USE.

09:40AM 16        I DON'T THINK -- YOU LIMITED THE RELEVANCE, I APPRECIATE

09:40AM 17   WHAT YOU SAID IN YOUR BRIEFING ABOUT IT, I CAN INSTRUCT A JURY

09:40AM 18   ON HOW THEY ARE TO CONSIDER IT FOR A LIMITED PURPOSE ONLY.  AND

09:40AM 19   THEN THE QUESTION IS, IS IT LEGITIMATE OPINION TESTIMONY, DOES

09:40AM 20   IT HAVE A PROPER METHODOLOGY BEHIND IT.

09:40AM 21          MR. FERRALL:  RIGHT.

09:40AM 22          THE COURT:  AND SO I STILL GET BACK TO MY FUZZINESS

09:40AM 23   ABOUT WHERE'S THE LINE, WHAT'S THE DEMARCATION BETWEEN -- WHEN

09:40AM 24   DOES SOMETHING CROSSOVER TO BE A DE FACTO STANDARD?

09:41AM 25          MR. FERRALL:  BUT I THINK THAT'S -- YOUR HONOR, I

09:41AM 1    THINK THAT'S SOMETHING FOR THE JURY TO DELIBERATE ON.

09:41AM 2        IF WE CAN GO TO THE NEXT SLIDE, FOR EXAMPLE.  AND SO THIS

09:41AM 3    IS, I JUST -- BECAUSE I HAVE THE RESPONSIBILITY FOR

09:41AM 4    MR. SEIFERT, I SELECTED HIS EXHIBITS.  DR. BLACK ATTACHED MUCH

09:41AM 5    MORE.

09:41AM 6            THE COURT:  OKAY.  SURE.

09:41AM 7            MR. FERRALL:  BUT MR. SEIFERT REFERRED TO JUST A

09:41AM 8    COUPLE EXHIBITS, AND THIS WAS I THINK EXHIBIT, I GUESS HIS

09:41AM 9    REPORT EXHIBIT C, WHERE HE OBSERVES THE COMMONALITY OF THE

09:41AM 10   MODES AND THE PROMPTS ACROSS VENDORS.

09:41AM 11       SO I'VE ATTACHED JUST TWO PAGES OF ABOUT A 10 PAGE OR 12

09:41AM 12   PAGE EXHIBIT.  AND YOU HAVE THE CISCO ASSERTED MODE ON THE LEFT

09:41AM 13   AND PROMPT, AND THEN HE RUNS FOR, I DON'T KNOW HOW MANY

09:41AM 14   VENDORS, BUT MULTIPLE DOZENS OF VENDORS, HE NOTES WHAT MODES

09:42AM 15   WERE AVAILABLE FROM THESE VENDORS.

09:42AM 16       AND THE FIRST PAGE HERE WE'VE GOT ALCATEL AND LUCENT, BUT

09:42AM 17   GO TO THE NEXT PAGE WHICH IS THE -- SO HERE WE HAVE VENDORS AS

09:42AM 18   PROMINENT AS NORTEL, AVAYA, FOUNDRY, BROCADE, DELL, FORCE10.

09:42AM 19   THESE ARE PEOPLE WHO CISCO IDENTIFIED IN DEPOSITION AS SOME OF

09:42AM 20   THEIR PRIMARY COMPETITORS IN VARIOUS SUBMARKETS.  YOU SEE

09:42AM 21   ALMOST IDENTICAL MODES ACROSS THE LINE.

09:42AM 22       AND HE GOES ON.  SO THE POINT IS, IF THERE'S A VENDOR WHO

09:42AM 23   DOESN'T HAVE THE SAME MODES, FINE, THE JURY CAN CONSIDER THAT

09:42AM 24   AND SAY WELL, MAYBE IT WASN'T SUCH A STANDARD, BUT THAT'S A

09:42AM 25   FACTUAL ISSUE FOR THE JURY TO CONSIDER.

09:42AM 1    BUT WE ARE NOT, NEITHER MR. SEIFERT NOR DR. BLACK IS MAKING

09:42AM 2  UP THIS TERM "DE FACTO STANDARD" AND PULLING IT OUT OF THIN

09:43AM 3  AIR.  IT'S IN THE EXISTING DOCUMENTS PRIOR TO LITIGATION BY THE

09:43AM 4  PARTIES BY THIRD PARTIES, AND IT'S AN ACCEPTED IEEE TERM

09:43AM 5    THE COURT:  OKAY.  BUT YOU ARE SUGGESTING THAT I

09:43AM 6  SHOULD BE THE FIRST ONE TO APPLY IT.

09:43AM 7    MR. FERRALL:  WELL, I'M SUGGESTING --

09:43AM 8    THE COURT:  NO JUDGE WANTS TO BE THE FIRST.

09:43AM 9    MR. FERRALL:  THIS IS A CASE IN WHICH THE EVIDENCE

09:43AM 10 OVERWHELMINGLY SUPPORTS THE RELEVANCE OF THIS TERM AS ITS BEEN

09:43AM 11 USED THROUGHOUT THE INDUSTRY.  4.

09:43AM 12   SO IF THERE WERE A CASE ABOUT ETHERNET BEFORE IT WAS

09:43AM 13 STANDARDIZED BY IEEE, MAYBE SO.  MAYBE IT'S AN INDICATION THAT

09:43AM 14 PEOPLE DON'T USUALLY ASSERT COPYRIGHT OVER SOMETHING THAT'S

09:43AM 15 BECOME A DE FACTO STANDARD SO IT DOESN'T COME INTO LITIGATION,

09:43AM 16 MAYBE THAT'S WHY IT HASN'T BEEN RAISED BEFORE.

09:43AM 17   THE COURT:  AND WHO IS -- I'M GOING TO HEAR SOME MORE

09:43AM 18 ON DR. BLACK?

09:43AM 19   MR. WONG:  YES, YOUR HONOR.

09:43AM 20   RYAN WONG FOR ARISTA NETWORKS AND MR. FARRELL DID A GOOD

09:44AM 21 JOB OF ADDRESSING YOUR HONOR'S QUESTIONS I'M JUST GOING TO PUT

09:44AM 22 A LITTLE MORE MEAT ON THE BONE.

09:44AM 23   BUT I WANTED TO ADDRESS AN ISSUE, YOUR HONOR.  IT SOUNDED

09:44AM 24 LIKE CISCO'S COUNSEL CONCEDED THAT THE ONLY CHALLENGE WITH

09:44AM 25 RESPECT TO THE DE FACTO INDUSTRY STANDARD CLI THAT THEY HAVE IS

09:44AM  1    THE LABEL OF DE FACTO STANDARD AND THE UNDERLYING DATA WHICH

09:44AM  2    SPANS HUNDREDS OF PAGES AS WELL AS APPENDIXES OF DR. BLACK'S

09:44AM  3    REPORT, IS NOT THE SUBJECT OF THIS MOTION.  IN FACT, THAT HAS

09:44AM  4    TO BE THE CASE BECAUSE HE NEVER ATTACHED THE APPENDIXES TO THE

09:44AM  5    ORIGINAL MOTION.

09:44AM  6         AND I NOTE, YOUR HONOR, IN TERMS OF THE ACTUAL PARAGRAPHS

09:44AM  7    OF DR. BLACK'S REPORT THEY CITE IN THEIR MOTION, ONLY FOUR OF

09:44AM  8    THEM, OPENING REPORT PHOTOGRAPHS 90 AND 171, AND REBUTTAL

09:44AM  9    REPORT PARAGRAPHS 126 AND 131, REFER TO DR. BLACK'S CONCLUSION

09:44AM  10   THAT THERE ARE DE FACTO INDUSTRY STANDARD CLI FEATURES.

09:44AM  11        THE REST OF THE PARAGRAPHS THAT THEY CITE WHICH IS

09:44AM  12   APPROXIMATELY 15 PARAGRAPHS JUST GIVE GENERAL BACKGROUND ABOUT

09:45AM  13   THE IEEE AND THE --

09:45AM  14             THE COURT:  YES.

09:45AM  15             MR. WONG:  SO THOSE WOULD REMAIN REGARDLESS.

09:45AM  16        NOW MR. FERRALL WAS WALKING THE COURT THROUGH DR. BLACK'S

09:45AM  17   APPROACH AT HIS DE FACTO INDUSTRY STANDARD OPINION.

09:45AM  18        AND JUST LIKE MR. SEIFERT, DR. BLACK USED WHAT IS A -- THIS

09:45AM  19   IS SLIDE TWO OF DR. BLACK'S PRESENTATION.  JUST LIKE

09:45AM  20   MR. SEIFERT DR. BLACK USED A DEFINITION OF DE FACTO STANDARD,

09:45AM  21   WHICH IS COMMON WITH HIS OWN UNDERSTANDING AND EXPERIENCE IN

09:45AM  22   THE INDUSTRY, AS WELL AS CONSISTENT WITH WHAT TECHNICAL

09:45AM  23   PUBLICATIONS SAY.

09:45AM  24        AND HE CITES A COUPLE OF THEM IN HIS ACTUAL REPORT.  AND HE

09:45AM  25   SIMPLY APPLIED THAT TO THE INDUSTRY STANDARD CLI FEATURES THAT

09:45AM 1    HE HAD WORKED WITH PERSONALLY BEFORE THIS CASE EVEN STARTED AS

09:45AM 2    WELL AS BASED UPON HIS ANALYSIS OF, AS MR. FERRALL SAID, OVER

09:46AM 3    20 DIFFERENT NETWORKING VENDORS.

09:46AM 4        NOW MR. FERRALL NOTED THERE WAS OVERWHELMING EVIDENCE THAT

09:46AM 5    THE DISPUTED CLI FEATURES WERE USED BY ALL THE VENDORS THAT

09:46AM 6    DR. BLACK LOOKED AT, INCLUDING ALL OF CISCO'S MAJOR

09:46AM 7    COMPETITORS.  AND THIS IS JUST A SUMMARY, YOUR HONOR, OF THE

09:46AM 8    FINDINGS IN DR. BLACK'S REPORT.  MR. FERRALL SHOWED THE ACCUSED

09:46AM 9    MODES AND PROMPTS.  WELL OVER 20 VENDORS IN ADDITION TO CISCO

09:46AM 10   AND ARISTA USED THE SAME ACCUSED MODES AND PROMPTS.

09:46AM 11       YOU CAN LOOK AT THE HIERARCHIES, THESE ARE WHAT CISCO CALLS

09:46AM 12   THESE COMMANDS THAT START WITH THE COMMON FIRST WORD, THERE ARE

09:46AM 13   11 OF THEM THAT THEY ASSERT.  ALL 11 ARE USED BY AT LEAST SEVEN

09:46AM 14   OTHER VENDORS, AND THAT'S IN ADDITION TO CISCO AND ARISTA.  AND

09:46AM 15   IN FACT, NINE OF THEM ARE USED BY OVER 13 OTHER VENDORS.

09:46AM 16       AND I THINK THE SHOW COMMANDS, THE CLEAR COMMANDS.

09:46AM 17           THE COURT:  HOW MANY VENDORS ARE THERE, THOUGH?  13

09:46AM 18   OUT OF 1,000 WOULDN'T BE VERY IMPRESSIVE.  13 OUT OF 20 WOULD

09:47AM 19   BE.

09:47AM 20           MR. WONG:  DR. BLACK TESTIFIED, AND I THINK HE'S

09:47AM 21   RIGHT THAT HE COVERED ALL THE CISCO'S MAJOR COMPETITORS AS WELL

09:47AM 22   AS SMALLER PLAYERS IN THE FIELD.  WHEN HE WAS ASKED ABOUT THE

09:47AM 23   ONES HE MIGHT HAVE MISSED, DR. ALMEROTH BASICALLY POINTS TO A

09:47AM 24   WIKIPEDIA PAGE SAYING, LOOK AT THESE OTHER VENDORS YOU DIDN'T

09:47AM 25   LOOK AT.

09:47AM 1          AND DR. BLACK AT HIS DEPOSITION SAID, I LOOKED AT THAT

09:47AM 2     WIKIPEDIA PAGE AND THERE WERE A COUPLE OF COMPANIES FROM KOREA

09:47AM 3     THAT I DIDN'T THINK WOULD BE RELEVANT TO AN ANALYSIS HERE.

09:47AM 4          SO DR. ALMEROTH DIDN'T ACTUALLY LIST ANY MAJOR VENDORS THAT

09:47AM 5     DR. BLACK DIDN'T ANALYZE.

09:47AM 6          AND TO THE CONTRARY OF WHAT CISCO SAYS IN THEIR MOTION,

09:47AM 7     DR. BLACK DID LOOK AT THE HUAWEI CLI AS WELL AS THE JUNO CLI.

09:47AM 8     IN FACT, HE MENTIONS THEM IN HIS REPORT AND HE ACKNOWLEDGES

09:47AM 9     THAT THEY ARE DIFFERENT IN VARIOUS RESPECTS.

09:47AM 10               THE COURT:  OKAY.

09:47AM 11               MR. WONG:  AND I THINK THE LAST THING I WANT TO

09:47AM 12    HIGHLIGHT FOR THE COURT, YOUR HONOR, IS MR. FERRALL NOTED THAT

09:47AM 13    CISCO ITSELF, BEFORE THIS LITIGATION WAS EVEN FILED, REFERRED

09:48AM 14    TO ITS OWN CLI AS FOLLOWING A DE FACTO STANDARD.

09:48AM 15         AND THESE ARE ALL EXCERPTS FROM DR. BLACK'S REPORT.  HERE

09:48AM 16    WE HAVE CISCO TALKING ABOUT IT, BUT WE ALSO HAVE DELL AND

09:48AM 17    JUNIPER, TWO MAJOR COMPETITORS OF CISCO ALL REFERRING TO THEIR

09:48AM 18    CLI'S AS INDUSTRY STANDARD CLI IN THEIR PUBLIC DOCUMENTATION.

09:48AM 19         AND YOUR HONOR, WE DEPOSED DELL AND JUNIPER AND THEY

09:48AM 20    CONFIRMED IN THEIR DEPOSITION THAT THIS INDUSTRY STANDARD CLI

09:48AM 21    THAT THEY ARE TALKING ABOUT -- AND IT'S CONFIDENTIAL SO I WON'T

09:48AM 22    GO INTO DETAILS, BUT THEY SAID IT'S THE MODES, IT'S THE

09:48AM 23    COMMANDS, IT'S EVEN THE RESPONSES.

09:48AM 24         THOSE ARE THE THINGS THAT ARE COMMON ACROSS THE INDUSTRY,

09:48AM 25    THAT'S WHAT WE MEAN WHEN WE SAY INDUSTRY STANDARD CLI.

09:48AM  1          SO WE HAD THE OPPORTUNITY TO ASK THESE COMPANIES WHAT DID

09:48AM  2   YOU MEAN WHEN YOU SAID THIS, AND IT'S THE SAME DEFINITION THAT

09:48AM  3   DR. BLACK APPLIES WHEN HE SAYS THESE FEATURES ARE STANDARD.

09:48AM  4          AND JUST THREE MORE EXAMPLES OF OTHER COMPETITORS.

09:48AM  5          WITH THAT YOUR HONOR, IF YOU HAVE ANY QUESTIONS.

09:49AM  6              THE COURT:  OKAY.  NO.  THANK YOU.

09:49AM  7          MR. FERRALL, DID YOU WANT TO COMMENT ON MR. SEIFERT'S

09:49AM  8   OPINION ON MARKET EFFECT BEFORE WE MOVE ON TO IT?  BECAUSE I'M

09:49AM  9   KEEPING AN EYE ON THE TIME AND WE ARE RUNNING BEHIND.

09:49AM  10             MR. FERRALL:  RIGHT.

09:49AM  11         THE MARKET EFFECT REPORT, YOUR HONOR, I THINK YOUR HONOR'S

09:49AM  12  CONCERN WAS THAT THERE WAS NOT A MARKET SURVEY, I WOULD SUBMIT

09:49AM  13  IN THIS CASE IT'S NOT THE SORT OF QUESTION THAT'S REALLY

09:49AM  14  SUITABLE TO A MARKET SURVEY.

09:49AM  15         THE QUESTION IS, DOES HAVING COMMON CLI ELEMENTS AFFECT THE

09:49AM  16  CAUSE MARKET HARM TO CISCO, THAT'S THE --

09:49AM  17             THE COURT:  SO IN THE PATENT ARENA, THIS IS EXACTLY

09:49AM  18  THE STANDARD I WOULD HOLD AN EXPERT TO IS DOING A SURVEY WHEN

09:49AM  19  I'M LOOKING AT APPORTIONMENT, THE APPORTIONMENT ISSUE, SO

09:49AM  20  WHAT'S DRIVING SALES.

09:49AM  21         SO I'M -- AND MAYBE MY ANALOGY IS INCORRECT SO I WANT TO

09:50AM  22  LET YOU CORRECT MY UNDERSTANDING.

09:50AM  23             MR. FERRALL:  I DON'T THINK -- I WOULD -- I DON'T

09:50AM  24  THINK THAT A MARKET SURVEY WOULD BE, I FRANKLY DON'T THINK THAT

09:50AM  25  IT WOULD BE VERY EFFECTIVE HERE.  BUT EVEN IF IT COULD BE

09:50AM  1    EFFECTIVE, I DON'T THINK IT'S THE ONLY WAY TO EVALUATE WHETHER

09:50AM  2    THERE WAS MARKET HARM.

09:50AM  3        IN THIS CASE WHAT MR. SEIFERT LOOKED AT, RATHER THAN A

09:50AM  4    RESPONSE FROM A CUSTOMER WHICH MIGHT BE BASED UPON, YOU KNOW,

09:50AM  5    3, 4, 5 YEARS MEMORY, HE LOOKED AT ACTUAL DOCUMENTS, RFP'S,

09:50AM  6    THAT'S REQUEST FOR PROPOSALS, FROM CUSTOMERS.  HE LOOKED AT

09:50AM  7    COMMUNICATIONS BETWEEN CUSTOMERS AND ARISTA.  AND HE LOOKED AT

09:50AM  8    MARKET SHARE.

09:50AM  9        SO HE LOOKED AT OBJECTIVE PRE-EXISTING FACTS TO DETERMINE

09:51AM 10    THAT DECISIONS DO NOT APPEAR TO HAVE BEEN MADE BASED UPON THE

09:51AM 11    CLI.

09:51AM 12        AND THEN JUST LOOKING OBJECTIVELY AT THIRD PARTY DATA ABOUT

09:51AM 13    WHOSE MARKET SHARE CHANGED AND HOW MUCH DID THEY HAVE A

09:51AM 14    CISCO-LIKE CLI.  HE FOUND NO RELATIONSHIP.  IN FACT, HE FOUND

09:51AM 15    THAT SOME OF THE VENDORS WITH LESS OF A CISCO-LIKE CLI DID

09:51AM 16    BETTER THAN SOME THAT HAVE MORE OF A CISCO-LIKE CLI.

09:51AM 17        NOW MIGHT YOU BE ABLE TO CONSTRUCT A SURVEY THAT WOULD PASS

09:51AM 18    MUSTER, PERHAPS, BUT I THINK LOOKING AT THE OBJECTIVE

09:51AM 19    PRE-EXISTING FACTS AND DATA IS CERTAINLY A VIABLE WAY OF

09:51AM 20    OPINING ABOUT MARKET HARM, IN THIS CASE WHERE YOU ARE SPANNING

09:51AM 21    A NUMBER OF YEARS BACK AND A LOT OF DIFFERENT CUSTOMERS,

09:51AM 22    DIFFERENT MARKET SEGMENTS AND SO FORTH.

09:51AM 23            THE COURT:  SO I GUESS TO ME THE PROBLEM WITH

09:52AM 24    SEIFERT'S OPINION WAS IT SEEMED ANECDOTAL.

09:52AM 25        AND I'M CONCERNED ABOUT THAT BECAUSE I DON'T KNOW WHAT

09:52AM 1    VIABILITY, I'M LOOKING AT PARAGRAPH 101, 102 OF HIS REPORT,

09:52AM 2    WHERE HE TALKS ABOUT SOME OF THE CUSTOMERS, AND I KNOW A LOT OF

09:52AM 3    THIS IS PROBABLY CONFIDENTIAL, SO I DON'T NEED TO IDENTIFY

09:52AM 4    THAT, BUT THERE IS, IN PARAGRAPH 101 THERE'S A LONG LIST OF

09:52AM 5    CUSTOMERS AND WHAT THEY HAVE DONE.

09:52AM 6         AND PARAGRAPH 102, I KNOW FROM THE EVIDENCE AVAILABLE FROM

09:52AM 7    THESE CUSTOMERS OR PROSPECTIVE CUSTOMERS, NO ONE MENTIONED A

09:52AM 8    CISCO CLI OR INDUSTRY STANDARD CLI ON THEIR LIST OF SWITCH

09:52AM 9    PRODUCT REQUIREMENTS.

09:52AM 10        SO I MEAN, THE TROUBLE I HAVE WITH THIS IS THAT IT'S A

09:52AM 11   LIMITED GROUP OF CUSTOMERS OR POTENTIAL CUSTOMERS AND A

09:52AM 12   STATEMENT, AN OPINION BASED ON THE ABSENCE, AND I GUESS THAT'S

09:53AM 13   IN THE RFQ'S OR THE RFP'S THEY PUT OUT FOR THE SWITCHES.

09:53AM 14        MR. FERRALL:  AND YOUR HONOR, I WOULD SAY, WITHOUT

09:53AM 15   GETTING INTO THE DETAILS OF WHO IS NAMED HERE, BUT THESE ARE --

09:53AM 16   I THINK THE EVIDENCE WILL SHOW THAT THESE ARE, THEY MAKE UP BY

09:53AM 17   FAR THE LION'S SHARE OF ARISTA'S SALES.  AND THEREFORE, TO THE

09:53AM 18   EXTENT THERE'S AN OUTLIER OR THERE'S SOME OTHER SEGMENT OF THE

09:53AM 19   MARKET OR SOME OTHER CUSTOMER, THAT SEEMS TO BE APPROPRIATE

09:53AM 20   GROUNDS FOR CROSS-EXAMINATION AND THE JURY CAN WEIGH WHETHER

09:53AM 21   THAT CUSTOMER'S DESIRE FOR A CISCO-LIKE CLI WOULD HAVE MADE A

09:53AM 22   DIFFERENCE TO THEM OR NOT.  I MEAN, THAT'S GOING TO BE --

09:53AM 23        THE COURT:  SO IT SEEMS LIKE YOU ARE FIGHTING ACROSS

09:53AM 24   PURPOSES WITH MR. SEIFERT TO SAY CISCO CLI IS AN INDUSTRY

09:53AM 25   STANDARD AND THEN TO SAY, ACTUALLY NOBODY WANTS THIS, SO I

09:53AM 1    DON'T KNOW WHERE THAT GOES.

09:53AM 2            MR. FERRALL:  WELL, IT'S A MATTER OF MARKET HARM,

09:54AM 3    IT'S A MATTER OF --

09:54AM 4            THE COURT:  IT CAN'T BE A STANDARD IF -- THAT'S THE

09:54AM 5    PROBLEM I'M HAVING WITH THAT.  AND MAYBE THAT'S NOT FOR ME,

09:54AM 6    MAYBE THAT'S FOR CLOSING ARGUMENT TO THE JURY IS YOU CAN'T HAVE

09:54AM 7    IT BOTH WAYS.

09:54AM 8            MR. FERRALL:  MAYBE IT IS FOR CLOSING ARGUMENT.

09:54AM 9        BUT TO BE CLEAR, THE DE FACTO STANDARD OPINIONS AS WE HAVE

09:54AM 10   JUST EXPLAINED, THEY COME FROM WHAT VENDORS USED, WHAT VENDORS

09:54AM 11   USED IN THE INDUSTRY.

09:54AM 12       WE ARE NOT BASING THAT DE FACTO STANDARD OPINION BASED UPON

09:54AM 13   A SURVEY OF CONSUMERS OBVIOUSLY OR CUSTOMERS, WE ARE BASING IT

09:54AM 14   UPON WHAT WAS REASONABLE IN THE INDUSTRY TO USE BECAUSE

09:54AM 15   EVERYONE USED IT, NO ONE COMPLAINED ABOUT IT, EVERYONE THOUGHT

09:54AM 16   THAT IT WAS FINE, CISCO SAID IT WAS A DE FACTO STANDARD AND

09:54AM 17   THAT'S HOW IT CAME ABOUT.

09:54AM 18       IT'S A LITTLE BIT DIFFERENT QUESTION TO LOOK AT, WELL, HOW

09:55AM 19   WERE PARTICULAR ARISTA SALES DRIVEN.  AND SPECIFICALLY, CAN

09:55AM 20   CISCO POINT TO OR IS THERE EVIDENCE THAT THE USE OF THESE CLI

09:55AM 21   ELEMENTS CAUSED MARKET HARM, THAT'S THE RELEVANT ASSESSMENT FOR

09:55AM 22   FAIR USE.

09:55AM 23           THE COURT:  BUT I GUESS I'M STILL ASKING YOU IF IT'S

09:55AM 24   AN INDUSTRY STANDARD BECAUSE IT'S BECOME SO COMMON THAT

09:55AM 25   EVERYONE WANTS TO USE IT, BUT THEN MR. SEIFERT IS GOING TO

09:55AM 1    TRANSITION TO HIS NEXT OPINION, BUT ON MARKET EFFECTS, ARISTA'S

09:55AM 2    CUSTOMERS ARE NOT BUYING SWITCHES BECAUSE OF THIS REALLY

09:55AM 3    IMPORTANT ALL ENCOMPASSING DE FACTO INDUSTRY STANDARD, IT

09:55AM 4    DOESN'T WORK.  I DON'T KNOW WHAT I'M DOING THERE.  I DO NOT

09:55AM 5    KNOW WHETHER THE OPINIONS GO OR IT'S -- AS I SAY, MAYBE I'VE

09:55AM 6    JUMPED INTO AN AREA I DON'T NEED TO BE IN BECAUSE THAT'S A

09:55AM 7    FACTUAL THAT THE JURY COULD SIMPLY DISREGARD.

09:55AM 8          MR. FERRALL:  IT IS.  AND I THINK -- I BELIEVE

09:56AM 9    THERE'S AN EXPLANATION FOR IT.

09:56AM 10       AND I'M TRYING TO GIVE IT TO YOU WHICH IS TO SAY THAT THE

09:56AM 11   MARKET HARM IS SPECIFIC TO ARISTA'S SALES THAT ARE ACCUSED IN

09:56AM 12   THIS CASE.  WHAT SALE CAUSED HARM TO CISCO.

09:56AM 13       THOSE ARE, AS I'VE SAID, DRIVEN ALMOST ENTIRELY BY A SET OF

09:56AM 14   CUSTOMERS THAT ARE, MOST OF WHICH ARE ENUMERATED HERE IN

09:56AM 15   PARAGRAPH 101, WHOSE MARKET PURCHASE DECISIONS ARE DIFFERENT

09:56AM 16   THAN OTHERS.  AND DIFFERENT THAN WHAT DRIVES THE DE FACTO

09:56AM 17   STANDARDIZATION FOR OTHER COMPANIES AND OTHER SUBMARKETS.

09:56AM 18       SO IT IS A FACTUAL ISSUE WHICH MAY BE OUR BURDEN TO EXPLAIN

09:56AM 19   TO THE JURY, COME TIME.

09:56AM 20          THE COURT:  OKAY.  ALL RIGHT.

09:56AM 21       MR. NELSON, I DON'T THINK YOU RESPONDED OR MADE ANY

09:56AM 22   COMMENTS ON MR. SEIFERT, AND I WAS JUST TRYING TO SAVE SOME

09:57AM 23   TIME SINCE MR. FERRALL HAD STARTED WITH MR. SEIFERT.

09:57AM 24          MR. NELSON:  RIGHT.  THANK YOU, YOUR HONOR.

09:57AM 25       SO BRIEFLY ON THE INDUSTRY STANDARD POINT, IN TERMS OF THE

09:57AM  1    UNDERLYING, YOU KNOW, IF IT THEY WANT TO TALK ABOUT COMMONALITY

09:57AM  2    AND THOSE KINDS OF THINGS, UNDERLYING DATA, I'VE ALREADY

09:57AM  3    ADDRESSED THAT POINT, BUT NOW THEY WANT TO OFFER THIS

09:57AM  4    DEFINITION THIS IEEE DEFINITION, VERY AMORPHOUS, VERY

09:57AM  5    SUBJECTIVE AND THEY NEVER PUT ANY PARAMETERS ON IT IT.

09:57AM  6        SO EVEN AS THEY GET UP HERE TO SAY WHETHER DOES THIS

09:57AM  7    HAPPEN, WHEN DOES SOMETHING BECOME, THAT'S THE PROBLEM BECAUSE

09:57AM  8    YOU HEARD FROM THEM, THEY WANT TO EQUATE THIS DEFINITION THAT

09:57AM  9    THEIR EXPERTS HAVE CREATED, EXCEPT FOR THEY HAVEN'T TOLD US

09:57AM  10   WHAT IT IS, FOR THIS LITIGATION, WITH STATEMENTS THAT ARE IN

09:57AM  11   THE DOCUMENTS.

09:57AM  12       WITNESSES CAN EXPLAIN THE DOCUMENTS, THE PEOPLE WHO CREATED

09:57AM  13   THEM FROM THIRD PARTIES CAN EXPLAIN THE DOCUMENTS, BUT TO HAVE

09:57AM  14   AN EXPERT WHO OFFERS NO OBJECTIVE CRITERIA, CAN POINT TO

09:57AM  15   NOTHING PRIOR TO THIS LITIGATION AS TO WHEN SOMETHING BECOMES

09:57AM  16   THIS DE FACTO INDUSTRY STANDARD THAT THEY ARE TALKING ABOUT AND

09:58AM  17   EQUATE THOSE WITH STATEMENTS THAT ARE IN THESE DOCUMENTS,

09:58AM  18   THAT'S WHERE THE CONFUSION COMES FROM AND THAT'S WHAT'S

09:58AM  19   IMPROPER WITH THIS TESTIMONY.

09:58AM  20       AND MR. SEIFERT, IN TERMS OF THAT, HE COMES UP WITH THIS

09:58AM  21   FOUR-FACTOR TEST THAT'S LISTED IN THE BRIEFING, AND EVERY

09:58AM  22   SINGLE ONE OF THEM, HIS RESPONSE AS TO WHEN IT HAPPENS IS MY

09:58AM  23   BUSINESS JUDGMENT, RIGHT.

09:58AM  24       NOT ONLY IS THAT TEST TRULY SUBJECTIVE UNDER THE DAUBERT

09:58AM  25   STANDARD, BUT HE SAYS EXPLICITLY THAT IT'S SUBJECTIVE.

09:58AM 1      AND THE MARKET HARM ANALYSIS THAT YOUR HONOR JUST HIT ON,

09:58AM 2  THAT COMES RIGHT DOWN TO THE CRUX OF THIS ISSUE, BECAUSE ON THE

09:58AM 3  ONE HAND WHAT THEY WANT TO SAY WITH THE INDUSTRY STANDARD IS

09:58AM 4  BASICALLY THIS IS A BARRIER TO ENTRY.  EVERYBODY USES THIS,

09:58AM 5  EVERYBODY UNDERSTANDS, BECAUSE REMEMBER THAT DEFINITION THAT I

09:58AM 6  LOOKED AT FROM DR. BLACK, REFERS EXPLICITLY TO CUSTOMERS,

09:58AM 7  RIGHT, CUSTOMERS EXPECT, THEY BECOME FAMILIAR, THAT'S THE WHOLE

09:59AM 8  IDEA, THE WHOLE TRIGGER BEHIND THIS.

09:59AM 9      BECAUSE OTHERWISE IT MAKES NO SENSE, RIGHT, JUST BECAUSE A

09:59AM 10  LOT OF PEOPLE USE IT, IF CUSTOMERS DON'T CARE ABOUT IT AT ALL,

09:59AM 11  THAT WOULDN'T BE A DEFENSE TO ANYTHING.

09:59AM 12      SO ON THE ONE HAND THEY WANT TO SAY IT'S A BARRIER TO

09:59AM 13  ENTRY, THEN ON THE OTHER HAND THEY WANT MR. SEIFERT, THIS

09:59AM 14  GENTLEMAN BASED UPON THESE DOCUMENTS, TO SAY NOBODY BASES

09:59AM 15  BUYING DECISIONS AS A RESULT OF THAT.

09:59AM 16      BUT THINK ABOUT THIS WAY, CARS, RIGHT, THEY ALL HAVE FOUR

09:59AM 17  WHEELS OR TIRES OR HOWEVER YOU WANT TO SAY, RIGHT.  EVERYBODY

09:59AM 18  HAS COME TO EXPECT THAT.  BUT IF YOU LOOK AND YOU LIST ON THE

09:59AM 19  MARKETING MATERIALS OR IF YOU ASK CUSTOMERS WHY THEY BOUGHT THE

09:59AM 20  CAR, I'M SURE, I MEAN, I DON'T KNOW THIS 100 PERCENT, BUT I'M

09:59AM 21  PRETTY SURE NOBODY IS GOING TO SAY BECAUSE IT HAD FOUR WHEELS.

09:59AM 22      BUT IF YOU ASK THE QUESTION THE PROPER WAY, WHICH IS, WHAT

09:59AM 23  AN EXPERT WOULD NEED TO DO IN THIS CONTEXT, WHAT YOUR HONOR

09:59AM 24  JUST HIT ON WHICH IS, LET'S SAY YOUR CAR DIDN'T HAVE FOUR

10:00AM 25  WHEELS, IT WAS MISSING THE LEFT FRONT WHEEL; WOULD YOU BUY THAT

10:00AM 1    CAR?  AND THE ANSWER IS OVERWHELMINGLY, NO, OF COURSE NOT.

10:00AM 2         SO THAT'S THE TENSION, BUT THEY DIDN'T DO THAT MARKET

10:00AM 3    ANALYSIS ON EITHER SIDE.  THEY DIDN'T ASK THE CUSTOMERS, HEY,

10:00AM 4    DO YOU NEED THIS CLI, DO YOU NEED THIS USER INTERFACE, HAVE YOU

10:00AM 5    BECOME SO ACCUSTOMED TO IT SUCH THAT IF YOU DON'T HAVE IT YOU

10:00AM 6    ARE NOT GO GOING TO CONSIDER OTHER SWITCHES.

10:00AM 7         AND ON THE MARKET HARM, THEY NEVER ASK ANYBODY THE SAME

10:00AM 8    QUESTION WHICH IS WHAT THAT INTENTION IS.

10:00AM 9         SO WE HAVE AN EXPERT THAT DOESN'T WANT TO ASK THOSE

10:00AM 10   QUESTIONS BECAUSE THEY ARE COMPLETELY INTENTIONED BOTH WITH HIS

10:00AM 11   DEFINITION OF THE INDUSTRY STANDARD AND HIS MARKET HARM AND

10:00AM 12   THAT'S THE FUNDAMENTAL PROBLEM, YOUR HONOR.

10:00AM 13             THE COURT:  OKAY.  ALL RIGHT.

10:00AM 14        ARE WE READY TO MOVE ON?  WHAT WOULD YOU LIKE TO MOVE ON TO

10:00AM 15   NEXT?

10:00AM 16             MR. PAK:  YOUR HONOR, I WILL DEFER TO MR. FERRALL.

10:00AM 17             MR. FERRALL:  THANK YOU.  I THINK IT'S A GOOD CHOICE.

10:00AM 18   AND SO I WOULD LIKE TO TALK ABOUT DR. ALMEROTH AND THE SOURCE

10:00AM 19   CODE.

10:00AM 20             THE COURT:  OKAY.  LET'S BEAT UP ON THE CISCO GROUP.

10:01AM 21             MR. FERRALL:  THANK YOU.  IT'S ABOUT TIME.

10:01AM 22             THE COURT:  OKAY.  AND MR. FERRALL, AS I MENTIONED TO

10:01AM 23   YOU AND MAYBE THIS IS FOR CISCO TO HELP ME OUT, I ACTUALLY

10:01AM 24   DIDN'T KNOW WHAT I WAS LOOKING AT ON SOME OF THESE COPYING

10:01AM 25   DOCUMENTS.

10:01AM  1    AND YOU KNOW, I LEARN ABOUT THE CASE THROUGH THESE EARLY

10:01AM  2  MOTIONS, AND BY THE TIME I GIVE IT TO THE JURY MAYBE I WILL

10:01AM  3  KNOW AS MUCH AS THEY DO, BUT I HAVE TO MAKE SOME IMPORTANT

10:01AM  4  DECISIONS NOW, AND THESE ARE, THESE WERE VERY DIFFICULT FOR ME

10:01AM  5  TO UNDERSTAND, SO DON'T HESITATE TO HELP ME OUT.

10:01AM  6    MR. FERRALL:  OKAY.  I HOPE YOUR HONOR WILL FORGIVE

10:02AM  7  ME.  I'M NOT GOING TO TRY TO MAKE SENSE OF THOSE.

10:02AM  8    THE COURT:  IF I DON'T NEED TO MAKE SENSE OF THEM,

10:02AM  9  THAT'S MUSIC TO MY EARS.

10:02AM 10    MR. FERRALL:  I DON'T THINK YOU DO, AT LEAST FOR THIS

10:02AM 11  MOTION BECAUSE, YOUR HONOR, NONE OF THOSE COPYING DOCUMENTS

10:02AM 12  RELATE TO UPON THE SOURCE CODE COPYING OPINION THAT I WANT TO

10:02AM 13  TALK ABOUT RIGHT NOW.  AND I WILL GET TO WHERE THERE MAY BE A

10:02AM 14  LITTLE BIT OF OVERLAP.

10:02AM 15    THE COURT:  LIKE SO MANY CIRCUMSTANCES IN THIS CASE,

10:02AM 16  I FEEL LIKE YOU TWO ARE LITIGATING TWO DIFFERENT CASES HERE,

10:02AM 17  AND MAYBE THAT'S WHAT YOU ARE DOING, I DON'T KNOW.

10:02AM 18    MR. FERRALL:  I HOPE NOT.

10:02AM 19    THE COURT:  SO I CAN'T DISTINGUISH BETWEEN THE -- YOU

10:02AM 20  HAVE YOUR FIRST TWO ISSUES WHICH WERE COPYING OF THE SOURCE

10:02AM 21  CODE ON THE PARSER, SOURCE CODE AND HELP DESCRIPTIONS, HELP

10:02AM 22  DESK, THEY ARE THE SAME THING, CORRECT?

10:02AM 23    MR. FERRALL:  NO, THOSE ARE TWO DIFFERENT OPINIONS.

10:02AM 24    THE COURT:  YOUR MOTION IS ABOUT HELP DESCRIPTIONS.

10:03AM 25  IN YOUR REPLY BRIEF YOU MAKE THE DISTINCTION BETWEEN HELP

10:03AM 1    DESCRIPTION AND HELP DESK, AND I GOT LOST THERE.

10:03AM 2             MR. FERRALL:  HELP DESK IS JUST SHORTHAND FOR HELP

10:03AM 3    DESCRIPTIONS.

10:03AM 4             THE COURT:  OKAY.  THAT'S WHAT I SAID, THEY ARE THE

10:03AM 5    SAME THING.

10:03AM 6             MR. FERRALL:  YES, YES.

10:03AM 7        BUT THE PARSER OPINION IS DIFFERENT FROM HELP DESCRIPTIONS.

10:03AM 8             THE COURT:  I'M SORRY.  YES.

10:03AM 9        I THOUGHT IN YOUR REPLY BRIEF YOU WERE DRAWING A

10:03AM 10   DISTINCTION BETWEEN HELP DESK AND HELP DESCRIPTIONS, WHICH IN

10:03AM 11   FACT YOU DIDN'T BRIEF IN YOUR OPENING, AND I DIDN'T THINK THEY

10:03AM 12   WERE DIFFERENT.

10:03AM 13            MR. FERRALL:  NO, THEY ARE NOT.

10:03AM 14            THE COURT:  THEN WE ARE ON THE SAME PAGE.

10:03AM 15            MR. FERRALL:  MY APOLOGIES IF THAT WAS CONFUSING.

10:03AM 16       I WANT TO SPEND MOST OF THE TIME TALKING ABOUT THE PARSER

10:03AM 17   OPINION BECAUSE I THINK CISCO HAS MADE A CONCESSION REGARDING

10:03AM 18   THE HELP DESCRIPTION PART OF THIS MOTION THAT MORE OR LESS

10:03AM 19   RESOLVES IT.

10:03AM 20            THE COURT:  OKAY.

10:03AM 21            MR. FERRALL:  HERE'S THE ISSUE WITH THE PARSER.

10:03AM 22       THIS IS LITIGATING TWO DIFFERENT CASES, YOUR HONOR IS RIGHT

10:03AM 23   TO THAT EFFECT BECAUSE THIS PARSER OPINION IS COMPLETELY

10:03AM 24   ORTHOGONAL TO EVERYTHING WE HAVE BEEN TALKING ABOUT IN THE

10:04AM 25   CASE.

10:04AM  1    THIS IS AN OPINION, IT'S NOT EVEN IN DR. ALMEROTH'S REPORT,

10:04AM  2    NOWHERE IN HIS REPORT CAN YOU FIND A STATEMENT WHERE HE

10:04AM  3    CONCLUDES THAT THERE WAS COPYING OF SOURCE CODE BY ARISTA.  YOU

10:04AM  4    CAN'T FIND THOSE WORDS.  IT APPEARS, AND WE COULD GO TO THE

10:04AM  5    FIRST SLIDE HERE, IT APPEARS, IT SURFACED IN HIS DEPOSITION.

10:04AM  6    SO BY WAY OF BACKGROUND, IN HIS REPORT, HE INCLUDES A FEW

10:04AM  7    SORT OF AMBIGUOUS PARAGRAPHS, THE MOST NOTORIOUS ONE BEING

10:04AM  8    PARAGRAPH 83, WHERE HE REFERS TO CERTAIN BEHAVIOR OF THE ARISTA

10:04AM  9    PARSER, AND THEN HE SAYS, IN MY OPINION, THIS IS NONSTANDARD

10:04AM  10    BEHAVIOR AND IT IS PRESENT IN BOTH CISCO AND ARISTA PROGRAMS.

10:05AM  11    HE DOESN'T SAY WHERE IT'S PRESENT IN CISCO'S PROGRAMS, HE

10:05AM  12    DOESN'T CITE ANY FILES, HE DOESN'T COMPARE ANY SOURCE CODE, HE

10:05AM  13    DOESN'T SAY THAT THIS LEAD HIM TO A BELIEF THAT THERE WAS

10:05AM  14    COPYING OF SOURCE CODE.

10:05AM  15    BUT IN HIS DEPOSITION, WE ASKED HIM, WHAT'S THE

10:05AM  16    SIGNIFICANCE OF YOUR FINDING THIS PARSER BEHAVIOR NONSTANDARD?

10:05AM  17    BECAUSE AFTER ALL, YOUR HONOR IS FAMILIAR ENOUGH NOW WITH ALL

10:05AM  18    OF THE ACCUSATIONS AND THE ELEMENTS OF THE CLI, THERE'S NOTHING

10:05AM  19    ABOUT PARSER BEHAVIOR AMONG ANY IDENTIFIED COPYRIGHT SIMILARITY

10:05AM  20    THAT WE ARE HERE TO TRY.  SO WHAT IS THIS ALL ABOUT, WHY DID

10:05AM  21    YOU IDENTIFY THIS?

10:05AM  22    AND THEN IN DEPOSITION HE SAYS FOR THE FIRST TIME, AND THIS

10:05AM  23    IS AN EXCERPT, HE SAYS, "WELL, IT INDICATES THAT I BELIEVE

10:05AM  24    THERE WAS SOURCE CODE COPYING."

10:05AM  25    AND THIS IS THE FOLLOW-UP QUESTION:

10:05AM 1      "QUESTION:  SO WHAT YOU ARE TRYING TO SUGGEST HERE IS THAT

10:05AM 2    YOU THINK ARISTA WOULD HAVE COPIED CISCO'S PARSER SOURCE CODE?

10:06AM 3         "ANSWER:  I THINK THAT'S THE OPINION I'M EXPRESSING."

10:06AM 4      NOW TO BE CLEAR, YOUR HONOR, LET ME BE UNEQUIVOCAL.  ARISTA

10:06AM 5    CATEGORICALLY REJECTS THE NOTION THAT THERE WAS ANY COPYING OR

10:06AM 6    ANY INSINUATION EVEN OF COPYING OF SOURCE CODE.

10:06AM 7      IT DID NOT, IT NEVER HAPPENED, ARISTA WILL PROVE IT IF

10:06AM 8    NECESSARY, BUT TO BE FORCED TO PROVE THAT AT A TRIAL, THAT

10:06AM 9    DOESN'T PUT AT ISSUE COPYRIGHT INFRINGEMENT OF SOURCE CODE

10:06AM 10   BECAUSE IT'S NEVER BEEN DISCLOSED IN THIS CASE BEFORE.

10:06AM 11        THE COURT:  WELL, IS THAT THEN A RULE 26 PROBLEM THAT

10:06AM 12   WE HAVE INSTEAD OF A DAUBERT?

10:06AM 13        MR. FERRALL:  IT CAN BE, IT CAN ACTUALLY BE REJECTED

10:06AM 14   UNDER RULE 26 AND RULE 37 BECAUSE THIS THEORY WAS NEVER

10:06AM 15   DISCLOSED IN THE CASE AS A BASIS FOR INFRINGEMENT.

10:06AM 16     THE FACT THAT IT AROSE ONLY --

10:06AM 17        THE COURT:  BECAUSE THAT MAY BE REALLY THE SHORT CUT

10:06AM 18   HERE AS OPPOSED TO A COMPLICATED DAUBERT ANALYSIS.  IF THAT

10:07AM 19   WASN'T IDENTIFIED IN THE CONTENTIONS, THEN MAYBE WE ARE JUST

10:07AM 20   DONE.

10:07AM 21     I'M VERY CONCERNED THAT, I MEAN, IF I HAVE TO GO THROUGH

10:07AM 22   THE REPORT AND COMPARE IT TO THE DEPOSITION AND DETERMINE

10:07AM 23   WHETHER A NEW OPINION CAME UP IN THE DEPOSITION WHICH I

10:07AM 24   WOULDN'T ALLOW, I NEED TO -- BUT I DON'T WANT TO HAVE TO

10:07AM 25   REVISIT THIS AFTER GOING THROUGH THIS ANALYSIS ONLY TO HAVE TO

10:07AM 1    COME BACK AND HAVE YOU BRING AN IN LIMINE MOTION UNDER RULE 26.

10:07AM 2    IT'S JUST AN UTTER WASTE OF MY TIME.

10:07AM 3            MR. FERRALL:  FAIR ENOUGH.  AGREED.  AGREED.

10:07AM 4        I CAN ABSOLUTELY REPRESENT, AND I DON'T THINK THERE IS ANY

10:07AM 5    CONTENTION TO THE CONTRARY THAT THERE WAS NO THEORY DISCLOSED

10:07AM 6    IN DISCOVERY ABOUT PARSER CODE COPYING, THERE WAS NO THEORY

10:07AM 7    DISCLOSED IN DISCOVERY ABOUT THIS PARSER BEHAVIOR BEING

10:07AM 8    PROTECTED BY COPYRIGHT.  AFTER ALL, IT SOUNDS FROM THE

10:08AM 9    DESCRIPTION THAT IT'S A FUNCTIONAL FEATURE THAT WOULDN'T BE

10:08AM 10   PROTECTED BY COPYRIGHT ANYWAY.

10:08AM 11           THE COURT:  THAT'S A DIFFERENT ISSUE.

10:08AM 12           MR. FERRALL:  UNDERSTOOD.  I'M JUST SAYING IT WAS

10:08AM 13   NEVER IN THIS CASE.

10:08AM 14           THE COURT:  WHAT I NEED FROM YOU IS THAT RULE 26

10:08AM 15   ISSUE PRESENTED TO ME NOW SO THAT I CAN -- BECAUSE THAT'S A

10:08AM 16   MUCH MORE STRAIGHTFORWARD ANALYSIS FOR ME.

10:08AM 17           MR. FERRALL:  RIGHT.

10:08AM 18           THE COURT:  AND IF I CAN -- IF I DISAGREE WITH YOU,

10:08AM 19   OF COURSE, THEN I WOULD HAVE TO COME BACK AND DO THIS.  BUT I

10:08AM 20   JUST DON'T WANT TO HAVE YOU LOSE ON THIS AND HAVE YOU GO INTO

10:08AM 21   THE OTHER.

10:08AM 22           MR. FERRALL:  UNDERSTOOD, YOUR HONOR.

10:08AM 23       AND I TELL YOU, WE DEBATED WHETHER TO BRING THIS UNDER RULE

10:08AM 24   26, BUT WE THOUGHT, THIS IS DAUBERT, THERE'S MOTIONS IN LIMINE

10:08AM 25   LATER, I WANTED TO KEEP IT PURE ON RULE 702.

10:08AM  1          THE COURT:  AND I APPRECIATE THAT, AND I THINK ON

10:08AM  2     THIS ONE ISSUE I MAY ASK EACH OF YOU TO GIVE ME A THREE-PAGE

10:08AM  3     BRIEF ON THE RULE 26 ISSUE.  BECAUSE I WOULD LIKE TO BE DONE

10:08AM  4     WITH IT EARLY.

10:08AM  5          AND MR. NELSON, YOU CAN TALK ABOUT IT IN A MINUTE, BUT WE

10:08AM  6     ARE GOING TO GO ON ON THIS.

10:08AM  7          MR. NELSON:  I THINK I CAN SHORTCUT IT, YOUR HONOR.

10:09AM  8          THE COURT:  OKAY.

10:09AM  9          MR. NELSON:  SO YEAH, THERE ISN'T, HE'S NOT GOING TO

10:09AM 10     GO BEYOND HIS REPORT, SO WE DON'T NEED TO DO YOUR HONOR WITH

10:09AM 11     MORE BRIEFING AND ALL THAT KIND OF STUFF.  WE ARE NOT ALLEGING

10:09AM 12     THAT THERE WAS PARSER SOURCE CODE COPYING IN THE CASE, SO THAT

10:09AM 13     ISN'T AN ISSUE.

10:09AM 14          AND FRANKLY, THIS PARSER SIMILARITY IN HIS REPORT WHERE IT

10:09AM 15     TALKS ABOUT THE SIMILARITY AND IDENTIFIES WHAT THOSE

10:09AM 16     SIMILARITIES ARE, AGREED IS NOT RELEVANT TO THE COPYRIGHT CASE

10:09AM 17     THAT HAS TO DO WITH THE PATENT CASE AND SOME CONTENTIONS THAT

10:09AM 18     WE TOOK ONLY WHAT WE NEEDED TO TAKE WITH RESPECT TO THE

10:09AM 19     COPYING.

10:09AM 20          SO THAT'S RIGHT, IT'S NOT A COPYRIGHT ISSUE, WE ARE NOT

10:09AM 21     TALKING ABOUT SOURCE CODE COPYING.

10:09AM 22          THE COURT:  DOES THAT HAVE TO DO WITH THE HELP

10:09AM 23     DESCRIPTIONS AS WELL?

10:09AM 24          MR. NELSON:  WELL, I THINK THE HELP DESCRIPTIONS IS

10:09AM 25     WHAT'S RESOLVED BECAUSE THE ONLY THING WE ARE TALKING ABOUT

10:09AM  1    THERE IS THOSE DESCRIPTIONS WERE FOUND IN THE SOURCE CODE, THEY

10:09AM  2    ARE COPIED IN, BUT THAT'S ALL WE ARE TALKING ABOUT.

10:10AM  3        WE ARE NOT TALKING ABOUT THE ACTUAL, WHAT I WOULD CALL THE

10:10AM  4    LINES OF CODE THAT IMPLEMENT IT, THAT WOULD BE MORE OF AN OUT

10:10AM  5    PUT THAT SAYS HERE IS WHAT YOU PRINT ON THE SCREEN.

10:10AM  6        THE COURT:  OKAY.  THEN IT LOOKS LIKE YOU ARE

10:10AM  7    SUCCESSFUL HERE, AND THAT'S GOOD.

10:10AM  8        MR. FERRALL:  WITH ONE CAVEAT.

10:10AM  9        THE COURT:  THANK YOU, MR. NELSON.

10:10AM 10        MR. FERRALL:  THANK YOU.  AND I APPRECIATE THAT.

10:10AM 11        SO THE ONE THING THAT'S LEFT OF THIS IS IF THIS OPINION

10:10AM 12    THAT ACTUALLY IS IN HIS REPORT ABOUT NONSTANDARD BEHAVIOR IS

10:10AM 13    STILL POTENTIALLY BEING OFFERED, I DO WANT TO TALK ABOUT THE

10:10AM 14    DAUBERT CHALLENGE ON THAT SPECIFICALLY, EVEN IF HE'S NOW

10:10AM 15    REPRESENTED THAT THEY'RE NOT GOING TO MAKE THE LEAP TO SOURCE

10:10AM 16    CODE COPYING.

10:10AM 17        THE COURT:  WELL, I DON'T KNOW WHAT THAT'S THEN

10:10AM 18    RELEVANT TO.

10:10AM 19        MR. FERRALL:  I'M NOT SURE WHAT IT IS EITHER, BUT

10:10AM 20    MR. NELSON SAID IT'S RELEVANT TO THE PATENT CASE IN SOME WAY,

10:10AM 21    I'VE NEVER SEEN THAT ARGUED AS SUCH.

10:10AM 22        THE COURT:  THAT'S WHAT THE 526 DEALS WITH, THAT'S

10:10AM 23    THE SUBJECT MATTER.

10:11AM 24        MR. FERRALL:  SO WE COULD MAYBE -- MAYBE WE SHOULD

10:11AM 25    SUBMIT OUR THREE PAGE BRIEF ON RELEVANCE OF THAT.  BUT

10:11AM 1    MEANWHILE, WHILE WE ARE HERE, I CAN TALK ABOUT WHY I DON'T

10:11AM 2    THINK THIS -- MR. ALMEROTH SHOULD BE ABLE TO COME IN AND SAY

10:11AM 3    THIS BEHAVIOR IS NONSTANDARD.

10:11AM 4         THE COURT:  SO THE WHOLE CONCEPT HERE, ULTIMATELY

10:11AM 5    THIS IS CIRCUMSTANTIAL EVIDENCE, I THOUGHT IT WAS BEING OFFERED

10:11AM 6    AS CIRCUMSTANTIAL EVIDENCE OF COPYING, I DON'T KNOW WHETHER IT

10:11AM 7    IS, IT'S BEING OFFERED AS CIRCUMSTANTIAL EVIDENCE OF

10:11AM 8    INFRINGEMENT OF THE '526; IS THAT WHERE WE ARE, MR. PAK?

10:11AM 9         MR. PAK:  YEAH.

10:11AM 10   SO AS YOUR HONOR KNOWS, COPYING IS AN ELEMENT OF RULE FOR

10:11AM 11   INFRINGEMENT ON THE '526 PATENT.  WE KNOW THE '526 PATENT IS

10:11AM 12   SQUARELY FOCUSED ON THE PARSER CODE AS WE HAVE COVERED IT.  WE

10:11AM 13   KNOW THE PEOPLE WHO WROTE THIS CODE, YOUR HONOR, WORKED AT

10:11AM 14   CISCO AND HAD ACCESS TO OUR CODE.  DR. JAFFE OPINES ON

10:11AM 15   INFRINGEMENT ISSUES UNDER YOUR HONOR'S CLAIM CONSTRUCTION, WE

10:12AM 16   WENT THROUGH THAT, THAT'S BEEN RESOLVED.

10:12AM 17   DR. ALMEROTH HAS GONE DEEP INTO THE SOURCE CODE FOR LOTS OF

10:12AM 18   OTHER REASONS THAT DEAL WITH HELP DESCRIPTIONS AND OTHER

10:12AM 19   ASPECTS OF THE CASE.  HE FOUND SIMILARITY FROM HIS OPINION,

10:12AM 20   HE'S A COMPUTER SCIENTIST, WRITTEN PARSER CODE, HE'S ANALYZED

10:12AM 21   PARSER CODE, HE'S LOOKED AT A LOT OF DIFFERENT TYPES OF

10:12AM 22   PARSING.  HE FINDS SUBSTANTIAL SIMILARITY THAT GIVES CREDENCE

10:12AM 23   TO THE WILLFUL INFRINGEMENT ALLEGATIONS IN THE '526 PATENT.

10:12AM 24   THEY ARE MORE THAN HAPPY, AS -- THEY ARE MORE THAN WELCOME

10:12AM 25   TO CROSS-EXAMINE HIM AT TRIAL, AS THEY DID IN HIS DEPOSITION,

10:12AM 1    IF THE JURY FINDS THAT HIS ANALYSIS ISN'T SUFFICIENT OR

10:12AM 2    CREDIBLE, THEN THEY CAN TELL.

10:12AM 3           THE COURT:  ALL RIGHT.  I CERTAINLY WANT MR. FERRALL

10:12AM 4    TO BE ABLE TO CONTINUE, SO WE ARE GOING TO FOCUS THE REMAINDER

10:12AM 5    OF THIS ARGUMENT REGARDING THE PARSER TREE TO THE '526 PATENT

10:12AM 6    ISSUES IN THE CASE, NOT THE COPYRIGHT ISSUES.

10:12AM 7           MR. FERRALL:  WELL, LET ME SAY, YOUR HONOR, THERE'S

10:12AM 8    NEVER BEEN ANY EXPLANATION, I MEAN, THIS IS BRAND-NEW TODAY

10:12AM 9    THAT THIS IS RELEVANT TO THE '526.

10:13AM 10      DR. ALMEROTH IS NOT EVEN THE EXPERT.

10:13AM 11          THE COURT:  IT WASN'T IN THE BRIEFS.

10:13AM 12          MR. FERRALL:  IT WAS NOT IN THE BRIEFS AT ALL.

10:13AM 13          THE COURT:  SO HE HAS NOT BEEN DISCLOSED AS A WITNESS

10:13AM 14    ON THE '526 ISSUES?

10:13AM 15          MR. FERRALL:  NO, THERE'S NOTHING THAT TIES THIS TO

10:13AM 16    THE '526 PATENT.  DR. ALMEROTH IS NOT OFFERING AN OPINION ABOUT

10:13AM 17    THE '526 PATENT, HE DOESN'T OPINE ON INFRINGEMENT.

10:13AM 18          THE COURT:  THEN THAT'S AN ISSUE FOR ANOTHER DAY.

10:13AM 19          MR. FERRALL:  I WOULD LIKE TO BE ABLE TO SUBMIT -- I

10:13AM 20    WOULD LIKE TO BE ABLE TO ARGUE THAT THIS SHOULDN'T COME IN FOR

10:13AM 21    PURPOSES OF THE '526 PATENT ON GROUNDS OF DISCLOSURE AND

10:13AM 22    OTHERWISE.

10:13AM 23          THE COURT:  SO I'M GOING TO HAVE YOU TWO TALK ABOUT

10:13AM 24    THAT.

10:13AM 25          MR. PAK:  SURE.

10:13AM   1          THE COURT:  BECAUSE IT'S NOT A DAUBERT ISSUE, PER SE,

10:13AM   2    NOW.

10:13AM   3       I THINK THAT THERE IS A CLARITY FROM CISCO AS TO THIS

10:13AM   4    SOURCE CODE COPYING ISSUE THAT IS NOW OFF THE TABLE.  SO FOR

10:13AM   5    THE MOTION PRESENTED TO THE COURT, YOU HAVE BEEN SUCCESSFUL AND

10:13AM   6    WE CAN MOVE ON.  THERE ARE MANY OTHER ASPECTS TO YOUR MOTION

10:13AM   7    NOW.

10:14AM   8          MR. FERRALL:  RIGHT.

10:14AM   9          THE COURT:  THIS IS THE ONE YOU DEVOTED MOST OF YOUR

10:14AM  10    BRIEFING TO.

10:14AM  11          MR. FERRALL:  AND THIS IS THE MOST IMPORTANT ONE.

10:14AM  12          THE COURT:  AND YOU WON.

10:14AM  13          MR. FERRALL:  LET ME JUST POINT OUT WHY, LET'S ASSUME

10:14AM  14    THIS, THE BEHAVIORAL ASPECTS OF THE PARSER GETS THROUGH

10:14AM  15    YOUR HONOR'S ASSESSMENT OF ITS RELEVANCE AND APPLICABILITY AND

10:14AM  16    DISCLOSURE FOR THE '526.

10:14AM  17       I JUST WANT TO POINT OUT WHY THIS OPINION, EVEN TO SAY WHY

10:14AM  18    THIS IS NONSTANDARD BEHAVIOR, SHOULDN'T BE ADMITTED UNDER

10:14AM  19    RULE 702.

10:14AM  20          THE COURT:  OKAY.  THAT'S FINE.

10:14AM  21       AND I REALLY WONDER IF PERHAPS ALL OF THIS NEEDS TO BE THE

10:14AM  22    SUBJECT OF A DIFFERENT MOTION THAT BRINGS IN THE FOCUS OF THE

10:14AM  23    '526, BECAUSE FRANKLY I WAS FOCUSED ON COPYRIGHTABILITY AND ALL

10:14AM  24    OF THOSE ISSUES.

10:14AM  25          MR. FERRALL:  SO WAS I.

10:14AM 1          THE COURT:  AND I, YOU KNOW, I DON'T PROFESS TO KNOW

10:14AM 2    THESE PAPERS AS WELL AS YOU DO, SO I CAN EASILY ACKNOWLEDGE I

10:14AM 3    MISSED SOMETHING, BUT IT SOUNDS LIKE IT JUST WASN'T THERE TO BE

10:14AM 4    FOUND.

10:15AM 5          I'M NOT SURE THAT I'VE GOT ENOUGH DESCRIPTION OF HOW IT

10:15AM 6    FITS INTO THE '526 FOR YOUR ARGUMENT.  I APPRECIATE THAT THE

10:15AM 7    TERM OF NONSTANDARD BEHAVIOR IS PRETTY VAGUE, BUT I DON'T KNOW

10:15AM 8    HOW -- AND THE WITNESS WAS DEPOSED, I DON'T THINK HE REALLY

10:15AM 9    IDENTIFIED WHY IT WAS AN ODDBALL, IN HIS VIEW.

10:15AM 10           MR. FERRALL:  NOT AT ALL.  AND THAT'S THE PROBLEM,

10:15AM 11   YOUR HONOR.

10:15AM 12         AND THAT'S WHY, I MEAN, WELL, HIS EXPLANATION OF

10:15AM 13   NONSTANDARD IS NONTYPICAL.  THAT'S THE EXPLANATION.

10:15AM 14           THE COURT:  BUT IT'S NOT SO DIFFERENT THAN WHEN

10:15AM 15   SOMETHING BECOMES A DE FACTO STANDARD.  SO YOU BOTH ARE

10:15AM 16   WORKING --

10:15AM 17           MR. FERRALL:  IT IS.

10:15AM 18           THE COURT:  YES, I KNOW THAT'S YOUR VIEW, BUT TO ME

10:15AM 19   IT'S FEELING A LOT THE SAME.

10:15AM 20           MR. FERRALL:  HERE'S THE DISTINCTION, YOUR HONOR.

10:15AM 21         DR. BLACK, MR. SEIFERT REVIEWED THOUSANDS AND THOUSANDS OF

10:15AM 22   MATERIAL, HAVE DATA PRESENTED TO THE COURT AND THE JURY ABOUT

10:16AM 23   THE BASIS FOR ITS OPINION.

10:16AM 24         DR. ALMEROTH DID NOTHING FOR THIS.  NOTHING.  THERE IS

10:16AM 25   NOTHING DISCLOSED BEHIND THIS OPINION.

10:16AM 1          THE COURT:  AND I DON'T QUESTION THAT DR. BLACK AND

10:16AM 2   MR. SEIFERT WENT THROUGH ALL OF THAT PAINSTAKING WORK TO GO

10:16AM 3   THROUGH THE DOCUMENTS.  BUT IT'S A LITTLE BIT BESIDE THE POINT

10:16AM 4   BECAUSE WHEN, ULTIMATELY, THEY GIVE ME AN OPINION THAT HAS NO

10:16AM 5   BENCHMARKS IN IT THAT I CAN OBSERVE FOR METHODOLOGY, JUST THE

10:16AM 6   FACT THAT THEY WORKED HARD, I MEAN, I WORKED HARD HERE TOO BUT

10:16AM 7   I'M NOT SURE IT CAME TO ANYTHING.

10:16AM 8          SO THAT'S MY CONCERN AND THAT'S WHERE THIS NON, WHEN IS

10:16AM 9   SOMETHING NOUN STANDARD, WHAT DO I HAVE NONSTANDARD BEHAVIOR.

10:16AM 10         SO I AGREE WITH YOU, THIS MAY NOT COME IN, BUT IT'S NOT

10:16AM 11  UNLIKE THE PROBLEM I IDENTIFIED WITH DR. BLACK.  SO YOU KNOW, I

10:16AM 12  NEED TO BE CONSISTENT HERE.  YOU ARE RIGHT.  I'M LEFT WITH

10:17AM 13  NOTHING HERE.  IT'S NONSTANDARD BECAUSE DR. ALMEROTH SAID IT

10:17AM 14  WAS.

10:17AM 15         MR. FERRALL:  AND THE DIFFERENCE IS AT LEAST WITH DR.

10:17AM 16  BLACK AND MR. SEIFERT, THERE'S A BODY OF DATA AND A TEST THAT

10:17AM 17  THEY ARTICULATE THAT YOU CAN CRITIQUE.  WITH MR. ALMEROTH,

10:17AM 18  THERE IS NO TEST, THERE IS NO DATA, THERE'S NOTHING.

10:17AM 19         THE COURT:  THE REASON THAT I MAY PUT THIS OFF IS

10:17AM 20  THAT I NEED TO KNOW EXACTLY WHAT IT'S GOING TO BE OFFERED FOR

10:17AM 21  IN ORDER TO EVALUATE IT.

10:17AM 22         AND IT APPEARS THAT IT'S BEING OFFERED DIFFERENTLY THAN I

10:17AM 23  HAD ASSUMED.  AND WHEN CISCO IDENTIFIES THE PURPOSE FOR

10:17AM 24  UTILIZING PARAGRAPH 83 FROM THE REPORT, THEN, I MEAN, THEN YOU

10:17AM 25  HAVE A RULE 26 ISSUE AS WELL.

10:17AM  1          AND I REALLY THINK I CAN GIVE YOU A MORE COMPREHENSIVE

10:17AM  2     DECISION IF WE PUT ALL OF THIS INTO A DIFFERENT MOTION.

10:17AM  3          MR. FERRALL:  THEY'RE ENOUGH.

10:18AM  4          THE COURT:  SO I THINK I'M GOING TO DEFER ON THIS

10:18AM  5     NONSTANDARD BEHAVIOR ISSUE.

10:18AM  6          OKAY.  SO WE ARE DONE WITH THE PARSER SOURCE CODE ISSUE.

10:18AM  7     AND YOU WERE GOING -- IS THAT CORRECT?

10:18AM  8          MR. FERRALL:  WE ARE DONE.

10:18AM  9          THE COURT:  THEN MOVING ON TO, AND THEN YOU SAID THAT

10:18AM  10    THERE WAS -- THAT YOU'VE WORKED OUT THE HELP DESK ISSUE.

10:18AM  11         MR. FERRALL:  RIGHT.

10:18AM  12         AND I THINK MR. NELSON CONFIRMED THAT, THAT WITH REGARD TO

10:18AM  13    THE HELP DESCRIPTIONS, THAT WE WERE CONCERNED, AND THE REASON

10:18AM  14    WE BROUGHT THIS MOTION, IS THAT WE WERE CONCERNED THAT

10:18AM  15    DR. ALMEROTH WAS GOING TO TRANSLATE AN OPINION ABOUT THESE HELP

10:18AM  16    DESCRIPTIONS WHICH ARE STRINGS OF TEXT THAT APPEAR ON THE

10:18AM  17    SCREEN INTO AN OPINION THAT THERE WAS COPYING OF SOURCE CODE.

10:19AM  18         AND WHAT I THINK MR. NELSON AND CISCO CONFIRMED IN THEIR

10:19AM  19    OPPOSITION BRIEF IS THAT NO, THEY ARE NOT MAKING A CONTENTION

10:19AM  20    THAT THERE WAS COPYING OF SOURCE CODE, IT'S JUST AN ARGUMENT

10:19AM  21    THAT THEY SAY THEY POINT TO EVIDENCE THAT THIS STRING OF TEXT

10:19AM  22    APPEARS IN THE ARISTA SOURCE CODE, BUT OF COURSE IT DOES

10:19AM  23    BECAUSE YOU HAVE TO HAVE CODE THAT SAYS PRINT THIS TEXT.

10:19AM  24         SO AS LONG AS THERE'S NOT ANY INSINUATION OF SOURCE CODE

10:19AM  25    COPYING, THEN THAT'S NOT THE SUBJECT, THEN THIS MOTION IS

10:19AM 1    RESOLVED.  WE HAVE OTHER PROBLEMS, OF COURSE, BUT THAT RESOLVES

10:19AM 2    THIS MOTION.

10:19AM 3        THE OTHER THING I WANTED TO POINT OUT THAT I THINK IS

10:19AM 4    CONCEDED, HAS TO DO WITH THE LOOK AND FEEL OPINION.  AND THERE

10:19AM 5    OUR MOTION, AGAIN, WASN'T TO TRY TO ELIMINATE ANY MENTION OF

10:19AM 6    LOOK AND FEEL ALL TOGETHER, BUT WE WANTED TO MAKE SURE THAT DR.

10:20AM 7    ALMEROTH DIDN'T HAVE A LOOK AND FEEL OPINION THAT EXTENDED

10:20AM 8    BEYOND THE CLI ELEMENTS THAT WE HAVE BEEN SPENDING A

10:20AM 9    YEAR-AND-A-HALF LITIGATING.

10:20AM 10        THE COURT:  OKAY.

10:20AM 11        MR. FERRALL:  AND THEY HAVE CONCEDED THAT TOO IN

10:20AM 12    THEIR OPPOSITION.  SO I THINK THAT TOO IS RESOLVED.

10:20AM 13        THE COURT:  AND THAT'S ALL THAT YOU WERE LOOKING FOR

10:20AM 14    THERE.

10:20AM 15        MR. FERRALL:  RIGHT.  AND WE DID HAVE SOME OTHER

10:20AM 16    PARTS, BUT GIVEN THE TIMING AND GIVEN THE IMPORTANCE OF OTHER

10:20AM 17    ISSUES THAT WE WANT TO RAISE TODAY, I'M GOING TO SUBMIT THE

10:20AM 18    OTHER ISSUES ON THE PAPERS, UNLESS YOUR HONOR HAS QUESTIONS.

10:20AM 19        THE COURT:  OKAY.

10:20AM 20        WELL, THE REMAINING ISSUES, WELL, THERE WAS THE COPYING OF

10:20AM 21    THE TECHNICAL DOCUMENTS.

10:20AM 22        MR. FERRALL:  RIGHT.

10:20AM 23        THE COURT:  DID YOU WANT TO --

10:20AM 24        MR. FERRALL:  SURE.  THE POINT THERE IS SIMPLY THAT

10:20AM 25    DR. ALMEROTH DOESN'T OFFER ANY ACTUAL EXPERT TESTIMONY ON IT.

10:20AM  1          AND IT'S INTERESTING BECAUSE DR. ALMEROTH THERE, HE CLAIMS

10:20AM  2    EXPERTISE IN DETECTING PLAGIARISM.  HE TALKS ABOUT A PROGRAM

10:21AM  3    THAT HE'S DEVELOPED FOR DETECTING PLAGIARISM.  BUT HE DIDN'T

10:21AM  4    USE THIS PROGRAM, HE DIDN'T USE THIS TOOL, HE DIDN'T USE ANY

10:21AM  5    TOOL.  HE DOESN'T DO ANYTHING OTHER THAN LOOK AT SIMILARITY AND

10:21AM  6    TEXT AND CONCLUDE THAT THERE WAS COPYING.  AND THAT SEEMS LIKE

10:21AM  7    THE JURY CAN DO THAT AS EASILY AS DR. ALMEROTH.

10:21AM  8          THE COURT:  WELL, YOU KNOW, THAT WAS YOUR ARGUMENT,

10:21AM  9    IT WAS REALLY A LAY COMPARISON.  I AM -- IN THE CONTEXT OF A

10:21AM  10   CASE OF THIS COMPLEXITY, I THINK THAT PLACES TOO MUCH OF A

10:21AM  11   BURDEN ON A JURY.

10:21AM  12         YOU KNOW, YOU ARE GOING TO LINE THE WALLS OF THIS COURTROOM

10:21AM  13   WITH EXHIBITS OR FILL UP A LOT OF THUMB DRIVES WITH DOCUMENTS.

10:21AM  14         AND SO PUTTING -- WHEN AN EXPERT CAN COME IN AND WALK THE

10:21AM  15   JURY THROUGH IT, I THINK THAT IS -- I THINK I'M MORE WILLING TO

10:21AM  16   LET AN EXPERT DO THAT.

10:21AM  17         YOU DON'T SUGGEST THAT WHAT HE'S DOING IS INCORRECT, YOU

10:22AM  18   JUST SAY WE DON'T NEED AN EXPERT.  I THINK MY DISCRETION THERE

10:22AM  19   IS PRETTY BROAD AS TO WHETHER I WILL ALLOW HIM TO DO THAT.  I

10:22AM  20   WAS INCLINED TO DENY THAT PORTION AND LET HIM WALK THROUGH HIS

10:22AM  21   COMPARISON, THEN YOU CAN CROSS-EXAMINE HIM ON THAT.

10:22AM  22         THE OTHER ISSUES WERE SUMMARIZING FACTS AND THE VOUCHING.

10:22AM  23   AND ON THOSE, I AM REALLY JUST GOING TO DEFER ANY RULING

10:22AM  24   BECAUSE CISCO IS ON NOTICE, IF THEY ASK THE QUESTION IN THE

10:22AM  25   WRONG WAY, I WANT YOU TO OBJECT.  I WOULD CERTAINLY SUSTAIN A

10:22AM 1    PROPER OBJECTION THERE, BUT I CAN'T -- IT'S TOO GENERAL AN

10:22AM 2    OBJECTION FOR ME TO SUSTAIN NOW.

10:22AM 3              MR. FERRALL:  FAIR ENOUGH.  AND I THINK BOTH PARTIES

10:22AM 4    AGREED ON THAT ISSUE ABOUT VOUCHING AND SUBJECTIVE --

10:22AM 5              THE COURT:  I THINK SO.

10:22AM 6              MR. FERRALL:  RIGHT.

10:22AM 7              THE COURT:  OKAY.  NOW, MR. PAK, IS THERE MORE THAT

10:22AM 8    YOU WANT TO ADDRESS ON THIS OR ACTUALLY HAVE WE WORKED ALL THIS

10:22AM 9    OUT?

10:22AM 10             MR. PAK:  NO, I THINK WE WOULD LIKE TO MOVE ON TO THE

10:23AM 11   DAMAGES SIDE OF THE CASE, YOUR HONOR, AT THIS POINT.

10:23AM 12             THE COURT:  OKAY.  SO, LET'S SEE, SO I'M GOING TO

10:23AM 13   HAVE DR. CLARK ON THE PATENT AND THEN THE DAMAGES.

10:23AM 14             MR. PAK:  YES.  WE COULD ACTUALLY HAVE DR. CLARK'S

10:23AM 15   ISSUE INVOLVED NOW IF YOU WOULD LIKE.

10:23AM 16             THE COURT:  I WAS ACTUALLY LOOKING WHETHER TO SEE IF

10:23AM 17   THIS WOULD BE A GOOD TIME TO TAKE A BREAK, BECAUSE IT'S PRETTY

10:23AM 18   DENSE STUFF.

10:23AM 19             MR. PAK:  ABSOLUTELY.  THANK YOU VERY MUCH.

10:23AM 20             THE COURT:  OKAY.  ALL RIGHT.  LET'S JUST TAKE A

10:23AM 21   TEN-MINUTE BREAK AND THEN WE WILL DO THE REMAINING.

10:23AM 22       (WHEREUPON A RECESS WAS TAKEN.)

10:32AM 23             THE COURT:  WHICH MOTION ARE WE GOING TO MOVE ON TO,

10:32AM 24   MR. PAK?

10:32AM 25             MR. PAK:  YOUR HONOR, ACTUALLY GIVEN THE LIMITED

10:32AM  1    AMOUNT OF TIME, WE THOUGHT WE WOULD START WITH        DR.

10:32AM  2    ELSTEN'S MOTION.

10:32AM  3              THE COURT:  OKAY.  GREAT.

10:33AM  4              MR. PAK:  AND WE CAN GO OVER SOME OF THE DAMAGES

10:33AM  5    QUESTIONS THAT YOUR HONOR MENTIONED.

10:33AM  6              THE COURT:  AND LET ME JUST CHANGE MY MIND SET HERE.

10:33AM  7        SO DR. ELSTEN'S OPINIONS HAVE TO DO WITH THE TEST FOR

10:33AM  8    DISGORGEMENT; IS IT LIMITED TO THAT?

10:33AM  9              MR. PAK:  THE OPINIONS THAT WE ARE CHALLENGING,

10:33AM 10    YOUR HONOR, TODAY, AT LEAST THE FOCUS OF MY ARGUMENTS WILL BE

10:33AM 11    FOCUSED ON THE DISGORGEMENT ANALYSIS ISSUE.

10:33AM 12              THE COURT:  OKAY.  SO THAT IS ONLY A BENCH ISSUE,

10:33AM 13    ISN'T IT?

10:33AM 14              MR. PAK:  IT IS NOT, YOUR HONOR.

10:33AM 15        SO IF YOUR HONOR WOULD LIKE SEPARATE BRIEFING ON THAT,

10:33AM 16    BECAUSE THIS WAS REALLY RAISED IN THE CONTEXT OF A DAUBERT, BUT

10:33AM 17    I CAN GIVE YOU NINTH CIRCUIT CASES THAT HAVE DEALT WITH

10:33AM 18    DISGORGEMENT OF PROFITS WHERE THE JURY WAS PROVIDED

10:33AM 19    INSTRUCTIONS AND THERE WAS A FINDING OF JURY VERDICT.  SO THIS

10:33AM 20    IS THE THREE BOYS MUSIC CORPORATION CASE.  THIS IS THE *LOVE IS*

10:33AM 21    *A WONDERFUL THING* BY MICHAEL BOLTON, WAS THE SONG AT ISSUE IN

10:34AM 22    THAT CASE.  AND THERE WAS A -- I DON'T KNOW IF YOUR HONOR

10:34AM 23    REMEMBERS, BUT THE ISLEY BROTHERS HAD THEIR VERSION IN THE 70'S

10:34AM 24    AND MICHAEL BOLTON CAME IN, DID HIS RENDITION IN THE 80'S.

10:34AM 25              THE COURT:  I'M WITH YOU ON THOSE.

10:34AM 1          MR. PAK:  SO WHAT HAPPENED IN THAT CASE, YOUR HONOR,

10:34AM 2     WAS THE JURY WAS INSTRUCTED ON THE BURDEN SHIFTING UNDER

10:34AM 3     504(B).  THE DAMAGES EXPERT, JUST THE SAME FRAMEWORK WE ARE

10:34AM 4     LAYING OUT HERE.

10:34AM 5          THE COURT:  OKAY.  AND THAT WAS RAISED IN THE ARISTA

10:34AM 6     BRIEF.  AND SO I WANTED TO -- SO LET'S MOVE ON.

10:34AM 7          MR. PAK:  IF YOUR HONOR WANTS BRIEFING ON THAT, WE

10:34AM 8     CAN ABSOLUTELY GIVE YOU LOTS OF NINTH CIRCUIT CASES ON THAT.

10:34AM 9          THE COURT:  NO, YOU HAVE GIVEN ME ENOUGH BRIEFING.

10:34AM 10         MR. PAK:  ALL RIGHT.

10:34AM 11         THE COURT:  SO THE FIRST THING IS GETTING THE PROPER

10:34AM 12    TEST.

10:34AM 13         MR. PAK:  YES.

10:34AM 14         THE COURT:  AND SO, THAT HAS TO DO WITH, SO I'M GOING

10:35AM 15    TO HAVE TO ACTUALLY DETERMINE THE LEGAL STANDARD SO THAT I CAN

10:35AM 16    EVALUATE DR. ELSTEN'S OPINION.

10:35AM 17         MR. PAK:  CORRECT.

10:35AM 18         THE COURT:  BECAUSE IF SHE DIDN'T APPLY -- THAT'S

10:35AM 19    WHAT YOU ARE ARGUING, ISN'T IT?

10:35AM 20         MR. PAK:  THAT'S RIGHT, YOUR HONOR.

10:35AM 21       SO THERE ARE TWO ISSUES GOING ON, YOUR HONOR.  AND I THINK

10:35AM 22    THERE'S AN OVERALL ISSUE WITH RESPECT TO THE FRAMEWORK OF HOW

10:35AM 23    DISGORGEMENT SHOULD BE PRESENTED TO THE JURY, AND THAT'S AN

10:35AM 24    ISSUE THAT TOUCHES UPON DOCTOR ELSTEN, BUT IT ALSO TOUCHES

10:35AM 25    ABOUT DR. CHEVALIER.

10:35AM 1          THE COURT:  SURE.

10:35AM 2          MR. PAK:  AND WE MADE IT VERY CLEAR OUR POSITION,

10:35AM 3   WHICH TRACKS JUDGE ALSUP'S ORDER IN THE ORACLE V. GOOGLE CASE,

10:35AM 4   TRACKS THE NINTH CIRCUIT CASE LAW FROM THREE BOYS CORPORATION,

10:35AM 5   HARPER'S ROW FROM THE SUPREME COURT, AND THAT IS IN COPYRIGHT

10:35AM 6   LAW, THE ISSUE OF DISGORGEMENT OF PROFITS, THE BURDEN RESIDES

10:35AM 7   WITH THE DEFENDANT.

10:35AM 8          THE COURT:  TO APPORTION.

10:36AM 9          THE WITNESS:  TO APPORTION.

10:36AM 10         THE COURT:  I DON'T THINK THAT'S DISPUTED.

10:36AM 11         MR. PAK:  IT'S A LITTLE BIT OF A DISPUTE IN THE

10:36AM 12  CHEVALIER MOTIONS.

10:36AM 13         THE COURT:  THE ISSUE WAS CAUSAL NEXUS.

10:36AM 14         MR. PAK:  THERE'S CAUSAL NEXUS --

10:36AM 15         THE COURT:  AND YOU DON'T DISAGREE?  YOUR REPLY BRIEF

10:36AM 16  YOU ACKNOWLEDGE.

10:36AM 17         MR. PAK:  WE HAVE A CAUSAL NEXUS BURDEN, HOWEVER IN

10:36AM 18  THE CASE OF DIRECT PROFITS, SO THIS IS A VERY DIFFERENT CASE

10:36AM 19  THAN THE ORACLE V. GOOGLE CASE.  DIRECT PROFITS IS A DIFFERENT

10:36AM 20  CASE THAN THE INDIRECT PROFITS AT ISSUE IN THE ORACLE V. GOOGLE

10:36AM 21  CASE.

10:36AM 22     IF YOU RECALL IN THE ORACLE V. GOOGLE, GOOGLE DOESN'T MAKE

10:36AM 23  MONEY WILL SELLING ANDROID.  THEY DERIVE INDIRECT PROFITS BY

10:36AM 24  SELLING ADVERTISING, SEARCH ENGINE REVENUES AND SO FORTH.

10:36AM 25     IN THIS CASE, WE ARE TALKING ABOUT DIRECT PROFITS THAT

10:36AM 1    ARISTA MAKES BY SELLING THE EOS OPERATING SYSTEM WHICH IS

10:36AM 2    EMBODIED IN THEIR NETWORKING EQUIPMENT.  SO THE PRODUCTS THAT

10:36AM 3    EMBODY THE COPYRIGHTED WORK, IS GENERATING THE REVENUE.

10:36AM 4        AND THE NINTH CIRCUIT LAW IS VERY CLEAR ON THIS, AND I

10:36AM 5    DON'T THINK THIS IS A CONTESTED POINT, THAT WE CAN DISCHARGE

10:37AM 6    OUR CAUSAL NEXUS BURDEN BY SHOWING REVENUES THAT ARE DIRECTLY

10:37AM 7    ATTRIBUTABLE TO THE PRODUCTS THAT EMBODY THE COPYRIGHT.

10:37AM 8            THE COURT:  SO I LOOKED AT THE POLAR BEAR CASE, AND

10:37AM 9    FOOTNOTE 7 THAT I BELIEVE ARISTA POINTED OUT TO ME, AND IT

10:37AM 10   SEEMS TO INDICATE THAT SECTION 504 DOESN'T ACTUALLY DISTINGUISH

10:37AM 11   BETWEEN DIRECT AND INDIRECT PROFITS AND DOES REQUIRE A SHOWING

10:37AM 12   OF CAUSAL NEXUS.  AND JUDGE MCCUNE IN POLAR BEAR, THEN IN

10:37AM 13   FOOTNOTE 7 SEEMS TO REJECT THE IDEA THAT NO CAUSAL NEXUS NEED

10:37AM 14   BE SHOWN BY THE PLAINTIFF.

10:37AM 15           MR. PAK:  YOUR HONOR, THAT'S ALL TRUE, BUT THEN WHAT

10:37AM 16   YOU HAVE TO DO IS LOOK AT ALL THE CASE LAW IN THE NINTH CIRCUIT

10:37AM 17   THAT APPLIES POLAR BEAR, THAT APPLIES 504(B).  AND WHEN IT

10:37AM 18   COMES TO DIRECT PROFITS, THE NINTH CIRCUIT CASES HAVE ALL

10:37AM 19   INDICATED THAT THE PLAINTIFF DISCHARGES THE CAUSAL NEXUS BURDEN

10:38AM 20   BY SHOWING THAT THE REVENUES GENERATED ARE REVENUES GENERATED

10:38AM 21   DIRECTLY FROM THE SALE OF THE PRODUCTS THAT EMBODY THE

10:38AM 22   COPYRIGHTED WORKS.

10:38AM 23       AND THOSE ARE ALL THE CASES WE CITED YOUR HONOR IN THE

10:38AM 24   CAUSAL NEXUS CASES

10:38AM 25           SO AS A BROAD PRINCIPLE, YES, THE CAUSAL NEXUS IS A LEGAL

10:38AM  1    BURDEN THAT IS ON THE PLAINTIFF.  BUT IN DISCHARGING THAT

10:38AM  2    BURDEN, THIS IS THE BROCADE COMMUNICATIONS V.  A10 NETWORKS

10:38AM  3    CASE, TO RECOVER DISGORGEMENT OF DIRECT PROFITS, A PLAINTIFF

10:38AM  4    MAY SATISFY AS A CAUSAL LINK REQUIREMENT BY SHOWING THE GROSS

10:38AM  5    REVENUES FROM THE INFRINGING PRODUCT.

10:38AM  6            THE COURT:  OKAY.

10:38AM  7            MR. PAK:  THAT'S THE REASON WHY ALL THIS OTHER CASE

10:38AM  8    LAW ABOUT INDIRECT PROFITS IS REALLY NOT APPLICABLE TO THIS

10:38AM  9    CASE.  WE ARE ONLY SEEKING DIRECT PROFITS FROM THE SALE OF

10:38AM  10   PRODUCTS.

10:38AM  11       SO WITH THAT YOUR HONOR, LET ME FOCUS YOUR HONOR'S

10:38AM  12   ATTENTION ON THE SPECIFIC METHODOLOGY ISSUE THAT WE HAVE WITH

10:38AM  13   DR. ELSTEN IN OUR DISGORGEMENT OF PROFITS ANALYSIS.

10:38AM  14       IF YOU LOOK AT OUR PRESENTATION SLIDE 2, AND I BELIEVE

10:39AM  15   YOUR HONOR IS VERY FAMILIAR WITH THIS CASE LAW IN THE CONTEXT

10:39AM  16   OF THE FINJAN CASE THAT YOUR HONOR DEALT WITH WHERE YOU HAVE

10:39AM  17   VERY IMPORTANT CASE LAW THAT LOOKED AT THE QUESTION OF

10:39AM  18   APPORTIONMENT.

10:39AM  19       CERTAINLY IN THAT CASE IT WAS APPORTIONMENT OF PATENT

10:39AM  20   DAMAGES, BUT WE THINK THE LEGAL PRINCIPLES APPLY HERE AS WELL

10:39AM  21   FROM A METHODOLOGY STANDPOINT, WHICH IS, IS IT PERMISSIBLE FOR

10:39AM  22   AN EXPERT TO COME IN AND SIMPLY COUNT THE NUMBER OF FEATURES IN

10:39AM  23   A PRODUCT AND THEN DO A DIVISION WITH THE DENOMINATOR BEING THE

10:39AM  24   NUMBER OF FEATURES IN ORDER TO ARRIVE AT A VALUATION OPINION.

10:39AM  25            THE COURT:  SO YOU DO KNOW THAT IN THE FINJAN TRIAL I

10:39AM 1    ALLOWED THAT EVIDENCE TO COME IN AND THE EXPERT DID TESTIFY

10:39AM 2    THAT OF THE 24 ELEMENTS, SHE JUST COUNTED THEM, AND THAT'S WHAT

10:39AM 3    WENT TO THE JURY.

10:39AM 4         MR. PAK:  THAT'S RIGHT, YOUR HONOR.

10:39AM 5       BUT YOUR HONOR ALSO NOTED VERY IMPORTANTLY THAT THE KEY

10:39AM 6    ISSUE IS THE FOUNDATION OF FACTS QUESTION.

10:39AM 7       AND WHAT YOUR HONOR FOUND IN THAT CASE IS THERE WAS AT

10:40AM 8    LEAST A DISPUTED FACT AS TO WHETHER FOUNDATIONAL FACTS COULD BE

10:40AM 9    LAID PROPERLY AT TRIAL, AND YOUR HONOR ALLOWED THAT ISSUE TO GO

10:40AM 10   TO TRIAL.

10:40AM 11      HERE, WE HAVE A VERY DIFFERENT SITUATION.  THIS IS SLIDE 4,

10:40AM 12   OF OUR PRESENTATION.  WE DEPOSED DR. ELSTEN.  BECAUSE SHE DOES

10:40AM 13   NO ANALYSIS WHATSOEVER INTO THE FOUNDATIONAL FACTS.  AND THE

10:40AM 14   FOUNDATIONAL FACTS HERE ARE THE RELATIVE VALUATION, AND THIS IS

10:40AM 15   THE FRANK MUSIC CASE WE CITED YOUR HONOR FROM THE

10:40AM 16   NINTH CIRCUIT, QUANTITATIVE ANALYSIS ALONE ISN'T SUFFICIENT,

10:40AM 17   YOU HAVE TO LOOK AT THE QUALITATIVE ASSESSMENT OF, ARE THESE

10:40AM 18   FEATURES -- SOME OF THESE FEATURES MORE VALUABLE THAN OTHER

10:40AM 19   FEATURES?

10:40AM 20      BECAUSE I COULD HAVE A LIST OF A HUNDRED FEATURES AND I

10:40AM 21   JUST DO A DIVISION BY 100 AND IT'S NOT GOING TO SUPPORT A

10:40AM 22   FINDING OF VALUATION OF ONE PERCENT.

10:40AM 23      SO HERE WE SAW NO ANALYSIS IN HER REPORT THAT EVEN

10:40AM 24   ATTEMPTED TO DO A VALUATION OF THESE FEATURES RELATIVE TO EACH

10:40AM 25   OTHER.

10:40AM 1          AND IN FACT, WHEN SHE WAS ASKED THIS QUESTION IN HER

10:40AM 2    DEPOSITION, PAGE 213, IN DOING THOSE CALCULATIONS IN TABLE 13,

10:41AM 3    TABLE 13 SUMMARIZES ALL OF OUR EVIDENCE WITH RESPECT TO THIS

10:41AM 4    ISSUE OF THE VALUATION ON 12.5 PERCENT, WE ASKED HER, YOU HAVE

10:41AM 5    TREATED EACH OF THESE FEATURES IN THE TOTAL FEATURES

10:41AM 6    CALCULATIONS AS BEING OF EQUAL WEIGHT; IS THAT CORRECT?  YES.

10:41AM 7          AND THIS IS THE KEY IMPORTANT ISSUE, YOU HAVE NOT ATTEMPTED

10:41AM 8    TO ASCERTAIN WHETHER ANY OF THESE FEATURES SHOULD BE GIVEN MORE

10:41AM 9    OR LESS WEIGHT THAN THE OTHER FEATURES; IS THAT CORRECT?  NOT

10:41AM 10   FOR THE PURPOSE OF THIS CALCULATION.

10:41AM 11         THAT IS A DISPOSITIVE ADMISSION THAT THIS EXPERT SIMPLY

10:41AM 12   COUNTED THE FEATURES FOR THE PURPOSE OF ARRIVING AT

10:41AM 13   12.5 PERCENT WITHOUT EVEN LOOKING INTO THE FOUNDATIONAL FACTS.

10:41AM 14         AND WE COULD EVEN ANALOGIZE THIS CASE, YOUR HONOR, TO -- AS

10:41AM 15   YOUR HONOR KNOWS IN PATENT CASES, WE DO ENGAGE IN SURVEYS, WE

10:41AM 16   DO LOOK INTO OTHER METHODOLOGIES THAT HAVE BEEN WELL APPROVED

10:41AM 17   BY THE FEDERAL CIRCUIT AND THE NINTH CIRCUIT FOR ASCERTAINING

10:41AM 18   VALUATION, NOT SIMPLY COUNTING UP FEATURES.

10:42AM 19         THEY COULD HAVE DONE CUSTOMER SURVEYS TO UNDERSTAND WHERE

10:42AM 20   DOES CLI RANK.  AND I THINK MR. NELSON PUT IT APTLY, WHICH IS,

10:42AM 21   WE DON'T KNOW THE ANSWER TO THE QUESTION OF IF YOU TOOK THE

10:42AM 22   CISCO CLI OUT, WOULD ANY OF THESE SALES FROM ARISTA HAVE TAKEN

10:42AM 23   PLACE OR SALES OF OTHER COMPARABLE PRODUCTS IN THE MARKETPLACE.

10:42AM 24         THAT QUESTION WAS NEVER ANSWERED.  AND I DEPOSED MR. SADANA

10:42AM 25   WHO WAS THEIR SENIOR VICE PRESIDENT, THEIR 30(B)(6) DEPONENT ON

10:42AM  1    DAMAGES, I ASKED HIM SPECIFICALLY, HOW ARE THESE DECISIONS

10:42AM  2    BEING MADE BY CUSTOMERS?  DO YOU HAVE ANY VISIBILITY?

10:42AM  3        AND HE SAYS, IN TERMS OF THE RELATIVE RANKINGS OF ALL THE

10:42AM  4    DIFFERENT FEATURES, IT'S A BLACK BOX.  WE DON'T KNOW.  THEY

10:42AM  5    DON'T TELL US.  THEY MAY TELL US CERTAIN FEATURES THAT MAYBE --

10:42AM  6            THE COURT:  SO THE SWITCHES ARE NOT CUSTOM SWITCHES?

10:42AM  7            MR. PAK:  THEY ARE NOT CUSTOM SWITCHES.

10:42AM  8        SO THESE ARE, FOR THE MOST PART -- THERE ARE CERTAIN CUSTOM

10:42AM  9    SWITCHES WHERE, FOR EXAMPLE, EARLY ON IN THE PROCESS THEY MAY

10:42AM 10    GET SOME FEEDBACK FROM CUSTOMERS.

10:43AM 11            THE COURT:  SO THERE ISN'T AN RFQ OR ANYTHING LIKE

10:43AM 12    THAT.

10:43AM 13            MR. PAK:  THERE'S AN RFP, IN THE SENSE THAT THEY ARE

10:43AM 14    LOOKING FOR CERTAIN TYPES OF FEATURES THAT THEY WANT TO SEE

10:43AM 15    WHETHER YOUR COMMODITY SWITCHES MEET THOSE REQUIREMENTS AND

10:43AM 16    THERE MAY BE NEGOTIATION AROUND PRICE.

10:43AM 17        BUT THIS IS NOT A SITUATION WHERE ARISTA IS BUILDING A

10:43AM 18    SPECIFIC SWITCH FOR GOOGLE OR A SPECIFIC SWITCH FOR FACEBOOK.

10:43AM 19    THEY MAY BE ASKED TO COMPETE FOR BIDS, BUT THEY ARE ALWAYS

10:43AM 20    USING THEIR GENERIC --

10:43AM 21            THE COURT:  SO THEY IDENTIFY THE GENERAL FEATURES THE

10:43AM 22    GENERIC SWITCH HAS.

10:43AM 23            MR. PAK:  THAT'S RIGHT.

10:43AM 24            THE COURT:  OKAY.

10:43AM 25            MR. PAK:  SO I ASKED THEM, HOW CAN YOU TELL WHAT WAS

10:43AM  1    IMPORTANT TO A PARTICULAR CUSTOMER?

10:43AM  2        AND HE SAYS, I DON'T KNOW THE ANSWER TO THAT QUESTION, NO

10:43AM  3    ONE KNOWS THE ANSWER TO THAT QUESTION, IT'S SUBJECTIVE,

10:43AM  4    INDIVIDUALIZED, MANY OF THE CUSTOMERS WON'T EVEN TELL YOU WHY

10:43AM  5    THEY SELECTED A PRODUCT.

10:43AM  6        NOW, THEY DO PICK -- ARISTA DOES CHERRY PICK SOME DOCUMENTS

10:43AM  7    WHERE ARISTA CUSTOMERS HAVE SAID, YOU KNOW, I LIKE THAT

10:43AM  8    FEATURE, YOU KNOW, I LIKE THE FACT THAT YOU HAVE LOW LATENCY,

10:43AM  9    BUT I LIKE THE FACT THAT YOU CAN RECONFIGURE.

10:44AM  10        BUT THAT DOESN'T TELL US ANYTHING ABOUT THE RELATIVE

10:44AM  11    RANKING OF THESE FEATURES WHATSOEVER, BECAUSE THE PROBLEM WE

10:44AM  12    ARE HAVING, YOUR HONOR, IS OUR BELIEF IS THEY COPIED OUR CLI TO

10:44AM  13    A LARGE EXTENT, SO WHEN YOU HAVE TWO PRODUCTS WITH THE SAME

10:44AM  14    CLI, LOOK AND FEEL TO THE USER, WHY WOULD THE CUSTOMER TELL YOU

10:44AM  15    THAT THE CLI WAS AN IMPORTANT DIFFERENTIATOR?

10:44AM  16            THE COURT:  RIGHT.

10:44AM  17            MR. PAK:  THEY WOULDN'T.  THAT'S THE POINT.  THAT'S

10:44AM  18    THE BARRIER TO ENTRY.

10:44AM  19        IF YOU WERE ASKED THE QUESTION, IF I WERE TO TAKE AWAY THAT

10:44AM  20    FEATURE, THAT CLI FEATURE, WOULD YOU HAVE EVEN CONSIDERED ANY

10:44AM  21    OF THE OTHER FEATURES?

10:44AM  22        AND MR. SADANA SAYS, I DON'T KNOW THE ANSWER TO THAT

10:44AM  23    QUESTION WITH CERTAINTY, BUT I KNOW THAT FROM ARISTA'S

10:44AM  24    PERSPECTIVE, HAVING A CISCO-LIKE CLI WAS A BARRIER TO ENTRY

10:44AM  25    INTO THE MARKETPLACE.

10:44AM 1    NONE OF THAT IS REFLECTED, YOUR HONOR, IN DR. ELSTEN'S

10:44AM 2  APPORTIONMENT METHODOLOGY WHERE SHE TAKES JUST ONE DOCUMENT OUT

10:44AM 3  OF MANY, FINDS THAT THERE'S ONE DOCUMENT THAT HAD EIGHT

10:44AM 4  FEATURES, OTHERS OTHER DOCUMENTS HAD FIVE, OTHER DOCUMENTS HAD

10:44AM 5  10, 12, FEATURES, AND THESE SWITCHES HAVE MANY, MANY FEATURES,

10:45AM 6  ALL OF THEM HAVE DOZENS, HUNDREDS OF FEATURES.

10:45AM 7    SHE SELECTS ONE DOCUMENT AND SAYS, WELL, THIS DOCUMENT HAS

10:45AM 8  EIGHT FEATURES.  SO I'M GOING TO TAKE CLI, WHICH IS ONE OF THE

10:45AM 9  LISTED FEATURES, DIVIDE IT BY EIGHT TO GET TO 12.5.

10:45AM 10    SHE DOES NO FURTHER ANALYSIS AT ALL.  NO FOUNDATIONAL FACTS

10:45AM 11  INQUIRY INTO WHETHER THESE FACTORS WOULD HAVE BEEN TREATED

10:45AM 12  EQUALLY OR WHETHER ANY ONE OF THEM SHOULD BE GIVEN RANKING OR

10:45AM 13  NOT.

10:45AM 14    SO YOUR HONOR IS ABSOLUTELY CORRECT IN THE FINJAN CASE TO

10:45AM 15  NOTE THE IMPORTANT PRECEDENT IN THIS DISTRICT, THE STRAGENT

10:45AM 16  CASE, THE GOOD TECH CASE WHICH IS A NORTHERN CALIFORNIA CASE

10:45AM 17  ABOUT NOT ALLOWING EXPERTS TO COME IN WITH THIS TYPE OF

10:45AM 18  METHODOLOGY UNLESS THERE'S FOUNDATIONAL FACTS.

10:45AM 19    THE DIFFERENCE HERE BETWEEN THIS CASE AND THE FINJAN CASE

10:45AM 20  IS THE FINJAN CASE THEY HAD DR. MEDVIDOVIC AND DR. LAYNE-FARRAR

10:45AM 21  THAT WENT INTO SOME OF THAT.

10:45AM 22    THIS IS NOT THAT CASE.  THIS IS VERY CLEAR THAT SHE MADE NO

10:46AM 23  ATTEMPT, AND IN FACT, IT WOULD HAVE BEEN VERY DIFFICULT TO DO

10:46AM 24  THAT ON THE FACTUAL RECORD.

10:46AM 25    SO TO US, THIS IS A CLEAR CUT ISSUE.  WE DON'T THINK SHE'S

10:46AM 1    GOT ANY BASIS TO DO ANY RELATIVE RANKING.  TO THE EXTENT THEY

10:46AM 2    ARE COMING IN AND SAYING THERE'S SOME DOCUMENTS THAT SHOW

10:46AM 3    RELATIVE VALUATION BECAUSE THE FEATURE WAS MENTIONED OR NOT,

10:46AM 4    THAT THAT IS NOT PROBATIVE AT ALL TO THE INTERNAL RANKING

10:46AM 5    WITHIN A CUSTOMER.  AND THE BURDEN HERE, AGAIN, IS ON THEM.

10:46AM 6          THE COURT:  YEAH.

10:46AM 7          MR. PAK:  THEY SHOULD HAVE DONE THE SURVEY, THEY

10:46AM 8    SHOULD HAVE GOTTEN CUSTOMER DISCOVERY IF THEY WANTED TO PROVIDE

10:46AM 9    THIS TYPE OF EVIDENCE.

10:46AM 10       I WILL JUST REMIND YOUR HONOR THAT THE FRANK MUSIC CASE AND

10:46AM 11   THE HARPER ROW CASE IS VERY CLEAR WHY WE HAVE THIS LAW OF

10:46AM 12   BURDEN SHIFTING.  WHEN YOU COMINGLE INFRINGING WITH NON

10:46AM 13   INFRINGING CONTRIBUTIONS IN A COPYRIGHTED WORK, THE ACCUSED

10:46AM 14   INFRINGER BEARS THE BURDEN THAT IF THEY ARE SUED ON THAT

10:46AM 15   COPYRIGHT INFRINGEMENT, THEY HAVE TO HAVE A CLEAR AND SOUND

10:46AM 16   METHODOLOGY FOR PROVING UP PROFITS WITH RESPECT TO THEIR

10:46AM 17   CONTRIBUTIONS.

10:46AM 18       IT'S A POLICY DECISION THAT'S BEEN CODIFIED INTO STATUTE.

10:47AM 19   IT'S BEEN WELL ADOPTED AND ENDORSED BY ALL THE COURTS LOOKING

10:47AM 20   AT THIS ISSUE, AND THIS TYPE OF METHODOLOGY, AS A METHODOLOGY

10:47AM 21   ISSUE, NOT A FACTUAL ISSUE, IS FUNDAMENTALLY FLAWED,

10:47AM 22   YOUR HONOR.  THAT'S WHY WE ASK DR. ELSTEN'S DISGORGEMENT

10:47AM 23   OPINIONS BE STRUCK.

10:47AM 24          THE COURT:  SO LET ME JUST ASK YOU BASED ON -- OF

10:47AM 25   COURSE IN FINJAN I ALLOWED FINJAN THE OPPORTUNITY TO LAY THAT

10:47AM 1    FOUNDATION, WHY SHOULDN'T I DO THE SAME THING HERE?

10:47AM 2          MR. PAK:  BECAUSE YOUR HONOR, SHE HASN'T DONE THAT.

10:47AM 3      SO IN THAT CASE DR. FERRAR RELIED ON DR. MEDVIDOVIC WHO WAS

10:47AM 4    A SEPARATE TECHNICAL EXPERT WHO LOOKED AT VALUATION OF

10:47AM 5    TECHNOLOGIES, AND I THINK YOUR HONOR HAD SOME CONCERNS ABOUT

10:47AM 6    HIS OPINIONS AS WELL, BUT AT LEAST THERE WAS AN OPPORTUNITY FOR

10:47AM 7    DR. FARRAR TO SAY, I DIDN'T DO THE RELATIVE RANKING MYSELF BUT

10:47AM 8    SOMEBODY ELSE DID, AND I TOOK THAT INTO CONSIDERATION IN COMING

10:47AM 9    UP WITH MY OPINION THAT THESE SHOULD BE EQUALLY VALUED.

10:47AM 10      AND IN THAT CASE IT WAS A MULTI-FACETTED SECURITY PRODUCT,

10:48AM 11    YOUR HONOR HEARD ABOUT THIS DEFENSE IN DEPTH, EVERY ONE OF

10:48AM 12    THOSE FEATURES IS IMPORTANT WHEN PROVIDING SECURITY.  IF I

10:48AM 13    DON'T HAVE A FIREWALL, MY OTHER SECURITY FEATURE IS NOT GOING

10:48AM 14    TO HELP ME VERY MUCH.

10:48AM 15      SO FROM A SECURITY VENDOR'S PERSPECTIVE, IT MAY BE A

10:48AM 16    REASONABLE ASSUMPTION THAT THOSE FEATURES SHOULD BE RANKED

10:48AM 17    EQUALLY.

10:48AM 18      HERE, VERY DIFFERENT.  WE ARE TALKING ABOUT HIGHLY

10:48AM 19    SOPHISTICATED CONSUMERS WHO HAVE DIFFERENT NEEDS, WHETHER YOU

10:48AM 20    ARE TALKING ABOUT CLOUD NETWORKING VERSUS YOU ARE TALKING ABOUT

10:48AM 21    ENTERPRISE CUSTOMERS, EACH OF THESE CUSTOMERS ARE MAKING

10:48AM 22    INDIVIDUALIZED DECISIONS.

10:48AM 23          SHE MADE NO ATTEMPT TO GO INTO ANY OF THAT AND SHE JUST --

10:48AM 24          THE COURT:  AND SHE DOESN'T RELY ON MR. SEIFERT.

10:48AM 25          MR. PAK:  NO, NOT AT THIS POINT AT ALL.

10:48AM  1          SO HER OPINION SORT OF PARALLELS MR. SEIFERT'S ANALYSIS

10:48AM  2    WITH RESPECT TO THE MARKET IMPACT, BUT HE DID NO RELATIVE

10:48AM  3    EVALUATION OF ANY OF THESE FACTORS.

10:48AM  4          HE TESTIFIED THAT HE WAS AN EXPERT IN THOSE MATTERS FOR THE

10:48AM  5    PURPOSE OF THIS CASE.  HE DOESN'T FRANKLY EVEN UNDERSTAND THE

10:48AM  6    SWITCHES AT ISSUE AND HE WAS NOT ASKED TO DO THAT.  HIS

10:49AM  7    OPINIONS ARE REALLY LOOKING AT THIS QUESTION OF DE FACTO

10:49AM  8    INDUSTRY STANDARD AND THEN THE MARKET IMPACT ANALYSIS WE TALKED

10:49AM  9    ABOUT.

10:49AM 10          BUT NO TECHNICAL EXPERT THAT SHE'S RELYING ON FOR THIS

10:49AM 11    CALCULATION HAS DONE THIS KIND OF RELATIVE RISK RANKING

10:49AM 12    FEATURES.

10:49AM 13          WHAT I EXPECT THE OTHER SIDE TO SAY IS WELL, WE HAVE

10:49AM 14    EVIDENCE SHOWING THIS PARTICULAR FEATURE WAS MENTIONED.  THAT'S

10:49AM 15    NOT THE POINT.  THE POINT ISN'T WHAT THEY TOLD ARISTA OR CISCO

10:49AM 16    AS BEING ONE OF THE FEATURES THAT THEY USED AS A CRITERIA.  THE

10:49AM 17    QUESTION IS HOW DO THEY RANK RELATIVELY, AND MORE IMPORTANTLY,

10:49AM 18    WHERE DOES THE CLI RANK INTERNALLY, WOULD THEY HAVE EVEN BOUGHT

10:49AM 19    THE PRODUCT WITHOUT A CISCO-LIKE CLI.  AND NO ONE KNOWS THE

10:49AM 20    ANSWER BECAUSE SHE HASN'T DONE THAT ANALYSIS.

10:49AM 21          THE COURT:  AND ONE WOULD NOT EXPECT THE DAMAGES

10:49AM 22    EXPERT TO BE ABLE TO DO THAT ANALYSIS.  IT IS APPROVED IN THE

10:49AM 23    LAW THAT THIS DAMAGES EXPERT CAN RELY ON THE OPINIONS OF THE

10:50AM 24    TECHNICAL EXPERTS.

10:50AM 25          MR. PAK:  THAT'S CORRECT.

10:50AM 1          THE COURT:  BUT SHE DOESN'T --

10:50AM 2          MR. PAK:  SHE DOES NOT RELY ON THE TECHNICAL OPINIONS

10:50AM 3    OF THE EXPERTS FOR THAT PURPOSE.

10:50AM 4        AND TWO, YOUR HONOR, WHAT THE LAW PERMITS IS THE DAMAGES

10:50AM 5    EXPERT TO CONDUCT SURVEYS.

10:50AM 6          THE COURT:  YEAH.

10:50AM 7          MR. PAK:  SO SHE COULD HAVE DONE A REGRESSION SURVEY,

10:50AM 8    SHE COULD HAVE DONE ANY NUMBER OF SURVEYS THAT LOOK INTO

10:50AM 9    RELATIVE VALUATION OF THESE FEATURES FROM A CUSTOMER

10:50AM 10   PERSPECTIVE.

10:50AM 11       AND WE UNDERSTAND THAT SHE CAN'T GO INTERVIEW EVERY SINGLE

10:50AM 12   CUSTOMER, BUT SHE COULD HAVE TAKEN A REPRESENTATIVE SAMPLE OF

10:50AM 13   CUSTOMERS LIKE WE DO IN PATENT CASES, SURVEY THEM TO UNDERSTAND

10:50AM 14   HOW DOES CLI RANK.  AND THAT ANALYSIS WAS SIMPLY NOT DONE.

10:50AM 15         THE COURT:  OKAY.

10:50AM 16         MR. PAK:  THANK YOU.

10:50AM 17         MR. SILBERT:  GOOD MORNING, YOUR HONOR.

10:50AM 18     DAVID SILBERT FOR ARISTA.

10:50AM 19       LET ME TOUCH ON A COUPLE OF PRELIMINARY ISSUES AND THEN LET

10:50AM 20   ME TALK ABOUT WHAT MS. ELSTEN ACTUALLY DOES FOR HER

10:50AM 21   APPORTIONMENT ANALYSIS WHICH BEARS ESSENTIALLY NO RESEMBLANCE

10:51AM 22   TO THE DESCRIPTION THAT YOU JUST HEARD FROM MR. PAK.

10:51AM 23       BUT TO BEGIN WITH, YOUR HONOR IS ABSOLUTELY CORRECT THAT

10:51AM 24   DISGORGEMENT IS A BENCH ISSUE FOR THE COURT TO DETERMINE.  AND

10:51AM 25   WE PRESENTED THIS MOTION BECAUSE IT IS CERTAINLY SOMETIMES TRUE

10:51AM  1    THAT JUDGES WHO NEED TO MAKE A DETERMINATION AFTER TRIAL WILL

10:51AM  2    SEEK AN ADVISORY OPINION FROM A JURY.

10:51AM  3        YOUR HONOR COULD DO THAT AS ESTOPPEL IF YOU CHOSE, YOU

10:51AM  4    COULD DO IT ON THE ISSUE OF DISGORGEMENT IF YOU CHOSE, THAT'S

10:51AM  5    ENTIRELY UP TO YOU.  AND SHOULD YOU DO THAT, WE CERTAINLY

10:51AM  6    BELIEVE IT'S CRITICAL THAT THE JURY, IN PARTICULAR, NOT BE

10:51AM  7    GIVEN AN ISSUE -- WE MOVE WITH RESPECT TO DISGORGEMENT ON

10:51AM  8    DR. CHEVALIER BECAUSE WE DON'T WANT HER TO PRESENT A POSITION

10:51AM  9    TO THE JURY THAT WE BELIEVE IS SIMPLY PRECLUDED BY THE LAW.

10:51AM  10       BUT ULTIMATELY, IT IS YOUR HONOR'S DECISION.  THERE MAY

10:51AM  11   HAVE BEEN COURTS, CERTAINLY, WHO HAVE COMMITTED IT TO THE JURY

10:52AM  12   BEFORE.  THERE MAY EVEN HAVE BEEN SOME UNCERTAINTY ABOUT THIS

10:52AM  13   ISSUE.  BUT TO THE EXTENT THERE WAS, IT WOULD HAVE BEEN

10:52AM  14   RESOLVED BY THE SUPREME COURT IN THE PETRELLA CASE WHICH IS THE

10:52AM  15   COPYRIGHT CASE INVOLVING THE MOVIE *RAGING BULL* WHERE THE

10:52AM  16   SUPREME COURT SPECIFICALLY FOUND DISGORGEMENT IS A DIFFERENT

10:52AM  17   TYPE OF REMEDY THAN ACTUAL DAMAGES, AND DISGORGEMENT UNDER THE

10:52AM  18   COPYRIGHT ACT SPECIFICALLY IS AN EQUITABLE REMEDY, NOT A LEGAL

10:52AM  19   REMEDY.

10:52AM  20       AND IN THAT CASE THE COURT HELD THERE WERE DIFFERENCES

10:52AM  21   THERE THAT AFFECT THE ISSUE OF LACHES, SO LACHES IS TREATED

10:52AM  22   DIFFERENTLY FOR DISGORGEMENT.

10:52AM  23       COURTS IN THE NINTH CIRCUIT AM SINCE THEN HAVE CITED

10:52AM  24   PETRELLA AND SPECIFICALLY DENIED A JURY TRIAL ON DISGORGEMENT.

10:52AM  25           THE COURT:  AND DO YOU HAVE A NINTH CIRCUIT CASE FOR

10:52AM 1    ME THAT DENIES THE JURY TRIAL?

10:52AM 2         MR. SILBERT:  THERE IS A, AND I CAN'T GIVE YOUR HONOR

10:52AM 3    THE CITE RIGHT NOW, WHERE I WAS GOING WITH THIS, WE INTEND TO

10:52AM 4    MOVE IN LIMINE ON THIS ISSUE BECAUSE IT'S NOT --

10:53AM 5         THE COURT:  THE REASON I RAISE IT HERE IS THAT I'M

10:53AM 6    LESS INCLINED TO EVEN ENTERTAIN THE DAUBERT DISCUSSION ON AN

10:53AM 7    ISSUE THAT'S TRIED TO THE COURT BECAUSE I CAN EASILY DISREGARD

10:53AM 8    OPINIONS THAT ULTIMATELY HAVE NO FOUNDATION OR ARE EXCLUDED

10:53AM 9    BECAUSE THEY ARE NOT FOUND IN THE DISCLOSURES.

10:53AM 10   AND I JUST DON'T NEED TO ENGAGE IN IT NOW.

10:53AM 11   SO AGAIN, I NEED TO BE VERY EFFICIENT WITH WHAT I'M

10:53AM 12   SPENDING MY TIME ON HERE, AS DO YOU, AND I'VE NEVER KNOWN

10:53AM 13   DISGORGEMENT TO BE A JURY ISSUE.  BUT I'VE NEVER SEEN

10:53AM 14   DISGORGEMENT REQUESTED IN A COPYRIGHT CASE.

10:53AM 15   SO WELL, FOR EXAMPLE, IN THE ORACLE V. GOOGLE CASE, THERE

10:53AM 16   WAS A DISGORGEMENT ISSUE, CORRECT?

10:53AM 17        MR. SILBERT:  THERE WAS, BUT THERE WAS NO DAMAGES

10:53AM 18   TRIAL, ULTIMATELY.

10:53AM 19        THE COURT:  SO THERE WAS NEVER A DAMAGES TRIAL.  AND

10:53AM 20   WERE THERE PRETRIAL RULINGS THAT INDICATED ONE WAY OR THE OTHER

10:53AM 21   OR HAD YOU NOT GOTTEN THERE?

10:54AM 22        MR. SILBERT:  I WILL HAVE TO DEFER TO --

10:54AM 23        MR. VAN NEST:  I WOULD HAVE TO GO BACK AND LOOK AT

10:54AM 24   THE RECORD.  I THINK JUDGE ALSUP DEFERRED IT.  HE BIFURCATED,

10:54AM 25   WE DISCUSSED IT, IT WASN'T RESOLVED, IT'S MY RECOLLECTION --

10:54AM 1    AND THEN OF COURSE --

10:54AM 2              THE COURT:  HE WAS WISE TO BIFURCATE, HE NEVER HAD TO

10:54AM 3    HEAR IT.

10:54AM 4              MR. VAN NEST:  THAT'S RIGHT.  TWICE.

10:54AM 5              THE COURT:  TWICE.  OKAY.

10:54AM 6              MR. SILBERT:  WE CAN PROVIDE YOUR HONOR WITH A

10:54AM 7    CITATION TO A CENTRAL DISTRICT --

10:54AM 8              THE COURT:  I JUST WANT A CITATION.

10:54AM 9              MR. SILBERT:  A CENTRAL DISTRICT OF CALIFORNIA CASE,

10:54AM 10   THE NAME ESCAPES ME RIGHT NOW.  THE IMPORTANT THING IS IT'S

10:54AM 11   POST PETRELLA AND IT FINDS BASED ON PETRELLA, IT DENIES A JURY

10:54AM 12   TRIAL.

10:54AM 13             THE COURT:  AND PETRELLA IS A COPYRIGHT CASE AS WELL?

10:54AM 14             MR. SILBERT:  PETRELLA IS A COPYRIGHT CASE IN THE

10:54AM 15   SUPREME COURT THAT FINDS THAT DISGORGEMENT IS AN EQUITABLE

10:54AM 16   REMEDY.  AND IT DISTINGUISHES DISGORGEMENT FROM ACTUAL

10:54AM 17   DAMAGES --

10:54AM 18             THE COURT:  SURE.  AND MR. PAK, IF YOU HAVE ANYTHING

10:54AM 19   DIFFERENT.

10:54AM 20             MR. PAK:  YES.

10:54AM 21             THE COURT:  I'M LOOKING FOR A PAGE AND A HALF ON THIS

10:54AM 22   IF YOU WANT TO SUBMIT IT.  I JUST REALLY NEED THE CITATIONS

10:55AM 23   BECAUSE I ACTUALLY WILL TAKE A DIFFERENT ROUTE ON THE

10:55AM 24   ELSTEN/CHEVALIER, AND I THINK THAT'S GOING TO WORK FOR YOU AS

10:55AM 25   WELL BECAUSE WE HAVE LOTS OF LATITUDE IN A BENCH TRIAL, IF WE

10:55AM 1    EVEN GET THERE.

10:55AM 2            MR. SILBERT:  UNDERSTOOD.  SINCE WE DON'T KNOW AT

10:55AM 3    THIS POINT HOW THAT'S GOING TO TURN OUT, IF I MAY, I WOULD LIKE

10:55AM 4    TO JUST ADDRESS --

10:55AM 5            THE COURT:  LET'S DO THAT SINCE YOU ARE HERE, YES.

10:55AM 6            MR. SILBERT:  AND LET ME SAY ONE THING, FIRST OF ALL,

10:55AM 7    ABOUT THE CAUSAL NEXUS ISSUE.

10:55AM 8        I THINK THAT A MOUNTAIN HAS BEEN MADE OF A MOLE HILL HERE.

10:55AM 9    I DON'T THINK THE COURT NEEDS TO DEVOTE RESOURCES TO IT.  IT IS

10:55AM 10   TRUE THAT DR. CHEVALIER, EXCUSE ME, THAT MS. ELSTEN NOTES THAT

10:55AM 11   DR. CHEVALIER DID NOT MAKE ANY PARTICULAR COMMENTS OR FINDINGS

10:55AM 12   TO SUPPORT A NEXUS, BUT MS. ELSTEN THEN TAKES HER ROYALTY BASE

10:55AM 13   ANYWAY AND USES IT AS THE ROYALTY BASE THAT SHE FORMULATES HER

10:55AM 14   OPINION ON.

10:55AM 15       SO ALTHOUGH SHE CRITICIZES THE LACK OF DISCUSSION OF NEXUS

10:56AM 16   IN DR. CHEVALIER'S OPINION, SHE DOESN'T CHANGE, TO BE AS

10:56AM 17   CONSERVATIVE AS POSSIBLE.  SHE SAYS, I'M GOING TO ASSUME THAT A

10:56AM 18   NEXUS HAS BEEN PROVEN ANYWAY, AND I'M GOING TO START WITH THIS

10:56AM 19   ROYALTY BASE.

10:56AM 20           THE COURT:  WELL, SURE, THAT'S A LEGAL ISSUE, SHE

10:56AM 21   DOESN'T HAVE TO GET BOGGED DOWN WITH IT, NOR COULD SHE GIVE AN

10:56AM 22   OPINION.

10:56AM 23           MR. SILBERT:  NOR DOES THE COURT, THAT'S OUR POINT.

10:56AM 24   IT DOESN'T PLAY A ROLE IN THE ACTUAL OPINIONS SHE EXPRESSES --

10:56AM 25   FOR PURPOSES OF THIS MOTION --

10:56AM  1         THE COURT:  SO YOU ARE NOT SUGGESTING CISCO HAS TO

10:56AM  2    ESTABLISH ANYTHING MORE THAN THEY HAVE THROUGH THE -- OF THE

10:56AM  3    PROFITS OF THE DIRECT PROFITS OFF OF THE INFRINGING PRODUCT.

10:56AM  4         MR. SILBERT:  FOR PURPOSES OF ESTABLISHING A ROYALTY

10:56AM  5    BASE, THAT'S TRUE.

10:56AM  6         THE COURT:  OKAY.  GOOD.  THAT'S GREAT.  I'VE LEARNED

10:56AM  7    ABOUT THE LAW AND WE ARE MOVING FORWARD.

10:56AM  8         MR. SILBERT:  SO NOW LET'S TALK ABOUT HER

10:56AM  9    DISGORGEMENT OPINION AND HER APPORTIONMENT OF PROFITS.

10:56AM  10        AND LET ME FIRST OF ALL DIRECT YOUR HONOR'S ATTENTION TO

10:57AM  11    WHAT THE ACTUAL LAW IS ON THIS PARTICULAR ISSUE, IT'S NOT THE

10:57AM  12    SAME AS ACTUAL DAMAGES UNDER PATENTS, IT WOULD BE A MISTAKE TO

10:57AM  13    APPLY THOSE SAME CRITERIA.

10:57AM  14        THE COURT:  OKAY.

10:57AM  15        MR. SILBERT:  AND THE NINTH CIRCUIT -- AND BY THE

10:57AM  16    WAY, I THINK EVEN IF THE COURT DID APPLY THOSE CRITERIA,

10:57AM  17    NOTHING WOULD BE EXCLUDED HERE.

10:57AM  18        BUT LET'S BE CLEAR, THE NINTH CIRCUIT HAS SAID NUMEROUS

10:57AM  19    TIMES AND THE SUPREME COURT, THAT WHEN WE ARE TALKING ABOUT

10:57AM  20    APPORTIONMENT OF PROFITS FOR PURPOSES OF A DISGORGEMENT

10:57AM  21    ANALYSIS, WE ALL RECOGNIZE THAT IT'S VERY DIFFICULT TO DO THAT,

10:57AM  22    THERE ARE NO CERTAIN BOUNDARIES.  AND THE SUPREME COURT SAYS,

10:57AM  23    WHAT IS REQUIRED IS ONLY A REASONABLE APPROXIMATION.

10:57AM  24        THAT'S QUOTED BY THE NINTH CIRCUIT IN THE CREAM RECORDS

10:57AM  25    CASE.  AND THE CREAM RECORDS PANEL GOES ON TO SAY, YOU KNOW,

10:57AM 1    LOOK, ULTIMATELY, CREAM, THAT'S THE PLAINTIFF'S CALCULATION, IS

10:58AM 2    IN THE END, NO LESS SPECULATIVE THAN THAT OF THE COURT.

10:58AM 3        THEY SAY YOURS IS PRETTY SPECULATIVE, THE DISTRICT COURTS'

10:58AM 4    IS PRETTY SPECULATIVE.

10:58AM 5        I WOULD COMMEND YOUR HONOR TO READ THAT CASE AND COMPARE

10:58AM 6    THE ACTUAL ANALYSIS DONE IN THAT CASE, WHICH WAS REALLY LICKING

10:58AM 7    YOUR FINGER AND PUTTING IT UP TO THE WIND BY THE DISTRICT.  AND

10:58AM 8    THE NINTH CIRCUIT SAID, WELL, IT'S GOOD ENOUGH.

10:58AM 9        THE COURT:  AND THE CASE LAW ALSO SUGGESTS THAT IN

10:58AM 10   THE ABSENCE OF A DEFENSE APPORTIONMENT, I STILL WHEN THE RECORD

10:58AM 11   IS CLEAR, WOULD HAVE TO RULE ON SOME REASONABLE APPORTIONMENT.

10:58AM 12       MR. SILBERT:  I WOULD SAY CASE LAW DOESN'T SUGGEST

10:58AM 13   THAT, THE CASE LAW MANDATES THAT.

10:58AM 14       BUT THAT'S CORRECT.  AND IF YOUR HONOR FOR A MINUTE

10:58AM 15   COMPARED THE APPORTIONMENT METHODOLOGY THAT WAS APPROVED BY THE

10:58AM 16   NINTH CIRCUIT IN CREAM RECORDS TO THE EXTREMELY DETAILED AND

10:58AM 17   FACT-BASED METHODOLOGY USED BY MS. ELSTEN, THERE'S NO

10:58AM 18   COMPARISON, THERE'S SIMPLY NO COMPARISON.  AND MORE TO THE

10:58AM 19   POINT I MADE RIGHT HERE IS, THE STANDARD THAT GETS REQUIRED TO

10:58AM 20   THIS TYPE OF APPORTIONMENT ON DISGORGEMENT IS NOT THE PATENT'S

10:59AM 21   ACTUAL PROOF OF ACTUAL DAMAGES.

10:59AM 22       THERE'S MORE QUOTES AGAIN FROM THE NINTH CIRCUIT IN THE

10:59AM 23   ABEND CASE QUOTING JUDGE LEARNED HAND WHO SAYS THERE'S REALLY

10:59AM 24   NO REAL STANDARD THAT CAN GOVERN THIS.  AND THE NINTH CIRCUIT

10:59AM 25   SAYS, WE RECOGNIZE COURTS CAN'T BE EXPECTED TO DETERMINE WITH

10:59AM 1    MATHEMATICAL EXACTNESS AN APPORTIONMENT OF PROFITS.  WE REQUIRE

10:59AM 2    ONLY A REASONABLE AND JUST APPORTIONMENT.

10:59AM 3         THAT'S ALL THAT IS REQUIRED.

10:59AM 4            THE COURT:  BUT I DON'T THINK MR. PAK IS ARGUING THAT

10:59AM 5    POINT.  WHAT HE'S SAYING IS THAT THERE'S NO FOUNDATION FOR THE

10:59AM 6    EQUAL VALUE TO EACH OF THE ELEMENTS OF THE SWITCH.

10:59AM 7         IT'S AN EVIDENTIARY ISSUE HE'S CONTESTING, NOT A LEGAL

10:59AM 8    STANDARD.  YOU DON'T HAVE TO PROVE IT TO A REASONABLE

10:59AM 9    CERTAINTY.  OKAY.  THAT'S FINE.  I DON'T THINK THAT'S ISSUE

10:59AM 10   BEFORE ME.

10:59AM 11           MR. SILBERT:  SO LET ME GET TO HIS --

10:59AM 12           THE COURT:  NOW IT MAY BE SIMPLY THAT THE TRIER OF

10:59AM 13   FACT, WHETHER IT'S ME OR THE JURY, CAN SIMPLY REJECT IT AS NOT

11:00AM 14   BEING CREDIBLE, WHICH OF COURSE ANY TRIER OF FACT CAN DO WITH

11:00AM 15   ANY OPINION.

11:00AM 16        SO WE ARE JUST AT THE THRESHOLD OF UNDER THIS CREAM RECORDS

11:00AM 17   STANDARD, WOULD I BE WISE TO LET IT IN AND SEE HOW CREDIBLE IT

11:00AM 18   IS AND HOW IT STANDS UP TO CROSS-EXAMINATION AND REBUTTAL.

11:00AM 19           MR. SILBERT:  RIGHT.

11:00AM 20        AND HIS FACTUAL STATEMENTS ARE INCORRECT ABOUT SAYING

11:00AM 21   THERE'S NO FOUNDATION.  AND I WANT TO GET TO THAT.  BUT I DO

11:00AM 22   WANT TO MAKE THE POINT, THAT WHETHER OR NOT AN EQUAL

11:00AM 23   APPORTIONMENT WOULD BE ADMISSIBLE AND VALID UNDER A PATENT

11:00AM 24   DAMAGES STANDARD WHERE A PLAINTIFF IS PROVING ACTUAL DAMAGES,

11:00AM 25   AND THOSE ARE THE CASES THAT MR. PAK CITES, THAT'S THE STANDARD

11:00AM 1   HE'S APPLYING.  EVEN THEN, I THINK IT WOULD CLEARLY BE

11:00AM 2   ADMISSIBLE IN THE INFORMATION AT ISSUE HERE.

11:00AM 3       BUT THAT IS NOT THE STANDARD.  AND I THINK CLEARLY, AGAIN,

11:00AM 4   IF YOUR HONOR WERE TO LOOK AT WHAT THE COURT DID IN CREAM

11:01AM 5   RECORDS AND OTHER CASES, CLEARLY WHAT'S DONE HERE FAR SURPASSES

11:01AM 6   THAT IN TERMS OF RIGOR, IN TERMS OF THE AMOUNT OF DATA, WHICH

11:01AM 7   IS ACTUALLY CONTRARY TO WHAT MR. PAK SAID, EXTREMELY EXTENSIVE

11:01AM 8   AND SO FORTH.

11:01AM 9       BUT LET ME GET TO THAT.

11:01AM 10      THE COURT:  AND YOU OF COURSE CAN ASK YOUR COLLEAGUES

11:01AM 11  AT WILSON SONSINI WHETHER THEY -- WHAT KIND OF FOUNDATION WAS

11:01AM 12  NECESSARY IN THE FINJAN CASE BECAUSE THEY KNOW ALL TOO WELL.

11:01AM 13      MR. SILBERT:  IF I CAN JUST TURN TO SLIDE 10,

11:01AM 14  YOUR HONOR.

11:01AM 15      AND THERE'S NO WAY THAT THE COURT COULD DECIDE THIS MOTION

11:01AM 16  WITHOUT READING MS. ELSTEN'S ACTUAL OPINIONS WHICH APPEAR AT

11:01AM 17  PAGES 80 THROUGH 94, SPECIFICALLY, ALTHOUGH SHE DOES REFER BACK

11:01AM 18  TO MANY OTHER SECTIONS OF HER REPORT, IN HER REPORT OF

11:01AM 19  JULY 13TH.

11:01AM 20      AS I SAID AT THE BEGINNING, YOUR HONOR WON'T RECOGNIZE THEM

11:01AM 21  FROM THE WAY MR. PAK DESCRIBED THEM, THEY BEAR NO RESEMBLANCE

11:01AM 22  WHATSOEVER TO THE CHARACTERIZATION THAT HE GAVE OF THEM.  BUT

11:02AM 23  ONE OF THE THINGS THAT MR. PAK SAID WAS SHE DOESN'T DO ANY KIND

11:02AM 24  OF WEIGHING AT ALL, AND IN FACT SHE SAYS IN HER DEPOSITION,

11:02AM 25  ACCORDING TO MR. PAK, THAT SHE DOESN'T WEIGH ANYTHING AND

11:02AM  1    THEREFORE THAT'S DISQUALIFYING.

11:02AM  2        SHE ACTUALLY, THESE ARE ALL QUOTATIONS FROM HER REPORT AT

11:02AM  3    PAGES 85 THROUGH 87, SHE ACTUALLY DOES A LOT OF WEIGHING AND

11:02AM  4    SHE DOES RELY ON MR. SEIFERT, AMONG OTHER SOURCES, AND SHE

11:02AM  5    TALKS ABOUT HOW THE FACTORS ARE WEIGHED.

11:02AM  6        HERE IN THE FIRST PARAGRAPH SHE SAYS, HOWEVER, AS DISCUSSED

11:02AM  7    EARLIER AND SUPPORTED BY APPENDIX D, THE PREPONDERANCE OF THE

11:02AM  8    EVIDENCE AVAILABLE IN THE CASE INDICATES THAT MANY, IF NOT MOST

11:02AM  9    OF THE FEATURES IDENTIFIED, WERE OF MORE IMPORTANCE TO MORE

11:02AM 10    CUSTOMERS THAN THE NATURE OF THE CLI.

11:02AM 11        THAT'S REFERRING TO A LOT OF OTHER INFORMATION --

11:02AM 12            THE COURT:  WHAT'S APPENDIX D?

11:02AM 13            MR. SILBERT:  APPENDIX D, I WOULD NEED TO CHECK.  BUT

11:03AM 14    SHE'S ALSO REFERRING TO A PRIOR DISCUSSION.

11:03AM 15            THE COURT:  WELL, WE CAN MOVE ON.

11:03AM 16            MR. SILBERT:  SHE TALKS ABOUT HOW -- IN THE NEXT

11:03AM 17    PARAGRAPH SHE TALKS ABOUT HOW CONTINUED INVESTMENT IN R&D AND

11:03AM 18    NUMEROUS FEATURES OVER THE TIME PERIOD HAS CAUSED THE RELATIVE

11:03AM 19    IMPORTANCE OF THE CLI TO DIMINISH FURTHER OVER TIME TO THE

11:03AM 20    OVERALL VALUE OF THE SOFTWARE, MEANING IT'S WEIGHTED FURTHER

11:03AM 21    EVEN LESS.

11:03AM 22        SHE SAYS AT THE BOTTOM SHE LOOKS AT ALL THE BLOCK DIAGRAMS.

11:03AM 23    AND SHE SAYS, I UNDERSTAND THAT WITHOUT SYSDB OR LINUX KERNEL,

11:03AM 24    EOS WOULD NOT WORK.  THUS, THESE FEATURES MAY HAVE A HIGHER

11:03AM 25    IMPORTANCE THAN OTHERS.  CONVERSELY.  I UNDERSTAND SEVERAL LIST

11:03AM 1    COMPONENTS SUCH AS CLI, ARE NOT REQUIRED.

11:03AM 2        SHE SAYS, BY ASSUMING EACH BLOCK IS OF EQUAL VALUE, THE

11:03AM 3    VALUE OF THE CLI IS LIKELY OVERSTATED.

11:04AM 4        LET ME POINT OUT JUST SOME EXAMPLES, THERE'S NO WAY IN THE

11:04AM 5    TIME ALLOTTED WE COULD GO THROUGH HER ENTIRE OPINION ON

11:04AM 6    APPORTIONMENT, BUT SHE DOES A QUITE EXTENSIVE ANALYSIS OF

11:04AM 7    WEIGHTING DIFFERENT FEATURES WITHIN THE OPERATING SYSTEM

11:04AM 8        AND HERE'S WHAT HE SHE ACTUALLY DOES, INSTEAD OF WHAT CISCO

11:04AM 9    IS CLAIMING SHE DOES.  AT THE END OF ALL OF THAT, WHAT SHE SAYS

11:04AM 10   IS -- WHAT SHE SAYS IS, HERE'S A RANGE, AND SHE GIVES A

11:04AM 11   PERCENTAGE RANGE.  I'VE BLACKED OUT THE NUMBERS, AND I'M GOING

11:04AM 12   TO HAVE THIS SLIDE HERE, BUT --

11:04AM 13            THE COURT:  I THINK I HAVE THIS ONE.

11:04AM 14            MR. SILBERT:  HERE'S A RANGE, I'M LOOKING AT ALL OF

11:04AM 15   THIS DATA, AND THERE'S EXTENSIVE AMOUNTS OF DATA OF WHAT YOU

11:04AM 16   COULD SAY THE CLI IS WORTH.  SHE SAYS, IF I TREAT THE CLI AS

11:04AM 17   EQUAL, EQUALLY WEIGHTED ON ALL THESE OTHER FACTORS, AND I

11:04AM 18   POINTED THIS OUT BEFORE, SHE SAYS, I'M ACTUALLY WEIGHTING IT

11:04AM 19   TOO HIGH BASED ON ALL THIS OTHER EVIDENCE THAT I'VE LOOKED AT

11:04AM 20   THAT INDICATES IT HASN'T LOWERED, BUT I'M GOING TO ERR IN FAVOR

11:05AM 21   OF CISCO AND PICK THE HIGHEST RANGE THAT I COULD PICK, EVEN

11:05AM 22   THOUGH I THINK IT'S AN ERROR, IT'S TOO HIGH, I'M ERRING ON THE

11:05AM 23   SIDE OF BEING TOO HIGH FOR CISCO.  THAT'S WHAT I'M GOING TO DO.

11:05AM 24       NOW THAT, IF YOUR HONOR READS CISCO'S BRIEFING ON OUR

11:05AM 25   MOTION DIRECTED TO DR. CHEVALIER, THAT'S EXACTLY WHAT THEY SAY

11:05AM 1    THE LAW REQUIRES.  THEY SAY YOU ARE SUPPOSED TO ERR IN FAVOR OF

11:05AM 2    THE PLAINTIFF.

11:05AM 3         THE COURT:  YEAH.

11:05AM 4         MR. SILBERT:  SO THAT'S WHAT SHE DOES.  IT'S NOT THAT

11:05AM 5    SHE DOES NO WEIGHTING.  SHE DOES A LOT OF WEIGHTING.

11:05AM 6         THE COURT:  WHAT ABOUT HER DEPOSITION TESTIMONY,

11:05AM 7    THOUGH?

11:05AM 8         MR. SILBERT:  IT'S A SINGLE QUESTION AND ANSWER ABOUT

11:05AM 9    A SINGLE TABLE.  IF YOU LOOK AT THE SLIDE, IT SAYS, EXCLUDING

11:05AM 10   YOUR ANALYSIS OF THE RFP'S, AND IN THIS TABLE DID YOU CONSIDER

11:05AM 11   RELATIVE IMPORTANCE.  AND SHE SAYS, IN THIS TABLE I DIDN'T.

11:05AM 12   BUT THAT'S NOT HER WHOLE OPINION.

11:05AM 13       SO TO SAY THAT SHE DID NO WEIGHTING IS SIMPLY NOT TRUE.  TO

11:05AM 14   SAY, AS MR. PAK DID, THAT SHE JUST LOOKED AT ONE DOCUMENT AND

11:06AM 15   THAT'S HER WHOLE OPINION IS NOT EVEN CLOSE TO TRUE.  SHE LOOKED

11:06AM 16   AT LITERALLY THOUSANDS OF PAGES OF VERY DENSE INFORMATION.

11:06AM 17       AND AGAIN, I DO NOT WANT TO BELABOR THE COURT, AND WE DON'T

11:06AM 18   BEGIN TO HAVE TIME, BUT SHE LOOKS AT, SHE ANALYZES THE

11:06AM 19   THOUSANDS OF RFP'S AND DOES A STATISTICAL ANALYSIS AND

11:06AM 20   DETERMINES HOW MANY OF THEM OF ASK ABOUT, AND SHE POINTS OUT

11:06AM 21   THAT CUSTOMERS IN RFP'S LIST THE FEATURES THEY WANT.  THAT'S

11:06AM 22   THE PURPOSE OF THESE RFP'S AND IT'S CLEAR LOOKING AT THEM THAT

11:06AM 23   THEY DO.

11:06AM 24       HOW MANY MENTION A CLI AT ALL?  SHE LOOKS AT THAT DATA AND

11:06AM 25   THOSE SPECIFIC PERCENTAGES.  HOW MANY MENTION AN INDUSTRY

11:06AM  1    STANDARD CISCO-LIKE CLI?  SHE HAS SPECIFIC PERCENTAGES ABOUT

11:06AM  2    THAT.

11:06AM  3        SHE LOOKS AT CERTAIN RFP'S FROM ONE VERY SIGNIFICANT

11:06AM  4    CUSTOMER THAT ACTUALLY ASSIGNS A NUMERICAL WEIGHT TO EACH

11:06AM  5    FEATURE, EVERY SINGLE FEATURE.  AND SHE SAYS, WELL, THIS IS A

11:07AM  6    PRETTY GOOD INDICATION OF HOW MUCH VALUE THEY PLACE ON EACH

11:07AM  7    FEATURE, THAT CUSTOMER, ABOUT -- THERE'S A WEIGHT THEY APPLY TO

11:07AM  8    CLI ABOUT -- THERE'S A SEPARATE ENTRY FOR A FAMILIAR CLI, AND

11:07AM  9    THEY SAY SPECIFICALLY -- WE DON'T EVEN PLAN TO USE THE FAMILIAR

11:07AM  10   CLI.  SO THEY ESSENTIALLY, WE DON'T CARE WHETHER YOU HAVE ONE

11:07AM  11   OR NOT.

11:07AM  12       SHE TAKES THAT INTO ACCOUNT.  AND THE NUMERICAL WEIGHTS.

11:07AM  13       SHE LOOKS AT MARKETING DOCUMENTS AND DOES EXTENSIVE

11:07AM  14   ANALYSIS OF MARKETING DOCUMENTS, WHAT THEY MENTION, WHAT THEY

11:07AM  15   DON'T MENTION, WHAT CATEGORIES THEY LIST, HOW THEY DESCRIBE

11:07AM  16   THINGS.  OTHER TECHNICAL DOCUMENTS.  IT'S VERY, VERY DETAILED.

11:07AM  17       AND AGAIN, IT'S -- YOUR HONOR MIGHT FORM ONE CONCLUSION

11:07AM  18   LISTENING TO MR. PAK DESCRIBE WHAT SHE DID.  IF YOUR HONOR

11:07AM  19   LOOKS AT WHAT MS. ELSTEN ACTUALLY DID AND PARTICULARLY COMPARES

11:07AM  20   IT TO THE STANDARD SET BY THE NINTH CIRCUIT FOR AN

11:07AM  21   APPORTIONMENT ANALYSIS, THERE'S NO WAY IT DOESN'T PASS MUSTER.

11:07AM  22           THE COURT:  OKAY.  ALL RIGHT.  SHOULD WE MOVE ON TO

11:07AM  23   CHEVALIER THEN?

11:08AM  24           MR. PAK:  YES.

11:08AM  25           THE COURT:  SO MR. SILBERT, ARE YOU GOING TO START?

11:08AM  1            MR. SILBERT:  I AM.

11:08AM  2        SO YOUR HONOR, THERE ARE TWO OPINIONS EXPRESSED BY

11:08AM  3    DR. CHEVALIER THAT ARE NOT PROPER EXPERT TESTIMONY AND THAT WE

11:08AM  4    ARE MOVING TO EXCLUDE.  THE FIRST IS WHAT SHE CALLS HER NO

11:08AM  5    APPORTIONMENT DISGORGEMENT OPINION.

11:08AM  6        AND WHAT'S SHOWN HERE ON SLIDE THREE IS SIMPLY AN EXCERPT

11:08AM  7    FROM ONE OF HER EXHIBITS WHERE SHE SHOWS A SUMMARY OF THE

11:08AM  8    DAMAGES, BUT IT'S SIMPLY HERE AS AN INDICATION THAT SHE'S GOT

11:08AM  9    TWO OF WHAT SHE CALLS CASES, CASE 1 AND 3 WHERE SHE APPLIES

11:08AM  10   ZERO APPORTIONMENT

11:08AM  11           THE COURT:  AS WAS ARGUED BY CISCO, SHE STARTS WITH

11:08AM  12   SAYING, BECAUSE ARISTA DIDN'T MEET ITS BURDEN TO SHOW

11:09AM  13   APPORTIONMENT, THEN THERE'S NO EVIDENCE THEREFORE THERE'S NO

11:09AM  14   APPORTIONMENT.  IT'S NOT THAT SHE'S SAYING THAT I'VE STUDIED

11:09AM  15   THE MARKET AND NO APPORTIONMENT IS APPROPRIATE.  THAT'S A BIG

11:09AM  16   DIFFERENCE.

11:09AM  17           MR. SILBERT:  WELL, IT IS A BIG DIFFERENCE, BUT IT

11:09AM  18   DOESN'T HELP CISCO.  IT DOESN'T HELP BECAUSE THE WAY -- UNDER

11:09AM  19   THE CREAM RECORDS CASE AND OTHER NINTH CIRCUIT CASE LAW, THE

11:09AM  20   ONLY SITUATION OR TWO SITUATIONS WHERE A PLAINTIFF CAN REQUEST

11:09AM  21   100 PERCENT OF THE DAMAGES, ARE WHERE AN EXPERT ACTUALLY DOES

11:09AM  22   WHAT YOUR HONOR WAS CLEAR TO POINT OUT AND CISCO WAS CLEAR TO

11:09AM  23   POINT OUT SHE DID NOT DO.

11:09AM  24        THERE ARE CASES WHERE A HUNDRED PERCENT OF THE PROFITS

11:09AM  25   MIGHT BE DUE TO INFRINGEMENT.

11:09AM 1          THE COURT:  OH, SURE, OF COURSE.

11:09AM 2          MR. SILBERT:  IF I BOOTLEG A MOVIE AND I SELL IT,

11:09AM 3   PROBABLY ALL THOSE PROFITS ARE COMING FROM MY INFRINGEMENT.

11:09AM 4      IF I'M SELLING A TV AND SOMEBODY IS SAYING THESE BUTTONS ON

11:09AM 5   THE REMOTE CONTROL ARE OURS --

11:09AM 6          THE COURT:  AND I WILL HEAR FROM MR. PAK ON THIS, IF

11:10AM 7   SHE'S GOING TO TESTIFY THAT I'VE EVALUATED DR. ELSTEN'S OPINION

11:10AM 8   ON APPORTIONMENT, I FIND IT, IT HAS -- IT SHOULD BE GIVEN NO

11:10AM 9   WEIGHT.  IT'S FULL OF HOLES, YOU SHOULD DISREGARD IT.  AND IF

11:10AM 10  THERE'S NO EVIDENCE WHICH IS, AND THIS IS OF COURSE ATTORNEY

11:10AM 11  ARGUMENT, THEN IT'S 100 PERCENT.

11:10AM 12     NOW MAYBE IT'S ATTORNEY ARGUMENT.  AND MAYBE DR. CHEVALIER

11:10AM 13  SHOULDN'T BE THE ONE TO SAY THE HUNDRED PERCENT.  AND THE CISCO

11:10AM 14  SHOULD ARGUE TO THE JURY THAT THEY ARE TO DISREGARD

11:10AM 15  DR. ELSTEN'S APPORTIONMENT, AND BECAUSE OF THE LEGAL STANDARD

11:10AM 16  THEY SHOULD FIND IT'S 100 PERCENT, IF IT GOES TO THE JURY, OF

11:10AM 17  COURSE.

11:10AM 18         MR. SILBERT:  RESPECTFULLY, YOUR HONOR, IT'S NOT EVEN

11:10AM 19  ATTORNEY ARGUMENT, IT WOULD BE ERROR.  IT WOULD BE ERROR TO

11:10AM 20  REQUEST 100 PERCENT OF THE PROFITS.  AND I UNDERSTAND THIS IS A

11:10AM 21  LITTLE BIT OF AN UNUSUAL SITUATION --

11:10AM 22         THE COURT:  WELL, I DON'T KNOW IF IT'S ERROR TO

11:10AM 23  REQUEST IT.  IT MIGHT BE ERROR TO -- I THINK EVEN UNDER YOUR

11:10AM 24  VIEW OF -- EVEN IF THIS GOES TO THE JURY, AND LET'S SAY CISCO

11:11AM 25  WAS PERSUASIVE AND IT CAME OUT AT 100 PERCENT, I THINK THAT I

11:11AM 1    STILL, ON POST-TRIAL EITHER POST-VERDICT BEFORE JUDGMENT, I

11:11AM 2    WOULD STILL BE AUTHORIZED AND EMPOWERED TO MODIFY THAT

11:11AM 3    APPORTIONMENT BASED ON THE EVIDENCE.  DON'T YOU AGREE?

11:11AM 4          MR. SILBERT:  WELL, YES --

11:11AM 5          THE COURT:  SO I DON'T THINK IT WOULD BE ERROR FOR ME

11:11AM 6    TO ALLOW THE ARGUMENT, BECAUSE IT IS A VALID THEORY.

11:11AM 7          MR. SILBERT:  FAIR POINT.

11:11AM 8          THE COURT:  IT JUST MAY BE THE EVIDENCE DOESN'T

11:11AM 9    SUPPORT IT.

11:11AM 10     SO NOW I THINK I'M ACTUALLY AT THE POINT WHERE I HAVE TO

11:11AM 11   DETERMINE WHETHER AN EXPERT CAN GIVE AN OPINIONS THAT ACTUALLY

11:11AM 12   A LEGAL ARGUMENT ON THE FAILURE OF PROOF, BECAUSE YOU DO HAVE

11:11AM 13   THE BURDEN OF APPORTIONMENT, THERE'S NO QUESTION.

11:11AM 14         MR. SILBERT:  YES.

11:11AM 15         THE COURT:  BUT DR. CHEVALIER CAN SAY, I DON'T FIND

11:11AM 16   DR. ELSTEN'S ECONOMIC ANALYSIS PERSUASIVE AT ALL AND YOU SHOULD

11:11AM 17   DISREGARD IT.  SHE CAN POKE HOLES IN IT.

11:12AM 18         MR. SILBERT:  YES.

11:12AM 19         THE COURT:  BUT THE NEXT STEP OF SAYING THEREFORE YOU

11:12AM 20   ARE LEFT WITH HAVING TO AWARD 100 PERCENT IS PROBABLY NOT THE

11:12AM 21   SUBJECT OF HER EXPERT OPINION.

11:12AM 22         MR. SILBERT:  AND THAT STEP, IT ALSO WOULD BE

11:12AM 23   INCONSISTENT WITH NINTH CIRCUIT CASE LAW.

11:12AM 24      AND THAT'S THE POINT I WANT TO MAKE AND I DO WANT TO POINT

11:12AM 25   OUT TO YOUR HONOR BECAUSE IT'S -- I THINK IT'S AN EASY CHAIN OF

11:12AM 1    LOGIC TO TAKE THE STEPS THAT YOUR HONOR WAS DESCRIBING, BUT IT

11:12AM 2    ACTUALLY IN THIS PARTICULAR CASE, LEADS YOU TO AN IMPROPER

11:12AM 3    RESULT, BECAUSE IT'S EASY TO SAY, WELL YOU HAVE THE BURDEN AND

11:12AM 4    THEREFORE IF YOU DON'T CARRY YOUR BURDEN TO APPORTION, MAYBE

11:12AM 5    THEY GET EVERYTHING.

11:12AM 6        BUT IN THE CREAM RECORDS CASE IN PARTICULAR AND THE ABEND

11:12AM 7    CASE AND OTHER CASES THAT WE CITE, ABEND DISCUSSES SOME OTHERS,

11:12AM 8    WHAT THEY EXPLAINED IS THAT'S NOT THE WAY THE BURDEN OF PROOF

11:12AM 9    WORKS IN THIS PARTICULAR CASE WHERE YOU ARE TALKING ABOUT AN

11:12AM 10    EQUITABLE REMEDY OF DISGORGEMENT.

11:12AM 11        SO THE FACTS OF THE CREAM RECORDS CASE ARE PARTICULARLY

11:12AM 12    INSTRUCTIVE.  IN THAT CASE THE INFRINGER PUT ON NO EVIDENCE.

11:13AM 13    AND THAT'S WHAT THEY SAID IN THE CASE, THEY DIDN'T PUT ON ANY

11:13AM 14    EVIDENCE AT ALL ON APPORTIONMENT, SO CLEARLY THEY DIDN'T CARRY

11:13AM 15    THEIR BURDEN.  AND THE PLAINTIFF SAID IN THE NINTH CIRCUIT THEY

11:13AM 16    DIDN'T PUT ON ANY EVIDENCE SO THEREFORE WE SHOULD GET WHAT WE

11:13AM 17    ASKED FOR.

11:13AM 18        THE NINTH CIRCUIT SAYS ALTHOUGH THE STATUTE IMPOSES UPON

11:13AM 19    THE INFRINGER THE BURDEN OF SHOWING THE ELEMENTS OF PROFIT

11:13AM 20    ATTRIBUTABLE TO FACTORS OTHER THAN THE COPYRIGHTED WORK,

11:13AM 21    NONETHELESS, WHETHER IT IS CLEAR AS IT IS IN THIS CASE THAT NOT

11:13AM 22    ALL THE PROFITS ATTRIBUTABLE TO THE INFRINGING MATERIAL, THE

11:13AM 23    COPYRIGHT OWNER IS NOT ENTITLED TO RECOVER ALL OF THOSE

11:13AM 24    PROFITS.

11:13AM 25        THEY TALK ABOUT THE COURT HAVING A DUTY TO MAKE AN

11:13AM  1    APPORTIONMENT EVEN IF IT THE DEFENDANT DOESN'T DO IT.  AND THEY

11:13AM  2    TALK ABOUT --

11:13AM  3          THE COURT:  BUT I GUESS, LET ME BACK UP, I DON'T HAVE

11:13AM  4    CREAM RECORDS RIGHT HERE, THERE'S A DIFFERENCE BETWEEN ALLOWING

11:13AM  5    THE EVIDENCE, AND I'M NOT INCLINED TO ALLOW THE EVIDENCE OF

11:13AM  6    ZERO APPORTIONMENT, I THINK IT'S LEGAL ARGUMENT, ALLOWING THE

11:14AM  7    ARGUMENT IS DIFFERENT THAN THE ULTIMATE JUDGMENT IN THE CASE.

11:14AM  8      AND SO BECAUSE, I MEAN I'M DOUBTFUL THAT THIS IS GOING TO

11:14AM  9    THE JURY, AND BECAUSE IT IS -- MY GUESS IS THE REVENUE NUMBER

11:14AM 10    WILL NOT BE A CONTESTED ISSUE AND THE PERCENTAGE, I WILL HAVE

11:14AM 11    OPINIONS, IT'S JUST SOME BASIC ARITHMETIC HERE ON DISGORGEMENT.

11:14AM 12    I'M NOT INCLINED, IF I DON'T HAVE TO, TO SEND IT TO THE JURY

11:14AM 13    FOR AN ADVISORY.  ACTUAL DAMAGES BEING SO DIFFERENT.

11:14AM 14      AND SO I DON'T THINK IT'S ERROR TO LET CISCO ARGUE THE

11:14AM 15    HUNDRED PERCENT.

11:14AM 16          MR. SILBERT:  WELL, I GUESS I DON'T WANT TO SPLIT

11:14AM 17    HAIRS, BUT WOULD IT BE ERROR IF THEY ARGUED IT BUT IT WASN'T

11:14AM 18    ACTUALLY AWARDED.  I WOULD SUGGEST THAT IT COULD NOT BE AWARDED

11:14AM 19    UNDER THE FACTS OF THIS CASE, IT WOULD BE ERROR TO AWARD IT AND

11:14AM 20    IF IT'S ERROR TO AWARD IT I DON'T SEE WHY YOUR HONOR WOULD LET

11:15AM 21    THEM ARGUE FOR IT CERTAINLY TO A JURY --

11:15AM 22          THE COURT:  IT CERTAINLY APPEARS WITHOUT DISPUTE IN

11:15AM 23    THIS CASE THAT CISCO'S CLI IS ONLY SOME PORTION OF THE ALLEGED

11:15AM 24    INFRINGING PRODUCT AND IT HAS SOME PERCENTAGE VALUE -- I MEAN,

11:15AM 25    IT'S ACTUALLY HARD TO IMAGINE THAT IT COULD BE 100 PERCENT OF

11:15AM   1    THE VALUE.  AND DR. CHEVALIER DOESN'T OFFER -- DOES SHE OFFER

11:15AM   2    HER OWN?

11:15AM   3            MR. PAK:  NO, SHE DOES NOT, YOUR HONOR.

11:15AM   4            THE COURT:  AND SHE DOESN'T NEED TO.

11:15AM   5            MR. SILBERT:  SHE HAS AN ADJUSTED APPORTIONMENT.  SHE

11:15AM   6    OFFERS AN ALTERNATIVE APPORTIONMENT TO MS. ELSTEN.

11:15AM   7            THE COURT:  WHICH IS WHAT PERCENTAGE?

11:15AM   8            MR. SILBERT:  I BELIEVE IT'S 12.5 FOR THE TOTAL.

11:15AM   9            MR. PAK:  THAT'S ONLY CORRECTING THE MISTAKES IN

11:15AM  10    DR. ELSTEN'S METHODOLOGY WHICH SHE SUGGESTS, BUT WE CAN GET

11:15AM  11    INTO IT MORE, YOUR HONOR, WE DON'T NEED TO EXPLAIN IT RIGHT

11:15AM  12    NOW.

11:16AM  13            THE COURT:  OKAY.  SO YOU ARE ASKING THAT I EXCLUDE

11:16AM  14    DR. CHEVALIER'S OPINION ON NO APPORTIONMENT AND THEN THERE

11:16AM  15    WAS --

11:16AM  16            MR. SILBERT:  LOST PROFITS SCENARIO 3, AND WHAT I

11:16AM  17    WOULD LIKE TO ASK THE COURT TO DO IS THINK BACK TO EARLIER THIS

11:16AM  18    MORNING IN YOUR HONOR'S DISCUSSION OF THE MARKET HARM OPINIONS

11:16AM  19    BY MR. SEIFERT.  AND THINK OF THESE TWO THINGS AS BEING

11:16AM  20    ANALOGOUS WHEN YOUR HONOR EVALUATES THEM AND EVALUATES THE

11:16AM  21    TESTIMONY.

11:16AM  22        IN THE CONTEXT OF THERE SEIFERT'S OPINION, AND I DON'T HAVE

11:16AM  23    THEM EXACTLY WRITTEN DOWN, YOUR HONOR MADE COMMENTS TO THE

11:16AM  24    EFFECT OF IF A SURVEY OF CUSTOMER IS USING THE STANDARD I WOULD

11:16AM  25    DEMAND IN A PATENT CASE FOR SOMEONE PROVING DAMAGES, NOW LET'S

11:16AM 1    BE CLEAR BY THE WAY WHEN WE ARE TALKING ABOUT LOST PROFITS, WE

11:16AM 2    ARE NOW OUT OF THE EQUITY WORLD, THIS IS ACTUAL DAMAGES WHERE

11:16AM 3    CISCO BEARS THE BURDEN OF PROOF AND THEY'VE GOT TO PROVE ACTUAL

11:17AM 4    LOST PROFITS.  IT'S MUCH MORE ANALOGOUS TO A PATENT CASE.

11:17AM 5        AND YOUR HONOR SAID, I WOULD EXPECT A SURVEY WHERE YOU

11:17AM 6    ACTUALLY ASK CUSTOMERS WHAT WAS THE BASIS OF THE DECISION.

11:17AM 7        CISCO, ITSELF, WAS CRITICIZING MR. SEIFERT FOR NOT

11:17AM 8    PERFORMING A SURVEY WHERE HE ACTUALLY ASKED CUSTOMERS WHAT WAS

11:17AM 9    THE BASIS FOR DEMAND AND WHAT WAS DRIVING CUSTOMER DEMAND OR

11:17AM 10   WOULD YOU HAVE BOUGHT THIS IF IT DIDN'T HAVE A CISCO-LIKE CLI,

11:17AM 11   ET CETERA.

11:17AM 12       NOW WHEN WE GET TO DR. CHEVALIER'S OPINIONS, IT'S DIFFERENT

11:17AM 13   FROM CISCO'S PERSPECTIVE.  SHE DIDN'T DO ANY SURVEY ON ANY OF

11:17AM 14   HER SCENARIOS.

11:17AM 15       SO IT'S A LITTLE BIT HARD TO UNDERSTAND HOW THEY ARE GOING

11:17AM 16   TO CRITICIZE MR. SEIFERT FOR THAT.  BUT EVEN ON SCENARIOS 1 AND

11:17AM 17   2 WHERE SHE DID SOMETHING VERY SIMILAR TO WHAT MR. SEIFERT DID,

11:17AM 18   WHICH IS LOOK AT A BUNCH OF DATA, MARKETING DATA, ET CETERA AND

11:17AM 19   DRAW A CONCLUSION, WE HAVEN'T MOVED TO EXCLUDE THOSE.  SHE

11:18AM 20   DIDN'T DO A SURVEY.  WE HAVEN'T MOVE TO EXCLUDE THOSE.  WE DO

11:18AM 21   NOT MOVE TO EXCLUDE THEM AND WE DON'T THINK THEY ARE GOOD OR

11:18AM 22   ACCURATE.

11:18AM 23       BUT WE DIDN'T MOVE TO EXCLUDE THEM BECAUSE WHAT SHE DID IN

11:18AM 24   SCENARIOS 1 AND 2, LIKE MR. SEIFERT, SHE LOOKED AT THE RECORD,

11:18AM 25   SHE LOOKED AT COMMUNICATIONS WITH CUSTOMERS, SHE LOOKED AT

11:18AM  1    MARKET DATA AND SALES ANALYSIS, AND SHE CONCLUDED PURPORTING TO

11:18AM  2    APPLY SOME EXPERTISE, SHE'S A PROFESSOR OF FINANCE AND

11:18AM  3    ECONOMICS, AND SHE SAID, IN MY OPINION, I'VE IDENTIFIED THESE

11:18AM  4    SALES THAT I THINK YOU WOULDN'T HAVE MADE IF YOU DIDN'T HAVE A

11:18AM  5    CISCO-LIKE CLI.

11:18AM  6         AGAIN, WE DON'T THINK SHE'S RIGHT, BUT WE HAVEN'T MOVED TO

11:18AM  7    EXCLUDE THEM.

11:18AM  8         SCENARIO 3, LETS BE CLEAR, IS NOTHING LIKE THAT.  IT -- NOT

11:18AM  9    ONLY DOES IT NOT HAVE A SURVEY, IT DOES NOT INVOLVE ANY

11:18AM  10   APPLICATION OF PURPORTED EXPERTISE.

11:18AM  11        SO IN SCENARIO 3 SHE SAYS, I'M GOING TO CONCLUDE THAT, IN

11:19AM  12   MY SCENARIO 3 I'M GOING TO SAY ARISTA WOULD HAVE BEEN UNABLE TO

11:19AM  13   MAKE "SUBSTANTIALLY ALL OF ARISTA'S SWITCH SALES."

11:19AM  14        SO THE NUMBER, UNSURPRISINGLY, THAT SHE COMES OUT TO ON

11:19AM  15   SCENARIO 3, MUCH, MUCH BIGGER THAN SCENARIOS 1 AND 2 BECAUSE

11:19AM  16   SHE'S INCLUDING THOUSAND OF CUSTOMERS, OVER A BILLION DOLLARS

11:19AM  17   OF REVENUE, THAT'S THE BASIS OF IT, AND WHAT IS HER SUPPORT AS

11:19AM  18   A PURPORTED EXPORT FOR SAYING, I'M GOING TO OPINE TO THE JURY

11:19AM  19   IN THIS SCENARIO 3 THAT ARISTA WOULD HAVE BEEN UNABLE TO MAKE

11:19AM  20   ESSENTIALLY ALL OF ARISTA'S SWITCH SALES?  IT'S THAT ARISTA

11:19AM  21   WITNESSES SAID SO.  THAT'S WHAT SHE SAYS.

11:19AM  22        THERE'S A FEW SNIPPETS OF TESTIMONY THAT SHE CITES OF A FEW

11:19AM  23   ARISTA WITNESSES WHERE, WELL, MR. SO-AND-SO SAID ON HIS

11:19AM  24   DEPOSITION AT SUCH AND SUCH DATE THAT THEY WOULD HAVE HAD A

11:19AM  25   HARD TIME TELL SELLING SWITCHES IF THEY DIDN'T HAVE -- SO I'M

11:19AM  1    GOING TO ASSUME THEY ARE RIGHT.  I'M GOING TO ASSUME IT'S TRUE

11:19AM  2    FOR ALL TIMES, I'M GOING TO ASSUME IT'S TRUE FOR EVERY

11:20AM  3    CUSTOMER.

11:20AM  4        NOW THERE ARE MANY, MANY PROBLEMS WITH THOSE SNIPPETS OF

11:20AM  5    TESTIMONY.  THEY ARE EXPLICITLY GENERALLY TALKING ABOUT A

11:20AM  6    PARTICULAR TIME PERIOD WHICH IS OUTSIDE THE STATUTE OF

11:20AM  7    LIMITATIONS, NOT TODAY.  THERE'S CLARIFICATION BY THOSE

11:20AM  8    WITNESSES THAT THEY ARE TALKING ABOUT PARTICULAR TYPES OF

11:20AM  9    CUSTOMERS THERE AND THAT OTHER TYPES OF CUSTOMER, THOSE

11:20AM 10    STATEMENT DON'T APPLY TO, ET CETERA.

11:20AM 11        BUT THE LARGER ISSUE HERE IS EXACTLY WHAT YOUR HONOR WAS

11:20AM 12    ALLUDING TO AND WHAT MR. PAK OR MR. NELSON I BELIEVE WAS

11:20AM 13    ALLUDING TO ABOUT THE PROBLEM OF HAVING AN EXPERT WHO HAS THIS

11:20AM 14    MANTEL OF AUTHORITY TALK TO A JURY AND SIMPLY ESPOUSE OPINIONS

11:20AM 15    THAT ARE NOT REALLY EXPERT OPINIONS AT ALL BECAUSE THEY HAVE A

11:20AM 16    GREATER SWAY WITH THE JURY AND THEY SEEM TO HAVE MORE

11:20AM 17    IMPORTANCE.

11:20AM 18        FOR HER TO SAY THIS ARISTA WITNESS SAID THAT THERE WOULD

11:20AM 19    BE -- THEY WOULDN'T HAVE BEEN ABLE TO SELL WITHOUT A CISCO-LIKE

11:21AM 20    CLI.  SO I'M GOING TO ADOPT THAT AS MY OPINION AND I'M A

11:21AM 21    PROFESSOR FROM YALE, AND MAYBE THAT WILL COUNT AGAINST HER, BUT

11:21AM 22    WE DON'T KNOW HOW THE JURY WILL REACT, BUT I'M A PROFESSOR FROM

11:21AM 23    YALE AND MY OPINION IS THAT ARISTA COULD NOT HAVE MADE

11:21AM 24    SUBSTANTIALLY ANY OF ITS SALES WITHOUT A CISCO-LIKE CLI.

11:21AM 25        THAT TESTIMONY CAN BE VERY WEIGHTY TO THE JURY.  IT COULD

11:21AM  1    HAVE A SIGNIFICANCE COMING FROM HER MOUTH THAT IT WOULDN'T HAVE

11:21AM  2    IF IT SIMPLY CAME INTO EVIDENCE.

11:21AM  3        IT'S NOT -- THE EVIDENCE ISN'T ANYTHING THE JURY NEEDS HELP

11:21AM  4    TO UNDERSTAND.  IF THE WITNESS SAYS THAT THE JURY CAN HEAR THE

11:21AM  5    WITNESS SAY THAT.  THEY CAN PUT ON THE STATEMENTS OF THE

11:21AM  6    WITNESSES THEY ARE TALKING ABOUT.

11:21AM  7        BUT WHAT WE BELIEVE THEY FUNDAMENTALLY CAN'T DO IS HAVE

11:21AM  8    THIS EXPERT PRESENT THAT AS ONE OF HER EXPERT OPINIONS BASED

11:21AM  9    SIMPLY ON THEY SAID SO.

11:21AM  10       THERE'S A LOT OF CASE LAW CITED IN OUR BRIEF, AND JUST WE

11:22AM  11   REVIEW SOME OF IT HERE.  UNDER RULE 702, EXPERT TESTIMONY IS

11:22AM  12   HELPFUL TO THE JURY IF IT CONCERNS MATTERS BEYOND THE COMMON

11:22AM  13   KNOWLEDGE OF THE AVERAGE LAYPERSON AND IS NOT MISLEADING.

11:22AM  14       JUDGE HENDERSON SAYS BELOW, IT IS CERTAINLY TRUE THAT

11:22AM  15   EXPERT TESTIMONY THAT SIMPLY REHASHES OTHERWISE ADMISSIBLE

11:22AM  16   EVIDENCE ABOUT WHICH THE EXPERT HAS NO PERSONAL KNOWLEDGE IS

11:22AM  17   INADMISSIBLE.

11:22AM  18       AND THERE'S MORE CASE LAW AS WELL.  SO AGAIN, WE DON'T

11:22AM  19   THINK SCENARIOS 1 AND 2 ARE VALID OR ACCURATE OR THEY CERTAINLY

11:22AM  20   DON'T RISE TO THE LEVEL OF THE SURVEY OR THE OTHER TYPE OF

11:22AM  21   INFORMATION THAT YOUR HONOR SAID YOU WOULD NORMALLY EXPECT, BUT

11:22AM  22   SCENARIO 3 IS IN A WHOLE OTHER CATEGORY ENTIRELY, AND IT'S OUR

11:22AM  23   OPINION, BEYOND THE CASE.

11:22AM  24           THE COURT:  OKAY.

11:22AM  25       MR. PAK?

11:22AM 1          MR. PAK:  I WILL BE BRIEF, YOUR HONOR.

11:22AM 2          THE COURT:  I APPRECIATE THAT.

11:22AM 3          MR. PAK:  OKAY.  ONE CASE.  STATE INDUSTRIES V. MOR

11:22AM 4   FLO.  WE AGREE WHEN WE ARE LOOKING AT LOST PROFITS ANALYSIS AND

11:22AM 5   WE ARE LOOKING AT DAUBERT ISSUES, WE SHOULD BE DRAWING

11:22AM 6   ANALOGIES TO PATENT LAW.

11:22AM 7      THERE'S WELL ESTABLISHED PATENT LAW THAT DEALS WITH LOST

11:23AM 8   PROFITS, ACCEPTABLE METHODOLOGIES.  ONE OF THE BLACK LETTER

11:23AM 9   METHODOLOGIES THAT AN EXPERT CAN USE TO SHOW LOST PROFITS IS

11:23AM 10  MOR FLO.  MOR FLO IS A MARKET SHARE ANALYSIS, YOUR HONOR.

11:23AM 11     SO YOU TAKE AN ECONOMIST LIKE DR. CHEVALIER WHO LOOKS AT

11:23AM 12  RELATIVE MARKET SHARE, MAKES ADJUSTMENTS BASED ON THE RECORD

11:23AM 13  EVIDENCE, BASED ON HER PROFESSIONAL JUDGMENT AS TO HOW TO

11:23AM 14  ALLOCATE.  BECAUSE THE QUESTION IS BUT FOR ARISTA'S INFRINGING

11:23AM 15  SALES, WHERE WOULD THOSE SALES HAVE GONE?

11:23AM 16         THE COURT:  YEAH.

11:23AM 17         MR. PAK:  AND YOU COULD DO IT EITHER ON AN

11:23AM 18  INDIVIDUALIZED CUSTOMER BASIS WHEN YOU HAVE A LARGE MARKET THAT

11:23AM 19  IS WELL STUDIED, AND WE HAVE TWO EXPERT FIRMS NOT CONNECTED TO

11:23AM 20  THIS CASE THAT HAVE DONE MARKET SHARE ANALYSIS, AND EVERY

11:23AM 21  WITNESS IN THIS CASE HAS SAID IS RELIABLE DATA, TO LOOK AT HOW

11:23AM 22  THE MARKET SHARE LOOKS IN THE SPECIFIC MARKETS THAT ARISTA AND

11:23AM 23  CISCO COMPETES IN, IT IS ABSOLUTELY BLACK LETTER LAW FOR HER TO

11:23AM 24  BE ABLE TO SAY AS AN EXPERT, MAKING ADJUSTMENTS FOR THE RECORD,

11:23AM 25  WHICH SHE DID IN THIS CASE, THAT X PERCENTAGE OF SALES THAT

11:24AM  1    WOULD HAVE GONE TO ARISTA BUT FOR THE INFRINGING PRODUCT, AND

11:24AM  2    EVERY ONE OF THESE EOS PRODUCTS HAS THE CLI WE ARE TALKING

11:24AM  3    ABOUT IN THIS CASE.

11:24AM  4              THE COURT:  YEAH.

11:24AM  5              MR. PAK:  AND THERE'S NO -- AND CONTRARY TO THE

11:24AM  6    CHARACTERIZATIONS, IT'S NOT JUST ANY WITNESS, YOUR HONOR, THE

11:24AM  7    PEOPLE I ASKED WERE THE CEO OF ARISTA, I ASKED THE SAME

11:24AM  8    QUESTIONS OF THE SENIOR VICE PRESIDENT OF CUSTOMER ENGINEERING

11:24AM  9    WHO WAS A 30(B)(6) DESIGNATED WITNESS.  I ASKED THE SAME

11:24AM 10    QUESTIONS OF MR. SWEENEY WHO IS THEIR VICE PRESIDENT OF

11:24AM 11    SOFTWARE DEVELOPMENT.  THEY ALL GAVE THE SAME RESPONSE.  CLI --

11:24AM 12    CISCO-LIKE CLI WAS A BARRIER TO ENTRY FOR US.

11:24AM 13        THEY CANNOT ESTIMATE FOR ME HOW MANY CUSTOMERS THEY WOULD

11:24AM 14    HAVE GAINED OR LOST HAD THEY NOT HAD A CISCO-LIKE CLI.  IN

11:24AM 15    FACT, THIS WHOLE DE FACTO INDUSTRY STANDARD ARGUMENT WHICH THEY

11:24AM 16    PRESENTED TO YOU AND THEY PRESSED IN THE EARLY PART OF THE CASE

11:24AM 17    WAS ALL PREDICATED ON THIS IDEA THAT WITHOUT HAVING A

11:24AM 18    CISCO-LIKE CLI, THEY COULDN'T EVEN ENTER THE MARKET.

11:24AM 19        WE KNOW THAT'S NOT TRUE BECAUSE OTHER COMPANIES LIKE

11:25AM 20    JUNIPER MADE DIFFERENT CHOICES.

11:25AM 21        BUT THEIR MARKET STRATEGY WAS GO AFTER CISCO CUSTOMERS,

11:25AM 22    COMPETE WITH SWITCHES THAT LOOK LIKE CISCO SWITCHES.

11:25AM 23        THERE'S NO EVIDENCE, AND JUST GOING TO BACK TO

11:25AM 24    MR. SEIFERT'S ARGUMENTS -- SILBERT'S ARGUMENTS ABOUT

11:25AM 25    DR. ELSTEN, NONE OF THOSE DOCUMENTS GO TO THE ISSUE OF THE

11:25AM  1    DECISIONMAKING PROCESS WITHIN CUSTOMERS.

11:25AM  2        THERE'S NO RECORD EVIDENCE AS TO HOW CUSTOMERS VALUE THESE

11:25AM  3    FEATURES WHEN THEY MAKE THE DECISION TO BUY ARISTA PRODUCTS

11:25AM  4    VERSUS OTHER PRODUCTS.

11:25AM  5        AND SO WHEN WE LOOK AT THIS QUESTION OF WHAT IS THE

11:25AM  6    EVIDENCE ON THE RECORD ABOUT CLI DEMAND DRIVING CONSUMER

11:25AM  7    DEMAND, THE RECORD EVIDENCE IS THE ONE THAT I'VE BEEN ABLE TO

11:25AM  8    ASCERTAIN FROM THEIR 30(B)(6) WITNESS, THEIR TOP EXECUTIVES AS

11:25AM  9    TO ARISTA'S MARKET STRATEGIES, HIGHLY RELEVANT.

11:26AM  10       BUT MORE IMPORTANTLY, YOUR HONOR, THE LAW DOES NOT REQUIRE

11:26AM  11   US TO DO AN INDIVIDUALIZED CUSTOMER ANALYSIS, IT DOESN'T

11:26AM  12   REQUIRE US TO DO MARKET SURVEYS WHEN WE ARE RELYING ON WELL

11:26AM  13   ESTABLISHED METHODOLOGIES SUCH AS MARKET SHARE ANALYSIS.

11:26AM  14       AND THIS IS THE SCENARIO 3 THAT DR. CHEVALIER DID FOR LOST

11:26AM  15   PROFITS.

11:26AM  16           THE COURT:  SO THE MARKET SHARE ANALYSIS IS IN

11:26AM  17   ADDITION TO THE ARISTA STATEMENTS?

11:26AM  18           MR. PAK:  THAT'S RIGHT, YOUR HONOR.

11:26AM  19       SO WHAT WE HAVE -- THIS IS NOT JUST SIMPLY VOUCHING THE

11:26AM  20   TESTIMONY OF ARISTA, SHE THEN TAKES MARKET DATA THAT SHE'S

11:26AM  21   WELL-TRAINED TO ANALYZE.  SHE TAKES THE -- SHE MAKES

11:26AM  22   CORRECTIONS AND ADJUSTMENTS GIVEN THE FACTUAL RECORD, AND

11:26AM  23   SPECIFICALLY, SHE ALLOWS FOR THE POSSIBILITY THAT 20 PERCENT OF

11:26AM  24   THE CUSTOMERS MAY PREFER LINUX RATHER THAN CLI, BASED ON THE

11:26AM  25   TESTIMONY OF ONE OF THEIR CHIEF EXECUTIVES, MAKES CORRECTIONS,

11:26AM 1      THEN PROVIDES THE MARKET SHARE ANALYSIS.

11:26AM 2          THIS IS BLACK LETTER LAW.  AND THIS IS SHELDON V. MGM,

11:26AM 3      ANOTHER CASE THAT ADOPTS APPORTIONMENT FROM PATENT LAW TO

11:26AM 4      COPYRIGHT CASES.  WE HAVE JARVIS V. K2, ACTUAL DAMAGES

11:27AM 5      CALCULATED AS TO WHAT A WILLING BUYER WOULD HAVE PAID A WILLING

11:27AM 6      SELLER.  AND ALSO ADOPTING THIS LOST PROFITS MARKET SHARE

11:27AM 7      ANALYSIS.

11:27AM 8          SO IT'S A QUESTION TO THE EXTENT THAT THEY HAVE, THEY THINK

11:27AM 9      CONFLICTING TESTIMONY FROM THEIR OWN WITNESSES ABOUT THE

11:27AM 10     IMPORTANCE OF CLI AT DIFFERENT TIME PERIODS.  THAT'S TYPICAL

11:27AM 11     MATERIAL FOR CROSS-EXAMINATION AND DIRECT EXAMINATION AT TRIAL.

11:27AM 12         BUT IN TERMS OF METHODOLOGY, YOUR HONOR, THAT CASE IS NOT

11:27AM 13     CONTESTED IT ESTABLISHES MARKET SHARE ANALYSIS.

11:27AM 14             MR. SILBERT:  MAY I HAVE 60 SECONDS ON MARKET SHARE?

11:27AM 15             THE COURT:  SURE.

11:27AM 16             MR. SILBERT:  AS YOUR HONOR KNOWS, THERE ARE THREE

11:27AM 17     STEPS IN A LOST PROFITS ANALYSIS.

11:27AM 18         STEP 1 IS YOU WOULD NOT HAVE MADE THIS SALE, YOU THE

11:27AM 19     DEFENDANT, BUT FOR YOUR INFRINGEMENT.  THAT'S THE FIRST THING

11:28AM 20     TO PROVE.  WHAT SALES WOULD YOU NOT HAVE MADE HAD YOU NOT

11:28AM 21     INFRINGED.

11:28AM 22         THE SECOND STEP IS, IF YOU, THE DEFENDANT, HAD NOT MADE

11:28AM 23     THAT SALE, WE, THE PLAINTIFF, WOULD HAVE MADE THAT SALE OR SOME

11:28AM 24     PORTION OF THOSE SALES.

11:28AM 25             AND THEN THE THIRD STEP IS, IF WE MADE THOSE SALES, HERE'S

11:28AM  1    HOW MUCH PROFIT WE WOULD HAVE MADE ON THOSE SALES AND NOW YOU

11:28AM  2    HAVE TO GIVE US THAT PROFIT.

11:28AM  3        THE MARKET SHARE ANALYSIS, IT IS APPLIED IN STEP NUMBER 2,

11:28AM  4    THAT MR. PAK WAS TALKING ABOUT.  IN OTHER WORDS, AND THEN SHE

11:28AM  5    ALSO APPLIES SOME ACCOUNTING AND MATH IN STEP NUMBER 3.

11:28AM  6        SHE USES THE SAME MARKET SHARE ANALYSIS AND THE SAME MATH

11:28AM  7    IN HER SCENARIOS 1 AND 2.  THE PROBLEM WITH HER SCENARIO 3 IS

11:28AM  8    IN STEP 1, BECAUSE WHEREAS IN SCENARIOS 1 AND 2 SHE LOOKS AT A

11:28AM  9    BUNCH OF DATA, PURPORTS AT LEAST TO APPLY SOME EXPERTISE AND

11:28AM  10   SAYS, I'VE IDENTIFIED THESE SALES THAT IN MY EXPERT OPINION I

11:28AM  11   THINK YOU WOULD NOT HAVE MADE, THAT THOSE ARE SCENARIOS 1 AND

11:29AM  12   2.

11:29AM  13       IN SCENARIO 3 SHE DOESN'T.  AND THAT'S WHAT THE WHOLE

11:29AM  14   OPINION HINGES ON.  SHE STARTS WITH SAYING IN STEP 1 YOU WOULD

11:29AM  15   NOT HAVE MADE SUBSTANTIALLY ALL OF YOUR SWITCH SALES

11:29AM  16   SUBSTANTIALLY ALL, THOSE ARE HER WORDS.  AND HOW DO I KNOW

11:29AM  17   THAT?  BECAUSE SO-AND-SO SAID SO.  THAT'S THE ONLY BASIS, THE

11:29AM  18   ONLY BASIS.

11:29AM  19       AND THAT'S THE PROBLEM.  EVERYTHING ELSE IS ANCILLARY TO

11:29AM  20   THAT.

11:29AM  21           THE COURT:  SO THE MARKET SHARE ANALYSIS IS ONLY IN

11:29AM  22   STEP 2.

11:29AM  23           MR. SILBERT:  IT'S THE TAIL ON THE DOG, TO SAY THE

11:29AM  24   LEAST.  EXACTLY.

11:29AM  25           MR. PAK:  YOUR HONOR, JUST QUICKLY, THIS IS EXACTLY

11:29AM 1    STATED IN MOR FLO.  INSTEAD OF DOING AN INDIVIDUALIZED BUT FOR

11:29AM 2    ANALYSIS, THAT CASE LAW ALLOWS INTELLECTUAL PROPERTY OWNERS TO

11:29AM 3    ESTABLISH ALL THE PRONGS OF LOST PROFITS BY LOOKING AT MARKET

11:29AM 4    SHARE AND MAKING REASONABLE ASSUMPTIONS ABOUT WHAT ARE THE

11:29AM 5    MARKET WILL TELL YOU.

11:29AM 6        THE COURT:  I WILL TAKE A LOOK AT THAT.

11:29AM 7        OKAY.  WE ARE DOING PRETTY WELL.  WE ARE GOING TO MOVE ON

11:29AM 8    THEN TO THE LAST ONE WHICH IS DR. CLARK.  AND I DON'T THINK I

11:30AM 9    MADE ANY COMMENTS ABOUT DR. CLARK WHEN I STARTED.  DR. CLARK

11:30AM 10   GOT CAUGHT IN THE TIME SCHEDULE HERE, AS DID CISCO'S EXPERT.

11:30AM 11   SO IT'S CERTAINLY --

11:30AM 12       MR. SILBERT:  I DON'T WANT TO DENY MR. JAFFE HIS

11:30AM 13   MOMENT IN THE SUN.  I THINK WE WOULD BE HAPPY TO SUBMIT IT ON

11:30AM 14   THE PAPERS, AS IT IS A SIMPLE ISSUE.

11:30AM 15       MR. JAFFE:  IF YOU HAVE ANY QUESTIONS.

11:30AM 16       THE COURT:  LET ME JUST STATE WHAT I THINK I'VE

11:30AM 17   GLEANED AND THEN YOU CAN CORRECT ME.  I DON'T WANT YOU TO MISS

11:30AM 18   THE OPPORTUNITY TO SET ME STRAIGHT ON IT.

11:30AM 19       MR. JAFFE:  CERTAINLY.

11:30AM 20       THE COURT:  CLEARLY, DR. CLARK CAN ONLY TESTIFY

11:30AM 21   OPINIONS THAT ARE CONSISTENT WITH THE COURT'S ACTUAL CLAIMS

11:30AM 22   CONSTRUCTION.  SO THAT WILL BE A LIMITATION.  I DON'T THINK

11:30AM 23   THAT'S A REMARKABLE STATEMENT HERE.

11:30AM 24       I WOULD ALLOW HIM TO TESTIFY AS TO ANY OPINIONS THAT ARE IN

11:30AM 25   HIS REPORT, AND TO THE EXTENT THAT HE GAVE AN OPINION ON

11:31AM   1    ALTERNATE PROPOSED CONSTRUCTIONS AND GOT IT, AND HAD AN OPINION

11:31AM   2    ON ONE I ADOPTED, THEN HE'S FINE.

11:31AM   3        TO THE EXTENT AT HIS DEPOSITION HE ULTIMATELY GAVE AN

11:31AM   4    OPINION BASED ON THE, MY CLAIMS CONSTRUCTION WHICH WAS ONLY A

11:31AM   5    COUPLE OF DAYS EARLIER, I WOULD ALLOW THAT.

11:31AM   6        AND HERE'S WHERE THE PROBLEM COMES IN, AND MAYBE YOU CAN

11:31AM   7    HELP ME OUT.  IT'S ARGUED THAT FOR THE TWO TERMS THAT I CHANGED

11:31AM   8    OR THAT -- I CAN'T REMEMBER HOW THEY WERE CHANGED, BUT FOR

11:31AM   9    THOSE TWO TERMS, TO THE EXTENT HE WOULD SAY THAT HIS OPINION,

11:31AM  10    ALTHOUGH NOT INCORPORATING EXPRESSLY MY CLAIMS CONSTRUCTION, IS

11:31AM  11    NOT AFFECTED MATERIALLY BY THE DIFFERENCE.  THAT'S WHERE THE

11:31AM  12    ISSUE IS HERE.

11:31AM  13        I ACTUALLY WOULD ALLOW HIM, I'M INCLINED TO ALLOW HIM TO

11:31AM  14    TESTIFY AND EXPLAIN WHY HIS OPINION, ALTHOUGH NOT EXPRESSLY

11:32AM  15    INCORPORATING MY CONSTRUCTION, IS CONSISTENT WITH MY

11:32AM  16    CONSTRUCTION.  AND HE WILL HAVE TO TALK HIMSELF OUT INTO THAT.

11:32AM  17    BUT THAT'S WHAT I WOULD LET HIM DO.

11:32AM  18        SO TELL ME WHY I SHOULD NOT, OR MAYBE YOU HAVE NO OBJECTION

11:32AM  19    TO THAT.

11:32AM  20            MR. JAFFE:  SO I THINK THERE'S TWO POINTS.

11:32AM  21        FIRST, ON THE FIRST ISSUE WHICH IS FOR THE CONSTRUCTIONS

11:32AM  22    THAT THE COURT ADOPTED THAT WERE NOT PROPOSED BY EITHER PARTY,

11:32AM  23    DR. CLARK ADMITTED IN HIS DEPOSITION THAT THAT DOES AFFECT HIS

11:32AM  24    OPINIONS.

11:32AM  25            THE COURT:  OKAY, YEAH.

11:32AM  1          MR. JAFFE:  AND SO THE ULTIMATE CONCLUSION THAT HE

11:32AM  2  REACHES AS TO WHETHER SOMETHING IS OBVIOUS OR WHETHER SOMETHING

11:32AM  3  IS ANTICIPATED, IS THEREFORE FAULTY AS A GENERALLY MATTER.  SO

11:32AM  4  HE DOESN'T HAVE ANY OPINIONS ON THE ULTIMATE ISSUES AS TO

11:32AM  5  ANTICIPATION OR OBVIOUSNESS THAT APPLY THE COURT'S

11:32AM  6  CONSTRUCTION.

11:32AM  7      SO IT'S NOT THE CASE THAT WE COULD LOOK AT HIS REPORT AND

11:32AM  8  PUZZLE TOGETHER THE OPINIONS THAT HE WOULD HAVE HAD.

11:32AM  9          THE COURT:  THAT'S YOUR VIEW, AND OF COURSE

11:32AM  10  MR. SILBERT, IS THIS YOUR BAILIWICK AS WELL?

11:33AM  11      I WILL HEAR FROM HIM AS TO WHETHER IN THE DEPOSITION

11:33AM  12  DR. CLARK ACTUALLY SAID WELL, EVEN THOUGH I DIDN'T APPLY THAT

11:33AM  13  CONSTRUCTION, IT DOESN'T CHANGE MY OPINION.  I THINK THAT MAY

11:33AM  14  BE WHERE WE ARE.

11:33AM  15      SO YOU DON'T OBJECT, OBVIOUSLY THIS IS ONLY ABOUT THE TWO

11:33AM  16  INSTANCES WHERE THE PARTIES DIDN'T KNOW WHICH WAY I WAS GOING

11:33AM  17  AND, BECAUSE I DIDN'T PICK YOUR SUGGESTIONS.

11:33AM  18          MR. JAFFE:  IT MIGHT BE HELPFUL TO GIVE AN EXAMPLE.

11:33AM  19      SO I PULLED UP SLIDE 5 HERE.

11:33AM  20          THE COURT:  OKAY.

11:33AM  21          MR. JAFFE:  AND SO THIS IS DURING DR. CLARK'S

11:33AM  22  DEPOSITION.  AND I READ TO HIM YOUR REPORT AND I SAID, IS THIS

11:33AM  23  YOUR OPINION?  AND HE SAYS NO, IT'S NOT MY OPINION ANYMORE.

11:33AM  24          THE COURT:  OKAY.

11:33AM  25          MR. JAFFE:  SO IT WASN'T THE CASE WHERE HIS OPINION

11:33AM   1    STILL HOLDS.

11:33AM   2              THE COURT:  ALL RIGHT.

11:33AM   3              MR. JAFFE:  BUT IT'S -- INSTEAD, THE OPINION IS

11:33AM   4    FAULTY.

11:33AM   5         AND THE OTHER THING I WANTED TO ADD IN ADDITION, IS EVEN

11:33AM   6    UNDER THE COURT'S CONSTRUCTION, DR. CLARK DID A NEW OPINION

11:33AM   7    THAT WE DON'T THINK IS ADMISSIBLE, BUT TO THE EXTENT THE COURT

11:34AM   8    IS WILLING TO HEAR IT, THE NEW OPINION SAYS EVEN READING THE

11:34AM   9    COURT'S CLAIM CONSTRUCTION, I STILL DON'T HAVE ANY OPINIONS.

11:34AM  10         UNDER HIS VIEW OF THE CLAIM CONSTRUCTION ORDER, THERE IS NO

11:34AM  11    INVALIDITY OPINIONS TO OFFER.  SO THIS IS EVEN --

11:34AM  12              THE COURT:  BUT HE'S LOCKED INTO HIS TESTIMONY.

11:34AM  13              MR. JAFFE:  THAT'S RIGHT.

11:34AM  14              THE COURT:  I DON'T HAVE A PROBLEM WITH THAT.  IF HE

11:34AM  15    SAYS I DON'T HAVE AN OPINION THEN HE CAN'T OFFER ONE AT TRIAL.

11:34AM  16              MR. JAFFE:  RIGHT.

11:34AM  17         SO WE ARE MOVING, BECAUSE HIS ULTIMATE CONCLUSION, IF HE

11:34AM  18    WERE TO GET UP ON THE WITNESS STAND AND SAY, I THINK THIS IS

11:34AM  19    ANTICIPATED, I THINK THIS IS RENDERED OBVIOUS, THAT CONCLUSION

11:34AM  20    WOULD BE A FAULTY CONCLUSION TO OFFER BECAUSE THE ONLY

11:34AM  21    TESTIMONY THAT'S BEEN DISCLOSED, THE ONLY OPINIONS THAT HAVE

11:34AM  22    BEEN DISCLOSED ARE UNDER THE WRONG CONSTRUCTIONS.

11:34AM  23         SO IF HE WOULD GET UP AND TESTIFY AS TO THE ULTIMATE

11:34AM  24    CONCLUSIONS ON VALIDITY, THAT WOULD BE INADMISSIBLE UNDER 702.

11:34AM  25              THE COURT:  SO I THINK MAYBE -- I DO UNDERSTAND WHAT

11:34AM 1    YOU ARE SAYING.  HE MAY NOT TESTIFY AS TO OPINIONS NOT OFFERED

11:35AM 2    IN HIS REPORT OR HIS DEPOSITION.

11:35AM 3        SO HERE WHERE YOU ARE SHOWING ME HE SAID I HAVE NO OPINION,

11:35AM 4    I WOULD NOT ALLOW HIM TO COME IN AT TRIAL WITH AN OPINION.  SO

11:35AM 5    THAT'S PRETTY BASIC THOUGH.

11:35AM 6        I MEAN, THAT'S -- AND YOU OF COURSE, SHOULD HE GO INTO THAT

11:35AM 7    AREA, YOU WOULD OBJECT, YOU WOULD SHOW ME HIS DEPOSITION

11:35AM 8    TESTIMONY.  IT'S, YOU KNOW, I NEVER CAN HAVE FULL COMMAND OF

11:35AM 9    THE EXPERT REPORT SO THIS IS TYPICAL.  THAT'S NOT A

11:35AM 10   PARTICULARLY DIFFICULT RULING TO MAKE.

11:35AM 11       THEN WE WILL SEE WHAT HE'S ACTUALLY ASKED TO OPINE ON

11:35AM 12   BECAUSE I CAN'T FORECLOSE A PARTICULAR QUESTION, I DON'T KNOW

11:35AM 13   WHAT IT WILL BE.  AND YOU WILL JUST HAVE TO BE -- I CAN GIVE A

11:35AM 14   HIGH LEVEL RULING HERE THAT HE'S LIMITED TO THE OPINIONS HE'S

11:35AM 15   OFFERED IN HIS REPORTS AND IN HIS DEPOSITION AND NO MORE.

11:35AM 16            MR. JAFFE:  WELL, I THINK IF I CAN BACK UP --

11:35AM 17            THE COURT:  SO YOU WANT A LITTLE MORE PROTECTION.

11:35AM 18            MR. JAFFE:  I AGREE WITH EVERYTHING YOUR HONOR JUST

11:35AM 19   SAID.

11:35AM 20       BUT I THINK IF YOU BACK UP AND LOOK AT THE LEGAL STANDARD

11:36AM 21   WE ARE LOOKING AT HERE FROM A DAUBERT PERSPECTIVE, WHICH IS

11:36AM 22   TESTIMONY FROM A TECHNICAL EXPERT THAT'S BASED ON THE WRONG

11:36AM 23   CONSTRUCTION, IS NOT RELEVANT AND SHOULD BE EXCLUDED.

11:36AM 24       SO WE AGREE FROM A DISCLOSURE POINT OF VIEW THAT THERE ARE

11:36AM 25   NO OPINIONS, BUT ADDITIONALLY UNDER 702 THESE OPINIONS ARE NOT

11:36AM  1    RELEVANT BUT THEY ARE ALSO NOT RELIABLE OR HELPFUL TO THE JURY

11:36AM  2    BECAUSE THEY ARE BASED ON THE WRONG CONSTRUCTIONS.

11:36AM  3            THE COURT:  OKAY.  AND I THINK THAT'S A FAIR

11:36AM  4    STATEMENT OF THE LAW.

11:36AM  5        I DON'T THINK -- I WOULD BE SURPRISED IF ARISTA WAS GOING

11:36AM  6    TO OFFER AN OPINION BASED ON A CONSTRUCTION I DIDN'T ADOPT.

11:36AM  7            MR. JAFFE:  SO I THINK THE SUM TOTAL IS THERE'S

11:36AM  8    NOTHING LEFT FOR DR. CLARK --

11:36AM  9            THE COURT:  THAT'S NOT FOR ME TO SAY.

11:36AM  10       I MEAN, THAT'S TOO BIG FOR ME TO RULE THAT HE CAN'T TESTIFY

11:36AM  11   AT ALL.  I NEED TO MAKE THESE RULINGS MORE NARROWLY FOCUSED, AS

11:36AM  12   WAS YOUR MOTION.

11:36AM  13           MR. JAFFE:  ABSOLUTELY.

11:36AM  14           THE COURT:  THE RESULT MAY BE WHAT YOU ARE SUGGESTING

11:36AM  15   IS THERE'S NOTHING MORE FOR HIM TO SAY, BUT I'M NOT GOING TO

11:36AM  16   PARSE THROUGH HIS ENTIRE REPORT TO MAKE THAT DETERMINATION.

11:37AM  17           MR. JAFFE:  FAIR ENOUGH.

11:37AM  18       AND THEN AS TO THE LAST POINT WHICH IS HIS OWN OPINION HERE

11:37AM  19   ON SLIDE 6, IS THAT EVEN READING THE CLAIM CONSTRUCTION ORDER,

11:37AM  20   HE DOESN'T HAVE ANY NEW VALIDITY OPINIONS TO OFFER.

11:37AM  21       SO THAT'S KIND OF WHERE WE ARE LEFT IN TERMS OF WHAT DOES

11:37AM  22   HE HAVE TO OFFER THE JURY THAT'S RELEVANT.

11:37AM  23       BUT UNLESS YOU HAVE ANYTHING FURTHER.

11:37AM  24           THE COURT:  MR. SILBERT, LET'S SEE WHAT AREA OF

11:37AM  25   DISAGREEMENT WE HAVE HERE.

11:37AM 1    MR. SILBERT:  I DON'T THINK WE DISAGREE AT ALL WITH

11:37AM 2    WHAT YOUR HONOR SAID, AND I THINK WE ARE FINE WITH THE TYPE OF

11:37AM 3    RULING THAT YOUR HONOR ARTICULATED.

11:37AM 4        JUST TO CLARIFY, WHAT DR. CLARK SAID WAS, NOW READING THE

11:37AM 5    COURT'S CLAIM CONSTRUCTION, THERE ARE WAYS IN WHICH I DON'T

11:37AM 6    THINK THAT THE PRIOR ART ACTUALLY PRACTICES THE CLAIM, BUT IT

11:37AM 7    IS HIS OPINION THAT THE PRIOR ART WORKS THE SAME WAY THAT

11:37AM 8    ARISTA'S PRODUCT DOES.

11:37AM 9        SO WHAT HE SAYS IS, THE WAY THAT I WOULD READ THIS

11:37AM 10   CONSTRUCTION, I DON'T THINK IT WOULD READ ON THIS, BUT I AM

11:38AM 11   OPINING THAT THIS, IN THE PRIOR ART, IS THE SAME AS WHAT

11:38AM 12   ARISTA'S PRODUCT DOES.

11:38AM 13       SO IF SOMEBODY DISAGREED WITH ME, THEN THEY MIGHT DISAGREE

11:38AM 14   WITH ME.  BUT THOSE ARE HIS OPINIONS.

11:38AM 15       THE COURT:  SO I'M A LITTLE LOST.  I'M JUST TRYING TO

11:38AM 16   UNDERSTAND.

11:38AM 17       THE ARISTA'S PRODUCT PRACTICES THE PRIOR ART, BUT HE HAS NO

11:38AM 18   OPINION AS TO WHETHER THE PRIOR ART INVALIDATES THE '526

11:38AM 19   PATENT; IS THAT CORRECT?

11:38AM 20       MR. SILBERT:  WHAT HE SAYS IS, IN CERTAIN RESPECTS,

11:38AM 21   IF ARISTA'S PRODUCT DOES, IF THIS WERE CONSIDERED TO BE

11:38AM 22   PRACTICING THIS LIMITATION, THEN IT'S CLEARLY DISCLOSED IN THE

11:38AM 23   PRIOR ART.  THAT'S WHAT HE SAYS.

11:38AM 24       MR. JAFFE:  YOUR HONOR, IF I MAY ADDRESS THAT FOR A

11:38AM 25   MOMENT --

11:38AM 1        THE COURT:  THAT MAKES MY HEAD HURT A LITTLE BECAUSE

11:38AM 2   HE'S BASICALLY SAYING IF THE JURY FINDS INFRINGEMENT THEN IT'S

11:38AM 3   OBVIOUS -- I'M NOT SURE WHERE THAT -- I'M NOT SURE I UNDERSTAND

11:39AM 4   THAT.

11:39AM 5        MR. SILBERT:  THAT'S ONLY WITH RESPECT TO I THINK ONE

11:39AM 6   LIMITATION.  HE HAS LOTS OF OTHER OPINIONS ABOUT THE OTHERS.

11:39AM 7        THE COURT:  SURE, SURE.

11:39AM 8        MR. SILBERT:  I THINK THE SUM TOTAL OF IT IS WE DON'T

11:39AM 9   DISAGREE WITH ANYTHING YOUR HONOR SAYS.

11:39AM 10     HE'S LIMITED TO WHAT HE SAID, THE OPINIONS HE EXPRESSED IN

11:39AM 11  HIS DEPOSITION.

11:39AM 12       THE COURT:  AND HE CAN'T TESTIFY AS TO OPINIONS THAT

11:39AM 13  ARE NOT BASED ON THE COURT'S ACTUAL CONSTRUCTIONS.

11:39AM 14       MR. SILBERT:  SURE, NOR WOULD WE ASK HIM TO.

11:39AM 15       THE COURT:  I THINK THAT GIVES YOU THE RULING YOU ARE

11:39AM 16  LOOKING FOR.

11:39AM 17       MR. JAFFE:  YES, WITH THE CAVEAT THAT IF DR. CLARK

11:39AM 18  SHOWS UP AND SAYS, I HAVE DISCLOSED OPINIONS THAT IT'S INVALID,

11:39AM 19  THOSE AREN'T IN HIS REPORT, BASED ON THE COURT'S CONSTRUCTIONS.

11:39AM 20       THE COURT:  AND THAT WOULD NOT -- THAT'S AN

11:39AM 21  UNFORTUNATE PART OF THE TRIAL EXERCISE IS THAT MID-TRIAL YOU

11:39AM 22  ARE SCURRYING THROUGH THE REPORTS AND DEPOSITIONS AND I AM AT

11:39AM 23  YOUR MERCY TO SHOW THEM TO ME.

11:39AM 24     IT'S ONE OF THE MOST DIFFICULT RULINGS THAT I HAVE TO MAKE

11:39AM 25  DURING TRIAL BECAUSE I DON'T HAVE COMMAND OF THE REPORTS AND I

11:40AM  1    COULD NEVER.

11:40AM  2         SO BE FOREWARNED THAT WHEN YOU OFFER DR. CLARK FOR A

11:40AM  3    CERTAIN OPINION, THAT YOU HAVE TO BE READY TO PULL OUT AND SHOW

11:40AM  4    ME THAT IT'S THERE.  BECAUSE IF YOU CAN'T SHOW IT TO ME, WE ARE

11:40AM  5    DONE.

11:40AM  6              MR. SILBERT:  ABSOLUTELY.

11:40AM  7              THE COURT:  AND THAT'S THE WAY IT GOES, THAT'S JUST

11:40AM  8    COMMON.

11:40AM  9         SO I THINK MY RULING WILL BE AT THIS MORE GENERIC LEVEL,

11:40AM  10   AND OF COURSE CISCO WILL HAVE TO BE VIGILANT IN POSING THOSE

11:40AM  11   OBJECTIONS, BUT I CAN'T GET INTO DEEPER AND PARSE EACH LINE OF

11:40AM  12   HIS DEPOSITION TO SAY THIS IS IN AND THIS IS OUT.  I DON'T

11:40AM  13   ACTUALLY KNOW WHICH ONES YOU WILL OFFER.  SO IT'S JUST NOT WHAT

11:40AM  14   I WOULD DO.

11:40AM  15        SO I THINK, IN A SENSE, CISCO IS GOING TO WIN THIS ONE, BUT

11:40AM  16   IT'S ONLY WINNING A BATTLE AND THE WAR IS STILL TO BE FOUGHT ON

11:40AM  17   SO MANY THINGS.

11:40AM  18              MR. SILBERT:  THANK YOU, YOUR HONOR.

11:40AM  19              MR. PAK:  THANK YOU, YOUR HONOR.

11:41AM  20              THE COURT:  ALL RIGHT.  GOOD.  THAT WAS PRETTY GOOD.

11:41AM  21        HERE'S WHAT I WOULD LIKE TO DO, I THINK WE HAVE COVERED ALL

11:41AM  22   OF THE DAUBERT MOTIONS, AND I WILL THEN -- I THINK WE HAVE

11:41AM  23   WORKED THROUGH A LOT OF IT, SO I'M REALLY FEELING LIKE THIS IS

11:41AM  24   GOING TO MOVE ALONG PRETTY WELL BASED ON THE EXCELLENT WORK

11:41AM  25   THAT YOU'VE DONE TO PRESENT IT TO ME, AND I THANK YOU FOR THAT.

11:41AM 1      I WOULD LIKE TO TAKE JUST A FIVE-MINUTE BREAK AND THEN I

11:41AM 2   WOULD LIKE TO SEE COUNSEL IN CHAMBERS.  I JUST WANT TO DO SOME

11:41AM 3   OF THE PLANNING AND HOUSEKEEPING DISCUSSION.

11:41AM 4      I DON'T ACTUALLY WANT IT ON THE RECORD, AND IT WOULD BE

11:41AM 5   ATTORNEYS ONLY.  I KNOW YOU MAY HAVE SOME CLIENT

11:41AM 6   REPRESENTATIVES HERE, BUT WE ARE JUST GOING TO TALK ABOUT THE

11:41AM 7   TRIAL PREP ITSELF.

11:41AM 8      SO LET'S TAKE FIVE MINUTES, THEN I WILL SEE YOU IN

11:41AM 9   CHAMBERS.

11:41AM 10      (WHEREUPON, THE PROCEEDINGS IN THIS MATTER WERE CONCLUDED.)

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1

2

3

4                    **CERTIFICATE OF REPORTER**

5

6

7

8            I, THE UNDERSIGNED OFFICIAL COURT

9    REPORTER OF THE UNITED STATES DISTRICT COURT FOR

10   THE NORTHERN DISTRICT OF CALIFORNIA, 280 SOUTH

11   FIRST STREET, SAN JOSE, CALIFORNIA, DO HEREBY

12   CERTIFY:

13            THAT THE FOREGOING TRANSCRIPT,

14   CERTIFICATE INCLUSIVE, CONSTITUTES A TRUE, FULL AND

15   CORRECT TRANSCRIPT OF MY SHORTHAND NOTES TAKEN AS

16   SUCH OFFICIAL COURT REPORTER OF THE PROCEEDINGS

17   HEREINBEFORE ENTITLED AND REDUCED BY COMPUTER-AIDED

18   TRANSCRIPTION TO THE BEST OF MY ABILITY.

19

20

21

22

23

24   _____

25   SUMMER A. FISHER, CSR, CRR
     CERTIFICATE NUMBER 13185          DATED: 9/12/16