# Ex. I

```
 1                  UNITED STATES DISTRICT COURT

 2                NORTHERN DISTRICT OF CALIFORNIA

 3                        SAN JOSE DIVISION

 4   _____
                                     )
 5   CISCO SYSTEMS, INC.,            )
                                     )
 6              Plaintiff,           )
                                     )
 7   vs.                             ) No. 5:14-cv-05344-BLF
                                     )      (PSG)
 8                                   )
     ARISTA NETWORKS, INC.,          )
 9                                   )
                Defendant.           )
10                                   )
     _____)
11

12

13

14

15

16

17       HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

18       VIDEOTAPED DEPOSITION OF CHARLES GIANCARLO

19              Redwood Shores, California

20                Monday, April 25, 2016

21

22

23

24   Reported by:  LANA L. LOPER, RMR, CRR, CCP,
                   CME, CLR, CSR No. 9667
25
```

U.S. LEGAL SUPPORT
(415) 362-4346

```
 1                 UNITED STATES DISTRICT COURT

 2               NORTHERN DISTRICT OF CALIFORNIA

 3                       SAN JOSE DIVISION

 4   _____
                                            )
 5   CISCO SYSTEMS, INC.,                   )
                                            )
 6                  Plaintiff,              )
                                            )
 7   vs.                                    )  No. 5:14-cv-05344-BLF
                                            )           (PSG)
 8                                          )
     ARISTA NETWORKS, INC.,                 )
 9                                          )
                    Defendant.              )
10                                          )
     _____)
11

12

13

14

15

16

17

18        Deposition of CHARLES GIANCARLO, taken on

19   behalf of Plaintiff, at 555 Twin Dolphin Drive, 5th

20   Floor, Redwood Shores, California beginning at 9:43 a.m.

21   and ending at 2:55 p.m., on Monday, April 25, 2016,

22   before Lana L. Loper, RMR, CRR, CCP, CME, CLR, CSR No.

23   9667.

24

25
```

 1  it carefully to make sure you agreed with every aspect of
 2  the document?
 3       A    I did review it, yes.
 4       Q    And as you sit here today, you remain willing to
 5  be subject to the penalty of perjury for the contents of
 6  these documents, at least as of February 2003?
 7       A    Yes.
 8       Q    Okay.  If you could please turn to -- and let me
 9  take a step back and say or ask you this:
10            Without disclosing the substance of any
11  attorney-client communications, what was the point of
12  this declaration when you signed it in February 2003?
13       A    This was part of either the preparation or of
14  the actual litigation of the Cisco lawsuit that we opened
15  against Huawei.
16            So in our earlier conversation, we were leading
17  up to this point in time.  And I had mentioned that they
18  had opened up a sales office in Texas and had negotiated
19  a reseller agreement with the EOS company.  And it's a
20  matter of public record.
21            We decided to sue Huawei on the basis of
22  utilizing our source code to sell substantially identical
23  product.
24            I want to make it clear, we made the decision to
25  sue them in the U.S., not in China, and that the focus

```
 1   was on protecting our source code.
 2        Q   Not protecting, for example, the second meaning
 3   of CLI that you described today, which is the textual
 4   commands and the structure of those textual commands?
 5        A   My entire focus as the business leader in this
 6   was on the source code.
 7            If one doesn't protect your source code, it can
 8   be deemed to be in the public -- you know, it could be
 9   deemed in the public -- you have to protect your
10   intellectual property in order to maintain its ability to
11   be protected.
12            As I mentioned, the source code defines the
13   entire operation of the product.  You know, the hardware
14   can be easily recreated, and you put the source code on
15   top of it, and you have the identical product.
16            And so that was the entire focus, my entire
17   focus from the beginning, in terms of our -- in terms of
18   our complaint against Huawei.
19        Q   Okay.  So you, when you submitted this
20   declaration, or when you signed this declaration in
21   February 2013 (sic), you, as a high-ranking executive at
22   Cisco with over 10,000 employees reporting directly or
23   indirectly to you --
24        A   Yes.
25        Q   -- your aim was to protect Cisco's source code?
```

```
 1       Q   Cisco CLI can mean source code?
 2       A   Correct.
 3       Q   Or Cisco CLI can mean, I think what you called
 4   before, textual commands and elaborate structure of those
 5   textual commands?
 6       A   Correct.
 7       Q   You testified, I think earlier today, that you
 8   thought, in 2003, you thought -- 2014, Cisco was entitled
 9   to copyright -- legal protection for its source code?
10       A   Correct.
11       Q   But that Cisco was not entitled to any such
12   protection for the textual commands and structure of
13   those commands within Cisco CLI?
14       A   I believe that's now open industry standard.
15       Q   When do you believe that became open industry
16   standard, mainly the textual commands and structure of
17   Cisco CLI?
18       A   I can tell you, I believed -- when I signed this
19   document, I believed it in the early 2000s.  I don't
20   think I thought much about it before that.
21       Q   How can you be certain?  It's now -- it's now
22   spring of 2016.
23       A   Yeah.
24       Q   And you're telling me now, over 13 years later,
25   you are certain under oath, as you sit here today --
```

 1        A    Uh-huh.
 2        Q    -- that you had a conception of what was versus
 3   what was not --
 4        A    Right.
 5        Q    -- copyrightable about Cisco's --
 6        A    Right.
 7        Q    -- Cisco CLI?
 8        A    Yes.
 9             And I mentioned before that the basis of that is
10   based on privileged Cisco information.
11        Q    If you look here at paragraph 12 --
12        A    Uh-huh.
13        Q    -- paragraph -- in paragraph 12 you write,
14   "Huawei's unlawful copying of Cisco's copyrighted
15   materials, including the IOS code, the CLI, and the user
16   manuals, will cause Cisco substantial irreparable injury
17   if it is not enjoined by the Court."  Let me stop there
18   for a minute.
19             When you talked about Cisco copyrighted
20   materials, you said, including the IOS code, what were
21   you referring to there?
22        A    Source code.
23        Q    When you said, the user manuals, what were you
24   referring to?
25        A    User manuals, printed manuals.

1       Q   When you said, the CLI, what were you referring
2  to?
3       A   The code implementing the CLI.
4       Q   Here again, your testimony is today that when
5  you said, the IOS code -- and you also said, the CLI,
6  with both of those different phrases -- you meant to be
7  referring to simply CLI source code?
8       A   Yes.
9       Q   Continuing on to the next page, "Cisco
10 proprietary IOS is one of the company's most valuable
11 assets and a critical component of Cisco's business."
12          When you referred to Cisco's proprietary IOS,
13 what were you referring to, source code?
14      A   Yes.
15      Q   When you say, "The same holds true for the CLI
16 user interface implemented by the IOS," what is it
17 exactly that you're testifying today you were intending
18 to refer to in 2003 when you wrote this?
19      A   You know, this gets now probably into both
20 meanings of CLI.  But, you know, it's the user interface
21 implemented by the IOS.  I mean, I think it speaks for
22 itself.
23      Q   So this sentence, quote, the same holds true for
24 the CLI interface implemented by the IOS," your testimony
25 today is that with that sentence, you meant to be

1   A   The source code that the IOS -- that implements
2   the IOS is certainly unique to Cisco.
3   Q   When you say, the CLI interface -- I mean, in
4   particular, the interface consisting of an elaborate
5   structure of textual commands, is it true, do you agree
6   as you sit here today, that in 2003, the Cisco CLI user
7   interface was unique to the company, unique to Cisco?
8   A   I believe that the technical implementation of
9   the CLI is unique to Cisco; that the command structure
10  and syntax is not.
11  Q   It's your testimony today is that you were
12  focused on Huawei's copying of Cisco source code, and you
13  didn't care about their use of textual commands and the
14  organization of those commands from the CLI?
15  A   Uh-huh.
16  Q   Am I hearing you right, that's your testimony so
17  far?
18  A   That is correct.
19  Q   Why did you treat -- repeatedly in this
20  declaration, why did you treat source code versus the CLI
21  user interface as two distinct topics?
22  A   I did not.
23       MR. FERRALL:  Objection.  Vague and ambiguous.
24       Go ahead.  Go ahead.
25       THE WITNESS:  I did not, was not the source of

```
 1   the writing of the document.
 2          I reviewed the document and, to the best of my
 3   abilities at that time, felt that it generally
 4   reflected -- how do I rephrase this?
 5          I will also say that I was not in charge of
 6   legal strategy in terms of how to --
 7   BY MR. NEUKOM:
 8       Q   I'm not asking about legal strategy, sir.  I
 9   am --
10          MR. FERRALL:  No, no.  Let him answer the
11   question.
12          MR. NEUKOM:  No.  He's about to -- he's talking
13   about Cisco legal strategy.
14          THE WITNESS:  I simply said --
15   BY MR. NEUKOM:
16       Q   It's an appropriate time for me to interject.
17       A   I just said, I'm not in charge of legal
18   strategy.
19       Q   I don't want you to go down that road.
20       A   I'm very clear.  I'm not going down that road
21   other than to say, I was not in charge of legal strategy.
22       Q   You were in charge of signing your name to the
23   document under penalty of perjury and doing so to the
24   best of your ability.
25       A   To the best of my ability.
```

```
 1          But focusing on the second sentence of
 2   paragraph 11, the one that begins, "According to Cisco's
 3   allegations."
 4          Do you see that?
 5      A   I do.
 6      Q   All right.  Were you in charge of deciding what
 7   allegations Cisco should bring in this suit against
 8   Huawei?
 9      A   I was not.
10          MR. NEUKOM:  I'll put a conditional privilege
11   work product objection there.
12   BY MR. FERRALL:
13      Q   The -- again, be careful.
14          Without revealing --
15      A   I'm trying to.
16      Q   Without revealing any attorney-client
17   information or communications or work product, are you
18   able to explain why Cisco asserted claims against Huawei
19   that reference the CLI in this litigation?
20          Is it possible for to you answer that question
21   without revealing privileged or attorney work product?
22          MR. NEUKOM:  I'm going to object on privilege
23   and work product basis.
24          I have a very, very hard time imagining a world
25   in which a nonlawyer engineer with an MBA has an
```

1  understanding of rationales to or to not bring certain
2  claims.
3         But if I'm wrong, if you have some nonprivileged
4  basis on which to answer Mr. Ferrall's question, you
5  should do that.
6         THE WITNESS:  Yeah, I can't answer the question.
7  BY MR. FERRALL:
8     Q   Are you able -- again, without revealing
9  privileged or work product information, are you able to
10 explain why this declaration, marked as Exhibit 601, has
11 any particular content in it; in other words, why was
12 certain content included or not included?
13        MR. NEUKOM:  Objection.  Vague.  Compound.  And
14 I think attorney client privilege and work product,
15 although I confess I don't understand the question well
16 enough to know whether those privileges are implicate --
17        MR. FERRALL:  I'm trying to be careful.  But
18 fair enough, the question was vague.
19 BY MR. FERRALL:
20    Q   Did you -- did you come up with the content of
21 this declaration that is Exhibit 601; and I don't mean
22 the specific words in it, but the essence of what it was
23 going to describe?
24        You can answer that yes or no.
25    A   Yeah.  I'm waiting in each case for --

1            MR. NEUKOM:  I will only do that on attorney
2   work product and attorney-client privilege.
3            However, I'm happy to have you answer yes or no.
4   In fact, I think that Q and A has been answered yes or no
5   previously today, so subject to the yes-or-no answer.
6            THE WITNESS:  So the answer is I -- no.
7   BY MR. FERRALL:
8       Q    Okay.  And to your knowledge, was this
9   declaration, Exhibit 601, drafted by attorneys for Cisco?
10           MR. NEUKOM:  That, I'm -- that, I think, cut a
11  lot closer to the line.
12           I think -- and, Brian, if you want me to shut my
13  trap, feel free.  I think the witness testified before
14  that he didn't write it, but he did review it, and he did
15  sign it, and he did stand by it, all that stuff.
16           But I think asking who -- who drafted it, to my
17  mind -- if you ask me why it matters, I may struggle, but
18  that seems a little more -- a little more sensitive in
19  terms of work product or attorney-client privilege basis.
20           So to that question as to who drafted it, I
21  would object on work product and privileged ground.
22           And I think, on that one, I would make an
23  instruction to the witness.
24  BY MR. FERRALL:
25      Q    All right.  Then I assume this is going to go

 1  for the next questions, and that's fine.
 2          Again, I -- I need to understand what is
 3  privileged and what's not.  Let's look at paragraph 12.
 4      A   Okay.
 5      Q   All right.  Do you recall any drafts or edits to
 6  the language in paragraph 12?
 7          MR. NEUKOM:  On one hand, you can answer that
 8  yes or no.
 9          And I'll put in a conditional -- you know what,
10  I think that question just goes to such improper work
11  product stuff, I'll instruct you not to answer that --
12          MR. FERRALL:  Okay.
13          MR. NEUKOM:  -- unless -- and, Brian, on some of
14  these, I mean, if you have different -- if you want to
15  push back on privilege, and we can have a discussion on
16  it, I'm happy to have a discussion on it.
17          This is a little bit of uncharted territory.
18  But I think questions about drafts: were there drafts,
19  were there edits, I think, has -- to my inclination,
20  that's attorney work product and/or attorney-client
21  privileged, but -- so I think that's off limits.
22  BY MR. FERRALL:
23      Q   Okay.  All right.  And again, for the record,
24  though, I got to ask this next one, too, because there
25  was a sentence in paragraph 12 which was referred to,

1  either by you, Mr. Giancarlo, or Mr. Neukom, or by both
2  of you, as misleading or inartfully worded.
3         So my question to you is, were you -- and what
4  we're talking about is the sentence beginning, "This
5  interface, which is unique to Cisco."
6         Do you remember that sentence?
7     A   I do.
8     Q   Did you draft that sentence?
9         MR. NEUKOM:  You can answer that yes or no,
10 although I think it's already been -- I think you already
11 have, but you can do it again.
12        THE WITNESS:  I did not.
13 BY MR. FERRALL:
14    Q   And can you tell me any discussion you had or
15 edits you had to that sentence in the course of preparing
16 this declaration?
17    A   Unfortunately --
18        MR. NEUKOM:  Counsel knows you cannot answer
19 that.
20        THE WITNESS:  I cannot.
21 BY MR. FERRALL:
22    Q   This declaration, Exhibit 601, has an indication
23 on the bottom, and I think that's why it has this odd
24 cover sheet that it was filed under seal.
25        Do you see that on the bottom left corner?

1        I don't know if I -- did you want to say
2   something?
3         MR. NEUKOM:  No.
4         THE WITNESS:  Nor do I have a copy of it.
5   BY MR. FERRALL:
6      Q   At least before this litigation began, before
7   Cisco sued Arista, were you ever aware of this
8   declaration becoming public?
9      A   Oh, no.
10     Q   At the time that Cisco brought this claim
11  against Huawei, were you aware of other Cisco competitors
12  whose CLI commands were similar to Cisco's CLI commands?
13     A   I'm sorry.  This is prior to this?
14     Q   To the Huawei lawsuit.
15     A   Yes.
16     Q   To your knowledge, again, without revealing any
17  attorney privileged communications, but to your
18  knowledge, did Cisco sue any of those other competitors?
19     A   No.
20     Q   And without revealing any attorney-client
21  communications, is it possible for you to tell me any
22  Cisco business reasons for why Cisco did not sue any of
23  those other competitors with CLI commands?
24        MR. NEUKOM:  Objection.  Vague and compound and
25  foundation.

```
 1           THE WITNESS:  Can I answer or do I not?
 2           I'm sorry.  I don't know.
 3           MR. NEUKOM:  You can.
 4           To be clear, Mr. Ferrall asked you for business
 5  reasons.  So I think he was trying to be gracious to not
 6  get into, for example, any communication that you and Dan
 7  Scheinman or others had.
 8           THE WITNESS:  No.  Right.  I think I'm aware of
 9  the situation.
10           So I cannot give you business reasons for it.
11  BY MR. FERRALL:
12      Q    Okay.  And I take it if, I were to ask for any
13  reasons why that decision was made, that's going to call
14  for privileged information?
15      A    It would call for privilege, correct.
16           MR. FERRALL:  I have no further questions.
17           Thank you.
18           MR. NEUKOM:  Two questions, I hope.  And then
19  we're done.
20           THE WITNESS:  Me, too.
21                        EXAMINATION
22  BY MR. NEUKOM:
23      Q    Exhibit -- your old Huawei declaration, what
24  exhibit is it, 601?
25      A    601.
```

```
 1   STATE OF CALIFORNIA       )
 2                             )
 3   COUNTY OF SAN FRANCISCO   )
 4
 5           I, Lana L. Loper, a Certified Shorthand
 6   Reporter, do hereby certify:
 7           That prior to being examined, the witness in
 8   the foregoing proceedings was by me duly sworn to
 9   testify to the truth, the whole truth, and nothing but
10   the truth;
11           That said proceedings were taken before me at
12   the time and place therein set forth and were taken down
13   by me in shorthand and thereafter transcribed into
14   typewriting under my direction and supervision;
15           I further certify that I am neither counsel
16   for, nor related to, any party to said proceedings, nor
17   in anywise interested in the outcome thereof.
18           In witness whereof, I have hereunto subscribed
19   my name.
20
21   Dated:  April 28, 2016
22
23   _____
24   LANA L. LOPER, RMR, CRR, CCP, CME, CLR, CSR 9667
25
```