# ATTACHMENT 4

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION

| | |
|---|---|
| CISCO SYSTEMS, INC.,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>ARISTA NETWORKS, INC.,<br>　　　　　　Defendant. | Case No. 5:14-cv-05344-BLF (PSG) |

# REBUTTAL EXPERT REPORT OF KEVIN ALMEROTH

## SUBMITTED ON BEHALF OF CISCO SYSTEMS, INC.

**CONTAINS HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY INFORMATION**

| | |
|---|---|
| surprising given that, for example, Digital's TOPS-20 operating system was the operating system on which the original Cisco router software was developed for the Stanford University Network, The Tops-20 command was issued to connect a terminal to a remote computer system over the ARPAnet is an example of the use of a telnet syntax and English words long before the advent of Cisco's CLI. | |
| Note the use of a "show" command followed by multiple keywords within one command as implemented by the Proteon CLI. | 66 |
| Cisco's CLI design evolved from other works that preceded and influenced its development, including that of Digital, Proteon, and UNIX (particularly 4BSD). | 70 |

111.    Dr. Black provided certain opinions relating to the originality of the Cisco copyrighted work as well, for example:

| | |
|---|---|
| Based on my analysis below and in this Report, it is my opinion that the asserted CLI commands consist primarily of terms taken from (and defined and used in) published industry standards from standards setting bodies like the IETF and IEEE, from documents like Informational RFCs that describe *de facto* industry practices or industry best practices, and/or widely and commonly used industry terms relating to the CLI command's functionality. | 543<br>545 |
| Based on my analysis below and in this Report, it is my opinion that several fundamental aspects of the IOS CLI that Cisco is asserting against Arista were copied and taken directly from other CLIs that existed in non Cisco systems and software. | 547 |
| Several disputed commands, like "show users" and "terminal length," were also supported by legacy DEC products. | 571 |
| Cisco witnesses confirmed that they were already familiar with networking protocols and parlance before adding CLI commands. | 614 -618 |

112.    I disagree with both of Arista's experts for various reasons.  To start, neither expert addresses the fact that Cisco provided a significant amount of evidence establishing the originality and creation of Cisco's copyrighted works including its IOS CLI.[88]

---

[88]    Almeroth Opening Report Para. 260.

49

113. Instead of addressing or rebutting that evidence, Arista's experts argue that because certain <u>individual words</u> appear both in some command expressions and in earlier-dated RFCs, technical literature, or in prior networking systems, Cisco's copyrighted works are not original. This analysis is flawed, and I disagree with it and the subsequent conclusions.

114. With respect to the command expressions, the major flaw in Arista's experts' analysis is that they have failed to show that the multi-word command expressions that Arista copied appear in any of the literature or products they cite to. In other words, what they have shown is that some of the <u>individual words</u> may have existed previously. But what they failed to do is provide evidence that the multi-word command expressions (let alone hierarchies)—as copyrighted by Cisco and as asserted in this case—existed in any of those documents or products. Since Cisco is not contending that Arista copied any single word commands, Arista's experts' focus on a "single word" analysis is irrelevant to determining whether Cisco's copyrighted works are original. Arista's argument is analogous to someone contending that a book or poem is not original because it is comprised of words, and those words were known before the author wrote the book. That is illogical.

115. At most, Arista's expert Dr. Black points to <u>two</u> expressions (out of the 500+ expressions Arista copied from Cisco) that he claims were "supported" by older products from DEC—"show users" and "terminal length."[89] But Dr. Black cites no evidence showing that Cisco did not come up with those command expressions on their own, let alone that Cisco did not create them first. In any event, these two expressions represent a tiny fraction of the copyrighted work that was admittedly copied by Arista from Cisco.

---

[89] Black Para. 571 (discussing "show users" and "terminal length").

116. Furthermore, none of Arista's experts' arguments are directed to the technical documents, hierarchies, display outputs, and help descriptions that Arista copied. (At most, they are directed to commands, modes, and prompts.) Arista's experts effectively picked one or two elements from Cisco's copyrighted works and erroneously attack those elements by using a straw man argument—their "single word" approach. Meanwhile, they have ignored the many other elements that also are part of Cisco's copyrighted works and thus have conceded originality in those elements. In fact, Arista's own CEO, Jayshree Ullal, has testified under oath that it was improper for Arista to have copied excerpts from Cisco's copyrighted documents.[90] Many of those copied excerpts describe the infringing display outputs and command hierarchies that are still present in Arista's EOS-based products.[91] As I explained in my opening report, it is my understanding that merely using an electronic medium rather than physical medium does not negate the act of copying.

## VI.  *SCENES A FAIRE,* MERGER & SHORT PHRASES

117. I understand that Dr. Black also provided certain opinions relating to the defenses of *scenes a faire*, merger, and "short phrases." I disagree with Dr. Black's opinions and conclusions; none of these defenses change any of my opinions.

118. I have been informed that, under the doctrine of *scenes a faire*, elements of a work are not entitled to protection against infringement if they are standard, stock, or common to a topic, or if they necessarily follow from a common theme or setting.[92] I also have been informed that in the computer context, *scenes a faire* may include program elements that are

---

[90] Almeroth Opening Report Para. 157; Ullal Dep. (ITC) Tr. at 58:1–12, 61:22–25.
[91] Almeroth Opening Report Para. 158-167.
[92] In this context, I understand that "common" does not mean common to a group of people or companies but instead common as is trite, unoriginal, clichéd, etc.

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

the right to consider and testify about issues that may be raised by Arista's fact witnesses and experts at trial. I also reserve the right to modify or to supplement my opinions as a result of ongoing expert discovery or testimony at trial.

I certify under penalty of perjury that the foregoing is true and correct.

By: *Kevin C. Almeroth*
Dr. Kevin C. Almeroth
June 17, 2016