# ATTACHMENT 9

```
 1              UNITED STATES DISTRICT COURT
 2             NORTHERN DISTRICT OF CALIFORNIA
 3                   SAN JOSE DIVISION
 4
     CISCO SYSTEMS, INC.      Case No.: 5:14-cv-05344-BLF(PSG)
 5
                  Plaintiff,
 6
           v.
 7
     ARISTA NETWORKS, INC.
 8
                  Defendants.
 9   _____
10
11
12
13      * HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY *
14
15        VIDEOTAPED DEPOSITION OF PHILLIP REMAKER
16              30(b)(6) FOR CISCO SYSTEMS, INC.
17                   Palo Alto, California
18                 Thursday, March 31, 2016
19                        Volume 1
20
21   Reported by:
22   LESLIE JOHNSON
23   RPR, CSR No. 11451
24   Job No.: 2281749
25   PAGES 1 - 216
```

Page 1

### Page 2

```
            UNITED STATES DISTRICT COURT
        FOR THE NORTHERN DISTRICT OF CALIFORNIA
                  SAN JOSE DIVISION


   CISCO SYSTEMS, INC.    Case No.: 5:14-cv-05344-BLF(PSG)

          Plaintiff,

       v.

   ARISTA NETWORKS, INC.

          Defendants.
   _____




      * HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY *



      VIDEOTAPED DEPOSITION OF PHILLIP REMAKER, Volume 1,
   taken on behalf of Defendant, at 601 California Avenue,
   Palo Alto, California, beginning at 9:30 a.m. and ending
   at 4:14 p.m., on Thursday, March 31, 2016, before
   LESLIE JOHNSON, Certified Shorthand Reporter No. 11451.
```

### Page 3

```
APPEARANCES:

FOR PLAINTIFF CISCO SYSTEMS, INC.:
    QUINN EMANUEL URQUHART & SULLIVAN LLP
    BY: JOHN (JAY) NEUKOM, ESQ.
    50 California Street, 22nd Floor
    San Francisco, California  94111
    (415)875-6600
    johnneukom@quinnemanuel.com

FOR DEFENDANT ARISTA NETWORKS, INC.:
    KEKER & VAN NEST LLP
    BY: RYAN WONG, ESQ.
    633 Battery Street
    San Francisco, California  94111
    (415)391-5400
    rwong@kvn.com

ALSO PRESENT:
    SEAN GRANT, Videographer
```

### Page 4

```
                    I N D E X

WITNESS                              EXAMINATION
PHILLIP REMAKER
30(b)(6) for CISCO SYSTEMS
Volume 1
    BY MR. WONG                           8
    BY MR. NEUKOM                       212

                    EXHIBITS
            PHILLIP REMAKER, 30(b)(6)
NUMBER         DESCRIPTION                  PAGE
Exhibit 429  Defendant Arista Network, Inc.'s    9
             Notice of 30(b)(6) Deposition of
             Plaintiff Cisco Systems, Inc.;
             33 pages

Exhibit 430  Amended Exhibit F Document Index;   11
             40 pages
Exhibit 431  Amended Exhibit F; 44 pages         14
Exhibit 432  Binder labeled "Bates Does Cited    15
             in Cisco Rog Exhibit F," Volume 1
             of 2
Exhibit 433  Binder labeled "Bates Does Cited    15
             in Cisco Rog Exhibit F," Volume 2
             of 2
Exhibit 434  Binder labeled "Source Code Cited   15
             in Cisco Rog Exhibit F," Volume 1
             of 2
Exhibit 435  Binder labeled "Source Code Cited   15
             in Cisco Rog Exhibit F," Volume 2
             of 2
```

### Page 5

```
                EXHIBITS (Cont.)
            PHILLIP REMAKER, 30(b)(6)
NUMBER         DESCRIPTION                  PAGE
Exhibit 436  E-mail dated 1/12/99 from Phillip   40
             Remaker to Carl Schaefer, et al.;
             Bates stamped CSI-CLI-00794351 to 95
Exhibit 437  E-mail dated 6/7/2003 from Shaubin  80
             Xie; Bates stamped CSI-CLI-00783473
             to 81
Exhibit 438  Parser-Police Manifesto, version 6; 82
             10 pages
Exhibit 439  CLI Design and Review Guide; Bates  85
             stamped CSI-CLI-02824651 to 719
Exhibit 440  E-mail thread, top e-mail dated     87
             7/8/2005, from Jain Dhanendra; Bates
             stamped CSI-CLI-00807444 to 68
Exhibit 441  Interrogatory No. 2 First Supplemental  98
             Response - Exhibit C; 3 pages
Exhibit 442  Document entitled "Show Inventory   104
             Command"; Bates stamped CSI-CLI-610102
             to 610105
Exhibit 443  E-mail dated 12/6/2002 from Eric    114
             Osborne; Bates stamped CSI-CLI-777457
             to 459
Exhibit 444  Interrogatory No. 2 First Supplemental  122
             Response - Exhibit B; 102 pages
Exhibit 445  E-mail dated 25 June 2002 from Ilse  151
             Van Hoeck; Bates stamped
             CSI-CLI-00608702 to 703
Exhibit 446  E-mail dated 17 May 1999 from Liming  159
             Wei; Bates stamped CSI-CLI-60866
```

### Page 6

```
 1         EXHIBITS (Cont.)
 2       PHILLIP REMAKER, 30(b)(6)
 3 NUMBER         DESCRIPTION               PAGE
 4 Exhibit 447  Plaintiff Cisco Systems, Inc.'s Seventh  164
              Supplemental Objections and Responses
 5            to Defendant Arista Network, Inc.'s
              Second Set of Interrogatories
 6            (No. 16); 50 pages
 7 Exhibit 448  Plaintiff Cisco System, Inc.'s Fourth  167
              Supplemental Objections and Responses
 8            to Defendant Arista Network, Inc's
              First Set of Interrogatories (2 and 5);
 9            44 pages
10 Exhibit 449  Cisco's Response to Arista's       182
              Interrogatory No. 16 Amended Exhibit
11            D1 (IOS Release 11.0); 28 pages
12 Exhibit 450  Exhibit E Exemplary Copying of Command  201
              Responses; 27 pages
13
   Exhibit 451  Writing Command Line Interfaces (CLI)  204
14            and CLI Output; Bates stamped
              CSI-CLI-02607986 to 8010
15
                    * * *
16
17
18
19
20
21
22
23
24
25
```

### Page 7

```
 1    Palo Alto, California, Thursday, March 31, 2016
 2            9:30 a.m.
 3
 4        THE VIDEOGRAPHER:  Good morning.  We're on
 5 the record.  The time is 9:30 a.m. and the date is
 6 March 31st, 2016.  This begins the videotaped
 7 deposition of Cisco Systems, Inc. pursuant to Rule
 8 30(b)(6).  My name is Sean Grant, here with our
 9 court reporter, Leslie Johnson.  We're here from
10 Veritext Legal Solutions at the request of counsel
11 for Defendant.  This deposition is being held at
12 Wilson Sonsini in Palo Alto, California.
13        The caption of this case is Cisco Systems
14 Inc. versus Arista Networks, Inc., Case No.
15 5:14-cv-05344-BLF.
16        Please note that audio and video recording
17 will take place unless all parties have agreed to go
18 off the record.  Microphones are sensitive and may
19 pick up whispers, private conversations or cellular
20 interference.
21        At this time, will counsel please identify
22 themselves and state whom they represent.
23        MR. WONG:  Ryan Wong from Keker & Van Nest
24 for Defendant Arista Networks.
25        MR. NEUKOM:  John Neukom for the
```

### Page 8

```
 1 plaintiff.
 2        THE VIDEOGRAPHER:  Thank you.  Will the
 3 certified court reporter please swear in the
 4 witness.
 5
 6           PHILLIP REMAKER,
 7    having been first duly sworn, was examined
 8    and testified as follows:
 9
10             EXAMINATION
11 BY MR. WONG:
12    Q.  Good morning, Mr. Remaker.
13    A.  Good morning.
14    Q.  Do you understand that you are testifying
15 under oath?
16    A.  I understand.
17    Q.  Okay.  And I know we took your personal
18 deposition yesterday.  Do you understand that the
19 general rules for conducting a deposition are also
20 applicable today?
21    A.  Yes.
22    Q.  Do you understand that you have been
23 designated by Plaintiff Cisco to provide corporate
24 testimony under Rule 30(b)(6) today?
25    A.  Yes.
```

### Page 9

```
 1        (Exhibit 429 marked for identification.)
 2        MR. WONG:  Let's mark this as the first
 3 deposition exhibit.  I believe we are on 429.
 4        THE REPORTER:  Correct.
 5 BY MR. WONG:
 6    Q.  The court reporter has marked Exhibit 429,
 7 a document that on its face says "Defendant Arista
 8 Network, Inc.'s Notice of Rule 30(b)(6) Deposition
 9 of Plaintiff Cisco Systems, Inc."
10        Mr. Remaker, do you recognize the document
11 marked as Exhibit 429?
12        MR. NEUKOM:  It might help you to turn to
13 page 23.
14        MR. WONG:  Thank you, Counsel.
15        MR. NEUKOM:  Start with paragraph 78.
16        THE WITNESS:  Yes, I recognize this
17 document.
18 BY MR. WONG:
19    Q.  Do you understand that you have been
20 designated by Cisco to provide corporate testimony
21 for topic No. 78 that appears on page 23 of
22 Exhibit 429?
23    A.  Yes.
24    Q.  Do you understand that you've been
25 designated by Cisco to provide corporate testimony
```

**Page 50**

BY MR. WONG:
Q. The first bullet point under "Submission" on the first page of 436, Exhibit 436?
A. Uh-huh.
Q. It says, "The submitter should send the proposed syntax before writing any code to prevent rewrites for syntax changes."
    Do you see that?
A. Yes.
Q. Did I read that correctly?
A. Yes.
Q. Why is it important for a submitter of the Parser Police to send a proposed command syntax before writing any code?
A. If the Parser Police suggests changes, it would require additional work for the developer, if they had already written code to implement the command that the Parser Police lodged an objection to.
Q. So you don't need to write any source code to come up with a proposed syntax for a new CLI command, correct?
A. You do not need to write any source code to propose a command.
Q. And in fact, the Parser-Police Manifesto

**Page 51**

marked as Exhibit 436 suggests that any proposed syntax for a new CLI command be sent to the Parser Police before any code is written for that command, correct?
A. Correct.
Q. Is there a -- strike that.
    Are there any rules at Cisco that require command -- new command syntaxes to be proposed to the Parser Police before source code is written?
    MR. NEUKOM: Objection. Vague. Compound.
    THE WITNESS: I don't know if there are any --
    MR. NEUKOM: And off topic.
    THE WITNESS: I don't know if there are any rules like that.
BY MR. WONG:
Q. Could you turn to page, Mr. Remaker, to the page where at the bottom the control number ends in 392. The second page of the document.
    On the second page of Exhibit 436, at the bottom it says "Syntax design guidelines."
    Do you see that?
A. Yes.
Q. And there is a No. 1 right below that.
    Do you see that?

**Page 52**

A. Yes.
Q. Okay. Can you read the -- I guess it's two sentences, after that No. 1.
A. "Think extensible. If you add a command, try to envision if more similar commands that may be added and structure the parse tree not to have dead ends."
Q. What do you mean -- strike that.
    What does Exhibit 436 mean when it says "think extensible"?
    MR. NEUKOM: Objection. The document speaks for itself.
    And also, Mr. Remaker, before you answer the question.
    Given the particular document now being discussed at this time, on behalf of Cisco, I'd like to mark this transcript and the video of the deposition as "Highly Confidential - Attorneys' Eyes Only." And I ask Madam Court Reporter and the videographer to please mark all copies of the deposition accordingly.
BY MR. WONG:
Q. Let me ask the first question again.
    On page 2 of the Parser-Police Manifesto marked as Exhibit 436, what does the Parser-Police

**Page 53**

Manifesto mean when it says "think extensible"?
    MR. NEUKOM: Objection. The document speaks for itself.
    THE WITNESS: It means, when adding a command, envision a future where similar commands might happen, might be added, and design accordingly.
BY MR. WONG:
Q. Why is extensibility important to creating a new CLI command in the Cisco IOS?
    MR. NEUKOM: Objection. The document speaks for itself.
    THE WITNESS: The question was why?
BY MR. WONG:
Q. The question is why is extensibility important to creating a new CLI command in Cisco IOS?
    MR. NEUKOM: Same objection.
    THE WITNESS: We believe that the hierarchy improves the consistency, usability and friendliness of the CLI.
BY MR. WONG:
Q. What does -- strike that.
    What do you mean by "the hierarchy" in your response?

### Page 54

1  A.  The hierarchy is the aesthetic of
2  collecting similar commands together.
3      Q.  Is that the end of your response?
4      A.  Yes.
5      Q.  Have you ever used the word "aesthetic" to
6  describe the hierarchy before this litigation?
7      A.  I don't know.
8      Q.  What do you mean by the aesthetic of
9  collecting similar commands together?
10     A.  It involves the judgment exercised in
11 placing similar commands together in a compact
12 hierarchy that would be found valuable by customers.
13     Q.  What does a hierarchy have to do with
14 extensibility of the CLI?
15         MR. NEUKOM:  Objection.  Off topic.
16         THE WITNESS:  The hierarchy keeps similar
17 and related commands together with each other.
18 BY MR. WONG:
19     Q.  How does the hierarchy keep similar and
20 related commands together with each other?
21         MR. NEUKOM:  Objection.  Vague.  Compound.
22 Hypothetical.  And off topic.
23         THE WITNESS:  For example, in a hierarchy,
24 the command line help function will direct customers
25 to the related commands to the tasks they're trying

### Page 55

1  to accomplish instead of having to wade through
2  unrelated commands.
3  BY MR. WONG:
4      Q.  What other function does the hierarchy
5  perform?
6      A.  The hierarchy can organize commands in a
7  configuration in a way that is easy to read and
8  understand.
9      Q.  Can you have an extensible CLI without
10 using a hierarchy?
11         MR. NEUKOM:  Objection.  Vague.  Calls for
12 opinion testimony.  Off topic.
13         THE WITNESS:  I don't know.
14 BY MR. WONG:
15     Q.  What does it mean to structure the parse
16 tree not to have dead ends, as stated on page 2 of
17 Exhibit 436?
18         MR. NEUKOM:  Objection.  The document
19 speaks for itself.
20         THE WITNESS:  It means that when
21 exercising judgment in the choice of words in a
22 command, don't make it illogical to add additional
23 words to the command.
24 BY MR. WONG:
25     Q.  Is that the end of your response?

### Page 56

1      A.  Yes.
2      Q.  What is it -- what does the document mean
3  by "dead end"?  And it says "dead end" in quotes
4  here, so I'm trying to understand what the
5  Exhibit 436 means at the bottom of page 2 when it
6  refers to, quote-unquote, "dead ends."
7      A.  If you look at the example immediately
8  following it, the "dnsix-dmdp" command could not
9  logically add any additional "dnsix" commands after
10 it.  By making "dnsix" a node in a hierarchy instead
11 of making it a final word with the dash, "dnsix"
12 allows extensibility and additional "dnsix"-related
13 commands, instead of precluding them by using
14 "dnsix" as part of a hyphenated word.
15     Q.  Okay.  So the example provided underneath
16 the "think extensible" section of Exhibit 436
17 illustrates what the document means by "dead end"?
18     A.  Yes.
19     Q.  On the third page of Exhibit 436,
20 Mr. Remaker, at the top of the page, do you see a
21 number 2?
22     A.  Can you tell me the Bates document number,
23 please?
24     Q.  Sure.  It's the page ending in 393.
25     A.  Yes.

### Page 57

1      Q.  Can you read the last sentence in the
2  paragraph that starts with the number 2?
3      A.  "All multi-hyphen commands should be
4  analyzed to see if they can be split into a more
5  extensible parse chain."
6      Q.  What does that mean?
7          MR. NEUKOM:  Objection.  Misstates
8  document.  Dash.
9          THE WITNESS:  Immediately following that
10 sentence, in the same document, is an example where
11 the "debug isdn" command is illustrated, where two
12 different commands, "isdn-q931" and "isdn-q921," are
13 represented as two individual hyphenated commands,
14 and the analysis of the commands should indicate to
15 somebody familiar with the parser that they can
16 break it out into two individual elements at the end
17 of a hierarchy.
18 BY MR. WONG:
19     Q.  What impact does that have to a user of
20 the command-line interface?
21     A.  In this particular instance, it makes it
22 easier to use the help function to find relevant
23 "isdn" debugging commands without having to wade
24 through other irrelevant commands not related to the
25 "isdn" hierarchy.

*Page 130*

```
 1  prepared and given information basically falling
 2  within the topics.  And so today you're designated
 3  as Cisco's 30(b)(6) witness, subject to objections,
 4  for topics 78 through 83.
 5          So my question to you is, of course, in
 6  your capacity as a corporate witness.
 7          So I'll ask the question again.
 8          As Cisco's corporate witness today, can
 9  you tell me anything about the thought process that
10  Mr. Carrel followed when coming up with any of the
11  commands associated with him listed in Exhibit 431?
12          MR. NEUKOM:  Objection.  Vague and
13  compound.  And to be clear, Mr. Remaker, when
14  Mr. Wong very graciously noted that you're being put
15  up not just for topics, but you're being put up for
16  certain topics subject to Cisco's objections, one or
17  more of those objections go to the reasonableness or
18  lack thereof of canvassing or investing in one
19  witness individual thought processes for 500 or so
20  historically created command lines.  But you should
21  absolutely answer the question to the best of your
22  ability.
23          THE WITNESS:  I don't know what David
24  Carrel's thought process was.
25  ////
```

*Page 131*

```
 1  BY MR. WONG:
 2     Q.  Do you know what Mr. Vowles' thought
 3  process was behind the creation of any of his
 4  commands that are listed in Exhibit 431?
 5     A.  I do not.
 6     Q.  Do you know what thought process that Dino
 7  Farinacci followed when he came up with any of the
 8  commands associated with him in Exhibit 431?
 9          MR. NEUKOM:  Objection.  Vague and
10  compound.  And Mr. Remaker, when you're being asked
11  about a question which covers, for example, all
12  commands associated with an individual's name, I
13  know that Mr. Wong would want you to feel free to
14  look through whatever portions of this exhibit he
15  has before you to make sure that you understand the
16  scope of questions that he's putting to you.
17          MR. WONG:  While Mr. Remaker is looking at
18  Exhibit 431, Court Reporter, the spelling of
19  Mr. Farinacci's name is D-I-N-O, space,
20  F-A-R-I-N-A-C-C-I.
21          THE WITNESS:  I do not see any commands by
22  Dino Farinacci where I can comment on his thought
23  process.
24  BY MR. WONG:
25     Q.  Did you speak at all with Mr. Farinacci
```

*Page 132*

```
 1  regarding the sources he may have considered when
 2  coming up with any of the commands associated with
 3  him in Exhibit 431?
 4     A.  It is possible that I had discussions with
 5  Dino about his choice of command words in some of
 6  his choices.
 7     Q.  But you have -- you did not see any
 8  commands by Mr. Farinacci in Exhibit 431 where you
 9  can comment today on his thought process behind his
10  creation of those commands, correct?
11     A.  Not from memory, no.
12     Q.  From any other source besides memory, are
13  you able to do that?
14     A.  None that I'm aware of.
15     Q.  Do you know one way or the other whether
16  Mr. Farinacci copied any aspect of the commands
17  associated with him in Exhibit 431 when he added
18  those commands to the Cisco CLI?
19     A.  A lot of these commands are over 20 years
20  old.  I don't have any memory of that.
21     Q.  Do you know the thought process that Pedro
22  Marques -- that's P-E-D-R-O, M-A-R-Q-U-E-S --
23  followed when he came up with any of the commands
24  associated with him in Exhibit F?
25     A.  Do you have any specific commands in mind?
```

*Page 133*

```
 1     Q.  Sure.  The first command that appears for
 2  Mr. Marques is "clear ipv6 neighbors," which appears
 3  on page 5 of Exhibit 431.
 4     A.  I do not know his thought process in
 5  coming up with that.
 6     Q.  Can you take a moment, please, and find
 7  the other commands associated with Mr. Marques in
 8  Exhibit 431, and let me know if you know the thought
 9  process that Mr. Marques followed when he came up
10  with any of those commands?
11          MR. NEUKOM:  Objection.  Vague and
12  compound.  Off topic.  And I will think it's clear,
13  but in case it's not, take a standing objection to
14  any and all questions on the thought processes of
15  individual originators or engineers at Cisco.  It is
16  unreasonable.  It is unduly burdensome.  And it is
17  not within the scope of a reasonable preparation of
18  a witness.  And I respectfully think that counsel
19  knows that and is asking questions intended to put
20  the witness on a fool's errand.
21          That said, Mr. Remaker, to the extent you
22  can answer the question as posed to you, however
23  compound it is, you should please, please do that.
24          THE WITNESS:  I don't recognize any
25  commands where I can speak to Pedro Marques's
```

```
 1  thought process.
 2  BY MR. WONG:
 3      Q.  Do you know one way or the other whether
 4  Mr. Marques copied any aspect of the CLI command
 5  associated with him in Exhibit 431, when he added
 6  those commands to the Cisco CLI?
 7      A.  I do not know.
 8      Q.  And maybe this would be a way to
 9  short-circuit this, Mr. Remaker.  Can you look
10  through Exhibit 431 and tell me if there are any
11  commands listed in Exhibit 431 where you know the
12  creative thought process that the originator went
13  through when coming up with the command syntax for
14  the command associated with him or her.
15          MR. NEUKOM:  Objection.  Vague.  Calls for
16  a legal conclusion.  And compound to the tune of
17  500-plus questions embedded within, ostensibly, one
18  question.  And I incorporate by reference my
19  standing objection to counsel's improper line of
20  questioning about individual thought processes of
21  third persons over the last 30 years.
22          MR. WONG:  Let me rephrase my question
23  just to address one of counsel's objections.
24  BY MR. WONG:
25      Q.  Can you -- Mr. Remaker, can you please
```
Page 134

```
 1  look through Exhibit 431 and tell me if there are
 2  any commands listed in that exhibit where you know
 3  the thought process that the originator went through
 4  when coming up with the command associated with him
 5  or her?
 6          MR. NEUKOM:  Same objections.
 7          THE WITNESS:  I don't think I can speak to
 8  a third party's thought process.
 9  BY MR. WONG:
10      Q.  You would have to speak to the third
11  party, correct?
12          MR. NEUKOM:  Objection.  Calls for
13  speculation.
14          THE WITNESS:  You could certainly ask the
15  author -- I'm sorry.  You can certainly ask the
16  originator of the command their thought process.
17  BY MR. WONG:
18      Q.  Did you do that for any of the commands
19  listed in Exhibit 431, setting aside the command
20  that you are associated with, Mr. Remaker?
21      A.  I did not.
22      Q.  Setting aside your command, the "show
23  inventory" command, Mr. Remaker, do you know one way
24  or the other whether the authors of any of the other
25  commands listed in Exhibit 431 copied from some
```
Page 135

```
 1  other place any of the words that are found in their
 2  command?
 3      A.  I do not know that.
 4          MR. NEUKOM:  I should also -- pardon me,
 5  Ryan, just to make sure I'm being complete, I'm
 6  going to lodge a standing objection to any and all
 7  questions on the topic of copying and third party
 8  mindsets as being beyond the scope of the noticed
 9  topics and/or beyond the scope of any reasonable
10  preparation in response to those topics.
11          MR. WONG:  I disagree on the --
12          MR. NEUKOM:  I don't expect you to agree.
13  I'm just making an objection for the record.
14          MR. WONG:  That's fine.  We can address
15  that.
16          MR. NEUKOM:  Although this is going to be
17  an interesting two-way street, because I think we
18  have a pretty similar topic, and we will see if
19  Arista actually considered putting an individual
20  corporate rep up to talk about individual thought
21  processes for the 500-plus copied expressions.  So
22  if you all want to set the standard down in a
23  deposition, we'll see -- we'll see what the traffic
24  looks like going the other direction on that same
25  road.
```
Page 136

```
 1          MR. WONG:  That's days ahead of us, so we
 2  can address that later without wasting the witness's
 3  time here.
 4          MR. NEUKOM:  Well, we are wasting the
 5  witness's time here.
 6          MR. WONG:  I disagree.  But setting that
 7  aside.
 8  BY MR. WONG:
 9      Q.  Mr. Remaker, the commands listed in
10  Exhibit 431, do they all appear in the same Cisco
11  operating system?
12          MR. NEUKOM:  Objection.  Vague.  Compound.
13  And the document speaks for itself.
14          THE WITNESS:  The document indicates which
15  operating system each command appears in.
16  BY MR. WONG:
17      Q.  I'm sorry.  And you're talking about
18  Exhibit 431, correct?
19      A.  It indicates at least one operating system
20  that includes the command.
21      Q.  Okay.  So for example, looking at the
22  first two commands listed in Exhibit 431, the first
23  operating system that the "aaa accounting dot1x"
24  command appears in is Cisco IOS 12.4 (11)T, correct?
25      A.  Did you say "aaa accounting"?  That would
```
Page 137

## Page 138

```
 1  be Cisco IOS 10.3, actually.
 2      Q.  I'm sorry, I said "aaa accounting dot1x."
 3      A.  I'm sorry, dot1x, yes.  Cisco IOS 12.4
 4  11 -- 12.4 (11)T.
 5      Q.  And the "aaa accounting" command, without
 6  the dot1x first appeared in Cisco IOS 10.3, correct?
 7      A.  Correct.
 8      Q.  So assuming this information is correct,
 9  the Cisco IOS 10.3 operating system did not support
10  the "aaa accounting dot1x" command, correct?
11      A.  That's what I conclude from this document.
12      Q.  And do you have any reason to doubt that?
13      A.  I do not have any reason to doubt that.
14      Q.  Does it surprise you -- would it surprise
15  you if the commands listed in Exhibit 431 are
16  supported by different operating systems?
17          MR. NEUKOM:  Objection.  Calls for
18  speculation.  And well beyond the scope of any
19  noticed topic for this witness.
20          THE WITNESS:  I don't have any opinion on
21  that topic.
22  BY MR. WONG:
23      Q.  Are the command sets for Cisco IOS and
24  Cisco IOS XR the same?
25          MR. NEUKOM:  Objection.  Vague.  Compound.
```

## Page 139

```
 1  And goes beyond the scope of any topic for which
 2  this witness has been presented today.
 3          THE WITNESS:  There are differences
 4  between IOS and IOS XR.
 5  BY MR. WONG:
 6      Q.  Are there also differences between IOS and
 7  NX-OS?
 8          MR. NEUKOM:  Same objection.  Vague.
 9  Compound.  And not related to any topic for which
10  this witness has been presented today.
11  BY MR. WONG:
12      Q.  I'm talking specifically with respect to
13  the CLI command set.  Are there differences between
14  the commands supported by Cisco IOS and Cisco IOS
15  XR?
16          MR. NEUKOM:  Same objections.
17          THE WITNESS:  There may be differences
18  between the IOS and NX-OS commands.
19          MR. WONG:  You can set that document
20  aside.
21  BY MR. WONG:
22      Q.  Can you find Exhibit 438, please.
23      A.  I have Exhibit 438 in front of me.
24      Q.  Okay.  And this is the current version of
25  the Parser-Police Manifesto, correct?
```

## Page 140

```
 1      A.  This is the current version of the
 2  Parser-Police Manifesto.
 3      Q.  Okay.  At the bottom of the first page of
 4  Exhibit 438, there is a heading called "Submission."
 5          Do you see that?
 6      A.  Yes.
 7      Q.  And the last bullet point that appears on
 8  the first page of Exhibit 438 starts with the text
 9  "Use the following language when describing syntax."
10          Do you see that?
11      A.  Yes.
12      Q.  Okay.  And below that it says "Text and
13  keyword literals."
14          Do you see that?
15      A.  Yes.
16      Q.  What does it mean -- strike that.
17          What are keyword literals in a CLI
18  command?
19          MR. NEUKOM:  Which page are we on?
20          MR. WONG:  We are on the very bottom of
21  the first page of Exhibit 438.
22          MR. NEUKOM:  Okay.
23          THE WITNESS:  Yes, so page 1, that is
24  actually, that line at the bottom of page 1 is the
25  header to a table which continues onto page 2.  This
```

## Page 141

```
 1  is actually a table saying how to use a
 2  representative language to represent literal
 3  information being entered into the parser.
 4  BY MR. WONG:
 5      Q.  I see.  So the text and keyword literals
 6  are headings of the table?
 7      A.  That's correct.  Those are supposed to
 8  serve as headings for the following table.
 9      Q.  And the following table below that, can
10  you explain to me, please, what that -- what
11  information is being conveyed there?  And this is on
12  page now 2 of Exhibit 438.
13      A.  Right.  So this is the submission section
14  of the Parser-Police Manifesto, which is giving
15  guidelines of how to submit your proposed commands
16  to the Parser Police alias.
17          What they are saying is, when you are
18  writing the command, you should use the elemental
19  style in the left-hand column to represent the
20  literal values expounded in the right column.
21      Q.  Okay.  So for example, for the
22  "aaa accounting" command, which is the first command
23  listed on Exhibit 431, how would the two words "aaa"
24  and "accounting" be represented in this syntax?
25          MR. NEUKOM:  Objection.  Beyond the scope
```

```
 1  of any topic for which this witness has been
 2  designated today.
 3          THE WITNESS:  It is my understanding that
 4  these would be arguments included in the parser
 5  command, not the actual parser command itself.
 6  BY MR. WONG:
 7      Q.  And when you say "these," what are you
 8  referring to as these?
 9      A.  These -- the text elements in the
10  left-hand column.
11      Q.  Okay.  So just for clarity, the text that
12  appears in this table that starts at the very bottom
13  of page 1 of Exhibit 438 and continues onto the top
14  of page 2 are for the arguments of the CLI command;
15  is that correct?
16      A.  That is correct.
17      Q.  What does Cisco call the portion of the
18  command that is not the argument?
19          MR. NEUKOM:  Objection.  Beyond the scope
20  of the designated topics.
21          THE WITNESS:  I don't know that there is a
22  formal universal name for the text of the command
23  expression other than "command expression."
24  BY MR. WONG:
25      Q.  Is it your understanding that the commands
```
Page 142

```
 1  listed in Exhibit 431 are not or do not contain
 2  arguments?
 3      A.  Exhibit 421, I'm sorry.
 4      Q.  431.
 5      A.  431.  Sorry.
 6      Q.  So my question is:  Is it your
 7  understanding that the commands listed in
 8  Exhibit 431 do not contain arguments?
 9      A.  It is possible that the command
10  expressions in Exhibit 431 contain arguments.
11      Q.  So, for example -- so regardless of how
12  the syntax of these commands is denoted using the
13  syntax shown in Exhibit 438, the command expressions
14  listed in Exhibit 431 could contain arguments; is
15  that correct?
16          MR. NEUKOM:  Objection.  Vague.  Compound.
17  Hypothetical.  And beyond the scope of any of the
18  topics for which this witness is here to talk about
19  today.
20          THE WITNESS:  It is possible that the
21  command expressions in Exhibit 431 contain
22  arguments.
23  BY MR. WONG:
24      Q.  And I'm just trying to understand why
25  something like "aaa authorization config-commands"
```
Page 143

```
 1  is listed as a separate command than "aaa
 2  authorization console" on the first page of
 3  Exhibit 431.
 4          Are those two commands I just recited two
 5  different commands?
 6      A.  Those are two different commands.
 7      Q.  So if a command has a set of different
 8  optional parameters, each combination of those
 9  parameters with, I guess, the base command words
10  would be a different command?
11          MR. NEUKOM:  Objection.  Vague.  Compound.
12  Asks for opinion testimony.  And unrelated to any
13  topic for which this witness is here today.
14          THE WITNESS:  Can you repeat the question?
15  BY MR. WONG:
16      Q.  Sure.  Are there Cisco CLI commands where
17  you can specify or select from two or more optional
18  arguments?
19          MR. NEUKOM:  Objection.  Vague.  Compound.
20  And unrelated to any topic for which this witness is
21  here to testify today as a corporate representative.
22          THE WITNESS:  I'm sorry.  The question
23  doesn't make sense to me.
24  BY MR. WONG:
25      Q.  So if you look to page 2 of Exhibit 438.
```
Page 144

```
 1      A.  Yes.
 2      Q.  There is one section that has curly
 3  brackets.
 4          Do you see that at the top?
 5      A.  Yes.
 6      Q.  And within the curly brackets, there is a
 7  "text1" and then a dividing line and then a "text2."
 8          Do you see that?
 9      A.  Yes.
10      Q.  So if that -- if that syntax follows a
11  command, does that mean that you can say -- you can
12  say the command and then "text1" and hit enter and
13  that will be accepted as a valid CLI command?
14      A.  The literal information that takes the
15  place of the variable "text1," is that what you
16  mean?
17      Q.  Yes.
18      A.  So can you repeat the question, knowing
19  that.
20      Q.  Sure.  Well, maybe I'll do it this way.
21          Can you explain to me how that mandatory
22  choice syntax actually works in practice when you
23  enter in commands to a CLI?
24      A.  When a command --
25          MR. NEUKOM:  Objection.  Pardon me.
```
Page 145

37 (Pages 142 - 145)

```
 1  Compound.  And beyond the scope of any topic for
 2  which this witness is here to testify about.
 3         THE WITNESS:  When a command has a
 4  mandatory choice or mandatory argument, the command
 5  cannot be executed unless the mandatory argument is
 6  provided along with the command.
 7  BY MR. WONG:
 8     Q.  And in this case here, for the example
 9  shown on page 2 of Exhibit 438, you would have to
10  type in either "text1" or "text2," correct?
11     A.  That is correct.  The vertical bar is a
12  logical or --
13     Q.  Looking back at Exhibit 431, Mr. Remaker,
14  do any of the commands shown on the first page
15  support a "no" command prefix?
16         MR. NEUKOM:  Objection.  Compound.  Also
17  goes beyond the scope of any topic for which this
18  witness is here to testify today.
19         THE WITNESS:  I can say, for example, that
20  from my personal experience I know that
21  "aaa accounting" will accept the "no" command to
22  turn off "aaa accounting".
23  BY MR. WONG:
24     Q.  Okay.  And the "no" command is used to
25  disable the functionality that's associated with the
```
Page 146

```
 1  non-"no" version of the command?
 2     A.  Yes.
 3     Q.  So the "no" command version of a command
 4  is a different command, correct?
 5         MR. NEUKOM:  Objection.  Compound.  Calls
 6  for opinion testimony.  And it's also, again, beyond
 7  the scope of any topic for which this witness is
 8  here today to testify.
 9         THE WITNESS:  It would depend on what your
10  definition of the command is.
11  BY MR. WONG:
12     Q.  Do you know what definition of command was
13  used to create the list of commands shown in
14  Exhibit 431?
15     A.  No.
16     Q.  Mr. Remaker, you testified at your
17  personal deposition that you were aware of some
18  competitors of Cisco that used Cisco-like CLIs.
19         Do you remember that testimony?
20         MR. NEUKOM:  Objection.  Misstates the
21  witness's testimony from yesterday.
22         THE WITNESS:  Can you repeat the question?
23  BY MR. WONG:
24     Q.  Mr. Remaker, do you remember a question
25  during your personal deposition regarding your
```
Page 147

```
 1  knowledge of competitors of Cisco using Cisco-like
 2  CLIs?
 3         MR. NEUKOM:  Objection.  Misstates the
 4  question or mischaracterizes the questions asked of
 5  the witness yesterday.
 6         THE WITNESS:  There may have been a
 7  question asked to me about Cisco CLI.
 8  BY MR. WONG:
 9     Q.  Do you know either way whether any of the
10  authors listed in Exhibit 431 looked at non-Cisco
11  CLIs when coming up with the command syntax
12  associated with them in Exhibit 31?
13         MR. NEUKOM:  Objection.  Vague and
14  compound.
15         THE WITNESS:  Can you repeat the question?
16  BY MR. WONG:
17     Q.  Sure.  Do you know if any of the
18  originators identified in Exhibit 431 looked at
19  third party CLIs when coming up with the commands
20  that are associated with them in Exhibit 431?
21         MR. NEUKOM:  Same objections.
22         THE WITNESS:  I don't know.
23  BY MR. WONG:
24     Q.  Do you know whether any of the originators
25  listed in Exhibit 431 copied words from industry
```
Page 148

```
 1  standard documents when they came up with the
 2  commands associated with them in Exhibit 431?
 3         MR. NEUKOM:  Objection.  Vague in numerous
 4  respects.  Compound.  And I'll refer back to my
 5  standing objection about the reasonableness or lack
 6  thereof of this line or brand of questions to this
 7  witness.
 8         THE WITNESS:  I don't know.
 9         MR. NEUKOM:  I take it your prior question
10  was intended to exclude the "show inventory" command
11  for which Mr. Remaker is -- I think in prior
12  versions of Mr. Wong's questions he was excepting
13  you from that.
14     Q.  Do you want to clarify your response,
15  Mr. Remaker, to my question?
16     A.  Which?
17     Q.  My last question that I asked.
18     A.  Can you repeat that question?
19     Q.  Sure.  Do you know one way or the other
20  whether any of the originators identified in
21  Exhibit 431 copied words from industry standards
22  when they came up with the commands associated with
23  them in Exhibit 431?
24     A.  I can't speak for third parties, but for
25  my own command, I did not incorporate or copy any
```
Page 149

**Page 150**

1 words from third party standards.
2   Q.  Do you know one way or the other whether
3 any of the originators listed in Exhibit 431 simply
4 copied existing command syntax that was present in
5 the Cisco CLI, when they came up with the commands
6 associated with them in Exhibit 431?
7       MR. NEUKOM:  Objection.  Vague.  Compound.
8 An unreasonable question on its face.
9       THE WITNESS:  You're asking whether Cisco
10 copied from Cisco?
11 BY MR. WONG:
12   Q.  That's right.
13   A.  Cisco strives to have a consistent user
14 interface among its systems with CLIs.
15   Q.  So does that mean that Cisco encourages
16 its engineers to copy existing command syntaxes that
17 are already present in the Cisco CLI?
18       MR. NEUKOM:  Objection.  Vague and
19 compound.
20       THE WITNESS:  "Copy" is not the word I
21 would use to characterize it.
22 BY MR. WONG:
23   Q.  What word would you use to characterize
24 the reusing of existing Cisco CLI syntax in new
25 Cisco CLI commands?

**Page 151**

1   A.  I would describe that as product
2 consistency.
3       (Exhibit 445 marked for identification.)
4 BY MR. WONG:
5   Q.  The court reporter has marked as
6 Exhibit 445 a document bearing control numbers
7 CSI-CLI 00608702 to 703.
8       Now, Mr. Remaker, I'll represent to you
9 that this document was one of those that was ID'd
10 within Cisco's discovery responses for some of
11 the -- some of the commands listed in Exhibit 431.
12 Please take a moment to look at the document.
13       And I guess my first question is:  Do you
14 have any reason to doubt the authenticity of this
15 document that was produced by Cisco?
16   A.  I have no reason to doubt the authenticity
17 of this document.
18   Q.  Do you know who the sender of the e-mail
19 is?  Looks like it's Ilse Van Hoec.
20   A.  I do not know the sender of this document.
21   Q.  In the first paragraph of this e-mail
22 marked as Exhibit 445, the last sentence starts with
23 "Most of these commands."
24       Do you see that?
25   A.  Yes.

**Page 152**

1   Q.  Can you please read that into the record,
2 that sentence.
3   A.  "Most of these commands are copies of the
4 corresponding ospfv2 commands."
5   Q.  Do you have any understanding of what that
6 sentence means?
7   A.  I presume that it means that the commands
8 for ospv3 are consistent with the commands in
9 ospfv2.
10   Q.  And you -- I mean, is that a best practice
11 followed by Cisco engineers, to reuse existing CLI
12 syntax in this fashion?
13   A.  Each individual engineer would have to
14 exercise their own judgment as to what would be
15 appropriate for a given situation.
16   Q.  Do you agree that commands for ospfv3
17 should be consistent with the corresponding ospfv2
18 commands?
19       MR. NEUKOM:  Objection.  The question on
20 its face is asking the witness for his personal
21 opinion.  Also, again, we're far afield of a noticed
22 topic for which this witness has returned for a
23 second day of testimony.
24       MR. WONG:  This document is ID'd as -- one
25 of these documents is actually in the folders that

**Page 153**

1 the witness brought today.
2       MR. NEUKOM:  That's right.  And what you
3 just asked him was whether he, sitting here in 2016,
4 would like to give his personal view on whether
5 Mr. Remaker agrees with your interpretation of a
6 sentence that an engineer named Ilse Van Hoec wrote
7 apparently 14 years ago.
8       MR. WONG:  Let me rephrase --
9       MR. NEUKOM:  That is far, far afield of
10 the noticed topics for this witness.  It's also a
11 patently unfair and downright strange question.
12 BY MR. WONG:
13   Q.  Let me rephrase the question, Mr. Remaker.
14       Is it Cisco's best practice for commands
15 for ospfv3 to be consistent with existing CLI
16 commands for ospfv2?
17       MR. NEUKOM:  Objection.  Vague and
18 compound.
19       THE WITNESS:  Cisco trusts the judgment of
20 the individual engineers doing the design.
21 BY MR. WONG:
22   Q.  So Cisco has no view one way or the other
23 whether ospfv3 commands should be consistent with
24 ospfv2 commands?
25       MR. NEUKOM:  Objection.  Asked and

```
 1  estimate for us the number of documents -- the
 2  number of historical Cisco documents you reviewed to
 3  prepare yourself to testify today as a corporate
 4  representative?
 5     A.  Easily 60 to 100 documents.
 6     Q.  And can you describe by category what
 7  sorts of documents you reviewed to prepare yourself
 8  to come testify today about the historical
 9  origination of Cisco command line expressions?
10     A.  Individual command specifications written
11  by engineers, source code, some e-mails, some
12  internal web pages, and the deposition of Kirk
13  Lougheed.
14     Q.  Do you believe there is anybody within
15  Cisco who knows more about the historical creation
16  of the 500-plus command line expressions identified
17  in Exhibit 431, other than you?
18     A.  No.
19         MR. NEUKOM:  Thanks very much.
20         MR. WONG:  Thank you.
21         THE VIDEOGRAPHER:  This concludes today's
22  videotaped deposition of Cisco Systems, Inc.
23  pursuant to Rule 30(b)(6).
24         We're off the record at 4:14 p.m.
25         (TIME NOTED:  4:14 p.m.)
```
Page 214

```
 1         DECLARATION UNDER PENALTY OF PERJURY
 2
 3     I, PHILLIP REMAKER, the witness herein,
 4  declare under penalty of perjury that I have read the
 5  foregoing in its entirety; and that the testimony
 6  contained therein, as corrected by me, is a true and
 7  accurate transcription of my testimony elicited at said
 8  time and place.
 9
10     Executed this _____ day of _____ 2016, at
11  _____, _____.
12     (City)         (State)
13
14
15
16
17         _____
18              PHILLIP REMAKER
19
20
21
22
23
24
25
```
Page 215

```
 1              REPORTER'S CERTIFICATION
 2
 3     I, Leslie Johnson, a Certified Shorthand
 4  Reporter of the State of California, do hereby certify:
 5     That the foregoing proceedings were taken
 6  before me at the time and place herein set forth; that
 7  any witnesses in the foregoing proceedings, prior to
 8  testifying, were administered an oath; that a record of
 9  the proceedings was made by me using machine shorthand
10  which was thereafter transcribed under my direction;
11  that the foregoing transcript is a true record of the
12  testimony given.
             Further, that if the foregoing pertains to
13  the original transcript of a deposition in a Federal
14  Case, before completion of the proceedings, review
15  of the transcript [ ] was [ ] was not requested.
16  I further certify I am neither financially interested in
17  the action nor a relative or employee of any attorney or
18  any party to this action.
19         IN WITNESS WHEREOF, I have this date
    subscribed my name.
20  Dated: April 15, 2016
21
22
23         leslie johnson
24              LESLIE JOHNSON
25              CSR No. 11451, RPR, CCRR
```
Page 216

55 (Pages 214 - 216)