# ATTACHMENT 7

1  KEKER & VAN NEST LLP
   ROBERT A. VAN NEST - #84065
2  BRIAN L. FERRALL - #160847
   DAVID SILBERT - #173128
3  MICHAEL S. KWUN - #198945
   633 Battery Street
4  San Francisco, CA 94111-1809
   Telephone:    (415) 391-5400
5  Email:  rvannest@kvn.com;
   bferrall@kvn.com; dsilbert@kvn.com;
6  mkwun@kvn.com

SUSAN CREIGHTON, SBN 135528
SCOTT A. SHER, SBN 190053
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
1700 K Street NW, Fifth Floor
Washington, D.C., 20006-3817
Telephone:  (202) 973-8800
Email:  screighton@wsgr.com;
ssher@wsgr.com

7

8  JONATHAN M. JACOBSON, NY SBN 1350495
   CHUL PAK (*pro hac vice*)
9  DAVID H. REICHENBERG (*pro hac vice*)
   WILSON SONSINI GOODRICH & ROSATI
10 Professional Corporation
   1301 Avenue Of The Americas, 40th Floor
11 New York, NY 10019-6022
   Telephone:  (212) 999-5800
12 Email:  jjacobson@wsgr.com; cpak@wsgr.com;
   dreichenberg@wsgr.com

13 Attorneys for Defendant ARISTA NETWORKS, INC.

14

15                  UNITED STATES DISTRICT COURT

16                NORTHERN DISTRICT OF CALIFORNIA

17                      SAN JOSE DIVISION

18 CISCO SYSTEMS, INC.,                 Case No. 5:14-cv-05344-BLF (NC)

19           Plaintiff,                 **ARISTA'S NOTICE OF MOTION AND
                                        MOTION TO STRIKE EXPERT
20       v.                             OPINIONS AND TESTIMONY OF
                                        DR. KEVIN C. ALMEROTH**
21 ARISTA NETWORKS, INC.,
                                        Date:        September 9, 2016
22           Defendant.                 Time:        9:00 a.m.
                                        Dept:        Courtroom 3 - 5th Floor
23                                      Judge:       Hon. Beth Labson Freeman

24                                      Date Filed: December 5, 2014

25                                      Trial Date: November 21, 2016

26

27

28

NOTICE OF MOTION AND MOTION TO STRIKE EXPERT OPINIONS AND TESTIMONY OF
DR. KEVIN C. ALMEROTH
Case No. 5:14-cv-05344-BLF (NC)

1080356

# **TABLE OF CONTENTS**

**Page**

NOTICE OF MOTION AND STATEMENT OF RELIEF SOUGHT ..........................................1

I.      INTRODUCTION ......................................................................................................1

II.     DR. ALMEROTH'S IMPROPER EXPERT OPINIONS ..........................................2

III.    LEGAL STANDARD................................................................................................3

IV.     ARGUMENT .............................................................................................................4

        A.      The Court should exclude Dr. Almeroth's opinion that Arista copied
                Cisco's source code because it is not the product of any reliable (or even
                disclosed) method applied reliably to the facts of the case.....................................4

                1.      Dr. Almeroth's opinion that Arista copied Cisco's *parser* source
                        code is not based on any reliable analysis of the underlying source
                        code, and should be excluded. ...................................................................4

                2.      Dr. Almeroth's opinion that Arista copied Cisco's source code
                        relating to the newly accused CLI command "help descriptions" is
                        similarly unreliable and should be excluded...............................................10

        B.      The Court should exclude Dr. Almeroth's opinion that Arista copied the
                "look and feel" of the Cisco CLI under Rules 702 because he fails to apply
                the proper legal standard or any scientific method to the available facts. .............11

        C.      The Court should exclude Dr. Almeroth's opinions that speculate about the
                state of mind of fact witnesses, or merely summarize evidence and provide
                attorney argument without any technical analysis. .................................................16

        D.      The Court should exclude Dr. Almeroth's opinions that improperly vouch
                for the credibility of statements made by witnesses at deposition or in
                documents. ...............................................................................................................19

        E.      The Court should exclude Dr. Almeroth's opinion that Arista copied
                Cisco's user documentation under Rule 702(a) because it is not based on
                any expertise beyond the reach of lay jurors. ........................................................22

V.      CONCLUSION..........................................................................................................23

NOTICE OF MOTION AND MOTION TO STRIKE EXPERT OPINIONS AND TESTIMONY OF
DR. KEVIN C. ALMEROTH
Case No. 5:14-cv-05344-BLF (NC)

1080356

# TABLE OF AUTHORITIES

**Page(s)**

## Federal Cases

*Apple v. Microsoft*
   35 F.3d 1435 (9th Cir. 1994) ............................................... 15

*Claar v. Burlington N.R.R.*
   29 F.3d 499 (9th Cir. 1994) .......................................... 10, 11, 21

*Cree v. Flores*
   157 F.3d 762 (9th Cir. 1998) ............................................... 19

*Daubert v. Merrell Dow Pharms, Inc.*
   509 U.S. 579 (1993)..................................................... 3, 22

*Domingo ex rel. Domingo v. T.K.*
   289 F.3d 600 (9th Cir. 2002) ............................................ 3, 9

*Estate of Barabin v. AstenJohnson, Inc.*
   740 F. 3d 457 (9th Cir. 2014) .............................................. 9

*Finjan, Inc. v. Blue Coat Systems, Inc.*
   Case No. 13-cv-03999-BLF, 2015 WL 4272870 (N.D. Cal. July 14, 2015)
   (Freeman, J.) ....................................................... *passim*

*Fleming v. Escort*
   Case No. CV 09-105-BLW, 2012 WL 12539337 (D. Idaho May 23, 2012)............................ 8

*FURminator, Inc. v. Kim Laube & Co, Inc.*
   758 F. Supp. 2d 797 (E.D. Miss. 2010) ..................................... 11

*General Electric Co. v. Joiner*
   522 U.S. 136 (1997).................................................... 3, 19

*GNPE Corp. v. Apple, Inc.*
   Case No. 12-CV-02885-LHK, D.I. 242, at 7-8 (N.D. Cal. Apr. 16, 2014) (Koh, J.) ............... 8

*In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices,*
   *& Prods. Liab. Litig.*
   978 F. Supp. 2d 1053 (C.D. Cal. 2013) .................................... 16

*Jinro America Inc. v. Secure Investments, Inc.*
   266 F.3d 993 (9th Cir. 2001) ............................................. 19

*Kumho Tire Co. v. Carmichael*
   526 U.S. 137 (1999).......................................................... 3

*Lindsey v. United States*
   237 F.2d 893 (9th Cir. 1956) ............................................. 20

*Lust v. Merrell Dow Pharms., Inc.*
   89 F.3d 594 (9th Cir. 1996) ................................................ 4

ii

1080356

*Ollier v. Sweetwater Union High School Dist.*
    768 F.3d 843 (9th Cir. 2014) ........................................................................ 3, 9

*Oracle America, Inc. v. Google Inc.*
    No. 10-03561, D.I. 1803 (N.D. Cal. May 3, 2016) (Alsup, J.) ........................... 16

*Schudel v. Gen. Elec. Co.*
    120 F.3d 991 (9th Cir. 1997) ............................................................................... 9

*Stilwell v. Smith & Nephew, Inc.*
    482 F.3d 1187 (9th Cir. 2007) ............................................................................. 8

*Sundance, Inc. v. DeMonte Fabricating Ltd.*
    550 F. 3d 1356 (Fed. Cir. 2008) .......................................................................... 3

*United States v. Awkard*
    597 F.2d 667 (9th Cir. 1979) ............................................................................. 20

*United States v. Barnard*
    490 F.2d 907 (9th Cir. 1973) ............................................................................. 20

*United States v. Binder*
    769 F.2d 595 (9th Cir. 1985) ............................................................................. 20

*United States v. Frazier*
    387 F.3d 1244 (11th Cir. 2004) ................................................................... 16, 18

*United States v. Freeman*
    498 F.3d 893 (9th Cir. 2007) ...................................................................... 16, 19

*Weisgram v. Marley Co.*
    528 U.S. 440 (2000) ............................................................................................. 9

*XpertUniverse, Inc. v. Cisco Systems, Inc.*
    2013 WL 1702159 (D. Del. Feb. 25, 2013) ........................................................ 8

**Federal Statutes**

17 U.S.C. § 102 ........................................................................................................ 8

**Federal Rules**

Fed. R. Evid. 402 ................................................................................................. 1, 23

Fed. R. Evid. 403 ........................................................................................... 2, 16, 24

Fed. R. Evid. 602 ............................................................................................... 19, 20

Fed. R. Evid. 702 ........................................................................................... *passim*

iii

1080356

## NOTICE OF MOTION AND STATEMENT OF RELIEF SOUGHT

PLEASE TAKE NOTICE that on September 9, 2016, at 9:00 a.m., or at such other time as the Court may direct, before the Honorable Beth Labson Freeman, at the United States District Court located at 280 South First Street, San Jose, California 95113, Defendant Arista Networks, Inc. ("Arista") will, and hereby does, move the Court pursuant to Federal Rules of Evidence 402, 403 and 702, as well as case law interpreting those rules, for an order excluding certain opinions in the Opening Expert Report and Rebuttal Expert Report of Dr. Kevin C. Almeroth submitted by Plaintiff Cisco Systems, Inc. ("Cisco"), and testimony regarding such opinions.

This Motion to exclude certain opinions and testimony of Dr. Almeroth is based on this Notice of Motion and Motion, the Memorandum of Points and Authorities below, the Declaration of Ryan Wong ("Wong Decl.") being filed herewith, and such other and further papers, evidence and argument as may be submitted to the Court in connection with the hearing on this motion.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

Cisco's proffered expert on "copying," Dr. Kevin C. Almeroth, offers several opinions in his Opening and Rebuttal Expert Reports that violate Rule 702 and should be excluded from trial.

*First*, Dr. Almeroth should not be allowed to suggest to jurors that Arista copied Cisco's source code because he discloses ***no*** methodology for reaching that conclusion, identifies ***no*** source code in either party's software on which he bases that opinion, readily admits that Arista's source code is written in a different programming language (in Python) than Cisco's (in C), and does not compare Cisco's source code with Arista's source code. The Court should not allow highly inflammatory and prejudicial accusations of source code copying from an expert who has not even approached the standards required to make that accusation.

*Second*, Dr. Almeroth's vague assertion that Arista copied the "look and feel" of the Cisco CLI should be excluded under Rule 702, and on relevance and prejudice grounds. Nowhere in Dr. Almeroth's reports does he disclose the specific Cisco CLI features that make up his idea of a Cisco "look and feel," or where those features are expressed in Cisco's copyright registered works (if they are expressed in them at all). By discussing the Cisco CLI "look and feel" without

1

1    any definition, Dr. Almeroth does not even purport to follow the legal requirements for

2    comparing the "look and feel" of two works and assessing similarities of protected and

3    unprotected elements.  Instead, his nebulous "look and feel" allegations are a way to bypass the

4    rigorous comparison that copyright law requires and replace it with Cisco's expert's *ipse dixit*

5    based on undefined elements or features, many of which are neither accused in this case nor

6    protectable under copyright law.  Dr. Almeroth's opinion that Arista copied the Cisco CLI "look

7    and feel" would prejudice Arista and confuse, rather than help, the jury.  It should be excluded.

8         *Third*, Dr. Almeroth offers several "opinions" that are not expert testimony at all, but

9    rather an early closing argument, imputing subjective motives to Arista and parroting snippets

10   from emails, documents, and depositions without applying any expertise as a computer scientist.

11   As numerous courts have held, such "vouching" by experts is inappropriate.  It is the province of

12   the jury—not Dr. Almeroth—to determine whether a witness is credible and what lay conclusions

13   to draw from a document.  And it is the province of lawyers to argue what inferences should be

14   drawn from non-technical evidence that the jury can understand.  The Court should not allow Dr.

15   Almeroth to usurp these functions by speculating about what witnesses knew or intended, telling

16   the jury that—in his "expert" opinion—certain statements are credible while others are not, or

17   rehashing record evidence that requires no expert assistance for the jury to understand.

18        *Finally*, Dr. Almeroth should not be permitted to provide "expert" testimony on alleged

19   similarities between Cisco's and Arista's user documentation.  Both parties' user manuals are

20   written in English, and Dr. Almeroth's lay comparisons of the words within them require no

21   scientific, technical, or other specialized knowledge.  A juror is more than capable of seeing

22   English text on a page and making a comparison between two sentences to determine whether

23   impermissible copying occurred under the law as instructed by the Court.  Dr. Almeroth's

24   opinions on documentation copying require no expertise beyond literacy, and should be excluded

25   under Rule 702.

26   **II.    DR. ALMEROTH'S IMPROPER EXPERT OPINIONS**

27        Dr. Almeroth submitted two expert reports in this lawsuit on behalf of Cisco:  An

28   "Opening Expert Report of Kevin Almeroth Regarding Copying" on June 3, 2016 ("Opening

2

NOTICE OF MOTION AND MOTION TO STRIKE EXPERT OPINIONS AND TESTIMONY OF
DR. KEVIN C. ALMEROTH
Case No. 5:14-cv-05344-BLF (NC)

1   Report"), which is directed at Cisco's copyright infringement assertions, and a "Rebuttal Report

2   of Kevin Almeroth" on June 17, 2016 ("Rebuttal Report"), which responds to expert opinions

3   submitted on behalf of Arista.[1]  The specific opinions challenged in this motion are identified and

4   discussed in detail in Section IV below.

5   **III.    LEGAL STANDARD**

6          Trial judges serve as gatekeepers for both the relevance and reliability of expert

7   testimony.  *Sundance, Inc. v. DeMonte Fabricating Ltd.*, 550 F. 3d 1356, 1360 (Fed. Cir. 2008);

8   *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141 (1999).  Federal Rule of Evidence 702 permits

9   expert testimony to be admitted only if it is: (1) based on scientific, technical, or other specialized

10  knowledge that will help the trier of fact to understand the evidence or determine a fact in issue;

11  (2) based upon sufficient facts or data; (3) the product of reliable principles and methods; and

12  (4) delivered by a qualified witness who has applied the principles and methods reliably to the

13  facts of the case.  *See* FED. R. EVID. 702.  Applying Rule 702, courts must consider "whether

14  expert testimony proffered in the case is sufficiently tied to the facts of the case that it will aid the

15  jury in resolving a factual dispute."  *Daubert v. Merrell Dow Pharms, Inc.*, 509 U.S. 579, 591

16  (1993).

17         "[N]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to

18  admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert."

19  *Domingo ex rel. Domingo v. T.K.*, 289 F.3d 600, 607 (9th Cir. 2002) (citing and quoting *Gen.*

20  *Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997)).  Therefore, trial courts should "exclude evidence

21  when it finds that 'there is simply too great an analytical gap between the data and the opinion

22  proffered.'"  *Id.* (affirming the trial court's exclusion of expert testimony where "there was

23  nothing but [the expert's] *ipse dixit* linking" the data and his opinion); *see also Ollier v.*

24  *Sweetwater Union High School Dist.*, 768 F.3d 843, 860 (9th Cir. 2014) (affirming the trial

25

26  [1] Copies of Dr. Almeroth's Opening Report and Rebuttal Report are attached to the Declaration
    of Ryan K. Wong in Support of Arista's Motion to Strike Expert Opinions and Testimony of
27  Dr. Kevin C. Almeroth ("Wong Declaration").  Dr. Almeroth's Opening Report is attached as
    Wong Declaration Exhibit 1 ("Opening Rpt."), and his Rebuttal Report is attached as Wong
28  Declaration Exhibit 2 ("Rebuttal Rpt.").

NOTICE OF MOTION AND MOTION TO STRIKE EXPERT OPINIONS AND TESTIMONY OF
DR. KEVIN C. ALMEROTH
Case No. 5:14-cv-05344-BLF (NC)

court's exclusion of expert testimony where "the experts' methodology was 'not at all clear' and the trial court "could not 'discern what, if any, method [the expert] employed in arriving at his opinions.'").

As the proponent of Dr. Almeroth's testimony, Cisco has the burden of proving its admissibility. *Lust v. Merrell Dow Pharms., Inc.*, 89 F.3d 594, 598 (9th Cir. 1996).

## IV.    ARGUMENT

### A.    The Court should exclude Dr. Almeroth's opinion that Arista copied Cisco's source code because it is not the product of any reliable (or even disclosed) method applied reliably to the facts of the case.

#### 1.    Dr. Almeroth's opinion that Arista copied Cisco's *parser* source code is not based on any reliable analysis of the underlying source code, and should be excluded.

Dr. Almeroth's opinion that Arista copied Cisco's source code should be excluded because it is neither the product of "reliable principles and methods," nor is based on "sufficient facts or data" to be admissible. *See* FED. R. EVID. 702; *see also Finjan, Inc. v. Blue Coat Systems, Inc.*, Case No. 13-cv-03999-BLF, 2015 WL 4272870, at *4 (N.D. Cal. July 14, 2015) (Freeman, J.) (excluding expert testimony where the expert's report "discloses no methodology other than to assert that he 'personally performed these tests' on the Accused Products[.]").

In Section IV.C of Dr. Almeroth's Opening Report, entitled "EOS Program," he briefly describes the behavior of the Arista EOS program across seven paragraphs and two-and-a-half pages of text. *See* Opening Rpt. ¶¶ 81–87. In particular, Dr. Almeroth opines that four characteristics of Arista's parser are, in his opinion, "non-standard behavior," and "present in both Cisco and Arista programs that I have inspected." *Id.* at ¶83. Based on this flimsy foundation, he concludes that Arista must have copied Cisco's source code. Almeroth Dep. Tr. at 276:25–278:10 ("[T]his goes to the copying of the code as part of the parsing engine.").

Nowhere in his report does Dr. Almeroth explain what he means by "non-standard," or how he came to distinguish between standard and non-standard behavior in a parser. Opening Rpt. at ¶¶ 81–87. He provides no data whatsoever to support his conclusion, nor does he disclose any method for evaluating the "standard" nature of code, and so there is no means even to evaluate whether that method is a reliable one, or whether he faithfully followed that method to

4

reach his conclusions.  Nor does he contend, much less explain the basis for concluding, that Arista had access to and copied Cisco's actual source code to achieve these purported non-standard similarities.  *See id*.  In fact, he does not cite a single line of Cisco's source code, nor provide any side-by-side comparison ***anywhere*** in his report suggesting that any of Arista's EOS includes source code copied from any specifically identified Cisco copyrighted work.  *Id*.[2]

Nevertheless, Dr. Almeroth testified at his deposition that this particular section of this Opening Report is the foundation of his source-code copying opinion.  Almeroth Dep. Tr. 277:14–278:10.[3]

Specifically, Dr. Almeroth testified as follows:

> **Q**.  … I want to direct your attention to paragraph 83 [of your Opening Report], which starts at -- on page 35. Do you see that?
>
> **A**.  I do.
>
> **Q**.  … What's the significance of your pointing out that in your opinion, this is non-standard behavior, and it's present in both Cisco and Arista?
>
> **A**.  So this goes to the copying of the code as part of the parsing engine. And what's being copied here is the source code that implements the process that continues -- that performs the parsing. So it's the source code itself.  And what's being described is that there are certain telltale aspects of the code that are, in this case, non-standard. There's a couple of other ones that are identified as non-standard as well.  And when you look at those together, it's indicative of copying the source code that embodies that process.
>
> **Q**.  Really?  So what you're trying to suggest here is that you think that Arista would have copied Cisco's parser source code?
>
> **A**.  I think it's the opinion that I'm expressing in this section.

*Id.* at 276:25–278:10.

Critically, when pressed by Arista's counsel to explain the basis for his opinion that Arista's parser exhibited "non-standard" behavior, Dr. Almeroth could point only to his

---

[2] Dr. Almeroth provides a separate opinion in a different section of his report specifically directed to CLI command "help descriptions", and cites to certain Arista source code files for that opinion. *See* Opening Rpt. ¶¶ 225–30 and Exhibit Copying-6.  That separate opinion regarding "help descriptions" does not target the general operation of the Arista EOS parser engine as discussed in Paragraphs 81 through 87 of his Opening Report, but is equally unreliable and must be excluded for the reasons stated elsewhere in this motion.

[3] The cited excerpts from Dr. Almeroth's deposition transcript are provided in Exhibit 3 to the Wong Declaration.

5

1080356

"expertise in how you can program parsers," with no supporting data of any kind:

> **Q**. What's your basis for asserting that this feature that you describe in paragraph 83 is, as you put it, non-standard?
>
> **A**. It's not the typical way that you would do the kind of rule-matching that's described in the two parsing systems.
>
> **Q**. How do you know?
>
> **A**. Based on my expertise in how you can program parsers.
>
> **Q**. What data do you provide to us for us to make any kind of independent assessment of whether this behavior is, as you put it, non-standard?
>
> **A**. I think what's included in the report. I mean, it's a description of what that processing is. I'm not sure what else –
>
> **Q**. With respect to its standard or non-standard character, all you say is, "In my opinion, this is non-standard behavior," right, with no citation to any data?
>
> …
>
> **A**. I mean, it's what my opinion is based on my experience in programming parsers.
>
> **Q**. Are we just supposed to take your word for it?
>
> …
>
> **A**. I think you can disagree with that opinion, but it's what my opinion is.

*Id.* at 279:9–280:11 (objections omitted). Dr. Almeroth then confirmed that he did not analyze any other CLI parsers in the networking industry to determine whether Arista's parser behaved in a "non-standard" way, and continued to dodge questions about what parsing behavior would have been "standard" and why. *Id.* at 280:13–281:12; Opening Rpt. ¶¶ 81–87.[4]

When pressed whether he had ***any*** evidence whatsoever that the Arista engineers who

---

[4] Dr. Almeroth testified that the remaining paragraphs in this section of his Opening Report (84 through 86) also supported his opinion that Arista copied Cisco's source code, despite the fact that those paragraphs do not include any assertion of source code copying and merely discuss behavioral similarities between the EOS parser and some of Cisco's parsers. *See* Almeroth Dep. Tr. 284:5–287:3 (discussing paragraphs 84, 85, and 86 of his Opening Report); see also Opening Rpt. ¶ 224 (referring to Paragraphs 81 through 87 of his Opening Report as describing similarities between Arista's EOS and Cisco IOS, but not alleging source code copying).

NOTICE OF MOTION AND MOTION TO STRIKE EXPERT OPINIONS AND TESTIMONY OF
DR. KEVIN C. ALMEROTH
Case No. 5:14-cv-05344-BLF (NC)

1  wrote Arista's parsing engine had access to Cisco's source code (to possibly copy from it), or

2  even knew the behavioral details of Cisco's parser discussed in this section of his Opening

3  Report, Dr. Almeroth could not identify a single piece of evidence.  Almeroth Dep. Tr. 281:14–

4  283:17; 289:11–20; 291:15–292:19.  Dr. Almeroth even admitted that the Arista source code and

5  Cisco source code were written in completely different languages.  *Id.* at 289:6–10; *see also*

6  Opening Rpt. ¶ 224 (confirming that Arista's EOS and Cisco's IOS are "written in different

7  languages").

8        Notwithstanding his admitted lack of evidence, Dr. Almeroth maintained his opinion that

9  Arista copied Cisco's parser source code based solely on what he calls "non-standard similarities"

10 without providing any facts to support that claim, or any side-by-side comparison of actual parser

11 source code showing any copying of any sort.  Almeroth Dep. Tr. 282:12–20.  In fact,

12 Dr. Almeroth conceded that he did not perform any "lower-level detail analysis" of the source

13 code to substantiate his assertion of source-code copying—he relied only on functional

14 similarities between how the respective parsers operate:

15        **Q**. Have you identified, with respect to any of these similarities in
         paragraphs 83 through 86, any similarity in the expression of the –
16        within the source code itself between Arista and Cisco of these
         functions?
17
         **A**. I'm not … sure I understand the question, what you mean by
18       "expression."

19       **Q**. How the source code is actually written to implement the
         functions that you describe in these paragraphs 83 through 86.
20
         **A**. Well, there are different languages. ***But beyond the descriptions***
21       ***of the functionality that I've included in this section, I haven't***
         ***done a lower-level detail analysis between the two***.  But I've
22       certainly identified the functional similarities and the parts that are
         specific to the two different parsers."
23

24 *Id.* at 292:20–293:14 (emphasis added) (objection omitted).[5]

25

26 ────────────────────
   [5] Remarkably, when asked whether there was sufficient evidence to conclude that Dell copied
27 Cisco's CLI given the over 1,600 identical and overlapping CLI commands between the Dell and
   Cisco CLIs, Dr. Almeroth testified that "there would need to be some additional evidence beyond
28 just the similarities in commands."  *See* Almeroth Dep. Tr. 104:8–110:16.  Dr. Almeroth's
   opinion that Arista copied Cisco's source code fails his own test for copying.

7

1080356

1    The foregoing source-code copying opinions should be excluded *in limine* under Rule

2    702.  As shown above, Dr. Almeroth does not disclose in his Opening Report, and admittedly did

3    not follow, any reliable and scientific methodology to support his opinion that Arista copied

4    Cisco's parser-engine source code.  FED. R. EVID. 702; *see also Stilwell v. Smith & Nephew, Inc.*,

5    482 F.3d 1187, 1192 (9th Cir. 2007) (the test for reliability under Rule 702 is "the soundness of

6    the [expert's] methodology"); *Finjan, Inc. v. Blue Coat Systems, Inc.*, 2015 WL 4272870, at *4

7    (excluding expert opinion where the expert "d[id] not disclose any methodology" for his

8    conclusions); *XpertUniverse, Inc. v. Cisco Systems, Inc.*, 2013 WL 1702159, at *1 (D. Del.

9    Feb. 25, 2013) (excluding as unreliable an expert opinion that source code in two products were

10   the same where the expert only analyzed "screen shots in user manuals and affiliated manuals"

11   and did not confirm the source code was actually the same); *Fleming v. Escort*, Case No. CV 09-

12   105-BLW, 2012 WL 12539337, at *3 (D. Idaho May 23, 2012) (excluding an expert opinion

13   because "[t]here is no way for the Court or the jury to evaluate [the expert's] methodology when

14   he has failed to explain how the source code works … his opinion is the classic 'black box,'

15   asserting that the source code makes the products non-infringing because he says so.").

16   Rather, Dr. Almeroth conceded at his deposition that he failed to perform "a lower-level

17   detail analysis between the two" source code repositories, and based his source code copying

18   opinion entirely upon "descriptions of the functionality" rather than "[h]ow the source code is

19   actually written to implement the functions."  Almeroth Dep. Tr. 292:20–293:14.  That admission

20   is fatal to his opinion.[6]  By failing to perform (or disclose) any analysis of the actual underlying

21   source code for the parsing engine of the Cisco and Arista CLIs, and relying only on his general

22   experience programming parsers, Dr. Almeroth has failed to apply any reliable principles and

23   methods under Rule 702(c) to support his source code copying opinion.  *See GNPE Corp. v.*

24   *Apple, Inc.*, Case No. 12-CV-02885-LHK, D.I. 242, at 7-8 (N.D. Cal. Apr. 16, 2014) (Koh, J.)

25

26   _____

[6] By focusing exclusively on how the Cisco IOS and Arista EOS parsers operate, Dr. Almeroth's
27   opinion is also untethered to copyrightable subject matter.  *See* 17 U.S.C. 102(b) ("In no case
does copyright protection … extend to any idea, procedure, process, system, method of operation,
concept, principle, or discovery, regardless of the form in which it is described, explained,
28   illustrated, or embodied in such work.").  Methods of operation can only be patented.

NOTICE OF MOTION AND MOTION TO STRIKE EXPERT OPINIONS AND TESTIMONY OF
DR. KEVIN C. ALMEROTH
Case No. 5:14-cv-05344-BLF (NC)

1    (excluding expert testimony because "the Court must be able to see the mechanisms in order to

2    determine if they are reliable and helpful" and because "'30 years of experience' alone does not

3    constitute a sufficiently reliable and testable methodology"); *Domingo*, 289 F.3d at 607

4    (affirming the exclusion of expert testimony on reliability grounds because he failed to provide

5    "[t]he reasoning between steps in a theory … based on objective, verifiable evidence and

6    scientific methodology").  For that reason alone, Dr. Almeroth's source code copying opinion

7    should be excluded.  *See Schudel v. Gen. Elec. Co.*, 120 F.3d 991, 996–97 (9th Cir. 1997),

8    *abrogated in unrelated part by Weisgram v. Marley Co.*, 528 U.S. 440 (2000) (ordering a new

9    trial where the trial court failed to exclude unreliable expert opinions based on methods that were

10   not "scientifically acceptable").[7]

11       In addition, whatever methodology (if any) Dr. Almeroth applied to arrive at his source

12   code copying opinion, it was not reliably applied to any facts of the case.  *See* FED. R. EVID.

13   702(d); *see also Ollier*, 768 F.3d at 860–861 (affirming the exclusion of expert testimony as

14   "speculative" and "inherently unreliable" because it was based on "superficial inspections" rather

15   than a "systematic assessment" of the record evidence).  Dr. Almeroth had full access to the

16   source code for both Cisco and Arista products throughout discovery.  *See* Opening Rpt. ¶ 37

17   (stating that he reviewed "Arista's EOS source code made available for inspection at the office of

18   Arista's counsel" and "Cisco source code produced by Cisco in this litigation"); *see also*

19   Almeroth Dep. Tr. 65:24–66:17 (confirming that he reviewed both parties' source code during

20   discovery).  But he cites to none of that evidence to substantiate his accusation of source code

21   theft for the parsing engine.  Moreover, Dr. Almeroth provides no explanation of how he

22   concluded that Arista engineers copied Cisco's source code when the underlying programming

23   languages are different, *see* Almeroth Dep. Tr. 293:5–14, and he has no knowledge of who at

24   Arista actually wrote Arista's parser, and whether he or she even had access to Cisco's source

25   code to copy it.  *Id.* at 281:14–283:17; 289:11–20; 291:15–292:19.  These evidentiary

26

27   _____
     [7] *See also Estate of Barabin v. AstenJohnson, Inc.*, 740 F. 3d 457, 464 (9th Cir. 2014) (ordering a
     new trial where the trial court allowed expert testimony on mesothelioma causation without
28   properly validating the "scientific validity or methodology" of the testimony).

9

1080356

1   deficiencies under Rules 702(b) and (d)—and his failure to consider any alternative explanations

2   for the behavioral similarities besides source code copying—are a further reason to exclude his

3   opinion that Arista copied Cisco's parser source code.  *See Claar v. Burlington N.R.R.*, 29 F.3d

4   499, 502 (9th Cir. 1994) (affirming the exclusion of expert testimony where the experts failed to

5   "ma[k]e any effort to rule out other possible causes" beyond the one underlying their opinions).

6
7
### 2.   Dr. Almeroth's opinion that Arista copied Cisco's source code relating to the newly accused CLI command "help descriptions" is similarly unreliable and should be excluded.

8       Elsewhere in his Opening Report, and separate from his assertion that Arista copied

9   Cisco's parser source code (discussed above), Dr. Almeroth suggests source code copying as part

10  of Cisco's late disclosed allegation that Arista copied hundreds of Cisco CLI command "help

11  descriptions." Opening Rpt. ¶¶ 225–26 and Exhibit Copying-6.[8]  Dr. Almeroth repeats this

12  allegation in his Rebuttal Report, stating that Arista not only "copied at least 579 command help

13  screens… but that Arista ***incorporated them into its source code***."  *See* Rebuttal Rpt. ¶ 148(a)

14  (emphasis added).

15      These source-code copying assertions directed to the accused CLI command "help

16  descriptions" should also be excluded under Rule 702.  Dr. Almeroth performs no analysis of

17  actual Cisco source code or Arista source code (or any other evidence) that supports the

18  conclusion that any source code was copied, and he cites to no evidence that Arista engineers had

19

20  ────────────────

[8] Cisco first disclosed its contention that these help descriptions amounted to copyright
21  infringement in a supplemental Interrogatory Response served at 10:44 on the last day of fact
    discovery.  Arista had no opportunity to take any discovery from Cisco regarding any of the
22  hundred-plus asserted CLI command "help descriptions," or conduct any fact investigation of its
    own.  *See* D.I. 306 (Declaration of Eduardo Santacana in Support of Arista's Motion to Strike
23  Cisco's late-asserted "help descriptions").  Given the untimely disclosure, Dr. John R. Black, Jr.,
    who submitted two expert reports on behalf of Arista, did not have any means of gathering
24  evidence through discovery, nor sufficient time to address these allegations regarding command
    "help descriptions."  For these reasons, opinions regarding these late contentions should be
25  excluded.  *See* Opening Rpt. ¶¶ 100, 221, 225–30, and Exhibit Copying-6.  Arista filed a Motion
    to Strike the contentions for untimeliness, which Magistrate Cousins denied.  *See* D.I. 304–08
26  (Mot.); 323–24 (Opp.); 362–64 (Reply); 408 (Order).  Arista is filing a motion for relief from the
    Magistrate Judge's Order on grounds that the Magistrate Judge applied the wrong legal standard
27  because he did not assess whether Cisco *could have* provided these contentions responses earlier
    based upon the evidence available to it.  If the Court were to deny Arista's motion for relief,
28  Arista will request an opportunity for supplemental fact, and expert discovery and motion practice
    directed to the late contentions.

NOTICE OF MOTION AND MOTION TO STRIKE EXPERT OPINIONS AND TESTIMONY OF
DR. KEVIN C. ALMEROTH
Case No. 5:14-cv-05344-BLF (NC)

1080356

1    access to confidential Cisco source code and actually copied any the accused "help descriptions"

2    *from Cisco's source code*.  *See id.*; Opening Rpt. ¶¶ 225–26 and Exhibit Copying-6.  Expert

3    testimony that reaches a factual conclusion without any effort to "adequately account[] for

4    obvious alternative explanations" should not be admitted. *See* FED. R. EVID. 702 Advisory

5    Committee's Note; *see also Claar*, 29 F.3d at 502 (excluding expert testimony where the experts

6    failed to "ma[k]e any effort to rule out other possible causes for the injuries plaintiffs complain

7    of"); *FURminator, Inc. v. Kim Laube & Co, Inc.*, 758 F. Supp. 2d 797, 808 (E.D. Miss. 2010)

8    (barring a technical expert from testifying because the expert's methodology "did not effectively

9    eliminate alternative explanations" for the conclusion he reached).  Here, Dr. Almeroth admitted

10   that CLI command "help descriptions" in Cisco IOS are nothing more than "*words that appear*

11   *on a screen*" and that the accused "similarities [between EOS and IOS] are *based on what you*

12   *can see on the screen*."  Almeroth Dep. Tr. 287:5–289:5 (emphasis added).  In other words, any

13   user of the Cisco IOS CLI can see the "help descriptions" on the computer screen—there is no

14   need to access Cisco's source code to view them.  When confronted with these undisputed facts,

15   Dr. Almeroth eventually conceded that copying Cisco's "help descriptions" would *not* require

16   accessing and copying Cisco's source code given that the "help descriptions" themselves are

17   plainly visible to anyone using the Cisco CLI.  *Id.* at 288:11–22.

18           Since there is no evidence to suggest that any similarities between Arista's and Cisco's

19   "help descriptions" actually, or even likely, occurred because of copying Cisco's source code (as

20   opposed to using publicly available sources of the text), Dr. Almeroth should not be permitted to

21   speculate that Arista copied Cisco's source code for its "help descriptions."

22           **B.    The Court should exclude Dr. Almeroth's opinion that Arista copied the**
             **"look and feel" of the Cisco CLI under Rules 702 because he fails to apply the**
23           **proper legal standard or any scientific method to the available facts.**

24           In his Opening and Rebuttal Reports, Dr. Almeroth repeatedly asserts that Arista

25   intentionally copied the "look and feel" of the Cisco CLI, but he never articulates a reliable and

26   consistent set of CLI features that comprise the "look and feel":

27           •    "To suggest that Arista's copying might be acceptable based on a
                  nearly exclusive focus counting command expressions thus ignores the
28                intentional copying of the entire *look and feel* of IOS, as well as all of

---

11

NOTICE OF MOTION AND MOTION TO STRIKE EXPERT OPINIONS AND TESTIMONY OF
DR. KEVIN C. ALMEROTH
Case No. 5:14-cv-05344-BLF (NC)

the other elements that Arista copied beyond the commands." Rebuttal Rpt. ¶ 70 (emphasis added).

- "By copying Cisco's copyrighted works, Arista has cloned—intentionally—the '***look and feel***' of Cisco's copyrighted works." *Id.* at ¶ 136 (emphasis added).

- "To the contrary, Arista used Cisco's copyrighted works in products that compete directly with Cisco using the same '***look and feel***' and largely similar set of product features, which were also copied from Cisco, in order to take customers away from Cisco." *Id.* at ¶ 137 (emphasis added).

- "In sum, by copying the '***look and feel***' of Cisco's IOS CLI, Arista copied a qualitatively significant portion of the works at issue—indeed, as I stated earlier, a user sitting in front of an Arista CLI would have a hard time knowing that they were not actually using a Cisco CLI. The interface, displays, command expressions, and help descriptions are identical or very similar, which gives the user the entire '***look and feel***' of Cisco's IOS CLI." *Id.* at ¶ 145 (emphasis added).

- "And, with respect to the IOS CLI that is part of the copyrighted works, Arista has copied the entire '***look and feel***' of that element, which from a technical perspective is the core of the IOS operating system experience—it is the element by which users interact and recognize Cisco's IOS, and as a result they are going to be most familiar with it." *Id.* at ¶ 158 (emphasis added).

*See also* Opening Rpt. ¶¶ 65, 174; Rebuttal Rpt. ¶ 64; Almeroth Dep. Tr. 123:1–5 ("**Q.** … Is it your opinion that the Arista EOS CLI has the same look and feel as the Cisco IOS CLI? **A.** I believe that's correct, but I would defer to where I've discussed that opinion in my report.").

When pressed to reveal the methodology he followed determine that the Arista CLI had copied the "look and feel" of the Cisco CLI, Dr. Almeroth stated: "[I]t would be things like the similarity in the user manuals, the types of command and command expressions, the exec modes, the prompts, the output. You know, those as instances of logging into the router and being able to configure it and see information in very similar ways was, for me personally, as part of my evaluation, a determination that the look and feel was similar." Almeroth Dep. Tr. at 125:22–126:18. He then expanded on his understanding of what constituted the "look and feel" of a CLI beyond the asserted Cisco CLI features in this lawsuit to include "other characteristics of the interface" like the use of command "prefixes" and "tab" completion:

> [T]he look has to go -- has to do with the physical appearance of the commands, the prompts, the output. The feel is in a similar vein, those kinds of concepts, and can also be judged based on the way

12

1080356

that a user interacts with the interface, the commands that can be entered. ***Other characteristics of the interface might contribute to a conclusion that there's a look and feel. For example, the ability to use prefixes, or another option might be to extend the command by typing "tab."*** In some aspects, you look at the basic characteristics of the interface, and from an HCI design perspective, you get feedback to the user, and you allow the user to enter input. So it's really input from the user and output from the device. And you can look at those two aspects of the interface to determine similarities. And the existence of key similarities would be a basis for determining that the look and feel is consistent between two interfaces.

*Id.* at 127:3–128:10 (emphasis added). Dr. Almeroth repeatedly confirmed that whether the "look and feel" of two CLIs are the same goes beyond the asserted and accused aspects of the Cisco and Arista CLIs, and "depends on the other factors I've talked about and the degree to which the other factors are present", including the use of command prefixes (*i.e.*, entering abbreviated commands like "en" for "enable" and having the CLI recognize it). *Id.* at 134:15–136:1 ("[T]hat concept of entering a minimum syntactic length to disambiguate over other commands is a characteristic that's common to Cisco and Arista, and ***is a factor that I've considered in determining the similarity between look and feel***.") *Id.* at 135:22–136:1 (emphasis added). Finally, Dr. Almeroth explained that his "look and feel" analysis of the Cisco and Arista CLIs included looking at "command structures, … similarities in the structure of commands, the way commands are input, . . . [and] intended design[.]" *Id.* at 141:13–21.

Critically, Cisco has not asserted copyright protection over, and it has not specifically alleged copyright infringement by Arista for supporting, the use of CLI command prefixes (*i.e.*, entering partial commands that the system "autocompletes" into full ones), hitting "tab" in a CLI to automatically complete a partially entered command, the general way CLI commands are structured, or the way commands are actually input into the CLI, and Dr. Almeroth does not provide any infringement analysis in his expert reports directed specifically at those particular aspects of Cisco's or Arista's CLIs. *See* Second Amended Complaint (D.I. 64); *see also, generally,* Opening and Rebuttal Rpts.

The Court should exclude Dr. Almeroth's nebulous and opaque opinion that Arista copied the Cisco CLI's "look and feel" under Federal Rules of Evidence 702 because it is fails to follow

13

1080356

1    any reliable methodology for reaching that conclusion, and fails to follow the law governing

2    claims of "look and feel."  *First*, Dr. Almeroth's opinion fails to meet the requirements of Rule

3    702(c) because he could not define any consistent or reliable methodology to define what

4    constitutes the "look and feel" of any CLI, or a clear definition of what is included within the

5    "look and feel" of Cisco's CLI.  *See, e.g.*, Almeroth Dep. Tr. 124:18–125:5 (testifying that he

6    could ascertain "look and feel" by analyzing documentation alone); *id.* at 129:25–143:18

7    (declining to provide any concrete criteria to evaluate whether the "look and feel" of two CLIs are

8    the same).  As Dr. Almeroth put it:  "It would depend on the situation.  It would depend on the

9    degree to which there were similarities and differences.  It would depend on, I mean, how

10   different the differences are, how similar the similarities are."  *Id.* at 140:2–14.  The Court should

11   not permit Dr. Almeroth's to assert that Arista copied the Cisco CLI "look and feel" as evidence

12   of copyright infringement given the absence of any defined or reliable methodology—indeed, of

13   any methodology at all.  *See* FED. R. EVID. 702(c).

14         *Second,* Dr. Almeroth's "look and feel" copying opinion should be excluded because it is

15   based on similarities between the Arista and Cisco CLIs that are not accused in this litigation.

16   Specifically, Dr. Almeroth confirmed at his deposition that his opinion that Arista copied the

17   Cisco CLI "look and feel" was based on functions like CLI prefix support (*i.e.*, the ability for

18   users to enter partial commands in the CLI), as well as "tab" completion.  Almeroth Dep. Tr.

19   127:3–128:10, 134:15–136:1.  Cisco has never before claimed that Arista's support of these

20   features constitutes copyright infringement.  *See* Second Amended Complaint (D.I. 64) (no such

21   allegations); *see also* Cisco's Suppl. Resp. to Arista's Interrogatory No. 2 (no such allegations).[9]

22   Since Dr. Almeroth's "look and feel" copying opinion is not limited to the asserted and accused

23   aspects of the Cisco and Arista CLIs, it both violates the discovery rules and is not helpful to a

24   jury likely to be overwhelmed by Cisco's amorphous theories of infringement.

25

26   ───────────────────
     [9] Arista's Interrogatory No. 2 to Cisco asks Cisco to identify "every similarity that Cisco
     contends is a basis of its claim of copyright infringement[.]"  Cisco did not identify CLI prefix
27   support or "tab" completion support as a "similarity" in any of its responses to Interrogatory
     No. 1.  *See* Wong Decl. Ex. 4 (attaching Cisco's most recent supplemental responses to this
28   discovery request).

NOTICE OF MOTION AND MOTION TO STRIKE EXPERT OPINIONS AND TESTIMONY OF
DR. KEVIN C. ALMEROTH
Case No. 5:14-cv-05344-BLF (NC)

Finally, Dr. Almeroth's "look and feel" opinion does not even attempt to follow the copyright law. He does not attempt to account for the lack of copyright protection in any aspect of what contributes to the "look and feel." For example, features like "tab" completion were not original to Cisco, and so could not be protected by Cisco's copyright. *See* Almeroth Dep. Tr. 136:11–19. Analytic dissection is essential before any comparison of works is appropriate. *See Apple v. Microsoft*, 35 F.3d 1435, 1443 (9th Cir. 1994) ("Using analytic dissection, … the court must determine whether any of the allegedly similar features are protected by copyright" before it "set[s] the appropriate standard for a subjective comparison of the works to determine whether, as a whole, they are sufficiently similar to support a finding of illicit copying"). But Dr. Almeroth did not even give lip service to this legal requirement. Moreover, Dr. Almeroth did not even follow his own purported theory for comparing the "look and feel" of the works in that he failed to compare the works as a whole. *See also* Almeroth Dep. Tr. 125:22–126:18. There is no basis in logic or the law for concluding that one product shares the "look and feel" of another without considering the differences, as well as the similarities.[10] Yet Dr. Almeroth never mentions, for example, the more than 10,000 commands that are different between the Cisco and Arista products, or the different features of the two products, or countless other general and specific differences. Because Dr. Almeroth's opinion that Arista copied the "look and feel" of the Cisco CLI is merely an attempt to put a rhetorical name on Cisco's allegations without any attention to the analytical and scientific rigors that such an accusation demands, it should be excluded. *See* FED. R. EVID. 702. Allowing this testimony would be highly prejudicial and would invite error by inviting the jury to find infringement based on unprotectable similarities that Cisco does not and cannot claim to own.

---

[10] In fact, Dr. Almeroth has never explained how he considered the differences between Cisco's works and the accused Arista products as a whole. *See* Almeroth Dep. Tr. 143:19–144:17 ("**Q.** In forming your opinions on look and feel, did you make a list of the differences between the Cisco CLI and the Arista CLI? **A.** I don't recall specifically making a list of differences. … **Q.** Do you disclose anywhere in your reports how much you weight each factor that you assert as similar or different in reaching your conclusion that the two CLIs have the same or a similar look and feel?" … **A. …** I don't believe that there is a specific weighting that needs to be identified. I don't think that that's a requirement for using a rigorous methodology to reach the conclusion.**").

1080356

**C.  The Court should exclude Dr. Almeroth's opinions that speculate about the state of mind of fact witnesses, or merely summarize evidence and provide attorney argument without any technical analysis.**

The Court should exclude from Dr. Almeroth's Opening and Rebuttal Reports all portions of his opinions where he impermissibly summarizes and speculates about the subjective intent and beliefs of authors of documents and emails, including—for example—divining the intent of the authors of Cisco documents when they used certain words, or divining the intent of Arista engineers based on emails and other documents.

A party's or person's state of mind is not the proper subject of expert testimony.  *See, e.g., In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Prods. Liab. Litig.,* 978 F. Supp. 2d 1053, 1087 (C.D. Cal. 2013) (barring an expert from testifying regarding a party's mental state because such testimony "is not a proper subject for expert testimony, and it must be established (if at all) by other evidence."); *see also Oracle America, Inc. v. Google Inc.,* No. 10-03561, D.I. 1803 ("Order Re Google Motion *In Limine* Re Expert Vouching for Preferred Version of Disputed Fact") (N.D. Cal. May 3, 2016) (Alsup, J.) ("Nor should an expert ever attempt to tell the jury what someone intended or was thinking. The mental state of the characters in our story on trial is for the jury to decide, never for experts to speculate about . . . No expert is a mind reader. These are clear-cut prohibitions.").  Therefore, whether any Arista engineers actually had the intent to mimic aspects of the Cisco CLI, or whether particular employees held certain beliefs about the Cisco CLI, Arista CLI, or the industry standard CLI, cannot be argued to the jury as part of Dr. Almeroth's "expert" testimony.  *Id.*

Moreover, an expert may not be used as a party spokesperson to provide an "additional summation" of evidence that goes beyond his or her expertise.  *United States v. Freeman,* 498 F.3d 893, 903–04 (9th Cir. 2007) ("The fact that [the expert] possessed specialized knowledge of the particular language of drug traffickers did not give him *carte blanche* to testify as to the meaning of other words[.]").  Therefore, Dr. Almeroth is not permitted to broadly "interpret the evidence" and provide lay opinions as to how the jury should read non-technical emails and documents, as that would "usurp[] the jury's function" and "implicate[] Rule 403 as a needless presentation of cumulative evidence and a waste of time."  *Id*; *see also United States v. Frazier,*

16

1080356

387 F.3d 1244, 1262–63 (11th Cir. 2004) ("Proffered expert testimony generally will not help the trier of fact when it offers nothing more than what lawyers for the parties can argue in closing arguments.").

Despite these prohibitions, Dr. Almeroth repeatedly cites to and summarizes deposition testimony and documents throughout his Opening and Rebuttal Reports as supposed evidence of Arista's state of mind—namely, that its employees had the specific intent to copy Cisco materials and in fact copied those materials, and held other personal beliefs about the Cisco and Arista CLIs. Specifically, Dr. Almeroth quotes from and summarizes:

- Evidence to provide the opinion that "Arista's purpose [*i.e.*, intent] in creating EOS was to create a substitute for Cisco's IOS" and to compete with Cisco. Opening Rpt. ¶ 70; Rebuttal Rpt. ¶¶ 135, 157.

- Multiple documents to provide the opinion that Arista engineers used the term 'industry standard'" as a "codename for Cisco's IOS CLI," and that Arista employees intentionally "marketed" the EOS CLI "as being familiar because it was modeled after Cisco's IOS CLI." Opening Rpt. ¶¶ 73–74.

- Multiple documents to provide the opinion that "Arista's own executives and engineers … intentionally designed [the EOS CLI] to be similar to Cisco's IOS CLI." Opening Rpt. ¶¶ 75–76.

- Multiple documents to provide the opinion that specific Arista employees intended to copy or promoted copying Cisco user documentation. Opening Rpt. ¶¶ 78–79; Rebuttal Rpt. ¶¶ 146–47.

- Multiple documents to provide the opinion that specific Arista employees criticized particular Cisco commands. Opening Rpt. ¶ 118.

- Testimony from multiple depositions to provide the opinion that Arista engineers held certain beliefs about the CLI creation process, including that Arista engineers believed it was "very subjective." Opening Rpt. ¶ 112; Rebuttal Rpt. ¶¶ 104, 124.

- Multiple documents to provide the opinion that Arista possessed and used Cisco devices for improper purposes. Opening Rpt. ¶¶ 138–40.

- Multiple documents to provide the opinion that "Arista … not only had access to Cisco's IOS CLI but that Arista's corporate preference was to copy Cisco." Opening Rpt. ¶ 145; Rebuttal Rpt. ¶¶ 138–39.

- Testimony from multiple depositions and statements from news articles to provide the general opinion that Arista copied from Cisco. Opening Rpt. ¶¶ 146–47.

- "Dozens of internal Arista emails and presentations" to provide the opinion that "Arista copied Cisco's IOS copyrighted works and did so intentionally[.]" Opening Rpt. ¶ 148.

17

1080356

- Testimony and documents that purportedly show Arista's intent to "mimic" Cisco.  Opening Rpt. ¶¶ 152–53.

- Testimony and statements from Arista employees regarding documentation copying.  Opening Rpt. ¶¶ 156–57.

- Testimony and internal documents that purportedly show, is his view, Arista "instructing" employees to copy aspects of the CLI.  Opening Rpt. ¶¶ 195, 203.

- A sales presentation with his personal views on what they show regarding Arista's sales strategies.  Opening Rpt. ¶¶ 219–20.

- Testimony from Arista employees to provide an opinion about Arista's beliefs regarding Cisco NX-OS, and what Arista purportedly tells customers about NX-OS.  Opening Rpt. ¶ 242; Rebuttal Rpt. ¶ 160.

- Testimony from Arista employees that supposedly "confirm[] that there is no 'industry standard' CLI."  Opening Rpt. ¶ 246 and footnotes188–91.

- Testimony from Arista employees that supposedly prove "that Arista is referring to Cisco's IOS CLI" when it uses the term "industry standard CLI" rather than an actual industry standard."  Opening Rpt. ¶ 250.

- Testimony and documents that purport to show Arista's specific intent and knowledge, including for contributory infringement and vicarious liability, and his opinion that "Arista intentionally encourages its distributors and/or customers to infringe Cisco's copyrights, in the hopes that Arista can win Cisco customers."  Opening Rpt. ¶¶ 256–57; Rebuttal Rpt. ¶¶ 132, 159.

- Testimony and documents, including ALJ statements from the ITC, to provide the opinion that Arista acted in bad faith.  Rebuttal Rpt. ¶ 137.

- Testimony and documents that supposedly show that Arista "copied a substantial portion of the copyrighted works."  Rebuttal Rpt. ¶¶ 142–43, 149–50.

For each of these summaries, Dr. Almeroth does *not* apply any scientific, technical, or specialized knowledge, or any expert methodology; he simply reads the document(s) and provides his own conclusion therefrom, as a lay witness might (except Dr. Almeroth has no percipient knowledge of the events).

Dr. Almeroth has no special expertise in "reading emails and knowing what the authors of those emails intended" or "special knowledge of the state of mind of Arista employees at any particular point of time[.]"  Almeroth Dep. Tr. 14:14–17:5.  To the contrary, Dr. Almeroth readily admitted:  "I'm not sure that some particular expertise is required to look at an email" beyond "explain[ing] the technical issues related to an email that discusses technical issues in [his] field[.]"  *Id.* at 14:21–15:6.  Here, Dr. Almeroth's sweeping characterizations and interpretations

18

NOTICE OF MOTION AND MOTION TO STRIKE EXPERT OPINIONS AND TESTIMONY OF
DR. KEVIN C. ALMEROTH
Case No. 5:14-cv-05344-BLF (NC)

1080356

of non-technical deposition testimony and documents regarding the specific intent and subjective

beliefs of Arista employees should be excluded because those opinions are not tethered to any

scientific and specialized analysis or methodology, and offer nothing more than what Cisco's

lawyers can argue in closing arguments.  *See* FED. R. EVID. 702(a), (c), and (d); *see also Finjan,*

*Inc. v. Blue Coat Systems, Inc.*, Case No. 13-cv-03999-BLF, D.I. 378 (N.D. Cal. July 14, 2015)

(Freeman, J.) (excluding expert testimony of "what Defendant thought about Plaintiff's patents"

because it "is not the proper subject of expert testimony" and the experts were not "qualified to

offer opinions regarding Defendant's subjective beliefs").

> **D.    The Court should exclude Dr. Almeroth's opinions that improperly vouch for the credibility of statements made by witnesses at deposition or in documents.**

The Court should exclude all portions of Dr. Almeroth's reports where he endorses

deposition testimony and documents without applying any scientific or expert methodology or

analysis.

Because expert testimony is "likely to carry special weight" with the jury, "care must be

taken to assure that a proffered witness truly qualifies as an expert" on all testimony he or she

offers under Rule 702.  *Jinro America Inc. v. Secure Investments, Inc.,* 266 F.3d 993, 1004 (9th

Cir. 2001) (experts receive "unmerited credibility" if allowed to provide lay testimony).

Speculative testimony is not admissible, *General Electric*, 522 U.S. at 146, and courts must

carefully evaluate whether an expert is "relying properly on his general experience and reliable

methodology" or is improperly offering lay opinions "as to the meaning of numerous words and

conversations" in documents and testimony.  *See Freeman*, 498 F.3d at 903.  A party may not use

an expert to "unfairly provid[e] … an additional summation" of their case "by having the expert

interpret the evidence."  *Id.* at 904.  Once an expert ceases "testifying as an expert and beg[ins]

providing lay testimony, he [is] no longer 'allowed ... to testify based on hearsay information, and

to couch his observations as generalized 'opinions' rather than as firsthand knowledge.'"  *Id.* at

904 (citation omitted); *see also Cree v. Flores*, 157 F.3d 762, 773 (9th Cir. 1998) (Federal Rules

of Evidence 602 and 803 apply to non-expert testimony).

No expert is permitted to vouch for or buttress the credibility of what another person has

19
NOTICE OF MOTION AND MOTION TO STRIKE EXPERT OPINIONS AND TESTIMONY OF
DR. KEVIN C. ALMEROTH
Case No. 5:14-cv-05344-BLF (NC)

1080356

1    said, either in a deposition on in a document, as it would invade the province of—and would not

2    assist—the trier of fact. *See, e.g., United States v. Binder,* 769 F.2d 595, 602 (9th Cir. 1985)

3    (experts may not testify as to credibility), *overruled on other grounds in U.S. v. Morales,* 108

4    F.3d 1031, 1035 n.1. (9th Cir. 1997); *United States v. Awkard,* 597 F.2d 667, 671 (9th Cir.

5    1979) (error to permit expert to testify to the ability of a witness to accurately recall past events

6    because it goes to credibility); *United States v. Barnard,* 490 F.2d 907, 912–913 (9th Cir.

7    1973) (affirming the exclusion of an expert opinion as to the truthfulness of a witness's

8    testimony); *Lindsey v. United States,* 237 F.2d 893, 895–97 (9th Cir. 1956) (error to permit an

9    expert to comment on witness credibility); *see also* Order Re Google Motion *In Limine* Re Expert

10   Vouching for Preferred Version of Disputed Fact ("[A]n expert should never purport to tell the

11   jury which side's fact witnesses are credible or vouch for whose fact scenario is correct—that is

12   entirely for the jury.").

13         Dr. Almeroth improperly vouches for Cisco's view of disputed facts in both his Opening

14   and Rebuttal Reports by repeatedly quoting from the deposition testimony of fact witnesses and

15   vouching for the credibility of those statements by adopting them as his expert opinions, without

16   providing any scientific or technical analysis of his own.  Specifically, Dr. Almeroth

17   impermissibly vouches for the credibility of:

18 · Current and former Cisco employees Kirk Lougheed, Abhay Roy,
19   Devadas Patil, Phillip Remaker, and Scott Lennartz regarding the
     purported creativity and "creative process" behind the addition of
20   various CLI features to Cisco IOS.  Opening Rpt. ¶¶ 51, 102–10, 115.

21 · Kirk Lougheed regarding his use of CLI features from Stanford's
     software or other legacy systems like TOPS-20.  Opening Rpt. ¶ 260.

22 · Abhay Roy that Cisco referred to its CLI as "industry-leading" and not
23   "industry standard."  Rebuttal Rpt. ¶ 62, footnote 30.

24 · Soni Jiandani that "industry standard" really means "gold standard"
     when used in Cisco documents to describe Cisco's CLI.  Rebuttal Rpt.
25   ¶¶ 62, 75, and footnotes 30 and 47.

26 · Current and former Cisco employees regarding the purported creativity
     behind the creation of various CLI features, and the supposed restraints
27   (or lack thereof) on command creation.  Rebuttal Rpt. ¶¶ 102, 108, and
     125 and footnotes 72, 85, and 86.

28     Dr. Almeroth also repeatedly vouches for the credibility of the content of quoted

20

NOTICE OF MOTION AND MOTION TO STRIKE EXPERT OPINIONS AND TESTIMONY OF
DR. KEVIN C. ALMEROTH
Case No. 5:14-cv-05344-BLF (NC)

statements in documents without providing any expert analysis or specialized knowledge that the jury lacks.  Specifically, Dr. Almeroth vouches for the credibility of:

- Copyright notices in certain Cisco software and manuals by stating that "anyone who sees IOS running or the related documentation is aware (or should be aware) that Cisco has legal rights associated with and its related materials."  Opening Rpt. ¶¶ 98, 136–37; Rebuttal Rpt. ¶ 73.

- Statements in Cisco's discovery responses that the term "industry standard" refers to "the popularity and quality of Cisco's CLI in Cisco's industry leading products."  Opening Rpt. ¶ 247.

- Statements in Cisco's CLI guidelines regarding the addition of new commands to IOS.  Rebuttal Rpt. ¶ 108.

In each of the above examples, Dr. Almeroth fails to apply any generally accepted and reliable scientific methodology (or any methodology beyond what how a lay juror would weigh the evidence) to formulate his "expert" opinions.  He simply places his "expert" seal of approval, for example, on the argument that Cisco's use of the term "industry standard" in its documents to describe its CLI means "the gold standard"—as opposed to being standard across the industry— because Cisco marketing executive Soni Jiandani said so, and therefore she should be believed above all conflicting evidence.  He neither contributes any "scientific, technical, or other specialized knowledge" to "help the trier of fact to understand the evidence or to determine a fact in issue," nor applies a scientifically valid or reliable methodology to the deposition testimony and documents he quotes from.  *See* FED. R. EVID. 702; *see also Claar v. Burlington Northern R. Co.*, 29 F.3d 499, 502 (9th Cir. 1994) (affirming the exclusion of expert testimony because "[i]n order to qualify as 'scientific knowledge' … an inference must be derived by the scientific method"); Order Re Google Motion *In Limine* Re Expert Vouching for Preferred Version of Disputed Fact (allowing "experts to quote from fact testimony or … documents" only if they "explicitly assume that they accurately reflect the relevant circumstances and then, ***based thereon, apply their specialized knowledge*** to render opinions beyond the ken of our lay jury"). The only purpose served by Dr. Almeroth's citations to above testimony and documents is so he, as a purported "expert," can vouch for their truthfulness and credibility.  The Court should therefore exclude all instances in Dr. Almeroth's Opening and Rebuttal Reports where he merely affirms the opinions and conclusions offered by lay witnesses without providing any independent

21

1080356

1    analysis, or apply any methodologies, of his own.

2        **E.    The Court should exclude Dr. Almeroth's opinion that Arista copied Cisco's user documentation under Rule 702(a) because it is not based on any expertise beyond the reach of lay jurors.**

3

4        Dr. Almeroth purports to provide an expert opinion regarding Arista's alleged copying of

5    Cisco's user documentation. *See* Opening Rpt. ¶¶ 155–167 and Exhibit Copying-1 ("Evidence of

6    Documentation Copying"). Both the asserted Cisco user manuals, and the accused Arista user

7    manuals, are written in English. *See id.* at Exhibit Copying-1 (showing side-by-side text excerpts

8    from Cisco and Arista user manuals). At his deposition, Dr. Almeroth admitted that he did not

9    use any specialized plagiarism-detection software tools to compare any of the content in Cisco's

10   user manuals with the context in Arista's manuals. *See* Almeroth Dep. Tr. 23:1–23:22 ("As part

11   of an analysis, it could have been a tool I could have used. … But I didn't feel that I needed to use

12   those tools, given the voluminous amount of evidence that exists in this case with respect to the

13   fact that copying did, in fact, take place."); *see also id.* at 22:1–4 ("**Q.** Did you use any of the

14   software tools described here in paragraphs 31 and 32 to compare any work by Arista with any

15   work by Cisco? **A.** No. It wasn't necessary.").

16       Instead of performing a specialized or technical analysis of the parties' user manuals, and

17   instead of using any plagiarism-related software tools, Dr. Almeroth simply read the English

18   sentences and provided his observations regarding what he felt were "nearly identical sentences

19   and structural elements, such as tables and lists." Opening Rpt. ¶¶ 155–167 and Exhibit Copying-

20   1 ("Evidence of Documentation Copying").

21       The Court should not allow Dr. Almeroth to provide lay opinions and usurp the jury's role

22   in determining whether Arista copied Cisco's user documentation. Federal Rule of Evidence

23   702(a) and *Daubert* require the Court to ensure that an "expert's scientific, technical, or other

24   specialized knowledge will help the trier of fact to understand the evidence or to determine a fact

25   in issue." FED. R. EVID. 702(a); *Daubert*, 509 U.S. at 591. Here, Dr. Almeroth's side-by-side lay

26   comparisons of English sentences and paragraphs in Cisco's user documentation and Arista's user

27   documentation, and his opinions regarding which sentences are similar or the same, is not based

28   on any scientific, technical, or other specialized knowledge, and therefore will not help the jury

1080356

understand the evidence or determine whether copying of any user documentation transpired.  Dr. Almeroth's opinion will only usurp the jury's role in reviewing the evidence and making that determination for itself.  For these reasons, the Court should exclude this testimony in Dr. Almeroth's reports.  *See* Opening Rpt. ¶¶ 155–167 and Exhibit Copying-1.

## V.    CONCLUSION

For the foregoing reasons, the Court should exclude and find inadmissible under Federal Rules of Evidence 702, 402, and 403, the following opinions set forth in Dr. Almeroth's Opening and Rebuttal Reports, because those opinions will not assist the trier of fact to understand the evidence or to determine a fact in issue, are not based on sufficient facts or data, are not based on reliable principles and methods, and Dr. Almeroth did not reliably apply any scientific methods to the record evidence:

- Dr. Almeroth's opinions and testimony regarding Arista's purported copying of Cisco's parser source code, including his opinion that Arista's parser exhibits "non-standard" behavior.  Opening Rpt. ¶¶ 81–87, 224; Almeroth Dep. Tr. 276:25–278:10, 279:9–280:11, 280:13–281:12.

- Dr. Almeroth's opinions and testimony regarding Arista's purported copying of Cisco source code relating to CLI command "help descriptions."  Opening Rpt. ¶¶ 100, 221, 225–230 and Exhibit Copying-6; Rebuttal Rpt. ¶ 148(a).

- Dr. Almeroth's opinions and testimony regarding Arista's purported copying of the Cisco CLI's "look and feel."  Opening Rpt. ¶¶ 65, 174; Rebuttal Rpt. ¶¶ 64, 70, 136, 137, 145, 158; Almeroth Dep. Tr. 123:1–5; 124:18–125:5; 125:22–126:18; 127:3–128:10; 129:25–143:18.

- Dr. Almeroth's lay opinions and summations of evidence regarding Arista's state of mind, including opinions regarding the knowledge, specific intent, and beliefs of Arista employees pertaining to indirect infringement, bad faith, and lay opinions and arguments summarizing other non-technical record evidence, which is not proper expert testimony.  Opening Rpt. ¶¶ 70, 73–76, 78–79, 112, 118, 138–40, 145–48, 152–53, 156–57, 195, 203, 219-20, 242, 246 (and footnotes 188–91), 250, 256–57; Rebuttal Rpt. ¶¶ 104, 124, 132, 135, 137, 138–39, 142–43, 146–47, 149–50, 157, 159, 160.

- Dr. Almeroth's opinions and testimony that merely vouch for the credibility and truthfulness of what individuals said in deposition testimony and in documents, which invades the province of the jury. Opening Rpt. ¶¶ 51, 98, 102–10, 115, 136–37, 247, 260; Rebuttal Rpt. ¶¶ 62 (and footnote 30), 73, 75 (and footnote 47), 102 (and footnote 72), 108 (and footnotes 85 and 86), 125.

NOTICE OF MOTION AND MOTION TO STRIKE EXPERT OPINIONS AND TESTIMONY OF
DR. KEVIN C. ALMEROTH
Case No. 5:14-cv-05344-BLF (NC)

1080356

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

- Dr. Almeroth's opinions and testimony that merely involve performing a lay comparison of English words and sentences between Cisco and Arista user documentation.  Opening Rpt. ¶¶ 155–167 and Exhibit Copying-1.

Respectfully submitted,

Dated:  August 5, 2016                    KEKER & VAN NEST LLP


By:    /s/ Robert A. Van Nest
                ROBERT A. VAN NEST


Attorneys for Defendant
ARISTA NETWORKS, INC.

24

1080356