# ATTACHMENT 11

CONFIDENTIAL - OUTSIDE ATTORNEYS' EYES ONLY

```
 1              UNITED STATES DISTRICT COURT
 2            NORTHERN DISTRICT OF CALIFORNIA
 3                   SAN JOSE DIVISION
 4
 5   CISCO SYSTEMS, INC.,        )
                                 )
 6            Plaintiff,         )
                                 ) Case No.
 7        vs.                    ) 5:14-cv-05344-BLF (PSG)
                                 )
 8   ARISTA NETWORKS, INC.,      )
                                 )
 9            Defendant.         )
                                 )
10   _____)
11
12
13     *** CONFIDENTIAL - OUTSIDE ATTORNEYS' EYES ONLY ***
14       VIDEOTAPED DEPOSITION OF JUDITH CHEVALIER, Ph.D.
15              San Francisco, California
16                Tuesday, July 26, 2016
17                      Volume I
18
19
20
21   Reported by:
22   CARLA SOARES
23   CSR No. 5908
24   Job No.  2346938
25   Pages 1 - 233
```

Page 1

Page 26

1 And so I did an assessment of the sale
2 price and units sold of those apps to demonstrate
3 market demand for features somewhat related or
4 comparable in some ways to the features at issue in
5 trial.
6     Q  And were your conclusions using that
7 methodology consistent with the conclusions that you
8 drew using the product review methodology?
9     A  Yes.
10    Q  Did you use any other methodologies in
11 that case?
12    A  Yes. Let me see. Yes.
13       So I did have some data on sales and
14 profitability of products with and without the
15 features, so the features were not practiced in all
16 of the products.
17       So I used some information about products
18 with and without the features to assess the
19 profitability attributable to the features.
20    Q  And were your conclusions using that
21 methodology consistent with your conclusions from
22 the product review methodology?
23    A  To a first approximation, yes.
24    Q  What do you mean when you say "to a first
25 approximation"?

Page 27

1     A  So what I mean by that is, the numbers all
2 delivered -- that the numbers were all -- well, to a
3 first approximation means, at least, but I think
4 more than, they all delivered damages closer to
5 $38.4 million than $2.1 billion, but they all
6 delivered -- they all gave damages within, let's
7 say, a four-cent-per-patent-per-feature to a
8 30-cent-per-patent-per-feature damage estimate.
9     Q  Okay. Did you use other methodologies?
10    A  I did, but let me think for a second.
11 Which ones did I cover?
12       I believe I did, but I'm not sure if I can
13 recollect them all.
14    Q  Okay. The Court in the Apple v. Samsung
15 case concluded that some of your opinions were
16 insufficiently reliable to be presented to the jury;
17 is that correct?
18    A  The -- yes, about the licenses.
19       Sorry. So let me clarify. When you asked
20 about methods, I assume you meant the methods I
21 testified to at trial.
22    Q  Okay.
23       (Exhibit 1568 was marked for
24    identification and is attached hereto.)
25 ///

Page 28

1 BY MR. SILBERT:
2     Q  Dr. Chevalier, Exhibit 1568 is a document
3 titled "Order Granting In Part And Denying In Part
4 Motions To Exclude Certain Expert Opinions."
5       Have you seen this document before?
6     A  I have.
7     Q  And do you understand that this document
8 is an order of the Court in the Apple v. Samsung
9 case that we've been talking about this morning?
10    A  I do.
11    Q  And would you please look at page 7?
12       At the top of that page, the Court wrote,
13 "Fourth, Dr. Chevalier allocates Samsung's average
14 operating profits of the accused smartphones and
15 tablets to various identified smartphone and tablet
16 features using the number of times those features
17 have been mentioned in professional and consumer
18 reviews."
19       Do you see that?
20    A  Um-hum. Yes.
21    Q  And is that an accurate statement, as far
22 as it goes?
23    A  As far as it goes.
24    Q  Could you turn to page 20?
25       Actually, why don't we first look at

Page 29

1 page 18.
2       At the top of this page, the Court wrote,
3 "The Court agrees with Apple that Dr. Chevalier's
4 mass grouping and statistical analysis of these
5 agreements is fundamentally flawed because it treats
6 all the agreements the same regardless of whether
7 any of the licensed technology has any relationship
8 to the patents in suit."
9       Do you see that?
10    A  Yes.
11    Q  Do you disagree with that criticism?
12    A  The criticism that my mass grouping and
13 statistical analysis of these agreements is
14 fundamentally flawed? Yes, I disagree with that.
15    Q  Okay. Could you turn back for -- I'm
16 sorry to jump around. Would you turn back to
17 page 14?
18       I'm looking at the paragraph that takes up
19 about the first half of that page.
20       Starting at line 10, it says,
21 "Dr. Chevalier has failed to appropriately adjust
22 the running royalty found in the HTC agreement to
23 reach a proposed lump-sum royalty in a manner that
24 accounts for the different economic circumstances at
25 play here."

**Page 30**

1   Do you see that?
2   A   Yes.
3   Q   And there's some more sentences, some of
4   which are redacted because this is a publicly filed
5   document.
6        But in the end, the Court concludes that
7   various things that are described "all render her
8   opinions related to the HTC agreement insufficiently
9   reliable to allow Samsung to prevent such testimony
10  at trial."
11       Do you see that?
12  A   Yes.
13  Q   I take it you disagree with that
14  conclusion as well.
15  A   Well, I disagree with the premise that I
16  failed to account for these certain things.  It's up
17  to the judge to decide whether things should be
18  presented at trial.
19  Q   Okay.  If you could go back to page 18
20  now.  We looked at the top of the page, but I want
21  to direct your attention to the sentence that begins
22  at the very end of the page, sort of the second half
23  of line 28, and goes on to page 19.
24       It says, "The Court has concluded that
25  Dr. Chevalier has improperly lumped together" --

**Page 31**

1   blank -- "licenses," -- the number is redacted --
2   "many of which involve" -- blank, again, there's a
3   redaction there that we can't see -- "without any
4   regard to whether the licensed technology relates at
5   all to smartphones and tablets, and more
6   specifically, the ease-of-use technology that Apple
7   would seek to license in the hypothetical
8   negotiation."
9        Then it goes on, "The result is that
10  Dr. Chevalier has unreliably considered many of
11  these licenses in a way that significantly adjusts
12  downward the reasonable royalty without any factual
13  findings that account for the technological
14  differences between those licenses and the patents
15  in suit."
16       And there's a case citation from which
17  some of that sentence is quoted.
18       Do you see that?
19  A   Yes.
20  Q   Do you agree with that criticism?
21  A   No, I don't agree with that criticism.
22  Q   You don't think that's a fair criticism of
23  your opinions in that case?
24  A   I wouldn't say it's unfair.
25       Again, the judge has to make a

**Page 32**

1   determination about what goes into the case.  So
2   "unfair" I think is -- I wouldn't say it's unfair.
3        I would say that my -- I think my
4   treatment of the licenses was economically
5   appropriate.
6   Q   Looking now at page 20, at the bottom of
7   the page, the Court wrote, "Without some attempt to
8   address the technological differences and
9   similarities of the agreements in the record,
10  Dr. Chevalier's use of some of those agreements and
11  disregard of others to calculate her lump-sum amount
12  is unreliable, irrelevant, and unhelpful to the
13  jury's task of evaluating the result of the
14  hypothetical negotiation."
15       Do you see that?
16  A   I do.
17  Q   Do you think that's a fair criticism?
18  A   Again, I think it's the judge's expertise
19  to decide the question about the jury's task.  I
20  believe my treatment of the licenses was
21  economically appropriate.
22  Q   Just to be clear, the methodology that you
23  described earlier that I was referring to as the
24  product review methodology -- do you recall that?
25  A   Yes.

**Page 33**

1   Q   -- your opinions on that methodology were
2   not excluded by the Court, right?
3   A   Correct.
4   Q   Those you presented to the jury?
5   A   Correct.  The ones I described to you were
6   all ones that I presented to the jury.
7   Q   Okay.
8   A   And by the way, by looking at this, I now
9   remembered one of the others.
10  Q   What is it?
11  A   So I also looked at design-around costs.
12  Q   And that was related to patent
13  infringement, correct?
14  A   Correct.
15  Q   I promise you we'll talk about that later.
16  A   Okay.
17  Q   What was the law firm that you worked with
18  in the Apple v. Samsung case?
19  A   Quinn Emanuel.
20  Q   Okay.  You earned a BA in economics in
21  1989?
22  A   Correct.
23  Q   And you earned your Ph.D. in economics in
24  1993?
25  A   Is that a question?

CONFIDENTIAL - OUTSIDE ATTORNEYS' EYES ONLY

1  A  I actually don't know the answer to that.
2  Q  Do you know approximately the answer?
3  A  I actually don't.
4  Q  Do you know if it's more than $500,000?
5  A  My guess is it's more than $500,000, but I
6 haven't actually -- I actually don't know.
7  Q  Do you know if it's more than a million
8 dollars?
9  A  I don't know for a fact. I really don't
10 know.
11  Q  Do you have a belief?
12  A  I really don't know.
13     MR. SILBERT: Okay. I know we just took a
14 break, but if it's okay, can we take a quick break
15 again? And hopefully we can be done very quickly.
16     THE WITNESS: Okay.
17     THE VIDEO OPERATOR: Going off the record,
18 the time is 4:50 p.m.
19     (Recess, 4:50 p.m. - 4:54 p.m.)
20     THE VIDEO OPERATOR: Back on the record.
21 The time is 4:54 p.m.
22     MR. SILBERT: Dr. Chevalier, thank you for
23 your time. I have no further questions for you.
24     I do want to designate this transcript as
25 outside counsel only.

Page 230

1     MS. CANDIDO: I would designate it as
2 outside counsel only for Cisco as well, subject to
3 de-designation.
4     THE VIDEO OPERATOR: This concludes
5 today's videotaped deposition of Dr. Judith
6 Chevalier. We're off the record at 4:55 p.m. Thank
7 you.
8        (TIME NOTED: 4:55 p.m.)
9              --o0o--

Page 231

8     I, JUDITH CHEVALIER, Ph.D., do hereby
9 declare under penalty of perjury that I have read
10 the foregoing transcript; that I have made any
11 corrections as appear noted, in ink, initialed by
12 me, or attached hereto; that my testimony as
13 contained herein, as corrected, is true and correct.
14     EXECUTED this _____ day of _____,
15 2016, at _____, _____.
16        (City)         (State)

19     _____
20        JUDITH CHEVALIER, Ph.D.

Page 232

1     I, the undersigned, a Certified Shorthand
2 Reporter of the State of California, do hereby
3 certify:
       That the foregoing proceedings were taken
4 before me at the time and place herein set forth;
5 that any witnesses in the foregoing proceedings,
6 prior to testifying, were administered an oath; that
7 a record of the proceedings was made by me using
8 machine shorthand which was thereafter transcribed
9 under my direction; that the foregoing transcript is
10 a true record of the testimony given.
11     Further, that if the foregoing pertains to
12 the original transcript of a deposition in a Federal
13 Case, before completion of the proceedings, review
14 of the transcript [x] was [ ] was not requested.
15     I further certify I am neither financially
16 interested in the action nor a relative or employee
17 of any attorney or any party to this action.
       IN WITNESS WHEREOF, I have this date
18 subscribed my name.
19
20 Dated: 07/28/2016

23     *Carla Soares* (signature)
24     CARLA SOARES
25     CSR No. 5908

Page 233

59 (Pages 230 - 233)

Veritext Legal Solutions
866 299-5127