# ATTACHMENT 12

KEKER & VAN NEST LLP
ROBERT A. VAN NEST - # 84065
BRIAN L. FERRALL - # 160847
DAVID SILBERT - # 173128
MICHAEL S. KWUN - #198945
633 Battery Street
San Francisco, CA 94111-1809
Telephone:    (415) 391-5400
Email:  rvannest@kvn.com;
bferrall@kvn.com; dsilbert@kvn.com;
mkwun@kvn.com

SUSAN CREIGHTON, SBN 135528
SCOTT A. SHER, SBN 190053
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
1700 K Street NW, Fifth Floor
Washington, D.C., 20006-3817
Telephone:  (202) 973-8800
Email:  screighton@wsgr.com;
ssher@wsgr.com

JONATHAN M. JACOBSON, NY SBN 1350495
CHUL PAK (*pro hac vice*)
DAVID H. REICHENBERG (*pro hac vice*)
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
1301 Avenue Of The Americas, 40th Floor
New York, NY 10019-6022
Telephone:  (212) 999-5800
Email:  jjacobson@wsgr.com; cpak@wsgr.com;
dreichenberg@wsgr.com

Attorneys for Defendant ARISTA NETWORKS, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| CISCO SYSTEMS, INC.,<br><br>Plaintiff,<br><br>v.<br><br>ARISTA NETWORKS, INC.,<br><br>Defendant. | Case No. 5:14-cv-05344-BLF (NC)<br><br>**ARISTA NETWORKS, INC.'S OPPOSITION TO CISCO SYSTEMS, INC.'S MOTION TO EXCLUDE OPINION TESTIMONY OF WILLIAM M. SEIFERT**<br><br>Date:         September 9, 2016<br>Time:         9:00 a.m.<br>Dept.:        Courtroom 3, 5th Floor<br>Judge:        Hon. Beth Labson Freeman<br><br>Date Filed:  December 5, 2014<br><br>Trial Date:  November 21, 2016 |

1084919

1

**TABLE OF CONTENTS**

2
**Page**

3      I.      INTRODUCTION ...............................................................................................................1

4      II.     ARGUMENT.......................................................................................................................1

5              A.      Mr. Seifert's extensive experience qualifies him to provide an opinion on
                       how *de facto* industry standards arise and their effect............................................1
6

7              B.      Mr. Seifert's *de facto* industry standard opinions more than satisfy the
                       "reliability" test of Rule 702(b). ...........................................................................3

8              C.      Mr. Seifert's *de facto* industry standard opinions rest on his extensive
                       knowledge and experience under Rule 702(c)........................................................4
9

10             D.      Mr. Seifert's *de facto* industry standard opinions are the product of a
                       reliable application of his analysis to the facts under Rule 702(d). ........................7

11             E.      Mr. Seifert's *de facto* industry standard opinions directly bear on contested
                       issues and will aid the trier of fact .........................................................................8
12

13             F.      Mr. Seifert's market effect opinions rest on specialized knowledge,
                       reasonable assumptions, and reliable data under Rules 702(a), (b), and (c)............9

14     III.    CONCLUSION..................................................................................................................10

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ARISTA NETWORKS, INC.'S OPPOSITION TO CISCO SYSTEMS, INC.'S MOTION TO EXCLUDE
OPINION TESTIMONY OF WILLIAM M. SEIFERT
Case No. 5:14-cv-05344-BLF (NC)

1084919

## I.    INTRODUCTION

Cisco's motion to exclude Mr. William M. Seifert's expert opinion on *de facto* industry standards and market effects attempts to block the well-reasoned and relevant testimony of a seasoned businessman and engineer with over thirty years of experience in the networking field.

Cisco first claims Mr. Seifert lacks certain qualifications which—despite being unrelated to the subject of his testimony—he actually possesses.  Cisco next argues his opinions are irrelevant to copyrightability even though they pertain directly to other important defenses such as fair use, and to damages issues.  Cisco conflates his opinions on industry custom and practice with scientific testimony, as if no expert could ever opine about industry custom unless that opinion could be objectively tested and subjected to a known risk of error.  Perhaps most significantly, it accuses Mr. Seifert of "inventing" his opinion that there exists a *de facto* industry standard CLI, even while most of the industry, including Cisco itself, has referred to its CLI as an "industry standard" for years. As to Mr. Seifert's opinion about the market effect of Arista's alleged infringement, Cisco ignores that he properly applies his expertise to explain why Arista's use of CLI elements that are widely used by many other competitors would not have any appreciable effect on Cisco. For all these reasons Cisco's motion should be denied and Mr. Seifert should be permitted to testify fully as to his disclosed opinions.

## II.    ARGUMENT

### A.    Mr. Seifert's extensive experience qualifies him to provide an opinion on how *de facto* industry standards arise and their effect.

With over thirty years of experience in the networking industry, Mr. Seifert is exceedingly qualified to provide an expert opinion both as to whether Cisco's CLI constitutes a *de facto* industry standard and whether Arista's use of the CLI has affected Cisco's market share.  Having worked in the local-area-networking industry "since its inception," Mr. Seifert started his career as the first engineer at the "Ethernet pioneer" Interlan, Inc. in 1981 (years before Cisco was founded), co-founded a former top competitor of Cisco—Wellfleet Communications—in 1986, and more recently held the title of Chief Technology Officer at the networking and communications company Avaya, Inc.  *See* ECF 431, Ex. 5 ("Seifert Rep.") ¶¶ 15, 24.

1

1084919

1    While experts must be qualified by "knowledge, skill, experience, training, or

2    education,"[1] Federal Rule of Evidence 702 "contemplates a broad conception of expert

3    qualifications." *Thomas v. Newton Int'l Enters.*, 42 F.3d 1266, 1269 (9th Cir. 1994). "The

4    threshold for [expert] qualification is low; a minimal foundation of knowledge, skill, and

5    experience suffices." *Mformation Techs. v. Research in Motion, Ltd.*, 2012 WL 1142537, at * 1

6    (N.D. Cal. March 29, 2012) (citing *Thomas*, 42 F.3d at 1269 and *Hangarter v. Provident Life &*

7    *Accident Ins. Co.*, 373 F.3d 998, 1015–16 (9th Cir. 2004)). As the Advisory Committee Notes to

8    Rule 702 indicate, "[i]n certain fields, experience is the predominant, if not sole, basis for a great

9    deal of reliable expert testimony."

10    Mr. Seifert possesses specialized knowledge in industry standards and market effects as a

11    result of his experience and training, which evolved along with the networking industry.

12    *First*, as a businessman, Mr. Seifert is intimately familiar with "assessing customer

13    demands and preferences and analyzing markets and market trends in the networking industry."

14    Seifert Rep. ¶ 15. He specializes in "understanding and translating customer needs into new

15    product requirements," which is particularly reflected in his experience at Interlan, WellFleet, and

16    Avaya. *See id*. ¶¶ 18, 21, 24. While Cisco argues that Mr. Seifert lacks necessary experience in

17    standard-setting organizations ("SSOs") to opine on *de facto* industry standards, ECF 430 at 2, his

18    testimony is not focused on the formal or ratified standards created by SSOs. Regardless, Cisco

19    overlooks the fact that Mr. Seifert has participated in SSOs during the course of his career,

20    including the IEEE and IETF. *See* Seifert Rep. ¶¶ 21, 26, Ex. A; Seifert Dep. Tr. 54:6-12.[2]

21    *Second*, as a trained engineer, Mr. Seifert understands and has used not only Cisco's CLI,

22    but that of other companies as well. *See* Seifert Dep. Tr. 17:21-18:1-2; Seifert Rep. ¶¶ 62-65.

23    Mr. Seifert holds both a bachelor's and master's degree of science in electrical engineering. *See*

24    Seifert Rep., Ex. A. He even led the effort to develop an alternative interface while at Wellfleet.

25    Seifert Rep. ¶¶ 68(ii)-(iii).

26    [1] *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 592 (1993).

27    [2] Declaration of Andrea Nill Sanchez in Support of Arista's Opposition to Cisco's Motion to
Exclude Opinion Testimony of William Seifert ("Nill Sanchez Decl.") Ex. 1 (Excerpts from the
28    Deposition of William M. Seifert) ("Seifert Dep. Tr.").

ARISTA NETWORKS, INC.'S OPPOSITION TO CISCO SYSTEMS, INC.'S MOTION TO EXCLUDE
OPINION TESTIMONY OF WILLIAM M. SEIFERT
Case No. 5:14-cv-05344-BLF (NC)

1084919

1    Cisco's objection to his qualifications is ironic given that Cisco objected to the disclosure

2  of materials designated Cisco-highly confidential to Mr. Seifert, stating "[d]isclosure of Cisco's

3  highly proprietary and commercially sensitive information and source code to an individual who

4  has been engaged in competition with Cisco and seems likely to engage in competition with Cisco

5  in the future is exactly the type of disclosure that the Stipulated Protective Order was put in place

6  to prevent."  *See* Nill Sanchez Decl. Ex. 2. Cisco's claim that Mr. Seifert lacks "any relevant

7  expertise or knowledge about Cisco's copyrighted CLI" under Rule 702(a) is not only

8  inconsistent with its prior position; it is also plainly wrong.  *See* ECF 430 at 1.

9    **B.    Mr. Seifert's *de facto* industry standard opinions more than satisfy the**
   **"reliability" test of Rule 702(b).**

10
11    Mr. Seifert reached his industry standard opinions following a careful analysis of the facts.

12  His three decades of experience in the industry, applied to the overwhelming evidence, led him to

13  conclude that Cisco's CLI constitutes a *de facto* industry standard—an opinion that is widely held

14  throughout the networking community.

15    The reliability inquiry is a flexible one, and "whether *Daubert's* specific factors are, or are

16  not, reasonable measures of reliability in a particular case is a matter that the law grants the trial

17  judge broad latitude to determine."  *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 153 (1999).

18  Courts have "considerable leeway in deciding in a particular case how to go about determining

19  whether particular expert testimony is reliable."  *Id.* at 152.

20    Cisco attacks three peripheral factual bases for Mr. Seifert's report:  (1) Mr. Seifert's

21  "spot-check" of the charts showing third-party usage of Cisco's CLI; (2) his knowledge of the

22  exact origin date of Cisco's CLI; and (3) the fact that he has not used Cisco's CLI over the past

23  three years.  ECF 430 at 3.  As to the first issue, the charts Cisco is referring to were prepared by

24  Dr. John Black, another expert in this case.  *See* Seifert Rep., Exs. C-D.  "[E]xperts can rely upon

25  the opinions of other experts."  *MediaTek inc. v. Freescale Semiconductor, Inc*., No. 11-CV-5341

26  YGR, 2014 WL 971765, at *1 (N.D. Cal. Mar. 5, 2014) (citations omitted); *see also Fujifilm*

27  *Corp. v. Motorola Mobility LLC*, No. 12-CV-03587-WHO, 2015 WL 1737951, at *4 (N.D. Cal.

28  Apr. 8, 2015).  Although Mr. Seifert did not duplicate Dr. Black's efforts by verifying each

ARISTA NETWORKS, INC.'S OPPOSITION TO CISCO SYSTEMS, INC.'S MOTION TO EXCLUDE
OPINION TESTIMONY OF WILLIAM M. SEIFERT
Case No. 5:14-cv-05344-BLF (NC)

1084919

1    shared command, he did take steps to confirm the accuracy of the charts he relied on.  *See* Seifert

2    Dep. Tr. 140:23-141:1; 141:16-17; 142:19-22.

3        With respect to Cisco's claim that Mr. Seifert did not accurately state when Cisco's first

4    products implemented a true CLI until the 1990s, Mr. Seifert reasonably based his observation on

5    an article written by a person widely-acknowledged to have been important in the development of

6    Cisco's IOS CLI, third-party consultant Terry Slattery.  *See* Seifert Rep. ¶ 68 n.38.  In Mr.

7    Slattery's article he notes that the "original Cisco router didn't even have a CLI" and that it was

8    not until "sometime before late 1990" that the CLI "was changed to cause lines to be executed as

9    soon as they were entered instead of after the CTRL-Z was input."  *See id.* (citing

10   ARISTANDCA00265185); *see also* Nill Sanchez Decl., Ex. 3.  At that time, "[t]here was still no

11   command history, interactive help, or command editing capability."  *Id*.  Cisco is free to argue

12   that its CLI predates Mr. Slattery's work, but this factual quibble—irrelevant to Mr. Seifert's

13   opinion and the issues in the case—is no grounds for excluding Mr. Seifert's conclusion that it

14   constitutes a *de facto* industry standard today.

15       Similarly, the fact that Mr. Seifert has not used Cisco's CLI in the past three years, has no

16   bearing on his opinions.  Cisco has identified nothing about Mr. Seifert's opinion that would

17   require his recent first-hand experience with a Cisco switch.  In any event, Mr. Seifert *does* have

18   firsthand knowledge—he has used Cisco IOS, interacted with Cisco's CLI, and took steps to

19   refamiliarize himself with it.  Seifert Dep. Tr. 17:21-18:2, 20:9-17.  And an expert "is permitted

20   wide latitude to offer opinions, including those that are not based on firsthand knowledge."

21   *Daubert*, 509 U.S. at 592.

22       **C.    Mr. Seifert's *de facto* industry standard opinions rest on his extensive
         knowledge and experience under Rule 702(c).**

23       Cisco's attempt to challenge the principles and methods underlying Mr. Seifert's opinions

24   is also misguided.  Although a court may consider factors relevant to reliability such as whether

25   an expert's methodology has been tested, subjected to peer review, or known to have an error

26   rate, this "list of specific factors neither necessarily nor exclusively applies to all experts or in all

27   cases." *See Kumho 526* U.S. at 141.  Courts should not "mechanically apply" them. *United States*

28

---

4

1084919

1    *v. McCaleb*, 552 F.3d 1053, 1060 (9th Cir. 2009).  Instead, whether and to what extent these

2    reliability factors apply depends "on the nature of the issue, the expert's particular expertise, and

3    the subject of his testimony." *Kumho Tire Co*., 526 U.S. at 150 (internal quotation marks

4    omitted).

5         Mr. Seifert defines a *de facto* industry standard as "one that is neither *proprietary* nor *de*

6    *jure*, but one that typically emerges over time owing to its widespread adoption by users."  Seifert

7    Rep. ¶ 37.  Cisco offers no evidence that Mr. Seifert's definition is inaccurate or that an

8    alternative one is embraced by other experts in the field.[3]  He reliably determined that Cisco's

9    CLI constitutes a *de facto* industry standard after examining four primary factors: (1) market size,

10   *see id*. ¶¶ 71, 73, 77; *see also id*. ¶¶ 108-109; (2) number of market participants, *id*. ¶¶ 34, 71; *see*

11   *also id*. ¶¶ 88-92; (3) the scarce human resources available to deploy the relevant equipment, *id*.

12   ¶¶ 71-73; and (4) the complexity of the system involved.  *Id*. ¶¶ 67-68, 71.  Mr. Seifert drew from

13   his business experience in concluding that, as a result of these factors, customers began

14   demanding common command and control features—the absence of which can lead to network

15   failures caused by human error.  *Id*. ¶¶ 9, 71.  Thus, he determined that Cisco's CLI became a *de*

16   *facto* industry standard when network vendors coalesced around Cisco's CLI as a result of its

17   market dominance and the costly training investments customers had made.  *Id.* ¶¶ 11, 71-80.

18        Nevertheless, Cisco argues that Mr. Seifert's opinion is wholly inadmissible because he

19   could not readily identify whether anyone else has used or accepted the *de facto* industry standard

20   definition he applied.[4]  *See* ECF 430 at 3-4.  Cisco also attacks it for being "subjective" and thus

21   "incapable of objective testing."  *Id*. at 4.  Cisco misconstrues the nature of Mr. Seifert's

22   testimony and the applicable test for reliability.

23        In *Hangarter*, 373 F.3d at 1018, the Ninth Circuit upheld the admissibility of an expert's

24   [3] In fact, the IEEE similarly defines *de facto* industry standards as "[s]tandards that have come
into use by general acceptance, custom or convention but have no formal recognition."  *See*

25   Standards Glossary,
https://www.ieee.org/education_careers/education/standards/standards_glossary.htm (last visited

26   August 16, 2016).

27   [4] Notably, in his deposition, Mr. Seifert specifically stated that he did not formulate a "new
definition" for what constitutes a *de facto* industry standard simply for the purposes of preparing

28   his expert report.  Seifert Dep. Tr. 27:12-17.

ARISTA NETWORKS, INC.'S OPPOSITION TO CISCO SYSTEMS, INC.'S MOTION TO EXCLUDE
OPINION TESTIMONY OF WILLIAM M. SEIFERT
Case No. 5:14-cv-05344-BLF (NC)

1084919

1    testimony that the defendants' practices were consistent with insurance industry standards.  In

2    reaching its decision, the Ninth Circuit commented, when it comes to an expert's "non-scientific

3    testimony," "*Daubert* factors (peer review, publication, potential error rate, etc.) simply are not

4    applicable to this kind of testimony, whose reliability depends heavily on the *knowledge and*

5    *experience* of the expert, rather than the methodology or theory behind it."  *Id*. at 1017 (quoting

6    *United States v. Hankey*, 203 F.3d 1160, 1169 (9th Cir. 2000)) (emphasis in original, internal

7    quotation marks omitted).  Although this case deals with technical issues, Mr. Seifert's testimony

8    on *de facto* industry standards is concerned with the networking industry's customs and practices.

9    Like the industry expert in *Hangarter*, his opinions are "unlike scientific or technical testimony"

10   offered by a physician, and are not "contingent upon a particular methodology or technical

11   framework." *Id*. at 1018.  Rather his over thirty years of relevant "experience, training, and

12   education provide[] a sufficient foundation of reliability for his testimony." *Id.*

13          To the extent Mr. Seifert's testimony reflects subjective beliefs and opinions, such

14   testimony is admissible so long as it is "based on an expert's experience in the industry[.]" *GSI*

15   *Tech., Inc. v. Cypress Semiconductor Corp*., No. 5:11-CV-03613-EJD, 2015 WL 364796, at *2

16   (N.D. Cal. Jan. 27, 2015) (citations omitted).  As one court has pointed out, "an expert's

17   manifestly subjective opinion" is still admissible where "the expert is operating within a

18   vocational framework that may have numerous objective components, but the expert's ultimate

19   opining is likely to depend in some measure on experiential factors that transcend precise

20   measurement and quantification."  *United States v. Llera Plaza*, 188 F. Supp. 2d 549, 570-571

21   (E.D. Pa. 2002) (listing cases).  Cisco offers no legal basis for excluding testimony merely

22   because it is based upon a "subjective" evaluation.  And Cisco has further failed to demonstrate

23   that Mr. Seifert's analysis is somehow inconsistent with that employed by other experts in the

24   field.  *See Speaks v. Mazda Motor Corp.*, 118 F. Supp. 3d 1212, 1219 (D. Mont. 2015) ("[A]bsent

25   any evidence that [the expert's] methodology is inconsistent with that employed by other expert's

26   [sic] in the field, or is otherwise based on invalid science, Mazda merely attacks the weight of the

27   proffered testimony.").

28

6

ARISTA NETWORKS, INC.'S OPPOSITION TO CISCO SYSTEMS, INC.'S MOTION TO EXCLUDE
OPINION TESTIMONY OF WILLIAM M. SEIFERT
Case No. 5:14-cv-05344-BLF (NC)

1084919

1

2

**D.      Mr. Seifert's *de facto* industry standard opinions are the product of a reliable application of his analysis to the facts under Rule 702(d).**

3

Cisco's arguments to the effect that Mr. Seifert failed to reliably apply his principles and

4

methods to the facts of the case are both inaccurate and unavailing.

5

*First*, Cisco incorrectly states that Mr. Seifert's *de facto* industry standard opinions should

6

be excluded because he did not identify when Cisco's CLI became a *de facto* industry standard.

7

ECF 430 at 5. Yet, the section in Mr. Seifert's report on Cisco's development and promotion of a

8

*de facto* standard begins by explaining that, by the 1990s, Cisco dominated the router market and

9

customers began demanding that its competitors adopt some of the same command and control

10

features.  Seifert Rep. ¶ 71.  At his deposition, Mr. Seifert further testified that "at some point in

11

the '90s I would say, in my opinion, is when the Cisco generic CLI was in fact adopted by other

12

vendors as a de facto standard."  Seifert Dep. Tr. 61:7-11.  The relevant fact is that Cisco's CLI is

13

currently a *de facto* industry standard and has been for quite some time; and there is no principled

14

reason why Mr. Seifert needs to give a precise starting date for his opinion to be admissible.

15

*Second*, Cisco's criticism of Mr. Seifert's testimony for failing to identify which aspects

16

of its CLI he was assessing also misses the mark.  Mr. Seifert stated—on more than one

17

occasion—that his opinion refers to the aspects of Cisco's CLI that are commonly or widely used.

18

*See* Seifert Dep. Tr. 66:12-16 ("So let me say this one more time.  To the extent that other

19

vendors have implemented similar or potentially identical commands, keyword, actions,

20

responses to Cisco's, I refer to that as an industry standard CLI, yes."); 67:3-7 ("[S]ame answer.

21

I'm going to just say that to the extent other vendors have implemented the same or similar

22

keywords to Cisco's, that, to me, is the definition of an industry standard CLI, yes.").  He also

23

repeatedly testified that a command-by-command comparison was undertaken by another

24

expert—Dr. John Black—and was outside the scope of his report.  *See id*. 68:7-12; 71:13-16.

25

Mr. Seifert's use of terms such as "Cisco CLI" or "industry standard CLI" comports with

26

the generic references to Cisco's CLI found in industry news and publications, including

27

marketing literature produced by other competitors.  *See e.g.* Seifert Rep. ¶ 72 n.42 (citing

28

*Network World* article stating "Cisco's CLI has become a standard in the industry"); ¶ 80 (citing

7

1084919

1    marketing materials produced by Hewlett Packard, Dell, Brocade, and others referring to

2    "industry standard CLI").  Cisco itself has used similar terminology to emphasize its CLI's

3    familiarity and interoperability. *See id*. ¶ 76.  Mr. Seifert's understanding is also consistent with

4    Dr. Black's definition, which refers to the "common, well-known, and widely adopted features

5    and functionality of CLIs supported across multiple vendors' networking devices . . . with which

6    end users . . . have become and are familiar."  ECF 431, Ex. 1, (Black Rep.) ¶ 171.

         **E.    Mr. Seifert's *de facto* industry standard opinions directly bear on contested issues and will aid the trier of fact**

7

8    Mr. Seifert's industry standard opinions are highly relevant to many contested issues,

9    including fair use, estoppel, damages, and injunctive relief.

10    Cisco cites *Oracle v. Google* for the proposition that there is no "industry standard"

11    defense to copyrightability, but that aphorism is irrelevant because Arista does not claim that

12    "industry standard" status defeats the protectability of any copyrighted work.  But Cisco

13    overlooks the law that achieving interoperability with a standard *is* relevant to several fair use

14    factors.  *See Oracle America, Inc. v. Google*, *Inc.*, 750 F.3d. 1339, 1376–77 (Fed. Cir. 2014).

15    Moreover, "fair use is appropriate where a 'reasonable copyright owner' would have consented to

16    the use, i.e., where the 'custom … ' at the time would have defined the use as reasonable."  *Wall

17    Data Inc. v. Los Angeles County Sheriff's Dept.*, 447 F.3d 769, 778 (9th Cir. 2006).  Mr. Seifert's

18    opinion concerning the rise of Cisco's CLI as a *de facto* industry standard is clearly relevant to

19    the fair use analysis.

20    Mr. Seifert's opinion is also relevant to Arista's estoppel defense.  For example, Mr.

21    Seifert's opinion includes the observation that Cisco knew, encouraged, and benefitted from the

22    industry's use of its CLI.  *See* Seifert Rep. ¶¶ 3, 76-78.   That knowledge by Cisco of Arista's

23    support of an "industry standard" CLI is an essential element of the estoppel defense.  *See

24    McIntosh v. N. Cal. Universal Enters. Co.*, 670 F. Supp. 2d 1069, 1101 (E.D. Cal. 2009).  Mr.

25    Seifert's *de facto* industry standard opinion is also relevant to damages and injunctive relief, as

26    Cisco cannot plausibly claim substantial monetary or irreparable harm where aspects of its CLI

27    are, and have been, widely used by the majority of vendors across the industry.  *Id*.  ¶¶ 77, 80.

28

1084919

1  **F.    Mr. Seifert's market effect opinions rest on specialized knowledge, reasonable assumptions, and reliable data under Rules 702(a), (b), and (c).**

2

3     Mr. Seifert's conclusion that Arista's use of accused CLI elements has not likely affected

Cisco's market share rests on objective data and his seasoned expertise.

4

5     Mr. Seifert properly opines that, based on his experience in the industry, "all of the

evidence" indicates that Arista's market share growth has not been due to its use of common CLI

6

7  features, but rather feature and performance superiority.  Seifert Rep. ¶¶ 111-112. That evidence,

which Mr. Seifert carefully reviewed, consists not only of stated customer preferences—it also

8

9  includes the published results of "grueling" performance tests conducted by a trusted technology

publication, *Network World*, and Arista product information and marketing messaging.  *Id*. ¶¶ 93-

10

11  95, 96, 98-99, 100-101, 104.  To further evaluate whether the use of Cisco's CLI caused Cisco

market harm, Mr. Seifert considered the relative chassis/modular data center Ethernet switch port

12

13  market shares of Cisco, Arista, and three competitors in the data center.  *Id*. ¶¶ 106-111.  He

observed that the similarity of a vendor's CLI to Cisco's CLI does not correlate with changes to

14

15  that vendor's market share, which suggests that Cisco suffered no market harm as a result of

Arista's use of common CLI elements.  *Id*.

16

17     Cisco offers no explanation as to why Mr. Seifert's extensive experience is not a sufficient

qualification for his opinion on the topic under Rule 702(a).  His experience setting corporate

18

19  strategy and his track record as a successful entrepreneur qualify him to assess customer demands

and corresponding market share fluctuations in the networking industry. Seifert Rep. ¶ 15, Ex. A.

20

21     Cisco's criticism that Mr. Seifert improperly weighs third-party preferences without

analysis lacks merit. *See* ECF  430 at 7-8. Mr. Seifert does not testify on the intent, motive, or

22

23  state of mind of third parties.  Instead, he properly considers the opinions expressed by third

parties as among the relevant evidence for his analysis.  It is "permissible for experts to quote

24

25  from fact testimony or emails, memos, letters or other documents which are part of the *res gestae*

of the case and then to explicitly assume that they accurately reflect the relevant circumstances

26

27  and then, based thereon, apply their specialized expertise to render opinions beyond the ken of

our lay jury." *Oracle America v. Google, Inc*.,  10–CV–03561–WHA, at ECF 1803.  Indeed, one

28

1084919

1   of Cisco's own experts employed a nearly identical form of analysis in her reports.  *See e.g.* Nill

2   Sanchez Decl. Ex. 4 (Expert Rep. of Judith A. Chevalier, June 24, 2016 ¶¶ 41, 43); Nill Sanchez

3   Decl. Ex. 5 (Rebuttal Expert Rep. on Fair Use of Judith A. Chevalier, June 17, 2016 ¶¶ 90-95)

4   (interpreting evidence from Arista's expert witnesses and internal documents as suggesting the

5   similarity of Arista's CLI to Cisco's was "threshold requirement" explaining alleged lost sales).

6          Cisco's arguments concerning the fact that Mr. Seifert did not personally inspect or use

7   Arista's or Cisco's products for the purposes of preparing his report are also a red herring.  Once

8   again, an expert's opinions need not be based on firsthand knowledge.  *See Daubert*, 509 U.S. at

9   592.  Moreover, Mr. Seifert's opinions are not grounded in an independent assessment of Arista's

10  and Cisco's *actual* product performance but rather the market's reception and reaction to the

11  companies' respective products.

12  **III.    CONCLUSION**

13         For the above reasons, Cisco's Motion to exclude Mr. Seifert's opinions should be denied.

14  Dated:  August 19, 2016                          KEKER & VAN NEST LLP

15                                                   WILSON SONSINI GOODRICH & ROSATI

16

17                                          By:    */s/ Robert A. Van Nest*
                                                   ROBERT A. VAN NEST

18

19                                                 Attorneys for Defendant
20                                                 ARISTA NETWORKS, INC.

21

22

23

24

25

26

27

28

ARISTA NETWORKS, INC.'S OPPOSITION TO CISCO SYSTEMS, INC.'S MOTION TO EXCLUDE
OPINION TESTIMONY OF WILLIAM M. SEIFERT
Case No. 5:14-cv-05344-BLF (NC)

1084919