# ATTACHMENT 13

```
 1                 UNITED STATES DISTRICT COURT

 2                 NORTHER DISTRICT OF CALIFORNIA

 3                      SAN JOSE DIVISION

 4
     CISCO SYSTEMS, INC.,
 5
                Plaintiff,
 6
                vs.                    Civil Action No.
 7                                     5:14-cv-5344-BLF

 8   ARISTA NETWORKS, INC.,

 9              Defendants.
     _____ /
10

11       HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

12              SUBJECT TO PROTECTIVE ORDER

13

14   VIDEO RECORDED DEPOSITION OF EXPERT WILLIAM M. SEIFERT

15                    JUNE 29, 2016

16                     9:51 A.M.

17

18         50 California Street, 21st Floor

19             San Francisco, California

20

21

22   REPORTED BY:

23   Mark W. Banta

24   CSR No. 6034, CRR

25
```

| time | # | |
|---|---|---|
| 10:10:27 | 1 | A. Right. |
| | 2 | Q. Which it sells in conjunction with, for example, |
| | 3 | its routers and switches. |
| | 4 | A. Yes. |
| 10:10:33 | 5 | Q. Okay. You understand that one of those |
| | 6 | operating systems is what Cisco refers to as IOS? |
| | 7 | A. Yes. |
| | 8 | Q. You understand that IOS has a command line |
| | 9 | interface within it? |
| 10:10:42 | 10 | A. Yes. |
| | 11 | Q. Okay. And do you agree that we can refer to |
| | 12 | that command line interface as a CLI? |
| | 13 | A. Yes. |
| | 14 | Q. Okay. Can you describe for me your awareness of |
| 10:10:56 | 15 | any aspect of Cisco's CLI other than what it is alleging |
| | 16 | Arista has copied? |
| | 17 | MS. McCLOSKEY: Objection. Vague. Overbroad. |
| | 18 | THE WITNESS: Again, I'm not sure what you're |
| | 19 | referring to in terms of what does the question mean. |
| 10:11:13 | 20 | BY MR. NEUKOM: |
| | 21 | ==Q. Have you ever used Cisco IOS?== |
| | 22 | ==A. Yes.== |
| | 23 | ==Q. And you've interacted with the CLI for Cisco,== |
| | 24 | ==one or more versions of Cisco's IOS?== |
| 10:11:27 | 25 | ==A. Yes.== |

William M. Seifert - Highly Confidential
June 29, 2016

18

| | | |
|---|---|---|
| 10:11:27 | 1 | Q.    For example, you've input commands? |
| | 2 | A.    Yes. |
| | 3 | Q.    Okay.  You understand that in this lawsuit Cisco |
| | 4 | alleges that Arista copied over 400 multi-word command |
| 10:11:37 | 5 | expressions? |
| | 6 | A.    Yes. |
| | 7 | Q.    You understand that there are more than just |
| | 8 | those 500-plus command expressions that are a part of |
| | 9 | Cisco's CLI? |
| 10:11:46 | 10 | A.    Yes. |
| | 11 | Q.    Okay.  Can you name for me any commands that |
| | 12 | you're aware of in Cisco's CLI that Cisco's not alleging |
| | 13 | Arista copied? |
| | 14 | MS. McCLOSKEY:  Objection.  Vague. |
| 10:12:01 | 15 | THE WITNESS:  Well, I think in fact I wasn't |
| | 16 | really asked to produce that in my report, so, no, I |
| | 17 | don't think I can actually name something that was not |
| | 18 | mentioned in the complaint. |
| | 19 | BY MR. NEUKOM: |
| 10:12:13 | 20 | Q.    Okay.  Did you use Cisco IOS for purposes of |
| | 21 | preparing your report? |
| | 22 | A.    No. |
| | 23 | Q.    When's the last time you've used Cisco -- any |
| | 24 | version of Cisco's IOS? |
| 10:12:28 | 25 | MS. McCLOSKEY:  Objection.  Vague. |

| Time | Line | |
|---|---|---|
| 10:13:41 | 1 | A. In part. What is publicly available, yes. |
| | 2 | Q. Okay. But you haven't actually sat at a |
| | 3 | computer or a terminal and used Cisco's IOS software, for |
| | 4 | example, to configure or manage a network in I take it as |
| 10:14:00 | 5 | least three years' time? |
| | 6 | MS. McCLOSKEY: Objection. Asked and answered. |
| | 7 | THE WITNESS: No, I have not. |
| | 8 | BY MR. NEUKOM: |
| | 9 | Q. Okay. Other than reviewing Cisco's complaint |
| 10:14:11 | 10 | and reviewing a handful of CCIE training materials, what |
| | 11 | steps did you take to familiarize or refamiliarize |
| | 12 | yourself with Cisco's CLI for purposes of this report? |
| | 13 | MS. McCLOSKEY: Objection. Vague. |
| | 14 | THE WITNESS: Well, I, of course, referred to |
| 10:14:31 | 15 | Cisco's -- or accessed Cisco's website, online manuals, |
| | 16 | printed manuals where they existed, some historical, some |
| | 17 | current. |
| | 18 | BY MR. NEUKOM: |
| | 19 | Q. And in the course of reviewing, for example, |
| 10:14:49 | 20 | materials available on Cisco's website, were you able to |
| | 21 | identify any aspects of Cisco's CLI that it has not |
| | 22 | alleged Arista has copied? |
| | 23 | MS. McCLOSKEY: Objection. Asked and answered |
| | 24 | and vague. |
| 10:15:01 | 25 | THE WITNESS: Again, outside the scope of my |

```
10:24:25   1  proposed?
           2         MS. McCLOSKEY:  Objection.  Asked and answered
           3  and vague.
           4         THE WITNESS:  No.
10:24:32   5  BY MR. NEUKOM:
           6     Q.  So for purposes of preparing your expert report
           7  which covers, among other issues, a de facto industry
           8  standard, you formulated anew this understanding of a
           9  de facto industry standard?
10:24:48  10         MS. McCLOSKEY:  Objection.  Mischaracterizes
          11  prior testimony.
          12         THE WITNESS:  I don't agree that it's a new
          13  definition.  This is simply my -- my words based on my
          14  experience, my involvement with three startup companies
10:25:05  15  that were in fact network equipment manufacturers, and
          16  numerous interaction with customers over 30 years of
          17  experience in this industry.
          18  BY MR. NEUKOM:
          19     Q.  Before your involvement in this case, had you
10:25:20  20  ever shared with anyone this understanding of a de facto
          21  industry standard?
          22         MS. McCLOSKEY:  Objection.  Vague.
          23         THE WITNESS:  I -- I can't remember if I did or
          24  not.
          25  //
```

William M. Seifert - Highly Confidential
June 29, 2016

54

| | | |
|---|---|---|
| 11:09:02 | 1 | BY MR. NEUKOM: |
| | 2 | Q. Okay. |
| | 3 | A. So when I say a network device being able to |
| | 4 | communicate to another, one to another, I'm speaking of |
| 11:09:10 | 5 | the end systems communicating one to the other. |
| | 6 | Q. Got it. In paragraph 21 you discussed your |
| | 7 | participation in a working group at the IETF? |
| | 8 | A. Yes. |
| | 9 | Q. And the working group that you participated in |
| 11:09:34 | 10 | was called the "Benchmark Working Group." Do I have that |
| | 11 | right? |
| | 12 | A. Yes. |
| | 13 | Q. Was there -- was it the purpose of that working |
| | 14 | group to propose or explore a common command line |
| 11:09:51 | 15 | interface for the networking industry? |
| | 16 | MS. McCLOSKEY: Objection. Vague. |
| | 17 | THE WITNESS: No. |
| | 18 | BY MR. NEUKOM: |
| | 19 | Q. If you turn to paragraph 33, it's on page 11, if |
| 11:10:34 | 20 | that helps. Are you with me? |
| | 21 | A. Yes. |
| | 22 | Q. Okay. In paragraph 33 you write: |
| | 23 | "An industry standard prescribes a set of |
| | 24 | product characteristics that are widely adopted |
| 11:10:51 | 25 | by either all or a significant portion of a |

William M. Seifert - Highly Confidential
June 29, 2016
61

```
11:18:41    1   BY MR. NEUKOM:
            2       Q.   And when you refer to Cisco's implementation of
            3   a CLI, which implementation or implementations do you
            4   have in mind?
11:18:48    5            MS. McCLOSKEY:  Objection.  Vague.  Ambiguous.
            6   Overbroad.
            7            THE WITNESS:  Again, I can't point to the
            8   version number or even the year, but at some point in the
            9   '90s I would say, in my opinion, is when the Cisco
11:19:06   10   generic CLI was in fact adopted by other vendors as a
           11   de facto standard.
           12   BY MR. NEUKOM:
           13       Q.   When you refer to "the Cisco generic CLI," can
           14   you explain to me what you mean by that?
11:19:25   15            MS. McCLOSKEY:  Objection.  Vague.
           16            THE WITNESS:  Well, just as I said a minute ago,
           17   that the generic CLI meaning their command line interface
           18   as it existed at any given point in time without
           19   referring to a specific version or release number.
11:19:42   20   BY MR. NEUKOM:
           21       Q.   Okay.  So to put it mildly, you have opined that
           22   the 500-plus multi-word command expressions that Cisco is
           23   asserting against Arista for copyright infringement, that
           24   at some point in the past those have become a de facto
11:20:03   25   industry standard?  Do you agree with that statement?
```

11:25:43  1   A.   Yes.

2   Q.   When you wrote "the identified CLI commands,"

3   you're referring to the 500 plus multi-word command

4   expressions that Cisco has asserted against Arista for

11:25:55  5   copyright infringement?

6   A.   Again, not putting a number on it, no.

7   Q.   Have you formed an opinion one way or another

8   about whether the identified CLI commands have become

9   de facto industry standard commands?

11:26:16  10        MS. McCLOSKEY:   Objection.  Asked and answered.

11  Vague.  Overbroad.

12        THE WITNESS:   So let me say this one more time.

13  To the extent that other vendors have implemented similar

14  or potentially identical commands, keyword, actions,

11:26:37  15  responses to Cisco's, I refer to that as an industry

16  standard CLI, yes.

17  BY MR. NEUKOM:

18   Q.   And is it in fact your opinion that the

19  "identified CLI commands" as we sit here today, that they

11:26:54  20  have in fact become de facto industry standard commands?

21        MS. McCLOSKEY:   Objection.  Asked and answered.

22  I'm not sure how many times you're going to ask the same

23  question, but it's been a number of times at this point.

24        MR. NEUKOM:   As many as it takes to get a

11:27:06  25  responsive answer.

11:27:07   1          MS. McCLOSKEY:  I think he's responded numerous
           2    times.  Asked and answered.  Vague.  Ambiguous.
           3          THE WITNESS:  I -- same answer.  I'm going to
           4    just say that to the extent other vendors have
11:27:21   5    implemented the same or similar keywords to Cisco's,
           6    that, to me, is the definition of an industry standard
           7    CLI, yes.
           8    BY MR. NEUKOM:
           9        Q.  So that's the process pursuant to which you
11:27:31  10    would go about forming an opinion about whether any
          11    particular command expression had become a de facto
          12    industry standard command.  Am I hearing you right?
          13        A.  No, I don't think that's the process.
          14        Q.  Have you made a determination for any one of the
11:27:48  15    500-plus command expressions at issue in this case that
          16    they have in fact been adopted by a sufficient number of
          17    other vendors in the marketplace to become a de facto
          18    industry standard?
          19          MS. McCLOSKEY:  Objection.  Asked and answered.
11:28:03  20    Vague.  Ambiguous.
          21          THE WITNESS:  I'm not sure that I understand
          22    that question.  Say that again?  Have I an opinion?
          23    BY MR. NEUKOM:
          24        Q.  Yeah.  Have you formed an opinion?
11:28:14  25          MS. McCLOSKEY:  Same objections.

William M. Seifert - Highly Confidential
June 29, 2016

68

| | | |
|---|---|---|
| 11:28:15 | 1 | THE WITNESS: Yes. |
| | 2 | BY MR. NEUKOM: |
| | 3 | Q.  And for which of the identified CLI commands |
| | 4 | have you formed an opinion that they have become at least |
| 11:28:27 | 5 | by the time we sit here today, that they have become a |
| | 6 | de facto industry standard? |
| | 7 | A.  So, again, for purposes of this report, I wasn't |
| | 8 | asked and nor did I investigate an exact number or count |
| | 9 | how many such command word -- keywords that are on -- |
| 11:28:44 | 10 | that were in dispute were implemented by other vendors. |
| | 11 | I, in fact, believe there's another expert in this case |
| | 12 | who will testify to that, not me. |
| | 13 | Q.  Okay.  So you have not formed or disclosed an |
| | 14 | opinion that any of Cisco's asserted command expressions |
| 11:29:02 | 15 | are, in fact, an industry standard.  Do I have that |
| | 16 | right? |
| | 17 | A.  No. |
| | 18 | MS. McCLOSKEY:  Objection.  Vague.  Ambiguous. |
| | 19 | Asked and answered. |
| 11:29:10 | 20 | BY MR. NEUKOM: |
| | 21 | Q.  Which of Cisco's command expressions that it's |
| | 22 | asserting in this case, for which of those command |
| | 23 | expressions have you formed an opinion that they are, in |
| | 24 | fact, industry standard commands? |
| 11:29:22 | 25 | MS. McCLOSKEY:  Objection.  Asked and answered. |

```
11:31:49    1   Ambiguous.
            2           THE WITNESS:  I have not formed an opinion, no.
            3   BY MR. NEUKOM:
            4       Q.  Okay.  For "the command modes and prompts," that
11:31:58    5   Cisco is asserting against Arista in this case, I take it
            6   you have not yet formed or disclosed an opinion about
            7   which of those modes or prompts that Cisco's asserting
            8   against Arista, which of those modes or prompts are
            9   versus are not industry standard modes and prompts?
11:32:18   10       A.  Again --
           11           MS. McCLOSKEY:  Object to form.  Vague.
           12   Ambiguous.
           13           THE WITNESS:  Again, I was not asked to identify
           14   which ones.  There's another expert who will testify to
11:32:28   15   which ones are the same or similar, so no, this report
           16   does not address that.
           17   BY MR. NEUKOM:
           18       Q.  Okay.  And I take it it's also the case that you
           19   haven't formed an opinion or disclosed an opinion about
11:32:43   20   which command response elements at issue in this case --
           21           MS. McCLOSKEY:  Same --
           22   BY MR. NEUKOM:
           23       Q.  -- do versus do not qualify as industry standard
           24   command response elements?
11:32:52   25           MS. McCLOSKEY:  Same objections.  Object to
```

| | | |
|---|---|---|
| 13:56:26 | 1 | cover sheet that says Exhibit C. |
| | 2 | BY MR. NEUKOM: |
| | 3 | Q.   Okay.  If you could please turn to -- well, this |
| | 4 | does get confusing, doesn't it? |
| 13:57:08 | 5 | Please turn to -- there's a page which has |
| | 6 | nothing on the page except the word "Exhibit D," and the |
| | 7 | next page following that begins a large table which has |
| | 8 | the header Appendix H.BR.  Do you see what I'm referring |
| | 9 | to? |
| 13:57:25 | 10 | A.   Yes. |
| | 11 | Q.   Okay.  And that table that begins on the page |
| | 12 | following -- how do you want to refer to this?  Should we |
| | 13 | call it Exhibit D? |
| | 14 | A.   Sure.  That's fine. |
| 13:57:38 | 15 | Q.   Okay.  Did you prepare the table that's here in |
| | 16 | Exhibit D? |
| | 17 | A.   No, I did not. |
| | 18 | Q.   This exhibit was provided to you by counsel? |
| | 19 | A.   Yes. |
| 13:57:51 | 20 | Q.   Did you undertake any steps to confirm the |
| | 21 | accuracy of the contents of Exhibit D? |
| | 22 | MS. McCLOSKEY:  Objection.  Vague. |
| | 23 | THE WITNESS:  Well, as I recall, I did look at |
| | 24 | Brocade's website and their user guide that's -- or |
| 13:58:10 | 25 | information available there to sort of spot-check a |

```
13:58:13   1   couple of commands, yes.  That's it.
           2   BY MR. NEUKOM:
           3       Q.  Can you tell me for which of these commands you
           4   spot-checked?
13:58:20   5           MS. McCLOSKEY:  Objection.
           6   BY MR. NEUKOM:
           7       Q.  For accuracy?
           8           MS. McCLOSKEY:  Objection.  Vague.
           9           THE WITNESS:  No, I can't really tell you which
13:58:24  10   ones.  I just remember doing a few, not exhaustively.
          11   BY MR. NEUKOM:
          12       Q.  Okay.  Three?  Five?
          13           MS. McCLOSKEY:  Objection.  The witness has
          14   already testified that he doesn't remember.  He remembers
13:58:33  15   doing a few.
          16           THE WITNESS:  You know, a handful.  That's all I
          17   can characterize it as.
          18   BY MR. NEUKOM:
          19       Q.  For the rest of them, for the contents of
13:58:43  20   Exhibit D, you trusted counsel to have collected and
          21   represented this information accurately?
          22           MS. McCLOSKEY:  Objection.  Vague.
          23           THE WITNESS:  Yes, I did.
          24   BY MR. NEUKOM:
13:58:58  25       Q.  Exhibit E.  And again, this is a little
```

```
13:59:01   1    confusing because it looks like the first substantive

           2    page of Exhibit E has the header Appendix H.DE, but I'm

           3    willing to call it Exhibit E if you are.

           4         A.   Sure.

13:59:14   5         Q.   Okay.

           6         A.   Fine.

           7         Q.   You didn't prepare Exhibit E?

           8              MS. McCLOSKEY:  Objection.

           9              THE WITNESS:  No.

13:59:20  10              MS. McCLOSKEY:  Vague.

          11    BY MR. NEUKOM:

          12         Q.   Exhibit E was prepared -- was provided to you by

          13    Arista's counsel in this case?

          14         A.   Yes.

13:59:30  15         Q.   Did you review any materials to confirm or to

          16    verify the accuracy of what's represented here in Exhibit

          17    E?

          18              MS. McCLOSKEY:  Objection.  Vague.

          19              THE WITNESS:  I did view a Dell-supplied
13:59:47  20    You Tube video which has a side-by-side comparison of a
          21    number of configuration commands, so again, to the extent
          22    that that validates, I don't know, some number.

          23    BY MR. NEUKOM:

          24         Q.   Sure.

13:59:57  25         A.   10 or fewer perhaps.
```

STATE OF CALIFORNIA

COUNTY OF SAN FRANCISCO


      I, MARK W. BANTA, a Certified Shorthand Reporter, do hereby certify:

      That prior to being examined, the witness in the foregoing proceedings was by me duly affirmed to testify to the truth, the whole truth, and nothing but the truth;

      That said proceedings were taken before me at the time and place therein set forth and were taken down by me in shorthand and thereafter transcribed into typewriting under my direction and supervision;

      I further certify that I am neither counsel for, nor related to, any party to said proceedings, nor in any way interested in the outcome thereof.

      In witness whereof, I have hereunto subscribed my name.

Dated: July 1, 2016


*[signature: Mark W. Banta]*
_____

MARK W. BANTA

CSR 6034, CRR