# EXHIBIT M

Kathleen Sullivan (SBN 242261)
kathleensullivan@quinnemanuel.com
QUINN EMANUEL URQUHART &
SULLIVAN LLP
51 Madison Avenue, 22nd Floor
New York, NY 10010
Telephone: (212) 849-7000
Facsimile: (212) 849-7100

Sean S. Pak (SBN 219032)
seanpak@quinnemanuel.com
Amy H. Candido (SBN 237829)
amycandido@quinnemanuel.com
John M. Neukom (SBN 275887)
johnneukom@quinnemanuel.com.
QUINN EMANUEL URQUHART &
SULLIVAN LLP
50 California Street, 22nd Floor
San Francisco, CA 94111
Telephone: (415) 875-6600
Facsimile: (415) 875-6700

Steven Cherny *(admitted pro hac vice)*
steven.cherny@kirkland.com
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900

Adam R. Alper (SBN 196834)
adam.alper@kirkland.com
KIRKLAND & ELLIS LLP
555 California Street
San Francisco, California 94104
Telephone: (415) 439-1400
Facsimile: (415) 439-1500

Michael W. De Vries (SBN 211001)
michael.devries@kirkland.com
KIRKLAND & ELLIS LLP
333 South Hope Street
Los Angeles, California 90071
Telephone: (213) 680-8400
Facsimile: (213) 680-8500

*Attorneys for Plaintiff Cisco Systems, Inc.*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

| | |
|---|---|
| CISCO SYSTEMS, INC.,<br><br>Plaintiff,<br><br>vs.<br><br>ARISTA NETWORKS, INC.,<br><br>Defendant. | CASE NO. 5:14-cv-5344-BLF<br><br>**CISCO SYSTEMS, INC.'S MOTION TO EXCLUDE OPINION TESTIMONY OF WILLIAM M. SEIFERT**<br><br>**<u>UNREDACTED VERSION</u>**<br><br>Date: September 9, 2016<br>Time: 9:00 a.m.<br>Dep't: Courtroom 3, 5th Floor<br>Judge: Hon. Beth Labson Freeman<br><br>Date Filed: December 5, 2014<br><br>Trial Date: November 21, 2016 |

# TABLE OF CONTENTS

**Page**

MEMORANDUM OF POINTS AND AUTHORITIES ................................................................1

I. INTRODUCTION ...............................................................................................................1

II. LEGAL STANDARD .........................................................................................................1

III. ARGUMENT ......................................................................................................................2

    A. The Court Should Exclude Mr. Seifert's "Industry Standard" Opinions ..................2

        1. Mr. Seifert Is Unqualified To Opine On "De Facto Industry Standards" Under Fed. R. Evid. 702(a) ..............................................................2

        2. Mr. Seifert's "Industry Standard" Opinions Are Unreliable Under Fed. R. Evid. 702(b) ...................................................................................3

        3. Mr. Seifert's "Industry Standard" Opinions Are Unreliable Under Fed. R. Evid. 702(c) ...................................................................................3

        4. Mr. Seifert's "Industry Standard" Opinions Lack Reliable Application Under Fed. R. Evid. 702(d) ..........................................................5

        5. Mr. Seifert's "Industry Standard" Opinions Are Irrelevant ...........................6

    B. The Court Should Exclude Mr. Seifert's "Market Effect" Opinions .........................7

        1. Mr. Seifert "Market Effect" Opinions Do Not Rest On Any Specialized Expertise As Required By Fed. R. Evid. 702(a) .........................7

        2. Mr. Seifert's "Market Effect" Opinions Are Unreliable Under Rules 702(b) and (c) .................................................................................................8

IV. CONCLUSION ...................................................................................................................9

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*,
   43 F.3d 1311 (9th Cir. 1995) ................................................................................................. 2, 4, 6

*Daubert v. Merrell Dow Pharms., Inc.*,
   509 U.S. 579 (1993) ..................................................................................................................... 1, 2

*Feduniak v. Old Republic Nat'l Title Co.*,
   No. 13-cv-02060-BLF, 2015 WL 1969369 (N.D. Cal. May 1, 2015) ........................................ 2, 4

*Finjan, Inc. v. Blue Coat Systems, Inc.*,
   No. 13-cv-03999, 2015 WL 4272870 (N.D. Cal. Jul. 14, 2015) .................................................... 7

**Statutes**

Fed. R. Evid. 702 ................................................................................................................................ 2

Fed. R. Evid. 702(a) ....................................................................................................................... 2, 6

Fed. R. Evid. 702(b) ....................................................................................................................... 6, 8

Fed. R. Evid. 702(c) ....................................................................................................................... 2, 4

PLEASE TAKE NOTICE, that on September 9, 2016, at 9:00 a.m., before the Hon. Beth Labson Freeman in the U.S. District Court for the Northern District of California, Plaintiff Cisco Systems, Inc. ("Cisco"), will, and hereby does, respectfully move the Court under Fed. R. Evid. 401, 403, 702, and *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993), to exclude all testimony from Defendant Arista Networks, Inc.'s proposed witness William M. Seifert. This Motion is based on this Notice of Motion and Motion, the Memorandum of Points and Authorities below, the Declaration of Andrew M. Holmes filed herewith, and such other papers, evidence and argument as may be submitted to the Court.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.  INTRODUCTION

Arista's expert Mr. Seifert should not be permitted to opine that "Cisco's CLI" is a "de facto industry standard." A self-described "engineer/ entrepreneur," Mr. Seifert lacks any relevant expertise in or scholarship concerning standard-setting practices. He invented his own four-part test for a "de facto industry standard" for this lawsuit, and admits that his test is subjective and has never been adopted elsewhere. Nor does he have any relevant expertise or knowledge about Cisco's copyrighted CLI. His opinions purport to apply his novel and subjective test to Cisco's CLI in so-called "generic" form rather than to any particular version of Cisco's user interface, let alone to the multi-word command expressions (or command hierarchies, or modes and prompts) at issue), and he has no opinions relevant to the help descriptions. Thus, his opinions lack any value or usefulness for the Court or jury in deciding the issues in this case.

Moreover, Mr. Seifert should not be permitted to opine that Cisco has suffered no harm from Arista's infringing conduct, Mr. Seifert simply summarizes third-party materials (including blog posts) that he does not purport to have verified or analyzed.

Thus, Mr. Seifert's testimony should be excluded in its entirety.

### II.  LEGAL STANDARD

Under Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993), this Court serves as a "gatekeeper" for expert opinion testimony. Under Rule 702, a

proposed expert may present opinion testimony to the jury only if:

(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
(b) the testimony is based on sufficient facts or data;
(c) the testimony is the product of reliable principles and methods; and
(d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. As clarified in *Daubert*, the Court may consider whether the expert's theory or technique (1) may be objectively tested; (2) has been subject to peer review and publication; (3) has a known rate of error; and (4) has been generally accepted. *See* 509 U.S. at 592-94. Other factors include whether the proposed experts are "proposing to testify about matters growing naturally and directly out of research they have conducted independent of the litigation, or whether they have developed their opinions expressly for purposes of testifying." *Daubert v. Merrell Dow Pharm., Inc.*, 43 F.3d 1311, 1317 (9th Cir. 1995); *see also Feduniak v. Old Republic Nat'l Title Co.*, No. 13-cv-02060-BLF, 2015 WL 1969369, *1-2 (N.D. Cal. May 1, 2015) (discussing the legal standards for *Daubert* motions).

## III.   ARGUMENT

### A.   The Court Should Exclude Mr. Seifert's "Industry Standard" Opinions

#### 1.   Mr. Seifert Is Unqualified To Opine On "De Facto Industry Standards" Under Fed. R. Evid. 702(a)

Mr. Seifert opines that a "de facto industry standard" is "one[] that emerge[s] over time as a result of widespread adoption throughout a given industry" or "one that typically emerges over time owing to its widespread adoption by users," but Mr. Seifert lacks any qualifications to do so. Ex. 5, Opening Expert Report of William M. Seifert ("Seifert Rep.") at ¶¶6, 38 ).[1] Mr. Seifert's CV discloses no experience with any industry standard-setting organization and no research or publications on the topic of industry standards, whether *de jure* or *de facto*. Ex . 5, Seifert Rep. at Ex. A. He thus lacks any specialized knowledge that could assist the jury on these questions as required by Rule 702(a).

---

[1] Unless otherwise noted, references to "Ex." herein refer to exhibits to the Declaration of Andrew M. Holmes filed concurrently herewith.

### 2. Mr. Seifert's "Industry Standard" Opinions Are Unreliable Under Fed. R. Evid. 702(b)

Mr. Seifert's "de facto industry standard" opinions should also be excluded because they are not based on sufficient facts or data as required by Rule 702(b).  He relied on (and incorporated into his report) a series of charts purporting to show third-party usage (or wide adoption) of hundreds of elements of Cisco's CLI—to support his "de facto industry standard" opinions—without having prepared those charts, and without having done anything except to "spot check" them after Arista counsel provided them.  Ex. 6, 6/29/2016 Deposition Transcript of William M. Seifert ("Seifert Depo.") at 137:14-143:10.  Moreover, he showed unfamiliarity with the relevant history; while it is undisputed that Cisco's copyrighted CLI features have been originated and released publicly since the 1980s, Mr. Seifert was unaware that Cisco had released any CLI before the 1990s.  *See id*. at 38:16-43:3.  Mr. Seifert also admitted he has not used any version of Cisco's CLI for over three years, and he could not identify which version he had used.  *Id.* at 74:14-75:8.

### 3. Mr. Seifert's "Industry Standard" Opinions Are Unreliable Under Fed. R. Evid. 702(c)

Mr. Seifert's "industry standard" opinions also should be excluded because they do not rest on reliable principles and methods as required by Rule 702(c).  In particular, they are not subject to objective testing; have not been subjected to peer review; have no known or potential error rate or standards and controls; and have not been generally accepted.  *Daubert*, 509 U.S. at 593–94.

*First*, Mr. Seifert's has failed to identify anyone else who has ever used or accepted the definition of a "de facto industry standard" that he created and proposed in his report.  To the contrary, Mr. Seifert was unable at his deposition to identify a single instance in which anyone else had used or applied the definition set forth in his report.  *See* Ex. 6, Seifert Depo. at 81:10-82:12 ("Q. Are you aware of anyone else in the computer or the networking industry that has ever used or understood a *de facto* standard in he way you've explained [it] in your report? A. Again, I don't recall a specific source…").  Nor could he explain how "widespread" a technology must be before becoming a "de facto industry standard," *id.* at 55:14-56:13, or how a supposed "de facto industry standard" differs from a technology that simply is popular, *id.* at 136:12-18 ("That

1  distinction by itself is hard to make."). While Mr. Seifert at his deposition offered his own four-
2  part test for a "*de facto* industry standard," *see id.* at 25:7-26:15, he again failed to identify anyone
3  who had ever adopted that test, *see id.* at 26:17-21 ("Q. Other than your expert report, can you
4  identify for me anyone else who has ever adopted this definition of a de facto industry standard?
5  A. No."); *id.* at 26:23-27:4 ("Q. Can you identify for me anyone else or any other document other
6  than your expert report in which this definition of a de facto industry standard has been proposed?
7  A. No."); *id.* at 27:19-24 ("Q. Before your involvement in this case, had you ever shared with
8  anyone this understanding of a de facto industry standard? A. I—I can't remember if I did or
9  not.").

*Second*, Mr. Seifert's "de facto industry standard" testimony is admittedly subjective and thus incapable of objective testing. As to each of the "roughly four characteristics" of such a standard as he defines it, *id.* at 25:21-26:15, he admitted that the inquiry under each factor is "subjective" and depends on one's "business judgment" or the "eye of the beholder":

- For the first Seifert factor (large market size): *Id.* at 28:2-18 ("it requires a simple subjective test, business judgment, to make that determination"); *see also id.* at 32:22-33:6.

- For the second Seifert factor (sufficient number of market participants): *Id.* at 28:20-29:6 ("this is largely subjective thresholds in terms of market participants"); *see also id.* at 33:7-16 ("Q. Likewise, when I asked you to explain the second element… A. I believe I said that it was subjective in terms of making a business judgment.").

- For the third Seifert factor (scarce human resources to implement technology): *Id.* at 29:8-35:9 (explanation that meeting this factor is "sort of [a] business judgment in terms of opportunity, opportunity costs, all the elements that go into making a determination").

- For the fourth Seifert factor (sufficiently complex system): *Id.* at 35:11-37:20 ("oftentimes in the eye of the beholder…"; "humans are always going to have some subjective element to their—to their determination.").

*Third*, Mr. Seifert invented his definition and four-part test for this case, and thus they cannot be independently tested or subject to a known risk of error. *See Kumho Tire Co, Ltd.. v. Carmichael*, 119 S.Ct. 1167, 1176 (1999) (*Daubert* requires courts to assure that an expert "employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field"); *Feduniak*, 2015 WL 1969369, at *4 (considering "the 'very

significant fact' that [the expert's] methodology was developed for th[e] litigation"); *id.* at *3 (excluding opinion testimony where a novel appraisal technique could not be tested objectively, had not been subject to peer review, had no known error rate because never previously applied, and lacked any showing that it had been "generally accepted as an appropriate method").

### 4. Mr. Seifert's "Industry Standard" Opinions Lack Reliable Application Under Fed. R. Evid. 702(d)

Mr. Seifert's "industry standard" opinions should be excluded for the additional reason that he fails to apply his principles and methods reliably to the facts of the case as required by Rule 702(d). For example, Mr. Seifert opines that "Cisco's CLI" has become a "de facto industry standard," and yet was unable to say at his deposition ***when*** that supposedly happened. *See* Ex. 6, Seifert Depo. at 44:20-46:19 ("Q. When did Cisco's market share grow to a point such that it's your opinion that its CLI was widely accepted as industry standard? A. I can't say, again, the exact year."; "Q. But you have not disclosed any opinion testimony or any testimony of any sort pursuant to which you purport to tell us when this happened. Do I have that right? A. Again, I don't believe that was part of the objective of my report, no.").

Mr. Seifert likewise was unable to say whether any specific aspects of Cisco's CLI satisfy his four-part test, relying instead on a supposed "generic" concept of CLI. *See id.* at 64:24-71:16 (declining to specify particular aspects of Cisco's CLI met his standards for "de facto industry standard"); *id.* at 69:17-22 ("Q. Can you explain for me which command expressions you have versus have not formed an opinion that they have become de facto industry standard commands? A. Again, off the top of my head, no."); *id.* at 70:17-20 ("Q. You do not in your report identify anywhere which of the 'identified CLI commands' are or are not industry standard in your opinion. Do I have that right? A. Yes."); *id.* at 70:21-71:2 (for "asserted hierarchies": "I have not formed an opinion, no."); *id.* at 71:4-16 (for "commands modes and prompts": "I was not asked to identify which ones…"); *see also id.* at 106:13-23 (Q. "If I ask you to explain to me which portions of Cisco's CLI offerings are versus are not de facto industry standards…" A. "… that was not in the scope of my report"); *id.* at 76:20-77:16 ("Q. But if I ask you to tell me which aspects of Cisco's CLI are versus are not an industry standard, I take it you have not formed an opinion about

that? A. The specifics of those command expressions, no. Again, generically, yes. Q. And when you refer to Cisco's CLI generically, you don't have any particular IOS version number in mind? A. Not that I can recall, no. Q. You don't have any particular command expressions in mind? A. No."); *id.* at 93:15-94:1. Indeed, Mr. Seifert admitted that he was unaware that the "Cisco CLI" at issue in this case derives from different Cisco computer programs (namely, different versions of Cisco IOS, Cisco IOS XR, Cisco IOS XE, and Cisco NX-OS) with varying CLIs. *See id.* at 94:11-20 ("Q. Are you also aware of the Cisco operating system referred to as IOS XR? A. No, I'm not familiar with IOS XR. Q. Are you familiar with the operating [system] IOS XE? A. No."); *see also id.* at 97:10-98:5 (testifying that he had no opinions about whether any aspects of Cisco's IOS, IOS XR, IOS XE and/or NX-OS—the four operating system families on which this case is based—had become "de facto industry standards").

While Mr. Seifert attempted to excuse these fatal failings by explaining that his opinion was directed to Cisco's CLI in "generic" or "general" form, he failed to specify what characterizes such a technology and could not explain which aspects of Cisco's CLI in general supposedly comprise a "*de facto* industry standard." *See id.* at 61:13-19 ("Q. When you refer to 'the Cisco generic CLI,' can you explain to me what you mean by that? A. Well… that the generic CLI meaning their command line interface as it existed at any given point in time without referring to a specific version or release number."); *id.* at 72:13-18 ("Q. When you say 'the Cisco CLI as an industry standard,' which Cisco CLI are you referring to? A. Again, the—using the generic sense of a command line interface at virtually any point in time."); *id.* at 76:20-77:16 ("Q. And you have formed an opinion that Cisco's CLI has become a de facto industry standard interface in the network industry. Do I have that right? A. Generically, Cisco's CLI over time has become a de facto industry standard, yes…. Q. And when you refer to Cisco's CLI generically, you don't have any particular IOS version number in mind? A. Not that I can recall, no.").

### 5. Mr. Seifert's "Industry Standard" Opinions Are Irrelevant

Rule 702 "assign[s] to the trial judge the task of ensuring that an expert's testimony both rests on a reliable foundation and ***is relevant to the task at hand***." *Daubert*, 509 U.S. at 591.

"Fed. R. of Evid. 403 gives the court discretion to exclude relevant evidence 'if its probative value is substantially outweighed by a danger of… unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.'" *Id.* Here, Mr. Seifert's opinions relating to the existence of a "*de facto* industry standard" CLI are not relevant to any claim or defense and if permitted would certainly confuse the jury to Cisco's detriment. Fed. R. Evid. 401, 403. There is no "industry standard" defense to copyrightability. As the court explained in *Oracle Am., Inc. v. Google Inc.*, 750 F.3d 1339 (Fed. Cir. 2014), there is no authority for the proposition that "that copyrighted works lose protection when they become popular." *Id.* at 1372. To the contrary, the *Oracle* court noted, "the Ninth Circuit has rejected the argument that a work that later becomes the industry standard is uncopyrightable." *Id.* (citing *Practice Mgmt. Info. Corp. v. Am. Med. Ass'n*, 121 F.3d 516, 520 n.8 (9th Cir. 1997)). Mr. Seifert's *de facto* industry standard opinions thus are of no consequence to determining any issue in this case and would only confuse the jury and prejudice Cisco. *Daubert*, 509 U.S. at 591 (expert testimony that does not "relate to any issue in the case is not relevant").

### B. The Court Should Exclude Mr. Seifert's "Market Effect" Opinions

Under Rule 702 and *Daubert*, Mr. Seifert's expert testimony should also be excluded insofar as he opines that Cisco has not been harmed by Arista's infringing conduct because Arista supposedly sells switches and routers for reasons other than its copying of Cisco's CLI. *See* Ex. 5, Seifert Rep. at ¶¶ 86-113. Mr. Seifert offers no specialized expertise that could possibly support this opinion, which is based mostly on third-party sources he has not verified.

#### 1. Mr. Seifert "Market Effect" Opinions Do Not Rest On Any Specialized Expertise As Required By Fed. R. Evid. 702(a)

Rule 702(a) requires the application of specialized expertise, but Mr. Seifert simply summarizes (without analysis) market-related materials prepared by others. For example, he cites Arista documents and Arista employee deposition testimony to purportedly opine on the expectations of unspecified "customers." *Id.* at ¶ 104*; see id.* at ¶ 103 ("the available evidence suggests that Arista's main customers all have chosen Arista because of product features other

than the CLI").[2]  None of those third-party materials, however, needs any "expert opinion" to be explained to the jury, nor does Mr. Seifert purport to analyze them based on any specialized expertise.  To the contrary, he states that he "offer[s] no opinion as to whether any of Arista's switches are superior to the most closely related Cisco switches."  *Id.* at ¶ 103.  An expert may not purport to speak for third parties or weigh for the jury factual evidence. *See Finjan, Inc. v. Blue Coat Sys, Inc.*, No. 13-cv-03999, 2015 WL 4272870, *3 (N.D. Cal. Jul. 14, 2015) ("what Defendant thought about Plaintiff's patents is not the proper subject of expert testimony, nor are Drs. Cole and Medvidovic qualified to offer opinions regarding Defendant's subjective beliefs").

Nor may an expert offer a factual conclusion about third-party choices or preferences.  *See id.* (expert testimony inadmissible as to third-party beliefs).  Mr. Seifert thus should not be permitted to testify (*see* Ex. 5, Seifert Rep.¶ 113) that "market share data, combined with other available evidence regarding Arista's marketing and sales, suggests that it is highly unlikely that Arista's industry-standard command line interface resembling that of Cisco's has caused any harm…." That conclusion is based solely on his summaries—without analysis—of information from third parties.  *Id.* at ¶ 106 (summarizing and citing two *Network World* articles, a Crehan Quarterly Market Shares report, and Arista documentation); 108 (presenting market share data from Crehan and citing *Network World*); ¶ 109 (summarizing a Nasdaq.com article about Arista's IPO); ¶ 110 (summarizing Crehan market share data).

### 2. Mr. Seifert's "Market Effect" Opinions Are Unreliable Under Rules 702(b) and (c)

Mr. Seifert lacks any reliable factual or technical basis to opine that Arista's growing market share in switches or routers results from factors other than Arista's copying of Cisco's CLI, as would be required for admissibility under Rules 702(b) and (c).  For example, Mr.

---

[2]  In the section of his report entitled "The evolving market for Ethernet Switching," for example, he summarizes a market report from MediaBuyerPlanner.com. Ex. 5, Seifert Rep. at ¶ 88. He then summarizes a report from the Dell'Oro Group.  *Id.* at ¶ 90.  He summarizes an Ethernet Alliance presentation.  *Id.* at ¶91.  He quotes a long passage from a Facebook web page. *Id.* at ¶ 92.  He then summarizes a handful of articles from the publications *Network World* and *Computer World*. *Id.* at ¶¶ 93-95.  He then summarizes a series of Arista marketing presentations and promotional materials, and deposition testimony from an Arista executive. *Id.* at ¶¶ 96-102.

Seifert's list of materials relied upon shows that he did not inspect any Arista or Cisco router or switch, nor even use any Arista software to be able to opine on its technical merits. *See id.*, Ex. 5, Seifert Rep. at Exhibit B. Mr. Seifert opines (*id.* at ¶ 112) that "the root of Arista's sales growth is likely its **product hardware** and **software architecture**," based not on his expertise or his own technical analysis but rather based on the personal blog of an individual named Brad Reese. Ex. 5, Seifert Rep. ¶ 112 n.121 (citing http://www.bradreese.com/blog/3-18-2015.htm).[3] For further example, Mr. Seifert purports to address market harm for "Cisco's products incorporating IOS, NX OS or IOS XR" (*id.* at ¶113), but he admitted, "I'm not familiar with IOS XR," Ex. 6, Seifert Depo. at 94:11-15, and was only "vaguely" familiar with NX-OS, *id.* at 94:22-95:1.

For all these reasons, Mr. Seifert's "market effect" testimony should be excluded.

## IV.     CONCLUSION

For all the foregoing reasons, Cisco's Motion to Exclude the Opinion Testimony of William M. Seifert in its entirety should be GRANTED.

---

[3] Mr. Reese describes himself as the grandson of the inventor of Reese's Peanut Butter Cups who is on a "mission" to "make REESE'S the #1 global candy brand." *See* http://www.bradreese.com/about-brad-reese.htm. Mr. Reese's blog makes irrelevant attacks on Cisco but shows no reliable basis on which to form admissible expert opinion testimony about the technical merits of Cisco versus Arista products. *See, e.g.,* http://www.bradreese.com/blog/archive.htm (showing a history of blog postings about Cisco and a "sex slaver," Cisco "certification cheats," and the stock sales of Cisco employee family members).

Case 5:14-cv-05344-BLF   Document 549-13   Filed 09/26/16   Page 14 of 14

| | |
|---|---|
| Dated:  August 5, 2016 | Respectfully submitted, |
| | */s/* John M. Neukom _____ |
| | Kathleen Sullivan (SBN 242261)<br>kathleensullivan@quinnemanuel.com<br>QUINN EMANUEL URQUHART & SULLIVAN LLP<br>51 Madison Avenue, 22nd Floor<br>New York, NY 10010<br>Telephone: (212) 849-7000<br>Facsimile: (212) 849-7100 |
| | Sean S. Pak (SBN 219032)<br>seanpak@quinnemanuel.com<br>Amy H. Candido (SBN 237829)<br>amycandido@quinnemanuel.com<br>John M. Neukom (SBN 275887)<br>johnneukom@quinnemanuel.com.<br>QUINN EMANUEL URQUHART & SULLIVAN LLP<br>50 California Street, 22nd Floor<br>San Francisco, CA 94111<br>Telephone: (415) 875-6600<br>Facsimile: (415) 875-6700 |
| | Steven Cherny *admitted pro hac vice)*<br>steven.cherny@kirkland.com<br>KIRKLAND & ELLIS LLP<br>601 Lexington Avenue<br>New York, New York 10022<br>Telephone: (212) 446-4800<br>Facsimile: (212) 446-4900 |
| | Adam R. Alper (SBN 196834)<br>adam.alper@kirkland.com<br>KIRKLAND & ELLIS LLP<br>555 California Street<br>San Francisco, California  94104<br>Telephone: (415) 439-1400<br>Facsimile: (415) 439-1500 |
| | Michael W. De Vries (SBN 211001)<br>michael.devries@kirkland.com<br>KIRKLAND & ELLIS LLP<br>333 South Hope Street<br>Los Angeles, California 90071<br>Telephone: (213) 680-8400<br>Facsimile: (213) 680-8500 |
| | *Attorneys for Plaintiff Cisco Systems, Inc.* |