# EXHIBIT Z

# EXHIBIT 2
## UNREDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

HIGHLY CONFIDENTIAL - OUTSIDE ATTORNEYS' EYES ONLY

```
1            UNITED STATES DISTRICT COURT
2            NORTHERN DISTRICT OF CALIFORNIA
3                   SAN JOSE DIVISION
4
5   CISCO SYSTEMS, INC.,        )
                                )
6            Plaintiff,         )
                                ) Case No.
7       vs.                     ) 5:14-cv-05344-BLF (PSG)
                                )
8   ARISTA NETWORKS, INC.,      )
                                )
9            Defendant.         )
                                )
10  _____ )
11
12
13
14
15
16     VIDEOTAPED DEPOSITION OF KEVIN C. ALMEROTH
17              San Francisco, California
18              Tuesday, June 28, 2016
19                     Volume I
20  HIGHLY CONFIDENTIAL - OUTSIDE ATTORNEYS' EYES ONLY
21
22  Reported by:
    CARLA SOARES
23  CSR No. 5908
24  Job No.  2337647
25  Pages 1 - 296
```

Page 1

```
 1  other times I've testified under deposition.  I         08:36:01
 2  don't know that there's a distinction in what
 3  Mr. Holmes said.
 4       Q    Okay.  Are you asking the court to
 5  recognize you as an expert in this matter?              08:36:14
 6       A    I don't know that I'd be asking the court
 7  to do that, but certainly, I think my qualifications
 8  justify that the court see me as an expert.
 9       Q    On what subjects relevant to the opinions
10  expressed in your reports do you claim to be an         08:36:37
11  expert?
12       A    I'm not sure I understand the question.  I
13  don't know that I can sit here and come up with the
14  definitive list of subjects.
15            I think on any of the subjects that I         08:36:58
16  testify about and offer opinions about, I believe
17  I'm qualified as an expert.
18       Q    Are you an expert in computer science?
19       A    I believe I am.
20       Q    Are you an expert in networking              08:37:09
21  technology?
22       A    I believe I am.
23       Q    Are you an expert in network device
24  operating systems?
25       A    I believe I am.                              08:37:19
```

Page 8

| | | |
|---|---|---|
| 1 | Q   From -- for how many different network | 08:37:24 |
| 2 | device vendors have you reviewed any source code for | |
| 3 | their network device operating systems? | |
| 4 | MR. HOLMES:  Objection.  Vague. | |
| 5 | THE WITNESS:  Generally speaking, or just | 08:37:39 |
| 6 | in the conjunction -- just in conjunction with this | |
| 7 | case? | |
| 8 | BY MR. SILBERT: | |
| 9 | Q   Well, why don't we take them one by one. | |
| 10 | First, in conjunction with this case, for | 08:37:47 |
| 11 | how many network device vendors have you reviewed | |
| 12 | any source code for their network device operating | |
| 13 | systems? | |
| 14 | A   Sitting here right now, I specifically | |
| 15 | recall two:  Cisco and Arista.  There might have | 08:38:04 |
| 16 | been others.  I just don't remember them. | |
| 17 | Q   And generally speaking, for how many | |
| 18 | different network device vendors have you reviewed | |
| 19 | any source code for their network device operating | |
| 20 | systems? | 08:38:22 |
| 21 | A   Maybe ten. | |
| 22 | Q   Can you name them? | |
| 23 | A   In addition to Cisco and Arista, I believe | |
| 24 | I've reviewed source code for A10, maybe F5, 3Com. | |
| 25 | Quagga is an open source so I've looked at source | 08:38:49 |

Veritext Legal Solutions
866 299-5127

| | | |
|---|---|---|
| 1 | code. We've worked on Quagga. | 08:38:59 |
| 2 | There's a couple of other cases that I | |
| 3 | worked on that I looked at source code. I think | |
| 4 | they're listed in my case history. So I've looked | |
| 5 | at source code for at least some of those. | 08:39:18 |
| 6 | Q  Are those companies that you just | |
| 7 | identified all the ones that you can remember by | |
| 8 | name, as you sit here today? | |
| 9 | A  By name, as I sit here right now, that's | |
| 10 | correct. Like I said, I would look at the case | 08:39:33 |
| 11 | history I have. There's at least a couple more that | |
| 12 | I know of for companies that are listed there. | |
| 13 | Q  Did you perform the source code review | |
| 14 | that you're referring to in connection with | |
| 15 | litigation matters, other litigation matters? | 08:39:48 |
| 16 | A  In some instances, yes, but not | |
| 17 | exclusively. | |
| 18 | Q  In what other situations did you review | |
| 19 | source code for network device vendors' operating | |
| 20 | systems? | 08:40:07 |
| 21 | MR. HOLMES:  Objection. Vague. | |
| 22 | THE WITNESS:  The one that I had mentioned | |
| 23 | was Quagga. | |
| 24 | You said "network device vendors." I | |
| 25 | mean, Quagga is an open source product. It may or | 08:40:19 |

Page 10

```
 1   may not qualify as a network device vendor.                 08:40:23
 2           I've also looked at lots of routing code
 3   in general, maybe not associated with a particular
 4   vendor.  Most code tends to be proprietary.
 5           But either, as I mentioned, through            08:40:43
 6   litigation earlier, or in other instances when some
 7   of the source code has been made available, I've
 8   looked at it.
 9           I've been pretty intimately involved with
10   router functionality for a good portion of my          08:40:56
11   career.
12   BY MR. SILBERT:
13       Q   For what other network device vendors have
14   you reviewed source code specifically relating to
15   their parsers?                                         08:41:08
16       A   I don't know that I could say, sitting
17   here now.  I mean, given the fairly significant
18   experience I've had with network device vendors and
19   their source code, both in litigation and beyond,
20   I'd have to go back and review some of the subject    08:41:39
21   matter of those cases.
22           I think I've -- there's been at least some
23   instances where I've looked at parsing code.  I just
24   don't remember them specifically.
25       Q   Would you be able to tell by looking at        08:41:53
```

HIGHLY CONFIDENTIAL - OUTSIDE ATTORNEYS' EYES ONLY

```
 1   your experience and resume that's attached to your        08:41:56
 2   expert report?
 3        A    It might help.  I don't know that that
 4   would allow me to give you a complete answer.
 5             As I said, I have a fairly varied and           08:42:11
 6   lengthy experience in dealing with routers and
 7   routing code, both in the context of network device
 8   vendors and routing generally.
 9        Q    For what network device vendors have you
10   spent more than three hours interacting with their        08:42:27
11   operating systems?
12        A    I'll do my best.  I suspect the list is
13   really quite lengthy.
14             HP, 3Com, Bay before they were bought by
15   Nortel, Nortel, 3Com, IBM, Cisco, Arista, Juniper,        08:42:58
16   Wellfleet, Netgear, D-Link.
17             There's at least a couple other that are
18   on the tip of my tongue.  I just can't think of them
19   right now.
20        Q    Have you spent more than three hours            08:43:39
21   interacting with Dell's network operating system?
22        A    It's very likely that I have.  I don't
23   know that I could point out a specific instance.  It
24   would be in line with saying, identify the first
25   time you used an Apple operating system or, you           08:44:03
```

Veritext Legal Solutions
866 299-5127

```
 1   know, count the number of instances you've used        08:44:08
 2   Windows 95 or NT or any particular operating system.
 3           Over the course of my career, I've used
 4   dozens of different routers, switches, gateways,
 5   hubs, both as an operator, as a researcher, in a lot   08:44:25
 6   of different contexts.
 7           Q   Have you spent more than three hours
 8   interacting with Brocade's network operating system?
 9           A   That's another one I likely should have
10   mentioned.  And I forget who they just merged with.    08:44:50
11   And I think I've had experience with them as well.
12   So yes, I would think so.
13           Q   Have you spent more than three hours
14   interacting with IBM or Lenovo's network operating
15   system?                                                08:45:15
16           A   Yes.  I think I mentioned IBM on that
17   list.
18           Q   I believe you did.  My apologies.
19           And to be clear, do you understand that
20   IBM, at some point, sold its networking operations     08:45:25
21   to Lenovo?
22           A   Yes.
23           Q   Okay.  Do you consider yourself -- please.
24           A   Another one, Foundry.  I think that's one
25   of the cases, and that's Foundry both in using the     08:45:45
```

Page 13

HIGHLY CONFIDENTIAL - OUTSIDE ATTORNEYS' EYES ONLY

```
1    device and then looking at source code and              08:45:50

2    potentially even parsing-related source code.

3         Q   In what context did you review

4    parsing-related source code for Foundry's network

5    operating system?                                       08:46:07

6         A   It would have been in the context of

7    litigation.  I think there's a case in my CV.  I'm

8    not sure how significant any of the parsing

9    functionality was to that case.  It might have been

10   fairly cursory.                                         08:46:21

11            I would need a few minutes to try and dig

12   into the recesses of long-term memory and see if I

13   could even remember what that case was about.

14        Q   Do you consider yourself an expert in

15   reading emails and knowing what the authors of those    08:46:40

16   emails intended?

17            MR. HOLMES:  Objection.  Vague and

18   compound.

19            THE WITNESS:  I don't know by what

20   criteria you would use to determine whether somebody    08:47:01

21   was an expert.  I'm not sure that some particular

22   expertise is required to look at an email, so I'm

23   not sure I can really answer that question.

24            But I certainly can say that, especially

25   in technical disciplines, looking at emails, I can      08:47:22
```

Veritext Legal Solutions
866 299-5127

HIGHLY CONFIDENTIAL - OUTSIDE ATTORNEYS' EYES ONLY

| | | |
|---|---|---|
| 1 | certainly see what they say and understand the | 08:47:26 |
| 2 | context in which they offer what they've said. | |
| 3 | BY MR. SILBERT: | |
| 4 |     Q   You can explain the technical issues | |
| 5 | related to an email that discusses technical issues | 08:47:39 |
| 6 | in your field; is that right? | |
| 7 |     A   That's part of what my answer was.  And | |
| 8 | for at least that part of it, I think that's | |
| 9 | correct. | |
| 10 |     Q   Do you claim to have some special | 08:47:55 |
| 11 | knowledge of the state of mind of Arista employees | |
| 12 | at any particular point of time? | |
| 13 |     MR. HOLMES:  Objection.  Vague, calls for | |
| 14 | a legal conclusion. | |
| 15 |     THE WITNESS:  I'm not sure what you mean | 08:48:11 |
| 16 | by "special knowledge." | |
| 17 |     I certainly can look at an email in the | |
| 18 | context of a collection of emails and see the words | |
| 19 | that were written in that email, and consider that | |
| 20 | email in the context of other evidence, and use it | 08:48:24 |
| 21 | to support a conclusion that I've reached.  I think | |
| 22 | I have that ability. | |
| 23 | BY MR. SILBERT: | |
| 24 |     Q   But do you consider yourself to be an | |
| 25 | expert with particular training and qualifications | 08:48:35 |

Page 15

HIGHLY CONFIDENTIAL - OUTSIDE ATTORNEYS' EYES ONLY

```
1    to do that?  Or is that simply something you can do        08:48:38
2    in the same way a layperson can do?
3             MR. HOLMES:  Same objections, and it's
4    also compound.
5             THE WITNESS:  Again, I'm not sure what            08:48:50
6    threshold you're using for expertise, what skill set
7    you would particularly identify as qualifying
8    somebody as an expert beyond that of a layperson.
9             And as I've said in previous answers, I
10   certainly think I have the capability to look at           08:49:06
11   emails.  And specifically the emails that I did look
12   at in this case, I don't think I'm, in this case,
13   attempting to intuit any special knowledge of that
14   person beyond simply what the emails state in the
15   context of all of the other evidence.                      08:49:29
16   BY MR. SILBERT:
17       Q   So you're not expressing an opinion on
18   what the state of mind of any Arista employee was at
19   any time beyond what, in your view, the emails
20   state?                                                     08:49:41
21            MR. HOLMES:  Objection.  Calls for a legal
22   conclusion, vague.
23            THE WITNESS:  Well, I think the report
24   speaks for itself.  I don't think I can sit here and
25   offer a qualification of my opinions in the way that       08:49:51
```

HIGHLY CONFIDENTIAL - OUTSIDE ATTORNEYS' EYES ONLY

```
1    you've expressed it.  I don't know that that's              08:49:56
2    necessarily accurate.
3           I think that the opinions in the report
4    are what they are, and I think the report speaks for
5    itself.                                                     08:50:04
6    BY MR. SILBERT:
7       Q   Do you claim to be an expert at comparing
8    works to determine if one was plagiarized from
9    another?
10          MR. HOLMES:  Objection.  Vague as to                  08:50:21
11   "works."
12          THE WITNESS:  Again, I'm not sure what
13   threshold you're using for expertise there.
14          Certainly, I have spent a lot of time in
15   the last 20 years looking at student assignments and        08:50:34
16   source code and attempted to determine instances of
17   plagiarism.
18          I've also done a fair amount of research
19   in developing tools that can assist in plagiarism
20   detection and using those tools.  And that involves         08:50:54
21   a multistep process that I think I have a lot of
22   experience in.
23          So I think, generally speaking, certainly
24   based on both the experiences I've had as an
25   instructor, the research that I've done, and all of         08:51:12
```

Page 17

| | | |
|---|---|---|
| 1 | the other expertise, that by most instances, that | 08:51:15 |
| 2 | would qualify me as an expert on plagiarism. | |
| 3 | BY MR. SILBERT: | |
| 4 | Q   You mentioned software tools, and you | |
| 5 | discuss this in your report. | 08:51:29 |
| 6 | You've developed one or more software | |
| 7 | tools whose purpose is to detect plagiarism; is that | |
| 8 | right? | |
| 9 | A   No, that's not quite right.  And we were | |
| 10 | very careful in all of our publications, that what | 08:51:45 |
| 11 | we were looking for was evidence of similarity | |
| 12 | between documents.  And that evidence of similarity | |
| 13 | is often a starting place for determining whether or | |
| 14 | not there was copying.  But it really is a multistep | |
| 15 | process. | 08:52:06 |
| 16 | I can give you probably about six hours | |
| 17 | and 45 minutes of anecdotes on plagiarism and how it | |
| 18 | happens and why it happens and how to detect it and | |
| 19 | how to use existing tools, both for text like | |
| 20 | reports, and then also software. | 08:52:22 |
| 21 | Q   And what's the name of the tool that you | |
| 22 | developed to detect evidence of similarity? | |
| 23 | A   The one that I did was PAIRwise, and then | |
| 24 | there was a second version, PAIRwise version 2, or | |
| 25 | 2.0. | 08:52:43 |

HIGHLY CONFIDENTIAL - OUTSIDE ATTORNEYS' EYES ONLY

```
1        Q    And is that tool commercially available?        08:52:45
2        A    It is commercially available through the
3    university.  You can purchase it.
4        Q    And you also said in your report that
5    you've developed systems to detect plagiarism; is        08:53:03
6    that correct?
7        A    I think it would be referring to things
8    like PAIRwise and its use in the greater
9    determination of whether or not there's plagiarism.
10       Q    When you say "it," you mean your statement      08:53:30
11   in your report that you developed systems to detect
12   plagiarism?
13       A    I haven't seen that statement.  You
14   haven't given me the report so I don't know the
15   context that it's talking about.                         08:53:40
16            But to the extent that it's talking about
17   plagiarism detection as a system, it includes, for
18   example, tools for software comparison as one of the
19   techniques that can be used as part of a system.
20       Q    Why don't you take a look at your report,       08:53:56
21   which is sitting on the table in front of you.
22            And Drew, would you like a copy?  I have
23   another copy.
24            MR. HOLMES:  Sure.
25   ///                                                      08:54:05
```

HIGHLY CONFIDENTIAL - OUTSIDE ATTORNEYS' EYES ONLY

```
1        A   I'm not sure that it was any single              09:49:05
2    person.  Certainly there were materials that were
3    offered to me as part of discovery.  Certainly there
4    were materials that I asked for and was provided.
5            So I don't know that I can attribute a           09:49:20
6    single person to the materials that I ultimately
7    considered in reaching my opinions.
8        Q   Were the majority of them selected by
9    Cisco's counsel?
10           MR. HOLMES:  Objection.  Vague.                  09:49:44
11           THE WITNESS:  It would be hard for me to
12   say.
13           Generally, when I work on a case, I will
14   ask for, you know, things like evidence from the
15   interrogatories, I'll ask for interrogatories.           09:50:06
16   Whether you can attribute that to something that
17   Cisco selected or that I asked for, I suppose it
18   depends on how you want to frame the question.
19           I think, ultimately, I have the materials
20   that I considered in forming those opinions.  I          09:50:25
21   don't think that there was anything I asked for that
22   was not provided, or that there was any additional
23   analysis I felt like I could have or should have
24   done that would have affected my opinions one way or
25   the other.                                               09:50:41
```

Veritext Legal Solutions
866 299-5127

| | | |
|---|---|---|
| 1 |    I think the opinions that are in the | 09:50:42 |
| 2 | report are based on the materials that I considered, | |
| 3 | and those materials were sufficient to reach those | |
| 4 | opinions. | |
| 5 | BY MR. SILBERT: | 09:50:51 |
| 6 |  Q How much time did you spend reviewing | |
| 7 | discovery materials in this case?  And by "discovery | |
| 8 | materials," I'm including documents, written | |
| 9 | discovery responses like interrogatories, and | |
| 10 | deposition testimony. | 09:51:06 |
| 11 |  A I don't even think I could give you a | |
| 12 | ballpark number.  The best I could say is, it's | |
| 13 | probably at least a couple hundred, if not several | |
| 14 | hundred hours.  But that probably includes also | |
| 15 | writing the report. | 09:51:23 |
| 16 |  Q Did you review all the discovery materials | |
| 17 | that you relied on yourself, or did, in some cases, | |
| 18 | other people review them and provide summaries of | |
| 19 | their contents to you? | |
| 20 |  A I -- as I sit here today, I'm not aware of | 09:51:49 |
| 21 | any materials that I considered that I didn't review | |
| 22 | myself. | |
| 23 |  Q Did anyone review materials and provide | |
| 24 | summaries of their contents to you that you relied | |
| 25 | on? | 09:52:02 |

Veritext Legal Solutions
866 299-5127

HIGHLY CONFIDENTIAL - OUTSIDE ATTORNEYS' EYES ONLY

| | | |
|---|---|---|
| 1 | MR. HOLMES: Objection. Asked and | 09:52:03 |
| 2 | answered. | |
| 3 | THE WITNESS: I think that to the extent | |
| 4 | there were materials or, as you stated, summaries | |
| 5 | that I relied on, they're included in my materials | 09:52:21 |
| 6 | considered. So for example, interrogatories. And | |
| 7 | in at least several instances, the way I've used the | |
| 8 | interrogatories are described in the report. | |
| 9 | I don't really consider receiving the | |
| 10 | interrogatories as receiving a summary of -- a | 09:52:44 |
| 11 | summary of the evidence that I then relied on the | |
| 12 | summary of. | |
| 13 | BY MR. SILBERT: | |
| 14 | Q   Other than interrogatories, did you rely | |
| 15 | on any summaries of discovery materials that were | 09:53:00 |
| 16 | provided to you by anyone? | |
| 17 | MR. HOLMES: Objection. Asked and | |
| 18 | answered. | |
| 19 | THE WITNESS: I don't believe so. I think | |
| 20 | to the extent I relied on any materials, they're | 09:53:15 |
| 21 | listed in the "Materials Considered" section. | |
| 22 | BY MR. SILBERT: | |
| 23 | Q   Did you read all of the depositions that | |
| 24 | you quote from in your report? | |
| 25 | A   Yes. | 09:53:23 |

Page 51