KEKER & VAN NEST LLP
ROBERT A. VAN NEST - #84065
BRIAN L. FERRALL - #160847
DAVID SILBERT - #173128
MICHAEL S. KWUN - #198945
633 Battery Street
San Francisco, CA 94111-1809
Telephone:   (415) 391-5400
Email:  rvannest@kvn.com;
bferrall@kvn.com; dsilbert@kvn.com;
mkwun@kvn.com

SUSAN CREIGHTON, SBN 135528
SCOTT A. SHER, SBN 190053
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
1700 K Street NW, Fifth Floor
Washington, D.C., 20006-3817
Telephone:  (202) 973-8800
Email:  screighton@wsgr.com;
ssher@wsgr.com

JONATHAN M. JACOBSON, NY SBN 1350495
CHUL PAK (*pro hac vice*)
DAVID H. REICHENBERG (*pro hac vice*)
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
1301 Avenue Of The Americas, 40th Floor
New York, NY 10019-6022
Telephone:  (212) 999-5800
Email:  jjacobson@wsgr.com; cpak@wsgr.com;
dreichenberg@wsgr.com

Attorneys for Defendant ARISTA NETWORKS, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| CISCO SYSTEMS, INC., <br><br> Plaintiff, <br><br> v. <br><br> ARISTA NETWORKS, INC., <br><br> Defendant. | Case No. 5:14-cv-05344-BLF (NC) <br><br> **ARISTA'S OPPOSITION TO CISCO'S MOTION *IN LIMINE* NO. 2 TO EXCLUDE EVIDENCE RELATED TO "INDUSTRY STANDARD"** <br><br> Judge:    Hon. Beth Labson Freeman <br><br> Date Filed:  December 5, 2014 <br><br> Trial Date:  November 21, 2016 |

**REDACTED PUBLIC VERSION**

ARISTA'S OPPOSITION TO CISCO'S MOTION *IN LIMINE* NO. 2 TO EXCLUDE
EVIDENCE RELATED TO "INDUSTRY STANDARD"
Case No. 5:14-cv-05344-BLF (NC)

1116739

## I. INTRODUCTION

For a decade, Cisco proudly observed the networking industry emulating its CLI so pervasively that Cisco—like its competitors—declared the emergence of a "*de facto* standard CLI." It repeated this and similar characterizations for years. Cisco was not troubled using this term, nor did it consider the term a "vague concept." *See* Cisco MIL 2 at 2:14. On the contrary, it had defined the term in its own Cisco Glossary as "[a] standard by usage rather than official decree; a default standard." Wong Decl., Ex. 1.[1] Yet now Cisco would wipe these admissions from the record at trial as if it were entitled to impose upon the jury whatever reality suits its case.

Cisco's and its competitors' description of a common CLI as a "*de facto* standard" is critically relevant to the jury's task in this case. It reflects a custom and practice that is relevant to the fair use defense, it supports the *scenes a faire* nature of the CLI, and it undermines Cisco's claim of damages. While Cisco may view this evidence as an inconvenient truth, that is no basis to keep the jury in the dark about it.

## II. ARGUMENT

### A. Evidence of Cisco's *de facto* industry-standard CLI is directly relevant to the fair use defense.

The jury's task in deciding fair use is to apply "'an equitable rule of reason.'" *Sega Enter. v. Accolade, Inc.*, 977 F.2d 1510, 1522 (9th Cir. 1991) (quoting *Harper & Row, Publishers, Inc. v. Nation Enter.*, 471 U.S. 539, 560 (1985)). Accordingly, courts "should adapt the fair use exception to accommodate new technological innovations." *Atari Games Corp. v. Nintendo of Am. Inc.*, 975 F.2d 832, 843 (Fed. Cir. 1992). Fair use advances the Copyright Act's goal of "'stimulat[ing] artistic creativity for the general public good.'" *Sega*, 977 F.2d at 1527 (quoting *Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417, 432 (1984)).

Recognizing the relevance of industry practice to the fair use defense, the Ninth Circuit has stated that fair use considers whether a "reasonable copyright owner" would have consented

---

[1] *See* Declaration of Ryan Wong in Support of Arista Network's Oppositions to Cisco's Motions In *Limine* Nos. 1-5 ("Wong Decl."). The Cisco definition closely matches that of the IEEE. IEEE Standards Glossary, *available at* https://www.ieee.org/education_careers/education/standards/standards_glossary.html (last visited Sept. 30, 2016).

1

ARISTA'S OPPOSITION TO CISCO'S MOTION *IN LIMINE* NO. 2 TO EXCLUDE
EVIDENCE RELATED TO "INDUSTRY STANDARD"
Case No. 5:14-cv-05344-BLF (NC)

1  to the use. *Wall Data Inc. v. Los Angeles Cty. Sheriff's Dep't*, 447 F.3d 769, 778 (9th Cir. 2006)

2  (citing Subcomm. on Patents, Trademarks & Copryights of the Sen. Comm. On the Judiciary,

3  86th Cong., 2d Sess, Study No. 14, Fair Use of Copyrighted Works 15 (Latman) (1960)).

4  Contrary to Cisco's motion, nothing in *Wall Data* suggests that evidence of customary usage of a

5  copyrighted work is limited to situations involving a licensed use. *See id.*; *see also Cisco Sys.*

6  *Inc. v. Arista Networks, Inc.*, No. 14-CV-05344-BLF, 2016 WL 4440239, at *5 (N.D. Cal. Aug.

7  23, 2016) (applying *Wall Data* to this case). The *Wall Data* opinion merely restates the nature of

8  the defense as expressed in the legislative history of fair use, not a limitation of the doctrine.

9      Here, Cisco's and the industry's statements that Cisco's CLI has become a *de facto*

10 industry standard is evidence of a "custom or public policy" that "defined [Arista's] use as

11 reasonable." *Wall Data*, 447 F.3d at 778. Since at least 2003, Cisco described its CLI as the "*de*

12 *facto—*" or "industry standard." For example, a 2010 Cisco "White Paper" regarding its NX-OS

13 software (which is among the asserted registered works in the case) proclaims "[t]he Cisco IOS

14 CLI has essentially become the standard for configuration in the networking industry." Wong

15 Decl. Ex. 2 at 5. Cisco's 2012 data sheet for NX-OS assures customers that "Cisco NX-OS offers

16 the same industry-standard command line environment that was pioneered in Cisco IOS software

17 making the transition from Cisco IOS Software to Cisco NX-OS Software easy." *Id.* at Ex. 3. Its

18 product manuals tout that customers "can use the industry-standard Cisco IOS Software

19 Command-Line Interface (CLI)." *Id.* at Ex. 32. On numerous other occasions Cisco has stated

20 that its CLI has become standard in the industry, and competitors agreed. *Id.* at Exs. 4–6, 34–36.

21 Cisco's own presentations say the same thing. *Id.* at Ex. 33.

22     Cisco's and the rest of the industry's reference to an "industry standard" CLI is relevant to

23 each of the four non-exhaustive fair use factors. *See* 17 U.S.C. § 107. The jury may consider

24 "the public benefit resulting from a particular use" in evaluating the first fair use factor. *Sega*,

25 977 F.2d at 1523. Evidence shows that the networking industry converged around a *de facto*

26 standard CLI for everyone's benefit because a Tower of Babel of different command languages

27 would threaten interoperability and network stability. Wong Decl. Ex. 7 at 129:21-25; *see also*

28 Ex. 8 at 37–40, 42, 60–63, 105; Ex. 9 at 25–27, 29–30; Ex. 10 at 68–69, 95–97 (testimony from

2
ARISTA'S OPPOSITION TO CISCO'S MOTION *IN LIMINE* NO. 2 TO EXCLUDE
EVIDENCE RELATED TO "INDUSTRY STANDARD"
Case No. 5:14-cv-05344-BLF (NC)

1116739

1  Dell, Juniper, and HP representatives stating ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

2  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Cisco itself recognized this benefit,

3  observing that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

4  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮  *See id*. at Ex. 12;  Ex. 11

5  at 69–71.

6        Under the second fair use factor—the nature of the copyrighted work—the jury may

7  consider the "desire to achieve commercial 'interoperability.'" *Oracle Am., Inc. v. Google Inc.*,

8  750 F.3d 1339, 1377 (Fed. Cir. 2014) ("*Oracle I*") (recognizing APIs that are "necessary . . . to

9  write programs in the Java language" and "essential components of any Java language-based

10  program" may be relevant to fair use).  The emergence of a *de facto* standard CLI shows that it is

11  primarily a functional work (second factor), consisting of "necessary . . . essential components"

12  for customers to configure different vendors' equipment within the same network, without undue

13  expense or risk of confusion or network error.  *Id.*; *see Sega*, 977 F.2d at 1524 (citation omitted)

14  (computer programs "contain many logical, structural, and visual display elements that are

15  dictated by the function to be performed, by . . . ***external factors such as compatibility***

16  ***requirements and industry demands***.").  Interoperability is likewise relevant to factor three—the

17  substantiality of the use.  *Oracle II*, 750 F.3d at 1377.  The jury is entitled to consider the fact that

18  Arista and the rest of the industry use "only . . . as much [of the registered versions of Cisco's

19  operating system] as is necessary" to enable interoperability in a multi-vendor network.[2]  *Kelly v.*

20  *Arriba Soft Corp.*, 336 F.3d 811, 820–21 (9th Cir. 2002).

21        Cisco does not contest that interoperability is an important fair use factor, but argues that

22  only machine-to-machine interoperability can be considered, again relying on *Oracle I*.  *See* ECF

23  533 at 3.  Cisco is wrong.  In *Oracle I*, the interoperability at issue was ***not*** machine-to-machine.

24  Rather Google sought to "capitalize on the fact that software developers ***were already trained***

25  ***and experienced*** in using" the asserted works.  *Oracle I*, 750 F.3d at 1371.  There is no

---

[2] The fair use inquiry is not limited to the time of the asserted works' purported creation.  *See e.g.*, *Oracle I*, 750 F.3d at 1376 (under the third factor "attention turns to the persuasiveness of [the accused infringer]'s justification for the particular copying done").  Cisco misleadingly cites a portion of the *Oracle I* decision concerning the "merger" doctrine, not fair use.

3
ARISTA'S OPPOSITION TO CISCO'S MOTION *IN LIMINE* NO. 2 TO EXCLUDE
EVIDENCE RELATED TO "INDUSTRY STANDARD"
Case No. 5:14-cv-05344-BLF (NC)

1116739

discussion in that case or any other cited by Cisco that only "machine" interoperability matters. Indeed, the district court upheld the fair use verdict because the "jury could reasonably have given weight to the fact that cross-system confusion would have resulted" had Google not used the accused work. *Oracle Am., Inc. v. Google Inc.*, No. C 10-03561 WHA, 2016 WL 3181206, at *11 (N.D. Cal. June 8, 2016) ("*Oracle II*"). It concluded that "a common set of command-type statements," like "a common QWERTY keyboard," advances the "useful arts." *Id*. So too here. The industry's recognition of *de facto* standard CLI terminology demonstrates the importance to network engineers of maintaining a familiar vocabulary. Because the CLI was designed for human usage, the benefit to humans of having a common networking language across vendors is critically relevant for the fair use analysis.

The fact that Cisco and the industry referred to common CLI commands as a *de facto* standard demonstrates that Arista's use of these commands has not caused Cisco market harm (factor four). The jury is required to consider whether there was similar "unrestricted and widespread conduct of the sort engaged in by" Arista in the relevant market. *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 590 (1994). In *Oracle v. Google*, for example, the jury was entitled to find that factor four weighed in favor of fair use because the asserted copyright material was "available as free and open source," and so the "impact [of Google's use] on the market for the copyrighted works paralleled what [Oracle] already expected" from others' use. *Oracle II*, 2016 WL 3181206, at *10. Here, numerous other vendors touted their use of an industry standard CLI that closely resembled Cisco's. *See, e.g.,* Wong Decl. Exs. 12–17. The jury should be allowed to assess the credibility of Cisco's claim of market harm due to Arista's use of *de facto* standard commands in light of Cisco's history of endorsing the widespread use of the CLI by the networking industry.

**B.     The *de facto* standard nature of the asserted CLI is relevant to the *scenes a faire* and misuse defenses.**

The industry's treatment of the CLI as a *de facto* standard is also relevant to Arista's *scenes a faire* defense as evidence of the limited practical range of available expression. *See Apple Computer, Inc. v. Microsoft Corp.,* 799 F. Supp. 1006, 1021 (N.D. Cal. 1992). These

statements tend to show that even Cisco recognized that there are practical limits on the words that can be used to describe common networking functionality. They are also relevant to the misuse defense, which may be decided by a jury. *See* 4 Patry on Copyright § 10A:1("Misuse claims may be decided by a jury."); *see also* Ninth Cir. Manual of Model Civ. Jury Instr. ¶ 17.23.

### C. Evidence showing Cisco's CLI is a *de facto* industry standard CLI is relevant to damages.

That Cisco and the industry treated Cisco's CLI as a *de facto* standard substantially undermines Cisco's damages claim. Damages can be reduced where a "plaintiff's work had been infringed by another work prior to its being infringed by defendant's work." 5 Nimmer on Copyright § 14.02 (2015) (citing *Universal Pictures Co. v. Harold Lloyd Corp.*, 162 F.2d 354, 370 (9th Cir. 1947) (a third party's infringement considered in apportioning damages)). Additionally, to the extent Cisco maintains its allegations of willful infringement, Arista's good faith and reasonableness are relevant. *Peer Int'l Corp. v. Pausa Records, Inc.*, 909 F.2d 1332, 1336 (9th Cir. 1990) (citation omitted). This evidence is highly probative of Arista's good faith and reasonable judgment.

### D. The probative value of the *de facto* industry standard evidence significantly outweighs any minimal prejudice.

The widespread treatment of Cisco's CLI as a *de facto* industry standard is far more probative than prejudicial. Industry custom and practice is often admissible, especially when admitted by a party. *See, e.g., Oracle II,* 2016 WL 3181206, at *2; *see also Hangarter v. Provident Life & Accident Ins. Co.*, 373 F.3d 998, 1015–16 (9th Cir. 2004) (testimony on industry standard admissible). The term "*de facto* [industry] standard" is not unduly confusing or prejudicial; Cisco itself defined it. *See* Wong Decl. Ex. 1. As the Court observed, any risk of misinterpretation of the term can be addressed by way of a jury instruction. *See* Hr'g Tr. 14:17–19, 22-23. Pretending to the jury that Cisco never made these admissions, however, would deprive the jury of highly relevant facts.

### III. CONCLUSION

For the foregoing reasons, the Court should deny Cisco's Motion *in Limine* No. 2.

5
ARISTA'S OPPOSITION TO CISCO'S MOTION *IN LIMINE* NO. 2 TO EXCLUDE
EVIDENCE RELATED TO "INDUSTRY STANDARD"
Case No. 5:14-cv-05344-BLF (NC)

1116739

Dated: October 7, 2016 KEKER & VAN NEST LLP

By: *s/ Robert A. Van Nest*
ROBERT A. VAN NEST

Attorney for Defendant
ARISTA NETWORKS, INC.

6
ARISTA'S OPPOSITION TO CISCO'S MOTION *IN LIMINE* NO. 2 TO EXCLUDE
EVIDENCE RELATED TO "INDUSTRY STANDARD"
Case No. 5:14-cv-05344-BLF (NC)

1116739