# EXHIBIT 28

Page 1

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA

CISCO SYSTEMS, INC.,

    Plaintiff,

v.         No. 5:14-cv-05344-BLF

ARISTA NETWORKS, INC.,

    Defendant.

_____/

** CONFIDENTIAL **

VIDEOTAPED DEPOSITION OF JOHN R. BLACK, Ph.D.

THURSDAY, JUNE 30, 2016

SAN FRANCISCO, CALIFORNIA

DEBORAH MAYER, CSR 9654, RPR CRR CRP CLR
U.S. LEGAL SUPPORT - SAN FRANCISCO

---

Page 2

1       BE IT REMEMBERED, pursuant to Notice, that on
2  Thursday, June 30, 2016, 9:05 a.m. - 5:46 p.m., at
3  50 California Street, 21st Floor, San Francisco,
4  California, 94111, before me, Deborah Mayer, a Certified
5  Shorthand Reporter for the State of California, there
6  personally appeared:
7
8       JOHN R. BLACK, Ph.D.,
9
10  called as a witness by the Plaintiff, who, being by me
11  first duly sworn/affirmed, was thereupon examined and
12  testified as hereinafter set forth.
13
14
15
16
17
18
19
20
21
22
23
24
25  ///

---

Page 3

1           A P P E A R A N C E S
2
3  FOR PLAINTIFF CISCO SYSTEMS, INC.:
4     QUINN EMANUEL
      BY:  ANDREW M. HOLMES, ESQ.
5     50 California Street, 22nd Floor
      San Francisco, CA  94111
6     (415) 875-6322
      drewholmes@quinnemanuel.com
7
8
9  FOR DEFENDANT ARISTA NETWORKS, INC.:
10    KECKER & VAN NEST
      BY:  RYAN K.M. WONG, ESQ.
11    633 Battery Street
      San Francisco, CA  94111
12    (415) 773-6682
      rwong@kvn.com
13
14
15
16  ALSO PRESENT:
17     PHILIP KNOWLES, Legal Video Specialist.
18
19
20
21
22
23
24
25  ///

---

Page 4

1           I N D E X
2
3  Witness:              Page
4  JOHN R. BLACK, Ph.D.
5     EXAMINATION BY MR. HOLMES     7
6
7
8       S T I P U L A T I O N S
9             Page Line
10  MR. HOLMES: Thank you.  For the record, we  268 21
11  haven't seen it yet.  It hasn't been
12  produced to Cisco yet, so we'll have to take
13  a look at it when it is....
14  MR. WONG:  Actually, can we designate this  285 12
15  transcript confidential?
16  THE REPORTER:  Transcript order:  Is there  286  2
17  an expedite or rough, anything?
18  MR. HOLMES:  The rough, yes.  Otherwise, no.
19  MR. WONG:  I think that's right.  Same here.
20
21     M O T I O N   T O   S T R I K E
22             Page Line
23  MR. HOLMES:  I'll just move to strike as   117 13
24  nonresponsive, and I'll re-ask it.
25  ///

Page 273

1  Q.  As you sit here right now, do you recall why
2  you did not include Red Back Networks in Appendix G to
3  your original report?
4     A.  I believe I got more manuals in between the two
5  timeframes and included more data as a result of getting    17:24
6  them.  I think Red Back's owned by Erickson now.  I
7  chose not to combine them.
8     Q.  Why did you choose not to combine them?
9     A.  Because it was a late entrant into the game and
10  I got more manuals, and I added the manual in a    17:24
11  straightforward way.  I don't think I included Red Back
12  in H though.
13     Q.  Why not?
14     A.  Time.
15     Q.  Does adding Red Back Networks change your    17:24
16  opinion in any way?
17     A.  I think it adds a tiny bit more reinforcement.
18  The top number is now 18 instead of 17, but I was
19  perfectly happy before with 17.
20     Q.  But if you combined Red Back with Erickson like    17:24
21  you've done for others, it would be 17?
22     A.  Sure, and I'd still be happy with it.
23     Q.  Okay, thanks.  What about H?  What's different
24  about H, Appendix H in your Rebuttal Report as compared
25  to your Opening Report Appendix H?    17:25

Page 274

1     MR. WONG:  Objection, compound.
2     A.  Once again, the left-hand column reflects the
3  new set of accused command abstractions, and there's
4  some additional manuals that are considered.
5  BY MR. HOLMES:    17:25
6     Q.  Okay, what about -- if you can please turn to
7  Exhibit J.
8     A.  Appendix J?
9     Q.  I'm sorry, Appendix J.
10     A.  It's late, I know.    17:25
11     Q.  What's different about Appendix J as compared
12  to -- strike that.
13     What's different about Appendix J in your
14  Rebuttal Report as compared to Appendix J in your
15  Opening Report?    17:25
16     A.  There, I think, but I'd want to check, the only
17  change is that they're numbered.
18     Q.  Moving on to Appendix K to your Rebuttal
19  Report, what's different about Appendix K to your
20  Rebuttal Report as compared to Appendix K to your    17:26
21  Opening Report?
22     A.  There, I think, but I'd like to check, the only
23  change is that we went from 514 to 508.
24     Q.  Okay, thank you.
25     Let's move on to Appendix L.  Appendix L is a    17:26

Page 275

1  new Appendix that was not included with your Opening
2  Report, is that right?
3     A.  That's correct.
4     Q.  And why didn't you include this with your
5  Opening Report?    17:26
6     A.  Well, this reflects Professor Almeroth's
7  contention in his Opening Report, which I didn't have
8  available prior to writing mine, that these are the only
9  11 command hierarchies that Cisco contends are
10  infringed, and so therefore I wanted to summarize this    17:26
11  according to his belief and opinion.
12     Q.  This is responsive to Dr. Almeroth's opinions?
13     A.  Yes, it is.
14     Q.  Moving on to M.  Why wasn't Appendix M
15  submitted with your Opening Report?    17:27
16     A.  Once again, to the extent this is helpful and
17  supports my opinions, I didn't have the time to do the
18  work until after the date.  So this is, as you can see,
19  a sorted order, two different orderings by number of the
20  accused command abstractions from Exhibit F and from    17:27
21  Professor Almeroth's exhibit copying two -- I'm sorry,
22  let me start over.
23     This contains data from Professor Almeroth's
24  Opening Report, Exhibit copy 2, and that of course was
25  not available to me prior to drafting my Opening Report.    17:28

Page 276

1     Q.  Let's take a look at Appendix N.  This is a new
2  Appendix as well that was not included with your Opening
3  Report, is that correct?
4     A.  That's correct.
5     Q.  And can you tell me what Appendix N is at a    17:28
6  high level?
7     A.  Yes.  It's -- the left column lists every one
8  of the 508 disputed command abstractions.  The second
9  column is a command abstraction I found by manually
10  searching the Arista manual.  And here I used only one    17:28
11  manual, 4.153F.  Then I took a screen shot in each case
12  from the Arista manual, included it in the third column.
13  And in the last column I indicate whether the command
14  abstraction is complete, relative to the EOS usage, in
15  other words, could it be issued on it own or does it    17:29
16  require more to be valid.
17     Q.  Now, is it your opinion that if -- if it says
18  "no" in the complete command column that that has some
19  bearing on whether or not Arista copied that command
20  from Cisco?    17:29
21     MR. WONG:  Objection, calls for a legal
22  conclusion.
23     A.  I'm attempting to highlight, and this is a big
24  deal to me, that when Cisco makes its contentions and
25  writes down these 508 accused command abstractions that    17:29

Page 277

1  some of these aren't even commands, and they call them
2  "commands" a lot of times.  220 of them are issuable by
3  themselves.  Most of them, whatever's left, 288, you
4  can't type in to any Cisco product and actually have it
5  be accepted.  I think that's relevant.  And it's a point     17:30
6  of frustration for me because it makes it harder to do a
7  meaningful analysis, quantitative analysis without doing
8  all the work that I described earlier that has to be
9  done to get valid commands out of these manuals.  So I'm
10  highlighting that point by saying look, most of these     17:30
11  things aren't even commands.
12  BY MR. HOLMES:
13     Q.  I understand that's your contention.  Would you
14  agree with me though that for all of the command
15  abstractions, or commands, however you want to phrase     17:30
16  it, for all of the command abstractions that are listed
17  in the column saying "asserted Cisco command
18  abstraction" in Appendix N -- with me so far?
19     A.  I'm sorry?
20     Q.  So, you see there's a column that says     17:30
21  "asserted Cisco command abstractions" in Appendix N?
22     A.  Yes.
23     Q.  Are you with me?
24     A.  I'm with you.
25     Q.  And that reflects one of the command     17:31

Page 278

1  abstractions, as you used that term, that Cisco claims
2  Arista's copied, right?
3     A.  That's correct.
4     Q.  That's what that column reflects?
5     A.  Yes, and there should be 508 of these.     17:31
6     Q.  Okay.  Now, you're not disputing that that
7  command -- that the command abstractions in the column
8  titled "asserted Cisco command abstractions," the actual
9  command abstraction you've listed -- strike that, let me
10  rephrase it.     17:31
11     You don't dispute that the command abstractions
12  are literally present in the Arista EOS document that
13  you cited in the column titled "actual documented Arista
14  EOS commands syntax"?
15     MR. WONG:  Objection, vague.     17:31
16     A.  I haven't looked through this with that
17  question in mind.  I think it's reasonable that the
18  command abstraction that Cisco accuses and has listed in
19  the left column often appears literally as long as you
20  hunt through and pick and choose out of these     17:32
21  expressions, and you find these words somewhere in the
22  body.  But I think that's completely unfair.
23     I mean if I have a CLI that says "show apples,
24  oranges, pears, grapes," so forth, Cisco could say well,
25  we have a show command, and our abstraction is just the     17:32

Page 279

1  word "show," and you admit the word "show" literally
2  appears in your product, you have to look at the full
3  command.  You can't cherry-pick a certain few words,
4  call that a command, which it's not, that's why I've
5  chosen "command abstraction," and then say look, those     17:32
6  two words appears a subset of something in your manual
7  and therefore there's copying that's occurred,
8  especially when the command abstraction that's accused
9  doesn't appear literally in any of Cisco's copyrighted
10  works.     17:33
11     Q.  But it does appear literally in these documents
12  that you've cited in the column titled "actual
13  documented Arista EOS syntax," correct?
14  (Reporter clarification.)
15     Q.  But it does exist literally in the documents     17:33
16  that you've cited under the column titled "actual
17  documented Arista EOS command syntax," correct?
18     MR. WONG:  Objection, vague.
19     A.  Sure, but it's my understanding that Cisco
20  doesn't have a copyright on Arista's manuals, and I     17:33
21  don't think it's fair for Cisco to be able to open up an
22  Arista manual and then pick out words, call those
23  commands, then put them into infringement contentions
24  and accuse Arista of copying.
25  ///     17:33

Page 280

1  BY MR. HOLMES:
2     Q.  I understand you don't think it's fair.  I'm
3  just asking you whether or not the command abstractions
4  that you've listed here are literally present in the
5  documents that you cite in the column titled "actual     17:33
6  documented Arista EOS command syntax"?
7     MR. WONG:  Objection, vague and compound.
8     A.  I can affirm that the words "Triple A
9  accounting" occur within the document that has a screen
10  shot on the first page.  I haven't done that test in     17:34
11  every case.  I would expect that sometimes what you
12  described occurs.  Probably in many cases I'd have to
13  hunt through, find it, deliberately ignore intermediate
14  parameters and other key words to be able to find it,
15  but I just hope that's not what we're doing today.  I     17:34
16  mean you can accuse anyone of anything if that's the way
17  the game is played.
18  BY MR. HOLMES:
19     Q.  Are you suggesting that Cisco is playing a
20  game?     17:34
21     MR. WONG:  Objection, argumentative.
22     A.  I'm suggesting that Cisco deliberately took a
23  small, tiny fraction of its full set of CLI commands and
24  asserted them as if they're a single copyrighted work,
25  even though they span multiple copyrighted works within     17:35

Page 281

1   Cisco, solely on the basis that they were able to find
2   them contained within various command expressions in the
3   EOS manual, and I don't think that that applies a
4   standard of rigor or a principled analysis that is valid
5   on a scientific basis, in my view.          17:35
6   BY MR. HOLMES:
7       Q.  But you don't dispute that AAA Accounting
8   literally is sitting here in an Arista document in the
9   same format that Cisco has claimed -- strike that.
10          How did you go about lining up the asserted   17:35
11  Cisco command abstractions to selections of Arista
12  documents that you recite here?
13      A.  I'm sorry, it's late, one more time?
14      Q.  So when you were trying to find documents to
15  cite -- strike that.                          17:36
16          When you were looking for examples in Arista's
17  documents to put into the column titled "actual
18  documented Arista EOS command syntax," how did you go
19  about determining when you found an asserted Cisco
20  command abstraction?                          17:36
21      A.  I'm sorry, so are you saying how did I find
22  these in the manual essentially?
23      Q.  That's correct.
24      A.  So I took the command abstraction -- oftentimes
25  this command abstraction would match the heading in the   17:36

Page 282

1   table of contents for the Arista manual which I think is
2   probably how Cisco went about selecting its command
3   abstractions to accuse.  And since the syntax in the
4   manual has things like parenthetical (OSPF V2, V3,) I've
5   never seen that used in the Cisco manuals but it's used   17:37
6   in the Arista manuals.
7          So I think what happened probably is they
8   looked down the table of contents, and it proved to be
9   an easy way for me to also find these in the manual.
10  Arista conveniently has a single document, so I didn't   17:37
11  have to go searching through multiple documents, and
12  they're in alphabetical order, and it was a pretty
13  simple exercise to just go down the list.
14  BY MR. HOLMES:
15      Q.  Were there any asserted Cisco command           17:37
16  abstractions you did not find in an Arista document?
17      A.  No, I think because if you generate the list
18  the way I said, you will find them all by definition.
19  That's where they're selected from.
20      Q.  So for each one of the 508 asserted Cisco      17:37
21  command abstractions, you found an instance in an Arista
22  document where that command abstraction was present?
23          MR. WONG:  Objection, misstates, and overly
24  compound.
25      A.  I found a documented command expression that   17:38

Page 283

1   contains, as a subset, the accused command abstraction
2   just like I did in 18 other vendors in many cases across
3   the board.
4   BY MR. HOLMES:
5       Q.  And you found that for all 508 of the asserted   17:38
6   Cisco command abstractions?
7           MR. WONG:  Objection, compound.
8       A.  There may have been one or two exceptions where
9   I think it was just a typo in Cisco's contentions.  I
10  can't tell you offhand.  But in the majority of cases,   17:38
11  the command abstractions that Cisco selected from the
12  manual were in the manual.
13          MR. WONG:  What's the time on the record?
14          THE VIDEOGRAPHER:  Six hours, 56 minutes
15  adjustment okay.                              17:39
16          MR. HOLMES:  All right, go off the record.
17  (Discussion off the record.)
18          THE VIDEOGRAPHER:  The time is 5:38 p.m.  Going
19  off the record.
20  (Recess taken.)                               17:39
21          THE VIDEOGRAPHER:  Counsel, we're back on the
22  record.  The time is 5:43 p.m.
23  BY MR. HOLMES:
24      Q.  Sir, is it your opinion that Cisco's IOS CLI is
25  part of any formal industry standard?          17:44

Page 284

1           MR. WONG:  Objection, vague.
2       A.  Pardon me.  Only in the sense that I've opined
3   in my reports that parts of certain commands have key
4   words that come directly from industry standards and so
5   forth.  But it's not my opinion that there is any   17:44
6   formalized industry standard that dictates that Cisco's
7   IOS CLI must operate in a certain way, exhibit certain
8   features, behave certain ways, only certain key strokes
9   have certain modes, prompts, hierarchies, or support
10  certain commands explicitly, no.               17:45
11  BY MR. HOLMES:
12      Q.  Dr. Black, have you ever heard of the term
13  "intersystem consistency"?
14      A.  Sure.
15      Q.  What does it mean?                     17:45
16      A.  It usually refers to different systems, and it
17  looks for something that's compatible or consistent
18  between those two systems.
19      Q.  And --
20      A.  And by the way, that's not a common term of art   17:45
21  I've heard a lot.  Usually people say "compatibility" as
22  a more common way to say something similar.
23      Q.  Sorry, I didn't mean to interrupt.  When was
24  the last time you heard that term used, "intersystem
25  consistency"?                                 17:45

Page 285

1     A.  Not to be snarky, about 30 seconds ago.  Before
2  that, I'm not sure.  I mean within the last year, people
3  have said that, but like I said, a lot of times people
4  will say "compatibility" or something similar.
5     Q.  Not a common term, in your opinion?        17:46
6     A.  Not as common as compatibility.
7        MR. HOLMES:  No further questions.  I pass the
8  witness.
9        MR. WONG:  I've got no questions.  Thank you,
10  Dr. Black.                              17:46
11        THE VIDEOGRAPHER:  This marks the end --
12        MR. WONG:  Actually, can we designate this
13  transcript confidential?
14        MR. HOLMES:  No objection.
15           -o0o-                          17:46
16
17
18
19
20
21
22
23
24
25

Page 286

1        THE REPORTER:  Transcript order:  Is there an
2  expedite or rough, anything?
3        MR. HOLMES:  The rough, yes.  Otherwise, no.
4        MR. WONG:  I think that's right.  Same here.
5        THE REPORTER:  Thank you, counsel.        17:46
6           -o0o-
7        THE VIDEOGRAPHER:  All right, this marks the
8  end of DVD 5 of 5 and concludes today's deposition of
9  John Black.  The time is 5:46 p.m.  We're going off the
10  record.  Thank you, counsel.              17:46
11        (Deposition adjourned at 5:46 p.m.)
12           -o0o-
13
14
15
16
17
18
19
20
21
22
23
24
25

Page 287

1              CERTIFICATE OF DEPONENT
2
3        I, the undersigned, declare, under the penalty
4  of perjury, that I have read the foregoing transcript,
5  and I have made any corrections, additions, or deletions
6  as I deemed necessary.  The foregoing is a true and
7  correct transcript of my testimony contained therein.
8
9    Dated: _____  Signed at: _____
              (City, State)
10
11
12        BY:_____
              JOHN R. BLACK, Ph.D.
13
14
15
16
17
18
19
20
21
22
23
24
25    ///

Page 288

1              CERTIFICATE OF REPORTER
2
3  STATE OF CALIFORNIA      )
4                           )  ss:
5  COUNTY OF SAN FRANCISCO  )
6
7        I, Deborah Mayer, a Certified Shorthand
   Reporter duly licensed and qualified in and for the
8  State of California, do hereby certify that there came
   before me on Thursday, June 30, 2016, at 50 California
9  Street, 21st Floor, San Francisco, California, 94111,
   the following named person:
10
11        JOHN R. BLACK, Ph.D.,
12  who was duly sworn to testify to the truth, the whole
   truth, and nothing but the truth of knowledge concerning
13  the matters in controversy in this proceeding, who was
   thereupon examined under oath, whose examination was
14  reduced to typewriting under my supervision, and that
   this deposition is a true record of the testimony given
15  by said witness.
16        I further certify, pursuant to FRCP 19
   Rule 30(e)(1), that the signature of the deponent
17
   _X_ was requested by the deponent or a party
18  before the completion of the deposition;
19  ___ was not requested by the deponent or a
   party before the completion of the deposition.
20
21        I further certify that I am neither attorney or
   counsel for, nor related to, nor employed by any of the
22  parties to the action in which this deposition is taken,
   and that I am not a relative or employee of any attorney
23  or counsel employed by the parties hereto or financially
24  interested in this matter.
   ss: _____
25        DEBORAH MAYER, RPR CRR CRP CLR
          CALIFORNIA CSR 9654

Page 289

1    U.S. LEGAL SUPPORT, INC.
       44 Montgomery Street, Suite 550
2    San Francisco, California  94104
       (415) 362-4346
3
4    To:  JOHN R. BLACK, Ph.D.
5    c/o  RYAN K.M. WONG, ESQ.
       KECKER & VAN NEST
6    633 Battery Street
       San Francisco, CA  94111
7
8    Re:  CISCO SYSTEMS, INC. v. ARISTA NETWORKS, INC.
9
10   Dear Dr. Black:
11   Please be advised that the original transcript of your
      deposition in the above-entitled matter is available for
12   reading and signing.  The transcript will be held in our
      office and made available for your review for 30 days.
13
      If it is more convenient for you to read a copy of the
14   transcript and waive signature of the original
      transcript, please notify our office by letter, sent by
15   certified or registered mail, of any changes made.
      In the event you do not sign your deposition transcript
16   within thirty (30) days of receipt of this letter, your
      testimony may be used with the full force and effect as
17   though it had been read, corrected, and signed.
18   If you are represented by counsel in this matter, you
      may wish to ask your attorney how to proceed.  If you
19   are not represented by counsel and wish to review your
      transcript, please contact our office to arrange an
20   appointment to review your deposition.
21   Thank you for your cooperation in this matter.
22   Sincerely,
23
      Deborah Mayer, California CSR 9654
24   for U.S. LEGAL SUPPORT, INC.
      cc:   All Counsel
25       File