1    Kathleen Sullivan (SBN 242261)
kathleensullivan@quinnemanuel.com
2    QUINN EMANUEL URQUHART &
SULLIVAN LLP
3    51 Madison Avenue, 22nd Floor
New York, NY 10010
4    Telephone: (212) 849-7000
Facsimile: (212) 849-7100
5
Sean S. Pak (SBN 219032)
6    seanpak@quinnemanuel.com
John M. Neukom (SBN 275887)
7    johnneukom@quinnemanuel.com
QUINN EMANUEL URQUHART &
8    SULLIVAN LLP
50 California Street, 22nd Floor
9    San Francisco, CA 94111
Telephone: (415) 875-6600
10   Facsimile: (415) 875-6700

11   David Nelson (*admitted pro hac vice*)
davenelson@quinnemanuel.com
12   QUINN EMANUEL URQUHART &
SULLIVAN LLP
13   500 W Madison St, Suite 2450
Chicago, IL 60661
14   Telephone: (312) 705-7465
Facsimile: (312) 705 7401
15
[Additional counsel listed on signature page]
16
ATTORNEYS FOR PLAINTIFF CISCO
17   SYSTEMS, INC.

KEKER & VAN NEST LLP
ROBERT A. VAN NEST - # 84065
rvannest@kvn.com
BRIAN L. FERRALL - # 160847
bferrall@kvn.com
DAVID SILBERT - # 173128
dsilbert@kvn.com
MICHAEL S. KWUN - # 198945
mkwun@kvn.com
633 Battery Street
San Francisco, CA 94111-1809
Telephone:    415 391 5400
Facsimile:    415 397 7188

ATTORNEYS FOR DEFENDANT ARISTA
NETWORKS, INC.

18
19              **UNITED STATES DISTRICT COURT**

20     **NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION**

21   CISCO SYSTEMS, INC.,                    CASE NO. 5:14-cv-5344-BLF

22              Plaintiff,                   **PARTIES' UNDISPUTED AND
                                             DISPUTED PROPOSED JURY
23        vs.                                INSTRUCTIONS**

24   ARISTA NETWORKS, INC.,                  Final Pretrial Conference: November 3, 2016
                                             Dep't:  Courtroom 3, 5th Floor
25              Defendant.                   Judge:  Hon. Beth Labson Freeman
                                             Trial Date:  November 21, 2016
26

27

28

1120944.03

**Preliminary Notes**

**1.  Jury Instruction Ordering**

Cisco contends that the order in which these jury instructions are currently presented is the most logical ordering.  Arista disagrees.  The parties are continuing to meet and confer on this issue.

**2.  Jury Instruction Numbering**

Instructions 26 and 87 are intentionally omitted.

1120944.03

1

**UNDISPUTED: Preliminary Instruction No. 1 re Duty Of The Jury**[1]

2      Members of the jury:  You are now the jury in this case.  It is my duty to instruct you on

3  the law.

4      At the end of the trial I will give you final instructions.  It is the final instructions that will

5  govern your duties.

6      It is your duty to find the facts from all the evidence in the case.  To those facts you will

7  apply the law as I give it to you.  You must follow the law as I give it to you whether you agree

8  with it or not.  And you must not be influenced by any personal likes or dislikes, opinions,

9  prejudices or sympathy.  That means that you must decide the case solely on the evidence before

10  you.  You will recall that you took an oath to do so.

11      Please do not read into these instructions or anything I may say or do that I have an

12  opinion regarding the evidence or what your verdict should be.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

---

[1]  Instruction No. 1.1B, *Ninth Circuit Manual of Model Civil Jury Instructions* (2007).

UNDISPUTED AND DISPUTED PROPOSED JURY INSTRUCTIONS

1120944.03

**DISPUTED: Cisco's Preliminary Instruction No. 2 re Claims And Defenses**[2]

To help you follow the evidence, I will give you a brief summary of the positions of the parties:

The plaintiff in this case is Cisco Systems, Incorporated, which I may refer to as "Cisco Systems" or just "Cisco."  The defendant in this case is Arista Networks, Incorporated, which I may refer to as "Arista Networks" or just "Arista."  Cisco and Arista both sell networking switches.

This case involves claims by Cisco against Arista for copyright infringement and patent infringement.

First, Cisco asserts that Arista infringed Cisco's copyrights by willfully copying original elements of Cisco's copyrighted user interface, and willfully copying Cisco's copyrighted user manuals and guides for that user interface.  Arista contends that it did not infringe Cisco's copyrights, and that its copying was a "fair use" under the law.

Second, Cisco asserts that Arista willfully infringed, and caused others to infringe, Cisco's U.S. Patent Number 7,047,526, which I and the parties will refer to as the "'526 Patent."  The '526 Patent is a patent for a software feature of Cisco's networking equipment.  Arista denies that it has infringed the '526 Patent and asserts that the patent is invalid.

---

[2]  Instruction No. 1.2, *Ninth Circuit Manual of Model Civil Jury Instructions* (2007).

1120944.03

1

**DISPUTED: Arista's Preliminary Instruction No. 2 re Claims And Defenses[3]**

2    To help you follow the evidence, I will give you a brief summary of the positions of the

3    parties:

4    The plaintiff in this case is Cisco Systems, Inc., which I will refer to as "Cisco," and the

5    defendant is Arista Networks, Inc., which I will refer to as "Arista."  This is a case involving

6    claims of copyright and patent infringement.  Cisco and Arista sell networking switches.  Cisco

7    asserts that Arista infringed Cisco's copyrights by copying certain elements of Cisco's user

8    interface and copying certain portions of Cisco's product manuals.  Cisco has the burden of

9    proving its claim of copyright infringement.  Arista contends that it does not infringe any of

10   Cisco's copyrights, that any use of the accused elements is a "fair use" under the law, and that

11   Cisco has misused its copyrights.  Arista has the burden of proof on its affirmative defenses of fair

12   use and copyright misuse.

13   Cisco also asserts that Arista has infringed United States Patent No. 7,047,526, which I and

14   the parties will refer to as the "'526 Patent."  Cisco has the burden of proving its claim of patent

15   infringement.  Arista denies that it has infringed the '526 Patent and asserts that the patent is

16   invalid.  Arista has the burden of proof on its affirmative defense of patent invalidity.

17

18

19

20

21

22

23

24

25

26

27

---

28   [3] Instruction No. 1.2, *Ninth Circuit Manual of Model Civil Jury Instructions* (2007).

1120944.03

**<u>UNDISPUTED: Preliminary Instruction No. 3 re Outline Of Trial[4]</u>**

[CISCO'S POSITION: The parties currently dispute whether Arista should be provided an opportunity to present evidence after Cisco rebuts Arista's defenses.  Arista has asked for that opportunity and Cisco opposes that request.  Cisco respectfully preserves its right to ask for the last sentence of the second paragraph of this instruction to be modified upon a finding by the Court on this issue in Cisco's favor.]

Trials proceed in the following way:  First, each side may make an opening statement.  An opening statement is not evidence.  It is simply an outline to help you understand what that party expects the evidence will show.  A party is not required to make an opening statement.

The plaintiff, Cisco, will then present evidence, and counsel for the defendant, Arista, may cross-examine.  Then Arista may present evidence, and counsel for Cisco may cross-examine.  Afterwards, one or both sides may then present rebuttal evidence to respond to the other party.

After the evidence has been presented, I will instruct you on the law that applies to the case and the attorneys will make closing arguments.

After that, you will go to the jury room to deliberate on your verdict.

---

[4] Instruction No. 1.18, *Ninth Circuit Manual of Model Civil Jury Instructions* (2007).

1120944.03

1

**UNDISPUTED: Preliminary Instruction No. 4 re What Is Evidence**[5]

2
The evidence you are to consider in deciding what the facts are consists of:

3
1.  The sworn testimony of any witness;

4
2.  The exhibits that are admitted into evidence;

5
3.  Any facts to which the lawyers have agreed; and

6
4.  Any facts that I may instruct you to accept as proved.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

_____

[5]  Instruction No. 1.6, *Ninth Circuit Manual of Model Civil Jury Instructions* (2007).

1120944.03

**<u>UNDISPUTED: Preliminary Instruction No. 5 re What Is Not Evidence</u>**[6]

Certain things are not evidence, and you may not consider them in deciding what the facts are.  I will list them for you:

1.    Arguments and statements by lawyers are not evidence.  The lawyers are not witnesses.  What they may say in their opening statements, closing arguments and at other times is intended to help you interpret the evidence, but it is not evidence.  If the facts as you remember them differ from the way the lawyers have stated them, your memory of them controls.

2.    Questions and objections by lawyers are not evidence.  Attorneys have a duty to their clients to object when they believe a question is improper under the rules of evidence.  You should not be influenced by the objection or by the court's ruling on it.

3.    Testimony or exhibits that are excluded or stricken, or that you are instructed to disregard, are not evidence and must not be considered.  In addition some evidence may be received only for a limited purpose; when I instruct you to consider certain evidence only for a limited purpose, you must do so and you may not consider that evidence for any other purpose.

4.    Anything you may see or hear when the court is not in session is not evidence.  You are to decide the case solely on the evidence received at the trial.

---

[6]  Instruction No. 1.7, *Ninth Circuit Manual of Model Civil Jury Instructions* (2007).

UNDISPUTED AND DISPUTED PROPOSED JURY INSTRUCTIONS

1120944.03

**UNDISPUTED: Preliminary Instruction No. 6 re Ruling On Objections**[7]

There are rules of evidence that control what can be received into evidence. When a lawyer asks a question or offers an exhibit into evidence and a lawyer on the other side thinks that it is not permitted by the rules of evidence, that lawyer may object. If I overrule the objection, the question may be answered or the exhibit received. If I sustain the objection, the question cannot be answered, and the exhibit cannot be received. Whenever I sustain an objection to a question, you must ignore the question and must not guess what the answer might have been.

Sometimes I may order that evidence be stricken from the record and that you disregard or ignore that evidence. That means when you are deciding the case, you must not consider the stricken evidence for any purpose.

---

[7] Instruction No. 1.10, *Ninth Circuit Manual of Model Civil Jury Instructions* (2007).

1120944.03

1

**UNDISPUTED: Preliminary Instruction No. 7 re Taking Notes[8]**

2    If you wish, you may take notes to help you remember the evidence.  If you do take notes,

3  please keep them to yourself until you go to the jury room to decide the case.  Do not let

4  notetaking distract you.  When you leave, your notes should be left in the courtroom.  No one will

5  read your notes.

6    Whether or not you take notes, you should rely on your own memory of the evidence.

7  Notes are only to assist your memory.  You should not be overly influenced by your notes or those

8  of other jurors.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

---

[8]  Instruction No. 1.15, *Ninth Circuit Manual of Model Civil Jury Instructions* (2007).

UNDISPUTED AND DISPUTED PROPOSED JURY INSTRUCTIONS

1120944.03

### **UNDISPUTED: Preliminary Instruction No. 8 re Conduct Of The Jury**[9]

I will now say a few words about your conduct as jurors.

First, keep an open mind throughout the trial, and do not decide what the verdict should be until you and your fellow jurors have completed your deliberations at the end of the case.

Second, because you must decide this case based only on the evidence received in the case and on my instructions as to the law that applies, you must not be exposed to any other information about the case or to the issues it involves during the course of your jury duty. Thus, until the end of the case or unless I tell you otherwise:

Do not communicate with anyone in any way and do not let anyone else communicate with you in any way about the merits of the case or anything to do with it. This includes discussing the case in person, in writing, by phone or electronic means, via email, text messaging, or any internet chat room, blog, website or application, including but not limited to Facebook, YouTube, Twitter, Instagram, LinkedIn, Snapchat, or any other forms of social media. This applies to communicating with your fellow jurors until I give you the case for deliberation, and it applies to communicating with everyone else including your family members, your employer, the media or press, and the people involved in the trial, although you may notify your family and your employer that you have been seated as a juror in the case, and how long you expect the trial to last. But, if you are asked or approached in any way about your jury service or anything about this case, you must respond that you have been ordered not to discuss the matter and report the contact to the court.

Because you will receive all the evidence and legal instruction you properly may consider to return a verdict:

Do not read, watch or listen to any news or media accounts or commentary about the case

---

[9] Instruction No. 1.12, *Ninth Circuit Manual of Model Civil Jury Instructions* (2007).

1    or anything to do with it; do not do any research, such as consulting dictionaries, searching

2    the Internet, or using other reference materials; and do not make any investigation or in any

3    other way try to learn about the case on your own.  Do not visit or view any place

4    discussed in this case, and do not use Internet programs or other devices to search for or

5    view any place discussed during the trial.  Also, do not do any research about this case, the

6    law, or the people involved—including the parties, the witnesses or the lawyers—until you

7    have been excused as jurors.  If you happen to read or hear anything touching on this case

8    in the media, turn away and report it to me as soon as possible.

9

10    These rules protect each party's right to have this case decided only on evidence that has

11    been presented here in court.  Witnesses here in court take an oath to tell the truth, and the

12    accuracy of their testimony is tested through the trial process.  If you do any research or

13    investigation outside the courtroom, or gain any information through improper communications,

14    then your verdict may be influenced by inaccurate, incomplete or misleading information that has

15    not been tested by the trial process.  Each of the parties is entitled to a fair trial by an impartial

16    jury, and if you decide the case based on information not presented in court, you will have denied

17    the parties a fair trial.  Remember, you have taken an oath to follow the rules, and it is very

18    important that you follow these rules.

19    A juror who violates these restrictions jeopardizes the fairness of these proceedings.  If any

20    juror is exposed to any outside information, please notify the court immediately.

21

22

23

24

25

26

27

28

-11-    Case No. 5:14-cv-5344-BLF

UNDISPUTED AND DISPUTED PROPOSED JURY INSTRUCTIONS

1120944.03

## **UNDISPUTED: Preliminary Instruction No. 9 re Publicity During Trial**[10]

If there is any news media account or commentary about the case or anything to do with it, you must ignore it.  You must not read, watch or listen to any news media account or commentary about the case or anything to do with it.  The case must be decided by you solely and exclusively on the evidence that will be received in the case and on my instructions as to the law that applies. If any juror is exposed to any outside information, please notify me immediately.

---

[10]  Ninth Circuit Model Jury Instruction, 1.13.

1

**<u>UNDISPUTED: Preliminary Instruction No. 10 re No Transcript Available To Jury</u>**[11]

2       I urge you to pay close attention to the trial testimony as it is given.  During deliberations

3   you will not have a transcript of the trial testimony.

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

---

[11]   Ninth Circuit Model Jury Instruction, 1.14.

1120944.03

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### **UNDISPUTED: Preliminary Instruction No. 11 re Bench Conferences And Recesses[12]**

From time to time during the trial, it may become necessary for me to talk with the attorneys out of the hearing of the jury, either by having a conference at the bench when the jury is present in the courtroom, or by calling a recess. Please understand that while you are waiting, we are working. The purpose of these conferences is not to keep relevant information from you, but to decide how certain evidence is to be treated under the rules of evidence and to avoid confusion and error.

Of course, we will do what we can to keep the number and length of these conferences to a minimum. I may not always grant an attorney's request for a conference. Do not consider my granting or denying a request for a conference as any indication of my opinion of the case or of what your verdict should be.

---

[12] Ninth Circuit Model Jury Instruction, 1.17.

1120944.03

**DISPUTED: Arista's Preliminary Instruction No. 12 re Analytic Dissection**

During the trial, you must keep in mind that copyright protection does not extend to all the elements of a copyrighted work.  Elements to which copyright protection extends are called "protected matter," and other elements are "unprotected matter."  Unprotected matter is not entitled to copyright protection and therefore may be copied by another author.[13]

[14]There are various types of unprotected matter.  They include:

1.   A portion of a work that is not original to the author;

2.   A portion of the work that is in the public domain;

3.   An idea, concept, principle, discovery, fact, actual event, process, or method expressed or described in a work;

4.   Content that is unprotected under the doctrine of merger, which applies if the idea underlying the copyrighted work can be expressed in only one way or only a few ways.[15]

5.   Content that is unprotected under the doctrine of scènes à faire, which protects the right of software developers to adopt elements of a program dictated by practical realities, such as by hardware standards and mechanical specifications, software standards and compatibility requirements, computer manufacturer design standards,

_____

[13] ABA Model Jury Instructions, Copyright, Trademark, and Trade Dress Litigation, Instruction 1.4.2.  There is no analogous Ninth Circuit Model Jury Instruction.

[14] ABA Model Jury Instructions, Copyright, Trademark, and Trade Dress Litigation, Instruction 1.4.3 (citing cases and treatises).  There is no analogous Ninth Circuit Model Jury Instruction.

[15] Ninth Circuit Model Jury Instruction 17.3 Supplemental Instruction for merger defense (citing *Apple Computer, Inc. v. Microsoft Corp.*, 35 F.3d 1435, 1444 (9th Cir. 1994); *CDN, Inc. v. Kapes*, 197 F.3d 1256, 1261 (9th Cir.1999)) (quoting *Ets-Hokin*, 225 F.3d 1068, 1082 (9th Cir. 2000) ("The merger doctrine "will not protect a copyrighted work from infringement if the idea underlying the copyrighted work can be expressed in only one way, lest there be a monopoly on the underlying idea.").  The phrase "or only a few ways" stems from ABA Model Jury Instruction 1.4.7 (Copyright, Trademark, and Trade Dress Litigation) (citing cases and treatises); *see also Oracle Am., Inc. v. Google Inc.*, 750 F.3d 1339, 1359 (Fed. Cir. 2014), cert. denied, 135 S. Ct. 2887, 192 L. Ed. 2d 948 (2015) ("[W]hen there are a limited number of ways to express an idea, the idea is said to 'merge' with its expression, and the expression becomes unprotected.").

1120944.03

target industry practices, the business practices and technical requirements of the end user, and standard computer programming practices[16]; or

_____

[16] *Oracle Am., Inc. v. Google Inc.*, 750 F.3d 1339, 1363 (Fed. Cir. 2014) ("In the computer context, the scene a faire doctrine denies protection to program elements that are dictated by external factors such as 'the mechanical specifications of the computer on which a particular program is intended to run' or 'widely accepted programming practices within the computer industry.") (internal quotation marks omitted); *Satava v. Lowry*, 323 F.3d 805, 807 (9th Cir. 2003) (The Copyright Act "denie[s] artists the exclusive right to ideas and standard elements in their works, thereby preventing them from monopolizing what rightfully belongs to the public . . . . [E]xpressions that are standard, stock, or common to a particular subject matter or medium are not protectable under copyright law."); *Apple Computer, Inc. v. Microsoft Corp.*, 35 F.3d 1435, 1444 (9th Cir. 1994) ("The doctrine of scenes a faire is closely related . . . . [W]hen similar features in a videogame are as a practical matter indispensable, or at least standard, in the treatment of a given idea, they are treated like ideas and are therefore not protected by copyright.") (internal citations, quotation marks, and alterations omitted);*Computer Associates Int'l, Inc. v. Altai, Inc.*, 982 F.2d 693, 709–10 (2d Cir. 1992) ("[A] programmer's freedom of design choice is often circumscribed by extrinsic considerations such as (1) the mechanical specifications of the computer on which a particular program is intended to run; (2) compatibility requirements of other programs with which a program is designed to operate in conjunction; (3) computer manufacturers' design standards; (4) demands of the industry being serviced; and (5) widely accepted programming practices within the computer industry."); *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 387 F.3d 522, 535 (6th Cir. 2004) ("In the computer-software context, the doctrine means that the elements of a program dictated by practical realities—e.g., by hardware standards and mechanical specifications, software standards and compatibility requirements, computer manufacturer design standards, target industry practices, and standard computer programming practices—may not obtain protection."); *Gates Rubber Co. v. Bando Chem. Indus., Ltd.*, 9 F.3d 823, 838 (10th Cir. 1993) ("The scenes a faire doctrine also excludes from protection those elements of a program that have been dictated by external factors.  In the area of computer programs these external factors may include: hardware standards and mechanical specifications, software standards and compatibility requirements, computer manufacturer design standards, target industry practices and demands, and computer industry programming practices.") (citing cases and Nimmer) (internal citations omitted); *Sega Enterprises Ltd. v. Accolade, Inc.*, 977 F.2d 1510, 1524 (9th Cir. 1992), as amended (Jan. 6, 1993) ("[C]omputer programs are, in essence, utilitarian articles—articles that accomplish tasks. As such, they contain many logical, structural, and visual display elements that are dictated by the function to be performed, by considerations of efficiency, or by external factors such as compatibility requirements and industry demands."); *Frybarger v. Int'l Bus. Machines Corp.*, 812 F.2d 525, 530 (9th Cir. 1987) (discussing *scenes a faire*: "[W]e believe that each of the similar features constitutes a basic idea of the videogames and, to the extent each feature is expressive, that the expression is as a practical matter indispensable, or at least standard, in the treatment of a given idea.") (internal quotation marks and alterations omitted); 4-13 Nimmer on Copyright § 13.03[F][3] (discussing "hardware standards," "software standards," "computer manufacturers' design standards," target industry practices," "the business practices and technical requirements of the end user," and "computer industry programming practices" in sub-sections [a]–[e]).

1    6. Parts of a computer program considered to be ideas, common programming

2     techniques, or that are required in order for the program to perform its function

3     efficiently and effectively given the computer hardware and other software with

4     which the program operates.

5   I will instruct you about the types of protected and unprotected matter in greater detail at

6 the end of the trial.

1

## **UNDISPUTED: Final Instruction No. 13 re Duty of Jury**[17]

2          Members of the Jury:  Now that you have heard all of the evidence and the arguments of

3   the attorneys, it is my duty to instruct you on the law that applies to this case.

4          A copy of these instructions will be sent to the jury room for you to consult during your

5   deliberations.

6          It is your duty to find the facts from all the evidence in the case.  To those facts you will

7   apply the law as I now give it to you.  You must follow the law as I give it to you whether you

8   agree with it or not.  And you must not be influenced by any personal likes or dislikes, opinions,

9   prejudices, or sympathy.  That means that you must decide the case solely on the evidence before

10  you.  You will recall that you took an oath to do so.

11         Please do not read into these instructions or anything that I may have said or done that I

12  have an opinion regarding the evidence or what your verdict should be.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

---

[17]  Instruction Nos. 1.1C, *Ninth Circuit Manual of Model Civil Jury Instructions* (2007).

1120944.03

1

## UNDISPUTED: Final Instruction No. 14 re What Is Evidence[18]

The evidence you are to decide the facts are consists of:

1.  The sworn testimony of any witness;

2.  The exhibits that are admitted into evidence;

3.  Any facts to which the lawyers have agreed; and

4.  Any facts that I have instructed you to accept as proved.

---

[18]  Instruction No. 1.6, *Ninth Circuit Manual of Model Civil Jury Instructions* (2007).

1120944.03

**<u>UNDISPUTED: Final Instruction No. 15 re What Is Not Evidence</u>**[19]

In reaching your verdict, you may consider only the testimony and exhibits received into evidence.  Certain things are not evidence, and you may not consider them in deciding what the facts are.

     1.     Arguments and statements by lawyers are not evidence.  The lawyers are not witnesses.  What they have said in their opening statements, will say in their closing arguments, and at other times is intended to help you interpret the evidence, but it is not evidence.  If the facts as you remember them differ from the way the lawyers have stated them, your memory of them controls.

     2.     Questions and objections by lawyers are not evidence.  Attorneys have a duty to their clients to object when they believe a question is improper under the rules of evidence.  You should not be influenced by the objection or by the court's ruling on it.

     3.     Testimony and exhibits that have been excluded or stricken, or that you have been instructed to disregard, are not evidence and must not be considered.  In addition some evidence may be received only for a limited purpose; when I give a limiting instruction, you must follow it.

     4.     Anything you may have seen or heard when the court was not in session is not evidence.   You are to decide the case solely on the evidence received at the trial.

---

[19] Instruction No. 1.7, *Ninth Circuit Manual of Model Civil Jury Instructions* (2007).

1120944.03

1    **<u>UNDISPUTED: Final Instruction No. 16 re Direct And Circumstantial Evidence</u>**[20]

2    Evidence may be direct or circumstantial.  Direct evidence is direct proof of a fact, such as

3    testimony by a witness about what that witness personally saw or heard or did.

4    Circumstantial evidence is proof of one or more facts from which you could find another

5    fact.  You should consider both kinds of evidence.  The law makes no distinction between the

6    weight to be given to either direct or circumstantial evidence.  It is for you to decide how much

7    weight to give to any evidence.

8    By way of example, if you wake up in the morning and see that the sidewalk is wet, you

9    may find from that fact that it rained during the night.  However, other evidence, such as a turned

10   on garden hose, may provide a different explanation for the presence of water on the sidewalk.

11   Therefore, before you decide that a fact has been proved by circumstantial evidence, you must

12   consider all the evidence in the light of reason, experience and common sense.

---

[20]    Instruction No. 1.9, *Ninth Circuit Manual of Model Civil Jury Instructions* (2007).

1120944.03

**<u>UNDISPUTED: Preliminary Instruction No. 17 re Stipulations Of Fact</u>**[21]

The parties have agreed to certain facts that will be read to you. You must therefore treat these facts as having been proved.

---

[21]  Ninth Circuit Model Jury Instruction, 2.2.

UNDISPUTED AND DISPUTED PROPOSED JURY INSTRUCTIONS

1120944.03

**UNDISPUTED: Cisco's Final Instruction No. 18 re Credibility Of Witnesses**[22]

In deciding the facts in this case, you may have to decide which testimony to believe and which testimony not to believe.  You may believe everything a witness says, or part of it, or none of it.

In considering the testimony of any witness, you may take into account:

1.   The opportunity and ability of the witness to see or hear or know the things testified to;

2.   The witness's memory;

3.   The witness's manner while testifying;

4.   The witness's interest in the outcome of the case, if any;

5.   The witness's bias or prejudice, if any;

6.   Whether other evidence contradicted the witness's testimony;

7.   The reasonableness of the witness's testimony in light of all the evidence; and

8.   Any other factors that bear on believability.


Sometimes a witness may say something that is not consistent with something else he or she said.  Sometimes different witnesses will give different versions of what happened.  People often forget things or make mistakes in what they remember.  Also, two people may see the same event but remember it differently.  You may consider these differences, but do not decide that testimony is untrue just because it differs from other testimony.

However, if you decide that a witness has deliberately testified untruthfully about something important, you may choose not to believe anything that witness said.  On the other hand, if you think the witness testified untruthfully about some things but told the truth about others, you may accept the part you think is true and ignore the rest.

The weight of the evidence as to a fact does not necessarily depend on the number of witnesses who testify.  What is important is how believable the witnesses were, and how much

---

[22]   Instruction No. 1.11, *Ninth Circuit Manual of Model Civil Jury Instructions* (2007).

1  weight you think their testimony deserves.

1120944.03

1

## **UNDISPUTED: Preliminary Instruction No. 19 re Expert Opinion**[23]

2

Some witnesses, because of education or experience, are permitted to state opinions and

3

the reasons for those opinions.

4

Such opinion testimony should be judged like any other testimony.  You may accept it or

5

reject it, and give it as much weight as you think it deserves, considering the witness's education

6

and experience, the reasons given for the opinion, and all the other evidence in the case.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

---

[23]  Instruction No. 2.13, *Ninth Circuit Manual of Model Civil Jury Instructions* (2007).

1120944.03

## DISPUTED: Cisco's Final Instruction No. 19 re Expert Opinion[24]

Some witnesses, because of education or experience, are permitted to state opinions and the reasons for those opinions.

Such opinion testimony should be judged like any other testimony. You may accept it or reject it, and give it as much weight as you think it deserves, considering the witness's education and experience, the reasons given for the opinion, and all the other evidence in the case.

---

[24]  Instruction No. 2.13, *Ninth Circuit Manual of Model Civil Jury Instructions* (2007).

1120944.03

### DISPUTED: Arista's Final Instruction No. 19 re Expert Opinion[25]

You are about to hear testimony from [name] who will testify to [his or her] opinions and the reasons for those opinions. This opinion testimony is allowed because of the education or experience of this witness.

The main reason we allow their testimony is because they may have specialized training and experience with insights that may help the jury understand a field of specialized knowledge and how it applies to the case at hand.  Usually, these witnesses are paid by their respective sides in litigation.  Two important caveats for experts are as follows:

No expert witness should ever vouch for which side's fact scenario is correct. No retained expert was present at the events in question.  None has firsthand knowledge.  Experts may rely on particular documents and testimony and may make an assumption that the document or testimony is correct and then give an opinion based on that assumption, but the opinion is only as good as the factual assumption and that foundational fact question is always for you, the jury, to resolve, not for the experts.  Put differently, experts should not invade the province of the jury by purporting to tell the jury which side's fact version is true.

Similarly, no expert witness should attempt to tell the jury what someone had in mind or was thinking.  The mental state and intent of the characters in our story on trial is for you to decide, not for the experts to decide.  It is, however, permissible for experts to quote testimony or documents and then to assume that the statements therein were accurate and then based thereon to apply their expertise to render an opinion.[26]

Such opinion testimony should be judged like any other testimony.  You may accept it or reject it, and give it as much weight as you think it deserves, considering the witness's education and experience, the reasons given for the opinion, and all the other evidence in the case.

---

[25]   Ninth Circuit Model Jury Instruction, 2.13.
[26]   *Oracle America, Inc. v. Google, Inc.*, No. 10-cv-03561-WHA, ECF 1981 (May 26, 2016) (Jury Instruction 13).

1  **<u>UNDISPUTED: Final Instruction No. 20 re Deposition In Lieu Of Live Testimony</u>**[27]

2       A deposition is the sworn testimony of a witness taken before trial. The witness is placed

3  under oath to tell the truth and lawyers for each party may ask questions. The questions and

4  answers are recorded. When a person is unavailable to testify at trial, and in certain other

5  situations, the deposition of that person may be used at the trial.

6       The deposition of [name of witness] was taken on [date]. Insofar as possible, you should

7  consider deposition testimony, presented to you in court in lieu of live testimony, in the same way

8  as if the witness had been present to testify.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27  _____

[27]  Ninth Circuit Model Jury Instruction, 2.4.

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### **UNDISPUTED: Final Instruction No. 21 re Charts and Summaries Not Received In Evidence[28]**

Certain charts and summaries not admitted into evidence have been shown to you in order to help explain the contents of books, records, documents, or other evidence in the case.  Charts and summaries are only as good as the underlying evidence that supports them.  You should, therefore, give them only such weight as you think the underlying evidence deserves.

---

[28]   Ninth Circuit Model Jury Instruction, 2.14.

1120944.03

**UNDISPUTED: Final Instruction No. 22 re Charts and Summaries Received In Evidence**[29]

Certain charts and summaries have been admitted into evidence to illustrate information brought out in the trial.  Charts and summaries are only as good as the testimony or other admitted evidence that supports them.  You should, therefore, give them only such weight as you think the underlying evidence deserves.

---

[29]    Ninth Circuit Model Jury Instruction, 2.15.

1120944.03

1

**UNDISPUTED: Final Instruction No. 23 re Burden Of Proof**[30]

2

When a party has the burden of proof on any claim or affirmative defense by

3

preponderance of the evidence, it means you must be persuaded by the evidence that the claim or

4

affirmative defense is more probably true than not true.  Preponderance of the evidence basically

5

means "more likely than not."[31]

6

You should base your decision on all of the evidence, regardless of which party presented

7

it.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

---

26

[30]   Instruction No. 1.3, *Ninth Circuit Manual of Model Civil Jury Instructions* (2007).

27

[31]   *Synopsis, Inc. v. ATopTech, Inc.*, No. 13-cv-2965 (N.D. Cal.), ECF No. 688 at 7  (Final

Instructions).

28

1120944.03

1

**DISPUTED: Cisco's Final Instruction No. 24 re Copyright—Defined[32]**

2    Copyright is the exclusive right to copy. This right to copy includes the exclusive rights

3    to, or authorize others to:

4    1.  Reproduce the copyrighted work in copies;

5    2.  Recast, transform, or adapt the work—that is, prepare derivative works based upon the

6        copyrighted work;

7    3.  Distribute copies of the copyrighted work to the public by sale or other transfer of

8        ownership; and

9    4.  Display publicly a copyrighted computer program.

10

11    It is the owner of a copyright who may exercise these exclusive rights. The term "owner"

12    includes the author of the work. In general, copyright law protects against reproduction,

13    adaptation, distribution, or display of identical or substantially similar copies of the owner's

14    copyrighted work without the owner's permission. An owner may enforce these rights to exclude

15    others in an action for copyright infringement.

16

17

18

19

20

21

22

23

24

25

26

27

28

---

[32] Instruction No. 17.1, *Ninth Circuit Manual of Model Civil Jury Instructions* (2007).

1120944.03

1

**<u>DISPUTED: Arista's Final Instruction No. 24 re Copyright—Defined</u>**[33]

2    Copyright is the exclusive right to copy.  This right to copy includes the exclusive rights

3  to:

4    1.    reproduce the copyrighted work;

5    2.    recast, transform, or adapt the work, that is prepare derivative works based upon the

6    copyrighted work;

7    3.    distribute copies of the copyrighted work to the public by sale or other transfer of

8    ownership;

9    It is the owner of a copyright who may exercise these exclusive rights. The term "owner"

10  includes the author of the work, an assignee, and an exclusive licensee.  In general, copyright law

11  protects against reproduction, adaptation, or public distribution of infringing copies of the owner's

12  copyrighted work without the owner's permission.  An owner may enforce these rights to exclude

13  others in an action for copyright infringement.

14

15

16

17

18

19

20

21

22

23

24

25

26

27

[33]    Ninth Circuit Model Jury Instruction 17.1.

28

**DISPUTED: Cisco's Final Instruction No. 25 re Copyright—Subject Matter[34]**

The copyrighted works involved in this trial are:

1.  Cisco's  user interface of its networking equipment; and

2.  Accompanying technical documentation.


Copyright protection of a computer program extends to its structure, sequence, organization, user interface, screen displays, and menu structures.[35]  Here, Cisco claims that Arista copied original elements of several versions of Cisco's copyrighted user interface.[36]  Cisco also claims that Arista copied Cisco's copyrighted technical documentation, such as user guides and manuals.[37]  These also are protected by copyright.

I will collectively refer to Cisco's user interface and technical documents together as "Cisco's works," the "copyrighted works," or simply "the works."

The copyrights in Cisco's versions of its user interface, including the accompanying technical documents, have been registered with the United States Copyright Office.

---

[34]   Instruction No. 17.2, *Ninth Circuit Manual of Model Civil Jury Instructions* (2007).
[35]   *Synopsis, Inc. v. ATopTech, Inc.*, No. 13-cv-2965 (N.D. Cal.), ECF No. 688 at 11 (Final Instructions); *Johnson Controls, Inc. v. Phoenix Control Sys, Inc.*, 886 F.2d 1173, 1175 (9th Cir. 1989) (a program's "structure, sequence and organization and user interface" are protectable "depend[ing] on the particular facts of each case"); *General Universal Sys., Inc. v. Lee*, 379 F.3d 131, 142 (5th Cir. 2004) (copyright protection of computer programs "extends … to a program's nonliteral elements, including its structure, sequence, organization, user interface, screen displays, and menu structures).
[36]   ECF No. 552-1.
[37]   ECF No. 552-2.

-34-                          Case No. 5:14-cv-5344-BLF
UNDISPUTED AND DISPUTED PROPOSED JURY INSTRUCTIONS

1120944.03

**DISPUTED: Arista's Final Instruction No. 25 re Copyright—Subject Matter**[38]

The works involved in this trial are computer programs, that is, sets of statements or instructions to be used directly or indirectly in a computer to bring about a certain result; and manuals describing the operation of computer programs.  You are instructed that a copyright may be obtained in computer programs and manuals.  Copyright protection in a computer program may extend to original and expressive non-literal elements of the computer program as well.

These works can be protected by copyright law. Only those parts of the works consisting of original works of authorship fixed in a tangible medium of expression from which it can be perceived, reproduced, or otherwise communicated, either directly or with the aid of a machine or device, are protected by the Copyright Act.

Copyright protection for an original work of authorship does not extend to any idea, procedure, process, system, method of operation, concept, principle, or discovery, regardless of the form in which it is described, explained, illustrated, or embodied.

---

[38]  Ninth Circuit Model Jury Instruction 17.2.

1    **DISPUTED: Cisco's Final Instruction No. 27 re Copyright—Ideas and Expressions[39]**

2    Copyright law allows the author of an original work to stop others from copying the way

3    or form the author used to express ideas in the author's work.[40]  Only the particular expression of

4    an idea can be copyrighted and protected.

5    Copyright law does not give the author the right to prevent others from copying or using

6    the underlying ideas contained in the work, such as any procedures, processes, systems, methods

7    of operation, concepts, principles or discoveries.  However, an original work—even one that

8    serves a function—is entitled to copyright protection as long as the author had multiple ways to

9    express the underlying idea.[41]

---

22    [39]  Instruction No. 17.3, *Ninth Circuit Manual of Model Civil Jury Instructions* (2007).

23    [40]  *Synopsis, Inc. v. ATopTech, Inc.*, No. 13-cv-2965 (N.D. Cal.), ECF No. 688 at 9 (Final

24    Instructions);  *Feist Publ'n, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 349 (1991) ("even a
directory that contains absolutely no protectible [sic] written expression, only facts, meets the

25    constitutional minimum for copyright protection if it features an original selection or
arrangement").

26    [41]  *Oracle Am., Inc. v. Google Inc.*, 750 F.3d 1339, 1367 (Fed. Cir. 2014) ("an original

27    work—even one that serves a function—is entitled to copyright protection as long as the author
had multiple ways to express the underlying idea").

1120944.03

1    **DISPUTED: Arista's Final Instruction No. 27 re Copyright—Ideas and Expressions**[42]

2          Copyright law allows the author of an original work to stop others from copying the

3    original expression in the author's work. Only the particular expression of an idea can be

4    copyrighted and protected. Copyright law does not give the author the right to prevent others from

5    copying or using the underlying ideas contained in the work, such as any procedures, processes,

6    systems, methods of operation, concepts, principles or discoveries.

7          Under this rule, copyright protection also does not extend to facts or functions described or

8    used in a work.  Therefore, the copyright in a factual or functional work can protect the author's

9    particular means of expressing the facts and functions used, but it does not prohibit another author

10   from using the same facts and functions.  This means that copyright will ordinarily extend to less

11   material in a factual or functional work than it would in a work of fiction.[43]

12         For example, if a book describes a set of functional instructions for performing CPR, the

13   copyright prevents anyone (but the owner) from duplicating the book itself, but everyone is still

14   free to read the book and to use the instructions to perform CPR, because those functional aspects

15   of the work are not protected by copyright. And everyone is entitled to write their own book about

16   performing the same functional steps so long as they do not plagiarize the non-functional,

17   protected aspects of the earlier book. Again, the main point is that the copyright protects the

18   particular expression composed by the author, but never protects ideas or functions.[44]

---

20      [42]   Ninth Circuit Model Jury Instruction 17.3.

21   [43] ABA Model Instruction 1.4.6 (Scope of Protection for Factual Works) (citing *Feist Publications, Inv. V. Rural Tel. Service Co.*, 499 U.S. 340 (1991); Harper & Row, Publishers, Inc.

22   v. Nation Enters., 471 U.S. 539, 563 (1985) ("The law generally recognizes a greater need to disseminate factual works than works of fiction or fantasy.")); *MiTek Holdings, Inc. v. Arce*

23   *Engineering Co., Inc.*, 89 F.3d 1548, 1556 & n.19 (11th Cir. 1996) (rejecting protection for command menu structure as a process consisting only of functional steps).

24   [44] *Hutchins v. Zoll Medical Corp.*, 492 F.3d 1377, 1384-85 (Fed. Cir. 2007) (finding it

25   "axiomatic" that there is no protection for "forms of expression dictated solely [by] functional considerations"; rejecting protection for "entirely functional" components of a set of instructions

26   for performing CPR); *Oracle America, Inc. v. Google, Inc.*, No. 10-cv-03561-WHA, ECF 1017 (April 30, 2012) (Jury Instruction 17) (giving example of a book describing strategy for playing a

27   card game as not protecting the strategy itself—a functional aspect: "The copyright confers

28   ownership over the particular expression of ideas in a work but it never confers ownership over

Case No. 5:14-cv-5344-BLF
UNDISPUTED AND DISPUTED PROPOSED JURY INSTRUCTIONS

1120944.03

1     Also, if an idea and the expression of that idea merge, the expression will only be protected

2   by copyright law if the alleged copying of that expression is nearly identical.  If the idea

3   underlying the copyrighted work can be expressed in only one way or only a few ways, the

4   expression of that idea will not constitute copyright infringement.[45]  This is known as the doctrine

5   of "merger."

6     In order to protect any ideas in the work from being copied, the author must secure some

7   other form of legal protection because ideas cannot be copyrighted.

8

9

10

11

12

13

14

15

16
_____

17   ideas themselves. For example, if a book describes a strategy for playing a card game, the
    copyright prevents anyone (but the owner) from duplicating the book itself but everyone is still
18   free to read the book and to use the strategy, for the idea set forth in the book, that is the strategy,
    is not protected by copyright. And, everyone is entitled to write their own book about the same
19   game and the same strategy so long as they do not plagiarize the earlier book. Again, the main
    point is that the copyright protects the particular expression composed by the author.  Another
20   statutory limitation on the scope of a copyright is that copyright never protects any procedure,
    process, system, method of operation, concept, principle, or discovery. Possibly such things can be
21   claimed under the patent system or by trade secret laws but they may not be claimed by
    copyright.")
22   [45] Ninth Circuit Model Jury Instruction 17.3 Supplemental Instruction for merger defense
23   (citing *Apple Computer, Inc. v. Microsoft Corp.*, 35 F.3d 1435, 1444 (9th Cir. 1994); *CDN, Inc. v.
    Kapes*, 197 F.3d 1256, 1261 (9th Cir.1999)) (quoting *Ets-Hokin*, 225 F.3d 1068, 1082 (9th Cir.
24   2000) ("The merger doctrine "will not protect a copyrighted work from infringement if the idea
    underlying the copyrighted work can be expressed in only one way, lest there be a monopoly on
25   the underlying idea."").  The phrase "or only a few ways" stems from ABA Model Jury Instruction
    1.4.7 (Copyright, Trademark, and Trade Dress Litigation) (citing cases and treatises); *see also
26   Oracle Am., Inc. v. Google Inc.*, 750 F.3d 1339, 1359 (Fed. Cir. 2014), cert. denied, 135 S. Ct.
    2887, 192 L. Ed. 2d 948 (2015) ("[W]hen there are a limited number of ways to express an idea,
27   the idea is said to 'merge' with its expression, and the expression becomes unprotected.").

28

1120944.03

1    **DISPUTED: Cisco's Final Instruction No. 28 re Copyright—Industry Standard Not**

2    **Relevant**

3    Copyright law gives the author of a copyrighted work the right to prevent others from

4    copying its original expression, even where that work has become so popular or widely used

5    within an industry that it has become the "industry standard."  Thus, whether Cisco's user

6    interface has become the preferred one for its users, or even an industry standard, has no bearing

7    on your determination on whether it, or any of its subparts, are protectable.[46]

8

9

10

11

12

13

14

15

16

17

18

19  _____

20    [46]    *Synopsis, Inc. v. ATopTech, Inc.*, No. 13-cv-2965 (N.D. Cal.), ECF No. 688 at 8  (Final
Instructions); *Oracle Am., Inc. v. Google Inc.*, 750 F.3d 1339, 1372 (Fed. Cir. 2014) (whether

21  Oracle's programming packages "had become the effective industry standard" or later became
"popular … has no bearing on the copyrightability of Oracle's work"); *Practice Mgmt. Info. Corp.*

22  *v. Am. Med. Ass'n*, 121 F.3d 516, 620 n.8 (9th Cir. 1997) (physician coding system copyrightable
even though government agency mandated its use, making it the "industry standard" ); *Kepner-*

23  *Tregoe, Inc. v. Leadership Software, Inc.*, 12 F.3d 527, 537 (5th Cir. 1994) ("protected
expression" of a "wildly successful" computer program "does not lose its protection simply

24  because it is widely disseminated"); *Warner Bros., Inc. v. Am. Broadcasting Cos.*, 720 F.2d 231,

25  242 (2d Cir. 1983) ("No matter how well known a copyrighted phrase becomes, its author is
entitled to guard against its appropriation to promote the sale of commercial products."); *see also*

26  *Oracle*, 750 F.3d at 1372 n.16 ("Notably, even when a patented method or system becomes an

27  acknowledged industry standard with acquiescence of the patent owner, any permissible use
generally requires payment of a reasonable royalty ….").

28  -39-    Case No. 5:14-cv-5344-BLF
UNDISPUTED AND DISPUTED PROPOSED JURY INSTRUCTIONS

**<u>DISPUTED:  Cisco's Final Instruction No. 29 re Copyright—Elements: Ownership and Copying</u>**[47]

Anyone who copies original expression from a copyrighted work during the term of the copyright without the owner's permission infringes the copyright.

Cisco has the burden of proving by a preponderance of the evidence that:

1.  Cisco is the owner of a valid copyright; and

2.  Arista copied original expression from the copyrighted work.


If you find that Cisco proved both of these elements, your verdict should be for Cisco on the issue of infringement.  If, on the other hand, you find that Cisco has failed to prove either of these elements, your verdict should be for Arista.

---

[47]  Instruction No. 17.4, *Ninth Circuit Manual of Model Civil Jury Instructions* (2007).

1120944.03

**DISPUTED:  Arista's Final Instruction No. 29 re Copyright—Elements: Ownership and Copying[48]**

On Cisco's copyright infringement claim, Cisco has the burden of proving by a preponderance of the evidence for each work or part of a work that Cisco asserts is protected by copyright that:

    1.  Cisco is the owner of a valid copyright;

    2.  Arista copied protected expression from the copyrighted work; and

    3.  Arista's accused works are virtually identical[49] to one or more of Cisco's copyrighted works.

I will now instruct you further concerning each of these elements of a copyright infringement claim.

---

[48]  Ninth Circuit Model Jury Instruction 17.4.

[49]  *Mattel, Inc. v. MGA Entm't, Inc.*, 616 F.3d 904, 913–14 (9th Cir. 2010), *as amended on denial of reh'g* (Oct. 21, 2010) ("If there's only a narrow range of expression (for example, there are only so many ways to paint a red bouncy ball on blank canvas), then copyright protection is 'thin' and a work must be 'virtually identical' to infringe"; intrinsic tests asks "whether an ordinary reasonable observer would consider the copyrighted and challenged works substantially similar (or virtually identical)" as appropriate); *Ets-Hokin v. Skyy Spirits, Inc.*, 323 F.3d 763, 766 (9th Cir. 2003); *Satava v. Lowry*, 323 F.3d 805, 812 (9th Cir. 2003) ("Satava possesses a thin copyright that protects against only virtually identical copying."); *Apple Computer, Inc. v. Microsoft Corp.*, 35 F.3d 1435, 1439 (9th Cir. 1994) ("When the range of protectable and unauthorized expression is narrow, the appropriate standard for illicit copying is virtual identity."); *Diamond Foods, Inc. v. Hottrix, LLC*, No. 14-CV-03162-BLF, 2016 WL 3880797, at *8 (N.D. Cal. July 18, 2016) ("If, on the other hand, the range of possible expression is narrow, the protection is  'thin' and a work must be 'virtually identical' to infringe.") (internal quotation marks omitted); 4-13 Nimmer on Copyright § 13.03[A][4].

**DISPUTED: Cisco's Final Instruction No. 30 re Copyright—Validity**[50]

Cisco is the owner of valid copyrights in its user interface and related documentation if Cisco proves by a preponderance of the evidence that:

1. Cisco's works are original; and

2. Cisco is the author or creator of the works.

---

[50]  Instruction No. 17.5, *Ninth Circuit Manual of Model Civil Jury Instructions* (2007).

1

**DISPUTED: Arista's Final Instruction No. 30 re Copyright—Validity**[51]

2     Cisco is the owner of a valid copyright in each of the operating systems registered by

3   Cisco with the Copyright Office and their associated documentation if Cisco proves by a

4   preponderance of the evidence that:

5     1.  Cisco's work is original; and

6     2.  Cisco is the author or creator of the work, or the author or creator assigned or

7         exclusively licensed the work to Cisco.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

[51]  Ninth Circuit Model Jury Instruction 17.5.

1120944.03

1

**DISPUTED: Cisco's Final Instruction No. 31 re Copyright—Copyright Registration**

2

**Certificates[52]**

3      A copyright owner may obtain a certificate of registration from the Copyright Office.  The

4  evidence in this case includes 26 certificates of copyright registration from the Copyright Office

5  for Cisco's copyrighted works.  If you find that a certificate was made within five years after first

6  publication of that work, you may presume that the work is original and copyrightable, and that

7  Cisco is the owner of that work.  That is, the existence of the certificate shifts the burden to Arista

8  concerning Cisco's ownership of a valid copyright.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26      [52]   Instruction No. 17.6, *Ninth Circuit Manual of Model Civil Jury Instructions* (2007); *United*

27  *Fabrics Int'l, Inc. v. C&J Wear, Inc.*, 630 F.3d 1255, 1257 (9th Cir. 2011); *Cosmetic Ideas, Inc. v.*

28  *IAC/Interactivecorp*, 606 F.3d 612, 619 (9th Cir. 2010).

1120944.03

**<u>DISPUTED: Arista's Final Instruction No. 31 re Copyright—Copyright Registration Certificates</u>**[53]

A copyright owner may obtain a certificate of registration from the Copyright Office.

The evidence in this case includes Exhibits ___, certificates of copyright registration from the Copyright Office. You are instructed that these certificates are sufficient to establish that there is a valid copyright in the operating systems and documentation described by the certificates.

However, the validity of the copyright in an entire work does not establish a copyright in each element of the work.[54]  Cisco bears the ultimate burden of proving by a preponderance of the evidence that the asserted elements of Cisco's works are original and protected by copyright.[55] You may consider the certificates as well as all of the evidence presented at trial in determining whether the asserted elements of Cisco's works are original.[56]

---

[53]  Ninth Circuit Model Jury Instruction 17.6.

[54] *Feist Publications, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 348 (1991) ("The mere fact that a work is copyrighted does not mean that every element of the work may be protected.").

[55] *Adobe Sys. Inc. v. Christenson*, 809 F.3d 1071, 1076 (9th Cir. 2015); *N. Coast Indus. v. Jason Maxwell, Inc.*, 972 F.2d 1031, 1033 (9th Cir. 1992) (The "presumption may be rebutted by a showing on the part of the defendant that the plaintiff's work is not original. Originality is the indispensable prerequisite for copyrightability."); *Walker & Zanger, Inc. v. Paragon Indus., Inc.*, 549 F. Supp. 2d 1168, 1183–84 (N.D. Cal. 2007) ("This evidence suffices to show that plaintiff's tiles are 'not original but copied from another's work'; therefore, the court finds that defendant has rebutted the statutory presumption, and the burden of proving validity shifts back to plaintiff.").

[56] *Adobe Sys. Inc. v. Christenson*, 809 F.3d 1071, 1076 (9th Cir. 2015); *Lamps Plus, Inc. v. Seattle Lighting Fixture Co.*, 345 F.3d 1140, 1144 (9th Cir. 2003); *N. Coast Indus. v. Jason Maxwell, Inc.*, 972 F.2d 1031, 1033 (9th Cir. 1992) (The "presumption may be rebutted by a showing on the part of the defendant that the plaintiff's work is not original. Originality is the indispensable prerequisite for copyrightability."); *Walker & Zanger, Inc. v. Paragon Indus., Inc.*, 549 F. Supp. 2d 1168, 1183 (N.D. Cal. 2007); *Universal Furniture Int'l, Inc. v. Collezione Europa USA, Inc.*, 618 F.3d 417, 430 (4th Cir. 2010), *as amended* (Aug. 24, 2010); 5 Patry on Copyright § 17:109.

1120944.03

1    **DISPUTED: Cisco's Final Instruction No. 32 re Copyright—Originality**[57]

2    An original work may include or incorporate elements taken from prior works. The

3    original parts of the plaintiff's work are the parts created:

4    1.   Independently by the work's author, that is, the author did not copy it from another

5         work; and

6    2.   By use of at least some minimal creativity.

7

8    In copyright law, the "original" part of a work need not be new or novel. The original selection

9    and arrangement of even the simplest of words or symbols can exhibit sufficient creativity to be

10   protectable.

11   Cisco's use of a process by which it exercised its judgment and expertise in selecting,

12   implementing or arranging its multi-word command expressions, modes and prompts, hierarchies,

13   command responses, and help descriptions render Cisco's user interface sufficiently creative for

14   copyright protection.[58]

15   Further, a work is "original" if it was independently created by the author rather than

16   copied from another source, even if someone else had previously created the same or similar

17   work.[59]

18

19

20   _____

21   [57]   Instruction No. 17.13, *Ninth Circuit Manual of Model Civil Jury Instructions* (2007).

22   [58]   ECF No. 482 at 12-13; *CDN Inc. v. Kapes*, 197 F.3d 1256, 1260 (9th Cir. 1999) (affirming
     district court's finding that "'[t]he evidence indicates that the plaintiff uses its considerable

23   expertise and judgment to determine how a multitude of variable factors impact upon available bid
     and ask price data. And it is this creative process which ultimately gives rise to the Plaintiff's 'best

24   guess' as to what the current 'bid' and 'ask' prices should be. As such, the Court finds that these
     prices were created, not discovered.'").

25   [59]   *Lucky Break Wishbone Corp. v. Sears Roebuck & Co.*, 373 F. App'x 752, 754 (9th Cir.

26   2010) ("To qualify for copyright protection, a work must be original to the author. Original, as the
     term is used in copyright, means only that the work was independently created by the author (as

27   opposed to copied from other works)...."); *i-Sys., Inc. v. Softwares, Inc.*, No. 02-cv-1951, 2004
     WL 742082, at *7 (D. Minn. Mar. 29, 2004).

28

1120944.03

**<u>DISPUTED: Arista's Final Instruction No. 32 re Copyright—Originality</u>**[60]

An original work may include or incorporate elements taken from prior works, works from the public domain, and/or works owned by others, with the owner's permission. The original parts of a work are the parts created:

1. independently by the author, that is, the author did not copy it from another work; and

2. by use of at least some minimal creativity.

---

[60] Ninth Circuit Model Jury Instruction 17.13.

1120944.03

**DISPUTED: Cisco's Final Instruction No. 33 re Copyright—Compilations**[61]

An owner is entitled to copyright protection of a compilation.  A compilation is a work formed by the collection and assembling of preexisting materials or of data that are selected, coordinated, or arranged in such a way that the resulting work as a whole constitutes an original work of authorship.

The owner of a compilation may enforce the right to exclude others in an action for copyright infringement.  Thus, even if you find that any particular expression in Cisco's user interface is not sufficiently original to warrant copyright protection, you may find that the collection, selection, coordination, or arrangement of Cisco's expressions are sufficiently original as a compilation.[62]

---

[61]  Instruction No. 17.15, *Ninth Circuit Manual of Model Civil Jury Instructions* (2007).
[62]  *CDN Inc. v. Kapes*, 197 F.3d 1256, 1259-60 (9th Cir. 1999).

1120944.03

1    **<u>DISPUTED: Arista's Final Instruction No. 33 re Copyright—Compilations</u>[63]**

2    An owner is entitled to copyright protection of a compilation. A compilation is a work

3    formed by the collection and assembling of preexisting materials or of data that are selected,

4    coordinated, or arranged in such a way that the resulting work as a whole constitutes an original

5    work of authorship.

6    The owner of a compilation may enforce the right to exclude others in an action for

7    copyright infringement.

8    However, facts and ideas are not protected, and may freely be copied by others.[64]  A

9    combination of unprotected elements, such as facts and ideas, is eligible for copyright protection

10   only if those elements are numerous enough and their selection and arrangement original enough

11   that their combination constitutes an original work of authorship.[65]  That is because the essence of

12   copyright is not to reward the labor of authors, but to promote the progress of science and useful

13   arts.[66]  For example, the typical arrangement of the white pages of a phone book—taking the

14   names, towns, and telephone numbers provided by subscribers and listing them alphabetically—is

15   not sufficiently original to merit copyright protection.[67]

16   Whether any asserted element of a work at issue in this case is protected as a compilation

17   must be determined by you based upon the evidence you have heard.

18

19   _____

20   [63]   Ninth Circuit Model Jury Instruction 17.15.

21   [64]  *Feist Publications, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 350 (1991) ("No matter how much original authorship the work displays, the facts and ideas it exposes are free for the taking.")

22   (internal quotation marks and alterations omitted).

23   [65]  Ninth Circuit Model Jury Instruction 17.15 Comment, citing and quoting *Satava v.Lowry*, 323 F.3d 805, 811 (9th Cir.2003) ("[A] combination of unprotectable elements is eligible for copyright protection only if those elements are numerous enough and their selection and

24   arrangement original enough that their combination constitutes an original work of authorship."); *Feist Publications, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 349 (1991).

25   [66]  *Feist Publications, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 349 (1991) ("the essence of

26   copyright . . . .  is not to reward the labor of authors, but to promote the Progress of Science and useful Arts.") (quoting U.S. Const., Art. I, § 8, cl. 8) (internal quotation marks and alterations

27   omitted).

28   [67]  *Feist Publications, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 350–63 (1991).

## DISPUTED: Cisco's Final Instruction No. 34 re Copyright—Authorship & Work Made For Hire[68]

The creator of an original work is called the author of that work.  An author originates or "masterminds" the original work, controlling the whole work's creation and causing it to come into being.

A copyright owner is entitled to exclude others from copying a work made for hire.  A work made for hire is one that is prepared by an employee and is within the scope of employment.

A work is made for hire within the scope of employment if:

1.  It is the kind of work the employee is employed to create;

2.  It occurs substantially within the authorized time and space limits; and

3.  It is made, at least in part, for the purpose of serving the employer.


The employer is considered to be the author of the work and owns the copyright.  All works created during the course of employment are works made for hire.[69]

A copyright owner of a work made for hire may enforce the right to exclude others in an action for copyright infringement.

---

[68]   Instruction Nos. 17.7 & 17.10, *Ninth Circuit Manual of Model Civil Jury Instructions* (2007).

[69]   Instruction No. 17.10 (comment), *Ninth Circuit Manual of Model Civil Jury Instructions* (2007).

1120944.03

**DISPUTED: Cisco's Final Instruction No. 34 re Copyright—Work Made For Hire**[70]

A copyright owner is entitled to exclude others from copying a work made for hire. A work made for hire is one that is prepared by an employee and is within the scope of employment.

A work is made for hire within the scope of employment if:

1.  It is the kind of work the employee is employed to create;

2.  It occurs substantially within the authorized time and space limits; and

3.  It is made, at least in part, for the purpose of serving the employer.


The employer is considered to be the author of the work and owns the copyright.

A copyright owner of a work made for hire may enforce the right to exclude others in an action for copyright infringement.

---

[70]  Instruction Nos. 17.7 & 17.10 (and comment), *Ninth Circuit Manual of Model Civil Jury Instructions* (2007).

1

## **DISPUTED: Cisco's Final Instruction No. 35 re Copyright—Derivative Work**[71]

2

   A copyright owner is entitled to exclude others from creating derivative works based on

3 the owner's copyrighted work.  The term "derivative work" refers to a work based on one or more

4 pre-existing works, such as a translation, musical arrangement, dramatization, fictionalization,

5 motion picture version, sound recording, art reproduction, abridgment, condensation, or any other

6 form in which a work may be recast, transformed, or adapted.  Accordingly, the owner of a

7 copyrighted work is entitled to exclude others from recasting, transforming, or adapting the

8 copyrighted work without the owner's permission.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

---

[71]  Instruction No. 17.14, *Ninth Circuit Manual of Model Civil Jury Instructions* (2007).

1120944.03

1    **DISPUTED: Cisco's Final Instruction No. 36 re Copyright—Copying (Direct Evidence)[72]**

2    Cisco has the burden of proving by a preponderance of the evidence that Arista copied

3    original elements from Cisco's copyrighted works.  There are two ways that Cisco can meet its

4    burden.

5    First, Cisco may establish Arista's copying through direct evidence,[73] such as admissions

6    from Arista, witness testimony, or a striking similarity between the works, such as the existence of

7    common errors in both Cisco's and Arista's works.[74]

---

18    [72]   Instruction No. 17.16, *Ninth Circuit Manual of Model Civil Jury Instructions* (2007).

19    [73]   *Brocade Commc'ns Sys. v. A10 Networks, Inc.*, 873 F. Supp. 2d 1192, 1218-19 (N.D. Cal.
2012) ("In the absence of direct evidence of copying, such as an admission, 'copying' may be
shown by proving access to the copyrighted work and substantial similarity between the works ....
[I]n this case, Brocade has submitted direct evidence of copying. Thus, the substantial similarity
test is not applicable."); *Rottlund Co. v. Pinnacle Corp.*, 452 F.3d 726, 732 (8th Cir. 2006) (direct
evidence of copying includes "party admissions, witness accounts of the physical act of copying,
and common errors in the works of plaintiffs and the defendants").

23    [74]   *Three Boys Music Corp. v. Bolton*, 212 F.3d 477, 485 (9th Cir. 2000) ("[I]n the absence of
any proof of access, a copyright plaintiff can still make out a case of infringement by showing that
the songs were 'strikingly similar.'"); *Brocade Commc'ns Sys. v. A10 Networks, Inc.*, 873 F. Supp.
2d 1192, 1218-19 (N.D. Cal. 2012) ("In the absence of direct evidence of copying, such as an
admission, 'copying' may be shown by proving access to the copyrighted work and substantial
similarity between the works .... [I]n this case, Brocade has submitted direct evidence of copying.
Thus, the substantial similarity test is not applicable."); *Rottlund Co. v. Pinnacle Corp.*, 452 F.3d
726, 732 (8th Cir. 2006) (direct evidence of copying includes "party admissions, witness accounts
of the physical act of copying, and common errors in the works of plaintiffs and the defendants").

1120944.03

**DISPUTED: Cisco's Final Instruction No. 37 re Copyright—Copying (Indirect Evidence)**[75]

Alternatively, even absent direct evidence, Cisco may show that Arista copied from Cisco's copyrighted works through indirect evidence by proving by a preponderance of the evidence that:

1. Arista had access to Cisco's copyrighted works and;

2. There are substantial similarities between Arista's works and the original elements of Cisco's works.

---

[75] Instruction No. 17.16, *Ninth Circuit Manual of Model Civil Jury Instructions* (2007); *Brocade Commc'ns Sys. v. A10 Networks, Inc.*, 873 F. Supp. 2d 1192, 1218-19 (N.D. Cal. 2012) ("In the absence of direct evidence of copying, … 'copying' may be shown by proving access to the copyrighted work and substantial similarity between the works.").

1

### DISPUTED: Arista's Final Instruction No. 37 re Copyright—Copying[76]

2

[Arista's Disputed Instruction 37 is addressed to Cisco's Disputed Instructions 36 and 37]

3

4    Cisco has the burden of proving that Arista copied protected elements from Cisco's

5    copyrighted works. Copying may be established by direct or circumstantial evidence.[77]  Cisco may

6    show that Arista copied from the works by proving by a preponderance of the evidence that Arista

7    had access to Cisco's copyrighted works and that Arista's works are virtually identical[78] to Cisco's

8    copyrighted works.[79]

9    _____

10    [76]   Ninth Circuit Model Jury Instruction 17.16.
      [77]   ABA Model Jury Instruction 1.5.2 (Copyright, Trademark, and Trade Dress Litigation)

11    ("Copying may be established, as is the case with other facts, by direct or circumstantial
      evidence").

12    [78] *Mattel, Inc. v. MGA Entm't, Inc.*, 616 F.3d 904, 913–14 (9th Cir. 2010), *as amended on

13    denial of reh'g* (Oct. 21, 2010) ("If there's only a narrow range of expression (for example, there
      are only so many ways to paint a red bouncy ball on blank canvas), then copyright protection is

14    'thin' and a work must be 'virtually identical' to infringe"; intrinsic tests asks "whether an
      ordinary reasonable observer would consider the copyrighted and challenged works substantially

15    similar (or virtually identical)" as appropriate); *Ets-Hokin v. Skyy Spirits, Inc.*, 323 F.3d 763, 766
      (9th Cir. 2003); *Satava v. Lowry*, 323 F.3d 805, 812 (9th Cir. 2003) ("Satava possesses a thin

16    copyright that protects against only virtually identical copying."); *Apple Computer, Inc. v.
      Microsoft Corp.*, 35 F.3d 1435, 1439 (9th Cir. 1994) ("When the range of protectable and

17    unauthorized expression is narrow, the appropriate standard for illicit copying is virtual identity.");
      *Diamond Foods, Inc. v. Hottrix, LLC*, No. 14-CV-03162-BLF, 2016 WL 3880797, at *8 (N.D.

18    Cal. July 18, 2016) ("If, on the other hand, the range of possible expression is narrow, the
      protection is 'thin' and a work must be 'virtually identical' to infringe.") (internal quotation

19    marks omitted); 4-13 Nimmer on Copyright § 13.03[A][4].
      [79] *Dream Games of Arizona, Inc. v. PC Onsite*, 561 F.3d 983, 988 (9th Cir. 2009) ("To allow

20    the possibility of such a finding [of infringement], the jury must be allowed to see *the complete

21    work*.") (emphasis added); *Apple Computer, Inc. v. Microsoft Corp.*, 35 F.3d 1435, 1443 (9th Cir.
      1994) ("Depending on the degree of protection, the court must set the appropriate standard for a

22    subjective comparison of the works to determine whether, *as a whole*, they are sufficiently similar
      to support a finding of illicit copying."); (emphasis added); *id.* at 1446 ("Under *Harper House* and

23    *Frybarger*, there can be no infringement unless *the works* are virtually identical.") (emphasis
      added); *Newton v. Diamond*, 388 F.3d 1189, 1195 (9th Cir. 2004) ("This focus on the sample's

24    relation to the plaintiff's work *as a whole* embodies the fundamental question in any infringement
      action") (emphasis added); *MiTek Holdings, Inc. v. Arce Eng'g Co.*, 89 F.3d 1548, 1560 (11th Cir.

25    1996) (in a substantial similarity case: "*Nimmer*, in using the term "substantial similarity," is
      referring to the program as a whole, not constituent elements of the program. The district court

26    concluded that, in TrussPro, four of the five protected ACES elements were substantially similar.
      However, its ultimate conclusion was that since these elements lacked significance in the ACES

27

28

1    **DISPUTED: Cisco's Final Instruction No. 38 re Copyright—Access**[80]

2       To establish indirect evidence of copying, Cisco must prove by a preponderance of the

3   evidence that Arista had access to Cisco's copyrighted works.  You may find that Arista had

4   access to Cisco's works if Arista had a reasonable opportunity to view, read, or copy Cisco's

5   works before Arista's work was created.

6       If you find that there is a striking similarity between Cisco's and Arista's works, then

7   Cisco need not prove Arista had access to Cisco's works.[81]

8

9

10

11

12

13

14

15   _____

16   program *as a whole*, the two programs *as a whole* were not substantially similar; therefore, there
     was no finding of infringement.") (Ital. in original); *Diamond Foods, Inc. v. Hottrix, LLC*, No. 14-
17   CV-03162-BLF, 2016 WL 3880797, at *8 (N.D. Cal. July 18, 2016) ("If, on the other hand, the
     range of possible expression is narrow, the protection is  'thin' and *a work* must be 'virtually
18   identical' to infringe.") (emphasis added) (internal quotation marks omitted); *Antonick v. Elec.
     Arts Inc.*, No. C 11-1543 CRB, 2014 WL 245018, at *6 (N.D. Cal. Jan. 22, 2014) (jury
19   instructions in virtual identity case involving videogames "required the jury to compare 'the works
     to determine whether, *as a whole*, they are sufficiently similar to support a finding of illicit
20   copying . . . .  The works must be compared as a whole because the relevant inquiry is 'whether a
     substantial portion of the protectable material in the plaintiff's work was appropriated—not
21   whether a substantial portion of defendant's work was derived from plaintiff's work' . . . .  [C]ourts
     are to focus on the significance of the protected expression to plaintiff's entire work.") (emphasis
22   added) (second quotation marks quoting *Newton v. Diamond*, 388 F.3d 1189, 1195 (9th Cir.
     2004)); *see also id.* at 6–7 (reversing jury verdict of infringement because plaintiff failed to
23   present evidence of plaintiff's work as a whole, disabling jury from making proper comparison for
     infringement intrinsic test).
24
        [80]  Instruction No. 17.17, *Ninth Circuit Manual of Model Civil Jury Instructions* (2007); *Sid &
25   Marty Krofft Television Prods., Inc. v. McDonald's Corp.*, 562 F.2d 1157, 1172 (9th Cir. 1977).
26      [81]  *Three Boys Music Corp. v. Bolton*, 212 F.3d 477, 483 (9th Cir. 2000) (in absence of any
     proof of access, copyright plaintiff can still make out case of infringement by showing that songs
27   were "strikingly similar").

28

1120944.03

**<u>DISPUTED: Arista's Final Instruction No. 38 re Copyright—Access</u>**[82]

You may find that Arista had access to Cisco's work if Arista had a reasonable opportunity to view, read, or copy Cisco's work before Arista's work was created.

---

[82] Ninth Circuit Model Jury Instruction 17.17.

UNDISPUTED AND DISPUTED PROPOSED JURY INSTRUCTIONS

1120944.03

1      **<u>DISPUTED: Cisco's Final Instruction No. 39 re Copyright—Substantial Similarity</u>**

2      [Cisco's Disputed Instruction 39 is addressed to Arista's Disputed Instructions 40 – 45]

3

4      Cisco claims that certain elements of its user interface and documentation are substantially

5  similar to elements of Arista's user interface and documentation.

6      Substantial similarity is evaluated by comparing the original elements of Cisco's user

7  interface and documentation to Arista's user interface and documentation to see if Arista's works

8  are substantially similar to original elements of Cisco's copyrighted works.[83]

9      In determining whether Cisco's and Arista's user interface and documentation are

10  substantially similar, both the qualitative and quantitative similarities should be taken into

11  account.[84]  Substantial similarity does not require the works to be identical or even almost

12  identical.[85]  For example, if Arista had a high degree of access to Cisco's copyrighted user

13  interface, less overall similarity is required.[86]

---

15    [83]  *Apple Comp., Inc. v. Microsoft Corp.*, 35 F.3d 1435, 1446 (9th Cir. 1994); *Engineering Dynamics, Inc. v. Structural Software, Inc.*, 46 F.3d 408, 410 (5th Cir. 1995).

16    [84]  *Newton v. Diamond*, 388 F.3d 1189, 1195 (9th Cir. 2004) ("Substantiality is measured by considering the qualitative and quantitative significance of the copied portion in relation to the plaintiff's work as a whole.").

18    [85]  *Landsberg v. Scrabble Crossword Game Players, Inc.,* 736 F.2d 485, 488 (9th Cir. 1984) ("[A] new work incorporating that idea need not be a verbatim copy or close paraphrase of an earlier work to infringe that work.  A resemblance in details of setting, incident, or characterization that falls short of close paraphrase may be enough to establish substantial similarity and infringement."); *Kepner-Tregoe, Inc. v. Leadership Software*, 12 F.3d 527, 533 (5th Cir. 1994) (although defendant's modified work was not identical to plaintiff's, the modifications did not dispel the similarity of expression shared).

22    [86]  Instruction No. 17.16, *Ninth Circuit Manual of Model Civil Jury Instructions* (2007) (Supplemental Instruction); *Benay v. Warner Bros. Entm't, Inc.*, 607 F.3d 620, 625 (9th Cir. 2010) ("Under the 'inverse ratio' rule, if a defendant had access to a copyrighted work, the plaintiff may show infringement based on a lesser degree of similarity between the copyrighted work and the allegedly infringing work."); *Swirsky v. Carey*, 376 F.3d 841, 844-45 (9th Cir. 2004) (when high degree of access is shown, lower standard of proof of substantial similarity is required and noting that this burden is carried by plaintiff); *Rice v. Fox Broad. Co.*, 330 F.3d 1170, 1178 (9th Cir. 2003) (under "inverse ratio rule," court requires lower standard of proof of substantial similarity when high degree of access is shown and "a prominent factor" in using inverse ratio analysis is "concession of access by the defendant to the plaintiff's copyrighted work"); *Three Boys Music Corp. v. Bolton*, 212 F.3d 477, 488 (9th Cir. 2000) (rule "requires a lesser showing of substantial

1    Even if the amount of similar material is quantitatively small, if it is qualitatively

2 important, you may properly find substantial similarity.[87]  For example, a small portion of Cisco's

3 user interface may nonetheless give it distinctive features or may make it especially creative or

4 desirable.  In such a case, a finding of substantial similarity may be appropriate.[88]

5

6

7

8

9

10

11

12

13

14

15

16  _____

17  similarity if there is a strong showing of access" but noting that "[w]e have never held…the
    inverse … [that] a weak showing of access requires a stronger showing of substantial similarity.").

18    [87]  *Swirsky v. Carey*, 376 F.3d 841, 852 (9th Cir. 2004) ("even if a copied portion be relatively
    small in proportion to the entire work, if qualitatively important, the finder of fact may properly

19  find substantial similarity"); *Baxter v. MCA, Inc*., 812 F.2d 421, 425 (9th Cir. 1987) ("Even if a
    copied portion be relatively small in proportion to the entire work, if qualitatively important, the

20  finder of fact may properly find substantial similarity."); *Worth v. Selchow & Righter Co*., 827
    F.2d 569, 570 n. 1 (9th Cir. 1987) ("[A] determination of the qualitative importance of the

21  material to the plaintiff's work is more significant than a quantitative calculation of the portion
    allegedly appropriated by the defendant."); *Apple Computer, Inc. v. Microsoft, Corp*., 821 F. Supp.

22  616, 624 (N.D. Cal. 1993), aff'd, 35 F.3d 1435 (9th Cir. 1994) ("quantitatively insignificant

23  infringement may be substantial if the material is qualitatively important to plaintiff's work")  .

24    [88]  *Oracle Am., Inc. v. Google Inc.*, 750 F.3d 1339, 1379 (Fed. Cir. 2014) (affirming jury
    verdict of copyright infringement where defendant copied nine lines out of 2.8 million lines of

25  code because the copied material was "qualitatively significant"); *Brocade Commc'ns Sys. v. A10
    Networks, Inc*., No. 10-cv-3428, 2013 WL 831528, at *8 (N.D. Cal. Jan. 10, 2013) (affirming jury

26  verdict of copyright infringement and explaining that "[a]lthough [defendant] points to the ratio
    between the 145 lines of infringing code and the 10 million lines of code in [plaintiff's] product,

27  that ratio fails to account for the evidence suggesting the importance of the implementing code to
    [plaintiff's] software.").

28

**DISPUTED: Arista's Final Instruction No. 40 re Copyright—Infringement: Extrinsic Test; Instrinsic Test[89]**

If you find that Arista copied elements of Cisco's works, you must next determine whether Arista's copying was sufficient to constitute copyright infringement.[90]

Cisco must prove that Arista copied a protected part of a copyrighted work owned by Cisco, and that Arista's work is virtually identical[91] to one or more of Cisco's copyrighted works. So, there are two elements Cisco must prove to carry its burden on infringement, namely copying of a protected part and virtual identity between the works as a whole.[92]  These are issues for you

---

[89]   Ninth Circuit Model Jury Instruction 17.18 does not provide an instruction.  The Committee recommends that the Court and counsel craft instructions based on relevant authorities.

[90]   Ninth Circuit Model Jury Instruction 17.0 (detailing jury steps in determining infringement); ABA Model Jury Instruction 1.5.8 (Copyright, Trademark, and Trade Dress Litigation); Patry on Copyright § 9:59–9:60; 4-13 Nimmer on Copyright § 13.03[A]; *Mattel, Inc. v. MGA Entm't, Inc.*, 616 F.3d 904, 913 (9th Cir. 2010), *as amended on denial of reh'g* (Oct. 21, 2010) (post-verdict decision discussing jury's task following dissection); *Benay v. Warner Bros. Entm't*, 607 F.3d 620, 624 (9th Cir. 2010) (discussing extrinsic  and intrinsic tests); *Apple Computer, Inc. v. Microsoft Corp.*, 35 F.3d 1435, 1442 (9th Cir. 1994) (same).

[91]   *Mattel, Inc. v. MGA Entm't, Inc.*, 616 F.3d 904, 913–14 (9th Cir. 2010), *as amended on denial of reh'g* (Oct. 21, 2010) ("If there's only a narrow range of expression (for example, there are only so many ways to paint a red bouncy ball on blank canvas), then copyright protection is 'thin' and a work must be 'virtually identical' to infringe"; intrinsic tests asks "whether an ordinary reasonable observer would consider the copyrighted and challenged works substantially similar (or virtually identical)" as appropriate); *Ets-Hokin v. Skyy Spirits, Inc.*, 323 F.3d 763, 766 (9th Cir. 2003); *Satava v. Lowry*, 323 F.3d 805, 812 (9th Cir. 2003) ("Satava possesses a thin copyright that protects against only virtually identical copying."); *Apple Computer, Inc. v. Microsoft Corp.*, 35 F.3d 1435, 1439 (9th Cir. 1994) ("When the range of protectable and unauthorized expression is narrow, the appropriate standard for illicit copying is virtual identity."); *Diamond Foods, Inc. v. Hottrix, LLC*, No. 14-CV-03162-BLF, 2016 WL 3880797, at *8 (N.D. Cal. July 18, 2016) ("If, on the other hand, the range of possible expression is narrow, the protection is  'thin' and a work must be 'virtually identical' to infringe.") (internal quotation marks omitted); 4-13 Nimmer on Copyright § 13.03[A][4].

[92]   *Dream Games of Arizona, Inc. v. PC Onsite*, 561 F.3d 983, 988 (9th Cir. 2009) ("To allow the possibility of such a finding [of infringement], the jury must be allowed to see *the complete work*.") (emphasis added); *Apple Computer, Inc. v. Microsoft Corp.*, 35 F.3d 1435, 1443 (9th Cir. 1994) ("Depending on the degree of protection, the court must set the appropriate standard for a subjective comparison of the works to determine whether, *as a whole*, they are sufficiently similar to support a finding of illicit copying.") (emphasis added); *id.* at 1446 ("Under *Harper House* and *Frybarger*, there can be no infringement unless *the works* are virtually identical.") (emphasis added); *Newton v. Diamond*, 388 F.3d 1189, 1195 (9th Cir. 2004) ("This focus on the sample's relation to the plaintiff's work *as a whole* embodies the fundamental question in any infringement

UNDISPUTED AND DISPUTED PROPOSED JURY INSTRUCTIONS

1120944.03

1  to decide. [93]

2

3

4

5

6

7
_____

8

9  action") (emphasis added); *MiTek Holdings, Inc. v. Arce Eng'g Co.*, 89 F.3d 1548, 1560 (11th Cir.
   1996) (in a substantial similarity case: "*Nimmer*, in using the term "substantial similarity," is
10 referring to the program as a whole, not constituent elements of the program. The district court
   concluded that, in TrussPro, four of the five protected ACES elements were substantially similar.
11 However, its ultimate conclusion was that since these elements lacked significance in the ACES
   program *as a whole*, the two programs *as a whole* were not substantially similar; therefore, there
12 was no finding of infringement.") (Ital. in original); *Diamond Foods, Inc. v. Hottrix, LLC*, No. 14-
   CV-03162-BLF, 2016 WL 3880797, at *8 (N.D. Cal. July 18, 2016) ("If, on the other hand, the
13 range of possible expression is narrow, the protection is 'thin' and *a work* must be 'virtually
   identical' to infringe.") (emphasis added) (internal quotation marks omitted); *Antonick v. Elec.
14 Arts Inc.*, No. C 11-1543 CRB, 2014 WL 245018, at *6 (N.D. Cal. Jan. 22, 2014) (jury
   instructions in virtual identity case involving videogames "required the jury to compare 'the works
15 to determine whether, *as a whole*, they are sufficiently similar to support a finding of illicit
   copying . . . .  The works must be compared as a whole because the relevant inquiry is 'whether a
16 substantial portion of the protectable material in the plaintiff's work was appropriated—not
   whether a substantial portion of defendant's work was derived from plaintiff's work' . . . .  [C]ourts
17 are to focus on the significance of the protected expression to plaintiff's *entire work*.") (emphasis
   added) (second quotation marks quoting *Newton v. Diamond*, 388 F.3d 1189, 1195 (9th Cir.
18 2004)); *see also id.* at 6–7 (reversing jury verdict of infringement because plaintiff failed to
   present evidence of plaintiff's work as a whole, disabling jury from making proper comparison for
19 infringement intrinsic test).

20 [93] *Oracle America, Inc. v. Google, Inc.*, No. 10-cv-03561-WHA, ECF 1017 (April 30, 2012)
   (Jury Instruction 24) ("Oracle must also prove that Google copied all or a protected part of a
21 copyrighted work owned by Oracle and that the amount of copying was not de minimis. So, there
   are two elements Oracle must prove to carry its burden on infringement, namely copying of a
22 protected part and the part copied was more than de minimis when compared to the work as a
   whole. These are issues for you to decide."); Ninth Circuit Model Jury Instruction 17.0 (detailing
23 jury steps in determining infringement); ABA Model Jury Instruction 1.5.8 (Copyright,
   Trademark, and Trade Dress Litigation); Patry on Copyright § 9:59–9:60; 4-13 Nimmer on
24 Copyright § 13.03[A]; *Mattel, Inc. v. MGA Entm't, Inc.*, 616 F.3d 904, 913 (9th Cir. 2010), *as
   amended on denial of reh'g* (Oct. 21, 2010) (post-verdict decision discussing jury's task following
25 dissection); *Benay v. Warner Bros. Entm't*, 607 F.3d 620, 624 (9th Cir. 2010) (discussing extrinsic
   and intrinsic tests); *Apple Computer, Inc. v. Microsoft Corp.*, 35 F.3d 1435, 1442 (9th Cir. 1994)
26 (same).

27

28

## **DISPUTED: Arista's Final Instruction No. 41 re Copyright—Protected And Unprotected Matter[94]**

Copyright protection does not extend to all the elements of a copyrighted work. Elements to which copyright protection extends are called "protected matter," and other elements are "unprotected matter." Unprotected matter is not entitled to copyright protection and therefore may be copied by another author.

Usually the literal text of a work is protected matter, but there are some circumstances in which it is unprotected. The non-literal elements of a work may, depending on the circumstances, be protected or unprotected matter. All of the asserted elements in this case are non-literal elements, except for the asserted elements of the manuals.

---

[94]  ABA Model Jury Instructions, Copyright, Trademark, and Trade Dress Litigation, Instruction 1.4.2. There is no analogous Ninth Circuit Model Jury Instruction.

1    **<u>DISPUTED: Arista's Final Instruction No. 42 re Copyright—Types Of Unprotected</u>**

2    **<u>Matter</u>**[95]

3    There are various types of unprotected matter.  They include:

4        1.   A portion of a work that is not original to the author;

5        2.   A portion of the work that is in the public domain;

6        3.   An idea, concept, principle, discovery, fact, actual event, process, or method

7           expressed or described in a work;

8        4.   A particular means of expression that is unprotected under the doctrine of merger,

9           which I will explain in a moment.

10       5.   Content that is unprotected under the doctrine of scènes à faire, which I will explain

11          in a moment; or

12       6.   Parts of a computer program considered to be ideas, common programming

13          techniques, or that are required in order for the program to perform its function

14          efficiently and effectively given the computer hardware and other software with

15          which the program operates.

16   I will describe these types of unprotected matter further in other instructions.

---

[95]   ABA Model Jury Instructions, Copyright, Trademark, and Trade Dress Litigation, Instruction 1.4.3 (citing cases and treatises).  There is no analogous Ninth Circuit Model Jury Instruction.

**DISPUTED: Arista's Final Instruction No. 43 re Copyright—Particular Unprotected Elements**

I have already instructed you about types of unprotected matter that can be legally copied, such as portions of works that are not original to the author, ideas, concepts, and principles, expressions that are merged with an idea, and scènes à faire. In addition to any types of Cisco's work that you find unprotected, the following aspects of Cisco's works are not protected by copyright law, and you may not consider them when comparing the works as a whole to determine whether they are virtually identical[96]:

    1.    [to be determined in analytic dissection]

---

[96] *Dream Games of Arizona, Inc. v. PC Onsite*, 561 F.3d 983, 989 (9th Cir. 2009) ("Consideration of the whole work is proper under *Apple Computer* as long as 'the unprotectable elements [are] identified.'") (quoting *Apple Computer*, 35 F.3d at 1447); *Harper House, Inc. v. Thomas Nelson, Inc.*, 889 F.2d 197, 207–08 (9th Cir. 1989) (ordering new trial where "the jury instructions covering copyright infringement liability did not adequately distinguish between protectable and unprotectable material" because "given the negative connotations to 'copying,' there was an obvious risk of an improper verdict for plaintiffs, and a need for further instructions to protect legitimate activity and avoid the suffocation of competition."); *Apple Computer, Inc. v. Microsoft Corp.*, 35 F.3d 1435, 1446 (9th Cir. 1994) ("[T]he party claiming infringement may place no reliance upon any similarity in expression resulting from unprotectable elements . . . . [T]he unprotectable elements have to be identified, or filtered, before the works can be considered as a whole.") (internal quotation marks omitted); *Swirsky v. Carey*, 376 F.3d 841, 845 (9th Cir. 2004), *as amended on denial of reh'g* (Aug. 24, 2004) ("Because the requirement is one of substantial similarity [or virtual identity where thin copyright protection applies] to *protected* elements of the copyrighted work, it is essential to distinguish between the protected and unprotected material in a plaintiff's work.") (Ital. in original).

1  **DISPUTED: Arista's Final Instruction No. 44 re Copyright—Comparing Works As A**

2  **Whole For Virtual Identity[97]**

3      If you find that Arista copied any elements of Cisco's works that are protected, you must

4  next compare the works as a whole to determine whether Arista's works and Cisco's works are

5  virtually identical,[98] leaving out of your consideration any elements that you have found are

6  unprotected, or that I have instructed you are unprotected.[99]

7  _____

8    [97]   Ninth Circuit Model Jury Instruction 17.18 does not provide an instruction.  The Committee recommends that the Court and counsel craft instructions based on relevant authorities.

9    [98] *Dream Games of Arizona, Inc. v. PC Onsite*, 561 F.3d 983, 988 (9th Cir. 2009) ("To allow
10  the possibility of such a finding [of infringement], the jury must be allowed to see *the complete work*.") (emphasis added); *Apple Computer, Inc. v. Microsoft Corp.*, 35 F.3d 1435, 1443 (9th Cir.
11  1994) ("Depending on the degree of protection, the court must set the appropriate standard for a subjective comparison of the works to determine whether, *as a whole*, they are sufficiently similar
12  to support a finding of illicit copying.") (emphasis added); *id.* at 1446 ("Under *Harper House* and *Frybarger*, there can be no infringement unless *the works* are virtually identical.") (emphasis
13  added); *Newton v. Diamond*, 388 F.3d 1189, 1195 (9th Cir. 2004) ("This focus on the sample's relation to the plaintiff's work *as a whole* embodies the fundamental question in any infringement
14  action") (emphasis added); *MiTek Holdings, Inc. v. Arce Eng'g Co.*, 89 F.3d 1548, 1560 (11th Cir. 1996) (in a substantial similarity case: "*Nimmer*, in using the term "substantial similarity," is
15  referring to the program as a whole, not constituent elements of the program. The district court concluded that, in TrussPro, four of the five protected ACES elements were substantially similar.
16  However, its ultimate conclusion was that since these elements lacked significance in the ACES program as a whole, the two programs as a whole were not substantially similar; therefore, there
17  was no finding of infringement."); *Diamond Foods, Inc. v. Hottrix, LLC*, No. 14-CV-03162-BLF, 2016 WL 3880797, at *8 (N.D. Cal. July 18, 2016) ("If, on the other hand, the range of possible
18  expression is narrow, the protection is  'thin' and *a work* must be 'virtually identical' to infringe.")
19  (emphasis added) (internal quotation marks omitted); *Antonick v. Elec. Arts Inc.*, No. C 11-1543 CRB, 2014 WL 245018, at *6 (N.D. Cal. Jan. 22, 2014) (jury instructions in virtual identity case
20  involving videogames "required the jury to compare 'the works to determine whether, *as a whole*, they are sufficiently similar to support a finding of illicit copying . . . .  The works must be
21  compared as a whole because the relevant inquiry is 'whether a substantial portion of the protectable material in the plaintiff's work was appropriated—not whether a substantial portion of
22  defendant's work was derived from plaintiff's work' . . . .  [C]ourts are to focus on the significance of the protected expression to plaintiff's entire work.") (emphasis added) (second quotation marks
23  quoting *Newton v. Diamond*, 388 F.3d 1189, 1195 (9th Cir. 2004)); *see also id.* at 6–7 (reversing jury verdict of infringement because plaintiff failed to present evidence of plaintiff's work as a
24  whole, disabling jury from making proper comparison for infringement intrinsic test).

25    [99] *Dream Games of Arizona, Inc. v. PC Onsite*, 561 F.3d 983, 989 (9th Cir. 2009)
26  ("Consideration of the whole work is proper under *Apple Computer* as long as 'the unprotectable elements [are] identified.'") (quoting *Apple Computer*, 35 F.3d at 1446); *Harper House, Inc. v.*
27  *Thomas Nelson, Inc.*, 889 F.2d 197, 207–08 (9th Cir. 1989) (ordering new trial where "the jury

28

Case No. 5:14-cv-5344-BLF

1120944.03

1    If you find that the works as a whole are not virtually identical, then you cannot find that

2    Arista infringed Cisco's copyrights.  If you find that the works as a whole are virtually identical,

3    then you may find that Arista infringed Cisco's copyrights, subject to Arista's affirmative defenses

4    of fair use, copyright misuse, abandonment, and waiver.[100]

---

instructions covering copyright infringement liability did not adequately distinguish between protectable and unprotectable material" because "given the negative connotations to 'copying,' there was an obvious risk of an improper verdict for plaintiffs, and a need for further instructions to protect legitimate activity and avoid the suffocation of competition."); *Apple Computer, Inc. v. Microsoft Corp.*, 35 F.3d 1435, 1446 (9th Cir. 1994) ("[T]he party claiming infringement may place no reliance upon any similarity in expression resulting from unprotectable elements . . . . [T]he unprotectable elements have to be identified, or filtered, before the works can be considered as a whole.") (internal quotation marks omitted); *Swirsky v. Carey*, 376 F.3d 841, 845 (9th Cir. 2004), *as amended on denial of reh'g* (Aug. 24, 2004) ("Because the requirement is one of substantial similarity [or virtual identity where thin copyright protection applies] to protected elements of the copyrighted work, it is essential to distinguish between the protected and unprotected material in a plaintiff's work.").

[100] *Mattel, Inc. v. MGA Entm't, Inc.*, 616 F.3d 904, 913 (9th Cir. 2010), *as amended on denial of reh'g* (Oct. 21, 2010) (post-verdict decision discussing jury's task following dissection); *Benay v. Warner Bros. Entm't*, 607 F.3d 620, 624 (9th Cir. 2010) (discussing extrinsic and intrinsic tests); *Apple Computer, Inc. v. Microsoft Corp.*, 35 F.3d 1435, 1442 (9th Cir. 1994) (same).

-66-    Case No. 5:14-cv-5344-BLF

1120944.03

1    **DISPUTED: Arista's Final Instruction No. 45 re Copyright—Works As A Whole Defined**[101]

2         It is my job to isolate and identify for you the "work as a whole."  You must take my

3    identification as controlling if and when this comes up in your deliberations.

4         For purposes of this case, I have determined that Arista's "work as a whole" is [to be

5    determined in analytic dissection].  I have also determined that Cisco's "work as a whole" is [to be

6    determined in analytic dissection].

---

[101]  *Oracle America, Inc. v. Google, Inc.*, No. 10-cv-03561-WHA, ECF 1017 (April 30, 2012)
(Jury Instruction 29) ("It is my job to isolate and identify for you the 'work as a whole.' You must
take my identification as controlling if and when this comes up in your deliberations . . . .  For
purposes of this case, I have determined that the 'work as a whole' means the following:").

1120944.03

1    **<u>DISPUTED: Cisco's Final Instruction No. 46 re Copyright—Affirmative Defense: Fair</u>**

2    **<u>Use</u>**[102]

3    [Cisco's Disputed Instruction 46 is addressed to Arista's Disputed Instructions 47 – 59]

4

5    One who is not the owner of the copyright may use the copyrighted work in a reasonable

6    way under the circumstances without the consent of the copyright owner if it would advance the

7    public interest.  Such use of a copyrighted work is called a fair use.  The owner of a copyright

8    cannot prevent others from making a fair use of the owner's copyrighted work.

9    Arista has the burden of proving its fair use defense by a preponderance of the evidence.[103]

10    In determining whether Arista's use of the Cisco's copyrighted works was fair, you should

11    consider the following factors:

12        1.  First, the purpose and character of the use, including whether such use is of a

13            commercial nature or is for nonprofit educational purposes.  This factor involves two

14            sub-issues: (a) whether Arista's use is "transformative" or simply supplants Cisco's

15            work, and (b) whether Arista's use is commercial in nature.[104]  A use is

16            "transformative" only where it adds something new, with a further purpose or different

17            character, altering the first with new expression, meaning or message.[105]  But copying a

18    _____

19        [102]    Instruction No. 17.21, *Ninth Circuit Manual of Model Civil Jury Instructions* (2007);
*Synopsis, Inc. v. ATopTech, Inc.*, No. 13-cv-2965 (N.D. Cal.), ECF No. 688 at 14 (Final

20    Instructions).

21        [103]    Instruction No. 17.21, *Ninth Circuit Manual of Model Civil Jury Instructions* (2007);
*Monge v. Maya Magazines, Inc*., 688 F.3d 1164, 1170 (9th Cir. 2012) ("This affirmative defense

22    … [is] aimed at whether the defendant's use was fair. As with all affirmative defenses, [] the
defendant bears the burden of proof.").

23        [104]    *Wall Data Inc. v. Los Angeles Cty. Sheriff's Dep't*, 447 F.3d 769, 778 (9th Cir. 2006)
("We first consider the nature of the work: whether the new work is transformative or simply

24    supplants the original work, and whether the work is commercial in nature.").

25        [105]    *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 579 (1994) (infringing work is
transformative if it "adds something new, with a further purpose or different character, altering the

26    first with new expression, meaning or message."); *Wall Data Inc. v. Los Angeles Cty. Sheriff's
Dep't*, 447 F.3d 769, 778 (9th Cir. 2006) ("A use is considered transformative only where a

27    defendant changes a plaintiff's copyrighted work or uses the plaintiff's copyrighted work in a
different context such that the plaintiff's work is transformed into a new creation").

28

1120944.03

work to use it for an identical or competing purpose as the original, or in a manner that tends to supplant or supersede the original, is not transformative.[106]  Further, a use is not transformative where the user makes no alteration to the expressive content or message of the original.[107]  As to the second sub-factor, where a defendant's use was for a commercial purpose, this factor weighs against fair use.[108]

2.  The second factor is the nature of the copyrighted work.

3.  The third factor is the amount and substantiality of the portion used in relation to the copyrighted work as a whole.  This factor evaluates both the quantity of the work taken and the quality and importance of the portion taken.[109]  Copying a qualitatively important portion of a copyrighted work weighs against fair use even if the copied portion is quantitatively small.[110]

---

[106]  *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 578 (1994) (inquiry is whether the new work merely supersedes or supplants the original); *Wall Data Inc. v. Los Angeles Cty. Sheriff's Dep't*, 447 F.3d 769, 778 (9th Cir. 2006) ("The Sheriff's Department created exact copies of RUMBA's software.  It then put those copies to the identical purpose as the original software.  Such a use cannot be considered transformative.  *See Kelly v. Arriba Soft Corp.,* 336 F.3d 811, 819 (9th Cir. 2003) (finding that reproducing music CDs in computer MP3 format is not a transformative use because the resulting use of the copyrighted work was the same as the original use, i.e., entertainment). In cases where " 'use is for the same intrinsic purpose as[the copyright holder's] ... such use seriously weakens a claimed fair use.' " *Worldwide Church of God v. Philadelphia Church of God, Inc.,* 227 F.3d 1110, 1117 (9th Cir. 2000) (quoting *Weissmann v. Freeman,* 868 F.2d 1313, 1324 (2d Cir. 1989)).").

[107]  *Seltzer v. Green Day, Inc.*, 725 F.3d 1170, 1177 (9th Cir. 2013) (no transformation where defendant "makes no alteration to the expressive content or message of the original work.").

[108]  *Los Angeles News Serv. v. Reuters Television Int'l, Ltd.*, 149 F.3d 987, 994 (9th Cir. 1998) ("every commercial use of copyrighted material is presumptively an unfair exploitation of the monopoly privilege that belongs to the owner of the copyright.").

[109]  *Monge v. Maya Magazines, Inc*., 688 F.3d 1164, 1178 (9th Cir. 2012) ("The third statutory factor in the fair use analysis is 'the amount and substantiality of the portion used in relation to the copyrighted work as a whole.' We examine both the quantitative and qualitative aspects of the portion of the copyrighted material taken.").

[110]  *Worth v. Selchow & Righter Co*., 827 F.2d 569, 570 n. 1 (9th Cir. 1987) ("[A] determination of the qualitative importance of the material to the plaintiff's work is more significant than a quantitative calculation of the portion allegedly appropriated by the defendant."); *Apple Computer, Inc. v. Microsoft, Corp*., 821 F. Supp. 616, 624 (N.D. Cal. 1993), *aff'd*, 35 F.3d 1435 (9th Cir. 1994) ("quantitatively insignificant infringement may be substantial if the material is qualitatively important to plaintiff's work").

1     4.   The fourth factor is the effect on the potential market for or value of the copyrighted

2          work, including the effect on the potential market for or value of derivative works.

3          You should consider not only the extent of market harm caused by Arista's copying,

4          but also whether unrestricted and widespread conduct of the sort engaged in by Arista

5          would result in a substantially adverse impact on the potential market for the original

6          work.[111]  Where a defendant's use substitutes for the original, this factor weights

7          against fair use.[112]

8     5.   Finally, you may consider the propriety of Arista's conduct, including whether its use

9          of the copyrighted work was in bad faith.[113]

10    If you find that Arista proved by a preponderance of the evidence that it made a fair use of

11  Cisco's work, your verdict should be for Arista.

---

[111]  *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 590 (1994).
[112]  *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 590 (1994).
[113]  *Los Angeles News Serv. v. KCAL-TV Channel 9*, 108 F.3d 1119, 1122 (9th Cir. 1997);
*Fisher v. Dees*, 794 F.2d 432, 437 (9th Cir. 1986).

1120944.03

1    **DISPUTED: Arista's Final Instruction No. 47 re Copyright—Affirmative Defense: Fair Use**

2    **Generally[114]**

3        Now, I will explain what fair use means under the law.

4        One policy behind our copyright law, of course, is to protect the compositions of authors

5    from exploitation by others.  When it applies, however, the right of fair use permits the use of

6    copyrighted works by others without the copyright owner's consent.[115]  The policy behind the

7    right of fair use is to encourage and allow the development of new ideas that build on earlier ones,

8    thus providing a counterbalance to the copyright policy to protect creative works.[116]  Since the

9    doctrine of fair use is an equitable rule of reason, no generally accepted definition is possible, and

10    each case raising the question must be decided on its own facts.[117]  And, in this dispute between

11    Cisco and Arista, that question falls to you for decision.

12

13

14

15

16        [114]  *Oracle America, Inc. v. Google, Inc.*, No. 10-cv-03561-WHA, ECF 1981 (May 26, 2016)

17    (Jury Instruction 21).

18    [115] *See Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1163 (9th Cir. 2007) ("The fair
use defense permits the use of copyrighted works without the copyright owner's consent under

19    certain situations. The defense encourages and allows the development of new ideas that build on
earlier ones, thus providing a necessary counterbalance to the copyright law's goal of protecting

20    creators' work product.").

21    [116] *See Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1163 (9th Cir. 2007) ("The fair use
defense permits the use of copyrighted works without the copyright owner's consent under certain

22    situations. The defense encourages and allows the development of new ideas that build on earlier
ones, thus providing a necessary counterbalance to the copyright law's goal of protecting creators'

23    work product."); *Sony v. Bleem,* 214 F.3d 1022, 1026 (9th Cir. 2000) ("The four [fair use] factors
are to be considered together in light of the purposes of copyright, not in isolation."); *Campbell v.*

24    *Acuff-Rose Music, Inc.*, 510 U.S. 569, 579 (1994); *Sega Enters. Ltd. v. Accolade, Inc.*, 977 F.2d
1510, 1524-26 (9th Cir. 1992); *Sony Computer Entertainment, Inc. v. Connectix Corp.*, 203 F.3d

25    596, 607 (9th Cir.), cert. denied, 531 U.S. 871 (2000).

26    [117] *Sony v. Bleem,* 214 F.3d 1022, 1026 (9th Cir. 2000) ("The process of applying these fair
use factors to the facts of any particular scenario calls for case-by-case analysis, and the task is not

27    to be simplified with bright-line rules. The four factors are to be considered together in light of the
purposes of copyright, not in isolation.") (internal quotations and citations omitted).

28

1120944.03

**DISPUTED: Arista's Final Instruction No. 48 re Copyright—Affirmative Defense: Fair Use: Factors To Consider**[118]

Under the Copyright Act, one who is not the owner of the copyright may use the copyrighted work in a reasonable way under the circumstances without the consent of the copyright owner if it would advance the public interest. Such use of a copyrighted work is called a fair use. The owner of a copyright cannot prevent others from making a fair use of the owner's copyrighted work.  In determining whether the use made of the work was fair, the Copyright Act direct you to consider the following factors:

1.  The purpose and character of the use, including whether the use is of a commercial nature or is for nonprofit educational purposes;

2.  The nature of the copyrighted work;

3.  The amount and substantiality of the portion used in relation to the copyrighted work as a whole; and

4.  The effect of the use upon the potential market for or value of the copyrighted work;

As you balance these factors, bear in mind that fair use is appropriate where a reasonable copyright owner would have consented to the use, i.e., where the custom or public policy at the time would have defined the use as reasonable.[119]  If you find that Arista has proved by a preponderance of the evidence that it made a fair use of Cisco's work, your verdict should be for Arista.

---

[118]   Ninth Circuit Model Jury Instruction, 17.21. *See also Sony v. Bleem,* 214 F.3d 1022, 1026 (9th Cir. 2000); *Campbell v. Acuff-Rose Music, Inc*., 510 U.S. 569, 579 (1994); *Sega Enters. Ltd. v. Accolade, Inc*., 977 F.2d 1510, 1524-26 (9th Cir. 1992); *Sony Computer Entertainment, Inc. v. Connectix Corp.*, 203 F.3d 596, 607 (9th Cir.), cert. denied, 531 U.S. 871 (2000).

[119]   Order on Daubert Motions at 3-4 (quoting *Wall Data Inc. v. Los Angeles Cty. Sheriff's Dep't*, 447 F.3d 769, 778 (9th Cir. 2006)).

**DISPUTED: Arista's Final Instruction No. 49 re Copyright—Affirmative Defense: Fair Use: First Factor[120]**

The first statutory factor concerns the purpose and character of the accused use.[121]

This factor includes these issues: (1) whether and to what extent the accused use serves a commercial purpose, which weighs against fair use, versus a nonprofit educational purpose, which weighs in favor of fair use,[122] and (2) whether and to what extent the accused work is "transformative," which supports fair use.[123]   Although the Act does not explicitly use the word "transformative," our courts uniformly hold that the first statutory factor calls for an evaluation whether and to what extent the purpose and character of the accused work is transformative.

---

[120]   *Oracle America, Inc. v. Google, Inc.*, No. 10-cv-03561-WHA, ECF 1981 (May 26, 2016) (Jury Instruction 23).

[121] 17 U.S.C. § 107(1); *Oracle America, Inc. v. Google, Inc.*, 750 F.3d 1339, 1374 (Fed. Cir. 2014) ("The first factor in the fair use inquiry involves "the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes.") (internal quotations and citations omitted).

[122] *Oracle America, Inc. v. Google, Inc.*, 750 F.3d 1339, 1375 (Fed. Cir. 2014) ("Analysis of the first factor also requires inquiry into the commercial nature of the use. Use of the copyrighted work that is commercial tends to weigh against a finding of fair use.") (internal quotations and citations omitted).

[123] 17 U.S.C. § 107; *Oracle America, Inc. v. Google, Inc.*, 750 F.3d 1339, 1374 (Fed. Cir. 2014); *L.A. News Serv. v. CBS Broad., Inc.*, 305 F.3d 924, 939 (9th Cir. Cal. 2002) ("[T]he most important component of the inquiry into the 'purpose and character of the use' is the question whether the allegedly fair use was 'transformative,' i.e., whether the second use 'adds something new, with a further purpose or different character, altering the first with new expression, meaning, or message.' 'The more transformative the new work, the less will be the significance of other factors, like commercialism, that may weigh against a finding of fair use.'") (internal citations omitted); *Seltzer v. Green Day, Inc.*, 725 F.3d 1170, 1175-76 (9th Cir. Cal. 2013) ("The Supreme Court has stated that the central purpose of [the first fair use] factor is to see whether and to what extent the new work is transformative.") (internal citations and quotations omitted).

1120944.03

**DISPUTED: Arista's Final Instruction No. 50 re Copyright—Affirmative Defense: Fair Use:**

**First Factor: Definition Of Transformative[124]**

What does transformative mean? A use is transformative if it adds something new, with a further purpose or different character, altering the first use with new expression, meaning, or message rather than merely superseding the objects of the original creation.[125] New works have been found transformative when they use copyrighted material for purposes distinct from the purpose of the original material. A use is considered transformative only where a defendant changes a plaintiff's copyrighted work or, where the copyrighted elements remain unchanged from the original, a defendant uses them in a different context such that the original work is transformed into a new creation.[126] A work is not transformative where the user makes little or no alteration to

---

[124]  *Oracle America, Inc. v. Google, Inc.*, No. 10-cv-03561-WHA, ECF 1981 (May 26, 2016) (Jury Instruction 24).

[125] *Oracle America, Inc. v. Google, Inc.*, 750 F.3d 1339, 1374 (Fed. Cir. 2014) ("A use is 'transformative' if it 'adds something new, with a further purpose or different character, altering the first with new expression, meaning or message.' The critical question is 'whether the new work merely supersede[s] the objects of the original creation . . . or instead adds something new.'") (internal citations omitted); *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 579 (1994) (use is transformative when it "adds something new, with a further purpose or different character, altering the first with new expression, meaning or message.") (emphasis added).

[126] *Oracle America, Inc. v. Google, Inc.*, 750 F.3d 1339, 1374 (Fed. Cir. 2014) ("A use is 'transformative' if it 'adds something new, with a further purpose or different character, altering the first with new expression, meaning or message.' The critical question is 'whether the new work merely supersede[s] the objects of the original creation ... or instead adds something new.'") (internal citations omitted); *Monge v. Maya Magazines, Inc.*, 688 F.3d 1164, 1176 (9th Cir. 2012) (use transformative when it incorporates elements of prior work "into a broader work"); *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1165 (9th Cir. 2007) ("The fact that Google incorporates the entire Perfect 10 image into the search engine results does not diminish the transformative nature of Google's use. As the district court correctly noted, we determined in Kelly that even making an exact copy of a work may be transformative so long as the copy serves a different function than the original work."); *Wall Data Inc. v. L.A. County Sheriff's Dept.*, 447 F.3d 769, 778 (9th Cir. 2006) (use can be transformative where defendant changes plaintiff's work or uses it in a different context); *Kelly v. Arriba Soft Corp.*, 336 F.3d 811, 818-19 (9th Cir. 2002) (finding use of "exact images" transformative and fair use); *Seltzer v. Green Day, Inc.*, 725 F.3d 1170, 1176 (9th Cir. 2013) (use is transformative if it "adds value to the original—if the quoted matter is used as raw material, transformed in the creation of new information, new aesthetics, new insights and understandings" and that the addition of such value "is the very type of activity that the fair use doctrine intends to protect for the enrichment of society.") (quoting P. Leval, Toward a Fair Use Standard, 103 HARV. L. REV. 1105 (1990)).

1    the expressive content or message of the original work and uses it in the same or similar context.

2    The extent of transformation may vary from case to case. The greater the transformation, the more

3    likely an accused use will qualify as a fair use, and the less the transformation, the less likely an

4    accused use will qualify as a fair use.[127]

---

[127] *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 579 (1994) ("Although such transformative use is not absolutely necessary for a finding of fair use, the goal of copyright, to promote science and the arts, is generally furthered by the creation of transformative works. Such works thus lie at the heart of the fair use doctrine's guarantee of breathing space within the confines of copyright, and the more transformative the new work, the less will be the significance of other factors, like commercialism, that may weigh against a finding of fair use.") (internal quotations and citations omitted).

1    **DISPUTED: Arista's Final Instruction No. 51 re Copyright—Affirmative Defense: Fair Use:**

2    **First Factor: Transformative[128]**

3    To qualify as transformative, the material copied need not be modified in the new work, so long as

4    the material and the context in which the material is used qualifies as transformative under the test

5    stated above. In this case, Arista contends that any use of the accused CLI features was

6    transformative because it added something new to Cisco's copyrighted works.  For example,

7    Arista contends that its EOS is fundamentally different from Cisco IOS in both architecture and

8    operation.  However, Cisco contends that EOS is not transformative because it uses the accused

9    CLI features for the same purpose as Cisco . It is up to you to decide the extent to which Arista's

10    use qualifies as transformative under the test stated above, but you may not disqualify it from

11    being transformative merely because certain accused CLI features were carried over without

12    change. [129] On the other hand, even if you find that the accused use was transformative, you must

13    weigh that and the extent of the transformation against the commercial purpose of the use and its

14    extent, which I will now discuss.

15    _____

16    [128]  *Oracle America, Inc. v. Google, Inc.*, No. 10-cv-03561-WHA, ECF 1981 (May 26, 2016)
(Jury Instruction 25).

17    [129] *Oracle America, Inc. v. Google, Inc.*, 750 F.3d 1339, 1374 (Fed. Cir. 2014) ("A use is

18    'transformative' if it 'adds something new, with a further purpose or different character, altering
the first with new expression, meaning or message.' The critical question is 'whether the new

19    work merely supersede[s] the objects of the original creation ... or instead adds something new.'")
(internal citations omitted); *Monge v. Maya Magazines, Inc.*, 688 F.3d 1164, 1176 (9th Cir. 2012)

20    (use transformative when it incorporates elements of prior work "into a broader work"); *Perfect
10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1165 (9th Cir. 2007) ("The fact that Google

21    incorporates the entire Perfect 10 image into the search engine results does not diminish the

22    transformative nature of Google's use. As the district court correctly noted, we determined in
Kelly that even making an exact copy of a work may be transformative so long as the copy serves

23    a different function than the original work."); *Wall Data Inc. v. L.A. County Sheriff's Dept.*, 447
F.3d 769, 778 (9th Cir. 2006) (use can be transformative where defendant changes plaintiff's work

24    or uses it in a different context); *Kelly v. Arriba Soft Corp.*, 336 F.3d 811, 818-19 (9th Cir. 2002)

25    (finding use of "exact images" transformative and fair use); *Seltzer v. Green Day, Inc.*, 725 F.3d
1170, 1176 (9th Cir. 2013) (use is transformative if it "adds value to the original—if the quoted

26    matter is used as raw material, transformed in the creation of new information, new aesthetics,
new insights and understandings" and that the addition of such value "is the very type of activity

27    that the fair use doctrine intends to protect for the enrichment of society.") (quoting P. Leval,
Toward a Fair Use Standard, 103 Harv. L. Rev. 1105 (1990)).

28

1120944.03

1    **<u>DISPUTED: Arista's Final Instruction No. 52 re Copyright—Affirmative Defense: Fair Use:</u>**

2    **<u>First Factor: Commercial Use</u>**[130]

3    In evaluating the first statutory factor, the extent of the commercial nature of the accused

4    use must be considered. In this case, all agree that Arista's accused use was commercial in nature

5    but disagree over the extent. Commercial use weighs against a finding of fair use, but even a

6    commercial use may be found (or not found, as the case may be) to be sufficiently transformative

7    that the first factor, on balance, still cuts in favor of fair use.[131] To put it differently, the more

8    transformative an accused work, the more other factors, such as commercialism, will recede in

9    importance.[132] By contrast, the less transformative the accused work, the more other factors like

10   commercialism will dominate.

11

12

13

14

15

16

17

18

19

20

21

22

23   [130] *Oracle America, Inc. v. Google, Inc.*, No. 10-cv-03561-WHA, ECF 1981 (May 26, 2016)

24   (Jury Instruction 26).

     [131] *Hustler Magazine Inc. v. Moral Majority Inc.*, 796 F.2d 1148, 1152 (9th Cir. 1986) ("Even

25   assuming that the use had a purely commercial purpose, the presumption of unfairness can be

26   rebutted by the characteristics of the use.").

     [132] *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 579 (1994) ("[T]he more transformative

27   the new work, the less will be the significance of other factors, like commercialism, that may

     weigh against a finding of fair use.").

28                                                          -77-                    Case No. 5:14-cv-5344-BLF

1120944.03

1    **DISPUTED: Arista's Final Instruction No. 53 re Copyright—Affirmative Defense: Fair Use:**

2    **Second Factor[133]**

3         The second statutory factor is the nature of the copyrighted work. This factor recognizes

4    that traditional literary works are closer than informational works, such as instruction manuals, to

5    the core of intended copyright protection.  Creative writing and expression lie at the very heart of

6    copyright protection, so fair use is generally more difficult to establish for copying of traditional

7    literary works than for copying of informational works.[134] The focus of this factor is on how close

8    the used material is to the core values of copyright protection. When the used material implicates

9    the core values of copyright protection less, the more this factor weighs in favor of fair use, and

10   vice versa.[135]

11

12

13

14

15

16

17

18

19

20

21

22

23        [133]   *Oracle America, Inc. v. Google, Inc.*, No. 10-cv-03561-WHA, ECF 1981 (May 26, 2016)

24   (Jury Instruction 28).

         [134]   *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 586 (1994) ("This factor calls for

25   recognition that some works are closer to the core of intended copyright protection than others,

26   with the consequence that fair use is more difficult to establish when the former works are

     copied.") (internal citations omitted).

27        [135] *Sega Enters., Ltd. v. Accolade, Inc.*, 977 F.2d 1510, 1527 (9th Cir. 1992) ("[I]f a work is

     largely functional, it receives only weak protection.").

28                                                 -78-                    Case No. 5:14-cv-5344-BLF
                                UNDISPUTED AND DISPUTED PROPOSED JURY INSTRUCTIONS

1120944.03

1    **DISPUTED: Arista's Final Instruction No. 54 re Copyright—Affirmative Defense: Fair Use:**

2    **Second Factor: Functionality/Creativity[136]**

3        Even though a computer program performs functions and has functional elements, it may

4    be (or may not be) highly creative.[137] When there are many possible ways to express a computer

5    program, the particular way chosen for a copyrighted program may be (or may not be) highly

6    creative. On the other hand, when elements of a computer program are dictated by functional

7    considerations such as efficiency, compatibility, or industry standards, then less creativity is

8    indicated and the core values of copyright protection are less implicated.[138] When purely

9    

10       [136]  *Oracle America, Inc. v. Google, Inc.*, No. 10-cv-03561-WHA, ECF 1981 (May 26, 2016)

11   (Jury Instruction 30).

         [137] *Sony Computer Entertainment, Inc. v. Connectix Corp.*, 203 F.3d 596, 603 (9th Cir. 2000)

12   ("Thus, the fair use doctrine preserves public access to the ideas and functional elements
     embedded in copyrighted computer software programs. This approach is consistent with the

13   ultimate aim [of the Copyright Act], to stimulate artistic creativity for the general public good.")
     (internal quotations and citations omitted).

14       [138] *Sega Enters. Ltd. v. Accolade, Inc.*, 977 F.2d 1510, 1524 (9th Cir. 1992) ("To the extent

15   that a work is functional or factual, it may be copied, as may those expressive elements of the
     work that must necessarily be used as incident to expression of the underlying ideas, functional

16   concepts, or facts) (internal quotations and citations omitted); *Computer Assocs Int'l, Inc. v. Altai,
     Inc.*, 982 F.2d 693, 709-10 (2d Cir. 1992) ("[A] programmer's freedom of design choice is often

17   circumscribed by extrinsic considerations such as (1) the mechanical specifications of the
     computer on which a particular program is intended to run; (2) compatibility requirements of other

18   programs with which a program is designed to operate in conjunction; (3) computer
     manufacturers' design standards; (4) demands of the industry being serviced; and (5) widely

19   accepted programming practices within the computer industry."); *Oracle America, Inc. v. Google,
     Inc.*, 750 F.3d 1339, 1371-72, 1376-77 (Fed. Cir. 2014) ("Next, while we have concluded that it

20   was error for the trial court to focus unduly on the functional aspects of the packages, and on
     Google's competitive desire to achieve commercial 'interoperability' when deciding whether

21   Oracle's API packages are entitled to copyright protection, we expressly noted that these factors
     may be relevant to a fair use analysis. While the trial court erred in concluding that these factors

22   were sufficient to overcome Oracle's threshold claim of copyrightability, reasonable jurors might
     find that they are relevant to Google's fair use defense under the second and third factors of the

23   inquiry. *See Sega*, 977 F.2d at 1524-25 (discussing the Second Circuit's approach to 'break[ing]
     down a computer program into its component subroutines and subsubroutines and then

24   identif[ying] the idea or core functional element of each' in the context of the second fair use
     factor: the nature of the copyrighted work). We find this particularly true with respect to those

25   core packages which it seems may be necessary for anyone to copy if they are to write programs in
     the Java language. And, it may be that others of the packages were similarly essential components

26   of any Java language-based program.").

27   

28   

1120944.03

1  functional elements are embedded in a copyrighted work and it is necessary to copy associated

2  creative elements in order to utilize those functional elements, then this circumstance also favors

3  fair use.[139] Conversely, copying creative expression that is not necessary to perform the functions

4  weighs against fair use.

---

25  [139] *Sony Computer Entertainment, Inc. v. Connectix Corp.*, 203 F.3d 596, 603 (9th Cir. 2000)

26  ("Thus, the fair use doctrine preserves public access to the ideas and functional elements
embedded in copyrighted computer software programs. This approach is consistent with the

27  ultimate aim [of the Copyright Act], to stimulate artistic creativity for the general public good.")
(internal quotations and citations omitted).

1120944.03

**DISPUTED: Arista's Final Instruction No. 55 re Copyright—Affirmative Defense: Fair Use: Third Factor**[140]

The third statutory factor is the amount and substantiality of the portion used in relationship to the copyrighted work as a whole, which concerns how much of the overall copyrighted work was used by the accused infringer.[141] Analysis of this factor is viewed in the context of Cisco's copyrighted works, namely the twenty-six operating systems registered by Cisco with the Copyright Office and their associated documentation. The fact, if true, that a substantial portion of an infringing work was copied verbatim is evidence of the qualitative value of the copied material, both to the originator and to whoever seeks to profit from marketing someone else's copyrighted work. Wholesale copying does not preclude fair use per se but it militates against a finding of fair use. Even a small part may be qualitatively the most important part of a work. If, however, the secondary user only copies as much as is necessary for a transformative use, then this factor will not weigh against him or her. The extent of permissible copying varies with the purpose and character of the use, which relates back to the first factor.

In assessing this third factor, both the quantity of the material used and the quality or importance of the material used should be considered.

---

[140]    *Oracle America, Inc. v. Google, Inc.*, No. 10-cv-03561-WHA, ECF 1981 (May 26, 2016) (Jury Instruction 33).

[141]    *Data General Corp. v. Grumman Systems Support Corp.*, 36 F.3d 1147, 1162 (1st Cir. 1994) ("a key purpose of the Section 408(b) deposit requirement is to prevent confusion about which work the author is attempting to register" and protect under the registration); *Harper House, Inc. v. Thomas Nelson, Inc.*, 5 F.3d 536, 1993 WL 346546 at 25 *2 (9th Cir. 1993) (unpublished) (comparisons of individual portions (pages) of parties' works rather than the entire works is "inappropriate and misleadingly prejudicial"; works must be compared as a whole") (emphasis added). *NXIVM Corp. v. The Ross Institute*, 364 F.3d 471, 481 (2d Cir. 2004) (fair use analysis under third factor must be based on entire work and not individual "modules").

1120944.03

**DISPUTED: Arista's Final Instruction No. 56 re Copyright—Affirmative Defense: Fair Use: Fourth Factor[142]**

The fourth and final statutory factor is the effect of the accused infringer's use on the potential market for or value of the copyrighted work.[143] This factor militates against fair use if the accused use materially impairs the marketability or value of the copyrighted work.[144] This is the single most important factor, but it must be weighed with all other factors and is not necessarily dispositive. This factor considers whether the accused work is offered or used as a substitute for the original copyrighted work.[145] This factor considers not only the extent of any market harm caused by the accused infringer's actions but also whether unrestricted and widespread use of the copyrighted materials of the sort engaged in by the accused infringer would result in a substantially adverse impact on the potential market for the copyrighted work.[146] If the use of the copyrighted materials is transformative, market substitution is at least less certain, and market harm may not be presumed.[147]

---

[142] *Oracle America, Inc. v. Google, Inc.*, No. 10-cv-03561-WHA, ECF 1981 (May 26, 2016) (Jury Instruction 34).

[143] 17 U.S.C. § 107.

[144] *Sofa Entm't, Inc. v. Dodger Prods.*, 709 F.3d 1273, 1280 (9th Cir. 2013) ("Where the secondary use is not a substitute for the original and does not deprive the copyright holder of a derivative use, the fourth factor weighs in favor of fair use."); *Authors Guild v. Google, Inc.*, 804 F.3d 202, 224 (2d Cir. 2015) ("[T]he possibility, or even the probability or certainty, of some loss of sales does not suffice to make the copy an effectively competing substitute that would tilt the weighty fourth factor in favor of the rights holder in the original. There must be a meaningful or significant effect "upon the potential market for or value of the copyrighted work.").

[145] *Sofa Entm't, Inc. v. Dodger Prods.*, 709 F.3d 1273, 1280 (9th Cir. 2013) ("Where the secondary use is not a substitute for the original and does not deprive the copyright holder of a derivative use, the fourth factor weighs in favor of fair use."); *Authors Guild v. Google, Inc.*, 804 F.3d 202, 224 (2d Cir. 2015) ("[T]he possibility, or even the probability or certainty, of some loss of sales does not suffice to make the copy an effectively competing substitute that would tilt the weighty fourth factor in favor of the rights holder in the original. There must be a meaningful or significant effect "upon the potential market for or value of the copyrighted work.").

[146] *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 590 (1994).

[147] *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 591 (1994) ("[W]hen a commercial use amounts to mere duplication of the entirety of an original, it clearly supersede[s] the objects of the original and serves as a market replacement for it, making it likely that cognizable market harm to the original will occur. But when, on the contrary, the second use is transformative, market

1          Market harm to the value of the copyrighted work may be a matter of degree, and the

2    importance of this factor will vary not only with the amount of harm shown, but also with the

3    relative strength of the showings on the other factors.

_____

substitution is at least less certain, and market harm may not be so readily inferred.") (internal
citations and quotations omitted).

**DISPUTED: Arista's Final Instruction No. 57 re Copyright—Affirmative Defense: Fair Use:**

**Fourth Factor: Market Harm[148]**

In making your evaluation under the fourth factor, you should assess the harm, if any, to the potential market for or value of the copyrighted work itself and to its licensing value for it and its derivative works. You may consider the broader potential market for products that feature independent elements in addition to the copyrighted material and their successes and/or failures only insofar as they shed light on the licensing or market value of the copyrighted work itself and its derivative works.

---

[148]  *Oracle America, Inc. v. Google, Inc.*, No. 10-cv-03561-WHA, ECF 1981 (May 26, 2016) (Jury Instruction 36).

**<u>DISPUTED: Arista's Final Instruction No. 58 re Copyright—Affirmative Defense: Fair Use:</u>**

**<u>Fourth Factor: Consideration Of Additional Evidence</u>**[149]

I have now completed my explanation of the four fair use factors in the Act. You might ask, are we limited to these four factors?  The Act states that those four factors are not exclusive and you may consider any additional circumstances and evidence, pro or con, that, in your judgment, bear upon the ultimate purpose of the Copyright Act, including protection of authors and the right of fair use, namely, to promote the progress of science and useful arts.

---

[149]  *Oracle America, Inc. v. Google, Inc.*, No. 10-cv-03561-WHA, ECF 1981 (May 26, 2016) (Jury Instruction 38).

1    **DISPUTED: Arista's Final Instruction No. 59 re Copyright—Affirmative Defense: Fair Use:**

2    **Fourth Factor: Consideration Of Factors**[150]

3           It is up to you to decide whether all relevant factors, when considered fully and together,

4    favor or disfavor fair use. All of these factors must be explored, discussed, and evaluated by you.

5    No single factor is dispositive. Your evaluation of all factors must be weighed together in light of

6    the purpose of copyright, which as our Constitution states is to promote the progress of science

7    and useful arts. Some factors may weigh in favor of fair use and some against fair use, and you

8    must decide, after giving the factors such weight as you find appropriate based on the evidence

9    and my instructions, whether or not, on balance, Arista has shown by a preponderance of the

10   evidence that they predominate in favor of fair use.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26   _____

27        [150]   *Oracle America, Inc. v. Google, Inc.*, No. 10-cv-03561-WHA, ECF 1981 (May 26, 2016)
     (Jury Instruction 39).

28

1    **<u>DISPUTED: Cisco's Final Instruction No. 60 re Copyright—Affirmative Defense: Merger</u>**

2        To show that Cisco's copyrighted works are subject to merger, Arista must show that, at

3    the time Cisco created the works, Cisco had only one way to express the idea underlying the

4    copyrighted user interface and related documentation.  If alternative expressions were available to

5    Cisco at the time it created them, then there is no merger.  What alternatives were available to

6    Arista is not relevant to merger.[151]

7        Arista has the burden of proving this defense by a preponderance of the evidence.[152]

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

---

[151]  *Oracle Am., Inc. v. Google Inc.*, 750 F.3d 1339, 1361 (Fed. Cir. 2014) (1361 ("First, we agree that merger cannot bar copyright protection for any lines of declaring source code unless [the author] had only one way, or a limited number of ways, to write them. The evidence showed that [the author] had 'unlimited options as to the selection and arrangement of the 7000 lines Google copied.' This was not a situation where [the author] was selecting among preordained names and phrases to create its packages… Because 'alternative expressions [we]re available,' there is no merger.").

[152]  Instruction No. 1.2, *Ninth Circuit Manual of Model Civil Jury Instructions* (2007).

1120944.03

1

## **DISPUTED: Arista's Final Instruction No. 60 re Copyright—Merger**

2

3   [Arista addresses the merger doctrine in its "Copyright—Ideas and Expression" instruction

4   (Disputed Instruction 27), where the doctrine belongs.  To the extent the Court wishes to give a

separate Merger instruction, Arista proposes the following.]

5

6        If an idea and the expression of that idea merge, the expression will only be protected by

copyright law if the alleged copying of that expression is nearly identical.  If the idea underlying

7

the copyrighted work can be expressed in only one way or only a few ways, the expression of that

8

idea will not constitute copyright infringement.[153]  This is known as the doctrine of "merger."

9

10

11

12

13

14

15

16

17

18

19

20

21

---

22

[153] Ninth Circuit Model Jury Instruction 17.3 Supplemental Instruction for merger defense

23   (citing *Apple Computer, Inc. v. Microsoft Corp.*, 35 F.3d 1435, 1444 (9th Cir. 1994); *CDN, Inc. v. Kapes*, 197 F.3d 1256, 1261 (9th Cir.1999)) (quoting *Ets-Hokin*, 225 F.3d 1068, 1082 (9th Cir.

24   2000) ("The merger doctrine "will not protect a copyrighted work from infringement if the idea

25   underlying the copyrighted work can be expressed in only one way, lest there be a monopoly on the underlying idea.").  The phrase "or only a few ways" stems from ABA Model Jury Instruction

26   1.4.7 (Copyright, Trademark, and Trade Dress Litigation) (citing cases and treatises); *see also Oracle Am., Inc. v. Google Inc.*, 750 F.3d 1339, 1359 (Fed. Cir. 2014), cert. denied, 135 S. Ct.

27   2887, 192 L. Ed. 2d 948 (2015) ("[W]hen there are a limited number of ways to express an idea, the idea is said to 'merge' with its expression, and the expression becomes unprotected.").

28

1120944.03

1    **DISPUTED: Cisco's Final Instruction No. 61 re Copyright—Affirmative Defense: Scènes À**

2    **Faire**

3         To show that the infringed portions of Cisco's user interface are scènes à faire material,

4    Arista must show that, at the time Cisco created the user interface—not at the time Arista copied

5    it—external factors other than Cisco's creativity dictated that Cisco select, arrange, organize and

6    design its original features in the manner it did. The scènes à faire doctrine depends on the

7    circumstances presented to the creator at the time of creation, not the circumstances presented to

8    the copier at the time it copied.[154]

9         Arista has the burden of proving this defense by a preponderance of the evidence.[155]

10

11

12

13

14

15

16

17

18

19

20

21

22    _____

23    [154]  *Oracle Am., Inc. v. Google Inc.*, 750 F.3d 1339, 1358 (Fed. Cir. 2014) ("The court's

24    analytical focus must be upon the external factors that dictated [the author's] selection of classes,
methods, and code—not upon what Google encountered at the time it chose to copy those

25    groupings and that code. '[T]he scenes a faire doctrine identifies and excludes from protection
against infringement expression whose creation 'flowed naturally from considerations external to

26    the author's creativity.'''); *id.* at 1364 ("the focus of the scenes a faire doctrine is on the
circumstances presented to the creator, not the copier"); *id.* at 1364 (scènes à faire must be

27    determined at the time of creation).

28    [155]  Instruction No. 1.2, *Ninth Circuit Manual of Model Civil Jury Instructions* (2007).

1120944.03

**DISPUTED: Arista's Final Instruction No. 61 re Copyright—Scènes À Faire[156]**

Arista asserts that its work does not infringe Cisco's copyright because of the doctrine of scènes à faire.  Under the doctrine of scènes à faire, which means "scene setting," a standard or typical theme, setting, or background that is common to a large number of works, such as a common plot device, is unprotected matter that may be copied.  For example, the doctrine applies to plot devices, incidents, characters, or settings that are, as a practical matter, indispensable, or at least standard, in the treatment of certain subjects.  These elements of a work are given only limited copyright protection, because they are not likely to be original and because, as a type of idea, they are necessary for the creation of other works.

However, even though these stock literary devices may be copied, the particular way in which they are expressed or implemented in a work, for example, in the details of a plot or the particular words used to describe characters and settings, are still protected matter.  Therefore, Arista may still be liable for infringement if it went beyond copying the general themes or devices used in a literary work and went on to copy the particular way in which they were expressed.  For example, if Shakespeare's *Romeo and Juliet* were copyrighted, an author could still write a play about two young people who fell in love but came to a tragic end because of a feud between their families.  But the author could not copy the detailed plot of Shakespeare's play, even if he did not copy Shakespeare's language.

Scènes à faire applies in the context of computer programs as well, because in certain instances, it is virtually impossible to write a program to perform particular functions in a specific computing environment without employing standard techniques.[157]  Scènes à faire protects the

---

[156] ABA Model Jury Instructions, Copyright, Trademark, and Trade Dress Litigation, Instruction 1.4.8.  The Ninth Circuit does not have an analogous model jury instruction.  *See also* 4-13 Nimmer on Copyright § 13.03[B][4].

[157] 4-13 Nimmer on Copyright § 13.03[F][3] ("These doctrines of scenes a faire and lack of originality apply particularly to computer programs, because in many instances, it is virtually impossible to write a program to perform particular functions in a specific computing environment without employing standard techniques."); *Computer Associates Intern., Inc. v. Altai, Inc.* 982 F.2d 693, 709–10 (2d Cir. 1992) (quoting Nimmer).

1  right of software developers to adopt elements of a program dictated by practical realities, such as

2  by hardware standards and mechanical specifications, software standards and compatibility

3  requirements, computer manufacturer design standards, target industry practices, the business

4  practices and technical requirements of the end user, and standard computer programming

5  practices.[158]  Cisco may not claim copyright protection of an idea and expression that is, if not

6

7       [158] *Oracle Am., Inc. v. Google Inc.*, 750 F.3d 1339, 1363 (Fed. Cir. 2014) ("In the computer
   context, the scene a faire doctrine denies protection to program elements that are dictated by
8  external factors such as 'the mechanical specifications of the computer on which a particular
   program is intended to run' or 'widely accepted programming practices within the computer
9  industry.") (internal quotation marks omitted); *Satava v. Lowry*, 323 F.3d 805, 807 (9th Cir. 2003)
   (The Copyright Act "denie[s] artists the exclusive right to ideas and standard elements in their
10 works, thereby preventing them from monopolizing what rightfully belongs to the public . . . .
   [E]xpressions that are standard, stock, or common to a particular subject matter or medium are not
11 protectable under copyright law."); *Apple Computer, Inc. v. Microsoft Corp.*, 35 F.3d 1435, 1444
   (9th Cir. 1994) ("The doctrine of scenes a faire is closely related . . . . [W]hen similar features in a
12 videogame are as a practical matter indispensable, or at least standard, in the treatment of a given
   idea, they are treated like ideas and are therefore not protected by copyright.") (internal citations,
13 quotation marks, and alterations omitted);*Computer Associates Int'l, Inc. v. Altai, Inc.*, 982 F.2d
   693, 709–10 (2d Cir. 1992) ("[A] programmer's freedom of design choice is often circumscribed
14 by extrinsic considerations such as (1) the mechanical specifications of the computer on which a
   particular program is intended to run; (2) compatibility requirements of other programs with which
15 a program is designed to operate in conjunction; (3) computer manufacturers' design standards; (4)
   demands of the industry being serviced; and (5) widely accepted programming practices within the
16 computer industry."); *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 387 F.3d 522, 535
   (6th Cir. 2004) ("In the computer-software context, the doctrine means that the elements of a
17 program dictated by practical realities—e.g., by hardware standards and mechanical specifications,
   software standards and compatibility requirements, computer manufacturer design standards,
18 target industry practices, and standard computer programming practices—may not obtain
   protection."); *Gates Rubber Co. v. Bando Chem. Indus., Ltd.*, 9 F.3d 823, 838 (10th Cir. 1993)
19 ("The scenes a faire doctrine also excludes from protection those elements of a program that have
   been dictated by external factors.  In the area of computer programs these external factors may
20 include: hardware standards and mechanical specifications, software standards and compatibility
   requirements, computer manufacturer design standards, target industry practices and demands, and
21 computer industry programming practices.") (citing cases and Nimmer) (internal citations
   omitted); *Sega Enterprises Ltd. v. Accolade, Inc.*, 977 F.2d 1510, 1524 (9th Cir. 1992), as
22 amended (Jan. 6, 1993) ("[C]omputer programs are, in essence, utilitarian articles—articles that
   accomplish tasks. As such, they contain many logical, structural, and visual display elements that
23 are dictated by the function to be performed, by considerations of efficiency, or by external factors
   such as compatibility requirements and industry demands."); *Frybarger v. Int'l Bus. Machines*
24 *Corp.*, 812 F.2d 525, 530 (9th Cir. 1987) (discussing *scenes a faire*: "[W]e believe that each of the
   similar features constitutes a basic idea of the videogames and, to the extent each feature is
25 expressive, that the expression is as a practical matter indispensable, or at least standard, in the

26

27

28
       -91-

1    standard, then commonplace in the computer software industry.[159]  Such elements are not

2    protected by copyright laws because granting copyright protection to the necessary incidents of an

3    idea would effectively afford a monopoly to the first programmer to express those ideas.[160]

4          In drawing the line between protected and unprotected matter, you should follow the

5    principle that copyright protection should not extend so far that it will interfere with the "tools of

6    the trade" that other authors should be able to use in creating future works.

7

8

9

10

11

12

13

14

---

15   treatment of a given idea.") (internal quotation marks and alterations omitted); 4-13 Nimmer on
     Copyright § 13.03[F][3] (discussing "hardware standards," "software standards," "computer

16   manufacturers' design standards," target industry practices," "the business practices and technical
     requirements of the end user," and "computer industry programming practices" in sub-sections

17   [a]–[e]).

18       [159] *Telemarketing Res. v. Symantec Corp.*, No. C88-20352 RPA, 1989 WL 200350, at *5 (N.D.
     Cal. Sept. 6, 1989), *aff'd in part, vacated in part, remanded sub nom. Brown Bag Software v.*

19   *Symantec Corp.*, 960 F.2d 1465 (9th Cir. 1992) ("Plaintiffs may not claim copyright protection of
     an idea and expression that is, if not standard, then commonplace in the computer software

20   industry."); *Satava v. Lowry*, 323 F.3d 805, 807 (9th Cir. 2003) (The Copyright Act "denie[s]
     artists the exclusive right to ideas and standard elements in their works, thereby preventing them

21   from monopolizing what rightfully belongs to the public . . . .  [E]xpressions that are standard,
     stock, or common to a particular subject matter or medium are not protectable under copyright

22   law.").

23       [160] *Gates Rubber Co. v. Bando Chem. Indus., Ltd.*, 9 F.3d 823, 838 (10th Cir. 1993) ("Granting
     copyright protection to the necessary incidents of an idea would effectively afford a monopoly to

24   the first programmer to express those ideas."); *Satava v. Lowry*, 323 F.3d 805, 807 (9th Cir. 2003)
     (The Copyright Act "denie[s] artists the exclusive right to ideas and standard elements in their

25   works, thereby preventing them from monopolizing what rightfully belongs to the public . . . .
     [E]xpressions that are standard, stock, or common to a particular subject matter or medium are not

26   protectable under copyright law."); *Mattel, Inc. v. MGA Entm't, Inc.*, 616 F.3d 904, 913 (9th Cir.
     2010), *as amended on denial of reh'g* (Oct. 21, 2010) (authors cannot copyright ideas,

27   "[o]therwise, the first person to express any idea would have a monopoly over it.").

28

1   **DISPUTED: Cisco's Final Instruction No. 62 re Copyright—Affirmative Defense: Copyright**

2   **Misuse**

3        [CISCO'S POSITION:  Under the Ninth Circuit's Model Jury Instructions, "the Ninth

4   Circuit has not yet decided whether the equitable defense of copyright misuse should be submitted

5   to the jury or is an issue for the court to decide."  Instruction No. 17.27, *Ninth Circuit Manual of*

6   *Model Civil Jury Instructions* (2007).  However, because copyright misuse is an equitable defense,

7   it is not for the jury to decide.  *See* <u>*Omega S.A. v. Costco Wholesale Corp.*</u>, 776 F.3d 692, 699-700

8   (9th Cir. 2015) (Wardlaw, J., concurring in the judgment) ("We expressly adopted copyright

9   misuse as an equitable defense to a claim of infringement") (citation omitted); *Granite State Ins.*

10   *Co. v. Smart Modular Techs., Inc.*, 76 F.3d 1023, 1027 (9th Cir. 1996) ("A litigant is not entitled

11   to have a jury resolve a disputed affirmative defense if the defense is equitable in nature.").  If the

12   Court should disagree, Cisco respectfully preserves its right to propose a proper instruction on

13   copyright misuse.]

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## DISPUTED: Arista's Final Instruction No. 62 re Copyright—Affirmative Defense:

2

## Copyright Misuse[161]

3      Arista claims it is not liable for copyright infringement because Cisco misused its

4 copyrights.  While the Copyright Act gives a copyright owner a limited monopoly in a

5 copyrighted work, the owner's attempts to extend the scope of this monopoly may under certain

6 circumstances constitute misuse.  If you find that Cisco misused its copyrights, it cannot assert an

7 infringement claim against Arista.

8      To prevail upon its claim that Cisco misused its copyrights, Arista must prove that Cisco

9 attempted to use the existence of its copyrights to prevent Arista from using unprotected elements

10 of the copyrighted work, or to prevent Arista from undertaking activity safeguarded by public

11 policy, such as the policies supporting fair use.

12      Arista has the burden of proof to establish Cisco's copyright misuse by a preponderance of

13 the evidence.  If you find that Arista has satisfied this burden of proof, then you should find in

14 favor of Arista on the issue of copyright infringement.

15

16

17

18

19

20

21

22

23

24

25

26

27

[161] ABA Model Jury Instruction, 1.6.9.

28

**DISPUTED: Cisco's Final Instruction No. 63 re Copyright—Willful Infringement[162]**

Arista's copyright infringement is considered willful if Cisco proves both of the following elements by a preponderance of the evidence:

1. Arista infringed the copyright to one or more of Cisco's copyrighted works; and

2. Arista either knew its acts infringed the copyright or Arista's actions were the result of reckless disregard for, or willful blindness to, Cisco's copyrights.

---

[162] Instruction No. 17.27, *Ninth Circuit Manual of Model Civil Jury Instructions* (2007); *Louis Vuitton Malletier, S.A. v. Akanoc Sols., Inc.*, 658 F.3d 936, 944 (9th Cir. 2011) ("To prove 'willfulness' under the Copyright Act, the plaintiff must show (1) that the defendant was actually aware of the infringing activity, or (2) that the defendant's actions were the result of reckless disregard for, or willful blindness to, the copyright holder's rights."); *Washington Shoe Co. v. A-Z Sporting Goods Inc.*, 704 F.3d 668, 674 (9th Cir. 2012) ("We have explained that a finding of 'willfulness' in the copyright context can be based on either 'intentional' behavior or merely 'reckless' behavior, and that to prove 'willfulness' under the Copyright Act, the plaintiff must show (1) that the defendant was actually aware of the infringing activity, or (2) that the defendant's actions were the result of reckless disregard for, or willful blindness to, the copyright holder's rights." (internal citation, quotation marks, and brackets omitted)); *id.* ("To prove willfulness, plaintiffs must show that the infringer had actual or constructive knowledge that it was infringing the plaintiffs' copyrights or else acted in reckless disregard of the high probability that it was infringing plaintiffs' copyrights."); *In re Barboza*, 545 F.3d 702, 707 (9th Cir. 2008) ("The term 'willful' as used in copyright infringement case … can be based on either intentional behavior or merely reckless behavior." (quotation marks omitted)).

1

**<u>DISPUTED: Arista's Final Instruction No. 63 re Copyright—Willfulness</u>**[163]

2    Copyright infringement is considered willful if Cisco proves both of the following

3    elements by a preponderance of the evidence:

4        1.  Arista engaged in acts that infringed the copyright; and

5        2.  Arista knew that those acts infringed the copyright, or Arista acted with reckless

6            disregard for, or willful blindness to, the copyright holder's rights.

7    Arista may refute evidence of willful infringement by establishing its good faith belief in

8    the innocence of its conduct, and that it was reasonable in holding such a belief.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

---

25    [163]  Manual of Model Civil Jury Instructions (2007 Ed., last updated 6/2016), Instruction No.

26    17.36 ("COPYRIGHT—DAMAGES—WILLFUL INFRINGEMENT (17 U.S.C. § 504(c)(2))");
      Comments to the Manual of Model Civil Jury Instructions (2007 Ed.); *Peer Int'l Corp. v. Pausa*

27    *Records, Inc.*, 909 F.2d 1332, 1335–36 (9th Cir. 1990); *Evergreen Safety Council v. RSA Network*

28    *Inc.*, 697 F.3d 1221, 1228 (9th Cir. 2012).

1120944.03

1

**UNDISPUTED: Final Instruction No. 64 re Copyright—Damages**[164]

2      It is the duty of the Court to instruct you about the measure of damages.  By instructing

3  you on damages, the Court does not mean to suggest for which party your verdict should be

4  rendered.

5      If you find for Cisco on its copyright infringement claim, you must determine Cisco's

6  damages.  Cisco is entitled to recover the actual damages suffered as a result of the infringement.

7  In addition, Cisco is also entitled to recover any of Arista's profits attributable to the infringement,

8  to the extent you did not already account for those profits in determining Cisco's actual damages.

9  Cisco must prove damages by a preponderance of the evidence.

10      It is for you to determine what damages, if any, have been proved.  Your award must be

11  based upon evidence and not upon speculation, guesswork or conjecture.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

---

26      [164]  Instruction Nos. 5.1 & 17.31, *Ninth Circuit Manual of Model Civil Jury Instructions*

27  (2007); 17 U.S.C. § 504(b); *Synopsis, Inc. v. ATopTech, Inc.*, No. 13-cv-2965 (N.D. Cal.), ECF
No. 688 at 16 (Final Instructions).

28

1120944.03

1

**DISPUTED: Cisco's Final Instruction No. 65 re Copyright—Actual Damages[165]**

2    Cisco is entitled to recover the actual damages suffered as a result of Cisco's infringement.

3 Actual damages means the amount of money adequate to compensate the copyright owner for the

4 reduction in the fair market value of the copyrighted work caused by the infringement.  Actual

5 damages may be measured by the profits of the copyright owner lost due to the infringement,

6 referred to as "lost profits."   In this case, actual damages in the form of lost profits are the amount

7 that Cisco would have earned but for Arista's infringement.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22    _____

23    [165]   Instruction No. 17.32, *Ninth Circuit Manual of Model Civil Jury Instructions* (2007);

24 *Synopsis, Inc. v. ATopTech, Inc.*, No. 13-cv-2965 (N.D. Cal.), ECF No. 688 at 17 (Final
Instructions); *Oracle Corp. v. SAP AG*, 765 F.3d 1081, 1087 (9th Cir. 2014) ("'actual damages'

25 can be awarded in the form of lost profits"); 5 NIMMER ON COPYRIGHT § 14.02[A][1] ("[T]he
plaintiff's damages may be said to equal the profits that the plaintiff might have accrued but for

26 the defendant's infringement."); *Polar Bear Prods., Inc. v. Timex Corp.*, 384 F.3d 700, 708 (9th

27 Cir. 2004) ("Actual damages are usually determined by the loss in the fair market value of the
copyright, measured by the profits lost due to the infringement or by the value of the use of the

28 copyrighted work to the infringer.").

1120944.03

1

**DISPUTED: Arista's Final Instruction No. 65 re Copyright—Actual Damages[166]**

2       The copyright owner is entitled to recover any actual damages suffered as a result of the

3 infringement. Actual damages means the amount of money adequate to compensate the copyright

4 owner for the reduction of the fair market value of the copyrighted work caused by the

5 infringement. In this case, actual damages in the form of lost profits are the amount that Cisco

6 would have earned but for Arista's infringement.

7       To collect actual damages, Cisco must establish with reasonable probability that the

8 infringement caused it to lose revenue, and the amount of that lost revenue.[167] You may not make

9 an award of actual damages that is unduly speculative. If you conclude that Cisco would have

10 incurred increased expenses related to its damages, such as increased overhead costs, you must

11 deduct those expenses when calculating Cisco's actual damages.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26   [166]  Ninth Circuit Model Jury Instruction, 17.32.

27   [167] 17 U.S.C. § 504(b); *Polar Bear Prods., Inc. v. Timex Corp.*, 384 F.3d 700, 709 (9th Cir. 2004); *Taylor v. Meirick,* 712 F.2d 1112, 1121 (7th Cir. 1983)

28

Case No. 5:14-cv-5344-BLF
UNDISPUTED AND DISPUTED PROPOSED JURY INSTRUCTIONS

1120944.03

1    **DISPUTED: Cisco's Final Instruction No. 66 re Copyright—Infringer's Profits**[168]

2    In addition to actual damages, Cisco is entitled to any profits of Arista attributable to the

3    infringement.  You may not include in an award of profits any amount that you took into account

4    in determining actual damages.  You may make an award of Arista's profits only if you find that

5    Cisco showed a causal nexus between the profits it seeks and the copyright infringement.  In this

6    case, because Cisco seeks only direct profits, Cisco may satisfy its burden by showing that the

7    profits it seeks to recover derive directly from sales of the infringing products.[169]

8    Arista's profits are determined by subtracting all deductible expenses from Arista's gross

9    revenue.  Arista's gross revenue is all of Arista's revenue directly from the sale of any products

10    containing or using Cisco's copyrighted works.  Cisco has the burden of proving Arista's gross

11    revenue by a preponderance of the evidence.

12    Deductible expenses are the portion of Arista's operating costs, overhead costs, and

13    production costs incurred by Arista in producing Arista's gross revenue from the infringing

14    products.  However, if you find that Arista's infringement was willful, Arista's overhead costs,

15    federal income taxes and excess profits taxes will not be considered deductible expenses and

16    cannot be deducted from its profits.[170]  Arista has the burden of proving its expenses by a

17    preponderance of the evidence.

18    _____

19    [168]  Instruction No. 17.33, *Ninth Circuit Manual of Model Civil Jury Instructions* (2007);
*Synopsis, Inc. v. ATopTech, Inc.*, No. 13-cv-2965 (N.D. Cal.), ECF No. 688 at 18 (Final

20    Instructions).

21    [169]  Order on Daubert Motions at  16 ("Importantly, Arista also acknowledged to the Court
that for establishing a royalty base, Cisco could satisfy its initial burden by showing that the direct

22    profits are derived from the infringing products. …  Assuming that Cisco is seeking only direct
profits, Cisco must at least show that the profits it seeks to recover derive directly from the

23    infringing products."); *Polar Bear Prods., Inc. v. Timex Corp.*, 384 F.3d 700, 708 (9th Cir. 2004);
*Brocade Commc'ns Sys. v. A10 Networks, Inc.*, No. 10-cv-3428-PSG, 2013 WL 831528, at *6

24    (N.D. Cal. Jan. 10, 2013) (noting that, to recover disgorgement of direct profits, a plaintiff may
satisfy the "causal link" requirement by showing the "gross revenues from the infringing

25    product"); *see also, e.g., On Davis v. The Gap, Inc.*, 246 F.3d 152, 160 (2d Cir. 2001); *Taylor v.

26    Meirick*, 712 F.2d 1112, 1122 (7th Cir. 1983) (finding a prima facie case made by a showing that
the proffered gross revenue is from the sale of the infringing product).

27    [170]  Instruction No. 17.36, *Ninth Circuit Manual of Model Civil Jury Instructions* (2007)
(comment); *Three Boys Music Corp. v. Bolton*, 212 F.3d 477, 487-88 (9th Cir. 2000) (in allocating

28    -100-

1120944.03

1   Unless you find that a portion of the profit from the sale of a product containing or using

2   Cisco's copyrighted works is attributable to factors other than the copyrighted works, all of the

3   profit is to be attributed to the infringement.  Arista has the burden of proving by a preponderance

4   of the evidence the portion of the profit, if any, attributable to factors other than the copyrighted

5   works.

6   Arista's profits do not need to be calculated with mathematical or absolute exactness by

7   either Cisco or Arista.  The law requires only a reasonable approximation of an infringer's profits

8   as a basis for determining the proper amount of damages.  You should resolve any doubt as to the

9   computation of costs or profits in favor of Cisco.[171]

10   Your apportionment, if any, of Arista's profits similarly does not need to be calculated

11   with mathematical or absolute exactness.  The law only requires that any apportionment be

12   reasonable and just.[172]

13

14   _____

15   profits, "non-willful infringers" were entitled to deduct from damage assessment income taxes and management fees actually paid); *Oracle Am., Inc. v. Google Inc.*, No. 10-cv-03561, 2015 U.S.

16   Dist. LEXIS 126110 (N.D. Cal. Sept. 18, 2015) (noting the Ninth Circuit has not explicitly held that federal income or excess profits taxes are precluded as deductible expenses in calculating a

17   willful copyright infringer's profits, but deeming that to be "the most likely outcome in our circuit."); *Polar Bear Prods., Inc. v. Timex Corp.*, 384 F.3d 700, 709 (9th Cir. 2004); *Frank Music*

18   *Corp. v. Metro-Goldwyn-Mayer, Inc.*, 772 F.2d 505, 515 (9th Cir. 1985); *Saxon v. Blann*, 968 F.2d 676, 681 (8th Cir. 1992) ("[o]verhead may not be deducted from gross revenues to arrive at profits

19   when an infringement was deliberate or willful"); *Williams v. Bridgeport Music, Inc.*, No. 13-cv-6004, ECF No. 322 at Jury Instruction No. 38 (C.D. Cal. Mar. 10, 2015) ("Overhead costs may not

20   be deducted where a party's infringement is willful."); *Jarvis v. A & M Records*, 827 F. Supp. 282, 294-95 (D.N.J. 1993) ("it is a question of fact whether these defendants did in fact act willfully[;]"

21   "if a defendant's conduct is willful, overhead may not be deducted"); *Manufacturers Techs., Inc.*

22   *v. Cams, Inc.*, 728 F. Supp. 75, 84 (D. Conn. 1989) (defendant's "taxes" and "overhead or 'allocated expenses'" not deductible because infringement was willful); 5 NIMMER ON COPYRIGHT

23   § 14.03[C][2]-[3].

24       [171]   *Frank Music Corp. v. MGM, Inc.*, 772 F.2d 505, 514 (9th Cir. Cal. 1985) ("Any doubt as to the computation of costs or profits is to be resolved in favor of the plaintiff.").

25       [172]   *Sheldon v. Metro-Goldwyn Pictures Corp.*, 309 U.S. 390, 408 (1940) ("what is required is

26   not mathematical exactness but only a reasonable approximation."); *id.* at 402 ("apportionment of profits can be had where it is clear that all the profits are not due to the use of the copyrighted

27   material, *and the evidence is sufficient to provide a fair basis of division* so as to give to the copyright proprietor all the profits that can be deemed to have resulted from the use of what

28   belonged to him") (emphasis added).

**DISPUTED: Arista's Final Instruction No. 66 re Copyright—Arista's Profits**[173]

If you conclude that Arista infringed Cisco's copyrights, in addition to actual damages, Cisco is entitled to any of Arista's profits attributable to the infringement. You may not include in an award of profits any amount that you took into account in determining actual damages.

You may make an award of Arista's profits attributable to sales of the infringing product only if you find that Cisco showed a causal nexus between the profits it seeks and the copyright infringement.[174] If Cisco fails to establish a causal nexus between the profits it seeks and the infringement, it is not entitled to any of Arista's profits.

If Cisco establishes a causal nexus between the profits it seeks and the infringement, the burden shifts to Arista to prove deductible expenses and the portion of its profit attributable to factors other than infringing the copyrighted work.[175]

To the extent that Arista proves that some of its profits are attributable to factors other than infringing the copyrighted work, you should subtract those profits. If it is clear that not all of the profits are attributable to the infringing material, Arista is not required to establish with certainty the portion attributable to the non-infringing elements. If the evidence suggests some division that may rationally be used to decide what portion of the profits are due to factors other than infringement, it is your duty to do so.

Arista's profit is determined by starting with Arista's gross revenue that Cisco has proved has a causal relationship with the infringement, and then subtracting the expenses incurred in producing that revenue. The expenses to be subtracted from that gross revenue are all operating costs, overhead costs and production costs incurred in producing it. Arista has the burden of proving its expenses by a preponderance of the evidence.

---

[173]  Ninth Circuit Model Jury Instruction, 17.33.
[174] Order on Daubert Motions at 16.
[175] *Cream Records, Inc. v. Jos. Schlitz Brewing Co*., 754 F.2d 826, 829 (9th Cir. 1985).

1

2

## **DISPUTED: Cisco's Final Instruction No. 67 re Copyright—Infringer's Profits—Willfulness**[176]

3

4

5

6

7

8

9

10

11

    I have instructed you that deductible expenses are those expenses incurred by Arista that actually helped to produce the revenues at issue, and that Arista has the burden of proving its expenses by a preponderance of the evidence.  In deciding whether or not to deduct costs proven by Arista in making the infringer's profits calculation, you may take into account whether or not Arista is a willful infringer.  If you find that Arista is a willful infringer, you may choose not to deduct some or all of Arista's costs.  The purpose of disallowing such deductions is to prevent willful infringers from using the benefits derived from another's copyrighted material to subsidize other operations of the company, and to ensure that a willful infringer does not benefit in any way from the infringement.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

---

[176]  Instruction No. 17.36, Comment, *Ninth Circuit Manual of Model Civil Jury Instructions* (2007) ("Generally, deductions of defendant's expenses are denied where the defendant's infringement is willful or deliberate."); *see also Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc.*, 772 F.2d 505, 515 (9th Cir. 1985) ("A portion of an infringer's overhead properly may be deducted from gross revenues to arrive at profits, at least where the infringement was not willful, conscious, or deliberate."); *Three Boys Music Corp. v. Bolton*, 212 F.3d 477, 488 (9th Cir. 2000) ("non-willful infringers [may be allowed to] deduct the income taxes and management fees that they paid relating to the infringing song").

## UNDISPUTED: Final Instruction No. 68 re Patent—What A Patent Is And How One Is Obtained[177]

This case also involves a dispute relating to a United States patent.  Before summarizing the positions of the parties and the legal issues involved in the dispute, let me take a moment to explain what a patent is and how one is obtained.

Patents are granted by the United States Patent and Trademark Office (sometimes called "the PTO").  The process of obtaining a patent is called patent prosecution.  A valid United States patent gives the patent owner the right to prevent others from making, using, offering to sell, or selling the patented invention within the United States, or from importing it into the United States, during the term of the patent without the patent holder's permission.  A violation of the patent owner's rights is called infringement.  The patent owner may try to enforce a patent against persons believed to be infringers by a lawsuit filed in federal court.

To obtain a patent one must file an application with the PTO.  The PTO is an agency of the federal government and employs trained examiners who review applications for patents.  The application includes what is called a "specification," which must contain a written description of the claimed invention telling what the invention is, how it works, how to make it and how to use it so others skilled in the field will know how to make or use it.  The specification concludes with one or more numbered sentences.  These are the patent "claims."  When the patent is eventually granted by the PTO, the claims define the boundaries of its protection and give notice to the public of those boundaries.

After the applicant files the application, a PTO patent examiner reviews the patent application to determine whether the claims are patentable and whether the specification adequately describes the invention claimed.  In examining a patent application, the patent examiner reviews records available to the PTO for what is referred to as "prior art."  The examiner also will review prior art if it is submitted to the PTO by the applicant.  Prior art is defined by law,

---

[177]   N.D. Cal. Model Patent Jury Instruction A.1 (July 16, 2015).

1120944.03

1   and I will give you at a later time specific instructions as to what constitutes prior art.  However, in

2   general, prior art includes things that existed before the claimed invention, that were publicly

3   known, or used in a publicly accessible way in this country, or that were patented or described in a

4   publication in any country.  The examiner considers, among other things, whether each claim

5   defines an invention that is new, useful, and not obvious in view of the prior art.  A patent lists the

6   prior art that the examiner considered; this list is called the "cited references."

7        After the prior art search and examination of the application, the patent examiner then

8   informs the applicant in writing what the examiner has found and whether any claim is patentable,

9   and thus will be "allowed."  This writing from the patent examiner is called an "office action."  If

10  the examiner rejects the claims, the applicant then responds and sometimes changes the claims or

11  submits new claims.  This process, which takes place only between the examiner and the patent

12  applicant, may go back and forth for some time until the examiner is satisfied that the application

13  and claims meet the requirements for a patent.  The papers generated during this time of

14  communicating back and forth between the patent examiner and the applicant make up what is

15  called the "prosecution history." All of this material becomes available to the public no later than

16  the date when the patent issues.

17       The fact that the PTO grants a patent does not necessarily mean that any invention claimed

18  in the patent, in fact, deserves the protection of a patent.  For example, the PTO may not have had

19  available to it all the information that will be presented to you.  A person accused of infringement

20  has the right to argue here in federal court that a claimed invention in the patent is invalid because

21  it does not meet the requirements for a patent.

22

23

24

25

26

27

28

UNDISPUTED AND DISPUTED PROPOSED JURY INSTRUCTIONS

1120944.03

1    **<u>DISPUTED: Cisco's Final Instruction No. 69 re Patent—Summary Of Patent Claim</u>**

2    **<u>Contentions</u>**[178]

3    I will now instruct you on Cisco's patent claim.

4    I will first give you a summary of each side's contentions in this case for the patent claim.

5    I will then tell you what each side must prove to win on each of its contentions.   Cisco seeks

6    money damages from Arista for allegedly infringing the '526 patent by making, importing, using,

7    selling and/or offering for sale products and services that Cisco argues are covered by claims 1, 6,

8    10, 11, 13-16, 19, and 23 of the '526 patent.  These are referred to as the Asserted Claims of the

9    '526 patent.  Cisco also argues that Arista has actively induced infringement of these claims of the

10   '526 patent by others and contributed to the infringement of these claims of the '526 patent by

11   others.  The products and services that are alleged to infringe are Arista switches, routers, and

12   associated products and services, that incorporate EOS, EOS+, vEOS network operating systems,

13   including but not limited to Arista's 7010, 7048, 7050, 7050X, 7100, 7150, 7200, 7250X, 7280E,

14   7300, 7300X, 7500, 7500E Series products, including but not limited to 7504, 7508, 7316, 7308,

15   7304, 7280SE-72, 7280SE-68, 7280SE-64, 7150S-24, 7150S-52, 7150S-64, 7250QX-64,

16   7050QX-32, 7050QX-32S, 7050SX-64, 7050SX-72, 7050SX-96, 7050SX-128, 7050TX- 48,

17   7050TX-64, 7050TX-72, 7050TX-96, 7050TX-128, 7050S-52, 7050-64, 7050Q-16, 7050T-36,

18   7050T-52, 7050T-64, 7048T-A, 7010T, and 7500R.

19   Arista denies that it has infringed the asserted claims of the patent and argues that, in

20   addition, the claims are invalid.

21   Your job is to decide whether the asserted claims of the '526 patent have been infringed

22   and whether any of the asserted claims of the '526 patent are invalid.  If you decide that any claim

23   of the patent has been infringed and is not invalid, you will then need to decide any money

24   damages to be awarded to Cisco to compensate it for the infringement.

25   You will also need to make a finding as to whether the infringement was willful.  If you

26

27

28   ---

[178] *"B.1. Summary of Contentions,"* N.D. Cal. Model Patent Jury Instructions.

1   decide that any infringement was willful, that decision should not affect any damage award you

2   make.  I will take willfulness into account later.

1120944.03

1    **UNDISPUTED: Final Instruction No. 70 re Patent—Interpretation Of Patent Claims**[179]

2        Before you decide whether Arista has infringed the claims of the patent or whether the

3    claims are invalid, you will need to understand the patent claims.  The patent claims are numbered

4    sentences at the end of the patent that describe the boundaries of the patent's protection.  It is my

5    job as judge to explain to you the meaning of any language in the claims that needs interpretation.

6        I have interpreted the meaning of some of the language in the patent claims involved in

7    this case.  You must accept those interpretations as correct.  These interpretations were handed to

8    you at the start of the trial.  For any claim term for which I have not provided you a definition, you

9    should apply the plain and ordinary meaning of that term, as understood by one of ordinary skill in

10   the art.  My interpretation of the language should not be taken as an indication that I have a view

11   regarding the issues of infringement and invalidity.  The decisions regarding infringement and

12   invalidity are yours to make.

13       I have made the following claim interpretations of terms found within the Asserted Claims:

14       For the phrase "management programs" in the '526 patent claims, I instruct you to

15   interpret that to mean the following: "tools or agents configured to execute user-directed

16   commands having their own respective command formats that provide management functions."

17       For the phrase "generic command" in the '526 patent claims, I instruct you to interpret that

18   to mean the following: "command that provides an abstraction of the tool-specific command

19   formats and syntax, enabling a user to issue the command based on the relative functions, as

20   opposed to the specific syntax for a corresponding tool."

21       For the phrase "command parse tree" in the '526 patent claims, I instruct you to interpret

22   that to mean the following: "a hierarchal data structure."

23       The following phrase appears in certain claims of the '526 patent: "the command parse tree

---

25   [179] "*B.2. Claim Construction,*" N.D. Cal. Model Patent Jury Instructions, *citing Markman v.*

26   *Westview Instruments, Inc.,* 517 U.S. 370, 384-391 (1996); *Phillips v. AWH Corp.*, 415 F.3d 1303, 1324 (Fed. Cir. 2005); *Pitney Bowes, Inc. v. Hewlett-Packard Co.*, 182 F.3d 1298, 1304-13 (Fed.

27   Cir. 1999); *Cybor Corp. v. FAS Techs.*, 138 F.3d 1448 (Fed. Cir. 1998) (*en banc*)*; Markman v.*

28   *Westview Instruments, Inc.*, 52 F.3d 967, 977 (Fed. Cir. 1995) (*en banc*).

1   having elements each specifying at least one corresponding generic command component and a

2   corresponding at least one command action value." Within that phrase, for the term "command

3   action value," I instruct you to interpret that to mean "a value that identifies a prescribed

4   command." For the larger phrase, I instruct you to interpret it to mean "the command parse tree

5   having elements, such that each element specifies at least one command action value for each

6   generic command component."

7        The following phrase appears in certain claims of the '526 patent: "means for validating a

8   generic command received from a user, the validating means configured for specifying valid

9   generic commands relative to a prescribed generic command format and having elements each

10  specifying at least one corresponding generic command component and a corresponding at least

11  one command action value, the validating means identifying one of the elements as a best match

12  relative to the generic command." This is a "means plus function" phrase, which I will explain to

13  you in greater detail a little later. For claim interpretation purposes, I instruct you that the

14  "structure" that is claimed with this language is "Parser 14 in Figure 2 of the '526 patent, which

15  includes the command word translation table 20 and the command parse tree 22, as described in

16  column 3, lines 36-61 of the '526 patent, and equivalents. Figure 3 of the '526 patent is an

17  alternative embodiment." I also instruct you that the "function" claimed in this claim language is

18  as follows: "(1) validating a generic command received from a user, (2) specifying valid generic

19  commands relative to a prescribed generic command format, (3) having elements each specifying

20  at least one corresponding generic component and a corresponding at least one command action

21  value, and (4) identifying one of the elements as a best match relative to the generic command."

22

23

24

25

26

27

28

UNDISPUTED AND DISPUTED PROPOSED JURY INSTRUCTIONS

1120944.03

**UNDISPUTED: Cisco's Final Instruction No. 71 re Patent—Types of Patent Claims**[180]

This case involves two types of patent claims: independent and dependent claims.

1.  An independent claim sets forth all of the elements that must be met in order for a product or process to be covered by that claim. Thus, it is not necessary to look at any other claim to determine what an independent claim covers. In this case, claims 1, 10, 14, and 23 of the '526 Patent are independent claims.

2.  The remaining Asserted Claims are dependent claims. A dependent claim does not itself recite all of the elements for the claim but refers to another claim or claims for some of its elements. In this way, the claim "depends" on another claim or claims. A dependent claim incorporates all of the elements of the claims to which it refers. The dependent claim then adds its own additional elements.

To determine what a dependent claim covers, it is necessary to look at both the dependent claim and any other claims to which it refers.

---

[180] Final Jury Instruction No. 24, *Nortek Air Solutions, LLC fka CES Group, LLC v. Energy Labs, Inc.*, Case No. 5:14-cv-02919-BLF, Dkt. 336 at 29 (Aug. 5, 2016); Final Jury Instructions, *Finjan, Inc. v. Blue Coat Systems, Inc.*, Case No. 13-CV-03999-BLF at 29 (Aug. 4, 2015).

UNDISPUTED AND DISPUTED PROPOSED JURY INSTRUCTIONS

1120944.03

1

## **UNDISPUTED: Final Instruction No. 72 re Patent—Patent Infringement: Burden Of**

2

## **Proof[181]**

3    [CISCO'S POSITION:  The sentence "Infringement must be proven on an element by

4  element basis" at the end of this instruction should not be included.]

5    [ARISTA POSITION:  The sentence "Infringement must be proven on an element by

6  element basis" at the end of this instruction should be included.]

7    I will now instruct you on the rules you must follow in deciding whether Cisco has proven

8  that Arista has infringed one or more of the asserted claims of the '526 patent.  To prove

9  infringement of any claim, Cisco must persuade you that it is more likely than not that Arista has

10  infringed that claim.  Infringement must be proven on an element by element basis

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26    [181] *"B.3.1,"* N.D. Cal. Model Patent Jury Instructions, citing *Warner-Lambert Co. v. Teva Pharm. USA, Inc.,* 418 F.3d 1326, 1341 n.15 (Fed. Cir. 2005); *Seal-Flex, Inc. v. Athletic Track and Court Constr.,* 172 F.3d 836, 842 (Fed. Cir. 1999); *Morton Int'l, Inc. v. Cardinal Chem. Co.,* 5 F.3d 1464, 1468-69 (Fed. Cir. 1993).

27

28

1120944.03

**UNDISPUTED: Final Instruction No. 73 re Patent—Direct Infringement of a Patent[182]**

[CISCO'S POSITION:  The phrase "or it may be infringed under the 'doctrine of equivalents'" in the first sentence of the last paragraph of this instruction should be included.]

[ARISTA POSITION:  The phrase "or it may be infringed under the 'doctrine of equivalents'" in the first sentence of the last paragraph of this instruction should not be included.]

A patent's claims define what is covered by the patent.  A product or method directly infringes a patent if it is covered by at least one claim of the patent.

Deciding whether a claim has been directly infringed is a two-step process.  The first step is to decide the meaning of the patent claim.  I have already made this decision, and I have already instructed you as to the meaning of the asserted patent claims.  The second step is to decide whether Arista has made, used, sold, offered for sale or imported within the United States a product or service covered by a claim of the '526 patent.  If it has, it infringes.  You, the jury, make this decision.

With one exception, you must consider each of the asserted claims of the patent individually, and decide whether Arista's products or services infringe that claim.  The one exception to considering claims individually concerns dependent claims.  A dependent claim includes all of the requirements of a particular independent claim, plus additional requirements of its own.  As a result, if you find that an independent claim is not infringed, you must also find that its dependent claims are not infringed.  On the other hand, if you find that an independent claim has been infringed, you must still separately decide whether the additional requirements of its dependent claims have also been infringed.

---

[182] "*B.3.2,*" N.D. Cal. Model Patent Jury Instructions, citing 35 U.S.C. § 271; *Warner-Jenkinson Co., Inc. v. Hilton Davis Chem. Co.*, 520 U.S. 17 (1997); *Cross Med. Prods., Inc. v. Medtronic Sofamor Danek, Inc.*, 424 F.3d 1293, 1310-11 (Fed. Cir. 2005); *DeMarini Sports, Inc. v. Worth, Inc.*, 239 F.3d 1314, 1330-34 (Fed. Cir. 2001); *Seal-Flex, Inc. v. Athletic Track and Court Constr.*, 172 F.3d 836, 842 (Fed. Cir. 1999); *Carroll Touch, Inc. v. Electro Mech. Sys., Inc.*, 15 F.3d 1573, 1576 (Fed. Cir. 1993).

1120944.03

You have heard evidence about both Cisco's commercial products and Arista's accused products and services. However, in deciding the issue of infringement you may not compare Arista's accused products and services to Cisco's commercial products. Rather, you must compare Arista's accused products and services to the claims of the '526 patent when making your decision regarding infringement.

Whether or not Arista knew its products or services infringed or even knew of the patent does not matter in determining direct infringement.

There are two ways in which a patent claim may be directly infringed. A claim may be "literally" infringed, or it may be infringed under the "doctrine of equivalents." The following instructions will provide more detail on these two types of direct infringement. You should note, however, that what are called "means-plus-function" requirements in a claim are subject to different rules for deciding direct infringement. I will describe these separate rules shortly.

1    **UNDISPUTED: Final Instruction No. 74 re Patent—Literal Infringement Of A Patent**[183]

2        To decide whether Arista's products and services literally infringe a claim of the '526

3    patent, you must compare that product or service with the patent claim and determine whether

4    every requirement of the claim is included in that product or service.  If so, Arista's product or

5    service literally infringes that claim.  If, however, Arista's product or service does not have every

6    requirement in the patent claim, Arista's product or service does not literally infringe that claim.

7    You must decide literal infringement for each asserted claim separately.

8        If the patent claim uses the term "comprising," that patent claim is to be understood as an

9    open claim.  An open claim is infringed as long as every requirement in the claim is present in

10   Arista's product or service. The fact that Arista's product or service also includes other parts or

11   steps will not avoid infringement, as long as it has every requirement in the patent claim.

---

[183] "*B.3.3,*" N.D. Cal. Model Patent Jury Instructions, citing *MicroStrategy Inc. v. Business Objects, S.A.*, 429 F.3d 1344, 1352-53 (Fed. Cir. 2005); *Netword, LLC v. Centraal Corp.,* 242 F.3d 1347, 1353 (Fed. Cir. 2001); *Cole v. Kimberly-Clark Corp.,* 102 F.3d 524, 532 (Fed. Cir. 1996); *Ecolab, Inc. v. FMC Corp.,* 535 F.3d 1369 (Fed. Cir. 2009); *Cross Med. Prods. v. Medtronic Sofamor Danek*, 424 F.3d 1293 (Fed. Cir. 2005); *BMC Res., Inc. v. Paymentech, L.P.,* 498 F.3d 1373 (Fed. Cir. 2007).

1120944.03

**DISPUTED: Cisco's Final Instruction No. 75 re Patent—Patent Infringement Under The Doctrine Of Equivalents[184]**

If you decide that Arista's products or services do not literally infringe an asserted patent claim, you must then decide whether those products or services infringe the asserted claim under what is called the "doctrine of equivalents."

Under the doctrine of equivalents, the product or service can infringe an asserted patent claim if it includes parts or steps that are identical or equivalent to the requirements of the claim. If the product or service is missing an identical or equivalent part or step to even one requirement of the asserted patent claim, the product or service cannot infringe the claim under the doctrine of equivalents. Thus, in making your decision under the doctrine of equivalents, you must look at each individual requirement of the asserted patent claim and decide whether the product or service has either an identical or equivalent part or step to that individual claim requirement.

A part or step of a product or service is equivalent to a requirement of an asserted claim if a person of ordinary skill in the field would think that the differences between the part or step and the requirement were not substantial as of the time of the alleged infringement.

Changes in technique or improvements made possible by technology developed after the patent application is filed may still be equivalent for the purposes of the doctrine of equivalents if it still meets the other requirements of the doctrine of equivalents set forth in this instruction.

One way to decide whether any difference between a requirement of an asserted claim and a part or step of the product or service is not substantial is to consider whether, as of the time of the alleged infringement, the part or step of the product or service performed substantially the

---

[184] "*B.3.4,*" N.D. Cal. Model Patent Jury Instructions, citing *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.,* 535 U.S. 722 (2002); *Warner-Jenkinson Co., Inc. v. Hilton Davis Chem. Co.,* 520 U.S. 17 (1997); *Graver Tank & Mfg. Co. v. Linde Air Prods. Co.,* 339 U.S. 605, 609 (1950); *Abraxis Bioscience, Inc. v. Mayne Pharma (USA) Inc.,* 467 F.3d 1370, 1379-82 (Fed. Cir. 2006); *Pfizer, Inc. v. Teva Pharms., USA, Inc.,* 429 F.3d 1364, 1378 (Fed. Cir. 2005); *Johnston & Johnston Assoc. v. R.E. Service Co.,* 285 F.3d 1046 (Fed. Cir. 2002) (*en banc*); *Multiform Desiccants, Inc. v. Medzam, Ltd.,* 133 F.3d 1473, 1480 (Fed. Cir. 1998); *Dolly, Inc. v. Spalding & Evenflo Cos.,* 16 F.3d 394, 397 (Fed. Cir. 1994).

1  same function, in substantially the same way, to achieve substantially the same result as the

2  requirement in the patent claim.

3        In deciding whether any difference between a claim requirement and the products or

4  services is not substantial, you may consider whether, at the time of the alleged infringement,

5  persons of ordinary skill in the field would have known of the interchangeability of the part or step

6  with the claimed requirement.  The known interchangeability between the claim requirement and

7  the part or step of the products or methods is not necessary to find infringement under the doctrine

8  of equivalents.  However, known interchangeability may support a conclusion that the difference

9  between the part or step in the products or methods and the claim requirement is not substantial.

10  The fact that a part or step of the products or methods performs the same function as the claim

11  requirement is not, by itself, sufficient to show known interchangeability

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

UNDISPUTED AND DISPUTED PROPOSED JURY INSTRUCTIONS

1120944.03

1    **UNDISPUTED: Final Instruction No. 76 re Patent—Means-Plus-Function Patent Claims:**

2    **Literal Infringement**[185]

3         I will now describe the separate rules that apply to "means-plus-function" requirements

4    that are used in some claims.  A means-plus-function requirement only covers the specific

5    structure disclosed in a patent specification for performing the claimed function and the

6    equivalents of those specific structure that perform the claimed function.  A means-plus-function

7    requirement does not cover all possible structures that could be used to perform the claimed

8    function.

9         As an example, the term "means for processing data" might be understood to encompass a

10   variety of different ways of making a calculation, including not only a computer or calculator but a

11   pencil and paper or even the human brain.  But because the phrase is a means-plus-function

12   requirement, we interpret that phrase not to cover every possible means for processing data, but

13   instead to cover the actual means disclosed in the patent for processing data and other means that

14   are equivalent to it.

15        For purposes of this trial, I have interpreted each means-plus-function requirement for you

16   and identified the structure in the patent specification that corresponds to these means-plus-

17   function requirements.  Specifically, the following phrase appears in certain claims of the '526

18   patent: "means for validating a generic command received from a user, the validating means

19   configured for specifying valid generic commands relative to a prescribed generic command

20   format and having elements each specifying at least one corresponding generic command

21   component and a corresponding at least one command action value, the validating means

22   identifying one of the elements as a best match relative to the generic command."

23        This is a "means plus function" phrase.  For claim interpretation purposes, as indicated

---

24

25        [185]  "*B.3.5,*" N.D. Cal. Model Patent Jury Instructions, citing 35 U.S.C. § 112(6); *Frank's Casing Crew & Rental Tools, Inc. v. Weatherford Intern., Inc.*, 389 F.3d 1370, 1378 (Fed. Cir. 2004); *Odetics, Inc. v. Storage Tech. Corp.*, 185 F.3d 1259, 1266 (Fed. Cir. 1999); *Chiuminatta Concrete Concepts, Inc. v. Cardinal Indus., Inc.*, 145 F.3d 1303, 1307 (Fed. Cir. 1998); *Micro Chem., Inc. v. Great Plains Chem. Co., Inc.*, 103 F.3d 1538, 1547 (Fed. Cir. 1997); *Valmont Indus., Inc. v. Reinke Mfg. Co., Inc.*, 983 F.2d 1039, 1042 (Fed. Cir. 1993).

26

27

28

1  earlier, I instruct you that the "structure" that is claimed with this language is "Parser 14 in Figure

2  2 of the '526 patent, which includes the command word translation table 20 and the command

3  parse tree 22, as described in column 3, lines 36-61 of the '526 patent, and equivalents. Figure 3 of

4  the '526 patent is an alternative embodiment." I also instruct you that the "function" claimed in

5  this claim language is as follows: "(1) validating a generic command received from a user, (2)

6  specifying valid generic commands relative to a prescribed generic command format, (3) having

7  elements each specifying at least one corresponding generic component and a corresponding at

8  least one command action value, and (4) identifying one of the elements as a best match relative to

9  the generic command."

10     In deciding if Cisco has proven that Arista's product includes structure covered by a

11  means-plus-function requirement, you must first decide whether the product has any structure that

12  performs the function I just described to you. If not, the claim containing that means-plus-

13  function requirement is not infringed.

14     If you find that the Arista product does have structure that performs the claimed function,

15  you must then determine whether that structure is the same as or equivalent to the structure I have

16  identified in the specification. If they are the same or equivalent, the means-plus-function

17  requirement is satisfied by that structure of the product. If all the other requirements of the claim

18  are satisfied, the product infringes the claim.

19     In order to prove that a structure in the Arista product is equivalent to the structure in the

20  '526 patent, Cisco must show that a person of ordinary skill in the field would have considered

21  that the differences between the structure described in the '526 patent and the structure in the

22  Arista product are not substantial. Cisco must also show that the structure was available on the

23  date the '526 patent was granted.

24

25

26

27

28

UNDISPUTED AND DISPUTED PROPOSED JURY INSTRUCTIONS

1120944.03

**<u>UNDISPUTED: Final Instruction No. 77 re Patent—Contributory Patent Infringement</u>**[186]

Cisco also contends that Arista has contributed to infringement by another. Contributory infringement may arise when someone supplies something that is used to infringe one or more of the patent claims. Contributory infringement is a form in indirect infringement.

In order for there to be contributory infringement by Arista, someone other than Arista must directly infringe a claim of the '526 patent; if there is no direct infringement by anyone, there can be no contributory infringement.

If you find someone has directly infringed the '526 patent, then contributory infringement exists if:

1. Arista supplied an important component of the infringing part of the product or service;

2. The component is not a common component suitable for non-infringing use; and

3. Arista supplied the component with the knowledge of the '526 patent and knowledge that the component was especially made or adapted for use in an infringing manner.

A "common component suitable for non-infringing use" is a component that has uses other than as a component of the patented product or other than in the patented method, and those other uses are not occasional, farfetched, impractical, experimental, or hypothetical.

1120944.03

1    **UNDISPUTED: Final Instruction No. 78 re Patent—Inducing Patent Infringement**[187]

2    [CISCO'S POSITION:  The last sentence should be included.]

3    [ARISTA'S POSITION:  The last sentence should not be included.]

4

5    Cisco argues that Arista has actively induced another to infringe the '526 patent.  In order

6    for Arista to have induced infringement, Arista must have induced another to directly infringe a

7    claim of the '526 patent; if there is no direct infringement by anyone, there can be no induced

8    infringement.  Induced infringement is a form of indirect infringement.

9    In order to be liable for inducing infringement, Arista must have:

10   1.  Intentionally taken action that actually induced direct infringement;

11   2.  Been aware of the '526 patent; and

12   3.  Known that the acts it was causing would infringe the patent.

13

14   Arista may be considered to have known that the acts it was causing would infringe the

15   '526 patent if it subjectively believed there was a high probability that the direct infringer's

16   product or method was patented and nevertheless deliberately took steps to avoid learning that

17   fact, in other words, willfully blinded itself to the infringing nature of the direct infringer's acts.

18   Even if Arista believed any of the Asserted Claims were invalid, it can still be liable for

19   inducing infringement.[188]

20

21

22

23

24   _____

25   [187] "*B.3.9,*" N.D. Cal. Model Patent Jury Instructions, citing 35 U.S.C. § 271(b); *Commil USA,*
*LLC v. Cisco Systems, Inc.,* 135 S.Ct. 1920, 1928-31 (2015); *Global-Tech Appliances, Inc. et. al.*
26   *v. SEB S.A.,* 131 S.Ct. 2060, 2070-71 (2011).

27   [188] Final Jury Instruction No. 28, *Nortek Air Solutions, LLC fka CES Group, LLC v. Energy*
*Labs, Inc.*, Case No. 5:14-cv-02919-BLF, Dkt. 336  at 33 (Aug. 5, 2016); *Commil USA, LLC v.*
*Cisco Systems, Inc.*, 135 S.Ct. 1920, 1928-31 (2015).

28

1120944.03

**<u>DISPUTED: Cisco's Final Instruction No. 79 re Patent—Willful Patent Infringement</u>**[189]

In this case, Cisco argues that Arista willfully infringed Cisco's '526 Patent. To prove willful infringement against Arista, Cisco must first persuade you that Arista infringed a valid claim of Cisco's patent. The requirements for proving such infringement were discussed in my prior instructions.

To prove willful infringement of a patent, Cisco must persuade you by a preponderance of the evidence that Arista had knowledge of the patent at issue and acted in bad faith, wantonly, maliciously, deliberately, consciously wrongfully, flagrantly, or with reckless disregard of any of the Asserted Claims of any of the Cisco Patents. You must base your verdict on the knowledge and actions of Arista at the time the infringement happened. Infringement alone is not enough to prove willfulness and mere knowledge of the '526 Patent at the time of infringement is not enough to prove willfulness.

You should consider all of the circumstances including the motive or intent of Arista in developing and selling the accused products, whether Arista knew or should have known that its conduct was unreasonably risky and whether Arista had a reasonable belief at the time of the alleged infringement that its products did not infringe any of the Asserted Claims of the '526 Patent.

---

[189] Final Jury Instruction No. 30, *Nortek Air Solutions, LLC fka CES Group, LLC v. Energy Labs, Inc.*, No. 5:14-cv-02919-BLF, Dkt. 336 at 35 (Aug. 5, 2016); "*B.3.10,*" N.D. Cal. Model Patent Jury Instructions, citing 35 U.S.C. § 284; *In re Seagate Tech., LLC*, 497 F.3d 1360 (Fed. Cir. 2007); *Knorr-Bremse Systeme Fuer Nutzfahrzeuge GmbH v. Dana Corp.*, 383 F.3d 1337, 1345 (Fed. Cir. 2004) (*en banc*); *Crystal Semiconductor Corp. v. Tritech Microelectronics Int'l, Inc.*, 246 F.3d 1336, 1346 (Fed. Cir. 2001); *WMS Gaming Inc. v. Int'l Game Tech.*, 184 F.3d 1339, 1354 (Fed. Cir. 1999); *Read Corp. v. Portec, Inc.*, 970 F.2d 816 (Fed. Cir. 1992); *Gustafson, Inc. v. Intersystems Indus. Prods., Inc.*, 897 F.2d 508, 510 (Fed. Cir. 1990).

1120944.03

1    **DISPUTED: Arista's Final Instruction No. 79 re Patent—Willful Patent Infringement**[190]

2         In this case, Cisco argues that Arista willfully infringed the '526 Patent by selling "EOS+"

3    after Cisco filed its complaint. To prove willful infringement against Arista, Cisco must first

4    persuade you that Arista infringed a valid claim of Cisco's patent. The requirements for proving

5    such infringement were discussed in my prior instructions.

6         To prove willful infringement of a patent, Cisco must persuade you by a preponderance of

7    the evidence that Arista had knowledge of the patent at issue and acted in bad faith, wantonly,

8    maliciously, deliberately, consciously wrongfully, flagrantly, or with reckless disregard of any of

9    the Asserted Claims of any of the Cisco Patents.  You must base your verdict on the knowledge

10   and actions of Arista at the time the infringement happened.  Infringement alone is not enough to

11   prove willfulness and mere knowledge of the '526 Patent at the time of infringement is not enough

12   to prove willfulness.  To prove that the sale of EOS+ is an act of willful infringement, Cisco must

13   persuade you that EOS+ included new infringing functionality that was not present in EOS.

14        You should consider all of the circumstances including the motive or intent of Arista in

15   developing and selling the accused products, whether Arista knew or should have known that its

16   conduct was unreasonably risky and whether Arista had a reasonable belief at the time of the

17   alleged infringement that its products did not infringe any of the Asserted Claims of the '526

18   Patent.

19

20

21

22

23    [190] Final Jury Instructions, *Nortek Air Solutions, LLC fka CES Group, LLC v. Energy Labs,*

24   *Inc.*, No. 5:14-cv-02919-BLF, Dkt. 336 (Aug. 5, 2016); "*B.3.10,*" N.D. Cal. Model Patent Jury

25   Instructions, citing 35 U.S.C. § 284; *In re Seagate Tech., LLC*, 497 F.3d 1360 (Fed. Cir. 2007);
     *Knorr-Bremse Systeme Fuer Nutzfahrzeuge GmbH v. Dana Corp.*, 383 F.3d 1337, 1345 (Fed. Cir.

26   2004) (*en banc*); *Crystal Semiconductor Corp. v. Tritech Microelectronics Int'l, Inc.,* 246 F.3d
     1336, 1346 (Fed. Cir. 2001); *WMS Gaming Inc. v. Int'l Game Tech.*, 184 F.3d 1339, 1354 (Fed.

27   Cir. 1999); *Read Corp. v. Portec, Inc.*, 970 F.2d 816 (Fed. Cir. 1992); *Gustafson, Inc. v.*
     *Intersystems Indus. Prods., Inc.,* 897 F.2d 508, 510 (Fed. Cir. 1990).

28                                          -122-                    Case No. 5:14-cv-5344-BLF
                            UNDISPUTED AND DISPUTED PROPOSED JURY INSTRUCTIONS

1120944.03

**DISPUTED: Cisco's Final Instruction No. 80 re Patent—Patent Invalidity: Burden Of Proof**[191]

I will now instruct you on the rules you must follow in deciding whether Arista has proven that the claims of the '526 patent are invalid.  Before discussing the specific rules, I want to remind you about the standard of proof that applies to this defense.  To prove invalidity of any patent claim, Arista must persuade you that a claim is invalid by clear and convincing evidence. In other words, Arista must persuade you that it is highly probable that the claim is invalid.

When a party has the burden of proving any claim or defense by clear and convincing evidence, it means that the party must present evidence that leaves you with a firm belief or conviction that it is highly probable that the factual contentions of the claim or defense are true. This is a higher standard of proof than proof by a preponderance of the evidence, but it does not require proof beyond a reasonable doubt.[192]

---

[191] "*B.4.1,*" N.D. Cal. Model Patent Jury Instructions, citing *Microsoft Corp. v. i4i LTD Partnership*, 131 S.Ct. 2238, 2242, 2251, ___ U.S. ___ (2011); *Buildex, Inc. v. Kason Indus., Inc.*, 849 F.2d 1461, 1463 (Fed. Cir. 1988); *Hybritech, Inc. v. Monoclonal Antibodies, Inc.*, 802 F.2d 1367, 1375 (Fed. Cir. 1986).

[192] Instruction No. 1.4, *Ninth Circuit Manual of Model Civil Jury Instructions* (2007).

UNDISPUTED AND DISPUTED PROPOSED JURY INSTRUCTIONS

1120944.03

**<u>UNDISPUTED: Final Instruction No. 81 re Patent—Prior Art</u>**

Prior art may include publications or patents that disclose the claimed invention or elements of the claimed invention, which were published or patented before the invention was made or more than one year before the filing date of the patent application. However, prior art does not include a publication that describes the inventor's own work and was published less than one year before the date of invention.

In this case, you must determine the dates of invention for the asserted claims of the '526 Patent.  The date of invention that you determine is related to the issue of whether the prior art described in the evidence was published or patented before the invention was made.  Cisco contends that the date of invention for the Asserted Claims of the '526 Patent is November 17, 1999, and Arista contends that the date of invention for the '526 Patent was the filing date of the '526 Patent, June 28, 2000.  As such, you must determine the dates of invention for the asserted claims of the '526 Patent.

The date of invention is presumed to be the filing date of the patent.  Here, Arista has the burden of coming forward with evidence that there is anticipating prior art, then Cisco has the burden to come forward with evidence that it is entitled to the earlier filing date, and then, Arista has the burden to come forward with evidence that Cisco is not entitled to the benefit of the earlier filing date.

The date of invention may be earlier than the filing date of the patent if Cisco proved, by a preponderance of the evidence, that the invention was conceived earlier and thereafter the inventors were diligent in reducing the invention to practice.

Conception is the mental part of an inventive act, i.e., the formation in the mind of the inventor of a definite and permanent idea of the complete and operative invention as it is thereafter to be applied in practice, even if the inventor did not know at the time that the invention would work.  Conception of an invention is complete when the idea is so clearly defined in the inventor's mind that, if the idea were communicated to a person having ordinary skill in the field of the technology, he or she would be able to reduce the invention to practice without undue research or

-124-

experimentation.  This requirement does not mean that the inventor has to have a prototype built, or actually explain her or his invention to another person.  But, there must be some evidence that confirms the date on which the inventor had the complete idea.  Conception may be proven when the invention is shown in its complete form by drawings, disclosure to another person, or other forms of evidence presented at trial.

Diligence means working continuously, though not necessarily every day.  There is no rule requiring a specific kind of activity in determining whether the applicant was diligent in reducing the invention to practice.  Diligence may be shown by a variety of activities, including the diligence of an attorney in preparing the patent application.  Once a claimed invention is fully described in a filed patent application, it is considered "reduced to practice."

In this case, the date of invention for the '526 Patent is presumed to be the filing date, June 28, 2000.  Cisco contends that the Asserted Claims are entitled to an earlier date of invention of at least November 17, 1999 based on conception of the invention by at least November 17, 1999, and diligence in its reduction to practice of the invention by at least June 28, 2000.  Arista contends that the date of invention for the '526 patent is its filing date, June 28, 2000.  If necessary, you must determine the date of inventions for the asserted claims of the '526 Patent.

UNDISPUTED AND DISPUTED PROPOSED JURY INSTRUCTIONS

1120944.03

1    **UNDISPUTED: Final Instruction No. 82 re Patent—Anticipation[193]**

2        A patent claim is invalid if the claimed invention is not new.  For the claim to be invalid

3    because it is not new, all of its requirements must have existed in a single device or method that

4    predates the claimed invention, or must have been described in a single previous publication or

5    patent that predates the claimed invention.  In patent law, these previous devices, methods,

6    publications or patents are called "prior art references."  If a patent claim is not new we say it is

7    "anticipated" by a prior art reference.

8        The description in the written reference does not have to be in the same words as the claim,

9    but all of the requirements of the claim must be there, either stated or necessarily implied, so that

10   someone of ordinary skill in the field of computer networking looking at that one reference would

11   be able to make and use the claimed invention.  Anticipation of a claim must be determined on an

12   element-by-element basis.  A single prior art references must also disclose those elements as

13   arranged in the claim.

14       Here is a list of the ways that Arista can show that a patent claim was not new:

15   • If the claimed invention was already publicly known or publicly used by others in

16   the United States before the date of invention;

17   • If the claimed invention was already patented or described in a printed publication

18   anywhere in the world before the date of invention;

19

20

21

22   [193] "*B.4.3a1*," N.D. Cal. Model Patent Jury Instructions, citing 35 U.S.C. § 102(a), (c), (e), (f)
and (g); *Flex-Rest, LLC v. Steelcase, Inc.*, 455 F.3d 1351, 1358-60 (Fed. Cir. 2006); *Invitrogen*

23   *Corp. v. Biocrest Mfg., L.P.*, 424 F.3d 1374, 1379-82 (Fed. Cir. 2005); *Apotex U.S.A., Inc. v.
Merck & Co.*, 254 F.3d 1031, 1035 (Fed. Cir. 2001); *Mycogen Plant Science, Inc. v. Monsanto*

24   *Co.*, 243 F.3d 1316, 1330 (Fed. Cir. 2001); *Ecolochem, Inc. v. S. Cal. Edison Co.*, 227 F.3d 1361,
1367-70 (Fed. Cir. 2000); *Singh v. Brake*, 222 F.3d 1362, 1366-70 (Fed. Cir. 2000); *Pannu v.*

25   *Iolab Corp.*, 155 F.3d 1344, 1349 (Fed. Cir. 1998); *Gambro Lundia AB v. Baxter Healthcare
Corp.*, 110 F.3d 1573, 1576-78 (Fed. Cir. 1997); *Lamb-Weston, Inc. v. McCain Foods, Ltd.*, 78

26   F.3d 540, 545 (Fed. Cir. 1996); *In re Bartfeld*, 925 F.2d 1450 (Fed. Cir. 1985); *Ralston Purina Co.*

27   *v. Far-Mar-Co, Inc.*, 772 F.2d 1570, 1574 (Fed. Cir. 1985); *American Stock Exch., LLC v. Mopies*,
250 F. Supp. 2d 323 (S.D.N.Y. 2003); *In re Wyer*, 655 F.2d 221, 226 (C.C.P.A. 1981).

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- If the claimed invention was already made by someone else in the United States before the date of invention, if that other person had not abandoned the invention or kept it secret; or

- If the claimed invention was already described in another issued U.S. patent or published U.S. patent application that was based on a patent application filed before June 28, 2000 or the date of invention.

1120944.03

**UNDISPUTED: Final Instruction No. 83 re Patent—Obviousness**[194]

Not all innovations are patentable.  A patent claim is invalid if the claimed invention would have been obvious to a person of ordinary skill in the field at the time the application was filed.  The court, however, is charged with the responsibility of making the determination as to whether a patent claim was obvious based upon your determination of several factual questions.

First, you must decide the level of ordinary skill in the field that someone would have had at the time the claimed invention was made.  In deciding the level of ordinary skill, you should consider all the evidence introduced at trial, including:

    1.  The levels of education and experience of persons working in the field;

    2.  The types of problems encountered in the field; and

    3.  The sophistication of the technology.

Cisco contends that the level of ordinary skill in the field would be possessed by someone with a "Bachelor's of science degree in electrical engineering, computer science or engineering, or a related field, and two to four years of work or research experience in the field of computer networking, or a Master's degree and one to two years of experience."  Arista contends that the level of ordinary skill in the field would be possessed by someone with "at least a bachelor's degree in computer science and 3-5 years of experience in systems development."

Second, you must decide the scope and content of the prior art.  In order to be considered as prior art to the '526 patent, these references must be reasonably related to the claimed invention of that patent.  A reference is reasonably related if it is in the same field as the claimed invention

---

[194] "*B.4.3b,*" N.D. Cal. Model Patent Jury Instructions, citing 35 U.S.C. § 103; *Graham v. John Deere Co.*, 383 U.S. 1 (1966); *KSR Intern. Co. v. Teleflex, Inc.*, 550 U.S. 398, 407 (2007); *Ruiz v. A.B. Chance Co.*, 234 F.3d 654 (Fed. Cir. 2000); *Arkie Lures, Inc. v. Gene Larew Tackle, Inc.*, 119 F.3d 953, 957 (Fed. Cir. 1997); *Specialty Composites v. Cabot Corp.*, 845 F.2d 981, 991 (Fed. Cir. 1988); *Windsurfing Int'l, Inc. v. AMF, Inc.*, 782 F.2d 995, 1000 (Fed. Cir. 1986); *Pentec. Inc. v. Graphic Controls Corp.*, 776 F.2d 309, 313 (Fed. Cir. 1985). *See Novo Nordisk A/S v. Becton Dickinson & Co.*, 304 F.3d 1216, 1219-20 (Fed. Cir. 2002); *Wang Labs. v. Toshiba Corp.*, 993 F.2d 858, 864 (Fed. Cir. 1993); *Daiichi Sankyo Co. v. Apotex, Inc.*, 501 F.3d. 1254, 1256 (Fed. Cir. 2007)*; Brown & Williamson Tobacco Corp. v. Philip Morris Inc.*, 229 F.3d 1120, 1125 (Fed. Cir. 2000); *SIBIA Neurosciences, Inc. v. Cadus Pharm. Corp.*, 225 F.3d 1349, 1355 (Fed. Cir. 2000); *Ryko Mfg. Co. v. Nu-Star, Inc.*, 950 F.2d 714, 718-19 (Fed. Cir. 1991).

or is from another field to which a person of ordinary skill in the field would look to solve a known problem.

Third, you must decide what difference, if any, existed between the claimed invention and the prior art.

Finally, you must determine which, if any, of the following factors have been established by the evidence:

1. Commercial success of a product due to the merits of the claimed invention;

2. A long felt need for the solution provided by the claimed invention;

3. Unsuccessful attempts by others to find the solution provided by the claimed invention;

4. Copying of the claimed invention by others;

5. Unexpected and superior results from the claimed invention;

6. Acceptance by others of the claimed invention as shown by praise from others in the field or from the licensing of the claimed invention;

7. Other evidence tending to show nonobviousness;

8. Independent invention of the claimed invention by others before or at about the same time as the named inventor thought of it; and

9. Other evidence tending to show obviousness.

If present, commercial success of a product, long-felt need for the solution, unsuccessful attempts by others, copying by others, unexpected and superior results, acceptance by others of the claimed invention, and other evidence of nonobviousness, must be considered by you as an indication that the claimed invention would not have been obvious as of the effective filing date of the claimed invention. Although you should consider any evidence of these factors, the relevance and importance of any of them to your decision on whether the claimed invention would have been obvious is up to you.

1120944.03

1    **UNDISPUTED: Final Instruction No. 84 re Patent—Damages: Burden Of Proof**[195]

2         I will instruct you about the measure of damages for Cisco's patent claim.  By instructing

3    you on damages, I am not suggesting which party should win on any issue.  If you find that Arista

4    infringed any valid claim of the '526 patent, you must then determine the amount of money

5    damages to be awarded to Cisco to compensate it for the infringement.

6         The amount of those damages must be adequate to compensate Cisco for the infringement.

7    A damages award should put the patent holder in approximately the financial position it would

8    have been in had the infringement not occurred, but in no event may the damages award be less

9    than a reasonable royalty.  You should keep in mind that the damages you award are meant to

10   compensate Cisco and not to punish Arista.

11        Cisco has the burden to persuade you of the amount of its damages.  You should award

12   only those damages that Cisco more likely than not suffered.  While Cisco is not required to prove

13   its damages with mathematical precision, it must prove them with reasonable certainty.  Cisco is

14   not entitled to damages that are remote or speculative.

15

16

17

18

19

20

21

22

23

24

---

25   [195] "*B.5.1,*" N.D. Cal. Model Patent Jury Instructions, citing 35 U.S.C. § 284; *Dow Chem. Co.*

26   *v. Mee Indus., Inc.*, 341 F.3d 1370, 1381-82 (Fed. Cir. 2003); *Grain Processing Corp. v. American Maize-Prod. Co.*, 185 F.3d 1341, 1349 (Fed. Cir. 1999); *Maxwell v. J. Baker, Inc.*, 86 F.3d 1098,

27   1108-09 (Fed. Cir. 1996); *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1544-45 (Fed. Cir. 1995)

28   (en banc).

1120944.03

1    **UNDISPUTED: Final Instruction No. 85 re Patent—Damages In The Form Of A Reasonable**

2    **Royalty: Definition of a "Reasonable Royalty"[196]**

3        A royalty is a payment made to a patent holder in exchange for the right to make, use or

4    sell the claimed invention.  This right is called a "license."  A reasonable royalty is the payment

5    for the license that would have resulted from a hypothetical negotiation between the patent holder

6    and the infringer taking place at the time when the infringing activity first began.  In considering

7    the nature of this negotiation, you must assume that the patent holder and the infringer would have

8    acted reasonably and would have entered into a license agreement.  You must also assume that

9    both parties believed the patent was valid and infringed.  Your role is to determine what the result

10   of that negotiation would have been.  The test for damages is what royalty would have resulted

11   from the hypothetical negotiation and not simply what either party would have preferred.

12       One way to calculate a royalty is to determine a one-time lump sum payment that the

13   infringer would have paid at the time of the hypothetical negotiation for a license covering all

14   sales of the licensed product for some period of time.  That period of time may include both past

15   and future sales.  When a one-time lump sum is paid, the infringer pays a single price for a license

16   covering both past and future infringing sales.

17

18

19

20

21

22   _____

23   [196]  "B.5.7," N.D. Cal. Model Patent Jury Instructions, citing *Garretson v. Clark,* 111 U.S. 120
     (1884); *Ericsson v. D-Link Sys., Inc.*, 773 F.3d 1201, 1226 (Fed. Cir. 2014); *VirnetX, Inc. v. Cisco*
24   *Sys., Inc.*, 767 F.3d 1308, 1326-34 (Fed. Cir. 2014); *LaserDynamics, Inc. v. Quanta Computer,*
     *Inc.,* 694 F.3d 51, 67-68 (Fed. Cir. 2012); *Lucent v. Gateway,* 580 F.3d 1301, 1336-39 (Fed. Cir.
25   2009*); Golight, Inc., v. Wal-Mart Stores, Inc.*, 355 F.3d 1327, 1338 (Fed. Cir. 2004); *Maxwell v.*
     *Baker, Inc.*, 86 F.3d 1098, 1108-10 (Fed. Cir. 1996); *Mahurkar v. C.R. Bard, Inc.*, 79 F.3d 1572,
26   1579-81 (Fed. Cir. 1996); *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1554 (Fed. Cir. 1995) (en
     banc); *Georgia-Pacific Corp. v. United States Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y.
27   1970).

28                                                    -131-                        Case No. 5:14-cv-5344-BLF
                                UNDISPUTED AND DISPUTED PROPOSED JURY INSTRUCTIONS

1120944.03

1    **UNDISPUTED: Final Instruction No. 86 re Patent—Damages: Date Of Commencement**[197]

2    Damages that Cisco may be awarded by you commence on the date that Arista has both

3    infringed and been notified of the '526 patent.  In this case, Cisco and Arista agree that date was

4    December 5, 2014.

---

[197] 35 U.S.C. § 287; *Crystal Semiconductor Corp. v. Tritech Microelectronics Int'l, Inc.*, 246 F.3d 1336 (Fed. Cir. 2001); *Nike Inc. v. Wal-Mart Stores*, 138 F.3d 1437, 1443-44 (Fed. Cir. 1998); *Maxwell v. Baker, Inc.*, 86 F.3d 1098, 1111-12 (Fed. Cir. 1996); *American Med. Sys. v. Medical Eng'g Corp.*, 6 F.3d 1523, 1534 (Fed. Cir. 1993); *Devices for Med., Inc. v. Boehl*, 822 F.2d 1062, 1066 (Fed. Cir. 1987).

## UNDERLINED: UNDISPUTED: Final Instruction No. 88 re Duty To Deliberate[198]

Before you begin your deliberations, elect one member of the jury as your presiding juror. That person will preside over the deliberations and serve as the spokesperson for the jury in court.

You shall diligently strive to reach agreement with all of the other jurors if you can do so. Your verdict must be unanimous.

Each of you must decide the case for yourself, but you should do so only after you have considered all of the evidence, discussed it fully with the other jurors, and listened to their views.

It is important that you attempt to reach a unanimous verdict but, of course, only if each of you can do so after having made your own conscientious decision. Do not be unwilling to change your opinion if the discussion persuades you that you should. But do not come to a decision simply because other jurors think it is right, or change an honest belief about the weight and effect of the evidence simply to reach a verdict.

---

[198]  Instruction No. 3.1, *Ninth Circuit Manual of Model Civil Jury Instructions* (2007).

1120944.03

### **UNDISPUTED: Final Instruction No. 89 re Conduct Of The Jury**[199]

Because you must base your verdict only on the evidence received in the case and on these instructions, I remind you that you must not be exposed to any other information about the case or to the issues it involves. Except for discussing the case with your fellow jurors during your deliberations:

Do not communicate with anyone in any way and do not let anyone else communicate with you in any way about the merits of the case or anything to do with it. This includes discussing the case in person, in writing, by phone or electronic means, via email, via text messaging, or any Internet chat room, blog, website or application, including but not limited to Facebook, YouTube, Twitter, Instagram, LinkedIn, Snapchat, or any other forms of social media. This applies to communicating with your family members, your employer, the media or press, and the people involved in the trial. If you are asked or approached in any way about your jury service or anything about this case, you must respond that you have been ordered not to discuss the matter and to report the contact to the court.

Do not read, watch, or listen to any news or media accounts or commentary about the case or anything to do with it[, although I have no information that there will be news reports about this case]; do not do any research, such as consulting dictionaries, searching the Internet, or using other reference materials; and do not make any investigation or in any other way try to learn about the case on your own. Do not visit or view any place discussed in this case, and do not use Internet programs or other devices to search for or view any place discussed during the trial. Also, do not do any research about this case, the law, or the people involved—including the parties, the witnesses or the lawyers—until you have been excused as jurors. If you happen to read or hear anything touching on this case in the media, turn away and report it to me as soon as possible.

These rules protect each party's right to have this case decided only on evidence that has been presented here in court. Witnesses here in court take an oath to tell the truth, and the accuracy

---

[199]   Ninth Circuit Model Jury Instruction, 3.2.

1120944.03

1    of their testimony is tested through the trial process. If you do any research or investigation

2    outside the courtroom, or gain any information through improper communications, then your

3    verdict may be influenced by inaccurate, incomplete or misleading information that has not been

4    tested by the trial process. Each of the parties is entitled to a fair trial by an impartial jury, and if

5    you decide the case based on information not presented in court, you will have denied the parties a

6    fair trial. Remember, you have taken an oath to follow the rules, and it is very important that you

7    follow these rules.

8        A juror who violates these restrictions jeopardizes the fairness of these proceedings. If any

9    juror is exposed to any outside information, please notify the court immediately.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1120944.03

1    **<u>UNDISPUTED: Final Instruction No. 90 re Communication With Court</u>**[200]

2         If it becomes necessary during your deliberations to communicate with me, you may send

3    a note through the marshal, signed by your presiding juror or by one or more members of the jury.

4    No member of the jury should ever attempt to communicate with me except by a signed writing; I

5    will communicate with any member of the jury on anything concerning the case only in writing, or

6    here in open court.  If you send out a question, I will consult with the parties before answering it,

7    which may take some time.  You may continue your deliberations while waiting for the answer to

8    any question.  Remember that you are not to tell anyone—including me—how the jury stands,

9    numerically or otherwise, until after you have reached a unanimous verdict or have been

10    discharged.  Do not disclose any vote count in any note to the court.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

---

[200]    Instruction No. 3.3, *Ninth Circuit Manual of Model Civil Jury Instructions* (2007).

1120944.03

## **UNDISPUTED: Final Instruction No. 91 re Return Of Verdict**[201]

A verdict form has been prepared for you. After you have reached unanimous agreement on a verdict, your foreperson should complete the verdict form according to your deliberations, sign and date it, and advise the [clerk] [bailiff] that you are ready to return to the courtroom.

---

[201] Instruction No. 3.5, *Ninth Circuit Manual of Model Civil Jury Instructions* (2007).

## DISPUTED: Arista's Final Instruction No. 92 re Glossary

**Some of the terms in this glossary will be defined in more detail in the instructions you are given. The definitions in the instructions must be followed and must control your deliberations. The terms defined in this glossary relate to Cisco's patent infringement claim.**

Abstract: A brief summary of the technical disclosure in a patent to enable the U.S. Patent and Trademark Office and the public to determine quickly the nature and gist of the technical disclosure in the patent.

Amendment: A patent applicant's change to one or more claims or to the specification either in response to an office action taken by a Patent Examiner or independently by the patent applicant during the patent application examination process.

Anticipation: A situation in which a claimed invention describes an earlier invention and, therefore, is not considered new and is not entitled to be patented.

Assignment: A transfer of patent rights to another called an "assignee" who upon transfer becomes the owner of the rights assigned.

Claim: Each claim of a patent is a concise, formal definition of an invention and appears at the end of the specification in a separately numbered paragraph. In concept, a patent claim marks the boundaries of the patent in the same way that a legal description in a deed specifies the boundaries of land, i.e. similar to a land owner who can prevent others from trespassing on the bounded property, the inventor can prevent others from using what is claimed. Claims may be independent or dependent. An independent claim stands alone. A dependent claim does not stand alone and refers to one or more other claims. A dependent claim incorporates whatever the other referenced claim or claims say.

Conception: The complete mental part of the inventive act which must be capable of proof, as by drawings, disclosure to another, etc.

Drawings: The drawings are visual representations of the claimed invention contained in a patent application and issued patent, and usually include several figures illustrating various aspects of the claimed invention.

Elements: The required parts of a device or the required steps of a method. A device or method infringes a patent if it contains each and every requirement of a patent claim.

Embodiment: A product or method that contains the claimed invention.

Enablement: A description of the invention that is sufficient to enable persons skilled in the field of the invention to make and use the invention. The specification of the patent must contain such an enabling description.

Examination: Procedure before the U.S. Patent and Trademark Office whereby a Patent Examiner reviews the filed patent application to determine if the claimed invention is patentable.

1120944.03

Filing Date:  Date a patent application, with all the required sections, has been submitted to the U.S. Patent and Trademark Office.

Infringement:  Violation of a patent occurring when someone makes, uses or sells a patented invention, without permission of the Cisco, within the United States during the term of the patent. Infringement may be direct, by inducement, or contributory.  Direct infringement is making, using or selling the patented invention without permission.  Inducing infringement is intentionally causing another to directly infringe a patent.  Contributory infringement is offering to sell or selling an item that is an important component of the invention, so that the buyer directly infringes the patent.  To be a contributory infringer one must know that the part being offered or sold is designed specifically for infringing the patented invention and is not a common component suitable for non-infringing uses.

Limitation:  A required part of an invention set forth in a patent claim.  A limitation is a requirement of the invention.  The word "limitation" is often used interchangeably with the word "requirement."

Nonobviousness:  One of the requirements for securing a patent. To be valid, the subject matter of the invention must not have been obvious to a person of ordinary skill in the field of the invention at the time of the earlier of the filing date of the patent application or the date of invention.

Office Action:  A written communication from the Patent Examiner to the patent applicant in the course of the application examination process.

Patent:  A patent is an exclusive right granted by the U.S. Patent and Trademark Office to an inventor to prevent others from making, using, offering to sell, or selling an invention within the United States, or from importing it into the United States, during the term of the patent.  When the patent expires, the right to make, use or sell the invention is dedicated to the public.  The patent has three parts, which are a specification, drawings and claims.  The patent is granted after examination by the U.S. Patent and Trademark Office of a patent application filed by the inventor which has these parts, and this examination is called the prosecution history.

Patent and Trademark Office (PTO):  An administrative branch of the U.S. Department of Commerce that is charged with overseeing and implementing the federal laws of patents and trademarks.  It is responsible for examining all patent applications and issuing all patents in the United States.

Prior Art:  Previously known subject matter in the field of a claimed invention for which a patent is being sought.  It includes issued patents, publications, and knowledge deemed to be publicly available such as trade skills, trade practices and the like.

Prosecution History:  The prosecution history is the complete written record of the proceedings in the PTO from the initial application to the issued patent.  The prosecution history includes the office actions taken by the PTO and the amendments to the patent application filed by the applicant during the examination process.

Reads On:  A patent claim "reads on" a device or method when each required part (requirement) of the claim is found in the device or method.

Reduction to Practice:  The invention is "reduced to practice" when it is sufficiently developed to show that it would work for its intended purpose.

Reexamination: A process in which a patent is reexamined by the PTO to determine whether one

1  or more of the claims are patentable with respect to submitted prior art which may consist only of
prior patents or printed publications.  An "ex parte" reexamination is initiated by Cisco or a third
2  party, but does not include the further participation of any third party.  An "inter partes"
reexamination is initiated by a third party who continues to participate in the proceedings.

3  Requirement:  A required part or step of an invention set forth in a patent claim. The word
"requirement" is often used interchangeably with the word "limitation."
4

5  Royalty:  A royalty is a payment made to the owner of a patent by a non-owner in exchange for
rights to make, use or sell the claimed invention.

6  Specification:  The specification is a required part of a patent application and an issued patent.  It
is a written description of the invention and of the manner and process of making and using the
7  claimed invention.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28
UNDISPUTED AND DISPUTED PROPOSED JURY INSTRUCTIONS

1120944.03

**<u>DISPUTED: Cisco's Final Instruction No. 93 re Copyright—Abandonment</u>**[202]

Arista contends that a copyright does not exist in Cisco's works because Cisco abandoned the copyrights.  Cisco cannot claim ownership of the copyright if it was abandoned.  In order to show abandonment, Arista has the burden of proving each of the following by a preponderance of the evidence:

    1. Cisco intended to surrender rights in the work; and

    2. An act by Cisco evidencing that intent.


Mere inaction does not constitute abandonment of the copyright; however, this may be a factor for you to consider in determining whether Cisco has abandoned the copyright.

If you find that Cisco has proved its copyright infringement claim, your verdict should be for Cisco unless you find that Arista has proved both of the two elements of this affirmative defense, in which case your verdict should be for Arista.

---

[202] Instruction No. 17.22, *Ninth Circuit Manual of Model Civil Jury Instructions* (2007).

1    **DISPUTED: Arista's Final Instruction No. 93 re Copyright—Abandonment**[203]

2    Arista claims that it is not liable for copyright infringement because Cisco has abandoned

3    its copyright. To find that Cisco abandoned its copyright, you must find that Cisco demonstrated

4    an intent to surrender its rights in the copyrighted work. Mere inaction alone by Cisco does not

5    constitute abandonment. However, inaction can be factored in with other evidence to determine

6    whether or not Cisco demonstrated the necessary intent to surrender its rights in its work. For

7    example, such intent to surrender rights is demonstrated if Cisco permitted broad circulation of the

8    copyrighted work without a copyright notice affixed, or has failed over an extended period to

9    prevent others from infringing the copyrighted work.

10    Arista has the burden to prove by a preponderance of the evidence that Cisco has

11    abandoned its copyright. Should you find that Arista has satisfied this burden, then you should

12    find in favor of Arista on the claim of copyright infringement.

---

[203] ABA Model Jury Instructions, Copyright, Trademark, and Trade Dress Litigation, Instruction 1.6.8.

1120944.03

1

**DISPUTED: Cisco's Final Instruction No. 94 re Copyright—Waiver**

2      [CISCO'S POSITION:  There is no independent affirmative defense of waiver that is not

3  duplicative of an affirmative defense of abandonment.  *See* 4 NIMMER ON COPYRIGHT § 13.06

4  ("[S]trictly speaking, 'waiver' itself does not serve as a defense to copyright infringement.

5  Instead, ***abandonment*** of the copyright  (whether by plaintiff herself or her predecessor in interest)

6  constitutes an effective defense in an infringement action.") (emphasis in original, footnotes

7  omitted).  If the Court should disagree, Cisco respectfully preserves its right to propose a proper

8  instruction on waiver.]

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1120944.03

1

### **DISPUTED: Arista's Final Instruction No. 94 re Copyright—Waiver**[204]

2

3

Arista contends that Cisco waived its rights to enforce the copyrights at issue. In order to

4

prove waiver of its rights to protect its copyrights, Arista must show by a preponderance of the

5

evidence that Cisco, with full knowledge of the material facts, intentionally relinquished its rights

to enforce the copyrights it asserts.

6

7

A waiver may be expressed, based on the words of the waiving party, or implied, based on

8

conduct so inconsistent with the intent to enforce a right as to induce a reasonable belief that such

right has been relinquished. Waiver does not require any act or conduct by the other party.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

_____

27

[204] *Qualcomm Inc. v. Broadcom Corp.*, 548 F.3d 1004, 1019-1020 (Fed. Cir. 2008); *United States v. King Features Entm't, Inc.*, 843 F.2d 394, 399 (9th Cir. 1988).

28

1120944.03

1 | Dated: October 21, 2016

Respectfully submitted,

2 | /s/ John M. Neukom

3 | Kathleen Sullivan (SBN 242261)
kathleensullivan@quinnemanuel.com
QUINN EMANUEL URQUHART &
4 | SULLIVAN LLP
51 Madison Avenue, 22nd Floor
5 | New York, NY 10010
Telephone: (212) 849-7000
6 | Facsimile: (212) 849-7100

7 | Sean S. Pak (SBN 219032)
seanpak@quinnemanuel.com
8 | Amy H. Candido (SBN 237829)
amycandido@quinnemanuel.com
9 | John M. Neukom (SBN 275887)
johnneukom@quinnemanuel.com.
10 | QUINN EMANUEL URQUHART &
SULLIVAN LLP
11 | 50 California Street, 22nd Floor
San Francisco, CA 94111
12 | Telephone: (415) 875-6600
Facsimile: (415) 875-6700

13 |

14 | Steven Cherny (*admitted pro hac vice*)
steven.cherny@kirkland.com
15 | KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York 10022
16 | Telephone: (212) 446-4800
Facsimile: (212) 446-4900

17 |

18 | Adam R. Alper (SBN 196834)
adam.alper@kirkland.com
19 | KIRKLAND & ELLIS LLP
555 California Street
20 | San Francisco, California  94104
Telephone: (415) 439-1400
21 | Facsimile: (415) 439-1500

22 | Michael W. De Vries (SBN 211001)
michael.devries@kirkland.com
23 | KIRKLAND & ELLIS LLP
333 South Hope Street
24 | Los Angeles, California 90071
Telephone: (213) 680-8400
25 | Facsimile: (213) 680-8500

*Attorneys for Plaintiff Cisco Systems, Inc.*
26 | DATED:  October 21, 2016
Respectfully submitted,

27 |

28 | /s/  Brian L. Ferrall

-145-

1120944.03

1  KEKER & VAN NEST LLP
   ROBERT A. VAN NEST - # 84065
2  rvannest@kvn.com
   BRIAN L. FERRALL - # 160847
3  bferrall@kvn.com
   DAVID J. SILBERT - # 173128
4  dsilbert@kvn.com
   MICHAEL S. KWUN - # 198945
5  mkwun@kvn.com
   633 Battery Street
6  San Francisco, CA 94111-1809
   Telephone:     415 391 5400
7  Facsimile:     415 397 7188

8  *Attorneys for Defendant Arista Networks, Inc.*

9

10

11  **ATTORNEY ATTESTATION**

12

       I hereby attest, pursuant to Local Rule 5-1(i)(3), that the concurrence in the filing of this
13
   document has been obtained from the signatory indicated by the "conformed" signature (/s/) of
14
   John M. Neukom within this e-filed document.
15

16

17  /s/    *Brian L. Ferrall*

18

19

20

21

22

23

24

25

26

27

28
                                      -146-                  Case No. 5:14-cv-5344-BLF
                          UNDISPUTED AND DISPUTED PROPOSED JURY INSTRUCTIONS

1120944.03