1   Kathleen Sullivan (SBN 242261)
    kathleensullivan@quinnemanuel.com
2   QUINN EMANUEL URQUHART &
    SULLIVAN LLP
3   51 Madison Avenue, 22nd Floor
    New York, NY 10010
4   Telephone: (212) 849-7000
    Facsimile: (212) 849-7100
5
    Sean S. Pak (SBN 219032)
6   seanpak@quinnemanuel.com
    John M. Neukom (SBN 275887)
7   johnneukom@quinnemanuel.com
    QUINN EMANUEL URQUHART &
8   SULLIVAN LLP
    50 California Street, 22nd Floor
9   San Francisco, CA 94111
    Telephone: (415) 875-6600
10  Facsimile: (415) 875-6700

11  David Nelson (admitted pro hac vice)
    davenelson@quinnemanuel.com
12  QUINN EMANUEL URQUHART &
    SULLIVAN LLP
13  500 W Madison St, Suite 2450
    Chicago, IL 60661
14  Telephone: (312) 705-7465
    Facsimile: (312) 705 7401
15
    [Additional counsel listed on signature page]
16
    ATTORNEYS FOR PLAINTIFF CISCO
17  SYSTEMS, INC.

    KEKER & VAN NEST LLP
    ROBERT A. VAN NEST - # 84065
    rvannest@kvn.com
    BRIAN L. FERRALL - # 160847
    bferrall@kvn.com
    DAVID SILBERT - # 173128
    dsilbert@kvn.com
    MICHAEL S. KWUN - # 198945
    mkwun@kvn.com
    633 Battery Street
    San Francisco, CA 94111-1809
    Telephone:    415 391 5400
    Facsimile:    415 397 7188

    ATTORNEYS FOR DEFENDANT ARISTA
    NETWORKS, INC.

18

**UNITED STATES DISTRICT COURT**

19

**NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION**

20

21   CISCO SYSTEMS, INC.,

22          Plaintiff,

23       vs.

24   ARISTA NETWORKS, INC.,

25          Defendant.

CASE NO. 5:14-cv-5344-BLF

**PARTIES' FIRST AMENDED STIPULATED AND DISPUTED PROPOSED JURY INSTRUCTIONS**

Final Pretrial Conference: November 3, 2016
Dep't:  Courtroom 3, 5th Floor
Judge:  Hon. Beth Labson Freeman
Trial Date:  November 21, 2016

26

27

28

# Table of Contents

Preliminary Notes ................................................................................................ 8

STIPULATED: Preliminary Instruction No. 1 re Duty Of The Jury ..................... 9

DISPUTED: Cisco's Preliminary Instruction No. 2 re Claims And Defenses ................... 10

DISPUTED: Arista's Preliminary Instruction No. 2 re Claims And Defenses ................... 12

STIPULATED: Preliminary Instruction No. 3 re Outline Of Trial ..................... 14

STIPULATED: Preliminary Instruction No. 4 re What Is Evidence ................... 15

STIPULATED: Preliminary Instruction No. 5 re What Is Not Evidence ........................... 16

STIPULATED: Preliminary Instruction No. 6 re Ruling On Objections ........................... 17

STIPULATED: Preliminary Instruction No. 7 re Taking Notes ......................... 18

STIPULATED: Preliminary Instruction No. 8 re Conduct Of The Jury ........................... 19

STIPULATED: Preliminary Instruction No. 9 re Publicity During Trial ........................... 21

STIPULATED: Preliminary Instruction No. 10 re No Transcript Available To Jury ........ 22

STIPULATED: Preliminary Instruction No. 11 re Bench Conferences And Recesses .................................................................................. 23

DISPUTED: Cisco's Position on Arista's Preliminary Instruction No. 12 re Analytic Dissection ................................................................. 24

DISPUTED: Arista's Preliminary Instruction No. 12 re Analytic Dissection ................... 25

STIPULATED: Final Instruction No. 13 re Duty of Jury ................................... 28

STIPULATED: Final Instruction No. 14 re What Is Evidence ........................... 29

STIPULATED: Final Instruction No. 15 re What Is Not Evidence ..................... 30

STIPULATED: Final Instruction No. 16 re Direct And Circumstantial Evidence ............. 31

STIPULATED: Preliminary Instruction No. 17 re Stipulations Of Fact ........................... 32

STIPULATED: Cisco's Final Instruction No. 18 re Credibility Of Witnesses ................... 33

STIPULATED: Preliminary Instruction No. 19 re Expert Opinion .................... 34

DISPUTED: Cisco's Final Instruction No. 19 re Expert Opinion ..................... 35

DISPUTED: Arista's Final Instruction No. 19 re Expert Opinion ..................... 36

STIPULATED: Final Instruction No. 20 re Deposition In Lieu Of Live Testimony ..........38

STIPULATED: Final Instruction No. 21 re Charts and Summaries Not Received In
       Evidence .................................................................................................39

STIPULATED: Final Instruction No. 22 re Charts and Summaries Received In
       Evidence .................................................................................................40

STIPULATED: Final Instruction No. 23 re Burden Of Proof ............................................41

DISPUTED: Cisco's Final Instruction No. 24 re Copyright—Defined ..............................42

DISPUTED: Arista's Final Instruction No. 24 re Copyright—Defined .............................44

DISPUTED: Cisco's Final Instruction No. 25 re Copyright—Subject Matter ...................46

DISPUTED: Arista's Final Instruction No. 25 re Copyright—Subject Matter ..................48

DISPUTED: Cisco's Final Instruction No. 27 re Copyright—Ideas and Expressions .......50

DISPUTED: Arista's Final Instruction No. 27 re Copyright—Ideas and
       Expressions..............................................................................................52

DISPUTED: Cisco's Final Instruction No. 28 re Copyright—Industry Standard Not
       Relevant ..................................................................................................55

DISPUTED: Arista's Position on Cisco's Final Instruction No. 28 re Copyright—
       Industry Standard Not Relevant ............................................................57

DISPUTED:  Cisco's Final Instruction No. 29 re Copyright—Elements: Ownership
       and Copying ...........................................................................................59

DISPUTED:  Arista's Final Instruction No. 29 re Copyright—Elements:
       Ownership and Copying .........................................................................61

DISPUTED: Cisco's Final Instruction No. 30 re Copyright—Validity..............................63

DISPUTED: Arista's Final Instruction No. 30 re Copyright—Validity.............................64

DISPUTED: Cisco's Final Instruction No. 31 re Copyright—Copyright
       Registration Certificates ........................................................................65

DISPUTED: Arista's Final Instruction No. 31 re Copyright—Copyright
       Registration Certificates ........................................................................67

DISPUTED: Cisco's Final Instruction No. 32 re Copyright—Originality .........................69

DISPUTED: Arista's Final Instruction No. 32 re Copyright—Originality .........................71

DISPUTED: Cisco's Final Instruction No. 33 re Copyright—Compilations .....................73

DISPUTED: Arista's Final Instruction No. 33 re Copyright—Compilations ....................75

DISPUTED: Cisco's Final Instruction No. 34 re Copyright—Authorship & Work
       Made For Hire .........................................................................................77

1121178.02

DISPUTED: Arista's Final Instruction No. 34 re Copyright—Work Made For Hire .........78

DISPUTED: Cisco's Final Instruction No. 35 re Copyright—Derivative Work................80

DISPUTED: Arista's Position on Cisco's Final Instruction No. 35 re Copyright—
 Derivative Work .....................................................................................................81

DISPUTED: Cisco's Final Instruction No. 36 re Copyright—Copying (Direct
 Evidence)................................................................................................................83

DISPUTED: Cisco's Final Instruction No. 37 re Copyright—Copying (Indirect
 Evidence)................................................................................................................84

DISPUTED: Arista's Final Instruction No. 37 re Copyright—Copying ...........................85

DISPUTED: Cisco's Final Instruction No. 38 re Copyright—Access ...............................88

DISPUTED: Arista's Final Instruction No. 38 re Copyright—Access...............................89

DISPUTED: Cisco's Final Instruction No. 39 re Copyright—Substantial Similarity.........90

DISPUTED: Cisco's Position on Arista's Final Instruction No. 40 re Copyright—
 Infringement: Extrinsic Test; Intrinsic Test .........................................................92

DISPUTED: Arista's Final Instruction No. 40 re Copyright—Infringement:
 Extrinsic Test; Intrinsic Test ................................................................................93

DISPUTED: Cisco's Position on Arista's Final Instruction No. 41 re Copyright—
 Protected And Unprotected Matter ........................................................................97

DISPUTED: Arista's Final Instruction No. 41 re Copyright—Protected And
 Unprotected Matter ...............................................................................................98

DISPUTED: Cisco's Position on Arista's Final Instruction No. 42 re Copyright—
 Types Of Unprotected Matter ...............................................................................99

DISPUTED: Arista's Final Instruction No. 42 re Copyright—Types Of
 Unprotected Matter .............................................................................................100

DISPUTED: Cisco's Position on Arista's Final Instruction No. 43 re Copyright—
 Particular Unprotected Elements.........................................................................101

DISPUTED: Arista's Final Instruction No. 43 re Copyright—Particular
 Unprotected Elements .........................................................................................102

DISPUTED: Cisco's Position on Arista's Final Instruction No. 44 re Copyright—
 Comparing Works As A Whole For Virtual Identity............................................104

DISPUTED: Arista's Final Instruction No. 44 re Copyright—Comparing Works As
 A Whole For Virtual Identity...............................................................................105

DISPUTED: Cisco's Position on Arista's Final Instruction No. 45 re Copyright—
 Works As A Whole Defined ................................................................................108

1121178.02

DISPUTED: Arista's Final Instruction No. 45 re Copyright—Works As A Whole
  Defined ............................................................................................................109

DISPUTED: Cisco's Final Instruction No. 46 re Copyright—Affirmative Defense:
  Fair Use ...........................................................................................................110

DISPUTED: Cisco's Position on Arista's Final Instruction No. 47 re Copyright—
  Affirmative Defense: Fair Use Generally ..........................................................113

DISPUTED: Arista's Final Instruction No. 47 re Copyright—Affirmative Defense:
  Fair Use Generally ............................................................................................114

DISPUTED: Cisco's Position on Arista's Final Instruction No. 48 re Copyright—
  Affirmative Defense: Fair Use: Factors To Consider ..........................................116

DISPUTED: Arista's Final Instruction No. 48 re Copyright—Affirmative Defense:
  Fair Use: Factors To Consider ...........................................................................117

DISPUTED: Cisco's Position on Arista's Final Instruction No. 49 re Copyright—
  Affirmative Defense: Fair Use: First Factor ......................................................119

DISPUTED: Arista's Final Instruction No. 49 re Copyright—Affirmative Defense:
  Fair Use: First Factor.........................................................................................120

DISPUTED: Cisco's Position on Arista's Final Instruction No. 50 re Copyright—
  Affirmative Defense: Fair Use: First Factor: Definition Of Transformative ........122

DISPUTED: Arista's Final Instruction No. 50 re Copyright—Affirmative Defense:
  Fair Use: First Factor: Definition Of Transformative ...........................................123

DISPUTED: Cisco's Position on Arista's Final Instruction No. 51 re Copyright—
  Affirmative Defense: Fair Use: First Factor: Transformative...............................125

DISPUTED: Arista's Final Instruction No. 51 re Copyright—Affirmative Defense:
  Fair Use: First Factor: Transformative................................................................127

DISPUTED: Cisco's Position on Arista's Final Instruction No. 52 re Copyright—
  Affirmative Defense: Fair Use: First Factor: Commercial Use ............................129

DISPUTED: Arista's Final Instruction No. 52 re Copyright—Affirmative Defense:
  Fair Use: First Factor: Commercial Use .............................................................130

DISPUTED: Cisco's Position on Arista's Final Instruction No. 53 re Copyright—
  Affirmative Defense: Fair Use: Second Factor ...................................................131

DISPUTED: Arista's Final Instruction No. 53 re Copyright—Affirmative Defense:
  Fair Use: Second Factor ....................................................................................132

DISPUTED: Cisco's Position on Arista's Final Instruction No. 54 re Copyright—
  Affirmative Defense: Fair Use: Second Factor: Functionality/Creativity..............133

DISPUTED: Arista's Final Instruction No. 54 re Copyright—Affirmative Defense:
  Fair Use: Second Factor: Functionality/Creativity................................................134

DISPUTED: Cisco's Position on Arista's Final Instruction No. 55 re Copyright—
    Affirmative Defense: Fair Use: Third Factor ...................................................136

DISPUTED: Arista's Final Instruction No. 55 re Copyright—Affirmative Defense:
    Fair Use: Third Factor ........................................................................................137

DISPUTED: Cisco's Position on Arista's Final Instruction No. 56 re Copyright—
    Affirmative Defense: Fair Use: Fourth Factor ....................................................139

DISPUTED: Arista's Final Instruction No. 56 re Copyright—Affirmative Defense:
    Fair Use: Fourth Factor ......................................................................................140

DISPUTED: Cisco's Position on Arista's Final Instruction No. 57 re Copyright—
    Affirmative Defense: Fair Use: Fourth Factor: Market Harm .............................142

DISPUTED: Arista's Final Instruction No. 57 re Copyright—Affirmative Defense:
    Fair Use: Fourth Factor: Market Harm ...............................................................143

DISPUTED: Cisco's Position on Arista's Final Instruction No. 58 re Copyright—
    Affirmative Defense: Fair Use: Fourth Factor: Consideration Of Additional
    Evidence .............................................................................................................144

DISPUTED: Arista's Final Instruction No. 58 re Copyright—Affirmative Defense:
    Fair Use: Fourth Factor: Consideration Of Additional Evidence .........................145

DISPUTED: Cisco's Position on Arista's Final Instruction No. 59 re Copyright—
    Affirmative Defense: Fair Use: Fourth Factor: Consideration Of Factors ............146

DISPUTED: Arista's Final Instruction No. 59 re Copyright—Affirmative Defense:
    Fair Use: Fourth Factor: Consideration Of Factors .............................................147

DISPUTED: Cisco's Final Instruction No. 60 re Copyright—Affirmative Defense:
    Merger ................................................................................................................148

DISPUTED: Arista's Final Instruction No. 60 re Copyright—Merger ............................150

DISPUTED: Cisco's Final Instruction No. 61 re Copyright—Affirmative Defense:
    Scènes À Faire ....................................................................................................152

DISPUTED: Arista's Final Instruction No. 61 re Copyright—Scènes À Faire ................156

DISPUTED: Cisco's Position on Arista's Final Instruction No. 62 re Copyright—
    Affirmative Defense: Copyright Misuse ..............................................................160

DISPUTED: Arista's Final Instruction No. 62 re Copyright—Affirmative Defense:
    Copyright Misuse ...............................................................................................161

DISPUTED: Cisco's Final Instruction No. 63 re Copyright—Willful Infringement ........162

DISPUTED: Arista's Final Instruction No. 63 re Copyright—Willfulness.......................163

STIPULATED: Final Instruction No. 64 re Copyright—Damages ..................................164

DISPUTED: Cisco's Final Instruction No. 65 re Copyright—Actual Damages ..............165

DISPUTED: Arista's Final Instruction No. 65 re Copyright—Actual Damages...............167

DISPUTED: Cisco's Final Instruction No. 66 re Copyright—Infringer's Profits.............168

DISPUTED: Arista's Final Instruction No. 66 re Copyright—Arista's Profits.................173

DISPUTED: Cisco's Final Instruction No. 67 re Copyright—Infringer's Profits—
        Willfulness .......................................................................................................175

DISPUTED: Arista's Position on Cisco's Final Instruction No. 67 re Copyright—
        Infringer's Profits—Willfulness......................................................................177

STIPULATED: Final Instruction No. 68 re Patent—What A Patent Is And How
        One Is Obtained.................................................................................................178

DISPUTED: Cisco's Final Instruction No. 69 re Patent—Summary Of Patent
        Claim Contentions.............................................................................................180

DISPUTED: Arista's Objection to Cisco's Final Instruction No. 69 re Patent—
        Summary Of Patent Claim Contentions ...........................................................182

STIPULATED: Final Instruction No. 70 re Patent—Interpretation Of Patent Claims......183

STIPULATED: Cisco's Final Instruction No. 71 re Patent—Types of Patent Claims......185

STIPULATED: Final Instruction No. 72 re Patent—Patent Infringement: Burden
        Of Proof.............................................................................................................186

STIPULATED: Final Instruction No. 73 re Patent—Direct Infringement of a Patent ......187

STIPULATED: Final Instruction No. 74 re Patent—Literal Infringement Of A
        Patent.................................................................................................................189

DISPUTED: Cisco's Final Instruction No. 75 re Patent—Patent Infringement
        Under The Doctrine Of Equivalents..................................................................190

DISPUTED: Arista's Objection to Cisco's Final Instruction No. 75 re Patent—
        Patent Infringement Under The Doctrine Of Equivalents....................................192

STIPULATED: Final Instruction No. 76 re Patent—Means-Plus-Function Patent
        Claims: Literal Infringement............................................................................193

STIPULATED: Final Instruction No. 77 re Patent—Contributory Patent
        Infringement .....................................................................................................195

STIPULATED: Final Instruction No. 78 re Patent—Inducing Patent Infringement........196

DISPUTED: Cisco's Final Instruction No. 79 re Patent—Willful Patent
        Infringement .....................................................................................................198

DISPUTED: Arista's Final Instruction No. 79 re Patent—Willful Patent
        Infringement .....................................................................................................200

STIPULATED: Final Instruction No. 80 re Patent—Patent Invalidity: Burden Of
        Proof..................................................................................................................202

STIPULATED: Final Instruction No. 81 re Patent—Prior Art..........................................203

STIPULATED: Final Instruction No. 82 re Patent—Anticipation ....................................205

STIPULATED: Final Instruction No. 83 re Patent—Obviousness....................................207

STIPULATED: Final Instruction No. 84 re Patent—Damages: Burden Of Proof ...........209

STIPULATED: Final Instruction No. 85 re Patent—Damages In The Form Of A
    Reasonable Royalty: Definition of a "Reasonable Royalty".................................210

STIPULATED: Final Instruction No. 86 re Patent—Damages: Date Of
    Commencement.......................................................................................................211

STIPULATED: Final Instruction No. 88 re Duty To Deliberate .....................................212

STIPULATED: Final Instruction No. 89 re Conduct Of The Jury ...................................213

STIPULATED: Final Instruction No. 90 re Communication With Court .........................215

STIPULATED: Final Instruction No. 91 re Return Of Verdict ........................................216

DISPUTED: Cisco's Position on Arista's Final Instruction No. 92 re Glossary ..............217

DISPUTED: Arista's Final Instruction No. 92 re Glossary ..............................................218

DISPUTED: Cisco's Final Instruction No. 93 re Copyright—Abandonment ..................221

DISPUTED: Arista's Final Instruction No. 93 re Copyright—Abandonment ..................222

DISPUTED: Cisco's Position on Arista's Final Instruction No. 94 re Copyright—
    Waiver ....................................................................................................................224

DISPUTED: Arista's Final Instruction No. 94 re Copyright—Waiver ............................225

1121178.02

**<u>Preliminary Notes</u>**

**1.  Jury Instruction Ordering**

Cisco contends that the order in which these jury instructions are currently presented is the most logical ordering.  Arista disagrees.  The parties are continuing to meet and confer on this issue.

**2.  Jury Instruction Numbering**

Instructions 26 and 87 are intentionally omitted.

**STIPULATED: Preliminary Instruction No. 1 re Duty Of The Jury[1]**

Members of the jury:  You are now the jury in this case.  It is my duty to instruct you on the law.

At the end of the trial I will give you final instructions.  It is the final instructions that will govern your duties.

It is your duty to find the facts from all the evidence in the case.  To those facts you will apply the law as I give it to you.  You must follow the law as I give it to you whether you agree with it or not.  And you must not be influenced by any personal likes or dislikes, opinions, prejudices or sympathy.  That means that you must decide the case solely on the evidence before you.  You will recall that you took an oath to do so.

Please do not read into these instructions or anything I may say or do that I have an opinion regarding the evidence or what your verdict should be.

---

[1]  Instruction No. 1.1B, *Ninth Circuit Manual of Model Civil Jury Instructions* (2007).

FIRST AMENDED UNDISPUTED AND DISPUTED PROPOSED JURY INSTRUCTIONS

1121178.02

**DISPUTED: Cisco's Preliminary Instruction No. 2 re Claims And Defenses**[2]

To help you follow the evidence, I will give you a brief summary of the positions of the parties:

The plaintiff in this case is Cisco Systems, Inc., which I will refer to as "Cisco," and the defendant is Arista Networks, Inc., which I will refer to as "Arista." This is a case involving claims of copyright and patent infringement. Cisco and Arista sell networking switches.

Cisco asserts that Arista infringed Cisco's copyrights by copying certain elements of Cisco's user interface and copying certain portions of Cisco's product manuals. Cisco also asserts that Arista's copyright infringement was willful. Cisco has the burden of proving its claim of copyright infringement and its claim of willfulness. Arista contends that it does not infringe any of Cisco's copyrights, and asserts as affirmative defenses that any use of the accused elements is a "fair use" under the law, that Arista's copying is permitted under the merger doctrine and scènes à faire doctrine, and that Cisco has [misused its copyrights,] abandoned its copyrights[, and waived its rights to enforce the copyrights at issue]. Arista has the burden of proof on its affirmative defenses.

Cisco asserts that Arista has infringed United States Patent No. 7,047,526, which I and the parties will refer to as the "'526 Patent." Cisco also asserts that Arista's patent infringement was willful. Cisco has the burden of proving its claim of patent infringement and its claim of willfulness. Arista denies that it has infringed the '526 Patent and asserts as an affirmative defense that the patent is invalid. Arista has the burden of proof on its affirmative defense.

**Cisco's Position:**

Cisco's proposed instruction follows Instruction No. 1.2 from the *Ninth Circuit Manual of Model Civil Jury Instructions* ("*Model*") in form and substance. It is short, simple, and neutral, providing an accurate summary of the parties' claims and defenses.

Arista's proposed instruction errs in that it includes mention of Arista's copyright misuse and waiver defenses which, for the reasons stated below (*see* Instruction Nos. 62 & 90) are

---

[2]  Instruction No. 1.2, *Ninth Circuit Manual of Model Civil Jury Instructions* (2007).

equitable defenses that should not be put to the jury.  In the event the Court determines that those affirmative defenses should be put to the jury, Cisco has placed such language in brackets. Further, the Court should list all of Arista's affirmative defenses and its burden of proof on those defenses; as such, it would be misleading and incomplete to not include merger and scènes à faire, and to not state that Arista bears the burden on those affirmative defenses.  *Oracle Am., Inc. v. Google Inc.*, 750 F.3d 1339, 1358 (Fed. Cir. 2014) ("concepts of merger and scènes à faire are affirmative defenses to claims of infringement"); *Ninth Circuit Manual of Model Civil Jury Instructions*, Instruction No. 1.2 (defendant bears burden of proof for affirmative defenses). Finally, Arista incorrectly includes argument in its proposed instruction by referring to Cisco's willfulness assertion as addressing "alleged" infringement.

**DISPUTED: Arista's Preliminary Instruction No. 2 re Claims And Defenses**[3]

To help you follow the evidence, I will give you a brief summary of the positions of the parties:

The plaintiff in this case is Cisco Systems, Inc., which I will refer to as "Cisco," and the defendant is Arista Networks, Inc., which I will refer to as "Arista." This is a case involving claims of copyright and patent infringement. Cisco and Arista sell networking switches. Cisco asserts that Arista infringed Cisco's copyrights by copying certain elements of Cisco's user interface and copying certain portions of Cisco's product manuals. [Cisco also asserts that Arista's alleged copyright infringement was willful.] Cisco has the burden of proving its claim of copyright infringement [and its claim of willfulness]. Arista contends that it does not infringe any of Cisco's copyrights, and that Cisco's asserted elements are not protectable under the law. Further, Arista asserts that any use of the asserted elements is a "fair use" and that Cisco cannot assert its claims of copyright infringement because of its own conduct. Arista has the burden of proof on these affirmative defenses.

Cisco also asserts that Arista has infringed United States Patent No. 7,047,526, which I and the parties will refer to as the "'526 Patent." [Cisco also asserts that Arista's alleged patent infringement was willful.] Cisco has the burden of proving its claim of patent infringement [and its claim of willfulness]. Arista denies that it has infringed the '526 Patent and asserts that the patent is invalid. Arista has the burden of proof to prove that the patent is invalid.

**Arista's Position:**

Cisco's and Arista's instructions are both based on the template of Instruction No. 1.2 of the Ninth Circuit's Model Civil Jury Instructions (last updated 6/2016). While much of the language is agreed upon, Cisco's proposed instructions contain several flaws that unduly prejudice Arista and should be rejected.

First, Cisco's copyright willfulness sentence fails to state that any infringement is "alleged." Until proven, the Court should not instruction the jury that "Cisco also asserts that Arista's copyright infringement was willful."

---

[3] Instruction No. 1.2, *Ninth Circuit Manual of Model Civil Jury Instructions* (2007).

Second, Arista objects to any reference in the jury instructions to copyright willfulness because Cisco has not elected to receive an award of statutory damages, and Arista will not seek a deduction for its income or excess profits taxes in any calculation of its infringement profits.  *See* 17 U.S.C. § 504(c)(2) (statutory damages for willful infringement); *Kamar Int'l, Inc. v. Russ Berrie & Co.*, 752 F.2d 1326, 1331–32 (9th Cir. 1984) (no deduction of such taxes if infringement is willful).  Therefore, there is no basis for the jury to make any findings regarding willfulness in this action.  To the extent the Court were to allow willfulness to go to the jury, it is a separate claim and thus should be set forth separately.  The bracketed language reflects this.

Third, Arista objects to Cisco's reference to "Cisco's user interface," which misrepresents the facts, does not accurately reflect Cisco's assertion of twenty-six different copyrighted works in this lawsuit, suggests to the jury that there is only one Cisco user interface in this dispute (there are at least four different software products, and different versions of each, in dispute), and suggests that the entirety of Cisco's user interface is protected by copyright, which Arista disputes.  A neutral and accurate alternative is to refer to "Cisco's copyrighted works" or "Cisco's copyrights" as in Arista's instructions.

Fourth, merger and scenes-a-faire are not affirmative defenses, as discussed more fully in Arista's arguments in support of Arista's disputed instructions 60 and 61.  Arista's proposed instruction refers to merger and scenes-a-faire by stating that "Cisco's asserted elements are not protectable under the law."

1

## STIPULATED: Preliminary Instruction No. 3 re Outline Of Trial[4]

2

3

[CISCO'S POSITION: The parties currently dispute whether Arista should be provided an opportunity to present evidence after Cisco rebuts Arista's defenses. Arista has asked for that opportunity and Cisco opposes that request. Cisco respectfully preserves its right to ask for the last sentence of the second paragraph of this instruction to be modified upon a finding by the Court on this issue in Cisco's favor.]

4

5

6

Trials proceed in the following way: First, each side may make an opening statement. An

7

opening statement is not evidence. It is simply an outline to help you understand what that party

8

expects the evidence will show. A party is not required to make an opening statement.

9

The plaintiff, Cisco, will then present evidence, and counsel for the defendant, Arista, may

10

cross-examine. Then Arista may present evidence, and counsel for Cisco may cross-examine.

11

Afterwards, one or both sides may then present rebuttal evidence to respond to the other party.

12

After the evidence has been presented, I will instruct you on the law that applies to the case

13

and the attorneys will make closing arguments.

14

After that, you will go to the jury room to deliberate on your verdict.

15

16

17

18

19

20

21

22

23

24

25

26

27

28

---

[4]    Instruction No. 1.18, *Ninth Circuit Manual of Model Civil Jury Instructions* (2007).

**STIPULATED: Preliminary Instruction No. 4 re What Is Evidence**[5]

The evidence you are to consider in deciding what the facts are consists of:

1.  The sworn testimony of any witness;

2.  The exhibits that are admitted into evidence;

3.  Any facts to which the lawyers have agreed; and

4.  Any facts that I may instruct you to accept as proved.

---

[5]  Instruction No. 1.6, *Ninth Circuit Manual of Model Civil Jury Instructions* (2007).

FIRST AMENDED UNDISPUTED AND DISPUTED PROPOSED JURY INSTRUCTIONS

1121178.02

**STIPULATED: Preliminary Instruction No. 5 re What Is Not Evidence[6]**

Certain things are not evidence, and you may not consider them in deciding what the facts are.  I will list them for you:

1.      Arguments and statements by lawyers are not evidence.  The lawyers are not witnesses.  What they may say in their opening statements, closing arguments and at other times is intended to help you interpret the evidence, but it is not evidence.  If the facts as you remember them differ from the way the lawyers have stated them, your memory of them controls.

2.      Questions and objections by lawyers are not evidence.  Attorneys have a duty to their clients to object when they believe a question is improper under the rules of evidence.  You should not be influenced by the objection or by the court's ruling on it.

3.      Testimony or exhibits that are excluded or stricken, or that you are instructed to disregard, are not evidence and must not be considered.  In addition some evidence may be received only for a limited purpose; when I instruct you to consider certain evidence only for a limited purpose, you must do so and you may not consider that evidence for any other purpose.

4.      Anything you may see or hear when the court is not in session is not evidence.  You are to decide the case solely on the evidence received at the trial.

---

[6]  Instruction No. 1.7, *Ninth Circuit Manual of Model Civil Jury Instructions* (2007).

FIRST AMENDED UNDISPUTED AND DISPUTED PROPOSED JURY INSTRUCTIONS
1121178.02

**<u>STIPULATED: Preliminary Instruction No. 6 re Ruling On Objections</u>**[7]

There are rules of evidence that control what can be received into evidence.  When a lawyer asks a question or offers an exhibit into evidence and a lawyer on the other side thinks that it is not permitted by the rules of evidence, that lawyer may object.  If I overrule the objection, the question may be answered or the exhibit received.  If I sustain the objection, the question cannot be answered, and the exhibit cannot be received.  Whenever I sustain an objection to a question, you must ignore the question and must not guess what the answer might have been.

Sometimes I may order that evidence be stricken from the record and that you disregard or ignore that evidence.  That means when you are deciding the case, you must not consider the stricken evidence for any purpose.

---

[7]  Instruction No. 1.10, *Ninth Circuit Manual of Model Civil Jury Instructions* (2007).

1

## **STIPULATED: Preliminary Instruction No. 7 re Taking Notes**[8]

2    If you wish, you may take notes to help you remember the evidence.  If you do take notes,

3 please keep them to yourself until you go to the jury room to decide the case.  Do not let

4 notetaking distract you.  When you leave, your notes should be left in the courtroom.  No one will

5 read your notes.

6    Whether or not you take notes, you should rely on your own memory of the evidence.

7 Notes are only to assist your memory.  You should not be overly influenced by your notes or those

8 of other jurors.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

---

[8] Instruction No. 1.15, *Ninth Circuit Manual of Model Civil Jury Instructions* (2007).

**STIPULATED: Preliminary Instruction No. 8 re Conduct Of The Jury[9]**

I will now say a few words about your conduct as jurors.

First, keep an open mind throughout the trial, and do not decide what the verdict should be until you and your fellow jurors have completed your deliberations at the end of the case.

Second, because you must decide this case based only on the evidence received in the case and on my instructions as to the law that applies, you must not be exposed to any other information about the case or to the issues it involves during the course of your jury duty. Thus, until the end of the case or unless I tell you otherwise:

Do not communicate with anyone in any way and do not let anyone else communicate with you in any way about the merits of the case or anything to do with it. This includes discussing the case in person, in writing, by phone or electronic means, via email, text messaging, or any internet chat room, blog, website or application, including but not limited to Facebook, YouTube, Twitter, Instagram, LinkedIn, Snapchat, or any other forms of social media. This applies to communicating with your fellow jurors until I give you the case for deliberation, and it applies to communicating with everyone else including your family members, your employer, the media or press, and the people involved in the trial, although you may notify your family and your employer that you have been seated as a juror in the case, and how long you expect the trial to last. But, if you are asked or approached in any way about your jury service or anything about this case, you must respond that you have been ordered not to discuss the matter and report the contact to the court.

Because you will receive all the evidence and legal instruction you properly may consider to return a verdict:

Do not read, watch or listen to any news or media accounts or commentary about the case or anything to do with it; do not do any research, such as consulting dictionaries, searching

---

[9]  Instruction No. 1.12, *Ninth Circuit Manual of Model Civil Jury Instructions* (2007).

1    the Internet, or using other reference materials; and do not make any investigation or in any

2    other way try to learn about the case on your own.  Do not visit or view any place

3    discussed in this case, and do not use Internet programs or other devices to search for or

4    view any place discussed during the trial.  Also, do not do any research about this case, the

5    law, or the people involved—including the parties, the witnesses or the lawyers—until you

6    have been excused as jurors.  If you happen to read or hear anything touching on this case

7    in the media, turn away and report it to me as soon as possible.

8

9    These rules protect each party's right to have this case decided only on evidence that has

10  been presented here in court.  Witnesses here in court take an oath to tell the truth, and the

11  accuracy of their testimony is tested through the trial process.  If you do any research or

12  investigation outside the courtroom, or gain any information through improper communications,

13  then your verdict may be influenced by inaccurate, incomplete or misleading information that has

14  not been tested by the trial process.  Each of the parties is entitled to a fair trial by an impartial

15  jury, and if you decide the case based on information not presented in court, you will have denied

16  the parties a fair trial.  Remember, you have taken an oath to follow the rules, and it is very

17  important that you follow these rules.

18      A juror who violates these restrictions jeopardizes the fairness of these proceedings.  If any

19  juror is exposed to any outside information, please notify the court immediately.

20

21

22

23

24

25

26

27

28

Case No. 5:14-cv-5344-BLF
FIRST AMENDED UNDISPUTED AND DISPUTED PROPOSED JURY INSTRUCTIONS

1121178.02

**<u>STIPULATED: Preliminary Instruction No. 9 re Publicity During Trial</u>**[10]

If there is any news media account or commentary about the case or anything to do with it, you must ignore it.  You must not read, watch or listen to any news media account or commentary about the case or anything to do with it.  The case must be decided by you solely and exclusively on the evidence that will be received in the case and on my instructions as to the law that applies. If any juror is exposed to any outside information, please notify me immediately.

---

[10]   Ninth Circuit Model Jury Instruction, 1.13.

FIRST AMENDED UNDISPUTED AND DISPUTED PROPOSED JURY INSTRUCTIONS

1121178.02

1

**<u>STIPULATED: Preliminary Instruction No. 10 re No Transcript Available To Jury</u>**[11]

2

   I urge you to pay close attention to the trial testimony as it is given.  During deliberations

3

you will not have a transcript of the trial testimony.

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

_____

28

[11] Ninth Circuit Model Jury Instruction, 1.14.

## **STIPULATED: Preliminary Instruction No. 11 re Bench Conferences**

## **And Recesses**[12]

From time to time during the trial, it may become necessary for me to talk with the attorneys out of the hearing of the jury, either by having a conference at the bench when the jury is present in the courtroom, or by calling a recess. Please understand that while you are waiting, we are working. The purpose of these conferences is not to keep relevant information from you, but to decide how certain evidence is to be treated under the rules of evidence and to avoid confusion and error.

Of course, we will do what we can to keep the number and length of these conferences to a minimum. I may not always grant an attorney's request for a conference. Do not consider my granting or denying a request for a conference as any indication of my opinion of the case or of what your verdict should be.

---

[12]   Ninth Circuit Model Jury Instruction, 1.17.

**DISPUTED: Cisco's Position on Arista's Preliminary Instruction No. 12 re Analytic Dissection**

Cisco's position is that no such instruction should be given.

**Cisco's Position:**

No such instruction should be given.  The *Ninth Circuit Manual of Model Civil Jury Instructions* ("*Model*") does not include or contemplate such an instruction as a preliminary instruction given prior to the introduction of evidence or argument.  As noted by *Model* Instruction No. 17.18 ("Substantial Similarity—Extrinsic Test; Intrinsic Test"), any instruction on comparing the protectable elements of asserted works with the corresponding elements of the accused works for substantial similarity should be "specifically craft[ed]" based on "the evidence developed at trial."  Any proposed instruction prior to the resolution of this issue, currently the subject of pretrial briefing, is thus premature.  *See also Harper House v. Thomas Nelson*, 889 F.2d 197, 208-09 (9th Cir. 1989); Dkt. Nos. 455 (Cisco's Trial Brief); 456 (Arista's Trial Brief); 505 (Cisco's Reply); 506 (Arista's Reply); 550-1 & 550-2 (Cisco's Submission on Protectable Elements); 585 (Arista's Response on Protectable Elements); *Oracle Am., Inc. v. Google Inc.*, 10-cv-3561-WHA, Dkt. 584 at 1 (copyrightability issues are "best left until after the judge has heard the evidence at trial"), *id.* Dkt. 620 at 1 (declining to address instructions on copyrightability until after close of evidence).  Moreover, Arista's proposed instruction would thus serve to confuse jurors rather than assist them.  Arista's proposed instruction addresses matter purportedly "unprotected" by copyright on the bases of authorship, originality, public domain, idea/expression, merger, scènes à faire, and functionality without any explanation of what these concepts mean or to what they apply.  Further, Arista's proposed instruction provides no explanation of what is "protected" matter as compared to the purported "unprotected matter."  Finally, Arista's instruction is incorrect to the extent that it refers to a "computer program" or "computer programming."  This case is not about computer programming; it is rather about a user interface that is visible to a human operator and that thus has no necessary or standard form of expression, which is a separate copyrighted work.  *See Napoli v. Sears, Roebuck & Co.*, 874 F. Supp. 206, 211 (N.D. Ill. 1995).

Should the Court rule that any part of analytic dissection is be determined by the jury, and that a preliminary instruction is appropriate, Cisco respectfully reserves its right to propose a proper instruction with argument tailored to the Court's ruling after it is issued.

**DISPUTED: Arista's Preliminary Instruction No. 12 re Analytic Dissection**

During the trial, you must keep in mind that copyright protection does not extend to all the elements of a copyrighted work. Elements to which copyright protection extends are called "protected matter," and other elements are "unprotected matter." Unprotected matter is not entitled to copyright protection and therefore may be copied by another author.[13]

[14]There are various types of unprotected matter. They include:

1. A portion of a work that is not original to the author;

2. A portion of the work that is in the public domain;

3. An idea, concept, principle, discovery, fact, actual event, process, or method expressed or described in a work;

4. Content that is unprotected under the doctrine of merger, which applies if the idea underlying the copyrighted work can be expressed in only one way or only a few ways.[15]

5. Content that is unprotected under the doctrine of scènes à faire, which protects the right of software developers to adopt elements of a program dictated by practical realities, such as by hardware standards and mechanical specifications, software standards and compatibility requirements, computer manufacturer design standards, target industry practices, the business practices and technical requirements of the

---

[13] ABA Model Jury Instructions, Copyright, Trademark, and Trade Dress Litigation, Instruction 1.4.2. There is no analogous Ninth Circuit Model Jury Instruction.

[14] ABA Model Jury Instructions, Copyright, Trademark, and Trade Dress Litigation, Instruction 1.4.3 (citing cases and treatises). There is no analogous Ninth Circuit Model Jury Instruction.

[15] Ninth Circuit Model Jury Instruction 17.3 Supplemental Instruction for merger defense (citing *Apple Computer, Inc. v. Microsoft Corp.*, 35 F.3d 1435, 1444 (9th Cir. 1994); *CDN, Inc. v. Kapes*, 197 F.3d 1256, 1261 (9th Cir.1999) (quoting *Ets-Hokin*, 225 F.3d 1068, 1082 (9th Cir. 2000) ("The merger doctrine "will not protect a copyrighted work from infringement if the idea underlying the copyrighted work can be expressed in only one way, lest there be a monopoly on the underlying idea."). The phrase "or only a few ways" stems from ABA Model Jury Instruction 1.4.7 (Copyright, Trademark, and Trade Dress Litigation) (citing cases and treatises); *see also Oracle Am., Inc. v. Google Inc.*, 750 F.3d 1339, 1359 (Fed. Cir. 2014), cert. denied, 135 S. Ct. 2887, 192 L. Ed. 2d 948 (2015) ("[W]hen there are a limited number of ways to express an idea, the idea is said to 'merge' with its expression, and the expression becomes unprotected.").

1       end user, and standard computer programming practices[16]; or

2           6.   Parts of a computer program considered to be ideas, common programming

3       _____

4       [16] *Oracle Am., Inc. v. Google Inc.*, 750 F.3d 1339, 1363 (Fed. Cir. 2014) ("In the computer

5       context, the scene a faire doctrine denies protection to program elements that are dictated by
        external factors such as 'the mechanical specifications of the computer on which a particular

6       program is intended to run' or 'widely accepted programming practices within the computer
        industry.") (internal quotation marks omitted); *Satava v. Lowry*, 323 F.3d 805, 807 (9th Cir. 2003)

7       (The Copyright Act "denie[s] artists the exclusive right to ideas and standard elements in their
        works, thereby preventing them from monopolizing what rightfully belongs to the public . . . .

8       [E]xpressions that are standard, stock, or common to a particular subject matter or medium are not
        protectable under copyright law."); *Apple Computer, Inc. v. Microsoft Corp.*, 35 F.3d 1435, 1444

9       (9th Cir. 1994) ("The doctrine of scenes a faire is closely related . . . . [W]hen similar features in a
        videogame are as a practical matter indispensable, or at least standard, in the treatment of a given

10      idea, they are treated like ideas and are therefore not protected by copyright.") (internal citations,
        quotation marks, and alterations omitted);*Computer Associates Int'l, Inc. v. Altai, Inc.*, 982 F.2d

11      693, 709–10 (2d Cir. 1992) ("[A] programmer's freedom of design choice is often circumscribed

12      by extrinsic considerations such as (1) the mechanical specifications of the computer on which a
        particular program is intended to run; (2) compatibility requirements of other programs with which

13      a program is designed to operate in conjunction; (3) computer manufacturers' design standards; (4)
        demands of the industry being serviced; and (5) widely accepted programming practices within the

14      computer industry."); *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 387 F.3d 522, 535

15      (6th Cir. 2004) ("In the computer-software context, the doctrine means that the elements of a
        program dictated by practical realities—e.g., by hardware standards and mechanical specifications,

16      software standards and compatibility requirements, computer manufacturer design standards,
        target industry practices, and standard computer programming practices—may not obtain

17      protection."); *Gates Rubber Co. v. Bando Chem. Indus., Ltd.*, 9 F.3d 823, 838 (10th Cir. 1993)

18      ("The scenes a faire doctrine also excludes from protection those elements of a program that have
        been dictated by external factors.  In the area of computer programs these external factors may

19      include: hardware standards and mechanical specifications, software standards and compatibility

20      requirements, computer manufacturer design standards, target industry practices and demands, and
        computer industry programming practices.") (citing cases and Nimmer) (internal citations

21      omitted); *Sega Enterprises Ltd. v. Accolade, Inc.*, 977 F.2d 1510, 1524 (9th Cir. 1992), as
        amended (Jan. 6, 1993) ("[C]omputer programs are, in essence, utilitarian articles—articles that

22      accomplish tasks. As such, they contain many logical, structural, and visual display elements that
        are dictated by the function to be performed, by considerations of efficiency, or by external factors

23      such as compatibility requirements and industry demands."); *Frybarger v. Int'l Bus. Machines

24      Corp.*, 812 F.2d 525, 530 (9th Cir. 1987) (discussing *scenes a faire*: "[W]e believe that each of the
        similar features constitutes a basic idea of the videogames and, to the extent each feature is

25      expressive, that the expression is as a practical matter indispensable, or at least standard, in the
        treatment of a given idea.") (internal quotation marks and alterations omitted); 4-13 Nimmer on

26      Copyright § 13.03[F][3] (discussing "hardware standards," "software standards," "computer

27      manufacturers' design standards," target industry practices," "the business practices and technical
        requirements of the end user," and "computer industry programming practices" in sub-sections

28      [a]–[e]).

1121178.02

1    techniques, or that are required in order for the program to perform its function

2    efficiently and effectively given the computer hardware and other software with

3    which the program operates.

4    I will instruct you about the types of protected and unprotected matter in greater detail at

5    the end of the trial.

6

7    **<u>Arista's Position:</u>**

8    As discussed in great detail in the parties' analytic dissection briefing, the Court is required

9    to perform analytic dissection in order for the jury to understand the scope of its task in
determining whether Cisco has proven copyright infringement. *See Harper House, Inc. v. Thomas*

10   *Nelson, Inc.*, 889 F.2d 197, 201 (9th Cir. 1989); *Apple Computer, Inc. v. Microsoft Corp.*, 35 F.3d
1435, 1443 (9th Cir. 1994) (dissecting graphical interface); *Brown Bag Software v. Symantec*

11   *Corp.*, 960 F.2d 1465, 1475–76 (9th Cir. 1992) (citing *Data East USA, Inc. v. Epyx, Inc.*, 862 F.2d

12   204, 209 (9th Cir. 1988)). Even if the Court has not completed analytic dissection by the time of
preliminary instructions, the Court should give the jury a preliminary instruction alerting it to be

13   cautious about assuming that copying automatically constitutes infringement, since, under the law,
it does not.

14   In *Harper House*, the Ninth Circuit reversed a jury verdict *even though the jury*

15   *instructions addressed protectability*, because they failed adequately to ensure that the jury did not
base an infringement verdict on unprotected elements. The court cautioned that "the negative

16   connotations to 'copying,'" created an "obvious risk of an improper verdict . . . and a need for
further instructions to protect legitimate activity and avoid the suffocation of competition." 889

17   F.2d at 207.

18   This Court has broad discretion to craft pretrial procedures that will help the Court and jury
grapple with complex legal issues, avoid wasted time, and minimize the very real risks of

19   confusion. *See* Fed. R. Civ. P. 16(c); *Crawford–El v. Britton*, 523 U.S. 574, 599 (1998). It should
exercise that authority by adopting Arista's proposed preliminary instruction, which is drawn

20   directly from model jury instructions, in an effort to give the jury an overview of the difference
between protected and unprotected elements as well as information about any of the analytic

21   dissection work that this Court will have completed by the time the trial opens. Although, ideally,
the Court would be able to instruct the jury about the precise scope of copyright protection in this

22   case before it hears evidence, the instruction Arista proposes provides a minimum level of

23   information the jury needs *before* it hears Cisco's accusations of "copying" without legal context
or acknowledgment that copying of unprotected material is perfectly legal.

24

25

26

27

28

1

**<u>STIPULATED: Final Instruction No. 13 re Duty of Jury</u>**[17]

2      Members of the Jury:  Now that you have heard all of the evidence and the arguments of

3 the attorneys, it is my duty to instruct you on the law that applies to this case.

4      A copy of these instructions will be sent to the jury room for you to consult during your

5 deliberations.

6      It is your duty to find the facts from all the evidence in the case.  To those facts you will

7 apply the law as I now give it to you.  You must follow the law as I give it to you whether you

8 agree with it or not.  And you must not be influenced by any personal likes or dislikes, opinions,

9 prejudices, or sympathy.  That means that you must decide the case solely on the evidence before

10 you.  You will recall that you took an oath to do so.

11      Please do not read into these instructions or anything that I may have said or done that I

12 have an opinion regarding the evidence or what your verdict should be.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27
_____

28      [17]  Instruction Nos. 1.1C, *Ninth Circuit Manual of Model Civil Jury Instructions* (2007).

## STIPULATED: Final Instruction No. 14 re What Is Evidence[18]

The evidence you are to decide the facts are consists of:

1.  The sworn testimony of any witness;

2.  The exhibits that are admitted into evidence;

3.  Any facts to which the lawyers have agreed; and

4.  Any facts that I have instructed you to accept as proved.

---

[18] Instruction No. 1.6, *Ninth Circuit Manual of Model Civil Jury Instructions* (2007).

## **STIPULATED: Final Instruction No. 15 re What Is Not Evidence**[19]

In reaching your verdict, you may consider only the testimony and exhibits received into evidence.  Certain things are not evidence, and you may not consider them in deciding what the facts are.

1.    Arguments and statements by lawyers are not evidence.  The lawyers are not witnesses.  What they have said in their opening statements, will say in their closing arguments, and at other times is intended to help you interpret the evidence, but it is not evidence.  If the facts as you remember them differ from the way the lawyers have stated them, your memory of them controls.

2.    Questions and objections by lawyers are not evidence.  Attorneys have a duty to their clients to object when they believe a question is improper under the rules of evidence.  You should not be influenced by the objection or by the court's ruling on it.

3.    Testimony and exhibits that have been excluded or stricken, or that you have been instructed to disregard, are not evidence and must not be considered.  In addition some evidence may be received only for a limited purpose; when I give a limiting instruction, you must follow it.

4.    Anything you may have seen or heard when the court was not in session is not evidence.   You are to decide the case solely on the evidence received at the trial.

---

[19]    Instruction No. 1.7, *Ninth Circuit Manual of Model Civil Jury Instructions* (2007).

1

**STIPULATED: Final Instruction No. 16 re Direct And Circumstantial Evidence**[20]

2

Evidence may be direct or circumstantial.  Direct evidence is direct proof of a fact, such as

3

testimony by a witness about what that witness personally saw or heard or did.

4

Circumstantial evidence is proof of one or more facts from which you could find another

5

fact.  You should consider both kinds of evidence.  The law makes no distinction between the

6

weight to be given to either direct or circumstantial evidence.  It is for you to decide how much

7

weight to give to any evidence.

8

By way of example, if you wake up in the morning and see that the sidewalk is wet, you

9

may find from that fact that it rained during the night.  However, other evidence, such as a turned

10

on garden hose, may provide a different explanation for the presence of water on the sidewalk.

11

Therefore, before you decide that a fact has been proved by circumstantial evidence, you must

12

consider all the evidence in the light of reason, experience and common sense.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

[20]  Instruction No. 1.9, *Ninth Circuit Manual of Model Civil Jury Instructions* (2007).

FIRST AMENDED UNDISPUTED AND DISPUTED PROPOSED JURY INSTRUCTIONS

1121178.02

1

**STIPULATED: Preliminary Instruction No. 17 re Stipulations Of Fact**[21]

2

The parties have agreed to certain facts that will be read to you.  You must therefore treat

3

these facts as having been proved.

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

---

[21]   Ninth Circuit Model Jury Instruction, 2.2.

28

**STIPULATED: Cisco's Final Instruction No. 18 re Credibility Of Witnesses**[22]

In deciding the facts in this case, you may have to decide which testimony to believe and which testimony not to believe.  You may believe everything a witness says, or part of it, or none of it.

In considering the testimony of any witness, you may take into account:

1.   The opportunity and ability of the witness to see or hear or know the things testified to;

2.   The witness's memory;

3.   The witness's manner while testifying;

4.   The witness's interest in the outcome of the case, if any;

5.   The witness's bias or prejudice, if any;

6.   Whether other evidence contradicted the witness's testimony;

7.   The reasonableness of the witness's testimony in light of all the evidence; and

8.   Any other factors that bear on believability.

Sometimes a witness may say something that is not consistent with something else he or she said.  Sometimes different witnesses will give different versions of what happened.  People often forget things or make mistakes in what they remember.  Also, two people may see the same event but remember it differently.  You may consider these differences, but do not decide that testimony is untrue just because it differs from other testimony.

However, if you decide that a witness has deliberately testified untruthfully about something important, you may choose not to believe anything that witness said.  On the other hand, if you think the witness testified untruthfully about some things but told the truth about others, you may accept the part you think is true and ignore the rest.

The weight of the evidence as to a fact does not necessarily depend on the number of witnesses who testify.  What is important is how believable the witnesses were, and how much weight you think their testimony deserves.

---

[22]   Instruction No. 1.11, *Ninth Circuit Manual of Model Civil Jury Instructions* (2007).

**<u>STIPULATED: Preliminary Instruction No. 19 re Expert Opinion</u>**[23]

Some witnesses, because of education or experience, are permitted to state opinions and the reasons for those opinions.

Such opinion testimony should be judged like any other testimony.  You may accept it or reject it, and give it as much weight as you think it deserves, considering the witness's education and experience, the reasons given for the opinion, and all the other evidence in the case.

---

[23]    Instruction No. 2.13, *Ninth Circuit Manual of Model Civil Jury Instructions* (2007).

FIRST AMENDED UNDISPUTED AND DISPUTED PROPOSED JURY INSTRUCTIONS

1121178.02

**DISPUTED: Cisco's Final Instruction No. 19 re Expert Opinion[24]**

Some witnesses, because of education or experience, are permitted to state opinions and the reasons for those opinions.

Such opinion testimony should be judged like any other testimony. You may accept it or reject it, and give it as much weight as you think it deserves, considering the witness's education and experience, the reasons given for the opinion, and all the other evidence in the case.

**Cisco's Position:**

Cisco's proposed instruction regarding expert opinion testimony reflects Instruction No. 2.13 of the *Ninth Circuit Manual of Model Civil Jury Instructions* ("*Model*") in form and substance, and is identical to an instruction this Court recently provided on expert testimony. *See* Final Jury Instruction No. 19, *Nortek Air Solutions, LLC fka CES Group, LLC v. Energy Labs, Inc.*, Case No. 5:14-cv-02919-BLF, Dkt. 336 at 22 (Aug. 5, 2016).

Arista's proposed instruction should be rejected. *First*, it deviates substantially from the *Model*, and Arista provides no justification for departing from the *Model* instruction. *Second*, not only is Arista's proposed instruction unnecessarily long, complicated, and argumentative, but it also includes incorrect statements based on the particular circumstances of this case. For example, Arista's proposed instruction states that "No retained expert was present at the events in question." However, some of the experts in this case (*e.g.*, Kevin Almeroth) performed testing on devices about which they will testify—thus, they were not only present, but participated in relevant events. Likewise, Arista's proposal states that no expert "has firsthand knowledge," which is incorrect for the same set of circumstances. *Third*, Arista's proposed instruction is phrased as if it will be given immediately before the expert will testify (starting "you are about to hear from"). There is no need to interrupt trial with Arista's proposed instruction. *Fourth*, Arista's only cited authority for its proposed instruction is a citation to an instruction provided by another court in this District, but Arista provides no authority that this instruction has been endorsed by any other court, or why the *Model* instruction is otherwise insufficient.

---

[24] Instruction No. 2.13, *Ninth Circuit Manual of Model Civil Jury Instructions* (2007).

1

### DISPUTED: Arista's Final Instruction No. 19 re Expert Opinion[25]

2      You are about to hear testimony from [name] who will testify to [his or her] opinions and

3 the reasons for those opinions. This opinion testimony is allowed because of the education or

4 experience of this witness.

5      The main reason we allow their testimony is because they may have specialized training

6 and experience with insights that may help the jury understand a field of specialized knowledge

7 and how it applies to the case at hand.  Usually, these witnesses are paid by their respective sides

8 in litigation.  Two important caveats for experts are as follows:

9      No expert witness should ever vouch for which side's fact scenario is correct. No retained

10 expert was present at the events in question.  None has firsthand knowledge.  Experts may rely on

11 particular documents and testimony and may make an assumption that the document or testimony

12 is correct and then give an opinion based on that assumption, but the opinion is only as good as the

13 factual assumption and that foundational fact question is always for you, the jury, to resolve, not

14 for the experts.  Put differently, experts should not invade the province of the jury by purporting to

15 tell the jury which side's fact version is true.

16      Similarly, no expert witness should attempt to tell the jury what someone had in mind or

17 was thinking.  The mental state and intent of the characters in our story on trial is for you to

18 decide, not for the experts to decide.  It is, however, permissible for experts to quote testimony or

19 documents and then to assume that the statements therein were accurate and then based thereon to

20 apply their expertise to render an opinion.[26]

21      Such opinion testimony should be judged like any other testimony.  You may accept it or

22 reject it, and give it as much weight as you think it deserves, considering the witness's education

23 and experience, the reasons given for the opinion, and all the other evidence in the case.

24

25 _____

26      [25]  Ninth Circuit Model Jury Instruction, 2.13.

27      [26] *Oracle America, Inc. v. Google, Inc.*, No. 10-cv-03561-WHA, ECF 1981 (May 26, 2016)
(Jury Instruction 13).

28

1121178.02

1

**Arista's Position:**

2

3       Arista's proposed instructions come from Instruction No. 2.13 of the current version of the Ninth Circuit's Model Civil Jury Instructions (last updated 6/2016), and also includes additional

4 jury instructions (consisting of paragraphs two through four) taken directly from Jury Instruction No. 13 from the recent *Oracle America, Inc. v. Google, Inc.* jury trial before Judge Alsup.  The

5 Court should include the additional jury instructions from the *Oracle v. Google* trial because they provide further guidance to the jury regarding the role of expert witnesses and how they differ

6 from fact witnesses, and remind the jury that expert witnesses may not vouch for either side's version of the facts or opine on the state of mind or intent of any witnesses.  These limitations on

7 expert testimony are consistent with the Court's recent *Daubert* order prohibiting vouching and "state of mind" opinions and the legal authority cited therein.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**STIPULATED: Final Instruction No. 20 re Deposition In Lieu Of Live Testimony**[27]

2

A deposition is the sworn testimony of a witness taken before trial. The witness is placed

3

under oath to tell the truth and lawyers for each party may ask questions. The questions and

4

answers are recorded. When a person is unavailable to testify at trial, and in certain other

5

situations, the deposition of that person may be used at the trial.

6

The deposition of [name of witness] was taken on [date]. Insofar as possible, you should

7

consider deposition testimony, presented to you in court in lieu of live testimony, in the same way

8

as if the witness had been present to testify.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

[27]    Ninth Circuit Model Jury Instruction, 2.4.

28

1

2

**STIPULATED: Final Instruction No. 21 re Charts and Summaries Not Received In Evidence[28]**

3      Certain charts and summaries not admitted into evidence have been shown to you in order

4   to help explain the contents of books, records, documents, or other evidence in the case.  Charts

5   and summaries are only as good as the underlying evidence that supports them.  You should,

6   therefore, give them only such weight as you think the underlying evidence deserves.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

[28]   Ninth Circuit Model Jury Instruction, 2.14.

1    **<u>STIPULATED: Final Instruction No. 22 re Charts and Summaries Received In Evidence</u>**[29]

2    　　　　Certain charts and summaries have been admitted into evidence to illustrate information

3    brought out in the trial.  Charts and summaries are only as good as the testimony or other admitted

4    evidence that supports them.  You should, therefore, give them only such weight as you think the

5    underlying evidence deserves.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27    　　　　[29]   Ninth Circuit Model Jury Instruction, 2.15.

28

**<u>STIPULATED: Final Instruction No. 23 re Burden Of Proof</u>**[30]

When a party has the burden of proof on any claim or affirmative defense by preponderance of the evidence, it means you must be persuaded by the evidence that the claim or affirmative defense is more probably true than not true. Preponderance of the evidence basically means "more likely than not."[31]

You should base your decision on all of the evidence, regardless of which party presented it.

---

[30]  Instruction No. 1.3, *Ninth Circuit Manual of Model Civil Jury Instructions* (2007).
[31]  *Synopsys, Inc. v. ATopTech, Inc.*, No. 13-cv-2965 (N.D. Cal.), ECF No. 688 at 7 (Final Instructions).

1121178.02

**DISPUTED: Cisco's Final Instruction No. 24 re Copyright—Defined[32]**

Copyright is the exclusive right to copy.  This right to copy includes the exclusive rights to, or authorize others to:

1. Reproduce the copyrighted work in copies;

2. Recast, transform, or adapt the work—that is, prepare derivative works based upon the copyrighted work;

3. Distribute copies of the copyrighted work to the public by sale or other transfer of ownership; and

4. Display publicly a copyrighted computer program.

It is the owner of a copyright who may exercise these exclusive rights.  The term "owner" includes the author of the work.  In general, copyright law protects against reproduction, adaptation, distribution, or display of identical or substantially similar copies of the owner's copyrighted work without the owner's permission.  An owner may enforce these rights to exclude others in an action for copyright infringement.

**Cisco's Position:**

Cisco's proposed instruction follows Instruction No. 17.1 of the *Ninth Circuit Manual of Model Civil Jury Instructions* ("*Model*") in form and substance.

Arista's proposed instruction should be rejected because it omits that: (1) the right to copy includes the exclusive right to authorize others to copy; (2) the right to prepare derivative works; and (3) the right to copy includes the exclusive right of public display.  These elements are expressly included as options in the *Model* and apply to the facts of this case.  Arista's copying includes not only literal copying, but also the incorporation of copies of Cisco's copyrighted works into Arista's own works, thus implicating Cisco's right to prepare derivative works.  *See, e.g.*, Dkt. No. 64 (Second Amended Complaint) ¶¶ 6-10 (discussing incorporation of Cisco's works into Arista's products).  In addition, Cisco expressly alleges the public display right in its complaint.  *See id.* ¶ 67 (Arista "has infringed and will continue to infringe" Cisco's works "by, *inter alia*, … publicly displaying its products").  Further, Cisco is asserting copyright protection for its user interface, which interface includes literal components (*e.g.*, multi-word command expressions, command responses, modes and prompts and help descriptions) amenable to public

---

[32]  Instruction No. 17.1, *Ninth Circuit Manual of Model Civil Jury Instructions* (2007).

1121178.02

1    display.  *See also see Synopsys, Inc. v. ATopTech, Inc.*, No. 13-cv-2965 (N.D. Cal.), ECF No. 688

2    at 8 (Final Instructions) (including similar instruction).  Finally, Cisco intends to revise its
     proposed Instruction No. 24 to change the phrase "computer program" to "user interface," which
3    is supported by the same authorities.

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**DISPUTED: Arista's Final Instruction No. 24 re Copyright—Defined[33]**

Copyright is the exclusive right to copy.  This right to copy includes the exclusive rights to:

1.  reproduce the copyrighted work;

2.  distribute copies of the copyrighted work to the public by sale or other transfer of ownership;

It is the owner of a copyright who may exercise these exclusive rights. The term "owner" includes the author of the work, an assignee, and an exclusive licensee.  In general, copyright law protects against reproduction, adaptation, or public distribution of infringing copies of the owner's copyrighted work without the owner's permission.  An owner may enforce these rights to exclude others in an action for copyright infringement.


**Arista's Position:**

Cisco's disputed instruction 24 adopts the following phrase from Ninth Circuit Model Instruction 17.1: "In general, copyright law protects against reproduction . . . of <u>identical or substantially similar</u> copies of the owner's copyrighted work without the owner's permission." The underlined phrase is misleading in the context of this case, where Arista asserts a fair use defense to infringement.  The model jury instruction and Cisco are mistaken: copyright law *does not*, in fact, protect against reproduction of identical copies of copyrighted works *if the reproduction is a fair use*.  *See* 17. U.S.C. § 107 ("Notwithstanding the provisions of sections 106 and 106A, the fair use of a copyrighted work . . . is not an infringement of copyright.").  It is also true that even virtually identical copies of unprotected elements of copyrighted works does not constitute infringement.  To suggest otherwise would confuse the jury and prejudice Arista's defenses.

Arista therefore proposes that the phrase "identical or substantially similar copies" be replaced with "infringing copies," which acknowledges that copying is not, by itself, sufficient to prove infringement.

Cisco's disputed instruction 24 differs from Arista's in two other ways: Cisco seeks to include a "derivative work" instruction (bullet number 2 in Cisco's proposed instruction), and it adapts an item from Ninth Circuit model instruction 17.1 related to displaying audiovisual works by replacing the items in the model with "computer program" (bullet number 4 in Cisco's proposed instruction)

---

[33]  Ninth Circuit Model Jury Instruction 17.1.

1

2

3

With respect to the derivative work item, Arista incorporates here its argument concerning Cisco's proposed derivative works instruction, which is Cisco's disputed instruction 35. This is not a case alleging infringement by creating derivative works, and such an instruction will confuse the jury while being superfluous to the infringement instructions concerning infringement of the right to make reproductions.

4

5

Finally, bullet number 4 in Cisco's proposed instruction is the nonsensical statement that copyright owners have the exclusive right to "display publicly a copyrighted computer program." That statement is adapted from bullet number 5 in Ninth Circuit model 17.1.

6

7

8

9

10

11

12

Cisco's departure from the model is confusing and inappropriate. The model anticipates that its item 5, together with item 4 ("perform publicly") and item 6 ("perform a sound recording") would be used in cases relating to the performance of artistic expression. It will confuse the jury to say that a computer program can be "publicly displayed"—computer programs are not performances. And, in any case, Cisco registered its works as literary works, not audiovisual works. The most Cisco could seek here is that the instruction state that owners have the exclusive right to "display a literary work," as the model provides, though that would still be confusing and serve little purpose. Cisco's allegation in this case is that Arista reproduced (item 1), and distributed (item 3) its protected expression, not that Arista is unlawfully displaying Cisco's computer programs.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

FIRST AMENDED UNDISPUTED AND DISPUTED PROPOSED JURY INSTRUCTIONS

1121178.02

**DISPUTED: Cisco's Final Instruction No. 25 re Copyright—Subject Matter[34]**

The copyrighted works involved in this trial are:

1.  Cisco's user interface of its networking equipment; and

2.  Accompanying technical documentation.


Copyright protection of a computer program extends to its structure, sequence, organization, user interface, screen displays, and menu structures.[35]  Here, Cisco claims that Arista copied original elements of several versions of Cisco's copyrighted user interface.[36]  Cisco also claims that Arista copied Cisco's copyrighted technical documentation, such as user guides and manuals.[37]  These also are protected by copyright.

I will collectively refer to Cisco's user interface and technical documents together as "Cisco's works," the "copyrighted works," or simply "the works."

The copyrights in Cisco's versions of its user interface, including the accompanying technical documents, have been registered with the United States Copyright Office.


**Cisco's Position:**

Cisco's proposed instruction follows Instruction No. 17.2 of the *Ninth Circuit Manual of Model Civil Jury Instructions* ("*Model*"), as adapted by the district court in *Synopsys, Inc. v. ATopTech, Inc.*, No. 13-cv-2965 (N.D. Cal.), ECF No. 688.  Cisco's proposed instruction is a short, neutral, accurate instruction reflecting the current state of the law, as provided in Cisco's cited authority.

Arista's proposed instruction should be rejected as confusing, duplicative, and incorrect.

---

[34]  Instruction No. 17.2, *Ninth Circuit Manual of Model Civil Jury Instructions* (2007).

[35]  *Synopsys, Inc. v. ATopTech, Inc.*, No. 13-cv-2965 (N.D. Cal.), ECF No. 688 at 11 (Final Instructions); *Johnson Controls, Inc. v. Phoenix Control Sys, Inc.*, 886 F.2d 1173, 1175 (9th Cir. 1989) (a program's "structure, sequence and organization and user interface" are protectable "depend[ing] on the particular facts of each case"); *General Universal Sys., Inc. v. Lee*, 379 F.3d 131, 142 (5th Cir. 2004) (copyright protection of computer programs "extends … to a program's nonliteral elements, including its structure, sequence, organization, user interface, screen displays, and menu structures).

[36]  ECF No. 552-1.

[37]  ECF No. 552-2.

1    *First*, as to the first paragraph, the first sentence is incorrect to describe the works involved in this
2    trial as "computer programs."  This case is not about computer programming; it is rather about a
     user interface that is visible to a human operator and that thus has no necessary or standard form of
3    expression, which is a separate copyrighted work.  *See Napoli v. Sears, Roebuck & Co.*, 874 F.
     Supp. 206, 211 (N.D. Ill. 1995) (a "single registration of a computer program accomplishes two
4    interrelated yet distinct registrations: one of the program itself, and one of the screen displays or
     user interface of that program, to the extent that each contains copyrightable subject matter"); *see*
5    *also* U.S. Copyright Office, *Registration for Computer Programs, Circular 61*, August, 2012 ("A
     single registration may be made for a computer program and its screen display. … The registration
6    will extend to any copyrightable screens generated by the program, regardless of whether
     identifying material for the screens is deposited."); PATRY ON FAIR USE §5:4 (2012) (work is not
7    determined by registration); *see* Cisco's Instruction No. 31, *infra*.

8        *Second*, in the first paragraph, Arista refers to the protection of "non-literal elements"
     without explanation of what that means and cites no authority for such an instruction; in contrast,
9    Cisco's proposal accurately states that protection "extends to its structure, sequence, organization,
     user interface, screen displays, and menu structures," which is both clear and directly supported by
10   Cisco's cited authority.

11       *Third*, Arista's second paragraph tracks an optional paragraph provided by the *Model*, but
12   such an instruction is unnecessary here because: (1) there is no dispute that Cisco's works are
     fixed in a tangible medium; and (2) subsequent instructions address the subject and scope of
13   originality in detail.  *See infra* Instruction Nos. 27 (Ideas and Expressions), 32 (Originality) and 33
     (Compilations).  There is no need for this optional paragraph when later Instructions subsequently
14   address the same concepts in greater detail.  Likewise, Arista's third paragraph is optional under
     the *Model*, but unnecessary here because it is addressed in the very next instruction, which
15   provides almost identical language.  *See infra* Instruction No. 27 (Ideas and Expressions) (parties
     agree to include the sentence: "Copyright law does not give the author the right to prevent others
16   from copying or using the underlying ideas contained in the work, such as any procedures,
17   processes, systems, methods of operation, concepts, principles or discoveries.").

18       *Fourth*, Arista's proposed instruction is also incorrect and misleading with respect to the
19   facts of this case.  Arista's proposal suggests that the only literal aspects of Cisco's copyrighted
     works are user manuals.  That is not accurate given the facts of this case, in which Cisco is
20   asserting copyright protection for its user interface, which interface includes literal components
     (*e.g.*, multi-word command expressions, command responses, modes and prompts and help
21   descriptions).

22

23

24

25

26

27

28

**DISPUTED: Arista's Final Instruction No. 25 re Copyright—Subject Matter[38]**

The works involved in this trial are computer programs, that is, sets of statements or instructions to be used directly or indirectly in a computer to bring about a certain result; and manuals describing the operation of computer programs.  You are instructed that a copyright may be obtained in computer programs and manuals.  Copyright protection in a computer program may extend to original and expressive non-literal elements of the computer program as well.

These works can be protected by copyright law. Only those parts of the works consisting of original works of authorship fixed in a tangible medium of expression from which it can be perceived, reproduced, or otherwise communicated, either directly or with the aid of a machine or device, are protected by the Copyright Act.

Copyright protection for an original work of authorship does not extend to any idea, procedure, process, system, method of operation, concept, principle, or discovery, regardless of the form in which it is described, explained, illustrated, or embodied.


**Arista's Position:**

Cisco departs from the model jury instruction in several ways without justification.  First, it adds the word "copyrighted" before the word "works" in the first sentence, which prejudges one of the issues for the jury.

Second, Cisco rewrites the categories of copyrighted works, which derives from the Copyright Act itself, to fit Cisco's revisionist history that it "copyrighted" its user interface; it hasn't.  Rather than inform the jury that the works are "computer programs," like the model instruction and the Copyright Act anticipates, Cisco seeks to tell the jury that the works at issue in this case are "[t]he user interface of networking equipment."  That is attorney argument in the guise of jury instruction.  The purpose of Model Instruction 17.2 is to explain to the jury that computer programs are, under certain circumstances, copyrightable, and not to redefine the statutory scope of the copyrights in whatever manner suits Cisco.

Next, Cisco departs entirely from the model instruction, replacing an explanation to the jury about the statutory requirements for copyright—and the limitations on copyright protection— with confusing non sequiturs about Cisco's claims and the scope of copyright protection in computer programs.  This instruction is not the place for Cisco to insert, yet again, the substance of its claims.  Nor is it an appropriate place to begin the discussion concerning the scope of

---

[38]    Ninth Circuit Model Jury Instruction 17.2.

protection in computer programs.  Doing so will either confuse the jury or predispose it in favor of Cisco because it is not being told the full story about the scope of protection available to Cisco in this case.

Cisco's proposal also blatantly misstates the law.  It claims that "[c]opyright protection of a computer program extends to its structure, sequence, organization, user interface, screen displays, and menu structures," without any qualification.  Yet Cisco's own support—*Johnson Controls*—shows that such protection is not automatic and depends on the "particular facts of each case."  886 F.2d 1173, 1175 (9th Cir. 1989).  Cisco acknowledges this wrinkle in its footnote, but it is nowhere to be found in the language it wants the jury to hear.  Such wrinkles are exactly why this instruction is the wrong place to begin instructing the jury about scope of protection.

Cisco then seeks to have the Court pronounce that its "user interface" and "technical documentation" are both "protected by copyright."  But plainly not all aspects of Cisco's "user interface" or documentation is protected, nor are all aspects asserted.  This is an incorrect and severely prejudicial characterization of the law and the case.

With respect to the final sentence of Cisco's new language for model instruction 17.2, Arista has no objection to informing the jury that Cisco obtained registrations with the Copyright Office, but the Court should specify what Cisco registered: operating system software and manuals, not Cisco's "user interface."  Moreover, Arista submits it is more appropriate to explain registration to the jury in conjunction with disputed instruction 31, which is modeled after Ninth Circuit Model Jury Instruction 17.6 dealing with copyright registration certificates.

Finally, Cisco omits the last sentence of the model instruction, which, considering the issues in this case, is an attempt to keep the jury from understanding that copyright protection "does not extend to any idea, procedure, process, system, method of operation, concept, principle, or discovery, regardless of the form in which it is described, explained, illustrated, or embodied."  Ninth Circuit Model Jury Instr. 17.2.

1121178.02

1    **DISPUTED: Cisco's Final Instruction No. 27 re Copyright—Ideas and Expressions**[39]

2        Copyright law allows the author of an original work to stop others from copying the way

3    or form the author used to express ideas in the author's work.[40]  Only the particular expression of

4    an idea can be copyrighted and protected.

5        Copyright law does not give the author the right to prevent others from copying or using

6    the underlying ideas contained in the work, such as any procedures, processes, systems, methods

7    of operation, concepts, principles or discoveries.  However, an original work—even one that

8    serves a function—is entitled to copyright protection as long as the author had multiple ways to

9    express the underlying idea.[41]

10

11    **Cisco's Position:**

12        Cisco's proposed instruction follows Instruction No. 17.1 of the *Ninth Circuit Manual of*

13    *Model Civil Jury Instructions* ("*Model*") nearly verbatim.  Cisco's only addition is the last
      sentence, which is a short, accurate and neutral statement of the applicable law on functionality as

14    applied to a user interface, with cited authority.

15        Arista's proposed instruction should be rejected, as it adds four additional paragraphs that
      are not simple, neutral, or accurate to the *Model* instruction without justification, unnecessarily

16    departing from the *Model* in scope and substance.  *First*, Arista's proposed instruction on "facts"
      is inaccurate and misleading.  While a fact stated in isolation may not be protectable, the selection

17    and arrangement of even the most basic facts is indisputably protectable, as demonstrated by
      Cisco's cited authority.  *See Feist Publ'n, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 349 (1991)

18    ("even a directory that contains absolutely no protectible [sic] written expression, only facts, meets

19    the constitutional minimum for copyright protection if it features an original selection or
      arrangement").

20

21        *Second*, Arista's representation that copyright "never protects … functions" is inaccurate

22    _____

23        [39]  Instruction No. 17.3, *Ninth Circuit Manual of Model Civil Jury Instructions* (2007).
         [40]  *Synopsys, Inc. v. ATopTech, Inc.*, No. 13-cv-2965 (N.D. Cal.), ECF No. 688 at 9 (Final

24    Instructions);  *Feist Publ'n, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 349 (1991) ("even a
      directory that contains absolutely no protectible [sic] written expression, only facts, meets the

25    constitutional minimum for copyright protection if it features an original selection or
      arrangement").

26        [41]  *Oracle Am., Inc. v. Google Inc.*, 750 F.3d 1339, 1367 (Fed. Cir. 2014) ("an original

27    work—even one that serves a function—is entitled to copyright protection as long as the author
      had multiple ways to express the underlying idea").

28

1    and misleading.  Copyright protects an author's original work that accomplishes a function if "the
2    author had multiple ways to express the underlying idea."  *Oracle Am., Inc. v. Google Inc.*, 750
     F.3d 1339, 1367 (Fed. Cir. 2014).  For this reason, Arista's purported example of a book providing
3    "functional instructions for performing CPR" is inapplicable, not only as inapt to a user interface,
     but also because it has no bearing on whether Cisco, at the time it authored its user interface, had
4    multiple ways to express the underlying ideas of the copyrighted works.  *Id.* at 1367, 1372.  If it
     did, its copyrighted works—even if they also serve functions—are protected by copyright.  *See*
5    *infra* Instruction No. 28 (Industry Standard Not Relevant).

6           *Third*, the last paragraph of Arista's proposed instruction improperly incorporates the
     doctrine of merger, which is an affirmative defense on which Arista bears the burden of proof,
7    which Arista fails to acknowledge.  *See id.* at 1358 (merger is an "affirmative defense[] to claims
     of infringement"); *Model* Instruction No. 1.2 (defendant bears burden of proof for affirmative
8    defenses).  The jury should therefore be instructed on merger as an affirmative defense, as Cisco
     has proposed.  *See infra* Instruction No. 60.  Further, Arista's merger instruction is incomplete; to
9    show that Cisco's copyrighted works are subject to merger, Arista must show that, at the time
10   Cisco created the works, Cisco had only one or a limited number of ways to express the ideas
     underlying its copyrighted works.  *See Oracle*, 750 F.3d at 1361 ("merger cannot bar copyright
11   protection for any lines of declaring source code unless [the author] had only one way, or a limited
     number of ways, to write them. … Because 'alternative expressions [we]re available,' there is no
12   merger.").  Cisco's proposed instruction on the affirmative defense of merger, *see infra* Instruction
13   No. 60, is an accurate statement of law.

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1    **DISPUTED: Arista's Final Instruction No. 27 re Copyright—Ideas and Expressions**[42]

2        Copyright law allows the author of an original work to stop others from copying the

3    original expression in the author's work. Only the particular expression of an idea can be

4    copyrighted and protected. Copyright law does not give the author the right to prevent others from

5    copying or using the underlying ideas contained in the work, such as any procedures, processes,

6    systems, methods of operation, concepts, principles or discoveries.

7        Under this rule, copyright protection also does not extend to facts or functions described or

8    used in a work.  Therefore, the copyright in a factual or functional work can protect the author's

9    particular means of expressing the facts and functions used, but it does not prohibit another author

10   from using the same facts and functions.  This means that copyright will ordinarily extend to less

11   material in a factual or functional work than it would in a work of fiction.[43]

12       For example, if a book describes a set of functional instructions for performing CPR, the

13   copyright prevents anyone (but the owner) from duplicating the book itself, but everyone is still

14   free to read the book and to use the instructions to perform CPR, because those functional aspects

15   of the work are not protected by copyright. And everyone is entitled to write their own book about

16   performing the same functional steps so long as they do not plagiarize the non-functional,

17   protected aspects of the earlier book. Again, the main point is that the copyright protects the

18   particular expression composed by the author, but never protects ideas or functions.[44]

---

[42]   Ninth Circuit Model Jury Instruction 17.3.

[43]   ABA Model Instruction 1.4.6 (Scope of Protection for Factual Works) (citing *Feist Publications, Inv. V. Rural Tel. Service Co.*, 499 U.S. 340 (1991); Harper & Row, Publishers, Inc. v. Nation Enters., 471 U.S. 539, 563 (1985) ("The law generally recognizes a greater need to disseminate factual works than works of fiction or fantasy.")); *MiTek Holdings, Inc. v. Arce Engineering Co., Inc.*, 89 F.3d 1548, 1556 & n.19 (11th Cir. 1996) (rejecting protection for command menu structure as a process consisting only of functional steps).

[44]   *Hutchins v. Zoll Medical Corp.*, 492 F.3d 1377, 1384-85 (Fed. Cir. 2007) (finding it "axiomatic" that there is no protection for "forms of expression dictated solely [by] functional considerations"; rejecting protection for "entirely functional" components of a set of instructions for performing CPR); *Oracle America, Inc. v. Google, Inc.*, No. 10-cv-03561-WHA, ECF 1017 (April 30, 2012) (Jury Instruction 17) (giving example of a book describing strategy for playing a card game as not protecting the strategy itself—a functional aspect: "The copyright confers ownership over the particular expression of ideas in a work but it never confers ownership over ideas themselves. For example, if a book describes a strategy for playing a card game, the

FIRST AMENDED UNDISPUTED AND DISPUTED PROPOSED JURY INSTRUCTIONS
1121178.02

1      Also, if an idea and the expression of that idea merge, the expression will only be protected

2  by copyright law if the alleged copying of that expression is nearly identical.  If the idea

3  underlying the copyrighted work can be expressed in only one way or only a few ways, the

4  expression of that idea will not constitute copyright infringement.[45]  This is known as the doctrine

5  of "merger."

6      In order to protect any ideas in the work from being copied, the author must secure some

7  other form of legal protection because ideas cannot be copyrighted.

8

9  **Arista's Position:**

10      Cisco's opening sentence departs from the Ninth Circuit model instruction in a notably

11  prejudicial manner.  Rather than state, as the model does, that copyright law allows authors to stop
   others from copying "original expression in the author's work," Cisco wants the Court to tell the

12  jury that the law allows Cisco to stop others from copying "the way or form the author used to
   express ideas in the author's work."  Cisco does not cite any authority for its departure from the

13  model.  Its revised version of the opening sentence of this instruction also misstates the law: not

14  all "ways" or "forms" of expression are protected by copyright law, creative, *or* independently
   created.  Cisco's alteration wholly lacks merit.

15      Arista proposes adding two additional points to this instruction because it is the natural

16  place for them. The first is to explain to the jury that facts and functions are not protected by

17
    ─────────────────────

18  copyright prevents anyone (but the owner) from duplicating the book itself but everyone is still
   free to read the book and to use the strategy, for the idea set forth in the book, that is the strategy,

19  is not protected by copyright. And, everyone is entitled to write their own book about the same
   game and the same strategy so long as they do not plagiarize the earlier book. Again, the main

20  point is that the copyright protects the particular expression composed by the author.  Another
   statutory limitation on the scope of a copyright is that copyright never protects any procedure,

21  process, system, method of operation, concept, principle, or discovery. Possibly such things can be
   claimed under the patent system or by trade secret laws but they may not be claimed by

22  copyright.")

23  [45] Ninth Circuit Model Jury Instruction 17.3 Supplemental Instruction for merger defense
   (citing *Apple Computer, Inc. v. Microsoft Corp.*, 35 F.3d 1435, 1444 (9th Cir. 1994); *CDN, Inc. v.*

24  *Kapes*, 197 F.3d 1256, 1261 (9th Cir.1999)) (quoting *Ets-Hokin*, 225 F.3d 1068, 1082 (9th Cir.
   2000) ("The merger doctrine "will not protect a copyrighted work from infringement if the idea

25  underlying the copyrighted work can be expressed in only one way, lest there be a monopoly on
   the underlying idea.").  The phrase "or only a few ways" stems from ABA Model Jury Instruction

26  1.4.7 (Copyright, Trademark, and Trade Dress Litigation) (citing cases and treatises); *see also*
   *Oracle Am., Inc. v. Google Inc.*, 750 F.3d 1339, 1359 (Fed. Cir. 2014), cert. denied, 135 S. Ct.

27  2887, 192 L. Ed. 2d 948 (2015) ("[W]hen there are a limited number of ways to express an idea,
   the idea is said to 'merge' with its expression, and the expression becomes unprotected.").

28

copyright.  *See* ABA Model Instruction 1.4.6 (Scope of Protection for Factual Works) (citing *Feist Publications, Inv. V. Rural Tel. Service Co.*, 499 U.S. 340 (1991); *Harper & Row, Publishers, Inc. v. Nation Enters.*, 471 U.S. 539, 563 (1985) ("The law generally recognizes a greater need to disseminate factual works than works of fiction or fantasy.")); *MiTek Holdings, Inc. v. Arce Engineering Co., Inc.*, 89 F.3d 1548, 1556 & n.19 (11th Cir. 1996) (rejecting protection for command menu structure as a process consisting only of functional steps).  Arista incorporates a well-supported example regarding CPR instructions for the jury's benefit.

Second, Arista proposes incorporating a merger instruction here, rather than separately.  Whether separate or not, the merger doctrine belongs next to the "ideas and expression" instruction.  Arista proposes using the supplemental merger instruction provided by Ninth Circuit Model Jury Instruction 17.3 (citing *Apple Computer, Inc. v. Microsoft Corp.*, 35 F.3d 1435, 1444 (9th Cir. 1994); *CDN, Inc. v. Kapes*, 197 F.3d 1256, 1261 (9th Cir.1999)) (quoting *Ets-Hokin*, 225 F.3d 1068, 1082 (9th Cir. 2000) ("The merger doctrine "will not protect a copyrighted work from infringement if the idea underlying the copyrighted work can be expressed in only one way, lest there be a monopoly on the underlying idea.")).  The phrase "or only a few ways" is an addition proposed by Arista to the model.  It stems from ABA Model Jury Instruction 1.4.7 (Copyright, Trademark, and Trade Dress Litigation) (citing cases and treatises); *see also Oracle Am., Inc. v. Google Inc.*, 750 F.3d 1339, 1359 (Fed. Cir. 2014), cert. denied, 135 S. Ct. 2887, 192 L. Ed. 2d 948 (2015) ("[W]hen there are a limited number of ways to express an idea, the idea is said to 'merge' with its expression, and the expression becomes unprotected.").

Cisco's separate merger instruction, set forth at Disputed Instruction 60, has no relationship to the Ninth Circuit model (which has a supplemental merger instruction).  First, it insists that merger is an affirmative defense.  It is not.  Cisco bears the burden of proving originality and protectability.  Merger is part and parcel of Cisco's burden.  *See Ets-Hokin v. Skyy Spirits, Inc.*, 225 F.3d 1068, 1082 (9th Cir. 2000) (holding merger doctrine is a "defense[] to infringement").  (The *Oracle v. Google* Federal Circuit decision incorrectly states that merger is an affirmative defense, but the citations to Ninth Circuit law and the rest of the discussion in the case make clear that it is not.  *See* 750 F.3d 1339, 1358 (Fed. Cir. 2014)).  Second, Cisco mis-states the law.  Merger applies in cases where "there are a limited number of ways to express an idea."  *Oracle Am., Inc. v. Google Inc.*, 750 F.3d 1339, 1359 (Fed. Cir. 2014), cert. denied, 135 S. Ct. 2887, 192 L. Ed. 2d 948 (2015).  Cisco's instruction attempts to narrow the scope of the doctrine to situations where there is "only one way" to express an idea—an unduly narrow, impractical definition that does not comport with leading authorities and misses the point of the doctrine.

1
2

### **DISPUTED: Cisco's Final Instruction No. 28 re Copyright—Industry Standard Not Relevant**

3

Copyright law gives the author of a copyrighted work the right to prevent others from

4

copying its original expression, even where that work has become so popular or widely used

5

within an industry that it has become the "industry standard."  Thus, whether Cisco's user

6

interface has become the preferred one for its users, or even an industry standard, has no bearing

7

on your determination on whether it, or any of its subparts, are protectable.[46]

8

9

### **Cisco's Position:**

10

Cisco's proposed instruction accurately reflects the current state of law and mirrors

11

instructions provided in *Synopsys, Inc. v. ATopTech, Inc.*, No. 13-cv-2965 (N.D. Cal.), ECF No.

688 at 8.  In that case involving copyrighted computer programs, the court gave an instruction that

12

"[a]n owner may enforce [its] rights to exclude others in an action for copyright infringement …

even after a copyrighted work has become an industry standard."  This is further supported by

13

Cisco's cited authority.  Because Arista has indicated that it plans to raise an argument regarding

14

"industry standard," this instruction is necessary to accurately inform the jury that such an

argument has no bearing on copyrightability where a work becomes an "industry standard" or

15

otherwise popular after its publication.  *Cf.* Order on Daubert Motions at 2-8 (excluding expert

testimony purporting to opine on a "*de facto* industry standard" and whether there is "widespread

16

use [of it] throughout the industry").

17

While this proposal from Cisco is not found in the *Model* instructions, that is because those

18

instructions do not recognize the existence of any supposed "industry standard" defense.

Nonetheless, the defendant in *Synopsys* attempted this defense, and the court rightly instructed the

19

jury in the same way that Cisco now asks this Court to instruct the jury.  Cisco furthermore

20

[46]  *Synopsys, Inc. v. ATopTech, Inc.*, No. 13-cv-2965 (N.D. Cal.), ECF No. 688 at 8  (Final

21

Instructions); *Oracle Am., Inc. v. Google Inc.*, 750 F.3d 1339, 1372 (Fed. Cir. 2014) (whether

Oracle's programming packages "had become the effective industry standard" or later became

22

"popular … has no bearing on the copyrightability of Oracle's work"); *Practice Mgmt. Info. Corp.*

*v. Am. Med. Ass'n*, 121 F.3d 516, 620 n.8 (9th Cir. 1997) (physician coding system copyrightable

23

even though government agency mandated its use, making it the "industry standard" ); *Kepner-*

24

*Tregoe, Inc. v. Leadership Software, Inc.*, 12 F.3d 527, 537 (5th Cir. 1994) ("protected

expression" of a "wildly successful" computer program "does not lose its protection simply

25

because it is widely disseminated"); *Warner Bros., Inc. v. Am. Broadcasting Cos.*, 720 F.2d 231,

242 (2d Cir. 1983) ("No matter how well known a copyrighted phrase becomes, its author is

26

entitled to guard against its appropriation to promote the sale of commercial products."); *see also*

27

*Oracle*, 750 F.3d at 1372 n.16 ("Notably, even when a patented method or system becomes an

acknowledged industry standard with acquiescence of the patent owner, any permissible use

28

generally requires payment of a reasonable royalty ….").

1   incorporates by reference its pending motion *in limine* that no industry standard arguments or
2   evidence should be permitted in this case. Dkt. No. 533.

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**DISPUTED: Arista's Position on Cisco's Final Instruction No. 28 re Copyright—Industry Standard Not Relevant**

Arista objects to the inclusion of Cisco's "Industry Standard Not Relevant" instruction. It is confusing, prejudicial, and misrepresents the law.

Cisco's proposed instruction stems from an instruction given in *Synopsis, Inc. v. ATopTech, Inc.*, No. 13-cv-2965 (N.D. Cal.), ECF No. 688 at 8 (Final Instructions). It does not. That instruction states instead: "An owner may enforce these rights to exclude others in an action for copyright infringement, and may do so even after a copyrighted work has become an industry standard." Leaving aside that the evidence and issues in that case were different, and this instruction itself is not supported by Ninth Circuit precedent, Cisco has removed the qualifier "may" from that instruction. Cisco would have the Court tell the jury that the industry-standard nature of its works "has no bearing on your determination on whether it, or any of its subparts, are protectable." That statement is plainly wrong.

First, if parts of Cisco's works were, at the time of adoption, copied by Cisco from industry standards, they cannot be protected by copyright because they would not be original to Cisco.

Additionally, the scènes à faire doctrine precludes protection for elements that are dictated by external factors such as widely accepted programming practices in the computer industry. *See Oracle Am., Inc. v. Google Inc.*, 750 F.3d 1339, 1363 (Fed. Cir. 2014) ("In the computer context, the scene a faire doctrine denies protection to program elements that are dictated by external factors such as 'the mechanical specifications of the computer on which a particular program is intended to run' or 'widely accepted programming practices within the computer industry.'") (internal quotation marks omitted); *Satava v. Lowry*, 323 F.3d 805, 807 (9th Cir. 2003) (The Copyright Act "denie[s] artists the exclusive right to ideas and standard elements in their works, thereby preventing them from monopolizing what rightfully belongs to the public . . . . [E]xpressions that are standard, stock, or common to a particular subject matter or medium are not protectable under copyright law.").

Cisco's reliance on *Oracle* is misplaced. *Oracle* recognized that industry standards are relevant to protectability in its discussion of the scènes à faire doctrine, cited above. The *Oracle* court explained, however, that when a work has "*become* the effective industry standard" it does not strip the work of its copyrightability, to the extent it was copyrightable to begin with. "Google's industry standard argument" in that case—*i.e.* that Oracle's APIs became an industry standard *after* they were created—"ha[d] no bearing on the copyrightability of Oracle's work," *Oracle Am., Inc. v. Google Inc.*, 750 F.3d 1339, 1372 (Fed. Cir. 2014). But Google never claimed, as Arista does here, that elements of the copyrighted work were copied from industry standards that *pre-dated* the copyrighted work. That, of course, would preclude copyright protection, since it would render the work unoriginal or subject to scènes à faire. Cisco's proposed instruction omits this important distinction.

Further, Cisco's proposed instruction threatens to confuse the jury because the industry standard nature of Cisco's works is also relevant to fair use, even if the works became industry standards *after* creation. This Court already recognized as much in its *Daubert* Order. Order on *Daubert* Motions at 3:27–28 ("[T]he evidence of widespread use of Cisco CLI throughout the

**FIRST AMENDED UNDISPUTED AND DISPUTED PROPOSED JURY INSTRUCTIONS**
1121178.02

1    industry is relevant to this case, such as on the issues of fair use and estoppel."). Cisco's proposed instruction ignores this fact completely. *See also* Arista's Opp. to Cisco's MIL No. 2, ECF 555.

2

3    If the Court intends to give any instruction like the one Cisco has proposed, Arista requests that the instruction be conformed to these significant qualifiers to Cisco's mis-statement of the law. First, the Court should tell the jury that the industry-standard origins of asserted elements at the time of their creation *does* bear significantly on copyright protection. Second, the Court should tell the jury that the industry-standard nature of asserted elements *after* creation is relevant to Arista's fair use defense. Third, the Court should not state, as Cisco does, that the industry-standard nature of its asserted elements has "no bearing" on copyright protection, since this is obviously false and does not represent the instruction given in *Synopsis*.

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## DISPUTED:  Cisco's Final Instruction No. 29 re Copyright—Elements: Ownership and Copying[47]

Anyone who copies original expression from a copyrighted work during the term of the copyright without the owner's permission infringes the copyright.

Cisco has the burden of proving by a preponderance of the evidence that:

1.  Cisco is the owner of a valid copyright; and

2.  Arista copied original expression from the copyrighted work.


If you find that Cisco proved both of these elements, your verdict should be for Cisco on the issue of infringement.  If, on the other hand, you find that Cisco has failed to prove either of these elements, your verdict should be for Arista.


## Cisco's Position:

Cisco's proposed instruction follows Instruction No. 17.4 of the *Ninth Circuit Manual of Model Civil Jury Instructions* ("*Model*") in both form and substance.

Arista's proposed instruction should be rejected.  *First*, Arista's proposed instruction unnecessarily departs from the *Model* through the insertion of a third element not included in the *Model*—namely, that Arista's works are "virtually identical" to Cisco's.  This is not a separate element, but rather a subset of whether Arista "copied original expression," *i.e.*, the applicable level of similarity.  As the Supreme Court has instructed, even where the thinnest of copyrights are arguably at issue, "[t]o establish infringement, two elements must be proven: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original."  *Feist Publications, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991).  The applicable degree of similarity is not a third element of the inquiry, but rather a component of whether Cisco "has proved the second element."  *Id.*  Moreover, the proper degree of similarity in this case is substantial similarity, not virtual identity, as set forth in Cisco's Instruction No. 37, *infra*.  Arista's reference to "each work or part of a work" likewise departs from the *Model*, is incorrect and unsupported by any authority cited by Arista, and in any event is properly addressed in the second element, *i.e.*, whether Arista "copied original expression from the copyrighted work."

*Second*, even if such an instruction were available, it is the subject of pretrial briefing currently pending before the Court.  *See* Dkt. Nos. 455 (Cisco's Trial Brief); 456 (Arista's Trial Brief); 505 (Cisco's Reply); 506 (Arista's Reply); 550-1 & 550-2 (Cisco's Submission on Protectable Elements); 585 (Arista's Response on Protectable Elements).  It is thus premature for

---

[47]  Instruction No. 17.4, *Ninth Circuit Manual of Model Civil Jury Instructions* (2007).

1   the parties to propose an instruction on such a standard.  Should the Court deem any elements of
    Cisco's asserted works unprotectable before or after the close of evidence, Cisco respectfully
2   reserves its right to propose an instruction at that time, appropriately tailored to the evidence.

3        *Third*, Arista additionally departs from the *Model* by revising the second element,
    changing the word "original" to "protected."  Arista cites no authority for this change, and the
4   *Model*'s use of the term "original" is both accurate and supported by established case law.  *See
    Feist*, 499 U.S. at 361 (second element is copying of "elements of the work that are original").
5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

FIRST AMENDED UNDISPUTED AND DISPUTED PROPOSED JURY INSTRUCTIONS

1121178.02

**DISPUTED:  Arista's Final Instruction No. 29 re Copyright—Elements: Ownership and Copying[48]**

On Cisco's copyright infringement claim, Cisco has the burden of proving by a preponderance of the evidence for each work or part of a work that Cisco asserts is protected by copyright that:

    1.  Cisco is the owner of a valid copyright;

    2.  Arista copied protected expression from the copyrighted work; and

    3.  Arista's accused works are virtually identical[49] to one or more of Cisco's copyrighted works.

I will now instruct you further concerning each of these elements of a copyright infringement claim.


**Arista's Position:**

Arista's proposed instructions are based upon Instruction No. 17.4 of the current version of the Ninth Circuit's Model Civil Jury Instructions (last updated 6/2016), with three necessary and important modifications that reflect the claims and affirmative defenses that will be presented at trial. *First*, because Arista is raising several affirmative defenses to copyright infringement that would negate a finding of copyright infringement, it would prejudice Arista and confuse the jury to state as a general matter in this instruction that: "Anyone who copies original expression from a copyrighted work during the term of the copyright without the owner's permission infringes the copyright."  Even if the jury finds that Arista had copied "original expression from a copyrighted

---

[48]  Ninth Circuit Model Jury Instruction 17.4.

[49]  *Mattel, Inc. v. MGA Entm't, Inc.*, 616 F.3d 904, 913–14 (9th Cir. 2010), *as amended on denial of reh'g* (Oct. 21, 2010) ("If there's only a narrow range of expression (for example, there are only so many ways to paint a red bouncy ball on blank canvas), then copyright protection is 'thin' and a work must be 'virtually identical' to infringe"; intrinsic tests asks "whether an ordinary reasonable observer would consider the copyrighted and challenged works substantially similar (or virtually identical)" as appropriate); *Ets-Hokin v. Skyy Spirits, Inc.*, 323 F.3d 763, 766 (9th Cir. 2003); *Satava v. Lowry*, 323 F.3d 805, 812 (9th Cir. 2003) ("Satava possesses a thin copyright that protects against only virtually identical copying."); *Apple Computer, Inc. v. Microsoft Corp.*, 35 F.3d 1435, 1439 (9th Cir. 1994) ("When the range of protectable and unauthorized expression is narrow, the appropriate standard for illicit copying is virtual identity."); *Diamond Foods, Inc. v. Hottrix, LLC*, No. 14-CV-03162-BLF, 2016 WL 3880797, at *8 (N.D. Cal. July 18, 2016) ("If, on the other hand, the range of possible expression is narrow, the protection is 'thin' and a work must be 'virtually identical' to infringe.") (internal quotation marks omitted); 4-13 Nimmer on Copyright § 13.03[A][4].

work," Arista does <u>not</u> infringe the copyright if the jury also finds that fair use, copyright misuse, or any of Arista's other defenses including *scenes a faire*, merger, *de minimis* use, and/or the words and short phrases doctrine apply to the allegedly copied expression. Therefore, it would be legal error and highly prejudicial to Arista to instruct the jury, as Cisco proposes, that "[a]nyone who copies original expression from a copyrighted work during the term of the copyright without the owner's permission infringes the copyright."

*Second*, for the same reasons, it would be wrong and highly prejudicial to Arista and confuse the jury to state in this instruction that: "If you find that Cisco proved both of these elements, your verdict should be for the plaintiff." The doctrines and defenses listed above, if proven at trial, would require partial or full verdict for Arista, even if Cisco proved those two elements. It would therefore be legal error to instruct a jury, as Cisco proposes, that a verdict for Cisco is required if Cisco merely proves that it is the owner of a valid copyright, and that Arista copied original expression from the copyrighted work.

*Third*, Arista's instruction accurately reflects that ownership and copying of protected elements by themselves do not constitute infringement. Arista proposes adding a third item to the list that states the actual test: that the jury must compare the works as a whole to determine whether the alleged copying was sufficient to constitute infringement. Leaving this third item out of the instruction will confuse the jury, because in later instructions, the Court will explain how to make that comparison, and the jury will not understand how it fits into the rubric.

Arista's proposed instruction removes these prejudicial and confusing statements, which if left in the instructions would invite the jury to find for Cisco on its copyright infringement claims without properly considering Arista' defenses.

**DISPUTED: Cisco's Final Instruction No. 30 re Copyright—Validity[50]**

Cisco is the owner of valid copyrights in its user interface and related documentation if Cisco proves by a preponderance of the evidence that:

1. Cisco's works are original; and

2. Cisco is the author or creator of the works.

**Cisco's Position:**

Cisco's proposed instruction follows Instruction No. 17.5 of the *Ninth Circuit Manual of Model Civil Jury Instructions* ("*Model*") in both form and substance. Arista's proposed instruction unnecessarily departs from the language of the *Model*, and includes language regarding assignment and exclusive license that is not in the *Model* and, in any event, is inapplicable.

Further, there is no reason to address registration with the Copyright Office in this instruction, an unjustified further departure from the *Model*. Arista's instruction would confuse rather than assist the jury by suggesting that Cisco's ownership of the registered operating systems does not also include ownership of the asserted works—the user interface and related documentation. That is incorrect, because case law and applicable regulatory guidance establish that a "single registration of a computer program accomplishes two interrelated yet distinct registrations: one of the program itself, and one of the screen displays or user interface of that program, to the extent that each contains copyrightable subject matter." *Napoli v. Sears, Roebuck & Co.*, 874 F. Supp. 206, 211 (N.D. Ill. 1995), *citing Mfs. Tech., Inc. v. CAMS, Inc.*, 706 F. Supp. 984, 990-991 (D. Conn. 1989); *see also* U.S. Copyright Office, *Registration for Computer Programs, Circular 61*, August, 2012 ("A single registration may be made for a computer program and its screen display. … The registration will extend to any copyrightable screens generated by the program, regardless of whether identifying material for the screens is deposited."); Patry On Fair Use §5:4 (2012) (work is not determined by registration). Registration is properly addressed in this case in Cisco's Instruction No. 31, *infra*.

---

[50] Instruction No. 17.5, *Ninth Circuit Manual of Model Civil Jury Instructions* (2007).

**DISPUTED: Arista's Final Instruction No. 30 re Copyright—Validity**[51]

Cisco is the owner of a valid copyright in each of the operating systems registered by Cisco with the Copyright Office and their associated documentation if Cisco proves by a preponderance of the evidence that:

1. Cisco's work is original; and

2. Cisco is the author or creator of the work, or the author or creator assigned or exclusively licensed the work to Cisco.


**Arista's Position:**

Cisco again prejudges for the jury the question of the actual scope of its copyrights while glossing over the fact that this case is about copyright infringement of twenty-six distinct copyrighted works. In fact, nowhere in Cisco's jury instructions or verdict form does it acknowledge–not even once—the actual twenty-six copyright-registered works that it asserts in this case.

As one leading copyright treatise explains, "One danger that arises in cases of multiple works is 'cherry-picking:' the plaintiff will select small portions from a number of works, and attempt to aggregate the amount of copying. This approach was property rejected in *Kroencke v. General Motors Corp.*, 270 F. Supp. 2d 441 (S.D.N.Y. 2003) and in *Damiano v. Sony Music Entertainment, Inc.*, 975 F. Supp. 623 (D.N.J. 1996), although the Second Circuit came dangerously close to falling into the trap in *Castle Rock Entm't, Inc. v. Publishing Group, Inc.*, 150 F.3d 132 (2d Cir. 1998)." 3 Patry on Copyright § 9:66 (2016). Cisco here wants to go one step further: it wants to instruct the jury that it need not analyze the copyrighted works for infringement separately, *and* it seeks to redefine its copyrights under a "user interface" umbrella that is undefined and wholly unsupported by the Copyright Act or its registrations. This Court should not fall into that trap: "each work alleged to have been infringed *must be separately analyzed*." *Id.* (emphasis added).

Arista's proposed instruction accurately captures Cisco's actual claim: that it is the owner of a valid copyright in twenty-six registered operating systems and their associated documentation. Cisco can attempt to argue at trial that these twenty-six works carry common features, but that is argument, subject to the evidence at trial, not a neutral statement of the law.

---

[51]  Ninth Circuit Model Jury Instruction 17.5.

**DISPUTED: Cisco's Final Instruction No. 31 re Copyright—Copyright Registration Certificates[52]**

A copyright owner may obtain a certificate of registration from the Copyright Office. The evidence in this case includes 26 certificates of copyright registration from the Copyright Office for Cisco's copyrighted works. If you find that a certificate was made within five years after first publication of that work, you may presume that the work is original and copyrightable, and that Cisco is the owner of that work. That is, the existence of the certificate shifts the burden to Arista concerning Cisco's ownership of a valid copyright.

**Cisco's Position:**

Cisco's proposed instruction follows Instruction No. 17.6 of the *Ninth Circuit Manual of Model Civil Jury Instructions* ("*Model*") in both form and substance, including the proposed language that the certificate is "evidence of the facts stated in the certificate" and the jury may presume "that plaintiff's work is the original and copyrightable work of the author and that the plaintiff owns the copyright in that work."

Further, the *Model*'s comment states:

A copyright registration certificate can shift the burden of proof concerning plaintiff's ownership of a valid copyright. *United Fabrics Int'l, Inc. v. C&J Wear, Inc.*, 630 F.3d 1255, 1257 (9th Cir. 2011). "For instance, if a copyright holder secures a registration certificate within five years after first publication, such certificate will constitute prima facie evidence of both the validity of the copyright and the facts stated in the certificate." *Cosmetic Ideas, Inc. v. IAC/Interactivecorp*, 606 F.3d 612, 619 (9th Cir. 2010) (citing 17 U.S.C. § 410(c)).

Cisco's proposed instruction thus correctly incorporates the presumption of validity of the certificate and the facts therein, and the shifting of the burden to Arista to rebut that presumption.

Arista's proposed instruction should be rejected. *First*, the instruction unnecessarily departs from the language of the *Model* without explanation. *Second*, Arista's proposed instruction misstates the law regarding the burden of proof; as both Cisco's and Arista's authorities make clear that a valid copyright registration is *prima facie* evidence of the validity of the work and the facts in the certificate, and the burden shifts to Arista to present evidence to rebut

---

[52] Instruction No. 17.6, *Ninth Circuit Manual of Model Civil Jury Instructions* (2007); *United Fabrics Int'l, Inc. v. C&J Wear, Inc.*, 630 F.3d 1255, 1257 (9th Cir. 2011); *Cosmetic Ideas, Inc. v. IAC/Interactivecorp*, 606 F.3d 612, 619 (9th Cir. 2010).

1    that presumption.  *Third*, Arista's instruction would confuse rather than assist the jury by
2    suggesting that a certificate establishing Cisco's ownership of the registered operating systems and
     related documentation does not also establish Cisco's ownership of the asserted works—Cisco's
3    user interface and related documentation as included in the registration.  A "single registration of a
     computer program accomplishes two interrelated yet distinct registrations: one of the program
4    itself, and one of the screen displays or user interface of that program, to the extent that each
     contains copyrightable subject matter."  *Napoli v. Sears, Roebuck & Co.*, 874 F. Supp. 206, 211
5    (N.D. Ill. 1995), *citing Mfs. Tech., Inc. v. CAMS*, Inc., 706 F. Supp. 984, 990-991 (D. Conn.
6    1989); *see also* U.S. Copyright Office, *Registration for Computer Programs, Circular 61*, August,
     2012 ("A single registration may be made for a computer program and its screen display. …  The
7    registration will extend to any copyrightable screens generated by the program, regardless of
     whether identifying material for the screens is deposited."); Patry On Fair Use § 5:4 (2012)
8    (work is not determined by registration).

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1121178.02

1    **DISPUTED: Arista's Final Instruction No. 31 re Copyright—Copyright Registration**

2    **Certificates**[53]

3        A copyright owner may obtain a certificate of registration from the Copyright Office.

4        The evidence in this case includes Exhibits ___, certificates of copyright registration from

5    the Copyright Office. You are instructed that these certificates are sufficient to establish that there

6    is a valid copyright in the operating systems and documentation described by the certificates.

7        However, the validity of the copyright in an entire work does not establish a copyright in

8    each element of the work.[54]  Cisco bears the ultimate burden of proving by a preponderance of the

9    evidence that the asserted elements of Cisco's works are original and protected by copyright.[55]

10   You may consider the certificates as well as all of the evidence presented at trial in determining

11   whether the asserted elements of Cisco's works are original.[56]

12

13   **Arista's Position:**

14       Cisco again departs from the model instruction.  While the model instruction for cases in

15   which the defendant presents evidence undermining validity or ownership of copyright states that

     the jury "may, **but need not** conclude that . . . the plaintiff's work is the original and

16   copyrightable work of the author," (emphasis added), Cisco deletes the qualification, and asks that

     the Court instruct the jury that it may presume the work is original and that the burden shifts to

17   _____

18       [53]  Ninth Circuit Model Jury Instruction 17.6.

19       [54] *Feist Publications, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 348 (1991) ("The mere fact
     that a work is copyrighted does not mean that every element of the work may be protected.").

20       [55] *Adobe Sys. Inc. v. Christenson*, 809 F.3d 1071, 1076 (9th Cir. 2015); *N. Coast Indus. v.
     Jason Maxwell, Inc.*, 972 F.2d 1031, 1033 (9th Cir. 1992) (The "presumption may be rebutted by a

21   showing on the part of the defendant that the plaintiff's work is not original. Originality is the
     indispensable prerequisite for copyrightability."); *Walker & Zanger, Inc. v. Paragon Indus., Inc.*,

22   549 F. Supp. 2d 1168, 1183–84 (N.D. Cal. 2007) ("This evidence suffices to show that plaintiff's
     tiles are 'not original but copied from another's work'; therefore, the court finds that defendant has

23   rebutted the statutory presumption, and the burden of proving validity shifts back to plaintiff.").

24       [56] *Adobe Sys. Inc. v. Christenson*, 809 F.3d 1071, 1076 (9th Cir. 2015); *Lamps Plus, Inc. v.
     Seattle Lighting Fixture Co.*, 345 F.3d 1140, 1144 (9th Cir. 2003); *N. Coast Indus. v. Jason

25   Maxwell, Inc.*, 972 F.2d 1031, 1033 (9th Cir. 1992) (The "presumption may be rebutted by a
     showing on the part of the defendant that the plaintiff's work is not original. Originality is the

26   indispensable prerequisite for copyrightability."); *Walker & Zanger, Inc. v. Paragon Indus., Inc.*,
     549 F. Supp. 2d 1168, 1183 (N.D. Cal. 2007); *Universal Furniture Int'l, Inc. v. Collezione Europa

27   USA, Inc.*, 618 F.3d 417, 430 (4th Cir. 2010), *as amended* (Aug. 24, 2010); 5 Patry on Copyright §
     17:109.

28

1  Arista concerning ownership.  Cisco's proposal does not include any explanation for the jury of
2  what it means for a jury to "presume" facts, or what it means for the burden to "shift" to Arista
   concerning a particular issue.

3       Arista's proposal is simpler and is tailored to this case.  Arista proposes an instruction that
4  states that each of the twenty-six copyright registrations are "sufficient to establish that there is a
   valid copyright in the operating systems and documentation described by the certificates" *so long*
5  *as* the instructions acknowledge that the validity of the copyrights in operating systems and
6  documentation does not extend to each and every element of the work.  As *Feist* clearly states,
   "[t]he mere fact that a work is copyrighted does not mean that every element of the work may be
7  protected."  *Feist Publications, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 348 (1991).  The jury
   must understand that Cisco bears the ultimate burden of proving that the *asserted elements* of the
8  copyright-registered works are original—that is, independently created by Cisco employees and
   creative.  While the jury may consider the certificates as evidence, the certificates are not
9  dispositive and may not even be relevant.  Indeed, the certificates themselves disclose that the
   works include public-domain and third-party computer code, but do not specify which portions of
10 the works that disclosure applies to.

11      To the extent that Cisco believes that it is entitled to a presumption of *originality* for each
   and every element within its works, this Court is already familiar with the problems related to that
12 argument.  First, it is undisputed that at least 198 CLI commands were not registered within the
   five-year statutory window.  *See* Order Denying MSJs, ECF 482 at 11:12–14:2.  And, in fact,
13 while Arista chose its motion for partial summary judgment based on undisputed evidence, there
   are also sufficient disputes of fact about the originality of all the asserted CLI elements to justify
14 stripping the presumption at trial from *every* asserted element.  Indeed, this Court found that there
   were genuine issues of fact about the originality of Cisco's CLI commands.  *Id.* at 12:22–23.
15

16      Those disputes of fact about originality are precisely why the presumption should not
   apply to any of Cisco's works.  Each of the registered works is a derivative work, and derivative
17 works are entitled only to a "slight" presumption that is "fairly easy to rebut."  3 Patry on
   Copyright § 9:13; 5 Patry on Copyright § 17:109; *Universal Furniture Int'l, Inc. v. Collezione*
18 *Europa USA, Inc.*, 618 F.3d 417, 430 (4th Cir. 2010), *as amended* (Aug. 24, 2010); *see also*
   *Cooling Sys. & Flexibles,Inc. v. Stuart Radiator, Inc.*, 777 F.2d 485, 490 (9th Cir. 1985),
19 *overruled on other grounds as stated in Jackson v. Axton*, 25 F.3d 884 (9th Cir. 1994) ("We also
   reject the argument that registration of the derivative work creates a presumption of validity of the
20 copyright of the underlying work.") (citing H.R.Rep. No. 1476, 94th Cong., 2d Sess. 57, *reprinted*
   *in* 1976 U.S. Code Cong. & Ad. News 5659, 5670; 17 U.S.C. § 103(b) ("The copyright in a
21 compilation or derivative work extends only to the material contributed by the author of such
   work, *as distinguished from the preexisting material employed in the work*.") (emphasis added).
22 Even if the regular presumption applied, as opposed to the weakened derivative one, the Ninth
   Circuit has repeatedly held that little is required to rebut it: "To rebut the presumption, an
23 infringement defendant must simply offer *some evidence or proof to dispute* or deny the plaintiff's
   prima facie case of infringement."  *Entm't Research Grp., Inc. v. Genesis Creative Grp., Inc.*, 122
24 F.3d 1211, 1217 (9th Cir. 1997) (emphasis added); *see also Lamps Plus, Inc. v. Seattle Lighting*
   *Fixture Co.*, 345 F.3d 1140, 1144 (9th Cir. 2003).  Arista presented far more than "some evidence
25 or proof to dispute" Cisco's claims of originality.
26

27

28

### DISPUTED: Cisco's Final Instruction No. 32 re Copyright—Originality[57]

An original work may include or incorporate elements taken from prior works.  The original parts of the plaintiff's work are the parts created:

1.  Independently by the work's author, that is, the author did not copy it from another work; and

2.  By use of at least some minimal creativity.

In copyright law, the "original" part of a work need not be new or novel.  The original selection and arrangement of even the simplest of words or symbols can exhibit sufficient creativity to be protectable.

Cisco's use of a process by which it exercised its judgment and expertise in selecting, implementing or arranging its multi-word command expressions, modes and prompts, hierarchies, command responses, and help descriptions render Cisco's user interface sufficiently creative for copyright protection.[58]

Further, a work is "original" if it was independently created by the author rather than copied from another source, even if someone else had previously created the same or similar work.[59]

---

[57]  Instruction No. 17.13, *Ninth Circuit Manual of Model Civil Jury Instructions* (2007).

[58]  ECF No. 482 at 12-13; *CDN Inc. v. Kapes*, 197 F.3d 1256, 1260 (9th Cir. 1999) (affirming district court's finding that "'[t]he evidence indicates that the plaintiff uses its considerable expertise and judgment to determine how a multitude of variable factors impact upon available bid and ask price data. And it is this creative process which ultimately gives rise to the Plaintiff's 'best guess' as to what the current 'bid' and 'ask' prices should be.  As such, the Court finds that these prices were created, not discovered.'").

[59]  *Lucky Break Wishbone Corp. v. Sears Roebuck & Co.*, 373 F. App'x 752, 754 (9th Cir. 2010) ("To qualify for copyright protection, a work must be original to the author.  Original, as the term is used in copyright, means only that the work was independently created by the author (as opposed to copied from other works)…."); *i-Sys., Inc. v. Softwares, Inc.*, No. 02-cv-1951, 2004 WL 742082, at *7 (D. Minn. Mar. 29, 2004).

1

**Cisco's Position:**

2          Cisco's proposed instruction follows Instruction No. 17.13 of the *Ninth Circuit Manual of*

3    *Model Civil Jury Instructions* ("*Model*") and otherwise accurately reflects the applicable legal

standards for originality.  *First*, the *Model* provides the instruction that "[i]n copyright law, the

4    "'original'" part of a work need not be new or novel," and thus should be included.  Further,

Cisco's instruction that the original selection and arrangement of even the simplest of words or

5    symbols can exhibit sufficient creativity to be protectable is an accurate statement of law.  *See*

6    *Feist Publications, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 349 (1991).  *Second*, as this Court

has already concluded, Cisco's exercise of judgment and expertise in selecting, implementing or

7    arranging its multi-word command expressions, modes and prompts, hierarchies, command

responses, and help descriptions render Cisco's user interface sufficiently creative for copyright

8    protection.  *See* Dkt. No. 482 at 12-13; *see also CDN Inc. v. Kapes*, 197 F.3d 1256, 1260 (9th Cir.

1999).  *Third*, the last paragraph correctly and concisely describes the concept of independent

9    creation.  *See Feist*, 499 U.S. at 345 ("[o]riginal … means only that the work was independently

created by the author (as opposed to copied from other works)").

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**DISPUTED: Arista's Final Instruction No. 32 re Copyright—Originality[60]**

An original work may include or incorporate elements taken from prior works, works from the public domain, and/or works owned by others, with the owner's permission. The original parts of a work are the parts created:

1.  independently by the author, that is, the author did not copy it from another work; and

2.  by use of at least some minimal creativity.

**Arista's Position:**

Cisco's "originality" instruction is a wholesale departure from Ninth Circuit Model Instruction 17.13, which is the sole basis of Arista's proposed instruction on this topic. Cisco's departures are confusing and unsupported by the law.

First, Cisco inexplicably omits the reference in the model instruction to "works from the public domain" and "works owned by others" even though all of Cisco's copyright registrations state that the respective registered work includes "preexisting third party computer code." The jury should understand that the only way Cisco can claim originality over those elements is if, as the model instruction explains, Cisco independently added creative material to the third-party, public-domain material.

Cisco then adds three new paragraphs to the model instruction. The first paragraph claims that the "original selection and arrangement of even the simplest of words or symbols can exhibit sufficient creativity to be protectable." There is no citation to authority, nor does it come from a model instruction. And the statement is confusing. Is Cisco referring to compilations of unprotectable elements, such as in *Feist Publications, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 350 (1991)? If so, it should include appropriate language in its compilation instruction (and, indeed, Arista has done so in its own compilation instruction).

In the second paragraph, Cisco would have this Court instruct the jury that, because Cisco used a "process by which it exercised its judgment and expertise in selecting, implementing or arranging its" CLI elements, that "Cisco's user interface is sufficiently creative for copyright protection." Cisco has no basis to ask for such a sweeping ruling, and, indeed, it failed to secure one at summary judgment. ECF 482 at 3–6. This Court recognized that Cisco could not secure summary judgment of copyrightability of the "Cisco CLI" when it had presented no evidence of the creation of the compilation called "Cisco CLI" (nor does any such evidence exist, since the "Cisco CLI" is a lawyer-created construct superimposed on twenty-six disparate copyright-registered operating systems published years apart and used on disparate types of hardware). *Id.* at 5:5–6:5. Now, rather than pushing its "Cisco CLI," it's pushing a "user interface" that amounts to the same vague, singular, lawyer-created construct this Court already rejected.

---

[60]  Ninth Circuit Model Jury Instruction 17.13.

1121178.02

1

2          Cisco also misunderstands this Court's discussion of *CDN Inc. v. Kapes*, 197 F.3d 1256,
1260 (9th Cir. 1999).  This Court held there was a genuine issue of material fact concerning the
3   creativity of the "process" that Cisco claims it undertook to create different CLI elements, and so
it denied Arista's motion for partial summary judgment on the originality of late-registered CLI
4   commands.  Cisco's proposed instruction apparently assumes that Cisco was granted summary
judgment on the same issue; it was not.  The sufficiency of Cisco's "process" is a disputed factual
5   issue for trial.  Indeed, one recent deposition shows that Cisco's claims of a "creative process" are
substantially overstated, and a far cry from the creative process in *CDN*.  *See* Lougheed 9/16/16
6   Depo. Tr. at 453:1–12 ("Q: How were the proposed HELPDESC phrases reviewed at Cisco when
they were proposed alongside a command?  A: They weren't . . . .  Q: Were there any guidelines
7   provided to engineers regarding how to author or create a – a HELPDESC string?  A: No.").  The
jury must decide the veracity of Cisco's claims that its CLI elements were created through creative
8   application of judgment.

9          Moreover, to the extent Cisco's process involved adopting industry standard terminology,
the decision to copy public-domain words and phrases cannot be creative.  Cisco's proposal,
10  crafted out of whole cloth, does not address that issue, either.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**DISPUTED: Cisco's Final Instruction No. 33 re Copyright—Compilations[61]**

2    An owner is entitled to copyright protection of a compilation.  A compilation is a work

3    formed by the collection and assembling of preexisting materials or of data that are selected,

4    coordinated, or arranged in such a way that the resulting work as a whole constitutes an original

5    work of authorship.

6    The owner of a compilation may enforce the right to exclude others in an action for

7    copyright infringement.  Thus, even if you find that any particular expression in Cisco's user

8    interface is not sufficiently original to warrant copyright protection, you may find that the

9    collection, selection, coordination, or arrangement of Cisco's expressions are sufficiently original

10   as a compilation.[62]

11

12   **Cisco's Position:**

13   Cisco's proposed instruction follows Instruction No. 17.15 of the *Ninth Circuit Manual of*
14   *Model Civil Jury Instructions* ("*Model*").  The last sentence accurately reflects that that the
     collection, selection, coordination or arrangement of individually unprotected elements are still
15   protectable, consistent with copyright law as explained by the U.S. Supreme Court, *see Feist*
     *Publications, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 348 (1991) ("original selection or
16   arrangement" protectable); *id.* at 357 ("collection and assembly,"  "selection, coordination, or
     arrangement"), and as acknowledged by this Circuit,  *see* Dkt. No. 482 at 12-13 (discussing *CDN*
17   *Inc. v. Kapes*, 197 F.3d 1256 (9th Cir. 1999)).  Arista's proposed instruction should be rejected.
     *First*, Arista's proposed instruction departs from the *Model* instruction and Arista provides no
18   basis to depart from it.  *Second*, Arista's instruction is misleading and duplicative as it
     unnecessarily restates an earlier instruction regarding whether copyright protects facts and ideas.
19   *See supra* Instruction No. 27.  *Third*, Arista unnecessarily presents policy arguments (*e.g.*, what
     copyright "rewards" or "promotes") and an irrelevant example concerning a phone book,
20   obscuring that the standard for protecting compilations is extremely minimal.  *Feist*, 499 U.S. at
     358-59. ("Originality requires only that the author make the selection or arrangement
21   independently (*i.e.,* without copying that selection or arrangement from another work), and that it
     display some minimal level of creativity.  Presumably, the vast majority of compilations will past
22   this test …."); *Harper House v. Thomas Nelson*, 889 F.2d 197, 204 (9th Cir. 1989); ("A
     copyrightable compilation can consist mainly or entirely of uncopyrightable elements.").
23

24

25

26 _____

27   [61]   Instruction No. 17.15, *Ninth Circuit Manual of Model Civil Jury Instructions* (2007).
28   [62]   *CDN Inc. v. Kapes*, 197 F.3d 1256, 1259-60 (9th Cir. 1999).

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1

**DISPUTED: Arista's Final Instruction No. 33 re Copyright—Compilations**[63]

2       An owner is entitled to copyright protection of a compilation. A compilation is a work

3  formed by the collection and assembling of preexisting materials or of data that are selected,

4  coordinated, or arranged in such a way that the resulting work as a whole constitutes an original

5  work of authorship.

6       The owner of a compilation may enforce the right to exclude others in an action for

7  copyright infringement.

8       However, facts and ideas are not protected, and may freely be copied by others.[64]  A

9  combination of unprotected elements, such as facts and ideas, is eligible for copyright protection

10 only if those elements are numerous enough and their selection and arrangement original enough

11 that their combination constitutes an original work of authorship.[65]  That is because the essence of

12 copyright is not to reward the labor of authors, but to promote the progress of science and useful

13 arts.[66]  For example, the typical arrangement of the white pages of a phone book—taking the

14 names, towns, and telephone numbers provided by subscribers and listing them alphabetically—is

15 not sufficiently original to merit copyright protection.[67]

16       Whether any asserted element of a work at issue in this case is protected as a compilation

17 must be determined by you based upon the evidence you have heard.

18

19  _____

20  [63]   Ninth Circuit Model Jury Instruction 17.15.

21  [64] *Feist Publications, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 350 (1991) ("No matter how
   much original authorship the work displays, the facts and ideas it exposes are free for the taking.")

22  (internal quotation marks and alterations omitted).

23  [65] Ninth Circuit Model Jury Instruction 17.15 Comment, citing and quoting *Satava v.Lowry*,
   323 F.3d 805, 811 (9th Cir.2003) ("[A] combination of unprotectable elements is eligible for
   copyright protection only if those elements are numerous enough and their selection and

24  arrangement original enough that their combination constitutes an original work of authorship.");

25  *Feist Publications, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 349 (1991).

26  [66] *Feist Publications, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 349 (1991) ("the essence of
   copyright . . . .  is not to reward the labor of authors, but to promote the Progress of Science and

27  useful Arts.") (quoting U.S. Const., Art. I, § 8, cl. 8) (internal quotation marks and alterations
   omitted).

28  [67] *Feist Publications, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 350–63 (1991).

**Arista's Position:**

Cisco seeks to add the following sentence to the model instruction:

> Thus, even if you find that any particular expression in Cisco's user interface is not sufficiently original to warrant copyright protection, you may find that the collection, selection, coordination, or arrangement of Cisco's expressions are sufficiently original as a compilation.

First, such an instruction must be supported by evidence at trial. If such evidence is not admitted, there is no basis for this sentence. Second, if the Court were to give this instruction, it must also instruct the jury as to the scope of a copyright in a compilation. In particular, the Court should explain, as Arista's instruction proposes, that facts and ideas are not protectable, so their combination is only protectable if their "selection and arrangement" is "original enough" that they "constitute[] an original work of authorship"—a phrase that comes directly from the model instruction as well as Ninth Circuit law. *See* Ninth Circuit Model Jury Instruction 17.15 Comment, citing and quoting *Satava v.Lowry*, 323 F.3d 805, 811 (9th Cir.2003) ("[A] combination of unprotectable elements is eligible for copyright protection only if those elements are numerous enough and their selection and arrangement original enough that their combination constitutes an original work of authorship."). The jury should also understand *why* facts and ideas are not protected: because copyright does not reward labor, *e.g.*, the labor involved in assembling a phone book. *Feist Publications, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 349 (1991) ("the essence of copyright . . . . is not to reward the labor of authors, but to promote the Progress of Science and useful Arts.") (quoting U.S. Const., Art. I, § 8, cl. 8) (internal quotation marks and alterations omitted). Finally, the jury should understand by way of example that a phone book, though it is a compilation of facts and ideas, is not automatically extended copyright protection, as was held in *Feist*.

**DISPUTED: Cisco's Final Instruction No. 34 re Copyright—Authorship & Work Made For Hire[68]**

The creator of an original work is called the author of that work.  An author originates or "masterminds" the original work, controlling the whole work's creation and causing it to come into being.

A copyright owner is entitled to exclude others from copying a work made for hire.  A work made for hire is one that is prepared by an employee and is within the scope of employment.

A work is made for hire within the scope of employment if:

1.  It is the kind of work the employee is employed to create;

2.  It occurs substantially within the authorized time and space limits; and

3.  It is made, at least in part, for the purpose of serving the employer.


The employer is considered to be the author of the work and owns the copyright.  All works created during the course of employment are works made for hire.[69]

A copyright owner of a work made for hire may enforce the right to exclude others in an action for copyright infringement.


**Cisco's Position:**

The first paragraph of Cisco's proposed instruction follows Instruction No. 17.7 of the *Ninth Circuit Manual of Model Civil Jury Instructions* ("*Model*") word for word.  The remaining paragraphs follow Instruction No. 17.10 of the *Model* in form and substance, with the only variation being the inclusion of the sentence: "All works created during the course of employment are works made for hire," which is taken directly from the penultimate paragraph of the *Model* instruction's comments.

Arista has not proposed an instruction on authorship and there is no reason why the *Model*, or the inclusion of the clarifying comment, should not be followed.

---

[68]  Instruction Nos. 17.7 & 17.10, *Ninth Circuit Manual of Model Civil Jury Instructions* (2007).

[69]  Instruction No. 17.10 (comment), *Ninth Circuit Manual of Model Civil Jury Instructions* (2007).

**DISPUTED: Arista's Final Instruction No. 34 re Copyright—Work Made For Hire**[70]

A copyright owner is entitled to exclude others from copying a work made for hire. A work made for hire is one that is prepared by an employee and is within the scope of employment.

A work is made for hire within the scope of employment if:

1.   It is the kind of work the employee is employed to create;

2.   It occurs substantially within the authorized time and space limits; and

3.   It is made, at least in part, for the purpose of serving the employer.


The employer is considered to be the author of the work and owns the copyright.

A copyright owner of a work made for hire may enforce the right to exclude others in an action for copyright infringement.


**Arista's Position:**

Arista's proposed instructions follow Instruction No. 17.10 of the current version of the Ninth Circuit's Model Civil Jury Instructions (last updated 6/2016) on Works Made for Hire, and should be adopted without modification. Cisco's proposed instructions appear to be based on the same model instructions for Works Made for Hire, but also contain additional instructions that are unnecessary, confusing, and prejudicial. *First*, Cisco appears to cherry-pick aspects of a completely different Ninth Circuit model jury instruction—Instruction No. 17.7—that pertains to copyright authorship, but Cisco excludes substantial portions of that instruction that explain who is *not* an author of a work, and the types of contributions that do *not* confer authorship. To the extent the Court is inclined to include authorship-related instructions, it should provide a complete—and not cherry-picked—set of instructions based on the model order, and provide those instructions separate from this "Work Made For Hire" instruction. *Second*, Arista objects to the term "masterminds" in Cisco's proposed instruction as confusing and prejudicial. There is no context for what it means for an author to "mastermind" an original work, which would allow Cisco to redefine that word into whatever suits its case. Moreover, the term "masterminds" is unnecessary given that the model instructions use the term "originates," which is far less confusing to the jury and cannot be redefined by the parties. *Third*, Arista objects to Cisco's addition of the vague statement "All works created during the course of employment are works made for hire." This proposed additional instruction appears nowhere in the model instructions and is highly prejudicial and will confuse the jury because it directly contradicts the preceding jury instructions that recite the multiple elements required to prove that a work is in fact a work made for hire. For example, this statement makes no mention of the "scope of employment" requirement for a work made for hire. It is completely unnecessary given the clear (and largely

---

[70]   Instruction No. 17.10, *Ninth Circuit Manual of Model Civil Jury Instructions* (2007).

1   agreed upon) language earlier in this instruction that set forth the requirements of proving a work
2   made for hire.

**DISPUTED: Cisco's Final Instruction No. 35 re Copyright—Derivative Work**[71]

A copyright owner is entitled to exclude others from creating derivative works based on the owner's copyrighted work.  The term "derivative work" refers to a work based on one or more pre-existing works, such as a translation, musical arrangement, dramatization, fictionalization, motion picture version, sound recording, art reproduction, abridgment, condensation, or any other form in which a work may be recast, transformed, or adapted.  Accordingly, the owner of a copyrighted work is entitled to exclude others from recasting, transforming, or adapting the copyrighted work without the owner's permission.

**Cisco's Position:**

Cisco's proposed instruction directly tracks the first paragraph of Instruction No. 17.4 of the *Ninth Circuit Manual of Model Civil Jury Instructions* ("*Model*"), other than the removal of the phrase "musical arrangement, dramatization, fictionalization, motion picture version, sound recording, art reproduction," which is not necessary for this case.  The remaining paragraphs of the *Model* are not necessary for the jury's determination of whether Arista infringed Cisco's copyrights, and thus are not necessary for the jury to render its verdict.  Further, Arista's copying includes not only literal copying, but also the incorporation of copies of Cisco's copyrighted works into Arista's own works, thus implicating Cisco's right to prepare derivative works.  *See, e.g.*, Dkt. No. 64 (Second Amended Complaint) ¶¶ 6-10 (discussing incorporation of Cisco's works into Arista's products).

*Arista* has not proposed an instruction on derivative works, nor has it explained why the *Model* is insufficient or why the remaining paragraphs in the *Model* are applicable.

---

[71]  Instruction No. 17.14, *Ninth Circuit Manual of Model Civil Jury Instructions* (2007).

**DISPUTED: Arista's Position on Cisco's Final Instruction No. 35 re Copyright—Derivative Work**

Arista's position is that no such instruction should be given.

**Arista's Position:**

Arista objects to the inclusion of the instruction on derivative works proposed by Cisco, which excerpts an irrelevant portion of Ninth Circuit model jury instruction 17.14. The paragraph Cisco proposes correctly states that, in addition to the right to exclude others from copying a copyrighted work, a copyright owner also has the right to exclude others from creating derivative works, *i.e.*, the "adaptation right." Cisco has never asserted that Arista infringed the adaptation right, and therefore is precluded from raising that theory of infringement for the first time now. Nowhere in Cisco's operative complaint (ECF 64) or in the recently filed Joint Pretrial Statement (ECF 593) does Cisco accuse Arista of creating derivative works without Cisco's permission, nor does the term "derivative works" appear even once in either of those documents. Cisco is not entitled to any instruction on derivative works, and Arista has not proposed a competing instruction, because the subject of creating derivative works without permission is not, and has never been, at issue in this litigation and will only confuse the jury and prejudice Arista.

Moreover, Cisco's proposed (incomplete) instruction is misleading, confusing, and superfluous. To determine whether Arista has infringed Cisco's adaptation right, the jury would need to apply *exactly the same* test for infringement as it would for the reproduction right. *See Litchfield v. Spielberg*, 736 F.2d 1352, 1357 (9th Cir. 1984) ("A work will be considered a derivative work *only if it would be considered an infringing work if* the material which it has derived from a prior work had been taken without the consent of a copyright proprietor of such prior work.") (internal quotation marks omitted; original emphasis); *Mirage Editions, Inc. v. Albuquerque A.R.T. Co.*, 856 F.2d 1341, 1343 (9th Cir. 1988) ("[A] work will be considered a derivative work only if it would be considered an infringing work if the material which it has derived from a preexisting work had been taken without the consent of a copyright proprietor of such preexisting work.") (quoting 1 Nimmer on Copyright § 3.01 (1986)); *Allen v. Acad. Games League of Am., Inc.*, 89 F.3d 614, 617 (9th Cir. 1996) (same); *Micro Star v. Formgen Inc.*, 154 F.3d 1107, 1112 (9th Cir. 1998) (same); *see also Kohus v. Mariol*, 328 F.3d 848, 858 (6th Cir. 2003) (same); *Twin Peaks Prods., Inc. v. Publications Int'l, Ltd.*, 996 F.2d 1366, 1373 (2d Cir. 1993) ("The finding that the Book was a derivative work would seem unnecessary to the finding of *prima facie* infringement" because adding a finding of infringement of derivative right was "superfluous" to finding of infringement of right to reproduce) (citing 2 *Nimmer* § 8.09 [A], at 8–114).

Cisco offers no explanation how, on the facts of this case, the jury could find infringement of the adaptation right without finding infringement of the reproduction right. Instructing the jury on the adaptation right thus would be cumulative and risk confusing the jury into concluding that the test for infringement is somehow different for the two rights. Indeed, the leading copyright treatise makes clear that, in cases such as this one, "[t]his right [the adaptation right] may be thought to be completely superfluous because, under the Section 101 definition of a derivative

1    work, it must be 'based upon one or more pre-existing works' . . . .  Therefore, if the latter work
2    does not incorporate enough of the pre-existing work to constitute an infringement of either the
     reproduction right or of the performance right, then it likewise will not infringe the right to make
3    derivative works because no derivative work will have resulted."  2-8 Nimmer on Copyright §
     8.09[A][1].  This is not the rare, "exotic situation[] in which the adaptation right may take on
4    substantive significance" because the accused infringer had the legal right to reproduce the
     original work, but not to create derivative works.  *Id.*  This is the run-of-the-mill case where the
5    right to create derivative works does not differ in any substantive respect from the right to
     reproduce the original work.

6
7        Cisco should not be allowed to mislead the jury by suggesting that the infringement test
     differs with respect to the adaptation right.  Since the test for infringement of the adaptation right
8    is superfluous on the facts of this case, the instruction should not be given.  But, should the Court
     give one, it should add to the instruction to make clear to the jury the following: "Regardless, the
9    test for infringement remains the same: Cisco must prove by a preponderance of the evidence that
     Arista copied Cisco's works, and that Arista's works are [virtually identical or substantially
10   similar] to Cisco's works, whether you find they are derivative works or not."

11       Finally, if the Court believes that an instruction on derivative works is proper, Arista
12   objects to Cisco's proposed instruction as highly prejudicial, misleading, and incomplete.  *First*,
     Cisco cherry-picks from the Ninth Circuit's Model Instruction No. 17.14 by excluding several
13   important legal rules that, if omitted from the final instructions, would be legal error.  For
     example, Cisco's instruction omits the statement in the model instruction that says "Only what
14   was newly created, such as editorial revisions, annotations, elaborations, or other modifications to
     the pre-existing work is considered to be the derivative work."  17 U.S.C. § 103(b); *see also*
15   *Stewart v. Abend*, 495 U.S. 207, 223 (1990).  Cisco would therefore have the jury believe that the
     full contents in the derivative works that it asserts in this lawsuit—and not just what was newly
16   added—is protected by copyright, which would be legal error.  *Second*, Cisco's proposed
     instructions omit the statement from the model instructions that "The author of the derivative work
17   is entitled to copyright protection only for original contributions made by that author that are more
     than trivial."  *U.S. Auto Parts Network, Inc. v. Parts Geek, LLC*, 692 F.3d 1009, 1016 (9th
18   Cir.2012).  Cisco's omission of that statement from the Ninth Circuit's Model Instructions again
     reveals its intent to claim copyright protection over all aspects—and not just the newly added,
19   non-trivia; original expression—of the derivative works that it asserts in this dispute.

20
21       Cisco's proposed instructions also omit from the Ninth Circuit's Model Instructions the
     critical statement that:  "If the derivative work incorporates pre-existing work by others and works
22   in the public domain, the derivative author's protection is limited to elements added by the
     derivative author to the pre-existing work of others and the public domain work" and "The author
23   of the derivative work may enforce the right to exclude others from the original elements added by
     the author in an action for copyright infringement."  Those legal limits placed on the copyrights
24   held by authors of derivative works must be part of any jury instruction on derivative works
     because all of Cisco's registered works state that they include "preexisting third party computer
25   code."  Cisco's proposed instruction, which omits all of these limitations on copyright over
     derivative works, would mislead the jury and prejudice Arista on the scope of copyright protection
26   over derivative works.  Arista, however, does not believe that Cisco is entitled to any instruction
27   whatsoever on "derivative works" given the nature of its copyright infringement claims.

28

1121178.02

**DISPUTED: Cisco's Final Instruction No. 36 re Copyright—Copying (Direct Evidence)**[72]

Cisco has the burden of proving by a preponderance of the evidence that Arista copied original elements from Cisco's copyrighted works. There are two ways that Cisco can meet its burden.

First, Cisco may establish Arista's copying through direct evidence,[73] such as admissions from Arista, witness testimony, or a striking similarity between the works, such as the existence of common errors in both Cisco's and Arista's works.[74]

**Cisco's Position:**

Cisco intends to present both direct and indirect evidence supporting Cisco's claim that Arista copied Cisco's protected works. Where direct evidence of copying exists, copying need not be proved through circumstantial evidence of access plus substantial similarity. *See* 4 NIMMER ON COPYRIGHT § 13.01 n.27 (collecting cases in which direct evidence was available to show copying, *e.g.*, through witness admissions); *Norse v. Henry Holt & Co.*, 991 F.2d 563, 566 (9th Cir. 1993) (finding "substantial similarity analysis … inapposite to the copying issue because appellees admit that they in fact copied"). While the *Ninth Circuit Manual of Model Civil Jury Instructions* do not include this instruction, that is likely because in "most copyright cases" such evidence is not available. *Norse*, 991 F.2d at 566. But because such evidence will be presented here, a corresponding instruction is warranted to make this form of proof clear to the jury.

---

[72] Instruction No. 17.16, *Ninth Circuit Manual of Model Civil Jury Instructions* (2007).
[73] *Brocade Commc'ns Sys. v. A10 Networks, Inc.*, 873 F. Supp. 2d 1192, 1218-19 (N.D. Cal. 2012) ("In the absence of direct evidence of copying, such as an admission, 'copying' may be shown by proving access to the copyrighted work and substantial similarity between the works …. [I]n this case, Brocade has submitted direct evidence of copying. Thus, the substantial similarity test is not applicable."); *Rottlund Co. v. Pinnacle Corp.*, 452 F.3d 726, 732 (8th Cir. 2006) (direct evidence of copying includes "party admissions, witness accounts of the physical act of copying, and common errors in the works of plaintiffs and the defendants").
[74] *Three Boys Music Corp. v. Bolton*, 212 F.3d 477, 485 (9th Cir. 2000) ("[I]n the absence of any proof of access, a copyright plaintiff can still make out a case of infringement by showing that the songs were 'strikingly similar.'"); *Brocade Commc'ns Sys. v. A10 Networks, Inc.*, 873 F. Supp. 2d 1192, 1218-19 (N.D. Cal. 2012) ("In the absence of direct evidence of copying, such as an admission, 'copying' may be shown by proving access to the copyrighted work and substantial similarity between the works …. [I]n this case, Brocade has submitted direct evidence of copying. Thus, the substantial similarity test is not applicable."); *Rottlund Co. v. Pinnacle Corp.*, 452 F.3d 726, 732 (8th Cir. 2006) (direct evidence of copying includes "party admissions, witness accounts of the physical act of copying, and common errors in the works of plaintiffs and the defendants").

1    **DISPUTED: Cisco's Final Instruction No. 37 re Copyright—Copying (Indirect Evidence)[75]**

2         Alternatively, even absent direct evidence, Cisco may show that Arista copied from

3    Cisco's copyrighted works through indirect evidence by proving by a preponderance of the

4    evidence that:

5         1.   Arista had access to Cisco's copyrighted works and;

6         2.   There are substantial similarities between Arista's works and the original elements of

7              Cisco's works.

8

9    **Cisco's Position:**

10        Cisco's proposed instruction tracks the first paragraph of Instruction No. 17.16 of the *Ninth*

11   *Circuit Manual of Model Civil Jury Instructions* ("*Model*") in form and substance.

12        Arista's proposed instruction should be rejected.  *First*, Arista's proposed instruction
     improperly states the burden of proof twice.  The Court should follow the *Model* instructions as

13   written.  *Second*, Arista's proposed instruction improperly departs from the *Model* by inserting a
     different standard for indirect proof of copying, *i.e.*, that Arista's works need to be proved

14   "virtually identical" rather than "substantially similar" to Cisco's in order for the jury to find
     copying.  This instruction thus presupposes that the protection for Cisco's works is "thin," which

15   Cisco vigorously disputes for reasons set forth in Cisco's filtration/protectability filings that are
     pending before the Court, which establish that the asserted works or portions thereof are

16   protectable in their entirety.  *See* Dkt. Nos. 455 (Cisco's Trial Brief); 456 (Arista's Trial Brief);
     505 (Cisco's Reply); 506 (Arista's Reply); 550-1 & 550-2 (Cisco's Submission on Protectable

17   Elements); 585 (Arista's Response on Protectable Elements).  Should the Court find otherwise
     before or after the close of evidence, *see Harper House v. Thomas Nelson*, 889 F.2d 197, 208-09

18   (9th Cir. 1989); *Oracle Am., Inc. v. Google Inc.*, 10-cv-3561-WHA, Dkt. 584 at 1 (copyrightability
     issues are "best left until after the judge has heard the evidence at trial"), *id.* Dkt. 620 at 1

19   (declining to address instructions on copyrightability until after close of evidence), Cisco
     respectfully reserves the right to propose an instruction regarding the applicable scope.

20

21

22

23

24

25   ———————————

26        [75]  Instruction No. 17.16, *Ninth Circuit Manual of Model Civil Jury Instructions* (2007);

27   *Brocade Commc'ns Sys. v. A10 Networks, Inc.*, 873 F. Supp. 2d 1192, 1218-19 (N.D. Cal. 2012)
     ("In the absence of direct evidence of copying, … 'copying' may be shown by proving access to

28   the copyrighted work and substantial similarity between the works.").

                                                         -84-                    Case No. 5:14-cv-5344-BLF
1121178.02

## **DISPUTED: Arista's Final Instruction No. 37 re Copyright—Copying[76]**

[Arista's Disputed Instruction 37 is addressed to Cisco's Disputed Instructions 36 and 37]


Cisco has the burden of proving that Arista copied protected elements from Cisco's copyrighted works. Copying may be established by direct or circumstantial evidence.[77]  Cisco may show that Arista copied from the works by proving by a preponderance of the evidence that Arista had access to Cisco's copyrighted works and that Arista's works are virtually identical[78] to Cisco's copyrighted works.[79]

---

[76]   Ninth Circuit Model Jury Instruction 17.16.

[77]   ABA Model Jury Instruction 1.5.2 (Copyright, Trademark, and Trade Dress Litigation) ("Copying may be established, as is the case with other facts, by direct or circumstantial evidence").

[78] *Mattel, Inc. v. MGA Entm't, Inc.*, 616 F.3d 904, 913–14 (9th Cir. 2010), *as amended on denial of reh'g* (Oct. 21, 2010) ("If there's only a narrow range of expression (for example, there are only so many ways to paint a red bouncy ball on blank canvas), then copyright protection is 'thin' and a work must be 'virtually identical' to infringe"; intrinsic tests asks "whether an ordinary reasonable observer would consider the copyrighted and challenged works substantially similar (or virtually identical)" as appropriate); *Ets-Hokin v. Skyy Spirits, Inc.*, 323 F.3d 763, 766 (9th Cir. 2003); *Satava v. Lowry*, 323 F.3d 805, 812 (9th Cir. 2003) ("Satava possesses a thin copyright that protects against only virtually identical copying."); *Apple Computer, Inc. v. Microsoft Corp.*, 35 F.3d 1435, 1439 (9th Cir. 1994) ("When the range of protectable and unauthorized expression is narrow, the appropriate standard for illicit copying is virtual identity."); *Diamond Foods, Inc. v. Hottrix, LLC*, No. 14-CV-03162-BLF, 2016 WL 3880797, at *8 (N.D. Cal. July 18, 2016) ("If, on the other hand, the range of possible expression is narrow, the protection is 'thin' and a work must be 'virtually identical' to infringe.") (internal quotation marks omitted); 4-13 Nimmer on Copyright § 13.03[A][4].

[79] *Dream Games of Arizona, Inc. v. PC Onsite*, 561 F.3d 983, 988 (9th Cir. 2009) ("To allow the possibility of such a finding [of infringement], the jury must be allowed to see *the complete work*.") (emphasis added); *Apple Computer, Inc. v. Microsoft Corp.*, 35 F.3d 1435, 1443 (9th Cir. 1994) ("Depending on the degree of protection, the court must set the appropriate standard for a subjective comparison of the works to determine whether, *as a whole*, they are sufficiently similar to support a finding of illicit copying."); (emphasis added); *id.* at 1446 ("Under *Harper House* and *Frybarger*, there can be no infringement unless *the works* are virtually identical.") (emphasis added); *Newton v. Diamond*, 388 F.3d 1189, 1195 (9th Cir. 2004) ("This focus on the sample's relation to the plaintiff's work *as a whole* embodies the fundamental question in any infringement action") (emphasis added); *MiTek Holdings, Inc. v. Arce Eng'g Co.*, 89 F.3d 1548, 1560 (11th Cir. 1996) (in a substantial similarity case: "*Nimmer*, in using the term "substantial similarity," is referring to the program as a whole, not constituent elements of the program. The district court concluded that, in TrussPro, four of the five protected ACES elements were substantially similar. However, its ultimate conclusion was that since these elements lacked significance in the ACES

FIRST AMENDED UNDISPUTED AND DISPUTED PROPOSED JURY INSTRUCTIONS

1121178.02

**Arista's Position:**

Cisco has split the Ninth Circuit's copying instruction into two separate instructions—Cisco's disputed instructions 36 and 37 related to "direct" and "indirect" evidence of copying. The Ninth Circuit model for copying does, in fact, omit that copying may be shown by direct evidence. Arista's solution to that omission is to add an appropriate sentence, taken directly from ABA Model Copyright Jury Instruction 1.5.2, stating as such. The jury will already have a separate direct/circumstantial evidence instruction. Nothing more is required.

Further, Cisco's "direct evidence" instruction is confusing. First, not all "witness testimony" constitutes direct evidence of copying. And the "striking similarity" doctrine applies to *indirect* evidence of copying, as Cisco's own authorities explain. It is confusing why Cisco would place the "striking similarity" doctrine with direct evidence. It does not belong there, and it is, by definition, circumstantial evidence of copying. *See Three Boys Music Corp. v. Bolton*, 212 F.3d 477, 485 (9th Cir. 2000) (discussing indirect access plus similarity test: "[I]n the absence of any proof of access, a copyright plaintiff can still make out a case of infringement by showing that the songs were 'strikingly similar.'").

But also, a striking similarity is not conclusive. The most recent statements by the Ninth Circuit correctly state that striking similarities between works "*may give rise to a permissible inference of copying*," which is a far cry from Cisco's statement that a striking similarity is direct evidence of copying. *Loomis v. Cornish*, No. 13-57093, 2016 WL 4578363, at *2 n.1, --- F.3d ---- (9th Cir. Sept. 2, 2016) (emphasis added); *see also Friedman v. Live Nation Merch., Inc.*, No. 14-55302, 2016 WL 4394585, at *7, --- F.3d ---- (9th Cir. Aug. 18, 2016) (quoting *Baxter v. MCA, Inc.*, 812 F.2d 421, 423 (9th Cir. 1987)). For example, while two identical photographs or musical compositions may give rise to a permissible inference of copying, two identical CLI commands named "ip address" that set an ip address, an industry-standard term, may not, by itself, lead a reasonable juror to believe that one was copied from the other.

Turning to Cisco's "indirect evidence" copying instruction, Cisco asks the Court to apply the "substantial similarities" standard for copying, even though Cisco's works should be entitled

_____

program *as a whole*, the two programs *as a whole* were not substantially similar; therefore, there was no finding of infringement.") (Ital. in original); *Diamond Foods, Inc. v. Hottrix, LLC*, No. 14-CV-03162-BLF, 2016 WL 3880797, at *8 (N.D. Cal. July 18, 2016) ("If, on the other hand, the range of possible expression is narrow, the protection is 'thin' and *a work* must be 'virtually identical' to infringe.") (emphasis added) (internal quotation marks omitted); *Antonick v. Elec. Arts Inc.*, No. C 11-1543 CRB, 2014 WL 245018, at *6 (N.D. Cal. Jan. 22, 2014) (jury instructions in virtual identity case involving videogames "required the jury to compare 'the works to determine whether, *as a whole*, they are sufficiently similar to support a finding of illicit copying . . . . The works must be compared as a whole because the relevant inquiry is 'whether a substantial portion of the protectable material in the plaintiff's work was appropriated—not whether a substantial portion of defendant's work was derived from plaintiff's work' . . . . [C]ourts are to focus on the significance of the protected expression to plaintiff's entire work.") (emphasis added) (second quotation marks quoting *Newton v. Diamond*, 388 F.3d 1189, 1195 (9th Cir. 2004)); *see also id.* at 6–7 (reversing jury verdict of infringement because plaintiff failed to present evidence of plaintiff's work as a whole, disabling jury from making proper comparison for infringement intrinsic test).

1  to no more than thin copyright protection. As the parties have addressed at length in analytic

2  dissection, works are compared for either substantial similarity *or* virtual identity, depending on
   how broad the scope of copyright protection is. The authorities cited by Arista in its proposed

3  copying instruction bear out why the "virtual identity" standard should be applied in this case.
   *See, e.g., Mattel, Inc. v. MGA Entm't, Inc.*, 616 F.3d 904, 913–14 (9th Cir. 2010), *as amended on*

4  *denial of reh'g* (Oct. 21, 2010) ("If there's only a narrow range of expression (for example, there
   are only so many ways to paint a red bouncy ball on blank canvas), then copyright protection is

5  'thin' and a work must be 'virtually identical' to infringe"; intrinsic tests asks "whether an
   ordinary reasonable observer would consider the copyrighted and challenged works substantially

6  similar (or virtually identical)" as appropriate); *Ets-Hokin v. Skyy Spirits, Inc.*, 323 F.3d 763, 766
   (9th Cir. 2003); *Satava v. Lowry*, 323 F.3d 805, 812 (9th Cir. 2003) ("Satava possesses a thin

7  copyright that protects against only virtually identical copying."); *Apple Computer, Inc. v.*

8  *Microsoft Corp.*, 35 F.3d 1435, 1439 (9th Cir. 1994) ("When the range of protectable and
   unauthorized expression is narrow, the appropriate standard for illicit copying is virtual identity.");

9  *Diamond Foods, Inc. v. Hottrix, LLC*, No. 14-CV-03162-BLF, 2016 WL 3880797, at *8 (N.D.
   Cal. July 18, 2016) ("If, on the other hand, the range of possible expression is narrow, the

10 protection is 'thin' and a work must be 'virtually identical' to infringe.") (internal quotation
   marks omitted); 4-13 Nimmer on Copyright § 13.03[A][4].

11

12    If the "virtual identity" standard applies here, the jury should compare the works for virtual
   identity at the copying step as well as at the separate infringement step. It would make little sense

13 to ask the jury to decide copying based on substantial similarity, only to then apply the virtual
   identity standard when the jury decides whether the copying rises to the level of infringement.

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**<u>DISPUTED: Cisco's Final Instruction No. 38 re Copyright—Access[80]</u>**

To establish indirect evidence of copying, Cisco must prove by a preponderance of the evidence that Arista had access to Cisco's copyrighted works.  You may find that Arista had access to Cisco's works if Arista had a reasonable opportunity to view, read, or copy Cisco's works before Arista's work was created.

If you find that there is a striking similarity between Cisco's and Arista's works, then Cisco need not prove Arista had access to Cisco's works.[81]

**<u>Cisco's Position:</u>**

The first paragraph of Cisco's proposed instruction tracks Instruction No. 17.17 of the *Ninth Circuit Manual of Model Civil Jury Instructions* ("*Model*") in form and substance.  Further, the Supplemental Instruction of the *Model* includes an optional instruction that access is satisfied where "a similarity between the plaintiff's work and the defendant's work that is so 'striking' that it is highly likely the works were not created independent of one another."  Cisco's instruction is thus consistent with the *Model* and its cited authority.

Arista's proposed instruction should be rejected because it does not account for the alternative method of establishing access by proving striking similarity, as the law of this Circuit provides.

---

[80]  Instruction No. 17.17, *Ninth Circuit Manual of Model Civil Jury Instructions* (2007); *Sid & Marty Krofft Television Prods., Inc. v. McDonald's Corp.*, 562 F.2d 1157, 1172 (9th Cir. 1977).
[81]  *Three Boys Music Corp. v. Bolton*, 212 F.3d 477, 483 (9th Cir. 2000) (in absence of any proof of access, copyright plaintiff can still make out case of infringement by showing that songs were "strikingly similar").

1

**DISPUTED: Arista's Final Instruction No. 38 re Copyright—Access[82]**

2

You may find that Arista had access to Cisco's work if Arista had a reasonable opportunity

3

to view, read, or copy Cisco's work before Arista's work was created.

4

5

**Arista's Position:**

6

Cisco's "access" instruction again misstates the "striking similarity" doctrine.  The most

7

recent statements by the Ninth Circuit correctly state that striking similarities between works "*may*

8

give rise to a permissible inference of copying," not that Cisco need not prove access if there are striking similarities.  *Loomis v. Cornish*, No. 13-57093, 2016 WL 4578363, at *2 n.1, --- F.3d ----

9

(9th Cir. Sept. 2, 2016) (emphasis added); *see also Friedman v. Live Nation Merch., Inc.*, No. 14-55302, 2016 WL 4394585, at *7, --- F.3d ---- (9th Cir. Aug. 18, 2016) (quoting *Baxter v. MCA,*

10

*Inc.*, 812 F.2d 421, 423 (9th Cir. 1987)).  For example, while two identical photographs or musical compositions may give rise to a permissible inference of copying, two identical CLI commands

11

named "ip address" that set an ip address, an industry-standard term, may not, by itself, lead a reasonable juror to believe that one was copied from the other.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

[82]  Ninth Circuit Model Jury Instruction 17.17.

28

-89-    Case No. 5:14-cv-5344-BLF

1    **DISPUTED: Cisco's Final Instruction No. 39 re Copyright—Substantial Similarity**

2    [Cisco's Disputed Instruction 39 is addressed to Arista's Disputed Instructions 40 – 45]

3

4    Cisco claims that certain elements of its user interface and documentation are substantially

5    similar to elements of Arista's user interface and documentation.

6    Substantial similarity is evaluated by comparing the original elements of Cisco's user

7    interface and documentation to Arista's user interface and documentation to see if Arista's works

8    are substantially similar to original elements of Cisco's copyrighted works.[83]

9    In determining whether Cisco's and Arista's user interface and documentation are

10   substantially similar, both the qualitative and quantitative similarities should be taken into

11   account.[84]  Substantial similarity does not require the works to be identical or even almost

12   identical.[85]  For example, if Arista had a high degree of access to Cisco's copyrighted user

13   interface, less overall similarity is required.[86]

14   ───────────────────────

15   [83]  *Apple Comp., Inc. v. Microsoft Corp.*, 35 F.3d 1435, 1446 (9th Cir. 1994); *Engineering Dynamics, Inc. v. Structural Software, Inc.*, 46 F.3d 408, 410 (5th Cir. 1995).

16   [84]  *Newton v. Diamond*, 388 F.3d 1189, 1195 (9th Cir. 2004) ("Substantiality is measured by considering the qualitative and quantitative significance of the copied portion in relation to the plaintiff's work as a whole.").

17

18   [85]  *Landsberg v. Scrabble Crossword Game Players, Inc.,* 736 F.2d 485, 488 (9th Cir. 1984) ("[A] new work incorporating that idea need not be a verbatim copy or close paraphrase of an earlier work to infringe that work.  A resemblance in details of setting, incident, or characterization that falls short of close paraphrase may be enough to establish substantial similarity and infringement."); *Kepner-Tregoe, Inc. v. Leadership Software*, 12 F.3d 527, 533 (5th Cir. 1994) (although defendant's modified work was not identical to plaintiff's, the modifications did not dispel the similarity of expression shared).

19

20

21

22   [86]  Instruction No. 17.16, *Ninth Circuit Manual of Model Civil Jury Instructions* (2007) (Supplemental Instruction); *Benay v. Warner Bros. Entm't, Inc.*, 607 F.3d 620, 625 (9th Cir. 2010) ("Under the 'inverse ratio' rule, if a defendant had access to a copyrighted work, the plaintiff may show infringement based on a lesser degree of similarity between the copyrighted work and the allegedly infringing work."); *Swirsky v. Carey*, 376 F.3d 841, 844-45 (9th Cir. 2004) (when high degree of access is shown, lower standard of proof of substantial similarity is required and noting that this burden is carried by plaintiff); *Rice v. Fox Broad. Co.*, 330 F.3d 1170, 1178 (9th Cir. 2003) (under "inverse ratio rule," court requires lower standard of proof of substantial similarity when high degree of access is shown and "a prominent factor" in using inverse ratio analysis is "concession of access by the defendant to the plaintiff's copyrighted work"); *Three Boys Music Corp. v. Bolton*, 212 F.3d 477, 488 (9th Cir. 2000)  (rule "requires a lesser showing of substantial

23

24

25

26

27

28

1    Even if the amount of similar material is quantitatively small, if it is qualitatively

2  important, you may properly find substantial similarity.[87]  For example, a small portion of Cisco's

3  user interface may nonetheless give it distinctive features or may make it especially creative or

4  desirable.  In such a case, a finding of substantial similarity may be appropriate.[88]

5

6   **Cisco's Position:**

7    Cisco's proposed instruction is a clear, concise and accurate statement of the appropriate

8  legal standard supported by the extensive cited authority, including the Supplemental Instruction
   to Instruction No. 17.16 of the *Ninth Circuit Manual of Model Civil Jury Instructions*; *see also*

9  *Brown Bag Software v. Symantec Corp.*, 960 F.2d 1465, 1475-77 (9th Cir. 1992) (applying
   substantial similarity test).

10

11

12

13

14

15

16  _____

17  similarity if there is a strong showing of access" but noting that "[w]e have never held…the
    inverse … [that] a weak showing of access requires a stronger showing of substantial similarity.").

18  [87]  *Swirsky v. Carey*, 376 F.3d 841, 852 (9th Cir. 2004) ("even if a copied portion be relatively

19  small in proportion to the entire work, if qualitatively important, the finder of fact may properly
    find substantial similarity"); *Baxter v. MCA, Inc.*, 812 F.2d 421, 425 (9th Cir. 1987) ("Even if a

20  copied portion be relatively small in proportion to the entire work, if qualitatively important, the
    finder of fact may properly find substantial similarity."); *Worth v. Selchow & Righter Co.*, 827

21  F.2d 569, 570 n. 1 (9th Cir. 1987) ("[A] determination of the qualitative importance of the
    material to the plaintiff's work is more significant than a quantitative calculation of the portion

22  allegedly appropriated by the defendant."); *Apple Computer, Inc. v. Microsoft, Corp.*, 821 F. Supp.

23  616, 624 (N.D. Cal. 1993), aff'd, 35 F.3d 1435 (9th Cir. 1994) ("quantitatively insignificant
    infringement may be substantial if the material is qualitatively important to plaintiff's work")  .

24  [88]  *Oracle Am., Inc. v. Google Inc.*, 750 F.3d 1339, 1379 (Fed. Cir. 2014) (affirming jury

25  verdict of copyright infringement where defendant copied nine lines out of 2.8 million lines of
    code because the copied material was "qualitatively significant"); *Brocade Commc'ns Sys. v. A10*

26  *Networks, Inc.*, No. 10-cv-3428, 2013 WL 831528, at *8 (N.D. Cal. Jan. 10, 2013) (affirming jury
    verdict of copyright infringement and explaining that "[a]lthough [defendant] points to the ratio

27  between the 145 lines of infringing code and the 10 million lines of code in [plaintiff's] product,
    that ratio fails to account for the evidence suggesting the importance of the implementing code to

28  [plaintiff's] software.").

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**DISPUTED: Cisco's Position on Arista's Final Instruction No. 40 re Copyright—**

**Infringement: Extrinsic Test; Intrinsic Test**

   Cisco's position is that no such instruction should be given.

**Cisco's Position:**

   Arista's proposed instruction should be rejected. Arista incorrectly suggests that 'the works must be "virtually identical" and compared "as a whole"; the proper standard is "substantial similarity" because, for reasons set forth in Cisco's pretrial briefing currently pending before the Court, the asserted works or relevant portions thereof are original and protectable in their entirety, and the copyright protection applicable to those works is broad (not "thin") because there are multiple other ways in which the content of a user interface and related documents could have been expressed. *See* Dkt. Nos. 455 (Cisco's Trial Brief); 456 (Arista's Trial Brief); 505 (Cisco's Reply); 506 (Arista's Reply); 550-1 & 550-2 (Cisco's Submission on Protectable Elements); 585 (Arista's Response on Protectable Elements). Further, Arista's instruction that the works be compared "as a whole" is incorrect and confusing because it improperly encourages comparison of the entire works (including both protectable and unprotectable expression), and not a limited comparison of the protectable expression, the only relevant unit of measurement, to corresponding elements in the accused works. *See Harper House, Inc. v. Thomas Nelson, Inc.*, 889 F.2d 197, 206-08 (9th Cir. 1989) (finding instruction to constitute error requiring new trial where jury instructed to compare works "as a whole" rather then instructing whether defendants copied "protectable expression"). Further, Arista's cited cases do not support the proposed instruction. For example, the quoted language from *Dream Games* concerned whether the jury could **consider** the whole work, not whether that was the relevant unit of analysis for "virtual identity." To the contrary, "[t]he district court instructed the jury that 'to establish that PC Onsite is liable for infringement, Dream Games must show that the accused screen displays are virtually identical to **protected elements** of corresponding screen displays of the Fast Action Bingo game.'" (emphasis added). *Dream Games of Arizona, Inc. v. PC Onsite*, 561 F.3d 983, 989 (9th Cir. 2009); *see also Apple Computer, Inc. v. Microsoft Corp.*, 35 F.3d 1435, 1439 (9th Cir. 1994) (analyzing work "as a whole" only after finding that **all** of the allegedly similar elements were either "unprotectable or licensed" or "de minimis"). Arista's remaining citations similarly do not support its proposed instruction. Further, none of Arista's cited cases on a "virtually identical" instruction applies to a user interface like Cisco's.

   Cisco's proposed Instruction No. 39, *supra*, sets forth the proper "substantial similarity" test that is applicable under such circumstances. Should the Court find otherwise before or after the close of evidence, *see Harper House v. Thomas Nelson*, 889 F.2d 197, 208-09 (9th Cir. 1989); *Oracle Am., Inc. v. Google Inc.*, 10-cv-3561-WHA, Dkt. 584 at 1 (copyrightability issues are "best left until after the judge has heard the evidence at trial"), *id.* Dkt. 620 at 1 (declining to address instructions on copyrightability until after close of evidence), Cisco respectfully reserves the right to propose an instruction distinguishing protectable from any unprotectable elements.

**DISPUTED: Arista's Final Instruction No. 40 re Copyright—Infringement: Extrinsic Test; Intrinsic Test[89]**

If you find that Arista copied elements of Cisco's works, you must next determine whether Arista's copying was sufficient to constitute copyright infringement.[90]

Cisco must prove that Arista copied a protected part of a copyrighted work owned by Cisco, and that Arista's work is virtually identical[91] to one or more of Cisco's copyrighted works. So, there are two elements Cisco must prove to carry its burden on infringement, namely copying of a protected part and virtual identity between the works as a whole.[92]  These are issues for you

---

[89]  Ninth Circuit Model Jury Instruction 17.18 does not provide an instruction.  The Committee recommends that the Court and counsel craft instructions based on relevant authorities.

[90]  Ninth Circuit Model Jury Instruction 17.0 (detailing jury steps in determining infringement); ABA Model Jury Instruction 1.5.8 (Copyright, Trademark, and Trade Dress Litigation); Patry on Copyright § 9:59–9:60; 4-13 Nimmer on Copyright § 13.03[A]; *Mattel, Inc. v. MGA Entm't, Inc.*, 616 F.3d 904, 913 (9th Cir. 2010), *as amended on denial of reh'g* (Oct. 21, 2010) (post-verdict decision discussing jury's task following dissection); *Benay v. Warner Bros. Entm't*, 607 F.3d 620, 624 (9th Cir. 2010) (discussing extrinsic  and intrinsic tests); *Apple Computer, Inc. v. Microsoft Corp.*, 35 F.3d 1435, 1442 (9th Cir. 1994) (same).

[91]  *Mattel, Inc. v. MGA Entm't, Inc.*, 616 F.3d 904, 913–14 (9th Cir. 2010), *as amended on denial of reh'g* (Oct. 21, 2010) ("If there's only a narrow range of expression (for example, there are only so many ways to paint a red bouncy ball on blank canvas), then copyright protection is 'thin' and a work must be 'virtually identical' to infringe"; intrinsic tests asks "whether an ordinary reasonable observer would consider the copyrighted and challenged works substantially similar (or virtually identical)" as appropriate); *Ets-Hokin v. Skyy Spirits, Inc.*, 323 F.3d 763, 766 (9th Cir. 2003); *Satava v. Lowry*, 323 F.3d 805, 812 (9th Cir. 2003) ("Satava possesses a thin copyright that protects against only virtually identical copying."); *Apple Computer, Inc. v. Microsoft Corp.*, 35 F.3d 1435, 1439 (9th Cir. 1994) ("When the range of protectable and unauthorized expression is narrow, the appropriate standard for illicit copying is virtual identity."); *Diamond Foods, Inc. v. Hottrix, LLC*, No. 14-CV-03162-BLF, 2016 WL 3880797, at *8 (N.D. Cal. July 18, 2016) ("If, on the other hand, the range of possible expression is narrow, the protection is  'thin' and a work must be 'virtually identical' to infringe.") (internal quotation marks omitted); 4-13 Nimmer on Copyright § 13.03[A][4].

[92]  *Dream Games of Arizona, Inc. v. PC Onsite*, 561 F.3d 983, 988 (9th Cir. 2009) ("To allow the possibility of such a finding [of infringement], the jury must be allowed to see *the complete work*.") (emphasis added); *Apple Computer, Inc. v. Microsoft Corp.*, 35 F.3d 1435, 1443 (9th Cir. 1994) ("Depending on the degree of protection, the court must set the appropriate standard for a subjective comparison of the works to determine whether, *as a whole*, they are sufficiently similar to support a finding of illicit copying.") (emphasis added); *id.* at 1446 ("Under *Harper House* and *Frybarger*, there can be no infringement unless *the works* are virtually identical.") (emphasis added); *Newton v. Diamond*, 388 F.3d 1189, 1195 (9th Cir. 2004) ("This focus on the sample's relation to the plaintiff's work *as a whole* embodies the fundamental question in any infringement

---

1    to decide. [93]

2

3    **Arista's Position:**

4        The Ninth Circuit model instruction advises parties to draft their own infringement

5    instruction based on relevant authorities.

6        As discussed further in connection with disputed instruction 44, concerning comparing

7    works as a whole, Cisco's instructions conflate two elements of an infringement case.  Copying by

     itself does not constitute copyright infringement.  Other instructions have already covered the

8    ─────────────────────

9    action") (emphasis added); *MiTek Holdings, Inc. v. Arce Eng'g Co.*, 89 F.3d 1548, 1560 (11th Cir.
     1996) (in a substantial similarity case: "*Nimmer*, in using the term "substantial similarity," is
10   referring to the program as a whole, not constituent elements of the program. The district court
     concluded that, in TrussPro, four of the five protected ACES elements were substantially similar.
11   However, its ultimate conclusion was that since these elements lacked significance in the ACES
     program *as a whole*, the two programs *as a whole* were not substantially similar; therefore, there
12   was no finding of infringement.") (Ital. in original); *Diamond Foods, Inc. v. Hottrix, LLC*, No. 14-
     CV-03162-BLF, 2016 WL 3880797, at *8 (N.D. Cal. July 18, 2016) ("If, on the other hand, the
13   range of possible expression is narrow, the protection is 'thin' and *a work* must be 'virtually
     identical' to infringe.") (emphasis added) (internal quotation marks omitted); *Antonick v. Elec.*
14   *Arts Inc.*, No. C 11-1543 CRB, 2014 WL 245018, at *6 (N.D. Cal. Jan. 22, 2014) (jury
     instructions in virtual identity case involving videogames "required the jury to compare 'the works
15   to determine whether, *as a whole*, they are sufficiently similar to support a finding of illicit
     copying . . . .  The works must be compared as a whole because the relevant inquiry is 'whether a
16   substantial portion of the protectable material in the plaintiff's work was appropriated—not
     whether a substantial portion of defendant's work was derived from plaintiff's work' . . . .  [C]ourts
17   are to focus on the significance of the protected expression to plaintiff's entire work.") (emphasis
     added) (second quotation marks quoting *Newton v. Diamond*, 388 F.3d 1189, 1195 (9th Cir.
18   2004)); *see also id.* at 6–7 (reversing jury verdict of infringement because plaintiff failed to
     present evidence of plaintiff's work as a whole, disabling jury from making proper comparison for
19   infringement intrinsic test).
        [93] *Oracle America, Inc. v. Google, Inc.*, No. 10-cv-03561-WHA, ECF 1017 (April 30, 2012)
20   (Jury Instruction 24) ("Oracle must also prove that Google copied all or a protected part of a
     copyrighted work owned by Oracle and that the amount of copying was not de minimis. So, there
21   are two elements Oracle must prove to carry its burden on infringement, namely copying of a
     protected part and the part copied was more than de minimis when compared to the work as a
22   whole. These are issues for you to decide."); Ninth Circuit Model Jury Instruction 17.0 (detailing
     jury steps in determining infringement); ABA Model Jury Instruction 1.5.8 (Copyright,
23   Trademark, and Trade Dress Litigation); Patry on Copyright § 9:59–9:60; 4-13 Nimmer on
     Copyright § 13.03[A]; *Mattel, Inc. v. MGA Entm't, Inc.*, 616 F.3d 904, 913 (9th Cir. 2010), *as*
24   *amended on denial of reh'g* (Oct. 21, 2010) (post-verdict decision discussing jury's task following
     dissection); *Benay v. Warner Bros. Entm't*, 607 F.3d 620, 624 (9th Cir. 2010) (discussing extrinsic
25   and intrinsic tests); *Apple Computer, Inc. v. Microsoft Corp.*, 35 F.3d 1435, 1442 (9th Cir. 1994)
     (same).

26

27

28

                                              -94-                    Case No. 5:14-cv-5344-BLF

1121178.02

question of proving copying by direct or circumstantial evidence.  This instruction must cover the next step: whether the copying is sufficient to constitute infringement.  *See* Ninth Circuit Model Jury Instruction 17.0 (detailing jury steps in determining infringement); ABA Model Jury Instruction 1.5.8 (Copyright, Trademark, and Trade Dress Litigation); Patry on Copyright § 9:59–9:60; 4-13 Nimmer on Copyright § 13.03[A]; *Mattel, Inc. v. MGA Entm't, Inc.*, 616 F.3d 904, 913 (9th Cir. 2010), *as amended on denial of reh'g* (Oct. 21, 2010) (post-verdict decision discussing jury's task following dissection); *Benay v. Warner Bros. Entm't*, 607 F.3d 620, 624 (9th Cir. 2010) (discussing extrinsic  and intrinsic tests); *Apple Computer, Inc. v. Microsoft Corp.*, 35 F.3d 1435, 1442 (9th Cir. 1994) (same).

To find that copying is sufficient to constitute infringement, the jury is required to compare the works as a whole.  And the Court must determine whether that comparison must be made for substantial similarity or virtual identity (Ninth Circuit Model Instruction 17.18 is titled "substantial similarity" as a placeholder, but cites dozens of "virtual identity" cases as well.  The title of the instruction should comport to the standard this Court chooses for the comparison).  *See Mattel, Inc. v. MGA Entm't, Inc.*, 616 F.3d 904, 913–14 (9th Cir. 2010), *as amended on denial of reh'g* (Oct. 21, 2010) ("If there's only a narrow range of expression (for example, there are only so many ways to paint a red bouncy ball on blank canvas), then copyright protection is 'thin' and a work must be 'virtually identical' to infringe"; intrinsic tests asks "whether an ordinary reasonable observer would consider the copyrighted and challenged works substantially similar (or virtually identical)" as appropriate); *Ets-Hokin v. Skyy Spirits, Inc.*, 323 F.3d 763, 766 (9th Cir. 2003); *Satava v. Lowry*, 323 F.3d 805, 812 (9th Cir. 2003) ("Satava possesses a thin copyright that protects against only virtually identical copying."); *Apple Computer, Inc. v. Microsoft Corp.*, 35 F.3d 1435, 1439 (9th Cir. 1994) ("When the range of protectable and unauthorized expression is narrow, the appropriate standard for illicit copying is virtual identity."); *Diamond Foods, Inc. v. Hottrix, LLC*, No. 14-CV-03162-BLF, 2016 WL 3880797, at *8 (N.D. Cal. July 18, 2016) ("If, on the other hand, the range of possible expression is narrow, the protection is  'thin' and a work must be 'virtually identical' to infringe.") (internal quotation marks omitted); 4-13 Nimmer on Copyright § 13.03[A][4].

Cisco's instruction is written under the assumption this Court will find its works are entitled to "broad" copyright protection.  That question is reserved for analytic dissection, and Arista will not belabor the point here.  Arista points out only that, should the Court find that Cisco's asserted CLI elements are entitled only to thin protection, then Cisco's instruction is wrong, as it sets forth the wrong standard for comparing the works as a whole.

Cisco's instruction, even under a broad-protection regime, misstates the law.  Cisco would have the jury determine whether "certain elements of its user interface and documentation are substantially similar to elements of Arista's user interface and documentation."  As discussed in connection with disputed instruction 44, the jury is required to compare the works *as a whole*, not elements that Cisco cherry-picks to corresponding elements in Arista's work.  Regardless of the scope of protection (virtual identity or substantial similarity), the comparison is one made of works *as a whole.  See Dream Games of Arizona, Inc. v. PC Onsite*, 561 F.3d 983, 988 (9th Cir. 2009) ("To allow the possibility of such a finding [of infringement], the jury must be allowed to see *the complete work.*") (emphasis added); *Apple Computer, Inc. v. Microsoft Corp.*, 35 F.3d 1435, 1443 (9th Cir. 1994) ("Depending on the degree of protection, the court must set the appropriate standard for a subjective comparison of the works to determine whether, *as a whole*, they are sufficiently similar to support a finding of illicit copying.") (emphasis added); *id.* at 1446

1    ("Under *Harper House* and *Frybarger*, there can be no infringement unless *the works* are virtually
2    identical.") (emphasis added); *Diamond Foods, Inc. v. Hottrix, LLC*, No. 14-CV-03162-BLF, 2016
     WL 3880797, at *8 (N.D. Cal. July 18, 2016) ("If, on the other hand, the range of possible
3    expression is narrow, the protection is 'thin' and *a work* must be 'virtually identical' to infringe.")
     (emphasis added) (internal quotation marks omitted); additional authorities cited in Arista's
4    proposed instruction.

5         Indeed, a verdict of copyright infringement that did not include a comparison of the works
     as a whole requires reversal of the jury's verdict. *See Antonick v. Elec. Arts Inc.*, No. C 11-1543
6    CRB, 2014 WL 245018, at *6–7 (N.D. Cal. Jan. 22, 2014) (reversing jury verdict of infringement
7    because plaintiff failed to present evidence of plaintiff's work as a whole, disabling jury from
     making proper comparison for infringement intrinsic test).

8         Finally, under the virtual identity standard, Cisco's qualitative/quantitative instruction is
9    unnecessary. While it has a place in the substantial similarity analysis, if the Court applies the
     virtual identity standard, quantitative and qualitative identity should be covered by any finding of
10   infringement.

11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1121178.02

**DISPUTED: Cisco's Position on Arista's Final Instruction No. 41 re Copyright—Protected And Unprotected Matter**

Cisco's position is that no such instruction should be given.

**Cisco's Position:**

Arista's proposed instruction should be rejected. Cisco's proposed Instruction No. 39, *supra*, provides sufficient flexibility to the jury to evaluate both quantitative and qualitative similarities, as required by Cisco's cited authorities including the flexibility to determine the degree of similarity necessarily to establish actionable copying.

Moreover, Arista's proposed instruction is misleading and confusing to the jury in two respects. *First*, Arista is incorrect that the asserted elements of Cisco's user interface are "all … non-literal elements." For example, the asserted Cisco user interface in this case includes numerous *literal* elements, including multi-word command expressions, modes and prompts, help descriptions and, command responses.

*Second*, the filtration/dissection analysis that forms the basis of Arista's instruction is the subject of pretrial briefing currently pending before the Court. *See* Dkt. Nos. 455 (Cisco's Trial Brief); 456 (Arista's Trial Brief); 505 (Cisco's Reply); 506 (Arista's Reply); 550-1 & 550-2 (Cisco's Submission on Protectable Elements); 585 (Arista's Response on Protectable Elements). Should the Court find otherwise before or after the close of evidence, *see Harper House v. Thomas Nelson*, 889 F.2d 197, 208-09 (9th Cir. 1989); *Oracle Am., Inc. v. Google Inc.*, 10-cv-3561-WHA, Dkt. 584 at 1 (copyrightability issues are "best left until after the judge has heard the evidence at trial"), *id.* Dkt. 620 at 1 (declining to address instructions on copyrightability until after close of evidence), Cisco respectfully reserves the right to propose an instruction setting forth the protectable elements of the asserted works that should be compared to the corresponding features of Arista's accused works.

1121178.02

**DISPUTED: Arista's Final Instruction No. 41 re Copyright—Protected And Unprotected Matter[94]**

Copyright protection does not extend to all the elements of a copyrighted work. Elements to which copyright protection extends are called "protected matter," and other elements are "unprotected matter." Unprotected matter is not entitled to copyright protection and therefore may be copied by another author.

Usually the literal text of a work is protected matter, but there are some circumstances in which it is unprotected. The non-literal elements of a work may, depending on the circumstances, be protected or unprotected matter. All of the asserted elements in this case are non-literal elements, except for the asserted elements of the manuals.


**Arista's Position:**

Arista's proposed instruction on protected and unprotected copyrighted matter is based upon the ABA Model Jury Instructions, Copyright, Trademark, and Trade Dress Litigation, Instruction 1.4.2, and properly informs the jury in a neutral way that copyright protection does not extend to all elements of a copyrighted work. Cisco does not and cannot dispute the fact that, under the copyright law, unprotected elements of a copyrighted work may be copied by others, and Cisco has not articulated to Arista any prejudice that would result from this instruction. Nor could it, as the Court will determine before the jury is charged with these final instructions what elements of Cisco's asserted copyrighted works are protected and unprotected matter under the copyright law, and will convey that information to the jury so that it can perform the proper infringement analysis and comparison. *See Apple Computer, Inc. v. Microsoft Corp.*, 35 F.3d 1435, 1443 (9th Cir. 1994).

Similarly, it will be helpful to explain to the jury in a software program copyright case such as this that there are literal and non-literal components of a software program, particularly since Cisco has stipulated that it is not asserting literal copying of its registered operating systems in this lawsuit. Arista's proposed instructions provide a neutral explanation of literal and non-literal components of a computer program that is consistent with Ninth Circuit caselaw. *See, e.g.*, *Johnson Controls, Inc. v. Phoenix Control Systems, Inc.*, 886 F. 2d 1173, 1175 (9th Cir. 1989) (explaining the differences between the scope of protection over literal and non-literal components of a computer program). Cisco would have the jury believe that every aspect of a copyrighted work is protected by copyright law, which would be legal error.

---

[94]    ABA Model Jury Instructions, Copyright, Trademark, and Trade Dress Litigation, Instruction 1.4.2. There is no analogous Ninth Circuit Model Jury Instruction.

**DISPUTED: Cisco's Position on Arista's Final Instruction No. 42 re Copyright—Types Of**

**Unprotected Matter**

Cisco's position is that no such instruction should be given.

**Cisco's Position:**

Arista's proposed instruction should be rejected. Cisco's proposed Instruction No. 39, *supra*, appropriately states the law of substantial similarity applicable to this case. Arista's proposed instruction is duplicative, incorrect and misleading.

*First*, Arista's instruction includes elements that have already been addressed in the Court's instructions and thus are unnecessarily duplicative. *See supra* Instruction Nos. 25 (Subject Matter), 27 (Ideas and Expressions), 32 (Originality), 33 (Compilations), 34 (Authorship).

*Second*, the doctrines of merger and scènes à faire are affirmative defenses and thus should be addressed separately, as Arista bears the burden of proof on those defenses. *See Oracle Am., Inc. v. Google Inc.*, 750 F.3d 1339, 1358 (Fed. Cir. 2014) ("concepts of merger and scènes à faire are affirmative defenses to claims of infringement"); *Ninth Circuit Manual of Model Civil Jury Instructions*, Instruction No. 1.2 (defendant bears burden of proof for affirmative defenses). The Court should thus adopt Cisco's proposed Instruction Nos. 60 (Scènes à Faire) and 61 (Merger), which properly addresses these affirmative defenses.

*Third*, Arista's instruction does not accurately represent the law, as it includes concepts such as "common programming techniques" and elements that "perform …functions" as unprotectable matter, which is not accurate. *See supra* Cisco Instruction Nos. 28 (Industry Standard Not Relevant); *Oracle Am., Inc. v. Google Inc.*, 750 F.3d 1339, 1367 (Fed. Cir. 2014) ("an original work—even one that serves a function—is entitled to copyright protection as long as the author had multiple ways to express the underlying idea"). Further, it is inaccurate in that this trial is not about computer programming, but rather about a user interface.

*Fourth*, Arista's proposed instruction fails to assist the jury to distinguish "protected" from "unprotected matter." Vague and general statements like those in Arista's proposed instruction are unhelpful to the jury. *See Harper House v. Thomas Nelson*, 889 F.2d 197, 206-08 (9th Cir. 1989). If the Court determines as a matter of law before or after the close of evidence that certain elements of Cisco's works are unprotected based on the filtration/dissection analysis that is the subject of pretrial briefing currently pending before the Court, an instruction may be fashioned with specificity at that time. *See* Dkt. Nos. 455 (Cisco's Trial Brief); 456 (Arista's Trial Brief); 505 (Cisco's Reply); 506 (Arista's Reply); 550-1 & 550-2 (Cisco's Submission on Protectable Elements); 585 (Arista's Response on Protectable Elements); *see also Harper House*, 889 F.2d at 208-09; *Oracle Am., Inc. v. Google Inc.*, 10-cv-3561-WHA, Dkt. 584 at 1 (copyrightability issues raised are "best left until after the judge has heard the evidence at trial"), *id.* Dkt. 620 at 1 (declining to address instructions on copyrightability until after close of evidence). Cisco respectfully reserves the right to propose an instruction distinguishing protectable from any unprotectable elements at that time.

1121178.02

**DISPUTED: Arista's Final Instruction No. 42 re Copyright—Types Of Unprotected Matter[95]**

There are various types of unprotected matter. They include:

1. A portion of a work that is not original to the author;

2. A portion of the work that is in the public domain;

3. An idea, concept, principle, discovery, fact, actual event, process, or method expressed or described in a work;

4. A particular means of expression that is unprotected under the doctrine of merger, which I will explain in a moment.

5. Content that is unprotected under the doctrine of scènes à faire, which I will explain in a moment; or

6. Parts of a computer program considered to be ideas, common programming techniques, or that are required in order for the program to perform its function efficiently and effectively given the computer hardware and other software with which the program operates.

I will describe these types of unprotected matter further in other instructions.

**Arista's Position:**

Arista's proposed instruction on protected and unprotected copyrighted matter is based upon the ABA Model Jury Instructions, Copyright, Trademark, and Trade Dress Litigation, Instruction 1.4.3, and properly informs the jury in a neutral way that copyright protection does not extend to certain types of unprotected matter of a copyrighted work. Arista's instructions are helpful to the jury and should be included in the final jury instructions because they provide a clear explanation of the types of matter—relevant to Arista's defenses and non-infringement positions that will be presented at trial—that are not protected by copyright law under the copyright statutes and governing Ninth Circuit law. Cisco has not proposed a competing instruction, nor has it articulated any prejudice that would result from Arista's proposed instruction.

---

[95] ABA Model Jury Instructions, Copyright, Trademark, and Trade Dress Litigation, Instruction 1.4.3 (citing cases and treatises). There is no analogous Ninth Circuit Model Jury Instruction.

1    **DISPUTED: Cisco's Position on Arista's Final Instruction No. 43 re Copyright—Particular**

2    **Unprotected Elements**

3         Cisco's position is that no such instruction should be given.

4

5    **Cisco's Position:**

6         Arista's proposed instruction should be rejected.  Cisco's proposed Instruction No. 39,

7    *supra*, sets forth the appropriate "substantial similarity" analysis applicable to this case.  Arista's
     proposed instruction is duplicative, incorrect and misleading.

8         *First*, Arista's instruction includes elements that have already been addressed in the

9    Court's other instructions and thus are unnecessarily duplicative.  *See, e.g.* Instruction Nos. 25
     (Subject Matter), 27 (Ideas and Expressions), 32 (Originality), 33 (Compilations), 34

10   (Authorship), 60 (Scènes à Faire), 61 (Merger).  It is unduly prejudicial to Cisco for the Court to
     repeat what is not protected by copyright without also addressing what is protected by copyright

11   (*e.g.*, the selection and arrangement of even factual elements, and the expression of functions).

12        *Second*, the doctrines of merger and scènes à faire are affirmative defenses and should be

13   addressed separately, as Arista bears the burden of proof on those defenses.  *See Oracle Am., Inc.
     v. Google Inc.*, 750 F.3d 1339, 1358 (Fed. Cir. 2014) ("concepts of merger and scènes à faire are

14   affirmative defenses to claims of infringement"); *Ninth Circuit Manual of Model Civil Jury
     Instructions*, Instruction No. 1.2 (defendant bears burden of proof for affirmative defenses).  The

15   Court should thus adopt Cisco's proposed Instruction Nos. 60 (Scènes à Faire) and 61 (Merger),

16   which properly addresses these affirmative defenses.

17        *Third*, as set forth in the filtration/dissection analysis that is the subject of pretrial briefing
     currently pending before the Court, *see* Dkt. Nos. 455 (Cisco's Trial Brief); 456 (Arista's Trial

18   Brief); 505 (Cisco's Reply); 506 (Arista's Reply); 550-1 & 550-2 (Cisco's Submission on
     Protectable Elements); 585 (Arista's Response on Protectable Elements), Cisco's asserted works

19   or the relevant portions thereof are original and protectable in their entirety and subject to broad
     (not "thin") copyright protection because there are multiple ways in which the ideas underlying the

20   asserted works could be expressed.  Further, Arista's instruction that the works be compared "as a
     whole" is incorrect and confusing and incompatible with Arista's other instructions, *see* Arista's

21   Proposed Instructions No. 40, 44, 45, which improperly encourage comparison of the entire works
     (including both protectable and unprotectable expression), and not a limited comparison of the

22   protectable expression, the only relevant unit of measurement, to corresponding elements in the
     accused works.  *See Harper House, Inc. v. Thomas Nelson, Inc.*, 889 F.2d 197, 206-08 (9th Cir.

23   1989) (finding instruction to constitute error requiring new trial where jury instructed to compare

24   works "as a whole" rather than instructing whether defendants copied "protectable expression").
     Should the Court hold otherwise before or after the close of evidence, *see Harper House v.*

25   *Thomas Nelson*, 889 F.2d 197, 208-09 (9th Cir. 1989); *Oracle Am., Inc. v. Google Inc.*, 10-cv-

26   3561-WHA, Dkt. 584 at 1 (copyrightability issues are "best left until after the judge has heard the
     evidence at trial"), *id.* Dkt. 620 at 1 (declining to address instructions on copyrightability until

27   after close of evidence), Cisco respectfully reserves its right to propose an instruction

28   distinguishing protectable from any unprotectable elements.

                                                    -101-                    Case No. 5:14-cv-5344-BLF

## **DISPUTED: Arista's Final Instruction No. 43 re Copyright—Particular Unprotected Elements**

I have already instructed you about types of unprotected matter that can be legally copied, such as portions of works that are not original to the author, ideas, concepts, and principles, expressions that are merged with an idea, and scènes à faire.  In addition to any types of Cisco's work that you find unprotected, the following aspects of Cisco's works are not protected by copyright law, and you may not consider them when comparing the works as a whole to determine whether they are virtually identical[96]:

      1.    [to be determined in analytic dissection]

### **Arista's Position:**

Arista's proposed instruction No. 43 on "Particular Unprotected Elements" is intended to serve as a placeholder for the Court's findings and conclusions, and resulting instructions to the jury, on the unprotected matter in Cisco's asserted works following the analytic dissection process, and to instruct the jury that such unprotected matter may not be considered when comparing the works as a whole to determine whether they are virtually identical or not.  *See Apple Computer, Inc. v. Microsoft Corp.*, 35 F.3d 1435, 1443 (9th Cir. 1994).  As discussed in detail in the parties' respective briefs on analytic dissection, one of the disputed legal issues that the Court must decide prior to trial is whether the jury should be instructed that a "virtual identity" standard should apply to a comparison of the asserted and accused works.  *See id.* at 1447.  Arista contends that the jury should be instructed on a "virtual identity" standard based on a comparison of the works as a

---

[96] *Dream Games of Arizona, Inc. v. PC Onsite*, 561 F.3d 983, 989 (9th Cir. 2009) ("Consideration of the whole work is proper under *Apple Computer* as long as 'the unprotectable elements [are] identified.'") (quoting *Apple Computer*, 35 F.3d at 1447); *Harper House, Inc. v. Thomas Nelson, Inc.*, 889 F.2d 197, 207–08 (9th Cir. 1989) (ordering new trial where "the jury instructions covering copyright infringement liability did not adequately distinguish between protectable and unprotectable material" because "given the negative connotations to 'copying,' there was an obvious risk of an improper verdict for plaintiffs, and a need for further instructions to protect legitimate activity and avoid the suffocation of competition."); *Apple Computer, Inc. v. Microsoft Corp.*, 35 F.3d 1435, 1446 (9th Cir. 1994) ("[T]he party claiming infringement may place no reliance upon any similarity in expression resulting from unprotectable elements . . . . [T]he unprotectable elements have to be identified, or filtered, before the works can be considered as a whole.") (internal quotation marks omitted); *Swirsky v. Carey*, 376 F.3d 841, 845 (9th Cir. 2004), *as amended on denial of reh'g* (Aug. 24, 2004) ("Because the requirement is one of substantial similarity [or virtual identity where thin copyright protection applies] to *protected* elements of the copyrighted work, it is essential to distinguish between the protected and unprotected material in a plaintiff's work.") (Ital. in original).

1  whole, which is reflected in its proposed instructions for the reasons stated in its dissection

2  briefing. *Dream Games of Arizona, Inc. v. PC Onsite*, 561 F.3d 983, 989 (9th Cir. 2009)

   ("Consideration of the whole work is proper under *Apple Computer* as long as 'the unprotectable

3  elements [are] identified.'") (quoting *Apple Computer*, 35 F.3d at 1447); *Harper House, Inc. v.*

   *Thomas Nelson, Inc.*, 889 F.2d 197, 207–08 (9th Cir. 1989) (ordering new trial where "the jury

4  instructions covering copyright infringement liability did not adequately distinguish between

   protectable and unprotectable material" because "given the negative connotations to 'copying,'

5  there was an obvious risk of an improper verdict for plaintiffs, and a need for further instructions

   to protect legitimate activity and avoid the suffocation of competition."); *Apple Computer, Inc. v.*

6  *Microsoft Corp.*, 35 F.3d 1435, 1446 (9th Cir. 1994) ("[T]he party claiming infringement may

   place no reliance upon any similarity in expression resulting from unprotectable elements . . . .

7  [T]he unprotectable elements have to be identified, or filtered, before the works can be considered

   as a whole.") (internal quotation marks omitted); *Swirsky v. Carey*, 376 F.3d 841, 845 (9th Cir.

8  2004), *as amended on denial of reh'g* (Aug. 24, 2004) ("Because the requirement is one of

9  substantial similarity [or virtual identity where thin copyright protection applies] to *protected*

   elements of the copyrighted work, it is essential to distinguish between the protected and

10 unprotected material in a plaintiff's work.") (ital. in original).

11      Cisco has not proposed a competing instruction, nor has it articulated any prejudice that

12 would result from Arista's proposed instruction.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1121178.02

**DISPUTED: Cisco's Position on Arista's Final Instruction No. 44 re Copyright—Comparing**

**Works As A Whole For Virtual Identity**

Cisco's position is that no such instruction should be given.

**Cisco's Position:**

Arista's proposed instruction should be rejected. Cisco's proposed Instruction No. 39, *supra*, sets forth the appropriate "substantial similarity" analysis applicable to this case. Arista's proposed instruction is duplicative, incorrect and misleading.

*First*, the affirmative defenses of copyright misuse and waiver are equitable in nature and should not be put to the jury. *See infra* Cisco's responses to Instruction Nos. 60 (copyright misuse), 94 (waiver).

*Second*, Arista's instruction that the works be compared "as a whole" is incorrect and confusing because it improperly encourages comparison of the entire works (including both protectable and unprotectable expression), and not a limited comparison of the protectable expression, the only relevant unit of measurement. *See Harper House, Inc. v. Thomas Nelson, Inc.*, 889 F.2d 197, 206-08 (9th Cir. 1989) (finding instruction to constitute error requiring new trial where jury instructed to compare works "as a whole" rather than to determine whether defendants copied "protectable expression"). Further, Arista's cited cases do not support the proposed instruction. For example, the quoted language from *Dream Games* concerned whether the jury could **consider** the whole work, not whether that was the relevant unit of analysis. To the contrary, "[t]he district court instructed the jury that 'to establish that PC Onsite is liable for infringement, Dream Games must show that the accused screen displays are virtually identical to **protected elements** of corresponding screen displays of the Fast Action Bingo game.'" (emphasis added). 561 F.3d 983, 989 (9th Cir. 2009). Arista's remaining citations similarly do not support its proposed instruction.

*Third*, as set forth in the filtration/dissection analysis that is the subject of pretrial briefing currently pending before the Court, *see* Dkt. Nos. 455 (Cisco's Trial Brief); 456 (Arista's Trial Brief); 505 (Cisco's Reply); 506 (Arista's Reply); 550-1 & 550-2 (Cisco's Submission on Protectable Elements); 585 (Arista's Response on Protectable Elements), Cisco's asserted works or the relevant portions thereof are original and protectable in their entirety and subject to broad (not "thin") copyright protection because there are multiple ways in which the ideas underlying the asserted works could be expressed. Should the Court hold otherwise before or after the close of evidence, *see Harper House v. Thomas Nelson*, 889 F.2d 197, 208-09 (9th Cir. 1989); *Oracle Am., Inc. v. Google Inc.*, 10-cv-3561-WHA, Dkt. 584 at 1 (copyrightability issues are "best left until after the judge has heard the evidence at trial"), *id.* Dkt. 620 at 1 (declining to address instructions on copyrightability until after close of evidence), Cisco respectfully reserves its right to propose an instruction distinguishing protectable from any unprotectable elements.

1121178.02

**DISPUTED: Arista's Final Instruction No. 44 re Copyright—Comparing Works As A Whole For Virtual Identity[97]**

If you find that Arista copied any elements of Cisco's works that are protected, you must next compare the works as a whole to determine whether Arista's works and Cisco's works are virtually identical,[98] leaving out of your consideration any elements that you have found are unprotected, or that I have instructed you are unprotected.[99]

---

[97]  Ninth Circuit Model Jury Instruction 17.18 does not provide an instruction.  The Committee recommends that the Court and counsel craft instructions based on relevant authorities.

[98] *Dream Games of Arizona, Inc. v. PC Onsite*, 561 F.3d 983, 988 (9th Cir. 2009) ("To allow the possibility of such a finding [of infringement], the jury must be allowed to see *the complete work*.") (emphasis added); *Apple Computer, Inc. v. Microsoft Corp.*, 35 F.3d 1435, 1443 (9th Cir. 1994) ("Depending on the degree of protection, the court must set the appropriate standard for a subjective comparison of the works to determine whether, *as a whole*, they are sufficiently similar to support a finding of illicit copying.") (emphasis added); *id.* at 1446 ("Under *Harper House* and *Frybarger*, there can be no infringement unless *the works* are virtually identical.") (emphasis added); *Newton v. Diamond*, 388 F.3d 1189, 1195 (9th Cir. 2004) ("This focus on the sample's relation to the plaintiff's work *as a whole* embodies the fundamental question in any infringement action") (emphasis added); *MiTek Holdings, Inc. v. Arce Eng'g Co.*, 89 F.3d 1548, 1560 (11th Cir. 1996) (in a substantial similarity case: "*Nimmer*, in using the term "substantial similarity," is referring to the program as a whole, not constituent elements of the program. The district court concluded that, in TrussPro, four of the five protected ACES elements were substantially similar. However, its ultimate conclusion was that since these elements lacked significance in the ACES program as a whole, the two programs as a whole were not substantially similar; therefore, there was no finding of infringement."); *Diamond Foods, Inc. v. Hottrix, LLC*, No. 14-CV-03162-BLF, 2016 WL 3880797, at *8 (N.D. Cal. July 18, 2016) ("If, on the other hand, the range of possible expression is narrow, the protection is  'thin' and *a work* must be 'virtually identical' to infringe.") (emphasis added) (internal quotation marks omitted); *Antonick v. Elec. Arts Inc.*, No. C 11-1543 CRB, 2014 WL 245018, at *6 (N.D. Cal. Jan. 22, 2014) (jury instructions in virtual identity case involving videogames "required the jury to compare 'the works to determine whether, *as a whole*, they are sufficiently similar to support a finding of illicit copying . . . .  The works must be compared as a whole because the relevant inquiry is 'whether a substantial portion of the protectable material in the plaintiff's work was appropriated—not whether a substantial portion of defendant's work was derived from plaintiff's work' . . . .  [C]ourts are to focus on the significance of the protected expression to plaintiff's entire work.") (emphasis added) (second quotation marks quoting *Newton v. Diamond*, 388 F.3d 1189, 1195 (9th Cir. 2004)); *see also id.* at 6–7 (reversing jury verdict of infringement because plaintiff failed to present evidence of plaintiff's work as a whole, disabling jury from making proper comparison for infringement intrinsic test).

[99] *Dream Games of Arizona, Inc. v. PC Onsite*, 561 F.3d 983, 989 (9th Cir. 2009) ("Consideration of the whole work is proper under *Apple Computer* as long as 'the unprotectable elements [are] identified.'") (quoting *Apple Computer*, 35 F.3d at 1446); *Harper House, Inc. v. Thomas Nelson, Inc.*, 889 F.2d 197, 207–08 (9th Cir. 1989) (ordering new trial where "the jury instructions covering copyright infringement liability did not adequately distinguish between

1         If you find that the works as a whole are not virtually identical, then you cannot find that

2    Arista infringed Cisco's copyrights.  If you find that the works as a whole are virtually identical,

3    then you may find that Arista infringed Cisco's copyrights, subject to Arista's affirmative defenses

4    of fair use, copyright misuse, abandonment, and waiver.[100]

5

6    **Arista's Position:**

7         The Ninth Circuit leaves to the Court the task of explaining to the jury the extrinsic and

8    intrinsic tests for copyright infringement.  Ninth Circuit Model Jury Instruction 17.18.
     Apparently, Cisco's response to the Ninth Circuit's request is to leave the jury in the dark as to the

9    jury's task, and worse, leaving the jury with the wrong impression that copying by itself is enough
     to constitute infringement.  Nowhere in Cisco's proposed instructions does it acknowledge that the

10   jury is *required* to perform the intrinsic test, which involves comparing the works *as a whole*.

11        Arista's proposed instruction borrows direct quotations from Ninth Circuit cases to explain

12   the task to the jury, and Arista has footnoted for the Court's convenience the significant support
     for its proposal.

13        To find that copying is sufficient to constitute infringement, the jury is required to compare

14   the works as a whole.  And the Court must determine whether that comparison must be made for
     substantial similarity or virtual identity (Ninth Circuit Model Instruction 17.18 is titled

15   "substantial similarity" as a placeholder, but cites dozens of "virtual identity" cases as well.  The
     title of the instruction should comport to the standard this Court chooses for the comparison).  *See*

16   *Mattel, Inc. v. MGA Entm't, Inc.*, 616 F.3d 904, 913–14 (9th Cir. 2010), *as amended on denial of*

17   *reh'g* (Oct. 21, 2010) ("If there's only a narrow range of expression (for example, there are only so
     many ways to paint a red bouncy ball on blank canvas), then copyright protection is 'thin' and a

18   work must be 'virtually identical' to infringe"; intrinsic tests asks "whether an ordinary reasonable

19   _____

20   protectable and unprotectable material" because "given the negative connotations to 'copying,'
     there was an obvious risk of an improper verdict for plaintiffs, and a need for further instructions

21   to protect legitimate activity and avoid the suffocation of competition."); *Apple Computer, Inc. v.*
     *Microsoft Corp.*, 35 F.3d 1435, 1446 (9th Cir. 1994) ("[T]he party claiming infringement may

22   place no reliance upon any similarity in expression resulting from unprotectable elements . . . .
     [T]he unprotectable elements have to be identified, or filtered, before the works can be considered

23   as a whole.") (internal quotation marks omitted); *Swirsky v. Carey*, 376 F.3d 841, 845 (9th Cir.

24   2004), *as amended on denial of reh'g* (Aug. 24, 2004) ("Because the requirement is one of
     substantial similarity [or virtual identity where thin copyright protection applies] to protected

25   elements of the copyrighted work, it is essential to distinguish between the protected and
     unprotected material in a plaintiff's work.").

26   [100] *Mattel, Inc. v. MGA Entm't, Inc.*, 616 F.3d 904, 913 (9th Cir. 2010), *as amended on denial*
     *of reh'g* (Oct. 21, 2010) (post-verdict decision discussing jury's task following dissection); *Benay*

27   *v. Warner Bros. Entm't*, 607 F.3d 620, 624 (9th Cir. 2010) (discussing extrinsic  and intrinsic

28   tests); *Apple Computer, Inc. v. Microsoft Corp.*, 35 F.3d 1435, 1442 (9th Cir. 1994) (same).

observer would consider the copyrighted and challenged works substantially similar (or virtually identical)" as appropriate); *Ets-Hokin v. Skyy Spirits, Inc.*, 323 F.3d 763, 766 (9th Cir. 2003); *Satava v. Lowry*, 323 F.3d 805, 812 (9th Cir. 2003) ("Satava possesses a thin copyright that protects against only virtually identical copying."); *Apple Computer, Inc. v. Microsoft Corp.*, 35 F.3d 1435, 1439 (9th Cir. 1994) ("When the range of protectable and unauthorized expression is narrow, the appropriate standard for illicit copying is virtual identity."); *Diamond Foods, Inc. v. Hottrix, LLC*, No. 14-CV-03162-BLF, 2016 WL 3880797, at *8 (N.D. Cal. July 18, 2016) ("If, on the other hand, the range of possible expression is narrow, the protection is 'thin' and a work must be 'virtually identical' to infringe.") (internal quotation marks omitted); 4-13 Nimmer on Copyright § 13.03[A][4].

Cisco's other instructions are written under the assumption this Court will find its works are entitled to "broad" copyright protection. That question is reserved for analytic dissection, and Arista will not belabor the point here. But under broad or thin protection, comparison of the works as a whole is still required. *See Dream Games of Arizona, Inc. v. PC Onsite*, 561 F.3d 983, 988 (9th Cir. 2009) ("To allow the possibility of such a finding [of infringement], the jury must be allowed to see *the complete work*.") (emphasis added); *Apple Computer, Inc. v. Microsoft Corp.*, 35 F.3d 1435, 1443 (9th Cir. 1994) ("Depending on the degree of protection, the court must set the appropriate standard for a subjective comparison of the works to determine whether, *as a whole*, they are sufficiently similar to support a finding of illicit copying.") (emphasis added); *id.* at 1446 ("Under *Harper House* and *Frybarger*, there can be no infringement unless *the works* are virtually identical.") (emphasis added); *Diamond Foods, Inc. v. Hottrix, LLC*, No. 14-CV-03162-BLF, 2016 WL 3880797, at *8 (N.D. Cal. July 18, 2016) ("If, on the other hand, the range of possible expression is narrow, the protection is 'thin' and *a work* must be 'virtually identical' to infringe.") (emphasis added) (internal quotation marks omitted); additional authorities cited by Arista in its proposed instruction.

Indeed, a verdict of copyright infringement that did not include a comparison of the works as a whole requires reversal of the jury's verdict. *See Antonick v. Elec. Arts Inc.*, No. C 11-1543 CRB, 2014 WL 245018, at *6–7 (N.D. Cal. Jan. 22, 2014) (reversing jury verdict of infringement because plaintiff failed to present evidence of plaintiff's work as a whole, disabling jury from making proper comparison for infringement intrinsic test).

**DISPUTED: Cisco's Position on Arista's Final Instruction No. 45 re Copyright—Works As A Whole Defined**

Cisco's position is that no such instruction should be given.

**Cisco's Position:**

Arista's proposed instruction should be rejected.  Cisco's proposed Instruction No. 39, *supra*, sets forth the appropriate "substantial similarity" analysis applicable to this case.  Arista's proposed instruction is incorrect and misleading.

Further, as set forth in the filtration/dissection analysis that is the subject of pretrial briefing currently pending before the Court, *see* Dkt. Nos. 455 (Cisco's Trial Brief); 456 (Arista's Trial Brief); 505 (Cisco's Reply); 506 (Arista's Reply); 550-1 & 550-2 (Cisco's Submission on Protectable Elements); 585 (Arista's Response on Protectable Elements), Cisco's asserted works or the relevant portions thereof are original and protectable in their entirety and subject to broad (not "thin") copyright protection because there are multiple ways in which the ideas underlying the asserted works could be expressed.  Further, Arista's instruction that the works be compared "as a whole" is incorrect and confusing because it improperly encourages comparison of the entire works (including both protectable and unprotectable expression), and not a limited comparison of the protectable expression, the only relevant unit of measurement.  *Harper House, Inc. v. Thomas Nelson, Inc.*, 889 F.2d 197, 206-08 (9th Cir. 1989) (finding instruction to constitute error requiring new trial where  jury instructed jury to compare works "as a whole" rather than to determine whether defendants copied "protectable expression").  Should the Court hold otherwise before or after the close of evidence, *see Harper House v. Thomas Nelson*, 889 F.2d 197, 208-09 (9th Cir. 1989); *Oracle Am., Inc. v. Google Inc.*, 10-cv-3561-WHA, Dkt. 584 at 1 (copyrightability issues are "best left until after the judge has heard the evidence at trial"), *id.* Dkt. 620 at 1 (declining to address instructions on copyrightability until after close of evidence), Cisco respectfully reserves its right to propose an instruction at the close of evidence, appropriately tailored to the evidence.

Cisco respectfully reserves its right to propose an instruction distinguishing protectable from any unprotectable elements.

1    **DISPUTED: Arista's Final Instruction No. 45 re Copyright—Works As A Whole Defined[101]**

2        It is my job to isolate and identify for you the "work as a whole."  You must take my

3    identification as controlling if and when this comes up in your deliberations.

4        For purposes of this case, I have determined that Arista's "work as a whole" is [to be

5    determined in analytic dissection].  I have also determined that Cisco's "work as a whole" is [to be

6    determined in analytic dissection].

7

8    **Arista's Position:**

9        As discussed in connection with Disputed Instruction 44, the jury is required to compare

10   the works as a whole in order to find infringement.  Cisco ignores that step entirely, and so has not
     bothered to propose an instruction that defines the works as a whole.  This Court, through analytic
11   dissection, must do so.  Arista has drafted this instruction as a placeholder for the Court to insert
     its ruling concerning analytic dissection, which will also result in definitions of the works as a

12   whole.

13       Arista notes here that, even though, when it suits its needs, Cisco would like to refer to its
     asserted works as a monolithic singular work, the Court's definition of works as a whole must tell
14   the jury that infringement must be analyzed separately for each of the twenty-six copyright-
     registered works.  As one leading copyright treatise explains, "One danger that arises in cases of
15   multiple works is 'cherry-picking:' the plaintiff will select small portions from a number of works,
     and attempt to aggregate the amount of copying.  This approach was property rejected in *Kroencke*
16   *v. General Motors Corp.*, 270 F. Supp. 2d 441 (S.D.N.Y. 2003) and in *Damiano v. Sony Music*
     *Entertainment, Inc.*, 975 F. Supp. 623 (D.N.J. 1996), although the Second Circuit came
17   dangerously close to falling into the trap in Castle Rock Entm't, Inc. v. Publishing Group, Inc., 150
     F.3d 132 (2d Cir. 1998)."  3 Patry on Copyright § 9:66 (2016).  Cisco here wants to go one step
18   further: it wants to instruct the jury that it need not analyze the copyrighted works for infringement
     separately, *and* it seeks to redefine its copyrights under a rogue "user interface" umbrella wholly
19   unsupported by the registrations or the law.  This Court should not fall into that trap: "each work
     alleged to have been infringed *must be separately analyzed.*"  *Id.* (emphasis added).

20

21

22

23

24

25   ───────────────────

26       [101]  *Oracle America, Inc. v. Google, Inc.*, No. 10-cv-03561-WHA, ECF 1017 (April 30, 2012)
     (Jury Instruction 29) ("It is my job to isolate and identify for you the 'work as a whole.' You must
27   take my identification as controlling if and when this comes up in your deliberations . . . .  For
     purposes of this case, I have determined that the 'work as a whole' means the following:").

28
                                                    -109-                    Case No. 5:14-cv-5344-BLF

**DISPUTED: Cisco's Final Instruction No. 46 re Copyright—Affirmative Defense: Fair Use[102]**

[Cisco's Disputed Instruction 46 is addressed to Arista's Disputed Instructions 47 – 59]

One who is not the owner of the copyright may use the copyrighted work in a reasonable way under the circumstances without the consent of the copyright owner if it would advance the public interest. Such use of a copyrighted work is called a fair use. The owner of a copyright cannot prevent others from making a fair use of the owner's copyrighted work.

Arista has the burden of proving its fair use defense by a preponderance of the evidence.[103]

In determining whether Arista's use of the Cisco's copyrighted works was fair, you should consider the following factors:

1. First, the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes. This factor involves two sub-issues: (a) whether Arista's use is "transformative" or simply supplants Cisco's work, and (b) whether Arista's use is commercial in nature.[104] A use is "transformative" only where it adds something new, with a further purpose or different character, altering the first with new expression, meaning or message.[105] But copying a

---

[102]   Instruction No. 17.21, *Ninth Circuit Manual of Model Civil Jury Instructions* (2007); *Synopsys, Inc. v. ATopTech, Inc.*, No. 13-cv-2965 (N.D. Cal.), ECF No. 688 at 14 (Final Instructions).

[103]   Instruction No. 17.21, *Ninth Circuit Manual of Model Civil Jury Instructions* (2007); *Monge v. Maya Magazines, Inc.*, 688 F.3d 1164, 1170 (9th Cir. 2012) ("This affirmative defense … [is] aimed at whether the defendant's use was fair. As with all affirmative defenses, [] the defendant bears the burden of proof.").

[104]   *Wall Data Inc. v. Los Angeles Cty. Sheriff's Dep't*, 447 F.3d 769, 778 (9th Cir. 2006) ("We first consider the nature of the work: whether the new work is transformative or simply supplants the original work, and whether the work is commercial in nature.").

[105]   *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 579 (1994) (infringing work is transformative if it "adds something new, with a further purpose or different character, altering the first with new expression, meaning or message."); *Wall Data Inc. v. Los Angeles Cty. Sheriff's Dep't*, 447 F.3d 769, 778 (9th Cir. 2006) ("A use is considered transformative only where a defendant changes a plaintiff's copyrighted work or uses the plaintiff's copyrighted work in a different context such that the plaintiff's work is transformed into a new creation").

1   work to use it for an identical or competing purpose as the original, or in a manner that

2   tends to supplant or supersede the original, is not transformative.[106]  Further, a use is

3   not transformative where the user makes no alteration to the expressive content or

4   message of the original.[107]  As to the second sub-factor, where a defendant's use was

5   for a commercial purpose, this factor weighs against fair use.[108]

6   2.   The second factor is the nature of the copyrighted work.

7   3.   The third factor is the amount and substantiality of the portion used in relation to the

8        copyrighted work as a whole.  This factor evaluates both the quantity of the work taken

9        and the quality and importance of the portion taken.[109]  Copying a qualitatively

10       important portion of a copyrighted work weighs against fair use even if the copied

11       portion is quantitatively small.[110]

12

---

13   [106]  *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 578 (1994) (inquiry is whether the new

14   work merely supersedes or supplants the original); *Wall Data Inc. v. Los Angeles Cty. Sheriff's
     Dep't*, 447 F.3d 769, 778 (9th Cir. 2006) ("The Sheriff's Department created exact copies of

15   RUMBA's software.  It then put those copies to the identical purpose as the original software.
     Such a use cannot be considered transformative.  *See Kelly v. Arriba Soft Corp.*, 336 F.3d 811, 819

16   (9th Cir. 2003) (finding that reproducing music CDs in computer MP3 format is not a
     transformative use because the resulting use of the copyrighted work was the same as the original

17   use, i.e., entertainment). In cases where " 'use is for the same intrinsic purpose as[the copyright
     holder's] ... such use seriously weakens a claimed fair use.' " *Worldwide Church of God v.

18   Philadelphia Church of God, Inc.,* 227 F.3d 1110, 1117 (9th Cir. 2000) (quoting *Weissmann v.

19   Freeman,* 868 F.2d 1313, 1324 (2d Cir. 1989)).").

20   [107]  *Seltzer v. Green Day, Inc.*, 725 F.3d 1170, 1177 (9th Cir. 2013) (no transformation where
     defendant "makes no alteration to the expressive content or message of the original work.").

21   [108]  *Los Angeles News Serv. v. Reuters Television Int'l, Ltd.*, 149 F.3d 987, 994 (9th Cir. 1998)

22   ("every commercial use of copyrighted material is presumptively an unfair exploitation of the
     monopoly privilege that belongs to the owner of the copyright.").

23   [109]  *Monge v. Maya Magazines, Inc.*, 688 F.3d 1164, 1178 (9th Cir. 2012) ("The third
     statutory factor in the fair use analysis is 'the amount and substantiality of the portion used in

24   relation to the copyrighted work as a whole.' We examine both the quantitative and qualitative
     aspects of the portion of the copyrighted material taken.").

25   [110]  *Worth v. Selchow & Righter Co.*, 827 F.2d 569, 570 n. 1 (9th Cir. 1987) ("[A]

26   determination of the qualitative importance of the material to the plaintiff's work is more
     significant than a quantitative calculation of the portion allegedly appropriated by the

27   defendant."); *Apple Computer, Inc. v. Microsoft, Corp.*, 821 F. Supp. 616, 624 (N.D. Cal. 1993),
     *aff'd*, 35 F.3d 1435 (9th Cir. 1994) ("quantitatively insignificant infringement may be substantial

28   if the material is qualitatively important to plaintiff's work").

1121178.02

4.   The fourth factor is the effect on the potential market for or value of the copyrighted work, including the effect on the potential market for or value of derivative works. You should consider not only the extent of market harm caused by Arista's copying, but also whether unrestricted and widespread conduct of the sort engaged in by Arista would result in a substantially adverse impact on the potential market for the original work.[111]  Where a defendant's use substitutes for the original, this factor weights against fair use.[112]

5.   Finally, you may consider the propriety of Arista's conduct, including whether its use of the copyrighted work was in bad faith.[113]

If you find that Arista proved by a preponderance of the evidence that it made a fair use of Cisco's work, your verdict should be for Arista.


**Cisco's Position:**

Cisco's proposed instruction follows Instruction No. 17.21 from the *Ninth Circuit Manual of Model Civil Jury Instructions* ("*Model*") in form and substance.  It is neutral, and provides an accurate summary of the  principles of fair use, setting forth the applicable legal standard with elaboration only where necessary, in accordance with the *Model*'s comments.  Cisco further notes that courts will often merely list the four fair use factors in setting forth instructions, *see Synopsys, Inc. v. ATopTech, Inc.*, No. 13-cv-2965 (N.D. Cal.), ECF No. 688 at 14 (for computer program); thus, Cisco's instruction on fair use provides a concise and neutral explanation of the doctrine without confusing the jury.

Arista's proposed instructions Nos. 47 – 59 should be rejected.  It is unduly excessive for the Court to provide ***thirteen*** individual instructions to the jury on the single topic of fair use. Arista's instructions are almost exclusively derived from a single case where fair use was the sole issue before the jury on remand and Arista cites no other authority for such extensive fair use instructions; in this case, such excessive instructions on a single defense are wholly unnecessary, particularly where Cisco's proposed instruction sets forth all of the applicable standards.  Further, Arista's instructions are not concise or neutral, and include unnecessarily lengthy explanations and deviations into policy.

---

[111]   *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 590 (1994).
[112]   *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 590 (1994).
[113]   *Los Angeles News Serv. v. KCAL-TV Channel 9*, 108 F.3d 1119, 1122 (9th Cir. 1997); *Fisher v. Dees*, 794 F.2d 432, 437 (9th Cir. 1986).

1 **DISPUTED: Cisco's Position on Arista's Final Instruction No. 47 re Copyright—Affirmative**

2 **Defense: Fair Use Generally**

3     Cisco's position is that no such instruction should be given.

4

5 **Cisco's Position:**

6     Arista's proposed instruction should be rejected.  It is not included in Instruction 17.21 of
the *Ninth Circuit Manual of Model Civil Jury Instructions* ("*Model*"), and it unnecessarily
addresses policy, which has no relevance to the jury's fact-finding duties.  The Court should
therefore reject Arista's proposal in favor of the preamble of Instruction 17.21 of the *Model*, as
reflected in Cisco's proposed fair use Instruction No. 46, *supra*.

    Cisco further notes it is unduly excessive for the Court to provide thirteen individual
instructions to the jury on the single topic of fair use.  Arista's instructions are almost exclusively
derived from a single case where fair use was the sole issue before the jury on remand and Arista
cites no other authority for such extensive fair use instructions.

1    **DISPUTED: Arista's Final Instruction No. 47 re Copyright—Affirmative Defense: Fair Use**

2    **Generally**[114]

3        Now, I will explain what fair use means under the law.

4        One policy behind our copyright law, of course, is to protect the compositions of authors

5    from exploitation by others.  When it applies, however, the right of fair use permits the use of

6    copyrighted works by others without the copyright owner's consent.[115]  The policy behind the

7    right of fair use is to encourage and allow the development of new ideas that build on earlier ones,

8    thus providing a counterbalance to the copyright policy to protect creative works.[116]  Since the

9    doctrine of fair use is an equitable rule of reason, no generally accepted definition is possible, and

10    each case raising the question must be decided on its own facts.[117]  And, in this dispute between

11    Cisco and Arista, that question falls to you for decision.

12

13    **Arista's Position:**

14        The fair use doctrine is necessary to "fulfill copyright's very purpose, [t]o promote the

15    Progress of Science and useful Arts."  *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 575
      (1994) (internal citations and quotations omitted).  It is not an "occasionally tolerated departure

16    _____

17    [114]  *Oracle America, Inc. v. Google, Inc.*, No. 10-cv-03561-WHA, ECF 1981 (May 26, 2016)
      (Jury Instruction 21).

18    [115] *See Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1163 (9th Cir. 2007) ("The fair

19    use defense permits the use of copyrighted works without the copyright owner's consent under
      certain situations. The defense encourages and allows the development of new ideas that build on

20    earlier ones, thus providing a necessary counterbalance to the copyright law's goal of protecting
      creators' work product.").

21    [116] *See Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1163 (9th Cir. 2007) ("The fair use

22    defense permits the use of copyrighted works without the copyright owner's consent under certain
      situations. The defense encourages and allows the development of new ideas that build on earlier

23    ones, thus providing a necessary counterbalance to the copyright law's goal of protecting creators'
      work product."); *Sony v. Bleem*, 214 F.3d 1022, 1026 (9th Cir. 2000) ("The four [fair use] factors

24    are to be considered together in light of the purposes of copyright, not in isolation."); *Campbell v.
      Acuff-Rose Music, Inc.*, 510 U.S. 569, 579 (1994); *Sega Enters. Ltd. v. Accolade, Inc.*, 977 F.2d

25    1510, 1524-26 (9th Cir. 1992); *Sony Computer Entertainment, Inc. v. Connectix Corp.*, 203 F.3d
      596, 607 (9th Cir.), cert. denied, 531 U.S. 871 (2000).

26    [117] *Sony v. Bleem*, 214 F.3d 1022, 1026 (9th Cir. 2000) ("The process of applying these fair

27    use factors to the facts of any particular scenario calls for case-by-case analysis, and the task is not
      to be simplified with bright-line rules. The four factors are to be considered together in light of the

28    purposes of copyright, not in isolation.") (internal quotations and citations omitted).

1    from the grand conception of the copyright monopoly.  To the contrary, it is a necessary part of the
2    overall design."  Leval, Toward a Fair Use Standard, 103 Harv. L. Rev. 1105, 1110 (1990); *see*
     *also* 4 Patry on Copyright § 10:1.50 ("Copyright is *not* a one-sided coin, only concerned with
3    enforcing rights.  Rather, copyright law seeks to achieve a balance that ultimately serves the
     public's, not authors' interests.") (italics in original).

4         It comes as no surprise, therefore, that fair use is one of the most critical—and heavily
     litigated—issues in this case.  To decide this critical issue, the jury needs appropriate guidance.
5    "[T]he fair use defense involves a careful examination of many factors, often confronting courts
6    with a perplexing task."  *Ringgold v. Black Entm't TV, Inc*., 126 F.3d 70, 76 (2d Cir. 1997).   A
     "drive by" instruction will not suffice.  The Court should instruct on fair use thoroughly and
7    accurately, as Arista has proposed.

8         Arista's proposed fair-use instructions are modeled on Judge Alsup's 2016 instructions in
     *Oracle America, Inc. v. Google, Inc.,* No. 10-cv-03561-WHA (N.D. Cal.) (hereinafter, *Oracle*).
9    As Judge Alsup explained, he drafted those instructions himself, "us[ing] the Federal Circuit's
     opinion canvassing fair use law as the starting point," and then revising and refining them through
10   an "exhaustive and iterative process of proposals by the judge followed by critiques by counsel."
     *Oracle*, ECF 1988 at 2.  Judge Alsup also made "adjust[ments] to reflect the way the case was
11   tried," *id.*, just as this Court should tailor its instructions to the arguments and evidence in this
12   case.

13        This particular proposed instruction—"Fair Use Generally"—was given in nearly identical
     form in *Oracle*.  *See Oracle America, Inc. v. Google, Inc.*, ECF 1981 (May 26, 2016) (Jury
14   Instruction 21).  Arista adapted the *Oracle* instruction only to reflect the parties in this case.  This
15   instruction is necessary to introduce to the jury the concept and purpose of fair use.  It closely
     tracks the controlling case law.  *See Perfect 10, Inc. v. Amazon.com, Inc*., 508 F.3d 1146, 1163
16   (9th Cir. 2007) ("The fair use defense permits the use of copyrighted works without the copyright
     owner's consent under certain situations. The defense encourages and allows the development of
17   new ideas that build on earlier ones, thus providing a necessary counterbalance to the copyright
     law's goal of protecting creators' work product."); *Sony v. Bleem,* 214 F.3d 1022, 1026 (9th Cir.
18   2000) ("The process of applying these fair use factors to the facts of any particular scenario calls
19   for case-by-case analysis, and the task is not to be simplified with bright-line rules. The four
     factors are to be considered together in light of the purposes of copyright, not in isolation.")
20   (internal quotations and citations omitted).

21        Cisco's proposed instructions provide, in total, *one* insufficient instruction on fair use.  It is
22   overly simplistic to a degree that invites confusion.  For example, as to the second fair-use factor
     (which Cisco would rather not talk about), it merely states: "The second factor is the nature of the
23   copyrighted work."  It never explains what that means, the difference between a creative work and
     a functional one, or how the jury should weigh these facts.  Cisco's instruction is also slanted and
24   misleading.  For example, it states that use for a commercial purpose weighs against fair use, but
     fails to acknowledge that other factors affect this analysis and commercial uses can still be fair.
25   *See, e.g., Campbell v. Acuff-Rose Music, Inc.,* 510 U.S. 569, 579 (1994) ("[T]he more
26   transformative the new work, the less will be the significance of other factors, like commercialism,
     that may weigh against a finding of fair use.").

27

28

1121178.02

**DISPUTED: Cisco's Position on Arista's Final Instruction No. 48 re Copyright—Affirmative Defense: Fair Use: Factors To Consider**

Cisco's position is that no such instruction should be given.

**Cisco's Position:**

Arista's proposed instruction should be rejected.  The first sentence of the last paragraph is not contained in Instruction 17.21 of the *Ninth Circuit Manual of Model Civil Jury Instructions* ("*Model*"), and it improperly inserts instructions  on custom and public policy, and it improperly suggests that the jury include the elements of "custom" or "public policy" in arriving at its decision, which is not proper.  Further, it is unnecessarily to provide that sentence, as the first sentence of the proposed instruction already notes that use of a work "in a reasonable way under the circumstances" that may "advance the public interest" may be consistent with fair use; the first sentence of the last paragraph improperly repeats and expands that introduction.  Finally, Arista provides no explanation for expanding the *Model*'s instruction.  The Court should therefore reject Arista's proposal in favor of one that follows the preamble of Instruction 17.21 of the *Model*, as reflected in Cisco's proposed fair use Instruction No. 46, *supra*.

Cisco further notes it is unduly excessive for the Court to provide thirteen individual instructions to the jury on the single topic of fair use.  Arista's instructions are almost exclusively derived from a single case where fair use was the sole issue before the jury on remand and Arista cites no other authority for such extensive fair use instructions.

**DISPUTED: Arista's Final Instruction No. 48 re Copyright—Affirmative Defense: Fair Use: Factors To Consider[118]**

Under the Copyright Act, one who is not the owner of the copyright may use the copyrighted work in a reasonable way under the circumstances without the consent of the copyright owner if it would advance the public interest. Such use of a copyrighted work is called a fair use. The owner of a copyright cannot prevent others from making a fair use of the owner's copyrighted work.  In determining whether the use made of the work was fair, the Copyright Act direct you to consider the following factors:

1.  The purpose and character of the use, including whether the use is of a commercial nature or is for nonprofit educational purposes;

2.  The nature of the copyrighted work;

3.  The amount and substantiality of the portion used in relation to the copyrighted work as a whole; and

4.  The effect of the use upon the potential market for or value of the copyrighted work;

As you balance these factors, bear in mind that fair use is appropriate where a reasonable copyright owner would have consented to the use, i.e., where the custom or public policy at the time would have defined the use as reasonable.[119]  If you find that Arista has proved by a preponderance of the evidence that it made a fair use of Cisco's work, your verdict should be for Arista.

**Arista's Position:**

Arista's "Factors to Consider" instruction follows Judge Alsup's instruction in *Oracle* and Ninth Circuit Model Instruction 17.21.  As the Ninth Circuit model suggests doing, Arista added a quotation from Ninth Circuit law that bears directly on the evidence and arguments that the jury

---

[118]   Ninth Circuit Model Jury Instruction, 17.21. *See also Sony v. Bleem,* 214 F.3d 1022, 1026 (9th Cir. 2000); *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 579 (1994); *Sega Enters. Ltd. v. Accolade, Inc.*, 977 F.2d 1510, 1524-26 (9th Cir. 1992); *Sony Computer Entertainment, Inc. v. Connectix Corp.*, 203 F.3d 596, 607 (9th Cir.), cert. denied, 531 U.S. 871 (2000).

[119]   Order on Daubert Motions at 3-4 (quoting *Wall Data Inc. v. Los Angeles Cty. Sheriff's Dep't*, 447 F.3d 769, 778 (9th Cir. 2006)).

1   must evaluate in this case.  *See* Ninth Circuit Civil Model Jury Instructions (Copyright) § 17.21

2   ("[5.] [insert any other factor that bears on the issue of fair use]."); *see also* 17 U.S.C. §§ 101 and
    107 (defining "including" to clarify that the four enumerated factors in § 107 are "illustrative and

3   not limitative"); *Leadsinger, Inc. v. BMG Music Pub., Inc.*, 512 F.3d 522, 529 (9th Cir. 2008)
    ("[W]e are not restricted to these [four] factors . . . .").

4          Indeed, this Court highlighted the same Ninth Circuit law that Arista did in the Court's

5   recent Order on Daubert Motions.  The Court stated that "evidence of widespread use of Cisco
    CLI throughout the industry is relevant to this case, such as on the issues of fair use and estoppel .

6   . . . *Wall Data Inc. v. Los Angeles Cty. Sheriff's Dep't*, 447 F.3d 769, 778 (9th Cir. 2006) (noting
    that fair use 'is appropriate where a "reasonable copyright owner" would have consented to the

7   use, i.e., where the "custom or public policy" at the time would have defined the use as
    reasonable')." Oct. 12, 2016 Order on *Daubert* Motions at 3–4.  Accordingly, Arista's

8   modification conforms this instruction to the evidence and issues in this case, as the Ninth Circuit
    model suggests doing, and scrupulously follows Ninth Circuit law (indeed, it is a verbatim

9   quotation of Ninth Circuit law).[120]

---

[120] Even Cisco concedes that *Wall Data* is relevant to the jury's consideration of fair use.  *See* Cisco's Proposed Instruction No. 31.

**DISPUTED: Cisco's Position on Arista's Final Instruction No. 49 re Copyright—Affirmative**

**Defense: Fair Use: First Factor**

Cisco's position is that no such instruction should be given.


**Cisco's Position:**

Arista's proposed instruction should be rejected.  The instruction unnecessarily departs from Instruction 17.21 of the *Ninth Circuit Manual of Model Civil Jury Instructions* ("*Model*") expanding the *Model*'s instruction.  Further, there is no dispute here that Arista does not have a "nonprofit educational purpose" for copying Cisco's copyrighted works, and that instruction is therefore unnecessary.  Further, the last sentence is unnecessary and circular, and would only serve to confuse the jury.

Cisco further notes it is unduly excessive for the Court to provide thirteen individual instructions to the jury on the single topic of fair use.  Arista's instructions are almost exclusively derived from a single case where fair use was the sole issue before the jury on remand and Arista cites no other authority for such extensive fair use instructions.

**DISPUTED: Arista's Final Instruction No. 49 re Copyright—Affirmative Defense: Fair Use: First Factor[121]**

The first statutory factor concerns the purpose and character of the accused use.[122]

This factor includes these issues: (1) whether and to what extent the accused use serves a commercial purpose, which weighs against fair use, versus a nonprofit educational purpose, which weighs in favor of fair use,[123] and (2) whether and to what extent the accused work is "transformative," which supports fair use.[124] Although the Act does not explicitly use the word "transformative," our courts uniformly hold that the first statutory factor calls for an evaluation whether and to what extent the purpose and character of the accused work is transformative.

**Arista's Position:**

Arista's proposed instruction on the first fair-use factor comes from Judge Alsup's instructions in *Oracle*. *See Oracle*, ECF 1981 (Jury Instruction 23). It closely tracks the controlling law. *See* 17 U.S.C. § 107(1) ("[T]he purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes."); *Oracle America, Inc. v. Google, Inc*., 750 F.3d 1339, 1374 (Fed. Cir. 2014) ("The first factor in the fair use inquiry involves 'the purpose and character of the use, including whether such use is of a

---

[121]  *Oracle America, Inc. v. Google, Inc.*, No. 10-cv-03561-WHA, ECF 1981 (May 26, 2016) (Jury Instruction 23).

[122] 17 U.S.C. § 107(1); *Oracle America, Inc. v. Google, Inc*., 750 F.3d 1339, 1374 (Fed. Cir. 2014) ("The first factor in the fair use inquiry involves "the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes.") (internal quotations and citations omitted).

[123] *Oracle America, Inc. v. Google, Inc*., 750 F.3d 1339, 1375 (Fed. Cir. 2014) ("Analysis of the first factor also requires inquiry into the commercial nature of the use. Use of the copyrighted work that is commercial tends to weigh against a finding of fair use.") (internal quotations and citations omitted).

[124] 17 U.S.C. § 107; *Oracle America, Inc. v. Google, Inc*., 750 F.3d 1339, 1374 (Fed. Cir. 2014); *L.A. News Serv. v. CBS Broad., Inc*., 305 F.3d 924, 939 (9th Cir. Cal. 2002) ("[T]he most important component of the inquiry into the 'purpose and character of the use' is the question whether the allegedly fair use was 'transformative,' i.e., whether the second use 'adds something new, with a further purpose or different character, altering the first with new expression, meaning, or message.' 'The more transformative the new work, the less will be the significance of other factors, like commercialism, that may weigh against a finding of fair use.'") (internal citations omitted); *Seltzer v. Green Day, Inc.*, 725 F.3d 1170, 1175-76 (9th Cir. Cal. 2013) ("The Supreme Court has stated that the central purpose of [the first fair use] factor is to see whether and to what extent the new work is transformative.") (internal citations and quotations omitted).

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

commercial nature or is for nonprofit educational purposes.' 17 U.S.C. § 107(1).  This factor involves two sub-issues:  (1) 'whether and to what extent the new work is transformative,' *Campbell*, 510 U.S. at 579 (citation and internal quotation marks omitted); and (2) whether the use serves a commercial purpose.").

**DISPUTED: Cisco's Position on Arista's Final Instruction No. 50 re Copyright—Affirmative Defense: Fair Use: First Factor: Definition Of Transformative**

Cisco's position is that no such instruction should be given.

**Cisco's Position:**

Arista's proposed instruction should be rejected.  The instruction departs from Instruction 17.21 of the *Ninth Circuit Manual of Model Civil Jury Instructions* ("*Model*") expanding the *Model*'s instruction, and is unnecessarily lengthy.  To the extent that the Court provides an instruction on transformation, it should use Cisco's proposed Instruction No. 46, *supra*, which is neutral and concise:

> A use is "transformative" only where it adds something new, with a further purpose or different character, altering the first with new expression, meaning or message.  But copying a work to use it for an identical or competing purpose as the original, or in a manner that tends to supplant or supersede the original, is not transformative.  Further, a use is not transformative where the user makes no alteration to the expressive content or message of the original.

Cisco also incorporates in full its response to Arista's proposed Instruction No. 51.

Cisco further notes it is unduly excessive for the Court to provide thirteen individual instructions to the jury on the single topic of fair use.  Arista's instructions are almost exclusively derived from a single case where fair use was the sole issue before the jury on remand and Arista cites no other authority for such extensive fair use instructions.

1  **DISPUTED: Arista's Final Instruction No. 50 re Copyright—Affirmative Defense: Fair Use:**

2  **First Factor: Definition Of Transformative[125]**

3          What does transformative mean? A use is transformative if it adds something new, with a

4  further purpose or different character, altering the first use with new expression, meaning, or

5  message rather than merely superseding the objects of the original creation.[126] New works have

6  been found transformative when they use copyrighted material for purposes distinct from the

7  purpose of the original material. A use is considered transformative only where a defendant

8  changes a plaintiff's copyrighted work or, where the copyrighted elements remain unchanged from

9  the original, a defendant uses them in a different context such that the original work is transformed

10  into a new creation.[127] A work is not transformative where the user makes little or no alteration to

11  _____

12    [125]  *Oracle America, Inc. v. Google, Inc.*, No. 10-cv-03561-WHA, ECF 1981 (May 26, 2016)

13  (Jury Instruction 24).
      [126] *Oracle America, Inc. v. Google, Inc.*, 750 F.3d 1339, 1374 (Fed. Cir. 2014) ("A use is

14  'transformative' if it 'adds something new, with a further purpose or different character, altering
    the first with new expression, meaning or message.' The critical question is 'whether the new

15  work merely supersede[s] the objects of the original creation . . . or instead adds something
    new.'") (internal citations omitted); *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 579 (1994)

16  (use is transformative when it "adds something new, with a further purpose or different character,
    altering the first with new expression, meaning or message.") (emphasis added).

17    [127] *Oracle America, Inc. v. Google, Inc.*, 750 F.3d 1339, 1374 (Fed. Cir. 2014) ("A use is

18  'transformative' if it 'adds something new, with a further purpose or different character, altering
    the first with new expression, meaning or message.' The critical question is 'whether the new

19  work merely supersede[s] the objects of the original creation ... or instead adds something new.'")
    (internal citations omitted); *Monge v. Maya Magazines, Inc.*, 688 F.3d 1164, 1176 (9th Cir. 2012)

20  (use transformative when it incorporates elements of prior work "into a broader work"); *Perfect

21  10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1165 (9th Cir. 2007) ("The fact that Google
    incorporates the entire Perfect 10 image into the search engine results does not diminish the

22  transformative nature of Google's use. As the district court correctly noted, we determined in
    Kelly that even making an exact copy of a work may be transformative so long as the copy serves

23  a different function than the original work."); *Wall Data Inc. v. L.A. County Sheriff's Dept.*, 447

24  F.3d 769, 778 (9th Cir. 2006) (use can be transformative where defendant changes plaintiff's work
    or uses it in a different context); *Kelly v. Arriba Soft Corp.*, 336 F.3d 811, 818-19 (9th Cir. 2002)

25  (finding use of "exact images" transformative and fair use); *Seltzer v. Green Day, Inc.*, 725 F.3d
    1170, 1176 (9th Cir. 2013) (use is transformative if it "adds value to the original—if the quoted

26  matter is used as raw material, transformed in the creation of new information, new aesthetics,
    new insights and understandings" and that the addition of such value "is the very type of activity

27  that the fair use doctrine intends to protect for the enrichment of society.") (quoting P. Leval,
    Toward a Fair Use Standard, 103 HARV. L. REV. 1105 (1990)).

28

the expressive content or message of the original work and uses it in the same or similar context. The extent of transformation may vary from case to case. The greater the transformation, the more likely an accused use will qualify as a fair use, and the less the transformation, the less likely an accused use will qualify as a fair use.[128]

**Arista's Position:**

This proposed instruction was given in *Oracle*. *See Oracle,* ECF 1981 (Jury Instruction 24). It accurately states the law. The Supreme Court has held that a use is transformative when it "adds something new, with a further purpose or different character, altering the first with new expression, meaning or message." *Campbell*, 510 U.S. at 579. The Ninth Circuit agrees, and makes clear that the new work need not change the elements it copied from the prior one to be transformative. *See Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1165 (9th Cir. 2007) ("[E]ven making an exact copy of a work may be transformative so long as the copy serves a different function than the original work.") (internal citations omitted); *Wall Data v. L.A. Cnty. Sheriff's Dep't*, 447 F.3d 769, 778 (9th Cir. 2006) (use can be transformative where defendant changes plaintiff's work or uses it in a different context); *Kelly v. Arriba Soft Corp.*, 336 F.3d 811, 818-19 (9th Cir. 2002) (finding use of "exact images" transformative and fair).

---

[128] *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 579 (1994) ("Although such transformative use is not absolutely necessary for a finding of fair use, the goal of copyright, to promote science and the arts, is generally furthered by the creation of transformative works. Such works thus lie at the heart of the fair use doctrine's guarantee of breathing space within the confines of copyright, and the more transformative the new work, the less will be the significance of other factors, like commercialism, that may weigh against a finding of fair use.") (internal quotations and citations omitted).

1    **DISPUTED: Cisco's Position on Arista's Final Instruction No. 51 re Copyright—Affirmative**

2    **Defense: Fair Use: First Factor: Transformative**

3        Cisco's position is that no such instruction should be given.

4

5    **Cisco's Position:**

6        Arista's proposed instruction should be rejected.  *First*, the instruction departs from

7    Instruction 17.21 of the *Ninth Circuit Manual of Model Civil Jury Instructions* ("*Model*")
     expanding the *Model*'s instruction, and is unnecessarily lengthy and expository.

8        *Second*, the proposed instruction improperly provides legal argument under the guise of

9    instruction, purporting to represent Cisco's and Arista's positions on transformation.  It is
     prejudicial for the Court to characterize the parties' own arguments on how the facts should be

10   applied to the law.  Thus, the Court should not include in its instruction any references to what
     "Arista contends" or what "Cisco contends" as to whether "EOS" or CLI features" are or are not

11   transformative—terms that are not otherwise even used in the instructions.

12       *Third*, Arista's instruction, including its own example, is incorrect as a matter of law.

13   Copying a work without change for a competing purpose, even if it is placed into a different
     architecture or operation, is not a transformative use.  *See, e.g.*, *Wall Data Inc. v. Los Angeles Cty.*

14   *Sheriff's Dep't*, 447 F.3d 769, 778 (9th Cir. 2006) ("The Sheriff's Department created exact copies
     of RUMBA's software.  It then put those copies to the identical purpose as the original software.

15   Such a use cannot be considered transformative.") (citing cases); *Worldwide Church of God v.*

16   *Philadelphia Church of God, Inc.,* 227 F.3d 1110, 1117 (9th Cir. 2000)  (where "'use is for the
     same intrinsic purpose as [the copyright holder's] ... such use seriously weakens a claimed fair

17   use.'") (quoting *Weissmann v. Freeman,* 868 F.2d 1313, 1324 (2d Cir. 1989)); *Kelly v. Arriba Soft*

18   *Corp.*, 336 F.3d 811, 819 (9th Cir. 2003)  ("reproducing music CDs in computer MP3 format does
     not change the fact that both formats are used for entertainment purposes.  Likewise, reproducing

19   news footage into a different format does not change the ultimate purpose of informing the public
     about current affairs."); *Elvis Presley Enters., Inc. v. Passport Video*, 349 F.3d 622 (9th Cir.

20   2003).  Arista thus misrepresents the inquiry by suggesting that use of Cisco's copyrighted works
     in creating its own competing architecture is a different, transformative "context"; to the contrary,

21   a competing use cannot be transformative.

22       *Fourth*, the instruction is incorrect in representing that transformation is not

23   "disqualif[ied]" where a use is carried over "without change," as Ninth Circuit law requires
     change in expressive content or message.  *Seltzer v. Green Day, Inc.,* 725 F.3d 1170, 1177 (9th

24   Cir. 2013) (no transformation where defendant "makes no alteration to the expressive content or
     message of the original work.").

25       To the extent that the Court provides an instruction on transformation, it should use

26   Cisco's Proposed Instruction No. 46, *supra*, which is neutral, concise and not prejudicial:

27       A use is "transformative" only where it adds something new, with a further
         purpose or different character, altering the first with new expression, meaning or

28

                                    -125-                        Case No. 5:14-cv-5344-BLF
1121178.02

message.  But copying a work to use it for an identical or competing purpose as the original, or in a manner that tends to supplant or supersede the original, is not transformative.  Further, a use is not transformative where the user makes no alteration to the expressive content or message of the original.

Cisco further notes it is unduly excessive for the Court to provide thirteen individual instructions to the jury on the single topic of fair use.  Arista's instructions are almost exclusively derived from a single case where fair use was the sole issue before the jury on remand and Arista cites no other authority for such extensive fair use instructions.

**DISPUTED: Arista's Final Instruction No. 51 re Copyright—Affirmative Defense: Fair Use:**

**First Factor: Transformative[129]**

To qualify as transformative, the material copied need not be modified in the new work, so long as the material and the context in which the material is used qualifies as transformative under the test stated above. In this case, Arista contends that any use of the accused CLI features was transformative because it added something new to Cisco's copyrighted works. For example, Arista contends that its EOS is fundamentally different from Cisco IOS in both architecture and operation. However, Cisco contends that EOS is not transformative because it uses the accused CLI features for the same purpose as Cisco . It is up to you to decide the extent to which Arista's use qualifies as transformative under the test stated above, but you may not disqualify it from being transformative merely because certain accused CLI features were carried over without change. [130] On the other hand, even if you find that the accused use was transformative, you must weigh that and the extent of the transformation against the commercial purpose of the use and its extent, which I will now discuss.

---

[129]  *Oracle America, Inc. v. Google, Inc.*, No. 10-cv-03561-WHA, ECF 1981 (May 26, 2016) (Jury Instruction 25).

[130]  *Oracle America, Inc. v. Google, Inc.*, 750 F.3d 1339, 1374 (Fed. Cir. 2014) ("A use is 'transformative' if it 'adds something new, with a further purpose or different character, altering the first with new expression, meaning or message.' The critical inquiry is 'whether the new work merely supersede[s] the objects of the original creation ... or instead adds something new.'") (internal citations omitted); *Monge v. Maya Magazines, Inc.*, 688 F.3d 1164, 1176 (9th Cir. 2012) (use transformative when it incorporates elements of prior work "into a broader work"); *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1165 (9th Cir. 2007) ("The fact that Google incorporates the entire Perfect 10 image into the search engine results does not diminish the transformative nature of Google's use. As the district court correctly noted, we determined in Kelly that even making an exact copy of a work may be transformative so long as the copy serves a different function than the original work."); *Wall Data Inc. v. L.A. County Sheriff's Dept.*, 447 F.3d 769, 778 (9th Cir. 2006) (use can be transformative where defendant changes plaintiff's work or uses it in a different context); *Kelly v. Arriba Soft Corp.*, 336 F.3d 811, 818-19 (9th Cir. 2002) (finding use of "exact images" transformative and fair use); *Seltzer v. Green Day, Inc.*, 725 F.3d 1170, 1176 (9th Cir. 2013) (use is transformative if it "adds value to the original—if the quoted matter is used as raw material, transformed in the creation of new information, new aesthetics, new insights and understandings" and that the addition of such value "is the very type of activity that the fair use doctrine intends to protect for the enrichment of society.") (quoting P. Leval, Toward a Fair Use Standard, 103 Harv. L. Rev. 1105 (1990)).

1121178.02

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Arista's Position:**

      This proposed instruction is modeled on Judge Alsup's in *Oracle. See Oracle*, ECF 1981 (Jury Instruction 25). Arista adapted it only to reflect the parties and issues in dispute.

**DISPUTED: Cisco's Position on Arista's Final Instruction No. 52 re Copyright—Affirmative**

**Defense: Fair Use: First Factor: Commercial Use**

Cisco's position is that no such instruction should be given.

**Cisco's Position:**

Arista's proposed instruction should be rejected.  *First*, the instruction departs from Instruction 17.21 of the *Ninth Circuit Manual of Model Civil Jury Instructions* ("*Model*") expanding the *Model*'s instruction, and is unnecessarily lengthy.  *Second*, the proposed instruction improperly provides legal argument under the guise of instruction, purporting to represent that Cisco and Arista disagree over the "extent" of commercial use.  It is prejudicial for the Court to characterize the parties' arguments.  *Third*, the proposed instruction is unnecessarily convoluted and confusing; all the Court need instruct is that commercial use is a factor that the jury is to consider.  To the extent that the Court provides an instruction on commercial use, it should use Cisco's proposed Instruction No. 46, *supra*, which is neutral, concise and not prejudicial: "As to the second sub-factor, where a defendant's use was for a commercial purpose, this factor weighs against fair use."

Cisco further notes it is unduly excessive for the Court to provide thirteen individual instructions to the jury on the single topic of fair use.  Arista's instructions are almost exclusively derived from a single case where fair use was the sole issue before the jury on remand and Arista cites no other authority for such extensive fair use instructions.

**DISPUTED: Arista's Final Instruction No. 52 re Copyright—Affirmative Defense: Fair Use:**

**First Factor: Commercial Use[131]**

In evaluating the first statutory factor, the extent of the commercial nature of the accused use must be considered. In this case, all agree that Arista's accused use was commercial in nature but disagree over the extent. Commercial use weighs against a finding of fair use, but even a commercial use may be found (or not found, as the case may be) to be sufficiently transformative that the first factor, on balance, still cuts in favor of fair use.[132] To put it differently, the more transformative an accused work, the more other factors, such as commercialism, will recede in importance.[133] By contrast, the less transformative the accused work, the more other factors like commercialism will dominate.

**Arista's Position:**

This proposed instruction is modeled on Judge Alsup's in *Oracle. See Oracle*, ECF 1981 (May 26, 2016) (Jury Instruction 26). Arista adapted it only to reflect the parties and issues in dispute. It accurately states the law. *See Oracle America, Inc. v. Google, Inc.*, 750 F.3d 1339, 1375 (Fed. Cir. 2014) ("Analysis of the first factor also requires inquiry into the commercial nature of the use. Use of the copyrighted work that is commercial 'tends to weigh against a finding of fair use.' *Harper & Row*, 471 U.S. at 562 ('The crux of the profit/nonprofit distinction is not whether the sole motive of the use is monetary gain but whether the user stands to profit from exploitation of the copyrighted material without paying the customary price.'). '[T]he more transformative the new work, the less will be the significance of other factors, like commercialism, that may weigh against a finding of fair use.' *Campbell*, 510 U.S. at 579.").

---

[131]  *Oracle America, Inc. v. Google, Inc.*, No. 10-cv-03561-WHA, ECF 1981 (May 26, 2016) (Jury Instruction 26).

[132] *Hustler Magazine Inc. v. Moral Majority Inc.*, 796 F.2d 1148, 1152 (9th Cir. 1986) ("Even assuming that the use had a purely commercial purpose, the presumption of unfairness can be rebutted by the characteristics of the use.").

[133] *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 579 (1994) ("[T]he more transformative the new work, the less will be the significance of other factors, like commercialism, that may weigh against a finding of fair use.").

**DISPUTED: Cisco's Position on Arista's Final Instruction No. 53 re Copyright—Affirmative**

**Defense: Fair Use: Second Factor**

Cisco's position is that no such instruction should be given.

**Cisco's Position:**

Arista's proposed instruction should be rejected. *First*, the instruction departs from Instruction 17.21 of the *Ninth Circuit Manual of Model Civil Jury Instructions* ("*Model*") expanding the *Model*'s instruction, and is unnecessarily lengthy and expository. *Second*, Arista's proposed instruction is prejudicial, as there is no legal basis to instruct that "instruction manuals" or user interfaces are less worthy of copyright protection than other copyrighted material, particularly given that fair use is a case-by-case analysis that must be evaluated on their own and Cisco is entitled to argue that the original, expressive elements of its copyrighted works, including its user interface and documentation, exhibit creativity. *See Oracle Am., Inc. v. Google Inc.*, 750 F.3d 1339, 1375 (Fed. Cir. 2014) (expressive elements of software enjoy great protection). *Third*, Arista's proposed instruction is largely irrelevant to the extent that it addresses "literary works" and "creative writing and expression," suggesting that traditional fictional literature is worthy of more protection that Cisco's copyrighted works. *Fourth*, this proposed instruction is unnecessarily convoluted and confusing, repeatedly referring to the "core" or "core values" of copyrighted expression without explanation. All the Court need instruct is that the second factor addresses "the nature of the copyrighted work," which the jury will then be able to balance with the other factors using its own judgment.

Cisco further notes it is unduly excessive for the Court to provide thirteen individual instructions to the jury on the single topic of fair use. Arista's instructions are almost exclusively derived from a single case where fair use was the sole issue before the jury on remand and Arista cites no other authority for such extensive fair use instructions.

**DISPUTED: Arista's Final Instruction No. 53 re Copyright—Affirmative Defense: Fair Use: Second Factor[134]**

The second statutory factor is the nature of the copyrighted work. This factor recognizes that traditional literary works are closer than informational works, such as instruction manuals, to the core of intended copyright protection. Creative writing and expression lie at the very heart of copyright protection, so fair use is generally more difficult to establish for copying of traditional literary works than for copying of informational works.[135] The focus of this factor is on how close the used material is to the core values of copyright protection. When the used material implicates the core values of copyright protection less, the more this factor weighs in favor of fair use, and vice versa.[136]

**Arista's Position:**

This proposed instruction is modeled on Judge Alsup's in *Oracle. See Oracle Am. Inc. v. Google, Inc.*, 3:10-cv-03561, ECF 1981 (May 26, 2016) (May 26, 2016) (Jury Instruction 28). Arista made minor modifications for clarity. It accurately states the law, explaining that "traditional literary works are closer than informational works, such as instruction manuals, to the core of intended copyright protection." *Id.*; *see, e.g., Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 586 (1994) ("This factor calls for recognition that some works are closer to the core of intended copyright protection than others, with the consequence that fair use is more difficult to establish when the former works are copied.") (internal citations omitted)).

---

[134]  *Oracle America, Inc. v. Google, Inc.*, No. 10-cv-03561-WHA, ECF 1981 (May 26, 2016) (Jury Instruction 28).

[135]  *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 586 (1994) ("This factor calls for recognition that some works are closer to the core of intended copyright protection than others, with the consequence that fair use is more difficult to establish when the former works are copied.") (internal citations omitted).

[136]  *Sega Enters., Ltd. v. Accolade, Inc.*, 977 F.2d 1510, 1527 (9th Cir. 1992) ("[I]f a work is largely functional, it receives only weak protection.").

**DISPUTED: Cisco's Position on Arista's Final Instruction No. 54 re Copyright—Affirmative Defense: Fair Use: Second Factor: Functionality/Creativity**

Cisco's position is that no such instruction should be given.

**Cisco's Position:**

Arista's proposed instruction should be rejected. *First*, the instruction departs from Instruction 17.21 of the *Ninth Circuit Manual of Model Civil Jury Instructions* ("*Model*") expanding the *Model*'s instruction, and is unnecessarily lengthy. *Second*, Arista's proposed instruction includes argumentative recitations of this fair use factor that are not necessary (and that are already covered by the *Model* instruction, which is short, clear and neutral). *Third*, Arista misstates the law by suggesting to the jury that it may consider Arista's industry standard argument for purposes of fair use. *See, e.g.*, Dkt. No. 533; Cisco's Instruction No. 28 (Industry Standard Not Relevant), *supra*. *Fourth*, Arista's argument actually is one regarding functionality, merger, and scènes à faire, which is addressed *supra*, Instruction No. 27 (Ideas and Expressions), and *infra*, Instruction Nos. 60 (merger), 61 (scènes à faire). It thus is inappropriate and duplicative to restate it here. *Fourth*, this proposed instruction is unnecessarily convoluted and confusing, referring to the "core values" of copyrighted protection without explanation. *Fifth*, Arista's proposed instruction is not balanced, as it fails to note that works with functional components may nonetheless be highly creative. *Oracle Am., Inc. v. Google Inc.*, 750 F.3d 1339, 1375 (Fed. Cir. 2014). *Sixth*, bad faith blatant copying, even of functional elements, is inconsistent with fair use under this factor. *See Cable/Home Commc'n Corp. v. Network Prods., Inc.*, 902 F.2d 829, 844 (11th Cir. 1990) (citing cases). Thus, if the Court addresses functionality, it should also instruct the jury that bad faith weighs against fair use, even when functional elements are at issue. *Seventh*, Arista's instruction improperly refers to a computer program, when this case is not about computer programming, but a user interface.

Cisco further notes it is unduly excessive for the Court to provide thirteen individual instructions to the jury on the single topic of fair use. Arista's instructions are almost exclusively derived from a single case where fair use was the sole issue before the jury on remand and Arista cites no other authority for such extensive fair use instructions.

1  **DISPUTED: Arista's Final Instruction No. 54 re Copyright—Affirmative Defense: Fair Use:**

2  **Second Factor: Functionality/Creativity[137]**

3  Even though a computer program performs functions and has functional elements, it may

4  be (or may not be) highly creative.[138] When there are many possible ways to express a computer

5  program, the particular way chosen for a copyrighted program  may be (or may not be) highly

6  creative. On the other hand, when elements of a computer program are dictated by functional

7  considerations such as efficiency, compatibility, or industry standards, then less creativity is

8  indicated and the core values of copyright protection are less implicated.[139] When purely

9

10  [137]  *Oracle America, Inc. v. Google, Inc.*, No. 10-cv-03561-WHA, ECF 1981 (May 26, 2016)

11  (Jury Instruction 30).

[138] *Sony Computer Entertainment, Inc. v. Connectix Corp.*, 203 F.3d 596, 603 (9th Cir. 2000)

12  ("Thus, the fair use doctrine preserves public access to the ideas and functional elements

13  embedded in copyrighted computer software programs. This approach is consistent with the

ultimate aim [of the Copyright Act], to stimulate artistic creativity for the general public good.")

14  (internal quotations and citations omitted).

[139] *Sega Enters. Ltd. v. Accolade, Inc.*, 977 F.2d 1510, 1524 (9th Cir. 1992) ("To the extent

15  that a work is functional or factual, it may be copied, as may those expressive elements of the

16  work that must necessarily be used as incident to expression of the underlying ideas, functional

concepts, or facts) (internal quotations and citations omitted);  *Computer Assocs Int'l, Inc. v. Altai,*

17  *Inc.*, 982 F.2d 693, 709-10 (2d Cir. 1992) ("[A] programmer's freedom of design choice is often

circumscribed by extrinsic considerations such as (1) the mechanical specifications of the

18  computer on which a particular program is intended to run; (2) compatibility requirements of other

19  programs with which a program is designed to operate in conjunction; (3) computer

manufacturers' design standards; (4) demands of the industry being serviced; and (5) widely

20  accepted programming practices within the computer industry."); *Oracle America, Inc. v. Google,*

21  *Inc.*, 750 F.3d 1339, 1371-72, 1376-77 (Fed. Cir. 2014) ("Next, while we have concluded that it

was error for the trial court to focus unduly on the functional aspects of the packages, and on

22  Google's competitive desire to achieve commercial 'interoperability' when deciding whether

Oracle's API packages are entitled to copyright protection, we expressly noted that these factors

23  may be relevant to a fair use analysis. While the trial court erred in concluding that these factors

24  were sufficient to overcome Oracle's threshold claim of copyrightability, reasonable jurors might

find that they are relevant to Google's fair use defense under the second and third factors of the

25  inquiry. *See Sega*, 977 F.2d at 1524-25 (discussing the Second Circuit's approach to 'break[ing]

down a computer program into its component subroutines and subsubroutines and then

26  identif[ying] the idea or core functional element of each' in the context of the second fair use

factor: the nature of the copyrighted work). We find this particularly true with respect to those

27  core packages which it seems may be necessary for anyone to copy if they are to write programs in

the Java language. And, it may be that others of the packages were similarly essential components

28  of any Java language-based program.").

1    functional elements are embedded in a copyrighted work and it is necessary to copy associated

2    creative elements in order to utilize those functional elements, then this circumstance also favors

3    fair use.[140] Conversely, copying creative expression that is not necessary to perform the functions

4    weighs against fair use.

5

6    **Arista's Position:**

7       This proposed instruction is modeled on Judge Alsup's in *Oracle.  See Oracle*, ECF 1981

8    (May 26, 2016) (Jury Instruction 29).  Arista made minor modifications to adapt it to the parties
     and issues in dispute in this case.  It follows the law, as the citations in the instruction demonstrate.

9       This instruction is particularly important in this case, where the allegedly copied

10   expression comprises factual instructions and statements used to configure and monitor network
     switches.  The jury should receive guidance on how the nature of the expression at issue affects

11   the fair-use analysis.

12

13

14

15

16

17

18

19

20

21

22

23

24
     _____

25
        [140] *Sony Computer Entertainment, Inc. v. Connectix Corp.*, 203 F.3d 596, 603 (9th Cir. 2000)
26   ("Thus, the fair use doctrine preserves public access to the ideas and functional elements
     embedded in copyrighted computer software programs. This approach is consistent with the
27   ultimate aim [of the Copyright Act], to stimulate artistic creativity for the general public good.")
     (internal quotations and citations omitted).
28
                                           -135-           Case No. 5:14-cv-5344-BLF

1121178.02

**DISPUTED: Cisco's Position on Arista's Final Instruction No. 55 re Copyright—Affirmative**

**Defense: Fair Use: Third Factor**

Cisco's position is that no such instruction should be given.

**Cisco's Position:**

Arista's proposed instruction should be rejected. *First*, the instruction departs from Instruction 17.21 of the *Ninth Circuit Manual of Model Civil Jury Instructions* ("*Model*") expanding the *Model*'s instruction, and is unnecessarily lengthy. *Second*, Arista's proposed instruction is incorrect and prejudicial. For example, Arista's proposed instruction tells the jury that the "works" at issue are the same as Cisco's registrations with the Copyright Office. That is incorrect for the reasons set forth in Cisco's position on Disputed Instruction Nos. 30 & 31 and hereby incorporated by reference.

Cisco further notes it is unduly excessive for the Court to provide thirteen individual instructions to the jury on the single topic of fair use. Arista's instructions are almost exclusively derived from a single case where fair use was the sole issue before the jury on remand and Arista cites no other authority for such extensive fair use instructions.

1121178.02

1   **DISPUTED: Arista's Final Instruction No. 55 re Copyright—Affirmative Defense: Fair Use:**

2   **Third Factor[141]**

3      The third statutory factor is the amount and substantiality of the portion used in

4 relationship to the copyrighted work as a whole, which concerns how much of the overall

5 copyrighted work was used by the accused infringer.[142] Analysis of this factor is viewed in the

6 context of Cisco's copyrighted works, namely the twenty-six operating systems registered by

7 Cisco with the Copyright Office and their associated documentation.  The fact, if true, that a

8 substantial portion of an infringing work was copied verbatim is evidence of the qualitative value

9 of the copied material, both to the originator and to whoever seeks to profit from marketing

10 someone else's copyrighted work. Wholesale copying does not preclude fair use per se but it

11 militates against a finding of fair use. Even a small part may be qualitatively the most important

12 part of a work. If, however, the secondary user only copies as much as is necessary for a

13 transformative use, then this factor will not weigh against him or her. The extent of permissible

14 copying varies with the purpose and character of the use, which relates back to the first factor.

15      In assessing this third factor, both the quantity of the material used and the quality or

16 importance of the material used should be considered.

17

18   **Arista's Position:**

19      This proposed instruction is modeled on Judge Alsup's in *Oracle.  See Oracle*, ECF 1981

20 (May 26, 2016) (Jury Instruction 33).  Arista made minor modifications to adapt it to the parties

21 and issues in dispute in this case.  It accurately states the law.  *See Oracle America, Inc. v. Google,*
*Inc.*, 750 F.3d 1339, 1374 (Fed. Cir. 2014) ("The third factor asks the court to examine 'the

22

23     [141]  *Oracle America, Inc. v. Google, Inc.*, No. 10-cv-03561-WHA, ECF 1981 (May 26, 2016)
(Jury Instruction 33).

24   [142] *Data General Corp. v. Grumman Systems Support Corp.*, 36 F.3d 1147, 1162 (1st Cir.
1994) ("a key purpose of the Section 408(b) deposit requirement is to prevent confusion about

25 which work the author is attempting to register" and protect under the registration); *Harper House,*
*Inc. v. Thomas Nelson, Inc.*, 5 F.3d 536, 1993 WL 346546 at 25 *2 (9th Cir. 1993) (unpublished)

26 (comparisons of individual portions (pages) of parties' works rather than the entire works is
"inappropriate and misleadingly prejudicial"; works must be compared as a whole") (emphasis

27 added). *NXIVM Corp. v. The Ross Institute*, 364 F.3d 471, 481 (2d Cir. 2004) (fair use analysis
under third factor must be based on entire work and not individual "modules").

28

1    amount and substantiality of the portion used in relation to the copyrighted work as a whole.' 17

2    U.S.C. § 107(3).  Analysis of this factor is viewed in the context of the copyrighted work, not the
     infringing work . . . . '[T]he fact that a substantial portion of the infringing work was copied

3    verbatim is evidence of the qualitative value of the copied material, both to the originator and to
     the plagiarist who seeks to profit from marketing someone else's copyrighted expression.' . . . The

4    Ninth Circuit has recognized that, while 'wholesale copying does not preclude fair use per se,
     copying an entire work militates against a finding of fair use.'").

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**DISPUTED: Cisco's Position on Arista's Final Instruction No. 56 re Copyright—Affirmative**

2

**Defense: Fair Use: Fourth Factor**

3      Cisco's position is that no such instruction should be given.

4

5   **Cisco's Position:**

6      Arista's proposed instruction should be rejected.  *First*, the instruction departs from

7   Instruction 17.21 of the *Ninth Circuit Manual of Model Civil Jury Instructions* ("*Model*")
expanding the *Model*'s instruction, and is unnecessarily lengthy.  *Second*, Arista's proposed

8   instruction is prejudicial in both its length (suggesting outsized importance to the jury) and its
organization (which departs from the neutral approach of the Model Instruction by beginning with

9   a suggestion of fair use and a lack of liability.

10      Cisco further notes it is unduly excessive for the Court to provide thirteen individual

11   instructions to the jury on the single topic of fair use.  Arista's instructions are almost exclusively
derived from a single case where fair use was the sole issue before the jury on remand and Arista

12   cites no other authority for such extensive fair use instructions.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

FIRST AMENDED UNDISPUTED AND DISPUTED PROPOSED JURY INSTRUCTIONS
1121178.02

**DISPUTED: Arista's Final Instruction No. 56 re Copyright—Affirmative Defense: Fair Use: Fourth Factor**[143]

The fourth and final statutory factor is the effect of the accused infringer's use on the potential market for or value of the copyrighted work.[144] This factor militates against fair use if the accused use materially impairs the marketability or value of the copyrighted work.[145] This is the single most important factor, but it must be weighed with all other factors and is not necessarily dispositive. This factor considers whether the accused work is offered or used as a substitute for the original copyrighted work.[146] This factor considers not only the extent of any market harm caused by the accused infringer's actions but also whether unrestricted and widespread use of the copyrighted materials of the sort engaged in by the accused infringer would result in a substantially adverse impact on the potential market for the copyrighted work.[147] If the use of the copyrighted materials is transformative, market substitution is at least less certain, and market harm may not be presumed.[148]

---

[143]   *Oracle America, Inc. v. Google, Inc.*, No. 10-cv-03561-WHA, ECF 1981 (May 26, 2016) (Jury Instruction 34).

[144]   17 U.S.C. § 107.

[145]   *Sofa Entm't, Inc. v. Dodger Prods.*, 709 F.3d 1273, 1280 (9th Cir. 2013)  ("Where the secondary use is not a substitute for the original and does not deprive the copyright holder of a derivative use, the fourth factor weighs in favor of fair use."); *Authors Guild v. Google, Inc.*, 804 F.3d 202, 224 (2d Cir. 2015) ("[T]he possibility, or even the probability or certainty, of some loss of sales does not suffice to make the copy an effectively competing substitute that would tilt the weighty fourth factor in favor of the rights holder in the original. There must be a meaningful or significant effect "upon the potential market for or value of the copyrighted work.").

[146]   *Sofa Entm't, Inc. v. Dodger Prods.*, 709 F.3d 1273, 1280 (9th Cir. 2013)  ("Where the secondary use is not a substitute for the original and does not deprive the copyright holder of a derivative use, the fourth factor weighs in favor of fair use."); *Authors Guild v. Google, Inc.*, 804 F.3d 202, 224 (2d Cir. 2015) ("[T]he possibility, or even the probability or certainty, of some loss of sales does not suffice to make the copy an effectively competing substitute that would tilt the weighty fourth factor in favor of the rights holder in the original. There must be a meaningful or significant effect "upon the potential market for or value of the copyrighted work.").

[147]   *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 590 (1994).

[148]   *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 591 (1994) ("[W]hen a commercial use amounts to mere duplication of the entirety of an original, it clearly supersede[s] the objects of the original and serves as a market replacement for it, making it likely that cognizable market harm to the original will occur. But when, on the contrary, the second use is transformative, market

1    Market harm to the value of the copyrighted work may be a matter of degree, and the

2    importance of this factor will vary not only with the amount of harm shown, but also with the

3    relative strength of the showings on the other factors.

4

5    **Arista's Position:**

6         This proposed instruction is modeled on Judge Alsup's in *Oracle*. *See Oracle*, ECF 1981

7    (May 26, 2016) (Jury Instruction 34). Arista made minor modifications to adapt it to the parties
     and issues in dispute in this case. Arista also added one new sentence: "If the use of the

8    copyrighted materials is transformative, market substitution is at least less certain, and market
     harm may not be presumed." This comes directly from Supreme Court case law. *See Campbell v.*

9    *Acuff-Rose Music, Inc.*, 510 U.S. 569, 591 (1994) ("But when, on the contrary, the second use is
     transformative, market substitution is at least less certain, and market harm may not be so readily

10   inferred.") (internal citations and quotations omitted). The jury should be so instructed to properly
     evaluate the fourth fair use factor.

11

12        This instruction is also necessary to explain that the "amount and substantiality of the
     portion used" must be compared to the copyrighted work as a whole. *See NXIVM Corp. v. The*

13   *Ross Institute*, 364 F.3d 471, 481 (2d Cir. 2004) ("If plaintiffs' argument [that the third fair use
     factor should be based on individual "modules"] were accepted by courts — and, not surprisingly,

14   plaintiffs cite no authority to support it —the third factor could depend ultimately on a plaintiff's
     cleverness in obtaining copyright protection for the smallest possible unit of what would otherwise

15   be a series of such units intended as a unitary work.") *See also Harper House, Inc. v. Thomas*

16   *Nelson, Inc.*, 5 F.3d 536, 1993 WL 346546 at 25 *2 (9th Cir. 1993) (unpublished) (comparisons of
     individual portions (pages) of parties' works rather than the entire works is "inappropriate and

17   misleadingly prejudicial"; works must be compared as a whole).

18        This rule also reflects the "key purpose" of the copyright deposit requirement, which is "to

19   prevent confusion about which work the author is attempting to register" and protect under the
     registration. *Data General Corp. v. Grumman Systems Support Corp.*, 36 F.3d 1147, 1162 (1st

20   Cir. 1994); *see also Nicholls v. Tufenkian Import/Export Ventures*, 367 F. Supp. 2d 514, 520
     (S.D.N.Y. 2005) (one of the purposes of the copyright deposit requirement is to provide

21   "sufficient material to identify the work in which the registrant claims a copyright").

22

23

24

25

26   _____

27   substitution is at least less certain, and market harm may not be so readily inferred.") (internal

28   citations and quotations omitted).

1   **DISPUTED: Cisco's Position on Arista's Final Instruction No. 57 re Copyright—Affirmative**

2   **Defense: Fair Use: Fourth Factor: Market Harm**

3        Cisco's position is that no such instruction should be given.

4

5   **Cisco's Position:**

6        Arista's proposed instruction should be rejected.  *First*, the instruction departs from
    Instruction 17.21 of the *Ninth Circuit Manual of Model Civil Jury Instructions* ("*Model*")

7   expanding the *Model*'s instruction, and is unnecessarily lengthy.  *Second*,  Arista attempts to turn a

8   single factor into multiple instructions, creating a prejudicial treatment of concepts that are more
    fairly explained in the *Model*.  *Third*, Arista fails to cite any persuasive legal authority for its

9   instruction, instead only relying on a jury instruction provided by one other court.  *Fourth*, Arista
    is incorrect to suggest that this factor includes consideration of markets for features other than the

10  copyrighted features, for the only relevant inquiry on use beyond Arista's specific use is whether

11  "unrestricted and widespread conduct of the sort engaged in by the defendant … would result in a
    substantially adverse impact on the potential market for the original."  *Campbell v. Acuff-Rose*

12  *Music, Inc.*, 510 U.S. 569, 590 (1994).

13        Cisco further notes it is unduly excessive for the Court to provide thirteen individual
    instructions to the jury on the single topic of fair use.  Arista's instructions are almost exclusively

14  derived from a single case where fair use was the sole issue before the jury on remand and Arista

15  cites no other authority for such extensive fair use instructions.

16

17

18

19

20

21

22

23

24

25

26

27

28

**DISPUTED: Arista's Final Instruction No. 57 re Copyright—Affirmative Defense: Fair Use: Fourth Factor: Market Harm[149]**

In making your evaluation under the fourth factor, you should assess the harm, if any, to the potential market for or value of the copyrighted work itself and to its licensing value for it and its derivative works. You may consider the broader potential market for products that feature independent elements in addition to the copyrighted material and their successes and/or failures only insofar as they shed light on the licensing or market value of the copyrighted work itself and its derivative works.

**Arista's Position:**

This proposed instruction was given in *Oracle.  See Oracle*, ECF 1981 (May 26, 2016) (Jury Instruction 36).  Arista proposes Judge Alsup's instruction in full.  It is both accurate and important, because the fourth factor is important to the jury's evaluation of fair use.  *See Fox Broad. Co. v. Dish Network L.L.C.*, 747 F.3d 1060, 1069 (9th Cir. 2014).

---

[149] *Oracle America, Inc. v. Google, Inc.*, No. 10-cv-03561-WHA, ECF 1981 (May 26, 2016) (Jury Instruction 36).

FIRST AMENDED UNDISPUTED AND DISPUTED PROPOSED JURY INSTRUCTIONS
1121178.02

**DISPUTED: Cisco's Position on Arista's Final Instruction No. 58 re Copyright—Affirmative Defense: Fair Use: Fourth Factor: Consideration Of Additional Evidence**

Cisco's position is that no such instruction should be given.

**Cisco's Position:**

Arista's proposed instruction should be rejected.  *First*, the instruction departs from Instruction 17.21 of the *Ninth Circuit Manual of Model Civil Jury Instructions* ("*Model*") expanding the *Model*'s instruction, and is unnecessarily lengthy.  *Second*, Arista fails to cite any persuasive legal authority for this instruction, instead relying only on a jury instruction provided by one other court.  *Third*, this proposed instruction from Arista is incorrect given that it purports to tell the jury what it may consider beyond the four traditional fair use factors.  If any such expansion of the four factors is permitted, Cisco respectfully reserves the right to propose an instruction  telling the jury that as one such additional consideration it should consider whether Arista used Cisco's copyrighted works in bad faith.  *Los Angeles News Serv. v. KCAL-TV Channel 9*, 108 F.3d 1119, 1122 (9th Cir. 1997); *Fisher v. Dees*, 794 F.2d 432, 437 (9th Cir. 1986).

Cisco further notes it is unduly excessive for the Court to provide thirteen individual instructions to the jury on the single topic of fair use.  Arista's instructions are almost exclusively derived from a single case where fair use was the sole issue before the jury on remand and Arista cites no other authority for such extensive fair use instructions.

**DISPUTED: Arista's Final Instruction No. 58 re Copyright—Affirmative Defense: Fair Use: Fourth Factor: Consideration Of Additional Evidence[150]**

I have now completed my explanation of the four fair use factors in the Act. You might ask, are we limited to these four factors? The Act states that those four factors are not exclusive and you may consider any additional circumstances and evidence, pro or con, that, in your judgment, bear upon the ultimate purpose of the Copyright Act, including protection of authors and the right of fair use, namely, to promote the progress of science and useful arts.

**Arista's Position:**

This proposed instruction is modeled on Judge Alsup's in *Oracle*. *See Oracle*, ECF 1981 (May 26, 2016) (Jury Instruction 38). Arista made minor modifications to adapt it to the parties and issues in dispute in this case.

This proposed instruction is necessary to explain to the jury that the four statutory fair use factors are not exhaustive, and the jury may consider other factors. Both the statute itself and the Supreme Court have made this clear. *See Harper & Row Publishers v. Nation Enters.*, 471 U.S. 539, 560 (1985) (four factors are "not meant to be exclusive"). Likewise, the Ninth Circuit model instructions explicitly contemplate that additional factors may be added to the four enumerated ones. *See* Ninth Circuit Civil Model Jury Instructions (Copyright) § 17.18 ("[5.] [insert any other factor that bears on the issue of fair use]."). The jury should be so instructed.

---

[150]    *Oracle America, Inc. v. Google, Inc.*, No. 10-cv-03561-WHA, ECF 1981 (May 26, 2016) (Jury Instruction 38).

**DISPUTED: Cisco's Position on Arista's Final Instruction No. 59 re Copyright—Affirmative Defense: Fair Use: Fourth Factor: Consideration Of Factors**

Cisco's position is that no such instruction should be given.

**Cisco's Position:**

Arista's proposed instruction should be rejected. *First*, the instruction departs from Instruction 17.21 of the *Ninth Circuit Manual of Model Civil Jury Instructions* ("*Model*") expanding the *Model*'s instruction unnecessarily. This instruction is particularly unnecessary and turns a simple concept covered in a single phrase in the *Model* (namely, that the jury may consider numerous factors) into a separate and unnecessary instruction. *Second*, Arista fails to cite any persuasive legal authority for this instruction, instead relying only on a jury instruction provided by one other court. *Third*, this instruction is unnecessarily confusing, as it raises vague and unexplained concepts to the jury such as the "purpose of copyright" under the Constitution.

Cisco further notes it is unduly excessive for the Court to provide thirteen individual instructions to the jury on the single topic of fair use. Arista's instructions are almost exclusively derived from a single case where fair use was the sole issue before the jury on remand and Arista cites no other authority for such extensive fair use instructions

**DISPUTED: Arista's Final Instruction No. 59 re Copyright—Affirmative Defense: Fair Use:**

**Fourth Factor: Consideration Of Factors[151]**

It is up to you to decide whether all relevant factors, when considered fully and together, favor or disfavor fair use. All of these factors must be explored, discussed, and evaluated by you. No single factor is dispositive. Your evaluation of all factors must be weighed together in light of the purpose of copyright, which as our Constitution states is to promote the progress of science and useful arts. Some factors may weigh in favor of fair use and some against fair use, and you must decide, after giving the factors such weight as you find appropriate based on the evidence and my instructions, whether or not, on balance, Arista has shown by a preponderance of the evidence that they predominate in favor of fair use.

**Arista's Position:**

This proposed instruction is modeled on Judge Alsup's in *Oracle. See Oracle*, ECF 1981 (May 26, 2016) (Jury Instruction 39). Arista proposes Judge Alsup's instruction in full, modifying it only to identify the parties in this case. This instruction explains to the jury that they must explore, discuss, and evaluate all of the fair use factors, and no single factor is dispositive.

---

[151] *Oracle America, Inc. v. Google, Inc.*, No. 10-cv-03561-WHA, ECF 1981 (May 26, 2016) (Jury Instruction 39).

1121178.02

1    **DISPUTED: Cisco's Final Instruction No. 60 re Copyright—Affirmative Defense: Merger**

2        To show that Cisco's copyrighted works are subject to merger, Arista must show that, at

3    the time Cisco created the works, Cisco had only one way to express the idea underlying the

4    copyrighted user interface and related documentation.  If alternative expressions were available to

5    Cisco at the time it created them, then there is no merger.  What alternatives were available to

6    Arista is not relevant to merger.[152]

7        Arista has the burden of proving this defense by a preponderance of the evidence.[153]

8

9    **Cisco's Position:**

10        Cisco's proposed instruction is a concise, neutral and accurate description of the

11    affirmative defense of merger.  Contrary to Arista's request, the jury should be instructed on

     merger after the elements of infringement are set forth, as it is an affirmative defense to

12    infringement for which Arista bears the burden of proof.  *Oracle Am., Inc. v. Google Inc.*, 750 F.3d

     1339, 1358 (Fed. Cir. 2014) (merger is an "affirmative defense[] to claims of infringement")

13    (citing *Satava v. Lowry,* 323 F.3d 805, 810 n. 3 (9th Cir. 2003)); *Ninth Circuit Manual of Model*

     *Civil Jury Instructions* No. 1.2 (defendant bears burden of proof for affirmative defenses).

14

15        Arista's proposed instruction should be rejected.  *First*, Arista's instruction fails to inform

     the jury that Arista must show that: (1) the inquiry focuses on ***Cisco's*** options for expressions at

16    the time of creation of the asserted work(s), not Arista's options or anyone else's at the time of

     copying; and (2) the inquiry looks at the options for expression available at the time of the work's

17    creation.  *See Oracle*, 750 F.3d at 1361 (merger cannot bar copyright protection for any lines of

     declaring source code unless [the author] had only one way, or a limited number of ways, to write

18    them.  The evidence showed that [the author] had 'unlimited options as to the selection and

     arrangement of the 7000 lines Google copied.'  This was not a situation where [the author] was

19    selecting among preordained names and phrases to create its packages… Because 'alternative

     expressions [we]re available,' there is no merger.").

20

21        *Second*, Arista fails to set forth that it bears the burden of proving its affirmative defense,

     which is both the law and included in the *Model*.  *See Model* Instruction No. 1.2.

22

23    _____

24    [152]   *Oracle Am., Inc. v. Google Inc.*, 750 F.3d 1339, 1361 (Fed. Cir. 2014) (1361 ("First, we
     agree that merger cannot bar copyright protection for any lines of declaring source code unless

25    [the author] had only one way, or a limited number of ways, to write them. The evidence showed
     that [the author] had 'unlimited options as to the selection and arrangement of the 7000 lines

26    Google copied.' This was not a situation where [the author] was selecting among preordained
     names and phrases to create its packages… Because 'alternative expressions [we]re available,'

27    there is no merger.").

     [153]   Instruction No. 1.2, *Ninth Circuit Manual of Model Civil Jury Instructions* (2007).

28

Case No. 5:14-cv-5344-BLF

1121178.02

1

2

*Third*, Cisco has informed Arista in advance of this submission that it revised its own proposed Instruction No. 60 as follows, by adding a phrase (emphasis added) in the second sentence, supported with proper authority, and which will be included in a future filing after the parties meet and confer:

3

4

5

6

> To show that Cisco's copyrighted works are subject to merger, Arista must show that, at the time Cisco created the works,  Cisco had only one way*, or a limited number of ways,* to express the idea underlying the copyrighted user interface and related documentation.  If alternative expressions were available to Cisco at the time it created them, then there is no merger.  What alternatives were available to Arista is not relevant to merger.[154]

7

> Arista has the burden of proving this defense by a preponderance of the evidence.[155]

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

[154]  *Oracle Am., Inc. v. Google Inc.*, 750 F.3d 1339, 1361 (Fed. Cir. 2014) (1361 ("First, we agree that merger cannot bar copyright protection for any lines of declaring source code unless [the author] had only one way, or a limited number of ways, to write them. The evidence showed that [the author] had 'unlimited options as to the selection and arrangement of the 7000 lines Google copied.' This was not a situation where [the author] was selecting among preordained names and phrases to create its packages… Because 'alternative expressions [we]re available,' there is no merger.").

25

26

27

28

[155]  Instruction No. 1.2, *Ninth Circuit Manual of Model Civil Jury Instructions* (2007).

1

**DISPUTED: Arista's Final Instruction No. 60 re Copyright—Merger**

2

[Arista addresses the merger doctrine in its "Copyright—Ideas and Expression" instruction

3

(Disputed Instruction 27), where the doctrine belongs.  To the extent the Court wishes to give a

4

separate Merger instruction, Arista proposes the following.]

5

If an idea and the expression of that idea merge, the expression will only be protected by

6

copyright law if the alleged copying of that expression is nearly identical.  If the idea underlying

7

the copyrighted work can be expressed in only one way or only a few ways, the expression of that

8

idea will not constitute copyright infringement.[156]  This is known as the doctrine of "merger."

9

10

**Arista's Position:**

11

12

Arista proposes incorporating the instruction on merger inti the "Ideas and Expression"
instruction (Disputed Instruction 27) because that is its most natural place.  Regardless if where it

13

goes, Arista proposes using the supplemental merger instruction provided by Ninth Circuit Model
Jury Instruction 17.3 (citing *Apple Computer, Inc. v. Microsoft Corp.*, 35 F.3d 1435, 1444 (9th

14

Cir. 1994); *CDN, Inc. v. Kapes*, 197 F.3d 1256, 1261 (9th Cir.1999)) (quoting *Ets-Hokin*, 225 F.3d
1068, 1082 (9th Cir. 2000) ("The merger doctrine "will not protect a copyrighted work from

15

infringement if the idea underlying the copyrighted work can be expressed in only one way, lest
there be a monopoly on the underlying idea.")).  The phrase "or only a few ways," which Arista

16

added, stems from ABA Model Jury Instruction 1.4.7 (Copyright, Trademark, and Trade Dress

17

Litigation) (citing cases and treatises); *see also Oracle Am., Inc. v. Google Inc.*, 750 F.3d 1339,
1359 (Fed. Cir. 2014), cert. denied, 135 S. Ct. 2887, 192 L. Ed. 2d 948 (2015) ("[W]hen there are

18

a limited number of ways to express an idea, the idea is said to 'merge' with its expression, and
the expression becomes unprotected.").  Cisco proposes the equivalent phrase "or a limited

19

number of ways."

20

Cisco's merger instruction insists without any authority that merger is an affirmative

21

defense.  It is not.  Cisco bears the burden of proving originality and protectability.  Merger is part

22

23

[156] Ninth Circuit Model Jury Instruction 17.3 Supplemental Instruction for merger defense
(citing *Apple Computer, Inc. v. Microsoft Corp.*, 35 F.3d 1435, 1444 (9th Cir. 1994); *CDN, Inc. v.

24

Kapes*, 197 F.3d 1256, 1261 (9th Cir.1999)) (quoting *Ets-Hokin*, 225 F.3d 1068, 1082 (9th Cir.
2000) ("The merger doctrine "will not protect a copyrighted work from infringement if the idea

25

underlying the copyrighted work can be expressed in only one way, lest there be a monopoly on
the underlying idea.").  The phrase "or only a few ways" stems from ABA Model Jury Instruction

26

1.4.7 (Copyright, Trademark, and Trade Dress Litigation) (citing cases and treatises); *see also
Oracle Am., Inc. v. Google Inc.*, 750 F.3d 1339, 1359 (Fed. Cir. 2014), cert. denied, 135 S. Ct.

27

2887, 192 L. Ed. 2d 948 (2015) ("[W]hen there are a limited number of ways to express an idea,
the idea is said to 'merge' with its expression, and the expression becomes unprotected.").

28

1   and parcel of Cisco's burden, and Cisco points to no authority holding otherwise.  *See Ets-Hokin*
2   *v. Skyy Spirits, Inc.*, 225 F.3d 1068, 1082 (9th Cir. 2000) (holding merger doctrine is a "defense[]
    to infringement").

**DISPUTED: Cisco's Final Instruction No. 61 re Copyright—Affirmative Defense: Scènes À Faire**

To show that the infringed portions of Cisco's user interface are scènes à faire material, Arista must show that, at the time Cisco created the user interface—not at the time Arista copied it—external factors other than Cisco's creativity dictated that Cisco select, arrange, organize and design its original features in the manner it did.  The scènes à faire doctrine depends on the circumstances presented to the creator at the time of creation, not the circumstances presented to the copier at the time it copied.[157]

Arista has the burden of proving this defense by a preponderance of the evidence.[158]

**Cisco's Position:**

Cisco's proposed instruction is a concise, neutral and accurate description of the scènes à faire affirmative defense.  Cisco's proposed language directly mirrors the legal standard, which states that scènes à faire "identifies and excludes from protection against infringement expression whose creation 'flowed naturally from considerations external to the author's creativity.'"  *Oracle Am., Inc. v. Google Inc.*, 750 F.3d 1339, 1358 (Fed. Cir. 2014).  Thus, Cisco's instruction directs that the defense applies if "external factors other than Cisco's creativity" dictated its protectable expression.  Further, Cisco's cited authority includes the direction that: (1) "the focus … is on the circumstances presented to the creator, not the copier," *id.* at 1364; and (2) the relevant time is "the time of creation," *id.*

The Court should reject Arista's proposed instruction, which is not neutral, not concise, and not accurate.  *First*, Arista's first two paragraphs are irrelevant insofar as they concern literary "plot devices, incidents, characters, or settings."  This is not a case about literature but rather a case about a user interface.   It would confuse, rather than assist, the jury to instruct it about *Romeo and Juliet* or other literary works in the very different context of a user interface.

---

[157]    *Oracle Am., Inc. v. Google Inc.*, 750 F.3d 1339, 1358 (Fed. Cir. 2014) ("The court's analytical focus must be upon the external factors that dictated [the author's] selection of classes, methods, and code—not upon what Google encountered at the time it chose to copy those groupings and that code. '[T]he scenes a faire doctrine identifies and excludes from protection against infringement expression whose creation 'flowed naturally from considerations external to the author's creativity.'"); *id.* at 1364 ("the focus of the scenes a faire doctrine is on the circumstances presented to the creator, not the copier"); *id.* at 1364 (scènes à faire must be determined at the time of creation).

[158]    Instruction No. 1.2, *Ninth Circuit Manual of Model Civil Jury Instructions* (2007).

*Second*, Arista's third paragraph is improper because it refers to (and rests on authority concerning) computer programming and supposed standard practices in such programming. This case, however, is not about a computer program; it is rather about a user interface that is visible to a human operator and that thus has no necessary or standard form of expression. The mere fact that a particular user interface becomes widely used after its creation does not mean that it was "standard" at the time of its creation. *See* Cisco's Proposed Instruction No. 28 (Industry Standard Not Relevant), *supra*; *cf.* Order on Daubert Motions at 2-8 (excluding expert testimony purporting to opine on a "*de facto* industry standard" and whether there is "widespread use [of it] throughout the industry").

*Third*, even if computer programming cases were relevant in this user interface case, Arista's proposed language in its third paragraph is not based on any cited Ninth Circuit authority, but rather case law of other Circuits. For example, Cisco's proposed instruction that scènes à faire applies to "hardware standards," "software standards," "compatibility requirements," "computer manufacturer design standards," "target industry practices," and "business practices and technical requirements of the end user" are not in any Ninth Circuit citations and thus should be rejected. Further, to the extent that such cases have any persuasive authority, they largely related not to user interfaces like Cisco's, but rather to computer programming. Moreover, Arista's cited case of *Sega Enterprises Ltd. v. Accolade, Inc.*, 977 F.2d 1510, 1524 (9th Cir. 1992), makes no mention of scènes à faire at all but rather addresses functionality, a separate concept which is addressed in other instructions herein. *See supra* Instruction No. 27 (Ideas and Expressions). Finally, Arista's instruction is prejudicial in that it unnecessarily includes examples of what it purports are scènes à faire but no examples of what are not, thus prejudicing Cisco; the most neutral and balanced way to present the legal test, as Cisco has proposed, would not inject biased examples that are not even established as proper under the applicable law.

*Fourth*, Arista's third paragraph incorrectly states the standard. For example, Arista fails to state that the defense necessarily fails where an author, at the time of creation, has more than one or a limited number of ways to express an underlying idea. Arista also fails to acknowledge that the inquiry focuses only on the author and not the infringer; and the only relevant time is the time of creation and not whether the expression has become useful or even commonplace subsequently. *See* Cisco's Proposed Instruction No. 28 (Industry Standard Not Relevant); *Oracle Am., Inc. v. Google Inc.*, 750 F.3d 1339, 1358 (Fed. Cir. 2014) ("The court's analytical focus must be upon the external factors that dictated [the author's] selection of classes, methods, and code—not upon what Google encountered at the time it chose to copy those groupings and that code. '[T]he scènes à faire doctrine identifies and excludes from protection against infringement expression whose creation 'flowed naturally from considerations external to the author's creativity.'"); *id.* at 1364 (scènes à faire must be determined at the time of creation, and "the focus of the scènes à faire doctrine is on the circumstances presented to the creator, not the copier"). Arista in fact suggests that the moment it elected to copy Cisco's protected expression is the relevant consideration by discussing "the right of software developers to ***adopt*** elements of a program," which has no basis in Arista's own cited authority. *See Computer Associates Int'l, Inc. v. Altai, Inc.*, 982 F.2d 693, 709 (2d Cir. 1992) (stating that a "programmer's freedom of design choice is often circumscribed by extrinsic considerations," and not referring to any supposed right to "adopt"). It is not relevant whether it was "virtually impossible" for Arista to write a program without using Cisco's protected expression, but rather whether it was impossible for ***Cisco***, at the time of creation, to create its protected expression in any way other than it did because external factors dictated as much. *Id.* Cisco's proposed instruction, in contrast, tracks the applicable legal

standard in a succinct and neutral manner: the relevant inquiry is whether "external factors" other than Cisco's creativity directed Cisco's choices in its expression; if they did not, the scènes à faire affirmative defense does not apply as a matter of law.

*Fifth*, the last sentence of the third paragraph should be rejected because it inappropriately suggests that the commonplace ideas or expressions discussed in the previous sentence are by definitions "necessary incidents of an idea." This is untrue as a matter of law and logic, and the cases Arista cites in support of these sentences do not conflate these distinct concepts, as Arista has done.

*Sixth*, Arista's proposed final paragraph should be rejected because it has no relevance to this particular case and in any event is contrary to law, as the proper inquiry focuses only on whether Cisco had sufficient alternative methods of expression, and not whether "other authors" later desired to use Cisco's expression. *See* Cisco's Proposed Instruction No. 28 (Industry Standard Not Relevant).

*Seventh*, Arista's instruction fails to instruct that Arista bears the burden of proving this affirmative defense. Instruction No. 1.2, *Ninth Circuit Manual of Model Civil Jury Instructions* (2007).

*Eighth*, Cisco has informed Arista in advance of this submission that it revised its own proposed jury instruction as below, by adding two sentences to the first paragraph (emphasis added) as follows:

> To show that the infringed portions of Cisco's user interface are scènes à faire material, Arista must show that, at the time Cisco created the user interface—not at the time Arista copied it—external factors other than Cisco's creativity dictated that Cisco select, arrange, organize and design its original features in the manner it did.[159] **For example, under the scènes à faire doctrine, the general idea of overlapping windows on a computer screen may be copied, but the particular creative expression of how those windows overlap may not.[160] That is, the scènes à faire doctrine is not a defense to Arista's copying of Cisco's particular expression; it is only a defense to Arista's copying of an idea.[161]**

---

[159] *Oracle Am., Inc. v. Google Inc.*, 750 F.3d 1339, 1358 (Fed. Cir. 2014) ("The court's analytical focus must be upon the external factors that dictated [the author's] selection of classes, methods, and code—not upon what Google encountered at the time it chose to copy those groupings and that code. '[T]he scènes à faire doctrine identifies and excludes from protection against infringement expression whose creation 'flowed naturally from considerations external to the author's creativity.'"); *id.* at 1364 ("the focus of the scènes à faire doctrine is on the circumstances presented to the creator, not the copier"); *id.* at 1364 (scènes à faire must be determined at the time of creation).

[160] *Apple Computer, Inc. v. Microsoft Corp.*, 35 F.3d 1435, 1444 (9th Cir. 1994) ("protectable substantial similarity cannot be based on the mere use of overlapping windows, although, of course, Apple's ***particular expression*** may be protected") (emphasis in original).

[161] *Apple Computer, Inc. v. Microsoft Corp.*, 35 F.3d 1435, 1444 (9th Cir. 1994) (when similar features "are 'as a practical matter indispensable, or at least standard, in the treatment of a

1

2

3

> The scènes à faire doctrine depends on the circumstances presented to the creator at the time of creation, not the circumstances presented to the copier at the time it copied.[162]

These sentences are  supported by proper authority, and will be included in a future filing after the parties meet and confer.

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

---

given ***idea***,' they are treated like ideas") (emphasis added, brackets omitted) (quoting *Frybarger v. IBM Corp.*, 813 F.2d 525, 530 (9th Cir. 1987).

[162]  *Oracle Am., Inc. v. Google Inc.*, 750 F.3d 1339, 1358 (Fed. Cir. 2014) ("The court's analytical focus must be upon the external factors that dictated [the author's] selection of classes, methods, and code—not upon what Google encountered at the time it chose to copy those groupings and that code. '[T]he scènes à faire doctrine identifies and excludes from protection against infringement expression whose creation 'flowed naturally from considerations external to the author's creativity.'"); *id.* at 1364 ("the focus of the scènes à faire doctrine is on the circumstances presented to the creator, not the copier"); *id.* at 1364 (scènes à faire must be determined at the time of creation).

1

**DISPUTED: Arista's Final Instruction No. 61 re Copyright—Scènes À Faire[163]**

2   Arista asserts that its work does not infringe Cisco's copyright because of the doctrine of

3   scènes à faire.  Under the doctrine of scènes à faire, which means "scene setting," a standard or

4   typical theme, setting, or background that is common to a large number of works, such as a

5   common plot device, is unprotected matter that may be copied.  For example, the doctrine applies

6   to plot devices, incidents, characters, or settings that are, as a practical matter, indispensable, or at

7   least standard, in the treatment of certain subjects.  These elements of a work are given only

8   limited copyright protection, because they are not likely to be original and because, as a type of

9   idea, they are necessary for the creation of other works.

10   However, even though these stock literary devices may be copied, the particular way in

11   which they are expressed or implemented in a work, for example, in the details of a plot or the

12   particular words used to describe characters and settings, are still protected matter.  Therefore,

13   Arista may still be liable for infringement if it went beyond copying the general themes or devices

14   used in a literary work and went on to copy the particular way in which they were expressed.  For

15   example, if Shakespeare's *Romeo and Juliet* were copyrighted, an author could still write a play

16   about two young people who fell in love but came to a tragic end because of a feud between their

17   families.  But the author could not copy the detailed plot of Shakespeare's play, even if he did not

18   copy Shakespeare's language.

19   Scènes à faire applies in the context of computer programs as well, because in certain

20   instances, it is virtually impossible to write a program to perform particular functions in a specific

21   computing environment without employing standard techniques.[164]  Scènes à faire protects the

22   right of software developers to adopt elements of a program dictated by practical realities, such as

23   

24   [163] ABA Model Jury Instructions, Copyright, Trademark, and Trade Dress Litigation, Instruction 1.4.8.  The Ninth Circuit does not have an analogous model jury instruction.  *See also* 4-13 Nimmer on Copyright § 13.03[B][4].

25   

26   [164] 4-13 Nimmer on Copyright § 13.03[F][3] ("These doctrines of scenes a faire and lack of originality apply particularly to computer programs, because in many instances, it is virtually impossible to write a program to perform particular functions in a specific computing environment without employing standard techniques."); *Computer Associates Intern., Inc. v. Altai, Inc.* 982 F.2d 693, 709–10 (2d Cir. 1992) (quoting Nimmer).

27   

28

1    by hardware standards and mechanical specifications, software standards and compatibility

2    requirements, computer manufacturer design standards, target industry practices, the business

3    practices and technical requirements of the end user, and standard computer programming

4    practices.[165]  Cisco may not claim copyright protection of an idea and expression that is, if not

5

6    [165] *Oracle Am., Inc. v. Google Inc.*, 750 F.3d 1339, 1363 (Fed. Cir. 2014) ("In the computer
      context, the scene a faire doctrine denies protection to program elements that are dictated by

7    external factors such as 'the mechanical specifications of the computer on which a particular
      program is intended to run' or 'widely accepted programming practices within the computer

8    industry.") (internal quotation marks omitted); *Satava v. Lowry*, 323 F.3d 805, 807 (9th Cir. 2003)
      (The Copyright Act "denie[s] artists the exclusive right to ideas and standard elements in their

9    works, thereby preventing them from monopolizing what rightfully belongs to the public . . . .
      [E]xpressions that are standard, stock, or common to a particular subject matter or medium are not

10   protectable under copyright law."); *Apple Computer, Inc. v. Microsoft Corp.*, 35 F.3d 1435, 1444
      (9th Cir. 1994) ("The doctrine of scenes a faire is closely related . . . . [W]hen similar features in a

11   videogame are as a practical matter indispensable, or at least standard, in the treatment of a given
      idea, they are treated like ideas and are therefore not protected by copyright.") (internal citations,

12   quotation marks, and alterations omitted);*Computer Associates Int'l, Inc. v. Altai, Inc.*, 982 F.2d
      693, 709–10 (2d Cir. 1992) ("[A] programmer's freedom of design choice is often circumscribed

13   by extrinsic considerations such as (1) the mechanical specifications of the computer on which a
      particular program is intended to run; (2) compatibility requirements of other programs with which

14   a program is designed to operate in conjunction; (3) computer manufacturers' design standards; (4)
      demands of the industry being serviced; and (5) widely accepted programming practices within the

15   computer industry."); *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 387 F.3d 522, 535
      (6th Cir. 2004) ("In the computer-software context, the doctrine means that the elements of a

16   program dictated by practical realities—e.g., by hardware standards and mechanical specifications,
      software standards and compatibility requirements, computer manufacturer design standards,

17   target industry practices, and standard computer programming practices—may not obtain
      protection."); *Gates Rubber Co. v. Bando Chem. Indus., Ltd.*, 9 F.3d 823, 838 (10th Cir. 1993)

18   ("The scenes a faire doctrine also excludes from protection those elements of a program that have
      been dictated by external factors.  In the area of computer programs these external factors may

19   include: hardware standards and mechanical specifications, software standards and compatibility
      requirements, computer manufacturer design standards, target industry practices and demands, and

20   computer industry programming practices.") (citing cases and Nimmer) (internal citations
      omitted); *Sega Enterprises Ltd. v. Accolade, Inc.*, 977 F.2d 1510, 1524 (9th Cir. 1992), as

21   amended (Jan. 6, 1993) ("[C]omputer programs are, in essence, utilitarian articles—articles that
      accomplish tasks. As such, they contain many logical, structural, and visual display elements that

22   are dictated by the function to be performed, by considerations of efficiency, or by external factors
      such as compatibility requirements and industry demands."); *Frybarger v. Int'l Bus. Machines

23   Corp.*, 812 F.2d 525, 530 (9th Cir. 1987) (discussing *scenes a faire*: "[W]e believe that each of the
      similar features constitutes a basic idea of the videogames and, to the extent each feature is

24   expressive, that the expression is as a practical matter indispensable, or at least standard, in the
      treatment of a given idea.") (internal quotation marks and alterations omitted); 4-13 Nimmer on

25   Copyright § 13.03[F][3] (discussing "hardware standards," "software standards," "computer

1    standard, then commonplace in the computer software industry.[166]  Such elements are not

2    protected by copyright laws because granting copyright protection to the necessary incidents of an

3    idea would effectively afford a monopoly to the first programmer to express those ideas.[167]

4        In drawing the line between protected and unprotected matter, you should follow the

principle that copyright protection should not extend so far that it will interfere with the "tools of

6    the trade" that other authors should be able to use in creating future works.

7

8    **Arista's Position:**

9        Arista's scènes à faire instruction comes from ABA Model Jury Instruction for Copyright

10   1.4.8 (The Ninth Circuit does not have a model for scènes à faire).  Cisco's is drafted from whole
     cloth and plainly designed to minimize this important issue.

11        First, Cisco wrongly states, without any authority, that scènes à faire is an affirmative

12   defense.  Scènes à faire is a defense to infringement, not an affirmative defense, because it stems

     from the originality requirement, which is Cisco's burden to prove.  4-13 Nimmer on Copyright §

13   13.03[F][3].  The ABA model instruction acknowledges this—it makes no mention of Arista

14   bearing the burden to prove scènes à faire.  Likewise, the Ninth Circuit stated in *Ets-Hokin v. Skyy*
     *Spirits, Inc.*, 225 F.3d 1068, 1082 (9th Cir. 2000), that scènes à faire is a "defense[] to

15   _____

16   manufacturers' design standards," target industry practices," "the business practices and technical

17   requirements of the end user," and "computer industry programming practices" in sub-sections
     [a]–[e]).

18   [166] *Telemarketing Res. v. Symantec Corp.*, No. C88-20352 RPA, 1989 WL 200350, at *5 (N.D.
     Cal. Sept. 6, 1989), *aff'd in part, vacated in part, remanded sub nom. Brown Bag Software v.*

19   *Symantec Corp.*, 960 F.2d 1465 (9th Cir. 1992) ("Plaintiffs may not claim copyright protection of
     an idea and expression that is, if not standard, then commonplace in the computer software

20   industry."); *Satava v. Lowry*, 323 F.3d 805, 807 (9th Cir. 2003) (The Copyright Act "denie[s]

21   artists the exclusive right to ideas and standard elements in their works, thereby preventing them
     from monopolizing what rightfully belongs to the public . . . .  [E]xpressions that are standard,

22   stock, or common to a particular subject matter or medium are not protectable under copyright
     law.").

23   [167] *Gates Rubber Co. v. Bando Chem. Indus., Ltd.*, 9 F.3d 823, 838 (10th Cir. 1993) ("Granting

24   copyright protection to the necessary incidents of an idea would effectively afford a monopoly to
     the first programmer to express those ideas."); *Satava v. Lowry*, 323 F.3d 805, 807 (9th Cir. 2003)

25   (The Copyright Act "denie[s] artists the exclusive right to ideas and standard elements in their
     works, thereby preventing them from monopolizing what rightfully belongs to the public . . . .

26   [E]xpressions that are standard, stock, or common to a particular subject matter or medium are not
     protectable under copyright law."); *Mattel, Inc. v. MGA Entm't, Inc.*, 616 F.3d 904, 913 (9th Cir.

27   2010), *as amended on denial of reh'g* (Oct. 21, 2010) (authors cannot copyright ideas,

28   "[o]therwise, the first person to express any idea would have a monopoly over it.").

-158-                    Case No. 5:14-cv-5344-BLF
1121178.02

infringement." *See also* 4-13 Nimmer on Copyright § 13.03[B][3], [B][4].  (The *Oracle v. Google* Federal Circuit decision incorrectly states that scènes à faire is an affirmative defense, but the citations to Ninth Circuit law and the rest of the discussion in the case make clear that it is not. *See* 750 F.3d 1339, 1358 (Fed. Cir. 2014).

Second, Cisco's proposed instruction states that the asserted elements are "original features," which is a question for the jury to decide, and should not be stated in a jury instruction as though it were true.

Third, Cisco's proposed instruction barely describes the scènes à faire defense.  Out of three sentences, half of one explains the concept, and the rest of the instruction is a ream of qualifiers.  It is plainly one-sided and unfair.

Finally, Arista proposes an addition to the ABA model instruction to explain how scènes à faire applies in the context of computers.  The ABA model is focused on literary works like *Romeo and Juliet*.  There is a significant body of Ninth Circuit case law applying scènes à faire to computer programs from which the Court can draw to craft an appropriate instruction.  Arista's proposal incorporates quotations from those cases and related authorities.  The Court should adopt Arista's proposed instruction because it is neutral, tied to the facts of the case, and faithful to the law.

**DISPUTED: Cisco's Position on Arista's Final Instruction No. 62 re Copyright—Affirmative**

**Defense: Copyright Misuse**

Cisco's position is that no such instruction should be given.


**Cisco's Position:**

No such instruction should be given.  Instruction No. 17.27 of the *Ninth Circuit Manual of Model Civil Jury Instructions* provides that "the Ninth Circuit has not yet decided whether the equitable defense of copyright misuse should be submitted to the jury or is an issue for the court to decide."  However, because copyright misuse is an equitable defense, it is not for the jury to decide.  *See Omega S.A. v. Costco Wholesale Corp.*, 776 F.3d 692, 699-700 (9th Cir. 2015) (Wardlaw, J., concurring in the judgment) ("We expressly adopted copyright misuse as an equitable defense to a claim of infringement") (citation omitted); *Vernor v. Autodesk, Inc.*, 621 F.3d 1102, 1115 (9th Cir. 2010) ("[c]opyright misuse is an equitable defense"); *Granite State Ins. Co. v. Smart Modular Techs., Inc.*, 76 F.3d 1023, 1027 (9th Cir. 1996) ("A litigant is not entitled to have a jury resolve a disputed affirmative defense if the defense is equitable in nature.").

If the Court should disagree, Cisco respectfully reserves its right to propose a proper instruction on copyright misuse.

### DISPUTED: Arista's Final Instruction No. 62 re Copyright—Affirmative Defense: Copyright Misuse[168]

Arista claims it is not liable for copyright infringement because Cisco misused its copyrights. While the Copyright Act gives a copyright owner a limited monopoly in a copyrighted work, the owner's attempts to extend the scope of this monopoly may under certain circumstances constitute misuse. If you find that Cisco misused its copyrights, it cannot assert an infringement claim against Arista.

To prevail upon its claim that Cisco misused its copyrights, Arista must prove that Cisco attempted to use the existence of its copyrights to prevent Arista from using unprotected elements of the copyrighted work, or to prevent Arista from undertaking activity safeguarded by public policy, such as the policies supporting fair use.

Arista has the burden of proof to establish Cisco's copyright misuse by a preponderance of the evidence. If you find that Arista has satisfied this burden of proof, then you should find in favor of Arista on the issue of copyright infringement.

---

[168] ABA Model Jury Instruction, 1.6.9.

FIRST AMENDED UNDISPUTED AND DISPUTED PROPOSED JURY INSTRUCTIONS
1121178.02

**DISPUTED: Cisco's Final Instruction No. 63 re Copyright—Willful Infringement[169]**

Arista's copyright infringement is considered willful if Cisco proves both of the following elements by a preponderance of the evidence:

1. Arista infringed the copyright to one or more of Cisco's copyrighted works; and

2. Arista either knew its acts infringed the copyright or Arista's actions were the result of reckless disregard for, or willful blindness to, Cisco's copyrights.

**Cisco's Position:**

Cisco's proposed instruction directly tracks Instruction No. 17.36 from the *Ninth Circuit Manual of Model Civil Jury Instructions* ("*Model*") in form and substance.

Arista's proposed instruction is identical, except that it has added an extra sentence at the end: "Arista may refute evidence of willful infringement by establishing its good faith belief in the innocence of its conduct, and that it was reasonable in holding such a belief." This statement is not part of the primary *Model*, and Arista has not provided a justification for departure from the *Model*. Further, Arista's proposed addition is superfluous, as one who has good faith belief of innocence and a reasonable in such a belief cannot have the requisite knowledge of infringement.

---

[169] Instruction No. 17.27, *Ninth Circuit Manual of Model Civil Jury Instructions* (2007); *Louis Vuitton Malletier, S.A. v. Akanoc Sols., Inc.*, 658 F.3d 936, 944 (9th Cir. 2011) ("To prove 'willfulness' under the Copyright Act, the plaintiff must show (1) that the defendant was actually aware of the infringing activity, or (2) that the defendant's actions were the result of reckless disregard for, or willful blindness to, the copyright holder's rights."); *Washington Shoe Co. v. A-Z Sporting Goods Inc.*, 704 F.3d 668, 674 (9th Cir. 2012) ("We have explained that a finding of 'willfulness' in the copyright context can be based on either 'intentional' behavior or merely 'reckless' behavior, and that to prove 'willfulness' under the Copyright Act, the plaintiff must show (1) that the defendant was actually aware of the infringing activity, or (2) that the defendant's actions were the result of reckless disregard for, or willful blindness to, the copyright holder's rights." (internal citation, quotation marks, and brackets omitted)); *id.* ("To prove willfulness, plaintiffs must show that the infringer had actual or constructive knowledge that it was infringing the plaintiffs' copyrights or else acted in reckless disregard of the high probability that it was infringing plaintiffs' copyrights."); *In re Barboza*, 545 F.3d 702, 707 (9th Cir. 2008) ("The term 'willful' as used in copyright infringement case … can be based on either intentional behavior or merely reckless behavior." (quotation marks omitted)).

**DISPUTED: Arista's Final Instruction No. 63 re Copyright—Willfulness**[170]

Copyright infringement is considered willful if Cisco proves both of the following elements by a preponderance of the evidence:

1. Arista engaged in acts that infringed the copyright; and

2. Arista knew that those acts infringed the copyright, or Arista acted with reckless disregard for, or willful blindness to, the copyright holder's rights.

Arista may refute evidence of willful infringement by establishing its good faith belief in the innocence of its conduct, and that it was reasonable in holding such a belief.

**Arista's Position:**

Arista objects to a jury instruction on willful copyright infringement. The jury should not be instructed on willful infringement because Cisco has not elected to receive an award of statutory damages, and Arista has not sought a deduction for its income or excess-profits taxes. *See* 17 U.S.C. § 504(c)(2) (a copyright owner can elect to receive statutory damages, and trial courts have discretion to enhance the damages, up to a statutory maximum, for willful infringement.); *Kamar Int'l, Inc. v. Russ Berrie & Co.*, 752 F.2d 1326, 1331-32 (9th Cir.1984) (no deduction of such taxes if infringement is willful). Those two issues—neither of which is in dispute in this case—are the only potential relevance of willful infringement. *See Oracle v. Google*, 131 F. Supp. 3d 946, 951 (N.D. Cal. 2015) ("[A]n examination of the decisional law [in the Ninth Circuit] on this issue finds no authoritative support for altering the calculus of 'deductible expenses' where the infringement at issue was willful, except as to income and excess profits taxes."). As Judge Alsup explained in *Oracle*, "our court of appeals has not explicitly found that even federal income or excess profits taxes should be precluded as deductible expenses in calculating a willful copyright infringer's profits. Nevertheless, this order finds that the most likely outcome in our circuit will be that such taxes will be disallowed for a 'deliberate plagiarist,' but all other categories of deductible expenses will be allowed, even for a 'deliberate plagiarist,' so long as it is proven they contributed to generating the infringement revenue." *Id.* at 952–53.

Finally, to the extent Cisco argues that willfulness is relevant to Arista's laches defense, the parties agree that copyright laches is an equitable defense, tried by the Court and not the jury. Accordingly, there is no need to instruction the jury on willful infringement, and doing so would only confuse them.

---

[170] Manual of Model Civil Jury Instructions (2007 Ed., last updated 6/2016), Instruction No. 17.36 ("COPYRIGHT—DAMAGES—WILLFUL INFRINGEMENT (17 U.S.C. § 504(c)(2))"); Comments to the Manual of Model Civil Jury Instructions (2007 Ed.); *Peer Int'l Corp. v. Pausa Records, Inc.*, 909 F.2d 1332, 1335–36 (9th Cir. 1990); *Evergreen Safety Council v. RSA Network Inc.*, 697 F.3d 1221, 1228 (9th Cir. 2012).

**STIPULATED: Final Instruction No. 64 re Copyright—Damages**[171]

It is the duty of the Court to instruct you about the measure of damages. By instructing you on damages, the Court does not mean to suggest for which party your verdict should be rendered.

If you find for Cisco on its copyright infringement claim, you must determine Cisco's damages. Cisco is entitled to recover the actual damages suffered as a result of the infringement. In addition, Cisco is also entitled to recover any of Arista's profits attributable to the infringement, to the extent you did not already account for those profits in determining Cisco's actual damages. Cisco must prove damages by a preponderance of the evidence.

It is for you to determine what damages, if any, have been proved. Your award must be based upon evidence and not upon speculation, guesswork or conjecture.

---

[171] Instruction Nos. 5.1 & 17.31, *Ninth Circuit Manual of Model Civil Jury Instructions* (2007); 17 U.S.C. § 504(b); *Synopsys, Inc. v. ATopTech, Inc.*, No. 13-cv-2965 (N.D. Cal.), ECF No. 688 at 16 (Final Instructions).

**DISPUTED: Cisco's Final Instruction No. 65 re Copyright—Actual Damages[172]**

Cisco is entitled to recover the actual damages suffered as a result of Cisco's infringement. Actual damages means the amount of money adequate to compensate the copyright owner for the reduction in the fair market value of the copyrighted work caused by the infringement. Actual damages may be measured by the profits of the copyright owner lost due to the infringement, referred to as "lost profits."  In this case, actual damages in the form of lost profits are the amount that Cisco would have earned but for Arista's infringement.

**Cisco's Position:**

Both Cisco and Arista's proposed instructions begin with the first two sentences from Instruction No. 17.32 of the *Ninth Circuit Manual of Model Civil Jury Instructions* ("*Model*"). As the *Model* then addresses a theory of actual damages—*i.e.*, a hypothetical license—that Cisco is not pursuing, both Cisco and Arista's proposed instructions thereafter deviate from the *Model*. Cisco's proposed instruction addresses the legal rules governing the theory of actual damages that Cisco is pursuing based on the lost profits of the copyright owner. Cisco's proposed instruction restates the lost profits measure of actual damages from *Polar Bear Prods., Inc. v. Timex Corp.*, 384 F.3d 700, 708 (9th Cir. 2004) ("Actual damages are usually determined by the loss in the fair market value of the copyright, measured by the profits lost due to the infringement or by the value of the use of the copyrighted work to the infringer."). Cisco noted that this form of actual damages is "referred to as 'lost profits,'" as that is likely how the jury will have heard this measure of damages discussed throughout trial. The parties do not dispute the last sentence of the first paragraph of this instruction.

The second paragraph of Arista's proposed instruction should be rejected. Arista's proposed second paragraph would instruct:

> To collect actual damages, Cisco must establish with reasonable probability that
> the infringement caused it to lose revenue, and the amount of that lost
> revenue. You may not make an award of actual damages that is unduly
> speculative. If you conclude that Cisco would have incurred increased expenses

---

[172]  Instruction No. 17.32, *Ninth Circuit Manual of Model Civil Jury Instructions* (2007); *Synopsys, Inc. v. ATopTech, Inc.*, No. 13-cv-2965 (N.D. Cal.), ECF No. 688 at 17 (Final Instructions); *Oracle Corp. v. SAP AG*, 765 F.3d 1081, 1087 (9th Cir. 2014) ("'actual damages' can be awarded in the form of lost profits"); 5 NIMMER ON COPYRIGHT § 14.02[A][1] ("[T]he plaintiff's damages may be said to equal the profits that the plaintiff might have accrued but for the defendant's infringement."); *Polar Bear Prods., Inc. v. Timex Corp.*, 384 F.3d 700, 708 (9th Cir. 2004) ("Actual damages are usually determined by the loss in the fair market value of the copyright, measured by the profits lost due to the infringement or by the value of the use of the copyrighted work to the infringer.").

related to its damages, such as increased overhead costs, you must deduct those expenses when calculating Cisco's actual damages.

Arista's proposed instruction is misleading, unsupported by the *Model* and misstates the law.

*First*, Arista's proposed instruction is duplicative of the causation language proposed by both parties in Instruction No. 64 (Copyright—Damages), which states: "Cisco is entitled to recover the actual damages suffered *as a result of* the infringement." Adding additional causal language in later instructions will cause the jury to believe—incorrectly—that Cisco bears a heightened burden on actual damages when it does not. Similarly, there is no basis for instructing the jury that its damages award cannot be "unduly speculative," when the Court has just instructed the jury in Instruction No. 64 that: "Your award must be based upon evidence and not upon speculation, guesswork, or conjecture." A second such instruction would bias the jury against a damages award to Cisco's prejudice.

*Second*, there is no basis to instruct the jury that Cisco must establish with "reasonable probability" that Arista's infringement caused it to lose revenue and the amount of that lost revenue, as Arista proposes. Contrary to Arista's footnotes, the term "reasonable probability" appears nowhere in 17 U.S.C. § 504(b), *Polar Bear*, 384 F.3d at 709 or *Taylor v. Meirick*, 712 F.2d 1112, 1121 (7th Cir. 1983). The parties have agreed that the jury should be instructed, pursuant to Instruction No. 64 (Copyright—Damages), that: "Cisco must prove damages by a preponderance of the evidence." To add some undefined additional standard is both unnecessary and needlessly confusing to the jury.

*Third*, the final sentence of the instruction Arista proposes reflects a concept that has never been applied by the Ninth Circuit and is drawn instead from non-binding, out-of-Circuit authority, *Taylor v. Meirick*, 712 F.2d 1112, 1121 (7th Cir. 1983). Importantly, this concept conflicts with the Supreme Court's requirement in *Harper & Row Publishers, Inc. v. Nation Enterprises*, that Cisco only show a "loss of *revenue*," and "the burden properly shifts to the infringer to show that this damage would have occurred had there been no taking of copyrighted expression." 471 U.S. 539, 567 (1985). Because Arista's instruction omits and conflicts with this burden-shifting approach, it is an incorrect statement of law and will lead to error.

*Fourth*, in any event, the fundamental concern underlying *Taylor*, 712 F.2d at 1121, that "a loss of revenue is not the same thing as a loss of profits," has been duly addressed by both parties' damages experts. Unlike in *Taylor v. Meirick*, where Taylor did not subtract a penny from his estimate of lost sales revenues, implying "improbably, that he could have made all the lost sales at zero cost," 712 F.2d at 1121, both Cisco and Arista's damages experts have calculated Cisco's lost profits net expenses. In view of that fact, Arista's proposed instruction appears to invite unwarranted speculation, contrary to any legal precedent, regarding some other category of "increased expenses" and thus should be rejected.

1121178.02

**DISPUTED: Arista's Final Instruction No. 65 re Copyright—Actual Damages**[173]

The copyright owner is entitled to recover any actual damages suffered as a result of the infringement. Actual damages means the amount of money adequate to compensate the copyright owner for the reduction of the fair market value of the copyrighted work caused by the infringement. In this case, actual damages in the form of lost profits are the amount that Cisco would have earned but for Arista's infringement.

To collect actual damages, Cisco must establish with reasonable probability that the infringement caused it to lose revenue, and the amount of that lost revenue.[174] You may not make an award of actual damages that is unduly speculative. If you conclude that Cisco would have incurred increased expenses related to its damages, such as increased overhead costs, you must deduct those expenses when calculating Cisco's actual damages.

**Arista's Position:**

The first two sentences of Arista's actual damages instruction comes directly from the Ninth Circuit Model Instruction 17.32.  This instruction is necessary to introduce the jurors to the concept of actual damages and the legal standard that governs it.  Cisco's introduction fails to provide any definition of actual damages.  The final sentence of first paragraph of Arista's instruction ("In this case, actual damages in the form of lost profits are the amount that Cisco would have earned but for Arista's infringement") comes from Cisco's proposed actual damages instruction, and reflects that Cisco's claim is premised on lost profits.

The second paragraph of Arista's instruction explains that Cisco must establish a causal link between the alleged infringement and its actual damages.  Cisco has not, and cannot, dispute that this is the law.  In *Polar Bear Prods., Inc. v. Timex Corp.*, 384 F.3d 700 (9th Cir. 2004), the Ninth Circuit "reiterate[d] the principle that a plaintiff in a copyright infringement action must establish a sufficient causal connection between the infringement and the infringer's profits it seeks to recover." *Id*. at 703; *see also id*. at 708 ("a causal link between the infringement and the monetary remedy sought is a predicate to recovery"); *Data Gen. Corp. v. Grumman Sys. Support Corp.*, 36 F.3d 1147, 1171 (1st Cir. 1994) (The plaintiff must "prove that the infringement was a proximate cause of its loss by demonstrating that the existence and amount of the loss was a natural and probable consequence of the infringement." (internal citations omitted)).  Arista's instruction also explains that an actual damages award must not be "speculative"—in other words, it must be "sufficiently supported by evidence." *Polar Bear,* 384 F.3d  at 708.

---

[173]   Ninth Circuit Model Jury Instruction, 17.32.
[174]  17 U.S.C. § 504(b); *Polar Bear Prods., Inc. v. Timex Corp.*, 384 F.3d 700, 709 (9th Cir. 2004); *Taylor v. Meirick,* 712 F.2d 1112, 1121 (7th Cir. 1983)

1121178.02

1    **DISPUTED: Cisco's Final Instruction No. 66 re Copyright—Infringer's Profits[175]**

2    In addition to actual damages, Cisco is entitled to any profits of Arista attributable to the

3    infringement.  You may not include in an award of profits any amount that you took into account

4    in determining actual damages.  You may make an award of Arista's profits only if you find that

5    Cisco showed a causal nexus between the profits it seeks and the copyright infringement.  In this

6    case, because Cisco seeks only direct profits, Cisco may satisfy its burden by showing that the

7    profits it seeks to recover derive directly from sales of the infringing products.[176]

8    Arista's profits are determined by subtracting all deductible expenses from Arista's gross

9    revenue.  Arista's gross revenue is all of Arista's revenue directly from the sale of any products

10   containing or using Cisco's copyrighted works.  Cisco has the burden of proving Arista's gross

11   revenue by a preponderance of the evidence.

12   Deductible expenses are the portion of Arista's operating costs, overhead costs, and

13   production costs incurred by Arista in producing Arista's gross revenue from the infringing

14   products.  However, if you find that Arista's infringement was willful, Arista's overhead costs,

15   federal income taxes and excess profits taxes will not be considered deductible expenses and

16   cannot be deducted from its profits.[177]  Arista has the burden of proving its expenses by a

17   preponderance of the evidence.

18   _____

19   [175]  Instruction No. 17.33, *Ninth Circuit Manual of Model Civil Jury Instructions* (2007);
20   *Synopsys, Inc. v. ATopTech, Inc.*, No. 13-cv-2965 (N.D. Cal.), ECF No. 688 at 18 (Final Instructions).

21   [176]  Order on Daubert Motions at  16 ("Importantly, Arista also acknowledged to the Court
22   that for establishing a royalty base, Cisco could satisfy its initial burden by showing that the direct profits are derived from the infringing products. …  Assuming that Cisco is seeking only direct
23   profits, Cisco must at least show that the profits it seeks to recover derive directly from the infringing products."); *Polar Bear Prods., Inc. v. Timex Corp.*, 384 F.3d 700, 708 (9th Cir. 2004);
24   *Brocade Commc'ns Sys. v. A10 Networks, Inc.*, No. 10-cv-3428-PSG, 2013 WL 831528, at *6 (N.D. Cal. Jan. 10, 2013) (noting that, to recover disgorgement of direct profits, a plaintiff may
25   satisfy the "causal link" requirement by showing the "gross revenues from the infringing product"); *see also, e.g., On Davis v. The Gap, Inc.*, 246 F.3d 152, 160 (2d Cir. 2001); *Taylor v.*
26   *Meirick*, 712 F.2d 1112, 1122 (7th Cir. 1983) (finding a prima facie case made by a showing that the proffered gross revenue is from the sale of the infringing product).

27   [177]  Instruction No. 17.36, *Ninth Circuit Manual of Model Civil Jury Instructions* (2007)
28   (comment); *Three Boys Music Corp. v. Bolton*, 212 F.3d 477, 487-88 (9th Cir. 2000) (in allocating

-168-                    Case No. 5:14-cv-5344-BLF

1121178.02

Unless you find that a portion of the profit from the sale of a product containing or using Cisco's copyrighted works is attributable to factors other than the copyrighted works, all of the profit is to be attributed to the infringement. Arista has the burden of proving by a preponderance of the evidence the portion of the profit, if any, attributable to factors other than the copyrighted works.

Arista's profits do not need to be calculated with mathematical or absolute exactness by either Cisco or Arista. The law requires only a reasonable approximation of an infringer's profits as a basis for determining the proper amount of damages. You should resolve any doubt as to the computation of costs or profits in favor of Cisco.[178]

Your apportionment, if any, of Arista's profits similarly does not need to be calculated with mathematical or absolute exactness. The law only requires that any apportionment be reasonable and just.[179]

---

profits, "non-willful infringers" were entitled to deduct from damage assessment income taxes and management fees actually paid); *Oracle Am., Inc. v. Google Inc.*, No. 10-cv-03561, 2015 U.S. Dist. LEXIS 126110 (N.D. Cal. Sept. 18, 2015) (noting the Ninth Circuit has not explicitly held that federal income or excess profits taxes are precluded as deductible expenses in calculating a willful copyright infringer's profits, but deeming that to be "the most likely outcome in our circuit."); *Polar Bear Prods., Inc. v. Timex Corp.*, 384 F.3d 700, 709 (9th Cir. 2004); *Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc.*, 772 F.2d 505, 515 (9th Cir. 1985); *Saxon v. Blann*, 968 F.2d 676, 681 (8th Cir. 1992) ("[o]verhead may not be deducted from gross revenues to arrive at profits when an infringement was deliberate or willful"); *Williams v. Bridgeport Music, Inc.*, No. 13-cv-6004, ECF No. 322 at Jury Instruction No. 38 (C.D. Cal. Mar. 10, 2015) ("Overhead costs may not be deducted where a party's infringement is willful."); *Jarvis v. A & M Records*, 827 F. Supp. 282, 294-95 (D.N.J. 1993) ("it is a question of fact whether these defendants did in fact act willfully[;]" "if a defendant's conduct is willful, overhead may not be deducted"); *Manufacturers Techs., Inc. v. Cams, Inc.*, 728 F. Supp. 75, 84 (D. Conn. 1989) (defendant's "taxes" and "overhead or 'allocated expenses'" not deductible because infringement was willful); 5 Nimmer on Copyright § 14.03[C][2]-[3].

[178] *Frank Music Corp. v. MGM, Inc.*, 772 F.2d 505, 514 (9th Cir. Cal. 1985) ("Any doubt as to the computation of costs or profits is to be resolved in favor of the plaintiff.").

[179] *Sheldon v. Metro-Goldwyn Pictures Corp.*, 309 U.S. 390, 408 (1940) ("what is required is not mathematical exactness but only a reasonable approximation."); *id.* at 402 ("apportionment of profits can be had where it is clear that all the profits are not due to the use of the copyrighted material, *and the evidence is sufficient to provide a fair basis of division* so as to give to the copyright proprietor all the profits that can be deemed to have resulted from the use of what belonged to him") (emphasis added).

**Cisco's Position:**

Cisco's proposed instruction closely follows Instruction No. 17.33 of the *Ninth Circuit Manual of Model Civil Jury Instructions* ("*Model*") in both form and substance; whereas, Arista's proposed instruction deviates in significant ways. Arista's proposed instruction on infringer's profits misstates the law and seeks to confuse the burden-shifting approach of 17 U.S.C. § 504(b) and related precedent. The Court should follow the *Model* and the Ninth Circuit's words, quoted in large part in Cisco's proposed instruction, and reject Arista's confusing and incorrect proposal, which will only lead the jury into error.

*First*, Arista's proposed instruction demonstrates the importance of a clear jury instruction on exactly what will suffice for Cisco to satisfy its initial burden of proof to establish Arista's gross revenues. As the Court noted in its Order on Daubert Motions (at 16): "Importantly, Arista also acknowledged to the Court that for establishing a royalty base, Cisco could satisfy its initial burden by showing that the direct profits are derived from the infringing products." It is undisputed that Arista's gross revenues at issue are all revenues directly from sales made by Arista of Arista's allegedly infringing switches. Thus, there is no legitimate dispute that those gross revenues satisfy any causal nexus requirement for infringer's profits. Nevertheless, Arista continues to seek to obfuscate this issue in the apparent hope that the jury will read into the phrase "causal nexus" a requirement that does not exist. The Court should adopt Cisco's proposed instructions, based on the *Model*, the Court's Daubert Order, and controlling Ninth Circuit precedent, in order that the jury understand that "Cisco may satisfy its burden by showing that the profits it seeks to recover derive directly from sales of the infringing products." *See, e.g.,* Order on Daubert Motions at 16 ("Assuming that Cisco is seeking only direct profits, Cisco must at least show that the profits it seeks to recover derive directly from the infringing products."); *Polar Bear Prods, Inc. v. Timex Corp.,* 384 F.3d 700, 708 (9th Cir. 2004); *Brocade Commc'ns Sys. v. A10 Networks, Inc.,* 2013 WL 831528, at *6 (N.D. Cal. Jan. 10, 2013) (noting that, to recover disgorgement of direct profits, a plaintiff may satisfy the "causal link" requirement by showing the "gross revenues from the infringing product"). In contrast, Arista's proposed instruction would instruct the jury that it "may make an award of Arista's profits attributable to sales of the infringing product only if you find that Cisco showed a causal nexus between the profits it seeks and the copyright infringement," but does not explain what would be sufficient to show a causal nexus. To sharpen its point, Arista reiterates: "If Cisco fails to establish a causal nexus between the profits it seeks and the infringement, it is not entitled to any of Arista's profits." But, again, Arista offers no explanation of what is sufficient for Cisco to establish a causal nexus, let alone that it is sufficient to show that the gross revenue is revenue solely from sales of the allegedly infringing switches and nothing else – a fact which is undisputed.

*Second*, in following the *Model*, Cisco's proposed instruction accurately reflects the careful allocation of evidentiary burdens outlined in 17 U.S.C. § 504(b) and related precedent. Abandoning the *Model*, Arista's proposal confusingly has a paragraph referring to the determination of Arista's gross revenue by Cisco and subtraction of expenses by Arista **after** a paragraph regarding the apportionment of profits by Arista. Arista's proposal should be rejected because it does not reflect § 504(b)'s balance and will not serve to accurately instruct the jury on the law.

*Third*, in its fourth paragraph, Arista proposes to instruct the jury: "If it is clear that not all of the profits are attributable to the infringing material, Arista is not required to establish with

1121178.02

certainty the portion attributable to the non-infringing elements." That is wrong because it is Arista's burden to apportion profits. According to the Ninth Circuit: "[O]nce the causal nexus is shown [by Cisco], the **infringer** bears the burden of apportioning profits that were **not the result of infringement**." *Polar Bear*, 384 F.3d at 711 (emphasis added); *see id.* at 712-13 ("[The copyright holder] was not required to apportion the gross profit figure … .Under § 504(b), the primary responsibility for further apportionment of profits fell to [the infringer]."); *see Nintendo of Am., Inc. v. Dragon Pac. Int'l*, 40 F.3d 1007, 1012 (9th Cir. 1994) ("where infringing and noninfringing elements of a work cannot be readily separated, all of a defendant's profits should be awarded to a plaintiff").

*Fourth*, Arista's proposed instruction in its fourth paragraph based on an inaccurate and incomplete paraphrasing of *Cream Records, Inc. v. Jos. Schlitz Brewing Co.*, 754 F.2d 826, 829 (9th Cir. 1985), should be rejected because it misstates the law. Arista proposes: "If the evidence suggests some division that may rationally be used to decide what portion of the profits are due to factors other than infringement, it is your duty to do so." In fact, the Ninth Circuit in *Cream Records* stated that it was the Court's duty to make some apportionment where it is clear that not all of the profits are attributable to the infringing material and the evidence suggests some division:

> where it is clear, as it is in this case, that not all of the profits are attributable to the infringing material, the copyright owner is not entitled to recover all of those profits merely because the infringer fails to establish with certainty the portion attributable to the non-infringing elements. In cases such as this where an infringer's profits are not entirely due to the infringement, and the evidence suggests some division which may rationally be used as a springboard it is the duty of the court to make some apportionment.

754 F.2d at 828-29. At a minimum, it is incorrect to instruct the jury that they have a duty absent any finding that not all of the profits are attributable to the infringing material. Moreover, Arista's proposed instruction misrepresents and overemphasizes the jury's "duty" to apportion, even if Arista has not met its burden, ignoring the Supreme Court's caution in *Harper & Row*: "With respect to apportionment of profits flowing from a copyright infringement, this Court has held that an infringer who commingles infringing and noninfringing elements must abide the consequences, unless [the infringer] can make a separation of the profits so as to assure to the injured party all that justly belongs to him." *Harper & Row*, 471 U.S. at 567. In sum, it is wrong to instruct the jury that they have a "duty" to apportion profits even if they conclude that Arista has failed to carry its burden to prove that some of its profits are attributable to factors other than infringing the copyrighted work.[180]

*Fifth*, in the third paragraph, Cisco deviated from the *Model* to add the following sentence: "However, if you find that Arista's infringement was willful, Arista's overhead costs, federal income taxes and excess profits taxes will not be considered deductible expenses and cannot be

---

[180]  *See also Frank Music Corp. v. Metro-Goldwyn-Mayer Inc.*, 886 F.2d 1545, 1549 (9th Cir. 1989) ("We will not accept the experts' testimony at its face value; we must made an award which by no possibility shall be too small. It is not our best guess that must prevail, but a figure which will favor the plaintiffs in every reasonable chance of error."); *id.* ("In performing the apportionment, the benefit of the doubt must always be given to the plaintiff, not the defendant.").

deducted from its profits." This reflects the prevailing law curtailing expenses that a willful infringer may deduct from gross revenue.[181]

*Sixth*, in addition to the *Model* instructions, Cisco proposes two paragraphs instructing the jury more specifically on the standards of proof. Consistent with controlling precedent, Cisco's instructions provide that neither Arista's profits or any apportionment of Arista's profits be calculated with "mathematical or absolute exactness." *See, e.g., Sheldon v. Metro-Goldwyn Pictures Corp.*, 309 U.S. 390, 408 (1940) ("what is required is not mathematical exactness but only a reasonable approximation"). Similarly, the jury should be instructed that the law requires "a reasonable approximation" of an infringer's profits, *id.*, any doubt as to the computation of costs or profits should be resolved in favor of Cisco, s*ee Frank Music Corp. v. MGM, Inc.*, 772 F.2d 505, 514 (9th Cir. Cal. 1985) ("Any doubt as to the computation of costs or profits is to be resolved in favor of the plaintiff."), and any apportionment should be reasonable and just, *id.* at 402 ("apportionment of profits can be had where it is clear that all the profits are not due to the use of the copyrighted material, and the evidence is sufficient to provide a fair basis of division so as to give to the copyright proprietor all the profits that can be deemed to have resulted from the use of what belonged to him").

---

[181]    Instruction No. 17.36, *Ninth Circuit Manual of Model Civil Jury Instructions* (2007) (comment); *Three Boys Music Corp. v. Bolton*, 212 F.3d 477, 487-88 (9th Cir. 2000) (in allocating profits, "non-willful infringers" were entitled to deduct from damage assessment income taxes and management fees actually paid); *Oracle Am., Inc. v. Google Inc.*, No. 10-cv-03561, 2015 U.S. Dist. LEXIS 126110 (N.D. Cal. Sept. 18, 2015) (noting the Ninth Circuit has not explicitly held that federal income or excess profits taxes are precluded as deductible expenses in calculating a willful copyright infringer's profits, but deeming that to be "the most likely outcome in our circuit."); *Polar Bear Prods., Inc. v. Timex Corp.*, 384 F.3d 700, 709 (9th Cir. 2004); *Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc.*, 772 F.2d 505, 515 (9th Cir. 1985); *Saxon v. Blann*, 968 F.2d 676, 681 (8th Cir. 1992) ("[o]verhead may not be deducted from gross revenues to arrive at profits when an infringement was deliberate or willful"); *Williams v. Bridgeport Music, Inc.*, No. 13-cv-6004, ECF No. 322 at Jury Instruction No. 38 (C.D. Cal. Mar. 10, 2015) ("Overhead costs may not be deducted where a party's infringement is willful."); *Jarvis v. A & M Records*, 827 F. Supp. 282, 294-95 (D.N.J. 1993) ("it is a question of fact whether these defendants did in fact act willfully[;]" "if a defendant's conduct is willful, overhead may not be deducted"); *Manufacturers Techs., Inc. v. Cams, Inc.*, 728 F. Supp. 75, 84 (D. Conn. 1989) (defendant's "taxes" and "overhead or 'allocated expenses'" not deductible because infringement was willful); 5 NIMMER ON COPYRIGHT § 14.03[C][2]-[3].

**DISPUTED: Arista's Final Instruction No. 66 re Copyright—Arista's Profits**[182]

If you conclude that Arista infringed Cisco's copyrights, in addition to actual damages, Cisco is entitled to any of Arista's profits attributable to the infringement. You may not include in an award of profits any amount that you took into account in determining actual damages.

You may make an award of Arista's profits attributable to sales of the infringing product only if you find that Cisco showed a causal nexus between the profits it seeks and the copyright infringement.[183]  If Cisco fails to establish a causal nexus between the profits it seeks and the infringement, it is not entitled to any of Arista's profits.

If Cisco establishes a causal nexus between the profits it seeks and the infringement, the burden shifts to Arista to prove deductible expenses and the portion of its profit attributable to factors other than infringing the copyrighted work. [184]

To the extent that Arista proves that some of its profits are attributable to factors other than infringing the copyrighted work, you should subtract those profits. If it is clear that not all of the profits are attributable to the infringing material, Arista is not required to establish with certainty the portion attributable to the non-infringing elements. If the evidence suggests some division that may rationally be used to decide what portion of the profits are due to factors other than infringement, it is your duty to do so.

Arista's profit is determined by starting with Arista's gross revenue that Cisco has proved has a causal relationship with the infringement, and then subtracting the expenses incurred in producing that revenue.  The expenses to be subtracted from that gross revenue are all operating costs, overhead costs and production costs incurred in producing it.  Arista has the burden of proving its expenses by a preponderance of the evidence.

---

[182]   Ninth Circuit Model Jury Instruction, 17.33.
[183]  Order on Daubert Motions at 16.
[184]  *Cream Records, Inc. v. Jos. Schlitz Brewing Co.*, 754 F.2d 826, 829 (9th Cir. 1985).

1121178.02

**Arista's Position:**

Cisco's "infringer's profits" instruction is misleading and prejudicial. Cisco attempts to disguise its burden, failing to state that it bears the burden of showing a causal nexus between the profits it seeks and the copyright infringement. As this Court recently explained in its Order on Daubert Motions, "courts confronted with the issue of 'causal nexus' in copyright cases have held plaintiffs to the initial burden of establishing 'causal nexus' regardless of whether profits are direct or indirect." Order on *Daubert* Motions at 15.

Cisco's instruction also misstates the law. It states that "Arista's profits are determined by subtracting all deductible expenses from Arista's gross revenue." That is incorrect. Instead, as Arista's instruction properly explains, its profit is determined by deducting deductible expenses ***and*** the portion of its profit attributable to factors other than infringing the copyrighted work. *See Cream Records, Inc. v. Jos. Schlitz Brewing Co.*, 754 F.2d 826, 829 (9th Cir. 1985). This instruction is critical in this case, where the vast majority of Arista's profits have nothing to do with the asserted CLI elements.

Arista's proposed instruction states the law accurately and clearly. It explains that Cisco bears the burden to show a causal nexus between the profits it seeks and the copyright infringement, Court's Order on Daubert Motions at 16, and that if Cisco meets that burden, the burden shifts to Arista to prove deductible expenses and the portion of its profit attributable to factors other than the alleged infringement. *Cream Records, Inc.*, 754 F.2d at 829. It then explains the duty to apportion profits where possible. For example, it explains that, "[i]f the evidence suggest some division [in Arista's profits] that may rationally be used to decide what portion of the profits are due to factors other than infringement, it is [the jury's] duty to do so." *Orgel v. Clark Boardman C*o., 301 F.2d 119, 121 (2d Cir. 1962) ("In cases such as this where an infringer's profits are not entirely due to the infringement, and the evidence suggests some division which may rationally be used as a springboard it is the duty of the court to make some apportionment.").

**<u>DISPUTED: Cisco's Final Instruction No. 67 re Copyright—Infringer's Profits—</u>**

**<u>Willfulness[185]</u>**

I have instructed you that deductible expenses are those expenses incurred by Arista that actually helped to produce the revenues at issue, and that Arista has the burden of proving its expenses by a preponderance of the evidence. In deciding whether or not to deduct costs proven by Arista in making the infringer's profits calculation, you may take into account whether or not Arista is a willful infringer. If you find that Arista is a willful infringer, you may choose not to deduct some or all of Arista's costs. The purpose of disallowing such deductions is to prevent willful infringers from using the benefits derived from another's copyrighted material to subsidize other operations of the company, and to ensure that a willful infringer does not benefit in any way from the infringement.


**<u>Cisco's Position:</u>**

Cisco's proposed instruction closely follows Instruction No. 17.33 of the *Ninth Circuit Manual of Model Civil Jury Instructions* ("*Model*") in both form and substance; whereas, Arista's proposed instruction deviates in significant ways. Arista's proposed instruction on infringer's profits misstates the law and seeks to confuse the burden-shifting approach of 17 U.S.C. § 504(b) and related precedent. The Court should follow the *Model* and the Ninth Circuit's words, quoted in large part in Cisco's proposed instruction, and reject Arista's confusing and incorrect proposal, which will only lead the jury into error.

Only Cisco proposes an instruction for Disputed Final Instruction No. 67. Cisco proposes this instruction because "[a] portion of an infringer's overhead properly may be deducted from gross revenues to arrive at profits at least where the infringement was not willful, conscious, or deliberate." *Frank Music Corp.*, 772 F.2d at 515 (citing *Kumar Int'l, Inc. v. Russ Berrie & Co.*, 752 F.2d 1326, 1331 (9th Cir. 1984), *Sammons v. Colonial Press*, 126 F.2d 341, 350-51 (1st Cir. 1942)); *see also Three Boys Music Corp. v. Bolton*, 212 F.3d 477, 488 (9th Cir. 2000) ("non-willful infringers [may be allowed to] deduct the income taxes and management fees that they paid

---

[185]  Instruction No. 17.36, Comment, *Ninth Circuit Manual of Model Civil Jury Instructions* (2007) ("Generally, deductions of defendant's expenses are denied where the defendant's infringement is willful or deliberate."); *see also Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc.*, 772 F.2d 505, 515 (9th Cir. 1985) ("A portion of an infringer's overhead properly may be deducted from gross revenues to arrive at profits, at least where the infringement was not willful, conscious, or deliberate."); *Three Boys Music Corp. v. Bolton*, 212 F.3d 477, 488 (9th Cir. 2000) ("non-willful infringers [may be allowed to] deduct the income taxes and management fees that they paid relating to the infringing song").

1121178.02

1    relating to the infringing song").  Based on this authority, the district court in *Williams v.*
2    *Bridgeport Music*, No. LA CV13-06004 JAK (C.D. Cal.), issued a jury instruction that the
     defendant could only deduct overhead expenses from its gross revenues if the defendant's
3    infringement was not willful.  *See* ECF Dkt. No. 322 at 41 (Mar. 10, 2015) (Excerpt of Jury
     Instrs.); *see also* Instruction No. 17.36, Comment, *Ninth Circuit Manual of Model Civil Jury*
4    *Instructions* (2007) ("Generally, deductions of defendant's expenses are denied where the
     defendant's infringement is willful or deliberate.").  Similarly, the district court in *Oracle v.*
5    *Google*, No. 3:10-cv-03561-WHA, ECF No. 1321 at 11, evaluated this authority and concluded
6    that the Ninth Circuit would likely find that "an infringer who has been shown by the copyright
     owner to have been a willful, conscious, and deliberate plagiarist, in a sense of moral blame, of the
7    copyrighted material may not deduct any income taxes or excess profits taxes from its gross
     revenues in the calculation of its infringement profits."

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**DISPUTED: Arista's Position on Cisco's Final Instruction No. 67 re Copyright—Infringer's Profits—Willfulness**

Arista's position is that no such instruction should be given.

**Arista's Position:**

Arista objects to a jury instruction on willful copyright infringement. The jury should not be instructed on willful infringement because Cisco has not elected to receive an award of statutory damages, and Arista has not sought a deduction for its income or excess-profits taxes. *See* 17 U.S.C. § 504(c)(2) (a copyright owner can elect to receive statutory damages, and trial courts have discretion to enhance the damages, up to a statutory maximum, for willful infringement.); *Kamar Int'l, Inc. v. Russ Berrie & Co.*, 752 F.2d 1326, 1331-32 (9th Cir.1984) (no deduction of such taxes if infringement is willful). Those two issues—neither of which is in dispute in this case—are the only potential relevance of willful infringement. *See Oracle v. Google*, 131 F. Supp. 3d 946, 951 (N.D. Cal. 2015) ("[A]n examination of the decisional law [in the Ninth Circuit] on this issue finds no authoritative support for altering the calculus of 'deductible expenses' where the infringement at issue was willful, except as to income and excess profits taxes."). As Judge Alsup explained in *Oracle*, "our court of appeals has not explicitly found that even federal income or excess profits taxes should be precluded as deductible expenses in calculating a willful copyright infringer's profits. Nevertheless, this order finds that the most likely outcome in our circuit will be that such taxes will be disallowed for a 'deliberate plagiarist,' but all other categories of deductible expenses will be allowed, even for a 'deliberate plagiarist,' so long as it is proven they contributed to generating the infringement revenue." *Id*. at 952–53.

Finally, to the extent Cisco argues that willfulness is relevant to Arista's laches defense, the parties agree that copyright laches is an equitable defense, tried by the Court and not the jury. Accordingly, there is no need to instruction the jury on willful infringement, and doing so would only confuse them.

1

**STIPULATED: Final Instruction No. 68 re Patent—What A Patent Is And How One Is**

2

**Obtained**[186]

3      This case also involves a dispute relating to a United States patent.  Before summarizing

4    the positions of the parties and the legal issues involved in the dispute, let me take a moment to

5    explain what a patent is and how one is obtained.

6      Patents are granted by the United States Patent and Trademark Office (sometimes called

7    "the PTO").  The process of obtaining a patent is called patent prosecution.  A valid United States

8    patent gives the patent owner the right to prevent others from making, using, offering to sell, or

9    selling the patented invention within the United States, or from importing it into the United States,

10   during the term of the patent without the patent holder's permission.  A violation of the patent

11   owner's rights is called infringement.  The patent owner may try to enforce a patent against

12   persons believed to be infringers by a lawsuit filed in federal court.

13     To obtain a patent one must file an application with the PTO.  The PTO is an agency of the

14   federal government and employs trained examiners who review applications for patents.  The

15   application includes what is called a "specification," which must contain a written description of

16   the claimed invention telling what the invention is, how it works, how to make it and how to use it

17   so others skilled in the field will know how to make or use it.  The specification concludes with

18   one or more numbered sentences.  These are the patent "claims."  When the patent is eventually

19   granted by the PTO, the claims define the boundaries of its protection and give notice to the public

20   of those boundaries.

21     After the applicant files the application, a PTO patent examiner reviews the patent

22   application to determine whether the claims are patentable and whether the specification

23   adequately describes the invention claimed.  In examining a patent application, the patent

24   examiner reviews records available to the PTO for what is referred to as "prior art."  The examiner

25   also will review prior art if it is submitted to the PTO by the applicant.  Prior art is defined by law,

26   and I will give you at a later time specific instructions as to what constitutes prior art.  However, in

27

28      [186]  N.D. Cal. Model Patent Jury Instruction A.1 (July 16, 2015).

**FIRST AMENDED UNDISPUTED AND DISPUTED PROPOSED JURY INSTRUCTIONS**
1121178.02

general, prior art includes things that existed before the claimed invention, that were publicly known, or used in a publicly accessible way in this country, or that were patented or described in a publication in any country. The examiner considers, among other things, whether each claim defines an invention that is new, useful, and not obvious in view of the prior art. A patent lists the prior art that the examiner considered; this list is called the "cited references."

After the prior art search and examination of the application, the patent examiner then informs the applicant in writing what the examiner has found and whether any claim is patentable, and thus will be "allowed." This writing from the patent examiner is called an "office action." If the examiner rejects the claims, the applicant then responds and sometimes changes the claims or submits new claims. This process, which takes place only between the examiner and the patent applicant, may go back and forth for some time until the examiner is satisfied that the application and claims meet the requirements for a patent. The papers generated during this time of communicating back and forth between the patent examiner and the applicant make up what is called the "prosecution history." All of this material becomes available to the public no later than the date when the patent issues.

The fact that the PTO grants a patent does not necessarily mean that any invention claimed in the patent, in fact, deserves the protection of a patent. For example, the PTO may not have had available to it all the information that will be presented to you. A person accused of infringement has the right to argue here in federal court that a claimed invention in the patent is invalid because it does not meet the requirements for a patent.

**DISPUTED: Cisco's Final Instruction No. 69 re Patent—Summary Of Patent Claim Contentions[187]**

I will now instruct you on Cisco's patent claim.

I will first give you a summary of each side's contentions in this case for the patent claim. I will then tell you what each side must prove to win on each of its contentions.   Cisco seeks money damages from Arista for allegedly infringing the '526 patent by making, importing, using, selling and/or offering for sale products and services that Cisco argues are covered by claims 1, 6, 10, 11, 13-16, 19, and 23 of the '526 patent.  These are referred to as the Asserted Claims of the '526 patent.  Cisco also argues that Arista has actively induced infringement of these claims of the '526 patent by others and contributed to the infringement of these claims of the '526 patent by others.  The products and services that are alleged to infringe are Arista switches, routers, and associated products and services, that incorporate EOS, EOS+, vEOS network operating systems, including but not limited to Arista's 7010, 7048, 7050, 7050X, 7100, 7150, 7200, 7250X, 7280E, 7300, 7300X, 7500, 7500E Series products, including but not limited to 7504, 7508, 7316, 7308, 7304, 7280SE-72, 7280SE-68, 7280SE-64, 7150S-24, 7150S-52, 7150S-64, 7250QX-64, 7050QX-32, 7050QX-32S, 7050SX-64, 7050SX-72, 7050SX-96, 7050SX-128, 7050TX- 48, 7050TX-64, 7050TX-72, 7050TX-96, 7050TX-128, 7050S-52, 7050-64, 7050Q-16, 7050T-36, 7050T-52, 7050T-64, 7048T-A, 7010T, and 7500R.

Arista denies that it has infringed the asserted claims of the patent and argues that, in addition, the claims are invalid.

Your job is to decide whether the asserted claims of the '526 patent have been infringed and whether any of the asserted claims of the '526 patent are invalid.  If you decide that any claim of the patent has been infringed and is not invalid, you will then need to decide any money damages to be awarded to Cisco to compensate it for the infringement.

You will also need to make a finding as to whether the infringement was willful.  If you decide that any infringement was willful, that decision should not affect any damage award you

---

[187] *"B.1. Summary of Contentions,"* N.D. Cal. Model Patent Jury Instructions.

1    make.  I will take willfulness into account later.

2

3    **Cisco's Position:**

4         Cisco's proposed instruction tracks the N.D. Cal. Model Patent Jury Instructions.
5    (Instruction A.3)  It is also consistent with this Court's recent jury trials in patent cases, such as
     *Nortek Air Solutions, LLC fka CES Group, LLC v. Energy Labs, Inc.*, No. 5:14-cv-02919-BLF,
6    Dkt. 336 (Aug. 5, 2016),  *Finisar Corp. v. Nistica, Inc.* No. 5:13-cv-03345-BLF (June 15, 2016)
     (Dkt. Nos. 670) (Instruction 1.3),  and *Finjan, Inc. v. Blue Coat Sys., Inc.,* No. 13-cv-03999-BLF,
7    Dkt. 427 (Aug. 4, 2015) (Instruction 1.3).  Arista proposes omitting this instruction entirely.  This
     instruction, however, is helpful and necessary to provide a summary of the parties' contentions
8    relating to the patent claims and will clarify the jury's understanding of the patent contentions in
     particular.  Without it, for example, the jury will not hear a recitation of the specific accused
9    products or the claims which are asserted.  As indicated by the Model and this Court's consistent
10   practice, this instruction should be included.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1121178.02

**DISPUTED: Arista's Objection to Cisco's Final Instruction No. 69 re Patent—Summary Of**

**Patent Claim Contentions**

Arista's position is that no such instruction should be given.

**Arista's Position:**

Arista objects to Cisco's "Summary of Patent Claim Contentions" instruction.  The parties' patent contentions are already summarized in Preliminary Instruction No. 2.  Given the number of issues that the jury must consider—and the relative importance of the patent issues to the rest— Arista believes that this instruction is superfluous and unnecessarily detailed.  However, if Cisco is permitted to include this instruction, including the lengthy list of "products and services" that allegedly infringe the patent, a similar amount of detail on Arista's defenses should be presented in the instruction (e.g., itemizing Arista's non-infringement arguments).  It would be better to omit the instruction entirely.

1    **STIPULATED: Final Instruction No. 70 re Patent—Interpretation Of Patent Claims**[188]

2         Before you decide whether Arista has infringed the claims of the patent or whether the

3    claims are invalid, you will need to understand the patent claims.  The patent claims are numbered

4    sentences at the end of the patent that describe the boundaries of the patent's protection.  It is my

5    job as judge to explain to you the meaning of any language in the claims that needs interpretation.

6         I have interpreted the meaning of some of the language in the patent claims involved in

7    this case.  You must accept those interpretations as correct.  These interpretations were handed to

8    you at the start of the trial.  For any claim term for which I have not provided you a definition, you

9    should apply the plain and ordinary meaning of that term, as understood by one of ordinary skill in

10   the art.  My interpretation of the language should not be taken as an indication that I have a view

11   regarding the issues of infringement and invalidity.  The decisions regarding infringement and

12   invalidity are yours to make.

13        I have made the following claim interpretations of terms found within the Asserted Claims:

14        For the phrase "management programs" in the '526 patent claims, I instruct you to

15   interpret that to mean the following: "tools or agents configured to execute user-directed

16   commands having their own respective command formats that provide management functions."

17        For the phrase "generic command" in the '526 patent claims, I instruct you to interpret that

18   to mean the following: "command that provides an abstraction of the tool-specific command

19   formats and syntax, enabling a user to issue the command based on the relative functions, as

20   opposed to the specific syntax for a corresponding tool."

21        For the phrase "command parse tree" in the '526 patent claims, I instruct you to interpret

22   that to mean the following: "a hierarchal data structure."

23        The following phrase appears in certain claims of the '526 patent: "the command parse tree

24

25   _____

26   [188] "*B.2. Claim Construction*," N.D. Cal. Model Patent Jury Instructions, *citing Markman v.
Westview Instruments, Inc.*, 517 U.S. 370, 384-391 (1996); *Phillips v. AWH Corp.*, 415 F.3d 1303,

27   1324 (Fed. Cir. 2005); *Pitney Bowes, Inc. v. Hewlett-Packard Co.*, 182 F.3d 1298, 1304-13 (Fed.
Cir. 1999); *Cybor Corp. v. FAS Techs.*, 138 F.3d 1448 (Fed. Cir. 1998) (*en banc*); *Markman v.*

28   *Westview Instruments, Inc.*, 52 F.3d 967, 977 (Fed. Cir. 1995) (*en banc*).

having elements each specifying at least one corresponding generic command component and a corresponding at least one command action value." Within that phrase, for the term "command action value," I instruct you to interpret that to mean "a value that identifies a prescribed command." For the larger phrase, I instruct you to interpret it to mean "the command parse tree having elements, such that each element specifies at least one command action value for each generic command component."

The following phrase appears in certain claims of the '526 patent: "means for validating a generic command received from a user, the validating means configured for specifying valid generic commands relative to a prescribed generic command format and having elements each specifying at least one corresponding generic command component and a corresponding at least one command action value, the validating means identifying one of the elements as a best match relative to the generic command." This is a "means plus function" phrase, which I will explain to you in greater detail a little later. For claim interpretation purposes, I instruct you that the "structure" that is claimed with this language is "Parser 14 in Figure 2 of the '526 patent, which includes the command word translation table 20 and the command parse tree 22, as described in column 3, lines 36-61 of the '526 patent, and equivalents. Figure 3 of the '526 patent is an alternative embodiment." I also instruct you that the "function" claimed in this claim language is as follows: "(1) validating a generic command received from a user, (2) specifying valid generic commands relative to a prescribed generic command format, (3) having elements each specifying at least one corresponding generic component and a corresponding at least one command action value, and (4) identifying one of the elements as a best match relative to the generic command."

FIRST AMENDED UNDISPUTED AND DISPUTED PROPOSED JURY INSTRUCTIONS

1121178.02

**STIPULATED: Cisco's Final Instruction No. 71 re Patent—Types of Patent Claims**[189]

This case involves two types of patent claims: independent and dependent claims.

1.  An independent claim sets forth all of the elements that must be met in order for a product or process to be covered by that claim. Thus, it is not necessary to look at any other claim to determine what an independent claim covers. In this case, claims 1, 10, 14, and 23 of the '526 Patent are independent claims.

2.  The remaining Asserted Claims are dependent claims. A dependent claim does not itself recite all of the elements for the claim but refers to another claim or claims for some of its elements. In this way, the claim "depends" on another claim or claims. A dependent claim incorporates all of the elements of the claims to which it refers. The dependent claim then adds its own additional elements.

    To determine what a dependent claim covers, it is necessary to look at both the dependent claim and any other claims to which it refers.

---

[189] Final Jury Instruction No. 24, *Nortek Air Solutions, LLC fka CES Group, LLC v. Energy Labs, Inc.*, Case No. 5:14-cv-02919-BLF, Dkt. 336 at 29 (Aug. 5, 2016); Final Jury Instructions, *Finjan, Inc. v. Blue Coat Systems, Inc.*, Case No. 13-CV-03999-BLF at 29 (Aug. 4, 2015).

FIRST AMENDED UNDISPUTED AND DISPUTED PROPOSED JURY INSTRUCTIONS
1121178.02

**STIPULATED: Final Instruction No. 72 re Patent—Patent Infringement: Burden Of Proof**[190]

[CISCO'S POSITION:  The sentence "Infringement must be proven on an element by element basis" at the end of this instruction should not be included.]

[ARISTA POSITION:  The sentence "Infringement must be proven on an element by element basis" at the end of this instruction should be included.]

I will now instruct you on the rules you must follow in deciding whether Cisco has proven that Arista has infringed one or more of the asserted claims of the '526 patent.  To prove infringement of any claim, Cisco must persuade you that it is more likely than not that Arista has infringed that claim.  Infringement must be proven on an element by element basis.


**Arista's Position:**

The parties disagree over whether to include the following sentence:  "Infringement must be proven on an element by element basis."  Arista argues that this sentence should be included for two reasons.  *First*, the law is clear that patent infringement must be proven on an element by element basis.  *See, e.g., TechSearch, L.L.C. v. Intel Corp.*, 286 F.3d 1360, 1371 (Fed. Cir. 2002) ("To establish literal infringement, all of the elements of the claim, as correctly construed, must be present in the accused system."); *Finjan, Inc. v. Proofpoint, Inc.*, No. 13-CV-05808-HSG, 2016 WL 1427492, at *1 (N.D. Cal. Apr. 12, 2016) ("The absence from the accused product of one limitation in the claim means that, as a matter of law, there is no literal infringement of that claim.").  *Second,* Cisco added an equivalent instruction for anticipation—an instruction to which Arista has not objected.  *See* Undisputed Final Instruction Re Patent—Anticipation ("Anticipation of a claim must be determined on an element-by-element basis.").

In the interest of both accuracy and fairness, Arista's proposed instruction should be adopted.

---

[190] "B.3.1," N.D. Cal. Model Patent Jury Instructions, citing *Warner-Lambert Co. v. Teva Pharm. USA, Inc.,* 418 F.3d 1326, 1341 n.15 (Fed. Cir. 2005); *Seal-Flex, Inc. v. Athletic Track and Court Constr.,* 172 F.3d 836, 842 (Fed. Cir. 1999); *Morton Int'l, Inc. v. Cardinal Chem. Co.*, 5 F.3d 1464, 1468-69 (Fed. Cir. 1993).

1    **STIPULATED: Final Instruction No. 73 re Patent—Direct Infringement of a Patent**[191]

2         [CISCO'S POSITION:  The phrase "or it may be infringed under the 'doctrine of

3    equivalents'" in the first sentence of the last paragraph of this instruction should be included.]

4         [ARISTA POSITION:  The phrase "or it may be infringed under the 'doctrine of

5    equivalents'" in the first sentence of the last paragraph of this instruction should not be included.]

6

7         A patent's claims define what is covered by the patent.  A product or method directly

8    infringes a patent if it is covered by at least one claim of the patent.

9         Deciding whether a claim has been directly infringed is a two-step process.  The first step

10   is to decide the meaning of the patent claim.  I have already made this decision, and I have already

11   instructed you as to the meaning of the asserted patent claims.  The second step is to decide

12   whether Arista has made, used, sold, offered for sale or imported within the United States a

13   product or service covered by a claim of the '526 patent.  If it has, it infringes.  You, the jury,

14   make this decision.

15        With one exception, you must consider each of the asserted claims of the patent

16   individually, and decide whether Arista's products or services infringe that claim.  The one

17   exception to considering claims individually concerns dependent claims.  A dependent claim

18   includes all of the requirements of a particular independent claim, plus additional requirements of

19   its own.  As a result, if you find that an independent claim is not infringed, you must also find that

20   its dependent claims are not infringed.  On the other hand, if you find that an independent claim

21   has been infringed, you must still separately decide whether the additional requirements of its

22   dependent claims have also been infringed.

23

24   _____

25        [191] "*B.3.2,*" N.D. Cal. Model Patent Jury Instructions, citing 35 U.S.C. § 271; *Warner-
     Jenkinson Co., Inc. v. Hilton Davis Chem. Co.*, 520 U.S. 17 (1997); *Cross Med. Prods., Inc. v.
26   Medtronic Sofamor Danek, Inc.*, 424 F.3d 1293, 1310-11 (Fed. Cir. 2005); *DeMarini Sports, Inc.
     v. Worth, Inc.*, 239 F.3d 1314, 1330-34 (Fed. Cir. 2001); *Seal-Flex, Inc. v. Athletic Track and
27   Court Constr.*, 172 F.3d 836, 842 (Fed. Cir. 1999); *Carroll Touch, Inc. v. Electro Mech. Sys., Inc.*,
     15 F.3d 1573, 1576 (Fed. Cir. 1993).
28

You have heard evidence about both Cisco's commercial products and Arista's accused products and services. However, in deciding the issue of infringement you may not compare Arista's accused products and services to Cisco's commercial products. Rather, you must compare Arista's accused products and services to the claims of the '526 patent when making your decision regarding infringement.

Whether or not Arista knew its products or services infringed or even knew of the patent does not matter in determining direct infringement.

There are two ways in which a patent claim may be directly infringed. A claim may be "literally" infringed, or it may be infringed under the "doctrine of equivalents." The following instructions will provide more detail on these two types of direct infringement. You should note, however, that what are called "means-plus-function" requirements in a claim are subject to different rules for deciding direct infringement. I will describe these separate rules shortly.

**<u>Arista's Position:</u>**

Arista objects to the instruction insofar as it discusses infringement under the doctrine of equivalents.

Cisco should not be permitted to assert a DOE claim because it failed to disclose one in its Infringement Contentions, as the Local Rules require. Instead, Cisco introduced its DOE theories for the first time in its expert report, where Dr. Kevin Jeffay opined that Arista may satisfy four claim elements under the doctrine of equivalents. For two of those claim elements—1.5 and 2.1—Cisco's infringement contentions provided only a boilerplate recitation of the doctrine of equivalents, which is not enough. Courts in this district have consistently excluded doctrine of equivalents theories where the plaintiff's infringement contentions contained only such conclusory statements. *See, e.g., ASUS Computer Int'l v. Round Rock Research*, LLC, No. 12-CV-02099 JST (NC), 2014 WL 1463609, at *3 (N.D. Cal. Apr. 11, 2014); *Dynetix Design Sols., Inc. v. Synopsys, Inc.*, No. C 11-5973 PSG, 2013 WL 4537838, at *1–2 (N.D. Cal. Aug. 22, 2013). And for the other two claim elements—1.2 and 23.1—Cisco's infringement contentions did not even make a conclusory reference to the doctrine of equivalents; there is no mention of it at all. Because Cisco failed to disclose a DOE claim in its Infringement Contentions, as the Local Rules require, the jury should not be instructed on such a claim.

1    **STIPULATED: Final Instruction No. 74 re Patent—Literal Infringement Of A Patent[192]**

2          To decide whether Arista's products and services literally infringe a claim of the '526

3    patent, you must compare that product or service with the patent claim and determine whether

4    every requirement of the claim is included in that product or service.  If so, Arista's product or

5    service literally infringes that claim.  If, however, Arista's product or service does not have every

6    requirement in the patent claim, Arista's product or service does not literally infringe that claim.

7    You must decide literal infringement for each asserted claim separately.

8          If the patent claim uses the term "comprising," that patent claim is to be understood as an

9    open claim.  An open claim is infringed as long as every requirement in the claim is present in

10   Arista's product or service. The fact that Arista's product or service also includes other parts or

11   steps will not avoid infringement, as long as it has every requirement in the patent claim.

12

13

14

15

16

17

18

19

20

21

22

23

24

---

25   [192] "*B.3.3,*" N.D. Cal. Model Patent Jury Instructions, citing *MicroStrategy Inc. v. Business Objects, S.A.*, 429 F.3d 1344, 1352-53 (Fed. Cir. 2005); *Netword, LLC v. Centraal Corp.*, 242 F.3d 1347, 1353 (Fed. Cir. 2001); *Cole v. Kimberly-Clark Corp.*, 102 F.3d 524, 532 (Fed. Cir. 1996); *Ecolab, Inc. v. FMC Corp.*, 535 F.3d 1369 (Fed. Cir. 2009); *Cross Med. Prods. v. Medtronic Sofamor Danek*, 424 F.3d 1293 (Fed. Cir. 2005); *BMC Res., Inc. v. Paymentech, L.P.*, 498 F.3d 1373 (Fed. Cir. 2007).

**DISPUTED: Cisco's Final Instruction No. 75 re Patent—Patent Infringement Under The Doctrine Of Equivalents[193]**

If you decide that Arista's products or services do not literally infringe an asserted patent claim, you must then decide whether those products or services infringe the asserted claim under what is called the "doctrine of equivalents."

Under the doctrine of equivalents, the product or service can infringe an asserted patent claim if it includes parts or steps that are identical or equivalent to the requirements of the claim. If the product or service is missing an identical or equivalent part or step to even one requirement of the asserted patent claim, the product or service cannot infringe the claim under the doctrine of equivalents. Thus, in making your decision under the doctrine of equivalents, you must look at each individual requirement of the asserted patent claim and decide whether the product or service has either an identical or equivalent part or step to that individual claim requirement.

A part or step of a product or service is equivalent to a requirement of an asserted claim if a person of ordinary skill in the field would think that the differences between the part or step and the requirement were not substantial as of the time of the alleged infringement.

Changes in technique or improvements made possible by technology developed after the patent application is filed may still be equivalent for the purposes of the doctrine of equivalents if it still meets the other requirements of the doctrine of equivalents set forth in this instruction.

One way to decide whether any difference between a requirement of an asserted claim and a part or step of the product or service is not substantial is to consider whether, as of the time of the alleged infringement, the part or step of the product or service performed substantially the

---

[193] "*B.3.4,*" N.D. Cal. Model Patent Jury Instructions, citing *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.,* 535 U.S. 722 (2002); *Warner-Jenkinson Co., Inc. v. Hilton Davis Chem. Co.*, 520 U.S. 17 (1997); *Graver Tank & Mfg. Co. v. Linde Air Prods. Co.*, 339 U.S. 605, 609 (1950); *Abraxis Bioscience, Inc. v. Mayne Pharma (USA) Inc.*,  467 F.3d 1370, 1379-82 (Fed. Cir. 2006); *Pfizer, Inc. v. Teva Pharms., USA, Inc.*, 429 F.3d 1364, 1378 (Fed. Cir. 2005); *Johnston & Johnston Assoc. v. R.E. Service Co.*, 285 F.3d 1046 (Fed. Cir. 2002) (*en banc*); *Multiform Desiccants, Inc. v. Medzam, Ltd.*, 133 F.3d 1473, 1480 (Fed. Cir. 1998); *Dolly, Inc. v. Spalding & Evenflo Cos.*, 16 F.3d 394, 397 (Fed. Cir. 1994).

same function, in substantially the same way, to achieve substantially the same result as the requirement in the patent claim.

In deciding whether any difference between a claim requirement and the products or services is not substantial, you may consider whether, at the time of the alleged infringement, persons of ordinary skill in the field would have known of the interchangeability of the part or step with the claimed requirement.  The known interchangeability between the claim requirement and the part or step of the products or methods is not necessary to find infringement under the doctrine of equivalents.  However, known interchangeability may support a conclusion that the difference between the part or step in the products or methods and the claim requirement is not substantial. The fact that a part or step of the products or methods performs the same function as the claim requirement is not, by itself, sufficient to show known interchangeability.


**Cisco's Position:**

Cisco's proposed instruction tracks the N.D. Cal. Model Patent Jury Instructions. (Instruction B.3.4 ).  Cisco's understanding is that Arista does not dispute the substance of this instruction (it proposes no alternative), but rather whether patent infringement under doctrine of equivalents is properly an issue for trial.  As described in the parties' Joint Pretrial statement (Dkt. 593 at 21-22) , Cisco's infringement arguments under the doctrine of equivalents are properly preserved in Cisco's infringement contentions, interrogatory responses and expert reports, and Arista's untimely objection is meritless.

1    **DISPUTED: Arista's Objection to Cisco's Final Instruction No. 75 re Patent—Patent**

2    **Infringement Under The Doctrine Of Equivalents**

3       Arista's position is that no such instruction should be given.

4

5    **Arista's Position:**

6       As discussed above in connection with Disputed Instruction 73, the jury should not be
instructed on the doctrine of equivalents because Cisco failed to disclose a DOE claim in its
7    Infringement Contentions.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1121178.02

**STIPULATED: Final Instruction No. 76 re Patent—Means-Plus-Function Patent Claims:**

**Literal Infringement[194]**

I will now describe the separate rules that apply to "means-plus-function" requirements that are used in some claims. A means-plus-function requirement only covers the specific structure disclosed in a patent specification for performing the claimed function and the equivalents of those specific structure that perform the claimed function. A means-plus-function requirement does not cover all possible structures that could be used to perform the claimed function.

As an example, the term "means for processing data" might be understood to encompass a variety of different ways of making a calculation, including not only a computer or calculator but a pencil and paper or even the human brain. But because the phrase is a means-plus-function requirement, we interpret that phrase not to cover every possible means for processing data, but instead to cover the actual means disclosed in the patent for processing data and other means that are equivalent to it.

For purposes of this trial, I have interpreted each means-plus-function requirement for you and identified the structure in the patent specification that corresponds to these means-plus-function requirements. Specifically, the following phrase appears in certain claims of the '526 patent: "means for validating a generic command received from a user, the validating means configured for specifying valid generic commands relative to a prescribed generic command format and having elements each specifying at least one corresponding generic command component and a corresponding at least one command action value, the validating means identifying one of the elements as a best match relative to the generic command."

This is a "means plus function" phrase. For claim interpretation purposes, as indicated

---

[194] "*B.3.5,*" N.D. Cal. Model Patent Jury Instructions, citing 35 U.S.C. § 112(6); *Frank's Casing Crew & Rental Tools, Inc. v. Weatherford Intern., Inc.*, 389 F.3d 1370, 1378 (Fed. Cir. 2004); *Odetics, Inc. v. Storage Tech. Corp.*, 185 F.3d 1259, 1266 (Fed. Cir. 1999); *Chiuminatta Concrete Concepts, Inc. v. Cardinal Indus., Inc.*, 145 F.3d 1303, 1307 (Fed. Cir. 1998); *Micro Chem., Inc. v. Great Plains Chem. Co., Inc.*, 103 F.3d 1538, 1547 (Fed. Cir. 1997); *Valmont Indus., Inc. v. Reinke Mfg. Co., Inc.*, 983 F.2d 1039, 1042 (Fed. Cir. 1993).

1121178.02

1    earlier, I instruct you that the "structure" that is claimed with this language is "Parser 14 in Figure

2    2 of the '526 patent, which includes the command word translation table 20 and the command

3    parse tree 22, as described in column 3, lines 36-61 of the '526 patent, and equivalents. Figure 3 of

4    the '526 patent is an alternative embodiment."  I also instruct you that the "function" claimed in

5    this claim language is as follows: "(1) validating a generic command received from a user, (2)

6    specifying valid generic commands relative to a prescribed generic command format, (3) having

7    elements each specifying at least one corresponding generic component and a corresponding at

8    least one command action value, and (4) identifying one of the elements as a best match relative to

9    the generic command."

10        In deciding if Cisco has proven that Arista's product includes structure covered by a

11   means-plus-function requirement, you must first decide whether the product has any structure that

12   performs the function I just described to you.  If not, the claim containing that means-plus-

13   function requirement is not infringed.

14        If you find that the Arista product does have structure that performs the claimed function,

15   you must then determine whether that structure is the same as or equivalent to the structure I have

16   identified in the specification.  If they are the same or equivalent, the means-plus-function

17   requirement is satisfied by that structure of the product.  If all the other requirements of the claim

18   are satisfied, the product infringes the claim.

19        In order to prove that a structure in the Arista product is equivalent to the structure in the

20   '526 patent, Cisco must show that a person of ordinary skill in the field would have considered

21   that the differences between the structure described in the '526 patent and the structure in the

22   Arista product are not substantial.  Cisco must also show that the structure was available on the

23   date the '526 patent was granted.

24

25

26

27

28

FIRST AMENDED UNDISPUTED AND DISPUTED PROPOSED JURY INSTRUCTIONS
1121178.02

**STIPULATED: Final Instruction No. 77 re Patent—Contributory Patent Infringement**[195]

Cisco also contends that Arista has contributed to infringement by another. Contributory infringement may arise when someone supplies something that is used to infringe one or more of the patent claims. Contributory infringement is a form in indirect infringement.

In order for there to be contributory infringement by Arista, someone other than Arista must directly infringe a claim of the '526 patent; if there is no direct infringement by anyone, there can be no contributory infringement.

If you find someone has directly infringed the '526 patent, then contributory infringement exists if:

1. Arista supplied an important component of the infringing part of the product or service;

2. The component is not a common component suitable for non-infringing use; and

3. Arista supplied the component with the knowledge of the '526 patent and knowledge that the component was especially made or adapted for use in an infringing manner.

A "common component suitable for non-infringing use" is a component that has uses other than as a component of the patented product or other than in the patented method, and those other uses are not occasional, farfetched, impractical, experimental, or hypothetical.

1121178.02

1    **STIPULATED: Final Instruction No. 78 re Patent—Inducing Patent Infringement[196]**

2        [CISCO'S POSITION:  The last sentence should be included.]

3        [ARISTA'S POSITION:  The last sentence should not be included.]

4

5        Cisco argues that Arista has actively induced another to infringe the '526 patent.  In order

6    for Arista to have induced infringement, Arista must have induced another to directly infringe a

7    claim of the '526 patent; if there is no direct infringement by anyone, there can be no induced

8    infringement.  Induced infringement is a form of indirect infringement.

9        In order to be liable for inducing infringement, Arista must have:

10       1.   Intentionally taken action that actually induced direct infringement;

11       2.   Been aware of the '526 patent; and

12       3.   Known that the acts it was causing would infringe the patent.

13

14       Arista may be considered to have known that the acts it was causing would infringe the

15   '526 patent if it subjectively believed there was a high probability that the direct infringer's

16   product or method was patented and nevertheless deliberately took steps to avoid learning that

17   fact, in other words, willfully blinded itself to the infringing nature of the direct infringer's acts.

18       Even if Arista believed any of the Asserted Claims were invalid, it can still be liable for

19   inducing infringement.[197]

20

21   **Arista's Position:**

22       Cisco's disputed instruction 78 differs from Arista's in one respect: it includes a sentence

23   that is not present in the Model Patent Jury Instructions. ("Even if Arista believed any of the
     Asserted Claims were invalid, it can still be liable for inducing infringement.")  In *Commil USA,*

24

25       [196] "*B.3.9,*" N.D. Cal. Model Patent Jury Instructions, citing 35 U.S.C. § 271(b); *Commil USA,*
     *LLC v. Cisco Systems, Inc.,* 135 S.Ct. 1920, 1928-31 (2015); *Global-Tech Appliances et. al.*

26   *v. SEB S.A.,* 131 S.Ct. 2060, 2070-71 (2011).

27       [197] Final Jury Instruction No. 28, *Nortek Air Solutions, LLC fka CES Group, LLC v. Energy*
     *Labs, Inc.,* Case No. 5:14-cv-02919-BLF, Dkt. 336  at 33 (Aug. 5, 2016); *Commil USA, LLC v.*

28   *Cisco Systems, Inc.,* 135 S.Ct. 1920, 1928-31 (2015).

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*LLC v. Cisco Systems, Inc.*, 135 S.Ct. 1920 (2015), the Supreme Court held that a defendant's belief regarding patent validity is not a defense to induced infringement. It would be confusing to instruct the jury on a defense that Arista may not present. The Model Jury Instructions regarding Inducing Patent Infringement—which cite to *Commil*—do not include the sentence that Cisco seeks to add, and there is no reason for the Court to add it to the instructions in this case.

**DISPUTED: Cisco's Final Instruction No. 79 re Patent—Willful Patent Infringement[198]**

In this case, Cisco argues that Arista willfully infringed Cisco's '526 Patent. To prove willful infringement against Arista, Cisco must first persuade you that Arista infringed a valid claim of Cisco's patent. The requirements for proving such infringement were discussed in my prior instructions.

To prove willful infringement of a patent, Cisco must persuade you by a preponderance of the evidence that Arista had knowledge of the patent at issue and acted in bad faith, wantonly, maliciously, deliberately, consciously wrongfully, flagrantly, or with reckless disregard of any of the Asserted Claims of any of the Cisco Patents. You must base your verdict on the knowledge and actions of Arista at the time the infringement happened. Infringement alone is not enough to prove willfulness and mere knowledge of the '526 Patent at the time of infringement is not enough to prove willfulness.

You should consider all of the circumstances including the motive or intent of Arista in developing and selling the accused products, whether Arista knew or should have known that its conduct was unreasonably risky and whether Arista had a reasonable belief at the time of the alleged infringement that its products did not infringe any of the Asserted Claims of the '526 Patent.

**Cisco's Position:**

Cisco's proposed instruction is modeled from this Court's recent Final Jury Instructions in *Nortek Air Solutions, LLC fka CES Group, LLC v. Energy Labs, Inc.*, No. 5:14-cv-02919-BLF, Dkt. 336 at 35 (Aug. 5, 2016) (Instruction No. 3.5), which is modified from the N.D. Cal. Model

---

[198] Final Jury Instruction No. 30, *Nortek Air Solutions, LLC fka CES Group, LLC v. Energy Labs, Inc.*, No. 5:14-cv-02919-BLF, Dkt. 336 at 35 (Aug. 5, 2016); "*B.3.10,*" N.D. Cal. Model Patent Jury Instructions, citing 35 U.S.C. § 284; *In re Seagate Tech., LLC*, 497 F.3d 1360 (Fed. Cir. 2007); *Knorr-Bremse Systeme Fuer Nutzfahrzeuge GmbH v. Dana Corp.*, 383 F.3d 1337, 1345 (Fed. Cir. 2004) (*en banc*); *Crystal Semiconductor Corp. v. Tritech Microelectronics Int'l, Inc.*, 246 F.3d 1336, 1346 (Fed. Cir. 2001); *WMS Gaming Inc. v. Int'l Game Tech.*, 184 F.3d 1339, 1354 (Fed. Cir. 1999); *Read Corp. v. Portec, Inc.*, 970 F.2d 816 (Fed. Cir. 1992); *Gustafson, Inc. v. Intersystems Indus. Prods., Inc.,* 897 F.2d 508, 510 (Fed. Cir. 1990).

1    to account for the recent Supreme Court precedent in *Halo Electronics, Inc. v. Pulse Electronics,*
     *Inc.*, 136 S. Ct. 1923 (2016).

2

3         Arista's agrees with Cisco's proposed instruction, but seeks to add one sentence: "To
     prove that the sale of EOS+ is an act of willful infringement, Cisco must persuade you that EOS+

4    included new infringing functionality that was not present in EOS." That sentence (or any analog)
     was not present in this Court's Final Jury Instructions in *Nortek* and is improper. There is no

5    requirement that to prove willful infringement, infringing functionality must be "new" or
     "different" from prior infringing functionality. Arista has provided no authority in support of this

6    addition, and it is an incorrect statement of the law. Rather, the standard to prove willful
     infringement is governed by the analysis laid out by the Supreme Court recently in *Halo*

7    *Electronics*, which is reflected in Cisco's proposed instruction. *Halo* includes no mention or
     requirement of showing "new infringing functionality" to prove willful infringement. Cisco's

8    proposed instruction should be adopted without Arista's proposed addition.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1121178.02

**DISPUTED: Arista's Final Instruction No. 79 re Patent—Willful Patent Infringement**[199]

In this case, Cisco argues that Arista willfully infringed the '526 Patent by selling "EOS+" after Cisco filed its complaint. To prove willful infringement against Arista, Cisco must first persuade you that Arista infringed a valid claim of Cisco's patent. The requirements for proving such infringement were discussed in my prior instructions.

To prove willful infringement of a patent, Cisco must persuade you by a preponderance of the evidence that Arista had knowledge of the patent at issue and acted in bad faith, wantonly, maliciously, deliberately, consciously wrongfully, flagrantly, or with reckless disregard of any of the Asserted Claims of any of the Cisco Patents.  You must base your verdict on the knowledge and actions of Arista at the time the infringement happened.  Infringement alone is not enough to prove willfulness and mere knowledge of the '526 Patent at the time of infringement is not enough to prove willfulness.  To prove that the sale of EOS+ is an act of willful infringement, Cisco must persuade you that EOS+ included new infringing functionality that was not present in EOS.

You should consider all of the circumstances including the motive or intent of Arista in developing and selling the accused products, whether Arista knew or should have known that its conduct was unreasonably risky and whether Arista had a reasonable belief at the time of the alleged infringement that its products did not infringe any of the Asserted Claims of the '526 Patent.

**Arista's Position:**

Arista's proposed instruction clarifies that Cisco's theory of willfulness is based on the allegation that Arista sold "EOS+" after Cisco filed its complaint.  As the Court is aware, the post-

---

[199] Final Jury Instructions, *Nortek Air Solutions, LLC fka CES Group, LLC v. Energy Labs, Inc.*, No. 5:14-cv-02919-BLF, Dkt. 336 (Aug. 5, 2016); "*B.3.10,*" N.D. Cal. Model Patent Jury Instructions, citing 35 U.S.C. § 284; *In re Seagate Tech., LLC*, 497 F.3d 1360 (Fed. Cir. 2007); *Knorr-Bremse Systeme Fuer Nutzfahrzeuge GmbH v. Dana Corp.*, 383 F.3d 1337, 1345 (Fed. Cir. 2004) (*en banc*); *Crystal Semiconductor Corp. v. Tritech Microelectronics Int'l, Inc.,* 246 F.3d 1336, 1346 (Fed. Cir. 2001); *WMS Gaming Inc. v. Int'l Game Tech.*, 184 F.3d 1339, 1354 (Fed. Cir. 1999); *Read Corp. v. Portec, Inc.*, 970 F.2d 816 (Fed. Cir. 1992); *Gustafson, Inc. v. Intersystems Indus. Prods., Inc.,* 897 F.2d 508, 510 (Fed. Cir. 1990).

1

2

3

complaint release of EOS+ is Cisco's sole basis for its claim that Arista has willfully infringed the '526 patent.   ECF 58 at 1:27–2:6 (July 9, 2015) (Order Granting Defendant's Partial Motion to Dismiss, with Leave to Amend).  Given the potential complexity of Cisco's other theories of infringement, this instruction should make clear that the jury's determination regarding willfulness is limited to a narrow, specific context—the sale of EOS+.

4

5

6

7

      Further, Arista's proposal instructs the jury that, "[t]o prove that the sale of EOS+ is an act of willful infringement, Cisco must persuade you that EOS+ included new infringing functionality that was not present in EOS."  As the Court stated in granting Arista's Partial Motion to Dismiss, Cisco must show that Arista "did more than continue selling the alleged infringing product." *Id.* at 3:18–19.  Arista's proposal presents the jury with a factual question that must be resolved in order to support a finding of willfulness.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1121178.02

1    **STIPULATED: Final Instruction No. 80 re Patent—Patent Invalidity: Burden Of Proof**[200]

2    I will now instruct you on the rules you must follow in deciding whether Arista has proven

3    that the claims of the '526 patent are invalid.  Before discussing the specific rules, I want to

4    remind you about the standard of proof that applies to this defense.  To prove invalidity of any

5    patent claim, Arista must persuade you that a claim is invalid by clear and convincing evidence. In

6    other words, Arista must persuade you that it is highly probable that the claim is invalid.

7    When a party has the burden of proving any claim or defense by clear and convincing

8    evidence, it means that the party must present evidence that leaves you with a firm belief or

9    conviction that it is highly probable that the factual contentions of the claim or defense are true.

10    This is a higher standard of proof than proof by a preponderance of the evidence, but it does not

11    require proof beyond a reasonable doubt.[201]

12

13

14

15

16

17

18

19

20

21

22

23

24

---

25    [200] "*B.4.1,*" N.D. Cal. Model Patent Jury Instructions, citing *Microsoft Corp. v. i4i LTD*

26    *Partnership*, 131 S.Ct. 2238, 2242, 2251, ___ U.S. ___ (2011); *Buildex, Inc. v. Kason Indus., Inc.*,

27    849 F.2d 1461, 1463 (Fed. Cir. 1988); *Hybritech, Inc. v. Monoclonal Antibodies, Inc.*, 802 F.2d 1367, 1375 (Fed. Cir. 1986).

28    [201] Instruction No. 1.4, *Ninth Circuit Manual of Model Civil Jury Instructions* (2007).

-202-    Case No. 5:14-cv-5344-BLF

1121178.02

**STIPULATED: Final Instruction No. 81 re Patent—Prior Art**

Prior art may include publications or patents that disclose the claimed invention or elements of the claimed invention, which were published or patented before the invention was made or more than one year before the filing date of the patent application. However, prior art does not include a publication that describes the inventor's own work and was published less than one year before the date of invention.

In this case, you must determine the dates of invention for the asserted claims of the '526 Patent. The date of invention that you determine is related to the issue of whether the prior art described in the evidence was published or patented before the invention was made. Cisco contends that the date of invention for the Asserted Claims of the '526 Patent is November 17, 1999, and Arista contends that the date of invention for the '526 Patent was the filing date of the '526 Patent, June 28, 2000. As such, you must determine the dates of invention for the asserted claims of the '526 Patent.

The date of invention is presumed to be the filing date of the patent. Here, Arista has the burden of coming forward with evidence that there is anticipating prior art, then Cisco has the burden to come forward with evidence that it is entitled to the earlier filing date, and then, Arista has the burden to come forward with evidence that Cisco is not entitled to the benefit of the earlier filing date.

The date of invention may be earlier than the filing date of the patent if Cisco proved, by a preponderance of the evidence, that the invention was conceived earlier and thereafter the inventors were diligent in reducing the invention to practice.

Conception is the mental part of an inventive act, i.e., the formation in the mind of the inventor of a definite and permanent idea of the complete and operative invention as it is thereafter to be applied in practice, even if the inventor did not know at the time that the invention would work. Conception of an invention is complete when the idea is so clearly defined in the inventor's mind that, if the idea were communicated to a person having ordinary skill in the field of the technology, he or she would be able to reduce the invention to practice without undue research or

1    experimentation.  This requirement does not mean that the inventor has to have a prototype built,

2    or actually explain her or his invention to another person.  But, there must be some evidence that

3    confirms the date on which the inventor had the complete idea.  Conception may be proven when

4    the invention is shown in its complete form by drawings, disclosure to another person, or other

5    forms of evidence presented at trial.

6         Diligence means working continuously, though not necessarily every day.  There is no rule

7    requiring a specific kind of activity in determining whether the applicant was diligent in reducing

8    the invention to practice.  Diligence may be shown by a variety of activities, including the

9    diligence of an attorney in preparing the patent application.  Once a claimed invention is fully

10   described in a filed patent application, it is considered "reduced to practice."

11        In this case, the date of invention for the '526 Patent is presumed to be the filing date, June

12   28, 2000.  Cisco contends that the Asserted Claims are entitled to an earlier date of invention of at

13   least November 17, 1999 based on conception of the invention by at least November 17, 1999, and

14   diligence in its reduction to practice of the invention by at least June 28, 2000.  Arista contends

15   that the date of invention for the '526 patent is its filing date, June 28, 2000.  If necessary, you

16   must determine the date of inventions for the asserted claims of the '526 Patent.

17

18

19

20

21

22

23

24

25

26

27

28

1121178.02

### STIPULATED: Final Instruction No. 82 re Patent—Anticipation[202]

A patent claim is invalid if the claimed invention is not new. For the claim to be invalid because it is not new, all of its requirements must have existed in a single device or method that predates the claimed invention, or must have been described in a single previous publication or patent that predates the claimed invention. In patent law, these previous devices, methods, publications or patents are called "prior art references." If a patent claim is not new we say it is "anticipated" by a prior art reference.

The description in the written reference does not have to be in the same words as the claim, but all of the requirements of the claim must be there, either stated or necessarily implied, so that someone of ordinary skill in the field of computer networking looking at that one reference would be able to make and use the claimed invention. Anticipation of a claim must be determined on an element-by-element basis. A single prior art references must also disclose those elements as arranged in the claim.

Here is a list of the ways that Arista can show that a patent claim was not new:

- If the claimed invention was already publicly known or publicly used by others in the United States before the date of invention;

- If the claimed invention was already patented or described in a printed publication anywhere in the world before the date of invention;

---

[202] "*B.4.3a1,*" N.D. Cal. Model Patent Jury Instructions, citing 35 U.S.C. § 102(a), (c), (e), (f) and (g); *Flex-Rest, LLC v. Steelcase, Inc.,* 455 F.3d 1351, 1358-60 (Fed. Cir. 2006); *Invitrogen Corp. v. Biocrest Mfg., L.P.,* 424 F.3d 1374, 1379-82 (Fed. Cir. 2005); *Apotex U.S.A., Inc. v. Merck & Co.,* 254 F.3d 1031, 1035 (Fed. Cir. 2001); *Mycogen Plant Science, Inc. v. Monsanto Co.,* 243 F.3d 1316, 1330 (Fed. Cir. 2001); *Ecolochem, Inc. v. S. Cal. Edison Co.,* 227 F.3d 1361, 1367-70 (Fed. Cir. 2000); *Singh v. Brake,* 222 F.3d 1362, 1366-70 (Fed. Cir. 2000); *Pannu v. Iolab Corp.,* 155 F.3d 1344, 1349 (Fed. Cir. 1998); *Gambro Lundia AB v. Baxter Healthcare Corp.,* 110 F.3d 1573, 1576-78 (Fed. Cir. 1997); *Lamb-Weston, Inc. v. McCain Foods, Ltd.,* 78 F.3d 540, 545 (Fed. Cir. 1996); *In re Bartfeld,* 925 F.2d 1450 (Fed. Cir. 1985); *Ralston Purina Co. v. Far-Mar-Co, Inc.,* 772 F.2d 1570, 1574 (Fed. Cir. 1985); *American Stock Exch., LLC v. Mopies,* 250 F. Supp. 2d 323 (S.D.N.Y. 2003); *In re Wyer,* 655 F.2d 221, 226 (C.C.P.A. 1981).

- If the claimed invention was already made by someone else in the United States before the date of invention, if that other person had not abandoned the invention or kept it secret; or

- If the claimed invention was already described in another issued U.S. patent or published U.S. patent application that was based on a patent application filed before June 28, 2000 or the date of invention.

### STIPULATED: Final Instruction No. 83 re Patent—Obviousness[203]

Not all innovations are patentable.  A patent claim is invalid if the claimed invention would have been obvious to a person of ordinary skill in the field at the time the application was filed.  The court, however, is charged with the responsibility of making the determination as to whether a patent claim was obvious based upon your determination of several factual questions.

First, you must decide the level of ordinary skill in the field that someone would have had at the time the claimed invention was made.  In deciding the level of ordinary skill, you should consider all the evidence introduced at trial, including:

    1.   The levels of education and experience of persons working in the field;

    2.   The types of problems encountered in the field; and

    3.   The sophistication of the technology.

Cisco contends that the level of ordinary skill in the field would be possessed by someone with a "Bachelor's of science degree in electrical engineering, computer science or engineering, or a related field, and two to four years of work or research experience in the field of computer networking, or a Master's degree and one to two years of experience."  Arista contends that the level of ordinary skill in the field would be possessed by someone with "at least a bachelor's degree in computer science and 3-5 years of experience in systems development."

Second, you must decide the scope and content of the prior art.  In order to be considered as prior art to the '526 patent, these references must be reasonably related to the claimed invention of that patent.  A reference is reasonably related if it is in the same field as the claimed invention

---

[203] "*B.4.3b*," N.D. Cal. Model Patent Jury Instructions, citing 35 U.S.C. § 103; *Graham v. John Deere Co.*, 383 U.S. 1 (1966); *KSR Intern. Co. v. Teleflex, Inc.*, 550 U.S. 398, 407 (2007); *Ruiz v. A.B. Chance Co.*, 234 F.3d 654 (Fed. Cir. 2000); *Arkie Lures, Inc. v. Gene Larew Tackle, Inc.*, 119 F.3d 953, 957 (Fed. Cir. 1997); *Specialty Composites v. Cabot Corp.*, 845 F.2d 981, 991 (Fed. Cir. 1988); *Windsurfing Int'l, Inc. v. AMF, Inc.*, 782 F.2d 995, 1000 (Fed. Cir. 1986); *Pentec. Inc. v. Graphic Controls Corp.*, 776 F.2d 309, 313 (Fed. Cir. 1985). *See Novo Nordisk A/S v. Becton Dickinson & Co.*, 304 F.3d 1216, 1219-20 (Fed. Cir. 2002); *Wang Labs. v. Toshiba Corp.*, 993 F.2d 858, 864 (Fed. Cir. 1993); *Daiichi Sankyo Co. v. Apotex, Inc.*, 501 F.3d 1254, 1256 (Fed. Cir. 2007*); Brown & Williamson Tobacco Corp. v. Philip Morris Inc.*, 229 F.3d 1120, 1125 (Fed. Cir. 2000); *SIBIA Neurosciences, Inc. v. Cadus Pharm. Corp.*, 225 F.3d 1349, 1355 (Fed. Cir. 2000); *Ryko Mfg. Co. v. Nu-Star, Inc.*, 950 F.2d 714, 718-19 (Fed. Cir. 1991).

1  or is from another field to which a person of ordinary skill in the field would look to solve a

2  known problem.

3  　　　　Third, you must decide what difference, if any, existed between the claimed invention and

4  the prior art.

5  　　　　Finally, you must determine which, if any, of the following factors have been established

6  by the evidence:

7  　　　　1.  Commercial success of a product due to the merits of the claimed invention;

8  　　　　2.  A long felt need for the solution provided by the claimed invention;

9  　　　　3.  Unsuccessful attempts by others to find the solution provided by the claimed invention;

10 　　　　4.  Copying of the claimed invention by others;

11 　　　　5.  Unexpected and superior results from the claimed invention;

12 　　　　6.  Acceptance by others of the claimed invention as shown by praise from others in the

13 　　　　　　field or from the licensing of the claimed invention;

14 　　　　7.  Other evidence tending to show nonobviousness;

15 　　　　8.  Independent invention of the claimed invention by others before or at about the same

16 　　　　　　time as the named inventor thought of it; and

17 　　　　9.  Other evidence tending to show obviousness.

18

19 　　　　If present, commercial success of a product, long-felt need for the solution, unsuccessful

20 attempts by others, copying by others, unexpected and superior results, acceptance by others of the

21 claimed invention, and other evidence of nonobviousness, must be considered by you as an

22 indication that the claimed invention would not have been obvious as of the effective filing date of

23 the claimed invention.  Although you should consider any evidence of these factors, the relevance

24 and importance of any of them to your decision on whether the claimed invention would have

25 been obvious is up to you.

26

27

28

1    **STIPULATED: Final Instruction No. 84 re Patent—Damages: Burden Of Proof**[204]

2    I will instruct you about the measure of damages for Cisco's patent claim. By instructing

3    you on damages, I am not suggesting which party should win on any issue. If you find that Arista

4    infringed any valid claim of the '526 patent, you must then determine the amount of money

5    damages to be awarded to Cisco to compensate it for the infringement.

6    The amount of those damages must be adequate to compensate Cisco for the infringement.

7    A damages award should put the patent holder in approximately the financial position it would

8    have been in had the infringement not occurred, but in no event may the damages award be less

9    than a reasonable royalty. You should keep in mind that the damages you award are meant to

10   compensate Cisco and not to punish Arista.

11   Cisco has the burden to persuade you of the amount of its damages. You should award

12   only those damages that Cisco more likely than not suffered. While Cisco is not required to prove

13   its damages with mathematical precision, it must prove them with reasonable certainty. Cisco is

14   not entitled to damages that are remote or speculative.

---

25   [204] "*B.5.1,*" N.D. Cal. Model Patent Jury Instructions, citing 35 U.S.C. § 284; *Dow Chem. Co.*
26   *v. Mee Indus., Inc.*, 341 F.3d 1370, 1381-82 (Fed. Cir. 2003); *Grain Processing Corp. v. American*
     *Maize-Prod. Co.*, 185 F.3d 1341, 1349 (Fed. Cir. 1999); *Maxwell v. J. Baker, Inc.*, 86 F.3d 1098,
27   1108-09 (Fed. Cir. 1996); *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1544-45 (Fed. Cir. 1995)
28   (en banc).

1    **STIPULATED: Final Instruction No. 85 re Patent—Damages In The Form Of A Reasonable**

2    **Royalty: Definition of a "Reasonable Royalty"[205]**

3        A royalty is a payment made to a patent holder in exchange for the right to make, use or

4    sell the claimed invention.  This right is called a "license."  A reasonable royalty is the payment

5    for the license that would have resulted from a hypothetical negotiation between the patent holder

6    and the infringer taking place at the time when the infringing activity first began.  In considering

7    the nature of this negotiation, you must assume that the patent holder and the infringer would have

8    acted reasonably and would have entered into a license agreement.  You must also assume that

9    both parties believed the patent was valid and infringed.  Your role is to determine what the result

10   of that negotiation would have been.  The test for damages is what royalty would have resulted

11   from the hypothetical negotiation and not simply what either party would have preferred.

12       One way to calculate a royalty is to determine a one-time lump sum payment that the

13   infringer would have paid at the time of the hypothetical negotiation for a license covering all

14   sales of the licensed product for some period of time.  That period of time may include both past

15   and future sales.  When a one-time lump sum is paid, the infringer pays a single price for a license

16   covering both past and future infringing sales.

---

23      [205]  "B.5.7," N.D. Cal. Model Patent Jury Instructions, citing *Garretson v. Clark,* 111 U.S. 120

24   (1884); *Ericsson v. D-Link Sys., Inc.*, 773 F.3d 1201, 1226 (Fed. Cir. 2014); *VirnetX, Inc. v. Cisco Sys., Inc.*, 767 F.3d 1308, 1326-34 (Fed. Cir. 2014); *LaserDynamics, Inc. v. Quanta Computer,*

25   *Inc.,* 694 F.3d 51, 67-68 (Fed. Cir. 2012); *Lucent v. Gateway,* 580 F.3d 1301, 1336-39 (Fed. Cir. 2009)*; Golight, Inc., v. Wal-Mart Stores, Inc.*, 355 F.3d 1327, 1338 (Fed. Cir. 2004); *Maxwell v.*

26   *Baker, Inc.*, 86 F.3d 1098, 1108-10 (Fed. Cir. 1996); *Mahurkar v. C.R. Bard, Inc.*, 79 F.3d 1572, 1579-81 (Fed. Cir. 1996); *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1554 (Fed. Cir. 1995) (en

27   banc); *Georgia-Pacific Corp. v. United States Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970).

1    **STIPULATED: Final Instruction No. 86 re Patent—Damages: Date Of Commencement**[206]

2        Damages that Cisco may be awarded by you commence on the date that Arista has both

3    infringed and been notified of the '526 patent.  In this case, Cisco and Arista agree that date was

4    December 5, 2014.

---

[206] 35 U.S.C. § 287; *Crystal Semiconductor Corp. v. Tritech Microelectronics Int'l, Inc.*, 246 F.3d 1336 (Fed. Cir. 2001); *Nike Inc. v. Wal-Mart Stores*, 138 F.3d 1437, 1443-44 (Fed. Cir. 1998); *Maxwell v. Baker, Inc.*, 86 F.3d 1098, 1111-12 (Fed. Cir. 1996); *American Med. Sys. v. Medical Eng'g Corp.*, 6 F.3d 1523, 1534 (Fed. Cir. 1993); *Devices for Med., Inc. v. Boehl*, 822 F.2d 1062, 1066 (Fed. Cir. 1987).

1

**STIPULATED: Final Instruction No. 88 re Duty To Deliberate**[207]

2       Before you begin your deliberations, elect one member of the jury as your presiding juror.

3  That person will preside over the deliberations and serve as the spokesperson for the jury in court.

4       You shall diligently strive to reach agreement with all of the other jurors if you can do so.

5  Your verdict must be unanimous.

6       Each of you must decide the case for yourself, but you should do so only after you have

7  considered all of the evidence, discussed it fully with the other jurors, and listened to their views.

8       It is important that you attempt to reach a unanimous verdict but, of course, only if each of

9  you can do so after having made your own conscientious decision.  Do not be unwilling to change

10  your opinion if the discussion persuades you that you should.  But do not come to a decision

11  simply because other jurors think it is right, or change an honest belief about the weight and effect

12  of the evidence simply to reach a verdict.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

[207]  Instruction No. 3.1, *Ninth Circuit Manual of Model Civil Jury Instructions* (2007).

Case No. 5:14-cv-5344-BLF

FIRST AMENDED UNDISPUTED AND DISPUTED PROPOSED JURY INSTRUCTIONS

1121178.02

## **STIPULATED: Final Instruction No. 89 re Conduct Of The Jury**[208]

Because you must base your verdict only on the evidence received in the case and on these instructions, I remind you that you must not be exposed to any other information about the case or to the issues it involves. Except for discussing the case with your fellow jurors during your deliberations:

Do not communicate with anyone in any way and do not let anyone else communicate with you in any way about the merits of the case or anything to do with it. This includes discussing the case in person, in writing, by phone or electronic means, via email, via text messaging, or any Internet chat room, blog, website or application, including but not limited to Facebook, YouTube, Twitter, Instagram, LinkedIn, Snapchat, or any other forms of social media. This applies to communicating with your family members, your employer, the media or press, and the people involved in the trial. If you are asked or approached in any way about your jury service or anything about this case, you must respond that you have been ordered not to discuss the matter and to report the contact to the court.

Do not read, watch, or listen to any news or media accounts or commentary about the case or anything to do with it[, although I have no information that there will be news reports about this case]; do not do any research, such as consulting dictionaries, searching the Internet, or using other reference materials; and do not make any investigation or in any other way try to learn about the case on your own. Do not visit or view any place discussed in this case, and do not use Internet programs or other devices to search for or view any place discussed during the trial. Also, do not do any research about this case, the law, or the people involved—including the parties, the witnesses or the lawyers—until you have been excused as jurors. If you happen to read or hear anything touching on this case in the media, turn away and report it to me as soon as possible.

These rules protect each party's right to have this case decided only on evidence that has been presented here in court. Witnesses here in court take an oath to tell the truth, and the accuracy of their testimony is tested through the trial process. If you do any research or investigation

---

[208]    Ninth Circuit Model Jury Instruction, 3.2.

1   outside the courtroom, or gain any information through improper communications, then your

2   verdict may be influenced by inaccurate, incomplete or misleading information that has not been

3   tested by the trial process. Each of the parties is entitled to a fair trial by an impartial jury, and if

4   you decide the case based on information not presented in court, you will have denied the parties a

5   fair trial. Remember, you have taken an oath to follow the rules, and it is very important that you

6   follow these rules.

7        A juror who violates these restrictions jeopardizes the fairness of these proceedings. If any

8   juror is exposed to any outside information, please notify the court immediately.

FIRST AMENDED UNDISPUTED AND DISPUTED PROPOSED JURY INSTRUCTIONS

1121178.02

## STIPULATED: Final Instruction No. 90 re Communication With Court[209]

If it becomes necessary during your deliberations to communicate with me, you may send a note through the marshal, signed by your presiding juror or by one or more members of the jury. No member of the jury should ever attempt to communicate with me except by a signed writing; I will communicate with any member of the jury on anything concerning the case only in writing, or here in open court.  If you send out a question, I will consult with the parties before answering it, which may take some time.  You may continue your deliberations while waiting for the answer to any question.  Remember that you are not to tell anyone—including me—how the jury stands, numerically or otherwise, until after you have reached a unanimous verdict or have been discharged.  Do not disclose any vote count in any note to the court.

---

[209] Instruction No. 3.3, *Ninth Circuit Manual of Model Civil Jury Instructions* (2007).

1

## **STIPULATED: Final Instruction No. 91 re Return Of Verdict**[210]

2      A verdict form has been prepared for you. After you have reached unanimous agreement

3   on a verdict, your foreperson should complete the verdict form according to your deliberations,

4   sign and date it, and advise the [clerk] [bailiff] that you are ready to return to the courtroom.

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

---

[210]   Instruction No. 3.5, *Ninth Circuit Manual of Model Civil Jury Instructions* (2007).

1

**DISPUTED: Cisco's Position on Arista's Final Instruction No. 92 re Glossary**

2

Cisco's position is that no such instruction should be given.

3

4

**Cisco's Position:**

5

    This instruction should not be given.  Arista has proposed the use of a "glossary."  It is

6

multiple pages long (amidst jury instructions that are already extensive), and includes numerous concepts that are explained elsewhere in the instructions when necessary, while other defined

7

terms are never otherwise mentioned.  A glossary is not necessary for this case, and would likely

8

confuse jurors more than it would assist them; it would be error to provide such materials to the jury.  Further, Arista has cited no authority for this proposed instruction.  After Arista does so,

9

Cisco reserves the right to respond more fully and to address any such authorities.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1121178.02

**<u>DISPUTED: Arista's Final Instruction No. 92 re Glossary</u>**

**Some of the terms in this glossary will be defined in more detail in the instructions you are given. The definitions in the instructions must be followed and must control your deliberations.  The terms defined in this glossary relate to Cisco's patent infringement claim.**

Abstract:  A brief summary of the technical disclosure in a patent to enable the U.S. Patent and Trademark Office and the public to determine quickly the nature and gist of the technical disclosure in the patent.

Amendment:  A patent applicant's change to one or more claims or to the specification either in response to an office action taken by a Patent Examiner or independently by the patent applicant during the patent application examination process.

Anticipation:   A situation in which a claimed invention describes an earlier invention and, therefore, is not considered new and is not entitled to be patented.

Assignment:   A transfer of patent rights to another called an "assignee" who upon transfer becomes the owner of the rights assigned.

Claim:  Each claim of a patent is a concise, formal definition of an invention and appears at the end of the specification in a separately numbered paragraph.  In concept, a patent claim marks the boundaries of the patent in the same way that a legal description in a deed specifies the boundaries of land, i.e. similar to a land owner who can prevent others from trespassing on the bounded property, the inventor can prevent others from using what is claimed.  Claims may be independent or dependent.  An independent claim stands alone.  A dependent claim does not stand alone and refers to one or more other claims.  A dependent claim incorporates whatever the other referenced claim or claims say.

Conception: The complete mental part of the inventive act which must be capable of proof, as by drawings, disclosure to another, etc.

Drawings: The drawings are visual representations of the claimed invention contained in a patent application and issued patent, and usually include several figures illustrating various aspects of the claimed invention.

Elements:  The required parts of a device or the required steps of a method.  A device or method infringes a patent if it contains each and every requirement of a patent claim.

Embodiment:  A product or method that contains the claimed invention.

Enablement:  A description of the invention that is sufficient to enable persons skilled in the field of the invention to make and use the invention. The specification of the patent must contain such an enabling description.

Examination:  Procedure before the U.S. Patent and Trademark Office whereby a Patent Examiner reviews the filed patent application to determine if the claimed invention is patentable.

-218-                    Case No. 5:14-cv-5344-BLF

1121178.02

Filing Date:  Date a patent application, with all the required sections, has been submitted to the U.S. Patent and Trademark Office.

Infringement:  Violation of a patent occurring when someone makes, uses or sells a patented invention, without permission of the Cisco, within the United States during the term of the patent. Infringement may be direct, by inducement, or contributory.  Direct infringement is making, using or selling the patented invention without permission.  Inducing infringement is intentionally causing another to directly infringe a patent.  Contributory infringement is offering to sell or selling an item that is an important component of the invention, so that the buyer directly infringes the patent.  To be a contributory infringer one must know that the part being offered or sold is designed specifically for infringing the patented invention and is not a common component suitable for non-infringing uses.

Limitation:   A required part of an invention set forth in a patent claim.   A limitation is a requirement of the invention.  The word "limitation" is often used interchangeably with the word "requirement."

Nonobviousness:  One of the requirements for securing a patent. To be valid, the subject matter of the invention must not have been obvious to a person of ordinary skill in the field of the invention at the time of the earlier of the filing date of the patent application or the date of invention.

Office Action:  A written communication from the Patent Examiner to the patent applicant in the course of the application examination process.

Patent:   A patent is an exclusive right granted by the U.S. Patent and Trademark Office to an inventor to prevent others from making, using, offering to sell, or selling an invention within the United States, or from importing it into the United States, during the term of the patent.  When the patent expires, the right to make, use or sell the invention is dedicated to the public.  The patent has three parts, which are a specification, drawings and claims.   The patent is granted after examination by the U.S. Patent and Trademark Office of a patent application filed by the inventor which has these parts, and this examination is called the prosecution history.

Patent and Trademark Office (PTO):  An administrative branch of the U.S. Department of Commerce that is charged with overseeing and implementing the federal laws of patents and trademarks.  It is responsible for examining all patent applications and issuing all patents in the United States.

Prior Art:  Previously known subject matter in the field of a claimed invention for which a patent is being sought.  It includes issued patents, publications, and knowledge deemed to be publicly available such as trade skills, trade practices and the like.

Prosecution History:  The prosecution history is the complete written record of the proceedings in the PTO from the initial application to the issued patent.  The prosecution history includes the office actions taken by the PTO and the amendments to the patent application filed by the applicant during the examination process.

Reads On:  A patent claim "reads on" a device or method when each required part (requirement) of the claim is found in the device or method.

Reduction to Practice:  The invention is "reduced to practice" when it is sufficiently developed to show that it would work for its intended purpose.

Reexamination: A process in which a patent is reexamined by the PTO to determine whether one or more of the claims are patentable with respect to submitted prior art which may consist only of

1

2

prior patents or printed publications.  An "ex parte" reexamination is initiated by Cisco or a third party, but does not include the further participation of any third party.  An "inter partes" reexamination is initiated by a third party who continues to participate in the proceedings.

3

Requirement:   A required part or step of an invention set forth in a patent claim. The word "requirement" is often used interchangeably with the word "limitation."

4

5

Royalty:  A royalty is a payment made to the owner of a patent by a non-owner in exchange for rights to make, use or sell the claimed invention.

6

7

Specification:  The specification is a required part of a patent application and an issued patent.  It is a written description of the invention and of the manner and process of making and using the claimed invention.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Case No. 5:14-cv-5344-BLF

FIRST AMENDED UNDISPUTED AND DISPUTED PROPOSED JURY INSTRUCTIONS

1121178.02

**DISPUTED: Cisco's Final Instruction No. 93 re Copyright—Abandonment**[211]

Arista contends that a copyright does not exist in Cisco's works because Cisco abandoned the copyrights. Cisco cannot claim ownership of the copyright if it was abandoned. In order to show abandonment, Arista has the burden of proving each of the following by a preponderance of the evidence:

1. Cisco intended to surrender rights in the work; and

2. An act by Cisco evidencing that intent.

Mere inaction does not constitute abandonment of the copyright; however, this may be a factor for you to consider in determining whether Cisco has abandoned the copyright.

If you find that Cisco has proved its copyright infringement claim, your verdict should be for Cisco unless you find that Arista has proved both of the two elements of this affirmative defense, in which case your verdict should be for Arista.

**Cisco's Position:**

Cisco's proposed instruction replicates Instruction No. 17.22 from the *Ninth Circuit Manual of Model Civil Jury Instructions* ("*Model*") in form and substance, and is an accurate statement of the law of the Ninth Circuit.

Arista's proposed instruction is from the ABA Model Jury Instruction rather than the *Model*. Arista provides no justification for departing from following the *Model*, which is more efficient and clearly lays out the two required elements (including explicit reference to an "act" by Cisco, which Arista's instruction does not include but is an element under Ninth Circuit law). Further, Arista's proposed instruction addresses issues such as affixing a copyright notice, which is relevant only for works brought under the 1909 Copyright Act, and thus has no applicability here. *See Model* Instruction No. 17.22 (instruction on copyright notice "should be used if the copyright infringement action is brought under the 1909 Act).

---

[211] Instruction No. 17.22, *Ninth Circuit Manual of Model Civil Jury Instructions* (2007).

**DISPUTED: Arista's Final Instruction No. 93 re Copyright—Abandonment**[212]

Arista claims that it is not liable for copyright infringement because Cisco has abandoned its copyright. To find that Cisco abandoned its copyright, you must find that Cisco demonstrated an intent to surrender its rights in the copyrighted work. Mere inaction alone by Cisco does not constitute abandonment. However, inaction can be factored in with other evidence to determine whether or not Cisco demonstrated the necessary intent to surrender its rights in its work. For example, such intent to surrender rights is demonstrated if Cisco permitted broad circulation of the copyrighted work without a copyright notice affixed, or has failed over an extended period to prevent others from infringing the copyrighted work.

Arista has the burden to prove by a preponderance of the evidence that Cisco has abandoned its copyright. Should you find that Arista has satisfied this burden, then you should find in favor of Arista on the claim of copyright infringement.

**Arista's Position:**

Arista proposes to use, verbatim, Instruction No.1.6.8 from the ABA Model Jury Instructions, Copyright, Trademark, and Trade Dress Litigation for its affirmative defense of copyright abandonment.

Arista's proposed instruction is substantially similar to Instruction No. 17.22 of the current version of the Ninth Circuit's Model Civil Jury Instructions (last updated 6/2016), which Cisco proposes. The ABA Model Jury Instruction No.1.6.8 and the Ninth Circuit's Instruction No. 17.22 both require Arista to show by a preponderance of the evidence that Cisco demonstrated intent to surrender its rights in the work. Both instructions also affirmatively state that, while inaction alone does not constitute abandonment, it may be considered with other evidence to determine whether Cisco demonstrated the necessary intent to abandon the copyright.

Cisco seeks to also include language requiring an act evidencing its intent to surrender its rights. Cisco's proposed instruction is redundant and threatens to confuse the jury. This factor is already implied by the ABA model's statement that "inaction alone" does not constitute abandonment, but Cisco's instruction does not explain the meaning of the requirement. The ABA model does.

In particular, the ABA model provides additional clarity, citing two classic examples

---

[212] ABA Model Jury Instructions, Copyright, Trademark, and Trade Dress Litigation, Instruction 1.6.8.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

demonstrating a copyright holder's intent to surrender.  Accordingly, if the Court intends to give any instruction like the one Cisco has proposed, Arista requests that the Court explain that intent to surrender rights is demonstrated if Cisco permitted broad circulation of the copyrighted work without a copyright notice affixed, or has failed over an extended period to prevent others from infringing the copyrighted work.  *See* 4-13 Nimmer on Copyright § 13.06 (noting that "the wide and general circulation of copies of a work by the copyright owner, or with his acquiescence, without a copyright notice affixed thereto may constitute an overt act indicating an intent to abandon copyright" and an intent to abandon may also be found where "over a long period of time the copyright owner did not attempt to prevent others from infringing his copyright").

1121178.02

1    **DISPUTED: Cisco's Position on Arista's Final Instruction No. 94 re Copyright—Waiver**

2         Cisco's position is that no such instruction should be given.

3

4    **Cisco's Position:**

5         This instruction should not be given.  There is no independent affirmative defense of
waiver that is not duplicative of an affirmative defense of abandonment.  *See* 4 NIMMER ON
6    COPYRIGHT § 13.06 ("[S]trictly speaking, 'waiver' itself does not serve as a defense to copyright
infringement.  Instead, ***abandonment*** of the copyright  (whether by plaintiff herself or her
7    predecessor in interest) constitutes an effective defense in an infringement action.") (emphasis in
8    original, footnotes omitted).  If the Court should disagree, Cisco respectfully reserves its right to
propose a proper instruction on waiver

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

FIRST AMENDED UNDISPUTED AND DISPUTED PROPOSED JURY INSTRUCTIONS
1121178.02

1

**DISPUTED: Arista's Final Instruction No. 94 re Copyright—Waiver[213]**

2

3    Arista contends that Cisco waived its rights to enforce the copyrights at issue. In order to

prove waiver of its rights to protect its copyrights, Arista must show by a preponderance of the

4    evidence that Cisco, with full knowledge of the material facts, intentionally relinquished its rights

5    to enforce the copyrights it asserts.

6    A waiver may be expressed, based on the words of the waiving party, or implied, based on

7    conduct so inconsistent with the intent to enforce a right as to induce a reasonable belief that such

8    right has been relinquished. Waiver does not require any act or conduct by the other party.

9

10

11    **Arista's Position:**

12    The parties disagree over whether there is an independent affirmative defensive of waiver,
separate from abandonment. Cisco argues against any jury instruction on the defense of waiver
13    and has no proposal of its own. However, the defenses of abandonment and waiver are distinct.
"Waiver, properly construed, refers only to a decision not to enforce rights against a particular
14    party and may be contrasted with abandonment, which concerns a decision to relinquish all (or
arguably some) rights in the work as against the world." 2 Patry on Copyright § 5:157. Arista
15    therefore submits that the jury should be instructed as to both defenses.

16

17

18

19

20

21

22

23

24

25

26

27    [213] *Qualcomm Inc. v. Broadcom Corp.*, 548 F.3d 1004, 1019-1020 (Fed. Cir. 2008); *United States v. King Features Entm't, Inc.*, 843 F.2d 394, 399 (9th Cir. 1988).

28

-225-    Case No. 5:14-cv-5344-BLF

1121178.02

1   Dated:  October 26, 2016                    Respectfully submitted,

2                                               /s/ John M. Neukom

3                                               Kathleen Sullivan (SBN 242261)
                                                kathleensullivan@quinnemanuel.com
                                                QUINN EMANUEL URQUHART &
4                                               SULLIVAN LLP
                                                51 Madison Avenue, 22nd Floor
5                                               New York, NY 10010
                                                Telephone: (212) 849-7000
6                                               Facsimile: (212) 849-7100

7                                               Sean S. Pak (SBN 219032)
                                                seanpak@quinnemanuel.com
8                                               Amy H. Candido (SBN 237829)
                                                amycandido@quinnemanuel.com
9                                               John M. Neukom (SBN 275887)
                                                johnneukom@quinnemanuel.com.
10                                              QUINN EMANUEL URQUHART &
                                                SULLIVAN LLP
11                                              50 California Street, 22nd Floor
                                                San Francisco, CA 94111
12                                              Telephone: (415) 875-6600
                                                Facsimile: (415) 875-6700
13
                                                Steven Cherny (*admitted pro hac vice*)
14                                              steven.cherny@kirkland.com
                                                KIRKLAND & ELLIS LLP
15                                              601 Lexington Avenue
                                                New York, New York 10022
16                                              Telephone: (212) 446-4800
                                                Facsimile: (212) 446-4900
17
                                                Adam R. Alper (SBN 196834)
18                                              adam.alper@kirkland.com
                                                KIRKLAND & ELLIS LLP
19                                              555 California Street
                                                San Francisco, California  94104
20                                              Telephone: (415) 439-1400
                                                Facsimile: (415) 439-1500
21
                                                Michael W. De Vries (SBN 211001)
22                                              michael.devries@kirkland.com
                                                KIRKLAND & ELLIS LLP
23                                              333 South Hope Street
                                                Los Angeles, California 90071
24                                              Telephone: (213) 680-8400
                                                Facsimile: (213) 680-8500
25
                                                *Attorneys for Plaintiff Cisco Systems, Inc.*
26   DATED:  October 26, 2016                   Respectfully submitted,

27
                                                /s/  Brian L. Ferrall
28

                                        -226-                    Case No. 5:14-cv-5344-BLF
                          FIRST AMENDED UNDISPUTED AND DISPUTED PROPOSED JURY INSTRUCTIONS
1121178.02

KEKER & VAN NEST LLP
ROBERT A. VAN NEST - # 84065
rvannest@kvn.com
BRIAN L. FERRALL - # 160847
bferrall@kvn.com
DAVID J. SILBERT - # 173128
dsilbert@kvn.com
MICHAEL S. KWUN - # 198945
mkwun@kvn.com
633 Battery Street
San Francisco, CA 94111-1809
Telephone:    415 391 5400
Facsimile:    415 397 7188

*Attorneys for Defendant Arista Networks, Inc.*

## ATTORNEY ATTESTATION

I hereby attest, pursuant to Local Rule 5-1(i)(3), that the concurrence in the filing of this document has been obtained from the signatory indicated by the "conformed" signature (/s/) of John M. Neukom within this e-filed document.

/s/    *Brian L. Ferrall*