# EXHIBIT 44

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

```
                                                         Page 1
 1           UNITED STATES DISTRICT COURT
 2           NORTHERN DISTRICT OF CALIFORNIA
 3                SAN JOSE DIVISION
 4
     CISCO SYSTEMS, INC.     Case No.: 5:14-cv-05344-BLF(PSG)
 5
                  Plaintiff,
 6
          v.
 7
     ARISTA NETWORKS, INC.
 8
                  Defendants.
 9   _____
10
11
12
13      * HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY *
14        VIDEOTAPED DEPOSITION OF PHILLIP REMAKER
15               Palo Alto, California
16             Wednesday, March 30, 2016
17                    Volume 1
18
19
20
21   Reported by:
22   LESLIE JOHNSON
23   RPR, CSR No. 11451
24   Job No.: 2281748
25   PAGES 1 - 190
```

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

---

### Page 2

```
 1       UNITED STATES DISTRICT COURT
 2    FOR THE NORTHERN DISTRICT OF CALIFORNIA
 3              SAN JOSE DIVISION
 4
      CISCO SYSTEMS, INC.    Case No.: 5:14-cv-05344-BLF(PSG)
 5
                Plaintiff,
 6
           v.
 7
      ARISTA NETWORKS, INC.
 8
                Defendants.
 9
10
11
12
13
14    * HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY *
15
16
17       VIDEOTAPED DEPOSITION OF PHILLIP REMAKER, Volume 1,
18    taken on behalf of Defendant, at 601 California Avenue,
19    Palo Alto, California, beginning at 9:31 a.m. and ending
20    at 5:27 p.m., on Wednesday, March 30, 2016, before
21    LESLIE JOHNSON, Certified Shorthand Reporter No. 11451.
22
23
24
25
```

### Page 3

```
 1   APPEARANCES:
 2
 3   FOR PLAINTIFF CISCO SYSTEMS, INC.:
 4       QUINN EMANUEL URQUHART & SULLIVAN LLP
 5       BY: JOHN (JAY) NEUKOM, ESQ.
 6       50 California Street, 22nd Floor
 7       San Francisco, California  94111
 8       (415)875-6600
 9       johnneukom@quinnemanuel.com
10   FOR DEFENDANT ARISTA NETWORKS, INC.:
11       KEKER & VAN NEST LLP
12       BY: BRIAN L. FERRALL, ESQ.
13          RYAN WONG, ESQ.
14       633 Battery Street
15       San Francisco, California  94111
16       (415)391-5400
17       bferrall@kvn.com
18       rwong@kvn.com
19   ALSO PRESENT:
20       SEAN GRANT, Videographer
```

### Page 4

```
                    I N D E X

WITNESS                               EXAMINATION
PHILLIP REMAKER
Volume 1

    BY MR. FERRALL                         8

            EXHIBITS
         PHILLIP REMAKER
NUMBER        DESCRIPTION              PAGE
Exhibit 410  PowerPoint titled "Understanding    52
             Cisco Culture"; 21 pages

Exhibit 411  Draft document titled "Phil         64
             Remaker: Recertifying Keeps 10-Year
             CCIE At the Top of His Game"; 2 pages

Exhibit 412  Draft document titled "Cisco        67
             Services Industry and Standards
             Strategy"; Bates stamped
             CSI-CLI-01705202 to 226
Exhibit 413  Document entitled "Parser Police:   101
             Where can we go from here?"; Bates
             stamped CSI-CLI-02635203 to 232
Exhibit 414  E-mail dated 10/21/2004 from David  115
             Hsiao to qisw-losx-dev@cisco.com,
             et al.; Bates stamped
             CSI-CLI-01119556 to 58

Exhibit 415  E-mail chain, top e-mail dated      127
             11/18/2014 from Phillip Remaker to
             Manas Moothedath; Bates stamped
             CSI-CLI-01334598 to 99
```

### Page 5

```
            EXHIBITS (Cont.)
           PHILLIP REMAKER
NUMBER        DESCRIPTION              PAGE
Exhibit 416  E-mail chain, top e-mail dated      129
             May 24, 2013, from Douglas Gourlay
             to Kenneth Duda, Jeff Hirschman,
             Andy Bechtolsheim; Bates stamped
             ARISTANDCA10798303
Exhibit 417  E-mail chain, top e-mail dated      133
             2/22/2012 from Phillip Remaker to
             Monique Morrow, et al.; Bates
             stamped CSI-CLI-01330908 to 909

Exhibit 418  E-mail thread, top e-mail dated     135
             2/22/2012, from Phillip Remaker to
             Carlos Pignataro; Bates stamped
             CSI-CLI-01330910 to 11
Exhibit 419  E-mail thread, top e-mail dated     137
             2/22/2012, fro Phillip Remaker to
             Kirk Lougheed; Bates stamped
             CSI-ANI-0054337 and 337-1

Exhibit 420  E-mail thread, top e-mail dated     139
             2/22/2012, from Phillip Remaker to
             Carlos Pignataro; Bates stamped
             CSI-CLI-01330914 to 15
Exhibit 421  E-mail thread, top e-mail dated     144
             9/12/2013, from Phillip Remaker to
             Kirk Lougheed; Bates stamped
             CSI-CLI-01283493 to 94

Exhibit 422  E-mail dated 11/22/2005, from       148
             Phillip Remaker; Bates stamped
             CSI-CLI-00810106

Exhibit 423  E-mail dated 4/15/2008, from Phillip 151
             Remaker to Rick Pratt; Bates stamped
             CSI-CLI-01133437

Exhibit 424  E-mail thread, top e-mail dated     159
             8/2/2007, from Dave McNamee to
             Pradeep Kathail, et al.; Bates
             stamped CSI-CLI-01130272 to 74
```

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

|   | EXHIBITS (Cont.) |   |
|---|---|---|
|   | PHILLIP REMAKER |   |
| NUMBER | DESCRIPTION | PAGE |
| Exhibit 425 | E-mail thread, top e-mail dated 5/7/2004, from Andrea Westerinen to Max Pritikin; Bates stamped CSI-CLI-02906678 to 79 | 165 |
| Exhibit 426 | PowerPoint entitled "Innovation @ Cisco"; Bates stamped CSI-CLI-01336695 to 717 | 172 |
| Exhibit 427 | Metadata; 1 page | 173 |
| Exhibit 428 | E-mail dated 6/17/2015, from Phillip Remaker to Fred Baker, et al.; Bates stamped CSI-CLI-01336225 to 27 | 180 |

PREVIOUSLY MARKED

| Exhibit 136 | LinkedIn page for Tony Li; 8 pages | 132 |

\* \* \*

Page 6

---

Palo Alto, California, Wednesday, March 30, 2016
9:31 a.m.

THE VIDEOGRAPHER: Good morning. We're on the record. The time is 9:31 a.m. and the date is March 30th, 2016. This begins of videotaped deposition of Mr. Phillip remaker. My name is Sean Grant, here with our court reporter Leslie Johnson. We're here from Veritext Legal Solutions at the request of counsel for Defendant. This deposition is being held at Wilson Sonsini in Palo Alto, California. The caption of this case is Cisco Systems, Inc. versus Arista Networks, Inc., Case No. 5414-CV-05344-BLF.

Please note that audio and video recording will take place unless all parties have agreed to go off the record. Microphones are sensitive and they pick up whispers, private conversations or cellular interference.

At this time, will counsel please identify themselves and state whom they represent.

MR. FERRALL: Brian Ferrall of Keker & Van Nest on behalf of Defendant Arista Networks.

MR. WONG: Ryan Wong, Keker & Van Nest on behalf of Arista Networks.

Page 7

---

MR. NEUKOM: John Neukom for the plaintiff and also representing today the witness.

THE VIDEOGRAPHER: Thank you. The certified court reporter, please swear in the witness.

PHILLIP REMAKER,
having been administered an oath, was examined and testified as follows:

EXAMINATION
BY MR. FERRALL:
Q. Good morning.
A. Good morning.
Q. Please state your full name.
A. Phillip Remaker.

[redacted]

Q. Have you ever been deposed before?
A. I have been deposed before.
Q. How many times?
A. Once.
Q. What was that matter?
A. It was a patent litigation matter.
Q. Okay. Involving Cisco?

Page 8

---

A. Yes.
Q. Who was the other party in that case?
A. I don't recall.
Q. Okay. How long ago was that deposition?
A. Probably 8 to 10 years ago.
Q. I'll just remind you. You understand you're under oath today?
A. I understand.
Q. And is there any reason you can't provide truthful testimony today?
A. There is not.
Q. You understand I'm sure that your counsel may make objections periodically, but unless there is an instruction not to answer a question, I'm going to ask you to answer that question to the best of your ability. Okay?
A. Okay.
Q. And if you don't understand a question, let me know. I'll try to clarify that. All right?
A. Okay.
Q. If you do answer a question, I'm going to assume that you understood it. Okay?
A. Okay.
Q. Fair?
    And of course, we'll take breaks

Page 9

Veritext Legal Solutions
866 299-5127

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

## Page 54

1  such as this?
2     A. It was my idea.
3     Q. Let me ask you to turn to page 8 of this
4  exhibit. This slide is entitled "Engineering
5  Philosophy."
6        Do you see that?
7     A. Yes.
8     Q. Can you tell me what the purpose of these
9  bullet points under "Engineering Philosophy" was?
10    A. Can you be specific?
11    Q. Yeah. Why did you feel it was important
12 or necessary to convey these points about
13 engineering philosophy?
14    A. Some of these points help understand the
15 way a product is designed and the way it behaves as
16 well as the best way to interact with your peers in
17 engineering.
18    Q. Whose engineering philosophy does this
19 reflect? Is this Cisco's or TAC or what?
20    A. This is actually --
21    MR. NEUKOM: Stop. Remember, it's
22 important to make sure that Mr. Ferrall is done
23 asking the question.
24 BY MR. FERRALL:
25    Q. All right. I was done.

## Page 55

1        Do you want the question read back?
2     A. Yes, please.
3     Q. Okay. I'll just restate it.
4        My question was, whose engineering
5  philosophy does this reflect?
6     A. This is my personal interpretation of the
7  behavior of engineering.
8     Q. Behavior of engineering generally or
9  engineering at Cisco or something else?
10    A. This is specifically the engineering at
11 Cisco.
12    Q. The second bullet point, can you read that
13 for me?
14    A. "Be liberal in what you accept and strict
15 in what you send."
16    Q. Do you know where that pearl of wisdom
17 comes from?
18    A. I believe that it came from the Internet
19 Engineering Task Force or IETF.
20    Q. And what do you understand that to mean?
21    A. Protocols especially can be complicated,
22 and it's easy for somebody to make a mistake when
23 designing a protocol.
24       The idea is that a software or a system
25 should be tolerant of errors and mistakes and make a

## Page 56

1  best guess of how to behave, rather than falling
2  back on pedantic exactness and causing a failure.
3        And the second part is that we should
4  adhere and hew very closely without mistakes to
5  standards.
6     Q. And why is it that you say we should hew
7  very closely to standards?
8     A. We can't necessarily trust a third-party
9  device will be as forgiving as our device will be.
10    Q. And so why does that support the
11 philosophy of hewing closely to a standard?
12       MR. NEUKOM: Objection. Asks for opinion
13 and vague.
14       THE WITNESS: The purpose of a protocol is
15 to achieve some customer end, and to the extent you
16 can do so, without causing a failure is important to
17 customers.
18 BY MR. FERRALL:
19    Q. Can you read the next bullet point on
20 slide 8?
21    A. "Bug for bug compatibility (nerd knob)."
22    Q. What does that mean?
23    A. In some cases, a third party may create a
24 bug beyond the realm of what could be acceptable
25 within the bounds of a standard, but nevertheless,

## Page 57

1  that bug is out in the wild and causing problems for
2  customers. The ability to allow our product to work
3  in the face of that bug is more important than
4  adhering to the standard. So the ability to add a
5  feature, a command, or something for a customer in
6  order to cope with that bug is important to our
7  customers. So it's a continuation of the idea prior
8  to it.
9     Q. And what does "nerd knob" mean?
10    A. A nerd knob is a setting that would only
11 be set by somebody who had very deep knowledge of
12 why it should be set. So the person with deep
13 knowledge is a nerd, and the command is the knob.
14    Q. Okay. And then the last bullet point on
15 this slide says "Cisco is Cisco's first best
16 customer."
17       Do you see that?
18    A. Yes.
19    Q. What does that mean?
20    A. Cisco is the first consumer of Cisco's
21 products. There is a program at Cisco called "Cisco
22 at Cisco." We are very leading edge in adopting our
23 own products. And the idea for all products is,
24 before we give it to our customers, it's going to be
25 good enough for us first.

Pages 54 to 57

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

**Page 150**

1  difference was between the way Juniper would expand
2  the command after typing "sh" space versus how Cisco
3  would do it?
4      A.  Once you type enough characters for the
5  Cisco CLI to recognize the word, it will act as if
6  you typed the entire word.  Whereas, the Juniper CLI
7  apparently finished the word for you when you
8  pressed space.
9      Q.  Oh, so the Cisco CLI didn't finish the
10 word, it just --
11     A.  Accepted the abbreviated form.
12     Q.  I see.
13         Did you ever come to learn of other
14 companies characterizing their CLI as being similar
15 to Cisco's?
16     A.  I think there were some companies that
17 used some commands similar to Cisco's.
18     Q.  When did you first learn of that?
19     A.  Probably around 1998 or 1999.
20     Q.  Do you remember what companies you learned
21 had commands similar to Cisco's?
22     A.  I believe that Redback Networks used some
23 commands similar to Cisco's commands.
24     Q.  How did you learn that?
25     A.  I don't remember.

**Page 151**

1      Q.  Were there other companies you learned
2  about having commands similar to Cisco's in the --
3  before 2000?
4      A.  None that I can recall right away.
5      Q.  How about after 2000?  Did you come to
6  learn of other companies that had commands similar
7  to Cisco's?
8          MR. NEUKOM:  Objection.  Misstates prior
9  testimony and vague.
10         THE WITNESS:  I presume that Arista uses
11 commands similar to Cisco commands based on the fact
12 that I've been asked to testify today.
13 BY MR. FERRALL:
14     Q.  Okay.  Well, I asked you about Arista
15 already.  So let's talk about other companies.
16         Are you familiar with any other company
17 using commands similar to Cisco's?
18     A.  Not that I can recall.
19         (Exhibit 423 marked for identification.)
20 BY MR. FERRALL:
21     Q.  I'm going to hand you what's been marked
22 as Exhibit 423, which is an e-mail from you dated
23 April 15, 2008, bearing control numbers CSI-CLI
24 01133437.  This is an e-mail you wrote, right,
25 Mr. Remaker?

**Page 152**

1      A.  Yes.
2          MR. NEUKOM:  I don't know who this error
3  is on.  Maybe it's just the way the document was
4  produced, but I'll take a standing objection to any
5  and all questions on this document on the basis that
6  it appears to be an incomplete document.
7          MR. FERRALL:  Why do you say that?
8          MR. NEUKOM:  I say that just because this
9  appears to me to be -- again, maybe this actually is
10 the document, but what I'm concerned about is this
11 appears to be an April 15 e-mail from the witness,
12 which is a reply.  I'm looking at the subject line
13 with the letters RE followed by a colon, and there
14 is -- whatever the underlying -- whatever the e-mail
15 is that the witness was replying to is not on here.
16 So maybe -- maybe this is the way the document
17 actually exists, but it doesn't appear that way, at
18 least based on its face.  So I'll have to take a
19 standing objection on that basis until we get that
20 resolved.
21 BY MR. FERRALL:
22     Q.  Do you recognize Exhibit 423, Mr. Remaker?
23     A.  I do.
24     Q.  What were the reasons why you wrote it?
25     A.  I don't recall.  It looks like it's a

**Page 153**

1  reply in the middle of a conversation.
2      Q.  Who is Mr. Pratt?
3      A.  Mr. Pratt is an engineer, development
4  engineer, at Cisco Systems.
5      Q.  The Re line says, "IOS CLI versus
6  underlying OS."
7          Do you know what that's referring to?
8      A.  I do not without further context.
9      Q.  So you start this e-mail by writing, "I
10 would describe the IOS command set as an" -- I think
11 that should be "an," right? -- "emergent syntactic
12 anarchy (kind of like Perl, if you will)."
13         Do you see that?
14     A.  Yes.
15     Q.  And was I right to -- the "and" in that
16 first sentence should be "an"?
17     A.  That is a -- yes, that is correct.
18     Q.  Okay.  What do you mean by "emergent
19 syntactic anarchy"?
20         MR. NEUKOM:  Objection.  The document
21 speaks for itself.
22         THE WITNESS:  The syntax is not fixed but
23 developed by individual developers and therefore
24 emergent.
25 ////

Pages 150 to 153

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

---

**Page 186**

1  remind you that I'm not a lawyer.
2  BY MR. FERRALL:
3  Q. No.
4  I am trying to get that clarification.
5  Did you mean litigation there?
6  A. The litigation is what we were talking
7  about.
8  Q. Okay. Legislation is when like Congress
9  passes law. There is no such thing at Cisco about
10 Arista legislation, is there?
11 A. Not that I'm aware of, no.
12 MR. NEUKOM: You just wait.
13 BY MR. FERRALL:
14 Q. So on this bullet point, now that we've
15 clarified that "legislation" means "litigation,"
16 your point was, you would have preferred that the DE
17 community be more involved and informed about the
18 Arista litigation?
19 MR. NEUKOM: Objection. Mischaracterizes
20 the document.
21 THE WITNESS: The document bullet point
22 was intended that the most senior engineers be
23 informed of things that they might get questions
24 about.
25 ////

---

**Page 187**

1  BY MR. FERRALL:
2  Q. And why was the Arista litigation the
3  example you choose to include in this bullet point
4  about getting controversial issues in front of us?
5  A. A number of the distinguished engineers
6  were asked about the Arista legislation when it
7  was -- pardon me -- the Arista litigation when it
8  was announced and were frustrated that they weren't
9  able to provide any answers to people asking them
10 about it.
11 Q. Is the Arista litigation a controversial
12 issue?
13 A. The Arista litigation has resulted in
14 questions from people inside and outside Cisco to
15 our distinguished engineers.
16 Q. Such as what?
17 A. What is the litigation about. What is
18 Cisco trying to accomplish. Questions like that.
19 Q. Why is that controversial?
20 A. It's controversial because the
21 distinguished engineers pride themselves on being
22 deeply informed and able to ask any questions that
23 are asked of them. The controversy arises from the
24 fact that we were uninformed of an issue that would
25 generate a lot of questions.

---

**Page 188**

1  Q. Okay. Well, Mr. Remaker -- Remaker,
2  sorry. I almost made it through the whole
3  deposition without messing up your name.
4  So I have no further questions. This is
5  the end of your personal deposition, I guess, unless
6  Mr. Neukom has questions.
7  MR. NEUKOM: Not at this time, no.
8  MR. FERRALL: Thank you.
9  THE VIDEOGRAPHER: This concludes today's
10 videotaped deposition of Mr. Phillip Remaker. We're
11 off the record at 5:27 p.m.
12 (TIME NOTED: 5:27 P.M.)

---

**Page 189**

DECLARATION UNDER PENALTY OF PERJURY

I, PHILLIP REMAKER, the witness herein, declare under penalty of perjury that I have read the foregoing in its entirety; and that the testimony contained therein, as corrected by me, is a true and accurate transcription of my testimony elicited at said time and place.

Executed this _____ day of _____ 2016, at _____, _____.
(City)         (State)

_____
PHILLIP REMAKER

---

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

```
 1        REPORTER'S CERTIFICATION
 2        I, Leslie Johnson, a Certified Shorthand
 3   Reporter of the State of California, do hereby certify:
 4        That the foregoing proceedings were taken
 5   before me at the time and place herein set forth; that
 6   any witnesses in the foregoing proceedings, prior to
 7   testifying, were administered an oath; that a record of
 8   the proceedings was made by me using machine shorthand
 9   which was thereafter transcribed under my direction;
10   that the foregoing transcript is a true record of the
11   testimony given.
12        Further, that if the foregoing pertains to
13   the original transcript of a deposition in a Federal
14   Case, before completion of the proceedings, review
15   of the transcript [ ] was [ ] was not requested.
16   I further certify I am neither financially interested in
17   the action nor a relative or employee of any attorney or
18   any party to this action.
19        IN WITNESS WHEREOF, I have this date
20   subscribed my name.
21   Dated: April 13, 2016
22
23            <%signature%>
24            LESLIE JOHNSON
25            CSR No. 11451, RPR, CCRR
```

Page 190