Kathleen Sullivan (SBN 242261)
kathleensullivan@quinnemanuel.com
QUINN EMANUEL URQUHART &
SULLIVAN LLP
51 Madison Avenue, 22nd Floor
New York, NY 10010
Telephone: (212) 849-7000
Facsimile: (212) 849-7100

Sean S. Pak (SBN 219032)
seanpak@quinnemanuel.com
Amy H. Candido (SBN 237829)
amycandido@quinnemanuel.com
John M. Neukom (SBN 275887)
johnneukom@quinnemanuel.com.
QUINN EMANUEL URQUHART &
SULLIVAN LLP
50 California Street, 22nd Floor
San Francisco, CA 94111
Telephone: (415) 875-6600
Facsimile: (415) 875-6700

David Nelson (admitted pro hac vice)
davenelson@quinnemanuel.com
QUINN EMANUEL URQUHART &
SULLIVAN LLP
500 W Madison St, Suite 2450
Chicago, IL 60661
Telephone: (312) 705-7465
Facsimile: (312) 705 7401

Steven Cherny (admitted pro hac vice)
steven.cherny@kirkland.com
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900

Adam R. Alper (SBN 196834)
adam.alper@kirkland.com
KIRKLAND & ELLIS LLP
555 California Street
San Francisco, California 94104
Telephone: (415) 439-1400
Facsimile: (415) 439-1500

Michael W. De Vries (SBN 211001)
michael.devries@kirkland.com
KIRKLAND & ELLIS LLP
333 South Hope Street
Los Angeles, California 90071
Telephone: (213) 680-8400
Facsimile: (213) 680-8500

Attorneys for Plaintiff Cisco Systems, Inc.

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

| | |
|---|---|
| CISCO SYSTEMS, INC.,<br><br>Plaintiff,<br><br>vs.<br><br>ARISTA NETWORKS, INC.,<br><br>Defendant. | CASE NO. 5:14-cv-5344-BLF (NC)<br><br>**CISCO'S TRIAL BRIEF RE: ANALYTIC DISSECTION AND FILTRATION**<br><br>**REDACTED VERSION**<br><br>Date:  November 21, 2016<br>Time: TBD<br>Dept: Courtroom 3 - 5th Floor<br>Judge: Hon. Beth Labson Freeman |

## TABLE OF CONTENTS

I.      PRELIMINARY STATEMENT ................................................................................. 1

II.     FACTUAL BACKGROUND ..................................................................................... 2

III.    THE ASSERTED ELEMENTS OF CISCO'S USER INTERFACE ARE
        PROTECTABLE AND NEED NOT BE FURTHER FILTERED ............................ 4

        A.      Cisco's Multiword Command Expressions Are Protectable Because They
                Reflect The Subjective Judgment And Creativity Of Cisco Engineers ................... 5

                1.      Cisco Does Not Seek Protection In Isolated Words ..................................... 7

                2.      Arista Identifies No Relevant Evidence Of "External Constraints" ............. 7

                3.      The Court Should Not Filter Out Isolated "Words And Short
                        Phrases" ....................................................................................................... 10

                4.      Cisco  Does Not Claim Protection In "Command Syntax" ........................ 11

                5.      The Court Should Not Filter Out Multiword Command Expressions
                        With Which Users Interact ......................................................................... 11

                6.      Cisco's Selection Of Multiword Command Expressions Were
                        Disclosed, Are In Cisco's "Actual Works," And Reflect Creativity ......... 12

        B.      Cisco's Hierarchies Are Protectable Because They Reflect The Subjective
                Judgment And Creativity Of Cisco Engineers ........................................................ 13

        C.      Cisco's Modes And Prompts Are Protectable Because They Reflect The
                Subjective Judgment And Creativity Of Cisco Engineers ..................................... 15

        D.      Cisco's Command Responses Are Protectable Because They Reflect The
                Subjective Judgment And Creativity Of Cisco Engineers ..................................... 16

        E.      Cisco's Help Descriptions Are Protectable Because They Reflect The
                Subjective Judgment And Creativity Of Cisco Engineers ..................................... 17

        F.      Cisco's Technical Documents Are Protectable As Standard Textual Works ......... 18

        G.      The Protected Elements, Taken Together, Are Protectable Based On Their
                Selection And Arrangement .................................................................................... 19

IV.     CISCO'S USER INTERFACE WARRANTS BROAD PROTECTION ......................... 19

V.      CONCLUSION ........................................................................................................ 20

02099-00004/8544137.1

CISCO'S TRIAL BRIEF RE: ANALYTIC DISSECTION AND FILTRATION

1

# TABLE OF AUTHORITIES

2
**Page**

3

## Cases

4

*Am. Dental Ass'n v. Delta Dental Plans Ass'n*,
126 F.3d 977 (7th Cir. 1997) ................................................................18

5

*Apple Computer, Inc. v. Microsoft Corp.*,
35 F.3d 1435 (9th Cir. 1994) ......................................2, 4, 8, 9, 12, 14, 15, 19

6

7

*Atari Games Corp. v. Nintendo of Am., Inc.*,
975 F.2d 832 (Fed. Cir. 1992) ..............................................................13

8

*Baxter v. MCA, Inc.*,
812 F.2d 421 (9th Cir. 1987) ...............................................................13

9

10

*Brocade Commc'ns Sys. Inc. v. A10 Networks Inc.*,
2011 WL 7563043 (N.D. Cal. Aug. 16, 2011) ...............................................4

11

*Brown Bag Software v. Symantec Corp.*,
960 F.2d 1465 (9th Cir. 1992) ..............................................................13

12

13

*CDN Inc. v. Kapes*,
197 F.3d 1256 (9th Cir. 1999) .....................................................2, 7, 11, 16, 19

14

*Compaq Computer Corp. v. Ergonome, Inc.*,
137 F. Supp. 2d 768 (S.D. Tex. 2001) .....................................................10

15

16

*Computer Assocs. Int'l, Inc. v. Altai, Inc.*,
982 F.2d 693 (2d Cir. 1992) ...............................................................4

17

*Dun & Bradstreet Software Servs., Inc. v. Grace Consulting, Inc.*,
307 F.3d 197 (3d Cir. 2002) ................................................................9

18

19

*Eng'g Dynamics, Inc. v. Structural Software, Inc.*,
26 F.3d 1335 (5th Cir. 1994) ............................................................9, 12

20

*Enter. Mgmt. Ltd., Inc. v. Warrick*,
717 F.3d 1112 (10th Cir. 2013) .............................................................8

21

22

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*,
499 U.S. 340 (1991) ........................................................................5

23

*Higgins v. Baker*,
309 F. Supp. 635 (S.D.N.Y. 1969) ........................................................13

24

25

*Implus Footcare, LLC v. Ontel Prods. Corp.*,
2015 WL 12655703 (C.D. Cal. Aug. 28, 2015) ............................................17

26

*J. Racenstein & Co. v. Wallace*,
1999 WL 632853 (S.D.N.Y. Aug. 19, 1999) ...............................................10

27

28

02099-00004/8544137.1

*John Wieland Homes & Neighborhoods, Inc. v. Poovey*,
    2004 WL 2108675 (W.D.N.C. Aug. 2, 2004) ...................................................13

*Johnson Controls, Inc. v. Phoenix Control Sys., Inc.*,
    886 F.2d 1173 (9th Cir. 1989) ....................................................4, 10, 13

*Kepner-Tregoe, Inc. v. Leadership Software, Inc.*,
    12 F.3d 527 (5th Cir. 1994) ..............................................................18

*Mattel, Inc. v. MGA Entm't, Inc.*,
    616 F.3d 904 (9th Cir. 2010) ..........................................................8, 20

*Metcalf v. Bochco*,
    294 F.3d 1069 (9th Cir. 2002) ...........................................................19

*Mitel, Inc. v. Iqtel, Inc.*,
    124 F.3d 1366 (10th Cir. 1997) ...........................................................9

*Oracle Am., Inc. v. Google Inc.*,
    750 F.3d 1339 (Fed. Cir. 2014) ............................4, 8, 9, 10, 16, 18, 19

*Practice Mgmt. Info. Corp. v. Am. Med. Ass'n*,
    121 F.3d 516 (9th Cir. 1997) .............................................................10

*Satava v. Lowry*,
    323 F.3d 805 (9th Cir. 2003) ..........................................................8, 19

*Soc'y of Holy Transfiguration Monastery, Inc. v. Gregory*,
    689 F.3d 29 (1st Cir. 2012) ..............................................................11

*Softel, Inc. v. Dragon Med. & Sci Commc'ns, Inc.*,
    118 F.3d 955 (2d Cir. 1997) ..............................................................8

*Ventures Educ. Sys. Corp. v. Prof'l Dev. Assocs., Inc.*,
    2008 WL 3166667 (S.D.N.Y. July 31, 2008) .........................................11

### Regulations

37 C.F.R. § 202.1(a) ...........................................................................10

### Miscellaneous

4 NIMMER ON COPYRIGHT § 13.03[B][1][a] ...........................................13

4 NIMMER ON COPYRIGHT § 13.03[F][5] ...................................................8

Plaintiff Cisco Systems, Inc. respectfully submits this Trial Brief addressing issues relating to the Court's analytic dissection and filtration of the elements Cisco asserts from its user interface, which operators use to manage and configure Cisco networking equipment.

## I.   PRELIMINARY STATEMENT

The purpose of this Trial Brief is to assist the Court in its determination of whether any of the protectable elements Cisco has identified should be further "filtered" out as part of analytic dissection and filtration, such that they should not be considered by the jury when it compares the similarity of Cisco's user interface and Arista's infringing user interface.  Cisco previously submitted to the Court a list of protectable elements, which include: (1) multiword command expressions; (2) multiword command hierarchies; (3) modes and prompts; (4) command responses; and (5) help descriptions. ECF 552-1.  (Cisco also identified discrete portions of its technical documentation that Arista copied, a sixth category of protectable elements which is not a part of Cisco's user interface.  ECF 552-2.)

In selecting these five categories, Cisco did not include every element that appears in both user interfaces and leave it to the Court to sift through what is and is not protectable; rather, Cisco carefully reviewed its user interface and eliminated any elements which, even though included in both works, might need to be filtered out.  That is, Cisco *pre-filtered* its user interface and now presents only those elements that were copied by Arista and are protectable, and thus appropriate for the jury's consideration.  For example:

- Cisco does *not* seek to have a jury consider many elements of its user interface, such as (1) single word commands; (2) use of "?" to call up help descriptions; (3) command prefixes that the user interface autocompletes; (4) tab completion; or (5) minimum syntactic length.

- Cisco does *not* seek to have a jury find similarity based on any individual words, nor in any "ideas," such as the idea of using a syntax, hierarchy, mode, prompt, or help description in a user interface.

- Cisco seeks protection only in its particular expressions of its submitted protectable elements, *which Cisco was the first to include in a user interface at the time Cisco created them*—the only relevant time period for evaluating an expression's protectability.

02099-00004/8544137.1

1    The Court need not conduct an evidentiary hearing to conclude that Cisco's five identified

2    categories are protectable elements of Cisco's user interface.  The undisputed facts establish that Cisco

3    used a subjective process in which Cisco engineers exercised their creativity, expertise, and

4    professional judgment to originate these expressions.  *CDN Inc. v. Kapes*, 197 F.3d 1256, 1261 (9th

5    Cir. 1999) (prices showing coin values protectable where plaintiff selected values using "its own

6    judgment and expertise").  The task of dissection asks the plaintiff to "submit[] a list of particular

7    features in its works" similar to those in the defendant's works so that the Court may "determine

8    whether any of the allegedly similar features are protected by copyright."  *Apple Computer, Inc. v.*

9    *Microsoft Corp.*, 35 F.3d 1435, 1443 (9th Cir. 1994).  Cisco has satisfied this obligation.

10    Rather than identifying high-level categories of challenges to Cisco's proffered protectable

11    elements (as the Court directed), Arista's response primarily took the form of a challenge to, *e.g.*: (1)

12    the definition of Cisco's works; (2) the scope of Cisco's registrations; and (3) whether Cisco's user

13    interface should be afforded broad or thin copyright protection.  ECF 585.  But these arguments have

14    nothing to do with the task of ***dissection and filtration*** and should be disregarded.[1]  Arista's response

15    also includes extensive legal and evidentiary challenges to Cisco's protectable elements, each of

16    which—aside from going far beyond what the Court requested—necessarily fails.  To assist the Court

17    in its analysis, and to provide the Court with a sufficiently defined universe of issues on which the

18    parties seek the Court's assistance, this Trial Brief tracks Arista's challenges in its response to Cisco's

19    submission on protectable elements (*i.e.* ECF 585) by: (1) demonstrating that each of the elements

20    identified by Cisco is protectable; and (2) explaining why each of Arista's challenges in its response is

21    erroneous or irrelevant.

22    II.    **FACTUAL BACKGROUND**

23    Cisco and Arista are competitors who make and sell gigabit Ethernet switches, which connect

24    multiple devices within a local area network and can direct traffic on the networks.  ECF 482 at 2.

25    The Copyright Office issued 26 registrations to Cisco, each corresponding to a specific version of a

26    particular Cisco operating system and related technical documentation.  Cisco's copyright

---

[1]    Pursuant to the Court's instruction, Cisco will submit its brief further defining Cisco's copyrighted work on November 10, 2016.

registrations correspond to four families of Cisco operating systems: IOS, IOS XR, IOS XE and NX-OS.[2] ECF 64 ¶ 25; Almeroth Rep. ¶ 97.[3] Each Cisco operating system version builds upon prior versions. Almeroth Rep. ¶ 97. Each of these operating systems has multiple components, including components specifically designed for networking activities that allow engineers to configure and manage Cisco servers, routers, and switches, as well as a host of other types of devices from Cisco. Almeroth Rep. ¶¶ 42-68; Almeroth Reb. Rep. ¶¶ 151-152; Black Rep. ¶ 120 (Exh. 1).[4] Because Cisco (unlike Arista) makes a large variety of products (*e.g.*, mobile device technology, switches and routers, collaboration systems, cable equipment), Cisco's operating systems are designed to support a wide range of additional functions and commands not relevant to the gigabit Ethernet switches made by Arista. Almeroth Reb. Rep. ¶¶ 151-152. In other words, the elements of Cisco's user interface that support gigabit Ethernet switches are just a subset of the total user interface.

A key component of Cisco's registered operating systems is the original and creative expressions in their command-line user interface (sometimes referred to as Cisco's "CLI")—that is, the way a (human) network engineer recognizes, interacts with, and "talks" to Cisco's network devices. Cisco's user interface is not a graphical user interface ("GUI") where a user communicates by clicking on icons (Almeroth Rep. ¶ 234), nor is it a menu-driven interface, where a user must select from options listed in a sequential manner (*id.* ¶ 235). Rather, Cisco created a **text-based** command-line user interface, where a human operator interacts with, manages and configures networking equipment by sending creative, multiword expressions (authored by Cisco), and receiving creative, multiword responses (also authored by Cisco). This user interface includes many elements, of which Cisco has only claimed the following as protectable in this action: (1) multiword command

---

[2]  IOS, IOS XR, and IOS XE are Cisco's Internetwork Operating System, and NX-OS is Cisco's Nexus Operating System. Each of these four operating systems provides a wide range of functionality including routing and switching for different types of hardware platforms and customer applications. Almeroth Rep. ¶¶ 66-68.

[3]  Citations to "Almeroth Rep." and "Almeroth Reb. Report" herein refer to the expert reports and accompanying exhibits of Cisco's technical expert Dr. Kevin Almeroth. Dr. Almeroth's reports and exhibits are attached to the concurrently filed Declaration of Dr. Kevin Almeroth as Exhibits A-H.

[4]  Citations to "Exh." herein refer to exhibits attached to the concurrently filed attorney Declaration of Andrew M. Holmes.

expressions; (2) multiword command hierarchies; (3) modes and prompts; (4) command responses; and (5) help descriptions.

For all of these protectable elements, Cisco allowed its engineers to exercise their creativity, expertise and professional judgment to craft their particular expressions, each of which could have been written with any number of different words, sequence or and/or syntax. *See* ECF 552-1 at 2-33 (multiword command expressions); ECF 552-1 at 36-79 (multiword command hierarchies); ECF 552-1 at 34-35 (modes and prompts); ECF 552-1 at 80-96 (command responses); ECF 552-1 at 97-110 (help descriptions). In addition, Cisco authored complex technical documentation that explain the operation of Cisco's user interface. ECF 552-2.

## III.   THE ASSERTED ELEMENTS OF CISCO'S USER INTERFACE ARE PROTECTABLE AND NEED NOT BE FURTHER FILTERED

Whether an element of a user interface is protected "depends on whether, on the particular facts of each case, the component in question qualifies as an expression of an idea, or an idea itself." *Johnson Controls, Inc. v. Phoenix Control Sys., Inc.*, 886 F.2d 1173, 1175 (9th Cir. 1989).[5] The purpose of analytic dissection is to distinguish permissible similarities between works from those that constitute actionable infringement. To ensure that the factfinder does not determine that two works are actionably similar because they share elements which are not protectable, such "unprotectable elements have to be identified, or filtered, before the works can be considered as a whole." *Apple Computer*, 35 F.3d at 1446. The Court's filtering task is thus straightforward: it must (1) "first … assess whether the expression is original to the programmer or author," and then (2) "'sift[] out all non-protectable material,' including ideas and 'expression that is necessarily incidental to those ideas.'" *Oracle Am., Inc. v. Google Inc.*, 750 F.3d 1339, 1357-58 (Fed. Cir. 2014) (quoting *Computer Assocs. Int'l, Inc. v. Altai, Inc.*, 982 F.2d 693, 706 (2d Cir. 1992)).

Under the Ninth Circuit's approach to analytic dissection, the asserted elements of Cisco's user

---

[5]   Because Cisco's user interface is registered, this "entitles [Cisco] to a presumption of validity, and shifts the burden to [Arista] to rebut" that Cisco's asserted elements "are not protectable expression." *Brocade Commc'ns Sys. Inc. v. A10 Networks Inc.*, 2011 WL 7563043, at *2 (N.D. Cal. Aug. 16, 2011) (presumption applies to both originality and protectability of asserted elements). But even without a presumption, the Court's analytic dissection will confirm that Cisco limited the asserted elements of its user interface to those that are protectable expressions.

interface are all protectable and should all be presented to the jury as evidence that can support the conclusion that Arista infringed Cisco's user interface. Confirming Cisco's care in selecting its protectable elements, Cisco intentionally **excluded** expressions that, although appearing in both Cisco and Arista's works, Cisco does not assert the jury should consider in comparing those works. For example, Cisco is not asserting as protectable elements: (1) single word commands; (2) use of "?" to call up help descriptions; (3) command prefixes that the user interface autocompletes; (4) tab completion; or (5) minimum syntactic length. *See* ECF 64 ¶ 50 & 477 at 8. Moreover, Cisco does not claim protection over the following elements raised by Arista in its response to Cisco's submission: (1) isolated words in Cisco's multiword command expressions, ECF 585 at 4; (2) "portions" of multiword command expressions dictated by functional demands, *id.* at 5-6; (3) the "idea" of a hierarchy, *id.* at 11; (4) individual mode indicators and prompts, *id.* at 12; (5) the "idea of making certain commands available only in certain modes," *id.* at 13; (6) the "idea of an interactive help system," *id.* at 17; (7) the "idea of using a text-based user interface" rather than a graphical interface, *id.* at 19; (8) the idea of using multiword commands to manage or configure a device, *id.*; or (9) the function of any asserted feature (as opposed to Cisco's expression), *id.*[6]

The Court may therefore be confident that the elements that Cisco asserts are all protectable. Arista's arguments that Cisco's asserted elements are not protectable, presented by Arista in its response to Cisco's submission of protected elements (ECF 552 & 585), are each addressed below.

**A.   Cisco's Multiword Command Expressions Are Protectable Because They Reflect The Subjective Judgment And Creativity Of Cisco Engineers**

Cisco has presented the Court with over 500 original multiword command expressions (sometimes referred to as "CLI commands"), which are protectable elements of Cisco's user interface for gigabit Ethernet switches. *See* Cisco's Resp. to Rog. Nos. 16, 19, and Ex. F (detailing creation of each multiword command expression) (Exhs. 5, 16). The standard for showing originality is low. *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 345 (1991) ("originality" simply means the

---

[6]   Arista requests that the Court instruct the jury that each of these is not a protectable element of Cisco's user interface. Such a request is premature and has no bearing on the Court's dissection analysis; because Arista's response concedes that Cisco does not claim such elements as protectable, Cisco does not address Arista's arguments relating to requested jury instructions in this Trial Brief.

1  work was not actually copied and shows a "*minimal* degree of creativity") (emphasis added).  Cisco's

2  multiword command expressions more than satisfy that standard—the undisputed evidence establishes

3  that these multiword command expressions are original and reflect the "subjective judgment and

4  creativity" of Cisco engineers, as "any one of the asserted command expressions could, in theory, be

5  any random set of words or characters, and yet the command would still work.  Choosing the words

6  and the arrangement and the organization of those words is where the creativity lies."  Almeroth Rep.

7  ¶ 101.

8        Here, there is no evidence that Cisco copied any of the asserted multiword command

9  expressions from any other source, or that they are "preexisting" facts.  Indeed, the analysis of Arista's

10  own expert did not dispute that Cisco is the original author of every one of its asserted multiword

11  command expressions.  Almeroth Reb. Rep. ¶¶ 114-115.  Rather, in creating the asserted multiword

12  command expressions, Cisco's engineers engaged in a ***process*** of proposing, explaining, inviting

13  comments on, and even debating, the creation of multiword commands to use within its user interface.

14  Almeroth  Rep. ¶ 110 (Cisco engineers "did not have to include for technical reasons the specific

15  words that are contained in the 500+ asserted command expressions. They were creative choices.");

16  *id.* ¶¶ 102-108 (Cisco engineers engaged in a creative process of devising expressions).  In fact,

17  Arista's own executives and engineers have conceded the "subjective" nature of the process by which

18  such commands were authored by Cisco, both in historical documents and in their depositions.  *See*

19  *id.* ¶ 112.  The sworn testimony of Adam Sweeney, ***Arista's*** Vice President of Software Engineering

20  and a former Cisco engineer,



21

22

23

24

25

26        This admittedly "subjective" process for creating Cisco's multiword commands, which often

27  resulted in debates and disagreements among Cisco's engineers, more than satisfies the minimum

28  level of creativity required for copyright protection.  As this Court has explained:

> [W]hat is important is the fact that [parties] arrive at the prices they list through a process that involves using their judgment to distill and extrapolate from factual data. It is simply not a process through which they discover a preexisting historical fact, but rather a process by which they create a price which, in their best judgment, represents the value of an item as closely as possible …. ***This process imbues the prices listed with sufficient creativity and originality to make them copyrightable***.

ECF 482 at 12 (quoting *CDN*, 197 F.3d at 1261) (emphasis added); *see also id.* at 13 ("Cisco has provided evidence that it used its own judgment and expertise in arriving at multi word commands … [and] has pointed to several pieces of evidence indicating that there was a creative process in place.").

For similar reasons, the Court need not now "engage in an analysis of each and every" multiword command expression for creativity and originality. *Id.* Cisco's reliance on an undisputed creative process in which Cisco engineers exercised professional judgment and engaged in collaborative dialogue to shape the user interface meets this standard. Nor would such an expression-by-expression analysis make sense in the context of this case. Just as a claim of copyright infringement of a book does not require a sentence-by-sentence or word-by-word assessment of each line of text, the Court here need not inspect every command expression, as long as it is satisfied that Cisco engaged in a creative process in selecting and creating its multiword command expressions. *CDN*, 197 F.3d at 1261. In the face of this creative process, Arista's challenges are unavailing.

### 1.    Cisco Does Not Seek Protection In Isolated Words

Arista argues that Cisco's multiword command expressions include "pre-existing industry terminology" and "parlance," but also concedes that Cisco "may claim originality in its selection, coordination, or arrangement" of even individually unprotectable elements that may make up a multiword command expression. To be clear, Cisco does not seek protection for any isolated word in its multiword command expressions; Cisco seeks protection for its user interface, one element of which is its 500+ original ***multiword*** command expressions that Arista copied verbatim. Arista's focus on isolated words—"industry terminology" or otherwise—should be disregarded.

### 2.    Arista Identifies No Relevant Evidence Of "External Constraints"

Arista argues that Cisco cannot claim protection in "many of the words and much of the syntax" of its multiword command expressions because they are "dictated by external constraints" such as "the commands' functional nature and the industry's preferences and expectations." ECF 585

at 5.   Arista, however, refuses to provide any further detail, asserting that the question is "too complex" for analytic dissection.  *Id.*  Arista's objection is unwarranted on multiple levels.

*First*, as Cisco has confirmed on multiple occasions, it does not claim protection in individual "words"; rather, it claims protection in creative multiword command expressions, as written and as organized in a hierarchy within its user interface.  Nor does Cisco claim that any given "portion" of a multiword command expression is protectable.  In any event, it is undisputed that the Court cannot pluck a word or phrase out of the middle of a claimed protectable command as part of dissection and filtration.  "[T]aken individually, the words that constitute a literary work are not copyrightable, yet this fact does not prevent a literary text, *i.e.*, a collection of words, from enjoying copyright protection."  *Softel, Inc. v. Dragon Med. & Sci Commc'ns, Inc.*, 118 F.3d 955, 964 (2d Cir. 1997); *see also* 4 NIMMER ON COPYRIGHT § 13.03[F][5] n.345.1 ("one could mechanically go through Hamlet's soliloquy, determining that each individual word ('to,' 'be,' 'or,' 'not,' etc.) is uncopyrightable, and thereupon draw the erroneous conclusion that Shakespeare lacked originality in the copyright sense").[7]

*Second*, Arista's invocation of elements "dictated by external constraints" is, in fact, Arista's scènes à faire affirmative defense.  This is confirmed by Arista's own case citations.  *See* ECF 585 at 5 (citing *Apple Computer*, 35 F.3d at 1444 (describing scènes à faire doctrine as applying to functionality, preferences and expectations); *Mattel, Inc. v. MGA Entm't, Inc.*, 616 F.3d 904, 913 (9th Cir. 2010) (describing scènes à faire as "standard features")).  As an affirmative defense, scènes à faire is not an appropriate ground for filtering out Cisco's multiword command expressions as unprotectable; rather, it is a ground upon which Arista may argue that its copying of such elements should be forgiven.  *See Oracle Am.*, 750 F.3d at 1364 (under scènes à faire, "the expression is not excluded from copyright protection; it is just that certain copying is forgiven as a necessary incident of *any* expression of the underlying idea"); *Satava v. Lowry*, 323 F.3d 805, 810 n.3 (9th Cir. 2003) ("The Ninth Circuit treats scènes à faire as a defense to infringement rather than as a barrier to copyrightability.").  And to the extent that Arista argues it has limited options for creating its own

---

[7]   *See also Enter. Mgmt. Ltd. v. Warrick*, 717 F.3d 1112, 1119 (10th Cir. 2013) ("Any copyrightable work can be sliced into elements unworthy of copyright protection.  Books could be reduced to a collection of non-copyrightable words.  Music could be distilled into a series of non-copyrightable rhythmic tones.  A painting could be viewed as a composition of unprotectable colors.").

1  commands, ECF 585 at 6, and thus relies on the merger doctrine, this too is an affirmative defense and

2  not a bar to protectability, not considered during analytic dissection. *Oracle Am.*, 750 F.3d at 1360.

3       *Third*, even if the Court opts to address scènes à faire in the context of analytic dissection,

4  Arista's proffered evidence cannot sustain its challenge. In assessing a scènes à faire defense, the

5  focus must be on the purported "external constraints" that dictated ***Cisco's*** choices in creating its

6  multiword command expressions, ***at the time of their creation***. *Oracle Am.*, 750 F.3d at 1364 (scènes

7  à faire looks to "the circumstances presented to the creator, not the copier," at the time of creation)

8  (citing *Mitel, Inc. v. Iqtel, Inc.*, 124 F.3d 1366, 1375 (10th Cir. 1997)); *Dun & Bradstreet Software*

9  *Servs., Inc. v. Grace Consulting, Inc.*, 307 F.3d 197, 215 (3d Cir. 2002) ("we examine the program

10  from the viewpoint of ***the creator***").[8] Arista fails to establish any "external constraints" that dictated

11  Cisco's specific multiword command expressions at the time of creation. For example:

12  • Arista claims Dr. Black's analysis shows that "external constraints severely restricted Cisco's

13     options" in creating multiword command expressions. ECF 585 at 6. The cited evidence,

14     however, relies on impermissible attempts to isolate particular terms rather than addressing

15     Cisco's multiword command expressions in their entirety. Nor does Arista account for Dr.

16     Black's inability to find these expressions in user interfaces before Cisco's creation or any

17     evidence that they were not independently created by Cisco. Almeroth Reb. Rep. ¶¶ 114-115.

18  • Arista claims that Cisco's "early" decisions in constructing its multiword command

19     expressions constrained its later choices. ECF 585 at 6. This defies logic—a company's

20     desire to remain internally consistent is not an "external" constraint; it is an internal policy.

21     Otherwise, every update of a user interface would be "constrained" by its earlier versions.

22  • Arista claims that Cisco's multiword command expressions are a "functional part" of a system

23     or method of operation. But the fact that Cisco's multiword command expressions have a

24     functional component does not render them unprotectable. *See Eng'g Dynamics, Inc. v.*

25     *Structural Software, Inc.*, 26 F.3d 1335, 1346 (5th Cir. 1994) ("utilitarian function of the input

26     formats, which ultimately act like switches in the electrical circuits of the program" do not

---

27    [8]  The same applies to merger. *See Oracle Am.*, 750 F.3d at 1361 (citing *Apple Computer, Inc. v.*

28  *Formula Int'l, Inc.*, 725 F.2d 521, 524 (9th Cir. 1984)).

"outweigh their expressive purpose"); *Oracle Am.*, 750 F.3d at 1367 ("an original work—even one that serves a function—is entitled to copyright protection as long as the author had multiple ways to express the underlying idea"). Because Cisco had multiple ways to construct its expressions, they are protectable even if they also are part of a functional system.[9]

- Arista's evidence of other companies' alleged "widespread use" of Cisco's multiword command expressions *after* Cisco created them is irrelevant. ECF 585 at 7. Arista does not dispute that, at the time Cisco created its asserted multiword command expressions, *no other companies* used Cisco's multiword command expressions in their user interfaces for networking equipment. *See Oracle Am.*, 750 F.3d at 1372 (whether Oracle's programming packages "had become the effective industry standard" or later became "popular … has no bearing on the copyrightability of Oracle's work"); *Practice Mgmt. Info. Corp. v. Am. Med. Ass'n*, 121 F.3d 516, 620 n.8 (9th Cir. 1997) (physician coding system copyrightable even though government agency mandated its use, making it the "industry standard"). Subsequent use of Cisco's expressions by others demonstrates the success of Cisco's creative process.

### 3. The Court Should Not Filter Out Isolated "Words And Short Phrases"

Without providing any detail other than a word count, Arista claims that "Cisco cannot claim protection for any of its individual multi-word commands under the words and short phrases doctrine," treating the each expression's length as dispositive. ECF 585 at 8. This is error.

*First*, under the applicable regulation, it is only "[w]ords and short phrases *such as names, titles, and slogans*" that are unprotectable. 37 C.F.R. § 202.1(a) (emphasis added). Arista does not dispute that Cisco's multiword command expressions do not fall within that list of examples.

*Second*, in any event, "the relevant question for the court is not merely whether a name, title or slogan contains some minimal number of words. Rather it is whether the phrase contains some appreciable level of creativity, however few words it may contain." *J. Racenstein & Co. v. Wallace*, 1999 WL 632853, at *1-2 (S.D.N.Y. Aug. 19, 1999); *see also Oracle Am.*, 750 F.3d at 1363 ("The

---

[9] Even if Arista's positions are accepted, it would not render Cisco's multiword command expressions as unprotectable; rather, "where an expression is, as a practical matter, indispensable, or at least standard, in the treatment of a given idea, the expression is protected only against verbatim, or virtually identical copying." *Johnson Controls*, 886 F.2d at 1175.

question is not whether a short phrase or series of short phrases can be extracted from the work, but whether the manner in which they are used or strung together exhibits creativity."); *Compaq Computer Corp. v. Ergonome, Inc.*, 137 F. Supp. 2d 768, 775 (S.D. Tex. 2001); *Soc'y of Holy Transfiguration Monastery, Inc. v. Gregory*, 689 F.3d 29, 52 (1st Cir. 2012). Cisco's multiword command expressions are creative endeavors, authored by Cisco engineers specifically for its user interface based on their subjective judgment; the expressions are not clichés. Almeroth Rep. ¶¶ 101-112. Such creativity is protectable. Further, Cisco's expressions do not exist in isolation; rather they "take their meaning from the context of the whole and serve the same purpose as the copyrighted work." *Ventures Educ. Sys. Corp. v. Prof'l Dev. Assocs., Inc.*, 2008 WL 3166667, at *3 (S.D.N.Y. July 31, 2008).

*Third*, Arista ignores that the development of Cisco's multiword command expressions was the result of a creative *process* within the company and the professional judgment of Cisco employees. As this Court explained, in *CDN* the Ninth Circuit found CDN's individual *prices* were copyrightable "because CDN used its judgment to create the prices." ECF 482 at 12. That is, Cisco's use of its own judgment and expertise via a creative process renders even the shortest phrases protectable, just as single prices were protectable in the context of a coin valuation guide.

### 4. Cisco Does Not Claim Protection In Individual "Command Syntax"

Arista argues that protection in Cisco's multiword command expressions should not include protection for individual "command syntax in the form '[verb] [object or entity] [additional parameters].'" ECF 585 at 9. Cisco does not claim protection in so-called individual "command syntax"; rather, Cisco identified *particular* expressions and the hierarchy of such expressions (which together comprise the overall syntax of Cisco's user interface). Almeroth Rep. ¶¶ 101, 109. Thus, this objection should be disregarded.

### 5. The Court Should Not Filter Out Multiword Command Expressions With Which Users Interact

According to Arista, Cisco has not provided evidence that certain multiword command expressions "appear in the form asserted in either Cisco's or Arista's works" because Cisco's list "omit[s] necessary words and parameters." ECF 585 at 9. Arista is mistaken—the commands that are

1    purportedly incomplete are, in fact, complete multiword command expressions that Arista admits it

2    uses and implemented into its own user interface.  Almeroth Rep. ¶¶ 169-173; Arista's Resp. to Rog.

3    Nos. 9 & 26 ████████████████████████████████████████) (Exhs.

4    16, 17); Arista's Answer (ECF 36) at ¶ 53 (admitting it "uses" the commands).  That some of the

5    commands may accept user-provided inputs or parameters as part of the command does not negate

6    Arista's judicial admissions, nor the protectability of the command expressions as authored by Cisco.

7    *See Eng'g Dynamics*, 26 F.3d at 1342 (finding "quasi-textual" user interface formats that "act as

8    prompts for the insertion of relevant data" to "readily qualify" as protectable).

## 6. Cisco's Selection Of Multiword Command Expressions Was Disclosed, Is In Cisco's "Actual Works," And Reflects Creativity

10           As a final catchall, Arista complains that: (1) Cisco did not identify any creativity in its

11   selection of multiword command expressions; (2) these expressions are taken from multiple works;

12   and (3) the expressions comprise a "small fraction" of the expressions in each work.  ECF 858 at 10.

13   None of these critiques have any bearing on analytic dissection.

14           *First*, Cisco has provided extensive evidence of the creativity underlying its selection of its

15   multiword command expressions.  *See, e.g.*, Almeroth Rep. ¶¶ 101-120; Almeroth Reb. Rep. ¶¶ 100-

16   109; Lougheed Tr. at 331:6-23, 337:17-20, 338:24-339:9 (Apr. 4, 2016) (Exh. 7); Lougheed Tr. at

17   128:10-129:19, 145:3-25, 168:21-169:16,174:5-175:4, 185:13-186:5 (Nov. 20, 2015) (Exh. 6); Roy

18   Tr. at 24:12-25, 26:2-9, 45:6-20, 47:8-18 (Exh. 9); Patil Tr. at 161:19-162:1, 186:7-11,187:1-9 (Exh.

19   10); Remaker Tr. at 114:2-15 (Exh. 13); Sweeney Tr. at 175:15-23,217:12-218:8 (Exh. 11); CSI-

20   CLI00608716 ("CLI naming is very subjective"; "highly subjective") (Exh. 14).

21           *Second*, while Cisco will address the copyrighted work at issue in its forthcoming brief, the

22   common characteristic that binds Cisco's 500+ multiword command expressions—all of which may

23   be found in Cisco's registered user interface, *see* Almeroth Rep. Ex. 2—is Arista's own decision to

24   copy portions of Cisco's user interface pertaining to Gigabit Ethernet switching products.  In any

25   event, such an attack has no bearing on analytic dissection, where the Court is to evaluate whether the

26   plaintiff's elements *that the defendant copied* are protectable.  By identifying the source of each

27   multiword command expressions Arista copied, Cisco satisfied its obligation.  *See Apple Computer*,

28

35 F.3d at 1443 ("plaintiff must identify the *source(s)* of the alleged similarity between his work and the defendant's work," and thus "Apple identified the sources of alleged similarity by submitting a list of particular features in its works which are similar to features found in [defendant's works]"); *Brown Bag Software v. Symantec Corp.*, 960 F.2d 1465, 1475 (9th Cir. 1992) (plaintiff proffered "a list of allegedly substantially similar features" and "district court explicitly performed 'analytic dissection,' comparing specific screens, menus, and keystrokes").

*Third*, whether Cisco's multiword command expressions make up a "small fraction" of any particular "work" is irrelevant to analytic dissection. But even if it were relevant, "[e]ven if a copied portion be relatively small in proportion to the entire work, if qualitatively important, the finder of fact may properly find substantial similarity." *Baxter v. MCA, Inc.*, 812 F.2d 421, 425 (9th Cir. 1987) (citing cases); *Higgins v. Baker*, 309 F. Supp. 635, 637 (S.D.N.Y. 1969) ("[s]imilar material, however small in quantity, may still be deemed substantial if qualitatively important"). This is particularly true when direct evidence of copying exists. *See John Wieland Homes & Neighborhoods, Inc. v. Poovey*, 2004 WL 2108675, at *5 (W.D.N.C. Aug. 2, 2004) ("In the face of direct evidence of copying, a defendant may not avoid liability by pointing out the dissimilarities between the protected work and the infringing copy."); 4 NIMMER ON COPYRIGHT § 13.03[B][1][a] ("No plagiarist can excuse the wrong by showing how much of his work he did not pirate.") (footnotes and quotation marks omitted).

## B.   Cisco's Hierarchies Are Protectable Because They Reflect The Subjective Judgment And Creativity Of Cisco Engineers

As this Court has already determined, "a computer program's structure, sequence, and organization are copyrightable." ECF 482 at 14 (citing *Johnson Controls*, 886 F.2d at 1175-76). The Court further recognized that "Cisco is not attempting to claim a copyright on the generic idea of a hierarchy but rather the unique sequence in which it organizes its multi-word commands." *Id.* (citing *Atari Games Corp. v. Nintendo of Am. Inc.*, 975 F.2d 832, 840 (Fed. Cir. 1992)).

Cisco exhibited creativity and originality in deciding precisely how to convey that a specific set of words—*i.e.*, particular multiword command expressions—would follow an initial one. Almeroth Rep. ¶¶ 113-115. Specifically, Cisco employees' design process resulted in the creation of hierarchies in "an organizational structural that is aesthetically pleasing, easy to understand, and easier

to remember." *Id.* The particular hierarchies at issue stem back to Cisco engineer Kirk Lougheed, who testified that he "value[s] the aesthetic of having a symmetric-looking command line expression, symmetric hierarchy," and thus "started prefacing our IP-only commands with 'IP.' And that gave a very—what I thought was a very elegant, symmetric, elegant way of referring to different protocols within a multi-protocol router." Lougheed Tr. at 130:7-17 (Exh. 6). Those values informed engineers' hierarchy design choices for years to come, as confirmed by both Lougheed, *id.* 148:17-23, and other Cisco designers, *see*, *e.g.* Remaker Tr. at 98:22-99:12 (Cisco developed "an aesthetic of the organization of the commands," which included "[t]he hierarchical notices, the modality, the organization of the commands, the choices of words.") (Exh. 13). *See also* Exh. 2 (identifying authors of each asserted hierarchy); Cisco's Resp. to Rog. No. 16 (Exh. 3).

Arista's critiques of the protectability of these hierarchies do not withstand scrutiny. *First*, Arista again claims that Cisco did not present evidence that its hierarchies are in its registered works or have any existence outside of this litigation." ECF 585 at 11. Cisco's hierarchies are part of its user interface (Almeroth Rep. ¶¶ 54-57; Lougheed Tr. at 130:3-19 (Exh. 6); Remaker Tr. at 53:15-55:8, 61:3-10 (Exh. 13)), are in Cisco's registrations (Almeroth Rep. Ex. 5), and Cisco identified the source of the hierarchies that Arista copied. *Apple Computer*, 35 F.3d at 1443. Whether the hierarchies Arista copied reside within a single registration is not relevant to filtration.

*Second*, Arista claims that Cisco cannot claim protection in "the idea" of having hierarchies, nor "the idea" of grouping commands by their first word. ECF 585 at 11. Cisco claims no protection in either; rather, it claims protection in its expression of the particular hierarchies before the Court.

*Third*, Arista argues that Cisco's hierarchies are "purely functional systems of organizing commands" and have no expression separate from their function. ECF 585 at 11. Arista conflates the general idea of a hierarchy with Cisco's particular expression, which included "the aesthetic of having a … symmetric hierarchy" that was "elegant." Almeroth Rep. ¶ 115. Cisco could have sub-structured its hierarchies in any number of equally creative ways, each of which would have been independently protectable. Almeroth Rep. ¶¶ 113-115; Lougheed Tr. 154:11-155:21 (Exh. 6).

**C.    Cisco's Modes And Prompts Are Protectable Because They Reflect The Subjective Judgment And Creativity Of Cisco Engineers**

Cisco's choices in how to organize its commands into different modes with unique prompts likewise reflect creative decisions; Cisco could have selected a different structure, or selected different textual indicators.  Almeroth Rep. ¶ 116.  Cisco claims protection "not in individual modes and prompts in isolation, but rather the particular arrangement of modes and prompts in Cisco's user interface." ECF 552-1 at 34.  That particular arrangement was created by Kirk Lougheed, who chose the modes' indicators, prompts and levels of permission from "a number of possibilities." Lougheed Tr. at 108:12-109:22 (Exh. 6); Cisco's Resp. to Rog. No. 16 (Exh. 3).  Lougheed also made the early decisions assigning particular prompts to particular modes, which again required him to choose between options on the basis of aesthetics and clear visual cues. Lougheed Tr. at 109:23-111:15 (Exh. 6).  Arista does not challenge that Cisco's particular arrangement of identified modes and prompts is protectable (ECF 585 at 12); thus, the Court need not address this element in its dissection analysis, as protectability is conceded.  Likewise, the Court need not address whether "the idea" of making certain commands available only in certain modes is protectable (ECF 585 at 13), as Cisco makes no such claim of protectability.  Arista's few remaining challenges are meritless.

*First*, Arista argues that Cisco's arrangement and selection of modes and prompts is: (1) a "creature of Cisco's litigation strategy"; (2) consists of a small subset of Cisco's works; and (3) a small subset of Arista's selection of modes and prompts.  ECF 585 at 12-13.  For the reasons set forth above, such positions have no bearing on analytic dissection.  The asserted modes and prompts are in Cisco's registrations, *see* Almeroth Rep. Ex. 4, and Cisco identified the source of the modes and prompts Arista copied.  *Apple Computer*, 35 F.3d at 1443.  Whether those modes and prompts comprise a small set of Cisco's or Arista's overall modes and prompts is irrelevant to filtration.

*Second*, Arista argues that Cisco introduced no "creative expression" separable from the "idea" of creating a functional user interface with separate modes, but rather used "a combination of legacy modes and prompts … that flows naturally from the types of functional modes needed to implement" a user interface.  ECF 585 at 13.  Arista's assertions are inaccurate.  While Arista may point to pre-Cisco evidence regarding the existence of the ***general idea*** of using modes and prompts, it presents no

1  evidence that Cisco's ***particular*** selection and arrangement of modes and prompts now before the

2  Court were not original and creative to Cisco, nor does Arista dispute that Cisco could have selected

3  and arranged its modes and prompts in any number of creative ways.  Almeroth Rep. ¶ 116; Remaker

4  Tr. at 101:1-13 (no guidelines apply to creation of modes) (Exh. 13).  Finally, even purely functional

5  and non-protectable elements may be combined into a copyrightable compilation through their

6  particular expression and subjective arrangement.  *See, e.g.*, *Oracle*, 750 F.3d at 1363 ("original

7  combination of elements can be copyrightable" even if elements of combination are unoriginal); *id.* at

8  1367 ("an original work—even one that serves a function" protected "as long as the author had

9  multiple ways to express the underlying idea"); *CDN,* 197 F.3d at 1259 ("compilations of facts are

10 copyrightable even where the underlying facts are not").  And as noted above, whether others used

11 Cisco's modes and prompts after Cisco created them is irrelevant.  *Oracle Am.*, 750 F.3d at 1372.

12   **D.    Cisco's Command Responses Are Protectable Because They Reflect The Subjective Judgment And Creativity Of Cisco Engineers**

13

14       Cisco's user interface displays command responses (also called "outputs") in response to an

15 operator's entry of a multiword command expression.  552-1 at 80; Almeroth Rep. ¶¶ 64-65.  As with

16 the help descriptions, command responses are authored by the individual engineer who created the

17 underlying multiword command expression.  "Cisco engineers faced endless aesthetic choices for each

18 of the numerous screen outputs."  Almeroth Rep. ¶ 65; *see also id.*  ¶ 51; Remaker Tr. 99:14-100:6,

19 205:11-18, 206:4-8 (no guidelines for output creation), 201:20-25 (many purposes for command

20 responses) (Exh. 13); Liu Tr. at 167:23-25 (Cisco engineer decided what to include in screen output

21 "[b]ased on my understanding of how it works.  And I think I chose the most important fields that I

22 think would be meaningful to show ....") (Exh. 15).

23       Arista provides almost no individualized analysis of Cisco's command responses, merely

24 stating that they are not protectable "for the same reasons" as those asserted against Cisco's multiword

25 command expressions: (1) portions are driven by "industry standards"; (2) they are not original,

26 creative expressions; and (3) they do not have any "real existence" outside of this litigation.  ECF 585

27 at 14-15.  These challenges fail for the same reasons discussed above, *see supra* Part III.A; *see also*

28 Almeroth Rep. Ex. 3 (Cisco's command responses in registered works).

1

2

### E. Cisco's Help Descriptions Are Protectable Because They Reflect The Subjective Judgment And Creativity Of Cisco Engineers

Cisco has presented the Court with multiple help descriptions (also called "help text" or "helpdesc"), which are protectable elements of Cisco's user interface both individually and as collections associated with two of its operating systems. ECF 552-1 at 97. During the relevant time, help descriptions were authored according to a creative process whereby a Cisco engineer would create a new command expression, and then create a help description of that command expression using the engineer's own professional judgment and subjective preferences. ECF 552-1 at 98. As one Cisco engineer explained:

> [T]he general process [behind creation of help descriptions] is that the engineer comes up with a CLI command or an extension to a CLI command. And there is always a bit of help text associated with those commands. And the engineer figures out what—in his or her professional judgment, what is the best way of giving some assistance, guidance, as to the syntax of the CLI command.

Lougheed Tr. at 497:9-16 (Exh. 8). Cisco contractor Terry Slattery, who overhauled the help description process for version 9.21 of Cisco IOS and personally wrote many help descriptions, *id.* at 451:13-452:8, testified that his creative process was informed by Cisco-authored user manuals and the source code itself. Slattery Tr. at 127:16-130:12 (Exh. 12). Ensuing generations of Cisco engineers, including those who wrote the help descriptions Cisco asserts in this litigation, *see* Exh. 4 (identifying authors of help descriptions), "had free rein in what they wanted to write." Lougheed Tr. at 453:5-21 (Exh. 8); *see also* Cisco's Resp. to Rog. No. 31 (describing the creation and advancement of Cisco's context-sensitive help features) (Exh. 5). Each of Cisco's help descriptions could have been written with innumerable different combinations of words, sequence, and syntax, subject only to an individual engineer's subjective, professional judgment. Thus, the help descriptions are protectable largely for the same reasons that the multiword command expressions are protectable, *see supra* Part III.A. *See* Almeroth Reb. Rep. ¶ 105.

Arista's challenges to Cisco's help descriptions largely replicate its challenges to the multiword command expressions, and fail for similar reasons. *First*, Arista claims that Cisco's help descriptions: (1) contain no creative expression; (2) are functional parts of an unprotectable help system; and (3) are driven by industry-standard and functional constraints. ECF 585 at 15. As

addressed above, the particular expression of even the most basic factual information is protectable. *Implus Footcare, LLC v. Ontel Prods. Corp.*, 2015 WL 12655703, at *3 (C.D. Cal. Aug. 28, 2015) ("language used to describe product features could be copyrighted" as "expressive sentences or substantial phrases"). Further, Cisco engineers testified about the creative processes by which they composed help descriptions in parallel with the command expressions they described. *See* Cisco's Resp. to Rog. No. 31 (Exh. 5); Slattery Tr. at 128:16-130:6 (Exh. 12); Lougheed Tr. at 585:5-9 (Exh. 8). Thus, as discussed above, *see supra* Part III.A.2, the particular expression of Cisco's help descriptions is protected, particularly given that these descriptions could be written in any number of ways. And to the extent that Arista reiterates its merger or scènes à faire affirmative defenses, they fail for the same reasons discussed above. *See supra* Part III.A.2. Finally, it is the entire help description that is protectable, not individual "terms" or "phrases."

*Second*, Arista argues that Cisco's help descriptions are unprotectable under the "words and short phrases" doctrine, based on nothing more that the pure length of the help descriptions. ECF 585 at 16. For the same reasons discussed above, *supra* Part III.A.3, Arista's critique fails.

*Third,* Arista argues that there is no evidence that Cisco's collection of help descriptions has any existence outside of this litigation, or of any creativity in such selection or arrangement. For the same reasons discussed above, *supra* Part III.A.6, Cisco properly identified the sources of the help descriptions copied by Arista, and they may be found in Cisco's registered works. Cisco's Resp. to Rog. No. 31 (Exh. 5); Exh. 4; Almeroth Rep. Ex. 6. Cisco described the creative process by which its engineers wrote the asserted help descriptions and implemented them into the user interface above.

*Fourth*, Arista claims that the "idea or system" of a help description is not protectable. ECF 585 at 17. Cisco makes no such claim, so the Court need not address this challenge.

### F.    Cisco's Technical Documents Are Protectable As Standard Textual Works

In passing, Arista claims that for any text in Cisco's technical documents that derived from similarities in the user interfaces addressed above, such text "is unprotectable to the same degree and for the same reasons." *Id.* at 18. Arista ignores that Cisco's technical documents are not user interfaces; they are texts protected to the same degree as any other verbatim copying of written materials. *See Oracle Am.*, 750 F.3d at 1362 n.4. An author's particular expression is protected by

02099-00004/8544137.1

copyright, even when the underlying subject matter discusses facts.  *See Kepner-Tregoe, Inc. v. Leadership Software, Inc.*, 12 F.3d 527, 534 (5th Cir. 1994) ("Even if each of the eight questions and five processes conveys *unprotectable ideas,* the specific words, phrases, and sentences selected to convey those ideas are *protectable expression* under any reasonable abstraction analysis"); *see also Am. Dental Ass'n v. Delta Dental Plans Ass'n*, 126 F.3d 977, 979 (7th Cir. 1997).

Cisco identified specific protectable, registered material in its technical documents which it claims Arista copied.  ECF 552-2 at 111-134; Almeroth Rep. Ex. 1.  This material consists of creative and original written descriptions, and the selection and arrangement of such original compositions, that could have been expressed in any hundreds of ways. Arista does not claim otherwise.  *See* Almeroth Rep. ¶ 156 (Arista's President & CEO ███████████████████).

### G.  The Protected Elements, Taken Together, Are Protectable Based On Their Selection And Arrangement

Not only is each building block of Cisco's user interface protectable in its own right, but the combination of these elements is independently protectable as a compilation.  "A copyrightable compilation can consist mainly or entirely of uncopyrightable elements."  *Harper House, Inc. v. Thomas Nelson, Inc.*, 889 F.2d 197, 204 (9th Cir. 1989); *see also Satava*, 323 F.3d at 811 ("It is true, of course, that a *combination* of unprotectable elements may qualify for copyright protection."); *Metcalf v. Bochco*, 294 F.3d 1069, 1074 (9th Cir. 2002); *Oracle*, 750 F.3d at 1363; *CDN*, 197 F.3d at 1259-60 ("prices themselves" protectable as compilations).  Thus, even if the Court were to determine that all of Cisco's submitted elements are not protectable, the user interface would nonetheless be protectable as a whole, based on the selection and arrangement of these elements.

## IV.  CISCO'S USER INTERFACE WARRANTS BROAD PROTECTION

Although the purpose of this submission is to inform the Court of the protectable elements of Cisco's copyrighted works, Arista suggests, without authority, that analytic dissection must include a ruling on the "scope" of copyright protection.  ECF 585 at 19.  Arista is incorrect—the scope of protection is a distinct inquiry. *Apple Computer*, 35 F.3d at 1443 (describing "analytic dissection" as the second step and "defin[ing] the scope of the plaintiff's copyright" as the separate, third step).

1   If the Court nonetheless opts to address the scope of protectability of Cisco's user interface, it

2   should recognize that it warrants broad protection. Cisco's use of text made a "wide range of

3   expression" available to both Cisco and Arista; thus, Cisco's selections benefit from "broad"

4   protection. *Mattel, Inc. v. MGA Entm't, Inc.*, 616 F.3d 904, 913-14 (9th Cir. 2010). All of Cisco's

5   asserted textual expressions are combinations of words and symbols that Cisco employees deliberately

6   and creatively created over a number of years. Almeroth Rep. ¶¶ 51-52, 101-111. That is, Cisco

7   seeks protection in literal elements of its user interface. In this case, Cisco and Arista products present

8   the idea of a user interface through which a human communicates with a machine to control network

9   devices. As a matter of both logic and evidence, the range of ways in which such an idea can be

10  expressed is almost limitless. Unlike dolls' features, which "can be exaggerated only so much," the

11  selection and arrangement of text in a word-based user interface is not "highly constrained." *Mattel*,

12  616 F.3d at 915. And because Cisco alleges the protectability of literal elements of its user interface,

13  *i.e.*, text, the "virtual identicality" standard does not apply. *BUC Int'l Corp. v. Int'l Yacht Council*

14  *Ltd.*, 489 F.3d 1129, 1148-49 (11th Cir. 2007).

15  Some competitors employ a user interface based on graphical symbols or a series of menus.

16  Almeroth Rep. ¶ 236. Others use their own command-line user interfaces without verbatim copying

17  Cisco's multiword commands, help descriptions, screen responses, modes and prompts, hierarchies,

18  and technical document passages. *Id.* ¶¶ 74, 119, 239. Arista itself, in fact, offers alternative user

19  interface options (*e.g.*, a Linux-based interface) beyond its default command-line user interface, which

20  do not utilize any of the protectable elements. *Id.* ¶ 237. Where an idea not only can be, but is in fact,

21  expressed in a meaningful variety of ways, that refutes any suggestion that substantially similar

22  copying of protected elements should be excused unless it reaches the level of virtual identity.

23  **V.   CONCLUSION**

24  For the foregoing reasons, Cisco respectfully requests that the Court accept each of Cisco's

25  submitted elements (ECF 552-2) as protectable.

26

27

28

1

2   Dated:  November 8, 2016                          Respectfully submitted,

3                                                      */s/ John M. Neukom*_____

4                                                      Kathleen Sullivan (SBN 242261)
                                                        kathleensullivan@quinnemanuel.com
5                                                      QUINN EMANUEL URQUHART &
                                                        SULLIVAN LLP
6                                                      51 Madison Avenue, 22nd Floor
                                                        New York, NY 10010
7                                                      Telephone: (212) 849-7000
                                                        Facsimile: (212) 849-7100

8                                                      Sean S. Pak (SBN 219032)
                                                        seanpak@quinnemanuel.com
9                                                      Amy H. Candido (SBN 237829)
                                                        amycandido@quinnemanuel.com
10                                                     John M. Neukom (SBN 275887)
                                                        johnneukom@quinnemanuel.com.
11                                                     QUINN EMANUEL URQUHART &
                                                        SULLIVAN LLP
12                                                     50 California Street, 22nd Floor
                                                        San Francisco, CA 94111
13                                                     Telephone: (415) 875-6600
                                                        Facsimile: (415) 875-6700

14
                                                        David Nelson (*admitted pro hac vice*)
15                                                     davenelson@quinnemanuel.com
                                                        QUINN EMANUEL URQUHART &
16                                                     SULLIVAN LLP
                                                        500 W Madison St, Suite 2450
17                                                     Chicago, IL 60661
                                                        Telephone: (312) 705-7465
18                                                     Facsimile: (312) 705 7401

19                                                     Steven Cherny *admitted pro hac vice*)
                                                        steven.cherny@kirkland.com
20                                                     KIRKLAND & ELLIS LLP
                                                        601 Lexington Avenue
21                                                     New York, New York 10022
                                                        Telephone: (212) 446-4800
22                                                     Facsimile: (212) 446-4900

23                                                     Adam R. Alper (SBN 196834)
                                                        adam.alper@kirkland.com
24                                                     KIRKLAND & ELLIS LLP
                                                        555 California Street
25                                                     San Francisco, California  94104
                                                        Telephone: (415) 439-1400
26                                                     Facsimile: (415) 439-1500

27                                                     Michael W. De Vries (SBN 211001)
                                                        michael.devries@kirkland.com
28                                                     KIRKLAND & ELLIS LLP

333 South Hope Street
Los Angeles, California 90071
Telephone: (213) 680-8400
Facsimile: (213) 680-8500

*Attorneys for Plaintiff Cisco Systems, Inc.*