# EXHIBIT 5

Kathleen Sullivan (SBN 242261)
kathleensullivan@quinnemanuel.com
QUINN EMANUEL URQUHART &
SULLIVAN LLP
51 Madison Avenue, 22nd Floor
New York, NY 10010
Telephone: (212) 849-7000
Facsimile: (212) 849-7100

Sean S. Pak (SBN 219032)
seanpak@quinnemanuel.com
John M. Neukom (SBN 275887)
johnneukom@quinnemanuel.com.
QUINN EMANUEL URQUHART &
SULLIVAN LLP
50 California Street, 22nd Floor
San Francisco, CA 94111
Telephone: (415) 875-6600
Facsimile: (415) 875-6700

Mark Tung (SBN 245782)
marktung@quinnemanuel.com
QUINN EMANUEL URQUHART &
SULLIVAN LLP
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, CA 94065
Telephone: (650) 801-5000
Facsimile: (650) 801-5100

Steven Cherny (admitted *pro hac vice*)
steven.cherny@kirkland.com
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900

Adam R. Alper (SBN 196834)
adam.alper@kirkland.com
KIRKLAND & ELLIS LLP
555 California Street
San Francisco, California  94104
Telephone: (415) 439-1400
Facsimile: (415) 439-1500

Michael W. De Vries (SBN 211001)
michael.devries@kirkland.com
KIRKLAND & ELLIS LLP
333 South Hope Street
Los Angeles, California 90071
Telephone: (213) 680-8400
Facsimile: (213) 680-8500

*Attorneys for Plaintiff Cisco Systems, Inc.*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CISCO SYSTEMS, INC., <br><br> Plaintiff, <br><br> v. <br><br> ARISTA NETWORKS, INC., <br><br> Defendant. | CASE NO.  5:14-cv-05344-BLF (NC) <br><br> **PLAINTIFF CISCO SYSTEMS, INC.'S OBJECTIONS AND RESPONSES TO DEFENDANT ARISTA NETWORKS, INC.'S AMENDED SEVENTH SET OF INTERROGATORIES TO PLAINTIFF CISCO SYSTEMS, INC. (NO. 31)** |

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, Plaintiff Cisco Systems, Inc. ("Cisco"), by counsel, hereby provides its first supplemental objections and responses to Defendant Arista Networks, Inc.'s ("Arista's") Amended Seventh Set of Interrogatories, which were served on Cisco on August 29, 2016 (the "Interrogatories").

## GENERAL OBJECTIONS

Cisco makes the following general objections to Arista's Interrogatories, which apply to each interrogatory regardless of whether the general objections are specifically incorporated into the specific objections and responses below.

1.      Cisco is responding to each interrogatory as it interprets and understands each interrogatory with respect to the issues in this Litigation.  If Arista asserts a different interpretation of any interrogatory, Cisco reserves the right to supplement or amend its responses or objections.

2.      Cisco objects to each interrogatory to the extent it is inconsistent with or seeks to impose obligations beyond those imposed by the Federal Rules of Civil Procedure, the Civil and Patent Local Rules of the Northern District of California, and any orders governing this Litigation.

3.      Cisco objects to the definitions of "Cisco," "You," and "Your," to the extent that the definitions are overly broad and purport to require Cisco to provide information that is not within the possession, custody, or control of Cisco.

4.      Cisco objects to the definitions of "HELPDESC" to the extent that term is vague and ambiguous with respect to its scope and application as used by Arista, rendering the term at least potentially unclear with respect to what is incorporated thereby, and further on the grounds that use of the term in Arista's Interrogatory renders the interrogatory overbroad and unduly burdensome to the extent that the discovery sought by such interrogatory is not reasonably tied to Cisco's claims or Arista's defenses in this Litigation.  Cisco further objects to the use of this term in Arista's Interrogatory to the extent that such interrogatory is not reasonably calculated to lead to the discovery of admissible evidence.

5.      Cisco objects to the definition of "Relating to" as vague and ambiguous and overly broad, unduly burdensome, and further to the extent that interrogatories using such terms are not reasonably calculated to lead to the discovery of admissible evidence.

6.      Cisco objects to the definition of "Identify" and the instructions as overly broad, unduly burdensome, and further to the extent that interrogatories using such terms are not reasonably calculated to lead to the discovery of admissible evidence.  Cisco further objects to these definitions and instructions to the extent that the burden of deriving or ascertaining the requested information is substantially the same for Arista as it is for Cisco.

7.      Cisco objects to each and every interrogatory as overly broad, unduly burdensome, cumulative, and duplicative to the extent it seeks identification of "any," "each," or "all" documents of a specified type or nature, when a subset of such documents will provide the requested information.  Cisco objects generally to each and every interrogatory as overly broad, vague and ambiguous, and not reasonably calculated to lead to the discovery of admissible evidence, to the extent that it seeks information regarding "any," "each," or "all" persons, entities, objects, or events.

8.      Cisco objects to the "Definitions" and "Instructions" of the Interrogatories to the extent they alter the plain meaning of any specific interrogatory and render the interrogatory vague, ambiguous, and overbroad.

9.      Cisco objects to each interrogatory to the extent that it is unlimited in temporal and/or geographic scope, or to the extent it would require Cisco to provide information or documents in violation of an applicable foreign law or regulation.

10.      Cisco objects to each interrogatory to the extent that it is overbroad, unduly burdensome, and/or calls for provision of information or documents that are neither relevant to any claim or defense in this litigation nor reasonably likely to lead to the discovery of admissible evidence.

11.      Cisco objects to each interrogatory to the extent that it calls for production of information or documents that are not within the possession, custody, or control of Cisco, or to the

1   extent the interrogatory seeks information that may not be disclosed pursuant to a protective order

2   or non-disclosure agreement, or calls for Cisco to prepare documents and/or things that do not

3   already exist.

4        12.    Cisco objects to each interrogatory to the extent that it calls for production of

5   information or documents that are publicly available or equally available to Arista, and therefore

6   are of no greater burden for Arista to obtain than for Cisco to obtain.

7        13.    Cisco objects to each interrogatory as overbroad and unduly burdensome to the

8   extent that it is not limited to a time frame relevant to this Litigation or seeks information or

9   documents not within the applicable scope of this Litigation.

10       14.    Cisco objects to each interrogatory to the extent it seeks information or documents

11  that Cisco is not permitted to disclose pursuant to confidentiality obligations to third parties or

12  court order.  Cisco will provide such responsive, relevant, and non-privileged information and/or

13  produce documents in accordance with the Protective Order governing this Litigation and after

14  complying with its obligations to the third party and/or court.

15       15.    Cisco objects to each interrogatory to the extent it seeks information, documents,

16  and/or things protected from disclosure by the attorney-client privilege, work-product doctrine,

17  common-interest privilege, and/or any other applicable privilege, immunity, doctrine, or

18  protection, including without limitation in connection with the common interest doctrine

19  (collectively, as used herein, "privileged").  Nothing contained in these objections and responses

20  should be considered a waiver of any attorney-client privilege, work-product protection, or any

21  other applicable privilege or doctrine, including in connection with the common interest doctrine.

22  Cisco does not intend to provide information or produce documents that would divulge any

23  privileged information.  Any such disclosure is inadvertent and shall not be deemed a waiver of

24  any applicable privilege or immunity.

25       16.    Cisco objects to Arista's Interrogatories to the extent that their subparts exceed the

26  number of interrogatories permitted under the Federal Rules of Civil Procedure, including Rule

27

28

33(a)(1), the Civil and Patent Local Rules of the Northern District of California, and any orders governing this Litigation.

17.    Cisco objects to each interrogatory to the extent that it is vague, ambiguous, or confusing due to Arista's failure to define terms or failure to describe the information or documents sought with reasonable particularity.

18.    Cisco objects to the factual characterizations of Arista's Interrogatories.  By responding, Cisco does not accept or admit any of Arista's factual characterizations.

19.    Terms or phrases with specific legal significance appear in many of Arista's Interrogatories.  Neither Cisco's objections and responses, nor the provision of information or production of documents in response to any interrogatory, are an admission or indication that such information and documents are relevant to any legal theory, or that any of the legal terms used have any applicability in their legal sense to any information or documents produced by Cisco in response to the Interrogatories.

20.    Cisco objects to these Interrogatories on relevance and burden grounds to the extent they are not limited in temporal scope, or to the extent that time period specified encompasses time periods not relevant to this Litigation, or to the extent the requests are not limited in geographic scope.

21.    Cisco objects to the Interrogatories as overly broad and unduly burdensome to the extent they call for the provision of information or production of documents of technical information, or otherwise, including source code, in connection with Cisco's products, where such information or documents are either duplicative of other documents or information that will be produced and/or are not relevant to this Litigation and Cisco's products relevant to this Litigation. Cisco further objects to the Interrogatories to the extent that they call for the provision of information or production of documents of technical information, or otherwise, including source code, in connection with Cisco's products, where such information and documents are not necessary to understand the relevant structure, function, and operation of Cisco's products relevant to this Litigation.

22.     Any Cisco response that it will provide information or produce documents should not be construed to mean that responsive information or documents in fact exist; only that, if such relevant, non-privileged, non-objectionable information or documents exist, are in Cisco's possession, custody, or control, and are located after a reasonable search of the location or locations where responsive information or documents are likely to be located, such information or documents will be produced in a timely manner.

23.     Cisco further reserves all rights to supplement its responses to Arista's Interrogatories in compliance with the Federal Rules of Civil Procedure, including under Rule 26(e), as well as the Civil and Patent Local Rules of the Northern District of California and any orders governing this Litigation, and as Cisco's investigation and discovery proceeds in this Litigation.

## OBJECTIONS AND RESPONSE TO INTERROGATORY

## INTERROGATORY NO. 31:

For each instance of "Help Description," or "HelpDesc" text that YOU disclosed in any response or supplemental response to Arista's Interrogatory 2 as a similarity that you contend is a basis for your claim of copyright infringement, identify all facts that you contend support your claim that the asserted text is (a) creative and (b) original to Cisco, including but not limited to: (1) the author or originator of such text, (2) the sources of any term or terms that correspond to terms from the Internet Engineering Task Force (IETF), the Institute of Electrical and Electronics Engineers (IEEE), or any other standards-setting body publications, (3) any other help description implementations known to or consulted by Cisco, and (4) the Cisco and Arista CLI command(s) that you contend correspond(s) to such text.

**RESPONSE TO INTERROGATORY NO. 31:**

Cisco incorporates by reference its General Objections as though fully set forth herein. Cisco further objects to this interrogatory because it is overbroad and goes beyond the scope of the Court's order, which permitted only "limited discovery . . . covering the authorship, originality, and creation" of the Cisco help descriptions that Arista copied. Dkt. 481 at 5. Cisco further objects to this interrogatory as compound, overly broad and unduly burdensome as it calls for thousands of pieces of information. Cisco further objects to this interrogatory as irrelevant to the extent it seeks information not relevant to the "authorship, originality, and creation" of Cisco's copyrighted help descriptions. Cisco further objects to this interrogatory to the extent that it calls for information that is publicly available or equally available to Arista (such as the Arista commands associated with Arista's help descriptions), and therefore is of no greater burden for Arista to obtain than for Cisco to obtain. Cisco also objects to this interrogatory as undefined, vague, ambiguous, overbroad, and unduly burdensome in its use of the terms "other help description implementations," "sources of any term or terms that correspond to terms," "standards-setting body publications," and "CLI command(s)." Cisco further objects to this interrogatory to the extent it calls for a legal conclusion. Cisco also objects to this interrogatory to the extent that it is cumulative and duplicative of other discovery sought by Arista. Cisco further objects to the extent this interrogatory seeks information that is protected by the attorney-client privilege, that constitutes attorney work-product, or that is protected by any other applicable privilege, protection, or immunity, including without limitation in connection with the common interest doctrine.

Subject to and without waiver of the foregoing general and specific objections, Cisco responds as follows:

The Court's summary judgment order states:  "In *CDN Inc. v. Kapes*, 197 F.3d 1256, 1260 (9th Cir. 1999), a case involving collectible coins, the plaintiff's employees relied upon coin publications, real-world transactions, supply and demand projections, analyze the effect of the economy and foreign policies to determine the wholesale prices of coins.  The Ninth Circuit found that prices in CDN's price guides were copyrightable because CDN used its judgment to create the prices." Dkt. 482 at 12.  The Court's order then quotes the following passage from *CDN*:

> [W]hat is important is the fact that [parties] arrive at the prices they list through a process that involves using their judgment to distill and extrapolate from factual data. It is simply not a process through which they discover a preexisting historical fact, but rather a process by which they create a price which, in their best judgment, represents the value of an item as closely as possible…This *process* imbues the prices listed with sufficient creativity and originality to make them copyrightable.

*Id.* at 13 (emphasis added by the Court).   The Court thereafter concluded:  "The fact that CDN used a process to determine, in its judgment, the value of coins was enough for the Ninth Circuit to find CDN's prices were copyrightable. The Ninth Circuit did not engage in an analysis of each and every price CDN calculated to determine if it possessed a minimal degree of creativity and originality.  Similarly, Cisco has adduced evidence of a process it undertook to create its CLI commands, and such a process is enough to create a genuine issue of material fact."  *Id.*

The help descriptions from Cisco's copyrighted works that Arista copied were authored by Cisco, as works made for hire.  *See* 17 U.S.C. § 201(b).   As in *CDN*, Cisco's help descriptions resulted from a creative process.  In Cisco's current CLI, Cisco's help descriptions are displayed to a user by utilizing a context sensitive help feature that is invoked by entering a question mark into Cisco's CLI.   Early versions of Cisco's CLI, however, had a help feature only "at the highest level of the hierarchy" whereby a user "could enter a question mark at the command prompt and it would tell you the commands that existed" (Slattery Tr. at 125:5-24) and a user "could not use [a] question mark to obtain help after [he or she] had stated entering a command."  *Id.*  In the early 1990s, Cisco contracted with Terry Slattery at Chesapeake Computer Consultants Inc. ("CCCI")

to work on Cisco's parser and CLI.  Slattery Tr. 71:8-12.  As part of Mr. Slattery's work for Cisco, Mr. Slattery created what is now known as Cisco's context sensitive help feature along with Cisco's help descriptions in version 9.21 of IOS.  As Mr. Slattery testified, he created the help descriptions in version 9.21 of IOS[1] through a creative process.  *Id.* at 127:16-23 ("I don't recall there being a specific requirement from Cisco.").  Mr. Slattery consulted Cisco IOS manuals, Cisco software and Cisco source code and used his judgment and creativity to create Cisco's help descriptions.  *Id.* at 130:1-12.  As Mr. Slattery testified, the help descriptions he created were new to Cisco's CLI and did not previously exist.  *Id.* 127:16-19; 128:8-15.

    After IOS version 9.21, the Cisco help descriptions were authored according to a creative process whereby a Cisco engineer would create a new command expression and then create a description of that command expression using the engineer's own professional judgment and subjective preferences.  When the new command expression was incorporated into Cisco's source code, the help description was input at the same time.  Accordingly, with the exception of help descriptions that existed as of version 9.21 of IOS, each Cisco help description that Arista copied was created on or around the same time as its corresponding command expression or expressions and were created by the same Cisco employee who created the command expression.  (Cisco has already provided extensive discovery regarding the process by which its command expressions were created.)  Cisco has not and does not have any formal requirements governing the creation of help descriptions, and their content is not formally regulated by Cisco.  As is evident from Cisco's help descriptions created through the above-referenced process, there is much diversity in content, capitalization, and punctuation across Cisco's help descriptions.

    Documents produced in this litigation also confirm Cisco's creation and ownership of the help descriptions.  For example, a 1993 Cisco document titled "Enhancements to the Cisco

---

[1]   *See* Cisco's Fourth Supplemental Response to Interrogatory No. 16 (Jan. 5, 2016).

Internetwork Operating System: Software Release 9.21 -- RSC 9.21 Update Instructor Guide"

discusses "major enhancements" in IOS version 9.21 including "improved prompting and help."

Slattery Ex. 81 at 2-2.  As mentioned above, the improved help feature allowed a user to enter a

question mark after which the program would output possible commands as well as descriptions of

each command (*id.* at 2-5), for example:




*Id.* at 2-6.

As another other example, in a 1993 article published in *The Packet: Cisco Systems Users*

*Magazine*, Mr. Slattery wrote that software release 9.25 of IOS included improvements such as

"interactive help, mode-sensitive command prompting, keyword completion, [and] command line

editing and history," among others.  ANI-ITC-944_945-5115888 at -907.  The 1993 article goes

on to explain these features and provide examples, *e.g.*:

## Command Syntax Help

When a user invokes Command Syntax Help at any point in the entry of a command, the system displays all possible keywords or arguments and includes a short description of each. Users can access Command Syntax Help by entering a question mark (?) in place of a keyword or argument. In Example 1, a user has invoked Command Syntax Help to learn the syntax of the command that sets the number of permanent small buffers.

### Example 1

```
comm-server(config)# buffers ?
Big     Big buffers
huge    Huge buffers
large   Large buffers
middle  Middle buffers
small   Small buffers
comm-server(config)# buffers small ?
initial    Temporary buffers allocated at system reload
max-free   Maximum number of free buffers
min-free   Minimum number of free buffers
permanent  Number of permanent buffers
comm-server(config)# buffers small permanent ?
<0-4294967296> Number of buffers
comm-server(config)# buffers small permanent 200
comm-server(config)#
```

ANI-ITC-944_945-5115888 at -907.

Cisco's help descriptions are the result of individual Cisco engineers' own subjective, professional judgment and preference for conveying information about the purpose or use of a particular command expression. There are no industry requirements, standards, or constraints for help descriptions. There are no technical requirements that dictate the content of a help description or any other parameters of the help description. There also are no "interoperability" concerns relating to help descriptions, as they are textual strings that are output to a user and do

not implicate any machine-to-machine interactions or networking protocols.   To the extent that a networking protocol term or acronym is used as part of a help description, that is because the Cisco author of the help description made an independent professional decision to incorporate that term or acronym into the content of the help description—there are no requirements (technical, functional, or otherwise) that required the term to have been included in the help description.

Attached hereto as Exhibit I is a table containing additional information regarding the authorship and originality of a representative set of Cisco's help descriptions that Arista has copied from one or more of Cisco's copyrighted works.  The columns of Exhibit I include, for each help description where such information could be identified, one or more of the following categories of information:

- **Command or Commands Associated With The Help Description**:  To the extent that more than one command expression is listed, that is because more than one command expression may be associated with a help description.  The command expressions provided are examples, and are not intended to be reflect all command expressions associated with particular help descriptions.

- **Author/Originator Information:**  Legal author of the help description and person(s) who participated in the origination of the help description.

- **Earliest Known Document and/or Source Code:** The first document/source code known to Cisco that contains the help description.

- **First Operating System:** The earliest known published work to contain the help description.

- **First Distribution Date:** The date on which distribution of the first published work containing the help description began.

- **Additional Supporting Cisco Documentation & Source Code**

Exhibit I contains HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY – SOURCE
CODE information.

Pursuant to Fed. R. Civ. P. 33(d), Cisco directs Arista to the following documents, from
which Arista can gather information regarding the status of its asserted copyright works as works
for hire, as well as information regarding the presumptive validity of Cisco's copyrights and the
date on which those works were completed: All Documents Referenced in Exhibit I; TS-
00000002; Cisco's copyrighted works, copyright applications, and registrations, *e.g.*, IOS 11.0:
CSI-CLI-00356391 - CSI-CLI-00356394, CSI-CLI-00356395 - CSI-CLI-00356398; IOS 11.1:
CSI-CLI-00356385 - CSI-CLI-00356388, CSI-CLI-00356500 - CSI-CLI-00356501, CSI-CLI-
00356588 - CSI-CLI-00356591, CSI-CLI-00356562 - CSI-CLI-00356563; IOS 11.2: CSI-CLI-
00356578 - CSI-CLI-00356581, CSI-CLI-00356496 - CSI-CLI-00356499; IOS 11.3:  CSI-CLI-
00356538 - CSI-CLI-00356541, CSI-CLI-00356582 - CSI-CLI-00356587, CSI-CLI-00356446 -
CSI-CLI-00356549, CSI-CLI-00356576 - CSI-CLI-00356577; IOS 12.0: CSI-CLI-00356520 -
CSI-CLI-00356523, CSI-CLI-00356550 - CSI-CLI-00356555,  CSI-CLI-00356516 - CSI-CLI-
00356519, CSI-CLI-00356484 - CSI-CLI-00356485; IOS 12.1: CSI-CLI-00356512 - CSI-CLI-
00356515, CSI-CLI-00356490 - CSI-CLI-00356495, CSI-CLI-00356572 - CSI-CLI-00356575,
CSI-CLI-00356506 - CSI-CLI-00356507; IOS 12.2: CSI-CLI-00356508 - CSI-CLI-00356511,
CSI-CLI-00356556 - CSI-CLI-00356561, CSI-CLI-00356506 - CSI-CLI-00356508, CSI-CLI-
00356536 - CSI-CLI-00356537; IOS 12.3: CSI-CLI-00356524 - CSI-CLI-00356527, CSI-CLI-
00356542 - CSI-CLI-00356545; IOS 12.4: CSI-CLI-00356486 - CSI-CLI-00356489, CSI-CLI-
00356705 - CSI-CLI-00356705;  IOS 15.0: CSI-CLI-00356480 - CSI-CLI-00356483, CSI-CLI-
00356564 - CSI-CLI-00356567; IOS 15.1: CSI-CLI-00356502 - CSI-CLI-00356505, CSI-CLI-
00356532 - CSI-CLI-00356535; IOS 15.2 CSI-CLI-00356528 - CSI-CLI-00356531, CSI-CLI-
00356697 - CSI-CLI-00356700; IOS 15.4 CSI-CLI-00356657 - CSI-CLI-00356660, CSI-CLI-

00356653 - CSI-CLI-00356656; IOS XR 3.0 CSI-CLI-00356665 - CSI-CLI-00356668, CSI-CLI-00356618 - CSI-CLI-00356621;  IOS XR 3.2 CSI-CLI-00356661 - CSI-CLI-00356664, CSI-CLI-00356701 - CSI-CLI-00356704; IOS XR 3.3 CSI-CLI-00356689 - CSI-CLI-00356692, CSI-CLI-00356642 - CSI-CLI-00356645; IOS XR 3.4 CSI-CLI-00356634 - CSI-CLI-00356637, CSI-CLI-00356638 - CSI-CLI-00356641; IOS XR 3.5 CSI-CLI-00356685 - CSI-CLI-00356688, CSI-CLI-00356614 - CSI-CLI-00356617; IOS XR 4.3 CSI-CLI-00356681 - CSI-CLI-00356684, CSI-CLI-00356649 - CSI-CLI-00356652; IOS XR 5.2 CSI-CLI-00356626 - CSI-CLI-00356629, CSI-CLI-00356602 - CSI-CLI-00356605; IOS XE 2.1 CSI-CLI-00356693 - CSI-CLI-00356696, CSI-CLI-00356606 - CSI-CLI-00356609; IOS XE 3.5 CSI-CLI-00356610 - CSI-CLI-00356613, CSI-CLI-00356630 - CSI-CLI-00356633; NX OS 4.0 CSI-CLI-00356646 - CSI-CLI-00356648, CSI-CLI-00356622 - CSI-CLI-00356625; NX OS 5.0 CSI-CLI-00356599 - CSI-CLI-00356601, CSI-CLI-00356677 - CSI-CLI-00356680; NX OS 5.2 CSI-CLI-00356596 - CSI-CLI-00356598, CSI-CLI-00356673 - CSI-CLI-00356676; NX OS 6.2 CSI-CLI-00356593 - CSI-CLI-00356595, CSI-CLI-00356669 - CSI-CLI-00356672; Cisco switches made available for inspection in this case; Cisco IOS, IOS-XR, IOS-XE, and NX-OS source code made available for inspection in this case, in particular the source code identified in Exhibit I.

Cisco incorporates by references its objections and responses to Interrogatory Nos. 2, 16, and 19.

Cisco incorporates by reference the deposition testimony of Terry Slattery and Cisco's Rule 30(b)(6) deponent related to this interrogatory.

Cisco is continuing to search for additional information and reserves all rights to supplement its response and Exhibit I to the extent additional responsive information is identified. Cisco's efforts to respond to this Interrogatory in a limited time frame have been extensive.

**FIRST SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 31:**

Subject to and without waiver of its general and specific objections, Cisco further responds as follows:

Attached hereto is a supplemental version of Exhibt I.  Exhibit I is incorporated by reference as if fully set forth herein.

Cisco also incorporates by reference the testimony from the September 16, 2016 Rule 30(b)(6) deposition of Kirk Lougheed, which further supports the creativity, originality, and authorship of the Cisco help descriptions that Arista copied.  For example, Mr. Lougheed confirmed that Cisco contractor Terry Slattery created the help descriptions for version 9.21 of Cisco IOS.  Lougheed Tr. 451:13-452:8; 475:23-476:2.  With respect to help descriptions created after version 9.21, Mr. Lougheed explained that Cisco's engineers authored them via a creative process using their professional judgment:

- "The engineers had free rein in what they wanted to write." *Id.* at 453:5-21.

- "Q Were there any constraints on the engineers who were creating CLI commands on how they should author a HELPDESC string?  A No.  Q Are there any guidelines dictating how they should use their judgment in determining what to write for the HELPDESC?  A There were no such guidelines.  Q So they could essentially choose any phrase they wanted? A Correct." *Id.* at 454:1-11.

- "Q Did you have any guidelines that you used in creating HELPDESC phrases?  [Objection Omitted]  THE WITNESS: There were no formal guidelines. It was just my judgment." *Id.* at 464:8-12.

- "The -- the general process is that the engineer comes up with a CLI command or an extension to a CLI command. And there is always a bit of help text associated with those commands.  And the engineer figures out what -- in his or her professional judgment,

what is the best way of giving some assistance, guidance, as to the syntax of the CLI command."  Lougheed Tr. at 497:9-16.

*See also id.* at 466:17-25; 476:3-20.  This creative process was well-known by Cisco engineers because it was part of the process of creating new command expressions.  *Id.* at 452:9-21; 463:23-464:12; 465:21-467:4; 486:22-487:1; 489:2-5; 489:24-490:1.   And when a help description was created it was input into the same Cisco source code file as the command expression it was associated with.  *Id.* at 444:2-10.  Cisco's creative process was and is in place because it is difficult if not impossible to keep track of the individual thought processes of thousands of engineers over decades of time, as Mr. Lougheed explained:  "So, with many thousands of engineers over the past 30 years, we haven't kept track of exactly what they were thinking when -- or consulting or how they actually came up with help descriptions" (*id.* 455:1-4; 468:3-6) but instead Cisco relied on a process and a culture of "hir[ing] intelligent, creative people, and . . . tr[ing] to stay out of their way" so that they could exercise their professional judgment.  *Id.* at 468:10-11.

Further, Mr. Lougheed confirmed the originality of Cisco's help descriptions when he explained that Cisco's engineers did not consult "other CLI vendors' HELPDESC" when creating Cisco's own help descriptions because Cisco's engineers were "creating new functionality that hadn't existed before in the industry" and so "going and looking and seeing what somebody else did would probably not have occurred to – to those engineers."  Lougheed. Tr. at 454:12-22; 455:10-13 ("I would expect most of [the Cisco engineers] would want to describe what their command was doing and get on with it, rather than waste time researching to see what somebody else had done.").  As an example, Mr. Lougheed explained the creation of the "ARP type ARPA" help description, which was unique to Cisco:

> 15 A From my knowledge of the technology and
> 16 history, this was something that was created prior to

17 9.21.
18 And what the help message was trying to get
19 at is that in 1986, when we had ARP support in the
20 router, we basically discovered that there were
21 two ways of putting packets, IP packets and ARP
22 packets and other sorts of packets, on the Ethernet.
23 There was the way that is done today. There
24 is also the way that the IEEE specified that packets
25 should be put on. And HP, which was a big customer of
ours at the time, used the IEEE method.
2 And in the -- coming up with the command
3 expression that would express the difference between
4 these two types of what we would call encapsulations
5 on the -- on the wire, I needed a term to distinguish
6 them. I chose the word ARPA.
7 It's kind of a strange choice. It's not an
8 industry standard term. It's something that only --
9 only Cisco has used.
10 And it sort of betrays its -- its antique
11 origin, because it's -- IETF might be one way of
12 specifying it, or Ethernet standard or the like. But
13 this is the way the ARPANET community was doing things
14 at the time. So that's what – that's where the sort
15 of "type ARPA" concept came along -- came from.
16 And Terry basically created that string to go
17 with that. I'm – I'm inferring that he created that
18 string to go with that because I was -- that was very
19 old code, and that was his idea of a -- of a helpful
20 explanation.

Lougheed Tr. at 477:15-478:20.  Mr. Lougheed also noted that Arista's copying of this help

description was quite "unusual" given its uniqueness:  "And I find it unusual that the same string

would exist in the Arista code, because nobody for the past 25 years has actually used the IEEE

way of doing things.  And nobody in the industry refers to it as ARPA encapsulation. That just --

they -- they just wouldn't do that."  *Id.* at 479:1-7.

Mr. Lougheed also confirmed the importance and value of the help descriptions.  For

instance, he explained that the help descriptions provide crucial context sensitive information to a

user who is "unsure as to what comes next, or wants to know what options are of what comes

next."  *Id.* at  442:21-25.  The help descriptions are thus important because they provide a

"succinct description of the syntax of the command going forward," which helps users quickly

navigate a switch/router.  *Id.* 442:25-443:6.  As Mr. Lougheed testified:

10 But I would observe that the CLI -- the help
11 messages are an integral part of the user interface of
12 a Cisco router, and that it makes life much, much
13 easier for our customers to be able to configure and
14 manage the software. It makes it -- it's part of the
15 user experience, and the customers really like it.
16 They also have an advantage -- Cisco has done
17 a lot of -- has set up, in fact, training programs on
18 how to use the -- the Cisco CLI. They've invested a
19 lot in that to train people and certify them in how to
20 use it.
21 And one of the advantages of the
22 context-sensitive help is that, when we introduce new
23 technology, technology that the world hasn't seen
24 before, our customers can very easily figure out,
25 because of the hierarchy and the help, how to
1 configure it and what -- how to configure that new
2 technology and how to deploy it. So there is -- there
3 is great value there.
\*\*\*
14 THE WITNESS: The help descriptions are an
15 integral part of the command line interface. It's
16 part of our creative effort. It's part of our -- it
17 has value. It has -- it has -- it has a lot of value.

Lougheed Tr. at 624:10-625:17.

7 THE WITNESS: So we've made choices of
8 phrases to describe how these things work, and we --
9 and customers have come to expect those phrases. It's
10 in -- it's in documentation. Once we've made that
11 decision, it's pretty much completed work at that
12 point.

*Id.* at 628:7-12.

21 THE WITNESS: So our customers find our help
22 messages and the context-sensitive help very valuable,
23 because they can do much of their job by typing
24 question marks to prompt their memory as what they
25 need -- would want to do next, rather than having to
1 consult outside documentation. They can show up in an
2 already-running router and be able to confidently
3 change things.

*Id.* at 629:21-630:3.

2 There's -- Cisco al- -- also offers training

3 in technologies to have a larger conceptual view of
4 why you would want to turn on a particular feature and
5 how you would want to design your network.
6 But, if you were actually configuring the box
7 and trying to remember, Okay. I know I need to set it
8 up this particular way. What's -- what's the exact
9 command -- what exact keywords do I use, and what
10 arguments do I need to give that?
11 You -- the customers have quickly figured
12 that out and more confidently configure the box or
13 monitor the box.

*Id.* at 631:2-13.


Cisco is continuing to search for additional information and reserves all rights to

supplement its response and Exhibit I to the extent additional responsive information is identified.

Cisco's efforts to respond to this Interrogatory in a limited time frame have been extensive.


Dated:  October 14, 2016                           Respectfully submitted,


                                                   */s/ Sean Pak*

                                                   Kathleen Sullivan (SBN 242261)
                                                   kathleensullivan@quinnemanuel.com
                                                   QUINN EMANUEL URQUHART &
                                                   SULLIVAN LLP
                                                   51 Madison Avenue, 22nd Floor
                                                   New York, NY 10010
                                                   Telephone: (212) 849-7000
                                                   Facsimile: (212) 849-7100

                                                   Sean S. Pak (SBN 219032)
                                                   seanpak@quinnemanuel.com
                                                   John M. Neukom (SBN 275887)
                                                   johnneukom@quinnemanuel.com.
                                                   QUINN EMANUEL URQUHART &
                                                   SULLIVAN LLP
                                                   50 California Street, 22nd Floor
                                                   San Francisco, CA 94111
                                                   Telephone: (415) 875-6600
                                                   Facsimile: (415) 875-6700

                                                   Mark Tung (SBN 245782)
                                                   marktung@quinnemanuel.com
                                                   QUINN EMANUEL URQUHART &
                                                   SULLIVAN LLP

555 Twin Dolphin Drive, 5th Floor
Redwood Shores, CA 94065
Telephone: (650) 801-5000
Facsimile: (650) 801-5100

Steven Cherny (admitted *pro hac vice*)
steven.cherny@kirkland.com
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900

Adam R. Alper (SBN 196834)
adam.alper@kirkland.com
KIRKLAND & ELLIS LLP
555 California Street
San Francisco, California 94104
Telephone: (415) 439-1400
Facsimile: (415) 439-1500

Michael W. De Vries (SBN 211001)
michael.devries@kirkland.com
KIRKLAND & ELLIS LLP
333 South Hope Street
Los Angeles, California 90071
Telephone: (213) 680-8400
Facsimile: (213) 680-8500

*Attorneys for Plaintiff Cisco Systems, Inc.*

1

## PROOF OF SERVICE

2        I hereby certify that, at the date entered below and per the agreement of the parties, I

3  caused a true and correct copy of the foregoing to be served by transmission via electronic mail,

4  made available to counsel at the email addresses below:

5    Juanita R. Brooks                          Brian L. Ferrall
     brooks@fr.com                              blf@kvn.com
6    Fish & Richardson P.C.                     Michael S. Kwun
     12390 El Camino Real                       mkwun@kvn.com
7    San Diego, CA 92130-2081                   David J. Silbert
                                                djs@kvn.com
8    Kelly C. Hunsaker                          Robert Van Nest
     hunsaker@fr.com                            rvannest@kvn.com
9    Fish & Richardson PC                       Keker & Van Nest LLP
10   500 Arguello Street, Suite 500             633 Battery Street
     Redwood City, CA 94063
11                                              San Francisco, CA 94111-1809
                                                Susan Chreighton
12   Ruffin B. Cordell                          screighton@wsgr.com
     cordell@fr.com                             Scott Andrew Sher
13   Lauren A. Degnan                           ssher@wsgr.com
     degnan@fr.com                              Wilson Sonsini Goodrich Rosati
14   Michael J. McKeon                          1700 K Street
     mckeon@fr.com                              Washington, DC 20006
15   Fish & Richardson PC
     1425 K Street NW
16   11th Floor
     Washington, DC 20005
17

18

19        I declare under penalty of perjury that the foregoing is true and correct.  Executed on

20  October 14, 2016, at Redwood Shores, California.

21                                 */s/ Sara Jenkins*
                                   _____

22

23

24

25

26

27

28