```
 1              UNITED STATES DISTRICT COURT

 2             NORTHERN DISTRICT OF CALIFORNIA

 3                   SAN JOSE DIVISION

 4

 5

    CISCO SYSTEMS, INC.,            )  C-14-05344 BLF
 6                                  )
                  PLAINTIFF,        )  SAN JOSE, CALIFORNIA
 7                                  )
             VS.                    )  NOVEMBER 3, 2016
 8                                  )
    ARISTA NETWORKS, INC.,          )  PAGES 1-146
 9                                  )
                  DEFENDANT.        )
10    _____       )

11

12              TRANSCRIPT OF PROCEEDINGS
          BEFORE THE HONORABLE BETH LABSON FREEMAN
13             UNITED STATES DISTRICT JUDGE

14

15    A P P E A R A N C E S:

16    FOR THE PLAINTIFF:    QUINN, EMANUEL, URQUHART & SULLIVAN
                            BY:  SEAN PAK
17                          50 CALIFORNIA STREET, 22ND FLOOR
                            SAN FRANCISCO, CALIFORNIA  94111
18
                            BY:  DAVE NELSON
19                          500 WEST MADISON STREET, SUITE 2450
                            CHICAGO, ILLINOIS  60661
20

21              APPEARANCES CONTINUED ON NEXT PAGE

22

23    OFFICIAL COURT REPORTER:    LEE-ANNE SHORTRIDGE, CSR, CRR
                                  CERTIFICATE NUMBER 9595
24

25        PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY
              TRANSCRIPT PRODUCED WITH COMPUTER
```

1

2      APPEARANCES (CONTINUED)

3

4      FOR THE DEFENDANT:      KEKER & VAN NEST
                               BY:  ROBERT A. VAN NEST
5                                   BRIAN L. FERRALL
                                    DAVID J. SILBERT
6                                   ELIZABETH K. MCCLOSKEY
                                    EDUARDO E. SANTACANA
7                                   RYAN WONG
                                    DAVID J. ROSEN
8                              633 BATTERY STREET
                               SAN FRANCISCO, CALIFORNIA  94111.
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1    SAN JOSE, CALIFORNIA                    NOVEMBER 3, 2016

 2                    P R O C E E D I N G S

 3         (COURT CONVENED AT 1:31 P.M.)

 4              THE COURT:  GOOD AFTERNOON, EVERYONE.  PLEASE BE

 5    SEATED.  HELLO AGAIN.

 6              MR. VAN NEST:  GOOD AFTERNOON, YOUR HONOR.

 7              MR. PAK:  GOOD AFTERNOON.

 8              THE COURT:  ALL RIGHT.  WE HAVE A LOT TO DO TODAY.  I

 9    MADE LONG LISTS SO THAT I COULD TRY TO GET THROUGH EVERYTHING,

10    BUT THIS IS MY FINAL PRETRIAL CONFERENCE.  IT'S MY HOPE THAT WE

11    GET THROUGH ALL OF THE TEN IN LIMINE MOTIONS AND THEN TALK

12    ABOUT MY NORMAL ISSUES FOR GETTING YOU READY FOR TRIAL AND A

13    NUMBER OF THINGS RAISED IN YOUR PRETRIAL STATEMENT.

14         SO I'M GOING TO KEEP PUSHING ON SOME OF THIS, AND I MIGHT

15    NOT ALLOW QUITE AS MUCH ARGUMENT ON THE IN LIMINES AS YOU WOULD

16    LIKE, BUT I THINK YOU ALL NEED TO KNOW WHAT YOUR CASE IS ABOUT

17    SO YOU REALLY NEED RULINGS TODAY.

18         BEFORE I BEGIN, I WOULD LIKE TO MAKE ONE REQUEST, WHICH IS

19    IN THE FORM OF A DISCLOSURE.  YOU WERE BOTH GRACIOUS AND

20    ALLOWED MY LAW CLERK, PATIENCE REN, TO WORK ON THIS CASE EVEN

21    THOUGH SHE HAD SOME CONNECTION WITH THE PLAINTIFF'S LAW FIRM,

22    AND NOW I HAVE ANOTHER LAW CLERK IN OUR COURTHOUSE DOING PATENT

23    WORK, KRISTEN LOVIN, WHO, AS YOU MIGHT SUSPECT, IS AN EXCELLENT

24    LAW CLERK FOR THE NORTHERN DISTRICT OF CALIFORNIA, HAS ALSO GOT

25    CONNECTIONS TO ALL OF THE FINE FIRMS, AND THAT INCLUDES BOTH OF
```

1    YOUR FIRMS.

2        AND SO I WOULD -- I'M REALLY ASKING, AND YOU MAY NOT BE

3    ABLE TO GIVE ME AN ANSWER TODAY, BUT I -- IF THERE IS NO

4    OBJECTION, I WOULD SEEK TO HAVE HER WORK ON THIS CASE.

5        MS. LOVIN WAS AN ASSOCIATE AT QUINN, EMANUEL FOR TWO

6    YEARS, ENDING IN 2015 WHEN SHE WENT TO CLERK FOR THE FEDERAL

7    CIRCUIT FOR CHIEF JUDGE PROST, AND SHE HAD, PRIOR TO ACCEPTING

8    HER OFFER TO CLERK HERE, HAD BEEN IN DISCUSSIONS WITH THE

9    KEKER & VAN NEST FIRM ABOUT POTENTIALLY WORKING FOR THEM.

10        AND SO ALTHOUGH NO OFFERS HAVE BEEN ACCEPTED, I WOULD NOT

11    ASK HER TO WORK ON THE CASE UNLESS BOTH SIDES WOULD AGREE THAT

12    HER CONNECTION IS NOT A CONFLICT.  SHE HAS NEVER WORKED ON THIS

13    CASE.  SHE KNOWS MANY OF THE PEOPLE WHO HAVE BECAUSE THAT'S

14    JUST THE WAY IT IS, AND I -- THAT'S ALL -- THAT'S WHAT I KNOW.

15        THAT'S WHAT I'M ASKING OF YOU, AND I DON'T KNOW WHETHER

16    YOU'RE PREPARED TO MAKE A RESPONSE NOW OR YOU FEEL YOU NEED TO

17    TALK WITH YOUR CLIENTS.

18        MR. VAN NEST:  I THINK WE WOULD NEED TO TALK WITH OUR

19     CLIENT, YOUR HONOR.  WHAT IS HER NAME?

20        THE COURT:  KRISTEN LOVIN.

21        MR. VAN NEST:  L-O-V-E --

22        THE COURT:  L-O-V-I-N.

23        MR. VAN NEST:  L-O-V-I-N.

24        THE COURT:  YES.

25        MR. VAN NEST:  WE'LL GET A PROMPT RESPONSE.

```
1              THE COURT:  I APPRECIATE THAT.

2         MR. PAK.

3              MR. PAK:  YES, WE'LL DO THE SAME ON OUR END.

4              THE COURT:  ALL RIGHT.  THEN LET'S MOVE ON.

5         BEFORE WE GET DOWN TO THE IN LIMINE MOTIONS, LET ME GO

6    OVER SOME OF THE GENERAL ISSUES REGARDING THE TRIAL, AND THEN

7    WE'LL CHANGE GEARS INTO SOME OF THE MOTIONS.

8              THE CLERK:  EXCUSE ME, YOUR HONOR.  JUST FOR THE

9    RECORD, CAN I CALL THE CASE?

10             THE COURT:  OH, I'M SORRY.  WE NEED TO GET YOUR

11   APPEARANCES.  OF COURSE WE KNOW EACH OTHER SO WELL BY NOW, I

12   FORGOT.

13             THE CLERK:  CALLING CASE 14-5344, CISCO SYSTEMS

14   VERSUS ARISTA NETWORKS.

15        COUNSEL, PLEASE STATE YOUR APPEARANCE.

16             MR. PAK:  GOOD AFTERNOON, YOUR HONOR.

17        SEAN PAK OF QUINN EMANUEL AND DAVE NELSON ON BEHALF OF

18   CISCO.

19             MR. NELSON:  GOOD AFTERNOON, YOUR HONOR.

20             THE COURT:  GOOD AFTERNOON.

21             MR. VAN NEST:  YOUR HONOR, BOB VAN NEST OF

22   KEKER & VAN NEST FOR DEFENDANT ARISTA NETWORKS.  I'M HERE WITH

23   BRIAN FARRELL, DAVID SILBERT, RYAN WONG, ELIZABETH MCCLOSKEY,

24   EDUARDO SANTACANA, AND DAVID ROSEN.

25             THE COURT:  GOOD AFTERNOON TO ALL OF YOU.
```

```
 1                    MR. VAN NEST:  THANK YOU.

 2                    THE COURT:  ALL RIGHT.  WE HAVE PLANNED ALL ALONG TO

 3          COMMENCE THE INITIAL JURY SELECTION ON NOVEMBER 18, THE FRIDAY

 4          BEFORE -- THE FULL WEEK BEFORE THANKSGIVING, AND THAT IS MY

 5          CURRENT INTENTION.  ON THAT DAY, THE JURY WILL COME IN, AND I

 6          WILL NEED THEM TO COME INTO THE COURTROOM BECAUSE I NEED TO

 7          GIVE THEM THE INITIAL STATEMENT OF THE CASE AND THE ADMONITIONS

 8          ABOUT NOT DOING RESEARCH BEFORE THEY FILL OUT THE

 9          QUESTIONNAIRE.

10                    AND SO I DO NOT NEED YOUR CLIENTS HERE THAT DAY.  I WILL

11          PROBABLY BE HAVING YOU STAY ALL DAY, BUT I DON'T WANT -- AND

12          CERTAINLY NO WITNESSES.  AND WE MAY -- I ANTICIPATE WE'LL BEGIN

13          OUR WORK ON JURY INSTRUCTIONS AND FURTHER DISCUSSION IF WE NEED

14          IT ON ANALYTIC DISCUSSION, BUT WE'LL GET TO THAT LATER.

15                    SO I WOULD HAVE COUNSEL IN THE COURTROOM.  I WOULD

16          INTRODUCE YOU, BUT ONLY LEAD COUNSEL AT THAT POINT.  ON THE --

17          A WEEK AND A HALF LATER ON THE MONDAY WHEN YOU DO YOUR VOIR

18          DIRE, YOU WOULD THEN BE ABLE TO INTRODUCE YOUR TEAMS AND YOUR

19          CLIENTS, BUT WE WON'T DO THAT INITIALLY.  BUT I DO HAVE YOU IN

20          THE COURTROOM WHENEVER I HAVE THE JURY PRESENT.  THAT WILL BE

21          THE PANEL.

22                    THEN WHEN THEY FILL OUT THAT QUESTIONNAIRE, WE ALL LEAVE

23          AND THEN YOU ARE DONE WITH THE JURY DURING THE DAY.

24                    YOU'LL HAVE STAFF AVAILABLE TO COPY THE QUESTIONNAIRES,

25          BRING ME BACK THE ORIGINAL, AND THEN KEEP YOUR COPIES.
```

1            AND LET ME JUST SAY WITH THE QUESTIONNAIRES, THEY CLEARLY

2     ARE FOR YOU TO USE AND WITH YOUR JURY CONSULTANTS IF YOU HAVE

3     ANY, OR ANY OTHER CONSULTANTS THAT YOU USE.

4            HOWEVER, THE QUESTIONNAIRES, EVERY ONE OF THEM, MUST BE

5     RETURNED TO ME AND YOU MAY NOT RETAIN COPIES IN ANY FORM.

6            AND YOU MAY KEEP THE COPIES OF THE SEATED JURORS DURING

7     THE TRIAL, AND THEN THOSE NEED TO BE RETURNED.

8            BUT FOR ANY JUROR EXCUSED, I WANT THOSE BACK RIGHT AWAY.

9            AND OF COURSE WE MAINTAIN THEM AND OF COURSE THEY'RE PART

10     OF THE RECORD, BUT IT HAS PERSONAL INFORMATION THAT YOU HAVE NO

11     REASON TO RETAIN.

12            MR. VAN NEST:  BUT, YOUR HONOR, YOU WANT -- THE

13      PARTIES WILL DO THE COPYING ON FRIDAY?

14            THE COURT:  YES.

15            MR. VAN NEST:  SO WE'LL HAVE A COPY SERVICE HERE.

16     WE'LL DO THE COPYING AND WE GIVE YOU BACK THE ORIGINAL?

17            THE COURT:  THAT'S RIGHT.

18            MR. VAN NEST:  AND THEN WE KEEP WHAT WE HAVE AND

19      RETURN THAT STUFF AFTER JURY SELECTION ON MONDAY?

20            THE COURT:  THAT'S RIGHT.

21            MR. VAN NEST:  ALL RIGHT.  THANK YOU.

22            THE COURT:  THANK YOU.

23            AND THEN WHAT I EXPECT WITH THE QUESTIONNAIRE IS THAT YOU

24     WILL MEET AND CONFER OVER THE WEEKEND, AND FOR ANY JUROR YOU

25     MUTUALLY AGREE SHOULD BE EXCUSED FOR CAUSE, YOU WILL ADVISE ME

1    SO THAT I CAN CONFIRM THAT THAT'S APPROPRIATE.  AND WE ACTUALLY

2    CALL THOSE JURORS ON SUNDAY AND LET THEM KNOW THEY DON'T NEED

3    TO COME IN.

4         AND SO WE'LL GO OVER THIS AGAIN ON THE 18TH, BUT I WILL

5    REQUIRE THAT YOU COMMUNICATE WITH ME BY NOON ON THE SUNDAY,

6    NOVEMBER 20TH, TO LET ME KNOW OF THE REQUEST TO EXCUSE FOR

7    CAUSE.

8         I DO MY HARDSHIP ON A SEPARATE QUESTIONNAIRE, HENCE I'LL

9    BE TAKING SOME OF THE QUESTIONS OFF OF YOURS.  I GET RID OF

10   PEOPLE FOR HARDSHIP BEFORE THEY FILL OUT THE LENGTHY

11   QUESTIONNAIRE.  IT'S JUST SIMPLY NOT WORTH HAVING 100 PEOPLE

12   FILL OUT A QUESTIONNAIRE.

13        THAT IS A VERY SHORT QUESTIONNAIRE THAT HAS NOTHING TO DO

14   WITH THE CASE.  THEY FILL THAT OUT IN THE JURY ROOM.  IT HAS TO

15   DO WITH THEIR OWN PERSONAL MEDICAL CONDITIONS, CONFLICTS WITH

16   WORK THAT WOULD CAUSE FINANCIAL HARDSHIP, DISTANCE FROM THE

17   COURTHOUSE, THE NORMAL THINGS.

18        WE WILL THEN, YOU AND I, GO OVER THOSE ON FRIDAY MORNING

19   BEFORE THE JURY COMES UPSTAIRS.  WE WILL THEN -- I WILL THEN

20   EXCUSE WHAT TYPICALLY IS ABOUT HALF OF THE JURORS BASED ON

21   HARDSHIP, AND THEN THE QUESTIONNAIRE WILL ONLY BE GIVEN TO

22   THOSE WHO REMAIN.  THAT CERTAINLY CUTS YOUR WORKLOAD DOWN AS

23   WELL, AND THEN WE CAN -- WE DON'T NEED TO INCONVENIENCE THOSE

24   JURORS.

25        I WILL BE PICKING EIGHT JURORS IN THE CASE.  THERE ARE NO

1    ALTERNATES IN CIVIL CASES.  EACH SIDE WILL HAVE THREE

2    PEREMPTORY CHALLENGES.

3         AND I WILL ASK YOU NOW, WILL YOU -- IF YOU ARE WILLING TO

4    AGREE TO WAIVE A UNANIMOUS JURY, I WOULD INCREASE THE SIZE OF

5    THE JURY PANEL SO THAT -- TO HAVE NINE JURORS, AND I WOULD ASK

6    THAT YOU CONSIDER EITHER A SEVEN OR EIGHT JUROR MAJORITY FOR A

7    VERDICT.  AND, OF COURSE, YOU MUST CONSENT.

8         SO, AGAIN, YOU MAY WISH TO SPEAK TO YOUR CLIENTS, BUT I

9    WILL ASK YOU TO CONSIDER THAT.

10        IT'S MY INTENTION TO ADVISE THE JURY TO BE AVAILABLE, WITH

11   THE EXCEPTION OF THANKSGIVING WEEK, CERTAINLY THROUGH

12   DECEMBER 16, AND MY QUESTION TO YOU IS, DO YOU ANTICIPATE THAT

13   WE WILL NEED THEM TO BE AVAILABLE ON DECEMBER 19 AND 20?

14   THAT'S THE WEEK, OBVIOUSLY, THAT CHRISTMAS -- CHRISTMAS IS THE

15   FOLLOWING SUNDAY.

16        MR. VAN NEST:  I CERTAINLY HOPE NOT, YOUR HONOR.

17        I HAD ONE QUESTION -- I HAVE A QUESTION IN THAT REGARD.

18   YOU'VE ALLOWED US EACH 22 HOURS.

19        THE COURT:  YES.

20        MR. VAN NEST:  I ASSUME THAT'S EVIDENCE, OR -- AND

21   THE OPENINGS AND CLOSINGS ARE SEPARATE FROM THAT.  OR --

22        THE COURT:  THAT'S CORRECT.

23        MR. VAN NEST:  OKAY.  SO WITH 22 HOURS OF EVIDENCE

24   AND OPENINGS AND CLOSINGS, I THINK WE COULD ESTIMATE FINISHING

25   EVIDENCE AND ARGUMENTS ON OR ABOUT THE 14TH.  THAT'S WHAT --

```
 1            THE COURT:  MR. VAN NEST, THAT'S EXACTLY MY
 2   CALCULATION.  I WAS -- MY CALCULATION IS THAT AT THE LATEST,
 3   YOU WOULD BE DOING CLOSING ARGUMENTS ON THE 15TH, TUESDAY, AND
 4   THEN THE JURY WOULD HAVE THE 16TH, 17TH, AND 18TH TO
 5   DELIBERATE.
 6        I HAD A PATENT TRIAL DELIBERATE FOR SIX DAYS EARLIER THIS
 7   YEAR AND THEY ULTIMATELY HUNG, SO THAT'S AN UNPLEASANT MEMORY.
 8        BUT I HAD NOT ANTICIPATED THAT IN THE JURY, SO OBVIOUSLY
 9   THEY HAD TO STAY.  BUT I DON'T WANT TO SEND THEM HOME FOR THE
10   HOLIDAYS AND COME BACK.
11            MR. PAK:  YOUR HONOR, WHEN I LOOK AT THE DECEMBER
12   DATES, I THINK IT WOULD BE DECEMBER 14TH WOULD BE --
13            THE COURT:  IS THE MONDAY.
14            MR. PAK:  WEDNESDAY.  THAT'S WEDNESDAY ON THE --
15            THE COURT:  I'M SORRY.  I MISSED -- OH, I DID
16   MISCALCULATE THAT.  THANK YOU.
17        SO THE 13TH IS THE -- THE 12TH AND 13TH ARE WHAT WE'RE
18   LOOKING AT, THE MONDAY OR TUESDAY.
19        THANK YOU, MR. PAK.
20        AND THAT WOULD GIVE YOU TWO FULL WEEKS TO PRESENT THE
21   CASE.  I AM CONCERNED WE MAY NEED AN ADDITIONAL DAY TO CLEAR UP
22   THE JURY INSTRUCTIONS, ALTHOUGH I USUALLY HAVE THEM READY
23   BEFORE THE FIRST JUROR COMES IN THE ROOM, BUT I'M NOT SURE IN
24   THIS CASE.
25        DOES THAT -- SO I AM INCLINED TO CLEAR THIS JURY THROUGH
```

1    THE 20TH.

2              MR. PAK:  I THINK THAT WOULD BE WISE, YOUR HONOR.

3              MR. VAN NEST:  I THINK WE'RE PROBABLY SAFE THROUGH

4    THE 16TH, YOUR HONOR, BUT IT'S REALLY UP TO YOU.  I HATE TO ASK

5    PEOPLE -- I'M WORRIED ABOUT LOSING TOO MANY PEOPLE --

6              THE COURT:  I AM, TOO.

7              MR. VAN NEST:  -- IF WE DO THAT, PARTICULARLY IN A

8    CASE WHERE WE NEED -- WE'D PREFER TO HAVE, YOU KNOW, WELL

9    EDUCATED PEOPLE GIVEN THE COMPLEXITY.

10       SO MY PREFERENCE WOULD BE TO CLEAR THEM THROUGH THE 16TH

11   AND WORK HARD TO FINISH BY MONDAY OR TUESDAY, DO OUR CLOSINGS

12   TUESDAY AND GIVE THEM THREE FULL DAYS TO DELIBERATE.

13             THE COURT:  AND THEN I WOULD GIVE THEM A BREAK AND

14   THEY'D COME BACK IN JANUARY IF THEY WEREN'T DONE?

15             MR. VAN NEST:  SOMETHING LIKE THAT, SURE.  RATHER

16   THAN KEEP THEM HERE THE WEEK OF CHRISTMAS.

17             THE COURT:  SO WHAT I'VE ALSO DONE WITH JURORS, I

18   HAVE SAID TO THEM, I NEED YOU TO BE AVAILABLE THROUGH THE 16TH,

19   AND LET ME KNOW IF YOU WOULD BE AVAILABLE ON THE 19TH AND 20TH.

20   I WON'T EXCUSE YOU FOR THOSE -- FOR THAT PURPOSE.

21       I'LL HAVE TO THINK ABOUT THAT.

22       I -- IN MY NOTES, I HAD ALLOWED 20 TO 22 HOURS PER SIDE.

23   I HADN'T ACTUALLY NARROWED IT TO THE 22, OR EXPANDED IT TO THE

24   22.  I'LL HAVE TO THINK THAT OUT.

25             I WILL BE GIVING YOU TIME LIMITATIONS ON YOUR OPENINGS AND

1    CLOSINGS.  SO TYPICALLY FOR A TWO WEEK TRIAL, I WOULD

2    ANTICIPATE 45 MINUTES FOR YOUR OPENING AND AN HOUR AND A HALF

3    FOR YOUR CLOSING.

4        WHAT'S YOUR VIEW ON THOSE TIME LIMITS?

5        MR. VAN NEST:  I THINK THAT'S PLENTY FOR OPENING.  IT

6    MAY BE TOO MUCH FOR CLOSING.  I THINK --

7        THE COURT:  IF WE ASK THE JURY, I'M SURE THEY'D SAY

8    IT WAS TOO MUCH.

9        (LAUGHTER.)

10        MR. VAN NEST:  SURE THEY WOULD.

11        I WOULD THINK 45 MINUTES FOR OPENING WHEN THEY'RE NEW AND

12    FRESH.  I WOULD THINK WE COULD DO THE CLOSINGS IN AN HOUR.

13        THE COURT:  I'M GOING TO GIVE YOU AN HOUR AND A HALF

14    BECAUSE YOU DO HAVE THE PATENT CASE HERE, BUT IT WILL BE 45

15    MINUTES EACH SIDE FOR OPENING.

16        AND, MR. PAK, EVEN THOUGH YOU HAVE AN OPPORTUNITY FOR

17    REBUTTAL, IT'S AN HOUR AND A HALF TOTAL.

18        MR. VAN NEST:  WE UNDERSTAND, YOUR HONOR.

19        THE COURT:  AND I THINK THAT'S PRETTY COMMON.

20        ALL RIGHT.  I WILL BE LIMITING THE AMOUNT OF TIME THAT YOU

21    WILL HAVE FOR THE BENCH ISSUES THAT REMAIN BASED UPON THE

22    VERDICT FROM THE JURY.  I DO NOT ALLOW YOU TO TAKE A STACK OF

23    DOCUMENTS AND DEPOSITIONS AND JUST MOVE THEM FROM YOUR TABLE TO

24    MINE.  YOU MUST PRESENT YOUR EVIDENCE TO ME IN EXACTLY THE SAME

25    FORM YOU PRESENT IT TO THE JURY, AND THAT MEANS ORALLY AND HERE

```
1      PRESENT IN THE COURTROOM, AND I WILL BY LIMITING THE AMOUNT OF

2      TIME THAT YOU HAVE.

3           IN ADDITION, PLEASE BE ADVISED THAT ANY DOCUMENT YOU WISH

4      TO PRESENT TO THE JURY, THROUGH ADMISSIBLE EVIDENCE, MUST BE

5      ADMITTED THROUGH A WITNESS AND I WILL NOT TAKE STACKS OF

6      DOCUMENTS STIPULATED BY THE PARTIES.  I THINK THAT THAT IS A

7      SANDBAG TO THE JURY AND IT OPENS UP ISSUES ON JMOL THAT ARE

8      UNREASONABLE BECAUSE NO JURY COULD BE EXPECTED TO DIG THROUGH A

9      MOUNTAIN OF DOCUMENTS THAT THEY NEVER SAW.

10          SO JUST BE ADVISED OF THAT.

11              MR. SILBERT:  YOUR HONOR, MAY I ASK ONE QUESTION?

12              THE COURT:  YES, MR. SILBERT.

13              MR. SILBERT:  IN THE CASE OF AN EXPERT, WHERE AN

14     EXPERT IS FAMILIAR WITH A DOCUMENT, CAN TESTIFY ABOUT THE

15     DOCUMENT, HAS ANALYZED THE DOCUMENT, THERE'S NO DISPUTE ABOUT

16     THE AUTHENTICITY OF THE DOCUMENT, CAN THAT DOCUMENT COME INTO

17     EVIDENCE THROUGH THAT EXPERT, OR WOULD IT NEED TO BE A

18     PERCIPIENT WITNESS?

19              THE COURT:  OH, THE DOCUMENT CAN CERTAINLY -- IF THE

20     EXPERT IS -- I DON'T -- LET ME BACK UP.  SORRY.

21          YES, IT CAN.  BUT I DON'T NEED YOU TO SPEND THE TIME GOING

22     THROUGH THE DANCE OF LAYING A FOUNDATION TO AUTHENTICATE A

23     DOCUMENT.  THAT'S NOT MY CONCERN.

24          IT'S THAT I JUST DON'T WANT THE SECRET STASH OF DOCUMENTS

25     THAT'S TECHNICALLY ADMITTED INTO EVIDENCE, BUT NO ONE HAS EVER
```

 1          SEEN, TO BE PART OF THE RECORD.  AND THAT'S WHAT I DON'T ALLOW.

 2              BUT I URGE YOU TO DISPENSE WITH THE TIME IT TAKES TO LAY A

 3      FOUNDATION FOR A DOCUMENT THAT NO ONE DISAGREES WITH.  AND SO I

 4      JUST TURN TO THE OTHER SIDE AND ASK IF -- ONCE A DOCUMENT IS

 5      MOVED INTO EVIDENCE, I ASK IF THERE'S AN OBJECTION.  IF YOU'VE

 6      ALREADY AGREED, THEN I DON'T NEED THE FOUNDATION LAID.

 7              MR. SILBERT:  THANK YOU, YOUR HONOR.

 8              THE COURT:  SO FOR THE -- I DON'T KNOW WHAT ISSUES

 9       WILL REMAIN.  CLEARLY THEY'VE BEEN LAID OUT.  I DON'T KNOW

10       WHICH ONES WILL BE RELEVANT.

11              BUT TYPICALLY ON THE BENCH ISSUES, I ALLOT ONE DAY, AND

12      THAT WOULD GIVE EACH SIDE ABOUT THREE HOURS TO PRESENT.

13              YOU CAN THINK ABOUT THAT AND LET ME KNOW HOW THAT SOUNDS

14      TO YOU.

15              BUT OF COURSE YOU HAVE A LOT OF WORK TO DO AND WE HAVE TO

16      SET THE TIME FOR THAT.  I DON'T LIKE MUCH -- I LIKE TO GET A

17      JUDGMENT ENTERED AS QUICKLY AS POSSIBLE, SO WE'RE NOT GOING TO

18      GO ON FOR MONTHS.

19              THE BAD NEWS FOR YOU IS YOU NEED FINDINGS OF FACT AND

20      CONCLUSIONS OF LAW, AND IT'S A PRETTY ONEROUS TASK WHEN YOUR

21      LARGE TEAMS ARE ALL HERE WORKING ON THE JURY PART OF THE TRIAL.

22              BUT JUST TO LET YOU KNOW, I'M STARTING A TRIAL ON

23      JANUARY 4TH AND I'M NOT GOING TO BE ABLE TO HAVE THIS BENCH

24      PORTION UNTIL THAT CASE IS OVER.  SO WE'RE ULTIMATELY LOOKING

25      AT SETTING THAT PROBABLY IN LATE JANUARY.  THERE'S JUST NOTHING

1    I CAN DO BECAUSE I DON'T THINK YOU WANT TO BE HERE OVER

2    CHRISTMAS DOING THAT.  SO I WILL HAVE TO SET A DATE IN LATE

3    JANUARY FOR YOU.

4        GOING BACK TO THE JURY ISSUES, THE ACTUAL SELECTION OF THE

5    JURY, I'M GOING TO HAVE A PANEL SIZE PROBABLY OF 75 TO 80

6    JURORS BECAUSE I'M CONCERNED ABOUT ADDITIONAL HARDSHIP

7    REQUESTS.

8        WHEN WE RETURN ON THE MONDAY MORNING WHEN WE BEGIN TRIAL,

9    I WILL GIVE EACH SIDE 30 MINUTES TO QUESTION THE JURORS, AND

10   THAT IS THE ENTIRE PANEL THAT REMAINS.  OBVIOUSLY YOU'LL FOCUS

11   ON THE FIRST 14.  THEY ARE THE MOST LIKELY TO BE OF CONCERN TO

12   YOU THROUGH YOUR PEREMPTORIES.

13       THEN WHEN -- AND I RARELY HAVE ANY QUESTIONS BECAUSE THE

14   QUESTIONNAIRE HAS DEALT WITH THOSE ISSUES THAT I WOULD ASK

15   THEM.  SO WE GET -- SO I EXPECT THIS JURY WILL BE SWORN BY

16   10:30 TO 11:00 O'CLOCK MONDAY MORNING.  YOU WILL BEGIN OPENING

17   STATEMENTS AND PLAINTIFF NEEDS TO HAVE WITNESSES READY.

18       MR. PAK, I KNOW THIS WON'T BE A PROBLEM, I JUST LIKE TO

19   MAKE A RECORD ON THIS.  YOUR -- THE CLOCK RUNS FROM 9:00 UNTIL

20   5:00, EXCEPT FOR BREAKS, AND SHOULD YOU HAVE A GAP IN

21   WITNESSES, THE CLOCK JUST RUNS.  I KNOW THAT WON'T BE A PROBLEM

22   AND I KNOW YOU KNOW HOW TO HANDLE IT.  I JUST WANT TO KEEP THAT

23   CLEAR ON THE RECORD.

24       I AM PREPARED TO MEET WITH COUNSEL AT 8:30 EVERY MORNING

25   TO DISCUSS OBJECTIONS THAT MAY COME UP.  YOU MUST FILE WITH THE

1    COURT, BY 5:00 O'CLOCK THE DAY BEFORE, A BRIEF OF -- A SINGLE

2    BRIEF FOR ALL THE OBJECTIONS OF THE NEXT DAY OF NO MORE THAN

3    THREE PAGES AND ATTACH THE EXHIBITS THAT I NEED TO LOOK AT.

4        WE WILL BE COMMUNICATING BY E-MAIL, ALTHOUGH YOU STILL

5    RETAIN THE OBLIGATION OF FILING MATTERS ON THE COURT DOCKET.

6    BUT THAT WAY I CAN SEE THINGS QUICKLY.

7        TYPICALLY THE -- MY EXPERIENCE IN PATENT CASES, AND I HOPE

8    IT'S NOT TRUE WITH YOU, IS THAT THE OBJECTIONS ARE EXTENSIVE,

9    AND WHEN THEY ARE, I TYPICALLY WILL SEND YOU AN E-MAIL GIVING

10   YOU AN ESTIMATE OF HOW MUCH TIME I EXPECT TO NEED ON THE

11   RECORD.  ONLY 8:30 TO 9:00 IS ON MY TIME.  THE REMAINDER IS ON

12   YOURS.  AND IF I GIVE YOU AN ESTIMATE OF TWO OR THREE HOURS,

13   PLEASE UNDERSTAND THE CLOCK WILL BE RUNNING, SO THAT WILL GIVE

14   YOU THE OPPORTUNITY TO REDUCE THE NUMBER OF DISPUTES BY THE

15   NEXT MORNING.

16       BUT ANYTHING THAT RUNS OVER THE 9:00 O'CLOCK TIME IS YOUR

17   TIME, AND I WILL JUST APPORTION IT EQUALLY BETWEEN THE TWO

18   SIDES, SO JUST BE AWARE OF THAT.

19           MR. PAK:  JUST TO BE CLEAR, YOUR HONOR, SO IN TERMS

20   OF THE DATES, WE WOULD START OPENING STATEMENTS ON THE 28TH?

21           THE COURT:  THAT'S CORRECT.

22           MR. PAK:  SO WE STILL HAVE THE 21ST AND 22ND

23   AVAILABLE FOR ATTORNEYS POTENTIALLY TO WORK WITH YOU ON JURY

24   INSTRUCTIONS?  IS THAT STILL --

25           THE COURT:  YES.

1          MR. PAK:  OKAY.

2          THE COURT:  YES.  THERE WAS AN ISSUE IN THE PRETRIAL

3     STATEMENT ABOUT MARKING EXHIBITS.  I WAS UNCLEAR ON WHY THE

4     REQUEST FOR PUTTING THEM ON THE FRONT OF THE DOCUMENT AS

5     OPPOSED TO ON THE BACK OF THE DOCUMENT.  I -- THAT'S IN THE

6     PRETRIAL STATEMENT.

7          YOU'RE ALL LOOKING AT ME BECAUSE YOU DON'T CARE WHERE THEY

8     ARE, I'M SURE.

9          MR. FERRALL:  MY UNDERSTANDING, YOUR HONOR, IS THAT

10    IT'S A MUTUAL ISSUE BETWEEN THE PARTIES ABOUT THE WAY THE

11    DOCUMENTS ARE PROCESSED, AND BECAUSE IT'S ALL PROCESSED

12    ELECTRONICALLY, TRYING TO PUT IT ON THE BACK OF THE DOCUMENT IS

13    CHALLENGING ELECTRONICALLY.

14         THE COURT:  SO WHEN YOU PUT IT ON THE FRONT, IT'S A

15    WHOLE NEW SHEET OF PAPER.

16         MR. FERRALL:  NO.

17         THE COURT:  BECAUSE THEN IT'S GOING TO COVER TEXT.

18         MR. FERRALL:  NO.  I'M SURE IT'S AFFIXED IN AN AREA

19    THAT DOESN'T COVER TEXT.

20         THE COURT:  THEN THEY'RE TO GO ON THE BACK.  I'M

21    SORRY.  THEY'RE TO GO ON THE BACK.  YOU ASKED THAT THEY BE

22    BLACK AND WHITE.  I DON'T THINK THAT'S REALLY AN ISSUE, IS IT?

23    WE HAD HAD THEM DONE AS COLOR.

24         IS THAT A PROBLEM FOR THE EXHIBITS TO BE IN -- OKAY.  SO

25    THE BLACK AND WHITE IS FINE.

```
 1            BUT FRANKLY, I CAN'T STAND TO READ AN EXHIBIT THAT I HAVE
 2     TO LIFT THE EVIDENCE TAG.
 3            MR. FERRALL:  SURE.
 4            THE COURT:  SO THEY NEED TO BE ON THE BACK.
 5        THE EXHIBITS ARE TO BE SEQUENTIALLY NUMBERED.  THERE ARE
 6     TO BE NO DUPLICATE NUMBERS.  SO THERE IS NO PLAINTIFF'S
 7     EXHIBIT 1 AND DEFENDANT'S EXHIBIT 1.
 8        MR. PAK, DECIDE HOW MUCH, IN YOUR WILDEST DREAMS, YOU NEED
 9     TO MARK.
10            MR. PAK:  WE'VE ALREADY WORKED IT OUT, YOUR HONOR.
11            THE COURT:  EXCELLENT.  THAT'S GREAT.
12            MR. PAK:  SO WE'VE TAKEN CARE OF THAT.
13            THE COURT:  I WILL REQUIRE THAT EACH SIDE ADVISE THE
14     OTHER SIDE THE NIGHT BEFORE BY 6:00 P.M. OF THE WITNESSES THAT
15     YOU WILL BE CALLING THE NEXT DAY.
16        LET ME JUST -- WE'VE GONE OVER THE SCHEDULE FOR
17     OBJECTIONS.
18        MY TRIAL TIME TYPICALLY IS 9:00 TO 12:00 AND 1:00 TO 5:00
19     WITH REQUIRED BREAKS.  I AM -- GENERALLY WE'RE DARK ON
20     THURSDAYS.  THE WEEK THE JURY DELIBERATES, THEY WILL BE
21     DELIBERATING ON THAT THURSDAY, AND IF WE GET BEHIND IN TIME, I
22     MIGHT NEED TO HAVE THE JURY HERE ON A THURSDAY AFTERNOON, WHICH
23     MEANS YOU HAVE TO BE READY.
24        I DON'T TELL THEM WE'RE DARK ON THURSDAYS BECAUSE I WANT
25     TO KEEP THEM AVAILABLE.  IT'S JUST MY -- YOU KNOW, IT'S
```

 1    DIFFICULT, BUT IT'S MY WAY OF GETTING ANOTHER COUPLE OF HOURS

 2    IN IF WE NEED IT.

 3         ON TUESDAYS I HAVE MY CRIMINAL CALENDAR, AND SO WE BEGIN

 4    AT 10:00, AND I'LL DO MY BEST TO BE AVAILABLE AT 9:30 FOR YOU

 5    TO DO OBJECTIONS ON TUESDAYS.

 6         I STILL HAVE TWO MORE PAGES OF ISSUES I WANT TO GO OVER,

 7    BUT THEY TEND TO BE MORE MEATY AND SUBSTANTIVE AS OPPOSED TO

 8    THE LOGISTICS OF TRYING THE CASE.

 9         I THINK WE'VE ALREADY MADE IT CLEAR THAT THE MARKED

10    EXHIBITS WILL BE ELECTRONIC ONLY.  YOU'RE NOT GOING TO BRING ME

11    A ROOM FULL OF MARKED EXHIBITS.

12         YOU DO EXHIBIT BINDERS FOR EACH WITNESS, AND AT THE END,

13    WE CULL THROUGH AND THE JURY GETS A HARD COPY OF THE ADMITTED

14    EXHIBITS.

15         I DO REQUIRE THAT YOU PREPARE A LIST OF ADMITTED EXHIBITS

16    THAT WILL ULTIMATELY GO TO THE JURY, AND PLEASE DO THAT ON A

17    DAILY BASIS AND CHECK WITH MS. SALINAS-HARWELL ABOUT WHAT'S

18    BEEN ADMITTED, BUT WE -- I NEED YOU TO PREPARE THAT LIST, AND

19    THAT SHOULD MAKE THINGS RUN SMOOTHLY, AND THE JURY WILL HAVE

20    ELECTRONIC ACCESS TO THE DOCUMENTS IN THE JURY ROOM, AS WELL AS

21    PAPER COPIES OF THEM.

22         I DO ALLOW A NOTEBOOK TO BE GIVEN TO JURORS, AND THERE ARE

23    JUST A FEW BASIC RULES.  FIRST OF ALL, YOU MAY NOT PUT

24    DOCUMENTS IN THE BINDER AT CLOSING ARGUMENT.  YOU MAY DO IT

25    THROUGHOUT THE TRIAL.  IF THERE ARE KEY DOCUMENTS THAT ARE

1    ADMITTED INTO EVIDENCE THAT YOU WANT THEM TO HAVE A COPY OF,

2    I'M GLAD FOR YOU TO GIVE THAT TO THEM.  THAT'LL PUT THE OTHER

3    SIDE ON NOTICE SO THAT THEY CAN MANAGE THAT.

4         I WANT THE PATENT IN THAT BINDER, AND I WANT THE ASSERTED

5    CLAIMS TO BE HIGHLIGHTED IN YELLOW SO THAT THEY SEE WHAT THAT

6    IS.

7         AND ALTHOUGH I'M NOT TALKING ABOUT JURY INSTRUCTIONS

8    TODAY, I DID NOTE THAT THE CLAIMS CONSTRUCTION DOESN'T -- IT'S

9    NOT PART OF THE GLOSSARY, SO MAYBE YOU PUT IT IN AN INSTRUCTION

10   IN THAT -- BUT I DIDN'T SEE IT.  I DIDN'T LOOK THAT CAREFULLY

11   YET.  BUT THE JURY DOES NEED THE CONSTRUCTIONS.

12        AND WE'LL GET TO THE PATENT PART.  I HAVE GRAVE CONCERNS

13   ABOUT WHERE WE'RE HEADED ON THAT, BUT WE'LL TALK ABOUT THAT

14   SHORTLY.

15        ARE THERE ANY QUESTIONS ABOUT THESE LOGISTICS?  EVERY

16   JUDGE IS JUST A LITTLE DIFFERENT, SO I KNOW IT CAN BE A LITTLE

17   CONFUSING.

18        MR. VAN NEST?

19         MR. VAN NEST:  I HAVE JUST A FEW, YOUR HONOR.

20        THE FIRST ONE HAS TO DO WITH NOTICE TO WITNESSES -- OF

21   WITNESSES.  TYPICALLY WHAT WE'VE DONE -- AND I'M NOT SURE

22   WHETHER WE'VE REACHED AGREEMENT YET HERE -- BUT 6:00 O'CLOCK

23   THE NIGHT BEFORE THE TESTIMONY IS AWFULLY CLOSE.  TYPICALLY WE

24   DO IT 6:00 O'CLOCK THE DAY BEFORE THAT.

25         THE COURT:  OH, OKAY.

```
 1              MR. VAN NEST:  AND I KNOW MR. PAK AND I HAVE TRIED A

 2      LOT OF CASES.  THAT'S -- USUALLY IT'S, YOU KNOW, 48 HOURS.

 3              THE COURT:  OKAY.  WELL, THAT'S GREAT.

 4              MR. NELSON:  THAT'S FINE.

 5              MR. PAK:  THAT'S FINE.

 6              THE COURT:  OKAY.  LET'S MAKE IT 6:00 O'CLOCK -- SO

 7      THAT'S, WHAT, 36 HOURS IN ADVANCE?

 8              MR. VAN NEST:  RIGHT.

 9          NOW, THERE ARE SOME WITNESSES THAT I THINK BOTH SIDES

10      DESERVE A LITTLE MORE NOTICE OF, AND THAT'S OUR SENIOR TOP

11      PEOPLE.  WE'VE AGREED, FOR EXAMPLE, ON A SPECIFIC DAY THAT WE

12      WOULD CALL MR. CHAMBERS IF WE CALL HIM.

13              THE COURT:  OKAY.

14              MR. VAN NEST:  AND I'D LIKE THE SAME TYPE OF NOTICE

15      FOR MS. ULLAL, WHO'S OUR CHIEF EXECUTIVE OFFICER, MR. DUDA, OUR

16      CHIEF TECHNOLOGY OFFICER, MR. BECHTOLSHEIM, OUR FOUNDER AND

17      CHAIRMAN OF THE BOARD, AND MR. SADANA, OUR CHIEF MARKETING

18      OFFICER.  THEY'RE ALL PEOPLE THAT THEY'VE DESIGNATED FOR THEIR

19      CASE.

20          AND WHAT I'D ASK IS THAT A WEEK BEFORE THEY EXPECT TO CALL

21      THEM IN THEIR CASE, THEY LET US KNOW.  THESE PEOPLE ARE ALL

22      SUPER BUSY, AND WE UNDERSTAND AND WE'VE ACCEPTED SUBPOENAS FOR

23      THEM AND WE'LL MAKE THEM AVAILABLE DURING THEIR CASE, BUT WE

24      NEED TO HAVE MORE THAN A DAY AND A HALF NOTICE FOR PEOPLE LIKE

25      THAT.
```

1              MR. PAK:  WE'RE ALREADY IN TALKS WITH YOUR PARTNERS

2      ON THAT, SO WE'LL DEFINITELY WORK THAT OUT.

3              THE COURT:  GOOD.  THEN I WILL TRUST THAT YOU'LL WORK

4      THAT OUT.  THAT SOUNDS REASONABLE.

5              MR. VAN NEST:  THANK YOU.

6          THE OTHER QUESTION IS -- AND I THINK THE PARTIES ARE IN

7      AGREEMENT ON THIS BASED ON THE PRETRIAL -- TO THE EXTENT WE'RE

8      CALLING EACH OTHER'S EMPLOYEES OR OFFICERS, IT'S ONE APPEARANCE

9      ONLY.  IN OTHER WORDS --

10             THE COURT:  YEAH.

11             MR. VAN NEST:  IF MS. ULLAL IS CALLED IN THEIR CASE,

12     MY EXAMINATION OF HER WOULD NOT BE LIMITED TO THE SCOPE OF

13     DIRECT.  WE GET HER DONE ALL AT ONE TIME.

14         AND I THINK THAT SHOULD APPLY TO ANY WITNESS THAT EITHER

15     SIDE CALLS.  WE'RE CERTAINLY EXPECTING THAT AND THAT'S WHAT

16     WE'RE ASKING FOR YOUR CONFIRMATION OF IN THE PRETRIAL.

17             THE COURT:  ANY OBJECTION TO THAT, MR. PAK?

18             MR. PAK:  YOUR HONOR, WE WOULD -- WE DO HAVE A SLIGHT

19     PREFERENCE FOR -- OBVIOUSLY THE VERY IMPORTANT WITNESSES IN

20     TERMS OF EXECUTIVES, FOR EXAMPLE, MS. ULLAL IS A CEO,

21     MR. CHAMBERS IS THE CEO OF OUR COMPANY, CERTAINLY WE DON'T NEED

22     THEM TESTIFYING TWICE.

23         WE DO HAVE A COMPLICATED CASE THAT WE'RE TRYING TO SQUEEZE

24     IN, AND WE HAVE, AS YOU KNOW, YOUR HONOR, THE COPYRIGHT CASE,

25     BUT WE ALSO HAVE A PATENT CASE.

1        WE ARE CONCERNED THAT FOR SOME OF THESE WITNESSES WHICH WE

2   WILL BE CALLING AS ADVERSE WITNESSES IN OUR CASE TO ESTABLISH

3   THE, FROM OUR PERSPECTIVE, THE PATTERN OF COPYING ON EITHER

4   SIDE, THAT'S CONFIDENTIAL INFORMATION THAT WE NEED TO GET ON

5   THE RECORD, AND WE ARE CONCERNED THAT TO THE EXTENT THERE IS

6   SORT OF BEYOND THE SCOPE EXAMINATION THAT HAPPENS IN THE MIDDLE

7   OF OUR CASE AND PRESENTATION, THAT THAT COULD REALLY TAKE THE

8   FOCUS AWAY FROM THE PRESENTATION OF OUR EVIDENCE.

9        SO WHAT WE WOULD ASK IS THAT THERE MAY BE A CLASS OF

10  FOLKS, PARTICULARLY THE CEOS, WHO WILL ONLY BE CALLED ONCE.

11       BUT WITH RESPECT TO THE ADVERSE WITNESSES THAT WE WOULD BE

12  CALLING IN OUR CASE -- AND THERE WILL BE JUST, I THINK, TWO OR

13  THREE WITNESSES THAT WE'LL BE CALLING AS ADVERSE WITNESSES --

14  THAT WE BE ALLOWED TO CONDUCT OUR EXAMINATION.

15       THE COURT:  I THINK MR. VAN NEST'S REQUEST IS

16  REASONABLE, BUT IT ALWAYS HAS TO BE TEMPERED BY THE FAIRNESS TO

17  EACH SIDE TO PUT ON YOUR CASE AND NOT HAVE IT DISSIPATED BY THE

18  OTHER TESTIMONY.

19       I WOULD LIKE YOU TO EXCHANGE LISTS OF WITNESSES YOU WOULD

20  LIKE THIS COURTESY EXTENDED TO TO APPEAR ONCE, AND THEN TO

21  BRING TO ME ONLY THE WITNESSES YOU CAN'T AGREE ON, AND THEN WE

22  CAN DISCUSS THAT ON THE 18TH AND THAT SHOULD BE ENOUGH TIME,

23  BECAUSE THAT'S STILL TEN DAYS BEFORE ANYONE COULD TESTIFY, TO

24  DETERMINE WHETHER THEY'D BE REQUIRED TO RETURN.

25       MR. VAN NEST:  THAT'S FINE, YOUR HONOR.

```
 1                    THE COURT:  OKAY.

 2                    MR. VAN NEST:  WE'LL DO THAT.

 3                    THE COURT:  LET'S DO THAT.

 4                    MR. VAN NEST:  ON THAT NOTE, ALSO IT'S MY ASSUMPTION,

 5          BASED ON WHAT THE NINTH CIRCUIT HAS SAID, THAT IF YOU'RE

 6          CALLING A WITNESS LIVE, YOU DON'T ALSO PLAY THEIR DEPOSITION.

 7          OBVIOUSLY FOR IMPEACHMENT, BUT WE'RE NOT GOING TO HAVE A

 8          WITNESS CALLED LIVE AND THEN SIT THROUGH 20 MINUTES OF VIDEO.

 9                    THE COURT:  SO YOU PUT THAT IN YOUR PAPERS.  I

10          ACTUALLY -- DOES THE SAME APPLY WHEN THE DEPOSITION IS BEING

11          USED AS A PARTY DEPOSITION?  BECAUSE IT'S MY UNDERSTANDING

12          THOSE DEPOSITIONS CAN BE USED FOR ANY PURPOSE.

13                    MR. VAN NEST:  THAT'S RIGHT.

14                    THE COURT:  SO --

15                    MR. VAN NEST:  BUT IF THE WITNESS IS LIVE, TYPICALLY

16          WHAT THE NINTH CIRCUIT HAS SAID IS IF THE WITNESS IS HERE LIVE,

17          THEN YOU GET IT ALL DONE.

18            OBVIOUSLY THE OTHER SIDE CAN USE THE DEPOSITION TO IMPEACH

19            AND PLAY PORTIONS OF THE VIDEO.

20            BUT WE'RE NOT GOING TO HAVE -- AND I'M NOT EVEN SURE THIS

21          IS AN ISSUE -- BUT I DON'T WANT A SITUATION WHERE WE'RE GOING

22          TO SIT THROUGH A LIVE ONE HOUR EXAM OF MR. BECHTOLSHEIM, FOR

23          EXAMPLE, AND THEN SIT THROUGH ANOTHER 25 MINUTES OF HIS VIDEO.

24          THAT'S ALL.

25                    MR. NELSON:  SO THE ONLY ISSUE ON THE 30(B)(6), I
```

1    THINK THAT IS WHAT YOUR HONOR WAS REFERRING TO, I DO BELIEVE

2    THAT CAN BE USED AT ANY TIME SEPARATE AND APART FROM THIS.

3        BUT EVEN AS TO OTHER WITNESSES, THAT MAY EXACERBATE THE

4    PROBLEM THAT WE JUST TALKING ABOUT WITH THE ADVERSE WITNESSES,

5    BECAUSE THERE MAY BE CERTAIN SMALL PIECES OF EVIDENCE THAT WE

6    NEED TO GET -- "WE" BEING THE PLAINTIFF -- NEED TO GET IN IN

7    THE CASE IN CHIEF, AND WITH THIS, THAT WOULD REQUIRE US TO CALL

8    ALL OF THOSE WITNESSES ADVERSE IN OUR CASE, WHICH IS SOMEWHAT

9    UNUSUAL, IN FACT, EXTREMELY UNUSUAL.

10       SO I THINK GENERALLY SPEAKING, YES, I AGREE WITH THAT.

11       BUT IN THIS INSTANCE WHERE THERE ARE THINGS THAT WE WOULD

12   NEED TO GET IN, LIMITED TESTIMONY BECAUSE IT'S OUR BURDEN OF

13   PROOF DURING OUR CASE, THAT WE SHOULD BE ABLE TO DO THAT BY

14   DEPOSITION.

15           THE COURT:  I'M NOT INCLINED TO LIMIT THE USE OF

16   DEPOSITIONS OF PARTIES IN THESE 30(B)(6) DEPOSITIONS, THAT THEY

17   SHOULD BE ABLE TO COME IN THROUGH THE DEPOSITION TESTIMONY.

18           MR. VAN NEST:  I GUESS TWO POINTS, YOUR HONOR.  I'M A

19   LITTLE BIT CONFUSED.

20       I'M CERTAIN -- IF THEIR PROBLEM IS THEY NEED TO GET SOME

21   EVIDENCE IN FROM A WITNESS THAT I MAY BE CALLING IN MY CASE

22   THAT THEY DON'T WANT TO CALL, I'M HAPPY TO LEAVE THEIR CASE

23   OPEN UNTIL THE LAST OF THOSE WITNESSES TESTIFIES.  I'M NOT

24   GOING TO INSIST THAT --

25           THE COURT:  WELL, I THINK THE PLAINTIFF HAS THE RIGHT

```
1    TO PUT ON THEIR CASE THE WAY THEY WANT TO, AND I'M NOT GOING

2    TO -- I THINK THAT IT IS IMPORTANT TO LET THE JURY KNOW WHICH

3    PARTY IS SPONSORING WHAT TESTIMONY TO UNDERSTAND HOW IT'S

4    COMING IN, AND I -- I'M NOT GOING TO LIMIT THE USE OF THE

5    DEPOSITIONS FOR THE PARTY ADMISSIONS.

6         THESE ARE -- THE DEPOSITION OF A PARTY CAN BE USED FOR ANY

7    PURPOSE, AND I'M -- I JUST DON'T THINK IT'S LIMITED.  I DON'T

8    THINK THE NINTH CIRCUIT HAS EXCLUDED THE DEPOSITION TESTIMONY

9    WHEN -- EXCEPT FOR IMPEACHMENT.

10        MR. VAN NEST:  WE'LL SUBMIT SOME AUTHORITY ON THAT,

11   YOUR HONOR.  BUT I UNDERSTAND WITH RESPECT TO 30(B)(6).

12        BUT NOW YOU'RE TALKING --

13        THE COURT:  THEN THE WITNESS IS GOING TO COME BACK

14   TWICE.  THEN I'M NOT GOING TO GIVE YOU THE LIMIT ON THEM ONLY

15   TESTIFYING ONCE.  YOU DON'T GET TO TRY YOUR CASE IN THE MIDDLE

16   OF THE PLAINTIFF'S CASE, MR. VAN NEST.  THAT'S WHAT I'M TRYING

17   TO DRAW THE LINE ON.  IT'S JUST THAT SIMPLE.

18        MR. VAN NEST:  SO JUST SO I UNDERSTAND, WHAT YOU'RE

19   SAYING IS EITHER PARTY CAN USE A DEPOSITION OF THE OTHER PARTY

20   AS THEY WISH TO?

21        THE COURT:  YES.

22        MR. VAN NEST:  EVEN IF THEY'VE CALLED THAT PERSON?

23        THE COURT:  YES.

24        MR. VAN NEST:  OKAY, FAIR ENOUGH.  AS LONG AS IT'S

25   BOTH.
```

```
 1                THE COURT:  THANK YOU.

 2                MR. VAN NEST:  OKAY.  THANK YOU.

 3                THE COURT:  THANK YOU.

 4           AND MR. PAK, MR. NELSON, DID YOU HAVE ANYTHING ELSE ON

 5      THESE LOGISTICS?

 6                MR. PAK:  NO, YOUR HONOR.

 7                THE COURT:  OKAY.  THEN LET ME PUT THIS ASIDE FOR NOW

 8      AND COME BACK TO IT.  WELL, I GUESS I MAY AS WELL JUST SAY IT.

 9      I'M A LITTLE -- I'M MORE THAN A LITTLE CONCERNED WITH THE

10      NUMBER OF DISPUTES THAT THE PARTIES ARE BRINGING TO THE COURT,

11      AND PRIMARILY IT'S NOT THE IN LIMINES, THEY'RE FINE.  I'LL JUST

12      DECIDE THOSE.

13           IT'S THE STATE OF THE JURY INSTRUCTIONS THAT HAS ME VERY

14      CONCERNED ABOUT THE INABILITY OF COUNSEL TO PRESENT A

15      REASONABLE STATEMENT OF THE LAW FOR THE JURY THAT CAN BE AGREED

16      UPON IN MORE PARTICULARS THAN WHAT YOU'VE PRESENTED TO ME.

17           AND I HAVE -- BUT, OF COURSE, YOU HAVE TIME TO CONTINUE

18      WORKING ON THAT AND WE'LL GET TO THAT IN A FEW MINUTES.

19           ALL RIGHT.  LET ME MOVE ON TO THE IN LIMINE MOTIONS.  IT'S

20      ACTUALLY MY HOPE AND EXPECTATION TO GET THROUGH THESE.

21           I HAVE BROUGHT THE EVIDENCE THAT YOU CITED.  IF YOU NEED

22      ME TO LOOK AT IT AGAIN, I'M MORE THAN GLAD TO, AND HOPEFULLY

23      THAT WON'T BE REQUIRED.

24           LET ME -- I ALWAYS START WITH THE PLAINTIFF'S MOTIONS.  I

25      HAVE MY STACK.  IT'S MY INTENTION TO JUST WALK THROUGH THEM
```

```
 1    WITH YOU AND TO GIVE YOU A SENSE OF WHAT MY RULING, MY INTENDED

 2    RULING IS, AND THEN YOU -- THAT SHOULD FOCUS YOUR ARGUMENT.

 3         AND SO LET'S JUST START WITH CISCO'S IN LIMINE MOTION

 4    NUMBER 1, TO EXCLUDE ARGUMENT AND EVIDENCE IN SUPPORT OF

 5    EQUITABLE DEFENSES.

 6         MY COMMENT ON THIS IS THAT THE STATEMENT OF THE LAW IS

 7    CERTAINLY CORRECT, THAT THE JURY SHOULD NOT RECEIVE EVIDENCE

 8    THAT IS SOLELY RELATED TO EQUITABLE DEFENSES AND SHOULD

 9    CERTAINLY NOT HEAR ARGUMENT ON THE EQUITABLE DEFENSES THAT --

10    FOR WHICH IT HAS NO RESPONSIBILITY OF RENDERING A VERDICT.

11         OBVIOUSLY ISSUES SUCH AS WILLFULNESS ON THE PATENT IS

12    JOINTLY SHARED BETWEEN THE JURY AND THE COURT.

13         IT'S MY INCLINATION TO DEFER RULING ON THIS MOTION BECAUSE

14    MUCH OF THE EVIDENCE THAT IS IMAGINED BY CISCO AS RELATING TO

15    EQUITABLE DEFENSES HAS OTHER RELEVANCE IN THE CASE, AND IT

16    WOULD -- I THINK IT'S GOING TO BE NECESSARY, WITH THIS

17    ADMONITION, TO DEFER ANY RULING ON IT.

18         IS THERE ANY FURTHER ARGUMENT ON NUMBER 1?

19         MR. NELSON:  NO.  I THINK THAT'S FINE, YOUR HONOR.

20         THE WAY I UNDERSTAND IT, YOU WOULD NEED THE CONTEXT FOR

21    THE PARTICULAR THING.

22         THERE ARE A COUPLE OF ARGUMENTS THAT MAY COME UP IN

23    OPENING STATEMENT GIVEN WHAT WE'VE SEEN, BUT IT SEEMS LIKE

24    MAYBE WHEN WE'RE A LITTLE BIT CLOSER AND THE PARTIES HAVE HAD A

25    CHANCE TO PERHAPS DISCUSS THOSE, THAT THAT'S PROBABLY A BETTER
```

1    TIME.

2            THE COURT:  I APPRECIATE THAT.  AND THAT'S A GOOD USE

3    OF OUR TIME IN THE MORNING SO THAT WE CAN SHIELD THE JURY FROM

4    HEARING ANY OF IT.  YOU'LL KNOW IN ADVANCE.

5            MR. NELSON:  OKAY.  THANK YOU VERY MUCH.

6            THE COURT:  GOOD, OKAY.

7        IN LIMINE MOTION NUMBER 2 IS TO EXCLUDE EVIDENCE RELATED

8    TO, QUOTE, "INDUSTRY STANDARD," CLOSED QUOTE.

9        THIS WAS WRITTEN BEFORE, I THINK, I ISSUED THE ORDER ON

10   THE DAUBERT MOTIONS, SO I HAVE EXCLUDED THE MONIKER OF INDUSTRY

11   STANDARD FROM --

12       IS IT DR. BLACK, MR. VAN NEST?

13           MR. VAN NEST:  YES, YOUR HONOR.

14           THE COURT:  -- FROM DR. BLACK AND MR. --

15           MR. VAN NEST:  MR. SEIFERT.

16           THE COURT:  MR. SEIFERT.

17       BUT I AM ALLOWING THE UNDERLYING EVIDENCE TO COME IN.

18       AND SO IT WAS MY INTENTION TO GRANT THIS MOTION PURSUANT

19   TO MY RULING IN THE DAUBERT ORDER, BUT, AGAIN, TO ALLOW THE

20   UNDERLYING EVIDENCE.

21       AND I WOULD ALLOW, AS ADMISSIBLE, ANY STATEMENTS THAT ARE

22   ATTRIBUTED TO CISCO.  SO TO THE EXTENT THERE'S EVIDENCE THAT

23   CISCO USED THE NAME "INDUSTRY STANDARD," I'M NOT EXCLUDING

24   THAT.

25       IT WAS EXCLUDING THE EXPERT OPINION THAT IT ROSE TO THE

1     LEVEL OF AN INDUSTRY STANDARD.

2          IS THERE ANY FURTHER ARGUMENT?

3               MR. NELSON:  JUST BRIEFLY, YOUR HONOR.

4               THE COURT:  YES.

5               MR. NELSON:  DAVID NELSON ON BEHALF OF CISCO.

6          SO WITH RESPECT TO THIS ONE, AND PERHAPS THIS IS SOMETHING

7     THAT COMES OUT IN THE JURY INSTRUCTIONS, BECAUSE OUR CONCERN

8     HERE IS ONE OF JURY CONFUSION, AND WE TALKED ABOUT THIS WITH

9     THE DAUBERT.

10              THE COURT:  YES.

11              MR. NELSON:  SO I WON'T REHASH THAT.

12         BUT THE -- PART OF THE ARGUMENT THAT I UNDERSTOOD -- OR I

13    UNDERSTAND TO BE MADE BY THE PLAINTIFF -- OR EXCUSE ME, I'M THE

14    PLAINTIFF -- BY THE DEFENDANT IS THAT, WELL, BECAUSE IT'S AN

15    INDUSTRY STANDARD, THEN IT'S FREE TO USE, AND WE DISCUSSED THAT

16    A BIT.

17         I HAVE A BIG PROBLEM WITH THAT.

18              THE COURT:  THEY CAN'T CALL IT AN INDUSTRY STANDARD.

19     I'VE EXCLUDED THAT.

20              MR. NELSON:  RIGHT.  AND THERE ARE -- AND THERE'S

21     DOCUMENTS TO THE SAME EFFECT.

22         SO WHAT WE WANT TO PRECLUDE IS THAT ARGUMENT, RIGHT?  YOU

23    CAN MAKE THE UNDERLYING ARGUMENT UNDER FAIR USE, WELL, OTHER

24    PEOPLE ARE USING THIS, THOSE KINDS OF THINGS.

25              BUT THE LAW -- AND WE KNOW IN THE GOOGLE VERSUS ORACLE

1    CASE IT WAS REJECTED IN TERMS OF COPYRIGHTABILITY, INDUSTRY

2    STANDARD, NO --

3            THE COURT:  SURE.

4            MR. NELSON:  -- NOT RELEVANT.

5        THERE HASN'T BEEN A SINGLE CASE CITED BY THE DEFENDANTS

6    WHERE, IN TERMS OF FAIR USE, THAT THAT IS A RELEVANT FACTOR,

7    THAT IT'S AN INDUSTRY STANDARD.

8        IN FACT, JUDGE CHESNEY, I BELIEVE, IN THE SYNOPSIS CASE

9    THAT WAS JUST THIS LAST YEAR, THIS LAST SUMMER, HAD EXACTLY

10    THIS ISSUE IN FRONT OF HER AND ACTUALLY ISSUED A JURY

11    INSTRUCTION THAT SAID, EVEN IF SOMETHING BECOMES AN INDUSTRY

12    STANDARD, THE COPYRIGHT HOLDER DOESN'T LOSE THEIR RIGHT TO

13    ENFORCE THE COPYRIGHT.

14        SO THIS IS TRULY -- THAT'S OUR CONCERN HERE.  AS I SAID AT

15    THE -- I'M NOT TRYING TO BLOCK THE UNDERLYING EVIDENCE.  I

16    THINK THAT WOULD BE A STEP TOO FAR.

17            THE COURT:  WELL, I THINK YOU'RE RIGHT, AND IT WOULD

18     BE -- THIS RULING WOULD INCLUDE ARGUING TO THE JURY THAT THIS

19     IS AN INDUSTRY STANDARD.

20        BUT IT WOULD NOT BAR ARGUING TO THE JURY THAT CISCO CALLED

21    IT AN INDUSTRY STANDARD.

22            MR. NELSON:  RIGHT.

23            THE COURT:  I'M DRAWING THAT DISTINCTION.

24            MR. NELSON:  AGREED.  I AGREE WITH THAT.  THAT'S A

25     FACTUAL THING.

```
 1              AND THEN IN TERMS OF THE LIMITING INSTRUCTION, OR PERHAPS

 2     IN THE JURY INSTRUCTION, THAT IS SOMETHING THAT WE CAN DEAL

 3     WITH BECAUSE THE -- THE ARGUMENT HAS BEEN THAT BECAUSE IT'S AN

 4     INDUSTRY STANDARD, THAT MEANS IT'S FAIR USE, WHICH IS

 5     OBVIOUSLY --

 6              THE COURT:  I'M NOT INCLINED TO -- THAT WOULD BE

 7     SOMETHING ONLY AFTER I'VE HEARD THE EVIDENCE.

 8              MR. NELSON:  I UNDERSTAND, YOUR HONOR.

 9              THE COURT:  BECAUSE I BELIEVE THAT THIS RULING WOULD

10     PREVENT THE JURY HEARING ANY EVIDENCE THAT THIS WAS AN INDUSTRY

11     STANDARD.

12              MR. NELSON:  OKAY.

13              THE COURT:  SO I DON'T THINK IT WILL BE NECESSARY.

14     I'M GOING TO LEAVE IT TO YOU TO RAISE THAT ISSUE AT THE CLOSE

15     OF THE EVIDENCE.  I'M EXPECTING YOU'LL OBJECT SUFFICIENTLY

16     DURING THE TRIAL THAT YOU WON'T EVEN NEED IT.

17              MR. NELSON:  ALL RIGHT.  THANK YOU, YOUR HONOR.

18              THE COURT:  ALL RIGHT.

19          MR. VAN NEST, DID YOU WANT TO ADD ANYTHING HERE?

20              MR. VAN NEST:  I DON'T THINK SO.

21          I JUST WANT TO BE SURE I UNDERSTAND.  I THINK WHAT YOUR

22     HONOR HAS SAID IS OUR EXPERTS CAN'T CALL IT AN INDUSTRY

23     STANDARD, BUT THEY CAN TESTIFY ABOUT WIDESPREAD USE THROUGH THE

24     INDUSTRY.

25              THE COURT:  THAT'S RIGHT.
```

```
 1              MR. VAN NEST:  AND IF THERE ARE STATEMENTS BY CISCO

 2    TO THE EFFECT THAT IT'S AN INDUSTRY STANDARD, OR A DE FACTO

 3    STANDARD, THOSE COME IN.  STATEMENTS BY OUR CLIENT THAT IT'S AN

 4    INDUSTRY STANDARD, THEY WOULD COME IN.  STATEMENTS BY THIRD

 5    PARTY, DELL AND THE OTHERS, THAT IT'S AN INDUSTRY STANDARD,

 6    THEY WOULD ALL COME IN.

 7              THE COURT:  ALL THAT'S THE UNDERLYING EVIDENCE,

 8    THAT'S RIGHT.

 9              MR. VAN NEST:  RIGHT.  AND WHAT WE'RE EXCLUDED FROM

10    DOING IS HAVING AN EXPERT SAY, THIS WAS AN INDUSTRY STANDARD,

11    OR A DE FACTO INDUSTRY STANDARD.

12              THE COURT:  RIGHT.

13              MR. VAN NEST:  THE EXPERTS WILL BE TALKING ABOUT

14    TERMS IN THE COMMANDS THAT COME FROM OTHER INDUSTRY STANDARDS.

15              THE COURT:  SURE.

16              MR. VAN NEST:  BUT I UNDERSTAND THAT THE STATEMENTS

17    THAT ARE AT ISSUE ON THIS MOTION --

18              THE COURT:  GOOD.

19              MR. VAN NEST:  -- WILL BE ALLOWED.

20              THE COURT:  AND YOU CAN'T STAND UP IN OPENING OR

21    CLOSING AND TELL THE JURY IT'S AN INDUSTRY STANDARD.

22              MR. VAN NEST:  RIGHT.

23              THE COURT:  OKAY.

24              MR. VAN NEST:  RIGHT.

25              THE COURT:  GOOD.  OKAY.  THEN THAT IS GRANTED WITH
```

1     THOSE COMMENTS.

2         ALL RIGHT.  CISCO'S MOTION NUMBER 3 IS TO EXCLUDE UNTIMELY

3     DISCLOSED WITNESSES, AND WE'LL HAVE TO WALK THROUGH THE LONG

4     LIST OF PEOPLE THAT HAVE BEEN IDENTIFIED.

5         THE FIRST ONE IS RHONDA ANDREW, WHO IS A PARALEGAL AT

6     KEKER & VAN NEST, AND HER TESTIMONY WOULD BE OFFERED TO

7     AUTHENTICATE CERTAIN DOCUMENTS AND TO TESTIFY ABOUT OBTAINING

8     DOCUMENTS FROM PUBLIC SOURCES.

9         IS THAT ACCURATE?

10        MS. MCCLOSKEY:  YES.

11        MR. VAN NEST:  YES, YOUR HONOR.

12        THE COURT:  OKAY.  AS TO AUTHENTICATION OF DOCUMENTS

13    THAT COME FROM FILINGS MADE BY CISCO, I CAN'T EVEN IMAGINE

14    THERE NEEDS TO BE A WITNESS TO AUTHENTICATE THOSE.  BUT I WOULD

15    ALLOW MS. ANDREW TO TESTIFY, TO AUTHENTICATE IF YOU CAN'T REACH

16    A STIPULATION THAT THE DOCUMENTS ARE NOT ADMISSIBLE.

17        AS TO -- MR. VAN NEST, HELP ME OUT HERE.  I PRESUME

18    MS. ANDREW MAY HAVE DONE SOME KIND OF GOOGLE SEARCH OR

19    SOMETHING ELSE THAT -- TO GLEAN DOCUMENTS FROM THE PUBLIC, OR

20    TO -- I DON'T KNOW WHAT ELSE.

21        MR. VAN NEST:  THAT'S RIGHT.  MS. MCCLOSKEY IS GOING

22    TO ADDRESS THAT, YOUR HONOR.

23        THE COURT:  OKAY, YES.

24        MS. MCCLOSKEY:  YES, THAT'S RIGHT, YOUR HONOR.

25    MS. ANDREW DID GOOGLE SEARCHES TO LOCATE DOCUMENTS THAT WERE

1    LABELED CISCO CONFIDENTIAL, OR WITH SIMILAR NAMES, THAT WERE

2    EASILY LOCATED ONLINE, IN OTHER WORDS, NOT CONFIDENTIAL

3    DOCUMENTS, AND SO SHE WOULD TESTIFY ABOUT THE PERFORMANCE OF

4    THAT TASK.

5            THE COURT:  SO I -- AND SHE WAS NOT DISCLOSED UNTIL

6    AFTER FACT DISCOVERY.  YOU KNOW, I'M INCLINED TO ALLOW THIS AS

7    PROPER AUTHENTICATION OF DOCUMENTS, THE SOURCE FROM WHICH

8    THEY'VE BEEN FOUND.

9        MR. PAK, I ACTUALLY AM STRUGGLING TO IMAGINE THIS BEING AN

10   ISSUE AT TRIAL.

11           MR. PAK:  YOUR HONOR, I THINK TO THE EXTENT THAT

12   THAT'S REALLY THE FOCUS OF HER TESTIMONY, IF SHE'S ALLOWED TO

13   TESTIFY, I THINK WE SHOULD BE ABLE TO WORK OUT A STIPULATION ON

14   THOSE DOCUMENTS.

15       TO THE EXTENT THAT IT GOES BEYOND THAT, I DO REMAIN

16   CONCERNED.  WE DIDN'T HAVE AN OPPORTUNITY TO DEPOSE HER, SHE'S

17   CLEARLY TALKING ABOUT DOCUMENTS THAT WERE PRODUCED DURING THE

18   COURSE OF DISCOVERY, AND THE ISSUE IS DISCLOSURE.

19           THE COURT:  OKAY.  BASED ON EVERYTHING I KNOW, I'M

20   GOING TO DENY THE REQUEST TO EXCLUDE MS. ANDREW, WITH THE

21   UNDERSTANDING, MR. PAK, THAT IF IT GOES BEYOND THIS, THAT I

22   WILL HEAR YOUR OBJECTION DURING TRIAL.

23           MR. PAK:  THANK YOU, YOUR HONOR.

24           THE COURT:  OKAY.  SECOND, WE HAVE MS. ELSTEN, A

25   PORTION OF HER REBUTTAL REPORT TO EXCLUDE HER RECITATION OF HER

```
 1        CONVERSATIONS WITH SOME 16 CISCO EMPLOYEES WHO WERE THE CONTACT

 2        FOR CISCO -- ARISTA EMPLOYEES WHO WERE THE CONTACT TO CISCO

 3        CUSTOMERS, OR POTENTIAL CUSTOMERS.  IS THAT ACCURATE?

 4               MS. MCCLOSKEY:  THAT'S RIGHT.

 5               THE COURT:  ALL RIGHT.  WELL, AND THIS PROBABLY

 6        DOVETAILS WITH THE PRESENTATION OF WITNESSES, IS IT PREMJI?

 7               MS. MCCLOSKEY:  YES, THAT'S RIGHT, YOUR HONOR.

 8               THE COURT:  PREMJI AND SUMMERS, WHO WOULD BE TWO OF

 9        THOSE ARISTA EMPLOYEES.

10          MR. PAK, I AM CONCERNED HERE THAT THIS -- THERE MAY BE

11        SUBSTANTIAL JUSTIFICATION FOR THESE -- THIS EVIDENCE TO COME

12        FORWARD BECAUSE OF THE LATE DISCLOSURE OF THE CUSTOMER LISTS BY

13        CISCO THAT PUSHED ARISTA OVER THE LINE IN GETTING THIS DONE.

14               MR. PAK:  YOUR HONOR, FIRST OF ALL, WITH RESPECT TO

15        THESE TWO PARTICULAR WITNESSES, MR. PREMJI AND MR. SUMMERS,

16        THEY RELATE TO CUSTOMERS THAT BOTH ARISTA AND CISCO HAVE KNOWN

17        ABOUT AND HAVE CONDUCTED EXTENSIVE AMOUNT OF DISCOVERY AND

18        DEPOSITION QUESTIONING.

19          I ASKED MR. SADANA, BOTH IN HIS INDIVIDUAL CAPACITY AS THE

20        VICE PRESIDENT IN CHARGE OF CUSTOMER ENGINEERING, AS WELL AS

21        DURING HIS 30(B)(6) DEPOSITIONS.  HE CAME PREPARED TO TESTIFY

22        ON THOSE EXACT TOPICS FOR WHICH WE WERE IDENTIFYING SPECIFIC

23        CUSTOMERS THAT WERE LOST.  THESE ARE MAJOR ACCOUNTS FOR WHICH

24        -- THEY WERE FORMER CISCO ACCOUNTS AND THEN THEY BECAME ARISTA

25        ACCOUNTS.
```

1          THERE'S REALLY NO ISSUE OF NOTICE.  I THINK WE DEALT WITH

2     SIMILAR OBJECTIONS IN FRONT OF THE MAGISTRATE JUDGE WITH

3     RESPECT TO THEIR MOTION TO STRIKE THE LIST OF LOST PROFITS.  HE

4     FOUND SUFFICIENT JUSTIFICATION.  WE PRESENTED HIM WITH EVIDENCE

5     THAT THESE CUSTOMERS WERE TALKED ABOUT IN VARIOUS OPPOSITIONS

6     AND WERE CERTAINLY THE SUBJECT OF NUMEROUS DISCOVERY AND

7     DOCUMENTATION.

8          AND THE REAL ISSUE, YOUR HONOR, ISN'T SO MUCH -- THERE'S A

9     TIMING ISSUE, BUT THERE'S ALSO A FAIRNESS ISSUE, YOUR HONOR,

10    BECAUSE MR. SADANA WAS DESIGNATED AS THE CORPORATE WITNESS ON

11    ALL OF THE LOST PROFITS AND DAMAGES TOPICS ON BEHALF OF ARISTA.

12    I HAD TWO FULL DAYS TO DEPOSE HIM.  HE TESTIFIED UNDER OATH

13    THAT HE WAS FULLY PREPARED, HE DIDN'T NEED TO SPEAK TO ANY OF

14    THE OTHER ENGINEERS OR SALES PEOPLE BECAUSE HE WAS VERY WELL

15    AWARE OF THESE ACCOUNTS, HE WAS AWARE OF THE SPECIFIC MARKETING

16    STRATEGIES AND THE CIRCUMSTANCES BY WHICH THEY BECAME ARISTA

17    CUSTOMERS.  HE GAVE, I THINK, FRANKLY SOME VERY DAMAGING

18    ADMISSIONS ON BEHALF OF ARISTA.

19          NOW THEY WANT TO COME IN AND -- FOR EXAMPLE, RELATING TO

20    THE ISSUE OF WHETHER CLI IS AN IMPORTANT FACTOR, NOW APPARENTLY

21    THESE PEOPLE ARE COMING IN AND THEY SPOKE AFTER-THE-FACT

22    DISCOVERY TO MS. ELSTEN AND COMMUNICATED THINGS THAT ARE

23    CONTRARY TO HIS TESTIMONY.

24          SO FOR US IT'S REALLY, WE'RE AT THIS POINT, WE HAVE THE

25    RECORD, WE HAVE THE BINDING CORPORATE WITNESS TESTIMONY FROM

```
1    MR. SADANA ON THESE TOPICS.  THERE'S REALLY NO JUSTIFICATION

2    FOR HAVING NOT ONLY 16 WITNESSES WHO SPOKE TO MS. ELSTEN, BUT

3    NOW HAVE TWO PEOPLE COME TO TRIAL NOW TO TALK ABOUT CUSTOMER

4    ACCOUNTS FOR WHICH THERE WAS A DESIGNATED CORPORATE WITNESS WHO

5    GAVE BINDING TESTIMONY ON BEHALF OF THE COMPANY.

6            THE COURT:  AND SO YOU ALSO -- ALL RIGHT.  SO I

7    UNDERSTAND THE ISSUE WITH MR. -- IS IT MR. PREMJI AND

8    MS. SUMMERS OR DID I MIX THAT UP?

9            MS. MCCLOSKEY:  YOUR HONOR, IT'S MISTER AS TO BOTH.

10           THE COURT:  BUT AS TO MS. ELSTEN AS THE EXPERT IN HER

11   REBUTTAL REPORT, YOU CONTINUE TO OBJECT TO HER RELIANCE ON ANY

12   OF THE --

13           MR. PAK:  THAT'S RIGHT, YOUR HONOR.

14           THE COURT:  I THINK THAT'S TOO BROAD.  YOU KNOW,

15   THAT'S MY CONCERN IS THAT IF YOU PERSUADE ME ON MR. PREMJI AND

16   MR. SUMMERS, THAT THEY WERE THE CONTACT FOR MAJOR CLIENTS KNOWN

17   TO BOTH, I JUST THINK THAT'S SAYING TOO MUCH FOR ALL OF THEM,

18   OF THE OTHER ARISTA EMPLOYEES WHO WERE -- BECAME IMPORTANT

19   AFTER YOU MADE THE CUSTOMER DESIGNATION.

20           MR. PAK:  I THINK THAT'S A FAIR POINT, YOUR HONOR.

21       SO, I MEAN, REALLY THE THRUST OF OUR MOTION IS WE WOULD

22   NOT LIKE TO HAVE TWO WITNESSES FOR WHOM THEY WERE NOT DISCLOSED

23   TO US, WHO WE DIDN'T HAVE A CHANCE TO DEPOSE IN THE CASE, FOR

24   WHOM THEIR CUSTOMERS OVERLAP WITH THE CUSTOMERS THAT MR. SADANA

25   TALKED ABOUT.
```

```
 1              THE COURT:  AND WHO ARE THE CUSTOMERS?

 2              MR. PAK:  I BELIEVE THAT THIS WOULD BE MICROSOFT AND

 3    FACEBOOK ARE THE TWO CUSTOMERS THAT IT SHOWS UP FOR.

 4              MS. MCCLOSKEY:  THAT'S RIGHT.

 5              MR. PAK:  THESE ARE THE TWO MAIN CUSTOMERS.  WE'VE

 6    BEEN DISCUSSING THESE COMPANIES FOR A LONG TIME.

 7              THE COURT:  OKAY.

 8              MR. PAK:  I ASKED HOURS OF QUESTIONS IN BOTH ROLES

 9    WITH MR. SADANA, BOTH IN HIS INDIVIDUAL AND CORPORATE

10    TESTIMONY.

11         SO THE PRIMARY BASIS WOULD BE TO EXCLUDE THEM FROM

12    TESTIFYING.  TO THE EXTENT THAT YOUR HONOR IS INCLINED TO LET

13    MS. ELSTEN GENERALLY TALK ABOUT THOSE FACTUAL DISCUSSIONS,

14    WE'RE FINE.

15              THE COURT:  OKAY.  FOR MR. SADANA, I THINK IT WAS

16    CLEAR FROM THE PAPERS, I WOULD GRANT THAT AND LIMIT HIM TO THE

17    SCOPE OF HIS TESTIMONY IN HIS 30(B)(6) DEPOSITION.  IT SEEMS

18    THAT THAT'S NOT OBJECTED TO.

19         SO THIS -- ISN'T THAT CORRECT, THAT YOU'RE NOT OBJECTING

20    TO LIMITING MR. SADANA TO WHAT HE -- THE SCOPE OF HIS

21    TESTIMONY?

22              MS. MCCLOSKEY:  NO, WE MADE NOTHING ABOUT LIMITING

23    MR. SADANA'S TESTIMONY.

24         CAN I JUST RESPOND QUICKLY TO MR. PAK'S POINTS?

25              THE COURT:  YES.
```

1          MS. MCCLOSKEY:  SO FIRST OF ALL, I JUST WANT TO

2     CLARIFY SOMETHING IN THE RECORD.

3          THE MAGISTRATE JUDGE HAS MADE ABSOLUTELY NO RULING ON THIS

4     ISSUE.  HE HAS NOT WEIGHED IN ON THIS ONE WAY OR THE OTHER.

5          AND AS YOU, YOUR HONOR, REFERRED TO AT THE BEGINNING OF

6     YOUR REMARKS ON THIS MOTION, WE STARTED ASKING FOR CISCO TO

7     IDENTIFY ITS LOST SALES ACCOUNTS IN APRIL OF 2015.  IT TOOK

8     THEM OVER A YEAR TO IDENTIFY THOSE ACCOUNTS.

9          ONCE THEY DID IDENTIFY THOSE ACCOUNTS, WE DEPOSED THEIR

10     30(B)(6) WITNESS, WHO ADMITTED THAT ALL OF THOSE ACCOUNTS CAME

11     AS A RESULT OF THEIR ANALYZING THEIR OWN INTERNAL DOCUMENTS.

12     IT HAD NOTHING TO DO WITH ANY INFORMATION THAT ARISTA

13     DISCLOSED.

14          FURTHER, ARISTA HAS THOUSANDS OF CUSTOMERS.  THERE'S NO

15     WAY WE COULD IDENTIFY THE 30 THAT THEY WERE ULTIMATELY GOING TO

16     ALLEGE AS LOST SALES.

17          AND SPECIFICALLY AS TO MICROSOFT AND FACEBOOK, THE TWO

18     THAT ARE AT ISSUE HERE, THOSE WERE, FRANKLY, TWO OF THE LAST

19     CUSTOMERS THAT WE WOULD HAVE IDENTIFIED.  THEY CARE PROBABLY

20     THE LEAST OF ANY CUSTOMERS ABOUT THE CLI.  SO WE WOULD NEVER

21     HAVE IDENTIFIED THOSE CUSTOMERS AS RELEVANT HAD CISCO NOT NAMED

22     THEM.

23          THE COURT:  HMM.

24          MR. PAK:  YOUR HONOR, JUST TO BE CLEAR, IT WASN'T

25     MY -- JUST MY QUESTIONING OF OUR -- OF ARISTA'S WITNESSES.

1      WHEN THEY DEPOSED SOME OF OUR FACTUAL WITNESSES, THERE

2   WERE QUESTIONS DIRECTED SPECIFICALLY AT FACEBOOK, SPECIFICALLY

3   AT GOOGLE.  THESE ARE -- OR MICROSOFT.

4      THESE ARE COMPANIES THAT BOTH SIDES HAVE KNOWN ABOUT.

5   THESE ARE CUSTOMERS THAT ARISTA HAS TAKEN FROM CISCO WITH

6   RESPECT TO THE OPERATING MATERIAL.

7      AND, AGAIN, THEY HAVE SOMEBODY WHO CAN TALK ABOUT THESE

8   ISSUES.  THIS IS NOT DEPRIVING ARISTA OF AN OPPORTUNITY TO TALK

9   ABOUT THESE CUSTOMERS.  THEY HAVE MR. SADANA WHO TESTIFIED

10  UNDER OATH.  HE WAS DESIGNATED AS A CORPORATE WITNESS ON ALL OF

11  THESE TOPICS.  THEY HAVE MS. ELSTEN, WHO'S ANALYZED THE

12  DOCUMENTARY EVIDENCE.

13     WHAT WE DON'T WANT IS LITIGATION BY AMBUSH WHERE WE DON'T

14  KNOW WHAT THESE PEOPLE ARE GOING TO SAY, WE DIDN'T HAVE A

15  CHANCE TO DEPOSE THE, DIDN'T HAVE A CHANCE TO GET DOCUMENTS AS

16  PART OF THE CASE.

17         THE COURT:  BUT YOU DID HAVE AN OPPORTUNITY TO DEPOSE

18  THEM; ISN'T THAT CORRECT?  THAT WAS OFFERED?

19         MS. MCCLOSKEY:  WE OFFERED THAT.  THEY NEVER

20  RESPONDED TO OUR OFFER.

21         THE COURT:  BOTH OF YOU -- BOTH SIDES DID THIS, MADE

22  OFFERS AND THE OTHER SIDE REJECTED IT BECAUSE YOU ALL DIDN'T

23  WANT TO COME -- ONCE THE DEPOSITION IS TAKEN, YOU LOSE THE

24  OPPORTUNITY.

25     YOU KNOW, I STARTED, HAVING REVIEWED YOUR PAPERS WITH THE

```
1    SENSE THAT, AS TO THIS SITUATION, THERE WAS SUBSTANTIAL

2    JUSTIFICATION, THAT IS THE STANDARD HERE, THAT THE DISCOVERY

3    WAS PROPOUNDED EARLY IN THE CASE AND WAS NOT RESPONDED TO UNTIL

4    QUITE LATE IN THE CASE, PREVENTING ARISTA FROM MARSHALLING ITS

5    EVIDENCE.

6         AND SO UNDER THE CIRCUMSTANCES AND HAVING BEEN GIVEN THE

7    OPPORTUNITY TO DEPOSE THESE INDIVIDUALS, I WOULD OFFER YOU THE

8    OPPORTUNITY FOR A ONE HOUR DEPOSITION OF EACH OF THESE

9    INDIVIDUALS BEFORE TRIAL.  I ASSUME THAT THEY'RE LOCAL.

10        MS. MCCLOSKEY:  ONE OF THEM IS LOCAL.  ONE OF THEM IS

11    NOT FAR AWAY.

12        THE COURT:  NOT FAR AWAY, THAT'S A GOOD ANSWER.  I

13    LIKE THAT, NOT IN SOME OTHER COUNTRY.

14        ALL RIGHT.  I AM GOING TO DENY THE MOTION TO EXCLUDE

15    MS. ELSTEN'S TESTIMONY OUTLINED IN HER REBUTTAL REPORT.  I AM

16    GOING TO DENY THE MOTION AS TO MR. PREMJI AND MR. SUMMERS, WITH

17    THE -- WITH A ONE HOUR DEPOSITION OF EACH OF THEM TO BE

18    ARRANGED BETWEEN THE PARTIES.

19        AS TO MR. SADANA -- NOW I HAVE TO -- I AM GOING TO DENY

20    THE -- I HAD MIXED THAT.  I THINK THERE'S ANOTHER ONE.  I AM

21    GOING TO DENY THE MOTION AS TO MR. SADANA.

22        TO THE EXTENT THAT HE SEEKS TO CHANGE HIS TESTIMONY AT

23    TRIAL, THAT MAKES FOR GREAT THEATER FOR THE JURY.

24        (LAUGHTER.)

25        THE COURT:  AND YOU CAN CERTAINLY IMPEACH HIM ON
```

1    THAT, AND THEN YOU'LL BE ABLE TO USE THOSE DEPOSITIONS JUST THE

2    WAY THEY WERE DESIGNED TO BE USED.

3         ALL RIGHT.

4              MR. VAN NEST:  YOU'RE KILLING ME HERE.

5         (LAUGHTER.)

6              MR. PAK:  TO THE EXTENT -- MAY I ASK ONE FOLLOW-UP

7    QUESTION ON MR. PREMJI AND MR. SUMMERS?  TO THE EXTENT THAT --

8    I IMAGINE THAT THEY'RE NOT GOING TO BE SPONSORING ANY DOCUMENTS

9    AT TRIAL THAT WILL BE COMING IN THROUGH OTHER WITNESSES.

10        IS THAT TRUE?

11             MS. MCCLOSKEY:  I'M NOT SURE IF THAT'S THE CASE.

12             MR. PAK:  BECAUSE THEN I THINK, YOUR HONOR, TO THE

13   EXTENT THAT THEY ARE INTENDING TO SPONSOR ANY DOCUMENTS THROUGH

14   THESE WITNESSES, WE'D LIKE TO HAVE NOTICE OF THAT BEFORE WE END

15   UP TAKING THESE DEPOSITIONS.

16             MR. VAN NEST:  THAT'S FAIR.

17             THE COURT:  ABSOLUTELY, YES.  I THINK THAT'S FAIR.

18             MS. MCCLOSKEY:  OKAY.

19             THE COURT:  OKAY.  LET'S MOVE ON TO IN LIMINE MOTION

20   NUMBER 4, AND THAT IS TO EXCLUDE UNTIMELY DISCLOSURE OF

21   NON-INFRINGEMENT THEORY.  WE'LL MOVE ON TO THE PATENT ISSUES.

22        IT'S MY INCLINATION TO DENY THIS MOTION.  I HAVE READ

23   DR. -- THE RESPONSE TO INTERROGATORIES 6 AND 10, INCLUDING THE

24   SUPPLEMENTAL RESPONSES, AND IN PARTICULAR, EXHIBIT 5 AT PAGE 9,

25   LINES 10 TO 12 THAT WERE CITED TO ME, AND IT APPEARS TO ME THAT

```
1        THE THEORY WAS REGARD -- REGARDING SYNTAX WAS PROPERLY

2    DISCLOSED.

3            AND I THINK THAT IT IS FURTHER PROPER REBUTTAL TO

4    DR. ALMEROTH'S OPINION REGARDING IDENTICAL COMMANDS.

5            ANY OTHER COMMENTS?

6            MR. PAK:  YOUR HONOR, THE ONLY -- WE UNDERSTAND YOUR

7    REASONING ON THAT, YOUR HONOR.

8        I THINK THE ISSUE FOR US IS OBVIOUSLY TO THE EXTENT THAT

9    THESE OPINIONS, WHICH WE BELIEVE ARE LAY OPINIONS, ARE ALLOWED

10   TO COME IN THROUGH DR. BLACK, THAT OUR EXPERT BE ALLOWED TO

11   REBUT AND DEAL WITH THESE OPINIONS AS PART OF HIS CASE

12   PRESENTATION AT TRIAL.

13           SO THAT -- TO THE EXTENT THAT THIS IS A NEW THEORY,

14   THAT -- AND REALLY JUST --

15           THE COURT:  NO, I DON'T THINK IT IS A NEW THEORY,

16   BECAUSE I THINK IT'S IN THE SUPPLEMENTAL DISCLOSURE.

17           MR. PAK:  THERE ARE TWO THINGS GOING ON, YOUR HONOR.

18   THERE'S THE HIGH LEVEL THEORY, WHICH THEY HIGHLIGHTED HERE ON

19   PAGE 3 --

20           THE COURT:  YES.

21           MR. PAK:  -- WHERE IT SAYS THAT THE ACCUSED CLI

22   COMMANDS SUPPORTED BY EOS DEFER IN SYNTAX, THAT'S THE LANGUAGE

23   THAT THEY CITED TO YOU, YOUR HONOR --

24           THE COURT:  YES.

25           MR. PAK:  -- AT THE TIME, AND ALL THE WAY THROUGH
```

1    FACT DISCOVERY, ARISTA HAD NOT PROVIDED ANY FURTHER DETAIL THAN

2    THAT.

3         THIS WAS -- WHEN DR. BLACK THEN PROVIDES THE EXPERT

4    REPORT, THEN HE PROVIDES A CHART WITH OVER 220 EXAMPLES OF WHAT

5    HE MEANS, WHICH HE HAD NOT DISCLOSED TO US.

6         THE COURT:  AND HE WAS DEPOSED AFTER THAT?

7         MR. PAK:  HE WAS DEPOSED -- YES, HE WAS DEPOSED AS

8    PART OF THE EXPERT DISCOVERY PROCESS ON THOSE QUESTIONS,

9    ABSOLUTELY.

10         BUT THE ISSUE, YOUR HONOR, IS TO THE EXTENT THAT OUR

11   EXPERT DID NOT HAVE A CHANCE TO DEAL WITH THOSE, BECAUSE THESE

12   ARE OPINIONS THAT ARE COMING IN AFTER OUR EXPERT HAD PUT IN HIS

13   INFRINGEMENT REPORT, THAT WE WOULD LIKE THE OPPORTUNITY TO DEAL

14   WITH THIS NEW REBUTTAL DEFENSE BECAUSE THAT WAS A NEW THEORY

15   THAT OUR EXPERT DID NOT HAVE A CHANCE TO CONSIDER AS PART OF

16   HIS FACTUAL -- AND SPECIFICALLY IT'S THE EXAMPLES THAT ARE

17   GIVEN OF THESE 220 OR SO COMMANDS WHERE THEY SAY THAT YOU HAVE

18   TO HAVE ADDITIONAL INFORMATION TO BE ABLE TO EXECUTE THE

19   COMMANDS.

20         MR. WONG:  MAY I RESPOND TO THAT, YOUR HONOR?

21         THE COURT:  YES, PLEASE.

22         MR. WONG:  YOUR HONOR, WHAT MR. PAK DIDN'T MENTION IS

23   THAT THEY ACTUALLY ASKED ONE OF ARISTA'S EXPERTS TO GO THROUGH

24   AND LOOK AT EACH OF THESE COMMANDS ON THEIR LIST AND POINT OUT

25   ALL THESE DIFFERENCES THAT ACTUALLY TALKED ABOUT THEM, YOU

1        KNOW, HE PUT IN HIS REPORT.

2             SO THEY WERE -- YOU KNOW, AS YOUR HONOR POINTED TO, THEY

3        WERE AWARE OF THIS THEORY THAT THE ACTUAL COMMANDS ARE

4        DIFFERENT FROM WHAT'S ON THEIR LIST.

5             AND THEY PUT THE EXACT DOCUMENTS THAT WE WERE POINTING TO

6        EXEMPLIFYING THAT IN FRONT OF OUR FACT WITNESSES AND THEY

7        WALKED THROUGH SEVERAL EXAMPLES OF THESE DIFFERENCES THAT WE'RE

8        POINTING OUT HERE.

9             SO -- AND, YOU KNOW, OUR WITNESS POINTED TO THE MANUAL AND

10       SAID, BY THE WAY, THIS IS HOW YOU CAN SEE THIS.

11            SO THIS WAS DISCLOSED CLEARLY AND THERE'S NO REASON WHY

12       DR. ALMEROTH COULDN'T HAVE ADDRESSED IT IN HIS REPORTS.

13                 THE COURT:  SO NOW THE QUESTION -- THE REQUEST BY

14       MR. PAK IS TO ALLOW SOME ADDITIONAL SCOPE OF DR. ALMEROTH

15       REBUTTAL TESTIMONY THAT HAS NOT BEEN COVERED IN THE SCOPE OF

16       HIS REPORT.

17            SO IF YOU COULD ADDRESS THAT REQUEST?  THAT'S OUTSIDE THE

18       MOTION AS WRITTEN.

19                 MR. WONG:  WELL, I THINK THAT HIS OPINION ALREADY

20       ADDRESSES WHAT HIS POSITION IS, WHICH IS THAT THEY'RE

21       IDENTICAL.

22                 THE COURT:  GOOD.  THEN HE CAN SAY IT IN REBUTTAL

23       BECAUSE IT'S ALREADY BEEN DISCLOSED.  THAT'S FINE.  THANK YOU.

24            OKAY.

25                 MR. PAK:  JUST TO BE CLEAR, YOUR HONOR --

```
 1              THE COURT:  DON'T GET CARRIED AWAY, THOUGH, MR. PAK.
 2      IT'S NOT AS BROAD AS IT MAY SEEM.
 3              MR. WONG:  HE CAN SAY WHAT'S IN HIS REPORT, WHICH IS
 4      THAT THE VARIOUS THINGS --
 5              THE COURT:  YES.  SO THIS IS A GOOD OPPORTUNITY FOR
 6      ME TO COMMENT.
 7           YOU'VE PROVIDED THE EXPERT REPORTS ON A FLASH DRIVE FOR
 8      ME.  THANK YOU.  I DON'T ACTUALLY WANT THE WHOLE REPORT.
 9           BUT YOU KNOW I'M -- I DON'T HAVE ACCESS TO THAT IN A REAL
10      SENSE, AND CERTAINLY NOT AT TRIAL.
11           AND SO WHEN THERE IS AN OBJECTION AT TRIAL THAT THE
12      TESTIMONY IS BEYOND THE SCOPE OF THE REPORT, THE PARTY
13      SOLICITING THE OPINION HAS GOT TO SHOW ME, CHAPTER AND VERSE,
14      ON THE SPOT, WHILE AN ORAL OBJECTION IS BEING MADE, THAT IT'S
15      THERE.  OTHERWISE I'M GOING TO HAVE TO SUSTAIN THE OBJECTION
16      BECAUSE I WON'T KNOW IF IT'S IN THERE OR NOT.  SO YOU'LL HAVE
17      TO DO THAT.
18              MR. PAK:  WE'LL BE PREPARED TO DO THAT.
19              THE COURT:  YOU KNOW THAT.
20              MR. PAK:  YES.
21              THE COURT:  OKAY.  LET'S MOVE ON TO IN LIMINE MOTION
22      NUMBER 5, TO EXCLUDE TESTIMONY FROM TERRY EGER.  THE -- I'VE
23      READ THIS ONE A FEW TIMES AND I'M JUST NOT SEEMING TO BE ABLE
24      TO GET MY HANDS AROUND THIS.
25              SO MR. EGER WAS A CISCO EMPLOYEE FROM 1988 TO 1992, AND
```

1    THIS WOULD BE -- IS OFFERED AS TESTIMONY OF HOW CISCO -- I

2    MEAN, I GUESS I'M JUST -- I'M SORRY THAT I -- MOST OF THESE

3    I'VE BEEN ABLE TO UNDERSTAND WHY IT WOULD BE OBJECTED TO.

4         SO MR. PAK, MAYBE --

5              MR. PAK:  YES, LET ME EXPLAIN, BECAUSE I HAD A CHANCE

6    TO DEPOSE MR. EGER.

7         SO WE WERE ACTUALLY A LITTLE BIT SURPRISED TO FIND

8    MR. EGER ON THE TRIAL WITNESS LIST FROM ARISTA.  HE LEFT THE

9    COMPANY IN, I BELIEVE, THE 1992 TIMEFRAME.

10        AND SO MR. -- WHEN WE DEPOSED MR. EGER, HE CONFIRMED THAT

11   HE HAS NO KNOWLEDGE AT ALL OF THE SPECIFIC COMMANDS, THE

12   SPECIFIC CLI INTERFACE, OR ANY OF THE PRODUCTS THAT ARE AT

13   ISSUE IN THIS CASE.

14        HE HAS NOT BEEN WORKING FOR CISCO SINCE HE LEFT THE

15   COMPANY.

16        HE ALSO CONFIRMED THAT ASIDE FROM SOME PRESENTATION THAT

17   HE GAVE TO ARISTA'S SALES PEOPLE, HE HAS NOT BEEN INVOLVED IN

18   ANY TYPE OF PRODUCT DEVELOPMENT OR MARKETING ON BEHALF OF

19   ARISTA.

20             THE COURT:  SO ALL OF THAT SOUNDS LIKE GREAT

21   CROSS-EXAMINATION AS OPPOSED TO EXCLUSION, BECAUSE MY

22   UNDERSTANDING OF ARISTA'S ARGUMENT HERE IS THAT THIS SETS THE

23   STAGE FOR WHAT PRECEDED THE CISCO USER INTERFACE AND WHAT WAS

24   COMMON IN THE INDUSTRY BEFORE THAT TIME.

25        IT'S NOT ABOUT THE PRODUCTS AT ISSUE HERE, THE SWITCHES.

1    AND SO I THINK IT'S LIMITED TESTIMONY.  I DON'T IMAGINE

2    MR. EGER IS GOING TO BE HERE FOR VERY LONG.  OTHERWISE YOU'RE

3    NOT GOING TO GET TO MOST OF YOUR CASE.

4        BUT -- SO, I MEAN, I'M JUST NOT GRASPING THE REASON THAT I

5    WOULD EXCLUDE MR. EGER, AND MY NOTES ARE THAT I -- THAT REALLY

6    YOUR OBJECTIONS ARE MORE PROPERLY GEARED TO CROSS-EXAMINATION.

7        YOU DO SUGGEST THAT HE'S BEEN DISCLOSED FOR TWO TOPICS --

8        MR. PAK:  YES.

9        THE COURT:  -- IN THE WITNESS STATEMENT THAT WERE NOT

10   PREVIOUSLY DISCLOSED, AND THAT'S ALWAYS A CONCERN.  AND ONE WAS

11   DEVELOPMENT OF IOS, AND THE OTHER WAS CISCO MARKETING AND SALES

12   OF ITS PRODUCTS.

13       BUT, FRANKLY, WHEN I READ THOSE, IT -- I ACCEPT THAT THOSE

14   WERE NOT IDENTIFIED TOPICS, BUT I DON'T KNOW HOW THEY'RE NOT

15   ACTUALLY FULLY INCLUDED IN THE TOPICS THAT HE WAS DISCLOSED FOR

16   TESTIMONY.

17       MR. PAK:  YOUR HONOR, ALSO THE OTHER CONCERN THAT WE

18   HAVE, MR. EGER -- SO FIRST OF ALL, EVEN WITH RESPECT TO HIS

19   KNOWLEDGE OR LACK OF KNOWLEDGE WITH RESPECT TO THESE OTHER

20   CLI'S THAT EXISTED, HE TESTIFIED THAT HE HAS NO KNOWLEDGE

21   SPECIFICALLY OF WHAT THOSE COMMANDS CONTAINED.  HE HAS NO

22   KNOWLEDGE WHETHER ANY OF THEM WERE SUBJECT TO COPYRIGHT

23   PROTECTION OR WHETHER THEY WERE LICENSE AGREEMENTS BETWEEN THE

24   COMPANIES.

25       SO PART OF THIS ISSUE IS, IT'S ONE THING FOR THEM TO SHOW

1      CISCO SPECIFIC DOCUMENTS WHERE THE CLI COMMANDS THAT ARE BEING

2      DISCUSSED ARE THE ONES IN THIS CASE AND FOR THEM TO SAY, LOOK,

3      CISCO TOUTED SOME OF THIS AS BEING INDUSTRY LEADING OR POPULAR,

4      OR WHATEVER LANGUAGE IS BEING USED.

5          WE'RE NOW BRINGING A GENTLEMAN THAT HAS NO CONNECTION TO

6      THE SPECIFIC CLI COMMANDS OR THE INTERFACE OR THE PRODUCTS THAT

7      ARE AT ISSUE IN THIS CASE, AND FOR HIM TO COME IN AND SAY

8      BASICALLY, BACK WHEN CISCO WAS A SMALL COMPANY, WE ENGAGED IN

9      SOME CONDUCT THAT MIGHT BE CONSIDERED TO BE COPYING CONDUCT.

10     THAT HAS NOTHING TO DO WITH THE ALLEGATIONS IN THIS CASE.

11          THE COURT:  BUT IT HAS TO DO WITH ORIGINALITY,

12     DOESN'T IT?

13          MR. PAK:  NO.  THERE ARE NONE OF THESE -- NONE OF

14     THESE PARTICULAR -- FOR EXAMPLE, VITALINK IS THE ONE INTERFACE

15     THAT THEY CITED TO YOUR HONOR.  THAT HAS NOTHING TO DO WITH ANY

16     KIND OF ARGUMENT IN OUR CASE.

17          NONE OF THE CLI COMMANDS ARE ALLEGED BY ARISTA OR ITS

18     EXPERT TO HAVE BEEN DERIVED FROM VITALINK.

19          SO EVEN LOOKING AT ORIGINALITY QUESTIONS, WHEN YOU HAVE A

20     WITNESS WHO HAS NO FACTUAL KNOWLEDGE WHATSOEVER OF WHAT THOSE

21     COMMANDS WERE, THE CIRCUMSTANCES BY WHICH ANY INTERACTION

22     OCCURRED BETWEEN CISCO AND THOSE COMPANIES, FOR HIM TO COME IN

23     JUST TO THROW OUT SOME BASICALLY SECONDHAND THINGS THAT HE'S

24     HEARD, WHICH IS HEARSAY, TO SAY, YOU KNOW, WHILE I WAS AT

25     CISCO, ALTHOUGH I WASN'T INVOLVED IN THE DEVELOPMENT OF

```
 1    ANYTHING --
 2              THE COURT:  WELL, HE WAS THE VICE PRESIDENT IN CHARGE
 3      OF WORLDWIDE SALES, WASN'T HE?
 4              MR. PAK:  HE WAS IN CHARGE OF SALES, BUT HE WAS VERY
 5      CLEAR THAT HE HAD NO KNOWLEDGE OF THE UNDERLYING TECHNOLOGY OR
 6      THE UNDERLYING COMMANDS OR THE CLI INTERFACES WHATSOEVER OF ANY
 7      OF THESE COMPANIES.
 8          AND REALLY THAT TYPE OF TESTIMONY THAT'S NOT GROUNDED IN
 9      ANY EVIDENCE, AND THERE'S BEEN NO PRODUCTION OF ANY DOCUMENTS
10      TO SUBSTANTIATE ANY OF HIS TESTIMONY, WE REALLY THINK IT'S
11      PREJUDICIAL, YOUR HONOR, AND IT WOULD BE --
12              THE COURT:  YEAH.
13              MR. PAK:  AND FURTHERMORE, TO THE -- THIS GENTLEMAN
14      HAS ALSO INDICATED THAT HE HAS LOTS OF OPINIONS TO SHARE ABOUT
15      THE COMPANY AND THIS LAWSUIT AND HE GAVE A SALES PRESENTATION
16      TO ARISTA'S ENGINEERS ABOUT THIS CASE.
17          I HAVE NO IDEA WHAT HE'S GOING TO SAY ON THE STAND.  I
18      THINK THAT THERE'S CONCERN ABOUT THAT AS WELL, YOUR HONOR,
19      THAT --
20              THE COURT:  I'M SURE HE'S VERY SMOOTH IN FRONT OF A
21      JURY.
22              MR. PAK:  YEAH.  WE'RE GOING TO HAVE SOMEBODY WHO'S
23      GOING TO COME IN AND START --
24              THE COURT:  YEAH.
25              MR. PAK:  -- YOU KNOW, SPOUTING OPINIONS ABOUT TOPICS
```

```
 1       THAT HE'S GOT NO KNOWLEDGE OF.
 2                THE COURT:  WELL, CERTAINLY THAT WOULD BE A CONCERN.
 3                MR. PAK:  YEAH.
 4                THE COURT:  YOU KNOW, I THINK THAT THE TOPICS ARE
 5       GENERALLY RELEVANT.  I'M NOT SURE HOW PROBATIVE THIS WITNESS'S
 6       TESTIMONY IS WHEN I DO MY 403 ANALYSIS HERE AS MR. PAK HAS
 7       REQUESTED.
 8          SO I DO HAVE SOME CONCERN THAT HIS EXPERIENCE IS ALMOST 25
 9       YEARS OLD AT THIS POINT AND IT HAS NOTHING TO DO WITH THE
10       PRODUCTS AT ISSUE, SO I NEED TO KNOW A LITTLE BIT MORE ABOUT
11       HOW I CAN DECIDE THAT ITS PROBATIVE VALUE IS OUTWEIGHED BY THE
12       PREJUDICIAL EFFECT HERE.
13                MR. WONG:  SURE, ABSOLUTELY, YOUR HONOR.
14          AND I THINK, RESPECTFULLY, MR. PAK HAS OVERSTATED THINGS
15       ABOUT MR. EGER'S TESTIMONY.
16          SO MR. EGER WAS THE VP OF WORLDWIDE SALES, BUT HE DID KNOW
17       ABOUT THE PRODUCT BECAUSE HE WAS THE ONE THAT WAS IN CHARGE OF
18       SELLING IT, RIGHT, ONCE CISCO DID ITS IPO.  SO CISCO DID ITS
19       IPO IN 1990 AND MR. EGER WAS SELLING ITS ROUTING PRODUCTS.
20          NOW, MR. PAK SAID THAT IT'S NOTHING TO DO WITH THE CLI AT
21       ISSUE IN THIS CASE, BUT THIS CASE IS ABOUT THE CISCO CLI, AND
22       AT THE TIME THAT MR. EGER WAS SELLING THESE PRODUCTS, OVER
23       10 PERCENT OF THE DISPUTED COMMANDS IN THIS CASE WERE ALREADY
24       IN THAT PRODUCT, AS WELL AS THE ACCUSED COMMAND MODES AND
25       PROMPTS, BECAUSE MR. LOUGHEED CLAIMS TO HAVE CREATED THOSE WHEN
```

 1    HE FOUNDED CISCO, WHICH WAS IN 1985, AS WELL AS SHOW COMMANDS,

 2    THAT THE SHOW HIERARCHY WAS THERE, THE CLEAR HIERARCHY WAS

 3    THERE, THE I.P. HIERARCHY WAS ALREADY IN THE CLI WHEN MR. EGER

 4    WAS SELLING IT TO CUSTOMERS AND TELLING THEM, BY THE WAY, WE

 5    HAVE A COMMON CLI AND WE'RE DOING THIS FOR INTEROPERABILITY

 6    PURPOSES SO THAT YOU CAN PUT OUR BOX IN A COMPETITOR'S NETWORK

 7    AND YOU WON'T HAVE TO TRAIN YOUR CUSTOMERS.

 8        THAT SOUNDS LIKE AN AWFULLY SIMILAR PITCH FOR CISCO TO TRY

 9    TO GET A FOOTHOLD IN THE MARKETPLACE.

10        NOW, UNSURPRISINGLY, AFTER MR. EGER, AS THE SPOKESPERSON

11    FOR CISCO IN SALES AND MARKETING, TOLD EVERYBODY THAT THE

12    COMMON CLI WAS FOR INTEROPERABILITY PURPOSES, A COUPLE YEARS

13    LATER, THAT'S WHEN WE FIRST START SEEING CISCO-LIKE CLI POP UP.

14    CISCO'S OWN WITNESSES TESTIFIED THAT REDBACK NETWORKS HAD A

15    CISCO-LIKE CLI IN THE SECOND HALF OF THE 1990S.

16        WE KNOW FROM DR. BLACK'S ANALYSIS THAT UNISPHERE, WHICH IS

17    THE PREDECESSOR TO JUNIPER'S CISCO-LIKE CLI, POPPED IN UP IN

18    THE LATE 1990S.

19        LUCENT POPPED UP IN THE LATE 1990S.

20        AND THEN THERE WAS A WHOLE WAVE OF VENDORS SUPPORTING A

21    COMMON CLI.  SO THAT GOES TO FAIR USE, YOUR HONOR, BECAUSE

22    THAT'S THE CUSTOMER PRACTICE IN THE INDUSTRY OF SUPPORTING A

23    COMMON CLI.

24        IT ALSO SHOWS THAT EVEN CISCO BELIEVED THAT A COMMON CLI

25    WAS RELEVANT TO INTEROPERABILITY.

```
 1            BUT AS TO ORIGINALITY, YOU KNOW, MR. EGER'S TESTIMONY --

 2    AND HE'S SELLING A PRODUCT, AND IF THE PRODUCT DOESN'T HAVE A

 3    COMMON CLI, THEN, YOU KNOW, IF THAT'S NOT TRUE, THEN THE

 4    CUSTOMERS AREN'T GOING TO BUY IT.  THIS WAS THE PITCH THAT HE

 5    WAS GIVING.

 6            AND THIS CASE ISN'T JUST ABOUT THE SMALL LIST OF COMMANDS.

 7    CISCO'S PITCH IS THAT THIS IS THE CISCO CLI.

 8            SO, YOU KNOW, THAT'S WHY IT'S RELEVANT BOTH TO FAIR USE,

 9    BUT ALSO TO ORIGINALITY.

10            AND, YOU KNOW, RESPECTFULLY, CISCO IS GOING TO BE HAVING

11    ITS WITNESSES, LIKE MR. LOUGHEED, TALK ABOUT HOW THESE MODES

12    AND PROMPTS IN THE LATE 1980S WERE ALL ORIGINAL AND HE DIDN'T

13    COPY THEM FROM ANYONE, EVEN THOUGH THOSE FEATURES WERE IN

14    PRODUCTS THAT PREDATED CISCO AND MR. LOUGHEED USED THEM.

15            SO THEY'RE GOING TO HAVE WITNESSES FROM THAT TIME PERIOD

16    TALK ABOUT ORIGINALITY, AND IF MR. EGER IS GOING TO BE UP THERE

17    SAYING, NO, NO, WE WERE PITCHING THAT WE WOULD COPY THIRD PARTY

18    CLI COMMANDS AND PUT THEM IN OUR PRODUCT FOR INTEROPERABILITY

19    PURPOSES, THAT UNDERCUTS THE TESTIMONY THAT THEY'RE GOING TO

20    PROVIDE ON ORIGINALITY.

21            THE COURT:  ALL RIGHT.

22            MR. PAK:  JUST ONE REBUTTAL POINT, YOUR HONOR.

23            THE COURT:  YES.

24            MR. PAK:  SO THAT WAS THE WAY IN WHICH ARISTA

25    PRESENTED THE RELEVANCE OF THIS WITNESS.
```

1    BUT WHEN I DEPOSED HIM -- AND WE LAID OUT SOME OF THE

2    TESTIMONY, YOUR HONOR, BUT WE HAVE THE RELEVANT EXCERPTS FROM

3    HIS DEPOSITION.

4    IF YOU LOOK AT THE SPECIFIC FOLLOW-UP QUESTIONS, WELL, THE

5    FOLLOW-UP QUESTION IS, WHAT CLI ARE YOU TALKING ABOUT?  WHEN

6    YOU SAY THAT WE AT CISCO PROMOTED OR USED SOMEONE ELSE'S

7    COMMANDS INTO OUR INTERFACE, WHAT ARE YOU TALKING ABOUT?  DO

8    YOU HAVE ANY KNOWLEDGE OF THE SPECIFIC COMMANDS?  DO YOU HAVE

9    ANY KNOWLEDGE OF WHERE IT ORIGINATED?  DO YOU HAVE ANY

10   KNOWLEDGE WHETHER CISCO CREATED THEM OR THIS COMPANY CALLED

11   VITALINK CREATED THEM?

12   HE SAYS, I HAVE NO KNOWLEDGE.  I'VE NEVER LOOKED AT ANY OF

13   THAT.  I HAVE NO PERSONAL KNOWLEDGE.

14   HE SAYS THAT -- YOU KNOW NOTHING ABOUT WHAT THE COMMANDS

15   ARE SPECIFICALLY ASSERTED IN THIS CASE?  YOU HAVE NO KNOWLEDGE

16   OF ANY ACT OF COPYING?

17   HE SAYS, I HAVE NO KNOWLEDGE OF ANY OF THAT.

18   SO IN TERMS OF FOUNDATION, YOUR HONOR, THIS IS --

19   EVERYTHING MR. WONG SAID IN TERMS OF WHAT HAPPENS AFTER HE

20   LEAVES THE COMPANY, OR EVEN DURING THE TENURE OF HIS STAY AT

21   CISCO, THERE'S PLENTY OF EVIDENCE THEY CAN PUT INTO THE RECORD

22   FROM OTHER WITNESSES, FROM DOCUMENTS, TO TALK ABOUT ALL THESE

23   OTHER VENDORS.

24   NOW WE JUST HAVE A GENTLEMAN WHO TESTIFIED UNDER OATH THAT

25   HE'S GOT NO KNOWLEDGE OF THE SPECIFIC COMMANDS, EVEN WHAT HE

1       MEANS BY INTERFACE -- WHEN HE SAYS CLI COMMANDS, WE USE THE

2       SAME THINGS, I ASKED HIM, WHAT ARE YOU TALKING ABOUT?  DO YOU

3       KNOW WHICH COMMANDS YOU'RE TALKING ABOUT?  DO YOU KNOW WHETHER

4       THAT HAS ANYTHING TO DO WITH THIS CASE?  DO YOU HAVE ANY

5       KNOWLEDGE OF WHETHER IT WAS CISCO WHO ORIGINATED THEM OR

6       SOMEONE ELSE USED THESE IMPLEMENTS?

7               HE SAYS HE HAS NO PERSONAL KNOWLEDGE OF ANY OF THAT.

8               SO TO US, REALLY AGAIN, WHAT IS THE PROBATIVE VALUE HERE

9       COMPARED TO THE POTENTIAL PREJUDICE OF HAVING TO TRY A MINI

10      TRIAL WHERE WE WOULD HAVE TO GO BACK IN TIME TO GO INTO THESE

11      OTHER ANCILLARY ISSUES, VITALINK AND OTHER COMPANIES THAT HAVE

12      NO RELEVANCE TO THIS CASE.

13              I THINK IT'S HIGHLY PREJUDICIAL, YOUR HONOR.  THEY CAN

14      MAKE THEIR CASE WITHOUT IT.

15                  MR. WONG:  YOUR HONOR, CAN I JUST --

16                  THE COURT:  WELL, MR. WONG, IT'S A CLOSE CALL FOR ME.

17      I'M VERY CONCERNED ABOUT THESE UNSUBSTANTIATED STATEMENTS OF A

18      PERSON WITH A VERY SIGNIFICANT POSITION WITH THE COMPANY HAVING

19      REALLY A VERY SIGNIFICANT EFFECT ON THE JURY WHEN A WITNESS CAN

20      THROW AROUND LANGUAGE LIKE IS SUGGESTED WITHOUT THE FOUNDATION.

21              AND SO I WAS --

22                  MR. WONG:  CAN I JUST RESPOND BRIEFLY TO SOME OF THE

23      THINGS HE SAID, BECAUSE I --

24                  THE COURT:  SURE.

25                  MR. WONG:  SO WHAT MR. -- FIRST OF ALL, I THINK THAT

```
1        ALL OF HIS CRITICISMS ARE FOR CROSS.

2             BUT ALSO, HE'S TALKING ABOUT MR. PAK -- I'M SORRY --

3        MR. EGER NOT HAVING, YOU KNOW, SPECIFIC RECOLLECTION OF THE

4        COMMANDS BACK IN THOSE TIME PERIODS.

5             WELL, CISCO'S WITNESS, WHEN WE ASKED THEM ABOUT THE

6        CREATION OF THE COMMANDS AT ISSUE IN THIS CASE BACK IN THAT

7        TIME PERIOD, THEY HAVE NO KNOWLEDGE EITHER OF HOW THESE

8        COMMANDS WERE CREATED OR WHETHER THEY WERE COPIED.

9             WE ASKED THAT QUESTION TO THEIR 30(B)(6) WITNESS.  LIKE

10       THIS COMMAND RIGHT HERE, CREATED BACK IN THE 1980S, DO YOU KNOW

11       ONE WAY OR THE OTHER WHETHER OR NOT THEY WERE COPIED FROM

12       SOMEPLACE ELSE?

13            DON'T KNOW.

14            DID YOU SPEAK TO THE AUTHOR?

15            NO, I DIDN'T.

16            SO, YOU KNOW, CISCO IS GOING TO RELY UPON GENERALIZED

17       EVIDENCE OF A -- OF A PROCESS OF CREATING COMMANDS IN GENERAL

18       TO TRY TO MEET THEIR BURDEN OF ORIGINALITY.

19            NOW, IF THEY'RE GOING TO BE ABLE TO DO THAT, BUT WE'RE NOT

20       GOING TO BE ABLE TO PRESENT THEIR OWN VP OF SALES SAYING THAT,

21       YOU KNOW, HEY, OUR CLI IS COMMON AND INTEROPERABLE WITH

22       EVERYBODY ELSE'S, WELL, THAT DOESN'T SEEM FAIR TO ME.

23            MR. PAK:  YOUR HONOR, THAT'S NOT WHAT WAS ASKED OF

24       OUR 30(B)(6) WITNESS.  THE QUESTIONS, AS WE WILL GO OVER IN THE

25       OTHER PART OF THE MILS, THE QUESTIONS WERE, DO YOU HAVE ANY
```

```
1        KNOWLEDGE OF THE INDIVIDUAL THOUGHT PROCESS OF A PARTICULAR

2        ENGINEER WHO CREATED THESE COMMANDS?

3            HE SAID OF COURSE I DON'T HAVE ANY SPECIFIC RECOLLECTION

4        OF THE INDIVIDUAL THOUGHT PROCESS.  HOWEVER, HE BROUGHT WITH

5        HIM LOTS OF DOCUMENTS.

6            THERE ARE OTHER WITNESSES -- WE'LL HAVE INDIVIDUAL

7        ENGINEERS WHO WILL TESTIFY ABOUT THE SPECIFIC THOUGHT

8        PROCESSES.

9            BUT THAT HAS NOTHING TO DO WITH WHAT WE'RE TALKING ABOUT

10       HERE, YOUR HONOR, WHICH IS WE HAVE SOMEBODY WHO'S VERY DIVORCED

11       FROM THE CORE ISSUES IN THIS CASE, WHO, BECAUSE OF HIS TITLE,

12       BECAUSE OF THE KINDS OF STATEMENTS THAT HE CAN MAKE THAT ARE

13       INFLAMMATORY, WITHOUT ANY KIND OF DOCUMENTS TO SUBSTANTIATE HIS

14       TESTIMONY, WITHOUT ANY SPECIFIC PERSONAL KNOWLEDGE THAT HE HAS

15       AS TO WHETHER ANY OF THOSE COMMANDS ARE RELEVANT, I THINK IT'S

16       REALLY, REALLY DIFFICULT FOR US TO HAVE THAT KIND OF TESTIMONY

17       COME IN AND NOT BE PREJUDICIAL TO OUR CASE.

18           THE COURT:  OKAY.  WELL, THIS IS A BALANCING THAT I

19       HAVE TO DO.  AS I SAID, I THINK IT'S RELEVANT TESTIMONY.  I

20       THINK IT WOULD BE ADMISSIBLE.

21           I DO THINK THAT MR. EGER'S TESTIMONY WOULD BE PROBATIVE OF

22       THE PRACTICES OF CISCO DURING THE TIME PERIOD THAT HE WAS

23       EMPLOYED, AND TO THE EXTENT THAT HE TESTIFIES ABOUT WHAT HE DID

24       WHEN HE WAS THE VICE PRESIDENT OF WORLDWIDE SALES, THAT WOULD

25       BE APPROPRIATE.
```

1          I AM A LITTLE CONCERNED THAT HE MADE VEER OFF INTO GIVING

2     OPINIONS, AND HE COULD ONLY GIVE A LAY OPINION.  IT WILL HAVE

3     TO BE BACKED UP BY A PROPER FOUNDATION, AND IT WILL BE SUBJECT

4     TO OBJECTION.

5          BUT OTHERWISE I'M SATISFIED THAT CROSS-EXAMINATION IS

6     SUFFICIENT TO PROTECT CISCO'S CONCERNS AND THAT, ON BALANCE,

7     THE PREJUDICE IS OUTWEIGHED BY THE PROBATIVE VALUE OF THE

8     TESTIMONY.

9          I'M SATISFIED THAT THE ISSUE OF THE EARLY DAYS OF

10    DEVELOPMENT OF THE USER INTERFACE ARE VERY IMPORTANT IN THIS

11    CASE AND WHAT CISCO DID IN THAT TIMEFRAME IS -- DOES HAVE

12    RELEVANCE FOR PRESENTING THE FACTS TO THE JURY.

13         ALL RIGHT.  THAT TAKES US THROUGH THE CISCO MOTIONS.  WHAT

14    I WANT TO DO IS AT 3:00 O'CLOCK TO TAKE A BREAK, BUT LET ME

15    JUST KEEP GOING BEFORE THAT.

16         LET'S GO ON TO ARISTA'S MOTIONS IN LIMINE.

17         THIS IS IN LIMINE MOTION NUMBER 1, TO EXCLUDE REFERENCE TO

18    THE ITC INVESTIGATIONS.

19         THE PRIMARY ISSUE HERE IS WHETHER THIS IS MORE PREJUDICIAL

20    THAN PROBATIVE AND WHETHER OR NOT THIS WOULD BE A WASTE OF TIME

21    UNDER SECTION 403.

22         THE STATE -- THE RULING FROM THE ITC REGARDING THREE

23    UNRELATED PATENTS IS -- I WOULD CATEGORIZE IT AS, IN PORTIONS,

24    AS HIGHLY INFLAMMATORY.  IT'S THE FINDING OF THE ITC, BUT IT IS

25    CERTAINLY -- IT CERTAINLY GOES TO THE HEART OF SOME ISSUES HERE

1    REGARDING A CULTURE OF COPYING, WHICH IS QUITE A FLORID PHASE

2    THAT WAS USED IN THAT OPINION.

3        MY CONCERN HERE IS THAT BECAUSE THE ISSUE BEFORE THE ITC

4    WAS THREE UNRELATED PATENTS, THAT I AM GOING TO END UP WITH A

5    MINI TRIAL ON THE DIFFERENCES BETWEEN THOSE PATENTS AND THESE

6    ISSUES, ALTHOUGH, MR. PAK, I KNOW YOU ARGUE THAT THEY ARE THE

7    SAME SWITCHES AT ISSUE HERE.

8        I DON'T KNOW HOW TO AVOID THE DETOUR INTO RELITIGATING THE

9    ITC ISSUES THAT I'D HAVE TO ALLOW ARISTA TO ENGAGE IN.

10        AND THEN AT THAT POINT, I'M VERY CONCERNED THAT THE JURY

11    BECOMES UTTERLY CONFUSED BY HOW TO FIGURE OUT WHAT THE ITC IS.

12    YOU HAVE TO EVEN START WITH THAT.  I'M NOT EVEN SURE I KNOW

13    WHAT THEY ARE.

14        (LAUGHTER.)

15        THE COURT:  AND I PRESUME YOU DO, YOU'VE BEEN THERE

16    MANY TIMES.  BUT --

17        MR. VAN NEST:  TOO MANY.

18        THE COURT:  YEAH, TOO MANY IS RIGHT.

19    SO MY INCLINATION IS TO GRANT THIS ON ALL USE OF THE ITC.

20    AND SO, MR. PAK, I GUESS I'M GOING TO HEAR FROM YOU.

21        MR. PAK:  MY PARTNER, MR. NELSON, IS GOING TO ADDRESS

22    THIS ONE.

23        THE COURT:  OKAY.  MR. NELSON.

24        MR. NELSON:  HE GIVES ME ALL THE EASY ONES.

25        MR. PAK:  YEAH.

```
1              MR. NELSON:  DAVE NELSON ON BEHALF OF CISCO.

2         SO QUITE SIMPLY, I MEAN, THIS IS REALLY A DOOR OPENING

3    ISSUE BASED UPON ARGUMENTS THAT THEY'VE MADE.

4         SO I UNDERSTAND YOUR HONOR'S RULING, AND JUST IN THE

5    ABSTRACT, I PROBABLY DON'T HAVE -- I DON'T EVEN THINK I WOULD

6    OFFER IT BECAUSE IT WOULDN'T BE DIRECTLY RELATED TO THE ISSUES

7    IN THE CASE.

8         BUT THERE'S TWO PRIMARY THINGS, ONE WE CITED FROM THEIR

9    ANSWER, RIGHT, IN THE CASE SAYING THIS CASE WASN'T FILED TO

10   PROTECT INTELLECTUAL PROPERTY, IT WAS FILED TO SQUASH

11   COMPETITION, IT'S BASELESS LITIGATION.

12            THE COURT:  YOU KNOW WHAT?  I HAVE THAT IN YOUR NEXT

13    CASE.  WE'RE NOT GOING TO GO DOWN THAT ROAD.

14            MR. NELSON:  NO, NO, NO.  I GET THAT.  I GET THAT,

15    YOUR HONOR.

16         BUT I DON'T WANT TO HEAR THAT ARGUMENT, THAT ARGUMENT TO

17    THE JURY, YOU KNOW, IN OPENING.  THAT'S A COMPLETELY UNFAIR

18    ARGUMENT.

19            THE COURT:  UH-HUH.

20            MR. NELSON:  WE KNOW IT'S -- AND AS YOU SAID, THAT'S

21    SOMETHING ELSE FOR THE NEXT CASE.  AND, IN FACT, I BELIEVE THAT

22    PART OF THE REASON WHY YOUR HONOR STAYED THAT CASE IS BECAUSE

23    OF RESULTS IN THE ITC CASE.

24            THE COURT:  YEP.

25            MR. NELSON:  THEREFORE, I DON'T THINK THAT SHOULD BE
```

```
 1        A PART OF THIS CASE, AND THEN THERE WOULDN'T BE ANY NEED FOR

 2     THAT ISSUE.

 3              THE COURT:  ALL RIGHT.

 4              MR. NELSON:  BUT TO SUGGEST THAT -- FOR THEM TO ARGUE

 5     THAT THAT'S CISCO'S MOTIVATION, THEN IT DOES BECOME VERY

 6     RELEVANT BECAUSE HERE IS ANOTHER NEUTRAL TRIBUNAL WHO TOOK

 7     CASES FILED AT THE SAME TIME AND SAID, YEAH, THOSE ARE RELEVANT

 8     CLAIMS.

 9              THE COURT:  UM-HUM.

10              MR. NELSON:  SO THAT'S -- AS LONG AS IT GOES BOTH

11     WAYS, I UNDERSTAND YOUR HONOR'S RULING.

12              THE COURT:  WELL, I GUESS, YOU KNOW, IT'S THE --

13     LOSING BEFORE THE ITC AND HAVING BEEN FOUND TO INFRINGE IS ONE

14     THING.

15           HAVING BEEN LABELED AS HAVING A CULTURE OF COPYING IS

16     BEYOND THE PALE FOR PREJUDICE.

17              MR. NELSON:  AGREED, YOUR HONOR.  I DON'T -- WELL,

18     THAT'S NOT THE PART THAT I'M FOCUSSING ON.

19              THE COURT:  YEAH, THAT'S MY CONCERN.

20              MR. NELSON:  NO, I GET IT.  I GET IT.

21              THE COURT:  YEAH.

22              MR. NELSON:  SO I'M NOT -- WE WOULDN'T EVEN

23     NECESSARILY -- OR MAYBE IT WOULD BE A REDACTION OF WHATEVER THE

24     RULING IS JUST TO SUBSTANTIATE IT.

25              BUT I'VE GOT TO -- I CAN'T HAVE MY HANDS COMPLETELY TIED
```

1    TO ALLOW THEM TO COME IN AND ARGUE TO THE JURY, LADIES AND

2    GENTLEMEN OF THE JURY, YOU KNOW, THIS CASE WASN'T FILED BECAUSE

3    CISCO WANTS TO PROTECT ITS INTELLECTUAL PROPERTY.  THIS CASE

4    WAS FILED BECAUSE CISCO WANTS TO SQUASH A COMPETITOR, AND THEY

5    DO THAT BY FILING BASELESS, COSTLY LITIGATION.

6            THE COURT:  YEAH.  SO, MR. NELSON, THAT'S A

7    LEGITIMATE POINT ABOUT OPENING THE DOOR, AND I ACTUALLY THINK

8    THAT EVEN IF I -- AND I'M INCLINED TO GRANT THIS MOTION NOW,

9    WITH THE PROVISO THAT WE NEED TO HAVE SOME BOUNDARIES ON WHAT

10   IS GOING TO CAUSE THIS TO SWING BACK AT ARISTA.

11           AND SO I DON'T KNOW WHO'S RESPONDING ON ARISTA'S SIDE FOR

12   THIS.

13           YES, MR. SILBERT.

14           MR. SILBERT:  I DIDN'T WANT TO INTERRUPT.  MY

15   APOLOGIES.

16           THE COURT:  I THINK THAT FAIR THAT IF YOU -- I MEAN,

17   IF YOU MAKE BALD STATEMENTS ABOUT THE MOTIVATION OF CISCO AND

18   HOW THIS IS BASELESS LITIGATION, THIS MAY BECOME -- MAYBE ALL

19   OF A SUDDEN THIS BECOMES FAIR GAME.

20           MR. SILBERT:  I JUST WANT TO MAKE SURE I EVEN FOLLOW

21   THAT CHAIN OF LOGIC --

22           THE COURT:  OKAY.

23           MR. SILBERT:  -- TO RESPOND TO IT, BECAUSE ONE THING

24   WE CERTAINLY ARE NOT GOING TO DO WITH THIS JURY IS SAY CISCO

25   FILED A BASELESS ITC ACTION AGAINST ARISTA AND THAT PROVES --

1          THE COURT:  THAT THEY WON.  YOU'RE NOT GOING TO SAY

2     THAT.

3          MR. SILBERT:  ET CETERA, ET CETERA.

4       I MEAN, THE POINT -- WELL, LET'S BE CLEAR.  BUT THE POINT,

5     ONE OF THE POINTS HERE IS THAT THE ITC CASE IS ENTIRELY

6     UNRELATED TO THIS CASE.

7          THE COURT:  YEAH.

8          MR. SILBERT:  IT'S THREE SEPARATE PATENTS, ET CETERA.

9       SO THE EXTENT THERE ARE ARGUMENTS MADE ABOUT -- AND I

10    DON'T KNOW THAT THERE WOULD BE -- BUT TO THE EXTENT THAT THERE

11    ARE ARGUMENTS MADE ABOUT THIS CASE AND CISCO'S MOTIVATION TO

12    BRING THIS CASE, THEY ARE CONFINED TO THIS CASE.

13       WHY CISCO MAY HAVE BROUGHT SOME OTHER SEPARATE CASE

14    AGAINST ARISTA, WHAT THE RESULT WAS IN THAT CASE, ET CETERA, I

15    DON'T THINK THAT'S RELEVANT.

16       I CERTAINLY AGREE WITH YOUR HONOR, IF WE START TALKING

17    ABOUT THE ITC, THE ITC CASE, IF WE START TALKING ABOUT THE ITC

18    CASE, THAT MAY OPEN THE DOOR FOR THEM TO TALK ABOUT IT AND SAY

19    WHAT THEY WANT TO SAY ABOUT THE ITC CASE.

20       BUT THAT'S NOT GOING TO HAPPEN.

21          THE COURT:  ALL RIGHT.

22       SO, MR. NELSON, YOU INDICATE YOU WOULD LIKE TO USE THIS

23    TESTIMONY -- THIS EVIDENCE TO REBUT THE FAIR USE EVIDENCE THAT

24    THIS WAS A NOVEL OR TRANSFORMATIONAL USE, AND THIS IS WHERE WE

25    ACTUALLY WOULD GO DOWN A RABBIT HOLE IF YOU WERE TRYING TO

1    DISTINGUISH AND PROVE THAT THE ITC FINDINGS SOMEHOW NEGATE THE

2    ARGUMENT OF THE COPYRIGHT, THE ALLEGED COPYRIGHT INFRINGEMENT

3    BEING FAIR USE, BECAUSE THEN YOU'RE GOING TO HAVE TO PUT ON ALL

4    THE EVIDENCE OF THE INFRINGEMENT OF THE CLAIMS IN THE ITC

5    ACTION, AND WE'RE JUST NOT GOING DOWN THAT ROAD.

6         MR. NELSON:  WELL, ACTUALLY, I THINK IT'S THE

7    REVERSE, YOUR HONOR, BECAUSE IF THEY MAKE THAT ARGUMENT, THE --

8    IT CERTAINLY IS A RELEVANT RESPONSE THAT, NO, CISCO -- THAT'S

9    PATENTED CISCO TECHNOLOGY THAT YOU USED IN OTHER PARTS OF THE

10   SWITCH, RIGHT?

11        SO THEY'VE ACTUALLY MADE THE STATEMENT THAT EVERYTHING

12   THAT WAS PRESENTED TO THE ITC IN THAT REGARD, YOU KNOW, THE

13   PATENTS, THAT THEY'VE INFRINGED THESE PATENTS, THOSE KINDS OF

14   THINGS, THAT THAT WOULD ALL BE RELEVANT.

15        SO WHAT THIS WOULD DO, THAT THERE WAS THAT FINDING, WOULD

16   SHORTCUT THE AMOUNT OF EVIDENCE THAT WOULD BE PUT IN IN ORDER

17   TO RESPOND TO THAT ARGUMENT HERE, BECAUSE THEN WE WOULD -- WE

18   REALLY WOULD HAVE TO GO DOWN A RABBIT HOLE, OR A RAT HOLE, OR

19   WHATEVER THE ANALOGY IS, BECAUSE WE WOULD -- WE'D HAVE TO TRY

20   THAT CASE AS WELL HERE.  AND SO THAT'S WHAT WE'RE TRYING TO

21   SHORT CUT.

22        NOW, MAYBE THERE'S SOME KIND OF LIMITING INSTRUCTION THAT

23   COULD TAKE CARE OF THAT.  BUT I DO THINK THAT IT'S -- YOU KNOW,

24   IT'S SWORD AND SHIELD.  THAT GETS USED ALL THE TIME.

25        BUT FOR THEIR EXPERT TO STAND UP THERE AND SAY, OH, THIS

```
1    IS TRANSFORMATIVE USE BECAUSE LOOK AT THE ARISTA SWITCHES AND
2    THEY DO ALL THESE OTHER THINGS, WHEN THOSE OTHER THINGS, THAT
3    FUNCTIONALITY, INFRINGES CISCO PATENTS AS WELL AND HAS BEEN
4    DETERMINED TO INFRINGE CISCO PATENTS --
5                THE COURT:  WELL, HERE -- AND I DON'T KNOW THE ANSWER
6    TO THIS, MR. NELSON --
7                MR. NELSON:  SURE.
8                THE COURT:  -- WHAT -- THE FEATURES OF THE SWITCH
9    THAT INFRINGED THE PATENTS MAY BE FEATURES THAT ARE SEPARATE
10   FROM WHAT THE EXPERT IS TESTIFYING TO, AND THAT'S THE PROBLEM I
11   SEE.
12       IT'S VERY EASY TO SAY, TO ASK THE WITNESS, AND ISN'T IT
13   TRUE THAT THE ITC FOUND IN THIS VERY PRODUCT THAT YOU INFRINGE
14   THREE PATENTS OF CISCO'S, WITHOUT THE -- AND THEN WE'RE DOWN --
15   THEN MY CONCERN IS THAT THEN I'M INTO THE ANALYSIS OF WHETHER
16   THE ISSUES IN THE COPYRIGHT CASE TOUCH ON THE INFRINGEMENT THAT
17   WAS FOUND.
18               MR. NELSON:  UNDERSTOOD, YOUR HONOR.
19               THE COURT:  YEAH.
20               MR. NELSON:  AND DO I BELIEVE THAT THERE WOULD HAVE
21   TO BE THAT CONNECTION.
22               THE COURT:  YEAH, BUT --
23               MR. NELSON:  THEY'D HAVE TO LAY THAT FOUNDATION FOR
24   THAT CONNECTION BETWEEN THE TWO, BECAUSE I UNDERSTAND WHAT YOUR
25   HONOR IS SAYING.
```

```
 1              THE COURT:  YEAH.

 2              MR. NELSON:  SO IF THE EXPERT IS SAYING IT'S

 3    TRANSFORMATIVE FOR REASONS X, Y, AND Z, AND THE PATENTS TOUCH

 4    AA, BB, AND CC, THEN THAT WOULD BE KIND OF AN ILLICIT USE BY

 5    ME, I GUESS.  SO I WOULDN'T DO THAT, AND I UNDERSTAND WHAT

 6    YOU'RE SAYING.

 7              THE COURT:  BUT YOU MIGHT, IN GOOD FAITH, NOT BE

 8    DOING THAT, BUT ARISTA MAY FEEL THAT YOU ARE AND THEY HAVE TO

 9    DEFEND THEMSELVES ON IT.

10         SO, YOU KNOW, THIS IS SOMETHING YOU'LL NEVER AGREE ON AND

11    WE'RE GOING TO END UP TAKING THE JURY ON THIS DETOUR THROUGH

12    THE ITC AND A DIFFERENT KIND OF PATENT CASE.

13              MR. NELSON:  BUT AREN'T WE -- IF THEY MAKE THAT

14    ARGUMENT, AREN'T WE GOING TO HAVE TO DO THAT ANYWAY?  TO SAY,

15    WELL, THOSE HAVE ACTUALLY -- THOSE PATENTS HAVE BEEN ASSERTED,

16    CISCO HAS PATENTS COVERING THAT FUNCTIONALITY, RIGHT, AND THOSE

17    PATENTS HAVE -- I MEAN, AT A MINIMUM, WE'D BE THAT YOU'VE BEEN

18    ACCUSED OF INFRINGING.

19         SO WHAT I'M SAYING IS WE ARE -- AND THEN WE WOULD BE

20    LEFT -- SO THEY WOULD BE ABLE TO MAKE THAT ARGUMENT, WE'D BE

21    LEFT WITH JUST HAVING TO SAY THAT IT'S AN ACCUSATION, BUT WE

22    ALL KNOW THAT'S FALSE.  IT ISN'T A MERE ACCUSATION AT THIS

23    POINT.

24              THE COURT:  WELL, NO.  I CERTAINLY WOULD NOT WANT YOU

25    TO HAVE TO SAY SOMETHING IS AN ACCUSATION THAT'S ACTUALLY BEEN
```

```
 1        PROVED.

 2                 MR. NELSON:  RIGHT.

 3                 MR. SILBERT:  IF I MAY, THE ITC -- FIRST OF ALL, IT

 4        MAY HAVE BEEN PROVED.  IT'S CURRENTLY PENDING ON APPEAL, SO

 5        IT'S STILL NOT FINAL.

 6            BUT IT ALSO HAS NO PRECEDENTIAL WEIGHT IN THIS CASE.  SO

 7        PROVED OR NOT, WE COULD ARGUE ABOUT THAT.  IT DOESN'T MATTER.

 8            THE JURY IN THIS CASE WOULD STILL NEED TO DECIDE THOSE

 9        FACTS BASED ON THE RECORD IN THIS CASE THAT'S PRESENTED TO

10        THEM.

11            IF -- IF ARISTA'S EXPERTS OR ARISTA'S WITNESSES TALK ABOUT

12        A FEATURE AND CISCO'S EXPERT OR WITNESSES WANTS TO SAY WE

13        ACTUALLY CAME UP WITH THAT BEFORE YOU DID, LET THEM PUT ON THE

14        EVIDENCE TO PROVE THAT IN THIS CASE.  WE CAN ARGUE ABOUT IT IN

15        THIS CASE.

16            BUT YOUR HONOR IS EXACTLY RIGHT.  IF THEY WAIVE AN ITC --

17        THE JURY DOESN'T KNOW WHAT THE ITC IS -- INFRINGEMENT, WE HAVE

18        TO SPEND 15 HOURS THEN SAYING, NO, NO, NO, IT'S A DIFFERENT

19        PATENT.

20                 THE COURT:  ALL RIGHT.  SO I'M GOING TO GRANT THIS

21        MOTION.

22            LET ME JUST SAY THAT SHOULD WE GET TO THE BENCH TRIAL ON

23        WILLFULNESS, I WOULD NOT EXCLUDE, FOR PRESENTATION TO THE

24        COURT, THE ITC INFORMATION AND -- YOU KNOW, I THINK THAT THAT

25        MAY BE RELEVANT.
```

```
 1           AND OF COURSE THE JURY IS ONLY THE FIRST GATE THAT YOU
 2    PASS THROUGH ON THE ISSUE OF WILLFULNESS.  IT'S STILL
 3    ULTIMATELY A COURT DETERMINATION.
 4           ALL RIGHT.  SO THAT IS GRANTED.
 5              MR. NELSON:  SO JUST TO CLARIFY ON THAT POINT, YOUR
 6    HONOR, AS I UNDERSTOOD, SO IF THEY MAKE THESE ARGUMENTS AND OUR
 7    PEOPLE DO BELIEVE THAT, HEY, THOSE GO TO THE SAME PATENTS, WE
 8    CAN CERTAINLY SAY --
 9              THE COURT:  YOU CAN ADDRESS IT TO ME THEN.
10              MR. NELSON:  -- WE HAVE THE PATENTED TECHNOLOGY.
11    WE'LL SEE HOW THEY PRESENT IT.
12              THE COURT:  TO SAY THAT YOU HAVE PATENTED TECHNOLOGY,
13    ABSOLUTELY.
14           IT'S THE -- THIS MOTION IS NARROW, AND IT'S TO KEEP THE
15    ITC ORDER AND FINDINGS AWAY FROM THE JURY, NOT THE SUBSTANCE --
16    I MEAN, IF YOU WANT TO HAVE A WITNESS SAY THAT THIS IS -- THAT
17    YOU HAVE A PATENT COVERING THE TECHNOLOGY, THAT'S FINE.
18              MR. NELSON:  RIGHT.
19              THE COURT:  YEAH.
20              MR. NELSON:  OKAY.  UNDERSTOOD, YOUR HONOR.
21              THE COURT:  OKAY.  LET'S SEE.  WE'RE ACTUALLY -- LET
22    ME JUST -- THIS NEXT ONE IS GOING TO BE EASY, FROM MY
23    STANDPOINT, AND THEN WE'LL TAKE OUR BREAK.
24           ARISTA'S IN LIMINE MOTION NUMBER 2 IS TO EXCLUDE
25    NON-ASSERTED WORKS OR UNDISCLOSED CONTENTIONS, AND I DON'T HAVE
```

```
 1    ENOUGH SPECIFICITY HERE TO BE ABLE TO EXCLUDE ANYTHING CLEARLY,
 2    SO I'M AFRAID I'M GOING TO HAVE TO DEFER ON THIS.
 3          THE ISSUE RAISED, THE LAW CITED IS REASONABLE, BUT I'M
 4    GOING TO HAVE TO REQUIRE THAT ARISTA POSE ITS OBJECTIONS TO
 5    EVIDENCE THAT WAS NOT PREVIOUSLY DISCLOSED, AND PLAINTIFF WILL
 6    HAVE TO DEMONSTRATE THAT THE EVIDENCE IS CONSISTENT WITH THE
 7    RULE 26 DISCLOSURES OR OTHER DISCLOSURES, WHETHER IT'S IN THE
 8    SECOND AMENDED COMPLAINT OR ELSEWHERE.
 9          BUT I'M AFRAID IT'S JUST TOO GENERAL FOR ME AT THIS POINT.
10          WAS THERE ANYTHING SPECIFIC THAT I MISSED THAT YOU WERE
11    SEEKING TO EXCLUDE?
12          MR. FERRALL:  WE CAN -- WE CAN DISCUSS THE BIG POINT
13    IN DISSECTION, AND ACTUALLY I THINK CISCO'S OPPOSITION AGREED
14    THAT THE ASSERTED WORKS ARE THE 26 REGISTERED WORKS.
15          THE COURT:  YES.
16          MR. FERRALL:  SO IN THAT SENSE, WE DO HAVE SOME
17    CLARITY.
18          THE COURT:  GOOD.  GOOD.
19          MR. FERRALL:  AND WITH RESPECT TO THE ADDITIONAL
20    SIMILARITIES THAT WERE CONTEMPLATED WHEN WE BROUGHT THE MOTION,
21    WE WERE CONCERNED ABOUT NEW, NEW CLAIMS OF COPYING OF MANUALS
22    THAT HAD NOT BEEN ASSERTED BEFORE.
23          THE COURT:  OH, YES.  BUT NOW YOU HAVE THAT.
24          MR. FERRALL:  WELL, NOW THEY'VE SUBMITTED THEIR
25    DISSECTION SUBMISSION OF PROTECTABLE EXPRESSION, AND THOSE ARE
```

```
1      ALL MOOT AT THIS POINT --

2            THE COURT:  GOOD.

3            MR. FERRALL:  -- BECAUSE THEY'VE NARROWED WHAT

4      THEY'RE ACCUSING, SO I THINK THAT'S FINE.

5            THE COURT:  OKAY.  AND MR. PAK OR MR. NELSON, DO YOU

6      AGREE THAT IN TERMS OF THE REGISTRATIONS, YOU'RE LIMITED TO THE

7      SECOND AMENDED COMPLAINT?

8            AND AS TO THE PROTECTED ELEMENTS, THEY ARE IN YOUR

9      SUBMISSION TO THE COURT THAT IS -- I THINK IT'S ECF 552 THAT

10     YOU SUBMITTED.

11           MR. PAK:  YES, YOUR HONOR.

12           AND AS WE DISCUSSED LAST TIME THAT WE MET WITH YOUR HONOR

13     IN CHAMBERS -- AND WE'LL BE COVERING THIS IN OUR FILTRATION

14     BRIEFING COMING UP -- WE'LL EXPLAIN EXACTLY WHAT WE MEAN BY THE

15     REGISTRATION.  THERE WAS A USER INTERFACE THAT WAS REGISTERED

16     AS PART OF THE COPYRIGHT FILINGS, THESE ARE PROTECTABLE

17     ELEMENTS THAT COME FROM THE DIFFERENT USER INTERFACES

18     ASSOCIATED WITH EACH VERSION OF THE OPERATING SYSTEM THAT WAS

19     REGISTERED, THAT'S ALL CONSISTENT WITH OUR THEORIES AND WE'LL

20     ABSOLUTELY PRESENT THOSE AT TRIAL.

21           THE COURT:  OKAY.  SO WITH THOSE GUIDELINES, I AM

22     GOING TO DEFER IT.  I AM NOT RULING IN FAVOR OF IT OR AGAINST

23     IT, BUT THE PARTIES HAVE REACHED THOSE AGREEMENTS.

24           ALL RIGHT.  I THINK THERE'S ENOUGH -- LET'S TAKE A TEN

25     MINUTE BREAK AND THEN WE CAN FINISH UP THE LAST THREE MOTIONS
```

1    AND GET INTO SOME OF THE PRETRIAL ISSUES.

2            THE CLERK:  THIS COURT IS IN RECESS.

3        (RECESS FROM 2:59 P.M. UNTIL 3:11 P.M.)

4            THE COURT:  PLEASE BE SEATED.  WE'RE BACK ON THE

5    RECORD.

6        ALL RIGHT.  LET'S PICK UP WHERE WE LEFT OFF, AND THAT WILL

7    BE IN LIMINE MOTION NUMBER 3, AND THIS IS TO EXCLUDE THE

8    GIANCARLO DECLARATION AND RELATED TESTIMONY.

9        I'VE STRUGGLED WITH THIS ONE.  I AM AWARE OF THE PRETRIAL

10   RULING ON THE PRIVILEGE ISSUE SUPPORTING CISCO'S ASSERTION OF

11   PRIVILEGE, AND I HAVE SOME CONCERNS ABOUT HOW EXTENSIVE THE USE

12   OF THIS DECLARATION WILL BE BECAUSE IT APPEARS THAT IT MAY BE

13   OFFERED FOR THE UNDERLYING TRUTH, WHICH WOULD BE HEARSAY, AND I

14   DON'T THINK THAT'S APPROPRIATE.

15       IT'S -- IT'S NOT OFFERED AS A PARTY ADMISSION, I DON'T --

16   MR. PAK OR MR. NELSON, YOU DIDN'T SUGGEST THAT IN YOUR

17   OPPOSITION.

18           MR. NELSON:  NO.  THAT WOULD KIND OF BE BACKWARDS.

19           THE COURT:  WELL, IT HAD TO BE COVERED BECAUSE HE IS

20   A CURRENT BOARD MEMBER.

21           MR. NELSON:  UNDERSTOOD, YOUR HONOR.

22           THE COURT:  BUT I THINK IT IS -- IT'S CERTAINLY

23   RELEVANT TO THE CONTENTION BY ARISTA THAT CISCO HAS NOT

24   PROTECTED ITS COPYRIGHT, AND EVIDENCE OF THE HUAWEI SUIT IS --

25   AND THE POSITION THAT CISCO ASSERTED AT THE TIME WOULD BE -- IS

1    CERTAINLY RELEVANT.

2        I AM VERY CONCERNED ABOUT DENYING ADEQUATE

3    CROSS-EXAMINATION, YET RECOGNIZING THE PRIOR RULING IN THE

4    CASE, BECAUSE THAT IS NOT A RULING THAT ANYONE ASKED ME TO

5    OVERTURN.  SO IT'S A FINAL RULING ON THE PRIVILEGE.

6        SO IT'S MY -- THAT'S MY DILEMMA, FRANKLY, ON THIS.

7            MR. NELSON:  RIGHT.  AND SO MAYBE I CAN PROBE YOUR

8    HONOR'S CONCERN A LITTLE BIT MORE THERE AND THEN I CAN FOCUS

9    RATHER THAN --

10           THE COURT:  OKAY.

11           MR. NELSON:  -- RAMBLE ON ABOUT THINGS THAT YOU'RE

12    NOT INTERESTED IN.

13       SO IN TERMS OF THE FIRST THING YOU SAID ABOUT OFFERING IT

14    FOR THE PROOF, I'M SENSITIVE TO THAT, AND WE TRIED TO EXPLAIN

15    THAT, AND WHETHER THERE'S A LIMITING INSTRUCTION.

16           THE COURT:  SURE.

17           MR. NELSON:  IT'S NOT BEING OFFERED TO SHOW THAT THE

18    CLI IS, IN FACT, PROPRIETARY; IS, IN FACT, UNIQUE, VALUABLE,

19    THOSE KINDS OF THINGS, BUT THAT THIS WAS A POSITION THAT CISCO

20    TOOK, IT'S DIRECTLY RESPONSIVE TO THEIR ARGUMENT ON TWO FRONTS,

21    THAT, ONE, CISCO DIDN'T CARE, THEY TOOK -- THEY ENCOURAGED THE

22    WORLD AND DIDN'T CARE THAT THIS CLI WAS PROPRIETARY, EVERYBODY

23    USED IT, THAT KIND OF THING.

24       WELL, THIS IS CONTRARY.  THERE WAS AN ACTUAL ACTION

25    STATEMENT, SWORN STATEMENT FILED.

```
 1            IT ALSO GOES TO ANOTHER PRONG OF THE FAIR USE, WHICH IS
 2     THEIR STATEMENT THAT, YEAH, WE THOUGHT YOU DIDN'T CARE ABOUT
 3     IT.
 4            WELL, HERE IS YOUR BOARD MEMBER THAT FILED THIS IN COURT,
 5     OKAY?
 6            ALL RIGHT.  SO THAT, THAT TAKES CARE OF THE PROOF -- OR
 7     TRUTH, NOT PROOF -- THE TRUTH OF THE MATTER, AND I'M FINE IF
 8     YOUR HONOR WANTS TO --
 9              THE COURT:  SO WE CERTAINLY WOULD NEED A LIMITING
10      INSTRUCTION IF I ALLOWED IT AT THAT LEVEL.
11            YOU KNOW, I'M A LITTLE CONCERNED WITH HOW YOU USE OR FIT
12      IN THIS ISSUE OF MR. GIANCARLO BEING A BOARD MEMBER.  THAT'S A
13      TRUTH STATEMENT THAT HE'S AN ARISTA BOARD MEMBER, I RECOGNIZE
14      THAT.
15            BUT I DON'T WANT TO SUGGEST TO THE JURY THAT THIS IS
16      RELEVANT BECAUSE OF HIS BOARD MEMBER STATUS.  NOW THAT -- WE
17      HAVE TO UNCOUPLE THOSE.
18              MR. NELSON:  CORRECT.  SO AS TO THE FIRST PART, I
19      THINK THAT THAT'S, THAT'S -- MEANING WHAT POSITION CISCO HAS
20      TAKEN IN THE PAST IN RESPONSE TO THE ARGUMENT THEY MADE, THAT'S
21      AN EASY ONE BECAUSE YOU WOULDN'T EVEN HAVE TO MENTION THAT HE'S
22      A BOARD MEMBER, RIGHT?  THAT WAS DONE AT THE TIME.
23            THE SECOND ONE HAS TO GO TO HIS -- THEIR RELIANCE AND
24      KNOWLEDGE OF THIS BEING DONE BEFORE, RIGHT?
25              SO I -- THE FACT THAT HE'S A BOARD MEMBER IS RELEVANT TO
```

```
 1        THE FACT OF NOTICE OR KNOWLEDGE ON THE PART OF --

 2              THE COURT:  HOW LONG WAS -- WHEN DID HE COME ONTO THE

 3        BOARD?

 4              MR. NELSON:  I BELIEVE --

 5              MR. FERRALL:  2013, YOUR HONOR, TEN YEARS AFTER HE

 6        SIGNED THIS DECLARATION, AND --

 7              MR. PAK:  HE WAS ALSO THE PRIMARY -- I BELIEVE HE WAS

 8        ONE OF THE INVESTORS IN ARISTA.

 9              MR. FERRALL:  NO.

10              MR. PAK:  GIANCARLO.

11              MR. FERRALL:  NO, HE'S NOT.  NOT EARLY.  ACTUALLY,

12        NOT AT ALL.  HE HAS A NOMINAL SHARE OF STOCK.

13              THE COURT:  SO YOU'RE SUGGESTING THAT AS OF 2013,

14        HAVING A BOARD MEMBER WHO SIGNED THIS DECLARATION WOULD HAVE

15        BROUGHT KNOWLEDGE TO CISCO -- TO ARISTA OF CISCO'S POSITION

16        REGARDING ITS CLI?

17              MR. NELSON:  WHAT I'M SAYING IS THAT'S CERTAINLY, I

18        THINK, A REASONABLE INFERENCE THAT I CAN ARGUE.  HE CAN TESTIFY

19        THAT HE DOESN'T REMEMBER IT.

20              THE COURT:  UM-HUM, YES.

21              MR. NELSON:  THAT'S FINE.  I DON'T HAVE ANY PROBLEM

22        WITH THAT.

23              THE COURT:  SURE.

24              MR. NELSON:  AND THAT IS WHAT IT IS, WHICH I THINK IS

25        WHAT MR. FERRALL IS SUGGESTING, AND I'M NOT SAYING THAT HE
```

```
 1        SHOULD BE ESTOPPED OR ANYTHING ALONG THOSE LINES.

 2            BUT I DO THINK -- AS TO THE SECOND PIECE, I DON'T THINK

 3    THAT GOES SO MUCH TO THE ADMISSIBILITY OF THE DOCUMENT ITSELF

 4    BECAUSE I THINK WITH THAT LIMITING INSTRUCTION, THE FIRST PIECE

 5    IS THERE.

 6            THE SECOND ARGUMENT, IN TERMS OF THE NOTICE, I'M PUTTING

 7    THAT OUT AS AN ADDITIONAL REASON WHY IT COULD BE ADMITTED

 8    BECAUSE I DO THINK THAT IT IS A REASONABLE INFERENCE FOR US TO

 9    ARGUE ON THOSE FACTS.

10            THAT MAY NOT -- I MAY DECIDE NOT TO DO THAT IN CLOSING

11    ARGUMENT BECAUSE HE MAY GET UP THERE AND TESTIFY VERY CREDIBLY

12    THAT, I DON'T REMEMBER ANY OF THIS STUFF.  I'VE SIGNED 500

13    DECLARATIONS.

14            RIGHT?  THAT COULD BE.

15                THE COURT:  THAT MY LAWYER WROTE.

16                MR. NELSON:  YEAH, IT COULD BE.

17            SO I THINK THAT DEALS WITH THE FIRST PART.

18            NOW, THEN YOUR HONOR MENTIONED THE RULING AND THE

19    PRIVILEGE ISSUE, AND THAT'S WHERE I REALLY NEED GUIDANCE IN

20    ORDER TO ADDRESS BECAUSE I DON'T WANT TO JUST RAMBLE ON.  BUT I

21    WOULD RATHER HEAR YOUR HONOR'S SPECIFIC CONCERNS.

22                THE COURT:  IT JUST WAS INTERESTING TO ME THAT IN

23    ARISTA'S MOTION, THEY REFERRED ME TO MR. GIANCARLO'S TESTIMONY,

24    AND HE TESTIFIED THAT WHEN HE SIGNED THE DECLARATION, HE

25    BELIEVED CISCO'S CLI WAS AN OPEN INDUSTRY STANDARD AND WAS NOT
```

```
 1        COPYRIGHTABLE.  SO THAT SEEMS TO BE HELPFUL TO ARISTA.

 2                MR. FERRALL:  WELL, YOU'RE RIGHT, YOUR HONOR, AND --

 3                THE COURT:  AND SO I DON'T KNOW WHY YOU EVEN WANT TO

 4        PROBE THE BASIS FOR IT.  I'D LEAVE IT RIGHT THERE.  BUT I DON'T

 5        KNOW.

 6                MR. NELSON:  I KIND OF WANT TO, BUT --

 7                MR. FERRALL:  CAN I -- WELL, THAT'S EXACTLY WHAT

 8        WE'RE, WHAT WE'RE LOOKING AT, AND THAT'S WHAT WILL HAPPEN, I

 9        SUPPOSE.

10           BUT CAN I CLARIFY?

11                THE COURT:  SURE.

12                MR. FERRALL:  THERE'S A REALLY IMPORTANT FACT HERE

13        THAT HAS GONE MISSING IN THE CONVERSATION.

14                THE COURT:  OKAY.

15                MR. FERRALL:  IT'S GOOD THAT WE'RE BEYOND THE HEARSAY

16        ISSUE.  IT'S NOT OFFERED FOR THE TRUTH, AND THAT'S GOOD.

17           BUT THE -- THE DOCUMENT IN QUESTION WAS UNDER SEAL IN THE

18        EASTERN DISTRICT OF TEXAS, WHERE CISCO FILED THIS CASE, FOR 13

19        YEARS, REVEALED ONLY IN MARCH OF 2016.

20           SO WE'RE TALKING ABOUT SOMETHING THAT NO ONE IN THE WORLD,

21        OTHER THAN CISCO AND CISCO'S OPPOSING COUNSEL IN THE HUAWEI

22        CASE, SAW FOR 13 YEARS.  THERE'S ABSOLUTELY NO RELEVANCE TO

23        THAT DOCUMENT BEING FILED UNDER SEAL.

24           OBVIOUSLY THE TRUTH OF ITS CONTENTS CAN BE PROVEN BY CISCO

25        WITH ANY WITNESS IT WANTS.
```

```
 1            THE FACT THAT IT SUED HUAWEI IN TEXAS 13 YEARS AGO, THAT

 2    CAN BE PROVEN.

 3            BUT THE FACT THAT THIS DOCUMENT WAS FILED UNDER SEAL HAS

 4    NO RELEVANCE WHATSOEVER.

 5                THE COURT:  WELL, THE FACT THAT IT WAS UNDER SEAL IS

 6    NOT -- I DON'T KNOW WHAT THE RELEVANCE OF THAT IS.

 7                MR. NELSON:  CORRECT.

 8                MR. FERRALL:  BECAUSE -- WELL, BECAUSE THE DOCUMENT

 9    WAS NOT KNOWN TO -- THE DOCUMENT DOES -- IS NOT A PROCLAMATION

10    BY CISCO OF ITS CONTENTS.  IT WAS SEALED.

11                THE COURT:  WELL, I'M SORRY.  OF COURSE IT'S A

12    PROCLAMATION BY CISCO, BUT A PROCLAMATION IN THE CONTEXT OF A

13    LAWSUIT WHERE IT WAS GIVEN PROTECTION.

14                MR. NELSON:  CORRECT.

15                MR. FERRALL:  CORRECT.  AND, THEREFORE, NO ONE ELSE

16    IN THE WORLD, INCLUDING ARISTA, OR ANY OF CISCO'S COMPETITORS,

17    KNEW WHAT CISCO SAID IN THAT DOCUMENT.

18                THE COURT:  BUT I THINK YOUR -- I DON'T THINK IT'S

19    BEING OFFERED FOR THAT BIGGER PURPOSE.  THIS IS OFFERED TO

20    REBUT TESTIMONY THAT ARISTA IS PLANNING TO BRING THAT CISCO

21    DIDN'T PROTECT ITS COPYRIGHT AND IT KNEW ITS COMPETITORS WERE

22    USING ITS COPYRIGHT MATERIALS RIGHT AND LEFT AND DID NOTHING,

23    SO THIS LAWSUIT -- THE HUAWEI LAWSUIT IS EVIDENCE OF IT, AND

24    THIS DECLARATION SPEAKS DIRECTLY TO THE ISSUE OF -- AND IT ONLY

25    GOES SO FAR AS TO SAY THIS IS WHAT CISCO REPRESENTED TO THE
```

```
 1        COURT IN THAT LAWSUIT.  THAT'S ALL IT'S COMING IN AS, NOT THAT

 2        IT'S TRUE OR NOT.  THIS IS WHAT IT REPRESENTED.

 3               MR. NELSON:  CORRECT.

 4               THE COURT:  SO THAT'S A -- IT'S PRETTY NARROW.

 5          I UNDERSTOOD, MR. NELSON, THAT'S THE SCOPE OF WHAT YOU'RE

 6        OFFERING IT FOR.

 7               MR. NELSON:  EXACTLY.  THAT -- IT'S DIRECTLY

 8        RESPONSIVE TO THAT.

 9          WE'RE NOT SAYING THAT, OH, THIS PUT THE WORLD ON NOTICE.

10               THE COURT:  RIGHT.

11               MR. NELSON:  I MEAN, I THINK EVEN IF IT WAS A PUBLIC

12        LAWSUIT, QUITE HONESTLY, THAT WOULD BE A TENUOUS ARGUMENT.

13        IT'S NOT THAT PEOPLE COMB THROUGH THE RECORDS, EVEN THOUGH

14        THEY'RE TECHNICALLY PUBLIC, SO I THINK THAT WOULD BE FACTUALLY

15        SOMEWHAT DISINGENUOUS TO MAKE.  SO THAT'S NOT WHAT I'M SAYING,

16        AND IF THAT ADDRESSES THE CONCERN, I UNDERSTAND WHAT HE'S

17        SAYING.

18          BUT WE'RE NOT TRYING TO ARGUE, THIS SHOWS THAT CISCO PUT

19        THE WORLD ON NOTICE.  WHAT THIS SHOWS IS DIRECTLY RESPONSIVE TO

20        THEIR ARGUMENT THAT CISCO BELIEVED THAT THIS WASN'T

21        PROPRIETARY, THAT IT WAS OPEN AND THAT EVERYBODY COULD USE IT.

22               NO.  IT -- WE FILED A LAWSUIT AND TOLD THE COURT

23        SPECIFICALLY, AS TO THE CLI, IT'S PROPRIETARY, WE BELIEVE IT'S

24        VALUABLE TO US, WE BELIEVE THAT IT HAS THESE THINGS, AND THAT'S

25        WHAT WE TOLD THE COURT.
```

1        IF THEY WANT TO BRING THESE OTHER THINGS OUT, THAT IT WAS

2   FILED UNDER SEAL -- I'M NOT SURE WHAT THE RELEVANCE OF THE

3   EASTERN DISTRICT OF TEXAS IS, I HOPE THAT'S NOT PEJORATIVE --

4   BUT IF THEY WANT TO BRING THOSE THINGS OUT, THEY CAN.

5        BUT THAT DOESN'T HAVE ANY RELEVANCE TO WHAT I'M OFFERING

6   IT FOR.

7            THE COURT:  SO WAS THIS DOCUMENT UNSEALED FOR ALL

8    PURPOSES, OR IS IT UNDER SEAL IN THIS CASE AS WELL?

9            MR. PAK:  IT'S UNSEALED.

10           THE COURT:  IT'S UNSEALED?

11           MR. PAK:  YES.

12           THE COURT:  THAT'S GOOD.

13           MR. FERRALL:  SO, YOUR HONOR, THEY -- THEY CHOSE

14   STRATEGICALLY TO UNSEAL THE DOCUMENT 13 YEARS LATER, AND

15   THEY'RE ENTITLED TO DO SO.

16       BUT THIS IS WHAT THEY SAID IN THEIR OPPOSITION ABOUT WHY

17   IT'S BEING OFFERED.  PAGE 4, LINES 9 THROUGH 11.  "CISCO

18   INTENDS TO USE THE GIANCARLO DECLARATION TO SHOW THAT A CURRENT

19   ARISTA BOARD MEMBER WAS AWARE OF AND PERSONALLY INSTRUMENTAL TO

20   PRIOR EFFORTS BY CISCO TO PROTECT ITS PROPRIETARY CLI USER

21   INTERFACE FROM COPYING."

22       THEY HAVE MADE THEIR INTENTION VERY CLEAR, AND IT'S

23   OBVIOUS, YOUR HONOR.  THIS DECLARATION THAT NONE OF THE REST OF

24   THE NETWORKING INDUSTRY KNEW ABOUT, AND CERTAINLY ARISTA, THEY

25   HAVE NO -- THERE'S NO OFFER THAT ARISTA KNEW ANYTHING ABOUT

1    THIS DECLARATION BEFORE THEY UNSEALED IT IN 2016, SO IT'S VERY

2    CLEAR THAT THEIR INTENTION IS TO IMPUTE THIS DECLARATION TO

3    ARISTA BECAUSE MR. GIANCARLO IS A CURRENT BOARD MEMBER.

4         THE COURT:  SO THAT WE'RE NOT GOING TO DO.  AND

5    FRANKLY, THE FACT THAT IT WAS UNDER SEAL WOULD INFORM ME THAT

6    MR. GIANCARLO WAS NOT IN A POSITION TO DISCLOSE THE INFORMATION

7    TO ARISTA.

8         MR. NELSON:  THAT I UNDERSTAND, YOUR HONOR.

9         THE COURT:  YEAH.  SO I THINK THIS IS A -- FIRST OF

10    ALL, THIS -- YOU CANNOT INFER -- YOU CANNOT DIRECT THIS

11    KNOWLEDGE TO ARISTA.  THAT WOULD NOT BE ALLOWED BECAUSE THIS

12    WAS A SEALED DOCUMENT.

13         MR. NELSON:  WITHOUT MORE, RIGHT?  THERE --

14         THE COURT:  NOT THROUGH THE DOCUMENT ITSELF.

15         MR. NELSON:  CORRECT.  I UNDERSTAND THAT, YOUR HONOR.

16     BUT WITHOUT MORE.  THERE ARE ADDITIONAL BLOGS THAT THE

17    GENTLEMEN ENTERED INTO AND THINGS LIKE THAT, TALKING

18    SPECIFICALLY ABOUT THIS LITIGATION, THE HUAWEI LITIGATION I'M

19    TALKING ABOUT.

20     SO I UNDERSTAND WHAT YOUR HONOR IS SAYING.  IF THAT WERE

21    IT, THEN, YOU KNOW, THAT'S NOT ENOUGH I BELIEVE IS WHAT YOU'RE

22    SAYING.

23         THE COURT:  OKAY.

24         MR. NELSON:  ALL I'M SAYING IS THAT I BELIEVE THERE

25     WILL BE MORE.

```
 1              MR. FERRALL:  WELL, THE --

 2              THE COURT:  SO LET ME BE CLEAR.  I AM GOING TO DENY

 3    THE MOTION.  I WILL ALLOW A LIMITING INSTRUCTION ON THE HEARSAY

 4    ISSUE, THAT IT IS NOT BEING OFFERED FOR THE TRUTH, AND I WILL

 5    EXCLUDE CISCO FROM ARGUING, OR INFERRING THROUGH OTHER

 6    WITNESSES' TESTIMONY, ANY ATTRIBUTION OF THE KNOWLEDGE FROM

 7    THIS DECLARATION TO ARISTA, BECAUSE MY VIEW IS IF THIS WAS A

 8    SEALED DOCUMENT, MR. GIANCARLO WAS NOT IN A POSITION TO DIVULGE

 9    THIS INFORMATION AND YOU HAVE NO EVIDENCE THAT HE, IN FACT,

10    DID.

11              MR. NELSON:  WELL, THAT'S WHAT I SAID, WITHOUT MORE,

12    RIGHT?

13              THE COURT:  WELL, THEN IT'S SEPARATE FROM THE

14    DECLARATION.

15              MR. NELSON:  CORRECT, YOUR HONOR.

16              THE COURT:  SO YOU WILL HAVE TO ADDRESS THAT --

17    DISCLOSE THAT AND ADDRESS THAT TO ME IN ADVANCE.

18         BUT THAT IS -- IT'S A PARTIAL GRANT.  I'M NOT GOING TO

19    ALLOW THE ATTRIBUTION TO ARISTA.  I'M NOT GOING TO ALLOW IT TO

20    BE OFFERED FOR THE TRUTH OF THE MATTER.

21         WHETHER YOU NEED A LIMITING INSTRUCTION FOR BOTH OF THOSE

22    OR NOT, I'LL LET YOU THINK ABOUT THAT AND GIVE ME SOMETHING

23    THAT IS RELATIVELY NEUTRAL, IF THAT'S POSSIBLE.

24         BUT I'M CERTAINLY GLAD TO GIVE A LIMITING INSTRUCTION ON

25    THAT AS WELL.
```

```
 1          MR. FERRALL:  SO, YOUR HONOR, CAN I SEEK A

 2    CLARIFICATION ABOUT -- GIVEN THAT THE SOLE PROPOSAL FOR ITS

 3    RELEVANCE IS MR. GIANCARLO'S AWARENESS --

 4          THE COURT:  NO, NO, NO, NOT MR. GIANCARLO'S

 5    AWARENESS.  IT'S CISCO'S POSITION REGARDING ITS OWN PROTECTION

 6    OF ITS OWN COPYRIGHT.

 7          THIS IS IMPEACHMENT OF THE TESTIMONY ANTICIPATED, THAT

 8    CISCO HAS NOT PROTECTED ITS COPYRIGHT, HAS LET EVERYBODY USE

 9    IT.

10          IT'S BEING ASKED TO COME IN AS IMPEACHMENT.  IT'S BEING

11    ASKED TO COME IN AS A PRIOR STATEMENT OF CISCO.

12          MR. NELSON:  CORRECT.

13          THE COURT:  SO I'M CUTTING OFF THE CONNECTION TO

14    ARISTA.  THAT I'M NOT ALLOWING.

15          MR. FERRALL:  SO THEN MR. GIANCARLO DOESN'T NEED

16    TO -- THERE SHOULD BE NO, I SUPPOSE, SUGGESTION THAT

17    MR. GIANCARLO IS AN ARISTA BOARD MEMBER.  IS THAT FAIR?

18          THE COURT:  WELL, IT MAY BE RELEVANT TO OTHER ISSUES.

19    I DON'T KNOW.

20          MR. FERRALL:  WELL, I MEAN, I'M CONCERNED BECAUSE,

21    YOUR HONOR, I THINK IT'S IMPOSSIBLE FOR MR. GIANCARLO TO BE ON

22    THE STAND, HAVE IT BROUGHT OUT THAT HE'S AN ARISTA BOARD

23    MEMBER, AND THEN HAVE IT BROUGHT OUT THAT HE SIGNED THIS

24    DECLARATION 13 YEARS AGO AND NOT HAVE THE JURY IMPUTE THAT TO

25    ARISTA.
```

```
 1              AND IN PARTICULAR, WHAT I THINK -- AND THIS IS THE SECOND

 2    PART OF OUR MOTION -- WHAT WOULD BE PARTICULARLY IMPROPER IS

 3    THEN FOR CISCO TO GO AHEAD AND INSTRUCT MR. -- OR PRECLUDE THE

 4    FULL STATE OF MR. GIANCARLO'S STATE OF MIND TO COME INTO THE

 5    CASE, INCLUDING THAT WHICH WAS --

 6              THE COURT:  BUT YOU HAVE THE TESTIMONY THAT HE DIDN'T

 7    BELIEVE IT WAS PROTECTED.

 8              MR. FERRALL:  WELL, AND -- AND HE WAS NOT -- HE WAS

 9    NOT ALLOWED TO EXPLAIN WHAT THAT WAS BASED UPON.

10              THE COURT:  WELL, I DON'T EVEN KNOW IF YOU NEED THAT.

11    ONCE HE SAID IT'S NOT -- I DIDN'T THINK IT WAS PROTECTED THEN,

12    AND I DON'T THINK IT'S PROTECTED NOW.

13              MR. FERRALL:  BUT, YOUR HONOR, I THINK --

14              THE COURT:  I MEAN, THERE MIGHT BE OTHER EVIDENCE, IF

15    THERE WAS NO PRIVILEGE, THERE MIGHT BE TESTIMONY THAT NOBODY IN

16    THE COMPANY THOUGHT IT WAS.  I MEAN, OBVIOUSLY THAT'S WHAT

17    YOU'D BE HOPING FOR, BUT WE DON'T KNOW.

18              MR. FERRALL:  AND WE DON'T KNOW THAT, EITHER.

19         BUT THE POINT IS, IF HE'S GOING TO BE ON THE STAND AND I

20    CAN -- WE CAN BE SURE THAT CISCO IS GOING TO TRY TO PORTRAY HIM

21    AS AN ARISTA BOARD MEMBER WHO HAS THIS KNOWLEDGE OF THIS FACT

22    THAT WAS SUBMITTED UNDER SEAL 13 YEARS AGO, HIS FULL STATE --

23    THE JURY DESERVES TO HEAR HIS FULL STATE OF MIND.

24              THE COURT:  SO I THINK THEY WILL HEAR THE FULL STORY

25    BECAUSE I THINK THAT WHEN HE IDENTIFIES WHO HE IS, I THINK IT'S
```

1    APPROPRIATE TO LET THE JURY KNOW HE'S A BOARD MEMBER.

2        I THINK IT IS APPROPRIATE TO HAVE HIM AUTHENTICATE A

3    DECLARATION HE SIGNED 13 YEARS AGO WITH THIS REPRESENTATION OF

4    WHAT CISCO SUBMITTED TO THE COURT IN THAT CASE.

5        IT'S NOT BEING OFFERED FOR THE TRUTH.  WE TELL THE JURY

6    THAT'S NOT WHY IT'S BEING OFFERED.

7        WE TELL THE JURY, THIS IS NOT A STATEMENT THAT IS

8    ATTRIBUTABLE TO MR. -- TO ARISTA.  YOU CAN DRAW OUT FROM

9    MR. GIANCARLO THAT IT WAS SUBMITTED UNDER SEAL BY THE JUDGE --

10   I MEAN, YOU DON'T HAVE TO SAY BY THE PARTIES.  THE COURT

11   APPROVED IT -- AND THAT HE DID NOT SHARE THE INFORMATION.

12       BUT THEN YOU CAN GET INTO THIS DEPOSITION TESTIMONY THAT,

13   I MEAN, FRANKLY, IT LOOKS PRETTY GOOD ON ITS FACE FOR YOUR

14   SIDE.

15       SO I THINK -- WHY DON'T YOU DRAW UP THAT SPECIAL

16   INSTRUCTION, AND I THINK THAT SHOULD TAKE CARE OF IT.

17           MR. FERRALL:  OKAY, THANK YOU.

18           THE COURT:  I KNOW YOU'D LIKE SOMETHING BROADER,

19   BUT --

20           MR. NELSON:  THANK YOU, YOUR HONOR.

21           THE COURT:  AND THEN IN LIMINE MOTION NUMBER 4, TO

22   EXCLUDE TESTIMONY FROM LATE DISCLOSED WITNESSES, AND HERE WE

23   HAVE -- THE WITNESSES ARE JEFF REED, MALLUN YEN, DAVID WARD,

24   DYLAN CANNON, FRANK PALUMBO, AND CHRISTIAN BAKAN.

25           LET ME START OFF WITH CANNON, PALUMBO AND BAKAN.  I THINK

1    THERE'S BEEN AGREEMENT THAT THEY WILL ONLY TESTIFY TO THE

2    EXTENT OF THEIR 30(B)(6) TESTIMONY, AND THAT'S, THEREFORE,

3    RESOLVED.

4           MR. PAK:  YES, YOUR HONOR.  AND ANY -- OBVIOUSLY ANY

5    QUESTIONS THAT WERE ASKED OF THEM AS FOLLOW-UP QUESTIONS IN THE

6    DEPOSITIONS.  BUT YES, WE'VE AGREED TO THAT AND THAT MOOTS THE

7    MOTION.

8           THE COURT:  OKAY.

9           MS. MCCLOSKEY:  YOUR HONOR, JUST TO CLARIFY, I

10   UNDERSTAND THAT'S ANY TESTIMONY THEY GAVE, NOT JUST KIND OF

11   GENERALLY QUESTIONS THEY WERE ASKED.

12          THE COURT:  LIMITED TO THE TESTIMONY THEY GAVE.

13          MR. NELSON:  CORRECT.

14          THE COURT:  YES.  ALL RIGHT.

15      AND SO I WILL -- I WILL GRANT THE MOTION WITH THAT

16   DESCRIPTION OF IT, THAT THEY -- I'M EXCLUDING ANY TESTIMONY

17   BEYOND THEIR TESTIMONY IN THEIR 30(B)(6) DEPOSITIONS.

18      THEN WE MOVE ON TO THE OTHER THREE, REED, YEN, AND WARD.

19   I'M INCLINED TO GRANT THIS MOTION.  IT SEEMS CLEAR THAT THEY

20   WERE LATE DISCLOSED, AND -- I LOOKED -- I KNOW, MR. PAK, YOU

21   ARGUE THAT THEIR IDENTITY WAS SUFFICIENTLY KNOWN TO ARISTA IN

22   ADVANCE.  YOU POINT TO THE HUNDREDS OF REFERENCES TO THEIR

23   NAMES THROUGHOUT THE DOCUMENTS PRODUCED AND, I DON'T KNOW,

24   THAT'S NOT -- THAT'S NOT A HAYSTACK I WOULD HAVE BEEN LOOKING

25   FOR ALL THOSE NEEDLES IN.  SO THAT DIDN'T -- THAT DIDN'T REALLY

```
 1    PERSUADE ME.

 2        I ALSO REVIEWED THE NUANCE COMMUNICATIONS CASE WHERE THE

 3    COURT INDICATED MERE MENTION OF A NAME AT A DEPOSITION IS NOT

 4    SUFFICIENT, AND THE VIESTE CASE, V-I-E-S-T-E CASE, AND I'M JUST

 5    THINKING THESE ARE TOO LATE.

 6            MR. PAK:  YOUR HONOR, JUST IF I COULD -- ON THE

 7    QUESTION OF TIMING, YOUR HONOR --

 8            THE COURT:  YEAH.

 9            MR. PAK:  -- UNLIKE THE OTHER WITNESSES THAT WE

10    DISCUSSED WITH RESPECT TO OUR MOTION, THESE WITNESSES WERE

11    DISCLOSED THREE WEEKS BEFORE FACT DISCOVERY CUTOFF.  THEY STILL

12    HAD FOUR DEPOSITIONS SLOTS REMAINING.

13        WE ALSO DISCUSSED AT THE TIME, YOUR HONOR, BACK AND

14    FORTH -- THIS POSSIBILITY THAT BOTH SIDES HAD LOTS OF WITNESSES

15    ON THEIR WITNESS LIST.

16            THE COURT:  BUT THIS IS A RULE 26 ISSUE.  IT'S NOT

17    A --

18            MR. PAK:  WITH RESPECT TO?

19            THE COURT:  TO IDENTIFYING THESE AS INDIVIDUALS WHO

20    HAVE EVIDENCE RELEVANT TO THE CASE.

21            MR. PAK:  YES.  SO WE MADE THAT RULE 26 DISCLOSURE,

22    YOUR HONOR, 30 --

23            THE COURT:  THREE WEEKS BEFORE.

24            MR. PAK:  -- THREE WEEKS BEFORE FACT DISCOVERY

25    CUTOFF.
```

1        THE COURT:  RIGHT.  BUT YOU'VE KNOWN ABOUT THESE

2    PEOPLE.  THESE WERE -- ALL THREE OF THESE ARE YOUR CURRENT

3    EMPLOYEES.

4        MR. PAK:  THAT'S CORRECT, YOUR HONOR.  SO THEY WILL

5    ADDRESS ISSUES THAT HAVE COME THROUGH ALL THE VARIOUS MOTIONS

6    AND ALL THE ISSUES THAT WE'VE BEEN LITIGATING.

7        WITH RESPECT TO MALLUN YEN, FOR EXAMPLE, SHE IS GOING TO

8    TESTIFY, IF PERMITTED, ABOUT THE STANFORD LICENSE AGREEMENT.

9        MR. -- RIGHT.  AND ALSO, MS. -- ALSO, MS. YEN, YOUR HONOR,

10   IS NO LONGER AT CISCO.

11       THE COURT:  THAT I -- AND I MISSPOKE.

12       MR. PAK:  YES.

13       THE COURT:  I HAVE THAT MARKED.  I KNOW SHE'S NOT

14   WITH YOU ANYMORE.

15       MR. PAK:  BUT SHE WAS A CISCO EMPLOYEE, YOUR HONOR.

16       MR. REED AND MR. WARD HAVE VERY SPECIFIC KNOWLEDGE WITH

17   RESPECT TO SPECIFIC THINGS THAT HAVE BEEN ALLEGED.  FOR

18   EXAMPLE, THERE ARE ALLEGATIONS THAT ARISTA HAS MADE THAT

19   THERE'S A SERIES OF PRODUCTS CALLED TAIL-F AND PROGRAMMATIC

20   ACCESS PRODUCTS WHERE HE HAS KNOWLEDGE OF THAT.

21       JEFF REED OVERSEES THE DEVELOPMENT OF SOME OF THE OLDER

22   NEXUS LINE OF PRODUCTS WHICH HAVE BECOME AN ISSUE IN THE CASE

23   AS WE TALK ABOUT THE DAMAGES SIDE OF THE CASE.

24       WE HAVE A DUTY TO SUPPLEMENT, YOUR HONOR, BUT THIS CASE

25   HAS BEEN EVOLVING OVER TIME.  WE DID PROVIDE THEM THREE WEEKS'

```
1    NOTICE.  WE'VE OFFERED THEM -- AND THE OFFER STILL STANDS

2    TODAY, YOUR HONOR -- TO THE EXTENT THAT YOUR HONOR IS GOING TO

3    ALLOW THEM TO BRING IN THOSE TWO OTHER WITNESSES WITH ONE HOUR

4    DEPOSITIONS, WE'VE MADE THAT OFFER.

5              THE COURT:  I KNOW YOU DID.  BUT I FOUND SUBSTANTIAL

6    JUSTIFICATION DUE TO YOUR LATE DISCLOSURE OF THE CUSTOMERS.

7         I'M NOT SEEING SUBSTANTIAL JUSTIFICATION HERE.  YOU'RE

8    ACTUALLY -- YOUR ARGUMENT HERE WAS THAT THESE INDIVIDUALS WERE

9    CLEARLY IDENTIFIED THROUGH THE OTHER DISCOVERY.

10             MR. PAK:  YES.

11             THE COURT:  I LOOKED AT THAT OTHER DISCOVERY.  I

12   LOOKED AT THE WAY YOU CHARACTERIZED IT, AND I WASN'T PERSUADED.

13        WITH MS. YEN, HER NAME -- A MERE 67 TIMES, I THINK YOU

14   SAID.  BUT FRANKLY, I DON'T KNOW WHO CAN QUANTIFY THE NUMBER OF

15   DOCUMENTS, BUT I THINK THAT IS A VERY SMALL NEEDLE IN THIS

16   HAYSTACK.

17             MR. PAK:  I APPRECIATE IT, YOUR HONOR.  SUBMITTED.

18             THE COURT:  ALL RIGHT.  ANYTHING ELSE?

19             MS. MCCLOSKEY:  NO, YOUR HONOR.

20             THE COURT:  ALL RIGHT.  I AM GOING TO GRANT THE

21   MOTION UNDER RULE 37 AS TO REED, YEN, AND WARD AS NOT HAVING

22   BEEN -- HAVING BEEN KNOWN TO AND EASILY AVAILABLE TO CISCO AT

23   LEAST A YEAR IN ADVANCE AND NOT SUBJECT TO PROPER DISCLOSURE

24   UNDER RULE 26.

25        OKAY.  AND OUR LAST ONE, NUMBER 5, TO EXCLUDE EVIDENCE AND
```

```
 1    ARGUMENT REGARDING DOCUMENTS LABELED AS CONFIDENTIAL TO CISCO.

 2         SO THIS SEEMS LIKE A REALLY STICKY WICKET TO ME.  IT DOES

 3    SEEM THAT THE DOCUMENTS ARE RELEVANT TO WILLFULNESS UNDER THE

 4    PATENT CLAIM, AND THAT DOES GO TO THE JURY.

 5         IT SEEMS, THOUGH, THAT SOME OF THIS MAY BE -- THIS MAY BE

 6    SMALL IN SCOPE, AND THAT'S ACTUALLY MY EXPECTATION IS THAT FOR

 7    THE DOCUMENTS -- AND THIS MAY COME BACK TO MS. ANDREW -- THAT

 8    HAVE BEEN FOUND FLOATING OUT THERE PUBLICLY, THAT THAT CAN BE

 9    PRESENTED IN A MEET AND CONFER AND THEN THESE DOCUMENTS -- WE

10    DON'T EVEN HAVE TO WASTE OUR TIME WITH CROSS-EXAMINATION AND

11    IMPEACHMENT OF THE WITNESSES.

12         I'M -- THERE WAS A REQUEST TO, I THINK, ACTUALLY REDACT

13    THE CONFIDENTIAL FROM THE DOCUMENTS, AND I DON'T KNOW ABOUT

14    THAT.  I HADN'T REALLY GOTTEN THERE.

15         BUT I'LL HEAR FROM ARISTA ON THIS.  I WAS INCLINED TO DENY

16    THIS MOTION.

17             MR. SANTACANA:  THANK YOU, YOUR HONOR.  I WANT TO

18    MAKE SURE THAT WE ALL UNDERSTAND WHAT WE'RE TALKING ABOUT.

19             THE COURT:  OKAY.

20             MR. SANTACANA:   THESE DOCUMENTS HAVE ABSOLUTELY

21    NOTHING TO DO WITH CISCO'S COPYRIGHT CLAIMS OR CISCO'S PATENT

22    CLAIMS.  AND IF YOU READ THEIR OPPOSITION CAREFULLY, YOU'LL SEE

23    THEY DON'T ACTUALLY TRY TO LINK THE DOCUMENTS THEY CITED, THE

24    DOCUMENTS THAT WE CITED, OR ANY OTHER DOCUMENTS ON THEIR

25    EXHIBIT LIST TO THE ALLEGED INFRINGEMENT.
```

1          AND SO WHEN CISCO ARGUES THAT THESE DOCUMENTS ARE RELEVANT

2     TO THE WILLFULNESS OF THE ALLEGED INFRINGEMENT OF THE '526

3     PATENT, WHAT THEY ARE ESSENTIALLY SAYING IS THAT A GENERALIZED

4     MOTIVATION FOR HARM BY A COMPETITOR IS RELEVANT TO WILLFULNESS,

5     WHICH IS NOT SUPPORTED BY THE CASES AND IT'S NOT SUPPORTED BY

6     THE FINJAN DECISION THAT CISCO CITED.

7          WHAT YOUR HONOR WROTE IN THAT DECISION WAS THAT WHAT IS

8     RELEVANT IS THE MOTIVATION FOR INFRINGEMENT, AND THE EVIDENCE

9     THAT CISCO WANTS TO INTRODUCE HAS TO BE TIED TO THE UNDERLYING

10    INFRINGEMENT.  OTHERWISE THERE'S ACTUALLY NO CABIN ON THE

11    EVIDENCE THAT THEY COULD INTRODUCE.

12          THE COURT:  I GUESS THEY'RE NOT ACTING LIKE A PRIVATE

13     HERE, ARE THEY?

14          MR. SANTACANA:  I'M SORRY?

15          THE COURT:  THEY'RE NOT ACTING LIKE A PIRATE.

16     CHIEF JUSTICE ROBERTS WILL GO DOWN IN OUR MEMORIES FOR

17     THAT.

18          NONE OF THESE DOCUMENTS PERTAINS TO THE PATENT-IN-SUIT?

19          MR. SANTACANA:  NOT A ONE, YOUR HONOR.  NEITHER OF

20    THE DOCUMENTS THAT THEY ATTACHED TO THEIR OPPOSITION WERE CITED

21    IN CISCO'S PATENT EXPERT REPORT.  NEITHER OF THE DOCUMENTS WAS

22    LISTED AS ONE OF THE DOCUMENTS THAT CISCO'S PATENT EXPERT

23    CONSIDERED.

24          AND JUST BECAUSE AT THE DAUBERT HEARING CISCO CLAIMED FOR

25    THE FIRST TIME THAT THEIR COPYRIGHT EXPERT HAD RENDERED A

1        COPYRIGHT OPINION, WE CHECKED THERE, TOO.

2            THEIR COPYRIGHT EXPERT REPORT SAYS NOTHING ABOUT THESE

3        DOCUMENTS, AND IN A 121-PAGE LIST OF MATERIALS THAT THAT EXPERT

4        CONSIDERED, NEITHER OF THESE DOCUMENTS APPEAR EITHER.

5            FOR THAT MATTER, NEITHER THE 47 THAT WE CITED IN OUR

6        MOTION, WHICH CISCO DOESN'T ADDRESS AT ALL IN THEIR OPPOSITION,

7        SO WE CONSIDERED THOSE, AT LEAST AS TO THOSE 47, CONCEDED.  I

8        MEAN, CISCO DOESN'T ATTEMPT TO ARGUE THAT THEY'RE RELEVANT IN

9        ANY WAY TO THE COPYRIGHT OR THE PATENT CLAIMS.

10           ONE MORE THING, YOUR HONOR.  THE TWO DOCUMENTS THAT CISCO

11       ATTACHED TO THEIR OPPOSITION, THEY WERE LISTED ON CISCO'S TRIAL

12       EXHIBIT LIST AFTER THE OPPOSITION WAS FILED AS RELEVANT TO

13       COPYRIGHT INFRINGEMENT, NOT PATENT INFRINGEMENT.

14           I THINK IT'S CLEAR WHAT'S GOING ON HERE.  CISCO IS

15       ATTEMPTING TO PREJUDICE ARISTA BY SUGGESTING THAT ARISTA HAS

16       COPIED CONFIDENTIAL MATERIAL IN ORDER TO ACCOMPLISH PATENT

17       INFRINGEMENT, EVEN THOUGH THE CONFIDENTIAL MATERIAL AT ISSUE IS

18       BOTH NOT CONFIDENTIAL AND HAS NOTHING TO DO WITH THE PATENT.

19               THE COURT:  MR. PAK, ARE THESE DOCUMENTS CONNECTED TO

20       THE INFRINGEMENT OF THE PATENT-IN-SUIT?

21               MR. PAK:  YES, YOUR HONOR.

22           SO FIRST OF ALL, THERE'S NO REQUIREMENT THAT AN EXPERT HAS

23       TO ANALYZE FACTUAL EVIDENCE FOR WILLFUL INFRINGEMENT.  THIS IS

24       A FACTUAL QUESTION.

25           HE WAS ASKED TO LOOK AT SPECIFIC ISSUES RELATED TO

1    INFRINGEMENT.  HE PROVIDED THE SOURCE CODE OPINIONS.

2        IN THIS CASE WE HAVE MULTIPLE WILLFULNESS ALLEGATIONS.  WE

3    HAVE WILLFULNESS ALLEGATIONS WITH RESPECT TO THE PATENT, WE

4    HAVE WILLFULNESS ALLEGATIONS WITH RESPECT TO COPYING.

5        NOW, ESPECIALLY GIVEN YOUR HONOR'S DECISION NOT TO ALLOW

6    THE --

7            THE COURT:  COPYING IN THE COPYRIGHT PART OF THE

8    CASE?

9            MR. PAK:  ON THE COPYRIGHT.

10            THE COURT:  NOT COPYING IN THE PATENT INFRINGEMENT

11    CASE?

12            MR. PAK:  EXACTLY.  SO WE HAVE TWO WILLFULNESS

13    ALLEGATIONS.  WE HAVE WILLFUL COPYING WITH RESPECT TO THE

14    COPYRIGHT INFRINGEMENT CASE, AS WELL AS WILLFULNESS UNDER

15    PATENT.

16        AND YOUR HONOR IS ABSOLUTELY RIGHT THAT UNDER THE HALO

17    STANDARD, THERE IS A LOT OF LEEWAY THAT'S GIVEN NOW TO CONSIDER

18    ALL KINDS OF TOTALITY OF CIRCUMSTANCES.

19        SOME OF THIS CULTURE OF COPYING -- NOW, WE UNDERSTAND THAT

20    WE CAN'T BRING IN THAT LANGUAGE FROM THE ITC DECISION, BUT

21    CERTAINLY IN OPPOSING THAT MOTION, ARISTA ACKNOWLEDGED THAT WE

22    SHOULD BE ALLOWED TO PUT IN SOME OF THE EVIDENCE THAT THE ITC

23    CONSIDERED IN REACHING SOME OF THOSE CONCLUSIONS.

24        WE HAVE INDIRECT INFRINGEMENT ALLEGATIONS HERE.  THESE

25    WERE SOME OF THE SAME DOCUMENTS, YOUR HONOR, THAT WERE TRIED AT

1    THE ITC.  SO WHEN THE COMMISSION AND THE ALJ LOOKED AT EVIDENCE

2    OF COPYING WITH RESPECT TO INTELLECTUAL PROPERTY, WHETHER THEY

3    ACTED RECKLESSLY OR NOT, THEY WERE LOOKING AT MUCH OF THE SAME

4    EVIDENCE AS HERE.

5        THERE IS ONE DOCUMENT -- I HAVE NO INTENTION OF PUTTING ON

6    ANY DOCUMENT AT TRIAL THAT WAS DOWNLOADED FROM GOOGLE, AND THAT

7    IS NOT WHAT WE ARE GOING TO SPEND TIME DOING.

8        BUT THERE ARE VERY SPECIFIC DOCUMENTS THAT I COVERED WITH

9    VERY SPECIFIC WITNESSES, INCLUDING MR. SADANA, WHERE I SAID,

10    HERE IS A PRODUCT REQUIREMENTS DOCUMENT THAT HAS NO BUSINESS

11    BEING OUTSIDE OF CISCO.  HE HAD NO EXPLANATION FOR THAT.

12            THE COURT:  IS IT THE TWO DOCUMENTS THAT YOU --

13            MR. PAK:  YES, YOUR HONOR.

14        SO THERE MAY BE A FEW OTHERS THAT WE'LL IDENTIFY FOR TRIAL

15    THAT ARE CLEARLY NOT PUBLIC DOCUMENTS, THAT ARE NOT AVAILABLE

16    PUBLICLY.

17        THAT PARTICULAR DOCUMENT, YOUR HONOR, HAS TO DO WITH A

18    TRANSCEIVER THAT IS USED FOR GIGABIT ETHERNET SWITCHING THAT

19    SLOTS INTO OUR NEXUS AND IOS LINE OF PRODUCTS.

20        WE HAVE EVIDENCE SHOWING THAT THIS WAS THE KIND OF

21    COMPETITION THAT ARISTA WAS TRYING TO EFFACE.

22            THE COURT:  YEAH, BUT THAT'S NOT A PRODUCT IN THE --

23    THAT'S NOT AN ACCUSED PRODUCT, THAT TRANSCEIVER.

24            MR. PAK:  NO.  THEIR ACCUSED PRODUCTS COMPETES WITH

25    THESE CISCO PRODUCTS THAT I MENTIONED.

```
 1              AND ALL OF THEM RUN -- SO THESE PRODUCTS THAT WE'RE

 2     LOOKING AT, THE ROADMAPS, THE ENGINEERING DOCUMENTS ARE RUNNING

 3     IOS AND XOS, IOS XR, IOS XB, THOSE ARE THE OPERATING SYSTEMS

 4     THAT CISCO CREATED.

 5              AND THE FACT THAT MR. SADANA AND OTHER ENGINEERS CLEARLY

 6     HAD ACCESS TO IMPROPER TECHNICAL DOCUMENTATION FROM CISCO ON

 7     PRODUCTS THAT THEY KNOW ARE PROVIDING GIGABIT ETHERNET

 8     SWITCHING I THINK IS HIGHLY PROBATIVE EVIDENCE, YOUR HONOR.

 9              MR. SANTACANA:  YOUR HONOR, I WOULD ENCOURAGE YOU TO

10     LOOK AT THE DOCUMENT THAT WE'RE TALKING ABOUT.

11              THE COURT:  OKAY.  SO I BROUGHT EVERYTHING HERE.  I

12     MAY AS WELL USE IT ONCE.

13              MR. SANTACANA:  THAT IS THE NEUKOM DECLARATION,

14     EXHIBIT 28.  BECAUSE I WANT TO MAKE SURE THAT WE'RE ALL ON THE

15     SAME PAGE.

16              THE COURT:  EXCUSE ME.  OKAY.  AND EXHIBIT?

17              MR. SANTACANA:  28.

18              THE COURT:  OKAY.  THAT'S -- IT'S CALLED CFP

19     TRANSCEIVER MODULE; IS THAT CORRECT?

20              MR. SANTACANA:  THAT'S RIGHT, YOUR HONOR.

21              THE COURT:  OKAY.

22              MR. SANTACANA:  THIS IS A HARDWARE DOCUMENT IN A

23     SOFTWARE CASE.  I DON'T UNDERSTAND, AND MR. PAK HASN'T

24     EXPLAINED, HOW THIS HARDWARE PRODUCT REQUIREMENT DOCUMENT,

25     WHICH IS STAMPED CISCO CONFIDENTIAL, HAS ANYTHING TO DO WITH
```

1        INFRINGEMENT OF THE COPYRIGHTS THAT ARE AT ISSUE WHICH RELATE

2        TO CISCO'S PUBLIC CLI, NOR HAS MR. PAK EXPLAINED HOW A HARDWARE

3        PRODUCT REQUIREMENT DOCUMENT COULD HAVE ANYTHING TO DO WITH THE

4        SOFTWARE PATENT THAT'S BEEN ASSERTED.

5            IT'S COMPLETELY -- IT'S FAR AFIELD OF WHAT THIS CASE IS

6        ABOUT.

7            NOW, IF THIS DOCUMENT HAD ANYTHING TO DO WITH THE '526

8        PATENT, IF IT HAD ANYTHING TO DO WITH COPYRIGHT, IT WOULD HAVE

9        SHOWN UP IN THE LENGTHY LISTS OF MATERIALS THAT CISCO'S

10       COPYRIGHT AND PATENT EXPERTS CONSIDERED.  IT DIDN'T.

11           IF IT HAD ANYTHING TO DO WITH THE PATENT, IT WOULD BE

12       LISTED AS RELEVANT TO PATENT INFRINGEMENT ON THEIR EXHIBIT

13       LIST.  IT'S NOT.

14           CISCO HAS NEVER IN THIS CASE CLAIMED, NOT IN THEIR

15       COMPLAINT, NOT IN ITS DISCOVERY, NOT IN ITS EXPERT REPORTS, NOT

16       IN SUMMARY JUDGMENT, THAT CISCO ACCOMPLISHED INFRINGEMENT

17       THROUGH THE USE AND -- THE IMPROPER ACQUISITION AND USE OF

18       CONFIDENTIAL MATERIALS.

19               THE COURT:  AND IT'S NOT BEING OFFERED FOR THAT.

20               MR. PAK:  IT'S NOT BEING OFFERED FOR THAT, YOUR

21       HONOR.

22               MR. SANTACANA:  THEN I FAIL TO SEE HOW IT COULD

23       POSSIBLY BE RELEVANT TO THE WILLFULNESS OF THE ALLEGED

24       INFRINGEMENT.

25               MR. PAK:  THIS IS -- IT'S RELEVANT TO WILLFULNESS IN

```
 1        A NUMBER OF RESPECTS, YOUR HONOR.

 2            SO WE HAVE TESTIMONY FROM THEIR WITNESSES SAYING THAT THEY

 3        NEVER PROVIDED INTELLECTUAL PROPERTY TRAINING, THAT THEY

 4        MADE -- THEY NEVER DID ANY KIND OF PATENT CLEARANCE OR

 5        COPYRIGHT CLEARANCE WHEN THEY WERE DESIGNING THESE PRODUCTS.

 6            WE HAVE EVIDENCE SHOWING THAT THEY HAD CISCO SWITCHES

 7        RUNNING.  WE HAD EVIDENCE THAT THEY WERE COPYING FROM PUBLIC

 8        DOCUMENTS.

 9            THIS IS A TRANSCEIVER DOCUMENT THAT IS FOR A GIGABIT

10        ETHERNET SWITCHING.

11            ONE OF THE ARGUMENTS THAT YOU'VE HEARD DISCUSSED IN THE

12        CONTEXT OF FAIR USE IS THIS TRANSFORMATIVE ARGUMENT THAT

13        MR. NELSON WAS ADDRESSING.  SO ONE OF THE THINGS THAT WE'RE

14        GOING TO HEAR AT TRIAL IS ARISTA TELLING THE JURORS, WE DON'T

15        INFRINGE, OR EVEN IF WE DO INFRINGE, THERE'S FAIR USE BECAUSE

16        WE CREATED OUR SOFTWARE AND HARDWARE FROM SCRATCH AND WE DIDN'T

17        COPY ANYTHING ELSE FROM CISCO.

18            SO TO REBUT THAT, TO SHOW THAT, IN FACT, THEY HAD

19        CONFIDENTIAL DOCUMENTS, AS WELL AS PUBLIC DOCUMENTS IN THEIR

20        POSSESSION, HIRING ENGINEERS WHO HAD ACCESS TO ALL OF OUR

21        SOURCE CODE, OR INFRINGING, FRANKLY, PATENTS THAT WE OWN FROM

22        OTHER CASES, IT'S RELEVANT EVIDENCE, YOUR HONOR.

23            THE FACT THAT WE CAN'T MENTION THE ITC, WE UNDERSTAND

24        THAT.  BUT TO BE DENIED THE OPPORTUNITY TO PUT IN THIS EVIDENCE

25        I THINK WOULD BE PREJUDICIAL.
```

```
1            THE COURT:  THANK YOU.

2        ALL RIGHT.  I AM GOING TO DENY THIS MOTION.

3        IF ARISTA WOULD LIKE A LIMITING INSTRUCTION TO ADVISE THE

4    JURY THAT THE TESTIMONY IS ONLY RELEVANT TO THE ISSUE OF

5    WILLFULNESS, I'M GLAD TO CONSIDER THAT SO THAT IT DOESN'T

6    SUGGEST THAT THIS DOCUMENT SHOWS THAT THEY COPIED THE PRODUCT,

7    AND IT'S -- THAT IT'S NOT RELEVANT TO INFRINGEMENT.

8        OKAY.

9            MR. SANTACANA:  THANK YOU, YOUR HONOR.

10           THE COURT:  THANK YOU.

11       AND THAT TAKES CARE OF THE IN LIMINE MOTIONS.

12       I DO PUT OUT A WRITTEN ORDER, BUT IT'S NOT GOING TO SAY

13   MUCH MORE THAN I SAID ON THE RECORD BECAUSE THERE ISN'T TIME

14   AND YOU KNOW WHAT MY RULING IS.

15           MR. PAK:  THAT'S RIGHT.

16           THE COURT:  AND FRANKLY, THAT'S ALL YOU NEED, I

17    THINK.

18       LET ME GO BACK -- THERE WERE A NUMBER OF OTHER ISSUES

19   RAISED IN THE PRETRIAL CONFERENCE STATEMENT THAT GAVE ME SOME

20   CONCERN.  I GUESS I'M JUST GOING TO KEEP GOING DOWN MY LIST

21   BECAUSE I'M RUNNING OUT OF TIME HERE AND I WANT TO GET TO IT.

22       JUST ONE MORE HOUSEKEEPING ISSUE, AND THAT IS YOUR

23   PROPOSED JURY INSTRUCTION NUMBER 2 IS THE CLAIMS AND DEFENSES

24   THAT I WILL DESCRIBE TO THE JURY BEFORE THEY FILL OUT THEIR --

25   AND THAT WOULD BE EQUAL TO THE NEUTRAL STATEMENT, I PRESUME,
```

```
 1        AND YOU DON'T AGREE ON IT.

 2             SO I'M GOING TO GIVE YOU ONE MORE OPPORTUNITY, AND I WOULD

 3        LIKE THE AGREED UPON NEUTRAL STATEMENT, WHICH I BELIEVE FITS

 4        THE REQUIREMENTS OF JURY INSTRUCTION NUMBER 2, TO BE FILED WITH

 5        THE COURT NO LATER THAN NOVEMBER 15.

 6             AND IF YOU'RE UNABLE TO REACH A COMPLETE AGREEMENT, LEAD

 7        TRIAL COUNSEL SHALL APPEAR AT 9:00 A.M. ON THE 16TH AND YOU

 8        WILL BE HERE FROM DAY-TO-DAY UNTIL IT IS COMPLETED.

 9             MR. PAK:  I'M CONFIDENT THAT WE WILL NOT.

10             THE COURT:  I AM CONFIDENT THAT I WILL NOT SEE YOU.

11             AND TO THE EXTENT THAT SUCH AN INSTRUCTION IS GIVEN,

12        SOMETIMES THERE'S AN INSTRUCTION THAT DESCRIBES THE PARTIES'

13        POSITIONS LATER ON -- AND I'M AFRAID I DIDN'T WRITE DOWN THE

14        NUMBER --

15             MR. PAK:  YES.

16             THE COURT:  -- BUT THOSE ALL GET DONE BY MEET AND

17         CONFER, SO I KNOW I WON'T HAVE ANY TROUBLE ON THAT.

18             LET'S TALK ABOUT THE PATENT CASE.  AS IT STANDS NOW, THERE

19        ARE TEN ASSERTED CLAIMS, DOCTRINE OF EQUIVALENT, ANTICIPATION,

20        AND OBVIOUSNESS.

21             IN -- BASED ON MY EXPERIENCE, THAT ALONE WOULD TAKE A WEEK

22        OF TRIAL.  I DON'T THINK YOU WANT TO DEVOTE A WEEK TO IT.

23             MR. PAK, I HAVE NO DOUBT THAT CISCO WILL CHOOSE TO LIMIT

24        ITS CLAIMS.

25             HOWEVER, I DON'T WANT YOU TO REST AND SIMPLY TURN TO
```

1    MR. VAN NEST AND SAY, GOSH, I GUESS I DIDN'T GET TO SOME OF

2    THOSE, AND HAVE HIS TEAM HAVE TO BE READY WITH THEIR EXPERTS ON

3    CLAIMS YOU NEVER INTENDED TO SUBMIT.

4         MR. PAK:  WE HAVE NO INTENTION OF THAT, YOUR HONOR.

5    WE'RE ACTUALLY IN ACTIVE DISCUSSION NOW.  WE DID RECEIVE A VERY

6    PRODUCTIVE PROPOSAL FROM ARISTA'S COUNSEL --

7         THE COURT:  OKAY.

8         MR. PAK:  -- WHERE THEY WOULD AGREE TO NOT PRESENT

9    THE PRIOR ART CASE, THE INVALIDITY CASE, IF WE LIMIT OUR CLAIMS

10   TO THREE CLAIMS.  WE'RE GOING TO TAKE A HARD LOOK AT THAT

11   PROPOSAL.

12        THE COURT:  OKAY.

13        MR. PAK:  AND I'M OPTIMISTIC THAT WE'LL BE ABLE TO

14   RESOLVE THIS IN SHORT ORDER.

15        THE COURT:  ALL RIGHT.  AND I APPRECIATE THAT.

16    SO THAT WILL BE TAKEN CARE OF BY MEET AND CONFER.

17        MR. PAK:  YES, YOUR HONOR.

18        THE COURT:  GOOD.

19    AND THEN YOU WILL THEN BE ABLE TO PROVIDE THE JURY, ON THE

20   FIRST DAY, WITH THE PATENT HIGHLIGHTING THE ASSERTED CLAIMS

21   THAT YOU WILL BE PRESENTING, AND SO YOU WILL HAVE RESOLVED THIS

22   ISSUE BEFORE THE JURY COMES IN.

23        MR. PAK:  YES, YOUR HONOR.

24        THE COURT:  GOOD.  OKAY.  THAT'S EXCELLENT.

25    WE HAVE A LEGAL ISSUE THAT'S RAISED IN THE PRETRIAL

1    STATEMENT ABOUT THE ISSUE OF CISCO'S ALLEGATION OF WILLFUL

2    COPYRIGHT INFRINGEMENT AND THE IMPACT ON DEDUCTIBILITY OF

3    CERTAIN EXPENSES FROM PROFITS.

4        I WASN'T REALLY EXPECTING SUCH A MEATY ISSUE TO COME IN

5    THROUGH THE PRETRIAL STATEMENT.  I RECOGNIZE -- IT APPEARS,

6    MR. VAN NEST, THAT YOU ARE NOT SEEKING A DEDUCTION FOR THE TAX

7    ON THE PROFITS, AND YOUR POSITION IS, THEREFORE, WILLFUL

8    COPYRIGHT INFRINGEMENT IS NOT -- SHOULDN'T EVEN BE PRESENTED TO

9    THE JURY BECAUSE YOU'RE NOT EVEN SEEKING --

10            MR. VAN NEST:  THAT'S RIGHT, YOUR HONOR.

11            THE COURT:  -- THAT DEDUCTION.

12            MR. VAN NEST:  THAT'S RIGHT.

13            THE COURT:  THE CASE LAW, AS I READ IT -- AND I HAVE

14    NOT BEEN ABLE TO SPEND AS MUCH TIME ON IT AS IN OTHER

15    CIRCUMSTANCES I MIGHT -- I DON'T SEE ANY CLEAR RULING ON THIS

16    ISSUE.  IT'S A RULING -- THE RULINGS ARE BY DEDUCTION OF WHAT

17    ISN'T SAID IN THE OPINION.

18        SO I GUESS THIS IS JUST ONE OF THOSE THINGS I'M GOING TO

19    HAVE TO JUST FIGURE OUT.  I DON'T KNOW WHAT -- I DON'T HAVE ANY

20    GUIDING LIGHT ON THIS, DO I?

21            MR. VAN NEST:  MS. MCCLOSKEY IS YOUR GUIDING LIGHT,

22    YOUR HONOR, AND SHE'S PREPARED TO DISCUSS IT BRIEFLY IF

23    APPROPRIATE, OR WE COULD RESERVE IT FOR THE 18TH, AS YOU WISH.

24        WE DO THINK THERE IS AUTHORITY.

25            THE COURT:  WELL, AND I DON'T KNOW WHETHER MR. PAK IS

1    PREPARED TO ADDRESS IT FURTHER.

2              MR. PAK:  YOUR HONOR --

3              THE COURT:  THERE ARE A LOT OF SLEEPER ISSUES IN THE

4    PRETRIAL STATEMENT.

5              MR. PAK:  YES.  I THINK WE HAVE SIMILAR ISSUES WITH

6    PATRELLA AND THE DISGORGEMENT OF PROFITS.

7         I THINK TO THE EXTENT THAT YOUR HONOR WOULD LIKE FURTHER

8    BRIEFING -- WE HAD LIMITED SPACE WHERE WE DID THE RESEARCH.

9         WE VIEW THE LAW DIFFERENTLY THAN THEY DO, AND I THINK IT'S

10   RELATED TO FAIR USE AND OTHER ISSUES.  BUT RATHER THAN SPENDING

11   TIME HAVING MORE ARGUMENT, IF YOUR HONOR IS INCLINED TO HAVE

12   FURTHER WRITTEN BRIEFING, I'M SURE WE'D BE HAPPY TO PUT IN

13   THREE-PAGE BRIEFS.

14             THE COURT:  LET ME GET A THREE-PAGE BRIEF

15   SIMULTANEOUSLY FROM EACH SIDE -- I THINK YOU CAN DO IT

16   SIMULTANEOUSLY -- AND IF I COULD GET THAT BY NOVEMBER 10?

17             MR. VAN NEST:  CERTAINLY.

18             MR. PAK:  YES, YOUR HONOR.

19             THE COURT:  GOOD, THANK YOU.

20        THERE IS AN ISSUE THAT ARISTA RAISES REGARDING CISCO'S

21   DISCLOSURE OF DOCTRINE OF EQUIVALENT.

22        THERE ARE TWO ISSUES HERE, AND I DIDN'T WRITE DOWN MY PAGE

23   NUMBERS HERE IN YOUR BRIEF, I JUST HAVE TWO -- THERE ARE FOUR

24   CLAIMS FOR WHICH D.O.E. IS ASSERTED.  HERE WE GO.

25             APPARENTLY INFRINGEMENT CONTENTIONS IDENTIFY DOCTRINE OF

1    EQUIVALENT FOR ELEMENT 1.5.  AND IS THAT 2.1?  I'M LOOKING AT

2    MY HANDWRITING.

3         AND FOR ELEMENTS 1.2 AND 23.1, THERE'S NOTHING IN THE

4    CONTENTIONS.  THAT'S THE ARGUMENT.

5         SO MR. PAK, GENERALLY WHAT I'VE DONE IS THAT WHERE IT'S AT

6    LEAST BOILERPLATE, I'VE LET IT GO BECAUSE THE TIME TO CONTEST

7    THIS WAS MUCH EARLIER.

8         BUT IF YOU HAVEN'T RAISED IT AT ALL, I'M NOT GOING TO

9    ALLOW IT.

10        SO I, OF COURSE, DID NOT OPEN UP YOUR CONTENTIONS TO SEE

11   WHETHER IT WAS THERE.

12             MR. PAK:  RIGHT.

13             THE COURT:  DO YOU DISAGREE WITH ARISTA'S

14   CHARACTERIZATION?

15             MR. PAK:  YOUR HONOR, I THINK ON SOME OF THEM WE MAY,

16   BUT I THINK WE MAY BE ABLE TO MOOT THIS WHOLE ISSUE WHEN WE

17   DOWN SELECT THE CLAIMS.  I'M NOT EVEN SURE THAT CLAIM 23 WILL

18   BE ONE OF THE CLAIMS THAT WE'LL BE ASSERTING IN THE CASE.

19        BUT WE'LL CERTAINLY INCLUDE THAT AS PART OF THE MEET AND

20   CONFER, AND WE HAVE YOUR HONOR'S GUIDANCE, SO TO THE EXTENT

21   THAT THERE'S NO MENTION OF D.O.E., WE'RE NOT GOING TO ASSERT

22   IT.

23             THE COURT:  GOOD, OKAY.

24        NEXT IS ARISTA'S CONCERN ABOUT THE HELP DESK STRINGS.

25   WE'VE DISCUSSED THIS BEFORE, AND ARISTA'S POSITION IS THAT

1    THERE WAS INADEQUATE AND LATE DISCOVERY RESPONSE AND THAT CISCO

2    PROVIDED A 145-PAGE RESPONSE -- OH, CISCO INDICATES IT GAVE A

3    LENGTHY RESPONSE IN A DEPOSITION ON THIS.

4         I DON'T KNOW THAT THERE'S -- WASN'T THIS HELP DESK ISSUE

5    RESOLVED BY JUDGE COUSINS?

6              MR. FERRALL:  YOUR HONOR, THIS IS -- LET ME JUST

7    UPDATE IT.

8              THE COURT:  OKAY.

9              MR. FERRALL:  THIS IS NOT REVISITING THAT.  THAT WAS

10   A CHALLENGE BECAUSE --

11             THE COURT:  OKAY.

12             MR. FERRALL:  -- THESE 400-SOME STRINGS WERE

13   IDENTIFIED ON THE CLOSE OF THE LAST DAY OF DISCOVERY, AND SO

14   YOUR HONOR, IN REVIEWING JUDGE COUSINS' ORDER, GRANTED A

15   DEPOSITION.

16             THE COURT:  I DID, YES.

17             MR. FERRALL:  AND ONE INTERROGATORY.

18             THE COURT:  RIGHT.

19             MR. FERRALL:  AND WE PROCEEDED WITH THAT, AND I'M NOT

20   GOING TO BELABOR THE COURT HERE ABOUT THE ADEQUACY OF THAT.

21   THAT'S NOT WHAT THIS IS ABOUT.

22        WHAT THIS IS ABOUT IS A STATEMENT THAT WE HEARD, FRANKLY,

23   IN CHAMBERS THE LAST TIME WE WERE HERE.  THAT'S WHY IT WASN'T

24   THE SUBJECT OF A MOTION IN LIMINE, BUT IT'S A PARTICULARLY RAW

25   NERVE, IF YOU WILL.

1          CISCO'S COUNSEL ASSERTED -- AND WE JUST WANT TO MAKE SURE

2     THIS DOESN'T HAPPEN AT TRIAL -- THAT ALTHOUGH THERE'S PLENTY OF

3     EVIDENCE OF THIRD PARTIES USING COMMANDS THAT HAVE BEEN AT

4     ISSUE IN THE CASE FOR TWO YEARS, THEY DON'T HAVE ANY EVIDENCE

5     ABOUT THE USE OF THE HELP DESCRIPTIONS.  THEY, ARISTA, DON'T

6     HAVE ANY EVIDENCE ABOUT THE USE OF THE HELP DESCRIPTIONS ACROSS

7     THE INDUSTRY.

8          THAT, YOUR HONOR, WE SUBMIT IS TERRIBLY UNFAIR TO BE

9     MAKING ARGUMENTS TO THE JURY THAT OUR EVIDENCE ABOUT THE

10    INDUSTRY USE OF THESE HELP STRINGS IS SOMEHOW INADEQUATE WHEN

11    WE HAD NO OPPORTUNITY TO TAKE THIRD PARTY DISCOVERY.

12         AND I COULD GO THROUGH THE CHRONOLOGY, WHICH IS -- I'VE

13    BEEN THROUGH MANY TIMES, TRUST ME.  BUT SUFFICE IT TO SAY THEY

14    HAD PLENTY OF OPPORTUNITY TO IDENTIFY THESE HELP STRINGS LONG

15    AGO, INCLUDING HAVING OUR SWITCHES, HAVING OUR SOURCE CODE,

16    ANALYZING THEM, ANALYZING THE SOURCE CODE WE PRODUCED, EVEN

17    IDENTIFYING HELP STRINGS AS AN INFRINGED WORK AS EARLY AS

18    JANUARY 2016, BUT NOT GIVING US THE 400 SPECIFIC ACCUSATIONS

19    UNTIL 10:00 O'CLOCK ON THE LAST DAY OF DISCOVERY.

20         SO THAT'S THIS ISSUE.  IF WE CAN RESOLVE IT NOW, GREAT.

21    IF YOUR HONOR WOULD LIKE A THREE-PAGE BRIEF ON THAT, WE CAN DO

22    THAT, TOO.  IT'S UP TO YOU.

23            THE COURT:  WELL, THE -- THE LIMITED DISCOVERY I

24     ALLOWED YOU WOULD CERTAINLY NOT HAVE ENABLED YOU TO DEAL WITH

25     THIS ISSUE AT ALL.

1          MR. PAK, I AM TROUBLED BY THIS.  I DIDN'T OVERRULE

2     JUDGE COUSINS.  I THOUGHT HE WAS CORRECT.  I DID OPEN THE DOOR

3     A LITTLE BIT FOR ARISTA.  IT WAS VERY LITTLE.  IT WAS A CRACK.

4     THEY GOT SOME INFORMATION.

5          BUT, YOU KNOW, THIS IS TOO MUCH, TOO LATE IS REALLY WHAT

6     I'M SEEING FROM CISCO.  YOU PRESENTED TOO MUCH TO THEM TOO

7     LATE, AND THESE ISSUES BECOME VERY TROUBLING TO ME AT THIS

8     STAGE OF THE TRIAL.

9            MR. PAK:  YOUR HONOR, WE'VE -- I MEAN, I KNOW THAT

10    THEY HAVE BEEN VERY FOCUSSED ON THIS ISSUE.

11         BUT HERE ARE THE FACTS:  WE DID SUPPLEMENT OUR ROG

12    RESPONSES BEFORE FACT DISCOVERY CUTOFF.  WE ADDRESSED IT IN OUR

13    EXPERT REPORTS, THEY ADDRESSED IT IN THE EXPERT REPORTS.  THEY

14    TOOK EXPERT DEPOSITIONS.  YOUR HONOR FOUND THAT MAYBE FURTHER

15    TESTIMONY ON ORIGINATION WAS IMPORTANT.

16         BUT THIS EXPERT, WHO TOOK EVERY SINGLE MANUAL THAT HE

17    COULD FIND FROM ALL THE DIFFERENT VENDORS TO LOOK UP COMMANDS,

18    THIS SAME EXPERT HAD THE OPPORTUNITY TO DO THAT WITH THE HELP

19    DESCRIPTIONS FROM THE CLOSE OF FACT DISCOVERY ALL THE WAY TO

20    THE POINT THAT HE HAD EXPERT REPORTS.

21         IF THEY WANTED TO HAVE A SUPPLEMENTAL EXPERT REPORT

22    SUBMITTED WITH SOME ADDITIONAL TIME WITH THAT, THEY HAD THAT

23    OPPORTUNITY TO DO THAT.  THEY COULD HAVE ADDRESSED IT IN THE

24    OPENING REPORT.  THEY DIDN'T DO THAT, YOUR HONOR.

25         AND THE REASON WHY I'M RAISING THIS CHRONOLOGY, YOUR

1    HONOR, IS WE UNDERSTAND YOUR HONOR'S RULING ABOUT THE COMMAND

2    FRAGMENT ARGUMENT THAT WAS THE SUBJECT OF OUR MOTION IN LIMINE.

3         THEY DIDN'T GIVE US THE 400 OR 250 COMMANDS FOR WHICH THEY

4    CLAIMED TO HAVE THIS NON-INFRINGEMENT DEFENSE.  YOUR HONOR

5    FOUND THAT THERE WAS SUFFICIENT DISCLOSURE OF THE THEORY BACK

6    IN JANUARY WHEN THEY PUT IN ONE WORD, SYNTAX.

7         WELL, WE HAD THE SAME KIND OF SITUATION HERE.  WE GAVE

8    THEM EXTRA DISCOVERY BECAUSE THEY ASKED FOR IT.

9         WE'RE NOT ASKING FOR EXTRA DISCOVERY.  BUT THE REALITY IS

10   THEIR EXPERT DID LOOK THROUGH ALL THESE MANUALS, DID PROVIDE

11   EVIDENCE.

12        THERE'S ABSOLUTELY NO WAY, GIVEN THE DISCOVERY LIMITS AND

13   THE PRACTICALITY OF OUR CASE, THAT WE COULD HAVE GONE AND

14   DEPOSED HUNDREDS OF COMPANIES AND LOOKED AT HUNDREDS OF

15   DIFFERENT THINGS.

16        BOTH SIDES' EXPERTS LOOKED AT PUBLICLY AVAILABLE MANUALS.

17   DR. BLACK DID THAT ANALYSIS WITH RESPECT TO --

18             THE COURT:  AND YOUR TESTIMONY IS LIMITED TO THAT

19    REVIEW?

20             MR. PAK:  THAT'S RIGHT, YOUR HONOR.  WHAT WE'RE GOING

21   TO SAY IS, NOW, DR. BLACK, WHEN YOU WERE LOOKING THROUGH THE

22   MANUALS AND YOU WERE LOOKING FOR EVIDENCE OF COPYING OF

23   COMMANDS, OR USAGE OF THE COMMANDS ACROSS VENDORS, YOU WERE

24    PROVIDED THIS TAPE AND YOU WERE GIVEN NOTICE THAT CISCO IS

25   ALLEGING HELP DESCRIPTION ENTRIES WERE ALSO COPIED, AND YOU HAD

1    THAT INFORMATION ON XYZ DATE.

2         YOU SUBMITTED YOUR REPORT ON XYZ DATE.  YOU DON'T HAVE ANY

3    OPINIONS IN YOUR REPORT THAT SUGGEST THAT THE HELP DESCRIPTION

4    ENTRIES WERE USED BY ANYONE ELSE BASED ON THE ANALYSIS THAT YOU

5    DID?

6         I THINK THAT'S A FAIR QUESTION.

7         IF THEY WANT TO COME IN AND SAY THAT, I COULD HAVE DONE

8    MORE ANALYSIS WITH MORE TIME, BUT THE REALITY IS HE DOESN'T

9    HAVE ANY OPINIONS BECAUSE NO ONE ELSE USES THEM.  SO THAT'S THE

10   REALITY, AND I THINK WE SHOULD BE ABLE TO DRAW THAT OUT THROUGH

11   OUR CROSS-EXAMINATION.

12        MR. FERRALL:  A COUPLE OF THINGS, YOUR HONOR.

13        FIRST OF ALL, OTHER COMPANIES ARE USING THEM.  WHAT WE

14   WERE ABLE TO FIND, WITHOUT THE BENEFIT OF THIRD PARTY

15   DISCOVERY, IS A VIDEO OF DELL -- WHO, BY THE WAY, HAS MORE

16   COMMANDS COMMON TO CISCO THAN ARISTA DOES -- AND YOU CAN SEE ON

17   THE DELL VIDEO IN WHICH THEY'RE SHOWING THE OPERATION OF THEIR

18   SWITCH HOW THE IDENTICAL HELP DESCRIPTIONS APPEAR ON THE DELL

19   SCREEN.

20        THE COURT:  WHICH YOU CAN PRESENT TO THE JURY.

21        MR. FERRALL:  AND WE WILL.

22        THE COURT:  YEAH.

23        MR. FERRALL:  BUT THAT'S ONE SCREEN OF A FEW TEXT

24   LINES.  THAT'S ALL -- THERE MAY BE A LITTLE BIT MORE THAT WE

25   WOULD BE ABLE TO FIND IN THE PUBLIC DOMAIN.

1        BUT WE'VE NOT HAD ANY CHANCE TO ACTUALLY TALK TO AND GET

2    SUBPOENAS TO THIRD PARTIES.  WE SUBPOENAED LOTS OF THIRD

3    PARTIES, BUT OF COURSE WE DIDN'T ASK THEM ABOUT THIS BECAUSE IT

4    WASN'T AT ISSUE AT THE TIME THAT WE SUBPOENAED THESE THIRD

5    PARTIES.

6        AND SO TO SAY THAT WE'VE NOT BEEN ABLE TO FIND WHAT THE

7    REST OF THE INDUSTRY IS USING ON THIS IS, IS REALLY KIND OF

8    GALLING, FRANKLY.

9        I MEAN, YOUR HONOR, IT'S A VERY DIFFERENT SITUATION THAN

10   THE QUESTION ABOUT THE COMMAND USAGE.  WE'RE TALKING ABOUT

11   CISCO'S CASE.  CISCO DEFINES ITS CASE.  CISCO DEFINES THE SCOPE

12   OF WHAT'S AT ISSUE.

13       THERE ARE TENS OF THOUSANDS, I THINK, PROBABLY 40,000,

14   MAYBE MORE, HELP STRINGS THAT ARE POTENTIALLY GENERATED BY IOS,

15   CISCO'S OPERATING SYSTEM.  SO WHEN THEY, IN JANUARY '16,

16   IDENTIFIED ONE HELP STRING THAT THEY SAID WAS COPIED, I THINK

17   IT'S PRETTY UNLIKELY THAT WE WERE GOING TO KNOW WHAT THE OTHER

18   400-SOME WERE GOING TO BE ASSERTED IN THIS CASE.

19       AND, YET, THEY HAD OUR OPERATING SYSTEM, THEY ADMITTED TO

20   HAVING OUR SWITCHES, THEY COULD HAVE LOOKED AT ALL THIS.

21       I MEAN, YOUR HONOR, IT'S PRETTY CLEAR THAT THEY DIDN'T DO

22   THE DILIGENCE AT THE TIME, AND THAT'S FINE, WE'RE BEYOND THAT.

23       BUT THERE'S NO POSSIBLE WAY WE COULD HAVE DONE THE

24   DISCOVERY OF THIRD PARTIES THAT WE NEED TO BE ABLE TO PUT ON A

25   FAIR CASE ABOUT HOW COMMONLY THESE WERE USED IN THE INDUSTRY.

1          THE COURT:  I'M NOT CLEAR ON WHAT YOU'RE TRYING TO

2     EXCLUDE.  CAN YOU ARTICULATE THAT?

3          MR. FERRALL:  WE'RE TRYING TO EXCLUDE ARGUMENT AND

4     CROSS-EXAMINATION ALONG THE LINES OF WHAT MR. PAK SAID THAT

5     SUGGESTS THAT OUR EVIDENCE, OR THE EXTENT OF USAGE OF THESE

6     HELP STRINGS, IS SOMEHOW DIFFERENT OR MUCH LESS THAN THE EXTENT

7     OF USAGE OF THE COMMANDS, WHICH WE DID HAVE AN OPPORTUNITY TO

8     TAKE THIRD PARTY DISCOVERY ON.

9          THESE HAVE NOT HAD THE SAME TREATMENT AND WE'VE NOT HAD

10    THE SAME OPPORTUNITY WITH THEM, AND IT WOULD BE VERY UNFAIR AND

11    HIGHLY PREJUDICIAL FOR CISCO TO HOLD THAT AGAINST US WHEN IT

12    COULD HAVE DEFINED ITS CASE BACK IN 2015 OR EARLIER.

13         THE COURT:  SO YOU WANT TO PRECLUDE THEM FROM ASKING

14    DR. BLACK IF HE FOUND ANY OVERLAP AMONG THE VENDORS HE

15    REVIEWED?  THAT'S WHAT YOU WANT TO EXCLUDE?

16         MR. FERRALL:  OR SUGGESTING THAT THERE'S NOT OVERLAP,

17    SUGGESTING THAT THESE ARE UNIQUE TO CISCO; OR ARGUING TO THE

18    JURY THAT THESE ARE UNIQUE TO CISCO AND THESE AREN'T COMMONLY

19    USED THROUGHOUT THE INDUSTRY LIKE THE COMMANDS ARE.

20         MR. PAK:  YOUR HONOR, DR. BLACK -- WELL, FIRST OF

21    ALL, THE SUBPOENAS THAT I BELIEVE WERE SENT TO THE THIRD PARTY

22    COMPANIES WERE VERY BROAD IN SCOPE.  THEY ASKED FOR USER

23    MANUALS, THEY ASKED FOR STRING OUTPUTS.  HELP DESCRIPTION IS A

24    SUBPART OF THAT.

25         BUT THE REALITY IS THIS:  HE HAD A FULL OPPORTUNITY TO

1    CONSIDER THESE HELP DESCRIPTIONS WHEN HE WAS PREPARING HIS

2    EXPERT REPORT.  HE DID IT FOR THE COMMANDS.  HE LOOKED AT THE

3    MANUALS.

4         MY QUESTION IS GOING TO BE FOCUSSED ON, WHEN YOU DID THIS

5    LEVEL OF REVIEW AND YOU LOOKED AT THE USER MANUALS, DID YOU

6    FIND INDICATION OF HELP STRINGS, XYZ HELP STRINGS BEING USED BY

7    OTHER COMPANIES?

8              THE COURT:  AND HE'LL SAY, I DIDN'T DO THAT REVIEW.

9              MR. PAK:  HE CAN SAY I DIDN'T DO THAT REVIEW, AND

10   THAT'S FINE.

11             MR. FERRALL:  NO.  THE ANSWER, YOUR HONOR, IS THAT

12   THESE DON'T APPEAR IN THE MANUALS.  THAT'S THE PROBLEM.

13        SOME MAY.  BUT THESE DON'T APPEAR IN THE MANUALS.  THAT'S

14   THE PROBLEM.

15        YOU CAN'T LOOK AT MANUALS AND FIND ALL THE HELP STRINGS.

16   THAT'S WHY YOU NEED THIRD PARTY DISCOVERY TO FIGURE OUT WHAT

17   THE REST OF THE COMPANIES ARE DOING.

18             THE COURT:  AND THIS WAS INFORMATION THAT YOU GOT ON

19   THE EVE OF THE CUTOFF DATE?

20             MR. FERRALL:  RIGHT.  10:44 ON THE LAST DAY OF

21   DISCOVERY, YOUR HONOR.

22             THE COURT:  MR. PAK, I THINK YOU'VE GOTTEN MORE OUT

23   OF THIS LATE DISCOVERY THAN, IN HINDSIGHT, MIGHT HAVE BEEN

24   REASONABLE, AND I THINK THAT AT THIS POINT, CUTTING THIS OFF IS

25   REASONABLE, AND SO I WILL GRANT THAT RELIEF.

1          I'M STILL HAVING TROUBLE FIGURING OUT HOW TO SAY IT IN AN

2     ORDER, BECAUSE USUALLY I NEED -- SO I NEED A LITTLE HELP FROM

3     YOU TO KNOW EXACTLY WHAT YOU WANT TO EXCLUDE SO THAT MY ORDER

4     CAN BE CLEAR.

5          MR. FERRALL:  FAIR -- IT IS ANY ARGUMENT OR

6     CROSS-EXAMINATION SUGGESTING THAT THE INDUSTRY-WIDE, OR

7     INDUSTRY-WIDE USAGE OF CISCO'S HELP STRINGS IS LESS THAN OR

8     DIFFERENT FROM THE INDUSTRY-WIDE USAGE OF THE COMMANDS.

9          THE COURT:  ALL RIGHT.

10         MR. PAK:  YOUR HONOR, I THINK IT'S IMPORTANT THAT

11    THE -- THAT THIS IS MUTUAL, THAT WE DON'T HAVE ARISTA ARGUING

12    OR ARISTA'S EXPERT SUGGESTING, BECAUSE HE HASN'T DONE THE

13    ANALYSIS, TO SAY, I BELIEVE, WITHOUT HAVING DONE THE ANALYSIS,

14    THAT THESE ARE HELP DESCRIPTIONS THAT ARE COMMONPLACE, THAT

15    WOULD HAVE BEEN USED BY OTHER COMPANIES, ET CETERA, BECAUSE

16    THEN IT REALLY DOES PUT US IN A BIND.

17         THE COURT:  THAT'S RIGHT.  THAT'S FAIR.

18         MR. PAK:  SO WE'RE NOT GOING TO RAISE IT IN THE

19    CONTEXT OF HOW YOUR HONOR IS GOING TO INSTRUCT US NOT TO RAISE

20    IT.

21         BUT I THINK ARISTA SHOULD NOT BE PERMITTED TO MAKE THE

22    FLIP SIDE OF THAT ARGUMENT AND TIE OUR HANDS.

23         MR. FERRALL:  WELL, HIS REPORT IS WHAT IT IS, AND

24    IT -- HE TALKS ABOUT HELP STRINGS A LITTLE BIT, BUT NOT IN

25    DETAIL, AND HE'S NOT GOING TO --

```
1              THE COURT:  SO YOU CAN'T HAVE IT BOTH WAYS.  THIS IS

2    GOING TO BE MUTUAL.

3              MR. FERRALL:  HE'S --

4              THE COURT:  IS THAT WHAT YOU WANT?

5              MR. FERRALL:  NO.

6              THE COURT:  OR DO YOU WANT TO OPEN THE DOOR?

7              MR. FERRALL:  WELL, YOUR HONOR, NO.  WHAT HE'S GOING

8    TO SAY IS WHAT HE FOUND IN THE PUBLIC RECORD, WHICH IS A

9    FRACTION OF WHAT HE WAS ABLE TO -- WHAT HE WOULD HAVE BEEN ABLE

10   TO FIND UNDER THIRD PARTY DISCOVERY.

11             THE COURT:  SO I JUST CAN'T WALK IT DOWN A LITTLE BIT

12   AND THEN CUT IT OFF.  YOU KNOW, IT'S GOT TO BE FOR BOTH OF YOU

13   OR FOR NEITHER.  SO I THINK YOU'D PROBABLY RATHER WHAT YOU

14   ARTICULATED APPLYING TO BOTH.

15             MR. FERRALL:  OKAY.

16             THE COURT:  ALL RIGHT.

17             MR. FERRALL:  THANK YOU.

18             MR. PAK:  THANK YOU, YOUR HONOR.

19             THE COURT:  THERE IS A REQUEST BY ARISTA FOR I GUESS

20   WHAT YOU CALL SURREBUTTAL -- I DON'T KNOW WHAT WE'RE CALLING

21   IT -- ON THE FAIR USE DEFENSE AND ON DISGORGEMENT.

22        I THINK IT IS AN ISSUE COMPLETELY WITHIN THE COURT'S

23   DISCRETION AND I AM GENERALLY PRETTY LIBERAL ON THAT.  I WILL

24   ALLOW THAT.

25             IT'S NOT TO BE CUMULATIVE.  IT'S NOT TO REMIND THE JURY OF
```

```
 1    EVERYTHING THAT YOU DID BEFORE.

 2         BUT, FRANKLY, YOUR CLOCK IS RUNNING.  YOUR HOURS ARE

 3    RUNNING OUT, SO I THINK THAT'S WHAT REGULATES IT.

 4              MR. VAN NEST:  THAT'S FINE, YOUR HONOR.  THANK YOU.

 5              THE COURT:  IT WILL REGULATE THAT REQUEST.

 6              MR. VAN NEST:  THANK YOU.

 7              MR. NELSON:  AND JUST TO CLARIFY, THAT WILL BE THE

 8    SAME ON BOTH SIDES?

 9              THE COURT:  YOU ALWAYS GET THE LAST WORD ON -- IT

10    REALLY HAS TO DO WITH THE BURDEN OF PROOF ISSUE AND GIVING THE

11    OPPORTUNITY, AND YES, IT WILL.  I'M NOT ONE TO REALLY CUT THAT

12    OFF.  FRANKLY, IT'S THE JURY THAT KEEPS THINKING, WHEN WILL

13    THEY STOP?  SO THAT WILL BE YOUR GUIDE.

14         AND AS I SAY, I GET PAID WHETHER I'M WORKING OR NOT.  SO

15    THAT'S FINE.

16              MR. NELSON:  THANK YOU, YOUR HONOR.

17              MR. VAN NEST:  THANK YOU, YOUR HONOR.

18              THE COURT:  THEN -- THIS IS A JURY INSTRUCTION ISSUE,

19    SO I'M RAISING IT NOW.  WE HAVE TO DEFINE THE WORK-IN-SUIT

20    HERE.

21         MR. PAK, I'VE READ OVER -- I WENT BACK OVER A NUMBER OF

22    FILINGS THAT YOU HAD TO SEE HOW YOU'VE DEFINED THE WORK HERE,

23    AND I JUST WANT TO BE SURE THAT I UNDERSTAND THAT THERE'S NO

24    CHANGE, THAT WHAT WAS CALLED CISCO CLI IS THE USER INTERFACE?

25              MR. PAK:  YES.
```

```
 1              THE COURT:  THAT THEY ARE ONE AND THE SAME?

 2              MR. PAK:  CORRECT, YOUR HONOR.

 3              THE COURT:  OKAY.

 4              MR. PAK:  I THINK THAT WHERE THE CONFUSION CAME IN

 5      WAS THAT BECAUSE WE HAD SOME OF THAT -- WE HAD DONE SOME OF

 6      THAT SELF-FILTERING, BOTH IN TERMS OF THE EVIDENCE OF COPYING

 7      THAT WE SAW, AS WELL AS LEADING UP, FOR EXAMPLE, TO SINGLE WORD

 8      COMMANDS AND OTHER ELEMENTS AND USER INTERFACE --

 9              THE COURT:  YEAH.

10              MR. PAK:  -- THAT WHEN WE PRESENTED IT TO YOU IN THE

11      CONTEXT OF SUMMARY JUDGMENT OR OTHER PRIOR BRIEFINGS, WE WERE

12      LOOKING AT VERY SPECIFIC NUMBERS AND COUNTS OF THINGS.

13          BUT CLEARLY THAT'S NOT THE LAW.  THE WAY THE LAW WORKS IS

14      I GO IN, I FILE A REGISTRATION FOR THIS PROGRAM, I GET A

15      COPYRIGHTED PROTECTION IN BOTH THE CODE AND DISTINCTLY IN THE

16      USER INTERFACE.  SO THE COMMAND INTERFACE IS WHAT WE'VE BEEN

17      CALLING THE USER INTERFACE INTERCHANGEABLY.

18              THE COURT:  GOOD.

19              MR. PAK:  IT'S CALLED -- SO FROM OUR PERSPECTIVE,

20      IT'S ALWAYS BEEN CONSISTENT.

21              THE COURT:  THAT'S WHAT I GLEANED FROM MY READING.

22          BUT WHAT I DON'T KNOW IS WHAT MAKES UP THE TOTALITY OF THE

23      USER INTERFACE, AND I -- SO I CAN EXCLUDE ALL OF THE LITERAL

24      ELEMENTS, THE CODE.

25          BUT THE USER INTERFACE IS MORE THAN THE ELEMENTS AT ISSUE
```

```
 1          IN THIS CASE, I WOULD PRESUME.

 2               MR. FERRALL:  CORRECT, ABSOLUTELY.

 3               THE COURT:  AND SO IF WE HAVE A -- AND SO I DON'T

 4     ACTUALLY NEED TO KNOW THAT NOW, BUT YOU DO.

 5          AND I HAVE TO, IN A JURY INSTRUCTION, I HAVE TO INFORM THE

 6     JURY WHAT THE WORK IS.  AND SO IT'S THE USER INTERFACE AND IT

 7     HAS -- IT HAS BOUNDARIES THAT ARE BIGGER THAN THE ACCUSED

 8     ELEMENTS IN THIS CASE.

 9          AND SO IS THAT CORRECT?

10               MR. FERRALL:  IT'S -- I'M SORRY, YOUR HONOR, BUT IT'S

11     NOT.

12               THE COURT:  NO?

13               MR. FERRALL:  AND THIS WAS ACTUALLY --

14               THE COURT:  I KNOW THAT YOU ARGUE IT'S THE ENTIRE

15     IOS.  I'M NOT SUGGESTING OTHERWISE.

16          BUT I WANT TO KNOW WHAT CISCO IS SAYING IT IS.  WE'LL HAVE

17     TO WORK IT OUT.  I'M NOT SAYING IT'S THE -- YOU'RE RIGHT, YOUR

18     POSITION IS VERY DIFFERENT.

19               MR. FERRALL:  IT'S VERY DIFFERENT.

20          AND, YOUR HONOR, TO BE CLEAR, ALTHOUGH WE PROBABLY CAN AND

21     WILL TALK ABOUT THIS IN ANALYTIC DISSECTION, THIS WAS THE

22     THRUST OF OUR MOTION IN LIMINE NUMBER 2.  IT WAS CISCO, YOU

23     WERE AT -- WE ASKED CISCO, WHAT'S THE ASSERTED WORK?  AND THEY

24     ANSWERED THAT IN AN INTERROGATORY, AND THEIR ANSWER WAS 26

25     REGISTERED IOS'S, ON AN XOS, 26 COPYRIGHTED REGISTERED WORKS.
```

```
1        THAT'S THEIR ANSWER.

2            SO THE MOTION IN LIMINE IS TO SAY, YOU HAD YOUR CHANCE TO

3    TELL US THAT THERE WAS SOME OTHER WORK AT ISSUE THAT WAS

4    DIFFERENT THAN THE REGISTERED WORK, AND YOU DIDN'T.

5            AND WHILE THERE'S ALSO SUBSTANTIVE LEGAL REASONS WHY THEY

6    CAN'T SUE ON SOMETHING LESS THAN THE REGISTRATION -- AND WE

7    RESPECTFULLY BUT STRONGLY DISAGREE WITH MR. PAK'S

8    REPRESENTATION OF THE LAW -- BUT REGARDLESS, JUST BASED UPON

9    PRECLUSION, THEIR CHANCE TO IDENTIFY AND DEFINE THE ASSERTED

10   WORK WAS BACK IN RESPONDING TO DISCOVERY.

11           AND THIS HAS -- THIS IS COMPLICATED --

12           THE COURT:  YES, IT IS.

13           MR. FERRALL:  -- BECAUSE, YOUR HONOR, THERE IS NO

14   CISCO CLI.  THEY CERTAINLY HAVEN'T DEFINED IT.

15           THE COURT:  BUT THERE IS A USER INTERFACE.

16           MR. FERRALL:  BUT, YOUR HONOR, THERE'S --

17           THE COURT:  WELL -- CORRECT?

18           MR. PAK:  YES.

19           MR. FERRALL:  THERE'S A USER INTERFACE FOR EACH --

20   FOR EACH OPERATING SYSTEM THERE'S A USER INTERFACE.

21           THE COURT:  I UNDERSTAND THAT.

22           MR. FERRALL:  AND EVERY ONE IS DIFFERENT.

23           THE COURT:  SO I THINK I WAS UNDER THE MISCONCEPTION

24   THAT -- OR -- AND I THINK IT WASN'T ALL MY FAULT, I THINK IT

25   WAS ARGUED A LITTLE BIT DIFFERENTLY, BUT I'LL SHOULDER SOME OF
```

1    THAT, MR. PAK.

2        THE USER INTERFACE IS A BIGGER UNIVERSE THAN THE -- WHAT I

3    UNDERSTOOD YOU WERE ASSERTING IS CISCO'S CLI, WHICH WAS THAT

4    APPENDIX TO THE COMPLAINT.

5        AND I CERTAINLY RECOGNIZE THAT ARISTA ARGUES IT'S THE

6    ENTIRE IOS.

7        BUT I THINK THE CASE LAW IS PRETTY CLEAR THAT A

8    REGISTRATION GIVES A COPYRIGHT TO BOTH THE CODE AND TO THE USER

9    INTERFACE.

10        I'LL HAVE TO RESOLVE THE ISSUE OF WHICH IT IS, AND I'M NOT

11    DOING THAT NOW, SO DON'T WORRY ABOUT THAT.

12        BUT THEN I BECAME CONCERNED, MR. PAK, WHEN IN YOUR PAPERS

13    YOU WANTED TO ASSERT THE FIVE BUILDING BLOCKS, AS YOU CALL

14    THEM, AS SEPARATE WORKS AS WELL, AND THEN I BECAME A LITTLE BIT

15    ALARMED.

16        MR. PAK:  I UNDERSTAND THAT, YOUR HONOR, AND THAT'S

17    REALLY NOT -- TO THE EXTENT THAT WE WERE CAUSING YOU ANY

18    CONFUSION OR CAUSING OTHERS ANY CONFUSION, YOU KNOW, I THINK IT

19    WAS IN THE CONTEXT OF THE SPECIFIC ISSUES WHERE WE HAD

20    CHALLENGES TO DIFFERENT ASPECTS OF THE INTERFACE.

21        THE COURT:  OKAY.

22        MR. PAK:  SO A USER INTERFACE IS THE WAY IN WHICH YOU

23    INTERACT WITH A COMPUTER PROGRAM.  IT IS NOT THE CODE BECAUSE

24    THE USER DOESN'T SEE THE CODE.  THAT CODE IS TRANSLATED FROM

25    SOURCE CODE FORM, MADE INTO 0'S AND 1'S IN BINARY FORM.  WHEN

1    IT EXECUTES, IT PRESENTS A USER INTERFACE.

2             THE COURT:  YES.

3             MR. PAK:  THAT USER INTERFACE HAS BOTH INPUT AND

4    OUTPUTS, SO WHAT THE USER CAN TYPE IN OR CLICK, AND THAT -- THE

5    REASON WHY WE USE CLI WAS TO DISTINGUISH IT FROM GRAPHICAL USER

6    INTERFACES, WHICH ARE CALLED GUI.  CLI IS THE COMMAND LINE

7    INTERFACE.

8             THE COURT:  THAT'S FINE.

9             MR. PAK:  SO THAT'S THE REASON WE WERE USING THAT.

10        I THINK WHERE SOME OF THE CONFUSION MAY HAVE COME IN IS

11   WHEN WE TALK ABOUT SOME OF THESE BUILDING BLOCKS, THEY'RE

12   REALLY, I GUESS, AN INARTFUL WAY FOR A LAWYER TO TRY TO EXPLAIN

13   WHAT THE USER INTERFACE IS DOING, BOTH IN TERMS OF INPUT AND

14   OUTPUT.

15            THE COURT:  WELL, I DON'T -- I DIDN'T -- I THINK YOU

16   ACTUALLY STATED THAT THE WORK WAS THE USER INTERFACE AND.  I

17   UNDERSTOOD YOU TO MEAN SEPARATELY EACH OF THE FIVE BUILDING

18   BLOCKS.

19            MR. PAK:  NO.

20            THE COURT:  SO YOU MEAN THE USER INTERFACE IS

21   COMPRISED OF.

22            MR. PAK:  EXACTLY.

23            THE COURT:  AND THAT'S FINE.

24            MR. PAK:  THAT IS OUR POSITION, YES.

25            THE COURT:  AND BUILDING BLOCK DOES INFER THAT.

1           SO AT LEAST I HAVE NOW -- I UNDERSTAND THAT I HAVE

2      COMPETING VIEWS ON WHAT THE WORK IS, AND WE'VE NARROWED IT TO

3      EITHER BE THE USER INTERFACE OR THE ENTIRE IOS, AND THAT THE

4      IOS -- THERE MAY BE VERSIONS OF THE IOS, AND THE REGISTRATIONS

5      MAKE THAT CLEAR.

6           OKAY.  THAT'S ALL I WANTED TO TOUCH ON TODAY.

7                MR. FERRALL:  FAIR ENOUGH.

8                THE COURT:  OKAY.

9                MR. FERRALL:  AND I -- BUT THERE IS -- THE PROBLEM

10     WITH HAVING -- PUT ASIDE THE SUBSTANTIVE COPYRIGHT LAW ISSUE.

11          THE PROBLEM WITH CISCO NOT HAVING EVER PROVIDED THIS IN

12     DISCOVERY IS THAT EVEN THE ANSWER THAT THE COURT HEARD TODAY IS

13     STILL INCREDIBLY AMORPHOUS.  IT -- FOR EXAMPLE, WHAT ARE THE

14     COMMANDS FOR ANY PARTICULAR REGISTERED WORK THAT ARE PART OF

15     THAT USER INTERFACE?  WE'VE NEVER GOTTEN THAT.

16               THE COURT:  WELL, THAT'S AN INTERESTING ISSUE AND,

17     YOU KNOW, I PICKED UP ON THE ARGUMENT YOU MADE AT SUMMARY

18     JUDGMENT THAT THE TERM "CISCO CLI" WAS CONSTRUCTED AND ITS

19     CONTOURS WERE DEFINED BY COUNSEL, AND THAT'S A BIG PART OF MY

20     ORDER.

21          AND THEN AS I'VE BEEN GOING BACK THROUGH THIS, I WAS

22     TRYING TO DETERMINE WHETHER CISCO HAD EVOLVED ITS DEFINITION OR

23     NOT.  IT'S NOT -- I'M SURE THERE'S MUCH ROOM FOR DEBATE ON

24     THAT.

25          BUT A USER INTERFACE IS RECOGNIZED OUTSIDE OF LITIGATION

1    AND IT PREEXISTS LITIGATION.  SO THAT GETS US OVER THE HURDLE

2    OF WHAT CISCO ARGUES IS THE WORK HAVING BEEN CREATED FOR THE

3    LITIGATION.

4         AND THE -- I DON'T KNOW THE CONTOURS OF THE USER INTERFACE

5    EITHER, BUT I KNOW THAT IT IS DEFINABLE.

6         THIS IS A NEW -- THIS IS AN ISSUE THAT WE'RE GOING TO HAVE

7    TO DISCUSS, AND IT'S GOING TO BE -- IT'S SOMETHING THAT THE

8    JURY INSTRUCTIONS NEED TO DEAL WITH, SO YOU NEED TO BE PREPARED

9    TO ESTABLISH THAT.  I DON'T KNOW -- YOU KNOW, AND I THINK ON

10   THE 18TH IS WHEN WE'RE GOING TO DO IT.  YOU'RE GOING TO HAVE TO

11   SHOW ME THE DISCLOSURES AND ARGUE IT.

12        BUT CISCO DOES PROVIDE SOME CASE LAW ON THE KIND -- THE

13   COPYRIGHT PROTECTION THAT ONE GETS FOR REGISTERING FOR BOTH THE

14   USER INTERFACE AND FOR THE SOURCE CODE.

15        MR. FERRALL:  TO BE CLEAR, YOUR HONOR, THE -- I COULD

16   SHOW YOU THE DISCLOSURES THAT WERE THE RESPONSE TO THE

17   INTERROGATORIES.

18        THE COURT:  AND WE'LL DO THAT ON THE 18TH.

19        MR. FERRALL:  OKAY.  FAIR ENOUGH.

20        THE COURT:  OKAY, GOOD.

21        MR. FERRALL:  THE LAW IS THAT YOU GET COPYRIGHT

22   PROTECTION FOR THE USER INTERFACE, BUT WHETHER THERE'S A

23   SEPARATE WORK THAT'S SOMEHOW SMALLER THAN THE REGISTERED WORK

24   DEPENDS UPON THE ECONOMIC VALUE OF THAT SMALLER UNIT.

25        THE COURT:  AND THAT'S WHAT WE HAVE TO -- AND THOSE

1        ARE THE ISSUES WE'RE GOING TO HAVE TO DEAL WITH.

2            IF YOU FEEL THAT YOU WANT TO BRIEF THAT, MAYBE IT'S A

3        COMPLICATED ENOUGH ISSUE THAT I SHOULDN'T JUST DEAL WITH IT ON

4        THE FLY AT OUR CHARGING CONFERENCE.

5                MR. FERRALL:  WELL, I THINK SO, YES.  I THINK SO.

6                THE COURT:  OKAY.

7                MR. FERRALL:  BUT THAT'S THE PREJUDICE FROM NOT

8        HAVING IT DISCLOSED IN DISCOVERY, YOUR HONOR, IS THAT IT TURNED

9        INTO A FACTUAL QUESTION THAT NO ONE KNEW WE EVEN NEEDED TO

10       EXPLORE BECAUSE CISCO DEFINED ITS ASSERTED WORK AS THE

11       REGISTERED WORK THROUGHOUT THE CASE.

12               THE COURT:  OKAY.  SO THIS PERTAINS TO YOUR PROPOSED

13       JURY INSTRUCTION NUMBER 45.  I DO BELIEVE I NEED TO INSTRUCT

14       THE JURY ON WHAT THE WORK IS, AND THEN YOU'LL BOTH HAVE TO --

15       WHATEVER I DECIDE IS WHAT YOU'RE GOING TO BOTH HAVE TO DEAL

16       WITH.  SO WE WILL ADDRESS THAT.

17           I WOULD ACCEPT SHORT BRIEFS ON THAT.  YOU KNOW MY

18       DEFINITION OF "SHORT" IS THREE PAGES.

19           AND I WOULD LIKE THAT -- LET'S KEEP THAT ON THE 10TH AS

20       WELL.

21               MR. VAN NEST:  VERY WELL, YOUR HONOR.

22               THE COURT:  THANK YOU.

23           AGAIN, I'M JUST TRYING TO RAISE SOME ISSUES BECAUSE IT'S

24       TOO MUCH FOR ME TO DEAL WITH LATER.

25               CISCO SAYS IN ITS JOINT SUBMISSION THAT ANALYTIC

```
1    DISSECTION -- REGARDING ANALYTIC DISSECTION THAT THE SCOPE OF

2    COPYRIGHT PROTECTION, THIN OR BROAD PROTECTION, IS NOT PART OF

3    ANALYTIC DISSECTION.

4         THAT MAY BE TRUE, BUT IT'S A RESULT -- IT IS THE NEXT

5    ORDER OF BUSINESS FOR THE COURT AFTER ANALYTIC DISSECTION AND

6    DOES NEED TO BE DEALT WITH IN THE JURY INSTRUCTIONS.

7         IS THAT AGREED?

8              MR. PAK:  YES, AGREED, YOUR HONOR.

9              THE COURT:  OKAY, GOOD.

10        JUST FOR MY CLARITY, IT SEEMS TO ME THAT THE ISSUE OF

11   ORIGINALITY IS GOING TO BE ADDRESSED BOTH BY THE COURT IN

12   ANALYTIC DISSECTION AND LATER BY THE JURY.  IS THAT CORRECT?

13             MR. FERRALL:  I THINK THAT'S RIGHT, YOUR HONOR.

14             THE COURT:  OKAY.

15             MR. PAK:  WELL, YOUR HONOR, I THINK IT DEPENDS ON

16   WHAT YOU DO, AND I THINK THAT I WOULD SUGGEST YOUR HONOR MAY

17   TAKE A LOOK AT THE SYNOPSIS CASE, THE JUDGE CHESNEY CASE, WHERE

18   THERE WERE VERY SIMILAR ISSUES.  THERE WAS A COMMAND LINE

19   INTERFACE IN THAT CASE THAT CAME OUT OF REGISTRATIONS.  THERE

20   WAS A FINDING OF COPYRIGHT INFRINGEMENT.  PRECEDING THAT JURY

21   FINDING, THERE WERE ISSUES OF PROTECTABILITY BEING ARGUED IN

22   THE CONTEXT OF SUMMARY JUDGMENT, AND THERE WERE SOME ANALYTIC

23   DISSECTION BRIEFINGS THAT WERE FILED AS TRIAL OCCURRED.

24        BUT ULTIMATELY WHAT JUDGE CHESNEY DOES, AND WE REFLECTED

25   SOME OF THAT IN THE JURY INSTRUCTIONS, RATHER THAN GIVING
```

1    DETAILED JURY INSTRUCTIONS ON DISSECTION AND LEAVING IT ALL TO

2    THE JURY, SHE ULTIMATELY CONCLUDED THAT WHAT WAS BEING ASSERTED

3    AS THE COPYRIGHTED WORK, OR THE USER INTERFACE IN THAT CASE,

4    WHICH WAS THE COMMAND LINE INTERFACES, THAT THAT WAS ORIGINAL

5    AND PROTECTABLE TO SYNOPSIS.

6         SO I THINK IT DEPENDS ON HOW YOUR HONOR APPROACHES THIS

7    ISSUE, AND WE'VE TAKEN A LOOK AT THE CHALLENGES THAT THEY'VE

8    RAISED AND LARGELY WE DON'T BELIEVE THESE ARE FACTUAL

9    CHALLENGES.  WE BELIEVE IT'S AN APPLICATION OF LAW TO FACTS.

10              THE COURT:  OKAY.

11              MR. PAK:  SO WE ARE PREPARED TO ARGUE IN FRONT OF YOU

12   ON THE 21ST AND 22ND WHY WE BELIEVE THAT, BASED ON THE RIGHT

13   UNDERSTANDING OF THE LAW WITH THE LARGELY UNDISPUTED FACTS,

14   MEANS THAT THESE ARE ORIGINAL AND WE FILTERED OUT THE THINGS

15   THAT ARE NOT ORIGINAL TO US.

16        SO IF YOUR HONOR COMES TO THE CONCLUSION, WHETHER THAT'S

17   SHORTLY AFTER OUR ARGUMENT OR DURING THE COURSE OF PERHAPS SOME

18   OF THE ISSUES, PERHAPS YOUR HONOR MIGHT SAY, I NEED SOME

19   WITNESS TESTIMONY DURING TRIAL.  BUT I THINK IT MIGHT BE

20   SOMETHING THAT YOU MAY BE ABLE TO RESOLVE PRIOR TO THE JURY

21   ACTUALLY MAKING THEIR DECISION.

22              THE COURT:  ALL RIGHT.  SO THERE WILL BE SEVERAL

23   LAYERS OF DECISION MAKING ON ORIGINALITY.  THE WORK AS A WHOLE

24   NEEDS -- I HAVE NOT RULED THAT THE WORK AS A WHOLE IS ORIGINAL,

25   WHETHER IT'S THE IOS OR THE USER INTERFACE, AND I DON'T KNOW

1    THAT ARISTA WOULD CONTEST -- WOULD CONTEND THAT THE IOS IS NOT

2    ORIGINAL.  THAT ISSUE HAS NEVER BEEN PRESENTED.  THE ISSUE WAS

3    WHETHER THE CLI WAS.

4          MR. VAN NEST:  RIGHT.

5          THE COURT:  SO I'LL ASK YOU TO THINK ABOUT THAT,

6    BECAUSE THAT ASSISTS ME IN INSTRUCTING THE JURY, AND TO ALSO BE

7    PREPARED IN CASE I AGREE WITH CISCO THAT THE WORK IS THE USER

8    INTERFACE, AND I'LL NEED A DEFINITION OF THAT BECAUSE I KNOW

9    IT'S MORE THAN WHAT I'VE SEEN, BUT I DON'T KNOW -- I DON'T KNOW

10   THE CONTOURS OF IT.  SO YOU'LL PRESENT THAT.

11        BUT, YOU KNOW, IN MANY OF THESE CASES AT THAT HIGH LEVEL,

12   THE DEFENSE DOES NOT CONTEST ORIGINALITY, AND IT GOES TO THE

13   ELEMENTS THEMSELVES AND WHETHER THE ELEMENTS ARE PROTECTABLE.

14        SO YOU'LL LET ME KNOW ABOUT THAT.

15        OKAY.  THAT BRINGS ME TO THE END OF MY LONG LIST OF

16   ISSUES.

17        LET ME SAY THAT THE DEGREE OF DISAGREEMENT IN THE JURY

18   INSTRUCTIONS IS MORE THAN I CAN MANAGE IN THE TIME I HAVE.

19   YOU'RE GOING TO HAVE TO DO MORE WORK TO COME CLOSER TOGETHER ON

20   THE INSTRUCTIONS.

21        IT WOULD -- I'M NOT GOING TO START THE TRIAL UNTIL I HAVE

22   A PRETTY SOLID SET OF JURY INSTRUCTIONS.  I RECOGNIZE THAT

23   WE'RE GOING TO HAVE TO DO SOME CLEAN UP AT THE END, BUT I DON'T

24   WANT -- AND I DON'T THINK YOU DO, EITHER -- THIS PRESSURE OF

25   DEVELOPING THESE COMPLICATED JURY INSTRUCTIONS THE NIGHT BEFORE

1    WE CHARGE THE JURY, ESPECIALLY KNOWING WE HAVE A HARD STOP

2    BECAUSE OF THE HOLIDAYS.

3         SO I NEED -- I NEED MORE WORK FROM YOU ON THIS.  I NEED

4    YOU TO -- I NEED YOU TO NARROW THE SCOPE.  YOU'VE JUST -- I

5    MEAN, YOU DISAGREE ABOUT EVERYTHING IN FUNDAMENTAL WAYS.

6         AND I HAVE TO SAY, WHEN I HAVE ATTORNEYS OF YOUR STATURE

7    BEFORE ME, I HAVE TO RELY ON YOU TO UNDERSTAND THE REASONABLE

8    BOUNDARIES OF THE LAW AND NOT TO TRY TO EXPAND THE LAW ON EVERY

9    POINT FOR THE SAKE OF A WIN, A WIN HERE AND A LOSS SOMEWHERE

10   ELSE.  IT JUST DOESN'T ASSIST US.

11        SO I NEED -- YOU HAVE TO REPRESENT YOUR CLIENTS ZEALOUSLY.

12   I KNOW YOU WILL.  I'VE NEVER DOUBTED THAT.

13        BUT THIS IS UNREASONABLE, AND SO I NEED MORE WORK ON THAT,

14   AND SO I'M GOING TO EXPECT A FURTHER REVISION OF THIS 225 --

15   227-PAGE JURY INSTRUCTION SUBMISSION.

16        I ALSO LOOKED AT THE VERDICT FORMS, AND THEY MADE ME

17   LAUGH, BECAUSE IF I READ THE JURY THESE INSTRUCTIONS FOR A DAY

18   AND A HALF AND THEN GIVE THEM THAT VERDICT FORM, THEY'RE GOING

19   TO SAY, WHO NEEDS THE JURY INSTRUCTIONS?

20        MR. PAK, YOUR VERDICT FORM IS SO SIMPLE, IT WOULD -- IT

21   WOULD CAUSE THE JURY NOT TO EVEN CONSIDER THE JURY

22   INSTRUCTIONS.  THAT'S A PROBLEM THAT I HAVE.

23        AND I KNOW -- I GUESS WE CAN HAVE A GENERAL VERDICT, "WE,

24   THE JURY, FIND UNANIMOUSLY FOR PLAINTIFF AND AGAINST THE

25   DEFENDANT."  THAT'S ALLOWED.

```
 1                BUT I'M STRUGGLING WITH THAT.

 2                MR. PAK:  YOUR HONOR, WE WENT BACK AND FORTH,

 3     HONESTLY, INTERNALLY ABOUT -- BECAUSE WE -- I KNOW YOUR HONOR

 4     WANTED SOME GRANULARITY IN THE INSTRUCTIONS.

 5                AND, AGAIN, WHEN WE LOOKED AT THE SYNOPSIS CASE, BECAUSE

 6     THAT WAS SORT OF THE CLOSEST ANALOGY TO THIS TYPE OF CASE, WE

 7     FOUND THAT JUDGE CHESNEY DID DEAL WITH SOME OF THESE ISSUES

 8     ABOUT INDUSTRY STANDARDS AND COPYRIGHTABILITY ISSUES.  SHE MADE

 9     A FILTRATION FINDING THAT WAS REFLECTED IN THE JURY

10     INSTRUCTIONS, AND THEN THE VERDICT FORM THAT SHE PRESENTED TO

11     THE JURY WAS VERY SIMPLE.  SO OUR MODEL WAS REALLY WHAT JUDGE

12     CHESNEY DID IN THAT CASE.

13                SO WE WENT BACK AND FORTH, AND I THINK TO THE EXTENT -- I

14     ABSOLUTELY AGREE THAT WE HAVE TO DO A LOT MORE WITH THE MEET

15     AND CONFER ON THE JURY INSTRUCTIONS.

16                BUT TO THE EXTENT THAT WE ARE GOING THROUGH THE FILTRATION

17     PROCESS NOW, I MEAN WE -- OUR ORIGINAL VIEW WAS MAYBE IT'S NOT

18     NECESSARY TO DO A LOT MORE EXTRA WORK SINCE IT WASN'T TEED UP

19     IN THE SUMMARY JUDGMENT CONTEXT.

20                YOUR HONOR WANTS US TO DO THE WORK, WE'RE GOING TO DO THE

21     WORK.

22                ONCE WE GET PAST THE FILTRATION, ONCE WE WORK ON THE JURY

23     INSTRUCTIONS, OUR VIEW IS THE VERDICT FORM COULD BE RELATIVELY

24     SIMPLE.  THEY'RE GOING TO BE INSTRUCTED ON THESE ISSUES, AND I

25     THINK WHETHER IT'S FAIR USE, THEY CAN GO BACK AND LOOK AT WHAT
```

```
1    THE FAIR USE INSTRUCTIONS ARE AND GO FROM THERE.

2              THE COURT:  SO IT ACTUALLY BEGS THE QUESTION, AND IN

3    ARISTA'S PROPOSED VERDICT FORM, THE -- THERE WAS A QUESTION

4    THAT THE JURY ACTUALLY MAKE A DETERMINATION ON EACH OF THE

5    ALLEGED ELEMENTS.  CORRECT?

6              MR. VAN NEST:  EACH OF THE -- WELL, EACH SEPARATE

7    COPYRIGHT -- CLAIMED COPYRIGHTED WORK.  THEY'RE CLAIMING

8    PROTECTION FOR EVERY, EVERY COMMAND SO FAR.

9              THE COURT:  SO THAT'S WHAT -- THAT'S WHAT I'M TRYING

10   TO DETERMINE.  YOU -- MR. VAN NEST, I THINK THAT CISCO'S BEEN

11   VERY UNCLEAR ON THIS.  WHAT'S THE WORK?  IF THE WORK IS THE

12   USER INTERFACE AND THESE ARE ITS ELEMENTS, THAT'S DIFFERENT

13   THAN SAYING EACH LINE IS A WORK IN AND OF ITSELF.

14             MR. VAN NEST:  THEY'RE SAYING THEY'RE ENTITLED TO

15   INDIVIDUAL PROTECTION --

16             THE COURT:  SO EACH ONE WOULD BE A WORK?

17             MR. VAN NEST:  -- ON EACH LINE, AND IF WE'RE GOING TO

18   SUFFER A VERDICT THAT TELLS OUR CLIENT WHAT THEY CAN AND CANNOT

19   USE, THEN UNFORTUNATELY -- AND THAT'S WHY WE DID IT IN THE

20   APPENDIX -- WE NEED TO KNOW.

21        BECAUSE MANY OF THESE ARE, ARE TWO WORD COMMANDS, LIKE

22   "SET CLOCK."  IS IT REALLY GOING TO BE THE CASE THAT ARISTA

23   CAN'T USE "SET CLOCK"?  "BOOT SYSTEM" -- YOU KNOW.

24             THE COURT:  SO "SET CLOCK" IS PROBABLY THE BEST

25   EXAMPLE OF ONE THAT I'M UNLIKELY TO FIND PROTECTION FOR, BUT I
```

1    DON'T KNOW.  WE HAVEN'T GOTTEN TO THAT YET.  BUT THAT WAS THE

2    ONE THAT JUMPED OUT AT ME BECAUSE IT WAS IN ENGLISH.  SO THAT

3    WAS REALLY --

4          MR. VAN NEST:  THERE ARE MANY LIKE THAT.

5       AND THE PROBLEM IS, SINCE THEY'VE SAID FROM THE

6    BEGINNING -- AND I'VE ALWAYS ASSUMED THAT THIS WOULD GET CUT

7    DOWN, AND I'M THE ONE THAT'S SAYING THAT 22 HOURS ISN'T ENOUGH

8    FOR THIS THING THEY'VE GOT ON OUR HANDS RIGHT NOW, BECAUSE

9    THEY'RE STILL SAYING THEY GET INDIVIDUAL PROTECTION FOR EACH

10   COMMAND.

11         MR. PAK:  JUST TO BE CLEAR, THAT'S NOT WHAT WE'RE

12   SAYING.

13         THE COURT:  OKAY.  SEE, I THINK THAT HAS EVOLVED.

14         MR. PAK:  THIS IS WHY THIS IS A IMPORTANT

15   CONVERSATION.  WE HAD A PREVIEW OF THIS CONVERSATION LAST TIME

16   WE WERE IN YOUR HONOR'S CHAMBERS.

17      THE COPYRIGHTED -- WHAT WE'RE SEEKING AS A COPYRIGHTED

18   PROTECTION IS THE USER INTERFACE.  WE BELIEVE WE'VE BEEN CLEAR.

19   WE'VE CALLED IT BY DIFFERENT NAMES, BUT EVEN IN OUR COMPLAINT,

20   WE MADE IT VERY CLEAR THAT WHEN WE SAID COMMAND LINE INTERFACE,

21   THAT'S THE USER INTERFACE OF THE SYSTEM.

22      SO THAT'S THE COPYRIGHTED WORK OR COPY -- OR PORTION OF

23   THE COPYRIGHTED WORK THAT'S BEEN ASSERTED IN THIS CASE.

24         THE COURT:  YEAH.

25         MR. PAK:  NOW, THE ONLY REASON WE'RE TALKING ABOUT

1    THESE ELEMENTS BEING PROTECTABLE IS THAT THERE'S A SEPARATE

2    FILTRATION PROCESS.

3              THE COURT:  YES, THAT'S PART OF IT.

4              MR. PAK:  THE FILTRATION PROCESS IS NOT ABOUT WHETHER

5    INDIVIDUAL ELEMENTS ARE COPYRIGHTABLE OR COPYRIGHTED.

6         IT'S A QUESTION OF WHAT EVIDENCE SHOULD BE FILTERED BEFORE

7    IT'S PRESENTED TO THE JURY BECAUSE -- FOR EXAMPLE, I WAS HAVING

8    THIS CONVERSATION WITH ONE OF MY COLLEAGUES.  IF MR. VAN NEST

9    WRITES A PROGRAM IN JAVA PROGRAMMING LANGUAGE AND I WRITE

10   ANOTHER PROGRAM IN THE JAVA PROGRAMMING LANGUAGE, THERE ARE

11   MANY THINGS THAT BOTH PROGRAMS WILL SHARE JUST BECAUSE WE

12   SELECTED THE SAME PROGRAMMING LANGUAGE.  CERTAIN THINGS HAVE TO

13   BE IN CERTAIN SEQUENCE.  CERTAIN THINGS HAVE TO BE IN

14   CERTAIN -- I HAVE TO USE CERTAIN COMMAND NAMES BECAUSE THAT

15   HAPPENS TO BE JAVA.

16        FOR THOSE THINGS, TO THE EXTENT THAT I'M ALLEGING

17   COPYRIGHT INFRINGEMENT AND COPYRIGHT PROTECTION IN MY ORIGINAL

18   PROGRAM CODE, NOT THE JAVA PROGRAMMING LANGUAGE ITSELF, THERE

19   ARE SOME THINGS THAT HAVE TO BE FILTERED OUT BECAUSE THE JURY

20   OTHERWISE MAY BE CONFUSED THAT THEY SEE SIMILARITY THAT REALLY

21   ISN'T ABOUT MY ORIGINAL EXPRESSION, IT'S ABOUT THE USE OF A

22   PROGRAMMING LANGUAGE.

23        SO HERE WHAT WE'RE SAYING IS THAT WE'RE NOT ASKING FOR

24   COPYRIGHT PROTECTION OF A SINGLE WORD OR SINGLE MULTIPLE WORDS,

25   OR EVEN BUILDING BLOCKS OF THINGS.  WHAT WE'RE SAYING IS THAT

1    THE WORK THAT WE'VE ASSERTED IS WHAT WE CALL CLI, USER

2    INTERFACE, THAT'S PART OF WHEN WE REGISTER THESE LARGE NUMBER

3    OF DOCUMENTS, THE SOURCE CODE, WE HAVE PROTECTION OF THAT.

4    WE'RE ALLEGING THAT.  WE'RE ASSERTING THAT AS PART OF THE

5    COPYRIGHTED WORK THAT WE HAVE.

6         AND THEN NOW THE QUESTION IS, OKAY, YOU BROUGHT A SUMMARY

7    JUDGMENT MOTION, WE'RE GOING TO TRIAL, WHAT IS THE EVIDENCE

8    THAT OUR TEAM CAN PRESENT TO THE JURY THAT IF THEY CONSIDER IT

9    AND THEY FIND SIMILARITY BASED ON THAT EVIDENCE, THAT IT'S

10   ACTIONABLE COPYING?

11              THE COURT:  ALL RIGHT.

12              MR. PAK:  AND THAT'S THE REASON --

13              THE COURT:  THAT'S WHY -- I DON'T THINK THAT'S WHAT

14    YOU'VE -- THAT'S NOT WHAT I'VE UNDERSTOOD YOU TO BE SAYING AT

15    OTHER TIMES.

16         BUT CERTAINLY IF THE JURY ONLY FINDS COPYING OF

17   UNPROTECTABLE ELEMENTS, THEN ARISTA IS GOING TO WIN.  AND SO

18   THAT'S THE FILTRATION PROCESS.  WE NEED TO LET THEM KNOW WHAT

19   ARE THE PROTECTABLE ELEMENTS.

20         IT DOESN'T GO TO WHETHER THE USER INTERFACE OR THE IOS,

21   WHICHEVER WE DECIDE THE WORK IS, IS ORIGINAL AND COPYRIGHTABLE,

22   AND I DON'T KNOW WHETHER THAT WILL EVEN BE AN ISSUE IN THE CASE

23   ULTIMATELY.

24         BUT I THINK THAT THAT CLARIFIES QUITE A BIT.

25              MR. VAN NEST:  AGAIN, YOUR HONOR, I'M NOT SURE THAT

```
1    IT DOES.  IT'S DIRECTLY AT ODDS WITH WHAT THEY STATED IN THEIR

2    DISSECTION BRIEF.

3              THE COURT:  I KNOW.

4              MR. VAN NEST:  AND THE CASE CONTINUES TO EVOLVE.

5         SO AS OF RIGHT NOW --

6              THE COURT:  WELL, KEEP TALKING TOGETHER.

7              MR. VAN NEST:  -- I'M STILL NOT SURE THAT WE WOULD

8    KNOW, BASED ON WHAT THEY WANT AS A VERDICT FORM, WHAT COMMANDS

9    ARE USABLE AND WHICH ARE NOT, BECAUSE THEY'RE STILL ASSERTING

10   IN THEIR BRIEFING THAT INDIVIDUAL COMMAND EXPRESSIONS ARE NOT

11   ONLY PROTECTABLE --

12             THE COURT:  SO, MR. PAK, I ASSUME THAT YOU WILL

13   CLARIFY THIS IN A WAY THAT ARISTA CAN COUNT ON IT.

14             MR. PAK:  YES, YOUR HONOR.

15        BUT, YOU KNOW, FRANKLY, OUR VIEW IS YOU SHOULDN'T BE USING

16   OUR USER INTERFACE, AND THE -- WHETHER IT'S -- WE'RE NOT HERE

17   TO TALK ABOUT ONE OR TWO COMMANDS IN ISOLATION.  OUR CASE IS

18   YOU CAME IN, YOU TOOK CERTAIN ASPECTS OF OUR USER INTERFACE,

19   HERE IS THE COPYING EVIDENCE THAT WE BELIEVE INCLUDES

20   PROTECTABLE ELEMENTS.

21             THE COURT:  SURE.  SO YOU'VE ASSERTED A CERTAIN

22   NUMBER OF ELEMENTS.

23             MR. PAK:  YES.

24             THE COURT:  AND I WILL POTENTIALLY REDUCE THAT.

25        BUT I DON'T KNOW WHAT PERCENTAGE OF THE WORK THOSE
```

```
 1        ELEMENTS WILL COMPRISE, SO I DON'T EVEN KNOW WHAT ELEMENTS --
 2        WHAT PERCENTAGE OF THE WORK AS YOU DEFINE IT THEY WILL DEFINE.
 3             AND THEN IF IT'S -- YOU KNOW, WE GET INTO THE DE MINIMIS
 4        COPYING AND SOME OTHER ISSUES HERE THAT ARE GOING TO BE
 5        RELEVANT IN THE TRIAL.
 6             MR. NELSON:  THERE'S ANOTHER ISSUE THERE, TOO, THAT
 7        MAKES THIS MORE COMPLICATED BECAUSE, REMEMBER, WE TALKED ABOUT
 8        THAT WE FILTERED SOME OF THESE THINGS DOWN, SO THERE'S A NUMBER
 9        OF SINGLE WORD COMMANDS.
10             THE COURT:  YEAH.
11             MR. NELSON:  THERE ARE THINGS LIKE THE PROMPT, THE
12        TAB COMPLETION THINGS THAT THEY COPIED, BUT THOSE AREN'T THINGS
13        THAT WE ASSERTED AS PROTECTABLE.
14             THE COURT:  I UNDERSTAND.
15             MR. NELSON:  SO THAT WOULD BE AN IMPROPER ARGUMENT
16        FOR THEM TO COME ALONG, EVEN ON THE NUMBER, AND SAY, OH, WELL,
17        WE ONLY TOOK THIS PART OF IT, BECAUSE THEY ACTUALLY DID COPY
18        THE OTHER PARTS.
19             THE COURT:  BUT IF THEY TOOK OTHER THINGS THAT AREN'T
20        PROTECTABLE, IT DOESN'T MATTER.
21             MR. NELSON:  CORRECT.  CORRECT.
22         BUT THE COMPARISON THEN IN TERMS OF NUMBERS VERSUS NUMBERS
23        IS AN IMPROPER COMPARISON.  IT'S ACTUALLY FACTUALLY INCORRECT
24        TO MAKE THAT ARGUMENT, RIGHT?
25             SO WE -- I AGREE THAT WE CAN LOOK AT WHAT'S THE OVERALL
```

 1      PERCENTAGE THAT COMPRISE THE PROTECTABLE ELEMENTS THAT ARE THE

 2      EVIDENCE THAT'S GOING TO BE SUBMITTED TO THE JURY, THAT MAY BE

 3      A RELEVANT FACT.

 4                  THE COURT:  OKAY.

 5                  MR. VAN NEST:  WAIT A MINUTE THOUGH, YOUR HONOR.  I

 6      JUST -- MR. PAK STOOD UP LAST TIME AND SAID, WE TOOK THOSE OUT

 7      BECAUSE THEY'RE NOT PROTECTABLE.

 8          NOW MR. NELSON IS SAYING, WELL, YOU CAN'T ARGUE THAT YOU

 9      CAN USE THOSE.

10                  MR. PAK:  NO, NO.

11                  MR. VAN NEST:  THEY TOLD US THAT THEY ALREADY -- THEY

12      ALREADY DISSECTED THE THINGS THAT WE HAVE THE RIGHT TO USE.

13          NOW THEY WANT TO ARGUE THAT WE CAN'T TELL THE JURY THAT --

14                  THE COURT:  WELL, THEY'RE GOING TO BE ARGUING UNDER

15      FEIST.  YOU KNOW, NOTHING THERE WAS PROTECTABLE AS AN ELEMENT

16      BECAUSE THEY WERE NAMES AND ADDRESSES.

17          SO IT DOES COME BACK IN.  IT DOESN'T MEAN THAT THE WORK AS

18      A WHOLE HASN'T BEEN INFRINGED.

19                  MR. NELSON:  CORRECT.

20                  THE COURT:  SO WE'LL HAVE TO GET TO SOME OF THOSE

21      ISSUES.

22          ALL RIGHT.  THIS HAS BEEN VERY HELPFUL TO ME.

23          THE LAST COMMENT I'LL MAKE ABOUT JURY INSTRUCTIONS IS THAT

24      I PULLED THE INSTRUCTIONS THAT JUDGE ALSUP USED IN THE FIRST

25      ORACLE TRIAL, AND IT'S -- HERE IT IS (INDICATING).  IT'S NOT --

1    IT'S A QUARTER OF AN INCH, MAYBE THREE-EIGHTHS.  THIS IS ALL --

2    AND IT'S A LITTLE BIT -- I MEAN, I LIKE ONE PER PAGE, BUT THIS

3    IS -- THIS WAS -- IT WAS PRETTY SMALL.

4         SO --

5              MR. VAN NEST:  I HESITATE TO SAY THIS, YOUR HONOR,

6    BUT THAT --

7              THE COURT:  I'M NOT ASKING FOR CRITICISM.  I'M JUST

8    SAYING WE NEED SOME BALANCE.

9              MR. VAN NEST:  FAIR ENOUGH.

10             THE COURT:  OKAY.  THE LAST THING THAT I NEED TO GO

11   OVER, AND I PROMISE TO BE QUICK, IS THE QUESTIONNAIRE.

12        WE ARE HAVING A QUESTIONNAIRE.  I DID GO THROUGH IT.  I

13   DON'T KNOW WHOSE JOB IT IS TO TAKE NOTES, BUT I DO HAVE SOME

14   CHANGES THAT I'D LIKE YOU TO MAKE TO IT, AND I WILL GO THROUGH

15   THIS QUICKLY.

16        QUESTION NUMBER 4, I DO NOT ALLOW YOU TO ASK MARITAL

17   STATUS ON A QUESTIONNAIRE.

18        AND NONE OF THESE QUESTIONS ARE PRECLUDED IN YOUR ORAL

19   VOIR DIRE, BUT YOU LOOK AT THEM IN THE FACE AND MAKE SURE THEY

20   KNOW IT'S YOUR QUESTION.

21        QUESTION NUMBER 10 ASKS GENERALLY IF YOU'VE EVER OWNED

22   STOCK IN CISCO OR ARISTA.  I'M CONCERNED WITH CURRENT STOCK

23   OWNERSHIP BECAUSE THOSE INDIVIDUALS ARE EXCUSED FOR CAUSE.  SO

24   I NEED -- I'M GLAD FOR YOU TO ASK IF THEY'VE EVER OWNED, BUT I

25   NEED TO KNOW CURRENT, SO YOU HAVE TO ADD CURRENT OWNERSHIP.

 1          AND THEN I'M NOT UNDERSTANDING THE RELEVANCE OF

 2     QUESTION 34, HAVE YOU OR SOMEONE CLOSE TO YOU BEEN EMPLOYED BY

 3     THE GOVERNMENT OR BEEN IN THE MILITARY?

 4          I DON'T THINK IT RELATES TO ANYTHING AND I'M INCLINED TO

 5     EXCLUDE THAT.

 6          QUESTION 35 HAS TO DO WITH WHAT YOU DO IN YOUR SPARE TIME.

 7     THAT I WILL NOT ALLOW.

 8          36 ASKS FOR CLUBS, ASSOCIATIONS, AND ORGANIZATIONS, AND I

 9     WILL NOT ALLOW THAT.

10          QUESTION 37 ASKS ABOUT PRIOR JURY EXPERIENCE AND ASKS WHAT

11     THE VERDICT WAS, AND I DO NOT ALLOW YOU TO ASK WHAT THE VERDICT

12     WAS.

13          AND SO YOU CAN ASK THEM THE DATE, THE TYPE OF CASE, CIVIL

14     OR CRIMINAL.  AND YOU SAY "TYPE OF CASE," BUT THEY'RE GOING TO

15     BE CONFUSED.  YOU MAY WANT TO SAY "SUBJECT MATTER OF THE CASE."

16          YOU CAN ASK, DID THE JURY REACH A VERDICT?  BUT YOU CANNOT

17     ASK WHAT THE VERDICT WAS.

18          AND THEN FOR QUESTION 39, THAT HAS TO DO WITH THE

19     WITNESSES AND ATTORNEYS, AND YOU ASK THEM TO WRITE THE NAMES

20     HERE.

21          NORMALLY WHAT I DO, WHEN THE LIST IS PRETTY EXTENSIVE, IS

22     THAT I DIRECT THEM TO CIRCLE THE NAMES ON THE FORM.  IT MAKES

23     IT REALLY EASY FOR US TO KNOW EXACTLY WHO THEY'RE TALKING

24     ABOUT.

25          I DON'T MIND THE QUESTION ABOUT HAVING STRONG FEELINGS

1    ABOUT ANY OF THESE PEOPLE.

2         AND THEN QUESTIONS 41, CAN YOU READ AND WRITE ENGLISH;

3    QUESTION 42, DO YOU HAVE PHYSICAL PROBLEMS; 43, MEDICATIONS;

4    44, CONCERNS OR LIMITATIONS THAT WOULD PREVENT ONE FROM

5    SERVING, THOSE ARE ALL ISSUES I COVER IN MY HARDSHIP, SO I'D

6    LIKE YOU TO TAKE THOSE OUT.

7         AND 45 IS, IF YOU WERE A PARTY IN THIS CASE, WOULD YOU

8    WANT YOU ON THE JURY?

9         I WON'T ALLOW THAT.  THAT GIVES TOO MUCH ROOM FOR ANYBODY

10   WHO DOESN'T WANT TO BE ON A JURY TO MAKE UP SOME REASONS.  SO

11   THAT'S EXCLUDED AS WELL.

12              MR. VAN NEST:  SO, YOUR HONOR, AS I UNDERSTAND IT,

13    THESE QUESTIONS YOU'VE RULED OUT, WE CAN ASK THEM IN VOIR DIRE?

14              THE COURT:  YOU ABSOLUTELY CAN.

15              MR. VAN NEST:  BUT YOU WANT THEM OFF THE

16   QUESTIONNAIRE?

17              THE COURT:  I DO.

18              MR. VAN NEST:  AND YOU WANT US TO MAKE THOSE CHANGES

19   AND SUBMIT IT TO YOUR CLERK ASAP?

20              THE COURT:  THAT'S CORRECT.  WELL, I JUST NEED IT --

21   I NEED IT, I GUESS, BY THE --

22              MR. VAN NEST:  WE'LL GET IT IN SOON.

23              THE COURT:  BY THE 14TH.

24              MR. VAN NEST:  BY THE 14TH, THAT'S FINE.

25              THE COURT:  AND TALK TO MS. SALINAS-HARWELL ABOUT HOW

```
1       MANY COPIES OF IT THAT WE NEED.

2           THESE REALLY ARE MY QUESTIONS TO THE JURY, SO I GO THROUGH

3       IT AND DON'T NEED THEM MAD AT ME ON THE FIRST DAY.  YOU CAN

4       CHOOSE WHETHER THEY'LL BE MAD AT YOU OR NOT.

5           OKAY.  I THINK I'M DONE.

6           HOW MUCH -- WHAT OTHER QUESTIONS DO YOU HAVE FOR ME BEFORE

7       WE BREAK?

8               MR. VAN NEST:  JUST ONE, YOUR HONOR, AND IT'S

9       HOUSEKEEPING.

10              THE COURT:  YES.

11              MR. VAN NEST:  AND THAT IS WE HAVE THESE DISSECTION

12      BRIEFS DUE COMING UP.

13              THE COURT:  YES.

14              MR. VAN NEST:  AND WE WERE HOPING THE COURT WOULD

15      CONSIDER A 15-PAGE OPENING, AND I THINK WE HAVE REPLIES THAT

16      WOULD BE 8, SOMETHING LIKE THAT, 15 AND 8.

17              MR. PAK:  YOUR HONOR, I THINK WE'RE GOING TO NEED A

18      FEW MORE PAGES BECAUSE THEY DID PROVIDE SOME LEGAL CITATIONS

19      AND ARGUMENTS IN THEIR FILINGS, SO WE WERE THINKING --

20              THE COURT:  SO LET ME BACK UP A LITTLE BIT.  I DO

21      APPRECIATE YOUR TALKING ABOUT PAGE LIMITS.

22          IN YOUR TRIAL -- IN YOUR BENCH BRIEF THAT YOU GAVE ME

23      QUITE SOME TIME -- AT THE END OF THE SUMMER, AND MAYBE IN YOUR

24      JOINT STATEMENT OR SOMEWHERE, YOU TALKED ABOUT SUBMITTING

25      EVIDENCE ALONG WITH THIS BRIEF.
```

```
 1          I ASSUME THAT'S WHAT YOU'RE GOING TO BE DOING, THAT I WILL

 2    HAVE ALL OF THE EVIDENCE TO LOOK AT.  YOU REFER TO LOTS OF

 3    EVIDENCE THAT IS GOING TO BE ACCOMPANYING THIS BRIEFING, AND I

 4    WANT TO KNOW WHAT TO EXPECT.

 5              MR. NELSON:  SO WITH RESPECT TO THE FILTRATION YOU'RE

 6    TALKING ABOUT?

 7              THE COURT:  YES, FOR FILTRATION.

 8              MR. NELSON:  WHAT WE HAD ENCOMPASSED, AND WHAT WE

 9    TALKED ABOUT -- AND I THOUGHT THIS WAS BACK IN CHAMBERS -- THAT

10    IT DOESN'T SEEM TO ME THAT THERE'S REALLY A BUNCH OF FACTUAL

11    DISPUTES THAT ARE HERE.  IT'S APPLICATION OF THE LAW TO THE

12    FACTS.

13          BUT NONETHELESS, YOUR HONOR IS GOING TO BE MAKING SOME

14    RULINGS, SO YOU NEED THE FACTUAL BASIS IN THE RECORD.  AND WE

15    THOUGHT -- AND THEY DID A NUMBER OF THIS WITH THEIR CHALLENGE

16    SUBMISSION -- THERE WOULD BE DECLARATIONS FROM EXPERTS,

17    DECLARATIONS FROM PERHAPS SOME OF THE RELEVANT FACT WITNESSES.

18          YOUR HONOR CAN DECIDE THEN AT THAT POINT WHETHER YOU

19    THINK, BASED UPON THAT, YOU NEED TO HAVE TESTIMONY IF YOU

20    REALLY DO THINK THERE'S A DISPUTE BASED UPON WHAT THE PARTIES

21    ARE ARGUING.

22          BUT THE WAY WE INTERPRETED THE --

23              THE COURT:  SO, MR. NELSON, I HAD UNDERSTOOD, FROM

24    YOUR JOINT SUBMISSION I GOT THIS WEEK, THAT YOU WERE SUBMITTING

25    ON DECLARATIONS AND ALLOWING ME TO MAKE DECISIONS AS OPPOSED --
```

```
1        IS THAT CORRECT?

2                MR. NELSON:  THAT'S OUR POSITION FROM CISCO'S SIDE --

3                THE COURT:  OKAY.

4                MR. NELSON:  -- THAT WE BELIEVE THAT WILL BE THE

5        CASE.

6                THE COURT:  SO IF I NEED TO MAKE A FACTUAL

7        DETERMINATION, YOU ARE WAIVING YOUR RIGHT TO AN EVIDENTIARY --

8        A LIVE EVIDENTIARY HEARING ON THIS ISSUE.

9                MR. NELSON:  LET ME JUST BE CLEAR.  I MEAN, WE HAVE

10       TAKEN THE POSITION BEFORE THAT WE BELIEVE THAT THIS IS

11       SOMETHING THAT WOULD BE HANDLED WITH THE JURY INSTRUCTIONS, BUT

12       WE UNDERSTAND YOUR HONOR'S RULING AND WE'RE NOT GOING TO GO

13       BACK AND FIGHT THAT FIGHT AGAIN.

14           SO THIS IS CONSISTENT WITH WHAT YOUR HONOR HAS TOLD US IN

15       THE DIRECTION.  BASED UPON THE WAY WE SEE THE FACTS AND THE

16       DISPUTE, WE DON'T THINK YOUR HONOR IS GOING TO NEED TO TAKE A

17       BUNCH OF TESTIMONY.

18           MY UNDERSTANDING IS ARISTA WANTS TO KIND OF WAIT AND SEE,

19       AND THAT'S FINE, AND YOUR HONOR IS GOING TO BE, OBVIOUSLY, PART

20       OF THAT DETERMINATION AND WE DO HAVE THOSE COUPLE OF DAYS ON

21       THE -- AND SO IT MAY BE THAT THAT'S THE CASE.

22           BUT WE DON'T THINK THAT IT MAKES SENSE WHERE FACTS REALLY

23       AREN'T IN DISPUTE, THEY JUST NEED TO BE FOUNDATIONAL FOR

24       PURPOSES OF THE RECORD, TO TAKE THE TIME AND HAVE PEOPLE

25       SCHEDULED TO COME IN.
```

```
 1              THE COURT:  WELL, FOR EXAMPLE, ARISTA CONTINUES TO

 2     ARGUE THAT MANY OF THESE ELEMENTS ARE NOT ORIGINAL, AND THAT'S

 3     FACT BASED, AND THAT'S GOING TO BE BASED ON THE DEPOSITIONS, I

 4     PRESUME, OF THE PEOPLE IDENTIFIED AS AUTHORS AND PRIOR USE

 5     AND -- I DON'T KNOW.  I MEAN, THAT'S WHERE IT SEEMED LIKE THERE

 6     WAS GOING TO BE A LOT OF EVIDENCE.

 7              MR. FERRALL:  RIGHT, YOUR HONOR.

 8          WELL, I THINK YOUR HONOR CAPTURED IT WELL WHEN YOU SAID

 9     SOME OF IT IS GOING TO BE SUITABLE FOR YOU TO DECIDE AND SOME

10     OF IT YOU'LL PROBABLY SEE, AFTER LOOKING AT THE EVIDENCE, THAT

11     IT NEEDS TO GO TO THE JURY.

12          I THINK WHAT WE SAID IN OUR -- AS PART OF THE JOINT

13     SUBMISSION IS THAT, YES, WE THINK THERE'S A NUMBER OF THESE

14     ISSUES THAT CAN BE DECIDED BASED UPON -- THE WAY I WOULD SAY

15     IT -- DOCUMENTARY EVIDENCE.

16          IF YOU'RE LOOKING AT DR. ALMEROTH'S DECLARATION, THOUGH,

17     AND HE SAYS, WELL, ANYONE OF ORDINARY SKILL WOULD THINK THIS,

18     THAT, AND THE OTHER, AND DR. BLACK SAYS SOMETHING ELSE, WE'RE

19     NOT SUGGESTING THAT THAT IS SOMETHING THAT SHOULD BE RESOLVED

20     ON THE 21ST AND THE 22ND IN FRONT OF THE COURT ONLY.

21          SO I DON'T KNOW HOW MANY OF THOSE THERE WILL BE, AND IN

22     PART, ONE OF THE THINGS WE'RE NOT CERTAIN ABOUT IS WHETHER

23     CISCO IS GOING TO SUBMIT NEW DECLARATIONS.  WHAT WE'VE RELIED

24     UPON ENTIRELY ARE THE EXISTING EXPERT REPORTS AND THE

25     DECLARATIONS AUTHENTICATING THOSE.
```

```
1              THE COURT:  SO ARE YOU GOING TO RESUBMIT THOSE TO ME
2       SO THAT I CAN --
3              MR. FERRALL:  WE CAN.  WE CAN, YES.
4              THE COURT:  OKAY.  SO HERE'S -- I GUESS --
5              MR. VAN NEST:  IS THAT WHAT YOU WANT?
6              THE COURT:  I THINK I NEED IT BECAUSE I CAN'T GO BACK
7       INTO THE WHOLE 600 LINE RECORD IN THE CASE.
8              MR. VAN NEST:  RIGHT.  WE'LL DO IT.
9              THE COURT:  THANK YOU.
10          HERE'S WHERE I'M STRUGGLING:  I DON'T ACTUALLY UNDERSTAND
11       HOW THIS CASE CAN GO TO A JURY PRE-FILTRATION.  I DON'T
12       UNDERSTAND THAT, BECAUSE THEN THE JURY DOESN'T KNOW WHICH OF
13       THE ELEMENTS ARE PROTECTABLE AND WHICH AREN'T.
14          AND SO -- AND THEN I WOULD END UP WITH A VERDICT FORM, AS
15       MR. VAN NEST SUGGESTS, THAT LISTS EVERY SINGLE LINE, WHICH IS
16       GOING TO BE A THOUSAND, THAT THEY'RE GOING TO HAVE TO RENDER A
17       VERDICT ON, SO THAT AT THE END, I CAN CROSS OUT THE ONES THAT
18       ARE NOT PROTECTABLE AND THEN I, AS A BENCH TRIAL, WOULD MAKE A
19       DETERMINATION ON QUANTIFYING THE SCOPE OF THE INFRINGEMENT.  I
20       DON'T EVEN UNDERSTAND THAT.
21          SO I DON'T UNDERSTAND HOW FILTRATION WORKS POST-VERDICT.
22       I'VE NEVER BEEN ABLE TO UNDERSTAND THAT.
23          AND YOU'RE SAYING JUDGE CHESNEY DID FILTRATION AFTER?
24              MR. NELSON:  NO, NO.
25              MR. PAK:  BEFORE.
```

```
1              THE COURT:  BEFORE, OKAY.

2              MR. PAK:  BUT SHE DID IT AS PART OF THE JURY

3     INSTRUCTIONS THAT WERE GIVEN.

4              THE COURT:  AND THAT'S WHAT I'M GOING TO DO.  I WILL

5     BE INSTRUCTING THE JURY ON ALL OF THIS.

6          AND DO WE HAVE A CITATION TO SYNOPSIS SO THAT WE CAN --

7              MR. PAK:  YES.  IT WAS SUBMITTED, I BELIEVE, AS PART

8     OF THE JURY INSTRUCTIONS.

9              THE COURT:  PERFECT.  THEN I HAVE IT.

10             MR. PAK:  SO WE GAVE YOU SYNOPSIS.

11             THE COURT:  OKAY.  THANK YOU.

12         MR. VAN NEST, YOU'VE ALWAYS WANTED THE FILTRATION IN

13    ADVANCE.

14             MR. VAN NEST:  ABSOLUTELY.

15             THE COURT:  OKAY.  I'M NOT VARYING FROM THAT.  BUT I

16    DON'T EVEN UNDERSTAND HOW YOU DO IT AFTERWARDS.

17             MR. VAN NEST:  WE DON'T, EITHER.

18             THE COURT:  OKAY.

19             MR. VAN NEST:  SO WE WILL SUBMIT -- WE WILL RESUBMIT

20    THE EVIDENCE WITH THE BRIEF.

21         BUT GETTING BACK TO WHAT MR. PAK SUGGESTED --

22             THE COURT:  AND THEN WE STARTED WITH PAGE LIMITS.

23             MR. VAN NEST:  HE WAS SUGGESTING 20 PAGES, OR MAYBE

24    MORE.  I DON'T KNOW.

25             MR. PAK:  WE WERE, YOUR HONOR, THINKING 25 PAGES FOR
```

1    THE OPENING AND 15 PAGES FOR THE REPLY.

2          THE COURT:  I'M RUNNING -- I MEAN, I'M RUNNING OUT OF

3    TIME, AND THAT'S MY CONSIDERATION.  SO ALL OF THIS IS DONE,

4    THANK GOODNESS, SO THIS IS OFF MY PLATE.

5      I ACTUALLY HAVE THE JURY INSTRUCTIONS, WHICH I CAN'T EVEN

6    BEGIN TO LOOK AT BECAUSE YOU'RE GOING TO TAKE ANOTHER PASS AT

7    THEM.  THESE BRIEFS ARE DUE TUESDAY, THE 8TH, THE OPENING

8    BRIEFS?

9          MR. PAK:  THAT'S RIGHT.

10          MR. VAN NEST:  YES.

11          THE COURT:  ALL RIGHT.  AND THEN THE REPLY IS DUE --

12          MR. FERRALL:  THE 14TH, I BELIEVE.

13          THE COURT:  SO I'M WILLING TO GIVE YOU A FEW MORE

14    PAGES IN WHAT YOU GIVE ME ON THE 8TH, BUT I JUST DON'T HAVE

15    TIME TO READ THE REST OF IT.  I JUST DON'T HAVE TIME.

16      AND SO I THINK 20 PAGES FOR THE OPENING BRIEF IS AMPLE,

17    AND THE CLOSING BRIEF I'LL GIVE YOU EACH 12 PAGES.

18          MR. PAK:  THANK YOU, YOUR HONOR.

19          MR. VAN NEST:  THANK YOU, YOUR HONOR.

20          THE COURT:  ALL RIGHT.  ANY --

21          MR. VAN NEST:  MAY I HAVE JUST A MOMENT TO LOOK AT MY

22    LIST?

23          THE COURT:  YES, PLEASE.

24        (PAUSE IN PROCEEDINGS.)

25          MR. VAN NEST:  I THINK WE HAVE IT COVERED, YOUR

1    HONOR.

2              THE COURT:  MR. PAK, DID YOU HAVE ANYTHING ELSE?

3              MR. PAK:  THAT'S IT FROM MY LIST AS WELL, BUT --

4              THE COURT:  MR. NELSON?

5              MR. NELSON:  THIS IS TOTAL HOUSEKEEPING, BUT WHEN WE

6    WERE TALKING ABOUT THE WITNESSES AND WHEN WE WERE GOING TO

7    DISCLOSE THEM, MAYBE I MISSED IT, BUT ARE WE DISCLOSING

8    EXHIBITS THAT MIGHT BE USED WITH THEM, TOO, SO THAT WE CAN

9    COVER OBJECTIONS?  SO WE'LL JUST DO THAT AT THE SAME TIME?

10             MR. VAN NEST:  YEAH.  WE'LL WORK THAT OUT.

11             MR. NELSON:  PERFECT.

12             MR. VAN NEST:  BUT WE HAVE TO DO SOMETHING LIKE THAT

13   BECAUSE WE HAVE TO HAVE OBJECTIONS IN BY 5:00 O'CLOCK THE NIGHT

14   BEFORE --

15             MR. NELSON:  RIGHT.

16             MR. VAN NEST:  -- WHICH IS WHY WE CAN'T DO IT THE

17   NIGHT BEFORE.

18             THE COURT:  GOOD POINT.

19             MR. NELSON:  EXACTLY.

20             THE COURT:  GOOD POINT.

21        ALL RIGHT.  WELL, AS ALWAYS, I GREATLY APPRECIATE HOW

22   EXTRAORDINARILY PREPARED YOU ARE TO ADDRESS THESE ISSUES.

23   THANK YOU.

24             MR. VAN NEST:  THANK YOU, YOUR HONOR.

25             THE COURT:  AND I WILL SEE YOU AGAIN ON THE 18TH.  IS

```
1      THAT CORRECT?

2               MR. VAN NEST:  THAT'S RIGHT.

3               MR. FERRALL:  YES.

4               THE COURT:  I WOULD WELCOME YOU ON THE 16TH, BUT I

5      KNOW I WON'T SEE YOU THEN.

6               MR. VAN NEST:  CO-LEAD COUNSEL, YOUR HONOR, MAY BE

7      AVAILABLE.

8          (LAUGHTER.)

9               MR. VAN NEST:  BE CAREFUL WHAT YOU ASK FOR.

10              THE COURT:  OH, IT WOULD BE THE FIRST CHAIR, AND I

11     KNOW WHO THAT IS.

12         OKAY.  THANK YOU ALL.

13              MR. FERRALL:  THANK YOU, YOUR HONOR.

14              MR. PAK:  THANK YOU, YOUR HONOR.

15              MR. VAN NEST:  THANK YOU, YOUR HONOR.

16         (THE PROCEEDINGS WERE CONCLUDED AT 4:41 P.M.)

17

18

19

20

21

22

23

24

25
```

1

2

3                        CERTIFICATE OF REPORTER

4

5

6

7          I, THE UNDERSIGNED OFFICIAL COURT REPORTER OF THE UNITED

8     STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA,

9     280 SOUTH FIRST STREET, SAN JOSE, CALIFORNIA, DO HEREBY

10    CERTIFY:

11         THAT THE FOREGOING TRANSCRIPT, CERTIFICATE INCLUSIVE, IS

12    A CORRECT TRANSCRIPT FROM THE RECORD OF PROCEEDINGS IN THE

13    ABOVE-ENTITLED MATTER.

14

15

16    _____

      LEE-ANNE SHORTRIDGE, CSR, CRR
17    CERTIFICATE NUMBER 9595

18         DATED:  NOVEMBER 10, 2016

19

20

21

22

23

24

25