# EXHIBIT 3



# ANNOUNCEMENT
from the Copyright Office, Library of Congress, Washington, D.C. 20559

NOTICE OF POLICY DECISION

REGISTRATION DECISION; REGISTRATION
AND DEPOSIT OF COMPUTER SCREEN DISPLAYS

The following excerpt is taken from Volume 53, Number 112
of the Federal Register for Friday, June 10, 1988 (pp. 21817-21820)

**LIBRARY OF CONGRESS**

**Copyright Office**

**37 CFR Part 202**

**[Docket No. 87-4]**

**Registration Decision; Registration and Deposit of Computer Screen Displays**

**AGENCY:** Copyright Office, Library of Congress.

**ACTION:** Final registration decision, policy.

**SUMMARY:** This notice of a registration decision is issued to inform the public that the Copyright Office of the Library of Congress has determined that all copyrightable expression owned by the same claimant and embodied in a computer program, or first published as a unit with a computer program, including computer screen displays, is considered a single work and should be registered on a single application form. The notice also confirms the applicability to computer screen displays of 37 CFR 202.3(b)(3) concerning registration of all copyrightable expression in a unit of publication and 37 CFR 202.3(b)(6) concerning one registration per work. In order to clarify copyright claims in computer screen displays, applicants, will be accorded an option of depositing visual reproductions of computer screens along with identifying materials[1] for the computer code. Where a work contains different kinds of authorship, the registration class will be determined on the basis of which authorship predominates. 37 CFR 202.3(b)(2).

**FOR FURTHER INFORMATION CONTACT:**
Dorothy Schrader, General Counsel, Copyright Office, Library of Congress, Washington, DC 20559. Telephone (202) 287-8380.

**EFFECTIVE DATE:** June 10, 1988.

**SUPPLEMENTARY INFORMATION:**

**Registration of Computer Screen Displays; Policy Decision**

*1. Background*

Original computer programs are works of authorship protected by copyright, whether they are in high level computer language (source code) or machine language (object code). *William Electronics, Inc. v. Artic*[2] *International Inc.*, 685 F.2d 870 (3d Cir. 1982); and since 1964, the Copyright Office has registered computer programs as literary works. Section 101 of the Copyright Act of 1976, title 17 of the United States Code, defines a computer program as "a set of statements or instructions to be used directly or indirectly in a computer in order to bring about a certain result." Copyright registration is made for original computer programs in the literary work classification upon submission of an appropriate application, fee, and deposit identifying the work. In general, the first 25 pages or the equivalent and the last 25 pages or the equivalent of computer source code should be deposited in seeking registration. 37 CFR 202.20(c)(2)(vii).

The Copyright Act also provides that "[i]n no case does copyright protection for an original work of authorship extend to any idea, procedure, process, system, method of operation, concept, principle, or discovery, regardless of the form in which it is described, explained, illustrated, or embodied in such work." 17 U.S.C. 102(b).

The courts have held in several videogame cases that pictorial and graphic screen displays can be copyrighted as audivisual works. *M. Kramer Manufacturing Co., Inc. v. Andrews*, 783 F.2d 421 (4th Cir. 1986); *Williams Electronics, Inc. v. Artic International, Inc.*, 685 F.2d 870 (3d Cir. 1982); *Stern Electronics, Inc. v. Kaufman*, 669 F.2d 852 (2d Cir. 1982).

Consistent with the videogame precedents, the Copyright Office in the past has registered pictorial screen displays that meet the ordinary standard of original, creative authorship. Single registrations have been made for the videogame displays and the computer program code, as well as separate registrations for the display and the code. Under present practices, however, the Office does not register separately textual screen displays, reasoning that there is no authorship in ideas, or the format, layout or arrangement of text on the screen, and that any *literary* authorship in the screen display would presumably be covered by the underlying computer program—itself a literary work. Moreover, the regulations specify one registration per work. 37 CFR 202.3(b)(6).

Most claimants, consistent with Copyright Office regulations, have made only one registration for the computer program and have assumed that the registration covers any copyrightable authorship in the screen displays, without any need for a separate registration. The Copyright Office agrees with this interpretation of the

---

[1] Error; line should read:
"screens along with identifying material"

[2] Error; line should read:
"Williams Electronics, Inc. v. Artic"

ML-387
July 1988 - 5000

regulations and registration practices.

Judicial decisions do not yet lend clear guidance on the copyrightability of screen displays (other than videogame displays), apart from the computer program. One court has held that protection of computer programs extends only to source and object code and not to input formats. *Synercom Technology, Inc. v. University Computing Company*, 462 F. Supp. 1003 (N.D. Tex. 1978). Others have protected the structure, sequence and organization of certain business-related programs, including the text and artwork of their audiovisual displays. *Broderbund Software, Inc. v. Unison World, Inc.*, 648 F. Supp. 1127 (N.D. Cal. 1985); *Whelan Associates, Inc. v. Jaslow Dental Laboratory, Inc.*, 797 F.2d 1222 (3d Cir. 1986). Most recently, in *Digital Communications Associates, Inc. v. Softklone Distributing Corp.*, 659 F. Supp. 449 (N.D. Ga. 1987), the court held the copyright in a computer program does not extend to the screen displays, but held valid a separate claim in a screen based on "compilation" of the menu terms.

The Copyright Office is currently holding a large number of claims to register textual and pictorial screen displays separate from the underlying programs that generate them. The *Softklone* decision, if generally followed, would seem to require a separate claim to copyright in screen displays in order to enjoy copyright protection. This decision seemed to cast doubt on the scope of copyright in computer programs where no separate registration was made for the screen displays. In order to consider whether a modification of existing registration practices is necessary, the Copyright Office held a public hearing on September 9 and 10, 1987, and solicited public comments. 52 FR 28311 (1987).

2. *Summary of Comments*

Twelve witnesses testified in the hearings held September 9th and 10th. In addition, 35 written comments were received.

Of the witnesses giving oral testimony, three took the position that computer screens should be registered separately from the underlying computer program. Two witnesses taking this position argued that only through separate registration could users become aware of the extent of copyright claims in computer screens. The third witness believed that computer screens should be registered separately because they represent fundamentally different authorship from the underlying computer program code.

Several witnesses favored giving the applicant an option either to register the computer screens and underlying program on a single application, or alternatively, to make two registrations—one for the program and one for the screen display. Proponents of this position agreed with those favoring separate registration that the authorship in the screen displays differs from the authorship in the computer program code. Nevertheless, witnesses for this position believed applicants should be able to protect their screens on the basis of a single registration of the underlying program if that were the course they chose to follow. They stressed that, although separate registration should be allowed at the claimant's option, it was essential that the Office's registration practices make clear that those claimants who *elect* a single registration nevertheless have full copyright protection for any original computer screens.

Several witnesses took the position that only a single registration, should be permitted for a published computer program and any authorship contained in the screens. The rationale for this position was that a published computer program is "a unitary work with a multiplicity of elements which are molded into a cohesive, integrated whole."

A fourth position endorsed by one witness would allow only a single registration to be made in most instances. However, as an exception to the general rule, a separate registration of elaborate, fanciful computer screen displays would be permitted where the audiovisual authorship is predominant over the computer code authorship and clearly identifiable as a separate work.

The comments received after the hearing (including some from those who had testified) largely tracked the themes expressed in the hearing. A few commentators urged greater restrictions on the application of the copyright law to protect computer programs. One commentator argued that the copyright law should not be applied to computer programs at all, and that protection should be limited to what is available under the patent law. Another commentator urged limiting protection to authorship revealed in the material deposited in the Copyright Office.

In summary, the public comments, both oral and written, fall into three main categories: mandatory separate registration of screens and program code; mandatory single registration of screens and program code; and single or separate registration at the option of the claimant.

3. *Overview of Policies Adopted by the Copyright Office*

The Copyright Office carefully considered all the testimony and written comments submitted with respect to computer screens. The Office has decided generally to require that all copyrightable expression embodied in a computer program, including computer screen displays, and owned by the same claimant, be registered on a single application form. This policy applies to unpublished computer programs as well as to published programs. The Office finds that in the interest of a clear, consistent public record, our registration practices should discourage piecemeal registration of parts of works. Ordinarily, where computer program authorship is part of the work, literary authorship will predominate, and one registration should be made on application Form TX. Where, however, audiovisual authorship predominates, the registration should be made on Form PA.

Under existing Copyright Office regulations, only one registration can be made for the same version of a particular work owned by a given claimant. 37 CFR 202.3(b)(6). In such cases, all copyrightable elements embodied in the work are covered by the single registration. Moreover, the Office generally prefers a single registration for a work that contains discrete authorship components, but is published together as a unit. 37 CFR 202.3(b)(3). Finally, where a work contains authorship elements that fall into two or more classes, the application should be filed in the authorship class that predominates. 37 CFR 202.3(b)(2). This principal applies even if the work has two or more authors who have created either a unitary, a collective, or a joint work.

In considering the issue of computer screen displays, the Copyright Office concludes there is no sound basis for departing from the principles of these regulations in the case of computer programs and related screens.

In order to reflect better for the public record the copyright claims in computer screens, applicants will in the future be permitted to deposit visual reproductions of the computer screen displays along with reproductions of any accompanying sounds and the identifying material for the computer program code. The Office will examine the visual or audiovisual deposit and make a determination whether the deposit reveals copyrightable authorship.

4. *One Registration Per Work*

The long-standing principle of one registration per work has significant advantages for copyright claimants, the public, and the Copyright Office and provides a uniformity not available if multiple registrations were optional.

Copyright claimants are able to register all copyrightable elements

contained in their work with a single application and fee.

The public is benefited through the maintenance of a clear, accurate, easily understandable public record. Permitting multiple registrations of parts of works would increase confusion among those attempting to use the records of the Copyright Office. Subdividing claims might also result in multiple infringement actions and multiple claims for statutory damages, based on separate registration.

The Copyright Office benefits by having a simplified administrative process.

Proponents of separate registration, either on a mandatory or optional basis, contend that the nature of authorship embodied in the computer program code is substantially different from the authorship typically embodied in computer screens. All witnesses agreed that the same screen displays can be generated by substantially different computer program code.

Even accepting that the nature of authorship in screens may be different from computer program code authorship, this does not alter the fact that the computer program code and screen displays are integrally related and ordinarily form a single work. Indeed, those commentators who favor either single or separate registration at the claimant's option must concede that the program code and screens are conceptually a single work.

In creating copyright subject matter, it is common to merge several different types of authorship to form a single work. Motion pictures are a clear example of a work in which the different creative talents of many contributors (writers, directors, editors, camera persons, etc.) are combined to create a single work. Under the regulations of the Copyright Office, where such a work is owned by a single owner, only one registration is generally possible.

Several commentators favored more restrictive registration practices. They contended that the registration should specify the boundaries of the copyright claim in order to provide greater guidance to users.

While the Copyright Office is sympathetic to users who may have difficulty in determining the scope of copyright in computer software, the registration practices of the Copyright Office cannot precisely determine the scope of protection in any work. The Office seeks to create a public record of the copyright claim that generally gives a clear, accurate picture of the authorship and narrows the issues that might otherwise be contested in time-consuming, expensive litigation. We attempt to keep out of the public record any frivolous, unsound, or otherwise unjustified claims. In this way, we assist the public and the courts. Ultimately, of course the courts determine the precise scope of protection.

*5. Predominant Authorship Standard*

As new technologies emerge, new means of expression are submitted to the Copyright Office for copyright registration. The registration decisions that are initially reached by the Office are often a matter of first impression. Such was the case when arcade videogames were first submitted to the Office for registration. The Office decided to permit an audiovisual registration of the displays, sometimes separate from the underlying computer program, and sometimes with the program as a single registration.

The Copyright Office has now decided to treat videogame displays the same as other works that include authorship in a computer program and screen displays. A single registration will be made for the audiovisual authorship and any related computer program code owned by the same claimant. Separate registrations will not be made. If audiovidual authorship predominates, the single registration should be made in Class PA.

The courts have not fully examined the implications of protection for screen displays except in the videogame context where standardization of user interface screens is not a significant public policy issue. The practices adopted today by the Office should facilitate judicial consideration of the relationship between computer program code authorship and screen displays.

*6. "Nature of Authorship" Description*

The "nature of authorship" for a computer program should be described in space 2 of the application form. An applicant may give a general description such as "entire work" or "computer program." This description would cover any copyrightable authorship contained in the computer program code and screen displays, regardless of whether identifying material for the screens is deposited. An applicant may include a reference to the authorship in screen displays, e.g. "computer program code and screen displays." Such a designation would require a deposit of visual reproductions showing sufficient copyrightable authorship to support a claim to copyright in the screen display.

Applicants should not refer to elements such as "menu screens;" "structure, sequence, and organization"; layout or format; and the like.

The *Compendium of Copyright Office Practices II*, as issued in 1984, sets forth that registration will not be made for the "algorithm" of a computer program or the "formatting," "functions," "logic," or [3] "system design." *Compendium II,* § 325.02(c).

The Office has a well-established practice of refusing to register claims to copyright in mere format of text or images; this practice is based on the statutory prohibition against copyright in ideas, systems, concepts, or discoveries. 17 U.S.C. 102(b). *See also Morrissey v. Proctor & Gamble Co.,* 379 F.2d 675 (1st Cir. 1967) and *Atari Games Corp. v. Oman* (unpub. op., Civ. No. 88-0021, D.D.C. May 25, 1988). Of course, if the screen display images consist of original, creative pictorial expression, then copyright may be claimed in that expression. The courts will determine the scope of copyright protection in appropriate cases.

*7. Deposit of Visual Reproductions of Computer Screen Display*

The deposit requirement for registration of a computer program remains unchanged. When the authorship is described in general terms this deposit is sufficient to cover the entire claim, including any copyrightable authorship in the screen displays. Deposit of identifying material related to the screens is possible but not ordinarily required.

However, when specific reference to a screen display is included in the application, the deposit must include visual or audiovisual reproductions of the screen displays. Visual reproductions shall consist of printouts, photographs, drawings or a ½ inch VHS videotape of the screens.

*8. Implementation*

The Copyright Office is not presently proposing any changes in the regulations. The basic policies of one registration per work, a single registration for different authorship combined in a single unit of publication, and a single registratrion based on [4] predominant authorship, are already reflected in the regulations. The optional deposit of visual or audiovisual reproductions of computer screen displays as a supplement to the deposit of other identifying material has not yet been incorporated into the deposit regulations because the deposit regulations reflect minimum requirements. The regulations will be modified at a later time. This Notice of a Policy Decision will inform the public of the registration and deposit requirements relating to computer screen displays.

The Copyright Office will also modify Compendium II of Copyright Office Practices. The examination and registration of machine-readable works present many unique issues. The Copyright believes it is preferable to [5] treat these in detail in a work such as the Compendium rather than in regulations that are intended to have general applicability.

---

[3] Error; line should read:
"for "formatting," "functions," "logic," or"

[4] Error; line should read:
"and a single registration based on"

[5] Error; line should read:
"Copyright Office believes it is preferable to"

*9. Impact of This Policy Decision on Earlier Registrations*

The policies announced in this computer screen displays decision constitute in essence a confirmation of the general registration policies first adopted in the 1978 registration regulations. Before opening this public proceeding, the Office held the general view that a single registration was sufficient to protect the copyright in a computer program, including related screen displays, without a specific claim to screen display authorship on the application and without deposit of identifying material disclosing the screen display. Since this decision confirms the validity of a single registration policy, the Office assumes that this decision makes clear to the public and the courts our view that multiple claims are unnecessary, and indeed not appropriate, to assert copyright in the screen displays.

Therefore, those past registrants who made a single registration for computer program code and screen displays should be reassured that the registrations are valid. The Office will not make a new basic or supplemental registration in order to allow a specific claim in the screen displays nor will the Office now accept the deposit of identifying material for the screens because all of the copyrightable authorship has already been registered.

In those cases where separate registrations were made for computer program code and the screen displays, the registrations are also valid if, in each case, the registration is based on original, creative authorship. In future,[6] in accordance with this policy decision, the Office intends that a single registration should be made for a work consisting of a computer program and accompanying screen display that are owned by a single claimant. The registration class (literary, visual arts, or audiovisual, for example) will be determined on the basis of which authorship predominates.

Dated: June 3, 1988.

**Ralph Oman,**
*Register of Copyrights.*
Approved by:
**William J. Welsh,**
*Acting Librarian of Congress.*
[FR Doc. 88-13029 Filed 6-9-88; 8:45 am]
**BILLING CODE 1410-07-M**

---

[6] Error; line should read:
"original, creative authorship. In the future,"

ML-387
July 1988 - 5000

4