1  Kathleen Sullivan (SBN 242261)
   kathleensullivan@quinnemanuel.com
2  QUINN EMANUEL URQUHART &
   SULLIVAN LLP
3  51 Madison Avenue, 22nd Floor
   New York, NY 10010
4  Telephone: (212) 849-7000
   Facsimile: (212) 849-7100
5
   Sean S. Pak (SBN 219032)
6  seanpak@quinnemanuel.com
   Amy H. Candido (SBN 237829)
7  amycandido@quinnemanuel.com
   John M. Neukom (SBN 275887)
8  johnneukom@quinnemanuel.com.
   QUINN EMANUEL URQUHART &
9  SULLIVAN LLP
   50 California Street, 22nd Floor
10 San Francisco, CA 94111
   Telephone: (415) 875-6600
11 Facsimile: (415) 875-6700

12 David Nelson (*admitted pro hac vice*)
   davenelson@quinnemanuel.com
13 QUINN EMANUEL URQUHART &
   SULLIVAN LLP
14 500 W Madison St, Suite 2450
   Chicago, IL 60661
15 Telephone: (312) 705-7465
   Facsimile: (312) 705 7401
16

Steven Cherny *(admitted pro hac vice)*
steven.cherny@kirkland.com
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900

Adam R. Alper (SBN 196834)
adam.alper@kirkland.com
KIRKLAND & ELLIS LLP
555 California Street
San Francisco, California 94104
Telephone: (415) 439-1400
Facsimile: (415) 439-1500

Michael W. De Vries (SBN 211001)
michael.devries@kirkland.com
KIRKLAND & ELLIS LLP
333 South Hope Street
Los Angeles, California 90071
Telephone: (213) 680-8400
Facsimile: (213) 680-8500

*Attorneys for Plaintiff Cisco Systems, Inc.*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

| | |
|---|---|
| CISCO SYSTEMS, INC.,<br><br>Plaintiff,<br><br>vs.<br><br>ARISTA NETWORKS, INC.,<br><br>Defendant. | CASE NO. 5:14-cv-5344-BLF (NC)<br><br>**CISCO'S TRIAL BRIEF**<br><br>█████████████<br><br>Date: November 21, 2016<br>Time: TBD<br>Dept: Courtroom 3 - 5th Floor<br>Judge: Hon. Beth Labson Freeman |

# TABLE OF CONTENTS

I.  CISCO'S THEORY OF THE CASE & KEY EVIDENCE ................................................... 1

    A.  Arista Infringes Cisco's Copyrighted User Interfaces and Technical Documentation ............................................................................................................ 1

        1.  Cisco's Copyrighted User Interfaces and Technical Documentation ............ 1

        2.  Arista's "Slavish" Copying of Cisco's Works ................................................ 3

        3.  Arista's Meritless Affirmative Defenses to Copyright Infringement ............. 5

            (a)  Fair Use ................................................................................................ 5

                (i)  Fair Use: First Factor.............................................................. 5

                (ii)  Fair Use: Second Factor ......................................................... 6

                (iii)  Fair Use: Third Factor ............................................................ 9

                (iv)  Fair Use: Fourth Factor .......................................................... 9

            (b)  Scènes à faire ..................................................................................... 10

            (c)  Merger ................................................................................................ 10

        4.  Arista's Copying Was Willful ....................................................................... 11

        5.  Cisco's Remedies for Arista's Willful Copyright Infringement ................... 11

    B.  Arista Infringes Cisco's U.S. Patent No. 7,047,526 ................................................. 12

        1.  Cisco's '526 Patent ........................................................................................ 12

        2.  Arista's Patent Infringement ......................................................................... 13

        3.  Arista's Patent Infringement Is Willful ........................................................ 13

        4.  Arista's Affirmative Defenses to Patent Infringement ................................. 13

        5.  Cisco's Remedies for Arista's Willful Patent Infringement ......................... 13

II. CONTROLLING ISSUES OF LAW .................................................................................. 14

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Apple Computer, Inc. v. Formula Int'l, Inc.*,
 725 F.2d 521 (9th Cir. 1984) ................................................................................................... 11

*CDN Inc. v. Kapes*,
 197 F.3d 1256 (9th Cir. 1999) ................................................................................................... 2

*Dun & Bradstreet Software Servs., Inc. v. Grace Consulting, Inc.*,
 307 F.3d 197 (3d Cir. 2002) .................................................................................................... 11

*Eng'g Dynamics, Inc. v. Structural Software, Inc.*,
 26 F.3d 1335 (5th Cir. 1994) ................................................................................................... 11

*Halo Elecs., Inc. v. Pulse Elecs., Inc.*,
 136 S. Ct. 1923 (2016) ............................................................................................................ 14

*Harper & Row Publishers, Inc. v. Nation Enters.*,
 471 U.S. 539 (1985) ...................................................................................................... 6, 7, 10

*Mitel, Inc. v. Iqtel, Inc.*,
 124 F.3d 1366 (10th Cir. 1997) ............................................................................................... 11

*Oracle Am., Inc. v. Google Inc.*,
 750 F.3d 1339 (2014) .................................................................................................. 7, 10, 11

*Seltzer v. Green Day, Inc.*,
 725 F.3d 1170 (9th Cir. 2013) ................................................................................................... 7

*Time Inc. v. Bernard Geis Assocs.*,
 293 F. Supp. 130 (S.D.N.Y. 1968) ............................................................................................ 7

**Statutes**

17 U.S.C. § 107 ................................................................................................................................ 6

17 U.S.C. § 505 .............................................................................................................................. 12

35 U.S.C. § 271 .............................................................................................................................. 14

35 U.S.C. § 284 .............................................................................................................................. 14

35 U.S.C. § 285 .............................................................................................................................. 15

Plaintiff Cisco Systems, Inc. respectfully submits this Trial Brief to summarize its theory of the case and identify key evidence. *See* Standing Order Re: Final Pretrial Conference – Jury Trial.

# I. CISCO'S THEORY OF THE CASE & KEY EVIDENCE

## A. Arista Infringes Cisco's Copyrighted User Interfaces and Technical Documentation

### 1. Cisco's Copyrighted User Interfaces and Technical Documentation

Cisco was founded in 1984, and pioneered the networking that enabled the growth of the Internet. Cisco provides servers, routers and switches that enable network connectivity. With those servers, routers and switches, Cisco provides operating systems and technical documentation (such as user manuals). The Copyright Office issued 26 registrations to Cisco, each corresponding to a specific version of a particular Cisco operating system and related product documentation. Cisco's copyright registrations correspond to four families of Cisco operating systems: IOS, IOS XR, IOS XE and NX-OS. ECF 64 ¶ 25; Almeroth Rep. (ECF 616-4) ¶ 97. A key component of these operating systems is Cisco's original, creative, text-based command-line user interfaces (sometimes referred to as Cisco's "CLI") which allow engineers to communicate with and thus manage and configure Cisco's networking products. ECF 64 ¶¶ 20-30; ECF 348 at 2.

The copyrighted works Cisco asserts in this case are (1) Cisco's original and creative user interfaces and (2) related technical documentation. ECF 1; ECF 64; ECF 633. The user interfaces allow human network engineers to "talk to" Cisco networking equipment by typing multiword expressions that appear on a screen and receiving multiword responses in reply. The asserted user interfaces include five building blocks of protectable elements: (1) multiword command expressions; (2) multiword command hierarchies; (3) modes and prompts; (4) multiword command responses (sometimes referred to as screen outputs); and (5) multiword help descriptions. ECF 552-1.

At trial, Cisco will prove that it authored Cisco's asserted user interfaces and technical documents, and that such expressions are original and creative and entitled to copyright protection. To prove that, Cisco will show that Cisco engineers could have chosen any of innumerable different words, combinations of words, sequences and/or syntaxes, and exercised their subjective creativity, expertise, and professional judgment to craft the particular user interface expressions Cisco now

1  asserts. *See CDN Inc. v. Kapes*, 197 F.3d 1256, 1261 (9th Cir. 1999); ECF 552-1 at 2-33 (multiword

2  command expressions); ECF 552-1 at 36-79 (multiword command hierarchies); ECF 552-1 at 34-35

3  (modes and prompts); ECF 552-1 at 80-96 (command responses); ECF 552-1 at 97-110 (help

4  descriptions); *see also* ECF 552-2 (technical documentation).

5        Cisco will prove its authorship, originality and creativity as to its user interfaces and technical

6  documentation through (1) the sworn testimony of Cisco's engineers, such as Kirk Lougheed, who

7  will explain to the jury the subjective process pursuant to which they created aspects of Cisco's user

8  interfaces and technical documentation, *see, e.g.*, ECF 619-8; ECF 619-9; (2) historical documentation

9  showing how Cisco engineers debated and selected which expressions to include in Cisco's user

10 interface; (3) admissions from Arista's own engineers and executives as to the subjective nature of

11 Cisco's choice of expressions in its user interfaces, *see, e.g.*, ▮

12 ▮

13 ▮

14 ▮

15 ▮

16 ▮

17 ▮

18 ▮

19 ▮

20 ▮

21 ▮

22 ▮

23 ▮

24 ▮

25 ▮

26 ▮

27 ▮

28 ▮



; (4) evidence from third parties who created successful user interfaces for networking products using expressions entirely different from those created by Cisco's engineers, *see e.g.*, 

; and (5) expert opinion testimony confirming the original and creative nature of Cisco's expressive works, *see, e.g.*, Almeroth Rep. (ECF 620-1) ¶¶ 101-110 (detailing the wide range of expression available to Cisco engineers and the processes by which they crafted particular elements); *id.* ¶¶ 117 ("Further evidence that elements of Cisco's IOS CLI are creative is that they are what the user sees, what the user knows, and how the user talks to and interacts with the Cisco device. The user interface defines the user's experience.").

### 2. Arista's "Slavish" Copying of Cisco's Works

Arista was founded in 2004 by a collection of former Cisco executives and engineers, and did not offer any networking equipment, let alone a supporting operating system and a user interface, until 2008. When Arista released its operating system, EOS, it did so to compete directly with Cisco in the

1  market for Ethernet switches.  *E.g.*, ECF 337-14 (Arista's CEO characterizing Cisco as a "fierce"
2  competitor).
3        Cisco will prove that Arista's user interface in its EOS operating systems "slavishly" copies
4  Cisco's copyrighted user interfaces.  Cisco will show through expert testimony that Arista's user
5  interface is substantially similar or identical to the asserted and protectable elements of Cisco's user
6  interfaces, including the protectable command expressions, hierarchies, modes and prompts, command
7  responses, and help descriptions.  Cisco will also show through ***direct*** evidence and Arista's own
8  admissions that Arista's executives and engineers undertook a deliberate and willful campaign to
9  "slavishly" copy as much of Cisco's user interfaces as possible. Arista did so to save development
10 costs, to speed its time-to-market, and to appeal to as many Cisco customers as possible.  *See, e.g.*,
11 ECF 337-12 (Arista's CEO: "I would never compete with Cisco directly… It would take me 15 years
12 and 15,000 engineers"); ECF 337-13; ▮
13 ▮
14 ▮
15 ▮
16 ▮
17 ▮
18 ▮
19 ▮
20 ▮
21 ▮
22 ▮
23 ▮
24 ▮
25 ▮
26 ▮.

1  Likewise, Cisco will show that Arista's copying of Cisco's copyrighted user interfaces was
2  possible because Arista had constant access to Cisco's products and user interface. *See, e.g.*, ███
3  ████████████████████████████████████████████████████████████████████████████████████████.

### 3. **Arista's Meritless Affirmative Defenses to Copyright Infringement**

At trial, Arista will likely assert affirmative defenses to copyright infringement including fair use, merger, and scenes a faire.[1] Cisco will rebut each effort with overwhelming evidence.

#### (a) Fair Use

Cisco will show that all of the fair use factors weigh against Arista's fair use defense. *See* 17 U.S.C. § 107 ("In determining whether the use made of a work in any particular case is a fair use the factors to be considered shall include (1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes; (2) the nature of the copyrighted work; (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and (4) the effect of the use upon the potential market for or value of the copyrighted work").

#### (i) Fair Use: First Factor

Cisco will rebut Arista's attempt to prove the first fair use factor by showing that Arista's infringing use of Cisco's copyrighted materials (1) serves a purely commercial purpose, *Harper & Row Publishers, Inc. v. Nation Enters.*, 471 U.S. 539, 562 (1985) (holding that a defendant's commercial purpose "tends to weigh against a finding of fair use"), and (2) is not "transformative" in any way. Cisco will show that Arista copies Cisco CLI for the sole purpose of directly competing with Cisco in the sale of networking equipment, seeking simply to incorporate Cisco CLI into Arista Ethernet switching products rather than transforming it in any way. *See, e.g.*, ████████████
████████████████████████████████████████████████████████████████████████████████████████
███. Cisco will also show that Arista copied Cisco CLI with the express purpose that Arista's networking equipment would have the identical "look and feel" for a user as Cisco's networking

---

[1] To the extent Arista asserts defenses of copyright misuse, unclean hands, and abandonment, those defenses should not be tried to a jury, but rather are for the Court to decide given (e.g.) their equitable nature.

1  equipment, and then exploited that feature in its marketing to Cisco's customers. ▮

2  ▮

3  ▮.

4      Cisco also will rebut any attempt by Arista to show that it has altered Cisco's copyrighted works "with new expression, meaning or message." *See Oracle Am., Inc. v. Google Inc.*, 750 F.3d 1339, 1374 (2014) ("A work is not transformative where the user 'makes no alteration to the *expressive content or message* of the original work.'" (quoting *Seltzer v. Green Day, Inc.*, 725 F.3d 1170, 1177 (9th Cir. 2013))). Arista's executives have repeatedly boasted of just the opposite. ▮

9-15 ▮.

16     Finally, "[f]air use presupposes good faith and fair dealing." *Harper & Row*, 471 U.S. at 562 (quoting *Time Inc. v. Bernard Geis Assocs.*, 293 F. Supp. 130, 146 (S.D.N.Y. 1968)). Here, however, the evidence Cisco will present at trial will show that Arista has acted in **bad faith**, which heavily weighs against fair use. The public statements and testimony from Arista's executives, among other evidence Cisco will present at trial from Arista's documents and fact witnesses, confirms that Arista acted in bad faith by intentionally and slavishly copying Cisco in order to cut corners to better compete with Cisco ▮

23-25 ▮

                          (ii)    <u>Fair Use: Second Factor</u>

27     For the second fair use factor, Cisco will show that its user interfaces are creative works which reflect the subjective judgments of engineers, rebutting any attempt by Arista to argue that the asserted

1  features of Cisco's user interfaces are merely functional.  Cisco will do so through the fact testimony
2  of its engineers including Kirk Lougheed, historical documentation as to the creative process used to
3  author the works, the admissions of Arista's executives and engineers, and the expert testimony from
4  Cisco's expert Dr. Kevin Almeroth.  *See supra* at Part I.A.1.

5  Cisco will rebut any suggestion the second factor supports Arista because Cisco's CLI has
6  been referred to as an "industry standard," through Arista's own expert testimony, *see, e.g.*, Black
7  Opening Report (ECF 619-2), as well as Arista's binding discovery answers, and through the
8  testimony of both Cisco and Arista witnesses.  *See, e.g.*, [REDACTED]

[Lines 9-28 redacted]

1
2      ▮▮▮▮▮▮▮▮▮▮▮▮▮.

3      Indeed, Cisco will even show that to whatever extent Arista has—during this litigation or in
4 the past—referred to any "industry standard" CLI, that has been an inside "joke" at Arista as a way to
5 refer to Cisco's user interfaces and to minimize Arista's deliberate, wrongful conduct. *See, e.g.*, ▮
6
7
8
9
10
11 ▮▮▮▮▮▮▮.

12      Cisco will further show that the idea that Cisco's—or any company's—user interfaces for
13 networking equipment could become an "industry standard" makes no sense because the user
14 interfaces a company offers (for engineers to configure and manage networking equipment) has
15 nothing to do with network interoperability. *See, e.g.*, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
16
17
18
19
20 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.

21      Cisco also will rebut any "industry standard" argument or evidence from Arista by citing
22 evidence and testimony relating to third party user interfaces that ***differ*** from Cisco's CLI, thereby
23 disproving any "industry standard" theory. *See, e.g.*, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
24 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Indeed, Arista itself makes an alternative
25 Linux-based user interface available on its products, yet prefers to copy Cisco's CLI for its default
26 user interface in order to improperly and unfairly compete for Cisco's current and potential clients.

27
28

### (iii) Fair Use: Third Factor

Cisco will rebut any effort by Arista to show that the third factor favors fair use by showing that Arista copied massively from Cisco; that what Arista copied was crucially important to Cisco's CLI; and that Arista sought ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████.

Cisco will also show that the expressive content that Arista copied from Cisco has comprised the bulk of Arista's own user interface. *See Oracle Am.*, 750 F.3d at 1375 ("[T]he fact that a substantial portion of the infringing work was copied verbatim is evidence of the qualitative value of the copied material, both to the originator and to the plagiarist who seeks to profit from marketing someone else's copyrighted expression." (quoting *Harper & Row*, 471 U.S. at 565)); *see also* ECF 620-1 at ¶ 153 (observing that when Arista first released EOS, that software supported only 189 command-line expressions, 101 (or more than 53%) of which were copied from Cisco).

### (iv) Fair Use: Fourth Factor

Cisco will also disprove any argument that the fourth factor supports Arista by showing that Arista's infringing use has harmed "the potential market value for or value of the copyrighted work." *Harper & Row*, 471 U.S. at 566. The companies are direct competitors as to the networking products at issue. Arista has marketed its infringing products specifically by citing the interchangeability of Arista's infringing user interface and Cisco's original works. *See, e.g.*, ECF 333-1 at 36-45; ECF 335-20 at ARISTANDCA10113782; ECF 335-10; ECF 344-1 at ARISTANDCA12265214; ECF 344-3 at ARISTANDCA13004363; ECF 344-5 at ARISTANDCA10120803. Indeed, Cisco will show that

Arista measures its financial success by reporting to its investors on how much business it takes from Cisco. ECF 338-5 at 5.

### (b)   Scènes à faire

Cisco also will rebut Arista's affirmative defense that scènes à faire excuses its infringement. In assessing a scènes à faire defense, the focus is on the purported "external constraints" that dictated ***Cisco's*** (not Arista's) choices in creating its user interfaces ***at the time of creation***. *Oracle Am.*, 750 F.3d at 1364 (scènes à faire looks to "the circumstances presented to the creator, not the copier," at the time of creation (citing *Mitel, Inc. v. Iqtel, Inc.*, 124 F.3d 1366, 1375 (10th Cir. 1997))); *see also Dun & Bradstreet Software Servs., Inc. v. Grace Consulting, Inc.*, 307 F.3d 197, 215 (3d Cir. 2002) ("[W]e examine the program from the viewpoint of *the creator*."). Arista cannot establish any "external constraints" that dictated Cisco's creation of its user interfaces—there have never been any standards, rules, or constraints (internal or external) for creating the elements of the user interfaces Arista has copied, and Cisco will present ample evidence of that at trial from Arista's own expert as well as Cisco's fact and expert witnesses. *E.g.*, Cisco's Analytic Dissection Trial Brief (ECF 619) at 9-10; Almeroth Reb. Rep. (ECF 620-12) ¶¶ 114-115.

### (c)   Merger

Cisco will rebut Arista's defense of merger for largely the same reasons explained above with respect to scènes à faire. *See Oracle Am.*, 750 F.3d at 1361 ("[T]he district court erred in focusing its merger analysis on the options available to Google at the time of copying. It is well-established that copyrightability and the scope of protectable activity are to be evaluated at the time of creation, not at the time of infringement." (citing *Apple Computer, Inc. v. Formula Int'l, Inc.*, 725 F.2d 521, 524 (9th Cir. 1984))). The fact that Cisco's user interfaces may have functional components does not render them unprotectable or not infringed. *See Eng'g Dynamics, Inc. v. Structural Software, Inc.*, 26 F.3d 1335, 1346 (5th Cir. 1994) ("utilitarian function of the input formats, which ultimately act like switches in the electrical circuits of the program" does not "outweigh their expressive purpose"); *Oracle Am.*, 750 F.3d at 1367 ("[A]n original work—even one that serves a function—is entitled to copyright protection as long as the author had multiple ways to express the underlying idea."). Because Cisco had multiple ways to construct its user interfaces, they can be infringed by Arista even

if they also are part of a functional system. *See* Cisco's Analytic Dissection Trial Brief (ECF 619) at 9-10. Cisco will rely on both parties' fact and expert witnesses to rebut this affirmative defense.

### 4. Arista's Copying Was Willful

Cisco will prove that Arista's copying was willful. This is supported by an overwhelming number of admissions by Arista both before and after this case was filed that Arista intentionally and "slavishly" copied Cisco's user interfaces. *See, e.g.*, *supra* Part I.A.2. Cisco's willfulness claims also are supported by the fact that Arista's top executives—most of whom are former Cisco employees—deliberately directed Arista employees to copy even what they called "silly" things in Cisco's protected user interfaces and that since this lawsuit was filed Arista has taken no action to stop infringing. *See supra* Part I.A.3.a.i. Instead, Arista falsely implied that it was taking corrective action when in fact it refused to do so and has continued to broadly and willfully use a user interface copied "slavishly" from Cisco's user interfaces.

### 5. Cisco's Remedies for Arista's Willful Copyright Infringement

As remedies for Arista's copyright infringement, Cisco will prove to the jury its entitlement to: (i) judgment that Arista is infringing Cisco's copyrights; (ii) an award of Cisco's lost profits due to Arista's copyright infringement; (iii) disgorgement of Arista's profits due to Arista's copyright infringement; and (iv) all available remedies (including the possibility of statutory damages) for Arista's willful infringement. To prove its entitlement to those remedies, Cisco will rely on testimony from both Cisco and Arista witnesses, documentary evidence from the parties, and expert testimony. *See, e.g.*, Chevalier Reports (ECF 333-1; ECF 422-1).

Cisco will also seek from the Court at the appropriate time additional remedies in the form of (i) a permanent injunction preventing Arista and those in privity with Arista from infringing Cisco's copyrights; (ii) an award to Cisco of its reasonable attorneys' fees, expenses, and costs incurred in this action under 17 U.S.C. § 505; (iii) an accounting of Arista's infringing sales and revenues, along with prejudgment and post-judgment interest from the first date of infringement to the present; and (iv) any further relief that the Court may deem proper and just, including based on a finding of willfulness.

### B. Arista Infringes Cisco's U.S. Patent No. 7,047,526

#### 1. Cisco's '526 Patent

Cisco is the owner of the '526 patent, titled "Generic Command Interface for Multiple Executable Routines." The application for the '526 patent was filed on June 28, 2000, and the patent issued on May 16, 2006. The '526 patent names Jeffrey Wheeler and Paul Mustoe (both of whom were retained by Cisco for engineering services) as the inventors. Mr. Wheeler and/or Mr. Mustoe will testify at trial to their conception and reduction to practice of their invention, and its assignment to Cisco.

The '526 patent relates to a universal command line interface for managing network devices. Before the '526 patent invention, network engineers used various software programs, utilities, tools or agents to manage a networking device. In doing so, the network engineer had to learn each individual command formats or syntax for each individual utility, program, or agent, because each one had its own commands and syntax. This was akin to requiring each engineer to learn a whole new language (French, English, Italian) to talk to each new management program installed on the device. As the number of required management programs grew, learning all the different commands and syntax for each one became cumbersome and difficult.

The inventions claimed in the '526 patent aim to solve this problem. Rather than having to learn several different "languages" to talk to each management program, the '526 patent provides a universal command line interface to configure and operate management programs on a networking device. The '526 patent allows a network engineer to use one command or set of commands to control many different programs that monitor or manage a networking device. With the '526 patent technology, the network engineer only needs to speak "English" and the universal command line interface technology will then translate that "English" into the correct command format (i.e., "French," "Italian," etc.) for each of the management programs. This allows a network engineer to utilize several management programs and improve the networking device, without having to learn a new command set for each program.

### 2. Arista's Patent Infringement

Arista's products incorporate the '526 patented technology. Cisco will prove that Arista infringes the '526 patent, and willfully so. *See* 35 U.S.C. § 271. Specifically, Cisco will prove that Arista infringes (directly and indirectly, through induced and contributory infringement) claims 1 and 14 of the '526 patent. Cisco will prove that Arista's switches, routers, and associated products and services that incorporate Arista's EOS, EOS+ and vEOS operating systems infringe the '526 patent, including but not limited to Arista's 7010, 7048, 7050, 7050X, 7100, 7150, 7200, 7250X, 7280E, 7300, 7300X, 7500, 7500E Series products, including but not limited to 7504, 7508, 7316, 7308 7304, 7280SE-72, 7280SE-68, 7280SE-64, 7150S-24, 7150S-52, 7150S-64, 7250QX-64, 7050QX-32, 7050QX-32S, 7050SX-64, 7050SX-72, 7050SX-96, 7050SX-128, 7050TX- 48, 7050TX-64, 7050TX-72, 7050TX-96, 7050TX-128, 7050S-52, 7050-64, 7050Q-16, 7050T-36, 7050T-52, 7050T-64, 7048T-A, 7010T, and 7500R.

To prove patent infringement, Cisco will rely on the testimony of Professor Kevin Jeffay, as well as factual testimony from Cisco and Arista witnesses.

### 3. Arista's Patent Infringement Is Willful

To show willful patent infringement, Cisco will prove that Arista has continued to infringe the '526 patent even after this lawsuit was filed on December 5, 2014, thus that Arista has acted in bad faith, wantonly, maliciously, deliberately, consciously wrongfully, flagrantly, or with reckless disregard of any of the asserted claims of the patent. *See* 35 U.S.C. § 284; *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 136 S. Ct. 1923, 1932 (2016).

### 4. Arista's Affirmative Defenses to Patent Infringement

Arista has recently offered to drop its invalidity defenses to the '526 patent. Cisco has accepted that offer. Thus—aside from contesting infringement—Arista has no further defenses on Cisco's patent infringement claims.

### 5. Cisco's Remedies for Arista's Willful Patent Infringement

For its patent infringement claims, Cisco will prove to the jury that it is entitled to (i) judgment that Arista is infringing Cisco's '526 patent; (ii) an award of damages sufficient to compensate Cisco for Arista's infringement of the '526 patent, in an amount not less than a reasonable royalty; (iii) an

award of damages, including trebling of all damages, sufficient to remedy Arista's willful infringement of the '526 patent in the time period after December 5, 2014, when Cisco filed its original complaint in this case. To prove its entitlement to those remedies, Cisco will rely on testimony from both Cisco and Arista witnesses, documentary evidence from the parties, and expert testimony.

Cisco will later prove to the Court that it is additionally entitled to: (i) an injunction barring Arista and those in privity with Arista from infringing the Patent-in-Suit; (ii) a declaration that this case is "exceptional" under 35 U.S.C. § 285, and an award to Cisco of its reasonable attorneys' fees, expenses, and costs incurred in this action; (iii) an accounting of Arista's infringing sales and revenues, along with prejudgment and post-judgment interest from the first date of infringement to the present; and (iv) any further relief that the Court may deem proper and just.

## II. CONTROLLING ISSUES OF LAW

At the direction of the Court, the parties have already filed—and will continue to file in coming days—separate trial briefs regarding disputed issues of law that are most relevant to the disposition of this case.

Dated: November 11, 2016                     Respectfully submitted,

*/s/ John M. Neukom*_____

Kathleen Sullivan (SBN 242261)
kathleensullivan@quinnemanuel.com
QUINN EMANUEL URQUHART &
SULLIVAN LLP
51 Madison Avenue, 22nd Floor
New York, NY 10010
Telephone: (212) 849-7000
Facsimile: (212) 849-7100

Sean S. Pak (SBN 219032)
seanpak@quinnemanuel.com
Amy H. Candido (SBN 237829)
amycandido@quinnemanuel.com
John M. Neukom (SBN 275887)
johnneukom@quinnemanuel.com.
QUINN EMANUEL URQUHART &
SULLIVAN LLP
50 California Street, 22nd Floor

San Francisco, CA 94111
Telephone: (415) 875-6600
Facsimile: (415) 875-6700

David Nelson (*admitted pro hac vice*)
davenelson@quinnemanuel.com
QUINN EMANUEL URQUHART &
SULLIVAN LLP
500 W Madison St, Suite 2450
Chicago, IL 60661
Telephone: (312) 705-7465
Facsimile: (312) 705 7401

Steven Cherny *admitted pro hac vice)*
steven.cherny@kirkland.com
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900

Adam R. Alper (SBN 196834)
adam.alper@kirkland.com
KIRKLAND & ELLIS LLP
555 California Street
San Francisco, California  94104
Telephone: (415) 439-1400
Facsimile: (415) 439-1500

Michael W. De Vries (SBN 211001)
michael.devries@kirkland.com
KIRKLAND & ELLIS LLP
333 South Hope Street
Los Angeles, California 90071
Telephone: (213) 680-8400
Facsimile: (213) 680-8500

*Attorneys for Plaintiff Cisco Systems, Inc.*