KEKER & VAN NEST LLP
ROBERT A. VAN NEST - # 84065
BRIAN L. FERRALL - # 160847
DAVID SILBERT - # 173128
MICHAEL S. KWUN - #198945
633 Battery Street
San Francisco, CA 94111-1809
Telephone:    (415) 391-5400
Email:  rvannest@kvn.com;
bferrall@kvn.com; dsilbert@kvn.com;
mkwun@kvn.com

SUSAN CREIGHTON, SBN 135528
SCOTT A. SHER, SBN 190053
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
1700 K Street NW, Fifth Floor
Washington, D.C., 20006-3817
Telephone:  (202) 973-8800
Email:  screighton@wsgr.com;
ssher@wsgr.com

JONATHAN M. JACOBSON, NY SBN 1350495
CHUL PAK (*pro hac vice*)
DAVID H. REICHENBERG (*pro hac vice*)
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
1301 Avenue Of The Americas, 40th Floor
New York, NY 10019-6022
Telephone:  (212) 999-5800
Email:  jjacobson@wsgr.com; cpak@wsgr.com;
dreichenberg@wsgr.com

Attorneys for Defendant ARISTA NETWORKS, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| CISCO SYSTEMS, INC.,<br><br>            Plaintiff,<br><br>     v.<br><br>ARISTA NETWORKS, INC.,<br><br>            Defendant. | Case No. 5:14-cv-05344-BLF (NC)<br><br>**ARISTA'S REPLY BRIEF RE ANALYTIC DISSECTION**<br><br>Dept.:     Courtroom 3 - 5th Floor<br>Judge:     Hon. Beth Labson Freeman<br><br>Date Filed: December 5, 2014<br><br>Trial Date: November 21, 2016 |

# TABLE OF CONTENTS

**Page**

I. UNDISPUTED ISSUES. ..................................................................................................1

   A. The many interface elements that Cisco concedes are unprotectable should be identified for the jury. ..................................................................................1

   B. Both parties agree that *scenes a faire* must be presented at trial. ...........................2

II. CISCO'S ARGUMENTS THAT THE DISPUTED CLI ELEMENTS ARE PROTECTABLE LACK MERIT. .......................................................................................3

   A. The jury should be instructed that Cisco's use of standards-based terms and conventional industry terminology is not protectable...............................................3

   B. Cisco's arguments against applying the words and short phrases doctrine to its individual commands lack merit. .......................................................................6

   C. Cisco does not claim to own individual command syntax, which is unprotectable............................................................................................................7

   D. Cisco's incomplete and inoperable asserted commands are unprotectable and Arista has not "admitted" otherwise. ................................................................7

   E. Cisco does not dispute that its selections and arrangements of commands were created for this litigation, and they remain unprotectable...............................8

   F. Cisco's arguments about its hierarchies fail for all the same reasons as its claims about its commands. ......................................................................................9

   G. Arista challenged Cisco's "arrangement" of modes/prompts as unprotectable, offering extensive evidence, and Cisco offers no contrary proof. .......................................................................................................................10

   H. Cisco's command responses and help descriptions are unprotectable for the same reasons as its commands. ..............................................................................11

   I. Cisco's manuals are also subject to analytic dissection, and Cisco's arguments to the contrary lack merit. ....................................................................11

III. CISCO'S ILLOGICAL ARGUMENTS FOR "BROAD" COPYRIGHT PROTECTION FAIL TO REBUT ARISTA'S PROOF THAT ONLY "THIN" PROTECTION IS WARRANTED................................................................................12

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Apple Computer, Inc. v. Microsoft Corp.*
   35 F.3d 1435 (9th Cir. 1994) .................................................................................................. 4

*Bikram's Yoga College of India, L.P. v. Evolation Yoga, LLC*
   803 F.3d 1032 (9th Cir. 2015) ................................................................................................ 5

*CDN Inc. v. Kapes*
   197 F.3d 1256 (9th Cir. 1999) ................................................................................................ 5

*CMM Cable Rep, Inc. v. Ocean Coast Properties, Inc.*
   97 F.3d 1504 (1st Cir. 1996) .................................................................................................. 7

*Compaq v. Ergonome*
   137 F. Supp. 2d 768 (S.D. Tex. 2001) .................................................................................... 6

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*
   499 U.S. 340 (1991) .............................................................................................................. 12

*Harper House, Inc. v. Thomas Nelson, Inc.*
   889 F.2d 197 (9th Cir. 1989) .................................................................................................. 1

*Huey v. Honeywell, Inc.*
   82 F.3d 327 (9th Cir. 1996) .................................................................................................... 7

*Interplan Architects, Inc. v. C.L. Thomas, Inc.*
   No. 4:08-cv-03181, 2010 WL 4065465 (S.D. Tex. Oct. 9, 2010) .......................................... 5

*J. Racenstein & Co. v. Wallace*
   No. 96 Civ. 9222(TPG), 1999 WL 632853 (S.D.N.Y. Aug. 19, 1999) .............................. 6, 7

*Johnson Controls, Inc. v. Phoenix Control Systems, Inc.*
   886 F.2d 1173 (9th Cir. 1989) ................................................................................................ 9

*Landsberg v. Scrabble Crossword Game Players, Inc.*
   736 F.2d 485 (9th Cir. 1984) ................................................................................................ 12

*Mattel, Inc. v. MGA Entm't, Inc.*
   616 F.3d 904 (9th Cir. 2010) ................................................................................................ 12

*Matthew Bender & Co., Inc. v. West Publ'g Co.*
   158 F.3d 674 (2d Cir. 1998) ................................................................................................ 3, 5

*Rice v. Fox Broadcasting Co.*
   330 F.3d 1170 (9th Cir. 2003) ................................................................................................ 5

*Satava v. Lowry*
   323 F.3d 805 (9th Cir. 2003) .............................................................................................. 5, 8

*Shaw v. Lindheim*
   919 F.2d 1353 (9th Cir. 1990) .............................................................................................. 11

# TABLE OF AUTHORITIES
### (continued)

**Page(s)**

*Soc'y of Holy Transfiguration Monastery v. Gregory*
  689 F.3d 29 (1st Cir. 2012) ................................................................................................ 6

*Ventures Educ Sy. Corp. v. Prof'l Dev. Assocs.*
  No. 07 Civ. 223(WHP), 2008 WL 3166667 (S.D.N.Y. July 31, 2008) .................................... 6

*VMG Salsoul, LLC v. Ciccone*
  824 F.3d 871 (9th Cir. 2016) ......................................................................................... 5, 12

**Federal Regulations**

37 C.F.R. § 202.1(a) ............................................................................................................ 6

Cisco's dissection brief concedes that many aspects of its asserted interfaces are unprotectable and that *scenes a faire* evidence must be presented at trial.  To the extent Cisco disputes that other asserted interface elements are unprotectable, its arguments lack merit and it offers no evidence to support them.  The Court should instruct the jury on the unprotectable elements of Cisco's asserted works as explained below.

**I.        Undisputed issues.**

> **A.        The many interface elements that Cisco concedes are unprotectable should be identified for the jury.**

Cisco claims that the many parts of its interfaces that undisputedly do not qualify for copyright protection "should be disregarded."  *E.g.*, Cisco 11/8 Dissection Br. (ECF 619) ("Cisco Br.") at 11:23.  That is not the law.  The interface features that Cisco admits are part of the public domain are exactly the sort of material the Court should identify to prevent an erroneous infringement verdict.  *See* Arista 11/8 Dissection Br. (ECF 617-4) ("Arista Br.") at 8.  Cisco offers no authority to the contrary.  In fact, without careful instruction on these matters, the Court risks a jury verdict of infringement grounded in similarities of unprotectable elements.  Especially given the unwieldy scope of this case and the limited time for trial, Arista should not be forced to waste trial time explaining features of an IOS interface that the parties and the Court agree are unprotectable, but that will be unfamiliar and confusing to the lay jury. The risk is especially severe in this case in light of Cisco's theories grounded in similarities of the "look and feel" of the programs, and incessant accusations of improper and "slavish" copying.  *See Harper House, Inc. v. Thomas Nelson, Inc.*, 889 F.2d 197, 207 (9th Cir. 1989) (reversing jury verdict because of inadequate instructions on unprotectable elements; explaining "obvious risk of an improper verdict" given "the negative connotations to 'copying'").

Accordingly, the Court should instruct the jury that the following elements Arista has identified for analytic dissection, and that Cisco concedes it does not own, are unprotectable: (1) "individual" or "isolated words in Cisco's multiword command expressions"; (2) "'portions' of multiword command expressions dictated by functional demands"; (3) "the 'idea' of a hierarchy"; (4) "'the idea' of grouping commands by their first word"; (5) "individual mode indicators and prompts"; (6) "the 'idea of making certain commands available only in certain modes"; (7) "the

1

'idea of an interactive help system'"; (8) "the 'idea of using a text-based user interface' rather than a graphical interface"; (9) "the idea of using multiword commands to manage or configure a device"; and (10) "the function of any asserted feature (as opposed to Cisco's expression)." Cisco Br. at 5:9–15 (Cisco "does not claim protection" over these elements); *id.* at 8, 14:18-20.

In addition, Cisco has now identified the following additional interface elements that it concedes are unprotectable, and the Court should identify these elements to the jury as well: (1) "single word commands"; (2) "use of '?' to call up help descriptions"; (3) "command prefixes that the user interface autocompletes"; (4) "tab completion"; and (5) "minimum syntactic length" (a concept Cisco does not explain). *Id.* at 5.

As for the remaining dissection issues, Cisco blithely assures the Court that because Cisco has conceded the above-listed elements of its interface are unprotectable, "[t]he Court may therefore be confident that the elements that Cisco asserts ***are all protectable***." Cisco Br. at 5:16–17 (emphasis added). In fact, as explained below, many other aspects of what Cisco asserts here as the protectable elements of its works are also unprotectable.

### B.   Both parties agree that *scenes a faire* must be presented at trial.

Cisco's brief makes clear that neither party is asking the Court to decide *scenes a faire* issues now on a paper record, and that Cisco agrees with Arista (albeit for the wrong reasons[1]) that *scenes a faire* evidence must be presented at trial. It bears noting, however, that Cisco is wrong to claim that Arista has not presented evidence of external industry constraints. *See* Cisco Br. at 7–8. In fact, Arista has offered extensive evidence of the external industry constraints on CLI language, and Cisco offers nothing in response except conclusory contentions that Cisco had "innumerable" choices, ignoring the highly functional nature of the CLI.[2] Cisco would have the Court believe that CLI commands can be "any random set of words or characters," *see* Cisco Br. at 6:5, but the evidence at trial will prove that Cisco's real choices were highly constrained.

---

[1] As Arista has already explained, *scenes a faire* is not an "affirmative defense" under Ninth Circuit law, but part of the core infringement analysis that the jury must conduct with appropriate guidance from the Court. *See* Arista (ECF 455) at 3–4.

[2] For example, Arista has offered extensive evidence from Dr. Black that the command words at issue were chosen from a limited set of technical terminology that would actually make sense in the networking industry context, from pre-existing sources not original to Cisco.

**II.     Cisco's arguments that the disputed CLI elements are protectable lack merit.**

**A.     The jury should be instructed that Cisco's use of standards-based terms and conventional industry terminology is not protectable.**

Cisco does not dispute that its commands are made up almost entirely of industry standard terms which describe functionality and features drawn directly from industry standard documents. Identifying these terms as unprotectable is essential for the jury to assess whether the asserted similarities are original and creative enough to support an infringement verdict, to understand the context for *scenes a faire*, and to accurately assess the amount of expressive content at issue for purposes of fair use.[3]  Without such instruction, lay jurors might easily be misled into believing that Cisco coined the arcane acronyms and terminology of networking, when in fact those terms were pre-existing, commonly used labels for features that the asserted CLI commands relate to.

Consider the asserted command "area nssa."  Both of these terms come from the standardized network routing concept known as OSPF or "open shortest path first." The IETF published RFC 1587 entitled "The OSPF NSSA Option," which describes a type of OSPF "area" known as a "not-so-stubby area" or "nssa." Ex. A (RFC 1587).[4] Cisco can take no credit for these terms. The industry had already labeled this type of "area" an "nssa" in a published standard. And every Ethernet switch vendor—not just Cisco—must be able to use these terms from the standard in CLI commands directed to this feature.  Cisco may argue, if it wishes, that the command "area nssa" is protectable for other reasons, but the jury should be instructed that Cisco's use of the pre-existing terminology "area" and "nssa," by itself, is *not* protectable, any more than the phrase "counsel of record" would be protectable for a company that reports court decisions. *See Matthew Bender & Co., Inc. v. West Publ'g Co.*, 158 F.3d 674, 682–84 (2d Cir. 1998); Arista 11/8 Dissection Br. at 4–5.

Or consider the command "show IPv6 OSPF interface."  Arista has submitted unrebutted evidence that CLI commands in the form "show [parameter]" to cause the system to display a

---

[3] Since Cisco concedes that it "does not seek protection for any isolated word in its multiword command expressions" (Cisco Br. at 7), or for any "individual 'words'" or "'portion' of a multiword command" (*id.* at 8), the only issue is whether the Court should specifically identify these unoriginal terms.

[4] Citations to "Ex. __" refer to the accompanying Declaration of Audrey Hadlock.

3
ARISTA'S REPLY BRIEF RE ANALYTIC DISSECTION
Case No. 5:14-cv-05344-BLF (NC)

1124278

parameter's value were a well-known formulation that Cisco borrowed from older systems. "IPv6" refers to version 6 of the internet protocol, standardized by the internet community, and is an acronym used in the protocol itself and across the networking industry. IETF RFC 2740 defines an "interface" as follows: "In OSPF for IPv6, an interface connects a router to a link." Ex. B (RFC 2740) at 13. In other words, the concept of an IPv6 OSPF interface is part of the bread and butter of networking, and Cisco used standard, pre-existing terminology to describe it.

For both of these examples, the RFCs were authored by committees of engineers not affiliated with Cisco. Cisco may argue that no networking company was *required* to use these terms, or use them in the order Cisco used them, but the jury should also understand that these standard terms predated Cisco and were common throughout the networking industry, and that Cisco's decision to use standard terminology, by itself, is not creative, original, or entitled to protection under copyright law. This aspect of dissection is critical for the tasks the jury must perform, including evaluating originality, scenes a faire, and fair use. Just as in *Apple v. Microsoft*, this Court must identify the standard elements that are *not* protectable within the asserted expression, so that the jury can properly focus its decision on what remains. *Apple Computer, Inc. v. Microsoft Corp.*, 35 F.3d 1435, 1446 (9th Cir. 1994).

Cisco is also wrong to claim that "there is no evidence that Cisco copied any of the asserted command expressions from any other source, or that they are 'preexisting' facts." *See* Cisco Br. at 6. For example, Arista's expert and other evidence show that large portions of the asserted CLI consist of preexisting industry terminology. *See* Arista Br. at 2–5. Cisco's expert has not disputed this fact. On the contrary, as one would expect, Cisco instructed its engineers to use pre-existing standardized terms whenever possible to refer to an industry-standard function. Moreover, the existence of terminology in preexisting standards, which Arista's expert Dr. Black has chronicled in detail on a command-by-command basis (*see, e.g,* Black Am. App. K), is not reasonably disputable. Thus, Arista expects that there will be few if any factual disputes about particular terms. However, if such specific disputes exist, they can be resolved later, after the Court hears evidence. At this stage, the Court need only decide the main issue—that Cisco's use of preexisting, standard networking terminology, by itself, is not protectable.

Cisco relies heavily on *CDN Inc. v. Kapes*, 197 F.3d 1256, 1260 (9th Cir. 1999), to discourage the Court from conducting dissection with respect to these industry standard terms, but *CDN* does not apply. There the issue was the copyrightability of pricing estimates formulated after expert analysis and assessment of various facts, and the result turned on the Court's conclusion that the copyright holder followed an original process in arriving at its own appraisal of a coin's value. Arista's argument here focuses on Cisco's decision to use standard, preexisting industry terminology. *CDN* in no way suggests that such use is protected. And in any event, "[t]he Supreme Court has held unequivocally that the Copyright Act protects only the expressive aspects of a copyrighted work, and ***not*** the 'fruit of the [author's] labor.'" *VMG Salsoul, LLC v. Ciccone*, 824 F.3d 871, 885 (9th Cir. 2016) (emphasis in original; quoting *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 349–54 (1991); applying *de minimis* rule). This is an essential rule to ensure that public domain material is not lost for 100 years or more.

Although the "amount of creative input by the author required to meet the originality standard is low, it is not negligible," and more than "merely trivial" creativity is necessary.[5] *Satava v. Lowry*, 323 F.3d 805, 810 (9th Cir. 2003); *Matthew Bender*, 158 F.3d at 682. Cisco argues that the creativity assessment begins and ends with the question of whether another set of "words or characters" could have been used.[6] Cisco Br. at 6 (citing Almeroth Rpt. ¶ 101). But in other contexts, even Cisco concedes that such a test proves too much. Cisco concedes, for example, that mode names alone and single word commands are not protectable. Cisco Br. at 1:20, 5:11. Using a pre-existing industry label to describe something fails the low bar for originality, and the jury must understand that limitation to evaluate fairly whether the rest of what Cisco asserts here qualifies as original creative expression, and to preserve Arista's right to implement the same basic industry functions that Cisco's commands invoke. *See Bikram's Yoga*

---

[5] Cisco claims that the Court "need not" analyze its individual commands for creativity and originality, but can simply rely on Cisco's purportedly "undisputed creative process." Cisco Br. at 7:8-9. Cisco is wrong. Arista ***does*** dispute the creativity of Cisco's process, and disputes that there even was such a process for every asserted command. Moreover, so long as Cisco asserts that each command is individually protectable, each command must be individually addressed.

[6] The Court need not accept Cisco's illogical and conclusory testimony in conducting its analytic dissection. *See Rice v. Fox Broadcasting Co.*, 330 F.3d 1170, 1180 (9th Cir. 2003) (affirming rejection of "abstract" expert opinion); *Interplan Architects, Inc. v. C.L. Thomas, Inc.*, No. 4:08-cv-03181, 2010 WL 4065465, at *13 (S.D. Tex. Oct. 9, 2010) (rejecting originality opinions).

1   *College of India, L.P. v. Evolation Yoga, LLC*, 803 F.3d 1032, 1040–41 (9th Cir. 2015).

        **B.    Cisco's arguments against applying the words and short phrases doctrine to its individual commands lack merit.**

        Cisco's arguments on the words and short phrases doctrine are also wrong. First, the law does not support Cisco's odd claim that the "words and short phrases" doctrine only applies to phrases "such as names, titles, and slogans" and thus cannot apply to non-advertising text like Cisco's individual commands asserted here. *See* Cisco Br. at 10:19-21. In fact, as Arista has explained, the leading Ninth Circuit decision in *Narell v. Freeman* applied the doctrine to phrases taken from a non-fiction book and used in a novel, and the Federal Circuit has applied the rule to phrases in a digitized set of CPR instructions.[7] *See* Arista Br. at 6; *see also* 37 C.F.R. § 202.1(a) (applying rule to "mere listing of ingredients or contents").[8] Cisco's own authorities also consider and apply the rule in the context of books and religious texts. *See infra* note 10.

        Second, although Arista's "short phrases" argument expressly targets only the ***individual*** Cisco commands[9] (which Cisco claims are individually protectable), Cisco's response largely relies on cases where plaintiffs claimed creativity in the overall selection or arrangement of short phrases and other elements to defeat the words and short phrases rule. Cisco Br. at 11. Cisco's argument misses the point, and its authorities support Arista's position.[10] Cisco also cites *J. Racenstein & Co. v. Wallace*, No. 96 Civ. 9222(TPG), 1999 WL 632853 (S.D.N.Y. Aug. 19, 1999), for the basic rule that "a short phrase may command copyright protection if it exhibits sufficient creativity." *Id.* at *2 (quoting Nimmer on Copyright § 2.01[B]). But the threshold for

---

[7] The individual commands asserted here are also essentially names or titles given to the functions invoked by entering them at a prompt. *See* Arista Brief at 18–19. Thus, the individual commands would be unprotectable short phrases even under Cisco's mistaken view of the law.

[8] *See also* U.S. Copyright Office Circular 34, at http://www.copyright.gov/circs/circ34.pdf (unprotectable words and short phrases including "listing of ingredients, as in recipes, labels, or formulas"; "Names, titles, and other short phrases do not meet" copyrightability requirements.").

[9] Arista refutes Cisco's claims about its ***overall selection*** of commands separately below.

[10] For example, Cisco cites *Compaq v. Ergonome*, 137 F. Supp. 2d 768, 772 (S.D. Tex. 2001), where the plaintiff asserted the "arrangement and selection of the words and pictures [in parts of a book] as a coherent whole"; *Soc'y of Holy Transfiguration Monastery v. Gregory*, 689 F.3d 29, 52 (1st Cir. 2012), where defendant "fail[ed] to identify . . . the alleged short phrases" he claimed were unprotectable in a translation of religious texts; and *Ventures Educ Sy. Corp. v. Prof'l Dev. Assocs.*, No. 07 Civ. 223(WHP), 2008 WL 3166667 at *3 (S.D.N.Y. July 31, 2008), which involved contracts and found phrases could acquire meaning from their overall context as arranged within a work.

determining whether a phrase contains any "appreciable level of creativity" varies inversely with its length: "The smaller the effort (e.g. two words) the greater must be the degree of creativity in order to claim copyright protection." *Id.* (quoting Nimmer). Thus, the phrase "safety core" (used to describe a rope product) was "at most an insubstantial rearrangement of only two words borrowed from other sources," and was therefore unprotectable. *Id.* Cisco's individual commands are unprotectable under this rule. They consist of only a few words, taken from other industry sources, and a high degree of creativity would be necessary to warrant any *individual* copyright protection for such "insubstantial arrangements" of technical terms. Cisco's *ipse dixit* cannot make such "trivial or insignificant" phrases creative enough to qualify for protection. *Id.*; *CMM Cable Rep, Inc. v. Ocean Coast Properties, Inc.*, 97 F.3d 1504, 1519–20 (1st Cir. 1996).

### C. Cisco does not claim to own individual command syntax, which is unprotectable.

Cisco concedes that it "does not claim protection in so-called individual 'command syntax.'" Cisco Br. at 11:18-22. But this does not mean Arista's syntax "objection should be disregarded." *Contra id.* at 11:22-23. Instead, the command syntax that Arista has identified as unprotectable (*see* Arista Br. at 7–8) and that Cisco has conceded must be identified for the jury.

### D. Cisco's incomplete and inoperable asserted commands are unprotectable and Arista has not "admitted" otherwise.

Cisco claims Arista cannot challenge the incomplete and inoperable command fragments that Cisco asserts here, because Arista admitted that it used those commands. Cisco Br. at 11–12. In fact, Arista's Answer to Cisco's Second Amended Complaint correctly *denies* that Arista uses the disputed commands. Answer to SAC (ECF 65) at ¶ 53. Thus, Arista's initial mistaken admission of using them is no longer binding. *See Huey v. Honeywell, Inc.*, 82 F.3d 327, 333 (9th Cir. 1996). "When a pleading is amended or withdrawn, the superseded portion ceases to be a conclusive judicial admission." *Id*. Likewise, the discovery responses Cisco claims "admit[] to implementing the commands in EOS" do not do so. *See* Cisco Br. at 12:3 & Ex. 16 (Rog. 9) (identifying at a high level Arista employees with knowledge of command creation, development, and/or implementation for each accused command); Cisco Br. Ex. 17 (Rog. 26). In fact, Arista explicitly objected to discovery because "many of the accused 'command expressions' are not

syntactically valid and/or complete EOS CLI commands." *Id.* at 7:3–4.

### E. Cisco does not dispute that its selections and arrangements of commands were created for this litigation, and they remain unprotectable.

Cisco does not deny that its asserted selections of commands come from multiple works and are only a portion of the commands in each of those works. Instead of disputing those facts, Cisco argues that whether its asserted arrangements of commands "are taken from multiple works" or "comprise a small fraction of the expression in each work" is irrelevant and has no "bearing on analytic dissection." Cisco Br. at 12:11–13. Cisco is wrong. Because Cisco has claimed protection in its overall selection and arrangements of commands—not simply the individual commands themselves—the Court's task on dissection includes determining whether those selections and arrangements are protectable creative arrangements that appear in Cisco's actual works, or unprotectable selections assembled only for litigation. Cisco seems to claim that its arrangements are protectable because Cisco identified them here as its protectable elements (*see* Cisco Br. at 12–13), but that circular logic cannot support copyright protection. For a compilation of unprotectable elements to receive copyright protection under Ninth Circuit law, there must be some "creative spark" in the arrangement and selection of those elements ***within the work itself***—not in an arrangement created for litigation. *See Satava*, 323 F.3d at 811.

Far from identifying any creative spark in its asserted arrangements of commands, Cisco admits in so many words that the only creative principle behind its asserted selection or arrangement of commands in this case is one of selecting and litigating whatever it believes Arista copied. As Cisco concedes, "the common characteristic that binds Cisco's 500+ multiword command expressions . . . is Arista's own decision to copy portions of Cisco's user interface pertaining to Gigabit Ethernet switching products." Cisco Br. at 12:22–25. Cisco's supposedly "extensive" evidence of creativity of these arrangements is unavailing. *Id.* at 12:14-20. The only creativity Cisco's Dr. Almeroth identifies is essentially "[c]hoosing the words and the arrangement and the organization of those words." Almeroth Rpt. (ECF 626-1) ¶ 101. This fails to support claims of creativity in the selection of commands actually asserted here, however.

Similarly, Cisco argues that it is "irrelevant to analytic dissection" that its asserted commands "make up a 'small fraction' of any particular 'work'"—but it doesn't dispute that its

8

ARISTA'S REPLY BRIEF RE ANALYTIC DISSECTION
Case No. 5:14-cv-05344-BLF (NC)

1124278

alleged "selections" here have no real existence outside this litigation. Cisco Br. at 13:7-8. Cisco argues that copying of even a small portion of a work can potentially be infringing, but this is beside the point. For purposes of analytic dissection, the reason Cisco's subsets of commands aren't protectable *as selections or arrangements* is that Cisco never selected or arranged them in the form asserted here until this litigation—not that the selections are too "small" to be protectable (although Arista will also prove at trial that they are too insignificant a part of Cisco's overall works for copying them to amount to infringement). None of Cisco's cited authorities are relevant to the actual questions before the Court.  Arista is not seeking here to "avoid liability" by "pointing out the dissimilarities between the protected work and the infringing copy" or "showing how much of [its] work [it] did not pirate." *See* Cisco Br. at 13:14-16 (citing *John Wieland Homes* and Nimmer).  Rather, Arista is arguing that these aspects of Cisco's work *are simply unprotectable* because they were never selected and arranged as such outside of this litigation.

### F. Cisco's arguments about its hierarchies fail for all the same reasons as its claims about its commands.

First, Cisco makes the same "Subjective Judgment and Creativity" arguments about its hierarchies as it does about its commands. Cisco Br. at 13–14. They fail for the same reasons explained above. *See supra* Parts II.A-E.

Second, Cisco recites the notion that a computer program's structure, sequence and organization may be copyrightable. Cisco Br. at 13. But whether such protection exists depends "on the particular facts of each case." *Johnson Controls, Inc. v. Phoenix Control Systems, Inc.*, 886 F.2d 1173, 1175 (9th Cir. 1989). In *Johnson Controls*, the Ninth Circuit held, on review of a preliminary injunction, that the district court had not clearly erred in finding on the facts of *that* case that the particular structure, sequence and organization at issue was protected, yet noted that the issue deserved to be "revisited at trial." *Id.* at 1176.  On the facts of this case, Cisco has not shown that its asserted hierarchies—its purported "unique sequence in which it organizes its multi-word commands," which the Court held might be copyrightable (*see* Cisco Br. at 13, citing MSJ Order), are even actually a part of its programs' structure in the form asserted here. Cisco makes no real attempt to do so.  Instead, Cisco offers Dr. Almeroth's explanation that commands are organized into groups hierarchically, and that "I understand Cisco has asserted various

command hierarchies in this case." Cisco Br. at 14; Ameroth Rpt. (ECF 620-1) ¶ 54. In fact, Dr. Almeroth's Exhibit 5 (ECF 620-10) reveals that the various commands claimed as part of Cisco's hierarchies did not all appear in the same version of its operating systems at the same time.

Cisco also argues that it "is not relevant to filtration" whether or not "the hierarchies Arista [allegedly] copied reside within a single registration." Cisco Br. at 14:16–17. But if Cisco seeks to offer to the jury a theory about its copyrighted expression that finds no support in the registered works, then that is precisely the purpose of dissection—to ensure the jury makes a determination of infringement based upon only protectable expression.[11]

Cisco also offers no substance to support its claims that its hierarchies contain creative expression separable from their function. Instead, Cisco argues that the hierarchies contain distinct expression from the commands because they "include[] 'the aesthetic of having a . . . symmetric hierarchy' that was 'elegant,'" and because Cisco "could have sub-structured its hierarchies in any number of equally creative ways, each of which would have been independently protectable." Cisco Br. at 14. In addition, Cisco claims it "exhibited creativity and originality in deciding precisely how to convey that a specific set of words [i.e. particular commands] would follow an initial one." *Id.* at 13:25. None of this distinguishes the creativity of the commands from Cisco's attorneys' hierarchical depiction of them. If the idea of organizing commands hierarchically is not protectable (as Cisco concedes), and the organizing command words themselves (*i.e.*, "show," "ip," etc.) are found unprotectable, then the fact that Cisco can organize commands around unoriginal keywords does not add expression. To hold otherwise would grant Cisco copyright in a natural attribute of language and the inherent functionality of the parser software that, like human speech, parses individual words in sequential order.

### G.    Arista challenged Cisco's "arrangement" of modes/prompts as unprotectable, offering extensive evidence, and Cisco offers no contrary proof.

Cisco mistakenly claims that "Arista does not challenge that Cisco's particular arrangement of identified modes and prompts is protectable," but in fact Arista does dispute this.

---

[11] Cisco's brief on defining its works purports to offer authority supporting aggregation of multiple registered works as the basis for an infringement analysis, but cites no real Ninth Circuit authority for this notion, and no case remotely analogous to Cisco's effort to extract a non-literal element (the user interface) from across dozens of distinct operating systems. *See* ECF 633 at 2.

Cisco Br. at 15:11–12. As Arista explained, Cisco's arrangement of modes and prompts "is also not entitled to copyright protection because it is a creature of Cisco's litigation strategy," and is only a small subset of the modes actually included in Cisco's works, with no creativity except for litigation-driven selections. Arista Response re Protectable Elements (ECF 585) at 12:25-28.

As with the commands and hierarchies, Cisco also claims again that it is "irrelevant to filtration" whether its asserted selection of modes and prompts is actually the complete selection of modes and prompts in any registered work, or only a subset that Cisco made up for this litigation. Cisco Br. at 15:17-22. But again, if the "selection" Cisco asserts is not protected expression of a registered work, now is the time to identify that failure of Cisco's case.

Finally, Cisco claims falsely that Arista has no evidence anyone before Cisco used more than the "general idea of using modes and prompts." Cisco Br. at 15–16. In fact, Arista provided detailed evidence that Privileged and Exec modes and Cisco's prompt symbols were used before Cisco, and used together, and that combination of modes is unprotectable. Arista Br. at 11–12.

**H.    Cisco's command responses and help descriptions are unprotectable for the same reasons as its commands.**

Cisco's arguments against analytic dissection of its command responses and help descriptions fail for all the same reasons as its arguments about the commands. Cisco offers no evidence or authority to support any different treatment for the command responses or help descriptions, and the jury should be instructed that they are unprotectable to the extent explained in Arista's opening brief. *See* Arista Br. at 12 (responses); *id.* at 12–13 (help descriptions).

**I.    Cisco's manuals are also subject to analytic dissection, and Cisco's arguments to the contrary lack merit.**

Cisco admits that its manuals are separate works from its operating systems. *See* Cisco Br. at 18. However, Cisco appears to claim that analytic dissection does not apply to the manuals because they "are not user interfaces." *Id.* at 18:24–27. This is wrong. Analytic dissection applies to all literary works, not just computer programs or interfaces. *See Shaw v. Lindheim*, 919 F.2d 1353, 1356 (9th Cir. 1990) (television scripts; discussing origins of rule and application to literary works). To the extent Cisco's manuals simply reprint facts or other unprotectable

elements, such as command names, those portions of the manuals are also unprotectable.[12]

### III. Cisco's illogical arguments for "broad" copyright protection fail to rebut Arista's proof that only "thin" protection is warranted.

Cisco claims its interfaces are entitled to "broad" copyright protection because Cisco's "use of text made a 'wide range of expression' available." Cisco Br. at 20:2–3.  This makes no sense.  The rules of broad and thin protection differentiate between factual/functional and fictional/creative **literary works**. *See Landsberg v. Scrabble Crossword Game Players, Inc.*, 736 F.2d 485, 488 (9th Cir. 1984); *Feist,* 499 U.S. at 350. All books and text-based works use text and "combinations of words and symbols" (Cisco Br. at 20:5), so Cisco's mere "use of text" does not guarantee broad copyright protection. Cisco offers no evidence to support its contention that its "selection and arrangement of text in a word-based user interface is not 'highly constrained.'" *Id.* at 20:11. In fact, the range of potential expression available to Cisco within the functional context of designing a networking command-line interface was very narrow.  *See* Arista Br. at 15–19.

Instead of offering its own evidence about the range of potential expression, or disputing Arista's evidence that the range of potential expression in designing a command-line interface was narrow, Cisco resorts once more to its claims that it could have created an interface "based on graphical symbols or a series of menus" (Cisco Br. at 20:15), or a "Linux-based interface" like Arista's alternative to its command-line interface (*id.* at 20:18-19). This amounts to claiming copyright in the unoriginal idea of a command line interface, under another name. The relevant question is whether a wide or narrow range of possible expression was available for Cisco's choice of implementing the idea of a command-line interface. The question is not whether a wide range of expression would have been available had Cisco chosen other unoriginal interface types such as a graphical interface. Similarly, a doll-maker cannot claim that a broad range of expression existed for the project of creating a fashion doll sculpt because the company could have chosen to create a baby doll instead. *See Mattel, Inc. v. MGA Entm't, Inc.*, 616 F.3d 904, 914–15 (9th Cir. 2010) (analyzing available expression for the doll project actually at issue). Cisco offers no authority that actually supports this notion, and it is not the law.

---

[12] The snippets of text that Cisco asserts from its manuals are also so trivial that they fail to qualify for protection in any event.  *See Ciccone*, 824 F.3d at 878.

|   |   |
|---|---|
|   | Respectfully submitted, |
| Dated:  November 14, 2016 | KEKER & VAN NEST LLP |
|   | By:  */s/ Brian L. Ferrall* <br> BRIAN L. FERRALL |
|   | Attorneys for Defendant <br> ARISTA NETWORKS, INC. |