Kathleen Sullivan (SBN 242261)
kathleensullivan@quinnemanuel.com
QUINN EMANUEL URQUHART &
SULLIVAN LLP
51 Madison Avenue, 22nd Floor
New York, NY 10010
Telephone: (212) 849-7000
Facsimile: (212) 849-7100

Sean S. Pak (SBN 219032)
seanpak@quinnemanuel.com
Amy H. Candido (SBN 237829)
amycandido@quinnemanuel.com
John M. Neukom (SBN 275887)
johnneukom@quinnemanuel.com.
QUINN EMANUEL URQUHART &
SULLIVAN LLP
50 California Street, 22nd Floor
San Francisco, CA 94111
Telephone: (415) 875-6600
Facsimile: (415) 875-6700

David Nelson (*admitted pro hac vice*)
davenelson@quinnemanuel.com
QUINN EMANUEL URQUHART &
SULLIVAN LLP
500 W Madison St, Suite 2450
Chicago, IL 60661
Telephone: (312) 705-7465
Facsimile: (312) 705 7401

Steven Cherny *(admitted pro hac vice)*
steven.cherny@kirkland.com
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900

Adam R. Alper (SBN 196834)
adam.alper@kirkland.com
KIRKLAND & ELLIS LLP
555 California Street
San Francisco, California 94104
Telephone: (415) 439-1400
Facsimile: (415) 439-1500

Michael W. De Vries (SBN 211001)
michael.devries@kirkland.com
KIRKLAND & ELLIS LLP
333 South Hope Street
Los Angeles, California 90071
Telephone: (213) 680-8400
Facsimile: (213) 680-8500

*Attorneys for Plaintiff Cisco Systems, Inc.*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

| | |
|---|---|
| CISCO SYSTEMS, INC., <br><br> Plaintiff, <br><br> vs. <br><br> ARISTA NETWORKS, INC., <br><br> Defendant. | CASE NO. 5:14-cv-5344-BLF (NC) <br><br> **CISCO'S RESPONSE TO ARISTA'S BRIEF RE ANALYTIC DISSECTION** <br><br> ▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄ <br><br> Date: November 21, 2016 <br> Time: TBD <br> Dept: Courtroom 3 - 5th Floor <br> Judge: Hon. Beth Labson Freeman |

**TABLE OF CONTENTS**

I.   PRELIMINARY STATEMENT .................................................................................. 1

II.  THE ASSERTED ELEMENTS OF CISCO'S USER INTERFACE ARE PROTECTABLE, AND ARISTA'S CHALLENGES ARE UNPERSUASIVE .................. 1

    A.   Cisco's Multiword Command Expressions Are Protectable ...................................... 2

        1.   Cisco Does Not Claim Protection In Any Individual, Isolated Industry Terms, Protocols or Jargon ........................................................................... 3

        2.   The Court Should Not Filter Out Isolated "Words And Short Phrases" ....... 4

        3.   Cisco Does Not Claim Protection In "Command Terms" Or "Command Syntax" ......................................................................................... 6

        4.   Cisco's Selection And Arrangement In Creating Multiword Command Expressions Was Disclosed And Is In Cisco's "Actual Works" ................... 6

    B.   Cisco's Hierarchies Are Protectable ......................................................................... 7

    C.   Cisco's Selection And Arrangement Of Modes And Prompts Is Protectable........... 8

    D.   Cisco's Command Responses And Help Descriptions Are Protectable ................... 8

    E.   The Protected Elements, Taken Together, Are Protectable As A Compilation ........ 8

    F.   The Court Should Not Instruct The Jury On Other "Ideas" And "Functions" .......... 9

    G.   Cisco's Technical Documents Are Protectable ........................................................ 9

III. NO ISSUES REQUIRE A LIVE HEARING OR CROSS-EXAMINATION ..................... 9

IV.  CISCO'S USER INTERFACE WARRANTS BROAD PROTECTION .......................... 10

1 **TABLE OF AUTHORITIES**

**Page**

**Cases**

*Apple Computer, Inc. v. Microsoft Corp.*,
   35 F.3d 1435 (9th Cir. 1994)..................................................................................4, 7, 10, 12
   779 F. Supp. 133 (N.D. Cal. 1991) .........................................................................................4

*Applied Innovations, Inc. v. Regents of the University of Minnesota*,
   876 F.2d 626 (8th Cir. 1989).................................................................................................5

*BUC Int'l Corp. v. Int'l Yacht Council Ltd.*,
   489 F.3d 1129 (11th Cir. 2007)...........................................................................................12

*Brocade Commc'ns Sys. v. A10 Networks, Inc.*,
   873 F. Supp. 2d 1192 (N.D. Cal. 2012) ..............................................................................11

*CDN Inc. v. Kapes*,
   197 F.3d 1256 (9th Cir. 1999).......................................................................................1, 3, 6

*Consul Tec, Inc. v. Interface Sys., Inc.*,
   1991 WL 427891 (E.D. Mich. Oct. 31, 1991) ...................................................................12

*Coquico, Inc. v. Rodríguez-Miranda*,
   562 F.3d 62 (1st Cir. 2009) ...................................................................................................4

*Eng'g Dynamics, Inc. v. Structural Software, Inc.*,
   26 F.3d 1335 (5th Cir. 1994).........................................................................................4, 10

*Enter. Mgmt. Ltd. v. Warrick*,
   717 F.3d 1112 (10th Cir. 2013).............................................................................................4

*Ets-Hokin v. Skyy Spirits, Inc.*,
   323 F.3d 763 (9th Cir. 2003)...............................................................................................12

*Feist Publ'n, Inc. v. Rural Tel. Serv. Co.*,
   499 U.S. 340 (1991) ..............................................................................................................3

*Harper House, Inc. v. Thomas Nelson, Inc.*,
   889 F.2d 197 (9th Cir. 1989).................................................................................................8

*J. Racenstein & Co. v. Wallace*,
   1999 WL 632853 (S.D.N.Y. Aug. 19, 1999) .......................................................................5

*Mattel, Inc. v. MGA Entm't, Inc.*,
   616 F.3d 904 (9th Cir. 2010)...............................................................................................12

*Matthew Bender & Co. v. W. Publ'g Co.*,
   158 F.3d 674 (2d Cir. 1998).................................................................................................4

*Metcalf v. Bochco*,
   294 F.3d 1069 (9th Cir. 2002) ................................................................................................2

*Narell v. Freeman*,
   872 F.2d 907 (9th Cir. 1989) ..................................................................................................5

*Norse v. Henry Holt & Co.*,
   991 F.2d 563 (9th Cir. 1993) ................................................................................................11

*Oracle Am., Inc. v. Google Inc.*,
   750 F.3d 1339 (Fed. Cir. 2014) ............................................................................... 1, 4, 5, 8, 9
   810 F. Supp. 2d 1002 (N.D. Cal. 2011) ..........................................................................11, 12

*Range Road Music, Inc. v. E. Coast Foods, Inc.*,
   668 F.3d 1148 (9th Cir. 2012) ..............................................................................................11

*Satava v. Lowry*,
   323 F.3d 805 (9th Cir. 2003) ........................................................................................8, 9, 11

*Shaw v. Lindheim*,
   919 F.2d 1353 (9th Cir. 1990) ................................................................................................1

*Soc'y of Holy Transfig. Monastery, Inc. v. Gregory*,
   689 F.3d 29 (1st Cir. 2012) ....................................................................................................5

*Softel, Inc. v. Dragon Med. & Sci. Commc'ns, Inc.*,
   118 F.3d 955 (2d Cir. 1997) ...................................................................................................4

*Ventures Educ. Sys. Corp. v. Prof'l Dev. Assocs., Inc.*,
   2008 WL 3166667 (S.D.N.Y. July 31, 2008) ........................................................................5

**Statutes and Regulations**

17 U.S.C. § 409(9) ...........................................................................................................................7

37 C.F.R. § 202.1(a) ........................................................................................................................5

**Miscellaneous**

NIMMER ON COPYRIGHT § 13.03[F][5] ..............................................................................................4

## I. PRELIMINARY STATEMENT

Cisco has identified five categories of protectable expressions exhibited in Cisco's command-line user interfaces that were copied by Arista for use in its gigabit Ethernet switches. ECF 633 at 1-2.[1] These elements—(1) multiword command expressions; (2) multiword command hierarchies; (3) modes and prompts; (4) command responses; and (5) help descriptions—comprise building blocks of Cisco's user interface, created by Cisco engineers who exercised their creativity, expertise and professional judgment to devise expressions that *no other user interface* had implemented at the time, and each of which could have been written using any number of different words, sequences or syntax. Such a creative process is a hallmark of protectable expression. *See CDN Inc. v. Kapes*, 197 F.3d 1256, 1261 (9th Cir. 1999). Because the asserted elements of all five categories (as well as Cisco's related technical documentation) are fully protected and protectable by copyright, Arista's challenges necessarily fail and no "live hearing" is required.

## II. THE ASSERTED ELEMENTS OF CISCO'S USER INTERFACE ARE PROTECTABLE, AND ARISTA'S CHALLENGES ARE UNPERSUASIVE

As explained in Cisco's opening brief, Cisco has provided its pre-filtered submission of protectable user interface elements in order to assist the Court in its determination of whether any of these protectable elements should be further "filtered" out as part of analytic dissection and filtration, such that they should not be considered by the jury when it compares the similarity of Cisco's user interface and Arista's infringing user interface. ECF 619 at 1.

Analytic dissection in the computer program context "eschews bright line approaches and requires a more nuanced assessment of the particular [work] at issue in order to determine what expression is protectable." *Oracle Am., Inc. v. Google Inc.*, 750 F.3d 1339, 1357 (Fed. Cir. 2014). And just as a dissection of a film's plot does not look at each plot point in isolation for protectability but rather at whether the number of shared elements evinces a pattern of copying, so too Arista's wide-scale copying of Cisco's individual elements "constitutes a pattern which is sufficiently concrete so as to warrant a finding of substantial similarity." *Shaw v. Lindheim*, 919 F.2d 1353, 1363 (9th Cir.

---

[1] While the "works" infringed are the user interfaces of the Cisco operating systems at issue (IOS, IOS-XR, IOS-XE, NX-OS), ECF 633 at 1-2, Cisco uses the singular term "user interface" herein to avoid confusion.

1990) ("Even if none of these plot elements is remarkably unusual in and of itself, the fact that both scripts contain all of these similar elements gives rise to a triable question of substantial similarity of protected expression."); *Metcalf v. Bochco*, 294 F.3d 1069, 1074 (9th Cir. 2002) (similar).

### A.   Cisco's Multiword Command Expressions Are Protectable

Cisco identified over 500 multiword command expressions that are protectable elements of its user interface for its gigabit Ethernet switches, and that could have been expressed in multiple other ways. *See* ECF 619 at 5-7; Almeroth Rep. (ECF 620-1) ¶ 101 ("[D]esigning a command syntax for a particular function is a subjective exercise that requires independent judgment of the author and numerous creative and expressive choices…. The author must determine what order to place the words in and the relationship, if any, that the words should have with one another. All of those decisions are left to the subjective judgement and creativity of the command author …. Choosing the words and the arrangement and the organization of those words is where the creativity lies."); *id.* ¶¶ 102-115 (discussing creativity in Cisco's multiword commands). "Cisco Fellow" Kirk Lougheed confirms that Cisco engineers created commands based on subjective preferences and professional judgment. ECF 615-2 154:11-155:21 (describing his "aesthetic choices"); *id.* at 129:5-131:7 (expression based on "what I thought was a very elegant, symmetric, elegant way of referring to different protocols within a multi-protocol router"); *id.* at 179:22-181:1, 183:22-184:17, 185:2-186:5 (describing his creation of various multiword command expressions); Exh. 1 (Lougheed Tr.) at 131:9-135:13, 141:7-142:16, 142:18-143:6, 166:24-168:19, 168:21-169:16 (same); ECF 372 at 5-13 (and evidence cited therein). Arista's own VP of Software Engineering, Adam Sweeney, [REDACTED]

[REDACTED] This far surpasses the "extremely low" "requisite level of creativity." *Feist Publ'n, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 345 (1991). Cisco also provided evidence of its creative *process* in arriving at its multiword command expressions, which obviates any need to "engage in an analysis of each and every" command for creativity and originality. ECF 482 at 13 (citing *CDN*). Each of Arista's challenges are unpersuasive.

### 1. Cisco Does Not Claim Protection In Any Individual, Isolated Industry Terms, Protocols or Jargon

While Arista asks (ECF 618 at 2-3) for a jury instruction identifying "as unprotectable all aspects of the Cisco CLI that Cisco took from industry protocols and standards or industry jargon," Cisco does not assert protection for any isolated words that were "pre-existing," "well-known" or "ordinary" in the "networking world," (*id.*). To the contrary, Cisco asserts that the ***multiword command expressions*** created by Cisco and copied by Arista are protectable. Arista fails to identify any asserted ***multiword command expressions*** that existed before Cisco's first use.[2] Almeroth Reb. Rep. (ECF 620-12) ¶ 114 (Arista's experts showed at best "that some of the ***individual words*** may have existed previously. But what they failed to do is provide evidence that the multi-word command expressions … existed in any of those documents or products."). Indeed, Arista concedes that Cisco "may assert originality in its selection, coordination, or arrangement of those unprotectable elements into larger arrangements," ECF 618 at 5, *i.e.*, its multiword commands.[3] Thus Arista's proposed

---

[2] The Court should disregard Arista's citation to "pre-Cisco use of 'show users' and 'terminal length,'" ECF 618 at 18, as Cisco has not included these in its submission. *See* ECF 552-1 at 3-33.

[3] Contrary to Arista's mistaken suggestions (ECF 618 at 2-3), ***none*** of Cisco's asserted commands had previously been used as networking commands, and thus Cisco vigorously disputes Arista's representations that: Cisco "took [its] terms" from "pre-existing sources," *id.* at 2 n.2.; various terms in Cisco's multiword command expressions are "well-known and ordinary in the networking world," *id.* at 2; the "vast majority of Cisco's command terms come directly from published industry standards or conventional industry terminology," *id.* at 3; "all Ethernet switches must" use the same names and parameters Cisco used, *id.*; and Cisco's commands "simply took preexisting terminology … and used it in its standard and conventional sense," *id.*

1 instruction is unwarranted.

2     Arista's piecemeal approach of reducing Cisco's multiword commands into isolated words
3 contradicts well-settled case law warning "against the dangers of basing copyrightability analysis on
4 an approach which isolates each element." *Matthew Bender & Co. v. W. Publ'g Co.*, 158 F.3d 674,
5 691 (2d Cir. 1998); *Oracle*, 750 F.3d at 1353 ("[T]he opening of Charles Dickens' *A Tale of Two*
6 *Cities* is nothing but a string of short phrases. Yet no one could contend that this portion of Dickens'
7 work is unworthy of copyright protection because it can be broken into those shorter constituent
8 components."); *Enter. Mgmt. Ltd. v. Warrick*, 717 F.3d 1112, 1119 (10th Cir. 2013) (similar);
9 *Coquico, Inc. v. Rodríguez-Miranda*, 562 F.3d 62, 68 (1st Cir. 2009) (in dissecting, "the court should
10 not lose sight of the forest for the trees"); *Softel, Inc. v. Dragon Med. & Sci. Commc'ns, Inc.*, 118 F.3d
11 955, 964 (2d Cir. 1997) ("taken individually, the words that constitute a literary work are not
12 copyrightable, yet this fact does not prevent a literary text, *i.e.*, a collection of words, from enjoying
13 copyright protection"); *Apple Computer, Inc. v. Microsoft Corp.*, 779 F. Supp. 133, 136 (N.D. Cal.
14 1991) (similar as to "abstract painting composed entirely of geometric forms arranged in an original
15 pattern"), *aff'd*, 35 F.3d 1435 (9th Cir. 1994); NIMMER ON COPYRIGHT § 13.03[F][5] ("analysis should
16 not proceed mechanically simply by isolating physical elements out of the copyrightable work").[4]

17     **2.   The Court Should Not Filter Out Isolated "Words And Short Phrases"**

18     The Court likewise should reject Arista's request that the Court "instruct the jury" that
19 multiword command expressions "of four keywords or fewer are unprotectable." ECF 618 at 5.

20     *First*, Arista is incorrect to contend that Cisco's commands are unprotectable as "short
21 functional descriptors." *Id.* A work "that serves a function … is entitled to copyright protection as
22 long as the author had multiple ways to express the underlying idea." *Oracle*, 750 F.3d at 1367; *see*
23 *also Eng'g Dynamics, Inc. v. Structural Software, Inc.*, 26 F.3d 1335, 1346 (5th Cir. 1994)
24 ("utilitarian function of the input formats, which ultimately act like switches in the electrical circuits

---

[4] Arista also claims (ECF 618 at 4 n.6) that "courts have held that individual components in a user interface are typically ***not*** independently protectable" (emphasis in original), but the cited cases involve ***graphic*** user interfaces ("GUIs") and layouts involving non-literal elements. A text-based user interface (such as Cisco's), in which a command can be authored in any number of ways with unlimited creativity, presents ***textual*** elements and is not susceptible to "environmental and ergonomic factors which limit the range of possible expression in GUIs." *Apple*, 35 F.3d at 1445.

of the program," do not "outweigh their expressive purpose"). Cisco's multiword commands are creative endeavors, authored by engineers based on their subjective judgment, with limitless alternative ways of expression. Almeroth Rep. ¶¶ 101-112. Moreover, Cisco's multiword commands were developed through a creative process involving subjective judgment. *CDN* found even *prices* copyrightable "because CDN used its judgment to create the prices." ECF 482 at 12. Cisco engineers' use of judgment and expertise via a creative process renders its expressions protectable too.

*Second*, while "[w]ords and short phrases such as names, titles, and slogans" may be unprotectable standing alone, 37 C.F.R. § 202.1(a); ECF 618 at 6-7, Cisco's **multiword command expressions** are not mere names, titles, slogans, clichés, or otherwise common phrases.

*Third*, the question "is not merely whether a name, title or slogan contains some minimal number of words. Rather it is whether the phrase contains some appreciable level of creativity, however few words it may contain." *J. Racenstein & Co. v. Wallace*, 1999 WL 632853, at *2 (S.D.N.Y. Aug. 19, 1999); *Soc'y of Holy Transfig. Monastery, Inc. v. Gregory*, 689 F.3d 29, 52 (1st Cir. 2012) ("applicability of this law very much turns on the specific short phrases at issue, as not all short phrases will automatically be deemed uncopyrightable"); ECF 619 at 10-11. For example, in *Applied Innovations, Inc. v. Regents of the University of Minnesota* 876 F.2d 626, 635 (8th Cir. 1989), "short, simple, declarative statements, such as 'I am a good mixer' and 'No one seems to understand me'" were protectable in the context of a personality assessment test because they were not "merely fragmentary words and phrases" nor "names or titles or slogans." *Narell v. Freeman*, 872 F.2d 907, 911 (9th Cir. 1989), confirms this approach, holding that "[o]rdinary phrases" or "expressions" conveyed in "stereotyped fashions" are not subject to copyright protection.[5] Cisco's multiword command expressions are not fragmentary, nor were they "commonly-used expressions" when created. *Id.*; *see* Almeroth Reb. Rep. ¶ 114. Further, Cisco's multiword command expressions are part of a larger system, "tak[ing] their meaning from the context of the whole and serv[ing] the same purpose as the copyrighted work." *Ventures Educ. Sys. Corp. v. Prof'l Dev. Assocs., Inc.*, 2008 WL

---

[5]   Arista argues that *Narell* held the statements at issue to be unprotectable under the words and short phrases doctrine because the statements were "primarily factual." ECF 618 at 6. This is incorrect. *Narell* held that, aside from its use of short phrases, the defendant "paraphrased largely factual statements," and that the underlying facts "are available to for the use of any author." 872 F.2d at 912.

3166667, at *3 (S.D.N.Y. July 31, 2008).

### 3. Cisco Does Not Claim Protection In "Command Terms" Or "Command Syntax"

Arista likewise errs in asking for a finding that certain "basic command syntax" is unprotectable. ECF 618 at 7. Cisco does not claim protection in so-called individual "command syntax"; rather, it identified particular multiword command expressions and the hierarchies of such expressions (which together comprise the overall syntax of Cisco's user interface). Almeroth Rep. ¶¶ 101, 109; ECF 619 at 11. While Arista also argues that certain "command terms" are unprotectable, ECF 618 at 7-8, Cisco does not seek protection for any individual word, including any "command term."[6]

### 4. Cisco's Selection And Arrangement In Creating Multiword Command Expressions Was Disclosed And Is In Cisco's "Actual Works"

Cisco has provided extensive evidence of the creative process by which its engineers authored the asserted multiword command expressions. ECF 619 at 12 (citing evidence); ECF 372 at 5-13 (citing evidence); *CDN*, 197 F.3d at 1260 (prices protectable on such grounds).[7]

Arista errs in complaining that Cisco's "selection and arrangement" of multiword commands supposedly was never "authored" in the form asserted. ECF 618 at 8-9. Arista confuses Cisco's list of protectable expressions with its copyrighted works. As Cisco's brief on the copyrighted works explains, *see* ECF 633 at 1-2, the works at issue are in fact the user interfaces generated by four Cisco operating systems. The asserted elements are those elements of those users interfaces that Arista slavishly copied, and Cisco clearly disclosed exactly where every multiword command expression (and every other protectable element) appears in each user interface. Almeroth Rep. Exs. 2-6.

While Arista argues (ECF 618 at 8 n.11) that Cisco did not formally register its works as "compilations," the protectability of selection and arrangement in creating multiword command

---

[6] Arista uses the example of "show," ECF 618 at 7-8, but there are many other words that could be used. *See* Almeroth Rep. ¶ 111 ("display," "print," "watch," "view," "info," or "any combination of letters and numbers" could "express this idea"); Ex. 1 (Lougheed Tr.) at 166:24-168:19 ("I had a number of possibilities. There was 'show,' there was 'display,' there was 'print,' there was 'list,' there was 'dump.' All sorts of reasonable possibilities. … ['Show'] appealed to me aesthetically.").

[7] Arista incorrectly claims (ECF 618 at 8) that the Court ruled that Cisco "cannot" claim copyright protection in a compilation of protectable elements. Rather, the Court denied Cisco's motion for summary judgment because its status as a compilation was "not clear" on that motion. ECF 482 at 5.

expressions has nothing to do with a compilation of preexisting works. 17 U.S.C. § 409(9). And to the extent Arista complains that all 500+ multiword commands do not reside in a single user interface, that is a direct function of Arista's deliberate decision to copy user interface elements from multiple Cisco user interfaces spanning multiple years and multiple versions. ECF 633 at 2. Further, Arista's allegation that Cisco's multiword command expressions comprise a "tiny" portion of any particular "work," ECF 618 at 8, is not only incorrect, *see* Almeroth Reb. Rep. ¶¶ 71, 149-153, but irrelevant for the reasons discussed in Cisco's opening brief. ECF 619 at 13.

### B. Cisco's Hierarchies Are Protectable

As noted in Cisco's opening brief, its engineers exhibited creativity and originality in deciding precisely how to convey that a specific set of words—*i.e.*, particular multiword command expressions—would follow an initial one. ECF 619 at 13-14 (citing evidence); *see also* Almeroth Rep. ¶¶ 54-57 (describing hierarchies); *id.* ¶ 113 (the "decision to organize Cisco's IOS CLI commands into the designers' chosen hierarchy reflects the original choices of the designers" and providing a hierarchy example for "show," sub-hierarchies such as for "aaa" and "ip" and "storm-control" and sub-sub-hierarchies below that such as for "method-list" and "access-list"); ECF 615-2 at 129:10-130:19 (Cisco founding engineer describing creation of early command hierarchies for Cisco and desire for an "elegant" and "symmetric hierarchy"). Arista's critiques are unfounded.

*First*, for the reasons discussed above, *supra* Part I.A.4, and in Cisco's opening brief, ECF 619 at 14, Cisco's asserted hierarchies are properly identified. Cisco's selections are not "cherry-picked"; they are the ones Arista copied. Cisco need not include every one of its hierarchies in its protectable elements, for it is required to include only "particular features in its works ***which are similar*** to features found in" Arista's. *Apple*, 35 F.3d at 1443(emphasis added).

*Second*, Cisco does not seek protection for the "idea" of a hierarchy grouped by "common initial words," ECF 618 at 10, and thus the Court should not address this suggestion.

*Third*, while Arista argues that Cisco's hierarchies "contain no creative expression" separate from the commands themselves or "the idea of organizing commands by their first words," ECF 618 at 10, Arista confuses the "idea" of a hierarchy with Cisco's ***particular*** expression of its hierarchies, which could have been structured in any number of ways. Almeroth Rep. ¶¶113-115; ECF 615-2

154:11-155:21. As Cisco's engineers created command expressions, they also considered the organization of those commands in hierarchies. ECF 616-19 at 98:22-99:12; 53:15-61:10. That is, the multiword command expressions are created in connection with the commands' structure in hierarchical organizations, including the creative decision of which commands will be grouped and sequenced together. Almeroth Rep. ¶¶ 113-114. Thus, each "unique sequence in which [Cisco] organizes its multi-word commands" is protectable. ECF 482 at 14.

### C. Cisco's Selection And Arrangement Of Modes And Prompts Is Protectable

Cisco's selection and arrangement of its modes and prompts are protectable for the reasons discussed above and in Cisco's opening brief, ECF 619 at 15-16. The vendors who Arista alleges use the "same set" of modes and prompts, *see* ECF 618 at 11-12 & n.13, all began their use **after** Cisco first conceived of and used them, and thus have no relevance to the inquiry. *Oracle*, 750 F.3d at 1372.

### D. Cisco's Command Responses And Help Descriptions Are Protectable

Cisco's creativity in its creation of command responses (sometimes also called "screen outputs") is detailed in Cisco's opening brief, including how each command response was created by the same engineer who created its associated command. *See* ECF 619 at 16.[8] Likewise, Cisco's opening brief describes the creative process used by Cisco's engineers to create protectable help descriptions, including how such descriptions were authored by the engineer who created the associated command expression. *See* ECF 619 at 17-18.[9] Arista's critiques, which repeat those in its response to Cisco's submission of protectable elements, fail for the same reasons discussed above and in Cisco's opening brief.

### E. The Protected Elements, Taken Together, Are Protectable As A Compilation

As discussed in Cisco's opening brief, ECF 619 at 19, the asserted elements in Cisco's user interface are also protectable as a compilation. "A copyrightable compilation can consist mainly or entirely of uncopyrightable elements." *Harper House, Inc. v. Thomas Nelson, Inc.*, 889 F.2d 197, 204 (9th Cir. 1989); *see also Satava v. Lowry*, 323 F.3d 805, 811 (9th Cir. 2003) ("a **combination** of

---

[8] For an example of a protectable command response Arista copied, *see* ECF 552-1 at 80 (providing a narrative explanation of how to request help and describing the different styles of help provided).
[9] Examples of help descriptions Arista copied include "Specifies that an UNENCRYPTED key will follow" and "Administratively shut down this neighbor." ECF 552-1 at 106, 108.

unprotectable elements may qualify for copyright protection"). Thus, regardless of the extent to which Cisco's asserted elements are protectable, the user interface is nonetheless protectable as a whole. The fact that each of Cisco's protectable elements exist in specified user interfaces generated by Cisco operating systems, *see* Almeroth Rep. Exs. 2-6, confirms that such treatment is appropriate.

### F. The Court Should Not Instruct The Jury On Other "Ideas" And "Functions"

Arista similarly errs in asking that the Court instruct the jury that: (1) Cisco is not entitled to protection for its "choice to use a text-based CLI"; and (2) the function of any feature is not protectable. ECF 618 at 14. Cisco does not assert that its choice to use a text-based user interface is protectable on its own, nor does it claim protectability of any function—but rather only its original expression that has functional components. *Oracle*, 750 F.3d at 1367.

### G. Cisco's Technical Documents Are Protectable

Arista argues that Cisco's technical documents that reference Cisco's protectable elements are unprotectable for the same reasons. ECF 618 at 14-15. For the reasons discussed in Cisco's opening brief, *see* ECF 619 at 18-19, the particular expressions in these technical documents are protectable.

### III. NO ISSUES REQUIRE A LIVE HEARING OR CROSS-EXAMINATION

Arista argues that a live hearing and cross-examination are required for Arista to prove that Cisco's protected elements are scènes à faire that "flow directly from the commands' functional nature and the industry's preferences and expectations." ECF 618 at 17. Arista is incorrect.

*First*, Arista notes that "[i]t remains the ***jury's task*** to decide whether Cisco has proven that any remaining elements constitute infringement in light of doctrines such as scènes à faire and the *de minimis* rule." *Id.* (emphasis added). Thus, Arista concedes that scènes à faire is not an issue of protectability determined by the Court, but rather an affirmative defense to infringement on which Arista bears the burden of proof to the jury. *Oracle*, 750 F.3d at 1364; *Satava*, 323 F.3d at 810 n.3.

*Second*, even if the Court considers scènes à faire in the context of protectability, Arista's proffered evidence cannot sustain its challenge. In assessing a scènes à faire defense, the focus must be on the purported "external constraints" that dictated ***Cisco's*** choices in creating its protectable elements ***at the time of their creation***. *Oracle*, 750 F.3d at 1364 (scènes à faire looks to "the circumstances presented to the creator, not the copier"). Under this standard, Arista provides no

evidence of any external constraints upon Cisco at the time it created the asserted elements. For example, as detailed in Cisco's opening brief: (1) Arista cites no evidence that ***any*** of Cisco's protectable elements, in their entirety, was ever used before Cisco's creation of them, fatally undermining any claim of "external constraints," (including based on, *e.g.*, "industry acronyms," "familiar terminology," or the "English language"); (2) Cisco's protected elements are not constrained by functionality because Cisco had multiple options available to it to construct its expressions; (3) Cisco's own "early" decisions in constructing its elements are not an "external constraint" but rather an internal preference for maintaining consistency among Cisco's products; and (4) Arista's evidence of other companies' alleged widespread use of Cisco's protected elements occurred ***after*** Cisco created them and is thus irrelevant (and there is no evidence that any of those companies used Cisco's particular protected elements before Cisco did). ECF 619 at 9-10 (citing cases and evidence). An evidentiary hearing could not change any of these undisputed, dispositive facts.

*Third*, Arista asserts that certain of Cisco's command expressions "omit necessary words and parameters," and thus are not the "actual" commands. ECF 618 at 20. But the missing "words and parameters" are, in fact, user-provided inputs and parameters, which do not negate protectability. *See* ECF 619 at 11-12; *Apple*, 35 F.3d at 1444 ("user participation may not negate copyrightability" of user interface) (citing cases); *Eng'g Dynamics*, 26 F.3d at 1342, 1344 ("quasi-textual" formats that "act as prompts for the insertion of relevant data" "readily qualify" as protectable). Nor does Arista explain how such commands are "more clearly scènes à faire." ECF 618 at 20. Arista admitted that these are command expressions "that it uses." ECF 36 (Ans.) ¶ 53.

### IV. CISCO'S USER INTERFACE WARRANTS BROAD PROTECTION

Arista asks the Court to decide between applying the "substantial similarity" test afforded to works with "broad" protection, and the "virtually identical" test afforded to "thinly" protected works. ECF 618 at 15. While "defin[ing] the scope of the plaintiff's copyright" is not part of analytic dissection, but rather a separate inquiry that the Court must address subsequently, *Apple*, 35 F.3d at 1443, the Court, should find (if the issue is reached now) that Cisco's works warrant broad protection.

*First*, Cisco has submitted ***direct evidence*** that Arista copied Cisco's expressions, which obviates any need for comparing the similarity of the works.

[REDACTED] "Where there is direct evidence of copying, the only question … is whether the copied material is protected." *Brocade Commc'ns Sys. v. A10 Networks, Inc.*, 873 F. Supp. 2d 1192, 1219 (N.D. Cal. 2012) (where plaintiff "submitted direct evidence of copying … the substantial similarity test is not applicable"); *see also, e.g.*, *Range Road Music, Inc. v. E. Coast Foods, Inc.*, 668 F.3d 1148, 1154 (9th Cir. 2012) (if direct evidence of copying is available, "[a] showing of 'substantial similarity' is irrelevant"); *Norse v. Henry Holt & Co.*, 991 F.2d 563, 566 (9th Cir. 1993) ("substantial similarity analysis is inapposite to the copying issue because appellees admit that they in fact copied phrases from Norse's letters").

*Second*, even if the Court addresses which test to apply, "substantial similarity," not "virtual identity," is the proper standard. The "virtually identical" test applies only where a defendant proves "that a substantial portion of [asserted non-literal material] is unprotected." *Oracle Am., Inc. v. Google Inc.*, 810 F. Supp. 2d 1002, 1012 (N.D. Cal. 2011). Here, Arista makes no attempt to show that a "substantial portion" of Cisco's asserted elements is unprotected. Further, the "virtually identical" test exists to prevent first movers from staking out an effective "monopoly on the idea" they express. *Satava*, 323 F.3d at 812 n.5. Because Cisco had many options available in creating its

---

[10] *See, e.g.*, [REDACTED]

1  textual expressions, recognizing that original authorship of those expressions merits broad protection
2  would not grant Cisco a "monopoly" over the idea of controlling gigabit Ethernet switches with a
3  command-line user interface—multiple Cisco competitors have used similar text-based user interfaces
4  without copying Cisco's protected material.  See ECF 619 at 20; Almeroth Rep. ¶¶ 74, 119, 239.[11]
5  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
6  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.  Where an
7  idea not only can be, but is in fact, expressed in a meaningful variety of ways, that refutes any
8  suggestion that substantially similar copying of protected elements should be excused unless it reaches
9  virtual identity.  See, e.g., Oracle, 810 F. Supp. 2d at 1011-12 (applying "substantial similarity" to
10 comparison of non-code API reference items); Consul Tec, Inc. v. Interface Sys., Inc., 1991 WL
11 427891, at *2-3 (E.D. Mich. Oct. 31, 1991) (applying "substantial similarity" to user interface—
12 including "its unique compilation of commands, its command line syntax, and its status message
13 codes"); accord BUC Int'l Corp. v. Int'l Yacht Council Ltd., 489 F.3d 1129, 1148-49 (11th Cir. 2007)
14 ("substantial similarity" applies to text).

15        Arista's cited cases, ECF 618 at 15, are inapposite.  Apple did not address a text-based
16 command-line user interface of a literary work, but rather a ***graphical*** user interface of an audiovisual
17 work.  35 F.3d at 1445.  Mattel, Inc. v. MGA Entm't, Inc., 616 F.3d 904, 908-09 (9th Cir. 2010), also
18 considered visual works: sketches and sculpts for a fashion doll with limited options for visual appeal.
19 Ets-Hokin v. Skyy Spirits, Inc., 323 F.3d 763, 765-66 (9th Cir. 2003), likewise considered a visual
20 work: a mere photograph of a blue bottle.  These cases confirm that a "virtual identity" test may apply
21 only in cases where there is a "narrow range" of visual expression: "(for example, there are only so
22 many ways to paint a red bouncy ball ons blank canvas)." Mattel, 616 F.3d at 914.  Because there is a
23 myriad of different ways to create and organize pure ***textual*** expressions—as demonstrated by
24 overwhelming documentary and testimonial evidence, and Arista's own alternative user interface—
25 Cisco's protected elements warrant broad protection.

---

[11] See also, e.g., ECF 346-3 at 176:16-177:17 (different companies have different commands); id. at 350:7-351:7; ECF 549-2 at 110:24-112:7) (similar); ECF 549-6 at 156:12-19 (similar).

| | | |
|---|---|---|
| 2 | Dated: November 14, 2016 | Respectfully submitted, |
| 3 | | /s/ John M. Neukom |
| 4 | | Kathleen Sullivan (SBN 242261) |
| | | kathleensullivan@quinnemanuel.com |
| 5 | | QUINN EMANUEL URQUHART & SULLIVAN LLP |
| 6 | | 51 Madison Avenue, 22nd Floor |
| | | New York, NY 10010 |
| 7 | | Telephone: (212) 849-7000 |
| | | Facsimile: (212) 849-7100 |

Sean S. Pak (SBN 219032)
seanpak@quinnemanuel.com
Amy H. Candido (SBN 237829)
amycandido@quinnemanuel.com
John M. Neukom (SBN 275887)
johnneukom@quinnemanuel.com.
QUINN EMANUEL URQUHART & SULLIVAN LLP
50 California Street, 22nd Floor
San Francisco, CA 94111
Telephone: (415) 875-6600
Facsimile: (415) 875-6700

David Nelson (*admitted pro hac vice*)
davenelson@quinnemanuel.com
QUINN EMANUEL URQUHART & SULLIVAN LLP
500 W Madison St, Suite 2450
Chicago, IL 60661
Telephone: (312) 705-7465
Facsimile: (312) 705 7401

Steven Cherny *admitted pro hac vice)*
steven.cherny@kirkland.com
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900

Adam R. Alper (SBN 196834)
adam.alper@kirkland.com
KIRKLAND & ELLIS LLP
555 California Street
San Francisco, California  94104
Telephone: (415) 439-1400
Facsimile: (415) 439-1500

Michael W. De Vries (SBN 211001)
michael.devries@kirkland.com

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

KIRKLAND & ELLIS LLP
333 South Hope Street
Los Angeles, California 90071
Telephone: (213) 680-8400
Facsimile: (213) 680-8500

*Attorneys for Plaintiff Cisco Systems, Inc.*