Kathleen Sullivan (SBN 242261)
kathleensullivan@quinnemanuel.com
QUINN EMANUEL URQUHART &
SULLIVAN LLP
51 Madison Avenue, 22nd Floor
New York, NY 10010
Telephone: (212) 849-7000
Facsimile: (212) 849-7100

Sean S. Pak (SBN 219032)
seanpak@quinnemanuel.com
John M. Neukom (SBN 275887)
johnneukom@quinnemanuel.com
QUINN EMANUEL URQUHART &
SULLIVAN LLP
50 California Street, 22nd Floor
San Francisco, CA 94111
Telephone: (415) 875-6600
Facsimile: (415) 875-6700

David Nelson (*admitted pro hac vice*)
davenelson@quinnemanuel.com
QUINN EMANUEL URQUHART &
SULLIVAN LLP
500 W Madison St, Suite 2450
Chicago, IL 60661
Telephone: (312) 705-7465
Facsimile: (312) 705 7401

[Additional counsel listed on signature page]

ATTORNEYS FOR PLAINTIFF CISCO
SYSTEMS, INC.

KEKER & VAN NEST LLP
ROBERT A. VAN NEST - # 84065
rvannest@kvn.com
BRIAN L. FERRALL - # 160847
bferrall@kvn.com
DAVID SILBERT - # 173128
dsilbert@kvn.com
MICHAEL S. KWUN - # 198945
mkwun@kvn.com
633 Battery Street
San Francisco, CA 94111-1809
Telephone:    415 391 5400
Facsimile:    415 397 7188

ATTORNEYS FOR DEFENDANT ARISTA
NETWORKS, INC.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

| | |
|---|---|
| CISCO SYSTEMS, INC.,<br><br>Plaintiff,<br><br>vs.<br><br>ARISTA NETWORKS, INC.,<br><br>Defendant. | CASE NO. 5:14-cv-5344-BLF<br><br>**PARTIES' SECOND AMENDED STIPULATED AND DISPUTED PROPOSED JURY INSTRUCTIONS**<br><br>Judge:  Hon. Beth Labson Freeman<br>Dep't:  Courtroom 3, 5th Floor<br>Trial Date:  November 21, 2016 |

# Table of Contents

Table of Contents ....................................................................................................1

Preliminary Notes ...................................................................................................6

STIPULATED: Preliminary Instruction No. 1 re Duty Of The Jury ....................7

STIPULATED: Preliminary Instruction No. 2 re Claims And Defenses ..............8

STIPULATED: Preliminary Instruction No. 3 re Outline Of Trial ......................9

STIPULATED: Preliminary Instruction No. 4 re What Is Evidence ...................10

STIPULATED: Preliminary Instruction No. 5 re What Is Not Evidence ............11

STIPULATED: Preliminary Instruction No. 6 re Ruling On Objections ............12

STIPULATED: Preliminary Instruction No. 7 re Taking Notes..........................13

STIPULATED: Preliminary Instruction No. 8 re Conduct Of The Jury .............14

STIPULATED: Preliminary Instruction No. 9 re Publicity During Trial............16

STIPULATED: Preliminary Instruction No. 10 re No Transcript Available To Jury .........17

STIPULATED: Preliminary Instruction No. 11 re Bench Conferences And Recesses .................................................................................................18

DISPUTED: Cisco's Position on Arista's Preliminary Instruction No. 12 re Analytic Dissection ................................................................................19

DISPUTED: Arista's Preliminary Instruction No. 12 re Analytic Dissection ....................22

STIPULATED: Final Instruction No. 13 re Duty of Jury...................................24

STIPULATED: Final Instruction No. 14 re What Is Evidence............................25

STIPULATED: Final Instruction No. 15 re What Is Not Evidence.....................26

STIPULATED: Final Instruction No. 16 re Direct And Circumstantial Evidence.............27

STIPULATED: Preliminary Instruction No. 17 re Stipulations Of Fact ............28

STIPULATED: Final Instruction No. 18 re Credibility Of Witnesses ...............29

STIPULATED: Preliminary Instruction No. 19 re Expert Opinion....................30

STIPULATED: Final Instruction No. 19 re Expert Opinion ..............................31

STIPULATED: Final Instruction No. 20 re Deposition In Lieu Of Live Testimony .........32

STIPULATED: Final Instruction No. 21 re Charts and Summaries Not Received In Evidence ...................................................................................................33

STIPULATED: Final Instruction No. 22 re Charts and Summaries Received In Evidence ...................................................................................................34

STIPULATED: Final Instruction No. 23 re Burden Of Proof ...............................................35

STIPULATED: Final Instruction No. 24 re Copyright—Defined ......................................36

DISPUTED: Cisco's Final Instruction No. 25 re Copyright—Subject Matter ...................37

DISPUTED: Arista's Final Instruction No. 25 re Copyright—Subject Matter .................39

STIPULATED: Final Instruction No. 27 re Copyright—Ideas and Expressions ...............41

DISPUTED: Cisco's Final Instruction No. 28 re Copyright—Industry Standard Not Relevant ...................................................................................................42

DISPUTED: Arista's Position on Cisco's Final Instruction No. 28 re Copyright—Industry Standard Not Relevant ...............................................................44

DISPUTED:  Cisco's Final Instruction No. 29 re Copyright—Elements: Ownership and Copying ...................................................................................46

DISPUTED:  Arista's Final Instruction No. 29 re Copyright—Elements: Ownership and Copying ..................................................................................47

STIPULATED: Final Instruction No. 30 re Copyright—Validity......................................48

DISPUTED: Cisco's Final Instruction No. 31 re Copyright—Copyright Registration Certificates ..................................................................................49

DISPUTED: Arista's Final Instruction No. 31 re Copyright—Copyright Registration Certificates ..................................................................................51

DISPUTED: Cisco's Final Instruction No. 32 re Copyright—Originality .........................53

DISPUTED: Arista's Final Instruction No. 32 re Copyright—Originality ........................55

DISPUTED: Cisco's Final Instruction No. 33 re Copyright—Compilations ....................57

DISPUTED: Arista's Position on Cisco's Final Instruction No. 33 re Copyright—Compilations .......................................................................................58

STIPULATED: Final Instruction No. 34 re Copyright—Authorship & Work Made For Hire .....................................................................................................60

DISPUTED: Cisco's Final Instruction No. 35 re Copyright—Derivative Work................61

DISPUTED: Arista's Position on Cisco's Final Instruction No. 35 re Copyright—Derivative Work .................................................................................62

DISPUTED: Cisco's Final Instruction No. 36 re Copyright—Copying (Direct Evidence)..................................................................................................65

DISPUTED: Cisco's Final Instruction No. 37 re Copyright—Copying (Indirect Evidence)...........................................................................................67

DISPUTED: Arista's Final Instruction No. 37 re Copyright—Copying ............................69

STIPULATED: Final Instruction No. 38 re Copyright—Access .......................................72

DISPUTED: Cisco's Final Instruction No. 39 re Copyright—Substantial Similarity.........73

DISPUTED: Arista's Final Instruction No. 39 re: Copying—Substantial Similarity..........76

DISPUTED: Cisco's Position on Arista's Final Instruction No. 41 re Infringement Analysis ...........................................................................................78

DISPUTED: Arista's Final Instruction No. 41 re Infringement Analysis ..........................80

DISPUTED: Cisco's Final Instruction No. 46 re Copyright—Affirmative Defense: Fair Use ...........................................................................................87

DISPUTED: Arista's Position on Cisco's Final Instruction No. 46 re Copyright—Affirmative Defense: Fair Use ...........................................................................................90

DISPUTED: Cisco's Position on Arista's Final Instruction No. 47 re Copyright—Affirmative Defense: Fair Use Generally ...........................................................................................92

DISPUTED: Arista's Final Instruction No. 47 re Copyright—Affirmative Defense: Fair Use Generally ...........................................................................................93

DISPUTED: Cisco's Position on Arista's Final Instruction No. 49 re Copyright—Affirmative Defense: Fair Use: First Factor ...........................................................................................96

DISPUTED: Arista's Final Instruction No. 49 re Copyright—Affirmative Defense: Fair Use: First Factor...........................................................................................98

DISPUTED: Cisco's Position on Arista's Final Instruction No. 53 re Copyright—Affirmative Defense: Fair Use: Second Factor .......................................................................103

DISPUTED: Arista's Final Instruction No. 53 re Copyright—Affirmative Defense: Fair Use: Second Factor ...........................................................................................105

DISPUTED: Cisco's Position on Arista's Final Instruction No. 55 re Copyright—Affirmative Defense: Fair Use: Third Factor .........................................................................108

DISPUTED: Arista's Final Instruction No. 55 re Copyright—Affirmative Defense: Fair Use: Third Factor ...........................................................................................109

DISPUTED: Cisco's Position on Arista's Final Instruction No. 56 re Copyright—Affirmative Defense: Fair Use: Fourth Factor .......................................................................111

DISPUTED: Arista's Final Instruction No. 56 re Copyright—Affirmative Defense: Fair Use: Fourth Factor ...........................................................................................112

DISPUTED: Cisco's Final Instruction No. 60 re Copyright—Affirmative Defense: Merger ...........................................................................................114

DISPUTED: Arista's Final Instruction No. 60 re Copyright—Merger ...........................116

DISPUTED: Cisco's Final Instruction No. 61 re Copyright—Affirmative Defense:
          Scènes À Faire ........................................................................................118

DISPUTED: Arista's Final Instruction No. 61 re Copyright—Scènes À Faire ................121

DISPUTED: Cisco's Position on Arista's Final Instruction No. 62 re Copyright—
          Affirmative Defense: Copyright Misuse .............................................125

DISPUTED: Arista's Final Instruction No. 62 re Copyright—Affirmative Defense:
          Copyright Misuse ..................................................................................126

DISPUTED: Cisco's Final Instruction No. 63 re Copyright—Willful Infringement ........128

DISPUTED: Arista's Final Instruction No. 63 re Copyright—Willfulness......................129

STIPULATED: Final Instruction No. 64 re Copyright—Damages ..................................131

STIPULATED: Final Instruction No. 65 re Copyright—Actual Damages ......................132

DISPUTED: Cisco's Final Instruction No. 66 re Copyright—Infringer's Profits.............133

DISPUTED: Arista's Final Instruction No. 66 re Copyright—Arista's Profits................137

DISPUTED: Cisco's Final Instruction No. 67 re Copyright—Infringer's Profits—
          Willfulness .............................................................................................140

DISPUTED: Arista's Position on Cisco's Final Instruction No. 67 re Copyright—
          Infringer's Profits—Willfulness............................................................142

STIPULATED: Final Instruction No. 68 re Patent—What A Patent Is And How
          One Is Obtained......................................................................................143

STIPULATED: Final Instruction No. 69 re Patent—Summary Of Patent Claim
          Contentions.............................................................................................145

STIPULATED: Final Instruction No. 70 re Patent—Interpretation Of Patent Claims......146

STIPULATED: Final Instruction No. 72 re Patent—Patent Infringement: Burden
          Of Proof..................................................................................................148

STIPULATED: Final Instruction No. 73 re Patent—Direct Infringement of a Patent ......149

STIPULATED: Final Instruction No. 74 re Patent—Literal Infringement Of A
          Patent......................................................................................................150

STIPULATED: Final Instruction No. 75 re Patent—Patent Infringement Under The
          Doctrine Of Equivalents ........................................................................151

STIPULATED: Final Instruction No. 77 re Patent—Contributory Patent
          Infringement ...........................................................................................153

STIPULATED: Final Instruction No. 78 re Patent—Inducing Patent Infringement .........154

DISPUTED: Cisco's Final Instruction No. 79 re Patent—Willful Patent
      Infringement ..........................................................................................155

DISPUTED: Arista's Final Instruction No. 79 re Patent—Willful Patent
      Infringement ..........................................................................................157

STIPULATED: Final Instruction No. 84 re Patent—Damages: Burden Of Proof ...........159

STIPULATED: Final Instruction No. 85 re Patent—Damages In The Form Of A
      Reasonable Royalty: Definition of a "Reasonable Royalty"................................160

STIPULATED: Final Instruction No. 86 re Patent—Damages: Date Of
      Commencement......................................................................................161

STIPULATED: Final Instruction No. 88 re Duty To Deliberate .....................................162

STIPULATED: Final Instruction No. 89 re Conduct Of The Jury ...................................163

STIPULATED: Final Instruction No. 90 re Communication With Court .......................165

STIPULATED: Final Instruction No. 91 re Return Of Verdict ........................................166

DISPUTED: Cisco's Position on Arista's Final Instruction No. 92 re Glossary ...............167

DISPUTED: Arista's Final Instruction No. 92 re Glossary ...............................................168

STIPULATED: Final Instruction No. 93 re Copyright—Abandonment ..........................171

DISPUTED: Cisco's Preliminary Instruction No. 95 re Introduction to Copyright .........173

DISPUTED: Arista's Preliminary Instruction No. 95 re Introduction to Copyright ........176

1124328.06

**Preliminary Notes**

### 1. Jury Instruction Ordering

Cisco contends that the order in which these jury instructions are currently presented is the most logical ordering.  Arista disagrees.  The parties are continuing to meet and confer on this issue.

### 2. Jury Instruction Numbering

Instructions 26, 40, 42–45, 48, 50–52, 54, 57–59, 71, 76, 80–83, 87, and 94 are intentionally omitted.

**<u>STIPULATED: Preliminary Instruction No. 1 re Duty Of The Jury</u>**[1]

Members of the jury:  You are now the jury in this case.  It is my duty to instruct you on the law.

At the end of the trial I will give you final instructions.  It is the final instructions that will govern your duties.

It is your duty to find the facts from all the evidence in the case.  To those facts you will apply the law as I give it to you.  You must follow the law as I give it to you whether you agree with it or not.  And you must not be influenced by any personal likes or dislikes, opinions, prejudices or sympathy.  That means that you must decide the case solely on the evidence before you.  You will recall that you took an oath to do so.

Please do not read into these instructions or anything I may say or do that I have an opinion regarding the evidence or what your verdict should be.

---

[1]  Instruction No. 1.1B, *Ninth Circuit Manual of Model Civil Jury Instructions* (2007).

1  **STIPULATED: Preliminary Instruction No. 2 re Claims And Defenses**[2]

2         To help you follow the evidence, I will give you a brief summary of the positions of the

3  parties:

4         The plaintiff in this case is Cisco Systems, Inc., which I will refer to as "Cisco," and the

5  defendant is Arista Networks, Inc., which I will refer to as "Arista."  This is a case involving

6  claims of copyright and patent infringement.  Cisco and Arista sell networking switches.

7         Cisco asserts that Arista infringed Cisco's copyrights by copying certain elements of

8  Cisco's user interface and copying certain portions of Cisco's product manuals.  [Cisco also

9  alleges that Arista infringed its copyrights willfully.]  Cisco has the burden of proving its claim of

10  copyright infringement [and its claim of willfulness].  Arista contends that it does not infringe any

11  of Cisco's copyrights[ and that the asserted elements of Cisco's works are not protected by

12  copyright because of the merger and scènes à faire doctrines {should the Court determine these are

13  not affirmative defenses}].  Arista also asserts as affirmative defenses that any use of the accused

14  elements is a "fair use" under the law, [that the asserted elements of Cisco's works are not

15  protected by copyright because of the merger and scènes à faire doctrines {should the Court

16  determine these are affirmative defenses }], and that Cisco has [misused its copyrights,]

17  abandoned its copyrights[, and waived its rights to enforce the copyrights at issue].  Arista has the

18  burden of proof on these affirmative defenses.

19         Cisco also asserts that Arista has infringed United States Patent No. 7,047,526, which I and

20  the parties will refer to as the "'526 Patent."  [Cisco also asserts that Arista infringed the '526

21  Patent willfully.]  Cisco has the burden of proving its claim of patent infringement [and its claim

22  of willfulness].  Arista denies that it has infringed the '526 Patent.

23

24

25

26

27

28
        _____

        [2] Instruction No. 1.2, *Ninth Circuit Manual of Model Civil Jury Instructions* (2007).

1

## STIPULATED: Preliminary Instruction No. 3 re Outline Of Trial[3]

2

3

[CISCO'S POSITION: The parties currently dispute whether Arista should be provided an opportunity to present evidence after Cisco rebuts Arista's defenses.  Arista has asked for that opportunity and Cisco opposes that request.  Cisco respectfully preserves its right to ask for the last sentence of the second paragraph of this instruction to be modified upon a finding by the Court on this issue in Cisco's favor.]

4

5

6

Trials proceed in the following way:  First, each side may make an opening statement.  An

7

opening statement is not evidence.  It is simply an outline to help you understand what that party

8

expects the evidence will show.  A party is not required to make an opening statement.

9

The plaintiff, Cisco, will then present evidence, and counsel for the defendant, Arista, may

10

cross-examine.  Then Arista may present evidence, and counsel for Cisco may cross-examine.

11

Afterwards, one or both sides may then present rebuttal evidence to respond to the other party.

12

After the evidence has been presented, I will instruct you on the law that applies to the case

13

and the attorneys will make closing arguments.

14

After that, you will go to the jury room to deliberate on your verdict.

15

16

17

18

19

20

21

22

23

24

25

26

27

28

---

[3]  Instruction No. 1.18, *Ninth Circuit Manual of Model Civil Jury Instructions* (2007).

1

### STIPULATED: Preliminary Instruction No. 4 re What Is Evidence[4]

2    The evidence you are to consider in deciding what the facts are consists of:

3    1.   The sworn testimony of any witness;

4    2.   The exhibits that are admitted into evidence;

5    3.   Any facts to which the lawyers have agreed; and

6    4.   Any facts that I may instruct you to accept as proved.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

---

[4]  Instruction No. 1.6, *Ninth Circuit Manual of Model Civil Jury Instructions* (2007).

1

### **STIPULATED: Preliminary Instruction No. 5 re What Is Not Evidence[5]**

2  Certain things are not evidence, and you may not consider them in deciding what the facts

3  are.  I will list them for you:

4  1.  Arguments and statements by lawyers are not evidence.  The lawyers are not

5  witnesses.  What they may say in their opening statements, closing arguments and at other times is

6  intended to help you interpret the evidence, but it is not evidence.  If the facts as you remember

7  them differ from the way the lawyers have stated them, your memory of them controls.

8  2.  Questions and objections by lawyers are not evidence.  Attorneys have a duty to

9  their clients to object when they believe a question is improper under the rules of evidence.  You

10  should not be influenced by the objection or by the court's ruling on it.

11  3.  Testimony or exhibits that are excluded or stricken, or that you are instructed to

12  disregard, are not evidence and must not be considered.  In addition some evidence may be

13  received only for a limited purpose; when I instruct you to consider certain evidence only for a

14  limited purpose, you must do so and you may not consider that evidence for any other purpose.

15  4.  Anything you may see or hear when the court is not in session is not evidence.

16  You are to decide the case solely on the evidence received at the trial.

17

18

19

20

21

22

23

24

25

26

27

28

---

[5]  Instruction No. 1.7, *Ninth Circuit Manual of Model Civil Jury Instructions* (2007).

1

**STIPULATED: Preliminary Instruction No. 6 re Ruling On Objections**[6]

2

There are rules of evidence that control what can be received into evidence.  When a

3

lawyer asks a question or offers an exhibit into evidence and a lawyer on the other side thinks that

4

it is not permitted by the rules of evidence, that lawyer may object.  If I overrule the objection, the

5

question may be answered or the exhibit received.  If I sustain the objection, the question cannot

6

be answered, and the exhibit cannot be received.  Whenever I sustain an objection to a question,

7

you must ignore the question and must not guess what the answer might have been.

8

Sometimes I may order that evidence be stricken from the record and that you disregard or

9

ignore that evidence.  That means when you are deciding the case, you must not consider the

10

stricken evidence for any purpose.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

[6]   Instruction No. 1.10, *Ninth Circuit Manual of Model Civil Jury Instructions* (2007).

28

**STIPULATED: Preliminary Instruction No. 7 re Taking Notes[7]**

If you wish, you may take notes to help you remember the evidence.  If you do take notes, please keep them to yourself until you go to the jury room to decide the case.  Do not let notetaking distract you.  When you leave, your notes should be left in the courtroom.  No one will read your notes.

Whether or not you take notes, you should rely on your own memory of the evidence. Notes are only to assist your memory.  You should not be overly influenced by your notes or those of other jurors.

---

[7]  Instruction No. 1.15, *Ninth Circuit Manual of Model Civil Jury Instructions* (2007).

SECOND AMENDED UNDISPUTED AND DISPUTED PROPOSED JURY INSTRUCTIONS
1124328.06

### **STIPULATED: Preliminary Instruction No. 8 re Conduct Of The Jury**[8]

I will now say a few words about your conduct as jurors.

First, keep an open mind throughout the trial, and do not decide what the verdict should be until you and your fellow jurors have completed your deliberations at the end of the case.

Second, because you must decide this case based only on the evidence received in the case and on my instructions as to the law that applies, you must not be exposed to any other information about the case or to the issues it involves during the course of your jury duty. Thus, until the end of the case or unless I tell you otherwise:

Do not communicate with anyone in any way and do not let anyone else communicate with you in any way about the merits of the case or anything to do with it. This includes discussing the case in person, in writing, by phone or electronic means, via email, text messaging, or any internet chat room, blog, website or application, including but not limited to Facebook, YouTube, Twitter, Instagram, LinkedIn, Snapchat, or any other forms of social media. This applies to communicating with your fellow jurors until I give you the case for deliberation, and it applies to communicating with everyone else including your family members, your employer, the media or press, and the people involved in the trial, although you may notify your family and your employer that you have been seated as a juror in the case, and how long you expect the trial to last. But, if you are asked or approached in any way about your jury service or anything about this case, you must respond that you have been ordered not to discuss the matter and report the contact to the court.

Because you will receive all the evidence and legal instruction you properly may consider to return a verdict:

Do not read, watch or listen to any news or media accounts or commentary about the case or anything to do with it; do not do any research, such as consulting dictionaries, searching

---

[8] Instruction No. 1.12, *Ninth Circuit Manual of Model Civil Jury Instructions* (2007).

1   the Internet, or using other reference materials; and do not make any investigation or in any

2   other way try to learn about the case on your own.  Do not visit or view any place

3   discussed in this case, and do not use Internet programs or other devices to search for or

4   view any place discussed during the trial.  Also, do not do any research about this case, the

5   law, or the people involved—including the parties, the witnesses or the lawyers—until you

6   have been excused as jurors.  If you happen to read or hear anything touching on this case

7   in the media, turn away and report it to me as soon as possible.

8

9   These rules protect each party's right to have this case decided only on evidence that has

10  been presented here in court.  Witnesses here in court take an oath to tell the truth, and the

11  accuracy of their testimony is tested through the trial process.  If you do any research or

12  investigation outside the courtroom, or gain any information through improper communications,

13  then your verdict may be influenced by inaccurate, incomplete or misleading information that has

14  not been tested by the trial process.  Each of the parties is entitled to a fair trial by an impartial

15  jury, and if you decide the case based on information not presented in court, you will have denied

16  the parties a fair trial.  Remember, you have taken an oath to follow the rules, and it is very

17  important that you follow these rules.

18  A juror who violates these restrictions jeopardizes the fairness of these proceedings.  If any

19  juror is exposed to any outside information, please notify the court immediately.

20

21

22

23

24

25

26

27

28

1    **STIPULATED: Preliminary Instruction No. 9 re Publicity During Trial[9]**

2    If there is any news media account or commentary about the case or anything to do with it,

3    you must ignore it.  You must not read, watch or listen to any news media account or commentary

4    about the case or anything to do with it.  The case must be decided by you solely and exclusively

5    on the evidence that will be received in the case and on my instructions as to the law that applies.

6    If any juror is exposed to any outside information, please notify me immediately.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28
_____
[9]    Ninth Circuit Model Jury Instruction, 1.13.

Case No. 5:14-cv-5344-BLF
SECOND AMENDED UNDISPUTED AND DISPUTED PROPOSED JURY INSTRUCTIONS
1124328.06

1

**STIPULATED: Preliminary Instruction No. 10 re No Transcript Available To Jury**[10]

2

   I urge you to pay close attention to the trial testimony as it is given.  During deliberations

3

you will not have a transcript of the trial testimony.

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

_____

28

[10]   Ninth Circuit Model Jury Instruction, 1.14.

1124328.06

## <u>STIPULATED: Preliminary Instruction No. 11 re Bench Conferences</u>
## <u>And Recesses</u>[11]

From time to time during the trial, it may become necessary for me to talk with the attorneys out of the hearing of the jury, either by having a conference at the bench when the jury is present in the courtroom, or by calling a recess.  Please understand that while you are waiting, we are working.  The purpose of these conferences is not to keep relevant information from you, but to decide how certain evidence is to be treated under the rules of evidence and to avoid confusion and error.

Of course, we will do what we can to keep the number and length of these conferences to a minimum. I may not always grant an attorney's request for a conference.  Do not consider my granting or denying a request for a conference as any indication of my opinion of the case or of what your verdict should be.

---

[11]   Ninth Circuit Model Jury Instruction, 1.17.

**DISPUTED: Cisco's Position on Arista's Preliminary Instruction No. 12 re Analytic**

**Dissection**

Cisco's position is that no such instruction should be given.

**Cisco's Position:**

No such instruction should be given.

*First ,*the *Ninth Circuit Manual of Model Civil Jury Instructions* ("*Model*") does not include or contemplate such an instruction as a preliminary instruction given prior to the introduction of evidence or argument. As noted by *Model* Instruction No. 17.18 ("Substantial Similarity—Extrinsic Test; Intrinsic Test"), any instruction on comparing the protectable elements of asserted works with the corresponding elements of the accused works for substantial similarity should be "specifically craft[ed]" based on "the evidence developed at trial." Any proposed instruction prior to the resolution of this issue, currently the subject of pretrial briefing, is thus premature. *See also Harper House v. Thomas Nelson*, 889 F.2d 197, 208-09 (9th Cir. 1989); Dkt. Nos. 455 (Cisco's Trial Brief); 456 (Arista's Trial Brief); 505 (Cisco's Reply); 506 (Arista's Reply); 550-1 & 550-2 (Cisco's Submission on Protectable Elements); 585 (Arista's Response on Protectable Elements); 619 (Cisco's Brief on Analytic Dissection); 653 (Cisco's Response to Arista's Brief on Analytic Dissection); *Oracle Am., Inc. v. Google Inc.*, 10-cv-3561-WHA, Dkt. 584 at 1 (copyrightability issues are "best left until after the judge has heard the evidence at trial"), *id.* Dkt. 620 at 1 (declining to address instructions on copyrightability until after close of evidence).

*Second*, Arista's proposed instruction would serve to confuse jurors rather than assist them. Arista's proposed instruction states that "the following elements of Cisco's works are not protected" without providing any context of what it means for an element to be "unprotected," nor Further, Arista's proposed instruction provides no explanation of what is "protected" matter as compared to the purported "unprotected matter." And even if a preliminary instruction on this topic were to be given, Arista's proposed instruction is unbalanced, as it only addresses what elements "are not protected" without disclosing what elements *are* protected. Because Arista proposes a preliminary instruction that would instruct the jury about factual material before any evidence is even introduced, it is improper.

*Third*, Arista's proposed instruction, as written, is confusing, prejudicial, unduly lengthy, and incomprehensible, as it seeks to instruct the jury—before the case even begins—about concepts such as a "text-based user interface," "an interactive help system, or a hierarchy of commands," the use of "multiword commands to manage or configure a device, grouping commands by their first word," "making certain commands available only in certain modes," "portions of multiword command expressions dictated by functional demands," "[p]rotocol names," "protocol feature[s]", "parameter names," "acronyms," "individual or isolated words in Cisco's multiword command expressions, and individual commands and help descriptions," particular "[c]ommand syntax" forms, "individual mode names and prompts," "combined use of Exec and Privileged modes together in a CLI," "single word commands," "the use of '?' to call up help descriptions," "the use of command prefixes that the user interface autocompletes," "tab

-19-                                    Case No. 5:14-cv-5344-BLF

completion," and "minimum syntactic length."  Such an instruction will be utterly nonsensical to a jury who has yet to hear any facts about the case.  Nor does Arista cite any authority for such a preliminary instruction.

*Fourth*, even on its own terms, Arista's proposed instruction is rife with legal errors and unnecessary repetitions.  Because many of these errors are addressed in Cisco's briefing on analytic dissection and filtration (*see* ECF 619 and 653), Cisco respectfully directs the Court to that brief.  Just a few examples include:

- The Court need not instruct the jury on any of the "ideas" listed because both parties have already proposed a preliminary instruction that "[f]acts, ideas, procedures, processes, systems, methods of operation, concepts, principles, or discoveries cannot themselves be copyrighted."  In addition, multiple other instructions already address functionality, ideas/expression and merger.  It is improper for the Court to therefore give incomplete preliminary instructions on such topics.

- The Court should not instruct the jury on the unprotectability of isolated words because reducing Cisco's multiword commands into isolated words contradicts well-settled case law warning "against the dangers of basing copyrightability analysis on an approach which isolates each element." *Matthew Bender & Co. v. W. Publ'g Co.*, 158 F.3d 674, 691 (2d Cir. 1998).  *See, e.g., Oracle Am., Inc. v. Google Inc.*, 750 F.3d 1339, 1353 (Fed. Cir. 2014)("[T]he opening of Charles Dickens' *A Tale of Two Cities* is nothing but a string of short phrases. Yet no one could contend that this portion of Dickens' work is unworthy of copyright protection because it can be broken into those shorter constituent components."); *Enter. Mgmt. Ltd. v. Warrick*, 717 F.3d 1112, 1119 (10th Cir. 2013) (similar); *Coquico, Inc. v. Rodríguez-Miranda*, 562 F.3d 62, 68 (1st Cir. 2009) (in dissecting, "the court should not lose sight of the forest for the trees"); *Softel, Inc. v. Dragon Med. & Sci. Commc'ns, Inc.*, 118 F.3d 955, 964 (2d Cir. 1997) ("taken individually, the words that constitute a literary work are not copyrightable, yet this fact does not prevent a literary text, *i.e.*, a collection of words, from enjoying copyright protection"); *Apple Computer, Inc. v. Microsoft Corp.*, 779 F. Supp. 133, 136 (N.D. Cal. 1991) (similar as to "abstract painting composed entirely of geometric forms arranged in an original pattern"), *aff'd*, 35 F.3d 1435 (9th Cir. 1994); NIMMER ON COPYRIGHT § 13.03[F][5] ("analysis should not proceed mechanically simply by isolating physical elements out of the copyrightable work").

- Arista's instruction that all "short phrases" are unprotectable is incorrect.  What may be unprotectable are "[w]ords and short phrases such as *names, titles, and slogans*" standing alone.  37 C.F.R. § 202.1(a) (emphasis added); ECF 618 at 6-7.  Nor does Arista cite any authority for its proposition that any two-word phrase cannot be protectable, as the question "is not merely whether a name, title or slogan contains some minimal number of words. Rather it is whether the phrase contains some appreciable level of creativity, *however few words it may contain*." *J. Racenstein & Co. v. Wallace*, 1999 WL 632853, at *2 (S.D.N.Y. Aug. 19, 1999) (emphasis added); *Soc'y of Holy Transfig. Monastery, Inc. v. Gregory*, 689 F.3d 29, 52 (1st Cir. 2012) ("applicability of this law very much turns on the specific short phrases at issue, as not all short phrases will automatically be deemed

uncopyrightable"); ECF 619 at 10-11. *Applied Innovations, Inc. v. Regents of the University of Minnesota* 876 F.2d 626, 635 (8th Cir. 1989) ("short, simple, declarative statements, such as 'I am a good mixer' and 'No one seems to understand me'" were protectable in the context of a personality assessment test because they were not "merely fragmentary words and phrases" nor "names or titles or slogans.").

- Arista's proposed instruction usurps the Court's role of analytic dissection, by essentially asking the jury to conduct its own analytic dissection ***after*** this Court has already done so.

Should the Court rule that any part of analytic dissection is be determined by the jury, and that a preliminary instruction is appropriate, Cisco respectfully reserves its right to propose a proper instruction with argument tailored to the Court's ruling after it is issued.

**<u>DISPUTED: Arista's Preliminary Instruction No. 12 re Analytic Dissection</u>**

During the trial, you must keep in mind that copyright protection does not extend to all the elements of a copyrighted work. Elements to which copyright protection extends are called "protected matter," and other elements are "unprotected matter." Unprotected matter is not entitled to copyright protection and therefore may be copied by another author.[12]

In this case, the following elements of Cisco's works are not protected:

1.    The idea of using a text-based user interface (rather than a graphical interface), an interactive help system, or a hierarchy of commands, as well as the ideas of using multiword commands to manage or configure a device, grouping commands by their first word, or making certain commands available only in certain modes.

2.    The function of any asserted feature (as opposed to Cisco's expression), as well as any portions of multiword command expressions dictated by functional demands;

3.    Protocol names, protocol feature or parameter names, and acronyms of the same that originate from publications of industry standards organizations, as well as terms taken from prior operating systems;

4.    Individual or isolated words in Cisco's multiword command expressions, and individual commands and help descriptions that the Court will instruct you are unprotectable short phrases, including at least all of the asserted two-word commands;

5.    Command syntax in the form "[verb] [object or entity] [additional parameters]," including "show" and "clear" commands in the form "show [object or entity] [additional parameters]" and "clear [object or entity] [additional parameters]."

6.    Cisco's individual mode names and prompts, as well as the combined use of "Exec" and "Privileged" modes together in a CLI, with the prompt symbols Cisco uses for each of those modes;

_____

[12] ABA Model Jury Instructions, Copyright, Trademark, and Trade Dress Litigation, Instruction 1.4.2. There is no analogous Ninth Circuit Model Jury Instruction.

7.    Other aspects of Cisco's works including single word commands, the use of '?' to call up help descriptions, the use of command prefixes that the user interface autocompletes, tab completion, and minimum syntactic length.

I will instruct you about the types of protected and unprotected matter in greater detail at the end of the trial.

**Arista's Position:**

As discussed in great detail in the parties' analytic dissection briefing, the Court is required to perform analytic dissection in order for the jury to understand the scope of its task in determining whether Cisco has proven copyright infringement.  *See Harper House, Inc. v. Thomas Nelson, Inc.*, 889 F.2d 197, 201 (9th Cir. 1989); *Apple Computer, Inc. v. Microsoft Corp.*, 35 F.3d 1435, 1443 (9th Cir. 1994) (dissecting graphical interface); *Brown Bag Software v. Symantec Corp.*, 960 F.2d 1465, 1475–76 (9th Cir. 1992) (citing *Data East USA, Inc. v. Epyx, Inc.*, 862 F.2d 204, 209 (9th Cir. 1988)).  Even if the Court has not completed analytic dissection by the time of preliminary instructions, the Court should give the jury a preliminary instruction alerting it to be cautious about assuming that copying automatically constitutes infringement, since, under the law, it does not.

In *Harper House*, the Ninth Circuit reversed a jury verdict *even though the jury instructions addressed protectability*, because they failed adequately to ensure that the jury did not base an infringement verdict on unprotected elements.  The court cautioned that "the negative connotations to 'copying,'" created an "obvious risk of an improper verdict . . . and a need for further instructions to protect legitimate activity and avoid the suffocation of competition."  889 F.2d at 207.

This Court has broad discretion to craft pretrial procedures that will help the Court and jury grapple with complex legal issues, avoid wasted time, and minimize the very real risks of confusion.  *See* Fed. R. Civ. P. 16(c); *Crawford–El v. Britton*, 523 U.S. 574, 599 (1998).  It should exercise that authority by adopting Arista's proposed preliminary instruction, which is drawn directly from model jury instructions, in an effort to give the jury an overview of the difference between protected and unprotected elements as well as information about any of the analytic dissection work that this Court will have completed by the time the trial opens.  Although, ideally, the Court would be able to instruct the jury about the precise scope of copyright protection in this case before it hears evidence, the instruction Arista proposes provides a minimum level of information the jury needs *before* it hears Cisco's accusations of "copying" without legal context or acknowledgment that copying of unprotected material is perfectly legal.

1

## <u>STIPULATED: Final Instruction No. 13 re Duty of Jury</u>[13]

2   Members of the Jury:  Now that you have heard all of the evidence and the arguments of

3 the attorneys, it is my duty to instruct you on the law that applies to this case.

4   A copy of these instructions will be sent to the jury room for you to consult during your

5 deliberations.

6   It is your duty to find the facts from all the evidence in the case.  To those facts you will

7 apply the law as I now give it to you.  You must follow the law as I give it to you whether you

8 agree with it or not.  And you must not be influenced by any personal likes or dislikes, opinions,

9 prejudices, or sympathy.  That means that you must decide the case solely on the evidence before

10 you.  You will recall that you took an oath to do so.

11   Please do not read into these instructions or anything that I may have said or done that I

12 have an opinion regarding the evidence or what your verdict should be.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

---

[13] Instruction Nos. 1.1C, *Ninth Circuit Manual of Model Civil Jury Instructions* (2007).

SECOND AMENDED UNDISPUTED AND DISPUTED PROPOSED JURY INSTRUCTIONS
1124328.06

1

## **STIPULATED: Final Instruction No. 14 re What Is Evidence**[14]

The evidence you are to decide the facts are consists of:

1.  The sworn testimony of any witness;

2.  The exhibits that are admitted into evidence;

3.  Any facts to which the lawyers have agreed; and

4.  Any facts that I have instructed you to accept as proved.

---

[14]    Instruction No. 1.6, *Ninth Circuit Manual of Model Civil Jury Instructions* (2007).

**STIPULATED: Final Instruction No. 15 re What Is Not Evidence[15]**

In reaching your verdict, you may consider only the testimony and exhibits received into evidence.  Certain things are not evidence, and you may not consider them in deciding what the facts are.

1.    Arguments and statements by lawyers are not evidence.  The lawyers are not witnesses.  What they have said in their opening statements, will say in their closing arguments, and at other times is intended to help you interpret the evidence, but it is not evidence.  If the facts as you remember them differ from the way the lawyers have stated them, your memory of them controls.

2.    Questions and objections by lawyers are not evidence.  Attorneys have a duty to their clients to object when they believe a question is improper under the rules of evidence.  You should not be influenced by the objection or by the court's ruling on it.

3.    Testimony and exhibits that have been excluded or stricken, or that you have been instructed to disregard, are not evidence and must not be considered.  In addition some evidence may be received only for a limited purpose; when I give a limiting instruction, you must follow it.

4.    Anything you may have seen or heard when the court was not in session is not evidence.   You are to decide the case solely on the evidence received at the trial.

---

[15]  Instruction No. 1.7, *Ninth Circuit Manual of Model Civil Jury Instructions* (2007).

1    **STIPULATED: Final Instruction No. 16 re Direct And Circumstantial Evidence**[16]

2    Evidence may be direct or circumstantial. Direct evidence is direct proof of a fact, such as

3    testimony by a witness about what that witness personally saw or heard or did.

4    Circumstantial evidence is proof of one or more facts from which you could find another

5    fact. You should consider both kinds of evidence. The law makes no distinction between the

6    weight to be given to either direct or circumstantial evidence. It is for you to decide how much

7    weight to give to any evidence.

8    By way of example, if you wake up in the morning and see that the sidewalk is wet, you

9    may find from that fact that it rained during the night. However, other evidence, such as a turned

10   on garden hose, may provide a different explanation for the presence of water on the sidewalk.

11   Therefore, before you decide that a fact has been proved by circumstantial evidence, you must

12   consider all the evidence in the light of reason, experience and common sense.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

---

[16]  Instruction No. 1.9, *Ninth Circuit Manual of Model Civil Jury Instructions* (2007).

1    **STIPULATED: Preliminary Instruction No. 17 re Stipulations Of Fact**[17]

2         The parties have agreed to certain facts that will be read to you.  You must therefore treat

3    these facts as having been proved.

---

[17]    Ninth Circuit Model Jury Instruction, 2.2.

SECOND AMENDED UNDISPUTED AND DISPUTED PROPOSED JURY INSTRUCTIONS
1124328.06

## __STIPULATED: Final Instruction No. 18 re Credibility Of Witnesses__[18]

In deciding the facts in this case, you may have to decide which testimony to believe and which testimony not to believe.  You may believe everything a witness says, or part of it, or none of it.

In considering the testimony of any witness, you may take into account:

1.  The opportunity and ability of the witness to see or hear or know the things testified to;

2.  The witness's memory;

3.  The witness's manner while testifying;

4.  The witness's interest in the outcome of the case, if any;

5.  The witness's bias or prejudice, if any;

6.  Whether other evidence contradicted the witness's testimony;

7.  The reasonableness of the witness's testimony in light of all the evidence; and

8.  Any other factors that bear on believability.


Sometimes a witness may say something that is not consistent with something else he or she said.  Sometimes different witnesses will give different versions of what happened.  People often forget things or make mistakes in what they remember.  Also, two people may see the same event but remember it differently.  You may consider these differences, but do not decide that testimony is untrue just because it differs from other testimony.

However, if you decide that a witness has deliberately testified untruthfully about something important, you may choose not to believe anything that witness said.  On the other hand, if you think the witness testified untruthfully about some things but told the truth about others, you may accept the part you think is true and ignore the rest.

The weight of the evidence as to a fact does not necessarily depend on the number of witnesses who testify.  What is important is how believable the witnesses were, and how much weight you think their testimony deserves.

---

[18]  Instruction No. 1.11, *Ninth Circuit Manual of Model Civil Jury Instructions* (2007).

1

## **STIPULATED: Preliminary Instruction No. 19 re Expert Opinion**[19]

2   Some witnesses, because of education or experience, are permitted to state opinions and

3   the reasons for those opinions.

4   Such opinion testimony should be judged like any other testimony.  You may accept it or

5   reject it, and give it as much weight as you think it deserves, considering the witness's education

6   and experience, the reasons given for the opinion, and all the other evidence in the case.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

[19]   Instruction No. 2.13, *Ninth Circuit Manual of Model Civil Jury Instructions* (2007).

SECOND AMENDED UNDISPUTED AND DISPUTED PROPOSED JURY INSTRUCTIONS

1124328.06

1

## **STIPULATED: Final Instruction No. 19 re Expert Opinion**[20]

2

Some witnesses, because of education or experience, are permitted to state opinions and

3 the reasons for those opinions.

4

Such opinion testimony should be judged like any other testimony.  You may accept it or

5 reject it, and give it as much weight as you think it deserves, considering the witness's education

6 and experience, the reasons given for the opinion, and all the other evidence in the case.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

[20]   Instruction No. 2.13, *Ninth Circuit Manual of Model Civil Jury Instructions* (2007).

1    **STIPULATED: Final Instruction No. 20 re Deposition In Lieu Of Live Testimony**[21]

2    A deposition is the sworn testimony of a witness taken before trial. The witness is placed

3    under oath to tell the truth and lawyers for each party may ask questions. The questions and

4    answers are recorded. When a person is unavailable to testify at trial, and in certain other

5    situations, the deposition of that person may be used at the trial.

6    The deposition of [name of witness] was taken on [date]. Insofar as possible, you should

7    consider deposition testimony, presented to you in court in lieu of live testimony, in the same way

8    as if the witness had been present to testify.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

---

[21]   Ninth Circuit Model Jury Instruction, 2.4.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**<u>STIPULATED: Final Instruction No. 21 re Charts and Summaries Not Received In Evidence[22]</u>**

Certain charts and summaries not admitted into evidence have been shown to you in order to help explain the contents of books, records, documents, or other evidence in the case. Charts and summaries are only as good as the underlying evidence that supports them. You should, therefore, give them only such weight as you think the underlying evidence deserves.

---

[22]    Ninth Circuit Model Jury Instruction, 2.14.

1    **<u>STIPULATED: Final Instruction No. 22 re Charts and Summaries Received In Evidence</u>**[23]

2           Certain charts and summaries have been admitted into evidence to illustrate information

3    brought out in the trial.  Charts and summaries are only as good as the testimony or other admitted

4    evidence that supports them.  You should, therefore, give them only such weight as you think the

5    underlying evidence deserves.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27    _____

28    [23]   Ninth Circuit Model Jury Instruction, 2.15.

1

## STIPULATED: Final Instruction No. 23 re Burden Of Proof[24]

2        When a party has the burden of proof on any claim or affirmative defense by

3   preponderance of the evidence, it means you must be persuaded by the evidence that the claim or

4   affirmative defense is more probably true than not true.  Preponderance of the evidence basically

5   means "more likely than not."[25]

6        You should base your decision on all of the evidence, regardless of which party presented

7   it.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27   [24]   Instruction No. 1.3, *Ninth Circuit Manual of Model Civil Jury Instructions* (2007).
[25]   *Synopsys, Inc. v. ATopTech, Inc.*, No. 13-cv-2965 (N.D. Cal.), ECF No. 688 at 7  (Final

28   Instructions).

## STIPULATED: Final Instruction No. 24 re Copyright—Defined[26]

Copyright is the exclusive right to copy.  This right to copy includes the exclusive rights to, or authorize others to:

1. Reproduce the copyrighted work in copies;

[2. Recast, transform, or adapt the work—that is, prepare derivative works based upon the copyrighted work;]**

3. Distribute copies of the copyrighted work to the public by sale or other transfer of ownership; and

4. Display publicly a [to be determined by analytic dissection].

It is the owner of a copyright who may exercise these exclusive rights.  The term "owner" includes the author of the work.  In general, copyright law protects against reproduction, adaptation, distribution, or display of infringing copies of the owner's copyrighted work without the owner's permission.  An owner may enforce these rights to exclude others in an action for copyright infringement.

**The parties dispute whether a derivative-works instruction should be given.  The parties' positions on this issue are set forth in connection with disputed instruction number 35.

---

[26] Instruction No. 17.1, *Ninth Circuit Manual of Model Civil Jury Instructions* (2007).

1

**DISPUTED: Cisco's Final Instruction No. 25 re Copyright—Subject Matter**[27]

2

The copyrighted works involved in this trial are:

3

1. Cisco's user interface of its networking equipment; and

4

2. Accompanying technical documentation.

5

6

Copyright protection of a computer program extends to its structure, sequence,

7

organization, user interface, screen displays, and menu structures.[28]  Here, Cisco claims that Arista

8

copied original elements of several versions of Cisco's copyrighted user interface.[29]  Cisco also

9

claims that Arista copied Cisco's copyrighted technical documentation, such as user guides and

10

manuals.[30]  These also are protected by copyright.

11

I will collectively refer to Cisco's user interface and technical documents together as

12

"Cisco's works," the "copyrighted works," or simply "the works."

13

The copyrights in Cisco's versions of its user interface, including the accompanying

14

technical documents, have been registered with the United States Copyright Office.

15

16

**Cisco's Position:**

17

Cisco's proposed instruction follows Instruction No. 17.2 of the *Ninth Circuit Manual of*

18

*Model Civil Jury Instructions* ("*Model*"), as adapted by the district court in *Synopsis, Inc. v.*
*ATopTech, Inc.*, No. 13-cv-2965 (N.D. Cal.), ECF No. 688.  Cisco's proposed instruction is a

19

short, neutral, accurate instruction reflecting the current state of the law, as provided in Cisco's
cited authority.

20

21

Arista's proposed instruction should be rejected as confusing, duplicative, and incorrect.

22

23

[27]  Instruction No. 17.2, *Ninth Circuit Manual of Model Civil Jury Instructions* (2007).
[28]  *Synopsys, Inc. v. ATopTech, Inc.*, No. 13-cv-2965 (N.D. Cal.), ECF No. 688 at 11 (Final

24

Instructions); *Johnson Controls, Inc. v. Phoenix Control Sys, Inc.*, 886 F.2d 1173, 1175 (9th Cir.

25

1989) (a program's "structure, sequence and organization and user interface" are protectable
"depend[ing] on the particular facts of each case"); *General Universal Sys., Inc. v. Lee*, 379 F.3d

26

131, 142 (5th Cir. 2004) (copyright protection of computer programs "extends … to a program's
nonliteral elements, including its structure, sequence, organization, user interface, screen displays,

27

and menu structures).
[29]  ECF No. 552-1.

28

[30]  ECF No. 552-2.

-37-                                          Case No. 5:14-cv-5344-BLF

*First*, as to the first paragraph, the first sentence is incorrect to describe the works involved in this trial as "computer programs." This case is not about computer programming; it is rather about a user interface that is visible to a human operator and that thus has no necessary or standard form of expression, which is a separate copyrighted work. *See Napoli v. Sears, Roebuck & Co.*, 874 F. Supp. 206, 211 (N.D. Ill. 1995) (a "single registration of a computer program accomplishes two interrelated yet distinct registrations: one of the program itself, and one of the screen displays or user interface of that program, to the extent that each contains copyrightable subject matter"); *see also* U.S. Copyright Office, *Registration for Computer Programs, Circular 61*, August, 2012 ("A single registration may be made for a computer program and its screen display. … The registration will extend to any copyrightable screens generated by the program, regardless of whether identifying material for the screens is deposited."); PATRY ON FAIR USE §5:4 (2012) (work is not determined by registration); *see* Cisco's Instruction No. 31, *infra*.

*Second*, in the first paragraph, Arista refers to the protection of "non-literal elements" without explanation of what that means and cites no authority for such an instruction; in contrast, Cisco's proposal accurately states that protection "extends to its structure, sequence, organization, user interface, screen displays, and menu structures," which is both clear and directly supported by Cisco's cited authority.

*Third*, Arista's second paragraph tracks an optional paragraph provided by the *Model*, but such an instruction is unnecessary here because: (1) there is no dispute that Cisco's works are fixed in a tangible medium; and (2) subsequent instructions address the subject and scope of originality in detail. *See infra* Instruction Nos. 27 (Ideas and Expressions), 32 (Originality) and 33 (Compilations). There is no need for this optional paragraph when later Instructions subsequently address the same concepts in greater detail. Likewise, Arista's third paragraph is optional under the *Model*, but unnecessary here because it is addressed in the very next instruction, which provides almost identical language. *See infra* Instruction No. 27 (Ideas and Expressions) (parties agree to include the sentence: "Copyright law does not give the author the right to prevent others from copying or using the underlying ideas contained in the work, such as any procedures, processes, systems, methods of operation, concepts, principles or discoveries.").

*Fourth*, Arista's proposed instruction is also incorrect and misleading with respect to the facts of this case. Arista's proposal suggests that the only literal aspects of Cisco's copyrighted works are user manuals. That is not accurate given the facts of this case, in which Cisco is asserting copyright protection for its user interface, which interface includes literal components (*e.g.*, multi-word command expressions, command responses, modes and prompts and help descriptions).

1    **DISPUTED: Arista's Final Instruction No. 25 re Copyright—Subject Matter**[31]

2    The works involved in this trial are computer programs, that is, sets of statements or

3    instructions to be used directly or indirectly in a computer to bring about a certain result; and

4    manuals describing the operation of computer programs.  You are instructed that a copyright may

5    be obtained in computer programs and manuals.  Copyright protection in a computer program may

6    extend to original and expressive elements of the computer program, including its structure,

7    sequence, and organization.

8    These works can be protected by copyright law. Only those parts of the works consisting

9    of original works of authorship fixed in a tangible medium of expression from which it can be

10    perceived, reproduced, or otherwise communicated, either directly or with the aid of a machine or

11    device, are protected by the Copyright Act.

12    Copyright protection for an original work of authorship does not extend to any idea,

13    procedure, process, system, method of operation, concept, principle, or discovery, regardless of

14    the form in which it is described, explained, illustrated, or embodied.

15

16    **Arista's Position:**

17    Cisco departs from the model jury instruction in several ways without justification.  First,

18    it adds the word "copyrighted" before the word "works" in the first sentence, which prejudges one
      of the issues for the jury.

19    Second, Cisco rewrites the categories of copyrighted works, which derives from the

20    Copyright Act itself, to fit Cisco's revisionist history that it "copyrighted" its user interface; it
      hasn't.  Rather than inform the jury that the works are "computer programs," like the model

21    instruction and the Copyright Act anticipates, Cisco seeks to tell the jury that the works at issue in
      this case are "[t]he user interface of networking equipment."  That is attorney argument in the

22    guise of jury instruction.  The purpose of Model Instruction 17.2 is to explain to the jury that
      computer programs are, under certain circumstances, copyrightable, and not to redefine the

23    statutory scope of the copyrights in whatever manner suits Cisco.

24    Next, Cisco departs entirely from the model instruction, replacing an explanation to the

25    jury about the statutory requirements for copyright—and the limitations on copyright protection—
      with confusing non sequiturs about Cisco's claims and the scope of copyright protection in

26    computer programs.  This instruction is not the place for Cisco to insert, yet again, the substance

27    ───────────────────

28    [31]   Ninth Circuit Model Jury Instruction 17.2.

of its claims.  Nor is it an appropriate place to begin the discussion concerning the scope of protection in computer programs.  Doing so will either confuse the jury or predispose it in favor of Cisco because it is not being told the full story about the scope of protection available to Cisco in this case.

Cisco's proposal also blatantly misstates the law.  It claims that "[c]opyright protection of a computer program extends to its structure, sequence, organization, user interface, screen displays, and menu structures," without any qualification.  Yet Cisco's own support—*Johnson Controls*—shows that such protection is not automatic and depends on the "particular facts of each case."  886 F.2d 1173, 1175 (9th Cir. 1989).  Cisco acknowledges this wrinkle in its footnote, but it is nowhere to be found in the language it wants the jury to hear.  Such wrinkles are exactly why this instruction is the wrong place to begin instructing the jury about scope of protection.

Cisco then seeks to have the Court pronounce that its "user interface" and "technical documentation" are both "protected by copyright."  But plainly not all aspects of Cisco's "user interface" or documentation is protected, nor are all aspects asserted.  This is an incorrect and severely prejudicial characterization of the law and the case.

With respect to the final sentence of Cisco's new language for model instruction 17.2, Arista has no objection to informing the jury that Cisco obtained registrations with the Copyright Office, but the Court should specify what Cisco registered: operating system software and manuals, not Cisco's "user interface."  Moreover, Arista submits it is more appropriate to explain registration to the jury in conjunction with disputed instruction 31, which is modeled after Ninth Circuit Model Jury Instruction 17.6 dealing with copyright registration certificates.

Finally, Cisco omits the last sentence of the model instruction, which, considering the issues in this case, is an attempt to keep the jury from understanding that copyright protection "does not extend to any idea, procedure, process, system, method of operation, concept, principle, or discovery, regardless of the form in which it is described, explained, illustrated, or embodied."  Ninth Circuit Model Jury Instr. 17.2.

1124328.06

1    **STIPULATED: Final Instruction No. 27 re Copyright—Ideas and Expressions**[32]

2        Copyright law allows the author of an original work to stop others from copying the

3    original expression in the author's work.[33]  Only the particular expression of an idea can be

4    copyrighted and protected.

5        Copyright law does not give the author the right to prevent others from copying or using

6    the underlying ideas contained in the work, such as any procedures, processes, systems, methods

7    of operation, concepts, principles or discoveries.

---

[32]    Instruction No. 17.3, *Ninth Circuit Manual of Model Civil Jury Instructions* (2007).

[33]    *Synopsys, Inc. v. ATopTech, Inc.*, No. 13-cv-2965 (N.D. Cal.), ECF No. 688 at 9 (Final Instructions);  *Feist Publ'n, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 349 (1991) ("even a directory that contains absolutely no protectible [sic] written expression, only facts, meets the constitutional minimum for copyright protection if it features an original selection or arrangement").

1  **DISPUTED: Cisco's Final Instruction No. 28 re Copyright—Industry Standard Not**

2  **Relevant**

3      Copyright law gives the author of a copyrighted work the right to prevent others from

4  copying its original expression, even where that work has become so popular or widely used

5  within an industry that it has become the "industry standard." Thus, whether Cisco's user

6  interface has become the preferred one for its users, or even an industry standard, has no bearing

7  on your determination on whether it, or any of its subparts, are protectable.[34]

8

9  **Cisco's Position:**

10      Cisco's proposed instruction accurately reflects the current state of law and mirrors

11  instructions provided in *Synopsys, Inc. v. ATopTech, Inc.*, No. 13-cv-2965 (N.D. Cal.), ECF No.

   688 at 8. In that case involving copyrighted computer programs, the court gave an instruction that

12  "[a]n owner may enforce [its] rights to exclude others in an action for copyright infringement …

   even after a copyrighted work has become an industry standard." This is further supported by

13  Cisco's cited authority. Because Arista has indicated that it plans to raise an argument regarding

   "industry standard," this instruction is necessary to accurately inform the jury that such an

14  argument has no bearing on copyrightability where a work becomes an "industry standard" or

   otherwise popular after its publication. *See also* Motion in Limine Ruling at 3 (excluding

15  evidence on "industry standard" or "*de facto* industry standard"); *Cf.* Order on Daubert Motions at

   2-8 (excluding expert testimony purporting to opine on a "*de facto* industry standard" and whether

16  there is "widespread use [of it] throughout the industry").

17

18      While this proposal from Cisco is not found in the *Model* instructions, that is because those

   instructions do not recognize the existence of any supposed "industry standard" defense.

19  Nonetheless, the defendant in *Synopsys* attempted this defense, and the court rightly instructed the

20      [34] *Synopsys, Inc. v. ATopTech, Inc.*, No. 13-cv-2965 (N.D. Cal.), ECF No. 688 at 8 (Final

21  Instructions); *Oracle Am., Inc. v. Google Inc.*, 750 F.3d 1339, 1372 (Fed. Cir. 2014) (whether

   Oracle's programming packages "had become the effective industry standard" or later became

22  "popular … has no bearing on the copyrightability of Oracle's work"); *Practice Mgmt. Info. Corp.

   v. Am. Med. Ass'n*, 121 F.3d 516, 620 n.8 (9th Cir. 1997) (physician coding system copyrightable

23  even though government agency mandated its use, making it the "industry standard" ); *Kepner-

   Tregoe, Inc. v. Leadership Software, Inc.*, 12 F.3d 527, 537 (5th Cir. 1994) ("protected

24  expression" of a "wildly successful" computer program "does not lose its protection simply

   because it is widely disseminated"); *Warner Bros., Inc. v. Am. Broadcasting Cos.*, 720 F.2d 231,

25  242 (2d Cir. 1983) ("No matter how well known a copyrighted phrase becomes, its author is

   entitled to guard against its appropriation to promote the sale of commercial products."); *see also

26  Oracle*, 750 F.3d at 1372 n.16 ("Notably, even when a patented method or system becomes an

27  acknowledged industry standard with acquiescence of the patent owner, any permissible use

   generally requires payment of a reasonable royalty ….").

28

-42-                                    Case No. 5:14-cv-5344-BLF

jury in the same way that Cisco now asks this Court to instruct the jury.

**DISPUTED: Arista's Position on Cisco's Final Instruction No. 28 re Copyright—Industry**

**Standard Not Relevant**

Arista objects to the inclusion of Cisco's "Industry Standard Not Relevant" instruction.  It is confusing, prejudicial, and misrepresents the law.

Cisco's proposed instruction stems from an instruction given in *Synopsis, Inc. v. ATopTech, Inc.*, No. 13-cv-2965 (N.D. Cal.), ECF No. 688 at 8  (Final Instructions).  It does not.  That instruction states instead: "An owner may enforce these rights to exclude others in an action for copyright infringement, and may do so even after a copyrighted work has become an industry standard."  Cisco would have the Court tell the jury that the industry-standard nature of its works "has no bearing on your determination on whether it, or any of its subparts, are protectable."  That statement is plainly wrong.  And, leaving aside that the evidence and issues in *Synopsis* were different, and this instruction itself is not supported by Ninth Circuit precedent, Cisco has removed the qualifier "may" from that instruction.

First, if parts of Cisco's works were, at the time of adoption, copied by Cisco from industry standards or other standards-body publications, they cannot be protected by copyright because they would not be original to Cisco.  Cisco's instruction would mislead a jury into thinking this was not the case.

Additionally, the scènes à faire doctrine precludes protection for elements that are dictated by external factors such as widely accepted programming practices in the computer industry.  *See Oracle Am., Inc. v. Google Inc.*, 750 F.3d 1339, 1363 (Fed. Cir. 2014) ("In the computer context, the scene a faire doctrine denies protection to program elements that are dictated by external factors such as 'the mechanical specifications of the computer on which a particular program is intended to run' or 'widely accepted programming practices within the computer industry.'") (internal quotation marks omitted); *Satava v. Lowry*, 323 F.3d 805, 807 (9th Cir. 2003) (The Copyright Act "denie[s] artists the exclusive right to ideas and standard elements in their works, thereby preventing them from monopolizing what rightfully belongs to the public . . . . [E]xpressions that are standard, stock, or common to a particular subject matter or medium are not protectable under copyright law.").

Cisco's reliance on *Oracle* is misplaced.  *Oracle* recognized that industry standards are relevant to protectability in its discussion of the scènes à faire doctrine, cited above, and it did not consider or preclude any potential use of standards-related evidence to prove facts related to other aspects of the protectability and infringement analysis, such as merger and general lack of originality or creativity, or fair use.  The *Oracle* court only explained that the fact that a work has "become the effective industry standard" does not strip the work of its copyrightability, to the extent it was copyrightable to begin with.   "Google's industry standard argument" in that case— *i.e.* that Oracle's APIs became an industry standard *after* they were created—"ha[d] no bearing on the copyrightability of Oracle's work," *Oracle Am., Inc. v. Google Inc.*, 750 F.3d 1339, 1372 (Fed. Cir. 2014).  But Google never claimed, as Arista does here, that elements of the copyrighted work were copied from industry standards that pre-dated the copyrighted work, or that widespread use of similar or identical commands helped to show the limited range of potential expression available in this area, and the lack of creativity separable from functional requirements in the copyrighted work.  That, of course, would preclude copyright protection, since it would render the work unoriginal or subject to scènes à faire.  Cisco's proposed instruction omits this important distinction.

Further, Cisco's proposed instruction threatens to confuse the jury because the industry standard nature of Cisco's asserted CLI elements is also relevant to fair use, even if those elements became industry standards *after* creation.  This Court already recognized as much in its *Daubert*

SECOND AMENDED UNDISPUTED AND DISPUTED PROPOSED JURY INSTRUCTIONS

1124328.06

1   Order. Order on *Daubert* Motions at 3:27–28 ("[T]he evidence of widespread use of Cisco CLI
    throughout the industry is relevant to this case, such as on the issues of fair use and estoppel.").
2   Cisco's proposed instruction ignores this fact completely. *See also* Arista's Opp. to Cisco's MIL
    No. 2, ECF 555.

3       If the Court intends to give any instruction like the one Cisco has proposed, Arista requests
4   that the instruction be conformed to these significant qualifiers to Cisco's mis-statement of the
    law. First, the Court should tell the jury that the industry-standard origins of asserted elements at
5   the time of their creation *does* bear significantly on copyright protection. Second, the Court
    should tell the jury that the industry-standard nature of asserted elements *after* creation is relevant
6   to Arista's fair use defense, misuse, and abandonment. Third, the Court should not state, as Cisco
    does, that the industry-standard nature of its asserted elements has "no bearing" on copyright
7   protection, since this is obviously false and does not represent the instruction given in *Synopsis*.

**DISPUTED:  Cisco's Final Instruction No. 29 re Copyright—Elements: Ownership and Copying[35]**

Anyone who copies original, protectable expression from a copyrighted work during the term of the copyright without the owner's permission infringes the copyright.

Cisco has the burden of proving by a preponderance of the evidence that:

1.  Cisco is the owner of a valid copyright; and

2.  Arista copied original, protectable expression from the copyrighted work.


If you find that Cisco proved both of these elements, your verdict should be for Cisco on the issue of infringement.  If, on the other hand, you find that Cisco has failed to prove either of these elements, your verdict should be for Arista.


**Cisco's Position:**

Cisco's proposed instruction follows Instruction No. 17.4 of the *Ninth Circuit Manual of Model Civil Jury Instructions* ("*Model*") in both form and substance.

Arista's proposed instruction should be rejected.  Arista additionally departs from the *Model* by revising the second element, changing the word "original" to "protected."  Arista cites no authority for this change, and the *Model*'s use of the term "original" is both accurate and supported by established case law.  *See Feist*, 499 U.S. at 361 (second element is copying of "elements of the work that are original").  Nonetheless, in response to the parties' conferring, Cisco proposes adding the word "protectable" to address Arista's concern that the instruction suggests that any copying constitutes infringement.  Although not strictly necessary, this compromise allows the *Model* to be used with that slight clarification, as it accounts for Arista's positions that scènes à faire, merger, *de minimis* use, and/or the words and short phrases are restrictions on protectability (notwithstanding Cisco's position that scènes à faire and merger are affirmative defenses).  Thus, it is an accurate statement of law that the copying of original, protectable material requires a finding of infringement, and that Arista may then present its affirmative defenses to argue that such infringement is excusable.  Arista's removal of the last paragraph, which also appears in the Model, is unwarranted for the same reason.

---

[35]  Instruction No. 17.4, *Ninth Circuit Manual of Model Civil Jury Instructions* (2007).

1

2

**DISPUTED:  Arista's Final Instruction No. 29 re Copyright—Elements: Ownership and Copying[36]**

3    On Cisco's copyright infringement claim, Cisco has the burden of proving by a

4 preponderance of the evidence that, for each work:

5    1.  Cisco is the owner of a valid copyright; and

6    2.  Arista copied protected expression from the copyrighted work

7

8 **Arista's Position:**

9    Arista's proposed instructions are based upon Instruction No. 17.4 of the current version of

10 the Ninth Circuit's Model Civil Jury Instructions (last updated 6/2016), with two necessary and important modifications that reflect the claims and affirmative defenses that will be presented at

11 trial.  *First*, because Arista is raising several affirmative defenses to copyright infringement that would negate a finding of copyright infringement, it would prejudice Arista and confuse the jury

12 to state as a general matter in this instruction that: "Anyone who copies original expression from a copyrighted work during the term of the copyright without the owner's permission infringes the

13 copyright."  Even if the jury finds that Arista had copied "original expression from a copyrighted work," Arista does not infringe the copyright if the jury also finds that fair use, copyright misuse,

14 or any of Arista's other defenses including *scenes a faire*, merger, *de minimis* use, and/or the words and short phrases doctrine apply to the allegedly copied expression.  Therefore, it would be

15 legal error and highly prejudicial to Arista to instruct the jury, as Cisco proposes, that "[a]nyone who copies original expression from a copyrighted work during the term of the copyright without

16 the owner's permission infringes the copyright."

17    *Second*, for the same reasons, it would be wrong and highly prejudicial to Arista and

18 confuse the jury to state in this instruction that: "If you find that Cisco proved both of these

19 elements, your verdict should be for the plaintiff."  The doctrines and defenses listed above, if proven at trial, would require partial or full verdict for Arista, even if Cisco proved those two

20 elements.  It would therefore be legal error to instruct a jury, as Cisco proposes, that a verdict for Cisco is required if Cisco merely proves that it is the owner of a valid copyright, and that Arista

21 copied original expression from the copyrighted work.

22    Arista's proposed instruction removes these prejudicial and confusing statements, which if

23 left in the instructions would invite the jury to find for Cisco on its copyright infringement claims without properly considering Arista' defenses.

24

25

26

27

28    [36]   Ninth Circuit Model Jury Instruction 17.4.

**<u>STIPULATED: Final Instruction No. 30 re Copyright—Validity</u>**[37]

Cisco is the owner of valid copyrights in [to be determined by analytic dissection] and related documentation if Cisco proves by a preponderance of the evidence that:

1. Cisco's works are original; and

2. Cisco is the author or creator of the works, or the author or creator assigned or exclusively licensed the work to Cisco.

---

[37] Instruction No. 17.5, *Ninth Circuit Manual of Model Civil Jury Instructions* (2007).

**DISPUTED: Cisco's Final Instruction No. 31 re Copyright—Copyright Registration Certificates[38]**

A copyright owner may obtain a certificate of registration from the Copyright Office.  The evidence in this case includes 26 certificates of copyright registration from the Copyright Office for Cisco's copyrighted works.  If you find that a certificate was made within five years after first publication of that work, you may presume that the work is original and copyrightable, and that Cisco is the owner of that work.  That is, the existence of the certificate shifts the burden to Arista concerning Cisco's ownership of a valid copyright.

**Cisco's Position:**

Cisco's proposed instruction follows Instruction No. 17.6 of the *Ninth Circuit Manual of Model Civil Jury Instructions* ("*Model*") in both form and substance, including the proposed language that the certificate is "evidence of the facts stated in the certificate" and the jury may presume "that plaintiff's work is the original and copyrightable work of the author and that the plaintiff owns the copyright in that work."

Further, the *Model*'s comment states:

A copyright registration certificate can shift the burden of proof concerning plaintiff's ownership of a valid copyright.  *United Fabrics Int'l, Inc. v. C&J Wear, Inc.*, 630 F.3d 1255, 1257 (9th Cir. 2011).  "For instance, if a copyright holder secures a registration certificate within five years after first publication, such certificate will constitute prima facie evidence of both the validity of the copyright and the facts stated in the certificate."  *Cosmetic Ideas, Inc. v. IAC/Interactivecorp*, 606 F.3d 612, 619 (9th Cir. 2010) (citing 17 U.S.C. § 410(c)).

Cisco's proposed instruction thus correctly incorporates the presumption of validity of the certificate and the facts therein, and the shifting of the burden to Arista to rebut that presumption.

Arista's proposed instruction should be rejected.  *First*, the instruction unnecessarily departs from the language of the *Model* without explanation.  *Second*, Arista's proposed instruction misstates the law regarding the burden of proof; as both Cisco's and Arista's authorities make clear that a valid copyright registration is *prima facie* evidence of the validity of the work and the facts in the certificate, and the burden shifts to Arista to present evidence to rebut

---

[38] Instruction No. 17.6, *Ninth Circuit Manual of Model Civil Jury Instructions* (2007); *United Fabrics Int'l, Inc. v. C&J Wear, Inc.*, 630 F.3d 1255, 1257 (9th Cir. 2011); *Cosmetic Ideas, Inc. v. IAC/Interactivecorp*, 606 F.3d 612, 619 (9th Cir. 2010).

1  that presumption.  *Third*, Arista's instruction would confuse rather than assist the jury by

2  suggesting that a certificate establishing Cisco's ownership of the registered operating systems and

   related documentation does not also establish Cisco's ownership of the asserted works—Cisco's

3  user interface and related documentation as included in the registration.  A "single registration of a

   computer program accomplishes two interrelated yet distinct registrations: one of the program

4  itself, and one of the screen displays or user interface of that program, to the extent that each

   contains copyrightable subject matter."  *Napoli v. Sears, Roebuck & Co.*, 874 F. Supp. 206, 211

5  (N.D. Ill. 1995), *citing Mfs. Tech., Inc. v. CAMS*, Inc., 706 F. Supp. 984, 990-991 (D. Conn.

6  1989); *see also* U.S. Copyright Office, *Registration for Computer Programs, Circular 61*, August,

   2012 ("A single registration may be made for a computer program and its screen display. …  The

7  registration will extend to any copyrightable screens generated by the program, regardless of

   whether identifying material for the screens is deposited."); PATRY ON FAIR USE § 5:4 (2012)

8  (work is not determined by registration).

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1    **DISPUTED: Arista's Final Instruction No. 31 re Copyright—Copyright Registration**

2    **Certificates[39]**

3        A copyright owner may obtain a certificate of registration from the Copyright Office.

4        The evidence in this case includes Exhibits ___, certificates of copyright registration from

5    the Copyright Office. You are instructed that these certificates are sufficient to establish that there

6    is a valid copyright in the operating systems and documentation described by the certificates.

7        However, the validity of the copyright in an entire work does not establish a copyright in

8    each element of the work.[40]  Cisco bears the ultimate burden of proving by a preponderance of the

9    evidence that the asserted elements of Cisco's works are original and protected by copyright.[41]

10   You may consider the certificates as well as all of the evidence presented at trial in determining

11   whether the asserted elements of Cisco's works are original.[42]

12

13   **Arista's Position:**

14       Cisco again departs from the model instruction.  While the model instruction for cases in

15   which the defendant presents evidence undermining validity or ownership of copyright states that
     the jury "may, **but need not** conclude that . . . the plaintiff's work is the original and

16   copyrightable work of the author," (emphasis added), Cisco deletes the qualification, and asks that
     the Court instruct the jury that it may presume the work is original and that the burden shifts to

17   _____

18       [39]   Ninth Circuit Model Jury Instruction 17.6.

19       [40]  *Feist Publications, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 348 (1991) ("The mere fact
     that a work is copyrighted does not mean that every element of the work may be protected.").

20       [41] *Adobe Sys. Inc. v. Christenson*, 809 F.3d 1071, 1076 (9th Cir. 2015); *N. Coast Indus. v.
     Jason Maxwell, Inc.*, 972 F.2d 1031, 1033 (9th Cir. 1992) (The "presumption may be rebutted by a

21   showing on the part of the defendant that the plaintiff's work is not original. Originality is the
     indispensable prerequisite for copyrightability."); *Walker & Zanger, Inc. v. Paragon Indus., Inc.*,

22   549 F. Supp. 2d 1168, 1183–84 (N.D. Cal. 2007) ("This evidence suffices to show that plaintiff's
     tiles are 'not original but copied from another's work'; therefore, the court finds that defendant has

23   rebutted the statutory presumption, and the burden of proving validity shifts back to plaintiff.").

24       [42] *Adobe Sys. Inc. v. Christenson*, 809 F.3d 1071, 1076 (9th Cir. 2015); *Lamps Plus, Inc. v.
     Seattle Lighting Fixture Co.*, 345 F.3d 1140, 1144 (9th Cir. 2003); *N. Coast Indus. v. Jason

25   Maxwell, Inc.*, 972 F.2d 1031, 1033 (9th Cir. 1992) (The "presumption may be rebutted by a
     showing on the part of the defendant that the plaintiff's work is not original. Originality is the

26   indispensable prerequisite for copyrightability."); *Walker & Zanger, Inc. v. Paragon Indus., Inc.*,
     549 F. Supp. 2d 1168, 1183 (N.D. Cal. 2007); *Universal Furniture Int'l, Inc. v. Collezione Europa

27   USA, Inc.*, 618 F.3d 417, 430 (4th Cir. 2010), *as amended* (Aug. 24, 2010); 5 Patry on Copyright §
     17:109.

28

                                   -51-                          Case No. 5:14-cv-5344-BLF

1    Arista concerning ownership.  Cisco's proposal does not include any explanation for the jury of

2    what it means for a jury to "presume" facts, or what it means for the burden to "shift" to Arista
     concerning a particular issue.

3        Arista's proposal is simpler and is tailored to this case.  Arista proposes an instruction that

4    states that each of the twenty-six copyright registrations are "sufficient to establish that there is a
     valid copyright in the operating systems and documentation described by the certificates" *so long*

5    *as* the instructions acknowledge that the validity of the copyrights in operating systems and

6    documentation does not extend to each and every element of the work.  As *Feist* clearly states,
     "[t]he mere fact that a work is copyrighted does not mean that every element of the work may be

7    protected."  *Feist Publications, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 348 (1991).  The jury
     must understand that Cisco bears the ultimate burden of proving that the *asserted elements* of the

8    copyright-registered works are original—that is, independently created by Cisco employees and
     creative.  While the jury may consider the certificates as evidence, the certificates are not

9    dispositive and may not even be relevant.  Indeed, the cetificates themselves disclose that the
     works include public-domain and third-party computer code, but do not specify which portions of

10   the works that disclosure applies to.

11       To the extent that Cisco believes that it is entitled to a presumption of *originality* for each

12   and every element within its works, this Court is already familiar with the problems related to that
     argument.  First, it is undisputed that at least 198 CLI commands were not registered within the

13   five-year statutory window.  *See* Order Denying MSJs, ECF 482 at 11:12–14:2.  And, in fact,
     while Arista chose its motion for partial summary judgment based on undisputed evidence, there

14   are also sufficient disputes of fact about the originality of all the asserted CLI elements to justify
     stripping the presumption at trial from *every* asserted element.  Indeed, this Court found that there

15   were genuine issues of fact about the originality of Cisco's CLI commands.  *Id.* at 12:22–23.

16       Those disputes of fact about originality are precisely why the presumption should not

17   apply to any of Cisco's works.  Each of the registered works is a derivative work, and derivative
     works are entitled only to a "slight" presumption that is "fairly easy to rebut."  3 Patry on

18   Copyright § 9:13; 5 Patry on Copyright § 17:109; *Universal Furniture Int'l, Inc. v. Collezione
     Europa USA, Inc.*, 618 F.3d 417, 430 (4th Cir. 2010), *as amended* (Aug. 24, 2010); *see also*

19   *Cooling Sys. & Flexibles,Inc. v. Stuart Radiator, Inc.*, 777 F.2d 485, 490 (9th Cir. 1985),
     *overruled on other grounds as stated in Jackson v. Axton*, 25 F.3d 884 (9th Cir. 1994) ("We also

20   reject the argument that registration of the derivative work creates a presumption of validity of the
     copyright of the underlying work.") (citing H.R.Rep. No. 1476, 94th Cong., 2d Sess. 57, *reprinted*

21   *in* 1976 U.S. Code Cong. & Ad. News 5659, 5670; 17 U.S.C. § 103(b) ("The copyright in a
     compilation or derivative work extends only to the material contributed by the author of such

22   work, *as distinguished from the preexisting material employed in the work*.") (emphasis added).
     Even if the regular presumption applied, as opposed to the weakened derivative one, the Ninth

23   Circuit has repeatedly held that little is required to rebut it: "To rebut the presumption, an

24   infringement defendant must simply offer *some evidence or proof to dispute* or deny the plaintiff's
     prima facie case of infringement."  *Entm't Research Grp., Inc. v. Genesis Creative Grp., Inc.*, 122

25   F.3d 1211, 1217 (9th Cir. 1997) (emphasis added); *see also Lamps Plus, Inc. v. Seattle Lighting
     Fixture Co.*, 345 F.3d 1140, 1144 (9th Cir. 2003).  Arista presented far more than "some evidence

26   or proof to dispute" Cisco's claims of originality.

27

28

1

**DISPUTED: Cisco's Final Instruction No. 32 re Copyright—Originality[43]**

2   An original work may include or incorporate elements taken from prior works, works from

3   the public domain, and/or works owned by others, with the owner's permission.  The original parts

4   of the plaintiff's work are the parts created:

5   1.   Independently by the work's author, that is, the author did not copy it from another

6       work; and

7   2.   By use of at least some minimal creativity.

8   In copyright law, the "original" part of a work need not be new or novel.  An original part

9   of a work may consist of the selection and arrangement of existing words or symbols.[44]

10   In addition, the use of a process by which an author exercises its judgment and expertise in

11   the work's creation may render the work original.[45]

12   Further, a work is "original" if it was independently created by the author rather than

13   copied from another source, even if someone else had previously created the same or similar

14   work.[46]

15

16   **Cisco's Position:**

17   Cisco's proposed instruction follows Instruction No. 17.13 of the *Ninth Circuit Manual*

18   *of Model Civil Jury Instructions* ("*Model*") and otherwise accurately reflects the applicable legal

19

20   [43]   Instruction No. 17.13, *Ninth Circuit Manual of Model Civil Jury Instructions* (2007).
       [44]   *Feist*, 499 U.S. at 345; *Compaq Computer Corp. v. Ergonome, Inc.*, 137 Supp. 2d 768,
21   775-76 (S.D. Tex. 2001).
       [45]   ECF No. 482 at 12-13; *CDN Inc. v. Kapes*, 197 F.3d 1256, 1260 (9th Cir. 1999) (affirming
22   district court's finding that "'[t]he evidence indicates that the plaintiff uses its considerable
       expertise and judgment to determine how a multitude of variable factors impact upon available bid
23   and ask price data. And it is this creative process which ultimately gives rise to the Plaintiff's 'best
       guess' as to what the current 'bid' and 'ask' prices should be.  As such, the Court finds that these
24   prices were created, not discovered.'").
       [46]   *Feist*, 499 U.S. at 345 ("[o]riginal ... means only that the work was independently created
25   by the author (as opposed to copied from other works)"); *Lucky Break Wishbone Corp. v. Sears
       Roebuck & Co.*, 373 F. App'x 752, 754 (9th Cir. 2010) ("To qualify for copyright protection, a
26   work must be original to the author.  Original, as the term is used in copyright, means only that the
       work was independently created by the author (as opposed to copied from other works)...."); *i-*
27   *Sys., Inc. v. Softwares, Inc.*, No. 02-cv-1951, 2004 WL 742082, at *7 (D. Minn. Mar. 29, 2004).

28

standards for originality.  *First*, the *Model* provides the instruction that  "[i]n copyright law, the '"original"' part of a work need not be new or novel," and thus should be included, and the following sentence accurately clarifies that a creative arrangement of words may be original. *Second*, as this Court has already concluded, Cisco's exercise of judgment and expertise in selecting, implementing or arranging its multi-word command expressions, modes and prompts, hierarchies, command responses, and help descriptions render Cisco's user interface sufficiently creative for copyright protection.  *See* Dkt. No. 482 at 12-13; *see also CDN Inc. v. Kapes*, 197 F.3d 1256, 1260 (9th Cir. 1999).  *Third*, the last paragraph correctly and concisely describes the concept of independent creation.  *See Feist*, 499 U.S. at 345 ("[o]riginal … means only that the work was independently created by the author (as opposed to copied from other works)").

1

## DISPUTED: Arista's Final Instruction No. 32 re Copyright—Originality[47]

2    An original work may include or incorporate elements taken from prior works, works from

3  the public domain, and/or works owned by others, with the owner's permission. The original parts

4  of a work are the parts created:

5    1.  independently by the author, that is, the author did not copy it from another work; and

6    2.  by use of at least some minimal creativity.

7

8  **Arista's Position:**

9    Cisco's "originality" instruction is a wholesale departure from Ninth Circuit Model
10  Instruction 17.13, which is the sole basis of Arista's proposed instruction on this topic.  Cisco's
   departures are confusing and unsupported by the law.

11    Cisco adds three new paragraphs to the model instruction.  The first paragraph claims that
12  the "original selection and arrangement of even the simplest of words or symbols can exhibit
   sufficient creativity to be protectable."  There is no citation to authority, nor does it come from a
13  model instruction.  And the statement is confusing.  Is Cisco referring to compilations of
   unprotectable elements, such as in *Feist Publications, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340,
14  350 (1991)?  If so, it has not presented evidence of any compilations, nor has it adequately
15  disclosed a compilation theory (*see* Arista's Position on Cisco's Final Instruction 33).

16    In the second paragraph, Cisco would have this Court instruct the jury that, because Cisco
   used a "process by which it exercised its judgment and expertise in selecting, implementing or
17  arranging its" CLI elements, that "Cisco's user interface is sufficiently creative for copyright
   protection."  Cisco has no basis to ask for such a sweeping ruling, and, indeed, it failed to secure
18  one at summary judgment.  ECF 482 at 3–6.  This Court recognized that Cisco could not secure
19  summary judgment of copyrightability of the "Cisco CLI" when it had presented no evidence of
   the creation of the compilation called "Cisco CLI" (nor does any such evidence exist, since the
20  "Cisco CLI" is a lawyer-created construct superimposed on twenty-six disparate copyright-
   registered operating systems published years apart and used on disparate types of hardware).  *Id.* at
21  5:5–6:5.  Now, rather than pushing its "Cisco CLI," it's pushing a "user interface" that amounts to
22  the same vague, singular, lawyer-created construct this Court already rejected.

23    Cisco also misunderstands this Court's discussion of *CDN Inc. v. Kapes*, 197 F.3d 1256,
   1260 (9th Cir. 1999).  This Court held there was a genuine issue of material fact concerning the
24  creativity of the "process" that Cisco claims it undertook to create different CLI elements, and so
   it denied Arista's motion for partial summary judgment on the originality of late-registered CLI
25  commands.  Cisco's proposed instruction apparently assumes that Cisco was granted summary
   judgment on the same issue; it was not.  The sufficiency of Cisco's "process" is a disputed factual
26  issue for trial.  Indeed, one recent deposition shows that Cisco's claims of a "creative process" are

27  ───────────────

28    [47]   Ninth Circuit Model Jury Instruction 17.13.

1   substantially overstated, and a far cry from the creative process in *CDN*.  *See* Lougheed 9/16/16
2   Depo. Tr. at 453:1–12 ("Q: How were the proposed HELPDESC phrases reviewed at Cisco when
    they were proposed alongside a command?  A: They weren't . . . .  Q: Were there any guidelines
3   provided to engineers regarding how to author or create a – a HELPDESC string?  A: No.").  The
    jury must decide the veracity of Cisco's claims that its CLI elements were created through creative
4   application of judgment.

5       Moreover, to the extent Cisco's process involved adopting industry standard terminology,
6   the decision to copy public-domain words and phrases cannot be creative.  Cisco's proposal,
    crafted out of whole cloth, does not address that issue, either.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1124328.06

**DISPUTED: Cisco's Final Instruction No. 33 re Copyright—Compilations[48]**

An owner is entitled to copyright protection of a compilation. A compilation is a work formed by the collection and assembling of preexisting materials or of data that are selected, coordinated, or arranged in such a way that the resulting work as a whole constitutes an original work of authorship.

The owner of a compilation may enforce the right to exclude others in an action for copyright infringement.

**Cisco's Position:**

Cisco's proposed instruction follows Instruction No. 17.15 of the *Ninth Circuit Manual of Model Civil Jury Instructions* ("*Model*"). Arista has provided no counterproposal.

To the extent that Arista claims that an instruction on compilation should not be given at all, Arista is incorrect. Cisco has disclosed and identified evidence and argument, to be supplemented a trial, demonstrating the applicability of a compilation instruction. *See*, *e.g.*, Cisco's Trial Brief Re Analytic Dissection and Filtration (ECF 619) at 12-13, 19; Cisco's Response to Arista's Brief re: Analytic Dissection (ECF 653) at 6-9; Almeroth Rep. Exs. 2-6 (identifying location of each protectable element in each user interface); Cisco's Trial Brief re: Copyrighted Work (ECF 633) at 2-3 (describing how Cisco's user interfaces are registered and how multiple versions of a work may be treated as one work for infringement analysis). Further, the standard for protecting compilations is extremely minimal. *Feist*, 499 U.S. at 358-59. ("Originality requires only that the author make the selection or arrangement independently (*i.e.,* without copying that selection or arrangement from another work), and that it display some minimal level of creativity. Presumably, the vast majority of compilations will past this test ...."); *Harper House v. Thomas Nelson*, 889 F.2d 197, 204 (9th Cir. 1989); ("A copyrightable compilation can consist mainly or entirely of uncopyrightable elements."). Finally, to the extent that Arista now argues that a compilation instruction is unavailable as a matter of law, Arista cannot use these jury instructions in a belated attempt to file a backdoor motion for summary judgment. *Name Intelligence, Inc. v. McKinnon*, No. 10-CV-01202, 2013 WL 3930473, at *3 (D. Nev. July 28, 2013) (denying motion that was "in substance an untimely motion for summary judgment").

---

[48]  Instruction No. 17.15, *Ninth Circuit Manual of Model Civil Jury Instructions* (2007).

1

**DISPUTED: Arista's Position on Cisco's Final Instruction No. 33 re Copyright—**

2

**Compilations[49]**

3

No such instruction should be given.

4

5

**Arista's Position:**

6

7

8

9

10

Cisco is not entitled to a compilation instruction because it has not disclosed a compilation theory, and it cannot produce any evidence of a compilation that would justify such an instruction. The Copyright Act defines a compilation as "a work formed by the collection and assembling of preexisting materials or of data that are selected, coordinated, or arranged in such a way that the resulting work as a whole constitutes an original work of authorship." 17 U.S.C. § 101. For example, a compilation might be a book of short stories or, as discussed in *Feist Publications, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991), an original collection of factual information that can stand on its own as a work. Cisco has no such copyright here: it has never disclosed one, and it has no evidence of one.

11

12

13

Cisco's reply brief regarding analytic dissection concedes that its argument concerning the selection and arrangement of CLI commands "has nothing to do with a compilation of preexisting works." ECF 653 at 6:23–7:1 (citing 17 U.S.C. § 409(9)). Indeed, Cisco did not register a compilation, even though it could have. *See* 17 U.S.C. § 409(9). Nor has Cisco ever disclosed any "compilation" that it is asserting—not in its complaint, and not in discovery.

14

15

16

17

This Court recognized the problems with Cisco's compilation theory when it denied Cisco summary judgment that a compilation called the "Cisco CLI" was copyrightable, holding that Cisco "has not presented evidence of where Cisco CLI comes from or how and when it was compiled. Although Cisco has copyrights covering its IOS . . . Cisco does not have a single copyright registration covering the compilation it calls the Cisco CLI . . . . This may not have been an issue if Cisco had presented evidence about how the Cisco CLI compilation was created but it did not." Order Denying Summary Judgment, ECF 482 at 5:5–14.

18

19

20

21

22

23

Since summary judgment, Cisco has not produced any additional evidence underlying its compilation theory, nor could it, as discovery has now closed. Cisco's newest argument—that there are *four* Cisco CLIs rather than one, fares no better. As the statute requires, a compilation is a collection of preexisting material that results in a *work as a whole constitute[ing] an original work of authorship.*" 17 U.S.C. § 101. That is the statutory provision the Ninth Circuit model states it is implementing in instruction 17.15. Here, there is no evidence that any of the four asserted lists of commands and other CLI elements are *standalone works as a whole* that collect preexisting materials as opposed to cherry-picked, lawyer-created lists. Without any such evidence, and without having ever disclosed a compilation theory or any compilation evidence, Cisco is not entitled to a compilation instruction; including one would prejudice Arista and confuse the jury.

24

25

Finally, should the Court determine that a compilation instruction is merited, it should give the model instruction without alteration. Cisco seeks to add the following sentence to the model instruction:

26

Thus, even if you find that any particular expression in Cisco's user interface is not

27

---

28

[49]   Ninth Circuit Model Jury Instruction 17.15.

sufficiently original to warrant copyright protection, you may find that the collection, selection, coordination, or arrangement of Cisco's expressions are sufficiently original as a compilation.

*First*, if the Court were to give this instruction, it must also instruct the jury as to the scope of a copyright in a compilation. In particular, the Court should explain, as Arista's instruction proposes, that facts and ideas are not protectable, so their combination is only protectable if their "selection and arrangement" is "original enough" that they "constitute[] an original work of authorship"—a phrase that comes directly from the model instruction as well as Ninth Circuit law. *See* Ninth Circuit Model Jury Instruction 17.15 Comment, citing and quoting *Satava v.Lowry*, 323 F.3d 805, 811 (9th Cir.2003) ("[A] combination of unprotectable elements is eligible for copyright protection only if those elements are numerous enough and their selection and arrangement original enough that their combination constitutes an original work of authorship."). The jury should also understand *why* facts and ideas are not protected: because copyright does not reward labor, *e.g.*, the labor involved in assembling a phone book. *Feist Publications, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 349 (1991) ("the essence of copyright . . . . is not to reward the labor of authors, but to promote the Progress of Science and useful Arts.") (quoting U.S. Const., Art. I, § 8, cl. 8) (internal quotation marks and alterations omitted). *Second*, the jury should understand by way of example that a phone book, though it is a compilation of facts and ideas, is not automatically extended copyright protection, as was held in *Feist,* because selecting all available items (*e.g.*, commands, or persons with phone numbers), and arranging them in alphabetical order is not creative or protectable.

1

2

**STIPULATED: Final Instruction No. 34 re Copyright—Authorship & Work Made For Hire[50]**

3   The creator of an original work is called the author of that work.  An author originates or

4  "masterminds" the original work, controlling the whole work's creation and causing it to come

5  into being.

6   A copyright owner is entitled to exclude others from copying a work made for hire.  A

7  work made for hire is one that is prepared by an employee and is within the scope of employment.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

_____

27   [50]   Instruction Nos. 17.7 & 17.10, *Ninth Circuit Manual of Model Civil Jury Instructions*

28  (2007).

SECOND AMENDED UNDISPUTED AND DISPUTED PROPOSED JURY INSTRUCTIONS

1124328.06

1    **DISPUTED: Cisco's Final Instruction No. 35 re Copyright—Derivative Work**[51]

2        A copyright owner is entitled to exclude others from creating derivative works based on

3    the owner's copyrighted work.  The term "derivative work" refers to a work based on one or more

4    pre-existing works, such as a translation, musical arrangement, dramatization, fictionalization,

5    motion picture version, sound recording, art reproduction, abridgment, condensation, or any other

6    form in which a work may be recast, transformed, or adapted.  Accordingly, the owner of a

7    copyrighted work is entitled to exclude others from recasting, transforming, or adapting the

8    copyrighted work without the owner's permission.

9

10    **Cisco's Position:**

11        Cisco's proposed instruction directly tracks the first paragraph of Instruction No. 17.4 of

12    the *Ninth Circuit Manual of Model Civil Jury Instructions* ("*Model*"), other than the removal of
      the phrase "musical arrangement, dramatization, fictionalization, motion picture version, sound

13    recording, art reproduction," which is not necessary for this case.  The remaining paragraphs of the
      *Model* are not necessary for the jury's determination of whether Arista infringed Cisco's

14    copyrights, and thus are not necessary for the jury to render its verdict.  Further, Arista's copying
      includes not only literal copying, but also the incorporation of copies of Cisco's copyrighted

15    works into Arista's own works, thus implicating Cisco's right to prepare derivative works.  *See,*

16    *e.g.*, Dkt. No. 64 (Second Amended Complaint) ¶¶ 6-10 (discussing incorporation of Cisco's
      works into Arista's products).

17        *Arista* has not proposed an instruction on derivative works, nor has it explained why the

18    *Model* is insufficient or why the remaining paragraphs in the *Model* are applicable.

19

20

21

22

23

24

25

26

27    _____

28    [51]    Instruction No. 17.14, *Ninth Circuit Manual of Model Civil Jury Instructions* (2007).

1    **DISPUTED: Arista's Position on Cisco's Final Instruction No. 35 re Copyright—Derivative**

2    **Work**

3            Arista's position is that no such instruction should be given.

4

5    **Arista's Position:**

6            Arista objects to the inclusion of the instruction on derivative works proposed by Cisco,

7    which excerpts an irrelevant portion of Ninth Circuit model jury instruction 17.14.  The paragraph

8    Cisco proposes correctly states that, in addition to the right to exclude others from copying a

     copyrighted work, a copyright owner also has the right to exclude others from creating derivative

9    works, *i.e.*, the "adaptation right."

10           This is not a case about the adaptation right; it is a case about the reproduction right.  This

     is not the rare, "exotic situation[] in which the adaptation right may take on substantive

11   significance" because the accused infringer had the legal right to reproduce the original work, but

     not to create derivative works.  2-8 Nimmer on Copyright § 8.09[A][1].  This is the run-of-the-mill

12   case where the right to create derivative works does not differ in any substantive respect from the

     right to reproduce the original work.

13           Cisco's proposed (incomplete) instruction is thus misleading, confusing, and

14   superfluous.  To determine whether Arista has infringed Cisco's adaptation right, the jury would

     need to apply *exactly the same* test for infringement as it would for the reproduction right.  *See*

15   *Litchfield v. Spielberg*, 736 F.2d 1352, 1357 (9th Cir. 1984) ("A work will be considered a

16   derivative work *only if it would be considered an infringing work if* the material which it has

     derived from a prior work had been taken without the consent of a copyright proprietor of such

17   prior work.") (internal quotation marks omitted; original emphasis); *Mirage Editions, Inc. v.*

     *Albuquerque A.R.T. Co.*, 856 F.2d 1341, 1343 (9th Cir. 1988) ("[A] work will be considered a

18   derivative work only if it would be considered an infringing work if the material which it has

     derived from a preexisting work had been taken without the consent of a copyright proprietor of

19   such preexisting work.") (quoting 1 Nimmer on Copyright § 3.01 (1986)); *Allen v. Acad. Games*

20   *League of Am., Inc.*, 89 F.3d 614, 617 (9th Cir. 1996) (same); *Micro Star v. Formgen Inc.*, 154

     F.3d 1107, 1112 (9th Cir. 1998) (same); *see also Kohus v. Mariol*, 328 F.3d 848, 858 (6th Cir.

21   2003) (same); *Twin Peaks Prods., Inc. v. Publications Int'l, Ltd.*, 996 F.2d 1366, 1373 (2d Cir.

22   1993) ("The finding that the Book was a derivative work would seem unnecessary to the finding

     of *prima facie* infringement" because adding a finding of infringement of derivative right was

23   "superfluous" to finding of infringement of right to reproduce) (citing 2 *Nimmer* § 8.09 [A], at 8–

     114).

24           Cisco offers no explanation how, on the facts of this case, the jury could find infringement

25   of the adaptation right without finding infringement of the reproduction right.  Instructing the jury

     on the adaptation right thus would risk confusing the jury into concluding that the test for

26   infringement is somehow different for the two rights.  Indeed, the leading copyright treatise makes

     clear that, in cases such as this one, "[t]his right [the adaptation right] may be thought to be

27   completely superfluous because, under the Section 101 definition of a derivative work, it must be

     'based upon one or more pre-existing works' . . . .  Therefore, if the latter work does not

28

incorporate enough of the pre-existing work to constitute an infringement of either the reproduction right or of the performance right, then it likewise will not infringe the right to make derivative works because no derivative work will have resulted."  2-8 Nimmer on Copyright § 8.09[A][1].

Cisco should not be allowed to mislead the jury by suggesting that the infringement test differs with respect to the adaptation right.  Since the test for infringement of the adaptation right is superfluous on the facts of this case, the instruction should not be given.  But, should the Court give one, it should add to the instruction to make clear to the jury the following: "Regardless, the test for infringement remains the same: Cisco must prove by a preponderance of the evidence that Arista copied Cisco's works, and that Arista's works are [virtually identical or substantially similar] to Cisco's works, whether you find they are derivative works or not."

Moreover, Cisco has never asserted that Arista infringed the adaptation right, and therefore is precluded from raising that theory of infringement for the first time now.  Nowhere in Cisco's operative complaint (ECF 64) or in the recently filed Joint Pretrial Statement (ECF 593) does Cisco accuse Arista of creating derivative works without Cisco's permission, nor does the term "derivative works" appear even once in either of those documents.  Cisco is not entitled to any instruction on derivative works, and Arista has not proposed a competing instruction, because the subject of creating derivative works without permission is not, and has never been, at issue in this litigation and will only confuse the jury and prejudice Arista.

Finally, if the Court believes that an instruction on derivative works is proper, Arista objects to Cisco's proposed instruction as highly prejudicial, misleading, and incomplete.  *First*, Cisco cherry-picks from the Ninth Circuit's Model Instruction No. 17.14 by excluding several important legal rules that, if omitted from the final instructions, would be legal error.  For example, Cisco's instruction omits the statement in the model instruction that says "Only what was newly created, such as editorial revisions, annotations, elaborations, or other modifications to the pre-existing work is considered to be the derivative work."  17 U.S.C. § 103(b); *see also Stewart v. Abend*, 495 U.S. 207, 223 (1990).  Cisco would therefore have the jury believe that the full contents in the derivative works that it asserts in this lawsuit—and not just what was newly added—is protected by copyright, which would be legal error.  *Second*, Cisco's proposed instructions omit the statement from the model instructions that "The author of the derivative work is entitled to copyright protection only for original contributions made by that author that are more than trivial."  *U.S. Auto Parts Network, Inc. v. Parts Geek, LLC*, 692 F.3d 1009, 1016 (9th Cir.2012).  Cisco's omission of that statement from the Ninth Circuit's Model Instructions again reveals its intent to claim copyright protection over all aspects—and not just the newly added, non-trivia; original expression—of the derivative works that it asserts in this dispute.

Cisco's proposed instructions also omit from the Ninth Circuit's Model Instructions the critical statement that:  "If the derivative work incorporates pre-existing work by others and works in the public domain, the derivative author's protection is limited to elements added by the derivative author to the pre-existing work of others and the public domain work" and "The author of the derivative work may enforce the right to exclude others from the original elements added by the author in an action for copyright infringement."  Those legal limits placed on the copyrights held by authors of derivative works must be part of any jury instruction on derivative works because all of Cisco's registered works state that they include "preexisting third party computer code."  Cisco's proposed instruction, which omits all of these limitations on copyright over

1   derivative works, would mislead the jury and prejudice Arista on the scope of copyright protection
2   over derivative works.  Arista, however, does not believe that Cisco is entitled to any instruction
    whatsoever on "derivative works" given the nature of its copyright infringement claims.
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**DISPUTED: Cisco's Final Instruction No. 36 re Copyright—Copying (Direct Evidence)[52]**

Cisco has the burden of proving by a preponderance of the evidence that Arista copied original elements from Cisco's copyrighted works.  There are two ways that Cisco can meet its burden.

First, Cisco may establish Arista's copying through direct evidence.[53]  An example of direct evidence would be an admission by Arista that part or all of the work was copied.  Direct evidence may also be the credible testimony of a witness who saw the work being copied.[54]

**Cisco's Position:**

Cisco's proposed instruction directly applies the ABA Model Jury Instructions, which reads in full:

**1.5.2. Copying—Proof by Direct or Circumstantial Evidence**

Plaintiff claims that defendant copied from plaintiff's copyrighted work. Copying may be established, as is the case with other facts, by direct or circumstantial evidence. ***An example of direct evidence would be an admission by defendant that part or all of the work was copied. Direct evidence may also be the credible testimony of a witness who saw the work being copied.*** An example of circumstantial evidence would be that defendant exerted efforts to obtain a copy of plaintiff's work, and defendant's work appeared soon after defendant obtained a copy. In considering the evidence, you should take into account all the evidence

---

[52] Instruction No. 17.16, *Ninth Circuit Manual of Model Civil Jury Instructions* (2007).

[53] *Brocade Commc'ns Sys. v. A10 Networks, Inc.*, 873 F. Supp. 2d 1192, 1218-19 (N.D. Cal. 2012) ("In the absence of direct evidence of copying, such as an admission, 'copying' may be shown by proving access to the copyrighted work and substantial similarity between the works …. [I]n this case, Brocade has submitted direct evidence of copying. Thus, the substantial similarity test is not applicable."); *Rottlund Co. v. Pinnacle Corp.*, 452 F.3d 726, 732 (8th Cir. 2006) (direct evidence of copying includes "party admissions, witness accounts of the physical act of copying, and common errors in the works of plaintiffs and the defendants").

[54] *Three Boys Music Corp. v. Bolton*, 212 F.3d 477, 485 (9th Cir. 2000) ("[I]n the absence of any proof of access, a copyright infringement can still make out a case of infringement by showing that the songs were 'strikingly similar.'"); *Brocade Commc'ns Sys. v. A10 Networks, Inc.*, 873 F. Supp. 2d 1192, 1218-19 (N.D. Cal. 2012) ("In the absence of direct evidence of copying, such as an admission, 'copying' may be shown by proving access to the copyrighted work and substantial similarity between the works …. [I]n this case, Brocade has submitted direct evidence of copying. Thus, the substantial similarity test is not applicable."); *Rottlund Co. v. Pinnacle Corp.*, 452 F.3d 726, 732 (8th Cir. 2006) (direct evidence of copying includes "party admissions, witness accounts of the physical act of copying, and common errors in the works of plaintiffs and the defendants").

1          presented by plaintiff and defendant and give the evidence the weight you think it
              deserves, whether it is direct or circumstantial evidence.

2    ABA Model Jury Instruction 1.5.2 (emphasis added).  Where direct evidence of copying exists,
copying need not be proved through circumstantial evidence of access plus substantial similarity.

3    *See* 4 NIMMER ON COPYRIGHT § 13.01 n.27 (collecting cases in which direct evidence was

4    available to show copying, *e.g.*, through witness admissions); *Norse v. Henry Holt & Co.*, 991
F.2d 563, 566 (9th Cir. 1993) (finding "substantial similarity analysis … inapposite to the copying

5    issue because appellees admit that they in fact copied").

6          While the *Ninth Circuit Manual of Model Civil Jury Instructions* do not include this
instruction, that is likely because in "most copyright cases" such evidence is not available.  *Norse*,

7    991 F.2d at 566.  But because such evidence will be presented here, a corresponding instruction is
warranted to make this form of proof clear to the jury.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1124328.06

**DISPUTED: Cisco's Final Instruction No. 37 re Copyright—Copying (Indirect Evidence)[55]**

Alternatively, even absent direct evidence, Cisco may show that Arista copied from Cisco's copyrighted works through indirect evidence by proving by a preponderance of the evidence that:

1. Arista had access to Cisco's copyrighted works and;

2. There are substantial similarities between Arista's works and the original elements of Cisco's works.

**Cisco's Position:**

Cisco's proposed instruction tracks the first paragraph of Instruction No. 17.16 of the *Ninth Circuit Manual of Model Civil Jury Instructions* ("*Model*") in form and substance.

Arista's proposed instruction should be rejected. *First*, Arista's proposed instruction improperly states the burden of proof twice. The Court should follow the *Model* instructions as written. *Second*, Arista's proposed instruction improperly departs from the *Model* by inserting a different standard for indirect proof of copying, *i.e.*, that Arista's works need to be proved "virtually identical" rather than "substantially similar" to Cisco's in order for the jury to find copying (and without mentioning the original elements). This instruction thus presupposes that the protection for Cisco's works is "thin," which Cisco vigorously disputes for reasons set forth in Cisco's filtration/protectability filings that are pending before the Court, which establish that the asserted works or portions thereof are protectable in their entirety. *See* Dkt. No. 653 (Cisco's Response Brief on Analytic Dissection) at 10-12 (discussing scope of protection and proper test); *see also* Dkt. Nos. 455 (Cisco's Trial Brief); 456 (Arista's Trial Brief); 505 (Cisco's Reply); 506 (Arista's Reply); 550-1 & 550-2 (Cisco's Submission on Protectable Elements); 585 (Arista's Response on Protectable Elements); 619 (Cisco's Dissection and Filtration Brief). Should the Court find otherwise before or after the close of evidence, *see Harper House v. Thomas Nelson*, 889 F.2d 197, 208-09 (9th Cir. 1989); *Oracle Am., Inc. v. Google Inc.*, 10-cv-3561-WHA, Dkt. 584 at 1 (copyrightability issues are "best left until after the judge has heard the evidence at trial"), *id.* Dkt. 620 at 1 (declining to address instructions on copyrightability until after close of evidence), Cisco respectfully reserves the right to propose an instruction regarding the applicable scope.

---

[55] Instruction No. 17.16, *Ninth Circuit Manual of Model Civil Jury Instructions* (2007); *Brocade Commc'ns Sys. v. A10 Networks, Inc.*, 873 F. Supp. 2d 1192, 1218-19 (N.D. Cal. 2012) ("In the absence of direct evidence of copying, … 'copying' may be shown by proving access to the copyrighted work and substantial similarity between the works.").

## **DISPUTED: Arista's Final Instruction No. 37 re Copyright—Copying**[56]

[Arista's Disputed Instruction 37 is addressed to Cisco's Disputed Instructions 36 and 37]

Cisco has the burden of proving that Arista copied protected elements from Cisco's copyrighted works. Copying may be established by direct evidence.  Cisco may also show copying by circumstantial evidence.[57]

To prove copying by circumstantial evidence, Cisco may show that Arista copied from the works by proving by a preponderance of the evidence that Arista had access to Cisco's copyrighted works and that Arista's works are virtually identical[58] to Cisco's copyrighted works.[59]

---

[56]   Ninth Circuit Model Jury Instruction 17.16.

[57]   ABA Model Jury Instruction 1.5.2 (Copyright, Trademark, and Trade Dress Litigation) ("Copying may be established, as is the case with other facts, by direct or circumstantial evidence").

[58] *Mattel, Inc. v. MGA Entm't, Inc.*, 616 F.3d 904, 913–14 (9th Cir. 2010), *as amended on denial of reh'g* (Oct. 21, 2010) ("If there's only a narrow range of expression (for example, there are only so many ways to paint a red bouncy ball on blank canvas), then copyright protection is 'thin' and a work must be 'virtually identical' to infringe"; intrinsic tests asks "whether an ordinary reasonable observer would consider the copyrighted and challenged works substantially similar (or virtually identical)" as appropriate); *Ets-Hokin v. Skyy Spirits, Inc.*, 323 F.3d 763, 766 (9th Cir. 2003); *Satava v. Lowry*, 323 F.3d 805, 812 (9th Cir. 2003) ("Satava possesses a thin copyright that protects against only virtually identical copying."); *Apple Computer, Inc. v. Microsoft Corp.*, 35 F.3d 1435, 1439 (9th Cir. 1994) ("When the range of protectable and unauthorized expression is narrow, the appropriate standard for illicit copying is virtual identity."); *Diamond Foods, Inc. v. Hottrix, LLC*, No. 14-CV-03162-BLF, 2016 WL 3880797, at *8 (N.D. Cal. July 18, 2016) ("If, on the other hand, the range of possible expression is narrow, the protection is  'thin' and a work must be 'virtually identical' to infringe.") (internal quotation marks omitted); 4-13 Nimmer on Copyright § 13.03[A][4].

[59] *Dream Games of Arizona, Inc. v. PC Onsite*, 561 F.3d 983, 988 (9th Cir. 2009) ("To allow the possibility of such a finding [of infringement], the jury must be allowed to see *the complete work*.") (emphasis added); *Apple Computer, Inc. v. Microsoft Corp.*, 35 F.3d 1435, 1443 (9th Cir. 1994) ("Depending on the degree of protection, the court must set the appropriate standard for a subjective comparison of the works to determine whether, *as a whole*, they are sufficiently similar to support a finding of illicit copying."); (emphasis added); *id.* at 1446 ("Under *Harper House* and *Frybarger*, there can be no infringement unless *the works* are virtually identical.") (emphasis added); *Newton v. Diamond*, 388 F.3d 1189, 1195 (9th Cir. 2004) ("This focus on the sample's relation to the plaintiff's work *as a whole* embodies the fundamental question in any infringement action") (emphasis added); *MiTek Holdings, Inc. v. Arce Eng'g Co.*, 89 F.3d 1548, 1560 (11th Cir. 1996) (in a substantial similarity case: "*Nimmer*, in using the term "substantial similarity," is referring to the program as a whole, not constituent elements of the program. The district court

SECOND AMENDED UNDISPUTED AND DISPUTED PROPOSED JURY INSTRUCTIONS
1124328.06

**Arista's Position:**

Cisco has split the Ninth Circuit's copying instruction into two separate instructions—Cisco's disputed instructions 36 and 37 related to "direct" and "indirect" evidence of copying. The Ninth Circuit model for copying does, in fact, omit that copying may be shown by direct evidence. Arista's solution to that omission is to add an appropriate sentence, taken directly from ABA Model Copyright Jury Instruction 1.5.2, stating as such. The jury will already have a separate direct/circumstantial evidence instruction. Nothing more is required.

Further, Cisco's "direct evidence" instruction is confusing. First, not all "witness testimony" constitutes direct evidence of copying. And the "striking similarity" doctrine applies to *indirect* evidence of copying, as Cisco's own authorities explain. It is confusing why Cisco would place the "striking similarity" doctrine with direct evidence. It does not belong there, and it is, by definition, circumstantial evidence of copying. *See Three Boys Music Corp. v. Bolton*, 212 F.3d 477, 485 (9th Cir. 2000) (discussing indirect access plus similarity test: "[I]n the absence of any proof of access, a copyright plaintiff can still make out a case of infringement by showing that the songs were 'strikingly similar.'").

But also, a striking similarity is not conclusive. The most recent statements by the Ninth Circuit correctly state that striking similarities between works "*may give rise to a permissible inference of copying*," which is a far cry from Cisco's statement that a striking similarity is direct evidence of copying. *Loomis v. Cornish*, No. 13-57093, 2016 WL 4578363, at *2 n.1, --- F.3d ---- (9th Cir. Sept. 2, 2016) (emphasis added); *see also Friedman v. Live Nation Merch., Inc.*, No. 14-55302, 2016 WL 4394585, at *7, --- F.3d ---- (9th Cir. Aug. 18, 2016) (quoting *Baxter v. MCA, Inc.*, 812 F.2d 421, 423 (9th Cir. 1987)). For example, while two identical photographs or musical compositions may give rise to a permissible inference of copying, two identical CLI commands named "ip address" that set an ip address, an industry-standard term, may not, by itself, lead a reasonable juror to believe that one was copied from the other.

_____

concluded that, in TrussPro, four of the five protected ACES elements were substantially similar. However, its ultimate conclusion was that since these elements lacked significance in the ACES program *as a whole*, the two programs *as a whole* were not substantially similar; therefore, there was no finding of infringement.") (Ital. in original); *Diamond Foods, Inc. v. Hottrix, LLC*, No. 14-CV-03162-BLF, 2016 WL 3880797, at *8 (N.D. Cal. July 18, 2016) ("If, on the other hand, the range of possible expression is narrow, the protection is 'thin' and *a work* must be 'virtually identical' to infringe.") (emphasis added) (internal quotation marks omitted); *Antonick v. Elec. Arts Inc.*, No. C 11-1543 CRB, 2014 WL 245018, at *6 (N.D. Cal. Jan. 22, 2014) (jury instructions in virtual identity case involving videogames "required the jury to compare 'the works to determine whether, *as a whole*, they are sufficiently similar to support a finding of illicit copying . . . . The works must be compared as a whole because the relevant inquiry is 'whether a substantial portion of the protectable material in the plaintiff's work was appropriated—not whether a substantial portion of defendant's work was derived from plaintiff's work' . . . . [C]ourts are to focus on the significance of the protected expression to plaintiff's entire work.") (emphasis added) (second quotation marks quoting *Newton v. Diamond*, 388 F.3d 1189, 1195 (9th Cir. 2004)); *see also id.* at 6–7 (reversing jury verdict of infringement because plaintiff failed to present evidence of plaintiff's work as a whole, disabling jury from making proper comparison for infringement intrinsic test).

1

2

3

4

5

6

7

8

9

10

11

12

        Turning to Cisco's "indirect evidence" copying instruction, Cisco asks the Court to apply the "substantial similarities" standard for copying, even though Cisco's works should be entitled to no more than thin copyright protection.  As the parties have addressed at length in analytic dissection, works are compared for either substantial similarity *or* virtual identity, depending on how broad the scope of copyright protection is.  The authorities cited by Arista in its proposed copying instruction bear out why the "virtual identity" standard should be applied in this case. *See, e.g., Mattel, Inc. v. MGA Entm't, Inc.*, 616 F.3d 904, 913–14 (9th Cir. 2010), *as amended on denial of reh'g* (Oct. 21, 2010) ("If there's only a narrow range of expression (for example, there are only so many ways to paint a red bouncy ball on blank canvas), then copyright protection is 'thin' and a work must be 'virtually identical' to infringe"; intrinsic tests asks "whether an ordinary reasonable observer would consider the copyrighted and challenged works substantially similar (or virtually identical)" as appropriate); *Ets-Hokin v. Skyy Spirits, Inc.*, 323 F.3d 763, 766 (9th Cir. 2003); *Satava v. Lowry*, 323 F.3d 805, 812 (9th Cir. 2003) ("Satava possesses a thin copyright that protects against only virtually identical copying."); *Apple Computer, Inc. v. Microsoft Corp.*, 35 F.3d 1435, 1439 (9th Cir. 1994) ("When the range of protectable and unauthorized expression is narrow, the appropriate standard for illicit copying is virtual identity."); *Diamond Foods, Inc. v. Hottrix, LLC*, No. 14-CV-03162-BLF, 2016 WL 3880797, at *8 (N.D. Cal. July 18, 2016) ("If, on the other hand, the range of possible expression is narrow, the protection is 'thin' and a work must be 'virtually identical' to infringe.") (internal quotation marks omitted); 4-13 Nimmer on Copyright § 13.03[A][4].

13

14

15

        If the "virtual identity" standard applies here, the jury should compare the works for virtual identity at the copying step as well as at the separate infringement step.  It would make little sense to ask the jury to decide copying based on substantial similarity, only to then apply the virtual identity standard when the jury decides whether the copying rises to the level of infringement.

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## **STIPULATED: Final Instruction No. 38 re Copyright—Access**[60]

2     To establish indirect evidence of copying, Cisco must prove by a preponderance of the

3 evidence that Arista had access to Cisco's copyrighted works.  You may find that Arista had

4 access to Cisco's works if Arista had a reasonable opportunity to view, read, or copy Cisco's

5 works before Arista's work was created.

6     If you find that Arista did not have access to Cisco's works, you may still find that Arista

7 copied Cisco's works if there are striking similarities between the protectable elements of the

8 works.[61]

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

---

[60]  Instruction No. 17.17, *Ninth Circuit Manual of Model Civil Jury Instructions* (2007); *Sid & Marty Krofft Television Prods., Inc. v. McDonald's Corp.*, 562 F.2d 1157, 1172 (9th Cir. 1977).
[61]  *Three Boys Music Corp. v. Bolton*, 212 F.3d 477, 483 (9th Cir. 2000) (in absence of any proof of access, copyright plaintiff can still make out case of infringement by showing that songs were "strikingly similar").

1

**<u>DISPUTED: Cisco's Final Instruction No. 39 re Copyright—Substantial Similarity</u>**

2

[Cisco's Disputed Instruction 39 is addressed to Arista's Disputed Instructions 40 – 45]

3

4

Cisco claims that certain elements of its user interface and documentation are substantially

5

similar to elements of Arista's user interface and documentation.

6

Substantial similarity is evaluated by comparing the original elements of Cisco's user

7

interface and documentation to Arista's user interface and documentation to see if Arista's works

8

are substantially similar to original elements of Cisco's copyrighted works.[62]

9

In determining whether Cisco's and Arista's user interface and documentation are

10

substantially similar, both the qualitative and quantitative similarities should be taken into

11

account.[63]  Substantial similarity does not require the works to be identical or even almost

12

identical.[64]  For example, if Arista had a high degree of access to Cisco's copyrighted user

13

interface, less overall similarity is required.[65]

14

_____

15

[62]  *Apple Comp., Inc. v. Microsoft Corp.*, 35 F.3d 1435, 1446 (9th Cir. 1994); *Engineering*

16

*Dynamics, Inc. v. Structural Software, Inc.*, 46 F.3d 408, 410 (5th Cir. 1995).

[63]  *Newton v. Diamond*, 388 F.3d 1189, 1195 (9th Cir. 2004) ("Substantiality is measured by

17

considering the qualitative and quantitative significance of the copied portion in relation to the
plaintiff's work as a whole.").

18

[64]  *Landsberg v. Scrabble Crossword Game Players, Inc.,* 736 F.2d 485, 488 (9th Cir. 1984)

19

("[A] new work incorporating that idea need not be a verbatim copy or close paraphrase of an
earlier work to infringe that work.  A resemblance in details of setting, incident, or

20

characterization that falls short of close paraphrase may be enough to establish substantial
similarity and infringement."); *Kepner-Tregoe, Inc. v. Leadership Software*, 12 F.3d 527, 533 (5th

21

Cir. 1994) (although defendant's modified work was not identical to plaintiff's, the modifications
did not dispel the similarity of expression shared).

22

[65]  Instruction No. 17.16, *Ninth Circuit Manual of Model Civil Jury Instructions* (2007)

23

(Supplemental Instruction); *Benay v. Warner Bros. Entm't, Inc.*, 607 F.3d 620, 625 (9th Cir. 2010)
("Under the 'inverse ratio' rule, if a defendant had access to a copyrighted work, the plaintiff may

24

show infringement based on a lesser degree of similarity between the copyrighted work and the
allegedly infringing work."); *Swirsky v. Carey*, 376 F.3d 841, 844-45 (9th Cir. 2004) (when high

25

degree of access is shown, lower standard of proof of substantial similarity is required and noting
that this burden is carried by plaintiff); *Rice v. Fox Broad. Co.*, 330 F.3d 1170, 1178 (9th Cir.

26

2003) (under "inverse ratio rule," court requires lower standard of proof of substantial similarity
when high degree of access is shown and "a prominent factor" in using inverse ratio analysis is

27

"concession of access by the defendant to the plaintiff's copyrighted work"); *Three Boys Music*

28

*Corp. v. Bolton*, 212 F.3d 477, 488 (9th Cir. 2000)  (rule "requires a lesser showing of substantial

1    Even if the amount of similar material is quantitatively small, if it is qualitatively

2  important, you may properly find substantial similarity.[66]  For example, a small portion of the

3  protected elements of Cisco's user interface may nonetheless give it distinctive features or may

4  make it especially creative or desirable.  In such a case, a finding of substantial similarity may be

5  appropriate.[67]

6    In order for you to find infringement it is not necessary to find that a large fraction of the

7  protectable elements of Cisco's work was copied.  Similarly, substantiality is not determined by

8  the percentage of Arista's work that was not copied.[68]

9

10   **Cisco's Position:**

11    Cisco's proposed instruction is a clear, concise and accurate statement of the appropriate

12  legal standard supported by the extensive cited authority, including the Supplemental Instruction

13  to Instruction No. 17.16 of the *Ninth Circuit Manual of Model Civil Jury Instructions*; *see also*

_____

15  similarity if there is a strong showing of access" but noting that "[w]e have never held…the
    inverse … [that] a weak showing of access requires a stronger showing of substantial similarity.").

16  [66]  *Swirsky v. Carey*, 376 F.3d 841, 852 (9th Cir. 2004) ("even if a copied portion be relatively
    small in proportion to the entire work, if qualitatively important, the finder of fact may properly
17  find substantial similarity"); *Baxter v. MCA, Inc.*, 812 F.2d 421, 425 (9th Cir. 1987) ("Even if a
    copied portion be relatively small in proportion to the entire work, if qualitatively important, the
18  finder of fact may properly find substantial similarity."); *Worth v. Selchow & Righter Co.*, 827
    F.2d 569, 570 n. 1 (9th Cir. 1987) ("[A] determination of the qualitative importance of the
19  material to the plaintiff's work is more significant than a quantitative calculation of the portion
    allegedly appropriated by the defendant."); *Apple Computer, Inc. v. Microsoft, Corp.*, 821 F. Supp.
20  616, 624 (N.D. Cal. 1993), aff'd, 35 F.3d 1435 (9th Cir. 1994) ("quantitatively insignificant
    infringement may be substantial if the material is qualitatively important to plaintiff's work")  .
21  [67]  *Oracle Am., Inc. v. Google Inc.*, 750 F.3d 1339, 1379 (Fed. Cir. 2014) (affirming jury
22  verdict of copyright infringement where defendant copied nine lines out of 2.8 million lines of
    code because the copied material was "qualitatively significant"); *Brocade Commc'ns Sys. v. A10
23  Networks, Inc.*, No. 10-cv-3428, 2013 WL 831528, at *8 (N.D. Cal. Jan. 10, 2013) (affirming jury
    verdict of copyright infringement and explaining that "[a]lthough [defendant] points to the ratio
24  between the 145 lines of infringing code and the 10 million lines of code in [plaintiff's] product,
    that ratio fails to account for the evidence suggesting the importance of the implementing code to
25  [plaintiff's] software.").
26  [68]  *Worth v. Selchow & Righter Co.*, 827 F.2d 569, 570 n. 1 (9th Cir. 1987) ("The relevant
    inquiry is whether a substantial portion of the protectible material in the plaintiff's work was
27  appropriated—not whether a substantial portion of defendant's work was derived from plaintiff's
    work.").
28

1    *Brown Bag Software v. Symantec Corp.*, 960 F.2d 1465, 1475-77 (9th Cir. 1992) (applying
     substantial similarity test).

2
            Arista's proposed instruction is confusing, prejudicial, and does not accurately reflect the
3    proper legal test.  *First*, Arista confusingly uses the term "substantial" in two ways: (1) to refer to
     the degree of similarity ("substantially similar"); and (2) to refer to the underlying material itself
4    ("substantial protected material").  There is, however, no such thing as "substantial protected
     matter"—only matter that is "substantially similar."  *Second*, Arista's instruction provides a biased
5    example, improperly directing the jury to "not find infringement" if a "small amount" of
     "relatively unimportant protected matter" has been copied.  Arista's instruction, however, does not
6    make clear whether it is referring to a small portion of protectable matter, or to the entirety of
     protectable matter, which may be a "small amount" but is nonetheless the entirety of the matter at
7    issue.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1    **DISPUTED: Arista's Final Instruction No. 39 re: Copying—Substantial Similarity**[69]

2        [To be used only if the Court rules that the "substantially similar" infringement tests

3    applies to any part of Cisco's copyright claims.]

4        When considering whether the works as a whole are substantially similar, you may find

5    copying if the matter copied from plaintiff's work, as viewed by an ordinary reasonable observer,

6    includes substantial protected matter.  Substantiality is determined by considering both the

7    amount, or quantity, and the significance, or quality, of the protected matter copied by Arista.

8    You should not find copying if only a small amount of relatively unimportant protected matter has

9    been copied.  However, the significance of the copied protected matter to plaintiff's work may

10    outweigh the fact that not a large amount of material has been copied.

11

12

13    **Arista's Position:**

14        Instruction 39 is the second half of the test for finding factual copying: substantial
similarity.  The Ninth Circuit does not provide a model, but the ABA does.  Arista has adopted the

15    ABA's model with one exception: it has replaced the word "infringing" with "copying," because
Cisco must do more than prove copying in order to prove infringement; it must also show that,

16    when compared as a whole, the copying was sufficient to constitute infringement.  (*See* Disputed
Instruction 40; *See* Ninth Circuit Model Jury Instruction 17.0 (detailing jury steps in determining

17    infringement); ABA Model Jury Instruction 1.5.8 (Copyright, Trademark, and Trade Dress
Litigation); Patry on Copyright § 9:59–9:60; 4-13 Nimmer on Copyright § 13.03[A]; *Mattel, Inc.*

18    *v. MGA Entm't, Inc.*, 616 F.3d 904, 913 (9th Cir. 2010), *as amended on denial of reh'g* (Oct. 21,
2010) (post-verdict decision discussing jury's task following dissection); *Benay v. Warner Bros.*

19    *Entm't*, 607 F.3d 620, 624 (9th Cir. 2010) (discussing extrinsic  and intrinsic tests); *Apple*

20    *Computer, Inc. v. Microsoft Corp.*, 35 F.3d 1435, 1442 (9th Cir. 1994) (same).

21        If the Court rules that any portion of Cisco's works is entitled to broad copyright

22    protection, it would thus instruct the jury to compare the works for "substantial similarity" as well.
The jury will need guidance on the meaning of that term.  Arista proposes that the Court adopt

23    ABA model instruction 1.5.8, which provides clear, neutral guidance on the jury's task.  Cisco's
Instruction 39, by contrast, does not stem from any model instruction.  Moreover, Cisco's draft

24    includes an extensive prejudicial discussion that is not supported by the cases Cisco cites and
slants the analysis in Cisco's favor, including a one-sided example of "distinctive features" in

25    Cisco's works.  The Court should adopt the neutral, straightforward definition of "substantial

26

27    [69] This paragraph is taken from ABA Model Jury Instruction 1.5.8 (Copyright, Trademark, and
Trade Dress Litigation), and includes verbatim the portions that are relevant to this case.  *See also*

28    Patry on Copyright § 9:59–9:60; 4-13 Nimmer on Copyright § 13.03[A].

similarity" provided by the ABA.

1    **DISPUTED: Cisco's Position on Arista's Final Instruction No. 41 re Infringement Analysis**

2          Cisco's position is that no such instruction should be given.

3

4    **Cisco's Position:**

5          Arista's proposed instruction should be rejected.  Cisco's proposed Instruction No. 39,
     *supra*, provides sufficient flexibility to the jury to evaluate both quantitative and qualitative
6    similarities, as required by Cisco's cited authorities including the flexibility to determine the
     degree of similarity necessarily to establish actionable copying.
7

8          Moreover, Arista's proposed instruction is misleading and confusing to the jury.  *First*,
     Arista's instruction includes elements that have already been addressed in the Court's other
9    instructions and thus are unnecessarily duplicative.  *See, e.g.* Instruction Nos. 25 (Subject Matter),
     27 (Ideas and Expressions), 32 (Originality), 33 (Compilations), 34 (Authorship), 60 (Scènes à
10   Faire), 61 (Merger).  It is unduly prejudicial to Cisco for the Court to repeat what is not protected
     by copyright without also addressing what is protected by copyright (*e.g.*, the selection and
11   arrangement of even factual elements, the expression of functions, the particular expression of
     ideas).
12

13         *Second*, the doctrines of merger and scènes à faire are affirmative defenses and should be
     addressed separately, as Arista bears the burden of proof on those defenses.  *See Oracle Am., Inc.
14   v. Google Inc.*, 750 F.3d 1339, 1358 (Fed. Cir. 2014) ("concepts of merger and scènes à faire are
     affirmative defenses to claims of infringement"); *Ninth Circuit Manual of Model Civil Jury
15   Instructions*, Instruction No. 1.2 (defendant bears burden of proof for affirmative defenses).  The
     Court should thus adopt Cisco's proposed Instruction Nos. 60 (Scènes à Faire) and 61 (Merger),
16   which properly addresses these affirmative defenses.  Similarly, the affirmative defenses of
     copyright misuse and waiver are equitable in nature and should not be put to the jury (and, indeed,
17   Arista has withdrawn its waiver jury instruction). *Third*, Arista's instruction that the works be
     compared "as a whole" is incorrect and confusing because it improperly encourages comparison of
18   the entire works and not a limited comparison of the protectable expression asserted by Cisco, the
     only relevant unit of measurement.  *See Harper House, Inc. v. Thomas Nelson, Inc.*, 889 F.2d 197,
19   206-08 (9th Cir. 1989) (finding instruction to constitute error requiring new trial where jury
     instructed to compare works "as a whole" rather than to determine whether defendants copied
20   "protectable expression").  Further, Arista's cited cases do not support the proposed instruction.
     For example, the quoted language from *Dream Games* concerned whether the jury could **consider**
21   the whole work, not whether that was the relevant unit of analysis.  To the contrary, "[t]he district
     court instructed the jury that 'to establish that PC Onsite is liable for infringement, Dream Games
22   must show that the accused screen displays are virtually identical to **protected elements** of
     corresponding screen displays of the Fast Action Bingo game.'" (emphasis added).  561 F.3d 983,
23   989 (9th Cir. 2009).  Arista's remaining citations similarly do not support its proposed instruction.

24         *Fourth*, Arista's instruction is prejudicial and unbalanced in that it asks the Court to instruct
25   on general categories of what is **not** protectable, but gives no instruction on what **is** protectable.

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Fifth*, as set forth in the filtration/dissection analysis that is the subject of pretrial briefing currently pending before the Court, see Dkt. No. 653 (Cisco's Response Brief on Analytic Dissection) at 10-12 (discussing scope of protection and proper test); *see also* Dkt. Nos. 455 (Cisco's Trial Brief); 456 (Arista's Trial Brief); 505 (Cisco's Reply); 506 (Arista's Reply); 550-1 & 550-2 (Cisco's Submission on Protectable Elements); 585 (Arista's Response on Protectable Elements), Cisco's asserted works or the relevant portions thereof are original and protectable in their entirety and subject to broad (not "thin") copyright protection because there are multiple ways in which the ideas underlying the asserted works could be expressed.  Further, Arista's instruction that the works be compared "as a whole" is incorrect and confusing and incompatible with Arista's other instructions, see Arista's Proposed Instruction No. 40, which improperly encourage comparison of the entire works (including both protectable and unprotectable expression), and not a limited comparison of the protectable expression, the only relevant unit of measurement, to corresponding elements in the accused works.  *See Harper House, Inc. v. Thomas Nelson, Inc.*, 889 F.2d 197, 206-08 (9th Cir. 1989) (finding instruction to constitute error requiring new trial where jury instructed to compare works "as a whole" rather then instructing whether defendants copied "protectable expression").  Should the Court hold otherwise before or after the close of evidence, see Harper House v. Thomas Nelson, 889 F.2d 197, 208-09 (9th Cir. 1989); Oracle Am., Inc. v. Google Inc., 10-cv-3561-WHA, Dkt. 584 at 1 (copyrightability issues are "best left until after the judge has heard the evidence at trial"), id. Dkt. 620 at 1 (declining to address instructions on copyrightability until after close of evidence), Cisco respectfully reserves its right to propose an instruction distinguishing protectable from any unprotectable elements.

1

**<u>DISPUTED: Arista's Final Instruction No. 41 re Infringement Analysis</u>**

2

      If you find that Arista copied elements of Cisco's works, you must next determine whether

3

Arista's copying was sufficient to constitute copyright infringement.[70]  Cisco must prove that

4

Arista copied a protected part of a copyrighted work owned by Cisco, and that Arista's work is

5

virtually identical[71] to one or more of Cisco's copyrighted works.

6

      Copyright protection does not extend to all the elements of a copyrighted work.  Elements

7

to which copyright protection extends are called "protected matter," and other elements are

8

"unprotected matter."  Unprotected matter is not entitled to copyright protection and therefore may

9

be copied by another author.[72]

10

      There are various types of unprotected matter.  They include:

11

      1.  A portion of a work that is not original to the author;

12

      2.  A portion of the work that is in the public domain;

13

      3.  An idea, concept, principle, discovery, fact, actual event, process, or method

14

---

15

16

   [70] Ninth Circuit Model Jury Instruction 17.0 (detailing jury steps in determining infringement); ABA Model Jury Instruction 1.5.8 (Copyright, Trademark, and Trade Dress Litigation); Patry on Copyright § 9:59–9:60; 4-13 Nimmer on Copyright § 13.03[A]; *Mattel, Inc. v. MGA Entm't, Inc.*,

17

616 F.3d 904, 913 (9th Cir. 2010), *as amended on denial of reh'g* (Oct. 21, 2010) (post-verdict

18

decision discussing jury's task following dissection); *Benay v. Warner Bros. Entm't*, 607 F.3d 620, 624 (9th Cir. 2010) (discussing extrinsic  and intrinsic tests); *Apple Computer, Inc. v. Microsoft Corp.*, 35 F.3d 1435, 1442 (9th Cir. 1994) (same).

19

   [71] *Mattel, Inc. v. MGA Entm't, Inc.*, 616 F.3d 904, 913–14 (9th Cir. 2010), *as amended on*

20

*denial of reh'g* (Oct. 21, 2010) ("If there's only a narrow range of expression (for example, there are only so many ways to paint a red bouncy ball on blank canvas), then copyright protection is

21

'thin' and a work must be 'virtually identical' to infringe"; intrinsic tests asks "whether an

22

ordinary reasonable observer would consider the copyrighted and challenged works substantially similar (or virtually identical)" as appropriate); *Ets-Hokin v. Skyy Spirits, Inc.*, 323 F.3d 763, 766

23

(9th Cir. 2003); *Satava v. Lowry*, 323 F.3d 805, 812 (9th Cir. 2003) ("Satava possesses a thin copyright that protects against only virtually identical copying."); *Apple Computer, Inc. v.*

24

*Microsoft Corp.*, 35 F.3d 1435, 1439 (9th Cir. 1994) ("When the range of protectable and

25

unauthorized expression is narrow, the appropriate standard for illicit copying is virtual identity."); *Diamond Foods, Inc. v. Hottrix, LLC*, No. 14-CV-03162-BLF, 2016 WL 3880797, at *8 (N.D.

26

Cal. July 18, 2016) ("If, on the other hand, the range of possible expression is narrow, the protection is  'thin' and a work must be 'virtually identical' to infringe.") (internal quotation

27

marks omitted); 4-13 Nimmer on Copyright § 13.03[A][4].

   [72]  ABA Model Jury Instructions, Copyright, Trademark, and Trade Dress Litigation,

28

Instruction 1.4.2.  There is no analogous Ninth Circuit Model Jury Instruction.

1    expressed or described in a work;

2    4.   A particular means of expression that is unprotected under the doctrine of merger,

3    which I will explain in a moment.

4    5.   Content that is unprotected under the doctrine of scènes à faire, which I will explain

5    in a moment; or

6    6.   Parts of a computer program considered to be ideas, common programming

7    techniques, or that are required in order for the program to perform its function

8    efficiently and effectively given the computer hardware and other software with

9    which the program operates.[73]

10    7.   [insert particular unprotected elements based on analytic dissection]

11    If you find that Arista copied any elements of Cisco's works that are protected, you must

12    next compare the works as a whole to determine whether Arista's works and Cisco's works are

13    virtually identical,[74] leaving out of your consideration any elements that you have found are

14    _____

15    [73]   ABA Model Jury Instructions, Copyright, Trademark, and Trade Dress Litigation,
16    Instruction 1.4.3 (citing cases and treatises).  There is no analogous Ninth Circuit Model Jury
      Instruction.

17    [74] *Dream Games of Arizona, Inc. v. PC Onsite*, 561 F.3d 983, 988 (9th Cir. 2009) ("To allow
      the possibility of such a finding [of infringement], the jury must be allowed to see *the complete*
18    *work*.") (emphasis added); *Apple Computer, Inc. v. Microsoft Corp.*, 35 F.3d 1435, 1443 (9th Cir.
      1994) ("Depending on the degree of protection, the court must set the appropriate standard for a
19    subjective comparison of the works to determine whether, *as a whole*, they are sufficiently similar
      to support a finding of illicit copying.") (emphasis added); *id.* at 1446 ("Under *Harper House* and
20    *Frybarger*, there can be no infringement unless *the works* are virtually identical.") (emphasis
      added); *Newton v. Diamond*, 388 F.3d 1189, 1195 (9th Cir. 2004) ("This focus on the sample's
21    relation to the plaintiff's work *as a whole* embodies the fundamental question in any infringement
      action") (emphasis added); *MiTek Holdings, Inc. v. Arce Eng'g Co.*, 89 F.3d 1548, 1560 (11th Cir.
22    1996) (in a substantial similarity case: "*Nimmer*, in using the term "substantial similarity," is
      referring to the program as a whole, not constituent elements of the program. The district court
23    concluded that, in TrussPro, four of the five protected ACES elements were substantially similar.
      However, its ultimate conclusion was that since these elements lacked significance in the ACES
24    program as a whole, the two programs as a whole were not substantially similar; therefore, there
25    was no finding of infringement."); *Diamond Foods, Inc. v. Hottrix, LLC*, No. 14-CV-03162-BLF,
      2016 WL 3880797, at *8 (N.D. Cal. July 18, 2016) ("If, on the other hand, the range of possible
26    expression is narrow, the protection is 'thin' and *a work* must be 'virtually identical' to infringe.")
27    (emphasis added) (internal quotation marks omitted); *Antonick v. Elec. Arts Inc.*, No. C 11-1543
28    CRB, 2014 WL 245018, at *6 (N.D. Cal. Jan. 22, 2014) (jury instructions in virtual identity case

1  unprotected, or that I have instructed you are unprotected.[75]

2       If you find that the works as a whole are not virtually identical, then you cannot find that

3  Arista infringed Cisco's copyrights.  If you find that the works as a whole are virtually identical,

4  then you may find that Arista infringed Cisco's copyrights, subject to Arista's affirmative defenses

5  of fair use, copyright misuse, abandonment, and waiver.[76]

6       It is my job to isolate and identify for you the "work as a whole."  You must take my

7  identification as controlling if and when this comes up in your deliberations.

8       For purposes of this case, I have determined that Cisco's "work as a whole" is [to be

9  determined in analytic dissection].  I have also determined that Arista's "work as a whole" is [to

10

11  _____

12  involving videogames "required the jury to compare 'the works to determine whether, *as a whole*,
   they are sufficiently similar to support a finding of illicit copying . . . .  The works must be

13  compared as a whole because the relevant inquiry is 'whether a substantial portion of the
   protectable material in the plaintiff's work was appropriated—not whether a substantial portion of

14  defendant's work was derived from plaintiff's work' . . . .  [C]ourts are to focus on the significance
   of the protected expression to plaintiff's entire work.") (emphasis added) (second quotation marks

15  quoting *Newton v. Diamond*, 388 F.3d 1189, 1195 (9th Cir. 2004)); *see also id.* at 6–7 (reversing
   jury verdict of infringement because plaintiff failed to present evidence of plaintiff's work as a

16  whole, disabling jury from making proper comparison for infringement intrinsic test).

17  [75] *Dream Games of Arizona, Inc. v. PC Onsite*, 561 F.3d 983, 989 (9th Cir. 2009)
   ("Consideration of the whole work is proper under *Apple Computer* as long as 'the unprotectable

18  elements [are] identified.'") (quoting *Apple Computer*, 35 F.3d at 1446); *Harper House, Inc. v.
   Thomas Nelson, Inc.*, 889 F.2d 197, 207–08 (9th Cir. 1989) (ordering new trial where "the jury

19  instructions covering copyright infringement liability did not adequately distinguish between
   protectable and unprotectable material" because "given the negative connotations to 'copying,'

20  there was an obvious risk of an improper verdict for plaintiffs, and a need for further instructions
   to protect legitimate activity and avoid the suffocation of competition."); *Apple Computer, Inc. v.*

21  *Microsoft Corp.*, 35 F.3d 1435, 1446 (9th Cir. 1994) ("[T]he party claiming infringement may
   place no reliance upon any similarity in expression resulting from unprotectable elements . . . .

22  [T]he unprotectable elements have to be identified, or filtered, before the works can be considered
   as a whole.") (internal quotation marks omitted); *Swirsky v. Carey*, 376 F.3d 841, 845 (9th Cir.

23  2004), *as amended on denial of reh'g* (Aug. 24, 2004) ("Because the requirement is one of
   substantial similarity [or virtual identity where thin copyright protection applies] to protected

24  elements of the copyrighted work, it is essential to distinguish between the protected and
   unprotected material in a plaintiff's work.").

25

26  [76] *Mattel, Inc. v. MGA Entm't, Inc.*, 616 F.3d 904, 913 (9th Cir. 2010), *as amended on denial of*
   *reh'g* (Oct. 21, 2010) (post-verdict decision discussing jury's task following dissection); *Benay v.*

27  *Warner Bros. Entm't*, 607 F.3d 620, 624 (9th Cir. 2010) (discussing extrinsic  and intrinsic tests);
   *Apple Computer, Inc. v. Microsoft Corp.*, 35 F.3d 1435, 1442 (9th Cir. 1994) (same).

28

1   be determined in analytic dissection].[77]

2

3   **Arista's Position:**

4       The Ninth Circuit leaves to the Court and the parties the task of explaining to the jury the
    extrinsic and intrinsic tests for copyright infringement.  Ninth Circuit Model Jury Instruction
5   17.18.   Apparently, Cisco's response to the Ninth Circuit's request is to leave the jury in the dark
6   as to the jury's task, and worse, leaving the jury with the wrong impression that copying by itself
    is enough to constitute infringement.  Nowhere in Cisco's proposed instructions does it
7   acknowledge that the jury is *required* to perform the intrinsic test, which involves comparing the
    works *as a whole*.
8

9       If the Court were to adopt only Cisco's instructions, it would conflate two elements of an
    infringement case.  Copying by itself does not constitute copyright infringement.  Other
10  instructions have already covered the question of proving copying by direct or circumstantial
    evidence.  This instruction must cover the next step: whether the copying is sufficient to constitute
11  infringement.  *See* Ninth Circuit Model Jury Instruction 17.0 (detailing jury steps in determining
    infringement); ABA Model Jury Instruction 1.5.8 (Copyright, Trademark, and Trade Dress
12  Litigation); Patry on Copyright § 9:59–9:60; 4-13 Nimmer on Copyright § 13.03[A].

13      For example, in *Mattel, Inc. v. MGA Entm't, Inc.*, 616 F.3d 904, 913 (9th Cir. 2010), *as
14  amended on denial of reh'g* (Oct. 21, 2010), access and copying were not disputed; there was no
    question the doll designer worked with the copyright owner to develop the sculpt and sketches that
15  were then adapted.  Nevertheless, the court explained that the infringement test requires the
    filtering out of unprotected elements and a comparison of the works as a whole.  Similarly, in
16  *Apple Computer, Inc. v. Microsoft Corp.*, 35 F.3d 1435, 1442 (9th Cir. 1994), access was
    undisputed and the parties litigated a license to copy many of the features.  Regardless, the court
17  applied the extrinsic/intrinsic infringement test and dissected the works.  The Ninth Circuit
18  explained that the virtual identity and substantial similarity tests are the "standard for *illicit*
    copying," which is a counterpart to the question of factual copying.  *Id.* at 1439.  The copying test
19  asks what was copied.  The infringement tests asks how much protected expression was copied.

20      That is exactly how Cisco characterized the infringement test at summary judgment when
    it asked for partial summary judgment of factual copying; Cisco claimed that granting its motion
21  would mean that "Arista will remain free at trial to prove that its copying was not actionable."
    ECF 396-3 at 3:8–9.  At the summary judgment hearing, Cisco predicted that this Court would
22  instruct the jury as follows: "You will be able to tell the jury, okay jury, I have told you that Arista
23  copied, but just because they copied doesn't mean it's actionable coping.  To find actionable
    copying, you the ladies and gentlemen of the jury will have to decide whether Arista copied
24  protect[able] elements of our CLI in such a way to satisfy the extrinsic and intrinsic similarity test

25  _____

26      [77]  *Oracle America, Inc. v. Google, Inc.*, No. 10-cv-03561-WHA, ECF 1017 (April 30, 2012)
27  (Jury Instruction 29) ("It is my job to isolate and identify for you the 'work as a whole.'  You must
    take my identification as controlling if and when this comes up in your deliberations . . . .  For
28  purposes of this case, I have determined that the 'work as a whole' means the following:").

                                                          -83-                    Case No. 5:14-cv-5344-BLF

and whether the look and feel of their CLI is the same as our CLI."  ECF 437 (MSJ Hrg. Tr.) at 14:16–23.  Cisco now proposes not to include any such instruction.

As part of the extrinsic/intrinsic test, it is undisputed that, to find that copying is sufficient to constitute infringement, the jury is required to compare the works as a whole, while leaving out of their analysis the unprotected elements.  The Court must determine in analytic dissection whether that comparison must be made for substantial similarity or virtual identity (Ninth Circuit Model Instruction 17.18 is titled "substantial similarity" as a placeholder, but cites dozens of "virtual identity" cases as well.  The title of the instruction should comport to the standard this Court chooses for the comparison).  *See Mattel, Inc. v. MGA Entm't, Inc.*, 616 F.3d 904, 913–14 (9th Cir. 2010), *as amended on denial of reh'g* (Oct. 21, 2010) ("If there's only a narrow range of expression (for example, there are only so many ways to paint a red bouncy ball on blank canvas), then copyright protection is 'thin' and a work must be 'virtually identical' to infringe"; intrinsic tests asks "whether an ordinary reasonable observer would consider the copyrighted and challenged works substantially similar (or virtually identical)" as appropriate); *Ets-Hokin v. Skyy Spirits, Inc.*, 323 F.3d 763, 766 (9th Cir. 2003); *Satava v. Lowry*, 323 F.3d 805, 812 (9th Cir. 2003) ("Satava possesses a thin copyright that protects against only virtually identical copying."); *Apple Computer, Inc. v. Microsoft Corp.*, 35 F.3d 1435, 1439 (9th Cir. 1994) ("When the range of protectable and unauthorized expression is narrow, the appropriate standard for illicit copying is virtual identity."); *Diamond Foods, Inc. v. Hottrix, LLC*, No. 14-CV-03162-BLF, 2016 WL 3880797, at *8 (N.D. Cal. July 18, 2016) ("If, on the other hand, the range of possible expression is narrow, the protection is  'thin' and a work must be 'virtually identical' to infringe.") (internal quotation marks omitted); 4-13 Nimmer on Copyright § 13.03[A][4].  But regardless of the scope of protection (virtual identity or substantial similarity), the comparison is one made of works *as a whole.  See Dream Games of Arizona, Inc. v. PC Onsite*, 561 F.3d 983, 988 (9th Cir. 2009) ("To allow the possibility of such a finding [of infringement], the jury must be allowed to see *the complete work.*") (emphasis added); *Apple Computer, Inc. v. Microsoft Corp.*, 35 F.3d 1435, 1443 (9th Cir. 1994) ("Depending on the degree of protection, the court must set the appropriate standard for a subjective comparison of the works to determine whether, *as a whole*, they are sufficiently similar to support a finding of illicit copying.") (emphasis added); *id.* at 1446 ("Under *Harper House* and *Frybarger*, there can be no infringement unless *the works* are virtually identical.") (emphasis added); *Diamond Foods, Inc. v. Hottrix, LLC*, No. 14-CV-03162-BLF, 2016 WL 3880797, at *8 (N.D. Cal. July 18, 2016) ("If, on the other hand, the range of possible expression is narrow, the protection is  'thin' and *a work* must be 'virtually identical' to infringe.") (emphasis added) (internal quotation marks omitted); additional authorities cited in Arista's proposed instruction.

Indeed, a verdict of copyright infringement that did not include a comparison of the works as a whole requires reversal of the jury's verdict.  *See Antonick v. Elec. Arts Inc.*, No. C 11-1543 CRB, 2014 WL 245018, at *6–7 (N.D. Cal. Jan. 22, 2014) (reversing jury verdict of infringement because plaintiff failed to present evidence of plaintiff's work as a whole, disabling jury from making proper comparison for infringement intrinsic test).

Arista's proposed paragraph on protected and unprotected copyrighted matter is based upon the ABA Model Jury Instructions, Copyright, Trademark, and Trade Dress Litigation, Instructions 1.4.2 and 1.4.3, and properly informs the jury in a neutral way that copyright protection does not extend to all elements of a copyrighted work.  Cisco does not and cannot dispute the fact that, under the copyright law, unprotected elements of a copyrighted work may be

1    copied by others, and Cisco has not articulated to Arista any prejudice that would result from this

2    instruction.  Nor could it, as the Court will determine before the jury is charged with these final

3    instructions what elements of Cisco's asserted copyrighted works are protected and unprotected

     matter under the copyright law, and will convey that information to the jury so that it can perform

4    the proper infringement analysis and comparison.  *See Apple Computer, Inc. v. Microsoft Corp.*,

     35 F.3d 1435, 1443 (9th Cir. 1994).  If the Court were to adopt only Cisco's instructions, however,

5    the jury would never hear a word about unprotected matter—a clear legal error.  *Harper House,*

6    *Inc. v. Thomas Nelson, Inc.*, 889 F.2d 197, 207–08 (9th Cir. 1989) (ordering new trial where "the

     jury instructions covering copyright infringement liability did not adequately distinguish between

7    protectable and unprotectable material" because "given the negative connotations to 'copying,'

     there was an obvious risk of an improper verdict for plaintiffs, and a need for further instructions

8    to protect legitimate activity and avoid the suffocation of competition."); *Apple Computer, Inc. v.*

     *Microsoft Corp.*, 35 F.3d 1435, 1446 (9th Cir. 1994) ("[T]he party claiming infringement may

9    place no reliance upon any similarity in expression resulting from unprotectable elements . . . .

     [T]he unprotectable elements have to be identified, or filtered, before the works can be considered

10   as a whole.") (internal quotation marks omitted); *Swirsky v. Carey*, 376 F.3d 841, 845 (9th Cir.

     2004), *as amended on denial of reh'g* (Aug. 24, 2004) ("Because the requirement is one of

11   substantial similarity [or virtual identity where thin copyright protection applies] to *protected*

     elements of the copyrighted work, it is essential to distinguish between the protected and

12   unprotected material in a plaintiff's work.") (ital. in original).

13          The final item in the list is intended to serve as a placeholder for the Court's findings and

     conclusions, and resulting instructions to the jury, on the unprotected matter in Cisco's asserted

14   works following the analytic dissection process, and to instruct the jury that such unprotected

15   matter may not be considered when comparing the works as a whole to determine whether they are

     virtually identical or not.  *See Apple Computer, Inc. v. Microsoft Corp.*, 35 F.3d 1435, 1443 (9th

16   Cir. 1994).

17          The final paragraphs of Arista's proposed instruction recognize that, to find that copying is

18   sufficient to constitute infringement, the jury is required to compare the works as a whole.  Indeed,

     a verdict of copyright infringement that did not include a comparison of the works as a whole

19   requires reversal of the jury's verdict.  *See Antonick v. Elec. Arts Inc.*, No. C 11-1543 CRB, 2014

     WL 245018, at *6–7 (N.D. Cal. Jan. 22, 2014) (reversing jury verdict of infringement because

20   plaintiff failed to present evidence of plaintiff's work as a whole, disabling jury from making

     proper comparison for infringement intrinsic test).

21          Finally, Arista notes here that, even though, when it suits its needs, Cisco would like to refer to its

22   asserted works as a monolithic singular work, the Court's definition of works as a whole must tell

23   the jury that infringement must be analyzed separately for each of the twenty-six copyright-

     registered works.  As one leading copyright treatise explains, "One danger that arises in cases of

24   multiple works is 'cherry-picking:' the plaintiff will select small portions from a number of works,

     and attempt to aggregate the amount of copying.  This approach was property rejected in *Kroencke*

25   *v. General Motors Corp.*, 270 F. Supp. 2d 441 (S.D.N.Y. 2003) and in *Damiano v. Sony Music*

     *Entertainment, Inc.*, 975 F. Supp. 623 (D.N.J. 1996), although the Second Circuit came

26   dangerously close to falling into the trap in Castle Rock Entm't, Inc. v. Publishing Group, Inc., 150

     F.3d 132 (2d Cir. 1998)."  3 Patry on Copyright § 9:66 (2016).  Cisco here wants to go one step

27   further: it wants to instruct the jury that it need not analyze the copyrighted works for infringement

28   separately, *and* it seeks to redefine its copyrights under a rogue "user interface" umbrella wholly

1  unsupported by the registrations or the law.  This Court should not fall into that trap: "each work
alleged to have been infringed *must be separately analyzed*."  *Id.* (emphasis added).

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**DISPUTED: Cisco's Final Instruction No. 46 re Copyright—Affirmative Defense: Fair Use[78]**

[Cisco's Disputed Instruction 46 is addressed to Arista's Disputed Instructions 47 – 59]

One who is not the owner of the copyright may use the copyrighted work in a reasonable way under the circumstances without the consent of the copyright owner if it would advance the public interest.  Such use of a copyrighted work is called a fair use.  The owner of a copyright cannot prevent others from making a fair use of the owner's copyrighted work.

Arista has the burden of proving its fair use defense by a preponderance of the evidence.[79]

In determining whether Arista's use of the Cisco's copyrighted works was fair, you should consider the following factors:

1. First, the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes.  This factor involves two sub-issues: (a) whether Arista's use is "transformative" or simply supplants Cisco's work, and (b) whether Arista's use is commercial in nature.[80]  A use is "transformative" only where it adds something new, with a further purpose or different character, altering the first with new expression, meaning or message.[81]  But copying a work to use it for an identical or competing purpose as the original, or in a manner that

---

[78] Instruction No. 17.21, *Ninth Circuit Manual of Model Civil Jury Instructions* (2007); *Synopsys, Inc. v. ATopTech, Inc.*, No. 13-cv-2965 (N.D. Cal.), ECF No. 688 at 14 (Final Instructions).

[79] Instruction No. 17.21, *Ninth Circuit Manual of Model Civil Jury Instructions* (2007); *Monge v. Maya Magazines, Inc.*, 688 F.3d 1164, 1170 (9th Cir. 2012) ("This affirmative defense … [is] aimed at whether the defendant's use was fair. As with all affirmative defenses, [] the defendant bears the burden of proof.").

[80] *Wall Data Inc. v. Los Angeles Cty. Sheriff's Dep't*, 447 F.3d 769, 778 (9th Cir. 2006) ("We first consider the nature of the work: whether the new work is transformative or simply supplants the original work, and whether the work is commercial in nature.").

[81] *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 579 (1994) (infringing work is transformative if it "adds something new, with a further purpose or different character, altering the first with new expression, meaning or message."); *Wall Data Inc. v. Los Angeles Cty. Sheriff's Dep't*, 447 F.3d 769, 778 (9th Cir. 2006) ("A use is considered transformative only where a defendant changes a plaintiff's copyrighted work or uses the plaintiff's copyrighted work in a different context such that the plaintiff's work is transformed into a new creation").

-87-                              Case No. 5:14-cv-5344-BLF
SECOND AMENDED UNDISPUTED AND DISPUTED PROPOSED JURY INSTRUCTIONS

1124328.06

1    tends to supplant or supersede the original, is not transformative.[82]  Further, a use is not

2    transformative where the user makes no alteration to the expressive content or message

3    of the original.[83]  As to the second sub-factor, where a defendant's use was for a

4    commercial purpose, this factor weighs against fair use.[84]

5        2.  The second factor is the nature of the copyrighted work.

6        3.  The third factor is the amount and substantiality of the portion used in relation to the

7            copyrighted work as a whole.  This factor evaluates both the quantity of the work taken

8            and the quality and importance of the portion taken.[85]  Copying a qualitatively

9            important portion of a copyrighted work weighs against fair use even if the copied

10           portion is quantitatively small.[86]

---

[82]  *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 578 (1994) (inquiry is whether the new work merely supersedes or supplants the original); *Oracle Am., Inc. v. Google Inc.*, 750 F.3d 1339, 1374 (Fed. Cir. 2014); *Wall Data Inc. v. Los Angeles Cty. Sheriff's Dep't*, 447 F.3d 769, 778 (9th Cir. 2006) ("The Sheriff's Department created exact copies of RUMBA's software.  It then put those copies to the identical purpose as the original software.  Such a use cannot be considered transformative.  *See Kelly v. Arriba Soft Corp.*, 336 F.3d 811, 819 (9th Cir. 2003) (finding that reproducing music CDs in computer MP3 format is not a transformative use because the resulting use of the copyrighted work was the same as the original use, i.e., entertainment). In cases where "'use is for the same intrinsic purpose as[the copyright holder's] ... such use seriously weakens a claimed fair use.' " *Worldwide Church of God v. Philadelphia Church of God, Inc.*, 227 F.3d 1110, 1117 (9th Cir. 2000) (quoting *Weissmann v. Freeman*, 868 F.2d 1313, 1324 (2d Cir. 1989)).").

[83]  *Oracle Am., Inc. v. Google Inc.*, 750 F.3d 1339, 1374 (Fed. Cir. 2014) ("A work is not transformative where the user 'makes no alteration to the *expressive content or message* of the original work.'") (quoting *Seltzer v. Green Day, Inc.*, 725 F.3d 1170, 1177 (9th Cir. 2013) (emphasis in original).

[84]  *Los Angeles News Serv. v. Reuters Television Int'l, Ltd.*, 149 F.3d 987, 994 (9th Cir. 1998) ("every commercial use of copyrighted material is presumptively an unfair exploitation of the monopoly privilege that belongs to the owner of the copyright."); *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 579 (1994) ("the more transformative the new work, the less will be the significance of other factors, like commercialism, that may weigh against a finding of fair use").

[85]  *Monge v. Maya Magazines, Inc.*, 688 F.3d 1164, 1178 (9th Cir. 2012) ("The third statutory factor in the fair use analysis is 'the amount and substantiality of the portion used in relation to the copyrighted work as a whole.' We examine both the quantitative and qualitative aspects of the portion of the copyrighted material taken.").

[86]  *Worth v. Selchow & Righter Co.*, 827 F.2d 569, 570 n. 1 (9th Cir. 1987) ("[A] determination of the qualitative importance of the material to the plaintiff's work is more significant than a quantitative calculation of the portion allegedly appropriated by the defendant."); *Apple Computer, Inc. v. Microsoft, Corp.*, 821 F. Supp. 616, 624 (N.D. Cal. 1993),

1        4.   The fourth factor is the effect on the potential market for or value of the copyrighted

2            work, including the effect on the potential market for or value of derivative works.

3            You should consider not only the extent of market harm caused by Arista's copying,

4            but also whether unrestricted and widespread conduct of the sort engaged in by Arista

5            would result in a substantially adverse impact on the potential market for the original

6            work.[87]  Where a defendant's use substitutes for the original, this factor weights against

7            fair use.[88]

8        5.   Finally, you may consider the propriety of Arista's conduct, including whether its use

9            of the copyrighted work was in bad faith.[89]

10       If you find that Arista proved by a preponderance of the evidence that it made a fair use of

11   Cisco's work, your verdict should be for Arista.

12

13   **Cisco's Position:**

14       Cisco's proposed instruction follows Instruction No. 17.21 from the *Ninth Circuit Manual*

15   *of Model Civil Jury Instructions* ("*Model*") in form and substance.  It is neutral, and provides an
     accurate summary of the principles of fair use, setting forth the applicable legal standard with

16   elaboration only where necessary, in accordance with the *Model*'s comments.  Cisco further notes
     that courts will often merely list the four fair use factors in setting forth instructions, *see Synopsys,*

17   *Inc. v. ATopTech, Inc.*, No. 13-cv-2965 (N.D. Cal.), ECF No. 688 at 14 (for computer program);
     thus, Cisco's instruction on fair use provides a concise and neutral explanation of the doctrine

18   without confusing the jury.

19       Arista's proposed instructions Nos. 47 – 59 should be rejected.  It is unduly excessive for

20   the Court to provide lengthy individual instructions to the jury on the single topic of fair use.
     Arista's instructions are almost exclusively derived from a single case where fair use was the sole

21   issue before the jury on remand and Arista cites no other authority for such extensive fair use
     instructions; in this case, such excessive instructions on a single defense are wholly unnecessary,

22   particularly where Cisco's proposed instruction sets forth all of the applicable standards.  Further,
     Arista's instructions are not concise or neutral, and include unnecessarily lengthy explanations and

23   deviations into policy.

24   _____

25   *aff'd*, 35 F.3d 1435 (9th Cir. 1994) ("quantitatively insignificant infringement may be substantial
     if the material is qualitatively important to plaintiff's work").

26       [87]  *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 590 (1994).
         [88]  *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 590 (1994).

27       [89]  *Los Angeles News Serv. v. KCAL-TV Channel 9*, 108 F.3d 1119, 1122 (9th Cir. 1997);
     *Fisher v. Dees*, 794 F.2d 432, 437 (9th Cir. 1986).

28

**DISPUTED: Arista's Position on Cisco's Final Instruction No. 46 re Copyright—Affirmative**

**Defense: Fair Use**

The fair use doctrine is necessary to "fulfill copyright's very purpose, [t]o promote the Progress of Science and useful Arts." *Campbell v. Acuff-Rose Music, Inc*., 510 U.S. 569, 575 (1994) (internal citations and quotations omitted). It is not an "occasionally tolerated departure from the grand conception of the copyright monopoly. To the contrary, it is a necessary part of the overall design." Leval, Toward a Fair Use Standard, 103 Harv. L. Rev. 1105, 1110 (1990); *see also* 4 Patry on Copyright § 10:1.50 ("Copyright is *not* a one-sided coin, only concerned with enforcing rights. Rather, copyright law seeks to achieve a balance that ultimately serves the public's, not authors' interests.") (italics in original).

It comes as no surprise, therefore, that fair use is one of the most critical—and heavily litigated—issues in this case. To decide this critical issue, the jury needs appropriate guidance. "[T]he fair use defense involves a careful examination of many factors, often confronting courts with a perplexing task." *Ringgold v. Black Entm't TV, Inc*., 126 F.3d 70, 76 (2d Cir. 1997). A "drive by" instruction will not suffice. The Court should instruct on fair use thoroughly and accurately, as Arista has proposed.

Arista's proposed fair-use instructions are modeled on Judge Alsup's 2016 instructions in *Oracle America, Inc. v. Google, Inc.,* No. 10-cv-03561-WHA (N.D. Cal.) (hereinafter, *Oracle*). As Judge Alsup explained, he drafted those instructions himself, "us[ing] the Federal Circuit's opinion canvassing fair use law as the starting point," and then revising and refining them through an "exhaustive and iterative process of proposals by the judge followed by critiques by counsel." *Oracle*, ECF 1988 at 2. Judge Alsup also made "adjust[ments] to reflect the way the case was tried," *id.*, just as this Court should tailor its instructions to the arguments and evidence in this case.

This particular proposed instruction—"Fair Use Generally"—was given in substantially similar form in *Oracle. See Oracle America, Inc. v. Google, Inc.*, ECF 1981 (May 26, 2016) (Jury Instruction 21). Arista adapted the *Oracle* instruction to incorporate more of the Ninth Circuit model instruction on fair use, in an effort to reach agreement with Cisco on this instruction.

This instruction is necessary to introduce to the jury the concept and purpose of fair use. It closely tracks the controlling case law. *See Perfect 10, Inc. v. Amazon.com, Inc*., 508 F.3d 1146, 1163 (9th Cir. 2007) ("The fair use defense permits the use of copyrighted works without the copyright owner's consent under certain situations. The defense encourages and allows the development of new ideas that build on earlier ones, thus providing a necessary counterbalance to the copyright law's goal of protecting creators' work product."); *Sony v. Bleem*, 214 F.3d 1022, 1026 (9th Cir. 2000) ("The process of applying these fair use factors to the facts of any particular scenario calls for case-by-case analysis, and the task is not to be simplified with bright-line rules. The four factors are to be considered together in light of the purposes of copyright, not in isolation.") (internal quotations and citations omitted).

Cisco's proposed instructions provide, in total, *one* insufficient instruction on fair use. It is overly simplistic to a degree that invites confusion. For example, as to the second fair-use factor (which Cisco would rather not talk about), it merely states: "The second factor is the nature of the

copyrighted work." It never explains what that means, the difference between a creative work and a functional one, or how the jury should weigh these facts. Further, Cisco's instruction misstates the law. For example, it incorrectly states that "a use is not transformative where the user makes no alteration to the expressive content or message of the original." *See Oracle*, ECF 1988 at 14 ("It should go without saying (but it must be said anyway) that, of course, the words copied will always be the same (or virtually so) in a copyright case — otherwise there can be no copyright problem in the first place. And, of course, the copied declarations serve the same function in both works, for by definition, declaring code in the Java programming language serves the specific definitional purposes explained above. If this were enough to defeat fair use, it would be impossible ever to duplicate declaring code as fair use and presumably the Federal Circuit would have disallowed this factor on the first appeal rather than remanding for a jury trial.").

Cisco's instruction is also slanted and misleading. For example, it states that use for a commercial purpose weighs against fair use, but fails to acknowledge that other factors affect this analysis and commercial uses can still be fair. *See, e.g., Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 579 (1994) ("[T]he more transformative the new work, the less will be the significance of other factors, like commercialism, that may weigh against a finding of fair use.").

**DISPUTED: Cisco's Position on Arista's Final Instruction No. 47 re Copyright—Affirmative Defense: Fair Use Generally**

Cisco's position is that no such instruction should be given.

**Cisco's Position:**

Arista's proposed instruction should be rejected.

*First*, the second paragraph goes beyond Instruction 17.21 of the *Ninth Circuit Manual of Model Civil Jury Instructions* ("*Model*"), and it unnecessarily addresses policy, which has no relevance to the jury's fact-finding duties.

*Second,* the second paragraph is neither neutral nor balanced, but instead is biased in favor of fair use, and offers no counterbalancing instruction on the limitations of fair use. The Court should therefore reject Arista's proposal in favor of the preamble of Instruction 17.21 of the *Model*, as reflected in Cisco's proposed fair use Instruction No. 46, *supra*.

*Third*, the proposed instruction improperly and confusingly states "the Copyright Act direct[s] you to consider the following factors" rather than the *Model*'s preferred language: "you should consider the following factors." Arista gives no explanation for its departure.

*Fourth*, the first sentence of the last paragraph is not contained in Instruction 17.21 of the *Model*, and it improperly inserts instructions on custom and public policy, and it improperly suggests that the jury include the elements of "custom" or "public policy" in arriving at its decision, which is not the law. Further, it is unnecessary to provide that sentence, as the first sentence of Cisco's the proposed instruction (based on the *Model*) already notes that use of a work "in a reasonable way under the circumstances" that may "advance the public interest" may be consistent with fair use; the first sentence of the last paragraph improperly repeats and expands that introduction.

*Fourth*, Cisco's statement that "fair use is appropriate where a reasonable copyright owner would have consented to the use, i.e., where the custom or public policy at the time would have defined the use as reasonable" should not be included because it is a statement that describes a result based on public policy, not an instruction on the law. The fair use factors do not require the consideration of whether a "reasonable copyright owner" would have consented; rather, that is often the outcome when fair use is applied. Arista's instruction presupposes such application and prejudices Cisco by asking the jury to merely determine if Cisco would have been "reasonable" in consenting to Arista's infringement, rather than asking the jury to apply the fair use factors as written.

Cisco further notes it is unduly excessive for the Court to provide lengthy instructions to the jury on the single topic of fair use. Arista's instructions are almost exclusively derived from a single case where fair use was the sole issue before the jury on remand and Arista cites no other authority for such extensive fair use instructions. Arista's instructions on fair use are thus unbalanced with other instructions given in this case and are prejudicial to Cisco in that they may improperly lead the jury to treat fair use with greater importance than the other topics addressed in these instructions.

1    **DISPUTED: Arista's Final Instruction No. 47 re Copyright—Affirmative Defense: Fair Use**

2    **Generally[90]**

3          Now, I will explain what fair use means under the law.

4          One who is not the owner of the copyright may use a copyrighted work in a reasonable way

5    under the circumstances without the consent of the copyright owner if it would advance the public

6    interest. [91] Such use of a copyrighted work is called a fair use.[92]  The owner of a copyright cannot

7    prevent others from  making a fair use of the owner's copyrighted work.[93]

8          The policy behind the right of fair use is to encourage and allow the development of new

9    ideas that build on earlier ones, thus providing a counterbalance to the copyright policy to protect

10   creative works.[94]  Since the doctrine of fair use is an equitable rule of reason, no generally

11   accepted definition is possible, and each case raising the question must be decided on its own

12   facts.[95]  And, in this dispute between Cisco and Arista, that question falls to you for decision.

13

14   _____

15        [90]    *Oracle America, Inc. v. Google, Inc.*, No. 10-cv-03561-WHA, ECF 1981 (May 26, 2016)
     (Jury Instructions 21, 22); Instruction No. 17.21, *Ninth Circuit Manual of Model Civil Jury*
16   *Instructions* (2007).
          [91] Instruction No. 17.21, *Ninth Circuit Manual of Model Civil Jury Instructions* (2007).  *See*
17   *also Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1163 (9th Cir. 2007) ("The fair use
     defense permits the use of copyrighted works without the copyright owner's consent under certain
18   situations. The defense encourages and allows the development of new ideas that build on earlier
     ones, thus providing a necessary counterbalance to the copyright law's goal of protecting creators'
19   work product.").
          [92] Instruction No. 17.21, *Ninth Circuit Manual of Model Civil Jury Instructions* (2007).
20        [93] Instruction No. 17.21, *Ninth Circuit Manual of Model Civil Jury Instructions* (2007).
          [94] *Oracle America, Inc. v. Google, Inc.*, No. 10-cv-03561-WHA, ECF 1981 (May 26, 2016)
21   (Jury Instruction 21); *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1163 (9th Cir. 2007)
     ("The fair use defense permits the use of copyrighted works without the copyright owner's consent
22   under certain situations. The defense encourages and allows the development of new ideas that
     build on earlier ones, thus providing a necessary counterbalance to the copyright law's goal of
23   protecting creators' work product."); *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 579
24   (1994); *Sega Enters. Ltd. v. Accolade, Inc.*, 977 F.2d 1510, 1524-26 (9th Cir. 1992); *Sony*
     *Computer Entertainment, Inc. v. Connectix Corp.*, 203 F.3d 596, 607 (9th Cir.), cert. denied, 531
25   U.S. 871 (2000)
          [95] *Sony v. Bleem*, 214 F.3d 1022, 1026 (9th Cir. 2000) ("The process of applying these fair use
26   factors to the facts of any particular scenario calls for case-by-case analysis, and the task is not to
27   be simplified with bright-line rules. The four factors are to be considered together in light of the
     purposes of copyright, not in isolation.") (internal quotations and citations omitted).
28

In determining whether the use made of the work was fair, you should consider the following factors:

    1.  The purpose and character of the use;

    2.  The nature of the copyrighted work;

    3.  The amount and substantiality of the portion used in relation to the copyrighted work as a whole; and

    4.  The effect of the use upon the potential market for or value of the copyrighted work;

These factors are not exclusive and you may consider any additional circumstances or evidence that, in your judgment, bear upon the ultimate purpose of the Copyright Act.[96]  For example, as you balance these factors, bear in mind that fair use is appropriate where a reasonable copyright owner would have consented to the use, i.e., where the custom or public policy at the time would have defined the use as reasonable.[97]

If you find that Arista has proved by a preponderance of the evidence that it made a fair use of Cisco's work, your verdict should be for Arista.[98]

**Arista's Position:**

The fair use doctrine is necessary to "fulfill copyright's very purpose, [t]o promote the Progress of Science and useful Arts."  *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 575 (1994) (internal citations and quotations omitted).  It is not an "occasionally tolerated departure from the grand conception of the copyright monopoly.  To the contrary, it is a necessary part of the overall design."  Leval, Toward a Fair Use Standard, 103 Harv. L. Rev. 1105, 1110 (1990); *see also* 4 Patry on Copyright § 10:1.50 ("Copyright is *not* a one-sided coin, only concerned with enforcing rights.  Rather, copyright law seeks to achieve a balance that ultimately serves the public's, not authors' interests.") (italics in original).

It comes as no surprise, therefore, that fair use is one of the most critical—and heavily litigated—issues in this case.  To decide this critical issue, the jury needs appropriate guidance.  "[T]he fair use defense involves a careful examination of many factors, often confronting courts with a perplexing task."  *Ringgold v. Black Entm't TV, Inc.*, 126 F.3d 70, 76 (2d Cir. 1997).  A

---

[96] *Oracle America, Inc. v. Google, Inc.*, No. 10-cv-03561-WHA, ECF 1981 (May 26, 2016) (Jury Instruction 38); *Sony v. Bleem*, 214 F.3d 1022, 1026 (9th Cir. 2000) ("The four [fair use] factors are to be considered together in light of the purposes of copyright, not in isolation.").

[97] Order on Daubert Motions at 3-4 (quoting *Wall Data Inc. v. Los Angeles Cty. Sheriff's Dep't*, 447 F.3d 769, 778 (9th Cir. 2006)).

[98] Instruction No. 17.21, *Ninth Circuit Manual of Model Civil Jury Instructions* (2007).

1    "drive by" instruction will not suffice.  The Court should instruct on fair use thoroughly and accurately, as Arista has proposed.

2

3    Arista's proposed fair-use instructions are modeled on Judge Alsup's 2016 instructions in *Oracle America, Inc. v. Google, Inc.,* No. 10-cv-03561-WHA (N.D. Cal.) (hereinafter, *Oracle*). As Judge Alsup explained, he drafted those instructions himself, "us[ing] the Federal Circuit's

4    opinion canvassing fair use law as the starting point," and then revising and refining them through an "exhaustive and iterative process of proposals by the judge followed by critiques by counsel."

5    *Oracle*, ECF 1988 at 2.  Judge Alsup also made "adjust[ments] to reflect the way the case was tried," *id.*, just as this Court should tailor its instructions to the arguments and evidence in this

6    case.

7

8    This particular proposed instruction—"Fair Use Generally"—was given in substantially similar form in *Oracle.  See Oracle America, Inc. v. Google, Inc.,* ECF 1981 (May 26, 2016) (Jury Instruction 21).  Arista adapted the *Oracle* instruction to incorporate more of the Ninth Circuit

9    model instruction on fair use, in an effort to reach agreement with Cisco on this instruction.

10    This instruction is necessary to introduce to the jury the concept and purpose of fair use.  It

11    closely tracks the controlling case law.  *See Perfect 10, Inc. v. Amazon.com, Inc*., 508 F.3d 1146, 1163 (9th Cir. 2007) ("The fair use defense permits the use of copyrighted works without the

12    copyright owner's consent under certain situations. The defense encourages and allows the development of new ideas that build on earlier ones, thus providing a necessary counterbalance to

13    the copyright law's goal of protecting creators' work product."); *Sony v. Bleem,* 214 F.3d 1022, 1026 (9th Cir. 2000) ("The process of applying these fair use factors to the facts of any particular

14    scenario calls for case-by-case analysis, and the task is not to be simplified with bright-line rules. The four factors are to be considered together in light of the purposes of copyright, not in

15    isolation.") (internal quotations and citations omitted).

16

17    Cisco's proposed instructions provide, in total, *one* insufficient instruction on fair use.  It is overly simplistic to a degree that invites confusion.  For example, as to the second fair-use factor

18    (which Cisco would rather not talk about), it merely states: "The second factor is the nature of the copyrighted work."  It never explains what that means, the difference between a creative work and

19    a functional one, or how the jury should weigh these facts.  Further, Cisco's instruction misstates the law.  For example, it incorrectly states that "a use is not transformative where the user makes

20    no alteration to the expressive content or message of the original." *See Oracle*, ECF 1988 at 14 ("It should go without saying (but it must be said anyway) that, of course, the words copied will

21    always be the same (or virtually so) in a copyright case — otherwise there can be no copyright problem in the first place.  And, of course, the copied declarations serve the same function in both

22    works, for by definition, declaring code in the Java programming language serves the specific definitional purposes explained above. If this were enough to defeat fair use, it would be

23    impossible ever to duplicate declaring code as fair use and presumably the Federal Circuit would

24    have disallowed this factor on the first appeal rather than remanding for a jury trial.").

25    Cisco's instruction is also slanted and misleading.  For example, it states that use for a

26    commercial purpose weighs against fair use, but fails to acknowledge that other factors affect this analysis and commercial uses can still be fair.  *See, e.g., Campbell v. Acuff-Rose Music, Inc.*, 510

27    U.S. 569, 579 (1994) ("[T]he more transformative the new work, the less will be the significance of other factors, like commercialism, that may weigh against a finding of fair use.").

28

**DISPUTED: Cisco's Position on Arista's Final Instruction No. 49 re Copyright—Affirmative**

**Defense: Fair Use: First Factor**

Cisco's position is that no such instruction should be given.

**Cisco's Position:**

Arista's proposed instruction should be rejected.

*First*, the instruction unnecessarily departs from Instruction 17.21 of the *Ninth Circuit Manual of Model Civil Jury Instructions* ("*Model*") expanding the *Model*'s instruction.

*Second*, as to the second paragraph, there is no dispute here that Arista does not have a "nonprofit educational purpose" for copying Cisco's copyrighted works, and that instruction is therefore unnecessary. Further, the last sentence of this paragraph is unbalanced, as it only states that a "transformative" use "supports fair use," without acknowledging that a non-transformative use does not support fair use. Cisco's proposed instruction, however, is balanced.

*Third*, the third paragraph is unnecessarily lengthy, confusing, unbalanced and prejudicial. Arista's instruction addresses only circumstances where it alleges works ***are*** transformative, without sufficiently addressing when a use is not. The one mention of when a non-transformative use is a statement, without any authority, that "[a] work is not transformative where the user makes little or no alteration to the expressive content or message of the original work and uses it in the same or similar context." This is an incorrect statement of law because, as explained in Cisco's authorities to instruction No. 46 (subheading 1): (1) even extensive alteration of a work may not be transformative, particularly if the use is intended to compete with or supersede the original work; (2) the sentence is written in the conjunctive, improperly arguing that a finding of no transformation requires ***both*** "little or no alteration" ***and*** use "in the same or similar context"; and (3) Arista ignores that that using a work for an identical or competing purpose is not transformative. *See, e.g., Wall Data Inc. v. Los Angeles Cty. Sheriff's Dep't*, 447 F.3d 769, 778 (9th Cir. 2006) ("The Sheriff's Department created exact copies of RUMBA's software. It then put those copies to the identical purpose as the original software. Such a use cannot be considered transformative.") (citing cases); *Worldwide Church of God v. Philadelphia Church of God, Inc.*, 227 F.3d 1110, 1117 (9th Cir. 2000) (where "'use is for the same intrinsic purpose as [the copyright holder's] ... such use seriously weakens a claimed fair use.'") (quoting *Weissmann v. Freeman*, 868 F.2d 1313, 1324 (2d Cir. 1989)); *Kelly v. Arriba Soft Corp.*, 336 F.3d 811, 819 (9th Cir. 2003) ("reproducing music CDs in computer MP3 format does not change the fact that both formats are used for entertainment purposes. Likewise, reproducing news footage into a different format does not change the ultimate purpose of informing the public about current affairs."); *Elvis Presley Enters., Inc. v. Passport Video*, 349 F.3d 622 (9th Cir. 2003). Arista thus misrepresents the inquiry by suggesting that use of Cisco's copyrighted works in creating its own competing architecture is a different, transformative "context"; to the contrary, a competing use cannot be transformative.

*Fourth*, In addition, the statement that the material copied "need not be modified" is incorrect, as Ninth Circuit law requires change in expressive content or message. *Oracle Am., Inc.*

1   *v. Google Inc.*, 750 F.3d 1339, 1374 (Fed. Cir. 2014) ("A work is not transformative where the
2   user 'makes no alteration to the *expressive content or message* of the original work.'") (quoting
    *Seltzer v. Green Day, Inc.*, 725 F.3d 1170, 1177 (9th Cir. 2013).  To the extent that the Court
3   provides an instruction on transformation, it should use Cisco's proposed Instruction No. 46,
    *supra*, which is a neutral, concise, accurate statement of law, with a single sentence explaining
    what is transformative and another single sentence explaining what is not transformative
4
5           A use is "transformative" if it adds something new, with a further purpose or
            different character, altering the first with new expression, meaning or message.
6           But copying a work to use it for an identical or competing purpose as the original,
            or in a manner that tends to supplant or supersede the original, is not
7           transformative.

8           *Fifth*, the fourth paragraph is unnecessarily convoluted and confusing; all the Court need
    instruct is that commercial use is a factor that the jury is to consider.  After conferring with Arista,
9   Cisco agreed in the spirit of compromise to include balanced statements to its proposed Instruction
    No. 46, *supra*, which are neutral and concise statements of the law regarding commerciality.

10          *Sixth*, Arista includes "the proprietary of the accused infringer's conduct" in this factor.
    This more properly belongs in a separate factor because the entire fair-use inquiry presupposes
11  good faith and fair dealing, and bad faith bars the defense's entire application as an equitable
    matter.  *Fisher v. Dees*, 794 F.2d 432, 436-37 (9th Cir. 1986) ("courts may weigh the propriety of
12  the defendant's conduct in the equitable balance of a fair use determination") (quotations omitted).
    Thus, the Ninth Circuit has considered the "propriety of [defendant's] conduct" as a separate
13  factor, apart from "the purpose and character of the use."  *Id.* at 437.  Even if considered in the
    first factor, however, Arista's proposed language is insufficient as it does not specifically state that
14  bad faith weighs against fair use.
15
            Cisco further notes it is unduly excessive for the Court to provide lengthy instructions to
16  the jury on the single topic of fair use.  Arista's instructions are almost exclusively derived from a
    single case where fair use was the sole issue before the jury on remand and Arista cites no other
17  authority for such extensive fair use instructions.   Arista's instructions on fair use are thus
    unbalanced with other instructions given in this case and are prejudicial to Cisco in that they may
18  improperly lead the jury to treat fair use with greater importance than the other topics addressed in
    these instructions.
19
20
21
22
23
24
25
26
27
28

1   **DISPUTED: Arista's Final Instruction No. 49 re Copyright—Affirmative Defense: Fair Use:**

2   **First Factor[99]**

3       The first statutory factor concerns the purpose and character of the accused use.[100]

4       This factor includes these issues: (1) whether and to what extent the accused use serves a

5   commercial purpose, which weighs against fair use, versus a nonprofit educational purpose, which

6   weighs in favor of fair use,[101] and (2) whether and to what extent the accused work is

7   "transformative," which supports fair use.[102]

8       A use is transformative if it adds something new, with a further purpose or different

9   character, altering the first use with new expression, meaning, or message rather than merely

10  superseding the objects of the original creation.[103] New works have been found transformative

11  when they use copyrighted material for purposes distinct from the purpose of the original

12

13      [99]  *Oracle America, Inc. v. Google, Inc.*, No. 10-cv-03561-WHA, ECF 1981 (May 26, 2016)
        (Jury Instructions 23 - 27).

14      [100]  17 U.S.C. § 107(1); *Oracle America, Inc. v. Google, Inc.*, 750 F.3d 1339, 1374 (Fed. Cir.
15      2014) ("The first factor in the fair use inquiry involves "the purpose and character of the use,
        including whether such use is of a commercial nature or is for nonprofit educational purposes.")
16      (internal quotations and citations omitted).

        [101]  *Oracle America, Inc. v. Google, Inc.*, 750 F.3d 1339, 1375 (Fed. Cir. 2014) ("Analysis of
17      the first factor also requires inquiry into the commercial nature of the use. Use of the copyrighted
        work that is commercial tends to weigh against a finding of fair use.") (internal quotations and
18      citations omitted).

19      [102]  17 U.S.C. § 107; *Oracle America, Inc. v. Google, Inc.*, 750 F.3d 1339, 1374 (Fed. Cir.
        2014); *L.A. News Serv. v. CBS Broad., Inc.*, 305 F.3d 924, 939 (9th Cir. Cal. 2002) ("[T]he most
20      important component of the inquiry into the 'purpose and character of the use' is the question
        whether the allegedly fair use was 'transformative,' i.e., whether the second use 'adds something
21      new, with a further purpose or different character, altering the first with new expression, meaning,
        or message.' 'The more transformative the new work, the less will be the significance of other
22      factors, like commercialism, that may weigh against a finding of fair use.'") (internal citations
        omitted); *Seltzer v. Green Day, Inc.*, 725 F.3d 1170, 1175-76 (9th Cir. Cal. 2013) ("The Supreme
23      Court has stated that the central purpose of [the first fair use] factor is to see whether and to what
        extent the new work is transformative.") (internal citations and quotations omitted).

24      [103]  *Oracle America, Inc. v. Google, Inc.*, 750 F.3d 1339, 1374 (Fed. Cir. 2014) ("A use is
25      'transformative' if it 'adds something new, with a further purpose or different character, altering
        the first with new expression, meaning or message.' The critical question is 'whether the new
26      work merely supersede[s] the objects of the original creation . . . or instead adds something
        new.'") (internal citations omitted); *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 579 (1994)
27      (use is transformative when it "adds something new, with a further purpose or different character,
28      altering the first with new expression, meaning or message.") (emphasis added).

material.[104] A use is considered transformative only where a defendant changes a plaintiff's

copyrighted work or, where the copyrighted elements remain unchanged from the original, a

defendant uses them in a different context such that the original work is transformed into a new

creation.[105] To qualify as transformative, the material copied need not be modified in the new

work, so long as the material and the context in which the material is used qualifies as

transformative under the test stated above.[106]

In evaluating the first statutory factor, the extent of the commercial nature of the accused

work must also be considered. Commercial use weighs against a finding of fair use, but even a

commercial use may be found to be sufficiently transformative that the first factor, on balance,

still cuts in favor of fair use.[107] To put it differently, the more transformative an accused work, the

---

[104] *Elvis Presley Enters. v. Passport Video*, 349 F.3d 622, 629 (9th Cir. 2003)( "Courts have described new works as 'transformative' when the works use copy-righted material for purposes distinct from the purpose of the original material.").

[105] *Oracle America, Inc. v. Google, Inc.*, 750 F.3d 1339, 1374 (Fed. Cir. 2014) ("A use is 'transformative' if it 'adds something new, with a further purpose or different character, altering the first with new expression, meaning or message.' The critical question is 'whether the new work merely supersede[s] the objects of the original creation ... or instead adds something new.'") (internal citations omitted); *Monge v. Maya Magazines, Inc.*, 688 F.3d 1164, 1176 (9th Cir. 2012) (use transformative when it incorporates elements of prior work "into a broader work"); *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1165 (9th Cir. 2007) ("The fact that Google incorporates the entire Perfect 10 image into the search engine results does not diminish the transformative nature of Google's use. As the district court correctly noted, we determined in Kelly that even making an exact copy of a work may be transformative so long as the copy serves a different function than the original work."); *Wall Data Inc. v. L.A. County Sheriff's Dept.*, 447 F.3d 769, 778 (9th Cir. 2006) (use can be transformative where defendant changes plaintiff's work or uses it in a different context); *Kelly v. Arriba Soft Corp.*, 336 F.3d 811, 818-19 (9th Cir. 2002) (finding use of "exact images" transformative and fair use); *Seltzer v. Green Day, Inc.*, 725 F.3d 1170, 1176 (9th Cir. 2013) (use is transformative if it "adds value to the original—if the quoted matter is used as raw material, transformed in the creation of new information, new aesthetics, new insights and understandings" and that the addition of such value "is the very type of activity that the fair use doctrine intends to protect for the enrichment of society.") (quoting P. Leval, Toward a Fair Use Standard, 103 HARV. L. REV. 1105 (1990)).

[106] *Oracle America, Inc. v. Google, Inc.*, No. 10-cv-03561-WHA, ECF 1981 (May 26, 2016) (Jury Instruction 25).

[107] *Hustler Magazine Inc. v. Moral Majority Inc.*, 796 F.2d 1148, 1152 (9th Cir. 1986) ("Even assuming that the use had a purely commercial purpose, the presumption of unfairness can be rebutted by the characteristics of the use.").

1    more other factors, such as commercialism, will recede in importance.[108] By contrast, the less

2    transformative the accused work, the more other factors like commercialism will dominate.

3        Finally, also relevant to the first statutory factor is the propriety of the accused infringer's

4    conduct because fair use presupposes good faith and fair dealing.

5

6    **Arista's Position:**

7        Arista's proposed instruction on the first fair-use factor comes from Judge Alsup's
     instructions in *Oracle*. *See Oracle*, ECF 1981 (Jury Instruction 23).

8

9        Further, it closely tracks the controlling law. For example, every sentence in the second
     paragraph is directly supported by either Federal Circuit or Ninth Circuit authority:

10

11   • **A use is transformative if it adds something new, with a further purpose or different
       character, altering the first use with new expression, meaning, or message rather than
       merely superseding the objects of the original creation.** *See Oracle America, Inc. v.

12     *Google, Inc.*, 750 F.3d 1339, 1374 (Fed. Cir. 2014) ("A use is 'transformative' if it 'adds

13     something new, with a further purpose or different character, altering the first with new
       expression, meaning or message.' The critical question is 'whether the new work merely

14     supersede[s] the objects of the original creation . . . or instead adds something new.'")
       (internal citations omitted); *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 579 (1994)

15     (use is transformative when it "adds something new, with a further purpose or different
       character, altering the first with new expression, meaning or message.") (emphasis added).

16

17   • **New works have been found transformative when they use copyrighted material for
       purposes distinct from the purpose of the original material**. *See Elvis Presley Enters. v.

18     *Passport Video*, 349 F.3d 622, 629 (9th Cir. 2003)( "Courts have described new works as
       'transformative' when the works use copy-righted material for purposes distinct from the

19     purpose of the original material.").

20   • **A use is considered transformative only where a defendant changes a plaintiff's

21     copyrighted work or, where the copyrighted elements remain unchanged from the
       original, a defendant uses them in a different context such that the original work is

22     transformed into a new creation.** *See Oracle America, Inc. v. Google, Inc.*, 750 F.3d
       1339, 1374 (Fed. Cir. 2014) ("A use is 'transformative' if it 'adds something new, with a

23     further purpose or different character, altering the first with new expression, meaning or
       message.' The critical question is 'whether the new work merely supersede[s] the objects

24     of the original creation ... or instead adds something new.'") (internal citations omitted);

25     *Monge v. Maya Magazines, Inc.*, 688 F.3d 1164, 1176 (9th Cir. 2012) (use transformative

26

27   _____

     [108] *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 579 (1994) ("[T]he more transformative
     the new work, the less will be the significance of other factors, like commercialism, that may

28   weigh against a finding of fair use.").

1124328.06

when it incorporates elements of prior work "into a broader work"); *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1165 (9th Cir. 2007) ("The fact that Google incorporates the entire Perfect 10 image into the search engine results does not diminish the transformative nature of Google's use. As the district court correctly noted, we determined in Kelly that even making an exact copy of a work may be transformative so long as the copy serves a different function than the original work."); *Wall Data Inc. v. L.A. County Sheriff's Dept.*, 447 F.3d 769, 778 (9th Cir. 2006) (use can be transformative where defendant changes plaintiff's work or uses it in a different context); *Kelly v. Arriba Soft Corp.*, 336 F.3d 811, 818-19 (9th Cir. 2002) (finding use of "exact images" transformative and fair use); *Seltzer v. Green Day, Inc.*, 725 F.3d 1170, 1176 (9th Cir. 2013) (use is transformative if it "adds value to the original—if the quoted matter is used as raw material, transformed in the creation of new information, new aesthetics, new insights and understandings" and that the addition of such value "is the very type of activity that the fair use doctrine intends to protect for the enrichment of society.") (quoting P. Leval, Toward a Fair Use Standard, 103 HARV. L. REV. 1105 (1990)).

- **To qualify as transformative, the material copied need not be modified in the new work, so long as the material and the context in which the material is used qualifies as transformative under the test stated above.** *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146 (9th Cir. 2007) ("The fact that Google incorporates the entire Perfect 10 image into the search engine results does not diminish the transformative nature of Google's use. As the district court correctly noted, [] we determined in *Kelly* that even making an exact copy of a work may be transformative so long as the copy serves a different function than the original work, For example, the First Circuit has held that the republication of photos taken for a modeling portfolio in a newspaper was transformative because the photos served to inform, as well as entertain."); Kelly v. Arriba Soft Corp., 336 F.3d 811, 818 (9th Cir. 2003) ("Although Arriba made exact replications of Kelly's images, the thumbnails were much smaller, lower-resolution images that served an entirely different function than Kelly's original images.").

Cisco misleadingly claims that its instruction on transformation is "neutral" and "accurate." Cisco is wrong. In fact, each of Cisco's three sentences relating to transformation explain what is *not* transformative. *See* Cisco's Proposed Instruction No. 46 ("A use is 'transformative' *only* where it adds something new . . . . But copying a work . . . is *not* transformative. . . . Further, a use is *not* transformative . . . ." Further, Cisco's instruction misstates the law. For example, it incorrectly states that "a use is not transformative where the user makes no alteration to the expressive content or message of the original." *See Oracle*, ECF 1988 at 14 ("It should go without saying (but it must be said anyway) that, of course, the words copied will always be the same (or virtually so) in a copyright case — otherwise there can be no copyright problem in the first place. And, of course, the copied declarations serve the same function in both works, for by definition, declaring code in the Java programming language serves the specific definitional purposes explained above. If this were enough to defeat fair use, it would be impossible ever to duplicate declaring code as fair use and presumably the Federal Circuit would have disallowed this factor on the first appeal rather than remanding for a jury trial.").

Finally, Cisco claims that the propriety of the accused infringer's conduct "properly belongs in a separate factor." Cisco is again mistaken. The United States Supreme Court has held that the "good faith" consideration is "relevant to the character of the use"—the first statutory fair

1  use factor.  *See Harper & Row, Publrs. v. Nation Enters.*, 471 U.S. 539, 562-63 (1985) ("Also
2  relevant to the 'character' of the use is 'the propriety of the defendant's conduct.'")..  Accordingly,
   this Court should not divorce this consideration from the factor to which it is relevant.

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**<u>DISPUTED: Cisco's Position on Arista's Final Instruction No. 53 re Copyright—Affirmative</u>**

**<u>Defense: Fair Use: Second Factor</u>**

Cisco's position is that no such instruction should be given.

**<u>Cisco's Position:</u>**

Arista's proposed instruction should be rejected.

*First*, the instruction departs from Instruction 17.21 of the *Ninth Circuit Manual of Model Civil Jury Instructions* ("*Model*") expanding the *Model*'s instruction, and is unnecessarily lengthy and expository—it is same two instructions previously provided, but under one heading.

*Second*, Arista's instruction improperly refers to a computer program, when this case is not about computer programming, but a user interface.

*Third*, as to the first paragraph, Arista's proposed instruction is prejudicial, as there is no legal basis to instruct that "instruction manuals" or user interfaces are less worthy of copyright protection than other copyrighted material, particularly given that fair use is a case-by-case analysis that must be evaluated on their own and Cisco is entitled to argue that the original, expressive elements of its copyrighted works, including its user interface and documentation, exhibit creativity.  *See Oracle Am., Inc. v. Google Inc.*, 750 F.3d 1339, 1375 (Fed. Cir. 2014) (expressive elements of software enjoy great protection).

*Fourth*, as to the first paragraph, Arista's proposed instruction is largely irrelevant to the extent that it addresses "literary works" and "creative writing and expression," suggesting that traditional fictional literature is worthy of more protection that Cisco's copyrighted works.

*Fifth*, this proposed instruction is unnecessarily convoluted and confusing, repeatedly referring to the "core" or "core values" of copyrighted expression without explanation.  All the Court need instruct is that the second factor addresses "the nature of the copyrighted work," which the jury will then be able to balance with the other factors using its own judgment.

*Sixth*, as to the second paragraph, Arista's proposed instruction includes argumentative recitations of this fair use factor that are not necessary (and that are already covered by the *Model* instruction, which is short, clear and neutral).

*Seventh*, as to the second paragraph, Arista misstates the law by suggesting to the jury that it may consider Arista's industry standard argument for purposes of fair use.  *See, e.g.*, Dkt. No. 533; Cisco's Instruction No. 28 (Industry Standard Not Relevant), *supra*.  The Court has ruled that while evidence of Cisco's user interface being used in the industry may be relevant to fair use, *see* Motion in Limine Ruling at 3, evidence relating to an "industry standard" or "*de facto* industry standard" has been excluded.  Thus, this instruction should not contain any references to "industry standards," or evidence with relevance based on such "standards."

*Eighth*, as to the second paragraph, Arista's argument actually is one regarding

functionality, merger, and scènes à faire, which is addressed *supra*, Instruction No. 27 (Ideas and Expressions), and *infra*, Instruction Nos. 60 (merger), 61 (scènes à faire).  It thus is inappropriate and duplicative to restate it here. Cisco further incorporates its positions on those instructions by reference.

*Ninth*, as to the second paragraph, Arista's proposed instruction is not balanced, as it fails to note that works with functional components may nonetheless be highly creative.  *Oracle Am., Inc. v. Google Inc.*, 750 F.3d 1339, 1375 (Fed. Cir. 2014).

*Tenth*, bad faith blatant copying, even of functional elements, is inconsistent with fair use under this factor.  *See Cable/Home Commc'n Corp. v. Network Prods., Inc.*, 902 F.2d 829, 844 (11th Cir. 1990) (citing cases).  Thus, if the Court addresses functionality, it should also instruct the jury that bad faith weighs against fair use, even when functional elements are at issue. Cisco further notes it is unduly excessive for the Court to provide lengthy instructions to the jury on the single topic of fair use.  Arista's instructions are almost exclusively derived from a single case where fair use was the sole issue before the jury on remand and Arista cites no other authority for such extensive fair use instructions.   Arista's instructions on fair use are thus unbalanced with other instructions given in this case and are prejudicial to Cisco in that they may improperly lead the jury to treat fair use with greater importance than the other topics addressed in these instructions.

1  **DISPUTED: Arista's Final Instruction No. 53 re Copyright—Affirmative Defense: Fair Use:**

2  **Second Factor[109]**

3       The second statutory factor is the nature of the copyrighted work. This factor recognizes

4  that traditional literary works are closer than informational works, such as instruction manuals, to

5  the core of intended copyright protection.  Creative writing and expression lie at the heart of

6  copyright protection, so fair use is generally more difficult to establish for copying of traditional

7  literary works than for copying of informational works.[110] The focus of this factor is on how close

8  the used material is to the core values of copyright protection. When the used material implicates

9  the core values of copyright protection less, the more this factor weighs in favor of fair use, and

10  vice versa.[111]

11       Even though a computer program performs functions and has functional elements, it may

12  be (or may not be) highly creative.[112] When there are many possible ways to express a computer

13  program, the particular way chosen for a copyrighted program  may be (or may not be) highly

14  creative. On the other hand, when elements of a computer program are dictated by functional

15  considerations such as efficiency, compatibility, or industry standards, then less creativity is

16  indicated and the core values of copyright protection are less implicated.[113] When purely

17  ─────────────────────

18  [109]  *Oracle America, Inc. v. Google, Inc.*, No. 10-cv-03561-WHA, ECF 1981 (May 26, 2016)
   (Jury Instructions 28, 30).

19  [110]  *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 586 (1994) ("This factor calls for
20  recognition that some works are closer to the core of intended copyright protection than others,
   with the consequence that fair use is more difficult to establish when the former works are
21  copied.") (internal citations omitted).
   [111] *Sega Enters., Ltd. v. Accolade, Inc*., 977 F.2d 1510, 1527 (9th Cir. 1992) ("[I]f a work is
22  largely functional, it receives only weak protection.").

23  [112] *Sony Computer Entertainment, Inc. v. Connectix Corp.*, 203 F.3d 596, 603 (9th Cir. 2000)
   ("Thus, the fair use doctrine preserves public access to the ideas and functional elements
24  embedded in copyrighted computer software programs. This approach is consistent with the
   ultimate aim [of the Copyright Act], to stimulate artistic creativity for the general public good.")
25  (internal quotations and citations omitted).

26  [113] *Sega Enters. Ltd. v. Accolade, Inc*., 977 F.2d 1510, 1524 (9th Cir. 1992) ("To the extent
   that a work is functional or factual, it may be copied, as may those expressive elements of the
27  work that must necessarily be used as incident to expression of the underlying ideas, functional
   concepts, or facts) (internal quotations and citations omitted);  *Computer Assocs Int'l, Inc. v. Altai,*
28  *Inc*., 982 F.2d 693, 709-10 (2d Cir. 1992) ("[A] programmer's freedom of design choice is often

-105-                                    Case No. 5:14-cv-5344-BLF

1  functional elements are embedded in a copyrighted work and it is necessary to copy associated

2  creative elements in order to utilize those functional elements, then this circumstance also favors

3  fair use.[114] Conversely, copying creative expression that is not necessary to perform the functions

4  weighs against fair use.

5

6  **Arista's Position:**

7       This proposed instruction is modeled on Judge Alsup's in *Oracle*. *See Oracle Am. Inc. v.*

8  *Google, Inc.*, 3:10-cv-03561, ECF 1981 (May 26, 2016) (May 26, 2016) (Jury Instruction 28).

   Arista made minor modifications for clarity. It accurately states the law, explaining that

9  "traditional literary works are closer than informational works, such as instruction manuals, to the

   core of intended copyright protection." *Id.*; *see, e.g., Campbell v. Acuff-Rose Music, Inc*., 510

10 U.S. 569, 586 (1994) ("This factor calls for recognition that some works are closer to the core of

   intended copyright protection than others, with the consequence that fair use is more difficult to

11 establish when the former works are copied.") (internal citations omitted)).

12       Cisco's arguments regarding this instruction are not persuasive. For example, it claims

13 that there is no "legal basis" to instruction that instruction manuals or user interfaces "are less

14 ─────────────────────

15 circumscribed by extrinsic considerations such as (1) the mechanical specifications of the

   computer on which a particular program is intended to run; (2) compatibility requirements of other

16 programs with which a program is designed to operate in conjunction; (3) computer

   manufacturers' design standards; (4) demands of the industry being serviced; and (5) widely

17 accepted programming practices within the computer industry."); *Oracle America, Inc. v. Google,*

18 *Inc*., 750 F.3d 1339, 1371-72, 1376-77 (Fed. Cir. 2014) ("Next, while we have concluded that it

   was error for the trial court to focus unduly on the functional aspects of the packages, and on

19 Google's competitive desire to achieve commercial 'interoperability' when deciding whether

   Oracle's API packages are entitled to copyright protection, we expressly noted that these factors

20 may be relevant to a fair use analysis. While the trial court erred in concluding that these factors

   were sufficient to overcome Oracle's threshold claim of copyrightability, reasonable jurors might

21 find that they are relevant to Google's fair use defense under the second and third factors of the

   inquiry. *See Sega*, 977 F.2d at 1524-25 (discussing the Second Circuit's approach to 'break[ing]

22 down a computer program into its component subroutines and subsubroutines and then

   identif[ying] the idea or core functional element of each' in the context of the second fair use

23 factor: the nature of the copyrighted work). We find this particularly true with respect to those

24 core packages which it seems may be necessary for anyone to copy if they are to write programs in

   the Java language. And, it may be that others of the packages were similarly essential components

25 of any Java language-based program.").

       [114] *Sony Computer Entertainment, Inc. v. Connectix Corp.*, 203 F.3d 596, 603 (9th Cir. 2000)

26 ("Thus, the fair use doctrine preserves public access to the ideas and functional elements

   embedded in copyrighted computer software programs. This approach is consistent with the

27 ultimate aim [of the Copyright Act], to stimulate artistic creativity for the general public good.")

28 (internal quotations and citations omitted).

worthy of copyright protected."

Cisco also mistakenly asserts that Arista "misstates the law by suggesting to the jury that it may consider Arista's industry standard argument for purposes of fair use." Ninth Circuit authority is clear, however, that fair use "is appropriate where a 'reasonable copyright owner' would have consented to the use, i.e., where the 'custom or public policy' at the time would have defined the use as reasonable"). Daubert Order at 4, ECF 607-7 (quoting *Wall Data Inc. v. Los Angeles Cty. Sheriff's Dep't*, 447 F.3d 769, 778 (9th Cir. 2006). Further, contrary to Cisco's assertion, this Court has never ruled that the jury cannot "consider Arista's industry standard argument." Instead the Court explicitly held that "evidence of widespread use of Cisco CLI throughout the industry ***is relevant to this case***, such as on the issues of fair use and estoppel." *Id.* at 3 (emphasis added); *see also id.* at 4 ("Cisco did not dispute at the hearing that Dr. Black should be permitted to opine on the underlying facts and analysis, such as the features and vendors he had reviewed and whether certain usage is common or frequent. Hr'g Tr. 17:9-22. It thus appears that Cisco's challenge relates to the label of "de facto industry standard," and not to the underlying evidence of industry use of Cisco CLI.").

1124328.06

**DISPUTED: Cisco's Position on Arista's Final Instruction No. 55 re Copyright—Affirmative**

**Defense: Fair Use: Third Factor**

Cisco's position is that no such instruction should be given.

**Cisco's Position:**

Arista's proposed instruction should be rejected.

*First*, the instruction departs from Instruction 17.21 of the *Ninth Circuit Manual of Model Civil Jury Instructions* ("*Model*") expanding the *Model*'s instruction, and is unnecessarily lengthy and confusing.

*Second*, Arista's proposed instruction is incorrect for the reasons set forth in Cisco's brief on the copyrighted works, ECF 633, which is hereby incorporated by reference. *See id.* at 1-2 (defining the "works" at issue as the user interfaces found in four Cisco registered operating systems, and explaining how a registration of an operating system creates a distinct registration for a user interface). .

Cisco further notes it is unduly excessive for the Court to provide lengthy instructions to the jury on the single topic of fair use. Arista's instructions are almost exclusively derived from a single case where fair use was the sole issue before the jury on remand and Arista cites no other authority for such extensive fair use instructions. Arista's instructions on fair use are thus unbalanced with other instructions given in this case and are prejudicial to Cisco in that they may improperly lead the jury to treat fair use with greater importance than the other topics addressed in these instructions.

**DISPUTED: Arista's Final Instruction No. 55 re Copyright—Affirmative Defense: Fair Use: Third Factor[115]**

The third statutory factor is the amount and substantiality of the portion used in relationship to the copyrighted work as a whole, which concerns how much of the overall copyrighted work was used by the accused infringer.[116] Analysis of this factor is viewed in the context of Cisco's copyrighted works, [To be determined by analytic dissection]. The fact, if true, that a substantial portion of an infringing work was copied verbatim is evidence of the qualitative value of the copied material, both to the originator and to whoever seeks to profit from marketing someone else's copyrighted work. Wholesale copying does not preclude fair use per se but it militates against a finding of fair use. Even a small part may be qualitatively the most important part of a work. If, however, the secondary user only copies as much as is necessary for a transformative use, then this factor will not weigh against him or her. The extent of permissible copying varies with the purpose and character of the use, which relates back to the first factor.

In assessing this third factor, both the quantity of the material used and the quality or importance of the material used should be considered.

**Arista's Position:**

This proposed instruction is modeled on Judge Alsup's in *Oracle. See Oracle*, ECF 1981 (May 26, 2016) (Jury Instruction 33). Arista made minor modifications to adapt it to the parties and issues in dispute in this case. It accurately states the law. *See Oracle America, Inc. v. Google, Inc.*, 750 F.3d 1339, 1374 (Fed. Cir. 2014) ("The third factor asks the court to examine 'the amount and substantiality of the portion used in relation to the copyrighted work as a whole.' 17 U.S.C. § 107(3). Analysis of this factor is viewed in the context of the copyrighted work, not the

---

[115]   *Oracle America, Inc. v. Google, Inc.*, No. 10-cv-03561-WHA, ECF 1981 (May 26, 2016) (Jury Instruction 33).

[116] *Data General Corp. v. Grumman Systems Support Corp.*, 36 F.3d 1147, 1162 (1st Cir. 1994) ("a key purpose of the Section 408(b) deposit requirement is to prevent confusion about which work the author is attempting to register" and protect under the registration); *Harper House, Inc. v. Thomas Nelson, Inc.*, 5 F.3d 536, 1993 WL 346546 at 25 *2 (9th Cir. 1993) (unpublished) (comparisons of individual portions (pages) of parties' works rather than the entire works is "inappropriate and misleadingly prejudicial"; works must be compared as a whole") (emphasis added). *NXIVM Corp. v. The Ross Institute*, 364 F.3d 471, 481 (2d Cir. 2004) (fair use analysis under third factor must be based on entire work and not individual "modules").

1
2
3

infringing work . . . . '[T]he fact that a substantial portion of the infringing work was copied verbatim is evidence of the qualitative value of the copied material, both to the originator and to the plagiarist who seeks to profit from marketing someone else's copyrighted expression.' . . . The Ninth Circuit has recognized that, while 'wholesale copying does not preclude fair use per se, copying an entire work militates against a finding of fair use.'").

4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1124328.06

1    **DISPUTED: Cisco's Position on Arista's Final Instruction No. 56 re Copyright—Affirmative**

2                               **Defense: Fair Use: Fourth Factor**

3          Cisco's position is that no such instruction should be given.

4

5    **Cisco's Position:**

6          Arista's proposed instruction should be rejected. *First*, the instruction departs from

7 Instruction 17.21 of the *Ninth Circuit Manual of Model Civil Jury Instructions* ("*Model*")
expanding the *Model*'s instruction, and is unnecessarily lengthy. *Second*, Arista's proposed

8 instruction is prejudicial in both its length (suggesting outsized importance to the jury) and its
organization (which departs from the neutral approach of the Model Instruction by beginning with

9 a suggestion of fair use and a lack of liability.

10          Cisco further notes it is unduly excessive for the Court to provide six lengthy instructions
to the jury on the single topic of fair use. Arista's instructions are almost exclusively derived from

11 a single case where fair use was the sole issue before the jury on remand and Arista cites no other
authority for such extensive fair use instructions. Arista's instructions on fair use are thus

12 unbalanced with other instructions given in this case and are prejudicial to Cisco in that they may
improperly lead the jury to treat fair use with greater importance than the other topics addressed in

13 these instructions.

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1  **DISPUTED: Arista's Final Instruction No. 56 re Copyright—Affirmative Defense: Fair Use:**

2  **Fourth Factor**[117]

3        The fourth statutory factor is the effect of the accused infringer's use on the potential

4  market for or value of the copyrighted work.[118] This factor militates against fair use if the accused

5  use materially impairs the marketability or value of the copyrighted work.[119] This is the most

6  important factor, but it must be weighed with all other factors and is not necessarily dispositive.

7  This factor considers whether the accused work is offered or used as a substitute for the original

8  copyrighted work.[120] This factor considers not only the extent of any market harm caused by the

9  accused infringer's actions but also whether unrestricted and widespread use of the copyrighted

10 materials of the sort engaged in by the accused infringer would result in a substantially adverse

11 impact on the potential market for the copyrighted work.[121]  If the use of the copyrighted materials

12 is transformative, market substitution is at least less certain, and market harm may not be

13 presumed.[122]

14 _____

15    [117]  *Oracle America, Inc. v. Google, Inc.*, No. 10-cv-03561-WHA, ECF 1981 (May 26, 2016)
16 (Jury Instruction 34, 37).
   [118] 17 U.S.C. § 107.
17    [119] *Sofa Entm't, Inc. v. Dodger Prods.*, 709 F.3d 1273, 1280 (9th Cir. 2013)  ("Where the
secondary use is not a substitute for the original and does not deprive the copyright holder of a
18 derivative use, the fourth factor weighs in favor of fair use."); *Authors Guild v. Google, Inc.*, 804
F.3d 202, 224 (2d Cir. 2015) ("[T]he possibility, or even the probability or certainty, of some loss
19 of sales does not suffice to make the copy an effectively competing substitute that would tilt the
weighty fourth factor in favor of the rights holder in the original. There must be a meaningful or
20 significant effect "upon the potential market for or value of the copyrighted work.").

21    [120] *Sofa Entm't, Inc. v. Dodger Prods.*, 709 F.3d 1273, 1280 (9th Cir. 2013)  ("Where the
secondary use is not a substitute for the original and does not deprive the copyright holder of a
22 derivative use, the fourth factor weighs in favor of fair use."); *Authors Guild v. Google, Inc.*, 804
F.3d 202, 224 (2d Cir. 2015) ("[T]he possibility, or even the probability or certainty, of some loss
23 of sales does not suffice to make the copy an effectively competing substitute that would tilt the
weighty fourth factor in favor of the rights holder in the original. There must be a meaningful or
24 significant effect "upon the potential market for or value of the copyrighted work.").

25    [121] *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 590 (1994).
   [122] *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 591 (1994) ("[W]hen a commercial use
26 amounts to mere duplication of the entirety of an original, it clearly supersede[s] the objects of the
original and serves as a market replacement for it, making it likely that cognizable market harm to
27 the original will occur. But when, on the contrary, the second use is transformative, market
substitution is at least less certain, and market harm may not be so readily inferred.") (internal

28

1

2    **Arista's Position:**

3         This proposed instruction is modeled on Judge Alsup's in *Oracle*. *See Oracle*, ECF 1981

4    (May 26, 2016) (Jury Instruction 34). Arista made minor modifications to adapt it to the parties
     and issues in dispute in this case. Arista also added one new sentence: "If the use of the

5    copyrighted materials is transformative, market substitution is at least less certain, and market
     harm may not be presumed." This comes directly from Supreme Court case law. *See Campbell v.*

6    *Acuff-Rose Music, Inc*., 510 U.S. 569, 591 (1994) ("But when, on the contrary, the second use is
     transformative, market substitution is at least less certain, and market harm may not be so readily

7    inferred.") (internal citations and quotations omitted). The jury should be so instructed to properly
     evaluate the fourth fair use factor.

8

9         This instruction is also necessary to explain that the "amount and substantiality of the
     portion used" must be compared to the copyrighted work as a whole. *See NXIVM Corp. v. The*

10   *Ross Institute*, 364 F.3d 471, 481 (2d Cir. 2004) ("If plaintiffs' argument [that the third fair use
     factor should be based on individual "modules"] were accepted by courts — and, not surprisingly,

11   plaintiffs cite no authority to support it —the third factor could depend ultimately on a plaintiff's
     cleverness in obtaining copyright protection for the smallest possible unit of what would otherwise

12   be a series of such units intended as a unitary work.")  *See also Harper House, Inc. v. Thomas*
     *Nelson, Inc.*, 5 F.3d 536, 1993 WL 346546 at 25 *2 (9th Cir. 1993) (unpublished) (comparisons of

13   individual portions (pages) of parties' works rather than the entire works is "inappropriate and
     misleadingly prejudicial"; works must be compared as a whole).

14

15        This rule also reflects the "key purpose" of the copyright deposit requirement, which is "to
     prevent confusion about which work the author is attempting to register" and protect under the

16   registration. *Data General Corp. v. Grumman Systems Support Corp.*, 36 F.3d 1147, 1162 (1st
     Cir. 1994); *see also Nicholls v. Tufenkian Import/Export Ventures*, 367 F. Supp. 2d 514, 520

17   (S.D.N.Y. 2005) (one of the purposes of the copyright deposit requirement is to provide
     "sufficient material to identify the work in which the registrant claims a copyright").

18

19

20

21

22

23

24

25

26   _____

27   citations and quotations omitted); *see also Perfect 10, Inc. v. Amazon.com, Inc.,* 508 F.3d 1146,
     1168 (9th Cir. 2007).

28

1    **DISPUTED: Cisco's Final Instruction No. 60 re Copyright—Affirmative Defense: Merger**

2          To show that Cisco's copyrighted works are subject to merger, Arista must show that, at

3    the time Cisco created the works, Cisco had only one way, or very few ways, to express the idea

4    underlying the copyrighted user interface and related documentation.  If alternative expressions

5    were available to Cisco at the time it created them, then there is no merger.  An original work—

6    even one that serves a function—is entitled to copyright protection as long as the author had

7    multiple ways to express the underlying idea.[123]  What alternatives were available to Arista is not

8    relevant to merger.[124]

9          Arista has the burden of proving this defense by a preponderance of the evidence.[125]

10

11    **Cisco's Position:**

12          Cisco's proposed instruction is a concise, neutral and accurate description of the

13    affirmative defense of merger.  Contrary to Arista's request, the jury should be instructed on

      merger after the elements of infringement are set forth, as it is an affirmative defense to

14    infringement for which Arista bears the burden of proof. *Oracle Am., Inc. v. Google Inc.*, 750 F.3d

      1339, 1358 (Fed. Cir. 2014) (merger is an "affirmative defense[] to claims of infringement")

15    (citing *Ets-Hokin v. Skyy Spirits, Inc.*, 225 F.3d 1068, 1082 (9th Cir. 2000); *Satava v. Lowry,* 323

      F.3d 805, 810 n. 3 (9th Cir. 2003); *Kregos v. Associated Press*, 937 F.2d 700, 705 (2d Cir. 1991));

16    *Ninth Circuit Manual of Model Civil Jury Instructions* No. 1.2 (defendant bears burden of proof

17    for affirmative defenses).

18          In addition, after conferring with Arista and with Arista's approval, Cisco moved the

19    instruction on functionality ("[a]n original work—even one that serves a function—is entitled to

      copyright protection as long as the author had multiple ways to express the underlying idea.")

20    from Instruction No. 27 (Ideas and Expressions) to this instruction.

21    _____

22          [123]   *Oracle Am., Inc. v. Google Inc.*, 750 F.3d 1339, 1367 (Fed. Cir. 2014) ("under Ninth

23    Circuit law, an original work—even one that serves a function—is entitled to copyright protection

      as long as the author had multiple ways to express the underlying idea").

24          [124]   *Oracle Am., Inc. v. Google Inc.*, 750 F.3d 1339, 1361 (Fed. Cir. 2014) (1361 ("First, we

25    agree that merger cannot bar copyright protection for any lines of declaring source code unless

      [the author] had only one way, or a limited number of ways, to write them. The evidence showed

26    that [the author] had 'unlimited options as to the selection and arrangement of the 7000 lines

      Google copied.' This was not a situation where [the author] was selecting among preordained

27    names and phrases to create its packages… Because 'alternative expressions [we]re available,'

      there is no merger.").

28          [125]   Instruction No. 1.2, *Ninth Circuit Manual of Model Civil Jury Instructions* (2007).

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Arista's proposed instruction should be rejected.  *First*, Arista's instruction fails to inform the jury that Arista must show that: (1) the inquiry focuses on **Cisco's** options for expressions at the time of creation of the asserted work(s), not Arista's options or anyone else's at the time of copying; and (2) the inquiry looks at the options for expression available at the time of the work's creation.  *See Oracle*, 750 F.3d at 1361 (merger cannot bar copyright protection for any lines of declaring source code unless [the author] had only one way, or a limited number of ways, to write them.  The evidence showed that [the author] had 'unlimited options as to the selection and arrangement of the 7000 lines Google copied.'  This was not a situation where [the author] was selecting among preordained names and phrases to create its packages… Because 'alternative expressions [we]re available,' there is no merger.").

*Second*, Arista fails to set forth that it bears the burden of proving its affirmative defense, which is both the law and included in the *Model*.  *See Model* Instruction No. 1.2.

1

## **DISPUTED: Arista's Final Instruction No. 60 re Copyright—Merger**

2

3      If an idea and the expression of that idea merge, the expression will only be protected by

4   copyright law if the alleged copying of that expression is nearly identical.  If the idea underlying

5   the copyrighted work can be expressed in only one way or only a few ways, the expression of that

    idea will not constitute copyright infringement.[126]  This is known as the doctrine of "merger."

6

7

8   **Arista's Position:**

9      Arista proposes using the supplemental merger instruction provided by Ninth Circuit
    Model Jury Instruction 17.3 (citing *Apple Computer, Inc. v. Microsoft Corp.*, 35 F.3d 1435, 1444
10  (9th Cir. 1994); *CDN, Inc. v. Kapes*, 197 F.3d 1256, 1261 (9th Cir.1999)) (quoting *Ets-Hokin*, 225
11  F.3d 1068, 1082 (9th Cir. 2000) ("The merger doctrine "will not protect a copyrighted work from
    infringement if the idea underlying the copyrighted work can be expressed in only one way, lest
12  there be a monopoly on the underlying idea.")).  The phrase "or only a few ways," which Arista
    added, stems from ABA Model Jury Instruction 1.4.7 (Copyright, Trademark, and Trade Dress
13  Litigation) (citing cases and treatises); *see also Oracle Am., Inc. v. Google Inc.*, 750 F.3d 1339,
    1359 (Fed. Cir. 2014), cert. denied, 135 S. Ct. 2887, 192 L. Ed. 2d 948 (2015) ("[W]hen there are
14  a limited number of ways to express an idea, the idea is said to 'merge' with its expression, and
    the expression becomes unprotected.").  Cisco proposes the equivalent phrase "or a limited
15  number of ways."

16     Cisco's merger instruction insists that merger is an affirmative defense.  It is not.  Cisco
    bears the burden of proving originality and protectability.  Merger is part and parcel of Cisco's
17  burden.  *See Ets-Hokin v. Skyy Spirits, Inc.*, 225 F.3d 1068, 1082 (9th Cir. 2000) (holding merger
    doctrine is a "defense[] to infringement").  That is why merger is listed as a supplement instruction
18  to Ninth Circuit Model Jury Instruction 17.3, *with no mention of it being an affirmative defense.*

19
       Merger is a defense to infringement, not an affirmative defense, because it stems from the
20  originality requirement, which is Cisco's burden to prove.  4-13 Nimmer on Copyright §
    13.03[F][3].  *See also* 4-13 Nimmer on Copyright § 13.03[B][3], [B][4].  The *Oracle v. Google*
21

22

---

23  [126] Ninth Circuit Model Jury Instruction 17.3 Supplemental Instruction for merger defense
    (citing *Apple Computer, Inc. v. Microsoft Corp.*, 35 F.3d 1435, 1444 (9th Cir. 1994); *CDN, Inc. v.*
24  *Kapes*, 197 F.3d 1256, 1261 (9th Cir.1999)) (quoting *Ets-Hokin*, 225 F.3d 1068, 1082 (9th Cir.
    2000) ("The merger doctrine "will not protect a copyrighted work from infringement if the idea
25  underlying the copyrighted work can be expressed in only one way, lest there be a monopoly on
    the underlying idea.").  The phrase "or only a few ways" stems from ABA Model Jury Instruction
26  1.4.7 (Copyright, Trademark, and Trade Dress Litigation) (citing cases and treatises); *see also*
    *Oracle Am., Inc. v. Google Inc.*, 750 F.3d 1339, 1359 (Fed. Cir. 2014), cert. denied, 135 S. Ct.
27  2887, 192 L. Ed. 2d 948 (2015) ("[W]hen there are a limited number of ways to express an idea,
    the idea is said to 'merge' with its expression, and the expression becomes unprotected.").
28

1   Federal Circuit decision incorrectly states that scènes à faire is an affirmative defense, but the
2   citations to Ninth Circuit law and the rest of the discussion in the case make clear that it is not.
    *See* 750 F.3d 1339, 1358 (Fed. Cir. 2014).

**DISPUTED: Cisco's Final Instruction No. 61 re Copyright—Affirmative Defense: Scènes À Faire**

Scènes à faire is an affirmative defense to copyright infringement.[127]

To show that the infringed portions of Cisco's user interface are scènes à faire material, Arista must show that, at the time Cisco created the user interface—not at the time Arista copied it—external factors other than Cisco's creativity dictated that Cisco select, arrange, organize and design its original features in the manner it did. The scènes à faire doctrine depends on the circumstances presented to the creator at the time of creation, not the circumstances presented to the copier at the time it copied.[128]

Arista has the burden of proving this defense by a preponderance of the evidence.[129]

**Cisco's Position:**

Cisco's proposed instruction is a concise, neutral and accurate description of the scènes à faire affirmative defense. Cisco's proposed language directly mirrors the legal standard, which states that scènes à faire "identifies and excludes from protection against infringement expression whose creation 'flowed naturally from considerations external to the author's creativity.'" *Oracle Am., Inc. v. Google Inc.*, 750 F.3d 1339, 1358 (Fed. Cir. 2014). Thus, Cisco's instruction directs that the defense applies if "external factors other than Cisco's creativity" dictated its protectable expression. Further, Cisco's cited authority includes the direction that: (1) "the focus … is on the circumstances presented to the creator, not the copier," *id.* at 1364; and (2) the relevant time is "the time of creation," *id.*

The Court should reject Arista's proposed instruction, which is not neutral, not concise, and not accurate.

---

[127]    *Oracle Am., Inc. v. Google Inc.*, 750 F.3d 1339, 1358 (Fed. Cir. 2014) (In the Ninth Circuit, while questions regarding originality are considered questions of copyrightability," scènes à faire is an "affirmative defense[] to claims of infringement.") (citing cases).

[128]    *Oracle Am., Inc. v. Google Inc.*, 750 F.3d 1339, 1358 (Fed. Cir. 2014) ("The court's analytical focus must be upon the external factors that dictated [the author's] selection of classes, methods, and code—not upon what Google encountered at the time it chose to copy those groupings and that code. '[T]he scenes a faire doctrine identifies and excludes from protection against infringement expression whose creation 'flowed naturally from considerations external to the author's creativity.'"); *id.* at 1364 ("the focus of the scenes a faire doctrine is on the circumstances presented to the creator, not the copier"); *id.* at 1364 (scènes à faire must be determined at the time of creation).

[129]    Instruction No. 1.2, *Ninth Circuit Manual of Model Civil Jury Instructions* (2007).

*First*, Arista's second paragraph is improper because it refers to (and rests on authority concerning) computer programming and supposed standard practices in such programming. This case, however, is not about a computer program; it is rather about a user interface that is visible to a human operator and that thus has no necessary or standard form of expression. The mere fact that a particular user interface becomes widely used after its creation does not mean that it was "standard" at the time of its creation. *See* Cisco's Proposed Instruction No. 28 (Industry Standard Not Relevant), *supra*; Motion in Limine Ruling at 3 (excluding evidence on "industry standard" or "*de facto* industry standard"); *cf.* Order on Daubert Motions at 2-8 (excluding expert testimony purporting to opine on a "*de facto* industry standard" and whether there is "widespread use [of it] throughout the industry").

*Second*, even if computer programming cases were relevant in this user interface case, Arista's proposed language in its third paragraph is not based on any cited Ninth Circuit authority, but rather case law of other Circuits. For example, Cisco's proposed instruction that scènes à faire applies to "hardware standards," "software standards," "compatibility requirements," "computer manufacturer design standards," "target industry practices," and "business practices and technical requirements of the end user" are not in any Ninth Circuit citations and thus should be rejected. Further, to the extent that such cases have any persuasive authority, they largely related not to user interfaces like Cisco's, but rather to computer programming. Moreover, Arista's cited case of *Sega Enterprises Ltd. v. Accolade, Inc.*, 977 F.2d 1510, 1524 (9th Cir. 1992), makes no mention of scènes à faire at all but rather addresses functionality, a separate concept which is addressed in other instructions herein. *See supra* Instruction No. 27 (Ideas and Expressions). Finally, Arista's instruction is prejudicial in that it unnecessarily includes examples of what it purports are scènes à faire but no examples of what are not, thus prejudicing Cisco; the most neutral and balanced way to present the legal test, as Cisco has proposed, would not inject biased examples that are not even established as proper under the applicable law.

*Third*, Arista's second paragraph incorrectly states the standard. For example, Arista fails to state that the defense necessarily fails where an author, at the time of creation, has more than one or a limited number of ways to express an underlying idea. Arista also fails to acknowledge that the inquiry focuses only on the author and not the infringer, and the only relevant time is the time of creation and not whether the expression has become useful or even commonplace subsequently. *See* Cisco's Proposed Instruction No. 28 (Industry Standard Not Relevant); *Oracle Am., Inc. v. Google Inc.*, 750 F.3d 1339, 1358 (Fed. Cir. 2014) ("The court's analytical focus must be upon the external factors that dictated [the author's] selection of classes, methods, and code—not upon what Google encountered at the time it chose to copy those groupings and that code. '[T]he scènes à faire doctrine identifies and excludes from protection against infringement expression whose creation 'flowed naturally from considerations external to the author's creativity.'"); *id.* at 1364 (scènes à faire must be determined at the time of creation, and "the focus of the scènes à faire doctrine is on the circumstances presented to the creator, not the copier"). Arista in fact suggests that the moment it elected to copy Cisco's protected expression is the relevant consideration by discussing "the right of software developers to ***adopt*** elements of a program," which has no basis in Arista's own cited authority. *See Computer Associates Int'l, Inc. v. Altai, Inc.*, 982 F.2d 693, 709 (2d Cir. 1992) (stating that a "programmer's freedom of design choice is often circumscribed by extrinsic considerations," and not referring to any supposed right to "adopt"). It is not relevant whether it was "virtually impossible" for Arista to write a program without using Cisco's protected expression, but rather whether it was impossible for ***Cisco***, at the time of creation, to create its protected expression in any way other than it did because external

1  factors dictated as much.  *Id.*  Cisco's proposed instruction, in contrast, tracks the applicable legal

2  standard in a succinct and neutral manner: the relevant inquiry is whether "external factors" other
   than Cisco's creativity directed Cisco's choices in its expression; if they did not, the scènes à faire

3  affirmative defense does not apply as a matter of law.

4      *Fourth*, the last sentence of the second paragraph should be rejected because it
   inappropriately suggests that the commonplace ideas or expressions discussed in the previous

5  sentence are by definitions "necessary incidents of an idea."  This is untrue as a matter of law and
   logic, and the cases Arista cites in support of these sentences do not conflate these distinct

6  concepts, as Arista has done.

7      *Fifth*, Arista's proposed final paragraph should be rejected because it has no relevance to
   this particular case and in any event is contrary to law, as the proper inquiry focuses only on

8  whether Cisco had sufficient alternative methods of expression, and not whether "other authors"
   later desired to use Cisco's expression.  *See* Cisco's Proposed Instruction No. 28 (Industry

9  Standard Not Relevant).

10     *Sixth*, Arista's instruction fails to instruct that Arista bears the burden of proving this

11 affirmative defense.  Instruction No. 1.2, *Ninth Circuit Manual of Model Civil Jury Instructions*
   (2007); *see Oracle Am., Inc. v. Google Inc.*, 750 F.3d 1339, 1358 (Fed. Cir. 2014) (In the Ninth

12 Circuit, while questions regarding originality are considered questions of copyrightability,"
   scènes à faire is an "affirmative defense[] to claims of infringement.  *Ets–Hokin*, 225 F.3d at 1082;

13 *Satava v. Lowry*, 323 F.3d 805, 810 n.3 (9th Cir. 2003) ("The Ninth Circuit treats scenes a faire as
   a defense to infringement rather than as a barrier to copyrightability."). The Ninth Circuit … has

14 made clear that, in that circuit," scènes à faire is "to be treated as [a] defense[s] to infringement.
   [*Ets–Hokin,* 225 F.3d at 1082] … *Reed–Union Corp. v. Turtle Wax, Inc.,* 77 F.3d 909, 914 (7th

15 Cir.1996) (explaining why the doctrine of scenes a faire is separate from the validity of a

16 copyright))."

17

18

19

20

21

22

23

24

25

26

27

28

1

**DISPUTED: Arista's Final Instruction No. 61 re Copyright—Scènes À Faire[130]**

2

Arista asserts that its work does not infringe Cisco's copyright because of the doctrine of

3  scènes à faire.  Under the doctrine of scènes à faire, which means "scene setting," a standard or

4  typical theme, setting, or background that is common to a large number of works, such as a

5  common plot device, is unprotected matter that may be copied.  These elements of a work are

6  given only limited copyright protection, because they are not likely to be original and because, as a

7  type of idea, they are necessary for the creation of other works.

8

Scènes à faire applies in the context of computer programs as well, because in certain

9  instances, it is virtually impossible to write a program to perform particular functions in a specific

10  computing environment without employing standard techniques.[131]  Scènes à faire protects the

11  right of software developers to adopt elements of a program dictated by practical realities, such as

12  by hardware standards and mechanical specifications, software standards and compatibility

13  requirements, computer manufacturer design standards, target industry practices, the business

14  practices and technical requirements of the end user, and standard computer programming

15  practices.[132]  Cisco may not claim copyright protection of an idea and expression that is, if not

16

---

17       [130] ABA Model Jury Instructions, Copyright, Trademark, and Trade Dress Litigation,
Instruction 1.4.8.  The Ninth Circuit does not have an analogous model jury instruction.  *See also*
18  4-13 Nimmer on Copyright § 13.03[B][4].

       [131] 4-13 Nimmer on Copyright § 13.03[F][3] ("These doctrines of scenes a faire and lack of
19  originality apply particularly to computer programs, because in many instances, it is virtually
impossible to write a program to perform particular functions in a specific computing environment
20  without employing standard techniques."); *Computer Associates Intern., Inc. v. Altai, Inc.* 982
F.2d 693, 709–10 (2d Cir. 1992) (quoting Nimmer).
21
       [132] *Oracle Am., Inc. v. Google Inc.*, 750 F.3d 1339, 1363 (Fed. Cir. 2014) ("In the computer
22  context, the scene a faire doctrine denies protection to program elements that are dictated by
external factors such as 'the mechanical specifications of the computer on which a particular
23  program is intended to run' or 'widely accepted programming practices within the computer
industry.'" (internal quotation marks omitted); *Satava v. Lowry*, 323 F.3d 805, 807 (9th Cir. 2003)
24  (The Copyright Act "denie[s] artists the exclusive right to ideas and standard elements in their
works, thereby preventing them from monopolizing what rightfully belongs to the public . . . .
25  [E]xpressions that are standard, stock, or common to a particular subject matter or medium are not
protectable under copyright law."); *Apple Computer, Inc. v. Microsoft Corp.*, 35 F.3d 1435, 1444
26  (9th Cir. 1994) ("The doctrine of scenes a faire is closely related . . . . [W]hen similar features in a
videogame are as a practical matter indispensable, or at least standard, in the treatment of a given
27  idea, they are treated like ideas and are therefore not protected by copyright.") (internal citations,

28

1124328.06

standard, then commonplace in the computer software industry.[133]  Such elements are not

protected by copyright laws because granting copyright protection to the necessary incidents of an

idea would effectively afford a monopoly to the first programmer to express those ideas.[134]

---

quotation marks, and alterations omitted);*Computer Associates Int'l, Inc. v. Altai, Inc.*, 982 F.2d 693, 709–10 (2d Cir. 1992) ("[A] programmer's freedom of design choice is often circumscribed by extrinsic considerations such as (1) the mechanical specifications of the computer on which a particular program is intended to run; (2) compatibility requirements of other programs with which a program is designed to operate in conjunction; (3) computer manufacturers' design standards; (4) demands of the industry being serviced; and (5) widely accepted programming practices within the computer industry."); *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 387 F.3d 522, 535 (6th Cir. 2004) ("In the computer-software context, the doctrine means that the elements of a program dictated by practical realities—e.g., by hardware standards and mechanical specifications, software standards and compatibility requirements, computer manufacturer design standards, target industry practices, and standard computer programming practices—may not obtain protection."); *Gates Rubber Co. v. Bando Chem. Indus., Ltd.*, 9 F.3d 823, 838 (10th Cir. 1993) ("The scenes a faire doctrine also excludes from protection those elements of a program that have been dictated by external factors.  In the area of computer programs these external factors may include: hardware standards and mechanical specifications, software standards and compatibility requirements, computer manufacturer design standards, target industry practices and demands, and computer industry programming practices.") (citing cases and Nimmer) (internal citations omitted); *Sega Enterprises Ltd. v. Accolade, Inc.*, 977 F.2d 1510, 1524 (9th Cir. 1992), as amended (Jan. 6, 1993) ("[C]omputer programs are, in essence, utilitarian articles—articles that accomplish tasks. As such, they contain many logical, structural, and visual display elements that are dictated by the function to be performed, by considerations of efficiency, or by external factors such as compatibility requirements and industry demands."); *Frybarger v. Int'l Bus. Machines Corp.*, 812 F.2d 525, 530 (9th Cir. 1987) (discussing *scenes a faire*: "[W]e believe that each of the similar features constitutes a basic idea of the videogames and, to the extent each feature is expressive, that the expression is as a practical matter indispensable, or at least standard, in the treatment of a given idea.") (internal quotation marks and alterations omitted); 4-13 Nimmer on Copyright § 13.03[F][3] (discussing "hardware standards," "software standards," "computer manufacturers' design standards," target industry practices," "the business practices and technical requirements of the end user," and "computer industry programming practices" in sub-sections [a]–[e]).

[133] *Telemarketing Res. v. Symantec Corp.*, No. C88-20352 RPA, 1989 WL 200350, at *5 (N.D. Cal. Sept. 6, 1989), *aff'd in part, vacated in part, remanded sub nom. Brown Bag Software v. Symantec Corp.*, 960 F.2d 1465 (9th Cir. 1992) ("Plaintiffs may not claim copyright protection of an idea and expression that is, if not standard, then commonplace in the computer software industry."); *Satava v. Lowry*, 323 F.3d 805, 807 (9th Cir. 2003) (The Copyright Act "denie[s] artists the exclusive right to ideas and standard elements in their works, thereby preventing them from monopolizing what rightfully belongs to the public . . . .  [E]xpressions that are standard, stock, or common to a particular subject matter or medium are not protectable under copyright law.").

[134] *Gates Rubber Co. v. Bando Chem. Indus., Ltd.*, 9 F.3d 823, 838 (10th Cir. 1993) ("Granting copyright protection to the necessary incidents of an idea would effectively afford a monopoly to

-122-

1      In drawing the line between protected and unprotected matter, you should follow the

2 principle that copyright protection should not extend so far that it will interfere with the "tools of

3 the trade" that other authors should be able to use in creating future works.[135]

4

5 **Arista's Position:**

6      Arista's scènes à faire instruction comes from ABA Model Jury Instruction for Copyright

7 1.4.8 (The Ninth Circuit does not have a model for scènes à faire).  Cisco's is drafted from whole cloth and plainly designed to minimize this important issue.

8      First, Cisco wrongly states, without any authority, that scènes à faire is an affirmative

9 defense.  Scènes à faire is a defense to infringement, not an affirmative defense, because it stems

10 from the originality requirement, which is Cisco's burden to prove.  4-13 Nimmer on Copyright § 13.03[F][3].  The ABA model instruction acknowledges this—it makes no mention of Arista

11 bearing the burden to prove scènes à faire.  Likewise, the Ninth Circuit stated in *Ets-Hokin v. Skyy*

12 *Spirits, Inc.*, 225 F.3d 1068, 1082 (9th Cir. 2000), that scènes à faire is a "defense[] to infringement."  *See also* 4-13 Nimmer on Copyright § 13.03[B][3], [B][4].  (The *Oracle v. Google*

13 Federal Circuit decision incorrectly states that scènes à faire is an affirmative defense, but the citations to Ninth Circuit law and the rest of the discussion in the case make clear that it is not.

14 *See* 750 F.3d 1339, 1358 (Fed. Cir. 2014).

15      Second, Cisco's proposed instruction states that the asserted elements are "original

16 features," which is a question for the jury to decide, and should not be stated in a jury instruction as though it were true.

17      Third, Cisco's proposed instruction barely describes the scènes à faire defense.  Out of

18 three sentences, half of one explains the concept, and the rest of the instruction is a ream of qualifiers.  It is plainly one-sided and unfair.

19      Finally, Arista proposes an addition to the ABA model instruction to explain how scènes à

20 faire applies in the context of computers.  The ABA model is focused on literary works like *Romeo and Juliet*.  There is a significant body of Ninth Circuit case law applying scènes à faire to

21 computer programs from which the Court can draw to craft an appropriate instruction.  Arista's

22 _____

23 the first programmer to express those ideas."); *Satava v. Lowry*, 323 F.3d 805, 807 (9th Cir. 2003) (The Copyright Act "denie[s] artists the exclusive right to ideas and standard elements in their

24 works, thereby preventing them from monopolizing what rightfully belongs to the public . . . . [E]xpressions that are standard, stock, or common to a particular subject matter or medium are not

25 protectable under copyright law."); *Mattel, Inc. v. MGA Entm't, Inc.*, 616 F.3d 904, 913 (9th Cir. 2010), *as amended on denial of reh'g* (Oct. 21, 2010) (authors cannot copyright ideas,

26 "[o]therwise, the first person to express any idea would have a monopoly over it.").

27 [135] ABA Model Jury Instructions, Copyright, Trademark, and Trade Dress Litigation, Instruction 1.4.8.  The Ninth Circuit does not have an analogous model jury instruction.  *See also*

28 4-13 Nimmer on Copyright § 13.03[B][4].

1   proposal incorporates quotations from those cases and related authorities.  The Court should adopt
2   Arista's proposed instruction because it is neutral, tied to the facts of the case, and faithful to the
    law.

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1124328.06

**DISPUTED: Cisco's Position on Arista's Final Instruction No. 62 re Copyright—Affirmative**

**Defense: Copyright Misuse**

Cisco's position is that no such instruction should be given.

**Cisco's Position:**

No such instruction should be given.  Instruction No. 17.27 of the *Ninth Circuit Manual of Model Civil Jury Instructions* provides that "the Ninth Circuit has not yet decided whether the equitable defense of copyright misuse should be submitted to the jury or is an issue for the court to decide."  However, because copyright misuse is an equitable defense, it is not for the jury to decide.  *See Omega S.A. v. Costco Wholesale Corp.*, 776 F.3d 692, 699-700 (9th Cir. 2015) (Wardlaw, J., concurring in the judgment) ("We expressly adopted copyright misuse as an equitable defense to a claim of infringement") (citation omitted); *Vernor v. Autodesk, Inc.*, 621 F.3d 1102, 1115 (9th Cir. 2010) ("[c]opyright misuse is an equitable defense"); *Granite State Ins. Co. v. Smart Modular Techs., Inc.*, 76 F.3d 1023, 1027 (9th Cir. 1996) ("A litigant is not entitled to have a jury resolve a disputed affirmative defense if the defense is equitable in nature.").

If the Court should disagree, Cisco respectfully reserves its right to propose a proper instruction on copyright misuse.

**DISPUTED: Arista's Final Instruction No. 62 re Copyright—Affirmative Defense: Copyright Misuse[136]**

Arista claims it is not liable for copyright infringement because Cisco misused its copyrights.  While the Copyright Act gives a copyright owner a limited monopoly in a copyrighted work, the owner's attempts to extend the scope of this monopoly may under certain circumstances constitute misuse.  If you find that Cisco misused its copyrights, it cannot assert an infringement claim against Arista.

To prevail upon its claim that Cisco misused its copyrights, Arista must prove that Cisco attempted to use the existence of its copyrights to prevent Arista from using unprotected elements of the copyrighted work, or to prevent Arista from undertaking activity safeguarded by public policy, such as the policies supporting fair use.

Arista has the burden of proof to establish Cisco's copyright misuse by a preponderance of the evidence.  If you find that Arista has satisfied this burden of proof, then you should find in favor of Arista on the issue of copyright infringement.

**Arista's Position:**

Arista's proposed instruction on the defense of misuse is based upon the ABA Model Jury Instructions, Copyright, Trademark, and Trade Dress Litigation, Instruction 1.6.9.  "Misuse claims may be decided by a jury."  4 Patry on Copyright § 10A:1.  In *Alcatel USA, Inc. v. DGI Technologies, Inc.*, 166 F.3d 772–73 (5th Cir. 1999), the Fifth Circuit found that the district court abused its discretion when it ignored the jury's finding that a copyright holder had engaged in copyright misuse.  The First Circuit has also upheld a jury's misuse findings.  *See Banco Popular De Puerto Rico v. Asociacion De Compositores Y Editores De Musica Latinoamericana (ACEMLA)*, 678 F.3d 102, 111 (1st Cir. 2012) (holding that "the jury was not unreasonable in rejecting this [misuse] defense.").  While No. 17.23 of the Ninth Circuit's Model Civil Jury Instructions (last updated 6/2016) points out that "the Ninth Circuit has not yet decided whether the equitable defense of copyright misuse should be submitted to the jury or is an issue for the court to decide," Cisco has not identified any case law within or beyond this circuit affirmatively stating that it must be decided by the Court.

Given the unsettled nature of the matter, if the Court believes the defense of misuse may be

---

[136] ABA Model Jury Instruction, 1.6.9.

1    equitable, it should nevertheless request an advisory verdict from the jury, consistent with the
Court's approach to disgorgement.

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**DISPUTED: Cisco's Final Instruction No. 63 re Copyright—Willful Infringement[137]**

Arista's copyright infringement is considered willful if Cisco proves both of the following elements by a preponderance of the evidence:

1. Arista infringed the copyright to one or more of Cisco's copyrighted works; and

2. Arista either knew its acts infringed the copyright or Arista's actions were the result of reckless disregard for, or willful blindness to, Cisco's copyrights.

**Cisco's Position:**

Cisco's proposed instruction directly tracks Instruction No. 17.36 from the *Ninth Circuit Manual of Model Civil Jury Instructions* ("*Model*") in form and substance.

Arista's proposed instruction is identical, except that it has added an extra sentence at the end, unsupported by any authority: "Arista may refute evidence of willful infringement by establishing its good faith belief in the innocence of its conduct, and that it was reasonable in holding such a belief." This statement is not part of the primary *Model*, and Arista has not provided a justification for departure from the *Model*. Further, Arista's proposed addition is superfluous, as one who has good faith belief of innocence and a reasonable in such a belief cannot have the requisite knowledge of infringement.

---

[137] Instruction No. 17.27, *Ninth Circuit Manual of Model Civil Jury Instructions* (2007); *Louis Vuitton Malletier, S.A. v. Akanoc Sols., Inc.*, 658 F.3d 936, 944 (9th Cir. 2011) ("To prove 'willfulness' under the Copyright Act, the plaintiff must show (1) that the defendant was actually aware of the infringing activity, or (2) that the defendant's actions were the result of reckless disregard for, or willful blindness to, the copyright holder's rights."); *Washington Shoe Co. v. A-Z Sporting Goods Inc.*, 704 F.3d 668, 674 (9th Cir. 2012) ("We have explained that a finding of 'willfulness' in the copyright context can be based on either 'intentional' behavior or merely 'reckless' behavior, and that to prove 'willfulness' under the Copyright Act, the plaintiff must show (1) that the defendant was actually aware of the infringing activity, or (2) that the defendant's actions were the result of reckless disregard for, or willful blindness to, the copyright holder's rights." (internal citation, quotation marks, and brackets omitted)); *id.* ("To prove willfulness, plaintiffs must show that the infringer had actual or constructive knowledge that it was infringing the plaintiffs' copyrights or else acted in reckless disregard of the high probability that it was infringing plaintiffs' copyrights."); *In re Barboza*, 545 F.3d 702, 707 (9th Cir. 2008) ("The term 'willful' as used in copyright infringement case … can be based on either intentional behavior or merely reckless behavior." (quotation marks omitted)).

**DISPUTED: Arista's Final Instruction No. 63 re Copyright—Willfulness[138]**

Copyright infringement is considered willful if Cisco proves both of the following elements by a preponderance of the evidence:

1. Arista engaged in acts that infringed the copyright; and

2. Arista knew that those acts infringed the copyright, or Arista acted with reckless disregard for, or willful blindness to, the copyright holder's rights.

Arista may refute evidence of willful infringement by establishing its good faith belief in the innocence of its conduct, and that it was reasonable in holding such a belief.

**Arista's Position:**

Arista objects to a jury instruction on willful copyright infringement. As set forth in Arista's supplemental brief regarding copyright willfulness (ECF No. 636), the jury should not be instructed on willful infringement.

First, Cisco's assertion that Arista's laches defense requires willfulness to be decided by the jury is not supported by the law, including the cases Cisco cited in its supplemental briefing on willfulness. Cisco's cited case law indicates that, at most, where the jury **has already ruled** on willfulness, the Court should take the jury's conclusion into account when considering willful infringement. *See* Cisco's Supplemental Brief, ECF No. 634 (citing *Anhing Corp. v. Thuan Phong Co. Ltd.*, No. CV1305167-BRO (MANx), 2015 WL 4517846, at *8 (C.D. Cal. July 24, 2015)). Arista's attorneys have found no Ninth Circuit authority suggesting that a jury verdict on willfulness is required—or even recommended—where a defendant assert a laches defense to copyright infringement. *See, e.g., Goldberg v. Cameron,* 482 F. Supp. 2d 1136, 1152 (N.D. Cal. 2007). Here, however, where there is <u>no</u> reason for the jury to decide willfulness, beyond Arista's equitable laches defense, there is no justification for a jury instruction or verdict on willfulness, and doing so would only confuse the jury.

Second, Cisco maintains that copyright willfulness should remain part of this case because, technically, Cisco can elect statutory damages at any time prior to final judgment, and a finding of willfulness would impact the calculation of statutory damages. However, because Arista has now agreed to stipulate that, if Cisco ever elects statutory damages, the Court may make a finding of copyright willfulness for the sole purpose of calculating statutory damages. This stipulation obviates any need, with respect to the calculation of statutory damages, for the Court to include a

---

[138]    Manual of Model Civil Jury Instructions (2007 Ed., last updated 6/2016), Instruction No. 17.36 ("COPYRIGHT—DAMAGES—WILLFUL INFRINGEMENT (17 U.S.C. § 504(c)(2))"); Comments to the Manual of Model Civil Jury Instructions (2007 Ed.); *Peer Int'l Corp. v. Pausa Records, Inc.*, 909 F.2d 1332, 1335–36 (9th Cir. 1990); *Evergreen Safety Council v. RSA Network Inc.*, 697 F.3d 1221, 1228 (9th Cir. 2012).

1    jury instruction on copyright willfulness.

2         Third, a finding of willful copyright infringement does not prevent Arista from deducting
3    expenses (beyond income and excess profit taxes) for purposes of calculating disgorgement.
     There is no Ninth Circuit support for altering the calculation of deductible expenses where
4    infringement is willful, **with the exception** of income and excess profit taxes.  *Oracle v. Google*,
     131 F. Supp. 3d 946, 951 (N.D. Cal. 2015) ("[A]n examination of the decisional law [in the Ninth
5    Circuit] on this issue finds no authoritative support for altering the calculus of 'deductible
     expenses' where the infringement at issue was willful, except as to income and excess profits
6    taxes.").  In this case, Arista has never elected to seek a deduction for its income or excess profit
     taxes, and as set forth in the pretrial conference statement, it will not do so.  ECF No. 593 at 17-
7    18.  Accordingly, a finding of copyright willfulness has no impact on Arista's calculation of
     deductible expenses, and thus does not justify submission of willfulness to the jury.

8

9         Finally, Cisco argues that a finding of willful copyright infringement is relevant to Arista's
     fair use defense.  As set forth in Arista's supplemental briefing on willfulness, Cisco may present
10   evidence relating to whether Arista's alleged copyright infringement was intentional, and submit a
     fair use jury instruction that incorporates the issue of good faith.  But this provides no justification
11   for submitting a separate jury instruction on copyright willfulness.  Arista's fair use defense does
     not open the door for Cisco to label Arista's conduct as "willful," nor can it justify submission of
12   copyright willfulness to the jury.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1    **<u>STIPULATED: Final Instruction No. 64 re Copyright—Damages</u>**[139]

2        It is the duty of the Court to instruct you about the measure of damages.  By instructing

3    you on damages, the Court does not mean to suggest for which party your verdict should be

4    rendered.

5        If you find for Cisco on its copyright infringement claim, you must determine Cisco's

6    damages.  Cisco is entitled to recover the actual damages suffered as a result of the infringement.

7    In addition, Cisco is also entitled to recover any of Arista's profits attributable to the infringement,

8    to the extent you did not already account for those profits in determining Cisco's actual damages.

9    Cisco must prove damages by a preponderance of the evidence.

10        It is for you to determine what damages, if any, have been proved.  Your award must be

11    based upon evidence and not upon speculation, guesswork or conjecture.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

---

[139]    Instruction Nos. 5.1 & 17.31, *Ninth Circuit Manual of Model Civil Jury Instructions* (2007); 17 U.S.C. § 504(b); *Synopsys, Inc. v. ATopTech, Inc.*, No. 13-cv-2965 (N.D. Cal.), ECF No. 688 at 16 (Final Instructions).

1    **STIPULATED: Final Instruction No. 65 re Copyright—Actual Damages**[140]

2    Cisco is entitled to recover the actual damages suffered as a result of Arista's infringement.

3    Actual damages means the amount of money adequate to compensate the copyright owner for the

4    reduction in the fair market value of the copyrighted work caused by the infringement.  Actual

5    damages may be measured by the profits of the copyright owner lost due to the infringement,

6    referred to as "lost profits."   In this case, actual damages in the form of lost profits are the amount

7    that Cisco would have earned but for Arista's infringement.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22    _____

23    [140]   Instruction No. 17.32, *Ninth Circuit Manual of Model Civil Jury Instructions* (2007);
24    *Synopsys, Inc. v. ATopTech, Inc.*, No. 13-cv-2965 (N.D. Cal.), ECF No. 688 at 17 (Final
      Instructions); *Oracle Corp. v. SAP AG*, 765 F.3d 1081, 1087 (9th Cir. 2014) ("'actual damages'
25    can be awarded in the form of lost profits"); 5 NIMMER ON COPYRIGHT § 14.02[A][1] ("[T]he
      plaintiff's damages may be said to equal the profits that the plaintiff might have accrued but for
26    the defendant's infringement."); *Polar Bear Prods., Inc. v. Timex Corp.*, 384 F.3d 700, 708 (9th
      Cir. 2004) ("Actual damages are usually determined by the loss in the fair market value of the
27    copyright, measured by the profits lost due to the infringement or by the value of the use of the
28    copyrighted work to the infringer.").

1    **DISPUTED: Cisco's Final Instruction No. 66 re Copyright—Infringer's Profits[141]**

2    In addition to actual damages, Cisco is entitled to any profits of Arista attributable to the

3    infringement.  You may not include in an award of profits any amount that you took into account

4    in determining actual damages.  You may make an award of Arista's profits only if you find that

5    Cisco showed a causal nexus between the profits it seeks and the copyright infringement.  In this

6    case, because Cisco seeks only direct profits, Cisco may satisfy its burden by showing that the

7    profits it seeks to recover derive directly from sales of the infringing products.[142]

8    Arista's profits are determined by subtracting all deductible expenses from Arista's gross

9    revenue.  Arista's gross revenue is all of Arista's revenue directly from the sale of any products

10   containing or using Cisco's copyrighted works.  Cisco has the burden of proving Arista's gross

11   revenue by a preponderance of the evidence.

12   Deductible expenses are the portion of Arista's operating costs, overhead costs, and

13   production costs incurred by Arista in producing Arista's gross revenue from the infringing

14   products.  Arista has the burden of proving its expenses by a preponderance of the evidence.

15   Unless you find that a portion of the profit from the sale of a product containing or using

16   Cisco's copyrighted works is attributable to factors other than the copyrighted works, all of the

17   profit is to be attributed to the infringement.  Arista has the burden of proving by a preponderance

18

19   _____

20   [141]    Instruction No. 17.33, *Ninth Circuit Manual of Model Civil Jury Instructions* (2007);

21   *Synopsys, Inc. v. ATopTech, Inc.*, No. 13-cv-2965 (N.D. Cal.), ECF No. 688 at 18 (Final
     Instructions).

22   [142]    Order on Daubert Motions at  16 ("Importantly, Arista also acknowledged to the Court
     that for establishing a royalty base, Cisco could satisfy its initial burden by showing that the direct

23   profits are derived from the infringing products. …  Assuming that Cisco is seeking only direct
     profits, Cisco must at least show that the profits it seeks to recover derive directly from the

24   infringing products."); *Polar Bear Prods., Inc. v. Timex Corp.*, 384 F.3d 700, 708 (9th Cir. 2004);
     *Brocade Commc'ns Sys. v. A10 Networks, Inc.*, No. 10-cv-3428-PSG, 2013 WL 831528, at *6

25   (N.D. Cal. Jan. 10, 2013) (noting that, to recover disgorgement of direct profits, a plaintiff may
     satisfy the "causal link" requirement by showing the "gross revenues from the infringing

26   product"); *see also, e.g.*, *On Davis v. The Gap, Inc.*, 246 F.3d 152, 160 (2d Cir. 2001); *Taylor v.

27   Meirick*, 712 F.2d 1112, 1122 (7th Cir. 1983) (finding a prima facie case made by a showing that
     the proffered gross revenue is from the sale of the infringing product).

28

-133-                     Case No. 5:14-cv-5344-BLF

1    of the evidence the portion of the profit, if any, attributable to factors other than the copyrighted

2    works.

3            Arista's profits do not need to be calculated with mathematical or absolute exactness by

4    either Cisco or Arista.  The law requires only a reasonable approximation of an infringer's profits

5    as a basis for determining the proper amount of damages.  You should resolve any doubt as to the

6    computation of costs or profits in favor of Cisco.[143]

7    **Cisco's Position:**

8            Cisco's proposed instruction closely follows Instruction No. 17.33 of the *Ninth Circuit*

9    *Manual of Model Civil Jury Instructions* ("*Model*") in both form and substance; whereas, Arista's
     proposed instruction deviates in significant ways.  Arista's proposed instruction on infringer's

10   profits misstates the law and seeks to confuse the burden-shifting approach of 17 U.S.C. § 504(b)
     and related precedent.  The Court should follow the *Model* and the Ninth Circuit's words, quoted

11   in large part in Cisco's proposed instruction, and reject Arista's confusing and incorrect proposal,

12   which will only lead the jury into error.

13           *First*, Arista's proposed instruction demonstrates the importance of a clear jury instruction

14   on exactly what will suffice for Cisco to satisfy its initial burden of proof to establish Arista's
     gross revenues.  As the Court noted in its Order on Daubert Motions (at 16):  "Importantly, Arista

15   also acknowledged to the Court that for establishing a royalty base, Cisco could satisfy its initial
     burden by showing that the direct profits are derived from the infringing products."  It is

16   undisputed that Arista's gross revenues at issue are all revenues directly from sales made by Arista
     of Arista's allegedly infringing switches.  Thus, there is no legitimate dispute that those gross

17   revenues satisfy any causal nexus requirement for infringer's profits.  Nevertheless, Arista
     continues to seek to obfuscate this issue in the apparent hope that the jury will read into the phrase

18   "causal nexus" a requirement that does not exist.  The Court should adopt Cisco's proposed
     instructions, based on the *Model*, the Court's Daubert Order, and controlling Ninth Circuit

19   precedent, in order that the jury understand that "Cisco may satisfy its burden by showing that the
     profits it seeks to recover derive directly from sales of the infringing products."  *See, e.g.,* Order

20   on Daubert Motions at 16 ("Assuming that Cisco is seeking only direct profits, Cisco must at least
     show that the profits it seeks to recover derive directly from the infringing products."); *Polar Bear*

21   *Prods, Inc. v. Timex Corp.,* 384 F.3d 700, 708 (9th Cir. 2004); *Brocade Commc'ns Sys. v. A10*

22   *Networks, Inc.*, 2013 WL 831528, at *6 (N.D. Cal. Jan. 10, 2013) (noting that, to recover
     disgorgement of direct profits, a plaintiff may satisfy the "causal link" requirement by showing the

23   "gross revenues from the infringing product").  In contrast, Arista's proposed instruction would
     instruct the jury that it "may make an award of Arista's profits attributable to sales of the

24   infringing product only if you find that Cisco showed a causal nexus between the profits it seeks
     and the copyright infringement," but does not explain what would be sufficient to show a causal

25   nexus.  To sharpen its point, Arista reiterates:  "If Cisco fails to establish a causal nexus between

26   _____

27        [143]   *Frank Music Corp. v. MGM, Inc.*, 772 F.2d 505, 514 (9th Cir. Cal. 1985) ("Any doubt as

28   to the computation of costs or profits is to be resolved in favor of the plaintiff.").

the profits it seeks and the infringement, it is not entitled to any of Arista's profits."  But, again, Arista offers no explanation of what is sufficient for Cisco to establish a causal nexus, let alone that it is sufficient to show that the gross revenue is revenue solely from sales of the allegedly infringing switches and nothing else – a fact which is undisputed.

*Second*, in following the *Model*, Cisco's proposed instruction accurately reflects the careful allocation of evidentiary burdens outlined in 17 U.S.C. § 504(b) and related precedent. Abandoning the *Model*, Arista's proposal confusingly has a paragraph referring to the determination of Arista's gross revenue by Cisco and subtraction of expenses by Arista *after* a paragraph regarding the apportionment of profits by Arista.  Arista's proposal should be rejected because it does not reflect § 504(b)'s balance and will not serve to accurately instruct the jury on the law.

*Third*, in its fourth paragraph, Arista proposes to instruct the jury:  "If it is clear that not all of the profits are attributable to the infringing material, Arista is not required to establish with certainty the portion attributable to the non-infringing elements."  That is wrong because it is Arista's burden to apportion profits.  According to the Ninth Circuit:  "[O]nce the causal nexus is shown [by Cisco], the *infringer* bears the burden of apportioning profits that were *not the result of infringement*."  *Polar Bear*, 384 F.3d at 711 (emphasis added); *see id.* at 712-13 ("[The copyright holder] was not required to apportion the gross profit figure … .Under § 504(b), the primary responsibility for further apportionment of profits fell to [the infringer]."); *see Nintendo of Am., Inc. v. Dragon Pac. Int'l*, 40 F.3d 1007, 1012 (9th Cir. 1994) ("where infringing and noninfringing elements of a work cannot be readily separated, all of a defendant's profits should be awarded to a plaintiff").

*Fourth*, Arista's proposed instruction in its fourth paragraph based on an inaccurate and incomplete paraphrasing of *Cream Records, Inc. v. Jos. Schlitz Brewing Co.*, 754 F.2d 826, 829 (9th Cir. 1985), should be rejected because it misstates the law.  Arista proposes:  "If the evidence suggests some division that may rationally be used to decide what portion of the profits are due to factors other than infringement, it is your duty to do so."  In fact, the Ninth Circuit in *Cream Records* stated that it was the Court's duty to make some apportionment where it is clear that not all of the profits are attributable to the infringing material and the evidence suggests some division:

> where it is clear, as it is in this case, that not all of the profits are attributable to the infringing material, the copyright owner is not entitled to recover all of those profits merely because the infringer fails to establish with certainty the portion attributable to the non-infringing elements.  In cases such as this where an infringer's profits are not entirely due to the infringement, and the evidence suggests some division which may rationally be used as a springboard it is the duty of the court to make some apportionment.

754 F.2d at 828-29.  At a minimum, it is incorrect to instruct the jury that they have a duty absent any finding that not all of the profits are attributable to the infringing material.  Moreover, Arista's proposed instruction misrepresents and overemphasizes the jury's "duty" to apportion, even if Arista has not met its burden, ignoring the Supreme Court's caution in *Harper & Row*:  "With respect to apportionment of profits flowing from a copyright infringement, this Court has held that an infringer who commingles infringing and noninfringing elements must abide the consequences,

1  unless [the infringer] can make a separation of the profits so as to assure to the injured party all
2  that justly belongs to him."  *Harper & Row*, 471 U.S. at 567.  In sum, it is wrong to instruct the
   jury that they have a "duty" to apportion profits even if they conclude that Arista has failed to
3  carry its burden to prove that some of its profits are attributable to factors other than infringing the
   copyrighted work.[144]

4      *Fifth*, in the third paragraph, Cisco deviated from the *Model* to add the following sentence:
5  "However, if you find that Arista's infringement was willful, Arista's overhead costs, federal
   income taxes and excess profits taxes will not be considered deductible expenses and cannot be
6  deducted from its profits."  This reflects the prevailing law curtailing expenses that a willful
   infringer may deduct from gross revenue.[145]

7      *Sixth*, in addition to the *Model* instructions, Cisco proposes two paragraphs instructing the
8  jury more specifically on the standards of proof.  Consistent with controlling precedent, Cisco's
   instructions provide that neither Arista's profits or any apportionment of Arista's profits be
9  calculated with "mathematical or absolute exactness."  *See, e.g., Sheldon v. Metro-Goldwyn
   Pictures Corp.*, 309 U.S. 390, 408 (1940) ("what is required is not mathematical exactness but
10 only a reasonable approximation").  Similarly, the jury should be instructed that the law requires
   "a reasonable approximation" of an infringer's profits, *id.*, any doubt as to the computation of
11 costs or profits should be resolved in favor of Cisco, s*ee Frank Music Corp. v. MGM, Inc.*, 772
   F.2d 505, 514 (9th Cir. Cal. 1985) ("Any doubt as to the computation of costs or profits is to be
12 resolved in favor of the plaintiff."), and any apportionment should be reasonable and just, *id.* at
   402 ("apportionment of profits can be had where it is clear that all the profits are not due to the use
13 of the copyrighted material, and the evidence is sufficient to provide a fair basis of division so as
14 to give to the copyright proprietor all the profits that can be deemed to have resulted from the use
15 of what belonged to him").

16 _____

17 [144]  *See also Frank Music Corp. v. Metro-Goldwyn-Mayer Inc.*, 886 F.2d 1545, 1549 (9th Cir.
   1989) ("We will not accept the experts' testimony at its face value; we must made an award which
18 by no possibility shall be too small.  It is not our best guess that must prevail, but a figure which
   will favor the plaintiffs in every reasonable chance of error."); *id.* ("In performing the
19 apportionment, the benefit of the doubt must always be given to the plaintiff, not the defendant.").
   [145]  Instruction No. 17.36, *Ninth Circuit Manual of Model Civil Jury Instructions* (2007)
20 (comment); *Three Boys Music Corp. v. Bolton*, 212 F.3d 477, 487-88 (9th Cir. 2000) (in allocating
   profits, "non-willful infringers" were entitled to deduct from damage assessment income taxes and
21 management fees actually paid); *Oracle Am., Inc. v. Google Inc.*, No. 10-cv-03561, 2015 U.S.
   Dist. LEXIS 126110 (N.D. Cal. Sept. 18, 2015) (noting the Ninth Circuit has not explicitly held
22 that federal income or excess profits taxes are precluded as deductible expenses in calculating a
   willful copyright infringer's profits, but deeming that to be "the most likely outcome in our
23 circuit."); *Polar Bear Prods., Inc. v. Timex Corp.*, 384 F.3d 700, 709 (9th Cir. 2004); *Frank Music
   Corp. v. Metro-Goldwyn-Mayer, Inc.*, 772 F.2d 505, 515 (9th Cir. 1985); *Saxon v. Blann*, 968 F.2d
24 676, 681 (8th Cir. 1992) ("[o]verhead may not be deducted from gross revenues to arrive at profits
   when an infringement was deliberate or willful"); *Williams v. Bridgeport Music, Inc.*, No. 13-cv-
25 6004, ECF No. 322 at Jury Instruction No. 38 (C.D. Cal. Mar. 10, 2015) ("Overhead costs may not
   be deducted where a party's infringement is willful."); *Jarvis v. A & M Records*, 827 F. Supp. 282,
26 294-95 (D.N.J. 1993) ("it is a question of fact whether these defendants did in fact act willfully[;]"
   "if a defendant's conduct is willful, overhead may not be deducted"); *Manufacturers Techs., Inc.
27 v. Cams, Inc.*, 728 F. Supp. 75, 84 (D. Conn. 1989) (defendant's "taxes" and "overhead or
   'allocated expenses'" not deductible because infringement was willful); 5 NIMMER ON COPYRIGHT
28 § 14.03[C][2]-[3].

1    **DISPUTED: Arista's Final Instruction No. 66 re Copyright—Arista's Profits**[146]

2    If you conclude that Arista infringed Cisco's copyrights, in addition to actual damages,

3    Cisco is entitled to any of Arista's profits attributable to the infringement.[147] You may not

4    include in an award of profits any amount that you took into account in determining actual

5    damages.[148]

6    You may make an award of Arista's profits attributable to sales of the infringing product

7    only if you find that Cisco showed a causal nexus between the profits it seeks and the copyright

8    infringement.[149] If Cisco fails to establish a causal nexus between the profits it seeks and the

9    infringement, it is not entitled to any of Arista's profits.

10    If Cisco establishes a causal nexus between the profits it seeks and the infringement, the

11    burden shifts to Arista to prove deductible expenses and the portion of its profit attributable to

12    factors other than infringing the copyrighted work.[150]

13    To the extent that Arista proves that some of its profits are attributable to factors other than

14    infringing the copyrighted work, you should subtract those profits.[151] If it is clear that not all of

15    the profits are attributable to the infringing material, Arista is not required to establish with

16    certainty the portion attributable to the non-infringing elements.[152] If the evidence suggests some

17    _____

18    [146] Ninth Circuit Model Jury Instruction, 17.33.
      [147] Ninth Circuit Model Jury Instruction, 17.33.

19    [148] Ninth Circuit Model Jury Instruction, 17.33.
      [149] Ninth Circuit Model Jury Instruction, 17.33; Order on Daubert Motions at 16.

20
21    [150] 17 U.S.C. § 504(b); *Cream Records, Inc. v. Jos. Schlitz Brewing Co*., 754 F.2d 826, 829 (9th Cir. 1985); Polar Bear Prods. v. Timex Corp., 384 F.3d 700, 711 (9th Cir. 2004); Order on Daubert Motions at 14.

22    [151] 17 U.S.C. § 504; *see also Cream Records, Inc. v. Jos. Schlitz Brewing Co*., 754 F.2d 826,
23    828-29 (9th Cir. 1985) ("Although the statute imposes upon the infringer the burden of showing the elements of profit attributable to factors other than the copyrighted work, 17 U.S.C. § 504(b),
24    nonetheless where it is clear, as it is in this case, that not all of the profits are attributable to the infringing material, the copyright owner is not entitled to recover all of those profits merely
25    because the infringer fails to establish with certainty the portion attributable to the non-infringing elements. In cases such as this where an infringer's profits are not entirely due to the infringement,
26    and the evidence suggests some division which may rationally be used as a springboard it is the duty of the court to make some apportionment.").

27    [152] *Cream Records, Inc. v. Jos. Schlitz Brewing Co*., 754 F.2d 826, 828-29 (9th Cir. 1985)
28    ("Although the statute imposes upon the infringer the burden of showing the elements of profit

-137-    Case No. 5:14-cv-5344-BLF

1    division that may rationally be used to decide what portion of the profits are due to factors other

2    than infringement, it is your duty to do so.[153]

3        Arista's profit is determined by starting with Arista's gross revenue that Cisco has proved

4    has a causal relationship with the infringement, and then subtracting the expenses incurred in

5    producing that revenue.  The expenses to be subtracted from that gross revenue are all operating

6    costs, overhead costs and production costs incurred in producing it.  Arista has the burden of

7    proving its expenses by a preponderance of the evidence.

8

9    **Arista's Position:**

10        Cisco's "infringer's profits" instruction is misleading and prejudicial.  Cisco attempts to
    disguise its burden, failing to state that it bears the burden of showing a causal nexus between the
11    profits it seeks and the copyright infringement.  As this Court recently explained in its Order on
    Daubert Motions, "courts confronted with the issue of 'causal nexus' in copyright cases have held
12    plaintiffs to the initial burden of establishing 'causal nexus' regardless of whether profits are direct
13    or indirect."  Order on *Daubert* Motions at 15.

14        Cisco's instruction also misstates the law.  It states that "Arista's profits are determined by
15    subtracting all deductible expenses from Arista's gross revenue."  That is incorrect.  Instead, as
    Arista's instruction properly explains, its profit is determined by deducting deductible expenses
16    ***and*** the portion of its profit attributable to factors other than infringing the copyrighted work.  *See
    Cream Records, Inc. v. Jos. Schlitz Brewing Co.,* 754 F.2d 826, 829 (9th Cir. 1985).  This
17    instruction is critical in this case, where the vast majority of Arista's profits have nothing to do
18    with the asserted CLI elements.
    _____

19    attributable to factors other than the copyrighted work, 17 U.S.C. § 504(b), nonetheless where it is
20    clear, as it is in this case, that not all of the profits are attributable to the infringing material, the
    copyright owner is not entitled to recover all of those profits merely because the infringer fails to
21    establish with certainty the portion attributable to the non-infringing elements. In cases such as
    this where an infringer's profits are not entirely due to the infringement, and the evidence suggests
22    some division which may rationally be used as a springboard it is the duty of the court to make
    some apportionment.").
23        [153] *Cream Records, Inc. v. Jos. Schlitz Brewing Co.*, 754 F.2d 826, 828-29 (9th Cir. 1985)
24    ("Although the statute imposes upon the infringer the burden of showing the elements of profit
    attributable to factors other than the copyrighted work, 17 U.S.C. § 504(b), nonetheless where it is
25    clear, as it is in this case, that not all of the profits are attributable to the infringing material, the
    copyright owner is not entitled to recover all of those profits merely because the infringer fails to
26    establish with certainty the portion attributable to the non-infringing elements. In cases such as
    this where an infringer's profits are not entirely due to the infringement, and the evidence suggests
27    some division which may rationally be used as a springboard it is the duty of the court to make
28    some apportionment.").

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

   Arista's proposed instruction states the law accurately and clearly.  It explains that Cisco bears the burden to show a causal nexus between the profits it seeks and the copyright infringement, Court's Order on Daubert Motions at 16, and that if Cisco meets that burden, the burden shifts to Arista to prove deductible expenses and the portion of its profit attributable to factors other than the alleged infringement. *Cream Records, Inc.*, 754 F.2d at 829.   It then explains the duty to apportion profits where possible.  For example, it explains that, "[i]f the evidence suggest some division [in Arista's profits] that may rationally be used to decide what portion of the profits are due to factors other than infringement, it is [the jury's] duty to do so." *Orgel v. Clark Boardman C*o., 301 F.2d 119, 121 (2d Cir. 1962) ("In cases such as this where an infringer's profits are not entirely due to the infringement, and the evidence suggests some division which may rationally be used as a springboard it is the duty of the court to make some apportionment.").

1124328.06

1

2

**DISPUTED: Cisco's Final Instruction No. 67 re Copyright—Infringer's Profits—Willfulness[154]**

3

[To be used only if the Court rules that a willfulness instruction will be given.]

4

5

6

7

8

9

10

I have instructed you that deductible expenses are those expenses incurred by Arista that actually helped to produce the revenues at issue, and that Arista has the burden of proving its expenses by a preponderance of the evidence. In deciding whether or not to deduct costs proven by Arista in making the infringer's profits calculation, you may take into account whether or not Arista is a willful infringer. If you find that Arista is a willful infringer, you may choose not to deduct some or all of Arista's costs.

11

12

**Cisco's Position:**

13

14

15

16

17

Only Cisco proposes an instruction for Disputed Final Instruction No. 67. Cisco proposes this instruction because, pursuant to prevailing case law, the Model Jury Instructions for the Ninth Circuit, and copyright law treatises, the defendant should not be permitted to deduct its overhead expenses from the infringer's profits where the copyright infringement is found to be willful. "[D]eductions of defendant's expenses are denied where the defendant's infringement is willful or deliberate." Instruction No. 17.36, *Ninth Circuit Manual of Model Civil Jury Instructions* (2007) (comment). This Court has expressed a preference in following the model jury instructions in its Pretrial Standing Order and there is no reason to deviate from this practice here.

18

19

20

21

22

Although the Ninth Circuit has not ruled on which specific expenses are deductible where the infringement is found to be willful, Ninth Circuit case law suggests that it may limit the deduction of overhead expenses when the infringement is willful. *See Frank Music Corp. v. MGM, Inc.*, 772 F.2d 505, 515 (9th Cir. 1985) ("[a] portion of an infringer's **overhead** properly may be deducted from gross revenues to arrive at profits, *at least where the infringement was not willful*, conscious, or deliberate." (emphasis added) (decided under 1909 Act); *Three Boys Music Corp. v. Bolton*, 212 F.3d 477, 487-88 (9th Cir. 2000) (in allocating profits, "non-willful

23

24

25

26

27

28

---

[154] Instruction No. 17.36, Comment, *Ninth Circuit Manual of Model Civil Jury Instructions* (2007) ("Generally, deductions of defendant's expenses are denied where the defendant's infringement is willful or deliberate."); *see also Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc.*, 772 F.2d 505, 515 (9th Cir. 1985) ("A portion of an infringer's overhead properly may be deducted from gross revenues to arrive at profits, at least where the infringement was not willful, conscious, or deliberate."); *Three Boys Music Corp. v. Bolton*, 212 F.3d 477, 488 (9th Cir. 2000) ("non-willful infringers [may be allowed to] deduct the income taxes and management fees that they paid relating to the infringing song").

1    infringers" were entitled to deduct from damage assessment income taxes and management fees
     actually paid).

2
              The leading copyright treatises also support denying the deduction of overhead expenses
3    where the infringement is found to be willful.  Copyright expert William Patry recognizes the need
     to deny *willful* copyright infringers the deduction of overhead expenses as a disincentive against
4    the taking of a "calculated risk" that the worst that happens if they are caught is they give back the
     profits, while still deducting the costs of the infringement:
5

6         The lack of an adequate disincentive to infringe through mere disgorgement of profits is
          a more serious issue.  For nonwillful infringers, no such disincentive is presumably
7         required since the infringement was not motivated by a desire to reap where one hasn't
          sown.  For willful infringers, though, some take a calculated risk that they will not be
8         caught, but that if they are, the only penalty will be to pay back profits while still
          deducting the costs of the infringement: not much of a disincentive.  Under such
9         circumstances, denying deductions is scant warning to others that the penalty for not
          negotiating is not worth the price, but even if a warning is possible, to be effective, the
10        penalty would have to be commonly, if not uniformly, applied.

11
     Patry on Copyright § 22:143; *see also* Nimmer on Copyright § 14.03[C][2]-[3] ("some
12   courts appear to deny a deduction of overhead"); *cf. Oracle Am., Inc. v. Google Inc*, 131 F. Supp.
     3rd 946, 951 (N.D. Cal. 2015).  Consistent with the case law, model jury instructions, and the
13   Patry treatise, the Ninth Circuit is most likely to preclude at least some overhead expense
     deductions for infringer's profits where the infringement is willful.  Thus, the jury should
14   determine whether Arista's infringement was willful and the jury should be instructed consistent
     with the above regarding expenses.
15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

**<u>DISPUTED: Arista's Position on Cisco's Final Instruction No. 67 re Copyright—Infringer's</u>**

3

**<u>Profits—Willfulness</u>**

4

   Arista's position is that no such instruction should be given.

5

6

**<u>Arista's Position:</u>**

7

   Arista objects to a jury instruction on willful copyright infringement.  As set forth in
Arista's supplemental brief regarding copyright willfulness (ECF No. 636), the jury should not be
instructed on willful infringement.

8

9

10

   Contrary to Cisco's assertion, a finding of willful copyright infringement does not prevent
Arista from deducting expenses (beyond income and excess profit taxes) for purposes of
calculating disgorgement.  There is no Ninth Circuit support for altering the calculation of
deductible expenses where infringement is willful, ***with the exception*** of income and excess profit
taxes.  *Oracle v. Google*, 131 F. Supp. 3d 946, 951 (N.D. Cal. 2015) ("[A]n examination of the
decisional law [in the Ninth Circuit] on this issue finds no authoritative support for altering the
calculus of 'deductible expenses' where the infringement at issue was willful, except as to income
and excess profits taxes."); *see also ZZ Top v. Chrysler Corp.*, 70 F. Supp. 2d 1167, 1168 (W.D.
Wash. 1999) ("Although plaintiffs assert that the preclusion of overhead costs is an accepted
practice where the defendant's infringement was willful, the Ninth Circuit has not yet adopted
such a rule.").  While a number of cases support a disallowance of a deduction of income taxes for
a willful infringer, *see, e.g., Three Boys Music Corp. v. Bolton*, 212 F.3d 477, 487 (9th Cir. 2000),
any that reference a possible expansion of that disallowance are "unpersuasive." *Oracle*, 131 F.
Supp. 3d at 954.  In *Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc.*, 772 F.2d 505, 515 (9th
Cir. 1985), which Cisco relies upon, there is one line of dictum referencing the issue: "[a] portion
of an infringer's overhead properly may be deducted from gross revenues to arrive at profits, at
least where the infringement was not willful, conscious, or deliberate."  The Court never holds that
a defendant found to willfully infringe cannot deduct expenses, at least because the infringement
there was not willful.

11

12

13

14

15

16

17

18

19

20

   In this case, Arista has never elected to seek a deduction for its income or excess profit
taxes, and as set forth in the pretrial conference statement, it will not do so.  ECF No. 593 at 17-
18.  Thus, a finding of copyright willfulness has no impact on Arista's calculation of deductible
expenses.  There is no need to instruct the jury on willful infringement, and doing so would only
confuse them.

21

22

23

24

25

26

27

28

1

**STIPULATED: Final Instruction No. 68 re Patent—What A Patent Is And How One Is**

2

**Obtained**[155]

3       This case also involves a dispute relating to a United States patent.  Before summarizing

4   the positions of the parties and the legal issues involved in the dispute, let me take a moment to

5   explain what a patent is and how one is obtained.

6       Patents are granted by the United States Patent and Trademark Office (sometimes called

7   "the PTO").  The process of obtaining a patent is called patent prosecution.  A valid United States

8   patent gives the patent owner the right to prevent others from making, using, offering to sell, or

9   selling the patented invention within the United States, or from importing it into the United States,

10  during the term of the patent without the patent holder's permission.  A violation of the patent

11  owner's rights is called infringement.  The patent owner may try to enforce a patent against

12  persons believed to be infringers by a lawsuit filed in federal court.

13      To obtain a patent one must file an application with the PTO.  The PTO is an agency of the

14  federal government and employs trained examiners who review applications for patents.  The

15  application includes what is called a "specification," which must contain a written description of

16  the claimed invention telling what the invention is, how it works, how to make it and how to use it

17  so others skilled in the field will know how to make or use it.  The specification concludes with

18  one or more numbered sentences.  These are the patent "claims."  When the patent is eventually

19  granted by the PTO, the claims define the boundaries of its protection and give notice to the public

20  of those boundaries.

21      After the applicant files the application, a PTO patent examiner reviews the patent

22  application to determine whether the claims are patentable and whether the specification

23  adequately describes the invention claimed.  In examining a patent application, the patent

24  examiner reviews records available to the PTO for what is referred to as "prior art."  The examiner

25  also will review prior art if it is submitted to the PTO by the applicant.  In general, prior art

26  includes things that existed before the claimed invention, that were publicly known, or used in a

27

28        [155]  N.D. Cal. Model Patent Jury Instruction A.1 (July 16, 2015).

1  publicly accessible way in this country, or that were patented or described in a publication in any

2  country.  The examiner considers, among other things, whether each claim defines an invention

3  that is new, useful, and not obvious in view of the prior art.  A patent lists the prior art that the

4  examiner considered; this list is called the "cited references."

5      After the prior art search and examination of the application, the patent examiner then

6  informs the applicant in writing what the examiner has found and whether any claim is patentable,

7  and thus will be "allowed."  This writing from the patent examiner is called an "office action."  If

8  the examiner rejects the claims, the applicant then responds and sometimes changes the claims or

9  submits new claims.  This process, which takes place only between the examiner and the patent

10  applicant, may go back and forth for some time until the examiner is satisfied that the application

11  and claims meet the requirements for a patent.  The papers generated during this time of

12  communicating back and forth between the patent examiner and the applicant make up what is

13  called the "prosecution history." All of this material becomes available to the public no later than

14  the date when the patent issues.

15      The fact that the PTO grants a patent does not necessarily mean that any invention claimed

16  in the patent, in fact, deserves the protection of a patent.  For example, the PTO may not have had

17  available to it all the information that will be presented to you.

18
19
20
21
22
23
24
25
26
27
28

1124328.06

**STIPULATED: Final Instruction No. 69 re Patent—Summary Of Patent Claim Contentions[156]**

I will now instruct you on Cisco's patent claim.

I will first give you a summary of each side's contentions in this case for the patent claim. I will then tell you what each side must prove to win on each of its contentions.   Cisco seeks money damages from Arista for allegedly infringing the '526 patent by making, importing, using, selling and/or offering for sale products and services that Cisco argues are covered by claims 1 and 14 of the '526 patent.  These are referred to as the Asserted Claims of the '526 patent.  Cisco also argues that Arista has actively induced infringement of these claims of the '526 patent by others and contributed to the infringement of these claims of the '526 patent by others.  The products and services that are alleged to infringe are Arista switches and associated products and services, that incorporate EOS, EOS+, vEOS network operating systems.

Arista denies that it has infringed the asserted claims of the patent.

Your job is to decide whether the asserted claims of the '526 patent have been infringed.  If you decide that any claim of the patent has been infringed, you will then need to decide any money damages to be awarded to Cisco to compensate it for the infringement.

You will also need to make a finding as to whether the infringement was willful.  If you decide that any infringement was willful, that decision should not affect any damage award you make.  I will take willfulness into account later.

---

[156] *"B.1. Summary of Contentions,"* N.D. Cal. Model Patent Jury Instructions.

1    **STIPULATED: Final Instruction No. 70 re Patent—Interpretation Of Patent Claims**[157]

2        Before you decide whether Arista has infringed the claims of the patent, you will need to

3    understand the patent claims.  The patent claims are numbered sentences at the end of the patent

4    that describe the boundaries of the patent's protection.  It is my job as judge to explain to you the

5    meaning of any language in the claims that needs interpretation.

6        I have interpreted the meaning of some of the language in the patent claims involved in

7    this case.  You must accept those interpretations as correct.  These interpretations were handed to

8    you at the start of the trial.  For any claim term for which I have not provided you a definition, you

9    should apply the plain and ordinary meaning of that term, as understood by one of ordinary skill in

10   the art.  My interpretation of the language should not be taken as an indication that I have a view

11   regarding the issue of infringement.  The decision regarding infringement is yours to make.

12       I have made the following claim interpretations of terms found within the Asserted Claims:

13       For the phrase "management programs" in the '526 patent claims, I instruct you to

14   interpret that to mean the following: "tools or agents configured to execute user-directed

15   commands having their own respective command formats that provide management functions."

16       For the phrase "generic command" in the '526 patent claims, I instruct you to interpret that

17   to mean the following: "command that provides an abstraction of the tool-specific command

18   formats and syntax, enabling a user to issue the command based on the relative functions, as

19   opposed to the specific syntax for a corresponding tool."

20       For the phrase "command parse tree" in the '526 patent claims, I instruct you to interpret

21   that to mean the following: "a hierarchal data structure."

22       The following phrase appears in certain claims of the '526 patent: "the command parse tree

23   having elements each specifying at least one corresponding generic command component and a

24   _____

25

26   [157] "*B.2. Claim Construction,*" N.D. Cal. Model Patent Jury Instructions, *citing Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 384-391 (1996); *Phillips v. AWH Corp.*, 415 F.3d 1303, 1324 (Fed. Cir. 2005); *Pitney Bowes, Inc. v. Hewlett-Packard Co.*, 182 F.3d 1298, 1304-13 (Fed.

27   Cir. 1999); *Cybor Corp. v. FAS Techs.*, 138 F.3d 1448 (Fed. Cir. 1998) (*en banc*)*; Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 977 (Fed. Cir. 1995) (*en banc*).

28

1  corresponding at least one command action value."  Within that phrase, for the term "command

2  action value," I instruct you to interpret that to mean "a value that identifies a prescribed

3  command."  For the larger phrase, I instruct you to interpret it to mean "the command parse tree

4  having elements, such that each element specifies at least one command action value for each

5  generic command component."

SECOND AMENDED UNDISPUTED AND DISPUTED PROPOSED JURY INSTRUCTIONS
1124328.06

1
2

## **STIPULATED: Final Instruction No. 72 re Patent—Patent Infringement: Burden Of Proof**[158]

3       I will now instruct you on the rules you must follow in deciding whether Cisco has proven

4   that Arista has infringed one or more of the asserted claims of the '526 patent.  To prove

5   infringement of any claim, Cisco must persuade you that it is more likely than not that Arista has

6   infringed that claim.

7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

26      [158] *"B.3.1,"* N.D. Cal. Model Patent Jury Instructions, citing *Warner-Lambert Co. v. Teva*

27   *Pharm. USA, Inc.,* 418 F.3d 1326, 1341 n.15 (Fed. Cir. 2005); *Seal-Flex, Inc. v. Athletic Track and Court Constr.,* 172 F.3d 836, 842 (Fed. Cir. 1999); *Morton Int'l, Inc. v. Cardinal Chem. Co.*,

28   5 F.3d 1464, 1468-69 (Fed. Cir. 1993).

Case No. 5:14-cv-5344-BLF
SECOND AMENDED UNDISPUTED AND DISPUTED PROPOSED JURY INSTRUCTIONS

1124328.06

1    **STIPULATED: Final Instruction No. 73 re Patent—Direct Infringement of a Patent**[159]

2    A patent's claims define what is covered by the patent.  A product or method directly

3    infringes a patent if it is covered by at least one claim of the patent.

4    Deciding whether a claim has been directly infringed is a two-step process.  The first step

5    is to decide the meaning of the patent claim.  I have already made this decision, and I have already

6    instructed you as to the meaning of the asserted patent claims.  The second step is to decide

7    whether Arista has made, used, sold, offered for sale or imported within the United States a

8    product or service covered by a claim of the '526 patent.  If it has, it infringes.  You, the jury,

9    make this decision.

10    You must consider each of the asserted claims of the patent individually, and decide

11    whether Arista's products or services infringe that claim.

12    You have heard evidence about both Cisco's commercial products and Arista's accused

13    products and services.  However, in deciding the issue of infringement you may not compare

14    Arista's accused products and services to Cisco's commercial products.  Rather, you must

15    compare Arista's accused products and services to the claims of the '526 patent when making your

16    decision regarding infringement.

17    Whether or not Arista knew its products or services infringed or even knew of the patent

18    does not matter in determining direct infringement.

19    There are two ways in which a patent claim may be directly infringed.  A claim may be

20    "literally" infringed, or it may be infringed under the "doctrine of equivalents."  The following

21    instructions will provide more detail on these two types of direct infringement.

22

23

24    _____

25    [159] "*B.3.2,*" N.D. Cal. Model Patent Jury Instructions, citing 35 U.S.C. § 271; *Warner-Jenkinson Co., Inc. v. Hilton Davis Chem. Co.*, 520 U.S. 17 (1997); *Cross Med. Prods., Inc. v. Medtronic Sofamor Danek, Inc.*, 424 F.3d 1293, 1310-11 (Fed. Cir. 2005); *DeMarini Sports, Inc. v. Worth, Inc.*, 239 F.3d 1314, 1330-34 (Fed. Cir. 2001); *Seal-Flex, Inc. v. Athletic Track and Court Constr.*, 172 F.3d 836, 842 (Fed. Cir. 1999); *Carroll Touch, Inc. v. Electro Mech. Sys., Inc.*, 15 F.3d 1573, 1576 (Fed. Cir. 1993).

26

27

28

1    **STIPULATED: Final Instruction No. 74 re Patent—Literal Infringement Of A Patent**[160]

2             To decide whether Arista's products and services literally infringe a claim of the '526

3    patent, you must compare that product or service with the patent claim and determine whether

4    every requirement of the claim is included in that product or service.  If so, Arista's product or

5    service literally infringes that claim.  If, however, Arista's product or service does not have every

6    requirement in the patent claim, Arista's product or service does not literally infringe that claim.

7    You must decide literal infringement for each asserted claim separately.

8             If the patent claim uses the term "comprising," that patent claim is to be understood as an

9    open claim.  An open claim is infringed as long as every requirement in the claim is present in

10   Arista's product or service. The fact that Arista's product or service also includes other parts or

11   steps will not avoid infringement, as long as it has every requirement in the patent claim.

12

13

14

15

16

17

18

19

20

21

22

23

24
---

25   [160] "*B.3.3,*" N.D. Cal. Model Patent Jury Instructions, citing *MicroStrategy Inc. v. Business Objects, S.A.*, 429 F.3d 1344, 1352-53 (Fed. Cir. 2005); *Netword, LLC v. Centraal Corp.,* 242
26   F.3d 1347, 1353 (Fed. Cir. 2001); *Cole v. Kimberly-Clark Corp.,* 102 F.3d 524, 532 (Fed. Cir. 1996); *Ecolab, Inc. v. FMC Corp.,* 535 F.3d 1369 (Fed. Cir. 2009); *Cross Med. Prods. v.*
27   *Medtronic Sofamor Danek*, 424 F.3d 1293 (Fed. Cir. 2005); *BMC Res., Inc. v. Paymentech, L.P.,*
28   498 F.3d 1373 (Fed. Cir. 2007).

1    **STIPULATED: Final Instruction No. 75 re Patent—Patent Infringement Under The**

2    **Doctrine Of Equivalents[161]**

3        If you decide that Arista's products or services do not literally infringe an asserted patent

4    claim, you must then decide whether those products or services infringe the asserted claim under

5    what is called the "doctrine of equivalents."

6        Under the doctrine of equivalents, the product or service can infringe an asserted patent

7    claim if it includes parts or steps that are identical or equivalent to the requirements of the claim.

8    If the product or service is missing an identical or equivalent part or step to even one requirement

9    of the asserted patent claim, the product or service cannot infringe the claim under the doctrine of

10   equivalents.  Thus, in making your decision under the doctrine of equivalents, you must look at

11   each individual requirement of the asserted patent claim and decide whether the product or service

12   has either an identical or equivalent part or step to that individual claim requirement.

13       A part or step of a product or service is equivalent to a requirement of an asserted claim if

14   a person of ordinary skill in the field would think that the differences between the part or step and

15   the requirement were not substantial as of the time of the alleged infringement.

16       Changes in technique or improvements made possible by technology developed after the

17   patent application is filed may still be equivalent for the purposes of the doctrine of equivalents if

18   it still meets the other requirements of the doctrine of equivalents set forth in this instruction.

19       One way to decide whether any difference between a requirement of an asserted claim and

20   a part or step of the product or service is not substantial is to consider whether, as of the time of

21   the alleged infringement, the part or step of the product or service performed substantially the

22

23   _____

24   [161] "*B.3.4,*" N.D. Cal. Model Patent Jury Instructions, citing *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.,* 535 U.S. 722 (2002); *Warner-Jenkinson Co., Inc. v. Hilton Davis Chem.*

25   *Co.*, 520 U.S. 17 (1997); *Graver Tank & Mfg. Co. v. Linde Air Prods. Co.*, 339 U.S. 605, 609 (1950); *Abraxis Bioscience, Inc. v. Mayne Pharma (USA) Inc.*,  467 F.3d 1370, 1379-82 (Fed. Cir.

26   2006); *Pfizer, Inc. v. Teva Pharms., USA, Inc.*, 429 F.3d 1364, 1378 (Fed. Cir. 2005); *Johnston & Johnston Assoc. v. R.E. Service Co.*, 285 F.3d 1046 (Fed. Cir. 2002) (*en banc*); *Multiform*

27   *Desiccants, Inc. v. Medzam, Ltd.*, 133 F.3d 1473, 1480 (Fed. Cir. 1998); *Dolly, Inc. v. Spalding & Evenflo Cos.*, 16 F.3d 394, 397 (Fed. Cir. 1994).

28

same function, in substantially the same way, to achieve substantially the same result as the requirement in the patent claim.

In deciding whether any difference between a claim requirement and the products or services is not substantial, you may consider whether, at the time of the alleged infringement, persons of ordinary skill in the field would have known of the interchangeability of the part or step with the claimed requirement. The known interchangeability between the claim requirement and the part or step of the products or methods is not necessary to find infringement under the doctrine of equivalents. However, known interchangeability may support a conclusion that the difference between the part or step in the products or methods and the claim requirement is not substantial. The fact that a part or step of the products or methods performs the same function as the claim requirement is not, by itself, sufficient to show known interchangeability.

SECOND AMENDED UNDISPUTED AND DISPUTED PROPOSED JURY INSTRUCTIONS
1124328.06

**STIPULATED: Final Instruction No. 77 re Patent—Contributory Patent Infringement**[162]

Cisco also contends that Arista has contributed to infringement by another.  Contributory infringement may arise when someone supplies something that is used to infringe one or more of the patent claims. Contributory infringement is a form in indirect infringement.

In order for there to be contributory infringement by Arista, someone other than Arista must directly infringe a claim of the '526 patent; if there is no direct infringement by anyone, there can be no contributory infringement.

If you find someone has directly infringed the '526 patent, then contributory infringement exists if:

1.  Arista supplied an important component of the infringing part of the product or service;

2.  The component is not a common component suitable for non-infringing use; and

3.  Arista supplied the component with the knowledge of the '526 patent and knowledge that the component was especially made or adapted for use in an infringing manner.

A "common component suitable for non-infringing use" is a component that has uses other than as a component of the patented product or other than in the patented method, and those other uses are not occasional, farfetched, impractical, experimental, or hypothetical.

1    **STIPULATED: Final Instruction No. 78 re Patent—Inducing Patent Infringement**[163]

2        Cisco argues that Arista has actively induced another to infringe the '526 patent.  In order

3    for Arista to have induced infringement, Arista must have induced another to directly infringe a

4    claim of the '526 patent; if there is no direct infringement by anyone, there can be no induced

5    infringement.  Induced infringement is a form of indirect infringement.

6        In order to be liable for inducing infringement, Arista must have:

7        1.  Intentionally taken action that actually induced direct infringement;

8        2.  Been aware of the '526 patent; and

9        3.  Known that the acts it was causing would infringe the patent.

10

11        Arista may be considered to have known that the acts it was causing would infringe the

12    '526 patent if it subjectively believed there was a high probability that the direct infringer's

13    product or method was patented and nevertheless deliberately took steps to avoid learning that

14    fact, in other words, willfully blinded itself to the infringing nature of the direct infringer's acts.

15

16

17

18

19

20

21

22

23

24

25

26

27    [163] "*B.3.9,*" N.D. Cal. Model Patent Jury Instructions, citing 35 U.S.C. § 271(b); *Commil USA, LLC v. Cisco Systems, Inc.,* 135 S.Ct. 1920, 1928-31 (2015); *Global-Tech Appliances, Inc. et. al.*

28    *v. SEB S.A.,* 131 S.Ct. 2060, 2070-71 (2011).

**DISPUTED: Cisco's Final Instruction No. 79 re Patent—Willful Patent Infringement[164]**

In this case, Cisco argues that Arista willfully infringed Cisco's '526 Patent. To prove willful infringement against Arista, Cisco must first persuade you that Arista infringed a valid claim of Cisco's patent. The requirements for proving such infringement were discussed in my prior instructions.

To prove willful infringement of a patent, Cisco must persuade you by a preponderance of the evidence that Arista had knowledge of the patent at issue and acted in bad faith, wantonly, maliciously, deliberately, consciously wrongfully, flagrantly, or with reckless disregard of any of the Asserted Claims of any of the Cisco Patents. You must base your verdict on the knowledge and actions of Arista at the time the infringement happened. Infringement alone is not enough to prove willfulness and mere knowledge of the '526 Patent at the time of infringement is not enough to prove willfulness.

You should consider all of the circumstances including the motive or intent of Arista in developing and selling the accused products, whether Arista knew or should have known that its conduct was unreasonably risky and whether Arista had a reasonable belief at the time of the alleged infringement that its products did not infringe any of the Asserted Claims of the '526 Patent.

**Cisco's Position:**

Cisco's proposed instruction is modeled from this Court's recent Final Jury Instructions in *Nortek Air Solutions, LLC fka CES Group, LLC v. Energy Labs, Inc.*, No. 5:14-cv-02919-BLF, Dkt. 336 at 35 (Aug. 5, 2016) (Instruction No. 3.5), which is modified from the N.D. Cal. Model

---

[164] Final Jury Instruction No. 30, *Nortek Air Solutions, LLC fka CES Group, LLC v. Energy Labs, Inc.*, No. 5:14-cv-02919-BLF, Dkt. 336 at 35 (Aug. 5, 2016); "*B.3.10*," N.D. Cal. Model Patent Jury Instructions, citing 35 U.S.C. § 284; *In re Seagate Tech., LLC*, 497 F.3d 1360 (Fed. Cir. 2007); *Knorr-Bremse Systeme Fuer Nutzfahrzeuge GmbH v. Dana Corp.*, 383 F.3d 1337, 1345 (Fed. Cir. 2004) (*en banc*); *Crystal Semiconductor Corp. v. Tritech Microelectronics Int'l, Inc.*, 246 F.3d 1336, 1346 (Fed. Cir. 2001); *WMS Gaming Inc. v. Int'l Game Tech.*, 184 F.3d 1339, 1354 (Fed. Cir. 1999); *Read Corp. v. Portec, Inc.*, 970 F.2d 816 (Fed. Cir. 1992); *Gustafson, Inc. v. Intersystems Indus. Prods., Inc.,* 897 F.2d 508, 510 (Fed. Cir. 1990).

1   to account for the recent Supreme Court precedent in *Halo Electronics, Inc. v. Pulse Electronics, Inc.*, 136 S. Ct. 1923 (2016).

2
3       Arista's agrees with Cisco's proposed instruction, but seeks to add one sentence: "To prove that the sale of EOS+ is an act of willful infringement, Cisco must persuade you that EOS+ included new infringing functionality that was not present in EOS." That sentence (or any analog) was not present in this Court's Final Jury Instructions in *Nortek* and is improper. There is no requirement that to prove willful infringement, infringing functionality must be "new" or "different" from prior infringing functionality. Arista has provided no authority in support of this addition, and it is an incorrect statement of the law. Rather, the standard to prove willful infringement is governed by the analysis laid out by the Supreme Court recently in *Halo Electronics*, which is reflected in Cisco's proposed instruction. *Halo* includes no mention or requirement of showing "new infringing functionality" to prove willful infringement. Cisco's proposed instruction should be adopted without Arista's proposed addition.

4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**DISPUTED: Arista's Final Instruction No. 79 re Patent—Willful Patent Infringement**[165]

In this case, Cisco argues that Arista willfully infringed the '526 Patent by selling "EOS+" after Cisco filed its complaint. To prove willful infringement against Arista, Cisco must first persuade you that Arista infringed a valid claim of Cisco's patent. The requirements for proving such infringement were discussed in my prior instructions.

To prove willful infringement of a patent, Cisco must persuade you by a preponderance of the evidence that Arista had knowledge of the patent at issue and acted in bad faith, wantonly, maliciously, deliberately, consciously wrongfully, flagrantly, or with reckless disregard of any of the Asserted Claims of any of the Cisco Patents. You must base your verdict on the knowledge and actions of Arista at the time the infringement happened. Infringement alone is not enough to prove willfulness and mere knowledge of the '526 Patent at the time of infringement is not enough to prove willfulness. To prove that the sale of EOS+ is an act of willful infringement, Cisco must persuade you that EOS+ included new infringing functionality that was not present in EOS.

You should consider all of the circumstances including the motive or intent of Arista in developing and selling the accused products, whether Arista knew or should have known that its conduct was unreasonably risky and whether Arista had a reasonable belief at the time of the alleged infringement that its products did not infringe any of the Asserted Claims of the '526 Patent.

**Arista's Position:**

Arista's proposed instruction clarifies that Cisco's theory of willfulness is based on the allegation that Arista sold "EOS+" after Cisco filed its complaint. As the Court is aware, the post-

---

[165] Final Jury Instructions, *Nortek Air Solutions, LLC fka CES Group, LLC v. Energy Labs, Inc.*, No. 5:14-cv-02919-BLF, Dkt. 336 (Aug. 5, 2016); "*B.3.10,*" N.D. Cal. Model Patent Jury Instructions, citing 35 U.S.C. § 284; *In re Seagate Tech., LLC*, 497 F.3d 1360 (Fed. Cir. 2007); *Knorr-Bremse Systeme Fuer Nutzfahrzeuge GmbH v. Dana Corp.*, 383 F.3d 1337, 1345 (Fed. Cir. 2004) (*en banc*); *Crystal Semiconductor Corp. v. Tritech Microelectronics Int'l, Inc.,* 246 F.3d 1336, 1346 (Fed. Cir. 2001); *WMS Gaming Inc. v. Int'l Game Tech.*, 184 F.3d 1339, 1354 (Fed. Cir. 1999); *Read Corp. v. Portec, Inc.*, 970 F.2d 816 (Fed. Cir. 1992); *Gustafson, Inc. v. Intersystems Indus. Prods., Inc.,* 897 F.2d 508, 510 (Fed. Cir. 1990).

1    complaint release of EOS+ is Cisco's sole basis for its claim that Arista has willfully infringed the

2    '526 patent.   ECF 58 at 1:27–2:6 (July 9, 2015) (Order Granting Defendant's Partial Motion to
     Dismiss, with Leave to Amend).  Given the potential complexity of Cisco's other theories of

3    infringement, this instruction should make clear that the jury's determination regarding willfulness
     is limited to a narrow, specific context—the sale of EOS+.

4            Further, Arista's proposal instructs the jury that, "[t]o prove that the sale of EOS+ is an act
     of willful infringement, Cisco must persuade you that EOS+ included new infringing functionality

5    that was not present in EOS."  As the Court stated in granting Arista's Partial Motion to Dismiss,
     Cisco must show that Arista "did more than continue selling the alleged infringing product." *Id.* at

6    3:18–19.  Arista's proposal presents the jury with a factual question that must be resolved in order

7    to support a finding of willfulness.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**<u>STIPULATED: Final Instruction No. 84 re Patent—Damages: Burden Of Proof</u>**[166]

2

    I will instruct you about the measure of damages for Cisco's patent claim.  By instructing

3

you on damages, I am not suggesting which party should win on any issue.  If you find that Arista

4

infringed any valid claim of the '526 patent, you must then determine the amount of money

5

damages to be awarded to Cisco to compensate it for the infringement.

6

    The amount of those damages must be adequate to compensate Cisco for the infringement.

7

A damages award should put the patent holder in approximately the financial position it would

8

have been in had the infringement not occurred, but in no event may the damages award be less

9

than a reasonable royalty.  You should keep in mind that the damages you award are meant to

10

compensate Cisco and not to punish Arista.

11

    Cisco has the burden to persuade you of the amount of its damages.  You should award

12

only those damages that Cisco more likely than not suffered.  While Cisco is not required to prove

13

its damages with mathematical precision, it must prove them with reasonable certainty.  Cisco is

14

not entitled to damages that are remote or speculative.

15

16

17

18

19

20

21

22

23

24

_____

25

[166] "*B.5.1,*" N.D. Cal. Model Patent Jury Instructions, citing 35 U.S.C. § 284; *Dow Chem. Co.*

26

*v. Mee Indus., Inc.*, 341 F.3d 1370, 1381-82 (Fed. Cir. 2003); *Grain Processing Corp. v. American*

27

*Maize-Prod. Co.*, 185 F.3d 1341, 1349 (Fed. Cir. 1999); *Maxwell v. J. Baker, Inc.*, 86 F.3d 1098, 1108-09 (Fed. Cir. 1996); *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1544-45 (Fed. Cir. 1995)

28

(en banc).

1  **STIPULATED: Final Instruction No. 85 re Patent—Damages In The Form Of A Reasonable**
2  **Royalty: Definition of a "Reasonable Royalty"[167]**

3      A royalty is a payment made to a patent holder in exchange for the right to make, use or
4  sell the claimed invention.  This right is called a "license."  A reasonable royalty is the payment
5  for the license that would have resulted from a hypothetical negotiation between the patent holder
6  and the infringer taking place at the time when the infringing activity first began.  In considering
7  the nature of this negotiation, you must assume that the patent holder and the infringer would have
8  acted reasonably and would have entered into a license agreement.  You must also assume that
9  both parties believed the patent was valid and infringed.  Your role is to determine what the result
10 of that negotiation would have been.  The test for damages is what royalty would have resulted
11 from the hypothetical negotiation and not simply what either party would have preferred.

12     One way to calculate a royalty is to determine a one-time lump sum payment that the
13 infringer would have paid at the time of the hypothetical negotiation for a license covering all
14 sales of the licensed product for some period of time.  That period of time may include both past
15 and future sales.  When a one-time lump sum is paid, the infringer pays a single price for a license
16 covering both past and future infringing sales.

17
18
19
20
21
22

23  [167]  "B.5.7," N.D. Cal. Model Patent Jury Instructions, citing *Garretson v. Clark,* 111 U.S. 120
24  (1884); *Ericsson v. D-Link Sys., Inc.*, 773 F.3d 1201, 1226 (Fed. Cir. 2014); *VirnetX, Inc. v. Cisco
    Sys., Inc.*, 767 F.3d 1308, 1326-34 (Fed. Cir. 2014); *LaserDynamics, Inc. v. Quanta Computer,
25  Inc.,* 694 F.3d 51, 67-68 (Fed. Cir. 2012); *Lucent v. Gateway,* 580 F.3d 1301, 1336-39 (Fed. Cir.
    2009); *Golight, Inc., v. Wal-Mart Stores, Inc.*, 355 F.3d 1327, 1338 (Fed. Cir. 2004); *Maxwell v.
26  Baker, Inc.*, 86 F.3d 1098, 1108-10 (Fed. Cir. 1996); *Mahurkar v. C.R. Bard, Inc.*, 79 F.3d 1572,
    1579-81 (Fed. Cir. 1996); *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1554 (Fed. Cir. 1995) (en
27  banc); *Georgia-Pacific Corp. v. United States Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y.
28  1970).

1    **<u>STIPULATED: Final Instruction No. 86 re Patent—Damages: Date Of Commencement</u>[168]**

2         Damages that Cisco may be awarded by you commence on the date that Arista has both

3    infringed and been notified of the '526 patent.  In this case, Cisco and Arista agree that date was

4    December 5, 2014.

---

[168]  35 U.S.C. § 287; *Crystal Semiconductor Corp. v. Tritech Microelectronics Int'l, Inc.*, 246
F.3d 1336 (Fed. Cir. 2001); *Nike Inc. v. Wal-Mart Stores*, 138 F.3d 1437, 1443-44 (Fed. Cir.
1998); *Maxwell v. Baker, Inc.*, 86 F.3d 1098, 1111-12 (Fed. Cir. 1996); *American Med. Sys. v.
Medical Eng'g Corp.*, 6 F.3d 1523, 1534 (Fed. Cir. 1993); *Devices for Med., Inc. v. Boehl*, 822
F.2d 1062, 1066 (Fed. Cir. 1987).

SECOND AMENDED UNDISPUTED AND DISPUTED PROPOSED JURY INSTRUCTIONS
1124328.06

## **STIPULATED: Final Instruction No. 88 re Duty To Deliberate**[169]

Before you begin your deliberations, elect one member of the jury as your presiding juror. That person will preside over the deliberations and serve as the spokesperson for the jury in court.

You shall diligently strive to reach agreement with all of the other jurors if you can do so. Your verdict must be unanimous.

Each of you must decide the case for yourself, but you should do so only after you have considered all of the evidence, discussed it fully with the other jurors, and listened to their views.

It is important that you attempt to reach a unanimous verdict but, of course, only if each of you can do so after having made your own conscientious decision. Do not be unwilling to change your opinion if the discussion persuades you that you should. But do not come to a decision simply because other jurors think it is right, or change an honest belief about the weight and effect of the evidence simply to reach a verdict.

---

[169]   Instruction No. 3.1, *Ninth Circuit Manual of Model Civil Jury Instructions* (2007).

SECOND AMENDED UNDISPUTED AND DISPUTED PROPOSED JURY INSTRUCTIONS

1124328.06

**STIPULATED: Final Instruction No. 89 re Conduct Of The Jury**[170]

Because you must base your verdict only on the evidence received in the case and on these instructions, I remind you that you must not be exposed to any other information about the case or to the issues it involves. Except for discussing the case with your fellow jurors during your deliberations:

Do not communicate with anyone in any way and do not let anyone else communicate with you in any way about the merits of the case or anything to do with it. This includes discussing the case in person, in writing, by phone or electronic means, via email, via text messaging, or any Internet chat room, blog, website or application, including but not limited to Facebook, YouTube, Twitter, Instagram, LinkedIn, Snapchat, or any other forms of social media. This applies to communicating with your family members, your employer, the media or press, and the people involved in the trial. If you are asked or approached in any way about your jury service or anything about this case, you must respond that you have been ordered not to discuss the matter and to report the contact to the court.

Do not read, watch, or listen to any news or media accounts or commentary about the case or anything to do with it[, although I have no information that there will be news reports about this case]; do not do any research, such as consulting dictionaries, searching the Internet, or using other reference materials; and do not make any investigation or in any other way try to learn about the case on your own. Do not visit or view any place discussed in this case, and do not use Internet programs or other devices to search for or view any place discussed during the trial. Also, do not do any research about this case, the law, or the people involved—including the parties, the witnesses or the lawyers—until you have been excused as jurors. If you happen to read or hear anything touching on this case in the media, turn away and report it to me as soon as possible.

These rules protect each party's right to have this case decided only on evidence that has been presented here in court. Witnesses here in court take an oath to tell the truth, and the accuracy of their testimony is tested through the trial process. If you do any research or investigation

---

[170]    Ninth Circuit Model Jury Instruction, 3.2.

1  outside the courtroom, or gain any information through improper communications, then your

2  verdict may be influenced by inaccurate, incomplete or misleading information that has not been

3  tested by the trial process. Each of the parties is entitled to a fair trial by an impartial jury, and if

4  you decide the case based on information not presented in court, you will have denied the parties a

5  fair trial. Remember, you have taken an oath to follow the rules, and it is very important that you

6  follow these rules.

7      A juror who violates these restrictions jeopardizes the fairness of these proceedings. If any

8  juror is exposed to any outside information, please notify the court immediately.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**<u>STIPULATED: Final Instruction No. 90 re Communication With Court</u>**[171]

If it becomes necessary during your deliberations to communicate with me, you may send a note through the marshal, signed by your presiding juror or by one or more members of the jury. No member of the jury should ever attempt to communicate with me except by a signed writing; I will communicate with any member of the jury on anything concerning the case only in writing, or here in open court.  If you send out a question, I will consult with the parties before answering it, which may take some time.  You may continue your deliberations while waiting for the answer to any question.  Remember that you are not to tell anyone—including me—how the jury stands, numerically or otherwise, until after you have reached a unanimous verdict or have been discharged.  Do not disclose any vote count in any note to the court.

---

[171]    Instruction No. 3.3, *Ninth Circuit Manual of Model Civil Jury Instructions* (2007).

1

## **STIPULATED: Final Instruction No. 91 re Return Of Verdict**[172]

2         A verdict form has been prepared for you. After you have reached unanimous agreement

3   on a verdict, your foreperson should complete the verdict form according to your deliberations,

4   sign and date it, and advise the [clerk] [bailiff] that you are ready to return to the courtroom.

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

---

[172]   Instruction No. 3.5, *Ninth Circuit Manual of Model Civil Jury Instructions* (2007).

1

**DISPUTED: Cisco's Position on Arista's Final Instruction No. 92 re Glossary**

2

Cisco's position is that no such instruction should be given.

3

4

**Cisco's Position:**

5

This instruction should not be given.  Arista has proposed the use of a "glossary."  It is

6

multiple pages long (amidst jury instructions that are already extensive), and includes numerous

concepts that are explained elsewhere in the instructions when necessary, while other defined

7

terms are never otherwise mentioned.  A glossary is not necessary for this case, and would likely

confuse jurors more than it would assist them; it would be error to provide such materials to the

8

jury.  Further, Arista has cited no authority for this proposed instruction.  After Arista does so,

Cisco reserves the right to respond more fully and to address any such authorities.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## DISPUTED: Arista's Final Instruction No. 92 re Glossary

**Some of the terms in this glossary will be defined in more detail in the instructions you are given. The definitions in the instructions must be followed and must control your deliberations.  The terms defined in this glossary relate to Cisco's patent infringement claim.**

Abstract:  A brief summary of the technical disclosure in a patent to enable the U.S. Patent and Trademark Office and the public to determine quickly the nature and gist of the technical disclosure in the patent.

Amendment:  A patent applicant's change to one or more claims or to the specification either in response to an office action taken by a Patent Examiner or independently by the patent applicant during the patent application examination process.

Anticipation:  A situation in which a claimed invention describes an earlier invention and, therefore, is not considered new and is not entitled to be patented.

Assignment:  A transfer of patent rights to another called an "assignee" who upon transfer becomes the owner of the rights assigned.

Claim:  Each claim of a patent is a concise, formal definition of an invention and appears at the end of the specification in a separately numbered paragraph.  In concept, a patent claim marks the boundaries of the patent in the same way that a legal description in a deed specifies the boundaries of land, i.e. similar to a land owner who can prevent others from trespassing on the bounded property, the inventor can prevent others from using what is claimed.  Claims may be independent or dependent.  An independent claim stands alone.  A dependent claim does not stand alone and refers to one or more other claims.  A dependent claim incorporates whatever the other referenced claim or claims say.

Conception: The complete mental part of the inventive act which must be capable of proof, as by drawings, disclosure to another, etc.

Drawings: The drawings are visual representations of the claimed invention contained in a patent application and issued patent, and usually include several figures illustrating various aspects of the claimed invention.

Elements:  The required parts of a device or the required steps of a method.  A device or method infringes a patent if it contains each and every requirement of a patent claim.

Embodiment:  A product or method that contains the claimed invention.

Enablement:  A description of the invention that is sufficient to enable persons skilled in the field of the invention to make and use the invention. The specification of the patent must contain such an enabling description.

Examination:  Procedure before the U.S. Patent and Trademark Office whereby a Patent Examiner reviews the filed patent application to determine if the claimed invention is patentable.

Filing Date:  Date a patent application, with all the required sections, has been submitted to the U.S. Patent and Trademark Office.

Infringement:  Violation of a patent occurring when someone makes, uses or sells a patented invention, without permission of the Cisco, within the United States during the term of the patent. Infringement may be direct, by inducement, or contributory.  Direct infringement is making, using or selling the patented invention without permission.  Inducing infringement is intentionally causing another to directly infringe a patent.  Contributory infringement is offering to sell or selling an item that is an important component of the invention, so that the buyer directly infringes the patent.  To be a contributory infringer one must know that the part being offered or sold is designed specifically for infringing the patented invention and is not a common component suitable for non-infringing uses.

Limitation:   A required part of an invention set forth in a patent claim.  A limitation is a requirement of the invention.  The word "limitation" is often used interchangeably with the word "requirement."

Nonobviousness:  One of the requirements for securing a patent. To be valid, the subject matter of the invention must not have been obvious to a person of ordinary skill in the field of the invention at the time of the earlier of the filing date of the patent application or the date of invention.

Office Action:  A written communication from the Patent Examiner to the patent applicant in the course of the application examination process.

Patent:   A patent is an exclusive right granted by the U.S. Patent and Trademark Office to an inventor to prevent others from making, using, offering to sell, or selling an invention within the United States, or from importing it into the United States, during the term of the patent.  When the patent expires, the right to make, use or sell the invention is dedicated to the public.  The patent has three parts, which are a specification, drawings and claims.   The patent is granted after examination by the U.S. Patent and Trademark Office of a patent application filed by the inventor which has these parts, and this examination is called the prosecution history.

Patent and Trademark Office (PTO):   An administrative branch of the U.S. Department of Commerce that is charged with overseeing and implementing the federal laws of patents and trademarks.  It is responsible for examining all patent applications and issuing all patents in the United States.

Prior Art:  Previously known subject matter in the field of a claimed invention for which a patent is being sought.  It includes issued patents, publications, and knowledge deemed to be publicly available such as trade skills, trade practices and the like.

Prosecution History:  The prosecution history is the complete written record of the proceedings in the PTO from the initial application to the issued patent.  The prosecution history includes the office actions taken by the PTO and the amendments to the patent application filed by the applicant during the examination process.

Reads On:  A patent claim "reads on" a device or method when each required part (requirement) of the claim is found in the device or method.

Reduction to Practice:  The invention is "reduced to practice" when it is sufficiently developed to show that it would work for its intended purpose.

Reexamination: A process in which a patent is reexamined by the PTO to determine whether one or more of the claims are patentable with respect to submitted prior art which may consist only of

prior patents or printed publications.  An "ex parte" reexamination is initiated by Cisco or a third party, but does not include the further participation of any third party.  An "inter partes" reexamination is initiated by a third party who continues to participate in the proceedings.

Requirement:  A required part or step of an invention set forth in a patent claim. The word "requirement" is often used interchangeably with the word "limitation."

Royalty:  A royalty is a payment made to the owner of a patent by a non-owner in exchange for rights to make, use or sell the claimed invention.

Specification:  The specification is a required part of a patent application and an issued patent.  It is a written description of the invention and of the manner and process of making and using the claimed invention.

1

### STIPULATED: Final Instruction No. 93 re Copyright—Abandonment[173]

2

[To the extent an instruction is given]**

3      Arista contends that a copyright does not exist in Cisco's works because Cisco abandoned

4  the copyrights.  Cisco cannot claim ownership of the copyright if it was abandoned.  In order to

5  show abandonment, Arista has the burden of proving each of the following by a preponderance of

6  the evidence:

7          1. Cisco intended to surrender rights in the work; and

8          2. An act by Cisco evidencing that intent.

9

10      Mere inaction does not constitute abandonment of the copyright; however, this may be a

11  factor for you to consider in determining whether Cisco has abandoned the copyright.

12

13  ** Cisco contends abandonment is an equitable defense that is not presented to the jury.

14

15  **Cisco's Position:**

16      Abandonment is an equitable defense that should not be heard by the jury.  *See, e.g.*, *Deer

17  Valley Resort Co. v. Christy Sports, LLC*, No. 07-CV-904-CW, 2010 WL 1065940, at *3 (D. Utah
    Mar. 23, 2010) ("laches, estoppel, abandonment and waiver defenses … are all equitable

18  doctrines").  While the Model Instructions contain a proposed instruction, none of the cases cited
    therein specifically describe abandonment as a legal defense as opposed to an equitable defense; to

19  the contrary, they place abandonment aside other equitable defenses, confirming that it too is an
    equitable defense.  *See, e.g.*, *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1026 (9th Cir.

20  2001) (discussing abandonment simultaneously with waiver, an equitable defense); *Abend v.

21  MCA, Inc.*, 863 F.2d 1465, 1482 n.21 (9th Cir. 1988) (listing abandonment with other equitable
    defenses).

22  **Arista's Position:**

23      The Ninth Circuit provides a model jury instruction for abandonment because
    abandonment is an issue for the jury.  Ninth Circuit Model Jury Instruction 17.22; *see also*

24  Seventh Circuit Model Jury Instruction 12.7 (abandonment of copyright).  There is limited
    authority on the question of whether abandonment is an equitable defense, but in other contexts,

25  abandonment has been treated as a jury issue.  *See, e.g.*, *Transgo, Inc. v. Ajac Transmission Parts

26  Corp.*, 768 F.2d 1001, 1017 (9th Cir. 1985) (affirming jury verdict on abandonment of trademark).

27  _____

28      [173] Instruction No. 17.22, *Ninth Circuit Manual of Model Civil Jury Instructions* (2007).

1
2
3
4

Arista believes abandonment should go to the jury.  But to the extent there is uncertainty in the law over whether abandonment is an equitable defense, at a minimum, out of fairness, Arista requests that the Court ask for an advisory verdict on abandonment—the same approach the Court has taken on disgorgement.  The evidence concerning the abandonment defense overlaps substantially with Arista's other defenses, including fair use, so Cisco cannot claim any prejudice. And the parties can address the jury-right issue more fully at the same time they address the disgorgement jury-right issue.

5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**DISPUTED: Cisco's Preliminary Instruction No. 95 re Introduction to Copyright**[174]

The plaintiff, Cisco, claims ownership of a copyright and seeks damages against the defendant, Arista, for copyright infringement.  Arista denies infringing the copyright and asserts various affirmative defenses.  To help you understand the evidence in this case, I will explain some of the legal terms you will hear during this trial.

The owner of a copyright has the right to exclude any other person from reproducing, distributing, performing, displaying or preparing derivative works from the work covered by copyright for a specific period of time.

A copyrighted work can be a literary work, musical work, dramatic work, pantomime, choreographic work, pictorial work, graphic work, sculptural work, motion picture, audiovisual work, sound recording, architectural work, or computer program.

Facts, ideas, procedures, processes, systems, methods of operation, concepts, principles, or discoveries cannot themselves be copyrighted.

The copyrighted work must be original. An original work that closely resembles other works can be copyrighted so long as the similarity between the two works is not the result of copying.

In this case, the plaintiff, Cisco, contends that the defendant, Arista, has infringed the Cisco's copyright. The plaintiff has the burden of proving by a preponderance of the evidence that it is the owner of the copyright and that the defendant copied original expression from the copyrighted work. Preponderance of the evidence means that you must be persuaded by the evidence that it is more probably true than not true that the copyrighted work was infringed.

The plaintiff must also prove that the defendant's use of the copyrighted work was substantial.  In determining whether the defendant's use of the copyrighted work was substantial, you may consider how important the copied portion was to the copyrighted work as a whole.

The plaintiff may prove that the defendant copied the plaintiff's work, through either direct evidence that the defendant copied the plaintiff's work, or through circumstantial evidence by

---

[174] Ninth Circuit Model Jury Instruction 17.0.

1  showing that the defendant had access to the plaintiff's copyrighted work and that [there are

2  substantial similarities between the protected elements of the plaintiff's copyrighted works and the

3  defendant's works / the protected elements of the works are virtually identical].

4      One who reproduces, publicly distributes, publicly performs, publicly displays, or prepares

5  derivative works from a copyrighted work without authority from the copyright owner during the

6  term of the copyright infringes the copyright.

7      The defendant contends that there is no copyright infringement.  There is no copyright

8  infringement when the defendant independently created the challenged work, the plaintiff

9  abandoned ownership of the copyrighted work, or the plaintiff misused the copyright by requiring

10  its exclusive use or preventing the development of competing products.

11      In addition, there is no copyright infringement when the defendant made fair use of the

12  copyrighted work by reproducing copies for purposes such as criticism, comment, news reporting,

13  teaching, scholarship, or research.  [In determining whether the use made of the work was fair, you

14  are to consider the following non-exclusive factors:

15      1. The purpose and character of the use, including whether the use is of a commercial

16          nature or is for nonprofit educational purposes;

17      2. The nature of the copyrighted work;

18      3. The amount and substantiality of the portion used in relation to the copyrighted work as

19          a whole; and

20      4. The effect of the use upon the potential market for or value of the copyrighted work.[175]]

22  **Cisco's Position:**

23      Cisco's proposed instruction follows Instruction No. 17.0 of the *Ninth Circuit Manual of*

24  *Model Civil Jury Instructions* ("*Model*") in form and substance.

25      Arista's proposed instruction contains three errors.  *First*, Arista proposes adding an

26  instruction that "[t]he plaintiff must also prove that the defendant's work is virtually identical to

    the plaintiff's copyrighted work as a whole" as an alternative to proving that the use was

27  _____

28      [175] Ninth Circuit Model Jury Instruction 17.21.

"substantial."  Notwithstanding Cisco's dispute that such an standard applies at all (*see* Cisco's Position On Instruction No. 41), the proper place for such an alternative (if anywhere) is the subsequent paragraph, *i.e.*, how to prove copying. Cisco has proposed alternative versions containing language in the proper paragraph, depending on the outcome of the Court's dissection analysis and associated rulings.

     *Second*. Arista omits the paragraph on liability.

     *Third*, Arista's proposed instruction on fair use is inappropriate for a preliminary instruction, unnecessarily long, departs from the *Model*,  and acts as an incomplete version of the final instruction on fair use and is thus unbalanced.  There is no basis in a preliminary instruction to provide an non-contextualized list of the fair use factors, which will only serve to confuse rather than assist the jury.  Thus, the Court should use the fair use language in 17.0 of the *Model*, which already considers how to inform the jury about fair use before trial begins and, which Cisco has included as the first sentence of its final paragraph.  If, however, the Court decides to include any additional language, it should do no more than list the four statutory factors.

**DISPUTED: Arista's Preliminary Instruction No. 95 re Introduction to Copyright[176]**

The plaintiff, Cisco, claims ownership of a copyright and seeks damages against the defendant, Arista, for copyright infringement. The defendant denies infringing the copyright and asserts the affirmative defenses. To help you understand the evidence in this case, I will explain some of the legal terms you will hear during this trial.

The owner of a copyright has the right to exclude any other person from reproducing, distributing, performing, displaying or preparing derivative works from the work covered by copyright for a specific period of time.

A copyrighted work can be a literary work, musical work, dramatic work, pantomime, choreographic work, pictorial work, graphic work, sculptural work, motion picture, audiovisual work, sound recording, architectural work, or computer program.

Facts, ideas, procedures, processes, systems, methods of operation, concepts, principles, or discoveries cannot themselves be copyrighted.

The copyrighted work must be original. An original work that closely resembles other works can be copyrighted so long as the similarity between the two works is not the result of copying.

In this case, the plaintiff, Cisco, contends that the defendant, Arista, has infringed the plaintiff's copyright. The plaintiff has the burden of proving by a preponderance of the evidence that the plaintiff is the owner of the copyright and that the defendant copied original expression from the copyrighted work. Preponderance of the evidence means that you must be persuaded by the evidence that it is more probably true than not true that the copyrighted work was infringed.

[The plaintiff must also prove that the defendant's use of the copyrighted work was substantial. In determining whether the defendant's use of the copyrighted work was substantial, you may consider how important the copied portion was to the copyrighted work as a whole.]

*or*

[The plaintiff must also prove that the defendant's work is virtually identical to the

---

[176] Ninth Circuit Model Jury Instruction 17.0.

1  plaintiff's copyrighted work as a whole.]

2      To prove that the defendant copied the plaintiff's work, the plaintiff may show that the

3  defendant had access to the plaintiff's copyrighted work and that there are substantial similarities

4  between the defendant's work and the plaintiff's copyrighted work.

5      The defendant contends that there is no copyright infringement.  There is no copyright

6  infringement when the defendant independently created the challenged work, the defendant made

7  fair use of the copyrighted work, the plaintiff abandoned ownership of the copyrighted work, or

8  the plaintiff misused the copyright by requiring its exclusive use or preventing the development of

9  competing products.

10     The right of fair use permits the use of copyrighted works by others without the copyright

11  owner's consent under certain circumstances.[177]  The policy behind the right of fair use is to

12  encourage and allow the development of new ideas that build on earlier ones, thus providing a

13  counterbalance to the copyright policy to protect creative works.[178]

14     The owner of a copyright cannot prevent others from making a fair use of the owner's

15  copyrighted work.  In determining whether the use made of the work was fair, the Copyright Act

16  provides the following factors to consider:

17     1. The purpose and character of the use, including whether the use is of a commercial

18        nature or is for nonprofit educational purposes;

19     2. The nature of the copyrighted work;

20     3. The amount and substantiality of the portion used in relation to the copyrighted work as

21        a whole; and

22

23

24      [177] *Oracle America, Inc. v. Google, Inc.*, No. 10-cv-03561-WHA, ECF 1981 (May 26, 2016)

25  (Jury Instruction 21).

26      [178] *See Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1163 (9th Cir. 2007) ("The fair
    use defense permits the use of copyrighted works without the copyright owner's consent under

27  certain situations. The defense encourages and allows the development of new ideas that build on
    earlier ones, thus providing a necessary counterbalance to the copyright law's goal of protecting

28  creators' work product.").

1124328.06

1      4. The effect of the use upon the potential market for or value of the copyrighted work.[179]

2      These factors are not exclusive.  As you balance these and other factors, bear in mind that

3  fair use is appropriate where a reasonable copyright owner would have consented to the use, *i.e.*,

4  where the custom or public policy at the time would have defined the use as reasonable.[180]

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

_____

25  [179] Ninth Circuit Model Jury Instruction 17.21.  *See also Sony v. Bleem*, 214 F.3d 1022, 1026 (9th Cir. 2000); *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 579 (1994); *Sega Enters. Ltd.*

26  *v. Accolade, Inc.*, 977 F.2d 1510, 1524-26 (9th Cir. 1992); *Sony Computer Entertainment, Inc. v. Connectix Corp.*, 203 F.3d 596, 607 (9th Cir.), *cert. denied*, 531 U.S. 871 (2000).

27  [180] Order on Daubert Motions at 3-4 (quoting *Wall Data Inc. v. Los Angeles Cty. Sheriff's*

28  *Dep't*, 447 F.3d 769, 778 (9th Cir. 2006)).

Dated:  November 16, 2016

Respectfully submitted,

/s/ John M. Neukom

Kathleen Sullivan (SBN 242261)
kathleensullivan@quinnemanuel.com
QUINN EMANUEL URQUHART &
SULLIVAN LLP
51 Madison Avenue, 22nd Floor
New York, NY 10010
Telephone: (212) 849-7000
Facsimile: (212) 849-7100

Sean S. Pak (SBN 219032)
seanpak@quinnemanuel.com
Amy H. Candido (SBN 237829)
amycandido@quinnemanuel.com
John M. Neukom (SBN 275887)
johnneukom@quinnemanuel.com.
QUINN EMANUEL URQUHART &
SULLIVAN LLP
50 California Street, 22nd Floor
San Francisco, CA 94111
Telephone: (415) 875-6600
Facsimile: (415) 875-6700

Steven Cherny (*admitted pro hac vice*)
steven.cherny@kirkland.com
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900

Adam R. Alper (SBN 196834)
adam.alper@kirkland.com
KIRKLAND & ELLIS LLP
555 California Street
San Francisco, California  94104
Telephone: (415) 439-1400
Facsimile: (415) 439-1500

Michael W. De Vries (SBN 211001)
michael.devries@kirkland.com
KIRKLAND & ELLIS LLP
333 South Hope Street
Los Angeles, California 90071
Telephone: (213) 680-8400
Facsimile: (213) 680-8500

*Attorneys for Plaintiff Cisco Systems, Inc.*
Respectfully submitted,

1    DATED:  November 16, 2016                    */s/  Brian L. Ferrall*

2                                                 KEKER & VAN NEST LLP
                                                  ROBERT A. VAN NEST - # 84065
                                                  rvannest@kvn.com
3                                                 BRIAN L. FERRALL - # 160847
                                                  bferrall@kvn.com
4                                                 DAVID J. SILBERT - # 173128
                                                  dsilbert@kvn.com
5                                                 MICHAEL S. KWUN - # 198945
                                                  mkwun@kvn.com
6                                                 633 Battery Street
                                                  San Francisco, CA 94111-1809
7                                                 Telephone:    415 391 5400
                                                  Facsimile:    415 397 7188
8
                                                  *Attorneys for Defendant Arista Networks, Inc.*
9

10

11

12                          **ATTORNEY ATTESTATION**

13         I hereby attest, pursuant to Local Rule 5-1(i)(3), that the concurrence in the filing of this

14   document has been obtained from the signatory indicated by the "conformed" signature (/s/) of

15   John M. Neukom within this e-filed document.

16

17                          */s/     Brian L. Ferrall*

18

19

20

21

22

23

24

25

26

27

28