1   Kathleen Sullivan (SBN 242261)          KEKER & VAN NEST LLP
    kathleensullivan@quinnemanuel.com       ROBERT A. VAN NEST - # 84065
2   QUINN EMANUEL URQUHART &                rvannest@kvn.com
    SULLIVAN LLP                            BRIAN L. FERRALL - # 160847
3   51 Madison Avenue, 22nd Floor           bferrall@kvn.com
    New York, NY 10010                      DAVID SILBERT - # 173128
4   Telephone: (212) 849-7000               dsilbert@kvn.com
    Facsimile: (212) 849-7100               MICHAEL S. KWUN - # 198945
5                                           mkwun@kvn.com
    Sean S. Pak (SBN 219032)                633 Battery Street
6   seanpak@quinnemanuel.com                San Francisco, CA 94111-1809
    John M. Neukom (SBN 275887)             Telephone:    415 391 5400
7   johnneukom@quinnemanuel.com             Facsimile:    415 397 7188
    QUINN EMANUEL URQUHART &
8   SULLIVAN LLP                            ATTORNEYS FOR DEFENDANT ARISTA
    50 California Street, 22nd Floor        NETWORKS, INC.
9   San Francisco, CA 94111
    Telephone: (415) 875-6600
10  Facsimile: (415) 875-6700

11  David Nelson (admitted pro hac vice)
    davenelson@quinnemanuel.com
12  QUINN EMANUEL URQUHART &
    SULLIVAN LLP
13  500 W Madison St, Suite 2450
    Chicago, IL 60661
14  Telephone: (312) 705-7465
    Facsimile: (312) 705 7401

15  [Additional counsel listed on signature page]

16  ATTORNEYS FOR PLAINTIFF CISCO
17  SYSTEMS, INC.

18              **UNITED STATES DISTRICT COURT**

19      **NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION**

20

21  CISCO SYSTEMS, INC.,                    CASE NO. 5:14-cv-5344-BLF

22              Plaintiff,                  **PARTIES' THIRD AMENDED
                                            STIPULATED AND DISPUTED
23          vs.                             PROPOSED JURY INSTRUCTIONS**

24  ARISTA NETWORKS, INC.,                  Judge:  Hon. Beth Labson Freeman
                                            Dep't:  Courtroom 3, 5th Floor
25              Defendant.                  Trial Date:  November 21, 2016

26

27

28

# Table of Contents

Table of Contents ....................................................................................................1

Preliminary Note re: Jury Instruction Ordering ....................................................6

STIPULATED: Preliminary Instruction No. 1 re Duty Of The Jury ...................11

STIPULATED: Preliminary Instruction No. 2 re Claims And Defenses ............12

STIPULATED: Preliminary Instruction No. 3 re Outline Of Trial ....................13

STIPULATED: Preliminary Instruction No. 4 re What Is Evidence ..................14

STIPULATED: Preliminary Instruction No. 5 re What Is Not Evidence ...........15

STIPULATED: Preliminary Instruction No. 6 re Ruling On Objections ...........16

STIPULATED: Preliminary Instruction No. 7 re Taking Notes.........................17

STIPULATED: Preliminary Instruction No. 8 re Conduct Of The Jury ............18

STIPULATED: Preliminary Instruction No. 9 re Publicity During Trial...........20

STIPULATED: Preliminary Instruction No. 10 re No Transcript Available To Jury ........21

STIPULATED: Preliminary Instruction No. 11 re Bench Conferences And
    Recesses ...................................................................................................22

DISPUTED: Cisco's Preliminary Instruction No. 12 re Protected and Unprotected
    Matter .......................................................................................................23

DISPUTED: Arista's Preliminary Instruction No. 12 re  Protected and Unprotected
    Matter .......................................................................................................28

STIPULATED: Final Instruction No. 13 re Duty of Jury...................................31

STIPULATED: Final Instruction No. 14 re What Is Evidence...........................32

STIPULATED: Final Instruction No. 15 re What Is Not Evidence....................33

STIPULATED: Preliminary Instruction No. 16 re Direct And Circumstantial
    Evidence ...................................................................................................34

STIPULATED: Preliminary Instruction No. 17 re Stipulations Of Fact ...........35

STIPULATED: Preliminary Instruction No. 18 re Credibility Of Witnesses....36

STIPULATED: Preliminary & Final Instruction No. 19 re Expert Opinion ......37

STIPULATED: Preliminary Instruction No. 20 re Deposition In Lieu Of Live
    Testimony.................................................................................................39

STIPULATED: Final Instruction No. 21 re Charts and Summaries Not Received In Evidence ........................................................................................................40

STIPULATED: Final Instruction No. 22 re Charts and Summaries Received In Evidence ........................................................................................................41

STIPULATED: Preliminary & Final Instruction No. 23 re Burden Of Proof ...................42

STIPULATED: Preliminary & Final Instruction No. 24 re Copyright—Defined .............43

DISPUTED: Cisco's Final Instruction No. 25 re Copyright—Subject Matter ..................44

DISPUTED: Arista's Final Instruction No. 25 re Copyright—Subject Matter .................46

STIPULATED: Final Instruction No. 27 re Copyright—Ideas and Expressions ...............48

DISPUTED: Cisco's Final Instruction No. 28 re Copyright—Industry Standard Not Relevant ........................................................................................................49

DISPUTED: Arista's Position on Cisco's Final Instruction No. 28 re Copyright— Industry Standard Not Relevant ..............................................................51

DISPUTED:  Cisco's Final Instruction No. 29 re Copyright—Elements: Ownership and Copying ........................................................................................53

DISPUTED:  Arista's Preliminary & Final Instruction No. 29 re Copyright— Elements: Ownership and Copying ..........................................................55

STIPULATED: Final Instruction No. 30 re Copyright—Validity ....................................56

DISPUTED: Cisco's Final Instruction No. 31 re Copyright—Copyright Registration Certificates ........................................................................57

DISPUTED: Arista's Final Instruction No. 31 re Copyright—Copyright Registration Certificates ........................................................................59

DISPUTED: Cisco's Final Instruction No. 32 re Copyright—Originality .........................61

DISPUTED: Arista's Final Instruction No. 32 re Copyright—Originality .......................63

DISPUTED: Cisco's Final Instruction No. 33 re Copyright—Compilations ....................65

DISPUTED: Arista's Position on Cisco's Final Instruction No. 33 re Copyright— Compilations ........................................................................................66

STIPULATED: Final Instruction No. 34 re Copyright—Authorship & Work Made For Hire ........................................................................................................68

DISPUTED: Cisco's Final Instruction No. 35 re Copyright—Derivative Work ...............69

DISPUTED: Arista's Position on Cisco's Final Instruction No. 35 re Copyright— Derivative Work ....................................................................................70

DISPUTED: Cisco's Final Instruction No. 36 re Copyright—Copying (Direct Evidence) ........................................................................................................72

DISPUTED: Cisco's Final Instruction No. 37 re Copyright—Copying (Indirect Evidence)...........................................................................................74

DISPUTED: Arista's Final Instruction No. 37 re Copyright—Copying ............................75

STIPULATED: Final Instruction No. 38 re Copyright—Access ........................................78

DISPUTED: Cisco's Final Instruction No. 39 re Copyright—Substantial Similarity.........79

DISPUTED: Arista's Final Instruction No. 39 re: Copying—Substantial Similarity..........82

DISPUTED: Cisco's Position on Arista's Final Instruction No. 41 re Infringement Analysis ...........................................................................................83

DISPUTED: Arista's Final Instruction No. 41 re Infringement Analysis ...........................85

DISPUTED: Cisco's Final Instruction No. 46 re Copyright—Affirmative Defense: Fair Use ...................................................................................91

DISPUTED: Arista's Final Instruction No. 46 re Copyright—Affirmative Defense: Fair Use ...................................................................................96

DISPUTED: Cisco's Position on Arista's Final Instruction No. 49 re Copyright—Affirmative Defense: Fair Use: First Factor ..........................................100

DISPUTED: Arista's Final Instruction No. 49 re Copyright—Affirmative Defense: Fair Use: First Factor..........................................................102

DISPUTED: Cisco's Position on Arista's Final Instruction No. 53 re Copyright—Affirmative Defense: Fair Use: Second Factor ......................................107

DISPUTED: Arista's Final Instruction No. 53 re Copyright—Affirmative Defense: Fair Use: Second Factor ....................................................109

DISPUTED: Cisco's Position on Arista's Final Instruction No. 55 re Copyright—Affirmative Defense: Fair Use: Third Factor ..........................................112

DISPUTED: Arista's Final Instruction No. 55 re Copyright—Affirmative Defense: Fair Use: Third Factor ......................................................113

DISPUTED: Cisco's Position on Arista's Final Instruction No. 56 re Copyright—Affirmative Defense: Fair Use: Fourth Factor ......................................115

DISPUTED: Arista's Final Instruction No. 56 re Copyright—Affirmative Defense: Fair Use: Fourth Factor ....................................................116

DISPUTED: Cisco's Final Instruction No. 60 re Copyright—Affirmative Defense: Merger ...............................................................................118

DISPUTED: Arista's Final Instruction No. 60 re Copyright—Merger ............................120

DISPUTED: Cisco's Final Instruction No. 61 re Copyright—Affirmative Defense: Scènes À Faire..............................................................................122

DISPUTED: Arista's Final Instruction No. 61 re Copyright—Scènes À Faire................125

THIRD AMENDED UNDISPUTED AND DISPUTED PROPOSED JURY INSTRUCTIONS

1126417.05

DISPUTED: Cisco's Position on Arista's Final Instruction No. 62 re Copyright—
Affirmative Defense: Copyright Misuse ..............................................129

DISPUTED: Arista's Final Instruction No. 62 re Copyright—Affirmative Defense:
Copyright Misuse ................................................................................130

DISPUTED: Cisco's Final Instruction No. 63 re Copyright—Willful Infringement .......132

DISPUTED: Arista's Final Instruction No. 63 re Copyright—Willfulness......................133

STIPULATED: Final Instruction No. 64 re Copyright—Damages ..................................135

STIPULATED: Final Instruction No. 65 re Copyright—Actual Damages ......................136

DISPUTED: Cisco's Final Instruction No. 66 re Copyright—Infringer's Profits ............137

DISPUTED: Arista's Final Instruction No. 66 re Copyright—Arista's Profits................141

DISPUTED: Cisco's Final Instruction No. 67 re Copyright—Infringer's Profits—
Willfulness ...........................................................................................144

DISPUTED: Arista's Position on Cisco's Final Instruction No. 67 re Copyright—
Arista's Profits—Willfulness ...............................................................146

STIPULATED: Preliminary Instruction No. 68 re Patent—What A Patent Is And
How One Is Obtained ...........................................................................147

STIPULATED: Preliminary Instruction No. 69 re Patent—Summary Of Patent
Claim Contentions ...............................................................................149

STIPULATED: Final Instruction No. 70 re Patent—Interpretation Of Patent Claims......150

STIPULATED: Final Instruction No. 72 re Patent—Patent Infringement: Burden
Of Proof................................................................................................152

STIPULATED: Final Instruction No. 73 re Patent—Direct Infringement of a Patent ......153

STIPULATED: Final Instruction No. 74 re Patent—Literal Infringement Of A
Patent....................................................................................................154

STIPULATED: Final Instruction No. 75 re Patent—Patent Infringement Under The
Doctrine Of Equivalents .......................................................................155

STIPULATED: Final Instruction No. 77 re Patent—Contributory Patent
Infringement .........................................................................................157

STIPULATED: Final Instruction No. 78 re Patent—Inducing Patent Infringement ........158

DISPUTED: Cisco's Final Instruction No. 79 re Patent—Willful Patent
Infringement .........................................................................................159

DISPUTED: Arista's Final Instruction No. 79 re Patent—Willful Patent
Infringement .........................................................................................161

STIPULATED: Final Instruction No. 84 re Patent—Damages: Burden Of Proof ...........163

1126417.05

STIPULATED: Final Instruction No. 85 re Patent—Damages In The Form Of A
  Reasonable Royalty: Definition of a "Reasonable Royalty"...................................164

STIPULATED: Final Instruction No. 86 re Patent—Damages: Date Of
  Commencement...................................................................................................165

STIPULATED: Final Instruction No. 88 re Duty To Deliberate .....................................166

STIPULATED: Final Instruction No. 89 re Conduct Of The Jury ...................................167

STIPULATED: Final Instruction No. 90 re Communication With Court .........................169

STIPULATED: Final Instruction No. 91 re Return Of Verdict .........................................170

DISPUTED: Cisco's Position on Arista's Final Instruction No. 92 re Glossary..............171

DISPUTED: Arista's Final Instruction No. 92 re Glossary ..............................................172

STIPULATED: Final Instruction No. 93 re Copyright—Abandonment ...........................175

DISPUTED: Cisco's Preliminary Instruction No. 95 re Introduction to Copyright ..........177

DISPUTED: Arista's Preliminary Instruction No. 95 re Introduction to Copyright .........182

THIRD AMENDED UNDISPUTED AND DISPUTED PROPOSED JURY INSTRUCTIONS

1126417.05

**Preliminary Note re: Jury Instruction Ordering**

    **1.  Jury Instruction Ordering**

**Arista's Position:**

    Throughout the meet and confer process, which has resulted in the elimination of roughly two dozen proposed instructions and stipulations on many others, the parties have maintained the same instruction numbers for the convenience of the Court and to preserve a clean record. Instructions 26, 40, 42–45, 47, 48, 50–52, 54, 57–59, 71, 76, 80–83, 87, and 94 are now intentionally omitted.

    In total, Arista proposes that the Court give 23 preliminary instructions and 48 final instructions (the table below includes four additional final instructions only Cisco proposes to include).

    For purposes of comparison, Judge Alsup gave 47 final instructions in *Oracle v. Google* in the 2016 fair use trial, which did not include any instructions on copyright infringement, misuse, abandonment, merger, scenes a faire, copyright damages, patent infringement, or patent damages. Case No. 10-cv-3561, ECF 1981.  Judge Alsup also gave a seven-page preliminary instruction on fair use in that trial.  *Id.*, ECF 1828.  In the 2012 trial, damages and the patent were also bifurcated.  There were 37 final copyright instructions.  ECF 1017.  The 2012 instruction ran 19 pages, and the 2016 instruction ran 22 pages, but the instructions had no page breaks as here.  If Arista's proposed final instructions were given without page breaks, they would run a total of 39 pages.

    The order of instructions Arista proposes below tracks the order of instructions provided by the Ninth Circuit Model Jury Instructions, wherever possible.  This is also the order Cisco proposed during the meet and confer process.  As of this filing, Cisco had not provided its final stipulation to this order, so Arista proposes it here separately.

| **Preliminary Instructions** | |
|---|---|
| **Proposed Order** | **Title & Current Preliminary Instruction Number** |
| 1. | Preliminary Instruction No. 1 re Duty Of The Jury |
| 2. | Preliminary Instruction No. 2 re Claims And Defenses |
| 3. | Preliminary Instruction No. 3 re Outline Of Trial |
| 4. | Preliminary Instruction No. 4 re What Is Evidence |
| 5. | Preliminary Instruction No. 5 re What Is Not Evidence |
| 6. | Preliminary Instruction No. 6 re Ruling On Objections |
| 7. | Preliminary Instruction No. 7 re Taking Notes |
| 8. | Preliminary Instruction No. 8 re Conduct Of The Jury |

| | Preliminary Instructions |
|---|---|
| **Proposed Order** | **Title & Current Preliminary Instruction Number** |
| 9. | Preliminary Instruction No. 9 re Publicity During Trial |
| 10. | Preliminary Instruction No. 10 re No Transcript Available To Jury |
| 11. | Preliminary Instruction No. 11 re Bench Conferences And Recesses |
| 12. | Preliminary Instruction No. 16 re Direct And Circumstantial Evidence |
| 13. | Preliminary Instruction No. 17 re Stipulations Of Fact |
| 14. | Preliminary Instruction No. 18 re Credibility Of Witnesses |
| 15. | Preliminary & Final Instruction No. 19 re Expert Opinion |
| 16. | Preliminary Instruction No. 20 re Deposition In Lieu Of Live Testimony |
| 17. | Preliminary & Final Instruction No. 23 re Burden Of Proof |
| 18. | Preliminary Third Instruction No. 95 re Introduction to Copyright |
| 19. | Preliminary & Final Instruction No. 24 re Copyright—Defined |
| 20. | Preliminary & Final Instruction No. 29 re Copyright—Elements: Ownership and Copying |
| 21. | Preliminary Instruction No. 12 re  Protected and Unprotected Matter |
| 22. | Preliminary Instruction No. 68 re Patent—What A Patent Is And How One Is Obtained |
| 23. | Preliminary Instruction No. 69 re Patent—Summary Of Patent Claim Contentions |

| | Final Instructions |
|---|---|
| **Proposed Order** | **Title & Current Final Instruction Number** |
| 1. | Final Instruction No. 13 re Duty of Jury |
| 2. | Final Instruction No. 14 re What Is Evidence |
| 3. | Final Instruction No. 15 re What Is Not Evidence |
| 4. | Preliminary & Final Instruction No. 19 re Expert Opinion |
| 5. | Final Instruction No. 21 re Charts and Summaries Not Received In Evidence |
| 6. | Final Instruction No. 22 re Charts and Summaries Received In Evidence |
| 7. | Preliminary & Final Instruction No. 23 re Burden Of Proof |
| 8. | Preliminary & Final Instruction No. 24 re Copyright—Defined |
| 9. | Final Instruction No. 25 re Copyright—Subject Matter |
| 11. | Preliminary & Final Instruction No. 29 re Copyright—Elements: Ownership and Copying |
| 12. | Final Instruction No. 34 re Copyright—Authorship & Work Made For Hire |

| | Final Instructions | |
|---|---|---|
| **Proposed Order** | **Title & Current Final Instruction Number** | |
| 13. | Final Instruction No. 30 re Copyright—Validity | |
| 14. | Final Instruction No. 31 re Copyright—Copyright Registration Certificates | |
| 15. | Final Instruction No. 32 re Copyright—Originality | |
| 16. | Final Instruction No. 27 re Copyright—Ideas and Expressions | |
| 16. | Cisco's Final Instruction No. 35 re Copyright—Derivative Work [Arista's position is that no such instruction should be given] | |
| 17. | Cisco's Final Instruction No. 33 re Copyright—Compilations [Arista's position is that no such instruction should be given] | |
| 18. | Cisco's Final Instruction No. 28 re Copyright—Industry Standard Not Relevant [Arista's position is that no such instruction should be given] | |
| 19. | Final Instruction No. 60 re Copyright—Merger [if the Court determines Merger is not an affirmative defense] | |
| 20. | Final Instruction No. 61 re Copyright—Scènes A Faire [if the Court determines scenes a faire is not an affirmative defense] | |
| 21. | Final Instruction No. 37 re Copyright—Copying | |
| 22. | Final Instruction No. 38 re Copyright—Access | |
| 23. | Final Instruction No. 39 re: Copying—Substantial Similarity | |
| 24. | Final Instruction No. 41 re Infringement Analysis [Cisco's position is that no such instruction should be given] | |
| 25. | Final Instruction No. 60 re Copyright—Merger [if the Court determines Merger is an affirmative defense] | |
| 26. | Final Instruction No. 61 re Copyright—Scènes A Faire [if the Court determines scenes a faire is an affirmative defense] | |
| 27. | Final Instruction No. 46 re Copyright—Affirmative Defense: Fair Use | |
| 28. | Final Instruction No. 49 re Copyright—Affirmative Defense: Fair Use: First Factor [Cisco's position is that no such instruction should be given] | |
| 29. | Final Instruction No. 53 re Copyright—Affirmative Defense: Fair Use: Second Factor [Cisco's position is that no such instruction should be given] | |
| 30. | Final Instruction No. 55 re Copyright—Affirmative Defense: Fair Use: Third Factor [Cisco's position is that no such instruction should be given] | |
| 31. | Final Instruction No. 56 re Copyright—Affirmative Defense: Fair Use: Fourth Factor [Cisco's position is that no such instruction should be given] | |
| 32. | Final Instruction No. 62 re Copyright—Affirmative Defense: Copyright Misuse [Cisco's position is that no such instruction should be given] | |
| 33. | Final Instruction No. 93 re Copyright—Abandonment [Cisco's position is that no such instruction should be given] | |
| 34. | Final Instruction No. 63 re Copyright—Willfulness | |
| 35. | Final Instruction No. 64 re Copyright—Damages | |
| 36. | Final Instruction No. 65 re Copyright—Actual Damages | |
| 37. | Final Instruction No. 66 re Copyright—Arista's Profits | |

| Final Instructions | |
|---|---|
| **Proposed Order** | **Title & Current Final Instruction Number** |
| 38. | Cisco's Final Instruction No. 67 re Copyright—Infringer's Profits—Willfulness [Arista's position is that no such instruction should be given] |
| 39. | Final Instruction No. 70 re Patent—Interpretation Of Patent Claims |
| 40. | Final Instruction No. 72 re Patent—Patent Infringement: Burden Of Proof |
| 41. | Final Instruction No. 73 re Patent—Direct Infringement of a Patent |
| 42. | Final Instruction No. 74 re Patent—Literal Infringement Of A Patent |
| 43. | Final Instruction No. 75 re Patent—Patent Infringement Under The Doctrine Of Equivalents |
| 44. | Final Instruction No. 77 re Patent—Contributory Patent Infringement |
| 45. | Final Instruction No. 78 re Patent—Inducing Patent Infringement |
| 46. | Final Instruction No. 79 re Patent—Willful Patent Infringement |
| 47. | Final Instruction No. 84 re Patent—Damages: Burden Of Proof      158 |
| 48. | Final Instruction No. 85 re Patent—Damages In The Form Of A Reasonable Royalty: Definition of a "Reasonable Royalty |
| 49. | Final Instruction No. 86 re Patent—Damages: Date Of Commencement |
| 50. | Final Instruction No. 88 re Duty To Deliberate |
| 51. | Final Instruction No. 89 re Conduct Of The Jury |
| 52. | Final Instruction No. 90 re Communication With Court |
| 53. | Final Instruction No. 91 re Return Of Verdict |
| 54. | Final Instruction No. 92 re Glossary |

**Cisco's Position:**

*Preliminary Instructions*:

Cisco does not object to Arista's proposed order of preliminary instructions with the caveat that Cisco believes that Instruction Nos. 24 (Copyright—Defined) and 29 (Copyright—Elements: Ownership & Copying) should be incorporated into Instruction No. 95 (Introduction to Copyright) rather than be separated out. The *Model*'s version of Instruction No. 95 addresses those concepts in an abbreviated fashion, and it would be confusing to the jury to provide an introduction to copyright, followed by discussion of affirmative defenses, only to subsequently repeat instructions on the definition of copyright and elements of infringement. Cisco therefore proposes incorporating Instruction Nos. 24 and 29 in their entirety into Instruction No. 95.

*Final Instructions*:

Cisco does not object to Arista's proposed order of final instructions with the following

caveats:

- As discussed herein, merger (No. 60) and scènes à faire (No. 61) are affirmative defenses; the instructions on these doctrines should therefore be provided with Arista's other affirmative defenses, and the heading of those instructions should be titled as such.  However, if the Court should disagree, then these instructions should be given before rather than after the Court's instruction on comparing the works.

- Cisco's position is that Arista's proposed instructions on copyright misuse and abandonment should not be given, as these are equitable defenses.

- Cisco's position is that a separate instruction on Infringement Analysis (No. 41) should not be given, as the proper standard is already provided in Cisco's Substantial Similarity Instruction (No. 39).  In addition, for the reasons stated herein, Cisco's position is that Arista's multiple instructions on fair use (Nos. 49, 53, 55, 56) should not be given.

1    **<u>STIPULATED: Preliminary Instruction No. 1 re Duty Of The Jury</u>**[1]

2         Members of the jury:  You are now the jury in this case.  It is my duty to instruct you on

3    the law.

4         At the end of the trial I will give you final instructions.  It is the final instructions that will

5    govern your duties.

6         It is your duty to find the facts from all the evidence in the case.  To those facts you will

7    apply the law as I give it to you.  You must follow the law as I give it to you whether you agree

8    with it or not.  And you must not be influenced by any personal likes or dislikes, opinions,

9    prejudices or sympathy.  That means that you must decide the case solely on the evidence before

10   you.  You will recall that you took an oath to do so.

11        Please do not read into these instructions or anything I may say or do that I have an

12   opinion regarding the evidence or what your verdict should be.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

[1]    Instruction No. 1.1B, *Ninth Circuit Manual of Model Civil Jury Instructions* (2007).

1

**STIPULATED: Preliminary Instruction No. 2 re Claims And Defenses**[2]

2       To help you follow the evidence, I will give you a brief summary of the positions of the

3  parties:

4       The plaintiff in this case is Cisco Systems, Inc., which I will refer to as "Cisco," and the

5  defendant is Arista Networks, Inc., which I will refer to as "Arista."  This is a case involving

6  claims of copyright and patent infringement.  Cisco and Arista sell networking switches.

7       Cisco asserts that Arista infringed Cisco's copyrights by copying certain elements of

8  Cisco's user interface and copying certain portions of Cisco's product manuals.  [Cisco also

9  alleges that Arista infringed its copyrights willfully.]  Cisco has the burden of proving its claim of

10  copyright infringement [and its claim of willfulness].  Arista contends that it does not infringe any

11  of Cisco's copyrights[ and that the asserted elements of Cisco's works are not protected by

12  copyright because of the merger and scènes à faire doctrines {should the Court determine these are

13  not affirmative defenses}].  Arista also asserts as affirmative defenses that any use of the accused

14  elements is a "fair use" under the law, [that the asserted elements of Cisco's works are not

15  protected by copyright because of the merger and scènes à faire doctrines {should the Court

16  determine these are affirmative defenses }], and that Cisco has [misused its copyrights,]

17  abandoned its copyrights[, and waived its rights to enforce the copyrights at issue].  Arista has the

18  burden of proof on these affirmative defenses.

19       Cisco also asserts that Arista has infringed United States Patent No. 7,047,526, which I and

20  the parties will refer to as the "'526 Patent."  [Cisco also asserts that Arista infringed the '526

21  Patent willfully.]  Cisco has the burden of proving its claim of patent infringement [and its claim

22  of willfulness].  Arista denies that it has infringed the '526 Patent.

23

24

25

26

27

---

28  [2] Instruction No. 1.2, *Ninth Circuit Manual of Model Civil Jury Instructions* (2007).

THIRD AMENDED UNDISPUTED AND DISPUTED PROPOSED JURY INSTRUCTIONS

1126417.05

## **STIPULATED: Preliminary Instruction No. 3 re Outline Of Trial**[3]

Trials proceed in the following way:  First, each side may make an opening statement.  An opening statement is not evidence.  It is simply an outline to help you understand what that party expects the evidence will show.  A party is not required to make an opening statement.

The plaintiff, Cisco, will then present evidence, and counsel for the defendant, Arista, may cross-examine.  Then Arista may present evidence, and counsel for Cisco may cross-examine.  Afterwards, one or both sides may then present rebuttal evidence to respond to the other party.

After the evidence has been presented, I will instruct you on the law that applies to the case and the attorneys will make closing arguments.

After that, you will go to the jury room to deliberate on your verdict.

---

[3]  Instruction No. 1.18, *Ninth Circuit Manual of Model Civil Jury Instructions* (2007).

1

## **STIPULATED: Preliminary Instruction No. 4 re What Is Evidence**[4]

2

The evidence you are to consider in deciding what the facts are consists of:

3

1.   The sworn testimony of any witness;

4

2.   The exhibits that are admitted into evidence;

5

3.   Any facts to which the lawyers have agreed; and

6

4.   Any facts that I may instruct you to accept as proved.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

---

[4]   Instruction No. 1.6, *Ninth Circuit Manual of Model Civil Jury Instructions* (2007).

**STIPULATED: Preliminary Instruction No. 5 re What Is Not Evidence[5]**

Certain things are not evidence, and you may not consider them in deciding what the facts are.  I will list them for you:

1.    Arguments and statements by lawyers are not evidence.  The lawyers are not witnesses.  What they may say in their opening statements, closing arguments and at other times is intended to help you interpret the evidence, but it is not evidence.  If the facts as you remember them differ from the way the lawyers have stated them, your memory of them controls.

2.    Questions and objections by lawyers are not evidence.  Attorneys have a duty to their clients to object when they believe a question is improper under the rules of evidence.  You should not be influenced by the objection or by the court's ruling on it.

3.    Testimony or exhibits that are excluded or stricken, or that you are instructed to disregard, are not evidence and must not be considered.  In addition some evidence may be received only for a limited purpose; when I instruct you to consider certain evidence only for a limited purpose, you must do so and you may not consider that evidence for any other purpose.

4.    Anything you may see or hear when the court is not in session is not evidence.  You are to decide the case solely on the evidence received at the trial.

---

[5]  Instruction No. 1.7, *Ninth Circuit Manual of Model Civil Jury Instructions* (2007).

1

## **STIPULATED: Preliminary Instruction No. 6 re Ruling On Objections**[6]

2        There are rules of evidence that control what can be received into evidence.  When a

3  lawyer asks a question or offers an exhibit into evidence and a lawyer on the other side thinks that

4  it is not permitted by the rules of evidence, that lawyer may object.  If I overrule the objection, the

5  question may be answered or the exhibit received.  If I sustain the objection, the question cannot

6  be answered, and the exhibit cannot be received.  Whenever I sustain an objection to a question,

7  you must ignore the question and must not guess what the answer might have been.

8        Sometimes I may order that evidence be stricken from the record and that you disregard or

9  ignore that evidence.  That means when you are deciding the case, you must not consider the

10  stricken evidence for any purpose.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

---

[6]  Instruction No. 1.10, *Ninth Circuit Manual of Model Civil Jury Instructions* (2007).

THIRD AMENDED UNDISPUTED AND DISPUTED PROPOSED JURY INSTRUCTIONS

1126417.05

1

## **STIPULATED: Preliminary Instruction No. 7 re Taking Notes**[7]

2       If you wish, you may take notes to help you remember the evidence.  If you do take notes,

3 please keep them to yourself until you go to the jury room to decide the case.  Do not let

4 notetaking distract you.  When you leave, your notes should be left in the courtroom.  No one will

5 read your notes.

6       Whether or not you take notes, you should rely on your own memory of the evidence.

7 Notes are only to assist your memory.  You should not be overly influenced by your notes or those

8 of other jurors.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

---

[7]  Instruction No. 1.15, *Ninth Circuit Manual of Model Civil Jury Instructions* (2007).

### **STIPULATED: Preliminary Instruction No. 8 re Conduct Of The Jury**[8]

I will now say a few words about your conduct as jurors.

First, keep an open mind throughout the trial, and do not decide what the verdict should be until you and your fellow jurors have completed your deliberations at the end of the case.

Second, because you must decide this case based only on the evidence received in the case and on my instructions as to the law that applies, you must not be exposed to any other information about the case or to the issues it involves during the course of your jury duty.  Thus, until the end of the case or unless I tell you otherwise:

Do not communicate with anyone in any way and do not let anyone else communicate with you in any way about the merits of the case or anything to do with it.  This includes discussing the case in person, in writing, by phone or electronic means, via email, text messaging, or any internet chat room, blog, website or application, including but not limited to Facebook, YouTube, Twitter, Instagram, LinkedIn, Snapchat, or any other forms of social media.  This applies to communicating with your fellow jurors until I give you the case for deliberation, and it applies to communicating with everyone else including your family members, your employer, the media or press, and the people involved in the trial, although you may notify your family and your employer that you have been seated as a juror in the case, and how long you expect the trial to last.  But, if you are asked or approached in any way about your jury service or anything about this case, you must respond that you have been ordered not to discuss the matter and report the contact to the court.

Because you will receive all the evidence and legal instruction you properly may consider to return a verdict:

Do not read, watch or listen to any news or media accounts or commentary about the case or anything to do with it; do not do any research, such as consulting dictionaries, searching

---

[8]  Instruction No. 1.12, *Ninth Circuit Manual of Model Civil Jury Instructions* (2007).

the Internet, or using other reference materials; and do not make any investigation or in any other way try to learn about the case on your own.  Do not visit or view any place discussed in this case, and do not use Internet programs or other devices to search for or view any place discussed during the trial.  Also, do not do any research about this case, the law, or the people involved—including the parties, the witnesses or the lawyers—until you have been excused as jurors.  If you happen to read or hear anything touching on this case in the media, turn away and report it to me as soon as possible.

These rules protect each party's right to have this case decided only on evidence that has been presented here in court.  Witnesses here in court take an oath to tell the truth, and the accuracy of their testimony is tested through the trial process.  If you do any research or investigation outside the courtroom, or gain any information through improper communications, then your verdict may be influenced by inaccurate, incomplete or misleading information that has not been tested by the trial process.  Each of the parties is entitled to a fair trial by an impartial jury, and if you decide the case based on information not presented in court, you will have denied the parties a fair trial.  Remember, you have taken an oath to follow the rules, and it is very important that you follow these rules.

A juror who violates these restrictions jeopardizes the fairness of these proceedings.  If any juror is exposed to any outside information, please notify the court immediately.

1

**<u>STIPULATED: Preliminary Instruction No. 9 re Publicity During Trial</u>**[9]

2

      If there is any news media account or commentary about the case or anything to do with it,

3

you must ignore it.  You must not read, watch or listen to any news media account or commentary

4

about the case or anything to do with it.  The case must be decided by you solely and exclusively

5

on the evidence that will be received in the case and on my instructions as to the law that applies.

6

If any juror is exposed to any outside information, please notify me immediately.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

[9]  Ninth Circuit Model Jury Instruction, 1.13.

28

1

**STIPULATED: Preliminary Instruction No. 10 re No Transcript Available To Jury**[10]

2      I urge you to pay close attention to the trial testimony as it is given.  During deliberations

3  you will not have a transcript of the trial testimony.

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

─────────────────────

28      [10]   Ninth Circuit Model Jury Instruction, 1.14.

1126417.05

1

## STIPULATED: Preliminary Instruction No. 11 re Bench Conferences

2

## And Recesses[11]

3      From time to time during the trial, it may become necessary for me to talk with the

4 attorneys out of the hearing of the jury, either by having a conference at the bench when the jury is

5 present in the courtroom, or by calling a recess.  Please understand that while you are waiting, we

6 are working.  The purpose of these conferences is not to keep relevant information from you, but

7 to decide how certain evidence is to be treated under the rules of evidence and to avoid confusion

8 and error.

9      Of course, we will do what we can to keep the number and length of these conferences to a

10 minimum. I may not always grant an attorney's request for a conference.  Do not consider my

11 granting or denying a request for a conference as any indication of my opinion of the case or of

12 what your verdict should be.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

[11]   Ninth Circuit Model Jury Instruction, 1.17.

**DISPUTED: Cisco's Preliminary Instruction No. 12 re Protected and Unprotected Matter**

Anyone who copies original elements of a copyrighted work during the term of the copyright without the owner's permission infringes the copyright. These original elements are "protected matter" under copyright law. An "original" element is one that was created by the work's author by use of at lease some minimal creativity. An "original" element need not be new or novel, and may include or incorporate elements taken from prior works and works from the public domain.[12] For example, an author's original selection and arrangement of existing words or symbols is protected matter.[13] In addition, the original selection, arrangement and organization of materials is itself protected by copyright law.

Elements of a copyrighted work that may not be protected by copyright law may include individual words standing alone; however, an original combination of individual words may be protected by copyright law.[14] In addition, copyright law does not give the author the right to prevent others from copying or using the underlying idea contained in a work, but an author's particular expression of an idea is protected by copyright law.[15] Finally, an element of a copyrighted work that is functional is entitled to copyright protection as long as the author had multiple ways to express the underlying idea.[16]

[*If the Court determines dissection and filtration*: At the end of this trial, I will instruct you on what elements of Cisco's works are protected.]

[*If the Court does not determine dissection and filtration*: At the end of this trial, I will provide you with more detailed instructions on protectable and unprotectable matter.]

---

[12] Instruction No. 17.13, *Ninth Circuit Manual of Model Civil Jury Instructions* (2007).
[13] *Feist*, 499 U.S. at 345; *Compaq Computer Corp. v. Ergonome, Inc.*, 137 Supp. 2d 768, 775-76 (S.D. Tex. 2001).
[14] *Feist*, 499 U.S. at 345; *Compaq*, 137 Supp. 2d at 775-76.
[15] Instruction No. 17.3, *Ninth Circuit Manual of Model Civil Jury Instructions* (2007).
[16] *Oracle Am., Inc. v. Google Inc.*, 750 F.3d 1339, 1367 (Fed. Cir. 2014) ("under Ninth Circuit law, an original work—even one that serves a function—is entitled to copyright protection as long as the author had multiple ways to express the underlying idea").

**Cisco's Position:**

Cisco's proposed instruction follows this Court's instruction in that it provides a balanced, high-level assessment of the distinction between protectable and unprotectable materials. Cisco's proposed instruction accurately states what kinds of elements are protectable, and further provides a balanced assessment of the types of elements that are or are not protectable—*e.g.*, individual words vs. selection and arrangements of words; ideas vs. expressions; and functionality vs. multiple ways to express a function. Further, Cisco's instruction does not presuppose evidence nor risk a danger of confusing the jury by introducing concepts such as a graphic user interface. Finally, Cisco's proposed instruction does not repeat instructions already given to the jury in Instruction No. 95, which will be given immediately prior to this one.

Arista's proposed instruction does not follow this Court's direction to provide only high-level guidance, and it unnecessarily repeats earlier instruction, provides inaccurate statements of law, and improperly presupposes the presentation of evidence to the jury.

*First*, Arista's proposed instruction does not provide a single explanation or description of matter that ***is*** protectable under copyright law. It is therefore facially unfair and prejudicial. Indeed, in *Harper House, Inc. v. Thomas Nelson, Inc.*, 889 F.2d 197, 2017 (9th Cir. 1989), the Ninth Circuit found the district court's jury instructions to be irreparably flawed because the court's "instructions did not adequately explain to the jury ***which material was, in fact, protectable***." (emphasis added).

*Second*, Arista's instructions on "various types of unprotected matter" is both repetitive and inaccurate. In particular:

- **Not original**: Arista provides no explanation of what "originality" means (in contrast to Cisco's instruction), and in any event Instruction No. 95 already says that "The copyrighted work must be original."

- **Public domain**: By definition, a work in the public domain is not original to the author, so this instruction is unnecessary. Further, to the extent that Arista is referring to a particular element of a work as being in the public domain, Arista's instruction is unbalanced as it fails to acknowledge that a work that incorporates materials from the public domain is still protectable. *See Model* Instruction No. 17.13 ("An original work may include or incorporate elements taken from … the public domain").

- **Idea, concept, principle, discovery, fact, actual event, process, or method expressed or described in a work**: This is unnecessary, as Instruction No. 95 already says that "Facts, ideas, procedures, processes, systems, methods of operation, concepts, principles, or discoveries cannot themselves be copyrighted." In any event, Arista's instruction is unbalanced because it fails to disclose that a particular expressions of facts, ideas, procedures, processes, systems, methods of operation, concepts, principles, or discoveries can be copyrighted.

- **Merger or scènes à faire**: This instruction is flawed for the same reasons discussed in Cisco's position on Arista's proposed Instruction Nos. 60 and 61. *First*, these are not barriers to copyrightability, but rather affirmative defenses and thus do not

belong in a discussion of copyrightable matters.  *See Oracle Am., Inc. v. Google Inc.*, 750 F.3d 1339, 1358 (Fed. Cir. 2014) ("In the Ninth Circuit, while questions regarding originality are considered questions of copyrightability,"  scènes à faire and merger are "affirmative defenses to claims of infringement.  *Ets–Hokin,* 225 F.3d at 1082; *Satava v. Lowry,* 323 F.3d 805, 810 n.3 (9th Cir. 2003) ("The Ninth Circuit treats scènes à faire as a defense to infringement rather than as a barrier to copyrightability."); *Ets-Hokin v. Skyy Spirits, Inc.*, 225 F.3d 1068, 1082 (9th Cir. 2000) (merger an affirmative defense).   *Second*, in any event, the Court will have just provided an instruction on merger and scènes à faire in Instruction No. 95, and it would be prejudicial to Cisco to provide that instruction again.

- **Parts of a computer program**:  This instruction is highly prejudicial, as Cisco does not seek protection in a "computer program," but rather its user interface, which is a separate work and thus not subject to dissection.  Arista's language is directed at the source code of a computer program, which is not at issue in this case.  Any discussion of "programming techniques" or otherwise on hardware efficiency and effectiveness has nothing to do with filtering an element out of a user interface; it is a completely separate and distinct work.  *See* ECF 633 (Brief on Copyrighted Works).  Further, as Arista's own footnote to authority shows, this instruction is an attempt by Arista to insert yet another instruction on scènes à faire, which is not part of protectability.

*Third*, Arista requests that the Court instruct the jury that "I have already determined that the following elements of Cisco's works are unprotected matter."  This is incorrect—the Court has not issued any such findings.  Further, even if the Court had issued such a ruling, it would need to also inform the jury of what it has determined *is* protected matter.

*Fourth*, in any event, Arista's statements of what the Court purportedly "already determined" are unprotected matter are legally and factually incorrect:

- **Idea of a user interface based on text instead of graphics, and other ideas of creating other user interface features**:  It is wholly inappropriate for the Court to instruct the jury about anything to do with a "user interface," let alone graphic user interfaces, before the presentation of evidence.  This is not the "high level" instruction that the Court asked the parties to provide.  Further, as noted above, the Court will have already instructed the jury that "ideas" are not copyrightable (see Instruction No. 95), rendering a repetition of such an instruction prejudicial.  In any event, Arista's proposed instruction fails to inform the jury that Cisco's particular expressions of idea in its user interface are protectable.

- **Functions**:  Arista's proposed instruction that the function of "any feature" of Cisco's works is unprotected is misleading, as it does not sufficiently inform the jury that a particular expression—even a functional one—may be protected.  Arista's instruction is particularly prejudicial in the computer context, where the jury may be misled that any "feature" that performs a function is not copyrightable, when no such proposition is true.  As the Federal Circuit explained applying Ninth Circuit law:

1         [C]omputer programs are by definition functional—they are all designed to accomplish some task.  Indeed, the statutory definition of "computer program" acknowledges that they function "to bring about a certain result." *See* 17 U.S.C. § 101 (defining a "computer program" as "a set of statements or instructions to be used directly or indirectly in a computer in order to bring about a certain result").  If we were to accept the district court's suggestion that a computer program is uncopyrightable simply because it "carr[ies] out pre-assigned functions," no computer program is protectable. That result contradicts Congress's express intent to provide copyright protection to computer programs, as well as binding Ninth Circuit case law finding computer programs copyrightable, despite their utilitarian or functional purpose. … ***[U]nder Ninth Circuit law, an original work—even one that serves a function—is entitled to copyright protection as long as the author had multiple ways to express the underlying idea.***

*Oracle Am., Inc. v. Google Inc.*, 750 F.3d 1339, 1367 (Fed. Cir. 2014) (emphasis added).  Cisco's proposed instruction both acknowledges functionality and provides the requisite balance by informing the jury that functionality is no barrier to copyrightability if the author had multiple ways to express the underlying idea.

- **Individual words and "certain" short phrases**: Arista's instruction is incorrect and prejudicial for multiple reasons.  *First*, Arista's instruction wrongly encourages the jury to consider Cisco's commands as if they were isolated words, which contradicts well-settled case law warning "against the dangers of basing copyrightability analysis on an approach which isolates each element." *Matthew Bender & Co. v. W. Publ'g Co.*, 158 F.3d 674, 691 (2d Cir. 1998).  *See, e.g.*, *Oracle Am., Inc. v. Google Inc.*, 750 F.3d 1339, 1353 (Fed. Cir. 2014)("[T]he opening of Charles Dickens' *A Tale of Two Cities* is nothing but a string of short phrases. Yet no one could contend that this portion of Dickens' work is unworthy of copyright protection because it can be broken into those shorter constituent components."); *Enter. Mgmt. Ltd. v. Warrick*, 717 F.3d 1112, 1119 (10th Cir. 2013) (similar); *Coquico, Inc. v. Rodríguez-Miranda*, 562 F.3d 62, 68 (1st Cir. 2009) (in dissecting, "the court should not lose sight of the forest for the trees"); *Softel, Inc. v. Dragon Med. & Sci. Commc'ns, Inc.*, 118 F.3d 955, 964 (2d Cir. 1997) ("taken individually, the words that constitute a literary work are not copyrightable, yet this fact does not prevent a literary text, *i.e.*, a collection of words, from enjoying copyright protection"); *Apple Computer, Inc. v. Microsoft Corp.*, 779 F. Supp. 133, 136 (N.D. Cal. 1991) (similar as to "abstract painting composed entirely of geometric forms arranged in an original pattern"), *aff'd*, 35 F.3d 1435 (9th Cir. 1994); NIMMER ON COPYRIGHT § 13.03[F][5] ("analysis should not proceed mechanically simply by isolating physical elements out of the copyrightable work").  *Second*, in this case, all of Cisco's expressions—including short ones—are protectable; thus Arista's instruction that certain "short phrases" are unprotectable is incorrect.  What may be unprotectable are "[w]ords and short phrases such as ***names, titles, and slogans***" standing alone. 37 C.F.R. § 202.1(a) (emphasis added); ECF 618 at 6-7.  Further, it is whether a phrase contains some appreciable level of creativity, ***however few words it may contain***." *J. Racenstein & Co. v. Wallace*, 1999 WL 632853, at *2 (S.D.N.Y. Aug. 19, 1999) (emphasis added); *Soc'y of Holy*

*Transfig. Monastery, Inc. v. Gregory*, 689 F.3d 29, 52 (1ˢᵗ Cir. 2012) ("applicability of this law very much turns on the specific short phrases at issue, as not all short phrases will automatically be deemed uncopyrightable"); ECF 619 at 10-11. *Applied Innovations, Inc. v. Regents of the University of Minnesota* 876 F.2d 626, 635 (8th Cir. 1989) ("short, simple, declarative statements, such as 'I am a good mixer' and 'No one seems to understand me'" were protectable in the context of a personality assessment test because they were not "merely fragmentary words and phrases" nor "names or titles or slogans."). Here, all of Cisco's original expressions contain an appreciable level of creativity. Cisco's instruction addresses any prejudice by instructing that while an individual word may not be protectable, an original combination of words is protectable.

- **"Terms" from industry standard publications or prior systems**: This instruction is highly prejudicial for multiple reasons. *First*, the Court has already ruled that Arista may not rely on any "industry standard" argument regarding protectability. *See* Motion in Limine Ruling at 3 (excluding evidence on "industry standard" or "*de facto* industry standard"). *Second*, Arista's instruction wrongly states that certain (undefined) terms are "familiar terms within the networking industry"—a finding that the Court has not issued and is incorrect, particularly given that Arista does not reference that the only relevant time is the time of Cisco's creation. *Third*, whether a "term" comes from another publication is not relevant, as it is Cisco's *particular expression* that the jury will explore. There is no dispute that none of Cisco's multiword command expressions or other original elements were ever used in the "industry" or in "prior" systems; to the extent that Arista is asking the jury to pluck out individual words or phrases from a longer expression, such an instruction should be rejected for the same reasons identified above regarding "individual words and short phrases." *Fourth*, in any event, this instruction presupposes the evidence by directing the jury to certain types of evidence (such as "publications" and "prior systems") before the presentation of evidence has even occurred.

- **Other "features" taken from "prior systems" or other "unprotectable" elements**: Arista's proposed instruction is highly prejudicial, as it improperly leaves to the jury's imagination the "other reasons" that matter may be unprotectable. Further, this instruction is improper in its reference to "prior systems" for the reasons stated above, including that none of Cisco's protectable elements had ever appeared in any "prior systems." Further, Arista's reference to other "features" is unclear and leads to speculation.

**DISPUTED: Arista's Preliminary Instruction No. 12 re  Protected and Unprotected Matter**

During the trial, you must keep in mind that copyright protection does not extend to all the elements of a copyrighted work.  Elements to which copyright protection extends are called "protected matter," and other elements are "unprotected matter."  Unprotected matter is not entitled to copyright protection and therefore may be copied by another author.

There are various types of unprotected matter.  They include:

1.  A portion of a work that is not original to the author;

2.  A portion of the work that is in the public domain;

3.  An idea, concept, principle, discovery, fact, actual event, process, or method expressed or described in a work;

4.  Content that is unprotected under the doctrines of merger or scènes à faire, which I have just explained;[17] and

5.  Parts of a computer program considered to be ideas, common programming techniques, or parts of a program that are required in order for the program to perform its function efficiently and effectively given the computer hardware and other software with which the program operates.[18]

In this case, I have already determined that the following elements of Cisco's works are unprotected matter:

1.      The idea of creating a user interface that is based on text instead of graphics, as well as the idea of creating other features of a user interface that you will hear about during the trial.

2.      The function of any feature of Cisco's works.

---

[17] ABA Model Jury Instructions, Copyright, Trademark, and Trade Dress Litigation, Instruction 1.4.3 (citing cases and treatises).  There is no analogous Ninth Circuit Model Jury Instruction.

[18] *See* Arista's Disputed Final Instruction No. 61 re Scenes a Faire.

3.     Use of terms that come from industry standards publications or from prior systems not created by Cisco, which I will instruct you about in more detail at the end of the trial. Many of these terms may not be familiar to you, but they are familiar terms in the networking industry and are not original to Cisco.

4.     Any of the individual words that Cisco uses in its works, as well as certain short phrases, which I will instruct you about in more detail at the end of the trial.

5.     Certain other features of Cisco's works that were taken from prior systems or are unprotectable for other reasons, which I will instruct you about in more detail at the end of the trial.

I will instruct you about the types of protected and unprotected matter in greater detail at the end of the trial.

**Arista's Position:**

As discussed in great detail in the parties' analytic dissection briefing, the Court is required to perform analytic dissection in order for the jury to understand the scope of its task in determining whether Cisco has proven copyright infringement.  *See Harper House, Inc. v. Thomas Nelson, Inc.*, 889 F.2d 197, 201 (9th Cir. 1989); *Apple Computer, Inc. v. Microsoft Corp.*, 35 F.3d 1435, 1443 (9th Cir. 1994) (dissecting graphical interface); *Brown Bag Software v. Symantec Corp.*, 960 F.2d 1465, 1475–76 (9th Cir. 1992) (citing *Data East USA, Inc. v. Epyx, Inc.*, 862 F.2d 204, 209 (9th Cir. 1988)).  Even if the Court has not completed analytic dissection by the time of preliminary instructions, the Court should give the jury a preliminary instruction alerting it to be cautious about assuming that copying automatically constitutes infringement, since, under the law, it does not.

In *Harper House*, the Ninth Circuit reversed a jury verdict *even though the jury instructions addressed protectability*, because they failed adequately to ensure that the jury did not base an infringement verdict on unprotected elements.  The court cautioned that "the negative connotations to 'copying,'" created an "obvious risk of an improper verdict . . . and a need for further instructions to protect legitimate activity and avoid the suffocation of competition."  889 F.2d at 207.

This Court has broad discretion to craft pretrial procedures that will help the Court and jury grapple with complex legal issues, avoid wasted time, and minimize the very real risks of confusion.  *See* Fed. R. Civ. P. 16(c); *Crawford–El v. Britton*, 523 U.S. 574, 599 (1998).  It should exercise that authority by adopting Arista's proposed preliminary instruction, which is drawn directly from model jury instructions, in an effort to give the jury an overview of the difference between protected and unprotected elements as well as information about any of the analytic dissection work that this Court will have completed by the time the trial opens.  Although, ideally, the Court would be able to instruct the jury about the precise scope of copyright protection in this

1    case before it hears evidence, the instruction Arista proposes provides a minimum level of
2    information the jury needs *before* it hears Cisco's accusations of "copying" without legal context
     or acknowledgment that copying of unprotected material is perfectly legal.

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## **STIPULATED: Final Instruction No. 13 re Duty of Jury**[19]

2          Members of the Jury:  Now that you have heard all of the evidence and the arguments of

3   the attorneys, it is my duty to instruct you on the law that applies to this case.

4          A copy of these instructions will be sent to the jury room for you to consult during your

5   deliberations.

6          It is your duty to find the facts from all the evidence in the case.  To those facts you will

7   apply the law as I now give it to you.  You must follow the law as I give it to you whether you

8   agree with it or not.  And you must not be influenced by any personal likes or dislikes, opinions,

9   prejudices, or sympathy.  That means that you must decide the case solely on the evidence before

10  you.  You will recall that you took an oath to do so.

11         Please do not read into these instructions or anything that I may have said or done that I

12  have an opinion regarding the evidence or what your verdict should be.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

---

28    [19]   Instruction Nos. 1.1C, *Ninth Circuit Manual of Model Civil Jury Instructions* (2007).

1

## STIPULATED: Final Instruction No. 14 re What Is Evidence[20]

2    The evidence you are to decide the facts are consists of:

3    1.   The sworn testimony of any witness;

4    2.   The exhibits that are admitted into evidence;

5    3.   Any facts to which the lawyers have agreed; and

6    4.   Any facts that I have instructed you to accept as proved.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

[20]   Instruction No. 1.6, *Ninth Circuit Manual of Model Civil Jury Instructions* (2007).

**STIPULATED: Final Instruction No. 15 re What Is Not Evidence**[21]

In reaching your verdict, you may consider only the testimony and exhibits received into evidence. Certain things are not evidence, and you may not consider them in deciding what the facts are.

1.     Arguments and statements by lawyers are not evidence. The lawyers are not witnesses. What they have said in their opening statements, will say in their closing arguments, and at other times is intended to help you interpret the evidence, but it is not evidence. If the facts as you remember them differ from the way the lawyers have stated them, your memory of them controls.

2.     Questions and objections by lawyers are not evidence. Attorneys have a duty to their clients to object when they believe a question is improper under the rules of evidence. You should not be influenced by the objection or by the court's ruling on it.

3.     Testimony and exhibits that have been excluded or stricken, or that you have been instructed to disregard, are not evidence and must not be considered. In addition some evidence may be received only for a limited purpose; when I give a limiting instruction, you must follow it.

4.     Anything you may have seen or heard when the court was not in session is not evidence.   You are to decide the case solely on the evidence received at the trial.

---

[21]   Instruction No. 1.7, *Ninth Circuit Manual of Model Civil Jury Instructions* (2007).

1    **<u>STIPULATED: Preliminary Instruction No. 16 re Direct And Circumstantial Evidence</u>[22]**

2        Evidence may be direct or circumstantial.  Direct evidence is direct proof of a fact, such as

3    testimony by a witness about what that witness personally saw or heard or did.

4        Circumstantial evidence is proof of one or more facts from which you could find another

5    fact.  You should consider both kinds of evidence.  The law makes no distinction between the

6    weight to be given to either direct or circumstantial evidence.  It is for you to decide how much

7    weight to give to any evidence.

8        By way of example, if you wake up in the morning and see that the sidewalk is wet, you

9    may find from that fact that it rained during the night.  However, other evidence, such as a turned

10   on garden hose, may provide a different explanation for the presence of water on the sidewalk.

11   Therefore, before you decide that a fact has been proved by circumstantial evidence, you must

12   consider all the evidence in the light of reason, experience and common sense.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28
   [22]  Instruction No. 1.9, *Ninth Circuit Manual of Model Civil Jury Instructions* (2007).

THIRD AMENDED UNDISPUTED AND DISPUTED PROPOSED JURY INSTRUCTIONS
1126417.05

1

**STIPULATED: Preliminary Instruction No. 17 re Stipulations Of Fact**[23]

2      The parties have agreed to certain facts that will be read to you.  You must therefore treat

3  these facts as having been proved.

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

[23]   Ninth Circuit Model Jury Instruction, 2.2.

28

**STIPULATED: Preliminary Instruction No. 18 re Credibility Of Witnesses**[24]

In deciding the facts in this case, you may have to decide which testimony to believe and which testimony not to believe.  You may believe everything a witness says, or part of it, or none of it.

In considering the testimony of any witness, you may take into account:

1.   The opportunity and ability of the witness to see or hear or know the things testified to;

2.   The witness's memory;

3.   The witness's manner while testifying;

4.   The witness's interest in the outcome of the case, if any;

5.   The witness's bias or prejudice, if any;

6.   Whether other evidence contradicted the witness's testimony;

7.   The reasonableness of the witness's testimony in light of all the evidence; and

8.   Any other factors that bear on believability.


Sometimes a witness may say something that is not consistent with something else he or she said.  Sometimes different witnesses will give different versions of what happened.  People often forget things or make mistakes in what they remember.  Also, two people may see the same event but remember it differently.  You may consider these differences, but do not decide that testimony is untrue just because it differs from other testimony.

However, if you decide that a witness has deliberately testified untruthfully about something important, you may choose not to believe anything that witness said.  On the other hand, if you think the witness testified untruthfully about some things but told the truth about others, you may accept the part you think is true and ignore the rest.

The weight of the evidence as to a fact does not necessarily depend on the number of witnesses who testify.  What is important is how believable the witnesses were, and how much weight you think their testimony deserves.

---

[24]   Instruction No. 1.11, *Ninth Circuit Manual of Model Civil Jury Instructions* (2007).

1

## STIPULATED: Preliminary & Final Instruction No. 19 re Expert Opinion[25]

Some witnesses, because of education or experience, are permitted to state opinions and the reasons for those opinions.

Such opinion testimony should be judged like any other testimony.  You may accept it or reject it, and give it as much weight as you think it deserves, considering the witness's education and experience, the reasons given for the opinion, and all the other evidence in the case.

---

[25]  Instruction No. 2.13, *Ninth Circuit Manual of Model Civil Jury Instructions* (2007).

-37-          Case No. 5:14-cv-5344-BLF

1126417.05

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**STIPULATED: Preliminary Instruction No. 20 re Deposition In Lieu Of Live Testimony**[26]

A deposition is the sworn testimony of a witness taken before trial. The witness is placed under oath to tell the truth and lawyers for each party may ask questions. The questions and answers are recorded. When a person is unavailable to testify at trial, and in certain other situations, the deposition of that person may be used at the trial. Insofar as possible, you should consider deposition testimony, presented to you in court in lieu of live testimony, in the same way as if the witness had been present to testify.

---

[26]  Ninth Circuit Model Jury Instruction, 2.4.

THIRD AMENDED UNDISPUTED AND DISPUTED PROPOSED JURY INSTRUCTIONS
1126417.05

1

2

**STIPULATED: Final Instruction No. 21 re Charts and Summaries Not Received In Evidence**[27]

3    Certain charts and summaries not admitted into evidence have been shown to you in order

4  to help explain the contents of books, records, documents, or other evidence in the case.  Charts

5  and summaries are only as good as the underlying evidence that supports them.  You should,

6  therefore, give them only such weight as you think the underlying evidence deserves.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

[27]    Ninth Circuit Model Jury Instruction, 2.14.

1    **STIPULATED: Final Instruction No. 22 re Charts and Summaries Received In Evidence**[28]

2            Certain charts and summaries have been admitted into evidence to illustrate information

3    brought out in the trial.  Charts and summaries are only as good as the testimony or other admitted

4    evidence that supports them.  You should, therefore, give them only such weight as you think the

5    underlying evidence deserves.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27    _____

28    [28]   Ninth Circuit Model Jury Instruction, 2.15.

1

**STIPULATED: Preliminary & Final Instruction No. 23 re Burden Of Proof**[29]

2     When a party has the burden of proof on any claim or affirmative defense by

3 preponderance of the evidence, it means you must be persuaded by the evidence that the claim or

4 affirmative defense is more probably true than not true.  Preponderance of the evidence basically

5 means "more likely than not."[30]

6     You should base your decision on all of the evidence, regardless of which party presented

7 it.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

_____

27   [29]  Instruction No. 1.3, *Ninth Circuit Manual of Model Civil Jury Instructions* (2007).
     [30]  *Synopsys, Inc. v. ATopTech, Inc.*, No. 13-cv-2965 (N.D. Cal.), ECF No. 688 at 7  (Final

28 Instructions).

**STIPULATED: Preliminary & Final Instruction No. 24 re Copyright—Defined[31]**

[Cisco has placed its proposed preliminary version of this Instruction into Instruction No. 95]

Copyright is the exclusive right to copy.  This right to copy includes the exclusive rights to, or authorize others to:

    1.  Reproduce the copyrighted work in copies;

    [2. Recast, transform, or adapt the work—that is, prepare derivative works based upon the copyrighted work;]**

    3.  Distribute copies of the copyrighted work to the public by sale or other transfer of ownership; and

    4.  Display publicly a [to be determined by analytic dissection].

It is the owner of a copyright who may exercise these exclusive rights.  The term "owner" includes the author of the work.  In general, copyright law protects against reproduction, adaptation, distribution, or display of infringing copies of the owner's copyrighted work without the owner's permission.  An owner may enforce these rights to exclude others in an action for copyright infringement.

**The parties dispute whether a derivative-works instruction should be given.  The parties' positions on this issue are set forth in connection with disputed instruction number 35.

---

[31]  Instruction No. 17.1, *Ninth Circuit Manual of Model Civil Jury Instructions* (2007).

**DISPUTED: Cisco's Final Instruction No. 25 re Copyright—Subject Matter**[32]

The copyrighted works involved in this trial are:

1. Cisco's  user interface of its networking equipment; and

2. Accompanying technical documentation.

Copyright protection of a computer program extends to its structure, sequence, organization, user interface, screen displays, and menu structures.[33]  Here, Cisco claims that Arista copied original elements of several versions of Cisco's copyrighted user interface.[34]  Cisco also claims that Arista copied Cisco's copyrighted technical documentation, such as user guides and manuals.[35]  These also are protected by copyright.

I will collectively refer to Cisco's user interface and technical documents together as "Cisco's works," the "copyrighted works," or simply "the works."

The copyrights in Cisco's versions of its user interface, including the accompanying technical documents, have been registered with the United States Copyright Office.

**Cisco's Position:**

Cisco's proposed instruction follows Instruction No. 17.2 of the *Ninth Circuit Manual of Model Civil Jury Instructions* ("*Model*"), as adapted by the district court in *Synopsys, Inc. v. ATopTech, Inc.*, No. 13-cv-2965 (N.D. Cal.), ECF No. 688.  Cisco's proposed instruction is a short, neutral, accurate instruction reflecting the current state of the law, as provided in Cisco's cited authority.

Arista's proposed instruction should be rejected as confusing, duplicative, and incorrect.

---

[32]  Instruction No. 17.2, *Ninth Circuit Manual of Model Civil Jury Instructions* (2007).
[33]  *Synopsys, Inc. v. ATopTech, Inc.*, No. 13-cv-2965 (N.D. Cal.), ECF No. 688 at 11 (Final Instructions); *Johnson Controls, Inc. v. Phoenix Control Sys, Inc.*, 886 F.2d 1173, 1175 (9th Cir. 1989) (a program's "structure, sequence and organization and user interface" are protectable "depend[ing] on the particular facts of each case"); *General Universal Sys., Inc. v. Lee*, 379 F.3d 131, 142 (5th Cir. 2004) (copyright protection of computer programs "extends … to a program's nonliteral elements, including its structure, sequence, organization, user interface, screen displays, and menu structures).
[34]  ECF No. 552-1.
[35]  ECF No. 552-2.

*First*, as to the first paragraph, the first sentence is incorrect to describe the works involved in this trial as "computer programs." This case is not about computer programming; it is rather about a user interface that is visible to a human operator and that thus has no necessary or standard form of expression, which is a separate copyrighted work. *See Napoli v. Sears, Roebuck & Co.*, 874 F. Supp. 206, 211 (N.D. Ill. 1995) (a "single registration of a computer program accomplishes two interrelated yet distinct registrations: one of the program itself, and one of the screen displays or user interface of that program, to the extent that each contains copyrightable subject matter"); *see also* U.S. Copyright Office, *Registration for Computer Programs, Circular 61*, August, 2012 ("A single registration may be made for a computer program and its screen display. … The registration will extend to any copyrightable screens generated by the program, regardless of whether identifying material for the screens is deposited."); PATRY ON FAIR USE §5:4 (2012) (work is not determined by registration); *see* Cisco's Instruction No. 31, *infra*.

*Second*, in the first paragraph, Arista refers to the protection of "non-literal elements" without explanation of what that means and cites no authority for such an instruction; in contrast, Cisco's proposal accurately states that protection "extends to its structure, sequence, organization, user interface, screen displays, and menu structures," which is both clear and directly supported by Cisco's cited authority.

*Third*, Arista's second paragraph tracks an optional paragraph provided by the *Model*, but such an instruction is unnecessary here because: (1) there is no dispute that Cisco's works are fixed in a tangible medium; and (2) subsequent instructions address the subject and scope of originality in detail. *See infra* Instruction Nos. 27 (Ideas and Expressions), 32 (Originality) and 33 (Compilations). There is no need for this optional paragraph when later Instructions subsequently address the same concepts in greater detail. Likewise, Arista's third paragraph is optional under the *Model*, but unnecessary here because it is addressed in the very next instruction, which provides almost identical language. *See infra* Instruction No. 27 (Ideas and Expressions) (parties agree to include the sentence: "Copyright law does not give the author the right to prevent others from copying or using the underlying ideas contained in the work, such as any procedures, processes, systems, methods of operation, concepts, principles or discoveries.").

*Fourth*, Arista's proposed instruction is also incorrect and misleading with respect to the facts of this case. Arista's proposal suggests that the only literal aspects of Cisco's copyrighted works are user manuals. That is not accurate given the facts of this case, in which Cisco is asserting copyright protection for its user interface, which interface includes literal components (*e.g.*, multi-word command expressions, command responses, modes and prompts and help descriptions).

**DISPUTED: Arista's Final Instruction No. 25 re Copyright—Subject Matter**[36]

The works involved in this trial are computer programs, that is, sets of statements or instructions to be used directly or indirectly in a computer to bring about a certain result; and manuals describing the operation of computer programs. You are instructed that a copyright may be obtained in computer programs and manuals. Copyright protection in a computer program may extend to original and expressive elements of the computer program, including its structure, sequence, and organization.

These works can be protected by copyright law. Only those parts of the works consisting of original works of authorship fixed in a tangible medium of expression from which it can be perceived, reproduced, or otherwise communicated, either directly or with the aid of a machine or device, are protected by the Copyright Act.

Copyright protection for an original work of authorship does not extend to any idea, procedure, process, system, method of operation, concept, principle, or discovery, regardless of the form in which it is described, explained, illustrated, or embodied.


**Arista's Position:**

Cisco departs from the model jury instruction in several ways without justification. First, it adds the word "copyrighted" before the word "works" in the first sentence, which prejudges one of the issues for the jury.

Second, Cisco rewrites the categories of copyrighted works, which derives from the Copyright Act itself, to fit Cisco's revisionist history that it "copyrighted" its user interface; it hasn't. Rather than inform the jury that the works are "computer programs," like the model instruction and the Copyright Act anticipates, Cisco seeks to tell the jury that the works at issue in this case are "[t]he user interface of networking equipment." That is attorney argument in the guise of jury instruction. The purpose of Model Instruction 17.2 is to explain to the jury that computer programs are, under certain circumstances, copyrightable, and not to redefine the statutory scope of the copyrights in whatever manner suits Cisco.

Next, Cisco departs entirely from the model instruction, replacing an explanation to the jury about the statutory requirements for copyright—and the limitations on copyright protection— with confusing non sequiturs about Cisco's claims and the scope of copyright protection in computer programs. This instruction is not the place for Cisco to insert, yet again, the substance

---

[36]  Ninth Circuit Model Jury Instruction 17.2.

of its claims. Nor is it an appropriate place to begin the discussion concerning the scope of protection in computer programs. Doing so will either confuse the jury or predispose it in favor of Cisco because it is not being told the full story about the scope of protection available to Cisco in this case.

Cisco's proposal also blatantly misstates the law. It claims that "[c]opyright protection of a computer program extends to its structure, sequence, organization, user interface, screen displays, and menu structures," without any qualification. Yet Cisco's own support—*Johnson Controls*—shows that such protection is not automatic and depends on the "particular facts of each case." 886 F.2d 1173, 1175 (9th Cir. 1989). Cisco acknowledges this wrinkle in its footnote, but it is nowhere to be found in the language it wants the jury to hear. Such wrinkles are exactly why this instruction is the wrong place to begin instructing the jury about scope of protection.

Cisco then seeks to have the Court pronounce that its "user interface" and "technical documentation" are both "protected by copyright." But plainly not all aspects of Cisco's "user interface" or documentation is protected, nor are all aspects asserted. This is an incorrect and severely prejudicial characterization of the law and the case.

With respect to the final sentence of Cisco's new language for model instruction 17.2, Arista has no objection to informing the jury that Cisco obtained registrations with the Copyright Office, but the Court should specify what Cisco registered: operating system software and manuals, not Cisco's "user interface." Moreover, Arista submits it is more appropriate to explain registration to the jury in conjunction with disputed instruction 31, which is modeled after Ninth Circuit Model Jury Instruction 17.6 dealing with copyright registration certificates.

Finally, Cisco omits the last sentence of the model instruction, which, considering the issues in this case, is an attempt to keep the jury from understanding that copyright protection "does not extend to any idea, procedure, process, system, method of operation, concept, principle, or discovery, regardless of the form in which it is described, explained, illustrated, or embodied." Ninth Circuit Model Jury Instr. 17.2.

1126417.05

1    **STIPULATED: Final Instruction No. 27 re Copyright—Ideas and Expressions**[37]

2        Copyright law allows the author of an original work to stop others from copying the

3    original expression in the author's work.[38]  Only the particular expression of an idea can be

4    copyrighted and protected.

5        Copyright law does not give the author the right to prevent others from copying or using

6    the underlying ideas contained in the work, such as any procedures, processes, systems, methods

7    of operation, concepts, principles or discoveries.

---

[37]  Instruction No. 17.3, *Ninth Circuit Manual of Model Civil Jury Instructions* (2007).

[38]  *Synopsys, Inc. v. ATopTech, Inc.*, No. 13-cv-2965 (N.D. Cal.), ECF No. 688 at 9 (Final Instructions);  *Feist Publ'n, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 349 (1991) ("even a directory that contains absolutely no protectible [sic] written expression, only facts, meets the constitutional minimum for copyright protection if it features an original selection or arrangement").

## **DISPUTED: Cisco's Final Instruction No. 28 re Copyright—Industry Standard Not Relevant**

Copyright law gives the author of a copyrighted work the right to prevent others from copying its original expression, even where that work has become so popular or widely used within an industry that it has become the "industry standard."  Thus, whether Cisco's user interface has become the preferred one for its users, or even an industry standard, has no bearing on your determination on whether it, or any of its subparts, are protectable.[39]

## **Cisco's Position:**

Cisco's proposed instruction accurately reflects the current state of law and mirrors instructions provided in *Synopsys, Inc. v. ATopTech, Inc.*, No. 13-cv-2965 (N.D. Cal.), ECF No. 688 at 8.  In that case involving copyrighted computer programs, the court gave an instruction that "[a]n owner may enforce [its] rights to exclude others in an action for copyright infringement … even after a copyrighted work has become an industry standard."  This is further supported by Cisco's cited authority.  Because Arista has indicated that it plans to raise an argument regarding "industry standard," this instruction is necessary to accurately inform the jury that such an argument has no bearing on copyrightability where a work becomes an "industry standard" or otherwise popular after its publication.  *See also* Motion in Limine Ruling at 3 (excluding evidence on "industry standard" or "*de facto* industry standard"); *Cf.* Order on Daubert Motions at 2-8 (excluding expert testimony purporting to opine on a "*de facto* industry standard" and whether there is "widespread use [of it] throughout the industry").

While this proposal from Cisco is not found in the *Model* instructions, that is because those instructions do not recognize the existence of any supposed "industry standard" defense.  Nonetheless, the defendant in *Synopsys* attempted this defense, and the court rightly instructed the

---

[39]   *Synopsys, Inc. v. ATopTech, Inc.*, No. 13-cv-2965 (N.D. Cal.), ECF No. 688 at 8  (Final Instructions); *Oracle Am., Inc. v. Google Inc.*, 750 F.3d 1339, 1372 (Fed. Cir. 2014) (whether Oracle's programming packages "had become the effective industry standard" or later became "popular … has no bearing on the copyrightability of Oracle's work"); *Practice Mgmt. Info. Corp. v. Am. Med. Ass'n*, 121 F.3d 516, 620 n.8 (9th Cir. 1997) (physician coding system copyrightable even though government agency mandated its use, making it the "industry standard" ); *Kepner-Tregoe, Inc. v. Leadership Software, Inc.*, 12 F.3d 527, 537 (5th Cir. 1994) ("protected expression" of a "wildly successful" computer program "does not lose its protection simply because it is widely disseminated"); *Warner Bros., Inc. v. Am. Broadcasting Cos.*, 720 F.2d 231, 242 (2d Cir. 1983) ("No matter how well known a copyrighted phrase becomes, its author is entitled to guard against its appropriation to promote the sale of commercial products."); *see also Oracle*, 750 F.3d at 1372 n.16 ("Notably, even when a patented method or system becomes an acknowledged industry standard with acquiescence of the patent owner, any permissible use generally requires payment of a reasonable royalty ….").

jury in the same way that Cisco now asks this Court to instruct the jury.

**DISPUTED: Arista's Position on Cisco's Final Instruction No. 28 re Copyright—Industry**

**Standard Not Relevant**

Arista objects to the inclusion of Cisco's "Industry Standard Not Relevant" instruction.  It is confusing, prejudicial, and misrepresents the law.

Cisco's proposed instruction stems from an instruction given in *Synopsis, Inc. v. ATopTech, Inc.*, No. 13-cv-2965 (N.D. Cal.), ECF No. 688 at 8  (Final Instructions).  It does not.  That instruction states instead: "An owner may enforce these rights to exclude others in an action for copyright infringement, and may do so even after a copyrighted work has become an industry standard."  Cisco would have the Court tell the jury that the industry-standard nature of its works "has no bearing on your determination on whether it, or any of its subparts, are protectable."  That statement is plainly wrong.  And, leaving aside that the evidence and issues in *Synopsis* were different, and this instruction itself is not supported by Ninth Circuit precedent, Cisco has removed the qualifier "may" from that instruction.

First, if parts of Cisco's works were, at the time of adoption, copied by Cisco from industry standards or other standards-body publications, they cannot be protected by copyright because they would not be original to Cisco.  Cisco's instruction would mislead a jury into thinking this was not the case.

Additionally, the scènes à faire doctrine precludes protection for elements that are dictated by external factors such as widely accepted programming practices in the computer industry.  *See Oracle Am., Inc. v. Google Inc.*, 750 F.3d 1339, 1363 (Fed. Cir. 2014) ("In the computer context, the scene a faire doctrine denies protection to program elements that are dictated by external factors such as 'the mechanical specifications of the computer on which a particular program is intended to run' or 'widely accepted programming practices within the computer industry.")  (internal quotation marks omitted); *Satava v. Lowry*, 323 F.3d 805, 807 (9th Cir. 2003) (The Copyright Act "denie[s] artists the exclusive right to ideas and standard elements in their works, thereby preventing them from monopolizing what rightfully belongs to the public . . . . [E]xpressions that are standard, stock, or common to a particular subject matter or medium are not protectable under copyright law.").

Cisco's reliance on *Oracle* is misplaced.  *Oracle* recognized that industry standards are relevant to protectability in its discussion of the scènes à faire doctrine, cited above, and it did not consider or preclude any potential use of standards-related evidence to prove facts related to other aspects of the protectability and infringement analysis, such as merger and general lack of originality or creativity, or fair use.  The *Oracle* court only explained that the fact that a work has "become the effective industry standard" does not strip the work of its copyrightability, to the extent it was copyrightable to begin with.   "Google's industry standard argument" in that case— *i.e.* that Oracle's APIs became an industry standard *after* they were created—"ha[d] no bearing on the copyrightability of Oracle's work," *Oracle Am., Inc. v. Google Inc.*, 750 F.3d 1339, 1372 (Fed. Cir. 2014).  But Google never claimed, as Arista does here, that elements of the copyrighted work were copied from industry standards that pre-dated the copyrighted work, or that widespread use of similar or identical commands helped to show the limited range of potential expression available in this area, and the lack of creativity separable from functional requirements in the copyrighted work.  That, of course, would preclude copyright protection, since it would render the work unoriginal or subject to scènes à faire.  Cisco's proposed instruction omits this important distinction.

Further, Cisco's proposed instruction threatens to confuse the jury because the industry standard nature of Cisco's asserted CLI elements is also relevant to fair use, even if those elements became industry standards *after* creation.  This Court already recognized as much in its *Daubert*

-51-                Case No. 5:14-cv-5344-BLF

1126417.05

1    Order.  Order on *Daubert* Motions at 3:27–28 ("[T]he evidence of widespread use of Cisco CLI
2    throughout the industry is relevant to this case, such as on the issues of fair use and estoppel.").
     Cisco's proposed instruction ignores this fact completely.  *See also* Arista's Opp. to Cisco's MIL
     No. 2, ECF 555.

3         If the Court intends to give any instruction like the one Cisco has proposed, Arista requests
4    that the instruction be conformed to these significant qualifiers to Cisco's mis-statement of the
     law.  First, the Court should tell the jury that the industry-standard origins of asserted elements at
5    the time of their creation *does* bear significantly on copyright protection.  Second, the Court
     should tell the jury that the industry-standard nature of asserted elements *after* creation is relevant
6    to Arista's fair use defense, misuse, and abandonment.  Third, the Court should not state, as Cisco
     does, that the industry-standard nature of its asserted elements has "no bearing" on copyright
7    protection, since this is obviously false and does not represent the instruction given in *Synopsis*.

1  **DISPUTED:  Cisco's Final Instruction No. 29 re Copyright—Elements: Ownership and**

2  **Copying[40]**

3  [Cisco has placed its proposed preliminary version of this Instruction into Instruction No.

4  95]

5  Anyone who copies original, protectable expression from a copyrighted work during the

6  term of the copyright without the owner's permission infringes the copyright.

7  Cisco has the burden of proving by a preponderance of the evidence that:

8  1.  Cisco is the owner of a valid copyright; and

9  2.  Arista copied original, protectable expression from the copyrighted work.

10

11  If you find that Cisco proved both of these elements, your verdict should be for Cisco on

12  the issue of infringement.  If, on the other hand, you find that Cisco has failed to prove either of

13  these elements, your verdict should be for Arista.

14

15  **Cisco's Position:**

16  Cisco's proposed instruction follows Instruction No. 17.4 of the *Ninth Circuit Manual of*

17  *Model Civil Jury Instructions* ("*Model*") in both form and substance.

18  Arista's proposed instruction should be rejected.  Arista additionally departs from the

*Model* by revising the second element, changing the word "original" to "protected."  Arista cites

19  no authority for this change, and the *Model*'s use of the term "original" is both accurate and

supported by established case law.  *See Feist*, 499 U.S. at 361 (second element is copying of

20  "elements of the work that are original").  Nonetheless, in response to the parties' conferring,

Cisco proposes adding the word "protectable" to address Arista's concern that the instruction

21  suggests that any copying constitutes infringement.  Although not strictly necessary, this

22  compromise allows the *Model* to be used with that slight clarification, as it accounts for Arista's

positions that scènes à faire, merger, *de minimis* use, and/or the words and short phrases are

23  restrictions on protectability (notwithstanding Cisco's position that scènes à faire and merger are

affirmative defenses).  Thus, it is an accurate statement of law that the copying of original,

24  protectable material requires a finding of infringement, and that Arista may then present its

affirmative defenses to argue that such infringement is excusable.  Arista's removal of the last

25  paragraph, which also appears in the Model, is unwarranted for the same reason.

26

27  _____

28  [40]  Instruction No. 17.4, *Ninth Circuit Manual of Model Civil Jury Instructions* (2007).

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**DISPUTED:  Arista's Preliminary & Final Instruction No. 29 re Copyright—Elements: Ownership and Copying**[41]

On Cisco's copyright infringement claim, Cisco has the burden of proving by a preponderance of the evidence that, for each work:

1. Cisco is the owner of a valid copyright; and

2. Arista copied protected expression from the copyrighted work

**Arista's Position:**

Arista's proposed instructions are based upon Instruction No. 17.4 of the current version of the Ninth Circuit's Model Civil Jury Instructions (last updated 6/2016), with two necessary and important modifications that reflect the claims and affirmative defenses that will be presented at trial.  *First*, because Arista is raising several affirmative defenses to copyright infringement that would negate a finding of copyright infringement, it would prejudice Arista and confuse the jury to state as a general matter in this instruction that: "Anyone who copies original expression from a copyrighted work during the term of the copyright without the owner's permission infringes the copyright."  Even if the jury finds that Arista had copied "original expression from a copyrighted work," Arista does <u>not</u> infringe the copyright if the jury also finds that fair use, copyright misuse, or any of Arista's other defenses including *scenes a faire*, merger, *de minimis* use, and/or the words and short phrases doctrine apply to the allegedly copied expression.  Therefore, it would be legal error and highly prejudicial to Arista to instruct the jury, as Cisco proposes, that "[a]nyone who copies original expression from a copyrighted work during the term of the copyright without the owner's permission infringes the copyright."

*Second*, for the same reasons, it would be wrong and highly prejudicial to Arista and confuse the jury to state in this instruction that: "If you find that Cisco proved both of these elements, your verdict should be for the plaintiff."  The doctrines and defenses listed above, if proven at trial, would require partial or full verdict for Arista, even if Cisco proved those two elements.  It would therefore be legal error to instruct a jury, as Cisco proposes, that a verdict for Cisco is required if Cisco merely proves that it is the owner of a valid copyright, and that Arista copied original expression from the copyrighted work.

Arista's proposed instruction removes these prejudicial and confusing statements, which if left in the instructions would invite the jury to find for Cisco on its copyright infringement claims without properly considering Arista' defenses.

---

[41]  Ninth Circuit Model Jury Instruction 17.4.

**<u>STIPULATED: Final Instruction No. 30 re Copyright—Validity</u>**[42]

Cisco is the owner of valid copyrights in [to be determined by analytic dissection] and related documentation if Cisco proves by a preponderance of the evidence that:

1. Cisco's works are original; and

2. Cisco is the author or creator of the works, or the author or creator assigned or exclusively licensed the work to Cisco.

---

[42] Instruction No. 17.5, *Ninth Circuit Manual of Model Civil Jury Instructions* (2007).

**DISPUTED: Cisco's Final Instruction No. 31 re Copyright—Copyright Registration Certificates[43]**

A copyright owner may obtain a certificate of registration from the Copyright Office.  The evidence in this case includes 26 certificates of copyright registration from the Copyright Office for Cisco's copyrighted works.  If you find that a certificate was made within five years after first publication of that work, you may presume that the work is original and copyrightable, and that Cisco is the owner of that work.  That is, the existence of the certificate shifts the burden to Arista concerning Cisco's ownership of a valid copyright.

**Cisco's Position:**

Cisco's proposed instruction follows Instruction No. 17.6 of the *Ninth Circuit Manual of Model Civil Jury Instructions* ("*Model*") in both form and substance, including the proposed language that the certificate is "evidence of the facts stated in the certificate" and the jury may presume "that plaintiff's work is the original and copyrightable work of the author and that the plaintiff owns the copyright in that work."

Further, the *Model*'s comment states:

A copyright registration certificate can shift the burden of proof concerning plaintiff's ownership of a valid copyright.  *United Fabrics Int'l, Inc. v. C&J Wear, Inc.*, 630 F.3d 1255, 1257 (9th Cir. 2011).  "For instance, if a copyright holder secures a registration certificate within five years after first publication, such certificate will constitute prima facie evidence of both the validity of the copyright and the facts stated in the certificate."  *Cosmetic Ideas, Inc. v. IAC/Interactivecorp*, 606 F.3d 612, 619 (9th Cir. 2010) (citing 17 U.S.C. § 410(c)).

Cisco's proposed instruction thus correctly incorporates the presumption of validity of the certificate and the facts therein, and the shifting of the burden to Arista to rebut that presumption.

Arista's proposed instruction should be rejected.  *First*, the instruction unnecessarily departs from the language of the *Model* without explanation.  *Second*, Arista's proposed instruction misstates the law regarding the burden of proof; as both Cisco's and Arista's authorities make clear that a valid copyright registration is *prima facie* evidence of the validity of the work and the facts in the certificate, and the burden shifts to Arista to present evidence to rebut

---

[43]  Instruction No. 17.6, *Ninth Circuit Manual of Model Civil Jury Instructions* (2007); *United Fabrics Int'l, Inc. v. C&J Wear, Inc.*, 630 F.3d 1255, 1257 (9th Cir. 2011); *Cosmetic Ideas, Inc. v. IAC/Interactivecorp*, 606 F.3d 612, 619 (9th Cir. 2010).

that presumption. *Third*, Arista's instruction would confuse rather than assist the jury by suggesting that a certificate establishing Cisco's ownership of the registered operating systems and related documentation does not also establish Cisco's ownership of the asserted works—Cisco's user interface and related documentation as included in the registration. A "single registration of a computer program accomplishes two interrelated yet distinct registrations: one of the program itself, and one of the screen displays or user interface of that program, to the extent that each contains copyrightable subject matter." *Napoli v. Sears, Roebuck & Co.*, 874 F. Supp. 206, 211 (N.D. Ill. 1995), *citing Mfs. Tech., Inc. v. CAMS*, Inc., 706 F. Supp. 984, 990-991 (D. Conn. 1989); *see also* U.S. Copyright Office, *Registration for Computer Programs, Circular 61*, August, 2012 ("A single registration may be made for a computer program and its screen display. … The registration will extend to any copyrightable screens generated by the program, regardless of whether identifying material for the screens is deposited."); PATRY ON FAIR USE § 5:4 (2012) (work is not determined by registration).

1126417.05

**DISPUTED: Arista's Final Instruction No. 31 re Copyright—Copyright Registration Certificates[44]**

A copyright owner may obtain a certificate of registration from the Copyright Office.

The evidence in this case includes Exhibits ___, certificates of copyright registration from the Copyright Office. You are instructed that these certificates are sufficient to establish that there is a valid copyright in the operating systems and documentation described by the certificates.

However, the validity of the copyright in an entire work does not establish a copyright in each element of the work.[45] Cisco bears the ultimate burden of proving by a preponderance of the evidence that the asserted elements of Cisco's works are original and protected by copyright.[46] You may consider the certificates as well as all of the evidence presented at trial in determining whether the asserted elements of Cisco's works are original.[47]

**Arista's Position:**

Cisco again departs from the model instruction. While the model instruction for cases in which the defendant presents evidence undermining validity or ownership of copyright states that the jury "may, **but need not** conclude that . . . the plaintiff's work is the original and copyrightable work of the author," (emphasis added), Cisco deletes the qualification, and asks that the Court instruct the jury that it may presume the work is original and that the burden shifts to

---

[44] Ninth Circuit Model Jury Instruction 17.6.

[45] *Feist Publications, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 348 (1991) ("The mere fact that a work is copyrighted does not mean that every element of the work may be protected.").

[46] *Adobe Sys. Inc. v. Christenson*, 809 F.3d 1071, 1076 (9th Cir. 2015); *N. Coast Indus. v. Jason Maxwell, Inc.*, 972 F.2d 1031, 1033 (9th Cir. 1992) (The "presumption may be rebutted by a showing on the part of the defendant that the plaintiff's work is not original. Originality is the indispensable prerequisite for copyrightability."); *Walker & Zanger, Inc. v. Paragon Indus., Inc.*, 549 F. Supp. 2d 1168, 1183–84 (N.D. Cal. 2007) ("This evidence suffices to show that plaintiff's tiles are 'not original but copied from another's work'; therefore, the court finds that defendant has rebutted the statutory presumption, and the burden of proving validity shifts back to plaintiff.").

[47] *Adobe Sys. Inc. v. Christenson*, 809 F.3d 1071, 1076 (9th Cir. 2015); *Lamps Plus, Inc. v. Seattle Lighting Fixture Co.*, 345 F.3d 1140, 1144 (9th Cir. 2003); *N. Coast Indus. v. Jason Maxwell, Inc.*, 972 F.2d 1031, 1033 (9th Cir. 1992) (The "presumption may be rebutted by a showing on the part of the defendant that the plaintiff's work is not original. Originality is the indispensable prerequisite for copyrightability."); *Walker & Zanger, Inc. v. Paragon Indus., Inc.*, 549 F. Supp. 2d 1168, 1183 (N.D. Cal. 2007); *Universal Furniture Int'l, Inc. v. Collezione Europa USA, Inc.*, 618 F.3d 417, 430 (4th Cir. 2010), *as amended* (Aug. 24, 2010); 5 Patry on Copyright § 17:109.

1    Arista concerning ownership.  Cisco's proposal does not include any explanation for the jury of
2    what it means for a jury to "presume" facts, or what it means for the burden to "shift" to Arista
     concerning a particular issue.

3        Arista's proposal is simpler and is tailored to this case.  Arista proposes an instruction that
4    states that each of the twenty-six copyright registrations are "sufficient to establish that there is a
     valid copyright in the operating systems and documentation described by the certificates" *so long*
5    *as* the instructions acknowledge that the validity of the copyrights in operating systems and
6    documentation does not extend to each and every element of the work.  As *Feist* clearly states,
     "[t]he mere fact that a work is copyrighted does not mean that every element of the work may be
7    protected."  *Feist Publications, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 348 (1991).  The jury
8    must understand that Cisco bears the ultimate burden of proving that the *asserted elements* of the
     copyright-registered works are original—that is, independently created by Cisco employees and
9    creative.  While the jury may consider the certificates as evidence, the certificates are not
     dispositive and may not even be relevant.  Indeed, the cetificates themselves disclose that the
10   works include public-domain and third-party computer code, but do not specify which portions of
     the works that disclosure applies to.

11       To the extent that Cisco believes that it is entitled to a presumption of *originality* for each
12   and every element within its works, this Court is already familiar with the problems related to that
     argument.  First, it is undisputed that at least 198 CLI commands were not registered within the
13   five-year statutory window.  *See* Order Denying MSJs, ECF 482 at 11:12–14:2.  And, in fact,
     while Arista chose its motion for partial summary judgment based on undisputed evidence, there
14   are also sufficient disputes of fact about the originality of all the asserted CLI elements to justify
     stripping the presumption at trial from *every* asserted element.  Indeed, this Court found that there
15   were genuine issues of fact about the originality of Cisco's CLI commands.  *Id.* at 12:22–23.

16       Those disputes of fact about originality are precisely why the presumption should not
17   apply to any of Cisco's works.  Each of the registered works is a derivative work, and derivative
     works are entitled only to a "slight" presumption that is "fairly easy to rebut."  3 Patry on
18   Copyright § 9:13; 5 Patry on Copyright § 17:109; *Universal Furniture Int'l, Inc. v. Collezione*
     *Europa USA, Inc.*, 618 F.3d 417, 430 (4th Cir. 2010), *as amended* (Aug. 24, 2010); *see also*
19   *Cooling Sys. & Flexibles,Inc. v. Stuart Radiator, Inc.*, 777 F.2d 485, 490 (9th Cir. 1985),
     *overruled on other grounds as stated in Jackson v. Axton*, 25 F.3d 884 (9th Cir. 1994) ("We also
20   reject the argument that registration of the derivative work creates a presumption of validity of the
     copyright of the underlying work.") (citing H.R.Rep. No. 1476, 94th Cong., 2d Sess. 57, *reprinted*
21   *in* 1976 U.S. Code Cong. & Ad. News 5659, 5670); 17 U.S.C. § 103(b) ("The copyright in a
     compilation or derivative work extends only to the material contributed by the author of such
22   work, *as distinguished from the preexisting material employed in the work*.") (emphasis added).
     Even if the regular presumption applied, as opposed to the weakened derivative one, the Ninth
23   Circuit has repeatedly held that little is required to rebut it: "To rebut the presumption, an
24   infringement defendant must simply offer *some evidence or proof to dispute* or deny the plaintiff's
     prima facie case of infringement."  *Entm't Research Grp., Inc. v. Genesis Creative Grp., Inc.*, 122
25   F.3d 1211, 1217 (9th Cir. 1997) (emphasis added); *see also Lamps Plus, Inc. v. Seattle Lighting*
     *Fixture Co.*, 345 F.3d 1140, 1144 (9th Cir. 2003).  Arista presented far more than "some evidence
26   or proof to dispute" Cisco's claims of originality.

27

28

**DISPUTED: Cisco's Final Instruction No. 32 re Copyright—Originality[48]**

An original work may include or incorporate elements taken from prior works, works from the public domain, and/or works owned by others, with the owner's permission.  The original parts of the plaintiff's work are the parts created:

1. Independently by the work's author, that is, the author did not copy it from another work; and

2. By use of at least some minimal creativity.

In copyright law, the "original" part of a work need not be new or novel.  An original part of a work may consist of the selection and arrangement of existing words or symbols.[49]

In addition, the use of a process by which an author exercises its judgment and expertise in the work's creation may render the work original.[50]

Further, a work is "original" if it was independently created by the author rather than copied from another source, even if someone else had previously created the same or similar work.[51]

**Cisco's Position:**

Cisco's proposed instruction follows Instruction No. 17.13 of the *Ninth Circuit Manual of Model Civil Jury Instructions* ("*Model*") and otherwise accurately reflects the applicable legal

---

[48]   Instruction No. 17.13, *Ninth Circuit Manual of Model Civil Jury Instructions* (2007).
[49]   *Feist*, 499 U.S. at 345; *Compaq Computer Corp. v. Ergonome, Inc.*, 137 Supp. 2d 768, 775-76 (S.D. Tex. 2001).
[50]   ECF No. 482 at 12-13; *CDN Inc. v. Kapes*, 197 F.3d 1256, 1260 (9th Cir. 1999) (affirming district court's finding that "'[t]he evidence indicates that the plaintiff uses its considerable expertise and judgment to determine how a multitude of variable factors impact upon available bid and ask price data. And it is this creative process which ultimately gives rise to the Plaintiff's 'best guess' as to what the current 'bid' and 'ask' prices should be.  As such, the Court finds that these prices were created, not discovered.'").
[51]   *Feist*, 499 U.S. at 345 ("[o]riginal … means only that the work was independently created by the author (as opposed to copied from other works)"); *Lucky Break Wishbone Corp. v. Sears Roebuck & Co.*, 373 F. App'x 752, 754 (9th Cir. 2010) ("To qualify for copyright protection, a work must be original to the author.  Original, as the term is used in copyright, means only that the work was independently created by the author (as opposed to copied from other works)…."); *i-Sys., Inc. v. Softwares, Inc.*, No. 02-cv-1951, 2004 WL 742082, at *7 (D. Minn. Mar. 29, 2004).

1   standards for originality.  *First*, the *Model* provides the instruction that  "[i]n copyright law, the
2   '"original"' part of a work need not be new or novel," and thus should be included, and the
    following sentence accurately clarifies that a creative arrangement of words may be original.
3   *Second*, as this Court has already concluded, Cisco's exercise of judgment and expertise in
    selecting, implementing or arranging its multi-word command expressions, modes and prompts,
4   hierarchies, command responses, and help descriptions render Cisco's user interface sufficiently
    creative for copyright protection.  *See* Dkt. No. 482 at 12-13; *see also CDN Inc. v. Kapes*, 197
5   F.3d 1256, 1260 (9th Cir. 1999).  *Third*, the last paragraph correctly and concisely describes the
    concept of independent creation.  *See Feist*, 499 U.S. at 345 ("[o]riginal … means only that the
6   work was independently created by the author (as opposed to copied from other works)").

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

THIRD AMENDED UNDISPUTED AND DISPUTED PROPOSED JURY INSTRUCTIONS
1126417.05

1

## DISPUTED: Arista's Final Instruction No. 32 re Copyright—Originality[52]

2

An original work may include or incorporate elements taken from prior works, works from

3

the public domain, and/or works owned by others, with the owner's permission. The original parts

4

of a work are the parts created:

5

    1.   independently by the author, that is, the author did not copy it from another work; and

6

    2.   by use of at least some minimal creativity.

7

8

**Arista's Position:**

9

Cisco's "originality" instruction is a wholesale departure from Ninth Circuit Model

10

Instruction 17.13, which is the sole basis of Arista's proposed instruction on this topic. Cisco's
departures are confusing and unsupported by the law.

11

12

Cisco adds three new paragraphs to the model instruction. The first paragraph claims that
the "original selection and arrangement of even the simplest of words or symbols can exhibit

13

sufficient creativity to be protectable." There is no citation to authority, nor does it come from a
model instruction. And the statement is confusing. Is Cisco referring to compilations of

14

unprotectable elements, such as in *Feist Publications, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340,
350 (1991)? If so, it has not presented evidence of any compilations, nor has it adequately

15

disclosed a compilation theory (*see* Arista's Position on Cisco's Final Instruction 33).

16

In the second paragraph, Cisco would have this Court instruct the jury that, because Cisco

17

used a "process by which it exercised its judgment and expertise in selecting, implementing or
arranging its" CLI elements, that "Cisco's user interface is sufficiently creative for copyright

18

protection." Cisco has no basis to ask for such a sweeping ruling, and, indeed, it failed to secure
one at summary judgment. ECF 482 at 3–6. This Court recognized that Cisco could not secure

19

summary judgment of copyrightability of the "Cisco CLI" when it had presented no evidence of
the creation of the compilation called "Cisco CLI" (nor does any such evidence exist, since the

20

"Cisco CLI" is a lawyer-created construct superimposed on twenty-six disparate copyright-
registered operating systems published years apart and used on disparate types of hardware). *Id.* at

21

5:5–6:5. Now, rather than pushing its "Cisco CLI," it's pushing a "user interface" that amounts to

22

the same vague, singular, lawyer-created construct this Court already rejected.

23

Cisco also misunderstands this Court's discussion of *CDN Inc. v. Kapes*, 197 F.3d 1256,

24

1260 (9th Cir. 1999). This Court held there was a genuine issue of material fact concerning the
creativity of the "process" that Cisco claims it undertook to create different CLI elements, and so

25

it denied Arista's motion for partial summary judgment on the originality of late-registered CLI
commands. Cisco's proposed instruction apparently assumes that Cisco was granted summary

26

judgment on the same issue; it was not. The sufficiency of Cisco's "process" is a disputed factual
issue for trial. Indeed, one recent deposition shows that Cisco's claims of a "creative process" are

27

                

28

[52]  Ninth Circuit Model Jury Instruction 17.13.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

substantially overstated, and a far cry from the creative process in *CDN*. *See* Lougheed 9/16/16 Depo. Tr. at 453:1–12 ("Q: How were the proposed HELPDESC phrases reviewed at Cisco when they were proposed alongside a command?  A: They weren't . . . .  Q: Were there any guidelines provided to engineers regarding how to author or create a – a HELPDESC string?  A: No.").  The jury must decide the veracity of Cisco's claims that its CLI elements were created through creative application of judgment.

Moreover, to the extent Cisco's process involved adopting industry standard terminology, the decision to copy public-domain words and phrases cannot be creative.  Cisco's proposal, crafted out of whole cloth, does not address that issue, either.

**DISPUTED: Cisco's Final Instruction No. 33 re Copyright—Compilations**[53]

An owner is entitled to copyright protection of a compilation. A compilation is a work formed by the collection and assembling of preexisting materials or of data that are selected, coordinated, or arranged in such a way that the resulting work as a whole constitutes an original work of authorship.

The owner of a compilation may enforce the right to exclude others in an action for copyright infringement.

**Cisco's Position:**

Cisco's proposed instruction follows Instruction No. 17.15 of the *Ninth Circuit Manual of Model Civil Jury Instructions* ("*Model*"). Arista has provided no counterproposal.

To the extent that Arista claims that an instruction on compilation should not be given at all, Arista is incorrect. Cisco has disclosed and identified evidence and argument, to be supplemented a trial, demonstrating the applicability of a compilation instruction. *See*, *e.g.*, Cisco's Trial Brief Re Analytic Dissection and Filtration (ECF 619) at 12-13, 19; Cisco's Response to Arista's Brief re: Analytic Dissection (ECF 653) at 6-9; Almeroth Rep. Exs. 2-6 (identifying location of each protectable element in each user interface); Cisco's Trial Brief re: Copyrighted Work (ECF 633) at 2-3 (describing how Cisco's user interfaces are registered and how multiple versions of a work may be treated as one work for infringement analysis). Further, the standard for protecting compilations is extremely minimal. *Feist*, 499 U.S. at 358-59. ("Originality requires only that the author make the selection or arrangement independently (*i.e.,* without copying that selection or arrangement from another work), and that it display some minimal level of creativity. Presumably, the vast majority of compilations will past this test ...."); *Harper House v. Thomas Nelson*, 889 F.2d 197, 204 (9th Cir. 1989); ("A copyrightable compilation can consist mainly or entirely of uncopyrightable elements."). Finally, to the extent that Arista now argues that a compilation instruction is unavailable as a matter of law, Arista cannot use these jury instructions in a belated attempt to file a backdoor motion for summary judgment. *Name Intelligence, Inc. v. McKinnon*, No. 10-CV-01202, 2013 WL 3930473, at *3 (D. Nev. July 28, 2013) (denying motion that was "in substance an untimely motion for summary judgment").

---

[53] Instruction No. 17.15, *Ninth Circuit Manual of Model Civil Jury Instructions* (2007).

**DISPUTED: Arista's Position on Cisco's Final Instruction No. 33 re Copyright—Compilations[54]**

No such instruction should be given.

**Arista's Position:**

Cisco is not entitled to a compilation instruction because it has not disclosed a compilation theory, and it cannot produce any evidence of a compilation that would justify such an instruction. The Copyright Act defines a compilation as "a work formed by the collection and assembling of preexisting materials or of data that are selected, coordinated, or arranged in such a way that the resulting work as a whole constitutes an original work of authorship." 17 U.S.C. § 101. For example, a compilation might be a book of short stories or, as discussed in *Feist Publications, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991), an original collection of factual information that can stand on its own as a work. Cisco has no such copyright here: it has never disclosed one, and it has no evidence of one.

Cisco's reply brief regarding analytic dissection concedes that its argument concerning the selection and arrangement of CLI commands "has nothing to do with a compilation of preexisting works." ECF 653 at 6:23–7:1 (citing 17 U.S.C. § 409(9)). Indeed, Cisco did not register a compilation, even though it could have. *See* 17 U.S.C. § 409(9). Nor has Cisco ever disclosed any "compilation" that it is asserting—not in its complaint, and not in discovery.

This Court recognized the problems with Cisco's compilation theory when it denied Cisco summary judgment that a compilation called the "Cisco CLI" was copyrightable, holding that Cisco "has not presented evidence of where Cisco CLI comes from or how and when it was compiled. Although Cisco has copyrights covering its IOS . . . Cisco does not have a single copyright registration covering the compilation it calls the Cisco CLI . . . . This may not have been an issue if Cisco had presented evidence about how the Cisco CLI compilation was created but it did not." Order Denying Summary Judgment, ECF 482 at 5:5–14.

Since summary judgment, Cisco has not produced any additional evidence underlying its compilation theory, nor could it, as discovery has now closed. Cisco's newest argument—that there are *four* Cisco CLIs rather than one, fares no better. As the statute requires, a compilation is a collection of preexisting material that results in a *work as a whole constitute[ing] an original work of authorship.*" 17 U.S.C. § 101. That is the statutory provision the Ninth Circuit model states it is implementing in instruction 17.15. Here, there is no evidence that any of the four asserted lists of commands and other CLI elements are *standalone works as a whole* that collect preexisting materials as opposed to cherry-picked, lawyer-created lists. Without any such evidence, and without having ever disclosed a compilation theory or any compilation evidence, Cisco is not entitled to a compilation instruction; including one would prejudice Arista and confuse the jury.

Finally, should the Court determine that a compilation instruction is merited, it should give the model instruction without alteration. Cisco seeks to add the following sentence to the model instruction:

Thus, even if you find that any particular expression in Cisco's user interface is not

---

[54] Ninth Circuit Model Jury Instruction 17.15.

Case No. 5:14-cv-5344-BLF
THIRD AMENDED UNDISPUTED AND DISPUTED PROPOSED JURY INSTRUCTIONS
1126417.05

1   sufficiently original to warrant copyright protection, you may find that the collection, selection, coordination, or arrangement of Cisco's expressions are sufficiently original as a compilation.

2

3   ***First***, if the Court were to give this instruction, it must also instruct the jury as to the scope of a copyright in a compilation. In particular, the Court should explain, as Arista's instruction proposes, that facts and ideas are not protectable, so their combination is only protectable if their "selection and arrangement" is "original enough" that they "constitute[] an original work of authorship"—a phrase that comes directly from the model instruction as well as Ninth Circuit law. *See* Ninth Circuit Model Jury Instruction 17.15 Comment, citing and quoting *Satava v.Lowry*, 323 F.3d 805, 811 (9th Cir.2003) ("[A] combination of unprotectable elements is eligible for copyright protection only if those elements are numerous enough and their selection and arrangement original enough that their combination constitutes an original work of authorship."). The jury should also understand *why* facts and ideas are not protected: because copyright does not reward labor, *e.g.*, the labor involved in assembling a phone book. *Feist Publications, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 349 (1991) ("the essence of copyright . . . . is not to reward the labor of authors, but to promote the Progress of Science and useful Arts.") (quoting U.S. Const., Art. I, § 8, cl. 8) (internal quotation marks and alterations omitted). ***Second***, the jury should understand by way of example that a phone book, though it is a compilation of facts and ideas, is not automatically extended copyright protection, as was held in *Feist,* because selecting all available items (*e.g.*, commands, or persons with phone numbers), and arranging them in alphabetical order is not creative or protectable.

THIRD AMENDED UNDISPUTED AND DISPUTED PROPOSED JURY INSTRUCTIONS

1126417.05

1

2

## **STIPULATED: Final Instruction No. 34 re Copyright—Authorship & Work Made For Hire[55]**

3    The creator of an original work is called the author of that work.  An author originates or

4  "masterminds" the original work, controlling the whole work's creation and causing it to come

5  into being.

6    A copyright owner is entitled to exclude others from copying a work made for hire.  A

7  work made for hire is one that is prepared by an employee and is within the scope of employment.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

[55]  Instruction Nos. 17.7 & 17.10, *Ninth Circuit Manual of Model Civil Jury Instructions* (2007).

1

**DISPUTED: Cisco's Final Instruction No. 35 re Copyright—Derivative Work**[56]

2      A copyright owner is entitled to exclude others from creating derivative works based on

3  the owner's copyrighted work.  The term "derivative work" refers to a work based on one or more

4  pre-existing works, such as a translation, musical arrangement, dramatization, fictionalization,

5  motion picture version, sound recording, art reproduction, abridgment, condensation, or any other

6  form in which a work may be recast, transformed, or adapted.  Accordingly, the owner of a

7  copyrighted work is entitled to exclude others from recasting, transforming, or adapting the

8  copyrighted work without the owner's permission.

9

10 **Cisco's Position:**

11      Cisco's proposed instruction directly tracks the first paragraph of Instruction No. 17.4 of

12 the *Ninth Circuit Manual of Model Civil Jury Instructions* ("*Model*"), other than the removal of
the phrase "musical arrangement, dramatization, fictionalization, motion picture version, sound

13 recording, art reproduction," which is not necessary for this case.  The remaining paragraphs of the
*Model* are not necessary for the jury's determination of whether Arista infringed Cisco's

14 copyrights, and thus are not necessary for the jury to render its verdict.  Further, Arista's copying
includes not only literal copying, but also the incorporation of copies of Cisco's copyrighted

15 works into Arista's own works, thus implicating Cisco's right to prepare derivative works.  *See,*

16 *e.g.*, Dkt. No. 64 (Second Amended Complaint) ¶¶ 6-10 (discussing incorporation of Cisco's
works into Arista's products).

17      *Arista* has not proposed an instruction on derivative works, nor has it explained why the

18 *Model* is insufficient or why the remaining paragraphs in the *Model* are applicable.

19

20

21

22

23

24

25

26

27 ─────────────────

28   [56]  Instruction No. 17.14, *Ninth Circuit Manual of Model Civil Jury Instructions* (2007).

1126417.05

**DISPUTED: Arista's Position on Cisco's Final Instruction No. 35 re Copyright—Derivative Work**

Arista's position is that no such instruction should be given.

**Arista's Position:**

Arista objects to the inclusion of the instruction on derivative works proposed by Cisco, which excerpts an irrelevant portion of Ninth Circuit model jury instruction 17.14. The paragraph Cisco proposes correctly states that, in addition to the right to exclude others from copying a copyrighted work, a copyright owner also has the right to exclude others from creating derivative works, *i.e.*, the "adaptation right."

This is not a case about the adaptation right; it is a case about the reproduction right. This is not the rare, "exotic situation[] in which the adaptation right may take on substantive significance" because the accused infringer had the legal right to reproduce the original work, but not to create derivative works. 2-8 Nimmer on Copyright § 8.09[A][1]. This is the run-of-the-mill case where the right to create derivative works does not differ in any substantive respect from the right to reproduce the original work.

Cisco's proposed (incomplete) instruction is thus misleading, confusing, and superfluous. To determine whether Arista has infringed Cisco's adaptation right, the jury would need to apply *exactly the same* test for infringement as it would for the reproduction right. *See Litchfield v. Spielberg*, 736 F.2d 1352, 1357 (9th Cir. 1984) ("A work will be considered a derivative work *only if it would be considered an infringing work if* the material which it has derived from a prior work had been taken without the consent of a copyright proprietor of such prior work.") (internal quotation marks omitted; original emphasis); *Mirage Editions, Inc. v. Albuquerque A.R.T. Co.*, 856 F.2d 1341, 1343 (9th Cir. 1988) ("[A] work will be considered a derivative work only if it would be considered an infringing work if the material which it has derived from a preexisting work had been taken without the consent of a copyright proprietor of such preexisting work.") (quoting 1 Nimmer on Copyright § 3.01 (1986)); *Allen v. Acad. Games League of Am., Inc.*, 89 F.3d 614, 617 (9th Cir. 1996) (same); *Micro Star v. Formgen Inc.*, 154 F.3d 1107, 1112 (9th Cir. 1998) (same); *see also Kohus v. Mariol*, 328 F.3d 848, 858 (6th Cir. 2003) (same); *Twin Peaks Prods., Inc. v. Publications Int'l, Ltd.*, 996 F.2d 1366, 1373 (2d Cir. 1993) ("The finding that the Book was a derivative work would seem unnecessary to the finding of *prima facie* infringement" because adding a finding of infringement of derivative right was "superfluous" to finding of infringement of right to reproduce) (citing 2 *Nimmer* § 8.09 [A], at 8–114).

Cisco offers no explanation how, on the facts of this case, the jury could find infringement of the adaptation right without finding infringement of the reproduction right. Instructing the jury on the adaptation right thus would risk confusing the jury into concluding that the test for infringement is somehow different for the two rights. Indeed, the leading copyright treatise makes clear that, in cases such as this one, "[t]his right [the adaptation right] may be thought to be completely superfluous because, under the Section 101 definition of a derivative work, it must be 'based upon one or more pre-existing works' . . . . Therefore, if the latter work does not incorporate enough of the pre-existing work to constitute an infringement of either the reproduction right or of the performance right, then it likewise will not infringe the right to make derivative works because no derivative work will have resulted." 2-8 Nimmer on Copyright § 8.09[A][1].

1126417.05

1   Cisco should not be allowed to mislead the jury by suggesting that the infringement test
2   differs with respect to the adaptation right.  Since the test for infringement of the adaptation right
    is superfluous on the facts of this case, the instruction should not be given.  But, should the Court
3   give one, it should add to the instruction to make clear to the jury the following: "Regardless, the
    test for infringement remains the same: Cisco must prove by a preponderance of the evidence that
4   Arista copied Cisco's works, and that Arista's works are [virtually identical or substantially
    similar] to Cisco's works, whether you find they are derivative works or not."

5   Moreover, Cisco has never asserted that Arista infringed the adaptation right, and therefore
    is precluded from raising that theory of infringement for the first time now.  Nowhere in Cisco's
6   operative complaint (ECF 64) or in the recently filed Joint Pretrial Statement (ECF 593) does
    Cisco accuse Arista of creating derivative works without Cisco's permission, nor does the term
7   "derivative works" appear even once in either of those documents.  Cisco is not entitled to any
    instruction on derivative works, and Arista has not proposed a competing instruction, because the
8   subject of creating derivative works without permission is not, and has never been, at issue in this
    litigation and will only confuse the jury and prejudice Arista.

9   Finally, if the Court believes that an instruction on derivative works is proper, Arista
10  objects to Cisco's proposed instruction as highly prejudicial, misleading, and incomplete.  *First*,
    Cisco cherry-picks from the Ninth Circuit's Model Instruction No. 17.14 by excluding several
11  important legal rules that, if omitted from the final instructions, would be legal error.  For
    example, Cisco's instruction omits the statement in the model instruction that says "Only what
12  was newly created, such as editorial revisions, annotations, elaborations, or other modifications to
    the pre-existing work is considered to be the derivative work."  17 U.S.C. § 103(b); *see also*
13  *Stewart v. Abend*, 495 U.S. 207, 223 (1990).  Cisco would therefore have the jury believe that the
    full contents in the derivative works that it asserts in this lawsuit—and not just what was newly
14  added—is protected by copyright, which would be legal error.  *Second*, Cisco's proposed
    instructions omit the statement from the model instructions that "The author of the derivative work
15  is entitled to copyright protection only for original contributions made by that author that are more
    than trivial."  *U.S. Auto Parts Network, Inc. v. Parts Geek, LLC*, 692 F.3d 1009, 1016 (9th
16  Cir.2012).  Cisco's omission of that statement from the Ninth Circuit's Model Instructions again
    reveals its intent to claim copyright protection over all aspects—and not just the newly added,
17  non-trivia; original expression—of the derivative works that it asserts in this dispute.

18  Cisco's proposed instructions also omit from the Ninth Circuit's Model Instructions the
    critical statement that:  "If the derivative work incorporates pre-existing work by others and works
19  in the public domain, the derivative author's protection is limited to elements added by the
    derivative author to the pre-existing work of others and the public domain work" and "The author
20  of the derivative work may enforce the right to exclude others from the original elements added by
    the author in an action for copyright infringement."  Those legal limits placed on the copyrights
21  held by authors of derivative works must be part of any jury instruction on derivative works
    because all of Cisco's registered works state that they include "preexisting third party computer
22  code."  Cisco's proposed instruction, which omits all of these limitations on copyright over
    derivative works, would mislead the jury and prejudice Arista on the scope of copyright protection
23  over derivative works.  Arista, however, does not believe that Cisco is entitled to any instruction
    whatsoever on "derivative works" given the nature of its copyright infringement claims.

24

25

26

27

28

1    **DISPUTED: Cisco's Final Instruction No. 36 re Copyright—Copying (Direct Evidence)**[57]

2         Cisco has the burden of proving by a preponderance of the evidence that Arista copied

3    original elements from Cisco's copyrighted works.  There are two ways that Cisco can meet its

4    burden.

5         First, Cisco may establish Arista's copying through direct evidence.[58]  An example of

6    direct evidence would be an admission by Arista that part or all of the work was copied.  Direct

7    evidence may also be the credible testimony of a witness who saw the work being copied.[59]

8

9    **Cisco's Position:**

10         Cisco's proposed instruction directly applies the ABA Model Jury Instructions, which
     reads in full:

11        **1.5.2. Copying—Proof by Direct or Circumstantial Evidence**

12        Plaintiff claims that defendant copied from plaintiff's copyrighted work. Copying
          may be established, as is the case with other facts, by direct or circumstantial
13        evidence. ***An example of direct evidence would be an admission by defendant
          that part or all of the work was copied. Direct evidence may also be the credible
14        testimony of a witness who saw the work being copied.*** An example of
          circumstantial evidence would be that defendant exerted efforts to obtain a copy
15        of plaintiff's work, and defendant's work appeared soon after defendant obtained
          a copy. In considering the evidence, you should take into account all the evidence
16        presented by plaintiff and defendant and give the evidence the weight you think it
          deserves, whether it is direct or circumstantial evidence.

17

18   _____

     [57]  Instruction No. 17.16, *Ninth Circuit Manual of Model Civil Jury Instructions* (2007).
19   [58]  *Brocade Commc'ns Sys. v. A10 Networks, Inc.*, 873 F. Supp. 2d 1192, 1218-19 (N.D. Cal.
20   2012) ("In the absence of direct evidence of copying, such as an admission, 'copying' may be
     shown by proving access to the copyrighted work and substantial similarity between the works ….
21   [I]n this case, Brocade has submitted direct evidence of copying. Thus, the substantial similarity
     test is not applicable."); *Rottlund Co. v. Pinnacle Corp.*, 452 F.3d 726, 732 (8th Cir. 2006) (direct
22   evidence of copying includes "party admissions, witness accounts of the physical act of copying,
     and common errors in the works of plaintiffs and the defendants").
23   [59]  *Three Boys Music Corp. v. Bolton*, 212 F.3d 477, 485 (9th Cir. 2000) ("[I]n the absence of
24   any proof of access, a copyright plaintiff can still make out a case of infringement by showing that
     the songs were 'strikingly similar.'"); *Brocade Commc'ns Sys. v. A10 Networks, Inc.*, 873 F. Supp.
25   2d 1192, 1218-19 (N.D. Cal. 2012) ("In the absence of direct evidence of copying, such as an
     admission, 'copying' may be shown by proving access to the copyrighted work and substantial
26   similarity between the works …. [I]n this case, Brocade has submitted direct evidence of copying.
     Thus, the substantial similarity test is not applicable."); *Rottlund Co. v. Pinnacle Corp.*, 452 F.3d
27   726, 732 (8th Cir. 2006) (direct evidence of copying includes "party admissions, witness accounts
28   of the physical act of copying, and common errors in the works of plaintiffs and the defendants").

1    ABA Model Jury Instruction 1.5.2 (emphasis added).  Where direct evidence of copying exists, copying need not be proved through circumstantial evidence of access plus substantial similarity.

2    *See* 4 NIMMER ON COPYRIGHT § 13.01 n.27 (collecting cases in which direct evidence was available to show copying, *e.g.*, through witness admissions); *Norse v. Henry Holt & Co.*, 991

3    F.2d 563, 566 (9th Cir. 1993) (finding "substantial similarity analysis … inapposite to the copying issue because appellees admit that they in fact copied").

4        While the *Ninth Circuit Manual of Model Civil Jury Instructions* do not include this instruction, that is likely because in "most copyright cases" such evidence is not available.  *Norse*,

5    991 F.2d at 566.  But because such evidence will be presented here, a corresponding instruction is warranted to make this form of proof clear to the jury.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**DISPUTED: Cisco's Final Instruction No. 37 re Copyright—Copying (Indirect Evidence)**[60]

Alternatively, even absent direct evidence, Cisco may show that Arista copied from Cisco's copyrighted works through indirect evidence by proving by a preponderance of the evidence that:

1. Arista had access to Cisco's copyrighted works and;

2. There are substantial similarities between Arista's works and the original elements of Cisco's works.

**Cisco's Position:**

Cisco's proposed instruction tracks the first paragraph of Instruction No. 17.16 of the *Ninth Circuit Manual of Model Civil Jury Instructions* ("*Model*") in form and substance.

Arista's proposed instruction should be rejected. *First*, Arista's proposed instruction improperly states the burden of proof twice. The Court should follow the *Model* instructions as written. *Second*, Arista's proposed instruction improperly departs from the *Model* by inserting a different standard for indirect proof of copying, *i.e.*, that Arista's works need to be proved "virtually identical" rather than "substantially similar" to Cisco's in order for the jury to find copying (and without mentioning the original elements). This instruction thus presupposes that the protection for Cisco's works is "thin," which Cisco vigorously disputes for reasons set forth in Cisco's filtration/protectability filings that are pending before the Court, which establish that the asserted works or portions thereof are protectable in their entirety. *See* Dkt. No. 653 (Cisco's Response Brief on Analytic Dissection) at 10-12 (discussing scope of protection and proper test); *see also* Dkt. Nos. 455 (Cisco's Trial Brief); 456 (Arista's Trial Brief); 505 (Cisco's Reply); 506 (Arista's Reply); 550-1 & 550-2 (Cisco's Submission on Protectable Elements); 585 (Arista's Response on Protectable Elements); 619 (Cisco's Dissection and Filtration Brief). Should the Court find otherwise before or after the close of evidence, *see Harper House v. Thomas Nelson*, 889 F.2d 197, 208-09 (9th Cir. 1989); *Oracle Am., Inc. v. Google Inc.*, 10-cv-3561-WHA, Dkt. 584 at 1 (copyrightability issues are "best left until after the judge has heard the evidence at trial"), *id.* Dkt. 620 at 1 (declining to address instructions on copyrightability until after close of evidence), Cisco respectfully reserves the right to propose an instruction regarding the applicable scope.

---

[60] Instruction No. 17.16, *Ninth Circuit Manual of Model Civil Jury Instructions* (2007); *Brocade Commc'ns Sys. v. A10 Networks, Inc.*, 873 F. Supp. 2d 1192, 1218-19 (N.D. Cal. 2012) ("In the absence of direct evidence of copying, … 'copying' may be shown by proving access to the copyrighted work and substantial similarity between the works.").

1

### DISPUTED: Arista's Final Instruction No. 37 re Copyright—Copying[61]

2

[Arista's Disputed Instruction 37 is addressed to Cisco's Disputed Instructions 36 and 37]

3

4

Cisco has the burden of proving that Arista copied protected elements from Cisco's

5

copyrighted works. Copying may be established by direct evidence.  Cisco may also show copying

6

by circumstantial evidence.[62]

7

To prove copying by circumstantial evidence, Cisco may show that Arista copied from the

8

works by proving by a preponderance of the evidence that Arista had access to Cisco's

9

copyrighted works and that Arista's works are virtually identical[63] to Cisco's copyrighted works.[64]

10

_____

11

[61]   Ninth Circuit Model Jury Instruction 17.16.

12

[62]   ABA Model Jury Instruction 1.5.2 (Copyright, Trademark, and Trade Dress Litigation)

13

("Copying may be established, as is the case with other facts, by direct or circumstantial evidence").

[63] *Mattel, Inc. v. MGA Entm't, Inc.*, 616 F.3d 904, 913–14 (9th Cir. 2010), *as amended on

14

denial of reh'g* (Oct. 21, 2010) ("If there's only a narrow range of expression (for example, there are only so many ways to paint a red bouncy ball on blank canvas), then copyright protection is

15

'thin' and a work must be 'virtually identical' to infringe"; intrinsic tests asks "whether an ordinary reasonable observer would consider the copyrighted and challenged works substantially

16

similar (or virtually identical)" as appropriate); *Ets-Hokin v. Skyy Spirits, Inc.*, 323 F.3d 763, 766 (9th Cir. 2003); *Satava v. Lowry*, 323 F.3d 805, 812 (9th Cir. 2003) ("Satava possesses a thin

17

copyright that protects against only virtually identical copying."); *Apple Computer, Inc. v. Microsoft Corp.*, 35 F.3d 1435, 1439 (9th Cir. 1994) ("When the range of protectable and

18

unauthorized expression is narrow, the appropriate standard for illicit copying is virtual identity.");

19

*Diamond Foods, Inc. v. Hottrix, LLC*, No. 14-CV-03162-BLF, 2016 WL 3880797, at *8 (N.D. Cal. July 18, 2016) ("If, on the other hand, the range of possible expression is narrow, the

20

protection is 'thin' and a work must be 'virtually identical' to infringe.") (internal quotation marks omitted); 4-13 Nimmer on Copyright § 13.03[A][4].

21

[64] *Dream Games of Arizona, Inc. v. PC Onsite*, 561 F.3d 983, 988 (9th Cir. 2009) ("To allow

22

the possibility of such a finding [of infringement], the jury must be allowed to see *the complete work*.") (emphasis added); *Apple Computer, Inc. v. Microsoft Corp.*, 35 F.3d 1435, 1443 (9th Cir.

23

1994) ("Depending on the degree of protection, the court must set the appropriate standard for a

24

subjective comparison of the works to determine whether, *as a whole*, they are sufficiently similar to support a finding of illicit copying."); (emphasis added); *id.* at 1446 ("Under *Harper House* and

25

*Frybarger*, there can be no infringement unless *the works* are virtually identical.") (emphasis added); *Newton v. Diamond*, 388 F.3d 1189, 1195 (9th Cir. 2004) ("This focus on the sample's

26

relation to the plaintiff's work *as a whole* embodies the fundamental question in any infringement

27

action") (emphasis added); *MiTek Holdings, Inc. v. Arce Eng'g Co.*, 89 F.3d 1548, 1560 (11th Cir. 1996) (in a substantial similarity case: "*Nimmer*, in using the term "substantial similarity," is

28

referring to the program as a whole, not constituent elements of the program. The district court

1126417.05

**Arista's Position:**

Cisco has split the Ninth Circuit's copying instruction into two separate instructions—Cisco's disputed instructions 36 and 37 related to "direct" and "indirect" evidence of copying. The Ninth Circuit model for copying does, in fact, omit that copying may be shown by direct evidence. Arista's solution to that omission is to add an appropriate sentence, taken directly from ABA Model Copyright Jury Instruction 1.5.2, stating as such. The jury will already have a separate direct/circumstantial evidence instruction. Nothing more is required.

Further, Cisco's "direct evidence" instruction is confusing. First, not all "witness testimony" constitutes direct evidence of copying. And the "striking similarity" doctrine applies to *indirect* evidence of copying, as Cisco's own authorities explain. It is confusing why Cisco would place the "striking similarity" doctrine with direct evidence. It does not belong there, and it is, by definition, circumstantial evidence of copying. *See Three Boys Music Corp. v. Bolton*, 212 F.3d 477, 485 (9th Cir. 2000) (discussing indirect access plus similarity test: "[I]n the absence of any proof of access, a copyright plaintiff can still make out a case of infringement by showing that the songs were 'strikingly similar.'").

But also, a striking similarity is not conclusive. The most recent statements by the Ninth Circuit correctly state that striking similarities between works "*may give rise to a permissible inference of copying*," which is a far cry from Cisco's statement that a striking similarity is direct evidence of copying. *Loomis v. Cornish*, No. 13-57093, 2016 WL 4578363, at *2 n.1, --- F.3d ---- (9th Cir. Sept. 2, 2016) (emphasis added); *see also Friedman v. Live Nation Merch., Inc.*, No. 14-55302, 2016 WL 4394585, at *7, --- F.3d ---- (9th Cir. Aug. 18, 2016) (quoting *Baxter v. MCA, Inc.*, 812 F.2d 421, 423 (9th Cir. 1987)). For example, while two identical photographs or musical compositions may give rise to a permissible inference of copying, two identical CLI commands named "ip address" that set an ip address, an industry-standard term, may not, by itself, lead a reasonable juror to believe that one was copied from the other.

---

concluded that, in TrussPro, four of the five protected ACES elements were substantially similar. However, its ultimate conclusion was that since these elements lacked significance in the ACES program *as a whole*, the two programs *as a whole* were not substantially similar; therefore, there was no finding of infringement.") (Ital. in original); *Diamond Foods, Inc. v. Hottrix, LLC*, No. 14-CV-03162-BLF, 2016 WL 3880797, at *8 (N.D. Cal. July 18, 2016) ("If, on the other hand, the range of possible expression is narrow, the protection is 'thin' and *a work* must be 'virtually identical' to infringe.") (emphasis added) (internal quotation marks omitted); *Antonick v. Elec. Arts Inc.*, No. C 11-1543 CRB, 2014 WL 245018, at *6 (N.D. Cal. Jan. 22, 2014) (jury instructions in virtual identity case involving videogames "required the jury to compare 'the works to determine whether, *as a whole*, they are sufficiently similar to support a finding of illicit copying . . . . The works must be compared as a whole because the relevant inquiry is 'whether a substantial portion of the protectable material in the plaintiff's work was appropriated—not whether a substantial portion of defendant's work was derived from plaintiff's work' . . . . [C]ourts are to focus on the significance of the protected expression to plaintiff's entire work.") (emphasis added) (second quotation marks quoting *Newton v. Diamond*, 388 F.3d 1189, 1195 (9th Cir. 2004)); *see also id.* at 6–7 (reversing jury verdict of infringement because plaintiff failed to present evidence of plaintiff's work as a whole, disabling jury from making proper comparison for infringement intrinsic test).

1

2

Turning to Cisco's "indirect evidence" copying instruction, Cisco asks the Court to apply the "substantial similarities" standard for copying, even though Cisco's works should be entitled to no more than thin copyright protection. As the parties have addressed at length in analytic

3

dissection, works are compared for either substantial similarity *or* virtual identity, depending on how broad the scope of copyright protection is. The authorities cited by Arista in its proposed copying instruction bear out why the "virtual identity" standard should be applied in this case.

4

*See, e.g.*, *Mattel, Inc. v. MGA Entm't, Inc.*, 616 F.3d 904, 913–14 (9th Cir. 2010), *as amended on*

5

*denial of reh'g* (Oct. 21, 2010) ("If there's only a narrow range of expression (for example, there are only so many ways to paint a red bouncy ball on blank canvas), then copyright protection is

6

'thin' and a work must be 'virtually identical' to infringe"; intrinsic tests asks "whether an ordinary reasonable observer would consider the copyrighted and challenged works substantially

7

similar (or virtually identical)" as appropriate); *Ets-Hokin v. Skyy Spirits, Inc.*, 323 F.3d 763, 766 (9th Cir. 2003); *Satava v. Lowry*, 323 F.3d 805, 812 (9th Cir. 2003) ("Satava possesses a thin

8

copyright that protects against only virtually identical copying."); *Apple Computer, Inc. v.*

9

*Microsoft Corp.*, 35 F.3d 1435, 1439 (9th Cir. 1994) ("When the range of protectable and unauthorized expression is narrow, the appropriate standard for illicit copying is virtual identity.");

10

*Diamond Foods, Inc. v. Hottrix, LLC*, No. 14-CV-03162-BLF, 2016 WL 3880797, at *8 (N.D. Cal. July 18, 2016) ("If, on the other hand, the range of possible expression is narrow, the

11

protection is 'thin' and a work must be 'virtually identical' to infringe.") (internal quotation marks omitted); 4-13 Nimmer on Copyright § 13.03[A][4].

12

13

If the "virtual identity" standard applies here, the jury should compare the works for virtual identity at the copying step as well as at the separate infringement step. It would make little sense

14

to ask the jury to decide copying based on substantial similarity, only to then apply the virtual identity standard when the jury decides whether the copying rises to the level of infringement.

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**STIPULATED: Final Instruction No. 38 re Copyright—Access**[65]

2

To establish indirect evidence of copying, Cisco must prove by a preponderance of the

3

evidence that Arista had access to Cisco's copyrighted works.  You may find that Arista had

4

access to Cisco's works if Arista had a reasonable opportunity to view, read, or copy Cisco's

5

works before Arista's work was created.

6

If you find that Arista did not have access to Cisco's works, you may still find that Arista

7

copied Cisco's works if there are striking similarities between the protectable elements of the

8

works.[66]

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

_____

25

[65]   Instruction No. 17.17, *Ninth Circuit Manual of Model Civil Jury Instructions* (2007); *Sid &*

26

*Marty Krofft Television Prods., Inc. v. McDonald's Corp.*, 562 F.2d 1157, 1172 (9th Cir. 1977).

27

[66]   *Three Boys Music Corp. v. Bolton*, 212 F.3d 477, 483 (9th Cir. 2000) (in absence of any
proof of access, copyright plaintiff can still make out case of infringement by showing that songs

28

were "strikingly similar").

1    **DISPUTED: Cisco's Final Instruction No. 39 re Copyright—Substantial Similarity**

2    Cisco claims that certain elements of its user interface and documentation are substantially

3    similar to elements of Arista's user interface and documentation.

4    Substantial similarity is evaluated by comparing the original elements of Cisco's user

5    interface and documentation to Arista's user interface and documentation to see if Arista's works

6    are substantially similar to original elements of Cisco's copyrighted works.[67]

7    In determining whether Cisco's and Arista's user interface and documentation are

8    substantially similar, both the qualitative and quantitative similarities should be taken into

9    account.[68]  Substantial similarity does not require the works to be identical or even almost

10    identical.[69]  For example, if Arista had a high degree of access to Cisco's copyrighted user

11    interface, less overall similarity is required.[70]

12

13    _____

14    [67]   *Apple Comp., Inc. v. Microsoft Corp.*, 35 F.3d 1435, 1446 (9th Cir. 1994); *Engineering Dynamics, Inc. v. Structural Software, Inc.*, 46 F.3d 408, 410 (5th Cir. 1995).

15    [68]   *Newton v. Diamond*, 388 F.3d 1189, 1195 (9th Cir. 2004) ("Substantiality is measured by

16    considering the qualitative and quantitative significance of the copied portion in relation to the plaintiff's work as a whole.").

17    [69]   *Landsberg v. Scrabble Crossword Game Players, Inc.,* 736 F.2d 485, 488 (9th Cir. 1984)

18    ("[A] new work incorporating that idea need not be a verbatim copy or close paraphrase of an earlier work to infringe that work.  A resemblance in details of setting, incident, or characterization that falls short of close paraphrase may be enough to establish substantial

19    similarity and infringement."); *Kepner-Tregoe, Inc. v. Leadership Software*, 12 F.3d 527, 533 (5th

20    Cir. 1994) (although defendant's modified work was not identical to plaintiff's, the modifications did not dispel the similarity of expression shared).

21    [70]   Instruction No. 17.16, *Ninth Circuit Manual of Model Civil Jury Instructions* (2007)

22    (Supplemental Instruction); *Benay v. Warner Bros. Entm't, Inc.*, 607 F.3d 620, 625 (9th Cir. 2010) ("Under the 'inverse ratio' rule, if a defendant had access to a copyrighted work, the plaintiff may

23    show infringement based on a lesser degree of similarity between the copyrighted work and the allegedly infringing work."); *Swirsky v. Carey*, 376 F.3d 841, 844-45 (9th Cir. 2004) (when high

24    degree of access is shown, lower standard of proof of substantial similarity is required and noting that this burden is carried by plaintiff); *Rice v. Fox Broad. Co.*, 330 F.3d 1170, 1178 (9th Cir.

25    2003) (under "inverse ratio rule," court requires lower standard of proof of substantial similarity when high degree of access is shown and "a prominent factor" in using inverse ratio analysis is

26    "concession of access by the defendant to the plaintiff's copyrighted work"); *Three Boys Music Corp. v. Bolton*, 212 F.3d 477, 488 (9th Cir. 2000)  (rule "requires a lesser showing of substantial

27    similarity if there is a strong showing of access" but noting that "[w]e have never held…the

28    inverse … [that] a weak showing of access requires a stronger showing of substantial similarity.").

1    Even if the amount of similar material is quantitatively small, if it is qualitatively

2  important, you may properly find substantial similarity.[71]  For example, a small portion of the

3  protected elements of Cisco's user interface may nonetheless give it distinctive features or may

4  make it especially creative or desirable.  In such a case, a finding of substantial similarity may be

5  appropriate.[72]

6    In order for you to find infringement it is not necessary to find that a large fraction of the

7  protectable elements of Cisco's work was copied.  Similarly, substantiality is not determined by

8  the percentage of Arista's work that was not copied.[73]

9

10  **Cisco's Position:**

11    Cisco's proposed instruction is a clear, concise and accurate statement of the appropriate

12  legal standard supported by the extensive cited authority, including the Supplemental Instruction

13  to Instruction No. 17.16 of the *Ninth Circuit Manual of Model Civil Jury Instructions*; *see also*

14  *Brown Bag Software v. Symantec Corp.*, 960 F.2d 1465, 1475-77 (9th Cir. 1992) (applying

15  substantial similarity test).

---

16    [71]  *Swirsky v. Carey*, 376 F.3d 841, 852 (9th Cir. 2004) ("even if a copied portion be relatively
    small in proportion to the entire work, if qualitatively important, the finder of fact may properly
17    find substantial similarity"); *Baxter v. MCA, Inc*., 812 F.2d 421, 425 (9th Cir. 1987) ("Even if a
    copied portion be relatively small in proportion to the entire work, if qualitatively important, the
18    finder of fact may properly find substantial similarity."); *Worth v. Selchow & Righter Co*., 827
    F.2d 569, 570 n. 1 (9th Cir. 1987) ("[A] determination of the qualitative importance of the
19    material to the plaintiff's work is more significant than a quantitative calculation of the portion
    allegedly appropriated by the defendant."); *Apple Computer, Inc. v. Microsoft, Corp*., 821 F. Supp.
20    616, 624 (N.D. Cal. 1993), aff'd, 35 F.3d 1435 (9th Cir. 1994) ("quantitatively insignificant
    infringement may be substantial if the material is qualitatively important to plaintiff's work")  .
21    [72]  *Oracle Am., Inc. v. Google Inc.*, 750 F.3d 1339, 1379 (Fed. Cir. 2014) (affirming jury
22    verdict of copyright infringement where defendant copied nine lines out of 2.8 million lines of
    code because the copied material was "qualitatively significant"); *Brocade Commc'ns Sys. v. A10
23    Networks, Inc*., No. 10-cv-3428, 2013 WL 831528, at *8 (N.D. Cal. Jan. 10, 2013) (affirming jury
    verdict of copyright infringement and explaining that "[a]lthough [defendant] points to the ratio
24    between the 145 lines of infringing code and the 10 million lines of code in [plaintiff's] product,
    that ratio fails to account for the evidence suggesting the importance of the implementing code to
25    [plaintiff's] software.").
26    [73]  *Worth v. Selchow & Righter Co.,* 827 F.2d 569, 570 n. 1 (9th Cir. 1987) ("The relevant
    inquiry is whether a substantial portion of the protectible material in the plaintiff's work was
27    appropriated—not whether a substantial portion of defendant's work was derived from plaintiff's
    work.").
28

1    Arista's proposed instruction is confusing, prejudicial, and does not accurately reflect the
proper legal test.  *First*, Arista confusingly uses the term "substantial" in two ways: (1) to refer to
2    the degree of similarity ("substantially similar"); and (2) to refer to the underlying material itself
("substantial protected material").  There is, however, no such thing as "substantial protected
3    matter"—only matter that is "substantially similar." *Second*, Arista's instruction provides a biased
example, improperly directing the jury to "not find infringement" if a "small amount" of
4    "relatively unimportant protected matter" has been copied.  Arista's instruction, however, does not
make clear whether it is referring to a small portion of protectable matter, or to the entirety of
5    protectable matter, which may be a "small amount" but is nonetheless the entirety of the matter at
issue.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1    **DISPUTED: Arista's Final Instruction No. 39 re: Copying—Substantial Similarity**[74]

2    [To be used only if the Court rules that the "substantially similar" infringement test applies

3    to any part of Cisco's copyright claims.]

4    When considering whether the works as a whole are substantially similar, you may find

5    copying if the matter copied from plaintiff's work, as viewed by an ordinary reasonable observer,

6    includes substantial protected matter. Substantiality is determined by considering both the

7    amount, or quantity, and the significance, or quality, of the protected matter copied by Arista.

8    You should not find copying if only a small amount of relatively unimportant protected matter has

9    been copied. However, the significance of the copied protected matter to plaintiff's work may

10    outweigh the fact that not a large amount of material has been copied.

11

12    **Arista's Position:**

13

14    Instruction 39 is the second half of the test for finding factual copying: substantial similarity. The Ninth Circuit does not provide a model, but the ABA does. Arista has adopted the ABA's model with one exception: it has replaced the word "infringing" with "copying," because Cisco must do more than prove copying in order to prove infringement; it must also show that, when compared as a whole, the copying was sufficient to constitute infringement. (*See* Disputed Instruction 40; *See* Ninth Circuit Model Jury Instruction 17.0 (detailing jury steps in determining infringement); ABA Model Jury Instruction 1.5.8 (Copyright, Trademark, and Trade Dress Litigation); Patry on Copyright § 9:59–9:60; 4-13 Nimmer on Copyright § 13.03[A]; *Mattel, Inc. v. MGA Entm't, Inc.*, 616 F.3d 904, 913 (9th Cir. 2010), *as amended on denial of reh'g* (Oct. 21, 2010) (post-verdict decision discussing jury's task following dissection); *Benay v. Warner Bros. Entm't*, 607 F.3d 620, 624 (9th Cir. 2010) (discussing extrinsic and intrinsic tests); *Apple Computer, Inc. v. Microsoft Corp.*, 35 F.3d 1435, 1442 (9th Cir. 1994) (same).

20    If the Court rules that any portion of Cisco's works is entitled to broad copyright protection, it would thus instruct the jury to compare the works for "substantial similarity" as well. The jury will need guidance on the meaning of that term. Arista proposes that the Court adopt ABA model instruction 1.5.8, which provides clear, neutral guidance on the jury's task. Cisco's Instruction 39, by contrast, does not stem from any model instruction. Moreover, Cisco's draft includes an extensive prejudicial discussion that is not supported by the cases Cisco cites and slants the analysis in Cisco's favor, including a one-sided example of "distinctive features" in Cisco's works. The Court should adopt the neutral, straightforward definition of "substantial similarity" provided by the ABA.

25

26    _____

27    [74] This paragraph is taken from ABA Model Jury Instruction 1.5.8 (Copyright, Trademark, and Trade Dress Litigation), and includes verbatim the portions that are relevant to this case. *See also* Patry on Copyright § 9:59–9:60; 4-13 Nimmer on Copyright § 13.03[A].

28

**DISPUTED: Cisco's Position on Arista's Final Instruction No. 41 re Infringement Analysis**

Cisco's position is that no such instruction should be given.

**Cisco's Position:**

Arista's proposed instruction should be rejected. Cisco's proposed Instruction No. 39, *supra*, provides sufficient flexibility to the jury to evaluate both quantitative and qualitative similarities, as required by Cisco's cited authorities including the flexibility to determine the degree of similarity necessarily to establish actionable copying.

Moreover, Arista's proposed instruction is misleading and confusing to the jury. *First*, Arista's instruction includes elements that have already been addressed in the Court's other instructions and thus are unnecessarily duplicative. *See, e.g.* Instruction Nos. 25 (Subject Matter), 27 (Ideas and Expressions), 32 (Originality), 33 (Compilations), 34 (Authorship), 60 (Scènes à Faire), 61 (Merger). It is unduly prejudicial to Cisco for the Court to repeat what is not protected by copyright without also addressing what is protected by copyright (*e.g.*, the selection and arrangement of even factual elements, the expression of functions, the particular expression of ideas).

*Second*, the doctrines of merger and scènes à faire are affirmative defenses and should be addressed separately, as Arista bears the burden of proof on those defenses. *See Oracle Am., Inc. v. Google Inc.*, 750 F.3d 1339, 1358 (Fed. Cir. 2014) ("concepts of merger and scènes à faire are affirmative defenses to claims of infringement"); *Ninth Circuit Manual of Model Civil Jury Instructions*, Instruction No. 1.2 (defendant bears burden of proof for affirmative defenses). The Court should thus adopt Cisco's proposed Instruction Nos. 60 (Scènes à Faire) and 61 (Merger), which properly addresses these affirmative defenses. Similarly, the affirmative defenses of copyright misuse and waiver are equitable in nature and should not be put to the jury (and, indeed, Arista has withdrawn its waiver jury instruction). *Third*, Arista's instruction that the works be compared "as a whole" is incorrect and confusing because it improperly encourages comparison of the entire works and not a limited comparison of the protectable expression asserted by Cisco, the only relevant unit of measurement. *See Harper House, Inc. v. Thomas Nelson, Inc.*, 889 F.2d 197, 206-08 (9th Cir. 1989) (finding instruction to constitute error requiring new trial where jury instructed to compare works "as a whole" rather than to determine whether defendants copied "protectable expression"). Further, Arista's cited cases do not support the proposed instruction. For example, the quoted language from *Dream Games* concerned whether the jury could **consider** the whole work, not whether that was the relevant unit of analysis. To the contrary, "[t]he district court instructed the jury that 'to establish that PC Onsite is liable for infringement, Dream Games must show that the accused screen displays are virtually identical to **protected elements** of corresponding screen displays of the Fast Action Bingo game.'" (emphasis added). 561 F.3d 983, 989 (9th Cir. 2009). Arista's remaining citations similarly do not support its proposed instruction.

*Fourth*, Arista's instruction is prejudicial and unbalanced in that it asks the Court to instruct on general categories of what is **not** protectable, but gives no instruction on what **is** protectable.

*Fifth*, as set forth in the filtration/dissection analysis that is the subject of pretrial briefing currently pending before the Court, see Dkt. No. 653 (Cisco's Response Brief on Analytic

Dissection) at 10-12 (discussing scope of protection and proper test); *see also* Dkt. Nos. 455 (Cisco's Trial Brief); 456 (Arista's Trial Brief); 505 (Cisco's Reply); 506 (Arista's Reply); 550-1 & 550-2 (Cisco's Submission on Protectable Elements); 585 (Arista's Response on Protectable Elements), Cisco's asserted works or the relevant portions thereof are original and protectable in their entirety and subject to broad (not "thin") copyright protection because there are multiple ways in which the ideas underlying the asserted works could be expressed. Further, Arista's instruction that the works be compared "as a whole" is incorrect and confusing and incompatible with Arista's other instructions, see Arista's Proposed Instruction No. 40, which improperly encourage comparison of the entire works (including both protectable and unprotectable expression), and not a limited comparison of the protectable expression, the only relevant unit of measurement, to corresponding elements in the accused works. *See Harper House, Inc. v. Thomas Nelson, Inc.*, 889 F.2d 197, 206-08 (9th Cir. 1989) (finding instruction to constitute error requiring new trial where jury instructed to compare works "as a whole" rather then instructing whether defendants copied "protectable expression"). Should the Court hold otherwise before or after the close of evidence, see Harper House v. Thomas Nelson, 889 F.2d 197, 208-09 (9th Cir. 1989); Oracle Am., Inc. v. Google Inc., 10-cv-3561-WHA, Dkt. 584 at 1 (copyrightability issues are "best left until after the judge has heard the evidence at trial"), id. Dkt. 620 at 1 (declining to address instructions on copyrightability until after close of evidence), Cisco respectfully reserves its right to propose an instruction distinguishing protectable from any unprotectable elements.

**DISPUTED: Arista's Final Instruction No. 41 re Infringement Analysis**

If you find that Arista copied elements of Cisco's works, you must next determine whether Arista's copying was sufficient to constitute copyright infringement.[75]  Cisco must prove that Arista copied a protected part of a copyrighted work owned by Cisco, and that Arista's work is virtually identical[76] to one or more of Cisco's copyrighted works.

Copyright protection does not extend to all the elements of a copyrighted work.  Elements to which copyright protection extends are called "protected matter," and other elements are "unprotected matter."  Unprotected matter is not entitled to copyright protection and therefore may be copied by another author.[77]

There are various types of unprotected matter.  They include:

**I.**    A portion of a work that is not original to the author;

**II.**    A portion of the work that is in the public domain;

**III.**    An idea, concept, principle, discovery, fact, actual event, process, or method expressed or

---

[75] Ninth Circuit Model Jury Instruction 17.0 (detailing jury steps in determining infringement); ABA Model Jury Instruction 1.5.8 (Copyright, Trademark, and Trade Dress Litigation); Patry on Copyright § 9:59–9:60; 4-13 Nimmer on Copyright § 13.03[A]; *Mattel, Inc. v. MGA Entm't, Inc.*, 616 F.3d 904, 913 (9th Cir. 2010), *as amended on denial of reh'g* (Oct. 21, 2010) (post-verdict decision discussing jury's task following dissection); *Benay v. Warner Bros. Entm't*, 607 F.3d 620, 624 (9th Cir. 2010) (discussing extrinsic  and intrinsic tests); *Apple Computer, Inc. v. Microsoft Corp.*, 35 F.3d 1435, 1442 (9th Cir. 1994) (same).

[76] *Mattel, Inc. v. MGA Entm't, Inc.*, 616 F.3d 904, 913–14 (9th Cir. 2010), *as amended on denial of reh'g* (Oct. 21, 2010) ("If there's only a narrow range of expression (for example, there are only so many ways to paint a red bouncy ball on blank canvas), then copyright protection is 'thin' and a work must be 'virtually identical' to infringe"; intrinsic tests asks "whether an ordinary reasonable observer would consider the copyrighted and challenged works substantially similar (or virtually identical)" as appropriate); *Ets-Hokin v. Skyy Spirits, Inc.*, 323 F.3d 763, 766 (9th Cir. 2003); *Satava v. Lowry*, 323 F.3d 805, 812 (9th Cir. 2003) ("Satava possesses a thin copyright that protects against only virtually identical copying."); *Apple Computer, Inc. v. Microsoft Corp.*, 35 F.3d 1435, 1439 (9th Cir. 1994) ("When the range of protectable and unauthorized expression is narrow, the appropriate standard for illicit copying is virtual identity."); *Diamond Foods, Inc. v. Hottrix, LLC*, No. 14-CV-03162-BLF, 2016 WL 3880797, at *8 (N.D. Cal. July 18, 2016) ("If, on the other hand, the range of possible expression is narrow, the protection is  'thin' and a work must be 'virtually identical' to infringe.") (internal quotation marks omitted); 4-13 Nimmer on Copyright § 13.03[A][4].

[77]  ABA Model Jury Instructions, Copyright, Trademark, and Trade Dress Litigation, Instruction 1.4.2.  There is no analogous Ninth Circuit Model Jury Instruction.

1    described in a work;

2  **IV.**    A particular means of expression that is unprotected under the doctrine of merger, which I

3    will explain in a moment.

4  **V.**    Content that is unprotected under the doctrine of scènes à faire, which I will explain in a

5    moment; or

6  **VI.**    Parts of a computer program considered to be ideas, common programming techniques, or

7    that are required in order for the program to perform its function efficiently and effectively

8    given the computer hardware and other software with which the program operates.[78]

9  **VII.**    [insert particular unprotected elements based on analytic dissection]

10    If you find that Arista copied any elements of Cisco's works that are protected, you must

11  next compare the works as a whole to determine whether Arista's works and Cisco's works are

12  virtually identical,[79] leaving out of your consideration any elements that you have found are

---

14    [78]  ABA Model Jury Instructions, Copyright, Trademark, and Trade Dress Litigation,
15  Instruction 1.4.3 (citing cases and treatises).  There is no analogous Ninth Circuit Model Jury
  Instruction.

16    [79] *Dream Games of Arizona, Inc. v. PC Onsite*, 561 F.3d 983, 988 (9th Cir. 2009) ("To allow
17  the possibility of such a finding [of infringement], the jury must be allowed to see *the complete
  work*.") (emphasis added); *Apple Computer, Inc. v. Microsoft Corp.*, 35 F.3d 1435, 1443 (9th Cir.
  1994) ("Depending on the degree of protection, the court must set the appropriate standard for a
18  subjective comparison of the works to determine whether, *as a whole*, they are sufficiently similar
  to support a finding of illicit copying.") (emphasis added); *id.* at 1446 ("Under *Harper House* and
19  *Frybarger*, there can be no infringement unless *the works* are virtually identical.") (emphasis
  added); *Newton v. Diamond*, 388 F.3d 1189, 1195 (9th Cir. 2004) ("This focus on the sample's
20  relation to the plaintiff's work *as a whole* embodies the fundamental question in any infringement
  action") (emphasis added); *MiTek Holdings, Inc. v. Arce Eng'g Co.*, 89 F.3d 1548, 1560 (11th Cir.
21  1996) (in a substantial similarity case: "*Nimmer*, in using the term "substantial similarity," is
  referring to the program as a whole, not constituent elements of the program. The district court
22  concluded that, in TrussPro, four of the five protected ACES elements were substantially similar.
  However, its ultimate conclusion was that since these elements lacked significance in the ACES
23  program as a whole, the two programs as a whole were not substantially similar; therefore, there
  was no finding of infringement."); *Diamond Foods, Inc. v. Hottrix, LLC*, No. 14-CV-03162-BLF,
24  2016 WL 3880797, at *8 (N.D. Cal. July 18, 2016) ("If, on the other hand, the range of possible
25  expression is narrow, the protection is  'thin' and *a work* must be 'virtually identical' to infringe.")
  (emphasis added) (internal quotation marks omitted); *Antonick v. Elec. Arts Inc.*, No. C 11-1543
26  CRB, 2014 WL 245018, at *6 (N.D. Cal. Jan. 22, 2014) (jury instructions in virtual identity case
27  involving videogames "required the jury to compare 'the works to determine whether, *as a whole*,
  they are sufficiently similar to support a finding of illicit copying . . . .  The works must be

28    -86-    Case No. 5:14-cv-5344-BLF

1  unprotected, or that I have instructed you are unprotected.[80]

2      If you find that the works as a whole are not virtually identical, then you cannot find that

3  Arista infringed Cisco's copyrights.  If you find that the works as a whole are virtually identical,

4  then you may find that Arista infringed Cisco's copyrights, subject to Arista's affirmative defenses

5  of fair use, copyright misuse, abandonment, and waiver.[81]

6      It is my job to isolate and identify for you the "work as a whole."  You must take my

7  identification as controlling if and when this comes up in your deliberations.

8      For purposes of this case, I have determined that Cisco's "work as a whole" is [to be

9  determined in analytic dissection].  I have also determined that Arista's "work as a whole" is [to

10  be determined in analytic dissection].[82]

---

12  compared as a whole because the relevant inquiry is 'whether a substantial portion of the
   protectable material in the plaintiff's work was appropriated—not whether a substantial portion of

13  defendant's work was derived from plaintiff's work' . . . .  [C]ourts are to focus on the significance

14  of the protected expression to plaintiff's entire work.") (emphasis added) (second quotation marks
   quoting *Newton v. Diamond*, 388 F.3d 1189, 1195 (9th Cir. 2004)); *see also id.* at 6–7 (reversing

15  jury verdict of infringement because plaintiff failed to present evidence of plaintiff's work as a
   whole, disabling jury from making proper comparison for infringement intrinsic test).

16      [80] *Dream Games of Arizona, Inc. v. PC Onsite*, 561 F.3d 983, 989 (9th Cir. 2009)
   ("Consideration of the whole work is proper under *Apple Computer* as long as 'the unprotectable

17  elements [are] identified.'") (quoting *Apple Computer*, 35 F.3d at 1446); *Harper House, Inc. v.
   *Thomas Nelson, Inc.*, 889 F.2d 197, 207–08 (9th Cir. 1989) (ordering new trial where "the jury

18  instructions covering copyright infringement liability did not adequately distinguish between
   protectable and unprotectable material" because "given the negative connotations to 'copying,'

19  there was an obvious risk of an improper verdict for plaintiffs, and a need for further instructions
   to protect legitimate activity and avoid the suffocation of competition."); *Apple Computer, Inc. v.*

20  *Microsoft Corp.*, 35 F.3d 1435, 1446 (9th Cir. 1994) ("[T]he party claiming infringement may
   place no reliance upon any similarity in expression resulting from unprotectable elements . . . .

21  [T]he unprotectable elements have to be identified, or filtered, before the works can be considered

22  as a whole.") (internal quotation marks omitted); *Swirsky v. Carey*, 376 F.3d 841, 845 (9th Cir.
   2004), *as amended on denial of reh'g* (Aug. 24, 2004) ("Because the requirement is one of

23  substantial similarity [or virtual identity where thin copyright protection applies] to protected

24  elements of the copyrighted work, it is essential to distinguish between the protected and
   unprotected material in a plaintiff's work.").

25      [81] *Mattel, Inc. v. MGA Entm't, Inc.*, 616 F.3d 904, 913 (9th Cir. 2010), *as amended on denial of*

26  *reh'g* (Oct. 21, 2010) (post-verdict decision discussing jury's task following dissection); *Benay v.*
   *Warner Bros. Entm't*, 607 F.3d 620, 624 (9th Cir. 2010) (discussing extrinsic and intrinsic tests);

27  *Apple Computer, Inc. v. Microsoft Corp.*, 35 F.3d 1435, 1442 (9th Cir. 1994) (same).

      [82]   *Oracle America, Inc. v. Google, Inc.*, No. 10-cv-03561-WHA, ECF 1017 (April 30, 2012)

28  (Jury Instruction 29) ("It is my job to isolate and identify for you the 'work as a whole.' You must

1

2  **Arista's Position:**

3      The Ninth Circuit leaves to the Court and the parties the task of explaining to the jury the
extrinsic and intrinsic tests for copyright infringement. Ninth Circuit Model Jury Instruction
4  17.18. Apparently, Cisco's response to the Ninth Circuit's request is to leave the jury in the dark
as to the jury's task, and worse, leaving the jury with the wrong impression that copying by itself
5  is enough to constitute infringement. Nowhere in Cisco's proposed instructions does it
acknowledge that the jury is *required* to perform the intrinsic test, which involves comparing the
6  works *as a whole*.

7      If the Court were to adopt only Cisco's instructions, it would conflate two elements of an
infringement case. Copying by itself does not constitute copyright infringement. Other
8  instructions have already covered the question of proving copying by direct or circumstantial
evidence. This instruction must cover the next step: whether the copying is sufficient to constitute
9  infringement. *See* Ninth Circuit Model Jury Instruction 17.0 (detailing jury steps in determining
infringement); ABA Model Jury Instruction 1.5.8 (Copyright, Trademark, and Trade Dress
10  Litigation); Patry on Copyright § 9:59–9:60; 4-13 Nimmer on Copyright § 13.03[A].

11      For example, in *Mattel, Inc. v. MGA Entm't, Inc.*, 616 F.3d 904, 913 (9th Cir. 2010), *as
amended on denial of reh'g* (Oct. 21, 2010), access and copying were not disputed; there was no
12  question the doll designer worked with the copyright owner to develop the sculpt and sketches that
were then adapted. Nevertheless, the court explained that the infringement test requires the
13  filtering out of unprotected elements and a comparison of the works as a whole. Similarly, in
*Apple Computer, Inc. v. Microsoft Corp.*, 35 F.3d 1435, 1442 (9th Cir. 1994), access was
14  undisputed and the parties litigated a license to copy many of the features. Regardless, the court
applied the extrinsic/intrinsic infringement test and dissected the works. The Ninth Circuit
15  explained that the virtual identity and substantial similarity tests are the "standard for *illicit*
copying," which is a counterpart to the question of factual copying. *Id.* at 1439. The copying test
16  asks what was copied. The infringement tests asks how much protected expression was copied.

17      That is exactly how Cisco characterized the infringement test at summary judgment when
it asked for partial summary judgment of factual copying; Cisco claimed that granting its motion
18  would mean that "Arista will remain free at trial to prove that its copying was not actionable."
ECF 396-3 at 3:8–9. At the summary judgment hearing, Cisco predicted that this Court would
19  instruct the jury as follows: "You will be able to tell the jury, okay jury, I have told you that Arista
copied, but just because they copied doesn't mean it's actionable coping. To find actionable
20  copying, you the ladies and gentlemen of the jury will have to decide whether Arista copied
protect[able] elements of our CLI in such a way to satisfy the extrinsic and intrinsic similarity test
21  and whether the look and feel of their CLI is the same as our CLI." ECF 437 (MSJ Hrg. Tr.) at
14:16–23. Cisco now proposes not to include any such instruction.
22

23      As part of the extrinsic/intrinsic test, it is undisputed that, to find that copying is sufficient
to constitute infringement, the jury is required to compare the works as a whole, while leaving out
24  of their analysis the unprotected elements. The Court must determine in analytic dissection
whether that comparison must be made for substantial similarity or virtual identity (Ninth Circuit
25  Model Instruction 17.18 is titled "substantial similarity" as a placeholder, but cites dozens of
"virtual identity" cases as well. The title of the instruction should comport to the standard this
26  Court chooses for the comparison). *See Mattel, Inc. v. MGA Entm't, Inc.*, 616 F.3d 904, 913–14

27  take my identification as controlling if and when this comes up in your deliberations . . . . For
28  purposes of this case, I have determined that the 'work as a whole' means the following:").

1    (9th Cir. 2010), *as amended on denial of reh'g* (Oct. 21, 2010) ("If there's only a narrow range of

2    expression (for example, there are only so many ways to paint a red bouncy ball on blank canvas),
     then copyright protection is 'thin' and a work must be 'virtually identical' to infringe"; intrinsic

3    tests asks "whether an ordinary reasonable observer would consider the copyrighted and
     challenged works substantially similar (or virtually identical)" as appropriate); *Ets-Hokin v. Skyy*

4    *Spirits, Inc.*, 323 F.3d 763, 766 (9th Cir. 2003); *Satava v. Lowry*, 323 F.3d 805, 812 (9th Cir.
     2003) ("Satava possesses a thin copyright that protects against only virtually identical copying.");

5    *Apple Computer, Inc. v. Microsoft Corp.*, 35 F.3d 1435, 1439 (9th Cir. 1994) ("When the range of
     protectable and unauthorized expression is narrow, the appropriate standard for illicit copying is

6    virtual identity."); *Diamond Foods, Inc. v. Hottrix, LLC*, No. 14-CV-03162-BLF, 2016 WL
     3880797, at *8 (N.D. Cal. July 18, 2016) ("If, on the other hand, the range of possible expression

7    is narrow, the protection is 'thin' and a work must be 'virtually identical' to infringe.") (internal
     quotation marks omitted); 4-13 Nimmer on Copyright § 13.03[A][4].  But regardless of the scope

8    of protection (virtual identity or substantial similarity), the comparison is one made of works *as a*
     *whole*. *See Dream Games of Arizona, Inc. v. PC Onsite*, 561 F.3d 983, 988 (9th Cir. 2009) ("To

9    allow the possibility of such a finding [of infringement], the jury must be allowed to see *the*
     *complete work*.") (emphasis added); *Apple Computer, Inc. v. Microsoft Corp.*, 35 F.3d 1435, 1443

10   (9th Cir. 1994) ("Depending on the degree of protection, the court must set the appropriate
     standard for a subjective comparison of the works to determine whether, *as a whole*, they are

11   sufficiently similar to support a finding of illicit copying.") (emphasis added); *id.* at 1446 ("Under
     *Harper House* and *Frybarger*, there can be no infringement unless *the works* are virtually

12   identical.") (emphasis added); *Diamond Foods, Inc. v. Hottrix, LLC*, No. 14-CV-03162-BLF, 2016
     WL 3880797, at *8 (N.D. Cal. July 18, 2016) ("If, on the other hand, the range of possible

13   expression is narrow, the protection is 'thin' and *a work* must be 'virtually identical' to infringe.")
     (emphasis added) (internal quotation marks omitted); additional authorities cited in Arista's
     proposed instruction.

14          Indeed, a verdict of copyright infringement that did not include a comparison of the works

15   as a whole requires reversal of the jury's verdict. *See Antonick v. Elec. Arts Inc.*, No. C 11-1543
     CRB, 2014 WL 245018, at *6–7 (N.D. Cal. Jan. 22, 2014) (reversing jury verdict of infringement

16   because plaintiff failed to present evidence of plaintiff's work as a whole, disabling jury from
     making proper comparison for infringement intrinsic test).

17          Arista's proposed paragraph on protected and unprotected copyrighted matter is based

18   upon the ABA Model Jury Instructions, Copyright, Trademark, and Trade Dress Litigation,
     Instructions 1.4.2 and 1.4.3, and properly informs the jury in a neutral way that copyright

19   protection does not extend to all elements of a copyrighted work.  Cisco does not and cannot
     dispute the fact that, under the copyright law, unprotected elements of a copyrighted work may be

20   copied by others, and Cisco has not articulated to Arista any prejudice that would result from this
     instruction.  Nor could it, as the Court will determine before the jury is charged with these final

21   instructions what elements of Cisco's asserted copyrighted works are protected and unprotected
     matter under the copyright law, and will convey that information to the jury so that it can perform

22   the proper infringement analysis and comparison. *See Apple Computer, Inc. v. Microsoft Corp.*,
     35 F.3d 1435, 1443 (9th Cir. 1994).  If the Court were to adopt only Cisco's instructions, however,

23   the jury would never hear a word about unprotected matter—a clear legal error.  *Harper House,*
     *Inc. v. Thomas Nelson, Inc.*, 889 F.2d 197, 207–08 (9th Cir. 1989) (ordering new trial where "the

24   jury instructions covering copyright infringement liability did not adequately distinguish between
     protectable and unprotectable material" because "given the negative connotations to 'copying,'

25   there was an obvious risk of an improper verdict for plaintiffs, and a need for further instructions
     to protect legitimate activity and avoid the suffocation of competition."); *Apple Computer, Inc. v.*

26   *Microsoft Corp.*, 35 F.3d 1435, 1446 (9th Cir. 1994) ("[T]he party claiming infringement may
     place no reliance upon any similarity in expression resulting from unprotectable elements . . . .

27   [T]he unprotectable elements have to be identified, or filtered, before the works can be considered
     as a whole.") (internal quotation marks omitted); *Swirsky v. Carey*, 376 F.3d 841, 845 (9th Cir.

28   2004), *as amended on denial of reh'g* (Aug. 24, 2004) ("Because the requirement is one of

substantial similarity [or virtual identity where thin copyright protection applies] to *protected* elements of the copyrighted work, it is essential to distinguish between the protected and unprotected material in a plaintiff's work.") (ital. in original).

The final item in the list is intended to serve as a placeholder for the Court's findings and conclusions, and resulting instructions to the jury, on the unprotected matter in Cisco's asserted works following the analytic dissection process, and to instruct the jury that such unprotected matter may not be considered when comparing the works as a whole to determine whether they are virtually identical or not. *See Apple Computer, Inc. v. Microsoft Corp.*, 35 F.3d 1435, 1443 (9th Cir. 1994).

The final paragraphs of Arista's proposed instruction recognize that, to find that copying is sufficient to constitute infringement, the jury is required to compare the works as a whole. Indeed, a verdict of copyright infringement that did not include a comparison of the works as a whole requires reversal of the jury's verdict. *See Antonick v. Elec. Arts Inc.*, No. C 11-1543 CRB, 2014 WL 245018, at *6–7 (N.D. Cal. Jan. 22, 2014) (reversing jury verdict of infringement because plaintiff failed to present evidence of plaintiff's work as a whole, disabling jury from making proper comparison for infringement intrinsic test).

Finally, Arista notes here that, even though, when it suits its needs, Cisco would like to refer to its asserted works as a monolithic singular work, the Court's definition of works as a whole must tell the jury that infringement must be analyzed separately for each of the twenty-six copyright-registered works. As one leading copyright treatise explains, "One danger that arises in cases of multiple works is 'cherry-picking:' the plaintiff will select small portions from a number of works, and attempt to aggregate the amount of copying. This approach was property rejected in *Kroencke v. General Motors Corp.*, 270 F. Supp. 2d 441 (S.D.N.Y. 2003) and in *Damiano v. Sony Music Entertainment, Inc.*, 975 F. Supp. 623 (D.N.J. 1996), although the Second Circuit came dangerously close to falling into the trap in Castle Rock Entm't, Inc. v. Publishing Group, Inc., 150 F.3d 132 (2d Cir. 1998)." 3 Patry on Copyright § 9:66 (2016). Cisco here wants to go one step further: it wants to instruct the jury that it need not analyze the copyrighted works for infringement separately, *and* it seeks to redefine its copyrights under a rogue "user interface" umbrella wholly unsupported by the registrations or the law. This Court should not fall into that trap: "each work alleged to have been infringed *must be separately analyzed.*" *Id.* (emphasis added).

1  **DISPUTED: Cisco's Final Instruction No. 46 re Copyright—Affirmative Defense: Fair Use**[83]

2  [Cisco's Disputed Instruction 46 is addressed to Arista's Disputed Instructions 46, 49, 53, 55, 56]

3

4        One who is not the owner of the copyright may use the copyrighted work in a reasonable

5  way under the circumstances without the consent of the copyright owner if it would advance the

6  public interest.  Such use of a copyrighted work is called a fair use.  The owner of a copyright

7  cannot prevent others from making a fair use of the owner's copyrighted work.

8        Arista has the burden of proving its fair use defense by a preponderance of the evidence.[84]

9        In determining whether Arista's use of the Cisco's copyrighted works was fair, you should

10  consider the following factors:

11        1.   First, the purpose and character of the use, including whether such use is of a

12             commercial nature or is for nonprofit educational purposes.  This factor involves two

13             sub-issues: (a) whether Arista's use is "transformative" or simply supplants Cisco's

14             work, and (b) whether Arista's use is commercial in nature.[85]  A use is

15             "transformative" if  it adds something new, with a further purpose or different

16             character, altering the first with new expression, meaning or message.[86]  But copying

17             a work to use it for an identical or competing purpose as the original, or in a manner

18  _____

19    [83]   Instruction No. 17.21, *Ninth Circuit Manual of Model Civil Jury Instructions* (2007);
20  *Synopsys, Inc. v. ATopTech, Inc.*, No. 13-cv-2965 (N.D. Cal.), ECF No. 688 at 14 (Final
   Instructions).

21    [84]   Instruction No. 17.21, *Ninth Circuit Manual of Model Civil Jury Instructions* (2007);
   *Monge v. Maya Magazines, Inc.*, 688 F.3d 1164, 1170 (9th Cir. 2012) ("This affirmative defense
22  … [is] aimed at whether the defendant's use was fair. As with all affirmative defenses, [] the
   defendant bears the burden of proof.").

23    [85]   *Wall Data Inc. v. Los Angeles Cty. Sheriff's Dep't*, 447 F.3d 769, 778 (9th Cir. 2006) ("We
24  first consider the nature of the work: whether the new work is transformative or simply supplants
   the original work, and whether the work is commercial in nature.").

25    [86]   *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 579 (1994) (infringing work is
   transformative if it "adds something new, with a further purpose or different character, altering the
26  first with new expression, meaning or message."); *Wall Data Inc. v. Los Angeles Cty. Sheriff's
   Dep't*, 447 F.3d 769, 778 (9th Cir. 2006) ("A use is considered transformative only where a
27  defendant changes a plaintiff's copyrighted work or uses the plaintiff's copyrighted work in a
   different context such that the plaintiff's work is transformed into a new creation").

28

1    that tends to supplant or supersede the original, is not transformative.[87]  Further, a use

2    is not transformative where the user makes no alteration to the expressive content or

3    message of the original.[88]  As to the second sub-factor, where a defendant's use was

4    for a commercial purpose, this factor weighs against fair use, although the more

5    transformative the new work, the less significance of commercialism.[89]  Finally, you

6    may consider the propriety of Arista's conduct, including whether its use of the

7    copyrighted work was in bad faith.[90]

8    2.    The second factor is the nature of the copyrighted work.  This factor considers the

9          extent to which the work is informational or creative.[91]  Where the nature of the work

10         is such that purely functional elements exist in the work and it is necessary to copy the

11         expressive elements in order to perform those functions, this factor weighs in favor of

---

[87]  *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 578 (1994) (inquiry is whether the new work merely supersedes or supplants the original); *Oracle Am., Inc. v. Google Inc.*, 750 F.3d 1339, 1374 (Fed. Cir. 2014); *Wall Data Inc. v. Los Angeles Cty. Sheriff's Dep't*, 447 F.3d 769, 778 (9th Cir. 2006) ("The Sheriff's Department created exact copies of RUMBA's software.  It then put those copies to the identical purpose as the original software.  Such a use cannot be considered transformative.  *See Kelly v. Arriba Soft Corp.*, 336 F.3d 811, 819 (9th Cir. 2003) (finding that reproducing music CDs in computer MP3 format is not a transformative use because the resulting use of the copyrighted work was the same as the original use, i.e., entertainment). In cases where "'use is for the same intrinsic purpose as[the copyright holder's] ... such use seriously weakens a claimed fair use.' " *Worldwide Church of God v. Philadelphia Church of God, Inc.*, 227 F.3d 1110, 1117 (9th Cir. 2000) (quoting *Weissmann v. Freeman*, 868 F.2d 1313, 1324 (2d Cir. 1989)).").

[88]  *Oracle Am., Inc. v. Google Inc.*, 750 F.3d 1339, 1374 (Fed. Cir. 2014) ("A work is not transformative where the user 'makes no alteration to the *expressive content or message* of the original work.'") (quoting *Seltzer v. Green Day, Inc.*, 725 F.3d 1170, 1177 (9th Cir. 2013) (emphasis in original).

[89]  *Los Angeles News Serv. v. Reuters Television Int'l, Ltd.*, 149 F.3d 987, 994 (9th Cir. 1998) ("every commercial use of copyrighted material is presumptively an unfair exploitation of the monopoly privilege that belongs to the owner of the copyright."); *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 579 (1994) ("the more transformative the new work, the less will be the significance of other factors, like commercialism, that may weigh against a finding of fair use").

[90]  *Los Angeles News Serv. v. KCAL-TV Channel 9*, 108 F.3d 1119, 1122 (9th Cir. 1997); *Fisher v. Dees*, 794 F.2d 432, 437 (9th Cir. 1986).

[91]  *Oracle Am., Inc. v. Google Inc.*, 750 F.3d 1339, 1375 (Fed. Cir. 2014) ("This factor 'turns on whether the work is informational or creative.'") (quoting *Worldwide Church of God v. Philadelphia Church of God, Inc.*, 227 F.3d 1110, 1118 (9th Cir. 2000)).

fair use. Conversely, copying creative expression that is not necessary to perform the functions weighs against fair use.[92]

3.  The third factor is the amount and substantiality of the portion used in relation to the copyrighted work as a whole.  This factor evaluates both the quantity of the work taken and the quality and importance of the portion taken.[93]  Copying a qualitatively important portion of a copyrighted work weighs against fair use even if the copied portion is quantitatively small.[94]

4.  The fourth factor is the effect on the potential market for or value of the copyrighted work, including the effect on the potential market for or value of derivative works.  You should consider not only the extent of market harm caused by Arista's copying, but also whether unrestricted and widespread conduct of the sort engaged in by Arista would result in a substantially adverse impact on the potential market for the original work.[95]  Where a defendant's use substitutes for the original, this factor weights against fair use.[96]

These factors are not exhaustive, and they are not to be treated in isolation.[97]

---

[92] *Oracle Am., Inc. v. Google Inc.*, 750 F.3d 1339, 1375 (Fed. Cir. 2014) (Thus, where the nature of the work is such that purely functional elements exist in the work and it is necessary to copy the expressive elements in order to perform those functions, consideration of this second factor arguably supports a finding that the use is fair").

[93] *Monge v. Maya Magazines, Inc.*, 688 F.3d 1164, 1178 (9th Cir. 2012) ("The third statutory factor in the fair use analysis is 'the amount and substantiality of the portion used in relation to the copyrighted work as a whole.' We examine both the quantitative and qualitative aspects of the portion of the copyrighted material taken.").

[94] *Worth v. Selchow & Righter Co.*, 827 F.2d 569, 570 n. 1 (9th Cir. 1987) ("[A] determination of the qualitative importance of the material to the plaintiff's work is more significant than a quantitative calculation of the portion allegedly appropriated by the defendant."); *Apple Computer, Inc. v. Microsoft, Corp.*, 821 F. Supp. 616, 624 (N.D. Cal. 1993), *aff'd*, 35 F.3d 1435 (9th Cir. 1994) ("quantitatively insignificant infringement may be substantial if the material is qualitatively important to plaintiff's work").

[95] *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 590 (1994).

[96] *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 590 (1994).

[97] *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 577-78 (1994) ("The task is not to be simplified with bright-line rules, for the statute, like the doctrine it recognizes, calls for case-by-case analysis.  … Nor may the four statutory factors be treated in isolation, one from another.").

THIRD AMENDED UNDISPUTED AND DISPUTED PROPOSED JURY INSTRUCTIONS
1126417.05

1    If you find that Arista proved by a preponderance of the evidence that it made a fair use of

2    Cisco's work, your verdict should be for Arista.

3

4    **Cisco's Position:**

5    Cisco's proposed instruction follows Instruction No. 17.21 from the *Ninth Circuit Manual*

6    *of Model Civil Jury Instructions* ("*Model*") in form and substance. It is neutral, and provides an
accurate summary of the principles of fair use, setting forth the applicable legal standard with

7    elaboration only where necessary, in accordance with the *Model*'s comments. Cisco further notes
that courts will often merely list the four fair use factors in setting forth instructions, *see Synopsys,*

8    *Inc. v. ATopTech, Inc.*, No. 13-cv-2965 (N.D. Cal.), ECF No. 688 at 14 (for computer program);
thus, Cisco's instruction on fair use provides a concise and neutral explanation of the doctrine

9    without confusing the jury.

10    Arista's proposed instructions Nos. 46, 49, 53, 55, 56 should be rejected. It is unduly

11    excessive for the Court to provide lengthy individual instructions to the jury on the single topic of
fair use. Arista's instructions are almost exclusively derived from a single case where fair use was

12    the sole issue before the jury on remand and Arista cites no other authority for such extensive fair
use instructions; in this case, such excessive instructions on a single defense are wholly

13    unnecessary, particularly where Cisco's proposed instruction sets forth all of the applicable
standards. Further, Arista's instructions are not concise or neutral, and include unnecessarily

14    lengthy explanations and deviations into policy.

15    As particular to Arista's proposed instruction No. 46, this proposed instruction should be

16    rejected.

17    *First*, the second and third paragraphs go beyond Instruction 17.21 of the *Model* and
unnecessarily address policy, which has no relevance to the jury's fact-finding duties.

18    *Second*, the second and third paragraphs are neither neutral nor balanced, but instead

19    biased in favor of fair use, and offer no counterbalancing instruction on the limitations of fair use.
The Court should therefore reject Arista's proposal in favor of the preamble of Instruction 17.21 of

20    the *Model*, as reflected in Cisco's proposed fair use Instruction No. 46, *supra*.

21    *Third*, the penultimate paragraph is not contained in Instruction 17.21 of the *Model*, and it
improperly inserts instructions on custom and public policy, and it improperly suggests that the

22    jury include the elements of "custom" or "public policy" in arriving at its decision, which is not
the law. Further, it is unnecessary to provide that paragraph, as the first sentence of Cisco's the

23    proposed instruction (based on the *Model*) already notes that use of a work "in a reasonable way

24    under the circumstances" that may "advance the public interest" may be consistent with fair use;
the first sentence of the last paragraph improperly repeats and expands that introduction.

25    *Fourth*, Arista's statement that "fair use is appropriate where a reasonable copyright owner

26    would have consented to the use, i.e., where the custom or public policy at the time would have
defined the use as reasonable" should not be included because it is a statement that describes a

27

28

result based on public policy, not an instruction on the law.  The fair use factors do not require the consideration of whether a "reasonable copyright owner" would have consented; rather, that is often the outcome when fair use is applied.  Arista's instruction presupposes such application and prejudices Cisco by asking the jury to merely determine if Cisco would have been "reasonable" in consenting to Arista's infringement, rather than asking the jury to apply the fair use factors as written.

**DISPUTED: Arista's Final Instruction No. 46 re Copyright—Affirmative Defense: Fair Use[98]**

Now, I will explain what fair use means under the law.

One who is not the owner of the copyright may use a copyrighted work in a reasonable way under the circumstances without the consent of the copyright owner if it would advance the public interest.[99] Such use of a copyrighted work is called a fair use.[100] The owner of a copyright cannot prevent others from making a fair use of the owner's copyrighted work.[101]

The policy behind the right of fair use is to encourage and allow the development of new ideas that build on earlier ones, thus providing a counterbalance to the copyright policy to protect creative works.[102] Since the doctrine of fair use is an equitable rule of reason, no generally accepted definition is possible, and each case raising the question must be decided on its own facts.[103] And, in this dispute between Cisco and Arista, that question falls to you for decision.

---

[98] *Oracle America, Inc. v. Google, Inc.*, No. 10-cv-03561-WHA, ECF 1981 (May 26, 2016) (Jury Instructions 21, 22); Instruction No. 17.21, *Ninth Circuit Manual of Model Civil Jury Instructions* (2007).

[99] Instruction No. 17.21, *Ninth Circuit Manual of Model Civil Jury Instructions* (2007). *See also Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1163 (9th Cir. 2007) ("The fair use defense permits the use of copyrighted works without the copyright owner's consent under certain situations. The defense encourages and allows the development of new ideas that build on earlier ones, thus providing a necessary counterbalance to the copyright law's goal of protecting creators' work product.").

[100] Instruction No. 17.21, *Ninth Circuit Manual of Model Civil Jury Instructions* (2007).

[101] Instruction No. 17.21, *Ninth Circuit Manual of Model Civil Jury Instructions* (2007).

[102] *Oracle America, Inc. v. Google, Inc.*, No. 10-cv-03561-WHA, ECF 1981 (May 26, 2016) (Jury Instruction 21); *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1163 (9th Cir. 2007) ("The fair use defense permits the use of copyrighted works without the copyright owner's consent under certain situations. The defense encourages and allows the development of new ideas that build on earlier ones, thus providing a necessary counterbalance to the copyright law's goal of protecting creators' work product."); *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 579 (1994); *Sega Enters. Ltd. v. Accolade, Inc.*, 977 F.2d 1510, 1524-26 (9th Cir. 1992); *Sony Computer Entertainment, Inc. v. Connectix Corp.*, 203 F.3d 596, 607 (9th Cir.), cert. denied, 531 U.S. 871 (2000)

[103] *Sony v. Bleem*, 214 F.3d 1022, 1026 (9th Cir. 2000) ("The process of applying these fair use factors to the facts of any particular scenario calls for case-by-case analysis, and the task is not to be simplified with bright-line rules. The four factors are to be considered together in light of the purposes of copyright, not in isolation.") (internal quotations and citations omitted).

1    In determining whether the use made of the work was fair, you should consider the

2 following factors:

3    • The purpose and character of the use;

4    • The nature of the copyrighted work;

5    • The amount and substantiality of the portion used in relation to the copyrighted work as a

6      whole; and

7    • The effect of the use upon the potential market for or value of the copyrighted work;

8    These factors are not exclusive and you may consider any additional circumstances or

9 evidence that, in your judgment, bear upon the ultimate purpose of the Copyright Act.[104]  For

10 example, as you balance these factors, bear in mind that fair use is appropriate where a reasonable

11 copyright owner would have consented to the use, i.e., where the custom or public policy at the

12 time would have defined the use as reasonable.[105]

13    If you find that Arista has proved by a preponderance of the evidence that it made a fair

14 use of Cisco's work, your verdict should be for Arista.[106]

15 **Arista's Position:**

16    The fair use doctrine is necessary to "fulfill copyright's very purpose, [t]o promote the

17 Progress of Science and useful Arts."  *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 575
(1994) (internal citations and quotations omitted).  It is not an "occasionally tolerated departure

18 from the grand conception of the copyright monopoly.  To the contrary, it is a necessary part of the
overall design."  Leval, Toward a Fair Use Standard, 103 Harv. L. Rev. 1105, 1110 (1990); *see*

19 *also* 4 Patry on Copyright § 10:1.50 ("Copyright is *not* a one-sided coin, only concerned with
enforcing rights.  Rather, copyright law seeks to achieve a balance that ultimately serves the

20 public's, not authors' interests.") (italics in original).

21    It comes as no surprise, therefore, that fair use is one of the most critical—and heavily

22 litigated—issues in this case.  To decide this critical issue, the jury needs appropriate guidance.
"[T]he fair use defense involves a careful examination of many factors, often confronting courts

23 with a perplexing task."  *Ringgold v. Black Entm't TV, Inc.*, 126 F.3d 70, 76 (2d Cir. 1997).  A

24

25    [104] *Oracle America, Inc. v. Google, Inc.*, No. 10-cv-03561-WHA, ECF 1981 (May 26, 2016)
(Jury Instruction 38); *Sony v. Bleem,* 214 F.3d 1022, 1026 (9th Cir. 2000) ("The four [fair use]

26 factors are to be considered together in light of the purposes of copyright, not in isolation.").

27    [105] Order on Daubert Motions at 3-4 (quoting *Wall Data Inc. v. Los Angeles Cty. Sheriff's
Dep't*, 447 F.3d 769, 778 (9th Cir. 2006)).

28    [106] Instruction No. 17.21, *Ninth Circuit Manual of Model Civil Jury Instructions* (2007).

"drive by" instruction will not suffice.  The Court should instruct on fair use thoroughly and accurately, as Arista has proposed.

Arista's proposed fair-use instructions are modeled on Judge Alsup's 2016 instructions in *Oracle America, Inc. v. Google, Inc.,* No. 10-cv-03561-WHA (N.D. Cal.) (hereinafter, *Oracle*). As Judge Alsup explained, he drafted these instructions himself, "us[ing] the Federal Circuit's opinion canvassing fair use law as the starting point," and then revising and refining them through an "exhaustive and iterative process of proposals by the judge followed by critiques by counsel." *Oracle*, ECF 1988 at 2.  Judge Alsup also made "adjust[ments] to reflect the way the case was tried," *id.*, just as this Court should tailor its instructions to the arguments and evidence in this case.

This particular proposed instruction—"Fair Use Generally"—was given in substantially similar form in *Oracle.  See Oracle America, Inc. v. Google, Inc.*, ECF 1981 (May 26, 2016) (Jury Instruction 21).  Arista adapted the *Oracle* instruction to incorporate more of the Ninth Circuit model instruction on fair use, in an effort to reach agreement with Cisco on this instruction.

This instruction is necessary to introduce to the jury the concept and purpose of fair use.  It closely tracks the controlling case law.  *See Perfect 10, Inc. v. Amazon.com, Inc*., 508 F.3d 1146, 1163 (9th Cir. 2007) ("The fair use defense permits the use of copyrighted works without the copyright owner's consent under certain situations. The defense encourages and allows the development of new ideas that build on earlier ones, thus providing a necessary counterbalance to the copyright law's goal of protecting creators' work product."); *Sony v. Bleem,* 214 F.3d 1022, 1026 (9th Cir. 2000) ("The process of applying these fair use factors to the facts of any particular scenario calls for case-by-case analysis, and the task is not to be simplified with bright-line rules. The four factors are to be considered together in light of the purposes of copyright, not in isolation.") (internal quotations and citations omitted).

Cisco's proposed instructions provide, in total, *one* insufficient instruction on fair use.  It is overly simplistic to a degree that invites confusion.

For example, Cisco's instruction misstates the law.  It fails to acknowledge that one of the cases it cites, *Wall Data Inc. v. Los Angeles Cty. Sheriff's Dep't*, 447 F.3d 769, 778 (9th Cir. 2006). holds that, in balancing the fair use factors, "we bear in mind that fair use is appropriate where a 'reasonable copyright owner' would have consented to the use, i.e., where the 'custom or public policy' at the time would have defined the use as reasonable."  There can be no dispute that "[j]ury instructions must fairly and adequately cover the issues presented, must adequately state the law, and must not be misleading." *Hunter v. Cnty. of Sacramento*, 652 F.3d 1225, 1232 (9th Cir. 2011).  In a case where the defendant intends to argue that the plaintiff itself defined its allegedly copyrighted work as an "industry standard," it can hardly be disputed that an instruction based on *Wall Data* fairly and appropriately covers the issues presented.  Further, as Judge Alsup held in *Oracle*, where a plaintiff "endeavor[s] to prove bad faith, it open[s] the door for [defendant] to prove good faith," which includes explaining "that it believed it had followed a recognized practice."  *See Oracle*, ECF 1988 at 4.

Cisco's instruction is also slanted and misleading.  For example, Cisco states *twice*, in one instruction, that Arista has the burden of proof on fair use.  Further, Cisco provides a one-sided and prejudicial explanation of each fair use factor.  As to the first fair use factor, Cisco provides one sentence defining transformation, and then two sentences explaining what is ***not***

1   transformative.  *See* Cisco's Proposed Instruction No. 26 ("A use is 'transformative' if it adds

2   something new, with a further purpose or different character, altering the first with new

    expression, meaning or message.   But copying a work to use it for an identical or competing

3   purpose as the original, or in a manner that tends to supplant or supersede the original, is ***not***

    transformative.   Further, a use is ***not*** transformative where the user makes no alteration to the

4   expressive content or message of the original.") (emphasis added).  Cisco completely fails to

    acknowledge, however, what is transformative. Again, with respect to both the third and fourth

5   fair use factor, Cisco explains what this factor considers, and then only provides examples of how

    this factor can weigh against a finding of fair use.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**DISPUTED: Cisco's Position on Arista's Final Instruction No. 49 re Copyright—Affirmative**

**Defense: Fair Use: First Factor**

Cisco's position is that no such instruction should be given.

**Cisco's Position:**

Arista's proposed instruction should be rejected.

*First*, the instruction unnecessarily departs from Instruction 17.21 of the *Ninth Circuit Manual of Model Civil Jury Instructions* ("*Model*") expanding the *Model*'s instruction.

*Second*, as to the second paragraph, there is no dispute here that Arista does not have a "nonprofit educational purpose" for copying Cisco's copyrighted works, and that instruction is therefore unnecessary. Further, the last sentence of this paragraph is unbalanced, as it only states that a "transformative" use "supports fair use," without acknowledging that a non-transformative use does not support fair use. Cisco's proposed instruction, however, is balanced.

*Third*, the third paragraph is unnecessarily lengthy, confusing, unbalanced and prejudicial. Arista's instruction addresses only circumstances where it alleges works **are** transformative, without sufficiently addressing when a use is not. The one mention of when a non-transformative use is a statement, without any authority, that "[a] work is not transformative where the user makes little or no alteration to the expressive content or message of the original work and uses it in the same or similar context." This is an incorrect statement of law because, as explained in Cisco's authorities to instruction No. 46 (subheading 1): (1) even extensive alteration of a work may not be transformative, particularly if the use is intended to compete with or supersede the original work; (2) the sentence is written in the conjunctive, improperly arguing that a finding of no transformation requires **both** "little or no alteration" **and** use "in the same or similar context"; and (3) Arista ignores that that using a work for an identical or competing purpose is not transformative. *See, e.g.*, *Wall Data Inc. v. Los Angeles Cty. Sheriff's Dep't*, 447 F.3d 769, 778 (9th Cir. 2006) ("The Sheriff's Department created exact copies of RUMBA's software. It then put those copies to the identical purpose as the original software. Such a use cannot be considered transformative.") (citing cases); *Worldwide Church of God v. Philadelphia Church of God, Inc.*, 227 F.3d 1110, 1117 (9th Cir. 2000) (where "'use is for the same intrinsic purpose as [the copyright holder's] ... such use seriously weakens a claimed fair use.'") (quoting *Weissmann v. Freeman*, 868 F.2d 1313, 1324 (2d Cir. 1989)); *Kelly v. Arriba Soft Corp.*, 336 F.3d 811, 819 (9th Cir. 2003) ("reproducing music CDs in computer MP3 format does not change the fact that both formats are used for entertainment purposes. Likewise, reproducing news footage into a different format does not change the ultimate purpose of informing the public about current affairs."); *Elvis Presley Enters., Inc. v. Passport Video*, 349 F.3d 622 (9th Cir. 2003). Arista thus misrepresents the inquiry by suggesting that use of Cisco's copyrighted works in creating its own competing architecture is a different, transformative "context"; to the contrary, a competing use cannot be transformative.

*Fourth*, In addition, the statement that the material copied "need not be modified" is incorrect, as Ninth Circuit law requires change in expressive content or message. *Oracle Am., Inc. v. Google Inc.*, 750 F.3d 1339, 1374 (Fed. Cir. 2014) ("A work is not transformative where the user 'makes no alteration to the *expressive content or message* of the original work.'") (quoting *Seltzer v. Green Day, Inc.*, 725 F.3d 1170, 1177 (9th Cir. 2013). To the extent that the Court provides an instruction on transformation, it should use Cisco's proposed Instruction No. 46,

*supra*, which is a neutral, concise, accurate statement of law, with a single sentence explaining what is transformative and another single sentence explaining what is not transformative

> A use is "transformative" if it adds something new, with a further purpose or different character, altering the first with new expression, meaning or message. But copying a work to use it for an identical or competing purpose as the original, or in a manner that tends to supplant or supersede the original, is not transformative.

*Fifth*, the fourth paragraph is unnecessarily convoluted and confusing; all the Court need instruct is that commercial use is a factor that the jury is to consider. After conferring with Arista, Cisco agreed in the spirit of compromise to include balanced statements to its proposed Instruction No. 46, *supra*, which are neutral and concise statements of the law regarding commerciality.

*Sixth*, Arista includes "the proprietary of the accused infringer's conduct" in this factor. This more properly belongs in a separate factor because the entire fair-use inquiry presupposes good faith and fair dealing, and bad faith bars the defense's entire application as an equitable matter. *Fisher v. Dees*, 794 F.2d 432, 436-37 (9th Cir. 1986) ("courts may weigh the propriety of the defendant's conduct in the equitable balance of a fair use determination") (quotations omitted). Thus, the Ninth Circuit has considered the "propriety of [defendant's] conduct" as a separate factor, apart from "the purpose and character of the use." *Id.* at 437. Even if considered in the first factor, however, Arista's proposed language is insufficient as it does not specifically state that bad faith weighs against fair use.

Cisco further notes it is unduly excessive for the Court to provide lengthy instructions to the jury on the single topic of fair use. Arista's instructions are almost exclusively derived from a single case where fair use was the sole issue before the jury on remand and Arista cites no other authority for such extensive fair use instructions. Arista's instructions on fair use are thus unbalanced with other instructions given in this case and are prejudicial to Cisco in that they may improperly lead the jury to treat fair use with greater importance than the other topics addressed in these instructions.

**DISPUTED: Arista's Final Instruction No. 49 re Copyright—Affirmative Defense: Fair Use: First Factor**[107]

The first statutory factor concerns the purpose and character of the accused use.[108]

This factor includes these issues: (1) whether and to what extent the accused use serves a commercial purpose, which weighs against fair use, versus a nonprofit educational purpose, which weighs in favor of fair use,[109] and (2) whether and to what extent the accused work is "transformative," which supports fair use.[110]

A use is transformative if it adds something new, with a further purpose or different character, altering the first use with new expression, meaning, or message rather than merely superseding the objects of the original creation.[111] New works have been found transformative when they use copyrighted material for purposes distinct from the purpose of the original

---

[107]    *Oracle America, Inc. v. Google, Inc.*, No. 10-cv-03561-WHA, ECF 1981 (May 26, 2016) (Jury Instructions 23 - 27).

[108]  17 U.S.C. § 107(1); *Oracle America, Inc. v. Google, Inc.*, 750 F.3d 1339, 1374 (Fed. Cir. 2014) ("The first factor in the fair use inquiry involves "the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes.") (internal quotations and citations omitted).

[109]  *Oracle America, Inc. v. Google, Inc.*, 750 F.3d 1339, 1375 (Fed. Cir. 2014) ("Analysis of the first factor also requires inquiry into the commercial nature of the use. Use of the copyrighted work that is commercial tends to weigh against a finding of fair use.") (internal quotations and citations omitted).

[110]  17 U.S.C. § 107; *Oracle America, Inc. v. Google, Inc.*, 750 F.3d 1339, 1374 (Fed. Cir. 2014); *L.A. News Serv. v. CBS Broad., Inc.*, 305 F.3d 924, 939 (9th Cir. Cal. 2002) ("[T]he most important component of the inquiry into the 'purpose and character of the use' is the question whether the allegedly fair use was 'transformative,' i.e., whether the second use 'adds something new, with a further purpose or different character, altering the first with new expression, meaning, or message.' 'The more transformative the new work, the less will be the significance of other factors, like commercialism, that may weigh against a finding of fair use.'") (internal citations omitted); *Seltzer v. Green Day, Inc.*, 725 F.3d 1170, 1175-76 (9th Cir. Cal. 2013) ("The Supreme Court has stated that the central purpose of [the first fair use] factor is to see whether and to what extent the new work is transformative.") (internal citations and quotations omitted).

[111]  *Oracle America, Inc. v. Google, Inc.*, 750 F.3d 1339, 1374 (Fed. Cir. 2014) ("A use is 'transformative' if it 'adds something new, with a further purpose or different character, altering the first with new expression, meaning or message.' The critical question is 'whether the new work merely supersede[s] the objects of the original creation . . . or instead adds something new.'") (internal citations omitted); *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 579 (1994) (use is transformative when it "adds something new, with a further purpose or different character, altering the first with new expression, meaning or message.") (emphasis added).

1   material.[112] A use is considered transformative only where a defendant changes a plaintiff's

2   copyrighted work or, where the copyrighted elements remain unchanged from the original, a

3   defendant uses them in a different context such that the original work is transformed into a new

4   creation.[113] To qualify as transformative, the material copied need not be modified in the new

5   work, so long as the material and the context in which the material is used qualifies as

6   transformative under the test stated above.[114]

7        In evaluating the first statutory factor, the extent of the commercial nature of the accused

8   work must also be considered.  Commercial use weighs against a finding of fair use, but even a

9   commercial use may be found to be sufficiently transformative that the first factor, on balance,

10  still cuts in favor of fair use.[115] To put it differently, the more transformative an accused work, the

11

12

13  [112] *Elvis Presley Enters. v. Passport Video*, 349 F.3d 622, 629 (9th Cir. 2003)( "Courts have
    described new works as 'transformative' when the works use copy-righted material for purposes

14  distinct from the purpose of the original material.").

15  [113] *Oracle America, Inc. v. Google, Inc*., 750 F.3d 1339, 1374 (Fed. Cir. 2014) ("A use is
    'transformative' if it 'adds something new, with a further purpose or different character, altering

16  the first with new expression, meaning or message.' The critical question is 'whether the new
    work merely supersede[s] the objects of the original creation ... or instead adds something new.'")

17  (internal citations omitted); *Monge v. Maya Magazines, Inc*., 688 F.3d 1164, 1176 (9th Cir. 2012)
    (use transformative when it incorporates elements of prior work "into a broader work"); *Perfect*

18  *10, Inc. v. Amazon.com, Inc*., 508 F.3d 1146, 1165 (9th Cir. 2007) ("The fact that Google
    incorporates the entire Perfect 10 image into the search engine results does not diminish the

19  transformative nature of Google's use. As the district court correctly noted, we determined in
    Kelly that even making an exact copy of a work may be transformative so long as the copy serves

20  a different function than the original work."); *Wall Data Inc. v. L.A. County Sheriff's Dept*., 447
    F.3d 769, 778 (9th Cir. 2006) (use can be transformative where defendant changes plaintiff's work

21  or uses it in a different context); *Kelly v. Arriba Soft Corp*., 336 F.3d 811, 818-19 (9th Cir. 2002)
    (finding use of "exact images" transformative and fair use); *Seltzer v. Green Day, Inc*., 725 F.3d

22  1170, 1176 (9th Cir. 2013) (use is transformative if it "adds value to the original—if the quoted
    matter is used as raw material, transformed in the creation of new information, new aesthetics,

23  new insights and understandings" and that the addition of such value "is the very type of activity
    that the fair use doctrine intends to protect for the enrichment of society.") (quoting P. Leval,

24  Toward a Fair Use Standard, 103 HARV. L. REV. 1105 (1990)).

25  [114] *Oracle America, Inc. v. Google, Inc.*, No. 10-cv-03561-WHA, ECF 1981 (May 26, 2016)

26  (Jury Instruction 25).

27  [115] *Hustler Magazine Inc. v. Moral Majority Inc*., 796 F.2d 1148, 1152 (9th Cir. 1986) ("Even
    assuming that the use had a purely commercial purpose, the presumption of unfairness can be

28  rebutted by the characteristics of the use.").

1  more other factors, such as commercialism, will recede in importance.[116] By contrast, the less

2  transformative the accused work, the more other factors like commercialism will dominate.

3       Finally, also relevant to the first statutory factor is the propriety of the accused infringer's

4  conduct because fair use presupposes good faith and fair dealing.

5

6  **Arista's Position:**

7       Arista's proposed instruction on the first fair-use factor comes from Judge Alsup's

8  instructions in *Oracle*. *See Oracle*, ECF 1981 (Jury Instruction 23). As set forth above, Arista's
   proposed fair-use instructions are modeled on Judge Alsup's 2016 instructions in *Oracle*. Judge

9  Alsup explained that he drafted those instructions himself, "us[ing] the Federal Circuit's opinion
   canvassing fair use law as the starting point," and then revising and refining them through an

10 "exhaustive and iterative process of proposals by the judge followed by critiques by counsel."
   *Oracle*, ECF 1988 at 2.

11

12      Further, it closely tracks the controlling law. For example, every sentence in the second
   paragraph is directly supported by either Federal Circuit or Ninth Circuit authority:

13
        1. **A use is transformative if it adds something new, with a further purpose or**
14         **different character, altering the first use with new expression, meaning, or**
           **message rather than merely superseding the objects of the original creation.** *See*
15         *Oracle America, Inc. v. Google, Inc.*, 750 F.3d 1339, 1374 (Fed. Cir. 2014) ("A use is
           'transformative' if it 'adds something new, with a further purpose or different
16         character, altering the first with new expression, meaning or message.' The critical
           question is 'whether the new work merely supersede[s] the objects of the original
17         creation . . . or instead adds something new.'") (internal citations omitted); *Campbell v.
           *Acuff-Rose Music, Inc.*, 510 U.S. 569, 579 (1994) (use is transformative when it "adds
18         something new, with a further purpose or different character, altering the first with new
           expression, meaning or message.") (emphasis added).
19

20      2. **New works have been found transformative when they use copyrighted material**
           **for purposes distinct from the purpose of the original material.** *See Elvis Presley*
21         *Enters. v. Passport Video*, 349 F.3d 622, 629 (9th Cir. 2003)(" Courts have described
           new works as 'transformative' when the works use copy-righted material for purposes
22         distinct from the purpose of the original material.").

23
        3. **A use is considered transformative only where a defendant changes a plaintiff's**
24         **copyrighted work or, where the copyrighted elements remain unchanged from the**
           **original, a defendant uses them in a different context such that the original work**
25

26  _____

27  [116] *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 579 (1994) ("[T]he more transformative
   the new work, the less will be the significance of other factors, like commercialism, that may

28  weigh against a finding of fair use.").

**is transformed into a new creation.** *See Oracle America, Inc. v. Google, Inc*., 750 F.3d 1339, 1374 (Fed. Cir. 2014) ("A use is 'transformative' if it 'adds something new, with a further purpose or different character, altering the first with new expression, meaning or message.' The critical question is 'whether the new work merely supersede[s] the objects of the original creation ... or instead adds something new.'") (internal citations omitted); *Monge v. Maya Magazines, Inc*., 688 F.3d 1164, 1176 (9th Cir. 2012) (use transformative when it incorporates elements of prior work "into a broader work"); *Perfect 10, Inc. v. Amazon.com, Inc*., 508 F.3d 1146, 1165 (9th Cir. 2007) ("The fact that Google incorporates the entire Perfect 10 image into the search engine results does not diminish the transformative nature of Google's use. As the district court correctly noted, we determined in Kelly that even making an exact copy of a work may be transformative so long as the copy serves a different function than the original work."); *Wall Data Inc. v. L.A. County Sheriff's Dept*., 447 F.3d 769, 778 (9th Cir. 2006) (use can be transformative where defendant changes plaintiff's work or uses it in a different context); *Kelly v. Arriba Soft Corp*., 336 F.3d 811, 818-19 (9th Cir. 2002) (finding use of "exact images" transformative and fair use); *Seltzer v. Green Day, Inc*., 725 F.3d 1170, 1176 (9th Cir. 2013) (use is transformative if it "adds value to the original—if the quoted matter is used as raw material, transformed in the creation of new information, new aesthetics, new insights and understandings" and that the addition of such value "is the very type of activity that the fair use doctrine intends to protect for the enrichment of society.") (quoting P. Leval, Toward a Fair Use Standard, 103 HARV. L. REV. 1105 (1990)).

4. **To qualify as transformative, the material copied need not be modified in the new work, so long as the material and the context in which the material is used qualifies as transformative under the test stated above.** *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146 (9th Cir. 2007) ("The fact that Google incorporates the entire Perfect 10 image into the search engine results does not diminish the transformative nature of Google's use. As the district court correctly noted, [] we determined in *Kelly* that even making an exact copy of a work may be transformative so long as the copy serves a different function than the original work, For example, the First Circuit has held that the republication of photos taken for a modeling portfolio in a newspaper was transformative because the photos served to inform, as well as entertain."); Kelly v. Arriba Soft Corp., 336 F.3d 811, 818 (9th Cir. 2003) ("Although Arriba made exact replications of Kelly's images, the thumbnails were much smaller, lower-resolution images that served an entirely different function than Kelly's original images.").

Cisco misleadingly claims that its instruction on transformation is "neutral" and "accurate." Cisco is wrong. In fact, each of Cisco's three sentences relating to transformation explain what is *not* transformative. *See* Cisco's Proposed Instruction No. 46 ("A use is 'transformative' *only* where it adds something new . . . . But copying a work . . . is *not* transformative. . . . Further, a use is *not* transformative . . . ." Further, Cisco's instruction misstates the law. For example, it incorrectly states that "a use is not transformative where the user makes no alteration to the expressive content or message of the original." *See Oracle*, ECF 1988 at 14 ("It should go without saying (but it must be said anyway) that, of course, the words copied will always be the same (or virtually so) in a copyright case — otherwise there can be no copyright problem in the first place. And, of course, the copied declarations serve the same

function in both works, for by definition, declaring code in the Java programming language serves the specific definitional purposes explained above. If this were enough to defeat fair use, it would be impossible ever to duplicate declaring code as fair use and presumably the Federal Circuit would have disallowed this factor on the first appeal rather than remanding for a jury trial.").

**DISPUTED: Cisco's Position on Arista's Final Instruction No. 53 re Copyright—Affirmative**

**Defense: Fair Use: Second Factor**

Cisco's position is that no such instruction should be given.

**Cisco's Position:**

Arista's proposed instruction should be rejected.

*First*, the instruction departs from Instruction 17.21 of the *Ninth Circuit Manual of Model Civil Jury Instructions* ("*Model*") expanding the *Model*'s instruction, and is unnecessarily lengthy and expository—it is same two instructions previously provided, but under one heading.

*Second*, Arista's instruction improperly refers to a computer program, when this case is not about computer programming, but a user interface.

*Third*, as to the first paragraph, Arista's proposed instruction is prejudicial, as there is no legal basis to instruct that "instruction manuals" or user interfaces are less worthy of copyright protection than other copyrighted material, particularly given that fair use is a case-by-case analysis that must be evaluated on their own and Cisco is entitled to argue that the original, expressive elements of its copyrighted works, including its user interface and documentation, exhibit creativity.  *See Oracle Am., Inc. v. Google Inc.*, 750 F.3d 1339, 1375 (Fed. Cir. 2014) (expressive elements of software enjoy great protection).

*Fourth*, as to the first paragraph, Arista's proposed instruction is largely irrelevant to the extent that it addresses "literary works" and "creative writing and expression," suggesting that traditional fictional literature is worthy of more protection that Cisco's copyrighted works.

*Fifth*, this proposed instruction is unnecessarily convoluted and confusing, repeatedly referring to the "core" or "core values" of copyrighted expression without explanation.  All the Court need instruct is that the second factor addresses "the nature of the copyrighted work," which the jury will then be able to balance with the other factors using its own judgment.

*Sixth*, as to the second paragraph, Arista's proposed instruction includes argumentative recitations of this fair use factor that are not necessary (and that are already covered by the *Model* instruction, which is short, clear and neutral).

*Seventh*, as to the second paragraph, Arista misstates the law by suggesting to the jury that it may consider Arista's industry standard argument for purposes of fair use.  *See, e.g.*, Dkt. No. 533; Cisco's Instruction No. 28 (Industry Standard Not Relevant), *supra*.  The Court has ruled that while evidence of Cisco's user interface being used in the industry may be relevant to fair use, *see* Motion in Limine Ruling at 3, evidence relating to an "industry standard" or "*de facto* industry standard" has been excluded.  Thus, this instruction should not contain any references to "industry standards," or evidence with relevance based on such "standards."

*Eighth*, as to the second paragraph, Arista's argument actually is one regarding

THIRD AMENDED UNDISPUTED AND DISPUTED PROPOSED JURY INSTRUCTIONS

functionality, merger, and scènes à faire, which is addressed *supra*, Instruction No. 27 (Ideas and Expressions), and *infra*, Instruction Nos. 60 (merger), 61 (scènes à faire). It thus is inappropriate and duplicative to restate it here. Cisco further incorporates its positions on those instructions by reference.

*Ninth*, as to the second paragraph, Arista's proposed instruction is not balanced, as it fails to note that works with functional components may nonetheless be highly creative. *Oracle Am., Inc. v. Google Inc.*, 750 F.3d 1339, 1375 (Fed. Cir. 2014).

*Tenth*, bad faith blatant copying, even of functional elements, is inconsistent with fair use under this factor. *See Cable/Home Commc'n Corp. v. Network Prods., Inc.*, 902 F.2d 829, 844 (11th Cir. 1990) (citing cases). Thus, if the Court addresses functionality, it should also instruct the jury that bad faith weighs against fair use, even when functional elements are at issue. Cisco further notes it is unduly excessive for the Court to provide lengthy instructions to the jury on the single topic of fair use. Arista's instructions are almost exclusively derived from a single case where fair use was the sole issue before the jury on remand and Arista cites no other authority for such extensive fair use instructions. Arista's instructions on fair use are thus unbalanced with other instructions given in this case and are prejudicial to Cisco in that they may improperly lead the jury to treat fair use with greater importance than the other topics addressed in these instructions.

1 **DISPUTED: Arista's Final Instruction No. 53 re Copyright—Affirmative Defense: Fair Use:**

2 **Second Factor[117]**

3   The second statutory factor is the nature of the copyrighted work. This factor recognizes

4 that traditional literary works are closer than informational works, such as instruction manuals, to

5 the core of intended copyright protection.  Creative writing and expression lie at the heart of

6 copyright protection, so fair use is generally more difficult to establish for copying of traditional

7 literary works than for copying of informational works.[118] The focus of this factor is on how close

8 the used material is to the core values of copyright protection. When the used material implicates

9 the core values of copyright protection less, the more this factor weighs in favor of fair use, and

10 vice versa.[119]

11   Even though a computer program performs functions and has functional elements, it may

12 be (or may not be) highly creative.[120] When there are many possible ways to express a computer

13 program, the particular way chosen for a copyrighted program  may be (or may not be) highly

14 creative. On the other hand, when elements of a computer program are dictated by functional

15 considerations such as efficiency, compatibility, or industry standards, then less creativity is

16 indicated and the core values of copyright protection are less implicated.[121] When purely

17

---

18   [117] *Oracle America, Inc. v. Google, Inc.*, No. 10-cv-03561-WHA, ECF 1981 (May 26, 2016) (Jury Instructions 28, 30).

19 [118] *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 586 (1994) ("This factor calls for

20 recognition that some works are closer to the core of intended copyright protection than others, with the consequence that fair use is more difficult to establish when the former works are

21 copied.") (internal citations omitted).

22 [119] *Sega Enters., Ltd. v. Accolade, Inc*., 977 F.2d 1510, 1527 (9th Cir. 1992) ("[I]f a work is largely functional, it receives only weak protection.").

23 [120] *Sony Computer Entertainment, Inc. v. Connectix Corp.*, 203 F.3d 596, 603 (9th Cir. 2000)

24 ("Thus, the fair use doctrine preserves public access to the ideas and functional elements embedded in copyrighted computer software programs. This approach is consistent with the

25 ultimate aim [of the Copyright Act], to stimulate artistic creativity for the general public good.") (internal quotations and citations omitted).

26 [121] *Sega Enters. Ltd. v. Accolade, Inc*., 977 F.2d 1510, 1524 (9th Cir. 1992) ("To the extent that a work is functional or factual, it may be copied, as may those expressive elements of the

27 work that must necessarily be used as incident to expression of the underlying ideas, functional concepts, or facts) (internal quotations and citations omitted); *Computer Assocs Int'l, Inc. v. Altai,*

28 *Inc*., 982 F.2d 693, 709-10 (2d Cir. 1992) ("[A] programmer's freedom of design choice is often

1126417.05

1  functional elements are embedded in a copyrighted work and it is necessary to copy associated

2  creative elements in order to utilize those functional elements, then this circumstance also favors

3  fair use.[122] Conversely, copying creative expression that is not necessary to perform the functions

4  weighs against fair use.

5

6  **Arista's Position:**

7      This proposed instruction is modeled on Judge Alsup's in *Oracle.  See Oracle Am. Inc. v.*

8  *Google, Inc.*, 3:10-cv-03561, ECF 1981 (May 26, 2016) (May 26, 2016) (Jury Instruction 28).

   Arista made minor modifications for clarity.  It accurately states the law, explaining that

9  "traditional literary works are closer than informational works, such as instruction manuals, to the

   core of intended copyright protection." *Id.*; *see, e.g., Campbell v. Acuff-Rose Music, Inc*., 510

10  U.S. 569, 586 (1994) ("This factor calls for recognition that some works are closer to the core of

   intended copyright protection than others, with the consequence that fair use is more difficult to

11  establish when the former works are copied.") (internal citations omitted)).

12      Cisco's arguments regarding this instruction are not persuasive.  For example, it claims

13  that there is no "legal basis" to instruction that instruction manuals or user interfaces "are less

14  _____

15  circumscribed by extrinsic considerations such as (1) the mechanical specifications of the

   computer on which a particular program is intended to run; (2) compatibility requirements of other

16  programs with which a program is designed to operate in conjunction; (3) computer

   manufacturers' design standards; (4) demands of the industry being serviced; and (5) widely

17  accepted programming practices within the computer industry."); *Oracle America, Inc. v. Google,*

   *Inc.*, 750 F.3d 1339, 1371-72, 1376-77 (Fed. Cir. 2014) ("Next, while we have concluded that it

18  was error for the trial court to focus unduly on the functional aspects of the packages, and on

   Google's competitive desire to achieve commercial 'interoperability' when deciding whether

19  Oracle's API packages are entitled to copyright protection, we expressly noted that these factors

20  may be relevant to a fair use analysis. While the trial court erred in concluding that these factors

   were sufficient to overcome Oracle's threshold claim of copyrightability, reasonable jurors might

21  find that they are relevant to Google's fair use defense under the second and third factors of the

   inquiry. *See Sega*, 977 F.2d at 1524-25 (discussing the Second Circuit's approach to 'break[ing]

22  down a computer program into its component subroutines and subsubroutines and then

   identif[ying] the idea or core functional element of each' in the context of the second fair use

23  factor: the nature of the copyrighted work). We find this particularly true with respect to those

24  core packages which it seems may be necessary for anyone to copy if they are to write programs in

   the Java language. And, it may be that others of the packages were similarly essential components

25  of any Java language-based program.").

   [122] *Sony Computer Entertainment, Inc. v. Connectix Corp.*, 203 F.3d 596, 603 (9th Cir. 2000)

26  ("Thus, the fair use doctrine preserves public access to the ideas and functional elements

   embedded in copyrighted computer software programs. This approach is consistent with the

27  ultimate aim [of the Copyright Act], to stimulate artistic creativity for the general public good.")

   (internal quotations and citations omitted).

28

1    worthy of copyright protected."

2        Cisco also mistakenly asserts that Arista "misstates the law by suggesting to the jury that it

3    may consider Arista's industry standard argument for purposes of fair use."  Ninth Circuit
authority is clear, however, that fair use "is appropriate where a 'reasonable copyright owner'

4    would have consented to the use, i.e., where the 'custom or public policy' at the time would have
defined the use as reasonable"). Daubert Order at 4, ECF 607-7 (quoting *Wall Data Inc. v. Los*

5    *Angeles Cty. Sheriff's Dep't*, 447 F.3d 769, 778 (9th Cir. 2006).   Further, contrary to Cisco's
assertion, this Court has never ruled that the jury cannot "consider Arista's industry standard

6    argument."  Instead the Court explicitly held that "evidence of widespread use of Cisco CLI
throughout the industry ***is relevant to this case***, such as on the issues of fair use and estoppel." *Id.*

7    at 3 (emphasis added); *see also id.* at 4 ("Cisco did not dispute at the hearing that Dr. Black should
be permitted to opine on the underlying facts and analysis, such as the features and vendors he had

8    reviewed and whether certain usage is common or frequent. Hr'g Tr. 17:9-22. It thus appears that
Cisco's challenge relates to the label of "de facto industry standard," and not to the underlying

9    evidence of industry use of Cisco CLI.").

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**DISPUTED: Cisco's Position on Arista's Final Instruction No. 55 re Copyright—Affirmative Defense: Fair Use: Third Factor**

Cisco's position is that no such instruction should be given.

**Cisco's Position:**

Arista's proposed instruction should be rejected.

*First*, the instruction departs from Instruction 17.21 of the *Ninth Circuit Manual of Model Civil Jury Instructions* ("*Model*") expanding the *Model*'s instruction, and is unnecessarily lengthy and confusing.

*Second*, Arista's proposed instruction is incorrect for the reasons set forth in Cisco's brief on the copyrighted works, ECF 633, which is hereby incorporated by reference. *See id.* at 1-2 (defining the "works" at issue as the user interfaces found in four Cisco registered operating systems, and explaining how a registration of an operating system creates a distinct registration for a user interface). .

Cisco further notes it is unduly excessive for the Court to provide lengthy instructions to the jury on the single topic of fair use. Arista's instructions are almost exclusively derived from a single case where fair use was the sole issue before the jury on remand and Arista cites no other authority for such extensive fair use instructions. Arista's instructions on fair use are thus unbalanced with other instructions given in this case and are prejudicial to Cisco in that they may improperly lead the jury to treat fair use with greater importance than the other topics addressed in these instructions.

**DISPUTED: Arista's Final Instruction No. 55 re Copyright—Affirmative Defense: Fair Use: Third Factor[123]**

The third statutory factor is the amount and substantiality of the portion used in relationship to the copyrighted work as a whole, which concerns how much of the overall copyrighted work was used by the accused infringer.[124] Analysis of this factor is viewed in the context of Cisco's copyrighted works, [To be determined by analytic dissection]. The fact, if true, that a substantial portion of an infringing work was copied verbatim is evidence of the qualitative value of the copied material, both to the originator and to whoever seeks to profit from marketing someone else's copyrighted work. Wholesale copying does not preclude fair use per se but it militates against a finding of fair use. Even a small part may be qualitatively the most important part of a work. If, however, the secondary user only copies as much as is necessary for a transformative use, then this factor will not weigh against him or her. The extent of permissible copying varies with the purpose and character of the use, which relates back to the first factor.

In assessing this third factor, both the quantity of the material used and the quality or importance of the material used should be considered.

**Arista's Position:**

This proposed instruction is modeled on Judge Alsup's in *Oracle*. *See Oracle*, ECF 1981 (May 26, 2016) (Jury Instruction 33). Arista made minor modifications to adapt it to the parties and issues in dispute in this case. It accurately states the law. *See Oracle America, Inc. v. Google, Inc.*, 750 F.3d 1339, 1374 (Fed. Cir. 2014) ("The third factor asks the court to examine 'the amount and substantiality of the portion used in relation to the copyrighted work as a whole.' 17 U.S.C. § 107(3). Analysis of this factor is viewed in the context of the copyrighted work, not the

---

[123]   *Oracle America, Inc. v. Google, Inc.*, No. 10-cv-03561-WHA, ECF 1981 (May 26, 2016) (Jury Instruction 33).

[124] *Data General Corp. v. Grumman Systems Support Corp.*, 36 F.3d 1147, 1162 (1st Cir. 1994) ("a key purpose of the Section 408(b) deposit requirement is to prevent confusion about which work the author is attempting to register" and protect under the registration); *Harper House, Inc. v. Thomas Nelson, Inc.*, 5 F.3d 536, 1993 WL 346546 at 25 *2 (9th Cir. 1993) (unpublished) (comparisons of individual portions (pages) of parties' works rather than the entire works is "inappropriate and misleadingly prejudicial"; works must be compared as a whole") (emphasis added). *NXIVM Corp. v. The Ross Institute*, 364 F.3d 471, 481 (2d Cir. 2004) (fair use analysis under third factor must be based on entire work and not individual "modules").

1

2

3
infringing work . . . . '[T]he fact that a substantial portion of the infringing work was copied verbatim is evidence of the qualitative value of the copied material, both to the originator and to the plagiarist who seeks to profit from marketing someone else's copyrighted expression.' . . . The Ninth Circuit has recognized that, while 'wholesale copying does not preclude fair use per se, copying an entire work militates against a finding of fair use.'").

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1  **DISPUTED: Cisco's Position on Arista's Final Instruction No. 56 re Copyright—Affirmative**

2  **Defense: Fair Use: Fourth Factor**

3      Cisco's position is that no such instruction should be given.

4

5  **Cisco's Position:**

6      Arista's proposed instruction should be rejected.  *First*, the instruction departs from

7  Instruction 17.21 of the *Ninth Circuit Manual of Model Civil Jury Instructions* ("*Model*")
   expanding the *Model*'s instruction, and is unnecessarily lengthy.  *Second*, Arista's proposed

8  instruction is prejudicial in both its length (suggesting outsized importance to the jury) and its
   organization (which departs from the neutral approach of the Model Instruction by beginning with

9  a suggestion of fair use and a lack of liability.

10      Cisco further notes it is unduly excessive for the Court to provide six lengthy instructions

11  to the jury on the single topic of fair use.  Arista's instructions are almost exclusively derived from
    a single case where fair use was the sole issue before the jury on remand and Arista cites no other

12  authority for such extensive fair use instructions.     Arista's instructions on fair use are thus
    unbalanced with other instructions given in this case and are prejudicial to Cisco in that they may

13  improperly lead the jury to treat fair use with greater importance than the other topics addressed in
    these instructions.

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**DISPUTED: Arista's Final Instruction No. 56 re Copyright—Affirmative Defense: Fair Use: Fourth Factor[125]**

The fourth statutory factor is the effect of the accused infringer's use on the potential market for or value of the copyrighted work.[126] This factor militates against fair use if the accused use materially impairs the marketability or value of the copyrighted work.[127] This is the most important factor, but it must be weighed with all other factors and is not necessarily dispositive. This factor considers whether the accused work is offered or used as a substitute for the original copyrighted work.[128] This factor considers not only the extent of any market harm caused by the accused infringer's actions but also whether unrestricted and widespread use of the copyrighted materials of the sort engaged in by the accused infringer would result in a substantially adverse impact on the potential market for the copyrighted work.[129] If the use of the copyrighted materials is transformative, market substitution is at least less certain, and market harm may not be presumed.[130]

---

[125]  *Oracle America, Inc. v. Google, Inc.*, No. 10-cv-03561-WHA, ECF 1981 (May 26, 2016) (Jury Instruction 34, 37).

[126] 17 U.S.C. § 107.

[127] *Sofa Entm't, Inc. v. Dodger Prods.*, 709 F.3d 1273, 1280 (9th Cir. 2013)  ("Where the secondary use is not a substitute for the original and does not deprive the copyright holder of a derivative use, the fourth factor weighs in favor of fair use."); *Authors Guild v. Google, Inc.*, 804 F.3d 202, 224 (2d Cir. 2015) ("[T]he possibility, or even the probability or certainty, of some loss of sales does not suffice to make the copy an effectively competing substitute that would tilt the weighty fourth factor in favor of the rights holder in the original. There must be a meaningful or significant effect "upon the potential market for or value of the copyrighted work.").

[128] *Sofa Entm't, Inc. v. Dodger Prods.*, 709 F.3d 1273, 1280 (9th Cir. 2013)  ("Where the secondary use is not a substitute for the original and does not deprive the copyright holder of a derivative use, the fourth factor weighs in favor of fair use."); *Authors Guild v. Google, Inc.*, 804 F.3d 202, 224 (2d Cir. 2015) ("[T]he possibility, or even the probability or certainty, of some loss of sales does not suffice to make the copy an effectively competing substitute that would tilt the weighty fourth factor in favor of the rights holder in the original. There must be a meaningful or significant effect "upon the potential market for or value of the copyrighted work.").

[129] *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 590 (1994).

[130] *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 591 (1994) ("[W]hen a commercial use amounts to mere duplication of the entirety of an original, it clearly supersede[s] the objects of the original and serves as a market replacement for it, making it likely that cognizable market harm to the original will occur. But when, on the contrary, the second use is transformative, market substitution is at least less certain, and market harm may not be so readily inferred.") (internal

1126417.05

1

2    **Arista's Position:**

3         This proposed instruction is modeled on Judge Alsup's in *Oracle.  See Oracle*, ECF 1981
4    (May 26, 2016) (Jury Instruction 34).  Arista made minor modifications to adapt it to the parties
     and issues in dispute in this case.  Arista also added one new sentence:  "If the use of the
5    copyrighted materials is transformative, market substitution is at least less certain, and market
     harm may not be presumed."  This comes directly from Supreme Court case law.  *See Campbell v.*
6    *Acuff-Rose Music, Inc*., 510 U.S. 569, 591 (1994) ("But when, on the contrary, the second use is
     transformative, market substitution is at least less certain, and market harm may not be so readily
7    inferred.") (internal citations and quotations omitted).  The jury should be so instructed to properly
     evaluate the fourth fair use factor.
8

9         This instruction is also necessary to explain that the "amount and substantiality of the
     portion used" must be compared to the copyrighted work as a whole.  *See NXIVM Corp. v. The*
10   *Ross Institute*, 364 F.3d 471, 481 (2d Cir. 2004) ("If plaintiffs' argument [that the third fair use
     factor should be based on individual "modules"] were accepted by courts — and, not surprisingly,
11   plaintiffs cite no authority to support it —the third factor could depend ultimately on a plaintiff's
     cleverness in obtaining copyright protection for the smallest possible unit of what would otherwise
12   be a series of such units intended as a unitary work.")   *See also Harper House, Inc. v. Thomas*
     *Nelson, Inc.*, 5 F.3d 536, 1993 WL 346546 at 25 *2 (9th Cir. 1993) (unpublished) (comparisons of
13   individual portions (pages) of parties' works rather than the entire works is "inappropriate and
     misleadingly prejudicial"; works must be compared as a whole).
14

15        This rule also reflects the "key purpose" of the copyright deposit requirement, which is "to
     prevent confusion about which work the author is attempting to register" and protect under the
16   registration.  *Data General Corp. v. Grumman Systems Support Corp*., 36 F.3d 1147, 1162 (1st
     Cir. 1994); *see also Nicholls v. Tufenkian Import/Export Ventures*, 367 F. Supp. 2d 514, 520
17   (S.D.N.Y. 2005) (one of the purposes of the copyright deposit requirement is to provide
     "sufficient material to identify the work in which the registrant claims a copyright").
18

19

20

21

22

23

24

25

26   _____

27   citations and quotations omitted); *see also Perfect 10, Inc. v. Amazon.com, Inc.,* 508 F.3d 1146,
     1168 (9th Cir. 2007).
28

**DISPUTED: Cisco's Final Instruction No. 60 re Copyright—Affirmative Defense: Merger**

To show that Cisco's copyrighted works are subject to merger, Arista must show that, at the time Cisco created the works, Cisco had only one way, or very few ways, to express the idea underlying the copyrighted user interface and related documentation. If alternative expressions were available to Cisco at the time it created them, then there is no merger. An original work— even one that serves a function—is entitled to copyright protection as long as the author had multiple ways to express the underlying idea.[131] What alternatives were available to Arista is not relevant to merger.[132]

Arista has the burden of proving this defense by a preponderance of the evidence.[133]

**Cisco's Position:**

Cisco's proposed instruction is a concise, neutral and accurate description of the affirmative defense of merger. Contrary to Arista's request, the jury should be instructed on merger after the elements of infringement are set forth, as it is an affirmative defense to infringement for which Arista bears the burden of proof. *Oracle Am., Inc. v. Google Inc.*, 750 F.3d 1339, 1358 (Fed. Cir. 2014) (merger is an "affirmative defense[] to claims of infringement") (citing *Ets-Hokin v. Skyy Spirits, Inc.*, 225 F.3d 1068, 1082 (9th Cir. 2000); *Satava v. Lowry,* 323 F.3d 805, 810 n. 3 (9th Cir. 2003); *Kregos v. Associated Press*, 937 F.2d 700, 705 (2d Cir. 1991)); *Ninth Circuit Manual of Model Civil Jury Instructions* No. 1.2 (defendant bears burden of proof for affirmative defenses).

In addition, after conferring with Arista and with Arista's approval, Cisco moved the instruction on functionality ("[a]n original work—even one that serves a function—is entitled to copyright protection as long as the author had multiple ways to express the underlying idea.") from Instruction No. 27 (Ideas and Expressions) to this instruction.

Arista's proposed instruction should be rejected. *First*, Arista's instruction fails to inform the jury that Arista must show that: (1) the inquiry focuses on **Cisco's** options for expressions at

---

[131]    *Oracle Am., Inc. v. Google Inc.*, 750 F.3d 1339, 1367 (Fed. Cir. 2014) ("under Ninth Circuit law, an original work—even one that serves a function—is entitled to copyright protection as long as the author had multiple ways to express the underlying idea").

[132]    *Oracle Am., Inc. v. Google Inc.*, 750 F.3d 1339, 1361 (Fed. Cir. 2014) (1361 ("First, we agree that merger cannot bar copyright protection for any lines of declaring source code unless [the author] had only one way, or a limited number of ways, to write them. The evidence showed that [the author] had 'unlimited options as to the selection and arrangement of the 7000 lines Google copied.' This was not a situation where [the author] was selecting among preordained names and phrases to create its packages… Because 'alternative expressions [we]re available,' there is no merger.").

[133]    Instruction No. 1.2, *Ninth Circuit Manual of Model Civil Jury Instructions* (2007).

1    the time of creation of the asserted work(s), not Arista's options or anyone else's at the time of

2    copying; and (2) the inquiry looks at the options for expression available at the time of the work's
     creation.  *See Oracle*, 750 F.3d at 1361 (merger cannot bar copyright protection for any lines of

3    declaring source code unless [the author] had only one way, or a limited number of ways, to write
     them.  The evidence showed that [the author] had 'unlimited options as to the selection and

4    arrangement of the 7000 lines Google copied.'  This was not a situation where [the author] was
     selecting among preordained names and phrases to create its packages… Because 'alternative

5    expressions [we]re available,' there is no merger.").

6          *Second*, Arista fails to set forth that it bears the burden of proving its affirmative defense,
     which is both the law and included in the *Model*.  *See Model* Instruction No. 1.2.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**<u>DISPUTED: Arista's Final Instruction No. 60 re Copyright—Merger</u>**

2

3    If an idea and the expression of that idea merge, the expression will only be protected by

4    copyright law if the alleged copying of that expression is nearly identical. If the idea underlying

the copyrighted work can be expressed in only one way or only a few ways, the expression of that

5    idea will not constitute copyright infringement.[134] This is known as the doctrine of "merger."

6

7    **<u>Arista's Position:</u>**

8

9    Arista proposes using the supplemental merger instruction provided by Ninth Circuit
Model Jury Instruction 17.3 (citing *Apple Computer, Inc. v. Microsoft Corp.*, 35 F.3d 1435, 1444

10    (9th Cir. 1994); *CDN, Inc. v. Kapes*, 197 F.3d 1256, 1261 (9th Cir.1999)) (quoting *Ets-Hokin*, 225

11    F.3d 1068, 1082 (9th Cir. 2000) ("The merger doctrine "will not protect a copyrighted work from
infringement if the idea underlying the copyrighted work can be expressed in only one way, lest

12    there be a monopoly on the underlying idea.")). The phrase "or only a few ways," which Arista
added, stems from ABA Model Jury Instruction 1.4.7 (Copyright, Trademark, and Trade Dress

13    Litigation) (citing cases and treatises); *see also Oracle Am., Inc. v. Google Inc.*, 750 F.3d 1339,

14    1359 (Fed. Cir. 2014), cert. denied, 135 S. Ct. 2887, 192 L. Ed. 2d 948 (2015) ("[W]hen there are
a limited number of ways to express an idea, the idea is said to 'merge' with its expression, and

15    the expression becomes unprotected."). Cisco proposes the equivalent phrase "or a limited
number of ways."

16    Cisco's merger instruction insists that merger is an affirmative defense. It is not. Cisco
bears the burden of proving originality and protectability. Merger is part and parcel of Cisco's

17    burden. *See Ets-Hokin v. Skyy Spirits, Inc.*, 225 F.3d 1068, 1082 (9th Cir. 2000) (holding merger

18    doctrine is a "defense[] to infringement"). That is why merger is listed as a supplement instruction
to Ninth Circuit Model Jury Instruction 17.3, *with no mention of it being an affirmative defense.*

19

20    Merger is a defense to infringement, not an affirmative defense, because it stems from the
originality requirement, which is Cisco's burden to prove. 4-13 Nimmer on Copyright §

21    13.03[F][3]. *See also* 4-13 Nimmer on Copyright § 13.03[B][3], [B][4]. The *Oracle v. Google*

22

23    [134] Ninth Circuit Model Jury Instruction 17.3 Supplemental Instruction for merger defense
(citing *Apple Computer, Inc. v. Microsoft Corp.*, 35 F.3d 1435, 1444 (9th Cir. 1994); *CDN, Inc. v.*

24    *Kapes*, 197 F.3d 1256, 1261 (9th Cir.1999)) (quoting *Ets-Hokin*, 225 F.3d 1068, 1082 (9th Cir.
2000) ("The merger doctrine "will not protect a copyrighted work from infringement if the idea

25    underlying the copyrighted work can be expressed in only one way, lest there be a monopoly on
the underlying idea."). The phrase "or only a few ways" stems from ABA Model Jury Instruction

26    1.4.7 (Copyright, Trademark, and Trade Dress Litigation) (citing cases and treatises); *see also*
*Oracle Am., Inc. v. Google Inc.*, 750 F.3d 1339, 1359 (Fed. Cir. 2014), cert. denied, 135 S. Ct.

27    2887, 192 L. Ed. 2d 948 (2015) ("[W]hen there are a limited number of ways to express an idea,

28    the idea is said to 'merge' with its expression, and the expression becomes unprotected.").

1  Federal Circuit decision incorrectly states that scènes à faire is an affirmative defense, but the
2  citations to Ninth Circuit law and the rest of the discussion in the case make clear that it is not.
   *See* 750 F.3d 1339, 1358 (Fed. Cir. 2014).

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1    **DISPUTED: Cisco's Final Instruction No. 61 re Copyright—Affirmative Defense: Scènes À**

2    **Faire**

3    Scènes à faire is an affirmative defense to copyright infringement.[135]

4    To show that the infringed portions of Cisco's user interface are scènes à faire material,

5    Arista must show that, at the time Cisco created the user interface—not at the time Arista copied

6    it—external factors other than Cisco's creativity dictated that Cisco select, arrange, organize and

7    design its original features in the manner it did.  The scènes à faire doctrine depends on the

8    circumstances presented to the creator at the time of creation, not the circumstances presented to

9    the copier at the time it copied.[136]

10    Arista has the burden of proving this defense by a preponderance of the evidence.[137]

11

12    **Cisco's Position:**

13    Cisco's proposed instruction is a concise, neutral and accurate description of the scènes à

14    faire affirmative defense.  Cisco's proposed language directly mirrors the legal standard, which
states that scènes à faire "identifies and excludes from protection against infringement expression
whose creation 'flowed naturally from considerations external to the author's creativity.'"  *Oracle*

15    *Am., Inc. v. Google Inc.*, 750 F.3d 1339, 1358 (Fed. Cir. 2014).  Thus, Cisco's instruction directs
that the defense applies if "external factors other than Cisco's creativity" dictated its protectable

16    expression.  Further, Cisco's cited authority includes the direction that: (1) "the focus … is on the
circumstances presented to the creator, not the copier," *id.* at 1364; and (2) the relevant time is "the

17    time of creation," *id.*

18    The Court should reject Arista's proposed instruction, which is not neutral, not concise,

19    and not accurate.

20    *First*, Arista's second paragraph is improper because it refers to (and rests on authority

21    _____

22    [135]   *Oracle Am., Inc. v. Google Inc.*, 750 F.3d 1339, 1358 (Fed. Cir. 2014) (In the Ninth
Circuit, while questions regarding originality are considered questions of copyrightability,"
scènes à faire is an "affirmative defense[] to claims of infringement.") (citing cases).

23    [136]   *Oracle Am., Inc. v. Google Inc.*, 750 F.3d 1339, 1358 (Fed. Cir. 2014) ("The court's

24    analytical focus must be upon the external factors that dictated [the author's] selection of classes,
methods, and code—not upon what Google encountered at the time it chose to copy those

25    groupings and that code. '[T]he scenes a faire doctrine identifies and excludes from protection
against infringement expression whose creation 'flowed naturally from considerations external to

26    the author's creativity."'); *id.* at 1364 ("the focus of the scenes a faire doctrine is on the
circumstances presented to the creator, not the copier"); *id.* at 1364 (scènes à faire must be

27    determined at the time of creation).

28    [137]   Instruction No. 1.2, *Ninth Circuit Manual of Model Civil Jury Instructions* (2007).

concerning) computer programming and supposed standard practices in such programming. This case, however, is not about a computer program; it is rather about a user interface that is visible to a human operator and that thus has no necessary or standard form of expression. The mere fact that a particular user interface becomes widely used after its creation does not mean that it was "standard" at the time of its creation. *See* Cisco's Proposed Instruction No. 28 (Industry Standard Not Relevant), *supra*; Motion in Limine Ruling at 3 (excluding evidence on "industry standard" or "*de facto* industry standard"); *cf.* Order on Daubert Motions at 2-8 (excluding expert testimony purporting to opine on a "*de facto* industry standard" and whether there is "widespread use [of it] throughout the industry").

*Second*, even if computer programming cases were relevant in this user interface case, Arista's proposed language in its third paragraph is not based on any cited Ninth Circuit authority, but rather case law of other Circuits. For example, Cisco's proposed instruction that scènes à faire applies to "hardware standards," "software standards," "compatibility requirements," "computer manufacturer design standards," "target industry practices," and "business practices and technical requirements of the end user" are not in any Ninth Circuit citations and thus should be rejected. Further, to the extent that such cases have any persuasive authority, they largely related not to user interfaces like Cisco's, but rather to computer programming. Moreover, Arista's cited case of *Sega Enterprises Ltd. v. Accolade, Inc.*, 977 F.2d 1510, 1524 (9th Cir. 1992), makes no mention of scènes à faire at all but rather addresses functionality, a separate concept which is addressed in other instructions herein. *See supra* Instruction No. 27 (Ideas and Expressions). Finally, Arista's instruction is prejudicial in that it unnecessarily includes examples of what it purports are scènes à faire but no examples of what are not, thus prejudicing Cisco; the most neutral and balanced way to present the legal test, as Cisco has proposed, would not inject biased examples that are not even established as proper under the applicable law.

*Third*, Arista's second paragraph incorrectly states the standard. For example, Arista fails to state that the defense necessarily fails where an author, at the time of creation, has more than one or a limited number of ways to express an underlying idea. Arista also fails to acknowledge that the inquiry focuses only on the author and not the infringer; and the only relevant time is the time of creation and not whether the expression has become useful or even commonplace subsequently. *See* Cisco's Proposed Instruction No. 28 (Industry Standard Not Relevant); *Oracle Am., Inc. v. Google Inc.*, 750 F.3d 1339, 1358 (Fed. Cir. 2014) ("The court's analytical focus must be upon the external factors that dictated [the author's] selection of classes, methods, and code— not upon what Google encountered at the time it chose to copy those groupings and that code. '[T]he scènes à faire doctrine identifies and excludes from protection against infringement expression whose creation 'flowed naturally from considerations external to the author's creativity.'"); *id.* at 1364 (scènes à faire must be determined at the time of creation, and "the focus of the scènes à faire doctrine is on the circumstances presented to the creator, not the copier"). Arista in fact suggests that the moment it elected to copy Cisco's protected expression is the relevant consideration by discussing "the right of software developers to ***adopt*** elements of a program," which has no basis in Arista's own cited authority. *See Computer Associates Int'l, Inc. v. Altai, Inc.*, 982 F.2d 693, 709 (2d Cir. 1992) (stating that a "programmer's freedom of design choice is often circumscribed by extrinsic considerations," and not referring to any supposed right to "adopt"). It is not relevant whether it was "virtually impossible" for Arista to write a program without using Cisco's protected expression, but rather whether it was impossible for ***Cisco***, at the time of creation, to create its protected expression in any way other than it did because external factors dictated as much. *Id.* Cisco's proposed instruction, in contrast, tracks the applicable legal standard in a succinct and neutral manner: the relevant inquiry is whether "external factors" other than Cisco's creativity directed Cisco's choices in its expression; if they did not, the scènes à faire affirmative defense does not apply as a matter of law.

*Fourth*, the last sentence of the second paragraph should be rejected because it inappropriately suggests that the commonplace ideas or expressions discussed in the previous sentence are by definitions "necessary incidents of an idea." This is untrue as a matter of law and

1    logic, and the cases Arista cites in support of these sentences do not conflate these distinct
concepts, as Arista has done.

2        *Fifth*, Arista's proposed final paragraph should be rejected because it has no relevance to
3    this particular case and in any event is contrary to law, as the proper inquiry focuses only on
whether Cisco had sufficient alternative methods of expression, and not whether "other authors"
4    later desired to use Cisco's expression.  *See* Cisco's Proposed Instruction No. 28 (Industry
Standard Not Relevant).

5        *Sixth*, Arista's instruction fails to instruct that Arista bears the burden of proving this
6    affirmative defense.  Instruction No. 1.2, *Ninth Circuit Manual of Model Civil Jury Instructions*
(2007); *see Oracle Am., Inc. v. Google Inc.*, 750 F.3d 1339, 1358 (Fed. Cir. 2014) (In the Ninth
7    Circuit, while questions regarding originality are considered questions of copyrightability,"
scènes à faire is an "affirmative defense[] to claims of infringement.  *Ets–Hokin,* 225 F.3d at 1082;
8    *Satava v. Lowry,* 323 F.3d 805, 810 n.3 (9th Cir. 2003) ("The Ninth Circuit treats scenes a faire as
a defense to infringement rather than as a barrier to copyrightability."). The Ninth Circuit … has
9    made clear that, in that circuit," scènes à faire is "to be treated as [a] defense[s] to infringement.
[*Ets–Hokin,* 225 F.3d at 1082] … *Reed–Union Corp. v. Turtle Wax, Inc.,* 77 F.3d 909, 914 (7th
10   Cir.1996) (explaining why the doctrine of scenes a faire is separate from the validity of a
copyright)).").

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1    **DISPUTED: Arista's Final Instruction No. 61 re Copyright—Scènes À Faire[138]**

2    Arista asserts that its work does not infringe Cisco's copyright because of the doctrine of

3    scènes à faire.  Under the doctrine of scènes à faire, which means "scene setting," a standard or

4    typical theme, setting, or background that is common to a large number of works, such as a

5    common plot device, is unprotected matter that may be copied.  These elements of a work are

6    given only limited copyright protection, because they are not likely to be original and because, as a

7    type of idea, they are necessary for the creation of other works.

8    Scènes à faire applies in the context of computer programs as well, because in certain

9    instances, it is virtually impossible to write a program to perform particular functions in a specific

10    computing environment without employing standard techniques.[139]  Scènes à faire protects the

11    right of software developers to adopt elements of a program dictated by practical realities, such as

12    by hardware standards and mechanical specifications, software standards and compatibility

13    requirements, computer manufacturer design standards, target industry practices, the business

14    practices and technical requirements of the end user, and standard computer programming

15    practices.[140]  Cisco may not claim copyright protection of an idea and expression that is, if not

_____

16

17    [138] ABA Model Jury Instructions, Copyright, Trademark, and Trade Dress Litigation, Instruction 1.4.8.  The Ninth Circuit does not have an analogous model jury instruction.  *See also*

18    4-13 Nimmer on Copyright § 13.03[B][4].

19    [139] 4-13 Nimmer on Copyright § 13.03[F][3] ("These doctrines of scenes a faire and lack of originality apply particularly to computer programs, because in many instances, it is virtually

20    impossible to write a program to perform particular functions in a specific computing environment without employing standard techniques."); *Computer Associates Intern., Inc. v. Altai, Inc.* 982

21    F.2d 693, 709–10 (2d Cir. 1992) (quoting Nimmer).

22    [140] *Oracle Am., Inc. v. Google Inc.*, 750 F.3d 1339, 1363 (Fed. Cir. 2014) ("In the computer context, the scene a faire doctrine denies protection to program elements that are dictated by

23    external factors such as 'the mechanical specifications of the computer on which a particular program is intended to run' or 'widely accepted programming practices within the computer

24    industry.' (internal quotation marks omitted); *Satava v. Lowry*, 323 F.3d 805, 807 (9th Cir. 2003) (The Copyright Act "denie[s] artists the exclusive right to ideas and standard elements in their

25    works, thereby preventing them from monopolizing what rightfully belongs to the public . . . . [E]xpressions that are standard, stock, or common to a particular subject matter or medium are not

26    protectable under copyright law."); *Apple Computer, Inc. v. Microsoft Corp.*, 35 F.3d 1435, 1444 (9th Cir. 1994) ("The doctrine of scenes a faire is closely related . . . . [W]hen similar features in a

27    videogame are as a practical matter indispensable, or at least standard, in the treatment of a given

28    idea, they are treated like ideas and are therefore not protected by copyright.") (internal citations,

-125-                                    Case No. 5:14-cv-5344-BLF

1126417.05

1    standard, then commonplace in the computer software industry.[141]  Such elements are not

2    protected by copyright laws because granting copyright protection to the necessary incidents of an

3    idea would effectively afford a monopoly to the first programmer to express those ideas.[142]

4    _____

5    quotation marks, and alterations omitted);*Computer Associates Int'l, Inc. v. Altai, Inc.*, 982 F.2d
6    693, 709–10 (2d Cir. 1992) ("[A] programmer's freedom of design choice is often circumscribed
     by extrinsic considerations such as (1) the mechanical specifications of the computer on which a
7    particular program is intended to run; (2) compatibility requirements of other programs with which
     a program is designed to operate in conjunction; (3) computer manufacturers' design standards; (4)
8    demands of the industry being serviced; and (5) widely accepted programming practices within the
     computer industry."); *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 387 F.3d 522, 535
9    (6th Cir. 2004) ("In the computer-software context, the doctrine means that the elements of a
     program dictated by practical realities—e.g., by hardware standards and mechanical specifications,
10   software standards and compatibility requirements, computer manufacturer design standards,
     target industry practices, and standard computer programming practices—may not obtain
11   protection."); *Gates Rubber Co. v. Bando Chem. Indus., Ltd.*, 9 F.3d 823, 838 (10th Cir. 1993)
12   ("The scenes a faire doctrine also excludes from protection those elements of a program that have
     been dictated by external factors.  In the area of computer programs these external factors may
13   include: hardware standards and mechanical specifications, software standards and compatibility
     requirements, computer manufacturer design standards, target industry practices and demands, and
14   computer industry programming practices.") (citing cases and Nimmer) (internal citations
     omitted); *Sega Enterprises Ltd. v. Accolade, Inc.*, 977 F.2d 1510, 1524 (9th Cir. 1992), as
15   amended (Jan. 6, 1993) ("[C]omputer programs are, in essence, utilitarian articles—articles that
16   accomplish tasks. As such, they contain many logical, structural, and visual display elements that
     are dictated by the function to be performed, by considerations of efficiency, or by external factors
17   such as compatibility requirements and industry demands."); *Frybarger v. Int'l Bus. Machines
     Corp.*, 812 F.2d 525, 530 (9th Cir. 1987) (discussing *scenes a faire*: "[W]e believe that each of the
18   similar features constitutes a basic idea of the videogames and, to the extent each feature is
     expressive, that the expression is as a practical matter indispensable, or at least standard, in the
19   treatment of a given idea.") (internal quotation marks and alterations omitted); 4-13 Nimmer on
     Copyright § 13.03[F][3] (discussing "hardware standards," "software standards," "computer
20   manufacturers' design standards," target industry practices," "the business practices and technical
     requirements of the end user," and "computer industry programming practices" in sub-sections
21   [a]–[e]).
22     [141] *Telemarketing Res. v. Symantec Corp.*, No. C88-20352 RPA, 1989 WL 200350, at *5 (N.D.
     Cal. Sept. 6, 1989), *aff'd in part, vacated in part, remanded sub nom. Brown Bag Software v.
23   Symantec Corp.*, 960 F.2d 1465 (9th Cir. 1992) ("Plaintiffs may not claim copyright protection of
     an idea and expression that is, if not standard, then commonplace in the computer software
24   industry."); *Satava v. Lowry*, 323 F.3d 805, 807 (9th Cir. 2003) (The Copyright Act "denie[s]
25   artists the exclusive right to ideas and standard elements in their works, thereby preventing them
     from monopolizing what rightfully belongs to the public . . . .  [E]xpressions that are standard,
26   stock, or common to a particular subject matter or medium are not protectable under copyright
     law.").
27     [142] *Gates Rubber Co. v. Bando Chem. Indus., Ltd.*, 9 F.3d 823, 838 (10th Cir. 1993) ("Granting
28   copyright protection to the necessary incidents of an idea would effectively afford a monopoly to

1126417.05

1    In drawing the line between protected and unprotected matter, you should follow the

2  principle that copyright protection should not extend so far that it will interfere with the "tools of

3  the trade" that other authors should be able to use in creating future works.[143]

4

5  **Arista's Position:**

6    Arista's scènes à faire instruction comes from ABA Model Jury Instruction for Copyright

7  1.4.8 (The Ninth Circuit does not have a model for scènes à faire).  Cisco's is drafted from whole
   cloth and plainly designed to minimize this important issue.

8    First, Cisco wrongly states, without any authority, that scènes à faire is an affirmative

9  defense.  Scènes à faire is a defense to infringement, not an affirmative defense, because it stems
   from the originality requirement, which is Cisco's burden to prove.  4-13 Nimmer on Copyright §

10  13.03[F][3].  The ABA model instruction acknowledges this—it makes no mention of Arista

11  bearing the burden to prove scènes à faire.  Likewise, the Ninth Circuit stated in *Ets-Hokin v. Skyy
   Spirits, Inc.*, 225 F.3d 1068, 1082 (9th Cir. 2000), that scènes à faire is a "defense[] to

12  infringement."  *See also* 4-13 Nimmer on Copyright § 13.03[B][3], [B][4].  (The *Oracle v. Google*
   Federal Circuit decision incorrectly states that scènes à faire is an affirmative defense, but the

13  citations to Ninth Circuit law and the rest of the discussion in the case make clear that it is not.
   *See* 750 F.3d 1339, 1358 (Fed. Cir. 2014).

14

15    Second, Cisco's proposed instruction states that the asserted elements are "original
   features," which is a question for the jury to decide, and should not be stated in a jury instruction

16  as though it were true.

17    Third, Cisco's proposed instruction barely describes the scènes à faire defense.  Out of

18  three sentences, half of one explains the concept, and the rest of the instruction is a ream of
   qualifiers.  It is plainly one-sided and unfair.

19    Finally, Arista proposes an addition to the ABA model instruction to explain how scènes à

20  faire applies in the context of computers.  The ABA model is focused on literary works like
   *Romeo and Juliet*.  There is a significant body of Ninth Circuit case law applying scènes à faire to

21  computer programs from which the Court can draw to craft an appropriate instruction.  Arista's

22

23  the first programmer to express those ideas."); *Satava v. Lowry*, 323 F.3d 805, 807 (9th Cir. 2003)
   (The Copyright Act "denie[s] artists the exclusive right to ideas and standard elements in their

24  works, thereby preventing them from monopolizing what rightfully belongs to the public . . . .
   [E]xpressions that are standard, stock, or common to a particular subject matter or medium are not

25  protectable under copyright law."); *Mattel, Inc. v. MGA Entm't, Inc.*, 616 F.3d 904, 913 (9th Cir.
   2010), *as amended on denial of reh'g* (Oct. 21, 2010) (authors cannot copyright ideas,

26  "[o]therwise, the first person to express any idea would have a monopoly over it.").

27  [143] ABA Model Jury Instructions, Copyright, Trademark, and Trade Dress Litigation,
   Instruction 1.4.8.  The Ninth Circuit does not have an analogous model jury instruction.  *See also*

28  4-13 Nimmer on Copyright § 13.03[B][4].

proposal incorporates quotations from those cases and related authorities.  The Court should adopt Arista's proposed instruction because it is neutral, tied to the facts of the case, and faithful to the law.

**DISPUTED: Cisco's Position on Arista's Final Instruction No. 62 re Copyright—Affirmative**

**Defense: Copyright Misuse**

Cisco's position is that no such instruction should be given.

**Cisco's Position:**

No such instruction should be given.  Instruction No. 17.27 of the *Ninth Circuit Manual of Model Civil Jury Instructions* provides that "the Ninth Circuit has not yet decided whether the equitable defense of copyright misuse should be submitted to the jury or is an issue for the court to decide."  However, because copyright misuse is an equitable defense, it is not for the jury to decide.  *See Omega S.A. v. Costco Wholesale Corp.*, 776 F.3d 692, 699-700 (9th Cir. 2015) (Wardlaw, J., concurring in the judgment) ("We expressly adopted copyright misuse as an equitable defense to a claim of infringement") (citation omitted); *Vernor v. Autodesk, Inc.*, 621 F.3d 1102, 1115 (9th Cir. 2010) ("[c]opyright misuse is an equitable defense"); *Granite State Ins. Co. v. Smart Modular Techs., Inc.*, 76 F.3d 1023, 1027 (9th Cir. 1996) ("A litigant is not entitled to have a jury resolve a disputed affirmative defense if the defense is equitable in nature.").

If the Court should disagree, Cisco respectfully reserves its right to propose a proper instruction on copyright misuse.

1126417.05

**DISPUTED: Arista's Final Instruction No. 62 re Copyright—Affirmative Defense: Copyright Misuse[144]**

Arista claims it is not liable for copyright infringement because Cisco misused its copyrights.  While the Copyright Act gives a copyright owner a limited monopoly in a copyrighted work, the owner's attempts to extend the scope of this monopoly may under certain circumstances constitute misuse.  If you find that Cisco misused its copyrights, it cannot assert an infringement claim against Arista.

To prevail upon its claim that Cisco misused its copyrights, Arista must prove that Cisco attempted to use the existence of its copyrights to prevent Arista from using unprotected elements of the copyrighted work, or to prevent Arista from undertaking activity safeguarded by public policy, such as the policies supporting fair use.

Arista has the burden of proof to establish Cisco's copyright misuse by a preponderance of the evidence.  If you find that Arista has satisfied this burden of proof, then you should find in favor of Arista on the issue of copyright infringement.

**Arista's Position:**

Arista's proposed instruction on the defense of misuse is based upon the ABA Model Jury Instructions, Copyright, Trademark, and Trade Dress Litigation, Instruction 1.6.9.  "Misuse claims may be decided by a jury."  4 Patry on Copyright § 10A:1.  In *Alcatel USA, Inc. v. DGI Technologies, Inc.*, 166 F.3d 772–73 (5th Cir. 1999), the Fifth Circuit found that the district court abused its discretion when it ignored the jury's finding that a copyright holder had engaged in copyright misuse.  The First Circuit has also upheld a jury's misuse findings.  *See Banco Popular De Puerto Rico v. Asociacion De Compositores Y Editores De Musica Latinoamericana (ACEMLA)*, 678 F.3d 102, 111 (1st Cir. 2012) (holding that "the jury was not unreasonable in rejecting this [misuse] defense.").  While No. 17.23 of the Ninth Circuit's Model Civil Jury Instructions (last updated 6/2016) points out that "the Ninth Circuit has not yet decided whether the equitable defense of copyright misuse should be submitted to the jury or is an issue for the court to decide," Cisco has not identified any case law within or beyond this circuit affirmatively stating that it must be decided by the Court.

Given the unsettled nature of the matter, if the Court believes the defense of misuse may be equitable, it should nevertheless request an advisory verdict from the jury, consistent with the Court's approach to disgorgement.

---

[144] ABA Model Jury Instruction, 1.6.9.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1126417.05

**DISPUTED: Cisco's Final Instruction No. 63 re Copyright—Willful Infringement**[145]

Arista's copyright infringement is considered willful if Cisco proves both of the following elements by a preponderance of the evidence:

1. Arista infringed the copyright to one or more of Cisco's copyrighted works; and

2. Arista either knew its acts infringed the copyright or Arista's actions were the result of reckless disregard for, or willful blindness to, Cisco's copyrights.

**Cisco's Position:**

Cisco's proposed instruction directly tracks Instruction No. 17.36 from the *Ninth Circuit Manual of Model Civil Jury Instructions* ("*Model*") in form and substance.

Arista's proposed instruction is identical, except that it has added an extra sentence at the end, unsupported by any authority: "Arista may refute evidence of willful infringement by establishing its good faith belief in the innocence of its conduct, and that it was reasonable in holding such a belief." This statement is not part of the primary *Model*, and Arista has not provided a justification for departure from the *Model*. Further, Arista's proposed addition is superfluous, as one who has good faith belief of innocence and a reasonable in such a belief cannot have the requisite knowledge of infringement.

---

[145] Instruction No. 17.27, *Ninth Circuit Manual of Model Civil Jury Instructions* (2007); *Louis Vuitton Malletier, S.A. v. Akanoc Sols., Inc.*, 658 F.3d 936, 944 (9th Cir. 2011) ("To prove 'willfulness' under the Copyright Act, the plaintiff must show (1) that the defendant was actually aware of the infringing activity, or (2) that the defendant's actions were the result of reckless disregard for, or willful blindness to, the copyright holder's rights."); *Washington Shoe Co. v. A-Z Sporting Goods Inc.*, 704 F.3d 668, 674 (9th Cir. 2012) ("We have explained that a finding of 'willfulness' in the copyright context can be based on either 'intentional' behavior or merely 'reckless' behavior, and that to prove 'willfulness' under the Copyright Act, the plaintiff must show (1) that the defendant was actually aware of the infringing activity, or (2) that the defendant's actions were the result of reckless disregard for, or willful blindness to, the copyright holder's rights." (internal citation, quotation marks, and brackets omitted)); *id.* ("To prove willfulness, plaintiffs must show that the infringer had actual or constructive knowledge that it was infringing the plaintiffs' copyrights or else acted in reckless disregard of the high probability that it was infringing plaintiffs' copyrights."); *In re Barboza*, 545 F.3d 702, 707 (9th Cir. 2008) ("The term 'willful' as used in copyright infringement case … can be based on either intentional behavior or merely reckless behavior." (quotation marks omitted)).

Case No. 5:14-cv-5344-BLF
THIRD AMENDED UNDISPUTED AND DISPUTED PROPOSED JURY INSTRUCTIONS

1126417.05

**DISPUTED: Arista's Final Instruction No. 63 re Copyright—Willfulness[146]**

Copyright infringement is considered willful if Cisco proves both of the following elements by a preponderance of the evidence:

1.   Arista engaged in acts that infringed the copyright; and

2.   Arista knew that those acts infringed the copyright, or Arista acted with reckless disregard for, or willful blindness to, the copyright holder's rights.

Arista may refute evidence of willful infringement by establishing its good faith belief in the innocence of its conduct, and that it was reasonable in holding such a belief.

**Arista's Position:**

Arista objects to a jury instruction on willful copyright infringement.  As set forth in Arista's supplemental brief regarding copyright willfulness (ECF No. 636), the jury should not be instructed on willful infringement.

First, Cisco's assertion that Arista's laches defense requires willfulness to be decided by the jury is not supported by the law, including the cases Cisco cited in its supplemental briefing on willfulness.  Cisco's cited case law indicates that, at most,  where the jury **has already ruled** on willfulness, the Court should take the jury's conclusion into account when considering willful infringement. *See* Cisco's Supplemental Brief, ECF No. 634 (citing *Anhing Corp. v. Thuan Phong Co. Ltd.*, No. CV1305167-BRO (MANx), 2015 WL 4517846, at *8 (C.D. Cal. July 24, 2015)). Arista's attorneys have found no Ninth Circuit authority suggesting that a jury verdict on willfulness is required—or even recommended—where a defendant assert a laches defense to copyright infringement. *See, e.g., Goldberg v. Cameron,* 482 F. Supp. 2d 1136, 1152 (N.D. Cal. 2007).  Here, however, where there is <u>no</u> reason for the jury to decide willfulness, beyond Arista's equitable laches defense, there is no justification for a jury instruction or verdict on willfulness, and doing so would only confuse the jury.

Second, Cisco maintains that copyright willfulness should remain part of this case because, technically, Cisco can elect statutory damages at any time prior to final judgment, and a finding of willfulness would impact the calculation of statutory damages.  However, because Arista has now agreed to stipulate that, if Cisco ever elects statutory damages, the Court may make a finding of copyright willfulness for the sole purpose of calculating statutory damages.  This stipulation obviates any need, with respect to the calculation of statutory damages, for the Court to include a

---

[146]   Manual of Model Civil Jury Instructions (2007 Ed., last updated 6/2016), Instruction No. 17.36 ("COPYRIGHT—DAMAGES—WILLFUL INFRINGEMENT (17 U.S.C. § 504(c)(2))"); Comments to the Manual of Model Civil Jury Instructions (2007 Ed.); *Peer Int'l Corp. v. Pausa Records, Inc.*, 909 F.2d 1332, 1335–36 (9th Cir. 1990); *Evergreen Safety Council v. RSA Network Inc.*, 697 F.3d 1221, 1228 (9th Cir. 2012).

1    jury instruction on copyright willfulness.

2        Third, a finding of willful copyright infringement does not prevent Arista from deducting
     expenses (beyond income and excess profit taxes) for purposes of calculating disgorgement.
3    There is no Ninth Circuit support for altering the calculation of deductible expenses where
     infringement is willful, **with the exception** of income and excess profit taxes. *Oracle v. Google*,
4    131 F. Supp. 3d 946, 951 (N.D. Cal. 2015) ("[A]n examination of the decisional law [in the Ninth
     Circuit] on this issue finds no authoritative support for altering the calculus of 'deductible
5    expenses' where the infringement at issue was willful, except as to income and excess profits
     taxes."). In this case, Arista has never elected to seek a deduction for its income or excess profit
6    taxes, and as set forth in the pretrial conference statement, it will not do so. ECF No. 593 at 17-
7    18. Accordingly, a finding of copyright willfulness has no impact on Arista's calculation of
     deductible expenses, and thus does not justify submission of willfulness to the jury.

8

9        Finally, Cisco argues that a finding of willful copyright infringement is relevant to Arista's
     fair use defense. As set forth in Arista's supplemental briefing on willfulness, Cisco may present
10   evidence relating to whether Arista's alleged copyright infringement was intentional, and submit a
     fair use jury instruction that incorporates the issue of good faith. But this provides no justification
11   for submitting a separate jury instruction on copyright willfulness. Arista's fair use defense does
     not open the door for Cisco to label Arista's conduct as "willful," nor can it justify submission of
12   copyright willfulness to the jury.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1126417.05

**STIPULATED: Final Instruction No. 64 re Copyright—Damages**[147]

It is the duty of the Court to instruct you about the measure of damages. By instructing you on damages, the Court does not mean to suggest for which party your verdict should be rendered.

If you find for Cisco on its copyright infringement claim, you must determine Cisco's damages. Cisco is entitled to recover the actual damages suffered as a result of the infringement. In addition, Cisco is also entitled to recover any of Arista's profits attributable to the infringement, to the extent you did not already account for those profits in determining Cisco's actual damages. Cisco must prove damages by a preponderance of the evidence.

It is for you to determine what damages, if any, have been proved. Your award must be based upon evidence and not upon speculation, guesswork or conjecture.

---

[147]  Instruction Nos. 5.1 & 17.31, *Ninth Circuit Manual of Model Civil Jury Instructions* (2007); 17 U.S.C. § 504(b); *Synopsys, Inc. v. ATopTech, Inc.*, No. 13-cv-2965 (N.D. Cal.), ECF No. 688 at 16 (Final Instructions).

**STIPULATED: Final Instruction No. 65 re Copyright—Actual Damages**[148]

Cisco is entitled to recover the actual damages suffered as a result of Arista's infringement. Actual damages means the amount of money adequate to compensate the copyright owner for the reduction in the fair market value of the copyrighted work caused by the infringement.  Actual damages may be measured by the profits of the copyright owner lost due to the infringement, referred to as "lost profits."   In this case, actual damages in the form of lost profits are the amount that Cisco would have earned but for Arista's infringement.

---

[148]   Instruction No. 17.32, *Ninth Circuit Manual of Model Civil Jury Instructions* (2007); *Synopsys, Inc. v. ATopTech, Inc.*, No. 13-cv-2965 (N.D. Cal.), ECF No. 688 at 17 (Final Instructions); *Oracle Corp. v. SAP AG*, 765 F.3d 1081, 1087 (9th Cir. 2014) ("'actual damages' can be awarded in the form of lost profits"); 5 NIMMER ON COPYRIGHT § 14.02[A][1] ("[T]he plaintiff's damages may be said to equal the profits that the plaintiff might have accrued but for the defendant's infringement."); *Polar Bear Prods., Inc. v. Timex Corp.*, 384 F.3d 700, 708 (9th Cir. 2004) ("Actual damages are usually determined by the loss in the fair market value of the copyright, measured by the profits lost due to the infringement or by the value of the use of the copyrighted work to the infringer.").

1     **DISPUTED: Cisco's Final Instruction No. 66 re Copyright—Infringer's Profits[149]**

2          In addition to actual damages, Cisco is entitled to any profits of Arista attributable to the

3   infringement.  You may not include in an award of profits any amount that you took into account

4   in determining actual damages.  You may make an award of Arista's profits only if you find that

5   Cisco showed a causal nexus between the profits it seeks and the copyright infringement.  In this

6   case, because Cisco seeks only direct profits, Cisco may satisfy its burden by showing that the

7   profits it seeks to recover derive directly from sales of the infringing products.[150]

8          Arista's profits are determined by subtracting all deductible expenses from Arista's gross

9   revenue.  Arista's gross revenue is all of Arista's revenue directly from the sale of any products

10  containing or using Cisco's copyrighted works.  Cisco has the burden of proving Arista's gross

11  revenue by a preponderance of the evidence.

12         Deductible expenses are the portion of Arista's operating costs, overhead costs, and

13  production costs incurred by Arista in producing Arista's gross revenue from the infringing

14  products.  Arista has the burden of proving its expenses by a preponderance of the evidence.

15         Unless you find that a portion of the profit from the sale of a product containing or using

16  Cisco's copyrighted works is attributable to factors other than the copyrighted works, all of the

17  profit is to be attributed to the infringement.  Arista has the burden of proving by a preponderance

---

[149]  Instruction No. 17.33, *Ninth Circuit Manual of Model Civil Jury Instructions* (2007); *Synopsys, Inc. v. ATopTech, Inc.*, No. 13-cv-2965 (N.D. Cal.), ECF No. 688 at 18 (Final Instructions).

[150]  Order on Daubert Motions at  16 ("Importantly, Arista also acknowledged to the Court that for establishing a royalty base, Cisco could satisfy its initial burden by showing that the direct profits are derived from the infringing products. …  Assuming that Cisco is seeking only direct profits, Cisco must at least show that the profits it seeks to recover derive directly from the infringing products."); *Polar Bear Prods., Inc. v. Timex Corp.*, 384 F.3d 700, 708 (9th Cir. 2004); *Brocade Commc'ns Sys. v. A10 Networks, Inc.*, No. 10-cv-3428-PSG, 2013 WL 831528, at *6 (N.D. Cal. Jan. 10, 2013) (noting that, to recover disgorgement of direct profits, a plaintiff may satisfy the "causal link" requirement by showing the "gross revenues from the infringing product"); *see also, e.g., On Davis v. The Gap, Inc.*, 246 F.3d 152, 160 (2d Cir. 2001); *Taylor v. Meirick*, 712 F.2d 1112, 1122 (7th Cir. 1983) (finding a prima facie case made by a showing that the proffered gross revenue is from the sale of the infringing product).

1    of the evidence the portion of the profit, if any, attributable to factors other than the copyrighted

2    works.

3            Arista's profits do not need to be calculated with mathematical or absolute exactness by

4    either Cisco or Arista.  The law requires only a reasonable approximation of an infringer's profits

5    as a basis for determining the proper amount of damages.  You should resolve any doubt as to the

6    computation of costs or profits in favor of Cisco.[151]

7    **Cisco's Position:**

8            Cisco's proposed instruction closely follows Instruction No. 17.33 of the *Ninth Circuit*

9    *Manual of Model Civil Jury Instructions* ("*Model*") in both form and substance; whereas, Arista's
     proposed instruction deviates in significant ways.  Arista's proposed instruction on infringer's

10   profits misstates the law and seeks to confuse the burden-shifting approach of 17 U.S.C. § 504(b)
     and related precedent.  The Court should follow the *Model* and the Ninth Circuit's words, quoted

11   in large part in Cisco's proposed instruction, and reject Arista's confusing and incorrect proposal,

12   which will only lead the jury into error.

13           *First*, Arista's proposed instruction demonstrates the importance of a clear jury instruction
     on exactly what will suffice for Cisco to satisfy its initial burden of proof to establish Arista's

14   gross revenues.  As the Court noted in its Order on Daubert Motions (at 16):  "Importantly, Arista
     also acknowledged to the Court that for establishing a royalty base, Cisco could satisfy its initial

15   burden by showing that the direct profits are derived from the infringing products."  It is
     undisputed that Arista's gross revenues at issue are all revenues directly from sales made by Arista

16   of Arista's allegedly infringing switches.  Thus, there is no legitimate dispute that those gross
     revenues satisfy any causal nexus requirement for infringer's profits.  Nevertheless, Arista

17   continues to seek to obfuscate this issue in the apparent hope that the jury will read into the phrase

18   "causal nexus" a requirement that does not exist.  The Court should adopt Cisco's proposed
     instructions, based on the *Model*, the Court's Daubert Order, and controlling Ninth Circuit

19   precedent, in order that the jury understand that "Cisco may satisfy its burden by showing that the
     profits it seeks to recover derive directly from sales of the infringing products."  *See, e.g.,* Order

20   on Daubert Motions at 16 ("Assuming that Cisco is seeking only direct profits, Cisco must at least
     show that the profits it seeks to recover derive directly from the infringing products."); *Polar Bear*

21   *Prods, Inc. v. Timex Corp.,* 384 F.3d 700, 708 (9th Cir. 2004); *Brocade Commc'ns Sys. v. A10*

22   *Networks, Inc.,* 2013 WL 831528, at *6 (N.D. Cal. Jan. 10, 2013) (noting that, to recover
     disgorgement of direct profits, a plaintiff may satisfy the "causal link" requirement by showing the

23   "gross revenues from the infringing product").  In contrast, Arista's proposed instruction would
     instruct the jury that it "may make an award of Arista's profits attributable to sales of the

24   infringing product only if you find that Cisco showed a causal nexus between the profits it seeks
     and the copyright infringement," but does not explain what would be sufficient to show a causal

25   nexus.  To sharpen its point, Arista reiterates:  "If Cisco fails to establish a causal nexus between

26   _____

27       [151]   *Frank Music Corp. v. MGM, Inc.,* 772 F.2d 505, 514 (9th Cir. Cal. 1985) ("Any doubt as
             to the computation of costs or profits is to be resolved in favor of the plaintiff.").

28

the profits it seeks and the infringement, it is not entitled to any of Arista's profits." But, again, Arista offers no explanation of what is sufficient for Cisco to establish a causal nexus, let alone that it is sufficient to show that the gross revenue is revenue solely from sales of the allegedly infringing switches and nothing else – a fact which is undisputed.

*Second*, in following the *Model*, Cisco's proposed instruction accurately reflects the careful allocation of evidentiary burdens outlined in 17 U.S.C. § 504(b) and related precedent. Abandoning the *Model*, Arista's proposal confusingly has a paragraph referring to the determination of Arista's gross revenue by Cisco and subtraction of expenses by Arista ***after*** a paragraph regarding the apportionment of profits by Arista. Arista's proposal should be rejected because it does not reflect § 504(b)'s balance and will not serve to accurately instruct the jury on the law.

*Third*, in its fourth paragraph, Arista proposes to instruct the jury: "If it is clear that not all of the profits are attributable to the infringing material, Arista is not required to establish with certainty the portion attributable to the non-infringing elements." That is wrong because it is Arista's burden to apportion profits. According to the Ninth Circuit: "[O]nce the causal nexus is shown [by Cisco], the ***infringer*** bears the burden of apportioning profits that were ***not the result of infringement***." *Polar Bear*, 384 F.3d at 711 (emphasis added); *see id.* at 712-13 ("[The copyright holder] was not required to apportion the gross profit figure … .Under § 504(b), the primary responsibility for further apportionment of profits fell to [the infringer].");  *see Nintendo of Am., Inc. v. Dragon Pac. Int'l*, 40 F.3d 1007, 1012 (9th Cir. 1994) ("where infringing and noninfringing elements of a work cannot be readily separated, all of a defendant's profits should be awarded to a plaintiff").

*Fourth*, Arista's proposed instruction in its fourth paragraph based on an inaccurate and incomplete paraphrasing of *Cream Records, Inc. v. Jos. Schlitz Brewing Co.*, 754 F.2d 826, 829 (9th Cir. 1985), should be rejected because it misstates the law. Arista proposes: "If the evidence suggests some division that may rationally be used to decide what portion of the profits are due to factors other than infringement, it is your duty to do so." In fact, the Ninth Circuit in *Cream Records* stated that it was the Court's duty to make some apportionment where it is clear that not all of the profits are attributable to the infringing material and the evidence suggests some division:

> where it is clear, as it is in this case, that not all of the profits are attributable to the infringing material, the copyright owner is not entitled to recover all of those profits merely because the infringer fails to establish with certainty the portion attributable to the non-infringing elements. In cases such as this where an infringer's profits are not entirely due to the infringement, and the evidence suggests some division which may rationally be used as a springboard it is the duty of the court to make some apportionment.

754 F.2d at 828-29. At a minimum, it is incorrect to instruct the jury that they have a duty absent any finding that not all of the profits are attributable to the infringing material. Moreover, Arista's proposed instruction misrepresents and overemphasizes the jury's "duty" to apportion, even if Arista has not met its burden, ignoring the Supreme Court's caution in *Harper & Row*: "With respect to apportionment of profits flowing from a copyright infringement, this Court has held that an infringer who commingles infringing and noninfringing elements must abide the consequences,

-139-

Case No. 5:14-cv-5344-BLF

1    unless [the infringer] can make a separation of the profits so as to assure to the injured party all

2    that justly belongs to him." *Harper & Row*, 471 U.S. at 567.  In sum, it is wrong to instruct the
     jury that they have a "duty" to apportion profits even if they conclude that Arista has failed to

3    carry its burden to prove that some of its profits are attributable to factors other than infringing the
     copyrighted work.[152]

4         *Fifth*, in addition to the *Model* instructions, Cisco proposes a final paragraph instructing the

5    jury more specifically on the standards of proof.  Consistent with controlling precedent, Cisco's
     instructions provide that neither Arista's profits or any apportionment of Arista's profits be

6    calculated with "mathematical or absolute exactness."  *See, e.g., Sheldon v. Metro-Goldwyn
     Pictures Corp.*, 309 U.S. 390, 408 (1940) ("what is required is not mathematical exactness but

7    only a reasonable approximation").  Similarly, the jury should be instructed that the law requires
     "a reasonable approximation" of an infringer's profits, *id.*, any doubt as to the computation of

8    costs or profits is to be resolved in favor of Cisco, s*ee Frank Music Corp. v. MGM, Inc.*, 772

9    F.2d 505, 514 (9th Cir. Cal. 1985) ("Any doubt as to the computation of costs or profits is to be
     resolved in favor of the plaintiff."), and any apportionment should be reasonable and just, *id.* at

10   402 ("apportionment of profits can be had where it is clear that all the profits are not due to the use
     of the copyrighted material, and the evidence is sufficient to provide a fair basis of division so as

11   to give to the copyright proprietor all the profits that can be deemed to have resulted from the use
     of what belonged to him").

12

13

14

15

16

17

18

19

20

21

22

23

24

25   _____

26   [152]  *See also Frank Music Corp. v. Metro-Goldwyn-Mayer Inc.*, 886 F.2d 1545, 1549 (9th Cir.
     1989) ("We will not accept the experts' testimony at its face value; we must made an award which

27   by no possibility shall be too small.  It is not our best guess that must prevail, but a figure which
     will favor the plaintiffs in every reasonable chance of error."); *id.* ("In performing the

28   apportionment, the benefit of the doubt must always be given to the plaintiff, not the defendant.").

**DISPUTED: Arista's Final Instruction No. 66 re Copyright—Arista's Profits**[153]

If you conclude that Arista infringed Cisco's copyrights, in addition to actual damages, Cisco is entitled to any of Arista's profits attributable to the infringement.[154] You may not include in an award of profits any amount that you took into account in determining actual damages.[155]

You may make an award of Arista's profits attributable to sales of the infringing product only if you find that Cisco showed a causal nexus between the profits it seeks and the copyright infringement.[156] If Cisco fails to establish a causal nexus between the profits it seeks and the infringement, it is not entitled to any of Arista's profits.

If Cisco establishes a causal nexus between the profits it seeks and the infringement, the burden shifts to Arista to prove deductible expenses and the portion of its profit attributable to factors other than infringing the copyrighted work.[157]

To the extent that Arista proves that some of its profits are attributable to factors other than infringing the copyrighted work, you should subtract those profits.[158] If it is clear that not all of the profits are attributable to the infringing material, Arista is not required to establish with certainty the portion attributable to the non-infringing elements.[159] If the evidence suggests some

---

[153]  Ninth Circuit Model Jury Instruction, 17.33.

[154] Ninth Circuit Model Jury Instruction, 17.33.

[155] Ninth Circuit Model Jury Instruction, 17.33.

[156] Ninth Circuit Model Jury Instruction, 17.33; Order on Daubert Motions at 16.

[157] 17 U.S.C. § 504(b); *Cream Records, Inc. v. Jos. Schlitz Brewing Co.*, 754 F.2d 826, 829 (9th Cir. 1985); Polar Bear Prods. v. Timex Corp., 384 F.3d 700, 711 (9th Cir. 2004); Order on Daubert Motions at 14.

[158] 17 U.S.C. § 504; *see also Cream Records, Inc. v. Jos. Schlitz Brewing Co.*, 754 F.2d 826, 828-29 (9th Cir. 1985) ("Although the statute imposes upon the infringer the burden of showing the elements of profit attributable to factors other than the copyrighted work, 17 U.S.C. § 504(b), nonetheless where it is clear, as it is in this case, that not all of the profits are attributable to the infringing material, the copyright owner is not entitled to recover all of those profits merely because the infringer fails to establish with certainty the portion attributable to the non-infringing elements. In cases such as this where an infringer's profits are not entirely due to the infringement, and the evidence suggests some division which may rationally be used as a springboard it is the duty of the court to make some apportionment.").

[159] *Cream Records, Inc. v. Jos. Schlitz Brewing Co.*, 754 F.2d 826, 828-29 (9th Cir. 1985) ("Although the statute imposes upon the infringer the burden of showing the elements of profit

THIRD AMENDED UNDISPUTED AND DISPUTED PROPOSED JURY INSTRUCTIONS
1126417.05

1  division that may rationally be used to decide what portion of the profits are due to factors other

2  than infringement, it is your duty to do so.[160]

3      Arista's profit is determined by starting with Arista's gross revenue that Cisco has proved

4  has a causal relationship with the infringement, and then subtracting the expenses incurred in

5  producing that revenue.  The expenses to be subtracted from that gross revenue are all operating

6  costs, overhead costs and production costs incurred in producing it.  Arista has the burden of

7  proving its expenses by a preponderance of the evidence.

8

9  **Arista's Position:**

10     Cisco's "infringer's profits" instruction is misleading and prejudicial.  Cisco attempts to

11  disguise its burden, failing to state that it bears the burden of showing a causal nexus between the
   profits it seeks and the copyright infringement.  As this Court recently explained in its Order on
   Daubert Motions, "courts confronted with the issue of 'causal nexus' in copyright cases have held

12  plaintiffs to the initial burden of establishing 'causal nexus' regardless of whether profits are direct

13  or indirect."  Order on *Daubert* Motions at 15.

14     Cisco's instruction also misstates the law.  It states that "Arista's profits are determined by

15  subtracting all deductible expenses from Arista's gross revenue."  That is incorrect.  Instead, as
   Arista's instruction properly explains, its profit is determined by deducting deductible expenses

16  ***and*** the portion of its profit attributable to factors other than infringing the copyrighted work.  *See
   Cream Records, Inc. v. Jos. Schlitz Brewing Co.,* 754 F.2d 826, 829 (9th Cir. 1985).  This

17  instruction is critical in this case, where the vast majority of Arista's profits have nothing to do

18  with the asserted CLI elements.

   _____

19  attributable to factors other than the copyrighted work, 17 U.S.C. § 504(b), nonetheless where it is

20  clear, as it is in this case, that not all of the profits are attributable to the infringing material, the
   copyright owner is not entitled to recover all of those profits merely because the infringer fails to

21  establish with certainty the portion attributable to the non-infringing elements. In cases such as
   this where an infringer's profits are not entirely due to the infringement, and the evidence suggests

22  some division which may rationally be used as a springboard it is the duty of the court to make
   some apportionment.").

23  [160] *Cream Records, Inc. v. Jos. Schlitz Brewing Co.*, 754 F.2d 826, 828-29 (9th Cir. 1985)

24  ("Although the statute imposes upon the infringer the burden of showing the portion of profit
   attributable to factors other than the copyrighted work, 17 U.S.C. § 504(b), nonetheless where it is

25  clear, as it is in this case, that not all of the profits are attributable to the infringing material, the
   copyright owner is not entitled to recover all of those profits merely because the infringer fails to

26  establish with certainty the portion attributable to the non-infringing elements. In cases such as
   this where an infringer's profits are not entirely due to the infringement, and the evidence suggests

27  some division which may rationally be used as a springboard it is the duty of the court to make

28  some apportionment.").

1
2
3
4
5
6
7

        Arista's proposed instruction states the law accurately and clearly.  It explains that Cisco bears the burden to show a causal nexus between the profits it seeks and the copyright infringement, Court's Order on Daubert Motions at 16, and that if Cisco meets that burden, the burden shifts to Arista to prove deductible expenses and the portion of its profit attributable to factors other than the alleged infringement. *Cream Records, Inc.*, 754 F.2d at 829.   It then explains the duty to apportion profits where possible.  For example, it explains that, "[i]f the evidence suggest some division [in Arista's profits] that may rationally be used to decide what portion of the profits are due to factors other than infringement, it is [the jury's] duty to do so." *Orgel v. Clark Boardman C*o., 301 F.2d 119, 121 (2d Cir. 1962) ("In cases such as this where an infringer's profits are not entirely due to the infringement, and the evidence suggests some division which may rationally be used as a springboard it is the duty of the court to make some apportionment.").

8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**DISPUTED: Cisco's Final Instruction No. 67 re Copyright—Infringer's Profits—Willfulness[161]**

[To be used only if the Court rules that a willfulness instruction will be given.]

I have instructed you that deductible expenses are those expenses incurred by Arista that actually helped to produce the revenues at issue, and that Arista has the burden of proving its expenses by a preponderance of the evidence. In deciding whether or not to deduct costs proven by Arista in making the infringer's profits calculation, you may take into account whether or not Arista is a willful infringer. If you find that Arista is a willful infringer, you may choose not to deduct some or all of Arista's costs.

**Cisco's Position:**

Only Cisco proposes an instruction for Disputed Final Instruction No. 67. Cisco proposes this instruction because, pursuant to prevailing case law, the Model Jury Instructions for the Ninth Circuit, and copyright law treatises, the defendant should not be permitted to deduct its overhead expenses from the infringer's profits where the copyright infringement is found to be willful. "[D]eductions of defendant's expenses are denied where the defendant's infringement is willful or deliberate." Instruction No. 17.36, *Ninth Circuit Manual of Model Civil Jury Instructions* (2007) (comment). This Court has expressed a preference in following the model jury instructions in its Pretrial Standing Order and there is no reason to deviate from this practice here.

Although the Ninth Circuit has not ruled on which specific expenses are deductible where the infringement is found to be willful, Ninth Circuit case law suggests that it may limit the deduction of overhead expenses when the infringement is willful. *See Frank Music Corp. v. MGM, Inc.*, 772 F.2d 505, 515 (9th Cir. 1985) ("[a] portion of an infringer's **overhead** properly may be deducted from gross revenues to arrive at profits, ***at least where the infringement was not willful***, conscious, or deliberate." (emphasis added) (decided under 1909 Act); *Three Boys Music Corp. v. Bolton*, 212 F.3d 477, 487-88 (9th Cir. 2000) (in allocating profits, "non-willful

---

[161] Instruction No. 17.36, Comment, *Ninth Circuit Manual of Model Civil Jury Instructions* (2007) ("Generally, deductions of defendant's expenses are denied where the defendant's infringement is willful or deliberate."); *see also Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc.*, 772 F.2d 505, 515 (9th Cir. 1985) ("A portion of an infringer's overhead properly may be deducted from gross revenues to arrive at profits, at least where the infringement was not willful, conscious, or deliberate."); *Three Boys Music Corp. v. Bolton*, 212 F.3d 477, 488 (9th Cir. 2000) ("non-willful infringers [may be allowed to] deduct the income taxes and management fees that they paid relating to the infringing song").

infringers" were entitled to deduct from damage assessment income taxes and management fees actually paid).

The leading copyright treatises also support denying the deduction of overhead expenses where the infringement is found to be willful. Copyright expert William Patry recognizes the need to deny *willful* copyright infringers the deduction of overhead expenses as a disincentive against the taking of a "calculated risk" that the worst that happens if they are caught is they give back the profits, while still deducting the costs of the infringement:

> The lack of an adequate disincentive to infringe through mere disgorgement of profits is a more serious issue. For nonwillful infringers, no such disincentive is presumably required since the infringement was not motivated by a desire to reap where one hasn't sown. For willful infringers, though, some take a calculated risk that they will not be caught, but that if they are, the only penalty will be to pay back profits while still deducting the costs of the infringement: not much of a disincentive. Under such circumstances, denying deductions is scant warning to others that the penalty for not negotiating is not worth the price, but even if a warning is possible, to be effective, the penalty would have to be commonly, if not uniformly, applied.

Patry on Copyright § 22:143; *see also* Nimmer on Copyright § 14.03[C][2]-[3] ("some courts appear to deny a deduction of overhead"); *cf. Oracle Am., Inc. v. Google Inc*, 131 F. Supp. 3rd 946, 951 (N.D. Cal. 2015). Consistent with the case law, model jury instructions, and the Patry treatise, the Ninth Circuit is most likely to preclude at least some overhead expense deductions for infringer's profits where the infringement is willful. Thus, the jury should determine whether Arista's infringement was willful and the jury should be instructed consistent with the above regarding expenses.

1

2

3

**DISPUTED: Arista's Position on Cisco's Final Instruction No. 67 re Copyright—Arista's**

**Profits—Willfulness**

4          Arista's position is that no such instruction should be given.

5

6   **Arista's Position:**

7          Arista objects to a jury instruction on willful copyright infringement.  As set forth in

8   Arista's supplemental brief regarding copyright willfulness (ECF No. 636), the jury should not be
    instructed on willful infringement.

9          Contrary to Cisco's assertion, a finding of willful copyright infringement does not prevent

10  Arista from deducting expenses (beyond income and excess profit taxes) for purposes of
    calculating disgorgement.  There is no Ninth Circuit support for altering the calculation of

11  deductible expenses where infringement is willful, ***with the exception*** of income and excess profit
    taxes.  *Oracle v. Google*, 131 F. Supp. 3d 946, 951 (N.D. Cal. 2015) ("[A]n examination of the

12  decisional law [in the Ninth Circuit] on this issue finds no authoritative support for altering the
    calculus of 'deductible expenses' where the infringement at issue was willful, except as to income

13  and excess profits taxes."); *see also ZZ Top v. Chrysler Corp.*, 70 F. Supp. 2d 1167, 1168 (W.D.

14  Wash. 1999) ("Although plaintiffs assert that the preclusion of overhead costs is an accepted
    practice where the defendant's infringement was willful, the Ninth Circuit has not yet adopted

15  such a rule.").  While a number of cases support a disallowance of a deduction of income taxes for
    a willful infringer, *see, e.g., Three Boys Music Corp. v. Bolton*, 212 F.3d 477, 487 (9th Cir. 2000),

16  any that reference a possible expansion of that disallowance are "unpersuasive." *Oracle*, 131 F.
    Supp. 3d at 954.  In *Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc.*, 772 F.2d 505, 515 (9th

17  Cir. 1985), which Cisco relies upon, there is one line of dictum referencing the issue: "[a] portion

18  of an infringer's overhead properly may be deducted from gross revenues to arrive at profits, at
    least where the infringement was not willful, conscious, or deliberate."  The Court never holds that

19  a defendant found to willfully infringe cannot deduct expenses, at least because the infringement
    there was not willful.

20

21         In this case, Arista has never elected to seek a deduction for its income or excess profit

22  taxes, and as set forth in the pretrial conference statement, it will not do so.  ECF No. 593 at 17-
    18.  Thus, a finding of copyright willfulness has no impact on Arista's calculation of deductible

23  expenses.  There is no need to instruct the jury on willful infringement, and doing so would only
    confuse them.

24

25

26

27

28

1    **STIPULATED: Preliminary Instruction No. 68 re Patent—What A Patent Is And How One**

2    **Is Obtained**[162]

3        This case also involves a dispute relating to a United States patent.  Before summarizing

4    the positions of the parties and the legal issues involved in the dispute, let me take a moment to

5    explain what a patent is and how one is obtained.

6        Patents are granted by the United States Patent and Trademark Office (sometimes called

7    "the PTO").  The process of obtaining a patent is called patent prosecution.  A valid United States

8    patent gives the patent owner the right to prevent others from making, using, offering to sell, or

9    selling the patented invention within the United States, or from importing it into the United States,

10   during the term of the patent without the patent holder's permission.  A violation of the patent

11   owner's rights is called infringement.  The patent owner may try to enforce a patent against

12   persons believed to be infringers by a lawsuit filed in federal court.

13       To obtain a patent one must file an application with the PTO.  The PTO is an agency of the

14   federal government and employs trained examiners who review applications for patents.  The

15   application includes what is called a "specification," which must contain a written description of

16   the claimed invention telling what the invention is, how it works, how to make it and how to use it

17   so others skilled in the field will know how to make or use it.  The specification concludes with

18   one or more numbered sentences.  These are the patent "claims."  When the patent is eventually

19   granted by the PTO, the claims define the boundaries of its protection and give notice to the public

20   of those boundaries.

21       After the applicant files the application, a PTO patent examiner reviews the patent

22   application to determine whether the claims are patentable and whether the specification

23   adequately describes the invention claimed.  In examining a patent application, the patent

24   examiner reviews records available to the PTO for what is referred to as "prior art."  The examiner

25   also will review prior art if it is submitted to the PTO by the applicant.  In general, prior art

26   includes things that existed before the claimed invention, that were publicly known, or used in a

---

[162]  N.D. Cal. Model Patent Jury Instruction A.1 (July 16, 2015).

1    publicly accessible way in this country, or that were patented or described in a publication in any

2    country.  The examiner considers, among other things, whether each claim defines an invention

3    that is new, useful, and not obvious in view of the prior art.  A patent lists the prior art that the

4    examiner considered; this list is called the "cited references."

5            After the prior art search and examination of the application, the patent examiner then

6    informs the applicant in writing what the examiner has found and whether any claim is patentable,

7    and thus will be "allowed."  This writing from the patent examiner is called an "office action."  If

8    the examiner rejects the claims, the applicant then responds and sometimes changes the claims or

9    submits new claims.  This process, which takes place only between the examiner and the patent

10   applicant, may go back and forth for some time until the examiner is satisfied that the application

11   and claims meet the requirements for a patent.  The papers generated during this time of

12   communicating back and forth between the patent examiner and the applicant make up what is

13   called the "prosecution history." All of this material becomes available to the public no later than

14   the date when the patent issues.

15           The fact that the PTO grants a patent does not necessarily mean that any invention claimed

16   in the patent, in fact, deserves the protection of a patent.  For example, the PTO may not have had

17   available to it all the information that will be presented to you.

18

19

20

21

22

23

24

25

26

27

28

1126417.05

1    **STIPULATED: Preliminary Instruction No. 69 re Patent—Summary Of Patent Claim**

2    **Contentions[163]**

3        I will now instruct you on Cisco's patent claim.

4        I will first give you a summary of each side's contentions in this case for the patent claim.

5    I will then tell you what each side must prove to win on each of its contentions.   Cisco seeks

6    money damages from Arista for allegedly infringing the '526 patent by making, importing, using,

7    selling and/or offering for sale products and services that Cisco argues are covered by claims 1 and

8    14 of the '526 patent.  These are referred to as the Asserted Claims of the '526 patent.  Cisco also

9    argues that Arista has actively induced infringement of these claims of the '526 patent by others

10   and contributed to the infringement of these claims of the '526 patent by others.  The products and

11   services that are alleged to infringe are Arista switches and associated products and services, that

12   incorporate EOS, EOS+, vEOS network operating systems.

13       Arista denies that it has infringed the asserted claims of the patent.

14       Your job is to decide whether the asserted claims of the '526 patent have been infringed.  If

15   you decide that any claim of the patent has been infringed, you will then need to decide any

16   money damages to be awarded to Cisco to compensate it for the infringement.

17       You will also need to make a finding as to whether the infringement was willful.  If you

18   decide that any infringement was willful, that decision should not affect any damage award you

19   make.  I will take willfulness into account later.

20

21

22

23

24

25

26

27   _____

28   [163] *"B.1. Summary of Contentions,"* N.D. Cal. Model Patent Jury Instructions.

**STIPULATED: Final Instruction No. 70 re Patent—Interpretation Of Patent Claims**[164]

Before you decide whether Arista has infringed the claims of the patent, you will need to understand the patent claims. The patent claims are numbered sentences at the end of the patent that describe the boundaries of the patent's protection. It is my job as judge to explain to you the meaning of any language in the claims that needs interpretation.

I have interpreted the meaning of some of the language in the patent claims involved in this case. You must accept those interpretations as correct. These interpretations were handed to you at the start of the trial. For any claim term for which I have not provided you a definition, you should apply the plain and ordinary meaning of that term, as understood by one of ordinary skill in the art. My interpretation of the language should not be taken as an indication that I have a view regarding the issue of infringement. The decision regarding infringement is yours to make.

I have made the following claim interpretations of terms found within the Asserted Claims:

For the phrase "management programs" in the '526 patent claims, I instruct you to interpret that to mean the following: "tools or agents configured to execute user-directed commands having their own respective command formats that provide management functions."

For the phrase "generic command" in the '526 patent claims, I instruct you to interpret that to mean the following: "command that provides an abstraction of the tool-specific command formats and syntax, enabling a user to issue the command based on the relative functions, as opposed to the specific syntax for a corresponding tool."

For the phrase "command parse tree" in the '526 patent claims, I instruct you to interpret that to mean the following: "a hierarchal data structure."

The following phrase appears in certain claims of the '526 patent: "the command parse tree having elements each specifying at least one corresponding generic command component and a

---

[164] "*B.2. Claim Construction,*" N.D. Cal. Model Patent Jury Instructions, *citing Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 384-391 (1996); *Phillips v. AWH Corp.*, 415 F.3d 1303, 1324 (Fed. Cir. 2005); *Pitney Bowes, Inc. v. Hewlett-Packard Co.*, 182 F.3d 1298, 1304-13 (Fed. Cir. 1999); *Cybor Corp. v. FAS Techs.*, 138 F.3d 1448 (Fed. Cir. 1998) (*en banc*); *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 977 (Fed. Cir. 1995) (*en banc*).

1  corresponding at least one command action value." Within that phrase, for the term "command

2  action value," I instruct you to interpret that to mean "a value that identifies a prescribed

3  command." For the larger phrase, I instruct you to interpret it to mean "the command parse tree

4  having elements, such that each element specifies at least one command action value for each

5  generic command component."

1    **STIPULATED: Final Instruction No. 72 re Patent—Patent Infringement: Burden Of**

2    **Proof[165]**

3        I will now instruct you on the rules you must follow in deciding whether Cisco has proven

4    that Arista has infringed one or more of the asserted claims of the '526 patent.  To prove

5    infringement of any claim, Cisco must persuade you that it is more likely than not that Arista has

6    infringed that claim.

---

26    [165] "*B.3.1,*" N.D. Cal. Model Patent Jury Instructions, citing *Warner-Lambert Co. v. Teva*

27    *Pharm. USA, Inc.,* 418 F.3d 1326, 1341 n.15 (Fed. Cir. 2005); *Seal-Flex, Inc. v. Athletic Track and Court Constr.,* 172 F.3d 836, 842 (Fed. Cir. 1999); *Morton Int'l, Inc. v. Cardinal Chem. Co.*,

28    5 F.3d 1464, 1468-69 (Fed. Cir. 1993).

1    **STIPULATED: Final Instruction No. 73 re Patent—Direct Infringement of a Patent[166]**

2        A patent's claims define what is covered by the patent.  A product or method directly

3    infringes a patent if it is covered by at least one claim of the patent.

4        Deciding whether a claim has been directly infringed is a two-step process.  The first step

5    is to decide the meaning of the patent claim.  I have already made this decision, and I have already

6    instructed you as to the meaning of the asserted patent claims.  The second step is to decide

7    whether Arista has made, used, sold, offered for sale or imported within the United States a

8    product or service covered by a claim of the '526 patent.  If it has, it infringes.  You, the jury,

9    make this decision.

10        You must consider each of the asserted claims of the patent individually, and decide

11    whether Arista's products or services infringe that claim.

12        You have heard evidence about both Cisco's commercial products and Arista's accused

13    products and services.  However, in deciding the issue of infringement you may not compare

14    Arista's accused products and services to Cisco's commercial products.  Rather, you must

15    compare Arista's accused products and services to the claims of the '526 patent when making your

16    decision regarding infringement.

17        Whether or not Arista knew its products or services infringed or even knew of the patent

18    does not matter in determining direct infringement.

19        There are two ways in which a patent claim may be directly infringed.  A claim may be

20    "literally" infringed, or it may be infringed under the "doctrine of equivalents."  The following

21    instructions will provide more detail on these two types of direct infringement.

22

23

24    _____

25        [166] "*B.3.2,*" N.D. Cal. Model Patent Jury Instructions, citing 35 U.S.C. § 271; *Warner-*
*Jenkinson Co., Inc. v. Hilton Davis Chem. Co.*, 520 U.S. 17 (1997); *Cross Med. Prods., Inc. v.*
26    *Medtronic Sofamor Danek, Inc.*, 424 F.3d 1293, 1310-11 (Fed. Cir. 2005); *DeMarini Sports, Inc.*
*v. Worth, Inc.*, 239 F.3d 1314, 1330-34 (Fed. Cir. 2001); *Seal-Flex, Inc. v. Athletic Track and*
27    *Court Constr.*, 172 F.3d 836, 842 (Fed. Cir. 1999); *Carroll Touch, Inc. v. Electro Mech. Sys., Inc.*,
28    15 F.3d 1573, 1576 (Fed. Cir. 1993).

1    <u>**STIPULATED: Final Instruction No. 74 re Patent—Literal Infringement Of A Patent**</u>[167]

2          To decide whether Arista's products and services literally infringe a claim of the '526

3    patent, you must compare that product or service with the patent claim and determine whether

4    every requirement of the claim is included in that product or service.  If so, Arista's product or

5    service literally infringes that claim.  If, however, Arista's product or service does not have every

6    requirement in the patent claim, Arista's product or service does not literally infringe that claim.

7    You must decide literal infringement for each asserted claim separately.

8          If the patent claim uses the term "comprising," that patent claim is to be understood as an

9    open claim.  An open claim is infringed as long as every requirement in the claim is present in

10   Arista's product or service. The fact that Arista's product or service also includes other parts or

11   steps will not avoid infringement, as long as it has every requirement in the patent claim.

12

13

14

15

16

17

18

19

20

21

22

23

24

---

25   [167] "*B.3.3,*" N.D. Cal. Model Patent Jury Instructions, citing *MicroStrategy Inc. v. Business Objects, S.A.*, 429 F.3d 1344, 1352-53 (Fed. Cir. 2005); *Netword, LLC v. Centraal Corp.,* 242

26   F.3d 1347, 1353 (Fed. Cir. 2001); *Cole v. Kimberly-Clark Corp.,* 102 F.3d 524, 532 (Fed. Cir. 1996); *Ecolab, Inc. v. FMC Corp.,* 535 F.3d 1369 (Fed. Cir. 2009); *Cross Med. Prods. v.*

27   *Medtronic Sofamor Danek*, 424 F.3d 1293 (Fed. Cir. 2005); *BMC Res., Inc. v. Paymentech, L.P.,*

28   498 F.3d 1373 (Fed. Cir. 2007).

1    **STIPULATED: Final Instruction No. 75 re Patent—Patent Infringement Under The**

2    **Doctrine Of Equivalents[168]**

3        If you decide that Arista's products or services do not literally infringe an asserted patent

4    claim, you must then decide whether those products or services infringe the asserted claim under

5    what is called the "doctrine of equivalents."

6        Under the doctrine of equivalents, the product or service can infringe an asserted patent

7    claim if it includes parts or steps that are identical or equivalent to the requirements of the claim.

8    If the product or service is missing an identical or equivalent part or step to even one requirement

9    of the asserted patent claim, the product or service cannot infringe the claim under the doctrine of

10   equivalents.  Thus, in making your decision under the doctrine of equivalents, you must look at

11   each individual requirement of the asserted patent claim and decide whether the product or service

12   has either an identical or equivalent part or step to that individual claim requirement.

13       A part or step of a product or service is equivalent to a requirement of an asserted claim if

14   a person of ordinary skill in the field would think that the differences between the part or step and

15   the requirement were not substantial as of the time of the alleged infringement.

16       Changes in technique or improvements made possible by technology developed after the

17   patent application is filed may still be equivalent for the purposes of the doctrine of equivalents if

18   it still meets the other requirements of the doctrine of equivalents set forth in this instruction.

19       One way to decide whether any difference between a requirement of an asserted claim and

20   a part or step of the product or service is not substantial is to consider whether, as of the time of

21   the alleged infringement, the part or step of the product or service performed substantially the

22   same function, in substantially the same way, to achieve substantially the same result as the

23

24   [168] "*B.3.4,*" N.D. Cal. Model Patent Jury Instructions, citing *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.,* 535 U.S. 722 (2002); *Warner-Jenkinson Co., Inc. v. Hilton Davis Chem.*

25   *Co.*, 520 U.S. 17 (1997); *Graver Tank & Mfg. Co. v. Linde Air Prods. Co.*, 339 U.S. 605, 609 (1950); *Abraxis Bioscience, Inc. v. Mayne Pharma (USA) Inc.*,  467 F.3d 1370, 1379-82 (Fed. Cir.

26   2006); *Pfizer, Inc. v. Teva Pharms., USA, Inc.*, 429 F.3d 1364, 1378 (Fed. Cir. 2005); *Johnston & Johnston Assoc. v. R.E. Service Co.*, 285 F.3d 1046 (Fed. Cir. 2002) (*en banc*); *Multiform*

27   *Desiccants, Inc. v. Medzam, Ltd.*, 133 F.3d 1473, 1480 (Fed. Cir. 1998); *Dolly, Inc. v. Spalding & Evenflo Cos.*, 16 F.3d 394, 397 (Fed. Cir. 1994).

28

1    requirement in the patent claim.

2          In deciding whether any difference between a claim requirement and the products or

3    services is not substantial, you may consider whether, at the time of the alleged infringement,

4    persons of ordinary skill in the field would have known of the interchangeability of the part or step

5    with the claimed requirement.  The known interchangeability between the claim requirement and

6    the part or step of the products or methods is not necessary to find infringement under the doctrine

7    of equivalents.  However, known interchangeability may support a conclusion that the difference

8    between the part or step in the products or methods and the claim requirement is not substantial.

9    The fact that a part or step of the products or methods performs the same function as the claim

10    requirement is not, by itself, sufficient to show known interchangeability.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

THIRD AMENDED UNDISPUTED AND DISPUTED PROPOSED JURY INSTRUCTIONS

1126417.05

1

**STIPULATED: Final Instruction No. 77 re Patent—Contributory Patent Infringement[169]**

2

Cisco also contends that Arista has contributed to infringement by another. Contributory

3 infringement may arise when someone supplies something that is used to infringe one or more of

4 the patent claims. Contributory infringement is a form in indirect infringement.

5

In order for there to be contributory infringement by Arista, someone other than Arista

6 must directly infringe a claim of the '526 patent; if there is no direct infringement by anyone, there

7 can be no contributory infringement.

8

If you find someone has directly infringed the '526 patent, then contributory infringement

9 exists if:

10

    1.  Arista supplied an important component of the infringing part of the product or service;

11

    2.  The component is not a common component suitable for non-infringing use; and

12

    3.  Arista supplied the component with the knowledge of the '526 patent and knowledge

13

        that the component was especially made or adapted for use in an infringing manner.

14

15 A "common component suitable for non-infringing use" is a component that has uses other than as

16 a component of the patented product or other than in the patented method, and those other uses are

17 not occasional, farfetched, impractical, experimental, or hypothetical.

18

19

20

21

22

23

24

25

26

27

28

**STIPULATED: Final Instruction No. 78 re Patent—Inducing Patent Infringement**[170]

Cisco argues that Arista has actively induced another to infringe the '526 patent. In order for Arista to have induced infringement, Arista must have induced another to directly infringe a claim of the '526 patent; if there is no direct infringement by anyone, there can be no induced infringement. Induced infringement is a form of indirect infringement.

In order to be liable for inducing infringement, Arista must have:

1. Intentionally taken action that actually induced direct infringement;

2. Been aware of the '526 patent; and

3. Known that the acts it was causing would infringe the patent.

Arista may be considered to have known that the acts it was causing would infringe the '526 patent if it subjectively believed there was a high probability that the direct infringer's product or method was patented and nevertheless deliberately took steps to avoid learning that fact, in other words, willfully blinded itself to the infringing nature of the direct infringer's acts.

---

[170] "*B.3.9,*" N.D. Cal. Model Patent Jury Instructions, citing 35 U.S.C. § 271(b); *Commil USA, LLC v. Cisco Systems, Inc.,* 135 S.Ct. 1920, 1928-31 (2015); *Global-Tech Appliances, Inc. et. al. v. SEB S.A.,* 131 S.Ct. 2060, 2070-71 (2011).

Case No. 5:14-cv-5344-BLF

THIRD AMENDED UNDISPUTED AND DISPUTED PROPOSED JURY INSTRUCTIONS

1126417.05

**DISPUTED: Cisco's Final Instruction No. 79 re Patent—Willful Patent Infringement[171]**

In this case, Cisco argues that Arista willfully infringed Cisco's '526 Patent. To prove willful infringement against Arista, Cisco must first persuade you that Arista infringed a valid claim of Cisco's patent. The requirements for proving such infringement were discussed in my prior instructions.

To prove willful infringement of a patent, Cisco must persuade you by a preponderance of the evidence that Arista had knowledge of the patent at issue and acted in bad faith, wantonly, maliciously, deliberately, consciously wrongfully, flagrantly, or with reckless disregard of any of the Asserted Claims of any of the Cisco Patents. You must base your verdict on the knowledge and actions of Arista at the time the infringement happened. Infringement alone is not enough to prove willfulness and mere knowledge of the '526 Patent at the time of infringement is not enough to prove willfulness.

You should consider all of the circumstances including the motive or intent of Arista in developing and selling the accused products, whether Arista knew or should have known that its conduct was unreasonably risky and whether Arista had a reasonable belief at the time of the alleged infringement that its products did not infringe any of the Asserted Claims of the '526 Patent.

**Cisco's Position:**

Cisco's proposed instruction is modeled from this Court's recent Final Jury Instructions in *Nortek Air Solutions, LLC fka CES Group, LLC v. Energy Labs, Inc.*, No. 5:14-cv-02919-BLF, Dkt. 336 at 35 (Aug. 5, 2016) (Instruction No. 3.5), which is modified from the N.D. Cal. Model

---

[171] Final Jury Instruction No. 30, *Nortek Air Solutions, LLC fka CES Group, LLC v. Energy Labs, Inc.*, No. 5:14-cv-02919-BLF, Dkt. 336 at 35 (Aug. 5, 2016); "*B.3.10*," N.D. Cal. Model Patent Jury Instructions, citing 35 U.S.C. § 284; *In re Seagate Tech., LLC*, 497 F.3d 1360 (Fed. Cir. 2007); *Knorr-Bremse Systeme Fuer Nutzfahrzeuge GmbH v. Dana Corp.*, 383 F.3d 1337, 1345 (Fed. Cir. 2004) (*en banc*); *Crystal Semiconductor Corp. v. Tritech Microelectronics Int'l, Inc.*, 246 F.3d 1336, 1346 (Fed. Cir. 2001); *WMS Gaming Inc. v. Int'l Game Tech.*, 184 F.3d 1339, 1354 (Fed. Cir. 1999); *Read Corp. v. Portec, Inc.*, 970 F.2d 816 (Fed. Cir. 1992); *Gustafson, Inc. v. Intersystems Indus. Prods., Inc.,* 897 F.2d 508, 510 (Fed. Cir. 1990).

1    to account for the recent Supreme Court precedent in *Halo Electronics, Inc. v. Pulse Electronics, Inc.*, 136 S. Ct. 1923 (2016).

2

3        Arista's agrees with Cisco's proposed instruction, but seeks to add one sentence: "To prove that the sale of EOS+ is an act of willful infringement, Cisco must persuade you that EOS+ included new infringing functionality that was not present in EOS." That sentence (or any analog) was not present in this Court's Final Jury Instructions in *Nortek* and is improper. There is no requirement that to prove willful infringement, infringing functionality must be "new" or "different" from prior infringing functionality. Arista has provided no authority in support of this addition, and it is an incorrect statement of the law. Rather, the standard to prove willful infringement is governed by the analysis laid out by the Supreme Court recently in *Halo Electronics*, which is reflected in Cisco's proposed instruction. *Halo* includes no mention or requirement of showing "new infringing functionality" to prove willful infringement. Cisco's proposed instruction should be adopted without Arista's proposed addition.

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**DISPUTED: Arista's Final Instruction No. 79 re Patent—Willful Patent Infringement**[172]

In this case, Cisco argues that Arista willfully infringed the '526 Patent by selling "EOS+" after Cisco filed its complaint. To prove willful infringement against Arista, Cisco must first persuade you that Arista infringed a valid claim of Cisco's patent. The requirements for proving such infringement were discussed in my prior instructions.

To prove willful infringement of a patent, Cisco must persuade you by a preponderance of the evidence that Arista had knowledge of the patent at issue and acted in bad faith, wantonly, maliciously, deliberately, consciously wrongfully, flagrantly, or with reckless disregard of any of the Asserted Claims of any of the Cisco Patents.  You must base your verdict on the knowledge and actions of Arista at the time the infringement happened.  Infringement alone is not enough to prove willfulness and mere knowledge of the '526 Patent at the time of infringement is not enough to prove willfulness.  To prove that the sale of EOS+ is an act of willful infringement, Cisco must persuade you that EOS+ included new infringing functionality that was not present in EOS.

You should consider all of the circumstances including the motive or intent of Arista in developing and selling the accused products, whether Arista knew or should have known that its conduct was unreasonably risky and whether Arista had a reasonable belief at the time of the alleged infringement that its products did not infringe any of the Asserted Claims of the '526 Patent.

**Arista's Position:**

Arista's proposed instruction clarifies that Cisco's theory of willfulness is based on the allegation that Arista sold "EOS+" after Cisco filed its complaint.  As the Court is aware, the post-

---

[172] Final Jury Instructions, *Nortek Air Solutions, LLC fka CES Group, LLC v. Energy Labs, Inc.*, No. 5:14-cv-02919-BLF, Dkt. 336 (Aug. 5, 2016); "*B.3.10,*" N.D. Cal. Model Patent Jury Instructions, citing 35 U.S.C. § 284; *In re Seagate Tech., LLC*, 497 F.3d 1360 (Fed. Cir. 2007); *Knorr-Bremse Systeme Fuer Nutzfahrzeuge GmbH v. Dana Corp.*, 383 F.3d 1337, 1345 (Fed. Cir. 2004) (*en banc*); *Crystal Semiconductor Corp. v. Tritech Microelectronics Int'l, Inc.*, 246 F.3d 1336, 1346 (Fed. Cir. 2001); *WMS Gaming Inc. v. Int'l Game Tech.*, 184 F.3d 1339, 1354 (Fed. Cir. 1999); *Read Corp. v. Portec, Inc.*, 970 F.2d 816 (Fed. Cir. 1992); *Gustafson, Inc. v. Intersystems Indus. Prods., Inc.*, 897 F.2d 508, 510 (Fed. Cir. 1990).

1

2

3

complaint release of EOS+ is Cisco's sole basis for its claim that Arista has willfully infringed the '526 patent.  ECF 58 at 1:27–2:6 (July 9, 2015) (Order Granting Defendant's Partial Motion to Dismiss, with Leave to Amend).  Given the potential complexity of Cisco's other theories of infringement, this instruction should make clear that the jury's determination regarding willfulness is limited to a narrow, specific context—the sale of EOS+.

4

5

6

7

　　　Further, Arista's proposal instructs the jury that, "[t]o prove that the sale of EOS+ is an act of willful infringement, Cisco must persuade you that EOS+ included new infringing functionality that was not present in EOS."  As the Court stated in granting Arista's Partial Motion to Dismiss, Cisco must show that Arista "did more than continue selling the alleged infringing product." *Id.* at 3:18–19.  Arista's proposal presents the jury with a factual question that must be resolved in order to support a finding of willfulness.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1  **STIPULATED: Final Instruction No. 84 re Patent—Damages: Burden Of Proof**[173]

2       I will instruct you about the measure of damages for Cisco's patent claim.  By instructing

3  you on damages, I am not suggesting which party should win on any issue.  If you find that Arista

4  infringed any valid claim of the '526 patent, you must then determine the amount of money

5  damages to be awarded to Cisco to compensate it for the infringement.

6       The amount of those damages must be adequate to compensate Cisco for the infringement.

7  A damages award should put the patent holder in approximately the financial position it would

8  have been in had the infringement not occurred, but in no event may the damages award be less

9  than a reasonable royalty.  You should keep in mind that the damages you award are meant to

10  compensate Cisco and not to punish Arista.

11       Cisco has the burden to persuade you of the amount of its damages.  You should award

12  only those damages that Cisco more likely than not suffered.  While Cisco is not required to prove

13  its damages with mathematical precision, it must prove them with reasonable certainty.  Cisco is

14  not entitled to damages that are remote or speculative.

---

[173] "*B.5.1,*" N.D. Cal. Model Patent Jury Instructions, citing 35 U.S.C. § 284; *Dow Chem. Co. v. Mee Indus., Inc.*, 341 F.3d 1370, 1381-82 (Fed. Cir. 2003); *Grain Processing Corp. v. American Maize-Prod. Co.*, 185 F.3d 1341, 1349 (Fed. Cir. 1999); *Maxwell v. J. Baker, Inc.*, 86 F.3d 1098, 1108-09 (Fed. Cir. 1996); *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1544-45 (Fed. Cir. 1995) (en banc).

1    **<u>STIPULATED: Final Instruction No. 85 re Patent—Damages In The Form Of A Reasonable</u>**

2    **<u>Royalty: Definition of a "Reasonable Royalty"</u>**[174]

3         A royalty is a payment made to a patent holder in exchange for the right to make, use or

4    sell the claimed invention.  This right is called a "license."  A reasonable royalty is the payment

5    for the license that would have resulted from a hypothetical negotiation between the patent holder

6    and the infringer taking place at the time when the infringing activity first began.  In considering

7    the nature of this negotiation, you must assume that the patent holder and the infringer would have

8    acted reasonably and would have entered into a license agreement.  You must also assume that

9    both parties believed the patent was valid and infringed.  Your role is to determine what the result

10   of that negotiation would have been.  The test for damages is what royalty would have resulted

11   from the hypothetical negotiation and not simply what either party would have preferred.

12        One way to calculate a royalty is to determine a one-time lump sum payment that the

13   infringer would have paid at the time of the hypothetical negotiation for a license covering all

14   sales of the licensed product for some period of time.  That period of time may include both past

15   and future sales.  When a one-time lump sum is paid, the infringer pays a single price for a license

16   covering both past and future infringing sales.

---

23        [174]  "*B.5.7,*" N.D. Cal. Model Patent Jury Instructions, citing *Garretson v. Clark,* 111 U.S. 120
24   (1884); *Ericsson v. D-Link Sys., Inc.*, 773 F.3d 1201, 1226 (Fed. Cir. 2014); *VirnetX, Inc. v. Cisco
     Sys., Inc.*, 767 F.3d 1308, 1326-34 (Fed. Cir. 2014); *LaserDynamics, Inc. v. Quanta Computer,
25   Inc.,* 694 F.3d 51, 67-68 (Fed. Cir. 2012); *Lucent v. Gateway,* 580 F.3d 1301, 1336-39 (Fed. Cir.
     2009); *Golight, Inc., v. Wal-Mart Stores, Inc.*, 355 F.3d 1327, 1338 (Fed. Cir. 2004); *Maxwell v.
26   Baker, Inc.*, 86 F.3d 1098, 1108-10 (Fed. Cir. 1996); *Mahurkar v. C.R. Bard, Inc.*, 79 F.3d 1572,
     1579-81 (Fed. Cir. 1996); *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1554 (Fed. Cir. 1995) (en
27   banc); *Georgia-Pacific Corp. v. United States Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y.
28   1970).

THIRD AMENDED UNDISPUTED AND DISPUTED PROPOSED JURY INSTRUCTIONS

1    **STIPULATED: Final Instruction No. 86 re Patent—Damages: Date Of Commencement[175]**

2        Damages that Cisco may be awarded by you commence on the date that Arista has both

3    infringed and been notified of the '526 patent.  In this case, Cisco and Arista agree that date was

4    December 5, 2014.

---

[175]  35 U.S.C. § 287; *Crystal Semiconductor Corp. v. Tritech Microelectronics Int'l, Inc.*, 246 F.3d 1336 (Fed. Cir. 2001); *Nike Inc. v. Wal-Mart Stores*, 138 F.3d 1437, 1443-44 (Fed. Cir. 1998); *Maxwell v. Baker, Inc.*, 86 F.3d 1098, 1111-12 (Fed. Cir. 1996); *American Med. Sys. v. Medical Eng'g Corp.*, 6 F.3d 1523, 1534 (Fed. Cir. 1993); *Devices for Med., Inc. v. Boehl*, 822 F.2d 1062, 1066 (Fed. Cir. 1987).

## **STIPULATED: Final Instruction No. 88 re Duty To Deliberate**[176]

Before you begin your deliberations, elect one member of the jury as your presiding juror. That person will preside over the deliberations and serve as the spokesperson for the jury in court.

You shall diligently strive to reach agreement with all of the other jurors if you can do so. Your verdict must be unanimous.

Each of you must decide the case for yourself, but you should do so only after you have considered all of the evidence, discussed it fully with the other jurors, and listened to their views.

It is important that you attempt to reach a unanimous verdict but, of course, only if each of you can do so after having made your own conscientious decision. Do not be unwilling to change your opinion if the discussion persuades you that you should. But do not come to a decision simply because other jurors think it is right, or change an honest belief about the weight and effect of the evidence simply to reach a verdict.

---

[176]   Instruction No. 3.1, *Ninth Circuit Manual of Model Civil Jury Instructions* (2007).

## **STIPULATED: Final Instruction No. 89 re Conduct Of The Jury[177]**

Because you must base your verdict only on the evidence received in the case and on these instructions, I remind you that you must not be exposed to any other information about the case or to the issues it involves. Except for discussing the case with your fellow jurors during your deliberations:

Do not communicate with anyone in any way and do not let anyone else communicate with you in any way about the merits of the case or anything to do with it. This includes discussing the case in person, in writing, by phone or electronic means, via email, via text messaging, or any Internet chat room, blog, website or application, including but not limited to Facebook, YouTube, Twitter, Instagram, LinkedIn, Snapchat, or any other forms of social media. This applies to communicating with your family members, your employer, the media or press, and the people involved in the trial. If you are asked or approached in any way about your jury service or anything about this case, you must respond that you have been ordered not to discuss the matter and to report the contact to the court.

Do not read, watch, or listen to any news or media accounts or commentary about the case or anything to do with it[, although I have no information that there will be news reports about this case]; do not do any research, such as consulting dictionaries, searching the Internet, or using other reference materials; and do not make any investigation or in any other way try to learn about the case on your own. Do not visit or view any place discussed in this case, and do not use Internet programs or other devices to search for or view any place discussed during the trial. Also, do not do any research about this case, the law, or the people involved—including the parties, the witnesses or the lawyers—until you have been excused as jurors. If you happen to read or hear anything touching on this case in the media, turn away and report it to me as soon as possible.

These rules protect each party's right to have this case decided only on evidence that has been presented here in court. Witnesses here in court take an oath to tell the truth, and the accuracy of their testimony is tested through the trial process. If you do any research or investigation

---

[177]  Ninth Circuit Model Jury Instruction, 3.2.

outside the courtroom, or gain any information through improper communications, then your verdict may be influenced by inaccurate, incomplete or misleading information that has not been tested by the trial process. Each of the parties is entitled to a fair trial by an impartial jury, and if you decide the case based on information not presented in court, you will have denied the parties a fair trial. Remember, you have taken an oath to follow the rules, and it is very important that you follow these rules.

A juror who violates these restrictions jeopardizes the fairness of these proceedings. If any juror is exposed to any outside information, please notify the court immediately.

THIRD AMENDED UNDISPUTED AND DISPUTED PROPOSED JURY INSTRUCTIONS
1126417.05

1  ## STIPULATED: Final Instruction No. 90 re Communication With Court[178]

2      If it becomes necessary during your deliberations to communicate with me, you may send

3  a note through the marshal, signed by your presiding juror or by one or more members of the jury.

4  No member of the jury should ever attempt to communicate with me except by a signed writing; I

5  will communicate with any member of the jury on anything concerning the case only in writing, or

6  here in open court.  If you send out a question, I will consult with the parties before answering it,

7  which may take some time.  You may continue your deliberations while waiting for the answer to

8  any question.  Remember that you are not to tell anyone—including me—how the jury stands,

9  numerically or otherwise, until after you have reached a unanimous verdict or have been

10 discharged.  Do not disclose any vote count in any note to the court.

---

[178]  Instruction No. 3.3, *Ninth Circuit Manual of Model Civil Jury Instructions* (2007).

## **STIPULATED: Final Instruction No. 91 re Return Of Verdict**[179]

A verdict form has been prepared for you. After you have reached unanimous agreement on a verdict, your foreperson should complete the verdict form according to your deliberations, sign and date it, and advise the [clerk] [bailiff] that you are ready to return to the courtroom.

---

[179] Instruction No. 3.5, *Ninth Circuit Manual of Model Civil Jury Instructions* (2007).

1    **DISPUTED: Cisco's Position on Arista's Final Instruction No. 92 re Glossary**

2        Cisco's position is that no such instruction should be given.

3

4    **Cisco's Position:**

5        This instruction should not be given. Arista has proposed the use of a "glossary." It is
multiple pages long (amidst jury instructions that are already extensive), and includes numerous
6    concepts that are explained elsewhere in the instructions when necessary, while other defined
terms are never otherwise mentioned. A glossary is not necessary for this case, and would likely
7    confuse jurors more than it would assist them; it would be error to provide such materials to the
jury. Further, Arista has cited no authority for this proposed instruction. After Arista does so,
8    Cisco reserves the right to respond more fully and to address any such authorities.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## **DISPUTED: Arista's Final Instruction No. 92 re Glossary**

**Some of the terms in this glossary will be defined in more detail in the instructions you are given. The definitions in the instructions must be followed and must control your deliberations.  The terms defined in this glossary relate to Cisco's patent infringement claim.**

Abstract:  A brief summary of the technical disclosure in a patent to enable the U.S. Patent and Trademark Office and the public to determine quickly the nature and gist of the technical disclosure in the patent.

Amendment:  A patent applicant's change to one or more claims or to the specification either in response to an office action taken by a Patent Examiner or independently by the patent applicant during the patent application examination process.

Anticipation:   A situation in which a claimed invention describes an earlier invention and, therefore, is not considered new and is not entitled to be patented.

Assignment:   A transfer of patent rights to another called an "assignee" who upon transfer becomes the owner of the rights assigned.

Claim:  Each claim of a patent is a concise, formal definition of an invention and appears at the end of the specification in a separately numbered paragraph.  In concept, a patent claim marks the boundaries of the patent in the same way that a legal description in a deed specifies the boundaries of land, i.e. similar to a land owner who can prevent others from trespassing on the bounded property, the inventor can prevent others from using what is claimed.  Claims may be independent or dependent.  An independent claim stands alone.  A dependent claim does not stand alone and refers to one or more other claims.  A dependent claim incorporates whatever the other referenced claim or claims say.

Conception: The complete mental part of the inventive act which must be capable of proof, as by drawings, disclosure to another, etc.

Drawings: The drawings are visual representations of the claimed invention contained in a patent application and issued patent, and usually include several figures illustrating various aspects of the claimed invention.

Elements:  The required parts of a device or the required steps of a method.  A device or method infringes a patent if it contains each and every requirement of a patent claim.

Embodiment:  A product or method that contains the claimed invention.

Enablement:  A description of the invention that is sufficient to enable persons skilled in the field of the invention to make and use the invention. The specification of the patent must contain such an enabling description.

Examination:  Procedure before the U.S. Patent and Trademark Office whereby a Patent Examiner reviews the filed patent application to determine if the claimed invention is patentable.

Filing Date:  Date a patent application, with all the required sections, has been submitted to the U.S. Patent and Trademark Office.

Infringement:  Violation of a patent occurring when someone makes, uses or sells a patented invention, without permission of the Cisco, within the United States during the term of the patent.  Infringement may be direct, by inducement, or contributory.  Direct infringement is making, using or selling the patented invention without permission.  Inducing infringement is intentionally causing another to directly infringe a patent.  Contributory infringement is offering to sell or selling an item that is an important component of the invention, so that the buyer directly infringes the patent.  To be a contributory infringer one must know that the part being offered or sold is designed specifically for infringing the patented invention and is not a common component suitable for non-infringing uses.

Limitation:  A required part of an invention set forth in a patent claim.  A limitation is a requirement of the invention.  The word "limitation" is often used interchangeably with the word "requirement."

Nonobviousness:  One of the requirements for securing a patent. To be valid, the subject matter of the invention must not have been obvious to a person of ordinary skill in the field of the invention at the time of the earlier of the filing date of the patent application or the date of invention.

Office Action:  A written communication from the Patent Examiner to the patent applicant in the course of the application examination process.

Patent:  A patent is an exclusive right granted by the U.S. Patent and Trademark Office to an inventor to prevent others from making, using, offering to sell, or selling an invention within the United States, or from importing it into the United States, during the term of the patent.  When the patent expires, the right to make, use or sell the invention is dedicated to the public.  The patent has three parts, which are a specification, drawings and claims.  The patent is granted after examination by the U.S. Patent and Trademark Office of a patent application filed by the inventor which has these parts, and this examination is called the prosecution history.

Patent and Trademark Office (PTO):  An administrative branch of the U.S. Department of Commerce that is charged with overseeing and implementing the federal laws of patents and trademarks.  It is responsible for examining all patent applications and issuing all patents in the United States.

Prior Art:  Previously known subject matter in the field of a claimed invention for which a patent is being sought.  It includes issued patents, publications, and knowledge deemed to be publicly available such as trade skills, trade practices and the like.

Prosecution History:  The prosecution history is the complete written record of the proceedings in the PTO from the initial application to the issued patent.  The prosecution history includes the office actions taken by the PTO and the amendments to the patent application filed by the applicant during the examination process.

Reads On:  A patent claim "reads on" a device or method when each required part (requirement) of the claim is found in the device or method.

Reduction to Practice:  The invention is "reduced to practice" when it is sufficiently developed to show that it would work for its intended purpose.

Reexamination: A process in which a patent is reexamined by the PTO to determine whether one or more of the claims are patentable with respect to submitted prior art which may consist only of

prior patents or printed publications.  An "ex parte" reexamination is initiated by Cisco or a third party, but does not include the further participation of any third party.  An "inter partes" reexamination is initiated by a third party who continues to participate in the proceedings.

Requirement:  A required part or step of an invention set forth in a patent claim. The word "requirement" is often used interchangeably with the word "limitation."

Royalty:  A royalty is a payment made to the owner of a patent by a non-owner in exchange for rights to make, use or sell the claimed invention.

Specification:  The specification is a required part of a patent application and an issued patent.  It is a written description of the invention and of the manner and process of making and using the claimed invention.

**STIPULATED: Final Instruction No. 93 re Copyright—Abandonment**[180]

[To the extent an instruction is given]**

Arista contends that a copyright does not exist in Cisco's works because Cisco abandoned the copyrights.  Cisco cannot claim ownership of the copyright if it was abandoned.  In order to show abandonment, Arista has the burden of proving each of the following by a preponderance of the evidence:

1. Cisco intended to surrender rights in the work; and

2. An act by Cisco evidencing that intent.

Mere inaction does not constitute abandonment of the copyright; however, this may be a factor for you to consider in determining whether Cisco has abandoned the copyright.

** Cisco contends abandonment is an equitable defense that is not presented to the jury.

**Cisco's Position:**

Abandonment is an equitable defense that should not be heard by the jury.  *See, e.g.*, *Deer Valley Resort Co. v. Christy Sports, LLC*, No. 07-CV-904-CW, 2010 WL 1065940, at *3 (D. Utah Mar. 23, 2010) ("laches, estoppel, abandonment and waiver defenses … are all equitable doctrines").  While the Model Instructions contain a proposed instruction, none of the cases cited therein specifically describe abandonment as a legal defense as opposed to an equitable defense; to the contrary, they place abandonment aside other equitable defenses, confirming that it too is an equitable defense.  *See, e.g.*, *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1026 (9th Cir. 2001) (discussing abandonment simultaneously with waiver, an equitable defense); *Abend v. MCA, Inc.*, 863 F.2d 1465, 1482 n.21 (9th Cir. 1988) (listing abandonment with other equitable defenses).

Further, Cisco objects to Arista's request for an "advisory verdict" on abandonment.  Arista provides no authority for an advisory verdict being issued on abandonment, and the defense is much closer to one of waiver, estoppel, and laches than to fair use.  Indeed, Arista provides no explanation for how abandonment "overlaps" with a fair use defense, which focuses on the ***defendant's*** (transformative) use in copying a plaintiff's work, while abandonment arguably addresses the ***plaintiff's*** enforcement of its copyright.  Thus, there is little overlap in the evidence.

**Arista's Position:**

The Ninth Circuit provides a model jury instruction for abandonment because

---

[180] Instruction No. 17.22, *Ninth Circuit Manual of Model Civil Jury Instructions* (2007).

abandonment is an issue for the jury.  Ninth Circuit Model Jury Instruction 17.22; *see also* Seventh Circuit Model Jury Instruction 12.7 (abandonment of copyright).  There is limited authority on the question of whether abandonment is an equitable defense, but in other contexts, abandonment has been treated as a jury issue.  *See, e.g.*, *Transgo, Inc. v. Ajac Transmission Parts Corp.*, 768 F.2d 1001, 1017 (9th Cir. 1985) (affirming jury verdict on abandonment of trademark). Arista believes abandonment should go to the jury.  But to the extent there is uncertainty in the law over whether abandonment is an equitable defense, at a minimum, out of fairness, Arista requests that the Court ask for an advisory verdict on abandonment—the same approach the Court has taken on disgorgement.  The evidence concerning the abandonment defense overlaps substantially with Arista's other defenses, including fair use, so Cisco cannot claim any prejudice. And the parties can address the jury-right issue more fully at the same time they address the disgorgement jury-right issue.

THIRD AMENDED UNDISPUTED AND DISPUTED PROPOSED JURY INSTRUCTIONS
1126417.05

**DISPUTED: Cisco's Preliminary Instruction No. 95 re Introduction to Copyright**[181]

The plaintiff, Cisco, claims ownership of a copyright and seeks damages against the defendant, Arista, for copyright infringement.  Arista denies infringing the copyright and asserts various affirmative defenses.  To help you understand the evidence in this case, I will explain some of the legal terms you will hear during this trial.

Copyright is the exclusive right to copy.  This right to copy includes the exclusive rights to, or authorize others to:

    1.  Reproduce the copyrighted work in copies;

    2.  Recast, transform, or adapt the work—that is, prepare derivative works based upon the copyrighted work;

    3.  Distribute copies of the copyrighted work to the public by sale or other transfer of ownership; and

    4.  Display publicly a copyrighted work.

It is the owner of a copyright who may exercise these exclusive rights.  The term "owner" includes the author of the work.  In general, copyright law protects against reproduction, adaptation, distribution, or display of infringing copies of the owner's copyrighted work without the owner's permission.  An owner may enforce these rights to exclude others in an action for copyright infringement.[182]

A copyrighted work can be a literary work, musical work, dramatic work, pantomime, choreographic work, pictorial work, graphic work, sculptural work, motion picture, audiovisual work, sound recording, architectural work, computer program, or user interface.

Facts, ideas, procedures, processes, systems, methods of operation, concepts, principles, or discoveries cannot themselves be copyrighted.

The copyrighted work must be original. An original work that closely resembles other works can be copyrighted so long as the similarity between the two works is not the result of

---

[181] Ninth Circuit Model Jury Instruction 17.0.
[182] Instruction No. 17.1, *Ninth Circuit Manual of Model Civil Jury Instructions* (2007)  (formerly Cisco's proposed Final Instruction No. 24)..

1  copying.

2      In this case, the plaintiff, Cisco, contends that the defendant, Arista, has infringed the

3  Cisco's copyright in original expression in its user interface and associated technical documents.

4  Anyone who copies original expression from a copyrighted work during the term of the copyright

5  without the owner's permission infringes the copyright.

6      Cisco has the burden of proving by a preponderance of the evidence that:

7      1.  Cisco is the owner of a valid copyright; and

8      2.  Arista copied original expression from the copyrighted work.

9  If you find that Cisco proved both of these elements, your verdict should be for Cisco on the issue

10  of infringement.  If, on the other hand, you find that Cisco has failed to prove either of these

11  elements, your verdict should be for Arista.[183]

12      Cisco may prove that Arista copied Cisco's work, through either direct evidence that the

13  defendant copied the plaintiff's work, or through circumstantial evidence by showing that the

14  defendant had access to the plaintiff's copyrighted work and that [there are substantial similarities

15  between the protected elements of the plaintiff's copyrighted works and the defendant's works /

16  the protected elements of the works are virtually identical].

17      One who reproduces, publicly distributes, publicly performs, publicly displays, or prepares

18  derivative works from a copyrighted work without authority from the copyright owner during the

19  term of the copyright infringes the copyright.

20      Arista contends that there is no copyright infringement.

21      In addition, Arista asserts certain affirmative defenses.  First, Arista asserts the defense of

22  merger, which requires Arista to prove that, at the time Cisco created the copyrighted work, there

23  was only one or very few ways to express the idea underlying the work.

24      Arista also asserts the affirmative defense of scènes à faire, which requires Arista to prove

25  that, at the time Cisco created the copyrighted work, external factors other than Cisco's creativity

26  
_____

27  [183] Instruction No. 17.4, *Ninth Circuit Manual of Model Civil Jury Instructions* (2007) (formerly
28  Cisco's proposed Final Instruction No. 29).

THIRD AMENDED UNDISPUTED AND DISPUTED PROPOSED JURY INSTRUCTIONS

1126417.05

1    dictated that Cisco select, arrange, organize and design its original features in the manner it did.

2    Arista also asserts as [an] affirmative defense[s] that Arista independently created the

3    challenged work[, that Cisco abandoned ownership of the copyrighted work,] [and that Cisco

4    misused the copyright].[184]

5    Finally, Arista asserts the affirmative defense of fair use, which allows reproducing a

6    copyrighted work for certain limited purposes such as criticism, comment, news reporting,

7    teaching, scholarship, or research.  In determining whether the use made of the work was fair, you

8    will consider the following factors:

9        1. The purpose and character of the use, including whether the use is of a commercial

10           nature or is for nonprofit educational purposes;

11       2. The nature of the copyrighted work;

12       3. The amount and substantiality of the portion used in relation to the copyrighted work as

13          a whole; and

14       4. The effect of the use upon the potential market for or value of the copyrighted work.[185]

15

16   **Cisco's Position:**

17       Cisco's proposed instruction follows Instruction No. 17.0 of the *Ninth Circuit Manual of

18   Model Civil Jury Instructions* ("*Model*") in form and substance.  Further, Cisco's proposed
     instructions on Arista's affirmative defenses are presented at a high level (as the Court requested)

19   and are concise and accurate statements of law.  In addition, because the Court indicated a desire
     to issue preliminary instructions on Instruction Nos. 24 (Copyright—Defined) and 29

20   (Copyright—Elements: Ownership & Copying), and because these instructions were present (in an
     abbreviated form) in the parties' proposed Instruction No. 95, Cisco has incorporated those two

21   instructions herein rather than have them be reissued.

22       Arista's proposed instruction contains multiple errors.  *First*, Arista proposes adding an

23   instruction that "[t]he plaintiff must also prove that the defendant's work is virtually identical to
     the plaintiff's copyrighted work as a whole" as an alternative to proving that the use was

24   "substantial."  Notwithstanding Cisco's dispute that such a standard applies at all (*see* Cisco's
     Position On Instruction No. 41), the proper place for such an alternative (if anywhere) is the

25   ───────────────────

26       [184] Cisco asserts that Arista's affirmative defenses of abandonment and copyright misuse are
     equitable defenses that should not be heard by the jury.  *See* Cisco's position on Arista's proposed

27   Instruction Nos. 62 (copyright misuse) & 93 (abandonment).

28       [185] Ninth Circuit Model Jury Instruction 17.21.

subsequent paragraph, *i.e.*, how to prove copying. Cisco has proposed alternative versions containing language in the proper paragraph, depending on the outcome of the Court's dissection analysis and associated rulings.

*Second*. Arista omits the paragraph on liability.

*Third*, Arista's proposed instruction on merger fails to inform that Arista must show that: (1) the inquiry focuses on ***Cisco's*** options for expressions at the time of creation of the asserted work(s), not Arista's options or anyone else's at the time of copying; and (2) the inquiry looks at the options for expression available at the time of the work's creation. *See Oracle*, 750 F.3d at 1361. Arista's merger instruction also fails to address that the doctrine is an affirmative defense for which Arista bears the burden of proof. *See Oracle Am., Inc. v. Google Inc.*, 750 F.3d 1339, 1358 (Fed. Cir. 2014) (merger is an "affirmative defense[] to claims of infringement") (citing *Ets-Hokin v. Skyy Spirits, Inc.*, 225 F.3d 1068, 1082 (9th Cir. 2000); *Satava v. Lowry,* 323 F.3d 805, 810 n. 3 (9th Cir. 2003); *Kregos v. Associated Press*, 937 F.2d 700, 705 (2d Cir. 1991)); *Ninth Circuit Manual of Model Civil Jury Instructions* No. 1.2 (defendant bears burden of proof for affirmative defenses).

*Fourth*, Arista's proposed instruction on scènes à faire fails to simply state the applicable legal standard; namely, whether, at the time that Cisco created its copyrighted work, external factors other than Cisco's creativity dictated that Cisco select, arrange, organize and design its original features in the manner it did. *See Oracle Am., Inc. v. Google Inc.*, 750 F.3d 1339, 1358 (Fed. Cir. 2014) ("The court's analytical focus must be upon the external factors that dictated [the author's] selection of classes, methods, and code—not upon what Google encountered at the time it chose to copy those groupings and that code. '[T]he scènes à faire doctrine identifies and excludes from protection against infringement expression whose creation 'flowed naturally from considerations external to the author's creativity.'"); *id.* at 1364 (scènes à faire must be determined at the time of creation, and "the focus of the scènes à faire doctrine is on the circumstances presented to the creator, not the copier"). Arista's proposed instruction replicates its overlong proposed final instruction, which is flawed for the reasons set forth in Cisco's position on Arista's proposed final Instruction No. 61, which Cisco incorporates herein. For example, the writing of programs, hardware and software standards, mechanical specifications, and technical requirements all refer to program's code (not at issue here) and not a user interface. Further, to the extent that Arista's instruction references "standards," the Court has already barred Arista from argument on an "industry standard." Further, it is wholly inappropriate for the Court to instruct the jury on such matters before any evidence has even been heard. Finally, Arista also fails to acknowledge that the doctrine is an affirmative defense for which Arista bears the burden of proof. *See Oracle Am., Inc. v. Google Inc.*, 750 F.3d 1339, 1358 (Fed. Cir. 2014) ("In the Ninth Circuit, while questions regarding originality are considered questions of copyrightability," scènes à faire is an "affirmative defense[] to claims of infringement. *Ets–Hokin*, 225 F.3d at 1082; *Satava v. Lowry*, 323 F.3d 805, 810 n.3 (9th Cir. 2003) ("The Ninth Circuit treats scenes a faire as a defense to infringement rather than as a barrier to copyrightability."). The Ninth Circuit … has made clear that, in that circuit," scènes à faire is "to be treated as [a] defense[s] to infringement. [*Ets–Hokin*, 225 F.3d at 1082] … *Reed–Union Corp. v. Turtle Wax, Inc.,* 77 F.3d 909, 914 (7th Cir.1996) (explaining why the doctrine of scenes a faire is separate from the validity of a copyright))."); Instruction No. 1.2, *Ninth Circuit Manual of Model Civil Jury Instructions* (2007).

*Fifth*, Arista's proposed instruction on fair use is inappropriate for a preliminary instruction, unnecessarily long, departs from the *Model*, acts as an incomplete version of the final instruction on fair use, and is biased toward a finding of fair use and is thus unbalanced. For

1  example, the first two paragraphs of Arista's fair use preliminary instruction are not in the *Model*
2  and unnecessarily address policy, which has no relevance to the jury's fact-finding duties, and
   offer no counterbalancing instruction on the limitations of fair use.  Further, the last paragraph of
3  Arista's proposed fair use preliminary instruction is not contained in the *Model* and improperly
   suggests that the jury include the elements of "custom" or "public policy" in arriving at its
4  decision, which is not the law.  Additionally, Arista's statement that "fair use is appropriate where
5  a reasonable copyright owner would have consented to the use, *i.e.*, where the custom or public
   policy at the time would have defined the use as reasonable" should not be included because it is a
6  statement that describes a result based on public policy, not an instruction on the law.  The fair use
   factors do not require the consideration of whether a "reasonable copyright owner" would have
7  consented; rather, that is often the outcome when fair use is applied.  Arista's instruction
   presupposes such application and prejudices Cisco by asking the jury to merely determine if Cisco
8  would have been "reasonable" in consenting to Arista's infringement, rather than asking the jury
   to apply the fair use factors as written.

9

10        Thus, the Court should rely on the fair use language in 17.0 of the *Model*, which already
    considers how to inform the jury about fair use before trial begins, which Cisco has included as
11  the first sentence of its final paragraph.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**DISPUTED: Arista's Preliminary Instruction No. 95 re Introduction to Copyright[186]**

The plaintiff, Cisco, claims ownership of a copyright and seeks damages against the defendant, Arista, for copyright infringement. Arista denies infringing the copyright and asserts affirmative defenses. To help you understand the evidence in this case, I will explain some of the legal terms you will hear during this trial.

The owner of a copyright has the right to exclude any other person from reproducing, distributing, performing, displaying or preparing derivative works from the work covered by copyright for a specific period of time.

A copyrighted work can be a literary work, musical work, dramatic work, pantomime, choreographic work, pictorial work, graphic work, sculptural work, motion picture, audiovisual work, sound recording, architectural work, or computer program.

Facts, ideas, procedures, processes, systems, methods of operation, concepts, principles, or discoveries cannot themselves be copyrighted.

The copyrighted work must be original. An original work that closely resembles other works can be copyrighted so long as the similarity between the two works is not the result of copying.

In this case, the plaintiff, Cisco, contends that the defendant, Arista, has infringed the its copyright. The plaintiff has the burden of proving by a preponderance of the evidence that the plaintiff is the owner of the copyright and that the defendant copied original expression from the copyrighted work. Preponderance of the evidence means that you must be persuaded by the evidence that it is more probably true than not true that the copyrighted work was infringed.

[The plaintiff must also prove that the defendant's use of the copyrighted work was substantial. In determining whether the defendant's use of the copyrighted work was substantial, you may consider how important the copied portion was to the copyrighted work as a whole.]

*or*

[The plaintiff must also prove that the defendant's work is virtually identical to the

---

[186] Ninth Circuit Model Jury Instruction 17.0.

Case No. 5:14-cv-5344-BLF
1126417.05

1  plaintiff's copyrighted work as a whole.]

2      To prove that the defendant copied the plaintiff's work, the plaintiff may show that the

3  defendant had access to the plaintiff's copyrighted work and that there are substantial similarities

4  between the defendant's work and the plaintiff's copyrighted work.

5      Arista contends that there is no copyright infringement.

6      First, Arista asserts the doctrine of "merger," which holds that if the idea underlying the

7  copyrighted work can be expressed in only one way or only a few ways, the expression of that

8  idea will not constitute copyright infringement.

9      Additionally, under the doctrine of scènes à faire, standard elements of a work that were

10 common to a large number of works at the time the copyrighted work was created, such as a

11 common plot device, are given only limited copyright protection, because they are not likely to be

12 original and because, as a type of idea, they are necessary for the creation of other works.  Scènes

13 à faire protects the right of software developers to adopt elements of a program dictated by

14 practical realities, such as by software standards and standard computer programming practices.

15     The defendant also asserts affirmative defenses.  There is no copyright infringement when

16 the defendant independently created the challenged work, the defendant made fair use of the

17 copyrighted work, the plaintiff abandoned ownership of the copyrighted work, or the plaintiff

18 misused the copyright by requiring its exclusive use or preventing the development of competing

19 products.

20     The right of fair use permits the use of copyrighted works in a reasonable way without the

21 consent of the copyright owner if it would advance the public interest.[187]  The policy behind the

22 right of fair use is to encourage and allow the development of new ideas that build on earlier ones,

23 thus providing a counterbalance to the copyright policy to protect creative works.[188]

24

_____

25

26  [187] *Oracle America, Inc. v. Google, Inc.*, No. 10-cv-03561-WHA, ECF 1981 (May 26, 2016)
    (Jury Instruction 21).

27  [188] *See Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1163 (9th Cir. 2007) ("The fair

28 use defense permits the use of copyrighted works without the copyright owner's consent under
    certain situations. The defense encourages and allows the development of new ideas that build on

Case No. 5:14-cv-5344-BLF
THIRD AMENDED UNDISPUTED AND DISPUTED PROPOSED JURY INSTRUCTIONS
1126417.05

1       The owner of a copyright cannot prevent others from making a fair use of the owner's

2   copyrighted work.  In determining whether the use made of the work was fair, the Copyright Act

3   provides the following factors to consider:

4           1. The purpose and character of the use, including whether the use is of a commercial

5               nature or is for nonprofit educational purposes;

6           2. The nature of the copyrighted work;

7           3. The amount and substantiality of the portion used in relation to the copyrighted work as

8               a whole; and

9           4. The effect of the use upon the potential market for or value of the copyrighted work.[189]

10          These factors are not exclusive.  As you balance these and other factors, bear in mind that

11  fair use is appropriate where a reasonable copyright owner would have consented to the use, *i.e.*,

12  where the custom or public policy at the time would have defined the use as reasonable.[190]

13

14

15

16

17

18

19

20

21

22

23  _____

24  earlier ones, thus providing a necessary counterbalance to the copyright law's goal of protecting
    creators' work product.").

25      [189] Ninth Circuit Model Jury Instruction 17.21.  *See also Sony v. Bleem*, 214 F.3d 1022, 1026
    (9th Cir. 2000); *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 579 (1994); *Sega Enters. Ltd.*
26  *v. Accolade, Inc.*, 977 F.2d 1510, 1524-26 (9th Cir. 1992); *Sony Computer Entertainment, Inc. v.*
    *Connectix Corp.*, 203 F.3d 596, 607 (9th Cir.), *cert. denied*, 531 U.S. 871 (2000).
27      [190] Order on Daubert Motions at 3-4 (quoting *Wall Data Inc. v. Los Angeles Cty. Sheriff's*
    *Dep't*, 447 F.3d 769, 778 (9th Cir. 2006)).
28

THIRD AMENDED UNDISPUTED AND DISPUTED PROPOSED JURY INSTRUCTIONS

1126417.05

1    Dated:  November 19, 2016

Respectfully submitted,

2

*/s/* John M. Neukom

3

Kathleen Sullivan (SBN 242261)
kathleensullivan@quinnemanuel.com

4    QUINN EMANUEL URQUHART &
SULLIVAN LLP

5    51 Madison Avenue, 22nd Floor
New York, NY 10010

6    Telephone: (212) 849-7000
Facsimile: (212) 849-7100

7

Sean S. Pak (SBN 219032)

8    seanpak@quinnemanuel.com
Amy H. Candido (SBN 237829)

9    amycandido@quinnemanuel.com
John M. Neukom (SBN 275887)

10    johnneukom@quinnemanuel.com.
QUINN EMANUEL URQUHART &

11    SULLIVAN LLP
50 California Street, 22nd Floor

12    San Francisco, CA 94111
Telephone: (415) 875-6600

13    Facsimile: (415) 875-6700

14    Steven Cherny (*admitted pro hac vice*)
steven.cherny@kirkland.com

15    KIRKLAND & ELLIS LLP
601 Lexington Avenue

16    New York, New York 10022
Telephone: (212) 446-4800

17    Facsimile: (212) 446-4900

18    Adam R. Alper (SBN 196834)
adam.alper@kirkland.com

19    KIRKLAND & ELLIS LLP
555 California Street

20    San Francisco, California  94104
Telephone: (415) 439-1400

21    Facsimile: (415) 439-1500

22    Michael W. De Vries (SBN 211001)
michael.devries@kirkland.com

23    KIRKLAND & ELLIS LLP
333 South Hope Street

24    Los Angeles, California 90071
Telephone: (213) 680-8400

25    Facsimile: (213) 680-8500

26    *Attorneys for Plaintiff Cisco Systems, Inc.*
Respectfully submitted,

27

28

THIRD AMENDED UNDISPUTED AND DISPUTED PROPOSED JURY INSTRUCTIONS
1126417.05

1

DATED:  November 19, 2016          */s/  Brian L. Ferrall*_____

2                                   KEKER & VAN NEST LLP
                                    ROBERT A. VAN NEST - # 84065
3                                   rvannest@kvn.com
                                    BRIAN L. FERRALL - # 160847
4                                   bferrall@kvn.com
                                    DAVID J. SILBERT - # 173128
5                                   dsilbert@kvn.com
                                    MICHAEL S. KWUN - # 198945
6                                   mkwun@kvn.com
                                    633 Battery Street
7                                   San Francisco, CA 94111-1809
                                    Telephone:     415 391 5400
8                                   Facsimile:     415 397 7188

9                                   *Attorneys for Defendant Arista Networks, Inc.*

10

11                        **ATTORNEY ATTESTATION**

12

13        I hereby attest, pursuant to Local Rule 5-1(i)(3), that the concurrence in the filing of this

14   document has been obtained from the signatory indicated by the "conformed" signature (/s/) of

15   John M. Neukom within this e-filed document.

16

17                              */s/*     *Brian L. Ferrall*_____

18

19

20

21

22

23

24

25

26

27

28