08:58AM

1              IN THE UNITED STATES DISTRICT COURT

2            FOR THE NORTHERN DISTRICT OF CALIFORNIA

3                      SAN JOSE DIVISION

4

5

CISCO SYSTEMS, INC.,              )   CV-14-5344-BLF
6                                  )
                PLAINTIFF,         )   SAN JOSE, CALIFORNIA
7                                  )
          VS.                      )   NOVEMBER 21, 2016
8                                  )
ARISTA NETWORKS, INC.,            )   VOLUME 2
9                                  )
                DEFENDANT          )   PAGES  25-260
10                                 )

11                  TRANSCRIPT OF PROCEEDINGS
            BEFORE THE HONORABLE BETH LABSON FREEMAN
12                  UNITED STATES DISTRICT JUDGE

13      A P P E A R A N C E S:

14      FOR THE PLAINTIFF:  DAVID A. NELSON
                            QUINN EMANUEL URQUHART & SULLIVAN, LLP
15                          500 WEST MADISON STREET, SUITE 2450
                            CHICAGO, IL 60661
16

17      FOR THE PLAINTIFF:  QUINN, EMANUEL, URQUHART & SULLIVAN
                            BY:  SEAN PAK
18                          50 CALIFORNIA STREET, 22ND FLOOR
                            SAN FRANCISCO, CALIFORNIA  94111
19
                            BY:  DAVE NELSON
20                          500 WEST MADISON STREET, SUITE 2450
                            CHICAGO, ILLINOIS  60661
21

22              APPEARANCES CONTINUED ON NEXT PAGE

23      OFFICIAL COURT REPORTER:  SUMMER FISHER, CSR, CRR
                            CERTIFICATE NUMBER 13185
24

25          PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY
                TRANSCRIPT PRODUCED WITH COMPUTER

1    APPEARANCES (CONTINUED)

2    FOR THE DEFENDANT:  KEKER & VAN NEST, LLP
                        BY:   ROBERT ADDY VAN NEST
3                             BRIAN FERRALL
                              MICHAEL KWUN
4                       KEKER & VAN NEST LLP
                        633 BATTERY STREET
5                       SAN FRANCISCO, CA 94111-1809

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

|       |    |                                                                    |
|-------|----|--------------------------------------------------------------------|
|       | 1  | SAN JOSE, CALIFORNIA                    NOVEMBER 21, 2016           |
| 08:59AM | 2  |                    P R O C E E D I N G S                          |
| 08:59AM | 3  |      (WHEREUPON, THE FOLLOWING PROCEEDINGS WERE HELD OUT OF THE     |
| 09:00AM | 4  | PRESENCE OF THE PROSPECTIVE JURY:)                                  |
| 09:00AM | 5  |           THE COURT:  ALL RIGHT.  LET'S CALL THE CASE.  WE WILL     |
| 09:01AM | 6  | GET YOUR NAMES ON THE RECORD AND THEN WE WILL DIG IN.               |
| 09:01AM | 7  |           THE CLERK:  CALLING CV-14-5344-BLF.  CISCO SYSTEMS,       |
| 09:01AM | 8  | INC. V. ARISTA NETWORKS, INC.                                       |
| 09:01AM | 9  |      COUNSEL, PLEASE COME FORWARD AND STATE YOUR APPEARANCES.       |
| 09:01AM | 10 |           MR. NELSON:  GOOD MORNING, YOUR HONOR.                    |
| 09:01AM | 11 |      DAVE NELSON ON BEHALF OF CISCO.  AND WITH ME IS MR. SEAN       |
| 09:01AM | 12 | PAK AND MS. KATHLEEN SULLIVAN.                                      |
| 09:01AM | 13 |           THE COURT:  GOOD MORNING TO ALL OF YOU.                   |
| 09:01AM | 14 |           MR. VAN NEST:  GOOD MORNING, YOUR HONOR.                  |
| 09:01AM | 15 |      BOB VAN NEST FROM KECKER & VAN NEST FOR ARISTA.  WE ARE        |
| 09:01AM | 16 | HERE WITH BRIAN FERRALL AND MICHAEL KWUN.                           |
| 09:01AM | 17 |      WE EXPECT DAVID SILBERT TO BE HERE SHORTLY, AND WE HAVE        |
| 09:01AM | 18 | INVITED PROFESSOR BLACK TO BE HERE IN THE COURTROOM.  HE'S HERE     |
| 09:01AM | 19 | IN THE COURTROOM, BUT I TOLD HIM TODAY HE WILL LIKELY JUST BE A     |
| 09:01AM | 20 | SPECTATOR, BUT HE IS HERE, YOUR HONOR.                              |
| 09:01AM | 21 |           THE COURT:  I APPRECIATE THAT.  THANK YOU.                |
| 09:01AM | 22 |      ALL RIGHT.  PLEASE BE SEATED.                                  |
| 09:01AM | 23 |      LET ME SEE IF I CAN JUST MAKE SURE I UNDERSTAND -- WE ALL      |
| 09:01AM | 24 | UNDERSTAND EXACTLY WHAT WE ARE TRYING TO ACCOMPLISH THIS            |
| 09:01AM | 25 | MORNING.                                                            |

09:01AM   1        THIS IS THE TIME I BELIEVE WE HAVE SET FOR THE DISCUSSION

09:01AM   2   AND ARGUMENT ON THE PORTIONS OF ANALYTIC DISSECTION THAT THE

09:02AM   3   COURT CAN COMPLETE WITHOUT EVIDENTIARY HEARING.  AND THAT THE

09:02AM   4   EVIDENTIARY HEARING REQUIRED WILL TAKE PLACE ALONG WITH THE

09:02AM   5   TRIAL, WITH THE JURY PRESENT.

09:02AM   6        AND THAT BEFORE I FINALLY INSTRUCT THE JURY, WE WILL HAVE

09:02AM   7   COMPLETED ALL OF THE ANALYTIC DISSECTION; IS THAT CORRECT?

09:02AM   8             MR. VAN NEST:  THAT'S WHAT WE UNDERSTOOD, YOUR HONOR.

09:02AM   9             MR. NELSON:  I BELIEVE THAT'S RIGHT.

09:02AM  10        I BELIEVE WE ALSO TALKED FRIDAY ABOUT MAYBE THEY WANTED

09:02AM  11   SOME ADDITIONAL DISCUSSION ON THE DEFINITION OF THE WORK.

09:02AM  12             THE COURT:  WELL, IT WOULD BE MY HOPE TODAY THAT WE

09:02AM  13   COULD ALSO DEFINE WHAT THE WORKS ARE.  AND OF COURSE THERE'S

09:02AM  14   MORE THAN ONE THAN YOU ARE ASSERTING.  AND I THINK THAT WILL

09:02AM  15   HELP QUITE A BIT AS WE DISCUSS JURY INSTRUCTIONS.

09:02AM  16        YOU KNOW, WE'VE REALLY -- I'VE SET ASIDE ALL DAY TODAY AND

09:02AM  17   TOMORROW.  I DON'T KNOW WHAT WE WILL NEED.  WHEN WE TURN TO

09:02AM  18   JURY INSTRUCTIONS, WE WILL DO THAT IN CHAMBERS BECAUSE WE HAVE

09:02AM  19   A LOT OF ROLL-UP-YOUR-SLEEVES KIND OF WORK TO DO THERE, AND I'M

09:02AM  20   HOPING TO GET A PRETTY GOOD SET OF JURY INSTRUCTIONS BY THE END

09:03AM  21   OF THE DAY TOMORROW, WITH THE EXCEPTION THAT A FEW THAT ARE

09:03AM  22   STILL WORKS IN PROGRESS.  BUT THEN WE HAVE A REALISTIC CHANCE

09:03AM  23   OF GETTING THOSE HAMMERED OUT SO THAT THE JURY CAN START THEIR

09:03AM  24   DELIBERATIONS AS WE HAD HOPED ON DECEMBER 13TH.  SO THAT'S

09:03AM  25   STILL OUR PLAN.

09:03AM  1      WITH THAT IN MIND, LET MY -- I'M NOT SURE HOW YOU HAD

09:03AM  2  WANTED TO ORGANIZE THE DISCUSSION TUESDAY -- THE PAPER YOU

09:03AM  3  PROVIDED TO ME, I KNOW THERE'S LOTS OF OTHER THINGS THAT YOU

09:03AM  4  SENT ME ON THE THUMB DRIVE, AND OF COURSE THAT'S NOT ACCESSIBLE

09:03AM  5  TO ME IN THE COURTROOM, I KNOW YOU WILL HELP ME THROUGH THAT.

09:03AM  6      IT SEEMS TO ME THAT PRIMARILY, CISCO'S IDENTIFICATION THE

09:03AM  7  ALLEGED COPIED ELEMENTS IS ESSENTIAL HERE.  AND WHAT I HAVE

09:04AM  8  BEEN WORKING WITH IS THE JOINT SUBMISSION OF THE ITEMS THAT CAN

09:04AM  9  BE SUBMITTED WITHOUT ARGUMENT THAT TRACK ARISTA'S RESPONSE TO

09:04AM  10  CISCO'S SUBMISSION OF PROTECTABLE ELEMENTS.

09:04AM  11      AND SO MR. VAN NEST, I DON'T KNOW WHETHER YOU HAD INTENDED

09:04AM  12  TO WALK THROUGH THAT LIST OR IF YOU HAVE A DIFFERENT WAY OF

09:04AM  13  ORGANIZING THIS FOR ME TODAY.

09:04AM  14          MR. VAN NEST:  I HAD A SLIDE HERE FOR SUGGESTION.

09:04AM  15  AND THAT IS THAT WE START WITH DEFINING WHAT THE WORK AS A

09:04AM  16  WHOLE IS.

09:04AM  17          THE COURT:  OKAY.

09:04AM  18          MR. VAN NEST:  REMEMBER THAT AT THE MOTION IN LIMINE

09:04AM  19  SESSION WE HAD MOVED IN LIMINE THE QUESTION OF WHAT WAS

09:04AM  20  ACTUALLY DISCLOSED.  AND SO THAT WAS CARRIED OVER TO TRIAL.

09:04AM  21      SO WHAT WE HAVE DONE IS WE HAVE DIVIDED IT UP A LITTLE BIT.

09:04AM  22  WE THINK THERE'S TWO ISSUES:  WHAT WAS DISCLOSED AS THE

09:04AM  23  COPYRIGHTED WORK, AND MR. FERRALL IS GOING TO ADDRESS THAT; AND

09:04AM  24  WHETHER SOME SUBSET OF A COPYRIGHTED REGISTRATION IS ELIGIBLE

09:04AM  25  TO BE THE WORK AS A WHOLE.

09:04AM 1          AND YOU HAD MENTIONED FRIDAY THAT YOU WERE FAMILIAR WITH

09:04AM 2    THE LAW.

09:04AM 3               THE COURT:  I HOPE I AM.

09:05AM 4               MR. VAN NEST:  AND MR. KWUN WAS GOING TO HANDLE THAT.

09:05AM 5          SO WHAT I SUGGEST WE DO IS, START WITH MR. FERRALL, IS THE

09:05AM 6    DISCOVERY ISSUES BECAUSE THEY ARE VERY IMPORTANT, AND THEN

09:05AM 7    FOLLOW ON WITH THE DISCUSSION OF THE LAW AND THE LEGAL POINTS.

09:05AM 8    EVEN IF YOUR HONOR WERE TO SAY, WELL, IT WAS DISCLOSED, THEN I

09:05AM 9    THINK THERE'S A SECOND QUESTION WHICH IS, WHAT DOES THE LAW

09:05AM 10   ALLOW IN TERMS OF A SUBSET TYPE OF APPROACH?

09:05AM 11              THE COURT:  OKAY.  AND I'M PERFECTLY HAPPY TO DO

09:05AM 12   THAT.

09:05AM 13         I THINK THE BEST PLACE TO START OUT IS FOR CISCO TO STATE

09:05AM 14   ON THE RECORD WHAT IT BELIEVES THE WORKS ARE THAT IT IS GOING

09:05AM 15   FORWARD WITH.

09:05AM 16         MR. PAK.

09:05AM 17              MR. PAK:  YES, YOUR HONOR.  AND YOUR HONOR, I HAVE

09:06AM 18   COPIES OF THE SLIDES.

09:06AM 19              THE COURT:  AND THOSE ARE ALWAYS HELPFUL.  THANK YOU.

09:06AM 20         AND PARDON ME, I MAY BE LOOKING AT THESE WHILE YOU ARE

09:06AM 21   TALKING.  I MAY NOT MAKE THE KIND OF EYE CONTACT THAT WOULD

09:06AM 22   APPEAR THAT I'M LISTENING, BUT I'M DOING MY BEST.

09:06AM 23              MR. PAK:  SO YOUR HONOR, WE HAVE PUT TOGETHER A

09:06AM 24   SERIES OF SLIDES THAT WILL WALK US THROUGH THE DISCUSSION.  I

09:06AM 25   THINK IT WILL FOLLOW INTO THE FOLLOWING SETS OF ARGUMENTS.

09:06AM 1      ONE IS, AT A VERY HIGH LEVEL I KNOW YOUR HONOR HAS SEEN THE

09:06AM 2  CASE LAW, BUT JUST TO REMIND EVERYONE ON THE RECORD WHAT THE

09:06AM 3  LAW IS WITH RESPECT TO THE SEPARATE REGISTRATION OF USER

09:06AM 4  INTERFACE VERSUS THE SOURCE CODE WHEN ONE TAKES A COMPUTER

09:06AM 5  PROGRAM AND FILES THE REGISTRATION PAPERWORK WITH THE COPYRIGHT

09:06AM 6  OFFICE.  I WILL COVER THAT VERY BRIEFLY.

09:07AM 7      AND YOUR HONOR, I DO WANT TO GO THEN THROUGH THE DIFFERENT

09:07AM 8  DISCLOSURES THAT WE MADE IN THE CASE.  DIFFERENT STATEMENTS

09:07AM 9  HAVE BEEN MADE BY THE EXPERTS ON BOTH SIDES.  PARTICULARLY, I

09:07AM 10 THINK WHAT'S REALLY IMPORTANT IS TO UNDERSTAND HOW ARISTA'S OWN

09:07AM 11 EXPERTS HAVE UNDERSTOOD THE COPYRIGHTS AT ISSUE TO BE BECAUSE

09:07AM 12 THAT BECOMES A FOUNDATION FOR A NUMBER OF OPINIONS AND SOME

09:07AM 13 DEFENSES THAT ARISTA HAS RAISED.

09:07AM 14     SO I THINK ONCE WE UNDERSTAND THAT PICTURE, THEN I WILL

09:07AM 15 STATE ON THE RECORD, YOUR HONOR, EXACTLY WHAT IT IS THAT WE ARE

09:07AM 16 CLAIMING TO BE, IN THIS CASE, REALLY, THE FOUR OPERATING SYSTEM

09:07AM 17 USER INTERFACES, HOW THEY WERE DISCLOSED, AND MAKE THAT VERY

09:07AM 18 CLEAR ON THE RECORD.

09:07AM 19          THE COURT:  THAT WILL BE VERY HELPFUL.

09:07AM 20     AND SO THAT -- I WANT MR. VAN NEST TO BE CLEARLY SPEAKING

09:07AM 21 TO WHAT YOU ALLEGE THE WORKS TO BE SO THAT THE RECORD IS CLEAR

09:07AM 22 FOR ALL OF US.

09:07AM 23          MR. PAK:  GREAT.

09:07AM 24     SO I THINK THE STARTING POINT, YOUR HONOR, IS THE CASE OF

09:07AM 25 MANUFACTURERS TECH V. CAMS, THIS IS CONNECTICUT CASE IN 1989.

09:08AM 1    THE COURT LOOKED AT ALL OF THE VARIOUS POLICY ARGUMENTS AND

09:08AM 2    WHAT HAPPENED WITH RESPECT TO THE CHANGE IN POLICY AT THE

09:08AM 3    COPYRIGHT OFFICE.

09:08AM 4        AND WHAT THIS CASE HOLDS IS THAT THIS COURT ADOPTS THE

09:08AM 5    APPROACH TO TREAT THE SINGLE REGISTRATION OF THE COMPUTER

09:08AM 6    PROGRAM AS ACCOMPLISHING TWO INTERRELATED YET DISTINCT

09:08AM 7    REGISTRATIONS.

09:08AM 8        ONE OF THE PROGRAM ITSELF AND ONE OF THE SCREEN DISPLAYS OR

09:08AM 9    THE USER INTERFACE OF THAT PROGRAM.  AND IT ALSO RECOGNIZES

09:08AM 10   THAT A COMPUTER PROGRAM AND ITS SCREEN DISPLAYS ARE, FOR

09:08AM 11   COPYRIGHT PURPOSES, FUNDAMENTALLY DISTINCT.

09:08AM 12       AND I THINK IF YOUR HONOR READS THAT OPINION, AND THERE ARE

09:08AM 13   A NUMBER OF DISTRICT COURTS THAT HAVE FOLLOWED THIS APPROACH,

09:08AM 14   THE COURT REALLY ADOPTS MULTIPLE BASIS FOR ITS POSITION.

09:08AM 15       ONE IS JUST THE PRACTICAL REALITY THAT ITS COMPUTER

09:08AM 16   PROGRAMS BECOME MORE COMPLICATED.  THESE PROGRAMS ARE

09:08AM 17   GENERATING, LITERALLY, HUNDREDS OF THOUSANDS OF SCREEN SHOTS,

09:09AM 18   OR MILLIONS POTENTIALLY, DEPENDING ON THE COMPLEXITY OF THE

09:09AM 19   PROGRAM.

09:09AM 20       AND PRIOR TO THE COPYRIGHT POLICY CHANGE, AS A COMPUTER

09:09AM 21   PROGRAM, YOU COULD EITHER REGISTER THE CODE OR YOU COULD ALSO

09:09AM 22   SEPARATELY REGISTER THE SCREEN DISPLAYS.  BUT AS THE NUMBER OF

09:09AM 23   SCREEN DISPLAYS INCREASED, IT BECAME PRACTICALLY IMPOSSIBLE TO

09:09AM 24   REGISTER ALL THE DIFFERENT POSSIBLE SCREENS.  AND SOME OF THESE

09:09AM 25   SCREENS DEPENDS ON HOW YOU THE USER INTERACTS WITH THE SYSTEM.

09:09AM  1        SO THAT WAS ALSO A RECOGNITION IN THIS ORDER THAT WHEN YOU

09:09AM  2    HAVE THE USER PROVIDING INPUT, AND THAT'S PART OF WHAT YOU ARE

09:09AM  3    SEEING ON THE SCREEN, IT REALLY DOES BECOME VERY, VERY

09:09AM  4    DIFFICULT TO TRY TO REGISTER ALL THE DIFFERENT PERMUTATIONS.

09:09AM  5        THERE'S ALSO A BASIC, I THINK A POLICY REASON TO DO THIS,

09:09AM  6    WHICH IS THE COURT RECOGNIZED THAT THE SAME USER SCREEN COULD

09:09AM  7    BE IMPLEMENTED USING DIFFERENT CODE.  AND IN FACT, THERE'S SUCH

09:09AM  8    A PROLIFERATION OF DIFFERENT TYPE OF PROGRAMMING LANGUAGES,

09:10AM  9    PROGRAMMING TECHNIQUES THAT, FROM A USER PERSPECTIVE, YOU COULD

09:10AM  10   HAVE AN IDENTICAL PROGRAM IN TERMS OF THE USER EXPERIENCE

09:10AM  11   THAT'S BEEN IMPLEMENTED USING, FOR EXAMPLE THE C++ PROGRAM

09:10AM  12   LANGUAGE VERSUS JAVA VERSUS DIFFERENT KINDS OF LIBRARIES AND

09:10AM  13   TOOLS.

09:10AM  14       SO THE RECOGNITION WAS THAT WE SHOULDN'T ALLOW THE SAME

09:10AM  15   PROGRAM EFFECTIVELY TO BE CLONED SIMPLY BECAUSE THE INFRINGER

09:10AM  16   HAD USED A DIFFERENT PROGRAMMING LANGUAGE OR A SET OF DIFFERENT

09:10AM  17   LIBRARY TOOLS.  SO THAT, I THINK, WAS ALSO PART OF THIS COURT'S

09:10AM  18   OPINION.

09:10AM  19       JUST TO BE CLEAR, THAT'S NOT THE ONLY COURT, THIS IS ON

09:10AM  20   SLIDE 3, WE HAVE CITED A NUMBER OF CASES, CLARITY SOFTWARE

09:10AM  21   CASE, FROM PENNSYLVANIA THAT QUOTES AND RELIES ON CAMS, AND

09:10AM  22   THEY RECOGNIZED THE SAME LEGAL PRINCIPLE AND POLICY BASIS FOR

09:10AM  23   THIS DECISION.

09:10AM  24       WE HAVE THE JAMISON CASE FROM THE EASTERN DISTRICT OF NEW

09:10AM  25   YORK.  THE HARBOR SOFTWARE CASE FROM THE SOUTHERN DISTRICT OF

09:10AM 1    NEW YORK, AND ALSO THE NAPOLI CASE WHICH CAME OUT OF THE

09:10AM 2    NORTHERN DISTRICT --

09:11AM 3                THE COURT:  NO COURTS IN THE NINTH CIRCUIT HAVE HAD

09:11AM 4    THE OCCASION TO RULE ON THIS?

09:11AM 5                MR. PAK:  I THINK THE NINTH CIRCUIT HASN'T, TO MY

09:11AM 6    KNOWLEDGE, AT THE DISTRICT COURT LEVEL, HAVE DEALT WITH THIS

09:11AM 7    PARTICULAR ISSUE.  BUT OBVIOUSLY WE HAVE CASES LIKE THE

09:11AM 8    SYNOPSYS CASE AND OTHER CASES THAT HAVE FOCUSED JUST ON THE

09:11AM 9    USER INTERFACE ELEMENTS.

09:11AM 10               THE COURT:  WHAT WAS THE DEFINITION OF THE WORK IN

09:11AM 11   THE SYNOPSYS CASE.

09:11AM 12               MR. PAK:  I BELIEVE IT WAS THE COMMAND SET AND THE

09:11AM 13   SYNTAX, THAT WAS THE DEFINITION OF THE WORK.

09:11AM 14               THE COURT:  THAT WOULD BE A SUBSET OF THE USER

09:11AM 15   INTERFACE?

09:11AM 16               MR. PAK:  I BELIEVE SO.

09:11AM 17               THE COURT:  YOU WEREN'T INVOLVED IN THAT CASE?

09:11AM 18               MR. PAK:  I WAS NOT INVOLVED IN THE SYNOPSYS CASE SO

09:11AM 19   I APOLOGIZE, I'M GOING OFF OF WHAT I HAD JUST READ.

09:11AM 20               THE COURT:  I DIDN'T BELIEVE YOU HAD BEEN INVOLVED IN

09:11AM 21   IT BUT YOU HAVE OBVIOUSLY STUDIED THE DOCKET.

09:11AM 22               MR. PAK:  I HAVE STUDIED THE DOCKET, BUT THERE MAY BE

09:11AM 23   THINGS IN THE CONFIDENTIAL RECORD THAT WE DON'T HAVE ACCESS TO.

09:11AM 24               THE NAPOLI CASE, YOUR HONOR, THAT WAS VACATED DUE TO A

09:11AM 25   SETTLEMENT AGREEMENT.  THERE WAS NO SUBSTANTIVE ANALYSIS OR

09:11AM  1    OVERTURNING OF THAT DECISION.

09:11AM  2              THE COURT:  AND THE NAPOLI CASE IS THE ONE YOU HAVE

09:11AM  3    CITED, I THINK.

09:12AM  4              MR. PAK:  THAT'S RIGHT.

09:12AM  5        AND WE HAVE ALSO CITED THE MANUFACTURERS TECH CASE.  THE

09:12AM  6    NAPOLI CASE ACTUALLY CITES THE MANUFACTURERS TECH CASE AND

09:12AM  7    MAKES IT PART OF ITS HOLDING AS WELL.

09:12AM  8        SO ON SLIDE 4, YOUR HONOR, I THINK WE ARE ALL IN AGREEMENT

09:12AM  9    NOW THAT THE ACT OF REGISTERING A COPYRIGHT DOESN'T DEFINE THE

09:12AM  10   WORK, NECESSARILY, AND THAT'S FOR MULTIPLE REASONS.

09:12AM  11       COPYRIGHT BECOMES PART OF THE WORK OR THE WORK BECOMES

09:12AM  12   PROTECTED BY COPYRIGHT AT THE TIME OF CREATION OF THAT WORK.

09:12AM  13   AND THE REGISTRATION REALLY IS A STANDING ISSUE AS TO WHETHER

09:12AM  14   YOU COULD SUE ON THAT COPYRIGHTED WORK BY MAKING THE FILINGS

09:12AM  15   WITH THE REGISTRATIONS.

09:12AM  16       AND EVEN ARISTA ACKNOWLEDGES IN ITS BRIEF AT ECF 635,

09:12AM  17   PAGE 2, FOR EXAMPLE, CISCO CAN ASSERT ITS SEPARATE MANUALS,

09:12AM  18   INDEPENDENT DOCUMENTS AS DISCREET WORKS, ALTHOUGH THEY WERE

09:12AM  19   REGISTERED ALONG WITH THE OPERATING SYSTEMS.

09:12AM  20       SO THERE WILL BE SOME DISCUSSION, I BELIEVE, ABOUT VARIOUS

09:13AM  21   DISCOVERY RESPONSES OR STATEMENTS BY WITNESSES AND EXPERTS AS

09:13AM  22   TO WHAT WAS IT THAT WAS ACTUALLY FILED WITH THE COPYRIGHT

09:13AM  23   OFFICE.

09:13AM  24       AND I THINK IT'S FACTUALLY CORRECT TO SAY THAT WHAT WE

09:13AM  25   FILED WERE THE OPERATING SYSTEM-RELATED DOCUMENTS AS WELL AS

09:13AM  1     THE SOURCE CODE.  THAT'S THE -- WHAT WAS THE REGISTERED WORK IN

09:13AM  2     THE SENSE OF REGISTRATION.

09:13AM  3          THE COURT:  SURE.

09:13AM  4       AND NO ONE -- ARISTA DOESN'T CONTEST THAT THE IOS IS

09:13AM  5     COPYRIGHTED, SUBJECT TO A REGISTRATION.

09:13AM  6          MR. PAK:  THAT'S RIGHT, YOUR HONOR.

09:13AM  7       AND I THINK THE --

09:13AM  8          THE COURT:  AND EACH OF ITS VERSIONS, OF COURSE.

09:13AM  9          MR. PAK:  THAT'S RIGHT.

09:13AM 10       AND SO ULTIMATELY WHAT CISCO IS CONTENDING IN THIS CASE,

09:13AM 11     WHAT WE ARE CONTENDING, YOUR HONOR, IS THAT THAT ACT OF

09:13AM 12     REGISTERING THE OPERATING SYSTEM, ALONG WITH THE DOCUMENTS,

09:13AM 13     GAVE RISE TO A NUMBER OF DISTINCT REGISTRATION FOR PURPOSES OF

09:13AM 14     ENFORCEMENT OR LITIGATION, THAT WE CAN THEN USE THAT

09:13AM 15     REGISTRATION AS A BASIS TO ASSERT, FOR EXAMPLE, THE

09:13AM 16     DOCUMENT-BASED COPYRIGHTS THAT WE HAVE.  WE COULD ALSO CHOOSE

09:13AM 17     TO ASSERT THE USER INTERFACE RELATED COPYRIGHTS THAT WE HAVE.

09:14AM 18       AND IF THE CASE INVOLVED SOURCE CODE COPYING, WE COULD HAVE

09:14AM 19     ALSO ASSERTED THE SOURCE CODE COPYING COPYRIGHTS AS WELL.  BUT

09:14AM 20     THAT THESE ARE A BUNDLE OF RIGHTS THAT WE HAVE, AND WE COULD

09:14AM 21     CHOOSE TO SELECT -- WE COULD CHOOSE TO ASSERT ALL OF THEM

09:14AM 22     TOGETHER OR IN INDIVIDUAL PIECEMEAL FASHION.

09:14AM 23          THE COURT:  WELL, IT SEEMS THAT ARISTA ARGUES THAT

09:14AM 24     THAT'S THE OPERATING SYSTEM AS A WHOLE, WHICH WOULD INCLUDE

09:14AM 25     BOTH THE SOURCE CODE AND THE USER INTERFACE.  SO I DON'T THINK

09:14AM 1    THERE'S ANY QUESTION THAT THE USER INTERFACE IS PROTECTED IN

09:14AM 2    THE REGISTRATIONS, IT'S JUST WHETHER IT CAN BECOME IT'S OWN

09:14AM 3    WORK SEPARATE FROM THE SOURCE CODE.

09:14AM 4         MR. PAK:  THAT'S CORRECT, YOUR HONOR.

09:14AM 5         THE COURT:  AND IT DOESN'T SEEM LIKE IT'S THAT

09:14AM 6    DIFFICULT A DECISION HERE.

09:14AM 7         MR. PAK:  I DON'T THINK SO, YOUR HONOR.

09:14AM 8      I THINK WHEN YOU LOOK AT THE LAW MADE, AND I'M SURE WE WILL

09:14AM 9    HEAR FROM COUNSEL FOR ARISTA, BUT SETTING ASIDE SOME POLICY

09:14AM 10   STATEMENTS FROM THE COPYRIGHT OFFICE WHICH CAN BE INTERPRETED

09:14AM 11   IN A NUMBER OF DIFFERENT WAYS, I DON'T THINK THERE'S BEEN ANY

09:14AM 12   CASE LAW CITED BY ARISTA THAT REALLY CONTRADICTS THIS

09:14AM 13   MANUFACTURING TECH LINE OF CASES AND THE WAY THE DISTRICT

09:15AM 14   COURTS HAVE TREATED USER INTERFACE AS A SEPARATE COPYRIGHTABLE

09:15AM 15   WORK.

09:15AM 16      SO REALLY, I THINK PART OF THE DISCUSSION WE ARE HAVING IS

09:15AM 17   REALLY THE DISCOVERY PROCESS AND WHAT CISCO HAS ALLEGED FROM

09:15AM 18   THE VERY BEGINNING OF THE CASE IN TERMS OF FILING OF THE

09:15AM 19   COMPLAINT TO THE DISCOVERY RESPONSES THAT WERE MADE, TO THE

09:15AM 20   EXPERT OPINIONS THAT WERE RENDERED.  AND I THINK IMPORTANTLY,

09:15AM 21   WHAT WERE THE DEFENSES ARISTA HAS ADVANCED IN THIS CASE, BASED

09:15AM 22   ON THE DISCLOSURES CISCO MADE.

09:15AM 23      AND AS YOUR HONOR KNOWS, RULE 26 IS REALLY A DISCOVERY

09:15AM 24   NOTICE RULE, AND THE IDEA IS HAVE I REASONABLY OR FAIRLY PUT

09:15AM 25   THE OTHER SIDE ON NOTICE OF MY THEORIES.  I THINK WE ALL

09:15AM 1    RECOGNIZE THAT YOU DON'T HAVE TO SPELL OUT IN EXACTLY THE SAME

09:15AM 2    WAY, YOUR CLAIMS, OR USE EXACTLY THE SAME TYPE OF EVIDENCE AS

09:15AM 3    YOU WOULD PRESENT AT TRIAL.  THE REAL QUESTION IS, HAVE WE PUT

09:15AM 4    THE OTHER SIDE FAIRLY ON NOTICE THAT WE, CISCO, HAVE BELIEVED

09:16AM 5    THAT COPYRIGHTABLE USER INTERFACE, OR SOMETIMES WE CALL IT THE

09:16AM 6    CLI, IS SOMETHING THAT IS DISTINCT AND IT'S SOMETHING WE

09:16AM 7    BELIEVE WAS COPIED AND SOMETHING THAT WAS COPYRIGHTED.

09:16AM 8         SO I WOULD LIKE TO START ON SLIDE 5, REALLY, FROM THE PUNCH

09:16AM 9    LINE, WHICH IS, LET'S LOOK AT THE SWORN OPINIONS OF THEIR TWO

09:16AM 10   EXPERTS IN THIS CASE, THE TWO PRIMARY EXPERTS.

09:16AM 11        FIRST OF ALL, WE START WITH MS. CATE ELSTEN WHO IS ARISTA'S

09:16AM 12   DAMAGES OTHER EXPERT.  AND I'M QUOTING FROM ELSTEN REBUTTAL

09:16AM 13   REPORT AT PAGE 92 WHICH WAS FILED IN JULY OF 2016.

09:16AM 14        AS STATED IN SECTION 3(C)(1)(B) OF THIS REPORT, I

09:16AM 15   UNDERSTAND THAT THE COPYRIGHTS AT ISSUE DO NOT RELATE TO THE

09:16AM 16   IMPLEMENTATION OF THE CLI.  WHICH IS EXECUTED BY UNDERLYING

09:16AM 17   SOURCE CODE, NOT IN DISPUTE IN THIS MATTER.

09:17AM 18        SO IT CANNOT BE ANYMORE CLEAR WHAT SHE SAID.  SHE SAID THE

09:17AM 19   COPYRIGHTS AT ISSUE DO NOT CONCERN THE SOURCE CODE.

09:17AM 20        THEN SHE GOES ON TO SAY THAT THE ARISTA EOS SOURCE CODE WAS

09:17AM 21   INDEPENDENTLY DEVELOPED BY ARISTA'S ENGINEERS.  AND THE SECOND

09:17AM 22   AMENDED COMPLAINT DOES NOT ALLEGE THAT ARISTA COPIED ANY OF THE

09:17AM 23   CLI SOURCE CODE.

09:17AM 24        NOW THIS IS NOT A STATEMENT IN ISOLATION OR IN A VACUUM.

09:17AM 25   THE REASON WHY SHE'S MAKING THIS STATEMENT SO CLEARLY AS SHE

09:17AM  1    HAS, AS YOUR HONOR KNOWS, A DISGORGEMENT OPINION.  SO HER JOB

09:17AM  2    ON BEHALF OF ARISTA AS A DAMAGES EXPERT IS TO APPORTION OUT

09:17AM  3    WHAT SHE BELIEVES IS THE VALUE OF THE COPYRIGHTED WORK AT ISSUE

09:17AM  4    VERSUS OTHER TECHNOLOGIES THAT WERE DEVELOPED BY ARISTA,

09:17AM  5    SETTING ASIDE THE COPYRIGHTED WORK.

09:17AM  6         SO IN ORDER TO DO THAT DISGORGEMENT ANALYSIS, WHAT SHE DOES

09:17AM  7    IS SHE VALUES THE CLI OR THE USER INTERFACE AND SAYS, THAT IS

09:17AM  8    WORTH, FOR EXAMPLE AT THE BOTTOM HERE, $16.4 MILLION, IN HER

09:18AM  9    OPINION.

09:18AM  10        AND THEN HE SAYS THE REST OF THE PROFITS THAT ARISTA HAS

09:18AM  11   GAINED BY SELLING THE EOS SOFTWARE AND THE CODE AND THE

09:18AM  12   SWITCHES SHOULD BE APPORTIONED OUT.

09:18AM  13        SO TWO -- SO THIS IS A VERY IMPORTANT PART OF HER

09:18AM  14   APPORTIONMENT OR DISGORGEMENT ANALYSIS IS TO BE ABLE TO TREAT

09:18AM  15   THE CLI AS A SEPARATE COPYRIGHTABLE WORK SO THEN SHE CAN TURN

09:18AM  16   AROUND AND THEN SAY THESE OTHER THINGS ARE NOT AT ISSUE IN THIS

09:18AM  17   CASE, SHOULD BE APPORTIONED OUT.

09:18AM  18        SO WE SEE THAT OPINION STATED ON THE VERY NEXT PAGE, ELSTEN

09:18AM  19   REBUTTAL REPORT 92 TO 93, "BASED ON CURRENTLY AVAILABLE

09:18AM  20   INFORMATION IN MY ANALYSIS, IN CONSIDERATIONS AS OUTLINED

09:18AM  21   ABOVE, I HAVE CONCLUDED THAT THE PORTION OF ARISTA'S U.S.

09:18AM  22   SWITCH PROFITS FROM DECEMBER 2011 THROUGH MARCH 2016, MAY BE

09:18AM  23   REASONABLY CONSIDERED ATTRIBUTABLE TO THE CLI IS

09:18AM  24   $16.4 MILLION."

09:18AM  25        AND THEN SHE SAYS, "FURTHER APPORTION MAY BECOME POSSIBLE

09:19AM 1    BASED ON THE COURT'S RULING AS TO WHAT PORTIONS OF THE ARISTA

09:19AM 2    EOS CLI ARE COVERED BY THE COPYRIGHTS AT ISSUE.  AND SUCH

09:19AM 3    APPORTIONMENT MAY HAVE A MATERIAL IMPACT ON THE FINAL NUMBER."

09:19AM 4         IT'S VERY CLEAR, SHE'S ALREADY DONE THE APPORTIONMENT BASED

09:19AM 5    ON THE USER INTERFACE AS A SEPARATELY COPYRIGHTABLE WORK.  AND

09:19AM 6    THEN SHE'S SAYING BASED ON WHAT WE DO WITH DISSECTION, THAT SHE

09:19AM 7    MAY HAVE FURTHER OPINIONS FOR APPORTIONMENT BASED ON THAT

09:19AM 8    OPINION.

09:19AM 9         WE ALSO HAVE PROFESSOR JOHN BLACK, WHO IS SITTING HERE IN

09:19AM 10   THE COURTROOM, AND HE IS ARISTA'S TECHNICAL EXPERT.  AND DOCTOR

09:19AM 11   BLACK ALSO MAKES THE SAME STATEMENTS ABOUT WHAT IS THE

09:19AM 12   COPYRIGHTABLE WORK AT ISSUE.  THIS IS DOCTOR BLACK, JUNE 3RD,

09:19AM 13   2016.  AND IN THAT REPORT HE'S PROVIDING A NUMBER OF OPINIONS

09:19AM 14   AND HE SAYS, "THE ASPECTS OF THE CISCO CLI OVER WHICH CISCO

09:19AM 15   ASSERTS COPYRIGHT PROTECTION IN THIS LITIGATION," AND THEN HE

09:20AM 16   GOES ON TO SAY, "NAMELY THE ASSERTED COMMAND MODES, PROMPTS,

09:20AM 17   COMMANDS, COMMAND HIERARCHIES AND COMMAND RESPONSES."

09:20AM 18        AND WHY DOES DOCTOR BLACK SAY THAT?  AGAIN HE'S NOT SAYING

09:20AM 19   THAT IN ISOLATION, HE'S SAYING IT TO SUPPORT ONE OF HIS MAJOR

09:20AM 20   OPINIONS IN THIS CASE, AND THAT HAS TO DO WITH THE

09:20AM 21   TRANSFORMATIVE USE.

09:20AM 22        SO DOCTOR BLACK, AS ARISTA'S TECHNICAL EXPERT, WAS TASKED

09:20AM 23   WITH THE QUESTION OF ANALYZING, WAS THERE A TRANSFORMATION OF

09:20AM 24   THE COPYRIGHTED WORK AT ISSUE WHEN ARISTA IMPLEMENTED IT USING

09:20AM 25   DIFFERENT CODE?

09:20AM 1 SO AGAIN, THIS IS IN THE SAME REPORT, PAGE -- OR

09:20AM 2 PARAGRAPH 673, HE SAYS, "I HAVE TAKEN -- UNDERTAKEN ON THE

09:20AM 3 EVALUATION OF THE PURPOSE AND CHARACTER OF THE USE OF THE

09:20AM 4 ASSERTED CLI ASPECTS IN RELATION TO THE REGISTERED WORKS.  IN

09:20AM 5 PARTICULAR, I HAVE CONSIDERED WHETHER THE ALLEGED INFRINGEMENT

09:20AM 6 IS A TRANSFORMATIVE USE OF THE ASSERTED PROTECTED EXPRESSION.

09:21AM 7 BASED UPON ALL OF MY OBSERVATIONS SET FORTH ABOVE, IT IS MY

09:21AM 8 OPINION THAT ARISTA'S ALLEGED USE OF THE ASSERTED CLI ASPECTS

09:21AM 9 IS TRANSFORMATIVE BECAUSE OF THE FUNDAMENTALLY DIFFERENT AND

09:21AM 10 NOVEL ARISTA HARDWARE AND SOFTWARE THAT ARISTA DEVELOPED

09:21AM 11 INDEPENDENTLY, AND BECAUSE THE ASSERTED CLI ASPECTS ARE MERELY

09:21AM 12 A MEANS OF ACCESSING OR CONTROLLING SOME OF THAT INNOVATIVE

09:21AM 13 TECHNOLOGY."

09:21AM 14 SO AGAIN, HE MAKES A DISTINCTION BETWEEN THE USER INTERFACE

09:21AM 15 AND THE CODE TO BE ABLE TO SAY THE COPYRIGHTED WORK AT ISSUE IS

09:21AM 16 THE USER INTERFACE.  IT IS HIS TECHNICAL OPINION THAT BECAUSE

09:21AM 17 ARISTA IMPLEMENTED THAT USER INTERFACE USING DIFFERENT CODE,

09:21AM 18 DIFFERENT OPERATING SYSTEM ARCHITECTURE WITH DIFFERENT FEATURES

09:21AM 19 MAY HAVE DIFFERENT CHARACTERISTICS.

09:21AM 20 THE COURT:  WELL, ISN'T THERE A DISTINCTION BETWEEN

09:21AM 21 THE ASSERTED ELEMENTS THAT YOU CLAIM WERE COPIED AND THE WORK?

09:21AM 22 MR. PAK:  TRUE, YOUR HONOR.

09:22AM 23 THE COURT:  SO THE ASSERTED ELEMENTS CAN COME FROM

09:22AM 24 THE USER INTERFACE OR FROM THE LARGER OPERATING SYSTEM.

09:22AM 25 AND I DO NOT THINK DOCTOR BLACK SPEAKS TO EITHER, PERHAPS

09:22AM  1    MS. ELSTEN DOES MORE DIRECTLY IN HER OPINION ON DISGORGEMENT,

09:22AM  2    BUT THIS ONE I'M NOT ACTUALLY FINDING SUPPORTIVE OF YOUR

09:22AM  3    ARGUMENT.

09:22AM  4         MR. PAK:  EXCEPT, YOUR HONOR, THE NATURE OF THE

09:22AM  5    TRANSFORMATIVE ANALYSIS IS ABOUT NOT NECESSARILY THE

09:22AM  6    TRANSFORMATION OF WHAT IS BEING ASSERTED IN TERMS OF

09:22AM  7    PROTECTABLE ELEMENTS.  THE TRANSFORMATIVE ARGUMENT IS WHETHER

09:22AM  8    THE COPYRIGHTED WORK HAS BEEN TRANSFORMED OR NOT.

09:22AM  9         AND SO ALTHOUGH HIS LANGUAGE --

09:22AM  10        THE COURT:  THAT'S NOT WHAT HE SAYS.

09:22AM  11        MR. PAK:  RIGHT, RIGHT.  BUT IN TERMS OF THE LEGAL

09:22AM  12   FRAMEWORK, WHAT THE DEFENSE IS, IS HAVE I TRANSFORMED THE

09:22AM  13   COPYRIGHTED WORK IN A WAY THAT IS TRANSFORMATIVE COMPARED TO

09:22AM  14   HOW THE COPYRIGHTED WORK WAS USED BY THE COPYRIGHT ONLY.

09:22AM  15        SO ALTHOUGH I AGREE WITH YOUR HONOR THAT DOCTOR ELSTEN'S

09:22AM  16   LANGUAGE IS MUCH MORE CLEAR THAT THE COPYRIGHTED WORK AT ISSUE

09:23AM  17   IS THE CLI, DOCTOR BLACK'S OPINIONS AND THE WAY HE THINKS ABOUT

09:23AM  18   THE USER INTERFACE AS BEING DIFFERENT FROM THE CODE FOR THE

09:23AM  19   TRANSFORMATIVE ARGUMENTS ALSO SUPPORTS HIS POSITION.

09:23AM  20        NOW WHY ARE THE TWO EXPERTS FROM ARISTA SAYING THIS?

09:23AM  21   BECAUSE REALLY, CISCO HAS BEEN PRETTY CLEAR FROM THE VERY

09:23AM  22   BEGINNING OF THIS CASE.  AND WE CAN SEE THAT FROM THE VERY

09:23AM  23   FIRST COMPLAINT THAT WE FILED.  THE LANGUAGE I'M ABOUT TO WALK

09:23AM  24   YOU THROUGH IS ALSO CARRIED THROUGH IN THE VARIOUS AMENDED

09:23AM  25   COMPLAINTS.  THIS IS ON SLIDE 7.

09:23AM  1      AT THE VERY BEGINNING OF THE COMPLAINT WE TALKED ABOUT THE

09:23AM  2  CLI AS THE USER INTERFACE BY WHICH USERS OF CISCO'S PRODUCTS

09:23AM  3  COMMUNICATE WITH THE PRODUCT.  THIS IS ON PARAGRAPH 27.

09:23AM  4      PARAGRAPH 7 OF THE COMPLAINT, WE ALLEGE THAT ARISTA

09:23AM  5  DELIBERATELY AND REPEATEDLY ENGAGED IN EXTENSIVE COPYING IN

09:23AM  6  ORDER TO COMPETE UNFAIRLY WITH CISCO, AND PUBLICLY TOUTS THAT

09:23AM  7  ITS COPYING OF CISCO'S CLI MAKE ITS EASIER FOR CISCO CUSTOMERS

09:24AM  8  TO SWITCH.

09:24AM  9      AND ALSO IN THE SAME COMPLAINT, YOUR HONOR, WE IDENTIFIED

09:24AM  10  THE SAME KINDS OF BUILDING BLOCK ELEMENTS THAT WE HAVE BEEN

09:24AM  11  DISCUSSING ALL ALONG, THE COMMAND EXPRESSIONS, THE COMMAND

09:24AM  12  STRUCTURE, PROMPTS, HIERARCHY, MODES AND SO ON.

09:24AM  13      THEN ON SLIDE 8, AS THE COMPLAINT GOES ON, WE TALK ABOUT

09:24AM  14  THE UNIQUE CLI THAT ARISTA APPROPRIATED IS PROTECTED BY U.S.

09:24AM  15  COPYRIGHTS.  AND THIS IS PARAGRAPH 10 OF THE COMPLAINT, OR

09:24AM  16  ACTUALLY PARAGRAPH 43 OF THE COMPLAINT.

09:24AM  17      THEN WE GO ON TO PARAGRAPH 50 TO ALLEGE THAT ARISTA HAS

09:24AM  18  SUBSTANTIALLY COPIED CISCO'S CLI AND INFRINGED CISCO'S

09:24AM  19  COPYRIGHTS IN CISCO IOS, INCLUDING THE CLI.

09:24AM  20      AND THEN WE GO ON TO TALK ABOUT THE VARIOUS COMMANDS AND

09:24AM  21  ELEMENTS THAT WERE COPIED FROM THE CISCO USER INTERFACE.

09:24AM  22      BASED ON THOSE INITIAL ALLEGATIONS, YOUR HONOR, THEN OUR

09:25AM  23  EXPERT DR. ALMEROTH PROVIDED EXPERT OPINION SUPPORTING THE

09:25AM  24  INFRINGEMENT ALLEGATIONS IN THIS CASE, AND THIS IS SLIDE NINE

09:25AM  25  WHERE HE ALSO ALLEGED THAT THE COPYRIGHTABLE EXPRESSIONS IN

09:25AM 1    CISCO'S CLI IS THE CASE BASIS FOR HIS OPINIONS.

09:25AM 2        HE TALKS ABOUT ON PARAGRAPH 135, YOUR HONOR, ON SLIDE 9 AT

09:25AM 3    THE BOTTOM LEFT-HAND CORNER, ARISTA HAS FURTHER EXPLAINED THAT

09:25AM 4    ITS USE OF CISCO'S COPYRIGHTED CLI WAS TO COMPETE DIRECTLY WITH

09:25AM 5    CISCO.

09:25AM 6        I DON'T THINK THERE COULD BE ANY CONFUSION HERE THAT WE

09:25AM 7    WERE CLAIMING THE CLI AS COPYRIGHTED.  AND WE GO ON TO TALK

09:25AM 8    ABOUT THE COPYRIGHTED WORK, COPYING OF CISCO'S CLI COMMANDS,

09:25AM 9    AND FINALLY THE ALLEGATION THAT ARISTA HAS COPIED THE ENTIRE

09:25AM 10   LOOK AND FEEL OF CISCO'S IOS CLI.

09:25AM 11       SLIDE 10 HE TALKS ABOUT IN THE CONTEXT OF THE ACCESS AND

09:25AM 12   SIMILARITY, AGAIN HIS FOCUS IS ON ACCESS TO THE CLI, ACCESS TO

09:26AM 13   THE COPYING AND THEN THE COPYING HAPPENS DIRECTLY BASED ON THAT

09:26AM 14   ACCESS.  AND THE DIRECT EVIDENCE OF COPYING THAT WE HAVE IN

09:26AM 15   THIS CASE.

09:26AM 16       WE HAVE INCLUDED SOME ADDITIONAL QUOTES FROM SLIDE 11 FROM

09:26AM 17   DR. ELSTEN WHERE SHE MAKES IT CLEAR THAT THE SOURCE CODE

09:26AM 18   RELATED TO THE ALLEGED INFRINGED CLI COMMANDS ARE NOT AT ISSUE

09:26AM 19   IN THIS CASE.  THE COPYRIGHTS PRINCIPALLY CONCERN THE CLI.

09:26AM 20   THERE'S NO ALLEGATION THAT ARISTA HAS COPIED ANY OF CISCO CLI.

09:26AM 21       THOSE ARE VERY CLEAR STATEMENTS FROM HER.  AGAIN, THOSE ARE

09:26AM 22   FUNDAMENTAL PREMISES FOR HER APPORTIONMENT OPINIONS.

09:26AM 23       SLIDE 12, DOCTOR BLACK ALSO MAKES THAT CLEAR.  I HAVE BEEN

09:26AM 24   INFORMED AND UNDERSTAND THAT CISCO DOES NOT ALLEGE ANY SOURCE

09:26AM 25   CODE COPYING BY ARISTA IN THIS CASE.  THE ASPECTS OF CISCO'S

09:26AM 1      CLI THAT ARE THE BASIS OF THE COPYRIGHT INFRINGEMENT CLAIM,

09:27AM 2      THERE'S NO CLAIM THAT ARISTA HAS COPIED ANY SOURCE OR OBJECT

09:27AM 3      CODE THAT IMPLEMENTS THE CISCO CLI.  CISCO IS NOT ALLEGING

09:27AM 4      COPYING OF ANY CISCO SOURCE CODE.

09:27AM 5           AND THOSE ARE FROM DOCTOR BLACK'S REPORT AT PARAGRAPHS 518,

09:27AM 6      519, AND PARAGRAPH 7, AND THE FIRST ONE WAS FROM THE

09:27AM 7      SUPPLEMENTAL REBUTTAL REPORT PARAGRAPH 33.  AND AGAIN, ONE MORE

09:27AM 8      QUOTE FROM DOCTOR BLACK, PARAGRAPH 52.

09:27AM 9           SO WE THINK WE HAVE BEEN VERY CLEAR IN TERMS OF

09:27AM 10     DISCLOSURES.  WE THINK THEIR EXPERTS CLEARLY UNDERSTOOD WHAT

09:27AM 11     WAS AT ISSUE.  AND BASED ON WHAT THEIR UNDERSTANDING WAS OF OUR

09:27AM 12     ALLEGATIONS -- AND THEY, THE EXPERTS SAY, WELL, HAS ARISTA

09:27AM 13     WORKED TOGETHER TO CREATE DEFENSES IN THIS CASE THAT ARE

09:27AM 14     PREDICATED ON TREATING THE USER INTERFACE AS BEING SEPARATE

09:27AM 15     FROM THE CODE.

09:27AM 16          SO FOR US, WE REALLY DON'T THINK ARISTA CAN HAVE IT BOTH

09:27AM 17     WAYS.  IF THEY ARE GOING TO COME IN AND MAKE THE APPORTIONMENT

09:28AM 18     ARGUMENTS TO SAY THE PROFITS MADE BY SELLING THE ACCUSED

09:28AM 19     TECHNOLOGIES SHOULD BE APPORTIONED BASED ON THE FACT THAT USER

09:28AM 20     INTERFACE IS A SMALL COMPONENT FROM THEIR VIEW OF THE OVERALL

09:28AM 21     SYSTEM, AND THE FACT THAT THEY HAVE IMPLEMENTED THE USER

09:28AM 22     INTERFACE USING DIFFERENT CODE, ALLOWS THEM TO MAKE THAT

09:28AM 23     APPORTIONMENT, THEN I THINK FOR FAIR USE PURPOSE OR WHATEVER

09:28AM 24     THEY WANT TO USE THE DEFINITION OF THE WORK TO BE, THEY

09:28AM 25     SHOULDN'T BE ALLOWED TO TAKE A CONTRARY POSITION.

09:28AM  1        AND THE SAME IS TRUE WITH DOCTOR BLACK, THEY ARE MAKING A

09:28AM  2    TRANSFORMATIVE DEFENSE THAT RELIES ON USING THE USER INTERFACE

09:28AM  3    AS THE COPYRIGHTED WORK IN ORDER TO MAKE THE TRANSFORMATIVE

09:28AM  4    ARGUMENTS.

09:28AM  5        AND SO WE HAVE PROVIDED DISCOVERY RESPONSES, YOUR HONOR,

09:28AM  6    THIS IS ON SLIDE 14 WHERE WE MADE SOME OF THE SAME ALLEGATIONS.

09:28AM  7    STARTING IN MAY OF 2015 WHERE WE PROVIDED A NUMBER OF RESPONSES

09:28AM  8    TO THE INTERROGATORIES, AT THE BOTTOM IT SAYS, "ARISTA ALSO HAS

09:29AM  9    EXPLAINED THAT ITS USE OF CISCO'S COPYRIGHTED CLI WAS AN

09:29AM  10   INTENTIONAL PLOY TO WIN CUSTOMERS FROM CISCO SO ARISTA CAN

09:29AM  11   MARKET ITS PRODUCT AS AN EASILY IMPLEMENTED ALTERNATIVE TO

09:29AM  12   CISCO PRODUCTS FOR CISCO'S EXISTING CUSTOMERS."

09:29AM  13       SO COULD WE -- HAD THE DISCOVERY TURNED OUT OTHERWISE OR

09:29AM  14   THE PUBLIC FACTS HAD TURNED OUT OTHERWISE, COULD WE HAVE ALSO

09:29AM  15   ALLEGED OUR COPYRIGHT INTEREST IN THE SOURCE CODE, ABSOLUTELY.

09:29AM  16       BUT IN THIS CASE, WE HAVE BEEN VERY CONSISTENT THAT THE

09:29AM  17   PRINCIPAL OR THE PRIMARY BASIS OF THE COPYING ALLEGATIONS IN

09:29AM  18   THIS CASE INVOLVES WHAT WE HAVE BEEN CALLING THE COPYRIGHTED

09:29AM  19   CLI.  AND THAT HAS BEEN THE ALLEGATION FROM DAY ONE.

09:29AM  20       THE COURT:  AND THAT'S THE ENTIRE USER INTERFACE.  I

09:29AM  21   JUST WANT TO MAKE THAT --

09:29AM  22       MR. PAK:  THAT'S RIGHT.

09:29AM  23       THE COURT:  BECAUSE -- I'VE GONE BACK AND LOOKED AT

09:29AM  24   THE COMPLAINT AND THE AMENDED COMPLAINT AS WELL, AND I MAY HAVE

09:30AM  25   MISUNDERSTOOD AT SUMMARY JUDGEMENT, YOUR TERMINOLOGY.  AND THEN

09:30AM 1     IT BECAME CLEAR THAT IT -- OR I CAME TO UNDERSTAND THAT YOU

09:30AM 2     WERE USING THE TERM SYNONYMOUSLY, AND YOU ARE.

09:30AM 3              MR. PAK:  YES.  THANK YOU, YOUR HONOR.  AND WE ARE.

09:30AM 4         AND AGAIN, I THINK THAT THE BEST PLACE IN THE COMPLAINT TO

09:30AM 5     FIND THAT IS AGAIN, PARAGRAPH 27, WHERE WE SAY CLI IS THE USER

09:30AM 6     INTERFACE BY WHICH USERS OF CISCO'S PRODUCTS COMMUNICATE WITH

09:30AM 7     THE PRODUCT IN ORDER TO CONFIGURE AND MANAGE THE PRODUCT.  SO I

09:30AM 8     THINK WE PROVIDED A CLEAR DEFINITION THERE.

09:30AM 9         OF COURSE, WE DO TALK ABOUT THE DIFFERENT BUILDING BLOCKS.

09:30AM 10    AND I THINK AT THE SUMMARY JUDGEMENT STAGE, WHAT WAS BEFORE

09:30AM 11    YOUR HONOR WERE THE SPECIFIC ELEMENTS THAT HAVE BEEN IDENTIFIED

09:30AM 12    WERE COPIED.

09:30AM 13        BUT THE CLI, USER INTERFACE, THOSE WERE USED SYNONYMOUSLY

09:30AM 14    THROUGHOUT.  AND THAT'S ALSO HOW THE HISTORICAL DOCUMENTS AND

09:30AM 15    THE TESTIMONY FROM THE WITNESSES HAVE TREATED THE TWO WORDS AS

09:30AM 16    WELL.

09:30AM 17        SO WITH THAT UNDERSTANDING, I DO WANT TO COVER VERY BRIEFLY

09:30AM 18    WHAT WE BELIEVE ARE THE USER INTERFACES OR THE COPYRIGHTED

09:31AM 19    WORKS AT ISSUE IN THIS CASE.

09:31AM 20        AND THIS IS ON SLIDE 17.  AS YOU HAVE SEEN FROM OUR PAPERS

09:31AM 21    AND ALSO WE INCLUDED IN OUR COMPLAINT, PARAGRAPH 25, THERE ARE

09:31AM 22    FOUR RELATED YET DISTINCT OPERATING SYSTEMS THAT CISCO MAKES,

09:31AM 23    IOS, IOS XR, IOS XE, AND NX-OS.

09:31AM 24        AND WE HAVE DOCUMENTS THAT YOU WILL SEE AT TRIAL AND

09:31AM 25    TESTIMONY THAT YOU WILL SEE AT TRIAL WHERE ARISTA WILLFULLY AND

09:31AM 1   CONSCIOUSLY DECIDED TO COPY FROM ALL FOUR OF THESE OPERATING

09:31AM 2   SYSTEMS.

09:31AM 3            THE COURT:  AND YOUR EXHIBIT ON PROTECTED ELEMENTS

09:31AM 4   IDENTIFIES THEM BY OPERATING SYSTEM.

09:31AM 5            MR. PAK:  THAT'S RIGHT, YOUR HONOR.  EXACTLY.

09:31AM 6        SO WHAT WE DID IN THE PROTECTABILITY FILING WAS ORGANIZE

09:31AM 7   THE COMMANDS, ORGANIZE THE BUILDING BLOCKS BY OPERATING SYSTEM

09:31AM 8   TYPE.

09:31AM 9        AND THAT'S NOT SOMETHING NEW IN THE CASE, WE HAVE DONE THIS

09:32AM 10  CONSISTENTLY WITH THE RESPONSES AND THE REGISTRATION FILINGS.

09:32AM 11       SLIDE 18, THIS IS PART OF DR. ALMEROTH'S REPORT WHICH WHEN

09:32AM 12  CISCO REGISTERED THEIR COPYRIGHTS, THERE ARE 26 OF THE

09:32AM 13  REGISTRATIONS AT WORK, WE SPECIFICALLY REGISTERED A PARTICULAR

09:32AM 14  VERSION OF ONE OF THESE FOUR OPERATING SYSTEMS.

09:32AM 15       SO THE FIRST SERIES OF REGISTRATIONS YOU SEE ON THE LEFT

09:32AM 16  RELATE TO THE CISCO IOS.  CITE STARTING WITH VERSION 11.0 TO

09:32AM 17  15.4.  THEN WE HAVE SIMILAR REGISTRATIONS FROM IOS XR FROM 3.0

09:32AM 18  TO 5.2.  AND TWO REGISTRATIONS FOR IOS XE, 2.1, 3.5.  AND THEN

09:32AM 19  FOUR REGISTRATIONS FOR NX-OS WHICH IS RELEASE 4.0 TO 6.2.

09:33AM 20       AND THEN THESE ARE THE -- YOUR HONOR, THESE ARE THE BATES

09:33AM 21  NUMBERS FOR THE APPLICATIONS, THE COPYRIGHT REGISTRATION, THE

09:33AM 22  REGISTRATION NUMBERS, AND THE PUBLICATION AND REGISTRATION

09:33AM 23  DATES THAT ARE ASSOCIATED WITH THEM.

09:33AM 24            THE COURT:  ARE THE ONLY ONES THAT WERE REGISTERED

09:33AM 25  MORE THAN FIVE YEARS AFTER PUBLICATION, THE EARLY ONES?

09:33AM 1          MR. PAK:  I BELIEVE THOSE ARE THE EARLY ONES,

09:33AM 2     YOUR HONOR.

09:33AM 3          THE COURT:  OKAY.

09:33AM 4          MR. PAK:  AND THEN ON SLIDE 19, THERE WERE A SERIES

09:33AM 5     OF DISCOVERY REQUESTS FROM ARISTA ABOUT COMMAND ORIGINATION AND

09:33AM 6     COMMERCIAL USE OF THOSE COMMANDS.

09:33AM 7          AND EVERY OPPORTUNITY WE HAD, WE MADE IT VERY CLEAR THAT

09:33AM 8     FOR A PARTICULAR COMMAND THESE ARE THE PARTICULAR OPERATING

09:33AM 9     SYSTEMS OF WHICH THAT COMMAND WAS ASSOCIATED WITH.

09:33AM 10          FOR EXAMPLE, IN THE ALMEROTH REPORT, EXHIBIT OF COPYING

09:33AM 11     TWO, WE HAVE, I WILL USE ONE EXAMPLE, AAA, AUTHENTICATION LOGIN

09:33AM 12     IS THE COMMAND.  FOR THAT COMMAND, WE IDENTIFIED CISCO IOS, IOS

09:34AM 13     XR AND IOS XE, AS THE OPERATING SYSTEMS FOR WHICH THE USER

09:34AM 14     INTERFACE CONTAINS THAT COMMAND.  AND WE PROVIDED THE SIMILAR

09:34AM 15     INFORMATION FOR ALL OF THE ASSERTED ELEMENTS IN THIS CASE.

09:34AM 16          AND IN CISCO'S SUPPLEMENTAL RESPONSE TO ARISTA'S

09:34AM 17     INTERROGATORY 16, YOU CAN SEE THAT WE ALSO IDENTIFIED THE FIRST

09:34AM 18     DATE WHEN A COMMAND WAS MADE PART OF A CISCO PRODUCT.

09:34AM 19          AND AGAIN, WE TREATED THAT AS LOOKING AT A PARTICULAR

09:34AM 20     OPERATING SYSTEM, ONE OF THE FOUR AT ISSUE.  SO HERE IT WOULD

09:34AM 21     BE AAA AUTHENTICATION LOG IN.  IT APPEARED FOR THE FIRST TIME

09:34AM 22     IN CISCO IOS.

09:34AM 23          THE COURT:  IS THERE ANY ASSERTED ELEMENT THAT HAS

09:34AM 24     NOT APPEARED IN A CISCO PRODUCT?

09:34AM 25          MR. PAK:  NO, NO.

09:34AM 1        SO ALL OF THE BUILDING BLOCKS, EVERYTHING YOU HAVE SEEN,

09:34AM 2   WHETHER IT'S COMMAND OUTPUTS, HELP DESCRIPTIONS, HIERARCHIES,

09:34AM 3   ALL OF THAT WAS FIRST INTRODUCED IN A CISCO PRODUCT DESCRIBED

09:34AM 4   IN USER MANUALS EMBODIED IN THE SOURCE CODE.

09:35AM 5        THE COURT:  ALL RIGHT.  NOW LET ME ASK YOU A LITTLE

09:35AM 6   BIT ABOUT THE WORK AS YOU DEFINE IT.

09:35AM 7        MR. PAK:  YES.

09:35AM 8        THE COURT:  I HAVE THE ASSERTED PROTECTABLE ELEMENTS

09:35AM 9   WHICH IS A SUBSET OF THE WORK OF THE USER INTERFACE, AND I

09:35AM 10  GATHER THAT THROUGH TRIAL THERE WILL BE SOME QUANTIFICATION OF

09:35AM 11  THE WORK AND OF THESE ALLEGED PROTECTABLE ELEMENTS.  AND THEN

09:35AM 12  OF THE ULTIMATELY PROTECTABLE ELEMENTS AS I DETERMINE THEM.

09:35AM 13       AND I -- YOU HAVE THROUGHOUT THE CASE, TALKED ABOUT THE

09:35AM 14  COPYING BEING OF THE LOOK AND FEEL OF THE USER INTERFACE.  BUT

09:35AM 15  I DON'T KNOW WHAT PORTION THESE PROTECTABLE ELEMENTS ARE OF THE

09:35AM 16  USER INTERFACE.

09:35AM 17       IS THAT SOMETHING I NEED TO BE CONCERNED ABOUT NOW?

09:35AM 18       MR. PAK:  I DON'T THINK YOU NEED TO BE CONCERNED

09:35AM 19  ABOUT THAT NOW.  BUT LET ME, YOUR HONOR, GIVE YOU A PREVIEW OF

09:35AM 20  WHAT I THINK YOU WILL HEAR FROM BOTH SIDES IN TERMS OF THE

09:36AM 21  ISSUE OF THE AMOUNT OF COPYING, BECAUSE THIS IS REALLY ABOUT

09:36AM 22  UNDER FAIR USE, YOU HAVE A QUESTION OF WHAT WAS TAKEN AS IT

09:36AM 23  RELATES TO THE COPYRIGHTED WORK.

09:36AM 24       THE COURT:  YES.

09:36AM 25       MR. PAK:  THE LAW, WE BELIEVE, IS VERY CLEAR THAT YOU

09:36AM 1    LOOK AT NOT ONLY THE QUANTITATIVE NUMBERS, BUT YOU LOOK AT THE

09:36AM 2    QUALITATIVE ASPECTS.

09:36AM 3              THE COURT:  YES.

09:36AM 4              MR. PAK:  AND SO THE QUESTION ISN'T SUCH THAT --

09:36AM 5    ISN'T JUST A SIMPLE QUANTIFICATION OF HERE'S.

09:36AM 6              THE COURT:  I UNDERSTAND.

09:36AM 7              MR. PAK:  X NUMBER OF COMMANDS, THESE X NUMBER OF

09:36AM 8    COMMANDS SUBSET OF WHICH WOULD HAVE BEEN COPIED INTO THE

09:36AM 9    PRODUCT.

09:36AM 10             THE COURT:  AND SO THE -- THIS QUANTIFICATION, IN

09:36AM 11   COMPARISON, HAS NOTHING TO DO WHERE THE FIRST DETERMINATION BY

09:36AM 12   THE JURY OF INFRINGEMENT.

09:36AM 13             MR. PAK:  THAT'S CORRECT.

09:36AM 14             THE COURT:  IT IS ONLY RELEVANT, IN YOUR VIEW, TO THE

09:36AM 15   JURY'S DETERMINATION OF THE DEFENSE OF FAIR USE.

09:36AM 16             MR. PAK:  THAT'S RIGHT, YOUR HONOR.

09:36AM 17         BECAUSE I DON'T -- AGAIN, I DON'T THINK THEY HAVE PRESERVED

09:36AM 18   THIS ARGUMENT, I DON'T THINK THEY HAVE COME IN AND SAID IF THE

09:36AM 19   COPYRIGHTED WORK IS THE USER INTERFACE AS OPPOSED TO ALL OF THE

09:36AM 20   CODE, I DON'T THINK THAT WE WILL HEAR AN OPINION THAT SAYS THIS

09:37AM 21   IS DE MINIMUS, THAT THE 506 COMMANDS THAT WERE COPIED AND ALL

09:37AM 22   THE DIFFERENT ASPECTS --

09:37AM 23             THE COURT:  DOES THE DE MINIMUS -- AND I'M GETTING

09:37AM 24   OFF ON A TANGENT, BUT I WILL ASK YOU ANYWAY.

09:37AM 25             MR. PAK:  SURE.

09:37AM  1      THE COURT:  DOES A DE MINIMUS USE COME INTO PLAY ON

09:37AM  2  INFRINGEMENT SEPARATE FROM FAIR USE?

09:37AM  3      I DON'T SEE IT IN -- AND I THINK ARISTA BELIEVES IT DOES.

09:37AM  4  I DON'T SEE THAT REFLECTED ANYWHERE IN THE MODEL JURY

09:37AM  5  INSTRUCTIONS.

09:37AM  6      AND SO I'M -- I DON'T KNOW WHICH WAY THAT CUTS.  IT SEEMS

09:37AM  7  LIKE IT FORESHADOWS FAIR USE BECAUSE IT SEEMS TO BE A FAIRLY

09:37AM  8  SIGNIFICANT ASPECT OF FAIR USE.

09:37AM  9      MR. PAK:  I REALLY DO THINK, ULTIMATELY, IT'S A FAIR

09:37AM  10  USE QUESTION, YOUR HONOR.  BECAUSE YOU COULD, FOR EXAMPLE, FROM

09:37AM  11  AN INFRINGEMENT PERSPECTIVE, WHAT WE ARE TRYING TO DO IS ASSESS

09:37AM  12  THE -- WELL, THERE ARE TWO THINGS THAT WE HAVE TO -- AND MY

09:37AM  13  PARTNER, MS. KATHLEEN SULLIVAN, WILL TALK ABOUT THIS A LITTLE

09:37AM  14  BIT MORE IN THE CONTEXT OF THE JURY INSTRUCTIONS.

09:37AM  15      BUT THE LAW UNDER COPYRIGHT LAW HAS TWO PARALLEL PATHS.

09:38AM  16  THERE IS THE DIRECT EVIDENCE OF COPYING LINE OF CASES, AND THEN

09:38AM  17  THERE IS THE LINE OF CASES THAT SAYS WHERE YOU DON'T HAVE

09:38AM  18  DIRECT EVIDENCE OF COPYING, WE LOOK AT QUESTIONS OF ACCESS AND

09:38AM  19  THEN SIMILARITY.

09:38AM  20      AND THE QUESTION IS WHETHER A SUBSTANTIALLY SIMILAR OR --

09:38AM  21      THE COURT:  BUT YOU ARE ALLEGING DIRECT.

09:38AM  22      MR. PAK:  WE ARE.

09:38AM  23      THE COURT:  SO WE DON'T EVEN HAVE TO BE CONCERNED

09:38AM  24  WITH THE CIRCUMSTANTIAL CASE.

09:38AM  25      MR. PAK:  I DON'T THINK WE DO.

09:38AM 1       I THINK IT'S A FALLBACK IN THE SENSE THAT IF THE JURY

09:38AM 2   DOESN'T BELIEVE THE EVIDENCE, SHOULD WE WILL PRESENT AND WE

09:38AM 3   THINK THERE IS SUBSTANTIAL EVIDENCE IN THIS CASE OF DIRECT

09:38AM 4   COPYING, AND WE BELIEVE THAT THE JURY SHOULD BE TOLD THAT IF

09:38AM 5   YOU FIND THERE IS DIRECT COPYING THAT YOU DON'T EVEN HAVE TO

09:38AM 6   GET TO THE QUESTION OF WHETHER THE COPYING WAS SUBSTANTIALLY

09:38AM 7   SIMILAR OR --

09:38AM 8           THE COURT:  SO THAT'S A DIFFERENT SUBSTANTIALLY

09:38AM 9   SIMILAR THAN THE BROAD VERSUS -- THAN THE PROTECTION.

09:38AM 10          MR. PAK:  YES.

09:38AM 11          THE COURT:  BECAUSE IT --

09:38AM 12          MR. PAK:  IT IS, YES.

09:38AM 13          THE COURT:  IT'S DIFFICULT WHEN THE SAME TERM OF ART

09:39AM 14  IS USED SO DIFFERENTLY IN SUCH DIFFERENTLY -- IN SUCH DIFFERENT

09:39AM 15  SETTINGS.  AND WE WILL TALK ABOUT THAT WITH JURY INSTRUCTIONS.

09:39AM 16  BUT IF I HAD TROUBLE WITH IT, AND THE I COULD SPEND TIME TRYING

09:39AM 17  TO FIGURE IT OUT AND I GET TO TALK TO YOU, I DON'T KNOW HOW THE

09:39AM 18  JURY IS GOING TO DEAL WITH THAT.

09:39AM 19      SO I THINK IN THE JURY INSTRUCTIONS THERE MIGHT HAVE BEEN

09:39AM 20  SOME DISCUSSION OF DIFFERENT TERMINOLOGY THAT WOULD BE MORE APT

09:39AM 21  FOR THIS ISSUE OF YOUR PROOF OF COPYING, BECAUSE OF COURSE THE

09:39AM 22  JURY IS GOING TO WALK THROUGH COPYING AND THEN INFRINGEMENT

09:39AM 23  SEPARATELY.

09:39AM 24          MR. PAK:  BUT I THINK THE BOTTOM LINE IS WHETHER YOU

09:39AM 25  LOOK AT IT AS JUST FAIR USE OR EVEN IF YOU WERE TO SAY THAT

09:39AM  1    IT'S A QUESTION RELATED TO INFRINGEMENT AS PART OF SOME TYPE OF

09:39AM  2    DE MINIMUS DEFENSE, YOUR HONOR, I THINK IT COMES BACK TO THE

09:39AM  3    SAME POINT.  WHICH IS FROM A COPYRIGHT PERSPECTIVE, WE ARE NOT

09:39AM  4    ASKING THE JURY OURS JUST SIMPLY COUNT UP THINGS.

09:39AM  5          WHAT WE ARE ASKING THEM TO DO IS GOING OUT AND THERE ARE

09:39AM  6    LOTS OF CASES WE CITED TO YOU YOUR HONOR, IS THIS THE HEART OF

09:40AM  7    A COPYRIGHTED WORK, IS WHAT THEY TOOK IMPORTANT, IS WHAT THEY

09:40AM  8    TOOK SOMETHING --

09:40AM  9                THE COURT:  THAT'S IN A FAIR USE CONSIDERATION.

09:40AM  10               MR. PAK:  FAIR USE.  AND ALSO FROM A DE MINIMUS

09:40AM  11   PERSPECTIVE, WHEN YOU TALK ABOUT --

09:40AM  12               THE COURT:  AGAIN, YOU SAY THERE'S NO DE MINIMUS

09:40AM  13   ASPECT.

09:40AM  14               MR. PAK:  RIGHT.

09:40AM  15               THE COURT:  WHICH WOULD BE REALLY TO NEGATE YOUR

09:40AM  16   CASE.

09:40AM  17       DE MINIMUS USE IS NOT AN AFFIRMATIVE DEFENSE.  SO IT WOULD,

09:40AM  18   IF ANYTHING, BE AN OPPORTUNITY FOR THE DEFENSE TO NEGATE AN

09:40AM  19   ELEMENT OF YOUR CASE.

09:40AM  20               MR. PAK:  I BELIEVE THAT'S CORRECT.

09:40AM  21       WITH RESPECT TO -- I BELIEVE THAT'S CORRECT, ALTHOUGH AS

09:40AM  22   YOUR HONOR NOTES, I THINK THERE'S AMBIGUITY IN THE MODEL

09:40AM  23   INSTRUCTIONS.

09:40AM  24       I THINK THAT FROM OUR PERSPECTIVE, THIS IS A CASE REALLY

09:40AM  25   ABOUT THE, FROM OUR PERSPECTIVE, COPYING OF VERY IMPORTANT

09:40AM 1    COMMANDS, VERY IMPORTANT ELEMENTS.

09:40AM 2        WE HAVE LOTS OF EVIDENCE THAT WE WILL SHOW TO THE JURY AT

09:40AM 3    TRIAL THAT TALK ABOUT ARISTA COPYING THE THINGS THAT THEY

09:40AM 4    THOUGHT WERE THE MOST RELEVANT, THE MOST IMPORTANT.

09:41AM 5        AND THIS DOES GO INTO ONE OF THE ISSUES IN THE CASE THAT

09:41AM 6    YOU HAVE HEARD US TALK ABOUT WHICH IS, FOR EXAMPLE, IOS IS AN

09:41AM 7    UBER OPERATING SYSTEM.

09:41AM 8        WE MAKE LOTS AND LOTS OF PRODUCTS THAT ARISTA DOES NOT

09:41AM 9    MAKE.  IT'S AN OPERATING SYSTEM THAT CONTROLS CABLE DEVICES,

09:41AM 10   IT'S AN OPERATING SYSTEM THAT CONTROLS VOICEOVER IP GATEWAYS

09:41AM 11   AND HOME NETWORKING PRODUCTS, THE KINDS OF PRODUCTS THAT ARISTA

09:41AM 12   DOES NOT MAKE.

09:41AM 13       SO FROM OUR PERSPECTIVE, WHETHER YOU LOOK AT IT AS FAIR USE

09:41AM 14   OR YOU LOOK AT IT AS DE MINIMUS, WE THINK IT'S CRITICALLY

09:41AM 15   IMPORTANT THAT ARISTA COPIED THOSE ELEMENTS FROM OUR INTERFACE

09:41AM 16   THAT PERTAIN DIRECTLY TO THE GIGABIT ETHERNET SWITCHES THAT

09:41AM 17   THEY MAKE.

09:41AM 18           THE COURT:  WELL THERE WAS A POINT IN READING YOUR

09:41AM 19   PAPERS WHERE I BECAME CONCERNED THAT YOU WERE FURTHER

09:41AM 20   SEGMENTING THE WORK TO BE ONLY THE PORTION OF THE USER

09:41AM 21   INTERFACE THAT SUPPORTED THE SWITCH IN QUESTION, AND THAT'S NOT

09:41AM 22   WHAT YOU ARE DOING?

09:41AM 23           MR. PAK:  THAT'S NOT WHAT WE ARE DOING.

09:41AM 24       WE ARE MERELY JUST GIVING YOU A FLAVOR OF THE TYPE OF

09:42AM 25   EVIDENCE THAT WE WILL BE PRESENTING AT TRIAL AS TO THE

09:42AM   1    QUALITATIVE SIGNIFICANCE OF WHAT THEY TOOK.  THAT THE

09:42AM   2    COPYRIGHTED WORK, THE USER INTERFACE THAT CORRESPONDS TO EACH

09:42AM   3    OF THESE FOUR OPERATING SYSTEMS.  WE BELIEVE THAT WHAT THEY

09:42AM   4    TOOK FROM EACH OF THESE FOUR OPERATING SYSTEMS ARE THE MOST

09:42AM   5    IMPORTANT COMMANDS, USER INTERFACE ELEMENTS, FOR THEIR USE IN

09:42AM   6    THE GIGABIT ETHERNET SWITCHING CONTEXT, BECAUSE THAT'S THE TYPE

09:42AM   7    OF PRODUCT THAT THEY MAKE.

09:42AM   8        SO IT DOESN'T MAKE SENSE FOR ARISTA TO COPY COMMANDS THAT

09:42AM   9    HAVE NOTHING TO DO WITH ETHERNET.  SO FROM OUR PERSPECTIVE, FOR

09:42AM  10    THEM TO COME IN AND SAY WELL, THERE ARE 10,000 PLUS COMMANDS IN

09:42AM  11    IOS, WHO CARES, YOU KNOW, FROM OUR PERSPECTIVE.

09:42AM  12            THE COURT:  THAT WOULD BE UP TO THE JURY.

09:42AM  13            MR. PAK:  THAT WOULD BE UP TO THE JURY.

09:42AM  14        SO THAT'S REALLY -- AND THEN AT THE END, YOUR HONOR, WE

09:42AM  15    JUST HAD A SHORT TIMELINE FOR YOUR HONOR'S BENEFIT THAT SHOWS

09:42AM  16    THE DISCLOSURE DATES FOR VARIOUS MATERIALS THAT I HAVE

09:42AM  17    PRESENTED TO YOU TODAY.

09:42AM  18            THE COURT:  THANK YOU.

09:42AM  19            MR. PAK:  THANK YOU, YOUR HONOR.

09:42AM  20            THE COURT:  ALL RIGHT.  LET ME TURN TO MR. KWUN, ARE

09:43AM  21    YOU ARGUING THIS?

09:43AM  22            MR. FERRALL:  I'M GOING TO START, TO TALK ABOUT THE

09:43AM  23    DISCLOSURES, IF THAT'S OKAY WITH YOUR HONOR.

09:43AM  24            THE COURT:  ABSOLUTELY.

09:43AM  25            MR. FERRALL:  SO I HAVE A SET OF SLIDES ALSO,

09:43AM 1    YOUR HONOR.

09:43AM 2            THE COURT:  SO PRESUMABLY, THIS IS -- THIS GOES TO

09:43AM 3    MORE THAN JUST --

09:43AM 4            MR. FERRAL:  IT DOES, INDEED.

09:43AM 5            THE COURT:  OTHERWISE WE WILL BE EATING TURKEY

09:43AM 6    TOGETHER.

09:43AM 7            MR. FERRALL:  NO, NO, NO.

09:43AM 8       YOUR HONOR, I THINK A COMMENT THAT YOU HAD AT THE BEGINNING

09:43AM 9    OF MR. PAK'S ARGUMENT IS AN IMPORTANT PLACE TO START, WHICH IS

09:43AM 10   TO CLARIFY WHAT WE ARE NOT FIGHTING ABOUT RIGHT NOW.

09:44AM 11      WE ARE NOT FIGHTING ABOUT THE FACT THAT CISCO HAS

09:44AM 12   REGISTERED 26 DIFFERENT OPERATING SYSTEMS.  WE ARE NOT FIGHTING

09:44AM 13   ABOUT THE FACT THAT TO THE EXTENT THERE'S PROTECTED EXPRESSION

09:44AM 14   IN THOSE OPERATING SYSTEMS, THOSE ARE REGISTERED, INCLUDING

09:44AM 15   PROTECTED EXPRESSION IN THE USER INTERFACE, THOSE ARE COVERED

09:44AM 16   BY THE REGISTRATION.  THAT'S NOT WHAT THIS IS ABOUT.

09:44AM 17      THE SECOND IMPORTANT POINT, WHICH MAY HAVE BEEN-- BUT WAS

09:44AM 18   NOT THE SUBJECT, LET'S SAY, OF MR. PAK'S TESTIMONY, IS THAT

09:44AM 19   THIS IS NOT A DISPUTE ABOUT WHETHER CISCO HAS ALLEGED COPYING

09:44AM 20   OF ELEMENTS OF THE USER INTERFACE.

09:44AM 21      OF COURSE, WE KNOW THAT.  THAT HAS BEEN ALLEGED FROM THE

09:44AM 22   BEGINNING.  SO ALL OF THE CITATIONS TO EXPERT REPORTS AND

09:44AM 23   DISCOVERY THAT ALLEGES COPYING OF CLI ELEMENTS, ABSOLUTELY.  WE

09:44AM 24   KNOW THAT THAT'S THE CASE.

09:45AM 25      WHAT THIS IS ABOUT IS DEFINING THE WORK TO WHICH THE

09:45AM 1    COPYING IS GOING TO BE COMPARED.  AND WE KNOW THAT'S IMPORTANT

09:45AM 2    FOR TWO, AT LEAST -- ACTUALLY, AT LEAST THREE CRITICAL ASPECTS

09:45AM 3    OF THE CASE.

09:45AM 4        ONE IS INFRINGEMENT, SINCE ULTIMATELY THE JURY NEEDS TO

09:45AM 5    DETERMINE WHETHER WHATEVER IS DETERMINED TO HAVE BEEN COPIED

09:45AM 6    PROTECTED EXPRESSION IS SUBSTANTIALLY SIMILAR OR VIRTUALLY

09:45AM 7    IDENTICAL TO THE WORK, TO THE WORK.  YOU'VE GOT TO KNOW WHAT

09:45AM 8    THE DENOMINATOR IS BEFORE YOU COMPARE IT TO THE ENUMERATOR.

09:45AM 9            THE COURT:  WE HAVE A VAST DIFFERENCE OF VIEW OF THAT

09:45AM 10   TERMINOLOGY RIGHT THERE THAT WE ARE GOING TO HAVE TO TALK ABOUT

09:45AM 11   IN JURY INSTRUCTIONS.

09:45AM 12           MR. FERRALL:  RIGHT, RIGHT.  BUT I DON'T THINK

09:45AM 13   THERE'S ANY QUESTION THAT THE LAW REQUIRES THAT COMPARISON.

09:45AM 14           THE COURT:  THERE'S SOME COMPARISON THAT NEEDS TO BE

09:45AM 15   DONE, THAT'S CERTAINLY TRUE.

09:45AM 16           MR. FERRALL:  RIGHT.

09:45AM 17       IT'S ALSO CRITICAL TO FAIR USE BECAUSE THE STATUTORY

09:46AM 18   ELEMENTS ALONE OF FAIR USE REFER TO THE USE IN THE CONTEXT OF

09:46AM 19   THE WORK.  WHAT IS THE NATURE OF THE WORK, AND HOW HAS THE

09:46AM 20   ALLEGED INFRINGEMENT CAUSED A MARKET HARM TO THE WORK.

09:46AM 21       AGAIN, YOU'VE GOT TO KNOW THE DENOMINATOR.

09:46AM 22       LASTLY, FOR DAMAGES, AND HERE I WILL BEGIN TO ADDRESS SOME

09:46AM 23   OF MR. PAK'S POINT AND THEN WE WILL GET TO MY OWN PRESENTATION.

09:46AM 24   THIS CASE, THE DAMAGES CASE THAT WE WILL HEAR IS ALL ABOUT

09:46AM 25   DAMAGES TO LOST SALES OF CISCO'S SWITCHES WHICH RUN ENTIRE

09:46AM 1    OPERATING SYSTEMS.

09:46AM 2        THERE'S NO DAMAGES THEORY THAT SAYS THIS IS ABOUT THE LOST

09:46AM 3    VALUE TO A USER INTERFACE, NOT ONE.  NEITHER SIDE TALKS ABOUT

09:46AM 4    THE LOST VALUE TO A USER INTERFACE.  THEY TALK ABOUT PROFITS

09:47AM 5    EITHER THAT CISCO LOST OR THAT ARISTA GAINED AS A RESULT OF

09:47AM 6    SELLING ENTIRE SWITCHES RUNNING ENTIRE OPERATING SYSTEMS.

09:47AM 7        SO WE KNOW THAT THIS IS A CRITICAL ISSUE, WHICH IS WHY WE

09:47AM 8    BROUGHT THE MOTION IN LIMINE AND YOUR HONOR DEFERRED IT.  AND

09:47AM 9    IF WE COULD JUST GO TO THE FIRST SLIDE.

09:47AM 10       YOUR HONOR, I THINK YOU WERE PROBABLY -- PROBABLY HAD THIS

09:47AM 11   IN MIND THIS MORNING, SAID THAT THIS IS CISCO'S BURDEN TO

09:47AM 12   DEMONSTRATE THAT THE DISCLOSURE HAS BEEN ADEQUATE.

09:47AM 13       SO WE KNEW THIS WAS IMPORTANT FROM THE VERY BEGINNING, WE

09:47AM 14   ASKED A SERIES OF INTERROGATORIES THAT I'M GOING TO WALK YOU

09:47AM 15   THROUGH, AND I BEG THE COURT'S PATIENCE WITH THIS BECAUSE IT

09:47AM 16   WILL TAKE A LITTLE BIT OF TIME, BUT I WILL SAY THAT NOT ONE OF

09:47AM 17   THESE WAS DISCUSSED BY MR. PAK.

09:47AM 18       SO WE ASKED FOR THIS INFORMATION ON AT LEAST FOUR DIFFERENT

09:47AM 19   OCCASIONS.  THE FIRST ONE WAS PROPOUNDED IN APRIL OF 2015,

09:48AM 20   INTERROGATORY 6.  IDENTIFY WITH SPECIFICITY EACH COPYRIGHTED

09:48AM 21   WORK BY COPYRIGHT AND REGISTRATION NUMBER THAT YOU CONTEND

09:48AM 22   ARISTA HAS UNLAWFULLY COPIED.

09:48AM 23       OKAY.  CISCO HAS ANSWERED THIS QUESTION, THIS INTERROGATORY

09:48AM 24   MULTIPLE TIMES.  I WILL SHOW YOU THE FIRST ANSWER, WHICH IS THE

09:48AM 25   NEXT SLIDE.  BUT THIS IS REPEATED UP THROUGH THE VERY LAST DAY

09:48AM 1    OF DISCOVERY, THEY HAD THE SAME ANSWER.

09:48AM 2        CISCO'S ANSWER WAS TO IDENTIFY BY COLUMN, THAT COLUMN, A

09:48AM 3    LIST OF COPYRIGHTED WORKS INFRINGED BY ARISTA WHICH WERE ENTIRE

09:48AM 4    OPERATING SYSTEMS.  OKAY.  NO MENTION OF USER INTERFACE, NO

09:48AM 5    MENTION THAT THE WORK IS THE CLI.

09:48AM 6        IN THE SAME SET OF INTERROGATORIES, WE ASKED, IDENTIFY WITH

09:48AM 7    SPECIFICITY EACH ARISTA CLI COMMAND THAT YOU CONTEND INFRINGES

09:49AM 8    ANY COPYRIGHTED WORK, AND IDENTIFY WHICH WORK IT INFRINGES.

09:49AM 9    BECAUSE WE NEED TO TRY TO PAIR THINGS UP, WHICH ONE GOES WITH

09:49AM 10   WHICH.

09:49AM 11       SO AGAIN, WE GOT A RESPONSE WHICH REFERS US TO EACH

09:49AM 12   OPERATING SYSTEM.  IOS 11.0, 11.1, ET CETERA.  I DON'T HAVE THE

09:49AM 13   WHOLE CHART HERE, BUT EVERY REGISTERED OPERATING SYSTEM, THAT'S

09:49AM 14   WHAT CISCO DISCLOSED AS THE WORK IN WHICH ONE COULD FIND, THE

09:49AM 15   WORK THAT WAS INFRINGED BY THE USE OF COMMANDS.

09:49AM 16           THE COURT:  WELL, THE REGISTERED WORK IS THE IOS.

09:49AM 17       SO, YOU KNOW, YOU DON'T AGREE WITH MR. PAK'S ARGUMENT THAT

09:49AM 18   THE CASE LAW GRANTED FROM OTHER DISTRICTS TALKS ABOUT WITHIN

09:49AM 19   EACH REGISTRATION THERE ARE TWO DISTINCT, PROTECTABLE WORKS,

09:50AM 20   THE SOURCE CODE AND THE USER INTERFACE.  AND SO TO IDENTIFY THE

09:50AM 21   REGISTERED WORK AS THE IOS, THERE IS NO PHYSICAL REGISTERED

09:50AM 22   WORK OF THE USER INTERFACE, THIS IS MAYBE A JUDGE-CREATED

09:50AM 23   CONSTRUCT TO MAKE SENSE OF THE -- AND I THINK IT'S SUPPORTED,

09:50AM 24   AT LEAST CISCO GIVES ME SOME SUPPORT FOR THE COPYRIGHT OFFICE

09:50AM 25   ALSO SEEING THIS AS SEPARATE PROTECTED WORKS.  I'M JUST NOT

09:50AM 1     SURE THAT WHEN IT SAYS REGISTERED WORK, THAT WE ARE GETTING AT

09:50AM 2     THE ISSUE I HAVE TO DECIDE WHICH IS THE ASSERTED WORK WHICH I

09:50AM 3     THINK MAY BE DIFFERENT AS A SUBSET.

09:50AM 4            MR. FERRALL:  WELL, FAIR ENOUGH.  ALTHOUGH THE

09:50AM 5     PREVIOUS ANSWER TO INTERROGATORY 6 --

09:50AM 6            THE COURT:  WELL, THE PREVIOUS ONE MIGHT HAVE BEEN A

09:50AM 7     LITTLE CLOSER, BUT THIS ONE SAYS REGISTERED WORK.  THE PREVIOUS

09:50AM 8     ONE SAYS COPYRIGHTED WORK.

09:50AM 9            MR. FERRALL:  RIGHT.

09:50AM 10        AND I DON'T THINK CISCO IS GOING TO DENY THAT IT WANTS TO

09:51AM 11    PRESENT TO THE JURY THE ARGUMENT THAT THE COPYRIGHTED WORK TO

09:51AM 12    WHICH THEY COMPARE THE ALLEGED COPYING IS THE USER INTERFACE.

09:51AM 13           THE COURT:  OH, THAT'S WHAT WANTS TO DO.

09:51AM 14           MR. FERRALL:  ABSOLUTELY.

09:51AM 15        AND SURELY, WE DO HAVE A DISPUTE ABOUT THE LAW AND WHETHER

09:51AM 16    IT'S EVEN POSSIBLE, BUT SURELY IF CISCO WANTED THAT TO BE THE

09:51AM 17    THEORY IN THE CASE WHEN WE ASKED WHAT THE COPYRIGHTED WORK WAS,

09:51AM 18    IT SHOULD HAVE SAID THE USER INTERFACE OF IOS 11.0.  AND THE

09:51AM 19    USER INTERFACE OF ALL OF THESE OTHER OPERATING SYSTEMS.

09:51AM 20        BUT LET'S CONTINUE BECAUSE THERE'S MORE.

09:51AM 21           THE COURT:  OKAY.

09:51AM 22           MR. FERRALL:  LET'S GO ON TO -- SO LATER IN THE CASE,

09:51AM 23    IN MARCH OF 2016, AS WE LEARNED MORE ABOUT THE ALLEGATIONS, WE

09:51AM 24    CAME TO REALIZE, OF COURSE THAT THERE LIST OF, FOR EXAMPLE 500

09:51AM 25    COMMANDS, AND HIERARCHIES AND SO FORTH, IS NOT FOUND IN ANY

09:51AM 1    OPERATING SYSTEM.  THEY ARE COMBINED.  IT'S A COMBINED LIST

09:52AM 2    FROM VARIOUS OF THE 26 REGISTERED WORKS.  SO WE SAID WE NEED TO

09:52AM 3    GET CLARITY ON THIS.

09:52AM 4         SO WE ASKED FOR EACH COMMAND, MODE, HIERARCHY, PROMPT OR

09:52AM 5    COMMAND RESPONSE THAT YOU CONTEND ARISTA UNLAWFULLY COPIED,

09:52AM 6    IDENTIFY EACH AND EVERY ASSERTED COPYRIGHTED REGISTERED WORK IN

09:52AM 7    WHICH SUCH COMMAND APPEARS, INCLUDING THE REGISTRATION NUMBER,

09:52AM 8    ET CETERA, AND THE BATES NUMBER.

09:52AM 9         OKAY.  SO THE RESPONSE, AGAIN, IS A LIST OF OPERATING

09:52AM 10   SYSTEMS.

09:52AM 11        THEN IN THE SAME SET OF INTERROGATORIES, THE NEXT

09:52AM 12   INTERROGATORY, AND THIS GETS TO YOUR QUESTION EARLIER, WHICH IS

09:52AM 13   THE QUESTION OF WHAT PORTION OF THE WORK IS ALLEGEDLY COPIED.

09:52AM 14        AND WHILE WE CAN HAVE A DISPUTE, AND MR. PAK AND CISCO CAN

09:52AM 15   ARGUE TO THE JURY THAT IT SHOULD ALL BE QUALITATIVE, THERE'S

09:53AM 16   CERTAINLY NO LAW THAT SAYS IT CAN ONLY BE QUALITATIVE AND

09:53AM 17   QUANTITATIVE DOESN'T MATTER.

09:53AM 18        SO WE ASKED INTERROGATORY 25.  FOR EACH

09:53AM 19   COPYRIGHT-REGISTERED WORK THAT CISCO ALLEGES ARISTA UNLAWFULLY

09:53AM 20   COPIED, IDENTIFY THE TOTAL NUMBER OF COMMANDS MODES

09:53AM 21   HIERARCHIES, PROMPTS, RESPONSES AND LINES OF SOFTWARE CODE IN

09:53AM 22   THE WORK.

09:53AM 23        THE RESPONSE, AGAIN, IS A LIST OF OPERATING SYSTEMS ONLY,

09:53AM 24   NEVER A MENTION OF THE USER INTERFACE, NEVER A MENTION OF --

09:53AM 25   THERE'S, FRANKLY, NOT EVEN A LIST OF THE NUMBER OF COMMANDS.

09:53AM 1    WE ARE TOLD TO REFER TO SOURCE CODE AND DOCUMENTS.

09:53AM 2              THE COURT:  WELL, WAIT A MINUTE, YOU ASKED FOR SOURCE

09:53AM 3    CODE, SO IT HAD TO BE PROVIDED, IT DOESN'T MEAN IT'S ASSERTED

09:53AM 4    IN THIS CASE.

09:53AM 5              MR. FERRALL:  CORRECT.

09:53AM 6      BUT THE QUESTION, THE INTERROGATORY ASKED FOR THE LINES OF

09:53AM 7    CODE OF THE ASSERTED WORK.  AND WHAT THEY DID WAS THEY REFERRED

09:54AM 8    US TO THE ENTIRE SOURCE CODE.  THAT'S FINE.  THAT WOULD -- THAT

09:54AM 9    CAN ONLY LEAD US TO CONCLUDE THAT IT'S THE ENTIRE SOURCE CODE

09:54AM 10   THAT REPRESENTS THE LINES OF THE ASSERTED WORK, RIGHT.

09:54AM 11     IF THE QUESTION IS, WHAT ARE THE -- WHAT'S THE PORTION OF

09:54AM 12   THE CODE THAT IMPLEMENTS THE CLI OR THE USER INTERFACE, THIS

09:54AM 13   WAS THE TIME FOR THEM TO ANSWER THAT QUESTION, BUT THEY DIDN'T.

09:54AM 14     LET ME TALK TO YOU A LITTLE BIT --

09:54AM 15             THE COURT:  SO WHEN I LOOK AT THIS RESPONSE, OF

09:54AM 16   COURSE THIS ACTUALLY DOESN'T MEAN ANYTHING TO ME, I MEAN, THIS

09:54AM 17   IS, THIS IS INCOMPREHENSIBLE TO ME, SO I JUST WANT TO

09:54AM 18   UNDERSTAND WHAT YOU'RE SAYING.

09:54AM 19     THAT BASED ON THIS INTERROGATORY NUMBER 25 WHERE YOU ASKED

09:54AM 20   FOR EACH WORK COPIED, IDENTIFY THE TOTAL COMMANDS, ET CETERA

09:55AM 21   AND LINES OF SOFTWARE CODE IN THE WORK.  AND YOU ARE SAYING

09:55AM 22   THEY IDENTIFIED THE ENTIRE IOS AND NOT JUST THE CODE THAT

09:55AM 23   CORRESPONDED TO THE USER INTERFACE?

09:55AM 24             MR. FERRALL:  YES.  AND I WANT TO TALK ABOUT THE

09:55AM 25   DOCUMENTS THEY IDENTIFIED ALSO.

09:55AM   1        SO THEY -- SO FOR THE CODE, THEY IDENTIFIED JUST ALL OF THE

09:55AM   2    SOURCE CODE THEY PRODUCED.  FOR THE RELATED DOCUMENTS,

09:55AM   3    YOUR HONOR, THIS CITATION TO CSI, CLI, OBVIOUSLY THAT'S RATHER

09:55AM   4    OBTUSE.

09:55AM   5            THE COURT:  FOR ME IT IS.

09:55AM   6            MR. FERRALL:  LET ME TELL YOU WHAT IT IS.

09:55AM   7        FOR 11.0, IT'S A REFERENCE TO A LINK IN CISCO.  THAT LINK

09:55AM   8    CITES TO, IN THE CASE OF 11.0, IT CITES TO ABOUT A DOZEN, MAYBE

09:55AM   9    20 DIFFERENT MANUALS COVERING EVERYTHING THAT 11.0 COVERS.

09:56AM  10        NOW THAT'S WHAT THEY DO FOR EVERY OPERATING SYSTEM.  BY THE

09:56AM  11    TIME YOU GET TO SOME OF THESE LATER OPERATING SYSTEMS, THERE

09:56AM  12    ARE, JUST TO LIST THE TITLES OF THE MANUALS TAKES MULTIPLE

09:56AM  13    PAGES SINGLE SPACED.  IT'S A SUMMARY EXHIBIT.  I CAN HAND YOU

09:56AM  14    UP.

09:56AM  15            THE COURT:  NO.

09:56AM  16            MR. FERRALL:  IT IS ABOUT A 30-SOME PAGE

09:56AM  17    SINGLE-SPACED LIST OF MANUALS.

09:56AM  18        IF YOU INCLUDE EVERY DOCUMENTATION THAT HAS BEEN CITED IN

09:56AM  19    RESPONSE TO THESE INTERROGATORIES THAT HAS ASKED FOR AN

09:56AM  20    EXPLANATION OF WHAT'S THE WORK, IT'S A 30-PLUS SINGLE-SPACED

09:56AM  21    LIST OF MANUALS COVERING EVERYTHING THAT CISCO DOES.  CABLE

09:56AM  22    MODEMS, HOME WIFI, PROTOCOLS THAT HAVE BEEN OUT OF DATE FOR

09:56AM  23    YEARS.

09:56AM  24        IT'S ALL CITED, IT'S ALL OUT THERE.  THAT'S WHAT CISCO

09:56AM  25    ALLEGED WE ARE SUPPOSED TO COMPARE THE ASSERTION AGAINST.

09:57AM  1      THAT'S WHAT THEY'VE ALLEGED.

09:57AM  2             THE COURT:  CISCO IS JUST GIVING YOU WHAT THEY THINK

09:57AM  3      IS RESPONSIVE TO WHAT YOU'VE ASKED, AND THAT CAN BE QUITE

09:57AM  4      DIFFERENT THAN WHAT THEY ARE GOING TO LATER ASSERT.

09:57AM  5             MR. FERRALL:  WELL, BUT YOUR HONOR, HERE'S THE

09:57AM  6      PROBLEM, THE PRACTICAL PROBLEM THAT WE FACE -- AND I'VE GOT ONE

09:57AM  7      MORE DISCOVERY RESPONSE TO TALK ABOUT -- THE PRACTICAL PROBLEM

09:57AM  8      THAT WE FACE IS THAT BECAUSE THERE'S NOT AN ASSERTION HERE IN

09:57AM  9      RESPONSE TO FOUR DIFFERENT INTERROGATORIES, THAT THE WORK TO BE

09:57AM 10      COMPARED IS THE USER INTERFACE.  THERE WAS NEVER DISCOVERY

09:57AM 11      TAKEN ABOUT THE METES AND BOUNDS OF THAT USER INTERFACE.  WHAT

09:57AM 12      DOES CONSTITUTE THAT USER INTERFACE.

09:57AM 13         WE SAW AFTER SUMMARY JUDGEMENT, LONG AFTER DISCOVERY

09:57AM 14      CLOSED, CISCO'S THEORY OF THE FOUR BUILDING BLOCKS, BUT WE

09:58AM 15      NEVER HAD THE CHANCE TO -- THE DISCLOSURE OF 4 OR 5 BUILDING

09:58AM 16      BLOCKS, WHAT CONSTITUTES THOSE BUILDING BLOCKS?

09:58AM 17         THERE'S NEVER BEEN A QUANTIFICATION OF THE COMMANDS IN EACH

09:58AM 18      USER INTERFACE.  THERE'S NEVER BEEN A QUANTIFICATION OF THE

09:58AM 19      MARKET HARM ON THE USER INTERFACES.  YOU WON'T SEE THAT IN ANY

09:58AM 20      OF THE EXPERT REPORTS, YOU WON'T SEE ANY ANALYSIS OF THIS USER

09:58AM 21      INTERFACE HAS THIS SORT OF MARKET VALUE.

09:58AM 22             THE COURT:  I GUESS, MR. FERRALL, I THINK YOUR

09:58AM 23      ARGUMENT GOES TOO FAR.

09:58AM 24         IN MY VIEW, WHAT YOU ARE SUGGESTING WOULD ESSENTIALLY

09:58AM 25      ELIMINATE THE OPPORTUNITY TO PROTECT COMPUTER SOFTWARE PROGRAMS

09:58AM 1    BECAUSE OF THE ENORMITY OF THE WORK ITSELF.  AND THE DROP IN

09:58AM 2    THE OCEAN THAT THE COPYING WOULD BE, THAT FAIR USE WILL ALWAYS

09:58AM 3    RULE THE DAY SIMPLY ON THE QUANTITATIVE EVALUATION.  AND IF

09:58AM 4    THERE'S A DE MINIMUS EVALUATION ON INFRINGEMENT, A COPYRIGHT

09:59AM 5    OWNER COULD NEVER WIN.

09:59AM 6        I THINK YOU ARE SAYING TOO MUCH HERE.  AND I THINK IT IS

09:59AM 7    REASONABLE, AND FRANKLY I DON'T ACTUALLY THINK THAT CISCO HAS

09:59AM 8    NARROWED THE SCOPE OF ITS WORK AS MUCH AS I HAD FEARED IT WAS

09:59AM 9    DOING EARLIER.  THE USER INTERFACE IS STILL A SUBSTANTIAL WORK.

09:59AM 10       AND THESE -- AND I HAVE -- I MEAN, I HAVE TO SIT AT THE

09:59AM 11   TRIAL TO FIND OUT WHAT IT IS BECAUSE IT DOESN'T MATTER TO ME

09:59AM 12   NOW HOW BIG IT IS.  BUT I ONLY BECAME CONCERNED WHEN I THOUGHT

09:59AM 13   THAT THEY WERE DEFINING THE WORK AS EXACTLY WHAT WAS COPIED.

09:59AM 14   AND I WAS WRONG ON THAT.

09:59AM 15       AND THEN I BECAME CONCERNED THROUGH SOME OF THE PHRASEOLOGY

09:59AM 16   THAT THEY WERE DEFINING THE WORK AS THAT PORTION OF THE USER

09:59AM 17   INTERFACE THAT SUPPORTED THE PARTICULAR PRODUCTS IN QUESTION.

09:59AM 18   AND THAT'S NOT WHAT THEY ARE DOING.

09:59AM 19       SO THERE CLEARLY WERE WAYS THAT THEY COULD HAVE MAYBE

10:00AM 20   MANIPULATED THE DEFINITION OF THE WORK THAT WOULD HAVE BEEN

10:00AM 21   OUTSIDE THE BOUNDS OF ANY CASE AUTHORITY.

10:00AM 22       BUT HERE, THIS IS -- SEEMS LIKE A PRETTY STRAIGHTFORWARD

10:00AM 23   DIVIDE, A COMPLAINT THAT ACTUALLY SEEMS TO IDENTIFY IT.  I HAVE

10:00AM 24   SOME CONCERNS ABOUT YOUR COMMENTS ON DAMAGES THAT I WILL ASK

10:00AM 25   MR. PAK TO ADDRESS WHEN IT'S HIS TURN.

10:00AM 1      BUT, YOU KNOW, I GUESS I'M JUST NOT SEEING IT.  YOU KNOW,

10:00AM 2  I'M A LITTLE -- I AM CONCERNED WHEN YOU TALK ABOUT THERE NOT

10:00AM 3  BEING DISCOVERY TO DETERMINE, AS YOU WILL, THE METES AND BOUNDS

10:00AM 4  OF THE USER INTERFACE.  BUT I DON'T THINK HE'S PUTTING METES OR

10:00AM 5  BOUNDS ON IT, I'M NOT SURE THERE IS ANY DISCOVERY WHEN IT IS

10:00AM 6  THE ENTIRE IOS AND NOT A SUBSET OF IT.

10:00AM 7      MR. FERRALL:  WELL, WE AGREE THAT IT'S THE ENTIRE

10:00AM 8  IOS.

10:00AM 9      BUT WHAT -- WHERE THE ENTIRE OPERATING SYSTEM -- SORRY,

10:01AM 10  WHERE THE USER INTERFACE PART OF THE OPERATING SYSTEM BEGINNING

10:01AM 11  AND ENDS, IS NOT DEFINED AT ALL, YOUR HONOR.

10:01AM 12      AND IN PARTICULAR, THIS COMES IN THE CODE, CISCO WANTS TO

10:01AM 13  CALL MR. TERRY SLATTERY.  MR. TERRY SLATTERY IS A FORMER CISCO

10:01AM 14  CONTRACTOR BACK FROM 1990 -- 1990'S, EARLY 1991.  HE IS OFTEN

10:01AM 15  REGARDED AS THE FATHER OF THE CISCO CLI, THOSE ARE LITERALLY

10:01AM 16  THE WORDS.

10:01AM 17      NOW DOES THAT MEAN THAT HE CREATED A LOT OF CLI COMMANDS OR

10:01AM 18  RESPONSES?  NO, ACTUALLY HE'S CREDITED, I THINK IN THIS CASE,

10:01AM 19  WITH ONE COMMAND.  WHAT HE DID WAS WRITE ALL OF THE UNDERLYING

10:01AM 20  CODE THAT IMPLEMENTS THE CLI.  SO THAT'S WHAT HE, AND INDEED A

10:01AM 21  LOT OF PEOPLE REFER TO AS A CRITICAL PART, AT LEAST, OF THE

10:01AM 22  CLI.

10:01AM 23      WE'VE NOT HAD ANY OPPORTUNITY OR ANY REASON TO TRY TO

10:02AM 24  DEFINE WHERE THE CLI IMPLEMENTING CODE BEGINS VERSUS THE REST

10:02AM 25  OF IOS.  AND AS I UNDERSTAND IT --

10:02AM 1      THE COURT:  BUT WHAT'S THE RELEVANCE OF THE CLI

10:02AM 2  IMPLEMENTING CODE?  IT'S NOT AT ISSUE IN THE CASE.

10:02AM 3      MR. FERRALL:  IT'S WHAT MAKES THE USER INTERFACE WHAT

10:02AM 4  IT IS.  IT'S WHAT MAKES THE USER INTERFACE -- THE EFFORT THAT

10:02AM 5  GOES INTO IMPLEMENTING THE CLI, THAT'S HOW THE USER INTERFACE

10:02AM 6  EXISTS, THAT'S THE CREATIVITY, THAT'S THE CREATIVE WORK THAT

10:02AM 7  WENT INTO IT.

10:02AM 8      THE COURT:  I DON'T THINK THAT'S WHAT IS CISCO IS

10:02AM 9  ARGUING, THOUGH.

10:02AM 10      MR. FERRALL:  WELL, BUT THAT'S WHAT WE ARE GOING TO

10:02AM 11  ARGUE, THAT'S WHAT CREATES PART OF AT LEAST THE LOOK AND FEEL.

10:02AM 12     WE DON'T THINK THAT IT WAS COPIED, THE SOURCE CODE

10:02AM 13  CERTAINLY WASN'T COPIED.  BUT THE WORK THAT GOES INTO AND THE

10:02AM 14  PROCESS OF CREATING THE CLI, INCLUDING ALL ASPECTS OF THE LOOK

10:02AM 15  AND FEEL, NOT JUST WHAT'S ASSERTED IN THIS CASE, THAT'S SURELY

10:03AM 16  RELEVANT FOR THE JURY TO CONSIDER CISCO'S LOOK AND FEEL

10:03AM 17  ARGUMENT.

10:03AM 18      THE COURT:  WELL, I'M NOT SAYING IT'S NOT RELEVANT,

10:03AM 19  BECAUSE CERTAINLY THERE -- BUT THIS CASE IS ABOUT THE USER

10:03AM 20  INTERFACE, THAT PORTION OF THE PROGRAM THAT THE ENGINEER SEES

10:03AM 21  AND CONNECTS WITH, NOT THE UNDERLYING SOURCE CODE, EVEN THOUGH

10:03AM 22  THAT CAN BE READ AS WELL.

10:03AM 23      MR. FERRALL:  TRUE.

10:03AM 24      THE COURT:  SO I GUESS I'M JUST NOT PERSUADED ON

10:03AM 25  THIS.

10:03AM 1           MR. FERRALL:  OKAY.  CAN I JUST SHOW YOU THIS.

10:03AM 2           THE COURT:  YEP, LET'S KEEP GOING.

10:03AM 3           MR. FERRALL:  I WANT TO TALK ABOUT THE COMPLAINT AND

10:03AM 4    I WANT TO TALK ABOUT THE NEXT DISCOVERY RESPONSE BECAUSE, OKAY,

10:03AM 5    SO WE ASKED CISCO'S FAIR USE CONTENTIONS, OKAY.

10:03AM 6       BASICALLY, THE INTERROGATORY SAYS, DESCRIBE THE LEGAL

10:03AM 7    FACTUAL BASIS FOR YOUR CONTENTION THAT ARISTA'S USE IS NOT A

10:03AM 8    FAIR USE.

10:03AM 9       AND THEN WE RECITE THE STATUTORY FACTORS OF FAIR USE, AND

10:04AM 10   YOUR HONOR IS VERY FAMILIAR WITH THOSE.  OKAY.

10:04AM 11      CISCO'S RESPONSE IS ABOUT 5 OR 8 PAGES LONG, SO I DON'T

10:04AM 12   HAVE IT ALL, BUT THEY GO THROUGH EACH FACTOR.  AND IN THE

10:04AM 13   BEGINNING IN THE FIRST FAIR USE FACTOR, THEY DEFINE THE WORK,

10:04AM 14   FOR PURPOSES OF THE ENTIRETY OF THIS ANSWER, ARISTA HAS USED

10:04AM 15   AND CONTINUES TO USE CISCO'S COPYRIGHTED WORKS.  FOOTNOTE:

10:04AM 16   CISCO'S COPYRIGHTED WORKS AND CISCO'S COPYRIGHTED WORKS

10:04AM 17   INCLUDES THE COPYRIGHTED OPERATING SYSTEMS AND RELATED

10:04AM 18   DOCUMENTS AS SET FORTH IN PARAGRAPH 25 OF THE SECOND AMENDED

10:04AM 19   COMPLAINT.

10:04AM 20      SO WE GO TO PARAGRAPH 25.  THIS IS PARAGRAPH 25.  IT'S A

10:04AM 21   LIST OF ALL THE OPERATING SYSTEMS.

10:04AM 22      AGAIN, I'M NOT -- OF COURSE THEY COULD HAVE SAID THAT

10:04AM 23   CISCO'S COPYRIGHTED WORKS ARE THE USER INTERFACE AND THEN

10:04AM 24   PROCEEDED TO ANSWER THE INTERROGATORY.

10:04AM 25           THE COURT:  ALL RIGHT.  WELL THIS IS A LITTLE BIT --

10:05AM  1    TO ME THIS IS MORE DIRECT.

10:05AM  2              MR. FERRALL:  OKAY.  AND I WANTED TO ADDRESS

10:05AM  3    SOMETHING THAT IS IN CISCO'S SLIDES ON THIS, BECAUSE CISCO

10:05AM  4    CITES TO PARAGRAPH 28 IN THEIR SLIDES.  I JUST WANT TO CLARIFY

10:05AM  5    SOMETHING THAT SO THERE'S NO CONFUSION HERE.

10:05AM  6              THE COURT:  OKAY.

10:05AM  7              MR. FERRALL:  SLIDE 7 OF CISCO'S SLIDES, QUOTES FROM

10:05AM  8    THE COMPLAINT DOWN AT THE BOTTOM.

10:05AM  9         DO YOU SEE THAT PARAGRAPH 28?

10:05AM  10             THE COURT:  UH-HUH.

10:05AM  11             MR. FERRALL:  OKAY.  AND I DON'T HAVE THE PARAGRAPH

10:05AM  12   ON A SLIDE TO SHOW, BUT THIS IS ACTUALLY WHAT PARAGRAPH 28

10:05AM  13   SAYS.  IT BEGINS, "THE CISCO IOS COPYRIGHTED WORKS," NOW YOU

10:05AM  14   SEE THAT'S DEFINED IN PARAGRAPH 25, WHICH IS ON THE SCREEN, AS

10:06AM  15   ALL OF THE OPERATING SYSTEMS.

10:06AM  16        OKAY.  PARAGRAPH 28 SAYS -- ARE YOU WITH ME?

10:06AM  17             THE COURT:  SO WHICH SLIDE AM I SUPPOSED TO BE

10:06AM  18   LOOKING AT?

10:06AM  19             MR. FERRALL:  WE ARE LOOK THE AT CISCO'S SLIDE 7.

10:06AM  20             THE COURT:  I HAVE THAT AND IT'S JUST THESE THREE

10:06AM  21   LINES.

10:06AM  22             MR. FERRALL:  AND THE ARISTA SLIDE THAT'S UP ON THE

10:06AM  23   SCREEN.

10:06AM  24             THE COURT:  YES, OKAY.

10:06AM  25             MR. FERRALL:  BECAUSE PARAGRAPH 28 BEGINS WITH A

10:06AM 1   DEFINED TERM, CISCO IOS COPYRIGHTED WORKS.

10:06AM 2       UNFORTUNATELY, THAT'S IN THE COMPLAINT THAT I DON'T HAVE TO

10:06AM 3   SHOW YOU ON THE SCREEN, AND I'M JUST READING IT TO YOU.

10:06AM 4       SO IT SAYS, "CISCO'S COPYRIGHTED WORKS (DEFINED TERMS)

10:06AM 5   INCLUDING THEIR UNIQUE COMMAND EXPRESSIONS, UNIQUE COMMAND MODE

10:06AM 6   STRUCTURE, PROMPTS, AS IS REPRESENTED HERE."

10:06AM 7       SO CISCO OMITTED THE FACT THAT WHAT THEY ARE QUOTING HERE

10:06AM 8   AT THE BOTTOM OF THEIR SLIDE 7 IS ACTUALLY A PARENTHETICAL THAT

10:07AM 9   BEGINS WITH THE WORD INCLUDING THE COMMAND EXPRESSIONS AND

10:07AM 10  UNIQUE COMMAND, OKAY.

10:07AM 11      WHAT IS ACTUALLY EXPLAINED IN THE COMPLAINT AS AN ORIGINAL

10:07AM 12  EXPRESSIVE WORK THAT HAD BEEN DEVELOPED OVER MANY YEARS, IS THE

10:07AM 13  LIST OF OPERATING SYSTEMS, THE DEFINED TERM, CISCO COPYRIGHTED

10:07AM 14  WORK.

10:07AM 15      SO I APOLOGIZE THAT I DON'T HAVE THE COMPLAINT TO SHOW YOU

10:07AM 16  AND THE PARSE THROUGH THIS, BUT YOU WILL SEE PARAGRAPH 28 DOES

10:07AM 17  NOT PURPORT TO SAY THAT THE USER INTERFACE ARE ORIGINAL

10:07AM 18  EXPRESSIVE WORKS.  THOSE ARE PART OF ORIGINAL EXPRESSIVE WORKS.

10:07AM 19      OKAY.  SO THANK YOU FOR YOUR PATIENCE.  LET ME CONTINUE

10:07AM 20  WITH ONE MORE PART OF THAT INTERROGATORY RESPONSE.  THAT WAS

10:07AM 21  INTERROGATORY 21.  IT DEFINES CISCO COPYRIGHTED WORK IN THE

10:08AM 22  BEGINNING OF THE INTERROGATORY, THEN FACTOR FOUR, WHICH IS

10:08AM 23  CRITICAL FOR THE WORK DEFINITION, BECAUSE AGAIN, IT TALKS ABOUT

10:08AM 24  THE EFFECT OF THE USE UPON THE POTENTIAL MARKET FOR OR VALUE OF

10:08AM 25  THE COPYRIGHTED WORK, CISCO BEGINS ITS ANSWER, THE COPYRIGHTED

10:08AM  1    WORKS AT ISSUE-CISCO'S OPERATING SYSTEMS AND ACCOMPANYING

10:08AM  2    DOCUMENTS ALLOW THE SWITCHES AND ROUTERS TO WORK.

10:08AM  3        OKAY.  AND THEN JUST TO CLARIFY THAT THE COPYRIGHTED WORK

10:08AM  4    IS NOT THE INTERFACE, IT SAYS, THE COMMAND LINE INTERFACES THAT

10:08AM  5    ARE THE HEART AND SOUL OF THE OPERATING SYSTEMS.

10:08AM  6        IN OTHER WORDS, IT'S CLARIFYING THE COMMAND LINE INTERFACES

10:08AM  7    ARE NOT THE WORK, THEY ARE A PART OF THE WORK.  THEY CAN, OF

10:08AM  8    COURSE, TELL THE JURY THAT THEY ARE THE HEART AND SOUL AND WE

10:08AM  9    WILL DISAGREE.  BUT THE HEART AND SOUL IS NOT THE WHOLE THING,

10:08AM  10   THE HEART AND SOUL CAN'T LIVE BY ITSELF.

10:09AM  11       SO AGAIN, THIS IS AT THE VERY CLOSE OF DISCOVERY, HOW

10:09AM  12   ARISTA WOULD HAVE THEN SOMEHOW DETERMINED OR PREPARED EXPERT

10:09AM  13   REPORTS WITH THE UNDERSTANDING THAT THE ASSERTED WORK FOR

10:09AM  14   PURPOSES OF FAIR USE MARKET HARM WAS ONLY THE USER INTERFACE,

10:09AM  15   IT'S JUST NOT, IT'S JUST NOT DISCLOSED HERE, YOUR HONOR.

10:09AM  16       AND TO YOUR CONCERN ABOUT, YOUR CONCERN ABOUT WHAT DOES

10:09AM  17   THIS MEAN FOR THE CASE, FIRST OF ALL, OF COURSE CLEARLY THEY

10:09AM  18   WERE ENTITLED, WE ARE NOT SAYING THEY WEREN'T ENTITLED TO TRY

10:09AM  19   TO DEFINE THE WORK MORE NARROWLY AND WE COULD HAVE THE LEGAL

10:09AM  20   ARGUMENT ABOUT WHETHER THAT'S RECOGNIZED UNDER THE LAW.  AND I

10:09AM  21   THINK MR. KWUN HAS SOME STRONG POINTS TO MAKE, I DON'T THINK

10:09AM  22   THE CASE LAW REALLY SUPPORTS IT.

10:09AM  23       BUT THAT'S A LEGAL ARGUMENT WE WOULD HAVE HAD BASED UPON A

10:09AM  24   DISCLOSURE THAT SHOULD HAVE HAPPENED LONG AGO.  IT'S NOT A

10:10AM  25   LEGAL ARGUMENT THAT, IT'S NOT SOMETHING THAT THEY WERE

10:10AM 1    PROHIBITED FROM DISCLOSING EARLIER IN THE CASE.

10:10AM 2        SECOND -- HERE WE ARE.  FINE, THEY DIDN'T DISCLOSE IT, WE

10:10AM 3    FEEL STRONGLY ABOUT THAT.  JUST BECAUSE THE CASE IS ABOUT THE

10:10AM 4    OPERATING SYSTEM DOESN'T MEAN THEY CAN'T ARGUE THAT IT'S THE

10:10AM 5    HEART AND SOUL.

10:10AM 6        THAT'S BEEN THEIR CASE ALL ALONG IS THAT EVEN THOUGH THE

10:10AM 7    WHOLE OPERATING SYSTEM IS THE WORK, THE CLI IS THE HEART AND

10:10AM 8    SOUL.

10:10AM 9        THAT'S A FINE ISSUE FOR THE JURY.  THEY CAN MAKE ALL OF THE

10:10AM 10   ARGUMENTS THEY WANT ABOUT IT, I'M SURE THEY THINK THEY'VE GOT

10:10AM 11   SOME GREAT EVIDENCE TO SUPPORT THAT THEORY.

10:10AM 12       SO IT'S CERTAINLY NOT THE CASE THAT THERE'S NOTHING FOR THE

10:10AM 13   JURY TO THINK ABOUT BASED UPON THE THEORY THAT WE'VE PRESENTED

10:10AM 14   ALL ALONG.

10:10AM 15           THE COURT:  WELL, I JUST WANT TO MAKE SURE THAT,

10:10AM 16   WELL, UNDER EITHER DEFINITION OF THE WORK, BECAUSE THESE ARE

10:10AM 17   STILL ENORMOUS SCOPE INTO ALL OF THESE WORKS, THAT A JURY IS

10:10AM 18   NOT IMPROPERLY GIVEN THE IMPRESSION THAT THEY JUST NEED TO

10:11AM 19   COMPARE THE LITTLE DROP OF THE COPIED MATERIAL, EVEN ASSUMING

10:11AM 20   EVERYTHING THAT'S ALLEGED TO HAVE BEEN COPIED OR DETERMINED TO

10:11AM 21   HAVE BEEN COPIED WAS THE VAST QUANTITY OF THE WORK, BECAUSE

10:11AM 22   THAT WOULD MAKE THIS RIDICULOUS, I DON'T NEED A TRIAL ON THAT

10:11AM 23   ISSUE, YOU SHOULD BE SETTLING IT.  YOU SHOULD HAVE SETTLED IT

10:11AM 24   TWO YEARS AGO IF THAT'S ALL IT WAS.

10:11AM 25       SO I'M CONCERNED THAT THERE SEEMS TO BE PLENTY ON BOTH

10:11AM 1     SIDES HERE, THESE ARE SOME SPECIFIC THINGS I DO CERTAINLY WANT

10:11AM 2     TO HEAR FROM CISCO ON.

10:11AM 3              MR. FERRALL:  WELL, AS I SAID, YOUR HONOR, I THINK

10:11AM 4     THE THEORY THAT WE HAVE BEEN LITIGATING ALL ALONG, AND THE

10:11AM 5     EXPERT REPORTS ARE REPLETE WITH THIS, CISCO SAYS THE USER

10:11AM 6     INTERFACE MAY NOT BE ALL OF THE LINES OR CODE, BUT THAT'S

10:11AM 7     IRRELEVANT BECAUSE IT'S REALLY IMPORTANT.

10:11AM 8         AND THEY ARE GOING TO CITE TO LOTS OF DOCUMENTS, AND THEIR

10:11AM 9     EXPERT IS GOING TO SAY IT'S REALLY IMPORTANT, AND THEY ARE

10:12AM 10    GOING TO SAY THAT ARISTA ADMITS THAT IT'S REALLY IMPORTANT, AND

10:12AM 11    WE ARE GOING TO SAY -- WELL ACTUALLY, WE DIDN'T REALLY SAY.

10:12AM 12        SO THAT'S A GREAT FACTUAL BATTLE FOR TRIAL.  IT'S

10:12AM 13    CERTAINLY -- THAT'S THE WAY ALL OF THE EXPERT REPORTS HAVE BEEN

10:12AM 14    PREPARED IN THIS CASE, INCLUDING DR. BLACK, WE SAW THE QUOTE

10:12AM 15    ABOUT -- I MEAN, DR. BLACK, ABSOLUTELY HAS ANALYZED ALL OF THE

10:12AM 16    NON-ASSERTED ASPECTS OF ARISTA'S OPERATING SYSTEM TO EXPLAIN

10:12AM 17    TRANSFORMATIVE USE.  HIS OPINION IS ALL ABOUT --

10:12AM 18             THE COURT:  I'M NOT CONCERNED ABOUT ARISTA'S WORKS,

10:12AM 19    I'M CONCERNED ABOUT CISCO'S WORKS HERE.

10:12AM 20             MR. FERRALL:  RIGHT.  RIGHT.

10:12AM 21        AND WELL, TO COMPARE THE WAY THE WORKS PERFORM AS A WHOLE,

10:12AM 22    THEY'RE COMPLETELY DIFFERENT IN MANY WAYS.  AND WHAT DR. BLACK

10:12AM 23    IS DOING IS HE'S TALKING ABOUT THE WAY ARISTA'S WORKS ARE

10:12AM 24    DIFFERENT AND TRANSFORMATIVE.

10:12AM 25        BUT BEYOND THE USER INTERFACE, FOR SURE.  THAT'S THE WAY

10:12AM  1   THIS CASE HAS BEEN LITIGATED FROM THE BEGINNING.

10:13AM  2        SO I THINK TO THE CONTRARY, TO FOCUS THIS CASE NOW TO SAY

10:13AM  3   THAT ALL OF THE WORK THAT WE HAVE BEEN TALKING ABOUT, ALL OF

10:13AM  4   THE DAMAGE REPORTS BASED UPON HARM TO LOST SALES OF PRODUCTS

10:13AM  5   RUNNING THE ENTIRE IOS OR ENTIRE NX-OS, THAT SUDDENLY ALL OF

10:13AM  6   THAT IS NOT RELEVANT, I'M NOT SURE HOW WE TRY THE CASE,

10:13AM  7   FRANKLY.

10:13AM  8        THE COURT:  WELL, I'M SURE YOU ARE COMPLETELY READY

10:13AM  9   TO TRY THE CASE THAT WAY.

10:13AM  10       YOU KNOW -- BUT SO, IN OTHER CASES WHERE THE ALLEGATION IS

10:13AM  11  THAT THE SOURCE CODE HAS BEEN COPIED, THEN YOU ARE SUGGESTING

10:13AM  12  THAT THEN THE OPERATING SYSTEM STILL IS THE WORK WITH ALL THE

10:13AM  13  ENORMITY OF ALL THE IRRELEVANT INTERFACE?  BECAUSE ALL OF THESE

10:13AM  14  PROGRAMS HAVE INTERFACE AND SOURCE CODE.

10:13AM  15       MR. FERRALL:  WELL, YES, ALTHOUGH, LOOK, OBVIOUSLY

10:13AM  16  EVERY CASE IS DIFFERENT.  BUT IN THE CASE WHERE THE SOURCE CODE

10:13AM  17  IS TRULY COPIED, THEN THE INTERFACE INEVITABLY IS GOING TO BE

10:14AM  18  THE SAME BECAUSE THE INTERFACE EMERGES FROM THE SOURCE CODE.

10:14AM  19  BUT IN ANY EVENT, IT'S UP TO THE PLAINTIFF TO DEFINE THEIR CASE

10:14AM  20  HOW THEY WANT TO.

10:14AM  21       THE COURT:  I GUESS WHAT I HAVE IS A COMPLAINT THAT

10:14AM  22  SEEMS TO WALK THROUGH SOME PRETTY GOOD DEFINITION OF THE WORK

10:14AM  23  IN QUESTION AS BEING THE USER INTERFACE.  WHAT YOU ARE SHOWING

10:14AM  24  ME HERE ARE SOME RESPONSES TO INTERROGATORIES AND SOME, AND

10:14AM  25  THEORIES OF DAMAGES THAT MIGHT PERSUADE ME THAT THE DISCLOSURES

10:14AM 1    WENT THE OTHER WAY.

10:14AM 2               MR. FERRALL:  WELL, THE COMPLAINT ALLEGES COPYING OF

10:14AM 3    THE USER INTERFACE FOR SURE.

10:14AM 4               THE COURT:  YES.

10:14AM 5               MR. FERRALL:  BUT AGAIN, LET'S GO BACK A COUPLE OF

10:14AM 6    SLIDES, ONE SLIDE, THIS IS THE IOS COPYRIGHTED WORK.  THE

10:14AM 7    DEFINITION AT THE BOTTOM OF PARAGRAPH 25 FROM THE SECOND

10:14AM 8    AMENDED COMPLAINT.  THIS LIST OF OPERATING SYSTEMS IS THE IOS

10:15AM 9    COPYRIGHTED WORKS.

10:15AM 10        NOW, THERE'S -- I DON'T THINK THE WORD USER INTERFACE OR

10:15AM 11   EVEN CLI IS EVEN IN THIS PARAGRAPH.

10:15AM 12        SO AGAIN, WE'VE GOT TO KEEP CLEAR, IT'S ONE THING TO SAY

10:15AM 13   WHAT WAS COPIED WAS THE CLI, BUT WHEN IT COMES TO WHAT IS

10:15AM 14   DEFINED AS THE WORKS, THERE'S JUST NEITHER IN THE COMPLAINT NOR

10:15AM 15   IN INTERROGATORIES IS THERE SOMETHING THAT ANY -- THAT WE COULD

10:15AM 16   HAVE POSSIBLY HAVE GOTTEN NOTICE OF THAT THIS WAS GOING TO

10:15AM 17   BE -- THE USER INTERFACE ALONE WAS GOING TO BE THE WORK.

10:15AM 18        SO WITH THAT, YOUR HONOR, I'M OBVIOUSLY HAPPY TO ANSWER ANY

10:15AM 19   FURTHER QUESTIONS, OTHERWISE I WOULD LIKE TO TURN IT OVER TO

10:15AM 20   MR. KWUN TO TALK ABOUT THE LEGAL QUESTIONS A LITTLE BIT.

10:15AM 21               THE COURT:  OKAY.  MR. KWUN.

10:15AM 22        MR. PAK, I THINK I WILL LET YOU COME BACK ON ALL OF THIS AT

10:16AM 23   ONCE.

10:16AM 24               MR. PAK:  WONDERFUL.  THANK YOU.

10:16AM 25               MR. KWUN:  YOUR HONOR, I DO WANT TO GET INTO THE

10:16AM  1    QUESTION OF WHETHER OR NOT THERE IS A SEPARATE WORK, BUT BEFORE

10:16AM  2    I GET THERE, YOU HAD ASKED A QUESTION EARLIER ABOUT WHETHER OR

10:16AM  3    NOT THERE'S A DE MINIMUS -- FREE-STANDING DE MINIMUS DEFENSE.

10:16AM  4         SO I DID WANT TO CALL YOUR ATTENTION TO THE ORACLE CASE.

10:16AM  5    AND IN 2012 WHEN THE PRIMA FACIE INFRINGEMENT CASE WAS TRIED,

10:16AM  6    THERE WAS A DE MINIMUS DEFENSE THAT WAS, THAT THE JURY WAS

10:16AM  7    INSTRUCTED ON.  AND ON APPEAL, ORACLE CHALLENGED WHETHER THERE

10:16AM  8    WAS A FREESTANDING DE MINIMUS DEFENSE.  AND THE COURT DID NOT

10:16AM  9    HOLD THAT THERE WAS NO FREESTANDING DE MINIMUS DEFENSE.

10:16AM  10             THE COURT:  AS AN AFFIRMATIVE DEFENSE, MR. KWUN?

10:16AM  11             MR. KWUN:  AS AN AFFIRMATIVE DEFENSE.  I HAVE TO

10:16AM  12   ACTUALLY LOOK AND SEE EXACTLY HOW THAT WAS FRAMED.

10:16AM  13             THE COURT:  IT'S ONE OF THOSE TRICKY ISSUES THAT

10:17AM  14   EXIST IN MANY AREAS OF THE LAW AS TOO WHETHER IT'S SIMPLY A

10:17AM  15   DEFENSE THAT NEGATES AN ESSENTIAL ELEMENT.

10:17AM  16             MR. KWUN:  I THINK THAT YOU ARE ACTUALLY CORRECT THAT

10:17AM  17   IT PROBABLY IS FRAMED AS WHETHER OR NOT THERE IS A PRIMA FACIE

10:17AM  18   CASE, NOT AFFIRMATIVE DEFENSE TO THE PRIMA FACIA CASE.

10:17AM  19        BUT I ACTUALLY HAVE, I DON'T HAVE THE ACTUAL DEFENSE CHARGE

10:17AM  20   BEFORE ME, BUT I DO HAVE FROM THE FEDERAL CIRCUIT OPINION, AT

10:17AM  21   750 F.3D PAGE 1351, JUST A SHORT QUOTATION FROM THE FEDERAL

10:17AM  22   CIRCUIT ABOUT WHAT GOOGLE'S ALLEGATIONS WERE WITH REGARD TO THE

10:17AM  23   DE MINIMUS DEFENSE AND WITH RESPECT TO A CERTAIN PART OF THE

10:17AM  24   INFRINGEMENT CASE.

10:17AM  25             AND THEY QUOTE, JUDGE ALSUP'S FINAL CHARGE AS SAYING:  WITH

10:17AM 1    RESPECT TO THE INFRINGEMENT ISSUES CONCERNING THE RANGE CHECK

10:17AM 2    AND OTHER SIMILAR FILES, GOOGLE AGREES THAT THE ACCUSED LINES

10:17AM 3    OF CODE AND COMMENTS CAME FROM THE COPYRIGHTED MATERIAL, BUT

10:17AM 4    CONTENDS THAT THE AMOUNTS INVOLVED WERE SO NEGLIGIBLE AS TO BE

10:17AM 5    DE MINIMUS AND THUS SHOULD BE EXCUSED.

10:18AM 6        AND TO ANOTHER QUESTION YOU HAD ABOUT THE DE MINIMUS

10:18AM 7    DEFENSE, THERE ARE TWO ASPECTS TO A DE MINIMUS DEFENSE IN THE

10:18AM 8    NINTH CIRCUIT, ACTUALLY ANYWHERE, BUT CERTAINLY IN THE

10:18AM 9    NINTH CIRCUIT, AND THAT'S BOTH A QUALITATIVE AND A QUANTITATIVE

10:18AM 10   ASPECT.

10:18AM 11       AND FOR THE DEFENSE TO SUCCEED, THE DEFENSE HAS TO PROVE A

10:18AM 12   LACK OF QUALITATIVE AND QUANTITATIVE IMPORTANCE.

10:18AM 13       SO --

10:18AM 14           THE COURT:  WHICH IS EXACTLY THE SAME AS IN THE FAIR

10:18AM 15   USE AFFIRMATIVE DEFENSE.

10:18AM 16           MR. KWUN:  BOTH OF THOSE ASPECTS COME INTO FACTOR 3,

10:18AM 17   THEY ARE -- IT IS A DIFFERENT QUESTION BECAUSE YOU WOULD NEVER

10:18AM 18   REACH THE ISSUE OF FAIR USE IF THERE WAS A DE MINIMUS DEFENSE.

10:18AM 19           THE COURT:  CLEARLY.  I UNDERSTAND THAT.

10:18AM 20           MR. KWUN:  THE THRESHOLD IS DIFFERENT.

10:18AM 21           THE COURT:  I UNDERSTAND THAT PERFECTLY.  BUT --

10:18AM 22           MR. KWUN:  SO WHAT I WOULD SAY IT'S PART OF THE PRIMA

10:18AM 23   FACIE INFRINGEMENT CASE, AND THEN IF YOU GET PAST THAT, THERE'S

10:18AM 24   A SECOND QUESTION OF NOT IS IT DE MINIMUS, BUT IS IT

10:18AM 25   SUBSTANTIAL.

10:18AM 1      AND I KNOW, AND WE HAVE THAT WORD SUBSTANTIAL OR

10:18AM 2   SUBSTANTIALLY COMING UP ALL OVER THE PLACE.

10:19AM 3           THE COURT:  DIFFERENT SIDE OF THE SAME COIN HERE.

10:19AM 4           MR. KWUN:  I AGREE WITH YOUR HONOR THAT SOMEBODY

10:19AM 5   WOULD DO WELL TO RESTATE WHAT THESE DOCTRINES ARE TO USE MORE

10:19AM 6   DIFFERENT WORDS, BUT WE ARE KIND OF STUCK WITH THAT.

10:19AM 7           THE COURT:  AND THERE ARE ONLY A FEW WORDS THAT CAN

10:19AM 8   BE USED.

10:19AM 9           MR. KWUN:  SO LET ME TURN TO THIS QUESTION OF WHETHER

10:19AM 10  OR NOT THERE IS A SEPARATE WORK WHICH IS THE USER INTERFACE.

10:19AM 11      AND CISCO HAS CITED A NUMBER OF CASES, BUT I THINK WE WOULD

10:19AM 12  ALL AGREE THAT REALLY IT BOILS DOWN TO THE CITATION OF A SINGLE

10:19AM 13  CASE BECAUSE ALL BUT ONE OF THOSE CASES THEMSELVES RELY ON THE

10:19AM 14  MANUFACTURER TECHNOLOGIES V. CAMS CASE.

10:19AM 15      SO THEN THE QUESTION IS, WHAT WAS THE DISTRICT COURT IN

10:19AM 16  CONNECTICUT, ITSELF, RELYING ON?  AND IN THAT DECISION, THE

10:19AM 17  COURT WAS ADDRESSING THE ISSUE OF REGISTRATION OF A COMPUTER

10:19AM 18  PROGRAM, AND WHAT PROTECTION THE DISPLAYS CREATED BY THAT

10:19AM 19  PROGRAM GET.

10:19AM 20      AND IS THE 706 F.SUPP AT 991, THE COURT MENTIONS A QUOTE,

10:20AM 21  RECENT DECISION OF THE COPYRIGHT OFFICE.  AND THAT RECENT

10:20AM 22  DECISION SAID THAT A SINGLE REGISTRATION OF A COMPUTER PROGRAM

10:20AM 23  EXTENDS PROTECTION TO SCREEN DISPLAYS THAT CONTAIN ORIGINAL

10:20AM 24  EXPRESSION.

10:20AM 25      SO THAT RECENT DECISION WAS A 1988 DECISION FROM THE

10:20AM   1    COPYRIGHT OFFICE.  JUNE 1988 DECISION OF THE COPYRIGHT OFFICE.

10:20AM   2    AND I HAVE A COPY OF IT HERE.  WE PREVIOUSLY SUBMITTED IT AT

10:20AM   3    ECF 635-4.

10:20AM   4         BUT I HAVE A COPY OF IT WHICH I CAN HAND UP HERE.  I'VE HAD

10:20AM   5    SOME -- I'VE TAKEN THE LIBERTY OF HIGHLIGHTING A FEW POINTS ON

10:20AM   6    IT.  BUT I WANT TO START WITH THE SUMMARY ON THE FRONT ON THE

10:20AM   7    FIRST PAGE, FIRST COLUMN.

10:20AM   8         AND THE SUMMARY SAYS THAT THE COPYRIGHT OFFICE OF THE

10:20AM   9    LIBRARY OF CONGRESS HAS DETERMINED THAT ALL COPYRIGHTABLE

10:21AM  10    EXPRESSION OWNED BY THE SAME CLAIMANT AND EMBODIED IN A

10:21AM  11    COMPUTER PROGRAM IS CONSIDERED A SINGLE WORK AND SHOULD BE

10:21AM  12    REGISTERED ON A SINGLE APPLICATION FORM.

10:21AM  13         AND I HAVE AN EXCERPT OF THAT UP ON THE SCREEN AS WELL.

10:21AM  14    BUT THERE REALLY ARE TWO POINTS THAT THAT SUMMARY GETS AT.

10:21AM  15         ONE IS THERE WAS AN ONGOING QUESTION OF WHETHER OR NOT THE

10:21AM  16    REGISTRATION OF THE SOURCE CODE DID ANYTHING TO GRANT

10:21AM  17    PROTECTION FOR THE SCREEN DISPLAYS.

10:21AM  18         AND HERE THEY ARE SAYING YES, WHEN YOU FILE THAT SINGLE

10:21AM  19    REGISTRATION, IF THOSE SCREEN DISPLAYS ARE POTENTIALLY

10:21AM  20    PROTECTED BY COPYRIGHT, YOU HAVE TO REGISTER.

10:21AM  21         THERE'S A SECOND QUESTION THOUGH WHICH IS, HOW MANY WORKS

10:21AM  22    HAVE YOU REGISTERED?

10:21AM  23         AND WHAT WE HAVE HEARD FROM CISCO IS THAT BY FILING ONE

10:21AM  24    REGISTRATION THEY HAVE CREATED WHAT THE DISTRICT COURT CALLED

10:21AM  25    THE LEGAL FICTION OF TWO REGISTRATIONS.

10:21AM  1       BUT HERE THE 1988 COPYRIGHT DECISION THAT THE COURT WAS

10:21AM  2   RELYING ON SAYS IT'S CONSIDERED A SINGLE WORK.

10:22AM  3       AND IF YOU LOOK AT THE COPYRIGHT OFFICE'S REASONING, IT

10:22AM  4   ACTUALLY BEARS THIS OUT.  AND ON PAGE 3 OF THE DECISION THAT I

10:22AM  5   HANDED UP IN COLUMN 1, PAGE 3 THEY ARE TALKING ABOUT THE FACT

10:22AM  6   THAT THEY HEARD FROM A NUMBER OF INTERESTED WITNESSES ON THIS

10:22AM  7   ISSUE, WHO TOOK A VARIETY OF POSITIONS.

10:22AM  8       AND AT THE END OF THE THIRD FULL PARAGRAPH, WHICH I'VE

10:22AM  9   HIGHLIGHTED IN YELLOW IN THE HAND-UP, THEY SAY THAT ALL

10:22AM  10  WITNESSES AGREED THAT THE SAME SCREEN DISPLAYS CAN BE GENERATED

10:22AM  11  BY SUBSTANTIALLY DIFFERENT COMPUTER PROGRAM CODE.

10:22AM  12      SO THIS WAS THE ISSUE THAT ULTIMATELY CAUSED THE DISTRICT

10:22AM  13  COURT TO SAY, YOU KNOW, WE REALLY NEED TO CONSIDER THESE TO BE

10:22AM  14  SEPARATE WORKS BECAUSE THE SAME SCREEN DISPLAYS CAN BE CREATED

10:22AM  15  BY DIFFERENT COMPUTER CODE.

10:22AM  16      THAT WAS BEFORE THE COPYRIGHT OFFICE, ALL THE PEOPLE WHO

10:22AM  17  HAD DISPUTES OVER WHAT THEY SHOULD DO ALL AGREED THAT THAT WAS

10:23AM  18  TRUE.

10:23AM  19      AND THE COPYRIGHT OFFICE THEN SAID, EVEN ACCEPTING THAT THE

10:23AM  20  NATURE OF AUTHOR SHIP IN SCREENS MAY BE DIFFERENT FROM COMPUTER

10:23AM  21  PROGRAM CODE AUTHOR SHIP THIS DOESN'T ALTER THE FACT THAT THE

10:23AM  22  COMPUTER PROGRAM CODE AND SCREEN DISPLAYS ARE INTEGRALLY

10:23AM  23  RELATED AND ORDINARILY FORM A SINGLE WORK.

10:23AM  24      NOW IT DOES SAY ORDINARILY AND I WILL GET TO A LITTLE LATER

10:23AM  25  WHAT THAT MEANS AND HOW IT COULD POSSIBLY BE DIFFERENT AND WHY

10:23AM  1     WE HAVE A FAILURE OF PROOF ON CISCO'S PART TO SHOW THAT IT

10:23AM  2     ACTUALLY IS DIFFERENT.

10:23AM  3         AND THEY GO ON TO SAY RIGHT AFTER THAT, BACK IN YELLOW ON

10:23AM  4     THE HIGHLIGHTED COPY, INDEED THOSE COMMENTATORS WHO FAVOR

10:23AM  5     EITHER SINGLE OR SEPARATE REGISTRATION MUST CONCEDE THAT THE

10:23AM  6     PROGRAM CODE AND SCREENS ARE CONCEPTUALLY A SINGLE WORK.

10:23AM  7         SO THE COPYRIGHT'S OFFICE ON POSITION IS PRETTY CLEAR AND

10:23AM  8     FRANKLY IT'S A LITTLE CONFUSING HOW WE ENDED UP WHERE WE ARE ON

10:24AM  9     THE DISTRICT COURT'S DECISION.

10:24AM  10         THE COURT:  BUT THE DISTRICT COURT'S DECISION TAKES A

10:24AM  11     VERY DIFFERENT VIEW OF THAT LANGUAGE.

10:24AM  12         MR. KWUN:  WELL, YOUR HONOR, THE DISTRICT COURT DOES

10:24AM  13     NOT ACTUALLY CITE OR QUOTE THE SINGLE WORK.

10:24AM  14         THE COURT:  NO, IT DOESN'T.

10:24AM  15         MR. KWUN:  SO THE ONLY THING I CAN THINK IS THAT

10:24AM  16     MAYBE IT MISSED IT.

10:24AM  17         THE KEY ISSUE THAT WAS IN DISPUTE BEFORE THE DISTRICT COURT

10:24AM  18     WAS LESS THE ARE THERE TWO SEPARATE WORKS POINT AND MORE THE,

10:24AM  19     DID THE REGISTRATION OF THE SOURCE CODE ACTUALLY ACCOMPLISH

10:24AM  20     ANYTHING FOR THE SCREEN DISPLAYS.

10:24AM  21         SO --

10:24AM  22         THE COURT:  SO THAT IS ANSWERED BY THIS -- SO IF YOU

10:24AM  23     REGISTER YOUR SOURCE CODE, YOU ALSO ARE PROTECTING YOUR USER

10:24AM  24     INTERFACE, THAT'S WHAT THIS WOULD SAY.

10:24AM  25         MR. KWUN:  THAT IS ONE THING IT SAYS.  IT SAYS YOU

10:24AM  1    ARE PROTECTING THE USER INTERFACE INSOFAR AS IT'S PROTECTABLE.

10:24AM  2            THE COURT:  AND YOU DON'T NEED TO REGISTER YOUR

10:24AM  3    SCREEN SHOTS SEPARATELY.

10:24AM  4            MR. KWUN:  THAT'S RIGHT.  AS A MATTER OF FACT, THEY

10:24AM  5    WOULD RATHER YOU DON'T.

10:24AM  6            THE COURT:  THAT'S RIGHT.

10:24AM  7        SO I GUESS I'M JUST CONCERNED THAT MAY BE AS FAR AS THE

10:24AM  8    COPYRIGHT OFFICE WAS GOING.  WHAT DOES AN OWNER NEED TO DO TO

10:25AM  9    PROTECT BOTH THEIR SOURCE CODE AND THEIR USER INTERFACE AND THE

10:25AM 10    COPYRIGHT OFFICE SAYS, FILE IT ONCE, YOU GET PROTECTION ON ALL

10:25AM 11    OF IT.

10:25AM 12            MR. KWUN:  YOU GET PROTECTION ON ALL OF IT AS A

10:25AM 13    SINGLE WORK.  REPEATED THREE TIMES.

10:25AM 14            THE COURT:  SO THEN THAT BEGS THE QUESTION OF ARE

10:25AM 15    THEY USING THE WORD WORK THE SAME AS WE DO HERE IN COURT TO

10:25AM 16    LITIGATE THE ISSUE, AND HOW DO I KNOW.

10:25AM 17            MR. KWUN:  SO FOR THAT, LET'S ACTUALLY TURN TO WHAT

10:25AM 18    THE NINTH CIRCUIT'S TEST IS FOR WHEN YOU CAN HAVE A SEPARATE

10:25AM 19    WORK.  SO THIS GOES TO THE POINT OF ORDINARILY, I THINK.

10:25AM 20            THE COURT:  AND WHERE -- DO YOU HAVE A SLIDE?

10:25AM 21            MR. KWUN:  I'M GOING TO BACK TO THE SLIDES.  I WILL

10:25AM 22    GO STRAIGHT TO SLIDE 31.

10:25AM 23        ACTUALLY, LET ME SEE HERE, I AM GOING TO GO TO SLIDE, MAYBE

10:25AM 24    32.

10:26AM 25            THE COURT:  THE ECONOMIC VALUE ISSUE?

10:26AM 1          MR. KWUN:  YEAH, YEAH.

10:26AM 2          MR. VAN NEST:  IT'S UP.

10:26AM 3          MR. KWUN:  YES, HERE WE ARE, YES.

10:26AM 4      THIS IS FROM THE MONGE V. MAYA CASE IN THE NINTH CIRCUIT,

10:26AM 5  AND THE ISSUE THERE WAS WHETHER OR NOT THERE'S 400 WEDDING

10:26AM 6  PHOTOS AND WHETHER OR NOT THEY SHOULD BE TREATED AS A SEPARATE

10:26AM 7  WORK OR AS 400 SEPARATE WORKS.

10:26AM 8      THE NINTH CIRCUIT SAID THAT EACH PHOTO IS A SEPARATE WORK

10:26AM 9  AND WHY, BECAUSE IT CAN LIVE ITS OWN COPYRIGHT LIFE AND HAS

10:26AM 10 INDEPENDENT ECONOMIC VALUE AND IS IN ITSELF VIABLE.

10:26AM 11     SO THIS WAS THE ISSUE THAT THEY WERE CONFRONTING WAS WHAT

10:26AM 12 TO DO ON FACTOR THREE OF FAIR USE.

10:26AM 13     AND CISCO'S RESPONSE IN THE BRIEFING ON A WORK WAS TO SAY

10:26AM 14 WELL THAT'S A FAIR USE FACTOR 3 CASE, THAT'S A DIFFERENT ISSUE.

10:26AM 15     BUT WHAT YOU HEARD MR. PAK SAY UP HERE TODAY IS HE ACCUSED

10:26AM 16 ARISTA OF TAKING INCONSISTENT POSITIONS OF WHAT WORK -- A WORK

10:27AM 17 IS, AND SAID THAT WE NEED TO HAVE A CONSISTENT DEFINITION OF

10:27AM 18 THE WORK.

10:27AM 19     THIS TELLS US WHAT THE DEFINITION OF THE WORK IS FOR FAIR

10:27AM 20 USE FACTOR THREE.  WE CAN'T HAVE A DIFFERENT DEFINITION OF A

10:27AM 21 WORK FOR THE PRIMA FACIE CASE, THE AFFIRMATIVE DEFENSE IS, OF

10:27AM 22 COURSE, AN AFFIRMATIVE DEFENSE TO THE PRIMA FACIE CASE.

10:27AM 23          THE COURT:  SURE, SURE.

10:27AM 24          MR. KWUN:  AND INDEED, THE THIRD FAIR USE FACTOR IS

10:27AM 25 THE AMOUNT AND SUBSTANTIALITY OF THE PORTION USED IN RELATION

10:27AM 1    TO THE COPYRIGHTED WORK AS A WHOLE.

10:27AM 2            THE COURT:  SO LET ME JUST -- I HAVE THOUGHT ABOUT

10:27AM 3    THIS, BECAUSE YOU BRIEFED THIS ISSUE FOR ME IN YOUR BRIEF ON

10:27AM 4    THIS ISSUE.

10:27AM 5        IF I'M UNDERSTANDING IT CORRECTLY, THE USER INTERFACE IS

10:27AM 6    ONLY THE REFLECTION IN ENGLISH OR READABLE FORM OF THE

10:27AM 7    UNDERLYING CODE, IT DOESN'T LIVE ON ITS OWN.  IT CAN'T BE

10:27AM 8    GENERATED.

10:27AM 9            MR. KWUN:  CORRECT.

10:27AM 10           THE COURT:  IT CAN'T BE GENERATED ON ITS OWN, IT

10:28AM 11   NEEDS CODE TO EXIST.

10:28AM 12           MR. KWUN:  NOT ONLY DOES IT NEED CODE TO EXIST, BUT

10:28AM 13   IT'S A PICTURE OF SOME OF THE CODE.  AND IT HAS NO REAL

10:28AM 14   PURPOSE.

10:28AM 15       IT'S KIND OF LIKE IF YOU HAVE A STEREO RECEIVER, AND YOU

10:28AM 16   LOOK AT THAT FRONT PANEL, AND IT'S GOT SOME KNOBS ON IT, THOSE

10:28AM 17   KNOBS ARE THE USER INTERFACE TO THAT STEREO RECEIVER.

10:28AM 18       AND IF YOU TRY TO RIP THE FRONT PANEL OFF OF THE STEREO,

10:28AM 19   AND ALL THE WIRES THAT CONNECT TO THE REST OF THE RECEIVER ARE

10:28AM 20   GONE, YOU NO LONGER HAVE ANYTHING THAT HAS INDEPENDENT ECONOMIC

10:28AM 21   VALUE.  YOU HAVE A BROKEN PIECE OF METAL.

10:28AM 22       AND THAT BROKEN PIECE OF METAL IS NOT ACTUALLY A REFLECTION

10:28AM 23   OF THE ENTIRE STEREO RECEIVER, THERE'S A WHOLE LOT OF STUFF

10:28AM 24   BACK THERE THAT IS NOT REFLECTED IN THAT FRONT PANEL.

10:28AM 25           THE FRONT PANEL IS A WAY FOR THE USER TO CONTROL THE

10:28AM  1    PORTIONS OF IT THAT ARE CONTROLLABLE BY THE USER.  BUT

10:28AM  2    APPROXIMATELY SPEAKING, YES.  SO I DO THINK THE POINT IS IT HAS

10:28AM  3    NO WAY OF LIVING SEPARATELY.

10:28AM  4        AND INDEED, IF YOU LOOK AT WHAT CISCO HAS SAID THROUGHOUT

10:28AM  5    THIS CASE, THAT'S WHAT THEY HAVE SAID.  AND IF WE CAN GO TO

10:28AM  6    SLIDE 33, THIS IS FROM THE CISCO COMPLAINT, THE CISCO COMPLAINT

10:29AM  7    AT PARAGRAPH 27, SAYS THE CLI IS A KEY COMPONENT OF CISCO'S

10:29AM  8    IOS.

10:29AM  9        SO IT'S NOT THAT SOMETHING THAT HAS A SEPARATE LIFE HAS

10:29AM  10   INDEPENDENT ECONOMIC VALUE THAT IS ITSELF VIABLE, RATHER IT IS

10:29AM  11   A PART.

10:29AM  12       THE COURT:  SO I'M STILL, BECAUSE I THINK YOUR LEGAL

10:29AM  13   ARGUMENT IS REALLY ONE THAT I -- THAT IS IMPORTANT FOR ME, AND

10:29AM  14   IT MAY BE RESINATING, THIS INDEPENDENT ECONOMIC VALUE ARGUMENT.

10:29AM  15       OBVIOUSLY THIS IS A NINTH CIRCUIT CASE, BUT IT HAS TO DO

10:29AM  16   WITH PHOTOGRAPHS.  THERE ARE OTHER CASES THAT HAVE TO DO WITH A

10:29AM  17   SERIES OF, IT MAY BE CHAPTERS OR ESSAYS IN A BOOK THAT HAVE

10:29AM  18   INDEPENDENT VALUE.

10:29AM  19       THERE'S NOTHING IN THE NINTH CIRCUIT IN ANY DISTRICT COURT

10:29AM  20   CASE THAT HAS DEALT WITH A COMPUTER PROGRAM ON THIS LEVEL, IT

10:30AM  21   SEEMS SO ORDINARY, I'M SURPRISED.

10:30AM  22       MR. KWUN:  WELL, YOUR HONOR, I WOULD SAY THAT IT'S A

10:30AM  23   RATHER NOVEL PROPOSITION TO SAY THAT THIS INTERFACE WHICH IS

10:30AM  24   REALLY NOT SEPARABLE IN ANY WAY, SHAPE OR FORM FROM THE REST OF

10:30AM  25   THE WORK COULD SOMEHOW STAND ALONE.  THAT'S WHY YOU HAVE THINGS

10:30AM 1    LIKE TELEVISION EPISODES.

10:30AM 2            THE COURT:  SO LET ME ASK YOU THIS, YOU ARE TELLING

10:30AM 3    ME THAT DIFFERENT CODE CAN BE USED TO GENERATE THE IDENTICAL

10:30AM 4    USER INTERFACE, CORRECT?

10:30AM 5            MR. KWUN:  YES, YOUR HONOR.

10:30AM 6            THE COURT:  SO ISN'T THAT ACTUALLY THE DEFINITION OF

10:30AM 7    ITS SEPARATE ECONOMIC VALUE IS THAT IN ORDER FOR THESE -- TO

10:30AM 8    SELL THE PRODUCT OR THE SWITCH, USING WHAT HAS BEEN KNOWN IN

10:30AM 9    THE INDUSTRY, AND I'M GOING TO SAY BEFORE CISCO CAME ON TO THE

10:30AM 10   SCENE WITH ITS IOS, BECAUSE I DON'T WANT TO GET INVOLVED IN

10:30AM 11   THE, IN ITS COPYRIGHTED WORKS, THAT IF A COMPANY, IT'S THE

10:30AM 12   VALUE IS NOT IN THE CODE, THE VALUE IS IN THE USER INTERFACE.

10:31AM 13     SO THAT'S ACTUALLY WHERE THE VALUE IS, ANY CODE CAN BE

10:31AM 14   WRITTEN, ANY CODE THAT WILL GENERATE THIS SCREEN IS WHAT THE

10:31AM 15   VALUE IS.  THE VALUE IS THE SCREEN SHOT.

10:31AM 16           MR. KWUN:  SO I WOULD SAY THAT ALL OF THE USERS OF

10:31AM 17   THESE SWITCHES WOULD BE A LITTLE SURPRISED TO FIND OUT THAT THE

10:31AM 18   KNOBS ON THE FRONT ARE WHERE THE VALUE IS.  THEY LIKE HAVING

10:31AM 19   KNOBS BUT THE VALUE IS HAVING A SWITCH THAT RUNS QUICKLY OR

10:31AM 20   WHATEVER.

10:31AM 21           THE COURT:  WELL NO I'M ONLY TALKING WITH THE SOURCE

10:31AM 22   CODE THAT GENERATES THE USER INTERFACE, THERE'S A LOT OF SOURCE

10:31AM 23   CODE THAT'S DOING A LOT OF OTHER STUFF IN THIS IOS; ISN'T THAT

10:31AM 24   RIGHT?

10:31AM 25           MR. KWUN:  THAT'S TRUE, ALTHOUGH I DO ULTIMATELY WANT

10:31AM 1   TO POINT OUT THAT THE INTERFACE WE ARE TALKING ABOUT HERE IS

10:31AM 2   DIFFERENT THAN THESE SCREEN DISPLAYS AND THINGS LIKE THAT.

10:31AM 3       THE SCREEN DISPLAYS GET SHOWN TO YOU ON THE SCREEN.  YOU

10:31AM 4   SEE THEM AND YOU CHOOSE FROM THEM, IT DIRECTS YOUR ACTION.

10:31AM 5   WHAT YOU SEE ON ONE OF THESE SWITCHES IS YOU SEE A BLANK LINE.

10:31AM 6       SO WHAT WE ARE TALKING ABOUT -- WHAT WE ARE TALKING ABOUT

10:32AM 7   IS THE USER INTERFACE, IS ACTUALLY NOT WHAT IS SHOWN TO THE

10:32AM 8   USER FOR THEM TO CHOOSE HOW TO DO SOMETHING.  IT'S ACTUALLY

10:32AM 9   WHAT THE USER TYPES IN.

10:32AM 10      THE USER CAN TYPE IN THINGS FROM WHAT WE ARE CALLING THE

10:32AM 11  USER INTERFACE, AND THEN THE SWITCH WILL THEN UNDERSTAND WHAT

10:32AM 12  YOU ARE SAYING.  IT'S ACTUALLY ALMOST A MIRROR IMAGE OF THESE

10:32AM 13  CLASSIC USER INTERFACES.

10:32AM 14          THE COURT:  WHAT WAS DESCRIBED TO ME WAY BACK IS IT

10:32AM 15  IS THE SPECIAL COMMON LANGUAGE THAT ENGINEERS CAN USE TO OBTAIN

10:32AM 16  THE RESULT THEY ARE LOOKING FOR.

10:32AM 17          MR. KWUN:  YES.

10:32AM 18      SO IT IS AN INTERFACE IN SOME SENSE, BUT I JUST WANTED TO,

10:32AM 19  SINCE WE HAVE ALL OF THESE CASES THAT ARE ABOUT SCREEN DISPLAYS

10:32AM 20  OR THE MACINTOSH USER INTERFACE, THAT IT IS A LITTLE BIT

10:32AM 21  DIFFERENT THAN WHAT WE ARE TALKING ABOUT HERE.

10:32AM 22      BUT TO GET TO THIS POINT OF WHETHER OR NOT IT MATTERS THAT

10:32AM 23  YOU COULD CREATE THE SAME SCREEN DISPLAY OR SAME USER INTERFACE

10:32AM 24  USING DIFFERENT CODE, I WANT TO OFFER YOU THE EXAMPLE OF A

10:32AM 25  SITUATION WHERE SOMEONE WRITES A NOVEL IN ENGLISH AND THEN

10:33AM  1   SOMEBODY DECIDES I WANT TO CAPTURE THE ITALIAN MARKET AND THEY,

10:33AM  2   WITHOUT ANY AUTHORIZATION WHATSOEVER, TRANSLATE IT INTO

10:33AM  3   ITALIAN.

10:33AM  4       AND THE COPYRIGHTED WORK THAT IS ALLEGEDLY INFRINGED THAT

10:33AM  5   THAT CASE, WHEN INEVITABLY THEY BRING THE COPYRIGHT

10:33AM  6   INFRINGEMENT CASE, THE COPYRIGHTED WORK IS NOT SOME NEW

10:33AM  7   ABSTRACTION THAT THE PLAINTIFF GETS TO CREATE SAYING, WELL, I'M

10:33AM  8   NOT SAYING THAT THE BOOK I WROTE IS THE COPYRIGHTED WORK, I'M

10:33AM  9   INSTEAD SAYING THE COPYRIGHTED WORK ARE THE IDEAS THAT ARE

10:33AM  10  EXPRESSED OR THE CONCEPTS AND THE PLOT THAT IS EXPRESSED THERE.

10:33AM  11      THEY ARE STUCK, FOR BETTER OR WORSE, WITH THE COPYRIGHTED

10:33AM  12  WORK THEY ACTUALLY HAVE WHICH IS THE ENGLISH LANGUAGE NOVEL.

10:33AM  13      AND THE DEFENDANT IS FREE TO SAY, EVERY SINGLE ONE OF MY

10:33AM  14  WORDS IS DIFFERENT.  IT'S NOT GOING TO BE A VERY GOOD ARGUMENT,

10:33AM  15  BUT THEY ARE FREE TO SAY THAT.  THEY ARE FREE TO SAY THAT.

10:33AM  16      THE FACT THAT THE THING THAT WAS ACTUALLY COPIED IS NOT THE

10:33AM  17  LITERAL WORDS OF THE UNDERLYING SOURCE CODE IS, DOES NOT MEAN

10:34AM  18  THAT THE SOURCE CODE FOR THE ENTIRE OPERATING SYSTEM IS NOT THE

10:34AM  19  WORK.  IT MEANS THAT THEY HAVE A DIFFERENT THEORY OF COPYING

10:34AM  20  THAN ONE MIGHT HAVE.

10:34AM  21          THE COURT:  OR IT'S JUST A DIFFERENT WORK, IT'S JUST

10:34AM  22  THAT IT CAN BE AN ENTIRE WORK OF THE IOS, IT COULD BE -- THE

10:34AM  23  SOURCE CODE COULD BE A SEPARATE WORK OR THE USER INTERFACE.

10:34AM  24  THAT'S WHAT CISCO IS ARGUING.

10:34AM  25      I'M TRYING TO DETERMINE WHETHER I CAN SPLIT THEM, THAT'S

10:34AM 1      THE WHOLE ISSUE HERE.  AND THIS SEPARATE ECONOMIC VALUE DOES

10:34AM 2      SEEM TO BE A PREMISE THAT I NEED TO FOLLOW IN THE

10:34AM 3      NINTH CIRCUIT.

10:34AM 4           MR. KWUN:  I THINK THE OTHER THING IS, YOU KNOW, YOU

10:34AM 5      WERE GETTING AT THIS POINT OF, ISN'T IT CLEAR WHEN THEY SAY THE

10:34AM 6      USER INTERFACE WHAT THE HECK THEY ARE TALKING ABOUT.

10:34AM 7           AND THE PROBLEM IS THAT THE WAY THESE PROGRAMS ARE WRITTEN,

10:34AM 8      THE WAY THESE OPERATING SYSTEMS ARE WRITTEN, THERE'S THE PART

10:34AM 9      OF THE CODE THAT ACTUALLY DOES SOMETHING, THAT ACTUALLY CHANGES

10:34AM 10     THE SETTING ON A GIVEN PORT OR THAT CREATES A ROUTE BETWEEN TWO

10:34AM 11     POINTS ON A NETWORK.  AND THEN THERE'S THE INTERFACE THAT

10:35AM 12     UNDERSTANDS WHAT IT IS YOU WANT.

10:35AM 13          SO IT'S REALLY A TWO PART PROCESS.  YOU, AS A NETWORK

10:35AM 14     ENGINEER, TELL THE SWITCH WHAT YOU WANT TO DO, AND STEP 1, THE

10:35AM 15     SWITCH HAS TO UNDERSTAND WHAT IT IS YOU WANT TO DO AND THEN IT

10:35AM 16     HAS TO DO IT.

10:35AM 17          AND SO THE UNDERSTAND WHAT YOU WANT TO DO PART, THAT'S

10:35AM 18     SOMEWHERE APPROXIMATELY SPEAKING, WHAT WE ARE TALKING ABOUT

10:35AM 19     HERE AS THE USER INTERFACE.

10:35AM 20          BUT THE PROBLEM IS THERE IS NOT A CLEAN DIVISION BETWEEN

10:35AM 21     WHEN YOU START DOING ONE PART -- STOP DOING ONE PART AND START

10:35AM 22     DOING THE NEXT.  AND WE DON'T HAVE ANY SORT OF CLEAN DEFINITION

10:35AM 23     FROM THE PLAINTIFF DUE TO THE DISCOVERY ISSUES WE MENTIONED.

10:35AM 24          BUT MOREOVER, THE FACT THAT YOU CANNOT DIVIDE IT UP, YOU

10:35AM 25     CAN'T SAY THESE 14 FILES, THESE PRECISELY ARE THE USER

10:35AM  1    INTERFACE, EVEN IF WE ARE NOT TALKING ABOUT CODE COPYING, THAT

10:35AM  2    GOES TO THE FACT THAT THERE IS NOT A SEPARATE, A SEPARATE USER

10:35AM  3    INTERFACE THAT HAS INDEPENDENT ECONOMIC VALUE AND IS ITSELF

10:35AM  4    VIABLE.

10:35AM  5        THE USER INTERFACE IS FUNDAMENTALLY INTERTWINED WITH THE

10:36AM  6    REST OF THE OPERATING SYSTEM, AND IS FUNDAMENTALLY TIED TO IT.

10:36AM  7    IT CANNOT BE, UNDER THE NINTH CIRCUIT'S TEST IT CANNOT BE A

10:36AM  8    SEPARATE WORK.

10:36AM  9        I WOULD ALSO NOTE THAT IN ADDITION TO THE MONGE CASE WHICH

10:36AM  10   IS ABOUT FAIR USE FACTOR 3, THE MONGE CASE ITSELF RELIES ON AN

10:36AM  11   EARLIER NINTH CIRCUIT CASE COLUMBIA PICTURES TELEVISION V.

10:36AM  12   KRYPTON BROADCASTING OF BIRMINGHAM, AND THAT CASE WAS A

10:36AM  13   STATUTORY DAMAGES CASE.

10:36AM  14       MY POINT IS THAT THE NINTH CIRCUIT IS NOT USING A BUNCH OF

10:36AM  15   DIFFERENT TESTS FOR WHAT IS A SEPARATE WORK, THEY ARE RELYING

10:36AM  16   ON A SINGLE DEFINITION.

10:36AM  17       AND THERE HAS BEEN NO RESPONSE FROM CISCO OTHER THAN TO

10:36AM  18   SAY, WELL THE MONGE CASE WAS IRRELEVANT BECAUSE IT'S A FAIR USE

10:36AM  19   FACTOR 3 CASE.

10:36AM  20           THE COURT:  AND SO YOU WOULD JUST SAY THAT ALL OF

10:36AM  21   THESE COURTS OUTSIDE OF THE NINTH CIRCUIT THAT HAVE RELIED ON

10:36AM  22   MANUFACTURERS TECH ARE JUST WRONG.

10:36AM  23           MR. KWUN:  WELL, YES, BUT I WOULD ALSO SAY THAT MOST

10:37AM  24   OF THEM ACTUALLY WEREN'T CONFRONTING THIS QUESTION.

10:37AM  25           SO I DO THINK THAT THE MANUFACTURERS TECHNOLOGY COURT,

10:37AM 1    ALTHOUGH THE PRIMARY ISSUE BEFORE IT WAS WHETHER THE SCREEN

10:37AM 2    DISPLAYS WERE PROTECTED AT ALL, THAT IT WAS ADDRESSING THIS

10:37AM 3    QUESTION OF WHETHER OR NOT IT WAS A SEPARATE WORK.

10:37AM 4        I THINK IT REACHED A DECISION IT DIDN'T HAVE TO BECAUSE

10:37AM 5    CERTAINLY THE PLAINTIFF COULD HAVE GONE FORWARD AND PROVED

10:37AM 6    INFRINGEMENT OR ATTEMPTED TO PROVE INFRINGEMENT BY RELYING ON

10:37AM 7    THE SIMILARITIES IN THE SCREEN DISPLAYS, EVEN IF THE CODE WAS

10:37AM 8    NOT COPIED.  BUT WITHOUT A DOUBT, THAT COURT ACTUALLY

10:37AM 9    CONFRONTED THE ISSUE FOR US.

10:37AM 10       BUT THE OTHER CASES --

10:37AM 11           THE COURT:  AND NAPOLI DOESN'T CONFRONT IT?

10:37AM 12           MR. KWUN:  SO NAPOLI WAS ACTUALLY A REALLY

10:37AM 13   INTERESTING ONE, BECAUSE ASIDE FROM THE FACT THAT IT WAS

10:37AM 14   VACATED, THE NAPOLI CASE IS REALLY INTERESTING BECAUSE ACTUALLY

10:37AM 15   AS I READ IT CLOSELY, ABSOLUTELY SUPPORTS OUR POSITION, AND LET

10:37AM 16   ME EXPLAIN WHY.

10:37AM 17       SO THE NAPOLI CASE INVOLVED MS. NAPOLI WHO WAS A CONSULTANT

10:37AM 18   FOR SEARS.  AND THEY HIRED HER TO WRITE A PROGRAM.  AND

10:37AM 19   ACCORDING TO SEARS, THEY HAD PROVIDED HER WITH DETAILED

10:38AM 20   DIAGRAMS OR SOME SUCH FOR THE SCREEN DISPLAYS THEY WANTED.

10:38AM 21       SO THE RELATIONSHIP BETWEEN THE TWO OF THEM SOURED, AND

10:38AM 22   ULTIMATELY EVEN THOUGH SHE GOT PAID $10,000, SHE SOMEHOW WAS

10:38AM 23   ABLE TO SAY, I WANT ALL OF MY SOURCE CODE BACK, AND FOR

10:38AM 24   WHATEVER REASON, NOTWITHSTANDING THE FACT THEY HAD PAID HER

10:38AM 25   $10,000, SEARS GAVE BACK ALL OF THAT CODE.

10:38AM  1      MS. NAPOLI THEN SAID OH, BUT SHE KEPT A COPY, SO THAT'S

10:38AM  2  COPYRIGHT INFRINGEMENT AND THEY HAD A LAWSUIT.

10:38AM  3      SEARS HAD A DEFENSE, AND SEAR'S DEFENSE IS THEY SAID SEARS

10:38AM  4  IS A JOINT AUTHOR, AND AS A JOINT AUTHOR, THEY DON'T NEED A

10:38AM  5  LICENSE.  THEY CANNOT INFRINGE.  AND THEIR JOINT AUTHORSHIP

10:38AM  6  DEFENSE WAS BASED ON THE SCREEN DISPLAYS.

10:38AM  7      SO THIS IS THE CONTEXT IN WHICH THE MANUFACTURERS

10:38AM  8  TECHNOLOGY CASE CAME UP.

10:38AM  9      AND SO SHE SAID, THE PLAINTIFF, THE COPYRIGHT OWNER, SHE

10:39AM 10  SAID OH, BUT MY COPYRIGHT DOESN'T COVER THE SCREEN DISPLAYS AT

10:39AM 11  ALL.  WELL, SHE LOST ON THAT BECAUSE THE COPYRIGHT OFFICE

10:39AM 12  CLEARLY SAID IT INCLUDES THE SCREEN DISPLAYS.

10:39AM 13      BUT HOW DOES THIS JOINT AUTHORSHIP ARGUMENT WORK IF THE

10:39AM 14  SCREEN DISPLAYS ARE A SEPARATE COPYRIGHT FROM THE UNDERLYING

10:39AM 15  SOURCE CODE?  THE FACT THAT SEARS WAS A JOINT AUTHOR OF THE

10:39AM 16  SCREEN DISPLAYS WOULDN'T GIVE THEM A DEFENSE TO INFRINGEMENT

10:39AM 17  FOR HAVING THE SOURCE CODE.

10:39AM 18      SO -- AND INDEED, THERE'S A FOOTNOTE, FOOTNOTE 4 IN THE

10:39AM 19  NAPOLI DECISION, AND THE COURT SAYS, NAPOLI CANNOT SERIOUSLY

10:39AM 20  DISPUTE THAT WHATEVER WORK SEARS CONTRIBUTED TO WAS TO BE

10:39AM 21  MERGED WITH NAPOLI'S WORK INTO A SINGLE WHOLE.

10:39AM 22      SO THAT IS WHY THERE WAS A LIVE DISPUTE OVER JOINT

10:39AM 23  AUTHORSHIP.  THE DISTRICT COURT SAID MS. NAPOLI HAS SWORN ON

10:40AM 24  AFFIDAVIT THAT NOTWITHSTANDING THAT THE SCREEN DISPLAYS IN HER

10:40AM 25  PROGRAM ARE ESSENTIALLY IDENTICAL TO THE ONES THAT SEARS

10:40AM  1   PROVIDED, THAT THAT WAS A MASSIVE COINCIDENCE AND SHE ACTUALLY,

10:40AM  2   ON HER OWN, WITHOUT LOOKING AT THEIR MATERIALS, GENERATED

10:40AM  3   EXACTLY THE SAME SCREEN DISPLAYS.

10:40AM  4       I THINK THE COURT SAID, I CAN'T RESOLVE THAT, THAT'S A

10:40AM  5   FACTUAL DISPUTE.

10:40AM  6       I THINK THAT YOU CAN READ BETWEEN THE LINES THAT THE COURT

10:40AM  7   HAD SOME DOUBTS ABOUT MS. NAPOLI'S POSITION WHICH IS PERHAPS

10:40AM  8   WHY YOU SAW A SETTLEMENT FOUR MONTHS LATER THAT RESULTED IN THE

10:40AM  9   VACATING OF THE DECISION.

10:40AM  10      BUT I DO THINK THE KEY POINT IS THE ENTIRE DISPUTE OVER

10:40AM  11  THIS DEFENSE MADE NO SENSE WHATSOEVER UNLESS YOU ASSUME THAT

10:40AM  12  THE SOURCE CODE AND SCREEN DISPLAYS ARE A SINGLE WORK.

10:40AM  13      SO THE OTHER DECISIONS THAT THEY CITE, THE CLARITY CASE,

10:40AM  14  THE JAMISON CASE, AND SO ON, THOSE GO TO WHAT IS BEING COPIED

10:40AM  15  AND WHETHER OR NOT THE THING THAT IS BEING COPIED IS

10:41AM  16  PROTECTABLE.  THEY AREN'T DISCUSSING WHAT THE WORK AS A WHOLE

10:41AM  17  IS.

10:41AM  18      IF YOU LOOK AT THE CLARITY SOFTWARE CASE, THERE IS A BRIEF

10:41AM  19  MENTION, IT'S A WESTLAW CITATION THEY HAVE AT PAGE STAR 10, THE

10:41AM  20  COURT FRAMED THE INFRINGEMENT ISSUE THAT IT WOULD LATER HAVE TO

10:41AM  21  ADDRESS AS WHETHER OR NOT THE ALLEGED COPYING RENDERED THE

10:41AM  22  SOFTWARE INFRINGING, NOT THE SCREEN DISPLAYS, THE SOFTWARE.

10:41AM  23      AND THE JAMISON CASE DOES INDEED CITE MANUFACTURERS

10:41AM  24  TECHNOLOGY, BUT AT STAR 13 IN THAT DECISION HOLDS THAT THE

10:41AM  25  ALLEGEDLY COPIED MATERIAL, THAT THE ALLEGEDLY COPIED MATERIALS

10:41AM 1    WERE NOT COPYRIGHTABLE AT ALL BECAUSE THEY WERE A METHOD OF

10:41AM 2    OPERATION, AND THEREFORE IT WAS OF COURSE IRRELEVANT WHAT THE

10:41AM 3    WORK AS A WHOLE IS.

10:41AM 4        AND WE HAVE GONE OVER THE NAPOLI CASE, I THINK IT ACTUALLY

10:41AM 5    GOES THE OTHER WAY.

10:41AM 6        THEY ALSO CITED A NUMBER OF CASES IN A STRING CITE IN A

10:41AM 7    FOOTNOTE WHERE THEY I THINK WOULD CONCEDE THAT THIS ISSUE OF

10:42AM 8    WHETHER OR NOT THERE IS A HIDDEN SEPARATE REGISTRATION, THAT

10:42AM 9    THAT WAS NOT DIRECTLY CONFRONTED.  BUT THEY SAY THAT THE COURTS

10:42AM 10   PROCEEDED UNDER A SEEMING IMPLICIT UNDERSTANDING THAT THE USER

10:42AM 11   INTERFACE WAS A SEPARATE WORK.

10:42AM 12       I THINK IF YOU LOOK AT THOSE CASES, FIRST OF ALL, YOU WILL

10:42AM 13   SEE THAT THEY TEND TO BE ANALYTIC DISSECTION ORDERS, MUCH LIKE

10:42AM 14   WE ARE ARGUING ABOUT HERE, BUT THEY ARE GOING TO THE INDIVIDUAL

10:42AM 15   ELEMENTS.

10:42AM 16       SO THEY ARE ADDRESSING WHETHER OR NOT THE INDIVIDUAL

10:42AM 17   ELEMENTS THAT WERE ALLEGEDLY COPIED ARE PROTECTABLE.  AND OF

10:42AM 18   COURSE YOU ARE DOING THAT, OF COURSE YOU ARE GOING TO FOCUS ON

10:42AM 19   WHATEVER WAS ALLEGEDLY COPIED.

10:42AM 20       THE ONE THING I DO WANT TO BRING UP IS I THINK IT WILL

10:42AM 21   PROBABLY BE SLIDE 28 OR 29, SO THIS IS FROM THE SAME 1988

10:42AM 22   COPYRIGHT OFFICE DECISION WE HAVE BEEN TALKING ABOUT.  THIS IS

10:42AM 23   A PROCEDURAL POINT THAT THEY RAISE.  ACTUALLY, LET'S GO TO

10:42AM 24   SLIDE 29.

10:42AM 25       THE COPYRIGHT OFFICE SAYS THAT THEY RECOGNIZE THAT THIS

10:43AM   1    DECISION TO USE A SINGLE APPLICATION MEANS THAT SOMETIMES YOU

10:43AM   2    WILL BE REGISTERING THINGS THAT ARE TEXTUAL AND THINGS THAT ARE

10:43AM   3    VISUAL AT THE SAME TIME.

10:43AM   4        AND THEY SAY, WELL, WHAT YOU OUGHT TO DO IS WE HAVE A

10:43AM   5    SEPARATE FORM FOR LITERARY WORKS AND ONE FOR PERFORMING ARTS,

10:43AM   6    FIGURE OUT WHAT PREDOMINATES IN YOUR PROGRAM AND REGISTER IT

10:43AM   7    THAT WAY.

10:43AM   8        SO LET'S TAKE A LOOK AT THE NEXT SLIDE, THIS IS IN THE

10:43AM   9    APPLE V. MICROSOFT CASE, THIS IS ONE OF THE DECISIONS THEY CITE

10:43AM  10    IN THE FOOTNOTE, THIS IS JUDGE VAUGHN'S DISTRICT COURT

10:43AM  11    DECISION, ACTUALLY ONE OF SEVERAL DISTRICT COURT DECISIONS.

10:43AM  12            THE COURT:  YES.

10:43AM  13            MR. KWUN:  BUT HE LISTS IN FOOTNOTE 1, THE

10:43AM  14    REGISTRATIONS THAT ARE AT ISSUE.  AND YOU WILL SEE THEY ARE ALL

10:43AM  15    PA REGISTRATIONS.  AND I WILL ADMIT THAT I DON'T DEAL WITH A

10:43AM  16    LOT OF PERFORMING ARTS CASES, SO I ACTUALLY HAD TO LOOK IT UP.

10:43AM  17        IF WE GO TO THE NEXT SLIDE, THIS IS FROM THE INSTRUCTIONS

10:43AM  18    FOR FORM PA.  AND IT MAKES VERY CLEAR IT'S FOR REGISTRATION OF

10:43AM  19    WORKS OF THE PERFORMING ARTS, AND THAT INCLUDES WORKS THAT ARE

10:44AM  20    PERFORMED INDIRECTLY BY MEANS OF ANY DEVICE OR PROCESS.

10:44AM  21        SO WHAT WE HAVE HERE IS WE HAVE THE USER INTERFACE OF THESE

10:44AM  22    PROGRAMS OF MAC PAINT, MAC DRAW AND OF THE MACINTOSH BINDER,

10:44AM  23    AND APPLE REGISTERED THEM AS PRIMARILY A WORK OF PERFORMING ART

10:44AM  24    BECAUSE WHAT THEY WERE MOST INTERESTED IN WAS THE USER

10:44AM  25    INTERFACE.  IT'S VERY DIFFERENT FROM OUR SITUATION WHERE WHAT

10:44AM 1    WAS REGISTERED WAS A TX REGISTRATION.  WHAT CISCO WAS PRIMARILY

10:44AM 2    INTERESTED IN WAS PROTECTING ITS SOURCE CODE.

10:44AM 3              THE COURT:  SO I GUESS WHAT I'M REALLY CONCERNED

10:44AM 4    ABOUT IS THE COPYRIGHT OFFICE TO SAY THAT IF YOU REGISTER YOUR

10:44AM 5    SOURCE CODE YOU ALSO HAVE A REGISTRATION OF YOUR INTERFACE OR

10:44AM 6    YOUR SCREEN SHOTS IS, IT'S PROTECTIVE OF THE COPYRIGHT OFFICE

10:44AM 7    OF NOT BEING INUNDATED WITH TWICE THE NUMBER OF REGISTRATIONS,

10:44AM 8    SO THAT'S EFFICIENT AND APPROPRIATE.

10:44AM 9        BUT THE COPYRIGHT OFFICE IS ONLY CONCERNED ABOUT

10:44AM 10   REGISTRATION AND NOT COPYRIGHTABILITY PER SE.  THEY ARE NOT

10:45AM 11   MAKING THAT DETERMINATION.

10:45AM 12       AND SO I DON'T KNOW HOW MUCH TO READ INTO IT, I'M MORE

10:45AM 13   CONCERNED ABOUT THE INDEPENDENT ECONOMIC VALUE ARGUMENT.  BUT

10:45AM 14   YOU KNOW, IT WOULD BE -- IF AUTHORS HAVE REGISTERED THEIR

10:45AM 15   SOURCE CODE AND LATER LEARNED THAT THEIR SCREEN SHOTS OR THEIR

10:45AM 16   USER INTERFACE WAS NOT PROTECTED, THAT WOULD BE SHOCKING.

10:45AM 17       AND SO I THINK TO THE EXTENT THAT WE ARE SEEING ANYTHING IN

10:45AM 18   THE COPYRIGHT OFFICE BULLETIN, OR I'M NOT SURE WHETHER THIS IS

10:45AM 19   A DECISION OR AN ANNOUNCEMENT THEY CALL IT, IT IS THAT ONCE YOU

10:45AM 20   REGISTER YOUR SOURCE CODE, IT ALSO COVERS THE USER INTERFACE AS

10:45AM 21   THE REGISTERED WORK.  I DON'T KNOW THAT THEY MEAN THAT TO BE

10:45AM 22   THE WORK THAT IS LITIGATED ON A COPYRIGHT INFRINGEMENT WHERE WE

10:45AM 23   ARE DEALING WITH DIFFERENT ISSUES.

10:45AM 24       I JUST THINK YOUR OTHER ARGUMENT, FRANKLY TO ME, IS THE ONE

10:45AM 25   I REALLY HAVE TO FOCUS ON THE INDEPENDENT ECONOMIC VALUE.

10:45AM 1          MR. KWUN:  AND I DO THINK ON THAT, THE FACT THAT

10:45AM 2    CISCO HAS PUNTED ENTIRELY AND IT MADE NO ATTEMPT WHATSOEVER TO

10:46AM 3    COME UP WITH ANY EVIDENCE IS DISPOSITIVE.

10:46AM 4          THE COURT:  YEAH.  OKAY.

10:46AM 5        MR. PAK, WANT TO HEAR FROM YOU, WE NEED TO TAKE A BREAK AT

10:46AM 6    11.  I WASN'T EXPECTING THIS TO TAKE TWO HOURS, SO I'M KEEPING

10:46AM 7    AN EYE ON THE TIME.  DO YOU THINK YOU CAN FINISH IN 15 MINUTES?

10:46AM 8          MR. PAK:  YES, YOUR HONOR.

10:46AM 9          THE COURT:  EXCELLENT.  THAT WAS THE RIGHT ANSWER.

10:46AM 10          MR. PAK:  I THINK I HAVE BEEN ENOUGH TIMES BEFORE

10:46AM 11   YOUR HONOR TO KNOW WHEN TO BE SHORT.

10:46AM 12        YOUR HONOR, FIRST OF ALL, LET'S DEAL WITH THE LEGAL ISSUES

10:46AM 13   FIRST.

10:46AM 14          THE COURT:  OKAY.

10:46AM 15          MR. PAK:  YOUR HONOR, I THINK IT BEHOOVES US TO GO

10:46AM 16   BACK TO THE MANUFACTURERS TECHNOLOGIES CASE AND READ THAT

10:46AM 17   OPINION AGAIN.  I THINK THAT YOU WILL FIND THAT THE JUDGE IN

10:46AM 18   THAT CASE DID AN EXTENSIVE SURVEY OF ALL THE DIFFERENT CIRCUIT

10:46AM 19   HOLDINGS THAT PERTAINED TO THE QUESTION OF USABILITY, TO THE

10:46AM 20   QUESTION OF COPYRIGHTABILITY OF USER INTERFACES, YOU NOTED

10:46AM 21   THERE WAS A SPLIT.

10:46AM 22        HE WENT THROUGH AND ANALYZED THE POLICY RATIONAL.  OF

10:47AM 23   COURSE HE CITED THE COPYRIGHT OFFICE DECISION AS PART OF THAT

10:47AM 24   BECAUSE WHAT HE WAS DOING WAS NOT, AS YOUR HONOR CORRECTLY

10:47AM 25   NOTED, DEFERRING TO THE COPYRIGHT OFFICE FOR DECISIONS OF

10:47AM   1    ENFORCEMENT AND COPYRIGHTABILITY.  WHAT HE WAS SAYING IS

10:47AM   2    BECAUSE OF THIS NEW POLICY, WHAT ARE THE IMPLICATIONS TO OUR

10:47AM   3    COPYRIGHT POLICIES AND TO OUR COPYRIGHT LAW IF IT IS THAT YOU

10:47AM   4    CAN NO LONGER REGISTER THE USER INTERFACE SEPARATELY FROM THE

10:47AM   5    CODE.

10:47AM   6         AND THERE'S A GREAT DESCRIPTION OF THAT, YOUR HONOR,

10:47AM   7    STARTING ON PARAGRAPH, OR SECTION 3 OF THAT REPORT, IT SAYS,

10:47AM   8    THE COURT IS THEREFORE LEFT WITH A CHOICE BETWEEN TWO

10:47AM   9    ALTERNATIVES.  THE COURT NOTES.  AND ULTIMATELY SAYS THAT THE

10:47AM  10    SECOND APPROACH AND ONE THAT THIS COURT ADOPTS, IS TO TREAT THE

10:47AM  11    SINGLE REGISTRATION OF THE COMPUTER PROGRAM AS ACCOMPLISHING

10:47AM  12    TWO INTERRELATED YET DISTINCT REGISTRATIONS, DISALLOWS THE

10:47AM  13    COURT TO BUILD ON THE SOFT PLUM CASE WHICH WAS EXTENSIVELY

10:47AM  14    DISCUSSED BY FOCUSSING ON THE COPYRIGHTABLE EXPRESSION IN EACH

10:47AM  15    TYPE OF REGISTRATION, AND AVOIDING THE MISTAKE OF IDENTIFYING A

10:48AM  16    PROGRAM'S IDEA WITH THE IDEA OF A PARTICULAR SCREEN DISPLAY.

10:48AM  17    AND ALSO RECOGNIZES THAT A COMPUTER PROGRAM AND ITS SCREEN

10:48AM  18    DISPLAYS ARE FOR COPYRIGHT PURPOSES, FUNDAMENTALLY DISTINCT.

10:48AM  19         THAT LINE OF CASES GOES BACK TO WHELAN, YOUR HONOR, WHELAN,

10:48AM  20    THAT WAS MORE IN THE SOURCE CODE COPYING CONTEXT.  BUT THE

10:48AM  21    WHELAN COURT NOTED THE VERY POINT THAT YOUR HONOR HAS BEEN

10:48AM  22    RAISING ALL ALONG WHICH IS, THE ISSUE IS THE OPINION THAT

10:48AM  23    SCREEN OUTPUTS ARE OF NO PROBATIVE WORTH IN DETERMINING WHETHER

10:48AM  24    ONE COMPUTER PROGRAM IS COPIED FROM ANOTHER DIFFERENT PROGRAM

10:48AM  25    CODE BECAUSE DIFFERENT PROGRAMMING LANGUAGES ARE CAPABLE OF

10:48AM 1    PRODUCING THE SAME IDENTICAL SCREEN.

10:48AM 2        SO ALL OF THIS GOES BACK TO THE MANUFACTURERS TECHNOLOGY

10:48AM 3    OPINION BEING PREDICATED ON LEGAL ANALYSIS OF CASE PRECEDENT.

10:48AM 4    OF COURSE ACKNOWLEDGING THE IMPLICATIONS OF THE COPYRIGHT

10:48AM 5    POLICY DECISION, BUT I THINK THIS IS STILL GOOD LAW,

10:48AM 6    YOUR HONOR.  I THINK A NUMBER OF COURTS HAVE CITED IT.

10:48AM 7        ALL THE CASES, CASE FACTUAL ISSUES THAT COUNSEL RAISED --

10:49AM 8        THE COURT:  SO HOW DO I -- THESE ARE TWO COMPLETELY

10:49AM 9    UNRELATED ISSUES.  HOW DO I DEAL WITH THE ISSUE OF INDEPENDENT

10:49AM 10   VALUE?

10:49AM 11       MR. PAK:  YES, LET ME DEAL WITH THAT, YOUR HONOR.

10:49AM 12       SO I THINK THE FIRST QUESTION IS, IS IT POSSIBLE TO HAVE

10:49AM 13   COPYRIGHT REGISTRATION IN THE INTERFACE, I THINK MANUFACTURERS

10:49AM 14   TECHNOLOGY IS GOOD LAW, IT SUPPORTS IT.

10:49AM 15       THE NAPOLI CASE SUPPORTS IT, THE FACTUAL DISTINCTIONS THERE

10:49AM 16   ARE RAISED AS TO WHETHER THE PARTICULAR ALLEGATIONS IN THAT

10:49AM 17   CASE WHICH INVOLVE JOINT VENTURE AGREEMENTS, WHETHER THE WORK

10:49AM 18   FOR THE PURPOSE OF THE CONTRACT DISPUTE INCLUDED THE CODE AND

10:49AM 19   THE USER INTERFACE, THAT'S A SEPARATE ISSUE.

10:49AM 20       BUT THE LAW THAT WE CITED TO YOUR HONOR IS STILL GOOD LAW.

10:49AM 21   IT IS LAW THAT THE IS RECOGNIZED BY THE COURTS AROUND THIS

10:49AM 22   COUNTRY THAT SAYS A SINGLE COPYRIGHT REGISTRATION PROVIDES

10:49AM 23   VALUE, PROVIDES REGISTRATION IN THE USER INTERFACE.

10:49AM 24       THE COURT:  WELL, I GUESS ONE THING THAT IT SOMEWHAT

10:49AM 25   BEGS THE QUESTION OF IF AN AUTHOR CHOOSES TO REGISTER ONLY ITS

10:50AM 1     USER INTERFACE, IS THAT A WORK?  IT'S JUST THE REVERSE OF IT.

10:50AM 2         IF YOU REGISTER YOUR SOURCE CODE, THEN YOU GET YOUR USER

10:50AM 3     INTERFACE WITH IT; AND YOU DON'T HAVE TO MAKE A SEPARATE

10:50AM 4     REGISTRATION.

10:50AM 5         CAN YOU JUST REGISTER YOUR USER INTERFACE BY ITSELF IF YOU

10:50AM 6     WANT, AND ACTUALLY, IT SEEMS AS THOUGH IF THE COPYRIGHT OFFICE

10:50AM 7     IS NOT IN THE POSITION OF DEFINING A WORK IN A LITIGATED CASE,

10:50AM 8     IT'S JUST NOT WHAT IT -- I DON'T SEE HOW IT COULD.

10:50AM 9         IT COULD DEFINE WHAT IS NECESSARY TO REGISTER SOMETHING,

10:50AM 10    AND THAT'S ALL IT'S DOING, THEY DON'T TELL US WHAT'S PROTECTED

10:50AM 11    OR NOT.

10:50AM 12            MR. PAK:  IT'S NOT LIKE THE PATENT OFFICE,

10:50AM 13    YOUR HONOR.

10:50AM 14            THE COURT:  SO THEY ARE JUST TAKING IT, STAMPING IT

10:50AM 15    ON THE DATE IT'S RECEIVED AND THERE IT IS FOR THE WORLD TO SEE.

10:50AM 16    SO THAT'S WHY I COME AROUND THIS THE OTHER WAY.

10:50AM 17            MR. PAK:  YES, SO LET ME ADDRESS THE ECONOMIC VALUE

10:50AM 18    QUESTION.

10:50AM 19            THE COURT:  OKAY.

10:50AM 20            MR. PAK:  SO THAT'S REALLY A FACTUAL QUESTION,

10:51AM 21    YOUR HONOR, AS TO WHETHER IN THIS CASE, CAN CISCO PROVE THAT

10:51AM 22    THERE IS INDEPENDENT ECONOMIC VALUE TO THE USER INTERFACE

10:51AM 23    INDEPENDENT OF THE PARTICULAR PROGRAMMING CODE OR PROGRAMMING

10:51AM 24    LANGUAGE THAT WAS USED TO GENERATE THAT USER INTERFACE.

10:51AM 25        AND WE HAVE, CONTRARY TO THE ASSERTION, WE HAVE AN

10:51AM  1    INCREDIBLE --

10:51AM  2              THE COURT:  AND YOU ARE PREPARED TO PROOF UPON IT.

10:51AM  3              MR. PAK:  ABSOLUTELY, YOUR HONOR.

10:51AM  4        WE HAVE AN INCREDIBLE AMOUNT OF ECONOMIC EVIDENCE FROM THE

10:51AM  5    EXPERTS, BUT ALSO HISTORICAL EVIDENCE FROM ARISTA'S OWN

10:51AM  6    WITNESSES TO THAT TALK ABOUT THE VERY IMPORTANT ECONOMIC NEED

10:51AM  7    FOR THEM TO COPY THE CISCO CLI, DESPITE THE FACT THAT THEY ARE

10:51AM  8    USING A COMPLETELY DIFFERENT CODE, DESPITE THE FACT THAT THEY

10:51AM  9    ARE USING A COMPLETELY DIFFERENT CODE, DESPITE THE FACT THAT --

10:51AM  10             THE COURT:  SO I CAN'T TELL BY THE FACT THAT YOU ARE

10:51AM  11   SUGGESTING, THAT I WOULD LIKE, AND THOUGHT I WAS ABLE TO MAKE A

10:51AM  12   DETERMINATION NOW --

10:51AM  13             MR. PAK:  I THINK YOU CAN, YOUR HONOR.

10:51AM  14             THE COURT:  -- OF WHAT THE WORK IS.

10:51AM  15        AND IF I WERE TO AGREE WITH YOU, YOU ARE SUGGESTING THAT

10:52AM  16   YOU RECOGNIZE THAT YOU HAVE A BURDEN TO ESTABLISH THIS ECONOMIC

10:52AM  17   VALUE AND YOUR DAMAGES THEORY COULD FAIL PARTIALLY IF YOU DON'T

10:52AM  18   PROVE THAT.

10:52AM  19             MR. PAK:  WHAT I'M SAYING, YOUR HONOR, IS THERE'S A

10:52AM  20   SEPARATE QUESTION IN TERMS OF THE WORK.

10:52AM  21        WE THINK THAT THE WORK DEFINITION SCOPE ISSUE WE ARE

10:52AM  22   DEALING WITH NOW CAN BE RESOLVED ON THE MANUFACTURERS

10:52AM  23   TECHNOLOGIES LINE OF CASES.

10:52AM  24        THIS ARGUMENT THAT SOMEHOW AT THE END OF THE DAY THERE MAY

10:52AM  25   BE A FURTHER REQUIREMENT FOR FAIR USE PURPOSES OR OTHER TYPES

10:52AM  1    OF ANALYSIS, WHERE WE HAVE TO LOOK AT THE ECONOMIC VALUE OF THE

10:52AM  2    WORK, AND DETERMINE WHETHER IT CAN EXIST INDEPENDENTLY OF OTHER

10:52AM  3    ASPECTS OF THE PROGRAM.

10:52AM  4            THE COURT:  YOU ARE SAYING THE ECONOMIC VALUE ONLY

10:52AM  5    COMES IN, THAT THE MONGE CASE WAS A --

10:52AM  6            MR. PAK:  THAT WAS A FAIR USE CASE THAT WAS TALKING

10:52AM  7    ABOUT -- OF COURSE THE SCOPE HAS TO BE THE SAME, ARE WE TALKING

10:52AM  8    ABOUT USER INTERFACE OR CODE.  BUT IN TERMS OF THE FURTHER

10:52AM  9    REQUIREMENTS OF ECONOMIC VALUE, LOOKING AT THE IMPACT ON THE

10:52AM  10   MARKET HARM, THE MARKET HARM OF THAT PARTICULAR COPYRIGHTED

10:52AM  11   WORK, THAT'S WHERE THE ECONOMIC ANALYSIS COMES IN.

10:53AM  12       BUT REALLY, I GO BACK TO WHAT I SAID TO YOUR HONOR, LET'S

10:53AM  13   CUT TO THE CHASE HERE, WHICH IS DR. ELSTEN PROVIDES A ROAD MAP

10:53AM  14   FOR ALL OF THESE QUESTIONS.

10:53AM  15       NUMBER ONE, SHE PUTS A NUMBER, SHE PUT A $16.4 MILLION

10:53AM  16   NUMBER ON THE CLI, INDEPENDENT OF ANYTHING ELSE.  HER

10:53AM  17   APPORTIONMENT ANALYSIS ALONE SHOWS THAT THERE'S ECONOMIC VALUE.

10:53AM  18   WHETHER WE AGREE WITH THAT NUMBER OR IT'S A DIFFERENT NUMBER,

10:53AM  19   AND THIS IS SLIDE 5 AGAIN.

10:53AM  20           THE COURT:  SO LET ME, BECAUSE TIME IS SHORT, LET ME

10:53AM  21   WALK THROUGH SOME OF THE ARISTA'S ARGUMENTS.

10:53AM  22           MR. PAK:  SURE.

10:53AM  23           THE COURT:  BECAUSE ASIDE FROM THE LEGAL ISSUES

10:53AM  24   THERE'S THE DISCLOSURE ISSUE WHICH IS ALWAYS VERY IMPORTANT AND

10:53AM  25   THEY POINT TO YOUR RESPONSE TO INTERROGATORY NUMBER 6,

10:53AM 1    IDENTIFYING COPYRIGHTED WORK AS THE IOS.

10:53AM 2        AND THEN THEY, I MEAN, ESSENTIALLY THERE ARE NUMEROUS

10:53AM 3    INTERROGATORY RESPONSES THAT MR. FERRALL WALKED THROUGH THAT

10:53AM 4    SHOW YOUR IDENTIFICATION.

10:53AM 5        NOW I WASN'T TOO CONCERNED ABOUT THE REGISTERED WORK, I

10:54AM 6    THINK WE PUT THAT TO REST, OR I HAVE.  BUT IN OTHER PLACES YOU

10:54AM 7    DID IDENTIFY THE WORK AND DEFINE THE WORK I WAS PARTICULARLY

10:54AM 8    INTERESTED IN THE INTERROGATORY 21.  SO 6 AND 21 ARE MY BIGGEST

10:54AM 9    CONCERNS.

10:54AM 10            MR. PAK:  YES, YOUR HONOR.

10:54AM 11        SO FIRST OF ALL, LET'S TALK ABOUT DISCOVERY.  IT WOULD TAKE

10:54AM 12    ME TWO DAYS TO WALK YOU THROUGH, YOUR HONOR, THROUGH ALL OF THE

10:54AM 13    DISCOVERY RESPONSES IN THIS CASE.  DEPOSITION TRANSCRIPTS.

10:54AM 14        THAT'S NOT THE EXERCISE HERE.  WE ARE NOT TRYING TO CHERRY

10:54AM 15    PICK A FEW THINGS THAT WERE IN ONE INTERROGATORY RESPONSE AND

10:54AM 16    IGNORE THE TOTALITY OF WHAT'S BEEN SAID.

10:54AM 17        LET ME SHOW YOU ON SLIDE 14, YOUR HONOR.  BECAUSE FIRST OF

10:54AM 18    ALL, THE ISSUE IS NOT OPERATING SYSTEM GENERALLY WHETHER WE USE

10:54AM 19    THE WORD OPERATING SYSTEM.  OF COURSE WE USE THE WORD OPERATING

10:54AM 20    SYSTEM, YOUR HONOR, BECAUSE THAT'S HOW THE REGISTRATIONS WERE

10:54AM 21    DONE.

10:54AM 22        THE ISSUE IS WHETHER THE COPYRIGHTED WORK AT ISSUE HAS TO

10:55AM 23    BE JUST THE USER INTERFACE, OR USER INTERFACE PLUS CODE.

10:55AM 24    BECAUSE WHAT ARISTA WANTS TO DO, YOUR HONOR, IS TO SAY, BECAUSE

10:55AM 25    COPYRIGHT EXPRESSION DOESN'T PROTECT A FUNCTIONAL SYSTEM, YOU

10:55AM 1    DON'T OWN A COPYRIGHT IN A FUNCTIONAL OPERATING SYSTEM.  YOU

10:55AM 2    OWN COPYRIGHT IN THE EXPRESSION THAT'S EMBODIED IN A PRODUCT.

10:55AM 3        THERE ARE ONLY TWO TYPES OF EXPRESSIONS AT ISSUE HERE, IT

10:55AM 4    COULD EITHER BE THE USER INTERFACE OR IT COULD BE THE SOURCE

10:55AM 5    CODE THAT WAS WRITTEN.

10:55AM 6        NOTHING THAT THEY HAVE SHOWN YOU INDICATES WHATSOEVER THAT

10:55AM 7    WE HAVE COLLECTIVELY DEFINED THE COPYRIGHTED WORK AS CODE PLUS

10:55AM 8    USER INTERFACE.

10:55AM 9        AND PARTICULARLY ON SLIDE 14, AS YOU SAW IN SOME OF THE

10:55AM 10   SAME RESPONSES, FOR EXAMPLE NUMBER 21, AND THEN ON ROG NUMBER

10:55AM 11   ONE WHICH IS THE VERY FIRST INTERROGATORY, THEY ASKED ABOUT IN

10:55AM 12   TERMS OF OUR COPYRIGHT INFRINGEMENT ALLEGATIONS.  WE TALKED

10:55AM 13   ABOUT THE COPYRIGHTED CLI.

10:55AM 14       SO WE HAVE BEEN VERY CLEAR THAT ALTHOUGH OPERATING SYSTEMS

10:55AM 15   HAVE BOTH A USER INTERFACE --

10:56AM 16           THE COURT:  BUT LET'S LOOK AT, YOU KNOW, I GUESS I'M

10:56AM 17   KIND OF HUNG UP ON ARISTA'S SLIDE 13 WITH THAT FOOTNOTE OF YOUR

10:56AM 18   DEFINITION OF CISCO COPYRIGHTED WORKS.  AND IT IS DEFINED AS

10:56AM 19   THE OPERATING SYSTEM.

10:56AM 20           MR. PAK:  ABSOLUTELY, YOUR HONOR.

10:56AM 21       AND THAT IS, IF YOU THINK ABOUT WHAT WAS REGISTERED AS THE

10:56AM 22   COPYRIGHTED WORK, IT IS THE OPERATING SYSTEM.

10:56AM 23           THE COURT:  WELL, IN ONE PLACE YOU CALLED IT THE

10:56AM 24   REGISTERED WORK, I'M GOING TO GIVE YOU A PASS ON THAT, BUT THIS

10:56AM 25   ONE I'M NOT SURE I CAN.

10:56AM   1        MR. PAK:  WELL, TWO THINGS, YOUR HONOR.

10:56AM   2        SO THE COPYRIGHTED WORK, AND YOU CAN SEE IT'S COPYRIGHTED

10:56AM   3   WORKS, PLURAL, THE COPYRIGHTED WORKS CLEARLY INCLUDES BOTH THE

10:56AM   4   CODE THAT WAS REGISTERED AS WELL AS THE USER INTERFACE.

10:56AM   5        WHEN THIS TALKS ABOUT COPYRIGHTED OPERATING SYSTEMS AND

10:56AM   6   DOCUMENTATION --

10:56AM   7        THE COURT:  WELL MR. FERRALL IS NOT ARGUING OTHERWISE

10:56AM   8   HE JUST SAYS IT'S ONE WORD, IT INCLUDES BOTH.

10:56AM   9        MR. PAK:  WHEN IT SAYS COPYRIGHTED OPERATING SYSTEM

10:56AM  10   YOUR HONOR, THIS IS NOT TALKING ABOUT CODE VERSUS USER

10:57AM  11   INTERFACE, WE HAVE BEEN CLEAR THAT WHEN WE TALK ABOUT THE

10:57AM  12   OPERATING SYSTEM WITH RESPECT TO THE COPYRIGHTS AT ISSUE IT'S

10:57AM  13   THE USER INTERFACE COMPONENT OF THAT.

10:57AM  14        THERE'S NOTHING IN THIS STATEMENT YOU ARE SEEING ON PAGE 13

10:57AM  15   THAT INDICATES THAT WE EVER CONTEMPLATED INCLUDING THE CODE AS

10:57AM  16   PART OF THE COPYRIGHTED WORK.

10:57AM  17        THIS LANGUAGE, YOUR HONOR, IS ENTIRELY CONSISTENT WITH THE

10:57AM  18   MANUFACTURERS TECH CASES.  WHEN YOU REGISTER A COMPUTER PROGRAM

10:57AM  19   AND YOU SAY I HAVE COPYRIGHTED THE COMPUTER PROGRAM FILE, I'M

10:57AM  20   GETTING A SEPARATE DISTINCT REGISTRATIONS, USER INTERFACE AND

10:57AM  21   CODE.

10:57AM  22        THIS DOESN'T IN ANY WAY NEGATE OR SUGGEST TO YOUR HONOR.

10:57AM  23   BUT MOST IMPORTANTLY, AGAIN IT GOES BACK TO DR. ELSTEN.  SO WE

10:57AM  24   CAN SIT HERE AND DR. BLACK AS WELL, BUT DR. ELSTEN MAKE ITS

10:57AM  25   VERY CRYSTAL CLEAR, THIS IS A FAIR USE DISCOVERY RESPONSE

10:57AM 1      YOUR HONOR, CORRECT.  THIS IS THE PURPOSE AND CHARACTER OF THE

10:57AM 2      USE.  SHE ANALYZED ALL OF THE DISCOVERY RESPONSES, ALL OF OUR

10:58AM 3      ALLEGATIONS BEFORE SHE FORMED HER OPINIONS ON FAIR USE.

10:58AM 4          SO IF YOU GO BACK TO SLIDE 5, MS. ELSTEN ANALYZED ALL OF

10:58AM 5      THESE DISCOVERY RESPONSES IN TOTALITY, NOT JUST THE SNIPPETS

10:58AM 6      THAT I HAVE SHOWN YOU OR NOT JUST THE SNIPPETS THAT COUNSEL FOR

10:58AM 7      ARISTA HAS SHOWN YOU.  AND THIS IS WHAT SHE SAYS:  I UNDERSTAND

10:58AM 8      THAT THE COPYRIGHTS AT ISSUE DO NOT RELATE TO THE

10:58AM 9      IMPLEMENTATION OF THE CLI, WHICH IS EXECUTED BY THE UNDERLYING

10:58AM 10     SOURCE CODE.

10:58AM 11         THIS RIGHT HERE ANSWERS ALL THE QUESTIONS.  BECAUSE AGAIN,

10:58AM 12     WE ARE TALKING ABOUT RULE 26, WE ARE NOT TALKING ABOUT WHETHER

10:58AM 13     WE COULD, IN ISOLATION, CHERRY PICK THIS WORD OR NOT.

10:58AM 14         THEY KNEW.  AND THAT ANSWERS THAT QUESTION

10:58AM 15         THE COURT:  SO I THINK I'M SATISFIED THAT YOU HAVE

10:58AM 16     GIVEN SUFFICIENT DISCLOSURE UNDER RULE 26.

10:58AM 17         THE ISSUE FOR ME IS THE FINAL ISSUE OF WHETHER I'M GOING TO

10:58AM 18     APPLY OUT-OF-CIRCUIT LAW TO THE DEFINITION OF THE WORK AND

10:58AM 19     ALLOW, REALLY, THE DISAGREEMENT ON THE SCOPE TO PLAY OUT IN THE

10:59AM 20     PRESENTATION OF THE CASE ON FAIR USE.

10:59AM 21         AND IT REALLY GETS DOWN TO WHAT IS THE SUBSTANTIAL PORTION

10:59AM 22     OF THE QUALITATIVE PORTION OF THE PROGRAM.

10:59AM 23         MR. PAK:  YES, YOUR HONOR.

10:59AM 24         BUT I DO THINK IT'S IMPORTANT FOR YOUR HONOR TO BE ABLE TO

10:59AM 25     INSTRUCT THE JURY THAT, LOOK, CISCO IS NOT, CONSISTENT WITH ALL

10:59AM   1    OF THESE DISCOVERY RESPONSES AND OUR COMPLAINT, CISCO IS NOT

10:59AM   2    GOING TO COME IN HERE AND ASSERT THAT THE CODE IS THE

10:59AM   3    COPYRIGHTED WORK AT ISSUE.

10:59AM   4             THE COURT:  RIGHT.

10:59AM   5             MR. PAK:  BECAUSE OTHERWISE THEY HAVE NO IDEA WHAT

10:59AM   6    TYPE OF COPYING IS INVOLVED, WHAT TYPE OF COPYRIGHTABLE ISSUES

10:59AM   7    ARE INVOLVED --

10:59AM   8             THE COURT:  I PRESUME I CAN INSTRUCT THE JURY UP

10:59AM   9    FRONT THIS CASE DOESN'T INVOLVE ALLEGATIONS OF COPYING SOURCE

10:59AM  10    CODE.

10:59AM  11             MR. PAK:  THAT'S RIGHT, YOUR HONOR.

10:59AM  12        AND I THINK FOR YOU TO THEN SAY THAT THE COPYRIGHTED WORK

10:59AM  13    THAT CISCO IS ALLEGING IS THE USER INTERFACE, I THINK THAT

10:59AM  14    WOULD BE ENTIRELY CONSISTENT WITH THE CASE LAW.

11:00AM  15        THERE'S NOTHING -- EVEN IF YOUR HONOR WANTED TO COUCH IT IN

11:00AM  16    TERMS OF, THIS IS WHAT CISCO IS ALLEGING AS THE COPYRIGHTED

11:00AM  17    WORK, IS THE USER INTERFACE --

11:00AM  18             THE COURT:  BUT YOU ARE TELLING ME THAT THE -- I

11:00AM  19    DON'T HAVE TO BE CONCERNED ABOUT NINTH CIRCUIT LAW ON THE

11:00AM  20    INDEPENDENT ECONOMIC VALUE.

11:00AM  21             MR. PAK:  ABSOLUTELY NOT, BECAUSE THERE IS NO

11:00AM  22    NINTH CIRCUIT LAW THAT NEGATES ALL THE MANUFACTURING TECHNOLOGY

11:00AM  23    CASES.  THIS WASN'T JUST A ONE-DISTRICT CASE, YOUR HONOR, THIS

11:00AM  24    HAS BEEN CITED BY A NUMBER OF COURTS AROUND THE COUNTRY.

11:00AM  25             AND EVEN IN -- AND I WANTED TO NOTE EVEN IN THE ONE

11:00AM 1    NINTH CIRCUIT CASE THAT COUNSEL FOR ARISTA CITED, THEY WERE

11:00AM 2    LOOKING AT SCREEN SHOTS IN THE CONTEXT OF THE OVER ALL USER

11:00AM 3    INTERFACE.

11:00AM 4         THEIR POINT WAS IF I TAKE A FEW SCREEN SHOTS OUT OF THE

11:00AM 5    TOTALITY OF ALL THE SCREEN SHOTS THAT CAN BE GENERATED USER

11:00AM 6    INTERFACE, IS THAT A FAIR WAY TO TREAT THE COPYRIGHTABLE WORK

11:01AM 7    TO SLICE OUT A FEW OF THE SCREENS OUT OF THE MANY SCREENS THAT

11:01AM 8    COULD BE -- IN THAT DISCUSSION THAT THE NINTH CIRCUIT DOES,

11:01AM 9    THERE'S NO DISCUSSION OF CODE.

11:01AM 10        AND THAT'S THE ISSUE, YOUR HONOR.  THE CODE IS -- WHAT'S

11:01AM 11   REALLY IMPORTANT IS THEY HAD NEVER CITED TO YOU ANY CASE FROM

11:01AM 12   THE NINTH CIRCUIT THAT SAYS IT WOULD BE WRONG FOR A DISTRICT

11:01AM 13   COURT JUDGE IN OUR CIRCUIT TO ALLOW A PLAINTIFF TO ASSERT A

11:01AM 14   COPYRIGHTED WORK AS THE USER INTERFACE WHEN THEY HAVE --

11:01AM 15        THE COURT:  SO HAVE YOU GIVEN ME ANY CASE WHERE USER

11:01AM 16   INTERFACE WAS AT ISSUE?

11:01AM 17        MR. PAK:  THE SYNOPSYS CASE, YOUR HONOR, AND --

11:01AM 18        THE COURT:  SYNOPSYS WAS USER INTERFACE?

11:01AM 19        MR. PAK:  THAT WAS VERY SIMILAR IN TERMS OF THE

11:01AM 20   COMMAND LINE INTERFACE TECHNOLOGY.

11:01AM 21        THERE ARE OTHER CASES, I JUST WANT TO ALSO NOTE THAT IF

11:01AM 22   YOUR HONOR REALLY STOPS TO THINK ABOUT WHAT'S BEING SAID, THINK

11:01AM 23   ABOUT ALL THE MOVIE CASES THAT WE HAVE AND THE MUSIC CASES IN

11:01AM 24   THE NINTH CIRCUIT, IT MAKES NO DIFFERENCE WHETHER I ENCODE A

11:01AM 25   MOVIE USING A DIFFERENT ENCODING SCHEME WHERE THE BITS ARE

11:01AM 1    DIFFERENT.  IT DOESN'T MATTER WHETHER I USE FILM OR A VCR TAPE

11:02AM 2    OR A -- AND THEN IN THE NINTH CIRCUIT THERE ARE A COUPLE OF

11:02AM 3    OTHER NINTH CIRCUIT CASES YOUR HONOR THAT WE DID NOTE, THIS IS

11:02AM 4    FOOTNOTE NUMBER ONE, THE APPLE COMPUTER V. MICROSOFT CASE.

11:02AM 5    THAT'S THE NORTHERN CALIFORNIA 1992 CASE.

11:02AM 6         THE COURT:  IS THAT ONE OF THE DISTRICT COURT

11:02AM 7    DECISIONS?

11:02AM 8         MR. PAK:  THAT'S ONE OF THE DISTRICT COURT CASES,

11:02AM 9    YOUR HONOR.

11:02AM 10        COMPUTER ACCESS TECHNOLOGIES V. CATALYST.

11:02AM 11        THE COURT:  AND THESE ARE IN YOUR BRIEF?

11:02AM 12        MR. PAK:  THESE ARE IN MY BRIEF, YOUR HONOR.

11:02AM 13        THE COURT:  OKAY.  WELL, I WILL CERTAINLY HAVE THAT.

11:02AM 14        MR. PAK:  SO AGAIN, I THINK WHAT WE ARE ASKING IS WE

11:02AM 15   ARE SAYING WE SHOULD BE ABLE TO ASSERT WHAT WE HAVE DISCLOSED

11:02AM 16   IN DISCOVERY.  THERE'S BEEN NO NINTH CIRCUIT LAW THAT PRECLUDES

11:02AM 17   THE ABILITY TO ASSERT COPYRIGHTABLE WORK AS THE USER INTERFACE.

11:02AM 18        THE COURT:  WELL, WHEN I CAME IN THIS MORNING I

11:02AM 19   ACTUALLY THOUGHT YOUR POSITION WAS STRONG AND NOT REMARKABLE,

11:02AM 20   AS YOU SAY.

11:02AM 21        LET'S TAKE A BREAK.  LET'S COME BACK AT A QUARTER PAST AND

11:02AM 22   THEN WE WILL BE ABLE TO MOVE ON, I HOPE.

11:03AM 23        MR. PAK:  THANK YOU, YOUR HONOR.

11:03AM 24        (WHEREUPON A RECESS WAS TAKEN.)

11:18AM 25        THE COURT:  ALL RIGHT.  IT WOULD BE A PERFECT WORLD

11:18AM 1    IF I HAD, NOW, A COUPLE OF WEEKS TO PREPARE A LENGTHY,

11:18AM 2    THOUGHTFUL WRITTEN ORDER ON THE DEFINITION OF THE WORKS, AND

11:18AM 3    THAT PERFECT WORLD ISN'T WHERE WE ARE LIVING TODAY.

11:18AM 4        AND SO I THINK IT'S IMPORTANT THAT I RULE NOW SO THAT YOU

11:18AM 5    CAN PROCEED TO PREPARING YOUR PRESENTATION FOR TRIAL AND THAT

11:18AM 6    WE CAN HAVE SOME CLEAR JURY INSTRUCTIONS.

11:18AM 7        AND YOU DID BRIEF THIS QUITE A BIT AGO, I DIDN'T PREPARE A

11:18AM 8    WRITTEN ORDER IN ADVANCE OF TODAY'S HEARING.

11:18AM 9        ON THE RULE 26 ISSUE, I'M SATISFIED THAT BY THE SECOND

11:18AM 10   AMENDED COMPLAINT AND THE RESPONSES TO DISCOVERY, THAT CISCO

11:18AM 11   HAS ADEQUATELY DISCLOSED ITS INTENTION TO PROCEED ON THE

11:19AM 12   DEFINITION OF ITS WORKS, INCLUDING ITS USER INTERFACE, AND NOT

11:19AM 13   ITS ENTIRE OPERATING SYSTEM.

11:19AM 14       AND SO ON THAT GROUND, I WILL DENY THE MOTION, OR WHEREVER

11:19AM 15   WE ARE, THE DEFINITION TO STRIKE THE REQUEST FOR THE DEFINITION

11:19AM 16   OF USER INTERFACE AS THE OPERATING SYSTEM.

11:19AM 17       ON THE ISSUE OF THE -- THE LEGAL ISSUE THAT MR. KWUN

11:19AM 18   ARGUED, I THINK IT'S A DIFFICULT ISSUE.  I THINK THAT THE CASES

11:19AM 19   THAT ARE CITED PERTAIN TO SPECIFIC FACTUAL CIRCUMSTANCES AND

11:19AM 20   DIFFERENT PROCEDURAL POINTS IN THE CASES, BUT I AM PERSUADED

11:19AM 21   BASED UPON THE MANUFACTURERS TECHNOLOGY CASE, AND THAT LINE OF

11:19AM 22   CASES THAT HAVE BEEN UTILIZED, I DID LOOK BRIEFLY AT THE APPLE

11:19AM 23   V. MICROSOFT DECISION, AND OF COURSE IT WASN'T THE HEART OF

11:19AM 24   THAT DECISION EITHER, BUT IT WAS A CASE THAT WAS BASED ON AN

11:19AM 25   ANALYSIS OF THE USER INTERFACE THAT, IN FACT, THE REGISTRATION

11:20AM 1    OF THE OPERATING SYSTEM IS CREATING HERE TWO SEPARATE

11:20AM 2    REGISTRATIONS AND PROTECTABLE WORKS, AND I WILL ALLOW CISCO TO

11:20AM 3    GO FORWARD ON THE DEFINITION OF ITS WORKS AS EACH OF THE USER

11:20AM 4    INTERFACES RELATED TO THE PARTICULAR VERSION OF THE OPERATING

11:20AM 5    SYSTEM AT ISSUE.

11:20AM 6        I DO AGREE WITH MR. KWUN THAT WHEN WE GET TO THE FAIR USE

11:20AM 7    ARGUMENT IN THE CASE, FOR THAT DEFENSE, THAT WHETHER OR NOT

11:20AM 8    THERE'S INDEPENDENT ECONOMIC VALUE OF THE USER INTERFACE, MAY

11:20AM 9    BE AN ISSUE THAT WILL ALLOW YOU TO COMPLETELY WIN AND PREVAIL

11:20AM 10   ON YOUR FAIR USE DEFENSE.  BUT OBVIOUSLY, YOU WOULD HAVE

11:20AM 11   PREFERRED IT TO BE AN ARGUMENT IN THE YOUR ARSENAL AT THE

11:20AM 12   EARLIER STAGE OF DETERMINING INFRINGEMENT AND I RECOGNIZE THAT.

11:20AM 13       BUT THE ISSUE IS CERTAINLY ALIVE, AS YOU HAVE SHOWN ME

11:20AM 14   HERE, AND I THINK THAT WE PERHAPS MOVE THE PRESENTATION OF

11:21AM 15   EVIDENCE DOWN THE ROAD, BUT IT WILL STILL BE AVAILABLE FOR THE

11:21AM 16   PROOF ON THE FAIR USE DEFENSE.

11:21AM 17       ALL RIGHT.  LET'S MOVE ON THEN.  AND I THOUGHT THIS FIRST

11:21AM 18   PART WOULD TAKE ABOUT 30 MINUTES, SO WE ARE ABOUT

11:21AM 19   TWO-AND-A-HALF HOURS LATE FROM WHERE I THOUGHT WE WOULD BE.

11:21AM 20   SO, YOU ARE, I'M SURE, EXQUISITELY ORGANIZED TO LEAD ME THROUGH

11:21AM 21   THIS, ALTHOUGH I'M NOT SURE HOW IT HAPPENED THAT I TORMENTED

11:21AM 22   YOU OF BRIEFING THIS ISSUE OF ANALYTIC DISSECTION SO MANY

11:21AM 23   TIMES, AND GOING BACK THROUGH THE BRIEFING, I REALLY WAS SORRY

11:21AM 24   YOU HAD DONE THAT SO MANY TIMES, BUT THANK YOU.

11:21AM 25           MR. VAN NEST:  DID YOU WANT TO GO TO WHERE YOU

11:21AM 1    STARTED THIS MORNING ON THE LIST OF AGREED POINTS?

11:21AM 2         THE COURT:  I GUESS, THAT'S HOW WE TEED IT UP.

11:21AM 3    ORIGINALLY YOU HAD SUGGESTED, MR. VAN NEST, THAT YOU HAD A

11:22AM 4    DIFFERENT WAY YOU WOULD LIKE TO PRESENT IT.

11:22AM 5         MR. VAN NEST:  I DON'T THINK SO.  I THINK THAT'S

11:22AM 6    FINE.

11:22AM 7      WHAT I WANTED TO DO IS START WHERE WE DID START, AND WE

11:22AM 8    DID, WITH THE ARGUMENTS WE ALREADY HEARD.

11:22AM 9      MR. SILBERT IS HERE AND HE'S PREPARED TO GO THROUGH THAT

11:22AM 10   LIST WITH YOU OF ITEMS THAT ARE NOT PROTECTABLE, MANY OF WHICH

11:22AM 11   ARE STIPULATED, SOME OF WHICH ARE NOT, AND TRY TO GET THAT DONE

11:22AM 12   SO WE CAN HAVE AN INSTRUCTION, EITHER PRELIMINARY OR FINAL ON

11:22AM 13   THAT AND HAVE THAT RESOLVED.

11:22AM 14        THE COURT:  AND I'VE ASKED YOU THIS BEFORE, MR. VAN

11:22AM 15   NEST, AND MAYBE YOU WANT TO DEFER TO MR. SILBERT BETTER AND I

11:22AM 16   WILL HEAR FROM EITHER OF YOU.  ON THE COMMAND LINES, THE

11:22AM 17   MULTIWORD COMMAND LINES, THERE ARE 508 LINES, AND THERE ARE

11:22AM 18   SOME, YOU'VE CATEGORIZED THEM FOR ME IN DIFFERENT WAYS.  BUT

11:22AM 19   IT'S NOT CLEAR TO ME WHETHER I NEED TO LOOK AT EACH ONE OR

11:22AM 20   WHETHER I'M GOING TO TAKE A MORE DISTANT VIEW OF THEM AT A

11:23AM 21   HIGHER LEVEL ANALYSIS.

11:23AM 22        MR. VAN NEST:  I THINK IT'S THE LATTER.  I AM GOING

11:23AM 23   TO DEFER TO MR. SILBERT, BUT I THINK WE CONCLUDED THAT LOOKING

11:23AM 24   AT EACH ONE WAS NOT PRACTICAL.

11:23AM 25      SO I WILL LET MR. SILBERT ADDRESS THAT.

11:23AM  1    THE COURT:  AND MR. PAK, I'M GOING TO, I'M STARTING

11:23AM  2  HERE WITH THE DEFENSE.  DO YOU HAVE ANY OBJECTION TO THAT?  OR

11:23AM  3  MR. NELSON?

11:23AM  4    MR. NELSON:  I'M GOING TO -- YOU WILL HEAR FROM ME

11:23AM  5  TOO.  THAT'S FINE, YOUR HONOR.  IT'S REALLY HOW YOU WANT TO DO

11:23AM  6  IT AND YOU THINK IS GOING TO BE MORE USEFUL.

11:23AM  7    I KNOW THERE WERE A COUPLE OF THINGS YOU EXPRESSED IN

11:23AM  8  CHAMBERS FRIDAY THAT YOU MIGHT HAVE HAD SOME CONCERNS WITH,

11:23AM  9  SPECIFICALLY THE HIERARCHIES AND MAYBE SOME OF THE MODES AND

11:23AM  10  PROMPTS, SO WE CERTAINLY CAN EXPLAIN THAT.

11:23AM  11    I ALSO PLANNED TO MAYBE EXPLAIN SOME OF THE PROCESS HERE

11:23AM  12  CONSISTENT WITH THE CDN, ON THESE COMMANDS, BUT IT DOESN'T

11:23AM  13  SOUND LIKE YOU ARE REALLY GOING TO THE INDIVIDUAL COMMANDS, SO

11:23AM  14  THAT PART MAY BE SOMETHING WE CAN JUST SKIP OVER.

11:23AM  15    THE COURT:  AND I GUESS FOR BOTH OF YOU, ONE OF MY

11:23AM  16  CONCERNS IS THAT I THINK IT COULD BE ERROR IF I SIMPLY HAVE

11:24AM  17  SOME CUT OFF, SAY WITH WORDS AND PHRASES.  ANYTHING THAT'S

11:24AM  18  FEWER THAN FOUR WORDS IS OUT.  I DON'T THINK I CAN DO THAT.

11:24AM  19  AND ONE WORD IS NOT ON THE TABLE ANYMORE.

11:24AM  20    SO THEN WE HAVE THE, MR. SILBERT, YOU'VE ARGUED IT AS THE

11:24AM  21  NUMBER THAT ARE TWO-WORD PHRASES, AND THE NUMBER OF PHRASES

11:24AM  22  THAT ARE THREE WORDS.

11:24AM  23    AND SO AGAIN, YOU SEEM TO BE ASKING ME TO DRAW A LYNN OF

11:24AM  24  TWO WORDS IS OUT.  AND I DON'T ACTUALLY SEE ANY SUPPORT IN THE

11:24AM  25  LAW FOR SUCH A BUTCHER KNIFE APPROACH.

11:24AM 1      MR. SILBERT:  AND YOUR HONOR --

11:24AM 2          THE COURT:  AND THAT'S ONE ISSUE AND IT'S NOT AT THE

11:24AM 3  TOP OF THE LIST.  I'M JUST TRYING TO DECIDE WHETHER THERE ARE

11:24AM 4  REALLY CATEGORIES OR NOT.

11:24AM 5      MR. SILBERT:  IT'S ONE ISSUE, BUT I THINK IT IS AN

11:24AM 6  ISSUE THAT CAN MAKE OUR JOBS AND OUR LIVES A LITTLE BIT EASIER

11:24AM 7  AT THIS STAGE OF THE PROCEEDING.  AND IT IS AT LEAST ONE POINT

11:25AM 8  ON WHICH I THINK WE ALL AGREE.

11:25AM 9     BECAUSE I UNDERSTOOD YOUR HONOR TO SAY WHEN WE WERE

11:25AM 10 TOGETHER ON FRIDAY THAT YOU WOULD LIKE TO UNDERSTAND SOME

11:25AM 11 INFORMATION AND SOME CONTEXT ABOUT THE INDIVIDUAL WORDS IN THE

11:25AM 12 COMMANDS EVEN SHORT TWO-WORD COMMANDS BEFORE MAKING A DECISION

11:25AM 13 ABOUT THE WORDS AND SHORT PHRASES DOCTRINE.  YOU WEREN'T GOING

11:25AM 14 TO USE THAT HIGH LEVEL CUTOFF.

11:25AM 15         THE COURT:  THAT'S RIGHT.

11:25AM 16     MR. SILBERT:  AND THAT THEN TAKES US, I THINK, TO THE

11:25AM 17 QUESTION YOU STARTED WITH WITH MR. VAN NEST, WHICH IS DO YOU

11:25AM 18 NEED TO AND ARE WE -- SHOULD WE NOW BE GOING KIND OF

11:25AM 19 COMMAND-BY-COMMAND AND MAKING INDIVIDUAL DECISIONS.

11:25AM 20    AND I THINK OUR UNDERSTANDING, AND I BELIEVE THIS IS

11:25AM 21 CONSISTENT WITH CISCO'S UNDERSTANDING OF THIS PRETRIAL PROCESS

11:25AM 22 AT A MINIMUM, THE DECISIONS YOU ARE GOING TO MAKE NOW ARE THAT

11:25AM 23 THEY WOULD NOT INVOLVE THAT LEVEL OF GRANULARITY.

11:25AM 24    WE ARE TRYING TO MAKE THE DECISIONS WE CAN MAKE NOW WITHOUT

11:25AM 25 HAVING TO HEAR EVIDENCE ABOUT WHERE EVERY INDIVIDUAL WORD CAME

11:26AM  1   FROM AND SO FORTH.

11:26AM  2       SO I THINK ON THAT PARTICULAR ISSUE, I THINK THE RESULT IS

11:26AM  3   THAT IT'S NOT SOMETHING YOU PROBABLY COULD TACKLE NOW AND THAT

11:26AM  4   IT'S PENDING YOUR HEARING THE EVIDENCE AT TRIAL.

11:26AM  5           THE COURT:  OKAY.

11:26AM  6       SO ARE YOU GOING TO START, JUST WALK THROUGH THE LIST OF

11:26AM  7   ITEMS THAT WE, THAT YOU AGREED UPON FOR THIS HEARING?

11:26AM  8           MR. SILBERT:  WELL, YES.  I THINK SO.

11:26AM  9       I PLAN TO -- WHAT I PLANNED TO DO WAS TO REFER TO THE LIST

11:26AM  10  WE CREATED IN OUR REVISED PRELIMINARY INSTRUCTION, BECAUSE WHAT

11:26AM  11  YOUR HONOR HAD INDICATED AT THE -- WHEN WE WERE TOGETHER ON

11:26AM  12  FRIDAY WAS YOU DID NOT TO PRESENT A LIST TO THE JURY BUT -- OF

11:26AM  13  WHAT IS -- EVERYONE AGREES IS NOT PROTECTABLE.  BUT YOU WANTED

11:26AM  14  IT AT A HIGHER LEVEL I THINK WAS YOUR --

11:26AM  15          THE COURT:  THAT'S CORRECT.

11:26AM  16      BUT -- AND I'M SORRY, I HAVE NOTES IN TOO MANY PLACES.  BUT

11:27AM  17  I WAS ABLE TO EASILY EXTRACT FROM YOUR BRIEFING, A LIST OF 12

11:27AM  18  SUBJECTS THAT CISCO WAS NOT ASSERTING, SUCH AS INDIVIDUAL

11:27AM  19  ISOLATED WORDS THAT WERE PRE-EXISTING AND WELL KNOWN.  YOU ARE

11:27AM  20  NOT ASSERTING THAT.

11:27AM  21      WHAT MR. VAN NEST DID OR SIGNED THIS BRIEF, YOU JUST

11:27AM  22  EXTRACTED WHAT CISCO SAID IN ITS PAPERS, AND YOU QUOTED THEM

11:27AM  23  EXACTLY.

11:27AM  24          MR. NELSON:  WELL, I THINK THAT'S RIGHT, YOUR HONOR.

11:27AM  25  AND I HAD ACTUALLY PLANNED TO MAYBE GO THROUGH SOME OF THESE

11:27AM 1    THINGS A BIT TO GIVE SOME CONTEXT BECAUSE I KNOW THAT THERE'S

11:27AM 2    BEEN SOME CONFUSION.  I THINK IT PARTICULARLY HELPS WITH

11:27AM 3    RESPECT TO EXPLAINING SOME OF THE HIERARCHIES AND THINGS.

11:27AM 4        BUT ON THAT POINT, IT'S TRUE WHAT WE HAVE GONE THROUGH AND

11:28AM 5    WHAT WE IDENTIFIED IN THE BRIEFING WERE THINGS THAT WE ARE NOT

11:28AM 6    ASSERTING IN THE CASE, RIGHT.

11:28AM 7        AND WE TALKED A BIT ABOUT THIS ON FRIDAY.  WE ARE NOT

11:28AM 8    ASSERTING THAT BECAUSE WE USED A PARTICULAR WORD, THAT MAKES

11:28AM 9    THAT COMMAND PROTECTABLE, RIGHT.  IT'S THE OVERALL CHOICE IN

11:28AM 10   TERMS OF THE ORDER OF THE WORDS, WHAT PARTICULAR THINGS WERE

11:28AM 11   SELECTED, ALL OF THOSE KINDS OF THINGS.

11:28AM 12       SO WE ARE NOT SAYING WE CAME UP WITH AN INDUSTRY STANDARD

11:28AM 13   TERM.  WE ARE NOT SAYING THAT THIS COMMAND IS PROTECTABLE,

11:28AM 14   NECESSARILY, THERE ARE SOME WHERE WE ACTUALLY DID INVENT THE

11:28AM 15   TERMS, BUT EVEN ON THAT BASIS, THAT'S NOT REALLY WHAT WE ARE

11:28AM 16   ARGUING ABOUT HERE.

11:28AM 17       SO WE ARE NOT GOING THROUGH AND SAYING HEY, BECAUSE WE

11:28AM 18   PICKED THIS WORD, BPDU, THAT MAKES THIS COMMAND PROTECTABLE.

11:28AM 19   THAT ISN'T THE LEVEL OF ASSERTION THAT WE ARE TALKING ABOUT

11:28AM 20   HERE.  AND THAT'S WHAT WE HAD KIND OF GONE THROUGH BECAUSE

11:29AM 21   MAYBE IT SIMPLIFIES THINGS FOR YOUR HONOR.

11:29AM 22       THE ONLY CONCERN THAT I HAVE WITH RESPECT TO THE JURY

11:29AM 23   INSTRUCTIONS, AND THIS WAS DISCUSSED A BIT BY MR. PAK IN

11:29AM 24   CHAMBERS ON FRIDAY AS WELL, IS WE DON'T WANT TO CREATE THE

11:29AM 25   IMPRESSION THAT YOU CROSSED THOSE WORDS OUT.  YOU KNOW WHAT I'M

11:29AM 1    SAYING.  AND YOUR HONOR TALKED ABOUT THAT.

11:29AM 2         SO LET'S SAY THEY OFFER A TERM, AND IT'S THREE-WORDS IN THE

11:29AM 3    COMMAND OR FOUR, WHATEVER, AND DR. BLACK GETS UP AND SAYS, WELL

11:29AM 4    THIS TERM, THIS WORD IS AN INDUSTRY STANDARD TERM, RIGHT.

11:29AM 5    MEANING IT PRE-EXISTED AND PEOPLE USED IT AND WHATEVER.

11:29AM 6              THE COURT:  YEAH, YEAH.

11:29AM 7              MR. NELSON:  THEREFORE BLACK IT OUT.  THAT'S NOT WHAT

11:29AM 8    YOU DO.

11:29AM 9         BUT I AGREE THAT ON THE BASIS OF THOSE TERMS, THAT ISN'T A

11:29AM 10   BASIS UPON WHICH WE'RE ASSERTING ORIGINALITY.

11:29AM 11             THE COURT:  AND THE JURY IS GOING TO HAVE TO

11:29AM 12   DETERMINE WHETHER THERE IS THE CREATIVE SPARK IN COMBINING

11:29AM 13   THOSE TERMS.

11:29AM 14             MR. NELSON:  CORRECT.

11:29AM 15             THE COURT:  AND I'M HOPING TO SEPARATE THIS ARGUMENT

11:29AM 16   FROM THE JURY INSTRUCTIONS, BUT IN THAT PRELIMINARY

11:30AM 17   INSTRUCTION, WHAT I WOULD LIKE TO DO IS TO DRAW SOME OF THOSE

11:30AM 18   DISTINCTIONS FOR THE JURY.

11:30AM 19        YOU WILL NOT BE ASKED TO DETERMINE IF AN INDIVIDUAL WORD IS

11:30AM 20   PROTECTABLE UNDER THE COPYRIGHT LAWS, RATHER YOU ARE GOING TO

11:30AM 21   BE ASKED TO DETERMINE WHETHER CISCO HAS PROVED ORIGINALITY OR

11:30AM 22   COPYRIGHTABILITY, WHATEVER WORD WE WANT TO DO, IN THE CREATION

11:30AM 23   OF THE COMBINATION OF WORDS.

11:30AM 24             MR. NELSON:  EXACTLY.

11:30AM 25             THE COURT:  THAT'S AT A HIGH LEVEL VERY SIMPLE

11:30AM 1   WITHOUT REALLY GETTING INTO THE LAW, OF JUST SORT OF WARNING

11:30AM 2   THEM OFF OF SOME THINGS THAT ARE NOT ON THE TABLE.

11:30AM 3       AND THIS I THINK SPEAKS TO ARISTA'S CONCERN THAT THEY NOT

11:30AM 4   BE DRAWN INTO SEEING COPYING OF THINGS THAT AREN'T PROTECTABLE

11:30AM 5   BEFORE THEY GET THE INSTRUCTION.  IT WILL BE HARD TO SHAKE THEM

11:30AM 6   FROM THAT BELIEF.  AND SO I WANT TO DO THAT, BUT I WANT TO DO

11:30AM 7   THAT IN A VERY NEUTRAL WAY.

11:31AM 8       YOU ARE NOT GOING TO BE ASKED TO DO THIS, YOU ARE GOING TO

11:31AM 9   BE ASKED TO DO THIS.  AND THE HAVE A FEW CATEGORIES LIKE THAT,

11:31AM 10  THAT'S WHAT I WAS LOOKING AT IN INSTRUCTION NUMBER 12, THAT I

11:31AM 11  THOUGHT JUST GOT TOO GRANULAR FOR AN EARLY PHASE.  BUT THAT

11:31AM 12  KIND OF BEGS THE QUESTION OF WHAT WE ARE GOING TO TAKE OFF THE

11:31AM 13  TABLE.

11:31AM 14      SO MR. NELSON, CISCO HAS ACKNOWLEDGED A NUMBER OF THINGS

11:31AM 15  IT'S NOT SEEKING PROTECTION ON.  SOME OF THEM ARE SO

11:31AM 16  COMPLICATED THAT IT WOULD CONFUSE THE JURY TO EVEN TELL THEM

11:31AM 17  WHAT IT IS AND THEN NEVER MIND.

11:31AM 18      AND I THINK IN YOUR ARGUMENT AND THE JURY INSTRUCTIONS,

11:31AM 19  YOU'VE SUGGESTED THAT.  AND I AGREE WITH YOU.

11:31AM 20      SO MY LIST OF 12, SOME OF THEM ARE VERY DIFFICULT TO EVEN

11:31AM 21  UNDERSTAND, THEY ARE SO SPECIFIC.

11:31AM 22          MR. SILBERT:  YOUR HONOR, IF I MAY JUST AS A PROCESS

11:31AM 23  POINT, BECAUSE I'M NOT SURE WE WERE CLEAR.

11:31AM 24      WE DID, AFTER WE WERE TOGETHER ON FRIDAY, YOUR HONOR SAID

11:31AM 25  SOMETHING SIMILAR TO WHAT YOU JUST SAID, WHICH WAS THE LIST WE

11:31AM  1    HAD WHICH WAS THE SAME LIST WE EXTRACTED FROM CISCO'S BRIEFING

11:32AM  2    IN OUR ORIGINAL INSTRUCTION 12 WAS TOO GRANULAR TO PRESENT.

11:32AM  3              THE COURT:  YEAH.

11:32AM  4              MR. SILBERT:  AND THAT YOU PREFERRED SOMETHING HIGH

11:32AM  5    LEVEL.

11:32AM  6        WE DID GO AND REVISE IT.

11:32AM  7              THE COURT:  OH, GOOD.

11:32AM  8              MR. SILBERT:  AND WE FILED IT, I BELIEVE LAST NIGHT.

11:32AM  9    WE MADE AN ATTEMPT TO DO A MORE HIGH LEVEL.

11:32AM  10             THE COURT:  SO MINE IS THE SECOND ONE.

11:32AM  11             MR. SILBERT:  PROBABLY THE OLDER ONE.

11:32AM  12             THE COURT:  I CAN'T KEEP READING WHAT AMOUNTS TO

11:32AM  13   400 PAGES EVERY TIME YOU PUT IT OUT, SO I'VE STOPPED READING.

11:32AM  14        AND YOU CAN GIVE ME A REDRAFTED ONE INDIVIDUALLY, BUT I'M

11:32AM  15   NOT GOING TO HUNT THROUGH.  AND YOU FILED IT CORRECTLY,

11:32AM  16   MR. SILBERT, BUT I'M NOT READING IT.  I AM NOT READING IT, AND

11:32AM  17   I CAN'T BECAUSE I DON'T HAVE ANOTHER 30 HOURS TO START OVER

11:32AM  18   AGAIN ON TRYING TO PARSE WHAT SHOULD HAVE BEEN 400 PAGES BUT

11:32AM  19   YOU CHOSE, BOTH OF YOU, TO SINGLE-SPACE 200 PAGES OF DOCUMENT.

11:32AM  20        SO I'M GLAD YOU FILED IT, AND IF YOU WANT IT USED, YOU ARE

11:32AM  21   GOING TO HAVE TO POINT IT OUT TO ME, BECAUSE I'M NOT READING

11:32AM  22   WHAT YOU GAVE ME.

11:33AM  23             MR. SILBERT:  ABSOLUTELY, UNDERSTOOD.

11:33AM  24             THE COURT:  I THINK THEN, MR. SILBERT, I BETTER LET

11:33AM  25   MR. NELSON START BECAUSE I DON'T KNOW HOW YOU WANT TO ORGANIZE

11:33AM 1    THIS DISCUSSION, AND IT'S NOT EXACTLY CLEAR WHAT YOU ARE

11:33AM 2    EXPECTING AS A RESULT OF THIS ARGUMENT.

11:33AM 3        WE WILL GO FOR ABOUT A HALF AN HOUR AND THEN TAKE OUR LUNCH

11:33AM 4    BREAK, AND THEN WE WILL COME BACK THIS AFTERNOON.

11:33AM 5        SO I'M SORRY, MR. SILBERT, WE ARE JUST GOING TO TRADE

11:33AM 6    PLACES HERE.

11:33AM 7            MR. SILBERT:  THAT'S FINE.

11:33AM 8            MR. NELSON:  I HAVE SOME SLIDES TOO, YOUR HONOR.

11:33AM 9        AND DON'T GET CONCERNED BY THE THICKNESS BECAUSE I DON'T

11:33AM 10   USE THEM ALL, SOME OF THEM IS JUST WHAT YOU ARE INTERESTED IN.

11:33AM 11   AND SOME OF THEM THERE'S, LIKE, SOME PRINTED OUT ANIMATIONS.

11:33AM 12   AND YOU KNOW WHEN YOU DO AN ANIMATION, IT MAKES A LOT OF PAGES.

11:33AM 13       SO LET ME JUST FIRST START WITH SOMETHING PROBABLY MAYBE A

11:33AM 14   LITTLE TOO BASIC, BUT I WOULD JUST LIKE TO MAKE SURE WE ARE ON

11:33AM 15   THE SAME PAGE IN THE PROCESS.

11:33AM 16       SO THE WAY I UNDERSTAND THIS, WHAT WE ARE DOING NOW, SO

11:34AM 17   WE'VE DEFINED THE WORK, THE WORK HAS WHAT THE WORK HAS, AND WE

11:34AM 18   ALLEGE THAT THEY COPIED SOME PORTION OF THAT, RIGHT.

11:34AM 19       BUT THEN IT ISN'T NECESSARILY JUST SIMPLY UP TO US ABOUT

11:34AM 20   WHETHER WE CAN ARGUE THOSE THINGS TO THE JURY, SAY HEY, LOOK,

11:34AM 21   THEY COPIED THIS, THEY COPIED THAT, BECAUSE THERE MAY BE SOME

11:34AM 22   THINGS THAT YOUR HONOR THINKS BASED UPON THE LAW, THAT NO, NO,

11:34AM 23   NO, YOU CAN'T ARGUE THAT BECAUSE THAT REALLY ISN'T SOMETHING

11:34AM 24   THAT'S PROTECTABLE UNDER THE LAW, SO I'M NOT GOING TO LET YOU

11:34AM 25   DO THAT BECAUSE THEY COULD GET THE WRONG IDEA AND BASE

11:34AM 1    INFRINGEMENT ON A WRONG THING.

11:34AM 2         SO WHAT WE ARE TRYING TO DO HERE IS FIGURE OUT WHAT THOSE

11:34AM 3    GUIDELINES ARE, THE PARAMETERS AROUND WHAT THAT EVIDENCE IS

11:34AM 4    THAT I CAN OFFER.  ME AND MY COLLEAGUES, BUT FROM THE CISCO

11:34AM 5    SIDE.

11:34AM 6         SO WITH THAT, I KNOW THAT THERE'S BEEN SOME DISCUSSION IN

11:34AM 7    THE PAST, BUT I THINK IT'S HELPFUL TO UNDERSTAND SOME OF THE

11:34AM 8    CONTEXT OF WHAT THESE ARE AND WHAT CHOICES GO IN.  BECAUSE WHEN

11:35AM 9    WE ARE TALKING ABOUT TEXTUAL, RELATIVELY SMALL TEXTUAL PHRASES,

11:35AM 10   FOR LACK OF A BETTER TERM, YOU KNOW, SOME OF THEM TWO WORDS,

11:35AM 11   SOME OF THEM, 3, 4, 5, YOU KNOW YOU KIND OF GET THE IMPRESSION

11:35AM 12   AFTER THE FACT, THAT SEEMS PRETTY BASIC, RIGHT.  IT HAPPENS A

11:35AM 13   LOT OF TIMES.

11:35AM 14        THE COURT:  WELL, IT SEEMS BASIC, BUT REALLY, IT GETS

11:35AM 15   TO ME, GETS TO THE POINT WHERE THERE'S REALLY ONLY ONE WAY TO

11:35AM 16   SAY, SET CLOCK.

11:35AM 17        MR. NELSON:  THAT'S WHY I WANT TO TALK ABOUT SOME OF

11:35AM 18   THESE THINGS TO GIVE SOME CONTEXT.

11:35AM 19        OBVIOUSLY YOUR HONOR IS GOING TO MAKE THE DECISION IN THE

11:35AM 20   END, AND THAT'S YOUR JOB.  I DON'T GET PAID FOR THAT.  ALL I

11:35AM 21   GET PAID IS TO TRY TO SHOW YOU THE INFORMATION FOR YOU TO DO

11:35AM 22   THAT.

11:35AM 23        SO THAT'S WHAT I'M TRYING TO DO HERE, AND IF I'M NOT

11:35AM 24   HELPFUL, PLEASE TELL ME AND I WILL MOVE ON TO SOMETHING ELSE.

11:35AM 25        SO YOU KNOW, ONE OF THE THINGS, IF I GO TO THE FIRST SLIDE

11:35AM 1    HERE, JUST FOR ONE TEXT HERE, WE ARE NOT CLAIMING THIS AS A

11:35AM 2    PROTECTABLE ELEMENT, BUT IT IS IMPORTANT TO UNDERSTAND JUST ON

11:35AM 3    THIS CONCEPT THAT YOUR HONOR SAID ABOUT THE IDEA THAT THERE'S

11:36AM 4    ONLY ONE WAY TO DO THIS, BECAUSE THAT IS PART OF THE MAIN THEME

11:36AM 5    THAT WE HEAR FROM ARISTA OR AT LEAST A VERY SMALL SUBSET OF

11:36AM 6    WAYS TO DO THIS.

11:36AM 7        SO I MEAN, THAT'S NOT EVEN TRUE FROM THE BEGINNING, AND

11:36AM 8    WE'VE TALKED ABOUT THAT, THAT THERE ARE, AND OTHER PEOPLE OUT

11:36AM 9    THERE IN THE INDUSTRY USED THESE DIFFERENT TYPES OF INTERFACES,

11:36AM 10   RIGHT.

11:36AM 11       AND SO WHAT CISCO PICKED IS THIS COMMAND LINE INTERFACE

11:36AM 12   WHICH IS A YOUR TEXTUALLY BASED, BUT THERE ARE OTHERS OUT THERE

11:36AM 13   THAT HAVE MORE, IF WE WERE THINKING ABOUT WINDOWS, THE

11:36AM 14   GRAPHICAL USER INTERFACE, THE MENU DRIVEN USER INTERFACE, THOSE

11:36AM 15   THINGS ARE OUT THERE, THOSE ARE VIABLE CHOICES AND THOSE ARE

11:36AM 16   CHOICES THAT PEOPLE MADE IN THIS PARTICULAR INDUSTRY.

11:36AM 17       NOW WE ARE CERTAINLY NOT CLAIMING AS AN ELEMENT, RIGHT,

11:36AM 18   THAT OH, THE FACT THAT WE PICKED THAT, YOU KNOW, THAT THAT

11:36AM 19   SOMEHOW IS COPYRIGHTABLE, THESE THINGS EXISTED TO US,

11:36AM 20   YOUR HONOR IS FAMILIAR WITH THAT, THAT IS THE POINT, BUT THAT

11:37AM 21   BACKGROUND I THINK IS IMPORTANT TO RECOGNIZE THAT THERE ARE A

11:37AM 22   LOT OF CHOICES THAT GO INTO THIS THING AND IT'S NOT SIMPLY A

11:37AM 23   SITUATION WHERE AM YOU'RE IN THIS INDUSTRY, SO IT'S DICTATED

11:37AM 24   THAT YOU HAVE TO DO THIS.  AND THAT, I THINK, IS AN IMPORTANT

11:37AM 25   THING.

11:37AM 1      SO LET ME JUST PULL OUT, THIS IS FOR DESCRIPTION, SOME OF

11:37AM 2  THESE MULTIWORD COMMAND EXPRESSIONS.  THIS IS ONE THAT'S

11:37AM 3  ASSERTED IN THE CASE.  THIS IS SPANNING-TREE PORTFAST BDU

11:37AM 4  FILTER DEFAULT.

11:37AM 5      AND I'M NOT GOING THROUGH EACH OF THESE INDIVIDUALLY, I'M

11:37AM 6  USING THIS AS AN EXAMPLE, YOUR HONOR, ON THE CHOICES AND THE

11:37AM 7  CREATIVITY AND THE ORIGINALITY THAT GOES INTO THESE THINGS.

11:37AM 8      SO IF I GO TO SLIDE 4, WE WILL SEE HERE, AND WHAT I HAVE

11:37AM 9  EXCERPTED IS THIS COMES FROM DR. BLACK'S REPORT, YOU WILL

11:37AM 10 REMEMBER WHEN WE TALKED IN CHAMBERS FRIDAY, HE SAID YOU DID

11:37AM 11 THREE THINGS, THE BROWN ONES ARE THE LEGACY COMMAND TERM,

11:38AM 12 MEANING IT'S IN SOME PRE-EXISTING OPERATING SYSTEM, MAYBE NOT

11:38AM 13 INDUSTRY STANDARD MAYBE NOT COMMON INDUSTRY TERM BUT IT'S IN A

11:38AM 14 PREEXISTING ONE.

11:38AM 15     THEN THERE'S THIS IDEA OF THE INDUSTRY STANDARD TERM.  AND

11:38AM 16 THAT'S WORD-BY-WORD.  THAT'S WHAT HE WENT THROUGH.  YOU CAN SEE

11:38AM 17 ON THE COLOR CODING.

11:38AM 18     SO FOR EXAMPLE, IN THIS PARTICULAR ONE HE'S GOT GREEN ON

11:38AM 19 SPANNING-TREE.  SO DR. BLACK'S OPINION, RIGHT, THAT

11:38AM 20 SPANNING-TREE, THAT'S AN INDUSTRY STANDARD TERM.

11:38AM 21          THE COURT:  PRE-EXISTING CISCO.

11:38AM 22          MR. NELSON:  CORRECT.

11:38AM 23          THE COURT:  OKAY.  THAT'S IMPORTANT HERE.

11:38AM 24          MR. NELSON:  IT IS EXACTLY IMPORTANT, AND I SHOULD

11:38AM 25 MAKE THAT CLEAR THAT WHEN I'M TALKING ABOUT THAT, I AM TALKING

11:38AM 1    ABOUT, YOU KNOW, AT THE TIME OF CREATION, BECAUSE WHAT HAPPENED

11:38AM 2    AFTERWARDS --

11:38AM 3           THE COURT:  AND WE ARE LOOKING ONLY AT THE TIME OF

11:38AM 4    CREATION HERE.

11:38AM 5           MR. NELSON:  RIGHT.  EXACTLY.

11:38AM 6       WE ARE TALKING ABOUT THE PROTECTABILITY, WE ARE NOT TALKING

11:38AM 7    ABOUT FAIR USE ISSUES AND THINGS LIKE THAT WHERE SOME OF THAT

11:39AM 8    OTHER STUFF MAY OR MAY NOT CREEP IN.

11:39AM 9       SO THEN THERE'S THE BLUE WITH THE COMMON INDUSTRY TERM,

11:39AM 10   RIGHT.  SO I THINK THE DISTINCTION THERE, AS I RECALL, IS IT

11:39AM 11   MIGHT NOT GO TO THE LEVEL OF INDUSTRY STANDARD IN THE SENSE

11:39AM 12   THAT IT'S NOT DEFINED IN SOME IEEE DOCUMENT OR SOMETHING LIKE

11:39AM 13   THAT, BUT SAYING HEY, THIS IS THE KIND OF TERM THAT PEOPLE USE

11:39AM 14   A LOT, RIGHT.

11:39AM 15      YOU CAN SEE EVEN IN THIS COMMAND, TWO OF THE WORDS THEY

11:39AM 16   DON'T CONTEST, THOSE ARE UNIQUE TO CISCO, ALL OF THOSE KINDS OF

11:39AM 17   THINGS.  SO THIS ONE WOULD BE PRETTY STRAIGHTFORWARD.  SO OF

11:39AM 18   COURSE THAT ISN'T ALWAYS THE CASE, BUT I USE THIS AS AN EXAMPLE

11:39AM 19   BECAUSE I THINK IT'S AN IMPORTANT ONE TO GET INTO, EVEN WITHIN

11:39AM 20   THE CONTEXT OF THE IDEA THAT THERE MIGHT BE INDUSTRY STANDARD

11:39AM 21   TERMINOLOGY OR THERE MAY BE COMMON INDUSTRY TERMS, THERE'S A

11:39AM 22   LOT OF CREATIVITY THAT GOES INTO THIS.

11:39AM 23      AND WHEN I SAY A LOT OF CREATIVITY, YOUR HONOR, LET ME BE

11:39AM 24   CLEAR, I'M TALKING ABOUT THE CDN CONTEXT.  I'M NOT TALKING

11:40AM 25   ABOUT THE CONTEXT OF CHAUSSER OR ONE OF THOSE GUYS, BECAUSE

11:40AM  1    THAT'S NOT THE STANDARD, THAT'S NOT REALLY HELPFUL TO GO

11:40AM  2    THROUGH THIS, BECAUSE CERTAINLY YOU ARE WRITING THIS FOR AN

11:40AM  3    AUDIENCE, THERE'S NO QUESTION.

11:40AM  4        I'M SITTING HERE AS SOMEBODY WHO IS DESIGNING THIS USER

11:40AM  5    INTERFACE, FOR SOME -- KNOWING WHAT MY AUDIENCE IS, THE PEOPLE

11:40AM  6    THAT ARE GOING TO USE THIS, AND WHAT'S GOING TO MAKE SENSE TO

11:40AM  7    THEM.  WHAT DO I THINK IS GOING TO MAKE SENSE TO THEM?  WHAT DO

11:40AM  8    I THINK WHEN THEY ARE SITTING THERE BEHIND THESE TERMINALS AND

11:40AM  9    THEIR NETWORK IS GOING DOWN, HOW ARE THEY GOING TO BE ABLE TO

11:40AM  10   GET AT THE INFORMATION THEY NEED TO QUICKLY, EFFICIENTLY,

11:40AM  11   CONFIGURE THESE SWITCHES, DO THESE KINDS OF THINGS.

11:40AM  12       SO IT ISN'T WRITTEN FOR YOU AND ME, NECESSARILY, BUT WITHIN

11:40AM  13   THAT CONTEXT, THERE ARE A LOT OF CHOICES THAT GO INTO THIS.

11:40AM  14       SO, LET'S JUST PULL OUT THIS FIRST ONE, RIGHT.

11:40AM  15   SPANNING-TREE.  AND THEN GO TO ONE OF THESE OFFICIAL

11:40AM  16   CERTIFICATION GUIDES.  SO THIS IS KIND OF AN INDUSTRY STANDARD

11:41AM  17   TERMINOLOGY THAT DESCRIBES THIS.  THIS FUNCTIONALITY OF WHAT

11:41AM  18   THE SPANNING-TREE IS, THE THIRD PRIMARY FEATURE OF LAN SWITCHES

11:41AM  19   IS LOOP PREVENTION AS IMPLEMENTED BY SPANNING-TREE PROTOCOL,

11:41AM  20   RIGHT.  STP.

11:41AM  21       SO SURE, YOU KNOW, PEOPLE KNOW WHAT SPANNING TREES ARE, BUT

11:41AM  22   THERE'S A LOT OF WAYS YOU CAN SEE EVEN WITHIN THE CONTEXT OF

11:41AM  23   THIS DOCUMENT LET ALONE OTHER DOCUMENTS OF HOW PEOPLE MIGHT

11:41AM  24   DESCRIBE THAT KIND OF DATA STRUCTURE, WHICH IS WHAT WE ARE

11:41AM  25   TALKING ABOUT HERE.

11:41AM 1          THE COURT:  DESCRIBE OR REPRESENT IT.

11:41AM 2          MR. NELSON:  EXACTLY.

11:41AM 3      SO WE JUST GAVE SOME EXAMPLES HERE LIKE SPANNING OR TREE OR

11:41AM 4  STP OR SPAN TREE.

11:41AM 5          THE COURT:  BUT I DON'T THINK -- YOU ARE GETTING DOWN

11:41AM 6  TO THE WORD-BY-WORD.

11:41AM 7          MR. NELSON:  NO, I'M TRYING TO PIECE TOGETHER THE

11:41AM 8  ENTIRETY OF THE COMMAND.

11:41AM 9          THE COURT:  UH-HUH.

11:41AM 10         MR. NELSON:  AND MAYBE IT'S NOT HELPFUL BECAUSE

11:41AM 11 YOUR HONOR HAS ALREADY PASSED THAT.

11:41AM 12         THE COURT:  WELL, YOU KNOW, FIVE WORDS, AND TWO OF

11:41AM 13 THEM ARE UNIQUE TO CISCO.

11:42AM 14         MR. NELSON:  YEAH.  THIS ONE IS A TOTALLY EASY ONE.

11:42AM 15         THE COURT:  IS PRETTY EASY.  THE HARD ONE IS WHERE

11:42AM 16 ALL THREE WORDS ARE GREEN.

11:42AM 17         MR. NELSON:  WELL, YEAH.

11:42AM 18         THE COURT:  THAT'S THE HARDER CASE.

11:42AM 19         MR. NELSON:  AGREED.

11:42AM 20         THE COURT:  AND DR. BLACK HAS PLENTY OF THOSE.

11:42AM 21         MR. NELSON:  RIGHT.

11:42AM 22     HE'S GOT SOME OF THOSE, BUT THAT'S WHY I WAS TRYING TO

11:42AM 23 START ON A GREEN ONE WITH THE IDEA THAT THERE ARE, EVEN WITHIN

11:42AM 24 THE CONFINES OF THIS IDEA OF INDUSTRY STANDARD, RIGHT, THAT YOU

11:42AM 25 WANT TO EXPRESS THIS WHERE YOU COULD USE DIFFERENT TERMINOLOGY.

11:42AM 1    THIS STP, SPAN TREE, SPAN TREE PROTOCOL, ALL THESE THINGS THAT

11:42AM 2    PEOPLE WOULD RECOGNIZE, YOU KNOW, MEANING WHEN I SAY PEOPLE,

11:42AM 3    PEOPLE IN THE INDUSTRY WOULD RECOGNIZE.

11:42AM 4        SO THERE ARE A NUMBER OF MEANS, WE'VE COME UP WITH SIX OF

11:42AM 5    THOSE HERE.  SO IT ISN'T CONFINED TO SAY, AND IT'S NOT CORRECT

11:42AM 6    TO SAY, THAT WELL, BECAUSE THIS IS THE DATA STRUCTURE YOU ARE

11:42AM 7    REFERRING TO, EVERYONE IN THIS INDUSTRY ALWAYS REFERS TO IT IN

11:42AM 8    THIS FASHION, WHICH I THINK IS THE ARGUMENT THAT ARISTA IS

11:43AM 9    MAKING, RIGHT, BUT THE POINT IS AND THE EVIDENCE YOU ARE GOING

11:43AM 10   TO HEAR IS THAT ISN'T THE CASE.

11:43AM 11       THERE IS A LOT OF CHOICES, EVEN WITHIN THE CONTEXT OF

11:43AM 12   TRYING TO DEFINE THAT INDUSTRY STANDARD, FOR LACK OF A BETTER

11:43AM 13   TERM, YOU KNOW I DON'T LIKE THAT TERM VERY MUCH, BUT IT IS WHAT

11:43AM 14   IT IS.  THERE ARE WAYS TO EXPRESS THAT.

11:43AM 15       AND THAT IN AND OF ITSELF, EVEN WITH THE WORD CHOICE, THE

11:43AM 16   INDIVIDUAL WORD CHOICE, IT DOES RISE TO THE LEVEL SUFFICIENT

11:43AM 17   SOME CREATIVE SPARK, RIGHT.  THERE ARE CHOICES YOU COULD MAKE

11:43AM 18   WITHIN THE CONFINES OF THIS THAT SAY, IT DOESN'T HAVE TO BE

11:43AM 19   THAT, IT COULD BE STP, IT COULD BE THESE OTHER THINGS.  AND YOU

11:43AM 20   ARE GOING TO HEAR THAT EVIDENCE.  SO I DON'T THINK --

11:43AM 21           THE COURT:  I GUESS YOU ARE LOSING ME.

11:43AM 22       WE ARE NOT TALKING ABOUT DE FACTO INDUSTRY STANDARD, THAT'S

11:43AM 23   OFF THE TABLE.  WE ARE TALKING ABOUT ACTUAL INDUSTRY STANDARD.

11:43AM 24   AND ONCE THERE'S AN INDUSTRY STANDARD, ISN'T A COMPANY

11:44AM 25   FOOLISH -- I MEAN, IT'S ALMOST PREPOSTEROUS TO THINK A COMPANY

11:44AM  1   WOULD DISREGARD AN INDUSTRY STANDARD AND PICK SOMETHING UNIQUE

11:44AM  2   AND LEAVE ALL THEIR CUSTOMERS IN THE DARK.

11:44AM  3       BECAUSE THAT'S THE WHOLE POINT OF THESE PROGRAMS IS TO

11:44AM  4   ALLOW THE ENGINEERS TO OPERATE THE SYSTEM BASED ON WHAT THEY

11:44AM  5   ALREADY KNOW.

11:44AM  6           MR. NELSON:   OKAY.   SO A COUPLE OF THINGS TO CLARIFY

11:44AM  7   HERE.

11:44AM  8       SO YOUR UNDERSTANDING OF INDUSTRY STANDARD, WE ARE ON THE

11:44AM  9   SAME PAGE WITH RESPECT TO THAT.   BUT REMEMBER, INDUSTRY

11:44AM  10  STANDARDS, THEY ARE DEFINED FOR A PARTICULAR APPLICATION.

11:44AM  11      SO LIKE, IEEE, THEY MAY HAVE AN IEEE 802.11(A)(C), WHICH

11:44AM  12  HAPPENS TO BE A RELATIVELY RECENT WIFI STANDARD THAT WE CALL

11:44AM  13  IT.   SO THEY WILL USE TERMINOLOGY IN THAT CONTEXT.   AND YOU ARE

11:44AM  14  RIGHT THAT IN THAT PARTICULAR CONTEXT.

11:44AM  15      BUT THAT'S NOT WHAT DR. BLACK WENT THROUGH AND DID.   HE

11:44AM  16  DIDN'T FIND HERE'S AN INDUSTRY STANDARD FOR HOW YOU CONFIGURE

11:44AM  17  THESE NETWORK SWITCHES, THESE GIGABIT ETHERNET SWITCHES, WHICH

11:45AM  18  IS A WORD I HAVE TROUBLE SAYING, AND I WILL THROUGHOUT TRIAL.

11:45AM  19      SO IT'S A GOOD THING WE ARE NOT DEFINING THE USER INTERFACE

11:45AM  20  THAT WAY, RIGHT.

11:45AM  21      SO THAT IS AN IMPORTANT DISTINCTION AND AN IMPORTANT POINT

11:45AM  22  TO CLEAR UP FOR YOUR HONOR.   BECAUSE I WOULD AGREE IF WE HAD A

11:45AM  23  SITUATION IF THEY CAME IN, THEY BEING ARISTA AND DR. BLACK SAID

11:45AM  24  THERE IS AN INDUSTRY STANDARD THAT GOVERNS THIS SPECIFIC

11:45AM  25  FUNCTIONALITY, THAT MAY RESTRICT A BIT.

11:45AM 1        BUT EVEN BEYOND THAT, WHAT YOU ARE GOING TO FIND IS THAT A

11:45AM 2    LOT OF TIMES CISCO DIDN'T DO THAT, RIGHT.  THERE ARE

11:45AM 3    SITUATIONS, AND WE WILL TALK ABOUT SOME OF THOSE, WHERE THERE

11:45AM 4    WAS A WAY WITHIN THE CONTEXT OF THESE SWITCHES THAT PEOPLE USE

11:45AM 5    TERMS TO REFER TO CERTAIN THINGS AND CISCO DIDN'T GO THAT WAY,

11:45AM 6    RIGHT.

11:45AM 7        SHOW INVENTORY IS ONE YOU ARE GOING TO HEAR ABOUT.  SO SHOW

11:45AM 8    INVENTORY, YOU -- AND I THINK ABOUT THAT AND YOU THINK OKAY,

11:46AM 9    THAT'S PRETTY STRAIGHTFORWARD.  BUT I HAVE SLIDES ON THIS, BUT

11:46AM 10   I CAN JUST EXPLAIN IT BECAUSE WE'VE GOT TIME AND IF I NEED TO

11:46AM 11   COME BACK AND SHOW YOU THOSE THINGS I CAN CERTAINLY DO THAT.

11:46AM 12       BUT WHAT YOU WILL HEAR FROM THE CISCO WITNESSES ON THAT,

11:46AM 13   THAT ACTUALLY IS TOTALLY CONTRARY TO HOW THE INDUSTRY WENT,

11:46AM 14   RIGHT.  THEY ACTUALLY REFERRED TO THAT KIND OF -- THOSE

11:46AM 15   COMPONENTS WITHIN THE SWITCHES AS MODULES, RIGHT.

11:46AM 16       AND SO IF YOU WERE GOING TO DO IT, THAT'S WHAT YOU WOULD

11:46AM 17   USE.  INVENTORY IS USED FOR SOMETHING ELSE.  SO THAT

11:46AM 18   TERMINOLOGY, IT'S ACTUALLY KIND OF A SILLY THING, RIGHT.

11:46AM 19       AND IF YOU ARE TALKING ABOUT IT FROM THE STANDPOINT OF,

11:46AM 20   MAYBE SILLY IS NOT THE RIGHT WORD, I'M USING ARISTA'S WORD HOW

11:46AM 21   THEY DESCRIBE THESE THINGS, IT'S COUNTER INTUITIVE.  AND THAT

11:46AM 22   RIGHT THERE TO ME, THAT'S A CREATIVE SPARK.

11:46AM 23       THAT'S SOMETHING THAT'S UNIQUE TO CISCO.  SO THAT WHEN

11:46AM 24   CISCO WENT OUT TO TRAIN --

11:47AM 25            THE COURT:  WELL, BUT LET'S JUST BE CAREFUL HERE.

11:47AM 1   I CAN'T JUST LET ALL 500 OF THESE, I WILL CALL THEM

11:47AM 2   PHRASES, YOU CAN CALL THEM STRINGS, WHATEVER, PASS THROUGH AT

11:47AM 3   THIS TIME JURY.

11:47AM 4       YOU KNOW, I HAVE A JOB HERE, AND YOU'VE DONE PART OF IT FOR

11:47AM 5   ME BECAUSE YOU'VE TAKEN SOME THINGS OFF THE TABLE.  AND SO I

11:47AM 6   APPRECIATE THAT.

11:47AM 7       I MEAN, ON THE BASIC IDEA EXPRESSION DICHOTOMY, I THINK YOU

11:47AM 8   HAVE DONE, AS WE GOT TO THE END OF THIS I THINK YOU'VE TAKEN

11:47AM 9   MUCH OF WHAT ARISTA WAS ASKING ME TO TAKE OUT OF THE CASE,

11:47AM 10  YOU'VE TAKEN IT OUT YOURSELVES AND THAT'S GREAT.  WE GET MORE

11:47AM 11  INTO THE FUNCTIONALITY, MERGER, SCENES A FAIRE THAT WILL TAKE

11:47AM 12  OUT PERHAPS SOME OTHER THINGS, PERHAPS NOT, BUT I'M NOT DOING

11:47AM 13  THAT TODAY.

11:47AM 14      SO I'M REALLY LOOKING AT THIS, AND IF YOU ARE GOING TO GO

11:47AM 15  THROUGH, AND I ASKED YOU TO AND I APPRECIATE IT, OF EXPLAINING

11:47AM 16  EACH ONE OF THESE TO ME, WE ARE INTO A FACTUAL THING.  AND YOU

11:47AM 17  WOULD BASICALLY BE TELLING ME THAT EVERY TWO-WORD COMBINATION

11:47AM 18  HAS SOME CREATIVE SPARK THAT THE JURY OUGHT TO BE ABLE TO SEE.

11:48AM 19      SO I SHOULD FILTER OUT NOTHING, WHICH I KNOW YOU'VE ARGUED

11:48AM 20  YOU SAID YOU DID THE FILTERING AND I'M GOOD TO GO.  BUT YOU

11:48AM 21  WOULDN'T BE A GOOD ADVOCATE TO YOUR CLIENT IF YOU ACTUALLY HAD

11:48AM 22  DONE MY JOB FOR ME YOU ARE DOING YOUR CLIENT'S JOB.

11:48AM 23      MR. NELSON:  NO, I UNDERSTAND THAT, YOUR HONOR.  AND

11:48AM 24  I THINK THAT'S A FAIR POINT.

11:48AM 25      SO THERE CERTAINLY ARE GOING TO BE INSTRUCTIONS THAT YOU

11:48AM 1    DO, GUIDELINES AND SOME OF THOSE WE TALKED ABOUT AND WE WANT TO

11:48AM 2    BE CLEAR ON WHAT THOSE THINGS ARE.

11:48AM 3        SO I AGREE THAT EVEN IF WE TOOK THIS, YOU KNOW, THE

11:48AM 4    EXAMPLE, RIGHT, AND WE NEED TO BE CLEAR THAT WE DIDN'T INVENT

11:48AM 5    THIS WORK, RIGHT, SO WE ARE NOT CLAIMING COPYRIGHT PROTECTION

11:48AM 6    ON THAT, AND THAT'S ONE OF THE THINGS THAT THEY, THEY BEING

11:48AM 7    ARISTA, WAS CONCERNED ABOUT BECAUSE FROM A LAY JUROR

11:48AM 8    STANDPOINT, SOME OF THESE WORDS MAY LOOK WEIRD OR, YOU KNOW,

11:48AM 9    THEY MAY LOOK UNIQUE.

11:48AM 10       BUT THEY WANT TO BE ABLE TO SAY, WELL THEY ARE NOT REALLY

11:49AM 11   BECAUSE THEY PRE-EXISTED.  SO THEY DIDN'T INVENT THAT WORD.  I

11:49AM 12   DON'T HAVE ANY PROBLEM WITH THAT BECAUSE THAT'S NOT WHAT I'M

11:49AM 13   ARGUING AT ALL.

11:49AM 14       BUT THE, I THINK ULTIMATELY WHAT WE ARE GOING TO BE TALKING

11:49AM 15   ABOUT, AND YOU ARE RIGHT WE ARE NOT GOING TO BE GOING THROUGH,

11:49AM 16   I HAVE 22 HOURS TO PUT ON AN ENTIRE CASE, AND HOPEFULLY IT'S

11:49AM 17   SOMEWHAT INTERESTING.

11:49AM 18       IF I SPENT ALL 22 HOURS GOING THROUGH EACH COMMAND ONE BY

11:49AM 19   ONE, THAT WOULDN'T BE SO GOOD.  I'M NOT GOING TO DO THAT.  I

11:49AM 20   SUSPECT ARISTA IS NOT GOING TO DO THAT.  THERE CERTAINLY WILL

11:49AM 21   BE SOME ARGUMENT ON EXAMPLES.

11:49AM 22       I MEAN, I'M SURE THERE ARE PLENTY OF THE COMMANDS THAT THEY

11:49AM 23   WON'T EVEN, THEY WON'T EVEN ARGUE TO THE JURY.  I'M TALKING

11:49AM 24   ABOUT THE ORIGINALITY STANDPOINT.  THEY ARE NOT EVEN GOING TO

11:49AM 25   ARGUE IT.  THERE ARE SOME THAT I MAY CHOOSE NOT TO ARGUE THAT

11:49AM 1    THEY MAY USE AS EXAMPLES.  SHOW INVENTORY MIGHT BE ONE OF THEM,

11:49AM 2    RIGHT.  AND MY RESPONSE MAY BE EXACTLY WHAT I TOLD YOUR HONOR.

11:49AM 3    I AGREE THAT'S A FACTUAL QUESTION.

11:49AM 4        SO I THINK IT'S TRUE, WE ARE NOT GOING THROUGH AND CROSSING

11:50AM 5    OUT INDIVIDUAL COMMANDS ONE BY ONE.  YOU ARE PROVIDING THE

11:50AM 6    GUIDELINES, AND IT MAY BE THAT THEY CHOOSE FROM AN EVIDENTIARY

11:50AM 7    STANDPOINT THAT I WANT TO MAKE THIS ARGUMENT TO THE JURY ON

11:50AM 8    ORIGINALITY AND YOUR HONOR WILL INSTRUCT FURTHER AT THE END OF

11:50AM 9    THE CASE WHAT THOSE ARE, AND THE JURY WILL APPLY THOSE THINGS.

11:50AM 10   JUST LIKE WE DO OFTEN TIMES IN ANY CASE, THAT'S WHAT THE

11:50AM 11   INSTRUCTIONS ARE --

11:50AM 12       THE COURT:  MY ANALYTIC DISSECTION ULTIMATELY WILL BE

11:50AM 13   AT A FAIRLY HIGH LEVEL IN CATEGORIES AND DESCRIPTIONS OF THINGS

11:50AM 14   THAT ARE NOT SUBJECT TO PROTECTION, AS OPPOSED TO THE FOLLOWING

11:50AM 15   LINES ARE PROTECTABLE AND THE FOLLOWING ARE NOT.

11:50AM 16       MR. NELSON:  EXACTLY.

11:50AM 17       AND I AGREE WITH YOU THERE BECAUSE I THINK IT WOULD BE A

11:50AM 18   COMPLETELY UNWIELDY INSTRUCTION TO TRY TO DO IT DIFFERENTLY AND

11:50AM 19   IT PROBABLY WOULDN'T REALLY SERVE A PURPOSE.

11:50AM 20       SO THE -- BUT WITHIN THAT CONTEXT, TO THE EXTENT YOUR HONOR

11:51AM 21   KEEPS USING THE CLOCK SET EXAMPLE, RIGHT --

11:51AM 22       THE COURT:  I PICKED ONE OUT I UNDERSTOOD.

11:51AM 23       MR. NELSON:  WE OBVIOUSLY DO THE SAME THING.

11:51AM 24       SO THE CLOCK SET EXAMPLE, I THINK, LET ME ASK YOUR HONOR A

11:51AM 25   QUESTION IF I MAY BE SO BOLD, ARE YOU THINKING THAT FROM THE

11:51AM 1    STANDPOINT OF HEY, I WANT TO FILTER THAT ONE OUT, I DON'T WANT

11:51AM 2    YOU ARGUING THAT ONE TO THE JURY, RIGHT.  SO NOW YOU ARE 506 TO

11:51AM 3    505?  OR DO YOU WANT THE CONTEXT OF WHY, EVEN THAT, THERE IS

11:51AM 4    SOME FACTUAL QUESTION AS TO ORIGINALITY?

11:51AM 5         THE COURT:  SO I GUESS WHEN I TOOK A LOOK AT THIS, IT

11:51AM 6    WAS VERY CLEAR TO ME THAT SOME OF THE INITIAL WORDS, AND I'M

11:51AM 7    LOOKING AT WHETHER IT'S BANNER, ALTHOUGH THERE ARE ONLY A

11:51AM 8    COUPLE, OR CLEAR, OR IP OR SHOW, THEY ARE VERY STANDARD, AND IF

11:52AM 9    THERE'S ONLY ONE WORD AFTER THAT, IP HOST, ARE THERE OF THE

11:52AM 10   TWO-WORD PHRASES REALLY PROTECTABLE?

11:52AM 11   I MEAN, I KNOW ARISTA IS ASKING ME JUST ON THE NUMBER, TO

11:52AM 12   EXCLUDE THEM.  SO I PICKED CLOCK SET, AND THERE ARE OTHERS THAT

11:52AM 13   ARE GOING TO BE AS EQUALLY OR SHOW CLOCK, AS EXAMPLES, BUT THAT

11:52AM 14   WOULD -- THE SAME MIGHT APPLY TO SHOW ARP.  EVEN THOUGH I DON'T

11:52AM 15   KNOW WHAT ARP STANDS FOR.

11:52AM 16        MR. NELSON:  SO THE ANSWER TO YOUR QUESTION IS YES.

11:52AM 17   THE FIRST QUESTION IS YES.  WHICH ARE ANY OF THOSE PROTECTABLE?

11:52AM 18   AND THEY ARE.

11:52AM 19   I MEAN, CERTAINLY THERE ARE GUIDELINES THAT ARE GOING TO

11:52AM 20   GIVE AND THERE WILL BE SOME ARGUMENT ABOUT ORIGINALITY THERE.

11:53AM 21   AND FRANKLY, IT MAY TURN OUT THAT BY ME TRYING TO MAKE THAT

11:53AM 22   ARGUMENT IT'S A BAD IDEA BECAUSE THE JURY LOOKS AT IT AND SAYS,

11:53AM 23   WELL, I DON'T THINK UNDER THE JUDGE'S GUIDELINES THESE ARE, SO

11:53AM 24   THEY GET THE IMPRESSION THAT THERE'S A WHOLE BUNCH OF STUFF IN

11:53AM 25   THERE THAT WE ARE SPENDING TIME ON THAT'S NOT PROTECTABLE.

11:53AM 1      I AGREE WITH THAT.

11:53AM 2      BUT THERE ARE THE TWO-WORD COMMAND.  SO FOR EXAMPLE, YOU

11:53AM 3   TALKED ABOUT SHIP, RIGHT.  THERE ARE AND YOU WILL HEAR EVIDENCE

11:53AM 4   ON THIS, THERE ARE MANY WAYS THAT YOU COULD, AND OTHER SWITCH

11:53AM 5   MANUFACTURES DO THIS, THAT YOU COULD CALL FOR THAT

11:53AM 6   FUNCTIONALITY.

11:53AM 7      SO IN THE CISCO SYSTEM THEY DECIDED TO TRY TO USE THAT

11:53AM 8   TERMINOLOGY WHEN THEY WANTED TO INTERROGATE THE SWITCH TO GIVE

11:53AM 9   BACK CERTAIN INFORMATION, RIGHT.  MEANING, TELL ME THIS, SHOW

11:53AM 10  ME THAT, RIGHT.  THERE ARE OTHER TERMINOLOGIES THAT ARE USED,

11:53AM 11  RIGHT, THAT YOU CAN DISPLAY, THAT'S ONE THAT'S USED, I KNOW BY

11:54AM 12  OTHER SWITCH MANUFACTURERS IN THE INDUSTRY.

11:54AM 13     SO THERE ARE CHOICES THAT WENT INTO EVEN WITH THAT, RIGHT.

11:54AM 14     SO IT ISN'T JUST THE FACT THAT THAT WORD STANDING ALONE,

11:54AM 15  THAT'S NOT WHAT WE ARE TALKING ABOUT

11:54AM 16        THE COURT:  MR. NELSON, THIS ARGUMENT TELLS ME THAT

11:54AM 17  MY JOB IS DONE ON ANALYTIC DISSECTION, I WILL JUST SEND IT ALL

11:54AM 18  TO THE JURY.

11:54AM 19     THIS ISN'T HELPFUL TO ME.  YOU ARE NOT PAINTING FOR ME THE

11:54AM 20  PICTURE OF ANY ORGANIZED WAY FOR ME TO GET AT THIS, NOT AT ALL.

11:54AM 21        MR. NELSON:  WELL, ACTUALLY, I THINK --

11:54AM 22        THE COURT:  THAT'S, FRANKLY, MY ENORMOUS FRUSTRATION

11:54AM 23  ABOUT THE WAY -- THAT'S WHY I GUESS I ASKED YOU TO BRIEF IT

11:54AM 24  THREE DIFFERENT TIMES BECAUSE I STILL DON'T KNOW WHAT YOU ARE

11:54AM 25  ASKING ME TO DO EXCEPT TO TRUST YOU AND LET IT ALL GO TO THE

11:54AM 1    JURY.

11:54AM 2            MR. NELSON:  NO, THAT'S NOT WHAT I'M ASKING YOU TO

11:54AM 3    DO, RIGHT.

11:54AM 4        AND I HAVE PREPARED THIS AND I CAN GO THROUGH ALL OF THESE

11:54AM 5    THINGS IN ORDER TO SHOW YOU EXACTLY THE QUESTION YOUR HONOR IS

11:54AM 6    ASKING, RIGHT.

11:54AM 7            THE COURT:  OKAY.

11:54AM 8            MR. NELSON:  SO IF I GO BACK TO SLIDE 4, ACTUALLY I

11:55AM 9    WAS ON SLIDE FIVE, AND THERE I'VE EXPLAINED TO YOU THAT WITH

11:55AM 10   RESPECT TO THE SPANNING-TREE, THERE ARE NUMEROUS CHOICES THAT

11:55AM 11   WENT INTO THAT.

11:55AM 12       AND JUST TO BE CLEAR HERE, YOUR HONOR, I'M NOT ARGUING THIS

11:55AM 13   AT THE INDIVIDUAL WORD LEVEL, I'M SHOWING YOU THE CREATIVITY OF

11:55AM 14   THE OVER ALL CONSTRUCTION OF THE OF THE COMMAND.

11:55AM 15       IF I GO TO SLIDE 6, THE NEXT ONE, WE HAVE PORTFAST, AND

11:55AM 16   HERE'S A DESCRIPTION OF WHAT PORTFAST IS.  ENABLES PORTFAST

11:55AM 17   MODE WHETHER THE INTERFACE IS IMMEDIATELY PUT INTO THE

11:55AM 18   FORWARDING STATE UPON LINK UP WITHOUT WAITING FOR THE TIMER TO

11:55AM 19   EXPIRE.

11:55AM 20       SO IN OTHER WORDS, THAT'S THE FUNCTIONALITY THAT'S BEING

11:55AM 21   DESCRIBED THAT YOU ARE TRYING TO IMPLEMENT.

11:55AM 22       NOW PORTFAST HAPPENS TO BE A WORD THAT CISCO MADE UP.  BUT,

11:55AM 23   YOU KNOW, THERE ARE, YOU CAN SEE FROM THAT FUNCTIONALITY WHEN

11:55AM 24   YOU DESCRIBE IT, THERE ARE A NUMBER OF OTHER CHOICES THAT COULD

11:55AM 25   HAVE BEEN MADE.  AND WE PICKED SIX HERE THAT KIND OF COME FROM

11:55AM 1    THIS DEFINITION, THAT WOULD INDICATE TO ONE OF THESE NETWORK

11:56AM 2    ENGINEERS, HEY, THAT'S THE FUNCTIONALITY YOU HAVE.

11:56AM 3         AND IF I KEEP GOING FORWARD, I DON'T NEED TO MAKE THE POINT

11:56AM 4    TO SHOW YOU, WITH THE BPDU FILTER, THERE'S ANOTHER COMMAND THAT

11:56AM 5    BRANCHES OFF OF PORTFAST THAT'S BPDU GUARD THAT'S THE SAME

11:56AM 6    THING.  BASED UPON THE DEFINITION, AGAIN, THIS IS ANOTHER WORD

11:56AM 7    THAT CISCO MADE UP, BUT BASED UPON THAT DEFINITION, YOU CAN

11:56AM 8    HAVE A NUMBER OF TERMS THAT WOULD INDICATE TO SOMEONE, AGAIN

11:56AM 9    AFTER TRAINING BECAUSE CISCO SPENT A LOT OF MONEY TRAINING

11:56AM 10   THESE ENGINEERS IN THE CISCO SYSTEM, HOW TO WORK WITH THESE

11:56AM 11   THINGS, AGAIN, A NUMBER OF CHOICES THAT GO INTO THAT.

11:56AM 12        AND THE SAME WITH DEFAULT, RIGHT, BECAUSE IF WE LOOK AT

11:56AM 13   WHAT DEFAULT DOES IN THIS PARTICULAR PORTFAST MODE, IT GLOBALLY

11:56AM 14   ENABLES GLOBALLY BDU FILTERING PORTS THAT ARE IN PORTFAST MODE.

11:57AM 15        SO YOU CAN SEE GLOBAL ENABLE ON, ACTIVE, ENABLED,

11:57AM 16   OPERATIONAL, WORKING.  AGAIN, OTHER CHOICES THAT WOULD DESCRIBE

11:57AM 17   THAT FUNCTIONALITY.  SO WITH THAT PARTICULAR FOUR-LETTER

11:57AM 18   COMMAND, JUST BY VIRTUE OF WHAT I SHOWED YOU, THESE CHOICES ARE

11:57AM 19   THERE, IF WE GO TO THE NEXT SLIDE, AND I'M NOT GOING TO GO

11:57AM 20   THROUGH ALL OF THESE, YOU COME UP WITH ALMOST 1300 DIFFERENT

11:57AM 21   COMBINATIONS THAT YOU CAN HAVE HERE.  AND THAT'S JUST WITH

11:57AM 22   RESPECT TO THE DIFFERENT SELECTION OF WORDS.

11:57AM 23             THE COURT:  BUT ARE YOU TELLING ME THAT THE AUTHOR

11:57AM 24   ACTUALLY CONSIDERED THESE DIFFERENT POSSIBILITIES, OR NOW IN

11:57AM 25   2016, AS YOU GET READY FOR TRIAL, YOUR CURRENT EXPERTS ARE

11:57AM 1    SAYING THESE OTHERS COULD HAVE BEEN THOUGHT OF?

11:57AM 2            MR. NELSON:  I'M DOING THIS FROM THE CDN PERSPECTIVE,

11:57AM 3    YOUR HONOR.  THE TESTIMONY WILL BE THAT THIS IS EXACTLY THE

11:57AM 4    TYPE OF PROCESS THAT THE AUTHORS WENT THROUGH.

11:58AM 5            THE COURT:  ALL RIGHT.

11:58AM 6            MR. NELSON:  AND THAT THE PARSER POLICE THAT SET OUT

11:58AM 7    GUIDELINES, YOU MIGHT HAVE HEARD THAT TERM A FEW TIMES, FOR

11:58AM 8    THESE THINGS OFFERED UP.

11:58AM 9        SO THIS IS THE EXACT PROCESS.  I'M NOT GOING TO GET INTO,

11:58AM 10   WITH THE EXCEPTION OF A FEW EXAMPLES, TO BRING THAT HOME.

11:58AM 11           THE COURT:  AND THIS IS A GOOD TEXTBOOK EXAMPLE, I

11:58AM 12   THINK, AND I DO APPRECIATE YOU SELECTING THIS, OF TWO WORDS

11:58AM 13   THAT CISCO ACTUALLY CREATED AND GAVE MEANING TO.

11:58AM 14           MR. NELSON:  RIGHT.

11:58AM 15           THE COURT:  AND IN THE CONTEXT OF FOUR TOTAL WITH TWO

11:58AM 16   KNOWN, TO STRING TOGETHER THIS CONCEPT.

11:58AM 17       I MEAN, I CAN SEE -- THIS IS A GOOD EXAMPLE OF SOMETHING

11:58AM 18   THAT SHOULD BE PROTECTED IN THE CREATIVE SPARK OF MAKING THIS

11:58AM 19   COMBINATION.

11:58AM 20           MR. NELSON:  RIGHT.  I THINK THERE'S NO QUESTION

11:58AM 21   ABOUT THAT.

11:58AM 22           THE COURT:  AND THAT DOESN'T EVEN SUGGEST WHETHER

11:58AM 23   MERGER OR SCENES A FAIRE IS GOING TO APPLY BECAUSE THAT'S

11:58AM 24   LATER.

11:58AM 25           MR. NELSON:  AGREED.  AGREED.  THAT'S NOT WHAT WE ARE

11:58AM 1    DOING HERE AT THIS PHASE OF THE GAME.

11:58AM 2        BUT USE THAT AS AN ILLUSTRATION TO SHOW THAT THERE ARE,

11:59AM 3    EVEN ONE OF THE AREAS OF CREATIVITY IS THAT THEY SAT DOWN TO

11:59AM 4    DO, AND YOU WILL HEAR THE EVIDENCE ON THIS, IS WHAT WORDS AM I

11:59AM 5    GOING TO CHOOSE TO DESCRIBE THIS FUNCTIONALITY, RIGHT.

11:59AM 6        ANOTHER THING THAT THEY DID, AND I'M WATCHING THE CLOCK --

11:59AM 7            THE COURT:  OH, WE CAN GO A COUPLE OF MINUTES.

11:59AM 8            MR. NELSON:  AND I'M GOING TO PICK UP, I REALLY WANT

11:59AM 9    TO LAUNCH FROM HERE TO THE HIERARCHIES IN A SECOND, SO I WILL

11:59AM 10   GO A COUPLE MORE MINUTES, THEN WE WILL CUT OFF THERE AND WE

11:59AM 11   WILL PICK UP THERE AFTER LUNCH, IF THAT'S OKAY WITH YOUR HONOR.

11:59AM 12           THE COURT:  ABSOLUTELY.

11:59AM 13           MR. NELSON:  BECAUSE I KNOW THE HIERARCHIES IS

11:59AM 14   SOMETHING YOU CONCERNED ABOUT, AND PERHAPS I CAN EXPLAIN THOSE

11:59AM 15   A LITTLE BETTER.

11:59AM 16           THE COURT:  SO YOU HAVE GIVEN ME THE EXAMPLE WITH

11:59AM 17   THIS ONE PHRASE, AND I GUESS I'M GOING TO REALLY NEED YOU TO BE

11:59AM 18   ABLE TO PERSUADE ME IN ONE OF THE TWO OR THREE-WORD PHRASES,

11:59AM 19   BECAUSE WHAT ARISTA HAS ARGUED IS THAT MAKES UP THE VAST

11:59AM 20   MAJORITY OF THE MULTIWORD COMMAND LINES.

11:59AM 21           MR. NELSON:  YEAH, FOR SURE.  I HAVE THOSE IN THE

12:00PM 22   PRESENTATION.

12:00PM 23       AND IN FACT, I DID THE SET CLOCK ONE WHICH I CAN DO WHEN WE

12:00PM 24   COME BACK YOUR HONOR, AND THE SHOW INVENTORY AS WELL, BECAUSE

12:00PM 25   THOSE ARE TWO, I THINK, AT A GESTALT LEVEL --

12:00PM   1        THE COURT:  I WOULD LIKE TO SEE HOW IT PLAYS OUT.

12:00PM   2        MR. NELSON:  EXACTLY.

12:00PM   3    WHETHER THERE REALLY IS SOME FACTUAL ISSUE THERE TO BE

12:00PM   4    DECIDED OR YOU THINK THAT THOSE ARE THINGS THAT YOU SHOULD JUST

12:00PM   5    FILTER OUT AT THIS STAGE.  I UNDERSTAND.  SO I CAN ADDRESS

12:00PM   6    THOSE DIRECTLY.

12:00PM   7    BUT ONE OF THE THINGS THAT I WANT TO LEAVE YOUR HONOR WITH

12:00PM   8    OR THE THING THAT I WANT TO LEAVE, BECAUSE I KNOW IT'S TIME

12:00PM   9    NOW, IT ISN'T JUST THE SELECTION OF THE WORDS, WHICH IS THE

12:00PM  10    PART THAT I WENT THROUGH THAT'S IMPORTANT, IT'S ACTUALLY THE

12:00PM  11    ORDER OF THE WORDS IS VERY IMPORTANT.  HOW YOU DECIDE TO DO

12:00PM  12    THAT.

12:00PM  13    AND I CAN EXPLAIN TO YOU HOW I UNDERSTAND IT AND MAYBE IT

12:00PM  14    WILL HELP YOU.  WHEN YOU ARE TRAINING UP AN ENGINEER IN THESE

12:00PM  15    THINGS, THERE'S A LOT OF THINGS TO REMEMBER A NUMBER OF

12:01PM  16    DIFFERENT COMMANDS AND WHAT THE FUNCTIONALITIES ARE AND THE

12:01PM  17    INFORMATION THEY ARE TRYING TO GET OUT.  THERE'S ALSO THE IDEA

12:01PM  18    THAT YOU ADD FUNCTIONS DOWN THE ROAD.  YOU KNOW, YOU DON'T WANT

12:01PM  19    TO CREATE A STATIC THING, A STATIC USER INTERFACE THAT YOU

12:01PM  20    CAN'T REALLY ADD TO VERY EASILY, BECAUSE THEN IT'S HARD FOR

12:01PM  21    PEOPLE TO LEARN AND HARD TO USE.

12:01PM  22    SO ONE OF THE CHOICES THAT YOU MAKE IS HOW AM I GOING TO

12:01PM  23    ORDER THESE KINDS OF WORDS, BECAUSE IF WE JUST GO BACK TO THIS

12:01PM  24    SPANNING-TREE EXAMPLE.

12:01PM  25    NOW YOU PICK SPANNING-TREE BECAUSE THE PREDOMINANT THING

12:01PM  1    WHEN YOU ARE PERFORMING THESE TYPE OF FUNCTIONS IS WHAT KIND OF

12:01PM  2    DATA STRUCTURE YOU WANT TO OFFER.

12:01PM  3        SO THE ENGINEER WHEN THEY ARE SITTING THERE, THEY ARE LIKE,

12:01PM  4    OKAY, I KNOW WE ARE WORKING WITH SPANNING TREES, SO THAT'S WHAT

12:01PM  5    COMES TO MIND.  SO YOU WANT TO ORGANIZE THESE COMMANDS, MEANING

12:01PM  6    WHEN I'M OPERATING ON THESE DATA STRUCTURES, IT'S IMPORTANT FOR

12:01PM  7    ME TO CHOOSE THAT AS THE FIRST WORD AND NOT SOME OTHER.

12:02PM  8        SO IF I JUST STICK WITH THE SAME, AND I HAVE IT UP HERE,

12:02PM  9    LIKE PORTFAST.  WE TALKED ABOUT WHAT PORTFAST WAS, THAT WAS A

12:02PM  10   PARTICULAR MODE OF OPERATION.

12:02PM  11       NOW IT COULD BE WHEN YOU GO THROUGH THIS YOU SAY THAT'S THE

12:02PM  12   PREDOMINANT THING, WHEN I'M IN PORTFAST MODE WHAT KIND OF

12:02PM  13   THINGS DO I WANT TO DO.

12:02PM  14       SO THE ENGINEER MAY SAY, THAT'S WHAT PEOPLE ARE REALLY

12:02PM  15   GOING TO THINK ABOUT AND WHEN THEY ARE UNDER PRESSURE, THAT'S

12:02PM  16   GOING TO BE WHAT'S COMING TO MIND.  SO I WANT TO ORGANIZE ALL

12:02PM  17   THE THINGS I CAN DO IN PORTFAST MODE UNDER THAT WE CALL THEM

12:02PM  18   HIERARCHIES, BUT THAT BECOMES IMPORTANT.

12:02PM  19       SO I KNOW IT SOUNDS TRIVIAL WHEN YOU SAY THE ORDERS OF THE

12:02PM  20   WORDS IS IMPORTANT, SOMETIMES YOU SAY OKAY, YOU GOT --

12:02PM  21             THE COURT:  THAT'S DIFFERENT THAN SYNTAX.

12:02PM  22             MR. NELSON:  ACTUALLY, THAT'S A GOOD QUESTION.

12:02PM  23             THE COURT:  BECAUSE YOU HAVE DISCLAIMED ANY

12:02PM  24   PROTECTABILITY OF SYNTAX ITSELF.

12:02PM  25             MR. NELSON:  WELL, THOSE ARE TWO DIFFERENT THINGS.

12:02PM  1      SO WHEN THEY ARE TALKING ABOUT SYNTAX, THEY ARE TALKING

12:02PM  2   ABOUT IN THAT CONTEXT, TALKING ABOUT THE SPECIFIC PARAMETERS

12:03PM  3   THAT MAY BE PUT IN.  SO NOBODY IS CLAIMING THAT.

12:03PM  4      BUT CERTAINLY THE COMMANDS THEMSELVES --

12:03PM  5           THE COURT:  THE WORD ORDER IS DIFFERENT THAN -- I

12:03PM  6   JUST WANT TO MAKE SURE YOU ARE TELLING ME THAT.

12:03PM  7           MR. NELSON:  BECAUSE WE DON'T WANT TO GET IT CONFUSED

12:03PM  8   WITH THAT TYPE OF SYNTAX BECAUSE YOU ARE RIGHT, NOBODY IS

12:03PM  9   CLAIMING THAT IN TERMS OF THE SPECIFIC PARAMETERS THAT ARE PUT

12:03PM 10   ON AND WHICH ONES AGREE, YOUR HONOR.

12:03PM 11      BUT THIS ORDERING THAT I'M TALKING ABOUT AS WELL AS THE

12:03PM 12   HIERARCHIES WE CLAIM FROM A COMPUTER PROGRAMMING STANDPOINT

12:03PM 13   WOULD TYPICALLY BE REFERRED TO AS SYNTAX.  BUT I WOULD RATHER

12:03PM 14   USE A DIFFERENT TERM SO WE DON'T GET CONFUSED.

12:03PM 15           THE COURT:  OKAY.

12:03PM 16           MR. NELSON:  AND IN FACT, YOU KNOW, IT'S KIND OF LIKE

12:03PM 17   ENGLISH GRAMMAR, THE STRUCTURE OF HOW YOU DECIDE TO DO IT,

12:03PM 18   THAT'S SYNTAX AS WELL.

12:03PM 19           THE COURT:  YES.

12:03PM 20           MR. NELSON:  BUT WE TRY TO MAYBE USE DIFFERENT TERMS.

12:03PM 21      SO I KNOW WE ARE GETTING LATE AND I CAN GO OR I CAN PICK UP

12:03PM 22   WITH THE HIERARCHIES BECAUSE THAT REALLY DOES LAUNCH --

12:04PM 23           THE COURT:  THAT'S FINE, WE CAN GO ON TO HIERARCHIES

12:04PM 24   BUT THEN YOU ARE GOING TO GO BACK TO THE MULTIWORD THAT ARE

12:04PM 25   TWO-WORD.

12:04PM 1          MR. NELSON:  I WILL DO THAT AFTER THE LUNCH BREAK

12:04PM 2    BECAUSE THAT WILL TAKE A LITTLE BIT LONGER.

12:04PM 3          THE COURT:  THAT'S FINE.

12:04PM 4        ALL RIGHT.  AND I GUESS WE HAVE TO KEEP AN EYE ON OUR TIME

12:04PM 5    BECAUSE WE HAVE TO HAVE TOMORROW FOR JURY INSTRUCTIONS.

12:04PM 6          MR. NELSON:  UNDERSTOOD, YOUR HONOR.

12:04PM 7          THE COURT:  AND SO YOU NEED TO REALLY CONFINE THIS SO

12:04PM 8    THAT I HAVE ENOUGH TIME TO GET THROUGH ALL THE ARGUMENTS ON IT.

12:04PM 9          MR. NELSON:  YEAH, NO, AGREED.

12:04PM 10       I UNDERSTAND AND THAT'S -- I APPRECIATE THE FEED BACK

12:04PM 11   BECAUSE I AM TRYING TO BE HELPFUL TO YOUR HONOR.  SO DON'T

12:04PM 12   WORRY, IF I'M NOT, JUST TELL ME.

12:04PM 13         THE COURT:  OKAY.  MR. VAN NEST.

12:04PM 14         MR. VAN NEST:  YOUR HONOR, IF WE ARE ABOUT TO BREAK,

12:04PM 15   I JUST WANTED TO, IN LIGHT OF YOUR COMMENTS TO MR. SILBERT, TO

12:04PM 16   APOLOGIZE, I'M THE ONE THAT SAID FILE THE FULL SET, BECAUSE I

12:04PM 17   THOUGHT THAT WAS REQUIRED.  SO I WILL TAKE THE HEAT THERE.

12:04PM 18       BUT WHAT I WOULD SUGGEST IS REALLY IN TERMS OF THIS ISSUE

12:04PM 19   WHERE WE ARE TALKING ABOUT WHETHER THE JURY SHOULD GET A HIGHER

12:05PM 20   LEVEL INSTRUCTION UP FRONT, WE DID PREPARE AND I'M PREPARED TO

12:05PM 21   HAND IT UP, NUMBER 12 THAT WE MODIFIED.

12:05PM 22       YOU TOLD US FRIDAY YOU WANT TO GIVE AN INSTRUCTION AND THE

12:05PM 23   JURY SHOULD BE TOLD SOME THINGS STANDING ALONE ARE JUST NOT

12:05PM 24   PROTECTABLE, BUT YOU THOUGHT OURS WAS DETAILED.  WE TOOK IT OUT

12:05PM 25   OF THE BRIEFING, AS YOU KNOW, BUT WE PREPARED A MORE HIGH-LEVEL

12:05PM  1    VERSION, AND I'M PREPARED TO HAND IT UP --

12:05PM  2              THE COURT:  IS IT DISPUTED?

12:05PM  3              MR. VAN NEST:  IT'S STILL DISPUTED.

12:05PM  4              MR. PAK:  IT IS, YOUR HONOR.

12:05PM  5         WE DO HAVE A SLIGHTLY DIFFERENT VERSION OF THIS THAT WE

12:05PM  6    WILL HAVE PRINTED OUT SEPARATELY.

12:05PM  7              THE COURT:  AND THEN WE WILL LOOK AT THIS TOMORROW

12:05PM  8    THEN.

12:05PM  9              MR. PAK:  YES, YOUR HONOR.

12:05PM 10              MR. VAN NEST:  BUT I DO THINK IN TERMS OF HOW MUCH

12:05PM 11    YOU HAVE TO HEAR IN THIS AFTERNOON, THIS WILL GUIDE YOU BECAUSE

12:05PM 12    IT'S NOT AS THOUGH -- WE HAVE A FIGHT ABOUT HIERARCHIES AND

12:05PM 13    MODES, THAT'S TRUE.  BUT AGAIN, AS MR. SILBERT SAID, WE ARE NOT

12:05PM 14    ASKING YOU TO GO WORD-BY-WORD OR COMMAND-BY-COMMAND AND GO

12:05PM 15    THROUGH ALL 500.  WE ARE WANTING SOMETHING MORE GENERAL.

12:05PM 16              THE COURT:  OKAY.  THANK YOU.

12:06PM 17         AND WE ARE GOING TO BREAK.  THERE IS A PRELIMINARY

12:06PM 18    INSTRUCTION THAT IS ACTUALLY NUMBER 95.

12:06PM 19              MR. VAN NEST:  RIGHT.

12:06PM 20              THE COURT:  SO OF COURSE I GOT TO THAT LATE

12:06PM 21    YESTERDAY, SO I WASN'T IN THE BEST MOOD.  HOWEVER, THE CONCEPT

12:06PM 22    IS VERY GOOD, I WILL ONLY GIVE THE INSTRUCTION IF YOU GIVE ME A

12:06PM 23    STIPULATED VERSION OF IT.

12:06PM 24         AND IT'S JUST, THE DISPARITY BETWEEN THE TWO VERSIONS IS

12:06PM 25    SUCH THAT I'M NOT PREPARED TO HAGGLE WITH YOU ON IT, BUT IT'S A

12:06PM 1    PRELIMINARY INSTRUCTION.  SO I WANTED TO LET YOU KNOW THAT.

12:06PM 2        THOSE ON YOUR TEAMS WHO ARE WORKING ON THE INSTRUCTIONS,

12:06PM 3    THAT'S, IT'S EITHER IN AS AN AGREED UPON INSTRUCTION OR I'M NOT

12:06PM 4    GIVING IT.

12:06PM 5            MR. VAN NEST:  AT ALL?

12:06PM 6            THE COURT:  AS A PRELIMINARY.  I'M NOT GIVING IT AS A

12:06PM 7    PRELIMINARY INSTRUCTION.

12:06PM 8            MR. VAN NEST:  WE HAVE TO AGREE ON IT, BOTH OF US, TO

12:06PM 9    GET IT?

12:06PM 10           THE COURT:  THAT'S RIGHT.  BECAUSE THE PRESSURE IS ON

12:06PM 11   THE PRELIMINARY INSTRUCTIONS AND WE STILL HAVE TIME TO WORK ON

12:06PM 12   THE OTHERS.

12:06PM 13           MR. PAK:  WE WILL MAKE THAT HAPPEN.

12:06PM 14           MR. VAN NEST:  BY THE WAY, I THINK ALL THE

12:06PM 15   PRELIMINARIES ARE AGREED EXCEPT THIS 1 AND 95.  THOSE ARE THE

12:06PM 16   ONLY TWO PRELIMINARY INSTRUCTIONS THAT ARE DISPUTED.

12:07PM 17           THE COURT:  THAT'S GREAT.  AND THAT'S WHAT WE WILL

12:07PM 18   WORK ON THAT FIRST THING TOMORROW MORNING, BUT NOW I DON'T HAVE

12:07PM 19   TO WORK ON 95 OR 12.

12:07PM 20       ALL RIGHT.  LET'S COME BACK AT TEN PAST 1.

12:07PM 21           MR. NELSON:  THANK YOU, YOUR HONOR.

12:07PM 22       (WHEREUPON A RECESS WAS TAKEN.)

01:13PM 23       THE COURT:  PLEASE BE SEATED.  GOOD AFTERNOON, EVERYONE.

01:13PM 24       OKAY.  MR. NELSON, LET'S, IF WE CAN, PICK UP WHERE YOU LEFT

01:13PM 25   OFF.

01:13PM  1          MR. NELSON:  OKAY.

01:13PM  2          THE COURT:  CAN I ASK YOU ONE QUESTION BEFORE YOU

01:14PM  3  START?

01:14PM  4          MR. NELSON:  ABSOLUTELY.

01:14PM  5          THE COURT:  WOULD IT BE WRONG FOR ME TO CONSIDER EACH

01:14PM  6  OF THESE MULTIWORD COMMAND LINES LIKE A COMPILATION?

01:14PM  7          MR. NELSON:  THAT'S AN INTERESTING QUESTION.

01:14PM  8      I HADN'T REALLY THOUGHT ABOUT IT THAT WAY, AND MAYBE IT'S

01:14PM  9  BECAUSE I DON'T FULLY UNDERSTAND WHAT THEY MEAN EXACTLY BY

01:14PM 10  COMPILATION IN A COPYRIGHT LAW.

01:14PM 11          THE COURT:  YEAH, I DON'T EITHER.  SO YOU MAKE ME

01:14PM 12  FEEL BETTER BY SAYING THAT.

01:14PM 13          MR. NELSON:  I MEAN, I THINK YOU CAN IN A WAY, AND

01:14PM 14  MAYBE, MAYBE YOU ARE LED TO THAT QUESTION BY KIND OF THE WAY I

01:14PM 15  EXPLAINED IT, BECAUSE YOU ARE PUTTING THESE THINGS TOGETHER

01:14PM 16  WITH A FEW THINGS IN MIND, RIGHT.

01:14PM 17      YOU ARE TRYING TO DO SOMETHING THAT'S ONE, CONSISTENT WITH

01:14PM 18  WHAT YOU'VE DONE BEFORE, BECAUSE REMEMBER YOU ARE TEACHING

01:14PM 19  THESE PEOPLE, THE ENGINEERS AND THINGS HOW TO DO THAT, SO IF

01:14PM 20  YOU COME UP WITH SOMETHING THAT'S TOTALLY OFF THE WALL, THEY

01:14PM 21  ARE PROBABLY NOT GOING TO LIKE THAT TOO MUCH, IT'S NOT GOING TO

01:14PM 22  WORK TOO WELL.  SO WE GET THAT.

01:14PM 23      THEN YOU WANT SOMETHING THAT MAKES SOME SENSE IN TERMS OF

01:14PM 24  WHAT IT IS YOU ARE TRYING TO DO, WHAT YOU ARE TRYING TO OPERATE

01:15PM 25  ON, AND THOSE KINDS OF THINGS.  AND YOU ARE ALSO TRYING TO

01:15PM  1    ORDER THESE THINGS IN AN INTUITIVELY ACCESSIBLE, MAYBE IS THE

01:15PM  2    WORD I'M LOOKING AT, WAY, RIGHT.

01:15PM  3         SO WHEN YOU TAKE THOSE THINGS TOGETHER, I THINK YOU COULD

01:15PM  4    THINK OF THOSE THINGS AS A COMPILATION OF THOSE THINGS, BUT I'M

01:15PM  5    NOT A HUNDRED PERCENT SURE THAT THAT'S WHAT THEY MEAN.  HERE'S

01:15PM  6    WHY I THINK IT MIGHT BE A LITTLE BIT DIFFERENT, YOUR HONOR.

01:15PM  7         MY UNDERSTANDING, THE BEST WAY I CAN UNDERSTAND THIS

01:15PM  8    COMPILATION THING IS YOU'VE GOT A WHOLE BUNCH OF FACTS OUT

01:15PM  9    THERE, RIGHT, THINGS THAT EXIST OUT IN THE WORLD, AND WHAT YOU

01:15PM  10   ARE TRYING TO DO IS MAKE A SELECTION OF THOSE THAT'S A CREATIVE

01:15PM  11   SELECTION OF HERE'S HOW I CHOOSE TO PRESENT THESE THINGS.

01:15PM  12        SO IN SOME WAYS YOU COULD DO THAT.  LIKE, LET'S SAY, IT'S

01:15PM  13   NOT TRUE BECAUSE I'VE ALREADY SHOWN YOU THAT, BUT LET'S JUST

01:15PM  14   SAY THAT EVERYTHING WE CHOSE WAS INDUSTRY STANDARD

01:16PM  15        THE COURT:  WELL, THERE ARE CERTAINLY PHRASES THAT

01:16PM  16   HAVE WORDS THAT WERE INDUSTRY STANDARD.

01:16PM  17        MR. NELSON:  ABSOLUTELY.

01:16PM  18        THE COURT:  THE ONE YOU SHOWED ME WAS NOT ONE OF

01:16PM  19   THEM.

01:16PM  20        MR. NELSON:  NO QUESTION ABOUT THAT, RIGHT.

01:16PM  21        BUT WHAT YOU SELECT AND HOW YOU ORDER THOSE THINGS

01:16PM  22   CERTAINLY CAN BE VIEWED AS A COMPILATION OF THOSE THINGS.  I

01:16PM  23   THINK THERE'S NO QUESTION ABOUT THAT.

01:16PM  24        SO WHETHER YOU VIEW IT IN THE CREATIVITY OF THE SELECTION

01:16PM  25   AND THE ORDERING AND THE HIERARCHY, THAT STRUCTURE OR WHETHER

01:16PM 1    YOU VIEW IT AS SOME CREATIVITY IN THE SELECTION OF THOSE

01:16PM 2    THINGS, I THINK YOU CAN LOOK AT THOSE THINGS BOTH WAYS.

01:16PM 3            THE COURT:  WELL, BECAUSE I THINK YOU ARE ONLY

01:16PM 4    CLAIMING COPYRIGHT PROTECTION FOR THAT SELECTION AND

01:16PM 5    ARRANGEMENT.

01:16PM 6            MR. NELSON:  RIGHT.

01:16PM 7            THE COURT:  AND SO MAYBE IT'S NOT A -- IT MAY BE THAT

01:16PM 8    YOUR ENTIRE BUILDING BLOCK OF MULTIWORD COMMANDS, WHICH IS

01:16PM 9    BIGGER THAN THE 508, IS A COMPILATION.  AND I DON'T THINK THAT

01:16PM 10   ARISTA IS EVEN ARGUING THAT AT THIS HIGH LEVEL, THAT THERE MAY

01:17PM 11   BE PROTECTABLITY AT THAT HIGH LEVEL.

01:17PM 12     I GUESS WHAT I'M REALLY GETTING AT, AND MAYBE I'M JUMPING

01:17PM 13   THE GUN ON IT BUT, I'M LOOKING AT THE OPS CASE, AND OF COURSE

01:17PM 14   THEY TALK ABOUT THE USER INTERFACE IN THAT CASE.

01:17PM 15           MR. NELSON:  RIGHT.

01:17PM 16           THE COURT:  AND THEY TALK ABOUT THE COMPILATIONS AND

01:17PM 17   OF COURSE IT GETS TO THE ISSUE OF PROTECTABLITY AND THE SCOPE

01:17PM 18   OF PROTECTION.

01:17PM 19     AND I FEEL LIKE WE ARE MARCHING DOWN THAT ROAD THAT WE GET

01:17PM 20   THROUGH ANALYTIC DISSECTION AND WE GO RIGHT TO SCOPE BECAUSE I

01:17PM 21   DO THINK THEY BUILD, BUT THAT'S REALLY WHAT MOTIVATES MY

01:17PM 22   QUESTION IS THE IS LOOKING AT OPS.

01:17PM 23           MR. NELSON:  OKAY.  AND IT'S PROBABLY SOMETHING I

01:17PM 24   SHOULD ADDRESS DIRECTLY RATHER THAN TRY TO GO ON MEMORY FROM

01:17PM 25   THAT.

01:17PM  1          THE COURT:  OKAY.  SURE.  LET'S GO BACK TO YOUR

01:17PM  2  PRESENTATION.

01:17PM  3          MR. NELSON:  OKAY.  SO THEN IF I PICK UP WITH SLIDE

01:17PM  4  20, KIND OF WHERE I LEFT OFF, I WAS TALKING ABOUT THE ORDERING

01:18PM  5  AND LEADING INTO HIERARCHIES, BECAUSE I DON'T WANT YOU TO THINK

01:18PM  6  THAT HERE'S MR. NELSON JUST SITTING UP HERE AND SAYING OH, LOOK

01:18PM  7  AT ALL THESE PERMUTATIONS I CAN MAKE.  THAT'S NOT THE PURPOSE

01:18PM  8  OF WHY I'M DOING THIS.  IT ACTUALLY DOES MATTER IN THIS CONTEXT

01:18PM  9  AND IT MATTERS QUITE A BIT.

01:18PM  10      SO IF YOU LOOK AT THAT WITH JUST WITH THE EXAMPLE I GAVE,

01:18PM  11  YOU GOT FOUR WORDS, 24 DIFFERENT COMBINATIONS, THAT'S THAT MATH

01:18PM  12  THING I LEARNED WHERE YOU GO 4 TIMES 3 TIMES 2 TIMES 1, AND IT

01:18PM  13  TELLS YOU TO GET 24.

01:18PM  14      SO TAKING THE TWO EXAMPLES THAT I GAVE TOGETHER WERE THE

01:18PM  15  DIFFERENT -- EVEN WITH KNOW THE DIFFERENT INDUSTRY STANDARD

01:18PM  16  CONTEXT, LOOKING AT THE FUNCTIONALITY, THERE'S SIX DIFFERENT

01:18PM  17  COMBINATIONS, YOU HAVE 31,000 AND BETTER COMBINATIONS OF THESE

01:18PM  18  THINGS.

01:18PM  19      NOW THAT'S NOT JUST TO THE GIVE YOU A BIG NUMBER AND SHOW

01:18PM  20  YOU, BUT THAT WAS THE PROCESS THAT PEOPLE WENT THROUGH.  I'M

01:18PM  21  NOT SAYING THAT THEY NECESSARILY WERE GOING TO HAVE SOMEBODY

01:18PM  22  TESTIFY AND SAY I LOOKED AT THIS WORD AND I LOOKED AT THAT WORD

01:19PM  23  AND I LOOKED AT THIS WORD, BECAUSE WE COULDN'T.  BREAKING DOWN

01:19PM  24  TO THE INDIVIDUAL COMMAND LEVEL WOULD MAKE THIS TRIAL

01:19PM  25  COMPLETELY UNWIELDY, NEITHER ONE OF US WOULD WANT TO BE IN THAT

01:19PM  1    TRIAL, RIGHT.  BUT THAT PROCESS IS IMPORTANT.

01:19PM  2        AND THAT'S WHY I KEEP GOING BACK TO THE CDN CASE, BECAUSE

01:19PM  3    IT IS, AND THAT'S WHAT THAT CASE TEACHES US IS I CAN LOOK AT

01:19PM  4    THIS PROCESS AND I CAN HAVE TESTIMONY AS THE PROCESS THAT WAS

01:19PM  5    DONE AND WHAT THE VARIOUS FACTORS THAT WENT INTO IT TO SHOW

01:19PM  6    THAT THERE WAS THAT MINIMUM CREATIVE SPARK FOR ORIGINALITY.

01:19PM  7    AND THAT'S ENOUGH, I DON'T NEED TO GO THROUGH EACH OF THE

01:19PM  8    INDIVIDUAL, IN THAT CASE COIN PRICES, AND SAY YES, THIS

01:19PM  9    PARTICULAR ONE IS CREATIVE, THIS ONE IS NOT.

01:19PM  10       SO THAT'S THE REASON FOR GOING THROUGH THIS.

01:19PM  11           THE COURT:  OKAY.

01:19PM  12           MR. NELSON:  NOW IF I MOVE FORWARD THEN, AND THIS

01:19PM  13   LEADS RIGHT INTO THE HIERARCHIES, AND I TALKED ABOUT THIS A BIT

01:19PM  14   BEFORE LUNCH, BUT LET ME EXPAND ON IT A BIT.

01:19PM  15       AND THE WAY THESE -- THE WAY WE ILLUSTRATED THE HIERARCHIES

01:19PM  16   WAS WITHIN THE CONTEXT OF WE USED A TEXTUAL REPRESENTATION

01:20PM  17   WITHIN THE CONTEXT OF THE ASSERTED COMMANDS BECAUSE WE DIDN'T

01:20PM  18   WANT TO GET INTO LIKE A FIGHT THAT WE ARE ASSERTING MORE

01:20PM  19   COMMANDS, RIGHT.

01:20PM  20       SO I DON'T WANT TO IMPLY THAT THE HIERARCHIES THAT WE'RE

01:20PM  21   TALKING ABOUT ARE LIMITED TO THE SPECIFIC COMMANDS, BUT THAT'S

01:20PM  22   THE WAY THEY ILLUSTRATE THEM TEXTUALLY WITHOUT GETTING INTO A

01:20PM  23   HEY, WAIT A MINUTE, NOW, CISCO, YOU'RE ADDING 252 COMMANDS

01:20PM  24   BECAUSE OF THE WAY YOU DESCRIBED THESE HIERARCHIES.

01:20PM  25       BUT YOU CAN ALSO EXPRESS THEM IN THIS KIND OF TREE

01:20PM 1    STRUCTURE WHERE YOU KNOW, YOU HAVE THE PARENT, AND THEN YOU

01:20PM 2    MIGHT HAVE THE CHILD BRANCHES AND YOU CAN HAVE GRAND CHILD

01:20PM 3    BRANCHES FROM THOSE.

01:20PM 4        NOW HOW YOU STRUCTURE THAT, AS I SAID, IS IMPORTANT BECAUSE

01:20PM 5    IT'S HOW IT FITS INTO, YOU KNOW, THE OVERALL USER INTERFACE,

01:20PM 6    HOW YOU WANT THIS TO BE DESIGNED SO THAT IT'S ACCESSIBLE AND

01:21PM 7    EFFICIENT FOR THE TRAINED ENGINEERS TO USE.

01:21PM 8        SO IF I MOVE FORWARD IN THE CONTEXT THE INSTRUCTIONS WE ARE

01:21PM 9    DISCUSSING I'M GOING TO SHOW A SPANNING-TREE HIERARCHY.  THIS

01:21PM 10   ACTUALLY IS ONE THAT'S IN THE ASSERTED IOS CLI, AND HERE YOU

01:21PM 11   HAVE THE SPANNING-TREE AS BEING --

01:21PM 12           THE COURT:  I'M JUST NOT RECALLING THAT PARTICULAR

01:21PM 13   ONE.

01:21PM 14           MR. NELSON:  YEAH, I'M NOT SURE IF THAT'S -- I'M

01:21PM 15   ILLUSTRATING THAT WITH A COMMAND, I'M NOT SURE IF THAT'S

01:21PM 16   EXACTLY ONE WE ASSERTED, YOUR HONOR.

01:21PM 17           THE COURT:  YOU HAVE MANY MORE THAN I CAN MEMORIZE.

01:21PM 18           MR. NELSON:  AND YEAH, UNFORTUNATELY ME AS WELL.

01:21PM 19       BUT WHAT I WANT TO SHOW IS THIS, JUST IN THE CONTEXT OF

01:21PM 20   THOSE COMMANDS THAT I WAS JUST TALKING ABOUT.

01:21PM 21       SO HERE, THE WAY THIS WAS ORGANIZED WAS TO START WITH

01:21PM 22   SPANNING-TREE, THAT'S THE LAST SLIDE IN THE TREE THAT WOULD BE

01:21PM 23   THE PARENT.

01:21PM 24       SO IT'S, YOU KNOW, THINGS THAT WHEN AN ENGINEER IS GOING IN

01:21PM 25   THAT I MIGHT -- INFORMATION I MIGHT BE ABLE TO GET FROM THAT

01:22PM   1    DATA STRUCTURE AND THE VARIOUS THINGS I CAN GET FROM DATA

01:22PM   2    STRUCTURE IS THAT THE NEXT BUILD IN THAT.

01:22PM   3        IF I STICK WITH PORTFAST, THAT'S WHERE THEY DECIDE TO

01:22PM   4    BRANCH IT, BECAUSE THERE'S A FEW THINGS YOU CAN DO WITH

01:22PM   5    PORTFAST, THE BDU FILTER AND THE BDU GUARD, RIGHT.  SO YOU SET

01:22PM   6    THIS UP, AND THEY COULD HAVE, AND IF I GO TO THE NEXT SLIDE FOR

01:22PM   7    EXAMPLE, ACTUALLY, LET'S GO TO SLIDE 25.

01:22PM   8        MR. PAK:  FOR YOUR HONOR'S BENEFIT, THE SPANNING-TREE

01:22PM   9    HIERARCHIES ARE IN OUR PROTECTABLE FILING ON PAGE 77.

01:22PM  10        THE COURT:  77.  THANK YOU.

01:22PM  11        MR. NELSON:  THANK YOU, MR. PAK.

01:22PM  12        SO YOU KNOW, YOU COULD AND THIS IS THE WAY THESE ARE -- AND

01:22PM  13    I WANT TO SHOW AN EXAMPLE.  THE ONE IS THE RIGHT IS NOT

01:22PM  14    ACTUALLY A HIERARCHY THAT EXISTS, BUT IT'S ILLUSTRATING THE

01:22PM  15    EXAMPLE THAT WE ARE TALKING ABOUT.

01:22PM  16        SO WE KNOW ABOUT THE SHOW HIERARCHY AND THAT'S CERTAINLY

01:23PM  17    ASSERTED IN THE CASE.  AND HERE WITHIN THAT SHOW HIERARCHY, WE

01:23PM  18    ACTUALLY HAVE A SPANNING-TREE FUNCTIONALITY, RIGHT.

01:23PM  19        AND THAT'S BECAUSE THAT -- THE DESIGNER DECIDED THAT

01:23PM  20    INTUITIVELY IT MADE SENSE FOR THE FUNCTIONALITY THAT HE WAS

01:23PM  21    TRYING TO EXPOSE THERE, TO PLACE THAT SPANNING-TREE AS THE

01:23PM  22    CHILD, RATHER THAN IF WE GO OVER TO THE RIGHT YOU SEE -- I HAVE

01:23PM  23    JUST KIND OF DONE AN EXPANSION OF THE SPANNING-TREE HIERARCHY

01:23PM  24    THAT WE LOOKED AT IN THE PREVIOUS SLIDE AND SAID, YOU COULD

01:23PM  25    HAVE PUT SHOW DOWN THERE AS JUST ANOTHER THING YOU COULD DO

01:23PM  1    WITH THE SPANNING-TREE.  BUT THEY DECIDED THAT THAT DIDN'T,

01:23PM  2    WITHIN THE CONTEXT OF WHAT IT WAS THEY WERE TRYING TO DO, THAT

01:23PM  3    DIDN'T MAKE SENSE.

01:23PM  4        SO HOW YOU STRUCTURE THESE THINGS AND HOW YOU ORDER THE

01:23PM  5    COMMANDS, EXCUSE ME, IT MATTERS FROM A USABILITY STANDPOINT HOW

01:23PM  6    SOMEBODY CAN BE TAUGHT, HOW -- BECAUSE LET'S LOOK AT IT THIS

01:24PM  7    WAY, YOUR HONOR.

01:24PM  8        THE REASON FOR THIS KIND OF STRUCTURE, AT LEAST IN MY OWN

01:24PM  9    MIND THAT MAKES SENSE TO ME, AND THERE'S DOCUMENTATION AND

01:24PM 10    THERE WILL BE EVIDENCE TO SUPPORT THIS, IS TWOFOLD, RIGHT.

01:24PM 11        ONE IS ON THE CREATION SIDE, MEANING WHEN YOU ARE EXPOSING

01:24PM 12    NEW FUNCTIONALITY THAT ARE ADDING TO THESE SWITCHES AND YOU

01:24PM 13    WANT TO EXPAND THE USER INTERFACE, IT PUTS SOME GUIDELINES.

01:24PM 14    AND I USE THE TERM "GUIDELINES" INTENTIONALLY BECAUSE THEY ARE

01:24PM 15    NOT RULES, THEY ARE NOT CONSTRAINTS, THAT'S THE EVIDENCE YOU

01:24PM 16    WILL HEAR, BUT GUIDELINES BECAUSE OTHERWISE YOU END UP WITH

01:24PM 17    RANDOMNESS, PERHAPS.  EVERYBODY WANTS TO DO IT DIFFERENTLY AND

01:24PM 18    THEN IT DOESN'T MAKE SENSE AND IT BECOMES, FROM AN EFFICIENCY

01:24PM 19    STANDPOINT, IT BECOMES A MUCH LESS EFFICIENT CLI OR MUCH LESS

01:24PM 20    EFFICIENT USER INTERFACE.

01:24PM 21        IT'S ALSO IMPORTANT FROM THE OTHER SIDE, FROM THE USER

01:24PM 22    STANDPOINT.  BECAUSE THERE'S A LOT OF COMMANDS IN HERE.

01:24PM 23        I MEAN, THAT'S PART OF WHAT WE WILL BE ARGUING ABOUT AT

01:25PM 24    TRIAL AND WE ALL KNOW AND THERE'S NO SECRET ABOUT THAT.  BUT

01:25PM 25    IT'S HARD, AT LEAST IT'S HARD FOR ME, JUST TO MEMORY RISE ALL

01:25PM 1    THOSE THINGS INDIVIDUALLY.

01:25PM 2        TO SIT THERE, EVEN IF I'M A TRAINED ENGINEER, TO SAY OKAY,

01:25PM 3    THIS PARTICULAR COMMAND DOES THIS, THIS PARTICULAR COMMAND DOES

01:25PM 4    THAT, BUT WHEN I GET MENTAL CUES, LIKE OKAY, I KNOW I'M

01:25PM 5    OPERATING ON A SPANNING-TREE.  SO I GO INTO THE, THAT

01:25PM 6    SPANNING-TREE HIERARCHY, AND THEN --

01:25PM 7        THE COURT:  SO IF I GO INTO SPANNING-TREE HIERARCHY,

01:25PM 8    I'M THEN GIVEN THIS LIST OF CHOICES TO SELECT AMONG?

01:25PM 9        MR. PAK:  YOUR HONOR, JUST TO BE CLEAR, YOU CAN, THIS

01:25PM 10   IS A TEXTUAL INTERFACE SO YOU CAN TYPE IN SPANNING-TREE, BDU,

01:25PM 11   BGP FILTER.

01:25PM 12       REMEMBER, YOUR HONOR, WE TALKED ABOUT HELP DESCRIPTIONS.

01:25PM 13   SO ONE OF THE THINGS YOU CAN DO IN THE SYSTEM THAT'S ALSO

01:25PM 14   ANOTHER ASPECT OF THE CLI USER INTERFACES, IS YOU CAN TYPE

01:25PM 15   SPANNING-TREE, QUESTION MARK.  THEN THE SYSTEM WILL LAY OUT FOR

01:25PM 16   YOU THESE OPTIONS IN TERMS OF HERE'S THE NEXT WORD THAT YOU CAN

01:26PM 17   PICK IN THE HIERARCHY.

01:26PM 18       SO THE HIERARCHY IS REPRESENTED IN THE PARSER WHICH

01:26PM 19   RECOGNIZES COMMANDS WHICH IS DESCRIBED ALSO IN THE MANUALS THAT

01:26PM 20   YOU WILL SEE.  BUT ALSO IN THE SYSTEM ITSELF, IT'S REFLECTED IN

01:26PM 21   THE HELP DESCRIPTIONS AND HOW IT'S TO ORGANIZE THROUGH THE

01:26PM 22   QUESTION MARK FUNCTION.

01:26PM 23       THE COURT:  SORRY, THIS SOUNDS STUPID, BUT WE ARE

01:26PM 24   DEALING WITH THE USER INTERFACE, AND SO I THOUGHT THE

01:26PM 25   HIERARCHIES WERE ACTUALLY A DISPLAY THAT THE ENGINEER WOULD

01:26PM 1    MANIPULATE.  BUT YOU ARE SAYING THIS IS UNDERNEATH.

01:26PM 2              MR. PAK:  IT'S BOTH, YOUR HONOR.  IT'S NOT A DROP

01:26PM 3    DOWN MENU SYSTEM.

01:26PM 4         SO IN A DROP DOWN MENU SYSTEM, YOU WOULD HAVE A HIERARCHY

01:26PM 5    SHOWN ON THE SCREEN ALL THE TIME.  THIS IS A TEXT-BASED INPUT

01:26PM 6    SYSTEM.  SO WHEN YOU START YOU WITH A MODE AND PROMPT SO THE

01:26PM 7    USER CAN TYPE THESE WORDS IN.

01:26PM 8         THE USER CAN ALSO DO A QUESTION MARK TO SAY, GIVE ME THE

01:26PM 9    NEXT WORD IN THE HIERARCHY FOR THIS PARTICULAR STARTING POINT

01:27PM 10   WORD.  OR THERE'S ALSO A COMMAND CALLED PARSE DUMP WHICH IS A

01:27PM 11   COMMAND THAT YOU MIGHT HEAR SOME EVIDENCE ABOUT IN THIS CASE

01:27PM 12   WHERE IF YOU WANT TO KNOW WHAT THE SYSTEM CAN SUPPORT IN TERMS

01:27PM 13   OF ALL THE DIFFERENT COMMANDS --

01:27PM 14             THE COURT:  SO I GUESS NOW I'M CONFUSED AS TO WHAT'S

01:27PM 15   THE DIFFERENCE BETWEEN THE HIERARCHIES AND EACH OF THE COMMAND

01:27PM 16   LINES.  IS THAT WHERE WE ARE GOING?

01:27PM 17             MR. NELSON:  THAT IS WHERE WE ARE GOING.

01:27PM 18             MR. VAN NEST:  THAT'S WHERE WE ARE GOING.

01:27PM 19             MR. NELSON:  I'M GETTING THERE BOB, DON'T WORRY ABOUT

01:27PM 20   IT.

01:27PM 21        SO THAT'S WHEN I WAS TALKING ABOUT, AND I DON'T WANT TO USE

01:27PM 22   THE TERM SYNTAX, RIGHT, BECAUSE THAT'S -- THE WAY WE'VE KIND OF

01:27PM 23   USED IT IN THE CASE OR MY UNDERSTANDING WAS REFERRING TO, LIKE,

01:27PM 24   THE PARAMETERS AND THE SPECIFIC INPUTS THAT YOU MIGHT HAVE IN A

01:27PM 25   COMMAND BECAUSE YOU ARE SAYING DO THESE THINGS ON A CERTAIN

01:27PM  1    SWITCH OR A CERTAIN PORT OR A CERTAIN NETWORK.

01:27PM  2         THAT'S NOT WHAT WE ARE TALKING ABOUT.

01:27PM  3         BUT THIS, THAT STRUCTURE IN TERMS OF HOW YOU LAY OUT THE

01:27PM  4    COMMANDS, IS PART OF THE USER INTERFACE, RIGHT.  IT IS PART OF

01:27PM  5    THE USER INTERFACE.  BOTH FOR THE REASONS MR. PAK SUGGESTED, AS

01:28PM  6    WELL AS FOR THESE USABILITY REASONS.

01:28PM  7         SO IT DOES -- IT EXISTS SEPARATE AND APART FROM THE

01:28PM  8    COMMANDS FOR THE EXACT REASONS THAT I DESCRIBED, RIGHT.  YOU

01:28PM  9    HAVE THIS OVERALL, AND WE CAN GO THROUGH DOCUMENTATION ON BOTH

01:28PM 10    SIDES, BUT THERE ARE, I DON'T WANT TO TURN THIS INTO AN

01:28PM 11    EVIDENTIARY HEARING ARE FOR YOUR HONOR BUT THERE'S

01:28PM 12    DOCUMENTATIONS ON BOTH SIDES THAT ARE TALKING ABOUT BOTH OF

01:28PM 13    THESE PARTICULAR HIERARCHIES EXISTING WITHIN THE USER INTERFACE

01:28PM 14    AND THAT THEY ARE IMPORTANT TO DECIDE WHAT HIERARCHIES YOU ARE

01:28PM 15    GOING TO USE AND MAINTAIN CONSISTENCY WITH THOSE.

01:28PM 16         THE COURT:  SO THIS IS THE CREATOR DECIDING WHICH

01:28PM 17    ONES TO USE, NOT THE USER DECIDING?

01:28PM 18         MR. NELSON:  THAT'S CORRECT.

01:28PM 19         THE COURT:  OKAY.

01:28PM 20         MR. NELSON:  SO IT WOULD BE BECAUSE THE CREATOR IS

01:28PM 21    BEING CONSISTENT WITH THAT HIERARCHICAL ORGANIZATION, BECAUSE I

01:28PM 22    DON'T WANT TO USE THE TERM SYNTAX, THAT MAKES IT EASIER FOR THE

01:28PM 23    USER, RIGHT.

01:28PM 24         SO THE USER UNDERSTANDS THAT THESE TYPES OF COMMANDS I'M

01:29PM 25    WORKING ON A SPANNING-TREE, RIGHT, I CAN GO SPANNING-TREE

01:29PM 1    QUESTION MARK AND I CAN GET WHAT MY OPTIONS ARE FROM THERE

01:29PM 2    RATHER THAN LIKE WE HAVE THIS OTHER ONE, SHOW SPANNING-TREE.

01:29PM 3    YOU HAVE TO REMEMBER THAT, IF YOU WERE TRYING TO THINK, CAN I

01:29PM 4    LOOK AT SOME PARTICULAR INFORMATION FROM THE SPANNING-TREE

01:29PM 5    MIGHT BE HARD IF THE GUY, HE DIDN'T REMEMBER THAT THAT WAS PART

01:29PM 6    OF A DIFFERENT HIERARCHY, RIGHT.

01:29PM 7         SO LET ME -- I DON'T KNOW IF THIS IS GOOD BUT I'M GOING TO

01:29PM 8    GO THERE

01:29PM 9              THE COURT:  SO WE ARE LOOKING FOR PROTECTION OF --

01:29PM 10   AND YOU'VE PUT THEM IN BOXES.

01:29PM 11        SO I'M LOOKING AT PAGE 77, AND I'M LOOKING AT YOUR

01:29PM 12   SPANNING-TREE HIERARCHY FOR IOS.

01:29PM 13             MR. NELSON:  CORRECT.

01:29PM 14             THE COURT:  THAT IS A HIERARCHY, AND YOU ARE SEEKING

01:29PM 15   PROTECTION OF THAT AS ITS PRESENTED TO ME THERE?  THAT'S WHAT

01:29PM 16   YOU'VE SAID.

01:29PM 17             MR. NELSON:  WHAT WE'VE SAID, IF IT YOU LOOK AT THE

01:30PM 18   LEAD IN TO THAT, THAT'S AN ILLUSTRATION OF WHAT THE HIERARCHY

01:30PM 19   IS.

01:30PM 20             THE COURT:  SO THAT'S WHERE YOU LOSE ME, I WAS BEING

01:30PM 21   VERY LITERAL.  SO NOW I'M NOT EVEN UNDERSTANDING WHERE THE

01:30PM 22   HIERARCHY EXISTS AND HOW THE USER, IF THIS IS THE USER

01:30PM 23   INTERFACE, HOW IT OPERATES.  I'M A STEP BEHIND YOU THERE.

01:30PM 24             MR. NELSON:  OKAY.

01:30PM 25        SO THE, LET'S -- AND CAN YOU GIVE ME THAT SPECIFIC LANGUAGE

01:30PM 1    FROM THE USABILITY BRIEF.

01:30PM 2         SO LET ME LOOK AT THIS WAY AND SEE IF I HAVE A BETTER, A

01:30PM 3    MORE REAL-WORLD EXAMPLE.

01:30PM 4         LET'S SAY THAT I HAD A USER INTERFACE OR AN OPERATING

01:30PM 5    SYSTEM THAT I WAS GOING TO USE TO WRITE A WHOLE BUNCH OF

01:30PM 6    DIFFERENT SPORTS VIDEO GAMES.

01:30PM 7         SO I HAD -- I WANTED TO COVER BASEBALL AND HOCKEY AND

01:30PM 8    FOOTBALL AND SOCCER AND VARIOUS OTHER THINGS, RIGHT -- BEAR

01:30PM 9    WITH ME JUST A SECOND

01:31PM 10             THE COURT:  I'M WITH YOU.

01:31PM 11             MR. NELSON:  SO THERE'S -- WITHIN THE CONTEXT OF

01:31PM 12   THAT, THERE'S COMMONALITY ACROSS SPORTS, RIGHT.

01:31PM 13        SO LIKE, YOU KNOW, AND BASKETBALL I FORGOT.  SO SOMETHING

01:31PM 14   LIKE SHOOT, YOU MAY SHOOT, THERE'S A WHOLE -- YOU HAVE THAT IN

01:31PM 15   SOCCER OR A LEAST YOU CAN CALL A KICK A SHOT, RIGHT.  AND YOU

01:31PM 16   HAVE THAT IN BASKETBALL FOR SURE.  YOU GOT IT IN HOCKEY, THINGS

01:31PM 17   LIKE THAT.

01:31PM 18        SO YOU MIGHT DECIDE THAT THERE'S ENOUGH COMMONALITY WITH

01:31PM 19   RESPECT TO THAT, THAT WHEN YOU ARE ORGANIZING THE STRUCTURE,

01:31PM 20   YOU WANT TO PUT, SO YOU WOULD HAVE SHOOT PUCK, SHOOT BALL,

01:31PM 21   RIGHT.  YOU WOULD WANT -- OR SHOOT SOCCER BALLS, SHOOT

01:31PM 22   BASKETBALL, YOU WOULD WANT TO HAVE THEM ORGANIZED THAT WAY

01:31PM 23   BECAUSE IT MAKES MORE SENSE, AS OPPOSED TO ORGANIZING

01:31PM 24   EVERYTHING BY PLAYER.

01:31PM 25        SO YOU MIGHT GO IN AND SAY, OKAY, SOCCER PLAYER, WHAT ARE

01:31PM  1    ALL THE THINGS?  A SOCCER PLAYER CAN DRIBBLE.  WELL, A

01:31PM  2    BASKETBALL PLAYER CAN DRIBBLE.  A SOCCER PLAYER CAN TACKLE,

01:31PM  3    WELL, A FOOTBALL PLAYER CAN TACKLE.  SO A BASKETBALL PLAYER CAN

01:32PM  4    DRIBBLE, YES, I MEAN, SOME OF THEM.

01:32PM  5         SO BASKETBALL PLAYER CAN DRIBBLE, RIGHT, BUT A SOCCER

01:32PM  6    PLAYER CAN DRIBBLE TOO.  WELL, I DON'T KNOW, I HAD ANOTHER

01:32PM  7    EXAMPLE, I FORGOT WHAT IT WAS.

01:32PM  8              THE COURT:  YEAH.

01:32PM  9              MR. NELSON:  SO YOU -- THAT'S KIND OF THE SAME THING,

01:32PM 10    RIGHT, SO YOU GO IN AND YOU ARE TRYING TO DECIDE HOW BEST TO

01:32PM 11    ORGANIZE THESE THINGS SO THAT IT PRESENTS ITSELF TO A USER IN

01:32PM 12    AN EFFICIENT AND UNDERSTANDABLE FASHION, RIGHT.  AND BOTH FOR

01:32PM 13    WHEN YOU ARE CREATING NEW COMMANDS AND TO -- FOR TEACHABILITY

01:32PM 14    PERSPECTIVE.

01:32PM 15              THE COURT:  WHAT I'M GLEANING, FROM WHAT YOU ARE

01:32PM 16    TELLING ME THOUGH, IS THAT THE HIERARCHY IS THE IDEA BEHIND THE

01:32PM 17    EXPRESSION OF THE COMMAND.

01:32PM 18              MR. NELSON:  WELL, THE HIERARCHY ITSELF IS AN

01:32PM 19    EXISTING EXPRESSION, RIGHT.  AND THAT'S WHAT -- WE ARE NOT

01:32PM 20    CLAIMING THE IDEA OF HIERARCHIES.

01:32PM 21              THE COURT:  SO I'M LOOKING FOR THE EXPRESSION.  AND

01:33PM 22    I'M SORRY, THAT'S WHAT I'M A LITTLE BIT STUCK ON.

01:33PM 23         IF THE EXPRESSION, YOU ARE TELLING ME THESE ARE ONLY

01:33PM 24    EXEMPLARY.  IF PAGE 77, THE SPANNING-TREE EXAMPLE UNDER IOS,

01:33PM 25    THE SPANNING-TREE HIERARCHY, I'VE ASKED YOU ARE YOU CLAIMING

01:33PM 1    PROTECTION OF THIS AS A HIERARCHY, AND I THOUGHT YOU JUST TOLD

01:33PM 2    ME NO, YOU WEREN'T.

01:33PM 3              MR. NELSON:  NO, WE ARE CLAIMING --

01:33PM 4              THE COURT:  THIS EXISTS IN YOUR USER INTERFACE.

01:33PM 5              MR. NELSON:  IT DOES EXIST IN THE USER INTERFACE.

01:33PM 6    THAT'S EXACTLY RIGHT.

01:33PM 7              THE COURT:  AND IT'S NOT JUST WHAT IS THE PREDICATE

01:33PM 8    TO THE COMMAND LINE THAT IS PART OF THE 508 OR MORE.

01:33PM 9              MR. NELSON:  THAT'S CORRECT.  THAT IS CORRECT.

01:33PM 10       IT IS REFLECTIVE OF THE PARTICULAR STRUCTURE, JUST AS I WAS

01:33PM 11   GOING THROUGH THESE THINGS, OF HOW YOU ORGANIZE THESE COMMANDS.

01:33PM 12       SO THAT'S WHY WE USE THE ACCUSED COMMANDS IN ORDER TO

01:33PM 13   ILLUSTRATE THOSE THINGS

01:33PM 14             THE COURT:  BUT IT SEEMS TO ME AS THOUGH THERE IS A

01:33PM 15   COMMAND IN THIS IOS THAT IS SPANNING-TREE BP, IT HAS ALL OF

01:34PM 16   THESE WORDS IN IT, I CAN'T EVEN -- THAT IS SPANNING-TREE, BPDU

01:34PM 17   FILTER.

01:34PM 18             MR. NELSON:  CORRECT.

01:34PM 19             THE COURT:  BUT THAT'S WHAT THE COMMAND LINE IS.

01:34PM 20             MR. NELSON:  THOSE -- EXACTLY.

01:34PM 21       BECAUSE THE HIERARCHY, SEE, WHAT WE'VE DONE IS ILLUSTRATED

01:34PM 22   THAT HIERARCHY.  THE HIERARCHY IS THE ORGANIZATION, RIGHT.  IN

01:34PM 23   OTHER WORDS, THE CHOICE --

01:34PM 24             THE COURT:  WELL, I DON'T KNOW THAT YOU CAN COPYRIGHT

01:34PM 25   THE ORGANIZATION IN GENERAL, ISN'T THAT THE IDEA?

01:34PM 1          MR. NELSON:  NO, IT'S NOT THE IDEA BECAUSE IT IS A

01:34PM 2    PARTICULAR EXPRESSION.

01:34PM 3          SO IF I GO BACK, LET'S JUST GO BACK TO SLIDE 25 ON THE

01:34PM 4    EXAMPLE.  AND YOU CAN SEE THAT HERE -- SO WITH THE SHOW

01:34PM 5    HIERARCHY, THERE ACTUALLY IS A SPANNING-TREE FUNCTIONALITY

01:34PM 6    THAT'S A CHILD OF THE SHOW HIERARCHY.

01:34PM 7          BUT --

01:34PM 8          THE COURT:  BUT REALLY EACH OF THESE IS A COMMAND

01:34PM 9    LINE, EACH OF THESE SELECTIONS IS A COMMAND LINE, RIGHT?

01:34PM 10         MR. NELSON:  THAT'S CORRECT.

01:35PM 11         THE COURT:  OKAY.

01:35PM 12         MR. NELSON:  THAT IS CORRECT.  BECAUSE THAT'S -- IN

01:35PM 13   TERMS OF WHAT -- SO IN TERMS OF THE ASSERTION THOUGH, THOSE

01:35PM 14   ARE -- THAT'S AN ADDITIONAL THING, RIGHT.

01:35PM 15         SO FOR EXAMPLE, EVEN IF YOU FOUND, SO THAT STRUCTURE, IN

01:35PM 16   TERMS OF THE, SETTING UP THAT SPANNING-TREE HIERARCHY AND

01:35PM 17   PUTTING ALL THESE THINGS, THAT'S PART OF WHAT WAS COPIED HERE,

01:35PM 18   AS OPPOSED TO TRY TO TAKE PARTICULAR COMMANDS AND REORDER.

01:35PM 19         SO WE WOULD SAY, OKAY, I WANT EVERYTHING UNDER PORTFAST.

01:35PM 20   SO I MIGHT USE THE SAME TERMINOLOGY, BUT I DECIDED TO USE A

01:35PM 21   PORTFAST HIERARCHY.  THEY DIDN'T DO THAT, THAT'S WHAT WE ARE

01:35PM 22   SAYING.  WHAT THEY DID WAS, YOU KNOW, KEPT THAT SAME HIERARCHY

01:36PM 23   FOR THEIR THINGS.  AND THERE MAY BE ADDITIONAL COMMANDS THAT

01:36PM 24   THEY ORDER WITHIN THAT PARTICULAR HIERARCHY.

01:36PM 25         BUT SEE, YOUR HONOR, THAT'S AN ADDITIONAL REASON BECAUSE

01:36PM  1    THAT IS A SEPARATE AND DISTINCT EXPRESSION OF -- EXPRESSION,

01:36PM  2    RIGHT, THAT'S SEPARATE AND APART FROM THE COMMANDS THEMSELVES.

01:36PM  3            THE COURT:  I GUESS IT'S A PRETTY THIN LINE BETWEEN

01:36PM  4    THE COMMAND ITSELF, AND THIS PARTICULARS TO ME TO BE A FURTHER

01:36PM  5    EXPLANATION OF THE, WHAT YOU CALL THE CREATIVE PROCESS TO

01:36PM  6    CREATE THE COMMAND LINE AS OPPOSED TO SOMETHING THAT IS

01:36PM  7    SEPARATELY PROTECTABLE.

01:36PM  8      AND I'M JUST NOT SEEING ANY -- YOU KNOW, THIS JUST LOOKS TO

01:36PM  9    ME LIKE THIS IS WHAT YOUR ARCHITECTS, YOUR AUTHORS WERE LOOKING

01:36PM  10   AT TO CREATE, IT'S A STEP ALONG THE WAY TO CREATING THE COMMAND

01:36PM  11   LINE AND NOT A SEPARATELY PROTECTABLE ELEMENT.

01:36PM  12           MR. NELSON:  WELL, EXCEPT FOR IT IS SOMETHING THAT

01:36PM  13   EXISTS, IT IS SOMETHING THAT EXISTS IN THE USER INTERFACE.

01:37PM  14     AND IT DOES IT FOR THE PURPOSE OF ONE, YOU KNOW, ORDERING

01:37PM  15   THE HELP, FIGURING OUT WHAT'S IN THE HELP COMMANDS AND THE

01:37PM  16   DISPLAYS CAN BE, FIGURING OUT WHAT THE, FROM THE USER

01:37PM  17   STANDPOINT HOW YOU ACCESS CERTAIN INFORMATION IN TERMS OF

01:37PM  18   GETTING AT THE EXPOSED FUNCTIONALITY, WHAT KIND OF PATH YOU

01:37PM  19   TAKE, AND IT HAS TO PREEXIST WHEN YOU THINK ABOUT IT BECAUSE

01:37PM  20   IT'S ALSO GOING TO BE PART OF THE CONSIDERATION THAT'S USED

01:37PM  21   WHEN YOU ADD NEW COMMANDS TO THINGS.

01:37PM  22     SO I UNDERSTAND, YOUR HONOR, AND YOU'RE A HUNDRED PERCENT

01:37PM  23   CORRECT THAT THERE IS AN ASPECT OF IT THAT YOU NEED TO THINK

01:37PM  24   ABOUT IN THE CONTEXT OF THE CREATIVE PROCESS OF -- CREATING THE

01:37PM  25   COMMANDS THEMSELVES, BUT THAT TO ME ANYWAY, THE DIFFERENCE IS

01:37PM 1    THAT THAT PART OF CREATIVE PROCESS IS CHOOSING WHAT HIERARCHY

01:37PM 2    YOU ARE GOING TO PUT THE COMMAND INTO OR WHETHER YOU ARE GOING

01:38PM 3    TO CREATE A NEW HIERARCHY.

01:38PM 4        AND THAT'S SOMETHING -- THEY COULD HAVE USED EXACTLY THE

01:38PM 5    SAME FUNCTIONALITY AND THE SAME, YOU KNOW, CHOICE OF WORDS AND

01:38PM 6    ALL THOSE KINDS OF THINGS, BUT DECIDED TO CREATE DIFFERENT

01:38PM 7    HIERARCHIES IN THE SYSTEM, RIGHT.

01:38PM 8        SO I WOULD SUGGEST THAT THAT'S AN ADDITIONAL REASON WHY

01:38PM 9    SOME OF THE SHORTER COMMANDS THAT WE HAVE WOULD REMAIN BECAUSE

01:38PM 10   THOSE ARE PART OF THE ACCUSED HIERARCHIES IN THE CASE.

01:38PM 11       AND IF I GET TO THE DOCUMENTS -- AND SEAN, CAN YOU POINT ME

01:38PM 12   TO EXACTLY WHERE WE HAVE THE DOCUMENTATION IN THE HIERARCHIES.

01:38PM 13           MR. PAK:  YEAH.

01:38PM 14           MR. NELSON:  IF I GO TO THE NEXT SLIDE HERE, MAYBE

01:38PM 15   THIS CAN ILLUSTRATE A BIT MORE.

01:38PM 16       SO THESE ARE THE HIERARCHIES THAT EXIST IN THE SYSTEM.  SO

01:38PM 17   WE KNOW ABOUT IP AND WE'VE TALKED ABOUT IP QUITE A BIT.  AND

01:39PM 18   YOU WILL SEE AND THIS IS AN EXCERPT I HAVE ON SLIDE 26 OF THE

01:39PM 19   IP HIERARCHY.  BUT IF I LOOK AT THE "SHOW HIERARCHY," THERE'S

01:39PM 20   ACTUALLY PART OF IT THAT HAS IP FUNCTIONALITY IN THERE.

01:39PM 21       SO IN OTHER WORDS, THERE WAS A CONSCIENCE DECISION MADE NOT

01:39PM 22   TO EXPAND THE IP HIERARCHY TO INCLUDE THIS SHOW FUNCTIONALITY,

01:39PM 23   RIGHT.  THAT WAS PLACED IN THE SHOW HIERARCHY.

01:39PM 24       AND SIMILARLY, YOU CAN SEE ONE OF THE THINGS IN THIS

01:39PM 25   EXAMPLE THAT CAN BE SHOWN AS SOMETHING ABOUT VRRP, WHICH IS MY

01:39PM 1    UNDERSTANDING, A PARTICULAR PROTOCOL.  BUT RATHER THAN EXPAND

01:39PM 2    THERE, YOU WILL SEE THAT THE DESIGNERS, THEY CREATED A SEPARATE

01:39PM 3    VRRP HIERARCHY AS WELL.

01:39PM 4        SO THEY CHOSE TO, RATHER THAN EXPAND -- BECAUSE THAT'S PART

01:39PM 5    OF WHAT YOU ARE TRYING TO DO IS YOU MAY NOT WANT THE

01:39PM 6    HIERARCHIES TO BE SO LARGE BECAUSE THAT MAKES IT DIFFICULT FROM

01:40PM 7    A USABILITY STANDPOINT AND ALSO, YOU KNOW, LOCKS YOU IN BECAUSE

01:40PM 8    YOU MIGHT ADD ADDITIONAL FUNCTIONALITY DOWN THE ROAD AND THEN

01:40PM 9    SOME OF THE COMMANDS MAY BECOME VERY, VERY COMPLEX.

01:40PM 10       SO YOU SEE HERE THAT YOU CAN HAVE SIMILAR FUNCTIONALITY OR

01:40PM 11   THE SAME FUNCTIONALITY THAT WOULD BE EXPOSED, BUT YOU CHOOSE TO

01:40PM 12   PUT IT IN A DIFFERENT HIERARCHY, AND THEREFORE YOU HAVE A

01:40PM 13   DIFFERENT STRUCTURE TO THE USER INTERFACE.

01:40PM 14       SO THAT'S THE ASPECT OF THE HIERARCHIES THAT WE'RE CLAIMING

01:40PM 15   TO BE SEPARATE AND APART FROM THE COMMANDS THEMSELVES.

01:40PM 16           THE COURT:  AND THAT'S WHAT I'M STRUGGLING WITH.

01:40PM 17       BECAUSE IT SEEMS TO ME THAT IF YOU PROVE THAT ARISTA HAS

01:40PM 18   COPIED OR INFRINGED THE, BY COPYING THE HIERARCHIES, THEY

01:40PM 19   NECESSARILY HAVE COPIED THE COMMANDS.  YOU CAN'T SEPARATE THEM.

01:40PM 20   YOU DON'T HAVE ONE WITHOUT THE OTHER.

01:40PM 21       AND THAT'S WHERE I'M JUST REALLY STRUGGLING.  THAT'S WHY I

01:40PM 22   THINK THE HIERARCHIES ARE MORE ON THE IDEA RATHER THAN

01:41PM 23   EXPRESSION SIDE, OR THE COMMAND IS REALLY JUST THE OUTPUT OF

01:41PM 24   THE HIERARCHY, IT'S NOT SOMETHING DISTINCT.

01:41PM 25           MR. NELSON:  WELL, I UNDERSTAND WHAT YOU ARE SAYING,

01:41PM 1   BUT YOU COULD ALSO HAVE A SITUATION -- I MEAN, LET'S SAY, WE'VE

01:41PM 2   ILLUSTRATED IN A SENSE BECAUSE WE CHOSE TO DO THAT, WE DIDN'T

01:41PM 3   WANT TO EXPAND THE CASE AND CREATE THE AMBIGUITY, THAT

01:41PM 4   PARTICULAR COMMANDS ARE NOT -- YOU ARE GOING TO FILTER THOSE,

01:41PM 5   RIGHT, THAT MAY BE THE CASE, I UNDERSTAND THAT.

01:41PM 6       BUT THEY WOULD STILL BE PART OF THE ASSERTED HIERARCHY

01:41PM 7   THAT'S HERE SEPARATE AND APART.  SO THAT'S WHY THAT IS

01:41PM 8   DIFFERENT.

01:41PM 9       NOW, WE COULD HAVE INCLUDED A WHOLE BUNCH OF OTHER COMMANDS

01:41PM 10  THAT ARE WITHIN THE HIERARCHY AS ILLUSTRATIVE OF THAT, BUT THAT

01:41PM 11  JUST MAKES THE CASE MORE AND MORE UNWIELDY, SO WE CHOSE NOT TO

01:41PM 12  DO THAT.  BUT I DO THINK THAT IT IS A SEPARATE AND DISTINCT

01:41PM 13  THING.

01:41PM 14      AND IF I GO TO SLIDE 72, YOU WILL SEE THIS IS FROM ARISTA'S

01:42PM 15  OWN DOCUMENTATION, THEY HAVE CLI CONVENTIONS AND STYLE

01:42PM 16  GUIDELINES.

01:42PM 17      SO I MEAN, THEY TALK ABOUT THIS INTERNALLY AS BEING

01:42PM 18  SOMETHING HAD THAT EXISTS.  USE CONVENTIONAL COMMAND

01:42PM 19  HIERARCHIES, RIGHT.  WHEN NAMING A --

01:42PM 20          THE COURT:  THEY MAY USE THE SAME IDEA YOU USE,

01:42PM 21  THAT'S REALLY WHAT I'M GETTING AT HERE.  AND YOU ARE NOT

01:42PM 22  SEEKING PROTECTION OF THE IDEA OF A HIERARCHY.

01:42PM 23          MR. NELSON:  NO, NO.  I'M NOT DOING THAT AT ALL.  WE

01:42PM 24  ARE NOT DOING THAT.  THAT'S WHY WE NAMED AND ILLUSTRATED IT IN

01:42PM 25  THE SENSE OF THE ASSERTED COMMANDS, THE SPECIFIC HIERARCHIES WE

01:42PM  1    ARE CLAIMING.

01:42PM  2        SO YOU ARE RIGHT IN THE TERMS OF THEY LOOK AND MAYBE THAT

01:42PM  3    WAS A MISTAKE ON OUR PART NOT TO EXPAND THE CASE FATHER, BUT

01:42PM  4    THEY LOOK TO BE COEXTENSIVE BECAUSE WE CHOSE TO ILLUSTRATE THE

01:42PM  5    ACCUSED HIERARCHIES WITHIN THE CONTEXT OF THE ASSERTED

01:42PM  6    COMMANDS, RIGHT.

01:42PM  7        BUT JUST TAKING THE EXAMPLE, YOU KNOW, THERE MAY HAVE BEEN

01:43PM  8    ADDITIONAL ONES THAT THEY HAD THAT WERE SINGLE WORD COMMANDS

01:43PM  9    THAT FELL ON THAT HIERARCHY OR OTHER COMMANDS THAT THEY ADDED

01:43PM  10   WITHIN THAT HIERARCHY, SO IT MAINTAINED THE SAME HIERARCHY BUT

01:43PM  11   IT WASN'T A COPIED COMMAND.

01:43PM  12       AND SO RATHER THAN CREATE THAT AMBIGUITY, WE CHOSE TO GO

01:43PM  13   WITH THAT.  BUT IF YOUR HONOR FILTERS THINGS OUT, CLEARLY THEY

01:43PM  14   WOULDN'T BE COEXTENSIVE, THEY WOULD BE --

01:43PM  15           THE COURT:  SURE, THAT'S TRUE.

01:43PM  16           MR. NELSON:  RIGHT.

01:43PM  17       AND SO, I DON'T KNOW IF THAT EXPLAINS TO YOU WHAT WE ARE

01:43PM  18   TALKING ABOUT WITH RESPECT TO THE HIERARCHIES, BUT IF YOU HAVE

01:43PM  19   QUESTIONS, I CAN DEAL WITH IT, BUT I DON'T WANT TO JUST KEEP --

01:43PM  20           THE COURT:  OKAY.  NO, LET'S GO ON.

01:43PM  21           MR. NELSON:  OKAY.

01:43PM  22       SO -- NO, I'M NOT DONE YET, THAT WAS JUST HIERARCHIES.

01:43PM  23       SO YOUR HONOR ASKED THE QUESTIONS, A COUPLE OF QUESTIONS

01:43PM  24   ABOUT SOME OF THESE TWO-WORD COMMANDS.

01:44PM  25           THE COURT:  YEAH.

01:44PM 1      MR. NELSON:  AND HONESTLY, I WELCOME THIS PROCESS

01:44PM 2 BECAUSE I WANT TO KNOW HOW I'M TRYING MY CASE, RIGHT.

01:44PM 3      THE COURT:  SURE.

01:44PM 4      MR. NELSON:  I DON'T -- IF YOUR HONOR IS

01:44PM 5 UNCOMFORTABLE WITH SOMETHING OR IF I CAN'T GET YOU THERE WITH

01:44PM 6 THAT, I WANT TO TELL YOU WHAT I THINK MY EVIDENCE IS GOING TO

01:44PM 7 BE AND THEN WE CAN SEE.  BECAUSE I DON'T WANT TO TRY A CASE

01:44PM 8 WHERE I'M TELLING THE JURY IN OPENING THERE'S THESE 506

01:44PM 9 COMMANDS AND THEN, YOU KNOW, YOU DECIDE, OKAY, WELL 200 OF THEM

01:44PM 10 ARE GOING AWAY, RIGHT.  I WOULD RATHER HAVE AN INDICATION OF

01:44PM 11 THAT BECAUSE THAT HELPS ME.

01:44PM 12      THE COURT:  SURE.

01:44PM 13      MR. NELSON:  AND I THINK YOUR HONOR WOULD LIKE THAT

01:44PM 14 TOO BECAUSE IT MAKE ITS EASIER FOR THE JURY.

01:44PM 15    SO I WILL TELL YOU WHAT OUR REASONING IS AND DO THE BEST I

01:44PM 16 CAN WITH THAT, BUT I APPRECIATE THE OPPORTUNITY TO DO IT.

01:44PM 17    SO LET ME GO TO SLIDE 27, BECAUSE THIS IS ONE SPECIFICALLY

01:44PM 18 THAT YOU'VE ASKED ABOUT.  AND I TOTAL UNDERSTAND THE GESTALT,

01:44PM 19 RIGHT.  THERE'S NO QUESTION ABOUT THAT.  BUT WE HAVE TO LOOK AT

01:45PM 20 THE CONTEXT AND WHAT THE CHOICES ARE WITHIN THAT.

01:45PM 21    LIKE, SOMEBODY TOLD ME TO BE OR NOT TO BE, YOU KNOW, THAT'S

01:45PM 22 PRETTY SIMPLE, THOSE ARE SIMPLE WORDS, BUT WELL, IT WAS

01:45PM 23 PROTECTABLE AT ONE TIME, SOMEBODY WROTE IT NOW.

01:45PM 24    SO I THINK WE NEED TO GET PAST THAT MAYBE AND LET ME JUST

01:45PM 25 EXPLAIN TO YOU WHERE WE ARE AT ON THAT.

01:45PM  1        SO IF I LOOK AT SLIDE 27, AND THIS IS IN THE CONTEXT OF THE

01:45PM  2    HIERARCHIES MAKE SENSE TOO, SO THERE IS A CLOCK SET, RIGHT, AND

01:45PM  3    THERE'S ACTUALLY A COUPLE WITHIN THAT CLOCK HIERARCHY, THERE'S

01:45PM  4    ALSO CLOCK TIMEZONE.  CLOCK SET ACTUALLY DOESN'T DO WHAT YOU

01:45PM  5    THINK -- I WOULD THINK OKAY, IT SETS THE TIME ON THE CLOCK.

01:45PM  6            THE COURT:  IT'S NOT EVEN IN THIS HIERARCHY, IS IT?

01:45PM  7            MR. NELSON:  WELL, THIS IS A SEPARATE HIERARCHY ON

01:45PM  8    THE RIGHT, THAT'S THE SHOW.

01:45PM  9            THE COURT:  OKAY.  THAT'S THE "SHOW HIERARCHY."

01:45PM  10   OKAY.

01:45PM  11           MR. NELSON:  SO CLOCK SET ACTUALLY WILL DO THE

01:46PM  12   CURRENT MONTH, THE CURRENT YEAR, AND YOU CAN DO THE TIME AS

01:46PM  13   WELL.  SO THE FUNCTIONALITY IS THERE.  TIMEZONE, OF COURSE THAT

01:46PM  14   ONE WOULD DO, SET THE CURRENT TIMEZONE.

01:46PM  15       BUT -- SO THAT'S THE FUNCTIONALITY THAT'S EXPOSED.  BUT YOU

01:46PM  16   CAN SEE, AND THIS GOES BACK TO HOW YOU ORGANIZE THESE THINGS,

01:46PM  17   YOU COULD HAVE DONE SET CLOCK TOO, BECAUSE LET'S SAY YOU WANTED

01:46PM  18   TO CREATE A SET HIERARCHY AND JUST DO EVERYTHING YOU CAN SET IN

01:46PM  19   THE SYSTEM, LET'S PUT THAT UNDER A SET HIERARCHY, SO THERE

01:46PM  20   WOULD BE DIFFERENT STRUCTURE TO THAT PARTICULAR COMMAND.  NO

01:46PM  21   QUESTION ABOUT THAT.  AND THAT'S ILLUSTRATED HERE IN SHOW.

01:46PM  22       SO WITHIN THE "SHOW HIERARCHY" THERE IS A SHOW CLOCK,

01:46PM  23   RIGHT.

01:46PM  24       SO IT WAS SPECIFICALLY CHOSEN, I'M GOING TO PUT THAT IN AS

01:46PM  25   ONE OF THE THINGS YOU CAN SHOW AS OPPOSED TO PUTTING IT IN THE

01:46PM 1    CLOCK HIERARCHY AND SAYING CLOCK SHOW.

01:47PM 2        SO THOSE ARE CHOICES THAT ARE OUT THERE AND THERE ARE REAL

01:47PM 3    UI DIFFERENCES, RIGHT, IT'S A DIFFERENT SEQUENCE STRUCTURE

01:47PM 4    ORGANIZATION TO THE USER INTERFACE WHEN YOU MAKE THOSE CHOICES.

01:47PM 5        AND I SHOW JUNIPER OVER HERE BECAUSE THEY HAVE, AND YOU'VE

01:47PM 6    HEARD ABOUT THAT DURING THE CASE, THEY HAVE DIFFERENT, WHOLLY

01:47PM 7    DIFFERENT USER INTERFACE.  AND COMMANDS THAT THEY HAVE FOR

01:47PM 8    SIMILAR FUNCTIONALITY, THEY ACTUALLY HAVE A SET, YOU KNOW, THEY

01:47PM 9    PUT EVERYTHING UNDER SET AND THEY SAY SET DATE, AND --

01:47PM 10       THE COURT:  SO THIS HAS TO DO WITH THE CREATION OF A

01:47PM 11   HIERARCHY, THAT'S THE PROCESS HERE AS TO WHETHER IT'S CLOCK AND

01:47PM 12   THEN THE CLOCK FUNCTION CHOICES, OR WHETHER IT'S SET AND ALL

01:47PM 13   THE SET OPTIONS.

01:47PM 14       MR. NELSON:  CORRECT.  THAT'S A HIERARCHY ISSUE.

01:47PM 15       THE COURT:  OKAY, IT'S NOT A COMMAND --

01:47PM 16       MR. NELSON:  WELL, IT'S -- AS YOUR HONOR --

01:48PM 17       THE COURT:  BECAUSE THE COMMAND IS THE RESULT OF THE

01:48PM 18   HIERARCHY, THERE'S NOTHING --

01:48PM 19       MR. NELSON:  IN THAT CONTEXT WITH RESPECT TO THAT

01:48PM 20   PARTICULAR CHOICE.

01:48PM 21       THE COURT:  SO IT SEEMS TO ME THERE'S NOTHING

01:48PM 22   SEPARATELY CREATIVE ABOUT THE COMMAND, IT'S ALL IN THE

01:48PM 23   HIERARCHY CREATION.  AND THE COMMANDS JUST ARE PUSHED OUT,

01:48PM 24   THERE'S NOTHING THAT HAPPENS NEW AND APART FROM THE HIERARCHY.

01:48PM 25       MR. NELSON:  WELL, YOU ARE TALKING ABOUT THE SHORT

01:48PM  1    COMMANDS?

01:48PM  2              THE COURT:  AUTOMATIC OF THEM, ACTUALLY.  I MEAN,

01:48PM  3    THAT'S WHERE, BECAUSE IT SEEMS TO ME THAT EVERY COMMAND EXISTS

01:48PM  4    AS PART OF A HIERARCHY.

01:48PM  5              MR. NELSON:  ACTUALLY, NO.

01:48PM  6              THE COURT:  NO?

01:48PM  7              MR. NELSON:  IT WOULD SEEM THAT WAY BECAUSE THAT'S

01:48PM  8    THE WAY WE CHOSE TO ILLUSTRATE THE HIERARCHIES, BUT THEY ARE

01:48PM  9    NOT COEXTENSIVE.

01:48PM  10       WE HAVE PLENTY OF COMMANDS THAT ARE ASSERTED IN THE CASE,

01:48PM  11   AND I CAN GIVE YOU SOME OF THOSE EXAMPLES AND CERTAINLY WITHIN

01:48PM  12   THE UI THAT ARE NOT A PARTICULAR PART OF A HIERARCHY.

01:48PM  13             THE COURT:  OKAY.

01:48PM  14             MR. NELSON:  THE OTHER THING IS AS YOU TRACE DOWN,

01:48PM  15   YOU WILL SEE FOR EXAMPLE, IF I JUST STICK WITH SLIDE 27, AND I

01:48PM  16   GO FOLLOWING THE "SHOW HIERARCHY," I HAVE SNMP.

01:49PM  17       AND REMEMBER SHOW IS -- THERE'S NOTHING DICTATIVE ABOUT

01:49PM  18   THAT, THERE WILL BE TESTIMONY THAT YOU COULD USE DISPLAY, YOU

01:49PM  19   COULD USE PRINT, THAT WAS -- THERE'S A NUMBER OF THINGS THAT

01:49PM  20   PEOPLE WOULD USE AND THEY WOULD KNOW, YOU KNOW, IN THE INDUSTRY

01:49PM  21   WHAT IT IS THAT YOU ARE TALKING ABOUT, OR AT LEAST GENERALLY.

01:49PM  22       BUT YOU SEE I HAVE SHOW SNMP.  AND AGAIN, YOU HAD CHOICES

01:49PM  23   ABOUT SNMP AND WHAT YOU DECIDED TO CALL THAT.  BUT THEN THERE'S

01:49PM  24   ALL SORTS OF THINGS OFF OF THAT.  AND THOSE ARE ALL DIFFERENT

01:49PM  25   CHOICES THAT WERE MADE.

01:49PM   1        SO THIS HIERARCHY, BECAUSE SNMP, THIS WAS CHOSEN TO PLACE

01:49PM   2   IN THE CHILD OF THE SHOW HIERARCHY, IT DIDN'T DICTATE WHAT THE

01:49PM   3   COMMAND WAS --

01:49PM   4        THE COURT:  RIGHT.

01:49PM   5        MR. NELSON:  IT MAY BE BECAUSE OF THOSE HIERARCHIES,

01:49PM   6   THAT GIVES YOU SOME ORGANIZATIONAL STRUCTURE, SOME GUIDELINES

01:50PM   7   AS TO HOW IT IS THAT YOU MIGHT STRUCTURE THE COMMAND IN TERMS

01:50PM   8   OF HOW YOU ARE GOING TO PLACE THE DESCRIPTIONS ON WHAT YOU WANT

01:50PM   9   TO CALL THE VARIOUS FUNCTIONALITIES OR ACTIONS OR THINGS YOU

01:50PM   10  ARE OPERATING UPON.  WHETHER THERE'S FLEXIBILITY THERE SO IT

01:50PM   11  MAY GIVE GUIDELINES.  BUT THE ONE DOESN'T RESULT FROM THE

01:50PM   12  OTHER.

01:50PM   13       I FULLY AGREE THAT THERE'S AN INTERRELATIONSHIP, THERE'S

01:50PM   14  THE INTERRELATIONSHIP BETWEEN ALL THE ELEMENTS OF THIS UI, IT

01:50PM   15  IS A USER INTERFACE, SO EVEN THOUGH WE TALK ABOUT THINGS AS

01:50PM   16  SEPARATE AND DISTINCT ELEMENTS, THEY ALL DO HAVE SOME

01:50PM   17  RELATIONSHIP, THERE'S NO QUESTION ABOUT THAT.

01:50PM   18       THE COURT:  OKAY.

01:50PM   19       MR. NELSON:  SO YOU CAN SEE WITH JUNIPER FOR SIMILAR

01:50PM   20  FUNCTIONALITY, IT SHOES SOMETHING DIFFERENT, IT SHOWS SET DATE.

01:50PM   21  AND THAT WOULD BE ONE OF THE THINGS YOU COULD GO IN THERE AND

01:50PM   22  YOU COULD SET THE CLOCK.

01:50PM   23       AND JUST TO ILLUSTRATE TOO, YOU WILL SEE WITHIN THIS "SHOW

01:50PM   24  HIERARCHY," THAT WE HAVE, WE HAVE SHOW PTP, WHICH IS A

01:51PM   25  PARTICULAR PROTOCOL.  AND THE CLOCK THERE, AS OPPOSED TO SAYING

01:51PM 1    CLOCK, SHOW, PTP, AND JUNIPER FOR DOING THAT, DECIDED TO DO SET

01:51PM 2    DATE NTP.

01:51PM 3        SO THERE ARE OPTIONS AVAILABLE, THERE ARE DIFFERENT WAYS TO

01:51PM 4    DO IT.  AND OTHER PEOPLE IN THIS INDUSTRY CHOSE TO DO THAT

01:51PM 5    DIFFERENTLY.

01:51PM 6        NOW YOUR HONOR MAY THINK, OKAY, DESPITE THAT, YOU KNOW, I

01:51PM 7    THINK THAT THIS IS -- THIS IS A TOUGH ONE, RIGHT.  AND THAT WAS

01:51PM 8    WHY YOU ASKED ABOUT THAT ONE --

01:51PM 9        THE COURT:  I GUESS WHAT WE GET DOWN TO THEN IS THAT

01:51PM 10   BASED ON THESE EXAMPLES, FOR EXAMPLE, IF ARISTA HAD SET CLOCK,

01:51PM 11   AS OPPOSED TO CLOCK SET, THERE WOULD BE NO COPYING.

01:51PM 12       MR. NELSON:  CORRECT.  AND SEE, THAT'S AN IMPORTANT

01:51PM 13   POINT HERE.

01:51PM 14       THE COURT:  THEN OF COURSE WE WERE ALL THE WAY AT

01:51PM 15   THIN PROTECTION HERE BECAUSE IT HAS TO BE VIRTUALLY IDENTICAL.

01:51PM 16   AND THE ORDER YOU ARE TELLING ME IS A CRITICAL PART OF THE

01:51PM 17   CREATIVE PROCESS WHEN THE CHOICE IS MADE.

01:52PM 18       MR. NELSON:  CORRECT.  YOU WILL HEAR THAT -- YOU WILL

01:52PM 19   HEAR TESTIMONY ON THAT.

01:52PM 20       THE COURT:  OKAY.

01:52PM 21       MR. NELSON:  WELL, THAT IS TRUE --

01:52PM 22       THE COURT:  BECAUSE THAT MAY RESOLVE SOME OF THE

01:52PM 23   ISSUES, THAT GETS US CLOSER TO SOME OF THE OTHER ISSUES THAT

01:52PM 24   NEED TO BE RESOLVED IN THE JURY INSTRUCTIONS.

01:52PM 25       MR. NELSON:  I AGREE.  I AGREE.

01:52PM 1      AND SEE, THERE'S SOMETHING YOU SAID THIS MORNING THAT I

01:52PM 2   THINK IS RELEVANT TO THIS POINT AND SOMETHING YOUR HONOR JUST

01:52PM 3   SAID, SO WE'RE NOT GOING IN AND SAYING, AND I THINK I DID THIS

01:52PM 4   EARLIER, TALKED ABOUT THIS EARLIER, WE ARE NOT GOING IN AND

01:52PM 5   SAYING OKAY, LIKE THE ONE I SAID BEFORE, IF YOU PUT PORTFAST

01:52PM 6   BEFORE SPANNING-TREE, IT REALLY DOES THE SAME THING, IT LOOKS

01:52PM 7   THE SAME AND THEREFORE YOU ARE STILL INFRINGING, YOU COPIED

01:52PM 8   THAT ELEMENT.

01:52PM 9      I DON'T EVEN KNOW HOW TO USE THAT TERMINOLOGY BECAUSE WE

01:52PM 10  ARE TALKING ABOUT WHAT EVIDENCE I CAN USE TO SHOW INFRINGEMENT.

01:52PM 11  BUT LET'S JUST, YOU KNOW, USE THAT FOR SHORTHAND.

01:52PM 12     THAT'S NOT WHAT WE ARE SAYING.  WE ARE NOT SAYING IT HERE.

01:52PM 13  IF THEY DID SOMETHING LIKE JUNIPER AND SAID, SET CLOCK OR SET

01:52PM 14  DATE OR CHOSE TO DO THAT, THIS WOULDN'T BE ONE OF THE ELEMENTS

01:53PM 15  THAT WE PUT IN THERE.

01:53PM 16          THE COURT:  OKAY.

01:53PM 17          MR. NELSON:  BECAUSE -- THAT'S SOME OF YOUR HONOR'S

01:53PM 18  CONCERN, BECAUSE YOU DON'T WANT TO HAVE BASICALLY SOME ELEMENTS

01:53PM 19  AND KIND OF SHUTTING OFF ALL THE OPTIONS WITH RESPECT TO THAT.

01:53PM 20     BUT REMEMBER, THAT'S NOT HOW WE GOT HERE, RIGHT.  WE DIDN'T

01:53PM 21  GET HERE BECAUSE THEY HAPPENED TO HAVE SOME THINGS THAT WERE

01:53PM 22  SIMILAR WITH NO ACCESS TO THE WORK OR ANYTHING ALONG THOSE

01:53PM 23  LINES.

01:53PM 24     AND THEN IT BECOMES MORE IMPORTANT IT FILTER THINGS,

01:53PM 25  BECAUSE THAT'S KIND OF THE POINT, AT LEAST WHEN I READ THE

01:53PM  1     CASES BEHIND FILTRATION IS, YEAH, THERE'S SIMILARITIES, BUT I

01:53PM  2     DO NOT WANT YOU TO HAVE OVERWHELMING EVIDENCE AND SIMILARITIES

01:53PM  3     THAT ARE REALLY OUT THERE.

01:53PM  4          THIS IS, THEY SPECIFICALLY SET OUT TO COPY SO THAT THEY

01:53PM  5     COULD RECREATE THE CISCO CLI SO THEY COULD GO TO CISCO

01:53PM  6     CUSTOMERS AND SAY HEY, I'M A 99.999 PERCENT DROP IN REPLACEMENT

01:53PM  7     FOR YOU.

01:53PM  8          SO THIS ISN'T A SITUATION WHERE WE ARE TRYING TO OVER

01:54PM  9     EXTEND AND THEREFORE YOU'VE GOT TO FILTER THOSE THINGS OUT.

01:54PM  10    THIS IS JUST FURTHER EVIDENCE OF THAT DIRECT COPYING.

01:54PM  11         SO I WOULD SUBMIT IT'S A BIT OF A DIFFERENT CASE.  AND

01:54PM  12    MAYBE THAT RESOLVES SOME OF THE ISSUES HERE BECAUSE THAT'S WHAT

01:54PM  13    WE ARE GOING IT TALK ABOUT.  BUT, YOU KNOW, ON SET CLOCK OR

01:54PM  14    EXCUSE ME, CLOCK SET, BECAUSE I'M NOT CLAIMING SET CLOCK FOR

01:54PM  15    SURE, THAT'S REALLY, THAT'S IT, THAT'S WHAT THE EVIDENCE WOULD

01:54PM  16    BE.  I DON'T HAVE, YOU KNOW, ANY KIND OF MAGIC WITH RESPECT TO

01:54PM  17    THAT.  I'M JUST GIVING YOU WHAT IS GOING TO BE OUT THERE.

01:54PM  18         SO I MEAN, IF THAT'S SOMETHING, GIVEN ALL THAT, YOUR HONOR

01:54PM  19    IS COMFORTABLE WITH, OKAY.  IF IT'S NOT, IF YOU GIVE US SOME

01:54PM  20    GUIDELINES IN TERMS OF WHAT YOU ARE COMFORTABLE WITH, WE ARE

01:54PM  21    PERFECTLY HAPPY TO TRY TO DISCUSS WITH THE OTHER SIDE AND

01:54PM  22    RESOLVE SOMETHING SO THAT YOU'RE COMFORTABLE WITH IT.

01:54PM  23         AND I MEAN, I'M NOT HIDING ANYTHING, YOU KNOW THE REASON

01:55PM  24    WHY.

01:55PM  25              THE COURT:  SURE.

01:55PM  1          MR. NELSON:  SO -- ALL RIGHT.  SO THAT'S THE CLOCK

01:55PM  2    SET.

01:55PM  3          SO THEN LET ME TALK ABOUT SHOW INVENTORY A BIT, BECAUSE

01:55PM  4    THAT'S ANOTHER ONE.  AND THIS ONE IS A LITTLE BIT OF A

01:55PM  5    DIFFERENT REASON.

01:55PM  6          SO IF I GO TO SLIDE 43, OKAY, THIS IS SOME TESTIMONY FROM

01:55PM  7    MR. REMAKER WHO HE WAS ON THE PARSER POLICE COMMITTEE, FOR LACK

01:55PM  8    OF A BETTER TERM, PARSER POLICE FORCE, MAYBE THAT'S A GOOD

01:55PM  9    TERM.

01:55PM 10          SO HE SAYS HERE, THIS IS IN HIS DEPOSITION TALKING ABOUT

01:55PM 11    THE SHOW INVENTORY.  WHAT IS THE FUNCTIONALITY, WHAT FUNCTION

01:55PM 12    IS PERFORMED BY THE SHOW INVENTORY COMMAND?  THE SHOW INVENTORY

01:55PM 13    COMMAND PROVIDES A LIST OF ALL THE HARDWARE ITEMS IN A SPECIFIC

01:55PM 14    CISCO DEVICE, INCLUDING THEIR PART NUMBER, VERSION NUMBER,

01:55PM 15    SERIAL NUMBER AND NAME, TO THE EXTENT THAT THAT INFORMATION IS

01:55PM 16    AVAILABLE.

01:55PM 17          OKAY.  SO THAT'S THE FUNCTIONALITY.  IF I GO TO THE NEXT

01:56PM 18    SLIDE, NOW, HERE, AND I DON'T WANT TO READ ALL OF THIS BECAUSE

01:56PM 19    THAT SLOWS US DOWN, BUT BASICALLY WHAT HE WAS ASKED IS WHAT ARE

01:56PM 20    SOME OF THE OTHER OPTIONS?

01:56PM 21          AND HE LISTS, YOU KNOW, 6 OR 8 OTHER OPTIONS THAT WOULD

01:56PM 22    STILL BE CONSISTENT WITH THE HIERARCHY THAT CISCO HAD IN PLACE,

01:56PM 23    MEANING THIS IS GOING TO BE PART OF THE SHOW HIERARCHY BECAUSE

01:56PM 24    THAT'S WHAT WE THINK IT SHOULD BE.  SO THAT WAS -- THAT HAD

01:56PM 25    BEEN RESOLVED.

01:56PM   1        BUT EVEN WITHIN THAT, HERE'S A WHOLE BUNCH OF DIFFERENT

01:56PM   2   CHOICES THAT IT COULD HAVE HAD.  AND THEN THERE'S SOME

01:56PM   3   ADDITIONAL TESTIMONY ABOUT WHY YOU SETTLED ON THAT ONE.

01:56PM   4        AND NOW IT TURNS OUT, IF YOU GO TO THE NEXT SLIDE, THERE

01:56PM   5   ACTUALLY IS SOME INDUSTRY STANDARD DOCUMENTATION WITH RESPECT

01:56PM   6   TO THIS.

01:56PM   7        AND THAT TYPE OF THE DESCRIPTION THAT I READ OF WHAT IT IS,

01:57PM   8   THE INFORMATION IT'S TRYING TO GIVE YOU, THAT'S ACTUALLY IN THE

01:57PM   9   INDUSTRY REFERRED TO AS MODULE IDENTITY, RIGHT.

01:57PM  10        SO THE MORE NATURAL WAY WOULD BE TO SHOW MODULE OR SHOW

01:57PM  11   IDENTITY.  AND IN FACT, THAT'S WHAT OTHER PEOPLE DO, YOU KNOW,

01:57PM  12   THOSE KINDS OF COMMANDS.  CISCO CHOSE SHOW INVENTORY.

01:57PM  13        AND SO IT ACTUALLY IS A COUNTER INTUITIVE, IT'S SOMETHING

01:57PM  14   THAT IS A UNIQUE THING TO CISCO AND WOULD ACTUALLY BE COUNTER

01:57PM  15   TO IF YOU WERE JUST TRYING TO STICK WITH PURELY INDUSTRY

01:57PM  16   STANDARD TERMINOLOGY WHERE YOU DIDN'T HAVE, YOU KNOW, OPTIONS

01:57PM  17   AND THINGS LIKE THAT, YOU WOULD HAVE PICKED SOMETHING

01:57PM  18   DIFFERENT.

01:57PM  19        SO THERE CERTAINLY ARE EXAMPLES OF THAT AS WELL IN HERE.  I

01:57PM  20   DON'T THINK I NEED TO GO THROUGH TOO MUCH MORE, THERE'S JUST

01:57PM  21   ADDITIONAL TESTIMONY AND SOME DOCUMENTATION ON THAT.

01:58PM  22        SO LET ME TALK ABOUT THE MODES AND PROMPTS THEN --

01:58PM  23             THE COURT:  OKAY.

01:58PM  24             MR. NELSON:  BECAUSE I THINK YOU HAD SOME CONCERNS

01:58PM  25   ABOUT THAT.

01:58PM   1          THE COURT:  AND PART OF IT MAY REALLY NOT BEING ABLE

01:58PM   2   TO UNDERSTAND WHAT THE MODES AND PROMPTS ARE.

01:58PM   3          MR. NELSON:  SO I DON'T THINK I NEED TO SPEND A LOT

01:58PM   4   OF TIME ON OUTPUTS.

01:58PM   5      AND THE HELP DESCRIPTIONS, A LOT OF IT IS THE SAME ISSUES

01:58PM   6   THAT WERE -- THAT I ALREADY COVERED.  SO I DON'T NEED TO REPEAT

01:58PM   7   ALL OF THAT.

01:58PM   8          THE COURT:  I DON'T THINK YOU DO.

01:58PM   9          MR. NELSON:  SO IF WE LOOK AT SLIDE 28, YOU KNOW,

01:58PM  10   THESE SCREEN OUTPUTS THAT WE ARE TALKING ABOUT ARE PRETTY

01:58PM  11   EXPANSIVE, THERE'S A LOT OF STUFF, WHAT INFORMATION YOU CHOOSE

01:58PM  12   TO PUT IN THERE, HOW YOU CHOOSE TO STRUCTURE IT, SET IT UP SO

01:58PM  13   IT MAKES SENSE TO ONE OF THESE ENGINEERS.

01:58PM  14      SO I'M NOT REALLY SURE THERE'S A WHOLE BUNCH OF DISPUTE

01:58PM  15   ABOUT THAT BECAUSE WE ARE NOT TALKING ABOUT SINGLE WORDS OR

01:58PM  16   THINGS LIKE THAT.

01:58PM  17          THE COURT:  OKAY.

01:59PM  18          MR. NELSON:  SO LET ME THEN GO TO SLIDE 30, AND THE

01:59PM  19   MODES AND PROMPTS AND EXPLAIN A LITTLE BIT WHAT WE ARE

01:59PM  20   CLAIMING.

01:59PM  21      AND I'M PROBABLY THE BEST PERSON TO DO THIS BECAUSE I

01:59PM  22   DIDN'T UNDERSTAND AND IT HAD TO BE EXPLAINED TO ME A FEW TIMES.

01:59PM  23      BECAUSE YOU WILL NOTICE, I FORGET EXACTLY THE LANGUAGE, BUT

01:59PM  24   THE DESCRIPTION THAT WE HAD GIVEN IS WE ARE NOT CLAIMING AN

01:59PM  25   INDIVIDUAL MODE STANDING BY ITSELF, RIGHT, SO NOT USER EXEC,

01:59PM  1      PRIVILEGE EXEC, GLOBAL CONFIG, INTERFACE CONFIGURATION, NOT

01:59PM  2      THOSE MODES STANDING BY THEMSELVES AND THE ASSOCIATED PROMPTS

01:59PM  3      WITH THOSE PARTICULAR MODES, ALTHOUGH THERE ARE TWO OF THESE

01:59PM  4      THAT ARE, GLOBAL CONFIGURATION AND INTERFACE CONFIGURATION THAT

01:59PM  5      ARE ORIGINAL TO CISCO BASED UPON THE EVIDENCE IN THE CASE.

01:59PM  6           WHAT WE SAY IS IT'S THE SPECIFIC RELATIONSHIP BETWEEN THOSE

01:59PM  7      MODES.  IN OTHER WORDS, HOW THOSE MODES INTERRELATE IN THE USER

01:59PM  8      INTERFACE.

01:59PM  9           AND THIS DOCUMENT I THOUGHT WAS PRETTY GOOD TO EXPLAIN

02:00PM  10     THAT, BECAUSE IF WE SEE HERE, YOU GOT USER EXEC MODE, AND I

02:00PM  11     THINK OF THAT AS BEING KIND OF A TOP LEVEL MODE THAT YOU ENTER

02:00PM  12     INTO.

02:00PM  13          SO YOU LOG IN, AND IT GIVES A PARTICULAR PROMPT.  SO YOU

02:00PM  14     ARE NOW IN USER EXEC MODE.  WELL, HOW DO YOU GET TO PRIVILEGE

02:00PM  15     EXEC MODE, RIGHT?  WELL, PRIVILEGE EXEC MODE, IT'S FROM USER

02:00PM  16     EXEC MODE, YOU ISSUE THE ENABLE COMMAND.  SO THAT'S HOW YOU GET

02:00PM  17     THERE.  YOU WOULD BE IN THE ONE, IN EXEC MODE, YOU GET THERE

02:00PM  18     FIRST AND THEN YOU GET TO THE PRIVILEGE EXEC MODE.

02:00PM  19          AND THAT GIVES YOU A DIFFERENT PROMPT THAT TELLS YOU THERE.

02:00PM  20          NOW HOW DO YOU GET TO GLOBAL CONFIG THEN.  WELL FROM

02:00PM  21     PRIVILEGE EXEC MODE YOU ISSUE THE CONFIGURE TERMINAL COMMAND.

02:00PM  22     SO AGAIN THERE'S A RELATIONSHIP, YOU GO FROM ONE TO THE NEXT TO

02:00PM  23     THE NEXT IN A PARTICULAR WAY.

02:00PM  24          AND THEN FINALLY AN INTERFACE CONFIG, YOU DO THAT AS WELL

02:00PM  25     FROM THE GLOBAL CONFIG MODE, THE HISTORY OF THE INTERFACE

02:01PM   1    COMMAND AND YOU GO THERE.

02:01PM   2         AND WHAT WE ARE SAYING IS THEY HAVE THOSE MODES WHICH

02:01PM   3    FRANKLY ARE THE FOUR MAIN MODES, THE FOUR MOST IMPORTANT MODES

02:01PM   4    IN THE CLI, AND THEY HAVE EXACTLY THE SAME RELATIONSHIP.  YOU

02:01PM   5    GO FROM ONE TO THE OTHER IN THE SAME PARTICULAR WAY.

02:01PM   6         SO THAT'S --

02:01PM   7              THE COURT:  I GUESS I'M NOT WITH YOU ON THAT.

02:01PM   8         SO IF YOU ARE IN USER EXEC AND YOU GET, I'M NOT

02:01PM   9    UNDERSTANDING HOW IT WORKS, I'M SORRY.

02:01PM  10              MR. NELSON:  YEAH.  SO YOU HAVE TO GO TO USER EXEC

02:01PM  11    FIRST, RIGHT.  I WILL TELL YOU APPLY UNDERSTANDING --

02:01PM  12              THE COURT:  I MEAN, DO YOU PHYSICALLY TYPE THAT IN,

02:01PM  13    USER EXEC?

02:01PM  14              MR. NELSON:  NO, YOU LOG IN.  YOU LOG INTO THE

02:01PM  15    SWITCH.  AND THAT PUTS YOU IN USER EXEC MODE.

02:01PM  16              THE COURT:  THEN YOU ARE THERE.

02:01PM  17              MR. NELSON:  THEN YOU ARE THERE.  AND YOU WILL GET

02:01PM  18    THIS ROUTER WITH THE CARROT SIGN.  YOU WILL GET THAT PROMPT.

02:01PM  19    AND THAT TELLS YOU HEY, YOU ARE IN USER EXEC MODE.

02:01PM  20              THE COURT:  OKAY.

02:01PM  21              MR. NELSON:  NOW ONCE YOU ARE THERE, YOU CAN ISSUE A

02:01PM  22    COMMAND.  YOU CAN ISSUE OTHER COMMANDS TOO, RIGHT, BECAUSE

02:01PM  23    THERE'S CERTAIN COMMANDS THAT ARE AVAILABLE, BUT IF YOU WANT TO

02:02PM  24    GO TO PRIVILEGE EXEC MODE, YOU ARE IN THAT.

02:02PM  25         SO YOU HAVE THAT CARROT, THE ROUTER PROMPT OR THE CARROT

02:02PM 1    SIGN, AND YOU ISSUE THE ENABLE COMMAND.  YOU SAY ENABLE.  SO

02:02PM 2    YOU TYPE THAT IN.  AND THAT WILL PUT YOU INTO PRIVILEGE EXEC

02:02PM 3    MODE.

02:02PM 4        SO NOW YOU ARE IN PRIVILEGE EXEC MODE.  HOW DO YOU KNOW YOU

02:02PM 5    ARE IN PRIVILEGE EXEC MODE?  BECAUSE NOW YOU WILL GET THE POUND

02:02PM 6    SIGN.

02:02PM 7            THE COURT:  OKAY.

02:02PM 8            MR. NELSON:  NOW THEN, AND THERE'S CERTAIN OTHER

02:02PM 9    THINGS YOU CAN DO, RIGHT, IN PRIVILEGE EXEC MODE, IT'S A

02:02PM 10   DIFFERENT MODE OF OPERATION.

02:02PM 11           THE COURT:  SO THAT'S YOUR LAST COLUMN THERE, THAT'S

02:02PM 12   WHAT YOU CAN DO IN THAT PRIVILEGE EXEC MODE, THOSE ARE THE

02:02PM 13   THINGS YOU CAN DO?

02:02PM 14           MR. NELSON:  YEAH, THAT'S TELLING YOU THE TYPES OF

02:02PM 15   FUNCTIONS AND ACCESS THAT YOU HAVE IN THAT PARTICULAR MODE.

02:02PM 16       SO THEN WHEN YOU'RE IN PRIVILEGE EXEC MODE AND YOU HAVE

02:02PM 17   THAT POUND SIGN, YOU KNOW, PROMPT, YOU CAN TYPE IN CONFIGURE

02:03PM 18   TERMINAL THERE AND THAT WILL PUT YOU INTO WHAT'S CALLED GLOBAL

02:03PM 19   CONFIGURATION MODE.  AND THAT GIVES YOU THIS OTHER PROMPT, THE

02:03PM 20   ROUTER CONFIG AND THEN THE POUND SIGN.  SO IT GIVES YOU A

02:03PM 21   DIFFERENT PROMPT TO TELL YOU THAT THAT'S WHERE YOU ARE.

02:03PM 22       AND THEN FROM THAT MODE, ONCE YOU ARE IN THERE AND YOU HAVE

02:03PM 23   THAT PROMPT, IF YOU WANT TO GO TO INTERFACE CONFIGURATION YOU

02:03PM 24   ISSUE THE INTERFACE COMMAND AND THEN YOU GET THE OTHER PROMPT

02:03PM 25   TO GO IN THERE.

02:03PM  1    SO WHAT WE ARE SAYING IS, WHAT'S THAT THEY HAVE IS THOSE

02:03PM  2   SAME MODES OF OPERATION, BUT WE ARE NOT SAYING, HEY, IF ALL YOU

02:03PM  3   HAD WAS USER EXEC, THEN PRIVILEGE EXEC MODE AND GLOBAL CONFIG

02:03PM  4   AND INTERFACE CONFIG STANDING ALONE AND YOU DIDN'T HAVE THE

02:03PM  5   INTERRELATIONSHIP, WE WOULDN'T BE CLAIMING THAT.

02:03PM  6    THEY HAVE THE SAME INTERRELATIONSHIP, THE SAME FLOW THROUGH

02:03PM  7   THE MODES.  IN OTHER WORDS, YOU GET INTO USER EXEC MODE, YOU

02:03PM  8   GET THE SAME PROMPT.  YOU GET INTO PRIVILEGE EXEC MODE, THE

02:03PM  9   SAME WAY, FROM PRIVILEGE EXEC MODE INTO GLOBAL CONFIG MODE YOU

02:04PM  10   GET THERE THE SAME WAY.

02:04PM  11    THE COURT:  NOT EVERYONE HAS ACCESS, THESE ARE

02:04PM  12   RESTRICTED MODES.

02:04PM  13    MR. NELSON:  THEY MAY VERY WELL BE.

02:04PM  14    MR. PAK:  YES, YOUR HONOR.  SOME OF THE MODES REQUIRE

02:04PM  15   PASSWORD PROTECTION.

02:04PM  16    MR. NELSON:  RIGHT.

02:04PM  17    THE COURT:  BUT YOU HAVE TO GO THROUGH, YOU HAVE TO

02:04PM  18   START AT USER EXEC AND WORK YOUR WAY THROUGH EACH OF THESE --

02:04PM  19    MR. NELSON:  THAT'S CORRECT.

02:04PM  20    THE COURT:  SO THIS IS REALLY A PATH THROUGH.  YOU

02:04PM  21   CAN'T GO DIRECTLY INTO INTERFACE CONFIGURATION.

02:04PM  22    MR. NELSON:  YEAH, THAT'S RIGHT.

02:04PM  23    AND THAT IS -- THAT'S THE SAME WAY THAT THEY CHOSE TO SET

02:04PM  24   THEIRS UP, WHICH IS WHAT WE ARE SAYING, IS THAT ELEMENT IS

02:04PM  25   PROTECTABLE AND MAKES IT LOOK MORE LIKE, MAKES IT LOOK LIKE THE

02:04PM 1    CISCO CLI.

02:04PM 2         SO THAT'S WHAT WE ARE CLAIMING WITH RESPECT TO MODES AND

02:04PM 3    PROMPTS.

02:04PM 4        I MEAN, AGAIN, IT SEEMS TO ME THAT THEIR --

02:04PM 5             THE COURT:  SO IT'S THIS PARTICULAR PATH.

02:04PM 6             MR. NELSON:  YEAH, THE PARTICULAR RELATIONSHIP

02:04PM 7    BETWEEN THE MODES AND PROMPTS, YOU KNOW, THAT THEY USE THAT

02:04PM 8    EXACTLY THE SAME COMBINATION.

02:05PM 9             THE COURT:  SO THE PROMPT OBVIOUSLY COULD BE ANYTHING

02:05PM 10   UNLESS -- THESE DON'T LOOK FUNCTIONAL TO ME BUT THEY COULD BE

02:05PM 11   INDUSTRY STANDARD, THAT I DON'T KNOW.  I WILL HEAR ABOUT THAT

02:05PM 12   IN A MINUTE.  THESE ARE COMMON SYMBOLS, BUT I DON'T KNOW WHAT

02:05PM 13   THEY MEAN IN THE INDUSTRY.

02:05PM 14             MR. NELSON:  RIGHT.  EXACTLY.

02:05PM 15        SO WE ARE NOT SAYING THAT ANY OF THOSE THINGS STANDING

02:05PM 16   ALONE, RIGHT, IT IS, AS YOUR HONOR SAID, THAT

02:05PM 17   INTERRELATIONSHIP, THE PATH WHICH WOULD INCLUDE THE PATH

02:05PM 18   THROUGH THERE.

02:05PM 19             THE COURT:  SO IT'S THE IDENTICAL MODE AND PROMPT FOR

02:05PM 20   EACH OF YOUR FOUR VERSIONS THAT ARE YOUR WORKS.

02:05PM 21             MR. NELSON:  YEAH, EXACTLY.

02:05PM 22             THE COURT:  OKAY.

02:05PM 23             MR. NELSON:  AND AGAIN, WE HAVE COPYING OF THAT,

02:05PM 24   THAT'S WHAT THE EVIDENCE IS GOING TO BE, THAT THEY SAT DOWN TO

02:05PM 25   DO THAT.

02:05PM  1      SO WE ARE NOT TRYING TO EXPAND THE PROTECTION, WHICH IS

02:05PM  2   KIND OF WHAT THEY INTIMATED IN THE BRIEF, SAYING OH, WELL OTHER

02:05PM  3   PEOPLE GOT USER EXEC MODE.

02:05PM  4      THAT'S NOT WHAT WE ARE SAYING.  WE ARE NOT SAYING HEY IF

02:05PM  5   YOU JUST HAD USER EXEC MODE AND THAT WAS IT, THAT WOULD BE

02:05PM  6   SOMETHING WE COULD ARGUE WAS COPYRIGHT INFRINGEMENT, AN ELEMENT

02:06PM  7   OF IT THAT I COULD PROVE.

02:06PM  8      AND THE SAME WITH PRIVILEGE EXEC MODE, AND WE PROBABLY

02:06PM  9   COULD HAVE WITH GLOBAL CONFIG AND INTERFACE CONFIG, BUT WE

02:06PM 10   DIDN'T CHOOSE TO DO THAT.

02:06PM 11           MR. PAK:  THE LAST TWO MODES IN THE RED BOX, WE

02:06PM 12   CALLED THEM CISCO ORIGINALS.  JUST TO CLARIFY FOR YOUR HONOR

02:06PM 13   THAT THOSE ARE MODES WE CREATED AND NO ONE ELSE HAD.

02:06PM 14      SO THIS ISN'T SIMPLY AN ISSUE OF TAKING EXISTING MODES THAT

02:06PM 15   PREDATED US, THESE ARE MODES THAT MR. LOUGHEED CREATED ON HIS

02:06PM 16   OWN, DOCTOR BLACK AND OTHERS FROM ARISTA HAVE NOT FOUND ANY

02:06PM 17   OTHER SYSTEM THAT HAD THIS PARTICULAR GLOBAL CONFIGURATION AND

02:06PM 18   INTERFACE CONFIGURATION MODE.

02:06PM 19      BUT JUST TO BE ABSOLUTELY CLEAR ON THE PROTECTABILITY

02:06PM 20   FINDING, WE ARE NOT CLAIMING ORIGINALITY JUST IN A SEPARATE

02:06PM 21   RULE, WE ARE SAYING WHEN YOU LOOK AT THIS COLLECTION OF THINGS,

02:06PM 22   THESE FOUR MODES AND PROMPTS, AS MR. NELSON TALKED ABOUT, HOW

02:06PM 23   YOU SEQUENCE THROUGH THEM AND HOW THEY WORK TOGETHER AS A

02:06PM 24   GROUP, NO ONE HAD THAT BEFORE WE DID.  AND ARISTA COPIED IT

02:06PM 25   BECAUSE THEY WANTED TO REPLICATE THE EXPERIENCE, AND THAT'S THE

02:07PM 1   BASIS FOR THE COPYRIGHT INFRINGEMENT CLAIM.

02:07PM 2            THE COURT:  SO I MEAN, YOU REALLY ARE ONLY ALLEGING

02:07PM 3   THAT IT'S COPIED IF IT'S COPIED EXACTLY.

02:07PM 4            MR. PAK:  CORRECT, YOUR HONOR.

02:07PM 5        THE FOUR SEQUENCES, THE FOUR MODES AND PROMPTS WITH THOSE

02:07PM 6   SPECIFIC PROMPTS.

02:07PM 7        AND THEN WE ARE NOT SAYING, JUST BECAUSE I MENTIONED IT, I

02:07PM 8   DIDN'T HAVE A CHANCE TO HAVE MR. NELSON INCORPORATE THIS INTO

02:07PM 9   HIS PRESENTATION, BUT IF WE COULD PUT UP, THIS IS IN

02:07PM 10  DR. ALMEROTH'S OPENING REPORT WHICH IS ONE OF THE DOCUMENTS,

02:07PM 11  THE LONG LIST OF DOCUMENTS THAT WERE FILED WITH YOUR HONOR, BUT

02:07PM 12  JUST TO ILLUSTRATE THE POINT THAT THE HIERARCHY EXISTS IN THE

02:07PM 13  USER INTERFACE, YOUR HONOR, SO AS I WAS MENTIONING, IF YOU

02:07PM 14  LOOK -- IF YOU BLOW UP THE TOP MR. FISHER.

02:07PM 15       SO YOU WILL SEE THAT THE SWITCH, THE CARROT SIGN, THEN THAT

02:07PM 16  USER EXEC MODE THAT MR. NELSON WAS TALKING ABOUT, I REMEMBER

02:07PM 17  THE "SHOW HIERARCHY" STARTING WITH THE WORD SHOW, BUT I DON'T

02:07PM 18  KNOW THE REST OF THE COMMANDS IN THE REST OF THE HIERARCHY.

02:07PM 19       SO WHAT'S INTERESTING ABOUT THE CISCO CLI IS THAT YOU CAN

02:08PM 20  TYPE IN A QUESTION MARK AND TELL THE SYSTEM, I REMEMBER THERE'S

02:08PM 21  A HIERARCHY, I REMEMBER THE SEARCH WORD SHOW, I DON'T REMEMBER

02:08PM 22  THE REST OF THE ELEMENTS.

02:08PM 23            THE COURT:  SO THEN IT SHOWS ME MY CHOICES IN SHOW.

02:08PM 24            MR. PAK:  I SEE SHOW, QUESTION MARK, SHOW ARP, SHOW

02:08PM 25  CLARK, SHOW DIAGNOSTIC, DOT1Q-TUNNEL.  THE ONES HIGHLIGHTED IN

02:08PM 1    YELLOW ARE THE ONES THAT ARISTA HAS COPIED FROM THIS HIERARCHY.

02:08PM 2    BUT THE HIERARCHY IS A LONGER SET, OBVIOUSLY, OF THINGS HERE.

02:08PM 3        SO WHAT WE ARE SHOWING HERE IS THAT THE HIERARCHY EXISTS IN

02:08PM 4    THE USER INTERFACE IN THE SENSE BOTH HOW THE USER THINKS ABOUT

02:08PM 5    THE COMMANDS AND HOW THEY ARE ORGANIZED BUT ALSO DIRECTLY ON

02:08PM 6    HOW THIS GETS BACK TO THE USER IN TERMS OF THESE HELP

02:08PM 7    DESCRIPTIONS.

02:08PM 8        AND SO WHAT'S INTERESTING IS WE BELIEVE THAT THEY COPIED

02:08PM 9    THE HIERARCHY BECAUSE THEY HAVE THIS PARTICULAR ORGANIZATION

02:08PM 10   GROUPINGS, WE ALSO BELIEVE THE HELP DESCRIPTIONS THAT WE HAVE

02:08PM 11   BEEN FIGHTING SO MUCH ABOUT IN THIS CASE YOUR HONOR, THOSE ARE

02:08PM 12   THE HELP DESCRIPTIONS THAT YOU GET NEXT TO THESE COMMAND NAMES,

02:09PM 13   SO YOU CAN SEE HOW ARP HAS AN ARP TABLE, CLOCK HAS DISPLAYS AS

02:09PM 14   SYSTEM CLOCK.

02:09PM 15       SO THOSE ARE SOME OF THE HELP DESCRIPTIONS THAT ARISTA ALSO

02:09PM 16   COPIED FROM OUR SYSTEM.  SO THAT'S THE REASON WHY ALL THESE

02:09PM 17   ELEMENTS WORK TOGETHER, BUT THE HIERARCHY DOES EXIST,

02:09PM 18   YOUR HONOR, IN THE USER INTERFACE, THE HIERARCHY IS REFLECTED

02:09PM 19   IN THE COMMAND ORGANIZATION, WHICH AS MR. NELSON TALKED ABOUT,

02:09PM 20   WE ARE NOT CLAIMING THE IDEA OF TRYING TO ORGANIZE THIS INTO A

02:09PM 21   HIERARCHY, WE ARE CLAIMING THE SPECIFIC SEQUENCE STRUCTURE AND

02:09PM 22   ORGANIZATION WHICH UNDER JOHNSON CONTROLS AND ALL THE OTHER

02:09PM 23   CASES WE ARE TALKING ABOUT, ABSOLUTELY PROTECTABLE UNDER

02:09PM 24   COPYRIGHT LAW.

02:09PM 25       SO WE ARE TALKING ABOUT THE SEQUENCE STRUCTURE AND

02:09PM   1    ORGANIZATION OF THESE COMMANDS INTO A HIERARCHY, IT'S PRESENT

02:09PM   2    IN THE USER INTERFACE, YOU CAN ACTUALLY SEE IT BY TYPING SOME

02:09PM   3    OF THESE QUESTION MARK COMMANDS, AND THEN IT WILL RESPOND BACK

02:09PM   4    WITH A VISUAL REPRESENTATION OF THE HIERARCHY.

02:09PM   5         THE COURT:  SO IN THE HELP DESCRIPTIONS FOR ANY OF

02:10PM   6    THESE INITIAL WORDS IN THE COMMAND LINE, IF I USE THAT WORD AND

02:10PM   7    A QUESTION MARK, I WILL HAVE REVEALED TO ME THE HIERARCHY IT

02:10PM   8    COMES FROM.

02:10PM   9         MR. PAK:  THAT'S RIGHT.  ABSOLUTELY.

02:10PM  10         THE COURT:  AND IF IT DOESN'T COME -- YOU SAID SOME

02:10PM  11    DON'T FROM IF HIERARCHIES.

02:10PM  12         MR. PAK:  RIGHT.  SOME IT MAY BE ONE-OFF WORDS OR

02:10PM  13    COMMANDS WHICH DON'T HAVE HIERARCHIES ASSOCIATED WITH THEM.

02:10PM  14         THE COURT:  BUT IF -- LET ME JUST ASK YOU THAT.

02:10PM  15    LET'S SAY WE HAD ONE THAT IS NOT PART OF HIERARCHY, IT'S

02:10PM  16    JUST A DISCREET COMMAND LINE.  IF I PUT THE FIRST WORD, AND

02:10PM  17    IT'S A UNIQUE FIRST WORD, WILL THE HELP DESCRIPTIONS GIVE ME

02:10PM  18    THAT ONE?

02:10PM  19         MR. PAK:  EXACTLY.  IT WILL JUST SHOW YOU THERE'S

02:10PM  20    ONLY ONE COMMAND THAT'S POSSIBLE AND THEY WILL TELL YOU THE

02:10PM  21    HELP DESCRIPTIONS FUNCTION.

02:10PM  22         MR. NELSON:  RIGHT.

02:10PM  23    BECAUSE THE WAY THE -- ONCE YOU GET DOWN TO THE PARTICULAR

02:10PM  24    COMMAND, WHEN YOU HAVE A UNIQUE COMMAND, IT MAY TELL YOU

02:10PM  25    SOMETHING ABOUT THAT PARTICULAR COMMAND AS WELL.

02:10PM  1        SO YOU DON'T ALWAYS JUST NECESSARILY GET A LIST OF THE NEXT

02:10PM  2    LEVEL.  BUT YEAH, SO IT'S -- I MEAN, HOPEFULLY THE AFTERNOON

02:11PM  3    WAS A LITTLE BIT MORE HELPFUL THAN THE MORNING, YOUR HONOR.

02:11PM  4        THE COURT:  WELL, I'M JUST TRYING TO GET MYSELF

02:11PM  5    ORIENTED BECAUSE WE -- SO LET ME JUST GO ON A LITTLE BIT.

02:11PM  6        I THINK THAT YOU ARE RIGHT THAT THE COMMAND RESPONSES ARE

02:11PM  7    REALLY THE SAME ISSUES PERVADE THEM AS THE COMMAND LINES

02:11PM  8    THEMSELVES.  AND THE HELP DESCRIPTIONS ARE LARGELY THE SAME

02:11PM  9    ISSUES.

02:11PM  10        MR. NELSON:  I THINK THAT'S RIGHT.  IT'S THE SAME

02:11PM  11    CHALLENGES.

02:11PM  12        I SHOWED YOU ONE OF THE COMMAND OUTPUTS BECAUSE I REALLY DO

02:11PM  13    THINK THOSE ARE SO DIFFERENT IN KIND.

02:11PM  14        THE COURT:  SO LET ME THEN JUST ASK YOU ABOUT THE

02:11PM  15    LAST CATEGORY WHICH COMES FROM THE DOCUMENTATION WHICH I WILL

02:11PM  16    CALL THE MANUALS.

02:11PM  17        AND JUST SO THAT I CAN BE CLEAR ON THE DEFINITION OF THE

02:11PM  18    WORKS, EACH MANUAL IS IT'S OWN WORK.

02:11PM  19        MR. NELSON:  YEAH, THAT IS CORRECT.

02:11PM  20        THE COURT:  OKAY.

02:11PM  21        AND IN YOUR -- WHEN YOU'VE SHOWN ME THE TECHNICAL

02:12PM  22    DOCUMENTATION, YOU DIDN'T NECESSARILY SHOW IT TO ME IN ORDER OF

02:12PM  23    THE WORK IT COMES FROM, WHICH IS FINE, I MEAN, IT DOESN'T

02:12PM  24    MATTER, YOU CAN REORGANIZE IT ANY WAY YOU WANT, THAT'S REALLY

02:12PM  25    NOT THE ISSUE.

02:12PM 1     BUT YOU'VE GIVEN ME A SERIES OF BOXES, AND SOME OF THEM,

02:12PM 2     AND YOU'VE HIGHLIGHTED IN RED PORTIONS THAT YOU ARE CLAIMING

02:12PM 3     HAVE BEEN COPIED, CORRECT?

02:12PM 4          MR. NELSON:  CORRECT.

02:12PM 5          THE COURT:  AND SO, I MEAN, FOR EXAMPLE, I'M LOOKING

02:12PM 6     AT PAGE 111, AND YOUR FIRST IS THE SHOW VRRP, AND ANOTHER BOX

02:12PM 7     THAT IS HIGHLIGHTED, THAT'S FROM THE IOS IP APPLICATION

02:12PM 8     SERVICES COMMAND REFERENCE 2011 AT PAGE 76.

02:12PM 9     THE NEXT ONE IS FROM A DIFFERENT -- IT'S FROM A MULTI TASK

02:13PM 10    COMMAND REFERENCE.  THAT'S A DIFFERENT WORK, ISN'T IT?

02:13PM 11         MR. NELSON:  YEAH.  THE CITATION, SO WE CAN -- IF IT

02:13PM 12    WOULD BE MORE HELPFUL FOR YOUR HONOR.

02:13PM 13         THE COURT:  NO, NO, IT'S NOT.  AS LONG AS I

02:13PM 14    UNDERSTAND IT, I DON'T NEED IT REARRANGED.

02:13PM 15         MR. NELSON:  OKAY.

02:13PM 16         THE COURT:  BUT ONE WOULD ULTIMATELY EXTRACT ALL THE

02:13PM 17    THINGS FROM A PARTICULAR MANUAL WHICH IS A WORK.

02:13PM 18         MR. PAK:  RIGHT, YOUR HONOR.

02:13PM 19         THE COURT:  AND IT LOOKS TO ME AS THOUGH FOR THE

02:13PM 20    SECOND ENTRY, SINCE IT'S FROM PAGE 293, THAT'S A PRETTY BIG

02:13PM 21    MANUAL.

02:13PM 22         MR. NELSON:  YEAH, THE MANUAL --

02:13PM 23         THE COURT:  AND IF YOU HAVE FOUR LINES THAT WERE

02:13PM 24    COPIED FROM ALMOST 300 PAGE MANUAL, THAT'S WHAT IT IS.  IT IS

02:13PM 25    WHAT IT IS, RIGHT.

02:13PM  1          MR. VAN NEST:  IT IS WHAT IT IS.

02:13PM  2          MR. NELSON:  IT IS WHAT IT IS.

02:13PM  3          THE COURT:  AND THEN THE JURY WILL DETERMINE WHETHER

02:13PM  4  THAT'S THE HEART AND SOUL OF THE MANUAL OR WHETHER IT'S JUST --

02:13PM  5  I MEAN, IS THAT REALLY -- AND THERE MAY BE MORE FROM THAT ONE.

02:13PM  6  IT'S JUST THAT FOR ALL OF THESE I HAVE NO ORIENTATION ABOUT THE

02:13PM  7  WORK.

02:13PM  8      AND I UNDERSTAND IT'S NOT NECESSARY NOW.  I MEAN, THE FACT

02:14PM  9  THAT SOME OF THESE PHRASES COME OUT OF THE WORK, I MEAN, I

02:14PM 10  DON'T KNOW WHAT THE MAJOR ISSUE IS ON THESE.  I MEAN, YOU SAY

02:14PM 11  THEY ARE COPIED, AND IT LOOKS AS THOUGH THESE ARE DESCRIPTIONS

02:14PM 12  IN MANUALS AND MANUALS ARE TYPICALLY COPYRIGHTED AND PROTECTED.

02:14PM 13          MR. PAK:  AND YOUR HONOR, I DON'T REALLY THINK, AT

02:14PM 14  THE END OF THE DAY AT TRIAL, THAT THERE WOULD BE A REALLY

02:14PM 15  SUBSTANTIVE DISPUTE AS TO COPYRIGHTABILITY AND THE COPYING.

02:14PM 16          THE COURT:  RIGHT.  THIS IS NOT WHAT'S DRIVING THE

02:14PM 17  CASE.

02:14PM 18          MR. PAK:  THERE ARE CEO ADMITTED IT WAS WRONG TO DO

02:14PM 19  IT, THEIR CEO SAID THEY TOOK OUT THESE PORTIONS FROM THE

02:14PM 20  DOCUMENT.  WHAT THIS SHOWS THOUGH FROM OUR PERSPECTIVE THE

02:14PM 21  PERSUASIVENESS OF THE COPYING CONDUCT.

02:14PM 22          THE COURT:  THAT'S FINE.  AND I DIDN'T CONSIDER THIS

02:14PM 23  A PARTICULARLY HARD ONE.

02:14PM 24      THE MODES AND PROMPTS, I MEAN, IT'S -- YOU ARE REALLY, IT'S

02:14PM 25  A -- IT'S PRETTY STRAIGHTFORWARD WHAT YOU ARE ASKING TO

02:14PM  1      PROTECT.

02:14PM  2                  MR. NELSON:  CORRECT.

02:14PM  3                  THE COURT:  AND WITH ALL OF THESE, I THINK YOU HAVE

02:15PM  4      ESSENTIALLY CREATED THE ONLY ONE ANSWER THAT WOULD BE POSSIBLE

02:15PM  5      ON THE DEGREE OF PROTECTION BY THE WAY YOU'VE DESCRIBED EACH OF

02:15PM  6      THESE, IS THAT IT MATTERS THE ORDER AND SEQUENCE THAT THEY ARE

02:15PM  7      IN, CLOCK SET VERSUS SET CLOCK ARE TWO DIFFERENT THINGS.

02:15PM  8                  MR. NELSON:  WELL, RIGHT.

02:15PM  9          IT MATTERS FOR -- YEAH, FOR THE PURPOSE OF OUR CLAIM.

02:15PM  10                 THE COURT:  SO SUBSTANTIAL SIMILARITY IS JUST NOT

02:15PM  11     EVEN--

02:15PM  12                 MR. NELSON:  NO.

02:15PM  13                 THE COURT:  POSSIBLE HERE.

02:15PM  14                 MR. NELSON:  I DON'T THINK THAT'S WHAT KIND OF CASE

02:15PM  15     IT IS BECAUSE IT'S JUST A COPYING CASE.

02:15PM  16                 THE COURT:  YEAH.

02:15PM  17                 MR. NELSON:  SO THE WAY I SEE IT IS THIS CASE DOESN'T

02:15PM  18     REALLY COME IN.

02:15PM  19                 THE COURT:  IT'S AN AREA OF DISAGREEMENT THAT IS

02:15PM  20     MAYBE NO LONGER ON THE TABLE AND THAT'S HELPFUL.

02:15PM  21          AND SO YOUR ARGUMENT TO ME, BEFORE I TURN IT OVER TO

02:15PM  22     MR. SILBERT, IS THAT YOU DON'T CONCEDE ANY RESTRICTION ON ANY

02:15PM  23     OF THESE FIVE BUILDING BLOCKS, THEY ARE ALL IN, AS YOU'VE

02:15PM  24     PRESENTED THEM, I MEAN, I WILL HEAR THE ARGUMENTS, I'M SURE

02:16PM  25     MR. SILBERT WILL RETURN TO THE ISSUE OF NO AUTHORS FOR 198

02:16PM   1     COMMAND LINES, AND YOU HAVEN'T ADDRESSED THAT AT ALL.  YOU'VE

02:16PM   2     BEEN UP A LEVEL AT A PROCESS FOR THE CREATIVE OR THE CREATION

02:16PM   3     OF THESE COMMAND LINES.

02:16PM   4             MR. NELSON:  RIGHT.

02:16PM   5             THE COURT:  AND YOU HAVEN'T TALKED ABOUT -- AND SO I

02:16PM   6     GUESS IT BEGS THE QUESTION OF IF I ACCEPT THAT YOU HAVE THE

02:16PM   7     PROCESS, DID YOU USE IT FOR EACH ONE OF THESE?

02:16PM   8         AND I WILL HEAR ABOUT THAT.  I MEAN, I DON'T KNOW THAT.

02:16PM   9     YOU'VE WORKED AT A LEVEL OF GENERALITY.

02:16PM   10            MR. PAK:  WE HAVE ALL THE EVIDENCE, YOUR HONOR.

02:16PM   11        SO AT TRIAL, THAT'S EXACTLY THE EVIDENCE WE WILL PUT ON.

02:16PM   12    WE WILL HAVE MULTIPLE WITNESSES TALK ABOUT, WE WILL START WITH

02:16PM   13    MR. LOUGHEED WHO IS THE FIRST ORIGINATOR OF THESE COMMANDS AND

02:16PM   14    SET UP SOME OF THE INITIAL HIERARCHIES.

02:16PM   15        MR. REMAKER WILL TESTIFY, WHO WILL TALK ABOUT THE GENERAL

02:16PM   16    PROCESS THAT APPLIES TO ALL OF THESE COMMANDS.  HE WAS OUR

02:16PM   17    CORPORATE WITNESS ON THIS TOPIC.

02:17PM   18        WE WILL TESTIFY -- WE COMPILED, AS YOUR HONOR REMEMBERED

02:17PM   19    THERE WAS LONG ROG RESPONSES.  WE TRACKED DOWN EVERY SINGLE

02:17PM   20    COMMAND AUTHOR WITH EVERY COMMAND WE ARE ASSERTING WITH

02:17PM   21    PUBLICATION DATES, SOURCE CODE WITH THE COMMAND INFORMATION WAS

02:17PM   22    CHECKED IN.  OPERATING SYSTEM.

02:17PM   23        WE THINK ALL OF THAT IS THERE, BUT THE ISSUE IS FROM THE

02:17PM   24    CDN PERSPECTIVE, AS MR. NELSON TALKED ABOUT, JUST LIKE IN THAT

02:17PM   25    CASE THE PLAINTIFF WAS NOT REQUIRED TO COME IN, PUT UP

02:17PM  1    INDIVIDUAL OFFERS AT EVERY SINGLE PRICE AND GO THROUGH WHAT

02:17PM  2    WERE THE INDIVIDUAL, YOU KNOW, DID YOU CONSIDER 1.49 BEFORE YOU

02:17PM  3    CAME IN AT A 1.50 FOR THIS.  THERE WAS NO TESTIMONY THAT WAS

02:17PM  4    THERE.

02:17PM  5            THE COURT:  OKAY.

02:17PM  6        SO MY UPON DETERMINATION IN ANALYTIC DISSECTION ON

02:17PM  7    ORIGINALITY, WHICH IS PART OF WHAT I NEED TO LOOK AT, AT WHAT

02:17PM  8    LEVEL IS THAT?  IS THAT AT THE LEVEL OF THIS VERY -- I DON'T

02:17PM  9    ACTUALLY KNOW IF IT ALSO GOES TO THE JURY, WHAT PASS

02:17PM  10   ORIGINALITY GETS THROUGH ANALYTIC DISSECTION.

02:17PM  11           MR. PAK:  I THINK RIGHT NOW, ALL WE ARE TALKING ABOUT

02:17PM  12   IS, AS WE TALKED ABOUT, WHAT EVIDENCE DO WE FILTER OUT FOR

02:18PM  13   PRESENTATION TO THE JURY.  OUR POSITION IS NOW THAT WE HAVE --

02:18PM  14           THE COURT:  NO, NO, I UNDERSTAND THAT.

02:18PM  15       BUT IF I'M GOING TO DO SOME FILTERING BECAUSE IT'S

02:18PM  16   UNORIGINAL, I HAVEN'T HAD -- I MEAN, HOW CAN I DO THAT?

02:18PM  17       YOU'VE SHOWN ME THE CATEGORY OR YOUR BUILDING BLOCK, EACH

02:18PM  18   OF YOUR BUILDING BLOCKS HAD A PROCESS OF CREATION.

02:18PM  19           MR. PAK:  RIGHT.

02:18PM  20           THE COURT:  AND YOU THINK THAT'S ALL I NEED TO KNOW

02:18PM  21   AT THIS POINT.

02:18PM  22           MR. PAK:  I THINK -- YOUR HONOR, I'M HAPPY AND I'M

02:18PM  23   PREPARED FOR THIS SECTION OF THE PRESENTATION IF YOUR HONOR

02:18PM  24   WANTS TO SEE IT.

02:18PM  25       I HAVE JUST A SAMPLING, BUT OVER 40 PAGES OF DOCUMENTS AND

02:18PM 1    TESTIMONY OR EVIDENCE ON EXACTLY THIS ISSUE OF, THIS WAS THE

02:18PM 2    PROCESS, THIS WAS USED FOR EVERY ONE OF OUR COMMANDS, HERE'S

02:18PM 3    THE POLICE MANIFESTO THAT WERE ALL GUIDELINES, THERE ARE

02:18PM 4    INCREDIBLE AMOUNTS OF DEBATE.

02:18PM 5         I HAVE TESTIMONY FROM MR. SWEENEY, MR. DUDA, MR. LOUGHEED,

02:18PM 6    ALL WHO WORKED AT CISCO.  THEY WERE AUTHORS, SOME OF THEM WERE

02:18PM 7    AUTHORS OF THESE COMMANDS.  THEY TESTIFIED UNDER OATH THAT THIS

02:18PM 8    WAS A SUBJECTIVE PROCESS, THAT PEOPLE HAD THE ABILITY TO PICK

02:19PM 9    WHATEVER THEY WANTED.  OF COURSE THERE WERE SOME GUIDELINES

02:19PM 10   THAT WERE GIVEN, BUT THEY WERE JUST GUIDELINES.

02:19PM 11        WE HAVE ALL OF THAT, EVERYTHING THAT WE ARE PRESENTING TO

02:19PM 12   YOUR HONOR AND EVERYTHING THAT WE WILL PRESENT TO THE JURY WILL

02:19PM 13   BE COVERED BY THE PROCESS WE ARE TALKING ABOUT.

02:19PM 14            THE COURT:  OKAY.

02:19PM 15        AND MR. SILBERT, ARE YOU GOING TO ARGUE THE OPPOSITE ON

02:19PM 16   THAT ISSUE OF ORIGINALITY AT ANALYTIC DISSECTION?

02:19PM 17            MR. SILBERT:  ABSOLUTELY.

02:19PM 18        AND MORE THAN THAT, WE ARE GOING TO PRESENT EVIDENCE THAT

02:19PM 19   THEY DON'T KNOW THAT THE TESTIMONY INCLUDING 30(B)(6) TESTIMONY

02:19PM 20   OF THE COMPANY WAS THEY DON'T KNOW THE ACTUAL PROCESS THAT WAS

02:19PM 21   FOLLOWED FOR.

02:19PM 22            THE COURT:  NOW, I NEED THE EVIDENCE, SO WHAT AM I

02:19PM 23   SUPPOSED TO DO?

02:19PM 24            MR. SILBERT:  I THINK, IF I MAY, YOUR HONOR.  BECAUSE

02:19PM 25   THE APPROACH WE HAVE BEEN TRYING TO TAKE ON DISSECTION, AND I

02:19PM 1    FULLY AGREE THERE ARE LINES TO BE DRAWN THAT ARE NOT ALWAYS

02:19PM 2    EXACTLY CLEAR AND WE NEED A PATH FORWARD, AND I THINK THE LINE

02:19PM 3    AT LEAST WE ARE TRYING TO DRAW HERE IS THAT SOME OF THESE

02:19PM 4    ISSUES THAT REQUIRE A DEEPER UNDERSTANDING OF THE EVIDENCE AND

02:19PM 5    WHAT THE EVIDENCE IS GOING TO SHOW, AND POTENTIALLY YOUR HONOR

02:20PM 6    WILL WANT TO SEE AND HEAR WITNESSES TESTIFY, THOSE ARE NOT FOR

02:20PM 7    YOU TO TRY TO DO NOW BEFORE TRIAL.

02:20PM 8            THE COURT:  OKAY.  SO I'M GOING TO IGNORE ORIGINALITY

02:20PM 9    RIGHT NOW.

02:20PM 10           MR. SILBERT:  WELL, I DON'T KNOW THAT YOU WILL IGNORE

02:20PM 11   IT EVERY FLAVOR OF ORIGINALITY IN EVERY RESPECT, BUT I THINK ON

02:20PM 12   ISSUES LIKE THE ONE YOU JUST RAISED AND MR. PAK WAS DISCUSSING,

02:20PM 13   I THINK THAT PARTICULAR, YOU DO NEED TO HEAR THE EVIDENCE AND

02:20PM 14   SEE IT, AND THERE IS LIKELY TO BE MOTION PRACTICE ON IT WHEN

02:20PM 15   CISCO RESTS ITS CASE.

02:20PM 16           MR. NELSON:  SO HERE'S A LITTLE BIT ON THAT,

02:20PM 17   YOUR HONOR.

02:20PM 18       I MEAN, WE CAN GO THROUGH, AND I THINK I KNOW WHAT HE'S

02:20PM 19   TALKING ABOUT, QUESTIONS LIKE, DO YOU KNOW WHAT WAS IN THE MIND

02:20PM 20   OF EACH INDIVIDUAL AUTHOR, WHICH I DON'T THINK IS REALLY THE

02:20PM 21   RIGHT QUESTION TO BE ASKING.

02:20PM 22       BUT REALLY WHAT THAT GETS DOWN TO IS, IS IT THE CASE THEN

02:20PM 23   IN EVERY COPYRIGHT CASE THAT YOU GO THROUGH EVERY ELEMENT LINE,

02:20PM 24   BY LINE, BY LINE, THAT'S THE PRECEDENT THEY ARE ASKING FOR.

02:20PM 25   THAT'S WHAT WE TRIED TO AVOID.  AND THAT'S WHAT CDN SAYS YOU

02:21PM   1    DON'T HAVE TO DO.

02:21PM   2        SO WHAT THEY ARE ASKING YOU TO DO YOUR HONOR IS REALLY, I

02:21PM   3    DON'T KNOW HOW CAN YOU DO YOUR JOB, I MEAN, WHEN YOU TALK

02:21PM   4    ABOUT --

02:21PM   5            THE COURT:  OH, I CAN DO MY JOB, BUT YOUR TRIAL IS

02:21PM   6    GOING TO BE IN MAY.  IT'S ACTUALLY VERY SIMPLE.

02:21PM   7            MR. NELSON:  THAT'S WHAT I'M SAYING.  REASONABLY

02:21PM   8    SPEAKING, YOU CAN'T DEVOTE THAT MUCH TIME TO ONE CASE.

02:21PM   9            THE COURT:  EVEN IF I USED EVERY WAKING MINUTE UNTIL

02:21PM  10    THE JURY COMES BACK, I COULD NOT DO THIS JOB IN THE FEW DAYS

02:21PM  11    LEFT.

02:21PM  12            MR. NELSON:  CORRECT.

02:21PM  13            THE COURT:  SO IT'S A FRUSTRATION OF MINE OF HAVING

02:21PM  14    THIS PUT, AND THEN YOU SAY THERE MAY BE MOTION PRACTICE, BUT

02:21PM  15    JUST WHEN WOULD THAT BE?  WE ARE UP AGAINST A HARD DEADLINE

02:21PM  16    HERE.

02:21PM  17        IT'S GREAT THERE WILL BE MOTION PRACTICE, BUT MOTION

02:21PM  18    PRACTICE THAT ENDS UP IN A NEW TRIAL, I DON'T WANT TO PLANT THE

02:21PM  19    SEEDS FOR A NEW TRIAL NOW, I WOULD LIKE TO LET THIS JURY GO

02:21PM  20    HOME AND WISH THEM HAPPY HOLIDAYS AND DO THIS MORE ORDERLY.

02:21PM  21        SO I'M VERY CONCERNED THAT THIS HASN'T BEEN -- THAT WE ARE

02:21PM  22    HERE AND I NEED -- AND THIS PROCESS IS SO, UNFORTUNATELY IN THE

02:21PM  23    LAW, FRANKLY ILL DEFINED, EVEN THOUGH THERE ARE LOTS OF CASES.

02:22PM  24        AND SO I'M JUST TRYING -- I AM TRYING TO DO MY JOB, I'M

02:22PM  25    TRYING TO UNDERSTAND WHAT TO DO WITHOUT GLOSSING OVER THE

02:22PM  1    ISSUES THAT ARISTA RAISES.

02:22PM  2         AND THAT'S -- THAT IS MY FEAR IS THAT I'LL, OUT OF

02:22PM  3    NECESSITY OF TIME, RULE AT TOO HIGH A LEVEL AND HENCE DEPRIVE

02:22PM  4    ARISTA OF THE RULINGS IT'S ENTITLED TO.

02:22PM  5         MR. NELSON:  AND THAT I UNDERSTAND.

02:22PM  6         AND I'M, AND -- BUT I DON'T, YOU KNOW, IN ANY KIND OF

02:22PM  7    COMPUTER CODE OR UI CASE OR MAYBE THERE'S SOME THAT ARE --

02:22PM  8    THERE'S GOING TO BE SO MANY ELEMENTS, RIGHT.

02:22PM  9         AND THE WAY THESE WORKED FOR HIGHER, FOR LACK OF -- I THINK

02:22PM  10   THAT ACTUALLY IS THE RIGHT TERM YOU ARE COMPREHENDING, I'M NOT

02:22PM  11   HUNDRED PERCENT SURE.  BUT YOU HAVE A LOT, A LOT, A LOT OF

02:22PM  12   PEOPLE OVER MANY, MANY YEARS WORKING ON THESE KINDS OF THINGS.

02:22PM  13        AND SO YOU HAVE TESTIMONY ABOUT HERE'S YOUR PROCESS THAT

02:22PM  14   THE COMPANY WENT THROUGH, THIS IS WHAT WE DO, OBVIOUSLY IT

02:22PM  15   IS -- IT IS IMPOSSIBLE, I MEAN, I THINK IS THE ONLY WORD THAT I

02:23PM  16   COULD USE, THAT YOU COULD GO BACK TO EVERY SINGLE PERSON.

02:23PM  17             THE COURT:  YEAH.

02:23PM  18             MR. NELSON:  WHO WROTE A LINE OF CODE, WROTE A MODULE

02:23PM  19   OF CODE, IF WE ARE TALKING ABOUT CODE HERE, OR WROTE A COMMAND

02:23PM  20   IN THE UI OR DID THIS AND SAID, I RECALL 22 YEARS AGO THAT

02:23PM  21   THESE ARE EXACTLY THE CONSIDERATIONS I HAD.  IT'S NOT POSSIBLE.

02:23PM  22             THE COURT:  NO.

02:23PM  23             MR. NELSON:  SO THAT CAN'T BE THE ANSWER.

02:23PM  24             THE COURT:  PLUS THE TRIAL WOULD BE SIX MONTHS LONG.

02:23PM  25             MR. NELSON:  AT LEAST, AT LEAST SIX MONTHS LONG.

02:23PM 1      AND THAT'S WHY CDN TELLS YOU THAT YOU'VE GOT TO LOOK AT THE

02:23PM 2   PROCESS.  BECAUSE IT WOULD BE THE SAME THING THERE.

02:23PM 3      IF YOU ARE TO DO WHAT THEY ARE ASKING YOU TO DO, THE CDN

02:23PM 4   CASE WOULD HAVE COME OUT AND SAID, PUT EACH OF THOSE INDIVIDUAL

02:23PM 5   EXPERTS, THE PEOPLE THAT WENT OUT AND FIGURED OUT THE COIN

02:23PM 6   PLACES, LET'S SAY WHAT DID YOU LOOK AT, DID YOU LOOK AT THIS,

02:23PM 7   WHAT WERE THE MARKET PRESSURES WHAT OTHER THINGS DID YOU LOOK

02:23PM 8   AT?  HOW DID YOU COME UP WITH THIS PRICE, AND WE WOULD HAVE HAD

02:23PM 9   THAT TESTIMONY ON EACH INDIVIDUAL ELEMENT?

02:23PM 10      THERE'S NO WAY.  YOU CAN'T DO THAT AS A PRACTICAL MATTER IN

02:24PM 11   THE CASE, THAT CAN'T POSSIBLY BE THE LAW.

02:24PM 12      AND THAT'S WHY I AGREE WE HAVE TO HAVE SOME TESTIMONY, AND

02:24PM 13   WE HAVE TO HAVE THAT ON THE PROCESS, WE NEED TO HAVE THAT OUT

02:24PM 14   THERE, AND YOU NEED TO BE ABLE TO FILTER OUT ELEMENTS WHERE YOU

02:24PM 15   SAY, OKAY, YOU KNOW, WE HAVE THE IDEA OF A COMMAND LINE USER

02:24PM 16   INTERFACE, WE ARE GOING TO ASSERT THAT, THEN THEY CAN ARGUE

02:24PM 17   ABOUT IT, THE JURY CAN GET CONFUSED, AND YOU WILL SAY WELL,

02:24PM 18   WAIT A MINUTE, COME ON GUYS, THOSE WAY PREEXIST YOU, JUST

02:24PM 19   DECIDING TO DO THAT, THAT'S NOT SOMETHING YOU DO.

02:24PM 20      THAT'S WHAT FILTRATION IS, RIGHT, THAT'S WHAT WE ARE

02:24PM 21   TALKING ABOUT IS TRYING TO BE THE GATE KEEPER WITH THAT, NOT

02:24PM 22   TRYING TO BE THE ARBITER AT EVERY SINGLE LEVEL BECAUSE

02:24PM 23   YOUR HONOR CAN'T DO HER JOB.

02:24PM 24          THE COURT:  WELL, I GREATLY APPRECIATE THAT OVER THE

02:24PM 25   COURSE OF THE LAST COUPLE OF MONTHS THAT CISCO HAS ACTUALLY

02:24PM 1    ARTICULATED THE ELEMENTS THAT ARE NOT SEEKING PROTECTION OF AND

02:24PM 2    YOU'VE WRITTEN THEM DOWN AND YOU'VE COMMITTED TO THEM.  SO I

02:24PM 3    APPRECIATE THAT.  AND IN FACT, IT RESPONDED VERY DIRECTLY TO

02:25PM 4    SOME OF THE EARLY ARGUMENTS THAT WERE ASSERTED BY ARISTA.

02:25PM 5        AND SO ALTHOUGH I MIGHT NOT ULTIMATELY AGREE THAT YOU'VE

02:25PM 6    DONE ALL OF IT, I THINK YOU'VE COME A LONG WAY.  AND THAT'S

02:25PM 7    WHAT IT SHOULD BE.  AND SO I REALLY CREDIT CISCO WITH DOING

02:25PM 8    THAT.  AND THEN WE GET THE REST OF THE WAY.

02:25PM 9        MR. NELSON:  YES.  I AGREE, YOUR HONOR.

02:25PM 10       THE COURT:  ALL RIGHT.  OKAY.  WELL, LET ME HEAR FROM

02:25PM 11   MR. SILBERT.

02:25PM 12       I AM REALLY LOOKING FOR, MR. SILBERT, TO THE EXTENT THAT I

02:25PM 13   FILTER OUT ANYTHING, I REALLY NEED A CLEAR ARTICULATION OF WHY

02:25PM 14   I WOULD BE TAKING THIS OUT.  BECAUSE MR. NELSON IS REALLY

02:25PM 15   GIVING ME A MUCH, SORT OF A HIGHER LEVEL VIEW OF EACH OF THESE

02:25PM 16   ELEMENTS.

02:25PM 17       MR. SILBERT:  ABSOLUTELY.  AND WITH THE COURT'S

02:25PM 18   PERMISSION, WE ARE GOING TO SPLIT UP THE DIFFERENT ASPECTS.

02:25PM 19   MR. NELSON COVERED A LOT OF TERRITORY THERE.

02:25PM 20       THE COURT:  YES, HE DID.

02:25PM 21       MR. SILBERT:  AND UNLESS YOUR HONOR HAS A DIFFERENT

02:25PM 22   PREFERENCE IN TERMS OF ORDER, I AM GOING TO ADDRESS INDUSTRY

02:26PM 23   STANDARD TERMINOLOGY AND THE USE OF THAT TERMINOLOGY AND WHAT

02:26PM 24   IT MEANS TO USE THAT TERMINOLOGY IN CLI COMMANDS.

02:26PM 25       THE COURT:  AND JUST SO THAT I'M CLEAR ON THIS, WHEN

02:26PM 1     YOU SAY INDUSTRY STANDARD TERMINOLOGY, THAT IS AS IT EXISTED AT

02:26PM 2     THE TIME OF CREATION BY CISCO?

02:26PM 3          MR. SILBERT:  RIGHT.

02:26PM 4       SO LET'S BE CLEAR ABOUT -- EXACTLY.  YOUR HONOR MADE THAT

02:26PM 5     CLARIFICATION EARLIER, AND LET'S BE CLEAR THAT THAT'S WHAT I'M

02:26PM 6     TALKING ABOUT.

02:26PM 7       I'M TALKING ABOUT TERMINOLOGY THAT WAS TAKEN FROM AN

02:26PM 8     EXISTING PUBLICATION OF AN INDUSTRY STANDARD, OF AN INDUSTRY

02:26PM 9     STANDARD BODY AT THE TIME THE COMMAND WAS SUPPOSEDLY CREATED

02:26PM 10    BUT BEFORE THE TIME THE COMMAND WAS SUPPOSEDLY CREATED.

02:26PM 11      NOW THERE ARE ALSO CERTAIN OF THESE TERMS THAT, I DON'T

02:26PM 12    THINK THERE'S ANY DISPUTE, AND IF THERE IS, THAT PARTICULAR

02:26PM 13    TERM OBJECTION BE THE SUBJECT OF DISPUTE.  BUT A TERM LIKE HOST

02:26PM 14    TO REFER TO A DEVICE IN A NETWORK.  YOU COULD FIND IT IN

02:26PM 15    STANDARDS, IT WAS SIMPLY THE WAY THE PEOPLE IN THE INDUSTRY

02:27PM 16    TALKED ABOUT IT.  THERE'S ADMISSIONS ON BOTH SIDES FROM BOTH

02:27PM 17    WITNESSES ABOUT THAT.

02:27PM 18      SO IT'S SIMPLY -- I COULD CALL IT AN INDUSTRY TERM OR

02:27PM 19    SOMETHING OF THAT NATURE THAT WAS AN EXISTING TERM THAT

02:27PM 20    EVERYBODY KNEW AND USED.

02:27PM 21      AND I DO WANT TO TALK ABOUT THIS ISSUE AT A HIGH LEVEL AND

02:27PM 22    SPECIFICALLY AT THE LEVEL THAT YOUR HONOR ASKED ABOUT WHICH IS

02:27PM 23    KIND OF HOW DO YOU DISCHARGE YOUR RESPONSIBILITIES BUT YET HAVE

02:27PM 24    A MANAGEABLE PROCESS, THAT'S SOMETHING THAT YOU COULD MAKE

02:27PM 25    REASONABLE DECISIONS ABOUT IN THE TIME THAT WE HAVE.  THE JURY

02:27PM  1    CAN MAKE THE DECISIONS THAT THE JURY NEEDS TO MAKE BUT THE JURY

02:27PM  2    IS NOT GOING TO BE CONFUSED AND ITS ACTUAL TASK IS LAID OUT FOR

02:27PM  3    IT IN A CLEAR WAY.

02:27PM  4        AND I THINK THE STARTING POINT FOR THINKING ABOUT THAT IS

02:27PM  5    THE HARBOR HOUSE CASE, AND THERE'S OTHER CASES AS WELL THAT GET

02:27PM  6    AT THIS POINT, BUT THE HARBOR HOUSE CASE, NINTH CIRCUIT CASE

02:27PM  7    MAKES CLEAR IS IT TALKS ABOUT THE INFLAMMATORY NATURE OF AN

02:28PM  8    ALLEGATION OF COPYING.  AND THE RISK OF PREJUDICE AND CONFUSION

02:28PM  9    THAT ARISES IF THE JURY HEARS THEY COPIED, THEY COPIED, THEY

02:28PM  10   COPIED, BUT THEY ARE NOT CLEARLY TOLD SOME OF THESE THINGS THAT

02:28PM  11   THEY ARE ALLEGED TO HAVE COPIED ARE NOT PROTECTABLE AND

02:28PM  12   THEREFORE IT WAS FINE FOR THEM TO COPY, PERFECTLY LEGAL.

02:28PM  13   NOTHING WHATSOEVER WRONG WITH IT, THAT'S JUST THE WAY THE WORLD

02:28PM  14   WORKS, BUSINESS WORKS.

02:28PM  15       SO I THINK UNDER THAT FRAMEWORK, THE QUESTION IS WHAT IS IT

02:28PM  16   YOU CAN DO AND SHOULD DO NOW?  WHAT DECISIONS CAN YOU MAKE NOW,

02:28PM  17   AND WHAT DECISIONS -- THERE MAY BE MORE THAT AFTER YOU HEAR THE

02:28PM  18   EVIDENCE YOU WILL DO MORE, AND THERE'S GOING TO BE SOME SET OF

02:28PM  19   ISSUES THAT ARE LEFT TO THE JURY THAT THE JURY IS GOING TO HAVE

02:28PM  20   TO DECIDE AT THE END OF THE DAY.

02:28PM  21       SO WITHIN THAT FRAMEWORK, THE ISSUE OF TERMS THAT WERE

02:28PM  22   TAKEN FROM INDUSTRY STANDARDS.  AND AGAIN, TO BE CLEAR,

02:28PM  23   PRE-EXISTING STANDARDS, PUBLICATIONS OF STANDARDS BODIES THAT

02:29PM  24   EXISTED, TERMS THAT WERE IN WIDESPREAD USE AS NAMES OF THINGS.

02:29PM  25           THE COURT:  AND ARE YOU TALKING ABOUT INDIVIDUAL

02:29PM  1    WORDS?

02:29PM  2              MR. SILBERT:  YES.

02:29PM  3              THE COURT:  BECAUSE DR. BLACK DECIDED THEM TWO

02:29PM  4    INDIVIDUAL WORDS.

02:29PM  5         CISCO IS NOT CLAIMING PROTECTABILITY ON INDIVIDUAL WORDS.

02:29PM  6    WE HAVE AGREEMENT ON THAT.

02:29PM  7              MR. SILBERT:  THEY ARE NOT CLAIMING PROTECTABILITY OF

02:29PM  8    THE INDIVIDUAL WORDS.

02:29PM  9         AND I THINK TO CLARIFY TO THE JURY THE ISSUES HERE AND WHAT

02:29PM  10   THEY NEED THAT DO, THERE'S ONE ADDITIONAL THING THAT NEEDS TO

02:29PM  11   BE MADE CLEAR TO THEM, AND THAT IS THAT THE USE OF A -- THE

02:29PM  12   NAME TAKEN FROM A STANDARD.

02:29PM  13        FOR EXAMPLE, TO CALL THE OSPF STANDARD PROTOCOL OSPF, THAT

02:29PM  14   BY ITSELF IS NOT AN ORIGINAL OR CREATIVE ACT.  IT'S SIMPLY NOT.

02:29PM  15   IT'S THE NAME BY WHICH EVERYONE IN THE INDUSTRY KNOWS THAT

02:29PM  16   PROTOCOL.  EVERYBODY REFERS TO IT BY THAT NAME.

02:29PM  17              THE COURT:  AND AGAIN, I DON'T THINK THAT'S IN

02:30PM  18   DISPUTE.

02:30PM  19              MR. SILBERT:  OKAY.  GREAT.

02:30PM  20        AND THEN THE ISSUE THEN IS HOW TO CLARIFY TO THE JURY THAT

02:30PM  21   USING A NAME THAT IS ALREADY AN INDUSTRY NAME, AN INDUSTRY

02:30PM  22   TERMINOLOGY, USING THAT NAME ITSELF IS NOT CREATIVE, HOWEVER, A

02:30PM  23   COMBINATION COULD BE.

02:30PM  24        THEY CAN ARGUE, AND THAT'S, AS I UNDERSTAND THE ARGUMENT

02:30PM  25   THAT THEY'RE MAKING, IS THAT MAYBE IF WE CALL OSPF, OSPF, OR WE

02:30PM  1    CALL IP, IP, THERE'S NOTHING CREATIVE OR ORIGINAL ABOUT THAT.

02:30PM  2         BUT WE COULD -- BUT WHEN WE STRING THESE THINGS TOGETHER,

02:30PM  3    WHEN WE SAY IP ADDRESS OR WHATEVER IT IS THAT THEY SAY, THAT

02:30PM  4    THAT'S A CREATIVE ACT.

02:30PM  5         AND I THINK WHAT WE NEED IS, BECAUSE ALL OF THIS COMES DOWN

02:30PM  6    TO JURY INSTRUCTIONS AT THE END OF THE DAY --

02:30PM  7         THE COURT:  AND AGAIN, I ACTUALLY BELIEVE THAT

02:30PM  8    THROUGH YOUR ARGUMENT, THROUGHOUT THE CASE AND CISCO'S

02:30PM  9    REFLECTION ON HOW IT WANTS TO PRESENT ITS OWN, YOU HAVE COME TO

02:30PM  10   A LARGE AMOUNT OF AGREEMENT ON THIS.

02:30PM  11        SO I ACTUALLY THINK YOU KIND OF OWN THIS ARGUMENT ALREADY.

02:31PM  12   AND THANKS TO THE CONCESSION.  BUT I AGREE WITH YOU COMPLETELY.

02:31PM  13   AND EVEN, FRANKLY, EVEN THE FEW INDIVIDUAL WORDS THAT CISCO MAY

02:31PM  14   HAVE CLAIMED IT INVENTED THAT MR. NELSON SHOWED ME, THEY'RE

02:31PM  15   STILL NOT CLAIMING PROTECTABILITY OF THE WORD BY ITSELF

02:31PM  16   STANDING ALONE.

02:31PM  17        SO THE CREATIVE ASPECT IS LIMITED TO THE DEVELOPING OF THE

02:31PM  18   COMBINATION.

02:31PM  19             MR. SILBERT:  CORRECT.

02:31PM  20             THE COURT:  AND IN YOUR PAPERS, YOU AGREE SUBJECT TO

02:31PM  21   MERGER AND SCÈNES À FAIRE THAT --

02:31PM  22             MR. SILBERT:  WELL, WE WOULD SAY WE AGREE THAT'S WHAT

02:31PM  23   THEY ALLEGE.  WE ARE NOT AGREEING THAT THE COMBINATION WAS

02:31PM  24   CREATIVE, CERTAINLY.

02:31PM  25             THE COURT:  YOU ARE ONLY CLAIMING THAT'S A

02:31PM   1     PROTECTABLE ELEMENT.  THEY STILL HAVE TO PROVE THAT CREATIVITY.

02:31PM   2               MR. SILBERT:  RIGHT.  EXACTLY.

02:31PM   3          AND SO I THINK YOUR HONOR ASKED A QUESTION ABOUT, CAN YOU

02:31PM   4     THINK OF THE COMMAND AS A COMPILATION, AND I THINK THAT IS A

02:31PM   5     USEFUL WAY TO THINK ABOUT IT UNDER THE FRAMEWORK OF THE FICE

02:32PM   6     CASE, FOR EXAMPLE, WHERE USING THE NAME OF A PROTOCOL SUCH AS

02:32PM   7     OSPF OR IP, OR USING THE TERM VRRP OR ANY NUMBER OF THESE OTHER

02:32PM   8     TERMS THAT, TO US, MAKE OUR HEAD SPIN BECAUSE WE DON'T LIVE IN

02:32PM   9     THIS WORLD AND WE SEE THEM, I SEE THEM AND IT LOOKS LIKE GREEK

02:32PM  10     AND I THINK, OH MY GOSH, IT'S AN ENTIRELY NEW LANGUAGE THAT I'M

02:32PM  11     SEEING HERE, IT'S COMPLETELY UNLIKE ANYTHING I'VE EVER SEEN,

02:32PM  12     WHAT DOES IT ALL MEAN.

02:32PM  13          AND I THINK WHAT THE JURY NEEDS TO BE TOLD IS THAT USE OF

02:32PM  14     THOSE ACRONYMS, TERMS THAT ARE DEFINED IN PUBLISHED DOCUMENTS,

02:32PM  15     TERMS THAT, PARAMETERS THAT HAVE A PARTICULAR NAME IN A

02:32PM  16     PUBLISHED DOCUMENT WHERE THAT NAME IS THEN USED AGAIN IN A CLI

02:32PM  17     COMMAND, THAT THE USE OF THAT TYPE OF INDUSTRY TERMINOLOGY BY

02:32PM  18     ITSELF, THE USE OF THOSE WORDS BY ITSELF IS NOT A CREATIVE ACT,

02:33PM  19     ORIGINAL ACT.

02:33PM  20               THE COURT:  SO FICE, I ALWAYS LIKE IT BECAUSE IT'S A

02:33PM  21     PHONE BOOK AND WE ALL KNOW WHAT THAT IS.  BUT IN FICE THEY WERE

02:33PM  22     FACTUAL.  THE INDIVIDUAL PIECES WERE FACTUAL.

02:33PM  23          SO HERE IT'S SOMETHING ELSE.  BUT LET'S JUST -- IF EACH OF

02:33PM  24     THE WORDS THAT MAKES UP THE LINE OR THE ENTIRE BODY OF COMMANDS

02:33PM  25     IS NOT SUBJECT TO PROTECTION, THEN THE PROCESS THAT MR. NELSON

02:33PM 1   DESCRIBES AND THAT CISCO HAS TALKED ABOUT IS CREATING THE

02:33PM 2   COMBINATIONS, IS.

02:33PM 3           MR. SILBERT:  RIGHT.

02:33PM 4           THE COURT:  AND THAT'S WHAT WE ARE SENDING TO THE

02:33PM 5   JURY.

02:33PM 6           MR. SILBERT:  RIGHT.

02:33PM 7           THE COURT:  OKAY.  I DON'T THINK WE HAVE DISAGREEMENT

02:33PM 8   ON THAT.

02:33PM 9       AND I THINK ON THE COMMAND LINES, NOW YOU GO ON TO THE

02:33PM 10  ARGUMENT ABOUT THE TWO-WORD AND THE THREE-WORD, PRIMARILY.  AND

02:33PM 11  YOU HAVE THE AUTHORSHIP ISSUE.

02:33PM 12      SO WHERE DOES THAT ALL PLAY IN HERE?

02:33PM 13          MR. SILBERT:  WELL, AND THIS IS KIND OF WHERE I

02:33PM 14  STARTED THIS MORNING AND MAYBE WE WOULD GO SOMEWHERE DIFFERENT,

02:33PM 15  BUT WE SPENT THE BETTER PART OF THE LATE MORNING AND THE EARLY

02:34PM 16  AFTERNOON LOOKING AT A COUPLE OF EXAMPLES.  AND THAT WAS ONLY

02:34PM 17  ONE SIDE.  THAT WAS ONLY THE CISCO SIDE OF THAT ARGUMENT.

02:34PM 18          THE COURT:  SURE.

02:34PM 19          MR. SILBERT:  I THINK OUR BELIEF IS THAT TO THE

02:34PM 20  EXTENT THAT YOUR HONOR NEEDS TO HEAR ABOUT THE PARTICULAR

02:34PM 21  FEATURES OF THE COMBINATION OF TWO WORDS, I MEAN, YOU CAN HAVE

02:34PM 22  A REACTION TO SET CLOCK.

02:34PM 23      THEY SAY OH, WELL YOU COULD USE SOMETHING ELSE, THERE'S 15

02:34PM 24  DIFFERENT COMPANIES, AT LEAST, WHO SAY SET CLOCK, THE

02:34PM 25  IDENTICAL, BUT MAYBE YOU COULD.

02:34PM 1     BUT IT'S GOING TO BE THE SAME, I THINK WHEN YOU HEAR THE

02:34PM 2  EVIDENCE, IT'S GOING TO BE THE SAME FOR IP ADDRESS AND MANY,

02:34PM 3  MANY OTHER COMBINATIONS.  BUT I THINK, MY BELIEF IS TO TRY TO

02:34PM 4  DO THAT NOW ON --

02:34PM 5     THE COURT:  SO HOW DO I DO THAT -- SO I CAN'T -- IT

02:34PM 6  WOULD BE NICE IF THE LAW JUST SAID TWO WORDS NEVER COUNTS OR

02:34PM 7  THREE WORDS NEVER COUNTS, THAT WOULD BE GREAT AND LIFE WOULD BE

02:34PM 8  EASY, BUT IT DOESN'T.

02:35PM 9     SO WHAT DO I LOOK AT TO AGREE WITH YOU?

02:35PM 10    LET'S JUST TAKE THE TWO WORDS, WE WILL START WITH THE

02:35PM 11  SIMPLEST ONE, WHAT IS IT THAT PERSUADES ME UNDER THE LAW THAT I

02:35PM 12  CAN FILTER OUT THE TWO-WORD PHRASES?

02:35PM 13     MR. SILBERT:  I THINK YOU ARE GOING TO SEE THAT THOSE

02:35PM 14  TWO-WORD PHRASES CONSIST OF A COMBINATION OF WORDS THAT ARE

02:35PM 15  EASILY RELATED TO EACH OTHER, NATURALLY RELATED TO EACH OTHER.

02:35PM 16     THE COURT:  I CAN'T DO THAT HERE THAT TAKES AN

02:35PM 17  EVIDENTIARY HEARING.  I'M TRYING TO SEPARATE OUT SO THAT I KNOW

02:35PM 18  WHAT I NEED TO DECIDE TODAY AND TOMORROW.

02:35PM 19     MR. SILBERT:  YES.

02:35PM 20     THE COURT:  SO IF YOU TELL ME THAT'S FOR THE HEARING

02:35PM 21  FOR THE TRIAL, GOOD, SO THIS.

02:35PM 22     MR. SILBERT:  THAT'S WHAT I'M SUGGESTING IS THAT'S

02:35PM 23  FOR THE TRIAL TO TRY TO DO IT -- TO GO THROUGH PARTICULAR

02:35PM 24  COMBINATIONS OF TWO-WORD PHRASES NOW IS NOT REALLY FEASIBLE.

02:35PM 25  SO THAT'S FOR THE TRIAL.

02:35PM 1     THE COURT:  SO I'M LOOKING -- AND AGAIN, I JUST -- AT

02:36PM 2 THE ISSUES THAT YOU ALL AGREED THEY COULD DECIDE, YOU SAID UN

02:36PM 3 PROTECTABLE WORDS AND SHORT PHRASES COULD BE DECIDED WITHOUT A

02:36PM 4 HEARING.

02:36PM 5     MR. SILBERT:  WE DID.  BUT I THINK WE HAD A CAVEAT IN

02:36PM 6 THERE THAT WAS SUBJECT TO CISCO'S ARGUMENT.

02:36PM 7     AND I SHOULD SAY FOR THE RECORD, YOUR HONOR, OUR BELIEF

02:36PM 8 WOULD BE THAT AT LEAST IN THE CASE OF TWO WORDS, AND I

02:36PM 9 UNDERSTAND THIS ISN'T YOUR HONOR'S VIEW OF THE LAW, BUT FOR THE

02:36PM 10 RECORD, OUR VIEW WOULD BE AT LEAST IN THE CASE OF A TWO-WORD

02:36PM 11 PHRASE, IT IS NOT PROTECTABLE.

02:36PM 12     AND WE DO, I WILL NOTE, HAVE THE DISTINCT ELEMENT HERE THAT

02:36PM 13 CISCO IS ALLEGING INDIVIDUAL PROTECTION FOR EACH ONE OF THESE

02:36PM 14 PHRASES.  WHEN IT MIGHT BE A COMPILATION OF WORDS TO MAKE THE

02:36PM 15 PHRASE, BUT WHEN IT COMES TO EACH PHRASE, THEY HAVE BEEN VERY

02:36PM 16 CLEAR ON THE RECORD, TO MY KNOWLEDGE THEY NEVER RETRACTED THIS,

02:36PM 17 THAT THEIR ARGUMENT IS THAT EACH INDIVIDUAL PHRASE, INCLUDING

02:37PM 18 TWO-WORD PHRASES, IS INDIVIDUALLY PROTECTABLE.

02:37PM 19     OUR READING OF THE LAW, I MEAN, WORDS IN SHORT PHRASES,

02:37PM 20 THERE'S NO PHRASE THAT'S NOT AT LEAST TWO WORDS.  A PHRASE IS

02:37PM 21 AT LEAST TWO WORDS.

02:37PM 22     SO OUR VIEW WOULD BE, AND I GUESS TO ACKNOWLEDGE, THERE ARE

02:37PM 23 CASES WHICH SAY THERE IS NO CUTOFF POINT.  THERE'S NO NUMERICAL

02:37PM 24 CUTOFF.

02:37PM 25     THE WAY THAT I READ THOSE CASES IS THEY ARE SAYING IT'S

02:37PM   1    NOT, YOU KNOW, YOU CAN'T SAY THAT ANY 10-WORD PHRASE,

02:37PM   2    ET CETERA, IS TOO SHORT BECAUSE THERE COULD BE EXCEPTIONS.

02:37PM   3        BUT I THINK WHEN YOU GET TO A TWO-WORD PHRASE, IT'S EITHER

02:37PM   4    CATEGORICALLY OUT OR CISCO WOULD NEED TO SHOW SOME VERY

02:37PM   5    CONVINCING TYPE OF PROOF OF ORIGINALITY OR OTHER BASIS OF

02:37PM   6    PROTECTABILITY FOR THAT --

02:37PM   7            THE COURT:  WELL AGAIN, STILL GETTING BACK TO, YOU

02:37PM   8    BOTH SAID I COULD DO IT WITHOUT A HEARING, AND NOW YOU ARE

02:37PM   9    GIVING ME THE ROAD MAP TO DISPUTED EVIDENCE.

02:37PM  10            MR. SILBERT:  YEAH, BECAUSE --

02:38PM  11            THE COURT:  SO IT MEANS I CAN'T DECIDE THIS.

02:38PM  12            MR. SILBERT:  MAYBE WE WERE A LITTLE ASPIRATIONAL IN

02:38PM  13    THAT HOPE.  BUT WE DID HOPE THAT.

02:38PM  14        BUT I THINK IN SEEING HOW -- AND YOU KNOW, WE FILED

02:38PM  15    SIMULTANEOUS BRIEFS, BUT WE DIDN'T KNOW WHAT CISCO'S RESPONSE

02:38PM  16    WAS GOING TO BE.

02:38PM  17            THE COURT:  YOU DID.  BUT WHAT I'M REALLY LOOKING AT

02:38PM  18    IS THE JOINT SUBMISSION REGARDING ANALYTIC DISSECTION CATEGORY

02:38PM  19    SUITABLE FOR DECISION WITHOUT EVIDENTIARY HEARING WHICH

02:38PM  20    PERTAINED TO YOUR RESPONSE TO CISCO'S SUBMISSION OF PROTECTABLE

02:38PM  21    ELEMENTS.

02:38PM  22        SO I'M JUST WALKING THROUGH IT.  YOU SAID I COULD DO THIS

02:38PM  23    WITHOUT A HEARING AND YET IT'S CLEAR THAT I CAN'T.

02:38PM  24            MR. SILBERT:  WE SAID YOU COULD, AND I CAN PULL THAT

02:38PM  25    PLEADING, BUT I BELIEVE WHAT WE SAID WAS SUBJECT TO, WE BELIEVE

02:38PM  1    YOU CAN, AND WE HAD A FOOTNOTE THAT SAID SUBJECT TO SEEING WHAT

02:38PM  2    KIND OF EVIDENCE CISCO SUBMITS IN RESPONSE, IT'S POSSIBLE THAT

02:38PM  3    SOME OF THIS WILL REQUIRE --

02:38PM  4            THE COURT:  I DON'T HAVE ANY FOOTNOTE HERE.  I'M JUST

02:38PM  5    LOOKING AT THE DOCUMENT THAT IDENTIFIED THE ISSUES.

02:38PM  6            MR. SILBERT:  IN ANY EVENT, BUT YOUR HONOR, THE POINT

02:39PM  7    YOUR HONOR IS MAKING IS ABSOLUTELY RIGHT.  WE SAID THAT IN THE

02:39PM  8    BRIEF.  WE HOPED THAT IT COULD.  I'M STANDING HERE TODAY

02:39PM  9    TELLING YOU WHAT THE WAY THINGS PLAYED OUT AND WHERE WE ARE

02:39PM 10    NOW, I DON'T THINK IT'S FEASIBLE TO TRY TO GO THROUGH THOSE.

02:39PM 11            THE COURT:  OKAY.  THAT'S FINE.

02:39PM 12       AND THEN YOUR NEXT CATEGORY WAS CONVENTIONAL COMMAND SYNTAX

02:39PM 13    THAT CISCO COPIED FROM OTHER SOURCES.

02:39PM 14       AND THIS ONE I THINK HAS BEEN AGREED THAT SYNTAX IS NOT

02:39PM 15    BEING SOUGHT.

02:39PM 16            MR. SILBERT:  AGREED.

02:39PM 17            THE COURT:  OKAY.  AND THEN RECORDED SELECTION OR

02:39PM 18    ARRANGEMENT OF COMMANDS THAT IS NOT GROUNDED IN CISCO'S ACTUAL

02:39PM 19    WORKS OR THAT CISCO DID NOT DISCLOSE IN DISCOVERY.

02:39PM 20       I MEAN, I'M INTERRUPTING YOUR PRESENTATION.

02:39PM 21            MR. SILBERT:  NO, THAT'S OKAY.

02:39PM 22            THE COURT:  YOU TOLD ME THINGS I COULD DECIDE AND

02:39PM 23    THEN THE PRESENTATION ISN'T TRACKING THEM.  SO I DON'T ACTUALLY

02:39PM 24    EVEN KNOW IF I'M -- I DON'T WANT TO VENTURE INTO THE AREAS THAT

02:39PM 25    YOU BOTH BELIEVE NEED AN EVIDENTIARY HEARING.

02:40PM 1    MR. SILBERT:  UH-HUH.

02:40PM 2    THE COURT:  AND THEN PROTECTABLE ASPECTS OF THE

02:40PM 3  HIERARCHY, I'M TAKING THE HIERARCHIES AS ALL OR NOTHING.

02:40PM 4    MR. SILBERT:  THE HIERARCHY, MR. KWUN IS GOING TO

02:40PM 5  ADDRESS THEM IN A MINUTE.

02:40PM 6    THE COURT:  OKAY.  SO LET'S JUMP TO THAT.

02:40PM 7    MR. SILBERT:  OKAY.

02:40PM 8    THE COURT:  SO MR. SILBERT, WAS THERE MORE THAT YOU

02:40PM 9  WANTED TO PRESENT?

02:40PM 10    MR. SILBERT:  WELL, I THINK THE ONLY -- THE LAST

02:40PM 11  POINT ABOUT IT IS FASHIONING A JURY INSTRUCTION.

02:40PM 12    AND I THINK THIS IS WHAT WE CAN DO TOMORROW.  BUT IT SOUNDS

02:40PM 13  LIKE EVERYONE IS ON THE SAME PAGE WITH RESPECT TO INDIVIDUAL

02:40PM 14  WORDS FROM INDUSTRY STANDARDS.

02:40PM 15    AND I THINK WE JUST NEED, AND WE HAD PROPOSED ONE IN NUMBER

02:40PM 16  12 WHICH I UNDERSTAND YOUR HONOR HASN'T HAD THE OPPORTUNITY TO

02:40PM 17  READ, BUT --

02:40PM 18    THE COURT:  I HAVEN'T LOOKED AT THE CONTRARY ONE.

02:40PM 19    MR. SILBERT:  BUT AS I SAID, ULTIMATELY ALL OF THE

02:40PM 20  DISSECTION PROCESS COMES DOWN TO JURY INSTRUCTIONS.  AND WE

02:40PM 21  JUST NEED TO FASHION AN APPROPRIATE JURY INSTRUCTION THAT

02:40PM 22  EXPLAINS TO THE JURY THIS IS NOT SOMETHING THAT WOULD BE IN THE

02:41PM 23  REALM --

02:41PM 24    THE COURT:  OKAY.  IN PLAINER ENGLISH OF, YOU ARE NOT

02:41PM 25  TO CONSIDER INDIVIDUAL WORDS, THEY ARE NOT PROTECTED.

02:41PM  1          MR. SILBERT:  YES, INDIVIDUAL WORDS WITH PARTICULAR

02:41PM  2    EMPHASIS ON WORDS TAKEN FROM PRE-EXISTING INDUSTRY STANDARDS.

02:41PM  3          THE COURT:  CISCO IS GIVING YOU MORE THAN YOU ARE

02:41PM  4    ASKING FOR THERE.

02:41PM  5      THEY ARE SAYING THEY ARE NOT ASKING FOR PROTECTION FOR ANY

02:41PM  6    WORD AS AN INDIVIDUAL WORD.  THEY ARE NOT LIMITING IT.

02:41PM  7      I MEAN, YOU LATER MAY WANT THE JURY TO UNDERSTAND WHERE IT

02:41PM  8    COMES FROM FOR OTHER REASONS, AND THAT'S FINE.  YOU ARE NOT

02:41PM  9    BEING RESTRICTED.  BUT THEY ARE GIVING UP ON EVERY INDIVIDUAL

02:41PM  10   WORD.

02:41PM  11         MR. SILBERT:  OKAY.

02:41PM  12         THE COURT:  SO THAT'S SIMPLE FOR THE JURY.

02:41PM  13         MR. SILBERT:  WE WILL TAKE IT.

02:41PM  14         MR. VAN NEST:  BEFORE WE START HERE, YOUR HONOR,

02:41PM  15   THERE IS ONE OTHER THING THAT MR. SILBERT WAS GOING TO ADDRESS,

02:41PM  16   AND I DON'T CARE HOW WE DO IT, BUT MODES AND PROMPTS IS AN

02:41PM  17   ISSUE WE WANT TO TOUCH.

02:41PM  18         THE COURT:  WE WERE GOING TO DO THAT --

02:41PM  19         MR. VAN NEST:  ALL RIGHT.

02:41PM  20      MR. FERRALL IS GOING TO COVER MODES AND PROMPTS AND

02:41PM  21   MR. KWUN IS GOING TO COVER HIERARCHIES.

02:41PM  22         THE COURT:  WE ALL AGREE THAT COMMAND RESPONSES AND

02:41PM  23   RESPECT DESCRIPTIONS FALL IN THE SAME CATEGORY AS COMMAND.

02:42PM  24   THAT'S GREAT.  AND THEN THE MANUAL SOMEONE WILL MAYBE THAT'S

02:42PM  25   NOT EVEN NEEDING ANY FURTHER DISCUSSION.

02:42PM  1      OKAY.  WE ARE GOING TO --

02:42PM  2          THE COURT:  WE ARE GOING TO GO UNTIL THREE THEN TAKE

02:42PM  3  A BREAK.  SO WHY DON'T WE GO AHEAD AND JUMP INTO HIERARCHIES

02:42PM  4  HERE.

02:42PM  5          MR. KWUN:  ABSOLUTELY, YOUR HONOR.

02:42PM  6      I JUST WANTED TO READ A LITTLE BIT FROM THE APPLE V.

02:42PM  7  MICROSOFT CASE, THE ACTUAL DISSECTION OPINION FROM JUDGE

02:42PM  8  WALKER.  IT HAS SOME BACKGROUND THAT I THINK IS USEFUL TO KEEP

02:42PM  9  IN MIND.  AND WHETHER THAT'S FOR TODAY OR FOR LATER ON, IT'S

02:42PM 10  JUST VERY SHORT.

02:42PM 11          THE COURT:  WHICH ONE OF THEM, SO IF I WANT TO GO

02:42PM 12  BACK TO IT?

02:42PM 13          MR. KWUN:  THE 799 F.SUPP, 1006.  I'M READING FROM

02:42PM 14  PAGE 1025, AND I WILL READ A LITTLE BIT FROM 1026 AS WELL.

02:42PM 15      JUDGE WALKER NOTED THAT COPYRIGHT'S PURPOSE IS TO OVERCOME

02:42PM 16  THE FREERIDER'S PROBLEM, THE COPIER PROBLEM.  SO OBVIOUSLY

02:42PM 17  THAT'S SOMEONE ELSE'S STORY.  BUT HE ALSO NOTED THAT OVERLY

02:42PM 18  INCLUSIVE COPYRIGHT PROTECTION CAN PRODUCE ITS OWN NEGATIVE

02:43PM 19  AFFECTS BY INHIBITING THE ADOPTION OF COMPATIBLE STANDARDS AND

02:43PM 20  REDUCING SO CALLED NETWORK EXTERNALITIES.  SUCH STANDARDS IN A

02:43PM 21  GRAPHIC USER INTERFACE WOULD ENLARGE THE MARKET FOR COMPUTERS

02:43PM 22  BY MAKING THEM EASIER TO LEARN HOW TO USE THEM.

02:43PM 23      SO WHAT HE'S TALKING ABOUT THERE IS WE GO FROM ONE COMPUTER

02:43PM 24  TO ANOTHER AND WE GO TO FILE AND WE CHOOSE PRINT, HAVING TO

02:43PM 25  SWITCH THAT WHEN YOU GO TO ANOTHER COMPUTER, THAT'S NO GOOD FOR

1   ANYONE.

2       AND ALL THE COMPUTERS ARE EASIER TO USE IF WE ALL AGREE,

3   JUST LIKE IF WE ALL AGREE WHERE THE STEERING WHEEL IS GOING TO

4   BE ON THE CAR, THE FACT THAT THERE'S GOING TO BE A STEERING

5   WHEEL, THAT THE BRAKE IS GOING TO BE ON THE LEFT, THOSE ARE ALL

6   GOOD THINGS FOR EVERYONE INVOLVED.

7       AND HE SAID, JUDGE WALKER SAID, WHILE THE MACINTOSH

8   INTERFACE, WHICH WAS THE COPYRIGHTED, THE KEY COPYRIGHTED ISSUE

9   THERE, MAY BE THE FRUIT OF CONSIDERABLE EFFORT BY ITS

10  DESIGNERS, IT SUCCESSES THE RESULT OF A HOST OF FACTORS,

11  INCLUDING VARIOUS HARBOR DECISIONS AND THE LIKE.

12      AND I THINK THAT'S CLEARLY TRUE HERE AS WELL, THAT WHILE WE

13  HAVE AN INTERFACE, WE HAVE A LOT OF OTHER SOFTWARE BEHIND THAT,

14  AND MORE IMPORTANTLY, WE HAVE A LOT OF HARDWARE BEHIND THAT.

15      THERE'S NO PURPOSE IN HAVING AN INTERFACE FOR A NETWORK

16  SWITCH IF YOU DON'T ACTUALLY HAVE A NETWORK SWITCH.  SO YOU

17  HAVE TO HAVE THE HARDWARE.

18      AND HE SAID, EVEN WERE APPLE ABLE TO ISOLATE THAT PART OF

19  ITS INTERFACES' SUCCESS GOING TO ITS DESIGN EFFORTS, LENGTHY

20  AND CONSERVATIVE EFFORT ALONE DOES NOT ALWAYS RESULT IN

21  INHERENTLY PROTECTABLE EXPRESSION.

22      AND THEN ON PAGE 1026, HE SAID, AFTER A DISCUSSION OF THE

23  COMPETITION THAT THIS ALLOWS, THE GOOD COMPETITION THIS ALLOWS,

24  HE SAID THE IMPORTANCE OF SUCH COMPETITION AND THUS

25  IMPROVEMENTS OR EXTENSIONS OF PAST EXPRESSIONS, SHOULD NOT BE

02:44PM 1    MINIMIZED.

02:44PM 2         SO AS HE WAS CONSIDERING THE ENTIRE PROCESS OF ANALYTIC

02:44PM 3    DISSECTION, HE OF COURSE WANTED TO PROTECT THE RIGHTFUL RIGHTS

02:44PM 4    THAT BELONGED TO THE COPYRIGHT OWNER.  BUT HE ALSO WANTED TO

02:45PM 5    MAKE SURE THAT HE DIDN'T CREATE A STRANGELY VULCANIZED SYSTEM

02:45PM 6    WHERE NO ONE WAS ABLE TO USE A TRASH SYMBOL OR A FOLDER ICON,

02:45PM 7    THINGS LIKE THAT.

02:45PM 8         BUT TURNING TO THE NOTION OF HIERARCHY --

02:45PM 9         THE COURT:  AND WAS THAT BECAUSE IT WAS TOO RELATED

02:45PM 10   TO THE FUNCTIONALITY?  HOW IS HE -- WHAT WAS HIS HOOK ON THAT

02:45PM 11   AS TO WHY IT WOULDN'T BE PROTECTED?

02:45PM 12        MR. KWUN:  SO HIS HOOK ON THAT, A LOT OF IT DID HAVE

02:45PM 13   TO DO WITH WHERE THESE THINGS CAME FROM, THE METAPHORS AND

02:45PM 14   IDEA.

02:45PM 15        BUT IF YOU LOOK AT THE CASE LAW, WE ALSO HAVE THE SEGA CASE

02:45PM 16   AND THE SONY CASE WHERE THE NINTH CIRCUIT TALKS DIRECTLY ABOUT

02:45PM 17   THE NEED FOR ALLOWING COMPETITION, AND THAT THERE'S PROPER

02:45PM 18   COMPETITION, THAT THERE IS SUCH A THING AS COMPETITION THAT THE

02:45PM 19   COPYRIGHT ACT AND COPYRIGHT LAWS ARE SUPPOSED TO FOSTER RATHER

02:45PM 20   THAN HINDER.

02:45PM 21        THE COURT:  OKAY.

02:45PM 22        MR. KWUN:  IF I COULD HAVE SLIDE 37 UP.

02:46PM 23        THIS IS FROM CISCO'S -- ONE OF CISCO'S INTERROGATORY

02:46PM 24   RESPONSES.  AND I THINK THAT REALLY GETS AT A POINT, THAT AT

02:46PM 25   LEAST I THOUGHT YOU WERE TRYING TO RAISE YOURSELF, WHICH IS

02:46PM 1    THAT THE HIERARCHY, THEY SAY THE COPYING OF THE HIERARCHY

02:46PM 2    EXISTS BECAUSE OF THE COPYING OF THE COMMAND EXPRESSIONS.  AND

02:46PM 3    I THINK THEY ARE REALLY ONE AND THE SAME.

02:46PM 4         AND I THINK THAT IF YOU LOOK AT, DURING THEIR PRESENTATION

02:46PM 5    WE SAW A SLIDE, SLIDE 19, THIS WAS BEFORE WE GOT TO

02:46PM 6    HIERARCHIES, SLIDE 19 IN CISCO'S PRESENTATION TODAY, TALKED

02:46PM 7    ABOUT WHY THE INDIVIDUAL COMMAND PHRASES WERE COPYRIGHTABLE.

02:46PM 8         AND WHAT YOU HEARD IS THAT THERE WAS CREATIVITY IN THE

02:46PM 9    ORDER.  BUT THE THING IS, IF YOU SAY THERE'S CREATIVITY IN THE

02:46PM 10   ORDERING, YOU CAN'T CLAIM A HIERARCHY ANYMORE.  BECAUSE THE

02:46PM 11   HIERARCHY REQUIRES THAT IF YOU HAVE -- IF YOU ORDER THINGS BY

02:46PM 12   SHOW, THAT THEY ALL START WITH THE WORD SHOW.  YOU NO LONGER

02:47PM 13   CAN PUT THE WORD SHOW AT THE END OF YOUR COMMAND, BECAUSE NOW

02:47PM 14   YOU ARE IN A DIFFERENT HIERARCHY.

02:47PM 15        AND REALLY, ALL YOU HAVE HEARD ABOUT THE HIERARCHY, IS THE

02:47PM 16   HIERARCHY IS A LIST OF, WHEN I TYPE IN ONE WORD, HOW MANY

02:47PM 17   COMMANDS BEGIN WITH THAT WORD.

02:47PM 18        AND YOU HEARD THAT THERE ARE SOME COMMANDS THAT DON'T

02:47PM 19   ACTUALLY EXIST IN A HIERARCHY.  BUT YOU ALSO HEARD THAT THE WAY

02:47PM 20   YOU CAN FIND THESE HIERARCHIES IS YOU TYPE IN THE FIRST WORD

02:47PM 21   AND A QUESTION MARK.

02:47PM 22        AND I LIKE THE QUESTION I HEARD WHICH IS, WELL WHAT IF

02:47PM 23   THERE IS A COMMAND, A SEVERAL-WORD COMMAND, THAT IS ACCORDING

02:47PM 24   TO CISCO, NOT IN THE HIERARCHY.  AND YOU TYPE IN THE FIRST WORD

02:47PM 25   AND YOU TYPE QUESTION MARK, WHAT DO YOU GET?  YOU GET A LISTING

02:47PM 1    OF WHAT MR. PAK THEN CONCEDED MIGHT BE TERMED A HIERARCHY OF

02:47PM 2    ONE.

02:47PM 3            THE COURT:  RIGHT.

02:47PM 4            MR. KWUN:  SO THERE'S REALLY NO DIFFERENCE BETWEEN

02:47PM 5    THIS.

02:47PM 6        AND SO THEN THE QUESTION IS, WHY DOES THIS MATTER?  I MEAN,

02:47PM 7    CERTAINLY WE WOULD CONCEDE THAT EVERY COMMAND OUT THERE HAS A

02:47PM 8    FIRST WORD.  SO WHY CAN'T THEY JUST CALL THAT A HIERARCHY?

02:47PM 9        AND THE REASON WHY IS BECAUSE WE HAVE A COPYRIGHT CASE HERE

02:48PM 10   THAT'S BASED NOT ON COPYING OF THE HARDWARE, NOT ON COPYING OF

02:48PM 11   THE SOURCE CODE, IT'S BASED ON THESE APPROXIMATELY 500

02:48PM 12   COMMANDS.

02:48PM 13       AND FRANKLY, WE WON'T AGREE ON THIS TODAY, BUT I THINK

02:48PM 14   THAT'S A PRETTY THIN CASE.  AND CISCO WANTS TO BE ABLE TO SAY

02:48PM 15   OH, BUT THERE'S SO MUCH MORE THAT WAS COPIED.

02:48PM 16       AND SO THEY WANT TO BE ABLE TO SAY NOT ONLY DID THEY COPY

02:48PM 17   OUR COMMANDS, THEY ALSO COPIED OUR HIERARCHIES.

02:48PM 18            THE COURT:  SO IT'S DOUBLE COUNTING IS WHAT YOU ARE

02:48PM 19   SAYING.

02:48PM 20            MR. KWUN:  IT'S ABSOLUTELY DOUBLE COUNTING.

02:48PM 21       AND IT'S GOING TO BE HARD, THIS IS GOING TO BE A HARD CASE

02:48PM 22   FOR A LOT OF THE JURORS TO GET.  THIS IS GOING TO BE TECHNOLOGY

02:48PM 23   THAT THEY ARE NOT FAMILIAR WITH, THERE ARE GOING TO BE WORDS,

02:48PM 24   PROTOCOLS THEY ARE NOT FAMILIAR WITH, ALL OF THIS IS GOING TO

02:48PM 25   BE A LITTLE STRANGE TO THEM.  PROBABLY A LOT OF THEM HAVE NEVER

02:48PM  1    USED A COMMAND LINE.

02:48PM  2              THE COURT:  RIGHT.

02:48PM  3              MR. KWUN:  SO WHEN THEY HEAR THAT THERE ARE TWO

02:48PM  4    THINGS, IT'S NOT GOING TO BE IMMEDIATELY APPARENT TO THEM AND

02:48PM  5    IT'S UNFAIR FOR ARISTA TO HAVE TO BATTLE AGAINST THE SUGGESTION

02:49PM  6    THAT THERE ARE TWO THINGS BEING COPIED.

02:49PM  7              THE COURT:  SO I'M MORE IN LINE WITH YOUR ARGUMENT

02:49PM  8    THAT IT IS THE HIERARCHY THAT IS WHERE THE CREATIVE PROCESS

02:49PM  9    OCCURRED AND THE COMMAND LINE IS SIMPLY THE OUTPUT OF THAT

02:49PM  10   CREATIVE PROCESS.  NOTHING MORE COULD POSSIBLY HAVE GONE INTO

02:49PM  11   THE COMMAND LINE THAT WASN'T DETERMINED IN THE CREATION OF THE

02:49PM  12   HIERARCHY.  THAT WOULD INCLUDE THE COMMAND LINES THAT ARE AT

02:49PM  13   HIERARCHY OF ONE.

02:49PM  14      AND I THINK CONCEPTUALLY, THAT WORKS.  AND I SUPPOSE WE

02:49PM  15   WOULD HAVE TO LET -- CISCO ALLEGES A HIERARCHY, THOSE OF THE

02:49PM  16   508 THAT DON'T LIVE IN ONE OF THESE ASSERTED HIERARCHIES

02:49PM  17   BECAUSE I'M -- WE ARE KIND OF -- I'M AGREEING WITH YOU THAT

02:49PM  18   IT'S THE HIERARCHY, BECAUSE YOU ARE RIGHT, ONCE THEY PICK SHOW

02:49PM  19   AS THE FIRST WORD, MR. NELSON'S PROCESS OF ONE LINE OF DECIDING

02:49PM  20   WHERE THE WORDS GO, ACTUALLY IS NOT WHAT THEY DID.

02:50PM  21      THAT'S NOT WHAT WAS DONE.  IT WAS DONE AT THE HIERARCHY

02:50PM  22   STAGE OF WHAT ARE WE GOING TO ACCUMULATE UNDER SHOW, WHAT ARE

02:50PM  23   WE GOING TO ACCUMULATE UNDER BANNER OR IP OR, THERE ARE DOZENS

02:50PM  24   OF THEM, BUT IT WAS A STEP-BY-STEP DETERMINATION, ONCE YOU PICK

02:50PM  25   THE FIRST STEP, THEN THE COMMAND LINE THAT'S SPIT OUT IS JUST

02:50PM 1    THE RESULT OF IT, OF THE HIERARCHY.

02:50PM 2        IS THAT WHAT YOU ARE SAYING?

02:50PM 3            MR. KWUN:  WELL, THAT'S CERTAINLY ONE WAY OF VIEWING

02:50PM 4    IT.  AND I WANT TO TAKE THAT TO ITS END CONCLUSION, WHICH IS IT

02:50PM 5    ACTUALLY TAKES OUT THE ALLEGATION AS TO THE 500 COMMANDS.

02:50PM 6            THE COURT:  THAT'S WHAT I'M SAYING.  BUT ALL OF THEM

02:50PM 7    LIVE IN A HIERARCHY.

02:50PM 8            MR. KWUN:  SO THE CHOICE TO THEN SAY THAT THOSE

02:50PM 9    INDIVIDUAL COMMANDS ARE INDIVIDUALLY PROTECTABLE GOES OUT THE

02:50PM 10   WINDOW BECAUSE THEY ARE NOT CLAIMING PROTECTION OVER INDIVIDUAL

02:50PM 11   WORDS, THEY ARE NOT CLAIMING PROTECTION OVER THE IDEA OF A

02:50PM 12   HIERARCHY BECAUSE WE ALL KNOW THAT WOULD BE NOT PROTECTABLE.

02:50PM 13       AND IF THE -- IF THEY WANT TO HOLD ON TO HIERARCHY, THEN

02:50PM 14   THERE IS NO LONGER A CLAIM ABOUT 500 INDIVIDUAL COMMANDS.

02:51PM 15       SO THAT IS ONE POTENTIAL WAY OF VIEWING IT, I SUPPOSE.

02:51PM 16   HIERARCHY AT THAT POINT, IT BECOMES SOMEWHAT -- IT DOES SEEM

02:51PM 17   STILL TO BE A RATHER FANCY WAY OF SAYING WE HAD SOME WORDS THAT

02:51PM 18   WE PUT TOGETHER.

02:51PM 19           THE COURT:  AND THAT'S OKAY.  BUT THAT CAN BE

02:51PM 20   PROTECTABLE.

02:51PM 21           MR. KWUN:  IT COULD THEORETICALLY BE PROTECTABLE,

02:51PM 22   THAT'S TRUE.

02:51PM 23           THE COURT:  AND THEN THE TWO-WORD PHRASES HAVE MORE

02:51PM 24   MEANING IF THEY ARE DEVELOPED UNDER THE CONSTRUCT OF A

02:51PM 25   HIERARCHY, BECAUSE THEN IT IS PART OF A MUCH BIGGER CREATIVE

02:51PM 1    PROCESS AS OPPOSED TO FOCUSSING ON THE ONE LINE.

02:51PM 2        AND SO THEN I WOULDN'T FILTER OUT ANY OF THEM, I WOULD JUST

02:51PM 3    ADOPT OR INSTRUCT THE JURY THAT THE HIERARCHIES, AS YOU SEE

02:51PM 4    THEM, NOT THE IDEA OF A HIERARCHY, BUT THESE HIERARCHIES, ARE

02:51PM 5    PROTECTABLE.

02:51PM 6        MR. KWUN:  SO I THINK THAT'S A DANGEROUS ROUTE TO GO

02:52PM 7    BECAUSE THAT BASICALLY WIPES OUT THE WORDS AND SHORT PHRASES

02:52PM 8    DOCTRINE.

02:52PM 9        IF THEY SWITCH TACTICS AND TRY TO SAY, WELL, IT HAS TO DO

02:52PM 10   WITH THE HIERARCHICAL STRUCTURE OF WHAT WORD GOES FIRST AND

02:52PM 11   WHAT WORD GOES SECOND, THEN I DON'T NEED TO DEAL WITH THIS LONG

02:52PM 12   STANDING DOCTRINE.

02:52PM 13       THAT WOULD BE LIKE SAYING WELL, IN MY BOOK, I HAVE A LOT OF

02:52PM 14   SENTENCES THAT START WITH THE WORD I, AND I'M GOING TO CALL

02:52PM 15   THAT A HIERARCHY, AND THEREFORE YOUR ARGUMENT THAT I RUN, I

02:52PM 16   WALK, THAT THOSE ARE ALL SHORT PHRASES IS NO LONGER ANY GOOD.

02:52PM 17       THE COURT:  WELL, WHAT MR. NELSON TOLD ME WAS THEY

02:52PM 18   ARE NOT ASSERTING THE, EACH INDIVIDUAL HIERARCHY OF A PHRASE.

02:52PM 19   THEY ARE ASSERTING THE ENTIRE SHOW HIERARCHY IN IOS AS AN

02:52PM 20   ENTIRETY AS OPPOSED TO EACH LINE OF IT.  AND THAT'S DIFFERENT

02:52PM 21   TO ME.

02:52PM 22       MR. KWUN:  SO WHAT YOU HAVE SEEN IN THE BRIEFING THAT

02:52PM 23   HAS BEEN SUBMITTED SO FAR ON THESE HIERARCHIES, I JUST WANT TO

02:53PM 24   MAKE CLEAR THAT THEY HAVE TAKEN A HIERARCHY FOR CISCO AND A

02:53PM 25   HIERARCHY FOR ARISTA, NEITHER OF WHICH EXISTS IN THE ACTUAL

02:53PM  1    WORLD.

02:53PM  2                 THE COURT:  OKAY.  SO I KNOW THAT'S BEEN SAID BEFORE

02:53PM  3    AND I JUST READ IT AND I'M ENTIRELY LOST.  YOU HAVE TO EXPLAIN

02:53PM  4    THAT TO ME.  BECAUSE I MEAN, I UNDERSTAND WHAT THAT MEANS, BUT

02:53PM  5    I'M LOOKING AT THEIR -- THE HIERARCHIES THAT THEY DISCLOSED AS

02:53PM  6    BEING COPIED.  AND YOU ARE TELLING ME THEY DON'T EVEN EXIST?

02:53PM  7                 MR. KWUN:  THEY EXIST AS SUBSETS OF AN ACTUAL

02:53PM  8    HIERARCHY.  AND WHAT I MEAN BY THAT IS THERE ARE A LOT OF

02:53PM  9    COMMANDS THAT A CISCO SWITCH CAN UNDERSTAND THAT START WITH THE

02:53PM  10   WORD SHOW.

02:53PM  11                THE COURT:  OKAY.

02:53PM  12                MR. KWUN:  AND THERE ARE A LOT OF COMMANDS THAT AN

02:53PM  13   ARISTA SWITCH CAN UNDERSTAND THAT START WITH THE WORD SHOW.

02:53PM  14   AND THERE IS SOME OVERLAP BETWEEN THOSE.  BUT THE HIERARCHIES

02:53PM  15   THEY SHOW YOU ARE THE OVERLAP.  THEY DON'T SHOW ALL OF THE

02:54PM  16   POSSIBLE SHOW COMMANDS.

02:54PM  17         AND IF THEY ARE CLAIMING THAT THEIR CREATIVITY WAS IN THEIR

02:54PM  18   HIERARCHY, THE SELECTION OF THE, LET'S SAY 150 ITEMS IN A

02:54PM  19   HIERARCHY, AND THEN WE HAD 130, AND THEY WEREN'T EVEN THE

02:54PM  20   SAME -- THEY WEREN'T EVEN A SUBSET OF THAT, THEY OVERLAP

02:54PM  21   SOMEWHAT, THAT'S REALLY IMPORTANT.

02:54PM  22         IF INDEED THE CLAIM IS OVER THE HIERARCHY, THE FACT THAT WE

02:54PM  23   ARE NOT THE SAME, PARTICULARLY UNDER A VIRTUAL IDENTICAL

02:54PM  24   STANDARD, THAT'S GOING TO BE VERY IMPORTANT FOR THE JURY.

02:54PM  25                THE COURT:  IT'S A LITTLE BIT LIKE A VIN DIAGRAM YOU

02:54PM 1    ARE SHOWING ME.  IS THAT WHAT IT IS?

02:54PM 2            MR. KWUN:  IT IS A VIN DIAGRAM.  SO IF YOU HAVE THE

02:54PM 3    TWO CIRCLES AND YOU HAVE THE OVERLAP AREA, ALL YOU HAVE BEEN

02:54PM 4    SHOWN SO FAR IS THE OVERLAP WITHOUT ANY INDICATION THAT THERE'S

02:54PM 5    TWO LARGER CIRCLES.

02:54PM 6            THE COURT:  SO IT GETS A LITTLE PERPLEXING TO ME,

02:54PM 7    BECAUSE OF COURSE CISCO'S OBLIGATION IS TO SHOW ME THE ELEMENTS

02:54PM 8    THAT THEY ALLEGE HAVE BEEN COPIED AND NOT TO SHOW ME AND BOTHER

02:55PM 9    ME WITH THINGS THAT HAVEN'T BEEN COPIED.

02:55PM 10           MR. KWUN:  SURE.

02:55PM 11           THE COURT:  SO THIS WAS THEIR JOB.  AND IT IS

02:55PM 12   IMPORTANT TO UNDERSTAND THAT ALL -- AND YOU KNOW, I'M JUST

02:55PM 13   LOOKING AT A PAGE, I HAPPEN TO BE OPEN TO PAGE 60, THAT IS

02:55PM 14   NEIGHBOR.

02:55PM 15       AND NX-OS, WHAT YOU ARE SAYING IS THAT CISCO HAS A

02:55PM 16   HIERARCHY THAT BEGINS WITH NEIGHBOR.  AND IT WOULD PROBABLY

02:55PM 17   HAVE MORE THAN THE 10 OR 8 LISTED SECOND PHRASES, SECOND WORDS.

02:55PM 18           MR. KWUN:  QUITE POSSIBLY.  AS TO ANY PARTICULAR

02:55PM 19   HIERARCHY, I'M NOT GOING TO BE ABLE TO TELL YOU.

02:55PM 20           THE COURT:  JUST AS AN EXAMPLE.

02:55PM 21           MR. KWUN:  YES.  I CAN GIVE YOU ONE EXAMPLE.  IF WE

02:55PM 22   CAN SEE SLIDE 38, IT'S ONLY GOING TO ONE DIRECTION.

02:55PM 23           THE COURT:  OKAY.  ALL RIGHT.

02:55PM 24           MR. KWUN:  THIS IS ONE OF THE HIERARCHIES THAT THEY

02:55PM 25   HAVE COMPARED.

02:55PM 1        AND SO FIRST OF ALL YOU WILL SEE AT THE TOP, THAT IS THE

02:55PM 2   BGP HIERARCHY FOR IOS, ACCORDING TO CISCO.  BUT I WANT TO POINT

02:56PM 3   OUT THAT THAT ENTIRE DIAGRAM IS LAWYER-CREATED, THAT IS NOT OUT

02:56PM 4   OF A MANUAL OR ANYTHING ELSE, THAT IS A DEMONSTRATIVE CREATED

02:56PM 5   BY CISCO'S ATTORNEYS.

02:56PM 6        AND THEN DOWN AT THE BOTTOM, YOU HAVE THE CORRESPONDING

02:56PM 7   BORDER GATEWAY PROTOCOL HIERARCHY FOR AN ARISTA SWITCH.  AND

02:56PM 8   YOU WILL SEE THAT THEY HAVE BLACKED OUT 1, 2, 3, 4 ITEMS IN

02:56PM 9   THERE.  AND THE REASON THEY BLACKED THOSE OUT IS BECAUSE THOSE

02:56PM 10  DO NOT EXIST IN THE CISCO HIERARCHY.

02:56PM 11       SO THAT BLACKED OUT PORTION THERE IS THE MISSING CIRCLE ON

02:56PM 12  THE ARISTA CIRCLE, THE NON-OVERLAPPING PORTION.

02:56PM 13       AND THE BGP HIERARCHY AS SHOWN AT THE TOP OF THIS, IS

02:56PM 14  AGAIN, THAT AGAIN OMITS ANYTHING THAT WE DID NOT COPY.

02:56PM 15            THE COURT:  BUT THIS IS MORE A MATTER OF AN

02:56PM 16  EVIDENTIARY RULING THAT CISCO CANNOT INTRODUCE AS AN EXHIBIT, A

02:56PM 17  DOCUMENT THAT IS, THAT ONLY PURPORTS TO TAKE A PIECE OF THEIR

02:57PM 18  OWN HIERARCHY.  THEY HAVE TO SHOW THEIR HIERARCHY AND SHOW YOUR

02:57PM 19  HIERARCHY AND THEN ARGUE THE COPYING AND SHOW THE OVERLAP TO

02:57PM 20  THE JURY AND ARGUE THE SUBSTANTIALITY OF THE COPYING.  ISN'T

02:57PM 21  THAT AN EVIDENTIARY ISSUE?

02:57PM 22            MR. KWUN:  I THINK IT'S CERTAINLY AN EVIDENTIARY

02:57PM 23  ISSUE.  I THINK IT'S ALSO A JURY INSTRUCTION ISSUE.

02:57PM 24       AND ONE OF THE ITEMS THAT WAS ON THE LIST HERE WAS WHAT

02:57PM 25  SOMEWHAT STRANGELY PHRASED, AND IT WAS ITEM 4 THAT WE SKIPPED

02:57PM  1    OVER, THAT'S ACTUALLY WHAT WE ARE DISCUSSING NOW, THE ANY

02:57PM  2    PURPORTED SELECTION OR ARRANGEMENT OF COMMANDS THAT IS NOT

02:57PM  3    GROUNDED IN CISCO'S ACTUAL WORKS.

02:57PM  4              THE COURT:  WHAT PAGE ARE YOU ON?

02:57PM  5              MR. KWUN:  THIS IS ON PAGE 1 OF THE JOINT SUBMISSION

02:57PM  6    REGARDING ANALYTIC DISSECTION.  THAT'S AT ABOUT LINE 18.  I

02:57PM  7    THOUGHT THIS WAS WHAT YOU WERE JUST READING FROM --

02:57PM  8              THE COURT:  WELL, I'VE GONE BACK INTO YOUR DOCUMENT

02:57PM  9    THAT EXPLAINS THEM.

02:57PM  10             MR. KWUN:  I SEE.

02:57PM  11             THE COURT:  THIS IS 3A-6.

02:58PM  12             MR. KWUN:  3A-6.  YES.  AND I BELIEVE, I'M JUST GOING

02:58PM  13    OFF THE SUMMARY DOCUMENT, BUT I BELIEVE THE INTENT --

02:58PM  14             THE COURT:  OKAY.  AND I DIDN'T UNDERSTAND THAT AT

02:58PM  15    ALL.  SO THANK YOU.  THAT'S REALLY HELPFUL.

02:58PM  16             MR. KWUN:  BUT THE BASIC NOTION HERE IS THAT THE JURY

02:58PM  17    NEEDS TO UNDERSTAND THAT WHEN THEY ARE BEING ASKED TO EVALUATE

02:58PM  18    THE COPYING OF A SELECTION, THAT THEY NEED TO UNDERSTAND WHAT

02:58PM  19    THEY ARE COMPARING IS THE ENTIRE SELECTION ON ONE SIDE TO THE

02:58PM  20    ENTIRE SELECTION ON THE OTHER SIDE, NOT JUST THE COPIED PART

02:58PM  21    BECAUSE OF COURSE THAT WOULDN'T ANSWER THE QUESTION FOR THEM.

02:58PM  22             THE COURT:  AND THAT'S HELPFUL, BECAUSE I ACTUALLY

02:58PM  23    DIDN'T UNDERSTAND THAT.  I THOUGHT THESE HIERARCHIES WERE

02:58PM  24    CISCO'S HIERARCHIES, LOCK, STOP AND BARREL FOR SHOW OR FOR

02:58PM  25    SOMETHING ELSE AND IT'S NOT.

02:58PM 1        AND SO ACTUALLY, WHAT'S HERE IN THE -- IN CISCO'S

02:58PM 2    SUBMISSION, THESE WERE ONLY DEMONSTRATIVE.  AND IT WOULD ONLY

02:58PM 3    COME IN AS A DEMONSTRATIVE AND COULDN'T BE ARGUED OTHERWISE.

02:58PM 4        AND SO THE EVIDENCE WOULD ARE HERE'S CISCO'S HIERARCHY FOR

02:58PM 5    SHOW, AND HERE IS ARISTA'S HIERARCHY FOR SHOW, AND THEN HERE'S

02:59PM 6    THE DEMONSTRATIVE THAT SHOWS YOU HOW MUCH OF IT THEY TOOK FROM

02:59PM 7    OURS.  IS THAT --

02:59PM 8            MR. KWUN:  SURE, SURE.  I DON'T NEED THEM TO DO THE

02:59PM 9    LAST PART BUT I SUPPOSE THEY WANT TO.

02:59PM 10           THE COURT:  SO I'M ONLY DECIDING WHETHER HIERARCHIES

02:59PM 11   IN GENERAL, NOT IN HIERARCHY, IS PROTECTABLE.  THAT'S NOT A

02:59PM 12   HARD DECISION FOR ME TO MAKE.  I DON'T THINK IT IS.  I MEAN,

02:59PM 13   THAT --

02:59PM 14           MR. KWUN:  ALSO REMEMBER THERE'S TWO THINGS COMMANDS

02:59PM 15   AS WELL AS HIERARCHIES.

02:59PM 16           THE COURT:  NOW WE ARE INTO WHETHER THEY ARE TWO

02:59PM 17   THINGS.  LET'S JUST STICK WITH THE HIERARCHY FIRST.

02:59PM 18       SO IF I DECIDE THAT THE HIERARCHIES ARE PROTECTED BECAUSE I

02:59PM 19   HAVE REALLY UNDISPUTED EVIDENCE OF THIS PROCESS OF SELECTION

02:59PM 20   AND CONSIDERATION, AND IT'S THE ENTIRETY OF THE SHOW HIERARCHY,

02:59PM 21   I'M JUST USING THAT AS AN EXAMPLE, THERE ARE MANY OF THEM, THEN

02:59PM 22   THE ISSUE OF HOW MUCH OF IT WAS COPIED IS NOT MY CONCERN RIGHT

02:59PM 23   NOW.  THAT'S NOT MY CONCERN ON ANALYTIC DISSECTION, CORRECT?

02:59PM 24           MR. KWUN:  THAT IS NOT YOUR CONCERN.

03:00PM 25       WHAT WILL BE YOUR CONCERN, AT LEAST TOMORROW, IS HOW WE

03:00PM 1    PHRASE IT TO THE JURY SO THAT THEY CAN PROPERLY ENGAGE IN THAT

03:00PM 2    EXERCISE.

03:00PM 3            THE COURT:  WELL, THAT HAS TO DO WITH YOUR DE MINIMUS

03:00PM 4    ISSUES AND YOUR FAIR USE ISSUES.

03:00PM 5            MR. KWUN:  AND ALSO JUST GENERAL JURY INSTRUCTIONS TO

03:00PM 6    INFRINGEMENT.  CERTAINLY, IT HAS TO DO WITH DE MINIMUS, BUT

03:00PM 7    IT'S GOING TO HAVE TO DO WITH THE VIRTUAL IDENTITY TEST AND

03:00PM 8    WHAT IT IS THEY ARE COMPARING WHEN THEY ARE DOING THIS.

03:00PM 9            THE COURT:  IT CERTAINLY WILL.

03:00PM 10           MR. KWUN:  BECAUSE OF THE THINGS THEY ARE GOING TO BE

03:00PM 11   HEARING ABOUT IS THAT THEY COPIED OUR HIERARCHY, AND THEY ARE

03:00PM 12   GOING TO NEED TO UNDERSTAND WHAT THAT MEANS.

03:00PM 13           THE COURT:  OKAY.

03:00PM 14       WELL, MR. NELSON, IT SEEMS CLEAR TO ME THAT IF YOU WANT TO

03:00PM 15   SUGGEST TO THE JURY THAT YOUR HIERARCHY WAS COPYING, WE NEED TO

03:00PM 16   SEE YOUR HIERARCHY, NOT A PIECE OF YOUR HIERARCHY.

03:00PM 17       AND YOU CAN HIGHLIGHT AND PUT A RED BOX AROUND THE PORTION

03:00PM 18   OF IT THAT YOU ARE ALLEGING WAS COPIED, BUT YOU CAN'T

03:00PM 19   MISREPRESENT WHAT YOUR HIERARCHY IS.

03:00PM 20           MR. NELSON:  OH, AGREED, YOUR HONOR.  THAT'S WHY, AND

03:00PM 21   I APOLOGIZE IF I DIDN'T MAKE THAT CLEAR, BUT THAT'S WHY I TRIED

03:00PM 22   TO SAY --

03:00PM 23           THE COURT:  I'M JUST COMING UP TO SPEED ON THIS.

03:00PM 24           MR. NELSON:  THAT'S WHY I TRIED TO EMPHASIZE THAT

03:01PM 25   WHAT WE CHOSE TO DO IS ILLUSTRATE THEIR COPYING OF THAT WITH

03:01PM 1    THE ASSERTED COMMANDS.

03:01PM 2                THE COURT:  OKAY.

03:01PM 3                MR. NELSON:  WE COULD HAVE, YOU KNOW, GONE WELL

03:01PM 4    BEYOND THAT, BUT THEN WE START GETTING INTO A FIGHT LIKE WELL,

03:01PM 5    YOU DIDN'T COPY THESE COMMANDS AS OPPOSED TO THE HIERARCHY.  SO

03:01PM 6    I AGREE WITH YOUR HONOR.

03:01PM 7                THE COURT:  OKAY.

03:01PM 8                MR. NELSON:  BUT I STILL JUST WANT TO MAKE CLEAR

03:01PM 9    THAT, YOU KNOW, THE COMMANDS THEMSELVES, THOSE ARE SEPARATE AND

03:01PM 10   APART FROM THE HIERARCHY, RIGHT.

03:01PM 11               THE COURT:  I'M NOT SURE I'M GOING TO AGREE WITH YOU

03:01PM 12   ON IT BECAUSE I DON'T KNOW WHAT CREATIVE PROCESS BEYOND THE

03:01PM 13   HIERARCHY.

03:01PM 14     IT SEEMS LIKE ALL THE CREATIVITY WENT TO DEVELOPING THE

03:01PM 15   HIERARCHY AND THEN WHEN YOU GET TO THE COMMAND, IT IS JUST A

03:01PM 16   RESULT OF THE HIERARCHY.

03:01PM 17               MR. NELSON:  NO, THAT'S NOT -- SO THE WORD CHOICES

03:01PM 18   THAT GO INTO THAT, THAT'S PART OF IT.  WHAT WORDS YOU CHOOSE TO

03:01PM 19   PUT INTO THAT.

03:01PM 20               THE COURT:  OKAY.  BUT NOT THE ORDER OF THEM.

03:01PM 21     THE ORDER OF THEM IS DICTATED BY THE HIERARCHIES.

03:01PM 22               MR. NELSON:  NOT ALWAYS, NOT ALWAYS.

03:01PM 23     AND LET ME SHOW YOU SLIDE 26 AGAIN JUST TO CLARIFY THIS

03:01PM 24   POINT WHILE WE ARE ON IT.

03:01PM 25               SO RECALL THESE ARE ACTUAL EXISTING HIERARCHIES THAT ARE IN

03:02PM 1     THERE, AND THERE'S TWO REASONS WHY THAT WON'T BE THE CASE.

03:02PM 2         SO WE HAVE ALL THE WAY TO THE LEFT OF THE SLIDE, AND SLIDE

03:02PM 3     26 IS SHOWING THE IP HIERARCHY.  THERE'S OBVIOUSLY ADDITIONAL

03:02PM 4     CHILDREN THAT WE DIDN'T SHOW FOR PURPOSES OF THE SLIDE.

03:02PM 5         SO YOU HAVE A NUMBER OF THINGS, THIS WOULD BE ORGANIZED,

03:02PM 6     THIS COMMAND HIERARCHY, WHERE YOUR INITIAL PARENT, YOU KNOW, IS

03:02PM 7     THE IP.  AND THEN YOU HAVE THE THINGS THAT YOU CAN DO TO IT

03:02PM 8     WHICH YOU WOULD CALL THE CHILDREN, RIGHT.

03:02PM 9             THE COURT:  RIGHT.

03:02PM 10            MR. NELSON:  BUT THEN YOU CAN SEE HERE IN THE "SHOW

03:02PM 11    HIERARCHY," IT ISN'T SET UP AND IT ISN'T DICTATED, BECAUSE

03:02PM 12    REMEMBER, THESE ARE GUIDELINES.  THAT YOU NECESSARILY -- ANY

03:02PM 13    TIME YOU ARE DOING SOMETHING WITH THE IP PROTOCOL, YOU GOT TO

03:02PM 14    PUT IT IN THE IP HIERARCHY.

03:02PM 15        SO IF WE LOOK AT THIS SHOW, FOR EXAMPLE, YOU WILL SEE THAT

03:02PM 16    IP IS A CHILD IN THAT.

03:03PM 17        SO THAT WAS A CHOICE.  IT COULD HAVE BEEN THAT THEY ADDED

03:03PM 18    SHOW TO IP, RIGHT.  SO YOU ALWAYS HAVE THAT CREATIVE CHOICE OF

03:03PM 19    WHERE YOU DECIDE TO PUT THE INDIVIDUAL COMMAND WITHIN THE

03:03PM 20    HIERARCHY

03:03PM 21            THE COURT:  IT'S SORT OF A CHICKEN AND EGG ISSUE

03:03PM 22    HERE.  IT SEEMS TO ME THESE DECISIONS ARE MADE IN THE CONTEXT

03:03PM 23    OF CREATING THE HIERARCHIES.

03:03PM 24            MR. NELSON:  WELL, NO, BECAUSE OFTEN TIMES WHAT WILL

03:03PM 25    HAPPEN IS THE HIERARCHY THEN WILL -- YOU WILL CONTINUE TO ADD

03:03PM 1    TO THAT AS A HIERARCHY, ONCE YOU HAVE DEVELOPED THOSE COMMANDS.

03:03PM 2        SO YOU WILL HAVE SOMETHING THE VRRP COMMAND, MAYBE VRRP, IP

03:03PM 3    SECONDARY, AND THEN WHEN YOU DECIDE TO EXPAND THAT, YOU WILL

03:03PM 4    SAY, BEING00, I'M GOING TO CREATE A VRRP HIERARCHY, AND I'M

03:03PM 5    GOING TO PUT ADDITIONAL FUNCTIONALITY UNDER THAT.

03:03PM 6        SO IT ISN'T NECESSARILY THAT THEY RESULT THAT WAY, THE WORD

03:03PM 7    CHOICES AND THE ORDERING IN TERMS OF, AND THEN OF COURSE THESE

03:04PM 8    COMMANDS YOU CAN SEE IF I STICK WITH THE VRRP ONE, YOU KNOW YOU

03:04PM 9    WILL HAVE VRRP DELAY, RELOAD, RIGHT.

03:04PM 10       SO SETTING ASIDE THE WORD CHOICES THAT WENT IN THERE, AND I

03:04PM 11   GAVE YOU THE EXAMPLE OF HOW FOR EACH OF THOSE WORDS IN

03:04PM 12   DESCRIBING FUNCTIONALITY THERE ARE MANY CHOICES THAT COULD HAVE

03:04PM 13   GONE INTO IT.  AND WE WENT THROUGH THE "SHOW INVENTORY"

03:04PM 14   TESTIMONY ON THAT AS WELL WHICH WOULD BE THE TESTIMONY, SO THE

03:04PM 15   WORD CHOICES THEMSELVES.

03:04PM 16           THE COURT:  WORD CHOICE, OKAY.

03:04PM 17           MR. NELSON:  RIGHT.

03:04PM 18       BUT IN HERE, IN TERMS OF DELAY AND RELOAD, THOSE -- THERE

03:04PM 19   IS NO HIERARCHY THERE, RIGHT.  YOU COULD HAVE JUST FLIPPED

03:04PM 20   THOSE AROUND BECAUSE YOU DON'T HAVE A DELAY HIERARCHY, YOU

03:04PM 21   DON'T HAVE A RELOAD HIERARCHY, FROM WHAT YOUR HONOR IS SAYING.

03:04PM 22       SO THERE ISN'T -- EVEN ONCE I CHOOSE TO SAY I'M GOING TO

03:04PM 23   PUT IT IN VRRP, WHATEVER THIS COMMAND IS, I'M GOING TO EXTEND,

03:04PM 24   FOR EXAMPLE VRRP LET'S JUST SAY I HAD IP SECONDARY, FIRST, NOW

03:04PM 25   I SAY OKAY, WELL I GOT TO DELAY THE RELOAD FUNCTIONALITY.

03:05PM  1    WELL, IT DOESN'T -- THAT DIDN'T DICTATE THE ORDERING OF

03:05PM  2  THAT.  I COULD HAVE PUT, COULD HAVE CREATED A DELAY HIERARCHY.

03:05PM  3  I COULD HAVE SAID VRRP, EVEN IF I USED THE SAME WORD CHOICE

03:05PM  4  BECAUSE I DON'T WANT TO COMPLICATE THE ANALYSIS.  I ALREADY

03:05PM  5  HAVE CHOSEN DELAY AND RELOAD FOR DESCRIBING THESE THINGS.

03:05PM  6        THE COURT:  THAT'S ALL THE PROCESS OF THE CREATIVITY

03:05PM  7  IN THE HIERARCHY.  BUT ONCE YOU HAVE A VRRP IP, THAT WILL

03:05PM  8  PRODUCE A COMMAND.

03:05PM  9        MR. NELSON:  WELL, IN THIS PARTICULAR, THERE IS NO

03:05PM 10  VRRP IP COMMAND.

03:05PM 11        THE COURT:  I SEE, THAT WAS A BAD CHOICE BECAUSE

03:05PM 12  THERE IS A SECONDARY.  AND IT'S IP SECONDARY.

03:05PM 13        MR. NELSON:  CORRECT.

03:05PM 14        THE COURT:  AND -- BUT YOU HAVEN'T EXPLAINED TO ME

03:05PM 15  THAT THE AUTHORS OR ENGINEERS CREATED A COMMAND AND THEN PUT IT

03:05PM 16  INTO A HIERARCHY, YOU'VE DESCRIBED IT THE OTHER WAY AROUND.

03:05PM 17        MR. NELSON:  WELL, WHAT I WAS TRYING TO DO IS TO SAY

03:05PM 18  THE ORDERING, THERE IS SOMETHING TO THE ORDERING AS WELL.

03:06PM 19     SO THERE WILL BE TESTIMONY THAT THAT IS THE CASE, RIGHT.

03:06PM 20        THE COURT:  SO IT SEEMS TO ME MORE LIKELY THEN THAT

03:06PM 21  WHAT YOU ARE TALKING ABOUT IS THAT HIERARCHIES ARE CREATED AND

03:06PM 22  IT'S AN EVOLVING PROCESS, AND WHEN YOU GET TO THE SELECTION OF

03:06PM 23  SHOW IP, IT COULD BE IP SHOW.  YOU COULD HAVE DONE IT EITHER

03:06PM 24  WAY.

03:06PM 25        AND IN FACT, YOU COULD STILL DO IT BOTH WAYS, NOTHING WOULD

03:06PM 1    PREVENT DOING IT BOTH WAYS AND CREATING, YOU HAVE SHOW IP AND

03:06PM 2    THEN SOMETHING ELSE HERE IN THE SHOW HIERARCHY, BUT NOTHING

03:06PM 3    TELLS ME THAT WHEN THE ENGINEERS WERE CREATING THE IP HIERARCHY

03:06PM 4    THEY COULDN'T HAVE PUT SHOW AS THE SECONDARY WORD.

03:06PM 5            MR. NELSON:  WELL, NO, THEY COULD HAVE, BUT THAT'S

03:06PM 6    PART OF THE POINT, RIGHT.

03:06PM 7        SO YOU HAVE SEVERAL CHOICES WITH RESPECT TO THAT.  LET'S

03:06PM 8    SET ASIDE THE WORD CHOICE CREATIVITY FOR A MOMENT BECAUSE THERE

03:06PM 9    ARE CREATIVITY AND THAT WILL BE THE TESTIMONY THERE IS

03:07PM 10   CREATIVITY WITH RESPECT TO EACH OF THESE INDIVIDUAL WORD

03:07PM 11   CHOICES, RIGHT, IN TERMS OF WHAT COMBINATION I PICK.

03:07PM 12       BUT EVEN ONCE YOU'RE GIVEN THAT, SO IT MAY BE THAT THE

03:07PM 13   DESIGNERS AND THE STATE OF THE UI AT THAT POINT, THERE IS A

03:07PM 14   SHOW HIERARCHY, RIGHT.  AT SOME POINT IN TIME.

03:07PM 15       AND YOU MAY SAY I WANT TO ADD TO THE SHOW HIERARCHY.  SO

03:07PM 16   I'M GOING TO PUT SHOW AS THE FIRST WORD IN THIS COMMAND, RIGHT.

03:07PM 17   THAT MAY BE THE CASE.

03:07PM 18       ALSO, AS YOU SEE HERE, YOU MAY BE, BECAUSE I'M WORKING ON

03:07PM 19   THE IP PROTOCOL AND THERE EITHER EXISTS AN IP PROTOCOL OR LET'S

03:07PM 20   SAY THERE'S A POINT IN TIME WHERE THERE WAS NO IP HIERARCHY,

03:07PM 21   YOU COULD DECIDE I WANT TO PUT IP AS THE FIRST COMMAND, EITHER

03:07PM 22   BECAUSE I WANT TO CREATE A NEW IP HIERARCHY OR I WANT TO GO

03:07PM 23   TOTALLY OUTSIDE THE EXISTING HIERARCHIES.

03:07PM 24       SAME WITH THE VRRP THAT YOU CAN SEE HERE.  SO THERE IS A

03:07PM 25   CHOICE.  AND YOU CAN, YOU CAN HAVE THESE THINGS OUTSIDE, LET'S

03:07PM  1    SAY I DECIDED, YOU KNOW WHAT, RELOAD IS REALLY THE IMPORTANT

03:08PM  2    THING HERE, I COULD GO RELOAD, DELAY VRRP, RIGHT.  I COULD DO

03:08PM  3    THAT.  AND I UNDERSTAND --

03:08PM  4            THE COURT:  BUT I UNDERSTAND ALL OF THAT.  AND I'M

03:08PM  5    WITH YOU ON THE CREATIVE PROCESS THAT GOES INTO THESE

03:08PM  6    HIERARCHIES, I'M NOT REALLY STRUGGLING WITH THAT.

03:08PM  7        THE QUESTION IS ARE YOU DOUBLE COUNTING?  AND THE JURY

03:08PM  8    HEARING THAT THE HIERARCHY IS CREATIVE AND THEN HEARING FROM

03:08PM  9    YOU SEPARATELY, AND EACH OF THESE COMMAND LINES IS CREATIVE,

03:08PM 10    AND WHEN YOU ADD IT ALL TOGETHER, NOW WE ARE REALLY TALKING

03:08PM 11    COPYING.  WHEN IN FACT, WE REALLY SHOULD LOOK AT IT AS THE

03:08PM 12    CREATIVE EFFORT THAT WENT INTO THE HIERARCHIES THEMSELVES, AND

03:08PM 13    SOME HIERARCHIES HAVE ONLY ONE COMMAND LINE THAT IS PRODUCED BY

03:08PM 14    THEM, AND IT CAN CHANGE OVER TIME, BUT WE ARE LOOKING BACKWARDS

03:08PM 15    HERE.

03:08PM 16            MR. NELSON:  SO WITH THAT, AND I UNDERSTAND WHAT

03:08PM 17    YOUR HONOR IS SAYING, AND THAT'S WHY -- THAT'S WHY WE TRY TO

03:08PM 18    USE THE EXAMPLES OF HOW THE HIERARCHIES EXIST INDEPENDENTLY,

03:09PM 19    WHICH IS WHAT WE WOULD TALKING ABOUT, NOT A RECOUNTING OF THE

03:09PM 20    COMMANDS, THAT COULD BE CLEAR THAT'S NOT WHAT WE ARE TALKING

03:09PM 21    ABOUT.

03:09PM 22        WE ARE TALKING ABOUT THE ORGANIZATIONAL STRUCTURE SUCH THAT

03:09PM 23    WE KNOW WHEN YOU GO IN YOU TYPE SHOW QUESTION MARK AND YOU GET

03:09PM 24    BECAUSE THAT IS A HIERARCHICAL STRUCTURE WITHIN THERE, YOU GET

03:09PM 25    ALL THE THINGS YOU CAN DO UNDER THAT.

03:09PM  1      THE COURT:  BUT TO ME, YOU ARE GETTING INTO THE IDEA

03:09PM  2  OF HELP DESCRIPTIONS AS TO IF YOU PUT SHOW AND QUESTION MARK IT

03:09PM  3  TELLS YOU WHAT YOUR OPTIONS ARE.  AND I'M A LITTLE BIT -- I

03:09PM  4  THINK THAT TAKES YOU A STEP BACKWARDS.

03:09PM  5      MR. NELSON:  I UNDERSTAND WHAT YOU ARE SAYING BUT

03:09PM  6  THAT'S WHY, IT'S NOT THE IDEA OF THAT, THAT IS AN

03:09PM  7  IMPLEMENTATION OF THE SHOW HIERARCHY WHICH THEY DID IN THE SAME

03:09PM  8  WAY.

03:09PM  9      THE COURT:  SO SHOW QUESTION MARK PRODUCES THIS

03:09PM  10  HIERARCHY THAT IS LONGER THAN WHAT I'VE SEEN HERE BUT IT

03:09PM  11  PRODUCES THE WHOLE LENGTHY --

03:09PM  12      MR. NELSON:  THAT'S EXACTLY RIGHT.  THAT'S WHAT WE

03:09PM  13  WOULD BE SAYING.

03:09PM  14    SO THE COMMANDS, WE ARE NOT TALKING ABOUT TRYING TO DOUBLE

03:09PM  15  COUNT AND SAY OH, LOOK, WE HAVE 506 COMMANDS AND THESE

03:10PM  16  HIERARCHIES ARE ANOTHER, YOU KNOW, LOOK AT ALL THESE COMMANDS.

03:10PM  17  IT'S THE HIERARCHICAL STRUCTURE.  WE HAVE TO FIGURE OUT EXACTLY

03:10PM  18  HOW TO LIMIT THAT, BECAUSE I UNDERSTAND WHAT YOUR HONOR IS

03:10PM  19  SAYING.

03:10PM  20      THE COURT:  I'M NOT SURE IT'S DIFFERENT IN THE

03:10PM  21  PROCESS OF CREATING THE HIERARCHICAL STRUCTURE AS CREATING THE

03:10PM  22  COMMAND LINE.

03:10PM  23      MR. PAK:  SO YOUR HONOR, IF I MAY.

03:10PM  24    MR. NELSON SHOWED THE SHOW INVENTORY EXAMPLE, THAT IS ONE

03:10PM  25  IS WE PICKED TOGETHER SPECIFICALLY TO ILLUSTRATE TWO THINGS.

03:10PM 1    ONE IS THERE WAS A HIERARCHICAL CHOICE AS TO WHETHER WHEN

03:10PM 2    YOU ARE DISPLAYING THIS INFORMATION ABOUT THE PART NUMBERS AND

03:10PM 3    THE SERIAL NUMBERS AND THE SWITCHES, SWITCH EQUIPMENT THAT YOU

03:10PM 4    ARE USING, DO YOU USE THE SHOW HIERARCHY, DO YOU CREATE

03:10PM 5    SOMETHING CALLED MODULE AT THE VERY BEGINNING, BECAUSE NOW YOU

03:10PM 6    WANT TO HAVE HIERARCHY, THOSE ARE HIERARCHICAL CHOICES.

03:10PM 7    BUT THE REASON WHY WE PICKED THAT EXAMPLE IS EVEN AFTER YOU

03:10PM 8    MADE THE HIERARCHICAL DECISION TO GO WITH THE SHOW HIERARCHY

03:10PM 9    AND OTHER TYPES OF CREATIONS OF NEW HIERARCHIES, HE STILL HAD

03:10PM 10   IMPORTANT DECISIONS TO MAKE ABOUT THE WORD CHOICE SPECIFICALLY.

03:11PM 11   THE COURT:  THE WORD CHOICE IS, I THINK, PERSUASIVE.

03:11PM 12   MR. PAK:  AND SO IF YOU THINK ABOUT THAT, IT'S NOT

03:11PM 13   JUST THE CREATIVE SPARK IN DECIDING DO I USE AN EXISTING

03:11PM 14   HIERARCHY, IF SO, WHICH ONE, AND ALSO POSSIBLY CREATE A NEW

03:11PM 15   HIERARCHY, THAT'S THE HIERARCHICAL SPARK.  THERE'S ALSO THE

03:11PM 16   CREATIVE SPARK, IN MANY INSTANCES, OF WHAT ARE THE WORDS THEY

03:11PM 17   USE.

03:11PM 18   AND WHAT WAS REALLY INTERESTING ABOUT MR. REMAKER'S

03:11PM 19   TESTIMONY IS HE ACTUALLY TALKS ABOUT POTENTIAL CONFLICTS WITH

03:11PM 20   THE EXISTING HIERARCHIES THAT IF YOU USE THE CERTAIN WORD LIKE

03:11PM 21   IDENTITY, BECAUSE THERE WERE OTHER TYPES OF SECURITY FEATURES

03:11PM 22   IN THE SYSTEM.  HE SAID IF I USE SHOW IDENTITY, ALL OF THE

03:11PM 23   INDUSTRY STANDARD DOCUMENTS TALK ABOUT IDENTITY AS THE TERM FOR

03:11PM 24   THAT TYPE OF STRUCTURE.  THAT MIGHT START TO CREATE CONFUSION

03:11PM 25   WITH THE EXISTING TERMINOLOGY.

03:11PM 1      THE COURT:  SO I GUESS ONE OF MY PROBLEMS HERE IS

03:11PM 2  THAT YOU ARE NOT CLAIMING PROTECTABLITY OF ANY INDIVIDUAL WORD.

03:11PM 3  SO IT'S ONLY THE PROCESS OF COMBINING WORDS.

03:12PM 4      MR. PAK:  CORRECT.

03:12PM 5      THE COURT:  AND SO WORD "CHOICE" IS NO LONGER, IS IT

03:12PM 6  REALLY ON THE TABLE, WORD CHOICE?

03:12PM 7      MR. PAK:  ABSOLUTELY, YOUR HONOR.

03:12PM 8      THE COURT:  BUT THEN YOU ARE SEEKING PROTECTION OF

03:12PM 9  THE WORD INVENTORY.

03:12PM 10      MR. PAK:  NO.  WE ARE SAYING WORD CHOICE IN THE

03:12PM 11  SEQUENCING, THAT'S WHY THE "SHOW INVENTORY" IS SO IMPORTANT,

03:12PM 12  BECAUSE ONCE YOU DECIDED THAT HE'S GOING TO PUT IT UNDER

03:12PM 13  "SHOW," HE REALIZED THAT SHOW COMMAND IS SUCH A BROAD COMMAND

03:12PM 14  THAT COVERS ALL KIND OF FUNCTIONALITY.

03:12PM 15    IF YOU PICK THE INDUSTRY STANDARD TONE OF IDENTITY --

03:12PM 16      THE COURT:  THE CHOICE THAT'S MADE ONCE YOU HAVE SHOW

03:12PM 17  SELECTED.

03:12PM 18      MR. PAK:  EXACTLY.

03:12PM 19      THE COURT:  BUT WHY ISN'T THAT PART OF THE HIERARCHY?

03:12PM 20      MR. PAK:  BECAUSE THAT IS THE WORD CHOICE.

03:12PM 21    THAT IS THE WORD CHOICE WE ARE TALKING ABOUT BECAUSE YOU

03:12PM 22  KNOW THE HIERARCHY IS GOING TO BE SHOW.  YOU KNOW, IT'S THE

03:12PM 23  SECOND LEVEL IN THE HIERARCHY.  BUT BECAUSE SHOW HAS SUCH BROAD

03:12PM 24  FUNCTIONALITY, IT COVERS ALL KINDS OF FEATURES IN THE SYSTEM.

03:12PM 25    IF HE HAS SELECTED THE WORD IDENTITY, EVEN IF IT THAT COMES

03:12PM  1     FROM AN INDUSTRY STANDARD DOCUMENT, THAT WOULD CAUSE CONFLICT

03:12PM  2     OR CONFUSION OF THE MIND OF THE USER BECAUSE "SHOW" CAN BE USED

03:13PM  3     WITH A LOT OF DIFFERENT FEATURES.

03:13PM  4          HAD HE DECIDED A DIFFERENT HIERARCHY, IF HE SAID MODULE, I

03:13PM  5     HAVE NO DOUBT THAT HE COULD HAVE DONE MODULE AND THEN

03:13PM  6     "IDENTITY" IN THE CONTEXT OF A MODULE, HIERARCHY SELECTION, THE

03:13PM  7     WORD CHOICE "IDENTITY" COULD HAVE MADE MORE SENSE.

03:13PM  8          SO THE WORD CHOICES, AS YOU BUILD OUT, THESE COMBINATIONS,

03:13PM  9     ARE BEING MADE IN THE CONTEXT OF HIERARCHY.  AND WE HAVE,

03:13PM 10     YOUR HONOR, I HAVE, WE DON'T HAVE THAT TIME TODAY.  BUT I HAVE

03:13PM 11     E-MAILS OF DEBATES AND PEOPLE ARGUING ABOUT THESE VERY ISSUES

03:13PM 12     THAT WE ARE TALKING ABOUT.

03:13PM 13          WE CREATE A NEW HIERARCHY, IF WE DO, WHAT IS IT, IF WE USE

03:13PM 14     AN EXISTING HIERARCHY, WHAT WORD DO WE USE.  OH, NO, YOU CAN'T

03:13PM 15     USE THAT WORD BECAUSE NOW WE ARE IN THE "SHOW HIERARCHY," AND

03:13PM 16     SO IT MAY CAUSE CONFUSION WITH OTHER WORDS OR CONCEPTS THAT ARE

03:13PM 17     UNDER THAT GENERAL UMBRELLA WHICH IS THE SHOW HIERARCHY.

03:13PM 18          SO THIS IS AGAIN GOING BACK TO WE REALLY CAN'T LOOK AT

03:14PM 19     THINGS IN ABSTRACT AND SAY ALTHOUGH WE'VE DONE IT FOR

03:14PM 20     CONVENIENCE SAKE BECAUSE THE LEGAL ARGUMENTS ARE STRUCTURED IN

03:14PM 21     UPPER TERMS OF THESE CATEGORIES.

03:14PM 22          WE CAN LOOK AT COMMAND EXPRESSIONS, THE HIERARCHY, THE

03:14PM 23     DOCUMENTATION AND SO FORTH.  BUT THE CREATIVE PROCESS DOESN'T

03:14PM 24     WORK THAT WAY.  THE CREATIVE PROCESS IS SAYING WHAT ARE SOME

03:14PM 25     HIERARCHICAL DECISIONS I NEED TO MAKE, WHAT ARE SOME WORD

03:14PM 1    CHOICES I NEED TO MAKE.  WHAT ARE THE OTHER TYPES OF THINGS

03:14PM 2    THAT GO INTO THE OVERALL STRUCTURE AND ORGANIZATION?  AND WE

03:14PM 3    REALLY CAN'T IGNORE ALL OF THAT HISTORICAL RECORD.

03:14PM 4        THE COURT:  SO THEN DO WE INSTRUCT THE JURY THAT THE

03:14PM 5    COMMANDS, THE PROTECTABLE ELEMENT IS THE WORD CHOICE?

03:14PM 6        MR. PAK:  WE COULD SAY THAT, YOUR HONOR.

03:14PM 7      AND I THINK IF YOUR HONOR WERE TO GIVE A SEPARATE

03:14PM 8    INSTRUCTION ON THE HIERARCHY, WE COULD TALK ABOUT THAT AS WELL.

03:14PM 9      BUT I REALLY THINK WHEN YOU HEAR THE TESTIMONY YOU WILL

03:14PM 10   HEAR, AND I'M HAPPY TO GO THROUGH IT AGAIN AS I MENTIONED,

03:14PM 11   THERE'S A LOT OF TESTIMONY, A LOT OF DOCUMENTS THAT TALK ABOUT

03:14PM 12   THE INTERPLAY BETWEEN THESE HIERARCHICAL CHOICES, THE WORD

03:15PM 13   CHOICES AND ALL OF THAT.

03:15PM 14       THE COURT:  ALL RIGHT.  WE NEED TO TAKE A BREAK, IT'S

03:15PM 15   JUST GOTTEN TO BE TOO LONG FOR THE COURT REPORTER.

03:15PM 16       MR. NELSON:  CAN WE PICK UP RIGHT THERE, BECAUSE I

03:15PM 17   HAVE A SUGGESTION.

03:15PM 18       THE COURT:  YES, WE CAN.  LET'S TAKE A TEN-MINUTE

03:15PM 19   BREAK.

03:15PM 20     (WHEREUPON A RECESS WAS TAKEN.)

03:27PM 21     THE COURT:  YOU KNOW, MR. NELSON, LET ME JUST PICK UP

03:27PM 22   BECAUSE WE WERE GOING TO PICK UP WHERE WE LEFT OFF BEFORE THE

03:27PM 23   BREAK.

03:27PM 24     I DON'T WANT TO MISCONSTRUE THE PROCESS THAT CISCO ENGAGED

03:27PM 25   IN, AND SO WHERE IT MIGHT SEEM LOGICAL TO ME THAT THE HIERARCHY

03:27PM  1     CAME FIRST AND THE COMMAND LINE WAS A BYPRODUCT, THAT MIGHT NOT

03:27PM  2     BE CORRECT.

03:27PM  3          SO OF COURSE I'M IN THE DARK HERE, AND I DO SEE OVERLAP, SO

03:27PM  4     I REALLY WANT TO HEAR FROM YOU WHETHER I'VE GOT THE PROCESS

03:27PM  5     BACKWARDS, PERHAPS.

03:27PM  6          MR. NELSON:  WELL, IN CERTAIN INSTANCES AND OTHER

03:28PM  7     INSTANCES THE HIERARCHY WOULD BE THERE AND THEN THERE'S A

03:28PM  8     CHOICE MADE AS TO WHETHER YOU ARE GOING TO BE CONSISTENT.

03:28PM  9          SO IN OTHER WORDS, THERE WAS NO HARD AND FAST RULE WITH

03:28PM 10     RESPECT TO THAT.  AND SO IT ISN'T REALLY, IT'S NOT A CHICKEN

03:28PM 11     AND AN EGG ISSUE BECAUSE THERE WOULDN'T ALWAYS BE A CHICKEN AND

03:28PM 12     THERE WOULDN'T ALWAYS BE AN EGG, I DON'T KNOW IF THAT MAKES

03:28PM 13     SENSE.  BUT YOU KNOW WHAT I'M SAYING?

03:28PM 14          THE COURT:  I DO, YEAH.

03:28PM 15          MR. NELSON:  SO THAT, THAT WOULD BE THE EVIDENCE WITH

03:28PM 16     RESPECT TO THIS.  BUT LET ME EXPLORE A LITTLE BIT OF

03:28PM 17     YOUR HONOR'S CONCERN HERE AND THEN MAYBE I CAN ADDRESS SOME OF

03:28PM 18     IT.

03:28PM 19          SO IT SEEMS LIKE, AND SURE WE ARE GOING TO ARGUE ABOUT IT,

03:28PM 20     BUT IN TERMS OF THE CREATIVITY HIERARCHIES AND DECIDING, HAVING

03:28PM 21     THAT GO INTO HOW YOU DECIDE THESE STRUCTURES AND HOW IT BECOMES

03:28PM 22     MORE INTUITIVE FOR AN ENGINEER, IT SEEMS LIKE YOU ARE FINE WITH

03:28PM 23     ALL OF THAT AS A CONCEPT.

03:28PM 24          THE COURT:  YEAH.

03:28PM 25          MR. NELSON:  THAT'S NOT A PROBLEM.

03:28PM  1    THE ONLY QUESTION IS, AS PRESENTED, AND IF I LOOKED AT THAT

03:28PM  2    PROTECTABLITY FILING, YOU LOOK AT IT AND YOU SAY OKAY, YOU'VE

03:29PM  3    GOT THESE 506 COMMANDS, I THINK THAT'S THE RIGHT NUMBER, THEY

03:29PM  4    ARE ALL LISTED HERE, RIGHT.  AND THEN YOU HAVE THE HIERARCHIES

03:29PM  5    LISTED, AND IT'S MOST OF THE 506 COMMANDS AGAIN, AND NOW YOU

03:29PM  6    ARE GOING TO PRESENT THAT TO THE JURY.

03:29PM  7    AND NOW TO THE JURY IT LOOKS LIKE, WELL, WAIT A MINUTE,

03:29PM  8    THAT'S TWICE AS MUCH STUFF, RIGHT.

03:29PM  9    SO I UNDERSTAND THAT, AND THAT'S WHY I WAS TRYING TO

03:29PM  10   EXPLAIN WHAT THE DIFFERENCE IS.  BUT THE -- WOULD IT BE MORE

03:29PM  11   COMFORTABLE FOR YOUR HONOR IF WHAT WE DID IN TERMS OF THE

03:29PM  12   EVIDENCE ABOUT HIERARCHY, RATHER THAN ASSERTING IT AS AN

03:29PM  13   INDEPENDENT STANDING ALONE ELEMENT, BUT ASSERTED THAT AS PART

03:29PM  14   OF THE EVIDENCE OF THE CREATIVITY AND THE PROCESS THAT GOES

03:29PM  15   INTO THE COMMAND STRUCTURES THAT ARE THERE, AND YOU KNOW THEY

03:29PM  16   CAN EXPLAIN WHEN THEIR COMMANDS, WHEN THEY DECIDED DON'T PUT IN

03:29PM  17   ANY HIERARCHY AT ALL.

03:29PM  18   BUT I DON'T KNOW IF THAT KIND OF THING WOULD TAKE CARE OF

03:29PM  19   THE CONCERN THAT YOUR HONOR IS RAISING BECAUSE IT STRIKES ME

03:30PM  20   THAT WE ARE HAVING THE DISCUSSION, BOTH THE DISCUSSION YOU HAD

03:30PM  21   WITH ME AND WITH MR. KWUN THAT IT ISN'T SO MUCH THE IDEA OF THE

03:30PM  22   HIERARCHIES AND YOUR SPECIFIC HIERARCHIES, IT IS, WAIT A

03:30PM  23   MINUTE, IS THAT REALLY NOW YOU ARE TALKING ABOUT THAT AS PART

03:30PM  24   OF THE PROCESS OF THE COMMANDS AND THE CREATION AND THE

03:30PM  25   ORIGINALITY OF THE COMMANDS AND NOW YOU ARE TALKING ABOUT IT

03:30PM  1    AGAIN IN THE CONTEXT OF THE HIERARCHY.  AND I'M THINKING MAYBE

03:30PM  2    TO THE JURY THAT SOUNDS LIKE TOO MUCH.

03:30PM  3        AND SO DOES THAT --

03:30PM  4            THE COURT:  I THINK THAT DOES.  I WILL WANT TO HEAR

03:30PM  5    FROM MR. KWUN.  I THINK THAT REALLY ADDRESSES PART OF HIS

03:30PM  6    ARGUMENT.

03:30PM  7        I MEAN, I KNOW THERE ARE OTHER PARTS TO IT, MR. KWUN, BUT I

03:30PM  8    THINK, I'VE ADDRESSED, THROUGH AN EVIDENTIARY CONSIDERATION,

03:30PM  9    HOW THE HIERARCHY WILL BE PRESENTED TO THE JURY SO THAT THEY

03:30PM  10   DON'T THINK THAT THE SHORTER LIST IS CISCO'S PROTECTABLE

03:30PM  11   PRODUCT.

03:30PM  12           MR. KWUN:  YOUR HONOR, I THINK BETWEEN THE TWO OF

03:30PM  13   THOSE --

03:30PM  14           MR. VAN NEST:  WELL, WAIT A MINUTE, I'M CONFUSED

03:30PM  15   ABOUT WHAT WAS OFFERED.  THAT'S NOT WHAT WAS OFFERED, I DON'T

03:31PM  16   THINK, YOUR HONOR.

03:31PM  17           THE COURT:  NO, THAT WAS A DIFFERENT ISSUE.

03:31PM  18           MR. VAN NEST:  YEAH.  I JUST WANT TO UNDERSTAND

03:31PM  19   WHAT'S BEEN OFFERED.

03:31PM  20       WHAT I UNDERSTAND THAT'S BEEN OFFERED IS, EFFECTIVELY, YOU

03:31PM  21   FILTER OUT THE HIERARCHIES, THEY ARE NOT A SEPARATE CATEGORY

03:31PM  22   BUT THEY CAN PRESENT EVIDENCE OF CREATION OF THE HIERARCHIES AS

03:31PM  23   PART OF THEIR OVERALL CREATIVITY, BUT THEY DON'T HAVE

03:31PM  24   HIERARCHIES AS A SEPARATE BUILDING BLOCK IN THE FIGHT.  THAT'S

03:31PM  25   WHAT I UNDERSTOOD MR. NELSON TO BE OFFERING.

03:31PM   1          THE COURT:  THAT'S WHAT I UNDERSTOOD WITH MUCH OF THE

03:31PM   2   EVIDENCE OF, THIS IS THE HIERARCHY, THIS IS PART OF OUR

03:31PM   3   PROCESS, BUT OFFERED NOW AS PART OF A FOURTH BUILDING BLOCK,

03:31PM   4   NOT A FOURTH AND FIFTH SEPARATE BUILDING BLOCK.

03:31PM   5          MR. NELSON:  YEAH, EXACTLY.

03:31PM   6      I DON'T THINK -- THE ONLY CLARIFICATION I WOULD MAKE THERE,

03:31PM   7   I DON'T THINK IT'S A FILTERING IN THE SENSE OF THAT, BECAUSE

03:31PM   8   FILTERING TO ME IS HERE'S SOMETHING THAT EVIDENCE THAT YOU

03:31PM   9   CAN'T PRESENT.

03:31PM   10         THE COURT:  I'M NOT FILTERING.  YOU MODIFIED HOW YOU

03:31PM   11  ARE PRESENTING IT SO THAT I DON'T NEED TO FILTER IT BY

03:31PM   12  ADDRESSING THE DEFENSE CONCERNS.

03:31PM   13         MR. NELSON:  EXACTLY.

03:32PM   14         THE COURT:  OKAY.  AND I THINK IT ALL COMES OUT THE

03:32PM   15  SAME FOR MR. VAN NEST BECAUSE NOW THERE WILL BE FOUR BUILDING

03:32PM   16  BLOCKS, EVIDENCE OF THE ROLE OF HIERARCHIES IN CREATING COMMAND

03:32PM   17  LINES, BUT THEY WON'T BE ASKED WHETHER THERE WAS COPYING OF A

03:32PM   18  HIERARCHY, PER SE.

03:32PM   19         MR. VAN NEST:  RIGHT.

03:32PM   20     AND WE WON'T BE -- THERE WILL BE NO VERDICT QUESTION ON IT,

03:32PM   21  THERE WILL BE NO -- YEAH.

03:32PM   22         MR. NELSON:  WE WEREN'T --

03:32PM   23         MR. VAN NEST:  IT'S NOT AN ELEMENT IN THEIR

03:32PM   24  COPYRIGHTED WORK AT THIS POINT.

03:32PM   25         MR. NELSON:  WE WEREN'T PROPOSING VERDICT ELEMENTS ON

03:32PM  1      THE --

03:32PM  2              THE COURT:  YOU WEREN'T DOING THAT ANY WAY.

03:32PM  3              MR. PAK:  RIGHT.  THAT WON'T BE ON OUR VERDICT FORM,

03:32PM  4      FOR SURE.

03:32PM  5              MR. VAN NEST:  YOUR HONOR, AS LONG AS WE'VE LOST TO

03:32PM  6      BUILDING BLOCK, I DON'T CARE --

03:32PM  7              THE COURT:  IT'S A GOOD DAY FOR YOU, MR. VAN NEST.

03:32PM  8              MR. VAN NEST:  WHETHER YOU CALL IT FILTERING OR

03:32PM  9      WHATEVER YOU WANT.

03:32PM  10             MR. NELSON:  WELL REALLY, I MEAN, IT'S A MATTER --

03:32PM  11             THE COURT:  IF I KEEP YOU HERE ALL DAY, I CAN BEAT

03:32PM  12     YOU DOWN AND GET YOU SO EXHAUSTED.

03:32PM  13             MR. NELSON:  NO, BUT IT'S A MATTER OF HOW WE PRESENT

03:33PM  14     TO TAKE CARE OF THE CONCERNS.

03:33PM  15             THE COURT:  AND TO ME, MR. KWUN MADE A REALLY

03:33PM  16     EXCELLENT POINT ABOUT MAYBE PLUMPING UP THE PROTECTED ELEMENTS

03:33PM  17     AND DOUBLE COUNTING.

03:33PM  18         AND I THINK THIS -- AND AS I SAY, I DON'T THINK ANY OF THE

03:33PM  19     EVIDENCE WILL BE PARTICULARLY DIFFERENT.  BUT WHAT THE JURY IS

03:33PM  20     ASKED TO DO WITH IT WILL BE SIGNIFICANTLY DIFFERENT.

03:33PM  21         OKAY.  THEN LET'S MOVE ON.

03:33PM  22             MR. VAN NEST:  WE HAVE A MODES AND PROMPTS,

03:33PM  23     YOUR HONOR, THAT WE WANTED TO ADDRESS.

03:33PM  24             THE COURT:  OKAY.

03:33PM  25             MR. FERRALL:  I'M GOING TO TOUCH UPON THIS.  I THINK

03:33PM  1    THIS WILL BE THANKFULLY BRIEFER THAN THE OTHER CATEGORIES

03:33PM  2    BECAUSE I THINK THE ISSUE HAS BEEN DISTILLED QUITE A BIT.

03:33PM  3        I THINK THE COURT'S PROCESS OF WHEREBY YOU ASKED CISCO TO

03:33PM  4    IDENTIFY THE PROTECTABLE EXPRESSION GOES A LONG WAY IN THIS.

03:33PM  5        AND I WANT TO START THERE AND JUST CLARIFY A COUPLE OF

03:33PM  6    THINGS.  SO THIS IS IN THE SAME SET OF SLIDES WE HANDED UP THIS

03:34PM  7    MORNING.  THIS IS AN EXCERPT FROM CISCO'S IDENTIFICATION OF THE

03:34PM  8    PROTECTABLE EXPRESSION.  AND THEY REPEATED THIS CHART MULTIPLE

03:34PM  9    TIMES FOR EACH OF THE VARIOUS FLAVORS, IOS XR, ET CETERA.  BUT

03:34PM  10   IT'S BASICALLY THE SAME THING.

03:34PM  11       AND I FOUND THIS HELPFUL, THEY CLAIM NO PROTECTION IN

03:34PM  12   INDIVIDUAL MODES, IN PROMPTS.  THEY CLAIM PROTECTION IN THE

03:34PM  13   PARTICULAR ARRANGEMENT.

03:34PM  14       AND FRANKLY, I WAS GOING TO COME IN TODAY AND SAY, WELL,

03:34PM  15   THIS THEORETICALLY IS INTERESTING BUT THEY HAVEN'T DESCRIBED

03:34PM  16   WHAT THE ARRANGEMENT IS OR WHAT THE EXPRESSIVE CONTENT IS IN

03:34PM  17   THAT ARRANGE:  AND THAT'S STILL THE CASE IN THE DISCLOSURE,

03:34PM  18   THEY HAVEN'T SAID WHAT THE ARRANGEMENT IS.

03:34PM  19       SO MR. NELSON HELPED THAT PROCESS ALONG BY SHOWING AND

03:35PM  20   EXPLAINING WHAT HE MEANS BY THE ARRANGEMENT.  BUT YOUR HONOR, I

03:35PM  21   THINK IT'S CLEAR FROM THAT EXPLANATION THAT WHAT HE IS CLAIMS

03:35PM  22   AS AN ARRANGEMENT IS ACTUALLY A METHOD OF OPERATION WHICH

03:35PM  23   COPYRIGHT LAW DOES NOT PROTECT.

03:35PM  24       IN OTHER WORDS, ON THE SCREEN, FIRST OF ALL IT'S IMPORTANT

03:35PM  25   TO UNDERSTAND ON THE USER SCREEN, THESE WORDS DON'T EXIST,

03:35PM 1    OKAY.

03:35PM 2        SO WHAT IS DESCRIBED AS THE MODES OR THE MODE NAMES, THAT'S

03:35PM 3    UNDER THE HOOD.  THAT'S CONCEPTUAL ABOUT THE WAY THAT THE

03:35PM 4    SYSTEM OPERATES.

03:35PM 5        THE PROMPT APPEARS ON THE SCREEN, THE ONE, THE POUND SIGN.

03:35PM 6    BUT THE MODE NAMES DON'T APPEAR ON THE SCREEN.  AND UNDER THE

03:35PM 7    HOOD, WHAT WE'VE HEARD IS THAT THE ARRANGEMENT THAT IS ASSERTED

03:35PM 8    AS PROTECTED BY COPYRIGHT IS, I THINK MR. NELSON'S WORDS WERE,

03:36PM 9    WELL, A SPECIFIC RELATIONSHIP, HOW THEY INTERRELATE, AND I

03:36PM 10   THINK HE DESCRIBED IT AS A PATH, A PATH OF OPERATION.

03:36PM 11       IN OTHER WORDS, GOING FROM ONE MODE TO THE NEXT MODE TO THE

03:36PM 12   NEXT MODE.

03:36PM 13       NOW THAT SEEMS CLEAR TO ME TO BE AN UN PROTECTABLE METHOD

03:36PM 14   OF OPERATION OR FUNCTION OF THE PROGRAM, NOT SOMETHING

03:36PM 15   EXPRESSIVE.

03:36PM 16       INDEED, I WOULD SAY IF THAT'S PROTECTED UNDER COPYRIGHT,

03:36PM 17   THEN IT SEEMS LIKE CISCO IS ASKING COPYRIGHT TO PREVENT

03:36PM 18   COMPETITORS FROM HAVING MODES THAT YOU PROCEED FROM ONE TO THE

03:36PM 19   NEXT TO THE NEXT.

03:36PM 20       AND I GUESS EVERY OTHER COMPETITOR HAS TO HAVE MODES AT THE

03:36PM 21   SAME LEVEL.  BUT YOU GET INTO THIS SORT OF CRAZY WORLD C

03:36PM 22   COPYRIGHT NOW --

03:37PM 23           THE COURT:  LET ME, MAYBE MR. NELSON WILL HAVE TO

03:37PM 24   ANSWER THIS, BUT WE'VE GOT USER EXEC, PRIVILEGE EXEC, GLOBAL

03:37PM 25   CONFIGURATION AND INTERFACE CONFIGURATION.  AND EACH OF THOSE

03:37PM 1    MODES STANDS FOR A SET OF OPERATIONS OR SOMETHING, I'M NOT

03:37PM 2    ACTUALLY SURE WHAT IT STANDS FOR, THAT IS WHAT THEY'RE CLAIMING

03:37PM 3    IS COPYRIGHTED, THE SPECIFIC, YOU DON'T THINK SO.

03:37PM 4            MR. FERRALL:  WELL, LET'S GO TO THE NEXT SLIDE.

03:37PM 5            THE COURT:  THIS IS THE ONE I DIDN'T UNDERSTAND.  SO

03:37PM 6    I'M STILL LISTENING.

03:37PM 7            MR. FERRALL:  YEAH, LET'S GO TO THE NEXT SLIDE.

03:37PM 8        CISCO, THE COURT NEED NOT ADDRESS WHETHER THE IDEA OF

03:37PM 9    MAKING CERTAIN COMMANDS AVAILABLE ONLY IN CERTAIN MODES IS

03:37PM 10   PROTECTABLE.  CISCO MAKES NO CLAIM TO THAT.

03:37PM 11           AND I THINK, I SUBMIT YOU CAN LOOK UP AND DOWN IN ECF 552,

03:37PM 12   THE DISCLOSURE OF PROTECTABLE EXPRESSION, THERE'S NO RECITATION

03:37PM 13   THAT UNDER CERTAIN, THE EXEC MODE, HERE ARE THE COMMANDS THAT

03:38PM 14   ARE AVAILABLE, AND UNDER -- THERE'S NO CLAIM TO THAT.

03:38PM 15           SO THAT'S WHY I GO BACK TO THE COURT'S PROCESS, WHICH IS

03:38PM 16   VERY HELPFUL.  I MEAN, YOU MADE IT CLEAR WE'VE GOT TO LIVE BY

03:38PM 17   THE RULES, DISCLOSE WHAT YOU CLAIM IS PROTECTED AND THEN WE ARE

03:38PM 18   GOING TO DEAL WHERE THAT.  AND NOW WE ARE DEALING WITH THAT.

03:38PM 19           AND WHAT THEY SAID WAS THIS CHART, THIS CHART THAT'S AN

03:38PM 20   ARRANGEMENT, THEY DIDN'T EVEN DISCLOSE THE ARRANGEMENT IN 552,

03:38PM 21   THEY JUST SAID THE ARRANGEMENT AND NOW WE HEAR THE ARRANGEMENT

03:38PM 22   IS A PROCESS.

03:38PM 23           AND I JUST THINK THAT'S PRETTY CLEAR UNDER 102(B),

03:38PM 24   YOUR HONOR, THAT'S EXACTLY WHAT FILTRATION IS ABOUT,

03:38PM 25   DETERMINING THAT COPYRIGHT DOESN'T PROTECT THE FUNCTIONALITY OF

03:38PM 1   A PROGRAM THAT SAYS, WELL, WE ARE GOING TO HAVE DIFFERENT MODES

03:38PM 2   AND WE ARE GOING TO PROCEED STEP-BY-STEP THROUGH THEM.  THAT

03:38PM 3   PROVIDES A PATENT-LIKE MONOPOLY ON THE WAY YOU PROCEED FROM ONE

03:38PM 4   MODE TO ANOTHER.

03:38PM 5       AND CLEARLY, COPYRIGHT DOESN'T PROTECT THAT.  SO I THINK

03:38PM 6   THAT IS WHERE WE ARE ON MODES AND PROMPTS

03:39PM 7           THE COURT:  OKAY.  THEN I GUESS I NEED TO HEAR -- AND

03:39PM 8   AGAIN, I'M STILL STRUGGLING TO UNDERSTAND WHAT IT IS YOU ARE

03:39PM 9   SEEKING PROTECTION OF.  SO HELP ME OUT HERE.

03:39PM 10          MR. NELSON:  OKAY.  I WILL GIVE IT A SHOT.

03:39PM 11      SO WE ARE NOT CLAIMING THE IDEA, RIGHT.  AND WE ARE NOT

03:39PM 12  CLAIMING THE IDEA JUST AS WE SAID IN THE PAPERS, WE ARE NOT

03:39PM 13  TRYING TO HIDE THE BALL THERE OF THE IDEA THAT THERE MIGHT BE

03:39PM 14  LESS COMMANDS AVAILABLE IN ONE MODE VERSUS ANOTHER, RIGHT.

03:39PM 15  IT'S NOT THAT WAY.

03:39PM 16      WHAT WE ARE CLAIMING IS USER INTERFACE, THIS ASPECT OF THE

03:39PM 17  USER INTERFACE.  SO THE SEQUENCE, STRUCTURE AND ORGANIZATION OF

03:39PM 18  THE PROGRAM IS SOMETHING THAT UNDER JOHNSON CONTROLS WE COULD

03:39PM 19  CLAIM.

03:39PM 20      SO IF I HAVE SLIDE -- I THINK IT'S SLIDE 30.  AND WE WILL

03:39PM 21  TEST MY MEMORY.

03:39PM 22          THE COURT:  WELL SEPARATING OUT WHAT THE A METHOD IS

03:39PM 23  AS OPPOSED TO A SEQUENCE IS A LITTLE BIT DIFFICULT.

03:39PM 24          MR. NELSON:  A LITTLE BIT, RIGHT.  I THINK

03:39PM 25  MR. FERRALL IS TALKING ABOUT, HE USED THE WORD PATENT-LIKE

03:40PM 1    MONOPOLY.  LIKE SAYING HEY, IF YOU HAVE A MODE THAT YOU CAN GO

03:40PM 2    INTO AND THEN GO INTO ANOTHER MODE AND THEN GO INTO ANOTHER

03:40PM 3    MODE AND GO INTO ANOTHER MODE, THAT'S MY --

03:40PM 4            THE COURT:  THAT'S JUST A PROGRESSION, THAT WOULD BE

03:40PM 5    A METHOD.

03:40PM 6            MR. NELSON:  THAT'S A METHOD, RIGHT.

03:40PM 7        THAT'S NOT WHAT WE ARE CLAIMING AT ALL.  WE ARE CLAIMING,

03:40PM 8    THIS IS A USER INTERFACE, THESE SPECIFIC -- THE WAY THEIR USER

03:40PM 9    INTERFACE WAS DESIGNED COPIES OUR, WHICH IS THEY HAVE THESE

03:40PM 10   MODES, THE PROMPTS ASSOCIATED WITH THEM, EXACTLY THE SAME, AND

03:40PM 11   THEY INTERRELATE, THAT'S WHAT WE ARE SAYING, THE RELATIONSHIP

03:40PM 12   BETWEEN THOSE FOUR MODES OF OPERATION IS IDENTICAL, RIGHT.

03:40PM 13       AND WE ARE ENTITLED TO CLAIM THAT UNDER COPYRIGHT BECAUSE

03:40PM 14   THAT'S HOW THE USER INTERFACE -- EXCUSE ME, THE USER INTERFACE

03:40PM 15   IS EXPRESSED.

03:40PM 16           THE COURT:  WELL, SO LET'S LOOK AT YOUR COMMAND MODE.

03:40PM 17   SO THOSE ARE JUST LABELS THAT REPRESENT INFORMATION OR OTHER

03:41PM 18   COMMANDS THAT CAN BE OBTAINED IN THAT MODE.

03:41PM 19           MR. NELSON:  THAT'S WHY WE'VE ASSOCIATED THE PROMPTS

03:41PM 20   WITH THEM.

03:41PM 21           THE COURT:  RIGHT.

03:41PM 22           MR. NELSON:  SO YOU HAVE THAT.

03:41PM 23       SO IN THE DOCUMENTATION AND SUCH, IT EXPLAINS WHAT THOSE

03:41PM 24   PROMPTS ARE ASSOCIATED WITH.  SO IT'S THOSE SAME MODES.  THOSE

03:41PM 25   DON'T APPEAR ON THE SCREEN, THAT'S TRUE.  THAT'S WHAT THEY'RE

03:41PM 1    NAMED AND THAT'S HOW THEY ARE DESCRIBED IN THE USER

03:41PM 2    DOCUMENTATION.  BUT YOU HAVE THAT SAME SET OF, EXCUSE ME, THE

03:41PM 3    SAME SET OF MODES OF OPERATION, EXACTLY THE SAME FOUR, YOU

03:41PM 4    HAVE -- I MEAN, THEY HAVE ADDITIONAL ONES TOO, BUT WE ARE NOT

03:41PM 5    CLAIMING THOSE THINGS, JUST LIKE THEY HAVE OTHER COMMANDS AND

03:41PM 6    WE ARE NOT CLAIMING THOSE.

03:41PM 7         THE COURT:  BUT IS IT THE TITLE USER EXEC THAT YOU

03:41PM 8    ARE CLAIMING IS PROTECTABLE?

03:41PM 9         MR. NELSON:  NO, IT'S THAT THOSE MODES, THAT I HAVE

03:41PM 10   THOSE MODES, RIGHT, THEY HAVE THE PROMPTS EXACTLY THE SAME

03:41PM 11   PROMPTS ASSOCIATED WITH THE MODES AND THOSE FOUR MODES ARE

03:41PM 12   INTERRELATED IN EXACTLY THE SAME MANNER.  THAT'S WHAT WE ARE

03:42PM 13   CLAIMING, WHICH IS THE SEQUENCE STRUCTURE AND OPERATION OF THE

03:42PM 14   USER INTERFACE.

03:42PM 15        THE COURT:  WHAT'S USER EXEC?  I'M SORRY.

03:42PM 16        MR. NELSON:  USER EXEC IS A PARTICULAR MODE OF

03:42PM 17   OPERATION.  IT'S REPRESENTED IN THE USER INTERFACE BY THE

03:42PM 18   CARROT SIGN.  IT WILL HAVE THE ROUTER NAME AND CARROT SIGN.

03:42PM 19        THE COURT:  OKAY.  I UNDERSTAND.  YOU PUNCH IN THE

03:42PM 20   CARROT AND YOU GET YOUR END USER EXEC.

03:42PM 21        MR. NELSON:  CORRECT.

03:42PM 22        THE COURT:  AND USER EXEC GIVES YOU, YOU ARE IN A

03:42PM 23   PARTICULAR MODE OF OPERATION THAT ALLOWS YOU TO DO CERTAIN

03:42PM 24   THINGS.

03:42PM 25        MR. NELSON:  THAT'S CORRECT.

03:42PM  1        THE COURT:  ARE YOU CLAIMING PROTECTABILITY OF WHAT

03:42PM  2    YOU CAN DO IN THE USER EXEC?

03:42PM  3        MR. NELSON:  NO.

03:42PM  4        THE COURT:  JUST THE TITLE USER EXEC.

03:42PM  5        MR. NELSON:  THE PROMPT ASSOCIATED WITH IT.

03:42PM  6        THE COURT:  AND THE PROMPT ASSOCIATED WITH IT?

03:42PM  7        MR. NELSON:  RIGHT.  AND THEY HAVE THOSE MODES.

03:42PM  8        THE COURT:  AND NOT JUST THAT ONE BY ITSELF, BUT THE

03:42PM  9    COMBINATION OF ALL FOUR.

03:42PM 10        MR. NELSON:  CORRECT.  THE INTERRELATIONSHIP OF ALL

03:42PM 11    FOUR.

03:42PM 12        THE COURT:  SO IT'S REALLY JUST, SO IT'S REALLY

03:42PM 13    CLAIMING THE LABELING.

03:42PM 14        MR. NELSON:  I MEAN, IN A WAY, YEAH.  LABELING THE

03:43PM 15    PROMPTS THAT ARE ASSOCIATED WITH THOSE MODES, RIGHT, AND THE

03:43PM 16    INTERRELATIONSHIP BETWEEN THE --

03:43PM 17        THE COURT:  BUT THERE'S ONLY ONE PROMPT ASSOCIATED

03:43PM 18    WITH THAT MODE AM I CORRECT.

03:43PM 19        MR. NELSON:  WITH EACH PARTICULAR MODE, THAT'S

03:43PM 20    CORRECT.

03:43PM 21        THE COURT:  WITH EACH ONE.

03:43PM 22      OKAY.  SO IT'S A PROMPT GETS YOU INTO SOMETHING CALLED USER

03:43PM 23    EXEC.

03:43PM 24        MR. NELSON:  WHEN YOU GET INTO USER EXEC, YOU WILL

03:43PM 25    GET THAT PROMPT.

03:43PM 1          THE COURT:  WHEN YOU ARE IN USER EXEC, YOU GET THE

03:43PM 2   PROMPT OF THE CARROT?

03:43PM 3          MR. NELSON:  CORRECT.

03:43PM 4          THE COURT:  I THOUGHT YOU USE THE CARROT TO GET TO

03:43PM 5   USER EXEC.

03:43PM 6          MR. NELSON:  NO, YOU LOG IN.

03:43PM 7      SO THAT'S FIRST THING YOU HAVE TO DO IS YOU HAVE TO LOG IN.

03:43PM 8   YOU WILL LOG IN AND IT WILL GET YOU INTO THAT MODE.  IT WILL

03:43PM 9   GET YOU THE NAME, SWITCH, DATE, IT'S A GOOD NAME, THEN THAT

03:43PM 10  WILL GIVE YOU THE CARROT SIGN, RIGHT, AND THEN YOU CAN GO FROM

03:43PM 11  THERE.

03:43PM 12         THE COURT:  SO A PROMPT, IS THAT -- WHEN YOU GET THE

03:43PM 13  CARROT SIGN, WHAT DO YOU DO?

03:43PM 14         MR. NELSON:  THEN YOU CAN TYPE IN, YOU COULD TYPE

03:43PM 15  COMMANDS, YOU KNOW, YOU COULD DO --

03:43PM 16         THE COURT:  SO YOU COULD STAY RIGHT THERE IF YOU

03:43PM 17  WANT.

03:43PM 18         MR. NELSON:  YOU CAN.  YOU CAN DO CERTAIN THINGS --

03:43PM 19         THE COURT:  AND THEN YOU USE A PASSWORD TO GET TO THE

03:44PM 20  NEXT ONE IF YOU ARE ELIGIBLE, IF YOU HAVE THE PASSWORD.

03:44PM 21         MR. NELSON:  THAT'S CORRECT.

03:44PM 22      WITH THE COMMAND, AND THEN SO ON AND SO ON WITH THE OTHERS.

03:44PM 23  BUT YOU HAVE TO BE IN ONE TO GET TO THE OTHER.

03:44PM 24         THE COURT:  SO IF YOU NOT IN USER EXEC, THERE'S NO

03:44PM 25  PASSWORD THAT GETS YOU INTO PRIVILEGED EXEC?

03:44PM  1          MR. NELSON:  CORRECT.

03:44PM  2          THE COURT:  SO IT'S THAT SEQUENCE YOU ARE CLAIMING?

03:44PM  3          MR. NELSON:  YES.  WHICH IS AN ELEMENT OF THE USER

03:44PM  4     INTERFACE.

03:44PM  5       SO IT'S NOT -- IT'S NOT A METHOD OF OPERATION.  IT'S NOT --

03:44PM  6     IT'S ACTUALLY, IT'S PRETTY STRAIGHTFORWARD, RIGHT.  AND THERE'S

03:44PM  7     THOUSANDS OF DIFFERENT WAYS YOU COULD HAVE DONE IT BUT YOU

03:44PM  8     DECIDED TO DO IT THE SAME WAY BECAUSE YOU WANT YOU WANTED TO

03:44PM  9     LOOK JUST LIKE CISCO, SO IT COULD BE A DROP IN REPLACEMENT.

03:44PM 10       SO THAT'S THE REASON FOR THIS.  SO IT'S KIND OF THE

03:44PM 11     OPPOSITE OF PATENT LIKE.  THEY COULD MAKE AN EASY CHANGE HERE

03:44PM 12     AND NOT DO THIS.

03:44PM 13          THE COURT:  UH-HUH.  I MEAN, IF THEY JUST CALLED IT

03:45PM 14     SOMETHING ELSE OR USED A DIFFERENT PROMPT.

03:45PM 15          MR. NELSON:  YEAH, THEY MAY VERY WELL BE ALL RIGHT.

03:45PM 16          THE COURT:  OKAY.  BUT PART OF WHAT YOU ARE CLAIMING

03:45PM 17     IS PROTECTED IS THIS SEQUENCE OF, YOU CAN ONLY GET TO PRIVILEGE

03:45PM 18     EXEC ONCE YOU ARE ALREADY IN USER EXEC, THAT'S PART OF THE

03:45PM 19     SEQUENCE.  THERE'S NO RANDOM ACCESS TO THESE.

03:45PM 20          MR. NELSON:  CORRECT.  THAT'S WHAT WE ARE TALKING

03:45PM 21     ABOUT, ABOUT THE ARRANGEMENT.

03:45PM 22          THE COURT:  OKAY.  YOU CALL IT -- OKAY.  AN

03:45PM 23     ARRANGEMENT OR A SEQUENCE.

03:45PM 24          MR. NELSON:  YES.

03:45PM 25          MR. PAK:  AND YOUR HONOR, WE PROVIDED SOME EVIDENCE

03:45PM 1    AND MR. NELSON SHOWED YOU ON SLIDE 32 OF HIS PRESENTATION.

03:45PM 2         IN OUR KNOW CONFIGURATION DOCUMENTATION WE SAY

03:45PM 3    UNDERSTANDING COMMAND MODES, THE CLI COMMAND MODE STRUCTURE IS

03:45PM 4    HIERARCHICAL.

03:45PM 5         SO HE TALKS ABOUT, ALTHOUGH WE TALKED ABOUT HIERARCHY IN

03:45PM 6    TERMS OF THE COMMAND WORDS, YOU CAN SEE THE HIERARCHY HERE IN

03:46PM 7    THE MODES AS WELL IN THE SENSE YOU START WITH USER EXEC AT THE

03:46PM 8    TOP, FROM THERE IF YOU GET INTO THAT BY LOGGING IN PROPERLY,

03:46PM 9    YOU CAN THEN GET INTO THE OTHER MODES BY ISSUING SUBSEQUENT

03:46PM 10   COMMANDS.

03:46PM 11        SO THERE'S A TOP TO BOTTOM HIERARCHY THAT ALLOWS YOU TO GET

03:46PM 12   IN.  AND IT'S NOT RANDOM ACCESS WHERE YOU CAN JUST COME IN AND

03:46PM 13   ENTER INTO A MODE.

03:46PM 14        THAT'S PART OF THE ARRANGEMENT WE REFERRED TO, OUR EXPERT

03:46PM 15   TALKS ABOUT THAT, AND WE THINK THAT'S AN ELEMENT THAT WAS

03:46PM 16   COPIED SO THAT'S PART OF OUR USER INTERFACE.

03:46PM 17             THE COURT:  OKAY.  THANK YOU.

03:46PM 18             MR. NELSON:  THANK YOU.

03:46PM 19             THE COURT:  MR. SILBERT, SO NOW -- SORRY,

03:46PM 20   MR. FERRALL.

03:46PM 21             MR. FERRALL:  IF I CAN YOUR HONOR, A COUPLE OF

03:46PM 22   IMPORTANT POINTS.

03:46PM 23        AGAIN, I THINK CISCO AND ARISTA REALIZES THE IMPORTANCE OF

03:46PM 24   PLAYING BY THE RULES.  AND WHEN MR. PAK GETS UP AND CITES A

03:46PM 25   BUNCH OF COMMAND REFERENCE GUIDES AS NOW THAT'S WHAT THEIR

03:46PM 1    EXPRESSION IS, I THINK WE ALL KNOW THAT THAT'S NOT THE RULES

03:46PM 2    THAT WE ARE PLAYING BY.

03:46PM 3        WHAT THE ARRANGEMENT IS, WHAT WE HEARD IS THE ARRANGEMENT

03:47PM 4    IS A SEQUENCE, AND A SEQUENCE, THE NINTH CIRCUIT HAS MADE CLEAR

03:47PM 5    IN THE BIKRAM CASE, IS NOT PROTECTED.  THERE MAY BE A BOOK

03:47PM 6    ABOUT THE SEQUENCE THAT'S PROTECTED, BUT THE SEQUENCE IS NOT

03:47PM 7    PROTECTED.

03:47PM 8        AND THE NAMES OF THESE MODES, TWO OF THEM ARE ADMITTEDLY

03:47PM 9    COPIED FROM PRIOR OPERATING SYSTEMS.  NAMES, TWO-WORD NAMES

03:47PM 10   ARE, EVEN BY CISCO AN ADMISSION OF DISCUSSION OF THE WORDS AND

03:47PM 11   SHORT PHRASES DOCTRINE, THEY DON'T DESERVE PROTECTION, THE NAME

03:47PM 12   OF A MODE, I DON'T THINK THEY ARE REALLY CLAIMING MUCH ABOUT

03:47PM 13   THE NAME OF THE MODE.

03:47PM 14       BUT AT THE END OF THE DAY WHAT THEY ARE SAYING IS THAT NO

03:47PM 15   ONE ELSE CAN HAVE A SERIES OF UNDEFINED MODES, BECAUSE THEY

03:47PM 16   HAVEN'T SAID THAT THESE MODES HAVE A CERTAIN CHARACTERISTIC

03:47PM 17   THAT'S PROTECTED, BUT NO ONE CAN HAVE A FOUR UN DEFINED MODES

03:47PM 18   WITH THESE TWO-WORD NAMES, TWO OF THEM WE COPIED FROM SOMEONE

03:48PM 19   ELSE.  THAT'S WHAT THEY ARE SAYING THIS COPYRIGHT CLAIM IS

03:48PM 20   ABOUT.  AND THAT JUST DOESN'T GO TO A JURY.

03:48PM 21       THE COURT:  WELL I HAVE TO GO BACK AND READ THE

03:48PM 22   BIKRAM YOGA CASE, I HAVEN'T READ IT FOR A WHILE.

03:48PM 23       MR. SILBERT:  I HAD A HOUSEKEEPING ISSUE, I KNOW IT'S

03:48PM 24   BEEN A LONG DAY, BUT I HAD TWO POINTS TO MAKE.

03:48PM 25       AND WHAT ONE IS, I SAT DOWN PREVIOUSLY AND I WAS CONTENT

03:48PM   1   WHERE BECAUSE WHERE I THOUGHT WE HAD ENDED UP ON NOT CLAIMING

03:48PM   2   PROTECTION AND INDIVIDUAL WORDS, IT WAS MORE THAN WE WANTED OR

03:48PM   3   ASKED FOR, ET CETERA.

03:48PM   4              THE COURT:  YEAH.

03:48PM   5              MR. SILBERT:  I THEN HEARD A LOT OF ARGUMENT TO THE

03:48PM   6   EFFECT THAT THIS IS CREATIVE BECAUSE WE PICKED THE WORD

03:48PM   7   INVENTORY.  WE PICKED THAT PARTICULAR WORD WHICH IS NOT

03:48PM   8   CONSISTENT WITH AT LEAST WHERE I THOUGHT WE HAD ENDED UP ON

03:48PM   9   NOT, THE IDEA THAT THERE'S NOT GOING TO BE A CLAIM OF

03:48PM  10   CREATIVITY IN AN INDIVIDUAL WORD.

03:49PM  11              THE COURT:  THAT'S RIGHT.

03:49PM  12              MR. SILBERT:  I DON'T KNOW WHERE THAT LEAVES US.

03:49PM  13              THE COURT:  WELL, IT'S NOT WRITTEN IN THE PAPERS AND

03:49PM  14   CISCO HAS MADE IT CLEAR THEY ARE NOT CLAIMING PROTECTION IN AN

03:49PM  15   INDIVIDUAL WORD.

03:49PM  16              MR. SILBERT:  OKAY.  AND THANK YOU WITH THAT.

03:49PM  17       SO HERE'S THE HOUSEKEEPING PROCEDURE ISSUE AND SEAN THIS IS

03:49PM  18   THE ISSUE WE DISCUSSED BEFORE.  WHICH IS IT RELATES TO THE

03:49PM  19   DISCLOSURE OF EXHIBITS IN ADVANCE OF WITNESS TESTIMONY.

03:49PM  20       YOUR HONOR'S RULE, WE UNDERSTAND, IS THAT THE PARTIES

03:49PM  21   EXCHANGE OR AT LEAST IDENTIFY THE EXHIBITS THEY ARE GOING TO

03:49PM  22   USE WITH THE WITNESS IN ADVANCE.  THE OTHER PARTY CAN THEN FILE

03:49PM  23   A SHORT, IF ANY, BRIEF WITH OBJECTIONS AND WE FULLY UNDERSTAND

03:49PM  24   YOUR HONOR'S ADMONITION ABOUT WHAT'S GOING TO HAPPEN TO ALL OF

03:49PM  25   US IF WE TAKE A LOT OF YOUR TIME TO RESOLVE THESE OBJECTIONS.

03:49PM 1          THE COURT:  I TAKE YOUR TIME, IS WHAT IT COMES DOWN

03:49PM 2     TO.

03:49PM 3          MR. SILBERT:  EXACTLY, IT'S OUR TIME.

03:49PM 4       AND I THINK PROBABLY MOST IMPORTANTLY, WE ARE NOT TAKING

03:49PM 5     THE JURY'S TIME TOO.

03:49PM 6          THE COURT:  THAT'S RIGHT.

03:49PM 7          MR. SILBERT:  TO TRY TO RESOLVE A LOT OF OBJECTIONS

03:50PM 8     IN REALTIME.

03:50PM 9       WE HAD TALKED ABOUT A LIMITED EXCEPTION TO THAT PROCEDURE,

03:50PM 10    ASSUMING YOUR HONOR WOULD ACCEPT IT, BUT THERE'S KIND OF A

03:50PM 11    DISAGREEMENT BETWEEN US ABOUT HOW FAR THAT EXCEPTION WOULD GO.

03:50PM 12    CISCO WANTS A BROADER EXCEPTION, ONE THAT I THINK --

03:50PM 13         THE COURT:  SO WHAT'S THE --

03:50PM 14         MR. SILBERT:  SO HERE IT IS, IT RELATES TO CROSS

03:50PM 15    EXHIBITS.

03:50PM 16      AND THE EXCEPTION WOULD BE, WOULD YOU DISCLOSE IN ADVANCE

03:50PM 17    OR NOT, EXHIBITS ON CROSS-EXAMINATION.  THERE ARE SOME

03:50PM 18    PRACTICAL REALITIES HERE.

03:50PM 19         THE COURT:  THAT'S REALLY HARD.

03:50PM 20         MR. SILBERT:  ONE OF THEM IS WE TALKED ABOUT, WE ARE

03:50PM 21    GOING TO CALL SOMEBODY, SAY, WE TELL CISCO TWO DAYS IN ADVANCE,

03:50PM 22    HERE'S THE PERSON WE ARE GOING TO CALL, WE IDENTIFY THE

03:50PM 23    EXHIBIT.

03:50PM 24      THE NEXT DAY THEY FILE THEIR OBJECTIONS TO THE EXHIBITS.

03:50PM 25    BUT THEY'VE ONLY HEARD ON, IF WE ARE CALLING THEM ON WEDNESDAY,

03:50PM  1    THEY'VE HEARD ON MONDAY NIGHT WE ARE CALLING THEM AND WE FILE

03:50PM  2    THE THINGS ON TUESDAY NIGHT.

03:50PM  3        THEY DON'T KNOW THE SCOPE YET OF WHAT WE ARE GOING TO ASK

03:51PM  4    THE PERSON, THEY DON'T KNOW WHAT THEY ARE GOING TO CROSS THE

03:51PM  5    PERSON ABOUT.  THEY HAVE LESS TIME THAN WE DO TO COLLECT THE

03:51PM  6    EXHIBITS.

03:51PM  7        SO THAT MADE SENSE TO US, AND I THINK I CAN SAY THAT AT

03:51PM  8    LEAST THAT FAR, MADE SENSE TO CISCO TOO AS AN EXCEPTION.

03:51PM  9        THAT PART WOULD BE AN AGREED PROPOSAL TO YOUR HONOR AS AN

03:51PM  10   EXCEPTION TO THE PROCEDURE.

03:51PM  11             THE COURT:  SO HOW WOULD I -- WHEN WOULD YOU HAVE THE

03:51PM  12   OPPORTUNITY TO SUBMIT YOUR OBJECTIONS TO THE CROSS-EXAMINATION

03:51PM  13   EXHIBITS?

03:51PM  14             MR. SILBERT:  OUR PROPOSAL, AND YOU MAY NOT LIKE IT,

03:51PM  15   BUT OUR PROPOSAL WAS WITH THAT LIMITED SET OF EXHIBITS, IT

03:51PM  16   WOULD BE ON THE FLY.

03:51PM  17             THE COURT:  SO I'M MORE THAN GLAD TO DO THAT AND, YOU

03:51PM  18   KNOW THE CLOCK DOESN'T STOP.  AND SO YOU ARE TAKING THAT ON

03:51PM  19   YOURSELVES, WHICH IS FINE WITH ME.  IT'S REALLY FINE.  AND SO I

03:51PM  20   DON'T HAVE A PROBLEM WITH THAT.

03:51PM  21        AND SO IN CERTAIN WAYS, THAT DOES HELP.  I RECOGNIZE THE

03:51PM  22   VAST DIFFICULTY OF ORGANIZING YOUR CROSS-EXAMINATION, SOME OF

03:52PM  23   IT'S DONE AND SOME OF IT CHANGES.

03:52PM  24             MR. SILBERT:  WE DON'T KNOW WHAT THEY ARE GOING TO

03:52PM  25   ASK.  WE ARE LIMITED TO WHAT THEY ASK AND WE DON'T KNOW WHAT --

03:52PM 1     THE COURT:  AND YOU MAY PUT TOGETHER A BINDER WITH

03:52PM 2  MANY EXHIBITS THAT I NEVER NEED TO RULE ON.  AND SO THERE'S

03:52PM 3  BEEN A LOT OF TIME DEVOTED TO ARGUING EXHIBITS THAT YOU CHOOSE

03:52PM 4  NOT TO USE.  BECAUSE MOST WITNESSES GET BINDERS LIKE THIS AND

03:52PM 5  SMALL AMOUNTS THAT ARE ACTUALLY GOING TO BE USED AND THEY JUST

03:52PM 6  NEED TO BE PREPARED.

03:52PM 7     AND I DON'T HAVE A PROBLEM WITH THAT.  AND I WILL DO -- I

03:52PM 8  MEAN, THE BURDEN FALLS ON YOU TO MAKE IT CLEAR WHAT YOU ARE

03:52PM 9  ARGUING AT THE TIME BECAUSE OF COURSE I DON'T KNOW YOUR

03:52PM 10 EXHIBITS AND I WON'T HAVE SEEN THEM.

03:52PM 11     MR. SILBERT:  YES.

03:52PM 12     SO HERE'S THEN WHERE THERE'S A DISAGREEMENT.  CISCO'S

03:52PM 13 POSITION WOULD BE THAT SAME RULE, THE NO DISCLOSURE IN ADVANCE

03:52PM 14 PROCEDURE, WOULD APPLY IF THEY CALL SOMEONE, SAY AN ARISTA

03:52PM 15 EMPLOYEE, IN THEIR CASE.  IT'S NOT STRICTLY CROSS, IT'S THEY'RE

03:52PM 16 CALLING THE PERSON.

03:52PM 17     THE COURT:  I DON'T SEE THAT WORKING.

03:52PM 18     MR. SILBERT:  WE DON'T EITHER.

03:52PM 19     THE COURT:  BECAUSE I THINK THEY HAVE ALL THE TIME,

03:53PM 20 THEY ARE CALLING THE WITNESS, NOTIFYING YOU THAT WITNESS WILL

03:53PM 21 BE COMING.  I THINK THAT'S MORE ORDERLY.  FRANKLY, YOU SHOULD

03:53PM 22 PROTECT YOUR OWN CLOCK HERE.

03:53PM 23     SO I WOULD NOT THINK THAT THAT WOULD BE THE SAME CATEGORY.

03:53PM 24 BUT CERTAINLY ON THE CROSS-EXAMINATION, HOPEFULLY IT WILL

03:53PM 25 REDUCE THE NUMBER OF OBJECTIONS BECAUSE YOU WILL ALSO BE

03:53PM 1    PARADING YOUR OBJECTION IN FRONT OF THE JURY, WHICH MAY MODIFY

03:53PM 2    YOUR WILLINGNESS TO DO THAT.

03:53PM 3        AND THEN WE DO THEM AT SIDEBAR OR WE EXCUSE THE JURY.  AND

03:53PM 4    IT'S RARE THAT WE EXCUSE THE JURY FOR A DISCUSSION OF AN

03:53PM 5    EXHIBIT.  SO I'M SURE THAT WON'T BE A PROBLEM.

03:53PM 6        MR. SILBERT:  OKAY.  THAT'S ALL I HAD.

03:53PM 7        THANK YOU VERY MUCH, YOUR HONOR.

03:53PM 8        THE COURT:  ALL RIGHT.  THAT TAKES CARE OF THAT.

03:53PM 9        ALL RIGHT.  WELL, WE WORKED THROUGH QUITE A BIT TODAY THAT

03:53PM 10   I THINK WILL BE FOUND IN OUR JURY INSTRUCTIONS AS WE TALK ABOUT

03:53PM 11   THEM TOMORROW.

03:53PM 12       MR. VAN NEST:  SOUNDS GREAT, YOUR HONOR.

03:53PM 13       THE COURT:  WELL, THANK YOU.

03:53PM 14   YOU HAVE ALL BEEN VERY PATIENT WITH ME IN HELPING ME TO

03:53PM 15   UNDERSTAND THIS.

03:53PM 16   I THINK BACK TO A LOT OF COMMENTS MADE BY JUDGE ALSUP WHEN

03:54PM 17   HE GRAPPLED WITH THIS, IT'S VERY CHALLENGING FOR A JUDGE TO

03:54PM 18   UNDERSTAND YOUR CASE BEFORE WE'VE HEARD THE EVIDENCE.  AND SO

03:54PM 19   I'M PLAYING CATCH UP, AND YOU'VE REALLY HELPED ME QUITE A BIT.

03:54PM 20       TOMORROW IF WE COULD ASSEMBLE AT 9:30.  I HAVE A TRO

03:54PM 21   TOMORROW MORNING THAT I NEED TO DO AT 9:00.  I DON'T NEED YOU

03:54PM 22   TO BE WAITING.

03:54PM 23       AND IT'S MY PREFERENCE TO DO THAT IN CHAMBERS

03:54PM 24   OFF-THE-RECORD.  IF THAT'S NOT WORKING FOR YOU, WE CAN COME

03:54PM 25   BACK AND BE ON THE RECORD, BUT IT REALLY SLOWS THINGS DOWN.

03:54PM 1        MR. VAN NEST:  IT WORKS FOR US, YOUR HONOR.  I THINK

03:54PM 2    I'M SPEAKING FOR EVERYBODY.

03:54PM 3        THE COURT:  OKAY.  THANK YOU FOR THAT.

03:54PM 4      GOOD.  AND MR. PAK YOU, YOU HAVE YOUR OWN VERSION OF JURY

03:54PM 5    INSTRUCTION NUMBER 12?

03:54PM 6        MR. PAK:  YES, WE DO, YOUR HONOR.

03:54PM 7      LET US TAKE A LOOK AT -- WE DIDN'T HAVE A CHANCE TO FULLY

03:54PM 8    CONSIDER YOUR COMMENTS IN LIGHT OF WHAT THEY FILED.  THERE'S A

03:54PM 9    POSSIBILITY THAT WE COULD WORK OFF THEIR MODEL AND MAYBE

03:54PM 10   FURTHER --

03:54PM 11       THE COURT:  MAYBE I WILL JUST LEAVE THAT FOR THE

03:54PM 12   MORNING.  AND I READ IT, BUT I DIDN'T HAVE ANYTHING TO COMPARE

03:54PM 13   IT TO.

03:54PM 14       MR. PAK:  WE WILL FILE THAT TONIGHT AND BRING COPIES

03:55PM 15   WITH US.  WE WILL TRY TO ADD TO WHAT THEY DID AND MAYBE MAKE IT

03:55PM 16   A LITTLE BIT MORE, FROM OUR PERSPECTIVE, BALANCED BUT WE WILL

03:55PM 17   TRY TO MAKE THEM COPIES.

03:55PM 18       THE COURT:  THAT'S GREAT.  AND I THINK IT WAS ARISTA

03:55PM 19   WHO WAS PREPARING THE JURY INSTRUCTIONS.

03:55PM 20      WHAT I WILL NEED -- WELL, IT CAN BE OVER THE WEEKEND, BUT I

03:55PM 21   WILL NEED THAT CLEAN SET THAT I CAN READ FROM OF THE

03:55PM 22   PRELIMINARY INSTRUCTIONS.  AND I LIKE TO GET THEM BEFORE THAT

03:55PM 23   MORNING SO THAT I CAN READ THROUGH AND MAKE SURE THAT I AM

03:55PM 24   COMFORTABLE WITH THEM.

03:55PM 25      SO I DON'T KNOW WHO IS PREPARING THOSE, BUT RIGHT NOW I

03:55PM 1    STILL HAVE THE ANNOTATED ONES, CORRECT?

03:55PM 2              MR. VAN NEST:  WE WERE DOING THAT, YOUR HONOR.

03:55PM 3              THE COURT:  GREAT.

03:55PM 4              MR. VAN NEST:  I UNDERSTAND WE ARE GOING TO RESOLVE

03:55PM 5    ALL OF THAT TOMORROW.

03:55PM 6              THE COURT:  YES.

03:55PM 7              MR. VAN NEST:  AND THEN IT'S JUST A MATTER OF

03:55PM 8    PROCESSING IT AND GETTING IT TO YOU.  BY CLEAN YOU MEAN WITHOUT

03:55PM 9    THE ARGUMENT AND CITES.

03:55PM 10             THE COURT:  THAT'S RIGHT.  AND IT WON'T SAY ARISTA'S

03:55PM 11   PROPOSED, OR IT WILL JUST BE WHAT THE JURY SEES.

03:55PM 12             MR. VAN NEST:  RIGHT.

03:55PM 13             THE COURT:  SO I WILL JUST HAVE THE FIRST SET OF

03:55PM 14   PRELIMINARY.

03:55PM 15             MR. VAN NEST:  THAT'S RIGHT.

03:55PM 16             THE COURT:  IN FINAL FORM.

03:55PM 17             MR. VAN NEST:  THAT'S RIGHT.  AND IT WILL BE A LOT

03:55PM 18   SHORTER THAN WHAT JUDGE ALSUP GAVE TOO.

03:55PM 19             THE COURT:  THAT'S HARD TO IMAGINE AFTER WHAT I'VE

03:56PM 20   BEEN READING.

03:56PM 21             MR. VAN NEST:  WELL, WE WILL WAIT AND SEE.

03:56PM 22             THE COURT:  FROM THE FIRST TRIAL, YOU MEAN.

03:56PM 23             MR. VAN NEST:  MAYBE FROM EITHER.

03:56PM 24             THE COURT:  OKAY.  I GUESS I ONLY SAW THE SYNOPSYS

03:56PM 25   ONES, MAYBE THOSE WERE THE ONLY ONES I PRINTED OUT.

03:56PM    1            MR. VAN NEST:  IN EITHER EVENT, WE WILL DO THE

03:56PM    2    PROCESSING, YOUR HONOR.

03:56PM    3            THE COURT:  I APPRECIATE THAT.  I THANK YOU SO MUCH.

03:56PM    4        ALL RIGHT.  THEN I WILL SEE YOU ALL AT 9:30 TOMORROW.

03:56PM    5        (WHEREUPON, THE PROCEEDINGS IN THIS MATTER WERE CONCLUDED.)

           6

           7

           8

           9

          10

          11

          12

          13

          14

          15

          16

          17

          18

          19

          20

          21

          22

          23

          24

          25

1

2

3

4                    **CERTIFICATE OF REPORTER**

5

6

7

8          I, THE UNDERSIGNED OFFICIAL COURT

9    REPORTER OF THE UNITED STATES DISTRICT COURT FOR

10   THE NORTHERN DISTRICT OF CALIFORNIA, 280 SOUTH

11   FIRST STREET, SAN JOSE, CALIFORNIA, DO HEREBY

12   CERTIFY:

13          THAT THE FOREGOING TRANSCRIPT,

14   CERTIFICATE INCLUSIVE, CONSTITUTES A TRUE, FULL AND

15   CORRECT TRANSCRIPT OF MY SHORTHAND NOTES TAKEN AS

16   SUCH OFFICIAL COURT REPORTER OF THE PROCEEDINGS

17   HEREINBEFORE ENTITLED AND REDUCED BY COMPUTER-AIDED

18   TRANSCRIPTION TO THE BEST OF MY ABILITY.

19

20

21

22

23

24   _____
     SUMMER A. FISHER, CSR, CRR
25   CERTIFICATE NUMBER 13185          DATED: 11/21/16