KEKER & VAN NEST LLP
ROBERT A. VAN NEST - # 84065
BRIAN L. FERRALL - # 160847
DAVID SILBERT - # 173128
MICHAEL S. KWUN - #198945
633 Battery Street
San Francisco, CA 94111-1809
Telephone:    (415) 391-5400
Email:  rvannest@kvn.com;
bferrall@kvn.com; dsilbert@kvn.com;
mkwun@kvn.com

SUSAN CREIGHTON, SBN 135528
SCOTT A. SHER, SBN 190053
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
1700 K Street NW, Fifth Floor
Washington, D.C., 20006-3817
Telephone:  (202) 973-8800
Email:  screighton@wsgr.com;
ssher@wsgr.com

JONATHAN M. JACOBSON, NY SBN 1350495
CHUL PAK (*pro hac vice*)
DAVID H. REICHENBERG (*pro hac vice*)
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
1301 Avenue Of The Americas, 40th Floor
New York, NY 10019-6022
Telephone:  (212) 999-5800
Email:  jjacobson@wsgr.com; cpak@wsgr.com;
dreichenberg@wsgr.com

Attorneys for Defendant
ARISTA NETWORKS, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| CISCO SYSTEMS, INC.,<br><br>                    Plaintiff,<br><br>        v.<br><br>ARISTA NETWORKS, INC.,<br><br>                    Defendant. | Case No. 5:14-cv-05344-BLF (NC)<br><br>**DEFENDANT ARISTA'S OBJECTIONS TO PLAINTIFF CISCO'S 12/01/16 TRIAL EXHIBITS AND DEMONSTRATIVES**<br><br>Dept.:      Courtroom 3 – 5th Floor<br>Judge:     Hon. Beth Labson Freeman<br><br>Date Filed: December 5, 2014<br><br>Trial Date: November 21, 2016 |

1    Arista objects to Trial Exhibit 593, which Cisco disclosed for use with Cisco's expert
2  witness, Dr. Almeroth, on Thursday, December 1.  Arista objects to this exhibit because it is a
3  prejudicial and improper summary exhibit that violates this Court's *Daubert* Order, relies on
4  unregistered works, and attempts to gloss over defects in Dr. Almeroth's opinions.

5    The Court excluded any opinion that Arista copied Cisco's source code to create
6  "helpdesc" phrases "because Cisco represented that it is not alleging source code copying of the
7  'help descriptions.'"  ECF 661 at 9-11.    Yet, Exhibit 593 is titled "Exhibit Copying – 6 –
8  Evidence of Help Description Copying," a heavily redacted Cisco contention interrogatory
9  response that Dr. Almeroth later attached to his expert report before the *Daubert* Order.  The first
10 19 pages list purported Cisco help descriptions next to Arista help descriptions, and Arista source
11 code citations in the right column.  The next 205 pages are Arista source code citations
12 juxtaposed with Cisco source code citations.  This is obviously intended to suggest to the jury that
13 Arista copied Cisco's source code even though that allegation has been excluded.  Cisco's
14 intentions are confirmed by Dr. Almeroth's Demonstrative Slide 129 (addressed in yesterday's
15 objections), which juxtaposes the words "copying" with "Arista EOS Source Code."  Cisco does
16 not need a summary exhibit that discusses either parties' source code given that the help
17 descriptions accused by Cisco appear *on the screen* in Cisco's and Arista's user interfaces.

18    In addition, the only supporting document cited by Cisco for its assertion of "helpdesc"
19 copying for "IOS XR" is something called "Cisco IOS-XR514."  *See, e.g.*, Ex. 593 at page 20.
20 Cisco has ***never disclosed*** an "IOS-XR 514" as a copyright-registered work in this case.  Dr.
21 Almeroth's expert report is similarly defective in that his "helpdesk" copying opinion for IOS-XR
22 is based entirely on the unregistered "IOS-XR 514" work.  *See* Ex. A hereto, Almeroth Rpt. ¶
23 225.  Arista moved to exclude evidence of unregistered works.  The Court deferred ruling on the
24 motion to wait for the evidence. MIL Order at 9.  Now is that time.  Exhibit 593 and any opinion
25 by Dr. Almeroth concerning help descriptions in unregistered Cisco software is prejudicial,
26 because the jury cannot find infringement based on unregistered works; registration is a
27 prerequisite to an infringement claim under 17 U.S.C. § 411, and Cisco never disclosed such a
28 registration.  Dr. Almeroth should not be allowed to testify as to any opinions based on "IOS-XR

514," nor should the Cisco portions of Exhibit 593 be admitted or shown to the jury.

Finally, Exhibit 593 suffers from several other defects. Its title and juxtaposition of Cisco and Arista help descriptions side-by-side are argumentative and summarize Cisco's infringement contentions—not merely the evidence. Arista would not object to a true summary of evidence. Moreover, it states in the Arista column heading that Arista's help descriptions are the "same or similar" to Arista's help descriptions. Comparing asserted and accused works for similarity is a question for the jury, so it is inappropriate for a summary of evidence to purport to do it for the jury. Courts have recognized that this is an improper use of Rule 1006. *See Peat, Inc. v. Vanguard Research, Inc.*, 378 F.3d 1154, 1159–63 (11th Cir. 2004) ("[B]ecause summaries are elevated under Rule 1006 to the position of evidence, care must be taken to omit argumentative matter in their preparation lest the jury believe that such matter is itself evidence"; criticizing "conclusory statements and claims" and "suggestive headings" in summary exhibit) (internal quotation marks omitted); *United States v. Bray*, 139 F.3d 1104, 1110–11 (6th Cir. 1998) (summary exhibits may not be "embellished by or annotated with the conclusion of or inferences drawn by the proponent, whether in the form of labels, captions, highlighting techniques, or otherwise . . . . [A] summary containing elements of argumentation could very well be the functional equivalent of a mini-summation by the chart's proponent every time the jurors look at it during their deliberations.").

Exhibit 593 also contains many redactions that Cisco made after it realized it had asserted help descriptions that were indefensible. For example, the first redaction on page 1 of Exhibit 593 hides Dr. Almeroth's opinion that Arista's "Summary access list" help description infringes Cisco's "Access List Summary" help description. These redactions alone demonstrate that this document is not a proper summation of evidence.

**Objection to source code files never discussed by Dr. Jeffay, and to Dr. Jeffay expanding his opinions on those files at trial.** Cisco seeks to admit, via its patent infringement expert, numerous source code files that Dr. Jeffay cited in an exhibit to his expert report, but which he never discussed. Arista also believes that Cisco may attempt to present testimony regarding "management programs" that goes beyond the disclosures in Dr. Jeffay's report.

The '526 patent requires that a user enters generic commands, which are translated into prescribed commands, which are in turn executed by management programs.  Dr. Jeffay accuses EOS Agents (i.e., the programs that EOS refers to as "Agents") as management programs. *See* Ex. C (Jeffay Rpt.) at 40 ¶ 127.  At deposition, he confirmed that he did not accuse anything else as a management program in his report.  *See* Ex. B (Jeffay Dep. Excerpts) at 119:16-120:7.  In Exhibit 4 to his report, Dr. Jeffay identified 77 generic commands, the corresponding prescribed commands, and the 26 source code files where those prescribed commands can be located.  *See* Ex. D (Exhbit 4 to Jeffay Rpt.).  But Exhibit 4 does not identify the alleged "management program" (i.e., EOS Agent) that executes each of those 77 prescribed commands.  *Id.*

Of the 26 source code files listed in Exhibit 4, Dr. Jeffay only discussed two in his expert report.  In both cases, the discussion was a single sentence.  *See* Ex. C (Jeffay Rpt.) at 47 ¶ 125 (the "show openflow" command) & *id.* at 66-67 ¶ 186 ("show platform arad arp" command).  And in the first instance, Dr. Jeffay did not even name the EOS Agent, but said it was located in the cited file.  *Id.* at 39 ¶ 125.  At deposition, when asked to identify *any* of the EOS Agents (i.e., management programs) for the 77 accused prescribed commands, he could not give definitive testimony.  *See* Ex. B at 127:4-24 ("I believe it's something related to ARP") & 127:21- 131:4 ("I don't know the exact name, but it's associated with Strata L2") ("I don't recall the agent per se, but I believe it's called SNMP") ("I think there's…this system manager agent") ("And I think those are the only ones that I recall").  To give definitive answers, Dr. Jeffay had to perform additional code review.  *Id.* at 129:4-19.

As a result, Arista seeks three rulings.  *First*, of the 26 source code files on Dr. Jeffay's Exhibit 4, only the two discussed in his report should be admitted.  For those files, his testimony should also be limited in scope to the one sentence disclosure he gave in his report.  *Second*, Dr. Jeffay should not be allowed to identify anything other than EOS Agents as management programs at trial, given his admission that he did not disclose any other such theory in his expert report. Ex. B at 119:16-120:7.  *Third*, Dr. Jeffay should not be allowed to identify any EOS Agents as management programs in his testimony other than the single one that he definitively identified in his report (i.e., the "SandL2Unicast agent").  Ex. C at  ¶ 186.

| | |
|---|---|
| Dated: November 30, 2016 | KEKER & VAN NEST LLP |
| | By: */s/ Robert A. Van Nest* |
| | ROBERT A. VAN NEST |
| | Attorney for Defendant |
| | ARISTA NETWORKS, INC. |