KEKER & VAN NEST LLP
ROBERT A. VAN NEST - # 84065
BRIAN L. FERRALL - # 160847
DAVID SILBERT - # 173128
MICHAEL S. KWUN - #198945
633 Battery Street
San Francisco, CA 94111-1809
Telephone:   (415) 391-5400
Email:  rvannest@kvn.com;
bferrall@kvn.com; dsilbert@kvn.com;
mkwun@kvn.com

SUSAN CREIGHTON, SBN 135528
SCOTT A. SHER, SBN 190053
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
1700 K Street NW, Fifth Floor
Washington, D.C., 20006-3817
Telephone:  (202) 973-8800
Email:  screighton@wsgr.com;
ssher@wsgr.com

JONATHAN M. JACOBSON, NY SBN 1350495
CHUL PAK (*pro hac vice*)
DAVID H. REICHENBERG (*pro hac vice*)
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
1301 Avenue Of The Americas, 40th Floor
New York, NY 10019-6022
Telephone:  (212) 999-5800
Email:  jjacobson@wsgr.com; cpak@wsgr.com;
dreichenberg@wsgr.com

Attorneys for Defendant
ARISTA NETWORKS, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| CISCO SYSTEMS, INC.,<br><br>         Plaintiff,<br><br>    v.<br><br>ARISTA NETWORKS, INC.,<br><br>         Defendant. | Case No. 5:14-cv-05344-BLF (NC)<br><br>**DEFENDANT ARISTA'S OBJECTIONS TO PLAINTIFF CISCO'S 12/02/16 TRIAL EXHIBITS AND DEMONSTRATIVES**<br><br>Dept.:     Courtroom 3 – 5th Floor<br>Judge:     Hon. Beth Labson Freeman<br><br>Date Filed:  December 5, 2014<br><br>Trial Date:  November 21, 2016 |

**Scope of Testimony for Frank Palumbo:** With respect to Cisco witness Frank Palumbo, the Court has previously ruled *in limine* that Mr. Palumbo's testimony should be limited to the Rule 30(b)(6) topics on which he was designated. Nov. 8, 2016 MIL Order at 11-12. Based on Mr. Palumbo's admission in deposition that he lacked personal knowledge on certain of the Rule 30(b)(6) topics on which he was designated, Arista objects to any testimony from Mr. Palumbo inconsistent with the Court's Order.

Cisco designated Mr. Palumbo to testify on Arista's Rule 30(b)(6) Topics 54, 60-62, 106-07, 109, 113-16, 133.  Ex. A, E.  Cisco narrowed those topics to Cisco's marketing of products, including the Cisco CLI and/or embodying the patents-in-suit, any injury claimed by Cisco as a result of Arista's alleged infringement, including the identity of any sale lost to Arista, the demand for Cisco CLI, and attributes customers consider when deciding whether to purchase Cisco's products.  Later, Cisco also designated Mr. Palumbo to testify about "Cisco's lost sales to the [30] lost sales customers identified in" its damages report." Ex.  B.

Mr. Palumbo, however, disclaimed any personal knowledge about the following topics: the '526 patent, injury claimed by Cisco as a result of Arista's alleged infringement, including the identity of any sale lost to Arista, the demand for Cisco CLI, attributes customers consider when deciding whether to purchase Cisco's products, and Cisco's lost sales to the 30 lost sales customers identified in its damages report.

For example, Mr. Palumbo could not name a single sale Cisco had won on the basis of its CLI, nor did he know anything about the differences in the CLI supported by Cisco's operating systems.  Ex. C at 13:6-14:15, 35:25-36:17.  Mr. Palumbo did not know whether Cisco had ever investigated customer perceptions of its CLI commands, nor could he identify any way in which Cisco markets its CLI. *Id.* at 53:3-54:17. Mr. Palumbo also conceded that he had no "subject matter expertise" on the '526 patent. *Id.* at 93:14-96:22.

With respect to the 30 lost sales customers on which he was designated to testify, Mr. Palumbo conceded that he had no knowledge about the buying criteria for any of those customers, nor did he have communications with any of the customers relating to Arista's CLI being a reason they purchased Arista switches.  Ex. D at 138:23-139:16; Ex. C at 25:14-26:20, 35:10-24, 89:18-

1

24, 91:4-25; Mr. Palumbo also could not identify any transaction Cisco lost to Arista for any of those 30 customers; he did not know whether any of those customers had stopped buying Cisco switches. Ex. C at 35:10-24; 24:1-21; 25:14-27:2, 38:24-40:13.  Finally, Mr. Palumbo testified that he relied on hearsay to testify regarding certain of the 30 lost sale customers, having spoken to various other Cisco employees to educate himself on the topic.  Even as to that, however, Mr. Palumbo had no knowledge concerning how his fellow Cisco employees knew that the CLI was critical to those customers, nor did they identify any customer representative who had ever stated that it cared whether Arista's CLI was Cisco-like. Ex. D at 17:17-18:15, 19:22-20:5, 20:12-22:8, 27:14-16, 154:13-21.

**Jeffay Demonstratives**:  Arista objects to slides 15 and 72 of Dr. Jeffay's demonstratives, as they purport to instruct the jury on the relevant law.

**Chevalier Demonstratives**: Arista objects to slides 17-26, 34-35, 37, 42, 46, 51, 60-74, 76-90, 93-94 of Dr. Judith Chevalier's demonstratives.  *First,* slides 35 and 72 cite documents that Dr. Chevalier never relied on in any of her reports (*see* objection to TX 472 & 4262 below).  This is a clear violation of Rule 26(a)(2)(B).   *See also* Pretrial Conf. Tr. at 47:3-20.  *Second,* Slides 76-90 are unrelated to any issue that is before the jury.  Instead, as is evident in Dr. Chevalier's expert report, the matters addressed in these slides—including lost profits from future sales, price erosion, etc.—are relevant Cisco's request for injunctive relief.  *See* Chevalier Rpt. at ¶¶ 84-116 ("Evidence of Other Harms," "Permanent Injunction Considerations").  Because these issues are not relevant to anything the jury must decide, including damages in this case, they are highly prejudicial and misleading. *MediaTek Inc. v. Freescale Semiconductor, Inc.*, No. 11-CV-5341 YGR, 2014 WL 587098, at *3 (N.D. Cal. Feb. 13, 2014) (excluding evidence *in limine* from jury trial related solely to injunctive relief).  *Third,* Slides 18-24, 26, 34, 64, 66-68, 73, 78-79, and 84 cite multiple snippets of deposition testimony that is both inadmissible and not in evidence. Fed. R. Evid. 402.  *Fourth,* Slides 17, 25, 37, 42, 46, 51, and the titles to Slides 60-65, 67-74, 93-94 are argumentative.  *See United States v. Freeman*, 498 F.3d 893, 903–04 (9th Cir. 2007) (an expert may not be used as a party spokesperson to provide an "additional summation" of evidence).

1        **TX Nos. 472, 693, 4262**: Cisco has disclosed numerous exhibits for Dr. Chevalier's
2   testimony, that were never disclosed in any of Dr. Chevalier's three expert reports submitted in
3   this case.
4        **TX Nos. 31, 505**:  Arista objects to these exhibits as inadmissible hearsay.  Cisco has
5   failed to identify a non-hearsay purpose for these exhibits or explain how they would fall under a
6   hearsay exception.
7        **TX Nos. 805, 808, 809**:  Arista objects to Summary Exhibits 805, 808, and 809.  These
8   exhibits are not summaries of admissible evidence, they are summaries of Dr. Chevlier's expert
9   opinions.  The bottom line of each exhibit is the figure Dr. Chevalier asserted as her opinion of
10  lost revenues, lost profits, and but-for market share.  The summaries do not summarize admissible
11  evidence, nor can they, because built into them are Dr. Chevalier's own opinions.  *See Peat, Inc.*
12  *v. Vanguard Research, Inc.*, 378 F.3d 1154, 1159–63 (11th Cir. 2004) ("[B]ecause summaries are
13  elevated under Rule 1006 to the position of evidence, care must be taken to omit argumentative
14  matter in their preparation lest the jury believe that such matter is itself evidence"; criticizing
15  "conclusory statements and claims" and "suggestive headings" in summary exhibit) (internal
16  quotation marks omitted); *United States v. Bray*, 139 F.3d 1104, 1110–11 (6th Cir. 1998)
17  (summary exhibits may not be "embellished by or annotated with the conclusion of or inferences
18  drawn by the proponent, whether in the form of labels, captions, highlighting techniques, or
19  otherwise . . . .  [A] summary containing elements of argumentation could very well be the
20  functional equivalent of a mini-summation by the chart's proponent every time the jurors look at
21  it during their deliberations.").  There is no admissible evidence in this case that states what
22  Cisco's lost profits are, or a but-for market share.  These exhibits can be demonstratives, but they
23  should not be evidence that is sent to the jury room.
24       **TX 3505**: Portions of Exhibit 3505 are barred by FRE 402 and 403.  Just as this Court
25  granted Arista's motion to exclude references to the ITC investigations, it should likewise bar any
26  statements concerning other litigation by or against Arista. *See* Nov. 8, 2016 MIL Order at 7-8.
27  These portions of Exhibit 633 are also irrelevant to the limited scope of topics on which Dr.
28  Chevalier can testify, and are therefore unduly prejudicial and inadmissible.

**TX 4745**: Arista objects to Exhibit 4745 as hearsay.

Dated: December 1, 2016                              KEKER & VAN NEST LLP

                                          By:   */s/ Robert A. Van Nest*
                                                ROBERT A. VAN NEST

                                                Attorney for Defendant
                                                ARISTA NETWORKS, INC.