1   Kathleen Sullivan (SBN 242261)          KEKER & VAN NEST LLP
    kathleensullivan@quinnemanuel.com       ROBERT A. VAN NEST - # 84065
2   QUINN EMANUEL URQUHART &                rvannest@kvn.com
    SULLIVAN LLP                            BRIAN L. FERRALL - # 160847
3   51 Madison Avenue, 22nd Floor           bferrall@kvn.com
    New York, NY 10010                      DAVID SILBERT - # 173128
4   Telephone: (212) 849-7000               dsilbert@kvn.com
    Facsimile: (212) 849-7100               MICHAEL S. KWUN - # 198945
5                                           mkwun@kvn.com
    Sean S. Pak (SBN 219032)                633 Battery Street
6   seanpak@quinnemanuel.com                San Francisco, CA 94111-1809
    John M. Neukom (SBN 275887)             Telephone:    415 391 5400
7   johnneukom@quinnemanuel.com             Facsimile:    415 397 7188
    QUINN EMANUEL URQUHART &
8   SULLIVAN LLP                            ATTORNEYS FOR DEFENDANT ARISTA
    50 California Street, 22nd Floor         NETWORKS, INC.
9   San Francisco, CA 94111
    Telephone: (415) 875-6600
10  Facsimile: (415) 875-6700

11  David Nelson (admitted pro hac vice)
    davenelson@quinnemanuel.com
12  QUINN EMANUEL URQUHART &
    SULLIVAN LLP
13  500 W Madison St, Suite 2450
    Chicago, IL 60661
14  Telephone: (312) 705-7465
    Facsimile: (312) 705 7401
15
    [Additional counsel listed on signature page]
16
    ATTORNEYS FOR PLAINTIFF CISCO
17  SYSTEMS, INC.

18
19              **UNITED STATES DISTRICT COURT**

20      **NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION**

21  CISCO SYSTEMS, INC.,                    CASE NO. 5:14-cv-5344-BLF

22              Plaintiff,                   **PARTIES' DISPUTED PROPOSED JURY
                                             INSTRUCTIONS—INSTRUCTIONS
23       vs.                                 NO. 39/41**

24  ARISTA NETWORKS, INC.,                   Judge:  Hon. Beth Labson Freeman
                                             Dep't:  Courtroom 3, 5th Floor
25              Defendant.                   Trial Date:  November 21, 2016

26

27

28

# TABLE OF CONTENTS

**Page**

DISPUTED:  Cisco's Final Instruction No. 39 re Copying—Indirect Evidence: Substantial Similarity ...................................................................................................................1

DISPUTED:  Cisco's Final Instruction No. 39A re Copying— Indirect Evidence: Virtual Identity .....................................................................................................................4

DISPUTED: Arista's Final Instruction No. 39 re Copyright—Indirect Evidence of Factual Copying: Virtual Identity ......................................................................................9

DISPUTED:  Cisco's Final Instruction No. 41—Sufficiency Of Copying—More Than *De Minimis* ...................................................................................................................11

DISPUTED: Arista's Final Instruction No. 41—Infringement ....................................................13

1129998.01

**DISPUTED:  Cisco's Final Instruction No. 39 re Copying—Indirect Evidence: Substantial**

**Similarity**

To establish indirect evidence of copying, Cisco must also prove by a preponderance of the evidence that there are substantial similarities between the asserted elements of Cisco's copyrighted works and the corresponding elements of Arista's works that Cisco accuses Arista of copying.[1]  Even if a copied portion is relatively small in proportion to the copyrighted work as a whole, if it is qualitatively important, you may find substantial similarity.[2]

---

[1]  Stipulated/Resolved Instructions 36 and 38.  *See, e.g.*, *Mandeville-Anthony v. Walt Disney Co.*, 474 F. App'x 651, 652 (9th Cir. 2012) (requiring "substantial similarity between **protected elements** of [plaintiff's] copyrighted works and **comparable elements** of the defendants' works") (emphasis added); *Benay v. Warner Bros. Entm't*, 607 F.3d 620, 624 (9th Cir. 2010) (evaluating "whether there is substantial similarity between **protected elements** of the Screenplay and **comparable elements** of the Film") (emphasis added);  *see also, e.g.*, *Gold Glove Prods., LLC v. Handfield*, 648 F. App'x 679, 680 (9th Cir. 2016) (comparing "specific expressive **elements**") (emphasis added); *Meridian Textiles, Inc. v. Topson Downs of Cal., Inc.*, 605 F. App'x 671, 672 (9th Cir. 2015) (finding "objective similarities" in "**protectable elements**" between [plaintiff's] design and [defendants'] design) (emphasis added); *L.A. Printex Indus., Inc. v. Aeropostale, Inc.*, 676 F.3d 841, 848 (9th Cir. 2012)  ("Our comparison of Defendants' allegedly infringing design and C30020 reveals **objective similarities in protectible elements**") (emphasis added); *Cavalier v. Random House, Inc.*, 297 F.3d 815, 822 (9th Cir. 2002) ("the works at issue are **substantially similar** in their **protected elements**. … A court must take care to inquire only whether the **protectible elements, standing alone**, are substantially similar.") (emphasis added) (quotation marks omitted); *Brown Bag Software v. Symantec Corp.*, 960 F.2d 1465, 1475, 1477 (9th Cir. 1992) ("district court properly compared the expressions embodied in the two screens presenting" **particular disputed menus**) (emphasis added); *Capcom U.S.A., Inc. v. Data E. Corp.*, 1994 WL 1751482, at *5 (N.D. Cal. Mar. 16, 1994) (protected elements are to "be compared individually with the **corresponding elements** of the challenged work to detect similarities") (emphasis added).

[2]  *Swirsky v. Carey*, 376 F.3d 841, 852 (9th Cir. 2004) ("even if a copied portion be relatively small in proportion to the entire work, if qualitatively important, the finder of fact may properly find substantial similarity" (quoting *Baxter v. MCA, Inc.*, 812 F.2d 421, 425 (9th Cir. 1987))).

1129998.01

In comparing the relevant elements of Cisco's and Arista's works for substantial similarity, you must consider only those elements that are protectable.[3] I have determined that the following elements of Cisco's copyrighted user interfaces are protectable:[4]

1. Cisco's original multi-word command expressions;

2. Cisco's original modes and prompts;

3. Cisco's original screen outputs; and

4. Cisco's original help descriptions.

In addition, I have determined that original text and images in Cisco's technical manuals are protectable.

In comparing the relevant elements of the works for substantial similarity, you should not consider the following elements, which Cisco does not assert as protectable in this case:

1. Single-word commands;

2. Isolated words in Cisco's multiword command expressions;

3. Ideas (as opposed to the particular expression of an idea), including: the idea of a hierarchy, the idea of making certain commands available only in certain modes; the idea of an interactive help system; the idea of using a text-based user interface rather than a graphical interface; the idea of using multiword commands to manage or configure a device; or the idea of having a minimum syntactic length;

4. Use of a question mark to call up help descriptions;

_____

[3]  *Mattel, Inc. v. MGA Entm't, Inc.*, 616 F.3d 904, 916 (9th Cir. 2010) ("a finding of substantial similarity between two works can't be based on similarities in unprotectable elements").

[4]  *Harper House, Inc. v. Thomas Nelson, Inc.*, 889 F.2d 197, 207 (9th Cir. 1989) ("Instruction Nos. 6 and 8 both required that Harper House make a showing of 'substantial similarity' between '*protectable expressions*' in the organizers.  Though the instructions cautioned that the jury limit its review to protectable material, this caution was of little value because ***these instructions did not adequately explain to the jury which material was, in fact, protectable***.") (emphasis added).

5.   Tab completions;

6.   Command prefixes that the user interface autocompletes;

7.   Individual mode indicators and individual prompts; or

8.   The function of any asserted feature (as opposed to Cisco's expression), or portions of multiword command expressions that you find were dictated by functional demands.

The works are substantially similar if the protected elements in Cisco's copyrighted works and the corresponding elements in Arista's works are substantially similar.

You should also consider whether an ordinary reasonable observer would consider Cisco's copyrighted works and Arista's challenged works substantially similar in their overall concept and feel.[5]

---

[5]   *L.A. Printex Indus., Inc. v. Aeropostale, Inc.*, 676 F.3d 841, 852 (9th Cir. 2012) ("At the intrinsic stage, 'we ask, most often of juries, whether an ordinary reasonable observer would consider the copyrighted and challenged works substantially similar.'" (quoting *Mattel, Inc. v. MGA Entm't, Inc.*, 616 F.3d 904, 914 (9th Cir. 2010))).

**DISPUTED:  Cisco's Final Instruction No. 39A re Copying— Indirect Evidence: Virtual Identity**

[Cisco proposes Instruction No. 39 on the ground that Cisco's asserted protectable elements are entitled to broad protection.  Cisco proposes Instruction No. 39A only in the event that the Court rules that Cisco's asserted protectable elements are entitled to thin protection and thus rejects Cisco's proposed Instruction No. 39.  Cisco expressly reserves its right to assert that it is error not to give Instruction No. 39.]

To establish indirect evidence of copying, Cisco must also prove by a preponderance of the evidence that there is virtual identity between the asserted elements of Cisco's copyrighted works and the corresponding elements of Arista's works that Cisco claims Arista copied.[6]  Even if a copied portion is relatively small in proportion to the entire work, if it is qualitatively important, you may find virtual identity.[7]

---

[6]  Stipulated/Resolved Instructions 36 and 38; *Synopsys, Inc. v. ATopTech, Inc.*, No. 3:13-cv-02965-MMC (N.D. Cal.), Final Instructions, ECF 688 at 12 ("Synopsys has the burden of proving that ATopTech copied original elements from Synopsys' copyrighted works…. Synopsys may show that ATopTech copied from those copyrighted works by showing by a preponderance of the evidence that ATopTech had access to those copyrighted works and that ***challenged elements*** of ATopTech's Aprisa and ***original, protected elements*** of Synopsys' PrimeTime works are ***virtually identical***.") (emphasis added); *Dream Games of Ariz., Inc. v. PC Onsite*, 561 F.3d 983, 989 (9th Cir. 2009) ("Dream Games must show that the ***accused screen displays*** are ***virtually identical to protected elements*** of corresponding screen displays of the Fast Action Bingo game") (emphasis added).

[7]  *Merch. Transaction Sys., Inc. v. Nelcela, Inc.*, 2009 WL 723001, at *18 (D. Ariz. Mar. 18, 2009) (holding that "infringement will lie only if the protectable elements differ from one another by no more than a trivial degree," but also noting that "a defendant will escape liability only where the copied, protectable elements constitute an insignificant portion or aspect of the work" because "'the relevant inquiry is whether a substantial portion of the protectable material in [*plaintiff's*] work was appropriated—not whether a substantial portion of *defendant's* work was derived from plaintiff's work.' … [T]he jury must determine whether the ***protectable elements*** of the two works differ in more than a trivial degree, and, if not, whether those elements are of sufficient importance to the works as a whole to render [defendant] guilty of infringement.") (quoting *Worth v. Selchow & Righter Co.,* 827 F.2d 569, 570 n. 1 (9th Cir. 1987)) (emphasis added).

In comparing the relevant elements of Cisco's and Arista's works for virtual identity, you must consider only those elements that are protectable.[8]  I have determined that the following elements of Cisco's copyrighted user interfaces are protectable:[9]

1.  Cisco's original multi-word command expressions;

2.  Cisco's original modes and prompts;

3.  Cisco's original screen outputs; and

4.  Cisco's original help descriptions.

In addition, I have determined that original text and images in Cisco's product manuals are protectable.

In comparing the relevant elements of the works for virtual identity, you should not consider the following elements, which Cisco does not assert as protectable in this case:

1.  Single-word commands;

2.  Isolated words in Cisco's multiword command expressions;

3.  Ideas (as opposed to the particular expression of an idea), including: the idea of a hierarchy, the idea of making certain commands available only in certain modes; the idea of an interactive help system; the idea of using a text-based user interface rather than a graphical interface; the idea of using multiword commands to manage or configure a device; or the idea of having a minimum syntactic length;

---

[8]  *Apple Computer, Inc. v. Microsoft Corp.*, 35 F.3d 1435, 1439 (9th Cir. 1994) (excluding unprotectable elements before comparing works); *Dream Games of Arizona, Inc. v. PC Onsite*, 561 F.3d 983, 989 (9th Cir. 2009) (filtering out unprotectable elements and approving jury instruction requiring virtual identity between the "accused screen displays" and the "protected elements of [plaintiff's] corresponding screen displays").

[9]  *Harper House, Inc. v. Thomas Nelson, Inc.*, 889 F.2d 197, 207 (9th Cir. 1989) ("Instruction Nos. 6 and 8 both required that Harper House make a showing of "substantial similarity" between "*protectable expressions* " in the organizers.  Though the instructions cautioned that the jury limit its review to protectable material, this caution was of little value because ***these instructions did not adequately explain to the jury which material was, in fact, protectable***.") (emphasis added).

1129998.01

4. Use of a question mark to call up help descriptions;

5. Tab completions;

6. Command prefixes that the user interface autocompletes;

7. Individual mode indicators and individual prompts; or

8. The function of any asserted feature (as opposed to Cisco's expression), or portions of multiword command expressions that you find were dictated by functional demands.

The works are virtually identical if the protected elements in Cisco's copyrighted works and the corresponding elements in Arista's works are virtually identical.

You should also consider whether an ordinary reasonable observer would consider Cisco's copyrighted works and Arista's challenged works virtually identical in their overall concept and feel.[10]

**Cisco's Position [addressing Arista's 39 & 41]:**

Cisco respectfully suggests that the Court should adopt Cisco's proposed Instruction No. 39 rather than the alternative No. 39A because the evidence at trial supports Cisco's position that its copyrighted works are entitled to "broad" copyright protection. *See, e.g.*, *Brown Bag Software v. Symantec Corp.*, 960 F.2d 1465, 1475-77 (9th Cir. 1992) (applying substantial similarity test to "specific screens, menus, and keystrokes" of computer program). The "thin" protection test applies only when all the ways to express a particular idea fall within a "narrow range." *Mattel, Inc. v. MGA Entm't, Inc.*, 616 F.3d 904, 915 (9th Cir. 2010). The jury has heard substantial evidence that the multiword command expressions and other protected elements of the user interfaces that Cisco asserts could have been expressed in a variety of ways. Any evidence that, following Cisco's original creative decisions, any competitor like Arista copied Cisco's protected

---

[10] Final Jury Instructions at 34, *Dream Games of Ariz., Inc. v. PC Onsite*, No. 2:03-cv-433-DLR (D. Ariz. Nov. 22, 2006), ECF 277 ("Works are virtually identical if the copyrightable elements in the plaintiff's copyrighted work and the corresponding elements in the defendant's work are virtually identical. The test is whether an ordinary reasonable person would find the total concept and feel of the two works being compared to be virtually identical"); *L.A. Printex Indus., Inc. v. Aeropostale, Inc.*, 676 F.3d 841, 852 (9th Cir. 2012) ("At the intrinsic stage, 'we ask, most often of juries, whether an ordinary reasonable observer would consider the copyrighted and challenged works substantially similar [(or virtually identical)].'" (quoting *Mattel, Inc. v. MGA Entm't, Inc.*, 616 F.3d 904, 914 (9th Cir. 2010))).

elements are not evidence of any constraints on Cisco's expression at the relevant time of initial creation and do not warrant a finding that thin protection is warranted.

In any event, whether Cisco's asserted protectable elements enjoy either broad or thin protection, the comparison the jury must make under either the substantial similarity test or the virtual identity is an element-to-element comparison (between the protected elements of the asserted works and the corresponding elements of the accused works), and not a comparison at the level of the works as a whole, as supported by the extensive case law under both tests cited in the footnotes accompanying the Cisco's Proposed Instructions No. 39 and 39A. Both instructions specifically identify the asserted protectable elements so that the jury can consider and compare their objective qualities.  Both instructions also identify the elements that are not asserted as protectable in this case, to ensure that the jury's ultimate analysis of "substantial similarity" or "virtual identity" is subject to proper filtration.

Arista's Proposed Instruction Nos. 39 and 41 should be rejected because they are unwieldy, confusing, combine multiple disparate concepts, and are legally flawed. Cisco's instructions more correctly embody governing Ninth Circuit law for the following reasons:

*First*, Cisco's proposed Instruction Nos. 39 and 41 properly distinguish ***factual copying*** (which may be proved by direct or indirect evidence) from ***sufficient copying*** (which in the Ninth Circuit means "non-*de minimis* copying") as separate aspects of a copyright infringement claim. *See Loomis v. Cornish*, 836 F.3d 991, 994 (9th Cir. 2016).

*Second*, Cisco's proposed Instructions Nos. 39 and 39A properly reflect that the Ninth Circuit applies an "extrinsic test" and "intrinsic test" for factual copying.  The extrinsic test clearly requires the jury to undertake ***element-to-element*** comparison, not work-to-work comparison. This is so in both the context of comparisons for substantial similarity (in cases of "broad" protection), *e.g.*, *Benay v. Warner Bros. Entm't*, 607 F.3d 620, 624 (9th Cir. 2010) (evaluating "whether there is substantial similarity between ***protected elements*** of the Screenplay and comparable elements of the Film") (emphasis added); *Mandeville-Anthony v. Walt Disney Co.*, 474 F. App'x 651, 652 (9th Cir. 2012) (requiring "substantial similarity between ***protected elements*** of [plaintiff's] copyrighted works and comparable elements of the defendants' works") (emphasis added), ***or*** in the context of virtual identity (in cases of "thin" protection), *e.g.*, *Synopsys, Inc. v. ATopTech, Inc.*, No. 3:13-cv-02965-MMC (N.D. Cal.), Final Instructions, ECF 688 at 12 (Synopsys must show "that ***challenged elements*** of ATopTech's Aprisa and original, ***protected elements*** of Synopsys' PrimeTime works are virtually identical.") (emphasis added); *Dream Games of Ariz., Inc. v. PC Onsite*, 561 F.3d 983, 989 (9th Cir. 2009) ("Dream Games must show that the ***accused screen displays*** are virtually identical to protected elements of corresponding screen displays of the Fast Action Bingo game") (emphasis added).  Application of the extrinsic test—which focuses on element-to-element comparison—is the province of the jury and not the Court, even if the Court provides guidance on dissection and filtration in ensuring that the comparison is conducted only as to protectable elements.  *See Three Boys Music Corp. v. Bolton*, 212 F.3d 477, 485 (9th Cir. 2000) ("well settled that a jury" evaluates protectability of elements "under the extrinsic test"); *Sid & Marty Krofft Television Prods., Inc. v. McDonald's Corp.*, 562 F.2d 1157, 1164 (9th Cir. 1977) ("The test for similarity of ideas is still a factual one, to be decided by the trier of fact.  We shall call this the 'extrinsic test.'") (citation omitted).

*Third*, Cisco's proposed instructions properly explain to the jury "which material [is], in fact, protectable," as the Ninth Circuit has held is necessary information for the jury.  *Harper House, Inc. v. Thomas Nelson, Inc.*, 889 F.2d 197, 207 (9th Cir. 1989).  The Court should explain the jury's task in the clearest manner possible, which requires identifying the elements found to be

original and protected by copyright. Final Jury Instructions at 11, *Synopsys, Inc. v. ATopTech, Inc.*, No. 3:13-cv-2965-MMC (N. D. Cal. Mar. 10, 2016), ECF 688 ("Synopsys is not claiming that ATopTech infringes [certain non-asserted elements]. Rather, Synopsys is claiming that ATopTech infringes [certain asserted elements]. You are instructed that those elements are original and protected by copyright.").

*Fourth*, Cisco's proposed instructions properly include reference to the Ninth Circuit's "intrinsic test," which asks the jury to consider, once it has performed the element-to-element comparison under the extrinsic test, whether a reasonable observer would find the works similar in their overall look and feel.

**DISPUTED: Arista's Final Instruction No. 39 re Copyright—Indirect Evidence of Factual Copying: Virtual Identity**

To establish by indirect evidence that Arista in fact copied from Cisco's works, Cisco must also prove by a preponderance of the evidence that there is virtual identity between protectable asserted elements of Cisco's copyrighted works and the corresponding elements of Arista's works that Cisco claims Arista copied.[11]  In making this comparison, you should disregard any elements I instruct you are unprotected, or that you, following my instructions, find are unprotected.[12]

As I instructed you at the beginning of the trial, copyright protection does not extend to all the elements of a copyrighted work.  Elements to which copyright protection extends are called "protected matter," and other elements are "unprotected matter."  Unprotected matter is not entitled to copyright protection and therefore may be copied by another author.[13]

In this case, the following elements of Cisco's works are unprotected matter:

1.    Single-word commands;

2.    Isolated words in Cisco's multiword command expressions;

---

[11] This instruction explains the second step of the test for indirect proof of copying under Stipulated Instruction No. 36 re Copyright—Copying, under which factual copying may be inferred from virtual identity of protected asserted elements and the accused elements.  This instruction cannot be used to determine *illicit* copying, as explained in detail in Arista's arguments and the authorities cited in support of Instruction No. 41.

[12] *Apple Computer, Inc. v. Microsoft Corp.*, 35 F.3d 1435, 1446 (9th Cir. 1994) ("the party claiming infringement may place no reliance upon any similarity in expression resulting from unprotectable elements"); *Harper House, Inc. v. Thomas Nelson, Inc.*, 889 F.2d 197, 207–08 (9th Cir. 1989) (ordering new trial where instructions "did not adequately distinguish between protectable and unprotectable material" because "given the negative connotations to 'copying,' there was an obvious risk of an improper verdict for plaintiffs, and a need for further instructions to protect legitimate activity and avoid the suffocation of competition."); *Swirsky v. Carey*, 376 F.3d 841, 845 (9th Cir. 2004), *as amended on denial of reh'g* (Aug. 24, 2004) ("Because the requirement is one of substantial similarity [or virtual identity where thin copyright protection applies] to protected elements of the copyrighted work, it is essential to distinguish between the protected and unprotected material in a plaintiff's work.").

[13] Arista's proposed instruction on unprotected matter conforms to the instruction the Court already gave the jury as Preliminary Instruction No. 12, with placeholders for additional unprotected matter still to be identified.

3.    [Individual multi-word commands to be determined based on analytic dissection ruling]

4.    [Individual words, terms, or acronyms from industry standard protocols, based on analytic dissection ruling]

5.    Ideas (as opposed to the particular expression of an idea), including: the idea of a hierarchy, the idea of making certain commands available only in certain modes; the idea of an interactive help system; the idea of using a text-based user interface rather than a graphical interface; the idea of using multiword commands to manage or configure a device; or the idea of having a minimum syntactic length;

6.    Use of a question mark to call up help descriptions;

7.    Tab completions;

8.    Command prefixes that the user interface autocompletes;

9.    Individual mode indicators and individual prompts;

10.   The function of any asserted feature (as opposed to Cisco's expression), or portions of multiword command expressions that you find were dictated by functional demands; and

11.   [All additional items determined by the Court prior to the final charge, to be determined based on the Court's analytic dissection ruling and arranged within the list above.]

**Arista's Position:**
Arista's combined arguments supporting both this Instruction No. 39 and Arista's proposed Instruction No. 41 are provided together after Arista's Instruction No. 41.

**DISPUTED:  Cisco's Final Instruction No. 41—Sufficiency Of Copying—More Than *De Minimis***

        If you conclude that Cisco has proven, whether by direct or indirect evidence, that Arista copied protectable elements of Cisco's copyrighted works, you must then determine whether the copying was greater than *de minimis*—that is, more than a trivial amount.[14]  In considering whether Arista copied a nontrivial portion of Cisco's works, you should consider the qualitative as well as the quantitative significance of the copied portion in relation to Cisco's works as a whole.[15]

**Cisco's Position**:

        Cisco maintains that the proper place to direct the jury to consider the "works as a whole" is not in the factual copying instruction, but rather in an instruction like Cisco's proposed Instruction No. 41.  "Work as a whole" is relevant to whether Arista copied a sufficient amount to be held liable, ***not*** to whether Arista copied in the first place.  The Ninth Circuit has instructed that sufficient copying means copying of more than a *de minimis* amount of a work as a whole (and not a substantial portion of a work as a whole).  *See VMG Salsoul, LLC v. Ciccone*, 824 F.3d 871, 878 (9th Cir. 2016) (quoting *Newton v. Diamond*, 388 F.3d 1189 (9th Cir. 2003), and *Fisher v. Dees*, 794 F.2d 432 (9th Cir. 1986)).

---

        [14]    ABA Model Instruction No. 1.5.8; *VMG Salsoul, LLC v. Ciccone*, 824 F.3d 871, 877 (9th Cir. 2016) ("to establish its infringement claim, Plaintiff must show that the copying was greater than de minimis"); *Newton v. Diamond*, 388 F.3d 1189, 1193 (9th Cir. 2003) ("The principal that trivial copying does not constitute actionable infringement has long been a part of copyright law.")
        [15]    *Newton v. Diamond*, 388 F.3d 1189, 1195 (9th Cir. 2003) ("Substantiality is measured by considering the ***qualitative and quantitative*** significance of the copied portion in relation to the plaintiff's work as a whole.") (emphasis added); *Merch. Transaction Sys., Inc. v. Nelcela, Inc.*, 2009 WL 723001, at *18 (D. Ariz. Mar. 18, 2009) (holding that "infringement will lie only if the protectable elements differ from one another by no more than a trivial degree," but also noting that "a defendant will escape liability only where the copied, protectable elements constitute an insignificant portion or aspect of the work" because "'the relevant inquiry is whether a substantial portion of the protectable material in [*plaintiff's*] work was appropriated—not whether a substantial portion of *defendant's* work was derived from plaintiff's work.' … [T]he jury must determine whether the protectable elements of the two works differ in more than a trivial degree, and, if not, whether those elements are of sufficient importance to the works as a whole to render [defendant] guilty of infringement.") (quoting *Worth v. Selchow & Righter Co.*, 827 F.2d 569, 570 n. 1 (9th Cir. 1987)).

In the Ninth Circuit, the *de minimis* inquiry is entirely separate from the copying inquiry, and simply asks whether the copying is so trivial that it is not even recognized under copyright law. As language from the ABA Model Instruction makes clear, the sufficiency of copying is separate from the element of copying and becomes relevant only after copying is found under direct or indirect evidence (and under the latter, under either the substantial similarity or the virtual identity test) :

> ***If you conclude that plaintiff has proven, whether by direct or circumstantial evidence, that defendant has copied matter from plaintiff's work***, you must then determine whether the matter copied is sufficient to constitute infringement.

ABA Model Instruction No. 1.5.8 (emphasis added). Cisco's instruction adapts the ABA model to reflect the Ninth Circuit's more-than-*de minimis* approach.

1

## **DISPUTED: Arista's Final Instruction No. 41—Infringement**

2

3     If you find that Arista copied any protected elements of Cisco's works,[16] you must next

4     compare the works as a whole to determine whether Arista copied protectable elements of the

5     work sufficient to constitute copyright infringement,[17] leaving out of your consideration any

6     elements that you have found are unprotected, or that I have instructed you are unprotected.[18]

7

8     [16] *Sid & Marty Krofft Television v. McDonald's Corp.,* 562 F.2d 1157, 1165 (9th Cir. 1977)
      (Ninth Circuit's "intrinsic" test is the same as second step adopted by the Second Circuit in

9     *Arnstein v. Porter,* which applies only after a finding of factual copying); *Arnstein v. Porter,* 154
      F.2d 464, 468 (2d Cir. 1946) ("If copying is established, then only does there arise the second

10    issue, that of illicit copying (unlawful appropriation)."). The Ninth Circuit's standard virtual
      identity or substantial similarity test must be used to evaluate infringement even where factual

11    copying is undisputed—unless the undisputed copying is of the ***entire copyrighted work***. The
      Ninth Circuit re-confirmed this rule just last year in *DC Comics v. Towle,* 802 F.3d 1012, 1026

12    (9th Cir. 2015) ("While we ordinarily apply a two-part "substantial similarity" test to determine
      whether a plaintiff has established copying of constituent elements of the work that are original,

13    we need not do so where, as here, "the copying of the substance of the entire work" is admitted."
      (internal citation omitted)). *See also Narell v. Freeman,* 872 F.2d 907, 910 (9th Cir.1989) (cited in

14    *DC Comics*); *Benay v. Warner Bros. Entm't,* 607 F.3d 620, 624 (9th Cir. 2010) (discussing
      extrinsic and intrinsic tests); *Apple Computer, Inc. v. Microsoft Corp.,* 35 F.3d 1435, 1442 (9th

15    Cir. 1994) (same); Ninth Circuit Model Jury Instruction 17.0 (detailing jury steps in determining
      infringement); ABA Model Jury Instruction 1.5.8 (Copyright, Trademark, and Trade Dress

16    Litigation); Patry on Copyright § 9:59–9:60; 4-13 Nimmer on Copyright § 13.03[A]

17    [17] *Antonick v. Elec. Arts, Inc.*, __ F.3d __, No. 14-15298, 2016 WL 6872072, at *5 (9th Cir.
      Nov. 22, 2016) (affirming defense JMOL after infringement verdict where complete works were

18    not in evidence to be compared); *Mattel, Inc. v. MGA Entm't, Inc.,* 616 F.3d 904, 914 (9th Cir.
      2010), *as amended on denial of reh'g* (Oct. 21, 2010) ("The standard for infringement—

19    substantially similar or virtually identical—determined at the 'extrinsic' stage is applied at the
      'intrinsic' stage."); *Apple Computer, Inc. v. Microsoft Corp.*, 35 F.3d 1435, 1443 (9th Cir. 1994)

20    ("Depending on the degree of protection, the court must set the appropriate standard for a
      subjective comparison of the works to determine whether, *as a whole,* they are sufficiently similar

21    to support a finding of illicit copying.") (emphasis added); *id.* at 1446 ("Under *Harper House* and
      *Frybarger,* there can be no infringement unless *the works* are virtually identical.") (emphasis

22    added); *Newton v. Diamond,* 388 F.3d 1189, 1195 (9th Cir. 2004) ("This focus on the sample's
      relation to the plaintiff's work *as a whole* embodies the fundamental question in any infringement

23    action") (emphasis added).

24    [18] *Apple Computer, Inc. v. Microsoft Corp.,* 35 F.3d 1435, 1446 (9th Cir. 1994) ("[T]he party
      claiming infringement may place no reliance upon any similarity in expression resulting from

25    unprotectable elements . . . . [T]he unprotectable elements have to be identified, or filtered, before
      the works can be considered as a whole.") (internal quotation marks omitted); *Dream Games of*

26    *Arizona, Inc. v. PC Onsite*, 561 F.3d 983, 989 (9th Cir. 2009) ("Consideration of the whole work

27

28

1    It is my job to isolate and identify for you the "work as a whole."  You must take my

2    identification as controlling if and when this comes up in your deliberations.  For purposes of this

3    case, I have determined that Cisco's "works as a whole" are [*Arista's contention:* each of Cisco's

4    26 separate registered versions of its four operating systems] [*the Court's ruling:* the user

5    interfaces of each of Cisco's four operating systems, namely the four user interfaces for IOS, IOS-

6    XR, IOS-XE, and NX-OS],[19] as well as each of the asserted technical manuals.  I have also

7    determined that Arista's "works as a whole" are [*Arista's contention:* each of the accused Arista

8    operating system versions] [*the Court's ruling:* Arista's user interface for each of the accused

9    Arista operating system versions] and each of the accused technical manuals.[20]

10    Trivial copying cannot be infringement, so Arista's work cannot be considered to infringe

11    Cisco's work unless an ordinary reasonable observer considering the two works as a whole would

12    recognize the copied protected matter as coming from Cisco's work.[21]

13    ─────────────────────

14    is proper under *Apple Computer* as long as 'the unprotectable elements [are] identified.'") (quoting
*Apple Computer*, 35 F.3d at 1446); *Harper House, Inc. v. Thomas Nelson, Inc.*, 889 F.2d 197,

15    207–08 (9th Cir. 1989) (ordering new trial where instructions "did not adequately distinguish

16    between protectable and unprotectable material" because "given the negative connotations to
'copying,' there was an obvious risk of an improper verdict for plaintiffs, and a need for further

17    instructions to protect legitimate activity and avoid the suffocation of competition."); *Swirsky v.
Carey*, 376 F.3d 841, 845 (9th Cir. 2004), *as amended on denial of reh'g* (Aug. 24, 2004)

18    ("Because the requirement is one of substantial similarity [or virtual identity where thin copyright
protection applies] to protected elements of the copyrighted work, it is essential to distinguish

19    between the protected and unprotected material in a plaintiff's work.").

20    [19] Arista submits this "user interface" definition of the works (here, and in its proposed verdict
form) as required by the Court's ruling on this issue.  However, Arista maintains its objections to

21    this definition of the works and contends that the proper definition of the works is each of the
registered operating systems as a whole, individually (not consolidated across registered versions).

22    Based on the evidence in the record, and in particular the lack of any independent economic or
copyright life for the asserted "user interfaces," the only definition of these works that should be

23    submitted to the jury is the 26 registered versions of Cisco's complete operating systems.

24    [20] *Oracle America, Inc. v. Google, Inc.*, No. 10-cv-03561-WHA, ECF 1017 (April 30, 2012)
(Jury Instruction 29) ("It is my job to isolate and identify for you the 'work as a whole.' You must

25    take my identification as controlling if and when this comes up in your deliberations . . . .  For
purposes of this case, I have determined that the 'work as a whole' means the following:").

26    [21] *VMG Salsoul, LLC v. Ciccone*, 824 F.3d 871, 876 (9th Cir. 2016).  *Ciccone* affirmed a

27    defense summary judgment based on the *de minimis* rule—which applies to all copyright
infringement actions—because the copying asserted was "trivial" and "as a matter of law, a

28

-14-    Case No. 5:14-cv-5344-BLF
1129998.01

1    If you find that Arista's copying of protected matter was more than trivial, you must still

2  determine whether that copying amounts to infringement of Cisco's works.  To prove

3  infringement, Cisco must prove that Arista's work is virtually identical to one or more of Cisco's

4  copyrighted works, considering the works as a whole but ignoring the unprotectable elements of

5  the works.[22]  If you find that the works as a whole are virtually identical, then you may find that

6  Arista infringed Cisco's copyrights, subject to Arista's affirmative defenses of fair use, merger,

7  *scenes a faire*, copyright misuse, and abandonment.[23]

8    **Arista's Position on Instructions 39 and 41:**

9    Arista's proposed Instructions correctly explain Ninth Circuit law: (1) they instruct the jury
   to exclude from its consideration the unprotectable elements; (2) they define the relevant works for
10  the jury to consider; (3) they instruct the jury on the *de minimis* rule; and (4) they instruct the jury
   to compare the works as a whole under the appropriate test (virtual identity, for works receiving
11  thin protection) to evaluate infringement.

12    **The jury must be instructed in full about the unprotectable elements of Cisco's works**
13  **(as determined by analytic dissection).** Arista's proposed Instruction 39 is based on the Court's
   analogous preliminary instruction (Instruction No. 12), with placeholders to add additional
14  unprotectable elements identified by the Court based on the evidence at trial. Given the risk of

15  ───────────────

16  general audience would not recognize the brief snippet [of copied material] as originating from
   [the plaintiff's song]."
17    [22] *Antonick v. Elec. Arts, Inc.*, __ F.3d __, No. 14-15298, 2016 WL 6872072, at *5 (9th Cir.
   Nov. 22, 2016) ("If the range of possible expression is narrow, the copyrighted work is entitled to
18  thin protection, and a plaintiff must show virtual identity between the copyrighted work and the
   allegedly infringing work"); *Mattel, Inc. v. MGA Entm't, Inc.*, 616 F.3d 904, 913–14 (9th Cir.
19  2010), *as amended on denial of reh'g* (Oct. 21, 2010) ("If there's only a narrow range of
   expression (for example, there are only so many ways to paint a red bouncy ball on blank canvas),
20  then copyright protection is 'thin' and a work must be 'virtually identical' to infringe"; intrinsic
   tests asks "whether an ordinary reasonable observer would consider the copyrighted and
21  challenged works substantially similar (or virtually identical)" as appropriate); *Ets-Hokin v. Skyy
   Spirits, Inc.*, 323 F.3d 763, 766 (9th Cir. 2003); *Satava v. Lowry*, 323 F.3d 805, 812 (9th Cir.
22  2003) ("Satava possesses a thin copyright that protects against only virtually identical copying.");
   *Apple Computer, Inc. v. Microsoft Corp.*, 35 F.3d 1435, 1439 (9th Cir. 1994) ("When the range of
23  protectable and unauthorized expression is narrow, the appropriate standard for illicit copying is
   virtual identity."); *Diamond Foods, Inc. v. Hottrix, LLC*, No. 14-CV-03162-BLF, 2016 WL
24  3880797, at *8 (N.D. Cal. July 18, 2016) ("If, on the other hand, the range of possible expression
   is narrow, the protection is  'thin' and a work must be 'virtually identical' to infringe.") (internal
25  quotation marks omitted); 4-13 Nimmer on Copyright § 13.03[A][4].
26    [23] *Mattel, Inc. v. MGA Entm't, Inc.*, 616 F.3d 904, 913 (9th Cir. 2010), *as amended on denial
27  of reh'g* (Oct. 21, 2010) (post-verdict decision discussing jury's task following dissection).

28

prejudice from inflammatory allegations of copying, the jury must be instructed on these unprotectable elements in full.  *See Harper House, Inc. v. Thomas Nelson, Inc.*, 889 F.2d 197, 207–08 (9th Cir. 1989) (ordering new trial where instructions "did not adequately distinguish between protectable and unprotectable material" because of "the negative connotations to 'copying,'" and the "obvious risk of an improper verdict for plaintiffs"); *Apple Computer, Inc. v. Microsoft Corp.*, 35 F.3d 1435, 1446 (9th Cir. 1994) (plaintiff "may place no reliance upon any similarity in expression resulting from unprotectable elements").  The need for this instruction is increased in light of Cisco's repeated references during trial to unprotectable aspects of its user interfaces (such as the choice to use a CLI instead of other types of interfaces).

Cisco's instruction ignores the Court's previous Instruction No. 12 on this exact issue, and re-proposes the same improper approach it initially proposed for the preliminary instructions. Cisco proposes that the Court instruct the jury that Cisco's asserted CLI elements and manuals *are protectable*—essentially directing a verdict for Cisco on authorship, Section 102(b) issues, and originality/creativity.  This would be improper.

**The works as a whole (disregarding unprotected elements) must be compared to evaluate infringement, and this step is *distinct* from the requirement that the plaintiff prove factual copying.**  The intrinsic test, in which the works as a whole are compared, has long been held by the Ninth Circuit to be *separate* from the predicate question of factual copying. *Sid & Marty Krofft Television v. McDonald's Corp.*, 562 F.2d 1157, 1165 (9th Cir. 1977) (Ninth Circuit's "intrinsic" test is the same as second step adopted by the Second Circuit in *Arnstein v. Porter,* which applies only after a finding of factual copying); *Arnstein v. Porter*, 154 F.2d 464, 468 (2d Cir. 1946) ("If copying is established, then only does there arise the second issue, that of illicit copying (unlawful appropriation).").

Recent cases confirm this distinction. *Mattel v. MGA* requires that the virtual identity or substantial similarity test be used to assess infringement—in other words, the illicit or permissible nature of any factual copying—by comparing the asserted and accused works *as a whole*, disregarding their unprotectable elements. *Mattel, Inc. v. MGA Entm't, Inc.*, 616 F.3d 904, 913 (9th Cir. 2010), *as amended on denial of reh'g* (Oct. 21, 2010).  "The standard for infringement— substantially similar or virtually identical—determined at the 'extrinsic' stage is applied at the 'intrinsic' stage." *Id.* at 914.  And the intrinsic stage requires a comparison of the works *as a whole.  See, e.g., Apple Computer, Inc. v. Microsoft Corp.*, 35 F.3d 1435, 1443 (9th Cir. 1994) ("Depending on the degree of protection, the court must set the appropriate standard for a subjective comparison of the works to determine whether, *as a whole*, they are sufficiently similar to support a finding of illicit copying.") (emphasis added).  The Ninth Circuit confirmed this position two weeks ago, explaining that "[i]f the range of possible expression is narrow, the copyrighted work is entitled to thin protection, and a plaintiff must show virtual identity between the copyrighted work and the allegedly infringing work."  *Antonick v. Elec. Arts, Inc.*, __ F.3d __, No. 14-15298, 2016 WL 6872072, at *5 (9th Cir. Nov. 22, 2016) (affirming defense JMOL after infringement verdict where complete works were not in evidence; citing *Mattel*, 616 F.3d at 913– 14).  "There can be no proof of 'substantial similarity' and thus of copyright infringement unless [plaintiff's] works are juxtaposed with [defendant's] and their contents compared." *Antonick* at *3 (quoting *Seiler v. Lucasfilm, Ltd.*, 808 F.2d 1316, 1319 (9th Cir. 1987)).  Numerous other cases confirm and apply this rule.  *See, e.g., Apple*, 35 F.3d at 1446 ("Under *Harper House* and *Frybarger*, there can be no infringement unless *the works* are virtually identical.") (emphasis added); *Newton v. Diamond*, 388 F.3d 1189, 1195 (9th Cir. 2004) ("This focus on the sample's relation to the plaintiff's work *as a whole* embodies the fundamental question in any infringement action") (emphasis added).

Cisco itself previously acknowledged this law.  Cisco predicted that the Court would instruct the jury that "[t]o find actionable copying, you the ladies and gentlemen of the jury will have to decide whether Arista copied protect[able] elements of our CLI *in such a way to satisfy the extrinsic and intrinsic similarity test and whether the look and feel of their CLI is the same as our CLI*."  ECF 437 (MSJ Hrg. Tr.) at 14:19–23 (emphasis added).  Cisco now largely relies on select quotes from unpublished cases and quotes focused on the extrinsic test or factual copying, and ignores the many cases explaining the intrinsic test for illicit copying. *See* Cisco Proposed Instruction 39 at n.1.

Ninth Circuit law requires that the virtual identity or substantial similarity test must be used to evaluate infringement even where factual copying is undisputed—unless the undisputed copying is of the **entire** copyrighted work.  The Ninth Circuit re-confirmed this rule just last year in *DC Comics v. Towle*, 802 F.3d 1012 (9th Cir. 2015).  *DC Comics* explained that the substantial similarity/virtual identity test for infringement ordinarily applies in all copyright cases except those where copying of the *entire work* is admitted.  *Id.* at 1026 ("While we ordinarily apply a two-part 'substantial similarity' test to determine whether a plaintiff has established copying of constituent elements of the work that are original, we need not do so where, as here, 'the copying of the substance of the entire work' is admitted." (internal citation omitted)). *See also Narell v. Freeman*, 872 F.2d 907, 910 (9th Cir.1989) (cited in *DC Comics*); *Mattel*, 616 F.3d at 913 (applying test even though access not disputed; no question the doll designer worked with the copyright owner to develop the sculpt and sketches that were then adapted); *Apple Computer, Inc. v. Microsoft Corp.*, 35 F.3d 1435, 1442 (9th Cir. 1994) (access and copying undisputed, as defendant had a license to copy many features).  There is no such admission here.

**Works with a narrow range of potential expression receive "thin" copyright protection and infringement can be found only under the "virtual identity" standard.** Under Ninth Circuit law, "[i]f there's only a narrow range of expression (for example, there are only so many ways to paint a red bouncy ball on blank canvas), then copyright protection is 'thin' and a work must be 'virtually identical' to infringe." *Mattel, Inc. v. MGA Entm't, Inc.*, 616 F.3d 904, 913–14 (9th Cir. 2010), *as amended on denial of reh'g* (Oct. 21, 2010); *see also Ets-Hokin v. Skyy Spirits, Inc.*, 323 F.3d 763, 766 (9th Cir. 2003); *Satava v. Lowry*, 323 F.3d 805, 812 (9th Cir. 2003) ("Satava possesses a thin copyright that protects against only virtually identical copying."). The same test applies in the computer context as in any other.  *See Apple Computer, Inc. v. Microsoft Corp.*, 35 F.3d 1435, 1439 (9th Cir. 1994) ("When the range of protectable and unauthorized expression is narrow, the appropriate standard for illicit copying is virtual identity."); *Data East USA*, 862 F.2d at 209 (protection only against "identical copying" for computer karate game, given "constraints inherent in the sport"); *Diamond Foods, Inc. v. Hottrix, LLC*, No. 14-CV-03162-BLF, 2016 WL 3880797, at *8 (N.D. Cal. July 18, 2016) (popcorn app; "If, on the other hand, the range of possible expression is narrow, the protection is  'thin' and a work must be 'virtually identical' to infringe."); *Mattel,* 616 F.3d at 914–15 ("thin" protection for fashion doll sculpt because certain features are part of the basic idea for fashion dolls); *L.A. Printex Indus., Inc. v. Aeropostale, Inc.*, 696 F.3d 841 (9th Cir. 2012) (wide range of expression for textile design).

The Ninth Circuit's "thin" protection rule is based on the long-standing policy principle that fictional and artistic works get stronger copyright protection than factual or functional works that the law "recognizes a greater need to disseminate." *Harper & Row, Publishers, Inc. v. Nation Enters.*, 471 U.S. 539, 563 (1985).  This distinction applies in all copyright contexts, including for nominally literary (*i.e.* text-based) works.  *See id.* (discussing policy in literary context); *Feist Publications, Inc. v. Rural Tel. Service Co.*, 499 U.S. 340 (1991) (phonebooks). The Ninth Circuit addressed the policy reasons for this at length in *Landsberg v. Scrabble Crossword Game Players,*

*Inc.*, 736 F.2d 485 (9th Cir. 1984), which found less protection available to the author of a Scrabble strategy book because of the functional limits on potential expression in explaining Scrabble play. *Id.* at 488. Thin protection and the virtual identity standard exist because "copyright law considers factual works to be ***fundamentally different*** from more artistic works." *Cooling Sys. & Flexibles, Inc. v. Stuart Radiator, Inc.*, 777 F.2d 485, 491 (9th Cir. 1985), *overruling on other grounds recognized by Apple*, 35 F.3d at 1448 (catalogs; discussing *Landsberg*) (emphasis added). The policy need for this rule is especially strong where, as in this case, the works are so functional that 17 U.S.C. § 102(b) at least arguably should bar any copyright protection at all (as Arista contends it should). The evidence at trial has confirmed that the available range of expression here is extremely narrow because of the technical, functional nature of the works and the practical constraints inherent in them and in the industry.

  **The *de minimis* rule does not displace the rest of the infringement analysis explained above, as Cisco claims, nor has Arista waived this issue.** Cisco cites no authority that in fact supports its position on the *de minimis* rule. *VMG Salsoul, LLC v. Ciccone*, 824 F.3d 871, 876 (9th Cir. 2016), explains the Ninth Circuit's actual rule, which Cisco's proposed instruction does not accurately reflect. Arista previously proposed a *de minimis* instruction as part of an earlier proposed version of Instruction 39, in a good faith effort to provide simpler, consolidated instructions addressing multiple issues together, and has not waived this issue.

1129998.01

1

Dated:  December 7, 2016

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Respectfully submitted,

/s/ John M. Neukom

Kathleen Sullivan (SBN 242261)
kathleensullivan@quinnemanuel.com
QUINN EMANUEL URQUHART &
SULLIVAN LLP
51 Madison Avenue, 22nd Floor
New York, NY 10010
Telephone: (212) 849-7000
Facsimile: (212) 849-7100

Sean S. Pak (SBN 219032)
seanpak@quinnemanuel.com
Amy H. Candido (SBN 237829)
amycandido@quinnemanuel.com
John M. Neukom (SBN 275887)
johnneukom@quinnemanuel.com.
QUINN EMANUEL URQUHART &
SULLIVAN LLP
50 California Street, 22nd Floor
San Francisco, CA 94111
Telephone: (415) 875-6600
Facsimile: (415) 875-6700

Steven Cherny (*admitted pro hac vice*)
steven.cherny@kirkland.com
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900

Adam R. Alper (SBN 196834)
adam.alper@kirkland.com
KIRKLAND & ELLIS LLP
555 California Street
San Francisco, California  94104
Telephone: (415) 439-1400
Facsimile: (415) 439-1500

Michael W. De Vries (SBN 211001)
michael.devries@kirkland.com
KIRKLAND & ELLIS LLP
333 South Hope Street
Los Angeles, California 90071
Telephone: (213) 680-8400
Facsimile: (213) 680-8500

*Attorneys for Plaintiff Cisco Systems, Inc.*

Respectfully submitted,

DATED:  December 7, 2016                    */s/  Brian L. Ferrall*

KEKER & VAN NEST LLP
ROBERT A. VAN NEST - # 84065
rvannest@kvn.com
BRIAN L. FERRALL - # 160847
bferrall@kvn.com
DAVID J. SILBERT - # 173128
dsilbert@kvn.com
MICHAEL S. KWUN - # 198945
mkwun@kvn.com
633 Battery Street
San Francisco, CA 94111-1809
Telephone:      415 391 5400
Facsimile:      415 397 7188

*Attorneys for Defendant Arista Networks, Inc.*

## ATTORNEY ATTESTATION

I hereby attest, pursuant to Local Rule 5-1(i)(3), that the concurrence in the filing of this document has been obtained from the signatory indicated by the "conformed" signature (/s/) of John M. Neukom within this e-filed document.

/s/      *Brian L. Ferrall*