# ATTACHMENT 2

KEKER & VAN NEST LLP
ROBERT A. VAN NEST - # 84065
BRIAN L. FERRALL - # 160847
DAVID SILBERT - # 173128
MICHAEL S. KWUN - #198945
633 Battery Street
San Francisco, CA 94111-1809
Telephone:    (415) 391-5400
Email:  rvannest@kvn.com;
bferrall@kvn.com; dsilbert@kvn.com;
mkwun@kvn.com

SUSAN CREIGHTON, SBN 135528
SCOTT A. SHER, SBN 190053
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
1700 K Street NW, Fifth Floor
Washington, D.C., 20006-3817
Telephone:  (202) 973-8800
Email:  screighton@wsgr.com;
ssher@wsgr.com


JONATHAN M. JACOBSON, NY SBN 1350495
CHUL PAK (*pro hac vice*)
DAVID H. REICHENBERG (*pro hac vice*)
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
1301 Avenue Of The Americas, 40th Floor
New York, NY 10019-6022
Telephone:  (212) 999-5800
Email:  jjacobson@wsgr.com; cpak@wsgr.com;
dreichenberg@wsgr.com

Attorneys for Defendant ARISTA NETWORKS, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| CISCO SYSTEMS, INC.,<br><br>Plaintiff,<br><br>v.<br><br>ARISTA NETWORKS, INC.,<br><br>Defendant. | Case No. 5:14-cv-05344-BLF (NC)<br><br>**ARISTA'S OPENING BRIEF RE ANALYTIC DISSECTION**<br><br>Dept.:       Courtroom 3 - 5th Floor<br>Judge:      Hon. Beth Labson Freeman<br><br>Date Filed:  December 5, 2014<br><br>Trial Date:  November 21, 2016 |

# TABLE OF CONTENTS

**Page**

I.     **INTRODUCTION**...........................................................................................1

II.    ARGUMENT ..................................................................................................2

    A.    Use of pre-existing industry terminology is not protectable.....................2

    B.    Individual commands are unprotectable under the words and short phrases doctrine. ......................................................................................................5

    C.    Command terms and conventional command syntax that Cisco copied from other sources are not protectable...........................................................7

    D.    No copyright protection is available for any purported selection or arrangement of commands that is not grounded in Cisco's actual works or that Cisco did not disclose in discovery........................................................8

    E.    Several aspects of the asserted hierarchies are unprotectable..................9

        1.    Hierarchies that were created for litigation are unprotectable. ...................9

        2.    The idea of grouping commands by their initial words is not protectable................................................................................................10

        3.    The asserted hierarchies are unprotectable because they contain no expression separate from their function.....................................................10

    F.    Cisco's purported selection and arrangement of unprotectable modes and prompts is unprotectable. ......................................................................11

    G.    The asserted command responses are unprotectable for the same reasons as the commands. .......................................................................................12

    H.    Cisco's asserted help descriptions are unprotectable..............................12

    I.    Other basic CLI ideas and functions should also be identified for the jury as unprotectable........................................................................................14

    J.    Cisco's asserted snippets from manuals are unprotectable for the same reasons and to the same extent as the CLI elements that they describe.................14

    K.    Cisco is entitled only to "thin" protection and a virtual identity standard for infringement..........................................................................................15

    L.    Some disputed issues involve extensive and disputed evidence that must be resolved after a live hearing and cross-examination...............................16

ARISTA'S BRIEF RE ANALYTIC DISSECTION OF ASSERTED WORKS
Case No. 5:14-cv-05344-BLF (NC)

1123216.06

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Apple Computer, Inc. v. Microsoft Corp.*,
  35 F.3d 1435 (9th Cir. 1994) ........................................................................ 2, 10, 15, 16, 17

*Diamond Foods, Inc. v. Hottrix, LLC*,
  No. 14-cv-03162-BLF, 2016 WL 3880797 (N.D. Cal. July 18, 2016)................................... 16

*Ets-Hokin v. Skyy Spirits, Inc.*,
  323 F.3d 763 (9th Cir. 2003) ................................................................................................... 15

*Feist Publications, Inc. v. Rural Tel. Serv. Co.*,
  499 U.S. 340 (1991)........................................................................................... 3, 4, 5, 10, 15

*Greene v. Ablon*,
  914 F. Supp. 2d 110 (D. Mass. 2012), aff'd, 794 F.3d 133 (1st Cir. 2015).............................. 6

*Harper & Row, Publishers, Inc. v. Nation Enters.*,
  471 U.S. 539 (1985)................................................................................................................. 15

*Hutchins v. Zoll Med. Corp.*,
  492 F.3d 1377 (Fed. Cir. 2007).................................................................................................. 6

*L.A. Printex Indus., Inc. v. Aeropostale, Inc.*,
  696 F.3d 841 (9th Cir. 2012) .................................................................................................... 16

*Mattel, Inc. v. MGA Entm't, Inc.*,
  616 F.3d 904 (9th Cir. 2010) ........................................................................ 2, 10, 15, 16, 17

*Matthew Bender & Co., Inc. v. West Publ'g Co.*,
  158 F.3d 674 (2d Cir. 1998)........................................................................................................ 4

*Merchant Transaction Sys., Inc. v. Nelcola, Inc.*,
  No CV-02-1954-PHX-MHM, 2009 WL 723001 (D. Ariz. Mar. 18, 2009) ............................... 4

*Narell v. Freeman*,
  872 F.2d 907 (9th Cir. 1989) ..................................................................................................... 6

*O.P. Sols., Inc. v. Intellectual Prop. Network, Ltd.*,
  No. 96 CIV. 7952 (LAP), 1999 WL 47191 (S.D.N.Y. Feb. 2, 1999)......................................... 4

*Pelt v. CBS, Inc.*,
  No. CV-92-6532, 1993 WL 659605 (C.D. Cal. Oct. 25, 1993)................................................... 6

*Sadhu Singh Hamdad Trust v. Ajit Newspaper Advert., Mktg. & Commc'ns, Inc.*,
  503 F. Supp. 2d 577 (E.D.N.Y. 2007) ....................................................................................... 5

*Satava v. Lowry*,
  323 F.3d 805 (9th Cir. 2003) ..................................................................................................... 9

ii

1123216.06

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## TABLE OF AUTHORITIES
### (continued)

**Page(s)**

**Federal Statutes**

17 U.S.C § 102(a) ................................................................................................ 7, 9

17 U.S.C. § 102(b) .......................................................................................... *passim*

**Federal Rules**

FRCP 37(c) ..................................................................................................... 9, 13

**Federal Regulations**

37 C.F.R. § 202.1(a) ............................................................................................. 6

ARISTA'S BRIEF RE ANALYTIC DISSECTION OF ASSERTED WORKS
Case No. 5:14-cv-05344-BLF (NC)

## I.    INTRODUCTION

Arista submits this brief to identify the aspects of Cisco's asserted CLI elements that the Court should hold are unprotectable and filter out from the jury's infringement analysis.  Subject to reviewing any new declarations or evidence that Cisco submits, Arista believes that the Court can filter out the elements discussed herein now, without hearing live testimony.[1]

For example, the Court should instruct the jury that Cisco cannot claim copyright protection for its use of acronyms and terminology that it took from pre-existing standards or industry jargon.  Many of the asserted CLI commands implement functions defined in formal standards, such as setting a parameter defined by the OSPF protocol.  In almost every such case, Cisco used the acronyms and terminology from those standards to describe those functions.  Similarly, many of the asserted commands use everyday industry jargon that predated Cisco.  Just as it isn't creative or protectable to use the term "Golden Gate Bridge" to describe the span between San Francisco and Marin Counties, it isn't creative or protectable to use the term "OSPF" to refer to the OSPF protocol, or to use many other terms that Cisco took from preexisting sources.  Cisco may allege that the asserted CLI elements are protectable for *other* reasons, but its use of these preexisting industry terms must be carved out of any claim of protectable expression.

Similarly, the Court should instruct the jury that Cisco cannot claim individual protection for CLI commands, which are discrete, short phrases that are not protectable under copyright law.  Cisco has asserted throughout this case, and apparently intends to assert at trial, that *each* of the 506 asserted commands or command fragments is *individually* protectable—as opposed to alleging, e.g., that each asserted interface *as a whole* is a copyrightable compilation.  Copyright law prohibits that claim because short phrases, by themselves, are not eligible for copyright protection.  Again, Cisco may allege that the asserted CLI elements are protectable for other reasons, but the Court should instruct the jury that individual CLI commands are not themselves protectable.

---

[1] The Court also can and should define Cisco's asserted registered works now.  As the Court directed at the pretrial conference, Arista will submit a separate short brief on this issue on November 10.

Additional unprotectable elements that the Court can filter out now, without live testimony, are discussed below.  Given the nature of the dissection that the Court must perform and the areas of disputed evidence, Arista believes that other issues, including ones related to *scenes a faire* and industry constraints on Cisco's choices, cannot be resolved without live testimony and cross-examination of witnesses.

## II.    ARGUMENT

The Court's duty in analytic dissection is to identify elements of the asserted works that are **not** protectable, because "the party claiming infringement may place *no* reliance upon any similarity in expression resulting from unprotectable elements."  *Apple Computer, Inc. v. Microsoft Corp.*, 35 F.3d 1435, 1446 (9th Cir. 1994) (emphasis in original; citation and internal quotation marks omitted); *Mattel, Inc. v. MGA Entm't, Inc.*, 616 F.3d 904, 913–14 (9th Cir. 2010) (explaining dissection process).  Dissection is necessary to ensure that defendants cannot be found liable based on similarities in unprotected material, which is free for anyone to use.  But it leaves for the jury to resolve disputed factual issues about creativity and infringement, taking into account limiting doctrines like *scenes a faire*.  Thus, as the Court noted at the November 3, 2016 pretrial conference, both the Court and the jury will need to consider aspects of the originality and creativity of Cisco's asserted works to perform their respective roles.

### A.    Use of pre-existing industry terminology is not protectable.

The Court should identify for the jury as unprotectable all asserted aspects of the Cisco CLI that Cisco took from industry protocols and standards or industry jargon.  These terms are identified in Exhibit 1 to the accompanying Declaration of Ryan Wong (Black Amended Appendix K).[2]  Although these terms are well-known and ordinary in the networking world—and were so before Cisco used them in CLI commands—they are unfamiliar to the layperson.  Without clear instruction on this point, there is a high risk of prejudicial confusion, as jurors may believe that Cisco invented these standard networking terms (or that they are creative) simply

---

[2] To Arista's knowledge, Cisco does not dispute that it took the terms identified in Exhibit 1 from pre-existing sources.  Thus, the only question that the Court need decide now is the legal consequence of its having done so.  If Cisco raises a factual dispute as to a particular term, that dispute may be better resolved on a full record after live testimony and cross examination, but Arista expects that in most or all cases this will not be necessary.

because they appear unusual or unfamiliar to those outside the industry. *See* Ex. 1 (Black Am. App. K).[3]

Arista's expert John Black has explained (and Cisco has not disputed) that the vast majority of Cisco's command terms come directly from published industry standards or conventional industry terminology.[4] *See, e.g.,* Ex. 1 (Black Am. App. K) (standards-based and conventional terms in Cisco commands); Ex. 2 (Tr. Ex. 9044)) (standards-based terms); *id.* Ex. 3 (Tr. Ex. 9043) (common industry terms); Ex. 4 (Black App. A ) (commands from IETF standards); Ex. 5 (Black  App. B ) (commands from IEEE standards).  These formal standards and protocols define requirements that all Ethernet switches must meet, and establish terminology that the entire networking industry uses.  Just as a person ordering coffee must state the size and style that she wants (small, medium, or large; black or with cream), network engineers must invoke formal industry standards and invoke parameters defined in those standards.[5]

In the vast majority of asserted commands and command fragments, Cisco did so by adopting the acronyms and other terminology used in the standards themselves.  In other cases, Cisco used pre-existing industry jargon that predated Cisco.  Cisco did not coin these terms or use them in a creative way—it simply took preexisting terminology known throughout the industry and used it in its standard and conventional sense.  Like the phone numbers and addresses in *Feist Publications, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 362 (1991), Cisco's use of this conventional terminology is not original and is not protectable.  There is nothing creative or original about referring to a feature known throughout the industry by its recognized name, which

---

[3] Unless otherwise noted, citations to "Ex. ___" are to the Declaration of Ryan Wong.

[4] Dr. Black's complete reports, with all of their supporting materials, are already in the Court's record in this matter at ECF 379-33 (Opening Report), ECF 379-31(Rebuttal Report), and ECF 587-2 (Supplemental Report).  Because of the volume of these materials, Arista has re-submitted here only those appendices to the reports that are directly cited herein.  If desired, Arista can also provide the Court with an additional chambers copy of the complete previously-filed materials that support Dr. Black's analysis reflected in his reports.

[5] The industry standards at issue here are different from the de facto industry standard for the CLI itself that has been the subject of Cisco's Daubert and *in limine* motions.  Arista offers a few examples to illustrate the nature of these standards documents.  *See, e.g.,* Ex. 6 (RFC 791) (1981 standard defining "internet protocol" and abbreviation as "ip"); Ex. 7 (RFC 1883) (defining internet protocol version 6, abbreviated as "ipv6"); Ex. 8 (RFC 793) (1981 protocol defining the Transmission Control Protocol, abbreviated "TCP", for reliable communication in computer networks). Arista can submit additional IETF and IEEE standards documents if desired.

3

ARISTA'S BRIEF RE ANALYTIC DISSECTION OF ASSERTED WORKS
Case No. 5:14-cv-05344-BLF (NC)

someone else gave it.[6]

Cisco's own documents and witnesses confirm that Cisco deliberately used conventional and well-known terminology to formulate its commands. *See, e.g.,* Ex. 11 (Deposition Compilation) (compilation of deposition excerpts showing Cisco employees consulted standards when authoring commands); Ex. 12 (Kathail Dep. Excerpts) (Cisco wanted commands that are "self-explanatory" and based on "terminology you are using from the networking world"); Ex. 13 (Remaker Dep. Ex. 436) at 439 (Cisco document); Ex. 14 (CSI-CLI-00836643–652) at 646–647 ("When naming a command, pick names that would be familiar to people in the industry," such as "accepted industry acronym" or an industry's "universal parlance.").

Cisco's decision to name networking parameters and functions by their pre-existing, well-known names is no more original or creative than a legal publisher's choice to include standard elements like "names of the parties, the deciding court, and the dates of argument and decision" in reporting a legal decision. *See Matthew Bender & Co., Inc. v. West Publ'g Co.*, 158 F.3d 674, 683–84 (2d Cir. 1998). Although there were variations in how a publisher could choose to describe aspects of a case, the *Mathew Bender* court found that the required "creative spark" for copyright protection was absent because the selection of terms was purely "obvious, garden-variety, or routine" in its factual context. *Id.* at 682. Cisco's decision to use pre-existing industry terminology in its conventional sense is no more creative or original than the selections rejected in *Matthew Bender*, and the terms Cisco chose are equally unprotectable.

Likewise, in *Feist Publications, Inc. v. Rural Telephone Services Co.*, 499 U.S. 340 (1991), the Supreme Court held that names, addresses, and telephone numbers were unprotectable elements of a phone book, although it considered separately whether the plaintiff had "selected,

---

[6] Other courts have held that individual components in a user interface are typically ***not*** independently protectable, and that to the extent protection exists for interfaces, it will often attach only to a creative selection and arrangement of unprotectable elements, as a whole. *See, e.g., Merchant Transaction Sys., Inc. v. Nelcola, Inc.*, No CV-02-1954-PHX-MHM, 2009 WL 723001, at *7 (D. Ariz. Mar. 18, 2009) (pre-trial order performing analytic dissection of a computer program); *O.P. Sols., Inc. v. Intellectual Prop. Network, Ltd.*, No. 96 CIV. 7952 (LAP), 1999 WL 47191, at *11 (S.D.N.Y. Feb. 2, 1999) ("In most cases the constituent elements of the user interface or screen display are not independently protectable"; defining unprotectable elements of computer program; collecting cases); *see also* Dkt. 329 (Arista MSJ) at 13-14 (cases rejecting protection for command menus, etc.).

coordinated, or arranged" those unprotectable elements in an original way. *Id.* at 362.   This Court should apply that same framework here.  Specifically, the Court should instruct the jury that Cisco cannot claim copyright protection for its use of pre-existing industry terminology (such as acronyms and names of protocols and parameters taken from published industry standards), but it may assert originality in its selection, coordination, or arrangement of those unprotectable elements into larger arrangements (subject, of course, to the Court's other dissection rulings and Cisco's disclosures in discovery, and to proof at trial).  The Court need not resolve the potential creativity of multi-word combinations of command terms here, but can and should decide now that Cisco's use of acronyms and terminology taken from industry standards or preexisting industry jargon is not creative or protectable and must be excluded from any claim of protectability.  *See Sadhu Singh Hamdad Trust v. Ajit Newspaper Advert., Mktg. & Commc'ns, Inc.*, 503 F. Supp. 2d 577, 588 (E.D.N.Y. 2007) (finding no creativity in use of the word "Ajit," a name commonly used in India, as part of a newspaper logo, although refusing to grant summary judgment against the logo as a whole).

### B.    Individual commands are unprotectable under the words and short phrases doctrine.

Cisco is not entitled to copyright protection for any of its individual multi-word commands under the words and short phrases doctrine—but at a minimum, the Court should instruct the jury that the hundreds of individual asserted commands of four keywords or fewer are unprotectable.  These commands are short functional descriptors, often referred to as logical "knobs," used to invoke certain technical features of a device.  *See infra* Part II.L (discussing evidence). Although Cisco may attempt to prove that its commands are protected as part of a larger arrangement, the individual commands are short phrases that do not qualify for separate protection under the law.[7]  *See e.g.*, ECF 552-1 at 3–33 (Cisco's  asserted commands); Ex. 22

---

[7] Cisco claims as protectable hundreds of commands consisting of two or three command keywords, and hundreds more that are only four keywords long.  Although some of the asserted keywords are hyphenated, each names a single discrete feature or function being controlled, using its conventional name in the industry, and should be treated as a single element. Although hyphenated, each keyword is logically a single unit in the same way that a proper name like "San Jose" would be.

1    (Black Rebuttal Rpt.) ¶¶ 123–24 (188 commands are only two words; 208 are three words; 420

2    are three words or fewer); Ex. 1 (Black Am. Ex. K); Ex. 22 (Black Rebuttal Rpt.) ¶¶ 668-70.

3            Words and short phrases, including titles, slogans, and other types of short ordinary

4    phrases, are not protectable under the copyright regulations and long-standing precedent.  *See* 37

5    C.F.R. § 202.1(a).  For example, in *CMM Cable Rep, Inc. v. Ocean Coast Properties, Inc.*, the

6    First Circuit discussed this rule at length and found no protection for a series of lengthy

7    catchphrases used in radio advertising, including phrases like "clock in and make $50 an hour."

8    97 F.3d 1504, 1519–20 (1st Cir. 1996).  The court explained that it is "axiomatic that copyright

9    law denies protection to 'fragmentary words and phrases' and to 'forms of expression dictated

10   solely at functional considerations'" because such materials lack the creativity to warrant

11   copyright protection.  *Id.* at 1519.  Likewise, in *Alberto-Culver Co. v. Andrea Dumon, Inc.*, the

12   Seventh Circuit found no protection for the phrase "the most personal sort of deodorant."  466

13   F.2d 705, 711 (7th Cir. 1972).

14           The Ninth Circuit applied the same rule in *Narell v. Freeman*, 872 F.2d 907, 911 (9th Cir.

15   1989), to bar protection for various phrases that a fiction writer had allegedly copied from a non-

16   fiction history of Jewish migration.  Because the phrases at issue were primarily factual (like the

17   functional commands here), and "ordinary" in their factual context, the Court found that they

18   were not protectable under the words and short phrases doctrine—even though some were

19   lengthy.  For example, *Narell* barred protection for phrases like "rekindle old memories" and

20   "hordes of gold seekers," as well as lengthier phrases including "shanties and corrugated [metal]

21   shacks . . . were crowded together," "beach was strewn with boxes, bales," and "river wound its

22   way between muddy banks crawling with alligators."  *Id.* at 911.  The court found that all of these

23   phrases were too "ordinary" and contained too little expression to receive protection, and that by

24   copying them the defendant had simply copied "unprotected factual details."  *Id.* at 911–12; *see*

25   *also Hutchins v. Zoll Med. Corp.*, 492 F.3d 1377, 1384–85 (Fed. Cir. 2007) (no protection for 3–5

26   word functional phrases from a set of CPR instructions); *Greene v. Ablon*, 914 F. Supp. 2d 110,

27   117 (D. Mass. 2012), aff'd, 794 F.3d 133 (1st Cir. 2015) (applying rule to find no protection for

28   lengthy "fragmentary phrases" of more than ten words); *Pelt v. CBS, Inc.*, No. CV-92-6532, 1993

1   WL 659605, at *3 (C.D. Cal. Oct. 25, 1993) ("Listen Up, It's More Than Talk, It's Feeling").

2   Cisco's commands are even shorter and no less ordinary.[8]

### C.    Command terms and conventional command syntax that Cisco copied from other sources are not protectable.

Originality is the touchstone for copyright protection: Cisco cannot claim protection for anything taken from others' pre-existing works.  17 U.S.C § 102(a).  Here, that includes a number of command words and basic command syntax that were taken by Cisco from pre-existing command languages and so cannot be protected by Cisco's copyright.[9]  The original Cisco OS, which was developed at Stanford, borrowed conventional terminology and command formatting from operating systems running at Stanford itself, such as the "TOPS-20" OS that Mr. Lougheed worked with at Stanford.  Ex. 20 (Black Rpt.) ¶¶ 548–82.  The asserted command terms taken from pre-Cisco systems include "banner", "boot", "clock", "clear", "enable", "erase", "load", "set", "show" and "terminal." *See, e.g.,* Ex. 19 (Tr. Ex. 9045) (charting legacy command terms in asserted commands); Ex. 20 (Black Rpt. ) ¶ 555 ("clear"); *id.* ¶¶ 559–60 (prior use of "show" and "set" commands); *id.* ¶ 565 ("show" and "clear" commands). Cisco's own Dr. Almeroth concedes that the terms "show," "clear," "help," "ip," "no," "arp," and "bgp" all "existed before Cisco." Ex. 21 (Almeroth Rpt.) ¶ 261.

Cisco used these unoriginal command words with pre-Cisco command syntax.  Thus, for example, Mr. Lougheed used "show" followed by the relevant attribute to call up status information about the router, just as several legacy products did.  *Id.* ¶¶ 559–67, 571, 574, 581; *see also* Ex. 30 (Lougheed 4/4/16 Dep. Excerpts) at 259–60; Ex. 20 (Black Rpt.) ¶¶ 576–78 (copying of modes and similar language and structure); *Id.* ¶¶ 548–82; *see also* Ex. 42 (Lougheed 11/20/15 Dep. Excerpts) at 175.  Cisco has asserted here numerous commands with syntax in the form "[verb] [object or entity] [additional parameters]," including primarily the numerous

---

[8] Although Cisco will likely claim that *Oracle America, Inc. v. Google Inc.* prohibits the Court from applying the words and short phrases rule to the individual commands here, it does not.  *See* 750 F.3d 1339 (Fed. Cir. 2014).  The Federal Circuit's *Oracle* decision addressed 7000 lines of "declaring code" asserted as a whole, not "individual lines of code," and Oracle "[wa]s not seeking copyright protection for a specific short phrase."  *Id.* at 1363.  Because Arista is not seeking to apply the rule to Cisco's overall selection of CLI commands, and Cisco *is* claiming protection for its individual commands, *Oracle* does not apply.

ARISTA'S BRIEF RE ANALYTIC DISSECTION OF ASSERTED WORKS
Case No. 5:14-cv-05344-BLF (NC)

1123216.06

1  commands that begin with "show" and "clear." *See, e.g.,* ECF 552-1 at 4, 9-11 (IOS commands).

2  This syntax is unprotectable because it was undisputably used in pre-Cisco command languages

3  that Cisco copied. *See* Ex. 20 (Black Rpt.) ¶ 545 (aspects of syntax copied from pre-Cisco CLIs);

4  *id.* ¶ 561 (commands with syntax [show] [object] [parameters]); *id.* ¶¶ 564–567 (pre-Cisco

5  DECnet commands with syntax [command] [entity] [parameter/options]); *id.* ¶ 568–70 (Cisco

6  copying of pre-Cisco syntax); Ex. 15 (Li Dep. Excerpts) at 154, 145–46 (functionality and syntax

7  copied from TOPS-20). The jury should be instructed that these unoriginal command words and

8  command syntax are unprotectable.[10]

9         **D.**       **No copyright protection is available for any purported selection or**

10                 **arrangement of commands that is not grounded in Cisco's actual works or that Cisco did not disclose in discovery.**

11        The Court has made clear that Cisco cannot assert as its copyrighted works a compilation

12  of CLI elements assembled by Cisco lawyers and identified as the "Cisco CLI" purely for this

13  litigation. MSJ Order (ECF 482) at 5-6. For the same reasons (and however Cisco's works are

14  defined), Cisco cannot claim as protectable expression any selection or arrangement of CLI

15  commands that was never "authored" by Cisco in the form asserted here, and that was assembled

16  only by Cisco's lawyers for this litigation. Accordingly, the Court should find no protection in

17  Cisco's asserted selection and arrangement of the CLI commands because it was never published

18  as such until this litigation.[11] On the contrary, the sets of commands asserted here are taken from

19  multiple asserted works and comprise only a tiny fraction of each such work—indeed, they

20  comprise only a small fraction of the total commands that each such work recognizes. For

21  example, IOS alone—one of four distinct operating systems asserted here—contains at least

22  16,000 documented CLI commands by Cisco's own count. *See, e.g.,* Ex. 20 (Black Rpt.) ¶¶ 692–

23  693. Using a count more equivalent to the way in which Cisco has defined its "commands" for

24  purposes of this case, the count is an order of magnitude higher. *Id.* (450,000 distinct IOS

---

25

26  [10] The use of this syntax is also an unprotectable idea or method, and a basic feature of English grammar. 17 U.S.C. § 102(b). In a case involving a novel it might or might not make sense to

27  dissect a work at this granular a level. It is necessary here, however, because Cisco is attempting to claim separate and individual protectability for such fragmentary and trivial parts of its works.

28  [11] Indeed, Cisco did not describe or register any "compilation" claim when registering its asserted works with the Copyright Office. See SAC (ECF 64) Exs. 3-28 (registrations).

commands using Cisco-equivalent count).  Also, Cisco has never identified any "creative spark" in the selection itself, as needed to support copyright protection in a selection of unprotectable elements.  *Satava v. Lowry*, 323 F.3d 805, 811 (9th Cir. 2003).  Cisco also has no evidence that the specific selections/arrangements of commands asserted here were authored and "fixed in any tangible medium of expression" before their assertion in this litigation.  *See* 17 U.S.C. § 102(a); Ex. 22 (Black Rebuttal Rpt. ) ¶ 124 (asserted set of 508 commands does not appear in any registration, manual, or source code).

The fact that Cisco's claims about its commands have shifted throughout the case also confirms that the "arrangements" asserted here are mere creatures of litigation. Cisco initially asserted 509 commands, both individually and collectively—ignoring that these were cherry-picked from upwards of a dozen versions of each of four different operating systems.  Although Cisco now has segregated the remaining commands into the different operating systems, it still does not account for the fact that its registered works include multiple different versions with subsets of the asserted commands.  ECF 552-1 at 34.  None of these "arrangements" appear anywhere in an asserted work as an "arrangement."  Nor has Cisco ever disclosed a published "arrangement" of commands  in response to discovery requests asking for identification of all similarities that formed the basis for the infringement claims.  *See* Ex. 40 (Cisco Discovery Responses (Rog 2)).  Cisco should be barred from asserting these new operating-system-specific compilations at trial, because they were not disclosed in discovery.  FRCP 37(c).

**E.    Several aspects of the asserted hierarchies are unprotectable.**

Cisco's asserted hierarchies are unprotectable to the extent they include unprotectable commands or portions of commands.  The hierarchies also suffer additional, separate defects.

**1.    Hierarchies that were created for litigation are unprotectable.**

As with its broader "arrangements" of commands, Cisco has no evidence that its asserted hierarchies are real parts of its registered works, rather than created purely for this litigation.  In fact, the hierarchies asserted are drawn from across multiple versions of the operating systems. *See* Ex. 22 (Black Rebuttal Rpt.) ¶¶ 42, 45, 47–48 (hierarchies  drawn from multiple operating systems), 99–102.  And the asserted hierarchies are also incomplete selections of the actual

9

hierarchies in Cisco's works.  For example, Cisco asserts a "hierarchy" of 7 "bgp" commands that it claims Arista copied from IOS—but IOS actually contains at least 59 "bgp" commands.  Compare Ex. 64 (Almeroth Rpt. Ex. Copying-5) (bgp hierarchy) to Ex. 65 (Tr. Ex.  7390) (Cisco manual excerpt listing bgp commands). Cisco's actual "show" and "clear" command hierarchies also include many more commands than Cisco has asserted here.  Compare Ex. 64 (Almeroth Rpt. Ex. Copying-5) (show hierarchy) to Ex. 66 (Tr. Ex.  5035) (Cisco manual excerpt listing "show" commands); Ex. 64 Almeroth Rpt. Ex. Copying-5 (clear hierarchy) to Ex. 66 (Tr. Ex. 5035) (Cisco manual excerpt listing "clear" commands).  The Court should find that Cisco's cherry-picked selections from its actual sets or "hierarchies" of commands are unprotectable.

### 2.    The idea of grouping commands by their initial words is not protectable.

The mere idea of creating a command "hierarchy" by grouping CLI commands by their common initial words is not protectable under Section 102(b), as Cisco has conceded. *See* 17 U.S.C. § 102(b); Cisco MSJ Opp. (ECF 372) at 14; Ex. 20 (Black Rpt.) ¶¶ 633–35.  The Court should instruct the jury that this idea is unprotectable, to avoid jury confusion.

### 3.    The asserted hierarchies are unprotectable because they contain no expression separate from their function.

Cisco's asserted hierarchies contain no creative expression that is separate from the creation of the commands themselves, or the idea of organizing commands by their first words.[12] *See, e.g.,* Ex. 22 (Black Rebuttal Rpt.) ¶ 60 & n.17, ¶ 78 (no "creative" or "aesthetic" expression in hierarchies); 17 U.S.C. § 102(b); *Apple*, 35 F.3d at 1444; *Mattel*, 616 F.3d at 913.  Assembling the hierarchies asserted here was no more creative than listing names in a phone book in alphabetical order: once Cisco chose to use the command "show" to display information, there is no creativity in using that same command to "show" any number of different technical details or parameters, or in grouping such commands together.  *See Feist*, 499 U.S. at 363 (alphabetical ordering unprotectable).  The same is true for organizing commands by the protocol they relate to (such as the "ip" and "ipv6" protocols), and beginning all such commands with the same descriptive term ("ip" or "ipv6").  Cisco's asserted hierarchies are also simply a basic functional

---

[12] The commands themselves are not protectable for the reasons stated in Parts II.A–D above.

1123216.06

1    element of the interfaces that are used throughout the industry. *See e.g.,* Ex. 20 (Black Rpt.) ¶¶

2    105-106 (use of command hierarchies in CLIs); *id.* ¶¶ 682, 684 (functional, not expressive); *id.* ¶¶

3    183–90, 529–35, 581 & Exs. 23-26 (Black Apps. D–G) (industry use of hierarchies); Ex. 22

4    (Black Rebuttal Rpt.) ¶¶ 57–60 (functional nature; rebuttal of Almeroth opinions); *id.* ¶¶ 73–74

5    (legacy CLI features including hierarchies); *id.* ¶ 140 & Ex. 27 (Black App. L.1) (vast majority of

6    networking vendors support the accused hierarchies); Ex. 20 (Black Rpt.) ¶¶ 178–430 (non-Cisco

7    use of hierarchy-based industry-standard CLIs since the mid-1990s); *id.* ¶¶ 545–71 (pre-Cisco

8    DEC products used hierarchical multi-word CLIs).

9    ## F.    Cisco's purported selection and arrangement of unprotectable modes and prompts is unprotectable.

10    Cisco concedes that it is not asserting the individual mode names and prompts.  *See* ECF

11    552-1 at 34.  To avoid confusion, the jury should be instructed that the individual modes and

12    prompts are unprotectable and cannot be considered as a potential basis for finding infringement.

13    Cisco claims copyright protection only for its "particular arrangement of modes and

14    prompts."  ECF 552-1 at 34.  But that "arrangement" is only a small portion of the actual, much

15    more extensive arrangement of modes available in any version of Cisco's operating systems, and

16    Cisco has no evidence that it was conceived or created outside of this litigation. *See, e.g.,* Ex. 28

17    (Cisco User Manual) (70+ non-asserted modes in a single version of Cisco IOS); Ex. 22 (Black

18    Rebuttal Rpt.) ¶ 23; Ex. 29 (Tr. Ex. 9051) (many non-accused Arista modes).  Cisco's selection

19    of modes also is not original. *See* Arista MSJ (ECF 329) at 16–17; Ex. 20 (Black Rpt.) ¶¶550–551

20    (TOPS-20 modes); *id.* ¶ 580 (SUMEX modes); Ex. 30 (Lougheed 4/4/16 Dep. Excerpts ) 363-

21    371; Ex. 20 (Black Rpt.) ¶ 636 (pre-Cisco modes); Ex. 22 (Black Rebuttal Rpt.) ¶¶ 61–62 (no

22    creative expression).  Cisco also cannot claim any creative expression in using a handful of purely

23    functional modes and prompts that describe basic functionality and are used throughout the

24    industry.  Ex. 20 (Black Rpt.) ¶¶ 178–79 (summary); Ex. 22 (Black Rebuttal Rpt.) & Ex. 31

25

26

27

28

ARISTA'S BRIEF RE ANALYTIC DISSECTION OF ASSERTED WORKS
Case No. 5:14-cv-05344-BLF (NC)

1    (Black Am. App. C)  (other vendors use same set of modes/prompts).[13]

2        The function of making certain commands available only in certain modes is also an

3    unprotectable idea (and one that was common in command languages that pre-date Cisco), and

4    should be identified as such for the jury.  17 U.S.C. § 102(b).

5        **G.    The asserted command responses are unprotectable for the same reasons as
             the commands.**

6

7        The jury should be instructed that Cisco's asserted command responses (listed at ECF

8    552-1, pages 80–96) are largely unprotectable for the same reasons as its commands.  Much of

9    the content of the asserted portions of command responses is drawn from the same standards-

10   driven terminology as the commands, and is equally necessary to implement the functions and

11   parameters set by various formal industry standards.  *See, e.g.,* Ex. 20 (Black Rpt.) ¶¶ 637–41

12   (responses describe features and functionality, constrained by standard terms); Ex. 36 (Liu Dep.

13   Tr.) at 167–72.  Thus, Cisco's claims that individual snippets of its command responses are

14   protectable fail under the copyright law's originality requirement as well as Section 102(b).  *See*

15   *supra* Parts II.A–II.C (commands).  Also, Cisco again cannot prove that the command responses

16   it asserts here have any real existence as a discrete "collection of outputs" outside of this

17   litigation, rather than being cherry-picked here to support Cisco's litigation claims. *See* ECF 552-

18   1 at 80–96 (asserting partial snippets from 38 responses); Ex. 37 (Black MSJ Decl.) ¶ 71 (over

19   79,000 command responses appear in Cisco IOS alone).

20       **H.    Cisco's asserted help descriptions are unprotectable.**

21       Cisco's asserted help descriptions are also unprotectable under the short words and

22   phrases doctrine, for the same reasons as its commands.  *See supra* Part II.B.  *See* Cisco

---

23   [13] Dr. Black's analysis addresses vendors across the industry. Ex. 20 (Black Rpt.) ¶ 204 (AdTran
     AOS uses same set of CLI modes/prompts); *id.* ¶ 215 (Alcatel); *id.* ¶ 222 (Allied Telesis); *id.* ¶¶

24   233–41 (Avaya, Nortel & Lucent); *id.* ¶¶ 247–51 (Brocade & Foundry); *id.* ¶¶ 264–70, 272 (Dell
     & Force10); *id.* ¶¶ 305–07 (D-Link); *id.* ¶¶ 313–17 (Edge-Core); *id.* ¶¶ 323–27 (Ericsson); *id.* ¶¶

25   328–29 (Redback Networks); *id.* ¶¶ 338–40 (Extreme Networks); *id.* ¶¶ 347–50 (HPE); *id.* ¶¶
     367–69 (Juniper); *id.* ¶¶ 384–86 (Lenovo, IBM & BNT); *id.* ¶¶ 391–93 (Netgear); *id.* ¶¶ 396–402

26   (NextHop, acquired by Arista); *id.* ¶¶ 407–09 (Oracle & Sun); *id.* ¶¶ 418–20 (Procket).  *See also*
     Ex. 32 (Kasten Depo Excerpts) 62:10-19 (command modes ███████████████████████████

27   62:23-63:17 ████████████████████████ 63:20-64:13 ███████████████████████████████████
     ██████████████████████████; Ex. 33 (Cato (Dell) Depo Excerpts) at 37:23-

28   38:14 (customers expect familiar command modes); Ex. 35 (Venkatraman (HP) Depo Excerpts)
     at 64:2-21 (most vendors' switches have privileged modes).

ARISTA'S BRIEF RE ANALYTIC DISSECTION OF ASSERTED WORKS
Case No. 5:14-cv-05344-BLF (NC)

1123216.06

1  Submission (ECF 552-1) at ¶¶ 98–110 (listing asserted help descriptions); Ex. 38 (Black Supp.

2  Rpt.) ¶¶ 69–72 (summarizing length of help descriptions; 302 of originally asserted 441 strings

3  were 5 words or less); *id.* ¶ 95 (majority of asserted IOS help strings are 4 words or less); *id.* ¶ 99

4  (more than half of asserted IOS-XR help strings are only 2 or 3 words long; vast majority are 6

5  words or less).  Also, Cisco's asserted "collections of help descriptions" cannot support

6  infringement because Cisco never disclosed its currently asserted "collections" in discovery.

7  Compare Exs. 9, 10, and 40 (May 27 interrogatory responses and attachments) to ECF 552-1 at

8  98-110. *See* FRCP 37(c).  Cisco also has no evidence that the specific "collections of help

9  descriptions" asserted here (purportedly as an original compilation authored by Cisco) have any

10  existence outside of this litigation.  On the contrary, the shifting nature of Cisco's claims, and a

11  comparison of Cisco's asserted "collections" to its actual works, prove that they are purely

12  litigation-driven and contain no protectable expression authored by Cisco.  *See, e.g.,* Ex. 38

13  (Black Supp. Rpt.) ¶¶ 78, 80 (Cisco IOS interface contains 52,290 unique help strings; Cisco

14  originally asserted a maximum of 336 unique help IOS strings, or ~0.6%)); *id.* ¶¶ 94–96 (9/27/16

15  assertions abandon 124 asserted IOS help strings, leaving a total of 212 distinct IOS help strings

16  asserted); *id.* ¶¶ 97-100 (9/27/16 assertions of 213 distinct IOS-XR help strings include only 0.4%

17  of help strings in IOS-XR).  *See also* Ex. 39 (Lougheed 9/16/16 Dep. Excerpts) at 583:7–11,

18  584:17–19, 626:21–23 (Cisco is asserting "entire ensemble" or "entire package" of help strings);

19  Ex. 38 (Black Supp. Rpt.) ¶ 80 (discussing Lougheed testimony).[14]

20       Finally, the jury should be instructed that the concept of providing a help system like the

21  one reflected in the asserted help descriptions here is an idea or system—and a common feature

22  of networking interfaces throughout the industry—and is unprotectable.  17 U.S.C. § 102(b); Ex.

23  38 (Black Supp. Rpt.) ¶¶ 23–24; Ex. 39 (Lougheed 9/16/16 Dep. Excerpts) at 506:6–18; Ex. 38

24  (Black Supp. Rpt.) ¶ 58 (industry-wide use of similar help systems); Ex. 20 (Black Rpt.) ¶ 557

25  (TOPS-20 supported interactive help system).

26

27

28

---

[14] Comparison of Cisco's original (ECF 550) and "corrected" lists of protectable elements (ECF 552) shows that Cisco removed roughly 30 more help strings from the "corrected" submission.

ARISTA'S BRIEF RE ANALYTIC DISSECTION OF ASSERTED WORKS
Case No. 5:14-cv-05344-BLF (NC)

1123216.06

**I.      Other basic CLI ideas and functions should also be identified for the jury as unprotectable.**

Other aspects of the CLI that are not confined to one specific category above are also unprotectable under the law barring protection for ideas and systems, and should be identified to the jury to avoid confusion and decision on an improper basis.[15]  17 U.S.C. § 102(b).

The Court should instruct the jury that Cisco is not entitled to copyright protection for its choice to use a text-based CLI, in which command words and arguments are typed in at a command prompt, or to use multi-word commands within that CLI.  Cisco has repeatedly referred to its choice of a text-based CLI as opposed to another means of configuring or managing a device (such as a graphical user interface) in attempting to justify its claims that the CLI is protectable.  *See* Cisco MSJ (ECF 348) at 2:16–19; Cisco Protectability Brief (ECF 456) at 1:23–28.  However, Cisco has also conceded (as it must) that the idea of using a text-based interface is not protectable by copyright.[16]  *See id.* at 9:13–15.  Nor is it original.  *See* Ex. 22 (Black Rebuttal Rpt.) ¶¶ 65–69 (pre-Cisco use of hierarchical and structured multi-word commands); *see also id.* Ex. 20 (Black Rpt) ¶¶ 105–07, 498–516, 559–67, 545, 547–82, 632–35; Ex. 42 (Lougheed 11/20/15 Dep. Excerpts) at 123–24 (adopting TOPS conventions), 151:7–23 (multi-word commands in pre-Cisco UNIX and TOPS-20 systems); *id.* Ex. 43 (Satz Dep. Excerpts) at 32:3–8 ("every operating system" had used 'show' commands).

In addition, the function of any asserted feature (such as the function of a particular command, or a mode of operation, or a command response screen) is not protectable under Section 102(b).

**J.      Cisco's asserted snippets from manuals are unprotectable for the same reasons and to the same extent as the CLI elements that they describe.**

Cisco has asserted infringement of more than 30 separate Cisco manuals, based on alleged

---

[15] In addition, Cisco's overall selection and arrangement of all of its asserted CLI elements (including the commands, hierarchies, modes/prompts, responses, and help strings) is also unprotectable for the same reasons that underlying selections in each category are unprotectable (as explained above).  *See* ECF 552-1 at 1 (asserting all "five categories of protectable elements from its user interface . . . together make up the look and feel of Cisco's user interface").

[16] The idea is also not original to Cisco, and in fact text-based interfaces were the only type of interface in use when Cisco created its CLI.  Ex. 30 (Lougheed 4/4/16 Dep. Excerpts) at 260:5–9; Ex. 22 (Black Rebuttal Rpt.) ¶¶ 79–83.

copying of small snippets of text.  ECF 552.  To the extent that Cisco alleges infringement based on similarities in manuals that derive from underlying similarities in CLI commands, responses, modes and prompts, or help descriptions, or terms and parameters from industry standards, the asserted text is unprotectable to the same degree and for the same reasons as the CLI elements themselves, and the jury should be so instructed.  Cisco cannot prevent Arista or others from simply identifying unprotectable CLI elements in its technical documentation—any more than it can prevent Arista from using those unprotectable elements in the CLI itself.

**K.    Cisco is entitled only to "thin" protection and a virtual identity standard for infringement.**

Determining whether broad or thin copyright protection applies is the logical endpoint of the analytic dissection process and should also be done now to provide guidance at trial.  Courts have long acknowledged that factual and functional works are entitled to thinner copyright protection than fictional or other artistic works.  *See Feist Publications, Inc. v. Rural Tel. Service Co.*, 499 U.S. 340 (1991); *Harper & Row, Publishers, Inc. v. Nation Enters.*, 471 U.S. 539, 563 (1985) ("The law generally recognizes a greater need to disseminate factual works than works of fiction or fantasy.").  Under Ninth Circuit law, where design choices are highly constrained by limitations inherent in a certain endeavor, and the range of possible expression is narrow because of functional or other limitations, a copyright holder is entitled to only "thin" copyright protection.  Accordingly, after "dissect[ing] the alleged similarities and consider[ing] the range of possible expression," the court "*must* define the scope of the plaintiff's copyright—that is, decide whether the work is entitled to 'broad' or 'thin' protection."  *Apple*, 35 F.3d at 1443 (emphasis added).  Where the range of possible expression is narrow, copyright protection is "thin" and infringement requires "virtual identity" between the disputed works, rather than the "substantial similarity" required for infringement of a work that receives broad protection.  *Apple*, 35 F.3d at 1442–43; *see also Mattel, Inc. v. MGA Entm't, Inc.*, 616 F.3d 904, 915 (9th Cir. 2010); *Ets-Hokin v. Skyy Spirits, Inc.*, 323 F.3d 763, 766 (9th Cir. 2003) (applying *Apple Computer* and affirming summary judgment; "When we apply the limiting doctrines, subtracting the unoriginal elements, Ets–Hokin is left with only a 'thin' copyright, which protects against only virtually identical copying."); 4-13 Nimmer on Copyright § 13.03.

1123216.06

1    Here, the evidence shows that the asserted CLI elements are functional, and chosen within

2    a narrow range of possible expression in this highly technical field.  Accordingly, copyright

3    protection is "thin" and infringement requires "virtual identity" between the disputed works,

4    rather than the "substantial similarity" required for infringement of a creative work that receives

5    broad protection.  *Apple*, 35 F.3d at 1442–43; *Mattel*, 616 F.3d at 915.  In contrast to the facts at

6    issue in the Court's recent decision in *Diamond Foods, Inc. v. Hottrix, LLC*, No. 14-cv-03162-

7    BLF, 2016 WL 3880797 (N.D. Cal. July 18, 2016), given the functional purpose and context at

8    issue there is ***not*** a wide range of expression possible for most aspects of a CLI intended to

9    control a networking switch.  *Cf. id.* at *8–9 (finding wide range of expression possible in visual

10   design of a popcorn-popping app); *L.A. Printex Indus., Inc. v. Aeropostale, Inc.*, 696 F.3d 841

11   (9th Cir. 2012) (finding wide range of expression possible for flowered textile design).

12   In this case, as in the Ninth Circuit's *Mattel v. MGA Entertainment* decision, only a

13   narrow range of expression is possible for the selection of asserted CLI features because the

14   industry demands that interfaces for switches include certain features, follow expected patterns,

15   and not launch into free-wheeling "creative" whimsy.  *See* Dkt. 380 (Arista Opp. MSJ) at 10–11;

16   Exs. 13, 16, 17 (Cisco documents and testimony).  In *Mattel*, only "thin" protection was available

17   for a fashion doll sculpt featuring a stylized female figure with exaggerated features because in

18   practice, the industry demands certain types of features as part of the basic idea for fashion dolls

19   (narrow waists and large eyes), and discourages others (potbellies and large noses).  *Mattel,* 616

20   F.3d at 914–15.  Similarly here, in practice the Cisco CLI had to use recognizable industry terms

21   and parameters to invoke standard industry protocols and functions—not randomly selected

22   "creative" words.  *See id.*; *Data East USA*, 862 F.2d at 209 (protection only against "identical

23   copying" for computer karate game, given "constraints inherent in the sport").

24   **L.    Some disputed issues involve extensive and disputed evidence that must be
        resolved after a live hearing and cross-examination.**

25   In addition to the unprotectable portions of Cisco's claims that the Court can identify now

26   on a paper record, other disputes about the nature and extent of copyright protection available to

27   Cisco can only be resolved after live testimony and cross-examination.  In particular, Arista will

28   prove that Arista cannot be liable for infringement of the asserted CLI commands and other

16

elements because they are *scenes a faire* that flow directly from the commands' functional nature and the industry's preferences and expectations.  *See* 17 U.S.C. § 102(b); *Apple Computer, Inc. v. Microsoft Corp.*, 35 F.3d 1435, 1444 (9th Cir. 1994); *Mattel, Inc. v. MGA Entm't, Inc.*, 616 F.3d 904, 913 (9th Cir. 2010).

The parties' evidence on the impact of *scenes a faire* on Cisco's asserted CLI elements is too extensive and disputed to be decided on a paper record.  Although Arista believes it should ultimately prevail, Cisco disputes many of the essential facts.  Without a full presentation of all related testimony and opportunity for cross-examination, Arista believes the Court will be unable to resolve those disputes.  Moreover, the evidence that Arista would need to present on certain issues will overlap with the evidence that the jury must hear anyway to decide Cisco's claims of originality and protectability, and of infringement, as well as fair use.  As explained above, the Court's task in dissection is simply to filter out elements of a work that are ***not*** protectable, to prevent the jury from finding infringement on an improper basis. It remains the jury's task to decide whether Cisco has proven that any remaining elements constitute infringement in light of doctrines such as *scenes a faire* and the *de minimis* rule.  The Court should not address these issues without hearing live testimony and cross-examination, and should instruct the jury as to the nature of the *scenes a faire* limitation on infringement.

Because Cisco maintains that the Court can resolve these issues without hearing live evidence, Arista offers an overview of some of the key evidence, to illustrate for the Court how extensive and contentious these issues are (in light of Cisco's claims that its works reflect "aesthetic" choice and expression).  Dr. Black's analysis and testimony will show that external constraints severely restricted Cisco's options in creation of its CLI.  *See, e.g.,* Ex. 20 (Black Rpt.) ¶ 644 (industry constraints on development of commands); *id.* ¶ 645 (constraints from user demand for standard industry acronyms, self-explanatory commands, internal consistency across commands, extendable commands, absence of "collisions" in abbreviated commands); *id.* ¶ 646 (commands are short-cuts for descriptions of functionality, and it would make no sense to name them other than by using the common terminology used in the industry); *id.* ¶¶ 647–48 (discussing evidence of customer demand for use of familiar terminology); *id.* ¶ 649 (very few

word order options available given short length of commands); *id.* ¶ 650 (constraints on commands from limitations of standard "English usage, brevity, clarity, extensibility and efficiency in the parsing of the commands"); *id.* ¶¶ 651–666 (additional detail on these constraints); *id.* ¶¶ 543–642; Ex. 20 (Black Rpt.) ¶ 571 (pre-Cisco use of "show users" and "terminal length" commands). Evidence from Cisco and third parties (including cross-examination of Cisco's expert Dr. Almeroth) will confirm Dr. Black's analysis. *See e.g.* Ex. 11 (Deposition Compilation) (Cisco authors consulted industry standards before incorporating standards-driven terms into CLI commands); Ex. 22 (Black Rebuttal Rpt.) ¶ 9 (rejecting Almeroth opinions); Ex. 15 (Tony Li Dep. Excerpts) at 32-38, 41-49, 52-55 (discussing industry standards used at Cisco), 107-110 (explaining industry-wide use of standards-based acronyms).

The evidence will also show (though Cisco will dispute it) that early CLI decisions also constrained Cisco's later choices. *See, e.g., id.* at 126–28 (rule in CLI design at Cisco was to follow the "principle of least surprise"); Ex. 22 (Black Rebuttal Rpt.) ¶¶ 72–78, 116–18, 122 (need to follow past practices for consistency and ease of use); Ex. 20 (Black Rpt.) ¶¶ 602–13; Ex. 16 (Remaker Dep. Excerpts) at 69–70 (agreeing that "[c]ustomers would expect the CLI commands to use words that would be familiar to people in the industry"); Ex. 17 (Remaker Dep. Ex. 413) at 4 ("CLI is de-facto industry standard, need to continually foster its syntactic and behavioral consistency"; emphasizing need for "consistency" and "rigid CLI structure"); Ex. 13 (Remaker Dep. Ex. 436) at 4392; Ex. 14 (Cisco Presentation) at 646–647 ("When naming a command, pick names that would be familiar to people in the industry," such as "accepted industry acronym" or an industry's "universal parlance.").

Likewise, Arista will present extensive evidence that CLI commands are merely a functional part of a system or method of operation: digital "knobs" turning on or off, or setting, their respective functionality in the operating system software. *See, e.g.,* Ex. 44 (Remaker Dep. Excerpts) at 57:9–13 ("the command is the knob" for a setting); Ex. 15 (Li Dep. Excerpts) at 236:22–24 (describing adding "a knob for" functions); *id.* at 184:7–185:3; Ex. 43 (Remaker Dep. Excerpts) at 75:12-76:8, 100–01 (authors named  command by "what it did," borrowing standard terminology), 152:24–153:4 (commands used to "toggle an interface up or down"); Ex. 20 (Black

Rpt.) ¶ 523; Ex. 45 (Cisco email) ("The command should describe the capability and function that you are enabling…"); Ex. 12  (Kathail Dep. Excerpts) at 194 (command words should be "self-explanatory," using "terminology . . . from the networking world"); Ex. 22 (Black Rebuttal Rpt.) ¶¶ 64–73; Ex. 46 (Black App. K.); Ex. 1 (Black Am. App. K).  Cisco contends its CLI is an "aesthetic" work.

Arista's evidence will also show that other companies engaged in widespread use of identical CLI commands and features, demonstrating the impact of functional constraints on the choices available to Cisco and anyone else in the industry implementing these technical networking features and specifications.  *See, e.g.,* Ex. 20 (Black Rpt.) ¶ 191; Ex. 47 (Black Am. App. G); Ex. 48 (Trial Ex. 9039) (multiple top Cisco competitors besides Arista use more than half of the asserted commands); *id.* Ex. 49 (Trial Ex. 9041) (multiple other networking companies use 412 asserted commands; 5 to 18 other companies use 289 asserted commands); Ex. 20 (Black Rpt.) ¶ 274 & Ex. 51 (Black Am. App. H-DE) (Dell also supports at least 268 asserted commands); Ex. 20 (Black Rpt.) ¶¶ 182, 275–300 & Ex. 51 (Black App. I) (overall, Dell shares more than 1600 commands with Cisco); Ex. 52 (Summary re Dell and Cisco Overlapping Commands) (charting 1600+ multi-word commands common to Dell and Cisco); Ex. 20 (Black Rpt.) ¶¶ 179–81 (summarizing other vendors' use of overlapping commands); Ex. 15 (Li Dep. Tr.) at 154–163 (Procket Networks made its CLI "bug-for-bug compatible" with Cisco's, with no complaint from Cisco); Ex. 32  ( Kasten (Juniper Networks) Dep. Excerpts)) at 15:5-16:7, 16:24-17:3, 17:12-17 & 18:1-5 ███████████ 25:18-27:4, 29:5-22, 30:18-22 & 33:15-34:4 ████████████████████████ 38:21-40:8 & 43:3-17 █████████████████ 66-72 ███████████ Ex. 33 (Cato (Dell) Dep. Excerpts) at 35:4-36:8 (similarities of Dell and Cisco CLI), 39:4-16 (customers expect familiar command syntax), 47:15-48:18 & 50:5-52:4 (use of Cisco commands at customer request), 60:11-14, 61:15-19 & 62:24-65:13 (Dell, Cisco, others all use same industry standard commands); Ex. 34 (Cato (Dell) Dep. Excerpts) 9at 42:8-43:3 (Dell consults standards and customer needs when creating commands); Ex. 35 (Venkatraman (HP) Dep. Excerpts) at 46:1-21 (discussing "standard show commands"), 71:21-

19

1123216.06

72:6 (different vendors share commands and syntax), 96:7-22 (standard use of common, consistent-looking CLI helps customers). Cisco disputes most of these facts (and their significance), and resolving those disputes requires a full hearing of both parties' evidence.

The same functional and industry constraints, and the same disputes, apply to the asserted help descriptions. Arista will prove—and Cisco disputes—that the help strings are unprotectable because they are purely functional parts of an unprotectable help system, driven by the same industry-standard and functional constraints as the commands. *See, e.g.*, Ex. 22 (Black Rebuttal Rpt. ¶¶ 143–145 (help strings are functional phrases describing what commands do), Ex. 37 (Black Decl.) ¶ 73; Ex. 38 (Black Supp. Rpt.) ¶¶ 60–63, 68 (extensive use of generic functional industry terms and expressions pre-dating Cisco); *id.* Exs. 53-56 (Black Apps. O, P & Q) (same); Ex. 38 (Black Supp. Rpt.) ¶ 63 (pre-Cisco use of "Transmission Control Protocol"); *id.* ¶¶ 66–67 (RFC 1213 source for "identification of the contact person for this managed node"); *id.* ¶ 93 ("the bulk of the key terms and phrases used in their help strings were actually created outside of Cisco and adopted wholesale by Cisco engineers"); *id.* ¶¶ 76–77 (limited options mean multiple authors likely to create same strings independently); Ex. 39 (Lougheed 9/16/16 Dep. Excerpts) at 587:25–588:5; Ex. 38 (Black Supp. Rpt.) ¶ 78 (low degree of overlapping help strings consistent with functional need to implement standard technical features / protocols); Ex. 38 (Black Supp. Rpt.) ¶ 58 (help strings part of a functional "system"; similar help systems used throughout industry); *id.* ¶ 67 (severe constraints in "choosing short phrases to describe strictly-defined terminology"); *id.* ¶ 68 (absence of creativity).

Finally, the evidence will show that many of the asserted "commands" are not the actual commands accepted by Cisco or Arista switches (and thus not protectable as asserted), because Cisco's representations of these commands omit necessary words and parameters. Ex. 20 (Black Rpt.) ¶¶ 182, 491; Ex. 57-63 (Black Rebuttal Rpt. App. N) (Arista command syntax for 397 incomplete asserted commands). This issue is related to the *scenes a faire* questions outlined above, and also cannot be resolved on a paper record, because the use of stripped-down versions of commands makes the asserted commands more clearly *scenes a faire* dictated by functional and industry constraints.

20

1

2     Dated:  November 8, 2016

3

4                                                    By:

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Respectfully submitted,

KEKER & VAN NEST LLP


/s/ Brian L. Ferrall
BRIAN L. FERRALL

Attorneys for Defendant
ARISTA NETWORKS, INC.

ARISTA'S BRIEF RE ANALYTIC DISSECTION OF ASSERTED WORKS
Case No. 5:14-cv-05344-BLF (NC)