1
2
3
4
5
6
7
8

**UNITED STATES DISTRICT COURT**

9

**NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION**

10

CISCO SYSTEMS, INC.,

CASE NO. 5:14-cv-5344-BLF

11

Plaintiff,

**FINAL JURY INSTRUCTIONS**

12

vs.

13

ARISTA NETWORKS, INC.,

14

Defendant.

15
16
17
18
19
20
21
22
23
24
25
26
27
28

1130355.01

# Table of Contents

Table of Contents ................................................................................................1

Final Instruction No. 13 re Duty of Jury .............................................................3

Final Instruction No. 14 re What Is Evidence .....................................................4

Final Instruction No. 15 re What Is Not Evidence ..............................................5

Final Instruction No. 19 re Expert Opinion.........................................................6

Final Instruction No. 21 re Charts and Summaries Not Received In Evidence ....................7

Final Instruction No. 22 re Charts and Summaries Received In Evidence ...........................8

Final Instruction No. 23 re Burden Of Proof ......................................................9

Final Instruction No. 24 re Copyright—Defined ...............................................10

Final Instruction No. 25 re Copyright—Subject Matter ....................................11

Final Instruction No. 27 re Copyright—Ideas and Expressions..........................12

Final Instruction No. 29 re Copyright—Elements: Ownership and Copying ....................13

Final Instruction No. 30 re Copyright—Validity ...............................................14

Final Instruction No. 31 re Copyright—Copyright Registration Certificates ....................15

Final Instruction No. 32 re Copyright—Originality...........................................16

Final Instruction No. 33 re Copyright—Compilations.........................................17

Final Instruction No. 34 re Copyright—Authorship & Work Made For Hire ....................18

Final Instruction No. 35 re Copyright—Derivative Work ...................................19

Final Instruction No. 36 re Copyright—Copying ...............................................20

Final Instruction No. 38 re Copyright—Indirect Evidence: Access ....................21

Final Instruction No. 39 re Copyright—Indirect Evidence: Virtual Identity ....................22

Final Instruction No. 41 re Copyright – Sufficiency of Copying.........................24

Final Instruction No. 46 re Copyright—Affirmative Defense: Fair Use ............................25

Final Instruction No. 49 re Copyright—Affirmative Defense: Fair Use: First Factor.........26

Final Instruction No. 53 re Copyright—Affirmative Defense: Fair Use: Second
    Factor.......................................................................................................27

Final Instruction No. 55 re Copyright—Affirmative Defense: Fair Use: Third Factor..................................................................................................28

Final Instruction No. 56 re Copyright—Affirmative Defense: Fair Use: Fourth Factor..................................................................................................29

Final Instruction No. 56A re Copyright—Affirmative Defense: Fair Use: Balancing ........30

Final Instruction No. 60 re Copyright—Affirmative Defense: Merger ...............................31

Final Instruction No. 61 re Copyright—Affirmative Defense: Scènes À Faire...................32

Final Instruction No. 62 re Copyright—Affirmative Defense: Copyright Misuse .............33

Final Instruction No. 64 re Copyright—Damages ...............................................................34

Final Instruction No. 65 re Copyright—Actual Damages....................................................35

Final Instruction No. 66 re Copyright—Infringer's Profits .................................................36

Final Instruction No. 70 re Patent—Interpretation Of Patent Claims .................................37

Final Instruction No. 72 re Patent—Patent Infringement: Burden Of Proof.......................38

Final Instruction No. 73 re Patent—Direct Infringement of a Patent ..................................39

Final Instruction No. 74 re Patent—Literal Infringement Of A Patent...............................40

Final Instruction No. 77 re Patent—Contributory Patent Infringement..............................41

Final Instruction No. 78 re Patent—Inducing Patent Infringement ....................................42

Final Instruction No. 79 re Patent—Willful Patent Infringement.......................................43

Final Instruction No. 84 re Patent—Damages: Burden Of Proof .......................................44

Final Instruction No. 85 re Patent—Damages In The Form Of A Reasonable Royalty: Definition of a "Reasonable Royalty".......................................................45

Final Instruction No. 86 re Patent—Damages: Date Of Commencement ...........................46

Final Instruction No. 88 re Duty To Deliberate ..................................................................47

Final Instruction No. 89 re Conduct Of The Jury ...............................................................48

Final Instruction No. 90 re Communication With Court .....................................................50

Final Instruction No. 91 re Return Of Verdict ....................................................................51

Final Instruction No. 93 re Copyright—Abandonment .......................................................52

1130355.01

1

**Final Instruction No. 13 re Duty of Jury**

2   Members of the Jury: Now that you have heard all of the evidence and the arguments of

3   the attorneys, it is my duty to instruct you on the law that applies to this case.

4   A copy of these instructions will be sent to the jury room for you to consult during your

5   deliberations.

6   It is your duty to find the facts from all the evidence in the case. To those facts you will

7   apply the law as I now give it to you. You must follow the law as I give it to you whether you

8   agree with it or not. And you must not be influenced by any personal likes or dislikes, opinions,

9   prejudices, or sympathy. That means that you must decide the case solely on the evidence before

10   you. You will recall that you took an oath to do so.

11   Please do not read into these instructions or anything that I may have said or done that I

12   have an opinion regarding the evidence or what your verdict should be.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1130355.01

## **Final Instruction No. 14 re What Is Evidence**

The evidence you are to decide the facts are consists of:

1.   The sworn testimony of any witness;

2.   The exhibits that are admitted into evidence;

3.   Any facts to which the lawyers have agreed; and

4.   Any facts that I have instructed you to accept as proved.

### Final Instruction No. 15 re What Is Not Evidence

In reaching your verdict, you may consider only the testimony and exhibits received into evidence. Certain things are not evidence, and you may not consider them in deciding what the facts are.

1.    Arguments and statements by lawyers are not evidence. The lawyers are not witnesses. What they have said in their opening statements, will say in their closing arguments, and at other times is intended to help you interpret the evidence, but it is not evidence. If the facts as you remember them differ from the way the lawyers have stated them, your memory of them controls.

2.    Questions and objections by lawyers are not evidence. Attorneys have a duty to their clients to object when they believe a question is improper under the rules of evidence. You should not be influenced by the objection or by the court's ruling on it.

3.    Testimony and exhibits that have been excluded or stricken, or that you have been instructed to disregard, are not evidence and must not be considered. In addition some evidence may be received only for a limited purpose; when I give a limiting instruction, you must follow it.

4.    Anything you may have seen or heard when the court was not in session is not evidence. You are to decide the case solely on the evidence received at the trial.

## **Final Instruction No. 19 re Expert Opinion**

Some witnesses, because of education or experience, are permitted to state opinions and the reasons for those opinions.

Such opinion testimony should be judged like any other testimony. You may accept it or reject it, and give it as much weight as you think it deserves, considering the witness's education and experience, the reasons given for the opinion, and all the other evidence in the case.

1130355.01

## **Final Instruction No. 21 re Charts and Summaries Not Received In Evidence**

Certain charts and summaries not admitted into evidence have been shown to you in order to help explain the contents of books, records, documents, or other evidence in the case. Charts and summaries are only as good as the underlying evidence that supports them. You should, therefore, give them only such weight as you think the underlying evidence deserves.

**Final Instruction No. 22 re Charts and Summaries Received In Evidence**

Certain charts and summaries have been admitted into evidence to illustrate information brought out in the trial. Charts and summaries are only as good as the testimony or other admitted evidence that supports them. You should, therefore, give them only such weight as you think the underlying evidence deserves.

### **Final Instruction No. 23 re Burden Of Proof**

When a party has the burden of proof on any claim or affirmative defense by preponderance of the evidence, it means you must be persuaded by the evidence that the claim or affirmative defense is more probably true than not true. Preponderance of the evidence basically means "more likely than not."

You should base your decision on all of the evidence, regardless of which party presented it.

1130355.01

## **Final Instruction No. 24 re Copyright—Defined**

Copyright is the exclusive right to copy. This right to copy includes the exclusive rights to, or authorize others to:

1.  Reproduce the copyrighted work in copies;

2.  Recast or adapt the work—that is, prepare derivative works based upon the copyrighted work;

3.  Distribute copies of the copyrighted work to the public by sale or other transfer of ownership; and

4.  Display publicly a copyrighted work.

It is the owner of a copyright who may exercise these exclusive rights. The term "owner" includes the author of the work. In general, copyright law protects against reproduction, adaptation, distribution, or display of infringing copies of the owner's copyrighted work without the owner's permission. An owner may enforce these rights to exclude others in an action for copyright infringement.

1130355.01

## **Final Instruction No. 25 re Copyright—Subject Matter**

The copyrighted works involved in this trial are:

1.  Cisco's four user interfaces for IOS, IOS-XR, IOS-XE, and NX-OS; and

2.  Cisco's technical manuals.

You are instructed that a copyright may be obtained in user interfaces and technical manuals.

1130355.01

1

## **Final Instruction No. 27 re Copyright—Ideas and Expressions**

2      Copyright law allows the author of an original work to stop others from copying the

3  original expression in the author's work. Only the particular expression of an idea can be

4  copyrighted and protected.

5      Copyright law does not give the author the right to prevent others from copying or using

6  the underlying ideas contained in the work, such as any procedures, processes, systems, methods

7  of operation, concepts, principles or discoveries.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1130355.01

**<u>Final Instruction No. 29 re Copyright—Elements: Ownership and Copying</u>**

Anyone who copies original, protectable expression from a copyrighted work during the term of the copyright without the owner's permission infringes the copyright.

Cisco has the burden of proving by a preponderance of the evidence that:

1.  Cisco is the owner of a valid copyright; and

2.  Arista copied original, protectable expression from the copyrighted work.

1130355.01

1

## <u>Final Instruction No. 30 re Copyright—Validity</u>

Cisco is the owner of valid copyrights in its four user interfaces for IOS, IOS-XR, IOS-XE, and NX-OS and related documentation if Cisco proves by a preponderance of the evidence that:

1. Cisco's works are original; and

2. Cisco is the author or creator of the works, or the author or creator assigned or exclusively licensed the works to Cisco.

1    **<u>Final Instruction No. 31 re Copyright—Copyright Registration Certificates</u>**

2        A copyright owner may obtain a certificate of registration from the Copyright Office. The

3    evidence in this case includes 26 certificates of copyright registration from the Copyright Office

4    for Cisco's copyrighted works. If you find that a certificate was made within five years after first

5    publication of that work, you may consider that certificate as evidence of the facts stated in it.

6    From the certificate, you may, but need not, conclude that the work is original and copyrightable,

7    and that Cisco owns the copyright in that work.

1130355.01

**Final Instruction No. 32 re Copyright—Originality**

An original work may include or incorporate elements taken from prior works, works from the public domain, and/or works owned by others, with the owner's permission. The original parts of the plaintiff's work are the parts created:

1. independently by the work's author, that is, the author did not copy it from another work; and

2. by use of at least some minimal creativity.

In copyright law, the "original" part of a work need not be new or novel.

1

## **Final Instruction No. 33 re Copyright—Compilations**

2      An owner is entitled to copyright protection of a compilation. A compilation is a work

3 formed by the collection and assembling of preexisting materials or of data that are selected,

4 coordinated, or arranged in such a way that the resulting work as a whole constitutes an original

5 work of authorship.

6      The owner of a compilation may enforce the right to exclude others in an action for

7 copyright infringement.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1130355.01

1

## **Final Instruction No. 34 re Copyright—Authorship & Work Made For Hire**

2    The creator of an original work is called the author of that work. An author originates or

3 "masterminds" the original work, controlling the whole work's creation and causing it to come

4 into being.

5    A copyright owner is entitled to exclude others from copying a work made for hire. A

6 work made for hire is one that is prepared by an employee and is within the scope of employment.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1130355.01

1

### **Final Instruction No. 35 re Copyright—Derivative Work**

2      A copyright owner is entitled to exclude others from creating derivative works based on

3   the owner's copyrighted work. The term "derivative work" refers to a work based on one or more

4   pre-existing works, such as a translation, musical arrangement, dramatization, fictionalization,

5   motion picture version, sound recording, art reproduction, abridgment, condensation, or any other

6   form in which a work may be recast or adapted. Accordingly, the owner of a copyrighted work is

7   entitled to exclude others from recasting or adapting the copyrighted work without the owner's

8   permission.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1130355.01

## **Final Instruction No. 36 re Copyright—Copying**

Cisco has the burden of proving by a preponderance of the evidence that Arista copied original, protected elements from Cisco's copyrighted works. There are two ways that Cisco can meet its burden.

First, Cisco may establish Arista's copying through direct evidence. An example of direct evidence would be an admission by Arista that part or all of the work was copied. Direct evidence may also be the credible testimony of a witness who saw the work being copied.

Alternatively, Cisco may show that Arista copied from Cisco's copyrighted works through indirect evidence by proving by a preponderance of the evidence that:

1.  Arista had access to Cisco's copyrighted works and;

2.  There is virtual identity between Arista's works and the original, protected elements of Cisco's works.

1130355.01

1

### **<u>Final Instruction No. 38 re Copyright—Indirect Evidence: Access</u>**

To establish indirect evidence of copying, Cisco must prove by a preponderance of the evidence that Arista had access to Cisco's copyrighted works. You may find that Arista had access to Cisco's works if Arista had a reasonable opportunity to view, read, or copy Cisco's works before Arista's work was created.

If you find that Arista did not have access to Cisco's works, you may still find that Arista copied Cisco's works if there are striking similarities between the protectable elements of the works.

1130355.01

**<u>Final Instruction No. 39 re Copyright—Indirect Evidence: Virtual Identity</u>**

To establish indirect evidence of copying, Cisco must prove virtual identity in two steps. Virtual identity means differing by no more than a trivial degree.

First, Cisco must prove that there is virtual identity between the original, protected elements of Cisco's copyrighted works and the corresponding elements of Arista's works that Cisco claims Arista copied.

In making this comparison, you may find any of the following elements of Cisco's works protected as a compilation if you find that they are original:

1. The selection and arrangement of Cisco's multiword command-line expressions;

2. The selection and arrangement of Cisco's modes and prompts;

3. The collection of Cisco's screen responses and outputs;

4. The collection of Cisco's help descriptions;

5. Cisco's user interfaces as a whole as compilations of elements 1 through 4;

6. Each of Cisco's technical manuals.

In making this comparison, you should not consider the following elements, which are not protectable:

1. Individual words used in any of the asserted elements;

2. Any single multiword command;

3. The idea or method of grouping or clustering commands under common initial words, such as "show" or "ip";

4. Any command hierarchy;

5. Specific modes and specific prompts;

6. The idea of a set pathway through a series of modes;

7. The idea of making certain commands available only in certain modes;

8. Use of command syntax such as "[verb] [object] [parameters]";

9. The choice of using a text-based user interface;

10. The idea of using multiword command expressions to manage or configure a device;

11. The function of any asserted feature;

12. The use of "?" to call up help descriptions;

13. Individual help description phrases;

14. Command prefixes that the user interface auto-completes;

15. Tab completions.

If Cisco proves virtual identity between the relevant protected elements, it must also prove that an ordinary reasonable observer would find the total concept and feel of its copyrighted works as a whole to be virtually identical to Arista's challenged works as a whole. In making that comparison, you should not consider elements that are not original or are not protectable. As I previously instructed you, Cisco's works as a whole are its four user interfaces associated with its four operating systems, as well as each of Cisco's asserted technical manuals. Arista's works as a whole are the user interfaces for each of the accused Arista operating systems as well as each of Arista's accused technical manuals.

## **Final Instruction No. 41 re Copyright – Sufficiency of Copying**

If you conclude that Cisco has proven, whether by direct or indirect evidence, that Arista copied original, protected elements of Cisco's works, you must then determine whether that copying was greater than *de minimis*—that is, more than a trivial amount of Cisco's works as a whole. In making this determination, you should consider the qualitative as well as the quantitative significance of the copied portion in relation to Cisco's works as a whole.

1

**Final Instruction No. 46 re Copyright—Affirmative Defense: Fair Use**

2    Now, I will explain what fair use means under the law.

3    One who is not the owner of the copyright may use a copyrighted work in a reasonable

4 way under the circumstances without the consent of the copyright owner if it would advance the

5 public interest. Such use of a copyrighted work is called a fair use. The owner of a copyright

6 cannot prevent others from making a fair use of the owner's copyrighted work.

7    In determining whether the use made of the work was fair, you should consider the

8 following factors:

9    1.    The purpose and character of the use;

10    2.    The nature of the copyrighted work;

11    3.    The amount and substantiality of the portion used in relation to the copyrighted

12        work as a whole; and

13    4.    The effect of the use upon the potential market for or value of the copyrighted

14        work.

15    If you find that Arista has proved by a preponderance of the evidence that it made a fair

16 use of Cisco's work, your verdict should be for Arista.

17

18

19

20

21

22

23

24

25

26

27

28

## **Final Instruction No. 49 re Copyright—Affirmative Defense: Fair Use: First Factor**

The first statutory factor concerns the purpose and character of the accused use.

This factor includes these issues: (1) whether and to what extent the accused use serves a commercial purpose, which weighs against fair use, versus a nonprofit educational purpose, which weighs in favor of fair use, and (2) whether and to what extent the accused work is "transformative," which supports fair use.

A use is transformative if it adds something new, with a further purpose or different character, altering the first use with new expression, meaning, or message rather than merely superseding the objects of the original creation. New works have been found transformative when they use copyrighted material for purposes distinct from the purpose of the original material. A use is considered transformative only where a defendant changes a plaintiff's copyrighted work or uses copyrighted elements for a different purpose such that the original work is transformed into a new creation.

In evaluating the first statutory factor, the extent of the commercial nature of the accused work must also be considered. Commercial use weighs against a finding of fair use. However, the more transformative the new work, the less will be the significance of other factors, like commercialism, that may weigh against a finding of fair use.

Finally, also relevant to the first statutory factor is the propriety of Arista's conduct.

1130355.01

**Final Instruction No. 53 re Copyright—Affirmative Defense: Fair Use: Second Factor**

The second statutory is the nature of the copyrighted work. This factor considers the extent to which the work is informational or creative. This factor weighs against fair use if a work is purely creative, and it weighs in favor of fair use if a work is purely informational or functional. But, like all things in life, most cases fall on a spectrum in between informational and creative. You must consider where on this spectrum the works in this case fall.

1130355.01

**<u>Final Instruction No. 55 re Copyright—Affirmative Defense: Fair Use: Third Factor</u>**

The third statutory factor is the amount and substantiality of the portion used in relationship to the copyrighted work as a whole, which concerns how much of the overall copyrighted work was used by the accused infringer. Analysis of this factor is viewed in the context of Cisco's copyrighted works, which are the four user interfaces of IOS, IOS-XR, IOS-XE, NX-OS. The fact, if true, that a substantial portion of an infringing work was copied verbatim is evidence of the qualitative value of the copied material, both to the originator and to whoever seeks to profit from marketing someone else's copyrighted work. Wholesale copying does not preclude fair use per se but it militates against a finding of fair use. Even a small part may be qualitatively the most important part of a work. If, however, the secondary user only copies as much as is necessary for a transformative use, then this factor will not weigh against him or her. The extent of permissible copying varies with the purpose and character of the use, which relates back to the first factor.

In assessing this third factor, both the quantity of the material used and the quality or importance of the material used should be considered.

1130355.01

1    **<u>Final Instruction No. 56 re Copyright—Affirmative Defense: Fair Use: Fourth Factor</u>**

2         The fourth statutory factor is the effect of the accused infringer's use on the potential

3    market for or value of the copyrighted work. This factor militates against fair use if the accused

4    use materially impairs the marketability or value of the copyrighted work. This is the most

5    important factor, but it must be weighed with all other factors and is not necessarily dispositive.

6    This factor considers whether the accused work is offered or used as a substitute for the original

7    copyrighted work. This factor considers not only the extent of any market harm caused by the

8    accused infringer's actions but also whether unrestricted and widespread use of the copyrighted

9    materials of the sort engaged in by the accused infringer would result in a substantially adverse

10   impact on the potential market for the copyrighted work. If the use of the copyrighted materials is

11   transformative, market substitution is at least less certain, and market harm may not be presumed.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1130355.01

### **Final Instruction No. 56A re Copyright—Affirmative Defense: Fair Use: Balancing**

You must consider each of the factors I have just identified to determine whether or not Arista has carried its burden of proving that Arista's use of Cisco's copyrighted works is fair use. No one of these factors is determinative of the issue of fair use by itself. Some factors may weigh in favor of finding fair use and some may weigh against a finding of fair use. In addition, each factor is not always entitled to equal weight. This is not a counting exercise, where three factors in favor of fair use always outweigh one factor against fair use.

Moreover, these are not the only factors that you may consider. In deciding whether to consider any other factors based on the evidence and circumstances presented to you in this case, you should be guided by the policy underlying the fair use doctrine, which is to permit limited copying from copyrighted works in specific circumstances that authors reasonably expect and that allow productive use of the work without unfairly undermining the protection afforded by copyright law.

1130355.01

1

### **<u>Final Instruction No. 60 re Copyright—Affirmative Defense: Merger</u>**

2

To show that Cisco's copyrighted works are subject to merger, Arista must show that, at

3 the time Cisco created the works, Cisco had only one way, or very few ways, to express the ideas

4 underlying the elements of Cisco's copyrighted user interfaces or technical manuals. Material in

5 an original work—even material that serves a function—is not subject to merger as long as the

6 author had more than a few ways to express the underlying idea.

7

Arista has the burden of proving this defense by a preponderance of the evidence.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1130355.01

1

**<u>Final Instruction No. 61 re Copyright—Affirmative Defense: Scènes À Faire</u>**

2

Scènes à faire is an affirmative defense to copyright infringement.

3

To show that portions of Cisco's user interfaces are scènes à faire material, Arista must

4 show that, at the time Cisco created the user interfaces—not at the time of any copying—external

5 factors other than Cisco's creativity dictated that Cisco select, arrange, organize and design its

6 original features in the manner it did. The scènes à faire doctrine depends on the circumstances

7 presented to the creator at the time of creation, not the circumstances presented to the copier at the

8 time it copied.

9

Arista has the burden of proving this defense by a preponderance of the evidence.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1130355.01

1    **<u>Final Instruction No. 62 re Copyright—Affirmative Defense: Copyright Misuse</u>**

2        Arista claims it is not liable for copyright infringement because Cisco misused its

3    copyrights. While the Copyright Act gives a copyright owner a limited monopoly in a copyrighted

4    work, the owner's attempts to extend the scope of this monopoly may under certain circumstances

5    constitute misuse. If you find that Cisco misused its copyrights, it cannot assert an infringement

6    claim against Arista.

7        To prevail upon its claim that Cisco misused its copyrights, Arista must prove that Cisco

8    attempted to use the existence of its copyrights to prevent Arista from using unprotected elements

9    of the copyrighted work, or to prevent Arista from undertaking activity safeguarded by public

10   policy, such as the policies supporting fair use.

11       Arista has the burden of proof to establish Cisco's copyright misuse by a preponderance of

12   the evidence.

1

2

### **Final Instruction No. 64 re Copyright—Damages**

3    It is the duty of the Court to instruct you about the measure of damages. By instructing you

4 on damages, the Court does not mean to suggest for which party your verdict should be rendered.

5    If you find for Cisco on its copyright infringement claim, you must determine Cisco's

6 damages. Cisco is entitled to recover the actual damages suffered as a result of the infringement.

7 In addition, Cisco is also entitled to recover any of Arista's profits attributable to the infringement,

8 to the extent you did not already account for those profits in determining Cisco's actual damages.

9 Cisco must prove damages by a preponderance of the evidence.

10    It is for you to determine what damages, if any, have been proved. Your award must be

11 based upon evidence and not upon speculation, guesswork or conjecture.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1130355.01

## **Final Instruction No. 65 re Copyright—Actual Damages**

Cisco is entitled to recover the actual damages suffered as a result of Arista's infringement. Actual damages means the amount of money adequate to compensate the copyright owner for the reduction in the fair market value of the copyrighted work caused by the infringement. Actual damages may be measured by the profits of the copyright owner lost due to the infringement, referred to as "lost profits." In this case, actual damages in the form of lost profits are the amount that Cisco would have earned but for Arista's infringement.

1130355.01

## Final Instruction No. 66 re Copyright—Infringer's Profits

In addition to actual damages, Cisco is entitled to any profits of Arista attributable to the infringement. You may not include in an award of profits any amount that you took into account in determining actual damages. You may make an award of Arista's profits only if you find that Cisco showed a causal relationship between the profits it seeks and the copyright infringement. In this case, because Cisco seeks only direct profits, Cisco may satisfy its burden by showing that the profits it seeks to recover derive directly from sales of the infringing products. Arista's gross revenue is all of Arista's revenue directly from the sale of any products containing or using Cisco's copyrighted works. Cisco has the burden of proving Arista's gross revenue by a preponderance of the evidence.

If Cisco establishes a causal relationship between the profits it seeks and the infringement, the burden shifts to Arista to prove deductible expenses and the portion of its profit attributable to factors other than infringing the copyrighted work.

Deductible expenses are the portion of Arista's operating costs, overhead costs, and production costs incurred by Arista in producing Arista's gross revenue from the infringing products. Arista has the burden of proving its expenses by a preponderance of the evidence.

Unless you find that a portion of the profit from the sale of a product containing or using Cisco's copyrighted works is attributable to factors other than the copyrighted works, all of the profit is to be attributed to the infringement.

Arista's profits do not need to be calculated with mathematical or absolute exactness by either Cisco or Arista. The law requires only a reasonable approximation of an infringer's profits as a basis for determining the proper amount of damages.

1130355.01

**<u>Final Instruction No. 70 re Patent—Interpretation Of Patent Claims</u>**

Before you decide whether Arista has infringed the claims of the patent, you will need to understand the patent claims. The patent claims are numbered sentences at the end of the patent that describe the boundaries of the patent's protection. It is my job as judge to explain to you the meaning of any language in the claims that needs interpretation.

I have interpreted the meaning of some of the language in the patent claims involved in this case. You must accept those interpretations as correct. These interpretations were handed to you at the start of the trial. For any claim term for which I have not provided you a definition, you should apply the plain and ordinary meaning of that term, as understood by one of ordinary skill in the art. My interpretation of the language should not be taken as an indication that I have a view regarding the issue of infringement. The decision regarding infringement is yours to make.

I have made the following claim interpretations of terms found within the Asserted Claims:

For the phrase "management programs" in the '526 patent claims, I instruct you to interpret that to mean the following: "tools or agents configured to execute user-directed commands having their own respective command formats that provide management functions."

For the phrase "generic command" in the '526 patent claims, I instruct you to interpret that to mean the following: "command that provides an abstraction of the tool-specific command formats and syntax, enabling a user to issue the command based on the relative functions, as opposed to the specific syntax for a corresponding tool."

For the phrase "command parse tree" in the '526 patent claims, I instruct you to interpret that to mean the following: "a hierarchal data structure."

The following phrase appears in certain claims of the '526 patent: "the command parse tree having elements each specifying at least one corresponding generic command component and a corresponding at least one command action value." Within that phrase, for the term "command action value," I instruct you to interpret that to mean "a value that identifies a prescribed command." For the larger phrase, I instruct you to interpret it to mean "the command parse tree having elements, such that each element specifies at least one command action value for each generic command component."

1

**<u>Final Instruction No. 72 re Patent—Patent Infringement: Burden Of Proof</u>**

2

    I will now instruct you on the rules you must follow in deciding whether Cisco has proven

3

that Arista has infringed one or more of the asserted claims of the '526 patent. To prove

4

infringement of any claim, Cisco must persuade you that it is more likely than not that Arista has

5

infringed that claim.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1130355.01

**Final Instruction No. 73 re Patent—Direct Infringement of a Patent**

A patent's claims define what is covered by the patent. A product or method directly infringes a patent if it is covered by at least one claim of the patent.

Deciding whether a claim has been directly infringed is a two-step process. The first step is to decide the meaning of the patent claim. I have already made this decision, and I have already instructed you as to the meaning of the asserted patent claims. The second step is to decide whether Arista has made, used, sold, offered for sale or imported within the United States a product or service covered by a claim of the '526 patent. If it has, it infringes. You, the jury, make this decision.

You must consider each of the asserted claims of the patent individually, and decide whether Arista's products or services infringe that claim.

You have heard evidence about both Cisco's commercial products and Arista's accused products and services. However, in deciding the issue of infringement you may not compare Arista's accused products and services to Cisco's commercial products. Rather, you must compare Arista's accused products and services to the claims of the '526 patent when making your decision regarding infringement.

Whether or not Arista knew its products or services infringed or even knew of the patent does not matter in determining direct infringement.

## Final Instruction No. 74 re Patent—Literal Infringement Of A Patent

To decide whether Arista's products and services literally infringe a claim of the '526 patent, you must compare that product or service with the patent claim and determine whether every requirement of the claim is included in that product or service. If so, Arista's product or service literally infringes that claim. If, however, Arista's product or service does not have every requirement in the patent claim, Arista's product or service does not literally infringe that claim. You must decide literal infringement for each asserted claim separately.

If the patent claim uses the term "comprising," that patent claim is to be understood as an open claim. An open claim is infringed as long as every requirement in the claim is present in Arista's product or service. The fact that Arista's product or service also includes other parts or steps will not avoid infringement, as long as it has every requirement in the patent claim.

1130355.01

### Final Instruction No. 77 re Patent—Contributory Patent Infringement

Cisco also contends that Arista has contributed to infringement by another. Contributory infringement may arise when someone supplies something that is used to infringe one or more of the patent claims. Contributory infringement is a form in indirect infringement.

In order for there to be contributory infringement by Arista, someone other than Arista must directly infringe a claim of the '526 patent; if there is no direct infringement by anyone, there can be no contributory infringement.

If you find someone has directly infringed the '526 patent, then contributory infringement exists if:

1. Arista supplied an important component of the infringing part of the product or service;

2. The component is not a common component suitable for non-infringing use; and

3. Arista supplied the component with the knowledge of the '526 patent and knowledge that the component was especially made or adapted for use in an infringing manner.

A "common component suitable for non-infringing use" is a component that has uses other than as a component of the patented product or other than in the patented method, and those other uses are not occasional, farfetched, impractical, experimental, or hypothetical.

**Final Instruction No. 78 re Patent—Inducing Patent Infringement**

Cisco argues that Arista has actively induced another to infringe the '526 patent. In order for Arista to have induced infringement, Arista must have induced another to directly infringe a claim of the '526 patent; if there is no direct infringement by anyone, there can be no induced infringement. Induced infringement is a form of indirect infringement.

In order to be liable for inducing infringement, Arista must have:

1.  Intentionally taken action that actually induced direct infringement;

2.  Been aware of the '526 patent; and

3.  Known that the acts it was causing would infringe the patent.

Arista may be considered to have known that the acts it was causing would infringe the '526 patent if it subjectively believed there was a high probability that the direct infringer's product or method was patented and nevertheless deliberately took steps to avoid learning that fact, in other words, willfully blinded itself to the infringing nature of the direct infringer's acts.

1

### Final Instruction No. 79 re Patent—Willful Patent Infringement

2    In this case, Cisco argues that Arista willfully infringed the '526 Patent by selling "EOS+"

3  after Cisco filed its complaint. To prove willful infringement against Arista, Cisco must first

4  persuade you that Arista infringed a claim of Cisco's patent. The requirements for proving such

5  infringement were discussed in my prior instructions.

6    To prove willful infringement of a patent, Cisco must persuade you by a preponderance of

7  the evidence that Arista had knowledge of the patent at issue and acted in bad faith, wantonly,

8  maliciously, deliberately, consciously wrongfully, flagrantly, or with reckless disregard of any of

9  the Asserted Claims of any of the '526 Patent. You must base your verdict on the knowledge and

10  actions of Arista at the time the infringement happened. Infringement alone is not enough to prove

11  willfulness and mere knowledge of the '526 Patent at the time of infringement is not enough to

12  prove willfulness. Additionally, to prove that the sale of EOS+ is an act of willful infringement,

13  Cisco must persuade you that EOS+ is a new product compared to EOS.

14    You should consider all of the circumstances including the motive or intent of Arista in

15  developing and selling the accused products, whether Arista knew or should have known that its

16  conduct was unreasonably risky and whether Arista had a reasonable belief at the time of the

17  alleged infringement that its products did not infringe any of the Asserted Claims of the '526

18  Patent.

19

20

21

22

23

24

25

26

27

28

## **Final Instruction No. 84 re Patent—Damages: Burden Of Proof**

I will instruct you about the measure of damages for Cisco's patent claim. By instructing you on damages, I am not suggesting which party should win on any issue. If you find that Arista infringed any claim of the '526 patent, you must then determine the amount of money damages to be awarded to Cisco to compensate it for the infringement.

The amount of those damages must be adequate to compensate Cisco for the infringement. A damages award should put the patent holder in approximately the financial position it would have been in had the infringement not occurred, but in no event may the damages award be less than a reasonable royalty. You should keep in mind that the damages you award are meant to compensate Cisco and not to punish Arista.

Cisco has the burden to persuade you of the amount of its damages. You should award only those damages that Cisco more likely than not suffered. While Cisco is not required to prove its damages with mathematical precision, it must prove them with reasonable certainty. Cisco is not entitled to damages that are remote or speculative.

**<u>Final Instruction No. 85 re Patent—Damages In The Form Of A Reasonable Royalty:</u>**

**<u>Definition of a "Reasonable Royalty"</u>**

A royalty is a payment made to a patent holder in exchange for the right to make, use or sell the claimed invention. This right is called a "license." A reasonable royalty is the payment for the license that would have resulted from a hypothetical negotiation between the patent holder and the infringer taking place at the time when the infringing activity first began. In considering the nature of this negotiation, you must assume that the patent holder and the infringer would have acted reasonably and would have entered into a license agreement. You must also assume that both parties believed the patent was valid and infringed. Your role is to determine what the result of that negotiation would have been. The test for damages is what royalty would have resulted from the hypothetical negotiation and not simply what either party would have preferred.

One way to calculate a royalty is to determine a one-time lump sum payment that the infringer would have paid at the time of the hypothetical negotiation for a license covering all sales of the licensed product for some period of time. That period of time may include both past and future sales. When a one-time lump sum is paid, the infringer pays a single price for a license covering both past and future infringing sales.

1

## **Final Instruction No. 86 re Patent—Damages: Date Of Commencement**

2     Damages that Cisco may be awarded by you commence on the date that Arista has both

3   infringed and been notified of the '526 patent. In this case, Cisco and Arista agree that date was

4   December 5, 2014.

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1130355.01

**<u>Final Instruction No. 88 re Duty To Deliberate</u>**

Before you begin your deliberations, elect one member of the jury as your presiding juror. That person will preside over the deliberations and serve as the spokesperson for the jury in court.

You shall diligently strive to reach agreement with all of the other jurors if you can do so. Your verdict must be unanimous.

Each of you must decide the case for yourself, but you should do so only after you have considered all of the evidence, discussed it fully with the other jurors, and listened to their views.

It is important that you attempt to reach a unanimous verdict but, of course, only if each of you can do so after having made your own conscientious decision. Do not be unwilling to change your opinion if the discussion persuades you that you should. But do not come to a decision simply because other jurors think it is right, or change an honest belief about the weight and effect of the evidence simply to reach a verdict.

1130355.01

### Final Instruction No. 89 re Conduct Of The Jury

Because you must base your verdict only on the evidence received in the case and on these instructions, I remind you that you must not be exposed to any other information about the case or to the issues it involves. Except for discussing the case with your fellow jurors during your deliberations:

Do not communicate with anyone in any way and do not let anyone else communicate with you in any way about the merits of the case or anything to do with it. This includes discussing the case in person, in writing, by phone or electronic means, via email, via text messaging, or any Internet chat room, blog, website or application, including but not limited to Facebook, YouTube, Twitter, Instagram, LinkedIn, Snapchat, or any other forms of social media. This applies to communicating with your family members, your employer, the media or press, and the people involved in the trial. If you are asked or approached in any way about your jury service or anything about this case, you must respond that you have been ordered not to discuss the matter and to report the contact to the court.

Do not read, watch, or listen to any news or media accounts or commentary about the case or anything to do with it; do not do any research, such as consulting dictionaries, searching the Internet, or using other reference materials; and do not make any investigation or in any other way try to learn about the case on your own. Do not visit or view any place discussed in this case, and do not use Internet programs or other devices to search for or view any place discussed during the trial. Also, do not do any research about this case, the law, or the people involved—including the parties, the witnesses or the lawyers—until you have been excused as jurors. If you happen to read or hear anything touching on this case in the media, turn away and report it to me as soon as possible.

These rules protect each party's right to have this case decided only on evidence that has been presented here in court. Witnesses here in court take an oath to tell the truth, and the accuracy of their testimony is tested through the trial process. If you do any research or investigation outside the courtroom, or gain any information through improper communications, then your verdict may be influenced by inaccurate, incomplete or misleading information that has not been

tested by the trial process. Each of the parties is entitled to a fair trial by an impartial jury, and if you decide the case based on information not presented in court, you will have denied the parties a fair trial. Remember, you have taken an oath to follow the rules, and it is very important that you follow these rules.

A juror who violates these restrictions jeopardizes the fairness of these proceedings. If any juror is exposed to any outside information, please notify the court immediately.

### Final Instruction No. 90 re Communication With Court

If it becomes necessary during your deliberations to communicate with me, you may send a note through the marshal, signed by your presiding juror or by one or more members of the jury. No member of the jury should ever attempt to communicate with me except by a signed writing; I will communicate with any member of the jury on anything concerning the case only in writing, or here in open court. If you send out a question, I will consult with the parties before answering it, which may take some time. You may continue your deliberations while waiting for the answer to any question. Remember that you are not to tell anyone—including me—how the jury stands, numerically or otherwise, until after you have reached a unanimous verdict or have been discharged. Do not disclose any vote count in any note to the court.

1130355.01

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Final Instruction No. 91 re Return Of Verdict**

A verdict form has been prepared for you. After you have reached unanimous agreement on a verdict, your presiding juror should complete the verdict form according to your deliberations, sign and date it, and advise the clerk that you are ready to return to the courtroom.

1130355.01

## **Final Instruction No. 93 re Copyright—Abandonment**

Arista contends that a copyright does not exist in Cisco's works because Cisco abandoned the copyrights. Cisco cannot claim ownership of the copyright if it was abandoned. In order to show abandonment, Arista has the burden of proving each of the following by a preponderance of the evidence:

1. Cisco intended to surrender rights in the work; and

2. An act by Cisco evidencing that intent.


Mere inaction does not constitute abandonment of the copyright; however, this may be a factor for you to consider in determining whether Cisco has abandoned the copyright.