Kathleen Sullivan (SBN 242261)
kathleensullivan@quinnemanuel.com
QUINN EMANUEL URQUHART &
SULLIVAN LLP
51 Madison Avenue, 22nd Floor
New York, NY 10010
Telephone: (212) 849-7000
Facsimile: (212) 849-7100

Sean S. Pak (SBN 219032)
seanpak@quinnemanuel.com
Amy H. Candido (SBN 237829)
amycandido@quinnemanuel.com
John M. Neukom (SBN 275887)
johnneukom@quinnemanuel.com.
QUINN EMANUEL URQUHART &
SULLIVAN LLP
50 California Street, 22nd Floor
San Francisco, CA 94111
Telephone: (415) 875-6600
Facsimile: (415) 875-6700

David Nelson (admitted pro hac vice)
davenelson@quinnemanuel.com
QUINN EMANUEL URQUHART &
SULLIVAN LLP
500 W Madison St, Suite 2450
Chicago, IL 60661
Telephone: (312) 705-7465
Facsimile: (312) 705 7401

Steven Cherny (admitted pro hac vice)
steven.cherny@kirkland.com
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900

Adam R. Alper (SBN 196834)
adam.alper@kirkland.com
KIRKLAND & ELLIS LLP
555 California Street
San Francisco, California 94104
Telephone: (415) 439-1400
Facsimile: (415) 439-1500

Michael W. De Vries (SBN 211001)
michael.devries@kirkland.com
KIRKLAND & ELLIS LLP
333 South Hope Street
Los Angeles, California 90071
Telephone: (213) 680-8400
Facsimile: (213) 680-8500

Attorneys for Plaintiff Cisco Systems, Inc.

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION**

| | |
|---|---|
| CISCO SYSTEMS, INC.,<br><br>Plaintiff,<br><br>vs.<br><br>ARISTA NETWORKS, INC.,<br><br>Defendant. | CASE NO. 5:14-cv-5344-BLF (NC)<br><br>**TRIAL BRIEF IN SUPPORT OF CISCO'S RULE 50(a) MOTION FOR JUDGMENT AS A MATTER OF LAW**<br><br>Dept: Courtroom 3 - 5th Floor<br>Judge: Hon. Beth Labson Freeman |

1

## TABLE OF CONTENTS

2    I.      LEGAL STANDARD ...................................................................................... 2

3    II.     THE COURT'S PRIOR RULINGS ................................................................ 2

4    III.    CISCO IS ENTITLED TO JMOL ON COPYRIGHT INFRINGEMENT ......................... 3

5            A.      No Reasonable Jury Could Find That Arista Did Not Infringe Cisco's User
                     Interfaces ......................................................................................................... 3

6
                     1.      Cisco Is Entitled To A Finding That Its User Interfaces Are
7                            Sufficiently In Evidence ...................................................................... 3

8                    2.      Cisco Is The Owner Of Valid Copyrights In Its User Interfaces ................. 6

9                    3.      Arista Copied Original, Protected Expression From Cisco's User
                             Interfaces ...................................................................................... 8
10
                     4.      Arista's Copying Was More Than *De Minimis* ...................................... 10
11
             B.      No Reasonable Jury Could Find That Arista Did Not Infringe Cisco's
12                   Technical Manuals ............................................................................................ 10

13   IV.     CISCO IS ENTITLED TO JMOL ON ARISTA'S AFFIRMATIVE DEFENSES
             TO COPYRIGHT INFRINGEMENT ............................................................... 11
14
             A.      No Reasonable Jury Could Find That Arista's Infringement Was Fair Use .......... 11
15
             B.      No Reasonable Jury Could Find That Arista's Infringement Was Excused
16                   By Merger Or Scènes À Faire ........................................................................ 13

17           C.      No Reasonable Jury Could Find That Arista's Infringement Was Excused
                     By Copyright Misuse Or Abandonment ............................................................. 14
18
     V.      CISCO IS ENTITLED TO JMOL ON ITS PATENT INFRINGEMENT CLAIMS ......... 15
19
             A.      Arista Directly and Indirectly Infringes Claims 1 and 14 of U.S. Patent No.
20                   7,047,526 ..................................................................................................... 15

21           B.      Arista's Infringement Of The '526 Patent Was Willful ...................................... 15

22   VI.     CISCO IS ENTITLED TO JMOL ON DAMAGES ................................................ 16

23           A.      Cisco Proved Copyright Lost Profits Damages Of No Less Than $311
                     Million ........................................................................................................ 16
24
             B.      Cisco Proved Copyright Infringer's Profits Of No Less Than $22 Million ........... 19
25
             C.      Cisco Proved Patent Infringement Damages Of No Less Than $2 Million ........... 20
26
     VII.    CONCLUSION ............................................................................................. 20

27

28

1

2
## **TABLE OF AUTHORITIES**

3
**Page**

4
## **Cases**

5
*Abarca Health, LLC v. PharmPix Corp.*,
   806 F. Supp. 2d 483 (D.P.R. 2011) ...................................................................5

6

7
*Alaska Stock, LLC v. Houghton Mifflin Harcourt Publ'g Co..*,
   747 F.3d 673 (9th Cir. 2014) ..........................................................................4

8
*Am. Geophysical Un. v. Texaco, Inc.*,
   60 F.3d 913 (2d Cir. 1994) ...........................................................................12

9

10
*Antonick v. Electronic Arts, Inc.*,
   2016 WL 6872072 (9th Cir. Nov. 22, 2016) ...................................................6

11
*Brocade Commc'ns Sys., Inc. v. A10 Networks, Inc.*,
   2011 WL 7762998 (N.D. Cal. 2011) ...............................................................7

12

13
*CDN Inc. v. Kapes*,
   197 F.3d 1256 (9th Cir. 1999) ........................................................................7

14
*Data East USA, Inc. v. Epyx, Inc.*,
   862 F.2d 204 (9th Cir. 1988) ..........................................................................5

15

16
*Ets-Hokin v. Skyy Spirits, Inc.*,
   225 F.3d 1068 (9th Cir. 2000) ........................................................................7

17
*Feist Publ'ns, Inc. v. Rural Telephone Serv. Co.*,
   499 U.S. 340 (1991) ........................................................................................7

18

19
*Fisher v. Dees*,
   794 F.2d 432 (9th Cir. 1986) ........................................................................10

20
*Kelly v. Arriba Soft Corp.*,
   336 F.3d 811 (9th Cir. 2003) ..................................................................12, 13

21

22
*Lakeside-Scott v. Multnomah Cty.*,
   556 F.3d 797 (9th Cir. 2009) ..........................................................................2

23
*Latele Television, C.A. v. Telemundo Commc'ns Grp., LLC*,
   2015 WL 427817 (S.D. Fla. Feb. 2, 2015) ....................................................4

24

25
*Mfrs. Techs., Inc. v. Cams, Inc.*,
   706 F. Supp. 984 (D. Conn. 1989) .................................................................5

26
*Newton v. Diamond*,
   349 F.3d 591 (9th Cir. 2003) ..........................................................................9

27
*Norse v. Henry Holt & Co.*,
   991 F.2d 563 (9th Cir. 1993) ..........................................................................8

28

*Oracle Am., Inc. v. Google Inc.*,
    No. 3:10-cv-3561 (N.D. Cal. June 8, 2016) .............................................................12

*VMG Salsoul, LLC v. Ciccone*,
    824 F.3d 871 (9th Cir. 2016).............................................................................3, 8

*Well-Made Toy Mfg. v. Goffa Int'l*,
    210 F. Supp. 2d 147 (E.D.N.Y. 2002)...................................................................7

*Zella v. E.W. Scripps Co.*,
    529 F. Supp. 2d 1124 (C.D. Cal. 2007).................................................................4

### Statutes

Fed. R. Civ. P. 50(a)...........................................................................................1, 2, 20

Fed. R. Civ. P. 50(a)(1) ...............................................................................................2

### Other Authorities

William F. Patry, PATRY ON FAIR USE § 3:1 (2016) ....................................................12

1

**NOTICE OF MOTION**

2

Pursuant to the motion made by Plaintiff Cisco Systems, Inc. ("Cisco") before the Court on

3 December 9, 2016 (Tr. 2638:6-14) and deemed timely filed by the Court (Tr. 2639:2-6, 20-22) without

4 objection from Arista (Tr. 2640:1-8), Cisco respectfully moves the Court for an order granting Cisco

5 judgment as a matter of law ("JMOL") pursuant to Fed. R. Civ. P. 50(a) as to both its copyright and

6 patent claims.[1] This motion is based on this notice of motion and the supporting memorandum that

7 follows, the trial record, and such other argument as was presented and may be presented before this

8 motion is taken under submission by the Court.

9

**RELIEF REQUESTED**

10

Cisco respectfully seeks an order granting JMOL under Rule 50(a) on Cisco's claims for relief

11 brought against Arista Networks, Inc. ("Arista") on the issues of copyright infringement, patent

12 infringement, and damages for Arista's copyright and patent infringement. Cisco also seeks JMOL

13 that Arista failed to prove its affirmative defenses to copyright infringement.

14

**MEMORANDUM OF POINTS AND AUTHORITIES**

15

At the close of evidence, Cisco has satisfied its burdens on both its copyright and patent

16 claims, Arista has failed to rebut that showing, and Arista has further failed to carry its burden on any

17 of its affirmative defenses to the claims of copyright infringement in this case. Accordingly, Cisco is

18 now entitled to judgment as a matter of law pursuant to Fed. R. Civ. P. 50(a).

19

As to Cisco's copyright infringement claims, no reasonable jury could find on this record that

20 Cisco has not satisfied its burden of proof by the preponderance of the evidence that Arista infringed

21 Cisco's copyrighted user interfaces and technical manuals. The undisputed evidence demonstrates

22 that: (1) Cisco owns a valid copyright in the user interfaces and technical manuals at issue; (2) Arista

23 copied original, protected elements of Cisco's user interfaces and technical manuals; and (3) Arista's

24 copying from each work was more than *de minimis*. Further, no reasonable jury could find on this

25 record that Arista satisfied its burden of proof by the preponderance of the evidence on any of its

26 affirmative defenses to copyright infringement. Finally, no reasonable jury could find that Cisco has

27

---

[1]   All citations herein to "Tr." are to the trial transcript, and all citations herein to "Ex." are to

28 exhibits admitted into evidence at trial.

not established entitlement to an actual damages award of at least $311 million in lost profits, as well as an infringer's profits award of at least $22 million.

As to Cisco's patent infringement claims, no reasonable jury could find on this record that Cisco has not satisfied its burden of proof by the preponderance of the evidence that Arista infringed claims 1 and/or 14 of the '526 patent. Cisco presented undisputed evidence that Arista directly infringed, contributorily infringed, and induced infringement of both claims 1 and 14 of the '526 patent, even though only one such finding is necessary for liability. Further, no reasonable jury could find that Cisco has not established entitlement to a patent damages award of at least $2 million. Nor could a reasonable jury find that Arista's patent infringement was not willful.

## I.    LEGAL STANDARD

A district court may grant judgment as a matter of law pursuant to Rule 50(a) where "a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue." Fed. R. Civ. P. 50(a)(1). Under Ninth Circuit law, this standard is met, and judgment as a matter of law is proper, "when the evidence permits only one reasonable conclusion." *Lakeside-Scott v. Multnomah Cty.*, 556 F.3d 797, 802 (9th Cir. 2009) (internal citations omitted).

## II.    THE COURT'S PRIOR RULINGS

There are certain issues on which the Court has already ruled in this case as a matter of law. Cisco reserves its continued right to contest these rulings in whole or in part but assumes them to be governing for purposes of this motion. These rulings include: (1) the copyrighted works at issue are Cisco's four user interfaces for IOS, IOS-XR, IOS-XE, and NX-OS, as well as certain technical manuals (Tr. 112:2-5; Jury Inst. 25); (2) each of the four asserted "building blocks" of Cisco's user interfaces—multiword command expressions; modes and prompts; screen outputs/responses; and help descriptions—is individually protectable as a compilation (ECF 719 at 11, 14-16); (3) each of Cisco's user interfaces, as a whole, is protectable as a compilation of those building blocks (ECF 719 at 17-18); and (4) Cisco is entitled to protection for each technical manual as a compilation (ECF 719 at 16-17, 19).

1    In addition, the Court ruled that each of Cisco's building blocks, as well as each entire user

2    interface and each technical manual, deserve only "thin" protection.  ECF 719 at 17-19.  Thus, the

3    Court concluded that Cisco's asserted works are to be compared for virtually identical copying.  *Id.* at

4    19-20.  Notwithstanding Cisco's objection to this standard as inapplicable in this case,[2] even assuming

5    it applies, Cisco is entitled to judgment as a matter of law on its copyright claims.

6    **III.    CISCO IS ENTITLED TO JMOL ON COPYRIGHT INFRINGEMENT**

7    Cisco is entitled to judgment as a matter of law on its claims of copyright infringement of its

8    user interfaces and technical manuals because no reasonable jury could find, based on the evidentiary

9    trial record, that Cisco has not satisfied its burden of proof that Arista infringed those copyrighted

10   works, or that Arista proved any of its copyright affirmative defenses.

### A.    No Reasonable Jury Could Find That Arista Did Not Infringe Cisco's User Interfaces

13   To succeed on its claim of copyright infringement, Cisco must prove by a preponderance of

14   the evidence that: (1) Cisco is the owner of a valid copyright; and (2) Arista copied original,

     protectable expression from Cisco's copyrighted work.  Jury Inst. 29.  For such copying to be

16   actionable, Cisco must prove that Arista copied qualitatively or quantitatively a more than *de minimis*

17   portion of Cisco's work as a whole.  Jury Inst. 41; *VMG Salsoul, LLC v. Ciccone*, 824 F.3d 871, 877

     (9th Cir. 2016).  No reasonable jury could find that Cisco did not satisfy these elements.

### 1.    Cisco Is Entitled To A Finding That Its User Interfaces Are Sufficiently In Evidence

20   At the outset, and contrary to Arista's suggestions, Cisco sufficiently placed the contents of its

21   user interfaces into evidence, allowing the jury to fairly assess Cisco's entire user interfaces as a

22   whole and compare them to Arista's user interfaces.  The Court should thus find as a matter of law

23   that Cisco's user interfaces are sufficiently in evidence.

24   *First*, Cisco placed into evidence the contents of the entirety of its own user interfaces and

25   Arista's user interfaces by submitting the technical manuals for those user interfaces.  *See* Ex. 4803

---

[2]    Cisco preserved its objection to the Court's rulings that: (1) its asserted elements and works deserved "thin" protection; and (2) the proper standard is for virtual identity.  Tr. 2407:20-2408:23.

1  (Cisco technical manuals);[3] Exs. 1-15 (Arista technical manuals).  These technical documents provide

2  extensive and best evidence of the contents of the user interfaces at issue—they effectively include the

3  entirety of the user interfaces, including, *e.g.*, commands, modes and prompts, and screen responses

4  available to customers.  These technical documents are how Cisco's and Arista's customers learn

5  about the entirety of each user interface and how to interact with them.  *See, e.g.*, Tr. 755:25-756:15

6  (Slattery).  As the Court has already ruled (Tr. 111:17-112:5), the United States Copyright Office

7  registered Cisco's user interfaces as copyrighted works on the basis of the contents of Exhibit 4803.

8  The Ninth Circuit has explained that "[t]he Register of Copyrights does not perform a mere clerical

9  function of recording applications.  Instead, the Register makes a judgment after examining an

10  application," and if she "determines that the requirement of the statute are met, she registers the claim

11  and issues a certificate, as she did in this case."  *Alaska Stock, LLC v. Houghton Mifflin Harcourt*

12  *Publ'g Co.*, 747 F.3d 673, 683 (9th Cir. 2014) (internal quotation mark omitted).  The materials in

13  Exhibit 4803 were sufficient for the Register to carry out her statutory duties by registering Cisco's

14  works, *see* 17 U.S.C. § 410(a), and are proper and sufficient evidence of Cisco's user interfaces for the

15  jury.

16  Because these technical documents are the best evidence of the contents of the user interfaces

17  at issue, and because they are indisputably amenable to being evaluated, Cisco has put forth sufficient

18  evidence of its works as a whole.[4]  In addition, there is testimony as to the contents of Cisco's user

19  interfaces, including what customers experience when they interact with them.  *See, e.g.*, Tr. 506:12-

20  509:5 (Lougheed); 678:11-679:21 (Remaker); 1219:4-1224:23 (Almeroth).

21

22

---

23  [3]   Ex. 4803 is a thumb drive that includes all of the materials submitted to the Copyright Office in connection with Cisco's obtaining a copyright registration in the relevant user interfaces, including (1)

24  all of the relevant technical manuals; and (2) many pages of source code, as required by the Copyright Office.

25  [4]   Arista cannot dispute that the technical manuals sufficiently represent the user interfaces.  *See, e.g.*, *Latele Television, C.A. v. Telemundo Commc'ns Grp., LLC*, 2015 WL 427817, at *10 (S.D. Fla.

26  Feb. 2, 2015) (reasonable factfinder may assess substantial similarity based on "representative samples of the work, rather than being required to look at all [376] episodes"); *Zella v. E.W. Scripps*

27  *Co.*, 529 F. Supp. 2d 1124, 1132 (C.D. Cal. 2007) (evaluating infringement claim based on eight episodes of 150-episode series because the Court was "satisfied that the eight episodes … accurately

28  reflect the content" of the series).

That evidence surpasses the evidence of works as a whole found sufficient in analogous cases. For example, in *Data East USA, Inc. v. Epyx, Inc.*, 862 F.2d 204 (9th Cir. 1988), the owner of the copyright in the audio-visuals of a karate video game alleged that the defendant's karate video game infringed the "overall appearance, compilation and sequence of the audio-visual display" of the plaintiff's work. *Id.* at 205-06. On appeal, the defendant claimed that there had not been sufficient evidence to establish the contents of the plaintiff's work at trial because, "[a]s evidence of the arcade game's audio-visual work, plaintiff submitted still photographs. Plaintiff did not produce in court the arcade game itself or a video reproduction of the arcade game." *Id.* at 207. The defendant further argued that nothing prohibited plaintiff from putting "the ***entire*** audio-visual work before the court." *Id.* (emphasis added). The Ninth Circuit rejected the challenge, ruling:

> The issue here, then, is whether sufficient evidence to support the district court's findings as to the contents of the arcade game's audio-visual work was present. Along with the photographs, testimony as to the content of the original was also presented. We find the still photographs which depict all images and all moves that occur when the game sequences through the various skill levels, along with testimony, ***to constitute sufficient evidence of the contents of the arcade game's audio-visual work to make a fair comparison with Epyx's game***.

*Id.* at 207 (emphasis added). The same applies here—Cisco's extensive evidence, including its technical manuals (which are, at a minimum, the text-based analog of a photograph), as well as the testimony elicited, "constitute sufficient evidence of the contents of [Cisco's user interfaces] to make a fair comparison with [Arista's user interfaces]."

*Second*, because Cisco does not claim that Arista infringed its source code, there is no basis for Arista to require Cisco to submit a trove of source code to the jury for inspection—the jury is not being asked to evaluate or compare source code. As this Court ruled, the relevant "works" at issue are Cisco's user interfaces, which are separate and distinct works from their source code even though both are included in a single registration. Tr. 112:2-5; *see id.* at 111:9-112:2; *Mfrs. Techs., Inc. v. Cams, Inc.*, 706 F. Supp. 984, 993 (D. Conn. 1989)); Jury Inst. 25. To require Cisco to put that non-asserted source code into evidence would disregard that ruling. For example, in *Abarca Health, LLC v. PharmPix Corp.*, 806 F. Supp. 2d 483 (D.P.R. 2011), a plaintiff asked for a defendant's source code in connection with a claim of copyright infringement in its software. The court ruled that, to the extent

1  the plaintiff alleged infringement of non-literal elements of its work (such as its user interface), such

2  source code was irrelevant:

> plaintiffs do not need the Source Code in order to adduce evidence of similarities between **non**-literal elements of the two works (such as a graphical user interface or menu structure). Thus, even if relevant, compelling disclosure of the Source Code as evidence of copying of non-literal elements would be unnecessary and would merely burden defendants without commensurate benefit.

6  *Id.* at 491. Similarly here, submission of the source to the jury would be "without commensurate

7  benefit"—even if the jury had the source code, it would offer it no help in assessing the **user**

8  **interfaces**. Further, Arista repeatedly objected at trial to any discussion of source code. *E.g.*, ECF

9  686, 690, 694; Tr. 1316:14-25. Arista has thus waived any argument that source code is now relevant.

10  *Third*, Arista ignores that Cisco's user interfaces—unlike a book or movie—cannot simply be

11  picked up and looked at. Rather, they embody non-literal elements. Further, there is no single

12  product, sold the public, that includes on its own every asserted copied expression (*see, e.g.*, Tr.

13  1070:1-1071:20 (Kathail)); indeed Arista **objected** to Cisco's introduction of specific products

14  embodying elements of Cisco's user interfaces as irrelevant on the basis that such products did not

15  embody the entire work (Tr. 1065:12-1069:21). In any event, it would require an impracticable

16  degree of training for the jury to learn how to use, and then enter every screen of, Cisco's user

17  interfaces on any particular product.

18  *Finally*, to the extent Arista may rely on *Antonick v. Electronic Arts, Inc.*, 2016 WL 6872072

19  (9th Cir. Nov. 22, 2016), that case is inapposite. There, the plaintiff claimed that the defendant

20  infringed his source code, but failed to put in **any** of his source code into evidence. *Id.* at *3. Here, in

21  contrast, Cisco not only put in the actual expressions Arista copied, but also extensive evidence of the

22  contents of the whole user interface. *E.g.*, Ex. 4803. The equivalent to *Antonick* would be if Cisco put

23  in **only** its source code and no evidence of the user interfaces. That didn't happen.

24  ## 2.  Cisco Is The Owner Of Valid Copyrights In Its User Interfaces

25  Having established that Cisco's user interfaces are properly in evidence, Cisco submits that no

26  reasonable jury could find that Cisco is not the owner of valid copyrights in its user interfaces. Cisco

27  is the owner of valid copyrights if it establishes that: (1) the works are original; and (2) Cisco is the

28  author or creator of the works. Jury Inst. 30. Cisco has satisfied both as a matter of law.

1      *First*, Cisco has obtained copyright registrations for its user interfaces, Ex. 4791, which apply

2   to both the overall user interfaces and their subparts, including the four building blocks at issue,

3   providing all such elements with a presumption of ownership and validity.  *See Brocade Commc'ns*

4   *Sys., Inc. v. A10 Networks, Inc.*, 2011 WL 7762998, at *2 (N.D. Cal. 2011) (registration entitled

5   plaintiff to "presumption of validity, and shifts the burden to [defendant] to rebut that the alleged

6   copied elements are not protectable expression"); *Well-Made Toy Mfg. v. Goffa Int'l*, 210 F. Supp. 2d

7   147, 160 (E.D.N.Y. 2002) ("A certificate of registration establishes a presumption that the work ***and***

8   ***its elements*** are original and protectable.") (emphasis added).  No reasonable jury could find this

9   presumption rebutted.

10      *Second*, notwithstanding the presumption, the overwhelming direct evidence in this case makes

11   clear that no reasonable jury could find that the four asserted building blocks, or the user interfaces as

12   a whole, are not original.  A work (including its subparts) is original when it:  (1) is created by the

13   work's author, *i.e.*, not copied from another; and (2) uses at least some minimal creativity.  Jury Inst.

14   32.  Originality requires only a "'minimal'" "'creative spark,'" even for a compilation.  *CDN Inc. v.*

15   *Kapes*, 197 F.3d 1256, 1260 (9th Cir. 1999); *Ets-Hokin v. Skyy Spirits, Inc.*, 225 F.3d 1068, 1076 (9th

16   Cir. 2000) (both quoting *Feist Publ'ns, Inc. v. Rural Telephone Serv. Co.*, 499 U.S. 340, 345 (1991)).

17      Cisco far exceeded that low bar.  Arista's own witnesses' admissions establish that none of

18   Cisco's expressions, as written, had ever existed in a command-line user interface before Cisco first

19   used those expressions.  *E.g.*, Tr. 2212:14-17, 2219:16-18 (Black).  Nor did Arista dispute that Cisco's

20   engineers including created these particular expressions, including through the use of a detailed

21   creative process (*e.g.*, including vetting command expressions through the "parser police" (Tr. 650:5-

22   23, 651:3-14, 652:23-653:7 (Remaker)).

23      While Arista presented evidence that certain isolated words or abbreviations may have existed

24   before Cisco created the works at issue, Arista presented no evidence to dispute—and, in fact, was

25   unable to dispute—that Cisco's own asserted selection and arrangement of any preexisting words had

26   not been employed in any user interface before Cisco's.  *E.g.*, Tr. 2210:11-2211:3 (Black).  In

27   contrast, Cisco presented significant evidence of the origination process for all four asserted "building

28   blocks" at issue.  *E.g.*, Tr. 637:20-23 (Lougheed); 650:7-18 (Remaker); 728:9-14 (Slattery).

1      *Third*, no reasonable jury could find on this record that Cisco's works did not use at least some

2  minimal creativity.  Arista's own witnesses admitted that the creation of expressions in text-based user

3  interfaces is subjective, based on aesthetic preferences, and arbitrary.  *See, e.g.*, Tr. 1015:3-11 (Dale).

4  Further, Arista's evidence confirms that Cisco had multiple ways to communicate its expressions, not

5  only in the selection of words, but also in the sequencing and organization of words to each other, as

6  well as entire expressions to each other.  *E.g.*, Tr. 1013:22-1014:13 (Dale).  Third parties, who were

7  aware of the contents of Cisco's user interface, agreed that they were able to create competing

8  products without wholesale copying of Cisco's expressions—indeed, they actively (and successfully)

9  avoided copying Cisco's protectable expressions.  *E.g.*, Tr. 2060:5-2061:3 (Shafer); Tr. 2077:21-

10  2078:11 (Shafer).  This is confirmed by Cisco's uncontroverted testimony describing its engineers'

11  own subjective, aesthetic decisions in creating the expressions at issue.  *E.g.*, Tr. 652:19-653:7

12  (Remaker).  And while Arista's witnesses attempted to categorize Cisco's expressions as functional,

13  they were not able to dispute that different options were available to Cisco in how to express those

14  functional goals.  *E.g.*, Tr. 800:19-23 (Duda).

        **3.**    **Arista Copied Original, Protected Expression From Cisco's User Interfaces**

15

16      No reasonable jury could disagree that Arista copied original, protectable expression from

17  Cisco's copyrighted works. As the Court is aware, there are two alternative ways to establish copying:

18  (1) direct evidence; and (2) indirect evidence, which is established through a combination of access

19  and substantial similarity or virtual identity between the defendant's work and the original element's

20  of the plaintiff's work. Jury Inst. 36.  Where direct evidence establishes copying, the jury need not

21  even consider indirect evidence of copying.  *VMG Salsoul*, 824 F.3d at 877; *Norse v. Henry Holt &*

22  *Co.*, 991 F.2d 563, 566 (9th Cir. 1993).

23      **Direct Evidence**:  No reasonable jury could fail to find that direct evidence establishes

24  Arista's copying of protectable elements of Cisco's works.  *See Norse*, 991 F.2d at 566 (direct

25  evidence established by defendants' "admi[ssion] that they in fact copied phrases from [plaintiff's]

26  letters").  Extensive documentary evidence (*e.g.*, Ex. 295) and admissions from Arista's own

27  witnesses (*e.g.*, Tr. 781:21-23, 800:9-14 (Duda)) establish conclusive direct evidence of Arista's

28

1    copying of Cisco's user interfaces.  Indeed, Arista admitted to "slavishly" copying Cisco's user

2    interfaces from Cisco sources (*e.g.*, Ex. 203) and putting that copied material directly into Arista's

3    user interface (Tr. 878:1-5 (Duda)), where Arista sold it in direct competition (*e.g.*, Tr. 1008:13-16

4    (Dale)).    Arista further admitted that its placement of core features of Cisco's user interfaces

5    expression into its own product was intentional.  *E.g.*, Tr. 800:9-14 (Duda); 900:17-25 (Sadana).

6    Further, no reasonable jury could fail to find that the portions of Cisco's user interfaces that Arista

7    copied were original and protectable.  *E.g.*, Tr. 652:19-653:7 (Remaker).

8        Having conclusively established via direct evidence that Arista copied original, protected

9    expression from Cisco's user interfaces, Cisco need only show that such taking was not *de minimis* to

10    establish infringement as a matter of law; neither the jury nor the Court need even consider indirect

11    evidence of infringement.  *Newton v. Diamond*, 388 F.3d 1189, 1192-93 (9th Cir. 2004).

12        **Indirect Evidence**:  But should the Court have any doubt, Cisco is also entitled to judgment as

13    a matter of law based on indirect evidence of copying.  To establish indirect evidence, Cisco must

14    show: (1) that Arista had access to Cisco's works (Jury Inst. 38); and (2) that the protectable elements

15    of Cisco's works are virtually identical to the corresponding elements of Arista's works and that both

16    works as a whole have the same total concept and feel. Inst. 39.

17        *First*, it is undisputed that Arista, all of whose key executives formerly worked at Cisco, had

18    access to Cisco's copyrighted works.  Arista's own documents and testimony concede this.  *E.g.*, Ex.

19    189; Tr. 783:3-9 (Duda).

20        *Second*, no reasonable jury could find that Cisco's asserted protectable elements, as defined by

21    this Court, are not virtually identical to the corresponding elements of Arista's works.    The

22    commands, modes and prompts, screen output/responses, and help descriptions Arista copied are in

23    the record (Exs. 4803, 4821, 4800, 4794, 4799), as are Arista's corresponding elements (*e.g.*, Exs. 1-

24    15).  This undisputed evidence confirms that these expressions are essentially identical on a side-by-

25    side comparison.  Arista's witnesses conceded that these expressions are effectively identical.  *E.g.*,

26    Tr. 926:19-927:5 (Sadana); 2222:25-2223:3 (Black).  Nor is there any dispute that these elements are

27    original and protectable, as determined by this Court's rulings and for the reasons set forth above.

28

*Third*, no reasonable jury could find that the total concept and feel of Cisco's user interfaces as a whole, excluding unprotectable elements, are not virtually identical to Arista's works, as the overall concept and feel of the works do not differ by more than a trivial degree. *E.g.*, Exs 1-15, 4803; 4745. As third-party witnesses confirmed, Cisco CLI has a distinctive concept and feel that is instantly recognizable to a reasonable user of a network switch. *E.g.*, Tr. 2063:15-2064:7 (Shafer).  And as noted above, *see supra* Part III.A.1, Cisco's and Arista's user interfaces are properly in evidence.

### 4.     Arista's Copying Was More Than *De Minimis*

Finally, no reasonable jury could fail to find that Arista copied far more than a trivial amount of Cisco's works as a whole.  In assessing whether a taking is *de minimis*, the factfinder looks to the amount taken relative to the ***plaintiff's*** work, not the defendant's.  Jury Inst. 41.  And as noted above, Cisco's entire works are sufficiently in the record to make this comparison.  *See supra* Part III.A.1.

Here, Arista's own witnesses admitted that, as a matter of qualitative and quantitative evaluation, Arista's taking was more than merely trivial—Arista confirmed that it copied the elements of Cisco's user interfaces that it thought customers most desired, and even described itself as a "practical drop-in replacement" for Cisco's user interface "given the 99.999% similarity in the CLI." Ex. 171; *see also, e.g.*, Ex. 545.  Arista failed to controvert Cisco's showing that its copied CLI user interface was one of its most valuable assets.  Ex. 250 (Giancarlo).  Further, Arista conceded that its taking was quantitatively more than trivial.  Exs. 488, 278.  In any event, it cannot be disputed that Cisco's protected elements "would be recognized instantly by anyone familiar with the original,"  and thus cannot be a *de minimis* taking as a matter of law.  *Fisher v. Dees*, 794 F.2d 432, 434 n.2 (9th Cir. 1986).  Arista ***depended*** on that recognition in seeking customers, conceding that it used Cisco's protected expressions specifically because it was already familiar to potential Arista customers.  *E.g.*, Ex. 376; Tr. 914:1-6 (Sadana).

### B.     No Reasonable Jury Could Find That Arista Did Not Infringe Cisco's Technical Manuals

In addition, no reasonable jury could find that Arista did not infringe Cisco's technical manuals.  Arista does not, and cannot, dispute that: (1) the manuals contain original expressions, (*e.g.*, Tr. 767:7-10 (Duda)); (2) the expressions in the manuals exhibit at least minimal creativity, (*e.g.*, Tr.

1239:10-22 (Almeroth)); (3) Cisco is the author of those expressions (*e.g.*, Exs. 4791, 4803) (4) Arista conceded that it copied from the manuals—indeed, it even copied Cisco's typographical errors—which constitutes direct evidence (*e.g.*, Tr. 778:14-779:18 (Duda); 1967:22-1968:9 (Ullal)), and also satisfies the indirect evidence inquiry; and (5) Arista's copying from the technical manuals was more than *de minimis*, (*e.g.*, Exs. 1-15, 4795, 4803).

## IV. CISCO IS ENTITLED TO JMOL ON ARISTA'S AFFIRMATIVE DEFENSES TO COPYRIGHT INFRINGEMENT

No reasonable jury could find that Arista satisfied its burden of proving that its infringement of Cisco's copyrights in its user interfaces is excused by any of its affirmative defenses.  At a minimum, the Court should enter judgment as a matter of law on each of Arista's affirmative defenses as to Cisco's technical manuals, as Arista is not claiming any affirmative defenses as to those acts of copyright infringement.  ECF 731-2 (Verdict Form).

### A. No Reasonable Jury Could Find That Arista's Infringement Was Fair Use

Arista failed to meet its burden to show that its use of Cisco's works was a fair use.   Cisco knows of no other copyright case in which fair use has been used to excuse the blatant copying of a competitor's product for the purpose of head-to-head competition over the same customers for commercial gain in the same product market.  This case should not be the first.

As to the first fair-use factor, it is undisputed that Arista's use of Cisco's works was purely commercial (*e.g.*, Tr. 1925:21-1926:14 (Ullal); Tr. 2238:21-2239:7 (Black)), which weighs strongly against fair use.  Further, no reasonable jury could find Arista's use to be transformative.  For example:

- Arista concedes that it did not change or modify any of Cisco's works when it placed them in its own user interface.  *E.g.*, Exs. 171, 183; Tr. 1807:7-15 (Duda).

- Arista concedes that its user interface directly competed with Cisco for the same customers.  *E.g.*, Tr. 1008:13-16 (Dale); 2340:8-14 (Summers).

- Arista promoted its user interface as being the same as Cisco's, and allowing for a "simple" transition.  *E.g.*, Tr. 2500:15-25 (Sadana).

1    • Arista concedes that it was seeking to supplant Cisco in Ethernet switching markets. *E.g.*,

2        Tr. 2509:18-24 (Sadana).

3        Arista asserts as supposedly transformative its use of Cisco's expressions in a system that

4    "automatically" inputs a command-line expression rather than having it be typed each time by a

5    human operator. *E.g.*, Tr. 1801:24-1802:4 (Duda). But using the **same** expressions for the **same**

6    purpose in **competing** products cannot be transformative as a matter of law. A copyrighted book is

7    not "transformed" if distributed verbatim on a Kindle or iPad for the purpose of converting sales from

8    hard-copy customers. That a computer rather than a human may input the ultimate expression into the

9    computer does not change the expression or its purpose: "The transformative use inquiry … focuses

10   on the use, not the user." William F. Patry, PATRY ON FAIR USE § 3:1 (2016); *see also Kelly v. Arriba*

11   *Soft Corp.*, 336 F.3d 811, 819 (9th Cir. 2003) (reproducing copyrighted factual content "into a

12   different format does not change the ultimate purpose" of the original). Thus, even assuming Arista is

13   correct that its user interface allows the infringed expressions to be entered automatically rather than

14   typed, that the same expressions operate the same functions in both works must defeat Arista's

15   transformation argument.[5] Allowing customers to use another's copyrighted work in a more

16   convenient fashion cannot justify its taking. *See Am. Geophysical Un. v. Texaco, Inc.,* 60 F.3d 913,

17   923 (2d Cir. 1994) (rejecting fair use where employees photocopied scientific journals for "personal

18   convenience").

19       The second and third fair use factors play relatively little role where a use is not

20   transformative. Nonetheless, the second and third factors weigh in Cisco's favor. Arista's own

21   witnesses admitted the relative importance of the elements of Cisco's user interface that it copied;

22   indeed, Arista specifically promoted the copied material as being among the most important to its

---

23

24   [5]  Further, unlike the defendant's use in *Oracle America, Inc. v. Google Inc.*, Arista copied Cisco's
     works to compete in the same market—a far cry from Google's accused copying of Oracle's declaring

25   code packages written specifically for desktop and laptop computers for the distinct purpose of
     permitting interoperability with mobile smartphones. Nor is there any issue of physical

26   interoperability in this case, for CLI involves how human operators communicate with a machine,
     rather than how machines communicate with one another. *See* Order Denying Rule 50 Motions at 14-

27   15, *Oracle Am., Inc. v. Google Inc.*, No. 3:10-cv-3561 (N.D. Cal. June 8, 2016), ECF 1988; *see also*
     Tr. 2514:3-15 (Sadana).

28

customers.  *E.g.*, Tr. 2265:9-10 (Gourlay, video deposition testimony); Exs. 171, 278.  Moreover, Arista was unable to dispute that the copied portions of Cisco's user interfaces are both quantitatively and qualitatively significant to Cisco.  *E.g.*, Tr. 1055:23-25 (Kathail); Tr. 2221:14-22, Tr. 2247:9-11 (Black).

Finally, the fourth factor must weigh in Cisco's favor because Arista used Cisco's works to directly compete with Cisco, reducing the value of Cisco's works.  *E.g.*, Tr. 1721:21-1722:18 (Chambers).  Arista's admitted attempts (and successes) at converting Cisco customers based on its copying of Cisco's user interfaces confirms this market harm.  *E.g.*, Ex. 197; Tr. 911:4-7 (Sadana). Arista has admitted that it used Cisco's protected expressions to win over Cisco customers because it would have taken too long, and would have been too expensive, to create its own original command-line interface from scratch; it instead chose to develop a system that was "a practical ***drop-in replacement***" for Cisco's, "given the 99.999% similarity in the CLI."  Ex. 171; *see also, e.g.*, Ex. 197 (Sadana); Tr. 1017:22-1018:9; Exs. 176, 237, 648, 650.

Ultimately, whether Arista's conduct is excused by fair use depends on the balance of these and other relevant factors in light of the objectives and policy of copyright law.  Jury Inst. 56A; *Kelly*, 336 F.3d at 818.  Construing all the facts and reasonable inferences in Arista's favor, no reasonable jury could find that Arista's use of valuable, substantial portions of Cisco's copyrighted material in a commercial, directly competing product and without changing the features in any way is a fair use. The Court should enter a judgment as a matter of law in Cisco's favor on this defense.

## B.   No Reasonable Jury Could Find That Arista's Infringement Was Excused By Merger Or Scènes A Faire

As a matter of law, Arista is also unable to support its burden of proof on its affirmative defense of merger, as no reasonable jury could find that, at the time Cisco created its works, Cisco had only one or very few ways to express its protectable elements.  Jury Inst. 60.  Arista provided no evidence that, at the time Cisco created the expressions at issue, there was only one or a few ways to construct such expressions.  To the contrary, the undisputed evidence shows that there were ***multiple*** ways for Cisco and its competitors to express the ideas underlying Cisco's commands.  *E.g.*, Tr. 2325:22-2326:6 (Venkatraman); Tr. 2060:5-2061:3 (Shafer).  As noted above, Cisco engaged a

creative process to create the building blocks at issue, none of which had been used in a command-line interface before Cisco created them. *E.g.*, Tr. 2212:14-17, 2219:16-18 (Black). Arista's CTO conceded that it was "technically possible" for Arista to have used a different user interface than Cisco's to provide the same functionality. Tr. 800:19-23 (Duda). The fact that competitors, including Juniper, implement CLI commands that differ from Cisco's further proves that a range of expression was available. *E.g.*, Tr. 2077:21-2078:11 (Shafer); Tr. 2325:22-2326:6 (Venkatraman).

For similar reasons, and based on similar evidence, no reasonable jury could find that, at the time Cisco created its works, external factors other than Cisco's creativity "dictated" that Cisco select, arrange, organize and design its original features in the manner it did, and thus Cisco is entitled to judgment as a matter of law on Arista's scènes à faire affirmative defense. Jury Inst. 61. For example, Arista does not dispute that no standard-setting organizations or customer preconceptions *required* Cisco to design the expressions in its user interface as it did (*e.g.*, Tr. 1963:5-8 (Ullal)); to the contrary, as Mr. Shafer of Juniper testified, the creative process within Cisco was a "greenfield" or "open pasture," without constraints, at the time the user interfaces were created. Tr. 2060:17-2061:3 (Shafer).

### C.    No Reasonable Jury Could Find That Arista's Infringement Was Excused By Copyright Misuse Or Abandonment

Cisco reiterates its objection to Arista's affirmative defenses of copyright misuse and abandonment going to the jury as these are equitable defenses exclusively reserved to the Court. *See* Tr. 2409:1-18 (copyright misuse); Tr. 2409:19-2410:6 (abandonment). However, even if they are treated as issues for the jury to determine, no reasonable jury could find that Arista satisfied its burden of proof on either of these defenses. Arista introduced no competent evidence that Cisco attempted to use its copyrights to prevent Arista from using *unprotected* elements or undertaking activity safeguarded by public policy (Jury Inst. 62), nor has Arista introduced any competent evidence that Arista intended to surrender its rights to its copyrights in its user interfaces, nor of an act by Cisco evidencing such intent (Jury Inst. 63). Such a failure of proof on Arista's own burden requires judgment in Cisco's favor on these defenses. *See also, e.g.*, Exs. 250, 4421, 4671.

## V.    CISCO IS ENTITLED TO JMOL ON ITS PATENT INFRINGEMENT CLAIMS

### A.    Arista Directly and Indirectly Infringes Claims 1 and 14 of U.S. Patent No. 7,047,526

Arista's accused products, including all products running EOS, vEOS and EOS+, directly and indirectly infringe claims 1 and 14 of the '526 patent.  No reasonable jury could find that the accused products do not infringe.

Cisco presented fact and expert testimony that the accused products meet every claim limitation of both asserted claims, claim 1 and 14.  Tr. 1424:5-1532:25 (Jeffay); Tr. 1422:6-7 (Sweeney, video deposition testimony); Exs. 24, 25, 31, 32, 34 and 48.  Dr. Kevin Jeffay, Cisco's technical expert for patent issues, analyzed the source code for the accused Arista products to confirm each limitation was present.  Ex. 3625-A (Arista source code compilation).  Dr. Jeffay's analysis was also disclosed in a summary exhibit that includes detailed exemplary infringing "generic commands," "prescribed commands" and the individual source code files for each prescribed command in the accused products.  Ex. 599.  Dr. Jeffay analyzed the required "command parse tree" contained in Arista's accused products by using, in part, a representative figure drawn by Arista's Rule 30(b)(6) representative, Adam Sweeney.  Ex. 489; Tr. 1465:2–1466:20. Cisco also presented unrebutted testimony that Arista induced and contributed to the infringement of the '526 patent by its customers.  Tr. 1481:2-1482:5 (Jeffay).

Arista failed to put on rebuttal evidence that a reasonable jury could rely on to contradict Cisco's proffered evidence of patent infringement.  Arista presented only one witness on patent issues, its expert Dr. Jeffrey Chase.  Tr. 1972:24-2023:5 (Chase).  No reasonable jury could accept Dr. Chase's opinions, as he admitted that he did not review the cited source code for 71 of the 77 accused prescribed commands.  Tr. 2016:2-13 (Chase).  Dr. Chase further admitted he didn't even know the function of some of the accused prescribed commands.  Tr. 2016:14-21 (Chase).

### B.    Arista's Infringement Of The '526 Patent Was Willful

Arista had knowledge of the '526 patent after Cisco filed this lawsuit and put Arista on notice of its allegations.  *E.g.*, Tr. 1481:9-10 (Jeffay).  Arista acted in bad faith, wantonly, maliciously, deliberately, consciously wrongfully, flagrantly, or with reckless disregard of claims 1 and 14 of the

1  '526 patent by releasing (and continuing to sell) EOS+ after being on notice of Cisco's allegations

2  through the filing of this lawsuit.

3       For example, Arista intentionally copied at least some of the claimed "generic commands"

4  from Cisco's IOS XR software, which unrebutted testimony and evidence established practices the

5  '526 patent.  Tr. 1482:6-1483:14 (Jeffay); Exs. 3605-A, 3605-B and 3605-C (IOS XR source code).

6  As discussed for the copyright claims, several witness testified that Arista copied Cisco's products and

7  CLI commands, including two of the commands that are both accused "generic commands" for

8  purposes of the '526 patent, and asserted CLI commands for purposes of the copyright claims.

9  *Compare* Ex. 599 (Jeffay summary exhibit analysis), *with* ECF 552-1 at 4 (Cisco's protectable

10  elements filing) (both listing "clear arp-cache" and "clear ipv6 neighbors").  "Clear arp-cache" and

11  "clear ipv6 neighbors" are two commands present in IOS XR, which practices the '526 patent.  By

12  copying Cisco's products practicing the patent-in-suit, Arista knew or should have known that its

13  conduct was unreasonably risky.

14       Arista's own witness further admitted that he had possessed multiple Cisco confidential

15  technical documents but had no explanation for why he had them in his possession.  Tr. 922:12-

16  925:17 (Sadana); Exs. 381, 383.  Finally, Arista's expert, Dr. Chase, admitted that EOS and EOS+

17  have different features and the evidence establishes that EOS+ is a new product.  Tr. 2018:21-2020:12

18  (Chase); Ex. 558.

19  **VI.   CISCO IS ENTITLED TO JMOL ON DAMAGES**

20       **A.   Cisco Proved Copyright Lost Profits Damages Of No Less Than $311 Million**

21       Cisco presented uncontroverted evidence that it has suffered lost profits as a result of Arista's

22  copyright infringement.  No reasonable jury could find that Cisco has not suffered actual damages in

23  the form of lost profits due to Arista's copyright infringement.

24       Specifically, Cisco presented uncontroverted fact and expert testimony that, but for Arista's

25  infringement, Cisco would have made additional sales resulting in at least $311 million in additional

26  profits.  Tr. 1552:14-1554:3, 1585:23-1586:6 (Chevalier).  Cisco demonstrated that Arista's sales and

27  marketing campaigns, both on a general and customer-specific basis, repeatedly emphasized the close

28  similarity of the Arista EOS user interface to Cisco's copyrighted user interfaces in order to get

1   Arista's foot in the door with Cisco's customer base, which Arista specifically targeted. Tr. 1574:6-11

2   (Chevalier). Arista executives understood that it would be a benefit in the sales process to have a user

3   interface with the same "look and feel" as Cisco's because it would eliminate potential customers' fear

4   that they would have to retrain engineers familiar with Cisco's user interfaces and avoid any time and

5   expense associated with any new learning curve. Ex. 559; *see also, e.g.*, Exs. 229, 427, 4745, 565,

6   230. Cisco's expert, Dr. Judith Chevalier, testified that Arista's sales pitch was important to address

7   customers' concerns regarding the costs of setting up, maintaining, and troubleshooting switches,

8   especially in large data centers. Tr. 1555:2-1558:25, 1559:18-1562:1 (Chevalier). Arista's expert,

9   Ms. Cate Elsten, admitted that Arista saved training costs by using Cisco's familiar user interfaces.

10  Tr. 2371:4-7 (Elsten). Cisco presented evidence that Arista also targeted automated customers with

11  the pitch that they could cut and paste their scripts from Cisco to Arista and they would work right

12  away. *E.g.*, Tr. 1571:25-1572:24 (Chevalier); Ex. 240. Dr. Chevalier also testified that the look and

13  feel of the user interface, not the similarity or dissimilarity of Arista's and Cisco's source codes, was

14  what mattered to Arista's and Cisco's customers. Tr. 1569:22-1570:2 (Chevalier). Cisco also

15  presented evidence of some exemplary sales where Arista internally identified that familiarity with the

16  CLI or having a Cisco-like CLI was a reason they won. *E.g.*, Tr. 1573:12-1574:5 (Chevalier); Exs.

17  239A, 158, 236.

18        Cisco's expert provided testimony regarding the calculation of Cisco's lost profits. Despite

19  uncontroverted evidence that very few customers would have bought from Arista absent the infringing

20  elements of the user interfaces (Tr. 1692:8-9 (Chevalier)), Cisco's expert conservatively reduced the

21  volume of Arista sales eligible for lost sales by 20% based on Arista witness Duda's assertion that

22  20% of Arista's customers are pure Linux customers and thus do not use the infringing CLI (Tr.

23  1578:19-1580:21 (Chevalier)). Contrary to Arista's assertions, as the evidence shows, Dr. Chevalier

24  did not assume that all sales went to Cisco. Tr. 1629:25-1631:20 (Chevalier). She used the

25  conservative assumption that, absent Arista's infringement, Arista sales attributable to the CLI would

26  be reallocated to other market participants in proportion to their share of the market (Tr. 1583:25-

27  1585:1 (Chevalier)). She then took Cisco's share of Arista's adjusted gross revenue and converted it

28  to lost profits using Cisco's profit margin. Tr. 1585:15-22 (Chevalier).

1    Arista's theory that Cisco cannot demonstrate lost sales if there was any reason that Arista

2    made the sale other than its copyright infringement is wrong.  If that were the test, a copyright

3    infringement plaintiff could almost never succeed in demonstrating lost sales where the defendant and

4    the plaintiff's products both compete in the same market with the same infringing feature.  As Cisco's

5    expert explained, once the infringing feature is no longer a competitive differentiator, some other

6    feature will almost always be cited as the reason for the sale, but that does not mean that the infringing

7    feature was not a necessary precondition to the defendant being able to make the sale—*e.g.*, to getting

8    its foot in the door.  Tr. 1574:21-1576:18 (Chevalier).

9    Arista's arguments based on its expert's observations regarding a small, cherry-picked sample

10    of other switch vendors' advertising their CLI as being "industry standard" must fail.  Arista's expert

11    Ms. Elsten admitted that she relied on Arista's technical expert Dr. Black for information regarding

12    the extent to which other switch vendors used any of the 506 asserted commands.  Tr. 2363:14-

13    2364:10 (Elsten).  But Dr. Black's testimony cannot support that conclusion, for he admitted that he

14    had no opinion regarding what level of use constituted widespread use in the industry.  Tr. 2478:15-24

15    (Black).

16    Notably, when it came to fair use, Ms. Elsten unwittingly explained the exact market dynamic

17    that Arista's infringement was designed to exploit in order to take sales from Cisco:

> Let's say you are Cisco and you lose to someone.  If you lose to Juniper, they are
> going to be retrained on the Juniper CLI that that – which is unlike Cisco's.  So for Cisco
> to win that customer back, they have to persuade the customer to reverse that
> retraining.  On the other hand, if there's an industry standard that is defined by Cisco,
> if they lose a customer for another reason, like reliability or speed or whatever, they
> want to win that customer back.  Having that customer still be using a similar
> interface to Cisco's is going to make it easier for Cisco to move when that – win that
> customer back.

23    Tr. 2399:4-16 (Elsten).  This same dynamic means that Arista would have had a more difficult time

24    winning customers away from Cisco if it had had a different user interface from Cisco's.  Tr. 2572:23-

25    2573:5 (Elsten).  In other words, but for Arista's infringement, it would not have made the lost sales to

26    Cisco's customers in the first place because it would have had to persuade them to be retrained on a

27    different user interface.

28

1    Thus, as a matter of law, the Court should award Cisco at least $ 311 million as Cisco's lost

2    profits damages.  Tr. 1632:22-1633:18, 1634:9-13; 1634:17-21 (Chevalier).

3    **B.    Cisco Proved Copyright Infringer's Profits Of No Less Than $22 Million**

4    Cisco presented uncontroverted fact and expert testimony establishing its entitlement to

5    disgorgement of Arista's profits from sales of the infringing products, to the extent that such sales

6    were not taken into account in determining Cisco's lost profits damages.  No reasonable jury could

7    find that Cisco has not shown its entitlement to disgorgement of Arista's profits.

8    Cisco met its burden by presenting unrebutted testimony that Arista's gross revenues that

9    derive directly from sales of the infringing products are $1.3 billion from December 2011 through

10    March 2016.  Tr. at 1550:23-1552:9 (Chevalier); Tr. 2355:6-8 (Elsten); Ex. 7294.

11    Arista demonstrated that Arista's profits on that $1.3 billion in gross revenue from December

12    2011 through March 2016 was $383 million.  Tr. 2381:20-25 (Elsten).  Arista, however, did not

13    satisfy its burden to show the portion of those profits attributable to factors other than the copyrighted

14    works.  Ms. Elsten's attempted apportionment is fundamentally flawed because it treats a group of

15    customers that she has designated as highly automated, including Microsoft and Facebook, differently

16    from all other customers on the basis that they do not use the CLI and are indifferent to the type of

17    CLI, but ample evidence in the record refuted that assumption by showing that even highly automated

18    customers desired CLI identical to Cisco's.  Exs. 4262, 6677, 650, 229, 648, 4811, 7818, 556; 4815B;

19    Tr. 2383:1-2384:18; 2450:9-12; 2451:20-23; 2453:22-2454:8; 2456:23-2458:7; 2580:13-18; 2582:14-

20    23 (Elsten).  Moreover, Ms. Elsten calculates an apportionment percentage for the highly automated

21    customers based on a misapplication of a single Microsoft spreadsheet, contrary to its intended use,

22    and applies that percentage to all highly automated customers despite having no basis for doing so.

23    Tr. 2384:22-2385:14 (Elsten).  Ms. Elsten's apportionment percentage for the remaining customers

24    derives from a single cherry-picked Cisco presentation.  Tr. 2385:15-2387:2 (Elsten).  Ms. Elsten

25    incorrectly double-deducted for hardware as the features included in the Cisco presentation include

26    both software and hardware elements.  Tr. 2477:13-15; 2583:22-2586:14 (Elsten).  Thus, Ms. Elsten's

27    proffered apportionment is insufficiently reliable and no reasonable jury could accept it.

28

1    Even if Ms. Elsten's analysis and methodology are credited, however, the uncontroverted

2    evidence supports an award of no less than $22 million for infringer's profits.   That is the

3    uncontroverted number that results if the Court agrees that the undisputed evidence warrants  a lost

4    profits award of no less than $311 million, corrects the infringer's profits amount to avoid double

5    counting with lost profits, and makes adjustments for Ms. Elsten's flawed methodologies (her double

6    deduction for software/hardware and incorrect number for the highly automated customers).   Tr.

7    2587:22-2589:19 (Chevalier).  Therefore, as a matter of law, if the Court agrees that Cisco is entitled

8    to no less than $311 million in lost profits, the Court should award Cisco no less than $22 million as

9    damages for Arista's profits.

10    **C.**    **Cisco Proved Patent Infringement Damages Of No Less Than $2 Million**

11    Cisco has presented uncontroverted fact and expert testimony establishing its entitled to a

12    reasonable royalty of $2 to $2.2 million on its patent infringement claim.  No reasonable jury could

13    find that Cisco has failed to meet its burden to show its entitlement to such reasonable royalty

14    damages for Arista's patent infringement.   Dr. Chevalier presented evidence of her hypothetical

15    negotiation reasonable royalty analysis using the *Georgia-Pacific* factors, specifically focusing on the

16    cost to design-around the '526 patent.  Tr. 1635:19-1638:5; 1639:16-1640:13 (Chevalier).  Based on

17    Dr. Jeffay's testimony that it would take 20 senior engineers at least 6 months to design around the

18    patent, Dr. Chevalier used public data and some salary data produced in this case to get the cost per

19    engineer per year and multiply that by the number of engineers required for a half a year.  Tr. 1638:6-

20    1639:15 (Chevalier).   Dr. Chevalier's methodology is similar and her result is different simply

21    because of different assumptions as to the design-around time provided by a different technical expert,

22    Dr. Chase.  Tr. 2395:18-2396:11 (Chevalier).

23    As a matter of law, the Court should award Cisco $2 to $2.2 million in damages for Cisco's

24    patent infringement claim.

25    **VII.**    **CONCLUSION**

26    For the foregoing reasons and in each of the foregoing respects, this Court should grant

27    Cisco's Rule 50(a) motion for judgment as a matter of law in its entirety.

28

1

2    Dated:  December 12, 2016                Respectfully submitted,

3                                              */s/ Kathleen Sullivan*

4                                              Kathleen Sullivan (SBN 242261)

5                                              kathleensullivan@quinnemanuel.com

QUINN EMANUEL URQUHART & SULLIVAN LLP

6                                              51 Madison Avenue, 22nd Floor

New York, NY 10010

7                                              Telephone: (212) 849-7000

Facsimile: (212) 849-7100

8                                              Sean S. Pak (SBN 219032)

9                                              seanpak@quinnemanuel.com

Amy H. Candido (SBN 237829)

10                                         amycandido@quinnemanuel.com

John M. Neukom (SBN 275887)

11                                       johnneukom@quinnemanuel.com.

QUINN EMANUEL URQUHART & SULLIVAN LLP

12                                       50 California Street, 22nd Floor

San Francisco, CA 94111

13                                       Telephone: (415) 875-6600

Facsimile: (415) 875-6700

14

15                                       David Nelson (*admitted pro hac vice*)

davenelson@quinnemanuel.com

16                                       QUINN EMANUEL URQUHART & SULLIVAN LLP

17                                       500 W Madison St, Suite 2450

Chicago, IL 60661

18                                       Telephone: (312) 705-7465

Facsimile: (312) 705 7401

19                                       Steven Cherny *admitted pro hac vice*)

steven.cherny@kirkland.com

20                                       KIRKLAND & ELLIS LLP

601 Lexington Avenue

21                                       New York, New York 10022

Telephone: (212) 446-4800

22                                       Facsimile: (212) 446-4900

23                                       Adam R. Alper (SBN 196834)

adam.alper@kirkland.com

24                                       KIRKLAND & ELLIS LLP

555 California Street

25                                       San Francisco, California  94104

Telephone: (415) 439-1400

26                                       Facsimile: (415) 439-1500

27                                       Michael W. De Vries (SBN 211001)

michael.devries@kirkland.com

28                                       KIRKLAND & ELLIS LLP

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

333 South Hope Street
Los Angeles, California 90071
Telephone: (213) 680-8400
Facsimile: (213) 680-8500

*Attorneys for Plaintiff Cisco Systems, Inc.*

CISCO'S RULE 50(a) MOTION FOR JUDGMENT AS A MATTER OF LAW