Kathleen Sullivan (SBN 242261)
kathleensullivan@quinnemanuel.com
Todd Anten (*admitted pro hac vice*)
toddanten@quinnemanuel.com
QUINN EMANUEL URQUHART &
SULLIVAN LLP
51 Madison Avenue, 22nd Floor
New York, NY 10010
Telephone: (212) 849-7000
Facsimile: (212) 849-7100

Sean S. Pak (SBN 219032)
seanpak@quinnemanuel.com
Amy H. Candido (SBN 237829)
amycandido@quinnemanuel.com
John M. Neukom (SBN 275887)
johnneukom@quinnemanuel.com.
QUINN EMANUEL URQUHART &
SULLIVAN LLP
50 California Street, 22nd Floor
San Francisco, CA 94111
Telephone: (415) 875-6600
Facsimile: (415) 875-6700

David Nelson (*admitted pro hac vice*)
davenelson@quinnemanuel.com
QUINN EMANUEL URQUHART &
SULLIVAN LLP
500 W Madison St, Suite 2450
Chicago, IL 60661
Telephone: (312) 705-7465
Facsimile: (312) 705 7401

Steven Cherny (*admitted pro hac vice*)
steven.cherny@kirkland.com
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900

Adam R. Alper (SBN 196834)
adam.alper@kirkland.com
KIRKLAND & ELLIS LLP
555 California Street
San Francisco, California 94104
Telephone: (415) 439-1400
Facsimile: (415) 439-1500

Michael W. De Vries (SBN 211001)
michael.devries@kirkland.com
KIRKLAND & ELLIS LLP
333 South Hope Street
Los Angeles, California 90071
Telephone: (213) 680-8400
Facsimile: (213) 680-8500

*Attorneys for Plaintiff Cisco Systems, Inc.*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

| | |
|---|---|
| CISCO SYSTEMS, INC.,<br><br>        Plaintiff,<br><br>    vs.<br><br>ARISTA NETWORKS, INC.,<br><br>        Defendant. | CASE NO. 5:14-cv-5344-BLF (NC)<br><br>**CISCO'S OPPOSITION TO ARISTA'S MOTION FOR JUDGMENT AS A MATTER OF LAW AND CONDITIONAL MOTION FOR NEW TRIAL**<br><br>Dept: Courtroom 3 - 5th Floor<br>Hearing Date:  April 27, 2017<br>Hearing Time:  9:00 am<br>Judge: Hon. Beth Labson Freeman |

## <u>TABLE OF CONTENTS</u>

I.    PRELIMINARY STATEMENT ................................................................................ 1

II.    ARISTA IS NOT ENTITLED TO JMOL ON INFRINGEMENT ..................................... 1

    A.    Legal Standard ................................................................................................ 1

    B.    The Record Overwhelmingly Supports The Jury's Finding That Arista Infringed Protectable Elements Of Cisco's Copyrighted Works ............................. 2

        1.    The Record Supports The Jury's Finding That Cisco's Protectable Expressions Were Original ................................................................ 3

        2.    The Record Supports The Jury's Finding That Cisco's Compilations Are Protectable Under Section 102(b) ......................... 6

        3.    The Record Supports The Jury's Finding That Arista Infringed Cisco's Protectable Expressions ................................................... 8

        4.    The Relevant Copyrighted "Works"—Cisco's User Interfaces—Are Properly In Evidence ................................................................. 12

III.    ARISTA IS NOT ENTITLED TO JMOL ON ITS AFFIRMATIVE DEFENSES ........... 17

    A.    The Record Supports The Jury's Rejection Of Arista's Fair Use Defense ............ 17

    B.    The Record Supports The Jury's Rejection Of Arista's Merger Defense ............... 20

    C.    The Record Supports The Jury's Rejection Of Arista's Abandonment Defense ........................................................................................................ 21

    D.    The Record Supports The Jury's Rejection Of Arista's Misuse Defense ............. 23

IV.    ARISTA'S MOTION FOR A NEW TRIAL SHOULD BE DENIED ............................... 24

V.    CONCLUSION ................................................................................................... 25

# TABLE OF AUTHORITIES

## Cases

**Page(s)**

*ACT Grp., Inc. v. Hamlin,*
  2014 WL 4662234 (D. Ariz. Sept. 18, 2014) ...................................................................9

*Abarca Health, LLC v. PharmPix Corp.,*
  806 F. Supp. 2d 483 (D.P.R. 2011) ...............................................................................16

*Alaska Stock, LLC v. Houghton Mifflin Harcourt Publ'g Co.,*
  747 F.3d 673 (9th Cir. 2014) .........................................................................................14

*Antonick v. Electronic Arts, Inc.,*
  841 F.3d 1062 (9th Cir. 2016) .......................................................................................16

*Apple Inc. v. Psystar Corp.,*
  658 F.3d 1150 (9th Cir. 2011) .......................................................................................24

*Atari Games Corp. v. Nintendo of Am. Inc.,*
  975 F.2d 832 (Fed. Cir. 1992) .......................................................................................20

*Brocade Commc'ns Sys., Inc. v. A10 Networks, Inc.,*
  2013 WL 831528 (N.D. Cal. Jan. 10, 2013) ..................................................................11
  2011 WL 7762998 (N.D. Cal. Aug. 16, 2011) .................................................................3

*Campbell v. Acuff-Rose Music, Inc.,*
  510 U.S. 569 (1994) .......................................................................................................19

*Capitol Records, Inc. v. Naxos of Am., Inc.,*
  372 F.3d 471 (2d Cir. 2004) ..........................................................................................22

*CDN Inc. v. Kapes,*
  197 F.3d 1256 (9th Cir. 1999) ..........................................................................1, 3, 4, 5

*Cellular Accessories for Less, Inc. v. Trinitas LLC,*
  65 F. Supp. 3d 909 (C.D. Cal. 2014) ...............................................................................9

*DC Comics v. Towle,*
  802 F.3d 1012 (9th Cir. 2015) .........................................................................................9

*Data East USA, Inc. v. Epyx, Inc.,*
  862 F.2d 204 (9th Cir. 1988) ....................................................................................15, 16

*EEOC v. Pape Lift, Inc.,*
  115 F.3d 676 (9th Cir. 1997) .........................................................................................24

*Eng'g Dynamics, Inc. v. Structural Software, Inc.,*
  26 F.3d 1335 (5th Cir. 1994) ...........................................................................................8

*Escriba v. Foster Poultry Farms, Inc.,*
  743 F.3d 1236 (9th Cir. 2014) .........................................................................................3

*Experience Hendrix L.L.C. v. Hendrixlicensing.com Ltd.*,
   762 F.3d 829 (9th Cir. 2014) ..................................................................................24

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*,
   499 U.S. 340 (1991) .................................................................................................3

*Finjan, Inc. v. Blue Coat Sys., Inc.*,
   2016 WL 3880774 (N.D. Cal. July 18, 2016) ......................................................1, 24

*Funky Films, Inc. v. Time Warner Entm't Co.*,
   462 F.3d 1072 (9th Cir. 2006) ..................................................................................9

*Johnson v. Paradise Valley Unified Sch. Dist.*,
   251 F.3d 1222 (9th Cir. 2001) .............................................................................2, 23

*Josephs v. Pac. Bell*,
   443 F.3d 1050 (9th Cir. 2005) ..................................................................................1

*Kelly v. Arriba Soft Corp.*,
   336 F.3d 811 (9th Cir. 2002) ..................................................................................19

*Lanard Toys Ltd. v. Novelty, Inc.*,
   375 F. App'x 705 (9th Cir. 2010) .............................................................................3

*Latele Television, C.A. v. Telemundo Commc'ns Grp., LLC*,
   2015 WL 427817 (S.D. Fla. Feb. 2, 2015) ............................................................16

*Lies v. Farrell Lines, Inc.*,
   641 F.2d 765 (9th Cir. 1981) ..................................................................................25

*Metcalf v. Bochco*,
   294 F.3d 1069 (9th Cir. 2002) ..................................................................................2

*Mfrs. Techs., Inc. v. Cams, Inc.*,
   706 F. Supp. 984 (D. Conn. 1989) .........................................................................12

*Micro Star v. Formgen Inc.*,
   154 F.3d 1107 (9th Cir. 1998) ................................................................................21

*Napoli v. Sears, Roebuck & Co.*,
   874 F. Supp. 206 (N.D. Ill. 1995) ..........................................................................13

*Narell v. Freeman*,
   872 F.2d 907 (9th Cir. 1989) ....................................................................................9

*Norse v. Henry Holt & Co.*,
   991 F.2d 563 (9th Cir. 1993) ....................................................................................9

*Omega S.A. v. Costco Wholesale Corp.*,
   776 F.3d 692 (9th Cir. 2015) ..................................................................................24

*Oracle Am., Inc. v. Google Inc.*,
   750 F.3d 1339 (Fed. Cir. 2014) ............................................6, 8, 12, 17, 19, 20, 21
   2016 WL 3181206 (N.D. Cal. June 8, 2016) .......................................................2, 17
   No. 10-cv-3561, ECF 1981 (N.D. Cal. May 26, 2016) ..........................................26

*Pavao v. Pagay*,
   307 F.3d 915 (9th Cir. 2002)..................................................................................1

*Range Rd. Music, Inc. v. E. Coast Foods, Inc.*,
   668 F.3d 1148 (9th Cir. 2012)..................................................................................9

*Rosen v. Martin*
   2013 WL 12063911 (C.D. Cal. Apr. 19, 2013)..........................................................9

*Satava v. Lowry*,
   323 F.3d 805 (9th Cir. 2003)..................................................................................20

*Sega Enters. Ltd. v. Accolade, Inc.*,
   977 F.2d 1510 (9th Cir. 1992)..................................................................................8

*Torah Soft Ltd. v. Drosnin*,
   136 F. Supp. 2d 276 (S.D.N.Y. 2001)......................................................................14

*VMG Salsoul, LLC v. Ciccone*,
   824 F.3d 871 (9th Cir. 2016)..................................................................................4

*Venegas v. Wagner*,
   831 F.2d 1514 (9th Cir. 1987)................................................................................24

*Warner Bros., Inc. v. Am. Broad. Cos.*,
   720 F.2d 231 (2d Cir. 1983)..................................................................................23

*Well-Made Toy Mfg. Corp. v. Goffa Int'l Corp.*,
   210 F. Supp. 2d 147 (E.D.N.Y. 2002)......................................................................3

*Zella v. E.W. Scripps Co.*,
   529 F. Supp. 2d 1124 (C.D. Cal. 2007)..................................................................16

*Zottola v. City of Oakland*,
   32 F. App'x 307 (9th Cir. 2002)............................................................................25

**Rules and Statutes**

37 C.F.R. § 202.1(a) ................................................................................................8

17 U.S.C. § 102(b) ..................................................................................................6

Fed. R. Civ. P. 50(b)................................................................................................1

Fed. R. Civ. P. 50(b)(2)..........................................................................................25

Fed. R. Civ. P. 59 ....................................................................................................1

Fed. R. Civ. P. 59(a)(1) ..........................................................................................25

**Miscellaneous**

William F. Patry, PATRY ON FAIR USE § 3:1 (2016) ................................................18

1    Plaintiff Cisco Systems, Inc. ("Cisco") hereby respectfully opposes Arista's motion for

2  judgment as a matter of law ("JMOL") pursuant to Rule 50(b) and conditional motion for a new trial

3  pursuant to Rule 59, ECF 760 ("Br."), based on this memorandum, the trial record, and such other

4  argument as was and may be presented before this motion is taken under submission by the Court.

5  **I.    PRELIMINARY STATEMENT**

6    After a two-week trial, the jury returned verdicts in Cisco's favor that:  (1) Arista infringed

7  Cisco's user interfaces; and (2) Arista's infringement was not excused by the affirmative defenses of

8  fair use, merger, abandonment or copyright misuse.  ECF 750-1 at 1-2.  Overwhelming evidence in the

9  trial record supports each of those verdicts.  The Court should reject Arista's motion for JMOL or new

10  trial, which fails to overcome the evidence that:

11  - Cisco's user interfaces comprise protectable compilations of (1) multiword command

12    expressions, (2) modes and prompts, (3) command responses/screen outputs, (4) help

13    descriptions, and/or (5) user interfaces as a whole as compilations of the other four;

14  - Cisco's compilations are expressions of original, creative authorship by Cisco engineers,

15    who exercised subjective expertise and judgment in their creation, *see CDN Inc. v. Kapes*,

16    197 F.3d 1256, 1260-61 (9th Cir. 1999);

17  - Arista infringed Cisco's user interfaces  through its slavish copying of Cisco's protectable

18    compilations as shown by (1) direct evidence of copying; and/or (2) indirect evidence of

19    copying based on access to and virtual identity to Cisco's user interfaces;

20  - Arista infringed nontrivial portions of Cisco's user interfaces; and

21  - Arista cannot satisfy the elements of fair use, merger, abandonment or copyright misuse.

22  **II.    ARISTA IS NOT ENTITLED TO JMOL ON INFRINGEMENT**

23    **A.    Legal Standard**

24    Arista's motion for JMOL may be granted only "'if the evidence, construed in the light most

25  favorable to [Cisco], permits only one reasonable conclusion, and that conclusion is contrary to the

26  jury's verdict.'"  *Finjan, Inc. v. Blue Coat Sys., Inc.*, 2016 WL 3880774, at *3 (N.D. Cal. July 18,

27  2016) (Freeman, J.) (quoting *Pavao v. Pagay*, 307 F.3d 915, 918 (9th Cir. 2002)); *Josephs v. Pac. Bell*,

28  443 F.3d 1050, 1062 (9th Cir. 2005) (Court must "draw all reasonable inferences" in Cisco's favor).

Arista's motion must be denied if "substantial" evidence supports the verdict, *i.e.*, evidence "adequate to support the jury's conclusion, even if it is also possible to draw a contrary conclusion from the same evidence." *Johnson v. Paradise Valley Unified Sch. Dist.*, 251 F.3d 1222, 1227 (9th Cir. 2001).

This Court's legal rulings and instructions govern Arista's motion.[1]  The Court instructed that an owner is entitled to copyright protection in a compilation, *i.e.*, "a work formed by the collection and assembling of pre-existing materials or of data that are selected, coordinated, or arranged in such a way that the resulting work as a whole constitutes an original work of authorship."  Tr. 2670:19-25 (Instr. No. 33);[2] *see also* ECF 719 at 10 (citing *Metcalf v. Bochco*, 294 F.3d 1069, 1074 (9th Cir. 2002)).  The Court ruled that each of five Cisco "compilations" was protectable: (1) "The selection and arrangement of Cisco's multiword command line expressions"; (2) "The selection and arrangement of Cisco's modes and prompts"; (3) "The collection of Cisco's screen responses and outputs"; (4) "The collection of Cisco's help descriptions"; and (5) "Cisco's user interfaces as a whole as compilations of elements 1 through 4."  Tr. 2673:4-15 (Instr. No. 39); ECF 719 at 11-18.  The Court also instructed the jury that certain elements of Cisco's works were ***not*** protectable, including: (1) "individual words used in any of the asserted commands"; (2) "any single multiword command"; (3) "specific modes and specific prompts"; (4) the "idea of making certain commands available only in certain modes"; (5) "the function of any … feature"; and (6) individual help descriptions.  Tr. 2673:17-2674:14 (Instr. No. 39).

**B.    The Record Overwhelmingly Supports The Jury's Finding That Arista Infringed Protectable Elements Of Cisco's Copyrighted Works**

The stipulated verdict form asked: "Has Cisco proven that Arista infringed any of Cisco's user interfaces?"  ECF 750-1 at 1.  The 2,800 pages of testimony and more than 250 exhibits in this case provide more than substantial evidence to support the jury's answer "Yes."  To succeed on JMOL, Arista must show that there is no substantial evidence that ***any*** of the five relevant compilations is original, protectable or infringed.  Arista's effort to do so fails, for substantial evidence supports the

---

[1]    Arista spends much of its motion challenging the Court's legal rulings, but "the time for those arguments was at or before the charging conference or eventually on appeal.  For now, at the district court, ***the jury instructions control***."  *Oracle Am., Inc. v. Google Inc.*, 2016 WL 3181206, at *1 (N.D. Cal. June 8, 2016) (emphasis added) (applying JMOL standard).

[2]    All cited pages to the trial transcript are in Exhibit N to the accompanying declaration of Sara E. Jenkins ("Jenkins Decl."); all other exhibits are in *id.*, Exs. O-MM and ECF 761-1 (Exs. B-M).

1    jury's conclusion that Arista infringed at least one of Cisco's original, protectable compilations.

2    **1.    The Record Supports The Jury's Finding That Cisco's Protectable Expressions Were Original**

3        Arista limits its originality challenges to the protectable compilations of multiword commands,

4    help descriptions and command responses; it does not dispute that Cisco's compilation of modes and

5    prompts was original to Cisco.  Br. 12-13.  Contrary to Arista's arguments, there is substantial

6    evidence of Cisco's original authorship of each of the challenged protectable compilations.

7        ***First***, Cisco obtained copyright registrations for its user interfaces, Tr. Ex. 4791 (Jenkins

8    Decl., Ex. O), giving Cisco a presumption of ownership and validity.[3]  Arista argues (Br. 12 n.9) that

9    the presumption is rebutted because certain "features" of Cisco's user interfaces (*i.e.*, individual,

10   isolated terms) come from "pre-existing sources."  But the Court instructed that such isolated terms

11   are not protectable, and "[a] jury is presumed to follow the instructions given to it," *Escriba v. Foster*

12   *Poultry Farms, Inc.*, 743 F.3d 1236, 1247 (9th Cir. 2014) (quotation marks omitted).  Here, the Court

13   must presume that the jury based its infringement finding exclusively on the protectable elements of

14   Cisco's works.  Arista points to no evidence that any of the five protectable ***compilations*** existed

15   before Cisco created them.  To the contrary, substantial evidence shows that each compilation was

16   original to Cisco.  *See infra*.  Thus, the registrations alone support Cisco's original authorship.

17       ***Second***, substantial evidence apart from the registrations shows that Cisco's five asserted

18   compilations are works original to Cisco.  The original parts of a work are "the parts created (1)

19   independently by the work's author" and "(2) by use of at least some minimal creativity."  Tr.

20   2670:12-16 (Instr. No. 32).  Originality is an "extremely low" bar, requiring only a "minimal 'creative

21   spark.'"  *CDN*, 197 F.3d at 1260 (quoting *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340,

22   345 (1991)).  In *CDN*, for example, the Ninth Circuit held that the "spark glows" in the plaintiff's

23   estimates of coin prices through a "process" that examined preexisting "actual prices paid" but used

24   

25   _____
     [3]    *See, e.g.*, *Lanard Toys Ltd. v. Novelty, Inc.*, 375 F. App'x 705, 710-11 (9th Cir. 2010)
26   (presumption applied at JMOL); *Brocade Commc'ns Sys., Inc. v. A10 Networks, Inc.*, 2011 WL
     7762998, at *2 (N.D. Cal. Aug. 16, 2011) (registration awarded "presumption of validity" to allegedly
27   copied elements); *Well-Made Toy Mfg. Corp. v. Goffa Int'l Corp.*, 210 F. Supp. 2d 147, 160
     (E.D.N.Y. 2002) ("A certificate of registration establishes a presumption that the work ***and its***
28   ***elements*** are original and protectable.") (emphasis added).

1 "creativity and judgment" to arrive at original compilations of that data. *Id.* at 1260-61.

2       The record contains ample evidence that Cisco's compilations were similarly original. None

3 had ever existed in a command-line user interface before Cisco created them. *See, e.g.*, Tr. 505:16-25

4 (Lougheed) (explaining decision to not "just use somebody else's existing command-line interface");

5 Tr. 506:4-6 (Lougheed) (describing initial decision "to create hierarchies"); Tr. 522:24-523:2

6 (Lougheed) (commands and organization not copied from any other source); Tr. 525:16-527:8

7 (Lougheed) (describing structure and layout of help descriptions and process of creating them); Tr.

8 733:3-6 (Slattery) (similar); Tr. 1238:16-20 (Almeroth) (arrangement of modes and prompts did not

9 pre-exist Cisco); Tr. 2219:16-2221:2 (Black) (admitting same); Tr. 2210:11-22, 2212:14-17 (Black)

10 (admitting that none of the Cisco's 506 asserted multiword commands pre-existed Cisco's authorship).

11 As in *CDN*, Cisco's engineers created the expressions through the use of a creative process. *See, e.g.*,

12 Tr. 517:1-6 (Lougheed) (describing teaching Cisco engineers how to create the CLI, after which "they

13 had a great deal of freedom"); Tr. 637:20-23 (Lougheed) (describing creation of modes); Tr. 650:5-23,

14 651:3-14, 652:23-653:7 (Remaker) (engineers discussed and debated expressions through "parser

15 police"); Tr. 667:8-11 (Remaker) ("you need to decide as an engineer if it makes sense to add a new

16 node into the hierarchy, it's not just a matter of picking the words but picking the logical place to

17 place the words in the hierarchy"); Tr. 668:9-11 (Remaker) (describing guidance from Parser Police

18 Manifesto (Tr. Ex. 851) (Jenkins Decl., Ex. P) on process of "choosing the hierarchy, grouping stuff

19 together, exercising judgment and creativity, and arranging like concepts together"); Tr. 728:9-14

20 (Slattery) (describing origination process for help commands); Tr. 1227:7-10 (Almeroth) (describing

21 process by which Cisco engineers "come up with" and "get feedback on" CLI elements). Further,

22 contrary to Arista's suggestion (Br. 5), Cisco was not required to identify each engineer who created

23 each expression or go through the creation of every command, mode, response or help description,

24 just as "[t]he Ninth Circuit did not engage in an analysis of each and every price CDN calculated to

25 determine if it possessed a minimal degree of creativity and originality," ECF 482 at 13.[4]

26  

27 [4]   Arista misplaces reliance (Br. 13) on *VMG Salsoul, LLC v. Ciccone*, 824 F.3d 871, 885 (9th Cir. 2016), for the proposition that copyright protects a work's "expressive aspects," not the creator's

28 efforts. *VMG* did not overrule *CDN*'s holding that a "process" can demonstrate "sufficient creativity
                                                    (footnote continued)

*Third*, a reasonable jury could easily have found that Cisco's compilations were structured, organized and designed using at least minimal creativity. It was undisputed that Cisco had multiple ways to create its expressions. *See infra* Parts II.B.2 & III.B. Arista's own witnesses admitted that the creation of expressions in text-based user interfaces is subjective, based on aesthetic preferences, and arbitrary. *See, e.g.*, Tr. 1015:3-14 (Dale) (admitting that deciding which words to use in a command is "a professional judgment call by an engineer"); Tr. 875:19-23 (Duda) (admitting that, even if commands use individual industry standard terms, "you may have some choice" in "how you string those words together to make a command"); Tr. 896:21-897:6 (Sadana) (admitting that engineers at Cisco "would sometimes express disagreement about how the commands should be structured"). Disinterested third parties testified that they deliberately created competing CLI products using expressions entirely different from Cisco's expressions. Tr. 2059:21-2061:3 (Shafer) (Juniper); Tr. 2077:21-2078:11 (Shafer) (no copying); Tr. 2320:10-2324:22 (Venkatraman) (HP). And Arista's own presentation (Tr. Ex. 6095 (Jenkins Decl., Ex. Q)) described Arista's CLI as "IOS-like" and competitors' CLIs as "Not consistent with IOS." Tr. 1840:10-1843:3 (Holbrook). Cisco's engineers confirmed that they used their own subjective, aesthetic decisions in creating the compilations at issue. *E.g.*, Tr. 516:19-23 (Lougheed) (design included "idiosyncratic" things that "appealed" to him); Tr. 637:21-638:19 (Lougheed) (modes); Tr. 663:16-20 (Remaker) ("creativity and judgment"); Tr. 679:17-21 (Remaker) (outputs); Tr. 681:21-682:9 (Remaker) (help descriptions); Tr. 1230:7-21 (Almeroth) (even within functional guidelines, there is "flexibility and creativity," and "a lot of factors go into a person considering ultimately" what choices to make).[5]

Moreover, contrary to Arista's suggestion (Br. 15-16) and as described above, the record amply supports the creativity of the structure, sequence, organization and design of Cisco's **compilations**. For example, Mr. Lougheed testified that the user interface that he worked on at Stanford, before he

---

and originality to make [unprotectable elements] copyrightable" as a compilation, 197 F.3d at 1261.

[5]   The Court should disregard Arista's argument (Br. 14-15) that Cisco's expressions were "dictated by factors other than creative choice." This is just another way of stating that Cisco's expression is scènes à faire, which is not an element of protectability but rather an affirmative defense for which Arista has the burden. *See* Tr. 2680:13-25 (Instr. No. 61). For reasons set forth in Cisco's motion for JMOL, Arista failed to meet that burden. *See* ECF 761.

1  left for Cisco,[6] did not have any hierarchical structure like that of Cisco's user interface; but rather

2  "had basically all the commands at the same level." Tr. 520:18-521:2. He further testified that it

3  "would have been perfectly reasonable" to have structured commands in a different way from that he

4  chose. Tr. 522:2-6; *see also* Tr. 522:7-9 (Lougheed) ("I made this particular hierarchical choice.

5  There was nothing sacred about this particular ordering of commands or particular organizing

6  princip[le].");  Tr. 652:25-653:4 (Remaker) ("there's a certain aesthetic to the design of the user

7  interface, it's arranged in a hierarchy, the words tend to appear in a sequence"); Tr. 682:4-9 (Remaker)

8  ("[t]he aesthetic is the way the CLI is organized" and "having this all feel of the interface"); Tr.

9  1221:5-14 (Almeroth) (commands organized "into a structure so that it's easier for an operator to

10 remember them. It's a kind of categorization"); Tr. 1222:1-3 (Almeroth) (describing the "creativity in

11 how you organize the words and how it fits into hierarchies and which hierarchy is selected"); Tr.

12 1222:18-29 (Almeroth) ("[t]here's creativity to the process" of organizing command responses

13 because "you can organize these outputs however you want"); Tr. 1223:15-1224:18 (Almeroth)

14 (describing "the arrangements of the modes and prompts" and "the way that these modes are

15 organized"); Tr. 1226:8-11 (Almeroth) (concluding for all protectable elements "it was all a creative

16 process and the result of that was a creative output"); Tr. 1238:16-1239:9 (Almeroth) (modes and

17 prompts are "nested" into a structure, "and that was a creative decision. They didn't have to be nested,

18 you could go to any mode as an alternative"); Tr. 1240:2-7 (Almeroth) (describing "creativity in the

19 way that all four of those components were determined" for each user interface).

## 2.  The Record Supports The Jury's Finding That Cisco's Compilations Are Protectable Under Section 102(b)

21      Contrary to Arista's argument (Br. 13-14), Cisco's compilations are also protectable under 17

22 U.S.C. § 102(b). Even though "computer programs are by definition functional," *Oracle Am., Inc. v.*

23 *Google Inc.*, 750 F.3d 1339, 1367 (Fed. Cir. 2014), "under Ninth Circuit law, an original work—even

24 one that serves a function—is entitled to copyright protection ***as long as the author had multiple ways***

25 ***to express the underlying idea***," *id.* (emphasis added). The record contains substantial evidence that

---

6   Cisco of course has an exclusive license to use the work Mr. Lougheed created at Stanford. Tr. 570:11-14, 639:7-16 (Lougheed).

1  there were multiple ways for Cisco (and its competitors) to select, arrange, coordinate and structure

2  their expressions of the ideas underlying each of the five compilations at issue at the time of creation.

3       For example, Arista's own CTO admitted that it was "technically possible" for Arista to have

4  used a "different user interface than Cisco's" or "an alternative command language" to provide the

5  same functionality. Tr. 800:19-23, 802:2-7 (Duda).  Disinterested third-party witness also testified that

6  Cisco's competitors had implemented CLIs that differed from Cisco's; a Juniper witness testified, for

7  example, that in creating a competing CLI, he purposely did not look at Cisco's CLI because "I wanted

8  to write something completely new."  Tr. 2060:5-16 (Shafer); *see also* Tr. 2060:19-2061:3 (Shafer)

9  (Juniper had a "green field" or "open pasture" where it could "go in any direction … There are no

10  constraints on what you are doing. … I could do whatever I wanted.");Tr. 2077:21-2078:11 (Shafer)

11  (no one at Juniper ever "sat down and copied" any of Cisco's multiword commands, screen outputs or

12  help descriptions);Tr. 2062:23-2063:1 (Shafer) (admitting that "Juniper has been able to effectively

13  compete against Cisco …using a CLI that is different from Cisco's CLI"); Tr. 2324:18-22

14  (Venkatraman) (admitting that "different designers, even at the same company, can choose different

15  words, different hierarchies, different syntax for the same functions").[7]

16       Cisco's witnesses confirmed that Cisco likewise had operated on a green field or open pasture.

17  Mr. Lougheed described the many choices available.  *See, e.g.*, Tr. 514:15-25 (because "[t]here

18  weren't any other devices like this at the time … we could certainly have chosen different words [or]

19  chosen different orders of these words"); Tr. 524:18-525:2 (command responses/screen outputs: "there

20  was no constraint"); Tr. 527:3-8 (help descriptions: agreeing there were no "constraints or restrictions

21  or functional demands"); *see also* Tr. 1717:17-1718:3 (Chambers) (not necessary "to steal the

22  commands … the hierarchies, the helpdesc screens" because "other people have been able to do this in

23  different ways without blatant copying"); Tr. 1236:21-1237:5 (Almeroth) (screen responses "can

24

25  [7]  Even at the individual command level (which is not the proper unit of analysis), the evidence
    showed that multiple options existed for constructing different commands to run identical functions,
26  as a disinterested HP witness Arista called testified.  Tr. 2324:11-13 (Venkatraman) ("[D]ifferent
    companies, different designers develop the CLI differently, name the commands differently."); Tr.
27  2325:24-2326:6 (Venkatraman) (describing word-choice options, concluding that "[t]he syntax may
    vary, but what you expect the router and the switch to do is quite consistent").
28

include any information, you can organize it in any way"); Tr. 1238:12-15 (Almeroth) ("there's other

ways" that Cisco's modes and prompts "could have been organized"); Tr. 1240:2-7 (Almeroth) (no

constraints on compiling user interfaces).[8]

The Court should disregard Arista's argument (Br. 15) that individual commands or help string

"names" are unprotectable "words and short phrases" (citing 37 C.F.R. § 202.1(a)).  The Court already

addressed this argument, ruling that "the Court finds no authority, and Arista has provided none, that

endorses a categorical exclusion from protectability of based solely on the length of a phrase."  ECF

719 at 10.  Further, the Court instructed that "individual words used in any of the asserted commands,"

"any single multiword command," and "individual help description phrases" are not protectable.  Tr.

2673:17-2674:14 (Instr. No. 39).  Arista's collection (Br. 15 & n.12) of unprotectable words and short

phrases has no bearing on the jury's determination that Cisco's ***compilations*** (not isolated "labels")

were protectable and infringed.   And as described above, Cisco's compilations of multiword

commands and help descriptions are original, creative, protectable expressions.[9]

### 3.   <u>The Record Supports The Jury's Finding That Arista Infringed Cisco's Protectable Expressions</u>

There can be no serious dispute that Cisco presented the jury with substantial evidence that

Arista infringed Cisco's protectable compilations, based on both direct and indirect evidence of

copying.  The Court's infringement instructions, which govern the instant motion, explained that Cisco

---

[8]   Arista misplaces reliance (Br. 14) on *Sega Enters. Ltd. v. Accolade, Inc.*, 977 F.2d 1510, 1524-25 (9th Cir. 1992), for the argument that an "exact set" of commands can be functional rather than creative.  *Sega* recognized that, where "there are many possible ways of accomplishing a given task[,] … the programmer's choice of program ***structure and design may be highly creative***"; "specific instructions" may be copied only if they "are the ***only and essential means*** of accomplishing a given task."  *Id.* at 1524 (emphasis added); *see also Oracle*, 750 F.3d at 1355-56 (a program's "sequence, structure, and organization, as well as the program's user interface" can be protected).  As Arista's own cited case (Br. 14 n.10) recognizes, "[t]he question is whether the utilitarian function[s] of [user interfaces] outweigh their expressive purposes so as to preclude copyright protection."  *Eng'g Dynamics, Inc. v. Structural Software, Inc.*, 26 F.3d 1335, 1346 (5th Cir. 1994).  Here, as in that case, the evidence shows that, "[o]n balance, … they do not."  *Id.*

[9]   Contrary to Arista's argument (Br. 14), Dr. Almeroth did not describe Cisco's arrangement of modes and prompts as a mere "idea," but rather noted that Cisco "organized" its "exec interface and then the privilege and then the global configuration and then the interface configuration modes and then the corresponding prompts" in a ***particular way*** that was creative because "there's other ways that that could have been organized … and so it's clear that there was a creative process in the modes and prompts as well."  Tr. 1238:2-15; *see also* Tr. 1238:21-1239:7 (Almeroth) ("[A]s part of the structure of the modes and prompts, they are nested" in a particular way "[a]nd that was a creative decision.  They didn't have to be nested, … .  And so that was something that was designed ….").

1  may establish Arista's copying through either: (1) direct evidence; or (2) indirect evidence, by showing

2  Arista had access to Cisco's works and the works are virtually identical.  Tr. 2671:22-2672:11 (Instr.

3  No. 36).  If copying is proven though **either** method, then Cisco must prove Arista's copying was

4  greater than *de minimis*.  Tr. 2675:3-10 (Instr. No. 41).

5      Arista erroneously suggests (Br. 16-17), in defiance of the Court's instructions, that virtual

6  identity must be shown even where there is direct evidence of copying.  That is not the law.  In the

7  Ninth Circuit, if a factfinder credits direct evidence of copying, it need not also determine whether

8  there is substantial similarity (or virtual identity) between the parties' works.  In *Norse v. Henry Holt*

9  *& Co.*, 991 F.2d 563 (9th Cir. 1993), for example, the Ninth Circuit explained that "a substantial

10  similarity analysis may be useful in a copyright case" where "'direct evidence of copying is not

11  available,'" but "the substantial similarity analysis is ***inapposite*** to the copying issue" in cases of direct

12  evidence, such as where (as here) a defendant "admit[s] that they in fact copied" the plaintiff's work.

13  *Id.* at 566 (emphasis added) (no need for substantial similarity test where plaintiff admitted to copying

14  "phrases" from letters, but not entire letters) (quoting *Narell v. Freeman*, 872 F.2d 907, 910 (9th Cir.

15  1989)).  The Ninth Circuit and its district courts have faithfully followed this law.[10]  Nor would it

16  make any sense to discredit direct evidence of copying—the rarest, strongest proof there is—unless a

17  plaintiff also proves the same by circumstantial evidence.[11]

18      ***Direct Evidence***:  Contrary to Arista's argument (Br. 17), there was substantial direct evidence

19

---

20  [10]   *See, e.g.*, *Range Rd. Music, Inc. v. E. Coast Foods, Inc.*, 668 F.3d 1148, 1154 (9th Cir. 2012) ("A
   showing of 'substantial similarity' is irrelevant" where the plaintiff "produced evidence … [of] direct

21  copying of copyrighted works."); *Funky Films, Inc. v. Time Warner Entm't Co.*, 462 F.3d 1072, 1076
   (9th Cir. 2006) ("fact-based" similarity inquiry only applies "[a]bsent evidence of direct copying");

22  *Cellular Accessories for Less, Inc. v. Trinitas LLC*, 65 F. Supp. 3d 909, 916 (C.D. Cal. 2014)
   ("Because Plaintiff has provided direct evidence of copying, the Court does not need to engage in a

23  substantial similarity analysis."); *ACT Grp., Inc. v. Hamlin*, 2014 WL 4662234, at *4 (D. Ariz. Sept.
   18, 2014) ("Where there is direct evidence of copying, a plaintiff need not address defendant's access

24  to the copyrighted work and substantial similarity."); *Rosen v. Martin*, 2013 WL 12063911, at *5
   (C.D. Cal. Apr. 19, 2013) ("[T]he Court need not rely on evidence of access and substantial similarity

25  to determine whether a copying took place because the undisputed evidence shows that the
   Photographs were copied before being posted online.").

26  [11]   Contrary to Arista's argument (Br. 17), *DC Comics v. Towle*, 802 F.3d 1012, 1026 (9th Cir. 2015),
   does not establish that the similarity test must be applied unless the "entire" work was copied.  In

27  holding that the similarity test does not apply to a defendant who admits to copying an entire work,
   *Towle* does not hold that the test does apply to admitted copiers who take less.  *See, e.g., Norse*, 991

28  F.2d at 566 (no need for similarity test for admitted copying of merely "phrases" from letters).

1   that Arista copied **protectable** elements of Cisco's user interfaces.  *See, e.g.*, Tr. 781:8-14 (Duda)

2   (admitting that "Arista copied Cisco's CLI from Cisco sources"); Tr. 878:1-5 (Duda) (admitting that

3   "it's undisputed now that Arista copied CLI commands from Cisco's source code"); Tr. 1803:12-15

4   (Duda); (confirming previous testimony); Tr. 782:11-23 (Duda) (admitting to previous sworn

5   testimony that Arista "slavishly" copied Cisco's CLI commands"); Tr. Ex. 203-A (Duda) (Jenkins

6   Decl., Ex. H) (admitting in a public presentation that Arista "slavishly" copied Cisco's CLI, and

7   stating that "even the things we thought were really silly, we went ahead and copied them anyway");

8   Tr. 900:17-25 (Sadana) (admitting that Arista "intentionally copied" Cisco's CLI "for many of our

9   base or core features"); Tr. 1967:17-21 (Ullal) (admitting that Arista "told customers that Arista had

10  copied CLI commands into Arista products"); Tr. 901:1-6 (Sadana) (admitting that Arista told

11  customers "that [Arista's] CLI is just like Cisco's CLI"); Tr. 926:19-927:5 (Sadana) (admitting

12  Arista's assertions to customers that "the CLI commands in [Arista's] switch are identical to Cisco

13  IOS"); Tr. 1017:22-1018:9 (Dale) (admitting that Arista told customers that it had a "CLI identical to

14  Cisco IOS"); Tr. 1022:15-19 (Dale) (admitting that Arista represented that its CLI commands are the

15  "same as Cisco IOS"); Tr. 1025:23-25 (Dale) (same); Tr. 1030:20-24 (Dale) (admitting that he

16  described Arista CLI as a "drop-in replacement" for Cisco CLI "given the 99.999 percent similarity in

17  the CLI"); Tr. Ex. 295 (Jenkins Decl., Ex. R); Tr. Ex. 545  (Jenkins Decl., Ex. S) (Arista presentation

18  to AT&T promoting users' ability to "copy and paste the configurations from their existing Cisco

19  infrastructure" because "90 percent plus of commands will be accepted").

20      ***Indirect Evidence***:  Given the extensive direct evidence of copying, the Court need not reach

21  the question of the legal sufficiency of the indirect evidence of copying, but if reached, that evidence is

22  also substantial.  Arista does not challenge the sufficiency of  the evidence that Arista had access to

23  Cisco's works.  And its argument (Br. 17-18) that Cisco failed to prove virtual identity is unavailing.

24  ***First***, under the extrinsic test, the relevant comparison is not between works "as a whole" but rather

25  between "the original protected elements of Cisco's copyright works and the corresponding elements

26  of Arista's works."  Tr. 2672:25-2673:3 (Instr. No. 39).  Arista does not dispute that Cisco showed

27  virtual identity on an element-by-element basis.  *See* Tr. Exs. 4794, 4799, 4800, 9037 (comparing

28  asserted expressions) (at Jenkins Decl., Exs. J-M); Tr. 2222:25-2223:3 (Black).  ***Second***, Arista points

1    to no evidence to negate a reasonable inference that "ordinary, reasonable observer would find the

2    total concept and feel" of the works as a whole to be virtually identical, as the intrinsic test requires,

3    Tr. 2674:15-19 (Instr. No. 39).  There was ample evidence of the works' virtual identity in overall

4    "concept and feel."  Arista's own witnesses admitted that Arista's CLI is a "99.999 percent" "drop-in

5    replacement" for Cisco's CLI.  Tr. 1030:20-24 (Dale).  Disinterested third-party witnesses testified to

6    Cisco CLI's distinctive look and feel, *see* Tr. 2063:15-2064:19 (Shafer) (could tell by merely flipping

7    through exhibit that commands were not Juniper's because "[t]he style between IOS and Junos is very

8    different"), which is what Arista deliberately copied.  *See also, e.g.*, Tr. 1247:7-1248:11 (Almeroth)

9    (discussing Arista comparison study (Tr. Ex. 488) (Jenkins Decl., Ex. T) that concluded Cisco and

10   Arista CLIs as a whole "were very similar in things like the commands, the configurations, the help

11   outputs"); Tr. 1249:21-1251:4 (Almeroth) (evidence of "extensive similarity" of Cisco and Arista

12   CLIs); Tr. 2530:22-2531:20 (Almeroth) (overall similarity of the CLIs).

13         ***More Than De Minimis***: Substantial evidence supports a finding that Arista's copying of

14   Arista's protected compilations was more than *de minimis*.  Arista ignores (Br. 18) that this

15   requirement looks to "***the qualitative*** as well as the quantitative significance of the copied portion in

16   relation to Cisco's works as a whole," Tr. 2675:8-10 (Instr. No. 41) (emphasis added); *see, e.g.*,

17   *Brocade Commc'ns Sys., Inc. v. A10 Networks, Inc.*, 2013 WL 831528, at *8 (N.D. Cal. Jan. 10, 2013)

18   (145 lines of copied code out of 10 million lines in overall product not *de minimis* given the

19   "importance of the [copied] code" "to the plaintiff's work as a whole").  The record contains

20   substantial evidence that Arista copied the most qualitatively significant portions of Cisco's user

21   interfaces.  *See, e.g.*, Tr. 900:17-23 (Sadana) (admitting that Arista "intentionally copied Cisco's CLI"

22   for "many of our ***base or core features***") (emphasis added); Tr. 2530:14-18 (Almeroth) ("[I]f you look

23   at the evidence that describes both what Arista was trying to do, the fact that they were characterizing

24   what they were doing as in taking the ***important parts*** from the CLI, it's clear that what they were

25   taking was the ***substantial important pieces*** of the Cisco CLI.") (emphasis added).  Arista failed to

26   rebut that evidence. *See* Tr. 2221:14-22 (Black) (admitting he did not consider the quality or

27   importance of the particular elements Arista copied).  And in any event, Arista cannot seriously

28   contend that its copying was ***quantitatively*** insignificant when its own witnesses touted its CLI as a

"99.999 percent" "drop-in replacement" for Cisco's CLI.  Tr. 1030:20-24 (Dale); *see also* Tr. 2532:7 (Almeroth) (Arista copied "significant portions of the CLI"); Tr. 2533:20-2534:6 (Almeroth) (52% of the commands listed in Arista's manual for its first version were in Cisco's CLI); Tr. 2534:8-14 (Almeroth) (same as to 37% of the commands listed in Arista's manual for its latest version); *see also infra* Part III.A (third factor).[12]

### 4.   The Relevant Copyrighted "Works"—Cisco's User Interfaces—Are Properly In Evidence

The Court has already rejected Arista's arguments (Br. 18-20) that Cisco's user interfaces are not "separable" from source code or are not properly in evidence, and should do so again.

***The Relevant "Works" Are Cisco's User Interfaces***:  After briefing (ECF 633, 635) and over two hours of oral argument (Tr. 28:1-110:24), the Court ruled that it was

> persuaded based upon the *Manufacturers Technology* case, and that line of cases[,] … that was based on an analysis of the user interface that, in fact, the registration of the operating system is creating here two separate registrations and protectable works, and ***I will allow Cisco to go forward on the definition of its works as each of the user interfaces related to the particular version of the operating system at issue.***

Tr. 111:17-112:5 (emphasis added) (referring to *Mfrs. Techs., Inc. v. Cams, Inc.*, 706 F. Supp. 984, 993 (D. Conn. 1989) ("the single registration of the computer program … accomplish[es] two interrelated yet distinct registrations; one of the program itself and one of the screen displays or user interface of that program")); *see also* ECF 633 at 3 (citing cases).  In keeping with its pre-trial ruling, the Court instructed the jury that "[t]he copyrighted works involved in this trial are: … Cisco's four user interfaces for IOS, IOS-XR, IOS-XE, and NX-OS."  Tr. 2668:19-21 (Instr. No. 25).

The Court should reject Arista's repeated effort to question those rulings again here.  ***First***, contrary to Arista's argument (Br. 3, 19) the Court already ruled that "whether or not there's independent economic value of the user interface" has no bearing on the definition of the works.  Tr.

---

[12]   Arista errs in suggesting (Br. 18 & n.14) that merger and scènes à faire "defeat[]" infringement because they are "properly part of the infringement analysis itself" and are "not affirmative defenses," for the Court instructed the jury to the contrary, Tr. 2680:1-25 (Instr. Nos. 60-61), and those instructions govern here; *see also Oracle*, 750 F.3d at 1358 (considering Arista's cited cases and concluding that merger and scènes à faire are "affirmative defenses").  If anything, Arista has it backwards: given the jury's infringement verdict, the jury must be presumed to have found Cisco's compilations original and protectable, which by Arista's own logic would foreclose any merger and scènes à faire defenses.

112:6-16.  The cases cited by Arista (Br. 19-20) are the same ones the Court already considered and rejected.  *See* ECF 635; Tr. 112:6-16 (limiting relevance to fair use).  In any event, the record contains substantial evidence of the independent "value" of Cisco's CLI.  *See, e.g.*, Tr. 468:2-9 (Bakan) (describing "the value in the CLI" as "our products are the most popular products in the industry. … And as a result we know that our products which are primarily managed through CLI, are the leading products of choice by our customers.  So we know that CLI is a very important aspect of our products."); Tr. 468:10-21 (Bakan) ("CLI represents all the functionality that's available in the products.  It's a mechanism by which [users] … actually troubleshoot, make sure that these devices that are running very mission-critical systems, are working properly and working efficiently all the time.  So CLI is a very critical aspect of our product portfolio."); Tr. 475:16-19 (Bakan) ("the value of the CLI … is representing all the capabilities of the devices whether it's a switch or [a] router"); Tr. 1055:23-25 (Kathail) (agreeing that "Cisco CLI is important to Cisco's business"); Tr. Ex. 250 (Jenkins Decl., Ex. U) (Giancarlo declaration) ("Cisco's proprietary IOS is one of the company's most valuable assets and a critical component of Cisco's business. The same holds true for the CLI user interface implemented by the IOS.  This interface, which is unique to Cisco, has been developed over many years through the expenditure by Cisco of hundreds of millions of dollars.").  Further, Arista's damages expert was able to offer an opinion on the economic value of Cisco's user interfaces, Tr. 2393:1-2394:13 (Elsten), relying on the same premise as Cisco's damages expert that the user interface has separable value, Tr. 2590:11-24 (Chevalier) (opining on economic value of "the [user] interface and training and ease of use and cutting and pasting scripts," all of which "really doesn't have anything to do with the source code"); *see also* Tr. 2590:25-2591:4 (Chevalier) ("[T]he CLI itself has economic value.").

**_Second_**, Arista errs in arguing (Br. 20) that Cisco's user interfaces are not fixed in a tangible medium, as this is simply a restatement of Arista's (failed) argument that a copyright in a user interface cannot exist apart from its source code.  But as noted above, a user interface—even one composed of non-literal elements—is independently copyrightable.  *See Napoli v. Sears, Roebuck & Co.*, 874 F. Supp. 206, 211 (N.D. Ill. 1995) ("[T]he reason copyright coverage extends to non-literal elements is that the same non-literal element (*i.e.*, the screen display) can be produced by different

1   source codes."); ECF 633 at 3 n.1 (citing cases).  Arista fails to explain how a command-line user

2   interface, which consists solely of words and symbols organized and set in unvarying patterns, is not

3   fixed.  *See Torah Soft Ltd. v. Drosnin*, 136 F. Supp. 2d 276, 283 (S.D.N.Y. 2001) (user interface

4   "'fixed' insofar as the output is repeatable whenever the input is identical. … This 'repetitive

5   sequence' fixes the matrixes").  Further, Cisco's registrations create presumptions of validity—

6   including fixation—that the jury could credit.  *See supra* Part. II.B.1.  In any event, Arista never

7   objected to the absence of a "fixation" instruction to the jury.

8        ***Cisco's User Interfaces Are Sufficiently In Evidence***:  The record contradicts Arista's

9   assertion (Br. 18-19) that Cisco did not place the parties' user interfaces into evidence.

10       ***First***, Cisco introduced the copyright registration materials associated with each user interface

11   and detailed technical documentation including user manuals, command references, command

12   summaries and configuration guides, all of which were accessible to the jury.  *See* Tr. Ex. 4803

13   (Jenkins Decl. ¶ 28) (all Cisco materials for user interfaces at issue deposited with Copyright Office,

14   including manuals);[13] Tr. 843:4-19 (exhibit includes "all of the different user manuals"); Tr. 1168:11-

15   1169:4 (Lang).  Arista's user interfaces were introduced through its manuals.  Tr. Exs. 1-15 (Jenkins

16   Decl. ¶ 28) (manuals); Tr. 1265:19-1266:12 (Almeroth) (exhibits are for "all different versions of

17   Arista's EOS").  Cisco's counsel informed the Court, without objection, that the works as a whole

18   were in evidence through these exhibits, Tr. 2636:21-22, and the Court concluded that, rather than list

19   the specific exhibits in the jury instructions, it would instead inform the jury where to find the works as

20   a whole if asked that question, Tr. 2637:4-7.  Cisco's manuals, which "exceed[] ***600,000 pages***," Tr.

21   1197:9-12 (Lang) (emphasis added), provide more than sufficient evidence of the contents of the user

22   interfaces at issue—they include the entirety of the user interfaces, including, *e.g.*, commands, modes

23   and prompts, and screen responses available to customers.  These manuals enable Cisco's and Arista's

---

13   Exhibit 4803 is a thumb drive that includes all of the materials submitted to the Copyright Office
in connection with Cisco's obtaining a copyright registration in the relevant user interfaces, which
included (1) the relevant user manuals; and (2) many pages of source code, as required by the
Copyright Office.  As the Court is aware, this exhibit contains an "index … plus all of the registration
materials in one," which was "hundreds of thousands of pages."  Tr. 1302:4-7.  Given that these were
sufficient for the Register of Copyrights to carry out her statutory duties by registering the works after
examination, they are likewise sufficient to constitute evidence of the user interfaces.  *Alaska Stock,
LLC v. Houghton Mifflin Harcourt Publ'g Co.*, 747 F.3d 673, 683 (9th Cir. 2014).

customers to learn about each user interface and how to interact with them.  *See, e.g.*, Tr. 755:25-756:15 (Slattery) (customer would learn how to work with new user interface "first by reading through their manual, the documentation.  And that gives me a sense overall for how the system is configured"); *see also* Tr. 2557:16-18 (Almeroth) ("[Arista's] user manual is described as the authoritative source, and it lists [Arista's] commands."); Tr. 1257:22-1258:10 (Almeroth) (confirming, based on his own testing, that the manual reflects the user interface, and that he "could compare what was in the manual and confirm that switches were implementing commands that had outputs and help descriptions that were similar to what was described in the manual. … [I]t's not like you get a manual and it's very different than the way that the switch works"); Tr. 2559:22-23 (Almeroth) ("the only evidence that we really have as to what the accurate commands are, is what's in the manual").  In addition, the record contains testimony of what customers experience when they interact with the user interfaces.  *See, e.g.*, Tr. 506:12-509:5 (Lougheed); Tr. 678:11-679:21 (Remaker); Tr. 1219:4-1224:23; 1276:20-1278:2 (Almeroth); Tr. 2130:22-2131:18 (Black).

***Second***, Arista errs in arguing (Br. 19) that the manuals do not contain "all" aspects of the user interface.  Notably, Arista does not provide any example of a missing feature that the jury needed to consider.  In any event, the manuals allowed the jury to make a fair comparison between Cisco's and Arista's user interfaces.  In *Data East USA, Inc. v. Epyx, Inc.*, 862 F.2d 204 (9th Cir. 1988), for example, the plaintiff alleged that the defendant's karate video game infringed the "overall appearance, compilation, and sequence of the audio-visual display" of the plaintiff's karate video game.  *Id.* at 205-06.  On appeal, the defendant claimed that there had not been sufficient evidence to establish the contents of the plaintiff's work at trial because, "[a]s evidence of the arcade game's audio-visual work, plaintiff submitted still photographs.  Plaintiff did not produce in court the arcade game itself or a video reproduction of the arcade game."  *Id.* at 207.  The defendant further argued that the plaintiff could have placed "the ***entire*** audio-visual work before the court." *Id.* (emphasis added). The Ninth Circuit rejected the defendant's challenge, holding that:

> The issue here, then, is whether sufficient evidence to support the district court's findings as to the contents of the arcade game's audio-visual work was present. Along with the photographs, testimony as to the content of the original was also presented. We find the still photographs which depict all images and all moves that occur when the game sequences through the various skill levels, along with testimony, ***to constitute***

*sufficient evidence of the contents of the arcade game's audio-visual work to make a fair comparison with Epyx's game*.

*Id.* (emphasis added). The same applies here: Cisco's extensive evidence, including its manuals (which are, at a minimum, text-based analogs of photographs) and testimony elicited at trial, "constitute sufficient evidence of the contents of [Cisco's user interfaces] to make a fair comparison with [Arista's user interfaces]." *Id.*[14] Nor does Arista disclose what else (other than source code) would further aid the jury in its comparison. Arista compounds its error by mistakenly relying (Br. 18-19) on *Antonick v. Electronic Arts, Inc.*, 841 F.3d 1062, 1066 (9th Cir. 2016), for the proposition that the "complete" works at issue must be put into evidence. *Antonick* imposes no such requirement; there, the plaintiff asserted only infringement of source code but failed to put *any* source code into evidence. *See id.* ("none of the source code was in evidence").[15] In contrast, the materials Cisco submitted to the Copyright Office (consisting of over 600,000 pages of manuals), accompanied by testimony, was more than sufficient evidence for the jury to make a fair comparison of the works.

**Third**, Arista misplaces its reliance (Br. 19) on the fact that Exhibit 4803 does not contain "complete source code," for as noted above, the Court already ruled that the user interfaces are the relevant works, so there was no reason for the jury to inspect "complete" source code. *See Abarca Health, LLC v. PharmPix Corp.*, 806 F. Supp. 2d 483, 491 (D.P.R. 2011) (source code irrelevant to comparing similarities between non-literal elements of user interfaces); Tr. 546:13-15 ("the only claim of copying … is as to the CLI, not the source code").

**Fourth**, while Arista misleadingly cites (Br. 19, quoting Tr. 1899:14-22, 1901:10-15) attorney argument that "manuals do not prove 'the totality of what's implemented in the product,'" this referred

---

[14] Courts routinely allow comparison of materials that sufficiently represent the contents of the works at issue. *See, e.g., Latele Television, C.A. v. Telemundo Commc'ns Grp., LLC*, 2015 WL 427817, at *10 (S.D. Fla. Feb. 2, 2015) (reasonable factfinder may assess substantial similarity based on "representative samples of the work, rather than being required to look at all [376] episodes"); *Zella v. E.W. Scripps Co.*, 529 F. Supp. 2d 1124, 1132 (C.D. Cal. 2007) (evaluating infringement claim based on eight episodes of 150-episode series because the Court was "satisfied that the eight episodes … accurately reflect the content" of the series).

[15] The Court referenced "the *Electronic Arts* Ninth Circuit ruling" when it approved of admitting Exhibit 4803 as a form of "making sure that we have [the works as a whole] in," as long as Cisco introduced the exhibit through a witness. Tr. 842:16-846:2. Cisco did so. Tr. 1168:1-1169:5 (Lang). In addition, contrary to Arista's insinuation (Br. 19 n.15), the Court did not require Cisco to provide a list of the exhibits that constituted Cisco's works, Tr. 1628:8-14, but instead asked Cisco to have such a list "available for me, if I get a question" from the jury, Tr. 2637:5-7, which it did not.

---

1   to **unauthenticated third-party** manuals.  Cisco merely argued that Dr. Black could not testify that the

2   contents of one such manual reflect operations of **other** products not covered by that manual.

### III.    ARISTA IS NOT ENTITLED TO JMOL ON ITS AFFIRMATIVE DEFENSES

4        Arista makes no attempt to apply its affirmative defenses to **any** of Cisco's five protectable

5   elements as **compilations**—the only relevant units of analysis.  To the extent it references any

6   particular component, Arista makes reference only to isolated "commands" without any mention of

7   modes and prompts, command responses or help descriptions.  Because the Court must here construe

8   the jury's findings in Cisco' favor, the Court must presume that the jury found **each** of Cisco's

9   compilations original, protectable and infringed.  Arista must therefore show that its defenses apply to

10  **all** of Cisco's five compilations in order to prevail.  It fails to do so.

### A.    The Record Supports The Jury's Rejection Of Arista's Fair Use Defense

12       Contrary to Arista's argument (Br. 20-23), the record provides overwhelming evidence

13  negating any affirmative defense of fair use.

14       ***First factor***:  It is undisputed that Arista's use of Cisco's works was for an exclusively

15  commercial purpose: to compete with Cisco for sales of networking products by providing an identical

16  user-interface experience, aimed at undercutting Cisco by exploiting Cisco's own original copyrighted

17  material.  *E.g.*, Tr. Ex. 4745 (Ullal) (Jenkins Decl., Ex. V) ("I would never compete with Cisco

18  directly in a conventional way" because "it would take me 15 years and 15,000 engineers"); Tr.

19  1016:11-15 (Dale); Tr. 1925:21-1926:14 (Ullal); Tr. 2238:21-2239:7 (Black). [16]

20       Further, a reasonable jury could have found that the sole purpose of Arista's infringing use was

21  to directly compete with Cisco by offering the same customers a substitute user interface, and thus

22  was not a transformative use.  For example, the record includes substantial evidence that:  (1) Arista

23  did not change or modify any of Cisco's works;[17] (2) Arista promoted its user interface as a direct

---

[16]  Arista's reliance (Br. 21) on *Oracle* for the proposition that commercial purpose is given reduced
weight is unavailing, as there the Federal Circuit reversed a JMOL ruling after the jury **deadlocked** on
fair use, 750 F.3d at 1347, and on remand the district court **upheld** the jury's fair-use verdict on
JMOL, 2016 WL 3181206 at *1 ("our jury could reasonably have found for either side on the fair use
issue").  This approach counsels respect for the jury's fair-use verdict here.

[17]  *E.g.*, Tr. 1807:7-15 (Duda) (Arista saw "no reason" to innovate or change commands "just for the
sake of changing them"); Tr. 2525:8-21 (Almeroth) (interpreting Tr. Ex. 183 (Jenkins Decl., Ex. W) to
(footnote continued)

1    substitute for Cisco's, thus requiring minimal retraining;[18] and (3) Arista competed head-to-head with

2    Cisco for the same customers in the same markets.[19]   A reasonable jury could easily conclude that

3    Arista's use of Cisco CLI in its EOS user interface did not add any "new expression, meaning or

4    message," and instead "merely supersed[ed] the objects of" Cisco's.  Tr. 2676:16-17 (Instr. No. 56).

5    Finally, the jury heard evidence of Arista's bad faith, which weighs against fair use.  *E.g.*, Tr. 2677:6-

6    7 (Instr. No. 56); Tr. Exs. 187, 203-A, 842 (Jenkins Decl., Exs. Z, H, AA).

7         The above is more than enough to provide substantial evidence that the first factor weighs

8    against fair use.  While Arista argues (Br. 10) that it transformed Cisco's CLI by having commands

9    issued by an "automated" mechanism rather than "by typing into a keyboard," using the ***same***

10   expressions for the ***same*** purpose in ***competing*** products is not transformative.  That a computer

11   program rather than a human inputs an expression does not change the expression or its purpose: "The

12   transformative use inquiry … focuses on the use, not the user."  William F. Patry, PATRY ON FAIR USE

13   § 3:1 (2016).  Because the expressions at issue operate the same functions in both works, the jury

14   could reasonably reject Arista's transformative use defense.

15        ***Second factor***:  The second factor, which has little import here, reflects a "spectrum" between

16   "informational" and "creative" uses.  Tr. 2677:8-16 (Instr. No. 53).  The record contains substantial

17   evidence of the creative choices made by Cisco in selecting and arranging its compilations of

18   multiword command expressions, modes and prompts, command responses and help descriptions.  *See*

19   *supra* Part II.B.1-2.  There is no dispute that Cisco's compilations could be designed and organized in

20   any different number of ways and accomplish the same functionality.  *See supra* and *infra* Parts II.B.2

21   & III.B.  Further, unlike the defendant's use in *Oracle* (*contra* Br. 22), Arista copied Cisco's works to

22   directly compete in the ***same*** market for the ***same*** customers.   Nor is there any issue of

---

23   mean that Arista "wanted the CLI to be the same as Cisco's.  They didn't want to change it."); Tr.
     2526:13-23 (Almeroth); Tr. Exs. 176, 183, 4794, 4799, 4800 (Jenkins Decl., Exs. X, W, J-L) .

24   [18]   *E.g.*, Tr. Ex. 171 (Jenkins Decl., Ex. Y) ("[Arista] would be a ***practical drop-in replacement*** for
     the Cisco given the 99.999% similarity in the CLI") (emphasis added); Tr. 1016:11-15 (Dale) (Arista

25   customers "can save re-training costs and they can easily adopt Arista's networking equipment
     because it has the same user interface as Cisco's"); Tr. 2229:6-2230:4 (Black) (Arista "is a very close

26   clone of the IOS CLI.  This is a major plus for the majority of customers who have already Cisco
     trained staff"); *see also* Tr. 1022:15-1023:6 (Dale) Tr. 1042:19-22 (Dale); Tr. 2500:15-25 (Sadana);

27   Tr. 2526:5-12 (Almeroth).

     [19]   *E.g.*, Tr. 1008:13-16 (Dale); Tr. 2340:8-14 (Summers); Tr. 2509:18-24 (Sadana).

28

interoperability, as CLI involves how human operators communicate with a machine rather than how machines must be programmed to communicate with each other, as was the case in *Oracle*.  *See* Tr. 2514:3-15 (Sadana).

*__Third factor__*:  The Court instructed the jury to consider "both the quantity of the material used [and] the quality or importance of the material," as "[e]ven a small part may be qualitatively the most important part of the work."  Tr. 2677:17-2678:13 (Instr. No. 55).  Arista makes no mention of qualitative importance, but the record shows that the copied material was of great value to Cisco, *see supra* Part II.B.3.  Arista knew this—it specifically promoted the copied material as being among the most important to its customers, *see* Tr. 2265:9-10 (Gourlay) (Jenkins Decl., Ex. BB); Tr. Exs. 171, 176, 278 (Jenkins Decl., Exs. X, Y, CC), and acknowledged that it consisted of "core features," Tr. 900:17-25 (Sadana).  Neither at trial nor in its brief did Arista dispute the evidence demonstrating that the copied portions of Cisco's works are qualitatively significant to Cisco.  *See supra* Part II.B.3; *see also* Tr. 1055:23-25 (Kathail); Tr. 1409:14-1410:15, 2529:6-2534:9, 2534:15-21, 2541:2-14, 2568:16-24 (Almeroth); Tr. 2221:14-22, Tr. 2247:9-11 (Black); Tr. Exs. 166A, 171, 488, 545 (Jenkins Decl., Exs. DD, Y, T, S).  And while Arista argues (Br. 22) that this factor does not weigh against a copier who "only copies as much as is necessary for [its] intended use" (quoting *Kelly v. Arriba Soft Corp.*, 336 F.3d 811, 820-21 (9th Cir. 2002)), Arista ignores that such a rule applies only where a defendant's "use of the [works] serves a different function than [plaintiff's] use," *Kelly*, 336 F.3d at 819, which was not the case here.

*__Fourth Factor__*:  A reasonable jury also could have found that Arista used Cisco's user interfaces to directly compete with Cisco, reducing the market value of Cisco's work.  *E.g.*, Tr. 1721:21-1722:18 (Chambers).  The evidence, for example, showed that Arista's product was intended as a "market replacement" for Cisco's.  *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 591 (1994); *see, e.g.*, Tr. 926:19-927:5 (Sadana); Tr. Exs. 295, 545.  Arista's admitted attempts (and successes) at converting Cisco customers based on its copying of Cisco's CLI confirms that there has been market harm. *E.g.*, Tr. Ex. 197 (Jenkins Decl., Ex. EE); Tr. 911:4-7 (Sadana) (Arista aimed to compete for Cisco's customers).  Arista admitted that it used Cisco's CLI to convert Cisco customers because it would have taken Arista too long and would have been too expensive for Arista to create its

CISCO'S OPPOSITION TO ARISTA'S MOTION FOR JMOL AND NEW TRIAL

own user interface from scratch; Arista instead chose to develop a user interface that was "a practical drop-in replacement" for Cisco's.  Tr. Ex. 4745 (Ullal); Tr. 1017:22-1018:9 (Dale); *see also* Tr. Exs. 171, 176, 197, 237, 648, 650 (Jenkins Decl., Exs. X-Y, EE-HH).

Nor is Arista correct to suggest (Br. 23) that "industry custom" justified Arista's copying.  As discussed below, *infra* Part III.C, no competitor matched Arista's breadth of copying of "core" commands, and Arista cites no evidence of "industry usage" of Cisco's compilations of modes and prompts, command responses or help descriptions.  Given that Dr. Black could not even offer a metric for what qualifies as "widespread use," Tr. 2253:13-25 (Black), the jury's rejection of Arista's argument was reasonable.

Ultimately, whether Arista's conduct is excused by fair use depends on the balance of these and other relevant factors in light of the objectives and policy of copyright law.  Tr. 2679:8-25 (Instr. 56A).  Based on this record, there is no basis to conclude that the jury acted so unreasonably that the only possible outcome must have been a finding of fair use; if anything, the opposite is true.

### B.    The Record Supports The Jury's Rejection Of Arista's Merger Defense

The jury also reasonably found that Arista did not satisfy its burden of proof on its merger defense.  As the Court instructed, to prove merger, Arista was required to show

> that at the time Cisco created the works, Cisco had only one way or very few ways to express the ideas underlying the elements of Cisco's copyrighted user interfaces[.] Material in an original work, even material that serves a function, is not subject to merger as long as the author had more than a few ways to express the underlying idea.

Tr. 2680:1-11 (Instr. No. 60).  Whether an element is "functional" is not the relevant inquiry; rather the ultimate question is whether "the idea contained" in a work "can be expressed in only one way." *Oracle*, 750 F.3d at 1360 (citing *Satava v. Lowry*, 323 F.3d 805, 812 n.5 (9th Cir. 2003)).  Furthermore, under "Ninth Circuit law, … the '***unique arrangement*** of computer program expression does not merge with the process so long as alternate expressions are available.'"  *Id.* (emphasis added) (quoting *Atari Games Corp. v. Nintendo of Am. Inc.*, 975 F.2d 832, 840 (Fed. Cir. 1992)).

Arista cites no evidence that any—let alone all—of the ideas underlying Cisco's unique selection, coordination,  arrangement and design of its protectable compilations could be expressed in only one way.  Rather, Arista merely concludes (Br. 25) that Cisco's expression was "highly

CISCO'S OPPOSITION TO ARISTA'S MOTION FOR JMOL AND NEW TRIAL

1  constrained."  As the party with the burden of proof, Arista's failure to direct the Court to the evidence

2  it claims the jury was required to believe alone defeats Arista's JMOL on merger.

3      In any event, there is substantial evidence supporting rejection of Arista's merger defense.

4  ***First***, it is undisputed that none of Cisco's protectable compilations existed at the time that Cisco

5  created them, evincing that many options were available to creators.  *See supra* Part II.B.1; Tr.

6  2212:14-17 (Black); Tr. 2220:11-2221:2 (Black).  For example, the commands used in Stanford's (pre-

7  Cisco) software had no internal structure at all, let alone the hierarchical structure Cisco created;

8  rather, it "had basically all the commands at the same level."  Tr. 520:18-24 (Lougheed).

9      ***Second***, there is substantial evidence that there were ***multiple*** ways for Cisco to select, arrange,

10  coordinate and structure the ideas underlying each of the five compilations at issue, and third-party

11  competitor testimony confirmed this.  *See supra* Part II.B.2; Tr. 2060:19-2061:3 (Shafer) ("green

12  field" or "open pasture" meant "[t]here are no constraints on what you are doing").  Cisco's CLI

13  "developers could have [organized] it any number of" ways, and likewise Arista's CLI "could have

14  been different from the [organization] of [IOS] and still have worked."  *Oracle*, 750 F.3d at 1361

15  (citation omitted).  This was more than enough for the jury to reject merger.

16      **C.**    **The Record Supports The Jury's Rejection Of Arista's Abandonment Defense**

17      To prove that Cisco abandoned its copyrights, Arista had to show that: (1) "Cisco intended to

18  surrender rights in the work"; and (2) "an act by Cisco evidencing that intent."  Tr. 2682:5-6 (Instr.

19  No. 93).  "Mere inaction does not constitute abandonment of the copyright," even though it may be a

20  factor that can be considered.  Tr. 2682:7-9.  Substantial evidence elicited at trial demonstrates that

21  Cisco never surrendered its rights, let alone made the requisite "overt act indicating an intention to

22  abandon [its] right."  *Micro Star v. Formgen Inc.*, 154 F.3d 1107, 1114 (9th Cir. 1998).

23      ***First***, the jury heard extensive testimony about the Huawei lawsuit in which Cisco publicly and

24  forcefully alleged that a competitor's copying of its CLI constituted copyright infringement.  *See* Tr.

25  960:7-25 (Giancarlo) (discussing Cisco's allegations of copyright infringement in its CLI against

26  Huawei (Tr. Ex. 4671) (Jenkins Decl., Ex. II)); Tr. 965:9-20 (Giancarlo) (discussing allegation of

27  copying of Cisco's CLI in a declaration offered in the Huawei litigation (Tr. Ex. 250)); Tr. 1171:18-24

28  (Lang) (discussing media coverage of Cisco's allegation that Huawei had copied its CLI (Tr. Ex. 4424)

1   (Jenkins Decl., Ex. JJ)).  This resulted in Huawei changing its CLI.  Thus, the jury could reasonably

2   believe that Cisco enforced its copyrights in its CLI when the breadth of copying demanded it.

3       **Second**, although "failure to pursue third-party infringers has regularly been rejected as … an

4   indication of abandonment," *Capitol Records, Inc. v. Naxos of Am., Inc.*, 372 F.3d 471, 484 (2d Cir.

5   2004), the jury nonetheless heard evidence demonstrating the sheer extent of Arista's copying, which

6   expanded at its July 2012 release.  Tr. 2535:23-2536:6 (Almeroth) ("significant jump").  For example,

7   Arista bragged that its CLI is "by far the most similar" to Cisco's. *See, e.g.*, Tr. Ex. 168 (Jenkins Decl.,

8   Ex. KK) (Arista stating that, while other CLIs "are IOS-like … we have by far the most similar one");

9   Tr. Ex. 6095 (Arista presentation stating its products feature "IOS-like CLI" while products from

10  competitors such as HP, Extreme and Dell do not); Tr. 1710:11-16 (Chambers) (Arista publicly stated

11  in 2014 that they did not "compete with Cisco in the traditional way" because "it would have taken

12  them 15,000 engineers and 15 years … to compete against" Cisco); *see also supra* Part II.B.3

13  (evidence of Arista promoting its CLI as identical to Cisco's).  Arista's own expert admitted it "would

14  make sense" to sue only the most blatant violators.  Tr. 2233:5-10 (Black).  As Mr. Chambers

15  explained, just as Cisco had decided to "hold Huawei accountable" as a competitor "who very

16  blatantly copied our CLI," it brought this suit because Arista was engaging in the "***same type of thing***"

17  Tr. 1713:15:-1714:7 (Chambers) (emphasis added); *see also* Tr. 1713:15 (Chambers) ("This was so

18  blatant."); Tr. 2302:23-2303:6 (Jiandani) (former Cisco employee: in her 22 years in the industry, she

19  never heard of any single competitor other than Arista ever make claims of copying Cisco's CLI to the

20  point it is a "drop-in" replacement).  A reasonable jury could well find that Cisco was entitled to

21  reserve the expense of a lawsuit for the most blatant infringers, such as Huawei and Arista.

22      **Third**, no witness testified to any overt act by Cisco signaling that its competitors could freely

23  copy its CLI.  The jury was entitled to credit testimony to the contrary.  *See* Tr. 2046:14-24 (Volpi);

24  Tr. 715:4-6 (Remaker) ("Q: And have you ever heard anybody at Cisco say 'Hey, it's free for

25  everybody to use?'" "A: I've never heard that."); Tr. 1055:19-22 (Kathail) (never "heard anyone say

26  that it was Cisco's policy to allow companies to copy Cisco CLI without a license").  Any

27  abandonment was further rebutted by evidence that Cisco's competitor Juniper took pains to not copy

28  Cisco's CLI to avoid getting sued.  Tr. 2060:5-10 (Shafer) (the first reason the creator of Juniper CLI

chose "not to intentionally look at competing CLI from Cisco" because "we didn't want to give Cisco any grounds to sue us"); Tr. 2061:24-2062:15 (Shafer) (Juniper did not use Cisco's CLI commands "to stay clear of any allegation" of infringement of Cisco's intellectual property rights).

Indeed, the jury was not required to credit **any** of Arista's purported evidence of abandonment, *Johnson*, 251 F.3d at 1227, and was free to find Arista's evidence unpersuasive and insufficient to carry its burden of proof.  For example, Cisco's witnesses repeatedly explained that Cisco considered its products "industry standard" in the sense of being **popular**, *e.g.* Tr. 1059:4-8 (Kathail) (phrases "industry standard" in draft press release (Tr. Ex. 5464) (Jenkins Decl., Ex. LL), and "sets the standard" when published (Tr. Ex. 494) (Jenkins Decl., Ex. MM), "are [the] same, they are basically saying IOS is the best of the breed"); Tr. 2279:18 (Jiandani) ("[I]t's become like the gold standard."). Arista's own witnesses agree.  Tr. 803:17-20 (Duda) (conceding "no industry ratified standard … mandates the use of Cisco CLI commands"); Tr. 904:12-19 (Sadana) (agreeing that "industry standard" means "just popular in the industry").  But works do not lose protection by becoming successful.  *See, e.g.*, *Warner Bros., Inc. v. Am. Broad. Cos.*, 720 F.2d 231, 242 (2d Cir. 1983) ("No matter how well known a copyrighted phrase becomes, its author is entitled to guard against its appropriation to promote the sale of commercial products.").  Thus, even if Cisco knew of other competitors' alleged copying of lesser amounts of its CLI (Br. 6-10), the jury could reasonably conclude that Cisco never abandoned its right to prevent Arista's "blatant" infringement.

### D.    The Record Supports The Jury's Rejection Of Arista's Misuse Defense

Finally, substantial evidence supports the jury's rejection of the affirmative defense of copyright misuse, which required Arista to prove, by a preponderance of the evidence, that "Cisco attempted to use the existence of its copyrights to prevent Arista from using unprotected elements of the copyrighted work or to prevent Arista from undertaking activity sa[f]e-guarded by public policy, such as the policies supporting fair use."  Tr. 2681:16-20 (Instr. No. 62).

Arista provides no explanation (Br. 24) of how Cisco purportedly sought to "stifle fair competition" in broader markets; rather, Arista merely cites to its "Factual Background" section without any reference to any evidence showing that Cisco attempted to use its copyrights to seek control over **unprotected** elements or interfere with protected activities.  Arista never even mentioned

1   its misuse defense in its closing argument.  *See* Tr. 2740:9-2794:10.  Because Arista bears the burden

2   of proving its copyright misuse, this absence of specific evidence alone justifies denying JMOL.

3          In any event, Cisco adduced substantial evidence refuting Arista's misuse defense.  For

4   example, Cisco demonstrated that it does not prohibit its customers from using competitors' products.

5   *See, e.g.*, Tr. 777:3-13 (Duda) (same customers buy from Cisco and Arista); *Apple Inc. v. Psystar*

6   *Corp.*, 658 F.3d 1150, 1157 (9th Cir. 2011) (in "the only case in which [the Ninth Circuit] upheld a

7   copyright misuse defense[, it] did so because the copyright licensor in that case prevented the licensee

8   from using any other competing product").  Nor did the lawsuit have a purpose beyond stopping

9   Arista's own infringing activity, such as policing a "gray market" for Cisco's products.  *See, e.g.*, Tr.

10  1709:24-1714:13 (Chambers) (genesis and purpose of suit); *see also supra* Part III.C (discussing sheer

11  extent of Arista's copying); *Omega S.A. v. Costco Wholesale Corp.*, 776 F.3d 692, 695 (9th Cir.

12  2015).  To the contrary, the unrebutted evidence shows that Cisco "welcomes competition, which has

13  been a very important part of getting us to be a better company," but that "competition … should be

14  fair.  And in this case, it has not been fair."  Tr. 2302:2-22 (Jiandani).  Because the jury was entitled to

15  credit this testimony, substantial evidence supports the jury's rejection of copyright misuse.

16  **IV.    <u>ARISTA'S MOTION FOR A NEW TRIAL SHOULD BE DENIED</u>**

17         The Court should reject, for two independent reasons, Arista's passing argument (Br. 25),

18  offered in the alternative, that "all the same reasons" support a new trial on "all issues."

19         ***First***, because Arista's motion "addresses only the sufficiency of the evidence" (Br. 1 n.1), a

20  more "stringent standard" applies:  "A [new trial] motion will be granted on this ground only if the

21  verdict 'is against the great weight of the evidence, or it is quite clear that the jury has reached a

22  seriously erroneous result.'"  *EEOC v. Pape Lift, Inc.*, 115 F.3d 676, 680 (9th Cir. 1997) (quoting

23  *Venegas v. Wagner,* 831 F.2d 1514, 1519 (9th Cir. 1987)); *see also Finjan*, 2016 WL 3880774, at *3

24  ("great weight" standard applies where movant does not challenge jury instructions or evidentiary

25  rulings).  The "ultimate[]" question is whether a new trial is "necessary to prevent a miscarriage of

26  justice."  *Experience Hendrix L.L.C. v. Hendrixlicensing.com Ltd.*, 762 F.3d 829, 842 (9th Cir. 2014).

27  Arista offers no persuasive argument that the verdict is against the "great weight" of evidence, let

28  alone how a new trial would prevent a "miscarriage of justice."  For the reasons discussed above, the

1    record sufficiently supports the jury's verdicts in Cisco's favor, and Arista's motion should be denied.

2        **Second**, even if the Court were to grant a new trial, it should be limited only to the particular

3    issues on which the Court determines that the verdict is against the "great weight" of evidence. Fed.

4    R. Civ. P. 59(a)(1) (court may grant new trial on "some of the issues").[20]  Arista offers no explanation

5    of how any of the issues it raises are so "interwoven" as to require a new trial on "all issues" to avoid

6    injustice.  Arista's cited case (Br. 25) ordered only a partial new trial, limited to certain liability issues

7    that were "distinct and separable." *Lies v. Farrell Lines, Inc.*, 641 F.2d 765, 774 (9th Cir. 1981).

8        For example, each of Arista's affirmative defenses **assumes** infringement and places the burden

9    of proof upon Arista.  Tr. 2679:9-10 (fair use); 2680:10-11 (merger); 2680:24-25 (scènes à faire);

10    2681:21-22 (misuse); 2682:2-3 (abandonment).  Thus, any new trial may be limited to any such

11    defenses, with an instruction that infringement has already been found.  This is what occurred in

12    *Oracle*, where the district court held a new trial only on fair use.  *Oracle Am., Inc. v. Google Inc.*, No.

13    10-cv-3561, ECF 1981 at 11 (Instr. No. 20) (N.D. Cal. May 26, 2016) (new trial limited to fair use,

14    with instruction that infringement "is a given, already established"); *see also Zottola v. City of*

15    *Oakland*, 32 F. App'x 307, 313 (9th Cir. 2002) (affirming new trial on limited issues because differing

16    "burdens of proof" correspond to "distinct and separable stages of litigation").  The other issues raised

17    in Arista's motion are likewise distinct and separable; a limited trial would be no different than if the

18    Court had granted summary judgment to Cisco on any of these issues, and Arista articulates no

19    injustice that warrants deviating from the preference to not re-litigate "issues already well settled."

20    *Lies*, 641 F.2d at 775.

21    **V.    CONCLUSION**

22        For the foregoing reasons, the Court should deny Arista's motion in its entirety.

23

24    Dated:  January 31, 2017                    Respectfully submitted,

25                                       */s/ Kathleen Sullivan*
                                        Kathleen Sullivan (SBN 242261)

26    _____

27    [20]  While Cisco did not request a new trial in its motion for JMOL, the Court may choose to "order a
      new trial" on Arista's scènes à faire defense. Fed. R. Civ. P. 50(b)(2).  If the Court is at all inclined to
      grant any part of Arista's motion for JMOL, the more prudent course would be for the Court to hold a

28    new trial on those issues rather than grant JMOL.

kathleensullivan@quinnemanuel.com
Todd Anten (*admitted pro hac vice*)
toddanten@quinnemanuel.com
QUINN EMANUEL URQUHART &
SULLIVAN LLP
51 Madison Avenue, 22nd Floor
New York, NY 10010
Telephone: (212) 849-7000
Facsimile: (212) 849-7100

Sean S. Pak (SBN 219032)
seanpak@quinnemanuel.com
Amy H. Candido (SBN 237829)
amycandido@quinnemanuel.com
John M. Neukom (SBN 275887)
johnneukom@quinnemanuel.com.
QUINN EMANUEL URQUHART &
SULLIVAN LLP
50 California Street, 22nd Floor
San Francisco, CA 94111
Telephone: (415) 875-6600
Facsimile: (415) 875-6700

David Nelson (*admitted pro hac vice*)
davenelson@quinnemanuel.com
QUINN EMANUEL URQUHART &
SULLIVAN LLP
500 W Madison St, Suite 2450
Chicago, IL 60661
Telephone: (312) 705-7465
Facsimile: (312) 705 7401

Steven Cherny *admitted pro hac vice*)
steven.cherny@kirkland.com
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900

Adam R. Alper (SBN 196834)
adam.alper@kirkland.com
KIRKLAND & ELLIS LLP
555 California Street
San Francisco, California  94104
Telephone: (415) 439-1400
Facsimile: (415) 439-1500

Michael W. De Vries (SBN 211001)
michael.devries@kirkland.com
KIRKLAND & ELLIS LLP
333 South Hope Street
Los Angeles, California 90071
Telephone: (213) 680-8400
Facsimile: (213) 680-8500

*Attorneys for Plaintiff Cisco Systems, Inc.*