Kathleen Sullivan (SBN 242261)
kathleensullivan@quinnemanuel.com
Todd Anten (*admitted pro hac vice*)
toddanten@quinnemanuel.com
QUINN EMANUEL URQUHART &
SULLIVAN LLP
51 Madison Avenue, 22nd Floor
New York, NY 10010
Telephone: (212) 849-7000
Facsimile: (212) 849-7100

Sean S. Pak (SBN 219032)
seanpak@quinnemanuel.com
Amy H. Candido (SBN 237829)
amycandido@quinnemanuel.com
John M. Neukom (SBN 275887)
johnneukom@quinnemanuel.com.
QUINN EMANUEL URQUHART &
SULLIVAN LLP
50 California Street, 22nd Floor
San Francisco, CA 94111
Telephone: (415) 875-6600
Facsimile: (415) 875-6700

David Nelson (*admitted pro hac vice*)
davenelson@quinnemanuel.com
QUINN EMANUEL URQUHART &
SULLIVAN LLP
500 W Madison St, Suite 2450
Chicago, IL 60661
Telephone: (312) 705-7465
Facsimile: (312) 705 7401

Steven Cherny (*admitted pro hac vice*)
steven.cherny@kirkland.com
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900

Adam R. Alper (SBN 196834)
adam.alper@kirkland.com
KIRKLAND & ELLIS LLP
555 California Street
San Francisco, California 94104
Telephone: (415) 439-1400
Facsimile: (415) 439-1500

Michael W. De Vries (SBN 211001)
michael.devries@kirkland.com
KIRKLAND & ELLIS LLP
333 South Hope Street
Los Angeles, California 90071
Telephone: (213) 680-8400
Facsimile: (213) 680-8500

*Attorneys for Plaintiff Cisco Systems, Inc.*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

| | |
|---|---|
| CISCO SYSTEMS, INC., <br><br> Plaintiff, <br><br> vs. <br><br> ARISTA NETWORKS, INC., <br><br> Defendant. | CASE NO. 5:14-cv-5344-BLF (NC) <br><br> **CISCO'S REPLY IN FURTHER SUPPORT OF ITS RULE 50(b) MOTION FOR JUDGMENT AS A MATTER OF LAW** <br><br> Dept: Courtroom 3 - 5th Floor <br> Hearing Date:  April 27, 2017 <br> Hearing Time:  9:00 am <br> Judge: Hon. Beth Labson Freeman |

# TABLE OF CONTENTS

I.    PRELIMINARY STATEMENT ................................................................................ 1

II.   SCÈNES À FAIRE  REQUIRES THAT EXTERNAL FACTORS OTHER THAN
      CISCO'S CREATIVITY DICTATE THE SELECTION, ARRANGEMENT,
      ORGANIZATION AND DESIGN OF CISCO'S COMPILATIONS ................................ 1

III.  CISCO IS ENTITLED TO JMOL OF COPYRIGHT INFRINGEMENT LIABILITY ....... 3

      A.    Arista Identifies No Substantial Evidence To Establish That Any Of Cisco's
            Compilations Was Scènes À Faire ............................................................... 5

            1.    Multiword Command Expressions ....................................................... 6

                  a.    The "Basic Nature" of Cisco's Command-Line Interface Is
                        Not Evidence Of Scènes À Faire ............................................. 7

                  b.    "Pre-Existing" Individual "Conventions" Or "Terminology"
                        Is Not Evidence Of Scènes À Faire ......................................... 8

                  c.    Purported Customer Desire For "Consistency" And "Cross-
                        Compatibility" Is Not Evidence Of Scènes À Faire .................. 9

            2.    Modes And Prompts ......................................................................... 11

            3.    Command Responses/Screen Outputs ............................................... 11

            4.    Help Descriptions ........................................................................... 12

            5.    Cisco's User Interfaces As Compilations Of The Other Four
                  Compilations .................................................................................. 13

      B.    Scènes À Faire Is Not A Defense To Arista's Virtually Identical Copying ........... 13

IV.   GRANT OF CISCO'S MOTION DOES NOT REQUIRE A NEW JURY TRIAL ON
      "ALL ISSUES" ................................................................................................ 14

V.    CONCLUSION ................................................................................................ 15

# TABLE OF AUTHORITIES

**Cases**          **Page(s)**

*Antonick v. Elec. Arts., Inc.*,
   841 F.3d 1062 (9th Cir. 2016) ................................................................14

*Apple Computer, Inc. v. Microsoft Corp.*,
   35 F.3d 1435 (9th Cir. 1994) ...........................................................2, 13

*Atari, Inc. v. N. Am. Philips Consumer Elecs. Corp.*,
   672 F.2d 607 (7th Cir. 1982) ................................................................13

*CDN Inc. v. Kapes*,
   197 F.3d 1256 (9th Cir. 1999) ...............................................................4

*Curcio Webb LLC v. Nat'l Benefit Programs Agency, Inc.*,
   2006 WL 47506 (S.D. Ohio Jan. 9, 2006) .........................................10

*Diamond Foods,  Inc. v. Hottrix, LLC*,
   2016 WL 3880797 (N.D. Cal. July 18, 2016) .................................2, 4

*E.E.O.C. v. Go Daddy Software, Inc.*,
   581 F.3d 951 (9th Cir. 2009) ................................................................14

*Eng'g Dynamics, Inc. v. Structural Software, Inc.*,
   26 F.3d 1335 (5th Cir. 1994) .................................................................7

*Evergreen Safety Council v. RSA Network Inc.*,
   697 F.3d 1221 (9th Cir. 2012) ...............................................................2

*Feist Publ'ns, Inc. v. Rural Telephone Serv. Co.*,
   499 U.S. 340 (1991) ................................................................................3

*Fodor v. L.A. Unified Sch. Dist.*,
   2014 WL 12235424 (C.D. Cal. June 3, 2014) ....................................13

*Gable-Leigh, Inc. v. N. Am. Miss*,
   2001 WL 521695 (C.D. Cal. 2001) ......................................................13

*Gasoline Prods. Co v. Champlin Refining Co.*,
   283 U.S. 494 (1931) ..............................................................................15

*Harner v. Wong Corp.*,
   2013 WL 11549284 (D.N.M. Oct. 31, 2013) ......................................4

*Harper House, Inc. v. Thomas Nelson, Inc.*,
   889 F.2d 197 (9th Cir. 1989) ..................................................................3

*Informatica Corp. v. Bus. Objects Data Integration, Inc.*,
   2007 WL 2344962 (N.D. Cal. Aug. 16, 2007) ...................................14

*Masson v. New Yorker Magazine*,
   832 F. Supp. 1350 (N.D. Cal. 1993) ...................................................15

*Merchant Transaction Sys., Inc. v. Nelcela, Inc.*,
   2009 WL 723001 (D. Ariz. Mar. 18, 2009) ....................................................................3, 4, 7

*Metcalf v. Bochco*,
   294 F.3d 1069 (9th Cir. 2002)........................................................................................3

*Mitel, Inc. v. Iqtel, Inc.*,
   124 F.3d 1366 (10th Cir. 1997)......................................................................................5

*Oracle Am., Inc. v. Google Inc.*,
   750 F.3d 1339 (Fed. Cir. 2014).............................................................................2, 7, 11

*Oracle Am., Inc. v. Google Inc.*,
   2016 WL 3181206 (N.D. Cal. June 8, 2016) ..................................................................1

*Petrella v. Metro-Goldwyn-Mayer, Inc.*,
   134 S. Ct. 1962 (2014) .................................................................................................14

*Reeves v. Sanderson Plumbing Prods., Inc.*,
   530 U.S. 133 (2000) .....................................................................................................13

*Rice v. Fox Broad. Co.*,
   330 F.3d 1170 (9th Cir. 2003).......................................................................................2

*Softel, Inc. v. Dragon Med. & Sci. Commc'ns, Inc.*,
   118 F.3d 955 (2d Cir. 1997) ..........................................................................................4

*TD Bank, N.A. v. Hill*,
   2015 WL 4523570 (D.N.J. July 27, 2015) ...................................................................13

*Trans-World Int'l, Inc. v. Smith-Hemion Prods., Inc.*,
   952 F. Supp. 667 (C.D. Cal. 1996)...............................................................................15

*United Air Lines, Inc. v. Wiener*,
   286 F.2d 302 (9th Cir. 1961)........................................................................................15

*W. Union Co. v. MoneyGram Payment Sys., Inc.*,
   626 F.3d 1361 (Fed. Cir. 2010)....................................................................................14

*Wharf v. Burlington N. R.R. Co.*,
   60 F.3d 631 (9th Cir. 1995)..........................................................................................14

*Whitserve, LLC v. Computer Packages, Inc.*,
   694 F.3d 10 (Fed. Cir. 2012)........................................................................................14

## Rules / Statutes

17 U.S.C. § 103 .....................................................................................................................10

Fed. R. Civ. P. 50(a) .............................................................................................................14

Fed. R. Civ. P. 50(b) .............................................................................................................14

Fed. R. Civ. P. 59 ..................................................................................................................14

## Miscellaneous

4 Nimmer on Copyright § 13.03.....................................................................................2

http://www.merriam-webster.com/dictionary/dicated...................................................2

1    I.    **PRELIMINARY STATEMENT**

2    Cisco's motion for JMOL (ECF 761 ("Br.")) showed the absence of substantial evidence to

3    support Arista's scènes à faire defense.  Arista's opposition (ECF 763 ("Opp.")) fails to fill that void.

4    Arista argues (Opp. 7) that scènes à faire excuses its copying so long as any "***non-trivial protected***

5    ***part***" or portion of any of Cisco's protected compilations is scènes à faire.[1]  But Arista makes no such

6    showing.  To begin with, the issue here is not whether a small part or portion of any of Cisco's

7    compilations is scènes à faire, but rather whether Cisco's protectable compilations ***themselves*** are

8    scènes à faire.  And in any event, Arista's evidentiary citations repeatedly point to ***unprotected*** parts or

9    portions of Cisco's works—to ***individual*** words and terms, ***individual*** multiword commands,

10    ***individual*** modes/prompts and ***individual*** help descriptions that cannot support scènes à faire even

11    under Arista's framing of the standard.  The Court instructed that such individual elements are "not

12    protectable," ruling instead that the jury could find infringement only of Cisco's protectable

13    ***compilations*** if found original.  Tr. 2673:17-2674:14 (Instr. No. 39).[2]  Arista thus can sustain the

14    scènes à faire verdict only if it can show that Cisco's selection, arrangement, organization and design

15    of any of its ***compilations*** was dictated by external factors other than Cisco's creativity at the time of

16    creation.  Arista fails to do so.  Nor can Arista answer Cisco's showing that scènes à faire is foreclosed

17    here by Arista's virtually identical copying.  JMOL thus should be granted to Cisco on copyright

18    infringement liability.

19    II.    **SCÈNES À FAIRE  REQUIRES THAT EXTERNAL FACTORS OTHER THAN
        CISCO'S CREATIVITY DICTATE THE SELECTION, ARRANGEMENT,**
20        **ORGANIZATION AND DESIGN OF CISCO'S COMPILATIONS**

21    At the outset, it is important to dispel Arista's effort (Opp. 3-7) to water down the governing

22    legal standards for scènes à faire that the Court set forth in its jury instructions, which govern here.

23    *Oracle Am., Inc. v. Google Inc.*, 2016 WL 3181206, at *1 (N.D. Cal. June 8, 2016) (on JMOL, "the

24    jury instructions control").  Under the Court's instructions, scènes à faire requires something far more

---

25    [1]    *See also*, *e.g.*, Opp. 1 ("hypothetical ***portion*** of the asserted compilation"); *id.* at 7 ("***non-trivial***
26    ***protected part*** of just one of Cisco's asserted compilations");  *id.* at 8 ("***limited portion*** of a Cisco CLI
      compilation"); *id.* at 9 ("limited protected ***portions*** of a compilation"); *id.* at 16 ("***smallest nontrivial***
27    ***portion*** of just one compilation") (all emphases added).
      [2]    All cited pages to the trial transcript are in Exhibit NN to the accompanying declaration of Sara E.
28    Jenkins ("Jenkins Decl."); the other exhibit not already before the Court is in *id.*, Ex. OO.

specific than Arista's vague concepts of a work's "basic nature," "efficiency," "consistency" or "user-friendliness."  The Court's jury instructions instead require a showing that, "at the time Cisco created the user interfaces, … external factors other than Cisco's creativity dictated that Cisco select, arrange, organize and design its original features [*i.e.*, compilations] in [the] manner it did," Tr. 2680:13-25 (Instr. No. 61).[3]

Thus, Arista errs in arguing (Opp. 3) that a reasonable jury may base a scènes à faire verdict on a finding that Cisco's compilations "flow naturally" from their functions.  Rather, the instructions required that external factors other than Cisco's creativity "dictated" each compilation's selection, arrangement, organization and design, which means that such factors were "as a practical matter **indispensable**, or at least standard" at the time of creation.  *Apple Computer, Inc. v. Microsoft Corp.*, 35 F.3d 1435, 1444 (9th Cir. 1994) (citation omitted).[4]  This Court recently adopted a similar definition.  *Diamond Foods, Inc. v. Hottrix, LLC*, 2016 WL 3880797, at *5 (N.D. Cal. July 18, 2016) (Freeman, J.) ("expressions that are '**indispensable** and naturally associated with the treatment of a given idea'") (emphasis added) (quoting *Rice v. Fox Broad. Co.*, 330 F.3d 1170, 1175 (9th Cir. 2003)).  As the Federal Circuit explained, even in a case of non-literal elements, the similarity must "**necessarily** result[] from the fact that the common idea is **only** capable of expression in more or less stereotyped form."  *Oracle Am., Inc. v. Google Inc.*, 750 F.3d 1339, 1364 (Fed. Cir. 2014) (emphasis added, citation omitted).[5]

Arista also errs (Opp. 4-7) in reading the word "external" out of the jury instructions.  For example, Cisco's internal guidelines for how it preferred to select, arrange, organize and design its

---

[3]  As Arista concedes (Opp. 7), the jury was required to apply any scènes à faire finding at the "same" level as its corresponding finding of infringement.  The Court instructed that the **only** portions of "Cisco's works" that the jury could find protectable (and thus support infringement) were the five "compilations" at issue.  Tr. 2673:4-15 (Instr. No. 39).  A compilation is "a work formed by the collection and assembling of pre-existing materials or of data that are selected, coordinated, or arranged in such a way that the resulting work as a whole constitutes an original work of authorship." Tr. 2670:20-24 (Instr. No. 33).  Because a verdict of infringement required a finding that Arista copied one or more "protected elements," Tr. 2671:22-24 (Instr. No. 36), and the only protectable elements were the five compilations, the jury's verdict of infringement necessarily means that it found that one or more "compilations" was illicitly copied.  *See* Br. at 4-5.

[4]  *Cf.* http://www.merriam-webster.com/dictionary/dictated ("to require or determine necessarily").

[5]  Indeed, "scènes à faire has been literally translated to 'scenes which **must** be done.'"  *Evergreen Safety Council v. RSA Network Inc.*, 697 F.3d 1221, 1229 n.2 (9th Cir. 2012) (emphasis added) (quoting 4 NIMMER ON COPYRIGHT § 13.03).

compilations are not external constraints.  As discussed below, *see infra* Part III, the record contains no evidence that, *e.g.*, Cisco's compilations were selected, arranged, organized and designed to comply with technological standards, industry requirements, or pre-existing networking customer demands.

Finally, none of Arista's cited legal authorities addresses how scènes à faire applies in the context of a ***compilation***.  The whole point of protection for a compilation is that an original arrangement of even "entirely … uncopyrightable elements" is protectable.  *Harper House, Inc. v. Thomas Nelson, Inc.*, 889 F.2d 197, 204 (9th Cir. 1989); *see also* Tr. 2670:20-24 (Instr. No. 33); *Feist Publ'ns, Inc. v. Rural Telephone Serv. Co.*, 499 U.S. 340, 348-51 (1991) ("original selection or arrangement" of individually unprotected facts protectable as a compilation).  Thus, as the court held in analogous circumstances in *Merchant Transaction Systems, Inc. v. Nelcela, Inc.*, 2009 WL 723001(D. Ariz. Mar. 18, 2009), infringement of a compilation cannot be excused as scènes à faire unless a defendant can prove that a plaintiff's "use of ***the exact arrangement***" of the relevant elements in their "***exact order***" was "dictated" by external factors.  *Id.* at *12-13 (emphasis added) (discussing compilation of individually unprotectable field names in a database design).  Arista cannot prevail on its scènes à faire defense unless it shows that Cisco's selection, organization, arrangement and design of its compilations were dictated by external constraints at the time of their creation.

Arista's attempts to revise the applicable legal standard rather than acknowledge the Court's jury instructions only highlight the absence of substantial evidence of scènes à faire on this record.

## III.  CISCO IS ENTITLED TO JMOL OF COPYRIGHT INFRINGEMENT LIABILITY

Before turning to the specific deficiencies of Arista's scènes à faire evidence as to each compilation, it is important to note and refute some overarching fallacies in Arista's argument.

***First***, unable to point to any substantial evidence of scènes à faire as to Cisco's compilations, Arista erroneously attempts to extrapolate such evidence from evidence concerning "parts," "portions" and "sub-portions" of those compilations.  For example, it suggests (Opp. 8), without authority, that evidence relating only to "individual commands" nonetheless "implicates Cisco's larger selection and arrangement."  That is not the law.  Whether single words, terms or commands are ***individually*** scènes à faire has no bearing on whether a ***compilation*** of those same elements is scènes à faire.  *See, e.g.*, *Metcalf v. Bochco*, 294 F.3d 1069, 1074 (9th Cir. 2002) (elements "not protectable when considered

1    individually" as "scènes à faire," but "[t]he particular sequence in which an author strings a significant

2    number of unprotectable elements" protectable as a compilation); *Harner v. Wong Corp.*, 2013 WL

3    11549284, at *7-9 (D.N.M. Oct. 31, 2013) (scènes à faire "not applicable" to compilation of

4    unprotectable elements where defendant "provides no examples" showing others "selected and

5    arranged" all of plaintiff's elements "in the same way"); *Merch. Transaction*, 2009 WL 723001, at

6    *12-13 (whether individual "field names" in program are scènes à faire not relevant to whether the

7    "coordination, selection, and arrangement of these field names" into a compilation is scènes à faire).

8    In *Diamond Foods*, for example, this Court held that multiple elements in an app were individually

9    unprotected scènes à faire, yet found the "selection, coordination, and arrangement" of those same

10   elements as a compilation to be protectable.  2016 WL 3880797, at *6-9.

11       Moreover, the Court already ruled, at Arista's request and over Cisco's objection, that Cisco's

12   individual multiword commands, individual modes and prompts, individual screen responses and

13   individual help descriptions are each unprotectable standing alone.  Tr. 2673:17-2674:14 (Instr. No.

14   39); ECF 719 at 6-16.  Because the jury's infringement verdict had to be based on copying of

15   protectable elements, it could not be based on copying of those unprotectable elements.  Arista is thus

16   foreclosed from arguing that external constraints on such unprotectable individual elements can suffice

17   to support scènes à faire in this case.[6]

18       ***Second***, Arista repeatedly ignores that the works in this case are user interfaces that human

19   operators use to communicate with and control networking products—and not computer programs that

20   enable machines to communicate with machines.  Arista thus misleadingly cites authorities concerning

21   computer-to-computer programming that discuss "external factors" that have no bearing here, such as

22   "hardware standards," "mechanical specifications," "computer manufacture design standards,"

23

---

24   [6]   Arista errs (Opp. 9) in accusing Cisco of "implicitly" depending on evidence of the creation of
     individual elements as a substitute for evidence of creativity in the creation of its compilations.  As

25   Cisco explained in its opposition to Arista's conditional JMOL motion, the jury heard extensive
     evidence of the creative process Cisco employed not only to create its commands but also to organize

26   and design its compilation.  ECF 765 at 3-6 (citing, *e.g.*, Tr. 505:16-25; 506:4-6; 517:1-6, 637:20-23
     (Lougheed); Tr. 650:5-23, 651:3-14, 652:23-653:7, 667:8-11, 668:9-11 (Remaker); Tr. 728:9-14

27   (Slattery)).  Such a process evidences creativity in Cisco's compilations.  *CDN Inc. v. Kapes*, 197 F.3d
     1256, 1260-61 (9th Cir. 1999).  And contrary to Arista's assertion (Opp. 9), Cisco presented its

28   compilations, which the Court defined, to the jury.  ECF 765 at 12-17; Tr. 2673:4-15 (Instr. No. 39).

"industry programming practices," and "widely accepted programming practices within the computer industry." *See* Opp. 5-6 (quoting *Mitel, Inc. v. Iqtel, Inc.*, 124 F.3d 1366, 1375 (10th Cir. 1997); *Softel, Inc. v. Dragon Med. & Sci. Commc'ns, Inc.*, 118 F.3d 955, 963 (2d Cir. 1997)). Unlike such computer programming, however, the design of the user interfaces in this case involved no external constraint requiring "compatibility with equipment," *Mitel*, 124 F.3d at 1375, or any similar technological interoperability requirement—as Arista's own witnesses admitted, *see* Tr. 2090:16-2091:10 (Black) (describing basic operation of CLI); Tr. 802:2-7 (Duda) ("it's certainly technically achievable" to "come up with an alternative command language"). In any event, none of Arista's cited cases involved compilations, and Arista has not identified any hardware or software specifications, mechanical compatibility requirements, required industry-standard protocols, or widely accepted or commonplace networking practices that dictated how Cisco selected and arranged each of its compilations.

A. <u>**Arista Identifies No Substantial Evidence To Establish That Any Of Cisco's Compilations Was Scènes A Faire**</u>

Arista's overall failure of proof becomes apparent when inspecting its cited evidence compilation by compilation. Even construing the record in the light most favorable to Arista, no reasonable jury could find that substantial evidence supports its scènes à faire defense as to ***any*** of Cisco's compilations. While Arista's opposition uses the words "compilation," "selection," "arrangement" and "set," the actual evidence Arista cites is restricted to individual words, individual commands, individual modes and prompts, individual help descriptions, general ideas, general syntax, and general functions, none of which could have been the basis for the jury's finding of infringement. *See* Tr. 2673:17-2674:14 (Instr. No. 39) (listing unprotectable elements). Because Cisco's selection, arrangement, organization and design of its compilations was the only protectable expression before the jury, Arista's failure to identify any evidence of scènes à faire at the same level defeats the defense.[7]

---

[7]  While Arista repeats its arguments (Opp. 7, 9-10 & n.4) made in its conditional JMOL motion (ECF 760) that Cisco's compilations are not protectable, were not substantially copied, were not presented to the jury, or did not exist, such arguments are irrelevant here, as the Court must respect the jury's finding of infringement. Further, for the reasons stated in Cisco's opposition (ECF 765 at 2-
(footnote continued)

1    **1.    <u>Multiword Command Expressions</u>**

2    As Cisco explained in its motion (Br. 15-19), Arista's scènes à faire defense fails when applied

3    to Cisco's compilation of multiword command expressions because Arista's cited evidence relates

4    only to individual words, terms or commands, and there is no evidence of external factors that dictated

5    Cisco's selection, organization, arrangement and design of its compilation. Arista fails to rebut that

6    showing.

7    At the outset, the jury heard no substantial scènes à faire evidence relating to Cisco's selection

8    and arrangement of its compilation of commands. For example, Arista argues that Dr. Black testified

9    that Cisco's "choice of features" to include in its CLI "dictated" which commands were included in its

10    compilation. Opp. 8 (citing Tr. 2126:2-14 (Black)).[8] But Dr. Black's opinion that deciding "what

11    features are going into the switch" determines what commands to include, Tr. 2126:12-14, is not

12    evidence of an external constraint on Cisco's ***particular*** choices of how it selected, arranged,

13    organized and designed its compilation of multiword command expressions. Even if the name of

14    every individual command were "driven" by its feature as Arista asserts (Opp. 8), and was thus

15    individually unprotectable,[9] that does not speak to Cisco's choices for its ***compilation*** of those

16    commands. *See, e.g.* Tr. 1233:18-24 (Almeroth) (for a given function, "one engineer might say the

17    emphasis here is on displaying information. Another one might say, 'Well the emphasis really is on

18    access lists, so I could create a hierarchy called access-lists'").[10] In any event, whether an individual

19    command name is "driven" by its feature is not evidence of scènes à faire but of merger, which the

20

21    17), Cisco presented substantial evidence that its compilations were original, protectable, copied, and properly presented.

    [8]    Arista misleadingly states (Opp. 8) that Dr. Black testified about a "compilation of commands

22    driven by features." In fact, he testified only that "when you design a product" one starts with the

23    feature and then names the command. Tr. 2126:7-12. This does not constitute testimony that any features drive the creative design choices that render a compilation protectable.

24    [9]    ***All*** of Arista's cited testimony on this point is limited to individual commands. *See* Opp. 8 (citing

25    Tr. 2256:9-2257:10 (Black) (individual VRRP commands); Tr. 2221:23-2222:15 (Black) (individual commands have functions); Tr. 1086:12-21 (Kathail) (similar); Tr. 940:10-18 (Sadana) (similar); Tr.

26    1870:12-25 (Li) (testimony on individual commands copied by a different user interface)).

    [10]    Arista confuses (Opp. 9-11, 17) Cisco's compilations with individual "hierarchies," which the

27    Court instructed are not protectable. Tr. 2673:23. But the Court permitted Cisco to provide evidence of the role its original hierarchies played in its process of creating its compilation of multiword

28    command expressions. Tr. 239:14-18; ECF 719 at 12.

1   jury rejected. ECF 750-1 at 1.[11]

2          In its opposition, Arista provides three categories of purported "constraints" without specifying

3   how such constraints were external, dictated Cisco's expression, or pre-dated Cisco's creation. And

4   the evidence Arista does cite ignores that the protected elements at issue are compilations.

5                       a.    **The "Basic Nature" of Cisco's Command-Line Interface Is Not**
                               **Evidence Of Scènes A Faire**

6

7          Contrary to Arista's contention (Opp. 10), the "basic nature" of a command-line interface does

8   not demonstrate that Cisco's particular selection, arrangement, organization and design of multiword

9   commands into a compilation was dictated by external factors other than its creativity. That a CLI

10  includes functionality is no surprise. However, "an original work—even one that serves a function—is

11  entitled to copyright protection as long as the author had multiple ways to express the underlying

12  idea." *Oracle*, 750 F.3d at 1367. And, contrary to Arista's suggestion (Opp. 10), scènes à faire cannot

13  be shown simply by defining Cisco's user interfaces as "functional system[s]" that are "functionally

14  'extensible'" and use "function-driven terms."[12] If that were true, no command-line user interface,

15  given its "basic nature," could ever survive a scènes à faire defense. *See Eng'g Dynamics, Inc. v.*

16  *Structural Software, Inc.*, 26 F.3d 1335, 1346 (5th Cir. 1994) (rejecting argument that the utilitarian

17  functions of user interfaces outweighed their expressive purpose and remanding to determine whether

18  evidence supported theory that "compliance with industry standards" explained works' similarities).

19         Moreover, Arista fails to show that that any function dictated Cisco's particular expressive

20  choices in constructing its multiword-command ***compilation***. To the contrary, Arista's own

21  documents and third-party witnesses showed that many different expressive arrangements could be

22  used to perform the same functions, rebutting any suggestion that the basic nature or function of the

23  CLI dictated Cisco's multiword-command compilation. For example, Arista's engineers considered

24  "doing something very different" from Cisco's CLI, but elected not to because it presented a business

---

25  [11]  *Merch. Transaction*, 2009 WL 723001, at *12 (use of field names that express content of features
     "a prime example of the merger doctrine").

26  [12]  Arista also ignores that the Court found that "the idea or method of grouping or clustering
     commands under common initial words," "any command hierarchy," "the choice of using a text-based
27  user interface," "the idea of using multiword command expressions to manage or configure a device,"
     and "the function of any asserted feature" are all unprotectable, and thus no presumptive basis for the
28  jury's infringement finding. Tr. 2673:17-2674:14 (Instr. No. 39).

---

risk, given "all the partner training that Cisco does."  Tr. Ex. 197 (Jenkins Decl. Ex. EE).  Other competitors built functional, competitive networking products featuring CLI user interfaces that did not copy Cisco with respect to the arrangement of multiword commands.  Tr. 2061:11-23; 2063:9-2064:19 (Shafer) (recognizing at a glance that a list of asserted commands "are certainly not Juniper commands" because Juniper's user interface is "more hierarchical" than Cisco's); Tr. 2320:12-16 (Venkatraman) (CLI of HP's Comware product organized differently).

**b.   "Pre-Existing" Individual "Conventions" Or "Terminology" Is Not Evidence Of Scènes A Faire**

Arista's reliance (Opp. 11-14) on Cisco's purported incorporation of "pre-existing" individual and isolated conventions, words, terms or individual commands is likewise irrelevant to whether Cisco's ***compilation*** of command expressions is scènes à faire (given that a compilation can comprise entirely unprotected elements), and none of Arista's cited evidence shows otherwise.  Cisco need not go through each piece of cited evidence, for all of Arista's evidence suffers from this fatal flaw.

***First***, Arista details at length (Opp. 11-13 & nn.5-6) its purported evidence that Cisco engineers used terms and phrases from industry protocols and industry standards in their commands and used individual commands and modes that were found in pre-existing systems.  But the use of pre-existing terms, or even entire commands or modes, does not inform whether external factors beyond Cisco's creativity dictated how it selected, arranged, organized and designed its compilations.  ECF 719 at 7-9 (while "individual terms and abbreviations" were previously used in the networking industry, "the selection and arrangement of these commands into a collection may be entitled to protection as a compilation").  Further, Arista provides no evidentiary basis from which the jury could reasonably infer that the resources Cisco considered in creating individual commands influenced, much less dictated, Cisco's separate act of selecting and arranging its multiword command compilations.  The same applies to third parties (Opp. 13-14): whether Dell or Juniper (subsequently) incorporated particular commands found in Cisco's user interfaces into their own CLIs has no relevance to whether the creation of Cisco's compilation was dictated by external constraints.

***Second***, Arista incorrectly asserts (Opp. 11) that Cisco's use of pre-existing "organizing principles" and "syntax patterns" reflected a "constraint."  The cited evidence merely states that a pre-

1    Cisco CLI used various commands with the word "show," Tr. 1852:1-1853:24 (Li), and with a "verb,

2    object, option" syntax, Tr. 1854:3-15, 1856:5-8 (Li).  Not only does this testimony omit any reference

3    to compilations,[13] but the Court instructed the jury that neither element is protectable in the first place.

4    Tr. 2673:17-2674:14 (Instr. No. 39) (unprotectable elements include "use of command syntax such as

5    verb, object, parameter" and "the idea or method of grouping or clustering commands under common

6    initial words, such as show").

7         ***Third***, while Arista asserts that commands' "functions" constrained creativity in "naming,

8    selecting, and arranging," ***all*** of Arista's cited evidence is limited to individual commands (not Cisco's

9    compilation of multiword commands) and to evidence of "naming" (not "selecting and arranging").

10   *See* Opp. 11 (citing Tr. Ex. 760 (description of individual commands) (Jenkins Decl. Ex. OO); Tr.

11   624:6-14 (Lougheed) (describing a "command name"); Tr. 689:19-24 (Remaker) (individual

12   command); Tr. 658:4-659:7 (Remaker) (creating new individual command)).  Likewise, whether

13   individual commands are "logical," have "recogniz[able]" words, include "familiar" terms, or are

14   "self-explanatory" (Opp. 11-12) is irrelevant, as isolated words and commands are not protectable and

15   this evidence does not address Cisco's compilation of multiword commands.

16        **c.    Purported Customer Desire For "Consistency" And "Cross-**
               **Compatibility" Is Not Evidence Of Scènes A Faire**

17        Finally, none of Arista's purported evidence of "functional customer needs and expectations"

18   (Opp. 14) establishes that Cisco's compilation of multiword command expressions was scènes à faire.

19        ***First***, Cisco's acceptance of multiple "technical protocols" in its products  did not constrain

20   Cisco's design of its compilation of multiword commands.  While Cisco "had to have some way of

21   distinguishing between" these protocols, Tr. 513:23-514:9 (Lougheed), Arista cites no evidence that

22   Cisco's ultimate decision in ***how*** to distinguish between the protocols was dictated by any factors other

23   than Cisco's creativity.  Indeed, Mr. Lougheed testified that "the decision we went with was to prefix a

24   lot of these commands with the protocol they belonged to," rather than taking such equally available

25   options as distinguishing between protocols elsewhere in the command hierarchy,  Tr. 514:7-9; Tr.

26

27   _____
     [13]   Arista's suggestion (Opp. 12 n.5) that Li testified that "Cisco modeled CLI on TOPS-20" is
28   contrary to Li's actual testimony, which was limited to "many of the help functions."  Tr. 1856:3.

514:15-25 ("we certainly could have chosen different words" or "different orders of these words"); Tr. 1233:18-24 (Almeroth) ("I could create a hierarchy called access-lists, I could identify what the protocol is next, IP or other kinds of access lists, and then a verb"). Arista thus presented no evidence that this decision was dictated by any external constraint. Further, Arista's cited evidence (Opp. 14) addressing technical interoperability, *i.e.*, that standards are important "so that all the ***devices*** can understand each other," Tr. 1289:19-24 (Almeroth) (emphasis added), is unrelated to any requirements on a ***human-facing*** CLI user interface.

***Second***, the desire that a CLI be "clear and consistent" (Opp. 14-15) is not an external constraint that dictated Cisco's selection and arrangement of its compilation of multiword command expressions. A "clear," "consistent" product is a goal that all authors work to achieve; such generic goals (as well as having an interface be "friendly," "useable," or "easy to use and not crazy") (Opp. 15 & n.7) are the hallmarks of effective authorship. That Cisco creates an internally consistent product is an internal judgment, not the result of external constraints. That Cisco has circulated internal guidelines to promote a consistent aesthetic of a particular look and feel does not render its creative expressions scènes à faire. Just as *The Cat in the Hat* (an example Arista ignores) adhered to limiting guidelines and goals yet displayed enormous creativity (Br. 18-19), a compilation that aims to provide a clear, consistent, usable, user-friendly interface does not thereby become scènes à faire and thus available to be copied. *See Curcio Webb LLC v. Nat'l Benefit Programs Agency, Inc.*, 2006 WL 47506, at *6 (S.D. Ohio Jan. 9, 2006) (even if plaintiff developed the program "in accordance with [its] view of the 'best practices in the marketplace,'" such a goal does not prove scènes à faire, as there were no "industry guidelines or standards that required [defendant] to have the same organization," and defendant "has not established that there is even a custom within the industry" for such organization). Arista's suggestion that an author's consistency across versions excuses infringement is contrary to the well-established copyright protections available for derivative works, which by definition are created with an eye to prior works of authorship. *See* 17 U.S.C. § 103.

***Third***, evidence that customers prefer not to "learn 20 different command languages that are used by each of the various competitors of Cisco" cannot show that Cisco's creation of the ***first*** command language in this field was dictated by external factors. Scènes à faire depends upon the

1  circumstances presented to the creator at the time of creation.  Tr. 2680:21-23 (Instr. No. 61).  It is

2  undisputed that there were no competing networking products when Cisco designed its CLI, Tr.

3  514:15-25 (Lougheed), and that none of the multiword commands asserted in this case pre-existed

4  Cisco's initial creation of its multiword command compilation, Tr. 2210:11-19 (Black).  "[T]he Ninth

5  Circuit has rejected the argument that a work that later becomes the industry standard is

6  uncopyrightable."  *Oracle*, 750 F.3d at 1372.  As a matter of law and logic, customers' subsequent

7  preference for Cisco's particular multiword command compilation cannot have constrained how Cisco

8  selected, arranged, organized and designed its compilation of multiword commands in the first place.

9              **2.    Modes And Prompts**

10      As noted in Cisco's motion (Br. 19-20), there is no substantial evidence that Cisco's

11  compilation of modes and prompts was scènes à faire.  Arista's only response—limited to a footnote

12  (Opp. 18 n.8)—suffers from the same deficiency: Arista acknowledges that two of Cisco's asserted

13  modes had no equivalent in any pre-Cisco CLI, Tr. 2219:16-21; Tr. 2220:21-2221:2 (Black), but

14  Arista asserts nonetheless that two of the modes were "unoriginal" and that the two other modes

15  "serve[] a purely functional role."  But Arista offers no evidence of external factors that bore any

16  relevance to the compilation of the "selection and arrangement of Cisco's modes and prompts."  Tr.

17  2673:9-10 (Instr. No. 39).  Again, even if each of Arista's modes and prompts alone is unprotectable

18  (as the Court specifically instructed, Tr. 2673:24), Cisco's selection, arrangement, organization and

19  design of those modes and prompts as a compilation is independently protectable.  ECF 719 at 14.

20  Arista's failure to identify any evidence as to external constraints that dictated Cisco's compilation of

21  modes and prompts is dispositive.

22              **3.    Command Responses/Screen Outputs**

23      Arista fails to point to substantial evidence that Cisco's compilation of command

24  responses/screen outputs was scènes à faire.  *See* Br. 20.  Instead, Arista merely relies (Opp. 17) on the

25  same flawed arguments offered as to individual multiword commands and help descriptions.  And

26  while Arista asserts that Cisco's individual command outputs convey "parameters" drawing from

27  "standard language," such a critique addresses individual command responses, not Cisco's compilation

28  comprising its "collection of Cisco's screen responses and outputs."  Tr. 2673:11-12 (Instr. No. 39).

1    Arista also argues (Opp. 17-18) that Cisco's compilation of command responses flows directly from

2    the use of "show" commands to display information, but cites no evidence that Cisco's particular

3    compilation was dictated by any external constraint other than its creativity; it merely states that the

4    compilation is the same as the "individual outputs themselves" and cites to evidence relating to the

5    mere existence of, or purpose for creating, individual command responses, without addressing Cisco's

6    selection and arrangement of those commands into a compilation.

7                          **4.      <u>Help Descriptions</u>**

8                Similarly, Arista directs the Court to no substantial evidence of scènes à faire as to Cisco's

9    compilation of help descriptions. *See* Br. 20.  Instead, Arista relies on the same arguments it provides

10   as to Cisco's individual multiword commands, arguing (Opp. 16) that the help descriptions served the

11   "same" purpose and had the "same" customer needs.  And while Arista ***argues*** that Cisco's selection

12   and arrangement of help descriptions were dictated by customer needs, it identifies no such evidence.[14]

13              For example, while Arista states (Opp. 16) that Mr. Li testified that Cisco's "'help' system"

14   was modeled after a "help system" already available on TOPS-20, in fact, Mr. Li testified only that

15   certain ***individual*** help descriptions in Cisco IOS were modeled after those on TOPS-20, Tr. 1856:1-4

16   (referring to individual "help functions"); he offered no testimony on Cisco's compilation.[15]  Arista

17   likewise argues (Opp. 16) that Mr. Li testified to pre-Cisco CLIs supporting "'help' functionality," but

18   Mr. Li's testimony refers only to the general idea of "typ[ing] in a question mark on the command line

19   and the [system] would display help information," Tr. 1855:6-18, which the Court instructed the jury

20   not to consider because it was not protectable, Tr. 2674:10 (Instr. No. 39).  Arista also argues that

21   individual help descriptions were "basic," "brief" or "short" (Opp. 17), but even if true, the content of

22   individual descriptions has no bearing on Cisco's compilation of help descriptions; indeed, the Court

23   instructed that "individual help description phrases" are not protectable.  Tr. 2674:11 (Instr. No. 39).

24              Finally, Arista errs in arguing (Opp. 17) that Cisco's compilation of help descriptions is

25   dictated by "the command set itself" because each help description is associated with a command.

---

26   [14]   As noted above, *see supra* Part II, the applicable standard is not whether a "small[] nontrivial
27   portion" (Opp. 16) of Cisco's compilation of help descriptions is scènes à faire, but rather whether the
     compilation ***itself*** is scènes à faire.

28   [15]   Nor does Arista claim that any of the particular help functions asserted here pre-existed Cisco.

1   This is just another way of describing the general idea of a help description being available for a

2   command (as well as improperly disregarding the nature of a compilation); it is not evidence of an

3   external constraint on Cisco's particular chosen expression of that description.  And to the extent

4   Arista argues there is only one way to express such a description, that is a merger defense, which the

5   jury rejected.

### 5.    Cisco's User Interfaces As Compilations Of The Other Four Compilations

7        Arista offers no argument, and directs the Court to no evidence, that Cisco's selection,

8   arrangement, organization and design of its overall user interfaces, as compilations of all four of the

9   above compilations, Tr. 2673:7-15 (Instr. No. 39), was scènes à faire.  *See* Br. 21.  Arista thus waives

10  its scènes à faire defense on JMOL as to this protectable compilation.[16]

### B.    Scènes À Faire Is Not A Defense To Arista's Virtually Identical Copying

12       Even where a defendant satisfies the elements of scènes à faire, that defense does not excuse

13  the virtually identical copying of a plaintiff's "particular expression."  *Apple*, 35 F.3d at 1444.  Thus,

14  in *Apple*,  the Ninth Circuit held that a plaintiff's "particular expression" of overlapping windows (and

15  not the entire GUI) was "of course" protected from "virtually identical" copying.  *Id.* (citation

16  omitted).[17]  Arista fails (Opp. 22-23)  to rewrite the trial evidence to avoid the necessary inference that

17  the jury's infringement finding reflected a determination that Arista engaged in virtually identical

18  copying of Cisco's protected expressions.  Even if the jury based its verdict on direct evidence of

19  copying, it heard extensive, repeated evidence that "Arista copied Cisco's CLI," Tr. 781:8-14 (Duda),

20

---

21  [16]    Arista argues incorrectly (Opp. 18-20) that the evidence in the record cited by Cisco negating

22  scènes à faire is not relevant.  Undisputed evidence negating any scènes à faire defense as to Cisco's compilations is entirely relevant on JMOL.  *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 151 (2000).

23  [17]    *See also, e.g., Fodor v. L.A. Unified Sch. Dist.* 2014 WL 12235424, at*10-11 (C.D. Cal. June 3,

24  2014) (where defendant copied certain "sections" of book, scènes à faire unavailable as to "virtually identical copies *of these sections*") (emphasis added); *Gable-Leigh, Inc. v. N. Am. Miss*, 2001 WL

25  521695, at *12 (C.D. April 13, Cal. 2001) (scènes à faire did not protect "verbatim or virtually verbatim copying" of "substantial portions" of the plaintiff's work, "[e]ven if it is assumed that much of the expression in [plaintiff's] handbook is indispensable or standard"); *Atari, Inc. v. N. Am. Philips*

26  *Consumer Elecs. Corp.*, 672 F.2d 607, 617 (7th Cir. 1982) ("Certain expressive matter" that is scènes à faire is protected "from virtually identical copying."); *TD Bank, N.A. v. Hill*, 2015 WL 4523570, at

27  *17 (D.N.J. July 27, 2015) (allegation of word-for-word copying of 16 percent of plaintiff's book presented "one of those occasions where the scènes à faire defense does not apply due to Defendant's

28  significant verbatim copying").

1  and could compare the copied expressions, which revealed wholesale, word-for-word copying, Tr.

2  Exs. 1-15, 4794, 4799, 4800, 4803, 9037 (Jenkins Decl., Exs. J-M).  And if the jury based its verdict

3  on indirect evidence of copying, it necessarily found the copying to be virtually identical, Tr. 2672:10-

4  1 (Instr. No. 39).

5          Contrary to Arista's baseless waiver assertion (Opp. 21), Cisco plainly preserved this argument

6  in its Rule 50(a) motion, which clearly placed Arista on notice of Cisco's position on the insufficiency

7  of the evidence on the scènes à faire defense.  ECF 732 at 14; *see HTC Corp. v. Technology Props.*

8  *Ltd.*, 2014 WL 459710, at *5 n.41 (N.D. Cal. Jan. 21, 2014) (citing *W. Union Co. v. MoneyGram*

9  *Payment Sys., Inc.*, 626 F.3d 1361, 1367 (Fed. Cir. 2010)).  Cisco was not obliged in its Rule 50(a)

10  motion to set forth every possible ***legal*** argument in support of that factual insufficiency.  *See Antonick*

11  *v. Elec. Arts., Inc.*, 841 F.3d 1062, 1068 (9th Cir. 2016); (holding that Rule 50(b) may be satisfied even

12  "by an ambiguous or inartfully made motion under Rule 50(a)") (quoting *E.E.O.C. v. Go Daddy*

13  *Software, Inc.,* 581 F.3d 951, 961 (9th Cir. 2009)).

14  **IV.    GRANT OF CISCO'S MOTION DOES NOT REQUIRE A NEW JURY TRIAL ON "ALL ISSUES"**

15
16          The parties agree that it is "premature" for the Court to address how the Court should proceed

17  upon granting Cisco's motion.  Br. 24-25; Opp. 24.  Nonetheless, Arista errs in arguing (Opp. 24-25)

18  that the Court would be constitutionally required to hold a new trial on all issues.  That is not the law.

19          ***First***, as Cisco noted (Br. 25), there may be no need for a new trial at all.  In addition, a

20  damages phase limited to disgorgement likely would not require a jury's determination.  ECF 661 at

21  12-13 n.2 (citing *Petrella v. Metro-Goldwyn-Mayer, Inc.*, 134 S. Ct. 1962, 1967 n.1 (2014)).

22          ***Second***, to the extent that a new trial is necessary, the Court has the authority to limit such a

23  trial to discrete issues.  *See* Fed. R. Civ. P. 50(a)-(b), 59 (Court may "grant a new trial on all or some

24  of the issues").  The reach and contours of such a trial are dedicated to the Court's "discretion."

25  *Wharf v. Burlington N. R.R. Co.*, 60 F.3d 631, 638 (9th Cir. 1995).  Courts thus can and do order "new

26  trial[s] on damages only," even where the jury will "have to determine the cause of [plaintiff's]

27  damages."  *Id.*; *see also Whitserve, LLC v. Computer Packages, Inc.*, 694 F.3d 10, 26-34 (Fed. Cir.

28

2012); *Informatica Corp. v. Bus. Objects Data Integration, Inc.*, 2007 WL 2344962, at *3 (N.D. Cal. Aug. 16, 2007).

Here, any new trial may constitutionally be limited to any remaining damages issues. Although a new trial on all issues may be required where issues of damages and liability are "so interwoven" that they cannot be tried separately, *Gasoline Prods. Co v. Champlin Refining Co.*, 283 U.S. 494, 500 (1931), the record here shows that they are not. Neither Cisco's nor Arista's damages expert tied her opinions to which particular compilations were copied; rather, both experts simply assumed "infringement" of Cisco's users interfaces and provided an undifferentiated damages assessment for all products. *See* Tr. 1546:3-4 (Chevalier); Tr. 2351:6-7 (Elsten); *see also* Tr. 1393:13-15 (Elsten) ("This is an allocation to the entire CLI. There simply aren't reliable documents that can be used to estimate just the infringing portion.").[18] Any complaint Arista may now have (Br. 25) about the verdict form's lack of particularized liability findings on a compilation-by-compilation basis is waived, as Arista stipulated to the verdict form as given.[19]

## V.   **CONCLUSION**

For the foregoing reasons, Cisco's motion for JMOL should be granted.

Dated:  February 7, 2017                              Respectfully submitted,

                                                     */s/ Kathleen Sullivan*
                                                     Kathleen Sullivan (SBN 242261)

---

[18]   None of the cases Arista cites (Opp. 24-25) requires an entire new trial where the evidence of liability was entirely independent of the evidence of damages at the first trial. *See United Air Lines, Inc. v. Wiener*, 286 F.2d 302. 306 (9th Cir. 1961) ("It is apparent that where parties are asking for exemplary damages which depend upon the degree of culpability of the defendant, they are required to establish by their evidence their contentions as to the degree of negligence. … We do not say that in no circumstances can a separate jury determine the issue of damages after another jury has determined the issue of liability."); *Trans-World Int'l, Inc. v. Smith-Hemion Prods., Inc.*, 952 F. Supp. 667, 673 (C.D. Cal. 1996) ("[T]here is an interdependence of issues, as well as an overlapping of proof, between the fraud claims and each of the claims tried to the Court."); *Masson v. New Yorker Magazine, Inc.*, 832 F.Supp. 1350 (N.D. Cal. 1993) (relying on "the intertwined nature of liability and damages" in a libel retrial).

[19]   Arista repeats its error (Opp. 25) in speculating that the jury may have found only a sub-part of a compilation to have been copied. As discussed above, *see supra* Part III, the jury was asked only to based its infringement verdict on whether any of the five compilations, not their sub-parts, was copied. And in any event, the verdict form to which Arista stipulated would not have provided that information.

kathleensullivan@quinnemanuel.com
Todd Anten (*admitted pro hac vice*)
toddanten@quinnemanuel.com
QUINN EMANUEL URQUHART &
SULLIVAN LLP
51 Madison Avenue, 22nd Floor
New York, NY 10010
Telephone: (212) 849-7000
Facsimile: (212) 849-7100

Sean S. Pak (SBN 219032)
seanpak@quinnemanuel.com
Amy H. Candido (SBN 237829)
amycandido@quinnemanuel.com
John M. Neukom (SBN 275887)
johnneukom@quinnemanuel.com.
QUINN EMANUEL URQUHART &
SULLIVAN LLP
50 California Street, 22nd Floor
San Francisco, CA 94111
Telephone: (415) 875-6600
Facsimile: (415) 875-6700

David Nelson (*admitted pro hac vice*)
davenelson@quinnemanuel.com
QUINN EMANUEL URQUHART &
SULLIVAN LLP
500 W Madison St, Suite 2450
Chicago, IL 60661
Telephone: (312) 705-7465
Facsimile: (312) 705 7401

Steven Cherny *admitted pro hac vice*)
steven.cherny@kirkland.com
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900

Adam R. Alper (SBN 196834)
adam.alper@kirkland.com
KIRKLAND & ELLIS LLP
555 California Street
San Francisco, California  94104
Telephone: (415) 439-1400
Facsimile: (415) 439-1500

Michael W. De Vries (SBN 211001)
michael.devries@kirkland.com
KIRKLAND & ELLIS LLP
333 South Hope Street
Los Angeles, California 90071
Telephone: (213) 680-8400
Facsimile: (213) 680-8500

*Attorneys for Plaintiff Cisco Systems, Inc.*