1          UNITED STATES DISTRICT COURT

2          NORTHERN DISTRICT OF CALIFORNIA

3          SAN JOSE DIVISION

4

   CISCO SYSTEMS, INC.,              )   C-14-05344 BLF
5                                    )
                   PLAINTIFF,        )   SAN JOSE, CALIFORNIA
6                                    )
           VS.                       )   APRIL 27, 2017
7                                    )
   ARISTA NETWORKS, INC.,            )   PAGES 1-63
8                                    )
                   DEFENDANT.        )
9   _____ )

10

                  TRANSCRIPT OF PROCEEDINGS
11        BEFORE THE HONORABLE BETH LABSON FREEMAN
                  UNITED STATES DISTRICT JUDGE
12

13   A P P E A R A N C E S:

14   FOR THE PLAINTIFF:      QUINN, EMANUEL, URQUHART & SULLIVAN
                             BY:  KATHLEEN SULLIVAN
15                           51 MADISON AVENUE, 22ND FLOOR
                             NEW YORK, NEW YORK  10010
16
                             BY:  SEAN S. PAK
17                           50 CALIFORNIA STREET, 22ND FLOOR
                             SAN FRANCISCO, CALIFORNIA  94111
18
     FOR THE DEFENDANT:      KEKER, VAN NEST & PETERS
19                           BY:  ROBERT A. VAN NEST
                                  BRIAN L. FERRALL
20                                ELIZABETH MCCLOSKEY
                                  RYAN WONG
21                           633 BATTERY STREET
                             SAN FRANCISCO, CALIFORNIA  94111
22

23   OFFICIAL COURT REPORTER:    LEE-ANNE SHORTRIDGE, CSR, CRR
                                 CERTIFICATE NUMBER 9595
24

25        PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY
              TRANSCRIPT PRODUCED WITH COMPUTER

```
1        SAN JOSE, CALIFORNIA                    APRIL 27, 2017

2                      P R O C E E D I N G S

3           (COURT CONVENED AT 10:13 A.M.)

4               THE COURT:  PLEASE BE SEATED, EVERYONE, AND THANK YOU

5       FOR YOUR PATIENCE.  I'M SORRY I HAD TWO MEATY CASES TODAY.

6       LET'S CALL THE CASE AND GET YOUR APPEARANCES.

7               THE CLERK:  CALLING 14-5344, CISCO SYSTEMS VERSUS

8       ARISTA NETWORKS.

9           COUNSEL, PLEASE STATE YOUR APPEARANCES.

10          MS. SULLIVAN:  GOOD MORNING, YOUR HONOR.

11      KATHLEEN SULLIVAN AND SEAN PAK FOR THE PLAINTIFF CISCO.

12              THE COURT:  GOOD MORNING.

13              MR. PAK:  GOOD MORNING.

14              MR. VAN NEST:  GOOD MORNING, YOUR HONOR.

15          BOB VAN NEST WITH KEKER, VAN NEST & PETERS FOR ARISTA, AND

16      I'M HERE WITH BRIAN FERRALL, RYAN WONG, AND

17      ELIZABETH MCCLOSKEY.

18              THE COURT:  GOOD MORNING TO ALL OF YOU.  PLEASE BE

19       SEATED.

20          ALL RIGHT.  I HAVE TWO MOTIONS FOR JMOL SUBMITTED BY THE

21      PARTIES.  I HAVE SOME COMMENTS, BUT I REALLY DO, OF COURSE,

22      WANT TO LISTEN TO WHAT YOU HAVE TO SAY.

23          THE CISCO MOTION IS VERY STRAIGHTFORWARD BASED ON

24      SUBSTANTIAL EVIDENCE ON THE SCENES A FAIRE DEFENSE.

25              AND I THINK MY PRIMARY QUESTION, AND WHAT I'M TRYING TO --
```

1    IN EVALUATING THE EVIDENCE, MS. SULLIVAN, IS THAT BASED ON THE

2    PROOF AT TRIAL, THE -- IT APPEARS THAT, I THINK UNDISPUTED,

3    THAT THE COMPILATIONS THAT I FOUND TO BE PROTECTABLE WERE NOT

4    CREATED AS COMPILATIONS.  THEY WERE CREATED OVER A PERIOD OF

5    TIME AND BECAME COMPILATIONS.

6        SO IT'S -- AND SO WHEN ARISTA POINTS TO EVIDENCE OF

7    INDIVIDUAL CLI COMMANDS OR INDIVIDUAL SCREEN RESPONSES, IT IS

8    IN TUNE WITH THE MANNER IN WHICH THE COMPILATION WAS CREATED,

9    AND SO YOU -- YOU CLAIM THAT THE EVIDENCE THEY POINT TO DOES

10   NOT POINT TO THE DEFECT IN THE COMPILATION, AND I DON'T

11   ACTUALLY -- I'M NOT SURE I SEE IT THAT WAY.

12       SO THAT'S REALLY MY OVERALL QUESTION TO YOU.

13       AND MR. VAN NEST, I HAVE A DIFFERENT KIND OF QUESTION FOR

14   YOU.  I HAVE AN OBSERVATION THAT WITH ALL OF THE THINGS I DID

15   WRONG IN THIS TRIAL, IT'S AMAZING YOU WON IS ALL I COME UP WITH

16   HERE.  I HAVE A LAUNDRY LIST OF PROBLEMS WITH THE CASE AND SO

17   THAT -- BUT REALLY THE QUESTION IS, IF I DO NOT GRANT CISCO'S

18   MOTION, DO I NEED TO RULE ON YOURS?

19           MR. VAN NEST:  I THINK IT WOULD BE MOOT, YOUR HONOR.

20           THE COURT:  THANK YOU.

21           MR. VAN NEST:  THE MOTION'S DENIED.

22           THE COURT:  BUT I WANT TO HEAR FULL ARGUMENT ON IT

23   TODAY BECAUSE I HAVEN'T MADE A DETERMINATION, BUT I JUST WANTED

24   TO CONFIRM THAT BECAUSE THAT'S MY UNDERSTANDING AS WELL.

25       AND THEN YOU HAVE PRESERVED THESE ISSUES SHOULD --

```
 1              MR. VAN NEST:  THAT'S RIGHT.

 2              THE COURT:  -- THE APPELLATE COURT OVERTURN THE

 3      RULING ON THAT.

 4          ALL RIGHT.

 5              MR. VAN NEST:  THAT'S RIGHT, YOUR HONOR.

 6              THE COURT:  THANK YOU.

 7          THEN LET'S START, AND I THINK PRIMARILY HERE -- LET ME

 8      PULL MY SCREEN OVER.

 9          OKAY.  MS. SULLIVAN, NICE TO SEE YOU AGAIN.

10              MS. SULLIVAN:  GOOD MORNING, YOUR HONOR.  IT'S VERY

11       NICE TO SEE YOU AGAIN.

12          KATHLEEN SULLIVAN FOR CISCO.

13          YOUR HONOR, I KNOW THAT THE LAST THING THAT YOU WANT TO DO

14      AFTER A CASE AS HARD FOUGHT AND FAIRLY AND METICULOUSLY TRIED

15      AS THIS ONE WAS IS OVERTURN THE JURY VERDICT, BUT I'M AFRAID

16      THAT THIS REALLY IS THE RARE CASE IN WHICH THERE IS NOT LEGALLY

17      SUFFICIENT EVIDENCE TO SUPPORT THE DISPOSITIVE SCENES A FAIRE

18      DEFENSE.

19          AND I'D LIKE TO GO RIGHT TO YOUR QUESTION, BECAUSE YOU GOT

20      RIGHT TO THE HEART OF THE MATTER.  THIS IS A CASE IN WHICH YOUR

21      HONOR HELD THAT THE PROTECTABLE EXPRESSION THAT THE JURY FOUND

22      WAS INFRINGED WAS ONE OR MORE OF THE COMPILATIONS THAT CISCO

23      ASSERTED IN THIS CASE.

24          IN OTHER WORDS, THIS IS A COMPILATION CASE.

25              THE COURT:  YEAH.
```

1          MS. SULLIVAN:  SO WE'VE GOT TO BE IN THE WORLD WHERE

2     SCENES A FAIRE IS A DEFENSE IN A COMPILATION CASE, AND I

3     RESPECTFULLY SUGGEST THAT IN EVERY SUCH CASE THAT IS ANALOGOUS

4     TO OURS THAT WE'VE CITED IN OUR BRIEFS, THE COURTS HAVE FOUND

5     THAT SCENES A FAIRE IS NOT ESTABLISHED IN A COMPILATION CASE BY

6     REFERENCE TO PIECEMEAL TERMS OR ACRONYMS OR INDUSTRY PRACTICES

7     THAT ARE NOT THE COMPILATION AS A WHOLE.

8          IN OTHER WORDS, YOU CAN'T KNOCK OUT A COMPILATION BY

9     SHOWING THAT A TERM OR AN ACRONYM OR A PROTOCOL OR A PRACTICE,

10    STANDING ALONE, EXISTED PRIOR TO THE COMPILATION.

11         SO IF YOU COULD JUST TICK OFF --

12         THE COURT:  BUT WHY COULDN'T THE JURY, TAKING

13    EVIDENCE OF THOSE INDIVIDUAL ELEMENTS, DRAW A REASONABLE

14    INFERENCE FROM WHAT THEY HAD THAT THE COMPILATION ITSELF ALSO

15    WAS SUBJECT TO THE SCENES A FAIRE, WHICH IS CLEARLY WHAT THEY

16    DID, WHETHER IT WAS PERMISSIBLE OR NOT?

17         MS. SULLIVAN:  THAT'S RIGHT, YOUR HONOR, AND THEY

18    ABSOLUTELY CANNOT, AND LET ME SAY WHY.

19         THE COURT:  OKAY.

20         MS. SULLIVAN:  AND JUST -- I THINK WE HAVE TO GO BACK

21    TO INSTRUCTION NUMBER 61 AND REMEMBER WHAT THE JURY WAS, IN OUR

22    VIEW, CORRECTLY CHARGED.

23         IT WAS CHARGED WITH FINDING, IN ORDER TO MEET THE SCENES A

24    FAIRE DEFENSE, THAT CISCO -- EXTERNAL FACTORS, OTHER THAN

25    CISCO'S CREATIVITY, DICTATED THAT CISCO SELECT, ARRANGE,

1    ORGANIZE, AND DESIGN ITS ORIGINAL FEATURES IN THE MANNER THAT

2    IT DID.

3          AND THAT, OF COURSE, CROSS-REFERENCES YOUR HONOR'S ALSO

4    CORRECT INSTRUCTION NUMBER 33 DEFINING COMPILATION IN WHICH YOU

5    DEFINE COMPILATION CORRECTLY BY SAYING AN OWNER IS ENTITLED TO

6    COPYRIGHT PROTECTION OF A COMPILATION.  A COMPILATION IS A WORK

7    FORMED BY THE COLLECTION AND ASSEMBLY OF PREEXISTING MATERIAL

8    OF DATA THAT ARE SELECTED, COORDINATED, OR ARRANGED IN SUCH A

9    WAY THAT THE RESULTING WORK AS A WHOLE CONSTITUTES AN ORIGINAL

10   WORK OF AUTHORSHIP.

11         SO THE KEY, YOUR HONOR, IS THE VERBS THERE, SELECTED,

12   ORGANIZED, ARRANGED, DESIGNED.

13         THAT ACTIVITY OF ORGANIZING, STRUCTURING, ARRANGING, AND

14   DESIGNING IS WHAT HAS TO BE SCENES A FAIRE, AND THERE'S A

15   LOGICAL DISCONNECT BETWEEN SAYING, "WELL, THE ACRONYM ARP OR

16   SMNP OR IP, WELL, THAT EXISTED BEFORE.  AND SOMEBODY USED THE

17   WORD 'SHOW' BEFORE.  THERE WERE EVEN MULTIWORD COMMANDS THAT

18   SAID 'SHOW' BEFORE."

19         THAT DOESN'T TELL YOU THAT WHEN CISCO CREATED ITS

20   HIERARCHIES -- AND YOU SAID WE DIDN'T HAVE HIERARCHIES AS A

21   SEPARATE BUILDING BLOCK BECAUSE YOUR HONOR SAID -- YOU'LL

22   RECALL THE COLLOQUY YOU HAD WITH MR. NELSON AND MR. PAK, IT'S

23   AT TRANSCRIPT 225, IT'S A PIVOTAL PART OF THE CASE BECAUSE AT

24   THAT POINT YOU RECOGNIZED THAT WHAT CISCO WAS DOING THAT WAS

25   CREATIVE IN ITS PROCESS WAS IN TAKING WHAT MAY HAVE BEEN SOME

1    TERMS THAT PREEXISTED, BUT CISCO WAS CREATING HIERARCHIES IN AN

2    ARRANGEMENT, ORGANIZATION, AND DESIGN THAT IT DID NOT HAVE TO

3    CREATE.

4         AND THERE ARE MANY EXAMPLES THAT WE DISCUSSED AT TRIAL.

5         IT COULD HAVE BEEN -- YOU COULD HAVE A SHOW HIERARCHY AND

6    THEN SAY "SHOW IP ACCESS" RATHER THAN AN ACCESS HIERARCHY WHERE

7    YOU SAID "ACCESS IP SHOW," AND THE DECISION ABOUT THE PARENT

8    AND THE CHILDREN RELATIONSHIPS IN THE HIERARCHIES AND SO FORTH,

9    IT'S THAT ARRANGEMENT THAT WOULD HAVE TO BE SHOWN SCENES A

10   FAIRE IN THIS CASE.

11        AND ALL OF THE CASES INVOLVING SIMILAR FACTS REJECT THE

12   IDEA THAT IF SOME TERM PREEXISTED THE CLAIMED COMPILATION, THEN

13   ARRANGING THAT TERM OR THAT PRACTICE INTO A NEW ORGANIZATION IS

14   SCENES A FAIRE.

15        AND I JUST WANT TO TICK THE CASES OFF BECAUSE I THINK IT'S

16   USEFUL FOR YOUR HONOR TO REVIEW THEM.

17        THE COURT:  UM-HUM, SURE.

18        MS. SULLIVAN:  THEY'RE ALL COVERED IN OUR BRIEF, BUT

19   I THINK IF YOU LOOK FOR THE CASES WHERE SCENES A FAIRE MEETS

20   COMPILATION -- AND THERE AREN'T MANY -- WHAT WE WOULD POINT

21   YOUR HONOR TO IS THE MERCHANT TRANSACTIONS CASE, THE HARNER

22   VERSUS WONG CASE, W-O-N-G, THE B2B CFO PARTNERS CASE, B-2-B

23   C-F-O PARTNERS CASE, THE CURCIO CASE, C-U-R-C-I-O, AND THE

24   METCALF CASE FROM THE CIRCUIT, METCALF VERSUS BOCHCO.

25        THESE ARE ALL CASES WHERE SCENES A FAIRE MEETS

1    COMPILATION, AND I THINK IT'S FAIR TO SAY THAT IN ALL OF THEM,

2    AS IN OUR CASE, THE DEFENDANT CAME IN AND SAID, "OH, WELL,

3    LOOK, THERE WAS THIS KIND OF COMPUTER ADVERTISEMENT BEFORE, OR

4    THERE WAS THIS KIND OF PROCEDURAL POSSIBLE PLOT BEFORE, OR

5    THERE WAS THIS KIND OF TERM IN THE SOFTWARE BEFORE."

6        AND EACH AND EVERY TIME, THE DISTRICT COURTS IN THE FOUR

7    FIRST CASES THAT I MENTIONED AND THE CIRCUIT IN BOCHCO SAID --

8    FOR EXAMPLE, LET'S TAKE, FOR A SIMPLE EXAMPLE, TAKE MERCHANT

9    TRANSACTIONS.  THERE IS INSUFFICIENT INFORMATION TO SUGGEST

10   THAT THE DEFENDANT'S USE OF THE EXACT ARRANGEMENT OF THE FIELD

11   NAMES IN THE SOFTWARE AMOUNTS TO SCENES A FAIRE, EVEN IF THE

12   FIELD NAME EXISTED BEFORE.

13       SIMILARLY IN HARNER.  JUST BECAUSE CERTAIN TYPES OF ADS

14   EXISTED BEFORE DOESN'T MEAN THAT THEY WERE SELECTED AND

15   ARRANGED, AND NOT SELECTED AND ARRANGED IN A NEW WAY.  THE

16   EMPHASIS AGAIN IS ON THE VERBS.

17       B2B, THE COURT SAID THERE STILL COULD HAVE BEEN ORIGINAL

18   DECISIONS HOW TO ARRANGE AND PRESENT IDEAS, EVEN IF THEY WERE

19   STOCK IDEAS ABOUT BUSINESS PRACTICES.

20           THE COURT:  THE COURTS THERE ARE NOT TALKING ABOUT

21   ORIGINALITY, THEY'RE ACTUALLY TALKING ABOUT SCENES A FAIRE IN

22   THOSE EXCERPTS?

23           MS. SULLIVAN:  YES.  EACH OF THOSE EXCERPTS IS

24   DIRECTED AT SCENES A FAIRE.

25       ADMITTEDLY, YOUR HONOR, THOSE ARE NOT AFTER A TRIAL.

1          AND I WANT TO GET TO YOUR QUESTION WHETHER WE HAVE A NEW

2     RULE.  IN OTHER WORDS, I THINK IF YOU WERE FACED WITH THIS AS A

3     RECORD AT SUMMARY JUDGMENT, YOU WOULD HAVE TO SAY AS A MATTER

4     OF LAW, I'M SORRY, I DON'T SEE SCENES A FAIRE.

5          SO THE QUESTION IS, DOES THE JURY GET A SPECIAL PASS TO

6     PUT THINGS TOGETHER?  AND WHAT WE WOULD ARGUE IS NOTHING CAN

7     COME OF NOTHING.  YOU CAN'T ADD EVIDENCE THAT IS NOT ITSELF

8     INDEPENDENTLY EVIDENCE OF SCENES A FAIRE AND CREATE SCENES A

9     FAIRE AS TO THE COMPILATION.

10          AND LET ME GO BACK, YOUR HONOR, AND JUST TALK ABOUT SOME

11     VERY SPECIFIC EVIDENCE, BECAUSE I THINK WHAT'S REALLY CRUCIAL

12     HERE IS THAT YOU HAD AN ABSOLUTE ROCK SOLID, DROP DEAD CASE

13     THAT THERE WERE OTHER WAYS TO ARRANGE, ORGANIZE, SELECT, AND

14     DESIGN THE CLI AS A WHOLE.

15          AND SO IN OTHER WORDS, GOING BACK TO YOUR STANDARD, WHICH

16     IS THE CORRECT LEGAL STANDARD, DID SOME EXTERNAL CONSTRAINT

17     OTHER THAN OUR CREATIVITY DICTATE THAT WE SELECT, ARRANGE,

18     ORGANIZE, AND DESIGN OUR ORIGINAL COMPILATIONS AS WE DID?

19          THE COURT:  WELL, YES.  I HAD THE JUNIPER EVIDENCE.

20     I HAD SOME OTHER EVIDENCE.

21          BUT I'M NOT LOOKING AT THE EVIDENCE THAT SHINES A LIGHT

22     FAVORABLY ON CISCO.  I'M LOOKING AT ALL THE EVIDENCE THAT

23     SUPPORTS THE VERDICT.

24          MS. SULLIVAN:  UNDERSTOOD, YOUR HONOR.

25          BUT I THINK THE FACT -- WE DON'T RELY ON ANY OF OUR OWN

1    EVIDENCE TO MAKE THIS POINT TO YOU.  WE RELY ON THE THIRD PARTY

2    EVIDENCE, JUNIPER, GREEN FIELD, OPEN PASTURE, DIFFERENT CLI

3    FROM JUNIPER.  WE RELY ON ARISTA'S OWN EVIDENCE.  THEY CALLED

4    H.P.'S MR. VENKATRAMEN WHO SAID THAT THERE WERE MULTIPLE WAYS

5    TO IMPLEMENT THE CLI COMMAND.

6        YOU HAD ADMISSIONS FROM ARISTA'S WITNESSES, MR. DUDA AT

7    802, MR. SADANA AT PAGE 897, MR. DALE AT TRANSCRIPT 1013,

8    MR. GOURLAY BY DEPOSITION AT TRANSCRIPT 2265, ALL ADMISSIONS

9    THAT IT'S A MATTER OF PROFESSIONAL JUDGMENT HOW YOU ORGANIZE

10   THE COMMANDS.  IT'S -- TWO ENGINEERS COULD DIFFER ON HOW TO

11   HAVE A CLI TO ACTIVATE THE SAME FUNCTION.

12       THAT'S ALL FROM THEIR WITNESSES.  WE'RE NOT RELYING ON A

13   WORD THAT CAME OUT OF THE MOUTHS OF OUR WITNESSES TO MAKE THIS

14   POINT.

15       YOU HAVE, VERY IMPORTANTLY, YOUR HONOR, THE UNDISPUTED

16   FACT THAT ARISTA HAS 20 PERCENT OF ITS CUSTOMERS USING LINUX

17   RATHER THAN A CLI TO OPERATE ITS SWITCHES.  THAT'S MR. DUDA'S

18   ADMISSION AT TRANSCRIPT 802.

19       AND YOU HAVE MR. VENKATRAMEN, AS WELL AS MS. ULLAL,

20   CONFIRMING -- AGAIN, THEIR WITNESSES -- THAT THERE IS NO

21   INDUSTRY STANDARDIZATION FOR A CLI.

22       SO I JUST WANT TO SAY, I'M NOT TRYING TO POINT TO ANYTHING

23   THAT WAS IN OUR SIDE OF THE RECORD.  I'M TRYING TO POINT ONLY

24   REALLY TO THEIR ADMISSIONS AND THE THIRD PARTY ADMISSIONS THAT

25   MAKE THE POINT.

1          SO, YOUR HONOR, THERE REALLY -- THE QUESTION THEN BECOMES,

2     HAS ARISTA GIVEN YOU ANYTHING IN THIS BRIEFING THAT CAN

3     OVERCOME THAT ASTONISHINGLY STRONG RECORD OF HOW THERE WERE

4     ALTERNATIVE WAYS TO DESIGN, STRUCTURE, ARRANGE, AND ORGANIZE

5     THE CLI?

6          AND I SUBMIT THEY HAVE NOT, AND THAT IF YOU FOLLOW EVERY

7     SINGLE CITATION IN THE ARISTA OPPOSITION TO ITS SOURCE, YOU'RE

8     GOING TO WIND UP IN THE CUL DE SAC OF LOOKING AT AN INDIVIDUAL

9     WORD, AN INDIVIDUAL ACRONYM, AN INDIVIDUAL TERM, AN INDIVIDUAL

10    THING THAT CAME OUT OF A PROTOCOL.

11         OKAY, SO MR. BLACK HAS A LIST OF THINGS LIKE ARP STARTING

12    WITH THE A'S AND GOING THROUGH.  THOSE ARE ALL INDIVIDUAL

13    TERMS.

14         YOU WON'T LET -- NONE OF THEIR CITATIONS WILL TAKE YOU TO

15    A PLACE THAT SAID MR. LOUGHEED, TO WORK ON A NEW PROBLEM OF A

16    NEW HARDWARE, NEW ROUTERS, NEW SWITCHES, HAD TO HAVE CHOSEN A

17    CERTAIN SEQUENCE, HE HAD TO HAVE CHOSEN SHOW IP ACCESS RATHER

18    THAN ACCESS IP SHOW.  YOU WON'T FIND IT BECAUSE IT ISN'T THERE.

19         AND, IN FACT, THERE'S SIMPLY -- THERE'S NO EVIDENCE.  IF

20    YOU LOOK TO MR. BLACK'S TESTIMONY, WHICH IS MOST DIRECTED AT

21    SCENES A FAIRE, AT TRANSCRIPT 2221 TO -22, TRANSCRIPT 2256 TO

22    -57, THERE YOU'RE GOING TO FIND TESTIMONY ABOUT INDIVIDUAL

23    TERMS AND INDIVIDUAL COMMANDS.

24         IT LOOKED VERY IMPRESSIVE WITH THE MULTICOLORED

25    DEMONSTRATIVE BECAUSE IT LOOKED LIKE THERE WERE A LOT OF WORDS

1    OUT THERE, BUT A LOT OF WORDS DOESN'T GET YOU TO THE RELEVANT

2    LEGAL TEST, WHICH IS SCENES A FAIRE AS TO THE COMPILATION,

3    SCENES A FAIRE AS TO THE ARRANGEMENT, SCENES A FAIRE AS TO THE

4    STRUCTURE AND DESIGN OF THE COLLECTION AS A WHOLE.

5        SO THAT'S REALLY THE FUNDAMENTAL PROBLEM IN THIS CASE, AND

6    I THINK YOU CAN TELL THAT IT'S A PROBLEM BECAUSE WHAT MY

7    FRIENDS ON THE OTHER SIDE TRY TO DO IS THEY TRY TO WATER DOWN

8    THE LEGAL STANDARD TO TRY TO SAVE THEIR RECORD.  THEY TRY TO

9    SAY, "OH, WELL YOU DON'T REALLY NEED DICTATED BY EXTERNAL

10   FACTORS.  YOU JUST NEED FOLLOWS FROM WHAT MIGHT BE EFFICIENT IN

11   THE INDUSTRY OR WHAT ENGINEERS WOULD EXPECT," AND THEY TALK

12   ABOUT HOW YOU WANT TO BE CONCISE AND CONSISTENT AND EFFICIENT

13   AND ENGINEERS EXPECT THAT AND YOU WANT TO USE COMMON SENSE AND

14   YOUR OWN PARSER POLICE SAID USE COMMON SENSE.

15       WITH RESPECT, THAT COMES NOWHERE CLOSE TO THE RIGHT LEGAL

16   STANDARD HERE, WHICH IS DICTATED BY EXTERNAL FUNCTIONS.

17       AND DON'T TAKE IT FROM ME, TAKE IT FROM THE CIRCUIT,

18   BECAUSE WHEN WE FIRST HEARD THE STANDARD FROM THE CIRCUIT BACK

19   IN APPLE VERSUS MICROSOFT, THE CIRCUIT SAID THAT WHAT SCENES A

20   FAIRE MEANS -- AND THIS IS 35 F.3D AT 1444 -- IS INDISPENSABLE.

21   INDISPENSABLE.  NOT NICE, NOT MARKET FRIENDLY, INDISPENSABLE.

22   ARE THE TECHNICAL REQUIREMENTS SUCH THAT IT CREATES AN

23   INDISPENSABLE EXPRESSION OF THESE IDEAS?

24       AND WHAT WOULD HAVE TO BE INDISPENSABLE HERE IS THAT YOU

25   PUT THE HIERARCHIES, THE SEQUENCE, THE ARRANGEMENT, THE

1     ORGANIZATION, INTO A CERTAIN PACKAGE, AND THAT'S WHAT WAS

2     MISSING IN THE CASE.

3          I COULD UNDERSTAND IF, IF WE WERE ARGUING ABOUT INDIVIDUAL

4     WORDS, OR EVEN SINGLE MULTIWORD COMMANDS OR SINGLE COMMAND

5     OUTPUTS OR SINGLE HELP DESCRIPTIONS, IF YOU SAID, "I'M SORRY,

6     MS. SULLIVAN, BUT THEY HAVE A RECORD ON THOSE."

7          BUT REMEMBER, YOUR HONOR, INSTRUCTION 39, AND OUR HARD

8     FOUGHT ANALYTIC DISSECTION ORDER, YOU RULED THAT AT THAT LEVEL

9     OF GENERALITY, NOTHING IS PROTECTABLE.

10         SO WE WEREN'T ENTITLED TO WIN OUR CASE BY SHOWING ORIGINAL

11    AS TO WORD, ORIGINAL AS TO LINE, ORIGINAL AS TO INDIVIDUAL HELP

12    COMMAND.  WE WERE ONLY -- IN EFFECT, YOUR HONOR, LET'S

13    REMEMBER, YOU DID TIE CISCO'S HANDS BEHIND ITS BACK IN THE

14    SENSE THAT YOU SAID YOU'RE A THIN PROTECTION CASE.

15              THE COURT:  YEAH.

16              MS. SULLIVAN:  YOU HAVE TO SHOW VIRTUAL IDENTITY

17    BECAUSE YOU ARE A COMPILATION.

18         SO IF WE HAD TO PROVE INFRINGEMENT UNDER A COMPILATION

19    STANDARD, THEN ARISTA HAD TO PROVE SCENES A FAIRE AT THE

20    COMPILATION LEVEL AND NOT AT THE LEVEL OF ALL THOSE TINY

21    SUBPARTS THAT YOU DEEMED UNPROTECTABLE.

22         AND THAT'S WHAT'S REALLY MISSING HERE.

23         AND I'M TRYING TO BE AS OBJECTIVE AS I CAN, YOUR HONOR,

24    NOTWITHSTANDING MY OBVIOUS INTEREST HERE.

25         I WENT THROUGH EVERY SINGLE CITATION IN THE ARISTA

1    OPPOSITION AND I KEPT DRIVING INTO THAT CUL DE SAC THAT YOU'RE

2    GETTING ME TO A TERM OR AN ACRONYM OR A SINGLE ISOLATED

3    EXPRESSION THAT GOT PUT SOMEWHERE IN THE CISCO CLI, BUT YOU'RE

4    NOT TAKING ME TO A PLACE THAT SAID IT HAD TO BE DICTATED IN THE

5    FOLLOWING FASHION.

6        AND LET'S COMPARE IT, YOUR HONOR, WITH THE FEW CASES THAT

7    DO LOOK LIKE THEY GO THEIR WAY AND LET'S SEE WHY THOSE ARE SO

8    DIFFERENT.

9        THEY MAKE A GREAT DEAL OUT OF THE TENTH CIRCUIT CASE IN

10   MITEL, IF I'M PRONOUNCING THAT CORRECTLY, VERSUS IQTEL,

11   JUDGE TACHA'S OPINION FROM THE TENTH CIRCUIT IN THAT CASE.

12       THAT WAS DIFFERENT BECAUSE IT WAS A CASE ABOUT HARDWARE

13   REQUIREMENTS DEMANDING A CERTAIN KIND OF EXPRESSION.

14       IF YOU REMEMBER, THAT WAS TWO VENDORS TRYING TO CREATE

15   AUTOMATED CALL CODES THAT WOULD INDICATE -- IT WOULD PRODUCE A

16   RESPONSE IN THE PUBLIC TELEPHONE NETWORK.  THERE'S ONE PUBLIC

17   TELEPHONE NETWORK, TWO VENDORS TRYING TO GET THE CODES TO WORK.

18   OF COURSE THAT MIGHT CREATE ELIGIBILITY FOR SCENES A FAIRE

19   BECAUSE THEN YOU'VE GOT AN EXTERNAL HARDWARE CONSTRAINT ON THE

20   EXPRESSION.

21       AND THAT'S AT 124 F.3D 1366, AND THE KEY LANGUAGE IS

22   THERE'S SCENES A FAIRE HERE BECAUSE THE -- MUCH OF THE

23   EXPRESSION IN MITEL'S COMMAND CODES WAS DICTATED BY -- AND I'M

24   SKIPPING SOME LANGUAGE -- SIGNIFICANT HARDWARE, COMPATIBILITY,

25   AND INDUSTRY REQUIREMENTS.  FOR EXAMPLE, THE VALUES WERE

1        DICTATED BY THE LIMITS INHERENT IN THE PUBLIC TELEPHONE

2        NETWORKS, THE CALL CONTROLLER'S ACCESS.

3            SO THAT MIGHT GET YOU TO THE COMPUTER ANALOG OF ROMEO AND

4        JULIET IN SCENES A FAIRE.

5            BUT THIS IS NOT THAT CASE BECAUSE, REMEMBER, WE ARE NOT

6        TWO VENDORS TRYING TO USE THE SAME HARDWARE.  TO THE CONTRARY.

7        ARISTA VERY PROUDLY ARGUED TO THE JURY, THROUGH MUCH OF THE

8        TRIAL, THAT THEY HAVE DIFFERENT HARDWARE.  THEY WANTED TO TELL

9        THEM IT WAS BETTER HARDWARE, THEY INVENTED A DIFFERENT KIND OF

10       SWITCH AND DIFFERENT KINDS OF AUTOMATION FOR ITS SWITCHES.

11           SO WE WERE TWO VENDORS WHO COULD HAVE EASILY CREATED

12       TOTALLY DIFFERENT CLI'S FOR OUR DIFFERENT HARDWARE.  WE'RE NOT

13       TWO VENDORS COMPETING FOR ONE STANDARDIZED WORLD OF HARDWARE

14       LIKE THE TELEPHONE NETWORK, AND THAT'S WHAT MAKES MITEL

15       FUNDAMENTALLY IRRELEVANT HERE.

16           IN FACT, WE KNOW -- AND THAT'S WHY I THINK THE JUNIPER AND

17       H.P. EVIDENCE AND THE ADMISSIONS BY ARISTA'S OWN WITNESSES THAT

18       YOU COULD HAVE DONE THE CLI A LOT OF DIFFERENT WAYS, THAT'S WHY

19       IT'S SO IMPORTANT.  WE WERE DIFFERENT VENDORS WHO COULD HAVE

20       DONE ANYTHING WE WANTED.  IN MR. SHAFER'S WORDS FROM JUNIPER,

21       EVERYONE HAD AN OPEN FIELD AND A GREEN PASTURE FOR THE

22       EXPRESSION ON THE MACHINE TO HUMAN, HUMAN TO MACHINE

23       COMMUNICATION THAT A CLI INVOLVES.

24           AND IN THAT WORLD, SCENES A FAIRE THAT MIGHT HAVE OPERATED

25       IN MITEL IS REALLY ABSENT, AND THAT'S WHY, YOU KNOW, I THINK

1    WE'VE GOT TO GO THROUGH A COUPLE STEPS.  WE'RE IN THE

2    COMPILATION WORLD.  LIVE BY COMPILATION, DIE BY COMPILATION IN

3    A SENSE.

4        IF WE HAVE TO PROVE INFRINGEMENT OF A COMPILATION, ARISTA

5    HAS TO PROVE INFRINGEMENT OF A COMPILATION.  AND WHEN THEY GO

6    TO WHAT THEY SAY IS THE PORTION, THEY'RE ALWAYS GOING TO

7    SOMETHING THAT'S NOT A COMPILATION.

8        I WOULDN'T MIND IF THEY SHOWED ME A CHUNK OF THE

9    COMPILATION, "WELL, YOUR COMPILATION IS THE COMBINATION OF X

10   NUMBER OF COMMANDS, BUT WE SHOWED SCENES A FAIRE AS TO HALF OF

11   THOSE, THE COMPILATION HALF OF THOSE."  THEY DON'T SHOW THAT.

12       WHAT THEY GO TO IS TRYING TO POKE HOLES IN THE CHEESE, SO

13   TO SPEAK, KNOCK OUT A TERM HERE OR A LINE THERE OR AN IDEA,

14   LIKE IT'S GOOD TO BE CONSISTENT.

15       THAT'S NOT GOOD ENOUGH.  WHAT THEY HAVE TO SHOW IS THAT

16   FACTORS OTHER THAN OUR CREATIVITY DICTATED THAT WE WRITE THE

17   CLI IN A WAY THAT WAS ARRANGED AND ORGANIZED AND DESIGNED AND

18   STRUCTURED IN THE WAY WE DID.

19       YOU CAN'T GET THAT OUT OF THIS RECORD, AND I'M -- I DON'T

20   NEED TO GO TO A SINGLE CISCO WITNESS TO SHOW THAT THAT'S THE

21   CASE BECAUSE IT CAN ALL BE DONE WITH THE ADMISSIONS I MENTIONED

22   BEFORE.

23       AND I WANT TO REALLY HIGHLIGHT TO YOUR HONOR TO PLEASE GO

24   BACK -- I KNOW YOU KNOW THIS VERY WELL -- BUT AT 2060 TO 2063,

25   THE SHAFER TESTIMONY, AND TO 2316 TO -17 AND 2324 TO -26,

1        THAT'S WHEN YOU HAVE MR. SHAFER AND ARISTA'S OWN WITNESS,

2    MR. VENKATRAMEN, SAYING THERE ARE MULTIPLE DIFFERENT WAYS TO DO

3    THIS.  IF YOUR HONOR WERE IN A PATENT CASE, WE WOULD BE CALLING

4    THEM MULTIPLE NON-INFRINGING ALTERNATIVES.

5        AND WHEN THAT'S THE CASE AND WE'RE IN A COMPILATION CASE,

6    ALL OF THE LEARNING FROM THE PREVIOUS CASES GETS TO US TO ONE

7    ANSWER, WHICH IS SCENES A FAIRE IS NOT GOING TO KNOCK OUT THE

8    COMPILATION UNLESS THE COMPILATION ITSELF, THE ARRANGEMENT, WAS

9    DICTATED, AS PUBLIC TELEPHONE NETWORKS DICTATED THE 40

10   MILLISECOND CODE IN MITEL.

11       SO THAT'S REALLY THE ESSENCE OF THE ARGUMENT, YOUR HONOR.

12       NOW, YOU ASKED WHETHER IT MATTERS THAT THE COMPILATIONS

13   ACCRETED OVER TIME, AND I THINK THE ANSWER TO THAT IS VERY

14   CLEARLY NOT.  WE DID HAVE FOUR DIFFERENT USER INTERFACES IN

15   THIS CASE BECAUSE THERE WERE DIFFERENT VERSIONS OF THE

16   OPERATING SYSTEM THAT CAME OUT OVER TIME.

17       BUT AT ANY ONE MOMENT, THE CODE FOR PRODUCTS, THE CODE FOR

18   OUR PRODUCTS EXISTED AT ONE SIMULTANEOUS MOMENT IN TIME.  THE

19   COMPILATION OF THE MULTIWORD COMMANDS OR THE COMPILATION OF THE

20   HELP DESCRIPTIONS OR THE COMPILATION OF THE COMMAND OUTPUTS

21   WITHIN ANY OPERATING SYSTEM, THAT HAD TO OPERATE SIMULTANEOUSLY

22   IN TIME BECAUSE THAT'S WHAT OUR USERS AND OUR CUSTOMERS WERE

23   USING TO OPERATE THEIR SWITCHES.

24       AND THERE WAS CERTAINLY NOTHING IN THE CASES I'VE JUST

25   LISTED OFF TO YOU IN WHICH THE FACT THAT SOME OF THE PRODUCT

1    DEVELOPMENTS WERE DEVELOPING OVER TIME ALTERED THE FACT THAT

2    THERE WAS A COMPILATION BEFORE THE COURT.

3          IF ANYTHING, YOUR HONOR, I THINK THAT ANY TEMPORAL ASPECT

4    OF THIS CASE IS ON CISCO'S SIDE, AND YOU'LL SEE A LOT -- IF YOU

5    GO TO ARISTA'S PURPORTED EVIDENCE, THERE'S A BACK TO THE FUTURE

6    PROBLEM, YOU KNOW, WHERE ARISTA WILL SAY, WELL, CUSTOMERS LIKED

7    THE CISCO CLI, BUT THAT WAS AFTER WE INVENTED IT.

8          THE COURT:  SURE.

9          MS. SULLIVAN:  AND, OF COURSE, THE OTHER KEY LINE IN

10   INSTRUCTION NUMBER 61 IS AT THE TIME OF CREATION.

11         THE COURT:  OKAY.

12         MS. SULLIVAN:  SO THAT'S THE ESSENCE OF OUR ARGUMENT,

13   YOUR HONOR.

14         THE COURT:  OKAY.

15         MS. SULLIVAN:  I KNOW THAT A 50(B) IS A VERY TALL

16   ASK.  WE DON'T MAKE IT LIGHTLY.  AS YOUR HONOR NOTED, WE TRIED

17   TO NARROW THE REQUEST TO A VERY SIMPLE AND STRAIGHTFORWARD

18   REVIEW.

19         THE COURT:  YEAH.

20         MS. SULLIVAN:  WE TRIED NOT TO CLUTTER THIS ASK WITH

21   MULTIPLE OTHER ISSUES.

22         WE THOUGHT THAT THIS IS JUST A VERY IMPORTANT CASE IN

23   WHICH THE VALLEY AND PEOPLE WHO DEVELOP TECHNOLOGIES

24   NATIONWIDE, WORLDWIDE, WOULD BE WATCHING VERY CLOSELY TO SEE

25   WHETHER A SCENES A FAIRE DEFENSE IS GOING TO CREATE A NEW

1    PROBLEM FOR COMPILATIONS, BECAUSE LET'S FACE IT, IN THE

2    COMPUTER WORLD, EVER SINCE APPLE, WE'VE BEEN LARGELY IN A WORLD

3    OF COMPILATIONS.

4        THE COURT:  SURE.

5        MS. SULLIVAN:  AND THAT'S WHY YOUR HONOR GOT US TO

6    THE POINT WHERE WE HAD TO PROVE A COMPILATION VIRTUAL IDENTITY.

7        BECAUSE AS YOUR HONOR SAID, WE'RE NOT IN A WORLD OF

8    SHAKESPEARE.  WE'RE NOT.

9        BUT IF THAT WORLD IS NOW GOING TO BE SUBJECT TO A LOSS OF

10   INTELLECTUAL PROPERTY RIGHTS BECAUSE SCENES A FAIRE CAN BE USED

11   AS A DEFENSE WHEN ALL THAT WAS POSSIBLY PREEXISTING WERE THESE

12   ISOLATED TERMS AND THE STRUCTURE AND ORGANIZATION AND DESIGN

13   WASN'T DICTATED, WE'RE GOING TO HAVE A PROBLEM.

14       SO WE THINK IT'S A VERY IMPORTANT RULING OF LAW FOR YOUR

15   HONOR AND WE RESPECTFULLY REQUEST THAT YOU GRANT THE JMOL.

16       THE COURT:  YOU KNOW, AND I APPRECIATE THAT.  AND

17   IT'S -- WHAT I'VE REALLY LOOKED AT IS TO DETERMINE WHETHER

18   THERE WAS ANY DEFECT IN THE JURY INSTRUCTION, WHICH YOU DON'T

19   ARGUE.

20       MS. SULLIVAN:  NOT AT ALL, YOUR HONOR.  WE THINK THE

21   INSTRUCTION WAS CORRECT.

22       IT'S JUST THAT THE JURY, UNFORTUNATELY, DIDN'T ACT UPON

23   THE RECORD WHEN IT DECIDED UNDER THAT INSTRUCTION.  WE DON'T

24   THINK THERE'S SUFFICIENT EVIDENCE IN THE RECORD TO SUPPORT THE

25   CONCLUSION THE JURY REACHED UNDER THE JURY INSTRUCTION.

1    WE DON'T QUESTION A WORD IN THE JURY INSTRUCTION, AND

2    THAT'S BECAUSE THE INSTRUCTION PROPERLY, IN A COMPILATION CASE,

3    SAID THAT WHAT HAS TO BE DICTATED IS THE SELECTION,

4    ARRANGEMENT, ORGANIZATION, AND DESIGN OF THE ORIGINAL FEATURE.

5    WE THINK THAT'S IN TOTAL LINE WITH THE CASES I'VE

6    MENTIONED TO YOU AND THAT'S WHAT WAS MISSING IN THE RECORD.

7    THE COURT:  SO I WANT TO BE CLEAR.  I'M NOT LEANING

8    IN YOUR DIRECTION TO GRANT THIS, BUT IF I -- BECAUSE I'M NOT

9    LEANING ONE WAY OR THE OTHER.  BUT IF I WERE, YOU SUGGEST THAT

10    A -- FURTHER PROCEEDINGS MIGHT BE IN LINE WITH A BENCH TRIAL.

11    MS. SULLIVAN:  YES, YOUR HONOR.

12    THE COURT:  AND I APPRECIATE CERTAIN ISSUES CLEARLY

13    WOULD BE.

14    WE LEFT THE PETRELLA ISSUE HANGING --

15    MS. SULLIVAN:  YES, YOUR HONOR.

16    THE COURT:  -- BECAUSE WE WERE WAITING.

17    BUT MR. VAN NEST ARGUES THAT BASED ON THE VERDICT FORM, IN

18    FACT, IF THERE WERE TO BE A NEW JURY, BECAUSE THEY HAVE THE

19    RIGHT TO A JURY TRIAL ON DAMAGES -- WHICH I'M NOT RULING ON

20    NOW, OF COURSE, THAT WOULD BE SEPARATE, BUT YOU DID ADDRESS

21    IT -- IT SEEMS TO ME THAT WE'D HAVE TO ACTUALLY HAVE AN ENTIRE

22    NEW TRIAL BECAUSE WE DON'T ACTUALLY KNOW THE SCOPE OF THE

23    INFRINGEMENT THAT THE JURY FOUND.

24    AND EVEN IF I WERE TO RULE ON THE DISGORGEMENT ISSUE AS AN

25    EQUITABLE ISSUE, I DON'T HAVE MUCH GUIDANCE.  SO WOULD I HAVE

1    TO GO BACK AND MAKE MY OWN FINDINGS, WHICH SEEMS TO SET ASIDE

2    THE JURY VERDICT, WHICH WOULD BE ENTIRELY IMPROPER?

3         SO I ONLY WANT A MOMENT OF YOUR THOUGHT ON IT.

4              MS. SULLIVAN:  YES, YOUR HONOR.

5              THE COURT:  BECAUSE THIS WOULD CLEARLY BE THE SUBJECT

6    OF A COMPLETELY SEPARATE PROCEEDING IF I WERE TO GRANT YOUR

7    MOTION.  AND I'M NOT SUGGESTING YOU NEEDED TO BRIEF IT.  I JUST

8    WOULD LIKE A LITTLE PREVIEW, SINCE YOU DID PREVIEW IT IN YOUR

9    PAPERS AS WELL.

10             MS. SULLIVAN:  YES, YOUR HONOR.

11        FIRST, CISCO IS PREPARED TO DO ANYTHING POSSIBLE TO

12   STREAMLINE THE NEXT PHASE OF THE CASE.

13             THE COURT:  SURE.

14             MS. SULLIVAN:  AS WE'VE SAID TO YOUR HONOR, WE'RE

15   PREPARED TO CONSIDER -- I'M NOT AUTHORIZED TO DO IT AT THIS

16   MINUTE -- BUT WE'RE CERTAINLY PREPARED TO CONSIDER DROPPING ANY

17   ACTUAL DAMAGES CLAIM AND LIMITING ANY MONETARY REMEDY TO

18   DISGORGEMENT, WHICH WE BELIEVE ARISTA HAS ALWAYS ARGUED SHOULD

19   BE THE BENCH'S DECISION.  WE WOULD GO ALONG WITH THAT.  WE

20   THINK THEY'RE ESTOPPED FROM ARGUING OTHERWISE NOW.

21        SO IF WE TELESCOPED TO DISGORGEMENT ONLY FOR MONETARY

22   REMEDIES, THAT COULD GO TO THE BENCH AT THE SAME TIME AS ANY

23   CONSIDERATION OF AN INJUNCTION.

24             THE COURT:  OF COURSE.

25             MS. SULLIVAN:  THE QUESTION OF WHETHER NEW EVIDENCE

1    IS REQUIRED, YOUR HONOR, IF IT HAD BEEN, THEN ARISTA SHOULDN'T

2    HAVE AGREED TO THE VERDICT FORM IN THE FIRST CASE, THE FINAL

3    VERDICT FORM AS YOUR HONOR GAVE IT, BECAUSE IT DOESN'T

4    PARTICULARIZE BY OPERATING SYSTEM, AND BOTH SIDES' EXPERT

5    TESTIMONY ON DAMAGES WAS HOLISTIC.  IT LOOKED TO PROFITS AND

6    DISGORGEMENT WITHOUT SEGREGATING BY DIFFERENT PRODUCT.

7              THE COURT:  UM-HUM.

8              MS. SULLIVAN:  SO IF WE'RE GOING TO HAVE THAT

9    PROBLEM, WE WOULD HAVE HAD IT IN THE FIRST TRIAL HAD THERE BEEN

10   AN OPPOSITE VERDICT.

11        BUT, YOUR HONOR, WE'RE ALSO PREPARED TO DO ANYTHING

12   POSSIBLE TO STREAMLINE ANY ATTEMPT BY YOUR HONOR TO APPORTION.

13   IF YOUR HONOR WANTS TO TRY TO APPORTION AS TO DIFFERENT

14   POSSIBLE INFRINGEMENT FINDINGS AND COME TO THE ONE THAT IS THE

15   LEAST AMOUNT OF MONEY OR SOMETHING LIKE THAT, WE'RE VERY

16   PREPARED TO TRY TO DO THAT ON A PAPER RECORD OR TRUNCATED

17   EVIDENTIARY HEARING.

18        OUR REAL GOAL IS TO SAY THAT WE WON PRETTY MUCH EVERYTHING

19   BUT THE OUTCOME HERE.  WE WON ON INFRINGEMENT.  WE DEFEATED

20   FOUR OTHER AFFIRMATIVE DEFENSES.

21        SCENES A FAIRE SHOULD NOT BE THE WAY WE LOSE BECAUSE THE

22   RECORD DOESN'T SUPPORT IT AS A MATTER OF LAW.

23        BUT WE RECOGNIZE THE INVESTMENT THE COURT'S ALREADY MADE,

24   AND CISCO IS PREPARED TO DO ANYTHING, BY AGREEMENT OR

25   OTHERWISE, TO TRY TO TRUNCATE WHATEVER REMAINING PROCEEDINGS

```
1    ARE BEFORE THE COURT BECAUSE, AS WE'VE SAID ALL ALONG, OUR MAIN

2    GOAL IS TO TRY TO GET ARISTA TO STOP COPYING OUR CLI, AND SO AN

3    INJUNCTION IS A VERY MEANINGFUL PART OF THE PROCESS TO US.  WE

4    WANT TO GET THERE IF YOUR HONOR SHOULD SO GIVE US THE

5    OPPORTUNITY.

6         THE COURT:  WELL, I THINK IN MANY CASES, WHEN

7    AFFIRMATIVE DEFENSES ARE PUT BEFORE THE JURY, CERTAINLY THE

8    PARTIES RECOGNIZE GOING INTO THE TRIAL THAT THE VERDICT -- THAT

9    THE VERDICT COULD REST ON ANY OF THOSE AFFIRMATIVE DEFENSES,

10   EVEN IF YOU HAD PERSONALLY AND PRIVATELY HANDICAPPED YOUR --

11   THE ODDS OF LOSING OR WINNING ON THAT PARTICULAR ONE.

12        BUT FROM MY VANTAGE POINT IN ALLOWING THE JURY TO CONSIDER

13   ALL OF THE AFFIRMATIVE DEFENSES, IT WAS MY VIEW THAT THERE WAS

14   SUFFICIENT EVIDENCE TO SEND IT TO THE JURY.

15        NOW, IN REFLECTING ON THE TRANSCRIPT, WHICH IS DIFFERENT

16   THAN WITNESSING THE TRIAL AS I DO, I CERTAINLY NEED TO LOOK AT

17   IT UNDER THE BRIGHT LIGHT OF THE LAW AND SEE WHETHER THAT WAS

18   CORRECT.

19        BUT THANK YOU.  I REALLY APPRECIATE THOSE COMMENTS.

20        MS. SULLIVAN:  WE UNDERSTAND THAT, YOUR HONOR.

21        THE COURT:  OKAY.  MR. VAN NEST, MR. FARRELL, WHO'S

22   GOING TO BE ARGUING?

23        MR. VAN NEST:  MR. FERRALL IS GOING TO ADDRESS THESE

24   POINTS, YOUR HONOR.

25        THE COURT:  OKAY.  THANK YOU.
```

1          MR. FARRELL:  AND, YOUR HONOR, IT WOULDN'T BE CISCO

2     VERSUS ARISTA IF WE DIDN'T HAVE SOME SLIDES TO PASS OUT.

3          THE COURT:  OH, GOOD.  WELL, I HAVE MY SCREEN RIGHT

4     HERE.

5       I APPRECIATE THAT.  THANK YOU.

6       AND OF COURSE, MR. FERRALL, I THINK MS. SULLIVAN REALLY

7     HAS DIRECTED HER COMMENTS TO THE ABSOLUTE HEART OF WHAT THEY

8     NEED TO DO IN TERMS OF IT'S A -- IT'S A VERY SUCCINCT ISSUE I

9     HAVE TO DECIDE, AND IF I WERE TO AGREE WITH HER, YOU -- MAYBE

10    YOU NEED TO SHOW ME WHERE THE EVIDENCE STILL IS SUFFICIENT

11    UNDER MS. SULLIVAN'S INTERPRETATION OF THE LAW.

12      I IMAGINE YOU'RE GOING TO DO THAT, AS WELL AS TELLING ME

13    THAT HER VIEW OF THE LAW IS FAR MORE RESTRICTIVE THAN IT NEEDS

14    TO BE ON SCENES A FAIRE.

15      BUT I DO NEED YOU TO -- I KNOW YOU'RE PREPARED TO ARGUE

16    THE EVIDENCE UNDER HER DESCRIPTION OF THE --

17          MR. FARRELL:  I AM.  I HOPE THAT I'M ABLE TO RESPOND

18    TO EVERYTHING THAT MS. SULLIVAN SAID, BOTH ON THE LAW AND THE

19     EVIDENCE, AND LET ME START WITH JUST A COUPLE OF WORDS ABOUT

20     CONTEXT.

21      MS. SULLIVAN AGREED THAT A RULE 50(B) MOTION IS A TALL

22    ASK, AND IT IS, OF COURSE, IN PARTICULAR IN THIS CASE.

23      THIS IS NOT A CASE WHERE THE JURY, THE JURY'S

24    DELIBERATIONS WERE PLAINLY SUPERFICIAL OR THEY DIDN'T PAY

25    ATTENTION DURING THE TRIAL OR THEY CLEARLY DIDN'T FOLLOW THE

1    EVIDENCE.  THEY HEARD TWO WEEKS OF EVIDENCE, CLEARLY FRAMED BY

2    THE ARGUMENTS AND STATEMENTS OF COUNSEL.

3         CISCO'S JURY INSTRUCTIONS WERE THE ONES THAT THE COURT

4    ADOPTED, ESPECIALLY ON SCENES A FAIRE.  IMPORTANTLY -- AND

5    BECAUSE THIS WAS, I THINK, NOT CORRECTLY STATED BY

6    MS. SULLIVAN -- CISCO'S VERDICT FORM WAS GIVEN BY THE COURT.

7    ARISTA PROPOSED A MUCH MORE DETAILED VERDICT FORM THAT WOULD

8    HAVE SPECIFIED WHAT THE INFRINGEMENT WAS, AND CISCO WANTED JUST

9    AN UP OR DOWN VOTE ON IT, AND THAT'S WHAT THE JURY GOT, AND

10   THAT'S CRITICAL TO THIS CASE.  I'M GOING TO SPEND A BUNCH OF

11   TIME ON THAT, BUT IF I CAN PREVIEW THAT.

12        THE JURY DELIBERATED FOR TWO DAYS, OVER TWO DAYS, ASKED

13   QUESTIONS INDICATING THAT THEY WERE FOLLOWING THE LAW,

14   FOLLOWING THE EVIDENCE, ESPECIALLY ON SCENES A FAIRE, AND THEN,

15   AS WE KNOW, DELIVERED A MIXED VERDICT.  THIS WAS NOT AN ACROSS

16   THE BOARD WIN FOR ARISTA, RIGHT?  CISCO WON ON SOME THINGS,

17   ARISTA WON ON SOME THINGS.  SO THESE ARE NOT INDICATORS OF A

18   JURY RUNNING AMOK OR GOING OFF THE RAILS.

19        NOW, CRITICALLY HERE -- AND I DON'T THINK WE HEARD

20   ANYTHING FROM CISCO ON THIS -- WE DO NOT KNOW THE PATH THAT THE

21   JURY TOOK TO REACH ITS INFRINGEMENT FINDING, AND THEREFORE, WE

22   DO NOT KNOW THE PATH THE JURY TOOK TO REACH ITS SCENES A FAIRE

23   DEFENSE.

24        THAT IS THE MOST IMPORTANT ISSUE THAT WENT UNADDRESSED IN

25   CISCO'S MOTION BECAUSE THE LAW -- AND THIS IS BLACK LETTER RULE

1    50(B) LAW, OF COURSE -- WHOOPS, I'VE GOT THE WRONG -- I'VE GOT

2    THE WRONG DECK UP.  SORRY ABOUT THAT, YOUR HONOR.  MY

3    APOLOGIES.

4         BLACK LETTER RULE 50(B) LAW IS, OF COURSE, THAT THE

5    VERDICT MUST STAND IF THERE IS ANY PATH OR WAY IN WHICH THE

6    JURY COULD HAVE REACHED ITS VERDICT.

7         OR SAID ANOTHER WAY, THE ONLY WAY YOU CAN OVERTURN THE

8    VERDICT IS IF THE EVIDENCE SUPPORTED JUST ONE CONCLUSION AND

9    THAT CONCLUSION WAS CONTRARY TO THE VERDICT.

10        THIS IS CRITICAL.  THERE -- BECAUSE WE'RE GOING TO LOOK

11   AT -- I'M GOING TO PRESENT TO YOUR HONOR A COUPLE OF DIFFERENT

12   SCENARIOS BASED UPON THE EVIDENCE ABOUT WHAT THE JURY MIGHT

13   HAVE REACHED WHEN IT DECIDED THERE WAS INFRINGEMENT.

14        OF COURSE, WE HAVE OUR SEPARATE MOTION THAT SAYS THE JURY

15   COULDN'T HAVE REACHED ANY OF THOSE, BUT FOR PURPOSES OF THIS

16   ARGUMENT, WE WILL SURMISE ABOUT WHAT WAS POSSIBLE IN THE JURY'S

17   MIND.

18        AND THE -- CISCO'S ARGUMENT, HOWEVER, ASSUMES THAT THE

19   JURY REACHED AN INFRINGEMENT VERDICT ON BASICALLY ANY THEORY OF

20   INFRINGEMENT THAT THEY PUT BEFORE THE COURT, OR PUT BEFORE THE

21   JURY.

22        OR IN OTHER WORDS, THAT THE JURY MUST HAVE CONCLUDED THAT

23   EVERY COMMON FEATURE BETWEEN THE CLI COMMANDS, FOR EXAMPLE, OF

24   CISCO AND THE CLI COMMANDS OF ARISTA WAS PROTECTABLE

25   EXPRESSION.

```
 1            AND, OF COURSE, THAT IS -- WOULD BE A -- THAT WOULD BE AN

 2     ERROR AT THE RULE 50(B) MOTION TO REACH THAT CONCLUSION.

 3            I DON'T WANT TO BELABOR THE RULE 50(B) LAW, BUT THE

 4     JOHNSON CASE WHICH WE CITE, IT RECITES, OF COURSE, THE POINT

 5     THAT YOUR HONOR MADE THAT THE COURT, IN FACT, MUST DISREGARD

 6     EVIDENCE FAVORABLE TO THE MOVING PARTY IF IT DOES NOT HAVE TO

 7     BE BELIEVED, AND THAT INCLUDES MR. SHAFER'S TESTIMONY, FOR

 8     EXAMPLE, NOT THAT MR. SHAFER'S TESTIMONY IS FATAL TO THE SCENES

 9     A FAIRE DEFENSE ANYWAY.  BUT THE JURY IS ENTITLED TO DISREGARD

10     THAT.

11            BUT IMPORTANTLY, THE JOHNSON CASE IS WORTH TAKING A LOOK

12     AT, BECAUSE THERE NOT ONLY WAS THE DISTRICT COURT MISLED INTO

13     BELIEVING EVIDENCE FAVORABLE TO THE MOVING PARTY AND,

14     THEREFORE, IMPROPERLY GRANTED JMOL IN THAT CASE, BUT THE

15     DISTRICT COURT ALSO WAS MISLED INTO DRAWING INFERENCES IN FAVOR

16     OF THE MOVING PARTY, AND THAT, TOO, IS NOT PERMISSIBLE ON JMOL.

17            AND THAT'S MOSTLY WHAT WE'RE TALKING ABOUT HERE, BECAUSE

18     CISCO'S MOTION IS BASED UPON DRAWING ALL OF THESE INFERENCES

19     FROM THE EVIDENCE AND THEREFORE CONCLUDING THAT THERE WAS SOME

20     VAST AMOUNT OF CREATIVE EXPRESSION IN THESE COMPILATIONS AND

21     THAT THE JURY DETERMINED THAT THAT WAS INFRINGEMENT AND,

22     THEREFORE, IF YOU DO ALL OF THAT, IF YOU ASSUME THAT THAT'S

23     WHAT THE JURY DID, WELL, THEN, SURE, THEN THERE'S ALL THIS --

24     THEN THERE'S THAT MUCH MORE EVIDENCE IS REQUIRED TO PROVE

25     SCENES A FAIRE.
```

1          NOW, I COULD TELL YOU WHY WE MET THAT BURDEN.

2          BUT THAT WOULD BE UTTERLY IMPROPER ON JMOL TO ASSUME THAT

3     THAT'S WHAT THE JURY DID GIVEN THE VERDICT FORM AND GIVEN THE

4     EVIDENCE.

5          SO SCENES A FAIRE -- TO DRIVE HOME THIS POINT, AGAIN,

6     SOMETHING THAT CISCO EMPHASIZED THROUGHOUT THE CASE FROM

7     SUMMARY JUDGMENT THROUGH JURY INSTRUCTIONS AND IN THE VERDICT

8     FORM, SCENES A FAIRE IS A DEFENSE TO INFRINGEMENT.  THAT'S WHAT

9     ORACLE SAID.

10              THE COURT:  UM-HUM.

11              MR. FARRELL:  WE CAN DISPUTE THAT, BUT THAT IS WHAT

12    ORACLE SAID AND THAT'S WHAT THIS COURT ADOPTED.  THAT'S WHAT

13    WAS IN THE JURY INSTRUCTIONS AND THE VERDICT FORM.

14              THE COURT:  UM-HUM.

15              MR. FARRELL:  AND IF IT'S AN AFFIRMATIVE DEFENSE TO

16    INFRINGEMENT, THEN IT ONLY APPLIES IF AND TO THE EXTENT THERE

17    IS A FINDING OF INFRINGEMENT.

18          IN OTHER WORDS, THERE WAS NO BURDEN TO PROVE SCENES A

19    FAIRE AS TO ANY ENTIRE COMPILATION OR -- AND CERTAINLY NOT AS

20    TO ANY USER INTERFACE.

21          ALL THAT WAS REQUIRED IS THAT SCENES A FAIRE BE PROVEN AS

22    A DEFENSE TO WHATEVER WAS THE NUGGET OF EXPRESSION THAT WAS THE

23    BASIS FOR THE JURY'S INFRINGEMENT FINDING.

24          SO THAT -- AND I'M GOING TO DEPICT THIS GRAPHICALLY IN A

25    MOMENT HERE.  I THINK IT'LL HELP YOU UNDERSTAND.

1          REMEMBER, THE COMPILATION -- LET'S TAKE THE COMMANDS, YOUR

2     HONOR.  WE DON'T KNOW IF THE JURY DECIDED THAT THERE WAS AN

3     INFRINGEMENT OF A COMPILATION OF COMMANDS, AND IF SO, WHAT

4     COMPILATION OR WHAT EXPRESSION IN THERE.

5          THE COURT:  WELL, WE KNOW THAT THEY FOUND

6     INFRINGEMENT OF A COMPILATION.  WE DON'T KNOW WHICH ONE.

7          MR. FARRELL:  CORRECT.

8          THE COURT:  AND WE DON'T KNOW WHICH ELEMENTS OF THE

9     COMPILATION OR COMPILATIONS THEY FOUND INFRINGE THEY FOUND TO

10    BE ORIGINAL.

11         BUT WHAT MS. SULLIVAN ARGUES IS THAT EVEN IF NOTHING IN --

12    IF NONE OF THE ELEMENTS WITHIN THE COMPILATION WAS ORIGINAL, IT

13    WAS THE SELECTION, ARRANGEMENT, AND DESIGN OF THE COMPILATION

14    AS A WHOLE THAT THEY WERE LOOKING AT AND NECESSARILY FOUND AT

15    LEAST ONE OF THE COMPILATIONS PUT BEFORE THEM TO HAVE BEEN

16    ORIGINAL AND INFRINGED.

17         MR. FARRELL:  I THINK THAT'S -- I THINK THAT'S RIGHT,

18    BUT WITH A, WITH A CLARIFICATION.  WE NEVER HEARD CISCO

19    ARTICULATE WHAT IS THE -- WHAT IS THE EXPRESSION IN A SELECTION

20    AND ARRANGEMENT OF COMMANDS THAT WAS PRESENTED TO THE JURY.

21         NOW, ADMITTEDLY, THAT'S OUR JMOL MOTION ALSO.

22         THE COURT:  UM-HUM.

23         MR. FARRELL:  BUT WE DO KNOW THAT THERE ARE DEFINITE

24    LIMITS TO WHAT THAT COULD HAVE BEEN.

25         WHY?  BECAUSE -- LET'S TAKE IOS, ONE OF THE USER

1    INTERFACES.

2         THERE WAS TESTIMONY THAT THERE WAS APPROXIMATELY 15,000

3    CLI COMMANDS IN IOS.  AND YOUR HONOR'S QUESTION TO BEGIN THIS

4    IS SPOT ON, RIGHT?  THAT COMPILATION OF 15,000 COMMANDS, THAT

5    DIDN'T EXIST WHEN MR. LOUGHEED FIRST FOUNDED CISCO IN 1986, I

6    THINK IT WAS.  RIGHT?  THAT COMPILATION OF 15,000 COMMANDS

7    DIDN'T EXIST UNTIL THE LAST VERSION OF IOS, AND IT DIDN'T EXIST

8    UNTIL THE LAST COMMAND WAS ADDED TO IT.

9         NOW, SURE, THEY COULD HAVE -- THEY COULD HAVE PRESENTED A

10   CASE BASED UPON AN EARLIER VERSION.  BUT NOT ONLY DID THEY NOT

11   PRESENT SOME DATE-SPECIFIC COMPILATION, THEY DIDN'T PRESENT ANY

12   EVIDENCE ABOUT 15,000 COMMANDS BEING USED BY ARISTA.

13         THE COURT:  I HAVE TO BE CAREFUL NOT TO BLEED INTO

14   YOUR MOTION ON -- TO OVERTURN THE FINDING OF INFRINGEMENT.

15         I -- FOR PURPOSES OF THIS MOTION BY CISCO, I HAVE TO

16   DETERMINE IF THERE WAS SUFFICIENT EVIDENCE TO SUPPORT YOUR

17   AFFIRMATIVE DEFENSE OF SCENES A FAIRE.  SO I -- THIS IS

18   MUDDYING THE WATER FOR ME, NOT CLEARING THE WATER.

19         I AM CONCERNED ABOUT MS. SULLIVAN'S DESCRIPTION OF THE

20   MANNER IN WHICH A JURY MUST CONSIDER THE COMPILATION AND HOW

21   THE EVIDENCE MUST PROVIDE THE JURY WITH A REASONABLE PATH TO

22   FINDING SCENES A FAIRE TO THE COMPILATION, NOT TO ANY OF ITS

23   PIECES.

24         MR. FARRELL:  FAIR ENOUGH.  OKAY.  LET ME GET TO AN

25   EXAMPLE.

```
1              THE COURT:  OKAY.

2              MR. FARRELL:  AND WE CAN COME BACK AND TALK ABOUT THE

3      JURY INSTRUCTIONS.

4              THIS IS ONE WAY TO LOOK AT WHAT THE JURY MAY HAVE DONE,

5      OKAY?  THIS IS MY POINT.  THERE ARE -- THE COMPILATION OF CLI

6      COMMANDS IN IOS IS SOME SELECTION OF 15,000 COMMANDS.

7              MY POINT THAT I WAS -- AND I HOPE THIS MAKES IT MORE

8      CLEAR -- MY POINT IS THAT WHATEVER EXPRESSION IS IN THE

9      SELECTION AND ARRANGEMENT OF THOSE 15,000, ARISTA CLEARLY

10     DIDN'T COPY.  THE JURY COULD NOT HAVE FOUND THAT BECAUSE THAT

11     WASN'T EVEN PRESENTED, RIGHT?  WHAT WAS PRESENTED WAS 442 IOS

12     COMMANDS.  YOU'LL RECALL 506 WAS THE NUMBER OF COMMANDS ACROSS

13     ALL OPERATING SYSTEMS.  442 WAS IN IOS.

14             SO THE MOST THE JURY COULD HAVE FOUND WITH REGARD TO

15     COMMANDS IS THAT THERE WAS SOME PROTECTABLE EXPRESSION AMONG

16     THE ELECTION OF 442 IOS COMMANDS THAT ARISTA COPIED.

17             AND WHAT WE SUBMIT IS CERTAINLY SUPPORTED IN THE EVIDENCE

18     IS THAT THE SELECTION AND ARRANGEMENT OF THOSE 442 COMMANDS HAS

19     LITTLE, LITTLE EXPRESSIVE CONTENT IN IT.  BUT IF WE ASSUME THAT

20     THE JURY FOUND SOME EXPRESSIVE CONTENT IN THAT, THEN THAT WAS

21     DRIVEN BY UNPROTECTABLE EXTERNAL FACTORS, NAMELY, THE

22     IMPLEMENTATION OF THE FEATURES THAT THOSE COMMANDS CORRESPOND

23     TO; INDUSTRY STANDARD PROTOCOLS, WHICH THE JURY HEARD

24     SIGNIFICANT EVIDENCE ABOUT; AND CONVENTION -- CONVENTION

25     STANDARDS IN THE INDUSTRY.
```

1      MS. SULLIVAN REFERRED TO THE -- REFERRED TO THE GOOGLE

2   CASE AND THE APPLE CASE, I THINK, ABOUT HOW IT HAS TO BE

3   INDISPENSABLE.  SHE OMITTED THE NEXT THREE WORDS, OR FOUR WORDS

4   IN THAT CASE, WHICH WE CITE AND IS ACTUALLY -- IT'S

5   "INDISPENSABLE OR AT LEAST STANDARD."

6      AND THERE ARE NUMEROUS CASES WHICH WE CITE TO EXPLAIN THAT

7   INDISPENSABLE IS NOT THE ULTIMATE REQUIREMENT.  IT'S NOT THE

8   REQUIREMENT IN THAT CASE.  IT'S NOT THE REQUIREMENT IN MANY

9   CASES, MITEL, SATAVA, OTHERS.

10      IT'S SIMPLY THAT THE JURY, THE FACT FINDER HERE, IS

11   ENTITLED TO DETERMINE THAT SCENES A FAIRE APPLIES WHERE THE

12   EXPRESSION WAS STANDARD, WAS A CONVENTIONAL PROGRAMMING,

13   PROGRAMMING CONVENTION IN THE INDUSTRY, ET CETERA.

14      AND I WON'T BELABOR THAT CASE LAW.  IT'S SET FORTH IN OUR

15   PAPERS.

16      SO ONE POSSIBILITY, AGAIN, IS THAT THE JURY DETERMINED

17   THAT THERE WAS SOME MINIMAL LEVEL OF CREATIVE EXPRESSION AMONG

18   THE COLLECTION OF 442 COMMANDS, BUT THAT WAS DRIVEN BY THE

19   IMPLEMENTATION OF THE FEATURES WHICH DETERMINED THAT -- WHICH

20   COMMANDS TO ADD.  AFTER ALL, THERE'S -- LET ME SHOW YOU JUST

21   SOME EXAMPLES OF SOME EVIDENCE IN SUPPORT OF THAT.

22      IN FACT, THE MOST DIRECT EVIDENCE ON THIS POINT COMES FROM

23   DR. BLACK, AND I WOULD SAY, YOUR HONOR, I'D SUBMIT THERE WAS NO

24   CONTRARY EVIDENCE, NOT THAT THAT'S NECESSARY, BUT CISCO DIDN'T

25   PRESENT ANY EVIDENCE ABOUT A SELECTION OF COMMANDS THAT WAS

```
 1      DIFFERENT THAN THIS.

 2           WHAT DR. BLACK EXPLAINED, WHICH MAKES, OF COURSE, PERFECT

 3      INTUITIVE SENSE, IS THAT YOU DON'T CREATE A CLI SELECTION AND

 4      ARRANGEMENT ON YOUR OWN AND THEN DECIDE WHAT FEATURES YOU'RE

 5      GOING TO IMPLEMENT.  YOU DECIDE WHAT FEATURES YOU'RE GOING TO

 6      IMPLEMENT AND THEN THE CLI FOLLOWS FROM THAT.

 7           NOW, HE SAYS "COMPUTATION."  I THINK THAT'S MEANT TO BE

 8      "COMPILATION."

 9               THE COURT:  SURE.

10               MR. FARRELL:  I BELIEVE THAT'S EITHER -- MAYBE A

11      MISSPEAKING BY DR. BLACK.

12               THE COURT:  SURE.

13               MR. FARRELL:  AND THERE'S -- SO THAT'S A FUNDAMENTAL

14      PREMISE OF THE WAY THE CLI IS CREATED, AND SOME OTHER

15      EVIDENCE -- LOOK, DR. ALMEROTH ADMITTED HOW THE COMMANDS ARE,

16      HOW THE COMMANDS ARE DIRECTED.  FOR EXAMPLE, HE TESTIFIED, WHEN

17      WE WERE TALKING ABOUT HOW ARISTA DOESN'T USE ALL OF CISCO'S

18      COMMANDS, HE SAYS ARISTA TOOK THE COMMANDS THAT WERE IMPORTANT

19      TO ARISTA.  YEAH, BECAUSE ARISTA IMPLEMENTED CERTAIN FEATURES,

20      NOT OTHER FEATURES.

21               THE COURT:  SURE.

22               MR. FARRELL:  AND THAT -- MR. REMAKER FROM CISCO

23      LIKENED THE COMMANDS TO NERD KNOBS, AGAIN, CORRELATING THE

24      FEATURE TO THE COMMAND.

25               MR. CATO, WHO WAS A THIRD PARTY, HE WAS A DELL SENIOR
```

```
 1          V.P., HE EXPLAINED THAT IF YOU HAVE A VLAN -- THAT WAS A

 2     NETWORKING FEATURE, VIRTUAL LAN -- THERE WAS AN EXPECTATION

 3     THAT A VLAN AND THE TERMINOLOGY AROUND VLAN WILL SOMEWHERE

 4     APPEAR IN THE CLI, ET CETERA.

 5          MR. REMAKER TALKED ABOUT HIERARCHIES AND HOW THE

 6     HIERARCHIES ARE A WAY OF IMPLEMENTING THE FUNCTIONALITY AND

 7     MAKING THEM AVAILABLE TO THE USER.

 8          SO THERE'S SUBSTANTIAL EVIDENCE ON THAT, ON THAT SCENARIO,

 9     OKAY?

10               THE COURT:  UM-HUM.

11               MR. FARRELL:  CAN I TALK ABOUT ANOTHER SCENARIO?

12               THE COURT:  SURE.

13               MR. FARRELL:  OKAY.  BECAUSE YOUR HONOR FOCUSSED

14     ON -- AND, AGAIN, I DON'T WANT TO ARGUE OUR JMOL, BUT THE FACT

15     IS TRUE THAT THE 442 COMMANDS THAT ARE IN IOS HAVE NO -- HAVE

16     NO CREATIVITY PREEXISTING THIS LAWSUIT, AND I THINK THAT'S

17     BASICALLY UNDISPUTED.

18          THAT SELECTION OF 442 COMMANDS, THOSE WERE ONES THAT WERE

19     SELECTED BY CISCO'S LAWYERS TO ASSERT AGAINST ARISTA.  THERE'S

20     NO PREEXISTING CREATIVE COLLECTION OF THOSE.

21          SO WHAT I SUBMIT TO YOUR HONOR IS THAT IS A MORE LIKELY

22     SCENARIO OF WHAT THE JURY DID IS THE JURY CONCLUDED, IF IT

23     FOUND INFRINGEMENT OF COMMANDS, OR THE, THE COMPILATION OF

24     COMMANDS, IT TOOK SOME SUBSET OF THOSE AND IT DETERMINED THAT

25     THERE WAS SOME CREATIVE EXPRESSION IN A SUBSET OF COMMANDS.
```

1        NOW, YOUR HONOR WILL RECALL THAT MOST OF THE COMMANDS,

2   THERE WAS NO EVIDENCE ABOUT THEM, NO TESTIMONIAL EVIDENCE ABOUT

3   THEM AT ALL.  MR. LOUGHEED TESTIFIED AS TO 30-SOME.

4   MR. REMAKER TESTIFIED AS TO ONE, I THINK.  AND DR. ALMEROTH WAS

5   CROSS-EXAMINED ON A NUMBER AND TESTIFIED TO THEM.

6        BUT I THINK IT'S SAFE TO SAY PROBABLY FEWER THAN A HUNDRED

7   COMMANDS WERE EVER TESTIFIED TO LIVE IN COURT.

8        ONE OF THE SETS OF COMMANDS THAT DR. ALMEROTH WAS

9   CROSS-EXAMINED ON WAS THE SO-CALLED IP IGMP SET OF COMMANDS.

10  THAT STANDS FOR IP, YOU KNOW, AND INTERNET GATEWAY MANAGEMENT

11  PROTOCOL IS IGMP.

12       AND WHAT DR. ALMEROTH WAS CROSS-EXAMINED ON WAS HE WAS

13  SHOWN AN IETF REQUEST FOR COMMENT AS A TRIAL EXHIBIT, AND HE

14  WAS WALKED THROUGH THE FACT THAT THE -- THAT THE WHOLE SERIES

15  OF IGMP COMMANDS THAT CISCO WAS ASSERTING WERE ACTUALLY FROM,

16  DIRECTLY FROM THIS IETF RFC.

17       NOW, THAT'S PROBABLY THE MOST INTENSE AND DIRECT EVIDENCE

18  ABOUT THE NATURE OF A SET OR A SELECTION OF COMMANDS THAT THE

19  JURY HEARD IN THE CASE.  SO IT'S POSSIBLE THAT THE JURY

20  CONCLUDED THAT THERE WAS SOME CREATIVITY, ALBEIT MINIMAL, BUT

21  SOME CREATIVITY IN THE SELECTION OF THAT SET OF COMMANDS.  AT

22  LEAST THOSE EXISTED ON THEIR OWN PRIOR TO THIS LAWSUIT.

23       BUT -- AND THIS IS WHAT I DEPICT HERE WITH MY CIRCLES --

24  BUT HAVING CONCLUDED THAT THERE WAS SOME PROTECTABLE EXPRESSION

25  AMONG THE IGMP COMMANDS, THE COURT CONCLUDED THAT THAT

1    COLLECTION, THAT EXPRESSION, WAS SCENES A FAIRE BECAUSE WHY?

2    BECAUSE IT WAS ALL DICTATED BY THE RFC AND THE INDUSTRY

3    STANDARD PRACTICE, THE STANDARD PRACTICE, OF USING COMMANDS FOR

4    YOUR FEATURES THAT CORRELATE TO THE TERMINOLOGY OF THE PUBLIC

5    INDUSTRY PROTOCOL, THE IETF STANDARD.

6          SO THIS COULD BE DONE -- I PRESENTED THE IGMP STANDARD.

7          THE SAME COULD BE DONE FOR THE OSPF STANDARD.  THAT'S THE

8    OPEN SHORTEST PATH FIRST.

9          BOTH OF THESE, BY THE WAY, YOUR HONOR, WERE EXPLICITLY

10   ARGUED BY MR. VAN NEST IN THE CLOSING ARGUMENT.  AND IT'S

11   PERFECTLY PLAUSIBLE THAT IF YOU GET OVER THE HURDLE THAT THERE

12   IS ANY CREATIVE EXPRESSION IN THESE, THEN THIS WAS THE PATH

13   THAT THE JURY TOOK TO FIND SCENES A FAIRE.

14          THE COURT:  OKAY.

15          MR. FARRELL:  SO THERE ARE OTHER EXAMPLES ABOUT --

16   WHETHER IT'S SHOW COMMANDS, WE COULD TAKE EXAMPLES REGARDING

17   HELP DESCRIPTIONS AND THE LIKE.  I DON'T KNOW THAT THAT'S

18   NECESSARY, BUT I'M HAPPY TO ELABORATE IF YOUR HONOR WOULD LIKE.

19          THE COURT:  ARE THEY IN THE SLIDES?

20          MR. FARRELL:  THEY ARE IN THE SLIDES.

21          THE COURT:  OKAY.

22          MR. FARRELL:  I DID WANT TO RESPOND TO SOME OF

23   MS. SULLIVAN'S COMMENTS ABOUT THE CASE LAW.  THE CRITICAL --

24          THE COURT:  SO LET ME STOP YOU.

25          MR. FARRELL:  YES.

```
 1            THE COURT:  AND I APOLOGIZE FOR THIS.

 2        I HAVE MY CASE MANAGEMENT CONFERENCES, AND I CAN EITHER

 3    TAKE A TEN MINUTE BREAK SO THAT THOSE PARTIES DON'T NEED TO

 4    WAIT AND COME BACK, OR OTHERWISE I'M GOING TO REALLY SHORTEN

 5    THIS.

 6            MR. FARRELL:  WELL, OBVIOUSLY IT'S UP TO YOU, YOUR

 7    HONOR.  I COULD BE DONE IN A COUPLE OF MINUTES SUBJECT TO YOUR

 8    QUESTIONS.

 9        BUT IT'S --

10            THE COURT:  I HATE TO KEEP YOU ALL HERE SO MUCH

11    LONGER.

12            MS. SULLIVAN:  YOUR HONOR, CISCO IS FINE WITH YOU

13    TAKING YOUR CASE MANAGEMENT CONFERENCES AND US RESUMING AFTER

14    YOU'RE FINISHED.

15            THE COURT:  YOU KNOW, BECAUSE SOME OF THEM CALL IN

16    AND THEY'RE WAITING, I'M GOING TO ASK YOUR INDULGENCE, BECAUSE

17    I ACTUALLY WANT TO HEAR YOUR DISCUSSION ON THE CASE LAW AS

18    WELL.

19            MR. FARRELL:  OKAY.

20            THE COURT:  AND I'M SURE MS. SULLIVAN WOULD LIKE AN

21    OPPORTUNITY TO CLOSE.

22        SO I'M HOPING IT'LL JUST BE TEN MINUTES.  I HAVE THREE

23    MATTERS THAT I WANT TO TAKE UP ON MY CASE MANAGEMENT, SO THANK

24    YOU ALL.

25            MR. FARRELL:  THANK YOU.
```

```
 1              (RECESS FROM 11:06 A.M. UNTIL 11:28 A.M.)

 2              THE CLERK:  RECALLING CASE 14-5344, CISCO SYSTEMS

 3    VERSUS ARISTA NETWORKS.

 4              THE COURT:  I'M SORRY FOR THAT EXTENDED DELAY.  THANK

 5    YOU FOR YOUR COURTESY.

 6              MR. FARRELL:  IT'S ALL RIGHT.

 7              THE COURT:  ALL RIGHT.

 8         MR. FARRELL, I AM INTERESTED IN YOUR COMMENTS ON THE LAW.

 9    I THINK THAT WILL BE HELPFUL TO ME.

10              MR. FARRELL:  YES.  I WANT TO TALK ABOUT A COUPLE OF

11    DIFFERENT -- I WANT TO TALK ABOUT THE SCENES A FAIRE LAW FROM

12    THE COURTS OF APPEAL FIRST.  I'LL JUST MENTION A COUPLE OF

13    ITEMS.

14         LET'S SEE IF I CAN DO THIS CORRECTLY.

15         WOW, LOOK AT THAT.  OKAY.

16         SO WE TALKED A LITTLE BIT ABOUT ORACLE, AND THESE ARE --

17    AS I SAID, THESE ARE ALL CITED IN OUR PAPERS.

18              THE COURT:  YES.

19              MR. FARRELL:  BUT IT'S CRITICAL THAT THE COURT

20    APPRECIATE THAT SCENES A FAIRE INCLUDES THINGS LIKE WIDELY

21    ACCEPTED PROGRAMMING PRACTICES WITHIN THE COMPUTER INDUSTRY.

22         THE COURT, IN MITEL, WHICH I BELIEVE IS THE TENTH CIRCUIT

23    BUT WAS NEVERTHELESS CITED APPROVINGLY IN THE ORACLE CASE,

24    REFERS TO INDUSTRY PROGRAMMING PRACTICES AND PRACTICES AND

25    DEMANDS OF THE INDUSTRY BEING SERVICED AS AMONG THE POTENTIAL
```

1   EXTERNAL FACTORS IN SCENES A FAIRE.

2       AND JUST GO TO ONE MORE.  I MENTIONED THIS AT THE OUTSET.

3   THE APPLE CASE, WHICH CISCO CITES AND WAS REFERRED TO THIS

4   MORNING, IT'S NOT JUST INDISPENSABLE, BUT IT'S INDISPENSABLE OR

5   AT LEAST STANDARD, AND CISCO QUOTED THAT IN THEIR BRIEF.

6       AND I THINK THAT THE EVIDENCE THAT WE TALKED ABOUT AND

7   THAT WE CITED IN OUR BRIEF EASILY SATISFIES ALL OF THESE

8   STATEMENTS OF THE SCENES A FAIRE DOCTRINE, WHICH IS TO SAY

9   CERTAINLY THINGS LIKE INDUSTRY STANDARD PROTOCOLS, THE

10  CONVENTION IN THE INDUSTRY TO USE THAT TERMINOLOGY IN THE

11  COMMANDS THAT YOU SELECT, AND ULTIMATELY THE UNPROTECTABLE

12  IMPLEMENTATION OF FEATURES AS DRIVING THE SELECTION OF COMMANDS

13  THAT YOU USE, ALL OF THOSE ARE SQUARELY WITHIN THE SCENES A

14  FAIRE DOCTRINE.

15          THE COURT:  AND ALL OF THIS APPLIES TO COMPILATIONS?

16          MR. FARRELL:  IT APPLIES TO SCENES A FAIRE GENERALLY.

17          THE COURT:  BUT MS. SULLIVAN SUGGESTS THAT WHEN

18  LOOKING AT COMPILATIONS, WE HAVE TO LOOK CAREFULLY TO NOT

19  OVEREXTEND THE REACH OF SCENES A FAIRE.

20          MR. FARRELL:  WELL, THE LAW IS THE SAME, AND

21  THAT'S -- SO I CAN TURN TO THOSE OTHER CASES THAT -- WHICH, BY

22  THE WAY, WITH ONE EXCEPTION, THEY'RE ALL DISTRICT COURT CASES,

23  SOME FROM OTHER CIRCUITS EVEN.

24      BUT THE -- THE LAW OF SCENES A FAIRE IS THE SAME.  THE

25  POINT IS, YOU'VE GOT TO -- AS THE DEFENDANT PROVING SCENES A

```
 1        FAIRE, AGAIN, YOU NEED TO ADDRESS WHATEVER THE PROTECTABLE

 2        EXPRESSION IS IN THE COMPILATION.  THAT'S THE ONLY TWIST WITH

 3        REGARD TO COMPILATIONS.

 4             NOW, YOU'VE GOT TO FIND, WHAT IS CREATIVE ABOUT SELECTING

 5        THE ITEMS IN THE COMPILATION?

 6             SO THE LAW IS CLEAR AND WE DON'T DISPUTE THAT IT'S

 7        POSSIBLE TO FIND CREATIVITY AND ORIGINALITY IN THE SELECTION OF

 8        UNPROTECTED ITEMS.  THAT'S WHAT MOST OF THESE CASES SAY.

 9        THAT'S ESSENTIALLY WHAT THEY ALL SAY --

10             THE COURT:  SURE.

11             MR. FARRELL:  -- IS THAT OF COURSE THE COMPILATION

12        CAN BE PROTECTED EVEN IF THE INDIVIDUAL ITEMS ARE NOT.  NO ONE

13        DISPUTES THAT.

14             THE COURT:  SO WHAT --

15             MR. FARRELL:  SORRY.  GO AHEAD.

16             THE COURT:  WHAT MS. SULLIVAN ARGUES IS THAT YOU'VE

17        SHOWN ME EVIDENCE OF THE SELECTION OF A PARTICULAR ELEMENT, BUT

18        NOT AT THE LEVEL OF A SELECTION THAT MADE UP -- THAT CREATED

19        THE COMPILATION, NOT AT THE LEVEL OF THE COMPILATION.

20             MR. FARRELL:  BUT THAT'S JUST NOT TRUE.

21             THE COURT:  OKAY.

22             MR. FARRELL:  I SHOWED YOU THE IGMP, RIGHT?

23             THE COURT:  YES.

24             MR. FARRELL:  THIS WAS A WHOLE SERIES OF COMMANDS

25        THAT WERE DICTATED BY THE PUBLIC PROTOCOL.
```

1          LIKEWISE, THE MERE -- THE TESTIMONY OF DR. BLACK AT A HIGH

2     LEVEL THAT SAYS WHAT'S, WHAT'S THE SELECTION PROCESS BY WHICH

3     YOU COMPILE A GROUP OF COMMANDS?

4          WELL, YOU COME UP WITH A FEATURE FIRST, AND THAT'S NOT

5     PROTECTED BY COPYRIGHT.  YOU FIRST COME UP WITH A FEATURE, AND

6     THEN YOU FOLLOW THE CONVENTION OF THE INDUSTRY THAT PREDATED

7     CISCO THAT SAYS IF I IMPLEMENT A FEATURE, I'M GOING TO HAVE A

8     COMMAND THAT CORRESPONDS TO IT.

9          BOTH OF THOSE --

10          THE COURT:  AND THAT'S IN DR. BLACK'S TESTIMONY?

11          MR. FARRELL:  THAT'S DR. BLACK'S TESTIMONY THAT I

12     CITED EARLIER.

13          THE COURT:  THANK YOU.

14          MR. FARRELL:  YOU DON'T COME UP WITH A COMMAND SET

15     FIRST AND THEN DECIDE WHAT FEATURE YOU'RE GOING TO IMPLEMENT.

16     IT SORT OF GOES WITHOUT SAYING.

17          SO JUST TO TOUCH UPON THESE DISTRICT COURT CASES, THEY

18     ARE -- THEY, AS MS. SULLIVAN ACKNOWLEDGED, THEY ARE AT A

19     PROCEDURALLY DIFFERENT POSTURE.  THEY ARE EITHER SUMMARY

20     JUDGMENT, SOME ARE EVEN AT A MOTION TO DISMISS STAGE.

21          SO IN ALL OF THE CASES WHAT THEY'RE DOING IS THEY'RE

22     LOOKING AT THE BROADEST POSSIBLE CLAIM OF INFRINGEMENT THAT THE

23     PLAINTIFF IS ASSERTING AND DETERMINING, WELL, CAN SCENES A

24     FAIRE ELIMINATE THAT THEORY ENTIRELY?

25          THAT'S NOT WHAT WE'RE LOOKING AT HERE.  WE'RE IN A MUCH

1    DIFFERENT LENS.

2         THEY ALSO, AS A FACTUAL MATTER -- WE'RE LOOKING THROUGH

3    THIS THROUGH A MUCH DIFFERENT LENS TO LOOK AT THIS ISSUE AND

4    THE STANDARD IS VERY DIFFERENT.

5         CISCO, BY THE WAY, DIDN'T EVEN MOVE FOR SUMMARY JUDGMENT

6    ON SCENES A FAIRE IN THIS CASE.

7         THE -- FACTUALLY EACH OF THESE CASES IS VERY DIFFERENT.

8    THAT DOESN'T MEAN THE LAW IS NOT THE LAW.  THE LAW IS WHAT IT

9    IS AND WE DON'T DISPUTE THE LEGAL HOLDING OF THESE.

10        BUT THESE ARE ALL INSTANCES IN WHICH THERE'S SOME, FOR

11   EXAMPLE, SOME VISUAL ARRANGEMENT OF FEATURES IN THE HARNER

12   CASE, WHICH WAS FROM NEW MEXICO.  THESE WERE ADVERTISEMENTS FOR

13   A COMPUTER SERVICE AND THERE WAS SOME ARRANGEMENT OF COMMON

14   FEATURES.

15        THERE -- WE -- I'VE YET TO HEAR ANY TESTIMONY OR EVEN

16   ARGUMENT FROM COUNSEL ABOUT SOME VISUAL ARRANGEMENT THAT WAS

17   CREATED IN THIS CASE.

18        THERE'S A SELECTION OF COMMANDS BECAUSE THERE'S 15,000 OR

19   400 OR 12 IGMP COMMANDS, BUT THERE'S NO VISUAL ARRANGEMENT OF

20   THOSE COMMANDS THAT'S RELEVANT TO THIS CASE.

21        THE METCALF CASE, WHICH IS THE ONE CIRCUIT COURT CASE FROM

22   THE NINTH CIRCUIT, IT TALKS ABOUT A -- SIMILARITIES OF VARIOUS

23   TELEVISION EPISODES, AND AGAIN, IT'S A VISUAL AND PERFORMING

24   ARTS CASE IN WHICH IT DETERMINES -- AGAIN, REVERSING A SUMMARY

25   JUDGMENT MOTION, NOT DEALING WITH THE JMOL STANDARD, BUT

1    REVERSING A SUMMARY JUDGMENT MOTION THAT SAID THAT THERE WAS NO

2    SUBSTANTIAL SIMILARITY.

3         THE NINTH CIRCUIT SAID, NO, I FIND ENOUGH SIMILARITY OF

4    THESE FEATURES AND ATTRIBUTES OF THESE TELEVISION SHOWS THAT IT

5    SHOULD HAVE GONE TO TRIAL.  THAT'S ALL THE METCALF CASE STANDS

6    FOR.

7         THE OTHER THING TO KEEP IN MIND IN ALL OF THESE CASES,

8    INCLUDING METCALF, WHICH IS FROM 2002, IS THAT MOST -- I THINK

9    MAYBE ONLY ONE EXCEPTION TO THIS -- MOST, IF NOT ALL OF THEM,

10   DO NOT APPLY SCENES A FAIRE AS AN AFFIRMATIVE DEFENSE.  OKAY?

11        MERCHANT TRANSACTION, FOR EXAMPLE, JUST BY WAY OF --

12   THAT'S A 2002 CASE FROM THE DISTRICT OF ARIZONA, OBVIOUSLY

13   PRE-ORACLE, AND IT'S APPLYING -- IT'S AN ANALYTIC DISSECTION

14   ORDER.  IT'S A THOROUGH ANALYTIC DISSECTION ORDER TREATING

15   SCENES A FAIRE AS A QUESTION OF PROTECTABILITY, WHICH, AGAIN,

16   FOR BETTER OR WORSE, WE KNOW THAT'S NOT THE RULES WE'RE PLAYING

17   BY HERE.

18        THE COURT:  THAT'S RIGHT.

19        MR. VAN NEST:  SO THOSE CASES, THEY STATE THE LAW,

20   BUT THEY DON'T HAVE ANY APPLICATION REALLY TO -- AND THERE'S

21   CERTAINLY NO CASE THAT SAYS SCENES A FAIRE DOESN'T APPLY TO

22   COMPILATIONS OR CAN'T APPLY TO THIS COMPILATION.

23        SO, YOUR HONOR, THERE WAS SOME DISCUSSION ABOUT THE --

24   ABOUT WHAT HAPPENS IF, PER CHANCE, YOU GRANTED THIS JMOL.  I

25   THINK OUR POSITIONS ARE CLEAR IN THE BRIEF THAT THIS CASE WOULD

1      HAVE TO BE RETRIED.

2              THE COURT:  YEAH.

3              MR. FARRELL:  I'M ALSO HAPPY TO ANSWER QUESTIONS

4      ABOUT CISCO'S ALTERNATIVE ARGUMENT THAT SCENES A FAIRE WAS

5      INCONSISTENT WITH THE VERDICT.  I THINK THAT SHOULD HAVE BEEN

6      RAISED LONG AGO IF THAT WAS THE CASE, BUT IF YOUR HONOR HAS

7      QUESTIONS, I'M HAPPY TO ANSWER THAT.

8          OTHERWISE --

9              THE COURT:  I ACTUALLY, AND MS. SULLIVAN DIDN'T ADD

10     ANYTHING IN HER ARGUMENT, BUT IN MY VIEW, IF THAT WERE CORRECT,

11     IT WOULD HAVE REQUIRED A FURTHER JURY INSTRUCTION TO ADVISE THE

12     JURY THAT IF THEY FOUND VIRTUAL IDENTITY, THEN THE SCENES A

13     FAIRE DEFENSE WAS NOT AVAILABLE, AND I WAS NOT ASKED TO DO

14     THAT.  I THINK THERE IS A WAIVER THERE.

15         BUT IS THERE ANYTHING, MR. FERRALL, IN TERMS OF ARISTA'S

16     MOTION THAT YOU'D LIKE TO ADDRESS?  YOU'VE BRIEFED IT VERY

17     THOROUGHLY.  YOU'VE RAISED A NUMBER OF ISSUES.  I REALLY

18     APPRECIATE THAT YOU NEED TO PROTECT YOUR RECORD AND THAT

19     SOMETIMES THOSE MOTIONS, THE PARTIES GET A LITTLE -- WHAT MIGHT

20     LOOK A LITTLE CARRIED AWAY FROM MY VIEWPOINT, BUT I CERTAINLY

21     APPRECIATE THE TASK THAT YOU HAVE IN THE PROTECTION OF YOUR

22     CLIENT.

23         AS I SAID, I THINK IT'S FAIR TO SAY IN ALL JMOL MOTIONS, A

24     COURT IS DISINCLINED, AND IS REQUIRED TO BE DISINCLINED, TO

25     OVERTURN A JURY VERDICT, SO I'M NO DIFFERENT, BUT I'M NOT

```
1    RULING NOW.  SO YOU COME IN AHEAD BECAUSE YOU HAVE A VERDICT IN

2    HAND.

3            BUT IS THERE ANYTHING MORE YOU'D LIKE TO ADD TO THOSE

4    PAPERS?

5               MR. FARRELL:  IF YOUR HONOR WILL INDULGE US WITH A

6    BRIEF DISCUSSION ABOUT THE WORKS AS A WHOLE ISSUE, AND --

7               THE COURT:  OKAY.

8               MR. FARRELL:  -- MS. MCCLOSKEY IS GOING TO ADDRESS

9    THAT.

10              THE COURT:  OKAY.

11              MS. SULLIVAN:  YOUR HONOR --

12              THE COURT:  THAT'S CERTAINLY AN ISSUE THAT WE --

13              MS. SULLIVAN:  CISCO WOULD LIKE TO RESPOND TO

14   MR. FERRALL WHEN YOUR HONOR IS READY.

15              THE COURT:  ABSOLUTELY.

16          AND, MS. MCCLOSKEY, CAN WE DO THIS IN UNDER FIVE MINUTES?

17              MR. VAN NEST:  YES.

18              MS. MCCLOSKEY:  I THINK SO, YES.

19              THE COURT:  OKAY.  BECAUSE I DO NEED TO BREAK AT

20   NOON, BUT THAT'LL GIVE MS. SULLIVAN A FULL 15 MINUTES TO

21   RESPOND.  I THINK THAT'LL BE ADEQUATE.

22              MS. SULLIVAN:  THANK YOU, YOUR HONOR.

23              MR. FARRELL:  OKAY.  WE'RE GOING TO DO A QUICK CHANGE

24   HERE.

25              MS. MCCLOSKEY:  OTHERWISE, I HAVE A BRIEF
```

1          PRESENTATION.  THIS ONE IS A LITTLE SHORTER.

2                    THE COURT:  THANK YOU.

3                    MS. MCCLOSKEY:  GOOD MORNING.  I GUESS WE CAN STILL

4          SAY GOOD MORNING, YOUR HONOR.  IT'S GOOD TO SEE YOU AGAIN.

5              I AM GOING TO BRIEFLY ADDRESS THE ISSUE OF WHETHER CISCO

6          SUCCESSFULLY PUT IN ITS ENTIRE WORKS AS A WHOLE INTO EVIDENCE

7           IN THIS CASE.

8              NINTH CIRCUIT LAW IS CLEAR THAT A JURY CANNOT FIND THAT

9          ALLEGED COPYING IS ACTIONABLE INFRINGEMENT WITHOUT EVIDENCE OF

10         THE WORKS AS A WHOLE.  AS YOUR HONOR WELL KNOWS AND AS WE

11         DISCUSSED IN THE WINTER WHEN WE WERE WORKING TOGETHER ON OUR

12         JURY INSTRUCTIONS, TO PROVE ACTIONABLE COPYING, A PLAINTIFF

13         MUST PROVE SUBSTANTIAL SIMILARITY UNDER BOTH THE EXTRINSIC TEST

14         AND THE INTRINSIC TEST.

15             THE INTRINSIC TEST REQUIRES A SUBJECTIVE COMPARISON MADE

16         BY A, QUOTE, "ORDINARY REASONABLE PERSON BETWEEN THE WORKS AS A

17         WHOLE."

18             COURTS IN THE NINTH CIRCUIT TAKE THIS REQUIREMENT

19         SERIOUSLY.  IN THE RECENT ANTONICK CASE IN FRONT OF THE NINTH

20         CIRCUIT, THE COURT AFFIRMED JUDGE BREYER'S JMOL DECISION ON THE

21         GROUNDS THAT PLAINTIFF HAD FAILED TO PUT INTO EVIDENCE, DURING

22         TRIAL, EVIDENCE OF ITS WORK AS A WHOLE.

23                    THE COURT:  I THINK THAT DECISION CAME OUT AS WE WERE

24          DISCUSSING JURY INSTRUCTIONS, IN FACT.

25                    MS. MCCLOSKEY:  IT DID, INDEED.

```
 1            IN ITS ORDER, THE NINTH CIRCUIT APPLIED OTHER CASE LAW,

 2    BOTH INSIDE AND OUTSIDE OF THE NINTH CIRCUIT, TO REACH ITS

 3    DECISION THAT PLAINTIFF'S FAILURE TO PUT IN EVIDENCE OF THE

 4    WORK AS A WHOLE WAS FATAL TO ITS CASE.

 5            THE ENTIRE NINTH CIRCUIT HAD AN OPPORTUNITY TO CONSIDER

 6    THIS ISSUE.  MR. ANTONICK REQUESTED EN BANC REVIEW AND THE

 7    NINTH CIRCUIT DENIED IT.

 8            AND IN ANTONICK, THE COURT HELD, "THERE CAN BE NO PROOF OF

 9    'SUBSTANTIAL SIMILARITY' AND THUS OF COPYRIGHT INFRINGEMENT

10    UNLESS PLAINTIFF'S WORKS ARE JUXTAPOSED WITH DEFENDANT'S AND

11    THEIR CONTENTS ARE COMPARED."

12            I PULLED HERE JUST TWO QUOTES FROM THE ANTONICK DECISION,

13    ONE FROM A FIFTH CIRCUIT CASE AND ONE FROM A FIRST CIRCUIT.  IN

14    GENERAL UNIVERSAL SYSTEMS VERSUS LEE, THE FIFTH CIRCUIT HELD,

15    "WITHOUT PROVIDING ITS OWN SOURCE CODE FOR COMPARISON,

16    PLAINTIFF DID NOT SATISFY THE REQUIREMENT THAT THE INFRINGED

17    AND INFRINGING WORK BE COMPARED SIDE-BY-SIDE."

18            THE COURT:  OF COURSE, BASED ON MY RULING THAT THE

19    USER INTERFACE WAS SEPARATELY REGISTERED, SOURCE CODE WAS NOT

20    AT ISSUE IN OUR CASE.  I KNOW YOU DISAGREED WITH THAT, BUT THAT

21    WAS MY RULING, THAT THERE WAS A SEPARATE REGISTRATION FOR THE

22    USER INTERFACE.

23            MS. MCCLOSKEY:  THAT'S CORRECT, YOUR HONOR.  YOU

24    DEFINED THE WORKS AS A WHOLE IN JURY INSTRUCTION NUMBER 25 AS

25    THE FOUR USER INTERFACES AND THE TECHNICAL MANUALS.
```

```
1              THE COURT:  YES.
2              MS. MCCLOSKEY:  SO THAT MEANS WE KNOW WHAT HAS TO BE
3     IN EVIDENCE.  IT'S THE FOUR USER INTERFACES.  SO WHEREVER THOSE
4     INTERFACES ARE IS WHAT NEEDED TO BE IN EVIDENCE.
5          TO THE EXTENT PORTIONS OF THE USER INTERFACES WERE ONLY IN
6     THE SOURCE CODE, THEN WE WOULD NEED THE SOURCE CODE IN ORDER TO
7     SEE THAT PORTION OF THE USER INTERFACE.
8              THE COURT:  WELL, I BELIEVE THAT CISCO PUT INTO
9     EVIDENCE, I THINK THEY -- IN THE PAPERS, THE DESCRIPTION WAS
10    600,000 PAGES.  I DIDN'T COUNT THEM MYSELF, BUT --
11             MR. PAK:  WE DID, YOUR HONOR.
12             THE COURT:  I'LL TAKE THAT AS A GOOD BALLPARK FIGURE,
13    AND IF IT WAS ONLY 400,000, THAT'S GOOD ENOUGH FOR ME.
14         BUT YOU HAVEN'T ACTUALLY POINTED OUT WHAT WAS MISSING.
15             MS. MCCLOSKEY:  SURE.  WELL, LET ME JUST GO THROUGH
16    WHAT HAPPENED AT TRIAL.
17             THE COURT:  OKAY.
18             MS. MCCLOSKEY:  AND I THINK THIS CASE IS NOTABLE IN
19    THAT THE COURT REMINDED CISCO OVER AND OVER --
20             THE COURT:  I DID.
21             MS. MCCLOSKEY:  -- AND OVER OF THIS REQUIREMENT.
22         SO FIRST ON NOVEMBER 30TH, JUST TWO DAYS AFTER WE HAD
23    STARTED PUTTING IN EVIDENCE IN THIS CASE, YOU FLAGGED THIS
24    ISSUE FOR THE FIRST TIME.  YOU ASKED MR. PAK, "THIS RAISES THE
25    ISSUE ON THE SUBMITTING THE WORK AS A WHOLE" BECAUSE AFTER THE
```

1   ANTONICK CASE, "I WANT TO MAKE SURE WE HAVE THAT IN, THAT'S

2   YOUR JOB," CISCO'S JOB, "AND YOU KNOW HOW TO DO IT."

3        AND MR. PAK RESPONDED, "OBVIOUSLY THE ELECTRONICS ARTS

4   CASE, THAT WAS AN IMPORTANT ISSUE, SO WE WANT TO MAKE SURE

5   THESE THINGS ARE IN THE RECORD."

6        AND AGAIN JUST A COUPLE DAYS LATER ON DECEMBER 5TH, YOU

7   REMINDED CISCO, "THE JURY IS GOING TO HAVE TO LOOK AT THE WORKS

8   AS A WHOLE.  I DON'T EVEN KNOW WHERE THEY ARE IN EVIDENCE."

9        AND THEN HELPFULLY YOU SUGGESTED, "DOES IT MAKE SENSE TO

10  GIVE THE JURY A SHEET THAT DIRECTS THEM TO WHERE THOSE EXHIBITS

11  ARE," AS CISCO POINTS OUT, THEY'RE VERY VOLUMINOUS, SO THAT THE

12  JURY WOULD KNOW HOW TO MAKE THAT COMPARISON.

13       AND THIS DISCUSSION CONTINUES AND YOU AGAIN SAY, "I DON'T

14  THINK I'VE SEEN THAT EXHIBIT THAT IS THE WORK AS A WHOLE.  I

15  DON'T EVEN KNOW WHAT THAT IS."

16       AND MR. NELSON THEN RESPONDS, "RIGHT.  UNDERSTOOD, YOUR

17  HONOR," WE'LL TAKE CARE OF THAT.

18       SO THEN AGAIN JUST A COUPLE DAYS BEFORE TRIAL, YOU SAY --

19  I'M SORRY -- BEFORE CLOSING ARGUMENT, YOU ASK AGAIN TO

20  MR. NELSON, "WERE WE GOING TO TELL THE JURY SPECIFICALLY WHICH

21  EXHIBITS MAKE UP THE WORKS IN THE CASE, OR NOT?  IT'S CONTINUED

22  TO NAG ME THAT I'M TELLING THEM TO EXAMINE THE WORKS AS A WHOLE

23  AND HOW WILL THEY FIND THEM?"

24       AND WHAT DID MR. NELSON TELL YOU?  HE TOLD YOU TO LEAVE IT

25  ALONE.  AND THEN HE SAID, "WHEN I IDENTIFY" IN MY CLOSING

```
 1      ARGUMENT "THE PARTICULAR EXHIBITS THAT THEY SHOULD LOOK AT FOR

 2      THAT, IF THAT'S RELEVANT, THEY CAN DO THAT."

 3           SO THEN IN REVIEWING MR. NELSON'S CLOSING ARGUMENT, WHICH

 4      I DID CAREFULLY, HE GETS TO THE PORTION OF HIS CLOSING ARGUMENT

 5      WHERE HE'S DISCUSSING THE DE MINIMIS REQUIREMENT AND THE

 6      JURY -- AND THE RELATED JURY INSTRUCTION, JURY INSTRUCTION

 7      NUMBER 41, AND THERE IS ABSOLUTELY NO EVIDENCE WHATSOEVER THAT

 8      HE POINTS TO THAT COULD BE THE WORK AS A WHOLE.

 9           THE COURT:  WELL, BUT I -- YOU CITED THIS IN YOUR

10      PAPERS AND I REVIEWED THIS.  AND I DIDN'T FORGET THIS.  I WAS

11      LIKE A DOG WITH A BONE ON THIS ISSUE, I KNOW.

12           BUT ULTIMATELY I ACKNOWLEDGED TO MR. NELSON THAT IT WAS

13      NOT THE COURT'S JOB TO IDENTIFY PARTICULAR EXHIBITS FOR THE

14      JURY.  I DON'T GIVE EXHIBITS MORE WEIGHT THAN OTHERS.

15           SO ON REVIEW, I'M ONLY LOOKING TO SEE IF IT WAS IN

16      EVIDENCE AND NOT WHETHER THE JURY WAS TOLD WHERE TO FIND IT

17      BECAUSE, IN FACT, THE JURY HAD A MASTER LIST OF ADMITTED

18      EXHIBITS AS OPPOSED TO JUST A BLACK BOX OF A COMPUTER WHERE

19      THEY COULD SCROLL THROUGH MILLIONS OF PAGES.

20           SO, YES, I CONTINUED TO HARP ON THIS.  BUT FORTUNATELY, I

21      RECOGNIZED IT WAS NOT MY PLACE TO TELL THE JURY ANYTHING ABOUT

22      WHAT EXHIBITS ARE IMPORTANT OR NOT IMPORTANT.

23           SO THE REAL ISSUE HERE IS, WAS THIS THUMB DRIVE OF 400,000

24      PAGES DOCUMENTATION OF THE WORKS AS A WHOLE UNDER THE NINTH

25      CIRCUIT TEST?
```

1          MS. MCCLOSKEY:  WELL, SO CISCO, IN ITS OPPOSITION,

2     POINTS TO TWO POSSIBLE SOURCES OF EVIDENCE, THE MANUALS AND THE

3     COPYRIGHT DEPOSIT WHICH WAS TRIAL EXHIBIT 4803.

4          WITH RESPECT TO THE MANUALS, WE KNOW IT'S NOT ENOUGH.

5     MR. PAK TOLD US, HE SAID, "MOST OF THE COMMANDS ARE DESCRIBED

6     IN THE MANUALS, BUT THE HELP DESCRIPTIONS ARE PART OF THE

7     SOURCE CODE, SO WHEN YOU RUN THE SOURCE CODE, IT GENERATES THE

8     HELP DESCRIPTIONS."

9          THIS WAS PART OF A DISCUSSION ABOUT CISCO'S TRIAL EXHIBIT

10    WHICH ENDED UP BEING TRIAL EXHIBIT 4799, WHICH WAS A SUMMARY

11    EXHIBIT COMPARING THE ACCUSED HELP DESCRIPTIONS WITH THE

12    CORE -- ARISTA'S ACCUSED HELP DESCRIPTIONS WITH THE

13    CORRESPONDING CISCO HELP DESCRIPTIONS.  SO NOT THE UNIVERSE OF

14    HELP DESCRIPTIONS, BUT JUST THE ACCUSED ONE.

15         AND SO THE CONVERSATION THERE CONTINUES.  I HAVE HERE ON

16    THE SCREEN A PORTION OF THAT TRIAL EXHIBIT.  AND YOU ASKED, "SO

17    YOU'RE SAYING THAT THE HELP DESCRIPTIONS APPEAR IN YOUR

18    REGISTERED IOS?

19         "YES.

20         "AS DEMONSTRATED BY THE SOURCE CODE.

21         "CORRECT."

22         SO WE KNOW THAT ONE OF THE BUILDING BLOCKS OF CISCO'S USER

23    INTERFACE IS IN THE SOURCE CODE.  IT'S NOT IN THE MANUALS, SO

24    THE MANUALS ARE NOT ENOUGH.

25         SO THEN, AS YOU CORRECTLY NOTE, CISCO POINTS TO ITS

1    COPYRIGHT DEPOSITS.

2         THERE'S ABSOLUTELY NO EVIDENCE IN THE RECORD THAT

3    INDICATES THAT THE COPYRIGHT DEPOSITS REPRESENT THE ENTIRETY OF

4    THE FOUR USER INTERFACES, THE WORKS AS A WHOLE IN THIS CASE.

5         SO JUST AS AN EXAMPLE, I PULLED A PORTION OF ONE OF THE

6    SOURCE CODE DEPOSITS, THE SOURCE CODE DEPOSIT FOR CISCO IOS

7    12.3.  AGAIN, THIS IS A PORTION OF TRIAL EXHIBIT 4803.

8         IT IS A 50-PAGE DOCUMENT WHICH SURELY DOESN'T REFLECT ALL

9    THE SOURCE CODE THAT IS INCLUDED IN THE CISCO IOS 12.3, AND

10   INDEED, MUCH OF THE EXHIBIT ITSELF IS REDACTED.  FOR EXAMPLE,

11   HERE THERE'S A WHOLE PAGE THAT'S REDACTED.

12        AND THERE'S NOWHERE IN THE RECORD THAT SAYS THAT 4803

13   INCLUDES THE ENTIRETY OF THE FOUR USER INTERFACES WHICH, AS YOU

14   DEFINED IN JURY INSTRUCTION NUMBER 25, MAKE UP THE WORK AS A

15   WHOLE.

16        AND WITH THAT, YOUR HONOR, I'LL LET CISCO GO.

17             THE COURT:  ALL RIGHT.

18             MS. MCCLOSKEY:  THANK YOU.

19             THE COURT:  SO OUR TIME IS GETTING A LITTLE TIGHT.

20   MR. PAK, ARE YOU GOING TO --

21             MR. PAK:  YOUR HONOR, LET ME ADDRESS THIS VERY

22   BRIEFLY.  I'M GOING TO SAVE SOME TIME FOR MS. SULLIVAN TO

23   ADDRESS THE OTHER ISSUES.

24             THE COURT:  OKAY.  THANK YOU.  I APPRECIATE THAT.

25             MR. PAK:  FIRST OF ALL, I THINK IT'S REALLY IMPORTANT

1    TO UNDERSTAND THAT THERE WERE TWO POTENTIAL WAYS IN WHICH THE

2    JURY COULD HAVE LED TO THE JURY VERDICT.  THERE WAS THE DIRECT

3    EVIDENCE PATH THAT IS THE DE MINIMIS PATH, AND THERE'S THE

4    INDIRECT EVIDENCE PATH, WHICH WOULD REQUIRE THE SUBSTANTIAL

5    SIMILARITY OR, AS YOUR HONOR FOUND, VIRTUAL IDENTITY COMPARISON

6    WORD-TO-WORD.

7         SO FROM A RULE 50(B) PERSPECTIVE, EITHER OF THOSE PATHS

8    COULD HAVE BEEN THE PATH THAT THE JURY TOOK, SO THIS IS A

9    NON-ISSUE AT THIS POINT BECAUSE THEY COULD HAVE BELIEVED ALL OF

10   OUR DIRECT EVIDENCE.

11        ALL THEY NEEDED TO CONCLUDE AT THE END OF THE DAY WAS THAT

12   THE AMOUNT THAT WAS COPIED WAS MORE THAN DE MINIMIS, AND THERE

13   WAS SUFFICIENT EVIDENCE IN THE RECORD TO DO THAT.

14        BUT JUST ADDRESSING THIS, YOUR HONOR, EXHIBIT 4803,

15   600,000 PAGES.  THOSE ARE NOT ONLY MANUALS, BUT CONFIGURATION

16   GUIDES, ALL KINDS OF HELPFUL DESCRIPTIONS ABOUT THE COMMANDS,

17   THE SCREEN OUTPUTS.  THE HELP DESCRIPTIONS ARE IN THOSE AS

18   WELL.

19        AND THAT WAS ACTUALLY THE BASIS FOR WHICH DR. BLACK, WHO

20   WAS ARISTA'S EXPERT, WHEN HE DID THE SUBSTANTIAL SIMILARITY OR

21   DE MINIMIS COMPARISON, WHAT DID HE LOOK AT?  HE LOOKED AT

22   MANUALS.  HE DIDN'T DO A SOURCE CODE TO SOURCE CODE COMPARISON.

23   HE DIDN'T DO ANYTHING ELSE BESIDES LOOKING AT MANUALS.

24        THERE'S ALSO THE VERY IMPORTANT DATA EAST CASE, WHICH IS A

25   NINTH CIRCUIT CASE, 1988.  AND IT SAYS THAT REALLY WHAT WE'RE

1    LOOKING FOR, EVEN UNDER THIS VIRTUAL IDENTITY OR SUBSTANTIAL

2    SIMILARITY TEST, IS, IS THERE SUFFICIENT EVIDENCE TO MAKE A

3    FAIR COMPARISON?  THAT'S THE TEST.

4        AND I WOULD SUBMIT TO YOUR HONOR THAT WE HEARD TESTIMONY

5    AFTER TESTIMONY ABOUT HOW THE IOS AND THE EOS USER INTERFACES

6    WERE DROP-IN REPLACEMENTS, THEY WERE CREATED TO REPLACE ONE

7    ANOTHER, THERE WAS 99.999 PERCENT SIMILARITY, THERE WAS

8    USABILITY TESTING.  ALL OF THAT EVIDENCE IS HIGHLY RELEVANT.

9        THE ISSUE THAT CAME UP IN ELECTRONIC ARTS -- AND WE WERE

10    VERY AWARE OF THAT CASE -- THERE WERE TWO ISSUES THAT ARE

11    REALLY DIFFERENT THAN THIS CASE.

12        NUMBER ONE, THAT WAS A SOURCE CODE CASE AND THERE WAS NO

13    EVIDENCE OF ANY SOURCE CODE THAT WAS SUBMITTED OTHER THAN THE

14    EXPERT SAYING, "I LOOKED AT THE SOURCE CODE."

15        AND THE NINTH CIRCUIT SAID, "WHEN YOU HAVE NO EVIDENCE OF

16    THAT, WHICH IS THE BASIS FOR YOUR COPYRIGHT INFRINGEMENT

17    ALLEGATIONS, THEN YOU DON'T HAVE THE BURDEN OF PRODUCTION

18    SATISFIED."

19        THAT'S NOT THIS CASE.  THIS IS A USER INTERFACE CASE.  WE

20    SPENT TWO YEARS -- TWO WEEKS -- IT FEELS LIKE TWO YEARS.

21            THE COURT:  IT DID FEEL THAT WAY.

22            MR. PAK:  YEAH, IT DID FEEL LIKE TWO YEARS, YOUR

23    HONOR -- FOCUSSED ON THE SIMILARITY OF THE OVERALL USER

24    INTERFACE.  WE SUBMITTED ALL THIS INFORMATION.

25        I DON'T THINK YOU EVEN NEED TO REACH THIS ISSUE.

1          THANK YOU, YOUR HONOR.

2              THE COURT:  ALL RIGHT.  MS. SULLIVAN, I'LL LET YOU

3      FINISH UP AND RESPOND TO MR. FERRALL.

4              MS. SULLIVAN:  THANK YOU VERY MUCH, YOUR HONOR.

5          I'D LIKE TO BEGIN WITH MR. FERRALL'S SUGGESTION, I THINK

6      HE CONCEDED THAT WE CAN'T ANSWER YOUR QUESTION, COULD THE

7      REASONABLE JURY FIND A PATH TO SCENES A FAIRE AS TO THE

8      COMPILATION AND NOT TO ANY OF ITS PIECES?

9          I THINK WE DIDN'T HEAR HIM DEFEND ANY TESTIMONY ABOUT THE

10     PIECES, SO I THINK WE'RE IN AGREEMENT THAT TESTIMONY ABOUT AN

11     ISOLATED TERM, ACRONYM, OR ABBREVIATION IS NOT GOING TO SUFFICE

12     TO ANSWER THE RELEVANT QUESTION HERE.

13         SO THEN HE OFFERED YOU TWO OTHER WAYS TO MAKE THAT PATH.

14     HE SAID, "WELL, WHAT ABOUT PRIOR INDUSTRY PROGRAMMING PRACTICES

15     OR STANDARD IN THE INDUSTRY?"

16         AND, SURE, I'M HAPPY TO CONCEDE THAT IN APPLE, IT SAYS

17     INDISPENSABLE OR STANDARD.

18         BUT THE POINT HERE IS THAT ON THIS RECORD, THERE IS NO

19     EVIDENCE OF PRIOR INDUSTRY PROGRAMMING PRACTICES OR PRIOR

20     INDUSTRY STANDARD WITH RESPECT TO HOW TO EXPRESS THE SEQUENCE,

21     STRUCTURE, ORGANIZATION, AND DESIGN OF A TEXT-BASED CLI.

22         AND LET ME GIVE IT TO YOU FROM THEIR EXPERT.  MR. BLACK,

23     TRANSCRIPT 2210, ADMITS THAT THERE IS NOT A SINGLE ONE OF THE

24     MULTIWORD COMMAND LINES IN EXISTENCE PRIOR TO CISCO'S

25     INVENTION.  HE HAD -- HE HAD TESTIMONY ABOUT INDIVIDUAL WORDS

1    PLUCKED OUT OF THE COMMANDS, BUT HE ADMITTED THAT THERE'S NO

2    LINE THAT EXISTED PRIOR TO CISCO.

3        SO THERE'S NO PRIOR INDUSTRY PROGRAMMING PRACTICE WITH

4    RESPECT TO THE CLI SEQUENCE, ORGANIZATION, AND STRUCTURE.

5        YOUR HONOR HAS A QUESTION?

6        THE COURT:  NO, NO.

7        MS. SULLIVAN:  AND SECOND, YOUR HONOR, I'D POINT YOU

8    TO THE ADMISSIONS THAT THERE WAS NO STANDARD SETTING BODY THAT

9    STANDARDIZED CLI.  THAT'S ADMITTED.  THAT'S MS. ULLAL AND

10   MR. VENKATRAMEN AT TRANSCRIPT 1963 AND 2316.

11       SO I'M HAPPY TO -- IF MR. FERRALL IS RIGHT THAT THERE'S A

12   LITTLE PLAY IN THE JOINTS ABOUT PRIOR INDUSTRY PROGRAMMING,

13   PRACTICES, OR STANDARDS IN OTHER SCENES A FAIRE CASES, FINE.

14   AND THAT'S WHY WE'RE NOT ARGUING THAT A COMPILATION CAN'T BE

15   SCENES A FAIRE AS A MATTER OF LAW.

16       TO THE CONTRARY.  WE'RE ARGUING THAT THIS SCENES A FAIRE

17   DEFENSE IS NOT SUPPORTED ON THIS RECORD BECAUSE WE'RE IN A

18   COMPILATION CASE AND YOU WOULDN'T BE PROPOSING IT IN A CASE

19   WHERE THERE WERE PRIOR INDUSTRY PROGRAMMING PRACTICES.

20       THERE JUST AREN'T ANY HERE.  HE DIDN'T MENTION ANY.

21       LET ME TURN SECOND TO HIS ARGUMENT THAT HE SAID BLACK

22   TESTIFIED THAT YOU START WITH THE FEATURE AND THEN THAT DRIVES

23   YOUR EXPRESSION.  GREAT.

24       THAT DOESN'T TELL YOU HOW TO ORGANIZE, SEQUENCE,

25   STRUCTURE, OR DESIGN THE EXPRESSION.  YOU COULD START -- I'LL

1    REFER YOUR HONOR TO MR. FERRALL'S SLIDE NUMBER 19 WHERE HE

2    SAID, "WELL, LOOK AT THIS TESTIMONY ABOUT IP IGMP

3    QUERY-INTERVAL."

4        BUT THE WHOLE POINT, YOUR HONOR, IS WE HAD UNDISPUTED

5    TESTIMONY FROM JUNIPER AND H.P. AND ADMISSIONS OF MR. DUDA AND

6    MR. SADANA AND MR. GOURLAY -- I DON'T NEED TO REHASH THAT ALL

7    TO YOU -- THAT ANY TWO ENGINEERS COULD HAVE STARTED WITH THE

8    FEATURE AND WRITTEN IT ANY NUMBER OF DIFFERENT WAYS.  YOU COULD

9    HAVE DECIDED THAT YOU SHOULD BUILD THIS INTO THE QUERY

10   HIERARCHY AND DONE ALL OF THESE COMMANDS ON PAGE 19 BEGINNING

11   WITH THE TERM "QUERY" AND PUTTING IP AND IGMP LATER IN THE

12   SEQUENCE.

13       YOU COULD HAVE TAKEN THE HYPHEN OUT OF QUERY-INTERVAL AND

14   THEN IP IGMP QUERY-INTERVAL, INSTEAD OF BEING THREE STEPS IN

15   THE HIERARCHY, WOULD HAVE HAD FOUR STEPS IN THE HIERARCHY.

16       SO, YOUR HONOR, NOTHING ABOUT MR. FERRALL'S ATTEMPT TO

17   CHERRY PICK A LITTLE SET OF COMMANDS OUT OF THE TOTALITY OF THE

18   COMPILATION CHANGES THE ARGUMENT AT ALL.  NOTHING WAS DICTATED.

19       OUR EMPHASIS IS -- THE KEY IS DICTATED THE SELECTION,

20   SEQUENCE, STRUCTURE, AND ORGANIZATION, AND NOTHING WAS

21   DICTATED.

22       AND, YOUR HONOR, AGAIN, REMEMBER, ARISTA SELLS -- ARISTA

23   HAS LINUX FOR 20 PERCENT OF ITS CUSTOMERS.  IF THAT ISN'T AN

24   ADMISSION THAT YOU DON'T HAVE TO HAVE THIS PARTICULAR CLI

25   FEATURE -- SORRY -- CLI EXPRESSION TO PERFORM THE FUNCTION OR

1      THE FEATURE, I DON'T KNOW WHAT ELSE IS.

2          SO, YOUR HONOR, I -- LET'S JUST GO BACK.  YOU ASKED THE

3      FUNDAMENTAL QUESTION, WOULD A REASONABLE JURY FIND A PATH TO

4      SCENES A FAIRE AS TO AT LEAST ONE COMPILATION AND NOT THE

5      INDIVIDUAL PIECES IN THAT COMPILATION?

6          AND I DON'T NEED TO REMIND YOUR HONOR, YOU WROTE A

7      BEAUTIFUL INSTRUCTION NUMBER 39 --

8              THE COURT:  WELL, YOU WROTE IT.

9              MS. SULLIVAN:  WELL, WE WROTE IT TOGETHER.

10         BUT, YOUR HONOR, IT'S A VERY CONTESTED AREA IN THE

11     CIRCUIT -- I THINK IT'S A KIND OF MODEL, AFTER MUCH FIGHTING,

12     OF HOW TO DO FILTRATION.

13         AND YOU MENTIONED ALL THE UNPROTECTABLE ELEMENTS.  WE WERE

14     NOT ALLOWED TO ASSERT INFRINGEMENT OF THESE LITTLE THINGS THAT

15     ARISTA NOW TRIES TO IDENTIFY AS THE KEY TO SCENES A FAIRE.

16         IF WE AREN'T ALLOWED TO HAVE INFRINGEMENT BASED ON

17     INDIVIDUAL WORDS, INDIVIDUAL COMMANDS, FUNCTIONS IN -- OR ALL

18     OF THOSE UNPROTECTED ASPECTS OF RULE 39, THEY CAN'T COME IN AND

19     SAY THEY HAVE SCENES A FAIRE AS TO ALL THOSE LITTLE PIECEMEAL

20     BITS.

21         JUST A FEW MORE POINTS, YOUR HONOR.

22         ON THE TIMING QUESTION, WE CHECKED AND WE THINK THAT THE

23     CDN COINS VALUATION CASE IS VERY HELPFUL ON YOUR TIMING

24     QUESTION BECAUSE THAT, OF COURSE, INVOLVED EVOLVING WEEKLY AND

25     MONTHLY REPORTS OF COIN VALUES SHOWING THAT YOU DON'T HAVE TO

```
 1        HAVE A STATIC COMPILATION AT ONE TIME.

 2              AND YOUR HONOR, OF COURSE, DEFINED THE COMPILATIONS HERE

 3        VERY CLEARLY IN INSTRUCTION 25 AS THE FOUR USER INTERFACES.  SO

 4        THE JURY KNEW EXACTLY WHAT IT WAS LOOKING AT ON A COMPILATION

 5        BASIS.

 6              A COUPLE OF LAST POINTS ON PROCEDURE, YOUR HONOR.

 7              MR. FERRALL SAID, WELL, WE DIDN'T MAKE A SUMMARY JUDGMENT

 8        MOTION ON SCENES A FAIRE.

 9              WELL, YOUR HONOR, YOU HADN'T ISSUED YOUR COMPILATION ORDER

10        YET.  OUR ENTIRE ARGUMENT HERE IS PREMISED ON YOUR COMPILATION

11        FINDING, AND OF COURSE WE MOVED ON RULE 50(A) AT THE CLOSE OF

12        EVIDENCE --

13              THE COURT:  YOU DID.

14              MS. SULLIVAN:  -- ON SCENES A FAIRE AS TO

15        COMPILATION.

16              SO WE'RE COMPLETELY PRESERVED AND THAT WAS REALLY AN

17        IRRELEVANT POINT.

18              THE COURT:  I THINK YOU ARE, YES.

19              MS. SULLIVAN:  JUST GOING BACK TO 50(B), I KNOW THAT

20        MR. FARRELL TRIED TO DEPICT A VERY CREATIVE IMAGINATION OF WHAT

21        THE JURY THOUGHT WHEN IT MADE ITS INFRINGEMENT FINDING.

22              THAT'S, OF COURSE, FORECLOSED ON 50(B) BECAUSE WE WON THE

23        VERDICT ON INFRINGEMENT.

24              AND YOU MUST ASSUME, FOR PURPOSES OF THEIR 50(B) MOTION,

25        THAT THE JURY FOUND INFRINGEMENT AS TO AT LEAST ONE
```

1    COMPILATION.  HE'S NOT ALLOWED TO SPECULATE ABOUT WHAT LITTLE

2    PIECE OF THE COMPILATION THE JURY FOUND.

3         AND SCENES A FAIRE, WE CONCEDE THAT IF THEY COULD HAVE

4    SHOWN SCENES A FAIRE AS TO ANY COMPILATION OR COMPILATION TYPE

5    PORTION OF A COMPILATION, THAT MIGHT BE ENOUGH.

6         BUT I HAVEN'T HEARD ANYTHING TODAY ABOUT COMPILATIONS,

7    THAT IS, SEQUENCE, STRUCTURE, ORGANIZATION, THAT COULDN'T HAVE

8    BEEN DONE IN A DIFFERENT WAY, AND THAT'S THE ESSENCE OF THE

9    ARGUMENT.

10        VERY LAST POINT, YOUR HONOR.

11        I DID GIVE YOU A NUMBER OF DISTRICT COURT CASES.  I THINK

12   THEY'RE VERY HELPFUL BECAUSE WE'RE IN THE WORLD WHERE SCENES A

13   FAIRE MEETS COMPILATION.  I HAPPEN TO THINK THAT THE DISTRICT

14   COURTS WRITE VERY IMPORTANT DECISIONS IN OUR SYSTEM BECAUSE

15   YOU'RE GRAPPLING WITH THESE QUESTIONS IN A WAY THAT SOMETIMES

16   TAKES YEARS TO REACH THE CIRCUIT, AND THE ONES IN THE NINTH

17   CIRCUIT DID ADDRESS SCENES A FAIRE AS AN AFFIRMATIVE DEFENSE.

18        I'D REFER YOUR HONOR TO THE B2B CASE WHICH SAYS, "LOOK,

19   ETS-HOKIN, I HAVE TO LOOK AT THIS AS AN AFFIRMATIVE DEFENSE."

20        AND IT CAME TO THE EXACT CONCLUSION, THAT IN A

21   COMPILATION, IT'S -- THIS PARTICULAR SEQUENCE, STRUCTURE, AND

22   ORGANIZATION OF THE IDEAS HAS TO BE WHAT PREEXISTED THE NEW

23   EXPRESSION AND THEREFORE DICTATED IT.

24        AND I WOULD RESPECTFULLY SUGGEST THAT THE OTHER CIRCUITS

25   THAT TREAT IT AS AN ASPECT OF COPYRIGHTABILITY, THE LAW STILL

1       IS INFORMATIVE ON COMPILATIONS BECAUSE THE PRINCIPLE IS THE

2       SAME.  YOU'RE ASKING, WHAT WOULD IT TAKE TO TAKE PROTECTABILITY

3       AWAY FROM A COMPILATION?  AND THE ANSWER IS YOU'D HAVE TO SHOW

4       THAT THE COMPILATION WAS EXTERNALLY DICTATED OR DICTATED BY

5       SOMETHING OUTSIDE OUR CREATIVITY.

6           SO, YOUR HONOR, WITH RESPECT, WE DO THINK THAT IT'S BEEN

7       INSTRUCTIVE TO LISTEN TO ARISTA'S PRESENTATION, AND WITH

8       RESPECT, WE DON'T THINK THAT ANY OF THE EVIDENCE THAT YOU'VE

9       BEEN POINTED TO IS DIRECTED TO THE RIGHT LEVEL OF GENERALITY,

10      WHICH IS COMPILATION, STRUCTURE, SEQUENCE, ARRANGEMENT, AND

11      DESIGN.  THAT'S THE WAY THE CASE WAS TRIED.

12          WE THINK INSTRUCTIONS 61 AND 33 TOGETHER INSTRUCTED THE

13      JURY CORRECTLY ON THAT ISSUE.  WE'RE NOT CONTESTING THE

14      INSTRUCTIONS AT ALL.  WE'RE JUST CONTESTING THE SUFFICIENCY OF

15      THIS RECORD.

16          AND TO BE ABSOLUTELY CLEAR, WE ARE NOT TRYING TO FORECLOSE

17      SCENES A FAIRE AS A DEFENSE IN A CASE WHERE THERE'S A

18      HARDWARE-BASED CONSTRAINT, AS THERE WAS IN MITEL, OR AN

19      ACTUAL -- SOME KIND OF ACTUAL NEED FOR TWO DIFFERENT VENDORS TO

20      USE THE SAME EXPRESSION TO PERFORM A MECHANICAL FUNCTION, TO

21      HAVE COMPUTERS TALK TO ONE ANOTHER.  YOU WOULD LEAVE THOSE

22      CASES OPEN FOR ANOTHER DAY.

23          BUT THIS IS AN EXPRESSION CASE, AND THIS -- IF THERE WAS

24      EVER A RECORD THAT WAS CLEAR THAT THERE WERE MANY WAYS TO WRITE

25      A CLI, THAT JUNIPER IS DOING IT DIFFERENTLY, H.P. IS DOING IT

1    DIFFERENTLY, AND IT COULD HAVE BEEN DONE DIFFERENTLY BY US, AND

2    IT COULD HAVE BEEN DONE DIFFERENTLY BY THE BRILLIANT ENGINEERS

3    AT ARISTA IF THEY HADN'T WANTED TO SKIP THE TRAINING COSTS AND

4    JUST USE OUR PRODUCT AS A 99 PERCENT DROP-IN REPLACEMENT SO

5    THAT THEY WOULDN'T HAVE TO DO THAT DEVELOPMENT.

6         SO, YOUR HONOR, WITH RESPECT, WE THINK THIS IS THE RARE

7    CASE IN WHICH, ON A NARROW ISSUE, YOU SHOULD ISSUE A RULE 50(B)

8    MOTION IN FAVOR OF ARISTA -- SORRY, I MISSPOKE -- IN FAVOR OF

9    CISCO ON ARISTA'S SCENES A FAIRE DEFENSE.

10        AND I AM AUTHORIZED, AFTER THE BREAK, TO TELL YOUR HONOR

11   THAT CISCO IS PREPARED TO DROP ANY REQUEST FOR ACTUAL DAMAGES,

12   AND THAT WOULD FACILITATE YOUR HONOR HANDLING ANY FURTHER

13   PROCEEDINGS ENTIRELY IN A BENCH TRIAL ON DISGORGEMENT, WHICH

14   YOU CAN RESOLVE ON THE PETRELLA ISSUE IN FAVOR OF A BENCH

15   TRIAL, AND ON INJUNCTION.

16             THE COURT:  ALL RIGHT.

17             MS. SULLIVAN:  THANK YOU, YOUR HONOR.

18             THE COURT:  ALL RIGHT.  THANK YOU ALL.  I APPRECIATE

19    THIS.

20        I'LL HAVE TO GIVE SOME THOUGHT TO THIS.  THESE ARE

21   COMPLICATED ISSUES.

22             MR. VAN NEST:  THANK YOU, YOUR HONOR.

23             MR. PAK:  THANK YOU, YOUR HONOR.

24             MS. SULLIVAN:  THANK YOU, YOUR HONOR.

25             MR. FARRELL:  THANK YOU, YOUR HONOR.

1              THE COURT:  THANK YOU.

2              THE CLERK:  COURT IS ADJOURNED.

3         (THE PROCEEDINGS WERE CONCLUDED AT 12:02 P.M.)

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1

2

3                       CERTIFICATE OF REPORTER

4

5

6

7          I, THE UNDERSIGNED OFFICIAL COURT REPORTER OF THE UNITED

8     STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA,

9     280 SOUTH FIRST STREET, SAN JOSE, CALIFORNIA, DO HEREBY

10    CERTIFY:

11         THAT THE FOREGOING TRANSCRIPT, CERTIFICATE INCLUSIVE, IS

12    A CORRECT TRANSCRIPT FROM THE RECORD OF PROCEEDINGS IN THE

13    ABOVE-ENTITLED MATTER.

14

15

16    _____

      LEE-ANNE SHORTRIDGE, CSR, CRR
17    CERTIFICATE NUMBER 9595

18         DATED:  MAY 5, 2017

19

20

21

22

23

24

25